UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL NO. 2047<br><br>SECTION: L |
| THIS DOCUMENT RELATES TO:<br><br>*Elizabeth Bennett, et al. v. Gebrueder Knauf Verwaltungsgesellschaft, KG, et al.*<br>2:14-cv-02722-EEF-JCW | JUDGE ELDON FALLON<br><br>MAG. JUDGE WILKINSON |

## PLAINTIFFS LEVI TAYLOR'S OPPOSITION TO DEFENDANT KNAUF'S MOTION FOR SUMMARY JUDGMENT

# Table of Contents

**Page**

I.   STATEMENT OF MATERIAL FACTS……………………………….……… 1

    A.   MDL-2047……………………………………………………….…… 1

    B.   The *Bennett* Class Action ……………………...………………….... 3

    C.   Plaintiff James Blevins in the
       *Bennett* Complaint……………………………………………….. 4

II.  STANDARD OF REVIEW……………………………………………….… 5

III. ARGUMENT……………………………………………………………… 6

    A.   Summary of Plaintiff's Argument ………………………………... 6

    B.   Defendant Knauf has a post-sale duty to warn customers in Florida
       and should be equitably estopped from arguing that notice has been
       given to any homeowner, because it chose to remain silent rather
       than issue a warning and/or
       recall……………………………………………………………. 7

    C.   The Florida Supreme Court has adopted the Restatement of Torts
       provisions which impose a duty on manufacturers to warn
       consumers about their product defects …………………………… 10

    D.   Plaintiff's claims are timely filed under Florida's Delayed
       Discovery Rule ………………………………………………… 12

       i.   *Product liability claims are subject to the delayed*
          *discovery rule in Florida……………………………..……...* 13

       ii.  *Defective Chinese-manufactured drywall is a*
          *latent defect and Plaintiff had no obligation*
          *to hire a Chinese drywall inspector before the*
          *date of discovery …………………………………..…...…...* 15

    E.   Remediation damages remain an unresolved issue of material fact. 16

    F.   All non-remediation damages remain unresolved and should be
       resolved by a trier of fact ………………………………………... 16

      *i.*     *Plaintiff's Loss of Use & Enjoyment Claim is Appropriate*
           *Under Florida Law and the appropriate damages should be*    16
           *decided by a trier of*
           *fact*…………………………………………………………….....

      *ii.*    *A Genuine issue of material fact exists for Plaintiff's*
           *consequential damages, including the claim for personal*
           *property and diminution in property value* ………………….    18

IV.  CONCLUSION………………………………………………………..    21

Table of Authorities

**Page**

*Anderson v. Liberty Lobby, Inc.*,                                      5
    477 U.S. 242 (1986)

*Babush v. Am. Home Products Corp.*,                                    13
    589 So.2d 1379 (Fla. Dist. Ct.App. 1991)

*Bailey v. Missouri P.R. Co.*,                                          19
    383 So. 2d 397, 1980 La. App. LEXIS 3636 (1980)

*Brito v. County of Palm Beach*,                                        12
    753 So.2d 109 (Fla. 4th DCA 1998)

*Celotex Corp. v. Catrett*,                                             5
    477 U.S. 317 (1986)

*Clark v. Coats & Clark, Inc.*,                                         5
    929 F.2d 604 (11th Cir. 1991)

*Davey Compressor Co. v. City of Delray Beach*,                         19
    639 So.2d 595 (Fla.1994)

*Davis v. Monahan*,                                                     13
    832 So.2d 708 (Fla. 2002)

*Felix v. Hoffmann-LaRoche, Inc.*,                                      12
    540 So.2d 102 (Fla.1989)

*Fitzpatrick v. City of Atlanta*,                                       5
    2 F.3d 1112 (11th Cir. 1993)

*Gallick v. B O R.R.*,                                                  19
    83 S.Ct. 659 (U.S. 1963)

*Hamrac v. Dorel Juvenile Grp., Inc.*, No. 3:09vd390/RV/MD,             13
    2010 WL 1879278 (N.D. Fla. May 11, 2010)

*Hawkins v. Champion Int'l. Corp.*,                                     15
    662 So.2d 1005 (Fla. 1st DCA 1995)

*High v. Westinghouse Elec. Corp.*,                                     8
    610 So.2d 1259 (Fla. 1992)

*In Re Chinese Manufactured  Drywall Prod. Liab. Liti.*,      18, 19
    706 F. Supp. 2d 655 (E.D. La. 2010)

*In re Depuy Orthopedics, Inc.*,      18
    870 F.3d 345 (5th Cir. 2017)

*Lloyds Underwriters at London v. Keystone Equipment Finance Corp.*,      9
    25 So.3d 89 (Fla. 4th DCA 2009)

*Masker v. Smith*,      15
    405 So.2d 432 (Fla. 5th DCA 1981)

*McCreary v. Florida Residential Property and Casualty*      17
*Joint Underwriting Association,*
    758 So.2d 692 (4th Dist. Ct.App. 1999)

*Mid-Continent Casualty Company v. Adams Homes of Northwest Florida,*      17
*Inc.*,
    725 F.App'x. 777 (11th Cir. 2018)

*Richards v. Dodge*,      10
    150 So.2d 477 (Fla. 2d DCA 1963)

*Samson v. R.J. Reynolds Tobacco Co.*,      13
    No. 96-414-CIV-T-24(B), 1997 WL 373475 (M.D. Fla. June 2, 1997)

