# Exhibit D

**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL NO. 2047<br><br>SECTION: L |
| THIS DOCUMENT RELATES TO:<br><br>*Elizabeth Bennett, et al. v. Knauf Gips, KG, et al.*<br>**2:14-cv-02722-EEF-JCW** | JUDGE ELDON FALLON<br><br>MAG. JUDGE WILKINSON |

## PLAINTIFF FACT SHEET

Name of Plaintiff: Carlos Salabarria

Affected Property Address: 12940 SW 135 ST, Miami, FL 33186

## I.  Purchase, Sale and/or Transfer of Ownership of Property

1.  On what date did you purchase the Property?

**Response**:  Plaintiff objects to this question as duplicative.  In addition, Plaintiff objects to this question on the ground that it seeks information in the possession of, known to, or otherwise equally available to the defendants.  Plaintiff has previously provided this information to defendants in the Bennett Supplemental Plaintiff Profile Form ("SPPF").  Plaintiff directs the defendants to Section II of the SPPF. Without waiving said objection, Plaintiff adopts the SPPF response again here and intends to provide the exact same date as provided in the verified SPPF as follows: Plaintiff purchased the property:

(Month/Day/Year)      10 / 12 / 2015

2.  When you took ownership of the Property, what was the name of the seller?

Trinity Home Development, LLC

3.  Name and address of the realtor?

None

4.  Name and address of the closing agent?

 Ricardo Martinez-Cid, 1699 Coral Way, Suite 510, Miami, FL  33145-2860

5.  What was the price of the home when you purchased it?  $ 191,534.00

6.  Was it an "as-is" sale?

**Response**:  Plaintiff objects to the use of "as-is" in this question as vague, ambiguous, uncertain, and unintelligible; consequently, Plaintiff cannot determine the exact nature of the information being sought.  This term is not defined and is not commonly understood with one accepted meaning; multiple inpretations are possible.  Without waiving said objection, plaintiff responds as follows:

☑ Yes   ☐ No   ☐ I'm not sure.

7.  If you sold or transferred ownership of the Property, what was the name of the purchaser?

N/A

8.  If you sold or transferred ownership of the Property, what was the name and address of the realtor?

N/A

9.  If you sold or transferred ownership of the Property, what was the name and address of closing agent?

N/A

10.  If you sold or transferred ownership of the Property, what was the price paid for home?
$ N/A

## II.  Appraisal of the Home

11.  Date of each appraisal:

a. _____/_____/20_____

b. _____/_____/20_____

2

**PFS REQUEST FOR DOCUMENT PRODUCTION #1**: Please produce copies of any and all appraisals performed on the house both prior and subsequent to the occurrence of any of the events allenged in the petition.

> **Response:** All documents in Plaintiff's possession responsive to this request are attached as "Exhibit 1."

## III. Discovery of Drywall

12.  Date that the property was constructed and/or renovated that installed the allegedly defective Chinese Drywall.

**Response**: Plaintiff objects to this question as duplicative. In addition, Plaintiff objects to this question on the ground that it seeks information in the possession of, known to, or otherwise equally available to the defendants. Plaintiff has previously provided this information to defendants in the Bennett Supplemental Plaintiff Profile Form ("SPPF"). Plaintiff directs the defendants to Section II of the SPPF. Without waiving said objection, Plaintiff adopts the SPPF response again here and intends to provide the exact same date as provided in the verified SPPF as follows: The property construction and/or renovation that installed the allegedly defective drywall occurred on or about the following date (to the best of my knowledge):

> (Month/Day/Year)          ____/____/20 06-07

**PFS REQUEST FOR DOCUMENT PRODUCTION #2**: Please produce all documents, reports, photographs, videotapes, samples and any other materials which evidence and/or identify that there is defective Chinese Drywall in the Property.

> **Response:** All documents in Plaintiff's possession responsive to this request are attached as "Exhibit 2."

