# Exhibit D

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION** | **MDL NO. 2047** **SECTION: L** |
| **THIS DOCUMENT RELATES TO:** *Elizabeth Bennett, et al. v. Knauf Gips, KG, et al.* **2:14-cv-02722-EEF-JCW** | **JUDGE ELDON FALLON** **MAG. JUDGE WILKINSON** |

**PLAINTIFF FACT SHEET**

Name of Plaintiff:  Anjali Van Drie

Affected Property Address:  4101 NW 22nd Street, Cape Coral, FL  33993

## I.  Purchase, Sale and/or Transfer of Ownership of Property

1. On what date did you purchase the Property?

**Response**:  Plaintiff objects to this question as duplicative.  In addition, Plaintiff objects to this question on the ground that it seeks information in the possession of, known to, or otherwise equally available to the defendants.  Plaintiff has previously provided this information to defendants in the Bennett Supplemental Plaintiff Profile Form ("SPPF").  Plaintiff directs the defendants to Section II of the SPPF. Without waiving said objection, Plaintiff adopts the SPPF response again here and intends to provide the exact same date as provided in the verified SPPF as follows: Plaintiff purchased the property:

(Month/Day/Year)        08  /  20  /  2008

2. When you took ownership of the Property, what was the name of the seller?

Thomas Jason Sawyer

1

3.  Name and address of the realtor?

Ines Luciano, Century 21, Cape Coral, FL

4.  Name and address of the closing agent?

MLS Title, 12580 University Drive, #102, Ft. Myers, FL  33907

5.  What was the price of the home when you purchased it?  $  171,200.00

6.  Was it an "as-is" sale?

**Response:**  Plaintiff objects to the use of "as-is" in this question as vague, ambiguous, uncertain, and unintelligible; consequently, Plaintiff cannot determine the exact nature of the information being sought.  This term is not defined and is not commonly understood with one accepted meaning; multiple inpretations are possible.  Without waiving said objection, plaintiff responds as follows:

☐ Yes   ☑ No   ☐ I'm not sure.

7.  If you sold or transferred ownership of the Property, what was the name of the purchaser?

N/A

8.  If you sold or transferred ownership of the Property, what was the name and address of the realtor?

N/A

9.  If you sold or transferred ownership of the Property, what was the name and address of closing agent?

N/A

10.  If you sold or transferred ownership of the Property, what was the price paid for home?
                     $  N/A

## II.  Appraisal of the Home

11.  Date of each appraisal:

        a. _____/_____/20_____
        b. _____/_____/20_____

2

**PFS REQUEST FOR DOCUMENT PRODUCTION #1**: Please produce copies of any and all appraisals performed on the house both prior and subsequent to the occurrence of any of the events allenged in the petition.

>   **Response**: All documents in Plaintiff's possession responsive to this request are attached as "Exhibit 1."

## III.  Discovery of Drywall

12.  Date that the property was constructed and/or renovated that installed the allegedly defective Chinese Drywall.

**Response**:  Plaintiff objects to this question as duplicative.  In addition, Plaintiff objects to this question on the ground that it seeks information in the possession of, known to, or otherwise equally available to the defendants.  Plaintiff has previously provided this information to defendants in the Bennett Supplemental Plaintiff Profile Form ("SPPF").  Plaintiff directs the defendants to  Section II of the SPPF. Without waiving said objection, Plaintiff adopts the SPPF response again here and intends to provide the exact same date as provided in the verified SPPF as follows: The property construction and/or renovation that installed the allegedly defective drywall occurred on or about the following date (to the best of my knowledge):

>   (Month/Day/Year)           ____/____/20 _06__

**PFS REQUEST FOR DOCUMENT PRODUCTION #2**: Please produce all documents, reports, photographs, videotapes, samples and any other materials which evidence and/or identify that there is defective Chinese Drywall in the Property.

>   **Response**: All documents in Plaintiff's possession responsive to this request are attached as "Exhibit 2."

