# Exhibit D

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL NO. 2047<br><br>SECTION: L |
| THIS DOCUMENT RELATES TO:<br><br>*Elizabeth Bennett, et al. v. Knauf Gips, KG, et al.*<br>2:14-cv-02722-EEF-JCW | JUDGE ELDON FALLON<br><br>MAG. JUDGE WILKINSON |

## PLAINTIFF FACT SHEET

Name of Plaintiff: Skyline Glass, LLC

Affected Property Address: 10769 NW 81 LN, Doral, FL 33178

## I.  Purchase, Sale and/or Transfer of Ownership of Property

1.  On what date did you purchase the Property?

**Response**:  Plaintiff objects to this question as duplicative.  In addition, Plaintiff objects to this question on the ground that it seeks information in the possession of, known to, or otherwise equally available to the defendants.  Plaintiff has previously provided this information to defendants in the Bennett Supplemental Plaintiff Profile Form ("SPPF").  Plaintiff directs the defendants to Section II of the SPPF.  Without waiving said objection, Plaintiff adopts the SPPF response again here and intends to provide the exact same date as provided in the verified SPPF as follows:  Plaintiff purchased the property:

(Month/Day/Year)        01 / 18 / 2018

2.  When you took ownership of the Property, what was the name of the seller?

Balkrishna Rampersad

1

3.  Name and address of the realtor?

Valdemar Burdman & Herman Bloom - Durdman Real Estate Investment

4.  Name and address of the closing agent?

Clerk of Court, Circuit Court of the 11th Judicial Circuit in and for Miami-Dade County, Florida

5.  What was the price of the home when you purchased it?  $ 251,000.00

6.  Was it an "as-is" sale?

**Response**:  Plaintiff objects to the use of "as-is" in this question as vague, ambiguous, uncertain, and unintelligible; consequently, Plaintiff cannot determine the exact nature of the information being sought.  This term is not defined and is not commonly understood with one accepted meaning; multiple inpretations are possible.  Without waiving said objection, plaintiff responds as follows:

[✓] Yes   [✓] No   [ ] I'm not sure.

7.  If you sold or transferred ownership of the Property, what was the name of the purchaser?

N/A

8.  If you sold or transferred ownership of the Property, what was the name and address of the realtor?

N/A

9.  If you sold or transferred ownership of the Property, what was the name and address of closing agent?

N/A

10.  If you sold or transferred ownership of the Property, what was the price paid for home?
               $ N/A

## II.  Appraisal of the Home

11.  Date of each appraisal:

        a. _____/_____/20_____
        b. _____/_____/20_____

**PFS REQUEST FOR DOCUMENT PRODUCTION #1**: Please produce copies of any and all appraisals performed on the house both prior and subsequent to the occurrence of any of the events alleneged in the petition.

> **Response**: All documents in Plaintiff's possession responsive to this request are attached as "Exhibit 1."

## III.   Discovery of Drywall

12.   Date that the property was constructed and/or renovated that installed the allegedly defective Chinese Drywall.

**Response**:  Plaintiff objects to this question as duplicative.  In addition, Plaintiff objects to this question on the ground that it seeks information in the possession of, known to, or otherwise equally available to the defendants.  Plaintiff has previously provided this information to defendants in the Bennett Supplemental Plaintiff Profile Form ("SPPF").  Plaintiff directs the defendants to  Section II of the SPPF. Without waiving said objection, Plaintiff adopts the SPPF response again here and intends to provide the exact same date as provided in the verified SPPF as follows: The property construction and/or renovation that installed the allegedly defective drywall occurred on or about the following date (to the best of my knowledge):

(Month/Day/Year)  \_\_\_\_/\_\_\_\_/20 _07_

**PFS REQUEST FOR DOCUMENT PRODUCTION #2**: Please produce all documents, reports, photographs, videotapes, samples and any other materials which evidence and/or identify that there is defective Chinese Drywall in the Property.

> **Response**: All documents in Plaintiff's possession responsive to this request are attached as "Exhibit 2."

## IV.   Manufacturer/Seller of Drywall

13.   Who sold or distributed the drywall in the house?

**Response**:  Plaintiff objects to this question as duplicative.  In addition, Plaintiff objects to this question on the ground that it seeks information in the possession of, known to, or otherwise equally available to the defendants.  Plaintiff has previously provided this information to defendants in the  Plaintiff Profile Form ("PPF"). Plaintiff directs the defendants to  Section X of the PPF.  Without waiving said objection, Plaintiff adopts the PPF response again here and intends to provide the exact same information as provided in the verified PPF as follows:   The drywall Supplier's name (to the best of my knowledge) is:

I don't know.

