# Exhibit F

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL NO. 2047<br><br>SECTION: L |
| THIS DOCUMENT RELATES TO:<br><br>*Elizabeth Bennett, et al. v. Gebrueder Knauf Verwaltungsgesellschaft, KG, et al.*<br>2:14-cv-02722-EEF-JCW | JUDGE ELDON FALLON<br><br>MAG. JUDGE WILKINSON |

## DECLARATION OF KURT TOLLIVER

1. I am a plaintiff in this case. I make this declaration from my personal knowledge and, if called upon to do so, could and would competently testify to the matters set forth herein in a court of law.

2. I am the owner of a home with a street address of: 4531 Darwin Boulevard, Port St. Lucie, FL 34953. ("Affected Property").

3. My wife, Suzanne, and I moved to Florida in September of 2015 from Michigan, where we had resided for years prior to the relocation.

4. While in Michigan, I had never heard of "Chinese drywall" or learned of any issues related to defective Chinese-manufactured drywall.

5. I purchased the Affected Property on September 11, 2015, after traveling from Michigan on a handful of occasions to view properties in the Port St. Lucie, Florida area for sale.

6. The first time I had ever heard of Chinese drywall was just prior to our home closing, but the suggestion that some drywall was made in China was meaningless to me. Many

1

products are made in China and I didn't appreciate the implication at the time that the disclosure was made just prior to completing the sale.

7. I also was not aware of any recall notices or defective product warnings issued by a Chinese manufacturer, including Knauf.

8. The information that I learned from a quick internet search led me to believe that most drywall imported from China was no different than that from the United States and a small percentage of drywall was alleged to be defective in some way due to a smell.

9. I also learned that a class action lawsuit was settled before our purchase with very little money being paid to plaintiffs that participated, which indicated to me that the problem being alleged was not severe in nature. I learned that a few hundred dollars had been paid to each plaintiff in that settlement, so that seemed to confirm my understanding that the problem was minor in nature related to an alleged smell.

10. Prior to purchase, I inspected the Affected Property, but through my casual inspection, I did not identify the defective product using my senses and I did not see anything in the home that would lead me to believe that the home contained a defective product.

11. In particular, I did not notice any unusual smell that seemed out of the ordinary, which is the only thing that seemed to be the basis of the lawsuit according to the information I learned at the time.

12. I realize now that I had inadequate information at the time of purchase about the defective nature of the drywall from the Knauf manufacturer and the severity of the problem it posed.

13. I followed through with the purchase of Affected Property because I relied upon the fact that there were no product recalls or product warnings issued in Florida for defective Knauf drywall.

14. I believe I would be considered layman in terms of construction of homes, construction defects, or defective products in general, because I have no training in any of those areas.

15. I believe I acted reasonably in my search for answers about the potential that defective Chinese drywall might be in my Port St. Lucie, Florida home.

16. Had I known that my home, the Affected Property, contained a defective product like defective Knauf-manufactured Chinese drywall that is so severe in nature and so expensive to fix, I never would have offered to purchase it.

17. I attribute the mistake I made in purchasing this home entirely to the lack of adequate warning about the defective drywall.

I declare under penalty of perjury under laws of the United States that the foregoing is true and correct.

Executed on Monday, January 13, 2020, in Port St. Lucie, Florida.

_____
Kurt Tolliver

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL NO. 2047<br><br>SECTION: L |
| THIS DOCUMENT RELATES TO:<br><br>*Elizabeth Bennett, et al. v. Gebrueder Knauf Verwaltungsgesellschaft, KG, et al.*<br>2:14-cv-02722-EEF-JCW | JUDGE ELDON FALLON<br><br>MAG. JUDGE WILKINSON |

## DECLARATION OF SUZANNE TOLLIVER

1. I am a plaintiff in this case. I make this declaration from my personal knowledge and, if called upon to do so, could and would competently testify to the matters set forth herein in a court of law.

2. I am the owner of a home with a street address of: 4531 Darwin Boulevard, Port St. Lucie, FL 34953. ("Affected Property").

3. My husband, Kurt, and I moved to Florida in September of 2015 from Michigan, where we had resided for years prior to the relocation.

4. While in Michigan, I had never heard of "Chinese drywall" or learned of any issues related to defective Chinese-manufactured drywall.

5. I purchased the Affected Property on September 11, 2015, after traveling from Michigan on a handful of occasions to view properties in the Port St. Lucie, Florida area for sale.

6. The first time I had ever heard of Chinese drywall was just prior to our home closing, but the suggestion that some drywall was made in China was meaningless to me. Many

1

products are made in China and I didn't appreciate the implication at the time that the disclosure was made just prior to completing the sale.

7. I also was not aware of any recall notices or defective product warnings issued by a Chinese manufacturer, including Knauf.

8. The information that I learned from a quick internet search led me to believe that most drywall imported from China was no different than that from the United States and a small percentage of drywall was alleged to be defective in some way due to a smell.

9. I also learned that a class action lawsuit was settled before our purchase with very little money being paid to plaintiffs that participated, which indicated to me that the problem being alleged was not severe in nature. I learned that a few hundred dollars had been paid to each plaintiff in that settlement, so that seemed to confirm my understanding that the problem was minor in nature related to an alleged smell.

10. Prior to purchase, I inspected the Affected Property, but through my casual inspection, I did not identify the defective product using my senses and I did not see anything in the home that would lead me to believe that the home contained a defective product.

11. In particular, I did not notice any unusual smell that seemed out of the ordinary, which is the only thing that seemed to be the basis of the lawsuit according to the information I learned at the time.

12. I realize now that I had inadequate information at the time of purchase about the defective nature of the drywall from the Knauf manufacturer and the severity of the problem it posed.

13. I followed through with the purchase of Affected Property because I relied upon the fact that there were no product recalls or product warnings issued in Florida for defective Knauf drywall.

14. I believe I would be considered layman in terms of construction of homes, construction defects, or defective products in general, because I have no training in any of those areas.

15. I believe I acted reasonably in my search for answers about the potential that defective Chinese drywall might be in my Port St. Lucie, Florida home.

16. Had I known that my home, the Affected Property, contained a defective product like defective Knauf-manufactured Chinese drywall that is so severe in nature and so expensive to fix, I never would have offered to purchase it.

17. I attribute the mistake I made in purchasing this home entirely to the lack of adequate warning about the defective drywall.

I declare under penalty of perjury under laws of the United States that the foregoing is true and correct.

Executed on Monday, January 13, 2020, in Port St. Lucie, Florida.

*Suzanne Tolliver*
Suzanne Tolliver

3