UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN RE: CHINESE-MANUFACTURED DRYWALL  *
PRODUCTS LIABILITY LITIGATION        *
                                     *   CIVIL ACTION
                                     *
                                     *   MDL NO. 2047
                                     *
                                     *   SECTION L (2)
**THIS DOCUMENT RELATES TO:**        *
*Elizabeth Bennett, et al. v. Gebr. Knauf*  *
*Verwaltungsgesellschaft, KG, et al.*, No. 14-2722  *

## ORDER & REASONS

Pending before the Court is Defendants' Motion to Deny Class Certification. R. Doc. 22399. The motion is opposed. R. Doc. 22473. The Court heard oral argument on the motion on January 22, 2020. Considering the applicable law and the parties' arguments, the Court now rules as follows.

### I. BACKGROUND

From 2004 through 2006, the housing boom in Florida and rebuilding efforts necessitated by Hurricanes Rita and Katrina led to a shortage of construction materials, including drywall. As a result, drywall manufactured in China was brought into the United States and used to construct and refurbish homes in coastal areas of the country, notably the Gulf Coast and East Coast. Sometime after the installation of the Chinese drywall, homeowners began to complain of emissions of foul-smelling gas, the corrosion and blackening of metal wiring, surfaces, and objects, and the breaking down of appliances and electrical devices in their homes. *See In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, 894 F. Supp. 2d 819, 829–30 (E.D. La. 2012), *aff'd*, 742 F.3d 576 (5th Cir. 2014). Many of these homeowners also began to complain of various physical afflictions believed to be caused by the Chinese drywall.

These homeowners began to file suit in various state and federal courts against homebuilders, developers, installers, realtors, brokers, suppliers, importers, exporters, distributors, and manufacturers who were involved with the Chinese drywall. As a result, many homebuilders also filed suit seeking to recoup their damages. Because of the commonality of facts in the various cases, this litigation was designated as a multidistrict litigation. Pursuant to a Transfer Order from the United States Judicial Panel on Multidistrict Litigation on June 15, 2009, all federal cases involving Chinese drywall were consolidated for pretrial proceedings in MDL 09-2047 before this Court. Since that date, numerous cases have been consolidated, involving thousands of individual claims; over 20,000 documents have been entered into the record, millions of documents have been exchanged in discovery, depositions have been taken in the United States and in China, and over thirty Pretrial Orders have been issued; the Court has appointed steering committees and liaison counsel for plaintiffs, homebuilders, insurers, installers, and manufacturers, and it has presided over monthly status conferences, hearings, and several bellwether trials.

The Chinese drywall at issue was largely manufactured by two groups of defendants: (1) the Knauf Entities and (2) the Taishan Entities. The litigation has focused upon these two entities and their downstream associates and has proceeded on strikingly different tracks for the claims against each group. Because the *Bennett* action only involves the Knauf Entities, the Court does not address the Taishan portion of the litigation in this Order & Reasons.

The Knauf Entities are German-based, international manufacturers of building products, including drywall, whose Chinese subsidiary, Knauf Plasterboard (Tianjin) Co., Ltd. ("KPT"), advertised and sold its Chinese drywall in the United States. The Knauf Entities are named defendants in numerous cases consolidated with the MDL litigation and litigation in state courts.

The Knauf Entities first entered their appearance in the MDL litigation on July 2, 2009. Thereafter, the Court presided over a bellwether trial in *Hernandez v. Knauf Gips KG*, Case No. 09-6050, involving a homeowner's claims against KPT for defective drywall. The Court found in favor of the plaintiff family in *Hernandez*, issued a detailed Findings of Fact and Conclusions of Law, and entered a Judgment in the amount of $164,049.64, including remediation damages in the amount of $136,940.46—which represented a remediation cost of $81.13 per square foot based on the footprint square footage of the house.

Subsequently, the Knauf Entities agreed to institute a pilot remediation program utilizing the remediation protocol formulated by the Court from the evidence in *Hernandez*. The Knauf pilot remediation program is now completed and has remediated more than 2,200 homes containing KPT Chinese drywall using the same general protocol. At the Court's urging, the parties began working together to monetize this program and make it available to a broader class of plaintiffs.

On December 20, 2011, the Knauf Entities and the PSC entered into a global, class Settlement Agreement ("Knauf Settlement Agreement"), which was designed to resolve all Knauf-related, Chinese drywall claims. In addition to the Knauf Settlement Agreement and after a jury trial in a bellwether case, numerous defendants in the chain-of-commerce with the Knauf Entities have entered into class settlement agreements, the effect of which settles almost all of the Knauf Entities' chain-of-commerce litigation. The total amount of the Knauf Settlement is approximately $1.1 billion.

