# EXHIBIT "A"

**AFFIDAVIT OF ALLISON GRANT, P.A.**
**IN CONNECTION WITH APPLICATION FOR COMMON BENEFIT FEES**

STATE OF NORTH CAROLINA

COUNTY OF BUNCOMBE

BEFORE ME, the undersigned authority personally appeared ALLISON GRANT, ESQ., who, after being first duly sworn, under penalty of perjury, did depose and declare that the following are true correct:

1.      This Affidavit is submitted on behalf of Allison Grant, P.A., of which Affiant is the sole proprietor and member.   Affiant is a member of the Florida Bar and the United States District Court for the Southern District of Florida, and has been practicing law for thirty (30) years.

2.      Affiant has personal knowledge of the facts stated herein.

3.      This Affidavit is submitted in support of the Application of Allison Grant, P.A. for Common Benefit Attorney's Fees.

4.      Affiant, on behalf of Allison Grant, P.A., has expended 1,833.90 hours of common benefit time in connection with the Chinese Drywall litigation from April 1, 2018 to December 31, 2019 and has held costs in the amount of $7,144.13.    All time submitted herein was performed at the request of the Plaintiffs' Steering Committee and all work was performed personally by Affiant.

5.      A detail of the hours submitted by Allison Grant, P.A. is contained in the Case Cost Management System maintained by Philip Garrett pursuant to Pre-Trial Order

1

No. 9.[1]

6.      Allison Grant, P.A. has complied with Pre Trial Order No. 9 in all material aspects and has submitted true and correct time, including entering Affiant's hourly rates. Notably, when preparing lodestar reports, Mr. Garrett deleted Affiant's hourly rates except for the year 2014, at which time the reported rate was $450.00 per hour.      However, Allison Grant, P.A. did not submit any common benefit time for 2014. [2]   Affiant's common benefit work in connection with this Application began in 2018 and, therefore, the 2018 reported rate of $650 per hour should be applied when evaluating Affiant's Application.

7.      Pursuant to PTO 28, the Fee Committee is charged with evaluating "the relative contribution of each common benefit attorney to the outcome of the litigation." PTO 28, at pp. 9-10.   This includes "weigh[ing] reported hours of common benefit . . . in degrees of importance to the relief achieved." (*Id.* at p. 11).      As detailed below, Affiant's dedication to this litigation, particularly when it mattered most and volunteers were scarce, and the value of Affiant's common benefit work in contributing to the successful resolution of these cases is clear and Affiant should be compensated accordingly.

---

1.      A recent lodestar report incorrectly reflects that Allison Grant, P.A. submitted 1,778.30 hours.   It is Affiant's understanding that Mr. Garrett deleted 55.60 hours because Affiant used the task code L190.   However, none of this time relates to fee related matters.   These are legitimate common benefit hours that were authorized by Sandra Duggan, Esq.

2.      A copy of the email between Phillip Garrett and Allison Grant dated July 29, 2019, is attached hereto as Exhibit "1."

a.   <u>Summary of common benefit work performed by Allison Grant, P.A.</u>

Although this Affidavit pertains to common benefit work performed post January 1, 2014, Affiant's work ethic and dedication to this litigation has been present from the outset.   Affiant was proud to have often served as a point person on many topics and to have been able to share some of her knowledge[3] and experiences (including with lenders in an effort to stave off foreclosures) in connection with representing her own clients, and the fruits of her labor (particularly with markings) so that other claimants could benefit as well.   To be clear, Affiant did not submit any time for this work.

