## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE:  CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL NO. 2047 SECTION: L |
| THIS DOCUMENT RELATES TO: ALL CASES (except *The Mitchell Co., Inc. v. Knauf Gips KG, et al.*, Civil Action No. 09-4115 (E.D. La.)) | JUDGE FALLON MAG. JUDGE WILKINSON |

### COMMON BENEFIT FEE APPLICATION OF SEEGER WEISS LLP

Pursuant to the Court's January 16, 2020 Order [Rec. Doc. 22481], Seeger Weiss LLP (Seeger Weiss) submits this Common Benefit Fee Application related to the years-long litigation against the Taishan Defendants (the "Taishan Litigation").[1]

### INTRODUCTION

On July 27, 2009, the Court appointed Christopher Seeger to serve as a member of the Plaintiff Steering Committee ("PSC") for *In re: Chinese-Manufactured Drywall Product Liability Litigation*, MDL 2047.  As a member of the PSC, Mr. Seeger has served at the direction of the Lead Counsel, Arnold Levin, in fulfilling the duties of the PSC to the plaintiff/homeowners in the MDL.  Mr. Seeger first helped secure a default judgment against Taishan then, after two rounds of depositions in Hong Kong, jurisdiction over Taishan.  Since 2014, Mr. Seeger has worked with the MDL leadership in the pursuit of homeowners' claims against all of the Taishan Defendants.   Mr. Seeger also continued to fulfill his duties as Leader

---

[1]  The "Taishan Defendants" are comprised of the following entities: Taishan Gypsum Co. Ltd. and Tai'an Taishan Plasterboard Co., Ltd. (collectively "Taishan"); Beijing New Building Materials Limited Co. ("BNBM"); Beijing New Building Materials Group Co., Ltd. ("BNBM Group"); China National Building Materials Co., Ltd. ("CNBM"); and China National Building Materials Group Corporation ("CNBM Group").

of the PSC's Trial Committee, most notably building on the early trial victories in the Knauf Litigation to establish, at the Taishan Damages Trial, a class-wide model to calculate the remediation damages of each of the *Amorin* homeowners.  Similarly, under the leadership of Christopher Seeger, Seeger Weiss continued the level of engagement that marked its work in the Knauf Litigation to assist the MDL bring closure for homeowners with Taishan drywall with the hard-fought Taishan Settlement.  Most notably, Mr. Seeger's partners, Jeff Grand and Diogenes Kekatos, Scott George and his paralegal Caroline Choe, were key contributors to these efforts.

There were three fundamental tracks in the Taishan Litigation that lead to the Taishan Settlement: jurisdiction, contempt, and damages.  Seeger Weiss was a key contributor to each of the three tracks, securing jurisdiction over Taishan and then the other Taishan Defendants, leading the Damages Trial on behalf of the class of *Amorin* homeowners, and pursuing the contempt sanctions against Taishan and its affiliates and subsidiaries.

Since January 2014, Seeger Weiss dedicated 3,944.5 hours to the Taishan litigation with a lodestar value of $3,063,573.75 based on the billing rates of each of the legal professionals Seeger Weiss committed to the Taishan Litigation.[2]  Each of the nearly four thousand hours it dedicated moved the litigation forward.  These are not hours spent quiet at meetings or reviewing emails, but rather working to bring relief to the Taishan homeowners.  These were hours establishing a model for class-wide remediation damages, proving violations of the contempt order, and supporting the efforts to secure and maintain jurisdiction over the Taishan Defendants.

The key contributions made by Seeger Weiss to each of the litigation tracks is summarized here for consideration by the Court and the Fee Application Committee.

---

[2]   Attached as Exhibit A is a chart reflecting, by professional, the hours each dedicated to the Taishan Litigation since 2014, their current hourly rate and their lodestar.

**SEEGER WEISS' CONTRIBUTIONS TO THE LITIGATION TRACKS**

<u>The Contempt Order – Business of Taishan's Affiliates and Subsidiaries</u>

On July 17, 2014, this Court entered an Order holding Defendant-Judgment Debtor Taishan in contempt of court, both criminally and civilly, for its refusal to appear in open court. [Rec. Doc. 17869]. The Contempt Order imposed both monetary and injunctive sanctions for this contempt of judicial authority and enjoined Taishan *and any of its affiliates or subsidiaries* were enjoined from "conducting any business in the United States until or unless it participate[d] in this judicial process." *Id*. Any violation of the injunction triggered "a further penalty of **25%** of the profits earned by the company or its affiliates who violate the order, for the year of the violation." The Contempt Order led to the reappearance of Taishan and the appearance of the other Taishan Defendants, rebooting the litigation

Mr. George headed up efforts to determine the nature, scope and extent of business undertaken in the United States by Taishan and its affiliates, and the profits realized. This involved discovery and depositions of the many US entities doing business with Taishan-affiliated companies, including the depositions of Toledo Engineering Co. ("TECO") which was engaged in joint ventures with China Triumph International Engineering Co. ("CTIEC") a direct subsidiary of CNBM, the New Jersey Institute of Technology, which was host to the CNBM New Energy Materials Research Center (and which received some of the Center funding through a laundering-like arrangement between CTIEC and TECO), and Sunpin Solar Developments LLC, which undertook installation of photovoltaic solar projects across the nation, including projects with CTIEC.

