## EXHIBIT A

## THIRD AFFIDAVIT OF THE LAMBERT FIRM, PLC
## IN SUPPORT OF APPLICATION FOR COMMON BENEFIT FEES

STATE OF LOUISIANA

PARISH OF ORLEANS

BEFORE ME, the undersigned authority;

PERSONALLY CAME AND APPEARED:

### HUGH P. LAMBERT

who, after being first duly sworn, under penalty of perjury, did declare that the following are true and correct:

1. I am the owner, president and lead trial attorney of The Lambert Firm, PLC, located at 701 Magazine Street, New Orleans, LA 70130.

2. I have complied with Pre-Trial Order No. 9 or 9A in all material aspects and the law firm identified herein has submitted true and correct time and expense submissions pursuant to the Court's Pre-Trial Orders. This Affidavit is submitted on behalf of all the members of the law firm of which I am a partner.

3. The Court may rely on the information submitted by my firm to Philip Garrett, the Court appointed Certified Public Accountant which is contained in his Case Cost Management System in this litigation.

4. The extent to which The Lambert Firm, PLC made a substantial common benefit contribution to the outcome of the litigation is described as follows:

Affiant's Initials & Date

a.    **The consistency, quantum, duration, and intensity of the firm's commitment to the litigation is as follows:**

My firm and I have been integral contributors to the Chinese drywall litigation since its inception in the summer of 2009. I was one of the original Plaintiff Steering Committee members, and my firm and I have consistently responded timely to calls for assessments and to tasks assigned to us. From January of 2014 to August of 2019, my firm collectively spent nearly 1,200 hours of time contributing to the litigation against the Taishan entities for the common benefit of all plaintiffs and claimants.

For certain periods, usually in preparation for depositions of the Taishan entities, my partner, Cayce Peterson, and I were wholly dedicated to the Taishan litigation, given the importance of those depositions and the requirement that attorneys familiar with the litigation be involved in the preparation. During the Spring and Summer of 2015, we spent entire weeks drafting discovery, sifting through thousands of pages of machine translated documents, deciphering which documents were integral to the case, outlining plans for depositions soon to be taken and quickly summarizing the depositions that had just been taken in order for our team to effectively prepare. Toward the end of 2015 and beginning of 2016, my firm was again called upon to quickly summarize the host of depositions being taken to prepare the rest of the team for upcoming depositions and, even more importantly, the critical motion practice that helped bring the litigation to a close. These tasks were given to my firm because of our consistent contribution to this litigation from its inception, starting with *Germano* in the very beginning over a decade ago. We completed every task assigned to us with diligence and efficiency, often under extremely difficult time constraints that required the contribution of my entire firm.

Additionally, because of my firm's attention to detail regarding our individual clients' preservation of evidence and client management over a decade-long case, we consistently provided some of the most prepared and compelling bellwether and trial plaintiffs, whose depositions I defended myself and was integral in helping others defend theirs. My firm was especially aware of the necessity of maintaining good client relationships and expectations and ensuring that our clients preserved the evidence necessary to build compelling cases in the event their cases wen to trial. Although this hard work of my entire firm over ten years is not common benefit *per se*, and arguably should have been performed by all individual counsel, it was evident at the end of this litigation that my firm's individual clients were absolutely essential in demonstrating to Taishan that once our clients' stories were told, it would be impossible not to empathize strongly with what they had been through.

b.    **The level of partner participation by the firm is as follows:**

Of the almost 1,200 hours we contributed to the Taishan litigation, approximately 500 hours were my own time and nearly 400 that of my firm's managing partner, Cayce Peterson.

Affiant's Initials & Date_____

c.   **The firm's membership and leadership on the Plaintiffs' Steering Committee ("PSC") is as follows:**

I was an original member of the Plaintiffs' Steering Committee, Chair of the Insurance Committee, Co-Chair of the Discovery Deposition and Experts Science (PI) committees, and Member of the Inspections and Trial/Trial Package Committees. Cayce Peterson was initially a Member of the Experts Science (PI) Committee; however, a large portion of his work ultimately involved common benefit work for the Insurance Committee, Inspections Committee and Trial & Trial Package Committee.

