# EXHIBIT "A"

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| IN RE:  CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL NO. 2047 SECTION: L |
| THIS DOCUMENT RELATES TO:<br><br>ALL ACTIONS (except *The Mitchell Co., Inc. v. Knauf Gips KG, et al.*, Civil Action No. 09-4115 (E.D. La.)) | JUDGE FALLON MAG. JUDGE WILKINSON |

**DECLARATION OF SANDRA L. DUGGAN IN SUPPORT OF THE APPLICATION OF LEVIN SEDRAN & BERMAN LLP FOR AN ALLOCATION OF COMMON BENEFIT FEES AND REIMBURSEMENT OF HELD COSTS AWARDED BY THE COURT**

Sandra L. Duggan declares, pursuant to 28 U.S.C. §1746, based upon her personal knowledge, information and belief, the following:

1.      I submit this Declaration in support of the application of Levin Sedran & Berman LLP ("LSB" or "the Firm") for an allocation of the common benefit fees and reimbursement of costs awarded by the Court on January 10, 2020, in connection with final approval of the Class Settlement with Taishan Gypsum Co., Ltd. ("Taishan") [Rec. Doc. 22460]. Except as otherwise noted, I have personal knowledge of the facts set forth in this Declaration and could testify competently to them if called upon to do so.

2.      During the relevant period (January 1, 2014 – December 31, 2019), LSB submitted 49,245.50 hours of contemporaneously maintained common benefit time records that were accepted by the Court-appointed CPA Philip A. Garrett ("PG") pursuant to PTO 9. *See* Chart of Accepted LSB Hours for 2014 - 2019 (attached hereto as Exhibit "1"). The lodestar value of the Firm's common benefit effort is $53,911,615.00. Approximately 9,839.00 of these hours (billed as L190) were spent performing fee committee work in connection with the Knauf Settlement, having a lodestar value of $11,063,418.75. These hours have been disregarded (*see* Order

Awarding Common Benefit Fees [Rec. Doc. 22460], at 67 n.12), such that the net common benefit hours that are relevant to this application are 39,406.50, representing a lodestar value of $42,848,196.25.

3.      In addition, from 2015-2019, LSB incurred $759,837.15 in properly documented held costs that were submitted to PG pursuant to PTO 9, but which have not yet been reimbursed. *See* Chart of Accepted LSB Held Costs for 2015 – 2019 (attached hereto as Exhibit "2"). It is LSB's practice not to bill this case or any case for the general overhead costs of the Firm, including expenditures for (a) services and software to manage dockets, attorney calendars, and travel, (b) secretarial or administrative services, (c) messenger services, (d) printing of emails, (e) bookkeeping, (f) the use of conference rooms, or (g) the general management of the Firm.

4.      From 2014 - 2019, LSB paid $608,133.00 in unreimbursed assessments for the prosecution of Plaintiffs' claims against Taishan and the Additional Released Parties Beijing New Building Materials Public Limited Company ("BNBM"), Beijing New Building Materials (Group) Co., Ltd. ("BNBM Group"), China National Building Materials Co., Ltd. ("CNBM"), China National Building Materials Group Corporation ("CNBM Group"), and the State-Owned Assets Supervision and Administration Commission of the State Council ("SASAC").

5.      Of the collective common benefit effort devoted to the pursuit of remediation damages and other losses from Taishan and its parent entities since 2014, LSB has contributed more than 34% of the time, more than 53% of the lodestar, more than 61% of the held costs, and approximately 36% of the cash assessments, and the Firm continues to work on the case and fund its costs in 2020.

6.      At all times, the Firm has remained dedicated to these proceedings (in terms of providing experienced legal talent to lead the litigation and significant financial contributions). In

fact, LSB has devoted several senior level partners, virtually full-time, and numerous junior partners, associates and paralegals to this effort for over a decade. The Firm is committed to work on *Chinese Drywall* until the Class Settlement with Taishan has been fully administered and all eligible Class Members receive the payments to which they are entitled, and the work of the Taishan Fee Allocation Committee has been completed.

