# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL NO. 2047<br>SECTION: L<br>JUDGE FALLON<br>MAG. JUDGE WILKINSON |
| THIS DOCUMENT RELATES TO:<br><br>ALL ACTIONS (except *The Mitchell Co., Inc. v. Knauf Gips KG, et al.*, Civil Action No. 09-4115 (E.D. La.)) | |

### AFFIDAVIT OF RUSS M. HERMAN AND HERMAN, HERMAN & KATZ, LLC'S APPLICATION FOR COMMON BENEFIT FEES AND REIMBURSEMENT OF COSTS PURSUANT TO THE COURT'S JANUARY 16, 2020 ORDER [REC. DOC. 22481]

STATE OF LOUISIANA

PARISH OF ORLEANS

BEFORE ME, the undersigned authority;

PERSONALLY, CAME AND APPEARED:

### RUSS M. HERMAN

who, after being first duly sworn, under penalty of perjury, did depose and declare that the following are true correct:

1. I am a partner in the law firm of Herman, Herman & Katz, LLC ("HHK").

2. This Affidavit is submitted on behalf of all the members of the law firm of which I am a partner.

3. The address of HHK is 820 O'Keefe Avenue, New Orleans, Louisiana 70113.

4. HHK has complied with Pre-Trial Order Nos. 9 and 9A in all material aspects and has submitted true and correct time and expense submissions pursuant to the Court's Pre-Trial Orders.

5. The Court may rely on the information submitted by HHK to Philip Garrett, the Court appointed Certified Public Accountant, which is contained in his Case Cost Management System in this litigation.

6. Russ Herman was Appointed Liaison Counsel per Pre-Trial Order No. 3, dated July 6, 2009 [Rec. Doc. 21] and has continued to serve in this capacity throughout this litigation. Russ Herman committed virtually full-time daily participation to this case since the inception of the case through today.

7. Leonard Davis, HHK was assisted Liaison Counsel since the inception of this case and has worked throughout the litigation. Leonard Davis worked with Russ Herman and Stephen J. Herman in all capacities and committed virtually full-time daily participation in this case since the inception of this case through today.

8. Stephen J. Herman was Appointed Settlement Class Counsel in the MDL on August 29, 2019 [Rec. Doc. 22314]. In addition, Stephen J. Herman worked with Russ Herman and Leonard Davis throughout the litigation as needed and has participated virtually full-time during the Taishan portion of this case.

9. From 2014-2019, all of the above served in some capacity as Co-Settlement Counsel. (HHK's activities included discovery, negotiations, meets-and-confers and settlement discussions. These occurred in a number of cities including Atlanta, Hong Kong, Miami, New Jersey, New Orleans, New York, Norfolk.)

10. HHK has submitted 26,818 hours (Ex. 1)[1] to Phillip A. Garrett, the Court appointed CPA, contributed voluntary assessments in the amount of $603,133.00 (Ex. 2)[2], and submitted $25,073.23 in held costs through August 2019 (Ex. 3)[3]. HHK has continuously, together with LSB, funded the litigation by contributing assessments in an equal amount to LSB and on a prorate basis based upon hours in the litigation. In other words, HHK and LSB have submitted the same amount of assessment towards the litigation totaling about approximately 73% of the total assessments paid by PSC members since December 31, 2013.

11. A description of the common benefit functions and the time spent on MDL 2047 was reported by HHK in the submission made to Philip Garrett, CPA, pursuant to PTO 9. However, a substantial amount of time devoted by HHK to this litigation was not reported pursuant to PTO 9, such as HHK staff employee time for administrative functions and due to HHK's daily involvement and commitment, the time records, though extensive, do not fully recognize all of the time and effort incurred by members of HHK. For instance, in many telephone conversations and emails (which averaged hundreds per day), inquiries by lawyers, Court personnel and potential claimants became routine common functions which were often not recorded pursuant to PTO 9. Record keeping often became too burdensome to record matters which were less than 10 minutes.

