**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION** | **MDL NO. 2047**<br>**SECTION: L**<br>**JUDGE FALLON**<br>**MAG. JUDGE WILKINSON** |

**THIS DOCUMENT RELATES TO:**

**ALL ACTIONS (except *The Mitchell Co., Inc. v. Knauf Gips KG, et al.*, Civil Action No. 09-4115 (E.D. La.))**

<u>**DECLARATION OF RICHARD J. SERPE IN SUPPORT OF FEE PETITION FOR COMMON BENEFIT TIME AND REIMBURSEMENT OF EXPENSES RELATED TO THE TAISHAN ASPECT OF THIS LITIGATION AND OTHER COMMON BENEFIT WORK FROM JANUARY 1, 2014 TO PRESENT**</u>

Richard J. Serpe declares, based upon his first-hand knowledge from his work in the above referenced and associated matters, the following:

1. This Declaration supports the application of the Law Offices of Richard J. Serpe, P.C. and Breit Cantor Grana Buckner (f/k/a Breit Drescher Imprevento)[1] ("the Firms") for common benefit fees and reimbursement of held costs and assessments in connection with final approval of the Class Settlement with Taishan Gypsum Co., Ltd. ("Taishan").

2. During the relevant period (2014 - 2019), the Firms submitted 8,718.60 hours of common benefit time.

---

[1] Following the procedure from the Knauf fee petition, the contributions of co-counsel Jeffrey Breit (Breit Cantor) have been submitted to the court-appointed certified public accountant, Philip Garrett, and are incorporated into this declaration as well.

**EXHIBIT**
**A**

3.      The Firms' lodestar contribution to the litigation as calculated by the Court Appointed Certified Public Account is $3,877,549.75.[2]

4.      The Firms expended $42,766.28 in held expenses in pursuing litigation in state and federal court. in Virginia, Louisiana and Florida. The Firms are requesting that the Court consider additional held expenses of $24,451.65 as reflected in the attached correspondence (Exhibit "A"). The Firms contributed $70,236.00 in assessments since July of 2017 to the PSC in support of its trial efforts against Taishan.

5.      The Firms continued their **leadership role** being appointed by the Court to serve the following roles: re-appointed PSC member for entire litigation; lead, liaison and trial counsel for the remanded actions to the Eastern District of Virginia; trial counsel in the Eastern District of Florida remanded actions; trial counsel for the PID hearing before the special master; trial counsel for the fee committee trial before a special master Balhoff; class counsel in six separate settlement classes in the litigation (Taishan; Taishan/Venture Supply Assigned Claims; and the four Virginia class settlements (see section 10, infra)). The Firms were also appointed by Judge Mary Jane Hall in the Norfolk Circuit Court of Virginia to serve as lead and liaison counsel in the states consolidated drywall litigation. These consecutive appointments reflected the Firms' ability to accept big picture assignments, work without oversight, and provide leadership for teams of attorneys and support staff engaged in multiple and diverse mission critical aspects of the litigation.

6.      The Firms achieved **unprecedented success in pursuing the downstream defendants** (builders, installers, and insurers) which utilized Taishan's Venture Supply

---

[2] The Firms respectfully submit that this lodestar calculation is extremely conservative.  More than half of the Firms' common benefit hours were contributed by Richard J. Serpe personally.  Given that his billing rate is modest by PSC member standards, the resulting lodestar calculation magnifies the significant value of Mr. Serpe's contributions to the litigation.

Drywall. The Firms utilized the Virginia state court consolidated drywall docket to advance the state-of-the-art litigation against dozens of these downstream defendants achieving scores of settlements including numerous "QSF" settlements with insurance carriers requiring the appointment of a special master for distribution of settlement funds among qualified claimants. As set forth in section 8, infra, this hard-fought litigation advanced the state of the case on liability, damages, causation, and scope of remediation. During the time 2014 to 2018, no such downstream litigation program existed in either state or federal court anywhere else in the country. Milestones in this litigation included:

    a.  Trial settings against builder and installer defendants February 10, 2014; March 24, 2014; April 14, 2014; September 15, 2014; April 6, 2015; April 7, 2015; July 20, 2015 and November 13, 2017;

    b.  Opposition brief to builder defendants' motion to dismiss;

    c.  Master Expert Designation submitted to builder defendants;

