UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL NO. 2047<br>SECTION: L<br>JUDGE FALLON<br>MAG. JUDGE WILKINSON |

THIS DOCUMENT RELATES TO:

ALL ACTIONS (except *The Mitchell Co., Inc. v. Knauf Gips KG, et al.*, Civil Action No. 09-4115 (E.D. La.))

## FEE PETITION FOR COMMON BENEFIT FEES AND DECLARATION OF PATRICK S. MONTOYA IN SUPPORT OF FEE PETITION FOR COMMON BENEFIT TIME AND REIMBURSEMENT OF EXPENSES IN THE TAISHAN LITIGATION FROM JANUARY 1, 2014 TO PRESENT

Patrick S. Montoya declares, based upon his first-hand knowledge from his work in the above referenced and associated matters, the following:

1. This Declaration supports the application of Colson Hicks Eidson ("the Firm") for common benefit fees and reimbursement of held costs and assessments in connection with final approval of the Class Settlement with Taishan Gypsum Co., Ltd. ("Taishan").

2. During the relevant period (2014 - 2019), the Firm submitted 3,828 hours of common benefit time.[1]

3. The Firm expended $62,515.24 in held expenses in pursuing the litigation.

4. The Firm contributed $80,000 in assessments since July of 2017 to the PSC in support of its trial efforts against Taishan.

---

[1] The total number of hours is based upon time corrected time from July 2018 through July 2019, and newly submitted time from August 2019 until December 2019, as set forth in the affidavit attached as Exhibit A.

1

5. As background, the Firm was intimately involved in establishing Taishan's jurisdiction in Florida. Mr. Montoya took multiple depositions in Hong Kong of Taishan employees. Mr. Montoya also took the lead in establishing specific Florida contacts by Taishan by taking multiple depositions across the State of Florida, including Ivan Gonima. Mr. Montoya uncovered the Exclusive Distributorship Agreement between Taishan and Gonima's company, a linchpin to the jurisdictional argument. Moreover, the Firm took the lead in arguing the Florida jurisdiction, successfully, both in the MDL and in the state court litigation in Miami-Dade County.

6. With this backdrop, when called upon by Lead Counsel to oversee the remands to Florida, the Firm took immediate action by dedicating two lawyers to the Florida remand, Mr. Montoya and Ms. Rico.

7. Of significance, at the first hearing before Judge Cooke in *Amorin,* Judge Cooke appointed Mr. Montoya as **lead counsel** for 1,700 *Amorin* Plaintiffs in the Florida litigation. Mr. Montoya has extensive experience in the Southern District of Florida, having served on the Southern District of Florida Local Rules Committee upon appointment by then Chief United States District Court Judge Donald L. Graham.

8. The importance of the Florida cases, and the Firm's role in steering the Florida cases and keeping them on track with the pressure of trials scheduled for July 2019, should not be underestimated. The Florida cases led the charge upon remand. There were more Chinese drywall victims in Florida than any other state in this litigation. The Florida cases had the most aggressive trial schedule. The Florida cases would be tried first among all the states. The Firm took the lead in preparing the cases for trial in Florida due to Judge Cooke's appointment of Mr. Montoya as lead counsel and its experience in trying cases in the Southern District of Florida.

It was presumed that Mr. Montoya would be lead counsel in most, if not all of the trials. The Firm also brought with it the experience of having successfully tried a Chinese drywall case to a jury in the *Seifart* case, resulting in a $2.5 million verdict for the Plaintiffs. The *Seifart* case, whose materials were turned into a trial package for MDL 2047, served as base for the trial work done in the remands against Taishan in Florida.

9. The Firm's leadership role in the Florida remand cases was as follows:

    a. **The Preclusive Effect Hearing:** Upon remand, Defendants took the position that the MDL Court's rulings did not carry over to the Florida remands. Had Taishan prevailed in its position, the case would essentially have to start over and Plaintiffs would likely have faced years more of litigation with uncertain results. Mr. Montoya argued the motion before Judge Cooke and prevailed. Undersigned counsel is of the opinion that this was a turning point in the litigation and expedited the cases towards trial and eventual resolution.

    b. **Selection of Priority Claimants:** The Firm coordinated the selection of the Priority Claimants from the Florida lawyers' inventory. The work included vetting its own cases and that of other Florida counsel, ranking and presenting those cases. The Firm also had four of its own clients that were selected as Priority Claimants.

