# Exhibit F

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL NO. 2047<br><br>SECTION: L |
| THIS DOCUMENT RELATES TO:<br><br>*Elizabeth Bennett, et al. v. Gebrueder Knauf Verwaltungsgesellschaft, KG, et al.*<br>2:14-cv-02722-EEF-JCW | JUDGE ELDON FALLON<br><br>MAG. JUDGE WILKINSON |

**DECLARATION OF PLAINTIFF PEGGY POWELL
IN RESPONSE TO DEFENDANT KNAUF'S MOTION FOR SUMMARY JUDGMENT**

1. I am a plaintiff in this case. I make this declaration from my personal knowledge and, if called upon to do so, could and would competently testify to the matters set forth herein in a court of law.

2. I am the owner of a home with a street address of 110 Laurel Lane, Pass Christian, MS 39571. This is the affected property at issue in this case.

3. Attached hereto as an exhibit is the document cancelling the contract for sale of my Pass Christian home on October 10, 2014. This is the cancellation referenced in my recent deposition that was the first time anyone suggested my home might contain defective Chinese-manufactured drywall. Apart from this cancellation, I received no other documents from the buyer or her agent. And, I do not know for sure whether she had an inspection done that led to the cancellation.

4. After reviewing the transcript of my deposition, it is my belief that some of my testimony has been misinterpreted. In October of 2014, I did not know that my home actually had

1

Chinese drywall. The prospective buyer, Shirley Conley Kautz, through her agent, indicated that the home exhibits signs that they believed were consistent with defective Chinese drywall. This cancellation was the only communication regarding the possibility that the home might contain defective drywall.

5. After receiving the cancellation from the buyer's agent that referenced the possibility of defective Chinese drywall, I conducted internet research to learn more about the alleged problem. I found very limited useful information about Chinese drywall on the internet, so I reached out to my builder who could only provide information about his distributor of the drywall – a local business that he believed only did business with American companies.

6. The Pass Christian property was my home before I got married and it was being sold so that my husband and I could live in a home in Gulfport that was neither his nor mine prior to marriage. We wanted to begin our life together in our new home.

7. In my internet research, I also learned that there were lawsuits about Chinese drywall, but in 2014, I could not find any attorney willing to accept me as a client or provide counsel about how to navigate the issues. I was told by multiple people, including multiple law firms, that the Chinese drywall litigation was over and nobody would be willing to take my case or provide me with any assistance. The impression I got was that I would not get any help and this issue was mine to solve alone. It was an overwhelming feeling of helplessness.

8. What I did find on the internet was recommendations regarding what signs to look for in the home. I followed those recommendations, but it didn't help me to figure out anything. It certainly did not help me confirm that I had Chinese-manufactured drywall

or the brand of defective drywall. During this period, I could not figure out if I indeed had Chinese drywall in my home. I had no answers and found no assistance anywhere.

9. I also attempted to find a certified Chinese drywall inspector in my area, but I could not find one. Since the Pass Christian home was empty and apparently could not be sold, we decided to rent it in order to cover the taxes, POA dues and other expenses to maintain the property. And, to keep the property insured, we needed to have someone living in the home, even if it was renters.

10. Shortly after I rented the home to tenants, my husband became sick. He had congestive heart failure, kidney failure, brittle diabetes, and then was diagnosed with Parkinson's Disease. In June of 2018 he suffered a massive stroke. He was hospitalized multiple times as a result of his numerous health problems and finally lost his battle when he passed away on March 3, 2019.

11. While my husband was in a rehabilitation facility for intensive physical, occupational, and speech therapy, and with the lease on the Pass Christian home nearing an end, I did more research about defective Chinese drywall. And, after another internet search led me to contacting more potential inspectors and attorneys, I was ultimately referred to Doyle Law Firm, PC. This was approximately July of 2018.

12. A representative of Doyle Law Firm, PC advised me how to find proof that Chinese drywall was in my home. I followed that advice and found a portion of an ink stamp on the back of a single piece of drywall that indicated it was manufactured by Knauf. That is when the Doyle Law Firm accepted me as a client and filed my claim in this case.

13. I found proof that Knauf manufactured the defective drywall on July 25, 2018, the date I verified on my Plaintiff Profile Form and again in my Supplemental Plaintiff Profile

Form. Prior to that date, I did not know for sure that my home actually had Chinese drywall.

14. And, until late 2019, when Doyle Law Firm sent an expert to visit my home, I never had an inspection done by a certified Chinese drywall inspector.

15. I believe I would be considered layman in terms of construction of homes, construction defects, or defective products in general, because I have no training in any of those areas.

16. I believe I acted reasonably in my search for answers about the potential that Chinese drywall might be in my Pass Christian home.

I declare under penalty of perjury under laws of the United States that the foregoing is true and correct.

Executed on December 28, 2019, in Gulfport, Mississippi.

*Peggy Powell* (signature)
Peggy Powell

4