UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL NO. 2047 SECTION: L |
| THIS DOCUMENT RELATES TO: *Elizabeth Bennett, et al. v. Gebrueder Knauf Verwaltungsgesellschaft, KG, et al.* 2:14-cv-02722-EEF-JCW | JUDGE ELDON FALLON MAG. JUDGE WILKINSON |

**PLAINTIFFS JACQUES & SARAH BROUSSEAU'S OPPOSITION**

**TO DEFENDANT KNAUF'S MOTION FOR SUMMARY JUDGMENT**

# Table of Contents

**Page**

I.    STATEMENT OF MATERIAL FACTS……………………………..………   1

      A.    MDL-2047……………………………………………………..……   1

      B.    The *Bennett* Class Action ……………………...…………………....   3

      C.    Plaintiff Jacques and Sarah Brousseau in the *Bennett* Complaint ……....   4

II.   STANDARD OF REVIEW……………………………………………….…   5

III.  ARGUMENT……………………………………………………………   5

      A.    Plaintiff's product liability claims are timely filed …………………...   7

      B.    Product liability claims are subject to the discovery rule in
            Louisiana …………………………………………………………   9

      C.    It is settled Louisiana law that defective Chinese-manufactured
            drywall is a latent defect …………………………………………..   13

      D.    Knauf had a duty to warn Plaintiff regarding defective nature of its
            drywall after the sale but chose to remain silent ……………………...   14

      E.    Equitable estoppel prevents Defendants from benefitting due to
            their choice to intentionally not warn consumers about their
            defective drywall ……………………………………………………   16

      F.    Plaintiff's Loss of Use & Enjoyment Claim is Appropriate Under
            Louisiana Law ……………………………………………………   17

      G.    Plaintiff's consequential damages, including personal property
            damages and diminution in property value are to be resolved by a
            trier of fact under Louisiana Law …………………………………..   19

      H.    Defendants have provided this Court with no basis for summary
            judgment under the Louisiana Product Liability Act (LPLA) …….   21

      I.    All Louisiana plaintiffs' now filed claims filed in *Bennett* are
            protected by the equitable tolling principles decided by the U.S.
            Supreme Court in American Pipe if Knauf's defective drywall was
            discovered on or after November 13, 2013 …………………….……   21

          *i.*      *Federal Causes of Action Employ Cross-Jurisdictional Tolling* …………………………………………………………….. 22

          *ii.*     *Few States Have Addressed Cross-Jurisdictional Tolling, But the Trend Favors Adoption of Tolling* …………………. 22

          *iii.*    *The Class Action Fairness Act Establishes a Nationwide Policy Favoring the Filing and Maintenance of Class Action Lawsuits in Federal Court* ………………………….. 24

     J.     Plaintiff's claims are not precluded by the subsequent purchaser doctrine because seller subrogated buyers in Cash Sale …………. 25

     K.    Defendant Knauf failed to establish Plaintiff assumed the risk that the home contained defective Knauf-manufactured drywall at time of purchase ……………………………………………………. 26

IV.   CONCLUSION……………………………………………………….. 27

Table of Authorities

**Cases**                                                                          **Page**

*American Pipe & Const. Co. v. Utah,*                                               22, 24,
    414 U.S. 538 (1974)

*Anderson v. Liberty Lobby, Inc.*,                                                 5
    477 U.S. 242 (1986)

*Arnold v. Town of Ball,*                                                          17
    651 So. 2d 313 (La. Ct. App. 1995)

*Bailey v. Missouri P.R. Co.,*                                                     20
    383 So. 2d 397, 1980 La. App. LEXIS 3636 (1980)

*Bell v. Showa Denko K.K.*,                                                        24
    899 S.W.2d 749 (Tex. App. 1995)

*Bell v. Uniroyal Inc.*,                                                           16
    696 So.2d 268 (La. Ct. App. 4th Cir.1997)

*Carter v. Haygood*,                                                               9
    892 So.2d 1261 (La. 2005)

*Celotex Corp. v. Catrett*,                                                        5
    477 U.S. 317 (1986)

*Chastant v. SBS-Harolyn Park Venture*,                                            10
    510 So. 2d 1341 (La. Ct. App. 1987)

*Clark v. Coats & Clark, Inc*.,                                                    5
    929 F.2d 604 (11th Cir. 1991)

*Crow v. Laurie,*                                                                  12
    729 S.2d 703 (La.App. 1st Cir. 1999)

*Crown, Cork & Seal Co. v. Parker*,                                                22, 24
    462 U.S. 345 (1983)

*Dart Cherokee Basin Operating Co. v. Owens,*                                      24
    135 S.Ct. 547 (2014)

*David v. La. Citizens Prop. Ins. Corp.*,                                          25
    118 So. 3d 1011 (La. 2013)

*Dorry v. Lafleur*,                                                    26
        399 So.2d 559 (La.1981)

*Dow Chem. Corp. v. Blanco*,                                          23
        67 A.3d 392 (Del. 2013)

*Eagle Pipe & Supply, Inc. v. Amerada Hess Corp.*,                   18, 25
        79 So. 3d 246 (La. 2012)

*Fitzpatrick v. City of Atlanta*,                                     5
        2 F.3d 1112 (11th Cir. 1993)

*Gallick v. B O R.R.,*                                                20
        83 S.Ct. 659 (U.S. 1963)

*Griffin v. Kinberger*,                                               7
        507 So.2d 821 (La.1987)

*Harlan v. Roberts*,                                                  8
        565 So.2d 482 (La.App.2d Cir.1990)

*Hogg v. Chevron USA Inc.*,                                           10
        45 So.3d 991 (La. 2010)

*In Re Chinese Manufactured  Drywall Prod. Liab. Liti.,*             18, 20
        706 F. Supp. 2d 655 (E.D. La. 2010)

*In re Depuy Orthopedics*, *Inc*.,                                    18
        870 F.3d 345 (5th Cir. 2017)

*In re Libor-Based Fin. Instruments Antitrust Litig.*,               23
        No. 11 MDL 2262 NRB, 2015 WL 4634541 (S.D.N.Y.
        Aug. 4, 2015), *amended*, No. 11 MDL 2262 (NRB), 2015
        WL 13122396 (Oct. 19, 2015)

*Johnson v. CHL Enterprises*,                                        12
        115 F. Supp. 2d 723 (W.D. La. 2000)

*Jordan v. Employee Transfer Corp*.,                                 8
        509 So.2d 420 (La.1987)

*La Plaque Corp. v. Chevron United States A. Inc*.,                  8
        638 So.2d 354 (La. Ct. App. 1994)

*Lucas v. Commercial Union Insurance Company*,                       7
        198 So.2d 560 (La.App. 1st Cir.1967)

*Nida v. State Farm Fire & Casualty Company*,     13
   454 So.2d 328 (La.App. 3 Cir.1984)

*Portwood v. Ford Motor Co.*,     23
   701 N.E.2d 1102 (Ill.1998)

*Pursell v. Kelly*,     12
   244 La. 323, 152.So.2d 36 (1963)

*Quinn v. Louisiana Citizens Prop. Ins. Corp.*,     23
   118 So. 3d 1011 (La. 2012)

*Reed v. General Motors Corp.*,     7
   400 So.2d 919 (La.App. 1st Cir.1981)

*Richards v. Choice Hotels Int'l Inc.*     8, 9
   142 So.3d 249 (La.App. 5th Cir. 2014)

*Ross v. C. Adams Const. & Design, L.L.C.*,     13
   70 So.3d 949 (La. Ct. App. 2011)

