UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL NO. 2047<br><br>SECTION: L |
| THIS DOCUMENT RELATES TO:<br><br>*Elizabeth Bennett, et al. v. Gebrueder Knauf Verwaltungsgesellschaft, KG, et al.*<br>2:14-cv-02722-EEF-JCW | JUDGE ELDON FALLON<br><br>MAG. JUDGE WILKINSON |

## PLAINTIFFS RONALD & MARIA NATAL'S OPPOSITION

## TO DEFENDANT KNAUF'S MOTION FOR SUMMARY JUDGMENT

# Table of Contents

**Page**

I.   STATEMENT OF MATERIAL FACTS……………………………..………   1

    A.   MDL-2047……………………………………………………..……   1

    B.   The *Bennett* Class Action ……………………...………………………...   3

    C.   Plaintiffs Ronald and Maria Natal in the *Bennett* Complaint …………..   4

II.   STANDARD OF REVIEW……………………………………………….…   5

III.   ARGUMENT……………………………………………………………   6

    A.   All Louisiana plaintiffs now filed claims filed in *Bennett* are
protected by the equitable tolling principles decided by the U.S.
Supreme Court in American Pipe if Knauf's defective drywall was
discovered on or after November 13, 2013 ……………………….…   7

        *i.*   *Federal Causes of Action Employ Cross-Jurisdictional
Tolling* ………………………………………………………   7

        *ii.*   *Few States Have Addressed Cross-Jurisdictional Tolling,
But the Trend Favors Adoption of Tolling* …………………   8

        *iii.*   *The Class Action Fairness Act Establishes a Nationwide
Policy Favoring the Filing and Maintenance of Class
Action Lawsuits in Federal Court* ……………………………   9

    B.   It is settled Louisiana law that defective Chinese-manufactured
drywall is a latent defect …………………………………………..   11

    C.   Knauf had a duty to warn Plaintiffs regarding defective nature of its
drywall after the sale but chose to remain silent ……………………..   12

    D.   Equitable estoppel prevents Defendants from benefitting due to
their choice to intentionally not warn consumers about their
defective drywall …………………………………………………   14

    E.   Plaintiffs' Loss of Use & Enjoyment Claim is Appropriate Under
Louisiana Law ……………………………………………………   15

F.    Plaintiffs' consequential damages, including personal property damages and diminution in property value are to be resolved by a trier of fact under Louisiana Law …………………………………..          17

G.    Defendants have provided this Court with no basis for summary judgment under the Louisiana Product Liability Act (LPLA) …….          19

H.     Plaintiffs' claims are not precluded by the subsequent purchaser doctrine……………………………………………………………          19

I.     Failure to strictly follow PTO 1 is potentially a question of          20
spoliation to be addressed at trial by the transferor court, not a
summary judgment motion …………………………………………

IV.   CONCLUSION……………………………………………………………..          23

Table of Authorities

**<u>Cases</u>**                                                                                    **<u>Page</u>**

*American Pipe & Const. Co. v. Utah*,                                                8
    414 U.S. 538 (1974)

*Anderson v. Liberty Lobby, Inc.*,                                                   5
    477 U.S. 242 (1986)

*Arnold v. Town of Ball*,                                                            15
    651 So. 2d 313 (La. Ct. App. 1995)

*Bailey v. Missouri P.R. Co.*,                                                       18
    383 So. 2d 397, 1980 La. App. LEXIS 3636 (1980)

*Bell v. Showa Denko K.K.*,                                                          10
    899 S.W.2d 749 (Tex. App. 1995)

*Bell v. Uniroyal Inc.*,                                                             13
    696 So.2d 268 (La. Ct. App. 4th Cir.1997)

*Celotex Corp. v. Catrett*,                                                          5
    477 U.S. 317 (1986)

*Clark v. Coats & Clark, Inc.*,                                                      5
    929 F.2d 604 (11th Cir. 1991)

*Crown, Cork & Seal Co. v. Parker*,                                                  8
    462 U.S. 345 (1983)

*Dart Cherokee Basin Operating Co. v. Owens*,                                        9
    135 S.Ct. 547 (2014)

*David v. La. Citizens Prop. Ins. Corp.*,                                            10
    118 So. 3d 1011 (La. 2013)

*Dow Chem. Corp. v. Blanco*,                                                         9
    67 A.3d 392 (Del. 2013)

*Eagle Pipe & Supply, Inc. v. Amerada Hess Corp.*,                                   16, 20
    79 So. 3d 246 (La. 2012)

*Fitzpatrick v. City of Atlanta*,                                                    5
    2 F.3d 1112 (11th Cir. 1993)

*Gallick v. B O R.R.,*     18
    83 S.Ct. 659 (U.S. 1963)

*Guillory v. Pellerin,*     22
    2009WL690543

*In Re Chinese Manufactured  Drywall Prod. Liab. Liti.,*     16, 18
    706 F. Supp. 2d 655 (E.D. La. 2010)

*In re Depuy Orthopedics, Inc.,*     16
    870 F.3d 345 (5th Cir. 2017)

*In re Libor-Based Fin. Instruments Antitrust Litig.,*     8, 9
    No. 11 MDL 2262 NRB, 2015 WL 4634541 (S.D.N.Y.
    Aug. 4, 2015), *amended*, No. 11 MDL 2262 (NRB), 2015
    WL 13122396 (Oct. 19, 2015)

*Nida v. State Farm Fire & Casualty Company,*     11
    454 So.2d 328 (La.App. 3 Cir.1984)

*Pham v. Contico Intern. Inc.,*     22
    99-945, p. 4 (La.App. 5 Cir. 3/22/00), 759 So.2d 880

*Phipps v. Blakeney,*     23
    8 F.3d 788, 790 (11th Cir. 1993)

*Portwood v. Ford Motor Co.,*     9
    701 N.E.2d 1102 (Ill.1998)

*Quinn v. Louisiana Citizens Prop. Ins. Corp.,*     8
    118 So. 3d 1011 (La. 2012)

*Randolph v. General Motors Corp.,*     22
    93-1983 (La.App. 1st Cir.11/10/94)

*Ross v. C. Adams Const. & Design, L.L.C.,*     11
    70 So.3d 949 (La. Ct. App. 2011)

*Shirey v. Campbell,*     14
    151 So.2d 557 (La. Ct. App. 1963)

