# Exhibit D

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL NO. 2047 SECTION: L |
| THIS DOCUMENT RELATES TO: *Elizabeth Bennett, et al. v. Knauf Gips, KG, et al.* 2:14-cv-02722-EEF-JCW | JUDGE ELDON FALLON MAG. JUDGE WILKINSON |

**PLAINTIFF FACT SHEET**

Name of Plaintiff: Ronald T. Natal, Sr. & Maria Salvaggio Natal

Affected Property Address: 1489 Lakeshore Blvd., Slidell, LA 70461

## I.  Purchase, Sale and/or Transfer of Ownership of Property

1.  On what date did you purchase the Property?

**Response**: Plaintiff objects to this question as duplicative. In addition, Plaintiff objects to this question on the ground that it seeks information in the possession of, known to, or otherwise equally available to the defendants. Plaintiff has previously provided this information to defendants in the Bennett Supplemental Plaintiff Profile Form ("SPPF"). Plaintiff directs the defendants to Section II of the SPPF. Without waiving said objection, Plaintiff adopts the SPPF response again here and intends to provide the exact same date as provided in the verified SPPF as follows: Plaintiff purchased the property:

(Month/Day/Year)        11 / 21 / 2006

2.  When you took ownership of the Property, what was the name of the seller?

Destiny Custom Homes, LLC

1

3.  Name and address of the realtor?

N/A

4.  Name and address of the closing agent?

Denise D. Lindsey, Esq., 486 Brownswitch Road, Slidell, LA  70458

5.  What was the price of the home when you purchased it?  $ 1,300,000.00

6.  Was it an "as-is" sale?

**Response**:  Plaintiff objects to the use of "as-is" in this question as vague, ambiguous, uncertain, and unintelligible; consequently, Plaintiff cannot determine the exact nature of the information being sought.  This term is not defined and is not commonly understood with one accepted meaning; multiple inpretations are possible.  Without waiving said objection, plaintiff responds as follows:

☑ Yes  ☐ No  ☑ I'm not sure.

7.  If you sold or transferred ownership of the Property, what was the name of the purchaser?

N/A

8.  If you sold or transferred ownership of the Property, what was the name and address of the realtor?

N/A

9.  If you sold or transferred ownership of the Property, what was the name and address of closing agent?

N/A

10.  If you sold or transferred ownership of the Property, what was the price paid for home?
$ N/A

## II.  Appraisal of the Home

11.  Date of each appraisal:

a. _____/_____/20_____

b. _____/_____/20_____

**PFS REQUEST FOR DOCUMENT PRODUCTION #1**: Please produce copies of any and all appraisals performed on the house both prior and subsequent to the occurrence of any of the events alleneged in the petition.

> **Response**: All documents in Plaintiff's possession responsive to this request are attached as "Exhibit 1."

## III.  Discovery of Drywall

12.  Date that the property was constructed and/or renovated that installed the allegedly defective Chinese Drywall.

**Response**: Plaintiff objects to this question as duplicative. In addition, Plaintiff objects to this question on the ground that it seeks information in the possession of, known to, or otherwise equally available to the defendants. Plaintiff has previously provided this information to defendants in the Bennett Supplemental Plaintiff Profile Form ("SPPF"). Plaintiff directs the defendants to Section II of the SPPF. Without waiving said objection, Plaintiff adopts the SPPF response again here and intends to provide the exact same date as provided in the verified SPPF as follows: The property construction and/or renovation that installed the allegedly defective drywall occurred on or about the following date (to the best of my knowledge):

> (Month/Day/Year)          ____/____/20 06

**PFS REQUEST FOR DOCUMENT PRODUCTION #2**: Please produce all documents, reports, photographs, videotapes, samples and any other materials which evidence and/or identify that there is defective Chinese Drywall in the Property.

> **Response**: All documents in Plaintiff's possession responsive to this request are attached as "Exhibit 2."

## IV.  Manufacturer/Seller of Drywall

13.  Who sold or distributed the drywall in the house?

**Response**: Plaintiff objects to this question as duplicative. In addition, Plaintiff objects to this question on the ground that it seeks information in the possession of, known to, or otherwise equally available to the defendants. Plaintiff has previously provided this information to defendants in the Plaintiff Profile Form ("PPF"). Plaintiff directs the defendants to Section X of the PPF. Without waiving said objection, Plaintiff adopts the PPF response again here and intends to provide the exact same information as provided in the verified PPF as follows:  The drywall Supplier's name (to the best of my knowledge) is:

I don't know.

3

**PFS REQUEST FOR DOCUMENT PRODUCTION #3**: Please produce all documents, reports, photographs, videotapes, samples and any other materials which evidence and/or identify the manufacturer of drywall installed in the house. The submission must be in the form of PTO 1(B).

> **Response:** All documents in Plaintiff's possession responsive to this request are attached as "Exhibit 3."

## V.  Damages

14.  Identify any harm, financial or otherwise, that you contend was caused by defective Chinese Drywall installed in the Property.

**Response**:  Plaintiff directs the defendants to review the complaint filed with the court in this case for a full listing of the claims being asserted and the damages being sought. The defective Knauf Chinese Drywall emitted gasses that cause damage to Plaintiff's home and the personal property contained therein. It also significantly diminished the use and enjoyment of the home; therefore, Plaintiff seeks the following:  all compensatory, statutory, and/or punitive damages; all pre-judgment and post-judgment interest as allowed by law; any appropriate injunctive relief; an award of attorney's fees as allowed by law; an award of taxable costs; and, any and all such further relief as a jury or judge presiding over my trial deems just and proper.  Other damages include, but are not limited to:

Financial harm = $75,374.00 for remediation.

15.  If you contend that you entered personal bankruptcy as a result of damage to your property from defective Chinese Drywall, please describe the facts and circumstances that relate to your claim.

N/A

16.  If you contend that you entered short sale and/or foreclosure as a result of damage to your property from defective Chinese Drywall, please describe the facts and circumstances that relate to your claim.

N/A

**PFS REQUEST FOR DOCUMENT PRODUCTION #4**: If you claim loss of income, please produce any copies of any and all documentation upon which you intend to rely upon to prove this claim.

    **Response:** All documents in Plaintiff's possession responsive to this request are attached as "Exhibit 4."

17.  If you claim diminution of the property as a result of Chinese Drywall, state with particularity each fact which supports your claim.

N/A

_____

_____

_____

18.  Identify the appliances, fixtures and/or other electronics, if any, that you claim were damaged by Chinese Drywall in the property.

    **Response:** An list of damaged items is attached as "Exhibit 14."

19.  If you vacated the property because of the alleged presence of Chinese Drywall, please provide: Address of each location you stayed thereafter.

    a. N/A _____

    b. _____

    c. _____

20.  If you vacated the property because of the alleged presence of Chinese Drywall, please provide: Time periods in which you resided at each property.

    a. _____/_____/20_____  to  _____/_____/20_____

    b. _____/_____/20_____  to  _____/_____/20_____

    c. _____/_____/20_____  to  _____/_____/20_____

21.  If you vacated the property because of the alleged presence of Chinese Drywall, please provide: Moving costs and/or alternative living expenses you claim to have incurred as a result of the alleged presence of Chinese Drywall.

    a. $ N/A _____

    b. $_____

    c. $_____

**PFS REQUEST FOR DOCUMENT PRODUCTION #5:** If you vacated the property because of the alleged presence of Chinese Drywall, please provide any documentation to support your claims.

