UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL NO. 2047 |
| | SECTION: L |
| THIS DOCUMENT RELATES TO: | |
| *Elizabeth Bennett, et al. v. Gebrueder Knauf Verwaltungsgesellschaft, KG, et al.* 2:14-cv-02722-EEF-JCW | JUDGE ELDON FALLON |
| | MAG. JUDGE WILKINSON |

**PLAINTIFF ESTATE OF CATHERINE BABER'S OPPOSITION**

**TO DEFENDANT KNAUF'S MOTION FOR SUMMARY JUDGMENT**

# Table of Contents

**Page**

I.   STATEMENT OF MATERIAL FACTS…………………………….…………   1

    A.   MDL-2047……………………………………………………….…………   1

    B.   The *Bennett* Class Action …………………………...……………………....   3

    C.   Plaintiff Estate of Catherine Baber in the
        *Bennett* Complaint……………………………………………………….…..   4

II.   STANDARD OF REVIEW……………………………………………….……   5

III.   ARGUMENT………………………………………………………………   6

    A.   Summary of Plaintiff's Argument ……………………………….…...   7

    B.   Defendant Knauf has a duty to warn consumers in Mississippi and
        should be equitably estopped from arguing that notice has been
        given to any homeowner when Defendant Knauf chose to remain
        silent rather than issue a warning and/or recall …………………….…   8

    C.   Plaintiff's claims are timely filed under Mississippi's Discovery
        Rule …..…………………………………………………………….…..   12

        i.   *Product liability claims are subject to the discovery rule in*
             *Mississippi* ………………………………………….   14

        ii.   *Defective Chinese-manufactured drywall is a latent defect*
             *and Plaintiff had no obligation to hire a Chinese drywall*
             *inspector before the date of discovery* ……………………   16

    D.   Remediation damages remain an unresolved issue of material fact ….   18

    E.   All non-remediation damages remain unresolved and should be
        decided by a trier of fact ………………………………………….   18

        i.   *Plaintiff's loss of use & enjoyment claim is allowed under*
             *Mississippi law and the appropriate damages should be*
             *decided by a trier of fact* …………………………………....   18

        ii.   *A genuine issue of material fact exists for Plaintiff's*
             *consequential damages, including personal property and*
             *diminution in property value* …………………………….   20

F.      All Mississippi Plaintiffs' claims contained in the *Bennett* action
        are protected by the equitable tolling principles of *American Pipe*
        if discovery occurred on or after November 13, 2011……..          23

        i.      *Federal Causes of Action Employ Cross-Jurisdictional*
                *Tolling* ………………………………………………          23

        ii.     *Few States Have Addressed Cross-Jurisdictional Tolling,*
                *But the Trend Favors Adoption of Tolling* …………………          24

        iii.    *The Class Action Fairness Act Establishes a Nationwide*
                *Policy Favoring the Filing and Maintenance of Class*
                *Action Lawsuits in Federal Court* …………………………          25

IV.     CONCLUSION………………………………………………………..          26

Table of Authorities

**<u>Cases</u>**                                                                                     **<u>Page</u>**

*American Pipe & Const. Co. v. Utah*,                                          23, 24
    414 U.S. 538 (1974)

*Anderson v. Liberty Lobby, Inc.*,                                                5
    477 U.S. 242 (1986)

*Bailey v. Missouri P.R. Co.*,                                                     22
    383 So. 2d 397, 1980 La. App. LEXIS 3636 (1980)

*Barnes v. Singing River Hosp. Sys.*,                                         15
    733 So.2d 199 (Miss.1999)

*Benoist Elevator Co. v. Mitchell*,                                             14
    485 So.2d 1068 (Miss.1986)

*Boone v. Citigroup, Inc.*,                                                        26
    416 F.3d 382 (5th Cir. 2005)

*Boyles v. Schlumberger Tech. Corp.*,                                         15
    832 So.2d 503 (Miss.2002)

*Bynum v. Mandrel Industries, Inc.*,                                           21
    241 So.2d 629 (Miss. 1970)

*Celotex Corp. v. Catrett*,                                                         5
    477 U.S. 317 (1986)

*Chapman v. Chapman*,                                                            11
    473 So.2d 467 (Miss.1985)

*City of Tupelo v. O'Callaghan*,                                               19
    208 So.3d 556 (Miss. 2017)

*Clark v. Coats & Clark, Inc.*,                                                    5
    929 F.2d 604 (11th Cir. 1991)

*Crown, Cork & Seal Co. v. Parker*,                                           23
    462 U.S. 345 (1983)

*Dart Cherokee Basin Operating Co. v. Owens*,                           25
    135 S.Ct. 547 (2014)

*Dow Chem. Corp. v. Blanco*,
    67 A.3d 392 (Del. 2013)    25

*Fitzpatrick v. City of Atlanta*,
    2 F.3d 1112 (11th Cir. 1993)    5

*Gallick v. B O R.R.*,
    83 S.Ct. 659 (U.S. 1963)    22

*In Re Chinese Manufactured  Drywall Prod. Liab. Liti.*,
    706 F. Supp. 2d 655 (E.D. La. 2010)    20, 22

*In re Depuy Orthopedics, Inc.*,
    870 F.3d 345 (5th Cir. 2017)    20

*In re Libor-Based Fin. Instruments Antitrust Litig.*,
    No. 11 MDL 2262 NRB, 2015 WL 4634541 (S.D.N.Y.
    Aug. 4, 2015), *amended*, No. 11 MDL 2262 (NRB), 2015
    WL 13122396 (Oct. 19, 2015)    24, 25

*Johnson v. City of Canton*,
    194 So.3d 161 (Ct. App. Miss. 2015)    19

*Mincy v. Crisler*,
    96 So.162 (Miss. 1923)    16

*Owens-Illinois, Inc. v. Edwards*,
    573 So.2d 704 (Miss. 1990)    15

*Palmer v. Volkswagen of America, Inc.*
    905 So.2d 564 (Miss. Ct. App. 2003)    11

*Piney Woods Country Life Sch. v. Shell Oil Co.*,
    170 F.Supp.2d 675 (S.D. Miss. 1999)    26

*Portwood v. Ford Motor Co.*,
    701 N.E.2d 1102 (Ill.1998)    24

*PPG Architectural Finishes, Inc. v. Lowery*,
    909 So.2d 47 (Miss.2005)    15, 17

*Quinn v. Louisiana Citizens Prop. Ins. Corp.*,
    118 So. 3d 1011 (La. 2012)    25

*Sarris v. Smith*,
    782 So.2d 721 (Miss.2001)    15

*Standard Fire Ins. Co. v. Knowles,*
    568 U.S. 588 (2013)            25

*Staub v. Eastman Kodak Co.,*
    726 A.2d 955 (N.J. Super. Ct. App. Div. 1999)    24

