UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL NO. 2047<br><br>SECTION: L |
| THIS DOCUMENT RELATES TO:<br><br>*Elizabeth Bennett, et al. v. Gebrueder Knauf Verwaltungsgesellschaft, KG, et al.*<br>2:14-cv-02722-EEF-JCW | JUDGE ELDON FALLON<br><br>MAG. JUDGE WILKINSON |

**<u>PLAINTIFF MARDECHRIA CHARLES' OPPOSITION</u>**

**<u>TO DEFENDANT KNAUF'S MOTION FOR SUMMARY JUDGMENT</u>**

# Table of Contents

**Page**

I.   STATEMENT OF MATERIAL FACTS……………………….…………   1

    A.   MDL-2047………………………………………………….………   1

    B.   The *Bennett* Class Action ………………………...……………………...   3

    C.   Plaintiff Mardechria Charles in the *Bennett* Complaint ……………...   4

II.   STANDARD OF REVIEW…………………………………………….…   5

III.   ARGUMENT……………………………………………………………   5

    A.   Plaintiff's product liability claims are timely filed ……………………...   7

    B.   Product liability claims are subject to the discovery rule in
        Louisiana ………………………………………………………   9

    C.   It is settled Louisiana law that defective Chinese-manufactured
        drywall is a latent defect …………………………………………..   13

    D.   Knauf had a duty to warn Plaintiff regarding defective nature of its
        drywall after the sale but chose to remain silent ……………………...   14

    E.   Equitable estoppel prevents Defendants from benefitting due to
        their choice to intentionally not warn consumers about their
        defective drywall …………………………………………………   16

    F.   Plaintiff's Loss of Use & Enjoyment Claim is Appropriate Under
        Louisiana Law …………………………………………………   17

    G.   Plaintiff's consequential damages, including personal property
        damages and diminution in property value are to be resolved by a
        trier of fact under Louisiana Law …………………………….   19

    H.   Defendants have provided this Court with no basis for summary
        judgment under the Louisiana Product Liability Act (LPLA) …….   20

    I.   Defendant Knauf failed to establish Plaintiff assumed the risk that
        the home contained defective Knauf-manufactured drywall at time
        of purchase …………………………………………………….   21

J.  Defendants' clean hands doctrine affirmative defense is completely without merit based on all investigations that have now concluded ..  22

IV.  CONCLUSION…………………………………………………………..  24

Table of Authorities

**Cases**                                                                                      **Page**

*Abadie v. Markey*,                                                                              24
    97-684 (La.App. 5 Cir. 3/11/98), 710 So.2d 327

*Allvend, Inc. v. Payphone Commissions Co.*,                                                     23, 24
    00-0661, p. 6 (La.App. 4 Cir. 5/23/01),
    804 So.2d 27

*Anderson v. Liberty Lobby, Inc.*,                                                               5
    477 U.S. 242 (1986)

*Arnold v. Town of Ball*,                                                                        16
    651 So. 2d 313 (La. Ct. App. 1995)

*Bailey v. Missouri P.R. Co.*,                                                                   20
    383 So. 2d 397, 1980 La. App. LEXIS 3636 (1980)

*Bell v. Uniroyal Inc.*,                                                                         15
    696 So.2d 268 (La. Ct. App. 4th Cir.1997)

*Carter v. Haygood*,                                                                             9
    892 So.2d 1261 (La. 2005)

*Celotex Corp. v. Catrett*,                                                                      5
    477 U.S. 317 (1986)

*Chastant v. SBS-Harolyn Park Venture*,                                                          10
    510 So. 2d 1341 (La. Ct. App. 1987)

*Clark v. Coats & Clark, Inc.*,                                                                  5
    929 F.2d 604 (11th Cir. 1991)

*Cole v. Mitchell*,                                                                              23
    73 So.3d 452, 457, 46546 La.App.
    2 Cir. 9/21/11 (La. Ct. App. 2011)

*Crow v. Laurie*,                                                                                11
    729 S.2d 703 (La.App. 1st Cir. 1999)

*Dorry v. Lafleur*,                                                                              22
    399 So.2d 559 (La.1981)

*Eagle Pipe & Supply, Inc. v. Amerada Hess Corp.*,    18
    79 So. 3d 246 (La. 2012)

*Fitzpatrick v. City of Atlanta*,    5
    2 F.3d 1112 (11th Cir. 1993)

*Gallick v. B O R.R.,*    20
    83 S.Ct. 659 (U.S. 1963)

*Guillie v. Comprehensive Addict. Programs*,    23
    98-2605, p. 8 (La.App. 4 Cir. 4/21/99, 735 So.2d 775

*Harlan v. Roberts*,    8
    565 So.2d 482 (La.App.2d Cir.1990)

*Hogg v. Chevron USA Inc.*,    10
    45 So.3d 991 (La. 2010)

*In Re Chinese Manufactured  Drywall Prod. Liab. Liti.,*    18, 20
    706 F. Supp. 2d 655 (E.D. La. 2010)

*In re Depuy Orthopedics*, *Inc*.,    18
    870 F.3d 345 (5th Cir. 2017)

*Johnson v. CHL Enterprises*,    12
    115 F. Supp. 2d 723 (W.D. La. 2000)

*Jordan v. Employee Transfer Corp*.,    8
    509 So.2d 420 (La.1987)

*La Plaque Corp. v. Chevron United States A. Inc*.,    8
    638 So.2d 354 (La. Ct. App. 1994)

*Lucas v. Commercial Union Insurance Company*,    7
    198 So.2d 560 (La.App. 1st Cir.1967)

*Nida v. State Farm Fire & Casualty Company*,    13
    454 So.2d 328 (La.App. 3 Cir.1984)

*Pursell v. Kelly,*    11
    244 La. 323, 152.So.2d 36 (1963)

*Reed v. General Motors Corp.*,    7
    400 So.2d 919 (La.App. 1st Cir.1981)

*Richards v. Choice Hotels Int'l Inc.*                                              8, 9
    142 So.3d 249 (La.App. 5th Cir. 2014)

*Ross v. C. Adams Const. & Design, L.L.C.*,                                          13
    70 So.3d 949 (La. Ct. App. 2011)

*Shirey v. Campbell*,                                                                16
    151 So.2d 557 (La. Ct. App. 1963)

*Simmons v. Board of Com'rs*,                                                        17
    624 So.2d 935 (La.App. 2d Cir. 1993)

*Smith v. H.J. Landreneau Building Contractor, Inc.*,                                10
    426 So.2d 1360 (La.App. 3 Cir. 1983)

*Stapleton v. Kawasaki Heavy Industries, Ltd.*,                                      15
    608 F.2d 571 (5th Cir.1979)

