UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL NO. 2047 |
| | SECTION: L |
| THIS DOCUMENT RELATES TO: | |
| *Elizabeth Bennett, et al. v. Gebrueder Knauf Verwaltungsgesellschaft, KG, et al.* 2:14-cv-02722-EEF-JCW | JUDGE ELDON FALLON |
| | MAG. JUDGE WILKINSON |

**PLAINTIFFS JOSHUA KELLY & TERRY HAMILTON'S OPPOSITION**

**TO DEFENDANT KNAUF'S MOTION FOR SUMMARY JUDGMENT**

# Table of Contents

                                                                                                            **Page**

I.    STATEMENT OF MATERIAL FACTS…………………………….……….      1

      A.    MDL-2047…………………………………………………….…….       1

      B.    The *Bennett* Class Action …………………….....……………………...    3

      C.    Plaintiff Joshua Kelley and Terry Hamilton in the *Bennett* Complaint …    4

II.   STANDARD OF REVIEW……………………………………………….…       5

III.  ARGUMENT……………………………………………………………….      5

      A.    Plaintiffs' claim were filed in Bennett within the two year statutory
            period following discovery as required by Alabama law.                   7

      B.    Product liability claims are subject to the discovery rule in Alabama     7

      C.    Knauf had a duty to warn Plaintiff regarding defective nature of its
            drywall after the sale but chose to remain silent .............................   9

      D.    Equitable estoppel prevents Defendants from benefitting due to
            their choice to intentionally not warn consumers about their
            defective drywall ...........................................................    11

      E.    Alabama's requirements for dismissal based on *res judicata* have
            not met in this instance .................................................    12

IV.   CONCLUSION…………………………………………………………..       14

Table of Authorities

| **Cases** | **Page** |
|---|---|
| *Anderson v. Liberty Lobby, Inc.*,<br>     477 U.S. 242 (1986) | 5 |
| *Celotex Corp. v. Catrett*,<br>     477 U.S. 317 (1986) | 5 |
| *Clark v. Coats & Clark, Inc*.,<br>     929 F.2d 604 (11th Cir. 1991) | 5 |
| *Collier v. Duprel*,<br>     480 So.2d 1196 (Ala. 1985) | 8 |
| *Draughon v. General Finance Credit Corp*.,<br>     362 So.2d 880 (Ala.1978) | 11 |
| *Equity Res. Mgmt., Inc. v. Vinson*,<br>     723 So.2d 634 (Ala.1998) | 12 |
| *Fitzpatrick v. City of Atlanta*,<br>     2 F.3d 1112 (11th Cir. 1993) | 5 |
| *Ford Motor Co. v. Rodgers*,<br>     337 So.2d 736 (Ala.1976) | 10 |
| *Grau v. Procter & Gamble Co*.,<br>     324 F.2d 309 (5th Cir.1963) | 10 |
| *Griggs v. Combe, Inc*.,<br>     456 So.2d 790 (Ala.1984) | 10 |
| *Gurley v. American Honda Motor Co.*,<br>     505 So.2d 358 (Ala.1987) | 9 |
| *Lawley and Bryant Hicks v. Commercial Union Insurance Co*.,<br>     652 So.2d 211 (Ala.1994) | 9 |
| *Lowe v. General Motors*,<br>     624 F.2d 1373 (5th Cir.1980) | 10 |
| *Mazer v. Jackson Ins. Agency*,<br>     340 So.2d 770 (Ala.1976) | 11 |

*Rivers v. Stihl, Inc.*,                                                                          10
    434 So.2d 766 (Ala.1983)

*Sanders v. First Bank of Grove Hill*,                                             12
    564 So.2d 869 (Ala.1990)

*State Farm Fire and Cas. Co. v. J.B. Plastics Inc.*,                  10
    505 So.2d 1223 (Ala. 1987)

*Tolan v. Cotton*,                                                                                  5
    134 S. Ct. 1861 (2014)

*Wesch v. Folsom*,                                                                             12
    6 F.3d 1465 (11th Cir.1993)


