UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In Re: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL 2047 |
| | SECTION "L" |
| This document relates to: | JUDGE ELDON FALLON |
| *Elizabeth Bennett, et al v. Gebr. Knauf Verwaltungsgesellschaft, KG, et al* | |
| Case No. 14:cv-2722 | MAGISTRATE JOSEPH WILKINSON, JR. |

**OMNIBUS REPLY MEMORANDUM IN SUPPORT OF
MOTIONS FOR SUMMARY JUDGMENT ON CLAIMS ASSERTED BY
<u>PEGGY POWELL AND ESTATE OF CATHERINE BABER</u>**

**MAY IT PLEASE THE COURT:**

Defendant, Knauf Gips KG and Knauf Plasterboard (Tianjin) Co., Ltd. (the "Knauf Defendants"), through undersigned counsel, respectfully submit this Reply Memorandum in Support of its Motions for Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure as to the claims asserted by Peggy Powell (R. Doc. 22412) and the Estate of Catherine Baber ("Baber") (collectively "Plaintiffs") (Rec. Doc. 22446) against them in Plaintiffs' Fifth Amended Class Action Complaint (the "Fifth Amended Complaint").[1]

First, Powell's proposed declaration violates the "sham affidavit rule" and Baber's attached untimely documents were never before produced, and therefore should be stricken and disregarded. Second, Plaintiffs' claims are barred by the Mississippi Statute of Limitations. Third,

---

[1] At the outset, Plaintiffs have indicated that the only issue to decide at trial is damages. This is patently incorrect because while the Knauf Defendants have offered to stipulate to product defect in appropriate cases, Plaintiff has not agreed to any proposed stipulations. Moreover, causation will be an issue at trial.

no duty to warn, including post-sale, prevented the Statute of Limitations from running. Fourth, *American Pipe*/equitable tolling does not apply to the subsequent class actions like *Bennett* and Plaintiffs' claims. Fifth, Baber failed to dispute that her claim was extinguished when the Property was lost in foreclosure. Finally, Powell and Baber have not provided any evidence to dispute the uncontested facts set forth by the Knauf Defendants.

A. **Powell's Declaration violates the Sham Affidavit Rule and Baber's New Documents are Untimely.**

First, Powell's Opposition (R. Doc. 22552) contains a declaration[2] that violates the "sham affidavit" rule, which prohibits manufacturing disputes of fact merely to defeat motions for summary judgment. *See Hacienda Records, L.P. v. Ramos*, 718 Fed. App'x 223, 235 (5th Cir. 2018). As the Fifth Circuit has explained, "[i]f a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact." *Doe ex rel. Doe v. Dallas Independent Sch. Dist.*, 220 F.3d 380, 286 (5th Cir. 2000) (quoting *Perma Research and Dev. Co. v. Singer Co.*, 410 F.2d 572, 578 (2d Cir. 1969)). Powell had ample opportunity at her deposition to explain her answers and it was Ms. Powell herself that raised the inaccuracy of her sworn plaintiff profile forms to correct that she learned of the presence of defective Chinese drywall in her Property following a prospective buyer's inspection in October 2014. After her counsel stopped the deposition to advise, Powell's only clarification was that she did not learn the identity of the manufacturer of the defective Chinese drywall until 2018 when she viewed it herself without an inspection.[3] Ms. Powell cannot

---

[2] R. Doc. 22552-6.
[3] R. Doc. 22412-4. At the time she was informed of the Chinese drywall, Powell saw blackening and other symptoms associated with Chinese drywall but decided to "deal with it later" and in 2018 she viewed the manufacturer herself without an inspection.

now, through a declaration, create an issue of fact by purporting to contradict this prior testimony by asserting she was unaware that her Property contained defective Chinese drywall following the October 2014 inspection.

