# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In Re: **CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION** | **MDL 2047** |
| | **SECTION "L"** |
| This document relates to: | |
| ***Elizabeth Bennett, et al v. Gebr. Knauf Verwaltungsgesellschaft, KG, et al*** | **JUDGE ELDON FALLON** |
| Case No. 14:cv-2722 | **MAGISTRATE JOSEPH WILKINSON, JR.** |

**OMNIBUS REPLY MEMORANDUM IN SUPPORT OF MOTIONS FOR SUMMARY JUDGMENT ON CLAIMS ASSERTED BY BANK OF LOUISIANA, BONNIE AND CARL CORDIER, JACQUES AND SARAH BROUSSEAU, <u>KIM AND SCOTT ARMSTRONG, AND MICHAEL AND NICOLE NORRIS</u>**

**MAY IT PLEASE THE COURT:**

Defendants, Knauf Gips KG and Knauf Plasterboard (Tianjin) Co., Ltd. (the "Knauf Defendants"), through undersigned counsel, respectfully submit this Reply Memorandum in Support of their Motions for Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure as to the claims asserted against it by Bonnie and Carl Cordier (Rec. Doc.22436), Jacques and Sarah Brousseau (Rec. Doc. 22432), Kim and Scott Armstrong (Rec. Doc. 22430), Bank of Louisiana (Rec. Doc. 22431), and Michael and Nicole Norris (Rec. Doc. 22451) (collectively "Plaintiffs").[1]

First, Plaintiffs' claims are prescribed because Plaintiffs were aware or should have been aware of Chinese-manufactured drywall in the Property more than one year prior to filing claims

---

[1] At the outset, Plaintiffs have indicated that the only issue to decide at trial is damages. This is patently incorrect because while the Knauf Defendants have offered to stipulate to product defect in appropriate cases, Plaintiff has not agreed to any proposed stipulations.  Moreover, causation will be an issue at trial.

in the *Bennett* action. Second, no alleged latent defect or post-sale duty to warn prevented the prescriptive period from running. Third, *American Pipe*/equitable tolling does not apply and Plaintiffs' claims are prescribed. Fourth, Plaintiffs Armstrong, Bank of Louisiana, Norris, and Brousseau have not provided any evidence to dispute the uncontested facts set forth by the Knauf Defendants. Fifth, Plaintiff Brousseau and Bank of Louisiana assumed the risk of Chinese drywall by knowingly and voluntarily purchasing the respective Property "as-is" under the circumstances.

A.      **Plaintiffs' Claims are Prescribed.**

There is no genuine issue of material fact, and Plaintiffs' claims are prescribed. First, Plaintiffs' redhibition claims are prescribed because they had notice such that, with reasonable diligence, they would have discovered the facts upon which the cause of action is based. Although prescription does not commence against an alleged manufacturer until the date the injured party discovered or should have discovered the facts upon which the cause of action is based, this does not apply if plaintiff's ignorance is attributable to their own willfulness or neglect.[2] In short, the Plaintiffs knew or should have known of the presence of Chinese drywall such that their respective claims are prescribed:

- Bank of Louisiana purchased its Property in 2010 at foreclosure, but did not file a claim until January 31, 2016.[3] Following the purchase of the Property in 2010, neighbors and a real estate agent informed the Bank that the Property had Chinese drywall.[4] Further, in 2013, a property inspector informed the Bank that the Property had Chinese drywall.[5]

---

[2] *In re Ford Motor Co. Bronco II Prod. Liab. Litig.*, 982 F. Supp. 388, 395 (E.D. La. 1997) (citing *Corsey v. State Dept. of Corrections*, 375 So. 2d 1319, 1321-22 (La. 1979)).
[3] R. Doc. 20020.
[4] *Id.*
[5] *Id.*

- The Cordiers did not file a claim until November 13, 2014,[6] although they were informed that their Property contained Chinese drywall sometime in October 2013.[7] Further, since installing drywall in the Property in 2006, others noted a strange smell in the Property and certain personal property items allegedly failed or never worked.[8]

- The Brousseaus first filed a claim on November 21, 2016,[9] although they had always noticed a smell in their Property from the day they moved in around July 2012.[10] Further, immediately after purchasing the Property "as is" and moving in they experienced problems with the HVAC, lighting systems, and appliances.[11]

- The Armstrongs did not file a claim until January 31, 2016,[12] although they had noticed a strange smell upon moving into the Property in 2006 and multiple appliances failed within the two years of them moving in.[13] The Armstrongs knew about Chinese drywall from the news back in 2006 and were concerned that they had built the Property during 2006—resulting in them contacting InEx about the concerns.[14]

