**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

IN RE:  CHINESE-MANUFACTURED DRYWALL     *
PRODUCTS LIABILITY LITIGATION     *
    *        **CIVIL ACTION**
    *
    *        **MDL NO. 2047**
    *
    *        **SECTION L (2)**
**THIS DOCUMENT RELATES TO:**     *
*Elizabeth Bennett, et al. v. Gebr. Knauf*     *
*Verwaltungsgesellschaft, KG, et al.*, No. 14-2722     *

**ORDER & REASONS**

Pending before the Court are fourteen Motions for Summary Judgment filed by Defendants. R. Docs. 22374, 22407, 22408, 22428, 22433, 22435, 22437, 22438, 22439, 22440, 22441, 22447, 22452, 22453. Plaintiffs oppose the motions. R. Docs. 22457, 22471, 22470, 22462, 22455, 22454, 22468, 22458, 22464, 22465, 22456, 22484, 22463, 22472. Defendants have filed replies. R. Docs. 22495, 22507, 22508, 22509, 22510, 22511, 22512, 22513, 22514, 22515, 22516, 22520, 22517, 22518. The Court heard oral argument on these motions on January 22, 2020. Having considered the applicable law and the parties' arguments, the Court now rules as follows.

I.      **BACKGROUND**

From 2004 through 2006, the housing boom in Florida and rebuilding efforts necessitated by Hurricanes Rita and Katrina led to a shortage of construction materials, including drywall.  As a result, drywall manufactured in China was brought into the United States and used to construct and refurbish homes in coastal areas of the country, notably the Gulf Coast and East Coast. Sometime after the installation of the Chinese drywall, homeowners began to complain of emissions of foul-smelling gas, the corrosion and blackening of metal wiring, surfaces, and objects, and the breaking down of appliances and electrical devices in their homes.  *See In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, 894 F. Supp. 2d 819, 829–30 (E.D. La. 2012), *aff'd*,

742 F.3d 576 (5th Cir. 2014). Many of these homeowners also began to complain of various physical afflictions believed to be caused by the Chinese drywall.

These homeowners then began to file suit in various state and federal courts against homebuilders, developers, installers, realtors, brokers, suppliers, importers, exporters, distributors, and manufacturers who were involved with the Chinese drywall. As a result, many homebuilders also filed suit seeking to recoup their damages. Because of the commonality of facts in the various cases, this litigation was designated as a multidistrict litigation. Pursuant to a Transfer Order from the United States Judicial Panel on Multidistrict Litigation on June 15, 2009, all federal cases involving Chinese drywall were consolidated for pretrial proceedings in MDL 09-2047 before this Court. Since that date, numerous cases have been consolidated, involving thousands of individual claims; over 20,000 documents have been entered into the record, millions of documents have been exchanged in discovery, depositions have been taken in the United States and in China, and over thirty Pretrial Orders have been issued; the Court has appointed steering committees and liaison counsel for plaintiffs, homebuilders, insurers, installers, and manufacturers, and it has presided over monthly status conferences, hearings, and several bellwether trials.

The Chinese drywall at issue was largely manufactured by two groups of defendants: (1) the Knauf Entities and (2) the Taishan Entities. The litigation has focused upon these two entities and their downstream associates and has proceeded on strikingly different tracks for the claims against each group.

### A. The Knauf Defendants

The Knauf Entities are German-based, international manufacturers of building products, including drywall, whose Chinese subsidiary, Knauf Plasterboard (Tianjin) Co., Ltd. ("KPT"),

advertised and sold its Chinese drywall in the United States.  The Knauf Entities are named defendants in numerous cases consolidated with the MDL litigation and litigation in state courts.

The Knauf Entities first entered their appearance in the MDL litigation on July 2, 2009. Thereafter, the Court presided over a bellwether trial in *Hernandez v. Knauf Gips KG*, Case No. 09-6050, involving a homeowner's claims against KPT for defective drywall.  The Court found in favor of the plaintiff family in *Hernandez*, issued a detailed Findings of Fact and Conclusions of Law, and entered a Judgment in the amount of $164,049.64, including remediation damages in the amount of $136,940.46—which represented a remediation cost of $81.13 per square foot based on the footprint square footage of the house.

Subsequently, the Knauf Entities agreed to institute a pilot remediation program utilizing the remediation protocol formulated by the Court from the evidence in *Hernandez*.  The Knauf pilot remediation program is now completed and has remediated more than 2,200 homes containing KPT Chinese drywall using the same general protocol.  At the Court's urging, the parties began working together to monetize this program and make it available to a broader class of plaintiffs.

On December 20, 2011, the Knauf Entities and the PSC entered into a global, class Settlement Agreement ("Knauf Settlement Agreement"), which was designed to resolve all Knauf-related, Chinese drywall claims.  In addition to the Knauf Settlement Agreement and after a jury trial in a bellwether case, numerous defendants in the chain-of-commerce with the Knauf Entities have entered into class settlement agreements, the effect of which settles almost all of the Knauf Entities' chain-of-commerce litigation.  The total amount of the Knauf Settlement is approximately $1.1 billion.

### B.  The Bennett Class Action

The instant matter is a purported class action filed on November 13, 2014 by Elizabeth Bennett in the Northern District of Alabama. [1] Ms. Bennet raised claims on her own behalf and on the behalf of a nationwide class of similarly situated homeowners who allegedly suffered damages due to the presence of defective Chinese drywall in their homes. The Plaintiffs raised claims against the Knauf Entities for negligence, negligence per se, strict liability, breach of express and/or implied warranty, redhibition, violations of the Louisiana Products Liability Act, private nuisance, negligent discharge of a corrosive substance, unjust enrichment, violations of consumer protection laws, and equitable and injunctive relief and medical monitoring with respect to the manufacture of allegedly defective Chinese drywall. In January 2015, the Judicial Panel on Multidistrict Litigation transferred the case to the Eastern District of Louisiana and consolidated it with the *In re Chinese Manufactured Drywall Liability Litigation*, MLD 09-2047, currently pending before this Court.

On October 31, 2019, the Court granted leave for Plaintiffs to add several new Plaintiffs to the action. R. Doc. 22357. The case now involves 130 affected properties. On that date, the Court also extended many of the Case Management Order's deadlines. R. Doc. 22357. With discovery well underway, the Knauf Defendants have begun to file dispositive motions targeting the claims of several individual plaintiffs.

---

[1] On January 22, 2020, the Court granted Defendant's Motion to Deny Class Certification, finding that the predominance requirement of Rule 23(b)(3) was not satisfied. R. Docs. 22524, 22528.

## II.     PENDING MOTIONS

### A.  Wicler Pierre [R. Doc. 22374]

Wicler Pierre's claims arise from the alleged presence of Chinese drywall at his property located at 1714 NE 6th Street, Boynton Beach, Florida. Pierre filed his claims in 2016.

