UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In Re: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL 2047 |
| | SECTION "L" |
| This document relates to: | |
| *Elizabeth Bennett, et al v. Gebr. Knauf Verwaltungsgesellschaft, KG, et al* | JUDGE ELDON FALLON |
| Case No. 14:cv-2722 | MAGISTRATE JOSEPH WILKINSON, JR. |

**OMNIBUS REPLY MEMORANDUM IN SUPPORT OF
MOTIONS FOR SUMMARY JUDGMENT ON CLAIMS ASSERTED BY
TONI MACKSEY, RON & CATHERINE MARTINEZ, NATHAN JUNIUS, AND
RONALD & MARIA NATAL**

**MAY IT PLEASE THE COURT:**

Defendants, Knauf Gips KG and Knauf Plasterboard (Tianjin) Co., Ltd. (the "Knauf Defendants"), through undersigned counsel, respectfully submit this Omnibus Reply Memorandum in Support of the Motions for Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure as to the claims asserted by Toni Macksey (R. Doc. 22371), Ronald & Catherine Martinez (R. Doc. 22372), Nathan Junius (R. Doc. 22370), and Ronald and Maria Natal (R. Doc. 22373) against them in Plaintiffs' Fifth Amended Class Action Complaint (the "Fifth Amended Complaint").[1]

---

[1] At the outset, Plaintiffs have indicated that the only issue to decide at trial is damages. This is patently incorrect because while the Knauf Defendants have offered to stipulate to product defect in appropriate cases, Plaintiff has not agreed to any proposed stipulations. Moreover, causation will be an issue at trial.

A. **Plaintiffs Failed to Preserve and Present Evidence under the Applicable Pretrial Orders, and Otherwise Cannot Establish How Much, If Any, KPT Drywall Is/Was in the Property.**

First, Plaintiffs raise an unsupported argument regarding the applicability of MDL 2047's pretrial orders. On June 16, 2009, this Court entered PTO 1 regarding preservation of evidence. On October 9, 2009, this Court entered PTO 1(B) regarding preservation of evidence. PTO 1(B) is clear regarding its applicability to claims in MDL 2047, including Plaintiffs' claims:

> ***This Order addresses preservation requirements for those persons or entities*** who (1) were transferred to this Court by the Judicial Panel on Multidistrict Litigation, pursuant to its Order of June 15, 2009; (2) ***any tag-along actions subsequently transferred*** to this Court by the Judicial Panel on Multidistrict Litigation pursuant to Rule 7.4 of the Rules of Procedure of that Panel; (3) all related cases originally filed in this Court or transferred or removed to this Court; (4) ***those persons or entities who intend to or may seek recovery relating to Chinese-manufactured drywall, including putative members of any class action***s; and (5) any subsidiaries and affiliates of all defendants in any such actions. In summary, from this date forward, <u>***all persons or entities***</u> who have or <u>***who intend***</u> to pursue a claim relating to allegedly defective Chinese-manufactured drywall and their agents, subsidiaries and affiliates shall preserve the following physical evidence at their own expense, subject to further order by the Court.

PTO 1(I) was issued on January 24, 2012 and this Court reiterated that "Pre-Trial Order No. 1(B) remains in full force and effect."[2] Therefore, notwithstanding Plaintiffs' unsupported argument, Plaintiffs are subject to this Court's pretrial orders.

Second, it is undisputed that Plaintiffs[3] failed to comply with the requirements of PTO 1, PTO 1(B), or PTO 1(I), and Plaintiffs have not provided any support to contradict that this Court has the discretion to dismiss claims for failing to comply with pretrial orders, particularly when compliance involves a necessary element to meet plaintiff's burden. *In re Deepwater Horizon*, 922

---

[2] It is undisputed Natal discarded PTO 1 evidence after filing suit in this action. It is also undisputed that the Natal, Junius, and Martinez all discarded PTO 1 evidence well after October 2009.

[3] Defendants have not submitted a PTO 1 argument as to Macksey's product ID evidence. However, PTO 1 also extends to personal property alleged to be damaged by KPT drywall and Macksey failed to comply, preserve and present evidence of personal property, and therefore, failed to provide competent evidence to meet her burden for those alleged damages.

