UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALL<br>PRODUCTS LIABILITY LITIGATION | *<br>*<br>*<br>*<br>*<br>*<br>* | CIVIL ACTION<br><br>MDL NO. 2047<br><br>SECTION L (5) |
| THIS DOCUMENT RELATES TO:<br>ALL CASES | *<br>*<br>* | |

## ORDER & REASONS

Pending before the Court are (1) the Bryson Group's Motion for Allocation of Disputed Attorney Fees, R. Doc. 22400, (2) Collins & Horsley, P.C.'s Motion Requesting the Court to Order the Clerk to Remit Payment of All Fees, R. Doc. 22526, (3) Art Edge, P.C.'s Motion to Compel Arbitration and Stay Proceedings, R. Doc. 22402, and (4) Law Offices of Joseph Buffington, LLP's Motion for Allocation of the Disputed Attorneys' Fee Fund, R. Doc. 22443. The Bryson Group opposes the Motion to Compel Arbitration and Stay Proceedings. R. Doc. 22419. Because the motions all involve a certain sum of money in the registry of the court, they are considered collectively. Having considered the parties' arguments and the applicable law, the Court now rules as follows.

   I.   **Background**

This matter arises from a fee dispute between two groups of law firms involved in *In re Chinese-Manufactured Drywall Products Liability Litigation*, MDL No. 09-2047. The Court presumes a familiarity with the relevant facts and background of the MDL.

In October 2019, the Court was contacted by Brown Greer, PLC, the Claims Administrator for the Knauf Settlement. Brown Greer represented that although the distribution of attorney fees

1

related to the Knauf Settlement was almost complete, there remained a sum of money to which the intended recipients could not agree upon proper distribution. Accordingly, the Court ordered that the sum of $6,866,796.33 be deposited into the registry of the court. R. Doc. 22343. On October 31, 2019, the Court ordered any party with an interest in these funds to file a motion asserting a claim thereto and addressing the proper allocation thereof by December 2, 2019. R. Doc. 22356.

In their respective filings, the parties explain the background of this fee dispute. Apparently, in 2009, the Bryson Group[1] and the Collins Group[2] entered into a Co-Counsel Agreement related to the Chinese drywall litigation. R. Doc. 22402-1 ¶ 2. Under the terms of the Agreement, the Bryson Group agreed to jointly represent the Collins Group's clients in the MDL. R. Doc. 22403 at 5. Specifically, the Bryson Group agreed to (1) "assist in the filing of all cases that the Collins Group seeks to file in the MDL," (2) "assist the Collins Group in joining MDL committees," (3) "consult with the Collins Group on an as requested basis during the pendency of this agreement" and "[u]pon request, at least once per quarter . . . travel to Birmingham to consult with the Collins Group," and (4) "keep [the other party] informed about . . . work projects and additional case acquisition." R. Doc. 22403 at 6. The Agreement also contained a Dispute Resolution clause, requiring the parties, in the event of "a dispute arising from this Agreement," to submit the matter to arbitration. R. Doc. 22403-1 at 7-8. A separate, verbal referral agreement regarding Chinese drywall cases was reached between William Brian Collins (a member of the Collins Group) and the Law Offices of Joseph Buffington. The Bryson Group, the Collins Group, and the Law Offices of Joseph Buffington all have competing claims to at least a portion of the $6,866,796.33 in the registry of the Court.

---

[1] The Bryson Group consists of Whitfield Bryson & Mason LLP, Rhine Law Firm P.C., Pendley Baudin & Coffin, and Luckey & Mullins. R. Doc. 22400-1 at 1.
[2] The Collins Group consists of the Collins Law Office (f/k/a Collins & Horsley f/k/a Collins & Downey), Art Edge, PC, and Gentle Turner & Sexton. R. Doc. 22403 ¶ 1.

