UNITED STATES DISTRICT COURT FOR THE EASTERN

DISTRICT OF LOUISIANA

IN RE: CHINESE -MANUFACTURED DRYWALL

PRODUCTS LIABILITY LITIGATION

*09 - 2047*

CASE NO: MDL 2047

GUILFORT DIEUVIL

v.                          Plaintiff

KNAUF GIPS KG, et al.

                         Defendants

SECTION: L

JUDGE: ELDON FALLON

MAGISTRATE WILKINSON

## NOTICE ON DEFENDANT, KNAUF'S ACTS OF BAD FAITH AND

## REFUSAL TO ABIDE UNDER COURT ORDER

1. COMES NOW, Plaintiff hereby files this Notice On Defendant, Knauf's Act Of Bad Faith
   And Refusal To Abide With Court Order. The Honorable Court has ultimate right,
   jurisdiction over this case, in which Defendants, Knauf have deliberately acted in bad faith
   without any regards to this Court Order and at the detriment of Plaintiff's rights and interest.
   Defendants, Knauf's conducts constitute of the followings, but not limited to: a) wrongfully
   denied of Plaintiff's claims, b) presented false material declaration before the court, c)
   refused to abide under the Honorable Court Order dated January 20, 2020,  d) unlawfully
   demanded Plaintiff to commit perjury as alternative condition to release fund, e) unlawfully
   demanded Plaintiff to have non - members  or non-parties of this MDL Action to sign
   releases prior of releasing fund, f) wrongfully demanded execution of Assignment Of Claims
   Agreement that conflicted, superseded, nullified and/or overrode the Approved MDL

KNAUF-MDL 2047                                                          Page 1

Case 2:09-md-02047-EEF-MBN   Document 22603-1   Filed 02/20/20   Page 2 of 33

Settlement Agreement (Document 12918-3), and the list of outrageous conduct goes on…, but for the seek of brevity Plaintiff herein states;

2.  On about April 2010 Plaintiff has discovered that his home contained latent defect of toxic Chinese Drywalls. Scope of Work Agreement was signed with the builder to remediate the subject property, and shortly thereafter, in December 2010, the builder Glhomes demanded its employees to stopped all remediations work at the subject property. Multiples emails were sent to Glhomes from Plaintiff demanded Glhomes to remediate the homes, and multiples emails in regards to such requests/ demands were made and dated from December 2010 and continued thereafter.

3.  After a long process of negotiation with the builder, Glhomes with expectations that Plaintiff's home would be remediated, than in mid of 2013 the builder, Glhomes induced Plaintiff, Guilfort Dieuvil to join the MDL Action, under fraudulently inducement, misrepresentations, false material declarations, false promises, deceptive practices. It was revealed in November 2017, thru Special Master Dan Ballhoff that Plaintiff, Guilfort Dieuvil 's claims were denied in the MDL Action, under allegations that the builder Glhomes did not fully comply with PTO-1(B) at the time of removal of the drywalls and conducted interior demolition of the home. Prior Plaintiff joined the MDL action, Glhomes represented to Plaintiff that Glhomes had fully complied with PTO-1(B), and had already collected multi millions of dollars thru the MDL Action without any delay, under full compliance with PTO-1(B) and the same amount of evidence collected at the home.

KNAUF-MDL 2047                                                                 Page 2

4.  At no material times, Plaintiff did not have any prior knowledge about the MDL Action, and
    sole relied on representations made by builder Glhomes that Plaintiff' s home will be fully
    remediated at no cost to Plaintiff, and Plaintiff will be fully paid off and compensated for all
    damages related to the Knauf's defective drywall just by joining the MDL Action, and those
    compensations will fully paid off to Plaintiff, but not limited to: **a)** Alternative Living
    Expenses **b)** Loss of Equity, **c)** Loss of Furnitures, **d)** Property Taxes, **e)** Property Insurance,
    and **f)** Remediation Cost of the Home, g) personal injury, and so on..

5.  The builder Glhomes, and Knauf have collectively shared irrelevant information, but not
    limited to foreclosure action against the home, and other defamations / irrelevant matters.
    Glhomes, and Knauf have expressed and declared their willingness to delay and hinder all
    remediation of Plaintiff's home, and wait for the home to go into foreclosure sale, and
    Glhomes, and Knauf have claimed, after any foreclosure sale, than Defendants would not
    have any further liability toward Plaintiff.  Defendants have acted in bad faith and purposely
    delayed remediation of the Plaintiff's home without regards to Plaintiff's rights and interests.

6.  Defendants have recently reiterated their positions and concerns about new potential and
    perspective buyers of the home  and the mortgagee, in light of foreclosure sale while ignoring
    Plaintiff's rights as the present owner of the subject property; despite, currently there is not
    even any foreclosure action against the subject property.

7.  In November 2017, Special Master issued his report and decree denying Plaintiff's claims,
    and in submission paper from Defendants to Special Master, Don Ballhoff, Defendants have
    incorporated a list of derogatory informations, including spurious and defamation allegations

against Plaintiff, such defamations and unsolicited information were not relevant to this case whatsoever, but they were given in bad faith and toward forming a negative mindset against Plaintiff. At all material times, Plaintiff has been conducted himself and his company in full and absolute compliance with all applicable laws, and behave themselves within their legal rights and boundaries.

8.  An objection to Special Master Report was timely filed in December 2017. After multiples misrepresentations, false material declaration, and perjury allegations by opposing parties, and after Plaintiff has waited and virtuously fought for about ten (10) years for Plaintiff's home to get remediated and compensations for damages related to defective Knauf's Chinese Drywalls, than the court denied all other claims, under allegations that claims and/or appeals were not submitted, and such assumption is still disputable until today's date.

9.  Due to Defendants' act of bad faith, perjuries allegations, and false declaration statements made by Defendants, including false declaration statements by Jacob Woody, as authorized agent administrator of this MDL Action that may well constitute as fraud upon the court, and collective effort to deny Plaintiff's claims, it is questionable and clear regardless of submission or not, all Plaintiff's claims would have still been denied. After Plaintiff fought for about ten (10) years to get his home remediated, this court has only partially granted about half of the cost that is required to remediate Plaintiff's home. The estimated cost to remediate the home would be more than $612,000, and such estimate report was requested by liaison's counsel and prepared by well respected, knowledgeable and experience contractor in the MDL Action.

10. Despite the court has issued a final Judgment Orders and Reasons, Defendants have refused to comply under that court order dated January 20, 2020. After numerous emails communications with Defendants to send the fund pursuant to such court's order, Defendants sent multiple documents demanded Plaintiff, and non- member of the MDL Action to execute documents prior to any possibility to release fund. At all material times, the attached court order issued on January 20, 2020 constitutes as final judgment and disposition of this case, which did not demand any further action to be taken by Plaintiff and/or unrelated parties, but except Defendants to make payments.

11. At all material time, Defendants knew that Plaintiff has a mortgage in the subject property and Defendants have demanded Plaintiff, Guilfort Dieuvil, and non members of this MDL action or non parties to commit perjury by signing or  to execute Sworn Affidavit stated there is no mortgage at the subject property. (See Exhibit "A" copy of Sworn Affidavit sent to Plaintiff from Defendants by emails)

12. At all material times, Plaintiff knew that Magdadene Dieuvil owned the subject property prior of any MDL action, and Magdadene Dieuvil never wanted to participate into any MDL action, and has not been a member of the MDL Action, and she is not a successor purchaser, and there is no where in the MDL action that her name has been incorporated as member of this MDL action whatsoever, but Defendants demanded for Magdadene Dieuvil as a non party, without any jurisdiction whatsoever to sign release prior of any possibility to comply with the court order dated January 20, 2020.

13. At all material times, Defendants knew that Magdadene Dieuvil and Frantz Duval are not parties or members of the MDL Action, but Defendants have demanded those individuals to sign release documents and execute New Assignment Agreement with Defendants prior of any possibility to comply with the court order.

14. At all material times, many verbiage, statements, clauses in those documents are conflicted, overrode, superseded, and nullified the Approved MDL Settlement Agreement, which put into question of any possibility of all agreements that may well involve into violations and conflict with existing Federal laws, rules, regulations including, but not limited fundamental rights.

15. At all material times, the evidence has proven that Appeal for Alternative Living Expense, affidavit for living expense and documents were submitted, and request for Special Master, including other forms were also submitted on behalf of Plaintiff.

---

See Emails correspondence among the parties: including new agreement that Defendants wanted to be executed prior of any possibility to comply with the court order.

**CONCLUSION:** For the best interest of justice, reasons stated herein, including Plaintiff's sworn affidavits and prior pleadings, submissions before the court, and for any other reasons as the court may deem just, and proper, Plaintiff respectfully files this notice to outline certain material facts before this Honorable Court.

_____

Guilfort Dieuvil, Plaintiff / Claimant

1870 Spotted Owl Dr SW

Vero Beach FL 32962

Email: guilf5@hotmail.com

Ph 786-344-5497

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that the above and foregoing submission will be served upon all parties by electronically email, and filing with the Clerk of Court of the United States District Court for the Eastern District of Louisiana, which will send a Notice of Electronic Filing, in accordance with the procedures established in MDL 2047, and by mail this 18_day of February, 2020.

