## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

IN RE:  CHINESE-MANUFACTURED DRYWALL    *
PRODUCTS LIABILITY LITIGATION    *
   *     **CIVIL ACTION**
   *
   *     **MDL NO. 2047**
   *
   *     **SECTION L (2)**
**THIS DOCUMENT RELATES TO:**    *
*Elizabeth Bennett, et al. v. Gebr. Knauf*    *
*Verwaltungsgesellschaft, KG, et al.*, No. 14-2722    *

## ORDER & REASONS

Pending before the Court are fifteen Motions for Summary Judgment filed by Defendants. R. Docs. 22368, 22369, 22370, 22371, 22372, 22373, 22412, 22430, 22431, 22432, 22436, 22442, 22446, and 22451, and 22523. Plaintiffs oppose the motions. R. Docs. 22576, 22552, 22553, 22556, 22566, 22567, 22568, 22569, 22570, 22571, 22572, 22573, 22574, 22575, 22576, 22577, and 22577. Defendants have filed replies. R. Doc. 22591, 22593, 22595, 22597, 22599. The Court heard oral argument on these motions on February 19, 2020. Having considered the applicable law and the parties' arguments, the Court now rules as follows.

### I.  BACKGROUND

From 2004 through 2006, the housing boom in Florida and rebuilding efforts necessitated by Hurricanes Rita and Katrina led to a shortage of construction materials, including drywall.  As a result, drywall manufactured in China was brought into the United States and used to construct and refurbish homes in coastal areas of the country, notably the Gulf Coast and East Coast. Sometime after the installation of the Chinese drywall, homeowners began to complain of emissions of foul-smelling gas, the corrosion and blackening of metal wiring, surfaces, and objects, and the breaking down of appliances and electrical devices in their homes.  *See In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, 894 F. Supp. 2d 819, 829–30 (E.D. La. 2012), *aff'd*,

742 F.3d 576 (5th Cir. 2014). Many of these homeowners also began to complain of various physical afflictions believed to be caused by the Chinese drywall.

These homeowners then began to file suit in various state and federal courts against homebuilders, developers, installers, realtors, brokers, suppliers, importers, exporters, distributors, and manufacturers who were involved with the Chinese drywall. As a result, many homebuilders also filed suit seeking to recoup their damages. Because of the commonality of facts in the various cases, this litigation was designated as a multidistrict litigation.  Pursuant to a Transfer Order from the United States Judicial Panel on Multidistrict Litigation on June 15, 2009, all federal cases involving Chinese drywall were consolidated for pretrial proceedings in MDL 09-2047 before this Court.  Since that date, numerous cases have been consolidated, involving thousands of individual claims; over 20,000 documents have been entered into the record, millions of documents have been exchanged in discovery, depositions have been taken in the United States and in China, and over thirty Pretrial Orders have been issued; the Court has appointed steering committees and liaison counsel for plaintiffs, homebuilders, insurers, installers, and manufacturers, and it has presided over monthly status conferences, hearings, and several bellwether trials.

The Chinese drywall at issue was largely manufactured by two groups of defendants:  (1) the Knauf Entities and (2) the Taishan Entities.  The litigation has focused upon these two entities and their downstream associates and has proceeded on strikingly different tracks for the claims against each group.

### A.  The Knauf Defendants

The Knauf Entities are German-based, international manufacturers of building products, including drywall, whose Chinese subsidiary, Knauf Plasterboard (Tianjin) Co., Ltd. ("KPT"),

advertised and sold its Chinese drywall in the United States. The Knauf Entities are named defendants in numerous cases consolidated with the MDL litigation and litigation in state courts.

The Knauf Entities first entered their appearance in the MDL litigation on July 2, 2009. Thereafter, the Court presided over a bellwether trial in *Hernandez v. Knauf Gips KG*, Case No. 09-6050, involving a homeowner's claims against KPT for defective drywall. The Court found in favor of the plaintiff family in *Hernandez*, issued a detailed Findings of Fact and Conclusions of Law, and entered a Judgment in the amount of $164,049.64, including remediation damages in the amount of $136,940.46—which represented a remediation cost of $81.13 per square foot based on the footprint square footage of the house.

Subsequently, the Knauf Entities agreed to institute a pilot remediation program utilizing the remediation protocol formulated by the Court from the evidence in *Hernandez*. The Knauf pilot remediation program is now completed and has remediated more than 2,200 homes containing KPT Chinese drywall using the same general protocol. At the Court's urging, the parties began working together to monetize this program and make it available to a broader class of plaintiffs.

On December 20, 2011, the Knauf Entities and the PSC entered into a global, class Settlement Agreement ("Knauf Settlement Agreement"), which was designed to resolve all Knauf-related, Chinese drywall claims. In addition to the Knauf Settlement Agreement and after a jury trial in a bellwether case, numerous defendants in the chain-of-commerce with the Knauf Entities have entered into class settlement agreements, the effect of which settles almost all of the Knauf Entities' chain-of-commerce litigation. The total amount of the Knauf Settlement is approximately $1.1 billion.

## B.  The Bennett Class Action

The instant matter is a purported class action filed on November 13, 2014 by Elizabeth Bennett in the Northern District of Alabama. [1] Ms. Bennet raised claims on her own behalf and on the behalf of a nationwide class of similarly situated homeowners who allegedly suffered damages due to the presence of defective Chinese drywall in their homes. The Plaintiffs raised claims against the Knauf Entities for negligence, negligence per se, strict liability, breach of express and/or implied warranty, redhibition, violations of the Louisiana Products Liability Act, private nuisance, negligent discharge of a corrosive substance, unjust enrichment, violations of consumer protection laws, and equitable and injunctive relief and medical monitoring with respect to the manufacture of allegedly defective Chinese drywall. In January 2015, the Judicial Panel on Multidistrict Litigation transferred the case to the Eastern District of Louisiana and consolidated it with the *In re Chinese Manufactured Drywall Liability Litigation*, MLD 09-2047, currently pending before this Court.

On October 31, 2019, the Court granted leave for Plaintiffs to add several new Plaintiffs to the action. R. Doc. 22357. The case now involves 130 affected properties. On that date, the Court also extended many of the Case Management Order's deadlines. R. Doc. 22357. With discovery well underway, the Knauf Defendants have begun to file dispositive motions targeting the claims of several individual plaintiffs.

---

[1] On January 22, 2020, the Court granted Defendant's Motion to Deny Class Certification, finding that the predominance requirement of Rule 23(b)(3) was not satisfied. R. Docs. 22524, 22528. Specifically, the Court noted that the variety in the individual claims, which included personal injury and property damage claims, theories of liability, applicable state laws and defenses, and different damage calculations precluded the finding of predominance necessary to warrant class certification.

## II.   PENDING MOTIONS

### A.  Mardechria Charles McDonald [R. Doc. 22368]

Mardechria Charles McDonald's claims arise from the alleged presence of Chinese drywall at her former property located at 116 Dufresne Drive, Vacherie, Louisiana. McDonald purchased the property in 2007 and lived there until 2011. R. Doc. 22368-1 at 3. Between 2011 and 2016, the property was occupied by McDonald's husband and members of his family. R. Doc. 22368-1 at 3. The property has been vacant since 2016. R. Doc. 22368-1 at 4. McDonald contends she discovered the presence of Chinese drywall in 2014 when her son performed an inspection of the property. R. Doc. 22368-1 at 4. Her son is not a certified home inspector and a report was never written. R. Doc. 22368-1 at 4.

Defendants argue that summary judgment is appropriate because McDonald cannot prove that her property contains any Knauf-manufactured drywall. R. Doc. 22368-1 at 8. Defendants explain that there only exist a single photograph of the allegedly defective drywall in the home. More importantly, Defendants explain that the property was entirely demolished following a fire that McDonald's own husband is suspected of setting in 2016.[2] Defendants claim that even though the walls in the home remained intact after the fire, McDonald demolished the entire structure without preserving any evidence of Chinese drywall and then sold the property. R. Doc. 22368-1 at 9.

Defendants further argue that McDonalds' claim is barred by the doctrine of unclean hands. R. Doc. 22368-1 at 10. Defendants contend the destruction of the property "is directly related to

---

[2] Defendants explain that a fire broke out in the property on July 10, 2016. After an investigation by the Louisiana Department of Public Safety and Corrections, Ms. McDonald's husband was arrested for suspect arson in connection with the fire. McDonald's insurance provider initiated a lawsuit against her arising from alleged insurance fraud and the case was settled. R. Doc. 22368-1 at 6.

the merits of her claim," because the fire, allegedly an act of arson, makes it impossible to determine whether the property ever contained defective Knauf-manufactured drywall. R. Doc. 22368-1 at 11. Defendant argue McDonalds' entire case rests "solely on her own self-serving testimony." R. Doc. 22368-1 at 11.

Defendants also argue that summary judgment is warranted because McDonald failed to preserve evidence in compliance with the Court's various pretrial orders, failed to provide any corroborating evidence of damages, and knowingly and voluntarily assumed the risk of Chinese drywall by purchasing the property "as-is" without conducting an inspection. R. Doc. 22368-1 at 12–13.

McDonald opposes the motion, arguing that her damage claims present genuine issues of material fact best reserved for a jury and that Defendants have failed to demonstrate that she assumed the risk of Chinese drywall by purchasing her home "as is." R. Doc. 22576. McDonald also argues that Defendant's unclean hands allegations are "completely without merit" because the arson investigation was abandoned without criminal charges being brought against McDonald or any of her family members. R. Doc. 22576 at 30. Plaintiff explains that the only civil action brought against her was one for declaratory judgment. R. Doc. 22576 at 30.

### B. David and Candace Fozard [R. Doc. 22369]

David and Candace Fozard's claims arise from the alleged presence of Chinese drywall at their property located at 72685 Diamondhead Drive North, Diamondhead, Mississippi. R. Doc. 22369-1 at 3. The Fozards purchased the property in 2015 and filed their claims in 2018. R. Doc. 22369-1 at 3.

