UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN RE: CHINESE-MANUFACTURED DRYWALL　　*
PRODUCTS LIABILITY LITIGATION　　　　　　*
　　　　　　　　　　　　　　　　　　　　　　　*　　CIVIL ACTION
　　　　　　　　　　　　　　　　　　　　　　　*
　　　　　　　　　　　　　　　　　　　　　　　*　　MDL NO. 2047
　　　　　　　　　　　　　　　　　　　　　　　*
　　　　　　　　　　　　　　　　　　　　　　　*　　SECTION L (2)
　　　　　　　　　　　　　　　　　　　　　　　*
**THIS DOCUMENT RELATES TO:**　　　　　　　*
*Elizabeth Bennett, et al. v. Gebr. Knauf*　　*
*Verwaltungsgesellschaft, KG, et al.*, No. 14-2722　　*

## ORDER & REASONS

Pending before the Court is Defendants' Motion to Dismiss Claims Asserted by Vashti Alethia Locke-Esberry Under Rule 37, or, Alternatively, for Other Sanctions. R. Doc. 22375. Plaintiff opposes the motion. R. Doc. 22487. The Court heard oral argument on this motion on January 22, 2020. Having considered the applicable law and the parties' arguments, the Court now rules as follows.

### I.    BACKGROUND

From 2004 through 2006, the housing boom in Florida and rebuilding efforts necessitated by Hurricanes Rita and Katrina led to a shortage of construction materials, including drywall. As a result, drywall manufactured in China was brought into the United States and used to construct and refurbish homes in coastal areas of the country, notably the Gulf Coast and East Coast. Sometime after the installation of the Chinese drywall, homeowners began to complain of emissions of foul-smelling gas, the corrosion and blackening of metal wiring, surfaces, and objects, and the breaking down of appliances and electrical devices in their homes. *See In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, 894 F. Supp. 2d 819, 829–30 (E.D. La. 2012), *aff'd*, 742 F.3d 576 (5th Cir. 2014). Many of these homeowners also began to complain of various physical afflictions believed to be caused by the Chinese drywall.

These homeowners then began to file suit in various state and federal courts against homebuilders, developers, installers, realtors, brokers, suppliers, importers, exporters, distributors, and manufacturers who were involved with the Chinese drywall. As a result, many homebuilders also filed suit seeking to recoup their damages. Because of the commonality of facts in the various cases, this litigation was designated as a multidistrict litigation.  Pursuant to a Transfer Order from the United States Judicial Panel on Multidistrict Litigation on June 15, 2009, all federal cases involving Chinese drywall were consolidated for pretrial proceedings in MDL 09-2047 before this Court.  Since that date, numerous cases have been consolidated, involving thousands of individual claims; over 20,000 documents have been entered into the record, millions of documents have been exchanged in discovery, depositions have been taken in the United States and in China, and over thirty Pretrial Orders have been issued; the Court has appointed steering committees and liaison counsel for plaintiffs, homebuilders, insurers, installers, and manufacturers, and it has presided over monthly status conferences, hearings, and several bellwether trials.

The Chinese drywall at issue was largely manufactured by two groups of defendants:  (1) the Knauf Entities and (2) the Taishan Entities.  The litigation has focused upon these two entities and their downstream associates and has proceeded on strikingly different tracks for the claims against each group.

### A.  The Knauf Defendants

The Knauf Entities are German-based, international manufacturers of building products, including drywall, whose Chinese subsidiary, Knauf Plasterboard (Tianjin) Co., Ltd. ("KPT"), advertised and sold its Chinese drywall in the United States.  The Knauf Entities are named defendants in numerous cases consolidated with the MDL litigation and litigation in state courts.

The Knauf Entities first entered their appearance in the MDL litigation on July 2, 2009. Thereafter, the Court presided over a bellwether trial in *Hernandez v. Knauf Gips KG*, Case No. 09-6050, involving a homeowner's claims against KPT for defective drywall. The Court found in favor of the plaintiff family in *Hernandez*, issued a detailed Findings of Fact and Conclusions of Law, and entered a Judgment in the amount of $164,049.64, including remediation damages in the amount of $136,940.46—which represented a remediation cost of $81.13 per square foot based on the footprint square footage of the house.

Subsequently, the Knauf Entities agreed to institute a pilot remediation program utilizing the remediation protocol formulated by the Court from the evidence in *Hernandez*. The Knauf pilot remediation program is now completed and has remediated more than 2,200 homes containing KPT Chinese drywall using the same general protocol. At the Court's urging, the parties began working together to monetize this program and make it available to a broader class of plaintiffs.

