Plaintiff Profile Form - Residential Properties

## UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF LOUISIANA

IN RE: CHINESE MANUFACTURED DRYWALL     **MDL NO. 2047**

PRODUCTS LIABILITY LITIGATION     **SECTION: L**

THIS DOCUMENT RELATES TO: ALL CASES     **JUDGE FALLON**

    **MAG. JUDGE WILKINSON**

| For Internal Use Only |
|---|
| File Number |
| Date Received |

This Plaintiff Profile Form must be completed and signed by every person making a claim in this litigation using one form per affected address. In completing this Profile Form, you are under oath and must provide information that is true and correct to the best of your knowledge. If you cannot recall all of the details requested, please provide as much information as you can and expressly indicate "unknown" in the space provided when not known. You must supplement your responses if you learn they are incomplete or incorrect in any material respect. You may and should consult with your attorney if you have any questions regarding completion of this form. If you are completing the form for someone who has died or who cannot complete the Profile Form, please answer as completely as you can for that person.

The questions and requests for production contained within this Profile Form are non-objectionable and shall be answered without objection. By answering this Profile Form, you are not waiving the attorney work product and/or attorney client privileges. Similarly, by disclosing the identity of consultants, such consultants may remain non-testifying experts and are subject to all protections afforded by law.

To the extent that the form does not provide enough space to complete your responses, you may attach as many sheets of paper as necessary. All photographs produced in response to this form shall be in color and attached to or printed on 8 1/2" x 11" white paper.

---

**Section I. Property information**

**Name Property Owner**: Michael C. Ginart, Jr. and

**Address of Affected Property**: Alice J. Ginart

2104 Olivia Street

Meraux, LA 70075

**Is this Property:** (Residential)   Commercial   Governmental

**Name of Person Completing this Form**: Michael & Alice Ginart

**Is above your primary residence?** (Yes) No

**Mailing Address (if different)**: _____

**Phone**: ( 504 ) 373 - 6537

* If your response is commercial or governmental you should not fill out the remaining questions, you will receive a follow up form at a later date.

**Circle one:** (Owner-Occupant)   Owner Only   Renter-Occupant

**Represented By**: Jimmy Doyle

**Address**: DOYLE LAW FIRM, PC

2100 Southbridge Pkwy, #650

Birmingham, AL 35209

**Phone**: ( 205 ) 533 - 9500

**Case No. /Docket Info**: Bennett, et al. v. Gebrueder Knauf, et al, 14-cv-2722

---

**Section II. Insurance Information**

**Homeowner/ Renter Insurer**:

State Farm Fire and Casualty Company

**Policy #**: 18 EA 144B-3

**Agent**: Kert Leblanc Insurance Agency, Inc.

**Address**: 12222 State Farm Blvd.

Tulsa, OK 74146

**Phone**: ( 504 ) 454 - 6036

+ Attach Copy of Insurance Declaration Page

---

**Section III. Claimant Information**

| Name of Claimant | Dates Occupied | | Gender | Date of Birth | Are you claiming personal injuries?* | Identify Claimant Status as an Owner-Occupant, an Owner Only, or an Occupant or Renter Only |
|---|---|---|---|---|---|---|
| | Move-in | Leave | | | Circle One | |
| Michael C. Ginart, Jr. | / / | / / | (M) / F | / / | Yes (No) | Owner - Occupant |
| Alice J. Ginart | / / | / / | M / (F) | / / | Yes (No) | Owner - Occupant |
| | / / | / / | M / F | / / | Yes No | |
| | / / | / / | M / F | / / | Yes No | |
| | / / | / / | M / F | / / | Yes No | |
| | / / | / / | M / F | / / | Yes No | |
| | / / | / / | M / F | / / | Yes No | |
| | / / | / / | M / F | / / | Yes No | |
| | / / | / / | M / F | / / | Yes No | |
| | / / | / / | M / F | / / | Yes No | |

* Personal injuries include claims for mental anguish and medical monitoring.



EXHIBIT
1

Plaintiff Profile Form - Residential Properties

## Section IV. Inspection Information

1.0. Have you, or has anyone on your behalf, conducted an inspection into whether Chinese-manufactured drywall is present in your home?  (Yes)  No

1.1. If "Yes" to Question 1.0 Section IV. Who conducted the inspection?   Colonial Inspection Services

1.2. When did the inspection take place?   11 /19/ 13

2.0. Has a determination been made that Chinese-manufactured drywall is present in your home?  (Yes)  No

2.1. If "Yes" to Question 2.0. Section IV. Who made this determination?   Colonial Inspection Services

2.2. When was this determination made?   11 /19/ 13

## Section V. Drywall Information

| Drywall Manufacturer | Markings on Drywall | Location in Home |
|---|---|---|
| Knauf Plasterboard Tianjin | KNAUF TIANJIN CHINA ASTM C 36 | Ceiling & Walls |
| | | |
| | | |

## Section VI. Home Information

| | | | Yes | No |
|---|---|---|---|---|
| Approx. Sq. Ft. of House: | 6,122 | | | |
| Estimated Sq. Ft. of Drywall | ----------- | Occupied | X | |
| Height of interior Walls | 9'+ | Year-round | X | |
| Number of Bedrooms: | 8 | Summer | | |
| Number of Bathrooms: | 5 | Winter | | |

### Plumbing System

| | Blackening or Corrosion? | | |
|---|---|---|---|
| | Yes | No | N/A |
| PVC/ CPVC/ Plastic Piping | | X | |
| Copper Piping | X | | |
| Copper Fixtures | X | | |
| Other Fixtures | X | | |
| Were repairs made to the plumbing system? | | X | |
| Dates: | | | |

### Electrical System

| | Blackening or Corrosion? | | |
|---|---|---|---|
| | Yes | No | N/A |
| Receptacles | X | | |
| Switches | X | | |
| Main Panel | X | | |
| 2nd Panel | | | X |
| Exposed Copper Wires | X | | |
| Were repairs made to the electrical system? | | X | |
| Dates: | | | |

+ Attach Copy of Floor Plan on 8 1/2" X 11" paper

## Section VII. Construction/Renovation Information

Date Range for New Home Construction: (Month/Day/Year)

| | | | |
|---|---|---|---|
| Start Date: | / / | Completion Date | / / |
| Move In Date: | / / | Date Acquired Home | / / |

Date Range for Renovations: (Month/Day/Year)

| | | | |
|---|---|---|---|
| Start Date: | / / | Completion Date | / / |
| Move In Date: | / / | | |

| Renovation(s) | Yes | No | N/A |
|---|---|---|---|
| First Floor: 1/2 Wall of drywall replaced | | | |
| First Floor: Full Wall of drywall replaced | | | |
| Second Floor: Any drywall replaced | | | |

## Section VIII. Homebuilder/ General Contractor/ Developer Information

Homebuilder/ General Contractor/ Developer's Name:

Address:

Phone:  (      )      -

+ Attach Copy of Construction/Renovation Contract
+ Attach Copy of New Home Warranty Declaration

## Section IX. Drywall Installer

Drywall Installer's Name:

Address:

Phone:  (      )      -

## Section X. Drywall Supplier

Drywall Supplier's Name:   Interior Exterior Building Supply

Address:   P.O. Box 4002
New Orleans, LA  70178

Phone:  ( 504 )  488  -  1998

Plaintiff Profile Form - Residential Properties

**Section XI. Verification of Plaintiff Profile Form**

I declare under penalty of perjury under the laws of the United States of America and pursuant to 28 U.S.C. § 1746 that all information provided in this Plaintiff Profile Form is true and correct to the best of my knowledge, and that I have supplied all of the documents requested in this declaration to the extent that such documents are in my possession, custody or control.

| | | | |
|---|---|---|---|
| Claimant's Signature | Date Signed | Claimant's Signature | Date Signed |
| Claimant's Signature | Date Signed | Claimant's Signature | Date Signed |
| Claimant's Signature | Date Signed | Claimant's Signature | Date Signed |



**StateFarm** State Farm Fire and Casualty Company
12222 State Farm Boulevard
Tulsa, OK 74148-9402

L-22- 1906-F690   H W F

GINART, MICHEAL C JR &
ALICE J
2104 OLIVIA ST
MERAUX LA 70075-2654

Location: Same as Mailing Address

SFPP No: 0094908022

**Loss Settlement Provisions (See Policy)**
A1 Replacement Cost - Similar Construction
B1 Limited Replacement Cost - Coverage B

**Forms, Options, and Endorsements**
| | |
|---|---|
| Homeowners Policy | FP-7955 |
| Increase Dwlg up to $175,580 | OPT ID |
| Ordinance/Law 10%/ $87,790 | OPT OL |
| Jewelry and Furs $1,500/$2,500 | OPT JF |
| Hurricane Duration Deductible | FE-5494.1 |
| Homeowners Policy Endorsement | FE-3461 |

Protection Class: 3  Zone: 33  Construction: Masonry Veneer

Please help us update the data used to determine your premium. Contact your agent with the year each of your home's utilities (heating/cooling, plumbing, or electrical) and roof were last updated.

---

**RENEWAL CERTIFICATE**

POLICY NUMBER
Homeowners Policy
APR 20 2013 to APR 20 2014

BILLED THROUGH SFPP

**Coverages and Limits**

**Section I**
| | | |
|---|---|---|
| A Dwelling | | $877,900 |
|   Dwelling Extension | Up To | 87,790 |
| B Personal Property | | 658,425 |
| C Loss of Use | | Actual Loss Sustained |

**Deductibles - Section I**
| | |
|---|---|
| Other Losses 1.00% | 8,779 |
| Hurricane Duration 5.00% | 43,895 |

**Section II**
| | |
|---|---|
| L Personal Liability | $100,000 |
|   Damage to Property of Others | 500 |
| M Medical Payments to Others (Each Person) | 5,000 |

**Annual Premium** $7,620.00
Citizens Emer-FAIR 284.98

**Premium Reductions**
| | |
|---|---|
| Utility Rating Credit | 163.00 |
| Home/Auto Discount | 2,215.00 |
| Claim Record Discount | 2,498.00 |

Inflation Coverage Index: 204.1

Number of Families: 01

---

Thanks for letting us serve you. We appreciate our long term customers.

S321    4011   I
U3,A7,DR,NP,A8,13,6E

N
014

Agent KERT LEBLANC INS AGENCY INC
Telephone (504) 454-6036 or (504) 279-4454

Moving? See your State Farm agent.
See reverse for important information.

Prepared MAR 08 2013

REP

Date: 06/28/2017
Time: 4:04:00PM

Jaylynn Bergeron Turner, CLA
St. Bernard Parish Assessor
2118 Jackson Blvd., Suite A
Chalmette, LA 70043
504-279-6379

Page: 1

# 2017 PARCEL LISTING

**OWNER**
GINART, MICHAEL C., JR.
GINART, ALICE JOHNSON
2104 OLIVIA
MERAUX, LA  70075-

**PARCEL# 406300000W2A**

| Parcel Number | Parcel Type | Ward | Physical Address | Map Number |
|---|---|---|---|---|
| 406300000W2A | REAL - RESIDENTI | WARD 4 | 2104 OLIVIA | |

**LOCATIONS- PARCEL#406300000W2A**

| Subdivision | Lot | Block | Section | Township | Range | Tract | Part | Condo |
|---|---|---|---|---|---|---|---|---|
| DE BOUCHEL SUBDIVISION | 0W2A | 000 | | | | | | |

**ITEMS- PARCEL#406300000W2A**

| Description | Assessed Value | Homestead Value | Market Value | Units | HS Units |
|---|---|---|---|---|---|
| 1 SUBURBAN LAND/3400 | 10,406 | 7,500 | 104,060 | 1.00 | 0.72 |
| 2 RURAL IMPROVEMENTS/4000 | 36,732 | | 367,320 | 1.00 | 0.00 |
| **Item Totals** | **47,138** | **7,500** | **471,380** | **2.00** | **0.72** |

**SQUARE FOOTAGE**
 IMP SQFT: 6,122    LAND SQFT: 69,375

**LEGAL DESCRIPTION- PARCEL#406300000W2A**
LOT W-2-A, DEBOUCHEL PLANT., BEING A RESUB. OF LOT W-2
- LOT W-2-A MEAS. 185.80' FRT. ON OLIVIA X 376.94' X 199.94' WIDTH
IN REAR OF 374.26', CONTAINS 1.660 ACRES.

**DEED INFORMATION**

| Type | Deed Number | Recorded | Book | Page | Sales Price |
|---|---|---|---|---|---|
| Correction | | 06 / 03 / 1997 | 627 | 115 | 0.00 |
| Land | | 05 / 19 / 1997 | 626 | 106 | 140,000.00 |
| | | 05 / 02 / 1986 | 331 | 251 | 42,000.00 |
| | | | 625 | 185 | 0.00 |

**CURRENT OWNERSHIP**

| HS | Owner Name | Primary | % Owned | % Tax | From |
|---|---|---|---|---|---|
| YES | GINART, ALICE JOHNSON | NO | 50.0000 | 0.0000 | 06/03/1997 |
| YES | GINART, MICHAEL C., JR. | YES | 50.0000 | 100.0000 | 06/03/1997 |

**PRIOR OWNERSHIP**

| HS | Owner Name | Primary | % Owned | % Tax | From | To |
|---|---|---|---|---|---|---|
| NO | * | YES | 100.0000 | 100.0000 | 05/19/1997 | 06/03/1997 |
| NO | DEBOUCHEL, DONALD J. SR., MR & MRS | YES | 100.0000 | 100.0000 | 05/02/1986 | 05/19/1997 |
| NO | * | YES | 100.0000 | 100.0000 | | 05/02/1986 |
| NO | RESUB. | YES | 100.0000 | 100.0000 | | |

Supplemental Plaintiff Profile Form – Residential and Commercial Properties

<div style="border: 1px solid black">

**For Internal Use Only**
File No. _____

**Date Received:**
_____

</div>

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

In re:  Chinese Manufactured Drywall
Products Liability Litigation

This Document Relates to:

MDL NO. 2047
SECTION: L
JUDGE FALLON
MAG. JUDGE WILKINSON

*Elizabeth Bennett v. Gebrueder Knauf Verwaltungsgesellschaft, KG, et al.,* Civil Action No.: 14-cv-2722-EEF-JCW (E.D.La)

---

This Supplemental Plaintiff Profile Form must be completed and signed by every person making a claim in this litigation against the manufacturer of Chinese Drywall, Knauf Plasterboard Tianjin      , using one form per Property. In completing this Supplemental Profile Form, you are under oath and must provide all information within your knowledge, custody and control that is true and correct to the best of your knowledge.  If you have already submitted a Plaintiff Profile Form, this Supplemental Plaintiff Profile Form will be in addition to and supplement the prior Profile Form submitted.  You have an affirmative obligation to search for all documents, electronically stored information, and tangible things responsive to this questionnaire.  You may and should consult with your attorney if you have any questions regarding completion of this form. If you are completing the form for someone who has died or who cannot complete the Profile Form, please answer as completely as you can for that person.

The responses contained within this Supplemental Plaintiff Profile Form are made without waiving any rights or objections as to relevance or privilege and are made without any abrogation of legal defenses, including those of the Collateral Source Doctrine.

The questions and requests for production contained within this Supplemental Profile Form are non-objectionable and shall be answered without objection. By answering this Supplemental Profile Form, you are not waiving the attorney work product and/or attorney client privileges. Similarly, by disclosing the identity of consultants, such consultants may remain non-testifying experts if provided for by applicable law, and are subject to all protections afforded by law.  Failure to fully complete this Supplemental Profile Form and provide the appropriate documents may result in a motion filed against you pursuant to Rule 37 of the Federal Rules of Civil Procedure, which could include a request for dismissal of the action in whole or in part.

All photographs produced in response to this form shall be in color.

---

### Section I. Claimant and Property Information

Name of Claimant: Michael                C              Ginart                          Jr.
First Name                  M.I.        Last Name                   Suffix

Alice                J            Ginart
Co-Claimant First Name (if applicable)   M.I.    Last Name                Suffix

Business/Entity Name (if applicable)

1

EXHIBIT
2

Supplemental Plaintiff Profile Form – Residential and Commercial Properties

Address of Property in this Lawsuit ("Property"):

2104 Olivia Street
_____                    _____
Address 1                                                                                      Address 2

Meraux                                                          LA              70075
_____                    _____        _____
City                                                                                State               Zip Code

Is the Property residential or commercial?   Residential
_____

Name of Person
Completing this Form:       Michael                C.        Ginart                        Jr.
                                      _____    _____   _____        _____
                                      First Name          M.I.    Last Name            Suffix

Mailing Address (if different):

_____                    _____
Address 1                                                                                      Address 2

_____                    _____        _____
City                                                                                State               Zip Code

Phone Number of Person Completing This Form: ( 504  ) 271  - 0471

---

***Section II. Purchase, Sale and/or Transfer of Ownership of a Property and Assignments of Claims***

When did you acquire the Property? Month/Day/Year:  5    /  15    /  1997

When was Chinese drywall installed in the Property (to the best of your knowledge)?

Month/Day/Year:  7   /  18   /  2006

When you acquired the Property, were you aware that it contained Chinese drywall?   ☐ Yes   ☑ No

If you were not aware, at the time you acquired the Property, that the Property contained Chinese drywall, when did you first become aware that the Property contained Chinese drywall?

Month/Year:  11    /  2013

If you believe Chinese drywall was installed after you acquired the Property, when and how did you first become aware that the Property contained Chinese drywall?

_____

If you acquired the Property knowing that the Property contained Chinese drywall, have you expressly acquired an assignment or other personal right of action that allows you to pursue a claim for damages?
   ☐ Yes   ☐ No

If Yes, attach a copy of the document assigning any right or claim to you.

If Yes, did you acquire the assignment with the purchase of the Property or at some later time?

_____

Have you sold or transferred ownership of the Property since you acquired it?   ☐ Yes   ☑ No

If No, go to Section III.

If Yes, on what date did you sell or transfer ownership of the Property?

Month/Day/Year: _____/_____/_____

Supplemental Plaintiff Profile Form – Residential and Commercial Properties

If you have sold or transferred ownership of the Property, did you at the time of sale assign to anyone any right of action for damages relating to the Property?  ☐ Yes  ☐ No

If you have sold or transferred ownership of the Property, did you expressly retain a personal right of action to allow you to pursue damages?  ☐ Yes  ☐ No

If you answered Yes to either of the two prior questions, attach a copy of any documents relating to your sale or transfer of ownership of the Property and to the assignment of a right of action for damages.

### Section III.  Product Identification and Evidence Retention

Did you provide evidence of Chinese drywall in the Property to the Plaintiffs' Steering Committee to be placed in the PSC FileCloud Database?  ☑ Yes  ☐ No

If Yes, do you have any additional evidence of Chinese drywall in the Property that you have not provided to the Plaintiffs' Steering Committee?  ☐ Yes  ☑ No

If No, go to Section IV.  If Yes, **attach** all additional evidence of Chinese drywall in the Property that you have not already provided to the Plaintiffs' Steering Committee.

### Section IV. Bankruptcy, Foreclosure or Short Sale

Do you contend that you entered personal bankruptcy as a result of damage to your Property from defective Chinese Drywall?  ☐ Yes  ☑ No

If Yes, answer the following questions:

If you entered personal bankruptcy, identify the case number and docket information of the filing.

Court filed in: _____

Date of filing: _____/_____/_____
                   Month      Day          Year

Docket No.: _____

Present Status: _____

Attach your bankruptcy petition and documents filed therewith, including (1) the schedule of assets and liabilities; (2) the schedule of income and expenditures; (3) the statement of financial affairs; (4) the schedule of executory contracts and unexpired leases; (5) the list of creditors and amount and nature of claims; (6) the source, amount, and frequency of the debtor's income; (7) the list of all the debtor's property; and (8) the detailed list of the debtor's monthly living expenses.

Do you contend that a foreclosure or short sale occurred as a result of damage to your Property from defective Chinese Drywall?  ☐ Yes  ☑ No

If Yes, answer the following questions:

If the Property was the subject of a foreclosure or short sale, identify the following:

Foreclosure or Short Sale?            _____

Supplemental Plaintiff Profile Form – Residential and Commercial Properties

Lender's name: _____

Loan Number: _____

Original Loan/Mortgage Amount: $_____

Date of Original Loan/Mortgage: _____/_____/_____
                                  Month    Day    Year

At the Date of Foreclosure or Short Sale,
the amount owed on the Loan/Mortgage: $_____

Date of Foreclosure or Short Sale: _____/_____/_____
                                     Month    Day    Year

Short Sale Price (if applicable): $_____

Attach all loan/mortgage documentation and documentation pertaining to the acquisition of the property.

Attach all documents relating to any foreclosure or short sale, including but not limited to any financial statements provided to the lender, a seller's hardship letter, tax returns, W-2 forms, payroll stubs, and bank statements provided to the lender, and comparative market analyses of comparable sales provided to the lender.

### Section V. Already Remediated Property

Has the Property been partially or completely remediated? No _____

If completely or partially remediated, answer the following questions.  If No, go to Section VI.

