UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In Re: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL 2047 |
| | SECTION "L" |
| This document relates to: | JUDGE ELDON FALLON |
| *Elizabeth Bennett, et al v. Gebr. Knauf Verwaltungsgesellschaft, KG, et al* | |
| Case No. 14:cv-2722 | MAGISTRATE JOSEPH WILKINSON, JR. |

**MEMORANDUM IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT ON CLAIMS ASSERTED
BY CDO INVESTMENTS LLC & MCF ENTERPRISES INC.**

**MAY IT PLEASE THE COURT:**

Defendants, Knauf Gips KG and Knauf Plasterboard (Tianjin) Co., Ltd. (the "Knauf Defendants"), through undersigned counsel, respectfully submit this Memorandum in Support of their Motion for Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure as to the claims asserted by CDO Investments LLC ("CDO") and MCF Enterprises Inc. ("MCF") (collectively "Plaintiffs") against them in Plaintiffs' Fifth Amended Class Action Complaint (the "Fifth Amended Complaint").

**I.   Factual and Procedural Background**

*A.   MDL 2047 and the Bennett Complaint*

From 2004 through 2006, a housing boom in parts of the United States and rebuilding efforts necessitated by Hurricanes Rita and Katrina in the Gulf South led to a shortage of construction materials, including drywall. As a result, drywall manufactured in China was brought

into the United States and used to construct and refurbish homes in coastal areas of the country, notably the Gulf and East Coasts. Sometime after the Chinese drywall was installed, homeowners began to complain of foul-smelling odors, the corrosion and blackening of metal wiring, surfaces, and objects, and the breaking down of appliances and electrical devices in their homes. *See In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, 894 F. Supp. 2d 819, 829–30 (E.D. La. 2012), *aff'd*, 742 F.3d 576 (5th Cir. 2014). Many of these homeowners also began to complain of various physical afflictions believed to have been caused by the Chinese drywall.

These homeowners then began to file suit in various state and federal courts against homebuilders, developers, installers, realtors, brokers, suppliers, importers, exporters, distributors, and manufacturers who were involved with the Chinese drywall. Because of the commonality of facts in the various cases, this litigation was designated as a multidistrict litigation. Pursuant to a Transfer Order from the United States Judicial Panel on Multidistrict Litigation ("JPML") on June 15, 2009, all federal cases involving Chinese drywall were consolidated for pretrial proceedings in MDL 09-2047 before this Court.  On June 16, 2009, this Court entered PTO 1 regarding preservation of evidence, amongst other things. On October 9, 2009, this Court entered PTO 1(B) regarding preservation of evidence.   On January 24, 2012, this Court entered PTO 1(I) regarding preservation of evidence.

Since the inception of MDL 2047 in June of 2009, numerous cases have been consolidated, containing thousands of claims; over 20,000 records docs have been entered into the record, millions of documents exchanged in discovery, dozens of depositions, and over 30 Pretrial Orders have been issued; the Court has appointed steering committees and liaison counsel for plaintiffs,

homebuilders, insurers, installers, and manufacturers; it has presided over monthly status conferences, hearings, and several bellwether trials.[1]

### B.     The Bennett Complaint and MCF and CDO.

The original Bennett Complaint was filed on November 13, 2014 in the Northern District of Alabama and was subsequently transferred and consolidated into MDL 2047. The Complaint was amended multiple times to amend the parties and claims.  Fifth Amended Complaint was filed on March 6, 2018. The Fifth Amended Complaint is the operative complaint in this matter.

MCF and CDO are plaintiffs in the operative Fifth Amended Complaint and have made claims against Knauf Gips KG and KPT regarding the alleged presence of defective KPT Chinese drywall installed in CDO's property located at 25409 Durango Court, Punta Gorda, FL  (the "CDO Property") and installed in MCF's property located at 8554 Pegasus Drive, Lehigh Acres, FL (the "MCF Property").  In conducting discovery in this MDL and in Bennett, this Court approved a Plaintiff Profile Form, Supplemental Plaintiff Profile Form, Owner Disclosure Affidavit, and Plaintiff Fact Sheet to be completed by Plaintiffs and set forth full and complete answers and documents regarding the claims and damage amounts sought by all Bennett Plaintiffs.[2]   The documents were completed under penalty of perjury.

