07/19/2013 12:50:12 PM JEFF PAR 3697487 mw $117.00
11335691 CONVEYANCE BOOK 3318 PAGE 98

| | |
|---|---|
| FILED BY: | Bayou Title Inc. |
| | 8020 Crowder Blvd. |
| | New Orleans, LA 70127 |
| | 504-242-7882 |
| | FILE NUMBER NO29613L/HU |

## ACT OF CASH SALE

BE IT KNOWN, that on this **15th** day of **July, 2013**, before me, the undersigned, a Notary Public, duly commissioned in the Parish of Jefferson and qualified for the State of Louisiana, and in the presence of the undersigned competent witnesses, personally came and appeared:

**JOHN A. HYLAND, JR.** (***-**-2131), a person of the full age of majority and a resident of the County of Monterey, State of California, appearing herein by and through Terrilyn Levith, his Attorney-in-Fact, duly authorized by virtue of a Power of Attorney, an original of which is attached hereto and made a part hereof; John A. Hyland, Jr. has been married but twice, first to Nancy Krammer from whom he was divorced, and secondly to Theresa Ryan with whom he is presently living and residing; his mailing address is 19027 Fieldstone Court, Salinas, CA 93908;

**JAMES R. HYLAND** (***-**-9683), a person of the full age of majority and a resident of the County of Maricopa, State of Arizona, appearing herein by and through Terrilyn Levith, his Attorney-in-Fact, duly authorized by virtue of a Power of Attorney, an original of which is attached hereto and made a part hereof; James R. Hyland has been married but once and then to Natalya Shigalof from whom he was divorced, and he has not since remarried; his mailing address is 707 S. Saint Martin Drive, Gilbert, AZ 85233;

**ROBERT C. HYLAND** (***-**-9682), a person of the full age of majority and a resident of the County of Sacramento, State of California, appearing herein by and through Terrilyn Levith, his Attorney-in-Fact, duly authorized by virtue of a Power of Attorney, an original of which is attached hereto and made a part hereof; Robert C. Hyland has been married but once and then to Stephanie Philis with whom he is presently living and residing; his mailing address is 6400 Woodhills Way, Citrus Heights, CA 95621; (Vendor),

who, being by me first duly sworn, declared that Vendor does, by these presents grant, bargain, sell, convey, transfer, set over, assign, abandon and deliver, with all legal warranties and with full substitution and subrogation in and to all rights and actions of warranty which Vendor has or may have against all preceding owners and vendors, unto:

**SIMIN LIU** (***-**-_____), wife of /and **FENG HU** (***-**-3268), both persons of the full age of majority and residents of the Parish of Jefferson, State of Louisiana, who, after having been first duly sworn did depose and say that they have each been married but once and then to each other with whom they are presently living and residing; their mailing address is 3016 Taft Park, Metairie, LA 70002; (Purchaser),

here present and accepting, purchasing for Purchaser, Purchaser's successors, heirs and assigns, and acknowledging due delivery and possession thereof, all and singular the following described property, to-wit:

TWO CERTAIN LOTS OF GROUND, together with all the buildings and improvements thereon, and all the rights, ways, privileges, servitudes, appurtenances and advantages thereunto belonging or in anywise appertaining, situated in the **Parish of Jefferson, State of Louisiana**, in that portion thereof known as **TAFT PARK** depicted upon a plan and partial survey made by S.A. Calongne, Civil Engineer and Surveyors, dated December 20, 1927, and being a subdivision of original tract designated as Lot Number 7 embracing Taft Park and being a part of rear or Lake portion of former Rosedale Plantation and lying within Section 45, Township 12 South, Range 10 East, of the Southeastern District of Louisiana, which plan is annexed to an Act passed before Roger Meunier, Notary Public, of date January 23, 1928, and which said lots are designated by the numbers, situated in the Square and have the boundaries and adjoin each other and measures as follows, to-wit:

LOTS 8 and 9 in SQUARE 34, bounded by Taft Park, 25th Street, 27th Street and the western boundary of Tract Number 7. LOTS 8 and 9 adjoin each other and measure each 25 feet in width and front on Taft Park, the same in width in the rear, by the following depths: LOT 8 has a depth on the side of Lot 7 of 108.59 feet, and a depth on the side of Lot 9 of 108.82 feet, LOT 9 has a depth on the side of Lot 8 of 108.82 feet, and a depth on the side of Lot 10 of 109.05 feet, with Lot Number 8 being closer to and commencing at a distance of 195.08 feet from the corner of Taft Park and 27th Street. According to a survey made by Errol E. Kelly, Surveyor, dated March 14,

**EXHIBIT Hui/Liu B**

1963, a copy of which is annexed to an act passed before Robert J. Oster, Notary Public, dated March 19, 1963, said lots are designated by the Numbers 8 and 9, have the same location and dimensions as shown above. Said Lots are also designated by the Numbers 8 and 9 on a survey of Errol E. Kelly, Surveyor, dated March 14, 1963, redated September 7, 1963, and redated April 6, 1971, by James E. Couturie, Land Surveyor, and recertified by Errol E. Kelly, Surveyor, on May 16, 1974, a copy of which is annexed to an act passed before William L. Andry, Notary Pubic, dated June 24, 1974, and made a part thereof for reference; and according thereto said lots are situated in the same subdivision and square, which square is shown to be bounded by Taft Park, 25th Street, 27th Street and the West Line of the Subdivision, and has the same measurements and dimensions as shown above.

