# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In Re:   **CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION** | **MDL 2047**<br><br>**SECTION "L"** |
| **This document relates to:**<br><br>*Elizabeth Bennett, et al v. Gebr. Knauf Verwaltungsgesellschaft, KG, et al*<br><br>**Case No. 14:cv-2722** | **JUDGE ELDON FALLON**<br><br>**MAGISTRATE JOSEPH WILKINSON, JR.** |

**MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT
ON CLAIMS ASSERTED BY FRANK GRANDE, SUZAN GRANDE,
CJ PROPERTIES, KAREN BETH BALDWIN, AND DAVID NEIL BALDWIN**

**MAY IT PLEASE THE COURT:**

Defendants, Knauf Gips KG and Knauf Plasterboard (Tianjin) Co., Ltd. (the "Knauf Defendants"), through undersigned counsel, respectfully submits this Memorandum in Support of its Motion for Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure as to the claims asserted by Frank Grande, Suzan Grande, CJ Properties, Karen Beth Baldwin, and David Neil Baldwin (the "Texas Subsequent Purchasers") against them in Plaintiffs' Fifth Amended Class Action Complaint (the "Fifth Amended Complaint").

## I.      Factual and Procedural Background

### A.      *MDL 2047 and the Bennett Complaint*

From 2004 through 2006, a housing boom in parts of the United States and rebuilding efforts necessitated by Hurricanes Rita and Katrina in the Gulf South led to a shortage of construction materials, including drywall. As a result, drywall manufactured in China was brought

into the United States and used to construct and refurbish homes in coastal areas of the country, notably the Gulf and East Coasts. Sometime after the Chinese drywall was installed, homeowners began to complain of foul-smelling odors, the corrosion and blackening of metal wiring, surfaces, and objects, and the breaking down of appliances and electrical devices in their homes. *See In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, 894 F. Supp. 2d 819, 829–30 (E.D. La. 2012), *aff'd*, 742 F.3d 576 (5th Cir. 2014). Many of these homeowners also began to complain of various physical afflictions believed to have been caused by the Chinese drywall.

These homeowners then began to file suit in various state and federal courts against homebuilders, developers, installers, realtors, brokers, suppliers, importers, exporters, distributors, and manufacturers who were involved with the Chinese drywall. Because of the commonality of facts in the various cases, this litigation was designated as a multidistrict litigation. Pursuant to a Transfer Order from the United States Judicial Panel on Multidistrict Litigation ("JPML") on June 15, 2009, all federal cases involving Chinese drywall were consolidated for pretrial proceedings in MDL 09-2047 before this Court.  On June 16, 2009, this Court entered PTO 1 regarding preservation of evidence, amongst other things. On October 9, 2009, this Court entered PTO 1(B) regarding preservation of evidence.   On January 24, 2012, this Court entered PTO 1(I) regarding preservation of evidence.

Since the inception of MDL 2047 in June of 2009, numerous cases have been consolidated, containing thousands of claims; over 20,000 records docs have been entered into the record, millions of documents exchanged in discovery, dozens of depositions, and over 30 Pretrial Orders have been issued; the Court has appointed steering committees and liaison counsel for plaintiffs,

homebuilders, insurers, installers, and manufacturers; it has presided over monthly status conferences, hearings, and several bellwether trials.[1]

**B.      *The Bennett Complaint and the Texas Subsequent Purchasers***

The original Bennett Complaint was filed on November 13, 2014 in the Northern District of Alabama and was subsequently transferred and consolidated into MDL 2047. The Complaint was amended multiple times to amend the parties and claims.  Frank Grande, Suzan Grande, and CJ Properties' claims were first asserted in the Fifth Amended Complaint filed on May 14, 2018, and David and Karen Baldwin's claims were first asserted in the Fourth Amended Complaint filed on May 14, 2018.[2] The Fifth Amended Complaint is the operative complaint in this matter. In accordance with the Court's approval, each of the Texas Subsequent Purchasers prepared under penalty of perjury (1) a Plaintiff Profile Form, *see* Exhibits A, F; (2) a Supplemental Plaintiff Profile Form, *see* Exhibits B, G; and (3) a Plaintiff Fact Sheet, *see* Exhibits C, H.