*Sta-Rite Indus., Inc. v. Levey*,      8
    909 So.2d 901 (Fla. 3d DCA 2004)

*State v. Harris*,      9
    881 So.2d 1079 (Fla. 2004)

*Tolan v. Cotton*,      5
    134 S. Ct. 1861 (2014)

*Univ. of Miami v. Bogorff*,      13
    583 So.2d 1000 (Fla. 1991)

Fed. R. Civ. P. 56(a)      5
Fla. Stat. § 95.031      13
Fla. Stat. § 95.11      12
5C Michie's Jurisprudence, Damages, § 32 (2006)      19
Restatement (Second) of Torts § 929 (1979)      19
Restatement (Third) of Torts: Products Liability § 2      10, 12

Plaintiff James Blevins, by and through the undersigned counsel of record, opposes the motion for summary judgment (Rec. Doc. 22452) filed by the Knauf Defendants.  As grounds, Plaintiff offers the following:

## I.   STATEMENT OF MATERIAL FACTS

### A.  MDL-2047.

This litigation arises from alleged property damage and caused by the presence of Chinese drywall in homes and other buildings. Hurricanes Katrina and Rita devastated the Gulf Coast in 2005. These disasters, coinciding as they did with a boom in new housing construction, helped precipitate a shortage of drywall for the construction and reconstruction of homes in the United States. As a result, from approximately 2005 to 2008, Chinese drywall entered the United States market, changing hands in the chain of commerce, and ultimately finding its way into thousands of homes and buildings in the United States, primarily in Florida, Louisiana, Alabama, Mississippi, Texas, and Virginia.  Sometime after the installation of Chinese drywall in these properties, homeowners, residents, and occupants began to notice and complain of odd odors, corrosion of metal components, failure of electronics and appliances, and in some cases, physical ailments, such as nose bleeds, skin irritation, and respiratory problems. In response to these complaints, a number of governmental agencies and special interest groups, notably the federal Consumer Products Safety Commission and the Department of Housing and Urban Development, began to investigate, conduct testing, and issue remediation protocols related to Chinese drywall.

The present litigation commenced with the filing of lawsuits in 2009 in both federal and state courts by property owners and occupants damaged by the Chinese drywall installed in their residences and businesses, in addition to suits filed by some homebuilders who repaired these

properties. Defendants and declaratory judgment plaintiffs include homebuilders, developers, installers, retailers, realtors, brokers, suppliers, importers, exporters, and distributors, as well as their insurers and the insurers of homeowners, who were involved with the Chinese drywall in the affected properties. Because of the commonality of facts in the various federal lawsuits, the litigation was designated as Multi-District Litigation 2047 by the Judicial Panel on Multidistrict Litigation. On June 15, 2009, the Panel transferred all federal actions alleging damages from Chinese drywall to the U.S. District for the Eastern District of Louisiana for coordinated and consolidated proceedings.

Since the inception of MDL 2047, numerous cases were consolidated, containing thousands of claims; in addition, the Court issued numerous opinions, pretrial orders, and minute entries; the Court has facilitated mediations; and in the Court thousands of documents have been filed. Additionally, the Court has corresponded and coordinated with a number of state and federal court judges who also preside over related Chinese drywall cases.  The discovery revealed that the manufacturers of the drywall in question generally fell into two groups: the Knauf entities[1] and the Taishan entities[2]. After one of the Taishan entities was held in preliminary default, the Court conducted a bellwether evidentiary default hearing.  Shortly thereafter, the Court held its first bellwether, bench trial involving the Knauf entities. With regard to these bellwether proceedings, the Court issued detailed findings of fact and conclusions of law, concluding that the Chinese drywall at issue was in fact defective due to its release of

---

[1]  The term "Knauf entities" includes: Knauf Plasterboard (Tianjin) Co., Ltd. ("KPT"), Knauf Plasterboard (Wuhu) Co., Ltd., Guangdong Knauf New Building Material Products Co., Ltd., Knauf Gips KG, Gebr. Knauf Verwaltungsgesellschaft KG, Knauf International GmbH, Knauf Insulation GmbH ("KI"), Knauf UK GmbH, Knauf AMF GmbH & Co. KG, Knauf do Brasil Ltda. and PT Knauf Gypsum Indonesia.

[2]  The term "Taishan entities" includes: Taishan Gypsum Co. Ltd. and Taian Taishan Plasterboard Co. Ltd., among others.

corrosive gasses, requiring remediation of properties containing this drywall. The Court also issued a remediation protocol.

An initial settlement was reached in the Knauf portion of the litigation in October 2010, when the PSC and the Knauf entities entered into a Court-approved pilot program for remediation of homes containing drywall manufactured by Knauf. The pilot program led to a broader settlement agreement that extended the pilot program and provided remediation benefits to plaintiffs with filed claims.  On December 11, 2012, the final Knauf-related agreement, labeled, "Third Amended Settlement Agreement Regarding Claims Against the Knauf Defendants in MDL No. 2047" was filed with the Court.  A preliminary approval of the agreement was issued at the time, but no fairness hearing was immediately held, and no certification of a proposed class was approved.  Instead, the Court later held a consolidated fairness hearing for the five interrelated settlements: L&W; Banner; INEX; Global; and Knauf. Ultimately, on February 7, 2013, the Court certified a settlement class that included the Knauf entities and notice was published.  The Knauf settlement class provided benefits to participants limited to remediation.  All other claims were omitted including those claims for personal property, negligence, strict liability, consumer protection acts, nuisance, unjust enrichment, or non-pecuniary claims were not settled with the Knauf entities.