## IV. Manufacturer/Seller of Drywall

13.  Who sold or distributed the drywall in the house?

**Response**: Plaintiff objects to this question as duplicative. In addition, Plaintiff objects to this question on the ground that it seeks information in the possession of, known to, or otherwise equally available to the defendants. Plaintiff has previously provided this information to defendants in the Plaintiff Profile Form ("PPF"). Plaintiff directs the defendants to Section X of the PPF. Without waiving said objection, Plaintiff adopts the PPF response again here and intends to provide the exact same information as provided in the verified PPF as follows: The drywall Supplier's name (to the best of my knowledge) is:

I don't know. _____

3

**PFS REQUEST FOR DOCUMENT PRODUCTION #3**: Please produce all documents, reports, photographs, videotapes, samples and any other materials which evidence and/or identify the manufacturer of drywall installed in the house. The submission must be in the form of PTO 1(B).

> **Response**: All documents in Plaintiff's possession responsive to this request are attached as "Exhibit 3."

## V.  Damages

14.  Identify any harm, financial or otherwise, that you contend was caused by defective Chinese Drywall installed in the Property.

**Response**:  Plaintiff directs the defendants to review the complaint filed with the court in this case for a full listing of the claims being asserted and the damages being sought.  The defective Knauf Chinese Drywall emitted gasses that cause damage to Plaintiff's home and the personal property contained therein.  It also significantly diminished the use and enjoyment of the home; therefore, Plaintiff seeks the following:  all compensatory, statutory, and/or punitive damages; all pre-judgment and post-judgment interest as allowed by law; any appropriate injunctive relief; an award of attorney's fees as allowed by law; an award of taxable costs; and, any and all such further relief as a jury or judge presiding over my trial deems just and proper.  Other damages include, but are not limited to:

After purchase, items in the home began failing - appliances, a/c, electronics, etc.  I

attribute these problems to the corrosion caused by the defective drywall.

15.  If you contend that you entered personal bankruptcy as a result of damage to your property from defective Chinese Drywall, please describe the facts and circumstances that relate to your claim.

N/A

16.  If you contend that you entered short sale and/or foreclosure as a result of damage to your property from defective Chinese Drywall, please describe the facts and circumstances that relate to your claim.

N/A

4

**PFS REQUEST FOR DOCUMENT PRODUCTION #4**: If you claim loss of income, please produce any copies of any and all documentation upon which you intend to rely upon to prove this claim.

    **Response**: All documents in Plaintiff's possession responsive to this request are attached as "Exhibit 4."

17.  If you claim diminution of the property as a result of Chinese Drywall, state with particularity each fact which supports your claim.

N/A

18.  Identify the appliances, fixtures and/or other electronics, if any, that you claim were damaged by Chinese Drywall in the property.

    **Response**: An list of damaged items is attached as "Exhibit 14."

19.  If you vacated the property because of the alleged presence of Chinese Drywall, please provide:  Address of each location you stayed thereafter.

    a. N/A

    b. _____

    c. _____

20.  If you vacated the property because of the alleged presence of Chinese Drywall, please provide:  Time periods in which you resided at each property.

    a. _____/_____/20_____   to   _____/_____/20_____

    b. _____/_____/20_____   to   _____/_____/20_____

    c. _____/_____/20_____   to   _____/_____/20_____

21.  If you vacated the property because of the alleged presence of Chinese Drywall, please provide:  Moving costs and/or alternative living expenses you claim to have incurred as a result of the alleged presence of Chinese Drywall.

    a. $ N/A

    b. $_____

    c. $_____

**PFS REQUEST FOR DOCUMENT PRODUCTION #5:**  If you vacated the property because of the alleged presence of Chinese Drywall, please provide any documentation to support your claims.

> **Response:**  All documents in Plaintiff's possession responsive to this request are attached as "Exhibit 5."