## IV.  Manufacturer/Seller of Drywall

13.  Who sold or distributed the drywall in the house?

**Response**:  Plaintiff objects to this question as duplicative.  In addition, Plaintiff objects to this question on the ground that it seeks information in the possession of, known to, or otherwise equally available to the defendants.  Plaintiff has previously provided this information to defendants in the Plaintiff Profile Form ("PPF"). Plaintiff directs the defendants to  Section X of the PPF.  Without waiving said objection, Plaintiff adopts the PPF response again here and intends to provide the exact same information as provided in the verified PPF as follows:   The drywall Supplier's name (to the best of my knowledge) is:

I don't know.
_____

**PFS REQUEST FOR DOCUMENT PRODUCTION #3**: Please produce all documents, reports, photographs, videotapes, samples and any other materials which evidence and/or identify the manufacturer of drywall installed in the house. The submission must be in the form of PTO 1(B).

> **Response**: All documents in Plaintiff's possession responsive to this request are attached as "Exhibit 3."

## V.  Damages

14.  Identify any harm, financial or otherwise, that you contend was caused by defective Chinese Drywall installed in the Property.

**Response**:  Plaintiff directs the defendants to review the complaint filed with the court in this case for a full listing of the claims being asserted and the damages being sought.  The defective Knauf Chinese Drywall emitted gasses that cause damage to Plaintiff's home and the personal property contained therein.  It also significantly diminished the use and enjoyment of the home; therefore, Plaintiff seeks the following:  all compensatory, statutory, and/or punitive damages; all pre-judgment and post-judgment interest as allowed by law; any appropriate injunctive relief; an award of attorney's fees as allowed by law; an award of taxable costs; and, any and all such further relief as a jury or judge presiding over my trial deems just and proper.  Other damages include, but are not limited to:

Loss of use of money spent on damages items in home - for instance, damage to a/c coils

required replacement twice in 10 years.  I also lost many other personal property items.

15.  If you contend that you entered personal bankruptcy as a result of damage to your property from defective Chinese Drywall, please describe the facts and circumstances that relate to your claim.

N/A

16.  If you contend that you entered short sale and/or foreclosure as a result of damage to your property from defective Chinese Drywall, please describe the facts and circumstances that relate to your claim.

N/A

4

**PFS REQUEST FOR DOCUMENT PRODUCTION #4**: If you claim loss of income, please produce any copies of any and all documentation upon which you intend to rely upon to prove this claim.

> **Response**: All documents in Plaintiff's possession responsive to this request are attached as "Exhibit 4."

17.  If you claim diminution of the property as a result of Chinese Drywall, state with particularity each fact which supports your claim.

It is my understanding that the property is now valued $12,000 less, before Chinese

drywall is fully remediated.

18.  Identify the appliances, fixtures and/or other electronics, if any, that you claim were damaged by Chinese Drywall in the property.

> **Response**: An list of damaged items is attached as "Exhibit 14."

19.  If you vacated the property because of the alleged presence of Chinese Drywall, please provide:  Address of each location you stayed thereafter.

a. N/A

b. _____

c. _____

20.  If you vacated the property because of the alleged presence of Chinese Drywall, please provide:  Time periods in which you resided at each property.

a. N/A /_____/20_____  to  _____/_____/20_____

b. _____/_____/20_____  to  _____/_____/20_____

c. _____/_____/20_____  to  _____/_____/20_____

21.  If you vacated the property because of the alleged presence of Chinese Drywall, please provide:  Moving costs and/or alternative living expenses you claim to have incurred as a result of the alleged presence of Chinese Drywall.

a. $ N/A

b. $_____

c. $_____

**PFS REQUEST FOR DOCUMENT PRODUCTION #5**:  If you vacated the property because of the alleged presence of Chinese Drywall, please provide any documentation to support your claims.

> **Response:**  All documents in Plaintiff's possession responsive to this request are attached as "Exhibit 5."

22.  Are you claiming damages for personal injury? ☐ Yes (explain below) ☑ No

_____

_____

23.  If you suffered personal injuries as a result of the alleged presence of Chinese Drywall:  Date you allege that you first sustained personal injuries as a result of your exposure to allegedly defective Chinese Drywall.

> **Response:**   ☑ N/A

24.  If you suffered personal injuries as a result of the alleged presence of Chinese Drywall:  What specific injuries have you suffered?

> **Response:**   ☑ N/A

25.  If you suffered personal injuries as a result of the alleged presence of Chinese Drywall:  Name and address of any doctor, physician, surgeon, chiropractor, or osteopath who examined and/or treated your alleged injuries.

> **Response:**   ☑ N/A

## VI.  Potential Witnesses/Evidence

26.  Has any written or recorded statement been taken from any witness or person who has knowledge of relevant facts, including the nature, character, and extent of the injuries referred to in the petition, and for each statement identified?