**PFS REQUEST FOR DOCUMENT PRODUCTION #3**: Please produce all documents, reports, photographs, videotapes, samples and any other materials which evidence and/or identify the manufacturer of drywall installed in the house. The submission must be in the form of PTO 1(B).

> **Response**: All documents in Plaintiff's possession responsive to this request are attached as "Exhibit 3."

## V.  Damages

14.  Identify any harm, financial or otherwise, that you contend was caused by defective Chinese Drywall installed in the Property.

**Response**:  Plaintiff directs the defendants to review the complaint filed with the court in this case for a full listing of the claims being asserted and the damages being sought. The defective Knauf Chinese Drywall emitted gasses that cause damage to Plaintiff's home and the personal property contained therein.  It also significantly diminished the use and enjoyment of the home; therefore, Plaintiff seeks the following:  all compensatory, statutory, and/or punitive damages; all pre-judgment and post-judgment interest as allowed by law; any appropriate injunctive relief; an award of attorney's fees as allowed by law; an award of taxable costs; and, any and all such further relief as a jury or judge presiding over my trial deems just and proper.  Other damages include, but are not limited to:

Once defective drywall was found, I haven't been able to live in the house and I'm paying

$2,000 monthly rent since the purchase.  The total to date is over $24,000.00.

15.  If you contend that you entered personal bankruptcy as a result of damage to your property from defective Chinese Drywall, please describe the facts and circumstances that relate to your claim.

N/A

16.  If you contend that you entered short sale and/or foreclosure as a result of damage to your property from defective Chinese Drywall, please describe the facts and circumstances that relate to your claim.

N/A

4

**PFS REQUEST FOR DOCUMENT PRODUCTION #4**: If you claim loss of income, please produce any copies of any and all documentation upon which you intend to rely upon to prove this claim.

> **Response**: All documents in Plaintiff's possession responsive to this request are attached as "Exhibit 4."

17.  If you claim diminution of the property as a result of Chinese Drywall, state with particularity each fact which supports your claim.

With Chinese drywall considered, the home is now worth only $75,000.00.

_____

_____

_____

_____

18.  Identify the appliances, fixtures and/or other electronics, if any, that you claim were damaged by Chinese Drywall in the property.

> **Response**: An list of damaged items is attached as "Exhibit 14."

19.  If you vacated the property because of the alleged presence of Chinese Drywall, please provide:  Address of each location you stayed thereafter.

  a. 7311 NW 12 ST, Miami, FL  33126 _____

  b. _____

  c. _____

20.  If you vacated the property because of the alleged presence of Chinese Drywall, please provide:  Time periods in which you resided at each property.

  a. __01__ / __18__ /20_18___   to   present /_____/20_____

  b. _____/_____/20_____   to   _____/_____/20_____

  c. _____/_____/20_____   to   _____/_____/20_____

21.  If you vacated the property because of the alleged presence of Chinese Drywall, please provide:  Moving costs and/or alternative living expenses you claim to have incurred as a result of the alleged presence of Chinese Drywall.

  a. $ _24,000.00 to date rent_

  b. $ _2,000/month rent___

  c. $_____

**PFS REQUEST FOR DOCUMENT PRODUCTION #5**:  If you vacated the property because of the alleged presence of Chinese Drywall, please provide any documentation to support your claims.

> **Response:** All documents in Plaintiff's possession responsive to this request are attached as "Exhibit 5."

22.  Are you claiming damages for personal injury?  ☐ Yes (explain below) ☑ No

_____

_____

23.  If you suffered personal injuries as a result of the alleged presence of Chinese Drywall:  Date you allege that you first sustained personal injuries as a result of your exposure to allegedly defective Chinese Drywall.

> **Response:**   ☑ N/A

24.  If you suffered personal injuries as a result of the alleged presence of Chinese Drywall:  What specific injuries have you suffered?

> **Response:**   ☑ N/A

25.  If you suffered personal injuries as a result of the alleged presence of Chinese Drywall:  Name and address of any doctor, physician, surgeon, chiropractor, or osteopath who examined and/or treated your alleged injuries.

> **Response:**   ☑ N/A

## VI.  Potential Witnesses/Evidence

26.  Has any written or recorded statement been taken from any witness or person who has knowledge of relevant facts, including the nature, character, and extent of the injuries referred to in the petition, and for each statement identified?