### A. The *Bennett* Class Action

The instant matter is a purported class action filed on November 13, 2014 by Elizabeth Bennett in the Northern District of Alabama. Ms. Bennett raises claims on her own behalf and on

3

the behalf of a nationwide class of similarly situated homeowners who allegedly suffered damages due to the presence of defective Chinese drywall in their homes. These claimants discovered the presence of Knauf-manufactured Chinese drywall in their homes after the Knauf Class Settlement was executed, so they were not a part of the census of claimants covered by the Settlement. The *Bennett* Plaintiffs raise claims against the Knauf Entities for negligence, negligence per se, strict liability, breach of express and/or implied warranty, redhibition, violations of the Louisiana Products Liability Act, private nuisance, negligent discharge of a corrosive substance, unjust enrichment, violations of consumer protection laws, equitable and injunctive relief, and medical monitoring with respect to the alleged manufacture of defective Chinese drywall. In January 2015, the Judicial Panel on Multidistrict Litigation transferred the *Bennett* putative class action to the Eastern District of Louisiana and consolidated it with the *In re Chinese Manufactured Drywall Liability Litigation*, MLD 09-2047, currently pending before this Court.

On May 4, 2018, the *Bennett* Plaintiffs filed the operative Fifth Amended Complaint. R. Doc. 21334. On October 31, 2019, the Court granted the *Bennett* Plaintiffs' amended complaint, R. Doc. 22334, which added several new Plaintiffs to the action. R. Doc. 22357. On that date, the Court also extended many of the Case Management Order's deadlines. R. Doc. 22357. With discovery well underway, the Knauf Defendants have begun to file dispositive motions targeting the claims of several individual plaintiffs in the *Bennett* action, as well as the instant Motion to Deny Class Certification.

II.     **DEFENDANTS' MOTION TO DENY CLASS CERTIFICATION**

Defendants have filed this motion to deny class certification, arguing that Plaintiffs have failed to timely seek certification and that even if certification were sought, the *Bennett* Plaintiffs cannot meet their burden under Rules 23(a), (b)(1), (b)(2), or (b)(3). First, Defendants argue that

4

although this action has been pending for years, Plaintiffs have failed to seek class certification in a manner that complies with Rule 23(c)(1)'s requirement that certification be determined "at an early practicable time." R. Doc. 22399-1 at 6.

Second, Defendants argue that even if certification was timely sought, the proposed class in the *Bennett* action is not certifiable under Rule 23(a) and (b)(3) because the case involves individual issues that predominate over any common ones. R. Doc. 22399-1 at 7. In particular, Defendants argue that neither Rule 23(a)'s commonality requirement nor Rule 23(b)(3)'s predominance requirement are satisfied because the number and variety of claims, including claims for property damage, personal injuries, negligence, negligence per se, strict liability, breach of warranty, redhibition, Louisiana Products Liability Act, private nuisance, and negligent discharge of a corrosive substance, as well as injunctive relief, will require the trial courts to consider the claims of each individual separately under the applicable state law. Because of the startling differences in state law, burdens of proof, and applicable defenses, as well as the unique circumstances of each individual claimant, Defendants argue that class certification should preemptively be denied. Defendants also note that certification is not available under either Rule 23(b)(1)(A) or (b)(2) because Plaintiffs seek monetary relief that is not incidental to the injunctive relief sought, nor under Rule 23(b)(1)(B) because this is not a limited-fund case. R. Doc. 22399-1 at 15-19.

The *Bennett* Plaintiffs oppose the motion. R. Doc. 22473. Plaintiffs contend that, as the party making class allegations, Plaintiffs have the burden of demonstrating that class certification is appropriate. R. Doc. 22473 at 1. Accordingly, the *Bennett* Plaintiffs argue that the motion is premature. R. Doc. 22473 at 1. Plaintiffs argue that the issue of class certification should be

5

decided by the transferor court because that is the court best equipped to handle case-specific motions. R. Doc. 22473 at 4.

Defendants have filed a reply, arguing that Plaintiffs' opposition fails to provide any evidence as to why class certification should be denied. R. Doc. 22478-1 at 1. Defendants additionally argue that their motion is not premature. Lastly, Defendants argue that an MDL transferee court is authorized to address class certification, and that this Court has in fact done so in this MDL.