With respect to this Application for Common Benefit Fees and Reimbursement of Expenses, in anticipation of the remand of approximately 1,700 Florida Amorin cases to the United States District Court for the Southern District of Florida (Civil Action No. 11-22408), in early 2018, Affiant was invited by the Plaintiffs' Steering Committee ("PSC") to attend meetings and begin preparing for the anticipated transfer of cases.   Affiant's work initially assigned included legal research,

---

3.     By way of just one example, in the course of representing over 1,000 claimants in the MDL, Affiant was relentless in urging contractors to photograph drywall markings. Contractors frequently called upon Affiant to ask questions and forwarded photographs to Affiant to compare or add to her voluminous collection.     On occasion, Affiant advised inspectors, who were unable to find markings, to keep looking based on Affiant's knowledge of brands found in neighboring properties.   As a result, Affiant believes that many claimants that would have otherwise been disqualified from eligibility due to insufficient photographic markings are now eligible for settlement funds.

bolstering evidence of product identification and analyzing damages. This role expanded, oftentimes as a result of Affiant's own initiative, and Affiant quickly became a key and dependable member of the trial team. This was more than a full-time job. For the next fifteen (15) months, Affiant's life revolved around this case.

On August 14, 2018, Judge Cooke entered an Order Setting Civil Trial Date and Pretrial Deadlines for the approximate 1,700 Florida Amorin claimants. [SDFL ECF No. 47]. Plaintiffs were ordered to select twenty (20) claimants ("Priority Plaintiffs") for trial. Affiant undertook the review of hundreds of claimant/client files searching for potential trial candidates, and then conducted interviews, carefully reviewed inspection reports and other pertinent documents pertaining to candidates, and reviewed matters of public record. It was important to have diversity among the Priority Plaintiffs in terms of ownership status of the affected property, remediation status and product identification, as well as favorable facts and sympathetic claimants[4], not to mention a sincere willingness and ability of the Priority Plaintiffs to

---

4. Affiant hand-picked two extremely sympathetic and credible Plaintiffs, Jeovany and Monica Nunez. The Nuñezes were a young and hard-working couple. When their young children were getting sick from the Chinese drywall, they had no choice but to move out of their toxic home. They continued paying their mortgage while they renting an apartment until they were able to secure a forbearance, which the lender renewed several times. They had hoped the lawsuit would resolve and they could return to their home and remediate. However, after years of hanging on to the property, in or around 2017, the lender refused to grant another forbearance because during a government shutdown, it appeared that Mr. Nuñez (who works for the government) became unemployed, albeit merely for the time of the shutdown. Thereafter, Nuñezes lost their home to foreclosure. The Nuñezes' testimony regarding other losses was remarkable.

4

participate.    Affiant's five (5) proposed candidates were added as Priority Plaintiffs. Thereafter, Affiant worked daily with these Priority Plaintiffs for several months, gathering documents, responding to discovery, preparing them for deposition, and attending/defending depositions, most of which occurred during holidays and in the face of mounting deadlines. [5]   Affiant also actively worked with Plaintiffs' expert witnesses, participating in meetings, strategizing regarding categories of damages for presentation at trial, and reviewing expert reports.    Affiant assisted in preparing Joint Stipulations, witness and exhibit lists and later in preparing several motions pertaining to the Priority Plaintiffs, including motions in limine and oppositions to Defendants' motions for summary judgment.

        As more particularly described below, Affiant also spent months reviewing newly produced and recently unsealed and translated documents.   Affiant also worked with Heather Laborde from Herman Herman & Katz to enable Affiant to review previously scanned documents and prior depositions (and exhibits) to bolster the evidence linking certain markings/brands to Defendants.    This led Affiant to

---

Mrs. Nuñez explained how one of her daughters stopped growing while living in the affected property.  Mrs. Nuñez also suffered a miscarriage (twins) and the couple was told they were unable to conceive.   Although they were not pursuing a claim for bodily injury, this testimony was compelling and the fact that the couple conceived shortly after moving out of the affected property made the testimony even more genuine.

5.     The trials of the twenty Priority Plaintiffs were set to begin in a mere 8 months.

investigate several unrelated state court cases (typically breach of contract actions), which provided additional evidence to support Plaintiffs' briefing. [6]   Affiant reached out to counsel of record in those cases, requested information and documents (including photographs) which ultimately provided additional evidence linking Defendants to certain markings/brands of drywall.