Similarly, Mr. George undertook discovery and depositions related to the on-going purchases of lumber by various CNBM and BNBM entities from several United States lumber

producers in direct violation of the Contempt Order, including Baillie Lumber Co. and Great Western Building Materials. Additionally, there were depositions of Taishan-affiliates which were based in the United States, and which Mr. George laid the foundations for and oversaw, including United Suntech, CNBM Trading, and CNBM USA, and the deposition of leaders of many of these US-based ventures, including Peng Shou (a director of CNBM and Chairman and President of CTIEC).

Drawing on the foregoing, Mr. George contributed to the eventual briefing related to enforcement of the Contempt Order and to establish the extent of the 25% penalty, with particular focus on describing the nature, scope and extent of the affiliate business activity and profits during the period of contempt.

The *Amorin* Damages Trial

On September 26, 2014, the Court certified the *Amorin* class and set a class damages hearing for February 12, 2015. BNBM made its first appearance at that hearing and requested a continuance. CNBM and Taishan appeared in this Court soon after. After further continuances, the Court ultimately held an initial damages hearing On June 9, 2015 to determine the remediation damages suffered by the *Amorin* homeowners.

Just as he had served in the earlier, Knauf proceedings, Mr. Seeger was a leader in this trial. In coordination with Jerry Meunier, Mr. George, and his partner, Mr. Grand, Mr. Seeger sought to build on the early victories in *Germano* and *Hernandez*, where he developed the remediation protocol alongside the measure of remediation damages approved by the Court. Mr. Seeger worked with the homeowners' experts to develop the kind of building block used by a general contractor - a basic project cost per square foot - following the remediation protocol, and

established a class-wide model to adjust remediation costs to match the varying *Amorin* homes in the different housing markets across the United States.

Following the depositions of the property owner's experts and those of the Taishan Defendants, in which Mr. Seeger and Mr. George played an active role in both the taking and defense, and the related pre-trial briefing, Mr. Seeger presented at trial the testimony of George Ingles (on the process used to extrapolate the damages measures established by the earlier trials) and cross examined the defense expert David Pogorilich (on project estimation).  Mr. George then took the lead on the preparation of property owners' Proposed Findings of Fact and Conclusions of Law.  The model developed for the damages trial and presented in the Proposed Findings was adopted by the Court on April 21, 2017, and was eventually adopted by in Florida by Judge Cooke, and provided the foundation for the structure of the Taishan Settlement.

Jurisdiction over the Taishan Defendants

Seeger Weiss continued its work to ensure that jurisdiction could be established over all of the Taishan Defendants, just as it had originally helped secure jurisdiction over Taishan.  It supported both the discovery from the new Taishan Defendants and also contributed to the briefing in opposition to the efforts of the new Taishan Defendants to cut themselves free of the United States Courts.

Mr. George provided support for the third wave of Hong Kong depositions which focused on the leadership of the Taishan Defendants and determining their control over and relationship with Taishan.   Mr. Seeger's partner, Mr. Kekatos handled and assisted with much of the briefing in opposition to the Taishan Defendants' Motion Pursuant to Fed.R.Civ.P. 12(b)(1) and to rebut the arguments made for dismissal of CNBM Group under the Foreign Sovereign Immunities Act (FSIA).

As with the Damages Trial, Mr. Seeger stepped into this litigation track as trial leader when spoliation by the Taishan Defendants was discovered. Shortly after Plaintiffs served discovery in aid of jurisdiction (including the relationship of Taishan to the other Taishan Defendants and assets in the United States), Taishan claimed that Peng Wenlong, the key person overseeing Taishan's sales to the United States between 2005-2008 and a point-person for the Taishan Defendants' engagement with this litigation, had left Taishan and his whereabouts were unknown.  During the course of the third wave of Hong Kong depositions, Plaintiffs learned that Taishan had been hiding this key witness for months and his computer for years, and that Peng had four email accounts that were never previously disclosed.  Mr. Seeger represented the homeowners at the resulting November 17, 2015 Spoliation Hearing, and Mr. George mustered the factual record, including assembling the related deposition cuts, demonstrative exhibits, and briefing, including the Proposed Findings of Fact and Conclusions of Law submitted after the Spoliation Hearing.

Post-Remand Proceedings

In 2019, the Court issued a suggestion of remand with respect to the Florida and Virginia *Amorin* and *Brooke* actions. [Rec. Doc. 22138, 22139].  Even after the remand of the claims of Florida and Virginia property owners, Seeger Weiss remained involved in and dedicated to the litigation, supporting the trial and mediation efforts that resulted in the Taishan Settlement.  Mr. George provided his input on matters relating to the expert testimony, including preparation of a motion *in limine* to strike the testimony of Brian Flinn and related deposition strategy, and contribution to pretrial stipulations of fact as well as the challenges of product identification. Seeger Weiss paralegal, Ms. Choe, provided direct support to the trial team through coordination of documents across and between the three litigations, preparations of trial exhibits, and general

assistance with tracking the facts and documents related to product identification among other trial details.

## CONCLUSION

For all of the foregoing reasons, Seeger Weiss submits that its contributions toward the Settlement that has brought long-deserved relief to the homeowners with Taishan drywall be given full recognition in any fee allocation that is recommended to the Court.


Date: January 31, 2020

<div style="margin-left:40%">

Respectfully submitted,

*/s/ Christopher A. Seeger*
Christopher A. Seeger
SEEGER WEISS LLP
55 Challenger Road, 6th Floor
Ridgefield Park, NJ 07660
cseeger@seegerweiss.com
Telephone: (212) 584-0700

</div>