Our leadership was most evident in bellwether and trial client preparations. Cayce Peterson or I coordinated and supervised inspections by both sides' experts for each of the bellwether trials. We worked in close conjunction with Dawn Barrios and Emma Schwab in coordinating and supervising bellwether client depositions and trial preparation. Additionally, my partner Cayce Peterson, was in charge of making sure that nearly all of the Taishan depositions were summarized in time for the briefing team to make use of them in motion practice.

d.   **The firm's participation and leadership in discovery (motions, depositions) is as follows:**

Cayce Peterson and I spent entire days and weeks in the offices of Herman, Herman, Katz reviewing machine translated documents in preparation for depositions of the Taishan entities. Every time we were called upon to help, we did. I attended many of the depositions of the Taishan entities. I also defended five of the bellwether / trial plaintiffs' depositions. Additionally, Cayce Peterson not only found many of the most important documents used in the Taishan depositions, but also made sure that each deposition was summarized within days of receiving transcripts. Cayce also was integral in drafting the discovery to Taishan which produced the mountains of documents we used in the Taishan depositions and subsequent motion practice.

In summary, my firm completed and/or participating in the following discovery specific tasks in addition to other ongoing tasks such as document review:

**Deposition Preparation** for the following depositions:
- BNBM
- Morgan Stanley
- JP Morgan Chase Banks
- Zhangli Chang of China National Building Materials Company Limited (CNBM Co Ltd)
- Guoping Zhou of China National Building Materials Group Corporation (CNBM Group)
- Yu Chen (BNBM PLC)
- Yanming Zhao (BNBM Group)

**Affiant's Initials & Date**

- Wang Bing (BNBM)
- Song Zhiping (CNBM)
- Peng Shou
- CNBMUSA
- CNBM Trading
- CNBM International

**Depositions Attended:**
- Gang Che of Taishan Gypsum Company, Limited (TG)
- Zhangli Chang of China National Building Materials Company Limited (CNBM Co Ltd)
- Guoping Zhou of China New Building Materials Group Corporation (CNBM Group)
- Yu Chen (BNBM PLC)
- Yanming Zhao (BNBM Group)

**Depositions Summarized:**
- Guoping Zhou of China New Building Materials Group Corporation
- Stefan Davis (Davis Construction)
- Yu Chen (BNBM PLC)
- Yanming Zhao (BNBM Group)
- Yianglin Cao (CNBM Co., Ltd.)
- Larry Rogers (Great Western Building Materials)
- Wang Bing (BNBM)
- Zhangli Chang of China National Building Materials Company Limited (CNBM Co Ltd)
- Song Zhiping (CNBM)
- Stepan Company, through Brian Boyle
- Peng Shou
- Tongchun Jia
- PENG Shiliang
- CNBM Forest Products Canada through DENG Jianjun
- CNBM USA through ZHANG Shaojun
- CNBM Trading through WANG Lihe
- Terrence Keyes (Morgan Stanley)
- TANG Hsin Hua (Jushi)
- Hu Jinyu (CNBM, BNBM & Northrn Cement Co.)
- Jeff Gordon
- Bruce Deal

**Prepared and Defended Bellwether / Trial Client Depositions:**
- Charles & Mary Back
- Connie & Nicola Fineschi
- Johnny & Rachelle Blue

**Affiant's Initials & Date_____**

- Rosanne Wilfer
- Holly Braselman Yeich

    e.    **The firm's participation and leadership in law and briefing matters is as follows:**

Although our firm was rarely afforded the opportunity to participate in research and legal briefing, we were integral in providing the law and briefing team with the evidence and factual support they needed.

    f.    **The firm's participation and leadership in science and experts matters is as follows:**

Although many of the scientific issues in the case had been decided by the time the Taishan litigation began to move in earnest, in the event that Taishan chose to relitigate any of the technical liability issues, we were prepared to address them. Our firm's participation and leadership in the scientific and technical issues forming the basis of the damages model and liability in the overall litigation is summarized in our firm's First and Second Affidavits in Support of Common Benefit Fees.

    g.    **The firm's participation and leadership in document review is as follows:**

Cayce Peterson and I spent the better part of the Spring and Summer of 2015 reviewing machine translated documents in preparation for the Taishan depositions. In addition to answering the call to help every time it was given, we volunteered our time repeatedly in an effort to further contribute to building the evidence necessary for the Taishan depositions, motion practice, and trial preparation that brought the litigation to a conclusion.

    h.    **The firm's activities in support or conduct of trials of individual Chinese Drywall claimants, including bellwether trials and non-MDL trials which impacted proceedings on a common benefit level (identify the claimant, docket number and venue of each trial and outcome) is as follows:**

Our leadership was most evident in bellwether and trial client preparations. Cayce Peterson or I coordinated and supervised inspections by both sides' experts for each of the bellwether trials. We worked in close conjunction with Dawn Barrios and Emma Schwab in coordinating and supervising bellwether client depositions and trial preparation. Many of our clients were utilized as bellwethers and trial plaintiffs because

Affiant's Initials & Date_____

of our attention to maintaining good client relationships and expectations, as well as ensuring that our clients preserved the evidence necessary to prove their damages.