7.      As a leader of the Plaintiffs' efforts in these proceedings, LSB participated in and contributed to every status conference, hearing, and oral argument in the MDL and the Fifth Circuit, and then, after an impasse was reached and the Court suggested that *Amorin* and *Brooke* cases be remanded, the Firm did the same in the remand courts in Florida and Virginia.

8.      During the six-year period relevant to the instant fee application, 2014-2019, LSB expended an extraordinary amount of time, money and resources to the prosecution of Plaintiffs' claims against the Taishan Defendants (much more than was required during the prior 4 ½ year period to secure recovery from the Knauf Defendants). In accordance with Arnold Levin's duties as Plaintiffs' Lead Counsel and as Class Counsel for the Knauf, Global, Banner, InEx, L&W, Allen, and Taishan Settlements and Chair of the Knauf Fee Committee; and in accordance with Sandra Duggan's duties as Class Counsel for the Taishan Settlement and Chair of the Taishan Fee Allocation Committee, LSB developed an overall strategy designed to minimize duplication of effort while achieving maximum results and efficiency by bringing all Plaintiffs into the MDL through innovative Omnibus complaints filed against many non-diverse Defendants and moving the case forward in the MDL and the remand jurisdictions.

9.      In furtherance of these goals, LSB oversaw and managed all aspects of the case on behalf of more than 4,000 Plaintiffs from 13 different States. This effort required the Firm, on a daily basis, to coordinate (both logistically and substantively) complex, interrelated proceedings

occurring simultaneously in multiple jurisdictions – including the MDL, the Fifth Circuit Court of Appeals, the remand courts in the Southern District of Florida and the Eastern District of Virginia for *Amorin* and *Brooke* Plaintiffs, and the State courts.

10.     LSB supervised and directed multiple teams handling a variety of matters throughout the country on behalf of Plaintiffs to make sure consistent positions were taken in the litigation, all deadlines were met, resources were allocated responsibly, duplication of labor and expenditures was avoided, and maximum results were achieved. This necessitated having regular communications and coordination with common benefit counsel and facilitating the transmission of relevant information to hundreds of individually retained attorneys and *pro se* Plaintiffs. The Firm also interfaced often with the MDL Clerk of Court and its staff as well as the remand courts.

11.     LSB made common benefit work assignments to key individual attorneys tasked with:

    a.   discovery of Defendants (regarding alter ego status of Taishan, BNBM/CNBM, minimum contacts of BNBM/CNBM, service of process on BNBM/CNBM, contempt violations by Taishan and its affiliates, and Product ID);

    b.   discovery of third parties (regarding personal jurisdiction of BNBM/CNBM and contempt violations by Taishan and its affiliates);

    c.   enforcement of the Contempt Order and Injunction;

    d.   development of experts and discovery of experts (on class remediation damages and Plaintiffs' other losses in Florida);

    e.   assessment of class damages;

    f.   quantification of Plaintiffs' remediation damages in all jurisdictions;

    g.   development of detailed spreadsheets setting forth the basis and support for 4,000 Plaintiffs' damages;

    h.   development of a comprehensive Product ID catalog of all markings of Chinese Drywall alleged to be attributable to Taishan and/or BNBM;

      i.   vetting Florida *Amorin* Plaintiffs to select 20 Priority Plaintiffs for trial and undertaking discovery related to the claims of these Plaintiffs for remediation damages and compensation for other losses;

      j.   vetting Louisiana *Amorin* Plaintiffs to select 20 Select Cases for trial and undertaking discovery related to the claims of these Plaintiffs, as well as the 19 Select Cases chosen by Defendants, for remediation damages and compensation for other losses;

      k.   seeking sanctions for discovery violations by Taishan;

      l.   declassifying documents filed under seal;

      m.   seeking access to documents withheld on the grounds of privilege;

      n.   reaching settlements with non-manufacturing Defendants in the Taishan supply chain; and

      o.   realization of a global settlement with Taishan and the Additional Released Parties.