12. HHK has been involved continuously in this adversarial litigation involving Taishan and its related entities since the inception of the multidistrict litigation. The Court separated

---

[1] HHK continues to work on this matter and records time on an ongoing basis. HHK has incurred an additional 40.5 hours of time in this matter since December 31, 2019 and continues to incur time.
[2] An additional assessment of $5,000.00 was made by HHK on October 24, 2019.
[3] Additional held cost in the amount of $606.95 have been incurred by HHK since August 2019 to present.

time and expense reporting as of December 31, 2013 to address the "Knauf" portion of the case which occurred prior to that date and the "Taishan" portion of the case which continued beyond that date.

13. Since December 31, 2013 and prior to that time, HHK worked diligently, and often times on a full-time basis, to prosecute the claims and the common benefit efforts of approximately 10,000 Chinese-Drywall victims in this MDL.

14. HHK previously submitted a Fee Petition for the time period up and through December 31, 2013 and, therefore, submissions for the time period January 1, 2014 through present, including costs, are being presented in this application.

15. HHK submits that all work performed since the inception of this litigation is relevant to this Fee Application as it formed the basis and the foundation for the work performed by Plaintiffs' counsel, all of which contributed to the conclusion of this litigation.

16. HHK, together with Lead Counsel's firm, Levin, Sedran & Berman, LLP ("LSB"), worked hand-in-hand to handle assignments of work, various tasks and to coordinate for efficiency purposes this litigation. Many of the tasks were handled with LSB and throughout this litigation LSB and HHK worked together as if they were one firm handling different aspects of the litigation, yet at all times coordinated and addressed matters jointly.

17. The early bellwether trials of *Germano* and *Hernandez*, as well as the KPT Pilot Remediation Program led to a negotiated settlement with the Knauf Defendants in December 2011. This Knauf Class Settlement provided comprehensive remediation and cash benefits to Knauf properties, which the MDL court certified as a class action and approved on February 7, 2013. *In re:  Chinese-Manufactured Drywall Prod. Liab. Litg.,*

4

2013 WL 499474 (E.D. La. Feb. 7, 2013).  In addition, Class Settlement Agreements were reached and approved by the Court involving hundreds of downstream defendants which included homebuilders, suppliers, installers and insurers.  Further, HHK participated in the negotiation and court approval of four (4) Virginia Class Settlements with several downstream entities in the Taishan chain of commerce.  *See* Rec. Doc. 16934.  All of this assisted and is relevant to this Fee Application since it represents the foundation of the work performed by HHK, all of which contributed to the conclusion of this litigation.

18. HHK activities are extensive and far reaching in this litigation and virtually involve every aspect of the case.  HHK actively, together with LSB, continued to pursue the Taishan Defendants after the Knauf Settlement even though the vast majority of the Plaintiffs' common benefit counsel decided not to participate in the ongoing litigation against the Taishan Defendants.  The efforts of HHK and LSB were unwavering and resulted in fierce attacks to pursue the various claims against the Taishan Defendants.   The Taishan Defendants included, among others, BNBM, BNBM Group, CNBM and CNBM Group. Among some of the efforts undertaken by HHK include the following, however a detailed description of the day-to-day efforts and undertakings by HHK can be derived from the time submissions contained in the Philip A. Garrett Case Cost Management System.

    a.  HHK organized and set up meetings among plaintiffs' lawyers to organize the post Knauf aspect of the litigation and to initiate discovery.

    b.  Conducted and chaired numerous PSC meetings/conference calls.

    c.  Prepared agendas and assignments for various PSC members and other participating law firms.

d.  Received phone calls and correspondence from various *pro se* claimants and answered questions or directed them to the Court's website.

e.  Interfaced with the Court and coordinating with defense counsel.

f.  Coordinated with all plaintiff counsel and administered the Court docket.

g.  A timeline of significant events in this litigation from January 10, 2014 through September 2018 is attached for reference (Ex. 4).