    d.  Motion to Compel insurance and asset discovery against builder defendants;

    e.  Motion to Compel discovery against builder defendants;

    f.  Answers to Interrogatories and Requests for Production on expert and scientific issues submitted to builder defendants;

    g.  Submission of Literature Designation against all defendants;

    h.  Defending contest to default judgment obtained against installer defendants;

    i.  Propounding Interrogatories, Requests for Production and Requests for Admission to installer defendants on March 5, 2015;

    j.  Answers to Interrogatories and Responses to Requests for Production submitted to builder defendant on October 18, 2016;

    k.  Petition for Rule to Show Cause filed against builder defendants on March 6, 2017;

    l.  Opposition brief against builder defendants' motion for summary judgment; filed March 21, 2017;

m. Motion for Default Judgment filed against installer defendants March 21, 2017;

As a result, the Taishan/Venture Supply claimants amassed millions of dollars of net settlement payments representing 26.38% of their overall claim value[3]. In other words, over ¼ of the entire claim value had already been obtained from downstream defendants. Thus, the Virginia consolidated drywall litigation produced unprecedented recoveries for class members. As part of the Allocation Neutral's allocation formula, reduction in Taishan settlement payments were made to reflect prior settlement payments. Accordingly, due to the Firms' efforts in Virginia State Court, more funds were available for distribution to all other Taishan clients given the unprecedented settlements obtained by the Firms in the Virginia State Court drywall consolidation. The Firms also generated significant fees from which voluntary assessments were made to the Court's common benefit trust account, which were further augmented by the attorney's fees set aside from the settlement with Taishan of the Venture Assigned Claims, as set forth in the following section.

7. The Firms' ingenuity and resourcefulness in pursuing the Taishan/ Venture Supply Default Judgment assigned default judgment provided a mechanism to seek a liquidated **judgment against Taishan in state court prior to actions being remanded in federal court**. This was significant in light of Defendants' well-documented pattern of using delay tactics to avoid Chinese Drywall judgments. Although monumental progress was made on jurisdiction, class damages, alter ego, etc., Taishan was not placed in a position where they were ordered to pay money damages to any individual claimant or class other than the

---

[3] Based upon the 2019 Remediation Formula Case Value (Unadjusted square footage X 2019 RS means remediation costs)

*Germano* seven.[4] In an effort to exert the threat of a final judgment prior to the remand of actions by this Court, the Firms executed a three-step plan for setting a final trial against Taishan in the Virginia consolidated litigation. In the first step, the Firms insisted that defendant Venture Supply assigned its default judgment against Taishan to the Venture Supply settlement class as part of the consideration for that national class settlement. In the second step, the Firms entered an appearance for this settlement class stepping into the shoes of Venture Supply and seeking to reduce the preliminary default judgment to a final judgment on behalf of the settlement class including all attorney's fees and expenses. In the third step, the Firms litigated this matter against Taishan in Virginia state court including vigorous motion practice, discovery, expert witnesses, and motions in limine. A partial listing of critical motions and hearings includes:

    a.  Securing the substitution of Venture Class Plaintiffs in the place of settled Defendant Venture Supply, Inc. on June 9, 2014;

    b.  Motion to Fix Damages against Taishan;

    c.  Class Wide Answers to Interrogatories and Responses to Requests for Production of Documents submitted to Taishan on October 19, 2016;

    d.  Opposition brief to Taishan's Motion to Compel filed on December 2, 2016

    e.  Opposition brief to Taishan's Motion to Dismiss filed on December 2, 2016;

    f.  Hearing on Taishan's Motion to Dismiss held on December 8, 2016;

    g.  Hearing on Taishan's Motion to Compel held on February 7, 2017;

    h.  Supplemental Class Wide Answers to Interrogatories and Responses to Requests for Production submitted to Taishan on March 3, 2017;

    i.  Obtaining, reviewing, organizing, sorting and digitizing billing records evidence from settled defendant Venture Supply, Inc.;

---

[4] Taishan's prior payments were made to the seven Virginia intervenors litigated by the Firms for the PSC in the Germano default trial.

j.  Opposition brief to Taishan's Motion in Limine to Exclude Evidence filed on September 5, 2017;

k.  Opposition brief to Taishan's Motion in Limine to Exclude Extrajudicial Evidence of Damages filed on September 5, 2017;

During the conduct of this litigation, the Firms developed personal relationships with counsel for Taishan, building credibility through the successful pursuit of that case, the successful negotiation of a settlement, successfully obtaining class wide approval including acceptance of the special master's allocation of all settlement funds. The settlement agreement reached, and the funding mechanism utilized by Taishan to fund the settlement of the assigned claims class formed a template for the agreement ultimately reached in May, 2019 to settle the national litigation. Thus, prior to the first actions being remanded to the district courts in which they were initially filed, the Firms had successfully pursued litigation and obtained compensation for Taishan/Venture class members.