    c. **Experts:** Based upon its experience in the *Seifart* matter, the Firm was at the ready to vet experts for causation and damages, to wit, an accountant, real estate appraiser, real estate agent, chemist and metallurgist. After vetting the experts, the Firm also took the lead in coordinating: a) the materials the experts needed to review, b) managing the experts' reports and document

  production, c) preparing the experts for deposition, and d) coordinating supplemental expert reports where needed.

d. **Florida law:** The Firm was relied upon for its knowledge and research of Florida law, particularly the legal theories that would maximize damages for the Class, such as developing the unique theory under Florida law that would allow recovery of both remediation and diminution-in-value/stigma damages. In addition, the Firm also assisted with condominium associations whose claims were prevalent in this litigation and unique under Florida law.

e. **Discovery & Trial Preparation:** Mr. Montoya took half of the Product ID depositions of Taishan's corporate representative Che Gang. The Firm also took the lead in the depositions of Defense experts Roddewig and Cohen. The Firm took the lead in preparing and defending Plaintiffs' expert witness depositions of: Elkin, Graziano and Greenblatt. The firm assisted in preparing and defending the depositions of Elkin, Krantz and Streit. The firm also analyzed and compiled the list of documents to seek a stipulation from Defendants regarding hearsay and authenticity at trial, participated in negotiations with opposing counsel regarding the same.

f. **Product ID and setoff and contests hearings before the Court-appointed Special Master in Miami:** Mr. Montoya was involved in preparation of the PowerPoint and presented the opening argument at the Product ID hearings and portions of the argument on the various Product ID "buckets." Mr. Montoya also prepared for and presented at the hearings on contests and setoffs.

g. **Filings in the Southern District of Florida:** In its role as Florida lead counsel, the Firm filed in excess of 120 CM/ECF entries in the *Amorin* and *Brooke* matters in the Southern District of Florida. Each filing was reviewed by Mr. Montoya and/or Ms. Rico before it was filed. Ex. B, attached. Any orders that had to be submitted to Judges Cooke and Williams was done by the firm via email pursuant to the Southern District of Florida's Local Rules.

h. **Public Relations:** The Firm took the lead in securing a letter from a bi-partisan coalition of the Florida congressional delegation to Secretary Ross, Ambassadors Branstad and Lighthizer requesting that they take action within applicable rules and regulations as to the "recalcitrant Chinese companies" to resolve this matter. The letter resulted in press conference where victims were able to meet their local congressional representatives and advise the public that the Chinese drywall problem was serious, ongoing and required resolution.

i. **Mediation & Settlement:** Mr. Montoya was charged with selecting the mediator for the Florida remand cases. After vetting several mediators, Mr. Montoya suggested and recommended Mr. John Freud based upon his experience and knowledge of Mr. Freud's history and talent. After the Defendants vetted Mr. Freud, he was found acceptable to them. Mr. Freud was essential to resolving this case. Mr. Montoya also participated in the mediation of this matter, assisting Lead Counsel when called upon and was appointed Florida Settlement Class Counsel. Mr. Montoya also participated in multiple meetings with Lead Counsel and Mr. Faircloth regarding

resolving these matters.

10. During the conduct of this litigation, the Firm developed personal relationships with counsel for Taishan, including Taishan's local counsel in Miami whom the firm knew via other cases. These relationships assisted in moving the remanded cases expeditiously, the negotiation of a settlement and approval.

11. From the filing of one of the first cases in the Southern District of Florida at the inception of this litigation, counseling and serving several hundred clients in the State of Florida who were victimized by Chinese drywall, many of whom lost their homes to foreclosure, the Firm remained committed. Since Mr. Gonzalez's passing and Mr. Montoya's appointment to the PSC, the firm has remained ready, willing and able to serve, as demonstrated by its work and effort in the Florida remands. After remand, it was the Florida cases that took the lead and Judge Cooke's trial schedule that kept the Florida cases on the forefront of this litigation.

12. The Firm thanks the Court for allowing it to continue to serve the victims in these cases on a class-wide basis and remains committed and available to this case and its hopeful conclusion.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on January 31, 2020.

/S/Patrick S. Montoya
**PATRICK S. MONTOYA**