*Shirey v. Campbell*,     16
   151 So.2d 557 (La. Ct. App. 1963)

*Simmons v. Board of Com'rs*,     18
   624 So.2d 935 (La.App. 2d Cir. 1993)

*Smith v. H.J. Landreneau Building Contractor, Inc.*,     10
   426 So.2d 1360 (La.App. 3 Cir. 1983)

*Standard Fire Ins. Co. v. Knowles*,     24
   568 U.S. 588 (2013)

*Stapleton v. Kawasaki Heavy Industries, Ltd.*,     15
   608 F.2d 571 (5th Cir.1979)

*Staub v. Eastman Kodak Co.*,     22
   726 A.2d 955 (N.J. Super. Ct. App. Div. 1999)

*Templeman Bros. Lumber Co., Inc., v. Fairbanks, Morse Co.*,     13
   129 La. 983, 57 So. 309 (La.1911)

*Tigg v. Pirelli Tire Corp.*,     22
   232 S.W.3d 28 (Tenn. 2007)

*Tolan v. Cotton*,                                                    5
    134 S. Ct. 1861 (2014)

*Trahan v. BP Am. Prod. Co.*,                                        15
    209 So. 3d 166 (La. Ct. App. 2016)

*Tuminello v. Mawby*,                                                14
    57 So. 2d 666 (La. 1952)

*Vaught v. Showa Denko K.K.,*                                        24
    107 F.3d 1137 (5th Cir. 1997)

*Watters v. Dep't of Soc. Servs.*,                                    8
    102 So.3d 118 (La. 2012)

*Wilkerson v. Dunham*,                                                8
    218 So.3d 743 (La. Ct. App. 2017)

*Winterrowd v. Travelers Indemnity Co.*,                          14, 15
    462 So.2d 639 (La.1985)

*Zumo v. R.T. Vanderbilt Co. Inc.*,                                   7
    527 So.2d 1074 (La. Ct. App. 1988)


**Louisiana Code**

La.C.C. Art. 596                                                     25
La.C.C. Art. 667                                                     18
La.C.C. Art. 2315                                                    18
La.C.C. Art. 2534                                                    10
La.C.C. Art. 2545                                                    10
La.C.C. Art. 2546                                                    10
La.C.C. Art. 3492                                                     7

**United States Code**

28 U.S.C. § 1367                                                     24

**Other**

Fed. R. Civ. P. 56(a)                                                5
5C Michie's Jurisprudence, Damages, § 32 (2006)                     20
Restatement (Second) of Torts § 929 (1979)                          20

Plaintiffs Jacques and Sarah Brousseau (herein "Plaintiffs" or "Plaintiff"), by and through the undersigned counsel of record, oppose the motion for summary judgment (Doc. 22432) filed by the Knauf Defendants.  As grounds, Plaintiffs offer the following:

## I.    STATEMENT OF MATERIAL FACTS

### A.  MDL-2047.

This litigation arises from alleged property damage and caused by the presence of Chinese drywall in homes and other buildings. Hurricanes Katrina and Rita devastated the Gulf Coast in 2005. These disasters, coinciding as they did with a boom in new housing construction, helped precipitate a shortage of drywall for the construction and reconstruction of homes in the United States. As a result, from approximately 2005 to 2008, Chinese drywall entered the United States market, changing hands in the chain of commerce, and ultimately finding its way into thousands of homes and buildings in the United States, primarily in Florida, Louisiana, Alabama, Mississippi, Texas, and Virginia.  Sometime after the installation of Chinese drywall in these properties, homeowners, residents, and occupants began to notice and complain of odd odors, corrosion of metal components, failure of electronics and appliances, and in some cases, physical ailments, such as nose bleeds, skin irritation, and respiratory problems. In response to these complaints, a number of governmental agencies and special interest groups, notably the federal Consumer Products Safety Commission and the Department of Housing and Urban Development, began to investigate, conduct testing, and issue remediation protocols related to Chinese drywall.

The present litigation commenced with the filing of lawsuits in 2009 in both federal and state courts by property owners and occupants damaged by the Chinese drywall installed in their residences and businesses, in addition to suits filed by some homebuilders who repaired these

properties. Defendants and declaratory judgment plaintiffs include homebuilders, developers, installers, retailers, realtors, brokers, suppliers, importers, exporters, and distributors, as well as their insurers and the insurers of homeowners, who were involved with the Chinese drywall in the affected properties. Because of the commonality of facts in the various federal lawsuits, the litigation was designated as Multi-District Litigation 2047 by the Judicial Panel on Multidistrict Litigation. On June 15, 2009, the Panel transferred all federal actions alleging damages from Chinese drywall to the U.S. District for the Eastern District of Louisiana for coordinated and consolidated proceedings.

Since the inception of MDL 2047, numerous cases were consolidated, containing thousands of claims; in addition, the Court issued numerous opinions, pretrial orders, and minute entries; the Court has facilitated mediations; and in the Court thousands of documents have been filed. Additionally, the Court has corresponded and coordinated with a number of state and federal court judges who also preside over related Chinese drywall cases.  The discovery revealed that the manufacturers of the drywall in question generally fell into two groups: the Knauf entities[1] and the Taishan entities[2]. After one of the Taishan entities was held in preliminary default, the Court conducted a bellwether evidentiary default hearing.  Shortly thereafter, the Court held its first bellwether, bench trial involving the Knauf entities. With regard to these bellwether proceedings, the Court issued detailed findings of fact and conclusions of law, concluding that the Chinese drywall at issue was in fact defective due to its release of

---

[1]  The term "Knauf entities" includes: Knauf Plasterboard (Tianjin) Co., Ltd. ("KPT"), Knauf Plasterboard (Wuhu) Co., Ltd., Guangdong Knauf New Building Material Products Co., Ltd., Knauf Gips KG, Gebr. Knauf Verwaltungsgesellschaft KG, Knauf International GmbH, Knauf Insulation GmbH ("KI"), Knauf UK GmbH, Knauf AMF GmbH & Co. KG, Knauf do Brasil Ltda. and PT Knauf Gypsum Indonesia.

[2]  The term "Taishan entities" includes: Taishan Gypsum Co. Ltd. and Taian Taishan Plasterboard Co. Ltd., among others.

corrosive gasses, requiring remediation of properties containing this drywall. The Court also issued a remediation protocol.

An initial settlement was reached in the Knauf portion of the litigation in October 2010, when the PSC and the Knauf entities entered into a Court-approved pilot program for remediation of homes containing drywall manufactured by Knauf. The pilot program led to a broader settlement agreement that extended the pilot program and provided remediation benefits to plaintiffs with filed claims.  On December 11, 2012, the final Knauf-related agreement, labeled, "Third Amended Settlement Agreement Regarding Claims Against the Knauf Defendants In MDL No. 2047" was filed with the Court.  A preliminary approval of the agreement was issued at the time, but no fairness hearing was immediately held and no certification of a proposed class was approved.  Instead, the Court later held a consolidated fairness hearing for the five interrelated settlements: L&W; Banner; INEX; Global; and Knauf. Ultimately, on February 7, 2013, the Court certified a settlement class that included the Knauf entities and notice was published.  The Knauf settlement class provided benefits to participants limited to remediation.  All other claims were omitted including those claims for personal property, negligence, strict liability, consumer protection acts, nuisance, unjust enrichment, or non-pecuniary claims were settled with the Knauf entities.