*Simmons v. Board of Com'rs,*     16
    624 So.2d 935 (La.App. 2d Cir. 1993)

*Smith v. Jitney Jungle of Am.,*     22
    35,100, p. 11 (La.App. 2 Cir. 12/5/01)

*Standard Fire Ins. Co. v. Knowles,*
    568 U.S. 588 (2013)    9

*Stapleton v. Kawasaki Heavy Industries, Ltd.*,
    608 F.2d 571 (5th Cir.1979)    13

*Staub v. Eastman Kodak Co.*,
    726 A.2d 955 (N.J. Super. Ct. App. Div. 1999)    8

*Templeman Bros. Lumber Co., Inc., v. Fairbanks, Morse Co.*,
    129 La. 983, 57 So. 309 (La.1911)    11

*Tigg v. Pirelli Tire Corp.,*
    232 S.W.3d 28 (Tenn. 2007)    8

*Tolan v. Cotton*,
    134 S. Ct. 1861 (2014)    5

*Trahan v. BP Am. Prod. Co.*,
    209 So. 3d 166 (La. Ct. App. 2016)    12

*Tuminello v. Mawby*,
    57 So. 2d 666 (La. 1952)    11

*Vaught v. Showa Denko K.K.,*
    107 F.3d 1137 (5th Cir. 1997)    10

*Wilhite v. Thompson*,
    42,395 (La.App.2d Cir.8/15/07), 962 So.2d 493    22

*Winterrowd v. Travelers Indemnity Co.*,
    462 So.2d 639 (La.1985)    12

*Yelton v. PHI, Inc.*,
    284 F.R.D. 374 (E.D.La. 2012)    23

**Louisiana Code**

La.C.C. Art. 667    16
La.C.C. Art. 2315    16

**United States Code**

28 U.S.C. § 1367    10

**<u>Other</u>**

Fed. R. Civ. P. 56(a)                                             5

5C Michie's Jurisprudence, Damages, § 32 (2006)                 18

Restatement (Second) of Torts § 929 (1979)                      18

Plaintiffs Ronald and Maria Natal (herein "Plaintiffs" or "Plaintiff"), by and through the undersigned counsel of record, oppose the motion for summary judgment (Doc. 22373) filed by the Knauf Defendants.  As grounds, Plaintiffs offer the following:

## I.   STATEMENT OF MATERIAL FACTS

### A.  MDL-2047.

This litigation arises from alleged property damage and caused by the presence of Chinese drywall in homes and other buildings. Hurricanes Katrina and Rita devastated the Gulf Coast in 2005. These disasters, coinciding as they did with a boom in new housing construction, helped precipitate a shortage of drywall for the construction and reconstruction of homes in the United States. As a result, from approximately 2005 to 2008, Chinese drywall entered the United States market, changing hands in the chain of commerce, and ultimately finding its way into thousands of homes and buildings in the United States, primarily in Florida, Louisiana, Alabama, Mississippi, Texas, and Virginia.  Sometime after the installation of Chinese drywall in these properties, homeowners, residents, and occupants began to notice and complain of odd odors, corrosion of metal components, failure of electronics and appliances, and in some cases, physical ailments, such as nose bleeds, skin irritation, and respiratory problems. In response to these complaints, a number of governmental agencies and special interest groups, notably the federal Consumer Products Safety Commission and the Department of Housing and Urban Development, began to investigate, conduct testing, and issue remediation protocols related to Chinese drywall.

The present litigation commenced with the filing of lawsuits in 2009 in both federal and state courts by property owners and occupants damaged by the Chinese drywall installed in their residences and businesses, in addition to suits filed by some homebuilders who repaired these

properties. Defendants and declaratory judgment plaintiffs include homebuilders, developers, installers, retailers, realtors, brokers, suppliers, importers, exporters, and distributors, as well as their insurers and the insurers of homeowners, who were involved with the Chinese drywall in the affected properties. Because of the commonality of facts in the various federal lawsuits, the litigation was designated as Multi-District Litigation 2047 by the Judicial Panel on Multidistrict Litigation. On June 15, 2009, the Panel transferred all federal actions alleging damages from Chinese drywall to the U.S. District for the Eastern District of Louisiana for coordinated and consolidated proceedings.

Since the inception of MDL 2047, numerous cases were consolidated, containing thousands of claims; in addition, the Court issued numerous opinions, pretrial orders, and minute entries; the Court has facilitated mediations; and in the Court thousands of documents have been filed. Additionally, the Court has corresponded and coordinated with a number of state and federal court judges who also preside over related Chinese drywall cases.  The discovery revealed that the manufacturers of the drywall in question generally fell into two groups: the Knauf entities[1] and the Taishan entities[2]. After one of the Taishan entities was held in preliminary default, the Court conducted a bellwether evidentiary default hearing.  Shortly thereafter, the Court held its first bellwether, bench trial involving the Knauf entities. With regard to these bellwether proceedings, the Court issued detailed findings of fact and conclusions of law, concluding that the Chinese drywall at issue was in fact defective due to its release of

---

[1]  The term "Knauf entities" includes: Knauf Plasterboard (Tianjin) Co., Ltd. ("KPT"), Knauf Plasterboard (Wuhu) Co., Ltd., Guangdong Knauf New Building Material Products Co., Ltd., Knauf Gips KG, Gebr. Knauf Verwaltungsgesellschaft KG, Knauf International GmbH, Knauf Insulation GmbH ("KI"), Knauf UK GmbH, Knauf AMF GmbH & Co. KG, Knauf do Brasil Ltda. and PT Knauf Gypsum Indonesia.

[2]  The term "Taishan entities" includes: Taishan Gypsum Co. Ltd. and Taian Taishan Plasterboard Co. Ltd., among others.

corrosive gasses, requiring remediation of properties containing this drywall. The Court also issued a remediation protocol.

An initial settlement was reached in the Knauf portion of the litigation in October 2010, when the PSC and the Knauf entities entered into a Court-approved pilot program for remediation of homes containing drywall manufactured by Knauf. The pilot program led to a broader settlement agreement that extended the pilot program and provided remediation benefits to plaintiffs with filed claims.  On December 11, 2012, the final Knauf-related agreement, labeled, "Third Amended Settlement Agreement Regarding Claims Against the Knauf Defendants In MDL No. 2047" was filed with the Court.  A preliminary approval of the agreement was issued at the time, but no fairness hearing was immediately held and no certification of a proposed class was approved.  Instead, the Court later held a consolidated fairness hearing for the five interrelated settlements: L&W; Banner; INEX; Global; and Knauf. Ultimately, on February 7, 2013, the Court certified a settlement class that included the Knauf entities and notice was published.  The Knauf settlement class provided benefits to participants limited to remediation.  All other claims were omitted including those claims for personal property, negligence, strict liability, consumer protection acts, nuisance, unjust enrichment, or non-pecuniary claims were settled with the Knauf entities.