> **Response:** All documents in Plaintiff's possession responsive to this request are attached as "Exhibit 5."

22. Are you claiming damages for personal injury? ☐ Yes (explain below) ☑ No

_____

_____

23. If you suffered personal injuries as a result of the alleged presence of Chinese Drywall: Date you allege that you first sustained personal injuries as a result of your exposure to allegedly defective Chinese Drywall.

> **Response:** ☑ N/A

24. If you suffered personal injuries as a result of the alleged presence of Chinese Drywall: What specific injuries have you suffered?

> **Response:** ☑ N/A

25. If you suffered personal injuries as a result of the alleged presence of Chinese Drywall: Name and address of any doctor, physician, surgeon, chiropractor, or osteopath who examined and/or treated your alleged injuries.

> **Response:** ☑ N/A

## VI.  Potential Witnesses/Evidence

26. Has any written or recorded statement been taken from any witness or person who has knowledge of relevant facts, including the nature, character, and extent of the injuries referred to in the petition, and for each statement identified?

☐ Yes  ☑ No  ☐ I don't know

27. If the answer to 26 is "yes," please state: The name, address, and telephone number of the person from whom the statement was taken.

N/A_____

_____

6

28.  If the answer to 26 is "yes," please state:  The name, address, and telephone number of the person who took the statement.

N/A

29.  If the answer to 26 is "yes," please state:  The name address, and telephone number of the party having custody of such statement.

N/A

30.  If the answer to 26 is "yes," please state:  The date the statement was taken.

N/A

## VII.  Already Remediated Properties

31.  If you already remediated the Property, who conducted the remediation?

M Natal Contractor, Inc.

32.  When did the remediation commencement date occur?

10 / 31 /20 15

33.  When did the remediation end date occur?

01 / 01 /20 16

34.  What was the scope of the remediation and the scope of the work carried out?

Partial remediation: Remove & replace 4' of drywall in entire downstairs; remove and replace cabinets; remove and replace all base, trim, and doors.  Remove and replace plumbing and electrical, foam insulation, appliances, mirrors, etc.  Replace specialty faux finish paintings, move out, store and move back into home.

35. What costs or expenses, if any, did you incur related to the remediation of the Property?

$75,374.00 for partial remediation of home.

_____

36. Were any samples from the remediation retained?

☑ Yes     ☐ No

37. If the response to 36 is "yes," were the samples compliant with PTO 1(B)?

☑ Yes     ☐ No

38. Were any photographs taken of the allegedly defective Chinese Drywall?

☑ Yes     ☐ No

39. If the response to 38 is "yes," were the photographs compliant with PTO 1(B)?

☑ Yes     ☐ No

**PFS REQUEST FOR DOCUMENT PRODUCTION #6:** Please produce the following documentation concerning the remediation of the Property: Any evidence of KPT Chinese Drywall and Non-KPT Chinese Drywall, if any, in the Property prior to remediation.

> **Response:** All documents in Plaintiff's possession responsive to this request are attached as "Exhibit 6."

**PFS REQUEST FOR DOCUMENT PRODUCTION #7:** Please produce the following documentation concerning the remediation of the Property: Interior photographs of the Affected Property immediately prior to the commencement of, and following completion of, the remediation, including photographs and/or video images of the flooring and major components such as cabinets, moldings, doors, intercom systems, and fixtures for every room and bathroom and, to the extent possible, security systems, appliances and audio such as surround sound.

** The photographs do not need to be pictures taken specifically for the litigation. For example, family photographs or photographs taken for purposes of refinancing a mortgage are acceptable in the absence of other photographs.

**Response**:  All documents in Plaintiff's possession responsive to this request are attached as "Exhibit 7."

**PFS REQUEST FOR DOCUMENT PRODUCTION #8**:   Please produce the following documentation concerning the remediation of the Property:  The remediation contract and an itemization from the contractor who performed the remediation work of the materials used during the remediation, including, but not limited to, manufacturer, model number, and quantity.

**Response**:  All documents in Plaintiff's possession responsive to this request are attached as "Exhibit 8."

**PFS REQUEST FOR DOCUMENT PRODUCTION #9**:   Please produce the following documentation concerning the remediation of the Property:  An itemized invoice from the contractor who performed the remediation work ("Itemized Invoice") showing the scope of work carried out.

**Response**:  All documents in Plaintiff's possession responsive to this request are attached as "Exhibit 9."

**PFS REQUEST FOR DOCUMENT PRODUCTION #10**:   Please produce the following documentation concerning the remediation of the Property:  Proof of payment of the Itemized Invoice and any other expenses, such as cancelled checks, credit card statements, etc.

**Response**:  All documents in Plaintiff's possession responsive to this request are attached as "Exhibit 10."

**PFS REQUEST FOR DOCUMENT PRODUCTION #11**:   Please produce the following documentation concerning the remediation of the Property:  A floor plan of the Affected Property with dimensions.

**Response**:  All documents in Plaintiff's possession responsive to this request are attached as "Exhibit 11."

**PFS REQUEST FOR DOCUMENT PRODUCTION #12**:   Please produce the following documentation concerning the remediation of the Property:  An Environmental Certificate.

**Response**:  All documents in Plaintiff's possession responsive to this request are attached as "Exhibit 12."

**PFS REQUEST FOR DOCUMENT PRODUCTION #13**:   Please produce the following documentation concerning the remediation of the Property:  An Owner Disclosure Affidavit in the form attached as Exhibit 1, which includes a certification that the materials provided comprise all of the available documentation regarding the

following:  The drywall that was in the Affected Property prior to the commencement of the remediation; and, the scope, extent, and cost of the remediation.

> **Response**:  All documents in Plaintiff's possession responsive to this request are attached as "Exhibit 13."

## **VERIFICATION**

I hereby verify that the responses to the Plaintiff Fact Sheet are correct to the best of my knowledge.


_____                    January 18, 2019
Signature of Plaintiff                                                            Date


Maria S. Natal
_____
Printed Name

# Exhibit 1

# Exhibit 2

# Exhibit 3











# Driskill Environmental Consultants LLC
## DRYWALL INSPECTION REPORT
### Ronnie Natal
### 1489 Lakeshore Blvd., Slidell, LA 70461
### October 27, 2015

Report Prepared By:

Brent J. Driskill, CMC, CMRS,

**Louisiana State Board of Contractors #250006**
*Mold Remediation Contractor*
**Louisiana State Board of Contractors #11599**
*General Contractor*
*Mechanical Contractor*
*HVAC Contractor*
**Louisiana State**
*Building Inspector*
**American Industrial Hygiene Association #167308**
*Member*
**Environmental Assessment Association #74099**
*Certified Environmental Inspector*
**National Asbestos & Environmental Training Institute**
*Certified Microbial Remediation Supervisor*
*Certified Microbial Consultant*



Office (504) 738-2779 / Fax (504) 737-1960
www.brent@smarttipsolutions.com

Driskill Environmental Consultants LLC

# Contents

INTRODUCTION .......................................................................................................................................3