*Sweeney v. Preston,*
    642 So.2d 332 (Miss.1994)         15

*Tabor Motor Co. v. Garrard,*
    233 So.2d 811 (Miss.1970)         14

*Tolan v. Cotton,*
    134 S. Ct. 1861 (2014)           5

*Wayne Gen. Hosp. v. Hayes,*
    868 So.2d 997 (Miss.2004)         17

*Williams v. Kilgore,*
    618 So.2d 51 (Miss.1992)          15

*Wyeth Laboratories, Inc. v. Fortenberry,*
    530 So.2d 688 (Miss.1988)         11


Fed. R. Civ. P. 56(a)               5
Miss. Code Ann. § 11-1-63        10, 12
Miss. Code § 15-1-49            13, 14
5C Michie's Jurisprudence, Damages, § 32 (2006)    22
Restatement (Second) of Torts § 929 (1979)    22

Plaintiff Estate of Catherine Baber, by and through the undersigned counsel of record, opposes the motion for summary judgment (Rec. Doc. 22446) filed by the Knauf Defendants. As grounds, Plaintiff offers the following:

## I.   STATEMENT OF MATERIAL FACTS

### A.  MDL-2047.

This litigation arises from alleged property damage and caused by the presence of Chinese drywall in homes and other buildings. Hurricanes Katrina and Rita devastated the Gulf Coast in 2005. These disasters, coinciding as they did with a boom in new housing construction, helped precipitate a shortage of drywall for the construction and reconstruction of homes in the United States. As a result, from approximately 2005 to 2008, Chinese drywall entered the United States market, changing hands in the chain of commerce, and ultimately finding its way into thousands of homes and buildings in the United States, primarily in Florida, Louisiana, Alabama, Mississippi, Texas, and Virginia.  Sometime after the installation of Chinese drywall in these properties, homeowners, residents, and occupants began to notice and complain of odd odors, corrosion of metal components, failure of electronics and appliances, and in some cases, physical ailments, such as nose bleeds, skin irritation, and respiratory problems. In response to these complaints, a number of governmental agencies and special interest groups, notably the federal Consumer Products Safety Commission and the Department of Housing and Urban Development, began to investigate, conduct testing, and issue remediation protocols related to Chinese drywall.

The present litigation commenced with the filing of lawsuits in 2009 in both federal and state courts by property owners and occupants damaged by the Chinese drywall installed in their residences and businesses, in addition to suits filed by some homebuilders who repaired these

properties. Defendants include homebuilders, developers, installers, retailers, realtors, brokers, suppliers, importers, exporters, and distributors, as well as their insurers and the insurers of homeowners, who were involved with the Chinese drywall in the affected properties. Because of the commonality of facts in the various federal lawsuits, the litigation was designated as Multi-District Litigation 2047 by the Judicial Panel on Multidistrict Litigation. On June 15, 2009, the Panel transferred all federal actions alleging damages from Chinese drywall to the U.S. District for the Eastern District of Louisiana for coordinated and consolidated proceedings.

Since the inception of MDL 2047, numerous cases were consolidated, containing thousands of claims; in addition, the Court issued numerous opinions, pretrial orders, and minute entries; the Court has facilitated mediations; and in the Court thousands of documents have been filed. Additionally, the Court has corresponded and coordinated with a number of state and federal court judges who also preside over related Chinese drywall cases.  The discovery revealed that the manufacturers of the drywall in question generally fell into two groups: the Knauf entities[1] and the Taishan entities[2]. After one of the Taishan entities was held in preliminary default, the Court conducted a bellwether evidentiary default hearing.  Shortly thereafter, the Court held its first bellwether, bench trial involving the Knauf entities. With regard to these bellwether proceedings, the Court issued detailed findings of fact and conclusions of law, concluding that the Chinese drywall at issue was in fact defective due to its release of

---

[1]  The term "Knauf entities" includes: Knauf Plasterboard (Tianjin) Co., Ltd. ("KPT"), Knauf Plasterboard (Wuhu) Co., Ltd., Guangdong Knauf New Building Material Products Co., Ltd., Knauf Gips KG, Gebr. Knauf Verwaltungsgesellschaft KG, Knauf International GmbH, Knauf Insulation GmbH ("KI"), Knauf UK GmbH, Knauf AMF GmbH & Co. KG, Knauf do Brasil Ltda. and PT Knauf Gypsum Indonesia.

[2]  The term "Taishan entities" includes: Taishan Gypsum Co. Ltd. and Taian Taishan Plasterboard Co. Ltd., among others.

corrosive gasses, requiring remediation of properties containing this drywall. The Court also issued a remediation protocol.

An initial settlement was reached in the Knauf portion of the litigation in October 2010, when the PSC and the Knauf entities entered into a Court-approved pilot program for remediation of homes containing drywall manufactured by Knauf. The pilot program led to a broader settlement agreement that extended the pilot program and provided remediation benefits to plaintiffs with filed claims.  On December 11, 2012, the final Knauf-related agreement, labeled, "Third Amended Settlement Agreement Regarding Claims Against the Knauf Defendants in MDL No. 2047" was filed with the Court.  A preliminary approval of the agreement was issued at the time, but no fairness hearing was immediately held, and no certification of a proposed class was approved.  Instead, the Court later held a consolidated fairness hearing for the five interrelated settlements: L&W; Banner; INEX; Global; and Knauf. Ultimately, on February 7, 2013, the Court certified a settlement class that included the Knauf entities and memorialized the terms in the Third Amended Settlement Agreement.  The Knauf settlement class provided benefits to participants limited to remediation.  All claims other than remediation were omitted including those claims for personal property, negligence, strict liability, consumer protection acts, nuisance, unjust enrichment, or non-pecuniary claims were not settled with the Knauf entities.  In addition, no provision in the Knauf settlement class protected or provided benefits to absent class members.

### B.  The *Bennett* Class Action.

The original *Bennett* Complaint was filed on November 13, 2014, in the United States District Court for the Northern District of Alabama and was subsequently transferred and consolidated into MDL 2047 via a conditional transfer order issued by the Judicial Panel on

Multidistrict Litigation. The Complaint was amended multiple times, primarily to amend the parties.  The Fifth Amended Class Action Complaint was filed on March 6, 2018, and includes the following claims: 1) negligence; 2) negligence per se; 3) strict liability; 4) breach of express and/or implied warranty; 5) Redhibition (by Louisiana plaintiffs); 6) Louisiana Products Liability Act (by Louisiana plaintiffs); 7) private nuisance; 8) negligent discharge of a corrosive substance; 9) unjust enrichment; 10) violation of the Mississippi Consumer Protection Act; 11) equitable injunctive relief and medical monitoring.  In the prayer for relief, Plaintiffs seek: certification of the class action; order appointing named plaintiffs as class representatives; compensatory, statutory, and/or punitive damages; pre- and post-judgment interest as allowed by law; injunctive relief; an award of attorney's fees as allowed by law; and award of taxable costs; and, any other relief a court deems just and proper.  On January 27, 2020, this Court issued an order denying class certification.