*Templeman Bros. Lumber Co., Inc., v. Fairbanks, Morse Co.*,                         13
    129 La. 983, 57 So. 309 (La.1911)

*Tolan v. Cotton*,                                                                    5
    134 S. Ct. 1861 (2014)

*Trahan v. BP Am. Prod. Co.*,                                                        14
    209 So. 3d 166 (La. Ct. App. 2016)

*Tuminello v. Mawby*,                                                                14
    57 So. 2d 666 (La. 1952)

*Walters v. Metropolitan Erection Co.*,                                             23
    94-0162, 94-0475 (La.App. 4 Cir. 10/27/94),
    644 So.2d 1143

*Watters v. Dep't of Soc. Servs.*,                                                   8
    102 So.3d 118 (La. 2012)

*Wilkerson v. Dunham*,                                                               8
    218 So.3d 743 (La. Ct. App. 2017)

*Winterrowd v. Travelers Indemnity Co.*,                                            14
    462 So.2d 639 (La.1985)

*Wooley v. Lucksinger*,                                                             23
    09-0571 (La.04/01/11)

**Louisiana Code**

| | |
|---|---|
| La.C.C. Art. 667 | 17 |
| La.C.C. Art. 2315 | 17, 18 |
| La.C.C. Art. 2534 | 9, 13 |
| La.C.C. Art. 2545 | 9 |
| La.C.C. Art. 2546 | 9 |

**Other**

| | |
|---|---|
| Fed. R. Civ. P. 56(a) | 5 |
| 5C Michie's Jurisprudence, Damages, § 32 (2006) | 29 |
| Restatement (Second) of Torts § 929 (1979) | 20 |

Plaintiff Mardechria Charles (herein "Plaintiff"), by and through the undersigned counsel of record, oppose the motion for summary judgment (Doc. 22368) filed by the Knauf Defendants.  As grounds, Plaintiffs offer the following:

## I.    STATEMENT OF MATERIAL FACTS

### A.  MDL-2047.

This litigation arises from alleged property damage and caused by the presence of Chinese drywall in homes and other buildings. Hurricanes Katrina and Rita devastated the Gulf Coast in 2005. These disasters, coinciding as they did with a boom in new housing construction, helped precipitate a shortage of drywall for the construction and reconstruction of homes in the United States. As a result, from approximately 2005 to 2008, Chinese drywall entered the United States market, changing hands in the chain of commerce, and ultimately finding its way into thousands of homes and buildings in the United States, primarily in Florida, Louisiana, Alabama, Mississippi, Texas, and Virginia.  Sometime after the installation of Chinese drywall in these properties, homeowners, residents, and occupants began to notice and complain of odd odors, corrosion of metal components, failure of electronics and appliances, and in some cases, physical ailments, such as nose bleeds, skin irritation, and respiratory problems. In response to these complaints, a number of governmental agencies and special interest groups, notably the federal Consumer Products Safety Commission and the Department of Housing and Urban Development, began to investigate, conduct testing, and issue remediation protocols related to Chinese drywall.

The present litigation commenced with the filing of lawsuits in 2009 in both federal and state courts by property owners and occupants damaged by the Chinese drywall installed in their residences and businesses, in addition to suits filed by some homebuilders who repaired these

properties. Defendants and declaratory judgment plaintiffs include homebuilders, developers, installers, retailers, realtors, brokers, suppliers, importers, exporters, and distributors, as well as their insurers and the insurers of homeowners, who were involved with the Chinese drywall in the affected properties. Because of the commonality of facts in the various federal lawsuits, the litigation was designated as Multi-District Litigation 2047 by the Judicial Panel on Multidistrict Litigation. On June 15, 2009, the Panel transferred all federal actions alleging damages from Chinese drywall to the U.S. District for the Eastern District of Louisiana for coordinated and consolidated proceedings.

Since the inception of MDL 2047, numerous cases were consolidated, containing thousands of claims; in addition, the Court issued numerous opinions, pretrial orders, and minute entries; the Court has facilitated mediations; and in the Court thousands of documents have been filed. Additionally, the Court has corresponded and coordinated with a number of state and federal court judges who also preside over related Chinese drywall cases.  The discovery revealed that the manufacturers of the drywall in question generally fell into two groups: the Knauf entities[1] and the Taishan entities[2]. After one of the Taishan entities was held in preliminary default, the Court conducted a bellwether evidentiary default hearing.  Shortly thereafter, the Court held its first bellwether, bench trial involving the Knauf entities. With regard to these bellwether proceedings, the Court issued detailed findings of fact and conclusions of law, concluding that the Chinese drywall at issue was in fact defective due to its release of

---

[1]  The term "Knauf entities" includes: Knauf Plasterboard (Tianjin) Co., Ltd. ("KPT"), Knauf Plasterboard (Wuhu) Co., Ltd., Guangdong Knauf New Building Material Products Co., Ltd., Knauf Gips KG, Gebr. Knauf Verwaltungsgesellschaft KG, Knauf International GmbH, Knauf Insulation GmbH ("KI"), Knauf UK GmbH, Knauf AMF GmbH & Co. KG, Knauf do Brasil Ltda. and PT Knauf Gypsum Indonesia.

[2]  The term "Taishan entities" includes: Taishan Gypsum Co. Ltd. and Taian Taishan Plasterboard Co. Ltd., among others.

corrosive gasses, requiring remediation of properties containing this drywall. The Court also issued a remediation protocol.

An initial settlement was reached in the Knauf portion of the litigation in October 2010, when the PSC and the Knauf entities entered into a Court-approved pilot program for remediation of homes containing drywall manufactured by Knauf. The pilot program led to a broader settlement agreement that extended the pilot program and provided remediation benefits to plaintiffs with filed claims.  On December 11, 2012, the final Knauf-related agreement, labeled, "Third Amended Settlement Agreement Regarding Claims Against the Knauf Defendants In MDL No. 2047" was filed with the Court.  A preliminary approval of the agreement was issued at the time, but no fairness hearing was immediately held and no certification of a proposed class was approved.  Instead, the Court later held a consolidated fairness hearing for the five interrelated settlements: L&W; Banner; INEX; Global; and Knauf. Ultimately, on February 7, 2013, the Court certified a settlement class that included the Knauf entities and notice was published.  The Knauf settlement class provided benefits to participants limited to remediation.  All other claims were omitted including those claims for personal property, negligence, strict liability, consumer protection acts, nuisance, unjust enrichment, or non-pecuniary claims were settled with the Knauf entities.