**<u>Alabama Code</u>**

Alabama Code § 6-2-38(l)                                                               7
Alabama Code § 6-5-502(b)                                                           8


**<u>Other</u>**

Fed. R. Civ. P. 56(a)                                                                           5
Restatement of Torts (Second) § 388                                        9

Plaintiffs Joshua Kelley and Terry Hamilton (herein "Plaintiffs" or "Plaintiff"), by and through the undersigned counsel of record, oppose the motion for summary judgment (Doc. 22523) filed by the Knauf Defendants.  As grounds, Plaintiffs offer the following:

## I.    STATEMENT OF MATERIAL FACTS

### A.  MDL-2047.

This litigation arises from alleged property damage and caused by the presence of Chinese drywall in homes and other buildings. Hurricanes Katrina and Rita devastated the Gulf Coast in 2005. These disasters, coinciding as they did with a boom in new housing construction, helped precipitate a shortage of drywall for the construction and reconstruction of homes in the United States. As a result, from approximately 2005 to 2008, Chinese drywall entered the United States market, changing hands in the chain of commerce, and ultimately finding its way into thousands of homes and buildings in the United States, primarily in Florida, Louisiana, Alabama, Mississippi, Texas, and Virginia.  Sometime after the installation of Chinese drywall in these properties, homeowners, residents, and occupants began to notice and complain of odd odors, corrosion of metal components, failure of electronics and appliances, and in some cases, physical ailments, such as nose bleeds, skin irritation, and respiratory problems. In response to these complaints, a number of governmental agencies and special interest groups, notably the federal Consumer Products Safety Commission and the Department of Housing and Urban Development, began to investigate, conduct testing, and issue remediation protocols related to Chinese drywall.

The present litigation commenced with the filing of lawsuits in 2009 in both federal and state courts by property owners and occupants damaged by the Chinese drywall installed in their residences and businesses, in addition to suits filed by some homebuilders who repaired these

properties. Defendants and declaratory judgment plaintiffs include homebuilders, developers, installers, retailers, realtors, brokers, suppliers, importers, exporters, and distributors, as well as their insurers and the insurers of homeowners, who were involved with the Chinese drywall in the affected properties. Because of the commonality of facts in the various federal lawsuits, the litigation was designated as Multi-District Litigation 2047 by the Judicial Panel on Multidistrict Litigation. On June 15, 2009, the Panel transferred all federal actions alleging damages from Chinese drywall to the U.S. District for the Eastern District of Louisiana for coordinated and consolidated proceedings.

Since the inception of MDL 2047, numerous cases were consolidated, containing thousands of claims; in addition, the Court issued numerous opinions, pretrial orders, and minute entries; the Court has facilitated mediations; and in the Court thousands of documents have been filed. Additionally, the Court has corresponded and coordinated with a number of state and federal court judges who also preside over related Chinese drywall cases.  The discovery revealed that the manufacturers of the drywall in question generally fell into two groups: the Knauf entities[1] and the Taishan entities[2]. After one of the Taishan entities was held in preliminary default, the Court conducted a bellwether evidentiary default hearing.  Shortly thereafter, the Court held its first bellwether, bench trial involving the Knauf entities. With regard to these bellwether proceedings, the Court issued detailed findings of fact and conclusions of law, concluding that the Chinese drywall at issue was in fact defective due to its release of

---

[1]  The term "Knauf entities" includes: Knauf Plasterboard (Tianjin) Co., Ltd. ("KPT"), Knauf Plasterboard (Wuhu) Co., Ltd., Guangdong Knauf New Building Material Products Co., Ltd., Knauf Gips KG, Gebr. Knauf Verwaltungsgesellschaft KG, Knauf International GmbH, Knauf Insulation GmbH ("KI"), Knauf UK GmbH, Knauf AMF GmbH & Co. KG, Knauf do Brasil Ltda. and PT Knauf Gypsum Indonesia.

[2]  The term "Taishan entities" includes: Taishan Gypsum Co. Ltd. and Taian Taishan Plasterboard Co. Ltd., among others.

corrosive gasses, requiring remediation of properties containing this drywall. The Court also issued a remediation protocol.