Next, Baber's Opposition (R. Doc. 22573) contains an untimely SPPF[4] produced for the first time as well as an Exhibit G[5] that contains estate information which was never produced or provided to the Knauf Defendants until the filing of Plaintiffs' opposition. Pursuant to Fed. R. Civ. P. 37(b)(2)(A), if a party fails to obey an order to provide or permit discovery the court may issue orders, including striking the pleadings in whole or in part or dismissing the action or proceeding in whole or in part. *See also Terrance v. Pointe Coupee Parish Police Jury*, 177 Fed. App'x 457, 459 (5th Cir. 2006) (holding that the district court did not abuse its discretion in excluding evidence because the plaintiffs failed to provide a reason for the late disclosure, failed to identify the importance of the testimony, and failed to file an objection to the motion); *Heidtman v. County of El Paso*, 171 F.3d 1038, 1040 (5th Cir.1999) (holding that the district court did not abuse its discretion in excluding evidence because the plaintiffs provided no explanation for their delay). Furthermore, Rule 37 provides that a party cannot use documents "on a motion, at a hearing, or at a trial" if requested documents have not been previously disclosed. *Tex. A & M Res. Found. v. Magna Transp., Inc.*, 338 F.3d 394, 401-02 (5th Cir. 2003). Finally, this court "has broad discretion in all discovery matters, and such discretion will not be disturbed ordinarily unless there are unusual circumstances showing a clear abuse." *Moore v. CITGO Ref. & Chemicals Co., L.P.*, 735 F.3d 309, 315 (5th Cir. 2013 (quoting *Kelly v. Syria Shell Petroleum Dev. B.V.*, 213 F.3d 841, 855 (5th Cir. 2000) (internal quotation omitted).

---

[4] Although dated July 2, 2018, the SPPF was never produced to the Knauf Defendants until it was attached to Plaintiff's Opposition. R. Doc. 22573-3.

[5] R. Doc. 22573-6.

The delayed disclosure, though without foundation, support, or compliance with pretrial orders, should be stricken from the record as it does not comply with this Court's previous discovery orders,[6] Plaintiff provides no explanation for the untimely submission, and the submission is prejudicial to the Knauf Defendants' defenses and after the conclusion of fact discovery.

**B.      Powell's and Baber's Claims are Barred by Statute of Limitations**

There is no genuine issue of material fact, and Plaintiffs' claims are barred by the Statute of Limitations.  The three-year statute of limitations set forth in section 15-1-49 applies to the claims for damage to real property. Miss. Code Ann. § 15-1-49. The Mississippi Supreme Court has confirmed that "causes of action accrue upon **discovery of the injury, *not* discovery of the injury *and its cause***." *Milam v. Kelly*, No. 2017-CA-01760-COA, 2019 WL 3423400, at *3 (Miss. Ct. App. July 30, 2019) (emphasis added) (citing *Ridgway Lane & Assocs., Inc. v. Watson*, 189 So. 3d 626, 629 (Miss. 2016). Indeed, the Mississippi Supreme Court has determined a claim is barred under the statute of limitations in an action regarding property damage when suit was not brought within three years of the discovery of the injury to the property. *Id*. at 6 (affirming that statute of limitations begins to run from the date of the injury (the flooding) and not the date the plaintiff ascertained the cause).

Here, it is undisputed that Powell and Baber were aware of the injury to their respective Properties due to the alleged presence of defective Chinese drywall more than three years prior to filing action on August 31, 2018.  For example, Powell moved into the Property in June 2006 following Hurricane damage.  In October 2014, after moving to a new residence, Powell discovered the injury to her Property when an inspection was performed and Powell was put on

---

[6] R. Doc. 22409 (Ordering production of documents requested within 21 days of the deposition).

notice that the Property had defective Chinese drywall and the sale was cancelled. Powell researched the issue of Chinese drywall, contacted those involved in the supply and installation of the drywall in her Property, and examined the blackened wires in her panel box but ultimately made the conscious decision to "deal with it later." Powell took no further action until 2018 when she alleges she determined the alleged manufacturer by simply going into her attic and seeing "Knauf." Plaintiffs arguments that she could not find an inspector, did not want to pay for her own inspection, or that she was unable to retain counsel are irrelevant and unfounded in the record. Powell was aware that the Property had defective Chinese drywall for over four years, and it simply took her going into the attic one time to determine the alleged manufacturer of the defective drywall.[7] Therefore, Powell's claims are barred by the Statute of Limitations.

As to Baber, the evidence is uncontroverted that Catherine Baber did not file claims in this matter until November 24, 2016, the alleged damage from defective drywall was in 2006 when it was installed. Between 2006 and 2013, Baber sustained alleged malfunctions in electronics, appliances, and HVAC systems. After Baber moved out of the Property 2013, the Property was allegedly used as a rental although no rental records were provided. Ms. Baber later passed away and the executrix of Ms. Baber's estate does not have any knowledge to dispute when Mr. or Mrs. Baber became aware of Chinese drywall in the Property. Therefore, because Baber did not file claims in this action until November 2016, Baber's claims are barred by the statute of limitations.