- The Norrises were not Plaintiffs in this action until May 14, 2018.[15] The Norrises purchased their newly constructed Property in August 2006.[16] Prior to moving out of the Property in 2015, Michael Norris became aware that other properties in their same development had issues with Chinese drywall—specifically he learned that the neighbor

---

[6] R. Doc. 1-1.
[7] R. Doc. 22436-1 at 3.
[8] *Id.*
[9] R. Doc. 20554.
[10] R. Doc. 22432-1 at 3.
[11] *Id.*
[12] R. Doc. 20020.
[13] R. Doc. 22430-1 at 2-3.
[14] *Id.* at p. 3-4.
[15] Nicole Norris is listed as a plaintiff in the Fourth Amended Complaint, which Plaintiffs moved for leave to file on November 21, 2016, and was thereafter filed in the record on May 14, 2018. R. Docs. 20554, 21333. Michael Norris and Nicole Norris are listed as plaintiffs in the Fifth Amended Complaint, which Plaintiffs moved for leave to file on March 6, 2018, and was thereafter filed in the record on May 14, 2018. R. Docs. 21234, 21334.
[16] R. Doc. 22451-1 at 3.

across the street had participated in a suit against the Knauf Defendants filed in 2009.[17]

Thus, it can be inferred that the Norrises first became aware of Chinese drywall in the

neighborhood between 2009 and 2015.

Where, as here, more than one year has elapsed from the date of injury, the claim is prescribed on its face and "the burden shifts to the plaintiff to prove an exception to prescription."[18] Plaintiffs each assert that the doctrine of *contra non valentum*/the discovery rule should apply to suspend the running of prescription.[19] "The doctrine of *contra non valentem* prevents the running of liberative prescription where the cause of action is not known or reasonably knowable by the plaintiff."[20] However, c*ontra non valemtum* does not apply to "except the plaintiff's claim from the running of prescription if his ignorance is attributable to his own willfulness or neglect; that is, a plaintiff will be deemed to know what he could by reasonable diligence have learned."[21] Indeed, the Louisiana Supreme Court has cautioned that this equitable doctrine must be strictly construed and applies only in "exceptional circumstances."[22] The doctrine only suspends the running of prescription until a party obtains actual or constructive knowledge of facts sufficient to apprise a reasonable person that he may be the victim of a tort.[23] A party is deemed to possess constructive knowledge when the party acquires "sufficient information, which, if pursued, will lead to the true condition of things."[24] "Such notice is tantamount to knowledge or notice of everything to which

---

[17] R. Doc. 22451-1 at 3-4.

[18] *Terrebonne Par. Sch. Bd. v. Columbia Gulf Transmission Co.*, 290 F.3d 303, 320 (5th Cir. 2002); *see also Kling Realty Co. v. Chevron U.S., Inc.*, 575 F.3d 510, 517 (5th Cir. 2009).

[19] *See e.g.*, R. Doc. 22658 at p. 18.

[20] *Cole v. Celotex Corp.*, 620 So. 2d 1154, 1156 (La. 1993); *see also Eldredge v. Martin Marietta Corp.*, 207 F.3d 737, 743 (5th Cir. 2000).

[21] *Corsey v. State, Through Dep't of Corr.*, 375 So. 2d 1319, 1322 (La. 1979) (citing *Cartwright v. Chrysler Corporation*, 255 La. 597, 598, 232 So. 2d 285 (1970); *Sumerall v. St. Paul Fire & Marine Ins. Co.*, 366 So. 2d 213 (La. App. 2 Cir. 1978)).

[22] *Richards v. Choice Hotels Int'l, Inc.*, 01-1646 (La. 2/26/02); 142 So. 3d 249, 253.

[23] *See Terrebonne Par. Sch. Bd.*, 290 F.3d at 320 (citing *Eldredge*, 207 F.3d at 743); *Campo v. Correa*, 01-2797 (La. 6/21/02); 828 So. 3d 502, 510.

[24] *Marin v. Exxon Mobil Corp.*, 09-2368 (La. 10/19/10), 48 So. 3d 234, 246.

a reasonable inquiry may lead."[25] Courts look to the reasonableness of a plaintiff's action or inaction in light of what he knew or should have known.[26]

In each case, while these Plaintiffs now seek compensation for "noxious gases and odors," and each were on notice of everything to which a reasonable inquiry may lead, they each took no action to investigate the issues they were experiencing until years later. In short, Plaintiffs were on notice of the alleged defects in their respective properties since shortly after moving into or taking possession of their respective Property or at the very least were provided the knowledge such that through reasonable diligence they would have determined Chinese-manufactured drywall at that time like they did when they finally discovered Chinese drywall. Thus, the doctrine of *contra non valentum* does not apply to change the analysis above and Plaintiffs' claims are prescribed.