Defendants argue that Pierre's claims are barred by Florida's applicable four-year statute of limitations because he was on notice of the defective drywall by 2011 at the latest. Defendants also argue Pierre has no evidence to support his loss of use claim because he continues to live in the home, nor any evidence to support his personal property claim because he failed to provide any corroboration of the estimate he provided on the Plaintiff Fact Sheet.

Plaintiff argues his claims were timely filed because he learned that the property contained defective drywall from a property inspection conducted in 2015. R. Doc. 22457. Plaintiff also contends genuine issues of material fact exist with respect to his damage claims. Defendants filed a reply, largely re-emphasizing the arguments made in the original motion. R. Doc. 22476.

### B.  Skyline Glass LLC [R. Doc. 22407]

Skyline Glass, LLC's claims arise from the alleged presence of Chinese drywall at a property located at 10769 NW 81st Lane, Doral, Florida. Defendant argues that Skyline assumed the risk of Chinese drywall by voluntarily purchasing the property "as-is," without viewing or inspecting the property or receiving any disclosures. Defendants argue that Skyline was aware of defective Chinese drywall both in general and specifically in south Florida. Defendants allege that Skyline purchased the property at auction for $251,000, despite understanding that the property's market value was over $300,000, without obtaining any assignments or warranties from the prior owner or seller. Defendants further explain that Skyline purchased the property for investment purposes and that it never offered to lease the property until after remediation was complete.

5

Defendants also argue that Skyline has failed to provide any support for any of its claims, including diminution in value, moving costs, storage costs, utility costs, remediation costs, damages for appliances and personal items, or loss of use/enjoyment. Lastly, Defendants argue that Skyline had the property remediated in July 2018 but failed to preserve evidence in compliance with PTO 1B and PTO 1(I).

Plaintiff opposes the motion, arguing that Skyline did not voluntarily assume the risk of defective drywall because it did not receive any disclosure or warning of the risk when it purchased the property. R. Doc. 22471. Plaintiff further argues the claims are timely because Skyline did not become aware of the risk until an inspection in 2018. Plaintiff contends genuine issues of material fact exist with respect to its damage claims and that its loss of use and enjoyment claim is viable because vacating a property is not a prerequisite to such a claim. Lastly, Plaintiff contends that any failure to strictly comply with PTO 1 is a question of spoliation to be addressed by the transferor court, not by a summary judgment motion. Defendants filed a reply, specifically contesting Plaintiff's characterization of when the defect was discovered and arguing that the materials attached to Plaintiff's opposition should be stricken as untimely. R. Doc. 22507.

**C. Daniel and Shona Blonsky [R. Doc. 22408]**

Daniel and Shona Blonskys' claims arise from the alleged presence of Chinese drywall at their property located at 8220 SW 60 Court, South Miami, Florida. The Blonskys purchased their property in 2009 and had it remediated in 2014 following the discovery of Chinese drywall. Defendants argue that the Blonskys' claims are barred because the Blonskys failed to comply with the requirements of PTO 1, PTO 1(B) and PTO 1(I). Defendants contend that the Blonskys "provided evidence of only two alleged KPT boards in connection with the remediation" and "have not provided evidence that the Property currently contains any Chinese drywall, much less KPT

6

drywall, or that the Property suffers from any symptoms allegedly associated with Chinese drywall since the 2014 remediation." R. Doc. 22408 at 7. Further, Defendants argue that their damages are unsupported, specifically because they seek damages for diminution in value but have never had the property appraised.

In opposition, the Blonskys argue that failure to comply with the pre-trial orders is a question of spoliation for the transferor court, not a question to be decided by a motion for summary judgment. R. Doc. 22470. Additionally, Plaintiffs argue that their remediation damage claim raises genuine issues of material fact that preclude summary judgment. Defendants filed a reply, largely reiterating the arguments laid forth in the motion. R. Doc. 22508.

### D. A&B Real Estate Holdings, LLC's

A&B Real Estate Holdings, LLC's claims arise from the alleged presence of Chinese drywall at a property located at 23205 SW 217 Avenue, Miami, Florida. A&B purchased the property in 2013 "as-is" at a foreclosure sale without viewing or inspecting the property or receiving any disclosures. Defendants content that A&B, as a "real estate entity in South Florida with hundreds of properties," assumed the risk associated with the course of action. Further, Defendants argue that A&B has failed to provide any evidence supporting its claims for personal property, loss of rental income, and loss of use.

Plaintiff argues that the claims were timely filed and that A&B did not assume the risk because the drywall was not discovered until after the sale was complete, and because A&B was not provided with a post-sale warning or recall. R. Doc. 22462. Defendants filed a reply, arguing that A&B has failed to demonstrate that any genuine issues of material fact exist. R. Doc. 22509.

7

### E. Isidro & Marfelia Calderon [R. Doc. 22433]

Isidro and Marfelia Calderon's claims arise from the alleged presence of Chinese drywall in their property located at 3441 SW Haines Street, Port St. Lucie, Florida. Defendants explain that the Calderons purchased the property in 2005 and shortly thereafter noticed a strange smell and experienced the failure of several household appliances. However, Plaintiffs did not investigate the issue until 2015.

Defendants argue that the Calderons' claims have prescribed because they should have been aware of the presence of defective drywall within the first few years of moving into the property in 2005, when they experienced strange smells and appliance failures. Defendants believe the Calderons should have discovered the drywall by 2010 at the latest, as they testified to experiencing appliance failures "within the first four or five years" of ownership. Further, Defendants argue the Calderons have failed to provide sufficient evidence to support their diminution in value, loss of use, and loss of personal property claims, and have failed to comply with PTO 1(B) and PTO 1(I) by discarding personal property allegedly damaged by defective drywall.

In opposition, Plaintiff argues the Calderons timely filed because they only discovered the defective drywall in 2018 and that any unreasonableness in not discovering it sooner is an issue for the trier of fact. R. Doc. 22455. Additionally, Plaintiffs argue their damage claims raise genuine issues of material fact. Defendants filed a reply, largely reiterating the arguments set forth in the motion. R. Doc. 22509.

### F. Abigail Cohen [R. Doc. 22435]

Abigail Cohen's claims arise from the alleged presence of defective Chinese drywall in her property located at 20305 Chestnut Grove Drive, Tampa, Florida. Cohen purchased the property

in 2006 and began experiencing appliance failures shortly thereafter. Plaintiff testified to hearing about Chinese drywall on the news. Cohen alleges she discovered the drywall during an inspection in 2015.