F.3d 660, 665 (5th Cir. 2019); *Moore v. CITGO Ref. & Chemicals Co., L.P.*, 735 F.3d 309, 315 (5th Cir. 2013). "A district court has broad discretion in all discovery matters, and such discretion will not be disturbed ordinarily unless there are unusual circumstances showing a clear abuse." *Moore*, 725 F.3d at 315 (quoting *Kelly v. Syria Shell Petroleum Dev. B.V.*, 213 F.3d 841, 855 (5th Cir. 2000) (internal quotation omitted). Indeed, this Court has previously determined that failure of a plaintiff to comply with the preservations standards in PTO 1, PTO 1(B), and PTO 1(I) results in prejudice to the defendants because without compliance, a plaintiff cannot establish how much, if any, drywall of a particular manufacturer was or was not installed in the property.[4] Therefore, based on the non-compliance with the applicable pretrial orders and the resulting prejudice to the Knauf Defendants, the Court should dismiss Plaintiffs' claims.

Finally, aside from the applicability and appropriateness to dismiss based on non-compliance with the pretrial orders, Plaintiffs still cannot meet their burden based on the evidence preserved and presented. Indeed, in light of the undisputed fact there are other manufacturers of defective Chinese drywall, this Court has previously determined that when a Plaintiff fails to preserve and present evidence as set forth in the pretrial orders, a claimant cannot establish product ID and a KPT percentage. Again, the Knauf Defendants had the burden only to "point out the absence of evidence supporting the essential elements of the opposing party's case. *In re Petition of Settoon Towing LLC*, 722 F. Supp. 2d 710, 713 (E.D. La. 2010). The Knauf Defendants more than met this burden in their motion by pointing out the failure to comply with PTO 1 and failure to prove product ID and a KPT percentage. Therefore, the burden shifted to Plaintiff to "specifically identify evidence indicating a genuine issue for trial" on those claims. *Ratliff v. Advisors Asset Mgmt., Inc.,* 660 F. App'x 290, 291 (5th Cir. 2016). To meet this burden, Plaintiffs

---

[4] R. Doc. 20930 and R. Doc. 20933.

were required "to come forward with competent evidence, such as affidavits or depositions, to buttress his claims." *Alderman v. Great Atl. & Pac. Tea Co.*, 332 F. Supp. 2d 932, 936 (E.D. La. 2004). It was undisputed in Plaintiffs' Oppositions that Plaintiffs' failed to comply with pretrial orders, Plaintiffs failed to come forward with any other evidence to buttress their claims, and therefore Plaintiff cannot meet their burden to establish how much, if any KPT was in the properties. Therefore, from a summary judgment standpoint, and based on the Court's prior rulings that a claimant cannot meet their burden with such evidence,[5] summary judgment is appropriate.

**B. The Macksey, Natal, and Martinez Claims are barred by Prescription.**

It is undisputed that a one-year liberative prescription period applies to all of Plaintiffs' Louisiana claims. Where, as here, more than one year has elapsed from the date of injury, the claims are prescribed on their face and "the burden shifts to the plaintiff to prove an exception to prescription." *Terrebonne Par. Sch. Bd. v. Columbia Gulf Transmission Co.*, 290 F.3d 303, 320 (5th Cir. 2002); *see also Kling Realty Co. v. Chevron U.S., Inc.*, 575 F.3d 510, 517 (5th Cir. 2009).

First, as to Natal, the claims are prescribed on their face and it is undisputed that Natal was put on actual notice of defective Chinese drywall via an inspection on October 27, 2015 and did not file any action until almost three years later on September 10, 2018.[6] For these reasons, Natal's claims are prescribed.[7]

Second, the Martinez claims are also prescribed on their face. And, in February 2014, Martinez became personally aware of defective Chinese drywall when he identified an alleged

---

[5] R. Doc. 20930 and R. Doc. 20933.

[6] Furthermore, the undisputed evidence was that the Natal Plaintiffs were by their own allegations put on notice of issues in the Property allegedly attributable to Chinese-manufactured drywall as early as 2010.