## II. PENDING MOTION

### A. The Bryson Group's Motion for Allocation of the Disputed Attorneys' Fee Fund

The Bryson Group filed a Motion for Allocation of the Disputed Attorneys' Fee Fund. R. Doc. 22400. In its motion, the Bryson Group explains that under the Co-Counsel Agreement, the Bryson Group agreed to jointly represent certain plaintiffs who retained the Collins Group in exchange for 25% of any attorney fees awarded to those clients. R. Doc. 22400 ¶ 2. The Bryson and Collins Groups jointly represented 174 plaintiffs in the *Chinese Drywall* MDL, and Brown Greer calculated the total recovery for these plaintiffs to be $28,000,240.12. R. Doc. 22400-1 ¶ 6. The Bryson Group explains that the attorney fee related to the recovery for these 174 plaintiffs is $4,055,762.14, and that the Bryson Group is accordingly entitled to 25% of that sum, or $1,013,940.54. R. Doc. 22400-1 ¶ 6. The Bryson Group seeks immediate remittance of this amount.

Art Edge, PC opposes payment of this sum to the Bryson Group. Art Edge, a member of the Collins Group, alleges that the Bryson Group has not fulfilled its obligations under the Co-Counsel Agreement and accordingly is not entitled to recover the 25% fee specified in the Agreement. In particular, Art Edge argues Bryson failed "to secure any common benefit time for The Collins Group, did not travel to Alabama after the initial meeting for any meetings with Edge or Collins, nor did he inform The Collins Group of any pending settlements or negotiations." R. Doc. 22403 at 7. Lastly, Art Edge explains that the majority of the Bryon Group's work was performed by paralegals. R. Doc. 22403 at 7. Accordingly, Art Edge contends "Bryson should not be compensated 25% of the fees filed through his office simply because an agreement was signed that he did not fulfill." R. Doc. 22403 at 7.

### B. Collins & Horsley's Motion Requesting the Court to Order the Clerk to Remit Payment of All Fees to Collins & Horsley, P.C.

William Brian Collins, on behalf of Collins & Horsley, filed a motion requesting the payment of the entire sum held in the registry of the court. R. Doc. 22526. Collins explains that although it was awarded approximately seven million dollars for the work it performed in this MDL, "BrownGreer withheld those fees . . . despite the absence of any formal or articulated assertion that those fees were not due to be paid to Collins & Horsley, P.C." R. Doc. 22526 ¶ 10. The fees allegedly withheld from Collins & Horsley are precisely the funds at issue in this entire dispute. Collins & Horsley argues that the entire $6,866,796.32 fee should be remitted so that the firm can thereafter honor its obligations under various private referral agreements, presumably including the Co-Counsel Agreement at issue here. R. Doc. 22526 ¶ 14. It contends "[t]here is no matter before the Court that should be considered or allowed to interfere with Collins & Horsley, P.C.'s right to immediate payment of fees it earned, in the same manner as all other firms that represented clients in this litigation." R. Doc. 22526 ¶ 17.

Art Edge opposes payment of this sum to Collins & Horsley. Art Edge explains that two members of the Collins Group, namely Art Edge and the Collins Law Office, are involved in a secondary fee dispute that "involves more than just Chinese drywall fees and includes fees from other cases over the course of the fee sharing agreement." R. Doc. 22403 at 7. Because the Agreement contained an arbitration provision, Art Edge argues the dispute should be resolved through arbitration rather than by this Court.

The Bryson Group also opposes payment of this entire sum to Collins & Horsley. R. Doc. 22420. The Bryson Group argues that its portion of the attorney fees should be deposited directly into the Whitfield Bryson & Mason Trust Account, for fear that the contentious dispute between

Art Edge and Collins will result in "the Bryson Group's funds somehow [being] held hostage by motion practice and lawsuits between these feuding lawyers." R. Doc. 22420 at 2.

**C. Law Offices of Joseph Buffington, LLP's Motion for Allocation of Disputed Attorneys' Fee Fund**

Joseph Buffington argues he has a fee interest in thirty-eight cases Chinese drywall cases. Buffington alleges he acted as co-counsel with Brian Collins of Collins & Downey (eventually Collins & Horsley) in nineteen of those thirty-eight cases, and co-counsel with the Collins & Downey and Whitfield, Bryson, & Mason ("Whitfield") in another nineteen. R. Doc. 22443-1 at 1.