_____

Guilfort Dieuvil, Plaintiff / Claimant

1870 Spotted Owl Dr SW

Vero Beach FL 32962

Email: guilf5@hotmail.com

Ph 786-344-5497

Cash-Out Option Release

# PROPERTY OWNER RELEASE
# AND ASSIGNMENT OF CLAIMS

This RELEASE ("Release"), dated this _____ day of _____, 202__ is entered into by Guilfort Dieuvil, Magdadene Dieuvil, and Frantz Duval (hereinafter collectively "Claimant") (Social Security Number(s) _____),  owner of the property located at 8757 Baystone Cove, Boynton Beach, FL 33473 ("Property").

WHEREAS, starting in 2006 or later lawsuits were filed against one or more of Knauf Plasterboard (Tianjin) Co., Ltd. ("KPT"), Knauf Plasterboard (Wuhu) Co., Ltd., Guangdong Knauf New Building Material Products Co., Ltd., Knauf International GmbH, Knauf Insulation GmbH (referred to in MDL 2047 as Knauf Insulation USA), Knauf AMF GmbH & Co. KG, Knauf UK GmbH, Knauf do Brasil Ltda., Gebr. Knauf Verwaltungsgesellschaft KG, PT, Knauf Gypsum Indonesia, or Knauf Gips KG (collectively "Knauf Defendants").

WHEREAS, on October 14, 2010, the Knauf Defendants and the MDL Plaintiffs' Steering Committee (the "PSC") in *In re: Chinese Manufactured Drywall Products Liability Litigation*, MDL No. 2047 (the "MDL") entered into a Settlement Agreement for the Demonstration Remediation of Homes with KPT Drywall (the "Demonstration Remediation Agreement") to create a program (the "Program") to remediate homes that contain all or substantially all KPT drywall board ("KPT Chinese Drywall");

WHEREAS, on December 11, 2012, the Knauf Defendants and the PSC filed the Third Amended Class Settlement Agreement Regarding Claims against the Knauf Defendants in MDL No. 2047 ("Third Amended Class Settlement Agreement"), which, based on the Program created by the Demonstration Remediation Agreement, provides property owners a means for resolving their KPT Chinese Drywall-related claims;

WHEREAS, on December 12, 2012, the MDL Court issued an Order allowing submission of the Third Amended Class Settlement Agreement and making the Court's prior Preliminary Approval Order, issued January 10, 2012, applicable to the Third Amended Class Settlement Agreement;

WHEREAS, on February 7, 2013, the MDL Court issued an Order granting Final Approval to the Third Amended Class Settlement Agreement, which became final on or about March 11, 2013.

WHEREAS, on August 12, 2013, the Knauf Defendants and the PSC entered into the Settlement Agreement Regarding Post-December 9, 2011 Claims Against the Knauf Defendants in MDL No. 2047 ("New Claims Agreement").

WHEREAS, on October 3, 2013, the Knauf Defendants and the PSC filed the Fourth Amended Class Settlement Agreement Regarding Claims Against the Knauf Defendants in MDL No. 2047 ("Fourth Amended Class Settlement Agreement"), which amends certain sections of the Third Amended Class Settlement Agreement (collectively, the "Knauf Class Settlement Agreement").[1]

WHEREAS, on November 1, 2013, the MDL Court issued an Order granting Approval of the Fourth Amended Class Settlement Agreement.

WHEREAS, Claimant registered claims with the Settlement Administrator and became a claimant to the Knauf Class Settlement Agreement by inclusion in the Jimmy Doyle Term Sheet ("Term Sheet").

WHEREAS, as part of the Term Sheet, it was understood Claimant would be included in the Knauf Class Settlement Agreement as a class member and eligible to obtain benefits

---

[1] Capitalized terms not otherwise defined have the same meaning given to them in the Knauf Class Settlement Agreement.

if able to comply with the requirements of the Term Sheet and the Knauf Class Settlement Agreement.

WHEREAS, the Claimant hereby represents that Claimant is authorized under applicable law to represent and bind all other relevant parties, including any and all representatives, agents, successors, assigns, beneficiaries, heirs, or executors of the Claimant, Claimant's estate, or the estate of any of them, who are not signatories to this Release and by signing this Release does so bind;

WHEREAS, Claimant received $37,402.88 in settlement funds from the Global, Banner, and INEX settlements ("GBI Settlement Amounts");

WHEREAS, Claimant's Knauf Class Settlement Agreement claim was denied by the Knauf Defendants and the Special Master on November 22, 2017;

WHEREAS, on January 27, 2020, the MDL Court reviewed and reversed the Special Master's decision in-part, and determined that Claimant is eligible to receive benefits from the Knauf Class Settlement Agreement.

WHEREAS, as an Option 3 claimant under Section 4.3.3 of the Knauf Class Settlement Agreement, and after deducting the GBI Settlement Amounts, the MDL Court awarded Claimant $343,672.06 from the Knauf Class Settlement Agreement.

WHEREAS, the Claimant has now been determined to be a Option 3 Cash-Out claimant to the Knauf Class Settlement Agreement and entitled to $343,672.06 from the Knauf Class Settlement Agreement;

WHEREAS, Claimant's counsel has explained to Claimant, and Claimant understands, (i) the terms of this Release and (ii) the terms and conditions set forth in Section 4.3.3 of the Knauf Class Settlement Agreement;

NOW, THEREFORE, for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties hereto, each and all intending to be legally bound, hereby stipulate and agree as follows:

1. Claimant represents that Claimant owns the above listed property and that no other individual or entity has any direct or indirect ownership interest in the above listed property other than a mortgagee or other lien holder, and further represents that any such mortgagee or lien holder has not commenced foreclosure proceedings or acquired an ownership interest in such property and that Claimant is not in default on any financial obligations for which the property is security or collateral for repayment of such obligations.

2. Claimant further represents that Claimant has complied with the requirements of Section 4.3.3 of the Knauf Class Settlement Agreement including, if permitted by local law, recording, in the local property clerk's office, the existence of reactive Chinese drywall in the Property.

3. Pursuant to Section 4.3.3 of the Knauf Class Settlement Agreement, under penalty of perjury, Claimant covenants that Claimant will inform any subsequent purchaser in writing that there is reactive KPT Chinese Drywall in the Property and that Claimant will defend and indemnify the Knauf Defendants and any other person or entity released pursuant to Paragraph 6 against claims asserted by subsequent purchasers arising from KPT Chinese Drywall.

4. Claimant agrees that the consideration and actions performed by the Knauf Defendants in satisfying their obligations under the Knauf Class Settlement Agreement, will constitute full compensation and settlement arising out of or related to claims asserted

in the Action or to the KPT Chinese Drywall in the Property, and that Claimant will not seek anything further, including any other payment, from any other person or entity related to the Action, except as described below.

5. Claimant and the Knauf Defendants further agree that, in exchange for the consideration that is described herein, including but not limited to the $343,672.06 awarded by the MDL Court pursuant to Knauf Class Settlement Agreement (the "Cash Payment"), Claimant will dismiss with prejudice the Action.

6. Claimant unconditionally releases and relinquishes all rights that Claimant has or may have against the Knauf Defendants, the Other Releasees (as that term is defined in Section 1.50 of the Knauf Class Settlement Agreement), and any party that supplied, installed, or facilitated and/or assisted in such supply or installation of KPT Chinese Drywall in the Property, and without limitation, their successors, predecessors, assigns, affiliates, shareholders, investors, and their past, present, and future officers, directors, partners, attorneys, agents, employees, parent companies, partnerships, subsidiaries, sister corporations, and representatives ("Supply Chain Defendants") from any claims arising out of or relating to the presence of KPT Chinese Drywall in the Claimant's Property or claims regarding the KPT Chinese Drywall in the Property. This general release includes without limitation claims for injury, loss or damage including claims for bodily injury, emotional distress, and economic loss, past, present, and future remediation, construction, reconstruction, repair or claims for any and all damages, compensatory and/or punitive and/or other, penalties, costs, expenses, attorney's fees, and interest, pre-judgment and/or post-judgment, and includes those KPT Chinese Drywall-related damages of Claimant of which Claimant is not aware, and those Claimant does not anticipate, with the sole

exception of the Reserved Claims defined in Paragraph 7 below. Other than as to the Reserved Claims, this is a full, final and absolute general release and covenant not to sue.

7.   The following claims are reserved (the "Reserved Claims"):

    a.   Claims in connection with the performance of, and any obligations arising under the Knauf Class Settlement Agreement.

8.   Except as to the Reserved Claims, Claimant hereby assigns, transfers and otherwise relinquishes to the Knauf Defendants any and all of Claimant's claims and/or causes of action Claimant has, or may have, (1) in connection with the KPT Chinese Drywall in the Claimant's Property, against the Other Releasees and Supply Chain Defendants and (2) in connection with any non-KPT drywall manufactured in China ("Other Chinese Board") found in the Property, if any, against the manufacturers of the Other Chinese Board, Other Releasees, and the Supply Chain Defendants (the "Assigned Claims").   The Knauf Defendants shall be permitted to prosecute the Assigned Claims at their own expense, in which case Claimant shall reasonably cooperate in the prosecution of the Assigned Claims. However, if the Knauf Defendants elect not to prosecute the Assigned Claims, the release in Paragraph 6 above shall be effective as against whom the Knauf Defendants decline to bring the Assigned Claims.