Defendants argue that the Fozards' claims are barred because they assumed the risk of Chinese drywall by purchasing their home without conducting a Chinese drywall inspection

6

despite being aware of the Chinese drywall issue in Mississippi. R. Doc. 22369-1 at 6. Further, Defendants argue the Fozards are not entitled to loss of use damages because they continue to live in the home. R. Doc. 22369-1 at 7-8. Lastly, Defendants contend the Fozards seek to "recover damages for interest payments on money that they have not yet borrowed or for loss of use during a renovation they have not yet undertaken." R. Doc. 22369-1 at 8. Defendants argue the Fozards cannot recover for these "speculative future damages." R. Doc. 22369 at 8.

The Fozards oppose the motion, arguing that their damage claims present genuine issues of material fact that preclude summary judgment. R. Doc. 22553. Further, the Fozards argue that Defendants have failed to demonstrate that they assumed the risk of Chinese drywall. Specifically, the Fozards argue that they did not assume the risk because they were not provided with a warning of the defect from Knauf, who should accordingly be equitably estopped from arguing that the Fozards were on notice of the defect. R. Doc. 22553 at 17.

**C. Nathan Junius [R. Doc. 22370]**

Nathan Junius' claims arise from the alleged presence of Chinese drywall in his property located at 6537 Marshall Foch Street, New Orleans, Louisiana. The property was allegedly repaired with Chinese drywall after Hurricane Katrina in 2006. R. Doc. 22370-1 at 3. Junius lived on the property from 2006 to 2015.

Defendants argue that summary judgment is warranted because Junius failed to preserve evidence in accordance with the Court's pretrial orders. R. Doc. 22370-1 at 8. Further, Defendants argue Junius has failed to present any evidence supporting his diminution in value claim. Specifically, Defendants allege that the property was under contract for sale for $550,000.00 in November 2015. The sale did not close due to the discovery of Chinese drywall. The property was subsequently remediated and appraised for $595,000.00. Defendants allege that despite this higher

7

appraisal, Junius sold the property to a friend for $416,500.00. Accordingly, Defendants argue that his diminution in value claim must fail because "the Property was appraised and valued higher following the remediation . . . at the time of sale . . . than it was prior to the alleged discovery when it underwent contract in 2015." R. Doc. 22370-1 at 9. Defendants further argue that Junius has provided no evidence to support his various claims. In particular, Defendant explain that although he makes a loss of use claim, he "had no reason to believe or know Chinese drywall was inside the Property." R. Doc. 22370-1 at 9. Additionally, he makes a claim for moving costs even though he moved out of the property before discovering the presence of Chinese drywall. R. Doc. 22370-1 at 9. With respect to remediation damages, Defendants note that several remediation costs are attributable to "upgrades" invoiced to the buyer rather than Junius, incurred after the sale, and/or are not supported by proof of payment. R. Doc. 22370-1 at 10.

Junius opposes the motion, arguing his loss of use claim is appropriate because Louisiana law does not require a plaintiff to vacate the property to make such a claim. R. Doc. 22574 at 26. Further, Junius argues his damage claims present genuine issues of material fact the preclude summary judgment and that any failure to comply with the pretrial orders is a question of spoliation that cannot be decided on a motion for summary judgment. R. Doc. 22574 at 25–27.

### D. Toni Macksey [R. Doc. 22371]

Toni Macksey's claims arise from the alleged presence of Chinese drywall in her property located at 4321 Lucerne Street, Metairie, Louisiana. The property was renovated after Hurricane Katrina and purchased by Macksey in 2012.

Defendants argue that Macksey's claims are barred because she assumed the risk of Chinses drywall when purchasing her property "as-is." R. Doc. 22371-1 at 7. Specifically, Defendants argue that Macksey waived the warranty against redhibitory defects, was notified of

the presence of Chinese drywall on the disclosure statement, and knew about the Chinese drywall problem, but nevertheless purchased the property "as-is." R. Doc. 22371-1 at 7. In particular, Defendants note that the property disclosure form provided to Macksey during the sale "had notations for 'Y' (Yes) and 'NK' (Not Known) under the line for 'Contaminated Drywall.'" R. Doc. 22371-1 at 4. Defendants argue that although defective drywall should have been discovered by a reasonably prudent buyer due to the smell of the property and the warnings on the disclosures, Macksey never completed a simple investigation. R. Doc. 22371-1 at 9.

Defendants argue that Mackey's claims are subject to a one-year prescriptive period. R. Doc. 22371-1 at 11. Defendants argue that her claims have prescribed because it was unreasonable for Macksey not to conclusively discover the defect shortly after moving into the property in March 2013. R. Doc. 22371-1 at 10. Macksey filed her claims on November 14, 2014. R. Doc. 22371-1 at 10. Defendants also argue that if these claims are not prescribed, they are otherwise barred by the LPLA's exclusive remedies provision. R. Doc. 22371-1 at 11.

Defendants additionally argue that Mackey's claims are barred by the subsequent purchaser doctrine, under which damage to property creates a personal right to sue that does not pass to subsequent purchasers without an express assignment or subrogation. R. Doc. 22371-1 at 12. Lastly, Defendants argue that Macksey failed to comply with the Court's pretrial orders and failed to provide any evidence supporting her loss of use claim. R. Doc. 22371-1 at 13-14.

Macksey opposes the motion, arguing that her claims are timely filed within the one-year prescriptive period. R. Doc. 22570 at 15. Macksey explains that prescription only begins to run what a plaintiff is on notice, or reasonably should be on notice, of the cause of action. R. Doc. 22570 at 15. Here, Macksey argues she filed within one year of discovering Chinese drywall in her home. She further argues that she cannot reasonably be found to have been on notice of the

defect based on the sulfur smell because in Louisiana, "there could be any number of environmental sources causing a smell." R. Doc. 22570 at 19. Macksey also argues that Knauf has a duty to warn downstream consumers of its defective product and should be estopped from arguing that any plaintiff was on notice due to Knauf's failure to provide such notice. R. Doc. 22570 at 21–24. Macksey additionally argues her loss of use claim is appropriate under Louisiana law because vacating the property is not a prerequisite to such a claim, and her other damage claims give rise to genuine issues of material fact that preclude summary judgment. R. Doc. 22570 at 24.

Further, Macksey argues her claims are not barred by the subsequent purchaser doctrine because the seller of the property specifically subrogated his or her rights to Macksey as part of the sale. R. Doc. 22570 at 32. Lastly, Macksey argues that she did not assume the risk of Chinese drywall because Defendants have presented no evidence suggesting she was aware of the specific risk of Chinese drywall when purchasing the property. R. Doc. 22570 at 33–34. Macksey also avers that she did, in fact, comply with the pretrial orders while self-remediating her home. R. Doc. 22570 at 34.

### E. Ronald and Catherine Martinez [R. Doc. 22372]

Ronald and Catherine Martinez's claims arise from the alleged presence of Chinese drywall in their property located at 6507 Memphis Street, New Orleans, Louisiana. R. Doc. 22372-1 at 3. The Martinezes purchased the home in 2006 and lived in it while their primary residence was being rebuilt following Hurricane Katrina. They began renting the property to others in 2009. R. Doc. 22372-1 at 3. The property was remediated in 2014. R. Doc. 22372-1 at 4.

Defendants argue that summary judgment is appropriate because the Martinez family failed to comply with the pretrial orders' preservation of evidence requirements while remediating their home. R. Doc. 22372-1 at 6. Defendants also argue that their claims have prescribed. In particular,

10

Defendants argue that Mr. Martinez was on notice of Chinese drywall in February 2014, when he saw a KPT board in his attic. Further, Defendants argue he should have discovered the defect shortly after moving into the property, when the family experienced strange smells and appliance failures. He filed his claims on January 31, 2016. R. Doc. 22372-1 at 8. R. Doc. 22372-1 at 8. Lastly, Defendants argue that the Martinez family has failed to provide any evidence supporting their loss of use claim. In particular, Defendants note that the family "lived comfortably in the Property" between 2006 and 2009. R. Doc. 22372-1 at 10.

The Martinez family opposes the motion, arguing that their claims are timely filed because their discovery of Chinese drywall occurred less than one year before filing suit. R. Doc. 22572 at 17. They further argue that Defendants should be estopped from arguing that they were on notice any earlier than a formal inspection because Chinese drywall is a latent defect and Defendants failed to provide a post-sale warning to downstream consumers. R. Doc. 22572 at 13–17. Additionally, the Martinez family argues that their loss of use and enjoyment claims are viable and that their other damage claims raise genuine issues of material fact that preclude summary judgment. R. Doc. 22572 at 27. They lastly argue that failure to comply with pretrial orders is a question of spoliation not appropriately resolved on a motion for summary judgment. R. Doc. 22572 at 28.

## F.   Ronald and Maria Natal [R. Doc. 22373]

Ronald and Maria Natal's claims arise from the alleged presence of Chinese drywall at their property located at 1489 Lakeshore Drive, Slidell, Louisiana. R. Doc. 22373-1 at 3. The Natals allegedly discovered the drywall during an inspection in 2015 and filed their claims on September 10, 2018. R. Doc. 22373-1 at 3.

11

Defendants argue that the Natals' claims are barred by the subsequent purchaser doctrine because the Natals did not receive a subrogation or assignment of rights from the seller of the property. R. Doc. 22373-1 at 6. Further, Defendants argue that Natals failed to preserve evidence in the manner required by this Court's pretrial orders when remediating their property. R. Doc. 22373-1 at 7. They additionally argue the Natals' claims have prescribed because they undisputedly discovered the presence of Chinese drywall on October 27, 2015, but filed their claims more than a year later on September 10, 2018. R. Doc. 22373-1 at 9. Lastly, Defendants argue that the Natals have only provided evidence of $3,200 in remediation damages, and that accordingly, any other damages for remediation costs should be denied. Further, they argue the Natals have provided no evidence to support their loss of use claim. R. Doc. 22373-1 at 11.