On December 20, 2011, the Knauf Entities and the PSC entered into a global, class Settlement Agreement ("Knauf Settlement Agreement"), which was designed to resolve all Knauf-related, Chinese drywall claims. In addition to the Knauf Settlement Agreement and after a jury trial in a bellwether case, numerous defendants in the chain-of-commerce with the Knauf Entities have entered into class settlement agreements, the effect of which settles almost all of the Knauf Entities' chain-of-commerce litigation. The total amount of the Knauf Settlement is approximately $1.1 billion.

B. The Bennett Class Action

The instant matter is a class action filed on November 13, 2014 by Elizabeth Bennett in the Northern District of Alabama. Ms. Bennet raised claim on her own behalf and on the behalf of a

3

nationwide class of similarly situated homeowners who allegedly suffered damages due to the presence of defective Chinese drywall in their homes. The plaintiffs raised claims against the Knauf entities for negligence, negligence per se, strict liability, breach of express and/or implied warranty, redhibition, violations of the Louisiana Products Liability Act, private nuisance, negligent discharge of a corrosive substance, unjust enrichment, violations of consumer protection laws, and equitable and injunctive relief and medical monitoring with respect to the alleged manufacture of defective Chinese drywall. In January 2015, the Judicial Panel on Multidistrict Litigation transferred the case to the Eastern District of Louisiana and consolidated it with the *In re Chinese Manufactured Drywall Liability Litigation*, MLD 09-2047, currently pending before this Court.

On October 31, 2019, the Court granted leave for Plaintiffs to file a sixth amended complaint, which adds several new Plaintiffs to the action. R. Doc. 22357. The action now involves 130 affected properties. On that date, the Court also extended many of the Case Management Order's deadlines. R. Doc. 22357. With discovery well underway, the Knauf Defendants have begun to file dispositive motions targeting the claims of several individual plaintiffs.

II.     **PENDING MOTION**

Ms. Locke-Esberry's claims arise out of the alleged presence of Chinese drywall in her property located at 962 SW Haas Avenue, Port St. Lucie, Florida 34953. Despite owning property in Florida, Ms. Locke-Esberry lives in Silver Springs, Maryland. Defendants seek dismissal of Ms. Locke-Esberry's claim under Rule 37 or, alternatively, sanctions, because Ms. Locke-Esberry has allegedly failed to facilitate the inspection of the property on two occasions and has frustrated attempts to take her deposition. R. Doc. 22375. In particular, Defendants explain that a property inspection was originally scheduled for June 19, 2019, but "at the confirmed time . . . Locke-

Esberry was not present to provide access to the Property, not was a representative on her behalf available." R. Doc. 22375-1 at 4. The inspection was rescheduled for July 24, 2019, but Plaintiff's counsel cancelled the inspection on July 23, 2019. R. Doc. 22375-1 at 4. Defendants further explain that they have been unable to successfully depose Ms. Locke-Esberry. A deposition originally scheduled for August 5, 2019 was cancelled by Plaintiff's counsel before it began, and during a second deposition in Maryland on September 5, 2019, Ms. Locke-Esberry forgot her reading glasses and was unable to review any documents. R. Doc. 22375-1 at 5. The deposition was accordingly canceled by Defendants. No further inspections or depositions have been scheduled.

Ms. Locke-Esberry opposes the motion. R. Doc. 22487. She argues that Defendants are barred from seeking dismissal or other sanctions because they did not first file a motion for an order compelling disclosure or discovery with respect to this matter. Specifically, she argues "[n]o attempt was made in good faith to remedy the alleged problems Defendants contend should now lead to . . . dismissal of Plaintiff's claims." R. Doc. 22487 at 22. Ms. Locke-Esberry further argues that the problems involving the property inspection should be excused because the property was occupied by a tenant, whose schedule was difficult to coordinate. R. Doc. 22487 at 22. Additionally, she explains that it was Defendants' choice to end her second deposition without allowing her the opportunity to at least attempt to obtain alternative glasses. R. Doc. 22487 at 23.