Please identify the dates during which the remediation took place:

_____

Please identify who performed the work to remediate the property (for example: self, name of contractor, name of remediation service): _____

If the Property has been partially remediated, identify the rooms of the Property that were remediated, the current condition and status of the remediation and the amount of work remaining to be remediated:

_____

Attach any documents supporting any work that you or others performed for remediation of the Property.

If the Property has been partially or completely remediated, what was the total cost to date for the remediation of the Property?

$_____

Attach all invoices and documents to support the total cost of remediation to date.

4

Supplemental Plaintiff Profile Form – Residential and Commercial Properties

Attach all invoices, purchase receipts and documents supporting the total cost or value of any appliances, fixtures or other electronics that you claim were damaged by Chinese drywall.

Attach all invoices, purchase receipts and documents supporting the total cost or value of any other movables (property or possessions, not including land or buildings) that you claim were damaged by Chinese drywall.

If the Property has been completely remediated, what was the date the remediation was completed? Month/Year: _____/_____

Have you preserved at least two samples (of ten inches by ten inches (10" x 10") in size if possible) of every different drywall brand or marking removed from the Property?  ☐ Yes  ☐ No

If you have preserved samples, where are the samples located?

_____

Have you preserved at least one sample of each type of drywall endtape, if any, that was found during inspection, repair or removal of drywall in or from the Property?  ☐ Yes  ☐ No

If you have preserved samples, where are the samples located?

_____

Have you photographed the backside of each Chinese-manufactured drywall board removed from the Property immediately after it was removed, and have you documented on a floor plan or other similar diagram the location of each full or partial Chinese-manufactured drywall board and its photograph?
☐ Yes  ☐ No

If you have photographed and documented each Chinese-manufactured board, please attach the photograph(s) and floor plan.

Have you photographed the HVAC coil, at least one (1) plumbing component and three (3) electrical components that you allege were damaged by Chinese drywall?  ☐ Yes  ☐ No

If you have photographed these materials, please attach the photographs.

Have you photographed any other building materials, components, or other personal property for which you intend to seek recovery?  ☐ Yes  ☐ No

If you have photographed these materials, please attach the photographs.

**Section VI.  Prior Payments**

Have you received any payments, including but not limited to settlement payments, payments from homebuilders, and insurance payments, related to damages you claim to have suffered caused by defective Chinese drywall in the Property or related to any other harm caused by defective Chinese drywall?  ☐ Yes  ☑ No

If Yes, identify the source(s) and state the amount of payment(s) you received?

Source: _____

Amount of payments received:  $ _____

5

Supplemental Plaintiff Profile Form – Residential and Commercial Properties

Source: _____

Amount of payments received:  $ _____

Source: _____

Amount of payments received:  $ _____

If you received payments from the Knauf settlement, state the percentage of the Chinese Drywall that was identified as "KPT Chinese Drywall" as described in section 1.27 of the Knauf Settlement Agreement: _____%

Attach documents reflecting the total amount you received from the source(s).

### Section VII. Other Damages

If you incurred alternative living expenses as a result of Chinese Drywall, identify the total moving cost and/or alternative living expense you incurred.

$_____

Attach all receipts and documents supporting the total moving cost and/or alternative living expense you incurred.

If you experienced any loss of use and/or loss of enjoyment of the Property as a result of Chinese Drywall, identify the total amount of such loss.

$ 275,000.00

Attach all documentation to support the total amount claimed for the loss.

If you claim a diminution in value of the Property as a result of Chinese Drywall, identify the total amount of such diminution of value being claimed.

$_____

Attach all documentation to support the total amount claimed for diminution of value, including documents showing that the Property's previous value.

### Section VIII. "Under Air" Square Footage

Has the under air square footage of the Property changed at any time since installation of the Chinese drywall?   ☐ Yes   ☑ No

If the square footage has changed, please identify the date(s) and change(s) to under air square footage, and attach all documentation that relates to each change:

Date: _____

Change: _____

Date: _____

Change: _____

Supplemental Plaintiff Profile Form – Residential and Commercial Properties

Date: _____

Change: _____

### Section IX. Verification of Supplemental Plaintiff Profile Form

I declare under penalty of perjury under the laws of the United States of America and pursuant to 28 U.S.C. § 1746 that I am the claimant identified in this Supplemental Plaintiff Profile Form and that all information provided in this Supplemental Plaintiff Profile Form is true and correct to the best of my knowledge, and that I have supplied all of the documents requested in this declaration to the extent that such documents are in my possession, custody or control.

I further declare under penalty of perjury under the laws of the United States of America and pursuant to 28 U.S.C. § 1746 that all information previously provided by me in my original Plaintiff Profile Form continues to be true and correct and has been updated to the best of my knowledge.

_____          3/29/18
Claimant's signature                               Date signed

Name:      Michael C. Ginart, Jr.
           _____

Address:   2104 Olivia Street
           _____
           Address 1                    Address 2
           Meraux                LA        70075
           _____
           City                  State     Zip Code

Phone No.: ( 504  ) 271  - 0471
           _____

Email:     ginart@cox.net
           _____

# Exhibit F

(See Section VII)

Documents Related to Other Damages

We have lived in the home since renovations were complete after Hurricane Katrina. Since that time we have unfortunately become accustom to a certain smell. My wife, daughter, son and I suffer from sinus issues that we did not suffer from before moving back into the home. My daughter is especially affected. Small appliances and light bulbs have to be replaced quite often. We have had 8 or 9 coffee makers, six different microwaves and electrical problems with refrigerators and stove. I would estimate I have spent over $6,000 total on the above problems since returning home after Katrina.

<u>Section VII.  Loss of Use / Loss of Enjoyment</u>

$300,000.00 in loss of use / loss of enjoyment damages is appropriate and consistent with past verdicts in the Chinese drywall litigation, based on the number of years I and my family have owned and/or lived in the home containing defective Chinese-manufactured sheetrock produced by the Knauf Defendants.

File Number: 27-1113-362D
Inspection Date: 11-19-13
Inspection Address: 2104 Olivia

# Colonial Inspection Services

## DRYWALL INSPECTION REPORT

**Subject Property:**
   **2104 Olivia St.**
   **Meraux, La.**

Dear Mr. and Mrs. Ginart,

On Tuesday, November 19th, 2013, a visual inspection for contaminated drywall was performed at the above referenced property. The results are as follows:

### There were signs of suspected drywall contamination at several locations throughout the home:

- Several electrical outlets and switches were removed, and the visible copper wiring was excessively 'blackened'. In addition, the dead cover of a garage electrical panel was removed exposing similar (although not as drastic) conditions.
- There was a noticeable sulfur-like odor noted upon initial entry into the home.
- There was excessive blackening of the exposed copper supply piping at various bathroom plumbing fixtures, and at the attic water heaters. The exposed refrigerant lines at several air handlers were also blackened.
- There was some corrosion noted at various bathroom plumbing fixtures. (tub and sink faucets, tub and sink spouts, etc.)
- Inspection of the back side of the drywall in the attic was limited, however only markings that indicated U.S. products were found. This might suggest a partial contamination in the home, possibly walls only. As this is a visual inspection only, the walls were not opened for any further evaluation.
- The back side of the drywall was visible in the 1st level air handler closets. A blue and yellow taped edge and the font generally associated with the manufacturer 'Knauf' was noted in one of the closets.

1

File Number: 27-1113-362D
Inspection Date: 11-19-13
Inspection Address: 2104 Olivia

-     As per our conversation, there had been various problems with a freezer, oven, clothes dryer, speakers, and a television. In addition, light bulbs appear to blow out frequently.
-     Also, as per our conversation, the home was flooded during Hurricane Katrina and had been repaired in 2006 and 2007. Since moving back in, various unusual health issues had been experienced by you and your family, including, but not limited to above normal allergy symptoms and nose bleeds.

**It should be understood that actual bulk sampling and laboratory analysis is the only definitive and conclusive means of testing for contaminated drywall.** Photos were taken of various items listed above for reference and/or future comparison. We have included several of these pictures at the end of this report. And, of course, if you should have any questions, please feel free to call.


Sincerely,

Colonial Inspection Services



Julie Hufft
IAQ/CMIA
ESA #1892



Ron Hufft
LHI #10084
CMT

2

File Number: 27-1113-362D
Inspection Date: 11-19-13
Inspection Address: 2104 Olivia



#1 bedroom switch

File Number: 27-1113-362D
Inspection Date: 11-19-13
Inspection Address: 2104 Olivia



#1 bedroom door handle

File Number: 27-1113-362D
Inspection Date: 11-19-13
Inspection Address: 2104 Olivia



11/19/2013 11:23

drywall tape edge

File Number: 27-1113-362D
Inspection Date: 11-19-13
Inspection Address: 2104 Olivia



drywall markings

File Number: 27-1113-362D
Inspection Date: 11-19-13
Inspection Address: 2104 Olivia



#2 bathroom sink supply

File Number: 27-1113-362D
Inspection Date: 11-19-13
Inspection Address: 2104 Olivia



#2 bathroom sink fixture

File Number: 27-1113-362D
Inspection Date: 11-19-13
Inspection Address: 2104 Olivia



1st level air handler (right side) refrigerant line

File Number: 27-1113-362D
Inspection Date: 11-19-13
Inspection Address: 2104 Olivia



garage electrical panel

File Number: 27-1113-362D
Inspection Date: 11-19-13
Inspection Address: 2104 Olivia



2nd level hallway outlet (near return air)

File Number: 27-1113-362D
Inspection Date: 11-19-13
Inspection Address: 2104 Olivia



master bath sink supply

File Number: 27-1113-362D
Inspection Date: 11-19-13
Inspection Address: 2104 Olivia



master bath sink supply

File Number: 27-1113-362D
Inspection Date: 11-19-13
Inspection Address: 2104 Olivia



copper supply piping in the attic

14

File Number: 27-1113-362D
Inspection Date: 11-19-13
Inspection Address: 2104 Olivia



water heater supply piping in the attic

File Number: 27-1113-362D
Inspection Date: 11-19-13
Inspection Address: 2104 Olivia



refrigerant line in the attic

16

335 278

106

| CASH SALE | * | UNITED STATES OF AMERICA |
|---|---|---|
| SALE OF PROPERTY | * | |
| BY: | * | STATE OF LOUISIANA |
| MONA ANN LEE de BOUCHEL  and | * | |
| DONALD J. de BOUCHEL, SR. | * | PARISH OF ORLEANS |
| TO: | * | * * * * * * * * * |
| ALICE JOHNSON GINART  and | * | |
| MICHAEL C. GINART, JR. | * | |
| | * | |

*   *   *   *   *   *   *   *   * BE IT KNOWN, That on this

FIFTEENTH (15TH) day of the Month of MAY in the year of our Lord, One

Thousand, Nine Hundred and Ninety Seven (1997);

BEFORE ME,     JERRY D. WILLIAMSON,     a Notary Public, duly

commissioned and qualified, in and for the Parish and State aforesaid,

and in the presence of the witnesses hereinafter named and

undersigned:

PERSONALLY CAME AND APPEARED:

MONA ANN LEE, wife of, and DONALD J. de BOUCHEL, SR., both
of the full age of majority and residents of, and domiciled
in the Parish of St. Bernard, State of Louisiana, who
declared unto me, Notary, under oath, that they have each
been married but once during their lifetime and then to each
other and that they are presently living and residing
together at 3501 East St. Bernard Highway, Meraux, Louisiana
70075.

Who declared that they do by these presents grant, bargain, sell,

convey, transfer, assign, set over, abandon and deliver, with all

legal warranties and with full substitution and subrogation in and to

all the rights and actions of warranty which they have or may have

against all preceding owners and vendors, unto

ALICE JOHNSON, wife of, and MICHAEL C. GINART, JR., both of
the full age of majority and residents of, and domiciled in
the Parish of St. Bernard, State of Louisiana, who declared
unto me, Notary, under oath, that they have each been
married but once during their lifetime and then to each
other and that they are presently living and residing
together at 2404 Blanchard Drive, Chalmette, Louisiana
70043.

here present accepting, and purchasing for themselves, their heirs and

assigns, and acknowledging due delivery and possession thereof, all

and singular the following described property, to-wit:

Recorded in COB 626 Folio 106
Parish of St. Bernard on the 19 day

of _____ May ____ 19 97.

Lynn R. Torres
Clerk of Court and Recorder
[illegible]

ONE CERTAIN PIECE OR PORTION OF GROUND, together with all of the buildings and improvements thereon, and all of the rights, ways, privileges, servitudes, appurtenances and advantages thereunto belonging or in anywise appertaining, situated in the Parish of St. Bernard, State of Louisiana, being a portion of Section 3, Township 13 South, Range 13 East, in that part thereof known as deBouchel Estate, which said piece or portion of ground is bounded by Olivia Street, Lot W-2-B, St. Bernard Highway (La. State Highway #46), Existing Private Road - Lot R-4, Pecan Grove Subdivision and U.G.P.L. Right of Way, which said piece or portion of ground is designated as Lot W-2-A and commences at a point of 684.49 feet from the southeasterly sideline of Pecan Grove Subdivision and the northerly edge of St. Bernard Highway (La. State Highway #46), which point is the point of beginning and go from said point of beginning running in the direction of the U.G.P.L. Right of Way and parallel with the line of Pecan Grove Subdivision, a distance of 199.49 feet in the rear of the property to a point, thence at right angles and running in the direction of Olivia Street and parallel with St. Bernard Highway (La. State Highway #46), a distance of 374.26 feet on the sideline nearest to the U.G.P.L. Right of Way to a point, thence at right angles and running in the direction of St. Bernard Highway (La. State Highway #46) and front on Olivia Street a distance of 185.80 feet to a point, thence at right angles and running in the direction of Pecan Grove Subdivision and parallel with St. Bernard Highway (La. State Highway #46), a distance of 376.94 feet on the sideline partially common with Lot W-2-B to the point of beginning.  Said Lot W-2-A contains 1,669 acres.  All in accordance with a resubdivision survey made by Estopinal Surveying and Engineering, Stephen V. Estopinal, P.E., dated March 12, 1997 and approved on April 22, 1997 by the St. Bernard Parish Planning Commission by Resolution PC-R-12-97 adopted on April 22, 1997, a copy of which said resubdivision survey is annexed hereto and made a part hereof, for reference.

Being a part of the same property acquired by Mona Ann Lee, wife of, and Donald J. de Bouchel, Sr. from Park Investments Limited Partnership #3, a Louisiana Partnership in Commendam, by an Act of Exchange passed before Charles H. Livaudais, Notary Public, dated April 30, 1986 and registered in Conveyance Office Book 331, folio 251, for the Parish of St. Bernard, State of Louisiana.

SERVITUDE :  The property is subject to a servitude on the sideline partially common with Lot W-2-B and measures thence ten (10') feet in width by the entire depth of the lot for drainage purposes as per the plan of resubdivision.

To have and to hold the above described property unto the said purchasers, their heirs and assigns forever.

This sale is made and accepted for and in consideration of the price and sum of ONE HUNDRED FORTY THOUSAND AND NO/100--($140,000.00)--DOLLARS, Cash, which the said purchasers have well and truly paid, in ready and current money to the said Vendors who hereby acknowledge the receipt thereof and grant full acquittance and discharge therefor.

All Parish of St. Bernard taxes up to and including the taxes due and exigible in the year 1996 are paid as per researches annexed hereto and made a part hereof, for reference.  The payment of the 1997

O F F I C E   O F   T H E   S H E R I F F
St. Bernard Parish
Chalmette, Louisiana 70044-1158

Jack A. Stephens
Sheriff & Ex-Officio Tax Collector

S T A T E   O F   L O U I S I A N A
P A R I S H   O F   S T .   B E R N A R D

This is to certify that the following described property to-wit:

LOTS W-2 & R-4   DEBOUCHEL PLANT.
LOT W-2 CONT. 2 AC. MEAS. 185' ON OLIVIA ST. X DEPTH 374.26'X 199.49'
X 40.03' X 124.46' X 119.21' X 124.44' X 218'.
LOT R-4 MEAS. 40.03' ON ST. BER. HWY. (LA#46) X DEPTH 560.03' ADJ. TO
PECAN GROVE SUB. & LEADING INTO LOT W-2

| TYPE | ACR/LOT | ASSM | EXMP | TAXABLE |
|------|---------|------|------|---------|
| SL | 2 | 3,000 | | |
| TOTAL | | 3,000 | 0 | 3,000 |

is assessed in the name of

DEBOUCHEL, DONALD J., SR.
DEBOUCHEL, MONA ANN LEE
3501 E. ST. BERNARD HWY.
MERAUX, LA  70075

and that all taxes due and exigible assessed against said
property, from the year 1994 to the year 1996, have been paid.

W I T N E S S   M Y   H A N D officially at Chalmette,

Parish of St. Bernard, State of Louisiana, this

the  6 day of    March, 1997.

_Carol A. Pertut_
Deputy Tax Collector

|  | WARD | BILL NO. | AMOUNT PAID | PAID ON |
|--|------|----------|-------------|---------|
| 1996 - | 4 | 15230 | 264.96 | 12/20/96 |

PROPERTY ID# 4063000000W2

# STATE OF LOUISIANA
## PARISH OF ST. BERNARD

ANDRY, ANDRY & WILLIAMSON
210 BARONNE ST., SUITE 711
N.O., LA. 70112                    **OFFICE CLERK OF COURT**

The undersigned CLERK OF COURT AND EX-OFFICIO REGISTRAR OF CONVEYANCES

in and for the Parish of St. Bernard, duly commissioned and sworn, does hereby certify that from

the INDICES in the Conveyance Office, it does not appear that

**MONA ANN LEE, wife of, and DONALD J. de BOUCHEL, SR.**

has alienated the following property, to wit:

THIS CERTIFICATE HAS BEEN RUN EXCLUSIVELY IN THE EXACT NAME HEREINABOVE
SET FORTH AND NOT IN ANY VARIATIONS OF SAID NAME.

**ALICE JOHNSON, wife of, and MICHALE C. GINART, JR.  (To be acquired)**

**ONE CERTAIN PORTION OF GROUND, together with all of the buildings and
improvements thereon, and all of the rights, ways, privileges, servitudes,
appurtenances and advantages thereunto belonging or in anywise appertaining,
situated in the Parish of St. Bernard, State of Louisiana, being a portion of
Section 3, Township 13 South, Range 13 East, in that part thereof known as de
Bouchel Estate as shown on a survey prepared by Eugene I. Estopinal and
Associates, Civil Engineers and Surveyors, dated April 22, 1986, a copy of which
is annexed to an Act passed before Charles H. Livaudais, Notary Public, dated
April 30, 1986, and made a part thereof, according to which said portion of
ground measures as follows, to-wit:**

**Lot W-2 commences 684.49 feet from the intersection of the southeasterly
sideline of Pecan Grove Subdivision and the northerly edge of Louisiana State
Highway #46 right of way and measures thence 199.49 feet along the sideline of
Pecan Grove, North 40 degrees, 35 minutes, 09 seconds East, thence 374.26
feet, South 50 degrees, 06 minutes, 45 seconds East, thence 185.80 feet, South
39 degrees, 53 minutes, 15 seconds West, thence 218.63 feet, North 52 degrees,
11 minutes, 30 seconds West, thence 124.44 feet, South 40 degrees, 26 minutes,
07 seconds West, thence 119.21 feet, North 52 degrees, 11 minutes, 30 seconds
West, to the point of beginning.  Lot W-2 contains 2 acres.**

**Being a part of the same property acquired by Mona Ann Lee, wife of, and
Donald J. de Bouchel from Park Investments Limited Partnership #3, a Louisiana
Partnership in Commendam, by an Act of Exchange passed before Charles H.
Livaudais, Notary Public, dated April 30, 1986 and registered in Conveyance
Office Book 331, folio 251, for the Parish of St. Bernard, State of Louisiana.**

ALL MINERAL LEASES EXCLUDED

FROM THE TIME OF ACQUISITION THEREOF: TO DATE HEREOF: EXCEPT

Inter Vivos Trust By Dr. Maria Stella deBouchel to Donald Joachim deBouchel dated
March 29, 1989, before Robert A. Buckley, N. P., recorded July 12, 1989 in COB
467 folio 503.