CDO bought the CDO Property in February 2014.  MCF bought the MCF Property in October 2013.  Prior to purchasing the CDO Property and the MCF Property,  CDO and MCF were already aware of risks associated with the presence of defective Chinese drywall in properties. Both are real estate investment companies that purchase and flip properties in South Florida and MCF and CDO previously purchased multiple properties that contained Chinese drywall <u>before</u> purchasing the properties associated with the Bennett action.  For example, CDO purchased at least three (3)

---

[1] *See* Order, R. Doc. No. 16570, pp. 3-4.
[2] Exhibit A (CDO Submissions); Exhibit B (MCF Submissions).

properties that had alleged defective Chinese drywall and remediated them prior to the purchase of the CDO Property.[3]  Further, CDO was aware of MDL 2047 and the prior Knauf Class Settlement Agreement at the time it purchased the CDO Property because it previously made claims to the Knauf Class Settlement Agreement for *three* separate properties before the purchase of the CDO Property.[4] CDO's settlement claims to the Knauf Class Settlement Agreement were denied by the Special Master and this Court on the basis that CDO failed to conduct a reasonable inquiry into the presence of Chinese drywall prior to purchasing the three properties and, alternatively, CDO failed to preserve and present evidence of KPT drywall such that it could not be determined if, and to what extent, the properties contained KPT drywall.[5]

Likewise, MCF purchased at least five (5) properties that had alleged defective Chinese drywall and remediated them prior to the purchase of the MCF Property.[6]  Further, MCF was aware of MDL 2047 and the prior Knauf Class Settlement Agreement at the time it purchased the MCF Property because it previously made claims to the Knauf Class Settlement Agreement for *five* separate properties before the purchase of the MCF Property.[7] MCF's settlement claims to the Knauf Class Settlement Agreement were denied by the Special Master and this Court on the basis

---

[3] CDO purchased 1374 Cathedall Avenue, Northport, FL in December 2012 and conducted a Chinese drywall remediation starting in January 2013. CDO purchased 4698 Globe Terrace, Northport, FL in May 2013 and conducted a Chinese drywall remediation starting in June 2013. CDO purchased 2063 Vancouver Lane, Northport, FL in May 2013 and conducted a Chinese drywall remediation in June 2013. R. Doc. 22013-10 at 24 -31 (Affidavit of Chris Owens on behalf of CDO);  see also R. Doc. 22013 et seq.
[4] Exhibit C (CDO Settlement Registration Form July 2013).
[5] R. Doc. 21838 (Special Master Report and Recommendation); R. Doc. 21839 (Special Master Supplemental Report and Recommendation); and R. Doc. 21871 (District Court Order Adopting Special Master Report and Recommendation).
[6] MCF purchased 1933 Wanda Avenue, Lehigh Acres, FL in January 2012 and conducted a Chinese drywall remediation starting in February 2012.  MCF purchased 2511 17th Street, South West Lehigh Acres, FL in October 2012 and conducted a Chinese drywall remediation starting in November 2012.  MCF purchased 900 Tena Avenue, North Lehigh Acres, FL in February 2013 and conducted a Chinese drywall remediation starting in March 2013.  MCF purchased 3505 9th Street, West Lehigh Acres, FL in February 2013 and conducted a Chinese drywall remediation in March 2013.  MCF purchased 343 Ranchito Avenue, Lehigh Acres, FL in April 2013 and conducted a Chinese drywall remediation starting in April 2013.  R. Doc. 22013-10 at p. 55 – 62 (Affidavit of Roy Freeman on behalf of MCF); see also R. Doc. 22013 et seq.
[7] Exhibit D (MCF Settlement Claim Form – June 2013).

that MCF failed to conduct a reasonable inquiry into the presence of Chinese drywall prior to purchasing the three properties and, alternatively, MCF failed to preserve and present evidence of KPT drywall such that it could not be determined if, and to what extent, the properties contained KPT drywall.[8]

Notwithstanding, CDO purchased the CDO Property "as-is" without disclosures, without any visual inspection, and without a Chinese-drywall inspection. CDO did not obtain any assignments or warranties from the prior owners or the seller. Similarly, MCF purchased the MCF Property "as-is" without disclosures, without any visual inspection, and without a Chinese-drywall inspection, MCF did not obtain any assignments or warranties from the prior owners or the seller.