Improvements thereon bear the Municipal No. **3016 Taft Park, Metairie, Louisiana.**

Being the same property acquired by Gloria Canfill, wife of/and Lambert Callaghan from Catherine Lagrange, wife of/and Lester L. Gauthreaux by act of sale passed before Robert N. Andry, Notary Public, dated November 15, 1989 and recorded November 17, 1989 at COB 2273, Page 453, Jefferson Parish, Louisiana. Further acquired by Connie C. Carrigee, Christine C. Hamann, Colleen C. Holland and Charlene C. Jaquillard by Judgment of Possession in the Succession of Gloria Canfill, wife of/and Lambert G. Callaghan dated April 18, 2013 and recorded April 18, 2013 at COB 3312, Page 848, Jefferson Parish, Louisiana. Further acquired by John A. Hyland, Jr., James R. Hyland and Robert C. Hyland from Connie C. Carrigee, Christine C. Hamann, Colleen C. Holland and Charlene C. Jaquillard by Dation En Paiement recorded on April 18, 2013 at COB 3312, Page 849, Jefferson Parish, Louisiana.

To have and to hold the Property unto Purchaser, Purchaser's successors, heirs and assigns forever.

This sale is made and accepted for and in consideration of the price and sum of **One Hundred Eighty Thousand and 00/100 ($180,000.00) DOLLARS** cash, which Purchaser has well and truly paid, in ready and current money, to Vendor, who hereby acknowledges the sufficiency and receipt thereof and grants full acquittance and discharge therefor.

The Property is sold subject to any and all applicable covenants, conditions, restrictions, servitudes, rights of way, outstanding mineral interests and other matters which may appear in the chain of title of title or elsewhere in the public records of JEFFERSON Parish, Louisiana, including without limitation the following:

1. Subject to The Road Home Declaration of Covenants Running With the Land ("Covenants") recorded at COB 3215, folio 284, in the records of the Parish of Jefferson.

the reference to or enumeration of which shall not serve to interrupt or revive prescription thereon, recognize the validity thereof, or acknowledge, ratify or confirm same.

All ad valorem taxes due the Parish of JEFFERSON up to and including the taxes due and payable in the year 2012 have been paid and have been prorated through the date of this transaction. The responsibility for the adjustment of any tax proration is assumed by Vendor and Purchaser. The responsibility for the application for a homestead exemption and/or the payment of taxes due in the year 2013 and all future years is assumed by Purchaser.

Vendor and Purchaser acknowledge that the Conveyance and Mortgage Certificates are open, undated and unsigned and relieve and release Bayou Title Inc., its members, managers, officers, agents and employees and the undersigned Notary Public from any and all responsibility in connection therewith. Vendor and Purchaser waive the production of Mortgage, Conveyance and Tax Research Certificates and relieve and release Bayou Title Inc., its members, managers, officers, agents and employees and the undersigned Notary Public from any and all responsibility in connection with the non-production of same.

Vendor and Purchaser acknowledge that a current survey has not been produced in connection with this transaction and relieve and release Bayou Title Inc., its members, managers, officers, agents and employees and the undersigned Notary Public from any and all responsibility for fence misalignments, servitudes, rights of way, encroachments, discrepancies in dimensions, rights of parties in possession and any and all other matters which might be disclosed on a current survey.

Vendor and Purchaser covenant and agree that the Property and all buildings, improvements and component parts thereon, and plumbing, electrical systems, mechanical equipment, heating and air conditioning systems, built-in appliances and all other items located on or in the Property are conveyed by Vendor and accepted by Purchaser "AS IS, WHERE IS," and "WITH ALL FAULTS," without any warranty of any kind whatsoever, even as to metes and bounds, the operation or suitability of such property for the use intended by purchaser, and without regard to the presence of apparent or hidden defects and with purchaser's full and complete waiver of any and all rights for the return of all or any part of the purchase price by the reason of any such defects. Purchaser acknowledges and declares that neither vendor nor any party whomsoever, acting or purporting to act in any capacity whatsoever on behalf of vendor, has made any direct, indirect, explicit or implicit statement, representation or declaration, whether by written or oral statement or otherwise, and upon which purchaser has relied, concerning the existence or non-existence of any quality, characteristic or condition of the property. Without limiting the foregoing, purchaser acknowledges and declares that neither vendor nor any party whomsoever, acting or purporting to act in any capacity whatsoever on behalf of vendor, has made any representation or warranty as to, and purchaser expressly waives any