*1.      Frank Grande, Suzan Grande, and CJ Properties*

Frank Grande, Suzan Grande, and CJ Properties have asserted claims with respect to a property located at 7 Nevin Court, Conroe, TX 77301 (the "Grande Property"). CJ Properties bought the Grande Property in January 2016. *See* Exhibit D, Deposition of Frank Grande [hereinafter Frank Grande Depo.] at 15:4-16:5.[3] CJ Properties is a "d/b/a" under which Frank and Suzan Grande operate a real-estate investment business. *See id.* at 6:23-7:15. CJ Properties purchased the Grande Property from a foreclosure sale with the intent to flip the property for a profit. *See id.* at 20:1-8, 29:9-30:1. Importantly, the sale of the Grande Property to CJ Properties was an "as is" sale "without any expressed or implied warranties, except as to warranties of title,"

---

[1] *See* Order, R. Doc. No. 16570, pp. 3-4.
[2] Suzan Grande, CJ Properties, and David Baldwin each intervened on October 7, 2019.
[3] Suzan Grande adopted in full the answers of Frank Grande. *See* Exhibit E, Deposition of Suzan Grande, at 4:12-22.

and the Grande Property was "convey[ed] . . . to [CJ Properties] at [CJ Properties'] own risk, pursuant to the terms of Texas Property Code §§ 51.002 and 51.009." *See* Exhibit B at 11 (Substitute Trustee's Deed). The Chinese Drywall in the Grande Property was installed before CJ Properties purchased the Grande Property. *See* Exhibit D, Frank Grande Depo., at 48:8-19; *see also id.* at 22:24-23:5 (testifying that the previous owners performed a Chinese Drywall inspection).

> ### 2.      *David and Karen Baldwin*

David and Karen Baldwin have asserted claims with respect to a property located at 909 High Ridge Drive, Friendswood, TX 77546 (the "Baldwin Property"). The Baldwins purchased the Baldwin Property in November of 2009. *See* Exhibit I, Deposition of Karen Baldwin [hereinafter Karen Baldwin Depo.] at 11:17-12:1, 24:12-25:6.[4] The Chinese Drywall in the Baldwin Property was installed before David and Karen Baldwin purchased the Baldwin Property. *See id.* at 33:22-34:4. Further, the Baldwins provided two deeds: (1) a 2006 General Warranty Deed with Vendor's Lien from the builder of the property to the Baldwins' predecessors-in-interest and (2) the 2009 Warranty Deed with Vendor's Lien pursuant to which the Baldwins acquired title to the Baldwin Property. *See* Exhibit G at 26-31. The pages of the Deeds were out of order when produced; however, because the year 2009 is included on each page, it is clear that the 2009 Warranty Deed with Vendor's Lien is included as pages 28 through 30 of the Supplemental Plaintiff Profile Form attached as Exhibit G. The 2009 Deed provides that the Baldwin Property was conveyed to the Baldwins "to have and to hold . . ., together with all and singular, the rights and appurtenances thereunto in anywise belonging." *See id.* at 30.

---

[4] David Baldwin adopted in full Karen Baldwin's testimony. *See* Exhibit J, Deposition of David Baldwin, at 4:7-23.

## II.    Legal Standards

### A.    *Rule 56 Summary Judgment Standard*

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment is required if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[5] "A genuine dispute of material fact exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[6]

When seeking summary judgment, the movant bears the initial responsibility of demonstrating the absence of an issue of material fact with respect to those issues on which the movant bears the burden of proof at trial.[7]  However, where the non-movant bears the burden of proof at trial, the movant may merely point to an absence of evidence, thus shifting to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial.[8]

On a motion for summary judgment, "[a]lthough 'the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor,' summary judgment remains appropriate if the non-movant's evidence is 'merely colorable' or 'not significantly probative.'"[9] "Only when 'there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party' is a full trial on the merits warranted."[10]  Furthermore, "[d]iscovery is not a prerequisite to the disposition of a motion for summary judgment."[11]  "If it appears that

---

[5] FED. R. CIV. P. 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.").