### B.  The *Bennett* Class Action.

The original *Bennett* Complaint was filed on November 13, 2014, in the United States District Court for the Northern District of Alabama and was subsequently transferred and consolidated into MDL 2047 via a conditional transfer order issued by the Judicial Panel on Multidistrict Litigation. The Complaint was amended multiple times, primarily to amend the parties.  The Fifth Amended Class Action Complaint was filed on March 6, 2018, and includes

the following claims: 1) negligence; 2) negligence per se; 3) strict liability; 4) breach of express and/or implied warranty; 5) Redhibition (by Louisiana plaintiffs); 6) Louisiana Products Liability Act (by Louisiana plaintiffs); 7) private nuisance; 8) negligent discharge of a corrosive substance; 9) unjust enrichment; 10) violation of Florida Deceptive and Unfair Trade Practices Act; 11) equitable injunctive relief and medical monitoring.  In the prayer for relief, Plaintiffs seek: certification of the class action; order appointing named plaintiffs as class representatives; compensatory, statutory, and/or punitive damages; pre- and post-judgment interest as allowed by law; injunctive relief; an award of attorney's fees as allowed by law; and award of taxable costs; and, any other relief a court deems just and proper.  This Court approved the Fifth Amended Class Action Complaint on May 14, 2018.

## C.  Plaintiff James Blevins in the *Bennett* Complaint.

Plaintiff James Blevins owns a property in the State of Florida that contains drywall manufactured by the Knauf Defendants that is alleged to be defective.  Plaintiff's claim was filed in the *Bennett* complaint on March 6, 2018.  The street address of Plaintiff's property at issue is: 2636 SE 19th Place, Cape Coral, FL 33904 ("Affected Property").  Plaintiff asserts all claims in the Fifth Amendment Complaint and seeks all relief available under current Florida law.

Plaintiff purchased the Affected Property on June 15, 2004. A copy of the deed is attached hereto as Exhibit A.  Plaintiff completed a Plaintiff Profile Form (Exhibit B) that verified the date that the Knauf drywall was discovered and the identity of the manufacturer confirmed on August 5, 2017.  Plaintiff learned of the defective drywall in his home through an inspection conducted by Chinese Drywall Screening, LLC, an experienced Florida drywall inspection company. Plaintiff also completed a Supplemental Plaintiff Profile Form (Exhibit C) and a Plaintiff Fact Sheet (Exhibit D).

Plaintiff James Blevins was deposed by counsel for Knauf on June 18, 2019, in Tampa, Florida and affirmed the responses in his three discovery forms, including the date of discovery of the defective Knauf-manufactured drywall in the Affected Property.  Plaintiff also provided testimony under oath that affirmed the responses in the discovery documents related to damages, including loss of use and enjoyment, and personal property damages, among other topics addressed by counsel for the defendants.  Plaintiff attended the deposition voluntarily and answered all questions posed by counsel for the Knauf Defendants.

## II. STANDARD OF REVIEW

Summary judgment is only warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In making the determination, "all justifiable inferences are to be drawn in [the non-movant's] favor." *Tolan v. Cotton*, 134 S. Ct. 1861, 1863 (2014) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). The movant may argue that "there is an absence of evidence to support the nonmoving party's case," *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986), but "it is never enough simply to state that the non-moving party cannot meet its burden at trial," *Clark v. Coats & Clark, Inc*., 929 F.2d 604, 608 (11th Cir. 1991). If the non-moving party provides more than a mere "scintilla of evidence" demonstrating that "the jury could reasonably find for the plaintiff," it will defeat the motion. *Anderson*, 477 U.S. at 252. This can be done by pointing out where the record "contains supporting evidence . . . which was 'overlooked or ignored' by the moving party." *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1116 (11th Cir. 1993) (citing *Celotex*, 477 U.S. at 332 (Brennan, J., dissenting)).

III.    **ARGUMENT**

Summary judgment is clearly not appropriate in this instance.  In order to prevail with this summary judgment motion, Defendants must demonstrate that there are no issues of material fact to be decided by a jury in the transferor court.  This has not been done and cannot be done in this case under Florida law.

Defendants have stipulated to liability; therefore, the calculation of appropriate damages is all that remains for Plaintiff unless Defendant presents some legal basis for dismissal. Defendants have received the information requested from Plaintiff during discovery, including documents, responses to interrogatories, and live testimony from Plaintiff at deposition.  Now, they have filed this motion challenging a portion of the damages and then inexplicably suggest that summary judgment is somehow appropriate for all claims.  There are multiple reasons to deny Defendants' summary judgment motion for this Plaintiff.

A.    **Summary of Plaintiff's Argument.**

Manufacturers have a post-sale duty under Florida law to notify all consumers of a defect once it is learned.  Although the defect in their KPT drywall product was discussed at length internally in 2006 by Defendant Knauf's management, not a single homeowner to date has received adequate notice about the product as of this filing in 2020. By failing to properly warn all current, past, or potential homeowners about their defective product, Defendant Knauf is equitably estopped from arguing that any plaintiff received adequate notice; consequently, this Court must view the lack of post-sale warning in a light most favorable to Plaintiff when considering all assertions in Defendant Knauf's motion for summary judgment.