22.  Are you claiming damages for personal injury?  ☐ Yes (explain below) ☑ No

_____

_____

23.  If you suffered personal injuries as a result of the alleged presence of Chinese Drywall:  Date you allege that you first sustained personal injuries as a result of your exposure to allegedly defective Chinese Drywall.

> **Response:**  ☑ N/A

24.  If you suffered personal injuries as a result of the alleged presence of Chinese Drywall:  What specific injuries have you suffered?

> **Response:**  ☑ N/A

25.  If you suffered personal injuries as a result of the alleged presence of Chinese Drywall:  Name and address of any doctor, physician, surgeon, chiropractor, or osteopath who examined and/or treated your alleged injuries.

> **Response:**  ☑ N/A

## VI.  Potential Witnesses/Evidence

26.  Has any written or recorded statement been taken from any witness or person who has knowledge of relevant facts, including the nature, character, and extent of the injuries referred to in the petition, and for each statement identified?

☐ Yes  ☑ No  ☐ I don't know

27.  If the answer to 26 is "yes," please state:  The name, address, and telephone number of the person from whom the statement was taken.

N/A
_____

_____

6

28.  If the answer to 26 is "yes," please state:  The name, address, and telephone number of the person who took the statement.

N/A

_____

29.  If the answer to 26 is "yes," please state:  The name address, and telephone number of the party having custody of such statement.

N/A

_____

30.  If the answer to 26 is "yes," please state:  The date the statement was taken.

N/A

_____

## VII.  Already Remediated Properties

31.  If you already remediated the Property, who conducted the remediation?

   **Response:**   ☑ N/A

32.  When did the remediation commencement date occur?

   **Response:**   ☑ N/A

33.  When did the remediation end date occur?

   **Response:**   ☑ N/A

34.  What was the scope of the remediation and the scope of the work carried out?

   **Response:**   ☑ N/A

35.  What costs or expenses, if any, did you incur related to the remediation of the Property?

   **Response:**   ☑ N/A

36.  Were any samples from the remediation retained?

**Response:**   ☑ N/A

37.  If the response to 36 is "yes," were the samples compliant with PTO 1(B)?

**Response:**   ☑ N/A

38.  Were any photographs taken of the allegedly defective Chinese Drywall?

**Response:**   ☑ N/A

39.  If the response to 38 is "yes," were the photographs compliant with PTO 1(B)?

**Response:**   ☑ N/A

**PFS REQUEST FOR DOCUMENT PRODUCTION #6:**  Please produce the following documentation concerning the remediation of the Property:  Any evidence of KPT Chinese Drywall and Non-KPT Chinese Drywall, if any, in the Property prior to remediation.

> **Response:**  All documents in Plaintiff's possession responsive to this request are attached as "Exhibit 6."

**PFS REQUEST FOR DOCUMENT PRODUCTION #7:**  Please produce the following documentation concerning the remediation of the Property:  Interior photographs of the Affected Property immediately prior to the commencement of, and following completion of, the remediation, including photographs and/or video images of the flooring and major components such as cabinets, moldings, doors, intercom systems, and fixtures for every room and bathroom and, to the extent possible, security systems, appliances and audio such as surround sound.

** The photographs do not need to be pictures taken specifically for the litigation. For example, family photographs or photographs taken for purposes of refinancing a mortgage are acceptable in the absence of other photographs.

> **Response:**  All documents in Plaintiff's possession responsive to this request are attached as "Exhibit 7."

**PFS REQUEST FOR DOCUMENT PRODUCTION #8:**  Please produce the following documentation concerning the remediation of the Property:  The remediation contract and an itemization from the contractor who performed the remediation work of the materials used during the remediation, including, but not limited to, manufacturer, model number, and quantity.

**Response**:  All documents in Plaintiff's possession responsive to this request are attached as "Exhibit 8."

**PFS REQUEST FOR DOCUMENT PRODUCTION #9**:   Please produce the following documentation concerning the remediation of the Property:  An itemized invoice from the contractor who performed the remediation work ("Itemized Invoice") showing the scope of work carried out.