> ☐ Yes ☑ No ☐ I don't know

27.  If the answer to 26 is "yes," please state:  The name, address, and telephone number of the person from whom the statement was taken.

N/A_____

_____

6

28.  If the answer to 26 is "yes," please state:  The name, address, and telephone number of the person who took the statement.

N/A

29.  If the answer to 26 is "yes," please state:  The name address, and telephone number of the party having custody of such statement.

N/A

30.  If the answer to 26 is "yes," please state:  The date the statement was taken.

N/A

## VII.   Already Remediated Properties

31.  If you already remediated the Property, who conducted the remediation?

   **Response:**    ☑ N/A

32.  When did the remediation commencement date occur?

   **Response:**    ☑ N/A

33.  When did the remediation end date occur?

   **Response:**    ☑ N/A

34.  What was the scope of the remediation and the scope of the work carried out?

   **Response:**    ☑ N/A

35.  What costs or expenses, if any, did you incur related to the remediation of the Property?

   **Response:**    ☑ N/A

36.  Were any samples from the remediation retained?

**Response**:   ☑ N/A

37.  If the response to 36 is "yes," were the samples compliant with PTO 1(B)?

**Response**:   ☑ N/A

38.  Were any photographs taken of the allegedly defective Chinese Drywall?

**Response**:   ☑ N/A

39.  If the response to 38 is "yes," were the photographs compliant with PTO 1(B)?

**Response**:   ☑ N/A

**PFS REQUEST FOR DOCUMENT PRODUCTION #6**:  Please produce the following documentation concerning the remediation of the Property:  Any evidence of KPT Chinese Drywall and Non-KPT Chinese Drywall, if any, in the Property prior to remediation.

**Response**:  All documents in Plaintiff's possession responsive to this request are attached as "Exhibit 6."

**PFS REQUEST FOR DOCUMENT PRODUCTION #7**:  Please produce the following documentation concerning the remediation of the Property:  Interior photographs of the Affected Property immediately prior to the commencement of, and following completion of, the remediation, including photographs and/or video images of the flooring and major components such as cabinets, moldings, doors, intercom systems, and fixtures for every room and bathroom and, to the extent possible, security systems, appliances and audio such as surround sound.

** The photographs do not need to be pictures taken specifically for the litigation. For example, family photographs or photographs taken for purposes of refinancing a mortgage are acceptable in the absence of other photographs.

**Response**:  All documents in Plaintiff's possession responsive to this request are attached as "Exhibit 7."

**PFS REQUEST FOR DOCUMENT PRODUCTION #8**:  Please produce the following documentation concerning the remediation of the Property:  The remediation contract and an itemization from the contractor who performed the remediation work of the materials used during the remediation, including, but not limited to, manufacturer, model number, and quantity.

**Response**:  All documents in Plaintiff's possession responsive to this request are attached as "Exhibit 8."

**PFS REQUEST FOR DOCUMENT PRODUCTION #9**:   Please produce the following documentation concerning the remediation of the Property:  An itemized invoice from the contractor who performed the remediation work ("Itemized Invoice") showing the scope of work carried out.

**Response**:  All documents in Plaintiff's possession responsive to this request are attached as "Exhibit 9."

**PFS REQUEST FOR DOCUMENT PRODUCTION #10**:   Please produce the following documentation concerning the remediation of the Property:  Proof of payment of the Itemized Invoice and any other expenses, such as cancelled checks, credit card statements, etc.

**Response**:  All documents in Plaintiff's possession responsive to this request are attached as "Exhibit 10."

**PFS REQUEST FOR DOCUMENT PRODUCTION #11**:   Please produce the following documentation concerning the remediation of the Property:  A floor plan of the Affected Property with dimensions.

**Response**:  All documents in Plaintiff's possession responsive to this request are attached as "Exhibit 11."

**PFS REQUEST FOR DOCUMENT PRODUCTION #12**:   Please produce the following documentation concerning the remediation of the Property:  An Environmental Certificate.

**Response**:  All documents in Plaintiff's possession responsive to this request are attached as "Exhibit 12."

**PFS REQUEST FOR DOCUMENT PRODUCTION #13**:   Please produce the following documentation concerning the remediation of the Property:  An Owner Disclosure Affidavit in the form attached as Exhibit 1, which includes a certification that the materials provided comprise all of the available documentation regarding the following:  The drywall that was in the Affected Property prior to the commencement of the remediation; and, the scope, extent, and cost of the remediation.