   ☐ Yes   ☑ No   ☐ I don't know

27.  If the answer to 26 is "yes," please state:  The name, address, and telephone number of the person from whom the statement was taken.

N/A _____

_____

28.  If the answer to 26 is "yes," please state:  The name, address, and telephone number of the person who took the statement.

N/A

29.  If the answer to 26 is "yes," please state:  The name address, and telephone number of the party having custody of such statement.

N/A

30.  If the answer to 26 is "yes," please state:  The date the statement was taken.

N/A

## VII.   Already Remediated Properties

31.  If you already remediated the Property, who conducted the remediation?

Atlas Construction

32.  When did the remediation commencement date occur?

_07_ / _01_ /20 _18_

33.  When did the remediation end date occur?

_01_ / _18_ /20 _19_

34.  What was the scope of the remediation and the scope of the work carried out?

Complete remediation following the federal court's approved protocol.

35.  What costs or expenses, if any, did you incur related to the remediation of the Property?

$168,190.00
_____

_____

36.  Were any samples from the remediation retained?

☐ Yes    ☑ No

37.  If the response to 36 is "yes," were the samples compliant with PTO 1(B)?

☐ Yes    ☑ No

38.  Were any photographs taken of the allegedly defective Chinese Drywall?

☑ Yes    ☐ No

39.  If the response to 38 is "yes," were the photographs compliant with PTO 1(B)?

☑ Yes    ☐ No

**PFS REQUEST FOR DOCUMENT PRODUCTION #6**:  Please produce the following documentation concerning the remediation of the Property:  Any evidence of KPT Chinese Drywall and Non-KPT Chinese Drywall, if any, in the Property prior to remediation.

> **Response**:  All documents in Plaintiff's possession responsive to this request are attached as "Exhibit 6."

**PFS REQUEST FOR DOCUMENT PRODUCTION #7**:  Please produce the following documentation concerning the remediation of the Property:  Interior photographs of the Affected Property immediately prior to the commencement of, and following completion of, the remediation, including photographs and/or video images of the flooring and major components such as cabinets, moldings, doors, intercom systems, and fixtures for every room and bathroom and, to the extent possible, security systems, appliances and audio such as surround sound.

** The photographs do not need to be pictures taken specifically for the litigation. For example, family photographs or photographs taken for purposes of refinancing a mortgage are acceptable in the absence of other photographs.

**Response**:  All documents in Plaintiff's possession responsive to this request are attached as "Exhibit 7."

**PFS REQUEST FOR DOCUMENT PRODUCTION #8**:   Please produce the following documentation concerning the remediation of the Property:  The remediation contract and an itemization from the contractor who performed the remediation work of the materials used during the remediation, including, but not limited to, manufacturer, model number, and quantity.

**Response**:  All documents in Plaintiff's possession responsive to this request are attached as "Exhibit 8."

**PFS REQUEST FOR DOCUMENT PRODUCTION #9**:   Please produce the following documentation concerning the remediation of the Property:  An itemized invoice from the contractor who performed the remediation work ("Itemized Invoice") showing the scope of work carried out.

**Response**:  All documents in Plaintiff's possession responsive to this request are attached as "Exhibit 9."

**PFS REQUEST FOR DOCUMENT PRODUCTION #10**:   Please produce the following documentation concerning the remediation of the Property:  Proof of payment of the Itemized Invoice and any other expenses, such as cancelled checks, credit card statements, etc.

**Response**:  All documents in Plaintiff's possession responsive to this request are attached as "Exhibit 10."

**PFS REQUEST FOR DOCUMENT PRODUCTION #11**:   Please produce the following documentation concerning the remediation of the Property:  A floor plan of the Affected Property with dimensions.

**Response**:  All documents in Plaintiff's possession responsive to this request are attached as "Exhibit 11."

**PFS REQUEST FOR DOCUMENT PRODUCTION #12**:   Please produce the following documentation concerning the remediation of the Property:  An Environmental Certificate.

**Response**:  All documents in Plaintiff's possession responsive to this request are attached as "Exhibit 12."

**PFS REQUEST FOR DOCUMENT PRODUCTION #13**:   Please produce the following documentation concerning the remediation of the Property:  An Owner Disclosure Affidavit in the form attached as Exhibit 1, which includes a certification that the materials provided comprise all of the available documentation regarding the

following:  The drywall that was in the Affected Property prior to the commencement of the remediation; and, the scope, extent, and cost of the remediation.