### III. LAW & ANALYSIS

This transferee Court has been dealing with this litigation for over nine years. It is sufficiently familiarity with the matter to consider the merits of the present motion and it is neither unusual nor improper for a transferee court to do so. *See In re Chinese-Manufactured Drywall Prod. Liab. Litig.*, No. MDL 2047, 2014 WL 4809520 (E.D. La. Sept. 26, 2014) (granting class certification in another portion of this MDL); *see also In re Piper Aircraft Distribution Sys. Antitrust Litig.*, 405 F. Supp. 1402, 1403–04 (J.P.M.L. 1975) ("[Ma]tters concerning class action certification should be included in the coordinated or consolidated pretrial proceedings in order to prevent inconsistent rulings and promote judicial efficiency."). Accordingly, the Court will now consider the motion.

#### A. Motions to Deny Class Certification

The Ninth Circuit has held that "Rule 23 does not preclude a defendant from bringing a 'preemptive' motion to deny class certification." *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 940 (9th Cir. 2009). The *Vinole v. Countrywide Home Loans, Inc.* court reasoned that Rule 23, governing class actions, neither "vests plaintiffs with the exclusive right" to raise class certification issues nor "prohibits a defendant from seeking early resolution" of the question. *Id.*

at 939–40. The Third, Sixth, and Seventh Circuits have held similarly. *See Richardson v. Bledsoe*, 829 F.3d 273, 288 (3d Cir. 2016) (adopting the reasoning in *Vinole* and explaining that "[t]here is no per se rule that a plaintiff must move for class certification before the issue can be considered by the District Court"); *Pilgrim v. Universal Health Card, LLC*, 660 F.3d 943, 949 (6th Cir. 2011) ("[N]othing in the rules says that the court must await a motion by the plaintiffs."); *Kasalo v. Harris & Harris, Ltd.*, 656 F.3d 557, 563 (7th Cir. 2011) ("Consistent with [the language of Rule 23(c)], a court may deny class certification even before the plaintiff files a motion requesting certification."). Although the Fifth Circuit has not directly addressed the issue, it has sanctioned the disposal of class allegations at the pleading stage. *See John v. Nat'l Sec. Fire & Cas. Co.*, 501 F.3d 443, 445 (5th Cir. 2007). Considering the Fifth Circuit's approval of early disposals of class allegations and the persuasive reasoning from the *Vinole* court, the Court concludes that Defendant's motion to deny class certification is not premature. Indeed, courts within this district have granted such motions with approval from the Circuit court. *See, e.g.*, *Chevron USA, Inc. v. Vermilion Par. Sch. Bd.*, 215 F.R.D. 511, 515 (W.D. La. 2003) (granting motion to deny class certification), *aff'd*, 377 F.3d 459, 464 (5th Cir. 2004); *Brandner v. Abbott Labs., Inc.*, No. CIV.A. 10-3242, 2012 WL 195540, at *1 (E.D. La. Jan. 23, 2012) (same).

### B. Class Certification Under Rule 23

Rule 23(a) provides that a class may be certified if the following threshold requirements are satisfied: (1) numerosity, (2) commonality, (3) typicality, (4) adequacy of representation. In addition, the class must satisfy one of the three requirements of Rule 23(b). In this case, Defendants challenge class certification under Rule 23(a)(2), (b)(1), b(2), and b(3). The Court considers each certification standard in turn.

#### 1. Commonality (Rule 23(a)(2))

The commonality requirement is satisfied if at least one issue's resolution will affect all or a significant number of class members. *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 625 (5th Cir. 1999). Commonality, unlike predominance, is a very low threshold that can be met if the resolution of even a single issue will affect a significant number of class members. *Id.*

The only common issue presented in this case is product defect, which, "[f]ollowing years of discovery, bellwether trials, and settlements . . . is not in dispute." R. Doc. 22399-1 at 8. Accordingly, the only remaining issues needing resolution are disputed, individualized questions of entitlement, type, and extent of damages. R. Doc. 22399-1 at 8.

Although the issue of commonality presents significant challenges, they are not necessarily sufficient to thwart certification under Rule 23(a). The commonality requirement under 23(a) merely requires that the resolution of one or more issues will affect a significant number of class members. Here, all proposed class members' claims involve Defendants' defective drywall. The Court has previously found the commonality requirement under 23(a) satisfied in other aspects of this MDL, citing the JPML's consolidation of drywall claims based on commonality of facts. *See In re Chinese-Manufactured Drywall*, 2014 WL 4809520, at *11 ("The factual determination of class-wide property damages is common to the class members, and resolution of this common question will generate common answers apt to drive the resolution of the litigation."). Accordingly, the Court finds that the commonality requirement is satisfied.