Throughout this time, Affiant continued analyzing drywall markings and edge tape, specifically those taken during demolition. [7]   Most inspection reports contain photographs of a small sample of drywall – just enough to identify the markings.     Thus, it is was important to review photographs taken during demolition as these photographs were more likely to capture full sheets of drywall revealing entire markings, edge tape or both.     Affiant reached out to contractors who were especially thorough in preserving evidence and those who videotaped demolitions.     As a result

---

6.     For example, Affiant reviewed the bankruptcy filings involving homebuilder WCI, which disclosed a supplier of Chinese drywall not previously known.     This in turn led to the discovery of state court litigation between WCI and the supplier, wherein Affiant uncovered documents referencing the manufacturer of the drywall.   *WCI Communities, Inc. vs. York Supply Company, LLC*, 20th Judicial Circuit in and for Lee County, Florida, Case No. 06-CA-004950.

7.     GFA International, a company which performed preservation of evidence for many claimants, provided Affiant with CDs often containing 500 or more demolition photographs per CD.     Chinese Drywall Screening was also very helpful, spending hours on end into the wee hours of the night going through photographs with Affiant and providing Affiant with videotapes that were taken during demolition.   Affiant also received assistance from Jack Frost of Drywall Science, Ron Bailey of Bailey Engineering, and Dan Reid of Intuitive Environmental.

of Affiant's painstaking review of photographs from hundreds of remediated homes, Affiant located several key photographs of full sheets of drywall that contained <u>both</u> disputed markings and Taihe end tape. [8]

Affiant worked day and night for weeks with Sandy Duggan, Emma Schwab and others in drafting significant and voluminous briefing regarding product identification. Affiant assisted in compiling exhibits (often from the photographs and documents she discovered), including Product Photo ID 5 and 9, which Special Master Lee later found attributable to Taishan.

Affiant similarly worked extensively on Taishan's Contest and Set-Offs regarding Plaintiffs' remediation damages. There were 17 categories of contests lodged against 1,700 Plaintiffs. Affiant assisted in reviewing these contests, noting errors, and in preparing briefing. Affiant prepared exhibits and presented oral argument before the Special Master on several of the categories of contests. Following oral arguments, Affiant also prepared extensive post-hearing briefing, and

---

8.    Affiant also discovered boards with Taihe end tape and a stamp containing the manufacture and time of work shift. Date stamps were also important for dimension's drywall because while Taishan admitted manufacturing drywall with dimensions (Product ID Photo 2), it denied the same marking if the same board also contained the date of manufacture and work shift. See Product ID Photo 9. Affiant spent weeks searching for additional supporting photographs, which were later used in briefing.

then objections to the Special Master's Report and Recommendation, and assisted in responding/objecting to updated spreadsheets submitted by Taishan.[9]

In the midst of Affiant assisting in the preparation of objections to the Special Master's Reports and Recommendations regarding Defendants' Contests and Set-offs, Motions in Limine, and summaries of the claims and defenses of the Priority Plaintiffs, the parties, including Affiant, attended and participated in a mediation in Austin on May 22-23, 2019, where a global class settlement was reached. Thereafter, Affiant assisted in reviewing the Term Sheet and subsequent settlement documents drafted by Ms. Duggan and others. Affiant attended the initial meeting regarding allocation and provided input regarding the categories to be presented before the Allocation Neutral. Affiant's input was particularly important with respect to condominiums, which present unique challenges.

The foregoing is merely a sampling of Affiant's work but it clearly demonstrates Affiant's dedication and significant commitment of time, and more importantly, the value of Affiant's work in helping to contribute to the successful resolution of this case.

---

9. There were numerous instances where Taishan contended that Supplemental Plaintiff Profile Forms ("SPPF") were incomplete, however, this was not the case. Affiant spent countless hours combing through SPPFs identifying such examples to present to the Special Master.

b.    Allison Grant, P.A. consistently demonstrated leadership

Affiant is not a member of the PSC.   Notwithstanding, Affiant demonstrated

leadership in terms of taking the initiative to propose strategies[10] and legal theories,

undertaking investigations to discover additional pertinent facts and documents as it

relates to product identification, and with respect to her work on condominiums.