**Prepared and Defended Bellwether / Trial Client Depositions:**
- Charles & Mary Back
- Connie & Nicola Fineschi
- Johnny & Rachelle Blue
- Rosanne Wilfer
- Holly Braselman Yeich

i. **The firm's participation and leadership in settlement negotiations, drafting of settlement documentation and closing papers, and administration of settlement agreements (excluding individual representations) is as follows:**

My firm was not involved in the negotiation of the Taishan settlement or its subsequent administration.

j. **The firm's activities of common benefit work in the following non-MDL jurisdictions:**

Our firm had little involvement in non-MDL jurisdictions regarding the Taishan litigation.

k. **The following members of the firm held leadership positions on the regular committees engaged in common benefit work (state position and committee):**

Hugh Lambert – Chair – Insurance Committee
Hugh Lambert – Co-Chair – Experts Science (PI)
Hugh Lambert – Co-Chair – Discovery Depositions

l. **The firm's participation in ongoing activities, such as the Fee Committee, Settlement Claims Administration, Court Appointed Committees (e.g. Settlement Allocation Committees, Claims Administration Committee, Fee Committee, etc.), that is intended to provide common benefit included the following:**

Hugh Lambert - Fee Committee.

**Affiant's Initials & Date**

**m.** **Counsel in the firm were or were not involved in the Chinese Drywall litigation prior to the JPMDL, and the time and expense incurred during such time period outlined below was for common benefit:**

We addressed this in our Second Affidavit. To the extent this is relevant to Taishan common benefit fees, in June and July of 2009, anticipating several of the scientific issues which we would face in the CDW litigation, I had several calls with potential experts and reviewed several papers regarding detection of the sulfur compounds suspected to be emitted from CDW. I shared this information with the PSC once it was formed, and we used that information as well as that of others like Dan Bryson and Ben Gordon to formulate the PSC initial strategy in detection, sampling and testing of CDW and the sulfur compounds emitted from it.

**n.** **The firm made the following significant contributions to the funding of the litigation (include all assessments made to the MDL) and the amount of any sums reimbursed and date(s) of reimbursement:**

My firm met every assessment call quickly and without question.

**o.** **The members of the firm who were PSC members or committee members whose commitment to the litigation did not ebb included:**

Cayce Peterson and I have been dedicated to the CDW litigation since its inception and have not declined any assignment tasked to us through the duration of the litigation. We have both volunteered our time and made ourselves available to the PSC and its members at a moment's notice whenever needed.

**p.** **A complete and accurate listing of all sources and amounts of prior payments received from a Chinese Drywall claimant or other sources (identify amounts paid for fees and amounts paid for costs) to the firm:**

Our firm has obtained settlements for three of our clients outside the scope of the various pending settlements. In two of these settlements we received both a partial recovery of costs as well as an attorney fee in addition to the compensation to our clients. In one case we obtained recovery for our client and a partial recovery of costs but no attorney fee. This information was provided to the Fee Committee and/or the Court pursuant to prior PTOs and requests from the PSC.

**Affiant's Initials & Date**_____

**q.     The other relevant factors which applicant requests be considered by the Court:**

My firm has answered the call to provide assistant for the common benefit without fail since the inception of this litigation.

Regarding any other relevant factors, we defer to the submitted and accepted (as to form) time logs to Phillip Garrett.

_____                    _____
Deponent's Signature                                                    Date

SWORN TO AND SUBSCRIBED

BEFORE ME THIS 31ST DAY OF JANUARY, 2020.

_____
       NOTARY PUBLIC                                                Cayce C. Peterson
                                                                                 Notary Public
Print Name: CAYCE C. PETERSON                          LA Bar Roll No. 32217
                                                                                 Notary ID No. 89051

My commission expires with life.

**Affiant's Initials & Date**_____