12.    LSB took the lead on organizing and coordinating the legal research and briefing for all major motions in the MDL and remand courts, which involved a number of complex legal issues, including: (a) personal jurisdiction involving foreign corporations, as well as Chinese State-Owned Enterprises, which presented unique defenses under the Foreign Sovereign Immunities Act ("FSIA"); (b) the impact, if any, of the Supreme Court's ruling in *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco County*, 582 U.S. ___, 137 S. Ct. 1773 (2017) ("*BMS*"); (c) class certification in *Amorin* and the inappropriateness of Defendants' efforts to decertify the *Amorin* class; (d) the ability to employ a formula to calculate class damages for the *Amorin* Plaintiffs; (e) enforcement of the Court's Contempt Order and Injunction against Taishan and its affiliates; (f) the preclusive effect of the MDL Transferee Court's orders on numerous key issues upon remand of Plaintiffs' cases to Florida and Virginia; (g) cross-jurisdictional tolling of statutes of limitations; (h) the enforcement of defaults against BNBM; and (i) the attribution of Chinese Drywall markings and products at issue in the litigation to Taishan and/or BNBM.

13.     LSB also oversaw the completion of the myriad of tasks and projects under way in all jurisdictions where Plaintiffs' claims were being adjudicated (Louisiana, Florida, Virginia, and elsewhere) and held regular meetings (in person and *via* conference call) to effectuate the planned strategies.

14.     As part of this effort, it was essential for LSB to interface with multiple defense teams representing Taishan, the BNBM entities, and the CNBM entities so that agreement could be reached on the scheduling and location of many dozens of fact and expert depositions, document productions, home inspections, and court hearings. Given that the parties were entrenched in contentious litigation that often appeared to be stalled in a never-ending cycle of defense delay tactics of repeated motions to reconsider and vacate valid court orders, LSB resorted to creative measures to reach stipulations with Defendants to resolve key obstacles. Significantly, LSB negotiated agreements with Defendants regarding: (a) an efficient means to take discovery of thousands of *Amorin* Plaintiffs through Supplemental Plaintiff Profile Forms ("SPPFs") and spreadsheets setting forth objective criteria to assess Plaintiffs' remediation damages; (b) the authenticity of Plaintiffs' evidence of damages and hearsay objections thereto in Florida and Louisiana; (c) the respective positions of the parties regarding Product ID allegations against Taishan and BNBM in all jurisdictions; (d) an organized and cost-effective method for challenging 1,700 *Amorin* Plaintiffs' remediation damages in Florida; (e) a Joint Plan for resolution of the *Amorin* Plaintiffs' claims in Florida; (f) a schedule for discovery of 39 *Amorin* Select Plaintiffs' claims in Louisiana and a schedule for the submission of proposals to resolve the remaining claims in Louisiana; and (g) a schedule to present proposals to the court for resolving 175 *Amorin* Plaintiffs' claims in Virginia.

15.     The common benefit efforts in this litigation from 2014 – 2019 are summarized in various charts attached to this Declaration, which set forth: (a) MDL 2047 Court Appearances (Exhibit "3"); (b) MDL 2047 Pleadings and Motions (Exhibit "4"); (c) MDL Discovery Propounded by the PSC/Plaintiffs (Exhibit "5"); (d) Discovery Responded to by the PSC and Discovery-Related Pleadings in the MDL (Exhibit "6"); (e) MDL Depositions and/or Trial Testimony (Exhibit "7"); (f) MDL Experts (Exhibit "8"); (g) Remand Court Appearances (Exhibit "9"); (h) Remand Court Pleadings (Exhibit "10"); and (i) Remand Court Experts (Exhibit "11"). *See also* Rec. Doc. 22363-6 (summarizing common benefit efforts in the litigation since its inception in 2009).

16.     More specifically, LSB carefully orchestrated and managed the following common benefit efforts on behalf of all Plaintiffs with Chinese Drywall alleged to be manufactured by Taishan and/or BNBM:

Pre-Remands (2014 - 2018)

a.   Upholding the Court's jurisdictional rulings against Taishan on appeal in the Fifth Circuit in early 2014. This involved the preparation of briefs in four separate appeals and the presentation of oral argument to two separate Panels of the Appellate Court. *See In re Chinese-Manufactured Drywall Prod. Liab. Litig.*, 742 F.3d 576 and 753 F.3d 521 (5th Cir. 2014).

b.   Making efforts to enforce the *Germano* judgment after jurisdiction over Taishan was established and obtaining a Contempt Order and Injunction against Taishan and its affiliates in July 2014 after Taishan fired its American attorneys and failed to appear for a judgment debtor examination [Rec. Doc. 17869].