h.  Every major decision and assignment in the litigation was a result of a collaborative between HHK and LSB.  Further, HHK handled substantial briefing, but most major briefing originated from the offices of LSB.  HHK reviewed, redrafted and collaborated on briefing.

i.  HHK drafted and participated in the preparation of 119 Status Conference reports and agendas since the inception of this MDL.  Over 65 of these status conference reports and agendas have occurred during the Taishan portion of the MDL.  HHK has attended and actively participated in every Status Conference.

j.  HHK participated in drafting and the review of all of the various Omnibus Complaints.  Omnibus Complaints created an important benefit for all plaintiffs so that service could be made on foreign manufacturers and their parent entities through the Hague Convention at a savings.  Omnibus Complaints resulted in defaults for all *Amorin* plaintiffs.

k.  HHK Assisted numerous plaintiffs and counsel on preservation issues, as well as inspection issues.

6

l.  HHK actively participated throughout this litigation with communications by and between elected officials.  Also, HHK actively participated in public relation efforts.  These involved dealings with elected representatives both federal and in the states of Florida, Louisiana, Mississippi and Alabama.

m.  HHK participated in discovery requests directed to the Consumer Products Safety Commission, Environmental Protection Agency, Centers for Disease Control, Department of State, Florida Department of Health, Florida Department of Financial Services (Division of State Fire Marshal), Louisiana Department of Health, Environmental Quality, Economic Development and Justice, the Louisiana Road Home and various tax agencies within the State of Louisiana.  Further, numerous communications with Tax Assessors took place to assist claimants with respect to valuations of property.

n.  HHK developed and assisted the Court in implementing a Pre-Trial Order for the creation of Plaintiff Profile Forms, as well as Defendant Profile Forms for Manufacturers, Distributors, Exporters, Importers, Brokers, Builders, Contractors/Installers, Retailers and Insurers which were coordinated between Liaison Counsel for the efficient and quick flow of discoverable information. HHK interfaced with Defense Liaison Counsel to provide the Court with ongoing updates to Profile Forms, including additional information to be provided by parties, the party's completion of the forms, progress of meet and confers, and liaisoned to address issues concerning those parties that did not timely submit an appropriate Profile Form.

o.  HHK was involved in establishing an early strategy to implement a comprehensive discovery plan that included the issuance of interrogatories, request for admissions, request for production of documents and the taking of depositions. The plan was implemented and carried out by HHK who worked with numerous common benefit attorneys (all of whom reported to HHK). Many of these depositions took place outside of the United States, including London, Frankfurt and Hong Kong. HHK additionally participated in numerous depositions within the United States.

p.  HHK has drafted or been involved in the drafting of the motions presented in open court and has actively participated in the various arguments presented in open court.

q.  HHK actively participated in the Class Damage Track ordered by the Court after Taishan returned to the litigation to defend itself. Plaintiffs worked up materials necessary to refute Defendants' challenges to class damages. HHK oversaw the preparation and the June 9, 2015 Class Damage Hearing, which involved significant fact discovery and experts, as well as motions and *Daubert* issues. This hearing involved numerous experts and testimony which resulted in a comprehensive Finding of Fact and Conclusion of Law ultimately set forth in the Court's ruling at Rec. Doc. 19197.

r.  HHK participated in the numerous "meets and confers", mediations, settlement conferences and negotiations with the Taishan entities which originally resulted in a $500 million settlement. After a 4-month delay, that settlement was withdrawn because Taishan could not provide security for the settlement funds. Following the withdrawal of this initial settlement by Taishan, there proceeded additional "meets

8

and confers", mediations, negotiations and arguments as to indicia and quality of evidence of the manufacturers and distributors of defective Chinese drywall. HHK participated in every mediation, document review, settlement and negotiation.

s.  HHK together with LSB briefed and argued appeals in the United States Fifth Circuit Court of Appeals and favorable judgments were rendered by that Court on January 28, 2014, May 20, 2014, and June 11, 2014 (Ex. 4).