Maintaining credibility with Taishan was critical in the upcoming remanded actions. The professionalism, competence, cooperation, and cordial working relationship with opposing counsel earned the Firms the ability to deliver more effective work product in the continuing litigation against Taishan.

8.      The Firms managed the parallel Virginia state court consolidated litigation in an aggressive fashion, resulting in the **advancement of the state-of-the-art in drywall litigation**, continuing the scientific, expert, and practical victories achieved in the 2010 timeframe throughout the following decade. For example, downstream defendants argued that Taishan drywall met all of the ASTM standard requirements and that the failure of this defendant to label their products as such was a harmless oversight. In response, the Firms, on behalf of the

6

PSC, obtained and continue to warehouse significant quantities of full Taishan drywall boards. Utilizing full chain of custody controls, the Firms conducted follow-up laboratory testing demonstrating that Taishan drywall failed critical components of ASTM standards. Further, the Firms conducted legal research and drafted motions demonstrating that US law not only required that this testing be conducted prior to export, but that Taishan violated multiple US laws in their lax labeling practices. These issues were heavily litigated in the Virginia consolidation, and provided precedent for arguments ultimately made in the remanded actions. Further utilizing this development of the state-of-the-art, the Firms took, together with PSC member Patrick Montoya, the deposition of Taishan in January of 2019, conducting extensive and successful discovery on these labeling practices which significantly contributed PID litigation and trial against Taishan in Florida.

The Firms overcame multiple challenges to the Germano Remediation Protocol in the Virginia consolidation by defendants not covered by the default judgment. These defendants advanced arguments that so-called "real world" remediations could be accomplished at a fraction of the cost, and that scientific advances after 2010 warranted wholesale revision of the Court's protocol. The Firms continued to develop and refine the scientific and practical arguments in favor of the full protocol across dozens of trial settings in Virginia. The Firms' leadership in this area provided a significant tactical advantage when Taishan raised these issues in their Florida remand expert reports and motion practice (see 9, infra.)

The Firms also developed and defended claims for extensive damages for current and former owners, owners who partially remediated, and owners who lost their homes in foreclosure or bankruptcy. The Firms also advanced damages for stigma and diminution in value in state court. This practical experience in complex analytical challenges again provided

significant advantage when identical issues were raised in the actions remanded to the Eastern District of Virginia.

9.     At the direction of Arnold Levin and Sandra Duggan, the Firms accepted leadership and supporting roles in multiple aspects of the post-remand litigation against Taishan including:

   a.  Serving as lead and liaison counsel in the EDVA before Judge Mark Davis, securing the adoption of prior MDL rulings, a trial plan and penultimate ruling on former owners with respect to all Venture Supply remanded cases. This litigation included:

      i.   Coordination with the Court, plaintiffs' counsel and defense counsel immediately after the Remand Order was entered [Rec. Doc. 6] in order to ensure a smooth transition to Virginia;
      ii.  Lead counsel for organizational status conference on December 18, 2018 in order to set a briefing schedule [Rec. Doc. 66];
      iii. Motions and coordination with the Court and defense counsel regarding plans for resolution [Rec. Docs. 67, 72];
      iv.  Coordination with the Court regarding the filing of a Joint Appendix into the record [Rec. Doc. 71];
      v.   Revisions to and filing of Motion to Adopt Plan for Resolution [Rec. Doc. 69];
      vi.  Lead counsel for hearing arguing for plaintiffs' plan, criticizing the defendants' plan, arguing for the inclusion of former homeowners, and adopting the prior MDL rulings;
      vii. Continued argument for the preclusive effect of the MDL Court's remediation damages formula [Rec. Doc. 85];
      viii. Assessment of Virginia plaintiffs and selection of proposed priority plaintiffs;
      ix.  Coordination with and selection of Special Master, and obtaining approval of defense counsel;
      x.   Preparation and filing of Discovery Plan [Rec. Doc. 89] and Motion for Stay [Rec. Doc. 90];
      xi.  Lead counsel for telephone conference with Court regarding potential settlement with the Defendants [Rec. Doc. 93];
      xii. Preparation and filing of status reports [Rec. Docs. 100, 102 and 103].