## B.  The *Bennett* Class Action.

The original *Bennett* Complaint was filed on November 13, 2014, in the United States District Court for the Northern District of Alabama and was subsequently transferred and consolidated into MDL 2047 via a conditional transfer order issued by the Judicial Panel on Multidistrict Litigation. The Complaint was amended multiple times, primarily to amend the parties.  The Fifth Amended Class Action Complaint was filed on March 6, 2018, and includes

the following claims: 1) negligence; 2) negligence per se; 3) strict liability; 4) breach of express and/or implied warranty; 5) Redhibition (by Louisiana plaintiffs); 6) Louisiana Products Liability Act (by Louisiana plaintiffs); 7) private nuisance; 8) negligent discharge of a corrosive substance; 9) unjust enrichment; 10) violation of the Louisiana Deceptive and Unfair Consumer Protection Law; 11) equitable injunctive relief and medical monitoring.  In the prayer for relief, Plaintiffs seek: certification of the class action; order appointing named plaintiffs as class representatives; compensatory, statutory, and/or punitive damages; pre- and post-judgment interest as allowed by law; injunctive relief; an award of attorney's fees as allowed by law; and award of taxable costs; and, any other relief a court deems just and proper.  On January 27, 2020, this Court issued an order denying class certification.

### C.  Plaintiffs Jacques and Sarah Brousseau in the *Bennett* Complaint.

Plaintiffs Jacques and Sarah Brousseau own a property in the State of Louisiana that contains drywall manufactured by the Knauf Defendants that is alleged to be defective. Plaintiffs' claim was filed in the *Bennett* complaint on November 21, 2016.  The street address of Plaintiffs' property at issue is: 437 Delgado Drive, Baton Rouge, LA 70808 ("Affected Property").  Plaintiffs assert all claims in the Fifth Amendment Complaint and seeks all relief available under current Louisiana law.

Plaintiffs purchased the Affected Property on July 27, 2012 (Cash Sale is attached as Exhibit A).  Plaintiff completed a Plaintiff Profile Form (Exhibit B) that verified the date that the Knauf drywall was discovered and the identity of the manufacturer confirmed shortly after an inspection performed by a prospective buyer on September 30, 2016.  Plaintiffs also completed a Supplemental Plaintiff Profile Form (Exhibit C) and a Plaintiff Fact Sheet (Exhibit D).  Plaintiff later engaged Healthy Home Solutions, LLC to conduct an inspection of the Affected Property.

4

A copy of the inspection summary letter is attached (Exhibit F).  The HHS letter confirms the date that the Affected Property was inspected in 2019 and the presence of defective Knauf-manufactured drywall in the home.

Plaintiffs Jacques and Sarah Brousseau were deposed by counsel for Knauf on June 10, 2019, in New Orleans, Louisiana, and affirmed the responses in the three discovery forms, including the date of discovery of the defective Knauf-manufactured drywall in the Affected Property.

## II. STANDARD OF REVIEW

Summary judgment is only warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In making the determination, "all justifiable inferences are to be drawn in [the non-movant's] favor." *Tolan v. Cotton*, 134 S. Ct. 1861, 1863 (2014) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). The movant may argue that "there is an absence of evidence to support the nonmoving party's case," *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986), but "it is never enough simply to state that the non-moving party cannot meet its burden at trial," *Clark v. Coats & Clark, Inc*., 929 F.2d 604, 608 (11th Cir. 1991). If the non-moving party provides more than a mere "scintilla of evidence" demonstrating that "the jury could reasonably find for the plaintiff," it will defeat the motion. *Anderson*, 477 U.S. at 252. This can be done by pointing out where the record "contains supporting evidence . . . which was 'overlooked or ignored' by the moving party." *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1116 (11th Cir. 1993) (citing *Celotex*, 477 U.S. at 332 (Brennan, J., dissenting)).

## III.   ARGUMENT

In order to prevail with a summary judgment motion, Defendants must demonstrate that there are no issues of material fact to be decided by a trier of fact in the transferor court. Defendants have stipulated to liability; therefore, the calculation of appropriate damages for this Plaintiff is all that remains unless Defendant presents some persuasive legal basis for dismissal. In this instance, they have not done so.

Plaintiff has provided ample information through pleadings and the discovery process for the Defendants to understand each claim asserted and the areas of damages being sought.  Most claims and damages have not been challenged by Defendants through this motion. (See Section I(B) *supra* for the claims and damages stated in the Fifth Amended Complaint).  For the purpose of this motion, the Court need only find the existence of a genuine issue of material fact to deny Defendants' motion.

The Court can look to its prior orders for one area of damages at issue – calculation of remediation damages.  Previously, this Court issued multiple orders during the consolidated pre-trial stage of the MDL proceedings instructing the parties that full remediation damages are appropriate for plaintiffs that establish defective Chinese-manufactured drywall in the living space of their home. (See, e.g., Doc. 20741).  The Court even adopted a formula to arrive at the remediation damages (square footage of a home multiplied by the appropriate R.S. Means cost per square foot).  Defendants have not stipulated to full remediation damages to date; instead, Defendants have engaged an expert to present testimony at trial regarding their calculation of less than full remediation damages utilizing another method; consequently, a genuine issue of material fact exists that will be decided by the trier of fact.

Plaintiff also provided responses to discovery requests directing Defendants to the Fifth Amended Class Action Complaint for the areas of damages that have neither been addressed nor challenged by Defendants to this point.  And, when taken in a light most favorable to the non-movant, in this case the Plaintiff, the unresolved areas of damages present genuine issues of material fact that must be decided by a trier of fact.

This lawsuit was filed because Defendant Knauf manufactured defective drywall found in Plaintiff's Affected Property (See attachments to Plaintiff Fact Sheet, Exhibit D).  The exhibits, including the cash sale, plaintiff profile form, supplemental plaintiff profile form, plaintiff fact sheet supporting documents demonstrate that, at a minimum, Plaintiffs' claims are sufficiently supported and several genuine issues of material fact exist that defeat Defendants' motion.

A.     **Plaintiff's product liability claims are timely filed.**

Louisiana law establishes a one year prescription period for filing claims related to defective Chinese drywall from the date of discovery.  In 1988, the Louisiana Court of Appeals issued an opinion clarifying the law applicable to defective product applicable in this case:

> "The prescriptive period applicable to product liability cases is one year from the date damages are sustained. La.Civ.Code art. 3492. Prescription does not commence until the plaintiff has actual or constructive notice of the tortious act, the resulting damage and the causal connection between the two. *Reed v. General Motors Corp.*, 400 So.2d 919 (La.App. 1st Cir.1981), writ denied, 406 So.2d 625 (1981). If it appears on the face of the pleadings that more than one year has elapsed between the occurrence of the tort and the filing of suit, the plaintiff has the burden of establishing an interruption or suspension of prescription. *See, Lucas v. Commercial Union Insurance Company*, 198 So.2d 560, 565 (La.App. 1st Cir.1967); Dixon v. Houck, 466 So.2d 57, 60 (La.App. 2d Cir.1985). However, in Louisiana prescriptive statutes are subject to the discovery rule embodied in the doctrine of *contra non valentem*, to the effect that prescription does not run during a period in which the cause of action was not known or reasonably knowable to the plaintiff. *Griffin v. Kinberger*, 507 So.2d 821 (La.1987)."

*Zumo v. R.T. Vanderbilt Co. Inc.*, 527 So.2d 1074, 1077 (La. Ct. App. 1988).