### B.  The *Bennett* Class Action.

The original *Bennett* Complaint was filed on November 13, 2014, in the United States District Court for the Northern District of Alabama and was subsequently transferred and consolidated into MDL 2047 via a conditional transfer order issued by the Judicial Panel on Multidistrict Litigation. The Complaint was amended multiple times, primarily to amend the parties.  The Fifth Amended Class Action Complaint was filed on March 6, 2018, and includes

the following claims: 1) negligence; 2) negligence per se; 3) strict liability; 4) breach of express

and/or implied warranty; 5) Redhibition (by Louisiana plaintiffs); 6) Louisiana Products Liability

Act (by Louisiana plaintiffs); 7) private nuisance; 8) negligent discharge of a corrosive

substance; 9) unjust enrichment; 10) violation of the Louisiana Deceptive and Unfair Consumer

Protection Law; 11) equitable injunctive relief and medical monitoring.  In the prayer for relief,

Plaintiffs seek: certification of the class action; order appointing named plaintiffs as class

representatives; compensatory, statutory, and/or punitive damages; pre- and post-judgment

interest as allowed by law; injunctive relief; an award of attorney's fees as allowed by law; and

award of taxable costs; and, any other relief a court deems just and proper.  On January 27, 2020,

this Court issued an order denying class certification.

### C.  Plaintiffs Ronald and Maria Natal in the *Bennett* Complaint.

Plaintiffs Ronald and Maria Natal own a property in the State of Louisiana that contains

drywall manufactured by the Knauf Defendants that is alleged to be defective.  Plaintiffs' claim

was filed in the *Bennett* complaint on August 31, 2018.  The street address of Plaintiffs' property

at issue is: 1489 Lakeshore Boulevard, Slidell, LA 70461 ("Affected Property").  Plaintiffs assert

all claims in the Fifth Amendment Complaint and seeks all relief available under current

Louisiana law.

Plaintiffs purchased the Affected Property on November 21, 2006 (Cash Sale is attached

as Exhibit A).  Plaintiff completed a Plaintiff Profile Form (Exhibit B) that verified the date that

the Knauf drywall was discovered and the identity of the manufacturer confirmed on October 27,

2015.  Plaintiffs confirmed the Knauf-manufactured defective drywall utilizing Driskill

Environmental Consultants, LLC (Exhibit B, Page 2). Plaintiffs also completed a Supplemental

Plaintiff Profile Form (Exhibit C) and a Plaintiff Fact Sheet (Exhibit D).  Plaintiff later engaged

Healthy Home Solutions, LLC to confirm the total living space of the home and to confirm that the defective drywall removed during partial self-remediation was produced by the Defendants. A copy of the inspection summary letter is attached (Exhibit F).  The HHS letter confirms the date that the Affected Property was inspected in 2019 and the presence of defective Knauf-manufactured drywall removed from the home.

Plaintiffs Ronald and Maria Natal were deposed by counsel for Knauf on June 4, 2019, in New Orleans, Louisiana, and affirmed the responses in the three discovery forms, including the date of discovery of the defective Knauf-manufactured drywall in the Affected Property.

## II. STANDARD OF REVIEW

Summary judgment is only warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In making the determination, "all justifiable inferences are to be drawn in [the non-movant's] favor." *Tolan v. Cotton*, 134 S. Ct. 1861, 1863 (2014) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). The movant may argue that "there is an absence of evidence to support the nonmoving party's case," *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986), but "it is never enough simply to state that the non-moving party cannot meet its burden at trial," *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). If the non-moving party provides more than a mere "scintilla of evidence" demonstrating that "the jury could reasonably find for the plaintiff," it will defeat the motion. *Anderson*, 477 U.S. at 252. This can be done by pointing out where the record "contains supporting evidence . . . which was 'overlooked or ignored' by the moving party." *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1116 (11th Cir. 1993) (citing *Celotex*, 477 U.S. at 332 (Brennan, J., dissenting)).

### III.   ARGUMENT

In order to prevail with a summary judgment motion, Defendants must demonstrate that there are no issues of material fact to be decided by a trier of fact in the transferor court. Defendants have stipulated to liability; therefore, the calculation of appropriate damages for this Plaintiff is all that remains unless Defendant presents some persuasive legal basis for dismissal. In this instance, they have not done so.

Plaintiff has provided ample information through pleadings and the discovery process for the Defendants to understand each claim asserted and the areas of damages being sought.  Most claims and damages have not been challenged by Defendants through this motion. (See Section I(B) *supra* for the claims and damages stated in the Fifth Amended Complaint).  For the purpose of this motion, the Court need only find the existence of a genuine issue of material fact to deny Defendants' motion.

The Court can look to its prior orders for one area of damages at issue – calculation of remediation damages.  Previously, this Court issued multiple orders during the consolidated pre-trial stage of the MDL proceedings instructing the parties that full remediation damages are appropriate for plaintiffs that establish defective Chinese-manufactured drywall in the living space of their home. (See, e.g., Doc. 20741).  The Court even adopted a formula to arrive at the remediation damages (square footage of a home multiplied by the appropriate R.S. Means cost per square foot).  Defendants have not stipulated to full remediation damages to date; instead, Defendants have engaged an expert to present testimony at trial regarding their calculation of less than full remediation damages utilizing another method; consequently, a genuine issue of material fact exists that will be decided by the trier of fact.

Plaintiff also provided responses to discovery requests directing Defendants to the Fifth Amended Class Action Complaint for the areas of damages that have neither been addressed nor challenged by Defendants to this point.  And, when taken in a light most favorable to the non-movant, in this case the Plaintiff, the unresolved areas of damages present genuine issues of material fact that must be decided by a trier of fact.

This lawsuit was filed because Defendant Knauf manufactured defective drywall found in Plaintiff's Affected Property (See attachments to Plaintiff Fact Sheet, Exhibit D).  The exhibits, including the cash sale, plaintiff profile form, supplemental plaintiff profile form, plaintiff fact sheet supporting documents demonstrate that, at a minimum, Plaintiffs' claims are sufficiently supported and several genuine issues of material fact exist that defeat Defendants' motion.