INTERVIEW WITH CLIENT: ...................................................................................................................3

WORD AND PHRASE DEFINITIONS ......................................................................................................4

INSPECTION INFORMATION ..................................................................................................................4

PROPERTY DESCRIPTION ........................................................................................................................4

INSPECTION RESULTS .............................................................................................................................6

    ELECTRICAL SYSTEM, SWITCHES & RECEPTACLES ....................................................................6

DAMAGE ASSESSMENT ...........................................................................................................................6

PHOTOS........................................................................................................................................................7

Driskill Environmental Consultants LLC

# *INTRODUCTION*

Site Inspector: Brent Driskill on October 27, 2015

The recommendations or requirements made in this report cannot address unforeseen hidden or inaccessible defective drywall or damages inflicted upon various metals and contents within the structure. Driskill Environmental Consultants L.L.C. does not provide nor imply any warranty or guarantee that remediation of certain specified areas within the structure will permanently eliminate future contamination caused by chemical off gassing from defective drywall. The contents of this report are the property of Driskill Environmental Consultants L.L.C. and shall be used at its discretion. Copying or dissemination of its contents is strictly prohibited without the written permission of Driskill Environmental Consultants L.L.C.

The client and property owner is solely responsible for the use and interpretation of test results and reports requested from Driskill Environmental Consultants L.L.C. Driskill Environmental Consultants L.L.C. is not able to assess the degree of hazard, resulting from materials analyzed. Driskill Environmental Consultants L.L.C. reserves the right to dispose of all samples according to all state and federal guidelines, unless otherwise directed by the client and/or home owner. Please contact Driskill Environmental Consultants LLC for an explanation of any aspect of this report that you do not understand. We assume no liability or responsibility for the cost of implementation of demolition or remediation of any materials affected by defective drywall, either current or arising in the future, or for any property damage, consequential damage or bodily injury of any nature. The client and/or home owner understands that this Inspection Report is performed and prepared for Client and/or home owner's sole and exclusive use and is NOT intended to be relied upon by any 3rd party.

This written report is the final and only position that Driskill Environmental Consultants L.L.C. has regarding the subject property inspection as of the date entered above.

## *INTERVIEW WITH CLIENT:*
An interview with the Client revealed that the home was flooded during hurricane Katrina and rebuilt with drywall approximately 5-feet from the floor up.

# Driskill Environmental Consultants LLC

**Word and Phrase Definitions**

The following words or phrases are used to simplify certain conditions of systems or components inspected during this inspection.

**Advanced Corrosion (A.C.):** Corrosion on wiring or metal components beyond that which should be expected as compared to the normal rate of corrosion as of the date installed.

**Instrument readings, when conducted** are reported in **ppm, (parts per million). NOTE: (<) symbol indicates "less than".**

**Serviceable Condition (S.C.):** The condition of an item or system that visually appears to be acceptable condition without having performed an intrusive inspection considering its expected operation life. An intrusive inspection might find the item unusable.

**Not Accessible (N/A):** An item or system or a component of the same was not accessible to the inspector at the time of this inspection.

**Not Inspected (N.I.):** The item or system was not inspected during the time of this inspection.

*INSPECTION INFORMATION*

On October 27, 2015, a qualified inspector conducted a visual inspection of the subject structure located at 1489 Lakeshore Blvd., Slidell, LA 70461, to determine the presence of defective drywall and the resulting corrosive damages to electrical and copper components and other metals inside the structure.

| PROPERTY DESCRIPTION | |
|---|---|
| **Age of Structure** | Built in 2004, Renovated 2006 |
| **Approximate Sq. Ft.** | 6,000 Sq. Ft. |
| **Stories / Levels** | Two Levels |
| **Brand of Drywall** | Knauf Drywall |
| **Interior Walls** | Drywall |
| **Interior Ceilings** | Drywall |
| **Foundation** | Concrete Slab |
| **Roof System** | Slate Tile |
| **Number of A/C Systems** | (3) Central A/C Systems |

# Driskill Environmental Consultants LLC

SYSTEMS AND DEVICES INSPECTED

ELECTRICAL SYSTEM & RECEPTACLES
Removal or accessing electrical components for visual inspection such as; electrical receptacles, main electrical panel, sub electrical panel, multi breaker panels, electrical junction boxes and other electrical terminations for the purpose of visually identifying black corrosion on copper terminal connections.

ELECTRICAL APPLIANCES & DEVICES
- Electrical devices, their components and electrical terminal connections (when accessible) are inspected during the   inspection and shall include but are not limited to the electrical components of kitchen appliances, laundry equipment, water heaters, TV sets, electronic equipment, security systems, light fixtures, all electrical small appliances, i.e. (toasters, microwave ovens, blenders, mixers, food processors, vacuum cleaners, hair dryers, etc.) and/or any open electrical copper connection.

DRYWALL PRODUCT IDENTIFICATION
- Included in this inspection are visual observations of the back side of drywall installed in the structure.  The most obvious places are attics and the backside of some closets. The most reliable evidence of the presence of defective drywall is the words "Made in China" or "China" stamped on the back side of the drywall. This inspection might include an internal wall cavity boroscope video recording for the purposes of determining the presence of stamped markings identifying the manufacturer.

## Driskill Environmental Consultants LLC

*INSPECTION RESULTS*

*ELECTRICAL SYSTEM, SWITCHES & RECEPTACLES*

**CONDITION OF ELECTRICAL COMPONENTS:**
**S.C. = Serviceable Condition; A.C. =Advanced Corrosion;**

| Room | General Location | Condition | Quantity Receptacles | Quantity Light Switches |
|---|---|---|---|---|
| **DOWNSTAIRS** | | | | |
| Sitting Room | Near Rear Bay Window | S.C. | 1 | |
| Setting Room | At Fireplace | **A.C.** | | 1 |
| Front Door | Near Door | **A.C.** | 1 | |
| Dining Room | Front Wall | S.C. | 1 | |
| Dining Room | Interior Wall | **A.C.** | 1 | |
| Bar Sink | At Cabinet | **A.C.** | 1 | |
| Hall to Kitchen | At Hall | **A.C.** | 1 | |
| Kitchen | Near Pantry | S.C. | 1 | |
| Elephant Room | Exterior Wall | **A.C.** | 1 | |
| Laundry Room | At Sink | **A.C.** | 1 | |
| Family Room | At Sofa | S.C. | 1 | |
| Master Bedroom | At Dog Cages | S.C. | 1 | |
| Master Bedroom | At T.V. | S.C. | | 1 |
| Master Bath | At Lavatory | **A.C.** | 1 | |
| **UPSTAIRS** | | | | |
| Upstairs | At Hallway | S.C. | 1 | |
| T.V. Room | At Bathroom | S.C. | 1 | |
| Card Room | Front Wall | S.C. | 1 | |
| Bar | Interior Wall | S.C. | 1 | |
| Bathroom | At Lavatory | S.C. | 1 | |

*INSPECTION RESULTS*

*DAMAGE ASSESSMENT*
Primary damage caused by defective drywall that includes visually observed corrosion of copper components in plumbing, air conditioning and electrical components are listed as follows:

1.  The copper ground wiring in most of the electrical receptacles and light switch inspected during this inspection displayed black, advanced corrosion.