### C.  Plaintiff Estate of Catherine Baber in the *Bennett* Complaint.

Estate of Catherine Baber owns a property in the State of Mississippi that contained drywall manufactured by the Knauf Defendants that is alleged to be defective.  The property was originally purchased in 2006 by Charles Baber, Catherine Baber's husband of over forty years. Mr. Baber passed away in 2015 and left all of his real property, including Affected Property, to Catherine Baber.  Plaintiff's claim was filed in the *Bennett* complaint on November 21, 2016. The street address of Plaintiff's property at issue is: 121 Country Club Drive, Pass Christian, MS 39571 ("Affected Property").

The deed for Affected Property, purchased on January 26, 2006, is attached as Exhibit A. Charles Baber maintained ownership of Affected Property until his death on September 19, 2015.  A copy of Mr. Baber's will is attached in Exhibit G.  Plaintiff Catherine Baber was

appointed as the Executrix of the Estate of Charles Baber on February 3, 2016, and Letters

Testamentary were issued by the Chancery Court of Harrison County, Mississippi (Exhibit G).

While she served as Executrix of the Estate of Charles Baber, Catherine Baber placed Affected

Property for sale.  On October 17, 2016, Pro-Spect Property Inspections found evidence of

defective Knauf-manufactured drywall in the property and a report was issued on October 31,

2016.  A copy of the Pro-Spect Property Inspections Report is attached hereto within the Plaintiff

Fact Sheet (Exhibit D, Page 35).

Plaintiff completed a Plaintiff Profile Form (Exhibit B) that verified the date that the

Knauf drywall was discovered and the identity of the manufacturer confirmed on October 17,

2016.  Plaintiff also completed a Supplemental Plaintiff Profile Form (Exhibit C) that confirmed

and verified the date of discovery of defective Knauf-manufactured drywall in Affected

Property.

Plaintiff Catherine Baber passed away on April 10, 2018, and her estate was substituted

as the property party to this lawsuit.  Lisa Lofton was appointed as the administrator of the Estate

of Catherine Baber and Letters of Administration were issued by the Chancery Court of Harrison

County, Mississippi, on May 16, 2018 (Exhibit G).  Lisa Lofton, on behalf of the Estate of

Catherine Baber, was deposed by counsel for Knauf on December 2, 2019, in Flowood,

Mississippi, where she affirmed the responses in the three discovery forms, including the date of

discovery of the defective Knauf-manufactured drywall in the Affected Property.  Plaintiff also

provided testimony under oath that affirmed the responses in the discovery documents related to

damages, including loss of use and enjoyment, and personal property damages, among other

topics addressed by counsel for the defendants.  Plaintiff attended the deposition voluntarily and

answered all questions posed by counsel for the Knauf Defendants.

## II. STANDARD OF REVIEW

Summary judgment is only warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  In making the determination, "all justifiable inferences are to be drawn in [the non-movant's] favor." *Tolan v. Cotton*, 134 S. Ct. 1861, 1863 (2014) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). The movant may argue that "there is an absence of evidence to support the nonmoving party's case," *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986), but "it is never enough simply to state that the non-moving party cannot meet its burden at trial," *Clark v. Coats & Clark, Inc*., 929 F.2d 604, 608 (11th Cir. 1991). If the non-moving party provides more than a mere "scintilla of evidence" demonstrating that "the jury could reasonably find for the plaintiff," it will defeat the motion. *Anderson*, 477 U.S. at 252. This can be done by pointing out where the record "contains supporting evidence . . . which was 'overlooked or ignored' by the moving party." *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1116 (11th Cir. 1993) (citing *Celotex*, 477 U.S. at 332 (Brennan, J., dissenting)).

## III.   ARGUMENT

In this case, Defendants have stipulated that their product is defective; therefore, the calculation of appropriate damages is all that remains for Plaintiff unless Defendant presents some legal basis for dismissal of the individual claim.  Defendants have argued in their motion that Plaintiff's claims should be granted summary judgment because: 1) Plaintiff's claims are barred by Mississippi's Statute of Limitations, and 2) Plaintiff's damages are unsupported by evidence; 3) Plaintiff lost interest in property due to foreclosure; and 4) there's no evidence of ownership by the estate. For this Court to grant summary judgment, it must look beyond the

record or disregard the legal standard that requires all inferences to be viewed in a light most favorable to Plaintiff.

The parties have now completed discovery and Defendants have received all requested information, including documents, responses to interrogatories compiled in three court-approved forms (Plaintiff Profile Form, Supplemental Plaintiff Profile Form, and Plaintiff Fact Sheet), and live supporting testimony from Plaintiff at deposition.  Plaintiff consistently and repeatedly responded to inquiries by Defendants regarding the date of discovery of defective Knauf-manufactured drywall in the Affected Property.  Plaintiff provided written responses regarding the personal property lost in Affected Property that is alleged to be caused by the defective drywall, including items lost before the latent defect was discovered.  Clarity regarding the personal property, diminution of property value, and loss of use and enjoyment damages was provided during the estate representative's deposition.  There are multiple reasons to deny Defendants' summary judgment motion for this Plaintiff, including Mississippi's discovery rule and the equitable tolling principles recognized by the United States Supreme Court, the Fifth Circuit and the Supreme Court of Mississippi.

A.    **Summary of Plaintiff's Argument.**

Manufacturers have a duty under Mississippi law to notify all consumers of a known defect.  Although the defect in their KPT drywall product was discussed at length internally in 2006 by Defendant Knauf's management, not a single homeowner to date has received adequate notice directly from Knauf about the product as of this filing in 2020. By failing to properly warn all current, past, or potential homeowners about their defective product, Defendant Knauf is equitably estopped from arguing that any plaintiff received adequate notice at any time

whatsoever; consequently, this Court must view the lack of warning in a light most favorable to Plaintiff when considering all assertions in Defendant Knauf's motion for summary judgment.

Equitable estoppel due to the lack of a warning affects: 1) notice to prospective buyers about the nature of defective drywall that may be in a particular home, thereby providing them with inadequate information upon which they can rely when making a homebuying decision; 2) notice to homeowners regarding the harmful effects cause by defective drywall to both inhabitants and the components of the home that may be experiencing the effects from harmful off-gassing; and, 3) notice to homeowners regarding the harmful effects caused by defective drywall to personal property during the time they have lived in the home with defective Knauf-made drywall thereby leaving them with inadequate information and an inability to preserved potential evidence in support of claims.  Equitable estoppel due to lack of a warning also affects the start of a statute of limitations under Mississippi law for Plaintiff who is a layman with no specialized knowledge related to defective Chinese-manufactured drywall.

Detrimental reliance by the Plaintiff due to the omission of an adequate warning or a product recall by Defendant Knauf colors all of their defenses in a significant way, including those related to remediation damages, personal property damages, diminution in value, loss of use and enjoyment damages, lost rental income, foreclosure and any other consequential damages.  Defendant Knauf has argued in its motion that Plaintiff lacks sufficient documentation for the non-remediation damages; however, because there was no warning to Plaintiff regarding the potential presence of defective drywall in Affected Property, she detrimentally relied upon the omission and did not keep invoices, receipts, or tangible items to document the damages. This Court must view the omission of a warning by the Knauf Defendants in a light most favorable to Plaintiff when considering the damages being sought.  This detrimental reliance due

to a lack of warning or product recall affects all claims and damages; consequently, a genuine issue material fact exists regarding all claims and all damages that should be considered by a trier of fact.