### B.  The *Bennett* Class Action.

The original *Bennett* Complaint was filed on November 13, 2014, in the United States District Court for the Northern District of Alabama and was subsequently transferred and consolidated into MDL 2047 via a conditional transfer order issued by the Judicial Panel on Multidistrict Litigation. The Complaint was amended multiple times, primarily to amend the parties.  The Fifth Amended Class Action Complaint was filed on March 6, 2018, and includes

the following claims: 1) negligence; 2) negligence per se; 3) strict liability; 4) breach of express and/or implied warranty; 5) Redhibition (by Louisiana plaintiffs); 6) Louisiana Products Liability Act (by Louisiana plaintiffs); 7) private nuisance; 8) negligent discharge of a corrosive substance; 9) unjust enrichment; 10) violation of the Louisiana Deceptive and Unfair Consumer Protection Law; 11) equitable injunctive relief and medical monitoring.  In the prayer for relief, Plaintiffs seek: certification of the class action; order appointing named plaintiffs as class representatives; compensatory, statutory, and/or punitive damages; pre- and post-judgment interest as allowed by law; injunctive relief; an award of attorney's fees as allowed by law; and award of taxable costs; and, any other relief a court deems just and proper.  On January 27, 2020, this Court issued an order denying class certification.

   **C.  Plaintiff Mardechria Charles in the *Bennett* Complaint.**

   Plaintiff Mardechria Charles own a property in the State of Louisiana that contains drywall manufactured by the Knauf Defendants that is alleged to be defective.  Plaintiff's claim was filed in the *Bennett* complaint on November 13, 2014.  The street address of Plaintiffs' property at issue is: 116 Dufresne Drive, Wallace, LA 70049 ("Affected Property").  Plaintiff asserts all claims in the Fifth Amendment Complaint and seeks all relief available under current Louisiana law.

   Plaintiff purchased the Affected Property on June 18, 2007 (Cash Sale is attached as Exhibit A).  Plaintiff completed a Plaintiff Profile Form (Exhibit B) that verified the date that the Knauf drywall was discovered on January 25, 2014.  Plaintiffs also completed a Supplemental Plaintiff Profile Form (Exhibit C) and a Plaintiff Fact Sheet (Exhibit D).  Plaintiff later engaged Healthy Home Solutions, LLC to conduct an inspection of the pictures of defective drywall in

Affected Property.  A copy of the inspection summary letter is attached (Exhibit F).  The HHS letter confirms the presence of defective Knauf-manufactured drywall in the home.

Plaintiff Mardechria Charles was deposed by counsel for Knauf on June 26, 2019, in New Orleans, Louisiana, and affirmed the responses in the three discovery forms, including the date of discovery of the defective Knauf-manufactured drywall in the Affected Property.

## II. STANDARD OF REVIEW

Summary judgment is only warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In making the determination, "all justifiable inferences are to be drawn in [the non-movant's] favor." *Tolan v. Cotton*, 134 S. Ct. 1861, 1863 (2014) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). The movant may argue that "there is an absence of evidence to support the nonmoving party's case," *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986), but "it is never enough simply to state that the non-moving party cannot meet its burden at trial," *Clark v. Coats & Clark, Inc*., 929 F.2d 604, 608 (11th Cir. 1991). If the non-moving party provides more than a mere "scintilla of evidence" demonstrating that "the jury could reasonably find for the plaintiff," it will defeat the motion. *Anderson*, 477 U.S. at 252. This can be done by pointing out where the record "contains supporting evidence . . . which was 'overlooked or ignored' by the moving party." *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1116 (11th Cir. 1993) (citing *Celotex*, 477 U.S. at 332 (Brennan, J., dissenting)).

## III.   ARGUMENT

In order to prevail with a summary judgment motion, Defendants must demonstrate that there are no issues of material fact to be decided by a trier of fact in the transferor court. Defendants have stipulated to liability; therefore, the calculation of appropriate damages for this

Plaintiff is all that remains unless Defendant presents some persuasive legal basis for dismissal. In this instance, they have not done so.

Plaintiff has provided ample information through pleadings and the discovery process for the Defendants to understand each claim asserted and the areas of damages being sought. Most claims and damages have not been challenged by Defendants through this motion. (See Section I(B) *supra* for the claims and damages stated in the Fifth Amended Complaint). For the purpose of this motion, the Court need only find the existence of a genuine issue of material fact to deny Defendants' motion.

 The Court can look to its prior orders for one area of damages at issue – calculation of remediation damages. Previously, this Court issued multiple orders during the consolidated pre-trial stage of the MDL proceedings instructing the parties that full remediation damages are appropriate for plaintiffs that establish defective Chinese-manufactured drywall in the living space of their home. (See, e.g., Doc. 20741). The Court even adopted a formula to arrive at the remediation damages (square footage of a home multiplied by the appropriate R.S. Means cost per square foot). Defendants have not stipulated to full remediation damages to date; instead, Defendants have engaged an expert to present testimony at trial regarding their calculation of less than full remediation damages utilizing another method; consequently, a genuine issue of material fact exists that will be decided by the trier of fact.

Plaintiff also provided responses to discovery requests directing Defendants to the Fifth Amended Class Action Complaint for the areas of damages that have neither been addressed nor challenged by Defendants to this point. And, when taken in a light most favorable to the non-movant, in this case the Plaintiff, the unresolved areas of damages present genuine issues of material fact that must be decided by a trier of fact.

This lawsuit was filed because Defendant Knauf manufactured defective drywall found in Plaintiff's Affected Property (See attachments to Plaintiff Fact Sheet, Exhibit D).  The exhibits, including the cash sale, plaintiff profile form, supplemental plaintiff profile form, plaintiff fact sheet supporting documents demonstrate that, at a minimum, Plaintiff's claims are sufficiently supported and several genuine issues of material fact exist that defeat Defendants' motion.

### A.      Plaintiff's product liability claims are timely filed.

Louisiana law establishes a one-year prescription period for filing claims related to defective Chinese drywall from the date of discovery.  In 1988, the Louisiana Court of Appeals issued an opinion clarifying the law applicable to defective product applicable in this case:

> "The prescriptive period applicable to product liability cases is one year from the date damages are sustained. La.Civ.Code art. 3492. Prescription does not commence until the plaintiff has actual or constructive notice of the tortious act, the resulting damage and the causal connection between the two. *Reed v. General Motors Corp.*, 400 So.2d 919 (La.App. 1st Cir.1981), writ denied, 406 So.2d 625 (1981). If it appears on the face of the pleadings that more than one year has elapsed between the occurrence of the tort and the filing of suit, the plaintiff has the burden of establishing an interruption or suspension of prescription. *See, Lucas v. Commercial Union Insurance Company*, 198 So.2d 560, 565 (La.App. 1st Cir.1967); Dixon v. Houck, 466 So.2d 57, 60 (La.App. 2d Cir.1985). However, in Louisiana prescriptive statutes are subject to the discovery rule embodied in the doctrine of *contra non valentem*, to the effect that prescription does not run during a period in which the cause of action was not known or reasonably knowable to the plaintiff. *Griffin v. Kinberger*, 507 So.2d 821 (La.1987)."