An initial settlement was reached in the Knauf portion of the litigation in October 2010, when the PSC and the Knauf entities entered into a Court-approved pilot program for remediation of homes containing drywall manufactured by Knauf. The pilot program led to a broader settlement agreement that extended the pilot program and provided remediation benefits to plaintiffs with filed claims.  On December 11, 2012, the final Knauf-related agreement, labeled, "Third Amended Settlement Agreement Regarding Claims Against the Knauf Defendants In MDL No. 2047" was filed with the Court.  A preliminary approval of the agreement was issued at the time, but no fairness hearing was immediately held and no certification of a proposed class was approved.  Instead, the Court later held a consolidated fairness hearing for the five interrelated settlements: L&W; Banner; INEX; Global; and Knauf. Ultimately, on February 7, 2013, the Court certified a settlement class that included the Knauf entities and notice was published.  The Knauf settlement class provided benefits to participants limited to remediation.  All other claims were omitted including those claims for personal property, negligence, strict liability, consumer protection acts, nuisance, unjust enrichment, or non-pecuniary claims were settled with the Knauf entities.

### B.  The *Bennett* Class Action.

The original *Bennett* Complaint was filed on November 13, 2014, in the United States District Court for the Northern District of Alabama and was subsequently transferred and consolidated into MDL 2047 via a conditional transfer order issued by the Judicial Panel on Multidistrict Litigation. The Complaint was amended multiple times, primarily to amend the parties.  The Fifth Amended Class Action Complaint was filed on March 6, 2018, and includes

the following claims: 1) negligence; 2) negligence per se; 3) strict liability; 4) breach of express and/or implied warranty; 5) Redhibition (by Louisiana plaintiffs); 6) Louisiana Products Liability Act (by Louisiana plaintiffs); 7) private nuisance; 8) negligent discharge of a corrosive substance; 9) unjust enrichment; 10) violation of the Alabama Deceptive Trade Practices Act; 11) equitable injunctive relief and medical monitoring.  In the prayer for relief, Plaintiffs seek: certification of the class action; order appointing named plaintiffs as class representatives; compensatory, statutory, and/or punitive damages; pre- and post-judgment interest as allowed by law; injunctive relief; an award of attorney's fees as allowed by law; and award of taxable costs; and, any other relief a court deems just and proper.  On January 27, 2020, this Court issued an order denying class certification.

   **C.  Plaintiffs Joshua Kelley and Terry Hamilton in the *Bennett* Complaint.**

   Plaintiffs Joshua Kelley and Terry Hamilton  own a property in the State of Alabama that contains drywall manufactured by the Knauf Defendants that is alleged to be defective. Plaintiffs' claim was filed in the *Bennett* complaint on January 30, 2016.  The street address of Plaintiffs' property at issue is: 160 Blairs Circle, Pell City, AL 35215 ("Affected Property"). Plaintiffs assert all claims in the Fifth Amendment Complaint and seeks all relief available under current Alabama law.

   Plaintiffs purchased the Affected Property on August 2, 2012 (Warranty Deed is attached as Exhibit A).  Plaintiff completed a Plaintiff Profile Form (Exhibit B) that verified the date that the Knauf drywall was discovered and the identity of the manufacturer confirmed on May 29, 2015.  Plaintiffs also completed a Supplemental Plaintiff Profile Form (Exhibit C) and a Plaintiff Fact Sheet (Exhibit D).  Plaintiff later engaged Healthy Home Solutions, LLC to conduct an inspection of the Affected Property.  A copy of the inspection summary letter is attached (Exhibit

F).  The HHS letter confirms the date that the Affected Property was inspected in 2019 and the presence of defective Knauf-manufactured drywall in the home.

Plaintiffs Joshua Kelley and Terry Hamilton were deposed by counsel for Knauf on December 5, 2019, in Birmingham, Alabama, and affirmed the responses in the three discovery forms, including the date of discovery of the defective Knauf-manufactured drywall in the Affected Property.