## C.   Plaintiff's Arguments Concerning a Duty to Warn Fail

In an effort to circumvent discovery and evidentiary obligations and the limitations period discussed above, Plaintiff argues that the Knauf Defendants should be "equitably estopped" from

---

[7] "In determining whether a plaintiff knew or reasonably should have known that he had an injury, the Court considers the actions taken by the plaintiff." *Milam v. Kelly*, No. 2017-CA-01760-COA, 2019 WL 3423400, at *4 (Miss. Ct. App. July 30, 2019).

raising statute of limitations and documentation issues because the Knauf Defendants allegedly failed to warn Plaintiff of defective drywall after a post-sale duty to warn arose. Not only is the Fifth Amended Complaint devoid of any such allegation, but Plaintiff has not shown and cannot now show that any such duty arose as to him specifically or that the Knauf Defendants breached any such duty. Furthermore, even if construed as a failure to warn at the time of sale, which is contrary to Plaintiffs' arguments, Plaintiffs have not provided any evidence of knowledge or notice of alleged defects in the alleged defective drywall at the time KPT sold and delivered the drywall. Instead, Plaintiffs attach a single email alleging notice after customer complaints were received. There is no duty to warn of defects of which the manufacturer is not aware at the time of sale. *See Austin v. Will-Burt Co.*, 361 F.3d 862, 870 (5th Cir. 2004) ("plain meaning of the MPLA's language is that the statute imposes liability on the manufacturer or seller for warnings that were inadequate at the time of sale, not for warnings that became inadequate at some later time") (quoting *Palmer v. Volkswagen of Am., Inc.*, 905 So. 2d 564 (Miss. Ct. App. Aug. 26, 2003)); *Cross v. Amtec Med., Inc.*, No. 3:09-CV-00168-HTW, 2012 WL 4603396, at *8 (S.D. Miss. Sept. 30, 2012).

Preliminarily, as to Plaintiffs' veiled post-sale duty to warn, the Fifth Amended Class Action Complaint is completely silent on any alleged breach by the Knauf Defendants of a post-sale duty to warn. (*See generally* Doc. 21334). Even more, in arguing that the defects in the drywall were "latent," Plaintiff directly contradicts the oft-repeated allegation in the Fifth Amended Class Action Complaint that the drywall emits "noxious gases." (*See, e.g.*, *id.*, ¶¶ 23, 25, 27, 31). Plaintiff cannot use his Opposition brief to raise new claims; thus, his "post-sale duty to warn" arguments should be rejected. *See, e.g., DeKort v. Integrated Coast Guard Sys.*, 475 F. App'x 521, 522 (5th Cir. 2012) ("We also conclude that the district court did not err in denying DeKort's motion for

partial summary judgment because he attempted to raise a new claim, not asserted in his fifth amended complaint."); *see also Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1314 (11th Cir. 2004) ("[T]he Supreme Court has mandated a liberal pleading standard for civil complaints under Federal Rule of Civil Procedure 8(a). This standard however does not afford plaintiffs with an opportunity to raise new claims at the summary judgment stage.").

Even if the Court were to consider Plaintiff's post-sale "duty-to-warn" argument, Plaintiff's assertions fail on the merits because Mississippi courts have confirmed that Mississippi law does not require a post-sale duty to warn. Like its opposition to other claims in the Bennett Complaint, it is clear that Plaintiffs seek the imposition of a post-sale duty to warn, and the Fifth Circuit has concluded that § 11-1-63 "precludes imposition on a manufacturer or seller of a post-sale duty to warn." *Austin v. Will-Burt Co.*, 361 F.3d 862, 870 (5th Cir.2004); *see also Noah v. General Motors Corp.*, 882 So.2d 235, 239 (Miss. App.2004) (stating that "creating a post-sale duty to warn appears to conflict with § 11-1-63.").