Overall, there is no genuine issue of material fact that all Plaintiffs were aware or should have been aware of Chinese-manufactured drywall in their respective Property more than one year prior to filing claims in the *Bennett* action. Although all Plaintiffs assert in their respective Oppositions that they affirmed at deposition that discovery of Knauf-manufactured drywall occurred within one year of filing a claim, they cite to no deposition testimony to support this assertion.[27] Plaintiffs' redhibition and non-redhibition claims are barred by prescription and should be dismissed with prejudice.

**B.     Plaintiffs' Arguments Concerning a Post-Sale Duty to Warn, Latent Defect, and Equitable Estoppel Fail.**

In an effort to circumvent the fact that their claims are prescribed, Plaintiffs each raise several arguments in their respective Oppositions that Defendant's should be "equitably estopped" from alleging prescription because a post-sale duty to warn applied and/or latent defects existed.

---

[25] *Campo*, 828 So. 3d at 511.
[26] *Marin*, 48 So. 3d at 246.
[27] R. Doc. 22567 at 16; R. Doc. 22568 at 16; R. Doc. 22566 at 16; R. Doc. 22575 at 16.

However, as shown below, these arguments are without merit and do not change the fact that Plaintiffs' claims are prescribed.

First, Plaintiffs make the argument that Defendant's should be "equitably estopped" from "benefitting" because the Knauf Defendants allegedly failed to warn Plaintiff of defective drywall after a post-sale duty to warn arose. Not only is the Fifth Amended Complaint devoid of any such allegation, but Plaintiffs have not shown and cannot now show that any such duty arose as to them specifically or that the Knauf Defendants breached any such duty.

Preliminarily, the Fifth Amended Class Action Complaint is completely silent on any alleged breach by the Knauf Defendants of a post-sale duty to warn.[28] Even more, in arguing that the defects in the drywall were "latent," Plaintiff directly contradicts the oft-repeated allegation in the Fifth Amended Class Action Complaint that the drywall emits "noxious gases."[29] Plaintiffs cannot use their Opposition brief to raise new claims; thus, Plaintiffs' "latent defect" and "post-sale duty to warn" arguments should be rejected.[30]

Even if the Court were to consider Plaintiffs' "post-sale duty-to-warn" argument, Plaintiffs' assertions fail on the merits because the Plaintiffs knew or should have known of the allegedly defective product. "A failure to give warning of the obvious may not be a cause in fact of an injury."[31] Accordingly, "[t]o be relieved of the duty to warn, a manufacturer need not show

---

[28] *See generally* R. Doc. 21334.

[29] *See, e.g., id.*, ¶¶ 23, 25, 27, 31.

[30] *See, e.g., DeKort v. Integrated Coast Guard Sys.*, 475 F. App'x 521, 522 (5th Cir. 2012) ("We also conclude that the district court did not err in denying DeKort's motion for partial summary judgment because he attempted to raise a new claim, not asserted in his fifth amended complaint."); *see also Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1314 (11th Cir. 2004) ("[T]he Supreme Court has mandated a liberal pleading standard for civil complaints under Federal Rule of Civil Procedure 8(a). This standard however does not afford plaintiffs with an opportunity to raise new claims at the summary judgment stage.").

[31] *Rayfield v. Millet Motel*, 15-496 (La. App. 5 Cir. 1/27/16); 185 So. 3d 183, 187 (citing *Caldwell v. Let The Good Times Roll Festival*, 30,800 (La. App. 2 Cir. 8/25/98); 717 So. 2d 1263, 1270-71, *writ denied*, 98-2489 (La. 11/25/98); 729 So. 2d 566).

the user had actual knowledge of the danger, only that the user should have known of the danger."[32] As demonstrated above, Plaintiffs knew or should have known of the allegedly defective product. Thus, there was no duty to warn. Further, Plaintiffs are basically arguing that Knauf Defendants should be "equitably estopped" from asserting that prescription has run because the Knauf Defendants allegedly failed to warn Plaintiff of defective drywall after a post-sale duty to warn arose. Equitable estoppel in this context is basically an assertion that *contra non valentum* should be applied because a defendant prevented the plaintiff from filing suit within the prescriptive period. Yet, as set out above, estoppels and *contra non valentum* are not favored in Louisiana law.[33] Further, fraud or misrepresentation is an essential element of a claim that equitable estoppel should be applied to suspend the running of prescription.[34] Also, "there must be words and actions by defendant which are designed to and which prevent the timely filing of a suit for estoppel to lie."[35] The Plaintiffs have asserted no fraud or misrepresentation on the part of Defendants. Thus, equitable estoppel should not be applied, and Plaintiffs' claims are prescribed.