Defendants argue Cohen's claims are barred by Florida's applicable four-year statute of limitations. Defendants explain that Cohen should have been aware of the defective drywall shortly after purchasing the property in 2006 because she suffered successive appliance failures, needed HVAC repairs, and allegedly experienced adverse health effects. Defendants explain that "[h]ad Plaintiff exercised any due diligence, the defect would have been discovered then like it was in 2015 [after an inspection]." R. Doc. 22435-1 at 6. Defendants also argue Cohen failed to produce any evidence of damages "except for replacement of a TV, a showerhead, and HVAC repairs," and failed to comply with the PTOs by discarding evidence allegedly damaged by the drywall. R. Doc. 22435-1 at 7.

In opposition, Cohen argues that her claims were timely filed because she only discovered the drywall in 2015, following a property inspection. R. Doc. 22454. Cohen argues her damage claims raise genuine issues of material fact despite the lack of corroborating evidence at this stage. R. Doc. 22454 at 19. Defendants filed a reply, arguing that Cohen failed to demonstrate that any genuine issues of material fact exist. R. Doc. 22511.

### G.  Anjali Van Drie [R. Doc. 22437]

Anjali Van Drie's claims arise from the alleged presence of defective Chinese drywall in her property located at 4101 NW 22nd Street, Cape Coral, Florida. Plaintiff purchased the property in August 2008 and began experiencing a strange smell and appliance failures in 2009. The property was inspected in 2015 and the presence of Chinese drywall confirmed. Van Drie filed her claims in 2018.

9

Defendants argues Van Drie's claims are barred by Florida's applicable four-year statute of limitations because she should have been aware of the presence of Chinese drywall shortly after purchasing the property in 2008 due to the smell and appliance failures. Further, Defendants argue that Van Drie failed to provide any evidence supporting her claims for damage to personal property, loss of use, and diminution in value.

In opposition, Van Drie argues that her claims were timely filed because she only discovered the drywall in 2015, following a property inspection. R. Doc. 22468. Van Drie argues her damage claims raise genuine issues of material fact involving the cost and scope of remediation, loss of use and enjoyment, damage to personal property, lost rent, and diminution in value, despite the lack of corroborating evidence at this stage. Defendants filed a reply, arguing that Van Drie failed to demonstrate that any genuine issues of material fact exist. R. Doc. 22512.

### H. Elvis Ferrera [R. Doc. 22438]

Elvis Ferrera's claims arise from the alleged presence of defective Chinese drywall in his property located at 22079 SW 88th Path, Cutler Bay, Florida. Plaintiff purchased the property in 2006 and notice strange smells and appliance failures beginning in 2009 or 2010. However, the property was only inspected in 2018 by a prospective buyer. Ferrera filed his claims in 2018.

Defendant argues that Ferrera's claims are barred by Florida's applicable four-year statute of limitations because he should have known about the presence of defective drywall in 2009 after experiencing strange smells and appliance failures. Defendants further argues that Ferrera has failed to provide evidence to support his claims for loss of rent, personal property, and loss of use.

In opposition, Ferrera argues his claims were timely filed because he discovered the defect in 2018, following a property inspection. R. Doc. 22438. Fererra argues his damage claims raise genuine issues of material fact involving the cost and scope of remediation, loss of use and

10

enjoyment, damage to personal property, lost rent, and diminution in value, despite the lack of corroborating evidence at this stage. Defendants filed a reply, arguing that Fererra failed to demonstrate that any genuine issues of material fact exist. R. Doc. 22513.

### I.   Julio Martinez [R. Doc. 22439]

Julio Martinez's claims arise from the alleged presence of defective Chinese drywall in his property located at 14731 SW 34 Lane, Miami, Florida. Martinez purchased the property and testified to smelling sulfur-like smells and experiencing appliance failures beginning in 2007. Further, Martinez was informed that his neighbors' homes had Chinese drywall. Martinez investigated whether his home contained Chinese drywall in 2017 and filed his claims in 2018.

Defendants argue that Martinez's claims are barred by Florida's applicable four-year statute of limitations because he should have known about the presence of defective drywall in 2007 after experiencing strange smells and appliance failures. Defendants further argue that Martinez has failed to provide evidence to support his claims for personal sickness, personal property, loss of use, and financial expenses. Further, Defendants contend Martinez discarded personal property allegedly damaged by defective drywall in violation of PTO 1(B) and PTO 1(I).

In opposition, Martinez argues his claims are timely filed because he only discovered the defective drywall in 2017. Martinez argues his damage claims raise genuine issues of material fact involving the cost and scope of remediation, loss of use and enjoyment, damage to personal property, lost rent, and diminution in value, despite the lack of corroborating evidence at this stage. He also argues that failure to comply with PTO 1(B) is a spoliation issue not appropriate for a motion for summary judgment. Defendants filed a reply, arguing that Martinez failed to demonstrate that any genuine issues of material fact exist. R. Doc. 22514.

### J.  Carlos Salabarria [R. Doc. 22440]

Carlos Salabarria's claims arise from the alleged presence of defective Chinese drywall in his property located at 12940 SW 135th Street, Miami, Florida. Plaintiff purchased the property in 2015 "as is," without conducting an inspection or receiving any property disclosures. Plaintiff testified to knowing about the Chinese drywall issue in Florida prior to the sale and knowing that the property was built in 2007.

Defendant argues Salabarria's claims are barred because he assumed the risk that his home contained Chinese drywall when he purchased it "as-is," without conducting an inspection or receiving any disclosures. Defendant further argues that Salabarria failed to provide sufficient evidence to support his claims for damages to personal property and loss of use and failed to comply with the evidence-preservation requirements of PTO 1(B) and PTO 1(I) by discarding personal property allegedly damages by the defective drywall.

Salabarria opposes the motion, arguing that he did not voluntarily assume the risk of defective drywall because he was not provided with any disclosure or warning of the risk when he purchased the property. R. Doc. 22465. Salabarria contends genuine issues of material fact exist with respect to his damage claims, and that his loss of use and enjoyment claim is viable because vacating a property is not a prerequisite to such a claim. Lastly, Salabarria contends that any failure to strictly comply with PTO 1 is a question of spoliation to be addressed by the transferor court, not by a summary judgement motion. Defendants filed a reply, arguing that Salabarria failed to demonstrate that any genuine issues of material fact exist. R. Doc. 22515.

### K.  Levi Taylor [R. Doc. 22441]

Levi Taylor's claims arise from the presence of allegedly defective Chinese drywall in his property located at 4090 SW Kallen Street, Port St. Lucie, Florida. Taylor purchased and built the

property between 2005 and 2006 and moved into the property in 2007. Plaintiff noticed an unusual sulfur smell and experienced appliance failures shortly thereafter. However, Taylor first had the property inspected in 2017. Taylor filed his claims in 2018.

Defendants argue Taylor's claims are barred by Florida's applicable four-year statute of limitations because he was or should have been on notice of the presence of defective drywall at least within a few years of moving into the property in 2007. Further, Defendants argues that Taylor has failed to provide sufficient evidence to support his claims for loss of use and damage to personal property.