[7] Natal knew about defective Chinese drywall from the news and as a result of owning his own contracting business in Slidell, Louisiana: M. Natal Contractors.

defective Chinese drywall in his attic. Martinez did not file any action until January 30, 2016. For these reasons, the Martinez claims are prescribed.[8]

Third, Macksey's claims are prescribed on their face. Macksey did not file suit in his matter until November 14, 2014. The only evidence presented is the evidence in Defendants' motion for summary judgment. Macksey received numerous indications of contaminated drywall more than a year prior to filing any action. Macksey was aware of the existence of defective Chinese drywall, and in the pre-purchase disclosures by the previous owners in 2012, Macksey was put on notice of potential "Contaminated Drywall." Macksey then bought the Property in October 2012 and throughout the following year, Macksey alleges odors and that her jewelry tarnished, the evaporator coil blackened, and the A/C vents began to blacken. In or before November 2013, Macksey also received an InEx invoice and letter from her attorney alerting her to Chinese drywall in the Property, which she discovered herself in her attic. However, when questioned, Macksey could not dispute when she received the letter and found the drywall. Therefore, Macksey cannot overcome her burden that her claims are prescribed.

Plaintiffs invoke an exception found in the doctrine of *contra non valentem*, claiming that they only learned of the damages sustained by Defendants' actions at a later date. "The doctrine of *contra non valentem* prevents the running of liberative prescription where the cause of action is not known or reasonably knowable by the plaintiff." *Cole v. Celotex Corp.*, 620 So. 2d 1154, 1156 (La. 1993); *see also Eldredge v. Martin Marietta Corp.*, 207 F.3d 737, 743(5th Cir. 2000). However, the Louisiana Supreme Court has cautioned that this equitable doctrine must be strictly construed and applies only in "exceptional circumstances." *Richards v. Choice Hotels Int'l, Inc.*,

---

[8] Similarly, Martinez is in the construction business and was aware of defective Chinese drywall in the area prior to the time they allegedly found Chinese-manufactured drywall in the Property and between 2006 and 2013 allegedly sustained numerous A/C failures, smell issues, and appliance failures.

01-1646 (La. 2/26/02), 142 So. 3d 249, 253. The doctrine only suspends the running of prescription until a party obtains actual or constructive knowledge of facts sufficient to apprise a reasonable person that he may be the victim of a tort. *See Terrebonne Par. Sch. Bd.*, 290 F.3d at 320 (citing *Eldredge*, 207 F.3d at 743); *Campo v. Correa*, 01-2797 (La. 6/21/02), 828 So. 3d 502, 510. A party is deemed to possess constructive knowledge when the party acquires "sufficient information, which, if pursued, will lead to the true condition of things." *Marin v. Exxon Mobil Corp.*, 09-2368 (La. 10/19/10), 48 So. 3d 234, 246. "Such notice is tantamount to knowledge or notice of everything to which a reasonable inquiry may lead." *Campo*, 828 So. 3d at 511. Courts look to the reasonableness of a plaintiff's action or inaction in light of what he knew or should have known. *Marin*, 48 So. 3d at 246; *see also In re Ford Motor Co. Bronco II Prod. Liab. Litig.*, 982 F. Supp. 388, 395 (E.D. La. 1997) (citing *Corsey v. State Dept. of Corrections*, 375 So.2d 1319, 1321–22 (La.1979)). In sum, if an opportunity is afforded to a party to know and to learn about a certain matter bearing on his interest and he fails or refuses it, and closes his eyes and ears to the notice before him, the law will hold him as bound by the same. *In re Ford Motor Co. Bronco II Prod. Liab. Litig.*, 982 F. Supp. 388, 395 (E.D. La. 1997).

Here, *contra non valentem* does not apply. Natal and Martinez had actual knowledge of alleged defective Chinese drywall in their Properties for more than one year prior to filing an action. Next, Macksey had constructive knowledge when she acquired "sufficient information, which, if pursued, would have lead to the true condition of things" more than one year before filing any action. In opposition, Plaintiffs provide only argument and have not submitted any competent evidence or testimony to dispute the facts set forth in the motions for summary judgment or to establish *contra non valentem* is appropriate. Therefore, for these reasons, the Macksey, Natal, and Martinez claims are prescribed.