With respect to the nineteen cases involving Buffington, Collins & Downey, and Whitfield, Buffington explains the total fee dispute involves $527,455.39. R. Doc. 22443-1 at 2. Buffington contends that he did more than merely refer these clients to Collins & Downey, and that he signed the clients, personally inspected their properties, "handled all his client's issues" and worked "not only on these 19 cases, but also assisting on almost all the CDW cases being handled by the Collins firm." R. Doc. 22443-1 at 2. Buffington characterizes their work as a "team effort." R. Doc. 22443-1 at 4.

Buffington explains that Collins & Downey had a fee agreement with Whitfield, to which Buffington was not a party.[3] Under the terms of that agreement, Whitfield performed legal work in exchange for 25% of any attorney fees awarded. Buffington does not dispute Whitfield's entitlement to this sum but explains that "[i]f arbitration reduces the fees, [he] would expect a pro rata reduction in these 19 cases." R. Doc. 22443-1 at 3. Accordingly, he understands that Whitfield is entitled to $131,863.85. R. Doc. 22443-1 at 3. Buffington further asserts that the Mr. Collins

---

[3] The Court understands this agreement to be the written Co-Counsel Agreement between the Bryson Group and the Collins Group.

recently informed him that he intended to "seek fees in an amount in excess of those being paid to Whitfield . . . based on administrative related work performed by" the firm's staff. R. Doc. 22443-1 at 3. Buffington does not explain how his agreement with Collins & Downey provided for fee division but notes that it would be unfair to award Collins more than a "reasonable fee" because Buffington performed significant work for the Collins firm not only on these nineteen cases but for other Collins' clients. R. Doc. 22443-1 at 4. Buffington does not explain what sum the Collins firm seeks but based on Buffington's request for $316,473.23 for these nineteen cases and his acknowledgement that Whitfield is due $131,863.85, it appears as though Buffington suggests the Collins firm is due $79,118.31. R. Doc. 22443-1 at 4.

With respect to the nineteen cases involving only Buffington and the Collins firm, Buffington asserts that the parties agreed that he was to receive a minimal fee. R. Doc. 22443-1 at 4. Buffington requests 5% of the $555,930.75 awarded, or $27,796.53. However, Buffington agrees to withdraw this request if Collins opposes it, recognizing that "initially, [he] was not going to receive any fees from these cases." R. Doc. 22443-1 at 4.

Art Edge explains that these cases "were submitted through Bryson's office," and that accordingly, the fees from these cases "would be subject to any decrease based upon a ruling as to what Bryson is entitled to." R. Doc. 22403 at 9.

### D. Art Edge's Motion to Compel Arbitration and Stay Proceedings

In response to the Bryson Group's motion for distribution of attorney fees, Art Edge filed a Motion to Compel Arbitration and Stay Proceedings. R. Doc. 22402. Art Edge contends this Court lacks jurisdiction over the fee dispute because the parties agreed to resolve any disputes arising from the Co-Counsel Agreement through arbitration. R. Doc. 22402-1.

The Bryson Group opposes the motion. R. Doc. 22419. The Bryson Group contends this Court has jurisdiction over the fee dispute because the disputed funds are in the registry of the Court and because courts have ancillary jurisdiction over controversies related to property or assets in the court's possession. R. Doc. 22419 at 1-2. Additionally, the Bryson Group argues the parties waived their arbitration agreement by participating in the Knauf Settlement Agreement, which specifically described the Court's responsibility for determining and allocating attorneys' fees. R. Doc. 22419 at 5. The Bryon Group also argues that arbitration inherently conflicts with this Court's statutory obligation to determine attorney fees under Rule 23(h). R. Doc. 22419 at 7. Lastly, the Bryson Group urges this Court to uphold the Co-Counsel Agreement's 25% fee provision because the Agreement was negotiated at arm's length and because the Bryson Group complied with its contractual obligations. R. Doc. 22419 at 7. The Bryson Group further explains that courts in Louisiana and Alabama typically uphold joint venture fee provisions without inquiring as to the work performed by the parties. R. Doc. 22419 at 7.

**III. Law & Analysis**

Because Art Edge's Motion to Compel arbitration invokes this Court's jurisdiction, the Court will address it first.