9.   This Release is effective immediately with exception that it shall be effective as to the Knauf Defendants upon the Knauf Defendants' payment of the Cash Payment to Claimant. Nothing in this provision shall be construed to interfere or impact the Class Release in the Knauf Class Settlement Agreement.

10.   Claimant understands and acknowledges the significance and consequence of releasing all of Claimant's Chinese Drywall-related causes of action and/or claims (including presently existing, but unknown, unasserted, unsuspected, or undiscovered Chinese

Drywall-related causes of action and/or claims), and hereby assumes full risk and responsibility for any and all injuries, losses, damages, assessments, penalties, charges, expenses, costs, and/or liabilities that Claimant may hereinafter incur or discover that in any way arise out of or relate to such causes of action. To the extent that any law, statute, ordinance, rule, regulation, case or other such legal provision or authority may purport to preserve Claimant's right hereafter to assert presently existing but unknown, unasserted, unsuspected, or undiscovered Chinese Drywall-related causes of action and/or claims, which would otherwise be barred by the terms of this Release, Claimant hereby specifically and expressly waives Claimant's rights under such law, statute, ordinance, rule, regulation, case or other such legal provision or authority.

11. As provided for in Rule 408 of the Federal Rules of Evidence or its equivalent in state court jurisdictions, Claimant and the Knauf Defendants, and every person employed or retained by them who has any knowledge of any term of this Release or of any settlement, release, or waiver referred to herein will not introduce in evidence this Release, or any portion of the contents thereof, or any amount provided herein, or any amount received by Claimant, in any proceeding other than a proceeding to consummate or enforce this Release.

12. In further consideration of the foregoing, and with the exception of the Reserved Claims, Claimant and Claimant's undersigned counsel further agree and covenant to forever indemnify, defend and hold harmless the Knauf Defendants, and without limitation, their successors, predecessors, assigns, affiliates, shareholders, investors, and their past, present and future officers, directors, partners, attorneys, agents, employees, parent companies, partnerships, subsidiaries, sister corporations and representatives

from and against all claims and future claims relating to the Chinese Drywall in the Property.

13. Claimant is bound by this Release.  Anyone who succeeds to Claimant's rights and responsibilities, including any and all representatives, agents, successors, assigns, beneficiaries, heirs, or executors of Claimant, Claimant's estate, or the estate of any of them is also bound.  This Release is made for the benefit of Claimant and the Knauf Defendants.

14. Claimant authorizes and instructs Claimant's counsel to deliver to the Knauf Defendants a Notice of Dismissal with prejudice of the Action, which shall be "so ordered" by the Court where the Action is pending, as against all parties released herein and in accordance with the Knauf Class Settlement Agreement.  Claimant and Claimant's counsel shall cooperate with the Knauf Defendants in any additional way reasonably necessary to obtain such dismissal with prejudice.  Such delivery of the Notice of Dismissal shall be made to Kerry J. Miller, Fishman Haygood LLP, 201 St. Charles Avenue, Suite 4600, New Orleans, LA 70170.

15. Claimant acknowledges that Claimant has not received or relied on any agreements or promises other than as contained in writing in this Release.  In executing this Release Claimant has relied on Claimant's own or Claimant's counsel's analysis of the facts and information of which they are independently aware, and assumes the risk that there may prove to be facts or information different from or in addition to what they now know or believe.

16. Nothing in this Release shall constitute (i) any admission of liability or fault of any kind on the part of Knauf Defendants who expressly deny any liability to Claimant  and who

are entering this agreement to avoid the expense and uncertainty of litigation; (ii) an admission of or consent to jurisdiction or waiver of any jurisdictional defenses, except where applicable in the Knauf Class Settlement Agreement; or (iii) consent to service by the Knauf Defendants.  Neither this Release nor any Agreement shall be admissible in evidence in any proceedings except in an action to enforce the terms of the Release, or where applicable,  the Knauf Class Settlement Agreement.

_____
Claimant

_____
Claimant SS #

STATE OF _____, COUNTY OF _____

      I certify that on _____, 201__, _____ personally came before me and acknowledged under oath, to my satisfaction, that this person (a) is named in and personally signed this document; and (b) signed, sealed and delivered this document by her act and deed.

_____
Notary Public

_____
[Printed Name of Notary]

My Commission Expires: _____

_____
Counsel

Law Firm: _____

_____

                                              Claimant

_____

                                              Claimant SS #

STATE OF _____, COUNTY OF _____

      I certify that on _____, 201__, _____ personally came before me and acknowledged under oath, to my satisfaction, that this person (a) is named in and personally signed this document; and (b) signed, sealed and delivered this document by her act and deed.

_____

Notary Public

_____

[Printed Name of Notary]

My Commission Expires: _____

_____

Counsel

Law Firm: _____

_____

                                                 Claimant

_____

                                                 Claimant SS #

STATE OF _____, COUNTY OF _____

       I certify that on _____, 201__, _____ personally came before me and acknowledged under oath, to my satisfaction, that this person (a) is named in and personally signed this document; and (b) signed, sealed and delivered this document by her act and deed.

_____

Notary Public

_____

[Printed Name of Notary]

My Commission Expires: _____

_____

Counsel

Law Firm: _____

Option 3 - Lienholder Release[1]

## RELEASE

This Release, dated this _____ day of _____ , 2020 is entered into by _____ (the "Mortgagee").

WHEREAS Guilfort Dieuvil, Magdadene Dieuvil, and Frantz Duval (the "Property Owner") at 8757 Baystone Cove, Boynton Beach, FL 33473 (the "Property") pursuant to a mortgage agreement with the Mortgagee;

WHEREAS, starting in 2006 or later lawsuits were filed against one or more of Knauf Plasterboard (Tianjin) Co., Ltd. ("KPT"), Knauf Plasterboard (Wuhu) Co., Ltd., Guangdong Knauf New Building Material Products Co., Ltd., Knauf International GmbH, Knauf Insulation GmbH (referred to in MDL 2047 as Knauf Insulation USA), Knauf AMF GmbH & Co. KG, Knauf UK GmbH, Knauf do Brasil Ltda., Gebr. Knauf Verwaltungsgesellschaft KG, PT, Knauf Gypsum Indonesia, or Knauf Gips KG (collectively "Knauf Defendants").

WHEREAS, on October 14, 2010, the Knauf Defendants and the MDL Plaintiffs' Steering Committee (the "PSC") in *In re: Chinese Manufactured Drywall Products Liability Litigation*, MDL No. 2047 (the "MDL") entered into a Settlement Agreement for the Demonstration Remediation of Homes with KPT Drywall (the "Demonstration Remediation Agreement") to create a program (the "Program") to remediate homes that contain all or substantially all KPT drywall board ("KPT Chinese Drywall");

WHEREAS, on December 11, 2012, the Knauf Defendants and the PSC filed the Third Amended Class Settlement Agreement Regarding Claims against the Knauf Defendants in MDL No. 2047 ("Third Amended Class Settlement Agreement"), which, based on the Program

---

[1] Capitalized terms not otherwise defined have the same meaning given to them in the Knauf Class Settlement Agreement.

created by the Demonstration Remediation Agreement, provides property owners a means for resolving their KPT Chinese Drywall-related claims;

WHEREAS, on December 12, 2012, the MDL Court issued an Order allowing submission of the Third Amended Class Settlement Agreement and making the Court's prior Preliminary Approval Order, issued January 10, 2012, applicable to the Third Amended Class Settlement Agreement;

WHEREAS, on February 7, 2013, the MDL Court issued an Order granting Final Approval to the Third Amended Class Settlement Agreement, which became final on or about March 11, 2013.

WHEREAS, on August 12, 2013, the Knauf Defendants and the PSC entered into the Settlement Agreement Regarding Post-December 9, 2011 Claims Against the Knauf Defendants in MDL No. 2047 ("New Claims Agreement").

WHEREAS, on October 3, 2013, the Knauf Defendants and the PSC filed the Fourth Amended Class Settlement Agreement Regarding Claims Against the Knauf Defendants in MDL No. 2047 ("Fourth Amended Class Settlement Agreement"), which amends certain sections of the Third Amended Class Settlement Agreement (collectively, the "Knauf Class Settlement Agreement").[2]

WHEREAS, on November 1, 2013, the MDL Court issued an Order granting Approval of the Fourth Amended Class Settlement Agreement.

WHEREAS, Property Owner registered claims with the Settlement Administrator and became a claimant to the Knauf Class Settlement Agreement by inclusion in the Jimmy Doyle Term Sheet ("Term Sheet").

---

[2] Capitalized terms not otherwise defined have the same meaning given to them in the Knauf Class Settlement Agreement.