The Natals oppose the motion, arguing that prescription has been tolled under the *American Pipe* equitable tolling doctrine. R. Doc. 22571 at 7–11. They also argue that their claims for loss of use and enjoyment are viable under Louisiana law and that their other damage claims present genuine issues of material fact that preclude summary judgment. With respect to Defendant's subsequent purchaser argument, the Natals contend they were explicitly assigned and subrogated rights from the settler of the property. Further, they argue that they purchased the property directly from the builder and accordingly are not subsequent purchasers. R. Doc. 22571 at 27. Lastly, they argue that failure to comply with the pretrial orders is a question of spoliation that should not be addressed on a motion for summary judgment. R. Doc. 22571 at 30.

### G.  Peggy Powell [R. Doc. 22412]

Peggy Powell's claims arise from the alleged presence of Chinese drywall in her property located at 110 Laurel Lane, Pass Christian, Mississippi. R. Doc. 22412-1 at 3. Powell purchased the property in 2004, remediated it in 2006 following Hurricanes Katrina and Rita, resided in the

12

property from 2006 to 2014, and moved to Gulfport, Mississippi with her husband in 2014. R. Doc. 22412-1 at 3. Chinese drywall was discovered during a property inspection conducted in connection with listing the property for sale in October 2014. R. Doc. 22412-1 at 3. Powell filed her claims in August 2018.

Defendants argue Powell's claims are barred by Mississippi's applicable three-year statute of limitations because she discovered the drywall during an inspection in 2014 but only filed her claims in 2018. R. Doc. 22412-1 at 6. Further, Defendants argue that Powell failed to provide any evidence to support her claims for personal property loss or diminution in value. Specifically with respect to diminution in value, Defendants note that Powell "freely used the Property" between 2006 and 2014, and that she chose to move to Gulfport not because of the drywall but because she wanted to move in with her husband. R. Doc. 22412-1 at 7-8. Additionally, "she was able to consistently rent [the home] between 2014 and the present date." R. Doc. 22412-1 at 8.

Powell opposes the motion, arguing that she did not discover the presence of Chinese drywall until 2018 during a self-inspection. She believes Defendants are mischaracterizing the inspection that occurred in 2014, and that notice should not be imputed to her based on the potential buyer's decision not to close the sale, the tarnishing of metal, and the fact that she "heard the term 'Chinese drywall' from the potential buyer." R. Doc. 22552 at 14. Powell argues these occurrences are insufficient to put her on notice of Chinese drywall, especially in light of Defendant's failure to provide a post-sale warning to downstream consumers as Mississippi law requires. R. Doc. 22552 at 14–18. Accordingly, Powell argues that her claims were timely filed within three years of the conclusive discovery of Chinese drywall in 2018. Powell also argues that her damage claims raise genuine issues of material fact best resolved by a jury. R. Doc. 22552 at 18–23.

13

### H. Kim and Scott Armstrong [R. Doc. 22430]

Kim and Scott Armstrong's claims arise from the alleged presence of Chinese drywall in their property located at 42296 Forest Lane, Hammond, Louisiana. The Armstrongs purchased the property in 2005 and moved in the following year, following construction. Although they noticed a strange smell and appliance failures, they did not conduct a property inspection until April 2015. R. Doc. 22430-1 at 3-4.

Defendants argues the Armstrongs' claims are prescribed because they should have known about the defective drywall more than a year before they filed their claims in 2016. R. Doc. 22430-1 at 5-8. Further, Defendants argue the Armstrongs have provided no evidence to support their diminution in value and personal property claims. R. Doc. 22430-1 at 8.

The Armstrongs oppose the motion, arguing that their claims are timely filed because they only discovered the presence of Chinese drywall in April 2015 and filed their claims less than a year later. R. Doc. 22566 at 15. In particular, they argue that their delay in discovering the defect was reasonable because Chinese drywall is a latent defect that requires an expert's skill to conclusively identify. They also argue that Defendants should be estopped from arguing that any plaintiffs were on notice prior to a formal inspection because Defendants failed to provide a post-sale warning to downstream consumers as required by Louisiana law. R. Doc. 22566 at 14–17. Lastly, the Armstrongs argue their loss of use and enjoyment claim is viable because Louisiana law does not require a plaintiff to vacate the property to recover for such a claim, and that their other damage claims raise genuine issues of material fact that preclude summary judgment. R. Doc. 22566 at 17–20.

## I. Bank of Louisiana [R. Doc. 22431]

Bank of Louisiana's claims arise from the alleged presence of Chinese drywall at its property located at 35211 Beverly Hills Drive, Prairieville, Louisiana. R. Doc. 22431-1 at 3. Bank of Louisiana purchased the property in 2009 at a foreclosure sale and allegedly learned of the defective drywall during an inspection in connection with a pending sale in 2013. Bank of Louisiana hired a formal inspector in March 2015 and filed its claims on January 31, 2016. R. Doc. 22431-1 at 4.

Defendants argue that Bank of Louisiana's claims are prescribed because it knew, or should have known about the presence of Chinese drywall more than one year before they filed their claims. R. Doc. 22431-1 at 5. Defendants explain that Bank of Louisiana was told by neighbors that the property contained drywall and by the real estate agent that the property had a strange smell. A general inspection was allegedly performed in January 2013 and the Bank was notified by the home inspector that the property contained Chinese drywall. Accordingly, Defendants argue Bank of Louisiana was on notice of the defect by January 2013 at the latest. R. Doc. 22431-1 at 5. Defendants also argue that the defect should have been known to a reasonably prudent buyer because Bank of Louisiana purchased the property, valued at $500,000.00, for $246,666.67 without conducting any inspections. R. Doc. 22431-1 at 8. Further, Defendants argue Bank of Louisiana's claims are barred by the subsequent purchaser doctrine. R. Doc. 22431-1 at 9. Defendants lastly argue that Bank of Louisiana has provided no evidence to support its diminution in value and personal property claims. R. Doc. 22431-1 at 10.

Bank of Louisiana opposes the motion, arguing its claims are timely filed because it discovered the presence of Chinese drywall less than a year before filing its claims. R. Doc. 22575 at 16. It further argues Defendants should be estopped from arguing that any plaintiffs were on

15

notice prior to a formal inspection because Defendants failed to provide a post-sale warning to downstream consumers as required by Louisiana law. R. Doc. 22575 at 21–24. Bank of Louisiana argues its loss of use and enjoyment claims are viable and that the remainder of its damage claims raise genuine issues of material fact best reserved for the trier of fact. R. Doc. 22575 at 24–26.

**J.   Jacques and Sarah Brousseau [R. Doc. 22432]**

Jacques and Sarah Brousseau's claims arise from the alleged presence of Chinese drywall in their property located at 437 Delgado Drive, Baton Rouge, Louisiana. R. Doc. 22432-1 at 3. The Brousseaus purchased the property in 2012 and performed a property inspection in 2016 in connection with a potential sale. R. Doc. 22432-1 at 3-4.

Defendants argues the Brousseaus' claims are barred because they knowingly and voluntarily purchased the property "as is," thereby assuming the risk of Chinese Drywall. R. Doc. 22432 at 5. Defendants also argue the Brousseaus' claims are barred because the alleged defects should have been apparent to a reasonably prudent purchaser. R. Doc. 22432-1 at 6. Further, Defendants contend the claims are prescribed because the Brousseaus noticed a strange smell in the home and experienced appliance failures shortly after moving in in 2012, and accordingly should have investigated the problem before the formal inspection occurred in 2016. R. Doc. 22432-1 at 7. Defendant additionally argue the claims are barred by the subsequent purchaser doctrine because the Brousseaus never obtained an assignment or subrogation of rights from the property's seller. R. Doc. 22432-1 at 9-10. Lastly, Defendant contend the Brousseaus have failed to provide any evidence supporting their personal injury, personal property, and loss of use claims. R. Doc. 22432-1 at 10-11.

The Brousseaus oppose the motion, arguing that their claims are timely filed because they first discovered the defect in 2016, within one year of filing their claims. R. Doc. 22567 at 14–16.

They further argue Defendants should be estopped from arguing that any plaintiffs were on notice prior to a formal inspection because Defendants failed to provide a post-sale warning to downstream consumers as required by Louisiana law. R. Doc. 22567 at 21–24. They also argue their loss of use and enjoyment claims are viable and that the remainder of their damage claims raise genuine issues of material fact best reserved for the trier of fact. R. Doc. 22567 at 24–26. Lastly, they argue they did not assume the risk of Chinese drywall because the presence of the defect was not disclosed prior to the sale, and that they are not barred by the subsequent purchaser doctrine because they received an assignment and subrogation of rights. R. Doc. 22567 at 33.

### K.  Bonnie and Carl Cordier [R. Doc. 22436]

Bonnie and Carl Cordier's claims arise from the alleged presence of Chinese drywall in their property located at 11429 Maxine Drive, New Orleans, Louisiana. R. Doc. 22436 at 3. The drywall was allegedly installed in 2006, and the Cordiers allegedly experienced strange smells and appliance failures shortly thereafter. R. Doc. 22436 at 3. During their depositions, the Cordiers testified that they learned of the defect upon receiving a letter from InEx or a law firm alerting them to the fact that they had purchased Chinese drywall that might have been defective. R. Doc. 22436 at 3. They filed their claims on November 13, 2014. R. Doc. 22436-1 at 5.

Defendants argue the Cordiers' claims are prescribed because they should have been on notice of the defect more than one year before they filed their claims in 2014. The Cordiers oppose the motion, arguing their claims are not prescribed because they only discovered the defect on January 20, 2014. R. Doc. 22568 at 11. They further argue that Defendants should be estopped from arguing that any plaintiff was on notice prior to a formal inspection because Defendants did not comply with their post-sale duty to warn downstream consumers of the defect. They also argue that prescription was tolled by *American Pipe*. R. Doc. 22568 at 28-32.

**L.  The Van Tran and Chin Nguyen [R. Doc. 22442]**

The Van Tran and Chin Nguyen's claims arise from the alleged presence of Chinese drywall in their property located at 12912 Rosemont Street, Ocean Springs, Mississippi. R. Doc. 22442-1 at 3. Van Tran and Nguyen rented the property under they discovered the presence of Chinese drywall in 2018. R. Doc. 22442-1 at 4.