### III.    LAW & DISCUSSION

Rule 37 authorizes courts to sanction parties that fail to adequately participate in the discovery process. Fed. R. Civ. P. 37. In addition, Rule 30 allows a court to sanction a party who "impedes, delays, or frustrates the fair examination of the deponent." Fed. R. Civ. P. 30(d)(2). The courts discretion in this matter, although broad, is not unlimited. When imposing sanctions, the court must be satisfied that the sanction is just and "specifically related to the particular 'claim'

5

which was at issue in the order to provide discovery.*" Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 707, 102 S. Ct. 2099, 2107, 72 L. Ed. 2d 492 (1982). Further, in the Fifth Circuit, courts must consider whether the sanction furthers Rule 37's important goal of punishing misbehaving parties and deterring similar conduct in the future. *Chilcutt v. United States*, 4 F.3d 1313, 1321 (5th Cir. 1993). Sanctions available to the court include, among others, striking the pleadings, staying proceedings, and dismissal with prejudice. Dismissal with prejudice, however, is a severe sanction only available where the refusal to comply is the product of bad faith or willfulness and where a less drastic sanction would not further Rule 37's goal of deterrence. *Batson v. Neal Spelce Assocs., Inc.*, 765 F.2d 511, 514 (5th Cir. 1985). In contrast, "[l]esser sanctions do not require a finding of willfulness." *Smith & Fuller, P.A. v. Cooper Tire & Rubber Co.*, 685 F.3d 486, 488 (5th Cir. 2012). In addition to, or instead of awarding sanctions, the court must order "the party failing to act, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(d)(3).

Although Plaintiff takes the position that sanctions are inappropriate at this juncture because Defendants have not filed a motion to compel prior to seeking sanctions, such a procedure is not required by the plain language of either Rule 37 or Rule 30. Under Rule 37(a), a party may file a motion to compel in certain circumstances. Rule 37(d) independently authorizes a court to impose sanctions for a party's failure to attend its own deposition or respond to an inspection request. Subsection (d) does not reference the need to file a motion to compel prior to requesting sanctions, and the Court finds that requiring the filing of a motion to compel in this case would create additional costs to the parties and hamper judicial efficiency. Subsection (d) does, however, require the movant to certify that the parties attempted to resolve the dispute in good faith before

requesting the court's intervention, and Plaintiff argues that such an attempt was not made by Defendants. R. Doc. 22487 at 16. Nevertheless, the Court notes that the two depositions and two property inspections were scheduled by the parties. When the first deposition and inspection were cancelled, the parties conferred and arranged alternative dates. Clearly, the parties have attempted to resolve the scheduling dispute in good faith before seeking this Court's help.

Here, Mr. Locke Esberry cancelled her first deposition and although she attended her second deposition, she forgot her glasses at home and was unable to be deposed. Similarly, two property inspections were scheduled by the parties, but the first was unable to be completed due to a lack of response from the tenant and the second was cancelled shortly before it began for similar reasons. Ms. Locke-Esberry remains un-deposed and her property un-inspected.

The Court concludes that this behavior significantly frustrates Defendants' attempt to conduct discovery in this matter and prejudices Defendants' ability to develop a defense to Ms. Locke-Esberry's claims. However, the Court does not find dismissal to be an appropriate sanction here because the record does not indicate that Ms. Locke-Esberry or her counsel acted in bad faith or willfully attempted to frustrate the discovery process. With respect to the property inspection, the Court recognizes that the property is occupied by a tenant over whom Ms. Locke-Esberry has little control. The reasons for the cancellation of Ms. Locke-Esberry's first deposition and the early termination of her second are somewhat harder to justify. The Court is sympathetic to the fact that schedules change and that mistakes are made. However, these errors and oversights came at a substantial cost to Defendants, both in terms of time and money. Accordingly, the Court will exercise its discretion under Rule 37(d) and particularly Rule 30(g) to impose "an appropriate sanction" on a party that "impedes, delays, or frustrates the fair examination of the deponent." Fed.

R. Civ. P. 30(d)(2). The Court concludes that an appropriate sanction in this matter is to order the parties to arrange a third deposition and inspection of Plaintiff's property at Plaintiff's cost.

### V. CONCLUSION

Considering the foregoing,

**IT IS ORDERED** that Defendants' Motion to Dismiss Claims Asserted by Vashti Alethia Locke-Esberry Under Rule 37, or, Alternatively, for Other Sanctions, R. Doc. 22375, is **GRANTED** in part and **DENIED** in part.

It is **GRANTED** to the extent Defendants' seek the imposition of sanctions. **IT IS ORDERED** that the parties arrange a third deposition and inspection of Plaintiff's property within one month of this order's issuance. Plaintiff shall bear the costs of the deposition and inspection.

It is **DENIED** to the extent Defendants' seek dismissal of Ms. Locke-Esberry's claims.

New Orleans, Louisiana this 10th day of March, 2020.

_____
Eldon E. Fallon
United States District Judge