Clerk's Office                           LENA R. TORRES
Parish of St. Bernard, La.               CLERK OF COURT
March 5, 1997 (pb)

                                         BY: _Petruna P Guzard_

335278
3396'6
Form No. 107                    O V E R

REDATED:

April 29, 1997 (pb)

BY: _Patricia M Burgard_
_y Clerk_

ᵃᵀ: (1) ~~Sale by~~ *Resolution P.C.R 12-97 by St. Bernard*
*Parish Planning Commission for Resubdivision*
~~~~ *of Lots 1-2 into W2A4W2B Cyber first Estate*
_____ registered C. O. B. 625 folio 185 _____

(2) Sale by _~~Mr & Mrs Donald J. de Bonald Sr.~~_
to _~~Mr & Mrs Michael C. Giniat Jr~~_ ___ act
before _Jerry D. Williams_ ___ N. P. dated
_May 15, 1997_ registered C. O. B. 626 folio 186
ᴿᴱᶜᴼᴿᴰᴱᴰ: _May 20_ 19 97 .

_Butt B Ball_
ᶜʰⁱᵉᶠ ᴰᵞ. ᶜˡᵉʳᵏ & ᴱˣ-ᴼᶠᶠⁱᶜⁱᵉ ᴿᵉᶜᵒʳᵈˢ

State of Louisiana

PARISH OF ST. BERNARD

ANDRY, ANDRY & WILLIAMSON
310 FORSTALL STREET
N.O., LA. 70112

LENA R. TORRES, CLERK OF COURT, EX-OFFICIO RECORDER OF MORTGAGES, ETC.

IN AND FOR THE PARISH OF ST. BERNARD

I, LENA R. TORRES, hereby certify that in the indices of this office it does not appear

that there are any other Mortgages, (Chattel Mortgages Excepted), Liens or Privileges standing

recorded in the name of _____

**MONA ANN LEE, wife of, and DONALD J. de BOUCHEL, SR.**

_____ AGAINST THE

FOLLOWING DESCRIBED PROPERTY, TO WIT:

THIS CERTIFICATE HAS BEEN RUN EXCLUSIVLEY IN THE EXACT NAMES HEREINABOVE SET FORTH
AND NOT IN ANY VARIATIONS OF SAID NAME.

**ALICE JOHNSON, wife of, and MICHALE C. GINART, JR.  (To be acquired)**

**ONE CERTAIN PORTION OF GROUND, together with all of the buildings and
improvements thereon, and all of the rights, ways, privileges, servitudes,
appurtenances and advantages thereunto belonging or in anywise appertaining,
situated in the Parish of St. Bernard, State of Louisiana, being a portion of
Section 3, Township 13 South, Range 13 East, in that part thereof known as de
Bouchel Estate as shown on a survey prepared by Eugene I. Estopinal and
Associates, Civil Engineers and Surveyors, dated April 22, 1986, a copy of which
is annexed to an Act passed before Charles H. Livaudais, Notary Public, dated
April 30, 1986, and made a part thereof, according to which said portion of
ground measures as follows, to-wit:**

**Lot W-2 commences 684.49 feet from the intersection of the southeasterly
sideline of Pecan Grove Subdivision and the northerly edge of Louisiana State
Highway #46 right of way and measures thence 199.49 feet along the sideline of
Pecan Grove, North 40 degrees, 35 minutes, 09 seconds East, thence 374.26
feet, South 50 degrees, 06 minutes, 45 seconds East, thence 185.80 feet, South
39 degrees, 53 minutes, 15 seconds West, thence 218.63 feet, North 52 degrees,
11 minutes, 30 seconds West, thence 124.44 feet, South 40 degrees, 26 minutes,
07 seconds West, thence 119.21 feet, North 52 degrees, 11 minutes, 30 seconds
West, to the point of beginning.  Lot W-2 contains 2 acres.**

**Being a part of the same property acquired by Mona Ann Lee, wife of, and
Donald J. de Bouchel from Park Investments Limited Partnership #3, a Louisiana
Partnership in Commendam, by an Act of Exchange passed before Charles H.
Livaudais, Notary Public, dated April 30, 1986 and registered in Conveyance
Office Book 331, folio 251, for the Parish of St. Bernard, State of Louisiana.**

THAN THE FOLLOWING:

Inter Vivos Trust by Dr. Maria Stella deBouchel to Donald Joachim deBouchel dated
March 29, 1989, before Robert A. Buckley, N. P., recorded July 12, 1989 in MOB
570 folio 372.

Notice of Federal Tax Lien against Mike Ginart in favor of Department of Treasury, IRS
Amount of Lien $3,786.05, dated March 16 1981, recorded March 25, 1981 in MOB 213
folio 18.

Release of Federal TAx Lien by Department of Treasury, IRS in favor of Mike Ginart
Amount of Release $3,786.05, dated January 29, 1982, recorded February 11, 1982 in
MOB 226 folio 341.

Release of Federal Tax by Department of Treasury, IRS in favor of Mike Ginart.
Amount of Release $3,786.05, dated June 28, 1990, recorded July 16, 1990 in
MOB 596 folio 428.

Form No. 108

(over)

Clerk's Office
Parish of St. Bernard, La.
March 5, 1997 (pb)

LENA R. TORRES
CLERK OF COURT

BY: *Patrina S Buzzard*
               *Clerk*

REDATED:

April 29, 1997 (pb)

BY: *Patrina S Buzzard*
               *Clerk*

EXCEPT: Mortgage by Mr. & Mrs. Michael C. Stuart Jr.
in favor of Fidelity Homestead Assn.
before Jerrod D. Williams, N. P. dated
May 15, 1997 sum of 3.98 et al rep. by one
note bearing ___% interest payable ___
recorded M.O.B. 837 folio 51
REDATED: May 20 19 97

By, Clerk & Ex-Officio Recorder



OFFICE OF

## ⬙ ESTOPINAL ⬙

### SURVEYING AND ENGINEERING, INC.

2604 PAKENHAM DRIVE, P. O. BOX 1183, CHALMETTE, LA. 70044
279-7451

ST. BERNARD HIGHWAY
(LA. STATE HWY. #46)

PLAT SHOWING A PORTION OF
SECTION 3, T13S, R13E
ST. BERNARD PARISH, LA.

DIRECTIONS BASED UPON
LOCATIONS SOUTH ZONE
SOUTH ZONE

EXISTING PRIVATE ROAD   LOT R-4

INGRESS/EGRESS

PECAN GROVE SUBDIVISION

14,799 SQ.FT.

W-2-B

W-2

10' SERVITUDE FOR DRAINAGE

OLIVIA STREET

W-2-A

1.660 ACRES

U.G.P.L. R/W (SIDE)

THIS PLAN IS FOR THE SOLE AND EXCLUSIVE PURPOSE OF SUBDIVISION OF LOT W-2 AND IS FORBIDDEN TO BE USED FOR
ANY OTHER PURPOSE. OWNER: DONALD J. de BOUCHEL.

APPROVED DATE: April 22, 1997

CHALMETTE, LA.  MARCH 12, 1997

DIRECTOR, ST. BERNARD PLANNING COMMISSION.

STEPHEN V. ESTOPINAL P.E. #14977 P.L.S. #4356

108

Parish of St. Bernard taxes is assumed by the purchasers herein.

By reference to the certificates of the Register of Conveyances and Recorder of Mortgages in and for the Parish of ST. BERNARD, annexed hereto and made a part hereof, it does not appear that said property has been heretofore alienated by the said Vendors or that it is subject to any encumbrance whatsoever.

The parties to this Act are aware that the Mortgage and Conveyance Certificates herein referred to are open and not yet dated and signed, and relieve and release me, Notary, from all responsibility by reason thereof.

THUS DONE AND PASSED    , in duplicate original, in my office at NEW ORLEANS, LOUISIANA on the day, month and year herein first above written, in the presence of the undersigned competent witnesses, who hereunder sign their names with the said appearers and me, Notary, after reading of the whole.

WITNESSES:

_Donna Vinson_
DONNA VINSON

_Katherine Burtchett_
KATHERINE BURTCHETT

_Mona Ann Lee de Bouchel_
MONA ANN LEE de BOUCHEL

_Donald J. de Bouchel, Sr._
DONALD J. de BOUCHEL, SR.

_Alice Johnson Ginart_
ALICE JOHNSON GINART

_Michael C. Ginart, Jr._
MICHAEL C. GINART, JR.

_Jerry D. Williamson_
JERRY D. WILLIAMSON, NOTARY PUBLIC

Form **W-9**
(Rev. August 2013)
Department of the Treasury
Internal Revenue Service

## Request for Taxpayer
## Identification Number and Certification

Give Form to the
requester. Do not
send to the IRS.

Name (as shown on your income tax return)
**Michael C. Ginart, Jr. and Alice J. Ginart**

Business name/disregarded entity name, if different from above

Check appropriate box for federal tax classification:

☒ Individual/sole proprietor   ☐ C Corporation   ☐ S Corporation   ☐ Partnership   ☐ Trust/estate

☐ Limited liability company. Enter the tax classification (C=C corporation, S=S corporation, P=partnership) ▶

☐ Other (see instructions) ▶

Exemptions (see instructions):

Exempt payee code (if any)

Exemption from FATCA reporting
code (if any)

Address (number, street, and apt. or suite no.)
**2104 Olivia Street**

Requester's name and address (optional)

City, state, and ZIP code
**Meraux, LA  70075**

List account number(s) here (optional)

*Print or type*
*See Specific Instructions on page 2.*

### Part I    Taxpayer Identification Number (TIN)

Enter your TIN in the appropriate box. The TIN provided must match the name given on the "Name" line to avoid backup withholding. For individuals, this is your social security number (SSN). However, for a resident alien, sole proprietor, or disregarded entity, see the Part I instructions on page 3. For other entities, it is your employer identification number (EIN). If you do not have a number, see *How to get a TIN* on page 3.

**Note.** If the account is in more than one name, see the chart on page 4 for guidelines on whose number to enter.

Social security number

4 3 8 – 3 5 – 1 7 2 4

Employer identification number

### Part II    Certification

Under penalties of perjury, I certify that:

1. The number shown on this form is my correct taxpayer identification number (or I am waiting for a number to be issued to me), and

2. I am not subject to backup withholding because: (a) I am exempt from backup withholding, or (b) I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of a failure to report all interest or dividends, or (c) the IRS has notified me that I am no longer subject to backup withholding, and

3. I am a U.S. citizen or other U.S. person (defined below), and

4. The FATCA code(s) entered on this form (if any) indicating that I am exempt from FATCA reporting is correct.

**Certification instructions.** You must cross out item 2 above if you have been notified by the IRS that you are currently subject to backup withholding because you have failed to report all interest and dividends on your tax return. For real estate transactions, item 2 does not apply. For mortgage interest paid, acquisition or abandonment of secured property, cancellation of debt, contributions to an individual retirement arrangement (IRA), and generally, payments other than interest and dividends, you are not required to sign the certification, but you must provide your correct TIN. See the instructions on page 3.

**Sign Here**   Signature of U.S. person ▶ *[signature]*   Date ▶ 3/29/18

## General Instructions

Section references are to the Internal Revenue Code unless otherwise noted.

**Future developments.** The IRS has created a page on IRS.gov for information about Form W-9, at *www.irs.gov/w9*. Information about any future developments affecting Form W-9 (such as legislation enacted after we release it) will be posted on that page.

## Purpose of Form

A person who is required to file an information return with the IRS must obtain your correct taxpayer identification number (TIN) to report, for example, income paid to you, payments made to you in settlement of payment card and third party network transactions, real estate transactions, mortgage interest you paid, acquisition or abandonment of secured property, cancellation of debt, or contributions you made to an IRA.

Use Form W-9 only if you are a U.S. person (including a resident alien), to provide your correct TIN to the person requesting it (the requester) and, when applicable, to:

1. Certify that the TIN you are giving is correct (or you are waiting for a number to be issued),

2. Certify that you are not subject to backup withholding, or

3. Claim exemption from backup withholding if you are a U.S. exempt payee. If applicable, you are also certifying that as a U.S. person, your allocable share of any partnership income from a U.S. trade or business is not subject to the

withholding tax on foreign partners' share of effectively connected income, and

4. Certify that FATCA code(s) entered on this form (if any) indicating that you are exempt from the FATCA reporting, is correct.

**Note.** If you are a U.S. person and a requester gives you a form other than Form W-9 to request your TIN, you must use the requester's form if it is substantially similar to this Form W-9.

**Definition of a U.S. person.** For federal tax purposes, you are considered a U.S. person if you are:

• An individual who is a U.S. citizen or U.S. resident alien,

• A partnership, corporation, company, or association created or organized in the United States or under the laws of the United States,

• An estate (other than a foreign estate), or

• A domestic trust (as defined in Regulations section 301.7701-7).

**Special rules for partnerships.** Partnerships that conduct a trade or business in the United States are generally required to pay a withholding tax under section 1446 on any foreign partners' share of effectively connected taxable income from such business. Further, in certain cases where a Form W-9 has not been received, the rules under section 1446 require a partnership to presume that a partner is a foreign person, and pay the section 1446 withholding tax. Therefore, if you are a U.S. person that is a partner in a partnership conducting a trade or business in the United States, provide Form W-9 to the partnership to establish your U.S. status and avoid section 1446 withholding on your share of partnership income.

Cat. No. 10231X

Form **W-9** (Rev. 8-2013)

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN RE: CHINESE-MANUFACTURED
DRYWALL PRODUCTS LIABILITY
LITIGATION

MDL NO. 2047

SECTION: L

THIS DOCUMENT RELATES TO:

*Elizabeth Bennett, et al. v. Knauf Gips,
KG, et al.*
2:14-cv-02722-EEF-JCW

JUDGE ELDON FALLON

MAG. JUDGE WILKINSON

## PLAINTIFF FACT SHEET

Name of Plaintiff:  Michael C. Ginart, Jr. & Alice J. Ginart

Affected Property Address:  2104 Olivia Street, Meraux, LA  70075

## I.  Purchase, Sale and/or Transfer of Ownership of Property

1.  On what date did you purchase the Property?

**Response**:  Plaintiff objects to this question as duplicative.  In addition, Plaintiff objects to this question on the ground that it seeks information in the possession of, known to, or otherwise equally available to the defendants.  Plaintiff has previously provided this information to defendants in the Bennett Supplemental Plaintiff Profile Form ("SPPF").  Plaintiff directs the defendants to Section II of the SPPF. Without waiving said objection, Plaintiff adopts the SPPF response again here and intends to provide the exact same date as provided in the verified SPPF as follows: Plaintiff purchased the property:

(Month/Day/Year)      05  /  15  /  1997

2.  When you took ownership of the Property, what was the name of the seller?

Donald DeBouchel & Mona DeBouchel



EXHIBIT
3

3.  Name and address of the realtor?

None

4.  Name and address of the closing agent?

Unsure.

5.  What was the price of the home when you purchased it?  $  Built house on land we own.

6.  Was it an "as-is" sale?

**Response**: Plaintiff objects to the use of "as-is" in this question as vague, ambiguous, uncertain, and unintelligible; consequently, Plaintiff cannot determine the exact nature of the information being sought. This term is not defined and is not commonly understood with one accepted meaning; multiple inpretations are possible. Without waiving said objection, plaintiff responds as follows:

☐ Yes   ☑ No   ☐ I'm not sure.

7.  If you sold or transferred ownership of the Property, what was the name of the purchaser?

N/A

8.  If you sold or transferred ownership of the Property, what was the name and address of the realtor?

N/A

9.  If you sold or transferred ownership of the Property, what was the name and address of closing agent?

N/A

10.  If you sold or transferred ownership of the Property, what was the price paid for home?
                    $ N/A

## II.  Appraisal of the Home

11.  Date of each appraisal:

a.  03  /  21  /20 02

b.  03  /  02  /20 07

c.  07 / 24 / 2007  -  Road Home Appraisal

2

**PFS REQUEST FOR DOCUMENT PRODUCTION #1**: Please produce copies of any and all appraisals performed on the house both prior and subsequent to the occurrence of any of the events allenged in the petition.

> **Response**:  All documents in Plaintiff's possession responsive to this request are attached as "Exhibit 1."

## III.  Discovery of Drywall

12.  Date that the property was constructed and/or renovated that installed the allegedly defective Chinese Drywall.

**Response**:  Plaintiff objects to this question as duplicative.  In addition, Plaintiff objects to this question on the ground that it seeks information in the possession of, known to, or otherwise equally available to the defendants.  Plaintiff has previously provided this information to defendants in the Bennett Supplemental Plaintiff Profile Form ("SPPF").  Plaintiff directs the defendants to  Section II of the SPPF. Without waiving said objection, Plaintiff adopts the SPPF response again here and intends to provide the exact same date as provided in the verified SPPF as follows: The property construction and/or renovation that installed the allegedly defective drywall occurred on or about the following date (to the best of my knowledge):

> (Month/Day/Year)          ____/____/20_06___

**PFS REQUEST FOR DOCUMENT PRODUCTION #2**: Please produce all documents, reports, photographs, videotapes, samples and any other materials which evidence and/or identify that there is defective Chinese Drywall in the Property.

> **Response**:  All documents in Plaintiff's possession responsive to this request are attached as "Exhibit 2."

## IV.  Manufacturer/Seller of Drywall

13.  Who sold or distributed the drywall in the house?

**Response**:  Plaintiff objects to this question as duplicative.  In addition, Plaintiff objects to this question on the ground that it seeks information in the possession of, known to, or otherwise equally available to the defendants.  Plaintiff has previously provided this information to defendants in the Plaintiff Profile Form ("PPF"). Plaintiff directs the defendants to  Section X of the PPF.  Without waiving said objection, Plaintiff adopts the PPF response again here and intends to provide the exact same information as provided in the verified PPF as follows:   The drywall Supplier's name (to the best of my knowledge) is:

Interior/Exterior Building Supply _____

**PFS REQUEST FOR DOCUMENT PRODUCTION #3**: Please produce all documents, reports, photographs, videotapes, samples and any other materials which evidence and/or identify the manufacturer of drywall installed in the house. The submission must be in the form of PTO 1(B).

> **Response**: All documents in Plaintiff's possession responsive to this request are attached as "Exhibit 3."

## V.  Damages

14.  Identify any harm, financial or otherwise, that you contend was caused by defective Chinese Drywall installed in the Property.

**Response**:  Plaintiff directs the defendants to review the complaint filed with the court in this case for a full listing of the claims being asserted and the damages being sought. The defective Knauf Chinese Drywall emitted gasses that cause damage to Plaintiff's home and the personal property contained therein.  It also significantly diminished the use and enjoyment of the home; therefore, Plaintiff seeks the following:  all compensatory, statutory, and/or punitive damages; all pre-judgment and post-judgment interest as allowed by law; any appropriate injunctive relief; an award of attorney's fees as allowed by law; an award of taxable costs; and, any and all such further relief as a jury or judge presiding over my trial deems just and proper.  Other damages include, but are not limited to:

Diminution of value of home.  Also, our whole family suffers with sinus issues, none of which we had before.

15.  If you contend that you entered personal bankruptcy as a result of damage to your property from defective Chinese Drywall, please describe the facts and circumstances that relate to your claim.

N/A

16.  If you contend that you entered short sale and/or foreclosure as a result of damage to your property from defective Chinese Drywall, please describe the facts and circumstances that relate to your claim.

N/A

**PFS REQUEST FOR DOCUMENT PRODUCTION #4**: If you claim loss of income, please produce any copies of any and all documentation upon which you intend to rely upon to prove this claim.

> **Response**:  All documents in Plaintiff's possession responsive to this request are attached as "Exhibit 4."