CDO alleges it performed a full remediation of the Property beginning in April 2014. At the time it performed the remediation, CDO was a litigant in MDL 2047, a class member to the Knauf Class Settlement Agreement, was represented by current plaintiff's counsel and had performed five previous remediations for alleged defective Chinese drywall. However, CDO did not comply with PTO 1, PTO 1(B), or PTO 1(I). The only evidence presented by CDO in support of their claim in terms of product ID, corrosion, and property damage are pictures of eight (8) possible KPT drywall boards. No evidence of corrosion or preservation of damages was provided. No pre-remediation, demolition, or post-remediation photos were provided. CDO was deposed on November 21, 2019 and did not provide any supplemental evidence of KPT drywall within twenty-one (21) days of the deposition.

---

[8] R. Doc. 21838 (Special Master Report and Recommendation); R. Doc. 21839 (Special Master Supplemental Report and Recommendation); and R. Doc. 21871 (District Court Order Adopting Special Master Report and Recommendation).

Likewise, MCF alleges it performed a full remediation of the Property beginning in December 2013. At the time it performed the remediation, MCF was a litigant in MDL 2047, a class member to the Knauf Class Settlement Agreement, was represented by current plaintiff's counsel and had performed five previous remediations for alleged defective Chinese drywall. However, MCF did not comply with PTO 1, PTO 1(B), or PTO 1(I). The only evidence presented by MCF in support of their claim in terms of product ID, corrosion, and property damage are pictures of 6 possible KPT drywall boards. No evidence of corrosion or preservation of damages was provided. No pre-remediation, demolition, or post-remediation photos were provided. MCF was deposed on December 19, 2019 and did not provide any supplemental evidence of KPT drywall within twenty-one (21) days of the deposition.

## II. Legal Standards

### A. Rule 56 Summary Judgment Standard

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment is required if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[9] "A genuine dispute of material fact exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[10]

When seeking summary judgment, the movant bears the initial responsibility of demonstrating the absence of an issue of material fact with respect to those issues on which the movant bears the burden of proof at trial.[11] However, where the non-movant bears the burden of proof at trial, the movant may merely point to an absence of evidence, thus shifting to the non-

---

[9] FED. R. CIV. P. 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.").
[10] *Bennett v. Hartford Ins. Co. of Midwest*, 890 F.3d 597, 604 (5th Cir. 2018) (quoting *Johnson v. World All. Fin. Corp.*, 830 F.3d 192, 195 (5th Cir. 2016) (internal quotation marks omitted)).
[11] *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 2558, 91 L.Ed.2d 265 (1986).

movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial.[12]

On a motion for summary judgment, "[a]lthough 'the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor,' summary judgment remains appropriate if the non-movant's evidence is 'merely colorable' or 'not significantly probative.'"[13] "Only when 'there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party' is a full trial on the merits warranted."[14] Furthermore, "[d]iscovery is not a prerequisite to the disposition of a motion for summary judgment."[15] "If it appears that further discovery will not provide evidence creating a genuine issue of material fact, the district court may grant summary judgment."[16]

## III. Argument

### A. Plaintiffs Failed to Comply with PTOs and to Preserve and Present Evidence of Drywall Manufacturers and/or Damages to the Prejudice of the Knauf Defendants.

The evidence demonstrates that Plaintiffs did not comply with the requirements of PTO 1, PTO 1(B), or PTO 1(I). On June 16, 2009, this Court entered PTO 1 regarding preservation of evidence, amongst other things. On October 9, 2009, this Court entered PTO 1(B) regarding preservation of evidence. Pursuant to PTO 1(B), which was entered in October 2009 prior to the

---

[12] *Id.* at 322; *see also Moody v. Jefferson Parish School Board*, 2 F.3d 604, 606 (5th Cir. 1993).
[13] *Certain Underwriters at Lloyd's of London v. Lowen Valley View, L.L.C.*, 892 F.3d 167, 170 (5th Cir. 2018) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 255, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986)).
[14] *Lindsey v. Sears Roebuck & Co.*, 16 F.3d 616, 618 (5th Cir. 1994) (quoting *Anderson*, 477 U.S. at 249).
[15] *Carder v. Cont'l Airlines, Inc.*, 595 F. App'x 293, 299 (5th Cir. 2014) (quoting *Skiba v. Jacobs Entm't Inc.*, 587 Fed. Appx. 136, 138 (5th Cir. 2014) (per curiam)).
[16] *Raby v. Livingston*, 600 F.3d 552, 561 (5th Cir. 2010) (citing *Access Telecom, Inc. v. MCI Telecomm. Corp.*, 197 F.3d 694, 720 (5th Cir.1999); *see also Washington v. Allstate Ins. Co.*, 901 F.2d 1281, 1285 (5th Cir.1990) ("This court has long recognized that a plaintiff's entitlement to discovery prior to a ruling on a motion for summary judgment is not unlimited, and may be cut off when the record shows that the requested discovery is not likely to produce the facts needed by the plaintiff to withstand a motion for summary judgment.").