warranty as to: (a) the quality, nature, adequacy or physical condition of the property including, but not limited to, the structural elements, foundation, roof, appurtenances, access, landscaping, parking facilities or the electrical, mechanical, hvac, plumbing, sewage or utility systems, facilities or appliances at the property, if any; (b) the quality, nature, adequacy or physical condition of soils, sub-surface support or ground water at the Property; (c) the existence, quality, nature, adequacy or physical conditions of any utilities serving the property, or access thereto; (d) the development potential of the Property or its habitability, marketability, fitness, suitability or adequacy for any particular purpose; (e) the zoning classification, use or other legal status of the Property; (f) the property's, or its operations' compliance with any applicable codes, laws, regulations, statutes, ordinances, covenants, setback requirements, conditions or restrictions of any governmental or quasi-governmental entity or of any other person or entity; (g) the quality of any labor or materials relating in any way to the property; or (h) the nature, status and extent of any right of way, servitude, lease, right of redemption, possession, lien, encumbrance, license, reservation, covenant, condition, restriction or any other matter affecting title to the Property. Purchaser has had full, complete and unlimited access to the property for all tests and inspections which Purchaser, in Purchaser sole discretion, deems sufficiently diligent for the protection of Purchaser's interests. Purchaser expressly waives the warranty of fitness and the warranty against redhibitory vices and defects, whether apparent or latent, imposed by LSA - C.C. art. 2475, any other applicable state or federal law and the jurisprudence thereunder. Purchaser also waives any rights it may have in redhibition or to a reduction of the purchase price pursuant to LSA - C.C. arts. 2520 through 2548, inclusive, in connection with the property. Purchaser declares and acknowledges that these waivers have been brought to Purchaser's attention and explained in detail and that Purchaser has voluntarily and knowingly consented to these waivers. By its signature, purchaser expressly acknowledges all such waivers. Without limiting the foregoing, purchaser releases Vendor from any and all claims, demands, causes of action, judgments, losses, damages, liabilities, costs and expenses (including attorney's fees whether suit is instituted or not), whether known or unknown, liquidated or contingent (claims) arising from or related to (a) any defects, errors or omissions in the design or construction of the property, whether the same are a result of negligence or otherwise; (b) other conditions (including environmental conditions) affecting the property, patent or latent, whether the same are as a result of negligence or otherwise; (c) Purchaser's ability or inability to obtain or maintain building permits, either temporary or final certificates of occupancy or other licenses for the use or operation of the property and/or certificates of compliance for the property; (d) the actual or potential income or profits to be derived from the Property; or (e) the real estate taxes or assessments now or hereafter payable thereon. The release set forth in this paragraph specifically includes any claims under any environmental laws, under the Americans with Disabilities Act of 1990 (42 U.S.C. §12101 et seq.), or with respect to any environmental risk. "Environmental laws" include without limitation, the Solid Waste Disposal Act, as amended by the Resource Conservation and Recovery Act (42 U.S.C §6901, et seq.), the Emergency Planning and Community Right to Know Act (42 U.S.C. §110, et seq.), the Clean Air Act (42 U.S.C. §7401, et seq.), the Clear Water Act (33 U.S.C. §1251 et seq.), the Toxic Substances Control Act (15 U.S.C. §260,1 et seq.), the Hazardous Materials Transportation Act (49 U. S. C. §1801, et seq.), the Occupational Safety and Health Act (29 U.S.C. §651, et seq.), the Federal Insecticide, Fungicide and Rodenticide Act (7 U.S.C. §136, et seq.), the Safe Drinking Water Act (42 U.S.C. §300, et seq.), the Comprehensive Environmental Response, Compensation and Liability Act of 1980 (42 U.S.C. §9601, et seq.), the Louisiana Environmental Quality Act (LSA -R. S. 30:2001, et seq.) and the Superfund Amendment and Reauthorization Act, as any of the same may be amended from time to time, and any state or local law dealing with environmental matters, and any regulation, order, rule, procedure, guideline and the like promulgated in connection therewith, regardless of whether the same are in existence on the date of this act. "Environmental risk" consists of any risk to persons or the environment, including without limitation (a) the presence of any friable, damaged asbestos upon the property; and/or (b) the release or discharge of any "hazardous substance" or "hazardous waste" (as defined by any environmental laws) onto or from the property of such a nature or to such an extent as to require clean-up under applicable law.

_____  _____
FENG HU                    SIMIN LIU