[6] *Bennett v. Hartford Ins. Co. of Midwest*, 890 F.3d 597, 604 (5th Cir. 2018) (quoting *Johnson v. World All. Fin. Corp.*, 830 F.3d 192, 195 (5th Cir. 2016) (internal quotation marks omitted)).

[7] *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 2558, 91 L.Ed.2d 265 (1986).

[8] *Id.* at 322; *see also Moody v. Jefferson Parish School Board*, 2 F.3d 604, 606 (5th Cir. 1993).

[9] *Certain Underwriters at Lloyd's of London v. Lowen Valley View, L.L.C.,* 892 F.3d 167, 170 (5th Cir. 2018) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 255, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986)).

[10] *Lindsey v. Sears Roebuck & Co.*, 16 F.3d 616, 618 (5th Cir. 1994) (quoting *Anderson*, 477 U.S. at 249).

[11] *Carder v. Cont'l Airlines, Inc.*, 595 F. App'x 293, 299 (5th Cir. 2014) (quoting *Skiba v. Jacobs Entm't Inc.*, 587 Fed. Appx. 136, 138 (5th Cir. 2014) (per curiam)).

further discovery will not provide evidence creating a genuine issue of material fact, the district court may grant summary judgment."[12]

## III.   Argument

Texas has the same rule of law as Louisiana with respect to the rights of subsequent purchasers to sue for property damage that affected the property before the subsequent purchasers acquired title: absent an express assignment of rights from the predecessor-in-interest, the subsequent purchaser cannot maintain a suit for that property damage. Because the Texas Subsequent Purchasers did not receive any such express assignment of rights, their claims are due to be dismissed.

The Texas Court of Appeals' opinion in *Brooks v. Chevron USA Inc.*, No. 13-05-029-CV, 2006 WL 1431227 (Tex. Ct. App. May 25, 2006), is instructive on this issue. There, Brooks was one of multiple plaintiffs alleging that their property in a subdivision had been contaminated by oil-production activities that had occurred on the property before they purchased their lots. Although the alleged contamination had occurred long before Brooks and the other plaintiffs bought their properties, "Brooks allege[d] that it was not until 2003 that [they] first discovered the earlier oil and gas operations and contamination on their properties." *See id.* at *1. In affirming the decision to dismiss the plaintiffs' cases, the appellate court explained that:

> Where injury to land results . . . the right of action for all the damages
> resulting from the injury accrues to the owner of the land at the time
> the thing that causes the injury commences to effect [sic] the land.
> In legal contemplation the injury to the land occurs at that time.

---

[12] *Raby v. Livingston*, 600 F.3d 552, 561 (5th Cir. 2010) (citing *Access Telecom, Inc. v. MCI Telecomm. Corp.*, 197 F.3d 694, 720 (5th Cir.1999); *see also Washington v. Allstate Ins. Co.*, 901 F.2d 1281, 1285 (5th Cir.1990) ("This court has long recognized that a plaintiff's entitlement to discovery prior to a ruling on a motion for summary judgment is not unlimited, and may be cut off when the record shows that the requested discovery is not likely to produce the facts needed by the plaintiff to withstand a motion for summary judgment.").

*See id.* at \*6 (internal quotations omitted) (quoting *Vann v. Bowie Sewerage Co.*, 90 S.W.2d 561, 562 (Tex. 1936)). The court further explained that "[t]he right to sue for the injury is a personal right that belongs to the person who owns the property at the time of the injury," and because the plaintiffs neither (1) owned their respective properties at the time they were contaminated nor (2) received through an express assignment the vendor's claims (if any) for damages, the plaintiffs' claims were properly dismissed. *See id.* at \*6-8. Notably, in making its ruling, the appellate court explained that the language "together with all and singular the rights and appurtenances thereto in anywise belonging unto the said grantee" was insufficient to constitute an express assignment under Texas law. *See id.* at \*8.