Equitable estoppel due to the lack of a warning affects: 1) notice to prospective buyers about the nature of defective drywall that may be in a particular home, thereby providing them

with inadequate information upon which they can rely when making a homebuying decision; 2) notice to homeowners regarding the harmful effects cause by defective drywall to both inhabitants and the components of the home that may be experiencing the effects from harmful off-gassing; and, 3) notice to homeowners regarding the harmful effects caused by defective drywall to personal property during the time they have lived in the home with defective Knauf-made drywall thereby leaving them with inadequate information and an inability to preserved potential evidence in support of claims.  Equitable estoppel due to lack of a warning also affects the start of a statute of limitations under Florida law for Plaintiff who is a layman with no specialized knowledge related to defective Chinese-manufactured drywall.

Detrimental reliance by the Plaintiff due to the omission of an adequate warning by Defendant Knauf affects all of their claims and damages in a significant way, including remediation damages, personal property damages, diminution in value, loss of use and enjoyment damages, loss of rental income and any other consequential damages.  Defendant Knauf has argued in its motion that Plaintiff lacks sufficient documentation for the non-remediation damages; however, because there was no warning to Plaintiff regarding the potential presence of defective drywall in their home, they detrimentally relied upon the omission and did not keep invoices, receipts, or tangible items to document the damages.  This Court must view the omission of a warning by the Knauf Defendants in a light most favorable to Plaintiff when considering the damages being sought.  This detrimental reliance presents a genuine issue material fact that should be considered by a trier of fact regarding all claims and damages.

**B.      Defendant Knauf has a post-sale duty to warn customers in Florida and should be equitably estopped from arguing that notice has been given to any homeowner, because it chose to remain silent rather than issue a warning and/or recall.**

The Defendants argue that because an unidentified smell was periodically noticed or tarnishing of metal was noticed, Plaintiff was somehow put on notice that a defective product was in the Affected Property; however, Defendants fail to identify the prior notice Plaintiffs received.  What are the specific warnings that Plaintiff and other consumers should have received from Knauf?  What date did Knauf publish the warnings to consumers in Florida generally?  Alternatively, what date did Knauf issue a recall and notify Plaintiff directly? Defendant Knauf has failed to specify the exact notice they issued and are now relying upon their motion that puts Plaintiff on notice.

Defendants could easily have sent warnings to potential recipients of its drywall – they're in possession of business records that could have been used to identify all downstream purchasers and ultimately the recipients of their product.  Defendant Knauf was certainly aware of the problems their defective drywall was causing as early as November 7, 2006.  See Exhibit E (Email between Knauf corporate officers C. Wang, M. Norris, and Jawahar re "USA smelly board," the "situation in Miami is out of control," and "it will be a big problem not only in Miami but all over the USA Market, maybe cover thousand of houses.").  Instead, Defendant Knauf chose not to notify homeowners or actively remedy the problem they created through a recall.  In Florida, under some circumstances, manufacturers have a duty to warn about certain risks even after a product is no longer in the manufacturer's possession and has been transferred or sold to the consumer or end-user. *See High v. Westinghouse Elec. Corp.*, 610 So.2d 1259, 1263 (Fla. 1992) (finding the defendant "had a duty to timely notify the entity to whom it sold the electrical transformers… once it was advised of the PCB contamination"); *Sta-Rite Indus., Inc. v. Levey*, 909 So.2d 901, 905 (Fla. 3d DCA 2004) (jury question existed on failure to warn claim "in the light of similar severe accidents which occurred both before and after the sale of

the pump in question").  Defendant Knauf's responsibility does not end once the product leaves its possession.  Under Florida law, a manufacturer must keep abreast of developments in the state of the art and cannot ignore incidents involving its products.

If Defendant Knauf's position is that a warning was given to Plaintiff, they should produce that warning.  Without a specific warning to Plaintiffs by Defendant Knauf, Plaintiffs are left without the ability to evaluate the terms of the purported warning for adequacy; in addition, in the absence of any post-sale warning by Knauf for its defective drywall, the Knauf Defendants should be equitably estopped from arguing that notice was provided to a homeowner in the State of Florida or any other state that imposes a post-sale duty to warn of product defects.

The principles of equitable estoppel are applicable here to prevent the Knauf Defendants from taking unfair advantage of homeowners who may have only received limited or inaccurate information about the defective Knauf-manufactured drywall through some other source. Defendant Knauf possessed the most accurate information about their defective product and cannot rely on some other entity to meet their burden to consumers.  "The elements of equitable estoppel are (1) a representation as to a material fact that is contrary to a later-asserted position, (2) reliance on that representation, and (3) a change in position detrimental to the party claiming estoppel, caused by the representation and reliance thereon." *State v. Harris*, 881 So.2d 1079, 1084 (Fla. 2004).  "The 'representation' upon which an estoppel may be predicated may consist of words, conduct, or, if there is a duty to speak, silence."  *Lloyds Underwriters at London v. Keystone Equipment Finance Corp.*, 25 So.3d 89, 93 (Fla. 4th DCA 2009) (citations omitted). "The conduct ... such as to create an estoppel ... necessary to a waiver consists of willful or negligent words and admissions, or conduct, acts and acquiescence causing another to believe in a certain state of things by which such other person is or may be induced to act to his prejudice.

The acts or conduct need not be positive, but can consist of failure to act or, more particularly, failure to speak when under some duty to speak." *Richards v. Dodge*, 150 So.2d 477, 481 (Fla. 2d DCA 1963) (internal citations omitted).  Failure to speak when under some duty to speak is precisely what occurred here after Defendant Knauf learned that its drywall was defective.