**Response**:  All documents in Plaintiff's possession responsive to this request are attached as "Exhibit 9."

**PFS REQUEST FOR DOCUMENT PRODUCTION #10**:   Please produce the following documentation concerning the remediation of the Property:  Proof of payment of the Itemized Invoice and any other expenses, such as cancelled checks, credit card statements, etc.

**Response**:  All documents in Plaintiff's possession responsive to this request are attached as "Exhibit 10."

**PFS REQUEST FOR DOCUMENT PRODUCTION #11**:   Please produce the following documentation concerning the remediation of the Property:  A floor plan of the Affected Property with dimensions.

**Response**:  All documents in Plaintiff's possession responsive to this request are attached as "Exhibit 11."

**PFS REQUEST FOR DOCUMENT PRODUCTION #12**:   Please produce the following documentation concerning the remediation of the Property:  An Environmental Certificate.

**Response**:  All documents in Plaintiff's possession responsive to this request are attached as "Exhibit 12."

**PFS REQUEST FOR DOCUMENT PRODUCTION #13**:   Please produce the following documentation concerning the remediation of the Property:  An Owner Disclosure Affidavit in the form attached as Exhibit 1, which includes a certification that the materials provided comprise all of the available documentation regarding the following:  The drywall that was in the Affected Property prior to the commencement of the remediation; and, the scope, extent, and cost of the remediation.

**Response**:  All documents in Plaintiff's possession responsive to this request are attached as "Exhibit 13."

## VERIFICATION

       I hereby verify that the responses to the Plaintiff Fact Sheet are correct to the best of my knowledge.

Signature of Plaintiff

Date

CARLOS   SALABARRIA
Printed Name

# Exhibit 1



# OFFICE OF THE PROPERTY APPRAISER

## Summary Report

Generated On : 4/18/2018

### Property Information

| | |
|---|---|
| **Folio:** | 30-5914-105-0170 |
| **Property Address:** | 12940 SW 135 ST<br>Miami, FL  33186-6986 |
| **Owner** | CARLOS M SALABARRIA |
| **Mailing Address** | 12940 SW 135 ST<br>MIAMI, FL 33186 USA |
| **PA Primary Zone** | 3700 MULTI-FAMILY - 10-21 U/A |
| **Primary Land Use** | 0410 RESIDENTIAL - TOTAL VALUE : TOWNHOUSE |
| **Beds / Baths / Half** | 3 / 2 / 1 |
| **Floors** | 2 |
| **Living Units** | 1 |
| **Actual Area** | 1,830 Sq.Ft |
| **Living Area** | 1,564 Sq.Ft |
| **Adjusted Area** | 1,564 Sq.Ft |
| **Lot Size** | 1,800 Sq.Ft |
| **Year Built** | 2006 |

2017 Aerial Photography

### Assessment Information

| Year | 2017 | 2016 | 2015 |
|---|---|---|---|
| **Land Value** | $0 | $0 | $0 |
| **Building Value** | $0 | $0 | $0 |
| **XF Value** | $0 | $0 | $0 |
| **Market Value** | $199,200 | $199,200 | $181,090 |
| **Assessed Value** | $199,200 | $199,200 | $156,065 |

### Benefits Information

| Benefit | Type | 2017 | 2016 | 2015 |
|---|---|---|---|---|
| **Non-Homestead Cap** | Assessment Reduction | | | $25,025 |
| **Homestead** | Exemption | $25,000 | $25,000 | |
| **Second Homestead** | Exemption | $25,000 | $25,000 | |

Note: Not all benefits are applicable to all Taxable Values (i.e. County, School Board, City, Regional).