**Response**:  All documents in Plaintiff's possession responsive to this request are attached as "Exhibit 13."

## **VERIFICATION**

I hereby verify that the responses to the Plaintiff Fact Sheet are correct to the best of my knowledge.


_____          _____
Signature of Plaintiff                                      Date    1/4/19


_____
Printed Name    Anjali  Van Dorre

# Exhibit 1

 **Lee County Property Appraiser**

**Tax Year** 

Next Parcel Number   Previous Parcel Number   Tax Estimator   Cape Coral Fees   Tax Bills   Print

## Property Data
### STRAP: 36-43-22-C2-05280.0500  Folio ID: 10011018

#### Owner Of Record - Sole Owner

DRIE VAN ANJALI
4101 NW 22ND ST
CAPE CORAL FL 33993

#### Site Address

4101 NW 22ND ST
CAPE CORAL FL 33993

#### Property Description
**Do not use for legal documents!**

CAPE CORAL UNIT 82
BLK 5280 PB 24 PG 126
LOTS 50 + 51

#### Classification / DOR Code

SINGLE FAMILY RESIDENTIAL / 01

#### [ Tax Map Viewer ] [ View Comparables ]



#### [ Pictometry Aerial Viewer ]

#### Current Working Values

| Just | 11,913 | As Of | 08/11/2017 |
|------|--------|-------|------------|

#### Attributes

| | |
|---|---|
| Land Units Of Measure | UT |
| Units | 1.00 |
| Frontage | 80 |
| Depth | 125 |
| Total Number of Buildings | 1 |
| Total Bedrooms / Bathrooms | 3 / 2.0 |
| Total Living Area | 2,246 |
| 1st Year Building on Tax Roll | 2006 |
| Historic District | No |

#### Image of Structure



◀ Photo Date January of 2007 ▶

---

➕ ## Exemptions

➕ ## Values (2017 Tax Roll)

➕ ## Taxing Authorities

➖ ## Sales / Transactions

| Sale Price | Date | OR Number | Type | Description | Vacant/Improved |
|------------|------|-----------|------|-------------|-----------------|
| 0.00 | 03/10/2015 | 2015000051044 | 11 | **Sales disqualified as a result of examination of the deed** Corrective Deed, Quit Claim Deed, or Tax Deed; deed bearing Florida Documentary Stamp at the minimum rate prescribed under Chapter 201, F.S.; transfer of ownership in which no documentary stamps were paid | I |
| 10.00 | 03/09/2015 | 2015000243234 | 11 | **Sales disqualified as a result of examination of the deed** Corrective Deed, Quit Claim Deed, or Tax Deed; deed bearing Florida Documentary Stamp at the minimum rate prescribed under Chapter 201, F.S.; transfer of ownership in which no documentary stamps were paid | I |

| 171,200.00 | 08/20/2008 | 2008000233393 | 06 | **Sales qualified and included for sales ratio analysis**<br>Qualified (Fair Market Value / Arms Length / One STRAP #) | I |
| 125,000.00 | 11/08/2005 | 2005000141229 | 06 | **Sales qualified and included for sales ratio analysis**<br>Qualified (Fair Market Value / Arms Length / One STRAP #) | V |
| 100,000.00 | 07/13/2005 | 4829/2858 | 08 | **Sales disqualified as a result of examination of the deed**<br>Disqualified (Doc Stamps Greater than .70/SP Gr. than $100) | V |
| 100.00 | 02/01/1996 | 2726/3927 | 01 | **Sales disqualified as a result of examination of the deed**<br>Disqualified (Doc Stamp .70 / SP less th $100 / Other Disq) | V |
| 0.00 | 05/20/1988 | 2726/3930 | 03 | **Sales disqualified as a result of examination of the deed**<br>Disqualified (Interest Sales / Court Docs / Government) | V |
| 5,000.00 | 09/21/1984 | 1754/3493 | 08 | **Sales disqualified as a result of examination of the deed**<br>Disqualified (Doc Stamps Greater than .70/SP Gr. than $100) | V |