      **Response**:  All documents in Plaintiff's possession responsive to this request are attached as "Exhibit 13."

## VERIFICATION

I hereby verify that the responses to the Plaintiff Fact Sheet are correct to the best of my knowledge.

_____
Signature of Plaintiff

_____
Date    9.19.2019.

SANTIAGO CRUZMAN.
_____
Printed Name

# Exhibit 1



# OFFICE OF THE PROPERTY APPRAISER

## Summary Report

Generated On : 7/16/2018

### Property Information

| | |
|---|---|
| **Folio:** | 35-3007-008-3450 |
| **Property Address:** | 10769 NW 81 LN<br>Doral, FL  33178-6049 |
| **Owner** | SKYLINE GLASS LLC |
| **Mailing Address** | 7311 NW 12 ST STE 5<br>MIAMI, FL 33126 USA |
| **PA Primary Zone** | 2800 TOWNHOUSE |
| **Primary Land Use** | 0410 RESIDENTIAL - TOTAL VALUE : TOWNHOUSE |
| **Beds / Baths / Half** | 3 / 2 / 1 |
| **Floors** | 2 |
| **Living Units** | 0 |
| **Actual Area** | 1,911 Sq.Ft |
| **Living Area** | 1,683 Sq.Ft |
| **Adjusted Area** | 1,683 Sq.Ft |
| **Lot Size** | 1,495 Sq.Ft |
| **Year Built** | 2007 |

### Assessment Information

| Year | 2018 | 2017 | 2016 |
|---|---|---|---|
| **Land Value** | $0 | $0 | $0 |
| **Building Value** | $0 | $0 | $0 |
| **XF Value** | $0 | $0 | $0 |
| **Market Value** | $250,000 | $259,270 | $22,425 |
| **Assessed Value** | $250,000 | $259,270 | $22,425 |

### Benefits Information

| Benefit | Type | 2018 | 2017 | 2016 |
|---|---|---|---|---|

Note: Not all benefits are applicable to all Taxable Values (i.e. County, School Board, City, Regional).

### Short Legal Description

ISLANDS AT DORAL 1ST ADDN
PB 163-50 T-21659
LOT 5 BLK 74
LOT SIZE 1495 SQ FT
FAU 35 3007 001 0700 0701 & 0702



### Taxable Value Information

| | 2018 | 2017 | 2016 |
|---|---|---|---|
| **County** | | | |
| Exemption Value | $0 | $0 | $0 |
| Taxable Value | $250,000 | $259,270 | $22,425 |
| **School Board** | | | |
| Exemption Value | $0 | $0 | $0 |
| Taxable Value | $250,000 | $259,270 | $22,425 |
| **City** | | | |
| Exemption Value | $0 | $0 | $0 |
| Taxable Value | $250,000 | $259,270 | $22,425 |
| **Regional** | | | |
| Exemption Value | $0 | $0 | $0 |
| Taxable Value | $250,000 | $259,270 | $22,425 |

### Sales Information

| Previous Sale | Price | OR Book-Page | Qualification Description |
|---|---|---|---|
| 05/31/2018 | $251,000 | 30999-2179 | Federal, state or local government agency |
| 08/06/2015 | $40,100 | 29732-1364 | Financial inst or "In Lieu of Forclosure" stated |
| 03/01/2007 | $397,990 | 25514-0353 | Sales which are qualified |
| 10/01/2005 | $3,134,254 | 23881-3544 | Other disqualified |

The Office of the Property Appraiser is continually editing and updating the tax roll. This website may not reflect the most current information on record. The Property Appraiser and Miami-Dade County assumes no liability, see full disclaimer and User Agreement at http://www.miamidade.gov/info/disclaimer.asp

Case 2:09-md-02047-EEF-MBN   Document 22471-4   Filed 01/14/20   Page 15 of 35

7/16/18, 1:39 PM

# Exhibit 2

# Exhibit 3



# Chinese Drywall Inspection Report

| Customer Name: | **Santiago Guzman** | Inspection #: | **070318-1076** |
|---|---|---|---|
| Property Address: | **10769 NW 81st Lane** | Inspection Date: | **07/03/2018** |
| Address Line 2: | | Inspector: | **Jorge Garcia** |
| City (State): | **Doral (FL)** | License: | **HI 9540** |
| ZIP: | **33178** | Time: | **5:30 PM** |
| Phone: | **(305) 370-2546** | Weather/Temp: | |

Residences built from 2002 to 2006 may have gypsum board manufactured in China installed on partition walls and/or ceilings. Recent findings have indicated that some Gypsum board manufactured in China may contain elements that "off gas" corrosive agents, causing a varying range of problems to the metallic components in the home.