2. **Rule 23(b)**

Satisfying the four requirements of Rule 23(a) is, however, not enough to justify class certification. Rule 23(b) must also be satisfied. Rule 23(b) provides that a class action maintainable under Rule 23(a) must also satisfy one of three distinct, additional, requirements. The Court considers each subsection in turn.

8

Rule 23(b)(1) allows a class action to be maintained if:

(1) Prosecuting separate actions by or against individual class members would create a risk of:
   (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or
   (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests.

Fed. R. Civ. P. 23(b)(1). However, "[i]f class members seek only monetary relief, there is no risk of incompatible standards of conduct in having those claims adjudicated individually." *Corley v. Entergy Corp.*, 222 F.R.D. 316, 321 (E.D. Tex. 2004) (citing *Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 421 (5th Cir. 1998)). Because the *Bennett* claimants seek primarily monetary relief from Knauf, certification under Rule 23(b)(1)(A) is inappropriate.

A proposed class that fails under Rule 23(b)(1)(A) may nevertheless be certified if Rule 23(b)(1)(B) is satisfied. However, this rule is typically implicated "when a 'limited fund' exists, such that non-class members seeking damages would likely deplete the fund and deprive class members of any recovery." *Baker v. Washington Mut. Fin. Grp., LLC*, 193 F. App'x 294, 297 (5th Cir. 2006) (citing *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 842 (1999)). This case does not involve a limited fund from which all recoveries must be paid, and there has been no argument made that the disposition of any individual Chinese drywall claim would impact another claimant's ability to recover. Accordingly, certification under Rule 23(b)(1)(B) is inappropriate.

Rule 23(b)(2) allows a class action to be maintained if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). According to the Fifth Circuit, "[t]o qualify for class-wide injunctive relief, class

members must have been harmed in essentially the same way, and injunctive relief must predominate over monetary damage claims." *Maldonado v. Ochsner Clinic Found.*, 493 F.3d 521, 524 (5th Cir. 2007). Further, the requested injunctive relief must be specific. *Id.* Here, it is undisputed that the requested relief is predominantly monetary, as plaintiffs seek monetary damages to compensate them for the damages they suffered allegedly as a result of defective Chinese drywall. Because any injunctive relief sought certainly does not predominate over monetary damage claims in this matter, class certification under Rule 23(b)(2) is inappropriate.

Lastly, the Court considers the predominance rule of Rule 23(b)(3). Rule 23(b)(3) requires that the class share common issues of law or fact that predominate over the questions affecting individual class members. In general, to predominate, common issues must form a significant part of individual cases. *Mullen*, 186 F.3d at 626. Specifically, a district court should consider how the cases would proceed to trial, that is, whether any cases would require individual trials on particular issues. *See Castano v. Am. Tobacco Co.*, 84 F.3d 734, 744-45 (5th Cir. 1996) (finding certification inappropriate where individual trials would be necessary to determine an element of the plaintiffs' fraud claims). Compared to the commonality element of Rule 23, the predominance standard is much "more rigorous." *Steering Comm. v. Exxon Mobil Corp.*, 461 F.3d 598, 603 (5th Cir. 2006). When conducting the predominance analysis, the Court must examine each claim individually to determine how these claims would be tried.

Here, Plaintiffs raise a variety of claims, including claims for property damage, personal injuries, negligence, negligence per se, strict liability, breach of warranty, redhibition, Louisiana Products Liability Act, private nuisance, and negligent discharge of a corrosive substance, as well as injunctive relief. The Plaintiffs are domiciled in five different states, and accordingly their claims arise under five different states' laws and are subject to various applicable burdens of proof

and defenses. The Court heeds the Fifth Circuit's warning that "[i]n a multi-state class action, variations in state law may swamp any common issues and defeat predominance." *Castano*, 84 F.3d at 741. Based on the variety in the individual claims and the fact that, were the cases to go to trial, they would involve different theories of liability, different state laws, different applicable defenses, and different damage calculations, the Court is not convinced that the common issues of liability predominate over the individual issues.

IV. **CONCLUSION**

Considering the foregoing,

**IT IS ORDERED** that Defendant's Motion to Deny Class Certification is **GRANTED**.

New Orleans, Louisiana this 27th day of January, 2020.

_____
Eldon E. Fallon
United States District Judge