Evidence linking products to Taishan

Affiant took the lead in attempting to bolster the record regarding Chinese

Manufacturer #2 (purple stamp) and C&K drywall.   Affiant contacted several counsel

for suppliers and builders who used Chinese Manufacturer #2 in constructing homes

in or around 2001, including counsel for Lennar, in order to obtain additional

information regarding the origins of this drywall.   Most counsel refused to respond

or advised that they had no information.[11]   Affiant then turned her attention to public

filings and marketing materials of BNBM from 2000 and 2001, which revealed that

BNBM began manufacturing and exporting drywall to the United States during this

---

10.   Taishan was legally required, but failed to permanently stamp its drywall as required by the Tariff Act of 1930.  Had Taishan properly labeled its boards, perhaps Plaintiffs would have been able to prove the nearly one million square meters of defective blank board was manufactured by Taishan.   Taishan's violation of the Tariff Act provided additional support for Plaintiffs' arguments regarding burden of proof.

11.   Affiant's review of state litigation involving Chinese Manufacturer #2 revealed potentially probative evidence in the form of invoices and affidavits. See *Shamrock Building Materials, Inc. vs. Overseas Building Supply, L.C*, Circuit Court of the State of Oregon for the County of Mulltnomah, Case No. 0110-11075.

time period.   This was supported by the testimony of Richard Hannam, the President of Wood Nation, although he was unable to describe the markings.   Interestingly, several companies that supplied Chinese Manufacturer #2, including ProBuild, stated in their profile forms that BNBM was believed to be the manufacturer.   Unfortunately, there was insufficient evidence to convince the Special Master.

Affiant also reviewed countless documents and conducted research and investigations into Pro Wall (along with Pete Albanis, Esq.), C&K and IMT, and found important communications between Taishan/Taihe and suppliers.   Again, this evidence did not carry the day, but not for a lack of effort upon the part of Affiant.

<u>Condominiums - standing</u>

Throughout this litigation, Taishan sought to escape its responsibility for damage for several hundred condominium units.    Taishan argued that the condominium associations had no standing to bring claims because they did not "own" the affected properties.    And in those instances where the unit owner also filed a claim[12], Taishan argued that damages were limited if the owner/claimant no longer owned the property since the owner could not remediate the property.    This ignored the fact that a condominium association were often left with unremediated units, and

---

12.   Affiant explained that these were never intended to be duplicative claims.   An individual owner typically sought damages for "other losses" and the condominium association, which is the entity with standing, sought damages for remediation of affected units.

this affected other units.    Affiant conducted legal research, prepared extensive briefing (including several different motions and responses), and presented argument to Special Master Lee on this complex and critical issue. [13] Special Master Lee agreed, finding that Florida law is clear that condominium associations have standing to sue on behalf of unit owners in some circumstances.

        c.    <u>Allison Grant, P.A. actively participated in discovery</u>

Affiant worked tireless for weeks preparing for the key deposition of CHE Gang, Taishan's corporate representative.

- o  Affiant assisted with the preparation of the Notice of Deposition pursuant to Fed.R.Civ.P. 30(b)(6) for Taishan (and later BNBM), including matters of examination and Request for Production of Documents;

- o  Affiant identified key documents to be used as deposition exhibits, including shipping records and invoices, various pertinent communications, and identified inconsistencies within Taishan's export records;

---

13.    During oral arguments, Affiant was able to provide Special Master Lee with specific examples based on her representation of numerous condominium associations, including over 150 affected units.

- o Affiant prepared spreadsheets containing discrepancies between Taishan's export records, stipulation and prior admissions versus other documents;

- o Affiant prepared photo exhibits and detailed outlines/specific questions for the deponent with respect to product identification and each bucket;

- o Additionally, Affiant prepared detailed outlines/specific questions for the deponent on topics including, but not limited to, factories, batch/serial numbers, policies and procedure, method of stamping drywall, font, printers, software, end tape, customer complaints, testing, inventory, tracking and export;

- o Affiant analyzed Taishan's production of photographs containing residual drywall; and

- o Affiant attended the deposition of CHE Gang and actively participated by providing information and documents and suggesting additional lines of questioning.