c.   Certifying the *Amorin* class in 2014, *In re Chinese-Manufactured Prod. Liab. Litig.*, 2014 WL 4809520 (E.D. La. Sept. 26, 2014), and securing a hearing to assess classwide remediation damages on June 9, 2015. LSB oversaw significant fact and expert discovery and motion practice related to class damages [Rec. Docs. 18908, 19014, 19034, 19062, 19066]. Arnold Levin attended the class damages hearing and supervised the presentation of Plaintiffs' witnesses and evidence, including the testimony of Jacob Woody (BrownGreer) and George J. Inglis (Berman & Wright), and the cross-examination of Defendants' expert witnesses, David Pogorolich and Dr. M.

Laurentis Marais. After the hearing, LSB oversaw the preparation of comprehensive findings of fact and conclusions of law, which laid the foundation for the Court's Class Damages ruling (Rec. Doc. 19197), and the Firm repeatedly defended the Court's ruling against multiple efforts to revisit and reconsider the Court's decision.

d.  Filing Omnibus *Brooke* Complaints on behalf of 1,200 Plaintiffs in Louisiana, Florida, Virginia, and elsewhere in 2015: *Brooke, et al. v. The State-Owned Assets Supervision and Administration Commission of the State Council, et al.*, Civ. Action No. 15-4127 (E.D. La.); *Brooke, et al. v. The State-Owned Assets Supervision and Administration Commission of the State Council, et al.*, Civ. Action No. 15-6631 (S.D. Fla.) (Miami Case No. 15-24348); *Brooke, et al. v. The State-Owned Assets Supervision and Administration Commission of the State Council, et al.*, Civ. Action No. 15-6632 (E.D. Va.) (Norfolk Case No. 15-506). The creation of the innovative Omnibus pleadings were a tremendous achievement in efficiency as they utilized the Class Action Fairness Act, 29 U.S.C. §1332(d)(2), *et seq.*, to aggregate claimants on one pleading against many non-diverse Defendants, but still permitted a series of interventions to add claimants without the need or expense of individual complaints and individual service of process. LSB assumed the administrative effort of compiling the complaints, and the Firm incurred the unitary cost of their translation and service abroad. All Plaintiffs were included on an Omni Complaint, which enabled individual counsel to engage their clients in this litigation with minimal effort and virtually no expense (since the cost and effort of filing and service of a single-Plaintiff complaint would have been cost prohibitive). In connection with these service efforts, LSB obtained an order allowing Plaintiffs to serve Defendants' counsel in the United States, sparing them the difficulty and expense of serving the foreign companies overseas.

e.  Engaging in efforts to serve SASAC through the Hague Convention in 2015.

f.  Conducting extensive discovery as to the alter ego status of Taishan and its parent BNBM and CNBM entities in 2015-2016, including serving written interrogatories and requests for expedited production of documents by Defendants and third parties, overseeing the translation of millions of pages of documents produced in Chinese, preparing detailed corporate organizational charts showing Taishan's relationship to parent entities and affiliates (including the Additional Released Parties), and taking depositions of numerous officers and directors of Defendants in New Orleans, New York, and Hong Kong. Arnold Levin and Sandra Duggan were responsible for preparing and/or taking (as 1st or 2nd chair) the following Defendant depositions: Taishan (CHE Gang); BNBM (CHEN Yu); BNBM Group (ZHAO Yanming); CNBM (CHANG Zhangli); CNBM Group (Zhou Guoping); SONG Zhiping; CAO Jianglin; WANG Bing; JIA Tongchun; and PENG Wenlong. In addition, Fred Longer was responsible for the deposition of Plaintiffs' expert on Chinese corporate governance, Curtis J. Milhaupt.