t.  HHK vetted, interviewed and retained an investigator, who conducted investigations for the PSC in Hong Kong and mainland China resulted in the discovery of the locations of an unrevealed Taishan management of critical witnesses and their computer containing Taishan documents.

u.  On June 20, 2014, the MDL Court ordered Taishan to appear in open court on July 17, 2014 as a Judgment Debtor.  Taishan failed to appear on July 17, 2014 (Ex. 4). Intense litigation resulted from Taishan's contempt and non-appearance.

v.  HHK was involved in extensive discovery with the Taishan Defendants, which included documents relating to the contempt.  By May 17, 2016, the Taishan Defendants had produced 1,842,852 pages of documents (Ex. 4A) and, during the same time frame, no less than twelve "meets and confers" with Taishan occurred (Ex. 4).  HHK participated in every "meet and confer" (Ex. 4).  Following an attenuated review of the 1,842,852 pages of produced documents, a process was developed and overseen by HHK which involved several law firms and six translators.  HHK was instrumental in vetting and retaining the various translators and overseeing their efforts.  Following review by HHK of the documents,

9

numerous motions, hearings and orders followed.  HHK reviewed each of the documents produced and conferred on a daily basis with the translators and document reviewers.  Ultimately, HHK and LSB selected hundreds of documents to be used at depositions and trial (Ex. 4; Ex. 5).

w.  HHK interviewed, vetted and retained Yan Gao, a Chinese attorney with an LLM in American Business Law from Tulane Law School, a Juris Master (JD equivalent) from China University of Political Science and Law (Beijing, China), and a Graduate from Jishou University Foreign Language Department (Hunan, China) to assist with legal issues, research and translation and an additional six Chinese lawyers at Tulane Law School to assist in translation were interviewed and selected.

x.  HHK obtained and assisted in securing Chinese law experts.  HHK, together with LSB, retained Chinese law experts and ultimately Dr. Liu Junhai, Professor of Law at Renin University of China, and Bing Cheng, practicing international corporate attorney in China, and Dr. James V. Feinerman, a Professor at Georgetown University Law Center, prepared expert declarations and affidavits in connection with Taishan's jurisdiction argument.

y.  The major depositions taken of 30(b)6 Taishan defendant entities and individual depositions of primary executives and managers of Chinese entities were taken by HHK and LSB (Ex. 5; Ex. 5A).

z.  HHK actively participated as either first or second chair in the primary Taishan Defendant depositions (Ex. 5; Ex. 5A).

aa. HHK was instrumental in the preparation, organization and compilation of the Taishan trial package (Ex. 6).

bb. HHK developed the original charts illustrating the relationships by and among Taishan, BMBM, BMBMG, CMBM, CBMG and other entities which they controlled (Ex. 7).

cc. HHK gathered, reviewed, had translated and summarized all corporate public reports published by the Taishan Defendants, including those on the publicly traded Chinese stock exchanges, "Alibaba" and others.

dd. HHK participated in various discovery efforts including Request for Production and Request for Admissions (Ex. 4) to the Taishan Defendants.

ee. HHK participated in briefings, hearings and arguments involving translations including the hearings addressing machine translations, privilege, confidentiality, failure to produce documents and failure to produce witnesses.

ff. In 2019, additional settlement discussions were continuing with the Taishan Defendants, and HHK participated in "meets and confers" involving product identification and other tangential issues.

gg. HHK has taken the lead on briefing and arguing the current personal jurisdiction appeal to the Fifth Circuit.

hh. HHK has participated in briefing the Louisiana *Amorin* remand Trial Plan.

ii. HHK took an active leadership role in the preparation of Louisiana *Amorin* Select Trial Plaintiffs for trial.

jj. HHK took an active role in the preparation of several specific Louisiana *Amorin* Select Trial Plaintiff cases.

kk. HHK assisted with and attended Product Identification Depositions.

ll. HHK assisted with Product Identification briefings to, and appeal from rulings of the Southern District Florida special master.

mm.    HHK assisted with Florida *Amorin* remand trial plan briefings.