   b.  Serving as co-trial counsel for the remanded actions in the Southern District of Florida, attending status conferences, accepting assignments for developing defending expert witnesses Brian Krantz, Lori Streit, Michael Elkin, Randall Bell and Anthony Graziano in Florida and California, and

participating in resolution of product ID attribution issues before the Special Master. Until settlement was reached in May 2019, two partners of the Firms were committed to attend six weeks of bellwether trials in the Eastern District of Florida and had undertaken extensive preparation as those trials were rapidly approaching.

c.  Development of expert witness testimony and reports on scope of remediation and damages, and taking deposition of defense expert witnesses in Florida, Virginia, Georgia and California. Prepared motions to strike defense experts and oppositions to Daubert motions on Plaintiff experts in the Eastern District of Florida;

d.  Litigating product ID issues in the Southern District of Florida, including voluminous document review, first chair of the Taishan 30(b)(6) product ID deposition, and serving with Patrick Montoya as trial counsel at the hearing before the special master on disputed PID in the Southern District of Florida;

e.  Pursuing discovery against Taishan with respect to their allegation that manufacturers other than Taishan and Knauf produced reactive CDW, and further debunked their alleged "chemical product ID" arguments presented to the Special Master in the SDFL.

f.  Provided liaison to Virginia Senators and Congressmen who are engaged in potential political solutions to litigation, including preparing a memorandum for the Virginia governor prior to a trade trip with China in June 2014, as well as multiple hearings before the Senate and House of Representatives.

g.  The Firms undertook monumental efforts to identify potential bellwether plaintiffs which were proffered as part of the PSC's trial plans in both the Eastern District of Louisiana and the Eastern District of Virginia.

h.  The Firms participated in all aspects of the global class settlement negotiations, attended the mediation in Austin in May of 2019, serving as class counsel and investing extensive time and expense in assisting with obtaining preliminary and final approval of the class settlement.

10.     As class counsel for the six class settlements for Taishan/ Venture class members, the Firms remained **fully engaged with this class for the entire pendency of the litigation**. From this perspective, the Firms served as liaison to Court appointed settlement administrators (Garretson Group and Brown Greer) as fair and equitable allocations of those

settlements were distributed. The settlement administrators faced novel questions with respect to real property and other losses for every member of the national class. Appeals of the Special Master's allocation resulted in hearings before Judge Fallon providing further guidance in resolving settlement allocation equitably. As class counsel, the resolution of these issues provided important insight when similar issues were faced in the administration of the global settlement with Taishan.

These efforts required unceasing communications in person, town hall style meetings, phone conferences and correspondence. The Firms prepared submissions on behalf of *pro se* class members in order to comply with Court ordered deadlines for supporting documentation including square footage declarations. The Firms also communicated the challenges faced by continued litigation and updated the class on progress and setbacks for the entire decade. Given this extraordinary level of engagement, the Firms, serving as class counsel were able to obtain 100% acceptance of the Taishan/Venture claimants, with no opt outs or objections.

11.    The Firms have been privileged to serve on both the Knauf and Taishan fee committees, committing hundreds of hours to provide common benefit fee allocation recommendation to this Court. As with other aspects of this litigation, the Firms accepted high level assignments including serving as trial counsel before Special Master Balhoff.

12.    From our first contacts from worried homeowners over eleven (11) years ago, the Firms have remained engaged on a daily basis with the members of this class, counseling and encouraging them through severe economic and personal hardships.  Since the formation of the PSC in June of 2009, the Firms' common benefit contributions have been unceasing. The Firms are grateful to this Court, as well as Judge Hall, for the opportunity to have been consistently appointed to leadership assignments.  We hope for an expeditious resolution to all

remaining aspects of this litigation, but remain committed to contribute in any way possible towards the critical task of bringing closure.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on January 31, 2020.

_____

**RICHARD J. SERPE**