The concept of *contra non valentum* is short for "*contra non valentum agree nulla currit praescriptio,*" which is Latin for: a prescription does not run against one who is unable to act. *Contra non valentum* is a legal principle recognized in Louisiana that means the statute of limitations is not applicable, or a prescriptive period does not begin to run, against a plaintiff where: (1) some legal cause prevented a court or its officer from acting on a plaintiff's action; (2) some condition associated with the litigation process prevented the plaintiff from acting; (3) the defendant prevented the plaintiff from acting; or (4) the plaintiff is ignorant of the injury caused by the defendant, and his or her ignorance is not due to negligence, unreasonableness, or a willful act. *See, e.g., Richards v. Choice Hotels Int'l Inc.* 142 So.3d 249, 252 (La.App. 5th Cir. 2014). The rule of prescription is subject to the discovery rule of *contra non valentum* and suspends the running of prescription during the period in which the cause of action was not known by or reasonably knowable by the plaintiff. *Harlan v. Roberts*, 565 So.2d 482 (La.App.2d Cir.1990), writ denied, 567 So.2d 1126 (La.1990). The doctrine of *contra non valentum* was created as an exception to the general rules of prescription. *Watters v. Dep't of Soc. Servs.*, 102 So.3d 118, 131 (La. 2012).

In *Jordan v. Employee Transfer Corp.*, 509 So.2d 420 (La.1987), the Louisiana Supreme Court clarified its application of *contra non valentum* and held that prescription begins to run, not at the earliest possible indication that the plaintiff may have suffered some wrong, but rather **when the plaintiff has a reasonable basis to pursue a claim against a specific defendant**. *See La Plaque Corp. v. Chevron United States A. Inc.*, 638 So.2d 354, 356 (La. Ct. App. 1994) (emphasis added). The discovery rule, which is encompassed in the fourth category of *contra non valentum*, provides that "prescription does not begin to run until plaintiff knows sufficient

facts and has a reasonable basis for filing suit against a certain defendant." *Wilkerson v. Dunham*, 218 So.3d 743, 749 (La. Ct. App. 2017).

Here, Plaintiff filed a claim less than one year after discovering the presence of Knauf's defective drywall in Affected Property; therefore, the claim was timely filed. Defendants have urged the Court to grant summary judgment in this instance because, they allege, Plaintiff learned that the Affected Property contained Knauf's defective product much earlier than Plaintiff acknowledges, but that is clearly in conflict with Plaintiff's discovery responses and deposition testimony.  Plaintiff affirmed at deposition that discovery of the Knauf-manufactured drywall occurred within one year of filing a claim. (See Exhibit B, Page 2).  Plaintiff also executed a verified Plaintiff Profile Form and Supplemental Plaintiff Profile Form, under penalty of perjury, affirming the very same date of discovery.

*Contra non valentum* is an "equitable doctrine of Roman origin, with roots in both civil and common law," designed to avoid the harshness of applying prescription where the plaintiff has been prevented from timely filing suit. *Carter v. Haygood*, 892 So.2d 1261, 1268 (La. 2005). The application of *contra non valentum* does not require "extraordinary circumstances," and it is regularly applied by Louisiana courts. *Id*.  It should be applied in this situation as well, since Plaintiff filed a claim within one year of discovery of Defendants' product in Affected Property.

**B.      Product liability claims are subject to the discovery rule in Louisiana.**

Plaintiff's prescription period did not begin to run when the property was purchased in 2012.  Under Louisiana law, a cause of action accrues or begins to run for purposes of the prescription period if the plaintiff is ignorant of the injury caused by the defendant, and his or her ignorance is not due to negligence, unreasonableness, or a willful act.  *See, e.g., Richards v. Choice Hotels Int'l Inc*. 142 So.3d 249, 252 (La.App. 5th Cir. 2014).  Product liability claims are subject to an exception in which the accrual of the cause of action is delayed until the plaintiff

9

either knows or should know that the cause of action occurred as the application of *contra non valentem* holds. *Id.*.  Louisiana's discovery rule applies to defective Chinese-manufactured product liability claims, including actions in redhibition.

La.Civ.Code art. 2534 provides that a buyer's action in redhibition prescribes one year from the date of sale if the seller has no knowledge of the latent defects. La.Civ.Code arts. 2545 and 2546 are an exception to La.Civ.Code art. 2534. They provide that the buyer's action in redhibition prescribes one year from the date of discovery of the defects *if* the seller has knowledge of the latent defects but omits to declare it. Furthermore, the jurisprudence of Louisiana is well settled that the builder or the manufacturer is presumed to know the defects in the articles he constructs or manufactures. *Smith v. H.J. Landreneau Building Contractor, Inc.,* 426 So.2d 1360 (La.App. 3 Cir. 1983) and cases cited therein. Louisiana law provides for: (1) imputation of knowledge to a vendor; and (2) holding a vendor to be a manufacturer. The result insofar as a prescriptive period is concerned is the same. For example:

> [I]f knowledge of a defect is imputed to a vendor, the vendor will be considered a bad faith seller. Therefore, prescription begins to run one year from the date of the discovery of a defect. However, if the vendor is considered a manufacturer, a conclusive presumption applies that the manufacturer knew of the vices of the thing it made and prescription begins to run **one year from the date of the discovery of the defect**.

*Chastant v. SBS-Harolyn Park Venture*, 510 So. 2d 1341, 1343-44 (La. Ct. App. 1987) (emphasis added).

Two cases decided by the Louisiana Supreme Court in 2010 provide us with guidance in determining when a plaintiff should be deemed to have actual or constructive knowledge sufficient to commence prescription in a property damage case. In *Hogg v. Chevron USA Inc.*, the Louisiana Supreme Court reversed a trial court's denial of the defendants' motion for summary judgment based on prescription in a case brought by five plaintiffs who alleged that

their immovable property had been contaminated from three formerly leaking underground gasoline storage tanks at a Chevron service station operating on neighboring property. *Hogg v. Chevron USA Inc.*, 45 So.3d 991 (La. 2010). After the tanks were replaced in 1997, the plaintiffs received two letters from the Louisiana Department of Environmental Quality (LDEQ) informing them that environmental contamination had been detected near the Chevron station and that they may later be asked for permission for access to their property for testing purposes. In a second letter dated April 26, 2002, the LDEQ informed the plaintiffs that due to the results of air sampling at a stream near Burt's Chevron, some of which sampling was taken on their property, they should limit the time spent in that area. *Id*. *The* Louisiana Supreme Court ultimately held that the letters should have provided a reasonable person knowledge and held sufficient for summary judgement. On the merits, the Louisiana Supreme Court concluded that the information contained in the LDEQ letters "was sufficient to excite attention and put a reasonable person on guard to call for inquiry, which is the essence of constructive knowledge," and that "plaintiffs' inaction in light of such action was unreasonable." *Id.* at 1001. Ultimately, the *Hogg* court found that "[w]ith the receipt of the second letter from LDEQ in 2002, the plaintiffs acquired constructive knowledge of the damage to their immovable property sufficient to commence the running of prescription." *Id.*  In the instant case, Plaintiff received no letters from Defendants and had neither actual nor constructive knowledge of defective Chinese drywall in Affected Property.  It is a fact that Defendant Knauf issued no product recall and sent no warning letters to potentially-affected property owners in Louisiana.

The prescription period on a products liability claim begins to run only when the plaintiff knows or should have known of a causal connection between a distinct injury caused by the product in question during exposure.  In this instance, Defendants cannot demonstrate that

Plaintiff, who is a layman, should have known that the home contained defective drywall made by Defendant Knauf or that he was being exposed to off-gassing from drywall.