**A.** **All Louisiana plaintiffs now filed claims filed in *Bennett* are protected by the equitable tolling principles decided by the U.S. Supreme Court in *American Pipe* if Knauf's defective drywall was discovered on or after November 13, 2013.**

On November 13, 2014, the *Bennett* class action was filed in the United States District Court for the Northern District of Alabama.  It was filed as a class action with the class definition including all property owners in the United States of America that have claims against the Knauf Defendants for their defective Chinese-manufactured product.  On January 27, 2020, this Court denied class certification on Defendant's motion. (Rec. Doc. 22528).  This was the first instance that certification of a nationwide class was denied by a court; thus, cross-jurisdictional equitable tolling of the prescription period should afford all Plaintiffs protection during the pendency of the class action.  No prescription period runs during the pendency of a pending class.

**i.** ***Federal causes of action employ cross-jurisdictional tolling.***

In federal court, "the commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been

permitted to continue as a class action." *Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345, 353-54 (1983). *Crown, Cork* built upon *American Pipe & Const. Co. v. Utah*, 414 U.S. 538 (1974), where the Supreme Court held that there were no longer any "conceptual or practical obstacles in the path of holding that the filing of a timely class action complaint commences the action for all members of the class as subsequently determined" because, under Rule 23, a class action is "a truly representative suit designed to avoid, rather than encourage, unnecessary filing of repetitious papers and motions." *American Pipe*, 414 U.S. at 550.

Tolling on this basis does not conflict with "the functional operation of a statute of limitations" because the filing of the class action supplies defendants with "the essential information necessary to determine both the subject matter and size of the prospective litigation," thereby fulfilling the rationale behind limitations periods. *Id*. at 554, 555. *American Pipe* tolling thus seeks to further the "efficiency and economy of litigation" purposes of the class action device by avoiding the "needless multiplicity of actions." *Crown, Cork*, 462 U.S. at 349, 351.

### ii. Few states have addressed cross-jurisdictional tolling, but the trend favors adoption of tolling.

A majority of states have adopted a class action tolling rule that largely follows *American Pipe* and *Crown, Cork*. *See Tigg v. Pirelli Tire Corp.,* 232 S.W.3d 28, 33 (Tenn. 2007) (surveying cases); *Staub v. Eastman Kodak Co.*, 726 A.2d 955, 963 (N.J. Super. Ct. App. Div. 1999) (same). Few states, however, have addressed the issue of cross-jurisdictional tolling for class actions. As a general matter, "cases rejecting cross-jurisdictional tolling (particularly those that were decided early in the development of this doctrine) tend to emphasize a risk that a state will attract individual out-of-state plaintiffs after a failed federal class action." *In re Libor-Based Fin. Instruments Antitrust Litig.*, No. 11 MDL 2262 NRB, 2015 WL 4634541, at *128 (S.D.N.Y.

Aug. 4, 2015), *amended*, No. 11 MDL 2262 (NRB), 2015 WL 13122396 (Oct. 19, 2015) (*citing*, *e.g., Portwood v. Ford Motor Co.,* 701 N.E.2d 1102, 1104 (Ill.1998), *cert. denied,* 525 U.S. 1148 (1999). On the other hand, "cases adopting cross-jurisdictional tolling point out that rejecting cross-jurisdictional tolling creates a risk that individual plaintiffs will file duplicative 'placeholder'" suits to preserve their rights while a class action is pending elsewhere. *Id*. (*citing*, *e.g., Dow Chem. Corp. v. Blanco*, 67 A.3d 392, 395 (Del. 2013)); *see also Quinn v. Louisiana Citizens Prop. Ins. Corp.*, 2012-0152 (La. 11/2/12), 118 So. 3d 1011, 1021-22 (outlining same rationales).

After conducting its own survey, the *Libor* court concluded that the states are evenly divided on cross-jurisdictional tolling, that "[c]ross-jurisdictional tolling may even be the majority rule among state courts that have decided the question, and [that] the trend is in favor of tolling." *Libor*, 2015 WL 4634541, at *129. It added that, in states where intra-jurisdictional tolling is accepted, "the best prediction is that a state would recognize cross-jurisdictional tolling." *Id*. After all, it reasoned, the same considerations and same notice obtain regardless of the place where the case is filed, while the "parties' parades of docket-control horribles are unpersuasive," given "[m]ost states have a general 'borrowing rule' that prevents an out-of-state plaintiff from filing if his suit would be barred in his home state" and that "[p]ersonal jurisdiction may also bar many claims filed by non-resident plaintiffs against non-resident defendants." *Id*.

### iii. The Class Action Fairness Act establishes a nationwide policy favoring the filing and maintenance of class action lawsuits in federal court.

It is well-settled that CAFA was enacted to facilitate the adjudication of multi-state class actions in federal court. *Dart Cherokee Basin Operating Co. v. Owens,* 135 S.Ct. 547, 554 (2014); *Standard Fire Ins. Co. v. Knowles,* 568 U.S. 588, 595 (2013) ("CAFA's primary

objective" is to "ensure 'Federal court consideration of interstate cases of national importance'") (*quoting* §2(b)(2), 119 Stat. 5); S. REP. NO. 109-14, at 43 (2005) (CAFA's "provisions should be read broadly, with a strong preference that interstate class actions should be heard in a federal court"). The scant caselaw on cross-jurisdictional tolling seems to have predated or largely ignored the import and effect of CAFA. As a practical matter, state law diversity cases that would have previously been filed and litigated in state court are now all being filed and litigated in federal court. And if it is indeed federal policy that such state law class actions be filed and adjudicated in federal court as matters of "national importance," why would the federal policy underlying *American Pipe* and *Crown, Cork* not similarly apply?[3]

Thus, equitable tolling should be extended to Plaintiff and protect the claim from a prescription defense because both the discovery of this injury and the filing of a claim occurred during the pendency of *Bennett* before class certification was denied. In 2013, the Louisiana Supreme Court ruled:

> "[W]hen a plaintiff invokes *American Pipe* [tolling] in support of a separate lawsuit, the district court should take care to ensure that the suit raises claims that "concern the same evidence, memories, and witnesses as the subject matter of the original class suit," so that "the defendant will not be prejudiced." ... Claims as to which the defendant was not fairly placed on notice by the class suit are not protected under *American Pipe* and are barred by the statute of limitations. *Id.,* 464 U.S. at 354-55, 103 S.Ct. 2392 (Powell, J., concurring). Louisiana law honors this important *caveat* in La. C.C.P. art 596, setting forth that suspension applies only with respect to claims "arising out of the transactions or occurrences described" in the class petition. La. C.C.P. art. 596(A)."