2.  KNAUF-TIANJIN China stamped drywall was found in the laundry room.

Copyright Driskill Environmental Consultants LLC 2009

# Driskill Environmental Consultants LLC

*PHOTOS*

## KNAUF-TIANJIN CHINA DRYWALL





## Driskill Environmental Consultants LLC

Black Corrosion on Exposed Ground Wiring Electrical Receptacles

 

 

 

# Exhibit 4

# Exhibit 5

# Exhibit 6







# Exhibit 7

















































































































































































# Exhibit 8

# DRISKILL ENVIRONMENTAL CONSULTANTS L.L.C.
## CDW Environmental Pre-Inspection Contract

**Date:** October 27, 2015
**Client:** Ronnie Natal
**Subject Property Address:** 1489 Lakeshore Blvd., Slidell, LA 70461

**1- PERMISSION TO INSPECT** Client requests an Environmental Assessment and Report for the purpose of assessing the structure for contaminated sheetrock and documentation of visual conditions identified at the above address by the Inspector whose name appears below in this document herein referred to as "Inspector" of Driskill Environmental Consultants LLC, hereinafter referred as the "Company" and Client hereby represents and warrants that all approvals necessary have been secured for the Company's entrance on to the property.

**2- UNDERSTANDING THIS AGREEMENT** Client warrants that: (a) Client has read this Agreement carefully; (b) Client understands Client is bound by all the terms of this Agreement, and (c) Client will read the entire Assessment Report when received and promptly inquire if any questions arise.

**3- CLIENT'S PROPERTY** Client understands that the Environmental Assessment Report is performed and prepared for Client's sole and exclusive use and is NOT intended to be relied upon by any 3rd party.

**4- SCOPE OF INSPECTION** Inspector agrees to perform a limited visual Inspection of the structure at the subject property address and to provide Client with a written Environmental Assessment Report as to the apparent general condition of the structure's components and systems, including identification of significant observable deficiencies, as they exist at the time of Inspection. Contaminated sheetrock type substances might be acquired during or post Remediation completion by means of; surface swab, tape lift, bulk or air sampling techniques that will be submitted to a third party laboratory for analysis. Samples acquired at the site for the purpose of laboratory analysis will become a part of the report when submitted to the client.

**5- LIMITATION OF LIABILITY** The Inspection only includes those systems and components expressly and specifically identified in the Environmental Assessment Report. Any area which is NOT exposed to view, is concealed, is inaccessible because of soil, walls, floors, carpets, ceilings, furnishings, and requires invasive destructive methods or exposure to unsafe conditions as determined by the inspector is NOT included in this Inspection. The Inspection may include destructive testing or dismantling if authorized by the Client. Further, the Inspection does NOT include opinions relating to the installation of any component or system. In addition to the other limitation provisions in this Agreement, Client agrees to assume all the risk for all conditions, which are concealed from view at the time of the inspection or exist in any area excluded from Inspection by the terms of this agreement. Maintenance and other items may be discussed but will NOT form a part of the Inspection Report. The liability of Inspector (its principals, agents, employees, successors in interest, or affiliates) for errors and omissions in the inspection and report is limited to a refund to the client of the fee paid for the Remediation Protocol Document and report. Client assumes the risk of all losses greater than the fee paid for the inspection and report. Client agrees and understands that this inspection is NOT a home or building inspection, home warranty, guarantee, insurance policy, or substitute for real estate transfer disclosures, which may be required by law. Neither Inspector, nor its agents, principals, or employees, shall be liable for any repairs or replacement of any components, systems, structure of the property or the contents therein, either during or after the inspection.

**6- NOT INSPECTED** The following areas/items, systems, and components are among those NOT included in the Inspection: Code or zoning violations; system or component installation; permit research; structural, geological, soil, wave action or hydrological stability; survey, engineering, analysis or testing; termites or other wood destroying insects; rodents or other pests; dry-rot or damage from or relating to the preceding: latent or concealed defects, asbestos, radon gas, lead paint, urea formaldehyde, toxic or flammable chemicals, water or air quality, PCB's or other toxins, electro-magnetic fields, underground storage tanks, proximity to toxic waste sites or other environmental or health hazards, private water or sewage systems, saunas, steam baths; chill or hot water air conditioning systems, water source heat-pump systems, fountains or other types of or related systems and components; repair cost estimates; building

value appraisal; radio controlled devices; automatic gates, elevators, lifts, dumbwaiters; thermostatic or time clock controls; water softener or purifiers; radiant heat systems; furnace heat exchanger, solar heating systems; air conditioning and heating adequacy or inadequacy; gas appliances such as fire pits or barbecues; electric or gas space heaters and lamps; main gas shut off valve; any gas leaks; odors or noise; seismic safety; freestanding appliances; security or fire safety systems; security bars and/or safety equipment; personal property; any adverse condition that may affect the desirability of the property; proximity to railroad tracks or airplane routes; boundaries; easements or rights or way; unique/technically exhaustive complex systems or components; system or component life expectancy; adequacy or efficiency of any system or component; Items specifically noted as excluded in the inspection report.

**7- INSPECTION SPECIALISTS** If Inspection is desired of any of the areas/items, systems, or components listed above in 6- NOT INSPECTED, then the Client shall contract with the appropriate professionals to provide desired services. Client understands that the Environmental Assessment and Inspection Report do NOT, in any way, constitute a/an: (1) guarantee, (2) warranty of merchantability or fitness for a particular purpose, (3) express or implied warranty, or (4) insurance policy. Additionally, neither the Inspection nor Inspection Report are substitutes for any real estate transfer disclosures, which may be required by law.

**8- WRITTEN REPORT** The written Environmental Assessment Report to be prepared or edited by Inspector shall be considered the final and exclusive findings of Inspector of the structure. Client understands and agrees that Client will NOT rely on any oral statements made by the Inspector prior or subsequent to the issuance of the written Inspection report. Client further understands and agrees Inspector reserves the right to modify Environmental Assessment Report for a period of time that shall NOT exceed forty-eight (48) hours after the Environmental Assessment Report has first been delivered to Client. Client understands and agrees that any claim arising out of or related to any act or omission of Inspector in connection with the Inspection of the structure, as limited herein, shall be made in writing and reported to Company within ten (10) business days of discovery. Client further agrees to allow Inspector the opportunity to re-inspect the claimed discrepancy, with the exception of emergency conditions, before Client or Client's agents, employees or independent contractor's repairs, replaces, alters, or modifies the claimed discrepancy. Client understands and agrees that any failure to notify Inspector as stated above shall constitute a waiver of any and all claims Client may have against Inspector.

**9- AGREEMENT TO ARBITRATE** The parties to this agreement agree and affirm that preceding the filing of any legal action each party is bound upon proper notice to participate in mediation before a locally recognized mediator/mediation service accepted by all parties and familiar with the guidelines of contaminated sheetrock remediation protocol documentation. If the parties cannot agree on a mediator/mediation service the parties shall adopt a plan where each side selects mediators who will then select a mediator. Lastly, it is understood by all parties that this mediation is non-binding.