**B.** **Defendant Knauf has a duty to warn consumers in Mississippi and should be equitably estopped from arguing that notice has been given to any homeowner when Defendant Knauf chose to remain silent rather than issue a warning and/or product recall.**

The Defendants argue that because a potential buyer in 2014 chose not to close on the sale of Affected Property and the tarnishing of metal was later noticed or Plaintiff heard the term "Chinese drywall" from the potential buyer, Plaintiff was put on notice that Defendant Knauf's defective product was in the Affected Property; however, Plaintiff did not identify the Knauf markings on the drywall until 2018 and she did not receive any inspection report from a certified, qualified, experienced drywall inspector prior to her self-inspection in 2018. (See Plaintiff's Declaration attached as Exhibit F).

Defective "Chinese drywall" is a very specific latent defect in a home.  It is not easily found by laymen homeowners.  It typically requires an experienced Chinese drywall inspector to find the defective drywall and identify the manufacturer.  In order to confirm that defective Chinese-manufactured drywall produced by Knauf is present in a home, all of the following elements must be confirmed: 1) drywall was used in a property; 2) the drywall in the property produces corrosive gasses; 3) the level of corrosive gasses exceeds the ASTM standard; 4) the drywall board was manufactured in China; and 5) the drywall board was produced by a Knauf entity operating in China.  Until all five elements are confirmed, "Chinese drywall" is not confirmed in property.  To argue otherwise is illogical, particularly since the Knauf Defendants issued no product recall and provided no specific warning or notice to potentially-affected consumers.

If the Defendants are relying on some notice or warning to commence the start of a limitations period, they must provide that specific notice or warning.  In order for Plaintiff or a trier of fact to evaluate the purported warning or notice, it must be specifically produced.  And, following the production of a warning or notice upon which the Defendants rely, this Court must evaluate that specific warning for adequacy when evaluating this motion.  Several questions must be answered for this Court by Defendants.  What are the specific warnings that Plaintiff and other consumers should have received from Knauf?  What date did Knauf publish the warnings to consumers in Mississippi generally?  Alternatively, what date did Knauf issue a recall and notify Plaintiff directly?

Defendants could easily have sent warnings to potential recipients of its drywall – they're in possession of business records that could have been used to identify all downstream purchasers and ultimately the recipients of their product.  Defendant Knauf was certainly aware of the problems their defective drywall was causing as early as November 7, 2006.  (See Exhibit E – an email between Knauf corporate officers C. Wang, M. Norris, and Jawahar re "USA smelly board," the "situation in Miami is out of control," and "it will be a big problem not only in Miami but all over the USA Market, maybe cover thousand[s] of houses.").  Instead, Defendant Knauf chose not to notify homeowners or actively remedy the problem they created through a recall.  Because Defendant Knauf has failed to provide any warning whatsoever or specify the exact date of a purported notice, we cannot evaluate the warning for adequacy; consequently, this Court cannot speculate about the particulars of a notice and must view Knauf's failure to warn in a light most favorable to Plaintiff, the nonmoving party.

In Mississippi, manufacturers have a duty to warn consumers about certain risks at the time of sale and a duty to issue a recall once the defective product is no longer in the

manufacturer's possession.  The Mississippi Product Liability Act ("MPLA") governs, "any action for damages caused by a product…" Miss. Code Ann. § 11-1-63. The MPLA specifically describes the adequacy of a warnings as:

> (ii) An adequate product warning or instruction is one that a reasonably prudent person in the same or similar circumstances would have provided with respect to the danger and that communicates sufficient information on the dangers and safe use of the product, taking into account the characteristics of, and the ordinary knowledge common to an ordinary consumer who purchases the product; or in the case of a prescription drug, medical device or other product that is intended to be used only under the supervision of a physician or other licensed professional person, taking into account the characteristics of, and the ordinary knowledge common to, a physician or other licensed professional who prescribes the drug, device or other product.

Miss. Code Ann. § 11-1-63(c)(2).

Given the omission of any product warning at the time of sale, Defendants cannot argue that an adequate warning was provided to Plaintiff.  Defendants clearly knew that their product was defective in 2006, possibly earlier, yet intentionally concealed this fact from consumers in the United States, including Plaintiff.  Additionally, with no notice regarding the defect in Affected Property and no product recall, Defendants are equitably estopped from arguing that signs of tarnish on metal somehow placed Plaintiff on notice of the presence of Defendant Knauf's drywall in Affected Property.  There is no specific warning from the responsible manufacturer, the Defendants, that provides adequate notice to Plaintiff.

The principles of equitable estoppel are applicable here to prevent the Knauf Defendants from taking unfair advantage of homeowners who may have only received limited or inaccurate information about the defective Knauf-manufactured drywall through some other source. Defendant Knauf possessed the most accurate information about their defective product and cannot rely on some other entity to meet their burden to consumers.  In Mississippi, the elements

of equitable estoppel are: "conduct and acts, language or silence, amounting to a misrepresentation or concealment of material facts with knowledge or imputed knowledge of such facts, with the intent that the representation be relied upon, with the other party's ignorance of the true facts, and reliance to his damage upon the representation or silence." *Chapman v. Chapman*, 473 So.2d 467, 469-70 (Miss.1985).  Failure to speak when under some duty to speak is precisely what occurred here after Defendant Knauf learned that its drywall was defective in 2006.  This equitable estoppel principle is applicable to all claims by Plaintiff.

Mississippi law is clear - adequacy of Defendant Knauf's warning is clearly a question reserved for the trier of fact. "The issue of a warning's adequacy is factual and usually will be resolved by the trier of fact." *Wyeth Laboratories, Inc. v. Fortenberry*, 530 So.2d 688, 692 (Miss.1988).  The substance of the allegedly inadequate warning itself is vital to making this determination.  *Palmer v. Volkswagen of America, Inc*., 905 So.2d 564, 575 (Miss. Ct. App. 2003).  Defendant Knauf has failed to provide proof that a warning was issued at any time to any consumer; thus, a trier of fact will decide the impact of Defendant Knauf's concealment of their product's defect when evaluating damages at trial.

The Restatement of Torts (Third) also directly addresses the failure to warn issue. "Among the factors to be considered" by the trier of fact in determining whether a manufacturer has a duty to warn end-users directly are: (1) "the gravity of the risks posed by the product"; (2) "the likelihood that the intermediary will convey the information to the ultimate user"; and (3) "the feasibility and effectiveness of giving a warning directly to the user." Restatement (Third) of Torts: Products Liability § 2 comment i. The use of the word "among" demonstrates that this list of factors is intended to be inclusive rather than exhaustive. At bottom, the "standard is one of reasonableness." *Id*. Thus, depending on the facts and circumstances presented in each case,

other pertinent factors may be considered when deciding whether a manufacturer has a duty to

warn end-users.  But, without any specific warning from or by Defendant, this court must view

the omission in a light most favorable to Plaintiff, the nonmovant, and find that a genuine issue

of material fact exists regarding the notice that might have commenced the Mississippi three-

year statute of limitations for defective products.  Under Mississippi law, this is clearly a

question for a trier of fact.