*Zumo v. R.T. Vanderbilt Co. Inc.*, 527 So.2d 1074, 1077 (La. Ct. App. 1988).

The concept of *contra non valentum* is short for "*contra non valentum agree nulla currit praescriptio,*" which is Latin for: a prescription does not run against one who is unable to act. *Contra non valentum* is a legal principle recognized in Louisiana that means the statute of limitations is not applicable, or a prescriptive period does not begin to run, against a plaintiff where: (1) some legal cause prevented a court or its officer from acting on a plaintiff's action; (2) some condition associated with the litigation process prevented the plaintiff from acting; (3) the

defendant prevented the plaintiff from acting; or (4) the plaintiff is ignorant of the injury caused

by the defendant, and his or her ignorance is not due to negligence, unreasonableness, or a

willful act. *See, e.g., Richards v. Choice Hotels Int'l Inc*. 142 So.3d 249, 252 (La.App. 5th Cir.

2014). The rule of prescription is subject to the discovery rule of *contra non valentum* and

suspends the running of prescription during the period in which the cause of action was not

known by or reasonably knowable by the plaintiff. *Harlan v. Roberts*, 565 So.2d 482 (La.App.2d

Cir.1990), writ denied, 567 So.2d 1126 (La.1990). The doctrine of *contra non valentum* was

created as an exception to the general rules of prescription. *Watters v. Dep't of Soc. Servs*., 102

So.3d 118, 131 (La. 2012).

In *Jordan v. Employee Transfer Corp*., 509 So.2d 420 (La.1987), the Louisiana Supreme

Court clarified its application of *contra non valentum* and held that prescription begins to run,

not at the earliest possible indication that the plaintiff may have suffered some wrong, but rather

**when the plaintiff has a reasonable basis to pursue a claim against a specific defendant**. *See

La Plaque Corp. v. Chevron United States A. Inc*., 638 So.2d 354, 356 (La. Ct. App. 1994)

(emphasis added). The discovery rule, which is encompassed in the fourth category of *contra

non valentum*, provides that "prescription does not begin to run until plaintiff knows sufficient

facts and has a reasonable basis for filing suit against a certain defendant." *Wilkerson v. Dunham*,

218 So.3d 743, 749 (La. Ct. App. 2017).

Here, Plaintiff filed a claim less than one year after discovering the presence of Knauf's

defective drywall in Affected Property; therefore, the claim was timely filed. Defendants have

urged the Court to grant summary judgment in this instance because, they allege, Plaintiff

learned that the Affected Property contained Knauf's defective product much earlier than

Plaintiff acknowledges, but that is clearly in conflict with Plaintiff's discovery responses and

deposition testimony.  Plaintiff affirmed at deposition that discovery of the Knauf-manufactured drywall occurred within one year of filing a claim. (See Exhibit B, Page 2).  Plaintiff also executed a verified Plaintiff Profile Form and Supplemental Plaintiff Profile Form, under penalty of perjury, affirming the very same date of discovery.

*Contra non valentum* is an "equitable doctrine of Roman origin, with roots in both civil and common law," designed to avoid the harshness of applying prescription where the plaintiff has been prevented from timely filing suit. *Carter v. Haygood*, 892 So.2d 1261, 1268 (La. 2005). The application of *contra non valentum* does not require "extraordinary circumstances," and it is regularly applied by Louisiana courts. *Id*.  It should be applied in this situation as well, since Plaintiff filed a claim within one year of discovery of Defendants' product in Affected Property.

### B.      Product liability claims are subject to the discovery rule in Louisiana.

Plaintiff's prescription period did not begin to run when the property was purchased in 2007.  Under Louisiana law, a cause of action accrues or begins to run for purposes of the prescription period if the plaintiff is ignorant of the injury caused by the defendant, and his or her ignorance is not due to negligence, unreasonableness, or a willful act.  *See, e.g., Richards v. Choice Hotels Int'l Inc*. 142 So.3d 249, 252 (La.App. 5th Cir. 2014).  Product liability claims are subject to an exception in which the accrual of the cause of action is delayed until the plaintiff either knows or should know that the cause of action occurred as the application of *contra non valentem* holds. *Id.*.  Louisiana's discovery rule applies to defective Chinese-manufactured product liability claims, including actions in redhibition.

La.Civ.Code art. 2534 provides that a buyer's action in redhibition prescribes one year from the date of sale if the seller has no knowledge of the latent defects. La.Civ.Code arts. 2545 and 2546 are an exception to La.Civ.Code art. 2534. They provide that the buyer's action in redhibition prescribes one year from the date of discovery of the defects *if* the seller has

knowledge of the latent defects but omits to declare it. Furthermore, the jurisprudence of

Louisiana is well settled that the builder or the manufacturer is presumed to know the defects in

the articles he constructs or manufactures. *Smith v. H.J. Landreneau Building Contractor,*

*Inc.,*426 So.2d 1360 (La.App. 3 Cir. 1983) and cases cited therein. Louisiana law provides for:

(1) imputation of knowledge to a vendor; and (2) holding a vendor to be a manufacturer. The

result insofar as a prescriptive period is concerned is the same. For example:

> [I]f knowledge of a defect is imputed to a vendor, the vendor will be considered a
> bad faith seller. Therefore, prescription begins to run one year from the date of the
> discovery of a defect. However, if the vendor is considered a manufacturer, a
> conclusive presumption applies that the manufacturer knew of the vices of the thing
> it made and prescription begins to run **one year from the date of the discovery of
> the defect**.

*Chastant v. SBS-Harolyn Park Venture*, 510 So. 2d 1341, 1343-44 (La. Ct. App. 1987)
(emphasis added).

Two cases decided by the Louisiana Supreme Court in 2010 provide us with guidance in

determining when a plaintiff should be deemed to have actual or constructive knowledge

sufficient to commence prescription in a property damage case. In *Hogg v. Chevron USA Inc.*,

the Louisiana Supreme Court reversed a trial court's denial of the defendants' motion for

summary judgment based on prescription in a case brought by five plaintiffs who alleged that

their immovable property had been contaminated from three formerly leaking underground

gasoline storage tanks at a Chevron service station operating on neighboring property. *Hogg v.*

*Chevron USA Inc.*, 45 So.3d 991 (La. 2010). After the tanks were replaced in 1997, the plaintiffs

received two letters from the Louisiana Department of Environmental Quality (LDEQ)

informing them that environmental contamination had been detected near the Chevron station

and that they may later be asked for permission for access to their property for testing purposes.