## II. STANDARD OF REVIEW

Summary judgment is only warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In making the determination, "all justifiable inferences are to be drawn in [the non-movant's] favor." *Tolan v. Cotton*, 134 S. Ct. 1861, 1863 (2014) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). The movant may argue that "there is an absence of evidence to support the nonmoving party's case," *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986), but "it is never enough simply to state that the non-moving party cannot meet its burden at trial," *Clark v. Coats & Clark, Inc*., 929 F.2d 604, 608 (11th Cir. 1991). If the non-moving party provides more than a mere "scintilla of evidence" demonstrating that "the jury could reasonably find for the plaintiff," it will defeat the motion. *Anderson*, 477 U.S. at 252. This can be done by pointing out where the record "contains supporting evidence . . . which was 'overlooked or ignored' by the moving party." *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1116 (11th Cir. 1993) (citing *Celotex*, 477 U.S. at 332 (Brennan, J., dissenting)).

## III.   ARGUMENT

In order to prevail with a summary judgment motion, Defendants must demonstrate that there are no issues of material fact to be decided by a trier of fact in the transferor court.

Defendants have stipulated to liability; therefore, the calculation of appropriate damages for this Plaintiff is all that remains unless Defendant presents some persuasive legal basis for dismissal. In this instance, they have not done so.

Plaintiff has provided ample information through pleadings and the discovery process for the Defendants to understand each claim asserted and the areas of damages being sought. Most claims and damages have not been challenged by Defendants through this motion. (See Section I(B) *supra* for the claims and damages stated in the Fifth Amended Complaint). For the purpose of this motion, the Court need only find the existence of a genuine issue of material fact to deny Defendants' motion.

The Court can look to its prior orders for one area of damages at issue – calculation of remediation damages. Previously, this Court issued multiple orders during the consolidated pre-trial stage of the MDL proceedings instructing the parties that full remediation damages are appropriate for plaintiffs that establish defective Chinese-manufactured drywall in the living space of their home. (See, e.g., Doc. 20741). The Court even adopted a formula to arrive at the remediation damages (square footage of a home multiplied by the appropriate R.S. Means cost per square foot). Defendants have not stipulated to full remediation damages to date; instead, Defendants have engaged an expert to present testimony at trial regarding their calculation of less than full remediation damages utilizing another method; consequently, a genuine issue of material fact exists that will be decided by the trier of fact.

Plaintiff also provided responses to discovery requests directing Defendants to the Fifth Amended Class Action Complaint for the areas of damages that have neither been addressed nor challenged by Defendants to this point. And, when taken in a light most favorable to the non-

movant, in this case the Plaintiff, the unresolved areas of damages present genuine issues of material fact that must be decided by a trier of fact.

This lawsuit was filed because Defendant Knauf manufactured defective drywall found in Plaintiff's Affected Property (See attachments to Plaintiff Fact Sheet, Exhibit D).  The exhibits, including the cash sale, plaintiff profile form, supplemental plaintiff profile form, plaintiff fact sheet supporting documents demonstrate that, at a minimum, Plaintiffs' claims are sufficiently supported and several genuine issues of material fact exist that defeat Defendants' motion.

### A. Plaintiffs' claims were filed in *Bennett* within the two-year statutory period following discovery as required by Alabama law.

Alabama law establishes a two-year statute of limitations period for filing product liability claims. Alabama Code Section 6-2-38( 1 ) clearly requires that "[a]ll actions for any injury to the person or rights of another, not arising from contract and not specifically enumerated in this section must be brought within two years." This Code provision establishes the two-year statutory period for filing product liability-related claims contained in the *Bennett* action.  Plaintiffs discovered the Knauf drywall markings in Affected Property on May 29, 2015 (See Exhibit B). Plaintiffs' claim was filed in the *Bennett* complaint on January 30, 2016.  Thus, Plaintiffs claims are not barred by the Alabama statute of limitations for product liability actions.