Even if a post-sale duty was applicable, this Court is very familiar with the complex distribution network that was involved with the distribution of Chinese Drywall throughout the United States. (*See also* Doc. 22463 (conceding in a brief by one of the plaintiffs that "Chinese drywall entered the United States market, changing hands in the chain of commerce, and ultimately finding its way into thousands of homes and buildings in the United States")). The Knauf Defendants in concert with Banner, INEX, the builder/installer defendants and the PSC through various settlement notice programs, made a significant effort to identify and notify the individuals who purchased Chinese Drywall; as to those persons whom the Knauf Defendants were not able to contact regarding Chinese Drywall, Plaintiff has not shown any method by which the Knauf Defendants could have identified and warned Plaintiff. Absent evidence that "those to whom a

warning might be provided can be identified," *see id.*, no duty to warn arose as to Plaintiff, and the post-sale duty-to-warn claims fail, *see, e.g.*, *Greater N. Ins. Co. v. Honeywell Int'l, Inc.*, 911 N.W.2d 510, 522 (Minn. 2018) (adopting the approach from the Restatement (Third) of Torts and explaining that no duty to warn arose where the defendant was the first company in a lengthy distribution chain). Moreover, even if a duty existed, the Knauf Defendants would have satisfied their obligation to warn, and Plaintiff could not demonstrate a breach. As the Court knows (and approved), the Knauf Defendants, along with co-defendants in the distribution chain and the PSC, engaged in a substantial notice campaign in which many ultimate purchasers of Chinese Drywall were located and notified. (*See, e.g.*, Doc. 12138 at 24 (approving of the notice proposal included in the Knauf settlement)). Plaintiff has presented no evidence to show that these notice efforts were unreasonable, and thus these claims should be dismissed. *See, e.g.*, *Robinson v. Brandtjen & Kluge, Inc.*, 500 F.3d 691, 698 (8th Cir. 2007) ("In this case, moreover, there is undisputed evidence that B & K did undertake a post-sale warning campaign…. Whatever the scope of the post-sale duty to warn, it does not extend to warning each individual employee of a company that owns a press some sixty-one years after the sale.")

Plaintiffs' misguided arguments are simply an attempt to assert excuses to overcome the statute of limitations, lack of evidence, and the utter failure to meet their burden of proof by asserting that the notice program in the Knauf Class Settlement Agreement was inadequate.[8] The Court approved the Knauf Class Settlement Agreement, the notice program, and the other class settlements and notice programs on February 7, 2013. The final approval order is now a final judgment and Plaintiffs' arguments, though completely inaccurate, unsupported, and non-existent

---

[8] R. Doc. 22573 at 22-23.

in pleading and in law, amount to nothing more than an impermissible collateral attack on the Knauf Class Settlement and the notice program approved by this Court.

**D.    *American Pipe*/Equitable Tolling Does Not Apply**

Plaintiffs' claims are not saved by *American Pipe*/equitable tolling. First, for the first time, Plaintiffs assert tolling pursuant to the *Bennett* Complaint and this Court's recent denial of class certification. This Court has already recognized that courts have uniformly held that *American Pipe* operates only with respect to the first class action filed for a specific controversy.[9] This limitation is known as the prohibition against "stacking" or "piggybacking" class actions for purposes of tolling. *See, e.g., Basch v. Ground Round, Inc.*, 139 F.3d 6, 11 (1st Cir. 1998) ("Plaintiffs may not stack one class action on top of another and continue to toll the statute of limitations indefinitely."); *Griffin v. Singletary*, 17 F.3d 356, 359 (11th Cir. 1994) (same); *Salazar-Calderon v. Presido Valley Farmers Ass'n*, 765 F.2d 1334, 1350 (5th Cir. 1985) ("Plaintiffs have no authority for their contention that putative class members may piggyback one class action onto another and thus toll the statute of limitations indefinitely, nor have we found any."). As Plaintiffs and the Court have previously recognized, the earliest class actions were several years before the *Bennett* class action, and therefore, *Bennett* cannot be used for purposes of successive class action tolling.

Second, even if tolling was possible, this Court has already determined that *American Pipe* does not automatically apply in diversity cases:

> The limitations periods of *American Pipe* and *Crown, Cork* were derived from federal statutes. Here, we are dealing with Hawaii's limitation statutes. Because none of them provide for tolling in a situation such as exists here, it is doubtful that either *American Pipe* or *Crown, Cork* can be treated as applicable precedent.

---

[9] R. Doc. 22124 at p. 19.