Moreover, even if a duty to warn existed, the Knauf Defendants would have satisfied their obligation to warn, and Plaintiffs could not demonstrate a breach. As the Court knows (and approved), the Knauf Defendants, along with co-defendants in the distribution chain and the PSC, engaged in a substantial notice campaign in which many ultimate purchasers of Chinese Drywall

---

[32] *Bennett v. MillerCoors, LLC*, 838 F. Supp. 2d 470, 472 (M.D. La. 2011) (citing *Goins v. Galion Mfg. Co.*, 626 So. 2d 1200, 1204 (La. App. 3d Cir. 1993)).

[33] *Wilkinson v. Wilkinson*, 323 So. 2d 120, 126 (La. 1975) (citing *Rodden v. Davis*, 293 So.2d 578 (La. App. 3rd Cir. 1974), *cert. den.*, 296 So.2d 832 (La.1974)).

[34] *Tassin v. Allstate Ins. Co.*, 310 So. 2d 680, 685-86 (La. Ct. App. 1975), *overruled on other grounds by Flowers v. U. S. Fid. & Guar. Co.*, 381 So. 2d 378 (La. 1979) (citing *White v. Hartford Casualty Insurance Company*, 297 So. 2d 744 (La. App. 1st Cir. 1974); *Green v. Grain Dealers Mutual Insurance Company*, 144 So. 2d 685 (La. App. 4th Cir. 1962); *Aegis Insurance Co. v. Delta Fire & Casualty Co.*, 99 So. 2d 767 (La. App. 1st Cir. 1957); *Davis v. Brown's Velvet Dairy Products, Inc.*, 43 So. 2d 266 (La. App. Orl. 1949), and *Sprinkle v. Farm Bureau Insurance Companies*, 492 F.2d 469 (5th Cir. 1974)).

[35] *Id.* at 686.

were located and notified.[36] Plaintiffs have presented no evidence to show that these notice efforts were unreasonable, and thus these claims should be dismissed.[37]

Next, Plaintiffs raise vague arguments concerning the latent nature of the alleged defect but, as with the post-sale duty to warn argument, it is unclear how this argument relates to the issue of prescription. Plaintiffs seem to argue that because a latent defect existed and knowledge regarding the defect is imputed to the Defendant, Defendants should be equitably estopped from arguing that Plaintiffs had constructive knowledge of the Chinese drywall in the Property. However, it has not been established that a latent defect existed. Further, in arguing that the defects in the drywall were "latent," Plaintiffs directly contradict the oft-repeated allegation in the Fifth Amended Class Action Complaint that the drywall emits "noxious gases."[38] Also, even assuming a latent defect existed, any knowledge of such a defect on the part of the Knauf Defendants does not change the fact that Plaintiffs each had actual or constructive knowledge of Chinese drywall in their respective Property (see analysis above). While Plaintiffs each point to communications from 2006 as evidence that Knauf Defendants knew about the allegedly defective drywall,[39] the communications are irrelevant because Knauf Defendants are not claiming that the prescriptive period began in 2006. Rather, as demonstrated above, the Plaintiffs each knew or through the exercise of reasonable diligence should have known of the allegedly defective drywall more than one year before they filed their respective claims.

Accordingly, no alleged latent defect or post-sale duty to warn prevented the prescriptive period from running and Plaintiffs' claims are prescribed.

---

[36] *See, e.g.*, R. Doc. 12138 at 24 (approving of the notice proposal included in the Knauf settlement).
[37] *See, e.g.*, *Robinson v. Brandtjen & Kluge, Inc.*, 500 F.3d 691, 698 (8th Cir. 2007) ("In this case, moreover, there is undisputed evidence that B & K did undertake a post-sale warning campaign…. Whatever the scope of the post-sale duty to warn, it does not extend to warning each individual employee of a company that owns a press some sixty-one years after the sale.").
[38] *See, e.g.*, R. Doc. 21334 ¶¶ 23, 25, 27, 31.
[39] *See e.g.*, R. Doc. 22566 at 23-35.