In opposition, Taylor argues his claims are timely filed because he was put on notice of the defect only in 2017, following a property inspection. R. Doc. 22456. Further, he argues that his damage claims involve questions of fact that must be resolved by a trier of fact, not by a motion for summary judgment. Defendants filed a reply, arguing that Taylor failed to demonstrate that any genuine issues of material fact exist. R. Doc. 22516.

### L.  Kurt and Suzanne Tolliver [R. Doc. 22447]

Kurt and Suzanne Tolliver's claim arise from the alleged presence of defective Chinese drywall in their property located at 4531 SW Darwin Boulevard, Port St. Lucie, Florida. The Tollivers purchased the property in 2015. Defendants explain that the Tolliver's predecessor-in-title discovered the presence of Chinese drywall before the sale and was a part of the Knauf Settlement. Defendants further explain that the predecessors-in-title received Settlement funds and self-remediated the property. The Tollivers performed an inspection of the property in 2015 and were informed of the fact that the property contained Chinese drywall and that the prior owners had attempted to remediate the property. Defendants explain that the Tollivers nevertheless purchased the property "as-is" without further investigation.

13

Defendants argue the Tollivers' claims are barred because their property has already been litigated, settled, and released by the Knauf Settlement Agreement. Further, Defendants argue the Tollivers were specifically aware of the presence of Chinese drywall in the property and accordingly assumed the risk when they purchased the property as-is. Lastly, Defendants argue the Tollivers have failed to provide any evidence to support their loss or use and personal property claims.

In opposition, the Tollivers argue that their claims were timely filed and that Defendants have failed to demonstrate that they assumed the risk of defective drywall when purchasing the property. R. Doc. 22484. The Tollivers also argue that Defendants have failed to establish that they are precluded from recovering due to a claim filed and settled by a previous owner of the property because although they have requested proof of settlement and payment of benefits from Defendants, no such documentation has been provided. The Tollivers take the position that without proof of settlement and the execution of a release, claim preclusion does not apply.

Defendants filed a reply, arguing that the Tollivers have failed to provide any evidence suggesting a genuine issue of material fact. Defendants further explain that the payment and release of the prior property owner's claim are irrelevant. According to Defendants, the very fact that the property was included in the Knauf Settlement by a prior owner precludes the Tollivers from filing this claim. R. Doc. 22520.

**M.   James Blevins [R. Doc. 22452]**

James Blevins' claims arise from the alleged presence of defective Chinese drywall in his property located at 2636 SE 19th Place, Cape Coral, Florida. Blevins built the home in 2004 and alleges that he discovered the presence of defective drywall in 2017 after putting his home on the market in anticipation of moving to South Carolina. Blevins seeks damages for loss of use and loss

14

of enjoyment for the past twelve years, as well as damages for diminution in value and alternative living expenses.

Defendant argues that Blevins' claim for alternative living expenses fails because he chose to move from the property before learning about the defective drywall. Defendants also argue that his loss of use/enjoyment claims fail because there is no evidence that he in fact lost use or enjoyment of the facility before moving in a manner attributable to Chinese drywall. Additionally, Defendants argue that Blevins has provided insufficient evidence to support to any of his claims involving damage to his real and/or personal property. R. Doc. 22463.

In opposition, Blevins does not respond to the specific arguments raised against him. Instead, he argues that his claims were timely filed, that Knauf should be estopped from arguing that Blevins was put on notice by a strange smell or the tarnishing of metal, and that his damage claims raise genuine issues of material fact that preclude summary judgment. Defendants filed a reply, arguing that Blevins failed to satisfy his burden of demonstrating that a genuine issue of material fact exists. R. Doc. 22517. Further, Defendants emphasize that Blevins is precluded from recovering for alternative living or moving expenses associated with his home in South Carolina because "those amounts were admittedly incurred independently of Chinese Drywall." R. Doc. 22517 at 2. Further, Defendants argue Blevins is precluded from recovering for loss of use or enjoyment because he learned of Chinese Drywall after he decided to move to South Carolina. R. Doc. 22517 at 3.

**N. John & Rebecca Judge [R. Doc. 22453]**

John and Rebecca Judges' claims arise from the alleged presence of defective Chinese drywall in their property located at 2618 50th Street West, Lehigh Acres, Florida. The Judges divorced prior to the discovery of Chinese drywall in the home, which was granted exclusively to

John Judge in the divorce settlement. John Judge lived in the property until April or May of 2015, when he put the house on the market. Chinese drywall was discovered in July 2015 during a pre-sale inspection. The property was finally sold at short sale in October 2016.

Defendants argue there is insufficient evidence to support the Judges' claims for diminution in value and loss of use and/or enjoyment. Further, Defendants argue that the presence of drywall was only identified after the Judges had moved out of the property, and that accordingly, they "used and enjoyed the Property irrespective of the alleged presence" of the drywall. R. Doc. 22453 at 6. Therefore, Defendants argue, their loss of use and enjoyment claims must fail. Defendants also argue that Rebecca Judge's claim specifically must be dismissed because she did not have any interest in the property at the time of the short sale.

In opposition, Plaintiffs do not respond to the specific arguments raised against them. R. Doc. 22472. Instead, they argue that their claims were timely filed, that Knauf should be estopped from arguing that Plaintiff was put on notice by a strange smell or the tarnishing of metal, and that their damage claims raise genuine issues of material fact that preclude summary judgment. Defendants filed a reply, arguing that the Judges have failed to introduce evidence of any genuine issues of material fact. R. Doc. 22518. Further, Defendants argue that Rebecca Judge's claims should be dismissed because she did not have any interest in the property at the time it was sold. Additionally, because she only learned of the defect after the property was vacated, she has no claim for loss of use or enjoyment.

## III.    LAW & ANALYSIS

### A.  Legal Standard – Motion for Summary Judgment

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and

16

that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). When assessing whether a dispute as to any material fact exists, the Court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008).

Under Federal Rule of Civil Procedure 56(c), the moving party bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 322. When the moving party has met its Rule 56(c) burden, "[t]he non-movant cannot avoid summary judgment ... by merely making 'conclusory allegations' or 'unsubstantiated assertions.'" *Calbillo v. Cavender Oldsmobile, Inc.*, 288 F.3d 721, 725 (5th Cir. 2002) (quoting Little, 37 F.3d at 1075). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986). All reasonable inferences are drawn in favor of the nonmoving party, but a party cannot defeat summary judgment with conclusory allegations or unsubstantiated assertions. *Little*, 37 F.3d at 1075. A court ultimately must be satisfied that "a reasonable jury could not return a verdict for the nonmoving party." Delta, 530 F.3d at 399.