**C.     Macksey and Natal Claims are Barred by the Subsequent Purchaser Doctrine**

The Macksey and Natal claims are also barred by the subsequent purchaser doctrine. It is undisputed by Plaintiffs that under Louisiana law, an owner of property has no right or actual interest in recovering from a third party for damage which was inflicted on the property before his purchase, in the absence of an express assignment or subrogation of the rights belonging to the owner of the property when the damage was inflicted. *See Eagle Pipe & Supply, Inc. v. Amerada Hess Corp.*, 79 So.3d 246, 256-75 (La. 2011); *see also Guilbeau v. Hess Corp.*, 854 F.3d 310, 312–13 (5th Cir. 2017). Indeed, while the injury to property must be understood as damage to the real rights in the property and provides to the owner of the real right a personal right to sue the tortfeasor for damages, the *personal* right to sue, unlike a real right, does not transfer to a subsequent purchaser "[i]n the absence of an assignment or subrogation." *Id*. at 262, 279. In examining *Eagle Pipe* and its progeny, the Fifth Circuit has affirmed that the right to sue is a personal right and must be expressly assigned and cannot be "implicitly conveyed." *Broussard v. Dow Chem. Co.*, 550 F. App'x 241, 244–45 (5th Cir. 2013). Therefore, in the absence of an express assignment to the personal right to sue a defendant for damages that predate the purchase, a subsequent purchaser cannot receive the right to sue a defendant for damages stemming from its conduct related to the property.

As to Macksey, Plaintiffs' sole argument is the misunderstood notion that Macksey was expressly subrogated to "all rights possessed at the time."[9] Indeed, the Act of Sale provided only assigns warranty of title rights against previous owners.[10] It is undisputed that Macksey did not receive an express assignment of right to sue defendants for damages stemming from its conduct

---

[9] R. Doc. 22570.

[10] R. Doc. 22371-3. Act of sale assigns and subrogates "all rights and actions *of warranty* against all preceding owners and vendors."

related to the property. Therefore, absent the express assignment, Macksey's claims are barred by the subsequent purchaser doctrine.

The same is true for Natal. The identity of the previous owner is irrelevant. It is undisputed that the drywall was installed and the damage to the Property was sustained while the previous owner owned the Property. While Plaintiff misrepresents the scope of the Act of Sale, Natal was also assigned only rights and actions for warranty of title against previous owners.[11] Therefore, it is undisputed that Natal did not receive an express assignment of the personal right to sue for damages, and absent the express assignment, Natal's claims are barred by the subsequent purchaser doctrine.

**D.    Macksey Waived Redhibition Claims and/or Purchased with Knowledge of CDW or Should Have Known of CDW Prior to Purchasing Property.**

Macksey has not offered any evidence to dispute that she expressly, knowingly and voluntarily waived redhibition claims in the Act of Sale with the previous owner of the Property. It is well settled that a buyer may agree to exclude the warranty against redhibitory defects if the terms are clear and unambiguous and brought to the attention of the buyer. La. C.C. art. 2548. It was undisputed that the language contained in the Act of Sale signed by Macksey was sufficient to waive redhibition. Prior to Macksey agreeing to waive redhibition, she acquired knowledge of problems with the smell of the property, was given indications on the disclosure statement, and was aware of the issues surrounding Chinese drywall, and rather than investigating further, went forward without a Chinese drywall inspection and purchased the Property "As-Is" and executed

---

[11] R. Doc. 22373-3 The Act of sale assigns only "rights and action *of warranty*…against all preceding owners and vendors."

the waiver of redhibition knowingly and voluntarily.[12] For these reasons alone, Macksey's redhibition/warranty of fitness claims are waived and must be dismissed.

Furthermore, Macksey either knew of Chinese Drywall in the Property or should have known of its presence thereby barring any claims, including redhibition. A seller "owes no warranty for defects in the thing that were known to the buyer at the time of the sale, or for defects that should have been discovered by a reasonably prudent buyer of such things." La. Civ. Code art. 2521 (2019). To determine whether a defect is apparent, courts consider whether a reasonably prudent buyer, acting under similar circumstances, would discover it through an inspection of the thing sold. *Stuck v. Long,* 40,034 (La. App. 2d Cir.8/17/05), 909 So.2d 686, *writ denied,* 05–2367 (La. 3/17/06), 925 So.2d 546, *citing Amend v. McCabe,* 95–0316 (La. 12/1/95), 664 So.2d 1183. Whether an inspection is reasonable depends on the facts of each case and includes such factors as the knowledge and expertise of the buyer, the opportunity for inspection and the assurances made by the seller. *Morrison v. Allstar Dodge Inc.,* 00–0398 (La. App. 1st Cir. 5/11/01), 792 So.2d 9, *writ denied,* 01–2129 (La.11/2/01), 800 So.2d 878. If there is notice of the defect and it could have been discovered, a plaintiff has a duty to make a further investigation. A failure to do so waives the right to sue in *quanti minoris. Dage v. Obed,* 40,414 (La. App. 2d Cir.12/14/05), 917 So.2d 713.