**A. Motion to Compel Arbitration**

Section 2 of the Federal Arbitration Act provides, in relevant part, "[a] written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable." 9 U.S.C. § 2. There is a strong presumption in favor of arbitration for arbitrable disputes. *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983); *Bhatia v. Johnson*, 818 F.2d 418, 421 (5th Cir. 1987) (citing *Mitsubishi Motors Corp. v. Soler Chrysler–*

7

*Plymouth, Inc.*, 473 U.S. 614 (1985)). Accordingly, "all doubts concerning the arbitrability of claims should be resolved in favor of arbitration." *Primerica Life Ins. Co. v. Brown*, 304 F.3d 469, 471 (5th Cir. 2002).

When considering a motion to compel arbitration under the FAA, the court conducts a two-part inquiry. *JP Morgan Chase & Co. v. Conegie ex rel. Lee*, 492 F.3d 596, 598 (5th Cir. 2007). First, the court must determine whether a valid agreement to arbitrate exists between the parties. *Id.* This determination requires the court to consider "whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement." *Id.* (quoting *Will–Drill Res., Inc. v. Samson Res. Co.*, 352 F.3d 211, 214 (5th Cir. 2003)). If these questions are answered affirmatively, the court must ultimately consider "whether 'any federal statute or policy renders the claims nonarbitrable.'" *Jones v. Halliburton Co.*, 583 F.3d 228, 234 (5th Cir. 2009) (quoting *JP Morgan Chase*, 492 F.3d at 598).

The Court must first determine whether the Co-counsel Agreement constitutes a valid agreement to arbitrate. The Agreement's "Dispute Resolution" provisions specifically states: "In the event of a dispute arising from this agreement, the Law Firms agree to submit the matter to confidential and binding arbitration utilizing rules promulgated by the American Arbitration Association." R. Doc. 22402-1 ¶ 2. Based on the plain language of the agreement, the Court concludes, and the parties do not appear to dispute, that they agreed to arbitrate.

Next, the Court must determine whether the instant falls within the scope of the dispute resolution provision. As quoted above, the Co-Counsel Agreement entered into by the Collins Group and the Bryson Group governs the terms of their relationship with respect to Chinese drywall cases. It specifically provides for the allocation and apportionment of attorney fees among the parties to the Agreement, the very issue at play in the instant dispute. Accordingly, the

Agreement's dispute resolution clause subjecting any "dispute arising from this agreement" to arbitration clearly encompasses the instant matter. The parties' intention to arbitrate disputes such as this one could not be more clear. Therefore, the Court finds that the parties intended the instant fee dispute to be subject to arbitration unless the Bryson Group can demonstrate that some legal constraint bars arbitration. The Court notes that this is a high bar. *See Carter v. Countrywide Credit Industries*, 362 F.3d 294, 297 (5th Cir. 2004).

Lastly, the Court must consider whether any federal statute or policy renders the claim non-arbitrable. The Bryson Group proposes three distinct reasons that the Court should decline to compel arbitration. None of them are persuasive. First, the Bryson Group argues that arbitration should be denied because the Court retains ancillary jurisdiction over the controversy. The Court recognizes that it may have ancillary jurisdiction over the disputed funds placed in the registry of the Court but notes that having ancillary jurisdiction does not somehow require the Court to ignore the "strong federal policy in favor of arbitration." *Pennzoil Expl. & Prod. Co. v. Ramco Energy Ltd.*, 139 F.3d 1061, 1068 (5th Cir. 1998).

Second, the Bryson Group argues that by representing clients who opted-in to the Knauf Settlement, the attorneys "agreed to be bound by the provisions in the various settlement agreements mandating that the Court finally resolve any claim for attorney's fees," thereby waiving their agreement to arbitrate the instant dispute. R. Doc. 22419 at 5–6. In relevant part, the Knauf Settlement provided, "All attorney's fees and costs as well as the allocation of attorneys' fees and costs . . . are subject to the approval of the Court . . . [and this] determination shall be final and not subject to appeal." R. Doc. 16407-3 at 64. Considering the strong policy in favor of arbitration, the Court does not interpret its reservation of jurisdiction over attorney fees to preclude the arbitration of side-deals executed between law firms. Further, the Court has fulfilled its

obligation in the instant case, as it has allocated and awarded a specific sum to the attorneys involved in the instant dispute. How the affected parties choose to divide that sum amongst themselves is not the Court's concern.