WHEREAS, as part of the Term Sheet, it was understood Property Owner would be included in the Knauf Class Settlement Agreement as a class member and eligible to obtain benefits if able to comply with the requirements of the Term Sheet and the Knauf Class Settlement Agreement.

WHEREAS, the Property Owner hereby represents that Property Owner is authorized under applicable law to represent and bind all other relevant parties, including any and all representatives, agents, successors, assigns, beneficiaries, heirs, or executors of the Property Owner, Property Owner's estate, or the estate of any of them, who are not signatories to this Release and by signing this Release does so bind;

WHEREAS, Property Owner received $37,402.88 in settlement funds from the Global, Banner, and INEX settlements ("GBI Settlement Amounts");

WHEREAS, Property Owner's Knauf Class Settlement Agreement claim was denied by the Knauf Defendants and the Special Master on November 22, 2017;

WHEREAS, on January 27, 2020, the MDL Court reviewed and reversed the Special Master's decision in-part, and determined that Property Owner is eligible to receive benefits from the Knauf Class Settlement Agreement.

WHEREAS, as an Option 3 claimant under Section 4.3.3 of the Knauf Class Settlement Agreement, and after deducting the GBI Settlement Amounts, the MDL Court awarded Property Owner $343,672.06 from the Knauf Class Settlement Agreement.

WHEREAS, the Property Owner has now been determined to be an Option 3 Cash-Out claimant to the Knauf Class Settlement Agreement and entitled to $343,672.06 from the Knauf Class Settlement Agreement;

WHEREAS, the receipt of the amount awarded as a Cash-out claimant is subject to the Property Owner providing this Release to the Knauf Defendants;

WHEREAS, the Mortgagee has been given an opportunity to review the Knauf Class Settlement Agreement;

NOW, THEREFORE, the parties hereto, each and all intending to be legally bound, hereby stipulate and agree as follows:

1.      The Mortgagee acknowledges that the Property Owner has been determined as a Cash-Out Option claimant as described in Section 4.3.3 of the Knauf Class Settlement Agreement, in lieu of one of the remediation options under Sections 4.3.1 and 4.3.2 of the Knauf Class Settlement Agreement.

2.      In exchange for good and valuable consideration, the Mortgagee unconditionally releases and relinquishes all rights it has or may have against the Knauf Defendants, the Other Releasees (as that term is defined in Section 1.50 of the Knauf Class Settlement Agreement), and any party that supplied, installed, or facilitated and/or assisted in such supply or installation of KPT Chinese Drywall in the Property, and without limitation, their successors, predecessors, assigns, affiliates, shareholders, investors, and their past, present, and future officers, directors, partners, attorneys, agents, employees, parent companies, partnerships, subsidiaries, sister corporations, and representatives ("Supply Chain Defendants") from any claims arising out of or relating to the presence of KPT Chinese Drywall in the Claimant's Property or claims regarding the KPT Chinese Drywall in the Property

3.      This Release will be effective immediately.

4.      As provided for in Rule 408 of the Federal Rules of Evidence or its equivalent in state court jurisdictions, the Mortgagee, Property Owner and the Knauf Defendants, and every person employed or retained by them who has any knowledge of any term of this Release or of any settlement, release, or waiver referred to herein will not introduce in evidence this Release, or any portion of the contents thereof, or any amount provided herein, or any amount received by

Property Owner, in any proceeding other than a proceeding to consummate or enforce this Release.

     5.    The Mortgagee acknowledges that it has not received or relied on any agreements or promises other than as contained in writing in this Release. In executing this Release, the Mortgagee has relied on the Mortgagee's own or the Mortgagee's counsel's analysis of the facts and information of which they are independently aware, and assumes the risk that there may prove to be facts or information different from or in addition to what they now know or believe.

     6.    Nothing in this agreement shall constitute any admission of liability or fault of any kind on the part of Knauf Defendants.

Dated: _____, 2020

_____
*On behalf of the Mortgagee*

STATE OF _____, COUNTY OF _____

     I certify that on _____, 2020___,_____ personally came before me and acknowledged under oath, to my satisfaction, that this person (a) is named in and personally signed this document; and (b) signed, sealed and delivered this document by her act and deed.

_____
Notary Public

_____
[Printed Name of Notary]

My Commission Expires: _____

# CHINESE DRYWALL SETTLEMENT PROGRAM

## MDL 2047

### Chinese Drywall Settlement Program
### Pre-Remediation Alternative Living Expenses Affidavit

Pursuant to the Court Approved Settlement Agreement regarding Other Loss Fund Benefits, a Residential Owner filing for alternative living expenses incurred prior to remediation arising from the need to vacate the Affected Property as a result of property damage caused by Chinese Drywall, must submit an affidavit in support of the claim. The Settlement Administrator may consider this Affidavit in making a determination of eligibility, but the submission of this Affidavit does not constitute conclusive proof of the facts stated herein. This Affidavit will not be considered unless it is personally signed by the claimant. To submit this Affidavit, upload it directly to the Chinese Drywall Settlement Portal at https://www3.browngreer.com/drywall. If you intend to use this Affidavit to provide information about multiple properties, attach a list of properties as a separate sheet and upload it directly to the Chinese Drywall Settlement Portal for each Affected Property to which the Affidavit applies. You may also attach additional sheets if you wish to provide additional information about your Affected Property. If you cannot upload this Affidavit to the Chinese Drywall Settlement Portal, email it to CDWQuestions@browngreer.com, or send by U.S. Mail to:

**Chinese Drywall Settlement Administrator**
**P.O. Box 25401**
**Richmond, Virginia 23260**

### A: Claimant Information

| | Last Name | First Name | Middle Initial |
|---|---|---|---|
| 1. **Name:** | Dieuvil | Guilfort | |

| | |
|---|---|
| 2. **Chinese Drywall Settlement Program Claimant ID Number:** | 1 1 3 0 1 9 |
| 3. **Social Security Number _or_ Individual Taxpayer Identification Number:** | SSN or ITIN ⬛⬛⬛ - ⬛⬛ - ⬛⬛⬛⬛ |
| 4. **Affected Property Identification Number (if you know it):** | 00-42-45-32-03-000-0790 |

| 5. **Affected Property Address:** | Street 8757 Baystone Cove | | |
|---|---|---|---|
| | City Boynton Beach | State Florida | Zip Code 33473 |

| 6. **I moved out of the home due to damage caused by Chinese Drywall on:** | 09 / 20 / 2010 (Month/Day/Year) |
|---|---|

| 7. **All documents submitted in support of my claim for Alternative Living Expenses are true, accurate, and complete.** | ☑ Yes<br>☐ No |
|---|---|

### B. Certification

I certify and declare under penalty of perjury pursuant to 28 U.S.C. Section 1746 that I have read and reviewed the Chinese Drywall Settlement Program Pre-Remediation Alternative Living Expenses Claim Form, and evidence submitted in support of this claim and certify under penalty of perjury that all information contained therein is true, accurate, and complete to the best of my knowledge. I understand that false statements or claims made in connection with this Affidavit and my claim may result in fines, imprisonment, and/or any other remedy available by law. I certify that I have made a good faith effort to obtain documentary evidence in support of my claim, and that if I obtain documentary evidence after I submit this Affidavit I will provide this evidence to the Settlement Administrator as soon as practicable, but no later than any other relevant deadlines set by the Settlement Administrator.

### C. Signature

| Claimant Signature: | | Date: | 05 / 15 / 2014 (Month/Day/Year) |
|---|---|---|---|
| **Name:** | Last Name **Dieuvil** | First Name **Guilfort** | Middle Initial |

# CHINESE DRYWALL SETTLEMENT PROGRAM

## MDL 2047

### CHINESE DRYWALL SETTLEMENT PROGRAM
### VERIFICATION OF CLAIMS

All claimants must submit this Verification of Claims in support of Chinese Drywall Claims. You need only submit this Affidavit once and the Settlement Administrator will review it in conjunction with submitted claims. To submit this Affidavit, upload it directly to the Chinese Drywall Settlement Portal at https://www3.browngreer.com/drywall. If you cannot upload this Affidavit to the Chinese Drywall Settlement Portal, email it to CDWQuestions@browngreer.com, or send by U.S. Mail to:

**Chinese Drywall Settlement Administrator**
**P.O. Box 25401**
**Richmond, Virginia 23260**

### A. CLAIMANT INFORMATION

| | | | |
|---|---|---|---|
| **1. Claimant Name:** | Last Name/Business Name<br>Dieuvil | First<br>Guilfort | M.I. |
| **2. Claimant Identification Number (if you know it):** | 113019 | | |
| **3. SSN or TIN (if you do not know the Affected Property Identification Number):** | 100 42 46 32 03 000 107190 | | |

### B. VERIFICATION OF CLAIMS

I certify and declare under penalty of perjury pursuant to 28 U.S.C. Section 1746 that I have read and reviewed all Chinese Drywall Settlement Program Claim Form(s) and evidence submitted in support of all claims and certify under penalty of perjury that all information contained therein is true, accurate, and complete to the best of my knowledge. I understand that false statements or claims made in connection with this Affidavit and my claim may result in fines, imprisonment, and/or any other remedy available by law.