Defendants argue that partial summary judgment is appropriate because Van Tran and Nguyen have failed to provide any evidence to support their loss of use or enjoyment claims. R. Doc. 22442-1 at 5. In particular, Defendants explain that they have no claim for loss of enjoyment because they never lived on the property themselves, and similarly have no claim for loss of use because they continually rented the property from 2006 through the discovery of Chinese drywall in 2018. R. Doc. 22442-1 at 5. Defendants argue these claims are barred because Van Tran and Nguyen "chose not to enjoy the Property themselves and chose to stop renting the Property." R. Doc. 22442-1 at 5.

Van Tran and Nguyen oppose the motion, arguing that all their damage claims raise genuine issues of material fact that preclude summary judgment. R. Doc. 22556.

**M.  Catherine Baber [R. Doc. 22446]**

Catherine Baber's claims arise from the alleged presence of Chinese drywall in her property located at 121 Country Club Drive, Pass Christian, Mississippi. R. Doc. 22446-1 at 3. Charles Baber, Catherine Baber's husband, purchased the property in 2006. The alleged Chinese drywall was installed shortly thereafter during reconstruction of the home. The Babers lived in the property until 2013, when they moved to a larger property. R. Doc. 22446 at 3-4. Charles Baber passed away in 2015. Catherine Baber passed away in 2018, and her daughter, Lisa Lofton, is the executor of her mother's estate. R. Doc. 22446-1 at 4.

Defendants claims that Catherine Baber's claims extinguished when the property was sold at foreclosure. R. Doc. 22446-1 at 6. Further, Defendants argue that Baber has provided no evidence to support any of her damage claims. R. Doc. 22446-1 at 7. Specifically with respect to loss of use, Defendants argue that the Babers made the choice to move a larger property "due to [their] preference for having a larger house with more land acreage, and not due to the alleged presence of Chinese drywall." R. Doc. 22446-1 at 8. Defendants also argue Baber's claims are barred by Mississippi's applicable three-year statue of limitations because Baber was, or should have been on notice of the defective drywall shortly after moving into the property in 2006 and experiencing multiple appliance failures. R. Doc. 22446-1 at 9. Lastly, Defendants argue that there is no evidence that Catherine Baber was the owner of the home, as "the only evidence of prior ownership of the Property is the warranty deed transferring the Property to Charles Baber in 2006." R. Doc. 22446-1 at 10.

Lisa Lofton, as executor of Catherine Baber's estate, opposes the motion. R. Doc. 22573. She argues that the claims were timely filed and that Defendants should be estopped from arguing that any plaintiff was on notice prior to a formal inspection because Defendants did not comply with their post-sale duty to warn downstream consumers of the defect under Mississippi law. Further, Lofton argues all the damage claims raise genuine issues of material fact that preclude summary judgment.

### N. Michael and Nicole Norris [R. Doc. 22451]

Michael and Nicole Norris's claims arise from the alleged presence of Chinese drywall in their property located at 700 Arctic Fox Run, Madisonville, Louisiana. The Norrises purchased the property in 2006 as part of a new development. R. Doc. 22451-1 at 3. Michael Norris moved out in 2015 and Nicole Norris continues to live in the property. R. Doc. 22451-1 at 4. Nicole Norris

19

filed her claims on November 21, 2016 and Michael Norris joined the action on March 6, 2018. R. Doc. 2245-1 at 9.

Defendant argues that the Norrises' claims are barred by Louisiana's applicable statute of limitations because Michael Norris was aware that his neighbors, whose home was constructed at the same time as his, were involved in the Chinese drywall litigation due to the presence of Chinese drywall in their home by 2015 at the latest. R. Doc. 22451-1 at 4. Defendants also note that the Norrises underwent a general home inspection that detected signs of Chinese drywall. Nevertheless, the Norrises did not obtain a specialist to conclusively determine whether Chinese drywall was present. R. Doc. 22451-1 at 4. Defendants accordingly argue that there is insufficient evidence to determine that Knauf-manufactured drywall was on the property. Defendants also argue that the Norrises' damage claims are completely unsupported. R. Doc. 22451-1 at 10-11.

The Norrises oppose the motion, arguing that their claims are timely filed because they discovered the presence of Chinese drywall during a home inspection less than a year before filing their claims. R. Doc. 22569. Further, they argue their loss of use and enjoyment claim is viable under Louisiana law and that the rest of their claims raise genuine issues of material fact that preclude summary judgment.

### O. Joshua Kelley & Earnest Hamilton [R. Doc. 22523]

Joshua Kelley and Earnest Hamilton's claims arise from the alleged presence of Chinese drywall in a property located at 160 Blairs Circle, Pell City, Alabama. R. Doc. 22523 at 3. Joshua Kelley purchased the property in 2012 and Earnest Hamilton was subsequently added to the deed.

Defendants argue that Kelley and Hamilton's claims are barred claims for the property were previously filed in the Knauf Settlement and the Inex Settlement. R. Doc. 22523-1 at 5. Further, Defendants argue the claims are barred by the statute of limitations because Kelley and

Hamilton failed to file their claims within two years of discovering the defect as Alabama law requires. R. Doc. 22523-1 at 6-7. Defendants argue Kelley and Hamilton learned about the presence of Chinese drywall in 2013, after Hamilton's cousin told them the property might have Chinese drywall in it. R. Doc. 22523-1 at 7. The claims were filed in March 2018.

Kelley and Hamilton oppose the motion, arguing that their claims were filed within two years as required by Alabama law. They explain that they discovered the Chinese drywall on May 29, 2015 and filed their claims on January 30, 2016. R. Doc. 22577 at 11. Further, they argue that res judicata does not apply here because they have not received proof, absent a declaration from Brown Greer indicating that the prior property owner registered a claim in the Global Settlement, that a prior owner ever received funds or released his claim. R. Doc. 22577 at 17.

### III.    LAW & ANALYSIS

#### A.  Legal Standard – Motion for Summary Judgment

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). When assessing whether a dispute as to any material fact exists, the Court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008).

Under Federal Rule of Civil Procedure 56(c), the moving party bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*,

477 U.S. at 322. When the moving party has met its Rule 56(c) burden, "[t]he non-movant cannot avoid summary judgment . . . by merely making 'conclusory allegations' or 'unsubstantiated assertions.'" *Calbillo v. Cavender Oldsmobile, Inc.*, 288 F.3d 721, 725 (5th Cir. 2002) (quoting Little, 37 F.3d at 1075). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986). All reasonable inferences are drawn in favor of the nonmoving party, but a party cannot defeat summary judgment with conclusory allegations or unsubstantiated assertions. *Little*, 37 F.3d at 1075. A court ultimately must be satisfied that "a reasonable jury could not return a verdict for the nonmoving party." Delta, 530 F.3d at 399.

### B. Subsequent Purchaser Doctrine

Defendants seek summary judgment of the following Plaintiffs' claims on the grounds that they are barred by the subsequent purchaser doctrine: Toni Macksey, R. Doc. 22371, the Natals, R. Doc. 22373, Bank of Louisiana, R. Doc. 22431, and the Brousseaus, R. Doc. 22432.

Under Louisiana law, "an owner of property has no right or actual interest in recovering from a third party for damage which was inflicted on the property before his purchase, in the absence of an assignment or subrogation of rights belonging to the owner of the property when the damage was inflicted." *Eagle Pipe and Supply, Inc. v. Amerada Hess Corp.* 2010-2267 (La. 10/25/11), 79 So.3d 246, 256-57 (La. 2011). This concept, known as the subsequent purchaser doctrine, imagines that damage to property injures an owner's real interest in that property, creating a personal right to sue the offending tortfeasor. *Guilbeau v. Hess Corporation*, 854 F.3d 310, 312 (5th Cir. 2017). This personal right is not transferable without an express assignment or subrogation. *Id.*

22

In *Eagle Pipe and Supply, Inc. v. Amerada Hess Corp.*, the Louisiana Supreme Court concluded that the following language, included in the act of sale, did not constitute an express assignment or subrogation:

> [the sellers] do by these presents sell, transfer and deliver, with full guarantee of title and free from all encumbrances, and with full subrogation to all their rights and action of warranty against previous owners . . .

79 So. 3d at 281. Similarly in *Prados v. South Central Bell Telephone Co.*, the court found that an act of sale containing similar language did not constitute an express subrogation because it was "directed to the rights and actions of warranty against previous owners," and did not mention the specific cause of action at issue or the right to seek damages. 329 So. 2d 744, 750 (La. 1975).

The Court will grant summary judgment with respect to Toni Macksey, R. Doc. 22371, the Natals, R. Doc. 22373, and Bank of Louisiana, R. Doc. 22431, based on the subsequent purchaser doctrine. These plaintiffs are clearly subsequent purchasers[3]; however, the parties dispute whether the relevant acts of sale included express assignments of the right to sue for tort damages that would allow these plaintiffs to recover in the instant action. The Court has reviewed the relevant provisions of the acts of sale and concludes that these plaintiffs were not expressly assigned or subrogated these rights. For example, the Cash Sale conveying the property to Plaintiff Toni Macksey contained the following provisions:

> Vendor does by these presents, grant, bargain, sell, assign, convey, transfer, set over, abandon and deliver with all legal warranties and with full substitution and subrogation in and to all the rights and actions of warranty which he had or may have against all preceding owners and vendors . . . . [T]he said Vendors hereby moreover transfers unto the said Purchaser all the rights and actions of warranty to which Vendor is or may be entitled against all the former owners and proprietors

---

[3] Plaintiff argues that the Bank of Louisiana is not a subsequent purchaser because it was an assignee on a mortgage loan for the property and that rather than purchase the property, it "initiated foreclosure proceedings and took possession and ownership in the property as contemplated in the original mortgage." R. Doc. 22575 at 32. The Court finds that the subsequent purchaser doctrine is applicable because the Bank of Louisiana purchased the property during a Sheriff's sale and accordingly acquired an ownership interest in the property at that time.

of the property herein conveyed, hereby subrogating the said Purchaser to all the said rights and actions to be by Purchaser enjoyed and exercised in the same manner as they might have been by the said Vendor.