17.  If you claim diminution of the property as a result of Chinese Drywall, state with particularity each fact which supports your claim.

No one wants to purchase a home with Chinese drywall unless it is reduced by the entire

cost of remediation, removal and installation.  No one wants to wait until remediation is

done or not at all.  Even after remediation you have to disclose that at one time it had

Chinese drywall and they still want to reduce the price by 20-25 percent.

18.  Identify the appliances, fixtures and/or other electronics, if any, that you claim were damaged by Chinese Drywall in the property.

> **Response**:  An list of damaged items is attached as "Exhibit 14."

19.  If you vacated the property because of the alleged presence of Chinese Drywall, please provide:  Address of each location you stayed thereafter.

   a. N/A _____

   b. _____

   c. _____

20.  If you vacated the property because of the alleged presence of Chinese Drywall, please provide:  Time periods in which you resided at each property.

   a. _____/_____/20_____   to   _____/_____/20_____

   b. _____/_____/20_____   to   _____/_____/20_____

   c. _____/_____/20_____   to   _____/_____/20_____

21.  If you vacated the property because of the alleged presence of Chinese Drywall, please provide:  Moving costs and/or alternative living expenses you claim to have incurred as a result of the alleged presence of Chinese Drywall.

   a. $ N/A _____

   b. $_____

   c. $_____

5

**PFS REQUEST FOR DOCUMENT PRODUCTION #5**:  If you vacated the property because of the alleged presence of Chinese Drywall, please provide any documentation to support your claims.

> **Response**:  All documents in Plaintiff's possession responsive to this request are attached as "Exhibit 5."

22.  Are you claiming damages for personal injury?  ☐ Yes (explain below) ☑ No

_____

_____

23.  If you suffered personal injuries as a result of the alleged presence of Chinese Drywall:  Date you allege that you first sustained personal injuries as a result of your exposure to allegedly defective Chinese Drywall.

   **Response**:  ☑ N/A

24.  If you suffered personal injuries as a result of the alleged presence of Chinese Drywall:  What specific injuries have you suffered?

   **Response**:  ☑ N/A

25.  If you suffered personal injuries as a result of the alleged presence of Chinese Drywall:  Name and address of any doctor, physician, surgeon, chiropractor, or osteopath who examined and/or treated your alleged injuries.

   **Response**:  ☑ N/A

## VI.  Potential Witnesses/Evidence

26.  Has any written or recorded statement been taken from any witness or person who has knowledge of relevant facts, including the nature, character, and extent of the injuries referred to in the petition, and for each statement identified?

   ☐ Yes  ☑ No  ☐ I don't know

27.  If the answer to 26 is "yes," please state:  The name, address, and telephone number of the person from whom the statement was taken.

N/A

_____

_____

6

28. If the answer to 26 is "yes," please state: The name, address, and telephone number of the person who took the statement.

N/A

29. If the answer to 26 is "yes," please state: The name address, and telephone number of the party having custody of such statement.

N/A

30. If the answer to 26 is "yes," please state: The date the statement was taken.

N/A

## VII.  Already Remediated Properties

31. If you already remediated the Property, who conducted the remediation?

Response:    [✓] N/A

32. When did the remediation commencement date occur?

Response:    [✓] N/A

33. When did the remediation end date occur?

Response:    [✓] N/A

34. What was the scope of the remediation and the scope of the work carried out?

Response:    [✓] N/A

35. What costs or expenses, if any, did you incur related to the remediation of the Property?

Response:    [✓] N/A

36. Were any samples from the remediation retained?

    **Response:**   ☑ N/A

37. If the response to 36 is "yes," were the samples compliant with PTO 1(B)?

    **Response:**   ☑ N/A

38. Were any photographs taken of the allegedly defective Chinese Drywall?

    **Response:**   ☑ N/A

39. If the response to 38 is "yes," were the photographs compliant with PTO 1(B)?

    **Response:**   ☑ N/A

**PFS REQUEST FOR DOCUMENT PRODUCTION #6:**   Please produce the following documentation concerning the remediation of the Property:  Any evidence of KPT Chinese Drywall and Non-KPT Chinese Drywall, if any, in the Property prior to remediation.

    **Response:**  All documents in Plaintiff's possession responsive to this request are attached as "Exhibit 6."

**PFS REQUEST FOR DOCUMENT PRODUCTION #7:**   Please produce the following documentation concerning the remediation of the Property:  Interior photographs of the Affected Property immediately prior to the commencement of, and following completion of, the remediation, including photographs and/or video images of the flooring and major components such as cabinets, moldings, doors, intercom systems, and fixtures for every room and bathroom and, to the extent possible, security systems, appliances and audio such as surround sound.

** The photographs do not need to be pictures taken specifically for the litigation. For example, family photographs or photographs taken for purposes of refinancing a mortgage are acceptable in the absence of other photographs.

    **Response:**  All documents in Plaintiff's possession responsive to this request are attached as "Exhibit 7."

**PFS REQUEST FOR DOCUMENT PRODUCTION #8:**   Please produce the following documentation concerning the remediation of the Property:  The remediation contract and an itemization from the contractor who performed the remediation work of the materials used during the remediation, including, but not limited to, manufacturer, model number, and quantity.

8

> **Response**:  All documents in Plaintiff's possession responsive to this request are attached as "Exhibit 8."

**PFS REQUEST FOR DOCUMENT PRODUCTION #9**:  Please produce the following documentation concerning the remediation of the Property:  An itemized invoice from the contractor who performed the remediation work ("Itemized Invoice") showing the scope of work carried out.

> **Response**:  All documents in Plaintiff's possession responsive to this request are attached as "Exhibit 9."

**PFS REQUEST FOR DOCUMENT PRODUCTION #10**:  Please produce the following documentation concerning the remediation of the Property:  Proof of payment of the Itemized Invoice and any other expenses, such as cancelled checks, credit card statements, etc.

> **Response**:  All documents in Plaintiff's possession responsive to this request are attached as "Exhibit 10."

**PFS REQUEST FOR DOCUMENT PRODUCTION #11**:  Please produce the following documentation concerning the remediation of the Property:  A floor plan of the Affected Property with dimensions.

> **Response**:  All documents in Plaintiff's possession responsive to this request are attached as "Exhibit 11."

**PFS REQUEST FOR DOCUMENT PRODUCTION #12**:  Please produce the following documentation concerning the remediation of the Property:  An Environmental Certificate.

> **Response**:  All documents in Plaintiff's possession responsive to this request are attached as "Exhibit 12."

**PFS REQUEST FOR DOCUMENT PRODUCTION #13**:  Please produce the following documentation concerning the remediation of the Property:  An Owner Disclosure Affidavit in the form attached as Exhibit 1, which includes a certification that the materials provided comprise all of the available documentation regarding the following:  The drywall that was in the Affected Property prior to the commencement of the remediation; and, the scope, extent, and cost of the remediation.

> **Response**:  All documents in Plaintiff's possession responsive to this request are attached as "Exhibit 13."

9

## VERIFICATION

I hereby verify that the responses to the Plaintiff Fact Sheet are correct to the best of my knowledge.

_____
Signature of Plaintiffs

_____
Date   1/23/19

1/23/19

_____
Michael C. Ginart, Jr. & Alice J. Ginart
Printed Name

# Exhibit 1

Date: 06/28/2017  
Time: 4:04:00PM

Jaylynn Bergeron Turner, CLA  
St. Bernard Parish Assessor  
2118 Jackson Blvd., Suite A  
Chalmette, LA 70043  
504-279-6379

Page: 1

# 2017 PARCEL LISTING

**OWNER**  
GINART, MICHAEL C., JR.  
GINART, ALICE JOHNSON  
2104 OLIVIA  
MERAUX, LA 70075-

**PARCEL# 406300000W2A**

| Parcel Number | Parcel Type | Ward | Physical Address | Map Number |
|---|---|---|---|---|
| 406300000W2A | REAL - RESIDENTI | WARD 4 | 2104 OLIVIA | |

**LOCATIONS- PARCEL#406300000W2A**

| Subdivision | Lot | Block | Section | Township | Range | Tract | Part | Condo |
|---|---|---|---|---|---|---|---|---|
| DE BOUCHEL SUBDIVISION | 0W2A | 000 | | | | | | |

**ITEMS- PARCEL#406300000W2A**

| Description | Assessed Value | Homestead Value | Market Value | Units | HS Units |
|---|---|---|---|---|---|
| 1 SUBURBAN LAND/3400 | 10,406 | 7,500 | 104,060 | 1.00 | 0.72 |
| 2 RURAL IMPROVEMENTS/4000 | 36,732 | | 367,320 | 1.00 | 0.00 |
| **Item Totals** | **47,138** | **7,500** | **471,380** | **2.00** | **0.72** |

**SQUARE FOOTAGE**

**IMP SQFT: 6,122    LAND SQFT: 69,375**

**LEGAL DESCRIPTION- PARCEL#406300000W2A**

LOT W-2-A, DEBOUCHEL PLANT., BEING A RESUB. OF LOT W-2  
- LOT W-2-A MEAS. 185.80' FRT. ON OLIVIA X 376.94' X 199.94' WIDTH  
IN REAR OF 374.26', CONTAINS 1.660 ACRES.

**DEED INFORMATION**

| Type | Deed Number | Recorded | Book | Page | Sales Price |
|---|---|---|---|---|---|
| Correction | | 06 / 03 / 1997 | 627 | 115 | 0.00 |
| Land | | 05 / 19 / 1997 | 626 | 106 | 140,000.00 |
| | | 05 / 02 / 1986 | 331 | 251 | 42,000.00 |
| | | | 625 | 185 | 0.00 |

**CURRENT OWNERSHIP**

| HS | Owner Name | Primary | % Owned | % Tax | From |
|---|---|---|---|---|---|
| YES | GINART, ALICE JOHNSON | NO | 50.0000 | 0.0000 | 06/03/1997 |
| YES | GINART, MICHAEL C., JR. | YES | 50.0000 | 100.0000 | 06/03/1997 |

**PRIOR OWNERSHIP**

| HS | Owner Name | Primary | % Owned | % Tax | From | To |
|---|---|---|---|---|---|---|
| NO | * | YES | 100.0000 | 100.0000 | 05/19/1997 | 06/03/1997 |
| NO | DEBOUCHEL, DONALD J. SR., MR & MRS | YES | 100.0000 | 100.0000 | 05/02/1986 | 05/19/1997 |
| NO | * | YES | 100.0000 | 100.0000 | | 05/02/1986 |
| NO | RESUB. | YES | 100.0000 | 100.0000 | | |

File No. 610728

**SUMMARY APPRAISAL OF**

**THE PROPERTY LOCATED AT**

Plans & Specs (2104) Olivia Street

Meraux, La 70075

**as of**

March 21, 2002

**for**

Fidelity Homestead Association

**by**

Central Appraisal Bureau, Inc.

4403 Zenith Street
Metairie, LA 70001

## PHOTOGRAPH ADDENDUM

File No. 610728

| | |
|---|---|
| Borrower or Owner | Michael & Alice Ginart |
| Property Address | Plans & Specs (2104) Olivia Street |
| City Meraux | County St. Bernard    State La    Zip Code 70075 |
| Lender or Client | Fidelity Homestead Association |



**FRONT VIEW OF
SUBJECT PROPERTY**

**REAR VIEW OF
SUBJECT PROPERTY**



**STREET SCENE OF
SUBJECT PROPERTY**

Central Appraisal Bureau, Inc.

File No. 610728

## PHOTOGRAPH ADDENDUM

| | |
|---|---|
| Borrower or Owner | Michael & Alice Ginart |
| Property Address | Plans & Specs (2104) Olivia Street |
| City Meraux | County St. Bernard | State La |
| Lender or Client | Fidelity Homestead Association | Zip Code 70075 |



### COMPARABLE #1

5601 Marcia Ave.
New Orleans

| | |
|---|---|
| Price | $745,000 |
| Price/SF | 143.52 |
| Date | 9/28/2001 * |
| Age | 33 yrs. +/- |
| Room Count | 12-5-5.1 |
| Living Area | 5,191 |
| | |
| Value Indication | $700,500 |



### COMPARABLE #2

462 Lakeshore Pkwy.
New Orleans

| | |
|---|---|
| Price | $775,000 |
| Price/SF | 138.39 |
| Date | 8/14/2001 * |
| Age | 36 yrs. +/- |
| Room Count | 12-5-5.2 |
| Living Area | 5,600 |
| | |
| Value Indication | $698,000 |



### COMPARABLE #3

215 Fairway Drive
New Orleans

| | |
|---|---|
| Price | $775,000 |
| Price/SF | 158.29 |
| Date | 12/21/2001 * |
| Age | 45 & Addn. |
| Room Count | 10-5-3.1 |
| Living Area | 4,896 |
| | |
| Value Indication | $704,500 |

Completed Appraisal Analysis – Summary Appraisal Report

UNIFORM RESIDENTIAL APPRAISAL REPORT   File No. 610728

| | |
|---|---|
| Property Address | Plans & Specs (2104) Olivia Street   City Meraux   State La   Zip Code 70075 |
| Legal Description | Lot W-2-A, deBouchel Estate, Sec. 3 T13s, R13E   County St. Bernard |
| Assessor's Parcel No. | N/A   Tax Year N/A   R.E. Taxes $ N/A   Special Assessments $ N/A |
| Borrower | Michael & Alice Ginart   Current Owner Same   Occupant: Owner ☐ Tenant ☐ Vacant ☒ |
| Property rights appraised | ☒ Fee Simple ☐ Leasehold   Project Type ☐ PUD ☐ Condominium (HUD/VA only)   HOA$ N/A /Mo. |
| Neighborhood or Project Name | Meraux   Map Reference MLS 82   Census Tract 302.05 |
| Sale Price $ | N/A   Date of Sale Current   Description and $ amount of loan charges/concessions to be paid by seller N/A |
| Lender/Client | Fidelity Homestead Association   Address |
| Appraiser | Brent Boulmay, SRA   Address Central Appraisal Bureau |

| | | | | | |
|---|---|---|---|---|---|
| Location | ☐ Urban ☐ Suburban ☒ Rural | Predominant occupancy | Single family housing | Present land use % | Land use change |
| Built up | ☒ Over 75% ☐ 25-75% ☐ Under 25% | | PRICE $(000) / AGE (yrs) | One Family 50 | ☒ Not Likely ☐ Likely |
| Growth rate | ☐ Rapid ☒ Stable ☐ Slow | ☒ Owner | 35 Low New | 2-4 family 10 | ☐ In process |
| Property values | ☐ Increasing ☒ Stable ☐ Declining | ☐ Tenant | 700 High 80 | Multi-family 5 | To: |
| Demand/supply | ☐ Shortage ☒ In balance ☐ Over supply | ☒ Vacant (0-5%) | Predominant | Commercial 10 | |
| Marketing time | ☐ Under 3 mos. ☒ 3-6 mos. ☐ Over 6 mos. | ☐ Vacant (over 5%)150 | 28 | Vac/Inst 25 | |

Note: Race and the racial composition of the neighborhood are not appraisal factors.

Neighborhood boundaries and characteristics: Forty Arpent Canal, Plaquemines Parish Line, Mississippi River, Judy Drive

Factors that affect the marketability of the properties in the neighborhood (proximity to employment and amenities, employment stability, appeal to market, etc.): Established area of St. Bernard known as "Meraux/Violet/Poydras". Many diverse size, style, age and type properties are evident in the area ranging from mobile homes, small income properties, neighborhood commercial and large custom residences. This diverse property usage is typical for many St. Bernard Parish neighborhoods and is accepted in this market. There is normal access to area conveniences. Properties appear adequately maintained.

Market conditions in the subject neighborhood (including support for the above conclusions related to the trend of property values, demand/supply, and marketing time – such as data on competitive properties for sale in the neighborhood, description of the prevalence of sales and financing concessions, etc.): Conventional, VA and FHA financing are readily available. Some closing costs and points are paid by sellers. Market rates range from 6 1/2 % to 8 1/2 %. Marketing time has somewhat decreased due to the single digit interest rates. Area has a history of average appeal and marketability.

| | | |
|---|---|---|
| Project Information for PUDs   (If applicable) – Is the developer/builder in control of the Home Owners' Association (HOA)? | ☐ Yes ☐ No | |
| Approximate total number of units in the subject project N/A | Approximate total number of units for sale in the subject project N/A | |
| Describe common elements and recreational facilities: N/A | | |

| | | |
|---|---|---|
| Dimensions 185.8 F x 376.94 LS x 199.49 R x 374.26 RS | Topography | Basically level |
| Site area 1,661 +/- acres   Corner Lot ☐ Yes ☒ No | Size | Larger than typical |
| Specific zoning classification and description R-1 Single Family Residential | Shape | Rectangular |
| Zoning compliance ☒ Legal ☐ Legal nonconforming (Grandfathered use) ☐ Illegal ☐ No zoning | Drainage | Appears adequate |
| Highest & best use as improved: ☐ Present use ☒ Other use (explain) Proposed Use | View | Elementary School/Residences |

| Utilities | Public | Other | Off-site Improvements | Type | Public | Private | Landscaping | Typical for new construction |
|---|---|---|---|---|---|---|---|---|
| Electricity | ☒ | | Street | Asphalt | ☒ | | Driveway Surface | Concrete (Brick Scored) |
| Gas | ☒ | | Curb/gutter | Concrete | ☒ | | Apparent easements | See site plan & survey |
| Water | ☒ | | Sidewalk | None | | | FEMA Special Flood Hazard Area | ☐ Yes ☒ No |
| Sanitary sewer | ☒ | | Street lights | Yes | ☒ | | FEMA Zone "B"   Map Date 5/1/85 | |
| Storm sewer | ☒ | | Alley | None | | | FEMA Map No. FIRM#225204-0480 B | |

Comments (apparent adverse easements, encroachments, special assessments, slide areas, illegal or legal nonconforming zoning use, etc.): No adverse easements or encroachments observed from the submitted site plan. Soil conditions appear normal for the area.

| GENERAL DESCRIPTION | EXTERIOR DESCRIPTION | FOUNDATION | BASEMENT | INSULATION |
|---|---|---|---|---|
| No. of Units One | Foundation Concrete | Slab Yes | Area Sq. Ft. | Roof |
| No. of Stories Two | Exterior Walls Brick/Stucco | Crawl Space N/A | % Finished N/A | Ceiling ☒ |
| Type (Det./Att.) Detached | Roof Surface Fiberglass | Basement N/A | Ceiling N/A | Walls ☒ |
| Design (Style) Two Story | Gutters & Dwnspts. Copper | Sump Pump N/A | Walls N/A | Floor |
| Existing/Proposed Proposed | Window Type Wood D/H | Dampness None (P&S) | Floor N/A | None |
| Age (Yrs.) New | Storm/Screens Insulated | Settlement None (P&S) | Outside Entry N/A | Unknown |
| Effective Age (Yrs.) 5-6 | Manufactured House N/A | Infestation None (P&S) | | Average/Good |

| ROOMS | Foyer | Living | Dining | Kitchen | Den | Family Rm. | Rec. Rm. | Bedrooms | # Baths | Laundry | Other | Area Sq. Ft. |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Basement | | | | | | | | | | | | |
| Level 1 | 2 | 1 | 1 | 1 | | Parlor Study | | | 2.1 | 1 . | | 3,576 |
| Level 2 | | | | | | Exercise | | 3 | 3 | 1 | Bkft. | 1876 |

Finished area above grade contains: 11 Rooms; 4 Bedroom(s); 5.10 Bath(s); 5,452 Square Feet of Gross Living Area

| INTERIOR | Materials/Condition | HEATING | KITCHEN EQUIP. | ATTIC | AMENITIES | CAR STORAGE: |
|---|---|---|---|---|---|---|
| Floors | Wood/Marble/Tile/Carpet | Type Central | Refrigerator ☒ | None ☒ | Fireplace(s) # ☒ | None ☒ |
| Walls | Drywall/Ceramic | Fuel Gas | Range/oven ☒ | Stairs ☒ | Patio ☒ | Garage # of cars |
| Trim/Finish | Wood/Good | Condition New | Disposal ☒ | Drop Stair ☒ | Deck ☒ | Attached 3 |
| Bath Floor | Ceramic/Marble | COOLING | Dishwasher ☒ | Scuttle ☒ | Porch ☒ | Detached |
| Bath Wainscot | Ceramic/Marble | Central Yes | Fan/Hood ☒ | Floor ☒ | Fence ☒ | Built-In |
| Doors | Wood/Good | Other N/A | Microwave ☒ | Heated | Pool | Carport |
| Raised panel | | Condition New | Washer/Dryer ☒ | Finished | Garden House ☒ | Driveway Yes |

Additional features (special energy efficient items, etc.): *** See Additional Comments ***

Condition of the improvements, depreciation (physical, functional, and external), repairs needed, quality of construction, remodeling/additions, etc.: Subject is appraised as new construction. See plans and specifications.

Adverse environmental conditions (such as, but not limited to, hazardous wastes, toxic substances, etc.) present in the improvements, on the site, or in the immediate vicinity of the subject property: No environmental hazards were observed or suspected by the appraiser as of the date of the appraisal inspection.

Freddie Mac Form 70 6-93   12 CH.   PAGE 1 OF 2   Fannie Mae Form 1004 6-93

Central Appraisal Bureau, Inc.

Complete Appraisal Analysis Summary Appraisal Report

UNIFC RESIDENTIAL APPRAISAL REPORT

File No. 610728