remediation of any of the below claims, the Court stated that Owners were and are required to preserve evidence by following a few basic procedures, including but not limited to:

> The parties shall photograph the backside of each Chinese drywall board immediately after it is removed on-site, and, document on a floor plan, building diagram, or other similar form of documentation, the location of each full or partial Chinese drywall board removed from the property and its photograph. Photographs of the wall sections should be taken so that any markings on the backside of the drywall sections are most clearly visible in the photographs.[17]

On January 24, 2012, this Court entered PTO 1(I) regarding preservation of evidence. Courts have routinely dismissed claims for failing to comply with pretrial orders, particularly when compliance involves a necessary to meet a plaintiff's burden. *In re Deepwater Horizon*, 922 F.3d 660, 665 (5th Cir. 2019); *Moore v. CITGO Ref. & Chemicals Co., L*.P., 735 F.3d 309, 315 (5th Cir. 2013)

"A district court has broad discretion in all discovery matters, and such discretion will not be disturbed ordinarily unless there are unusual circumstances showing a clear abuse." *Moore*, 725 F.3d at 315 (quot*ing Kelly v. Syria Shell Petroleum Dev. B.V.*, 213 F.3d 841, 855 (5th Cir. 2000) (internal quotation omitted). Indeed, this Court has previously determined that failure of a plaintiff to comply with the preservations standards in PTO 1, PTO 1(B), and PTO 1(I) results in prejudice to the defendants because without compliance, a plaintiff cannot establish how much, if any, drywall of a particular manufacturer was or was not installed in the property.[18]

CDO alleges it performed a full remediation of the Property beginning in April 2014. At the time it performed the remediation, CDO was a litigant in MDL 2047, a class member to the Knauf Class Settlement Agreement, was represented by current plaintiff's counsel and had previously purchased and performed remediations on three separate properties with alleged KPT drywall.

---

[17] *Id*. at p. 3; *see also* PTO 1(B).
[18] See Rec. Doc. 20930 and Rec. Doc. 20933.

Likewise, MCF alleges it performed a full remediation of the Property beginning in December 2013. At the time it performed the remediation, MCF was a litigant in MDL 2047, a class member to the Knauf Class Settlement Agreement, and was represented by current plaintiff's counsel. It had also performed five previous remediations for alleged defective Chinese drywall. However, CDO provided evidence of only 8 alleged KPT boards in connection with the remediation. And, MCF provided evidence of only 6 alleged KPT boards in connection with the remediation. CDO and MCF have not provided any other evidence as required by PTO 1, PTO 1(B), and PTO 1(I) of physical evidence or materials allegedly damaged by Chinese drywall, including but not limited the alleged Chinese drywall itself. This Court has recognized that while Plaintiffs may be able to submit additional evidence, including testimony, such evidence is insufficient to overcome the requirements to comply with the preservation and presentment pretrial orders in this matter. Furthermore, the evidence provided by CDO and MCF lacks reliability based on the use pictures of drywall belonging to other properties.[19] Finally, MCF and CDO failed to provide evidence of corrosion or preservation of damage and did not provide any pre-remediation, demolition, or post-remediation photos were provided. Therefore, summary judgment should be granted.