As in *Brooks*, the Texas Subsequent Purchasers neither (1) owned their respective properties at the time the property damage occurred nor (2) received an express assignment of the vendor's claims (if any) for damages. As to the first issue, both the Grandes/CJ Properties and the Baldwins testified that the Chinese Drywall in their respective properties was installed in 2006— before either set of plaintiffs purchased their respective properties. *See* Exhibit D, Frank Grande Depo., at 48:8-19; *id.* at 22:24-23:5 (testifying that the previous owners performed a Chinese Drywall inspection); Exhibit I, Karen Baldwin Depo., at 11:17-12:1, 24:12-25:6; *id.* at 33:22-34:4. As explained by the court in *Brooks*, "[w]here injury to land results . . . the right of action for all the damages resulting from the injury accrues to the owner of the land *at the time the thing that causes the injury commences to [a]ffect the land.*" *See* 2006 WL 1431227, at \*6 (internal quotations omitted) (quoting *Vann*, 90 S.W.2d at 562). Because the Chinese Drywall is the "thing that cause[d] the injury" and was installed before either set of the Texas Subsequent Purchasers brought their respective properties, neither set of the Texas Subsequent Purchasers "was an owner of the land at the time of the injury." *See id.* at \*7. Thus, as in *Brooks*, the Texas Subsequent

Purchasers cannot maintain an action for property damage arising out of the Chinese Drywall absent an express assignment of their respective vendor's claims (if any). *See id.*

No such express assignment exists in this case, and the Texas Subsequent Purchasers' claims are due to be dismissed. As to the Grandes/CJ Properties, they bought the Grande Property "as is," and the property was conveyed to them "at the purchaser's own risk, pursuant to the terms of Texas Property Code §§ 51.002 and 51.009." *See* Exhibit B at 11 (Substitute Trustee's Deed). Importantly, Section 51.009 of the Texas Property Code specifies that "[a] purchaser at a sale of real property under Section 51.002 [governing sales of real property under contract liens] . . . acquires the foreclosed property 'as is' without any expressed or implied warranties, except as to warranties of title, and at the purchaser's own risk." Given that the Grandes/CJ Properties acquired the property at their "own risk," there is not and cannot be any argument that they acquired any predecessor-in-interest's right to sue for property damages by express assignment, and their claims must be dismissed. *See, e.g.*, *Brooks*, 2006 WL 1431227, at *7-8.

Similarly, the language in the Baldwins' Warranty Deed with Vendor's Lien is insufficient to constitute an express assignment under Texas law. As noted, the Baldwins' Deed conveyed the Baldwin Property to the Baldwins "to have and to hold . . . together with all and singular, the rights and appurtenances thereunto in anywise belonging." *See* Exhibit G at 30. This was the exact language deemed by *Brooks* to be insufficient. *See* 2006 WL 1431227, at *8 (citing *Richey v. Stop N Go Mkts. of Tex.*, 654 S.W.2d 430 (Tex. 1983)). Consequently, as in *Brooks*, the Baldwins did not receive an express assignment of any rights to pursue claims for Chinese Drywall, and their claims must be dismissed. *See id.*

## IV.     Conclusion

Based on all the discovery in MDL 2047 and the case-specific discovery as to the Texas

Subsequent Purchasers, the facts do not support any claims against the Knauf Defendants.   The

Texas Subsequent Purchasers' claims are barred under Texas's version of the subsequent-

purchaser doctrine, and there is no genuine issue material fact preventing summary judgment.

Therefore, this Court should grant summary judgment, dismissing the claims with prejudice.


Respectfully submitted,

**FISHMAN HAYGOOD, LLP**

/s/ *Kerry J. Miller*
_____
**KERRY J. MILLER (#24562), T.A.**
**PAUL C. THIBODEAUX (#29446)**
**DANIEL J. DYSART (#33812)**
201 St. Charles Avenue, Suite 4600
New Orleans, LA  70170
Telephone:     504.556.5549
Facsimile:     504.310.0275
Email:          kmiller@fishmanhaygood.com
*Counsel for Defendants,*
*Knauf Gips KG and*
*Knauf Plasterboard (Tianjin) Co., Ltd.*


### CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing pleading has been served upon Russ Herman, Plaintiffs' Liaison Counsel, by email, to all parties by electronically uploading the same to LexisNexis File & Serve in accordance with Pre-Trial Order No. 6, individually to pro se claimants via U.S. Mail, and that the foregoing was filed with the Clerk of Court of the United States Court for the Eastern District of Louisiana, on this 13th day of March, 2020.


/s/ *Kerry J. Miller*
_____
**KERRY J. MILLER**