Given Knauf's failure to provide post-sale warnings to consumers and affected homeowners, this Court must view the omission in a light most favorable to Plaintiff and find a material fact exists to be decided by a trier of fact regarding the omission of notice.  This equitable estoppel principle is applicable to all damages being claimed by Plaintiff.

**C.    The Florida Supreme Court has adopted the Restatement of Torts provisions which impose a duty on manufacturers to warn consumers about their product defects.**

The Restatement of Torts (Third) supports Plaintiff's position that Defendant Knauf had a duty to warn homeowners about the potential risks its defective product posed.  Subsection 2(c) of the Third Restatement provides that a product:

> is defective because of inadequate instructions or warnings when the foreseeable risks of harm posed by the product could have been reduced or avoided by the provision of reasonable instructions or warnings by the seller or other distributor, or a predecessor in the commercial chain of distribution, and the omission of the instructions or warnings renders the product not reasonably safe.

Restatement (Third) of Torts: Products Liability § 2.

As is clear from the plain language of subsection (c), the warning defect standard focuses on the notion of "reasonableness" for judging the adequacy of warnings, a malleable notion that is intertwined with the facts and circumstances of each case.  "Whether the warning actually given was reasonable in the circumstances is to be decided by the trier of fact." Restatement (Third) of Torts: Products Liability § 2 comment i.

Comment i of Section 2 also assists the trier of fact by providing a non-exhaustive list of factors to guide the determination as to whether a warning was adequate in any given situation:

> No easy guideline exists for courts to adopt in assessing the adequacy of product warnings and instructions. In making their assessments, courts must focus on various factors, such as content and comprehensibility, intensity of expression, and the characteristics of expected user groups.

Additionally, comment i lists a number of factors for the trier of fact to consider when determining whether a manufacturer such as Defendant Knauf may rely on an intermediary to warn end-users, and thereby discharge its duty to warn, or conversely, is required to warn end-users directly:

> There is no general rule as to whether one supplying a product for the use of others through an intermediary has a duty to warn the ultimate product user directly or may rely on the intermediary to relay warnings. The standard is one of reasonableness in the circumstances. Among the factors to be considered are the gravity of the risks posed by the product, the likelihood that the intermediary will convey the information to the ultimate user, and the feasibility and effectiveness of giving a warning directly to the user. Thus, when the purchaser of machinery is the owner of a workplace who provides the machinery to employees for their use, and there is reason to doubt that the employer will pass warnings on to employees, the seller is required to reach the employees directly with necessary instructions and warnings if doing so is reasonably feasible.
> ....
> Whether the warning actually given was reasonable in the circumstances ***is to be decided by the trier of fact***.

*Id*. (emphasis added).

Thus, under the Third Restatement, the determination as to whether a manufacturer like Defendant Knauf discharged its duty to warn end-users by adequately warning an intermediary is clearly a question reserved for the trier of fact. This is consistent with longstanding Florida law, which provides that "[t]he sufficiency and reasonableness of a manufacturer's warnings are fact

11

questions appropriate for the jury to decide unless such warnings are 'accurate, clear, and unambiguous.'" *Brito v. County of Palm Beach*, 753 So.2d 109, 112 (Fla. 4th DCA 1998) (quoting *Felix v. Hoffmann-LaRoche, Inc.*, 540 So.2d 102, 104 (Fla.1989)).

"Among the factors to be considered" by the trier of fact in determining whether a manufacturer has a duty to warn end-users directly are: (1) "the gravity of the risks posed by the product"; (2) "the likelihood that the intermediary will convey the information to the ultimate user"; and (3) "the feasibility and effectiveness of giving a warning directly to the user." Restatement (Third) of Torts: Products Liability § 2 comment i. The use of the word "among" demonstrates that this list of factors is intended to be inclusive rather than exhaustive. At bottom, the "standard is one of reasonableness." *Id*. Thus, depending on the facts and circumstances presented in each case, other pertinent factors may be considered when deciding whether a manufacturer has a duty to warn end-users.  But, without any specific warning from or by Defendant, this court must view the omission in a light most favorable to Plaintiff, the nonmovant, and find that a genuine issue of material fact exists regarding the notice that might have started the running of the Florida four-year statute of limitations for defective products.

### D.    Plaintiff's claims are timely filed under Florida's Delayed Discovery Rule.

Under Fla. Stat. § 95.11, Florida's product liability statute, Plaintiff has four (4) years to file a claim from the date of discovery.  Here, Plaintiff's claim was filed less than one year after discovering the presence of Knauf's defective drywall in the home; therefore, the claim was timely filed. Defendants have urged the Court to grant summary judgment in this instance because, they allege, Plaintiff learned that the Affected Property contained Knauf's defective product much earlier than Plaintiff acknowledges, but that is clearly in conflict with Plaintiff's deposition testimony attached to Defendant's motion.  Plaintiff affirmed during his deposition

that discovery of the Knauf-manufactured drywall occurred during an inspection by Chinese

Drywall Screening, LLC in 2017, not earlier.  Plaintiff also executed a verified Plaintiff Profile

Form and Supplemental Plaintiff Profile Form, under penalty of perjury, affirming the very same

date of discovery.

> ### i.    *Product liability claims are subject to the delayed discovery rule in Florida.*

Plaintiff's statute of limitations did not begin to run when the property was purchased in

2004 or when the house was built in 2005-06.  Under Florida law, a cause of action accrues or

begins to run for purposes of the statute of limitations upon the occurrence of the last element of

the cause of action. *Davis v. Monahan*, 832 So.2d 708, 709 (Fla. 2002); see Fla. Stat. § 95.031.