### Short Legal Description

COURTS AT TUSCANY WEST
PB 164-061 T-21864
LOT 5 BLK 5
LOT SIZE 1800 SQFT
FAU 30 5914 000 0160

### Taxable Value Information

| | 2017 | 2016 | 2015 |
|---|---|---|---|
| **County** | | | |
| Exemption Value | $50,000 | $50,000 | $0 |
| Taxable Value | $149,200 | $149,200 | $156,065 |
| **School Board** | | | |
| Exemption Value | $25,000 | $25,000 | $0 |
| Taxable Value | $174,200 | $174,200 | $181,090 |
| **City** | | | |
| Exemption Value | $0 | $0 | $0 |
| Taxable Value | $0 | $0 | $0 |
| **Regional** | | | |
| Exemption Value | $50,000 | $50,000 | $0 |
| Taxable Value | $149,200 | $149,200 | $156,065 |

### Sales Information

| Previous Sale | Price | OR Book-Page | Qualification Description |
|---|---|---|---|
| 10/12/2015 | $100 | 29911-1884 | Corrective, tax or QCD; min consideration |
| 09/15/2015 | $183,000 | 29817-1542 | Financial inst or "In Lieu of Forclosure" stated |
| 03/19/2015 | $184,100 | 29549-1337 | Financial inst or "In Lieu of Forclosure" stated |
| 08/01/2006 | $320,590 | 24849-1388 | Sales which are qualified |

# Exhibit 2

# Exhibit 3

# Property Screening Report

## 12940 SW 135th St. Miami, FL 33186

Screening Date:

10-19-17

Prepared for:

Carlos Salabarria

Report Number:

FL09-0617

CDS Inspector:

Julie Sommerville



**Inspections and documentation from leading experts**



October 22, 2017

Carlos Salabarria
12940 SW 135th St.
Miami, FL 33186

RE: Chinese Drywall Screening Report Number FL09-0617

Mr. Salabarria,

At your request, an inspection of the above referenced property (12940 SW 135th St.) was performed on October 19, 2017.  Chinese Drywall Screening, LLC is submitting the enclosed report which is a professional opinion based on a visual inspection of the accessible materials and x-ray fluorescence testing of the drywall throughout the property.

Based on our visual observations of blackened electrical wires coupled with known affects from reactive drywall, CDS is of the opinion that reactive drywall is present in the above referenced property.  The distinctive odor associated with corrosive drywall was noticed upon entry and throughout the inspection.  Drywall markings discovered that are part of Multi-District Litigation case # 2047 (MDL 2047) are:

| No. | Drywall Mfg | Markings on Drywall | Location in home |
|-----|-------------|---------------------|------------------|
| 9 | Knauf-Tianjin (KPT) | "KNAUF-TIANJIN" | Family room, 1st floor ½ bath, interior ceilings |

Based on the approximate square footage of **1,830** sf including the garage, with **8' – 9' average ceiling height,** we estimate that there is **7,300 sf of drywall** in the home.

We trust that this report meets or exceeds your expectations.  Please feel free to contact us should you have any questions regarding our report or if we may be of further assistance to you.

Sincerely,

Howard Ehrsam, P.E., LEED AP
CGC 1509717
on behalf of Chinese Drywall Screening, LLC