## ➕ Building/Construction Permit Data

## ➕ Parcel Numbering History

## ➕ Location Information

## ➕ Solid Waste (Garbage) Roll Data

## ➕ Flood and Storm Information

## ➖ Appraisal Details (2017 Tax Roll)

### Land

#### Land Tracts

| Use Code | Use Code Description | Depth | Frontage | Number of Units | Unit of Measure |
|---|---|---|---|---|---|
| 100 | Single Family Residential | 125 | 80 | 1.00 | Units |

#### Land Features

| Description | Year Added | Units |
|---|---|---|
| IRRIGATION SYSTEM LAWN | 2006 | 1 |
| FENCE - CHAIN LINK - 4 FOOT | 2008 | 252 |

### Buildings

#### Building 1 of 1

#### Building Characteristics

| Improvement Type | Model Type | Stories | Living Units |
|---|---|---|---|
| 102 - Ranch | 1 - single family residential | 1.0 | 1 |

| Bedrooms | Bathrooms | Year Built | Effective Year Built |
|---|---|---|---|
| 3 | 2.0 | 2006 | 2006 |

#### Building Subareas

| Description | Heated / Under Air | Area (Sq Ft) |
|---|---|---|
| BAS - BASE | Y | 2,246 |
| FGR - FINISHED GARAGE | N | 597 |
| FOP - FINISHED OPEN PORCH | N | 84 |
| FOP - FINISHED OPEN PORCH | N | 133 |
| FSP - FINISHED SCREEN PORCH | N | 209 |

| Building Front Photo | Building Footprint |
|---|---|





**Photo Date: January of 2007**

TRIM (proposed tax) Notices are available for the following tax years
[ 2007 2008 2009 2010 2011 2012 2013 2014 2015 2016 2017 ]

# Exhibit 2

# Exhibit 3

# Property Screening Report

## 4101 NW 22nd St., Cape Coral, FL 33993

Screening Date:

1-29-18

Prepared for:

Anjali Vandrie

Report Number:

FL09-0643

CDS Inspector:

Julie Sommerville



Inspections and documentation from leading experts



February 5, 2018

Anjali Vandrie
4101 NW 22nd St.
Cape Coral, FL 33993

RE: Chinese Drywall Screening Report Number FL09-0643

Ms. Vandrie,

At your request, an inspection of the above referenced property (4101 NW 22nd St) was performed on January 29, 2018.  Chinese Drywall Screening, LLC is submitting the enclosed report which is a professional opinion based on a visual inspection of the accessible materials and x-ray fluorescence testing of the drywall throughout the property.

Based on our visual observations of blackened electrical wires coupled with known affects from reactive drywall, CDS is of the opinion that reactive drywall is present in the above referenced property.  The distinctive odor associated with corrosive drywall was noticed upon entry and throughout the inspection.  Drywall markings discovered that are part of Multi-district Litigation case # 2047 (MDL 2047) are:

| No. | Drywall Mfg | Markings on Drywall | Location in home |
|-----|-------------|---------------------|------------------|
| 9 | Knauf-Tianjin (KPT) | KNAUF-TIANJIN China ASTM C-36 | Garage ceiling |
| TBD | Taishan | DRYWALL 4 feet*12 feet*1/2" | Garage ceiling |

Based on the home's **approximate size of 2,650 sf (including garage)** with **10' – 12' average ceiling height,** we estimate that there is **12,000 sf of drywall** in the home.

We trust that the thoroughness and quality of this report meets or exceeds your expectations.  Please feel free to contact us should you have any questions regarding our report or if we may be of further assistance to you.

Sincerely,

Howard Ehrsam, P.E., LEED AP
CGC 1509717
on behalf of Chinese Drywall Screening, LLC