The purpose of this inspection is to perform visual observations to identify symptoms or evidence consistent with the presence of Chinese manufactured gypsum board. We performed visual inspections of the following components and areas:

1. Removal of air handler panels and visual inspection of copper evaporator coils for oxidation and corrosion.
2. Removal of breaker panel cover and visual inspection of copper wiring for oxidation and corrosion.
3. Removal of a representative number of receptacle covers (1-2 per room) and inspection of copper wiring for oxidation and corrosion.
4. Inspection of all visible copper piping at the water heater and under the sinks for oxidation and corrosion.
5. Inspection of all door hardware, plumbing fixtures and electrical fixtures for visible pitting, corrosion and oxidation.
6. Limited wall cavity inspection with Milwaukee 2310 Digital Inspection Camera (Borescope) for visible manufacturer markings on back of gypsum board (through CATV outlets, 1 per room).
7. Limited attic crawlspace inspection involving moving of blown-in insulation in 3 locations to view backside of ceiling gypsum board to view manufacturer stamps or labels.

Our inspection of these components was limited to observing for symptoms and signs of Chinese manufactured gypsum board. We did not inspect for function, condition of component or any other deficiencies.

Please note that very little backside area of the gypsum board is visible and this inspection is limited to what could be viewed during our limited inspection period and to the degree reasonably possible. Therefore, it is possible that some Chinese manufactured gypsum board may be present in the home but not visible in the areas inspected and not contributing to any symptoms. Furthermore, this is not a complete home inspection. We recommend a complete home inspection be performed to provide condition information on the other components of the home not inspected in the scope of this inspection.

**SUMMARY FINDINGS AND COMMENTS**

**1. Our inspection of these components was limited to observing for symptoms and signs of oxidation known to be caused by off-gassing from Chinese manufactured gypsum board. We did not inspect for function, condition of component or any other deficiencies. Our inspection found the following noted components to have oxidation consistent with evidence of Chinese manufactured gypsum board. Additionally, we perceived a slight smell of sulfur within the interior of the unit at the time of the inspection, which is also one of the symptoms of Chinese gypsum board.**

**2. Based on the above noted findings, we recommend buyer obtain trade estimates, prior to expiration of the due diligence period, to determine the actual scope, options and costs. Costs will vary.**

**The inspection involved visual observations only. No material sampling or lab testing was performed as a part of this inspection.**

INSPECTED BY **Jorge Garcia** # **HI 9540**



ADDRESS



FRONT ELEVATION



COPPER PLUMBING



ELECTRICAL PANEL WIRING



ELECTRICAL PANEL WIRING



BEDROOM OUTLET WIRING



ELECTRICAL PANEL WIRING



ELECTRICAL PANEL WIRING



COPPER PLUMBING



COPPER PLUMBING



BEDROOM OUTLET WIRING



BEDROOM OUTLET WIRING



DOOR HANDLES



COPPER PLUMBING



COPPER PLUMBING

COPPER PLUMBING



COPPER PLUMBING



CHINESE MANUFACTURE



COPPER PLUMBING



COPPER PLUMBING



COPPER PLUMBING



BEDROOM OUTLET WIRING



COPPER PLUMBING

# Exhibit 4

# Exhibit 5

# Exhibit 6

# Exhibit 7

# Exhibit 8

# Exhibit 9

# Exhibit 10

# Exhibit 11

# Exhibit 12

# Exhibit 13

# Exhibit 14

# Plaintiff Fact Sheet

Plaintiff: SANTIAGO GUZMAN / SKYLINE GLASS LLC.

Property Address: 10769 NW 81st LANE.

## Question #18 Itemization (Personal Property Damage)

| #  | Description of Damaged Item | Value ($) |
|----|------------------------------|-----------|
| 1  | DRYER | $600.00 |
| 2  | WASHER | $600.00 |
| 3  | MICROWAVE | $500.00 |
| 4  | STOVE | $900.00 |
| 5  | DISHWASHER | $700.00 |
| 6  | GARBAGE DISPOSAL | $200.00 |
| 7  | FRIDGE | $1300.00 |
| 8  | AC UNIT. | $4000.00 |
| 9  | LAMPS | $800.00 |
| 10 | CEILING FANS. | $700.00 |
| 11 | FIXTURE. | $1500.00 |
| 12 |  |  |
| 13 | TOTAL | $11600.00 |
| 14 |  |  |
| 15 |  |  |
| 16 |  |  |