- • Affiant also responded to discovery requests directed to five Priority Plaintiffs with Holly Werkema.

- • Affiant met with and prepared several priority plaintiffs for deposition, and attended/defended same. [14]

---

[14] Affiant also assisted other counsel in preparing Priority Plaintiffs for deposition.

Affiant assisted with propounding written discovery on Defendants, including preparation of discovery regarding Chinese Manufacturer #2.

> ### d.   Allison Grant, P.A. actively participated in critical briefing

As noted above, Affiant was actively involved in briefing[15] including, but not limited to:

- Plaintiffs' Opposition to Defendants' Motion to Enforce Discovery Rights;
- Plaintiffs' Opposition to Defendants' Motion for Summary Judgment on Non- Formula Damages;
- Plaintiffs' Response to Defendants' Preliminary Contests against Florida Amorin Plaintiffs' Claims for Remediation Damages;
- Plaintiffs' Response to Defendants' Final Contests against Florida Amorin Plaintiffs' Claims for Remediation Damages;
- Plaintiffs' Brief in Support of Product ID Categories Attributable to Taishan;
- Plaintiffs' Reply in Further Support of Their Objections to and Appeal from the Special Master's Report and Recommendation Regarding Product ID;
- Plaintiffs' Omnibus Response to Defendants' Final Contests and Requests for Set-Offs Regarding the Calculation of Remediation Damages for the Florida Amorin Plaintiffs;
- Plaintiffs' Post-Hearing Briefing Regarding Defendants' Contests and Setoffs
- Plaintiffs' Post-Hearing Briefing Regarding Defendants' Revised Objections "G" and "J" ;
- Plaintiffs' Opposition to Defendants' Motion to Dismiss Claims for Failure to Complete Supplemental Plaintiff Profile Forms; and
- Plaintiffs' Brief in Support of Product ID Categories Attributable to BNBM

---

15. Affiant also performed significant work in compiling the exhibits/Appendix to briefing.

e.    <u>Allison Grant, P.A. actively participated in science and expert matters</u>

<u>Science</u>

Affiant reviewed hundreds of her own client files in order to identify early laboratory and scientific testing, some of which were undertaken prior to the inception of this litigation.    Affiant provided the PSC with scientific studies of drywall ("DNA") of several different markings/brands in an effort to find similarities between drywall samples and those known to have been manufactured by Taishan.

<u>Expert Matters</u>

In addition to working with Plaintiffs' experts, Michael P. Elkin, CPA/CFF/ABV, CFE, Ryan D. Greenblatt and Anthony M. Graziano, MAI, CRE with respect to calculating Plaintiffs' other loss damages, Affiant investigated Defendants' experts and discovered potential conflicts of interest and/or information that was helpful for impeachment purposes.   More particularly, Defendant's expert Ben Nolan, III, PE, PSP, an engineer who inspected and provided remediation analysis, had previously developed remediation protocols for several buildings, which included a claimant in the MDL, namely Peninsula II in Aventura, Florida.

Affiant also discovered that Defendant's expert Henry Fishkind, an economist, previously served as a property manager for a master association which

14

managed Promenade at Tradition.    Dozens of units in Promenade at Tradition

contain/contained Chinese drywall and are included in this litigation.

      f.    <u>Allison Grant, P.A. actively participated in document review and discovered probative documents</u>

Affiant reviewed countless documents which had been recently produced

by Taishan and documents that had been recently transcribed.    In addition to

designated topics, of particular interest to Affiant were communications with suppliers,

testing and shipping records.    Affiant spent weeks reviewing and analyzing these

documents, as well as earlier scanned documents, in an effort to bolster the Plaintiffs'

evidence linking certain brands/marking to Taishan.    The significance of this review

has been previously discussed.

      g.    <u>Allison Grant, P.A. activity participated in the trial preparation for the 20 Priority Plaintiffs and the presentations before Special Master Lee</u>