g. <u>Conducting discovery of Taishan</u>, <u>its alleged affiliates</u>, and <u>numerous third parties</u> throughout the United States and in Hong Kong to determine whether there were <u>violations of the Court's Contempt Order and Injunction</u> in 2015-2016. Arnold Levin, Sandra Duggan, Fred Longer, and Matthew Gaughan took responsibility for preparing and/or taking (either as 1st or 2nd chair) all of the above-listed depositions of the officers and directors of Defendants, and also the following third parties: New Jersey Institute of Technology; Sunpin Solar Development, LLC; Walmart Stores, Inc.; CTIEC-TECO American Technology, Inc.; Hull Forest Products, Inc.; WH International, Inc.; Western Wood Lumber Co.; Morgan Stanley; International Business Machines, Corp.; BNK International, Inc., LLC; Triorient Trading, Inc.; PABCO Building Products, LLC (d/b/a Pabco Gypsum); and Stepan Company. Thereafter, LSB prepared hundreds of pages of briefs and exhibits documenting Defendants' alleged contempt violations [Rec. Doc. Nos. 18302, 18475].

h. <u>Pursuing motions to compel responses to discovery against Defendants and third parties</u>. The parties held a number of meet-and-confer discussions to resolve numerous discovery disputes, including over document withheld on the grounds of privilege. LSB monitored the efforts of common benefit counsel assigned to these tasks. For the disputes that could not be resolved, LSB and/or other common benefit counsel prepared motions to compel and oral argument, which demanded considerable time and effort. *See* Chart of Discovery Propounded by the PSC (Exhibit "5" hereto); Chart of Discovery Responded to by the PSC and Discovery-Related Pleadings (Exhibit "6" hereto).

i. <u>Preparing a detailed legal memorandum of law</u>, with hundreds of exhibits as evidentiary support, <u>in opposition to CNBM Group's motion to dismiss under the FSIA</u> in 2015, resulting in an order dismissing CNBM Group in all jurisdictions. *In re Chinese-Manufactured Drywall Prod. Liab. Litig.*, 168 F. Supp. 3d 918 (E.D. La. 2016).

j. <u>Preparing detailed responses</u> in 2015-2016, with hundreds of exhibits, in <u>opposition to motions of BNBM, BNBM Group, CNBM, and related CNBM entities to dismiss for lack of personal jurisdiction and improper service</u> [Rec. Doc. Nos. 19556, 19557], resulting in an Order finding the existence of an agency relationship between Taishan and BNBM under Florida and Virginia law and a single business enterprise among Taishan, BNBM, BNBM Group, and CNBM under Louisiana law. *See In re Chinese-Manufactured Drywall Prod. Liab. Litig.*, 2017 WL 1476595 (E.D. La. Apr. 21, 2017), *mot. to certify appeal granted*, 2018 WL 4863625 (E.D. La. Mar. 06, 2018) (oral argument set for Feb. 5, 2020). LSB assisted in preparing Appellants' brief in the Fifth Circuit defending the MDL Court's rulings on jurisdiction over the CNBM/BNBM entities.

9

k.  <u>Obtaining a sanctions order</u> against Taishan in 2016 for discovery abuses that involved the failure to timely produce relevant documents and the hiding of a key witness PENG Wenlong and his computer [Rec. Doc. 19959].

l.  <u>Engaging in settlement negotiations</u> with Taishan and the BNBM/CNBM entities over many months in 2016, with the assistance of Special Master John Perry.

m.  <u>Conducting intensive discovery regarding indicia of Taishan Product ID</u> in approximately 3,500 Plaintiffs' properties in Louisiana, Florida, Virginia, and elsewhere in 2016, with the assistance of Special Master Cal Mayo.

n.  <u>Responding to numerous motions for interlocutory appeal</u> on jurisdiction, class certification, and class damages, motions to dismiss based on *BMS*, and motions to vacate defaults entered against the BNBM and CNBM entities in 2017-2018.