nn. HHK assisted with expert and other strategy/prep for Southern District of Florida *Amorin* Priority Plaintiff Trials.

oo. HHK participated in briefing and argument on *Brooke* Statute of Limitations and Prescription.

pp. HHK participated in briefing re Florida Individual Settlement.

qq. HHK participated in the preparation of mediation to resolve the claims with Taishan.

rr. HHK attended the Taishan mediation.

ss. HHK participated in the drafting of the ultimate and final Taishan Settlement Agreement.

tt. HHK assisted with preliminary and final settlement approval briefing and hearing.

uu. HHK participated in final approval presentation to the Court.

vv. HHK participated in General Class Settlement approval process, including notice, coordination with opposition counsel, responding to questions from class members and counsel, assisting the neutral re allocation, coordination with BrownGreer

regarding the master spreadsheet and claims administration, claim form, funding, and other related and ancillary contributions.

ww.      HHK handled and filed briefs in connection with objectors to the various Knauf settlements.[4] This involved the filing of motions to dismiss objections, as well as the taking by HHK of depositions of the various objectors, including Ronnie Garcia and Saul Soto.

xx. HHK took lead for PSC in attempting to coordinate with counsel for Southern District of Florida individual settlement.

yy. HHK opposed Taishan's jurisdictional challenges in the U. S. Fifth Circuit Court of Appeals and actively has been involved in the preparation and writing of appellate briefs and the oral argument before the Fifth Circuit which produced positive results. CNBM, BNBM and related correspondence filed Appeals to the U.S. Fifth Circuit Court of Appeals and Arguments are scheduled on February 5, 2020 in New Orleans. HHK did extensive writing on the Appellate Brief and the oral argument will be made by Robert Peck who is Of Counsel for HHK. HHK will be participating in the arguments before the Fifth Circuit.

zz. HHK has been involved with all filings made in this litigation and has worked closely with LSB to coordinate filings made in Florida, Virginia and the MDL. HHK was responsible for handling the filings directly in the MDL. All filings on behalf of the PSC were made by HHK. HHK was required to review, edit and file

---

[4] All of these activities regarding objections and administration of the Knauf and interrelated settlements took place after January 1, 2015. Substantial efforts were undertaken by HHK to administer and conclude the Knauf portion of the litigation and various settlement programs.

with the Court's ECF system, as well as File & Serve Xpress. Filings were required to be made under an HHK partner's name and the U.S. Federal District Court require that Liaison and Lead Counsel are responsible for documents filed under the Firm's name.

aaa.    HHK worked with the Court Appointed CPA to address various firm's shared expenses and reportings made by Philip A. Garrett, CPA. The processing and administration of payments were all handled by HHK.

bbb.    HHK monitored and/or assisted with lingering Knauf issues, and became involved in various matters as directed by the Court such as the cases involving Dieuvil, Maillot, and Bennett, as well as other similar issues. In addition, HHK regularly consulted with *pro se* claimants.

ccc.    HHK was responsible and handled general file management.

19. For ten years, HHK has been intimately involved in MDL 2047 in a leadership capacity and has functioned at the direction of the Court. The activities of HHK were necessary to the achievement of the final settlement with Taishan on August 16, 2019 in the amount of $248,000,000.

20. Exhibits 1 through 7 are part of this submission as if recited *in extenso* and are attached. Further, in accordance with the Court's Order of January 28, 2020 [Rec. Doc. 22529], attached to this Affidavit is a letter to the Court from Leonard A. Davis addressing time and expense incurred by HHK.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: January 31, 2020

Russ M. Herman, Esq.
Herman, Herman & Katz, LLC
820 O'Keefe Ave.
New Orleans, LA 70113
PH: (504) 581-4892
FAX: (504) 561-6024
Email: rherman@hhklawfirm.com

SWORN TO AND SUBSCRIBED
BEFORE ME THIS 31 DAY OF
JANUARY, 2020.

REGINA VALENTI, Notary Public
Bar Roll/Commission No. 14855
My commission expires: at death

15