Louisiana courts have devised a reasonableness standard to determine whether a defect is apparent upon simple inspection, inquiring whether a reasonably prudent buyer acting under similar circumstances would have discovered the presence of the defect. *See Pursell v. Kelly,* 244 La. 323, 152.So.2d 36, 41 (1963); *Crow v. Laurie,* 729 S.2d 703, 707-08 (La.App. 1st Cir. 1999). "Whether an inspection is reasonable depends upon the facts of each case and includes such factors as the knowledge and expertise of the buyer, the opportunity for inspection, and the assurances made by the seller." *Johnson v. CHL Enterprises*, 115 F. Supp. 2d 723, 728 (W.D. La. 2000). Defendants have not presented any tangible evidence to rebut Plaintiff's discovery responses regarding the date of discovery of the defective Knauf product, either actually or constructively at an earlier identifiable date.

It is an unreasonable position that some unidentified smell or corrosion places a homeowner on notice that her home contains defective drywall. In Louisiana, like any southern state, there could be any number of environmental sources causing a smell. In addition, there could be environmental sources causing corrosion such as well water or a water supply with a high sulfur content. It is not an unreasonable explanation for a "smell" to be present in and around a Louisiana home caused by an environmental source outside the home. Defendants have failed to provide undisputed proof that a smell noted by Plaintiff intermittently during ownership was indeed generated by Knauf's defective drywall in the Affected Property.

It is an undisputed fact that Plaintiff has no expertise in construction, environmental contaminants, or defective Chinese drywall. It takes an inspection by an experienced drywall inspector to confirm the existence of defective Chinese-manufactured in a property. In addition,

not every homeowner is prepared to pay a fee between $500.00 and $2,000.00 for a thorough inspection of their home for the presence of defective drywall manufactured by Knauf. "Discovery" under Louisiana law occurs when the manufacturer's markings are found and confirmed by an experienced inspector or some other person with expertise, not at any point earlier. This would be the causal connection to the possible injury. Reliance on an argument that Plaintiff acted unreasonably to discover the drywall at an earlier date is a genuine difference regarding a material fact in which a trier of fact could find that Plaintiff acted reasonably. It is certainly possible for a trier of fact to find that Plaintiff's actions prior to discovery were reasonable; therefore, summary judgment must be denied.

### C.    It is settled Louisiana law that defective Chinese-manufactured drywall is a latent defect.

A latent defect is considered a defect that is hidden or concealed from knowledge, as well as from sight, and which a reasonable customary inspection would not reveal. *Nida v. State Farm Fire & Casualty Company*, 454 So.2d 328, 335 (La.App. 3 Cir.1984), writ denied, 458 So.2d 486 (La.1984). The Louisiana Court of Appeals, Fifth Circuit, has declared that defective Chinese-manufactured drywall is a latent defect, specifically finding:

> "We agree with [defendants] and find that the Chinese drywall that caused the damages sustained by the [plaintiffs] is a latent defect, which was hidden and unknown for [] years."

*Ross v. C. Adams Const. & Design, L.L.C*., 70 So.3d 949, 954 (La. Ct. App. 2011).

Louisiana courts also have allowed plaintiffs to recover against manufacturers where a plaintiff learns of a latent defect years later. For instance, in *Templeman Bros. Lumber Co., Inc., v. Fairbanks, Morse Co*., 129 La. 983, 57 So. 309, 315 (La.1911), the Louisiana Supreme Court overruled a plea of prescription of one year under Article 2534, and permitted a plaintiff, the

purchaser of an engine, to recover monetary damages and specifically had this to say with reference to knowledge of the defect in the vendor:

> "The [product] in the present case consisted in the inadequacy of the [specific defective item], and in the defective installation of the machine. Of both these defects the defendant must be held to have had full knowledge. The manufacturer of a machine is held to the knowledge of even latent defects and the inadequacy of the [specific defective item] must be held to have been patent to the defendant, though not to the plaintiff, since plaintiff was not supposed to have, and, in fact, had, no special knowledge of machinery. ***And the defendant must also be held to have known that the engine had been defectively installed. It was its duty to know it, and it had full opportunity to know it. It must, therefore, be presumed to have known it***."

*Tuminello v. Mawby*, 57 So. 2d 666, 668 (La. 1952) (emphasis added).

Given that Chinese drywall is a latent defect, knowledge regarding the defect is imputed to the Knauf Defendants, and the Knauf Defendants took no action. Defendants sent no letters to homeowners or issued a product recall to warn Louisiana homeowners about their defective drywall products; consequently, Plaintiff detrimentally relied on the absence of warnings and purchased the property. Defendants should be equitably estopped (See Section III(E), *infra*) from making any argument regarding constructive knowledge of defect or inadequacy of records in support of Plaintiff's damages claims. All inferences must be taken in a light most favorable to Plaintiffs and Defendants' motion is due to be denied.

### D. Knauf had a duty to warn Plaintiff regarding defective nature of its drywall after the sale but chose to remain silent.

Louisiana recognizes a manufacturer's post-sale duty to warn consumers of defective products. In 1985, the Louisiana Supreme Court decided a case that involved an injury occurring sixty-nine years after a defective product was manufactured and found in favor of a plaintiff where "a causal connection between the plaintiff's injuries and the manufacturer's failure to warn of a danger which it knew about since the time it built the [defective product]."

14

*Winterrowd v. Travelers Indemnity Co.*, 462 So.2d 639, 641 (La.1985).  The Louisiana Supreme Court found that the manufacturer of the defective product violated its duty to warn "of any danger inherent in the normal use of its product which is not within the knowledge of an ordinary user." *Id.* at 642. *Winterrowd* stands for the proposition that "[l]ong delays between the actions of a defendant and the litigation of claims based on such actions are commonplace." *Trahan v. BP Am. Prod. Co.*, 209 So. 3d 166, 174 (La. Ct. App. 2016).

The Defendants argue that Plaintiff was allegedly on notice of the presence of the defective product produced by Knauf; however, Defendants fail to specify what notice Plaintiffs received.  What are the exact warnings that Plaintiff should have received from Knauf?  And, what date did Knauf publish the warnings to consumers?  Defendant Knauf has failed to present anything specific that Plaintiff might have received.  Defendants could easily have sent warnings to potential recipients of its drywall – they're in possession of business records that could have been used to identify all downstream purchasers and ultimately the recipients of their product.  Defendant Knauf chose to take no such action to remedy the problem they created.  In Louisiana, defective Chinese drywall manufacturers have a duty to warn about certain risks even after a product is no longer in the manufacturer's possession and has been transferred or sold to the consumer or end-user.

If Defendant Knauf's position is that a warning was given to Plaintiff, they should produce that warning.  Without a specific warning to Plaintiffs by Defendant Knauf or some downstream distributor or agent, we are left without the ability to evaluate the terms of the warning for adequacy; therefore, this Court must view the omission in a light most favorable to Plaintiff and find a material fact exists to be decided by a trier of fact regarding notice.

This is consistent with longstanding Louisiana law, which provides that "[t]he adequacy of a particular warning is a question for the trier of fact, and should usually not be determined at summary judgment." *See Stapleton v. Kawasaki Heavy Industries, Ltd*., 608 F.2d 571, 573 (5th Cir.1979); *Bell v. Uniroyal Inc*., 696 So.2d 268, 270 (La. Ct. App. 4th Cir.1997).   Without any specific warning by Defendants, this court must view the omission of a warning to consumers in a light most favorable to Plaintiff.