*David v. La. Citizens Prop. Ins. Corp.*, 118 So. 3d 1011, 1017 n.4 (La. 2013).

---

[3] *See, e.g., Vaught v. Showa Denko K.K.,* 107 F.3d 1137, 1147 (5th Cir. 1997) (pre-CAFA) ("the Texas non-tolling rule (stated in *Bell v. Showa Denko K.K.*, 899 S.W.2d 749 (Tex. App. 1995)) could arguably be displaced because it conflicts with the well-established federal tolling practice promulgated in *American Pipe* and *Crown, Cork & Seal*"). *See also, e.g.,* 28 U.S.C. § 1367(d) (tolling limitations periods for state law claims originally joined in federal court).

Plaintiff joined in the *Bennett* class action and the claim was filed into the Complaint before denial of class certification was ordered by this Court; thus, the requisites for invoking *American Pipe* have been satisfied and Plaintiff's claims contained in the Fifth Amended Complaint are protected and equitably tolled under Louisiana law.

**B.      It is settled Louisiana law that defective Chinese-manufactured drywall is a latent defect.**

A latent defect is considered a defect that is hidden or concealed from knowledge, as well as from sight, and which a reasonable customary inspection would not reveal. *Nida v. State Farm Fire & Casualty Company*, 454 So.2d 328, 335 (La.App. 3 Cir.1984), writ denied, 458 So.2d 486 (La.1984). The Louisiana Court of Appeals, Fifth Circuit, has declared that defective Chinese-manufactured drywall is a latent defect, specifically finding:

> "We agree with [defendants] and find that the Chinese drywall that caused the damages sustained by the [plaintiffs] is a latent defect, which was hidden and unknown for [] years."

*Ross v. C. Adams Const. & Design, L.L.C.*, 70 So.3d 949, 954 (La. Ct. App. 2011).

Louisiana courts also have allowed plaintiffs to recover against manufacturers where a plaintiff learns of a latent defect years later. For instance, in *Templeman Bros. Lumber Co., Inc., v. Fairbanks, Morse Co.*, 129 La. 983, 57 So. 309, 315 (La.1911), the Louisiana Supreme Court overruled a plea of prescription of one year under Article 2534, and permitted a plaintiff, the purchaser of an engine, to recover monetary damages and specifically had this to say with reference to knowledge of the defect in the vendor:

> "The [product] in the present case consisted in the inadequacy of the [specific defective item], and in the defective installation of the machine. Of both of these defects the defendant must be held to have had full knowledge. The manufacturer of a machine is held to the knowledge of even latent defects and the inadequacy of the [specific defective item] must be held to have been patent to the defendant, though not to the plaintiff, since plaintiff was not supposed to have, and, in fact, had, no special knowledge of machinery. ***And the defendant must also***

> ***be held to have known that the engine had been defectively installed. It was its duty to know it, and it had full opportunity to know it. It must, therefore, be presumed to have known it***."

*Tuminello v. Mawby*, 57 So. 2d 666, 668 (La. 1952) (emphasis added).

Given that Chinese drywall is a latent defect, knowledge regarding the defect is imputed to the Knauf Defendants, and the Knauf Defendants took no action.  Defendants sent no letters to homeowners or issued a product recall to warn Louisiana homeowners about their defective drywall products; consequently, Plaintiff detrimentally relied on the absence of warnings and purchased the property from the builder.  Defendants should be equitably estopped (See Section III(D), *infra*) from making any argument regarding constructive knowledge of defect or inadequacy of records in support of Plaintiff's damages claims.  All inferences must be taken in a light most favorable to Plaintiffs and Defendants' motion is due to be denied.

### C.    Knauf had a duty to warn Plaintiffs regarding defective nature of its drywall after the sale but chose to remain silent.

Louisiana recognizes a manufacturer's post-sale duty to warn consumers of defective products. In 1985, the Louisiana Supreme Court decided a case that involved an injury occurring sixty-nine years after a defective product was manufactured and found in favor of a plaintiff where "a causal connection between the plaintiff's injuries and the manufacturer's failure to warn of a danger which it knew about since the time it built the [defective product]." *Winterrowd v. Travelers Indemnity Co.*, 462 So.2d 639, 641 (La.1985).  The Louisiana Supreme Court found that the manufacturer of the defective product violated its duty to warn "of any danger inherent in the normal use of its product which is not within the knowledge of an ordinary user." *Id.* at 642. *Winterrowd* stands for the proposition that "[l]ong delays between the actions of a defendant and the litigation of claims based on such actions are commonplace." *Trahan v. BP Am. Prod. Co.*, 209 So. 3d 166, 174 (La. Ct. App. 2016).

The Defendants argue that Plaintiff was allegedly on notice of the presence of the defective product produced by Knauf; however, Defendants fail to specify what notice Plaintiffs received.  What are the exact warnings that Plaintiff should have received from Knauf?  And, what date did Knauf publish the warnings to consumers?  Defendant Knauf has failed to present anything specific that Plaintiff might have received.  Defendants could easily have sent warnings to potential recipients of its drywall – they're in possession of business records that could have been used to identify all downstream purchasers and ultimately the recipients of their product.  Defendant Knauf chose to take no such action to remedy the problem they created.  In Louisiana, defective Chinese drywall manufacturers have a duty to warn about certain risks even after a product is no longer in the manufacturer's possession and has been transferred or sold to the consumer or end-user.

If Defendant Knauf's position is that a warning was given to Plaintiff, they should produce that warning.  Without a specific warning to Plaintiffs by Defendant Knauf or some downstream distributor or agent, we are left without the ability to evaluate the terms of the warning for adequacy; therefore, this Court must view the omission in a light most favorable to Plaintiff and find a material fact exists to be decided by a trier of fact regarding notice. This is consistent with longstanding Louisiana law, which provides that "[t]he adequacy of a particular warning is a question for the trier of fact, and should usually not be determined at summary judgment." *See Stapleton v. Kawasaki Heavy Industries, Ltd.*, 608 F.2d 571, 573 (5th Cir.1979); *Bell v. Uniroyal Inc.*, 696 So.2d 268, 270 (La. Ct. App. 4th Cir.1997).  Without any specific warning by Defendants, this court must view the omission of a warning to consumers in a light most favorable to Plaintiff.