In the event that the preceding mediation does NOT resolve the dispute then any dispute, controversy, interpretation or claim including claims for, but NOT limited to, breach of contract, any form of negligence, fraud or misrepresentation or any other theory of liability arising out of, from or related to this contract or arising out of, from or related to the Inspection or Inspection Report shall be submitted to final and binding arbitration under the **Rules and Procedures of the Expedited Arbitration of Home Inspection Disputes of Construction Arbitration Services, Inc.**

**CLIENT/ INITIALS: _____   INSPECTOR INITIALS: _____**

The decision of the Arbitrator appointed thereunder shall be final and binding and judgment on the Award may be entered in any court of competent jurisdiction. Client understands and agrees that in any such arbitration; all of the provisions of this agreement shall apply. Client fully understands and agrees that arbitration is Client's sole remedy against Driskill Environmental Consultants LLC and its inspectors. In the event suit is filed in any court arising out of this agreement or the services performed hereunder, Client agrees to pay to Driskill Environmental Consultants LLC all costs, expenses and attorney's fees incurred by Driskill Environmental Consultants LLC or its inspectors in the defense of such suit. This agreement to arbitrate shall survive any termination or expiration of this Agreement. Any legal action, including the arbitration proceeding more specifically described above, including, but NOT limited to, those proceedings involving claims arising from this inspection against said Inspector et al must be brought within one (1) year from the date of the Inspection, failure to bring said action within one (1) year

of the date of the Inspection is a full and complete waiver of any rights, actions or causes of actions that may have arisen there from. Timely notice to the Inspector is deemed to be a condition of this contract with reasonable consideration stipulated thereto. By signing this agreement Client agrees to this one (1) year limitation of the statute of limitation.

**10- CLIENT'S PRESENCE** Client understands and agrees that if they are NOT present at the time of the Inspection and therefore do NOT sign this Agreement, Client authorizes their authorized representative to sign in the Client's absence and that this Agreement will be deemed signed as if signed by Client and made a part of the Inspection Report. Acceptance of the Inspection Report by Client, Client's payment for said services therefore constitutes a valid acceptance of the terms and conditions of this Agreement as if signed in person with initials in each and every place as if read and signed by Client. If any portion of this Agreement is found to be invalid or unenforceable by any court or Arbitrator the remaining terms shall remain in force between the parties.

**11- BINDING AGREEMENT** This Agreement represents the entire agreement between the parties. No oral agreements, understandings, or representations shall change, modify, or amend any part of this agreement. No change or modification shall be enforceable against any party unless such changes or modification is in writing and signed by the parties and supported by valid consideration. This Agreement shall be binding upon and inure to the parties hereto and their spouses, heirs, executors, administrators, successors, assigns and representatives of any kind whatsoever. Any reproduction of this "Environmental Pre Inspection Contract" or the written report, or its format, or use by others without the express written consent of Driskill Environmental Consultants LLC is strictly prohibited and protected by U.S. Copyright law.

**I the undersigned have read the above Environmental Pre Inspection Contract, understand, and agree with its general limits and exclusions regarding the Environmental Assessment and Report and authorize the inspection and drafting of a Environmental Assessment Report for the Subject property and guarantee payment for this service.**

**CLIENT INITIALS: _____    INSPECTOR INITIALS: _____**

**Price of inspection and report:**                                    **$ 475.00**

***To be paid in full by the Client, upon completion of this inspection and payable to: Driskill Environmental Consultants, 1999 Hickory Ave., Harahan, LA 70123***

_____          _____
**Client Signature or Client Authorized Representative**                 **Date**

_____          _____
**Signature of Inspector Driskill Environmental Consultants LLC**        **Date**    10-27-15

**We accept Cash, Checks, Money Orders, Visa, MasterCard, American Express, Discover.**

| Card Type & Number | Exp. | PIN | Card Holder Signature |
|---|---|---|---|
| | | | |

# Exhibit 9



# Natal
## Contractor, Inc.

P. O. Box 518
Slidell, LA 70459
985-649-2713
Fax: 985-847-1250

****************INVOICE***************

| | |
|---|---|
| **Invoice Number:** | 349-1231 |
| **Invoice Date:** | December 31, 2015 |
| **Terms:** | Upon Receipt |
| **Invoice Amount:** | $72,374.00 |

**Billed To:**  Ronald and Maria Natal

**Project:**  1489 Lakeshore Blvd.
Chinese Drywall

**Billed For:**

| | |
|---|---|
| Inspections | 475 |
| Superintendent | 4,800 |
| Remove Drywall and Insulation | 6,180 |
| Dumpster | 450 |
| Remove Base and Trim | 3,850 |
| Remove and Store Furniture | 4,100 |
| Seal off Second Floor | 400 |
| Drywall Material 4120 s.f. @ $.55 | 2,266 |
| Hang, Tape & Float Drywall @ $1.50 | 8,680 |
| Paint 10,300 s.f. @ $.94 | 9,682 |
| Replace Base, Trim & Doors | 6,000 |
| Replace Insulation | 2,678 |
| Paint Base, Trim, Doors | 5,900 |
| (20 doors & frames; 900 l.f. of base) | |
| Special Faux Painting | 2,200 |
| Remove and Replace Cabinets | 5,863 |
| Remove and Replace Plumbing | 2,700 |
| Remove and Replace Appliances | 600 |
| Remove and Replace Mirrors | 1,600 |
| Repair Electrical | 2,200 |
| A/C Inspection | 250 |
| Final Cleaning | 1,500 |
| **TOTAL** | **$72,374.00** |

Page 1 of 1

# Exhibit 10

# Exhibit 11

# Exhibit 12





# POST REMEDIATION
# DRYWALL ASSESSMENT REPORT
### Property Address
## 1489 Lakeshore Blvd., Slidell, LA 70461
### Prepared for the Client
## Ronnie Natal
### Date of Inspection
## November 5, 2015

Report Prepared By:

Brent J. Driskill, CMC, CMRS, IH

**Louisiana State Board of Contractors #250006**
*Mold Remediation Contractor*
**Louisiana State Board of Contractors #11599**
*General Contractor*
*Mechanical Contractor*
*HVAC Contractor*
**Louisiana State**
*Building Inspector*
**American Industrial Hygiene Association #167308**
*Industrial Hygienist*
**Environmental Assessment Association #74099**
*Certified Environmental Inspector*
**National Asbestos & Environmental Training Institute**
*Certified Microbial Remediation Supervisor*
**PH. (504) 738-2779 FAX (504) 737-1960**



*American Industrial*
*Hygiene Association*

www.brent@smarttipsolutions.com

## TABLE OF CONTENTS

INTRODUCTION ............................................................................................................................... 3

ADDITIONAL SERVICES OPTION ................................................................................................ 3

REMEDIATION REFERENCING AUTHORITIES AND AGENCIES ........................................ 3

    *Word and Phrase Definitions* ............................................................................................................ 3

SCOPE OF WORK ............................................................................................................................. 4

INTERVIEW WITH THE CLIENT: .................................................................................................. 4

PROPERTY DESCRIPTION ............................................................................................................. 4

AREAS OF PRIMARY CONSIDERATION FOR CONTAMINATED DRYWALL ..................... 4

    AREAS SUSPECTED OF CONTAINING CONTAMINATED DRYWALL ............................................ 4
    POST REMEDIATION INSPECTION SUMMARY .................................................................................... 4

ASSISTANCE AND RECOMMENDATIONS .................................................................................. 5

PHOTOS .............................................................................................................................................. 5

Driskill Environmental Consultants L.L.C.
Confidential Inspection Report

*INTRODUCTION*
*SITE INSPECTOR*: Brent Driskill
Performed the following inspection on November 5, 2015

*ADDITIONAL SERVICES OPTION*
This report is issued without Driskill Environmental Consultants LLC supervision or monitoring of any ongoing remodeling or contract work at the address inspected. In the event the Client should desire to have Driskill Environmental Consultants LLC supervise or monitor the ongoing work, then those fees charged for services rendered by Driskill Environmental Consultants LLC shall be agreed upon by the Client and Driskill Environmental Consultants LLC prior to commencement of the work process.