### C.    Plaintiff's claims are timely filed due to Mississippi's Discovery Rule.

Mississippi's MPLA codified strict liability law and provides in pertinent part:

> (a) The manufacturer or seller of the product shall not be liable if the claimant does not prove by the preponderance of the evidence that at the time the product left the control of the manufacturer or seller:

> (i) 1. The product was defective because it deviated in a material way from the manufacturer's specifications or from otherwise identical units manufactured to the same manufacturing specifications, or

> 2. The product was defective because it failed to contain adequate warnings or instructions, or

> 3. The product was designed in a defective manner, or

> 4. The product breached an express warranty or failed to conform to other express factual representations upon which the claimant justifiably relied in electing to us e the product; and

> (ii) The defective condition rendered the product unreasonably dangerous to the user or consumer; and

> (iii) The defective and unreasonably dangerous condition of the product proximately caused the damages for which recovery is sought.

Miss. Code Ann. § 11-1-63 (2013).

According to the MPLA statute, strict liability applies in this case. Sections (a)(ii) and

(a)(iii) are precisely what Plaintiff has pled and Defendant Knauf has accepted by stipulating to

liability in this case. The MPLA, Mississippi's product liability statute, contains provisions applicable to the prosecution of defective product claims, but it does not specify the applicable statute of limitations.  For that limitations period, Miss. Code § 15-1-49 provides the answer. The law states, "all actions for which no other period of limitation is prescribed shall be commenced within three years."

The three-year clock typically begins when a plaintiff is injured, but Mississippi law provides a delayed start to the limitations filing period in certain instances when defective products are involved, particularly where there is a latency period or a latent defect.  In this instance, the limitations filing period doesn't start on the date the incident caused the injury because it is a latent defect; instead, the clock starts running when the plaintiff discovers the injury. And, as presented in Section III(B) of this Opposition, *supra*, "Chinese drywall" is a very specific type of defective product.  The defective drywall can only be identified as the cause of an injury when the manufacturer's markings are located or lab testing is completed.  Here, Plaintiff's claim was filed less than one year after discovering the presence of Knauf's defective drywall in the Affected Property via self-inspection; therefore, the claim was timely filed.

Defendants have urged the Court to grant summary judgment in this instance because, they allege, Plaintiff learned that the Affected Property contained Knauf's defective product much earlier than Plaintiff acknowledges, but that is clearly in conflict with Plaintiff's deposition and the attached declaration. (See Estate of Catherine Baber's Declaration attached hereto as Exhibit F).  Plaintiff affirmed during her deposition that discovery of the Knauf-manufactured drywall occurred during an inspection of her home on July 25, 2018.  Plaintiff also executed a verified Plaintiff Profile Form and Supplemental Plaintiff Profile Form as supporting evidence, under penalty of perjury, affirming the very same date of discovery.

### i.   Product liability claims are subject to the discovery rule in Mississippi.

Plaintiff's statute of limitations did not commence when the house was purchased in 2004 or repaired in 2006 following Hurricane Katrina.  Under Mississippi law, a cause of action accrues or begins to run for purposes of the statute of limitations upon the occurrence of the last element of the cause of action. A discovery rule exists in conjunction with Miss. Code. Ann. §15-1-49 (2010) in the case of a negligence or products liability cause of action involving latent disease. The Mississippi Supreme Court has found and continues to hold that, in the case of a latent injury, "the [three]-year limitation statute does not begin to run until by reasonable care and diligence it is discoverable and apparent that a compensable injury has been sustained." *Tabor Motor Co. v. Garrard,* 233 So.2d 811, 814 (Miss.1970); see also *Benoist Elevator Co. v. Mitchell,* 485 So.2d 1068, 1069 (Miss.1986).  The "discovery rule" operates to toll the statute of limitations until "a plaintiff 'should have reasonably known of some negligent conduct, even if the plaintiff does not know with absolute certainty that the conduct was legally negligent.'" *Boyles v. Schlumberger Tech. Corp*., 832 So.2d 503, 506(¶ 6) (Miss.2002) (quoting *Sarris v. Smith*, 782 So.2d 721, 725(¶ 13) (Miss.2001)). The statute of limitations begins to run "when the [plaintiff] can reasonably be held to have knowledge of the injury itself, the cause of the injury, and the causative relationship between the injury and the conduct of the [defendant]." *Sarris*, 782 So.2d at 723 (quoting *Smith v. Sanders*, 485 So.2d 1051, 1052 (Miss.1986)). In applying the discovery rule to cases such as this, the Mississippi Supreme Court has stated:

> The discovery rule's application has been greatly expanded over time. *See Barnes v. Singing River Hosp. Sys*., 733 So.2d 199 (Miss.1999) (Mississippi Tort Claims Act) … At issue in all cases however, is when the plaintiff discovers their [sic] injury or disease. *Sweeney v. Preston*, 642 So.2d 332, 334 (Miss.1994) (quoting *Williams v. Kilgore*, 618 So.2d 51, 55 (Miss.1992)). In *Sweeney* this Court noted that, "knowledge that there exists a causal relationship between the negligent act and the injury or disease

> complained of is ***essential*** because 'it is well-established that prescription does not run against one who has neither actual nor constructive notice of the facts that would entitle him to bring an action.'" *Id*. (emphasis added). Whether the plaintiff knew about the injury ***has typically been reserved as a jury question***. *Barnes*, 733 So.2d at 205; *[Owens-Illinois, Inc. v.] Edwards*, 573 So.2d [704,] 709 [Miss. 1990].

*PPG Architectural Finishes, Inc. v. Lowery*, 909 So.2d 47, 50 (Miss.2005) (emphasis added).

In the context of products liability cases, Mississippi, recognizes a latent-injury exception to the statute of limitations. In other words, the limitations period on a products liability claim begins to run only when the plaintiff knows or should have known of a causal connection between a distinct injury caused by the product in question during exposure. Defendants cannot demonstrate that Plaintiff, who is a layman, should have known that the home contained defective Knauf drywall or that harmful off-gassing was flowing from the drywall. Plaintiff's cause of action accrues and the limitations period begins to run when Plaintiff can reasonably be held to have knowledge of the injury. Here, that was not until 2018.

Smelling an odor or seeing tarnish on metal does not place a homeowner on notice that the home contains defective Knauf-manufactured drywall. In Mississippi, like any southern state, there could be any number of environmental sources causing a smell. In addition, there could be environmental sources causing metal to tarnish such as well water or a water supply with a high sulfur content or smog from a nearby industrial area.