In a second letter dated April 26, 2002, the LDEQ informed the plaintiffs that due to the results

of air sampling at a stream near Burt's Chevron, some of which sampling was taken on their property, they should limit the time spent in that area. *Id*. *The* Louisiana Supreme Court ultimately held that the letters should have provided a reasonable person knowledge and held sufficient for summary judgement. On the merits, the Louisiana Supreme Court concluded that the information contained in the LDEQ letters "was sufficient to excite attention and put a reasonable person on guard to call for inquiry, which is the essence of constructive knowledge," and that "plaintiffs' inaction in light of such action was unreasonable." *Id.* at 1001. Ultimately, the *Hogg* court found that "[w]ith the receipt of the second letter from LDEQ in 2002, the plaintiffs acquired constructive knowledge of the damage to their immovable property sufficient to commence the running of prescription." *Id.* In the instant case, Plaintiff received no letters from Defendants and had neither actual nor constructive knowledge of defective Chinese drywall in Affected Property. It is a fact that Defendant Knauf issued no product recall and sent no warning letters to potentially-affected property owners in Louisiana.

The prescription period on a products liability claim begins to run only when the plaintiff knows or should have known of a causal connection between a distinct injury caused by the product in question during exposure. In this instance, Defendants cannot demonstrate that Plaintiff, who is a layman, should have known that the home contained defective drywall made by Defendant Knauf or that he was being exposed to off-gassing from drywall.

Louisiana courts have devised a reasonableness standard to determine whether a defect is apparent upon simple inspection, inquiring whether a reasonably prudent buyer acting under similar circumstances would have discovered the presence of the defect. *See Pursell v. Kelly,* 244 La. 323, 152.So.2d 36, 41 (1963); *Crow v. Laurie,* 729 S.2d 703, 707-08 (La.App. 1st Cir. 1999). "Whether an inspection is reasonable depends upon the facts of each case and includes such

factors as the knowledge and expertise of the buyer, the opportunity for inspection, and the assurances made by the seller." *Johnson v. CHL Enterprises*, 115 F. Supp. 2d 723, 728 (W.D. La. 2000).  Defendants have not presented any tangible evidence to rebut Plaintiff's discovery responses regarding the date of discovery of the defective Knauf product, either actually or constructively at an earlier identifiable date.

It is an unreasonable position that some unidentified smell or corrosion places a homeowner on notice that her home contains defective drywall.  In Louisiana, like any southern state, there could be any number of environmental sources causing a smell.  In addition, there could be environmental sources causing corrosion such as well water or a water supply with a high sulfur content.  It is not an unreasonable explanation for a "smell" to be present in and around a Louisiana home caused by an environmental source outside the home. Defendants have failed to provide undisputed proof that a smell noted by Plaintiff intermittently during ownership was indeed generated by Knauf's defective drywall in the Affected Property.

It is an undisputed fact that Plaintiff has no expertise in construction, environmental contaminants, or defective Chinese drywall.  It takes an inspection by an experienced drywall inspector to confirm the existence of defective Chinese-manufactured in a property.  In addition, not every homeowner is prepared to pay a fee between $500.00 and $2,000.00 for a thorough inspection of their home for the presence of defective drywall manufactured by Knauf. "Discovery" under Louisiana law occurs when the manufacturer's markings are found and confirmed by an experienced inspector or some other person with expertise, not at any point earlier. This would be the causal connection to the possible injury.  Reliance on an argument that Plaintiff acted unreasonably to discover the drywall at an earlier date is a genuine difference regarding a material fact in which a trier of fact could find that Plaintiff acted reasonably. It is

certainly possible for a trier of fact to find that Plaintiff's actions prior to discovery were reasonable; therefore, summary judgment must be denied.

**C.      It is settled Louisiana law that defective Chinese-manufactured drywall is a latent defect.**

A latent defect is considered a defect that is hidden or concealed from knowledge, as well as from sight, and which a reasonable customary inspection would not reveal. *Nida v. State Farm Fire & Casualty Company*, 454 So.2d 328, 335 (La.App. 3 Cir.1984), writ denied, 458 So.2d 486 (La.1984). The Louisiana Court of Appeals, Fifth Circuit, has declared that defective Chinese-manufactured drywall is a latent defect, specifically finding:

> "We agree with [defendants] and find that the Chinese drywall that caused the damages sustained by the [plaintiffs] is a latent defect, which was hidden and unknown for [] years."

*Ross v. C. Adams Const. & Design, L.L.C.*, 70 So.3d 949, 954 (La. Ct. App. 2011).

Louisiana courts also have allowed plaintiffs to recover against manufacturers where a plaintiff learns of a latent defect years later. For instance, in *Templeman Bros. Lumber Co., Inc., v. Fairbanks, Morse Co.*, 129 La. 983, 57 So. 309, 315 (La.1911), the Louisiana Supreme Court overruled a plea of prescription of one year under Article 2534, and permitted a plaintiff, the purchaser of an engine, to recover monetary damages and specifically had this to say with reference to knowledge of the defect in the vendor:

> "The [product] in the present case consisted in the inadequacy of the [specific defective item], and in the defective installation of the machine. Of both of these defects the defendant must be held to have had full knowledge. The manufacturer of a machine is held to the knowledge of even latent defects and the inadequacy of the [specific defective item] must be held to have been patent to the defendant, though not to the plaintiff, since plaintiff was not supposed to have, and, in fact, had, no special knowledge of machinery. ***And the defendant must also be held to have known that the engine had been defectively installed. It was its duty to know it, and it had full opportunity to know it. It must, therefore, be presumed to have known it***."

*Tuminello v. Mawby*, 57 So. 2d 666, 668 (La. 1952) (emphasis added).

Given that Chinese drywall is a latent defect, knowledge regarding the defect is imputed to the Knauf Defendants, yet the Knauf Defendants took no action.  Defendants sent no letters to homeowners or issued a product recall to warn Louisiana homeowners about their defective drywall products; consequently, Plaintiff detrimentally relied on the absence of warnings and purchased the property.  Defendants should be equitably estopped (See Section III(E), *infra*) from making any argument regarding constructive knowledge of defect or inadequacy of records in support of Plaintiff's damages claims.  All inferences must be taken in a light most favorable to Plaintiffs and Defendants' motion is due to be denied.