### B. Product liability claims are subject to the discovery rule in Alabama.

Plaintiff's limitations period did not begin to run when the property was purchased in 2012.  Under Alabama law, a cause of action does not begins to run for purposes of the statute of limitations period if the plaintiff is ignorant of the injury caused by the defendant. The discovery rule in Alabama is statutorily prescribed for product liability actions.  The code specifically states:

> (b) Where the personal injury, including personal injury resulting in death, or property damage (i) either is latent or by its nature is not discoverable in the exercise

of reasonable diligence at the time of its occurrence, and (ii) is the result of ingestion of or exposure to some toxic or harmful or injury-producing substance, element or particle, including radiation, over a period of time as opposed to resulting from a sudden and fortuitous trauma, then, in that event, the product liability action claiming damages for such personal injury, or property damage must be commenced within one year from the date such personal injury or property damage is or in the exercise of reasonable diligence should have been discovered by the plaintiff or the plaintiff's decedent, and in such cases each of the elements of the product liability action shall be deemed to accrue at the time the personal injury is or in the exercise of reasonable diligence should have been discovered by the plaintiff or the plaintiff's decedent; and

Alabama Code § 6-5-502(b).

The Supreme Court of Alabama defined as "[a] hidden or concealed defect," "[o]ne which could not be discovered by reasonable and customary inspection." *Collier v. Duprel*, 480 So.2d 1196, 1199 (Ala. 1985) (citing Black's Law Dictionary (5th ed. 1979). Alabama's discovery rule applies to defective Chinese-manufactured product liability claims.

In this instance, Defendants cannot demonstrate that Plaintiff, who is a layman, should have known that the home contained defective drywall made by Defendant Knauf or that he was being exposed to off-gassing from drywall. Defendants have not presented any tangible evidence to rebut Plaintiff's discovery responses regarding the date of discovery of the defective Knauf product, either actually or constructively at an earlier identifiable date.

It is an unreasonable position that some unidentified smell or corrosion places a homeowner on notice that her home contains defective drywall, particularly when Defendant Knauf has issued no product recall or warning to Alabama homeowners regarding their defective drywall product. In Alabama, like any southern state, there could be any number of environmental sources causing a smell. In addition, there could be environmental sources causing corrosion such as well water or a water supply with a high sulfur content. It is not an unreasonable explanation for a "smell" to be present in and around a Alabama home caused by

an environmental source outside the home. Defendants have failed to provide undisputed proof that a smell noted by Plaintiff intermittently during ownership was indeed generated by Knauf's defective drywall in the Affected Property.

It is an undisputed fact that Plaintiff has no expertise in construction, environmental contaminants, or defective Chinese drywall.  It takes an inspection by an experienced drywall inspector to confirm the existence of defective Chinese-manufactured in a property.  In addition, not every homeowner is prepared to pay a fee between $500.00 and $2,000.00 for a thorough inspection of their home for the presence of defective drywall manufactured by Knauf. "Discovery" under Alabama law occurs when the manufacturer's markings are found and confirmed by an experienced inspector or some other person with expertise, not at any point earlier. This would be the causal connection to the possible injury.  Reliance on an argument that Plaintiff acted unreasonably to discover the drywall at an earlier date is a genuine difference regarding a material fact in which a trier of fact could find that Plaintiff acted reasonably. It is certainly possible for a trier of fact to find that Plaintiff's actions prior to discovery were reasonable; therefore, summary judgment must be denied.

### C. Knauf had a duty to warn Plaintiff regarding defective nature of its drywall after the sale but chose to remain silent.

Alabama law recognizes a manufacturer's post-sale duty to warn consumers of defective products. In a 1998 cased, *Lawley and Bryant Hicks v. Commercial Union Insurance Co*., 652 So.2d 211 (Ala.1994), the Alabama Supreme Court found that a duty to warn is triggered when the supplier has "no reason to believe" that the user will realize the "dangerous condition' of the product referred to in the Restatement of Torts (Second) § 388. The court was relying on earlier precedent for this finding. *See Gurley v. American Honda Motor Co.*, 505 So.2d 358, 361 (Ala.1987) (stating that "[t]here is a duty to warn of those dangers which the owner or user

would not be aware of under the particular circumstances of his use of the product in question");