*Orleans Parish Sch. Bd. v. U.S. Gypsum Co.*, 892 F. Supp. 794, 805 (E.D. La. 1995). Here, Mississippi has no class action procedure and does not allow class actions at all and so it would certainly not recognize cross-jurisdictional class action tolling. *See In re Lorazepam & Clorazepate Antitrust Litigation*, 2004 WL 7081446 (D.D.C. May 18, 2004). This Court has previously determined that Mississippi would not adopt cross-jurisdictional tolling. (R. Doc. 22124) (citing *Boone v. Citigroup, Inc*., 416 F.3d 382, 393 (5th Cir. 2005).[10]

Third, *American Pipe* tolling does not apply for subsequent class actions like the *Bennett* action. The Supreme Court confirmed in *Resh* that *American Pipe* does not toll class actions like the *Bennett* class action, and therefore equitable tolling does not apply to Plaintiff's claims. Justice Ginsburg, writing for the Court in *Resh*, plainly held that "*American Pipe* does not permit a plaintiff who waits out the statute of limitations to piggyback on an earlier, timely filed class action."[11] The Court explained that the *American Pipe* line of cases focused on "putative class members who wish to sue individually after a class-certification denial," but did not "so much as hint[] that tolling extends to otherwise time-barred class claims."[12]

This was not a case where a putative class member is seeking to sue individually after a class-certification denial of the first class action filed for a specific controversy. Rather, Plaintiff is arguing that it should be allowed to piggyback on the earlier class actions and/or the Knauf Settlement Class up until the February 7, 2013 final approval date. However, Plaintiff was not a

---

[10] Plaintiff also submits an argument regarding CAFA.  CAFA is jurisdictional and Plaintiff cites no case law that cross-jurisdictional tolling is permitted across all states in light of CAFA.  Indeed, in this MDL, this Court has previously declined to accept this argument.  R. Doc. 22124 at p. 17, n. 3.
[11] *China Agritech, Inc. v. Resh*, 138 S. Ct. 1800, 1806 (2018).
[12] *Id.* The Court concluded that it would be inefficient to allow "maintenance of untimely successive class actions"; instead, "any additional class filings should be made early on, soon after the commencement of the first action seeking class certification" because "efficiency favors early assertion of competing class representative claims. *Id.* at 1811. Indeed, any assertion that the class claims were tolled would lead to inefficiency and a lack of repose because it "would allow the statute of limitations to be extended time and again; as each class is denied certification, a new named plaintiff could file a class complaint that resuscitates the litigation." *Id.* at 1808. The Court noted that if accepted, "the time for filing successive class suits, if tolling were allowed, could be limitless." *Id.* at 1809.

member of the Knauf Settlement Class. The Knauf Settlement Class was defined as "[A]ll persons or entities who as of December 9, 2011 filed a lawsuit in the Litigation as a named plaintiff (i.e., not an absent class member)...." By definition, plaintiff is excluded from this class and cannot benefit from any tolling. In this regard, Plaintiff's situation is completely different than the issue previously ruled on by this Court dealing with the Taishan entities. Rec. Doc. 22124. In this Court's March 6, 2019 ruling, it limited tolling to only *Brooke* plaintiffs who were members of the previously filed and certified *Amorin* class. Rec. Doc. 22124, p. 22. No such situation exists here. As such, *American Pipe*/equitable tolling does not apply, and Plaintiff's claims are barred by the Statute of Limitations.[13]

### E. Baber Failed to Dispute Her Claim was Extinguished by Foreclosure or that Ms. Baber had an Ownership Interest in the Property.

First, Plaintiffs did not provide any evidence or argument in opposition to dispute that Baber's claim was extinguished when the Property was lost interest in foreclosure. In Mississippi, "[a]fter a foreclosure sale, the debtor is divested of all legal and equitable interest in the foreclosed property." *Landmark Am. Ins. Co. v. Gatchell,* No. 2:11CV189-KS-MTP, 2015 WL 1806843, at *3 (S.D. Miss. Apr. 21, 2015) (citing *Moore v. Marathon Asset Mgmt., LLC,* 973 So.2d 1017, 1021 (¶ 18) (Miss.Ct.App.v2008); *see also Pepper v. Homesales, Inc.,* No. 1:08cv344, 2009 WL 544141, at *5 (S.D.Miss. Mar. 3, 2009) (holding that a lawful foreclosure sale extinguished any rights the plaintiff-mortgagor had in the subject property) (citing *Peoples Bank & Trust Co. & Bank of Miss. v. L & T Developers, Inc.,* 434 So.2d 699, 708 (Miss. 1983)). Here, it is undisputed that prior to her death, the Property was lost in foreclosure in 2017 when the mortgagee (The First

---

[13] Again, Plaintiff's reliance on Bennett as the tolling action is unfounded because it is a later subsequent, class action, and courts have uniformly held that *American Pipe* operates only with respect to the first class action filed for a specific controversy. *Salazar-Calderon v. Presido Valley Farmers Ass'n*, 765 F.2d 1334, 1350 (5th Cir. 1985) ("Plaintiffs have no authority for their contention that putative class members may piggyback one class action onto another and thus toll the statute of limitations indefinitely, nor have we found any.").