C. ***American Pipe*/Equitable Tolling Does Not Apply and Plaintiffs' Claims are Prescribed.**

Plaintiffs' claims are not saved by *American Pipe*/equitable tolling. First, for the first time, Plaintiffs assert tolling pursuant to the *Bennett* Complaint and this Court's recent denial of class certification. This Court has already recognized that courts have uniformly held that *American Pipe* operates only with respect to the first class action filed for a specific controversy.[40] This limitation is known as the prohibition against "stacking" or "piggybacking" class actions for purposes of tolling.[41] As Plaintiffs and the Court have previously recognized, several earlier class actions have been filed before *Bennett* for the same controversy.

*American Pipe* tolling does not apply for subsequent class actions like the *Bennett* action. The Supreme Court confirmed in *Resh* that *American Pipe* does not toll class actions like the *Bennett* class action, and therefore equitable tolling does not apply to Plaintiffs' claims. Justice Ginsburg, writing for the Court in *Resh*, plainly held that "*American Pipe* does not permit a plaintiff who waits out the statute of limitations to piggyback on an earlier, timely filed class action."[42] The Court explained that the *American Pipe* line of cases focused on "putative class members who wish to sue individually after a class-certification denial," but did not "so much as hint[] that tolling extends to otherwise time-barred class claims."[43]

---

[40] R. Doc. 22124 at p. 19.

[41] *See, e.g.*, *Basch v. Ground Round, Inc.*, 139 F.3d 6, 11 (1st Cir. 1998) ("Plaintiffs may not stack one class action on top of another and continue to toll the statute of limitations indefinitely."); *Griffin v. Singletary*, 17 F.3d 356, 359 (11th Cir. 1994) (same); *Salazar-Calderon v. Presido Valley Farmers Ass'n*, 765 F.2d 1334, 1350 (5th Cir. 1985) ("Plaintiffs have no authority for their contention that putative class members may piggyback one class action onto another and thus toll the statute of limitations indefinitely, nor have we found any.").

[42] *China Agritech, Inc. v. Resh*, 138 S. Ct. 1800, 1806 (2018).

[43] *Id.* The Court concluded that it would be inefficient to allow "maintenance of untimely successive class actions"; instead, "any additional class filings should be made early on, soon after the commencement of the first action seeking class certification" because "efficiency favors early assertion of competing class representative claims." *Id.* at 1811. Indeed, any assertion that the class claims were tolled would lead to inefficiency and a lack of repose because it "would allow the statute of limitations to be extended time and again; as each class is denied certification, a new named plaintiff could file a class complaint that resuscitates the litigation." *Id.* at 1808. The Court noted that if accepted, "the time for filing successive class suits, if tolling were allowed, could be limitless." *Id.* at 1809.

This was not a case where a putative class member is seeking to sue individually after a class-certification denial of the first class action filed for a specific controversy. To the extent Plaintiffs argue that they should be allowed to piggyback on the earlier class actions and/or the Knauf Settlement Class up until the February 7, 2013 final approval date, Plaintiffs were not members of the Knauf Settlement Class. The Knauf Settlement Class was defined as: "[A]ll persons or entities who as of December 9, 2011 filed a lawsuit in the Litigation as a named plaintiff (i.e., not an absent class member)…." By definition, Plaintiffs are excluded from this class and cannot benefit from any tolling. In this regard, Plaintiffs' situations are completely different than the issue previously ruled on by this Court dealing with the Taishan entities.[44] In this Court's March 6, 2019 ruling, it limited tolling to only *Brooke* plaintiffs who were members of the previously filed and certified *Amorin* class.[45] No such situation exists here.

Second, even if tolling was possible, this Court has already determined that *American Pipe* does not automatically apply in diversity cases:

> The limitations periods of *American Pipe* and *Crown, Cork* were derived from federal statutes. Here, we are dealing with Hawaii's limitation statutes. Because none of them provide for tolling in a situation such as exists here, it is doubtful that either *American Pipe* or *Crown, Cork* can be treated as applicable precedent.[46]

Here, the Louisiana Supreme Court has concluded that Louisiana does not recognize cross-jurisdictional tolling. *See Quinn v. La. Citizens Prop. Ins. Corp.*, 118 So. 3d 1011, 1022-23 (La. 2012). Indeed, this Court has previously determined that Louisiana does not adopt cross-jurisdictional tolling. R. Doc. 22124 (citing *Boone v. Citigroup, Inc.*, 416 F.3d 382, 393 (5th Cir. 2005).[47]