B. **Statute of Limitations**

Defendants seek summary judgment of the following Plaintiffs' claims on the grounds that their actions are barred by the applicable statute of limitations: Wicler Pierre, R. Doc. 22374, Isidro

and Marfelia Calderon, R. Doc. 22433, Anjali Van Drie, R. Doc. 22437, Elvis Ferrera, R. Doc. 22438, Julio Martinez, R. Doc. 22439, and Levi Taylor, R. Doc. 22441.

Under Florida law, actions involving negligent injury to real property are subject to a four-year statute of limitations. Fla. Stat. Ann. 95.11(3)(a). Although the statute of limitations is typically triggered by the completion of the final element of the cause of action, when a latent defect is involved, "the time runs from the time the defect is discovered or should have been discovered with the exercise of due diligence." *Id.* 95.11(3)(c). A latent defect is a defect "not discoverable by casual observation," *Hawkins v. Champion Int'l Corp.*, 662 So. 2d 1005, 1007 (Fla. Dist. Ct. App. 1995), or "by reasonable and customary inspection, and of which the owner has no knowledge." *Lakes of the Meadow Village Homes Condominium Nos. One, Two, Three, Four, Five, Six, Seven, Eight, and Nine Maintenance Ass'ns, Inc. v. Arvida/JMB Partners, L.P.*, 714 So.2d 1120, 1122 (Fla. 3d DCA 1998) (quoting *Henson v. James M. Barker Co.*, 555 So.2d 901, 909 (Fla. 1st DCA 1990)).

Although the statute of limitations begins to run only upon the discovery of a latent defect, "[t]he knowledge required to commence the limitation period . . . does not rise to that of a legal certainty." *Univ. of Miami v. Bogorff*, 583 So. 2d 1000, 1004 (Fla. 1991), *holding modified by Tanner v. Hartog*, 618 So. 2d 177 (Fla. 1993) (citing *Steiner v. Ciba–Geigy Corp.*, 364 So.2d 47 (Fla. 3d DCA 1978), *cert. denied*, 373 So. 2d 461 (Fla. 1979)). "Plaintiffs need only have notice, through the exercise of reasonable diligence, of the possible invasion of their legal rights." *Id.* To trigger the limitation period in a products liability case, a plaintiff "need not know the full extent of his injury," but must recognize "a distinct injury and some causal connection between the injury and exposure to plaintiff's product." *Samson v. R.J. Reynolds Tobacco Co.*, No. 96-414-CIV-T-

24(B), 1997 WL 373475, at *5 (M.D. Fla. June 2, 1997) (citing *Babush v. American Home Prod. Corp.*, 589 So. 2d 1379 (Fla. 4th DCA 1991)).

Plaintiffs collectively contend that Defendants should be estopped from arguing that Plaintiffs were on notice of the defect any earlier than a formal Chinese drywall inspection because Defendants failed to comply with their post-sale duty to warn. Indeed, Florida law recognizes that in some circumstances, manufacturers have a post-sale duty to warn downstream consumers of defects in their products, even after the goods have left the manufacturer's possession or control. *See Florio v. Manitex Skycrane, LLC*, No. 6:07-CV-1700-ORL-28, 2010 WL 5137626, at *7 (M.D. Fla. Dec. 10, 2010) (citing *West v. Caterpillar Tractor Co.,* 336 So.2d 80, 86 (Fla.1976)) ("Florida law imposes a post-sale duty to warn customers of a product's dangerous propensities on those who have control over the manufacture or distribution of the product—those who are in a position to take any safety measures."); *Moncrieffe v. Clark Equip. Co.*, No. 06-22644-CIV, 2008 WL 11333222, at *17 (S.D. Fla. July 23, 2008). This duty is premised on the Restatement (Third) of Torts, which provides that a post-sale duty to warn is triggered when "[a] reasonable person in the seller's position would provide a warning after the time of sale if . . . the seller knows or reasonable should have known that the product poses a substantial risk of harm to persons." Restatement (Third) of Torts, § 10(b)(1).

Even assuming, arguendo, that a post-sale duty to warn does exist, the Restatement (Third) of Torts clarifies that a post-sale duty to warn applies only when "a warning can be effectively communicated to and acted on by those to whom a warning might be provided." Restatement (Third) of Torts § 10(b)(3). In overseeing this MDL, the Court has become intimately familiar with the distribution process that brought Knauf-manufactured drywall into this country. Due to the size and geographic scope of the market and the complexity of the distribution network, the Court

19

concludes that it would not have been reasonably possible for Knauf to identify all those to whom a post-sale duty to warn may have been owed. Further, the Court notes that Knauf did undertake an extensive notice program during the major settlement phase of this MDL to identify potential claimants and notify them of their right to participate in a settlement. Accordingly, the evidence does not support Plaintiffs' estoppel argument.

Plaintiffs additionally argue that the applicable statute of limitations has been tolled by the equitable tolling principals of *American Pipe & Construction Co. v. Utah,* 414 U.S. 538 (1974). Defendant argues that *American Pipe* does not apply to subsequent class actions such as the instant case. In *American Pipe*, the United States Supreme Court held that a timely filed class action "tolls the running of the statute for all purported members of the class who make timely motions to intervene after the court has found the suit inappropriate for class action status." 414 U.S. at 553. However, the Supreme Court recently announced that this rule applies only to individual claims and not to successive class actions. *China Agritech, Inc. v. Resh*, 138 S. Ct. 1800, 1801 (2018) ("We hold that *American Pipe* does not permit a plaintiff who waits out the statute of limitations to piggyback on an earlier, timely filed class action."). Accordingly, *American Pipe* tolling does not apply.

20

Considering the foregoing, the Court will deny summary judgment on statute of limitations grounds with respect to Isidro and Marfelia Calderon,[2] R. Doc. 22433, Abigail Cohen,[3] R. Doc. 22435, Anjali Van Drie,[4] R. Doc. 22437, Elvis Ferrera,[5] R. Doc. 22438, Julio Martinez,[6] R. Doc. 22439, and Levi Taylor,[7] R. Doc. 22441, because Defendants have failed to demonstrate that any of these Plaintiffs had actual knowledge of Chinese drywall more than four years before filing suit. Although Defendants cite Plaintiffs' acknowledgement of strange smells or frequent appliance

---

[2] The Calderons purchased the property in 2005 and filed their claims in 2016. R. Doc. 22433-1 at 6. Marfelia Calderon testified to noticing a bad smell within a few years of purchasing the property, but explained that they never did anything to investigate the odor. Although they experienced appliance failures, they did not investigate the issue or speak to a repair person. R. Doc. 22433-3 at 5. She further testified that she did not know of anyone that had defective Chinse drywall, nor was she aware of Chinese drywall being an issue in her neighborhood. R. Doc. 22433-3 at 4. Isidro Calderon additionally testified that he only learned of the defective drywall in November 2015, when an inspection was conducted on the property.