Prior to purchasing the Property, Macksey was aware the Property was renovated after Hurricane Katrina and that the owner was using the Property as a rental because their property was being renovated for defective Chinese drywall, which Macksey was aware of from the news. Both times Macksey viewed the Property, she detected a strange odor and noticed significant air

---

[12] Furthermore, this Court has cautioned that when a property owner purchases property in areas known to have the possibility of Chinese drywall they are assuming a risk without conducting a Chinese drywall inspection. Rec. Doc. 20934

fresheners. In the disclosures she received before the sale, the Contaminated Drywall section had indications of problematic drywall. However, Macksey did not conduct a Chinese Drywall inspection and went forward with the sale. This Court has cautioned that when property owners purchase property in areas known to have the possibility of defective Chinese drywall they are assuming a risk without conducting a Chinese drywall inspection.[13] Based on the undisputed evidence, it is clear that Macksey knew or should have known about the presence of Chinese drywall prior to purchasing the Property.

E.      **Plaintiff's Arguments Concerning a Duty to Warn Fail**

In an effort to circumvent discovery and evidentiary obligations and the limitations period discussed above, Plaintiff argues that the Knauf Defendants should be "equitably estopped" from raising statute of limitations and documentation issues because the Knauf Defendants allegedly failed to warn Plaintiff of defective drywall after a post-sale duty to warn arose. Not only is the Fifth Amended Complaint devoid of any such allegation, but Plaintiff has not shown and cannot now show that any such duty arose as to him specifically or that the Knauf Defendants breached any such duty. Furthermore, even if construed as a failure to warn at the time of sale, Plaintiffs have not provided any evidence of knowledge or notice of alleged defects in the alleged defective drywall at the time KPT sold and delivered the drywall. Instead, Plaintiffs attach a single email alleging notice after customer complaints were received.

Preliminarily, as to Plaintiffs' veiled post-sale duty to warn, the Fifth Amended Class Action Complaint is completely silent on any alleged breach by the Knauf Defendants of a post-sale duty to warn. (*See generally* Doc. 21334). Even more, in arguing that the defects in the drywall were "latent," Plaintiff directly contradicts the oft-repeated allegation in the Fifth Amended Class

---

[13] R. Doc. 20934. The language from the New Claims Settlement Agreement is the same or substantially similar to La. Civ. Code art. 2521.

Action Complaint that the drywall emits "noxious gases." (*See, e.g.*, *id.*, ¶¶ 23, 25, 27, 31). Plaintiff cannot use his Opposition brief to raise new claims; thus, his "post-sale duty to warn" arguments should be rejected. *See, e.g., DeKort v. Integrated Coast Guard Sys.*, 475 F. App'x 521, 522 (5th Cir. 2012) ("We also conclude that the district court did not err in denying DeKort's motion for partial summary judgment because he attempted to raise a new claim, not asserted in his fifth amended complaint."); *see also Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1314 (11th Cir. 2004) ("[T]he Supreme Court has mandated a liberal pleading standard for civil complaints under Federal Rule of Civil Procedure 8(a). This standard however does not afford plaintiffs with an opportunity to raise new claims at the summary judgment stage.").

Even if the Court were to consider Plaintiff's post-sale "duty-to-warn" argument, Plaintiff's assertions fail on the merits because no Louisiana court has recognized equitable estoppel based on a failure to provide a post-sale warning. Indeed, while the LPLA allows for a claim for relief for failure to warn post-sale, as set forth above, Plaintiffs failed to plead a post-sale failure to warn claim. Here, Plaintiffs were on notice of defective Chinese drywall, were subject to pretrial orders, and/or are required to meet their burden of proof under Louisiana law. In each case, Plaintiffs have failed to establish a right to relief under Louisiana law and their claims are barred notwithstanding Plaintiffs' inapplicable, non-existent equitable estoppel arguments.