Third, the Bryson Group argues that arbitration inherently conflicts with this Court's duty to allocate attorney fees in class actions under Rule 23. Although the FAA mandates that arbitration agreements be enforced, "[l]ike any statutory directive, the Arbitration Act's mandate may be overridden by a contrary congressional command." *Shearson/Am. Exp., Inc. v. McMahon*, 482 U.S. 220, 226 (1987). The Bryson Group takes the position that Rule 23 is such a "contrary congressional demand." *Id.* The Court does not agree. "If Congress did intend to limit or prohibit waiver of a judicial forum for a particular claim, such an intent 'will be deducible from [the statute's] text or legislative history,' or from an inherent conflict between arbitration and the statute's underlying purposes." *Id.* at 227 (citation omitted). It appears to the Court as though the purpose of Rule 23's requirement that the court in a class action approve attorney fees is not to protect the attorneys from one another, but to protect the class from an attorney fee award that usurps the class's recovery. *See Piambino v. Bailey*, 610 F.2d 1306, 1327–1328 (5th Cir. 1980) (noting that "[t]he purpose of [Rule 23(e)] is to protect the nonparty members of the class from unjust or unfair settlements affecting their rights" because "[c]onflicts may arise between the attorney and the class, between the named plaintiffs and the absentees, and between various subclasses"); *see also Neurocare Inst. of Cent. Fla., P.A. v. Healthtap, Inc.*, 8 F. Supp. 3d 1362, 1365 (M.D. Fla. 2014) (noting that the purpose of Rule 23 is to "enable small claims that would be impractical to litigate individually to be brought collectively"); *Cohen v. D.C. Nat. Bank*, 59 F.R.D. 84, 90 (D.D.C. 1972) ("The instant case exemplifies the underlying purpose of Rule 23, which is to open a path to the courthouse that would otherwise be close to hundreds of people who

seek redress for statutory violations."). Accordingly, compelling arbitration of the instant dispute is consistent with federal policy and not in conflict with Rule 23.

### B. Law Offices of Joseph Buffington, LLP's Motion for Allocation of Disputed Attorneys' Fee Fund

Although the Court concludes that the dispute between the Collins Group and the Bryson Group is subject to arbitration, the same cannot be said of the dispute between the Collins firm and the Law Offices of Joseph Buffington. The agreement between these two firms was not reduced to writing and there has been no allegation by either party that they intended to arbitrate the dispute. Without privity or another exception not applicable here, the Court cannot compel Mr. Buffington to arbitrate his dispute with the Collins firm. Nevertheless, the Court finds that the outcome of Mr. Buffington's motion inherently depends on the value of attorney fees awarded to the Collins Group by the arbitrator. Accordingly, the Court will deny Mr. Buffington's motion as premature without prejudice to his right to pursue his claim against the Collins firm pending the outcome of the arbitration.

### IV. CONCLUSION

Considering the foregoing,

**IT IS ORDERED** that Art Edge's Motion to Compel Arbitration is **GRANTED**. All issues involving the fee dispute between the Collins Group and the Bryson Group arising from the Co-Counsel Agreement shall proceed to arbitration pursuant to the terms of the Co-Counsel Agreement. The matter is **STAYED** only with respect to the instant dispute between the Bryson Group and the Collins Group. This Court retains jurisdiction for the entry and enforcement of such arbitration award that may be rendered by the arbitration forum.

**IT IS FURTHER ORDERED** that the Bryson Group's Motion for Allocation of the Disputed Attorneys' Fee Fund, R. Doc. 22400, and Collins & Horsley's Motion Requesting the

Court to Order the Clerk to Remit Payment of All Fees to Collins & Horsley, P.C., R. Doc. 22526 are **DENIED**.

      **IT IS FURTHER ORDERED** that the Law Offices of Joseph Buffington, LLP's Motion for Allocation of Disputed Attorneys' Fee Fund, R. Doc. 22433 is **DENIED** as premature without prejudice to his right to pursue his claim against the Collins firm pending the outcome of the arbitration.

      New Orleans, Louisiana this 18th day of February 2020.

                                                                                   _____
                                                                                     Eldon E. Fallon
                                                                    United States District Judge