| | | | |
|---|---|---|---|
| **Claimant's Signature:** | *(signature)* | **Date:** | 05 / 15 / 14<br>(Month/Day/Year) |
| **Title (If a business):** | | | |
| **Printed Name:** | First<br>Guilfort | Last<br>Dieuvil | M.I. |

CDW AFF-2

1

Form **W-9**
(Rev. December 2011)
Department of the Treasury
Internal Revenue Service

# Request for Taxpayer
# Identification Number and Certification

**Give Form to the requester. Do not send to the IRS.**

Name (as shown on your income tax return)
**GUILFORT DIEUVIL**

Business name/disregarded entity name, if different from above

Check appropriate box for federal tax classification:

[✓] Individual/sole proprietor   [ ] C Corporation   [ ] S Corporation   [ ] Partnership   [ ] Trust/estate

[ ] Limited liability company. Enter the tax classification (C=C corporation, S=S corporation, P=partnership) ▶ _____

[ ] Other (see instructions) ▶

[ ] Exempt payee

Address (number, street, and apt. or suite no.)
**8757 BAYSTONE COVE**

City, state, and ZIP code
**BOYNTON BEACH, FL 33473**

Requester's name and address (optional)

List account number(s) here (optional)

*See Specific Instructions on page 2.*
*Print or type*

## Part I   Taxpayer Identification Number (TIN)

Enter your TIN in the appropriate box. The TIN provided must match the name given on the "Name" line to avoid backup withholding. For individuals, this is your social security number (SSN). However, for a resident alien, sole proprietor, or disregarded entity, see the Part I instructions on page 3. For other entities, it is your employer identification number (EIN). If you do not have a number, see *How to get a TIN* on page 3.

**Note.** If the account is in more than one name, see the chart on page 4 for guidelines on whose number to enter.

Social security number

Employer identification number

## Part II   Certification

Under penalties of perjury, I certify that:

1. The number shown on this form is my correct taxpayer identification number (or I am waiting for a number to be issued to me), and

2. I am not subject to backup withholding because: (a) I am exempt from backup withholding, or (b) I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of a failure to report all interest or dividends, or (c) the IRS has notified me that I am no longer subject to backup withholding, and

3. I am a U.S. citizen or other U.S. person (defined below).

**Certification instructions.** You must cross out item 2 above if you have been notified by the IRS that you are currently subject to backup withholding because you have failed to report all interest and dividends on your tax return. For real estate transactions, item 2 does not apply. For mortgage interest paid, acquisition or abandonment of secured property, cancellation of debt, contributions to an individual retirement arrangement (IRA), and generally, payments other than interest and dividends, you are not required to sign the certification, but you must provide your correct TIN. See the instructions on page 4.

**Sign Here**   Signature of U.S. person ▶   Date ▶ 05/15/14

# General Instructions

Section references are to the Internal Revenue Code unless otherwise noted.

## Purpose of Form

A person who is required to file an information return with the IRS must obtain your correct taxpayer identification number (TIN) to report, for example, income paid to you, real estate transactions, mortgage interest you paid, acquisition or abandonment of secured property, cancellation of debt, or contributions you made to an IRA.

Use Form W-9 only if you are a U.S. person (including a resident alien), to provide your correct TIN to the person requesting it (the requester) and, when applicable, to:

1. Certify that the TIN you are giving is correct (or you are waiting for a number to be issued),

2. Certify that you are not subject to backup withholding, or

3. Claim exemption from backup withholding if you are a U.S. exempt payee. If applicable, you are also certifying that as a U.S. person, your allocable share of any partnership income from a U.S. trade or business is not subject to the withholding tax on foreign partners' share of effectively connected income.

**Note.** If a requester gives you a form other than Form W-9 to request your TIN, you must use the requester's form if it is substantially similar to this Form W-9.

**Definition of a U.S. person.** For federal tax purposes, you are considered a U.S. person if you are:

• An individual who is a U.S. citizen or U.S. resident alien,

• A partnership, corporation, company, or association created or organized in the United States or under the laws of the United States,

• An estate (other than a foreign estate), or

• A domestic trust (as defined in Regulations section 301.7701-7).

**Special rules for partnerships.** Partnerships that conduct a trade or business in the United States are generally required to pay a withholding tax on any foreign partners' share of income from such business. Further, in certain cases where a Form W-9 has not been received, a partnership is required to presume that a partner is a foreign person, and pay the withholding tax. Therefore, if you are a U.S. person that is a partner in a partnership conducting a trade or business in the United States, provide Form W-9 to the partnership to establish your U.S. status and avoid withholding on your share of partnership income.

Cat. No. 10231X

Form **W-9** (Rev. 12-2011)

The person who gives Form W-9 to the partnership for purposes of establishing its U.S. status and avoiding withholding on its allocable share of net income from the partnership conducting a trade or business in the United States is in the following cases:

• The U.S. owner of a disregarded entity and not the entity,

• The U.S. grantor or other owner of a grantor trust and not the trust, and

• The U.S. trust (other than a grantor trust) and not the beneficiaries of the trust.

**Foreign person.** If you are a foreign person, do not use Form W-9. Instead, use the appropriate Form W-8 (see Publication 515, Withholding of Tax on Nonresident Aliens and Foreign Entities).

**Nonresident alien who becomes a resident alien.** Generally, only a nonresident alien individual may use the terms of a tax treaty to reduce or eliminate U.S. tax on certain types of income. However, most tax treaties contain a provision known as a "saving clause." Exceptions specified in the saving clause may permit an exemption from tax to continue for certain types of income even after the payee has otherwise become a U.S. resident alien for tax purposes.

If you are a U.S. resident alien who is relying on an exception contained in the saving clause of a tax treaty to claim an exemption from U.S. tax on certain types of income, you must attach a statement to Form W-9 that specifies the following five items:

1. The treaty country. Generally, this must be the same treaty under which you claimed exemption from tax as a nonresident alien.

2. The treaty article addressing the income.

3. The article number (or location) in the tax treaty that contains the saving clause and its exceptions.

4. The type and amount of income that qualifies for the exemption from tax.

5. Sufficient facts to justify the exemption from tax under the terms of the treaty article.

*Example.* Article 20 of the U.S.-China income tax treaty allows an exemption from tax for scholarship income received by a Chinese student temporarily present in the United States. Under U.S. law, this student will become a resident alien for tax purposes if his or her stay in the United States exceeds 5 calendar years. However, paragraph 2 of the first Protocol to the U.S.-China treaty (dated April 30, 1984) allows the provisions of Article 20 to continue to apply even after the Chinese student becomes a resident alien of the United States. A Chinese student who qualifies for this exception (under paragraph 2 of the first protocol) and is relying on this exception to claim an exemption from tax on his or her scholarship or fellowship income would attach to Form W-9 a statement that includes the information described above to support that exemption.

If you are a nonresident alien or a foreign entity not subject to backup withholding, give the requester the appropriate completed Form W-8.

**What is backup withholding?** Persons making certain payments to you must under certain conditions withhold and pay to the IRS a percentage of such payments. This is called "backup withholding." Payments that may be subject to backup withholding include interest, tax-exempt interest, dividends, broker and barter exchange transactions, rents, royalties, nonemployee pay, and certain payments from fishing boat operators. Real estate transactions are not subject to backup withholding.

You will not be subject to backup withholding on payments you receive if you give the requester your correct TIN, make the proper certifications, and report all your taxable interest and dividends on your tax return.

**Payments you receive will be subject to backup withholding if:**

1. You do not furnish your TIN to the requester,

2. You do not certify your TIN when required (see the Part II instructions on page 3 for details),

3. The IRS tells the requester that you furnished an incorrect TIN,

4. The IRS tells you that you are subject to backup withholding because you did not report all your interest and dividends on your tax return (for reportable interest and dividends only), or

5. You do not certify to the requester that you are not subject to backup withholding under 4 above (for reportable interest and dividend accounts opened after 1983 only).

Certain payees and payments are exempt from backup withholding. See the instructions below and the separate Instructions for the Requester of Form W-9.

Also see *Special rules for partnerships* on page 1.

**Updating Your Information**

You must provide updated information to any person to whom you claimed to be an exempt payee if you are no longer an exempt payee and anticipate receiving reportable payments in the future from this person. For example, you may need to provide updated information if you are a C corporation that elects to be an S corporation, or if you no longer are tax exempt. In addition, you must furnish a new Form W-9 if the name or TIN changes for the account, for example, if the grantor of a grantor trust dies.

**Penalties**

**Failure to furnish TIN.** If you fail to furnish your correct TIN to a requester, you are subject to a penalty of $50 for each such failure unless your failure is due to reasonable cause and not to willful neglect.

**Civil penalty for false information with respect to withholding.** If you make a false statement with no reasonable basis that results in no backup withholding, you are subject to a $500 penalty.

**Criminal penalty for falsifying information.** Willfully falsifying certifications or affirmations may subject you to criminal penalties including fines and/or imprisonment.