R. Doc. 22570-1. The Natals' Cash Sale contain similar language,[4] as do the Bank of Louisiana's judicial sale documents.[5] This language is strikingly similar to that in *Eagle Pipe* and *Prados*, quoted above. Because these acts of sale focus on the buyer's rights against former owners and proprietors, rather than on third parties, these do not constitute express assignment or subrogations. Accordingly, these claims are barred by the subsequent purchaser doctrine, and the Court will not consider Defendant's alternative arguments regarding these plaintiffs.

In contrast, the Court finds that the Brousseaus were expressly assigned the right to initiate the pending action. The Brousseaus' Cash Sale documents contain the following provision: "Seller expressly subrogates Buyer to all rights, claims and causes of action Seller may have arising from or relating to any hidden or latent defects in the Property." R. Doc. 22567-1 at 2. Unlike the language from *Eagle Pipe*, *Prados*, or their co-Plaintiffs' sale documents, this language expressly addresses the specific right the Brousseaus now exercise: the right to sue a third party for damages related to a latent defect in this home. Accordingly, the subsequent purchaser doctrine does not bar the Brousseaus' claims.

---

[4] The Natal's Cash Sale documents contain the following provision: "[Prior owner] does by these presents, grant, bargain, sell, convey, transfer, assign, set over and deliver, with all legal warranties and with full substitution and subrogation in and to all rights and actions of warranty which it has or may have against all preceding owners and vendors . . . ." R. Doc. 22571-1 at 2.

[5] Bank of Louisiana's judicial sale documents contain the following provision: "I, the said Sheriff, . . . do sell, transfer and convey the said aforedescribed property to the said Bank of Louisiana, together with any and all the rights, title and interest which the [prior owners], have in or to the aforesaid and described property to the said Bank of Louisiana . . . ." R. Doc. 22575-1 at 3.

C. **Statute of Limitations/Prescription**

Defendants seek summary judgment of the following remaining Plaintiffs' claims on the grounds that their actions are barred by the applicable statute of limitations: the Martinezes, R. Doc. 22372, Peggy Powell, R. Doc. 22412, the Armstrongs, R. Doc. 22430, the Brousseaus, R. Doc. 22432, the Cordiers, R. Doc. 22436, Catherine Baber, R. Doc. 22446, the Norrises, R. Doc. 22451, and Joshua Kelley and Terry Hamilton, R. Doc. 22577.

Under Louisiana law, the prescriptive period for products liability claims is one year. La. Civ. Code art. 3492. Typically, the prescriptive period begins to run from the day the injury or damage is sustained. *Carter v. Matrixx Initiatives, Inc.*, 391 Fed.Appx. 343, 344 (5th Cir. 2010). However, Louisiana law recognizes the doctrine of *contra non valentem*, under which the prescriptive period does not begin to run until a plaintiff has "actual or constructive knowledge of facts indicating to a reasonable person that he or she is the victim of a tort." *Bailey v. Khoury*, 04-0620, p. 10 (La. 1/20/05); 891 So. 2d 1268, 1276. A review of the applicable cases compels the conclusion that this occurs when the plaintiff has actual or constructive knowledge of a causal relationship between the object or product and the injury. The plaintiff does not need to be aware of exactly which legal claims and theories will be used in his case in order to be put on inquiry notice. Rather, "the prescriptive period commences when there is enough notice to call for an inquiry about a claim, not when an inquiry reveals the facts or evidence that specifically outline the claim." *Luckett v. Delta Airlines, Inc.*, 171 F.3d 295, 300 (5th Cir. 1999). "[T]he doctrine ... only suspends the running of prescription during the period of time when the action was not reasonably knowable by the plaintiff." *Bowers v. Orleans Parish School Board*, 694 So.2d 967, 973 (La. App. 4 Cir. 1996).

In contrast, under Mississippi law, claims for damage to real property are subject to a three-year statute of limitations. Miss. Code. Ann. § 15-1-49. When the damage involves a latent defect, the statute of limitations is tolled "until the plaintiff has discovered, or by reasonable diligence should have discovered, the injury." *Id.* § 15-1-49(2). A latent injury exists when the plaintiff is "precluded from discovering harm or injury because of the secretive or inherently undiscoverable nature of the wrongdoing in question . . . [or] when it is unrealistic to expect a layman to perceive the injury at the time of the wrongful act." *PPG Architectural Finishes, Inc. v. Lowery*, 909 So. 2d 47, 50 (Miss. 2005) (citing *Donald v. Amoco Prod. Co.*, 735 So. 2d 161, 168 (Miss. 1999)). The Mississippi Supreme Court has clarified that "causes of action accrue 'upon discovery of the injury, *not discovery of the injury and its cause.*'" *Ridgway Lane & Assocs., Inc. v. Watson*, 189 So. 3d 626, 629 (Miss. 2016) (quoting *Angle v. Koppers, Inc.*, 42 So.3d 1, 5 (Miss. 2010)); *see also Wayne Gen. Hosp. v. Hayes*, 868 So. 2d 997, 1001 (Miss. 2004) ("Moreover, to claim benefit of the discovery rule, a plaintiff must be reasonably diligent in investigating the circumstances surrounding the injury."). "Discovery of an injury 'is an issue of fact to be decided by a jury when there is a genuine dispute.'" *Phillips 66 Co. v. Lofton*, 94 So.3d 1051, 1059 (Miss. 2012) (quoting *Weathers v. Metro. Life Ins. Co.*, 14 So.3d 688, 692 (Miss. 2009)).

Under Alabama law, claims for "injury to the person or rights of another not arising from contract" are typically subject to a two-year statute of limitations. Ala. Code § 6-2-38(l). The limitations period is triggered by discovery of the damage, regardless of whether the plaintiff can identify the cause of the damage. *See Franklin v. Mitchell*, 87 So. 3d 573, 578-79 (Ala. Civ. App. 2011). Additionally, product liability claims involving latent defect must be filed within one year from the time at which the plaintiff discovers, or reasonably should have discovered the damage. Ala. Code § 6-5-502(b).

Plaintiffs collectively contend that Defendants should be estopped from arguing that Plaintiffs were on notice of the defect any earlier than a formal Chinese drywall inspection because Defendants failed to comply with their duty to warn. Louisiana Revised Statute 9:2800.57 governs a manufacturer's duty to warn under the Louisiana Products Liability Act. Subsection (C) imposes liability on a manufacturer who gains knowledge of a defect after the product has left the manufacturers control but fails to act with reasonable care in adequately warning the users of the product. La. R. S. 9:2800.57(C).

In contrast, Mississippi law does not recognize a post-sale duty to warn. *See Stevenson v. Cont'l Eagle Corp.*, 169 F. App'x 408, 409 (5th Cir. 2006); *Williams v. Ford Motor Co.*, No. 3:11CV110-NBB-SAA, 2012 WL 2990165, at *3 (N.D. Miss. July 20, 2012). Under Mississippi law, the manufacturer of a defective product may be found liable for failure to warn only if a plaintiff demonstrates, by the preponderance of the evidence, that the manufacturer "knew or in light of reasonably available knowledge should have known about the danger that caused the damage for which recovery is sought." Miss. Code. Ann. § 11-1-63. In other words, liability attaches when a manufacturer fails to warn of risks known at the time of sale. *See Murray v. Gen. Motors*, No. 3:10-CV-188-DPJ-FKB, 2011 WL 52559, at *2 (S.D. Miss. Jan. 7, 2011), *aff'd sub nom. Murray v. Gen. Motors, L.L.C.*, 478 F. App'x 175 (5th Cir. 2012) (holding that a manufacturer did not breach its duty by not recalling a defective vehicle because "Mississippi imposes no post-sale duty to warn").

In overseeing this MDL, the Court has become intimately familiar with the distribution process that brought Knauf-manufactured drywall into this country. Due to the size and geographic scope of the market and the complexity of the distribution network, the Court concludes that it would not have been reasonably possible for Knauf to identify all those to whom a post-sale duty

27

to warn may have been owed under Louisiana law. Further, the Court notes that Knauf did undertake an extensive notice program during the major settlement phase of this MDL to identify potential claimants and notify them of their right to participate in a settlement. Additionally, no such duty exists under Mississippi law. *See Stevenson*, 169 F. App'x 408. Accordingly, the evidence does not support Plaintiffs' estoppel argument.

Plaintiffs additionally argue that the applicable statute of limitations has been tolled by the equitable tolling principals of *American Pipe & Construction Co. v. Utah,* 414 U.S. 538 (1974). Defendant argues that *American Pipe* does not apply to subsequent class actions such as the instant case. In *American Pipe*, the United States Supreme Court held that a timely filed class action "tolls the running of the statute for all purported members of the class who make timely motions to intervene after the court has found the suit inappropriate for class action status." 414 U.S. at 553. However, the Supreme Court recently announced that this rule applies only to individual claims and not to successive class actions. *China Agritech, Inc. v. Resh*, 138 S. Ct. 1800, 1801 (2018) ("We hold that *American Pipe* does not permit a plaintiff who waits out the statute of limitations to piggyback on an earlier, timely filed class action."). Accordingly, *American Pipe* tolling does not apply.

Considering the foregoing, the Court will grant summary judgment based on statute of limitations and prescription grounds for the Martinezes, R. Doc. 22372, and Peggy Powell, R. Doc. 22412, because it is apparent that these Plaintiffs had actual knowledge of the presence of Chinese drywall in their properties more than one or three years, depending on the applicable law, before filing their claims.

The Martinezes remodeled their home in 2006 and filed their claims in 2016. Mr. Martinez testified that although they experienced several A/C failures and strange smells during that time,

28

they didn't attribute it to Chinese drywall until February 1, 2014. R. Doc. 22372-3 at 7, 15, 17. On that date, an air conditioning repairman arrived at the property and said, "you must have Chinese drywall." R. Doc. 22372-3 at 7. Mr. Martinez testified that he "went in the attic to prove to him that [he] didn't, and [he] moved the insulation aside and saw that it said China on it." R. Doc. 22372-3 at 8. Mr. Martinez's Supplemental Plaintiff Profile Form confirms that he first became aware of the presence of Chinese drywall in his property in February 2014. Mr. Martinez remediated the property between February and June 2014, R. Doc. 22372-3 at 19. He filed his claim on January 30, 2016.