## COST APPROACH

**Valuation Section**

| | |
|---|---|
| ESTIMATED SITE VALUE | =$ 175,000 |
| ESTIMATED REPRODUCTION COST-NEW-OF IMPROVEMENTS: | |
| Dwelling 5,452 Sq. Ft. @ $ 102.00 = $ | 556,104 |
| Sq. Ft. @ $ = | |
| Porch/Patio/Balcony/Garden House = | 30,000 |
| Garage/Carport 965 Sq. Ft. @ $ 32.00 = $ | 30,880 |
| Total Estimated Cost New = $ | 616,984 |
| Less Physical Functional External | |
| Depreciation 60,000 = $ | 60,000 |
| Depreciated Value of Improvements = $ | 556,984 |
| "As-is" Value of Site Improvements = $ | 15,000 |
| INDICATED VALUE BY COST APPROACH 746,984 = $ | 746,984 |

Comments on Cost Approach (such as, source of cost estimate, site value, square foot calculation and for HUD, VA and FmHA, the estimated remaining economic life of the property) Cost figures are derived from 1) Marshall & Swift Residential Cost Service adjusted to the local market, 2) abstracted costs from area new construction and 3) other local sources. See addendum for gross living area calculations. See FIRREA addendum for functional obsolescence comments.

Remaining Economic Life: 55 Remaining Physical Life: 55

## SALES COMPARISON ANALYSIS

| ITEM | SUBJECT | COMPARABLE NO. 1 | | COMPARABLE NO. 2 | | COMPARABLE NO. 3 | |
|---|---|---|---|---|---|---|---|
| Plans & Specs (2104) Olivia Street | | 5601 Marcia Ave. | | 462 Lakeshore Pkwy. | | 215 Fairway Drive | |
| Address Meraux | | New Orleans | | New Orleans | | New Orleans | |
| Proximity to Subject | | 15 miles +/- | | 17 miles +/- | | 15 miles +/- | |
| Sales Price | N/A | $ 745,000 | | $ 775,000 | | $ 775,000 | |
| Price/Gross Liv. Area | $ | $ 143.52 ☑ | | $ 138.39 ☑ | | $ 158.29 ☑ | |
| Data and/or Verification Source | Inspection | Deedfax/Multi List Service Closing Date * | | Deedfax/Multi List Service Closing Date * | | Deedfax/Multi List Service Closing Date * | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | + (-) $ Adjustment | DESCRIPTION | + (-) $ Adjustment | DESCRIPTION | + (-) $ Adjustment |
| Sales or Financing Concessions | | Conventional Sale | | Cash Sale | | Conventional Sale | |
| Date of Sale/Time | | 9/28/2001 * | | 8/14/2001 * | | 12/21/2001 * | |
| Location | Average | **Comments | | ** Comments | | ** Comments | |
| Leasehold/Fee Simple | Fee Simple | Fee Simple | | Fee Simple | | Fee Simple | |
| Site | 1.661 acres +/- | **70x155 | -60,000 | **100/91x135 | -70,000 | **75x120 | -110,000 |
| View | Average | Average | | Average | | Average | |
| Design and Appeal | Two Story | Two Story | | Cape Cod | | 2 1/2 Story | |
| Quality of Construction | Excellent | Similar | | Similar | | Similar | |
| Age | New | 33 yrs. +/- | | 36 yrs. +/- | | 45 & Addn. | |
| Condition | New (P&S) | Inferior | +40,000 | Inferior | +47,000 | Inferior | +45,000 |
| Above Grade Room Count | Total 11 Bdrms 4 Baths 5.10 | Total 12 Bdrms 5 Baths 5.1 | | Total 12 Bdrms 5 Baths 5.2 | -3,000 | Total 10 Bdrms 5 Baths 3.1 | +8,000 |
| Gross Living Area | 5,452 Sq. Ft. | 5,191 Sq. Ft. | +15,500 | 5,600 Sq. Ft. | -9,000 | 4,896 Sq. Ft. | +33,500 |
| Basement & Finished Rooms Below Grade | None | None | | None | | None | |
| Functional Utility | Average | Superior | -60,000 | Superior | -60,000 | Superior | -60,000 |
| Heating/Cooling | Central A/H | Central A/H | | Central A/H | | Central A/H | |
| Energy Efficient Items | Average | Average | | Average | | Average | |
| Garage/Carport | 3 Garage | Parking Pads | +20,000 | Metal Carport | +18,000 | Garage | +13,000 |
| Porch, Patio, Deck, Fireplace(s), etc. | Porch/Patio/Balcony Garden House/Fireplace | Pool/Similar Site | | Pool/Similar Site | | Pool/Similar Site | |
| Fence, Pool, etc. | Fence/Site | Improvements | | Improvements | | Improvements | |
| Builtins | Yes | Yes | | Yes | | Yes | |
| Net Adj. (total) | | + X - $ | -44,500 | + X - $ | -77,000 | + X - $ | -70,500 |
| Adjusted Sales Price of Comparable | | Gross 26.2% Net -6.0% $ | 700,500 | Gross 26.7% Net -9.9% $ | 698,000 | Gross 34.8% Net -9.1% $ | 704,500 |

Comments on Sales Comparison (including the subject property's compatibility to the neighborhood, etc.): The market sales were researched for recent sales activity of homes with similar quality, age, size, condition and proximity to the subject. There were no sales available from the St. Bernard Parish area. Comparable selection was expanded to comparable areas of Greater New Orleans where the most similar properties were found. There are other very large custom built homes scattered throughout St. Bernard Parish, however, sales of these properties are very infrequent. * The comparable sales superior locations are somewhat off-set by the subject's superior site size. See addendum for additional market comments.

| ITEM | SUBJECT | COMPARABLE NO. 1 | COMPARABLE NO. 2 | COMPARABLE NO. 3 |
|---|---|---|---|---|
| Date, Price and Data Source, for prior sales within year of appraisal | See F.I.R.R.E.A Addendum | N/A | N/A | N/A |

Analysis of any current agreement of sale, option, or listing of the subject property and analysis of any prior sales of subject and comparables within one year of the date of appraisal: See F.I.R.R.E.A. addendum.

| | |
|---|---|
| INDICATED VALUE BY SALES COMPARISON APPROACH | ........$ 700,000 |
| INDICATED VALUE BY INCOME APPROACH (If Applicable) Estimated Market Rent $ N/A /Mo. x Gross Rent Multiplier N/A = $ | N/A |

## RECONCILIATION

This appraisal is made ☐ "as is" ☐ subject to the repairs, alterations, inspections or conditions listed below ☒ subject to completion per plans and specifications.

Conditions of Appraisal: Single family dwellings are seldom purchased for income producing purposes. Therefore, the Income Approach to value lacks good rationale & is not used in this report.

Final Reconciliation: The Market Data Analysis was considered the best indicator of value as it best reflects the actions and motivations of buyers and sellers of properties in this market with strong support provided by the Cost approach.

The purpose of this appraisal is to estimate the market value of the real property that is the subject of this report, based on the above conditions and the certification, contingent and limiting conditions, and market value definition that are stated in the attached Freddie Mac Form 439/Fannie Mae Form 1004B (Revised 06/93 ).

I (WE) ESTIMATE THE MARKET VALUE, AS DEFINED, OF THE REAL PROPERTY THAT IS THE SUBJECT OF THIS REPORT, AS OF March 21, 2002 (WHICH IS THE DATE OF INSPECTION AND THE EFFECTIVE DATE OF THIS REPORT) TO BE $ 700,000

| APPRAISER: | SUPERVISORY APPRAISER (ONLY IF REQUIRED): |
|---|---|
| Signature _Brent Boulmay_ | Signature | ☐ Did ☐ Did Not |
| Name Brent Boulmay, SRA | Name | Inspect Property |
| Date Report Signed March 22, 2002 | Date Report Signed | |
| State Certification # R0261 State LA | State Certification # | State |
| Or State License # State | Or State License # | State |

Central Appraisal Bureau, Inc.

| | File No. | 610728 |
|---|---|---|
| **ADDITIONAL COMMENTS** | | |

| | | | | |
|---|---|---|---|---|
| Borrower or Owner | Michael & Alice Ginart | | | |
| Property Address | Plans & Specs (2104) Olivia Street | | | |
| City | Meraux | County | St. Bernard | State | La | Zip Code | 70075 |
| Lender or Client | Fidelity Homestead Association | | | |

## ADDITIONAL FEATURES

Security alarm, Corian counter tops, raised panel wood door, raised ceilings, crown moldings, elevator, real brick fireplace, extra insulation, ice maker beer refrigerator, wine cooler, wet bar, custom built storage units, heated floor system in the master bath, stained glass window,  vinyl clad wood insulated windows, custom made brick/iron fence, exposed wood beams in the living room, built-in entertainment unit in the exercise/kid's den,  3 car garage, garden house,  porches, balconies, patio, paving, site.

## COMMENTS ON SALES COMPARISON

Condition adjustments reflect the effective ages of the comparable sales with consideration given to actual age, maintenance, renovation/refurbishment work and short-lived items. Size adjustments are based on a diminished cost per square foot differential with consideration given to room count and overall utility. All three sales are not suffering any measurable functional (superadequacy) obsolescence, therefore , negative adjustments have been taken. All other adjustments are based on the estimated market reaction to the presence or lack of varying auxiliary amenities and not based on the estimated cost of those items. Comparables used are the most recent known to the appraiser where all necessary data needed to facilitate proper adjustments were available. Due to the location, site size, condition, functional utility and gross living area of the subject in relation to the sales found, some large adjustments were necessary which exceeded typical gross dollar adjustments. Due to a lack of recent sales of similar size properties in the general area, it was necessary to use some sales which closed more than six months ago to compare to the subject. These sales are nevertheless considered valid indicators of value.

File No. 610728

## SQUARE FOOTAGE CALCULATION ADDENDUM

| | |
|---|---|
| Borrower or Owner | Michael & Alice Ginart |
| Property Address | Plans & Specs (2104) Olivia Street |
| City Meraux | County St. Bernard    State La    Zip Code 70075 |
| Lender or Client | Fidelity Homestead Association |

**GROSS AREA (GLA/GBA)**     5,452   sf

| Area(s) | Square Footage |
|---|---|
| Basement | sf |
| Level 1 | 3,576 sf |
| Level 2 | 1,876 sf |
| Level 3 | sf |
| Car Stg | 965 sf |
| Other | sf |

| Area Measurements | | | | Area | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Measurements | Factor | Total | Basement | 1 | 2 | 3 | Car Stg | Other | |
| 84.67 × 61.34 × 1.00 = 5,193.66 | | | | X | | | | | |
| -18.50 × 17.67 × 1.00 = -326.89 | | | | X | | | | | |
| -18.50 × 16.50 × 1.00 = -305.25 | | | | X | | | | | |
| -24.87 × 25.00 × 1.00 = -621.75 | | | | X | | | | | |
| -8.23 × 8.33 × 0.50 = -34.28 | | | | X | | | | | |
| -15.58 × 8.50 × 1.00 = -132.43 | | | | X | | | | | |
| -7.00 × 18.00 × 1.00 = -126.00 | | | | X | | | | | |
| -4.00 × 4.67 × 1.00 = -18.68 | | | | X | | | | | |
| -24.33 × 2.17 × 1.00 = -52.80 | | | | X | | | | | |
| × = | | | | | | | | | |
| 47.67 × 42.75 × 1.00 = 2,037.89 | | | | | X | | | | |
| -26.96 × 6.00 × 1.00 = -161.76 | | | | | X | | | | |
| × = | | | | | | | | | |
| Garage × = | | | | X | | | | | |
| 24.33 × 39.67 × 1.00 = 965.17 | | | | | | | X | | |

Central Appraisal Bureau, Inc.

File No. 610728

# F.I.R.R.E.A. ADDENDUM

Borrower or Owner  Michael & Alice Ginart
Property Address  Plans & Specs (2104) Olivia Street
City  Meraux          County  St. Bernard          State  La          Zip Code  70075
Lender or Client  Fidelity Homestead Association

## Purpose of the Appraisal

The purpose of the appraisal is to estimate the market value of the subject property as defined herein.

## Scope of the Appraisal

The appraisal is based on the information gathered by the appraiser from public records, other identified sources, inspection of the subject property and neighborhood, and selection of sales within the subject market area. The original source of the comparables is shown in the Data Source section of the market grid along with the source of conformation, if available. The sources and data are considered reliable. Cost figures are derived from cost services, market abstractions from area new construction and by the appraiser's knowledge of the local market. Physical depreciation, if any, is based on the effective age of the subject property. Functional and/or external depreciation, if present, is specifically addressed in the appraisal report or other addendums.

## Report of the prior year sales history for the subject property

Is the subject property currently listed?  Yes ☐  No ☒     List Price: $ N/A
Has the property sold during the prior year?  Yes ☐  No ☒     If yes, describe below

According to the data utilized in preparing the report, the property has not transferred within the past 12 months.

## Marketing Time

What is your estimate of marketing time for the subject property?  12          months     Describe below the basis (rationale) for your estimate?

The estimated marketing time is derived from statistical data published on a quarterly basis by the Multi-List Service affiliated with the New Orleans Metropolitan Association of Realtors, Inc. for the subject area, and in consideration of factors otherwise stated in the accompanying appraisal report that are specific to the subject property. This marketing time is dependent on the subject property being actively and aggressively marketed by a professional manager or real estate agent. This marketing time is also dependent on the local economy not deteriorating and the supply of "for sale" properties not substantially increasing during this marketing period. See additional comments below.

## Non-real property transfers

Does the transaction involve the transfer of personal property, fixtures, or intangibles that are not real property?  Yes ☐  No ☒
If yes, provide description and valuation below.

The Cost Approach to value was adjusted for incurable functional obsolescence (superadequacy) due to the superior building materials, large gross living area and excessive site improvements which are atypical of most St. Bernard Parish residences. It is estimated that $60,000 of the depreciated reproduction cost of the improvements would be attributable to this superadequacy.

## Additional Comments

The majority of what is known as the "Greater New Orleans Area" is surrounded by water or wetlands, which restricts the availability of vacant land that can be developed for construction. This factor has been intensified by the recent Wetlands Act, which further restricts land use in this general area. The restriction of vacant land coupled with the predictable forces of supply and demand result in a continuing escalation of land values in the already developed areas. This escalation is especially prevalent in higher income residential areas such as the subject's area. Land to value ratios of 50% or greater are not unusual in many New Orleans areas, and these ratios are readily accepted by the buying market.

## Additional Certification

1. The acceptance of this appraisal assignment by the appraiser was not based on a requested minimum valuation, a specified valuation, or an approval of the loan.

2. The appraiser certifies that the compensation for this appraisal is not contingent upon the reporting of a predetermined value or direction in value that favors the cause of the client, the amount of the value estimate, the attainment of a stipulated result of the occurrence of a subsequent event.

3. This appraisal has been prepared to conform with the Uniform Standards of Professional Appraisal practice ("USPAP") adopted by the Appraisal Standards Board of the Appraisal foundation, except the Departure Provision, unless otherwise stated below.

4. The appraiser has disclosed within this appraisal report, or below, all steps taken that were necessary or appropriate to comply with the Competency provision of the USPAP.

The Appraiser certifies and agrees that: Analyses, opinions and conclusions herein stated were developed, and this report was prepared, in conformity with the Uniform Standards of Professional Appraisal Practice(USPAP), and in accordance with the regulations developed by the Lenders Federal Agency as required by FIRREA.          COMPETENCY PROVISION: The appraiser has completed previous appraisals of similar type properties.

CONTINUING EDUCATION STATUS: As of the date of this report, I, Brent F. Boulmay, have completed the requirements under the continuing education program of the Appraisal Institute.

Date: March 21, 2002          Appraiser(s):          _Brent Boulmay_ (signature)
                                        Brent Boulmay, SRA

Date:                          Review Appraiser(s):

Form 953          Copyright (c) 1991, 1992 Software for Real Estate Professionals          Revision, 1/92
Central Appraisal Bureau, Inc.

## Construction Costs and Analysis

Mike and Alice Ginart

| Item No. | Estimate | Description | |
|---|---|---|---|
| 1 | $ 4,000 | Plans & Specs & Prints | pre-pind |
| 2 | $ 1,500 | Permit | |
| | | **Deposits** | |
| 3 | $ 200 | Electric | |
| 4 | $ 1,000 | Water | |
| 5 | $ 150 | Gas | |
| | | **On Site Improvements** | |
| 6 | $ 500 | Clearing Lot | ⎫ pre-pind |
| 7 | $ 5,000 | Filling for lot/Dozer Work/Final Grad | ⎬ |
| 8 | $ 8,000 | Surveys:Lot,Form Elevation, Improvements,Grade Elevations | pre-pind |
| | | **Insurances** | |
| 9 | $ 500 | Builders Risk | |
| 10 | $ 300 | Flood | |
| 11 | $ 1,500 | Workmans Compensation/Owners Protective Liability | |
| | | **Foundation & Concrete Work** | |
| 12 | 0 | Piling | |
| 13 | $ 8,000 | Labor for Layout,Forming,Excavation-Finishing | |
| 14 | $ 2,500 | Materials-Ref Rods/Mesh/Visqueen | |
| 15 | $ 12,500 | 205 Yards of Concrete | |
| 16 | $ 500 | Pump Truck | |
| 17 | $ 2,000 | Materials - Sidewalks, Drive, Patio | |
| 18 | $ 2,200 | Termite Proofing | |
| 19 | $ 5,000 | Labor - Sidewalks, Drive, Patio | |
| 20 | $ 500 | Termite Proofing | |
| | | **Materials** | |
| 21 | $ 33,000 | Lumber | |
| 22 | $ 15,000 | Millwork | |
| 23 | $ 20,000 | Windows & Screen/Sliding Glass Doors | |
| 24 | $ 3,000 | Overhead Garage Doors | |
| 25 | $ 8,000 | Closet Shelving — not doing | |
| 26 | $ 1,000 | Mirrors | |
| 27 | $ 1,000 | Hardware - Nails, Cleats,Clips, Etc. | |
| | | **Built In Equipment** | |
| 28 | $ 21,000 | Kitchen Cabinets | |
| 29 | $ 6,200 | Vanities for Baths | |
| 30 | $ 2,400 | Countertops | |
| 31 | $ 17,000 | Kitchen Appliances | |
| | | **Plumbing** | |
| 32 | $ 28,000 | Installation,Underground/Wall Rough Ins/Fixtures Installed | |
| 33 | $ 10,000 | All Fixtures,Baths,Kitchen,Utility | |
| 34 | $ 1,500 | Sewerage Connection | |
| 35 | $ - | Well and Pump | |
| | | **Heating & Air Conditioning** | |
| 36 | $ 10,000 | Heat/AC _____ tons(Down)_____ tons (Up) | |
| 37 | $ 18,000 | Labor | |
| | | **Electrical** | |
| 38 | $ 10,000 | Fixtures and allowance | |
| 39 | $ 35,000 | Labor & Materials | |
| 40 | $ 1,500 | Phone Lines - Cable T.V. Lines | |

RECEIVED

MAR 0 8 2002

FIDELITY HOMESTEAD

| 41 | $ | 2,500 | Security System |
|---|---|---|---|
| | | | **Insulation** |
| 42 | $ | 8,000 | Walls and Ceilings |
| | | | **Roofing** |
| 43 | $ | 3,000 | Materials,Roof Vents |
| 44 | $ | 4,500 | Labor |
| | | | **Sheet Metal** |
| 45 | $ | 2,500 | Materials and Labor (Hood Vents,Flashing,Gutters,Bath,Vents) |
| | | | **Brick** |
| 46 | $ | 11,500 | 38,000 Brick @ .30 per thousand |
| 47 | $ | 12,000 | Labor |
| 48 | $ | 2,500 | Mortar, Wall ties,lintels,Sand |
| 49 | $ | - | Siding Type & Labor |
| 50 | $ | 6,000 | Stucco (Labor and Materials) |
| 51 | $ | 3,000 | Fireplace (Labor and Materials) |
| | | | **Sheetrock** |
| 52 | $ | 8,500 | Materials |
| 53 | $ | 4,500 | Labor |
| | | | **Painting** |
| 54 | $ | 8,000 | Materials (Paint,Caulk,Cleanup) |
| 55 | $ | 10,000 | Labor |
| 56 | | | Wallpaper |
| 57 | | | Labor |
| | | | **Flooring** |
| 58 | $ | 4,000 | Bath Ceramic Tile Materials/Labor |
| 59 | | | Vinyl/Labor |
| 60 | $ | 12,000 | Hardwood/Labor |
| 61 | $ | 7,000 | Carpet/Labor |
| | | | **Ceramic Tile Work (Walls or Showers)** |
| 62 | $ | 6,000 | Materials |
| 63 | $ | 7,000 | Installation/Labor |
| | | | **Marble Tops - Bowles - Walls** |
| 64 | $ | 2,500 | Tops Bath Vanities: Marble or Formica |
| 65 | $ | 1,500 | Bowles Bath: Marble or Plumbing Fixture |
| 66 | $ | 1,500 | Tub Alcoves:Marble |
| 67 | $ | 1,500 | Walls:Marble or |
| 68 | $ | 1,500 | Shower Stalls:Marble or |
| | | | **Labor Carpentry** |
| 69 | $ | 41,000 | Rough Framing |