    **B.**     **Plaintiff Assumed the Risk of Chinese Drywall by knowingly and voluntarily purchasing the Property "As-Is" under the circumstances.**

In *Blackburn v. Dorta*, 348 So.2d 287 (Fla.1977), the Florida Supreme Court discussed the doctrine of assumption of risk at length, in an attempt to unravel this "enigma wrapped in a mystery." *Id*. at 290 (internal quotation omitted). First, the court addressed "primary assumption of risk," and explained that this term "is simply another means of stating that the defendant was

---

[19] CDO and MCF have submitted pictures of boards allegedly of KPT for/from the incorrect property address. For example, boards labelled for the MCF property were submitted by CDO in support of their claims for the CDO Property. See Exhibit A (CDO Submissions); see also Exhibit B (MCF Submissions). The same is true for evidence submitted by CDO and MCF for previous properties under the prior settlement agreement. CDO and MCF submitted the same alleged KPT boards for multiple properties. R. Doc. 22013-1; R. Doc. 22013-5 at 98 – 116; R. Doc. 22013-7 at 173-175;

not negligent, either because he owed no duty to the plaintiff in the first instance, or because he did not breach the duty owed." *Id*. at 290. For example, "[i]t can be said that a passenger assumes the risk of lurches and jerks which are ordinary and usual to the proper operation of the train, but that he does not assume the risk of extraordinary or unusual lurches and jerks resulting from substandard operation of the train." *Id*. at 291. Although articulated in terms of assuming the risk, this concept is more appropriately framed in terms of the standard of care, i.e.

> The railroad owes a duty to operate its train with the degree of care of an ordinary prudent person under similar circumstances which include some lurching and jerking.... So long as the lurching or jerking is not extraordinary due to substandard conduct of the railroad, there is no breach of duty and, hence, no negligence on the part of the railroad.

*Id*. Thus, "primary assumption of risk," rather than an affirmative defense, is instead an attempt to negate that any breach of a duty occurred. The affirmative defense version of the assumption of risk doctrine precludes recovery where a plaintiff voluntarily and unreasonably exposes herself to a known risk, albeit a risk created by a defendant's negligence. *Id*. The Florida Supreme Court offers the example of a landlord who has negligently permitted his tenant's premises to become highly flammable and a fire ensues. *Id*. If the tenant returns from work to find the premises ablaze, but unreasonably rushes into the fire to retrieve his favorite hat, his claims against the landlord would be subject to the assumption of risk doctrine. *Id*. Because the tenant's conduct is clearly unreasonable, the Blackburn court explains that "this conduct can just as readily be characterized as contributory negligence.... It is the failure to exercise the care of a reasonably prudent man under similar circumstances." *Id*.

Here, CDO bought the CDO Property on February 21, 2020. MCF bought the MCF Property in October 2013. Prior to purchasing the CDO Property and the MCF Property, CDO and MCF were already aware of risks associated with the presence of Chinese drywall. Both are real estate investment companies in South Florida and MCF and CDO previously purchased

multiple properties that contained Chinese drywall before purchasing the properties associated with the Bennett action.  Indeed, MCF and CDO purchased multiple properties that had alleged defective Chinese drywall that each company separately remediated *prior* to the purchase of their respective properties in the Bennett action.  Further, CDO and MCF were aware of MDL 2047 and the prior Knauf Class Settlement Agreement because they had already made settlement claims for multiple properties *prior* to the purchase of their respective properties in the Bennett action and were represented at that time by current plaintiff's counsel.  Even at that time, CDO's and MCF's settlement claims to the Knauf Class Settlement Agreement were denied by the Special Master and this Court on the basis that both failed to conduct a reasonable inquiry into the presence of Chinese drywall prior to purchasing the properties claims in the settlement agreement.

Notwithstanding, CDO purchased the CDO Property and MCF purchased the MCF Property "as-is"  without disclosures, without any visual inspection,  and without a Chinese-drywall inspection, MCF and CDO did not obtain any assignments or warranties from the prior owners or the seller.  This Court has cautioned that when a property owner purchases property in areas known to have the possibility of Chinese drywall they are assuming a risk without conducting a Chinese drywall inspection.  Rec. Doc. 20934.   For these reasons alone, CDO's and MCF's claims are barred under Florida law.