However, products liability claims are subject to an exception, "in which the accrual of the cause

of action is delayed until the plaintiff either knows or should know that the last element of the

cause of action occurred." *Davi*s, 832 So.2d at 709; see Fla. Stat. § 95.031(2)(b). This is

commonly referred to as the delayed discovery rule. *Davis*, 832 So.2d at 709.  Florida's delayed

discovery rule applies to defective Chinese-manufactured product liability claims.

Knowledge of a products liability claim need not rise to the level of legal certainty;

instead, the plaintiff "need only have notice, through the exercise of reasonable diligence, of the

possible invasion of [her] legal rights." *Hamrac v. Dorel Juvenile Grp., Inc*., No.

3:09vd390/RV/MD, 2010 WL 1879278, at *4 (N.D. Fla. May 11, 2010) (quoting *Univ. of Miami*

*v. Bogorff*, 583 So.2d 1000, 1004 (Fla. 1991) ).  "There must be two essential facts present for

the statute to begin to run. There must be a distinct injury and some causal connection between

the injury and exposure to [the offending] product." *Samson v. R.J. Reynolds Tobacco Co*., No.

96-414-CIV-T-24(B), 1997 WL 373475, at *5 (M.D. Fla. June 2, 1997) (citing *Babush v. Am.*

*Home Products Corp*., 589 So.2d 1379 (Fla. Dist. Ct.App. 1991) ).  In other words, the

limitations period on a products liability claim begins to run only when the plaintiff knows or should have known of a causal connection between a distinct injury caused by the product in question during exposure.  In this instance, Defendants cannot demonstrate that Plaintiff, who is a layman, should have known that the home contained defective Knauf drywall or that harmful off-gassing was flowing from the drywall.

Defendants have not presented any tangible evidence that Plaintiff's discovery responses regarding discovery of the defective Knauf product are incorrect and the date of discovery is some earlier identifiable date.  Reliance on an argument that Plaintiff acted unreasonably at an earlier date is a genuine difference regarding a material fact in which a trier of fact could find that Plaintiff acted reasonably; therefore, this Court must find in favor of the nonmovant and deny summary judgment.

Smelling an odor or seeing tarnish on metal does not place a homeowner on notice that the home contains defective Knauf-manufactured drywall.  In Florida, like any southern state, there could be any number of environmental sources causing a smell.  In addition, there could be environmental sources causing metal to tarnish such as well water or a water supply with a high sulfur content or smog from a nearby industrial area.  It is not an unreasonable explanation for a "smell" to be present in and around a Florida home caused by an environmental source outside the home. Defendants have failed to provide undisputed proof that the smell noted by Plaintiff intermittently in the Affected Property was indeed generated by Knauf's defective drywall.

Plaintiff has no expertise in construction, environmental contaminants, or defective Chinese drywall.  In this instance, with the absence of a warning by Defendant Knauf, it takes confirmation by an experienced drywall inspector to establish the existence of defective Knauf-manufactured Chinese Drywall in a property for the purpose of actual notice.  "Discovery" under

Florida law occurs when the manufacturer's markings are found, not at any point earlier. This would be the causal connection to the possible injury.  And, because it is possible for a trier of fact to find that Plaintiff's actions were reasonable, summary judgment must be denied.

> ii.     **Defective Chinese-manufactured drywall is a latent defect and Plaintiff had no obligation to hire a Chinese drywall inspector before the date of discovery.**

Defective Chinese-made drywall is not an obvious defect easily seen by a homeowner. It is hidden inside walls or buried under insulation in attics, in some instances.  With the manufacturer's ink stamp markings concealed inside walls, the defect is considered "latent" according to Florida law. Florida courts have defined a latent defect broadly, as one which is "not apparent by use of one's ordinary senses from a casual observation of the premises." *Hawkins v. Champion Int'l. Corp.*, 662 So.2d 1005, 1007 (Fla. 1st DCA 1995).  Florida courts have also found that there is no duty to discover "latent defects which… could not be discovered by a reasonable and customary search." *Masker v. Smith*, 405 So.2d 432, 433-34 (Fla. 5th DCA 1981).  Whether a reasonable person would discover the defective drywall through a casual, customary inspection is an issue of fact.

A Chinese drywall inspection is not a customary search of the home.  It is also expensive. The customary fee for a Chinese drywall specialized inspection in Florida is between $500.00 and $2,000.00.   Locating defective Chinese drywall and determining the identity of the manufacturer requires specialized knowledge and experience.  It requires specialized skill to cut holes in drywall; it requires utilizing specialized tools and devices; and, in many cases, it requires sending samples to a lab for specialized testing.  Finding defective drywall is rarely done through a casual observation of the premises or by using one's ordinary senses.

This latent defect standard under Florida law is contrary to Defendant's argument that an unidentified smell intermittently identified in a home or noticing tarnish on metal in the home places a duty on the homeowner to hire a Chinese drywall inspector immediately; consequently, this Court should deny Defendants' motion for summary judgment and allow a trier of fact to determine whether Plaintiff's actions were reasonable.