Enclosures: Report with Photo Exhibit

---



# Overview

## Overview of Subject Property



**Client**:  Carlos Salabarria

**Address:**  12940 SW 135th St.
           Miami, FL 33186

**Size:** Total 1,564 sf (under air) approximately 1,830 sf including garage

**Exterior wall types:**  CBS - Concrete Block exterior

**Completion date:**  2006



# Summary Narrative

## Observations and Conclusions

### Observations

- The air handler in the property was replaced with aluminum coils just prior to the inspection.  Blackening or "black deposits" defined to be copper sulfide by Unified Engineering File No. 4050 associated with reactive drywall were observed on the copper components of old coil that was detached but present on site.
- Blackening/soot residue was observed on the exposed wiring of inspected receptacles and switches throughout the property.
- Blackening was not observed on the control wires of the garage door opener.
- Blackening was not observed on the copper plumbing water lines under the kitchen sink, however the water lines were replaced within the last year per the owner.
- Walls and ceilings were tested utilizing a Thermo Fisher x-ray fluorescence (XRF) analyzer throughout the property.  The property has corrosive drywall with XRF readings similar to Knauf-Tianjin (KPT) with strontium levels around 2,200 ppm.
- **MDL 2047 Drywall Index No. 9 – KPT** labels were observed in the family room, 1st floor ½ bath, and interior ceilings.
- Corrosion and strontium levels matching KPT type drywall were in the garage.
- There was an odor associated with corrosive drywall throughout the property.

### Conclusions

Based on our visual observations, testing, experience and current state of knowledge in the industry, Chinese Drywall Screening, LLC is of the professional opinion that reactive Chinese drywall **is** present throughout the subject property, specifically **MDL 2047 Index No. 9 – KPT.**

Inspection and testing was done for general information only.   Reactive Chinese drywall manufactured by KPT is prevalent throughout the property including the garage and ceilings with very clear and obvious indications.

It is the intent of CDS to inform and empower the Client with enough knowledge to make the best, well informed decision that is in the best interests of the Client.  Towards that end, we recommend that you contact an attorney to discuss your legal rights, including potential claims against your builder, along with the installer, supplier and manufacturer of the drywall.  Additional claims against parties of the real estate transaction may also be explored.



What you can do today:  Three primary items to consider for immediate action are:  1) Mortgage forbearance if applicable, 2) Property tax reduction and 3) Legal representation regarding claims against the manufacture.

Time is of the essence and time frames for filing claims may end.  It is critical to understand the implications with these and we recommend seeking professional consultation for details.

For owners of properties with reactive drywall, it important to understand preservation of evidence when selling or remediating as well as the importance of 3rd party verification of the remediation.  More information is available on our website or toll free at 855- CDW-Help (855-239-4357).



Exhibit A

# Certification

## Certification of the Engineer

The undersigned do hereby certify that, to the best of our knowledge and belief:

- The statements of fact contained within this report are true and correct.

- As applicable, the statements of opinions have certain limitations. It is not feasible and is impossible to confirm 100% of corrosive drywall was either removed or is not present. There are several conditions we have seen that could prevent discovery without a more exhaustive investigation.  They include, but are not limited to:
    - Low Strontium, corrosive drywall that is domestic and non-homogeneous.
    - Limited amounts of corrosive drywall in inaccessible areas or installed in a way that would seclude it from available receptacles and switches.
    - Limited amounts of high strontium drywall covered with joint compound or heavy textures hindering detection by x-ray fluorescence.
    - Variable amounts of low off-gassing drywall or drywall with corrosive recycled gypsum.

- We have no present or prospective interest in the property that is the subject of this report and we have no personal interest with respect to the parties involved. We have no bias with respect to the property that is the subject of this report or to the parties involved with this agreement.

- The information in this report is based on the existing conditions of the structures materials, documents, and information (written or verbal) supplied by the contractor, the owner or their representatives, and our observations during the inspection.

- Our compensation or engagement in this assignment is not contingent upon the development or reporting of a predetermined conclusion that favors the cause of the client, the remediator, the attainment of a stipulated result, or the occurrence of a subsequent event directly related to the intended use of this report.

- Any use of this report by any other parties without our expressed or written consent is prohibited.  Should another individual or entity rely on this analysis or its conclusions without our consent, that shall indemnify Chinese Drywall Screening, LLC, its employees, and service providers from all damages, losses, or expenses that may occur as a result of its use.

- Our report is based on information made available to us at the time of inspection.  Should additional information become available, we reserve the right to determine the impact, if any, of the new information on our opinions and conclusions and to revise our opinions and conclusions if necessary and warranted by the discovery of the additional information.