Enclosures: Report with Photo Exhibit



# Overview

## Overview of Subject Property



**Client**:  Anjali Vandrie

**Address:**  4101 NW 22nd St.
              Cape Coral, FL 33993

**Size:** Total estimated size -  2,650 sf  (including garage)

**Exterior wall types:**  CBS - Concrete Block exterior

**Completion date:**  2006



# Summary Narrative

## Observations and Conclusions

### Observations

- Blackening or "black deposits" defined to be copper sulfide by Unified Engineering File No. 4050 associated with reactive drywall was observed on the external refrigerator line.  Corrosion penetrated the protective coating on the coils.  The manufacturer date of the A/C unit is 2014.
- Blackening/soot residue was observed on the exposed wiring of inspected receptacles and switches throughout the property.
- Blackening was not observed on the control wires of the garage door opener.
- Blackening was observed on the copper plumbing water lines under the bathroom sink.  The kitchen sink plumbing components had been replaced with new.
- Fixtures in the bathrooms had corrosive spotting.
- Walls and ceilings were tested utilizing a Thermo Fisher x-ray fluorescence (XRF) analyzer throughout the property.  There is corrosive drywall throughout the property, including the ceilings and garage. Strontium levels similar to Knauf-Tianjin (KPT)  were between 2,600 ppm and 3,000ppm.  **MDL 2047 Drywall Index No. 9 – KPT** and **MDL 2047 Drywall Index No. TBD – Taishan**.  Markings were similar to several types of Taishan, including Index Number 35.  Labels were observed in the interior and garage ceilings.
- There was an odor associated with corrosive drywall throughout the property.

### Conclusions

Based on our visual observations, testing, experience and current state of knowledge in the industry, Chinese Drywall Screening, LLC is of the professional opinion that reactive Chinese drywall **is** present throughout the subject property, specifically **MDL 2047 Index No. 9 – KPT and MDL 2047 Index No. TBD - Taishan**

Inspection and testing was done for general information only.  Additional testing involving cutting and scraping of walls would be needed to verify ceilings and garage along with actual extents of the various types of drywall discovered.

It is the intent of CDS to inform and empower the Client with enough knowledge to make the best, well informed decision that is in the best interests of the Client.  Towards that end, we recommend that you contact an attorney to discuss your legal rights, including potential claims against your builder, along with the installer, supplier and manufacturer of the drywall.  Additional claims against parties of the real estate transaction may also be explored.



What you can do today:  Three primary items to consider for immediate action are:  1) Mortgage forbearance if applicable, 2) Property tax reduction and 3) Legal representation regarding claims against the manufacture.

Time is of the essence and time frames for filing claims may end.  It is critical to understand the implications with these and we recommend seeking professional consultation for details.

For owners of properties with reactive drywall, it important to understand preservation of evidence when selling or remediating as well as the importance of 3rd party verification of the remediation.  More information is available on our website or toll free at 855- CDW-Help (855-239-4357).



Exhibit A

# Certification

## Certification of the Engineer

The undersigned do hereby certify that, to the best of our knowledge and belief:

- The statements of fact contained within this report are true and correct.

- As applicable, the statements of opinions have certain limitations. It is not feasible and is impossible to confirm 100% of corrosive drywall was either removed or is not present. There are several conditions we have seen that could prevent discovery without a more exhaustive investigation. They include, but are not limited to:
    - Low Strontium, corrosive drywall that is domestic and non-homogeneous.
    - Limited amounts of corrosive drywall in inaccessible areas or installed in a way that would seclude it from available receptacles and switches.
    - Limited amounts of high strontium drywall covered with joint compound or heavy textures hindering detection by x-ray fluorescence.
    - Variable amounts of low off-gassing drywall or drywall with corrosive recycled gypsum.

- We have no present or prospective interest in the property that is the subject of this report and we have no personal interest with respect to the parties involved. We have no bias with respect to the property that is the subject of this report or to the parties involved with this agreement.

- The information in this report is based on the existing conditions of the structures materials, documents, and information (written or verbal) supplied by the contractor, the owner or their representatives, and our observations during the inspection.

- Our compensation or engagement in this assignment is not contingent upon the development or reporting of a predetermined conclusion that favors the cause of the client, the remediator, the attainment of a stipulated result, or the occurrence of a subsequent event directly related to the intended use of this report.

- Any use of this report by any other parties without our expressed or written consent is prohibited. Should another individual or entity rely on this analysis or its conclusions without our consent, that shall indemnify Chinese Drywall Screening, LLC, its employees, and service providers from all damages, losses, or expenses that may occur as a result of its use.

- Our report is based on information made available to us at the time of inspection. Should additional information become available, we reserve the right to determine the impact, if any, of the new information on our opinions and conclusions and to revise our opinions and conclusions if necessary and warranted by the discovery of the additional information.

- The provided services and documentation have been completed to the best of our knowledge and based on current known facts regarding reactive drywall.