As discussed above, the Florida Court set an aggressive schedule to try the

claims for other losses of the 20 Priority Plaintiffs and it required a monumental effort

by all concerned, including Affiant.    In addition to preparing these cases for trial,

which was a full-time job in and of itself, Affiant spent hundreds of hours drafting briefs

regarding product identification and Taishan's contests and set-offs to Plaintiffs'

remediation damages, including identifying and selecting pertinent

exhibits/photographs, and in preparing for and attending the presentations to

15

determine remediation damages before Special Master Lee in March and April 2019.[16] Affiant presented oral argument to Special Master Lee with respect to several contests, including Contest A (Claimant is not an Amorin named Plaintiff); Contest C (Plaintiffs purchased with knowledge of Chinese Drywall); Contest E (Plaintiffs who do not fall within the class definition because they never owned the damaged properties are not entitled to a formulaic damage award); Contest G (Current SPPFs that lack a signature are unreliable)[17]; Contest H (Plaintiffs who failed to fill out all relevant fields in the SPPF make it impossible to accurately apply the formula[18]; Contest I (Properties with Incorrect or Unreliable Proof of Under-Air Square Footage Cannot Receive a Formula Calculation);   Contest M (Florida law bars from the formula process Plaintiffs whose affected property was partially remediated); and Contest N (Plaintiffs whose properties were remediated by another person or entity have no remediation damages).   Special Master Lee ruled in Plaintiffs' favor with respect to each of the above contests with the exception of Contest N, which was sustained in part.

---

16.   The Court appointed Special Master Tiffani Lee to calculate remediation damages for the Florida Amorin Plaintiffs by May 31, 2019.  [SDFL ECF No.   110]

17.   Affiant communicated extensively with Brown Greer and was able to demonstrate that some SPPFs were in fact timely submitted but due to a computer glitch, the SPPF did not upload properly.

18.   There were also numerous instances where Taishan contended that SPPFs were incomplete, however, this was often not the case or the field in question was intentionally left blank because it did not apply.

h.   <u>Allison Grant, P.A. actively participated in mediation</u>

On May 22-23, 2019, the parties, including Affiant, attended court-mandated mediation with Mr. John Sigmund in Austin, Texas.   Affiant assisted in preparing for the mediation and participated in the negotiations.   Following intense negotiations and with the assistance of an incredibly skilled mediator, namely John Sigmund Freud, Esq., the parties reached a settlement that resolved the claims of all Amorin Plaintiffs, Brooke Plaintiffs and Absent Class Members.   Following mediation, Affiant assisted in reviewing the Settlement Term Sheet and other settlement documents drafted by Ms. Duggan and others.   Affiant is proud to have helped contribute to the successful resolution of these cases.

i.   <u>Allison Grant, P.A. continues to participate in ongoing activities</u>

Affiant continued to provide input after a settlement agreement was reached in principle, including attended a meeting with Taishan regarding allocation/issues, and provided input regarding allocation criteria and pertinent information in order to facilitate the Allocation Neutral.

On January 16, 2029, Affiant was appointed as a member of the Fee Committee.   Affiant will incur travel expenses (which Affiant understands may be at her

17

own personal expense) in order to attend Fee Committee meetings and will expend an

estimated 60+ hours in travel, meetings and in the performance of her duties.

Allison Grant, Esq.

The foregoing instrument was acknowledged before me this _30_ day of January, 2020 by Allison Grant, who is personally known to me or who has produced FLDL G 1053-011-66-783-0 as identification and who did take an oath.

NOTARY PUBLIC

Print Name: _Alesia Honeyley_

MY COMMISSION EXPIRES 2/18/21
[APPLY SEAL]

18

# EXHIBIT "1"

**From:** Philip Garrett <pgarrett@garrettco.com>
**Sent:** Monday, July 29, 2019 2:16 PM
**To:** Allison Grant <agrant@allisongrantpa.com>
**Subject:** Billing rates in CDW

We are preparing lodestar reports for CDW using bill rates as of inception. I am therefore changeing your rate back to 2014 rate of  $450.00.
If you have any questions please feel free to give me a call.
Thanks

Philip A. Garrett, CPA
PO Box 354
Meraux, Louisiana 70075
pgarrett@garrettco.com
Direct: 985-635-1500
Office: 985-746-9165