o.  <u>Filing numerous protective actions</u> in *Amorin* and *Brooke* in each jurisdiction where Plaintiffs' properties were located, in light of the Supreme Court's ruling in *BMS* in 2017: *Macon v. Taishan Gypsum Co., Ltd.*, No. 17-1287 (N.D. Ala.) (Omni XXI); *Peoples v. Taishan Gypsum Co., Ltd.*, No. 17-2890 (N.D. Ga.) (Omni XXII); *Polk v. Taishan Gypsum Co., Ltd.*, No. 17-216H50 (S.D. Miss.) (Omni XXIII); *Bright v. Taishan Gypsum Co., Ltd.*, No. 17-0035 (E.D.N.C.) (Omni XXIV); *DeOliveira v. Taishan Gypsum Co., Ltd.*, No. 17-2019 (D.S.C.) (Omni XXV); *Redden v. Taishan Gypsum Co., Ltd.*, No. 17-1146 (W.D. Tenn.) (Omni XXVI); *Mertlitz v. Taishan Gypsum Co., Ltd.*, No. 17-140 (E.D. Tex.) (Omni XXVII); *Bayne, v. Taishan Gypsum Co., Ltd.*, No. 17-1286 (N.D. Ala.) (Omni XXVIII); *Abner v. Taishan Gypsum Co., Ltd.*, No. 11-3094 (N.D. Calif.) (Omni XXIX); *Bentz v. Taishan Gypsum Co., Ltd.*, No. 17-2892 (N.D. Ga.) (Omni XXX); *Allen v. Taishan Gypsum Co., Ltd.*, No. 17-217LG (S.D. Miss.) (Omni XXXI); *Lochhead v. Taishan Gypsum Co.*, No. 17-294 (S.D. Tex.) (Omni XXXII); *Stutzman v. Taishan Gypsum Co., Ltd.*, No. 17-1209 (S.D. Ill.) (Omni XXXIII); *Allman v. Taishan Gypsum Co., Ltd.*, No. 17-00051 (E.D.N.C.) (Omni XXXIV); *Cole v. State-Owned Assets Supervision and Administration Commission of the State Council*, No. 18-00562 (E.D. La.) (Omni XXXV).

<u>Post-Remands (2018 - 2019)</u>

p.  Upon remand, <u>overseeing the preparation of motions to stay cases on the Florida and Virginia *Amorin* complaints where the subject Affected Properties were located outside the State where remands occurred</u> [SDFL ECF Nos. 49 & 63], and <u>filing motions in the MDL to stay cases remanded to Florida and Virginia</u> [Rec. Doc. 21639].

q.  <u>Opposing Defendants' motion to dismiss non-Florida claims remanded to Judge Cooke and non-Louisiana claims remaining in the MDL.</u>

r.  <u>Organizing and leading the tremendous effort that was required in the Florida remand court in 2018-2019 to fight Defendants' repeated and coordinated attempts to deny relief to 1,700 *Amorin* Plaintiffs.</u> *See* Charts Summarizing Court Appearances and Pleadings in the Remand Courts (Exhibits "9" and "10" hereto). The enormity of this endeavor cannot be overstated, as it called for unwavering dedication of multiple teams working seven days a week to meet the demanding deadlines imposed by Judge Cooke, while at the same time advancing the cases of the Virginia and Louisiana *Amorin* Plaintiffs and undertaking to litigate the *Brooke* cases in the MDL and other jurisdictions. LSB worked directly with individual counsel for the Florida Priority Plaintiffs and supervised the incredibly time-consuming task of interfacing with all counsel for *Amorin* Plaintiffs in Florida as well as *pro se* litigants regarding the evidentiary support for their remediation damages. LSB orchestrated a comprehensive strategy designed to resolve the litigation, which involved the following key components in Florida:

    i.  Opposing Taishan's motion to reject application of the MDL Court's remediation damages formula [SDFL ECF No. 84; Rec. Doc. 21806-4];

    ii.  Opposing Defendants' motion to enforce discovery rights in Florida, which sought to reopen discovery into liability and causation [SDFL ECF No. 88; Rec. Doc. 22806-4];

    iii.  Coordinating the response to Defendants' motions to dismiss for failure to complete an SPPF [SDFL ECF Nos. 82 & 175].

    iv.  Securing a Trial Plan Order intended to (A) monetize remediation damages for approximately 1,700 *Amorin* Plaintiffs through a Special Master process that verified square footage, ownership, and Product ID for each Affected Property; and (B) resolve the claims of 20 Priority Plaintiffs for other losses [Rec. Doc. 21933-1];

    v.  Vetting Florida Plaintiffs to select the best 20 cases to proceed to trial on other losses, such as alternative living expenses, lost equity, loss of use and enjoyment, damages from foreclosures, short sales, and bankruptcy, personal property damages, and punitive damages;

    vi.  Producing relevant documents; identifying fact witnesses and scheduling, preparing and attending the depositions of the Priority Plaintiffs and related witnesses. LSB Partner Keith Verrier attended (in person or *via* telephone) virtually all of the Priority Plaintiff depositions (Tracy Nguyen, William Foster, Vicki Foster (twice), Janet Avery, Larry Walls, Rosalee Walls, Candace Gody, Andrew Feldkamp, Dawn Feldkamp, Dailyn Martinez, Kelly O'Brien, Lori O'Brien, John Hernandez, Bertha Hernandez, Jeovany Nunez, Monica Alba-Nunez,