      **E.**      **Equitable estoppel prevents Defendants from benefitting due to their choice to intentionally not warn consumers about their defective drywall.**

      The principles of equitable estoppel are applicable here to prevent the Knauf Defendants from taking unfair advantage of homeowners who may have only received limited or inaccurate information about the defective Knauf-manufactured drywall through some other source. Defendant Knauf possessed the most accurate information about their defective product and cannot rely on some other entity to meet their burden to consumers.

      In Louisiana, "equitable estoppel is the effect of the voluntary conduct of a person whereby he is barred and precluded, both at law and in equity, from asserting rights against another person relying on such conduct; and it arises where a person, by his acts, representations or admissions, or even by his silence when it is his duty to speak, intentionally or through culpable negligence, induces another to believe that certain facts exist and the other person rightfully relies and acts upon such belief and will be prejudiced if the former is permitted to deny the existence or the truth of such facts." *Shirey v. Campbell*, 151 So.2d 557, 559-60 (La. Ct. App. 1963).  Failure to speak when under some duty to speak is precisely what occurred here after Defendant Knauf learned that its drywall was defective in 2006.  Intent is an essential element of equitable estoppel. *Id*.  Thus, it is essential to equitable estoppel that the matters claimed to create it were intended to lead the other party to act thereon or that there were

reasonable grounds to anticipate that he would so act. *Id*.  Defendant Knauf's intention to minimize its legal exposure by failing to issue a product recall or specific warning to potentially-affected homeowners is evident.

Equitable estoppel colors all legal defenses and all assertions regarding Plaintiffs damages or documentation offered by Plaintiffs in support of damages being sought.  Defendants are equitably estopped from arguing Plaintiff's supporting evidence is deficient in any way because Plaintiffs detrimentally relied on the lack of warning when purchasing Affected Property after Defendant Knauf knew that their defective drywall might lead to "thousands" of claims for its drywall, yet remained silent. (See Exhibit E – an email between Knauf corporate officers C. Wang, M. Norris, and Jawahar re "USA smelly board," the "situation in Miami is out of control," and "it will be a big problem not only in Miami but all over the USA Market, maybe cover thousand[s] of houses.").  Defendant Knauf has failed to provide proof that a warning was issued at any time to any consumer; thus, a trier of fact will ultimately decide the impact of Defendant Knauf's concealment of their product's defect when evaluating damages at trial.

F. **Plaintiff's Loss of Use & Enjoyment Claim is Appropriate Under Louisiana Law.**

Plaintiff has asserted a claim for loss of use and enjoyment of the property due to the presence of defective Chinese drywall manufactured by Knauf Defendants.  The Knauf Defendants have acknowledged that their product is defective and stipulated to liability.  In Exhibit C, the Supplemental Plaintiff Profile Form, Plaintiff asserted a right to loss of use and enjoyment damages and assigned a value believed to be reasonable and appropriate based on past verdicts in the Chinese drywall litigation (See Page 6 of SPPF).  Loss of use and enjoyment is non-pecuniary damages that are to be assessed by the trier of fact.

Plaintiff is entitled to recover damages under Louisiana law for loss of use and enjoyment of a residential property. For instance, in 1995, the Louisiana Court of Appeals found that loss of use and enjoyment was appropriate for property owners who do not reside on their property that adjoins a sewer treatment plant. *See Arnold v. Town of Ball*, 651 So. 2d 313, 320-21 (La. Ct. App. 1995). The court found that Louisiana law does not limit Plaintiffs' recovery to property damages alone and does not preclude them from recovering damages for the loss of use of enjoyment of their property, mental anguish, irritation, anxiety, discomfort, and embarrassment under Article 667 or Article 2315. *Id*.; citing *Simmons v. Board of Com'rs,* 624 So.2d 935, 956 (La.App. 2d Cir. 1993).

Loss of use and enjoyment damages is also extended beyond the ability to actually live in the property. It has been recognized by the Louisiana Supreme Court that loss of use and enjoyment extends to plaintiffs when ownership in a property has been disturbed, including the "use, enjoyment or disposal of the property." *Eagle Pipe & Supply, Inc. v. Amerada Hess Corp.*, 79 So. 3d 246, 292 (La. 2012). Louisiana law provides that when property is damaged through the actions of another, the owner of the property (obligee) obtains a personal right to demand that the tortfeasor (obligor) repair the damage to the property. La.Civ.Code art. 2315 ("Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it."). This personal right of the property owner arises because his real rights in the ownership of the property have been disturbed-his use, enjoyment or disposal of the property. *Id*.

This Court has also previously addressed loss of use and enjoyment, stating, "[t]he Taishan property owners will still have an opportunity at later phases to seek damages for alternative living expenses and loss of use and enjoyment of their properties. Those issues can be addressed and resolved later when the Court remands the cases in this MDL." *In Re Chinese*

*Manufactured Drywall Prod. Liab. Liti.,* 706 F. Supp. 2d 655, 693 (E.D. La. 2010); *See In re Depuy Orthopedics*, *Inc*., 870 F.3d 345 (5th Cir. 2017). This Court does not intend to assume the transferor courts' duties after pre-trial matters are completed. *Id.*

Defendants have argued that loss of use and enjoyment is appropriate only if a plaintiff is unable to live in the home. That simply does not square with Louisiana law. Plaintiff is not required to prove that he was unable to live in the property in order to recover for loss of use an enjoyment under Louisiana law. The parties differ in their valuation, but it is ultimately the trier of fact that will decide the appropriate loss of use and enjoyment damages.

G.   **Plaintiff's consequential damages, including personal property damages and diminution in property value are to be resolved by a trier of fact under Louisiana Law.**

Plaintiff has asserted a claim for damaged personal property that is alleged to be caused by off-gassing from the defective Chinese drywall manufactured by Knauf Defendants. As previously noted, the Defendants have stipulated to liability in this case. In Exhibit D (See Plaintiff's itemization in Exhibit 14 to the PFS), the Plaintiff Fact Sheet, Plaintiff provided the value of personal property lost during ownership of the Affected Property and assigned a value believed to be reasonable and appropriate based on a variety of sources such as receipts, invoices, internet research or memory. Plaintiff's justification for the damaged personal property was offered as testimony at deposition.

With regard to the diminution in value of the property, Plaintiff has asserted a claim and will rely on fact witnesses at trial to quantify the value. Plaintiff is not a property appraiser or realtor. A claim for the diminution in value was present in the Complaint and a trier of fact will be charged with evaluating testimony from Plaintiff's fact witnesses at trial related to this component of damages.

In addition to the testimony and documentary evidence offered thus far, Plaintiff will offer expert testimony at trial regarding the effect of drywall off-gassing on components of the home and personal property susceptible to corrosion.  Defendants will no doubt assign a different value to personal property damage, but Plaintiff's testimony and documentary support are sufficient to be considered by the trier of fact.  And, again, where Plaintiff cannot produce documentary support for damaged personal property prior to discovery of the defective drywall, Knauf is equitably estopped from taking advantage of Plaintiffs who detrimentally relied on Defendants' intentional concealment of their product defects.