**D.     Equitable estoppel prevents Defendants from benefitting due to their choice to intentionally not warn consumers about their defective drywall.**

The principles of equitable estoppel are applicable here to prevent the Knauf Defendants from taking unfair advantage of homeowners who may have only received limited or inaccurate information about the defective Knauf-manufactured drywall through some other source. Defendant Knauf possessed the most accurate information about their defective product and cannot rely on some other entity to meet their burden to consumers.

In Louisiana, "equitable estoppel is the effect of the voluntary conduct of a person whereby he is barred and precluded, both at law and in equity, from asserting rights against another person relying on such conduct; and it arises where a person, by his acts, representations or admissions, or even by his silence when it is his duty to speak, intentionally or through culpable negligence, induces another to believe that certain facts exist and the other person rightfully relies and acts upon such belief and will be prejudiced if the former is permitted to deny the existence or the truth of such facts." *Shirey v. Campbell*, 151 So.2d 557, 559-60 (La. Ct. App. 1963). Failure to speak when under some duty to speak is precisely what occurred here after Defendant Knauf learned that its drywall was defective in 2006. Intent is an essential element of equitable estoppel. *Id*. Thus, it is essential to equitable estoppel that the matters claimed to create it were intended to lead the other party to act thereon or that there were reasonable grounds to anticipate that he would so act. *Id*. Defendant Knauf's intention to minimize its legal exposure by failing to issue a product recall or specific warning to potentially-affected homeowners is evident.

Equitable estoppel colors all legal defenses and all assertions regarding Plaintiffs damages or documentation offered by Plaintiffs in support of damages being sought. Defendants are equitably estopped from arguing Plaintiff's supporting evidence is deficient in any way

because Plaintiffs detrimentally relied on the lack of warning when purchasing Affected Property after Defendant Knauf knew that their defective drywall might lead to "thousands" of claims for its drywall, yet remained silent. (See Exhibit E – an email between Knauf corporate officers C. Wang, M. Norris, and Jawahar re "USA smelly board," the "situation in Miami is out of control," and "it will be a big problem not only in Miami but all over the USA Market, maybe cover thousand[s] of houses.").  Defendant Knauf has failed to provide proof that a warning was issued at any time to any consumer; thus, a trier of fact will ultimately decide the impact of Defendant Knauf's concealment of their product's defect when evaluating damages at trial.

**E.    Plaintiffs' Loss of Use & Enjoyment Claim is Appropriate Under Louisiana Law.**

Plaintiff has asserted a claim for loss of use and enjoyment of the property due to the presence of defective Chinese drywall manufactured by Knauf Defendants.  The Knauf Defendants have acknowledged that their product is defective and stipulated to liability.  In Exhibit C, the Supplemental Plaintiff Profile Form, Plaintiff asserted a right to loss of use and enjoyment damages and assigned a value believed to be reasonable and appropriate based on past verdicts in the Chinese drywall litigation (See Page 6 of SPPF).  Loss of use and enjoyment is non-pecuniary damages that are to be assessed by the trier of fact.

Plaintiff is entitled to recover damages under Louisiana law for loss of use and enjoyment of a residential property. For instance, in 1995, the Louisiana Court of Appeals found that loss of use and enjoyment was appropriate for property owners who do not reside on their property that adjoins a sewer treatment plant. *See Arnold v. Town of Ball*, 651 So. 2d 313, 320-21 (La. Ct. App. 1995).  The court found that Louisiana law does not limit Plaintiffs' recovery to property damages alone and does not preclude them from recovering damages for the loss of use of enjoyment of their property, mental anguish, irritation, anxiety, discomfort, and

embarrassment under Article 667 or Article 2315. *Id*.; citing *Simmons v. Board of Com'rs,* 624 So.2d 935, 956 (La.App. 2d Cir. 1993).

Loss of use and enjoyment damages is also extended beyond the ability to actually live in the property.  It has been recognized by the Louisiana Supreme Court that loss of use and enjoyment extends to plaintiffs when ownership in a property has been disturbed, including the "use, enjoyment or disposal of the property." *Eagle Pipe & Supply, Inc. v. Amerada Hess Corp.*, 79 So. 3d 246, 292 (La. 2012). Louisiana law provides that when property is damaged through the actions of another, the owner of the property (obligee) obtains a personal right to demand that the tortfeasor (obligor) repair the damage to the property. La.Civ.Code art. 2315 ("Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it."). This personal right of the property owner arises because his real rights in the ownership of the property have been disturbed-his use, enjoyment or disposal of the property. *Id*.

This Court has also previously addressed loss of use and enjoyment, stating, "[t]he Taishan property owners will still have an opportunity at later phases to seek damages for alternative living expenses and loss of use and enjoyment of their properties. Those issues can be addressed and resolved later when the Court remands the cases in this MDL."  *In Re Chinese Manufactured  Drywall Prod. Liab. Liti.,* 706 F. Supp. 2d 655, 693 (E.D. La. 2010); *See In re Depuy Orthopedics*, *Inc*., 870 F.3d 345 (5th Cir. 2017). This Court does not intend to assume the transferor courts' duties after pre-trial matters are completed. *Id*.

Defendants have argued that loss of use and enjoyment is appropriate only if a plaintiff is unable to live in the home. That simply does not square with Louisiana law.  Plaintiff is not required to prove that he was unable to live in the property in order to recover for loss of use an

enjoyment under Louisiana law.  The parties differ in their valuation, but it is ultimately the trier of fact that will decide the appropriate loss of use and enjoyment damages.

    **F.**    **Plaintiffs' consequential damages, including personal property damages and diminution in property value are to be resolved by a trier of fact under Louisiana Law.**

        Plaintiff has asserted a claim for damaged personal property that is alleged to be caused by off-gassing from the defective Chinese drywall manufactured by Knauf Defendants.  As previously noted, the Defendants have stipulated to liability in this case.  In Exhibit D (See Plaintiff's itemization in Exhibit 14 to the PFS), the Plaintiff Fact Sheet, Plaintiff provided the value of personal property lost during ownership of the Affected Property and assigned a value believed to be reasonable and appropriate based on a variety of sources such as receipts, invoices, internet research or memory.  Plaintiff's justification for the damaged personal property was offered as testimony at deposition.