*REMEDIATION REFERENCING AUTHORITIES AND AGENCIES*
The following authorities or agencies in remediation or controlled demolition are some of the references used for this report. Remediation techniques, building science and other health and construction data can be obtained from the following agencies:

**Air Conditioning Contractors of America (ACCA)**
**American Conference of Governmental Industrial Hygienists (ACGIH)**
**American Industrial Hygiene Association (AIHA)**
**Center for Disease Control & Prevention (CDC)**
**Institute of Inspection Cleaning and Restoration Certification (IICRC S500)**
**Mount Sinai Medical Center Department of Occupational and Environmental Medicine**
**National Asbestos & Environmental Training Institute (NAETI)**
**National Institute of Occupational and Environmental Health (NIOSH)**
**Occupational Safety & Health Administration (OSHA)**
**United States Environmental Protection Agency (EPA)**

**Word and Phrase Definitions**
The following words or phrases are used to simplify certain conditions of systems or components inspected during this inspection.

**Advanced Contamination:** Contamination on wiring or metal components beyond that which should be expected as compared to the normal rate of contamination as of the date installed.

**Serviceable Condition (S.C.):** The condition of an item or system that visually appears to be acceptable condition without having performed an intrusive inspection considering its expected operation life. An intrusive inspection might find the item unusable.

**Not Accessible (N/A):** An item or system or a component of the same was not accessible to the inspector at the time of this inspection.

**Not Inspected (N.I.):** The item or system was not inspected during the time of this inspection.

**Instrument Readings:**
Instrument readings are reported in **ppm, (parts per million).**
**NOTE: (<) symbol indicates "less than".**

Driskill Environmental Consultants L.L.C.
Confidential Inspection Report

*SCOPE OF WORK*
On November 5, 2015, Driskill Environmental Consultants L.L.C. was requested to perform a clearance inspection testing for the presence of $H_2S$ at 1489 Lakeshore Blvd., Slidell, LA 70461. The purpose of this investigation was to determine the extent of remaining visible drywall contaminants and $H_2S$ existence at the time of this inspection.

*INTERVIEW WITH THE CLIENT:*
An interview with the Client revealed the all visible marked Chinese drywall in many areas were removed four feet up from the floor.

| PROPERTY DESCRIPTION | |
|---|---|
| **Age of Structure** | Built in 2004, Renovated 2006 |
| **Approximate Sq. Ft.** | 6,000 Sq. Ft. |
| **Stories / Levels** | Two Levels |
| **Brand of Drywall** | Knauf Drywall |
| **Interior Walls** | Removed |
| **Interior Ceilings** | Removed |
| **Foundation** | Concrete Slab |
| **Roof System** | Slate Tile |
| **Number of A/C Systems** | (3) Central A/C Systems |

*AREAS OF PRIMARY CONSIDERATION FOR CONTAMINATED DRYWALL*

AREAS SUSPECTED OF CONTAINING CONTAMINATED DRYWALL
Listed below are the areas observed in the structure that might contain contaminated drywall or oxidized components. Those areas non-accessible for inspection or were not inspected are not commented upon.

1. An inspection of the home revealed that many areas on the first floor of the residence indicated that Chinese drywall had been removed from the downstairs level, 4-feet up from the floor.

2. A visual wall cavity inspection was conducted with a flash light and mirror in all wall cavities that were opened. There were no visible markings or tape coloring indicating Knauf drywall.

2. An H2S gas meter sampling instrument was probed in all open wall cavities throughout the downstairs level. All readings were recorded at zero (0) levels of H2S gas.

POST REMEDIATION INSPECTION SUMMARY
Based on the inspection of the subject structure, we offer the following commentary regarding remediation and removal of contaminated drywall:

1. We conclude that the contaminated drywall remediation was successfully accomplished in all areas that were removed. The visual inspection of the home along with H2S gas meter sampling revealed that the home was free of H2S gases above 0 ppm (parts per million). The recommendations or requirements made in this report cannot address unforeseen hidden or inaccessible defective drywall or damages that might inflicted upon various metals and contents within the structure nor any areas that might contain Chinese drywall that were not opened for inspection.

4

Driskill Environmental Consultants L.L.C.
Confidential Inspection Report

*ASSISTANCE AND RECOMMENDATIONS*

Please call our office for an explanation of any aspect of this report that you do not understand. This written report is the final and only position that Driskill Environmental Consultants L.L.C. has regarding the subject property inspection as of the date entered above.

*PHOTOS*

**Zero instrument readings did not detect the presence of
Hydrogen Sulfide within the structure by testing various wall cavities.**



Driskill Environmental Consultants L.L.C.
Confidential Inspection Report

## Remediated Areas of the Structure











# POST REMEDIATION
# DRYWALL ASSESSMENT REPORT
### Property Address
## 1489 Lakeshore Blvd., Slidell, LA 70461
### Prepared for the Client
## Ronnie Natal
### Date of Inspection
## November 5, 2015

Report Prepared By:

Brent J. Driskill, CMC, CMRS, IH

**Louisiana State Board of Contractors #250006**
*Mold Remediation Contractor*
**Louisiana State Board of Contractors #11599**
*General Contractor*
*Mechanical Contractor*
*HVAC Contractor*
**Louisiana State**
*Building Inspector*
**American Industrial Hygiene Association #167308**
*Industrial Hygienist*
**Environmental Assessment Association #74099**
*Certified Environmental Inspector*
**National Asbestos & Environmental Training Institute**
*Certified Microbial Remediation Supervisor*
**PH. (504) 738-2779 FAX (504) 737-1960**



*American Industrial
Hygiene Association*

www.brent@smarttipsolutions.com

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................................. 3

ADDITIONAL SERVICES OPTION .................................................................................................. 3

REMEDIATION REFERENCING AUTHORITIES AND AGENCIES ........................................ 3

    *WORD AND PHRASE DEFINITIONS* ....................................................................................................... 3

SCOPE OF WORK ............................................................................................................................... 4

INTERVIEW WITH THE CLIENT: ................................................................................................. 4

PROPERTY DESCRIPTION ............................................................................................................. 4

AREAS OF PRIMARY CONSIDERATION FOR CONTAMINATED DRYWALL ................. 4

    AREAS SUSPECTED OF CONTAINING CONTAMINATED DRYWALL .................................................... 4

    POST REMEDIATION INSPECTION SUMMARY ...................................................................................... 4

ASSISTANCE AND RECOMMENDATIONS .................................................................................. 5

PHOTOS ................................................................................................................................................ 5

Driskill Environmental Consultants L.L.C.
Confidential Inspection Report

*INTRODUCTION*
*SITE INSPECTOR*: Brent Driskill
Performed the following inspection on November 5, 2015

*ADDITIONAL SERVICES OPTION*
This report is issued without Driskill Environmental Consultants LLC supervision or monitoring of any ongoing remodeling or contract work at the address inspected. In the event the Client should desire to have Driskill Environmental Consultants LLC supervise or monitor the ongoing work, then those fees charged for services rendered by Driskill Environmental Consultants LLC shall be agreed upon by the Client and Driskill Environmental Consultants LLC prior to commencement of the work process.