Plaintiff has no expertise in construction, environmental contaminants, or defective Chinese drywall. (See Exhibit F). In this instance, with the absence of a warning by Defendant Knauf, it takes confirmation by an experienced drywall inspector to establish the existence of defective Knauf-manufactured Chinese Drywall in a property for the purpose of actual notice. "Discovery" under Mississippi law occurs when the manufacturer's markings are found, not at any point earlier. This would be the causal connection to the possible injury. Defendants have

not presented any tangible evidence that Plaintiff's discovery responses regarding discovery of the defective Knauf product are incorrect and the date of discovery is some earlier identifiable date.  Defendants are free to argue otherwise, but the issue is clearly one for a jury to decide according to the Mississippi Supreme Court; therefore, this Court must find in favor of the nonmovant and deny summary judgment..

> ii.    ***Defective Chinese-manufactured drywall is a latent defect and Plaintiff had no obligation to hire a Chinese drywall inspector before the date of discovery.***

Defective Chinese-made drywall is not an obvious defect easily seen by a homeowner. It is hidden inside walls or buried under insulation in attics, in some instances.  With the manufacturer's ink stamp markings concealed inside walls, the defect is considered "latent" according to Mississippi law.  Since at least 1923, Mississippi courts have defined a "latent defect" as one which could not be discovered by the exercise of ordinary diligence.  *See Mincy v. Crisler*, 96 So.162, 163 (Miss. 1923).  Ordinary diligence in examining a property would reveal patent defects (i.e., those that can be discovered by an ordinary inspection).  In 2005, the Mississippi Supreme Court provided us with a little more clarity, stating that a latent injury "is defined as one where the plaintiff will be precluded from discovering harm or injury because of the secretive or inherently undiscoverable nature of the wrongdoing in question ... [or] when it is unrealistic to expect a layman to perceive the injury at the time of the wrongful act." *PPG Architectural Finishes, Inc. v. Lowery*, 909 So.2d 47, 50 (Miss.2005).  To be latent, an injury "must be undiscoverable by reasonable methods." *Id*. at 51. Discovery of defective Chinese-manufactured drywall is undiscoverable without employing special methods such as an inspection by an experienced defective Chinese drywall inspector.

In *Wayne Gen. Hosp. v. Hayes,* the Mississippi Supreme Court ruled that "to claim benefit of the discovery rule, a plaintiff must be reasonably diligent in investigating the circumstances surrounding the injury. The focus is on the time that the [Plaintiff] discovers, or should have discovered by the exercise of reasonable diligence, that [s]he probably has an actionable injury." *Wayne Gen. Hosp. v. Hayes*, 868 So.2d 997, 1001 (Miss.2004) (citations and internal quotations omitted).  The markings on the drywall itself, found inside the walls or buried under insulation in an attic, would certainly qualify as having a secretive or inherently undiscoverable nature; therefore, it is unrealistic to expect Plaintiff, a layman, to perceive or identify the manufacturer responsible for the latent defect.

A Chinese drywall inspection is not a customary search of the home.  It is also expensive. The customary fee for a Chinese drywall specialized inspection in Mississippi is between $500.00 and $2,000.00.   Locating defective Chinese drywall and determining the identity of the manufacturer requires specialized knowledge and experience.  It requires specialized skill to cut holes in drywall at the appropriate locations; it requires utilizing specialized tools and devices; and, in many cases, it requires sending samples to a lab for specialized testing.  Finding defective drywall is rarely done through a casual observation of the premises or by using one's ordinary senses.

This latent defect standard under Mississippi law is contrary to Defendant's argument that an unidentified smell intermittently identified in a home or noticing tarnish on metal in the home places a duty on the homeowner to hire a Chinese drywall inspector immediately; consequently, this Court should deny Defendants' motion for summary judgment and allow a trier of fact to determine whether Plaintiff's actions were reasonable.

**D.    Remediation damages remain an unresolved issue of material fact.**

The Court can look to its prior orders for one area of damages at issue – calculation of remediation costs.  Previously, this Court issued multiple orders during the consolidated pre-trial stage of the MDL proceedings instructing the parties that full remediation damages are appropriate for plaintiffs that establish defective Chinese-manufactured drywall in the living space of their home. (See, e.g., Doc. 20741).  The Court even adopted a formula to arrive at the remediation damages (square footage of a home multiplied by the appropriate R.S. Means cost per square foot).  Defendants have not stipulated to remediation damages to date and have engaged an expert to present testimony at trial regarding their calculation of remediation damages by another method; consequently, this is a genuine issue of material fact that will be decided by the trier of fact.

**E.    All non-remediation damages remain unresolved and should be decided by a trier of fact.**

**i.    *Plaintiff's loss of use & enjoyment claim is allowed under Mississippi law and the appropriate damages should be decided by a trier of fact.***

Plaintiff has asserted a claim for loss of use and enjoyment of the property due to the presence of defective Chinese drywall manufactured by Knauf Defendants.  The Knauf Defendants have acknowledged that their product is defective and stipulated to liability.  In Exhibit C, the Supplemental Plaintiff Profile Form, Plaintiff assigned a value believed to be reasonable and appropriate for loss of use and enjoyment based on past verdicts in the Chinese drywall litigation (See Page 6 of SPPF).  Loss of use and enjoyment damages are non-pecuniary in nature and the appropriate damages should be assessed by the trier of fact.

Loss of use and enjoyment of real property is a recognized property interest in Mississippi.  *See Johnson v. City of Canton*, 194 So.3d 161, 169 (Ct. App. Miss. 2015)

(additional citations omitted). Plaintiff is entitled to recover damages under Mississippi law for loss of use and enjoyment of a residential property.  "Damage inflicted upon the property is not restricted: it is 'without limitation or qualification,' permitting due compensation for any damage incurred, no matter the type or extent." *City of Tupelo v. O'Callaghan*, 208 So.3d 556, 563 (Miss. 2017).  Physical discomfort in the use of property, like insecurity and lack of safety in the use of property, raises the specter of loss of use and damages are to be assessed by the trier of fact. *Id*.  Plaintiff's assertion of loss of use damages in the SPPF, coupled with the testimony at her deposition is sufficient to survive a summary judgment challenge.  As loss of use and enjoyment is non-pecuniary in nature, there are no documents necessary for the Defendants to understand these damages; furthermore, the disagreement among the parties regarding the appropriate valuation of loss of use damages makes this the very type of issue of material fact that a trier of fact must resolve.

This Court has also previously addressed loss of use and enjoyment, stating, "[t]he Taishan property owners will still have an opportunity at later phases to seek damages for alternative living expenses and loss of use and enjoyment of their properties. Those issues can be addressed and resolved later when the Court remands the cases in this MDL."  *In Re Chinese Manufactured  Drywall Prod. Liab. Liti.,* 706 F. Supp. 2d 655, 693 (E.D. La. 2010); *See In re Depuy Orthopedics*, *Inc*., 870 F.3d 345 (5th Cir. 2017). This Court does not intend to assume the transferor courts' duties after pre-trial matters are completed. *Id*.