     **D.**      **Knauf had a duty to warn Plaintiff regarding defective nature of its drywall after the sale but chose to remain silent.**

Louisiana recognizes a manufacturer's post-sale duty to warn consumers of defective products. In 1985, the Louisiana Supreme Court decided a case that involved an injury occurring sixty-nine years after a defective product was manufactured and found in favor of a plaintiff where "a causal connection between the plaintiff's injuries and the manufacturer's failure to warn of a danger which it knew about since the time it built the [defective product]." *Winterrowd v. Travelers Indemnity Co.*, 462 So.2d 639, 641 (La.1985).  The Louisiana Supreme Court found that the manufacturer of the defective product violated its duty to warn "of any danger inherent in the normal use of its product which is not within the knowledge of an ordinary user." *Id.* at 642. *Winterrowd* stands for the proposition that "[l]ong delays between the actions of a defendant and the litigation of claims based on such actions are commonplace." *Trahan v. BP Am. Prod. Co.*, 209 So. 3d 166, 174 (La. Ct. App. 2016).

The Defendants argue that Plaintiff was allegedly on notice of the presence of the defective product produced by Knauf; however, Defendants fail to specify what notice Plaintiffs

received.  What are the exact warnings that Plaintiff should have received from Knauf?  And, what date did Knauf publish the warnings to consumers?  Defendant Knauf has failed to present anything specific that Plaintiff might have received.  Defendants could easily have sent warnings to potential recipients of its drywall – they're in possession of business records that could have been used to identify all downstream purchasers and ultimately the recipients of their product.  Defendant Knauf chose to take no such action to remedy the problem they created.  In Louisiana, defective Chinese drywall manufacturers have a duty to warn about certain risks even after a product is no longer in the manufacturer's possession and has been transferred or sold to the consumer or end-user.

If Defendant Knauf's position is that a warning was given to Plaintiff, they should produce that warning.  Without a specific warning to Plaintiffs by Defendant Knauf or some downstream distributor or agent, we are left without the ability to evaluate the terms of the warning for adequacy; therefore, this Court must view the omission in a light most favorable to Plaintiff and find a material fact exists to be decided by a trier of fact regarding notice.  This is consistent with longstanding Louisiana law, which provides that "[t]he adequacy of a particular warning is a question for the trier of fact, and should usually not be determined at summary judgment." *See Stapleton v. Kawasaki Heavy Industries, Ltd*., 608 F.2d 571, 573 (5th Cir.1979); *Bell v. Uniroyal Inc*., 696 So.2d 268, 270 (La. Ct. App. 4th Cir.1997).   Without any specific warning by Defendants, this court must view the omission of a warning to consumers in a light most favorable to Plaintiff.

### E.   Equitable estoppel prevents Defendants from benefitting due to their choice to intentionally not warn consumers about their defective drywall.

The principles of equitable estoppel are applicable here to prevent the Knauf Defendants from taking unfair advantage of homeowners who may have only received limited or inaccurate

information about the defective Knauf-manufactured drywall through some other source. Defendant Knauf possessed the most accurate information about their defective product and cannot rely on some other entity to meet their burden to consumers.

In Louisiana, "equitable estoppel is the effect of the voluntary conduct of a person whereby he is barred and precluded, both at law and in equity, from asserting rights against another person relying on such conduct; and it arises where a person, by his acts, representations or admissions, or even by his silence when it is his duty to speak, intentionally or through culpable negligence, induces another to believe that certain facts exist and the other person rightfully relies and acts upon such belief and will be prejudiced if the former is permitted to deny the existence or the truth of such facts." *Shirey v. Campbell*, 151 So.2d 557, 559-60 (La. Ct. App. 1963). Failure to speak when under some duty to speak is precisely what occurred here after Defendant Knauf learned that its drywall was defective in 2006. Intent is an essential element of equitable estoppel. *Id*. Thus, it is essential to equitable estoppel that the matters claimed to create it were intended to lead the other party to act thereon or that there were reasonable grounds to anticipate that he would so act. *Id*. Defendant Knauf's intention to minimize its legal exposure by failing to issue a product recall or specific warning to potentially-affected homeowners is evident.

Equitable estoppel colors all legal defenses and all assertions regarding Plaintiffs damages or documentation offered by Plaintiffs in support of damages being sought. Defendants are equitably estopped from arguing Plaintiff's supporting evidence is deficient in any way because Plaintiffs detrimentally relied on the lack of warning when purchasing Affected Property after Defendant Knauf knew that their defective drywall might lead to "thousands" of claims for its drywall, yet remained silent. (See Exhibit E – an email between Knauf corporate officers C.

Wang, M. Norris, and Jawahar re "USA smelly board," the "situation in Miami is out of control," and "it will be a big problem not only in Miami but all over the USA Market, maybe cover thousand[s] of houses.").  Defendant Knauf has failed to provide proof that a warning was issued at any time to any consumer; thus, a trier of fact will ultimately decide the impact of Defendant Knauf's concealment of their product's defect when evaluating damages at trial.

### F.   Plaintiff's Loss of Use & Enjoyment Claim is Appropriate Under Louisiana Law.

Plaintiff has asserted a claim for loss of use and enjoyment of the property due to the presence of defective Chinese drywall manufactured by Knauf Defendants.  The Knauf Defendants have acknowledged that their product is defective and stipulated to liability.  In Exhibit C, the Supplemental Plaintiff Profile Form, Plaintiff asserted a right to loss of use and enjoyment damages and assigned a value believed to be reasonable and appropriate based on past verdicts in the Chinese drywall litigation (See Page 6 of SPPF).  Loss of use and enjoyment is non-pecuniary damages that are to be assessed by the trier of fact.

Plaintiff is entitled to recover damages under Louisiana law for loss of use and enjoyment of a residential property. For instance, in 1995, the Louisiana Court of Appeals found that loss of use and enjoyment was appropriate for property owners who do not reside on their property that adjoins a sewer treatment plant.  *See Arnold v. Town of Ball*, 651 So. 2d 313, 320-21 (La. Ct. App. 1995).  The court found that Louisiana law does not limit Plaintiffs' recovery to property damages alone and does not preclude them from recovering damages for the loss of use of enjoyment of their property, mental anguish, irritation, anxiety, discomfort, and embarrassment under Article 667 or Article 2315. *Id*.; citing *Simmons v. Board of Com'rs,* 624 So.2d 935, 956 (La.App. 2d Cir. 1993).

Loss of use and enjoyment damages is also extended beyond the ability to actually live in the property.  It has been recognized by the Louisiana Supreme Court that loss of use and enjoyment extends to plaintiffs when ownership in a property has been disturbed, including the "use, enjoyment or disposal of the property." *Eagle Pipe & Supply, Inc. v. Amerada Hess Corp.*, 79 So. 3d 246, 292 (La. 2012). Louisiana law provides that when property is damaged through the actions of another, the owner of the property (obligee) obtains a personal right to demand that the tortfeasor (obligor) repair the damage to the property. La.Civ.Code art. 2315 ("Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it."). This personal right of the property owner arises because his real rights in the ownership of the property have been disturbed-his use, enjoyment or disposal of the property. *Id*.