*Ford Motor Co. v. Rodgers*, 337 So.2d 736, 739 (Ala.1976) ("The objective of placing a duty to

warn on the manufacturer or supplier is to inform a user of the danger [of] which he is not

aware[;] therefore, there is no duty to warn when the danger is obvious."). Thus, the

manufacturer is not required to provide a redundant warning, but is required to provide a warning

of those dangers that are not obvious to the consumer.  In 1987, the Alabama Supreme Court

found that the duty to warn is a jury question:

> "Alabama law imposes a duty to warn of inherent and imminent dangers in a
> product when used in its usual manner. *Rivers v. Stihl, Inc*., 434 So.2d 766, 773
> (Ala.1983). Whether there is a duty to warn, and if so, the adequacy of the warning
> are **usually questions for the jury**. *Lowe v. General Motors*, 624 F.2d 1373, 1381-
> 82 (5th Cir.1980). The issue may be withdrawn from the jury only if the risk is so
> remote that reasonable persons could not agree on the existence of a duty to warn.
> *See Grau v. Procter & Gamble Co*., 324 F.2d 309 (5th Cir.1963); *Griggs v. Combe,
> Inc*., 456 So.2d 790 (Ala.1984). After a careful review of the evidence, we find that
> reasonable persons could find a duty to warn of the risk of a tire explosion under
> these conditions. As such, the jury was entitled to decide whether there existed such
> a duty."

*State Farm Fire and Cas. Co. v. J.B. Plastics Inc*., 505 So.2d 1223, 1227 (Ala. 1987) (emphasis
added)

The Defendants argue that Plaintiff was allegedly on notice of the presence of the

defective product produced by Knauf; however, Defendants fail to specify what notice Plaintiffs

received.  What are the exact warnings that Plaintiff should have received from Knauf?  And,

what date did Knauf publish the warnings to consumers?  Defendant Knauf has failed to present

anything specific that Plaintiff might have received.  Defendants could easily have sent warnings

to potential recipients of its drywall – they're in possession of business records that could have

been used to identify all downstream purchasers and ultimately the recipients of their product.

Defendant Knauf chose to take no such action to remedy the problem they created.  In Alabama,

defective Chinese drywall manufacturers have a duty to warn about certain risks even after a

product is no longer in the manufacturer's possession and has been transferred or sold to the consumer or end-user.

If Defendant Knauf's position is that a warning was given to Plaintiff, they should produce that warning. Without a specific warning to Plaintiffs by Defendant Knauf or some downstream distributor or agent, we are left without the ability to evaluate the terms of the warning for adequacy; therefore, this Court must view the omission in a light most favorable to Plaintiff and find a material fact exists to be decided by a trier of fact regarding notice.

### D. Equitable estoppel prevents Defendants from benefitting due to their choice to intentionally conceal information about their defective drywall.

The principles of equitable estoppel are applicable here to prevent the Knauf Defendants from taking unfair advantage of homeowners who may have only received limited or inaccurate information about the defective Knauf-manufactured drywall through some other source. Defendant Knauf possessed the most accurate information about their defective product and cannot rely on some other entity to meet their burden to consumers.

Alabama recognizes equitable estoppel and will apply the theory in circumstances such as the instant one. The purpose of the doctrine of equitable estoppel is to promote equity and justice in an individual case by preventing a party from asserting rights under a general rule of law when his own conduct renders the assertion of such rights contrary to equity and good conscience. *Mazer v. Jackson Ins. Agency*, 340 So.2d 770 (Ala.1976). The party asserting the doctrine of equitable estoppel may not predicate his claim on his own dereliction of duty or wrongful conduct. *Draughon v. General Finance Credit Corp*., 362 So.2d 880, 884 (Ala.1978)." Plaintiff, the party asserting equitable estoppel here, is free from fault. It is evident that Defendant Knauf's failure to issue a product recall or specific warning to potentially-affected

homeowners is motivated by their desire to minimize legal claims, based on their complete failure to issue any type of warning to consumers between 2006 and 2020.