Bank) took ownership and possession of the Property and subsequently sold it.  At the time the Property was foreclosed, and to the extent she had any interest in the Property, Baber was divested of all legal and equitable interest in the foreclosed property and her claims in this matter were extinguished by law.

Second, even with the untimely produced Last Will and Testament of Charles Baber, Catherine Baber and her estate have failed to provide evidence of a colorable interest in any Chinese drywall related claim. "In Mississippi, parties have standing to sue 'when they assert a colorable interest in the subject matter of the litigation or experience an adverse effect from the conduct of the defendant, or as otherwise provided by law.' " *In re City of Biloxi*, 113 So. 3d 565, 570 (Miss. 2013) *Id.* at 33  (quoting *Burgess v. City of Gulfport,* 814 So.2d 149, 152–53 (Miss. 2002)). A party's claim "must be grounded in some legal right recognized by law, whether by statute or by common law" and that party must be able to show that it has "a present, existent actionable title or interest[.]" *City of Picayune v. S. Reg'l Corp.,* 916 So.2d 510, 526  (Miss. 2005). Here, the only timely evidence presented of prior ownership of the Property was the warranty deed transferring the Property to Charles Baber in 2006.  Further, Baber still has not provided any timely evidence that Catherine Baber actually received ownership of the Property nor has Baber presented evidence that the Estate of Catherine Baber has a "present, existent, actionable interest."[14]

**F.    Summary Judgment is Appropriate Because Plaintiffs have Not Provided Any Evidence to Dispute the Uncontested Facts Set Forth by the Knauf Defendants**

Plaintiffs bear the burden of proving the elements for their claim, including damages. *Holliday v. Pizza Inn, Inc*., 659 So2d 860, 864 (Miss. 1995); *Trapani v. Treutel*, 87 So. 3d 1096,

---

[14] Furthermore, this Court approved a supplemental plaintiff profile form over a year ago.  Baber never timely submitted a Supplemental Plaintiff Profile Form.   This Court has previously dismissed claims for Plaintiffs' failure to comply with pretrial orders.  *In re Vioxx Prod. Liab. Litig*., 388 F. App'x 391, 397 (5th Cir. 2010).  The same is warranted here and the claims of Baber should be dismissed.

1107–08 (Miss. Ct. App. 2012). The Mississippi Supreme Court has stated that [it] is absolutely incumbent upon the party seeking to prove damages to offer into evidence the best evidence available [as to] each and every item of damage. *Eastland v. Gregory*, 530 So.2d 172, 174 (Miss. 1988)."The measure of damages for breach of contract and property damage can be either the reasonable cost of replacement or repairs, or diminution in value." *Wells v. Price*, 102 So. 3d 1250, 1258 (Miss. Ct. App. 2012) (quoting *Check Cashers Express, Inc. v. Crowell*, 950 So.2d 1035, 1042 (¶ 19) (Miss.Ct.App.2007); *Bell v. First Columbus Nat'l Bank,* 493 So.2d 964, 970 (Miss.1986)). "The plaintiff must prove either of these measures with a reasonable certainty and the damage award must not unjustly enrich the plaintiff." *Id*. Mississippi courts have directed verdicts where plaintiffs have failed to prove damages by offering only testimony of damages. *Trapani v. Treutel*, 87 So. 3d 1096, 1099 (Miss. Ct. App. 2012) (directing verdict in favor of defendant and finding plaintiff failed to meet burden for damages for under negligence property damage claim by use of Plaintiff testimony on value of damage).