---

[44] R. Doc. 22124.
[45] *Id.* at 22.
[46] *Orleans Parish Sch. Bd. v. U.S. Gypsum Co.*, 892 F. Supp. 794, 805 (E.D. La. 1995).
[47] Plaintiff also submits an argument regarding CAFA. CAFA is jurisdictional and Plaintiff cites no case law that cross-jurisdictional tolling is permitted across all states in light of CAFA. Indeed, in this MDL, and post-CAFA,

Overall, *American Pipe*/equitable tolling does not apply, and Plaintiffs' claims are prescribed.[48]

## D.   LPLA and Attorney Fees.

Simply, Plaintiffs cannot recover attorney's fees associated with the recovery of damages arising from damage caused by a product because attorney's fees are not recoverable under the LPLA, and the LPLA "establishes the exclusive theories of liability for manufacturers for damage caused by their products."[49]

## E.   Plaintiffs Bank of Louisiana, Armstrong, Brousseau, and Norris Have Not Provided Any Evidence to Dispute the Uncontested Facts Set Forth by the Knauf Defendants.

As the moving party and the party who does not bear the burden of proof at trial on Plaintiffs' damage claims, the Knauf Defendants had the burden only to "point out the absence of evidence supporting the essential elements of the opposing party's case.[50] The Knauf Defendants more than met this burden in their motion by pointing out that Bank of Louisiana, the Armstrongs, the Brousseaus, and the Norrises failed to provide documents and competent evidence to support their claims.[51] Therefore, the burden shifted to Plaintiffs to "specifically identify evidence indicating a genuine issue for trial" on those claims.[52]

To meet this burden, a plaintiff is required "to come forward with competent evidence, such as affidavits or depositions, to buttress his claims."[53] "[U]nsubstantiated assertions are not

---

this Court has previously provided analysis on the lack of cross-jurisdictional tolling. This Court concluded that Texas, Louisiana, Mississippi, and Florida do not recognize cross-jurisdictional tolling. R. Doc. 22124.

[48] Again, Plaintiffs' reliance on *Bennett* as the tolling action is unfounded because it is a later, subsequent class action, and courts have uniformly held that *American Pipe* operates only with respect to the first class action filed for a specific controversy. *Salazar-Calderon v. Presido Valley Farmers Ass'n*, 765 F.2d 1334, 1350 (5th Cir. 1985) ("Plaintiffs have no authority for their contention that putative class members may piggyback one class action onto another and thus toll the statute of limitations indefinitely, nor have we found any.").

[49] La. Rev. Stat. § 9:2800.52; La. Rev. Stat. § 2800.53(5).

[50] *In re Petition of Settoon Towing LLC*, 722 F. Supp. 2d 710, 713 (E.D. La. 2010).

[51] R. Doc. 22432-1 at 10-11; R. Doc. 22430-1 at 8; 22431-1 at 10.

[52] *Ratliff v. Advisors Asset Mgmt., Inc.*, 660 F. App'x 290, 291 (5th Cir. 2016).

[53] *Alderman v. Great Atl. & Pac. Tea Co.*, 332 F. Supp. 2d 932, 936 (E.D. La. 2004).

competent summary judgment evidence,"[54] and "[g]eneralizations that are contradicted by deposition testimony will not prevent summary judgment."[55] Further, a party cannot defeat summary judgment by "cit[ing] only *legal* issues that are in dispute, making legal conclusions in their [opposition] rather than identifying material issues of fact."[56]

The Armstrongs, the Brousseaus, Bank of Louisiana, and the Norrises did not meet this burden. First, the Norrises have not shown that the Knauf Defendants' Chinese drywall is or was on the Property. At the time of the Norrises' deposition on June 10, 2019, they had never had an inspection for Chinese drywall despite Nicole Norris having moved to join this case over two and a half years prior, and the only evidence submitted was one photograph of a board that had apparently been removed with no marks that demonstrate that it is from the Property.[57] The Norrises also stated that the photo was taken in the garage,[58] such that there has been no evidence whatsoever of Chinese drywall in the home. In Plaintiffs' opposition, the Norrises attach an inspection report that was allegedly conducted on November 25, 2019, *see* R. Doc. 22569-6, but never produced to the Knauf Defendants prior to appearing in the instant opposition, filed on February 9, 2020. The inspection report should be stricken based on its late production, as it is inappropriate for Plaintiffs to present new evidence for the first time in opposition to the Knauf Defendants' motion.