[3] Cohen purchased the property in 2006 and filed her claims in 2016. Cohen testified that she never noticed any smells in the property. R. Doc. 22435-3. Although she experienced appliance failures, she was never told that the rate at which her appliances failed was unusual, nor did anyone ever suggest she had Chinese drywall. R. Doc. 22435-3 at 6. She says she "just thought [she] was unlucky." R. Doc. 22435-3 at 6. She testified that she had heard about Chinese drywall on the news, but never heard anyone in her neighborhood talk about Chinese drywall. R. Doc. 22435-3 at 7. She specifically explained that she didn't make a correlation between her situation and Chinese drywall from the news reports because they focused on the sulfur smell, which her house did not have. R. Doc. 22435-3 at 7.

[4] Van Drie purchased the property in 2008 and filed her claims in 2018. Although Van Drie testified to experiencing a strange smell and appliance failures prior to conclusively discovering that her home contained Chinese drywall in 2015, there is insufficient evidence to establish that she had actual knowledge of the defect more than four years before filing suit. Van Drie testified that she didn't recall the smell being there when she moved in and that she had "no idea" when she first noticed it. R. Doc. 22437-3 at 5. When asked whether any repair people had indicated that she had a high frequency of appliance failures, she explained that she didn't know because her ex-husband handled those matters. R. Doc. 22437-3 at 6.

[5] Elvis Ferrerra purchased the property in 2006 and filed his claims in 2018. Although he noticed a strange smell three or four years after purchasing the property, he did "nothing" to investigate it, nor did he contact a repair person to discuss the successive appliance failures he experienced. When asked whether he knew that the home contained Chinese drywall during the nine years he lived there, Ferrera said "No." R. Doc. 22438-3 at 6.

[6] Julio Martinez purchased the property in 2007 filed his claims in 2018. He began experiencing smells and appliance failures shortly after moving in, but he did not discuss Chinese drywall with the home's builder because he "had no knowledge there was Chinese drywall." R. Doc. 22438-3. He was specifically asked whether, during the nine years he lived on the property, he knew there was Chinese drywall in it. He responded, "No." R. Doc. 22438-3 at 6. He additionally testified that he never discussed the smells or appliance failures with a repair person or company. R. Doc. 22438-3 at 7.

[7] Levi Taylor purchased the property in 2005 or 2006 and filed his claims in 2018. Taylor discovered that his home contained Chinese drywall through an official inspection, which was conducted after "[a] couple different things," such as the corrosion of pipes and the failure of his microwave, "had been building." R. Doc. 22441-3 at 2-3. Although the appliance failures began a few years after he moved into the home in 2007, he also testified that he "didn't really notice" a strange smell and that he didn't "know what Chinese drywall looks like." R. Doc. 22441-3 at 4.

failures as evidence that Plaintiffs should have discovered the defect, the Court considers the evidence in the light most favorable to the non-moving party and concludes that whether the Plaintiffs should have discovered the defect more than four years before filing suit presents a genuine issue of material fact.

In contrast to these Plaintiffs, the Court will grant summary judgment with respect to Wicler Pierre's claims because it is apparent that he had actual knowledge of the defect more than four years before filing suit. Pierre filed his claims on November 21, 2016. Accordingly, his claims are viable only if he learned or should have learned about the defective drywall after November 21, 2012. Pierre testified, "I know my house got Chinese drywall because all the neighbors fixed the drywall in their houses." R. Doc. 22374-5 at 6. When asked when his neighbors fixed the drywall in their homes, he responded that he was "about 2012, 2011, something like that." R. Doc. 22374-5 at 7. He further explained that "when the neighbor do that, I got somebody from friend to check for me." When prompted, he clarified that this was in 2011 or 2012. Directly thereafter, he confirmed that "that's when [he] found out [he had] Chinese drywall." R. Doc. 22374-5 at 7. A few moments later, he explained, "[in 2016], I was looking for somebody to help me to fix my house. But I knew about before 2016." R. Doc. 22374-5 at 8. He later testified to watching a lot of news coverage and learning that "[i]f live in a house with Chinese drywall it make you sick." R. Doc. 22374-5 at 9-10. He testified that he knew this information before 2011. He also testified that beginning in 2010, he began having to replace the fuses in his home on a monthly basis and was specifically told by a repair person that the cause of the fuse failures was Chinese drywall.[8] R. Doc. 22374-5 at 13.

---

[8] When asked, "So in 2010 when this started, someone told you that the . . . fuses had to be . . . replaced because of the Chinese drywall," Pierre responded "Yeah." R. Doc. 22374-5 at 13.

22

Considering the foregoing deposition testimony, the Court is unconvinced that Pierre only learned of presence of Chinese drywall in his home after November 21, 2012. He specifically testified to knowing about Chinese drywall in 2011, having a friend check on his house when his neighbors began remediating their homes in 2011 or 2012, and having to replace the fuses in his home on a monthly basis beginning in 2010. Specifically, he admitted to being told that the fuses had to be replaced "because of the Chinese drywall" in 2010. Although Pierre may not have conclusively identified the presence of Chinese drywall until a formal inspection in 2016, the Court notes that the statute of limitation begins to run not when a plaintiff is absolutely certain of the presence of the defect, but when plaintiff has notice, "through the exercise of reasonable diligence," of the problem. *Univ. of Miami*, 583 So. 2d 1000. Considering the Chinese drywall symptoms Pierre experienced and, most tellingly, the fact that he was told by at least one repair person that the fuses needed to be replaced *because of* Chinese drywall, the Court concludes that Pierre was on notice of the defective drywall by 2011. Accordingly, the Court will grant summary judgment as to Wicler Pierre's claims as being untimely filed.

## C. Assumption of the Risk

Defendants seek summary judgment of the following Plaintiffs' claims on the grounds that they assumed the risk of Chinese drywall when purchasing the affected properties: Skyline Glass, LLC, R. Doc. 22407, A&B Real Estate Holdings, R. Doc. 22428, Carlos Salabarria, R. Doc. 22440, and Kurt and Suzanne Tolliver, R. Doc. 22447.