Even if a post-sale duty/equitable estoppel was applicable, this Court is very familiar with the complex distribution network that was involved with the distribution of Chinese Drywall throughout the United States. (*See also* Doc. 22463 (conceding in a brief by one of the plaintiffs that "Chinese drywall entered the United States market, changing hands in the chain of commerce, and ultimately finding its way into thousands of homes and buildings in the United States")). The Knauf Defendants in concert with Banner, INEX, the builder/installer defendants and the PSC

through various settlement notice programs, made a significant effort to identify and notify the individuals who purchased Chinese Drywall; as to those persons whom the Knauf Defendants were not able to contact regarding Chinese Drywall, Plaintiff has not shown any method by which the Knauf Defendants could have identified and warned Plaintiff. Absent evidence that "those to whom a warning might be provided can be identified," *see id.*, no duty to warn arose as to Plaintiff, and the post-sale duty-to-warn claims fail, *see, e.g.*, *Greater N. Ins. Co. v. Honeywell Int'l, Inc.*, 911 N.W.2d 510, 522 (Minn. 2018) (adopting the approach from the Restatement (Third) of Torts and explaining that no duty to warn arose where the defendant was the first company in a lengthy distribution chain). Moreover, even if a duty existed, the Knauf Defendants would have satisfied their obligation to warn, and Plaintiff could not demonstrate a breach. As the Court knows (and approved), the Knauf Defendants, along with co-defendants in the distribution chain and the PSC, engaged in a substantial notice campaign in which many ultimate purchasers of Chinese Drywall were located and notified. (*See, e.g.*, Doc. 12138 at 24 (approving of the notice proposal included in the Knauf settlement)). Plaintiff has presented no evidence to show that these notice efforts were unreasonable, and thus these claims should be dismissed. *See, e.g.*, *Robinson v. Brandtjen & Kluge, Inc.*, 500 F.3d 691, 698 (8th Cir. 2007) ("In this case, moreover, there is undisputed evidence that B & K did undertake a post-sale warning campaign…. Whatever the scope of the post-sale duty to warn, it does not extend to warning each individual employee of a company that owns a press some sixty-one years after the sale.")

Plaintiffs' misguided arguments are simply an attempt to assert excuses to overcome liberative prescription, lack of evidence, and the utter failure to meet their burden of proof by asserting that the notice program in the Knauf Class Settlement Agreement was inadequate.[14] The

---

[14] R. Doc. 22573 at 22-23.

Court approved the Knauf Class Settlement Agreement, the notice program, and the other class settlements and notice programs on February 7, 2013. The final approval order is now a final judgment and Plaintiffs' arguments, though completely inaccurate, unsupported, and non-existent in pleading and in law, amount to nothing more than an impermissible collateral attack on the Knauf Class Settlement and the notice program approved by this Court.

F.  *American Pipe*/Equitable Tolling Does Not Apply

Plaintiffs' claims are not saved by *American Pipe*/equitable tolling. First, for the first time, Plaintiffs assert tolling pursuant to the *Bennett* Complaint and this Court's recent denial of class certification.[15] This Court has already recognized that courts have uniformly held that *American Pipe* operates only with respect to the first class action filed for a specific controversy.[16] This limitation is known as the prohibition against "stacking" or "piggybacking" class actions for purposes of tolling. *See, e.g., Basch v. Ground Round, Inc.*, 139 F.3d 6, 11 (1st Cir. 1998) ("Plaintiffs may not stack one class action on top of another and continue to toll the statute of limitations indefinitely."); *Griffin v. Singletary*, 17 F.3d 356, 359 (11th Cir. 1994) (same); *Salazar-Calderon v. Presido Valley Farmers Ass'n*, 765 F.2d 1334, 1350 (5th Cir. 1985) ("Plaintiffs have no authority for their contention that putative class members may piggyback one class action onto another and thus toll the statute of limitations indefinitely, nor have we found any."). As Plaintiffs and the Court have previously recognized, several earlier class actions were filed and resolved before *Bennett* for the same controversy.

Second, even if tolling was possible, this Court has already determined that *American Pipe* does not automatically apply in diversity cases:

---

[15] As set forth above, Macksey, Martinez, and Natal claims were prescribed on their face before *Bennett* was filed in November 2014 and *contra non valentem* does not apply based on constructive knowledge of Chinese drywall.
[16] R. Doc. 22124 at p. 19.

> The limitations periods of *American Pipe* and *Crown, Cork* were derived from federal statutes. Here, we are dealing with Hawaii's limitation statutes. Because none of them provide for tolling in a situation such as exists here, it is doubtful that either *American Pipe* or *Crown*, *Cork* can be treated as applicable precedent.