**Misuse of TINs.** If the requester discloses or uses TINs in violation of federal law, the requester may be subject to civil and criminal penalties.

**Specific Instructions**

**Name**

If you are an individual, you must generally enter the name shown on your income tax return. However, if you have changed your last name, for instance, due to marriage without informing the Social Security Administration of the name change, enter your first name, the last name shown on your social security card, and your new last name.

If the account is in joint names, list first, and then circle, the name of the person or entity whose number you entered in Part I of the form.

**Sole proprietor.** Enter your individual name as shown on your income tax return on the "Name" line. You may enter your business, trade, or "doing business as (DBA)" name on the "Business name/disregarded entity name" line.

**Partnership, C Corporation, or S Corporation.** Enter the entity's name on the "Name" line and any business, trade, or "doing business as (DBA) name" on the "Business name/disregarded entity name" line.

**Disregarded entity.** Enter the owner's name on the "Name" line. The name of the entity entered on the "Name" line should never be a disregarded entity. The name on the "Name" line must be the name shown on the income tax return on which the income will be reported. For example, if a foreign LLC that is treated as a disregarded entity for U.S. federal tax purposes has a domestic owner, the domestic owner's name is required to be provided on the "Name" line. If the direct owner of the entity is also a disregarded entity, enter the first owner that is not disregarded for federal tax purposes. Enter the disregarded entity's name on the "Business name/disregarded entity name" line. If the owner of the disregarded entity is a foreign person, you must complete an appropriate Form W-8.

**Note.** Check the appropriate box for the federal tax classification of the person whose name is entered on the "Name" line (individual/sole proprietor, Partnership, C Corporation, S Corporation, Trust/estate).

**Limited Liability Company (LLC).** If the person identified on the "Name" line is an LLC, check the "Limited liability company" box only and enter the appropriate code for the tax classification in the space provided. If you are an LLC that is treated as a partnership for federal tax purposes, enter "P" for partnership. If you are an LLC that has filed a Form 8832 or a Form 2553 to be taxed as a corporation, enter "C" for C corporation or "S" for S corporation. If you are an LLC that is disregarded as an entity separate from its owner under Regulation section 301.7701-3 (except for employment and excise tax), do not check the LLC box unless the owner of the LLC (required to be identified on the "Name" line) is another LLC that is not disregarded for federal tax purposes. If the LLC is disregarded as an entity separate from its owner, enter the appropriate tax classification of the owner identified on the "Name" line.

**Other entities.** Enter your business name as shown on required federal tax documents on the "Name" line. This name should match the name shown on the charter or other legal document creating the entity. You may enter any business, trade, or DBA name on the "Business name/ disregarded entity name" line.

## Exempt Payee

If you are exempt from backup withholding, enter your name as described above and check the appropriate box for your status, then check the "Exempt payee" box in the line following the "Business name/ disregarded entity name," sign and date the form.

Generally, individuals (including sole proprietors) are not exempt from backup withholding. Corporations are exempt from backup withholding for certain payments, such as interest and dividends.

**Note.** If you are exempt from backup withholding, you should still complete this form to avoid possible erroneous backup withholding.

The following payees are exempt from backup withholding:

1. An organization exempt from tax under section 501(a), any IRA, or a custodial account under section 403(b)(7) if the account satisfies the requirements of section 401(f)(2),

2. The United States or any of its agencies or instrumentalities,

3. A state, the District of Columbia, a possession of the United States, or any of their political subdivisions or instrumentalities,

4. A foreign government or any of its political subdivisions, agencies, or instrumentalities, or

5. An international organization or any of its agencies or instrumentalities.

Other payees that may be exempt from backup withholding include:

6. A corporation,

7. A foreign central bank of issue,

8. A dealer in securities or commodities required to register in the United States, the District of Columbia, or a possession of the United States,

9. A futures commission merchant registered with the Commodity Futures Trading Commission,

10. A real estate investment trust,

11. An entity registered at all times during the tax year under the Investment Company Act of 1940,

12. A common trust fund operated by a bank under section 584(a),

13. A financial institution,

14. A middleman known in the investment community as a nominee or custodian, or

15. A trust exempt from tax under section 664 or described in section 4947.

The following chart shows types of payments that may be exempt from backup withholding. The chart applies to the exempt payees listed above, 1 through 15.

| IF the payment is for . . . | THEN the payment is exempt for . . . |
|---|---|
| Interest and dividend payments | All exempt payees except for 9 |
| Broker transactions | Exempt payees 1 through 5 and 7 through 13. Also, C corporations. |
| Barter exchange transactions and patronage dividends | Exempt payees 1 through 5 |
| Payments over $600 required to be reported and direct sales over $5,000 [1] | Generally, exempt payees 1 through 7 [2] |

[1] See Form 1099-MISC, Miscellaneous Income, and its instructions.

[2] However, the following payments made to a corporation and reportable on Form 1099-MISC are not exempt from backup withholding: medical and health care payments, attorneys' fees, gross proceeds paid to an attorney, and payments for services paid by a federal executive agency.

## Part I. Taxpayer Identification Number (TIN)

Enter your TIN in the appropriate box. If you are a resident alien and you do not have and are not eligible to get an SSN, your TIN is your IRS individual taxpayer identification number (ITIN). Enter it in the social security number box. If you do not have an ITIN, see How to get a TIN below.

If you are a sole proprietor and you have an EIN, you may enter either your SSN or EIN. However, the IRS prefers that you use your SSN.

If you are a single-member LLC that is disregarded as an entity separate from its owner (see Limited Liability Company (LLC) on page 2), enter the owner's SSN (or EIN, if the owner has one). Do not enter the disregarded entity's EIN. If the LLC is classified as a corporation or partnership, enter the entity's EIN.

**Note.** See the chart on page 4 for further clarification of name and TIN combinations.

**How to get a TIN.** If you do not have a TIN, apply for one immediately. To apply for an SSN, get Form SS-5, Application for a Social Security Card, from your local Social Security Administration office or get this form online at www.ssa.gov. You may also get this form by calling 1-800-772-1213. Use Form W-7, Application for IRS Individual Taxpayer Identification Number, to apply for an ITIN, or Form SS-4, Application for Employer Identification Number, to apply for an EIN. You can apply for an EIN online by accessing the IRS website at www.irs.gov/businesses and clicking on Employer Identification Number (EIN) under Starting a Business. You can get Forms W-7 and SS-4 from the IRS by visiting IRS.gov or by calling 1-800-TAX-FORM (1-800-829-3676).

If you are asked to complete Form W-9 but do not have a TIN, write "Applied For" in the space for the TIN, sign and date the form, and give it to the requester. For interest and dividend payments, and certain payments made with respect to readily tradable instruments, generally you will have 60 days to get a TIN and give it to the requester before you are subject to backup withholding on payments. The 60-day rule does not apply to other types of payments. You will be subject to backup withholding on all such payments until you provide your TIN to the requester.

**Note.** Entering "Applied For" means that you have already applied for a TIN or that you intend to apply for one soon.

**Caution:** A disregarded domestic entity that has a foreign owner must use the appropriate Form W-8.

## Part II. Certification

To establish to the withholding agent that you are a U.S. person, or resident alien, sign Form W-9. You may be requested to sign by the withholding agent even if item 1, below, and items 4 and 5 on page 4 indicate otherwise.

For a joint account, only the person whose TIN is shown in Part I should sign (when required). In the case of a disregarded entity, the person identified on the "Name" line must sign. Exempt payees, see Exempt Payee on page 3.

**Signature requirements.** Complete the certification as indicated in items 1 through 3, below, and items 4 and 5 on page 4.

1. **Interest, dividend, and barter exchange accounts opened before 1984 and broker accounts considered active during 1983.** You must give your correct TIN, but you do not have to sign the certification.

2. **Interest, dividend, broker, and barter exchange accounts opened after 1983 and broker accounts considered inactive during 1983.** You must sign the certification or backup withholding will apply. If you are subject to backup withholding and you are merely providing your correct TIN to the requester, you must cross out item 2 in the certification before signing the form.

3. **Real estate transactions.** You must sign the certification. You may cross out item 2 of the certification.

**4. Other payments.** You must give your correct TIN, but you do not have to sign the certification unless you have been notified that you have previously given an incorrect TIN. "Other payments" include payments made in the course of the requester's trade or business for rents, royalties, goods (other than bills for merchandise), medical and health care services (including payments to corporations), payments to a nonemployee for services, payments to certain fishing boat crew members and fishermen, and gross proceeds paid to attorneys (including payments to corporations).

**5. Mortgage interest paid by you, acquisition or abandonment of secured property, cancellation of debt, qualified tuition program payments (under section 529), IRA, Coverdell ESA, Archer MSA or HSA contributions or distributions, and pension distributions.** You must give your correct TIN, but you do not have to sign the certification.