The Martinezes take the position that their claims have not prescribed because they filed within one year of learning about the *Bennett* action. In support, they cite *La Plaque Corp. v. Chevron United States A. Inc.*, in which the court held that prescription begins to run not when a plaintiff begins to suffer a wrong but when they are on notice of "a reasonable basis to pursue a claim against a specific defendant." 638 So.2d 354, 356 (La. Ct. App. 1994). Here, the Martinezes' knowledge of the *Bennett* action specifically is irrelevant because they clearly knew about the presence of defective drywall and its manufacturer in 2014, more than a year before filing their claims. Specifically, their SPPF says, "We [d]iscovered "Knauf" and "China" stamped on the unfinished side of drywall after experiencing multiple AC system failures." R. Doc. 22572-3 at 3. The prescriptive period accordingly began to run when the Martinezes learned that they had defective Chinese drywall in their home because it was at that moment that they should have sprung to action to pursue a claim against Knauf.

Peggy Powell testified to learning that her home contained Chinese drywall during an inspection in 2014 but only filed her claims in 2018, in violation of Mississippi's three-year statute of limitations. Peggy Powell completed a Plaintiff Profile Form indicating that she became aware

29

of Chinese drywall in her property in 2018. During her deposition, she explained that this date was inaccurate, and that she first became aware of it during a home inspection in October 2014. R. Doc. 22412-3 at 6. She clarified that during the home inspection, she learned that the home had signs of Chinese drywall, but only learned that the drywall was attributable to Knauf on July 20, 2018. R. Doc. 22412-3 at 6–7. Later in her testimony, she reiterated that she learned her house contained Chinese drywall in 2014, and researched the subject on the Internet, but decided to deal with the problem later. R. Doc. 22412-3 at 13. The Court finds that Peggy Powell had notice of Chinese drywall in October 2014. Regardless of whether she identified Knauf as the manufacturer, she was substantially aware that her home had a problem, knew the nature of the problem and the ramifications it could have, yet chose not to pursue any legal claims or even investigate the possibility of doing so until four years later. Peggy Powell's claims are accordingly barred by Mississippi's applicable three-year statute of limitations.

The Court will not grant summary judgment on statute of limitations/prescription grounds with respect to the Armstrongs,[6] R. Doc. 22430, the Brousseaus,[7] R. Doc. 22432, Catherine

---

[6] The Armstrongs purchased their property in 2005 filed their claims in January 2016. Mr. Armstrong testified to hearing about Chinese drywall on the news, experiencing a strange smell and multiple appliance failures. R. Doc. 224301-1 at 6. They contend they only discovered Chinese Drywall during a home inspection in April 2015. The Court concludes that whether the Armstrongs should have discovered the defect earlier is a question for the trier of fact.

[7] The Brousseaus purchased their property in 2012 and filed their claims in 2016. They testified to experiencing a strange smell and successive appliance failures. They contend they only discovered Chinese drywall during a home inspection in 2016. R. Doc. 22432-1 at 4. The Court concludes that whether the Brousseaus should have discovered the defect earlier is a question for the trier of fact.

Baber,[8] the Cordiers,[9] R. Doc. 22436, R. Doc. 22446, the Norrises,[10] R. Doc. 22451, and Joshua

Kelley and Terry Hamilton.[11] Defendants have failed to demonstrate that any of these Plaintiffs

had actual knowledge of Chinese drywall more than one (in Louisiana),  two (in Alabama), or

three (in Mississippi), years before filing suit. Although Defendants cite Plaintiffs'

acknowledgement of strange smells or frequent appliance failures as evidence that Plaintiffs

should have discovered the defect, the Court considers the evidence in the light most favorable to

the non-moving party and concludes that whether the Plaintiffs should have discovered the defect

more than one, two, or three years before filing suit presents a genuine issue of material fact.

---

[8] Catherine Baber installed Chinese drywall in the property in 2006 and filed her claims in 2016. There is evidence that the Babers experienced multiple appliance failures while living in the property. R. Doc. 22446-1 at 4.

[9] The Cordiers installed the allegedly defective drywall in 2006 and filed their claims on November 13, 2014. The Cordiers completed a Plaintiff Profile Form on which they noted that they first became aware of Chinese drywall in their property in October 2013. Ms. Cordier testified to receiving a letter from InEx alerting them to the possibility of Chinese Drywall on their property sometime in 2012 or 2013. This letter included "the receipt showing [the Cordier's purchase of the material.]" R. Doc. 22436-4 at 3. Shortly after receiving the letter, the Cordier's scheduled a formal inspection of the property, which took place in January 2014. However, this letter has never been produced, and the Court is accordingly unable to determine whether its contents were sufficient to put the Cordiers on actual notice of their claim. Considering the evidence in the light most favorable to the Plaintiffs, the Court concludes that there exists a genuine question of material fact regarding whether the Cordier's acted with reasonable diligence in discovering the defective Chinese drywall.

[10] The Norrises purchased their home in 2006 as part of a new construction. Nicole Norris filed her claims in 2016 and Michael Norris filed in 2018. Sometime in 2015, Michael Norris was told that his neighbors, whose home was constructed at the same time as the Norrises', was part of the Chinese drywall litigation. R. Doc. 22451-1 at 4. The Norrises contend they discovered the presence of Chinese drywall during a home inspection in 2016. R. Doc. 22451-5 at 6. The Court concludes that whether the Norrises should have discovered the defect earlier is a question for the trier of fact.

[11] Joshua Kelley purchased his home in 2012 and Terry Hamilton was subsequently added to the deed. The claims were filed in March 2018. In his deposition, Kelley explained that his cousin mentioned to Hamilton that the house "may have Chinese-manufactured drywall." R. Doc. 22523-1 at 4. Whether Kelley acted reasonably upon learning this information is a question best reserved for the jury. Additionally, Hamilton prepared an invoice to remediate the property of Chinese drywall in December 2013. R. Doc. 22523-6 at 3. However, the deposition excerpts attached to these pleadings do not provide the Court with enough information to conclusively determine whether Hamilton had actual knowledge of Chinese drywall at that time. Although he responds affirmatively when asked whether a document he prepared was an "invoice to repair the home for Chinese drywall," he was also asked whether he "[found] out about Chinese drywall before preparing the invoice," to which he responded "No." R. Doc. 22523-6 at 3. Considering the evidence in the light most favorable to the nonmoving party, the Court concludes there are genuine issues of material fact regarding when Kelley and Hamilton learned about the Chinese drywall in their home that preclude summary judgment, at least with respect to the statute of limitations.

### D. Damages

Defendants seek summary judgment of the following remaining Plaintiffs' claims on the grounds that they have not provided sufficient evidence of their alleged damages: Mardechria Charles McDonald, R. Doc. 22368, the Fozards, R. Doc. 22369, Nathan Junius, R. Doc. 22370, the Armstrongs, R. Doc. 22430, the Brousseaus, R. Doc. 22432, The Van Tran and Chin Nguyen, R. Doc. 22442, and the Norrises, R. Doc. 22451.

Upon consideration of a motion for summary judgment, "if the movant . . . points out an absence of evidence to prove an essential element of the nonmovant's case on which the nonmovant bears the burden of proof at trial, the nonmovant must then present competent summary judgment evidence to support the essential elements of its claim and to demonstrate that there is a genuine issue of material fact for trial." *Seaboard Marine Ltd., Inc. v. Trinpak Packaging Co.*, No. 18-CV-22797, 2019 WL 4737697, at *4 (S.D. Fla. Sept. 26, 2019) (citing *National Ass'n of Gov't Employees v. City Pub. Serv. Board*, 40 F.3d 698, 712 (5th Cir. 1994)). Mere allegations, denials in the pleadings, and unsubstantiated assertions are not competent summary judgment evidence. *See Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998); *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). Indeed, "a complete failure of proof concerning an essential element of the nonmoving party's case renders all other facts immaterial." *Celotex*, 477 U.S. at 323, 106 S. Ct. 2548.

In the interest of justice and judicial efficiency, the Court will not grant summary judgment with respect to any individual damage claims, save for Nathan Junius' claims for moving expenses and loss of use or enjoyment. This claim is discussed in greater detail below. With respect to the other Plaintiffs named in this section, their loss of use or enjoyment claims in particular present

32

genuine issues of material fact that preclude summary judgment. Under Louisiana law, damages for loss of use or enjoyment may be awarded when a plaintiff is unable to use their property during a period of repair and when a plaintiff experiences diminished enjoyment of their property. *Vincent v. City of Iowa*, 2017-951 (La. App. 3 Cir. 4/11/18), 244 So. 3d 22, 32 (upholding an award for loss of use damages when a sewage overflow caused plaintiffs' home to smell like rotten eggs even after the home had been completely remediated because plaintiffs were traumatized and did not want to spend time indoors); *Adams v. Parish*, 43,047 (La. App. 2 Cir. 3/19/08), 978 So. 2d 1202, 1209 (upholding an award for loss of use and enjoyment where defendant's actions delayed and frustrated plaintiff's ability to use their property in the way they intended); *Smith v. Cutts*, 1999-253 (La. App. 3 Cir. 3/15/00), 759 So. 2d 851, 860 (upholding an award for loss of use and enjoyment when sewage from an adjoining lot accumulated on plaintiffs property and caused a terrible smell).

Similarly, under Mississippi law, "the loss of use and enjoyment of real property is a recognized property interest." *Johnson v. City of Canton*, 194 So. 3d 161, 169 (Miss. Ct. App. 2015). Damages for loss of use or enjoyment are recoverable when a plaintiff has been "prevented from using all or a portion of the property." *Lewis v. Kinder Morgan Se. Terminals, LLC*, No. CIV A 2:07CV47KS-MTP, 2008 WL 3540174, at *8 (S.D. Miss. Aug. 6, 2008). When considering a claim for loss of use or enjoyment, a plaintiff's individual, subjective fears and concerns are relevant. *King v. Cole's Poultry, LLC*, No. 114CV00088MPMDAS, 2017 WL 532284, at *4 (N.D. Miss. Feb. 9, 2017) (refusing to exclude testimony regarding Plaintiffs' fears and concerns regarding living in close proximity to poultry kept in confinement and concluding that a jury "is free to accept or reject" whether this evidence constitutes a loss of use or enjoyment). Considering

the evidence in the light most favorable to non-moving party, the Court concludes that whether Plaintiffs suffered a legally cognizable loss of use or enjoyment is a question for the trier of fact.