| 70 | $ | 15,000 | Finish Trim |
| | | | **Misc Items** |
| 71 | $ | 25,000 | Special Steel Materials (Beams,Flitch Plates) |
| 72 | $ | 10,000 | Fence |
| 73 | | | Pool |
| 74 | | | Landscaping |
| 75 | $ | 4,400 | Clean Up Job |
| 76 | $ | 3,000 | Rental Equipment (Port O Lets,etc.) |
| 77 | $ | - | Contingencies |
| | $ | - | Supervision |
| | | | Overhead |
| | | | Profit |
| | $ | 526,850 | Total |



**Comparable Market Data**

ic No.  610728

**DEFINITION OF MARKET VALUE:** The most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller, each acting prudently, knowledgeably and assuming the price is not affected by undue stimulus. Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby: (1) buyer and seller are typically motivated; (2) both parties are well informed or well advised, and each acting in what he considers his own best interest; (3) a reasonable time is allowed for exposure in the open market; (4) payment is made in terms of cash in U.S. dollars or in terms of financial arrangements comparable thereto; and (5) the price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions* granted by anyone associated with the sale.

*Adjustments to the comparables must be made for special or creative financing or sales concessions. No adjustments are necessary for those costs which are normally paid by sellers as a result of tradition or law in a market area; these costs are readily identifiable since the seller pays these costs in virtually all sales transactions. Special or creative financing adjustments can be made to the comparable property by comparisons to financing terms offered by a third party institutional lender that is not already involved in the property or transaction. Any adjustment should not be calculated on a mechanical dollar for dollar cost of the financing or concessions but the dollar amount of any adjustment should approximate the market's reaction to the financing or concessions based on the appraiser's judgment.

## STATEMENT OF LIMITING CONDITIONS AND APPRAISER'S CERTIFICATION

**CONTINGENT AND LIMITING CONDITIONS:** The appraiser's certification that appears in the appraisal report is subject to the following conditions:

1.  The appraiser will not be responsible for matters of a legal nature that affect either the property being appraised or the title to it. The appraiser assumes that the title is good and marketable and, therefore, will not render any opinions about the title. The property is appraised on the basis of it being under responsible ownership.

2.  The appraiser has provided a sketch in the appraisal report to show approximate dimensions of the improvements and the sketch is included only to assist the reader of the report in visualizing the property and understanding the appraiser's determination of its size.

3.  The appraiser has examined the available flood maps that are provided by the Federal Emergency Management Agency (or other data sources) and has noted in the appraisal report whether the subject site is located in an identified Special Flood Hazard Area. Because the appraiser is not a surveyor, he or she makes no guarantees, express or implied, regarding this determination.

4.  The appraiser will not give testimony or appear in court because he or she made an appraisal of the property in question, unless specific arrangements to do so have been made beforehand.

5.  The appraiser has estimated the value of the land in the cost approach at its highest and best use and the improvements at their contributory value. The separate valuations of the land and improvements must not be used in conjunction with any other appraisal and are invalid if they are so used.

6.  The appraiser has noted in the appraisal report any adverse conditions (such as, needed repairs, depreciation, the presence of hazardous wastes, toxic substances, etc.) observed during the inspection of the subject property or that he or she became aware of during the normal research involved in performing the appraisal. Unless otherwise stated in the appraisal report, the appraiser has no knowledge of any hidden or unapparent conditions of the property or adverse environmental conditions (including the presence of hazardous wastes, toxic substances, etc.) that would make the property more or less valuable, and has assumed that there are no such conditions and makes no guarantees or warranties, express or implied, regarding the condition of the property. The appraiser will not be responsible for any such conditions that do exist or for any engineering or testing that might be required to discover whether such conditions exist. Because the appraiser is not an expert in the field of environmental hazards, the appraisal report must not be considered as an environmental assessment of the property.

7.  The appraiser obtained the information, estimates, and opinions that were expressed in the appraisal report from sources that he or she considers to be reliable and believes them to be true and correct. The appraiser does not assume responsibility for the accuracy of such items that were furnished by other parties.

8.  The appraiser will not disclose the contents of the appraisal report except as provided for in the Uniform Standards of Professional Appraisal Practice.

9.  The appraiser has based his or her appraisal report and valuation conclusion for an appraisal that is subject to satisfactory completion, repairs, or alterations on the assumption that completion of the improvements will be performed in a workmanlike manner.

10.  The appraiser must provide his or her prior written consent before the lender/client specified in the appraisal report can distribute the appraisal report (including conclusions about the property value, the appraiser's identity and professional designations, and references to any professional appraisal organizations or the firm with which the appraiser is associated) to anyone other than the borrower; the mortgagee or its successors and assigns; the mortgage insurer; consultants; professional appraisal organizations; any state or federally approved financial institution; or any department, agency, or instrumentality of the United States or any state or the District of Columbia; except that the lender/client may distribute the property description section of the report only to data collection or reporting service(s) without having to obtain the appraiser's prior written consent. The appraiser's written consent and approval must also be obtained before the appraisal can be conveyed by anyone to the public through advertising, public relations, news, sales, or other media.

le No.   610728

## APPRAISER'S CERTIFICATION:   The Appraiser certifies and agrees that:

1.   I have researched the subject market area and have selected a minimum of three recent sales of properties most similar and proximate to the subject property for consideration in the sales comparison analysis and have made a dollar adjustment when appropriate to reflect the market reaction to those items of significant variation. If a significant item in a comparable property is superior to, or more favorable than, the subject property, I have made a negative adjustment to reduce the adjusted sales price of the comparable and, if a significant item in a comparable property is inferior to, or less favorable than the subject property, I have made a positive adjustment to increase the adjusted sales price of the comparable.

2.   I have taken into consideration the factors that have an impact on value in my development of the estimate of market value in the appraisal report. I have not knowingly withheld any significant information from the appraisal report and I believe, to the best of my knowledge, that all statements and information in the appraisal report are true and correct.

3.   I stated in the appraisal report only my own personal, unbiased, and professional analysis, opinions, and conclusions, which are subject only to the contingent and limiting conditions specified in this form.

4.   I have no present or prospective interest in the property that is the subject to this report, and I have no present or prospective personal interest or bias with respect to the participants in the transaction. I did not base, either partially or completely, my analysis and/or the estimate of market value in the appraisal report on the race, color, religion, sex, handicap, familial status, or national origin of either the prospective owners or occupants of the subject property or of the present owners or occupants of the properties in the vicinity of the subject property.

5.   I have no present or contemplated future interest in the subject property, and neither my current or future employment nor my compensation for performing this appraisal is contingent on the appraised value of the property.

6.   I was not required to report a predetermined value or direction in value that favors the cause of the client or any related party, the amount of the value estimate, the attainment of a specific result, or the occurrence of a subsequent event in order to receive my compensation and/or employment for performing the appraisal. I did not base the appraisal report on a requested minimum valuation, a specific valuation, or the need to approve a specific mortgage loan.

7.   I performed this appraisal in conformity with the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place as of the effective date of this appraisal, with the exception of the departure provision of those Standards, which does not apply.   I acknowledge that an estimate of a reasonable time for exposure in the open market is a condition in the definition of market value and the estimate I developed is consistent with the marketing time noted in the neighborhood section of this report, unless I have otherwise stated in the reconciliation section.

8.   I have personally inspected the interior and exterior areas of the subject property and the exterior of all properties listed as comparables in the appraisal report. I further certify that I have noted any apparent or known adverse conditions in the subject improvements, on the subject site, or on any site within the immediate vicinity of the subject property of which I am aware and have made adjustments for these adverse conditions in my analysis of the property value to the extent that I had market evidence to support them. I have also commented about the effect of the adverse conditions on the marketability of the subject property.

9.   I personally prepared all conclusions and opinions about the real estate that were set forth in the appraisal report. If I relied on significant professional assistance from any individual or individuals in the performance of the appraisal or the preparation of the appraisal report, I have named such individual(s) and disclosed the specific tasks performed by them in the reconciliation section of this appraisal report. I certify that any individual so named is qualified to perform the tasks. I have not authorized anyone to make a change to any item in the report; therefore, if an unauthorized change is made to the appraisal report, I will take no responsibility for it.

## SUPERVISORY APPRAISER'S CERTIFICATION:   If a supervisory appraiser signed the appraisal report, he or she certifies and agrees that: I directly supervise the appraiser who prepared the appraisal report, have reviewed the appraisal report, agree with the statements and conclusions of the appraiser, agree to be bound by the appraiser's certifications numbered 4 through 7 above, and am taking full responsibility for the appraisal and the appraisal report.

## ADDRESS OF PROPERTY APPRAISED:   Plans & Specs (2104) Olivia Street, Meraux, La  70075

| APPRAISER: | SUPERVISORY APPRAISER:   (only if required): |
|---|---|
| Signature: _Brent Boulmay_ | Signature: _____ |
| Name:  Brent Boulmay, SRA | Name: _____ |
| Date Signed:   March 21, 2002 | Date Signed: _____ |
| State Certification #:   R0261 | State Certification #: _____ |
| or State License #: _____ | or State License #: _____ |
| State:  LA | State: _____ |
| Expiration Date of Certification or License:   12/31/2002 | Expiration Date of Certification or License: _____<br>☐ Did   ☐ Did Not Inspect Property |

Central Appraisal Bureau, Inc.

NEED INSURANCE VERIFICATION
PURCHASE - ACT OF SALE _____

REFINANCE - _____ *N/C*

FIDELITY HOMESTEAD ASSOCIATION
APPRAISAL DESK REVIEW 1-4 FAMILY

BORROWER _____ *Dinait*

PROPERTY
ADDRESS _N/C 2104 OLIVIA ST, MERAUX_

DATE _3/27_ APPLICATION # _11231GEN_

REVIEWER _____

## INTRODUCTION

ADEQUATE

|  | YES | NO | N/A |
|---|---|---|---|
| 1. Appraiser's Certification provided and signed? | ✓ | | |
| 2. Legal description included? | ✓ | | |
| 3. One-year subject sales history included? Prior sales analyzed and discussed? | | | ✓ |
| 4. Current listing, option, or pending contract on subject revealed and analyzed? | | | ✓ |

## NEIGHBORHOOD

| 5. Has the appraiser adequately explained unfavorable neighborhood influences (e.g. subject neighborhood developed less than 25%, a slow growth rate, declining property values, oversupply, and over six-month marketing period? | | | ✓ |
|---|---|---|---|
| 6. Does the market value estimate fall within the predominant price range of the neighborhood? | ✓ | | |

## PROPERTY DESCRIPTION

| 7. Is current zoning consistent with highest and best use? | ✓ | | |
|---|---|---|---|
| 8. FEMA FLOOD HAZARD: THE PROPERTY IS LOCATED IN A FEMA SPECIAL FLOOD HAZARD. | | | ✓ |
| 9. Photographs of subject property included? | ✓ | | |
| 10. AGE ESTIMATES: The estimates of "Effective Age", "Actual Age" and "Remaining Economic Life" are consistent with each other and with the description of the condition of the improvements and the estimates of "Physical Deterioration" and "Functional Obsolescence". | | ✓ | |

## COST APPROACH        *Depreadequacy*

| 11. Living area calculations presented on form or addenda, and is the area calculated correctly" | | ✓ | |
|---|---|---|---|
| 12. Replacement cost sources listed? | ✓ | | |
| 13. Does the estimate of depreciation appear reasonable based on the property's age? | | ✓ | |

## SALES COMPARISON APPROACH

1

14. Are improved sales current (within one year) and comparable, and if not has it been adequately explained?

15. Improved sales adjusted for sales or financing concessions (e.g. cash equivalency)?

16. Are the sales in reasonable proximity to the subject?

17. Does the market value estimate fall within the range indicated by the sales before and after adjustment?

18. Is there an explanation for net adjustment in excess of 15%?

19. Is there an explanation for total gross adjustments in excess of 25%?

20. Does the appraiser explain any variances from the above guidelines?

## INCOME APPROACH (TWO-FOUR UNIT DWELLINGS ONLY)

21. Was the Gross Market Rent and Gross Rent Multiplier adequately supported?

## RECONCILIATION AND FINAL VALUE ESTIMATE

22. Final value estimate consistent with the data presented?

23. Has the appraiser estimated the market value as is?

24. Has the appraiser estimated a market price subject to repairs?  If so, has a list of repairs and/or a cost estimate been provided?

## OTHER REPORT REQUIREMENTS

25. Building sketch showing exterior dimensions, interior layout and all major out-building & site improvements (pool, cabana, etc.)?

26. Map showing location of subject & all comparables included?

3/28

ADDITIONAL COMMENTS:
_Lost Value- Adjustment to the effective age is due to the inadequacy of building even though it is N/C per Brent._

2

## APPRAISAL OF REAL PROPERTY

**LOCATED AT:**
2104 Olivia St
LOT W-2-A DEBOUCHEL PLANTATION.
MERAUX, LA 70075-2654

**FOR:**
PRIVATE

**AS OF:**
AUGUST 28, 2005

**BY:**
CHARLES RUFFINO
750 E. I-10 SERVICE ROAD SUITE F
SLIDELL, LA 70461
FOR RUFFINO AND ASSOCIATES, INC.

RUFFINO AND ASSOCIATES, INC.
750 E. I-10 SERVICE ROAD
SLIDELL, LA 70461


MARCH 2, 2007


PRIVATE



Re: Property:     2104 Olivia St
                  MERAUX, LA 70075-2654
    Borrower:     PRIVATE
    File No.:


In accordance with your request, we have appraised the above referenced property. The report of that appraisal is
attached.

The purpose of this appraisal is to estimate the market value of the property described in this appraisal report, as
improved, in unencumbered fee simple title of ownership.

This report is based on a physical analysis of the site and improvements, a locational analysis of the neighborhood and
city, and an economic analysis of the market for properties such as the subject. The appraisal was developed and the
report was prepared in accordance with the Uniform Standards of Professional Appraisal Practice.

The value conclusions reported are as of the effective date stated in the body of the report and contingent upon the
certification and limiting conditions attached.

It has been a pleasure to assist you. Please do not hesitate to contact me or any of my staff if we can be of additional
service to you.


Sincerely,



CHARLES RUFFINO
LOUISIANA CERTIFIED RESIDENTIAL
REAL ESTATE APPRAISER R0410

**Freddie Mac**
Federal
Home Loan
Mortgage
Corporation

Owned by America's
Savings Institutions

**Second Mortgage**
**Property Value Analysis Report**

## Borrower/Subject Property Information

| | | |
|---|---|---|
| Borrower PRIVATE | Census Tract 0302.09 | Map Reference SF 81 |
| Property Address 2104 Olivia St | Check one: ☒ SF ☐ PUD ☐ CONDO ☐ 2-4 Units | |
| City MERAUX | County ST. BERNARD  State LA | Zip Code 70075-2654 |
| Phone No. Res. N/A | Loan Amount Requested $ N/A  Term  Mos. Owner's Est. of Value $ N/A | |

| No. of Rooms | No. of Bedrooms | No. of Baths | Family room or den | Gross Living Area | Garage/Carport (specify type & no.) | Porches, Patio or Pool (specify) | Central Air |
|---|---|---|---|---|---|---|---|
| 21 | 6 | 5.5 | ☒ Yes ☐ No | 8,000 Sq. Ft. | 3-GARAGE | PRCH,PAT | ☒ Yes ☐ No |

## Field Report

**NEIGHBORHOOD**

| | | | | | | Good | Avg. | Fair | Poor |
|---|---|---|---|---|---|---|---|---|---|
| Location | ☐ Urban | ☒ Suburban | ☐ Rural | | Property Compatibility | | ☒ | | |
| Built Up | ☒ Over 75% | ☐ 25% to 75% | ☐ Under 25% | | General Appearance of Properties | | ☒ | | |
| Growth Rate ☒ Fully Dev. | ☐ Rapid | ☐ Steady | ☐ Slow | | Appeal to Market | | ☒ | | |
| Property Values | ☐ Increasing | ☒ Stable | ☐ Declining | | | | | | |
| Demand/Supply | ☐ Shortage | ☒ In Balance | ☐ Over Supply | | | | | | |
| Marketing Time | ☐ Under 3 Mos. | ☒ 4-6 Mos. | ☐ Over 6 Mos. | | | | | | |

Present Land Use  95% 1 Family  % 2-4 Family  % Apts.  % Condo  % Commercial  % Industrial  % Vacant  %
Change in Present Land Use  ☒ Not Likely  ☐ Likely  ☐ Taking Place Frm.  To
Predominant Occupancy  ☒ Owner  ☐ Tenant  % Vacant
S.F. Price Range $ 75,000  to $ 1,500,000  $ 1,000,000  ← Predominant Value
S.F.Family Age  0 yrs. to  50 yrs.  Predominant Age  25 yrs.

**Note: Freddie Mac does not consider race or the racial composition of the neighborhood to be reliable appraisal factors.**

Comments including those factors affecting marketability (e.g. public parks, schools, view, noise):   AREA OF RESIDENTIAL FAMILY HOMES. CLOSE
TO ALL CONSUMER SERVICES, GOOD ACCESS TO MAJOR THOROUGHFARES. NO UNFAVORABLE FACTORS
APPARENT AT THE TIME OF THE INSPECTION.   "THIS IS A LIMITED APPRAISAL SUMMARY REPORT."
OBSERVATIONS NOT WARRANTED BY APPRAISER.

**SUBJECT PROPERTY**

Approx. Yr. Blt. 20  Q3# Units  1 # Stories TWO

| PROPERTY RATING | Good | Avg | Fair | Poor |
|---|---|---|---|---|
| Condition of Exterior | | ☒ | | |
| Compatibility to Neighborhood | | ☒ | | |
| Appeal and Marketability | | ☒ | | |

Type (det, duplex, semi/det, etc.)  DETACHED
Design (rambler, split, etc.)  TRADITIONAL
Exterior Wall Mat.  BRICK  Roof Mat.  COMPO