        C.      **The Court Should Maintain Consistency with Prior Rulings.**

It is axiomatic that summary judgment is proper when the record indicates that there is not a "genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56.  Indeed, a genuine issue of fact exists only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc*. 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *see also Taita Chem. Co. v.*

*Westlake Styrene Corp.*, 246 F.3d 377, 385 (5th Cir.2001). Furthermore, under the law of the case doctrine, courts show deference to decisions already made in the case they are presiding over. *Stoffels ex rel. SBC Tel. Concession Plan v. SBC Commc'ns, Inc.*, 677 F.3d 720, 727 (5th Cir. 2012)  The law of the case doctrine developed to maintain consistency and avoid needless reconsideration of matters previously decided during the course of continuing litigation. *Royal Ins. Co. of America v. Quinn-L Capital Corp.*, 3 F.3d 877, 880 (5th Cir. 1993) (internal quotes and citation omitted); *Copeland v. Merrill Lynch & Co., Inc.*, 47 F.3d 1415, 1423 (5th Cir. 1995) (once court of competent jurisdiction decides rule of law, that decision governs the same issues in subsequent stages of the same case); *North Mississippi Communications, Inc. v. Jones*, 951 F.2d 652, 656 (5th Cir. 1992) (prior decision followed without re-examination unless evidence substantially different).

Here, under this Court's prior rulings as to these exact plaintiffs, these exact same facts, and the same insufficient evidence, there can be no genuine issue of fact such that a reasonable jury could return a verdict for Plaintiffs.[20]  This Court has already determined that even before purchasing the CDO Property and the MCF Property, these plaintiffs failed to act reasonable in purchasing previous properties allegedly containing KPT Chinese drywall.  Plaintiffs cannot be allowed to garner a windfall when they knew precisely the risks they were taking and accepted them nonetheless while simultaneously being represented by current counsel.   The same is true for the KPT evidence that they presented.  The standards in the settlement agreement are the same in the pretrial orders.  This Court has already confirmed that plaintiffs' actions were in violation of those orders, detrimental to the Knauf Defendants, and, without such evidence, Plaintiffs *cannot*

---

[20] R. Doc. 21838 (Special Master Report and Recommendation); R. Doc. 21839 (Special Master Supplemental Report and Recommendation); and R. Doc. 21871 (District Court Order Adopting Special Master Report and Recommendation).

*meet their burden* to establish if/how much KPT drywall was in their properties. Therefore, on this basis alone, the Court should maintain consistency in its rulings and judgments and grant the Knauf Defendants' motion for summary judgment.

### D. Plaintiffs' Damages are Unsupported.

CDO and MCF claims for loss of use should be dismissed because neither submitted evidence to support the claim, and the Properties were purchased for exclusive purpose of reselling. The only claimed damage is that they did not profit as much from their risky purchase as much as they had hoped.[21] Therefore, Plaintiffs have failed to prove any actual, unforeseen damages.

## IV. Conclusion

Based on all the discovery in MDL 2047 and the case-specific discovery as to MCF and CDO, the facts do not support any claims against the Knauf Defendants. CDO and MCF cannot substantiate any of the facts forming the basis of the claims against the Knauf Defendants, and there is no genuine issue material fact preventing summary judgment. Therefore, this Court should grant summary judgment, dismissing the claims with prejudice.

---

[21] Furthermore, MCF did not claim any diminution in value in the SPPF but then alleges diminution in value in the PFS. MCF submitted no competent evidence to support a diminution in value claim under Florida law. Florida law requires proof of lost fair market value be established by competent, substantial evidence and through a "qualified" witness. *See, e.g.*, *Hillside Van Lines, Inc. v. Matalon*, 297 So. 2d 848 (Fla. 3d D.C.A. 1974); *McDonald Air Conditioning, Inc. v. John Brown, Inc.*, 285 So. 2d 697 (Fla. 4th DCA 1973).

Respectfully submitted,

**FISHMAN HAYGOOD, LLP**

/s/ *Kerry J. Miller*
**KERRY J. MILLER (#24562), T.A.**
**PAUL C. THIBODEAUX (#29446)**
**DANIEL J. DYSART (#33812)**
201 St. Charles Avenue, Suite 4600
New Orleans, LA  70170
Telephone:      504.556.5549
Facsimile:       504.310.0275
Email:             kmiller@fishmanhaygood.com

*Counsel for Defendants,*
*Knauf Gips KG and*
*Knauf Plasterboard (Tianjin) Co., Ltd.*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that the above and foregoing pleading has been served upon Russ Herman, Plaintiffs' Liaison Counsel, by email, and to all parties by electronically uploading the same to LexisNexis File & Serve in accordance with Pre-Trial Order No. 6, and that the foregoing was filed with the Clerk of Court of the United States Court for the Eastern District of Louisiana, on this 13th day of March, 2019.

                                                    */s/ Kerry J. Miller*
                                                    **KERRY J. MILLER**