**E.    Remediation damages remain an unresolved issue of material fact.**

The Court can look to its prior orders for one area of damages at issue – calculation of remediation damages.  Previously, this Court issued multiple orders during the consolidated pre-trial stage of the MDL proceedings instructing the parties that full remediation damages are appropriate for plaintiffs that establish defective Chinese-manufactured drywall in the living space of their home. (See, e.g., Doc. 20741).  The Court even adopted a formula to arrive at the remediation damages (square footage of a home multiplied by the appropriate R.S. Means cost per square foot).  Defendants have not stipulated to remediation damages to date and have engaged an expert to present testimony at trial regarding their calculation of remediation damages by another method; consequently, this is a genuine issue of material fact that will be decided by the trier of fact.

**F.    All non-remediation damages remain unresolved and should be resolved by a trier of fact.**

**i.    *Plaintiff's loss of use & enjoyment claim is appropriate under Florida law and the appropriate damages should be decided by a trier of fact.***

Plaintiff has asserted a claim for loss of use and enjoyment of the property due to the presence of defective Chinese drywall manufactured by Knauf Defendants.  The Knauf Defendants have acknowledged that their product is defective and stipulated to liability.  In Exhibit C, the Supplemental Plaintiff Profile Form, Plaintiff assigned a value believed to be

reasonable and appropriate for loss of use and enjoyment based on past verdicts in the Chinese

drywall litigation (See Page 6 of SPPF).  Loss of use and enjoyment damages are non-pecuniary

in nature and the appropriate damages should be assessed by the trier of fact.

Plaintiff is entitled to recover damages under Florida law for loss of use and enjoyment of

a residential property. For instance, in *McCreary v. Florida Residential Property and Casualty

Joint Underwriting Association*, Fran and Cain McCreary sued their insurance provider for

refusing to defend them against a complaint by their neighbor, L. Anton Rebalko. 758 So.2d 692,

693 (4th Dist. Ct.App. 1999). Rebalko's complaint alleged that the McCrearys' failure to

"control, supervise, and confine their dogs to their own premises" was an "ongoing clear and

present danger to the health, safety and comfort of [Rebalko]" that ultimately rendered him

"unsafe and insecure [ ] in the use and enjoyment of his own property." *Id*. at 694. The Fourth

District Court of Appeals concluded "Rebalko's claim that the actions of the [McCrearys]

'ultimately renders unsafe and insecure [Rebalko] in the use and enjoyment of his own property,'

when fairly read, creates a factual issue as to the loss of use of the property...." *Id*. at 695. A

similar result is appropriate in this instance.

In another analogous case, Adams Homes of Northwest Florida "built and sold homes in

the interior of the Driftwood Development without regard for ... an adequate drainage plan...."

*Mid-Continent Casualty Company v. Adams Homes of Northwest Florida, Inc*., 725 F.App'x.

777, 780-81 (11th Cir. 2018).  Specifically, Adams Homes constructed homes that are prone to

flooding. The flooding made "[Homeowners'] ordinary use or occupation of their property

physically uncomfortable" and "disturb[ed] the [Homeowners'] free use ... of their property." *Id*.

These allegations, fairly read, create a factual issue as to loss of use.  Physical discomfort in the

use of property, like insecurity and lack of safety in the use of property, raises the specter of loss of use and damages are to be assessed by the trier of fact.

This Court has also previously addressed loss of use and enjoyment, stating, "[t]he Taishan property owners will still have an opportunity at later phases to seek damages for alternative living expenses and loss of use and enjoyment of their properties. Those issues can be addressed and resolved later when the Court remands the cases in this MDL." *In Re Chinese Manufactured  Drywall Prod. Liab. Liti.,* 706 F. Supp. 2d 655, 693 (E.D. La. 2010); *See In re Depuy Orthopedics*, *Inc*., 870 F.3d 345 (5th Cir. 2017). This Court does not intend to assume the transferor courts' duties after pre-trial matters are completed. *Id*.

Defendants have argued that loss of use and enjoyment is appropriate only if a plaintiff is unable to live in the home. Plaintiff is not required to prove that the Affected Property was not inhabitable in order to recover for loss of use an enjoyment under Florida law.  The parties differ in their valuation, but it is ultimately the trier of fact that will decide the appropriate loss of use and enjoyment damages.  Clearly, with regard to loss of use and enjoyment, a genuine issue of material fact exists, and summary judgment is due to be denied.

ii.     *A genuine issue of material fact exists for Plaintiff's consequential damages, including personal property and diminution in value.*

Plaintiff has asserted a claim for damaged personal property that is alleged to be caused by off-gassing from the defective Chinese drywall manufactured by Knauf Defendants.  As previously noted, the Defendants have stipulated to liability in this case.  In Exhibit D (See Plaintiff's itemization in Exhibit 14 to the PFS), the Plaintiff Fact Sheet, Plaintiff provided the value of personal property lost during ownership of the Affected Property and assigned a value believed to be reasonable and appropriate based on a variety of sources such as receipts,

invoices, internet research or memory.  Plaintiff's justification for the damaged personal property was offered through the PFS and through testimony at deposition.

In addition to the testimony and documentary evidence offered thus far, Plaintiff will offer expert testimony at trial regarding the effect of drywall off-gassing on components of the home and personal property susceptible to corrosion.  Defendant Knauf should be equitably estopped from arguing that Plaintiff's lack of documentation to support their personal property or other consequential damages when Plaintiff detrimentally relied upon the lack of warning and/or lack of a product recall related to the Affected Property.  The parties undoubtedly assign a different value to these consequential damages, but given that the omission of a warning results in the trier of fact accepting Plaintiff's testimony in the light most favorable to Plaintiff, sufficient support exists to overcome this summary judgment challenge.