- The provided services and documentation have been completed to the best of our knowledge and based on current known facts regarding reactive drywall.

Howard Ehrsam, P.E., LEED AP
CGC 1509717
on behalf of Chinese Drywall Screening, LLC



# Scope of Screening

## Scope of Screening Services Performed

Chinese Drywall Screening, LLC (CDS) conducted a visual investigation of the various elements within the property for the presence of reactive drywall.

Investigative services typically include, but are not limited to:
- Verification of a sulfur attack on various components of the property
- Visual inspection of the drywall markings in respective areas of the sulfur attack
- Documentation of findings
- Samples of reactive drywall prepared for future laboratory analysis (if requested)

CDS provided the above investigation in multiple areas throughout the home. However, we cannot guarantee all types of reactive drywall within the subject property were identified.

The corroded elements along with any discovered drywall markings were documented during the inspection.  Corroded elements include, but are not limited to, electrical wiring, mechanical and plumbing lines and equipment and other items subject to the affects of reactive drywall.  Observations were recorded and photographed.   For each unique variety of drywall discovered, at least one set of markings were clearly photographed.  Refer to the narratives and photographs for details.

The inspection required removal of various sections of drywall to be utilized as visual access points.  These access points were sealed upon completion.

The following engineering report is utilized as a reference in regards to the sulfur attack on copper: Unified Engineering Report File 4050 dated March 17, 2009. Unified Engineering, Inc; 3056 Weber Drive, Aurora, IL 60502.

Photo Exhibit
12940 SW 135th St.
Miami, FL 33186














Photo Exhibit
12940 SW 135th St.
Miami, FL 33186

















## Photo Exhibit
## 12940 SW 135th St.
## Miami, FL 33186

















# Photo Exhibit
## 12940 SW 135th St.
## Miami, FL 33186

















# Photo Exhibit
## 12940 SW 135th St.
## Miami, FL 33186

















# Photo Exhibit
## 12940 SW 135th St.
## Miami, FL 33186

  

  

  

  

Photo Exhibit
12940 SW 135th St.
Miami, FL 33186









Photo Exhibit
12940 SW 135th St.
Miami, FL 33186

 

# Exhibit 4

# Exhibit 5

# Exhibit 6

# Exhibit 7

# Exhibit 8

# Exhibit 9

# Exhibit 10

# Exhibit 11

# Exhibit 12

# Exhibit 13

# Exhibit 14

# Plaintiff Fact Sheet

Plaintiff: _____Carlos M. Salabarria_____

Property Address: ___12940 sw 135 St - Mia - FL - 33186___

## Question #18 Itemization (Personal Property Damage)

| # | Description of Damaged Item | Value ($) |
|---|---|---|
| 1 | LG Flatscreen TV - 3D | 3500 |
| 2 | Sony Flatscreen TV | 1500 |
| 3 | AC Unit | 4500 |
| 4 | Water heater | 1200 |
| 5 | Dell Laptop | 1500 |
| 6 | MacBook Pro Laptop | 2500 |
| 7 | Dell Printer | 850 |
| 8 | Dell Printer | 450 |
| 9 | Washer | 1250 |
| 10 | Dryer | 1100 |
| 11 | Ceiling Fans x 4 | 1350 |
| 12 | Dishwasher | 900 |
| 13 | Oven | 1600 |
| 14 | Dell Portable Projector and bulbs | 3200 |
| 15 | | |
| 16 | Page Total — — — — — — — — — — — — — | $25400 |

| 17 | | |
|----|---|---|
| 18 | | |
| 19 | | |
| 20 | | |
| 21 | | |
| 22 | | |
| 23 | | |
| 24 | | |
| 25 | | |
| 26 | | |
| 27 | | |
| 28 | | |
| 29 | | |
| 30 | | |
| 31 | | |
| 32 | | |
| 33 | | |
| 34 | | |
| 35 | | |

Total: $ __25400__