Howard Ehrsam, P.E., LEED AP
CGC 1509717
on behalf of Chinese Drywall Screening, LLC



# Scope of Screening

## Scope of Screening Services Performed

Chinese Drywall Screening, LLC (CDS) conducted a detailed visual inspection of the various elements within the home that typically react to the presence of reactive drywall.  Some of the known affects are pitting and blackening copper, tarnishing silver, corroding and spotting chrome and brass, and delaminating mirrors.

Based on the experience, knowledge and ability to recognize these affects, CDS completed a thorough inspection of the various elements of the home containing these materials.  These elements include, but are not limited to:

- Air conditioning components
- Gas lines (if applicable)
- Water lines
- Electrical wiring
- Coaxial cabling
- Refrigerator components
- Mirrors
- Plumbing fixtures and drains

Some of the above elements were photographed during the inspection and are attached.  Refer to the photographs for specific observations.

Items that may be affected by reactive drywall but were not inspected by CDS include, but are not limited to:

- Large appliances
- Small appliances
- Televisions
- Audio/video equipment
- Personal possessions
- Smoke detectors
- Doorbells
- Security systems
- Control wiring
- Thermostats

The following engineering report is utilized as a reference in regards to the visual effects on copper: Unified Engineering Report File 4050 dated March 17, 2009. Unified Engineering, Inc; 3056 Weber Drive, Aurora, IL 60502.



# Scope of Screening

## Scope of Services (continued)

### X-ray Fluorescence (XRF) for Strontium

XRF analyzers are handheld instruments used predominantly to evaluate the presence of metal constituents in building materials or other products.  XRF works by exposing a material to high energy x-rays and measuring those x-rays and comparing them to the known and unique pattern of x-rays produced by each element.  For help in identifying corrosive drywall, XRF is used to determine levels of strontium (Sr) present within the gypsum of the drywall throughout the property.

Strontium is a light metal that is a common, naturally occurring element found within the earth.  Certain geographical regions have higher concentrations than others that can translate to the origin of the raw materials.  Strontium levels above 1850 ppm have been associated with drywall of Chinese origin.  However, high levels of strontium do exist in drywall from other origins and testing must be used in conjunction with other means to produce proper conclusions.

The attenuating effects of joint compound and textures could inhibit the detection of small amounts of corrosive drywall.  Furthermore, corrosive drywall could also be present in inaccessible areas that include, but are not limited to, walls above drop ceilings, fire stopping, behind tile, behind cabinets, under raised floor systems, etc.  However, the potential for these conditions can be reduced or eliminated with proper property evaluation and corrosion evaluation.

Photo Exhibit
4101 NW 22nd
Cape Coral, FL 33993



Photo Exhibit
4101 NW 22nd
Cape Coral, FL 33993



# Photo Exhibit
## 4101 NW 22nd
## Cape Coral, FL 33993

















Photo Exhibit
4101 NW 22nd
Cape Coral, FL 33993



Photo Exhibit
4101 NW 22nd
Cape Coral, FL 33993

  

# Exhibit 4

# Exhibit 5

# Exhibit 6

# Exhibit 7

# Exhibit 8

# Exhibit 9

# Exhibit 10

# Exhibit 11

# Exhibit 12

# Exhibit 13

# Exhibit 14

## Plaintiff Fact Sheet

Plaintiff: Anjali VanDrie

Property Address: 401 NW 22nd St Cape Coral, FL 33993

### Question #18 Itemization (Personal Property Damage)

| # | Description of Damaged Item | Value ($) |
|---|---|---|
| 1 | AC coils 2/4/09 | 475 |
| 2 | AC coils (2nd time) 4/29/11 | 375 |
| 3 | Dryer | 523 |
| 4 | AC compressor & starting capacitor 9/7/11 | 460 |
| 5 | washer | 630 |
| 6 | Water heater | 800 |
| 7 | 6/11/14 capacitor & fan motor for AC | 350 |
| 8 | tv 1 | 700 |
| 9 | tv 2 | 600 |
| 10 | water fixtures in master/toilet connectors | 1200 |
| 11 | kitchen water fixtures / garbage disposal & outlet | 400 |
| 12 | water valves on outside of the house | 350 |
| 13 | water softner | 1200 |
| 14 | jewelry — multiple pieces | 5000 |
| 15 | Indian artifacts – sterling silver | 1500 |
| 16 | laptop | 900 |
| | Desktop computer | 450 |

$15,913 total