Kevin Rosen, Stacy Rosen, Jose Miranda, Adela Miranda, David Deeg, Deborah Hooker, Gul Lalwani, Deborah Lulwani, Mai Tuyen, Michael Rosen, Robyn Rosen, Marc Wites, Yvette Marin, Steven Etter, Cathy Etter, Lillian Chatmon, and Vance Brinkerhoff) and he assisted their individual counsel with preparations to make sure consistent legal positions were taken and all obligations were met during this intense discovery period. Mr. Verrier also prepared vital summaries of the individual Plaintiff depositions offering insight and guidance for all future depositions in Florida as well as Louisiana;

    vii.  Analyzing and approving the protocol for inspection of Plaintiffs' homes and coordinating and monitoring home inspections;

   viii.  Developing experts on other losses and engaging in expert discovery. LSB Senior Partner Fred Longer was responsible for preparing and/or taking (as 1st or 2nd chair) Defendants' experts Marcie D. Bour (forensic accountant), Henry H. Fishkind (economist), and Richard J. Roddewig (real estate damages), and he defended Plaintiffs' expert Randall Bell (real estate damages) and Michael P. Elkin (forensic accountant);

    ix.  Conducting discovery of Taishan and BNBM related to Product ID and briefing and arguing disputed Product ID attribution issues to the Special Master appointed by Judge Cooke;

    x.  Engaging in discovery related to contests asserted by Defendants opposing 1,700 Plaintiffs' claims for remediation damages, and preparing multiple briefs and arguing these issues before the Special Master;

    xi.  Preparing an omnibus response to Defendants' motions for summary judgment with respect to the Priority Plaintiffs selected for trial; and

    xii.  Preparing motions *in limine* and individual Priority Plaintiffs for trial, among other things.

s.  Updating the calculation of remediation damages for all Florida *Amorin* Plaintiffs, all Virginia *Amorin* Plaintiffs, and all *Amorin* Plaintiffs in the MDL in conformity with 2019 national R.S. Means data.

t.  Leading the effort in 2018-2019 to secure a Trial Plan Order in Virginia intended to monetize as expeditiously as possible remediation damages for approximately 175 *Amorin* Plaintiffs following remand to Judge Davis in the Eastern District of Virginia, giving preclusive effect to this Court's pre-remand orders approving remediation formula damages and establishing liability through defaults [Rec. Doc. 22253-1].

u. <u>Leading the effort to obtain Orders from the MDL Court intended to resolve the claims of *Amorin* Plaintiffs in Louisiana</u>, including a discovery order for 39 Select Plaintiffs, a Trial Plan order for the resolution of the Select Plaintiffs' cases, and an order regarding the claims of former owners. LSB prepared the briefs setting forth the Trial Plan schedules and suggesting the use of a Special Master (Cal Mayo) to verify square footage, ownership, and Product ID so that formula remediation damages could be calculated. LSB Partner Keith Verrier and Associate Nicola Serianni attended (in person or *via* telephone) many of the Select Plaintiff depositions (Lana Alonzo, Peter Maggiore, Frankie Maggiore, Jane Gonzales, Michael Zubrowski, Linda Zubrowski, Kasie Couture, Patrick Couture, Virginia Randazzo, Mary Ann Catalanatto, Lillian Eyrich, Frankie Sims, Melissa Young, Matthew Hughes, Jan Hughes, Mark Pollock, Keri Pollock, Mary Haindel, Betty Jurisich, Brent Deselle, Ron LaPierre, Dawn LaPierre, Martin Tatum, Joseph Barisich, Roseanne Wilfer, Joseph Fatta, Tracy Fatta, Nadja Fisher, Donald Fisher, Angeles Blalock, Colin Berthaut, Jill Donaldson, Jared Oertling, Cathy Williams Allen, Zhou Zhang, Xue Zhao, Dominesha James (formerly Clay), Brian Lewis, Barbara Lewis, Sheral Lavergne, Holly Brasselman, Jerry Phillips, Annette Lawrence, Debra Leon, Boland Marine representative (Stephen Simmon), Connie Fineschi, Nicola Fineschi, Charles Back, Mary Ann Back), and they prepared summaries afterwards. When needed, Mr. Verrier prepared the witnesses for their depositions beforehand.