This Court considered consequential damages such as lost rental income and personal property damage and found that damages are not limited to the diminution in value of the property and may include damages for loss in use and other consequential injuries.  *In Re Chinese Manufactured  Drywall Prod. Liab. Liti.,* 706 F. Supp. 2d 655, 692 (E.D. La. 2010). This Court's ruling was consistent with the Restatement of Torts regarding compensation for consequential damages.  See Restatement (Second) of Torts § 929 (1979) (providing that damages for injury to real property include compensation for loss of use of the property and other consequential injuries in addition to any permanent property damage, whether measured by restoration or market value);  5C Michie's Jurisprudence, Damages, § 32 (2006) (rule encompasses recovery of expenses incidental to irreparable injury); *accord Bailey v. Missouri P.R. Co.,* 383 So. 2d 397, 402, 1980 La. App. LEXIS 3636 at *15 (1980) (tortfeasor must compensate his victim "for even the most improbable severe consequences of his wrongful act."), citing, *Gallick v. B O R.R.,* 83 S.Ct. 659 (U.S. 1963).  The very same standard must be applied to all Plaintiffs in this Bennett action who detrimentally relied on an omission of post-sale warning by Defendants.  Plaintiff's personal property, diminution in value, and damages

20

related to other asserted claims are a consequential effect of the off-gassing from the defective drywall; therefore, a jury could find in favor of Plaintiff for those damages being sought.  All consequential damages are recoverable under settled Louisiana law; thus, a genuine issue of material fact exists for a trier of fact to evaluate.

**H.      Defendants have provided this Court with no basis for summary judgment under the Louisiana Product Liability Act (LPLA).**

Defendants assert that Plaintiff's claims are prescribed or otherwise barred by the LPLA. The issue of prescription was addressed in Sections A & B, *supra*.  Defendants' specific presentation regarding the LPLA is essentially an assertion that the law was passed to provide the courts with a methodology for determining a variety of prescription periods.  In addition, Defendants also contend that the LPLA does not allow for the recovery of attorney's fees as a separate component of damages, except where claims in redhibition are allowed.  This is immaterial at this point in the proceedings (i.e., summary judgment). Limitation of attorney's fees is not a basis for summary judgment – it is an issue that should be addressed at a pretrial conference when proposing jury instructions or in post-verdict proceedings.  Defendants have provided no basis upon which this Court can find that Defendants are entitled to summary judgment based on the LPLA.

**I.      All Louisiana plaintiffs' now filed claims filed in *Bennett* are protected by the equitable tolling principles decided by the U.S. Supreme Court in *American Pipe* if Knauf's defective drywall was discovered on or after November 13, 2013.**

On November 13, 2014, the *Bennett* class action was filed in the United States District Court for the Northern District of Alabama.  It was filed as a class action with the class definition including all property owners in the United States of America that have claims against the Knauf Defendants for their defective Chinese-manufactured product.  On January 27, 2020, this Court denied class certification on Defendant's motion. (Rec. Doc. 22528).  This was the first instance

that certification of a nationwide class was denied by a court; thus, cross-jurisdictional equitable tolling of the prescription period should afford all Plaintiffs protection during the pendency of the class action.

### i.     Federal Causes of Action Employ Cross-Jurisdictional Tolling.

In federal court, "the commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action." *Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345, 353-54 (1983). *Crown, Cork* built upon *American Pipe & Const. Co. v. Utah*, 414 U.S. 538 (1974), where the Supreme Court held that there were no longer any "conceptual or practical obstacles in the path of holding that the filing of a timely class action complaint commences the action for all members of the class as subsequently determined" because, under Rule 23, a class action is "a truly representative suit designed to avoid, rather than encourage, unnecessary filing of repetitious papers and motions." *American Pipe*, 414 U.S. at 550.

Tolling on this basis does not conflict with "the functional operation of a statute of limitations" because the filing of the class action supplies defendants with "the essential information necessary to determine both the subject matter and size of the prospective litigation," thereby fulfilling the rationale behind limitations periods. *Id*. at 554, 555. *American Pipe* tolling thus seeks to further the "efficiency and economy of litigation" purposes of the class action device by avoiding the "needless multiplicity of actions." *Crown, Cork*, 462 U.S. at 349, 351.

### ii.     Few States Have Addressed Cross-Jurisdictional Tolling, But the Trend Favors Adoption of Tolling.

A majority of states have adopted a class action tolling rule that largely follows *American Pipe* and *Crown, Cork*. *See Tigg v. Pirelli Tire Corp.,* 232 S.W.3d 28, 33 (Tenn. 2007) (surveying

cases); *Staub v. Eastman Kodak Co.*, 726 A.2d 955, 963 (N.J. Super. Ct. App. Div. 1999) (same). Few states, however, have addressed the issue of cross-jurisdictional tolling for class actions. As a general matter, "cases rejecting cross-jurisdictional tolling (particularly those that were decided early in the development of this doctrine) tend to emphasize a risk that a state will attract individual out-of-state plaintiffs after a failed federal class action." *In re Libor-Based Fin. Instruments Antitrust Litig.*, No. 11 MDL 2262 NRB, 2015 WL 4634541, at *128 (S.D.N.Y. Aug. 4, 2015), *amended*, No. 11 MDL 2262 (NRB), 2015 WL 13122396 (Oct. 19, 2015) (*citing, e.g., Portwood v. Ford Motor Co.,* 701 N.E.2d 1102, 1104 (Ill.1998), *cert. denied,* 525 U.S. 1148 (1999). On the other hand, "cases adopting cross-jurisdictional tolling point out that rejecting cross-jurisdictional tolling creates a risk that individual plaintiffs will file duplicative 'placeholder'" suits to preserve their rights while a class action is pending elsewhere. *Id.* (*citing, e.g., Dow Chem. Corp. v. Blanco*, 67 A.3d 392, 395 (Del. 2013)); *see also Quinn v. Louisiana Citizens Prop. Ins. Corp.*, 2012-0152 (La. 11/2/12), 118 So. 3d 1011, 1021-22 (outlining same rationales).

After conducting its own survey, the *Libor* court concluded that the states are evenly divided on cross-jurisdictional tolling, that "[c]ross-jurisdictional tolling may even be the majority rule among state courts that have decided the question, and [that] the trend is in favor of tolling." *Libor*, 2015 WL 4634541, at *129. It added that, in states where intra-jurisdictional tolling is accepted, "the best prediction is that a state would recognize cross-jurisdictional tolling." *Id*. After all, it reasoned, the same considerations and same notice obtain regardless of the place where the case is filed, while the "parties' parades of docket-control horribles are unpersuasive," given "[m]ost states have a general 'borrowing rule' that prevents an out-of-state plaintiff from filing if his suit would be barred in his home state" and that "[p]ersonal jurisdiction

may also bar many claims filed by non-resident plaintiffs against non-resident defendants." *Id*.

### iii.     The Class Action Fairness Act Establishes a Nationwide Policy Favoring the Filing and Maintenance of Class Action Lawsuits in Federal Court.

It is well-settled that CAFA was enacted to facilitate the adjudication of multi-state class actions in federal court. *Dart Cherokee Basin Operating Co. v. Owens,* 135 S.Ct. 547, 554 (2014); *Standard Fire Ins. Co. v. Knowles,* 568 U.S. 588, 595 (2013) ("CAFA's primary objective" is to "ensure 'Federal court consideration of interstate cases of national importance'") (*quoting* §2(b)(2), 119 Stat. 5); S. REP. NO. 109-14, at 43 (2005) (CAFA's "provisions should be read broadly, with a strong preference that interstate class actions should be heard in a federal court"). The scant caselaw on cross-jurisdictional tolling seems to have predated or largely ignored the import and effect of CAFA. As a practical matter, state law diversity cases that would have previously been filed and litigated in state court are now all being filed and litigated in federal court. And if it is indeed federal policy that such state law class actions be filed and adjudicated in federal court as matters of "national importance," why would the federal policy underlying *American Pipe* and *Crown, Cork* not similarly apply?[3]

Thus, equitable tolling should be extended to Plaintiff and protect the claim from a prescription defense because both the discovery of this injury and the filing of a claim occurred during the pendency of *Bennett* before class certification was denied. In 2013, the Louisiana Supreme Court ruled:

> "[W]hen a plaintiff invokes *American Pipe* [tolling] in support of a separate lawsuit, the district court should take care to ensure that the suit raises claims that

---

[3] *See, e.g., Vaught v. Showa Denko K.K.,* 107 F.3d 1137, 1147 (5th Cir. 1997) (pre-CAFA) ("the Texas non-tolling rule (stated in *Bell v. Showa Denko K.K.*, 899 S.W.2d 749 (Tex. App. 1995)) could arguably be displaced because it conflicts with the well-established federal tolling practice promulgated in *American Pipe* and *Crown, Cork & Seal*"). *See also, e.g.,* 28 U.S.C. § 1367(d) (tolling limitations periods for state law claims originally joined in federal court).