        With regard to the diminution in value of the property, Plaintiff has asserted a claim and will rely on fact witnesses at trial to quantify the value.  Plaintiff is not a property appraiser or realtor.  A claim for the diminution in value was present in the Complaint and a trier of fact will be charged with evaluating testimony from Plaintiff's fact witnesses at trial related to this component of damages.

        In addition to the testimony and documentary evidence offered thus far, Plaintiff will offer expert testimony at trial regarding the effect of drywall off-gassing on components of the home and personal property susceptible to corrosion.  Defendants will no doubt assign a different value to personal property damage, but Plaintiff's testimony and documentary support are sufficient to be considered by the trier of fact.  And, again, where Plaintiff cannot produce documentary support for damaged personal property prior to discovery of the defective drywall,

Knauf is equitably estopped from taking advantage of Plaintiffs who detrimentally relied on Defendants' intentional concealment of their product defects.

This Court considered consequential damages such as lost rental income and personal property damage and found that damages are not limited to the diminution in value of the property and may include damages for loss in use and other consequential injuries. *In Re Chinese Manufactured  Drywall Prod. Liab. Liti.,* 706 F. Supp. 2d 655, 692 (E.D. La. 2010). This Court's ruling was consistent with the Restatement of Torts regarding compensation for consequential damages.  See Restatement (Second) of Torts § 929 (1979) (providing that damages for injury to real property include compensation for loss of use of the property and other consequential injuries in addition to any permanent property damage, whether measured by restoration or market value);  5C Michie's Jurisprudence, Damages, § 32 (2006) (rule encompasses recovery of expenses incidental to irreparable injury); *accord Bailey v. Missouri P.R. Co.,* 383 So. 2d 397, 402, 1980 La. App. LEXIS 3636 at *15 (1980) (tortfeasor must compensate his victim "for even the most improbable severe consequences of his wrongful act."), citing, *Gallick v. B O R.R.,* 83 S.Ct. 659 (U.S. 1963).  The very same standard must be applied to all Plaintiffs in this Bennett action who detrimentally relied on an omission of post-sale warning by Defendants.  Plaintiff's personal property, diminution in value, and damages related to other asserted claims are a consequential effect of the off-gassing from the defective drywall; therefore, a jury could find in favor of Plaintiff for those damages being sought.  All consequential damages are recoverable under settled Louisiana law; thus, a genuine issue of material fact exists for a trier of fact to evaluate.

**G.     Defendants have provided this Court with no basis for summary judgment under the Louisiana Product Liability Act (LPLA).**

Defendants assert that Plaintiff's claims are prescribed or otherwise barred by the LPLA. The issue of prescription was addressed in Sections A, *supra*.  Plaintiffs' claims were protected and the prescription period was equitably tolled because Bennett was a pending nationwide class action until class certification was denied on January 27, 2020.  Plaintiffs discovered the defect in their home in 2015, after Bennett was filed, and filed their claim in Bennett in 2018, while Bennett was pending as a class action.  Therefore, the one year prescription period did not expire.

Defendants' specific presentation regarding the LPLA is essentially an assertion that the law was passed to provide the courts with a methodology for determining a variety of prescription periods.  In addition, Defendants also contend that the LPLA does not allow for the recovery of attorney's fees as a separate component of damages, except where claims in redhibition are allowed.  This is immaterial at this point in the proceedings (i.e., summary judgment). Limitation of attorney's fees is not a basis for summary judgment – it is an issue that should be addressed at a pretrial conference when proposing jury instructions or in post-verdict proceedings. Defendants have provided no basis upon which this Court can find that Defendants are entitled to summary judgment based on the LPLA.

**H.   Plaintiffs' claims are not precluded by the subsequent purchaser doctrine.**

Defendants have urged this Court to grant summary judgment based on the subsequent purchaser doctrine. Defendants rely upon *Eagle Pipe*, decided by the Louisiana Supreme Court in 2011, specifically citing the following section:

> The subsequent purchaser rule is a jurisdictional rule which holds that an owner of property has no right or actual interest in recovering from a third party for damage which was inflicted on the property before his purchase, ***in the absence***

*of an assignment or subrogation of the rights* belonging to the owner of the property when the damage was inflicted.

*Eagle Pipe & Supply, Inc. v. Amerada Hess Corp.*, 79 So.3d 246, 256-275 (La. 2011) (emphasis added).

Defendants' argument fails based on the plain language of the Cash Sale for this property. (See Exhibit A). The seller assigned and subrogated all rights to buyer.  In addition, Plaintiffs purchased this property directly from the builder, Destiny Custom Homes, LLC; therefore, Plaintiffs are not subsequent purchasers; consequently, Plaintiffs meets the requirements of Louisiana law to file a claim and pursue a recovery against the Knauf Defendants under either Redhibition or the LPLA and summary judgment is due to be denied for this reason.

## I.     Failure to strictly follow PTO 1 is potentially a question of spoliation to be addressed at trial by the transferor court, not a summary judgment motion.

Defendants have urged this Court to grant summary judgment because Plaintiff failed to strictly follow PTO 1 while conducting a partial remediation of the Affected Property prior to filing a claim.  Defendants even suggest in a conclusory manner (without any supporting evidence from this Court regarding PTO 1 rulings) that courts routinely dismiss claims for failing to follow pretrial orders.  In this instance, Plaintiff has proven that the Affected Property a) had defective Knauf-made Chinse drywall; and, b) that samples were removed and retained during the partial remediation of Affected Property.

Proof of the drywall manufacturer's identity, the date of discovery, and the documentation related to the partial remediation of Affected Property are attached as exhibits to the Plaintiff Fact Sheet (the complete PFS attached to this Opposition as Exhibit D).  Plaintiff retained samples of the defective drywall and, as his deposition testimony reflects, those samples

were inadvertently discarded by an employee of Plaintiff.  However, Plaintiffs provided the inspection reports and pictures of samples before destruction. (Exhibit D).