*REMEDIATION REFERENCING AUTHORITIES AND AGENCIES*
The following authorities or agencies in remediation or controlled demolition are some of the references used for this report. Remediation techniques, building science and other health and construction data can be obtained from the following agencies:

**Air Conditioning Contractors of America (ACCA)**
**American Conference of Governmental Industrial Hygienists (ACGIH)**
**American Industrial Hygiene Association (AIHA)**
**Center for Disease Control & Prevention (CDC)**
**Institute of Inspection Cleaning and Restoration Certification (IICRC S500)**
**Mount Sinai Medical Center Department of Occupational and Environmental Medicine**
**National Asbestos & Environmental Training Institute (NAETI)**
**National Institute of Occupational and Environmental Health (NIOSH)**
**Occupational Safety & Health Administration (OSHA)**
**United States Environmental Protection Agency (EPA)**

**Word and Phrase Definitions**
The following words or phrases are used to simplify certain conditions of systems or components inspected during this inspection.

**Advanced Contamination:** Contamination on wiring or metal components beyond that which should be expected as compared to the normal rate of contamination as of the date installed.

**Serviceable Condition (S.C.):** The condition of an item or system that visually appears to be acceptable condition without having performed an intrusive inspection considering its expected operation life. An intrusive inspection might find the item unusable.

**Not Accessible (N/A):** An item or system or a component of the same was not accessible to the inspector at the time of this inspection.

**Not Inspected (N.I.):** The item or system was not inspected during the time of this inspection.

**Instrument Readings:**
Instrument readings are reported in **ppm, (parts per million).**
**NOTE: (<) symbol indicates "less than".**

Driskill Environmental Consultants L.L.C.
Confidential Inspection Report

*SCOPE OF WORK*

On November 5, 2015, Driskill Environmental Consultants L.L.C. was requested to perform a clearance inspection testing for the presence of $H_2S$ at 1489 Lakeshore Blvd., Slidell, LA 70461. The purpose of this investigation was to determine the extent of remaining visible drywall contaminants and $H_2S$ existence at the time of this inspection.

*INTERVIEW WITH THE CLIENT:*

An interview with the Client revealed the all visible marked Chinese drywall in many areas were removed four feet up from the floor.

| PROPERTY DESCRIPTION | |
|---|---|
| **Age of Structure** | Built in 2004, Renovated 2006 |
| **Approximate Sq. Ft.** | 6,000 Sq. Ft. |
| **Stories / Levels** | Two Levels |
| **Brand of Drywall** | Knauf Drywall |
| **Interior Walls** | Removed |
| **Interior Ceilings** | Removed |
| **Foundation** | Concrete Slab |
| **Roof System** | Slate Tile |
| **Number of A/C Systems** | (3) Central A/C Systems |

*AREAS OF PRIMARY CONSIDERATION FOR CONTAMINATED DRYWALL*

AREAS SUSPECTED OF CONTAINING CONTAMINATED DRYWALL

Listed below are the areas observed in the structure that might contain contaminated drywall or oxidized components. Those areas non-accessible for inspection or were not inspected are not commented upon.

1. An inspection of the home revealed that many areas on the first floor of the residence indicated that Chinese drywall had been removed from the downstairs level, 4-feet up from the floor.

2. A visual wall cavity inspection was conducted with a flash light and mirror in all wall cavities that were opened. There were no visible markings or tape coloring indicating Knauf drywall.

2. An H2S gas meter sampling instrument was probed in all open wall cavities throughout the downstairs level. All readings were recorded at zero (0) levels of H2S gas.

POST REMEDIATION INSPECTION SUMMARY

Based on the inspection of the subject structure, we offer the following commentary regarding remediation and removal of contaminated drywall:

1. We conclude that the contaminated drywall remediation was successfully accomplished in all areas that were removed. The visual inspection of the home along with H2S gas meter sampling revealed that the home was free of H2S gases above 0 ppm (parts per million). The recommendations or requirements made in this report cannot address unforeseen hidden or inaccessible defective drywall or damages that might inflicted upon various metals and contents within the structure nor any areas that might contain Chinese drywall that were not opened for inspection.

4

Driskill Environmental Consultants L.L.C.
Confidential Inspection Report

*ASSISTANCE AND RECOMMENDATIONS*
Please call our office for an explanation of any aspect of this report that you do not understand.
This written report is the final and only position that Driskill Environmental Consultants L.L.C.
has regarding the subject property inspection as of the date entered above.

*PHOTOS*

**Zero instrument readings did not detect the presence of
Hydrogen Sulfide within the structure by testing various wall cavities.**



Driskill Environmental Consultants L.L.C.
Confidential Inspection Report

## Remediated Areas of the Structure

 

 

# Exhibit 13

# OWNER DISCLOSURE AFFIDAVIT

Owner name:   Ronald & Maria Natal

Affected Property address:   1489 Lakeshore Blvd., Slidell, LA  70461

Purchase date and price of Affected Property:  November 21, 2006 $ 1,300,000

List the manufacturers of all drywall found in the Affected Property:   Knauf

Move-out date:   n/a

Move-in date:   n/a

Storage expenses paid:   0

Moving expenses paid:   n/a

Utility expenses paid:   n/a

Alternative living expenses paid:   n/a

Total cost of construction paid:   $72,374

Total claim:   $72,374

General Contractor name and phone #:  M Natal Contractor, Inc.  (985) 649-2713

Total amount paid to general contractor:  $72,374

Affected Property air conditioned square footage:   4,770 (downstairs only)

Was Owner aware of the defective drywall before purchasing the Affected Property:   No.

Please describe the remediation of the Affected Property.  If you removed and reused an item, please circle 'reused'.  In the event that you replaced an item, with another of the same material and quality please circle 'replaced'.  In the event that you replaced and upgraded an item, please note at the end of this form and leave that item blank.  Circling 'replaced' indicates that you replaced the items with one of equal value.