Defendants have argued that loss of use and enjoyment is appropriate only if a plaintiff is unable to live in the home. Plaintiff is not required to prove that the Affected Property was not inhabitable in order to recover for loss of use an enjoyment under Mississippi law.  Again, the parties differ in their valuation, but it is ultimately the trier of fact that will assess the appropriate

loss of use and enjoyment damages.  Clearly, with regard to loss of use and enjoyment, a genuine issue of material fact exists, and summary judgment is due to be denied.

> ii. *A genuine issue of material fact exists for Plaintiff's consequential damages, including personal property and diminution in property value.*

Plaintiff has asserted a claim for damaged personal property that is alleged to be caused by off-gassing from the defective Chinese drywall manufactured by Knauf Defendants.  As previously noted, the Defendants have stipulated to liability in this case.  In Exhibit D (See Plaintiff's itemization of personal property damages in Exhibit 14 to the PFS), the Plaintiff Fact Sheet, Plaintiff provided the value of personal property lost during ownership of the Affected Property and assigned a value believed to be reasonable and appropriate based on a variety of sources such as receipts, invoices, internet research or memory.  Plaintiff's justification for the damaged personal property was offered through the PFS and through testimony at deposition.

In addition to the testimony and documentary evidence offered thus far, Plaintiff will offer expert testimony at trial regarding the effect of drywall off-gassing on components of the home and personal property susceptible to corrosion. Defendant Knauf should be equitably estopped from arguing that Plaintiff's lack of documentation to support her personal property or other consequential damages when Plaintiff detrimentally relied upon the lack of warning and/or lack of a product recall related to the Affected Property.  The parties undoubtedly assign a different value to these consequential damages, but given that the omission of a warning results in the trier of fact accepting Plaintiff's testimony in the light most favorable to Plaintiff, sufficient support exists to overcome this summary judgment challenge.

Calculation of the diminution in value of real property is necessary under Mississippi law to determine the appropriate damages payable to Plaintiff.  Generally, damages involving real property are measured by the diminution in the value of the property, repairing or restoring the

property to its condition prior to the injury, referred to as the restoration rule. Where the injury to real property is merely temporary, or where the property can be restored to its original condition, the measure of damages may be, or should include, the cost of repairs or restoration, as where the injury is susceptible of remedy at a moderate or reasonable expense and the cost of restoration may be shown with reasonable certainty, or where the cost of restoration is less than the diminution in the value of the property. *Bynum v. Mandrel Industries, Inc*., 241 So.2d 629, 635 (Miss. 1970).  If the cost of repairs or restoration is less than the diminution in value, then the law requires that damages be measured by the costs of repairs or restoration. If the cost of repairs or restoration exceeds the diminution in value or if repairing or restoring the property is impracticable, then the law requires that damages be measured by the diminution in value.

Plaintiff is not a property appraiser and cannot provide this valuation.  Plaintiff will rely upon fact witnesses at trial to provide the trier of fact with the necessary information upon which a correct verdict can be entered.  It is Plaintiff's position that Defendants motion fails to note this necessity under Mississippi law; thus, this Court should deny Defendant's summary judgment challenge in this respect and refer this issue to the transferor court to address during pretrial proceedings.

This Court previously considered consequential damages such as lost rental income and personal property damage and found that a plaintiff's damages are not limited to the diminution in value of the property and may include damages for loss in use and other consequential injuries.  *In Re Chinese Manufactured  Drywall Prod. Liab. Liti.,* 706 F. Supp. 2d 655, 692 (E.D. La. 2010).  This Court's ruling was consistent with the Restatement of Torts regarding compensation for consequential damages.  See Restatement (Second) of Torts § 929 (1979) (providing that damages for injury to real property include compensation for loss of use of the

property and other consequential injuries in addition to any permanent property damage, whether measured by restoration or market value);  5C Michie's Jurisprudence, Damages, § 32 (2006) (rule encompasses recovery of expenses incidental to irreparable injury); *accord Bailey v. Missouri P.R. Co.,* 383 So. 2d 397, 402, 1980 La. App. LEXIS 3636 at *15 (1980) (tortfeasor must compensate his victim "for even the most improbable severe consequences of his wrongful act."), citing, *Gallick v. B O R.R.,*83 S.Ct. 659 (U.S. 1963).  Plaintiff requests this same standard to be applied in this instance.  Plaintiff's damaged personal property items are a consequential effect of the off-gassing from the defective drywall; therefore, a jury could find in favor of Plaintiff that those damages are recoverable under Mississippi law.  A genuine issue of material fact exists regarding personal property alleged to be damaged by off-gassing caused by Defendant Knauf's defective drywall.

Lack of an adequate notice and warning by Defendant Knauf has led Plaintiff to discard receipts, invoices, and personal property items affected by the off-gassing by the defective drywall.  It has led to Plaintiffs absorbing alternative living expenses after the defective drywall was discovered in her home.  And, it has also led to foreclosures or short sales, because a timely, adequate notice was not provided ahead of the deadline to participate in the 2013 Knauf Settlement Class, approved by this Court on February 7, 2013.  Plaintiff is now in this particular action, filed in 2014 and unresolved in 2020, as a consequence.  Plaintiff should be afforded the opportunity to present evidence to a trier of fact and summary judgment should be denied.

**F. All Mississippi Plaintiffs' claims contained in the *Bennett* action are protected by the equitable tolling principles of *American Pipe* if discovery occurred on or after November 13, 2011.**

On November 13, 2014, the *Bennett* class action was filed in the United States District Court for the Northern District of Alabama.  It was filed as a class action with the class definition

including all property owners in the United States of America that have claims against the Knauf Defendants for their defective Chinese-manufactured product.  On January 27, 2020, this Court denied class certification on Defendant's motion. (Rec. Doc. 22528).  This was the first instance that certification of a nationwide class was denied by a court; thus, cross-jurisdictional equitable tolling of the limitations period should afford all Plaintiffs protection during the pendency of the class action.

### i.   Federal Causes of Action Employ Cross-Jurisdictional Tolling.

In federal court, "the commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action." *Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345, 353-54 (1983). *Crown, Cork* built upon *American Pipe & Const. Co. v. Utah*, 414 U.S. 538 (1974), where the Supreme Court held that there were no longer any "conceptual or practical obstacles in the path of holding that the filing of a timely class action complaint commences the action for all members of the class as subsequently determined" because, under Rule 23, a class action is "a truly representative suit designed to avoid, rather than encourage, unnecessary filing of repetitious papers and motions." *American Pipe*, 414 U.S. at 550.

Tolling on this basis does not conflict with "the functional operation of a statute of limitations" because the filing of the class action supplies defendants with "the essential information necessary to determine both the subject matter and size of the prospective litigation," thereby fulfilling the rationale behind limitations periods. *Id*. at 554, 555. *American Pipe* tolling thus seeks to further the "efficiency and economy of litigation" purposes of the class action device by avoiding the "needless multiplicity of actions." *Crown, Cork*, 462 U.S. at 349, 351.