This Court has also previously addressed loss of use and enjoyment, stating, "[t]he Taishan property owners will still have an opportunity at later phases to seek damages for alternative living expenses and loss of use and enjoyment of their properties. Those issues can be addressed and resolved later when the Court remands the cases in this MDL."  *In Re Chinese Manufactured  Drywall Prod. Liab. Liti.,* 706 F. Supp. 2d 655, 693 (E.D. La. 2010); *See In re Depuy Orthopedics*, *Inc*., 870 F.3d 345 (5th Cir. 2017). This Court does not intend to assume the transferor courts' duties after pre-trial matters are completed. *Id*.

Defendants have argued that loss of use and enjoyment is appropriate only if a plaintiff is unable to live in the home. That simply does not square with Louisiana law.  Plaintiff is not required to prove that he was unable to live in the property in order to recover for loss of use an enjoyment under Louisiana law.  The parties differ in their valuation, but it is ultimately the trier of fact that will decide the appropriate loss of use and enjoyment damages.

**G.    Plaintiff's consequential damages, including personal property damages and
diminution in property value are to be resolved by a trier of fact under
Louisiana Law.**

Plaintiff has asserted a claim for damaged personal property that is alleged to be caused
by off-gassing from the defective Chinese drywall manufactured by Knauf Defendants.  As
previously noted, the Defendants have stipulated to liability in this case.  In Exhibit D (See
Plaintiff's itemization in Exhibit 14 to the PFS), the Plaintiff Fact Sheet, Plaintiff provided the
value of personal property lost during ownership of the Affected Property and assigned a value
believed to be reasonable and appropriate based on a variety of sources such as receipts,
invoices, internet research or memory.  Plaintiff's justification for the damaged personal property
was offered as testimony at deposition.

With regard to the diminution in value of the property, Plaintiff has asserted a claim and
will rely on fact witnesses at trial to quantify the value.  Plaintiff is not a property appraiser or
realtor.  A claim for the diminution in value was present in the Complaint and a trier of fact will
be charged with evaluating testimony from Plaintiff's fact witnesses at trial related to this
component of damages.

In addition to the testimony and documentary evidence offered thus far, Plaintiff will
offer expert testimony at trial regarding the effect of drywall off-gassing on components of the
home and personal property susceptible to corrosion.  Defendants will no doubt assign a different
value to personal property damage, but Plaintiff's testimony and documentary support are
sufficient to be considered by the trier of fact.  And, again, where Plaintiff cannot produce
documentary support for damaged personal property prior to discovery of the defective drywall,
Knauf is equitably estopped from taking advantage of Plaintiffs who detrimentally relied on
Defendants' intentional concealment of their product defects.

This Court considered consequential damages such as lost rental income and personal property damage and found that damages are not limited to the diminution in value of the property and may include damages for loss in use and other consequential injuries. *In Re Chinese Manufactured Drywall Prod. Liab. Liti.,* 706 F. Supp. 2d 655, 692 (E.D. La. 2010). This Court's ruling was consistent with the Restatement of Torts regarding compensation for consequential damages. See Restatement (Second) of Torts § 929 (1979) (providing that damages for injury to real property include compensation for loss of use of the property and other consequential injuries in addition to any permanent property damage, whether measured by restoration or market value); 5C Michie's Jurisprudence, Damages, § 32 (2006) (rule encompasses recovery of expenses incidental to irreparable injury); *accord Bailey v. Missouri P.R. Co.,* 383 So. 2d 397, 402, 1980 La. App. LEXIS 3636 at *15 (1980) (tortfeasor must compensate his victim "for even the most improbable severe consequences of his wrongful act."), citing, *Gallick v. B O R.R.,* 83 S.Ct. 659 (U.S. 1963). The very same standard must be applied to all Plaintiffs in this Bennett action who detrimentally relied on an omission of post-sale warning by Defendants. Plaintiff's personal property, diminution in value, and damages related to other asserted claims are a consequential effect of the off-gassing from the defective drywall; therefore, a jury could find in favor of Plaintiff for those damages being sought. All consequential damages are recoverable under settled Louisiana law; thus, a genuine issue of material fact exists for a trier of fact to evaluate.

**H.     Defendants have provided this Court with no basis for summary judgment under the Louisiana Product Liability Act (LPLA).**

Defendants assert that Plaintiff's claims are prescribed or otherwise barred by the LPLA. The issue of prescription was addressed in Sections A & B, *supra*. Defendants' specific presentation regarding the LPLA is essentially an assertion that the law was passed to provide

the courts with a methodology for determining a variety of prescription periods.  In addition, Defendants also contend that the LPLA does not allow for the recovery of attorney's fees as a separate component of damages, except where claims in redhibition are allowed.  This is immaterial at this point in the proceedings (i.e., summary judgment). Limitation of attorney's fees is not a basis for summary judgment – it is an issue that should be addressed at a pretrial conference when proposing jury instructions or in post-verdict proceedings.  Defendants have provided no basis upon which this Court can find that Defendants are entitled to summary judgment based on the LPLA.

I.      **Defendant Knauf failed to establish Plaintiff assumed the risk that the home contained defective Knauf-manufactured drywall at time of purchase.**

Defendants have urged this Court to grant summary judgment because Plaintiff "assumed the risk" of Chinese drywall in Affected Property when it was purchased.  Plaintiff has executed verified discovery documents under penalty of perjury that the date of discovery of the defective Knauf-manufactured drywall occurred years after ownership was transferred to Plaintiff. Defendants' thin argument appears to be that Plaintiff was somehow on notice that the home they were purchasing contains their defective product, even though there was no disclosure by the seller and no post-sale warning or recall issued by the Knauf Defendants, as required by Louisiana law.  With Defendant Knauf providing no tangible evidence that a notice/warning to prospective buyers, Defendant Knauf is equitably estopped from arguing notice to Plaintiff. (See Section E, *supra*).

Defendants suggest that purchase included a risk that Chinese drywall specifically manufactured by Knauf was contemplated and appreciated by Plaintiffs at the time of the sale. This assertion is without any basis whatsoever.  Assumption of a risk requires disclosure of the potential risk and an appreciation by the buyer when the agreement was struck.  The Louisiana

Supreme Court has held that "[t]he defense of assumption of risk presupposes (1) that the plaintiff had some knowledge of the danger; (2) that he understood and appreciated the risk therefrom, and (3) that he voluntarily exposed himself to such risk." *Dorry v. Lafleur*, 399 So.2d 559 (La.1981). "Therefore, except where he expressly so agrees, a plaintiff does not assume a risk of harm arising from the defendant's conduct unless he then knows of the existence of the risk and appreciates its unreasonable character, including the magnitude thereof, and voluntarily accepts the risk." *Id*.