Equitable estoppel colors all legal defenses and all assertions regarding Plaintiffs damages or documentation offered by Plaintiffs in support of damages being sought.  Plaintiffs detrimentally relied on the lack of warning when purchasing Affected Property after Defendant Knauf knew that their defective drywall might lead to "thousands" of claims for its drywall, yet remained silent. (See Exhibit E – an email between Knauf corporate officers C. Wang, M. Norris, and Jawahar re "USA smelly board," the "situation in Miami is out of control," and "it will be a big problem not only in Miami but all over the USA Market, maybe cover thousand[s] of houses.").  Defendant Knauf has failed to provide proof that a warning was issued at any time to any consumer; thus, a trier of fact will ultimately decide the impact of Defendant Knauf's concealment of their product's defect when evaluating damages at trial.

### E.  Alabama's requirements for dismissal based on *res judicata* have not met in this instance.

Defendants have argued that the prior homeowner's registration in the Global Banner Inex settlement precludes Plaintiffs' ability to pursue claims through the *Bennett* action against the Knauf Defendants, citing *res judicata* as the basis.  In Alabama, all of the elements of *res judicata* must be present before that doctrine will act as a bar. *Sanders v. First Bank of Grove Hill*, 564 So.2d 869 (Ala.1990).  Under Alabama law, "the essential elements of *res judicata* are (1) a prior judgment on the merits, (2) rendered by a court of competent jurisdiction, (3) with substantial identity of parties, and (4) with the same cause of action presented in both suits." *Wesch v. Folsom*, 6 F.3d 1465, 1471 (11th Cir.1993); *Equity Res. Mgmt., Inc. v. Vinson*, 723 So.2d 634, 636 (Ala.1998).  Defendants haven't presented evidence that any of the elements required under Alabama law are present for imposition of a res judicata defense.

Defendants provided an exhibit, a declaration by Jake Woody of Brown Greer, PLC, confirming that the owner prior to Plaintiffs registered a claim in the Global Banner Inex settlement; however, they've provided nothing more.  And, Mr. Woody's declaration is insufficient to meet the legal burden required under Alabama law.  There's no evidence that the previous owner did anything more than register in the class settlement before the home was foreclosed by the U.S. Department of Veterans Affairs, the entity that sold the property to Plaintiff in 2012.  With only Mr. Woody's declaration offered, this Court must view all deficiencies in Defendant's affirmative defense in a light most favorable to Plaintiff and deny summary judgment.  The Defendants have not met their burden with regard to res judicata in this instance.

IV.   **CONCLUSION**

This lawsuit was filed because Defendant Knauf manufactured defective drywall found in Plaintiff's property.  The Knauf Defendants have stipulated that their drywall product is indeed defective.  Although counsel for Defendant Knauf has crafted an argument for summary judgment, the facts and law in this instance simply do not support their legal position or their motion.

The exhibits, including the Warranty Deed, Plaintiff Profile Form, Supplemental Plaintiff Profile Form, Plaintiff Fact Sheet and inspection summary letter attached to this Opposition demonstrate that, at a minimum, Plaintiff's claims were timely filed in the *Bennett* action and no preclusive effect based on a res judicata is sufficient for summary judgment dismissal.

For the foregoing reasons, Defendants' Motion for Summary Judgment should be denied.

/s/ *James V. Doyle, Jr.*

James V. Doyle, Jr.
DOYLE LAW FIRM, PC
2100 Southbridge Pkwy., Suite 650
Birmingham, AL 35209
Tele: 205-533-9500
Fax: 844-638-5812
jimmy@doylefirm.com

*Attorney for Plaintiff*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that the above and foregoing Plaintiffs Joshua Kelley and Terry Hamilton's Opposition to Defendant Knauf's Motion for Summary Judgment has been served on Plaintiffs' Liaison Counsel, Russ Herman, and Defendants' Liaison Counsel, Kerry Miller, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047, on this 11th day of February, 2020.


/s/ *James V. Doyle, Jr.*

James V. Doyle, Jr.
DOYLE LAW FIRM, PC