As the moving party and the party who does not bear the burden of proof at trial on Plaintiff's damage claims, the Knauf Defendants had the burden only to "point out the absence of evidence supporting the essential elements of the opposing party's case. *In re Petition of Settoon Towing LLC*, 722 F. Supp. 2d 710, 713 (E.D. La. 2010). The Knauf Defendants more than met this burden in their motion by pointing out the deficiencies in Plaintiffs' claims. Therefore, the burden shifted to Plaintiffs to "specifically identify evidence indicating a genuine issue for trial" on those claims. *Ratliff v. Advisors Asset Mgmt., Inc.,* 660 F. App'x 290, 291 (5th Cir. 2016). To meet this burden, a plaintiff is required "to come forward with competent evidence, such as affidavits or depositions, to buttress his claims." *Alderman v. Great Atl. & Pac. Tea Co.*, 332 F. Supp. 2d 932, 936 (E.D. La. 2004) "[U]nsubstantiated assertions are not competent summary

judgment evidence," *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998), and "[g]eneralizations that are contradicted by deposition testimony will not prevent summary judgment." *K. S. v. Nw. Indep. Sch. Dist.*, 689 F. App'x 780, 786 (5th Cir. 2017). Further, a party cannot defeat summary judgment by "cit[ing] only *legal* issues that are in dispute, making legal conclusions in their [opposition] rather than identifying material issues of fact." *Shimon v. Sewerage & Water Bd. of New Orleans,* No. CIV.A. 05-1392, 2010 WL 2696970, at *5 (E.D. La. July 1, 2010) (emphasis in original).

As to Powell, Ms. Powell provided deposition testimony that she would seek claims for personal property and diminution in value despite her negative responses in completed plaintiff form submissions  Nonetheless, Powell failed to produce any evidence to support damages for personal property or diminution in value. As to loss of use, Powell was never deprived of the use of the Property due to Chinese drywall and had already moved out to a new residence with her new husband in Gulfport, MS prior to the inspection that determined Chinese drywall in the Property.  Further, after Powell moved out of the Property, she was able to consistently rent it between 2014 and the present date.  Therefore, there is no genuine issue of fact as to Powell's claims for loss of use, personal property damage, and diminution in value and Powell has not and cannot meet her burden of proof.   Therefore, summary judgment on these claims is appropriate.

Next, Baber has not provided any evidence of damages other than personal guesses.  Baber submitted a list of personal property items alleged to have been damaged by Chinese drywall prior to 2013 when her parents were living in the Property.  The cause and cost of the damage are purely speculative by the representative of Baber's estate.  Furthermore, Baber has not provided any evidence of remediation costs incurred prior to the transfer of the Property.  Furthermore, estimated remediation costs are no longer claims of Baber because the Property was transferred prior to

remediation and Baber never or no longer has any interest in the Property. Indeed, it is undisputed that the mortgagee sold the Property in 2017 for approximately the same price as it appraised for when Baber owned it in 2015 such that Baber has not provided any evidence of diminution in value. In terms of loss of use, it is undisputed Baber left the property due to the preference of the then owner, Charles Baber to move to a different property due to his preference for having a larger house with more land acreage, and not due to the alleged presence of Chinese drywall. Therefore, Baber has not and cannot submit evidence to support any loss of use claim. Finally, in terms of the cause of foreclosure and lost income, Baber has not offered any competent evidence of lost rents or that foreclosure was a result of Chinese drywall. Therefore, even if Baber's claims are not barred, summary judgment is appropriate because Baber has not and cannot provide any evidence of damages.

G. Conclusion

For these reasons, and for the reasons set forth in the respective Motions for Summary Judgment, Plaintiffs claims must be dismissed.

Respectfully submitted,

**FISHMAN HAYGOOD, LLP**

/s/ *Kerry J. Miller*
**KERRY J. MILLER (#24562), T.A.**
**PAUL C. THIBODEAUX (#29446)**
**DANIEL J. DYSART (#33812)**
201 St. Charles Avenue, Suite 4600
New Orleans, LA 70170
Telephone:      504.556.5549
Facsimile:       504.310.0275
Email:              kmiller@fishmanhaygood.com

*Counsel for Defendants,*
*Knauf Gips KG and*
*Knauf Plasterboard (Tianjin) Co., Ltd.*

## **CERTIFICATE OF SERVICE**

      I hereby certify that the above and foregoing pleading has been served upon Russ Herman, Plaintiffs' Liaison Counsel, by email, to all parties by electronically uploading the same to LexisNexis File & Serve in accordance with Pre-Trial Order No. 6, individually to pro se claimants via U.S. Mail, and that the foregoing was filed with the Clerk of Court of the United States Court for the Eastern District of Louisiana, on this 14th day of February, 2020.

                                      /s/ *Kerry J. Miller*
                                      **KERRY J. MILLER**