Next, Bank of Louisiana and the Armstrongs cite **no competent** evidence showing a genuine dispute as to their diminution of value and allegedly damaged personal property claims. Regarding their diminution of value claims, Bank of Louisiana and the Armstrongs cite simply

---

[54] *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).

[55] *K. S. v. Nw. Indep. Sch. Dist.*, 689 F. App'x 780, 786 (5th Cir. 2017).

[56] *Shimon v. Sewerage & Water Bd. of New Orleans,* No. CIV.A. 05-1392, 2010 WL 2696970, at *5 (E.D. La. July 1, 2010) (emphasis in original).

[57] R. Doc. 22451-1 at 4.

[58] R. Doc. 22451-1 at 6.

rest their claim on the promise that they will call fact witnesses at trial to establish the claim because Plaintiffs are not property appraisers.[59] Thus, there is no evidentiary support, and this claim consists of unsupported conjecture. The Armstrongs and Bank of Louisiana have failed to identify **evidence** indicating a genuine issue of material fact for these claims.

Regarding the allegedly damaged personal property, the Brousseaus, Bank of Louisiana, the Armstrongs, and the Norrises each cite itemized lists from their PFS of allegedly damaged personal property. Yet, Bank of Louisiana did not provide a list so its claim for allegedly damaged personal property is wholly unsupported.[60] The Norrisses', Brousseaus', and Armstrongs' lists are simply their beliefs as to the respective values of the items therein, which is nothing more than self-serving conjecture.[61] Further, while these Plaintiffs each cite to unknown receipts, invoices, and Internet research as a basis for their personal property claims, none of this information is cited or presented.[62] Bank of Louisiana, the Brousseaus, the Armstrongs, and the Norrises have failed to identify evidence indicating a genuine issue of material fact for these claims.

Likewise, the Norrises and the Brousseaus cite **no competent** evidence showing a genuine dispute as to their personal injury or loss of use claims. The Norrises and the Brousseaus fail to provide any support or evidence that they were deprived of the use of the Property to support their loss of use and/or loss of enjoyment claims. Rather, the Brousseaus and the Norrises simply cite to "past verdicts in Chinese drywall litigation" as support for these claims.[63]

---

[59] R. Doc. 22566 at 26; R. Doc. 22575 at 26-27.
[60] R. Doc. 22569 at 26; R. Doc. 22575 at 26-27; R. Doc. 22431-2 at 15. Bank of Louisiana refers to a list of damaged items attached to the PFS as Exhibit 14 but Exhibit 14 is blank. R. Doc. 22431-2 at 118 (Exhibit 14).
[61] R. Doc. 22566 at 26; R. Doc. 22430-2 at 66-68; R. Doc. 22567 at 26-27; R. Doc. 22432-2 at 163-164.
[62] R. Doc. 22566 at 26; R. Doc. 22567 at 26-27; R. Doc. 22575 at 26-27.
[63] R. Doc. 22567 at 24; 22569 at 24.

The Cordiers included arguments in their Opposition related to alleged personal property damage and loss of use and enjoyment of the Property. These arguments are irrelevant because those issues were not raised in Knauf Defendants' Motion for Summary Judgment.

Accordingly, this Court should grant the Knauf Defendants' motion for summary judgment to the extent the Plaintiffs have failed to produce the required evidence to support their respective claims.

**F.   Bank of Louisiana's and the Brousseaus' Claims are Barred by knowingly and voluntarily purchasing the Property "As-Is."**

First, there is no genuine issue of material fact that Bank of Louisiana's and the Brousseaus' claims are barred because they each purchased their Property "as is," knew or should have known of the defects in the Property, and the subsequent purchaser doctrine applies to bar the claims. Further, the Brousseaus waived redhibition rights in their purchase of their Property.

First, there is no warranty owed from a seller for defects in the thing when the buyer knew or should have know of the defect.[64] Here, Bank of Louisiana and the Brousseaus bought their respective Property, but each did not conduct a pre-purchase Chinese drywall inspection and purchased the Property "as is."[65] The Brousseaus and Bank of Louisiana each argue that a risk should not be borne by a purchaser in an "as-is" sale if that specific risk was not known to the purchaser. If true, this proposition would undermine the purpose of an "as-is" sale by making the seller bear the burden of the purchaser's willful blindness such that the less the purchaser knew, the more risk the seller would bear. This is not the case—the purchaser bears the risk. The Brousseaus chose not to conduct a pre-purchase inspection and chose to purchase the Property subject to a limited amount of information. They chose to accept the risks attendant with this lack

---

[64] La. Civ. Code art. 2521 (2019).
[65] R. Doc. 22431-1 at 3-4; R. Doc. 22432-1 at 3-4.

of information and assumed the risk inherent in the purchase—including the possibility that the Property contained Chinese drywall. For these reasons, the Brousseaus' and Bank of Louisiana's claims are barred under Louisiana law.