Under Florida law, the "affirmative defense of express assumption of the risk may totally bar recovery if the injured party actually consented to a known risk." *Kendrick v. Ed's Beach Serv., Inc.*, 577 So. 2d 936, 937 (Fla. 1991). The defense is viable when the plaintiff had "full knowledge and appreciation of the danger and risk inherent in that kind of activity." *Id.* Whether

23

a plaintiff "'actually consented' to confront certain dangers" is a question for the jury. *Kuehner v.*

*Green*, 436 So. 2d 78, 80 (Fla. 1983). In answering that question, the jury must determine "whether

the plaintiff *subjectively* appreciated the risk giving rise to the injury," considering "what the

plaintiff really expected" in following a particular course of conduct. *Id.* (citing *Henry v. Britt*, 220

So.2d 917 (Fla. 4th DCA), *cert. denied*, 229 So. 2d 867 (Fla. 1969)). "If it is found that the plaintiff

recognized the risk and proceeded to participate in the face of such danger the defendant can

properly raise the defense of express assumption of risk." *Id.* If a plaintiff did not subjectively

appreciate the instant risk, the jury must consider whether he reasonably should have done so. "If

it is found that a reasonable man would not have anticipated this risk, the 'unsuspecting plaintiff'

cannot be said to have consented to the danger and he therefore should be allowed to recover in

full." *Id.* The principal of comparative negligence, rather than assumption of the risk, applies when

a plaintiff should have recognized a particular risk but failed to do so. *Id.* at 80.

Summary judgment based on assumption of the risk is not appropriate in any of the pending

matters. Defendants have presented no evidence suggesting that any of these Plaintiffs specifically

recognized the risk that the homes they purchased contained Chinese drywall, and the question of

whether they reasonably should have done so is a question better answered by the trier of fact.

### D. Damages

Defendants seek summary judgment of the following Plaintiffs' claims on the grounds that

they have not provided sufficient evidence of their alleged damages: Wicler Pierre, R. Doc. 22374,

Skyline Glass, LLC, R. Doc. 22407, Daniel and Shona Blonsky, R. Doc. 22408, A&B Real Estate

Holdings, R. Doc. 22428, Isidro and Marfelia Calderon, R. Doc. 22433, Abigail Cohen, R. Doc.

22435, Anjalie Van Drie, R. Doc. 22437, Elvis Ferrera, R. Doc. 22438, Julio Martinez, R. Doc.

22439, Carlos Salabarria, R. Doc. 22440, Levi Taylor, R. Doc. 22441, Kurt and Suzanne Tolliver, R. Doc. 22447, James Blevins, R. Doc. 22452, and John and Rebecca Judge, R. Doc. 22453.

Upon consideration of a motion for summary judgment, "if the movant . . . points out an absence of evidence to prove an essential element of the nonmovant's case on which the nonmovant bears the burden of proof at trial, the nonmovant must then present competent summary judgment evidence to support the essential elements of its claim and to demonstrate that there is a genuine issue of material fact for trial." *Seaboard Marine Ltd., Inc. v. Trinpak Packaging Co.*, No. 18-CV-22797, 2019 WL 4737697, at *4 (S.D. Fla. Sept. 26, 2019) (citing *National Ass'n of Gov't Employees v. City Pub. Serv. Board*, 40 F.3d 698, 712 (5th Cir. 1994)). Mere allegations, denials in the pleadings, and unsubstantiated assertions are not competent summary judgment evidence. *See Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998); *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). Indeed, "a complete failure of proof concerning an essential element of the nonmoving party's case renders all other facts immaterial." *Celotex*, 477 U.S. at 323, 106 S. Ct. 2548.

In the interest of justice and judicial efficiency, the Court will not grant summary judgment with respect to any individual damage claims, save for James Blevins' alternative living expenses claim, Rebecca Judge's claims for diminution in value and loss of use or enjoyment, and John Judge's claim for loss of use or enjoyment. These claims are discussed in greater detail below. With respect to the other Plaintiffs named in this section, their loss of use or enjoyment claims in particular present genuine issues of material fact that preclude summary judgment. Under Florida law, damages for loss of use are only available "when an owner suffers a complete deprivation of his property." *AT & T Corp. v. Lanzo Const. Co., Fla.*, 74 F. Supp. 2d 1223, 1225 (S.D. Fla. 1999). Here, the parties disagree about what constitutes a "complete deprivation." Although certain

25

Florida courts have declined to allow loss of use damages where plaintiffs "continued to reside in the home" during the period in which their home was seriously damaged, *Schryburt v. Olesen*, 475 So.2d 715, 717 (Fla. 2d DCA 1985), others have indicated that a complete deprivation may occur when there is an "occurrence which renders one unsafe and insecure in the use and enjoyment of his property," *McCreary v. Fla. Residential Prop. & Cas. Joint Underwriting Ass'n*, 758 So. 2d 692, 695 (Fla. Dist. Ct. App. 1999). In general, "physical discomfort in the use of property, like insecurity and unsafety in the use of property, raises the specter of loss of use" that entitles plaintiffs to have "any ambiguity about whether the physical comfort caused by [the defect] was severe enough to cause loss of use resolved in their favor." *Mid-Continent Cas. Co. v. Adams Homes of Nw. Fla. Inc.*, 725 F. App'x 777, 781 (11th Cir. 2018). Whether the problems associated with Chinese drywall, such as a noxious odor or successive appliance failures, amounts to a "complete deprivation" is an issue best reserved for the trier of fact.

Whether to grant summary judgment with respect to Plaintiffs' allegedly unsupported pecuniary damage claims is a harder question. The Court recognizes that the evidence supporting Plaintiffs' pecuniary damage claims, such as damage to personal property, loss of rental income, and alternative living expenses, is often sparse. In many cases, Plaintiffs merely offer testimony discussing how they estimated the damages they seek or provide nothing but an itemized list of items and prices to support a personal property loss claim. With respect to diminution in value and remediation damages, Plaintiffs rely on a variety of calculation methods. The evidence provided to support these claims may indeed be insufficient to prevail at trial. Nevertheless, such evidence is sufficient to at least narrowly avoid summary judgment. It also appears to the Court as though these questions are better resolved by the remand courts that will ultimately try these cases, whether at a preliminary conference or by a Rule 50 motion at trial.

With respect to James Blevins, the Court will grant summary judgment as to his claim for alternative living and moving expenses. During his deposition, Blevins explained that he and his wife made the decision to move to South Carolina "prior to the discovery of the Chinese Drywall," because they had visited his wife's cousin there and enjoyed the area. R. Doc. 22452-5 at 12. He additionally testified that they anticipated moving into an RV after selling the house and taking their time to buy property in South Carolina. R. Doc. 22452-5 at 12. He was specifically asked whether he put his house on the market in anticipation of moving to South Carolina, to which he replied "Yes." R. Doc. 22452-5 at 12. Because Blevins incurred these expenses independently of the defect, summary judgment is appropriate with respect to this claim.

With respect to Rebecca Judge, the Court will grant summary judgment as to all her claims. The Judges divorced prior to the discovery of defective drywall in the property, and John Judge was granted sole ownership of the home in the divorce settlement. R. Doc. 22453-1 at 6. Because Rebecca Judge was divested of ownership when the property was sold at a short sale, she has no claim stemming from the sale. Further, because there was no indication that the home contained Chinese drywall until after John Judge became the sole owner, Rebecca Judge does not have a viable claim for loss of use or enjoyment, which requires that the claimant suffer a "complete deprivation" of the property. *See AT & T Corp.*, 74 F. Supp. 2d at 1225. Additionally, Rebecca Judge failed to attend her deposition or otherwise oppose this motion. For the foregoing reasons, summary judgment is warranted with respect to her claims.