*Orleans Parish Sch. Bd. v. U.S. Gypsum Co.*, 892 F. Supp. 794, 805 (E.D. La. 1995). Here, the Louisiana Supreme Court has concluded that Louisiana does not recognize cross-jurisdictional tolling. *See Quinn v. La. Citizens Prop. Ins. Corp.*, 118 So. 3d 1011, 1022–23 (La. 2012). Indeed, this Court has previously determined that Louisiana does not adopt cross-jurisdictional tolling. (R. Doc. 22124) (citing *Boone v. Citigroup, Inc.*, 416 F.3d 382, 393 (5th Cir. 2005).[17]

Third, *American Pipe* tolling does not apply for subsequent class actions like the *Bennett* action. The Supreme Court confirmed in *Resh* that *American Pipe* does not toll class actions like the *Bennett* class action, and therefore equitable tolling does not apply to Plaintiff's claims. Justice Ginsburg, writing for the Court in *Resh*, plainly held that "*American Pipe* does not permit a plaintiff who waits out the statute of limitations to piggyback on an earlier, timely filed class action."[18] The Court explained that the *American Pipe* line of cases focused on "putative class members who wish to sue individually after a class-certification denial," but did not "so much as hint[] that tolling extends to otherwise time-barred class claims."[19]

This was not a case where a putative class member is seeking to sue individually after a class-certification denial of the first class action filed for a specific controversy. Rather, Plaintiff

---

[17] Plaintiff also submits an argument regarding CAFA. CAFA is jurisdictional and Plaintiff cites no case law that cross-jurisdictional tolling is permitted across all states in light of CAFA. Indeed, in this MDL, and post-CAFA, this Court has previously provided analysis on the lack of cross-jurisdictional tolling. This Court concluded that Texas, Louisiana, Mississippi, and Florida do not recognize cross-jurisdictional tolling. R. Doc. 22124.

[18] *China Agritech, Inc. v. Resh*, 138 S. Ct. 1800, 1806 (2018).

[19] *Id.* The Court concluded that it would be inefficient to allow "maintenance of untimely successive class actions"; instead, "any additional class filings should be made early on, soon after the commencement of the first action seeking class certification" because "efficiency favors early assertion of competing class representative claims. *Id.* at 1811. Indeed, any assertion that the class claims were tolled would lead to inefficiency and a lack of repose because it "would allow the statute of limitations to be extended time and again; as each class is denied certification, a new named plaintiff could file a class complaint that resuscitates the litigation." *Id.* at 1808. The Court noted that if accepted, "the time for filing successive class suits, if tolling were allowed, could be limitless." *Id.* at 1809.

is arguing that it should be allowed to piggyback on the earlier class actions and/or the Knauf Settlement Class up until the February 7, 2013 final approval date. However, Plaintiff was not a member of the Knauf Settlement Class. The Knauf Settlement Class was defined as "[A]ll persons or entities who as of December 9, 2011 filed a lawsuit in the Litigation as a named plaintiff (i.e., not an absent class member)…." By definition, plaintiff is excluded from this class and cannot benefit from any tolling. In this regard, Plaintiff's situation is completely different than the issue previously ruled on by this Court dealing with the Taishan entities. Rec. Doc. 22124. In this Court's March 6, 2019 ruling, it limited tolling to only *Brooke* plaintiffs who were members of the previously filed and certified *Amorin* class. Rec. Doc. 22124, p. 22. No such situation exists here. As such, *American Pipe*/equitable tolling does not apply, and Plaintiff's claims are barred by the Statute of Limitations.[20]

**G.   Summary Judgment is Appropriate Because Plaintiffs Have Not Provided Any Evidence to Dispute the Uncontested Facts Set Forth by the Knauf Defendants**

As the moving party and the party who does not bear the burden of proof at trial on Plaintiff's damage claims, the Knauf Defendants had the burden only to "point out the absence of evidence supporting the essential elements of the opposing party's case. *In re Petition of Settoon Towing LLC*, 722 F. Supp. 2d 710, 713 (E.D. La. 2010). The Knauf Defendants more than met this burden in their motion by pointing out that Plaintiff never provided evidence in support of their claims for damages. Therefore, the burden shifted to Plaintiff to "specifically identify evidence indicating a genuine issue for trial" on those claims. *Ratliff v. Advisors Asset Mgmt., Inc.,* 660 F. App'x 290, 291 (5th Cir. 2016).