## What Name and Number To Give the Requester

| For this type of account: | Give name and SSN of: |
|---|---|
| 1. Individual | The individual |
| 2. Two or more individuals (joint account) | The actual owner of the account or, if combined funds, the first individual on the account ¹ |
| 3. Custodian account of a minor (Uniform Gift to Minors Act) | The minor ² |
| 4. a. The usual revocable savings trust (grantor is also trustee) | The grantor-trustee ¹ |
|    b. So-called trust account that is not a legal or valid trust under state law | The actual owner ¹ |
| 5. Sole proprietorship or disregarded entity owned by an individual | The owner ³ |
| 6. Grantor trust filing under Optional Form 1099 Filing Method 1 (see Regulation section 1.671-4(b)(2)(i)(A)) | The grantor* |

| For this type of account: | Give name and EIN of: |
|---|---|
| 7. Disregarded entity not owned by an individual | The owner |
| 8. A valid trust, estate, or pension trust | Legal entity ⁴ |
| 9. Corporation or LLC electing corporate status on Form 8832 or Form 2553 | The corporation |
| 10. Association, club, religious, charitable, educational, or other tax-exempt organization | The organization |
| 11. Partnership or multi-member LLC | The partnership |
| 12. A broker or registered nominee | The broker or nominee |
| 13. Account with the Department of Agriculture in the name of a public entity (such as a state or local government, school district, or prison) that receives agricultural program payments | The public entity |
| 14. Grantor trust filing under the Form 1041 Filing Method or the Optional Form 1099 Filing Method 2 (see Regulation section 1.671-4(b)(2)(i)(B)) | The trust |

¹ List first and circle the name of the person whose number you furnish. If only one person on a joint account has an SSN, that person's number must be furnished.

² Circle the minor's name and furnish the minor's SSN.

³ You must show your individual name and you may also enter your business or "DBA" name on the "Business name/disregarded entity" name line. You may use either your SSN or EIN (if you have one), but the IRS encourages you to use your SSN.

⁴ List first and circle the name of the trust, estate, or pension trust. (Do not furnish the TIN of the personal representative or trustee unless the legal entity itself is not designated in the account title.) Also see *Special rules for partnerships* on page 1.

*Note. Grantor also must provide a Form W-9 to trustee of trust.

**Note.** If no name is circled when more than one name is listed, the number will be considered to be that of the first name listed.

## Secure Your Tax Records from Identity Theft

Identity theft occurs when someone uses your personal information such as your name, social security number (SSN), or other identifying information, without your permission, to commit fraud or other crimes. An identity thief may use your SSN to get a job or may file a tax return using your SSN to receive a refund.

To reduce your risk:
• Protect your SSN,
• Ensure your employer is protecting your SSN, and
• Be careful when choosing a tax preparer.

If your tax records are affected by identity theft and you receive a notice from the IRS, respond right away to the name and phone number printed on the IRS notice or letter.

If your tax records are not currently affected by identity theft but you think you are at risk due to a lost or stolen purse or wallet, questionable credit card activity or credit report, contact the IRS Identity Theft Hotline at 1-800-908-4490 or submit Form 14039.

For more information, see Publication 4535, Identity Theft Prevention and Victim Assistance.

Victims of identity theft who are experiencing economic harm or a system problem, or are seeking help in resolving tax problems that have not been resolved through normal channels, may be eligible for Taxpayer Advocate Service (TAS) assistance. You can reach TAS by calling the TAS toll-free case intake line at 1-877-777-4778 or TTY/TDD 1-800-829-4059.

**Protect yourself from suspicious emails or phishing schemes.** Phishing is the creation and use of email and websites designed to mimic legitimate business emails and websites. The most common act is sending an email to a user falsely claiming to be an established legitimate enterprise in an attempt to scam the user into surrendering private information that will be used for identity theft.

The IRS does not initiate contacts with taxpayers via emails. Also, the IRS does not request personal detailed information through email or ask taxpayers for the PIN numbers, passwords, or similar secret access information for their credit card, bank, or other financial accounts.

If you receive an unsolicited email claiming to be from the IRS, forward this message to *phishing@irs.gov*. You may also report misuse of the IRS name, logo, or other IRS property to the Treasury Inspector General for Tax Administration at 1-800-366-4484. You can forward suspicious emails to the Federal Trade Commission at: *spam@uce.gov* or contact them at *www.ftc.gov/idtheft* or 1-877-IDTHEFT (1-877-438-4338).

Visit IRS.gov to learn more about identity theft and how to reduce your risk.

## Privacy Act Notice

Section 6109 of the Internal Revenue Code requires you to provide your correct TIN to persons (including federal agencies) who are required to file information returns with the IRS to report interest, dividends, or certain other income paid to you; mortgage interest you paid; the acquisition or abandonment of secured property; the cancellation of debt; or contributions you made to an IRA, Archer MSA, or HSA. The person collecting this form uses the information on the form to file information returns with the IRS, reporting the above information. Routine uses of this information include giving it to the Department of Justice for civil and criminal litigation and to cities, states, the District of Columbia, and U.S. possessions for use in administering their laws. The information also may be disclosed to other countries under a treaty, to federal and state agencies to enforce civil and criminal laws, or to federal law enforcement and intelligence agencies to combat terrorism. You must provide your TIN whether or not you are required to file a tax return. Under section 3406, payers must generally withhold a percentage of taxable interest, dividend, and certain other payments to a payee who does not give a TIN to the payer. Certain penalties may also apply for providing false or fraudulent information.

CFN 20070024961
OR BK 21310 PG 1742
RECORDED 01/17/2007 12:42:37
Palm Beach County, Florida
AMT 1,142,015.00
Doc Stamp 7,994.70
Sharon R. Bock,CLERK & COMPTROLLER
Pgs 1742 - 1743; (2pgs)

RETURN TO:
NOVA TITLE COMPANY
1401 UNIVERSITY DR SUITE 402
CORAL SPRING. FL 33071-8909
(954) 755-9889

W/C 84

## SPECIAL WARRANTY DEED

THIS INDENTURE is made this ___9___ day of January, 2007, between BOYNTON BEACH ASSOCIATES XVI, LLLP, a Florida limited liability limited partnership ("Seller") whose post office address is 1600 Sawgrass Corporate Parkway, Suite 300, Sunrise, Florida 33323, and Guilfort Dieuvil, a married man ("Buyer"), whose Social Security Numbers are _____ and _____, respectively, and whose post office address is 8757 Baystone Cove, Boynton Beach, Florida 33437.

WITNESSETH, that Seller, for and in consideration of the sum of TEN AND NO/100 DOLLARS ($10.00) and other good and valuable consideration to Seller in hand paid by Buyer, the receipt and sufficiency of which are hereby acknowledged, has granted, bargained and sold, and hereby grants, bargains and sells to Buyer, and Buyer's heirs, successors and assigns forever, the following described land, with a Property Appraiser's Identification Number of 00 42 45 32 03 000 0790.

Lot   79 , CANYON ISLES - PLAT TWO, according to the plat thereof, as recorded in Plat Book 105 at Page 40, of the Public Records of Palm Beach County, Florida.

THIS CONVEYANCE AND TITLE TO SAID PROPERTY is subject to: (a) taxes and assessments for the present year and subsequent years, including, but not limited to, pending and certified county or municipal improvement liens; (b) restrictions, reservations, conditions, limitations, easements and other matters of record or imposed by governmental authorities having jurisdiction or control over the subject property, but this reference shall not operate to reimpose any of same; (c) all laws, ordinances, regulations, restrictions, prohibitions and other requirements imposed by governmental authorities, including, but not limited to, all applicable zoning, building, bulkhead, land use and environmental ordinances, rules and regulations, and rights or interests vested in the United States of America and/or the State of Florida; (d) those certain covenants, restrictions, agreements and lien rights set forth in Exhibit "A" attached hereto and by this reference made a part hereof; (e) the Declaration of Covenants, Restrictions and Easements for Canyon Isles, dated January 18, 2006 and recorded January 20, 2006 in Official Records Book 19920, at Page 216 of the Public Records of Palm Beach County, Florida, as amended and/or supplemented from time to time; (f) the plat of Canyon Isles – Plat One, as recorded in Plat Book 105, at Page 1 of the Public Records of Palm Beach County, Florida; (g) the plat of Canyon Isles – Plat Two, as recorded in Plat Book 105, at Page 40 of the Public Records of Palm Beach County, Florida; and (h) the plat of Canyon Isles – Plat Three, as recorded in Plat Book 106, at Page 61 of the Public Records of Palm Beach County, Florida.

SELLER does hereby specially warrant the title to said land, subject to the foregoing matters, and will defend same against the lawful claims of all persons claiming by, through or under Seller and no others.

IN WITNESS WHEREOF, Seller has hereunto set Seller's hand and seal the day and year first above written.

WITNESSES:

BOYNTON BEACH ASSOCIATES XVI, LLLP, a
Florida limited liability limited partnership

By:   Boynton Beach XVI Corporation, a Florida
corporation, its general partner

By: _____

Print Name of Witness: Jennifer Fowler

N. Maria Menendez, Vice President

Print Name of Witness: Kathleen M Coffman

STATE OF FLORIDA
COUNTY OF BROWARD

The foregoing instrument was acknowledged before me this ___9___ day of January, 2007, by N. Maria Menendez, as Vice President of Boynton Beach XVI Corporation, a Florida corporation, the general partner of Boynton Beach Associates XVI, LLLP, a Florida limited liability limited partnership, on behalf of said corporation and limited liability limited partnership. She is personally known to me.