Whether to grant summary judgment with respect to Plaintiffs' allegedly unsupported pecuniary damage claims is a harder question. The Court recognizes that the evidence supporting Plaintiffs' pecuniary damage claims, such as damage to personal property, loss of rental income, diminution in value, and alternative living expenses, is often sparse. In many cases, Plaintiffs merely offer testimony discussing how they estimated the damages they seek or provide nothing but an itemized list of items and prices to support a personal property loss claim. With respect to diminution in value and remediation damages, Plaintiffs rely on a variety of calculation methods. The evidence provided to support these claims may indeed be insufficient to prevail at trial. Nevertheless, such evidence is sufficient to at least narrowly avoid summary judgment. It also appears to the Court as though these questions are better resolved by the remand courts that will ultimately try these cases, whether at a preliminary conference or by a Rule 50 motion at trial. The Court also notes that a Rule 50 motion will be an appropriate method of disposing of claims for which Plaintiffs are unable to demonstrate that their properties did in fact contain Knauf-manufactured drywall.

With respect to Nathan Junius, the Court will grant summary judgment as to his claims for moving costs and loss of use or enjoyment. During his deposition, Junius explained that he and his wife made the decision to move from the affected property to another house before learning that the affected property contained Chinese drywall. Accordingly, he conceded that "any costs associated with moving out" of the property were "unrelated to the Chinese drywall." R. Doc. 22370-3 at 12. Similarly, with respect to loss of use and enjoyment, Junius testified that he was not prevented from using or doing anything with the affected property prior to discovering Chinese

34

drywall in October 2015 because he "didn't even know that [he] had Chinese drywall in the home" until after he moved out and tried to sell it. R. Doc. 22370-3 at 12. He specifically noted that he did not have any problems related to Chinese drywall other than a difficulty selling the house after the defect was discovered. Because Junius incurred moving expenses independently of the defect and because a trier of fact could not conceivably determine that Junius lost the use or enjoyment of his property due to Chinese drywall, summary judgment is appropriate with respect to these specific claims.

In contrast, the Court is not prepared to grant summary judgment with respect to Junius' diminution in value claim. The Court notes that this claim may well be disposed of at trial because the evidence seems to suggest that Junius has not suffered from a diminution in value. Nevertheless, the Court concludes that there exist factual questions regarding the various appraisals and contract prices that are better answered by the trier of fact. Similarly, with respect to remediation damages, the Court concludes that the trier of fact is in a better position to consider whether Junius did in fact incur various expenses related to the remediation of his home that were allegedly invoiced to the property's buyer.

### E. Failure to Comply with Pre-Trial Orders

Defendants seek summary judgment of the following remaining Plaintiffs' claims on the grounds that they failed to comply with the Court's Pre-Trial Orders: Mardechria Charles, R. Doc. 22368, and Nathan Junius, R. Doc. 22370.

In an MDL such as the present litigation in which there are thousands of claims and over 1300 attorneys, it is necessary, if not essential, that the transferor court establish some guidelines so that the discovery aspect of the case can proceed in a fair, effective, and efficient manner. To accomplish this goal, the Court issued a number of Pretrial Orders governing the preservation of

35

physical evidence. In many pending motions, Defendants seek summary judgment on the basis that plaintiffs failed to comply with these Pretrial Orders.

"A district court has broad discretion in all discovery matters, and such discretion will not be disturbed ordinarily unless there are unusual circumstances showing a clear abuse." *Moore v. CITGO Ref. & Chemicals Co., L.P.*, 735 F.3d 309, 315 (5th Cir. 2013) (quoting *Kelly v. Syria Shell Petroleum Dev. B.V.*, 213 F.3d 841, 855 (5th Cir. 2000)). Federal Rule of Civil Procedure 41(b) authorizes a district court to dismiss a claim or impose other sanctions for failure to comply with discovery orders. However, because "dismissal with prejudice is an extreme sanction that deprives the litigant of the opportunity to pursue his claim," a dismissal under Rule 41(b) is proper only when (1) there is a clear record of delay or contumacious conduct by the plaintiff, and (2) lesser sanctions would not serve the interests of justice. *Callip v. Harris Cnty. Child Welfare Dep't*, 757 F.2d 1513, 1519 (5th Cir. 1985).

The Court declines to grant summary judgment with respect to any plaintiffs based on an alleged failure to comply with the Pretrial Orders. Although the Court recognizes that failure to strictly comply with the Pretrial Orders imposes a burden on Defendants, these Plaintiffs have not displayed the "clear record" of delay and misconduct necessary to warrant dismissal of their claims. In all of these cases, Plaintiffs discovered Chinese drywall in their homes after the Knauf Settlement was executed and the Pretrial Orders issued. Remediation was often performed on these properties before the Plaintiffs joined the instant lawsuit. Further, it is entirely conceivable that Plaintiffs discarded evidence before discovering that the damage was attributable to Chinese drywall or learning of their duty to preserve evidence. Accordingly, the Plaintiffs' failure to strictly comply with the applicable Pretrial Orders does not warrant dismissal of their claims.

**F.  Exclusive Remedies Provision of the LPLA**

To the extent the claims are not prescribed, Defendants seek summary judgment of the following Louisiana Plaintiffs' claims on the grounds that they are barred by the exclusive remedies provision of the Louisiana Products Liability Act: the Norrises, R. Doc. 22451, the Brousseaus, R. Doc. 22432, the Armstrongs, R. Doc. 22430, and the Cordiers, R. Doc. 22436. The LPLA "establishes the exclusive theories of liability for manufacturers for damage caused by their products." La. Rev. Stat. § 9:2800.52; *see Chevron USA, Inc. v. Aker Mar., Inc.*, 604 F.3d 888, 900 (5th Cir. 2010). In other words, "[a] plaintiff may not recover from a manufacturer for damage caused by a product on the basis of any theory of liability not set forth in the LPLA." *Jefferson v. Lead Indus. Ass'n, Inc.*, 930 F. Supp. 241, 244–45 (E.D. La. 1996), *aff'd*, 106 F.3d 1245 (5th Cir. 1997).

"Damages" under the LPLA includes "damage to the product itself and economic loss . . . only to the extent" such recovery is not viable under a claim for breach of the implied warranty against redhibitory defects. La. Rev. Stat. § 9:2800.53(5). Accordingly, the LPLA precludes all theories of liability seeking damages arising from a manufacturer's defective product except for redhibition claims involving damage to the product itself or economic loss. *Hollybrook Cottonseed Processing, LLC v. Carver, Inc.*, No. CIV.A.09-0750, 2010 WL 2195685, at *4 (W.D. La. May 28, 2010) ("[T]he plain language of the LPLA precludes any claim against a manufacturer for damages caused by its products, regardless of the theory of recovery, except for redhibition claims."); *see also C-Innovation, LLC v. Norddeutsche Seekabelewerke GMBH*, No. CIV.A. 10-4441, 2013 WL 990026, at *4 (E.D. La. Mar. 13, 2013) ("By virtue of the LPLA's definition of damages recoverable under the act, tort damages under article 2315 *et seq.* are recoverable from a product manufacturer only under the LPLA.").

These plaintiffs all seek to recover for damages caused by the alleged presence of defective Knauf-manufactured Chinese drywall in their homes. Accordingly, their claims fall directly within the scope of the LPLA, which governs the liability of manufacturers with respect to any damage caused by their products. Because the LPLA is the *exclusive* remedy for plaintiffs in this situation, the Court will grant summary judgment with respect to these Louisiana plaintiffs' non-LPLA claims and redhibition claims. However, the Court notes that the redhibition claims will only be viable to the extent the plaintiffs seek recovery for damage to the defective drywall itself or economic loss.

### G.  Waiver of Redhibitory Defects

Defendants seek summary judgment of the following remaining Plaintiffs' claims on the grounds that they purchased their properties "as is," thereby waiving the warranty against redhibitory defects: Mardechria Charles McDonald, R. Doc. 22368, and the Brousseaus, R. Doc. 22432.

Under Louisiana law, a "seller warrants the buyer against redhibitory defects or vices in the things sold." La. Civ. Code art. 2520. A redhibitory defect is one that "renders the thing useless, or its use so inconvenient that it must be presumed that a buyer would not have bought the thing had he known of the defect," or "diminishes its usefulness or its value so that it must be presumed that a buyer would still have bought it but for a lesser price." *Id.* Louisiana Civil Code article 2548 allows the parties to waive the warranty against redhibitory defects, provided that the waiver is clear and unambiguous, contained in the contract, and brought to the buyer's attention. *Royal v. Cook*, 2007-1465 (La. App. 4 Cir. 4/23/08), 984 So. 2d 156, 165.

Defendants argue that these Plaintiffs' redhibition claims must fail because they expressly waived the warranty against redhibitory defects when purchasing the properties. Plaintiffs do not

address this argument in response. With respect to Mardechria Charles McDonald, Defendants explain that during her deposition, McDonald conceded that she purchased the property "as is" without conducting an inspection. However, a review of the Act of Cash Sale for her property does not reveal that any waiver of the warranty against redhibitory defects was contemplated by the parties to the sale. R. Doc. 22368-6. Accordingly, the Court declines to find that Ms. McDonald waived this warranty.

In contrast, the Brousseau's Act of Sale contains a specific "as is" waiver provision under which the property was sold "without any warranties whatsoever as to fitness or condition, whether expressed or implied." R. Doc. 22567-1 at 1. Further, the Brousseau's expressly waived "the warranty imposed by Louisiana Civil Code Art. 2520, et seq., with respect to Seller's warranty against latent or hidden defects of the property sold." Even assuming that this warranty is sufficient to expressly waive the warranty against redhibitory defects typically provided by the Seller of the property, there is no indication that the Brousseau's waived the warranty with respect to third-parties to the sale of the home. Accordingly, the Court will not grant summary judgment as to either McDonald's or the Brousseaus' redhibition claims, to the extent they are not already precluded by the LPLA.