Is the property in a HUD-Identified Special Flood Haz. Area?  ☒ No  ☐ Yes
Special Energy-Effic. Items   RECOMEND FLOOD ELEVATION CERTIFICATE AND PROPERTY SURVEY.  NO ADVERSE EASEMENTS OR
ENCROACHMENTS OBSERVED.
Comments (favorable or unfavorable incl. deferred maintenance)   SUBJECT WAS IN AVERAGE + CONDITION PRIOR TO HURRICANE KATRINA.
INFORMATION ON SUBJECT PROVIDED BY HOMEOWNER.
THIS REPORT IS NOT INTENDED TO BE USED FOR LENDING PURPOSES.

## Market Comparable Analysis Prior To Improvement

| ITEM | SUBJECT | COMPARABLE NO. 1 | | COMPARABLE NO. 2 | | COMPARABLE NO. 3 | |
|---|---|---|---|---|---|---|---|
| Address | 2104 Olivia St | 61 ENGLISH TURN DRIVE | | 89 ENGLISH TURN DRIVE | | 12 ROSEDOWN COURT | |
| | MERAUX | NEW ORLEANS | | NEW ORLEANS | | NEW ORLEANS | |
| Proximity to Sub. | | 2.17 miles | | 2.21 miles | | 2.50 miles | |
| Sales Price | $ | $ 1,310,000 | | $ 950,000 | | $ 925,000 | |
| Date of Sale & | DESCRIPTION | DESCRIPTION | +(–)$ Adjust. | DESCRIPTION | +(–)$ Adjust. | DESCRIPTION | +(–)$ Adjust. |
| Time Adjustment | 08/05 | 08/08/05 DM 180 | | 06/03/05 DM 148 | | 12/23/04 DM 145 | |
| Location | SUBURBAN/AVG | SUBURBAN/SUP | -100,000 | SUBURBAN/SUP | -100,000 | SUBURBAN/SUP | -100,000 |
| Site/View | 185/199 X 376/374 | 100/273 X 207/209 | | 198/191 X 100/180 | | 180/140 X 244/230 | |
| Age | 1 YR +/- | 12 YRS | | 6 YRS +/- | | 9 YRS +/- | |
| Condition | AVERAGE/+ | AVERAGE/+ | | AVERAGE/+ | | AVERAGE/+ | |
| Living Area Rm. | Total B-rms. Baths | Total B-rms. Baths | | Total B-rms. Baths | | Total B-rms. Baths | |
| Count and Total | 21 6 5.5 | 11 6 6/1 | -5,000 | 11 5 4/1 | +3,000 | 12 5 4/2 | +1,000 |
| Gross Living Area | 8,000 Sq. Ft. | 8,275 Sq. Ft. | -11,000 | 5,305 Sq. Ft. | +107,800 | 5,305 Sq. Ft. | +107,800 |
| Air Conditioning | CENTRAL A&H | CENTRAL A&H | | CENTRAL A&H | | CENTRAL A&H | |
| Garage/Carport | 3-GARAGE | 3-GARAGE | | 3-GARAGE | | 3-GARAGE | |
| Porches, Patio, | PORCH,PATIO | PORCH,PATIO | | PORCH,PATIO | | PORCH,PATIO | |
| Pools, etc. | NONE | ING. POOL | -13,000 | ING. POOL | -13,000 | NONE | |
| Special Energy- | TYP TO MRKT | TYP TO MRKT | | TYP TO MRKT | | TYP TO MRKT | |
| Efficient Items | FENCE | FENCE/CABANA | -13,000 | FENCE | | FENCE | |
| Other | RO, FH, DW | RO, FH, DW | | RO, FH, DW | | RO, FH, DW | |
| Net Adjust. (Total) | | ☐ + ☒ − $ | 142,000 | ☒ + ☐ − $ | 2,200 | ☒ + ☐ − $ | 6,800 |
| Indicated Value Sub. | | Net 10.8 Gross 10.8 $ | 1,168,000 | Net 0.2 Gross 23.6 $ | 947,800 | Net 0.7 Gross 22.6 $ | 933,800 |

General Comments  COMPARABLES WERE CHOSEN FOR PROXIMITY, AMENITIES AND SIMILARITY OF NEIGHBORHOOD. COMPARABLES
SELECTED REPRESENT BEST AND MOST CURRENT MARKET DATA AVAILABLE.

Estimated Market Value $ 950,000  as of  AUGUST 28 20 05

■ Completed By  CHARLES RUFFINO  ■ Title  REAL ESTATE APPRAISER
■ Signature  ■ Date  July 03, 2007 20 07

ATTACH CURRENT DESCRIPTIVE PHOTOGRAPHS OF SUBJECT PROPERTY AND STREET SCENE

Freddie Mac Form 704 1/86 [Y2K]

Form 704 - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE
Ruffino & Associates (504) 276-0835

## SECOND MORTGAGE PROPERTY VALUE ANALYSIS REPORT
### MARKET DATA ANALYSIS

The undersigned has rected three recent sales of properties most similar and proximate to the subject and has considered these in the market analysis. The description includes a dollar adjustment, reflecting market reaction to those items of significant variation between the subject and comparable properties. If a significant item in the comparable property is superior to, or more favorable than, the subject property a minus (−) adjustment is made, thus reducing the indicated value of subject; if a significant item in the comparable is inferior to, or less favorable than, the subject property, a plus (+) adjustment is made, thus increasing the indicated value of the subject.

| ITEM | SUBJECT | COMPARABLE NO. 4 | | COMPARABLE NO. 5 | | COMPARABLE NO. 6 | |
|---|---|---|---|---|---|---|---|
| Address | 2104 Olivia St MERAUX | 59 ENGLISH TURN DRIVE NEW ORLEANS | | | | | |
| Proximity to Sub. | | 2.17 miles | | | | | |
| Sales Price | $ | | $  1,400,000 | | $ | | $ | |
| Date of Sale and | DESCRIPTION | DESCRIPTION | +(−)$ Adjust. | DESCRIPTION | +(−)$ Adjust. | DESCRIPTION | +(−)$ Adjust. |
| Time Adjustment | 08/05 | 11/04/02 DM 154 | | | | | |
| Location | SUBURBAN/AVG | SUBURBAN/SUP | −100,000 | | | | |
| Site/View | 185/199 X 376/374 | 100/135 X 211/274 | | | | | |
| Age | 1 YR +/- | 3 YRS | | | | | |
| Condition | AVERAGE/+ | AVERAGE/+ | | | | | |
| Living Area Rm. | Total  B-rms.  Baths | Total  B-rms.  Baths | | Total  B-rms.  Baths | | Total  B-rms.  Baths | |
| Count and Total | 21    6    5.5 | 11    4    5/1 | −2,000 | | | | |
| Gross Living Area | 8,000 Sq. Ft. | 7,843 Sq. Ft. | +14,300 | Sq. Ft. | 0 | Sq. Ft. | 0 |
| Air Conditioning | CENTRAL A&H | CENTRAL A&H | | | | | |
| Garage/Carport | 3-GARAGE | 3-GARAGE | | | | | |
| Porches, Patio, | PORCH,PATIO | PORCH,PATIO | | | | | |
| Pools, etc.. | NONE | ING. POOL | −13,000 | | | | |
| Special Energy- | TYP TO MRKT | TYP TO MRKT | | | | | |
| Efficient Items | FENCE | FENCE/CABANA | −13,000 | | | | |
| Other | RO, FH, DW | RO, FH, DW | | | | | |
| Net Adjust. (Total) | | + X −  $ | 113,700 | + − $ | | + − $ | |
| Indicated Val. of Sub. | | Net Gross  10.2  $ | 1,286,300 | Net Gross | $ | Net Gross | $ |

Comments:

## Subject Photo Page

| Borrower/Client | PRIVATE | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 2104 Olivia St | | | | | |
| City | MERAUX | County | ST. BERNARD | State | LA | Zip Code 70075-2654 |
| Lender | PRIVATE | | | | | |



**Front**

2104 Olivia St
Sales Price
Gross Living Area    8,000
Total Rooms    21
Total Bedrooms    6
Total Bathrooms    5.5
Location    SUBURBAN/AVG
View    185/199 X 376/374
Site
Quality
Age    1 YR +/-

**DEFINITION OF MARKET VALUE:** The most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller, each acting prudently, knowledgeably and assuming the price is not affected by undue stimulus. Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby: (1) buyer and seller are typically motivated; (2) both parties are well informed or well advised, and each acting in what he considers his own best interest; (3) a reasonable time is allowed for exposure in the open market; (4) payment is made in terms of cash in U.S. dollars or in terms of financial arrangements comparable thereto; and (5) the price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions* granted by anyone associated with the sale.

> * Adjustments to the comparables must be made for special or creative financing or sales concessions. No adjustments are necessary for those costs which are normally paid by sellers as a result of tradition or law in a market area; these costs are readily identifiable since the seller pays these costs in virtually all sales transactions. Special or creative financing adjustments can be made to the comparable property by comparisons to financing terms offered by a third party institutional lender that is not already involved in the property or transaction. Any adjustment should not be calculated on a mechanical dollar for dollar cost of the financing or concession but the dollar amount of any adjustment should approximate the market's reaction to the financing or concessions based on the appraiser's judgment.

## STATEMENT OF LIMITING CONDITIONS AND CERTIFICATION

**CONTINGENT AND LIMITING CONDITIONS:** The inspector's certification that appears in the appraisal report is subject to the following conditions:

**1.** The inspector will not be responsible for matters of a legal nature that affect either the property being appraised or the title to it. The appraiser assumes that the title is good and marketable and, therefore, will not render any opinions about the title. The property is valued on the basis of it being under responsible ownership.

**2.** Any sketch provided in the appraisal report may show approximate dimensions of the improvements and is included only to assist the reader of the report in visualizing the property. The inspector has made no survey of the property.

**3.** The inspector will not give testimony or appear in court because he or she made an appraisal of the property in question, unless specific arrangements to do so have been made beforehand.

**4.** Any distribution of valuation between land and improvements in the report applies only under the existing program of utilization. These separate valuations of the land and improvements must not be used in conjunction with any other appraisal and are invalid if they are so used.

**5.** The inspector has no knowledge of any hidden or unapparent conditions of the property or adverse environmental conditions (including the presence of hazardous waste, toxic substances, etc.) that would make the property more or less valuable, and has assumed that there are no such conditions and makes no guarantees or warranties, express or implied, regarding the condition of the property. The inspector will not be responsible for any such conditions that do exist or for any engineering or testing that might be required to discover whether such conditions exist.

**6.** The inspector obtained the information, estimates, and opinions that were expressed in the appraisal report from sources that he or she considers to be reliable and believes them to be true and correct. The inspector does not assume responsibility for the accuracy of such items that were furnished by other parties.

**7.** The inspector will not disclose the contents of the appraisal report except as provided for in the Uniform Standards of Professional Appraisal Practice.

**8.** The inspector has based his or her appraisal report and valuation conclusion for an appraisal that is subject to satisfactory completion, repairs, or alterations on the assumption that completion of the improvements will be performed in a workmanlike manner.

**9.** The inspector must provide his or her prior written consent before the lender/client specified in the appraisal report can distribute the appraisal report (including conclusions about the property value, the inspector's identity and professional designations, and references to any professional appraisal organizations or the firm with which the inspector is associated) to anyone other than the borrower; the mortgagee or its successors and assigns; the mortgage insurer; consultants; professional appraisal organizations; any state or federally approved financial institution; or any department, agency, or instrumentality of the United States or any state or the District of Columbia; except that the lender/client may distribute the property description section of the report only to data collection or reporting service(s) without having to obtain the inspector's prior written consent. The inspector's written consent and approval must also be obtained before the appraisal can be conveyed by anyone to the public through advertising, public relations, news, sales, or other media.

**10.** The inspector is not an employee of the company or individual(s) ordering this report and compensation is not contingent upon the reporting of a predetermined value or direction of value or upon an action or event resulting form the analysis, opinions, conclusions, or the use of this report. This assignment is not based on a required minimum, specific valuation, or the approval of a loan.

Ruffino & Associates (504) 276-0835
Form DLC_DEFD - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE

**CERTIFICATION:  The inspector certifies and agrees that:**

1.  I stated in the appraisal report only my own personal, unbiased, and professional analysis, opinions, and conclusions, which are subject only to the contingent and limiting conditions specified in this form.

2.  I have no present or prospective interest in the property that is the subject to this report, and I have no present or prospective personal interest or bias with respect to the participants in the transaction. I did not base, either partially or completely, my analysis and/or the estimate of market value in the appraisal report on the race, color, religion, sex, handicap, familial status, or national origin of either the prospective owners or occupants of the subject property or of the present owners or occupants of the properties in the vicinity of the subject property.

3.  I have no present or contemplated future interest in the subject property, and neither my current or future employment nor my compensation for performing this analysis is contingent on the appraised value of the property.

4.  I performed this analysis in conformity with the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place as of the effective date of this appraisal.

5.  I have personally inspected the exterior areas of the subject property and the exterior of all properties listed as comparables in the appraisal report.  To the best of my knowledge and belief, all statements and information in this report are true and correct, and I have not knowingly withheld any significant information.

6.  I personally prepared all conclusions and opinions about the real estate that were set forth in the inspection. I have not authorized anyone to make a change to any item in the report; therefore, if an unauthorized change is made to the appraisal report, I will take no responsibility for it.

**ADDRESS OF PROPERTY ANALYZED:**   2104 Olivia St, MERAUX, LA 70075-2654

**INSPECTOR:**

Signature:
Name:  CHARLES RUFFINO
Date Signed:   MARCH 12, 2007
State Certification #:   R0410 - LOUISIANA CERTIFIED RESIDENTIAL
or State License #:   REAL ESTATE APPRAISER
State:  LA
Expiration Date of Certification or License:   12/31/2008

Form DLC_DEFD - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE

File No.

MARKET COMPARISON APPROACH:

THIS METHOD OF ESTIMATING THE VALUE OF A CERTAIN PROPERTY IS BASED ON THE COMPARISON OF THE SUBJECT PROPERTY WITH SIMILAR PROPERTIES THAT HAVE SOLD RECENTLY IN THE MARKET PLACE. THROUGH THIS PROCESS, IT IS ASSUMED THAT IF THE SUBJECT IS SIMILAR TO THE COMPARABLES, THE PURCHASERS OF THE COMPARABLES WOULD HAVE PURCHASED THE SUBJECT FOR A SIMILAR CONSIDERATION. SINCE NO TWO PROPERTIES ARE EXACTLY ALIKE, IT IS ALSO ASSUMED THAT THE PURCHASER WOULD MAKE ALLOWANCES FOR THE DIFFERENCES BETWEEN THE SUBJECT AND THE COMPARABLE SALES. THESE ALLOWANCES OR "ADJUSTMENTS" FALL INTO FOUR BASIC CATEGORIES: TIME, LOCATION, PHYSICAL FEATURES AND FINANCING. THE MOST IMPORTANT ASPECT OF THE MARKET COMPARISON APPROACH IS THE SELECTION OF COMPARABLES. THE TEST OF COMPARABILITY COMES WHEN THE QUESTION IS ASKED, "WOULD THE PURCHASER OF THE COMPARABLE SALE HAVE PURCHASED THE SUBJECT PROPERTY, PLUS OR MINUS ANY SMALL DIFFERENCES BETWEEN THEM?" THIS QUESTION CONSIDERS THE ADJUSTMENT FACTORS WHICH ARE SHOWN ON THE MARKET DATA ANALYSIS PORTION OF THE ATTACHED APPRAISAL REPORT.

REALIZING THAT THE MOST ACCURATE INDICATION OF VALUE IS PROVIDED BY THE MOST SIMILAR COMPARABLES, IT ALSO STANDS TO REASON THAT THE LARGER THE DIFFERENCE BETWEEN THE PROPERTIES, THE MORE DISSIMILAR THEY ACTUALLY ARE. THIS CAN BE CARRIED TO A POINT WHERE IT IS QUESTIONABLE THAT THE COMPARABLE SALE IS ACTUALLY COMPARABLE. IT IS BECAUSE OF THIS FACT THAT MOST OF THE MORTGAGE INSURANCE COMPANIES AND INVESTORS OF HOME LOANS HAVE CREATED GUIDELINES FOR APPRAISAL REVIEW. THESE GUIDELINES ARE INTENDED FOR THE REVIEWER TO DETERMINE, WITHIN THE PARAMETERS OF A FORMULA, THE DEGREE OF SIMILARITY OF THE COMPARABLE SALES FURNISHED.

WE RECOGNIZE THESE FACTORS, AND HAVE MADE EVERY ATTEMPT TO FURNISH COMPARABLE SALES WHICH ARE WITHIN THE REQUIREMENTS OF: TIME, LOCATION, DISTANCE FROM SUBJECT, AND PHYSICAL ADJUSTMENT AMOUNTS. OFTEN, WE MUST OBTAIN COMPARABLE SALES WHICH ARE OVER 6 MONTHS OLD AND APPEAR TO BE AN EXCESSIVE DISTANCE FROM THE SUBJECT. WHEN THIS IS THE CASE, IT IS BECAUSE NO COMPARABLES EXIST THAT WERE MORE RECENT AND NEARER TO THE SUBJECT. IN ALL CASES WHERE WE HAVE HAD TO LEAVE THE SUBJECT AREA, SALES HAVE BEEN USED FROM AREAS WITH SIMILAR SOCIAL ECONOMIC INFLUENCES. AS A PART OF THE APPRAISAL PROCESS, WE ALSO EXAMINE THE "FOR SALE" PROPERTIES WHICH ARE CONSIDERED TO BE SIMILAR TO SUBJECT. ALTHOUGH THIS PROCEDURE DOES NOT INDICATE THE VALUE OF THE SUBJECT PROPERTY, IT DOES, THROUGH THE PRINCIPAL OF SUBSTITUTION, SET THE UPPER LIMIT ON THE VALUE.

IN THE RESEARCH AND ANALYSIS OF DATA, ALL FACTORS HAVE BEEN CONSIDERED PERTINENT TO ESTIMATING MARKET VALUE. DATA INCLUDING, BUT NOT LIMITED TO, LOCATION, CONDITION, MARKET DATA, MARKET CONDITIONS, SELLER CONCESSIONS AND FINANCING WERE CONSIDERED IN THE ANALYSIS. WHERE INCOME IS A FACTOR IN ESTIMATING MARKET VALUE, ALL OF THE ABOVE FACTORS WERE CONSIDERED. A COMPLETE ANALYSIS WAS MADE OF THE INCOME FOR SIMILAR PROPERTIES AND THE APPLICABLE GROSS RENT MULTIPLIER (GRM).

ANALYSIS OF MARKET DATA INCLUDED, MARKET DATA ANALYSIS RECORDS (MDAR), MULTI LIST (MLS), REAL ESTATE TRANSFERS (RET), COURTHOUSE RECORDS, CONTACTING REAL ESTATE BROKERS AND APPRAISER'S FILES.

INCOME APPROACH:

SINGLE FAMILY DWELLINGS ARE TYPICALLY PURCHASED BY BUYERS FOR THEIR OCCUPANCY AND ENJOYMENT. VERY FEW, IF ANY ARE PURCHASED FOR INVESTMENT TO BE RENTED BY OTHERS. BECAUSE OF THIS, RENTAL DATA IS ALL BUT NON-EXISTENT. FOR THIS REASON, THE INCOME APPROACH TO VALUE IS NOT USED IN THIS REPORT.

COST APPROACH:

NO STRUCTURAL, MECHANICAL, PLUMBING OR ELECTRICAL WARRANTIES OR GUARANTEES THAT THE SUBJECT IS FREE FROM DEFECTS IS MADE OR IMPLIED IN THIS APPRAISAL. THEY ARE NOT WITHIN THE SCOPE OF THE APPRAISAL ASSIGNMENT OR THE QUALIFICATIONS OF THE APPRAISER. THE LENDER OR PURCHASER SHOULD RETAIN AN INSPECTION SERVICE TO MAKE A DILIGENT INSPECTION OF THE PROPERTY TO DETERMINE EXACT CONDITION. THE PLUMBING, HEATING, GAS AND ELECTRICAL SYSTEMS AND APPLIANCES APPEARED TO BE IN WORKING ORDER AT DATE OF INSPECTION BUT ARE NOT GUARANTEED BY THE APPRAISER. THE ROOF AND FOUNDATION ARE ASSUMED TO BE IN SOUND CONDITION. THE ACTUAL FLOOR AREA MAY DIFFER BUT FOR PURPOSES OF THIS REPORT DIFFERENCES ARE OF MINOR VALUE CONSEQUENCE. MOST INSULATION IS CONCEALED AND COMMENTS REGARDING IT ARE ASSUMED TO BE CORRECT BUT NOT GUARANTEED. THE FLOOR PLAN EXHIBIT IS NOT AN ARCHITECTURAL RENDERING BUT IS INCLUDED TO AID THE READER IN VISUALIZING THE INTERIOR OF THE SUBJECT RELATIVE TO THE FUNCTIONAL UTILITY OF THE IMPROVEMENTS. IN SOME CASES INTERIOR WALLS, CLOSETS OR DOORS MAY VARY FROM THEIR ACTUAL PLACEMENT.

File No.

SCOPE OF THE APPRAISAL:

THIS REPORT IS DESCRIBED AS A SUMMARY APPRAISAL REPORT; STANDARDS RULE 2-2(B). IN COMPILING THIS
REPORT THE APPRAISER HAS RELIED ON CERTAIN INFORMATION PROVIDED BY THE CLIENT, THE INSPECTION OF
THE REAL ESTATE, THE REAL PROPERTY INTEREST, AND THAT WHICH WAS FOUND DURING THE DATA
COLLECTION. INFORMATION ABOUT THE SUBJECT AND THE COMPARABLE PROPERTIES HAS BEEN COLLECTED
FROM DATA REPORTED IN PUBLIC SOURCES, DEEDFAX, THE UNIVERSITY OF NEW ORLEANS REAL ESTATE DATA,
THE NEW ORLEANS METROPOLITAN ASSOCIATION OF REALTORS DATA, THE APPRAISER'S PERSONAL FILES, A
MARKET RESEARCH AND DATA COLLECTION AND IS BELIEVED TO BE ACCURATE AND FROM RELIABLE SOURCES.
THE ESTIMATED EXPOSURE AND MARKETING TIME IS LINKED TO THE VALUE ESTIMATE AS STATED IN THE
NEIGHBORHOOD SECTION OF THE REPORT UNLESS OTHERWISE NOTED AND IS SUPPORTED BY MARKET
RESEARCH. THE MARKET VALUE OF THE SUBJECT IS NOT BASED ON A REQUESTED MINIMUM VALUATION,
CONTINGENT COMPENSATION  THE APPRAISER, A SPECIFIC OR RANGE OF VALUES OR THE APPROVAL OF A LOAN.
THE RACIAL OR ETHNIC COMPOSITION OF THE NEIGHBORHOOD SURROUNDING THE PROPERTY IN NO WAY
AFFECTED THE APPRAISAL DETERMINATION. BASED ON THE CLIENT'S REQUEST I HAVE PREPARED THIS REPORT
FOR THEIR USE. THE INTENDED USE OF THIS APPRAISAL IS FOR THE CLIENT ONLY WHO IS THE INTENDED USER.
THE EFFECTIVE DATE OF APPRAISAL IS AS STATED IN THE RECONCILIATION OF VALUE.