Calculation of the diminution in value of the property is necessary under Florida law to determine the appropriate damages payable to Plaintiff, using either the diminution in value rule or the restoration rule.  Generally, damages for the wrongful injury of property are measured either by the diminution in the value of the property, referred to as the diminution in value rule, or by the costs of repairing or restoring the property to its condition prior to the injury, referred to as the restoration rule. *See Davey Compressor Co. v. City of Delray Beach*, 639 So.2d 595, 596 (Fla.1994). If the cost of repairs or restoration is less than the diminution in value, then the law requires that damages be measured by the costs of repairs or restoration. If the cost of repairs or restoration exceeds the diminution in value or if repairing or restoring the property is impracticable, then the law requires that damages be measured by the diminution in value. Plaintiff is not a property appraiser and cannot provide this valuation.  Plaintiff will rely upon fact witnesses at trial to provide the trier of fact with the necessary information upon which a

correct verdict can be entered.  It is Plaintiff's position that Defendants motion fails to note this necessity under Florida law; thus, this Court should deny Defendant's summary judgment challenge in this respect and refer this issue to the transferor court to address during pretrial proceedings.

       This Court previously considered consequential damages such as lost rental income and personal property damage and found that a plaintiff's damages are not limited to the diminution in value of the property and may include damages for loss in use and other consequential injuries.  *In Re Chinese Manufactured  Drywall Prod. Liab. Liti.,* 706 F. Supp. 2d 655, 692 (E.D. La. 2010).  This Court's ruling was consistent with the Restatement of Torts regarding compensation for consequential damages.  See Restatement (Second) of Torts § 929 (1979) (providing that damages for injury to real property include compensation for loss of use of the property and other consequential injuries in addition to any permanent property damage, whether measured by restoration or market value);  5C Michie's Jurisprudence, Damages, § 32 (2006) (rule encompasses recovery of expenses incidental to irreparable injury); *accord Bailey v. Missouri P.R. Co.,* 383 So. 2d 397, 402, 1980 La. App. LEXIS 3636 at *15 (1980) (tortfeasor must compensate his victim "for even the most improbable severe consequences of his wrongful act."), citing, *Gallick v. B O R.R.,* 83 S.Ct. 659 (U.S. 1963).  Plaintiff requests this same standard to be applied in this instance.  Plaintiff's damaged personal property items are a consequential effect of the off-gassing from the defective drywall; therefore, a jury could find in favor of Plaintiff that those damages are recoverable under Florida law.  A genuine issue of material fact exists regarding personal property alleged to be damaged by off-gassing caused by Defendant Knauf's defective drywall.

Lack of an adequate notice and warning by Defendant Knauf has led Plaintiff to discard some receipts, invoices, and personal property items affected by the off-gassing by the defective drywall.  It has led to Plaintiffs absorbing alternative living expenses after the defective drywall was discovered in their home.  And, it has also led to other consequential damages, because a timely, adequate notice was not provided ahead of the deadline to participate in the 2013 Knauf Settlement Class, approved by this Court on February 7, 2013.  Plaintiff is now in this particular action, filed in 2014 and unresolved in 2020, as a consequence.  Plaintiff should be afforded the opportunity to present evidence to a trier of fact and summary judgment should be denied.

## IV.   CONCLUSION

This lawsuit was filed because Defendant Knauf manufactured defective drywall found in Plaintiff's property.  The Knauf Defendants have stipulated that their drywall product is indeed defective.  Although counsel for Defendant Knauf has crafted an argument for summary judgment, the facts and law in this instance simply do not support their legal position or their motion.

Plaintiff has provided ample information through pleadings and the discovery process for the Defendants to understand each claim asserted and the areas of damages being sought.  Most claims and damages have not been challenged by Defendants through this motion. (See Section I(B) *supra* for the claims and damages stated in the Fifth Amended Complaint).  Plaintiff has provided information to Defendants through responses to discovery requests directing Defendants to the Fifth Amended Class Action Complaint for the areas of damages that have neither been addressed nor challenged by Defendants to this point.  And, when taken in a light most favorable to the non-movant, in this case Plaintiff, the unresolved areas of damages present genuine issues of material fact that must be decided by a trier of fact.

The exhibits, including the deed, plaintiff profile form, supplemental plaintiff profile form, plaintiff fact sheet and Chinese drywall inspection report that are attached to this Opposition demonstrate that, at a minimum, Plaintiff's claims are viable and several genuine issues of material fact exist to defeat Defendants' summary judgment challenge.

For the foregoing reasons, Defendants' Motion for Summary Judgment should be denied. Multiple issues of material fact exist and are due to be decided by a trier of fact.

Respectfully submitted on this 13th day of January 2020.

/s/ *James V. Doyle, Jr.*

James V. Doyle, Jr.
DOYLE LAW FIRM, PC
2100 Southbridge Pkwy., Suite 650
Birmingham, AL 35209
Tele: 205-533-9500
Fax: 844-638-5812
jimmy@doylefirm.com

*Attorney for Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the above and foregoing Plaintiffs James Blevins' Opposition to Defendant Knauf's Motion for Summary Judgment has been served on Plaintiffs' Liaison Counsel, Russ Herman, and Defendants' Liaison Counsel, Kerry Miller, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047, on this 13th day of January, 2020.


/s/ *James V. Doyle, Jr.*

James V. Doyle, Jr.
DOYLE LAW FIRM, PC