v. <u>Providing the Court with lists of *Brooke* Plaintiffs in each jurisdiction subject to remand and leading the effort to litigate the *Brooke* Plaintiffs' claims in Florida and Virginia following remand</u> in 2019.

w. <u>Assisting in the briefing on the applicability of statutes of limitations and cross-jurisdictional tolling</u> as requested by the Court following BNBM's motion to dismiss filed in *Brooke* and *Abner* [Rec. Docs. 21766, 21767, 21963]. This effort was successful in that the Court denied in part Defendants' motions, finding that when Plaintiffs knew of their claim is a "highly fact based inquiry not appropriate for a motion to dismiss." *See In re Chinese-Manufactured Drywall Prod. Liab. Litig.*, 2019 WL 1057003 (E.D. La. Mar. 6, 2019) [Rec. Doc. 22124].

x. <u>Leading the global class settlement negotiations in 2019, culminating in the execution of the Taishan Settlement Agreement</u> providing $248 million in cash for the benefit of all *Amorin* Plaintiffs, all *Brooke* Plaintiffs, and absent Class Members; preparing the Class Settlement Agreement and exhibits; preparing preliminary approval papers, Class notices, and estimate letters for all known Class Members identified on the Master Spreadsheet; providing the Allocation Neutral with relevant Court orders and documents of record related to Product ID, class damages, class certification, and Defendants' contests to remediation damages; overseeing preparation of the Master Spreadsheet; overseeing preparation of press releases; overseeing development of the Settlement

Website; responding to Class Member inquiries throughout the notice period and thereafter; preparing final approval papers and responding to objections to the Settlement; and presenting the Settlement to the Court for final approval. LSB continues to field calls from individual Class Members and their counsel and will provide these services until the Settlement is fully administered.

y.   <u>Funding the costs of pursuing recalcitrant Defendants</u> determined to drag out the proceedings and revisit and/or appeal or vacate virtually every decision made by the MDL Court, the remand courts, and the Special Master in Florida.

17.     In addition, LSB also oversaw the administration of the Knauf Settlement from 2014-2017, including the completion of the comprehensive remediation program and the provision of payments for other losses to all eligible Knauf, Global, Banner, and InEx Class Members.

18.     For the entirety of this litigation, and particularly during the relevant period from January 1, 2014 through December 31, 2019, LSB was responsible for the overall management of the case in the MDL and in the remand courts (from 2018 forward) and did whatever it took to get the job done, which resulted in the achievement of a global resolution with Taishan and the Additional Released Parties. At a time when the proceedings were at an impasse due to the recalcitrance of the Defendants, the MDL exercised its "last resort" option of remanding the *Amorin* and *Brooke* cases to Florida and Virginia. Obtaining the Trial Plan Order from Judge Cooke, which "**ADOPT[ED] <u>all</u>** of Judge Fallon's findings of facts and legal conclusions," was a game-changer that served as a trajectory towards reaching a class settlement with Defendants. This activity in Florida, combined with Judge Davis' Trial Plan Order in Virginia, and the MDL Court's Trial Plan Order for Louisiana cases provided the catalyst that was needed. Of course, LSB did not act alone, and with the assistance of numerous dedicated common benefit counsel who offered their expertise and hard work whenever needed, we were able to deliver significant cash benefits to the Class.

19.     For all of the reasons set forth herein, LSB requests an appropriate allocation of the common benefit fees awarded by the Court, reimbursement of the Firm's held costs, and reimbursement of the assessments paid during the relevant period.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on January 31, 2020.

_____
SANDRA L. DUGGAN