"concern the same evidence, memories, and witnesses as the subject matter of the original class suit," so that "the defendant will not be prejudiced." ... Claims as to which the defendant was not fairly placed on notice by the class suit are not protected under *American Pipe* and are barred by the statute of limitations. *Id.,* 464 U.S. at 354-55, 103 S.Ct. 2392 (Powell, J., concurring). Louisiana law honors this important *caveat* in La. C.C.P. art 596, setting forth that suspension applies only with respect to claims "arising out of the transactions or occurrences described" in the class petition. La. C.C.P. art. 596(A)."

*David v. La. Citizens Prop. Ins. Corp.*, 118 So. 3d 1011, 1017 n.4 (La. 2013).

Plaintiff joined in the *Bennett* class action and the claim was filed into the Complaint before denial of class certification was ordered by this Court; thus, the requisites for invoking *American Pipe* have been satisfied and Plaintiff's claims contained in the Fifth Amended Complaint are protected and equitably tolled under Louisiana law.

**J.    Plaintiff's claims are not precluded by the subsequent purchaser doctrine because Seller subrogated Buyer all latent defects through Cash Sale.**

Defendants have urged this Court to grant summary judgment based on the subsequent purchaser doctrine. Defendants rely upon *Eagle Pipe*, decided by the Louisiana Supreme Court in 2011, specifically citing the following section:

The subsequent purchaser rule is a jurisdictional rule which holds that an owner of property has no right or actual interest in recovering from a third party for damage which was inflicted on the property before his purchase, ***in the absence of an assignment or subrogation of the rights*** belonging to the owner of the property when the damage was inflicted.

*Eagle Pipe & Supply, Inc. v. Amerada Hess Corp.*, 79 So.3d 246, 256-275 (La. 2011) (emphasis added).

Defendants' argument fails based on the plain language of the Cash Sale for this property. (See Exhibit A, Page 1). Seller of Affected Property expressly subrogated to Buyer (Plaintiff) all rights related to latent defects.  Louisiana recognizes defective Chinese drywall as a latent defect.  *Ross v. C. Adams Const. & Design, L.L.C.*, 70 So.3d 949, 954 (La. Ct. App. 2011).

The Cash Sale states "Seller expressly subrogates Buyer to all rights, claims and causes of action Seller may have arising from or relating to any hidden or latent defects in the Property." Consequently, Plaintiffs' claim meets the requirements of Louisiana law to file a claim and pursue a recovery against the Knauf Defendants under either Redhibition or the LPLA and summary judgment is due to be denied for this reason.

**K.      Defendant Knauf failed to establish Plaintiff assumed the risk that the home contained defective Knauf-manufactured drywall at time of purchase.**

Defendants have urged this Court to grant summary judgment because Plaintiff "assumed the risk" of Chinese drywall in Affected Property when it was purchased.  Plaintiff has executed verified discovery documents under penalty of perjury that the date of discovery of the defective Knauf-manufactured drywall occurred years after ownership was transferred to Plaintiff. Defendants' thin argument appears to be that Plaintiff was somehow on notice that the home they were purchasing contains their defective product, even though there was no disclosure by the seller and no post-sale warning or recall issued by the Knauf Defendants, as required by Louisiana law.  With Defendant Knauf providing no tangible evidence that a notice/warning to prospective buyers, Defendant Knauf is equitably estopped from arguing notice to Plaintiff. (See Section E, *supra*).

Defendants suggest that purchase included a risk that Chinese drywall specifically manufactured by Knauf was contemplated and appreciated by Plaintiffs at the time of the sale. This assertion is without any basis whatsoever.  Assumption of a risk requires disclosure of the potential risk and an appreciation by the buyer when the agreement was struck.  The Louisiana Supreme Court has held that "[t]he defense of assumption of risk presupposes (1) that the plaintiff had some knowledge of the danger; (2) that he understood and appreciated the risk therefrom, and (3) that he voluntarily exposed himself to such risk." *Dorry v. Lafleur*, 399 So.2d

559 (La.1981). "Therefore, except where he expressly so agrees, a plaintiff does not assume a risk of harm arising from the defendant's conduct unless he then knows of the existence of the risk and appreciates its unreasonable character, including the magnitude thereof, and voluntarily accepts the risk." *Id*.

Defendants presented no evidence in support of an assumption of risk defense. Seller made no disclosure to Plaintiff regarding the presence of defective Chinese-manufactured drywall in Affected Property prior to sale; therefore, Defendants have failed to meet their burden for demonstrating assumption of risk according to Louisiana law. Without an express assumption of a known risk, Defendants Knauf's motion in this regard must be denied.

**IV.   CONCLUSION**

This lawsuit was filed because Defendant Knauf manufactured defective drywall found in Plaintiff's property. The Knauf Defendants have stipulated that their drywall product is indeed defective. Although counsel for Defendant Knauf has crafted an argument for summary judgment, the facts and law in this instance simply do not support their legal position or their motion.

Plaintiff has provided ample information through pleadings and the discovery process for the Defendants to understand each claim asserted and the areas of damages being sought. Most claims and damages have not been challenged by Defendants through this motion. (See Section I(B) *supra* for the claims and damages stated in the Fifth Amended Complaint). Plaintiff has provided information to Defendants through responses to discovery requests directing Defendants to the Fifth Amended Class Action Complaint for the areas of damages that have neither been addressed nor challenged by Defendants to this point. And, when taken in a light

most favorable to the non-movant, the unresolved areas of damages present genuine issues of material fact

The exhibits, including the Cash Sale, Plaintiff Profile Form, Supplemental Plaintiff Profile Form, Plaintiff Fact Sheet and inspection summary letter attached to this Opposition demonstrate that, at a minimum, Plaintiff's claims are actionable and multiple issues of material fact exist to defeat Defendants' summary judgment challenge.

For the foregoing reasons, Defendants' Motion for Summary Judgment should be denied.

/s/ *James V. Doyle, Jr.*

James V. Doyle, Jr.
DOYLE LAW FIRM, PC
2100 Southbridge Pkwy., Suite 650
Birmingham, AL 35209
Tele: 205-533-9500
Fax: 844-638-5812
jimmy@doylefirm.com

*Attorney for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing Plaintiffs Jacques & Sarah Brousseau's Opposition to Defendant Knauf's Motion for Summary Judgment has been served on Plaintiffs' Liaison Counsel, Russ Herman, and Defendants' Liaison Counsel, Kerry Miller, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047, on this 9th day of February, 2020.

/s/ *James V. Doyle, Jr.*

James V. Doyle, Jr.
DOYLE LAW FIRM, PC