As discussed herein (Section III(B), *supra*) Plaintiff has never received notice from Defendant Knauf regarding the presence of drywall in the home.  There was no product recall and no warning to Plaintiff directly.  Plaintiff learned of the defective Chinese drywall on October 27, 2015, through an inspection conducted by Driskill Environmental Consulting, LLC (See PFS, Exhibit D to this Opposition for a copy of the report).  Discovery of the latent defect in Plaintiff's home occurred after the 2013 KPT Settlement Class was approved and before Plaintiffs were aware that the instant action was initiated.  It was entirely during this period that Plaintiff partially remediated the Affected Property. (See Exhibit C, Plaintiff's SPPF for partial remediation information).

At the time of the partial remediation, Plaintiff was not a party to a lawsuit could not be expected to follow any particular order of any court, including MDL-2047.  The pretrial orders of this Court are applicable to filed claims under the jurisdiction of this Court.  Therefore, it is not clear whether Plaintiff had a duty to fully comply with any pretrial orders and Defendants have not supplied and evidence of bad faith during the pendency of this case by this Plaintiff.  The solution under Louisiana law for Defendants to address PTO 1 compliance by seeking relief at trial with a jury instruction, if appropriate.  The solution in this instance is not through a summary judgement motion.  Plaintiff has demonstrated the *prima facie* case establishing the link between the latent defect and Defendants.   Defendants have not proven that any insufficient documentation or deviation from PTO 1 rises to the level requiring a limiting jury instruction or a sanction for spoliation.

The theory of "spoliation of evidence" refers to an intentional destruction of evidence for purpose of depriving opposing parties of its use. *Pham v. Contico Intern. Inc*., 99-945, p. 4 (La.App. 5 Cir. 3/22/00), 759 So.2d 880, 882. A plaintiff asserting a state law tort claim for spoliation of evidence must allege that the defendant intentionally destroyed evidence. Allegations of negligent conduct are insufficient. *Id*. at 884. Where suit has not been filed and there is no evidence that a party knew suit would be filed when the evidence was discarded, the theory of spoliation of evidence does not apply. *Smith v. Jitney Jungle of Am*., 35,100, p. 11 (La.App. 2 Cir. 12/5/01), 802 So.2d 988, 995, writ denied, 02-0039 (La.3/15/02), 811 So.2d 913.

Spoliation is the *intentional* destruction, mutilation, alteration, or concealment of evidence. Under an intentional or negligence theory of spoliation, the presumption does not apply if the failure to produce the item or record is adequately explained. *See Wilhite v. Thompson*, 42,395 (La.App.2d Cir.8/15/07), 962 So.2d 493, 498, writ denied, 2007-2025 (La.2/15/08), 976 So.2d 175; see also [2009-0315 La.App. 1 Cir. 16] *Randolph v. General Motors Corp*., 93-1983 (La.App. 1st Cir.11/10/94), 646 So.2d 1019, 1026, writ denied, 95-0194 (La.3/17/95), 651 So.2d 276. To employ the presumption otherwise would be to treat the failure to produce evidence under the terms of strict liability, such that the mere failure to produce evidence, regardless of the reason, would trigger the adverse presumption. This is not the standard. *Wilhite*, 962 So.2d at 498. With the absence of proof that Plaintiff intentionally deviated from PTO 1, this Court must view this in the light most favorable to Plaintiff during this proceeding.

A court has broad discretion to impose sanctions for litigation misconduct based on its inherent power to manage its own affairs. To find that spoliation of the evidence has occurred, Louisiana law requires a showing of bad faith or bad conduct. *Guillory v. Pellerin*,

2009WL690543; *Yelton v. PHI, Inc.*, 284 F.R.D. 374 (E.D.La. 2012).  It is Plaintiff's position that no bad faith has been demonstrated by Plaintiff and no spoliation instruction would be appropriate for the unintentional destruction of drywall samples taken from Plaintiffs' home during partial self-remediation.

Defendants have not shown any bad faith on the part of Plaintiff when conducting and documenting the partial remediation. In fact, Defendants haven't shown any duty owed by Plaintiff who was not a party to any lawsuit at the time of the partial remediation.  The district court has broad discretion to control discovery, including the ability to impose sanctions on uncooperative litigants. *Phipps v. Blakeney*, 8 F.3d 788, 790 (11th Cir. 1993).  In this instance, Plaintiff has proven both the presence of defective drywall in the home and the identity of the manufacturer – Knauf.  This case-specific issue of potential "spoliation" is one for the Court to decide at a pretrial conference or through a motion *in limine*. It is not appropriately decided through a summary judgment motion.

## IV.   CONCLUSION

This lawsuit was filed because Defendant Knauf manufactured defective drywall found in Plaintiff's property.  The Knauf Defendants have stipulated that their drywall product is indeed defective.  Although counsel for Defendant Knauf has crafted an argument for summary judgment, the facts and law in this instance simply do not support their legal position or their motion.

Plaintiff has provided ample information through pleadings and the discovery process for the Defendants to understand each claim asserted and the areas of damages being sought.  Most claims and damages have not been challenged by Defendants through this motion. (See Section I(B) *supra* for the claims and damages stated in the Fifth Amended Complaint).  Plaintiff has

provided information to Defendants through responses to discovery requests directing Defendants to the Fifth Amended Class Action Complaint for the areas of damages that have neither been addressed nor challenged by Defendants to this point.  And, when taken in a light most favorable to the non-movant, the unresolved areas of damages present genuine issues of material fact

The exhibits, including the Cash Sale, Plaintiff Profile Form, Supplemental Plaintiff Profile Form, Plaintiff Fact Sheet and inspection summary letter attached to this Opposition demonstrate that, at a minimum, Plaintiff's claims are actionable and multiple issues of material fact exist to defeat Defendants' summary judgment challenge.

For the foregoing reasons, Defendants' Motion for Summary Judgment should be denied.

/s/ *James V. Doyle, Jr.*

James V. Doyle, Jr.
DOYLE LAW FIRM, PC
2100 Southbridge Pkwy., Suite 650
Birmingham, AL 35209
Tele: 205-533-9500
Fax: 844-638-5812
jimmy@doylefirm.com

*Attorney for Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the above and foregoing Plaintiffs Ronald and Maria Natal's Opposition to Defendant Knauf's Motion for Summary Judgment has been served on Plaintiffs' Liaison Counsel, Russ Herman, and Defendants' Liaison Counsel, Kerry Miller, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047, on this 9th day of February, 2020.

/s/ *James V. Doyle, Jr.*

James V. Doyle, Jr.
DOYLE LAW FIRM, PC