**Kitchen cabinets:**                              Reused                Replaced

Owner Initial _____   Contractor Initial _____

**Kitchen countertop:**                                  (Reused)                    Replaced

If replaced indicate material:          Formica          Corion          Tile          Granite

**Kitchen Plumbing Fixtures:** (Faucets, sink)          (Reused)                    Replaced

**Kitchen floor:**                                      (Reused)                    Replaced

**Appliances:**                                          Reused                     Replaced

If replaced, please list appliance manufacture and model: _____

_____

_____

**Bathroom cabinets:**                                  (Reused)                    Replaced

**Bathroom tops:**                                      (Reused)                    Replaced

If replaced indicate material:  Formica          Cultured Marble          Tile          Granite

**Bathroom flooring:**                                  (Reused)                    Replaced

**Bathroom enclosures:**                                (Reused)                    Replaced

**Bathroom lighting:**                                  (Reused)                    Replaced

**Bathroom Accessories** (towel bars, etc.):            (Reused)                    Replaced

**Bathroom Mirrors:**                                   (Reused)                    Replaced

**Tub:**                                                (Reused)                    Replaced

If replaced indicate master bath tub type:          Fiberglass          Steel          Jacuzzi

**Plumbing fixtures** (toilets, sinks):                 (Reused)                    Replaced

If replaced please provide description of original manufactures:

_____

**Plumbing faucets:**                                   (Reused)                    Replaced

If replaced please provide description of original manufactures:

_____

**Plumbing lines:**                                      Reused                    (Replaced)

If replaced indicate material:          Copper          CPVC          (PEX)

Owner Initial _____          Contractor Initial _____

**Base boards:**                                                    (Reused)              (Replaced)

**Interior doors:**                                                  (Reused)               Replaced

If replaced indicate:         Hollow core 6' 8" doors      Hollow core 8' doors      Solid core 8' doors

**Window wood molding:**                        N/A          (Reused)               Replaced

**Crown molding:**                                (N/A)          Reused               Replaced

If replaced please indicate original locations:

_____

_____

**Chair Rail:**                                 (N/A)          Reused               Replaced

If replaced please indicate original locations:

_____

_____

**Tile flooring:**                     N/A          (Reused)               Replaced

If replaced please indicate locations of tile floors:

_____

_____

**Marble Flooring:**                  N/A          (Reused)               Replaced

If replaced please indicate locations of marble floors:

_____

_____

**Wood Flooring Type:**               N/A          Wood               Pergo/float

**Wood flooring:**                    N/A          (Reused)               Replaced

If replaced please indicate locations of wood floors:

_____

_____

**Carpet:**                           N/A          Reused               Replaced


Owner Initial _____   Contractor Initial _____

If replaced please provide description of original manufactures:

_____

_____

If replaced please indicate locations of carpet:

_____

| **HVAC replacement:** | Ducts | Coils | Air handler (interior) | Condenser(exterior) |
|---|---|---|---|---|
| **HVAC manufacturer:** | _____ | | | |
| **Insulation:** | | | Reused | (Replaced) |
| **Electrical fixtures:** | | (Reused) | | Replaced |
| **Electrical wiring:** | | | Reused | (Replaced) |
| **Electrical fans:** | | | | |

If replaced please indicate how many and which rooms:

_____

| **Stair rails:** | (N/A) | Reused | Replaced |
|---|---|---|---|
| **Window sills:** | | (Reused) | Replaced |
| If replaced indicate original material: | Wood | Marble | Drywall |
| **Alarm system:** | N/A | (Reused) | Replaced |
| Fire suppression system: | N/A | (Reused) | Replaced |
| **Intercom:** | (N/A) | Reused | Replaced |
| **Surround sound:** | (N/A) | Reused | Replaced |
| **Wall papers:** | (N/A) | | Replaced |
| **Interior paint:** | | Total colors used: 2 + faux finish |

Additional construction related items replaced:

faux finish powder room

_____

_____

Owner Initial _~~Q~~_____   Contractor Initial _____

Personal items replaced:

N\A

_____

_____

_____

Items that were upgraded and deducted from construction replacement cost:

N\A

_____

_____

_____

The following items should have been produced given the nature of the remediation project and will help us confirm the remediation costs associated with your property. Please provide the additional supporting documents listed below:

1.  Photographs and/or video images of all drywall removed from the Affected Property during remediation. If your claims are pending in *In re: Chinese Manufactured Drywall Products Liability Litigation*, MDL No. 2047, where available, such submission shall be in the form required by MDL Pretrial Order 1B. If your claims are pending in state court, such submission shall comply with the state court's rules regarding the preservation of evidence.

2.  Any evidence of KPT Chinese Drywall or Non-KPT Chinese Drywall in the Affected Property prior to remediation.

3.  Proof of corrosion or other evidence that the KPT Chinese Drywall was reactive.

4.  Interior photographs of the Affected Property immediately prior to the commencement of, and following completion of, the remediation, including photographs and/or video images of the flooring and major components such as cabinets, moldings, doors, intercom systems, and fixtures for every room and bathroom, and, to the extent possible, security systems, appliances and audio such as surround sound.

    a.  The photographs do not need to be pictures taken specifically for the litigation. For example, family photographs or photographs taken for purposes of refinancing a mortgage are acceptable in the absence of other photographs.

5.  The remediation contract and an itemization from the contractor who performed the remediation work of the materials used during the remediation, including, but not limited to, manufacturer, model number, and quantity.

Owner Initial _____ Contractor Initial _____

6. An itemized invoice from the contractor who performed the remediation work ("Itemized Invoice").

7. Proof of payment of the Itemized Invoice and any other expenses, such as cancelled checks, credit card statements, etc.

8. A floor plan of the Affected Property with dimensions.

9. An Environment Certificate.

Please note that this is not a comprehensive list or final request and the Knauf Defendants may request additional documentation such as cancelled checks, receipts or photographs in the future.

Owner Initial _____   Contractor Initial _____

I declare under penalty of perjury under the laws of the United States that all of the information provided in this Owner Disclosure Affidavit is true and correct to the best of my knowledge, information and belief. I further declare that I have supplied all the documents requested in this Owner Disclosure Affidavit, to the extent that such documents are in my possession or in the possession of my lawyers. Further, I acknowledge that I have an obligation to supplement the above responses if I learn that they are in some material respects incomplete or incorrect.

Date: _7-31-18_

Homeowner Signature: _____

Subscribed and sworn to before me on

_____

Notary Public

My commission expires on

Date: _____

Contractor Signature: _____

Subscribed and sworn to before me on

_____

Notary Public

My commission expires on

Owner Initial _____ Contractor Initial _____

# Exhibit 14

# Plaintiff Fact Sheet

Plaintiff: Ronald T. Natal, Sr. and Maria S. Natal

Property Address: 1489 Lakeshore Blvd, Slidell, LA  70461

## Question #18 Itemization (Personal Property Damage)

| # | Description of Damaged Item | Value ($) |
|---|---|---|
| 1 | N/A | |
| 2 | | |
| 3 | | |
| 4 | | |
| 5 | | |
| 6 | | |
| 7 | | |
| 8 | | |
| 9 | | |
| 10 | | |
| 11 | | |
| 12 | | |
| 13 | | |
| 14 | | |
| 15 | | |
| 16 | | |

| 17 | | |
|----|----|----|
| 18 | | |
| 19 | | |
| 20 | | |
| 21 | | |
| 22 | | |
| 23 | | |
| 24 | | |
| 25 | | |
| 26 | | |
| 27 | | |
| 28 | | |
| 29 | | |
| 30 | | |
| 31 | | |
| 32 | | |
| 33 | | |
| 34 | | |
| 35 | | |

Total: $ __0.00_____