       *ii.*      ***Few States Have Addressed Cross-Jurisdictional Tolling, But the Trend Favors Adoption of Tolling.***

A majority of states have adopted a class action tolling rule that largely follows *American Pipe* and *Crown, Cork*. *See Tigg v. Pirelli Tire Corp.,* 232 S.W.3d 28, 33 (Tenn. 2007) (surveying cases); *Staub v. Eastman Kodak Co.*, 726 A.2d 955, 963 (N.J. Super. Ct. App. Div. 1999) (same). Few states, however, have addressed the issue of cross-jurisdictional tolling for class actions. As a general matter, "cases rejecting cross-jurisdictional tolling (particularly those that were decided early in the development of this doctrine) tend to emphasize a risk that a state will attract individual out-of-state plaintiffs after a failed federal class action." *In re Libor-Based Fin. Instruments Antitrust Litig.*, No. 11 MDL 2262 NRB, 2015 WL 4634541, at *128 (S.D.N.Y. Aug. 4, 2015), *amended*, No. 11 MDL 2262 (NRB), 2015 WL 13122396 (Oct. 19, 2015) (*citing, e.g.,  Portwood v. Ford Motor Co.,* 701 N.E.2d 1102, 1104 (Ill.1998), *cert. denied,* 525 U.S. 1148 (1999). On the other hand, "cases adopting cross-jurisdictional tolling point out that rejecting cross-jurisdictional tolling creates a risk that individual plaintiffs will file duplicative 'placeholder'" suits to preserve their rights while a class action is pending elsewhere. *Id*. (*citing, e.g., Dow Chem. Corp. v. Blanco*, 67 A.3d 392, 395 (Del. 2013)); *see also Quinn v. Louisiana Citizens Prop. Ins. Corp.*, 2012-0152 (La. 11/2/12), 118 So. 3d 1011, 1021-22 (outlining same rationales).

   After conducting its own survey, the *Libor* court concluded that the states are evenly divided on cross-jurisdictional tolling, that "[c]ross-jurisdictional tolling may even be the majority rule among state courts that have decided the question, and [that] the trend is in favor of tolling." *Libor*, 2015 WL 4634541, at *129. It added that, in states where intra-jurisdictional tolling is accepted, "the best prediction is that a state would recognize cross-jurisdictional tolling." *Id*. After all, it reasoned, the same considerations and same notice obtain regardless of

the place where the case is filed, while the "parties' parades of docket-control horribles are unpersuasive," given "[m]ost states have a general 'borrowing rule' that prevents an out-of-state plaintiff from filing if his suit would be barred in his home state" and that "[p]ersonal jurisdiction may also bar many claims filed by non-resident plaintiffs against non-resident defendants." *Id*.

### iii.   The Class Action Fairness Act Establishes a Nationwide Policy Favoring the Filing and Maintenance of Class Action Lawsuits in Federal Court.

It is well-settled that CAFA was enacted to facilitate the adjudication of multi-state class actions in federal court. *Dart Cherokee Basin Operating Co. v. Owens,* 135 S.Ct. 547, 554 (2014); *Standard Fire Ins. Co. v. Knowles,* 568 U.S. 588, 595 (2013) ("CAFA's primary objective" is to "ensure 'Federal court consideration of interstate cases of national importance'") (*quoting* §2(b)(2), 119 Stat. 5); S. REP. NO. 109-14, at 43 (2005) (CAFA's "provisions should be read broadly, with a strong preference that interstate class actions should be heard in a federal court"). The scant caselaw on cross-jurisdictional tolling seems to have predated or largely ignored the import and effect of CAFA. As a practical matter, state law diversity cases that would have previously been filed and litigated in state court are now all being filed and litigated in federal court. And if it is indeed federal policy that such state law class actions be filed and adjudicated in federal court as matters of "national importance," why would the federal policy underlying *American Pipe* and *Crown, Cork* not similarly apply?[3]

In the Fifth Circuit, tolling under *American Pipe* is afforded to Mississippi residents who are "indisputably members of the putative class seeking to recover on the identical cause of

---

[3] *See, e.g., Vaught v. Showa Denko K.K.,* 107 F.3d 1137, 1147 (5th Cir. 1997) (pre-CAFA) ("the Texas non-tolling rule (stated in *Bell v. Showa Denko K.K.*, 899 S.W.2d 749 (Tex. App. 1995)) could arguably be displaced because it conflicts with the well-established federal tolling practice promulgated in *American Pipe* and *Crown, Cork & Seal*"). *See also, e.g.,* 28 U.S.C. § 1367(d) (tolling limitations periods for state law claims originally joined in federal court).

action." *Boone v. Citigroup, Inc.,* 416 F.3d 382, 394 (5th Cir. 2005) (*citing Piney Woods Country Life Sch. v. Shell Oil Co.,* 170 F.Supp.2d 675, 677 (S.D. Miss. 1999)).  Thus, equitable tolling should be extended to Plaintiff and protect her claim from a statute of limitations defense because both the discovery of this injury and the filing of her claim occurred during the pendency of *Bennett* before class certification was denied.

## IV.    CONCLUSION

This lawsuit was filed because Defendant Knauf manufactured defective drywall found in Plaintiff's property.  The Knauf Defendants have stipulated that their drywall product is indeed defective.  Although counsel for Defendant Knauf has crafted an argument for summary judgment, the facts and law in this instance simply do not support their legal position or their motion.

Plaintiff has provided ample information through pleadings and the discovery process for the Defendants to understand each claim asserted and the areas of damages being sought.  Most claims and damages have not been challenged by Defendants through this motion. (See Section I(B) *supra* for the claims and damages stated in the Fifth Amended Complaint).  Plaintiff has provided information to Defendants through responses to discovery requests directing Defendants to the Fifth Amended Class Action Complaint for the areas of damages that have neither been addressed nor challenged by Defendants to this point.  And, when taken in a light most favorable to the non-movant, in this case Plaintiff, the unresolved areas of damages present genuine issues of material fact that must be decided by a trier of fact when this case is remanded to the transferor court.

The exhibits, including the deed, plaintiff profile form, supplemental plaintiff profile form, plaintiff fact sheet and Plaintiff declaration that are attached to this Opposition demonstrate

that, at a minimum, Plaintiff's claims are actionable and multiple issues of material fact exist to defeat Defendants' summary judgment challenge.

For the foregoing reasons, Defendants' Motion for Summary Judgment should be denied.


Respectfully submitted by:

/s/ *James V. Doyle, Jr.*

James V. Doyle, Jr.
DOYLE LAW FIRM, PC
2100 Southbridge Pkwy., Suite 650
Birmingham, AL 35209
Tele: 205-533-9500
Fax: 844-638-5812
jimmy@doylefirm.com

*Attorney for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing Plaintiffs Estate of Catherine Baber's Opposition to Defendant Knauf's Motion for Summary Judgment has been served on Plaintiffs' Liaison Counsel, Russ Herman, and Defendants' Liaison Counsel, Kerry Miller, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047, on this 10th day of February, 2020.


/s/ *James V. Doyle, Jr.*
James V. Doyle, Jr.
DOYLE LAW FIRM, PC