Defendants have also suggested that the right to sue for a latent defect was not either assigned or subrogated to Plaintiff through the sale. This is in direct contradiction to the terms of the Cash Sale, which states "Seller hereby sells and delivers with full warranty of title and subrogation to all rights and actions of warranty Seller may have, unto [Plaintiff]." (Exhibit A, Page 1).

Defendants presented no evidence in support of an assumption of risk defense or the transferred right to file a claim in *Bennett*. Seller made no disclosure to Plaintiff in 2007 regarding the presence of defective Chinese-manufactured drywall in Affected Property prior to sale; therefore, Defendants have failed to meet their burden for demonstrating assumption of risk according to Louisiana law. Without an express assumption of a known risk, Defendants Knauf's motion in this regard must be denied.

**J.    Defendants' clean hands doctrine affirmative defense is completely without merit based on all investigations that have now concluded.**

Plaintiffs home was destroyed by fire in 2016. An investigation was initiated to dertmine if the cause of the fire was arson. Ultimately, the investigation was abandoned and no criminal charges were filed against Plaintiff or any family members. With regard to insurance proceeds for the fire damage, Plaintiff settled her insurance claim after her insurer filed a declaratory

judgment action while the arson investigation proceeded.  There were no criminal charges filed against Plaintiff or her family members.  The same is true for all civil claims that might have been filed by Plaintiff's insurance carrier – no tort, contract or other civil claims were filed against Plaintiff other than the declaratory judgment action.

The common law doctrine of *in pari delicto*, a corollary of the "unclean hands" doctrine, is a mechanism by which a plaintiff is precluded from recovery as a result of a plaintiff's own participation in the tortious conduct. *See Wooley v. Lucksinger*, 09-0571 (La.04/01/11), 61 So.3d 507. In *Rhodes v. Miller*, 189 La. 288, 297, 179 So. 430, 432 (La.1938), the Louisiana Supreme Court stated:

> The courts recognize the rule that every [plaintiff] who seeks relief at their hands must himself be free from any unlawful or inequitable conduct with respect to the matter or transaction in question. This rule is known in equity as the rule of 'clean hands.'

*Cole v. Mitchell*, 73 So.3d 452, 457, 46546 La.App. 2 Cir. 9/21/11 (La. Ct. App. 2011)

There is no evidence of participating in tortious conduct.  With this absence of any legal basis for alleging wrongdoing by Plaintiff, Defendants urge this Court to grant summary judgment because, they allege, Plaintiff has unclean hands. The clean hands doctrine, also referred to as the "unclean hands" doctrine, is recognized as a defense in Louisiana. *Allvend, Inc. v. Payphone Commissions Co*., 00-0661, p. 6 (La.App. 4 Cir. 5/23/01), 804 So.2d 27, 30. "A person cannot maintain an action if, in order to establish his cause of action, he must rely in whole or in part, on any illegal or immoral act or transaction to which he is a part." *Id*. (citing *Guillie v. Comprehensive Addict. Programs*, 98-2605, p. 8 (La.App. 4 Cir. 4/21/99, 735 So.2d 775, 779).  The Louisiana Court of Appeals explained:

> An affirmative defense is one that will have an effect of defeating a suit on its merits. *Walters v. Metropolitan Erection Co*., 94-0162, 94-0475 (La.App. 4 Cir. 10/27/94), 644 So.2d 1143, writs denied 94-2858 & 94-2870 (La. 2/9/95), 649

So.2d 420. The party pleading an affirmative defense has the burden of proving it
by a preponderance of the evidence. *Abadie v. Markey*, 97-684 (La.App. 5 Cir.
3/11/98), 710 So.2d 327.

*Allvend, Inc. v. Payphone Commissions Co*., 00-0661, pp. 5-6, 804 So.2d at 30.

The party pleading an affirmative defense has the burden of proving it by a

preponderance of the evidence. *Abadie v. Markey*, 97-684 (La.App. 5 Cir. 3/11/98), 710 So.2d

327.  Defendants have not shown any wrongdoing by a preponderance of evidence.  In this

instance, Defendants' clean hands doctrine challenge is completely without proof.  Defendants'

limited argument is entirely conjecture and without an merit as the criminal investigation

showed.  All investigations, both civil and criminal in nature, have concluded and no charges or

wrongdoing has been lodged against Plaintiff; thus, summary judgment is inappropriate.

## IV.   CONCLUSION

This lawsuit was filed because Defendant Knauf manufactured defective drywall found in

Plaintiff's property.  The Knauf Defendants have stipulated that their drywall product is indeed

defective.  Although counsel for Defendant Knauf has crafted an argument for summary

judgment, the facts and law in this instance simply do not support their legal position or their

motion.

Plaintiff has provided ample information through pleadings and the discovery process for

the Defendants to understand each claim asserted and the areas of damages being sought.  Most

claims and damages have not been challenged by Defendants through this motion. (See Section

I(B) *supra* for the claims and damages stated in the Fifth Amended Complaint).  Plaintiff has

provided information to Defendants through responses to discovery requests directing

Defendants to the Fifth Amended Class Action Complaint for the areas of damages that have

neither been addressed nor challenged by Defendants to this point.  And, when taken in a light

most favorable to the non-movant, the unresolved areas of damages present genuine issues of material fact

The exhibits, including the Cash Sale, Plaintiff Profile Form, Supplemental Plaintiff Profile Form, Plaintiff Fact Sheet and inspection summary letter attached to this Opposition demonstrate that, at a minimum, Plaintiff's claims are actionable and multiple issues of material fact exist to defeat Defendants' summary judgment challenge.

For the foregoing reasons, Defendants' Motion for Summary Judgment should be denied.

/s/ *James V. Doyle, Jr.*

James V. Doyle, Jr.
DOYLE LAW FIRM, PC
2100 Southbridge Pkwy., Suite 650
Birmingham, AL 35209
Tele: 205-533-9500
Fax: 844-638-5812
jimmy@doylefirm.com

*Attorney for Plaintiff*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that the above and foregoing Plaintiff Mardechria Charles' Opposition to Defendant Knauf's Motion for Summary Judgment has been served on Plaintiffs' Liaison Counsel, Russ Herman, and Defendants' Liaison Counsel, Kerry Miller, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047, on this 10th day of February, 2020.


/s/ *James V. Doyle, Jr.*

James V. Doyle, Jr.
DOYLE LAW FIRM, PC