Further, the subsequent purchaser doctrine applies and Bank of Louisiana's and the Brousseaus' claims should be dismissed. It is undisputed by Plaintiffs that under Louisiana law, an owner of property has no right or actual interest in recovering from a third party for damage which was inflicted on the property before his purchase, in the absence of an assignment or subrogation of the rights belonging to the owner of the property when the damage was inflicted.[66] Indeed, while the injury to property must be understood as damage to the real rights in the property and provides to the owner of the real right a personal right to sue the tortfeasor for damages, the *personal* right to sue, unlike a real right, does not transfer to a subsequent purchaser "[i]n the absence of an assignment or subrogation."[67] In examining *Eagle Pipe* and its progeny, the Fifth Circuit has affirmed that the right to sue is a personal right and must be expressly assigned and cannot be "implicitly conveyed."[68] Therefore, in the absence of an express assignment to the right to sue a defendant, a subsequent purchaser could not receive the right to sue a defendant for damages stemming from its conduct related to the property.

Bank of Louisiana and the Brousseaus each purchased their respective Property after the alleged defective drywall was installed and they have not presented evidence that they were assigned or subrogated to any prior owner's rights. While the Brousseaus' Opposition argues that they were assigned all rights regarding latent defects,[69] it has not been established that a latent

---

[66] *See Eagle Pipe & Supply, Inc. v. Amerada Hess Corp.*, 79 So.3d 246, 256-75 (La. 2011); *see also Guilbeau v. Hess Corp.*, 854 F.3d 310, 312-13 (5th Cir. 2017).
[67] *Id*. at 262, 279.
[68] *Broussard v. Dow Chem. Co*., 550 F. App'x 241, 244-45 (5th Cir. 2013).
[69] R. Doc. 22567 at 32-33.

defect existed. Further, in arguing that the defects in the drywall were "latent," Plaintiff directly contradicts the oft-repeated allegation in the Fifth Amended Class Action Complaint that the drywall emits "noxious gases."[70] Also, Bank of Louisiana argues that the subsequent purchaser doctrine should not apply to its claims because it is not a subsequent purchaser due to the fact it acquired the Property through foreclosure proceedings. However, Bank of Louisiana purchased the Property via Sheriff's sale in 2010 and offers no evidence that it had an ownership interest in the Property when Chinese drywall was allegedly installed in the Property.[71] Thus, the subsequent purchaser doctrine applies and Bank of Louisiana's and the Brousseaus' claims should be dismissed.

Lastly, the Brousseaus do not contradict the fact that the act of sale for their Property contained language waiving their redhibition rights. Thus, the Brousseaus' claims were waived and should be dismissed.

## G.    Conclusion

For these reasons, and for the reasons set forth in the Motions for Summary Judgment, Plaintiffs' claims must be dismissed.

---

[70] *See, e.g.*, R. Doc. 21334 at ¶¶ 23, 25, 27, 31.
[71] R. Roc. 22575-1 at 2-4; R. Roc. 22575 at 11 ("Plaintiffs acquired possession and outright ownership of the Affected Property on February 3, 2010").

Respectfully submitted,

**FISHMAN HAYGOOD, LLP**

/s/ *Kerry J. Miller*

**KERRY J. MILLER (#24562), T.A.**
**PAUL C. THIBODEAUX (#29446)**
**DANIEL J. DYSART (#33812)**
201 St. Charles Avenue, Suite 4600
New Orleans, LA 70170
Telephone:     504.556.5549
Facsimile:      504.310.0275
Email:          kmiller@fishmanhaygood.com

*Counsel for Defendants,*
*Knauf Gips KG and*
*Knauf Plasterboard (Tianjin) Co., Ltd.*

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing pleading has been served upon Russ Herman, Plaintiffs' Liaison Counsel, by email, to all parties by electronically uploading the same to LexisNexis File & Serve in accordance with Pre-Trial Order No. 6, individually to pro se claimants via U.S. Mail, and that the foregoing was filed with the Clerk of Court of the United States Court for the Eastern District of Louisiana, on this 14th day of February, 2020.

/s/ *Kerry J. Miller*
**KERRY J. MILLER**