Additionally, John Judge's loss of use claim is not viable. Unlike the other Plaintiffs, who testified to experiencing strange smells or successive appliance failures in their properties, John Judge affirmed that he "lived in the home without knowledge or awareness of Chinese drywall." R. Doc. 22453-5 at 6. Further, the drywall was only discovered after John Judge had moved out of

27

the property and sought to sell it. Accordingly, he cannot claim loss of use or enjoyment of the property because he has not claimed to experience anything that could be construed as a "complete deprivation" of it.

### E. Failure to Comply with Pre-Trial Orders

Defendants seek summary judgment of the following Plaintiffs' claims on the grounds that they failed to comply with the Court's Pre-Trial Orders: Skyline Glass, LLC, R. Doc. 22407, Daniel and Shona Blonsky, R. Doc. 22408, Isidro and Marfelia Calderon, R. Doc. 22433, Julio Martinez, R. Doc. 22439, and Carlos Salabarria, R. Doc. 22440.

In an MDL such as the present litigation in which there are thousands of claims and over 1300 attorneys, it is necessary, if not essential, that the transferor court establish some guidelines so that the discovery aspect of the case can proceed in a fair, effective, and efficient manner. To accomplish this goal, the Court issued a number of Pretrial Orders governing the preservation of physical evidence. In many pending motions, Defendants seek summary judgment on the basis that plaintiffs failed to comply with these Pretrial Orders.

"A district court has broad discretion in all discovery matters, and such discretion will not be disturbed ordinarily unless there are unusual circumstances showing a clear abuse." *Moore v. CITGO Ref. & Chemicals Co., L.P.*, 735 F.3d 309, 315 (5th Cir. 2013) (quoting *Kelly v. Syria Shell Petroleum Dev. B.V.*, 213 F.3d 841, 855 (5th Cir. 2000)). Federal Rule of Civil Procedure 41(b) authorizes a district court to dismiss a claim or impose other sanctions for failure to comply with discovery orders. However, because "dismissal with prejudice is an extreme sanction that deprives the litigant of the opportunity to pursue his claim," a dismissal under Rule 41(b) is proper only when (1) there is a clear record of delay or contumacious conduct by the plaintiff, and (2) lesser sanctions would not serve the interests of justice. *Callip v. Harris Cnty. Child Welfare Dep't*, 757

28

F.2d 1513, 1519 (5th Cir. 1985). The Court declines to grant any of the pending motions for failure to comply with the Pretrial Orders. Although the Court recognizes that failure to strictly comply with the Pretrial Orders imposes a burden on Defendants, these Plaintiffs have not displayed the "clear record" of delay and misconduct necessary to warrant dismissal of their claims. In all of these cases, Plaintiffs discovered Chinese drywall in their homes after the Knauf Settlement was executed and the Pretrial Orders issued. Remediation was often performed on these properties before the Plaintiffs joined the instant lawsuit. Further, it is entirely conceivable that Plaintiffs discarded evidence before discovering that the damage was attributable to Chinese drywall or learning of their duty to preserve evidence. Accordingly, the Plaintiffs' failure to strictly comply with the applicable Pretrial Orders does not warrant dismissal of their claims.

### F. Claim Preclusion due to Prior Release

In addition to seeking summary judgment of Kurt and Suzanne Tolliver's claims on assumption of the risk grounds, Defendants argue that the Tollivers' claims are precluded because their property has already been litigated, settled, and released by a previous owner who participated in the Knauf Settlement Agreement. R. Doc. 22447. The Tollivers take the position that a particular property is only precluded from the litigation when a prior owner has been paid settlement funds and executed a release. Absent confirmation from Defendants that the prior owner was paid and released his claims, the Tollivers argue their claims are viable.

Section 5 of the Knauf Settlement Agreement governs releases. In particular, Section 5.1 provides that a "released claim" is "any and all claims of any kind and nature whatsoever of a Class Member . . . arising out of . . . Chinese Drywall . . . including, but not limited to, any and all claims that a Class Member . . . or anyone claiming by or through [a Class Member], has, may have, or may have had." Section 5.2 further provides, "as of the Effective Date of the Settlement,

29

each Class Member and any person or entity claiming by, through, and/or on behalf of a Class Member, hereby fully, finally, and forever releases, remises, waives, surrenders, foregoes, gives up, abandons, cancels, acquits and forever discharges any and all Released Claims." R. Doc. 16407-3 at 57. The Court approved the Settlement Agreement, including its release provisions, on February 7, 2013. R. Doc. 16750. Nevertheless, the Court finds it appropriate to require Defendants to provide evidence, in the form of an executed release, affidavit, or other document, demonstrating that the prior owner did in fact receive funds from the Knauf Settlement and release his claims against the Participating Defendants.

## IV.   CONCLUSION

Considering the foregoing,

**IT IS ORDERED** that Defendant's Motion for Summary Judgment as to Wicler Pierre is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment as to Skyline Glass, LLC, R. Doc. 22407, is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment as to Daniel and Shona Blonsky, R. Doc. 22408, is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment as to A&B  Real Estate Holdings, R. Doc. 22428, is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment as to Abigail Cohen, R. Doc. 22435, is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment as to Isidro and Marfelia Calderon, R. Doc. 22433, is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment as to Anjalie Van Drie, R. Doc. 22437, is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment as to Elvis Ferrera, R. Doc. 22438, is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment as to Julio Martinez, R. Doc. 22439, is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment as to Carlos Salabarria, R. Doc. 22440, is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment as to Levi Taylor, R. Doc. 22441, is **DENIED**.

**IT IS FURTHER ORDERED** that with respect to Defendant's Motion for Summary Judgment as to Kurt and Suzanne Tolliver, R. Doc. 22447, Defendants provide evidence that the prior owner of the Affected Property received Settlement Funds and released his claims against the Participating Defendants within two weeks of this Order's issuance. The Court will defer ruling on this motion until such evidence is provided.

**IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment as to James Blevins, R. Doc. 22452, is **GRANTED IN PART** and **DENIED IN PART**. It is **GRANTED** with respect to Blevins' claim for moving expenses and alternative living expenses. It is **DENIED** in all other respects.

**IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment as to John and Rebecca Judge, R. Doc. 22453, is **GRANTED IN PART** and **DENIED IN PART**. It is **GRANTED** with respect to Rebecca Judge's claims and John Judge's claim for loss of use/enjoyment. It is **DENIED** with respect to John Judge's other claims.

31

New Orleans, Louisiana this 12th day of February 2020.

                                          Eldon E. Fallon
                                  United States District Judge