---

[20] Again, Plaintiff's reliance on Bennett as the tolling action is unfounded because it is a later subsequent, class action, and courts have uniformly held that *American Pipe* operates only with respect to the first class action filed for a specific controversy. *Salazar-Calderon v. Presido Valley Farmers Ass'n*, 765 F.2d 1334, 1350 (5th Cir. 1985) ("Plaintiffs have no authority for their contention that putative class members may piggyback one class action onto another and thus toll the statute of limitations indefinitely, nor have we found any.").

To meet this burden, a plaintiff is required "to come forward with competent evidence, such as affidavits or depositions, to buttress his claims." *Alderman v. Great Atl. & Pac. Tea Co.*, 332 F. Supp. 2d 932, 936 (E.D. La. 2004) "[U]nsubstantiated assertions are not competent summary judgment evidence," *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998), and "[g]eneralizations that are contradicted by deposition testimony will not prevent summary judgment." *K. S. v. Nw. Indep. Sch. Dist.*, 689 F. App'x 780, 786 (5th Cir. 2017). Further, a party cannot defeat summary judgment by "cit[ing] only *legal* issues that are in dispute, making legal conclusions in their [opposition] rather than identifying material issues of fact." *Shimon v. Sewerage & Water Bd. of New Orleans,* No. CIV.A. 05-1392, 2010 WL 2696970, at *5 (E.D. La. July 1, 2010) (emphasis in original).

First, Junius has provided no evidence to support a diminution in value claim because the undisputed evidence establishes that after the discovery of Chinese drywall the Property appraised for more ($595,000) than the alleged lost contract for sale ($550,000). Junius has not and cannot support a loss of use claim when he alleges he was completely unaware of Chinese drywall during the time he lived in the Property and moved out of the Property prior to becoming aware of the alleged presence of Chinese drywall. It is undisputed that moving costs were unrelated to Chinese drywall, were incurred before Junius became aware of the alleged presence of Chinese drywall, and were solely due to his desire to move to his new residence. Junius has failed to provide any evidence of personal property damaged by Chinese drywall and is barred from recovering for remediation costs that (1) are lacking in competent evidence to support (2) incurred by the subsequent owner, or (3) were due to upgrades unrelated to Chinese drywall.

Second, Natal has failed to provide any evidence that the Property currently has any KPT drywall or any damage associated with KPT drywall. Further, Natal failed to provide any evidence

for their loss of use claim and failed to submit any claims for personal property. Furthermore, Natal failed to dispute or provide invoices and proof of payment but for $3,200.00 worth of remediation costs.

Third, like Junius and Natal, Martinez cannot sustain a loss of use claim during the time they lived in the Property between 2006 and 2009 because it was undisputed that they alleged they were unaware of Chinese drywall in the Property, lived comfortably, and provided no evidence to support any loss of use or enjoyment in the Property due to the alleged presence of Chinese drywall.

Fourth, Macksey failed to provide any evidence of alleged personal property that was damaged and then discarded by Macksey. Furthermore, utility and other costs associated with another property are not recoverable because the evidence was undisputed that the second property was used for her personal use both before and after the alleged discovery of Chinese drywall.

### H.   Conclusion

For these reasons, and for the reasons set forth in the Motion for Summary Judgment, Plaintiffs' claims must be dismissed.

Respectfully submitted,

**FISHMAN HAYGOOD, LLP**

/s/ *Kerry J. Miller*
**KERRY J. MILLER (#24562), T.A.**
**PAUL C. THIBODEAUX (#29446)**
**DANIEL J. DYSART (#33812)**
201 St. Charles Avenue, Suite 4600
New Orleans, LA 70170
Telephone:    504.556.5549
Facsimile:     504.310.0275
Email:          kmiller@fishmanhaygood.com
**Counsel for Defendants,**
**Knauf Gips KG and**
**Knauf Plasterboard (Tianjin) Co., Ltd.**

## **CERTIFICATE OF SERVICE**

      I hereby certify that the above and foregoing pleading has been served upon Russ Herman, Plaintiffs' Liaison Counsel, by email, to all parties by electronically uploading the same to LexisNexis File & Serve in accordance with Pre-Trial Order No. 6, individually to pro se claimants via U.S. Mail, and that the foregoing was filed with the Clerk of Court of the United States Court for the Eastern District of Louisiana, on this 14th day of February, 2020.

                                              /s/ *Kerry J. Miller*
                                              **KERRY J. MILLER**