Notary Public
My Commission Expires:

This instrument prepared by:
HENRY W. JOHNSON, ESQ.
HUME & JOHNSON, P.A.
1401 University Drive, #301
Coral Springs, Florida 33071
(954) 755-8890

KATHLEEN M. COFFMAN
Notary Public - State of Florida
My Commission Expires Mar 18, 2009
Commission # DD 391078
Bonded By National Notary Assn.

**EXHIBIT "A"**
**COVENANTS, RESTRICTIONS, AGREEMENTS AND LIEN RIGHTS**

The title to the property described in the Special Warranty Deed to which this **Exhibit "A"** is attached (the "Deed") shall be subject to and burdened by the covenants, restrictions, agreements and lien rights set forth below.

1.   **Capitalized Terms and Definitions.**  All initial capitalized terms used in this **Exhibit "A"** but not defined herein shall have the meanings given to such terms as set forth in the Deed.  The following terms as used in this **Exhibit "A"** shall have the meanings given to such terms as set forth below.

"**Gain**" shall mean and refer to the amount, if any, by which: (i) the gross selling price of the Property (less and except: (x) the actual, documented costs of any physical improvements made by Buyer after the date of the Deed to the exterior of the home on the Property such as pools, patios, screen enclosures and extensions, and (z) the actual documented closing costs required to be paid by Buyer in connection with the sale of the Property such as documentary stamp taxes, recording fees and/or brokerage commissions), exceeds (ii) the "Total Purchase Price" paid to Seller by Buyer pursuant to and as defined in the Purchase Contract executed by Seller and Buyer.

"**Hardship Event**" shall mean and refer to a sale, transfer, lease or sublet of the Property, as appropriate, following a divorce of the Buyers (if married to each other), death or serious disability of one or more of the Buyers, job transfer of one or more of the Buyers to a location greater than fifty (50) miles from the Property, or other reason acceptable to Seller in Seller's sole and absolute discretion, as evidenced by a written waiver of this provision given by Seller.

"**Property**" shall mean and refer to the property described in the Deed together with the improvements thereon.

"**Transfer Advertisement or Agreement**" shall mean and refer to any or all of the following: (i) any listing or advertisement for the sale or lease of the Property or any portion thereof made with a broker, in any multiple listing service, in any classified or other advertisement, or otherwise (including, without limitation, "by owner"), (ii) any agreement (verbal or written) for transfer of title to the Property to any third party, and/or (iii) any agreement (verbal or written) for the leasing and/or subletting of the Property or any portion thereof, notwithstanding anything to the contrary in the Declaration.

2.   **Sales/Transfers of the Property.**  In the event that Buyer sells or transfers title to the Property (directly or indirectly): (a) at any time within one (1) year following the date of the Deed, and/or (b) at any time thereafter if such sale or transfer results from a Transfer Advertisement or Agreement made or entered into within one (1) year following the date of the Deed, then except only in the event of a Hardship Event released by Seller as provided in Paragraph 4 below, Buyer shall pay to Seller from the proceeds of such sale or transfer, an amount equal to one-hundred percent (100%) of the Gain realized from such sale or transfer.

3.   **No Leasing of the Property.**  Notwithstanding anything to the contrary in the Declaration, for a period of one (1) year following the date of the Deed, except only in the event of a Hardship Event released by Seller as provided in paragraph 4 below, Buyer shall not lease and/or sublet the Property or any portion thereof.  Any such lease and/or sublet shall be void and unenforceable.  All other leases or sublets, including those resulting from such a Hardship Event, shall be subject to the terms and conditions of the Declaration.

4.   **Lien Rights; Releases.**  There is and shall be a lien against the Property to secure Buyer's obligations set forth in this **Exhibit "A"**, which lien may be foreclosed on by Seller if Buyer breaches any of its obligations hereunder.  In the event of a proposed sale, transfer, lease or sublet of the Property due to a Hardship Event, Buyer must first provide to Seller evidence of such Hardship Event acceptable to Seller in Seller's sole and absolute discretion, and if acceptable to Seller, Seller shall deliver to Buyer a written acknowledgment of the Hardship Event and waiver of Seller's rights hereunder with respect only to such sale, transfer, lease or sublet. In addition, upon written request from Buyer to Seller and payment of the Gain due to Seller in connection with any sale or transfer of the Property as provided in this **Exhibit "A"**, then Seller shall provide to Buyer a written acknowledgment of such payment and release of Seller's lien rights with respect only to such sale or transfer provided that Buyer provides Seller with evidence satisfactory to Seller in Seller's sole and absolute discretion of the amount of the Gain due, including, without limitation closing or other settlement statements. Any release provided by Seller shall be specific only to the particular sale, transfer, lease or sublet described in the release and not to any subsequent sale, transfer, lease or sublet which shall remain subject to this **Exhibit "A"**.

5.   **Binding and Running with Title to the Property.**  The covenants, restrictions, agreements and lien rights set forth in this **Exhibit "A"** shall burden and run with title to the Property.

6.   **Remedies.**  In addition to its right of foreclosure, Seller shall have all remedies at law and/or in equity for a breach by Buyer under this **Exhibit "A"**.  In the event that Seller prevails in any action (legal or otherwise) to enforce its rights and/or Buyer's obligations, Seller shall be entitled to recover all of its costs incurred including, without limitation, reasonable attorneys' fees, through and including all appellate levels.  By acceptance of the Deed to the Property, Buyer, for itself, and its successors and assigns waives any homestead or other exemption now or hereafter existing or enacted under either Florida or federal law as same may relate to Seller's rights hereunder.

7.   **Subordination.**  This **Exhibit "A"** shall be subordinate to the right of any holder of an institutional first mortgage on the Property and shall not apply to any sales or leases by an institutional first mortgagee who acquires title to the property by foreclosure or deed in lieu of foreclosure.

8.   **Miscellaneous.**  This **Exhibit "A"** shall be construed in accordance with the laws of the State of Florida and shall be binding on Buyer and Buyer's heirs, successors and assigns. In that regard, all references to Buyer in this **Exhibit "A"** shall also mean and refer to each and every of Buyer's heirs, successors and/or assigns. Should any term or provision of this **Exhibit "A"** be ruled to be illegal or otherwise invalid by a court of competent jurisdiction, such term or provision shall be given its nearest legal meaning or be construed as deleted as such court determines, and the same will not invalidate the remaining terms and provisions of this **Exhibit "A"**, which terms, provisions and portions of this Contract will remain in full force and effect. This **Exhibit "A"** may not be amended or modified except by an instrument in writing executed by Seller.



Gary R. Nikolits, CFA    Homestead Exemption   E-file ▸

## Property Appraiser
Palm Beach County

| | |
|---|---|
| Location Address | 8757 BAYSTONE CV |
| Municipality | UNINCORPORATED |
| Parcel Control Number | 00-42-45-32-03-000-0790 |
| Subdivision | CANYON ISLES PL 2 |
| Official Records Book | 24010    Page 1180 |
| Sale Date | AUG-2010 |
| Legal Description | CANYON ISLES PL 2 LT 79 |

| Owners | Mailing address |
|---|---|
| DIEUVIL GUILFORT & | 8757 BAYSTONE CV |
| DIEUVIL MAGDADENE | BOYNTON BEACH FL 33473 4877 |

| Sales Date | Price | OR Book/Page | Sale Type | Owner |
|---|---|---|---|---|
| AUG-2010 | $10 | 24010 / 1180 | QUIT CLAIM | DIEUVIL GUILFORT & |
| JAN-2007 | $1,142,015 | 21310 / 1742 | WARRANTY DEED | DIEUVIL GUILFORT |

| Exemption Applicant/Owner | Year | Detail |
|---|---|---|
| DIEUVIL GUILFORT | 2014 | |

| | | | |
|---|---|---|---|
| Number of Units 1 | *Total Square Feet 6928 | Acres 0.42 | |
| Use Code | 0100 - SINGLE FAMILY | Zoning | AGR-PUD - Agricultural Reserve PUD ( 00- UNINCORPORATED ) |

| Tax Year | 2013 | 2012 | 2011 |
|---|---|---|---|
| Improvement Value | $427,583 | $399,825 | $422,956 |
| Land Value | $95,426 | $86,751 | $86,751 |
| Total Market Value | $523,009 | $486,576 | $509,707 |

**All values are as of January 1st each year**

| Tax Year | 2013 | 2012 | 2011 |
|---|---|---|---|
| Assessed Value | $494,848 | $486,576 | $509,707 |
| Exemption Amount | $50,000 | $50,000 | $50,000 |
| Taxable Value | $444,848 | $436,576 | $459,707 |

| Tax Year | 2013 | 2012 | 2011 |
|---|---|---|---|
| Ad Valorem | $8,581 | $8,554 | $9,207 |
| Non Ad Valorem | $355 | $373 | $366 |
| Total tax | $8,936 | $8,927 | $9,573 |