## H. Assumption of the Risk

Of the remaining Plaintiffs, Defendants seek summary judgment of the Fozards' claims on the grounds that they assumed the risk of Chinese drywall when purchasing the affected properties. R. Doc. 22369.

Under Mississippi law, a plaintiff who assumes the risk of his injuries is precluded from recovering from an otherwise liable manufacturer or seller. Assumption of the risk precludes liability where the plaintiff "freely and voluntarily chose to encounter a dangerous condition."

39

*Green v. Allendale Planting Co.*, 954 So. 2d 1032, 1041 (Miss. 2007). The question of whether a plaintiff assumed a particular risk is typically a question for the jury, but "in certain circumstances the facts may show as a matter of law that the plaintiff understood and appreciated the danger." *Herod v. Grant*, 262 So.2d 781, 783 (Miss. 1972). This occurs when the evidence demonstrates that the plaintiff appreciated the particular danger or "that the danger was so obvious that he must be taken to have known it." *Id.*

The Court declines to grant summary judgment based on assumption of the risk with respect to the Fozards. Based on the Fozard's deposition testimony, the Court does not believe that the danger of Chinese drywall was "so obvious" as to conclude, as a matter of law, that they assumed the risk of its presence when purchasing the property. Whether they reasonably should have recognized this specific risk is a question better answered by the trier of fact.

## I. Divestment of Legal and Equitable Interest After Foreclosure

Defendants seek summary judgment of Catherine Baber's claims on the grounds that she lost all legal and equitable interest in the affected property when it was sold in foreclosure. R. Doc. 22446-1 at 6-7.

Under Mississippi law, a debtor has legal interest in his property until default, at which time the mortgagee acquires title to the property and the right of possession, subject to the debtor's right to redeem the property prior to a foreclosure sale. A valid foreclosure sale, however, divests the debtor of legal and equitable interest in the foreclosed property. *Moore v. Marathon Asset Mgmt., LLC*, 973 So. 2d 1017, 1021 (Miss. Ct. App. 2008) (holding that a debtor was divested of all interest in a foreclosed property when the redemption period expired); *see also Pepper v. Homesales, Inc.*, No. CIV 1:08CV344-HSOJMR, 2009 WL 544141, at *5 (S.D. Miss. Mar. 3, 2009) (holding that a valid foreclosure sale "extinguished any rights Plaintiff had in the Property");

*Peoples Bank & Tr. Co. & Bank of Mississippi v. L & T Developers, Inc.*, 434 So. 2d 699, 708 (Miss.), *judgment corrected sub nom. Peoples Bank & Tr. Co. v. L. & T. Developers, Inc.*, 437 So. 2d 7 (Miss. 1983) (noting that a perfect foreclosure "cuts off the equity of redemption and any other rights in and to the property").

It is undisputed that Catherine Baber's property was sold in foreclosure in 2017. R. Doc. 22446-1 at 4. Under Mississippi law, she lost any interest in the property at that time, and accordingly does not have standing to bring these claims.

### J. Unclean Hands

Defendants seek summary judgment of Mardechria Charles McDonald's claims based upon the application of the unclean hands doctrine, which precludes a plaintiff from pursuing an action "if, in order to establish his cause of action, he must rely in whole or in part, on any illegal or immoral act or transaction to which he is a part." *Allvend, Inc. v. Payphone Commissions Co.*, 2000-0661 (La. App. 4 Cir. 5/23/01), 804 So. 2d 27, 30.

The Court declines to grant summary judgment on these grounds. Although suspected of arson, her husband was never prosecuted for the fire and the legal proceedings initiated against Ms. McDonald stemming from the incident were resolved out of court. Because it has not been established that McDonald's cause of action relies on "any illegal or immoral act," dismissal of her claims is not warranted at this stage.

### K. Res Judicata

Defendants seek summary judgment of Joshua Kelley and Terry Hamilton's claims on the grounds that that their claims have been adjudicated in a prior action. R. Doc. 22523. Specifically, Defendants argue Mr. Kelley timely filed claims for the affected property in both the Knauf Settlement and the InEx Settlement. R. Doc. 22523 at 6. Defendants provide an affidavit from Jake

41

Woody of Brown Greer, PLC, the Claims Administrator for the Knauf Settlement, verifying that the affected property participated in the Knauf and InEx Settlements. R. Doc. 22523-7 at 1.

Section 5 of the Knauf Settlement Agreement governs releases. In particular, Section 5.1 provides that a "released claim" is "any and all claims of any kind and nature whatsoever of a Class Member . . . arising out of . . . Chinese Drywall . . . including, but not limited to, any and all claims that a Class Member . . . or anyone claiming by or through [a Class Member], has, may have, or may have had." Section 5.2 further provides, "as of the Effective Date of the Settlement, each Class Member and any person or entity claiming by, through, and/or on behalf of a Class Member, hereby fully, finally, and forever releases, remises, waives, surrenders, foregoes, gives up, abandons, cancels, acquits and forever discharges any and all Released Claims." R. Doc. 16407-3 at 57. The Court approved the Settlement Agreement, including its release provisions, on February 7, 2013. R. Doc. 16750.

Oral argument revealed that this issue involves significant questions of material fact, namely whether Kelley himself or a previous owner filed claims for the affected property, and whether benefits were obtained and a release executed. In particular, the Court notes that Defendants argue that Kelley himself registered the property for both the Knauf and InEx Settlements, and while Kelley did discuss these settlements during his deposition, the deposition excerpts alone do not conclusively demonstrate this fact. Plaintiffs, on the other hand, appear to argue that a previous owner "did [nothing] more than register in the class settlement before the home was foreclosed." R. Doc. 22577 at 17. Therefore, the Court finds it appropriate to require Defendants to provide evidence, in the form of an executed release, affidavit, or other document, demonstrating that either Mr. Kelley or the prior owner did in fact participate in and receive funds

from the Knauf Settlement and release claims against the Participating Defendants, before ruling on the motion.

## IV.  CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that Defendant's Motion for Summary Judgment on Claims Asserted by Mardechria Charles McDonald, R. Doc. 22368, is **DENIED**;

**IT IS FURTHER ORDERED** that that Defendant's Motion for Summary Judgment on Claims Asserted by Candace and David Fozard, R. Doc. 22369, is **DENIED**;

**IT IS FURTHER ORDERED** that that Defendant's Motion for Summary Judgment on Claims Asserted by Nathan Junius, R. Doc. 22370, is **GRANTED IN PART** and **DENIED IN PART**. It is **GRANTED** to the extent Defendants seek summary judgment of Mr. Junius' claims for moving costs and loss of use or enjoyment. It is **DENIED** in all other respects.

**IT IS FURTHER ORDERED** that that Defendant's Motion for Summary Judgment on Claims Asserted by Toni Macksey, R. Doc. 22371, is **GRANTED**;

**IT IS FURTHER ORDERED** that that Defendant's Motion for Summary Judgment on Claims Asserted by Ronald and Catherine Martinez, R. Doc. 22372, is **GRANTED**;

**IT IS FURTHER ORDERED** that that Defendant's Motion for Summary Judgment on Claims Asserted by Ronald and Maria Natal, R. Doc. 22373, is **GRANTED**;

**IT IS FURTHER ORDERED** that that Defendant's Motion for Summary Judgment on Claims Asserted by Peggy Powell, R. Doc. 22412, is **GRANTED**;

**IT IS FURTHER ORDERED** that that Defendant's Motion for Summary Judgment on Claims Asserted by Scott and Kim Armstrong, R. Doc. 22430, is **GRANTED IN PART** and

43

**DENIED IN PART.** It is **DENIED** with respect to the Armstrongs' LPLA and redhibition claims. It is **GRANTED** with respect to all other claims.

**IT IS FURTHER ORDERED** that that Defendant's Motion for Summary Judgment on Claims Asserted by Bank of Louisiana, R. Doc. 22431, is **GRANTED**;

**IT IS FURTHER ORDERED** that that Defendant's Motion for Summary Judgment on Claims Asserted by Jacques and Sarah Brousseau, R. Doc. 22432, is **GRANTED IN PART** and **DENIED IN PART.** It is **DENIED** with respect to the Brousseaus' LPLA and redhibition claims. It is **GRANTED** with respect to all other claims.

**IT IS FURTHER ORDERED** that that Defendant's Motion for Summary Judgment on Claims Asserted by Bonnie and Carl Cordier, R. Doc. 22436, is **GRANTED IN PART** and **DENIED IN PART.** It is **DENIED** with respect to the Cordiers' LPLA and redhibition claims. It is **GRANTED** with respect to all other claims.

**IT IS FURTHER ORDERED** that that Defendant's Motion for Partial Summary Judgment on Claims Asserted by The Van Tran and Chin Nguyen, R. Doc. 22442, is **DENIED**;

**IT IS FURTHER ORDERED** that that Defendant's Motion for Summary Judgment on Claims Asserted by Catherine Baber and the Estate of Catherine Baber, R. Doc. 22446, is **GRANTED**;

**IT IS FURTHER ORDERED** that that Defendant's Motion for Summary Judgment on Claims Asserted by Michael and Nicole Norris, R. Doc. 22451, is **GRANTED IN PART** and **DENIED IN PART.** It is **DENIED** with respect to the Norrises' LPLA and redhibition claims. It is **GRANTED** with respect to all other claims.

**IT IS FURTHER ORDERED** that with respect to Defendant's Motion for Summary Judgment on Claims Asserted by Joshua Kelley & Earnest Hamilton, R. Doc. 22523, Defendants

44

provide evidence that Joshua Kelley or the prior owner of the Affected Property received Settlement Funds and released all claims against the Participating Defendants within two weeks of this Order's issuance. The Court will defer ruling on this motion until such evidence is provided.

New Orleans, Louisiana this 6th day of March 2020.

Eldon E. Fallon
United States District Court