FINAL RECONCILIATION:

VALUE IS BASED ON UTILITY, DEMAND, SCARCITY AND EFFECTIVE PURCHASING POWER. ALL OF THESE FACTORS
ARE ADEQUATELY PRESENT FOR THE SUBJECT PROPERTY IN THE COMPETITIVE MARKET AREA. NO ADVERSE
CONDITIONS EXIST FOR THE SUBJECT OR THE NEIGHBORHOOD THAT WOULD AFFECT VALUE. THE SUBJECT IS
TYPICAL AND CONSISTENT WITH SURROUNDING NEIGHBORHOOD PROPERTIES AND AREA DEVELOPMENT. NO
CHANGE IS FORESEEN IN THE NEAR FUTURE IN THE ZONING, ECONOMIC BASE OR THE CONFORMITY OF THE
NEIGHBORHOOD.

DIGITAL SIGNATURES:

THIS IS TO CERTIFY THAT THE SIGNATURES OF THE APPRAISERS ARE TRUE. THEY ARE PASSWORD PROTECTED.

THE SUBJECT PROPERTY RECEIVED EXTENSIVE DAMAGE FROM HURRICANE KATRINA WHICH AFFECTED THE AREA
ON AUGUST 29, 2005. THIS APPRAISAL REPORT ESTABLISHES A FAIR MARKET VALUE AS OF AUGUST 28, 2005.

THE APPRAISER DROVE BY THE SUBJECT, MEASURED IT, IF POSSIBLE, AND COMPILED A REPORT WITH THE BEST
INFORMATION THAT COULD BE GATHERED.

THIS REPORT IS TO ESTABLISH VALUE PRIOR TO HURRICANE KATRINA.

**"IT IS NOT INTENDED TO BE USED FOR LENDING PURPOSES."**

## Location Map

| Borrower/Client | PRIVATE | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 2104 Olivia St | | | | | | |
| City | MERAUX | County | ST. BERNARD | State | LA | Zip Code | 70075-2854 |
| Lender | PRIVATE | | | | | | |





The
Road Home

**BUILDING A SAFER,
STRONGER, SMARTER LOUISIANA**

# APPEAL DETERMINATION REPORT

## FIRST CLOSE: APPROVED FOR $ 150,000.00

MICHAEL & ALICE GINART
2104 OLIVIA STREET
MERAUX, LA 70075

06HH007868

JULY 24, 2007

P O BOX 4669
BATON ROUGE,
LOUISIANA 70821

1

| Applicant ID: | 06HH | 007868 |
|---|---|---|
| Acceptance Date: | JUNE 21, 2007 | |
| Appeal Summary: | PRE-STORM VALUE (PSV) | |
| Application Status: | **NO CLOSING – Benefit Letter Created** | |
| Determination Date: | JULY 24, 2007 | |

Appeals Office staff researched, reviewed and/or verified all calculations related to your *Road Home* awards and compared your calculations to policies set forth by the program. Research results are as follows:

### Option 1: Stay in your home.

| Calculations Appealed | | Current Calculations | |
|---|---|---|---|
| Base Value | PSV | Base Value | COD |
| | | | |
| Pre-Storm Value (PSV) | $385,000.00 | Pre-Storm Value (PSV) | $873,810.00 |
| Cost of Damage | $756,910.00 | Cost of Damage | $756,910.00 |
| Elevation Estimate | $77,485.65 | Elevation Estimate | $77,485.65 |
| | | | |
| Base Value | $385,000.00 | Base Value | $756,910.00 |
| - FEMA | $0.00 | - FEMA | $0.00 |
| - Flood Insurance | ($250,000.00) | - Flood Insurance | ($250,000.00) |
| - Private Insurance | ($168,768.85) | - Private Insurance | ($168,768.85) |
| - Insurance Penalty | $0.00 | - Insurance Penalty | $0.00 |
| - Sold Proceeds | $0.00 | - Sold Proceeds | $0.00 |
| **Compensation Grant** | **$0.00** | **Compensation Grant** | **$150,000.00** |
| | | | |
| Elevation Allowance | $30,000.00 | Elevation Allowance | $0.00 |
| CDBG form signed | NO | CDBG form signed | NO |
| Income Category | UNKNOWN | Income Category | UNKNOWN |
| Income verified | NO | Income verified | NO |
| Gap between Damage and Awards | YES | Gap between Damage and Awards | YES |
| Additional Compensation Grant Eligibility | UNKNOWN | Additional Compensation Grant Eligibility | NO - Maximum award provided |
| Additional Compensation Grant | $0.00 | Additional Compensation Grant | $0.00 |
| | | | |
| Original Total Award | $30,000.00 | Revised Total Award | $150,000.00 |
| | | | (Maximum Award Allowed) |
| | | **Current Award Amount Owed** | **$150,000.00** |

2

**NOTES:**

- Applicant has not attended a first closing.
- Applicant submitted a higher valid pre-storm appraisal, reflected in a revised compensation grant calculation.

**CURRENT HOMEOWNER POLICIES (VERSION 4.2):**

Your award calculations are based on a published set of Homeowner Policies which are updated regularly and posted on *The Road Home* website www.road2la.org:

**6.1.1 Inputs**

*Pre-storm value*

Homeowners who are not satisfied with *The Road Home's* pre-storm value determination can choose to have their pre-storm value reviewed and possibly revised. As available, *The Road Home* program will accept the pre-storm value with the highest value from any of the sources described below:

- **A pre-storm appraisal provided by the homeowner and completed by a Louisiana licensed appraiser on or after January 1, 2000 and up until the date of the storm. A value from a pre-storm appraisal is adjusted to reflect a value as of 2nd quarter 2005 using a price appreciation index published by HUD's Office of Federal Housing Enterprise Oversight (www.ofheo.gov).**
- A post-storm appraisal of pre-storm value provided by the homeowner and completed by a Louisiana licensed appraiser. The homeowner's poststorm appraisal of pre-storm value will be validated against *The Road Home's* estimate of market value provided by an appraiser or a broker's price opinion (BPO) to determine if it is in an acceptable range. If the value of the homeowner ordered appraisal is not within an acceptable range, the *Road Home* will not use the homeowner provided post-storm appraisal.
- A third party appraisal obtained from a lender or government agency and completed since January 1, 2000. The third party appraisal is adjusted to reflect a value as of 2nd quarter 2005 using a price appreciation index published by HUD's Office of Federal Housing Enterprise Oversight (www.ofheo.gov). If there is more than one pre-storm appraisal available for the property, *The Road Home* will use the highest value.
- A pre-storm market analysis (2055 appraisal) ordered by *The Road Home* from a Louisiana licensed appraiser.
- A broker's price opinion (BPO) which includes a drive-by of the property and the surrounding neighborhood.

3

- A homeowner may also submit additional information to inform or update the pre-storm value determination (e.g. square footage information).

### 6.1.2 Calculation

• **Option 1: Stay: Homeowners who decide to stay in home:**
  o The homeowner's *compensation grant amount* is the lesser of their uncompensated damage cost or their uncompensated loss of value up to $150,000
    • Uncompensated cost of damage = *Estimated cost of damage* (minus) any *other compensation* the homeowner(s) received for loss to the structure.
    • Uncompensated loss of value = *Pre-storm value* (minus) any *other compensation* the homeowner(s) received for loss to the structure.

### ADDITIONAL APPLICATION INFORMATION REVIEWED:

**Valid Pre-Storm Values Available:** Highest value is selected

| | |
|---|---|
| Market Analysis: | $385,000.00 |
| Broker's Price Opinion (BPO): | $122,000.00 |
| Appreciated Pre-Storm Appraisal: | $873,810.00 |
| March 21, 2002 | |

### DETERMINATION:

Based on the information provided and research conducted, the Appeals Office staff determined that all *Road Home* policies and procedures were not followed in a timely, consistent and/or accurate manner.

| **A revised grant amount has been approved for your *Road Home* application.** |
|---|

Your appeal has been approved with the following action steps:

- Recalculate award to include revised calculations as shown on Page 2.

- Distribute awarded funds through closing process.

- No paperwork needs to be signed or returned to the Appeals Office.

If you have questions specific to the information contained in this report, please contact the following Appeals Office staff:

Contact person:      Charisse Sanders
Telephone number:    225-231-1518
E-mail address:      Charisse.sanders@road2la.org

## FEEDBACK:

The Appeals Office will accept any additional information or appeal that you have
not already submitted to *The Road Home* program. Your deadline to submit
additional requests or documents is two weeks from the date on the front of this
report:

<div align="center">AUGUST 7, 2007</div>

Once the deadline has passed, no additional information or counter appeal will
be accepted related to the calculations presented in this report.

## FILING A STATE APPEAL:

The determination of the Appeals Office is in accordance with Louisiana
Recovery Authority and Louisiana Office of Community Development (OCD)
governing rules. Should you disagree with the application of *The Road Home*
policies and governing rules in place to guide the *Road Home* Appeals
Determination, you have the ability to file a State Appeal with the Louisiana
Office of Community Development. A copy of this report and all *Road Home*
information related to your appeal case will be forwarded to OCD at the time a
state appeal is accepted.

A State Appeal must be submitted by mail and must be postmarked within **60
days** of the date appearing on the first page of this Determination Report. *The
Road Home* Appeals Office will forward your State Appeal to OCD to review and
notify you of its final decision.

The address to send the OCD State Appeal is:

> *The Road Home* Appeals Office
> ATTN: STATE APPEAL
> P.O. Box 4669
> Baton Rouge, Louisiana 70821

The OCD Appeal decision will be based solely on the merits of the case, as
demonstrated by information related to your appeal case.  OCD will not accept
any information that was not submitted as a part of your *Road Home* appeal
process. All decisions presented by OCD are final.

**Completed by:**

_____          7-24-07

Analyst                                                    Date

**Reviewed by:**

_____          7/24/07

Team Lead                                                 Date

**Approved by:**

_____          7/24/07

Nicole Lachance, Appeals Manager             Date

6

# Exhibit 2



**BUILDING SUPPLY**
LIMITED PARTNERSHIP
504-488-1998

NEW ORLEANS • MANDEVILLE
BATON ROUGE • BIRMINGHAM
MOBILE • GULFPORT • HOUSTON
FOLEY• LAFAYETTE • LONGVIEW
TUSCALOOSA • SHREVEPORT

# INVOICE

| UPC VENDOR | INVOICE DATE | ORDER NO. |
|---|---|---|
| 000000 | 07/18/06 | 490230-00 |

| PO DATE | P.O. NO. | PAGE # |
|---|---|---|
| 07/13/06 | 2104 OLIVIA ST | 1 |

CUST #:  4769

SHIP TO:  DENNIS DOBSON  382-4536  CELL
OFFICE  985-639-3903
2104 OLIVIA ST.
MERAUX, LA

REMIT TO:  **P.O. BOX 4002**
**NEW ORLEANS, LA 70178-4002**

CORRESPONDENCE TO:  INTERIOR / EXTERIOR BUILDING SUPPLY
P. O. BOX 4002

BILL TO:  DOBSON HOMES INC
257 EAST AGUSTA LANE

NEW ORLEANS, LA 70178

SLIDELL, LA 70458

| INSTRUCTIONS | TERMS |
|---|---|
| KRB **STOCKED 1ST FLOOR** | 1%.29/NET 30 |

| SHIP POINT | SHIP VIA | SHIPPED |
|---|---|---|
| NEW ORLEANS BRANCH | DEL/OUR TRCK | 07/17/06 |

| LINE NO. | PRODUCT AND DESCRIPTION | QUANTITY ORDERED | QUANTITY B.O. | QTY. SHIPPED | QTY. U/M | UNIT PRICE | PRICE U/M | AMOUNT (NET) |
|---|---|---|---|---|---|---|---|---|
| 1 | 41212R | 200 | 0 | 200 | PC | 320.00 | MSF | 3072.00 |
|   | 4' X 12' X 1/2" REGULAR SHEETROCK  48SF/PC | | | | | | | |
| 2 | CB10 | 1 | 0 | 1 | CTN | 165.00 | MLF | 82.50 |
|   | 1 1/4" X 1 1/4" X 10' CORNER BEAD 50 PC/CN | | | | | | | |
| 3 | HL114 | 1 | 0 | 1 | CS | 55.00 | CS | 55.00 |
|   | 1 1/4" HI LO DRYWALL SCREWS 8000/CS | | | | | | | |

| 3 | Lines Total | Qty Shipped Total | | 202 | | | Total | 3209.50 |
|---|---|---|---|---|---|---|---|---|
|   |  |  |  |  |  |  | Taxes | 288.86 |
|   |  |  |  |  |  |  | Invoice Total | 3498.36 |

Cash Discount    32.10  If Paid By 08/16/06

ACCOUNTS PAST DUE SUBJECT TO 1 1/2% MONTHLY
SERVICE CHARGE (18% PER ANNUM)

INT/EXT21760



**INVOICE**

NEW ORLEANS • MANDEVILLE
BATON ROUGE • BIRMINGHAM
MOBILE • GULFPORT • HOUSTON
FOLEY • LAFAYETTE • LONGVIEW
TUSCALOOSA • SHREVEPORT

BUILDING SUPPLY
LIMITED PARTNERSHIP
504-488-1998

| UPC VENDOR | INVOICE DATE | ORDER NO. |
|---|---|---|
| 000000 | 08/23/06 | 492800-00 |
| PO DATE | P.C. NO | PAGE # |
| 08/18/06 | 2104 OLIVIA ST | 1 |

CUST.#      4769

SHIP TO: DENNIS DOBSON  382-4536  CELL
OFFICE  985-639-3903
2104 OLIVIA ST.
MERAUX, LA

REMIT TO:      P.O. BOX 4002
NEW ORLEANS, LA 70178-4002

CORRESPONDENCE TO:   INTERIOR / EXTERIOR BUILDING SUPPLY
P. O. BOX 4002

BILL TO: DOBSON HOMES INC
257 EAST AGUSTA LANE

SLIDELL, LA 70458

NEW ORLEANS, LA 70178

| INSTRUCTIONS | | TERMS |
|---|---|---|
| KRB **STOCKED 1ST FLOOR** | | 1%.29/NET 30 |
| SHIP POINT | SHIP VIA | SHIPPED |
| NEW ORLEANS BRANCH | DEL/OUR TRCK | 08/22/06 |

| LINE NO. | PRODUCT AND DESCRIPTION | QUANTITY ORDERED | QUANTITY B.O. | QTY. SHIPPED | QTY. U/M | UNIT PRICE | PRICE U/M | AMOUNT (NET) |
|---|---|---|---|---|---|---|---|---|
| 1 | 41212R | 150 | 0 | 150 | PC | 320.00 | MSF | 2304.00 |
|  | 4' X 12' X 1/2" REGULAR SHEETROCK 48SF/PC | | | | | | | |
| 2 | HL114 | 1 | 0 | 1 | CS | 55.00 | CS | 55.00 |
|  | 1 1/4" HI LO DRYWALL SCREWS 8000/CS | | | | | | | |
| 3 | 4812MR | 20 | 0 | 20 | PC | 380.00 | MSF | 243.20 |
|  | 4' X 8' X 1/2" M/R GYP. BD. 32 SF | | | | | | | |
| 3 | Lines Total | Qty Shipped Total | | 171 | | | Total | 2602.20 |
|  | | | | | | | Taxes | 234.20 |
|  | | | | | | | Invoice Total | 2836.40 |

Cash Discount      26.02  If Paid By 09/21/06

Last Page

ACCOUNTS PAST DUE SUBJECT TO 1 1/2% MONTHLY
SERVICE CHARGE (18% PER ANNUM)

INT/EXT21761

# Exhibit 3

File Number: 27-1113-362D
Inspection Date: 11-19-13
Inspection Address: 2104 Olivia

## *Colonial Inspection Services*

### DRYWALL INSPECTION REPORT

**Subject Property:**
**2104 Olivia St.**
**Meraux, La.**

Dear Mr. and Mrs. Ginart,

On Tuesday, November 19th, 2013, a visual inspection for contaminated drywall was performed at the above referenced property. The results are as follows:

> **There were signs of suspected drywall contamination at several locations throughout the home:**

- Several electrical outlets and switches were removed, and the visible copper wiring was excessively 'blackened'. In addition, the dead cover of a garage electrical panel was removed exposing similar (although not as drastic) conditions.
- There was a noticeable sulfur-like odor noted upon initial entry into the home.
- There was excessive blackening of the exposed copper supply piping at various bathroom plumbing fixtures, and at the attic water heaters. The exposed refrigerant lines at several air handlers were also blackened.
- There was some corrosion noted at various bathroom plumbing fixtures. (tub and sink faucets, tub and sink spouts, etc.)
- Inspection of the back side of the drywall in the attic was limited, however only markings that indicated U.S. products were found. This might suggest a partial contamination in the home, possibly walls only. As this is a visual inspection only, the walls were not opened for any further evaluation.
- The back side of the drywall was visible in the 1st level air handler closets. A blue and yellow taped edge and the font generally associated with the manufacturer 'Knauf' was noted in one of the closets.

1

File Number: 27-1113-362D
Inspection Date: 11-19-13
Inspection Address: 2104 Olivia

- As per our conversation, there had been various problems with a freezer, oven, clothes dryer, speakers, and a television. In addition, light bulbs appear to blow out frequently.
- Also, as per our conversation, the home was flooded during Hurricane Katrina and had been repaired in 2006 and 2007. Since moving back in, various unusual health issues had been experienced by you and your family, including, but not limited to above normal allergy symptoms and nose bleeds.

**It should be understood that actual bulk sampling and laboratory analysis is the only definitive and conclusive means of testing for contaminated drywall.** Photos were taken of various items listed above for reference and/or future comparison. We have included several of these pictures at the end of this report. And, of course, if you should have any questions, please feel free to call.

Sincerely,

Colonial Inspection Services

Julie Hufft
IAQ/CMIA
ESA #1892

Ron Hufft
LHI #10084
CMT

File Number: 27-1113-362D
Inspection Date: 11-19-13
Inspection Address: 2104 Olivia



#1 bedroom switch

File Number: 27-1113-362D
Inspection Date: 11-19-13
Inspection Address: 2104 Olivia



#1 bedroom door handle

4

File Number: 27-1113-362D
Inspection Date: 11-19-13
Inspection Address: 2104 Olivia



drywall tape edge

File Number: 27-1113-362D
Inspection Date: 11-19-13
Inspection Address: 2104 Olivia



drywall markings

File Number: 27-1113-362D
Inspection Date: 11-19-13
Inspection Address: 2104 Olivia



#2 bathroom sink supply

File Number: 27-1113-362D
Inspection Date: 11-19-13
Inspection Address: 2104 Olivia



#2 bathroom sink fixture

File Number: 27-1113-362D
Inspection Date: 11-19-13
Inspection Address: 2104 Olivia



1st level air handler (right side) refrigerant line

File Number: 27-1113-362D
Inspection Date: 11-19-13
Inspection Address: 2104 Olivia



garage electrical panel

File Number: 27-1113-362D
Inspection Date: 11-19-13
Inspection Address: 2104 Olivia



2<sup>nd</sup> level hallway outlet (near return air)

File Number: 27-1113-362D
Inspection Date: 11-19-13
Inspection Address: 2104 Olivia



master bath sink supply

File Number: 27-1113-362D
Inspection Date: 11-19-13
Inspection Address: 2104 Olivia



master bath sink supply

File Number: 27-1113-362D
Inspection Date: 11-19-13
Inspection Address: 2104 Olivia



copper supply piping in the attic

14

File Number: 27-1113-362D
Inspection Date: 11-19-13
Inspection Address: 2104 Olivia



water heater supply piping in the attic

File Number: 27-1113-362D
Inspection Date: 11-19-13
Inspection Address: 2104 Olivia



refrigerant line in the attic

# Exhibit 4

# Exhibit 5

# Exhibit 6

# Exhibit 7

# Exhibit 8

# Exhibit 9

# Exhibit 10

# Exhibit 11

# Exhibit 12

# Exhibit 13

# Exhibit 14

# Plaintiff Fact Sheet

Plaintiff:  Michael Ginart and Alice Johnson Ginart

Property Address: 2104 Olivia St., Meraux, LA  70075

## Question #18 Itemization (Personal Property Damage)

| # | Description of Damaged Item | Value ($) |
|---|---|---|
| 1 | Can lights all over the home | 1,000.00 |
| 2 | 2 Doorbells & 1 Chime | 300.00 |
| 3 | Bathroom Exhaust fans with heater (6) | 500.00 |
| 4 | Florescent lights | 1,000.00 |
| 5 | Electric Garage doors w/lights (4) w/Electronic operators | 2,000.00 |
| 6 | Stackable washer/dryer | 1,400.00 |
| 7 | Washer & Dryer Set | 1,600.00 |
| 8 | Coffeemakers (7) replaced | 400.00 |
| 9 | Microwave oven (5) replaced | 1,000.00 |
| 10 | Subzero Freezer | 7,500.00 |
| 11 | Subzero Refrigerator | 7,500.00 |
| 12 | Oven - Jennaire | 7,000.00 |
| 13 | Stove top - Viking | 2,000.00 |
| 14 | Refrigerator/Freezer Combo | 1,000.00 |
| 15 | TV Projector | 1,700.00 |
| 16 | Computer | 2,000.00 |

| | | |
|---|---|---|
| 17 | Copier | 2,500.00 |
| 18 | Printer | 100.00 |
| 19 | Treadmill | 1,000.00 |
| 20 | Toasters (5) | 250.00 |
| 21 | Apple I phones and chargers (7) | 7,500.00 |
| 22 | Built-in Swimming Pool electronic board (in garage) | 3,000.00 |
| 23 | Air Condition units (5) | 10,000.00 |
| 24 | 1 Two-drawer dishwasher | 1,200.00 |
| 25 | Garbage disposal | 150.00 |
| 26 | 2 Floor lamps | 200.00 |
| 27 | 6 Lamps | 600.00 |
| 28 | 2 Chandeliers | 12,000.00 |
| 29 | 3 Ceiling Fans | 900.00 |
| 30 | 5 Ceiling Fans w/light kits | 750.00 |
| 31 | 2 Jacuzzi bathtubs | 2,000.00 |
| 32 | 1 Jacuzzi Garden Tub | 5,000.00 |
| 33 | Electrical wires and receptacles throughout the home and garage | 15,000.00 |
| 34 | Flat Screen TV (9) | 7,000.00 |
| 35 | Icemaker in Bar | 1,500.00 |
| 36 | Refrigerator in Bar | 600.00 |
| 37 | Wine Cooler in Bar | 600.00 |



6/11/2019                    2104 Olivia Street, Meraux, LA to 2012 Paul Drive, Meraux, LA - Google Maps

**Google** Maps     2104 Olivia Street, Meraux, LA to 2012 Paul Drive,      Bicycle 0.4 mile, 2 min
                     Meraux, LA



Imagery ©2019 Google, Map data ©2019     100 ft

🚲   via Olivia St and LA-46 W                    2 min
                                                 0.4 mile

Mostly flat                                      ⌄