UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In Re:  CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL 2047<br><br>SECTION "L"<br><br>JUDGE ELDON FALLON<br><br>MAGISTRATE JOSEPH WILKINSON, JR. |
| This document relates to:<br><br>*Elizabeth Bennett, et al v. Gebr. Knauf Verwaltungsgesellschaft, KG, et al*<br><br>Case No. 14:cv-2722 | |

## MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT ON CLAIMS ASSERTED BY TOSHONIA JACKSON ARMSTRONG & MARTIN ARMSTRONG

**MAY IT PLEASE THE COURT:**

Defendant, Knauf Gips KG and Knauf Plasterboard (Tianjin) Co., Ltd. (the "Knauf Defendants"), through undersigned counsel, respectfully submits this Memorandum in Support of its Motion for Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure as to the claims asserted by Toshonia Jackson Armstrong and Martin Armstrong (the "Armstrongs") against them in Plaintiffs' Fifth Amended Class Action Complaint (the "Fifth Amended Complaint").

**I.      Factual and Procedural Background**

   **A.      *MDL 2047 and the Bennett Complaint***

From 2004 through 2006, a housing boom in parts of the United States and rebuilding efforts necessitated by Hurricanes Rita and Katrina in the Gulf South led to a shortage of construction materials, including drywall. As a result, drywall manufactured in China was brought

into the United States and used to construct and refurbish homes in coastal areas of the country, notably the Gulf and East Coasts. Sometime after the Chinese drywall was installed, homeowners began to complain of foul-smelling odors, the corrosion and blackening of metal wiring, surfaces, and objects, and the breaking down of appliances and electrical devices in their homes. *See In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, 894 F. Supp. 2d 819, 829–30 (E.D. La. 2012), *aff'd*, 742 F.3d 576 (5th Cir. 2014). Many of these homeowners also began to complain of various physical afflictions believed to have been caused by the Chinese drywall.

These homeowners then began to file suit in various state and federal courts against homebuilders, developers, installers, realtors, brokers, suppliers, importers, exporters, distributors, and manufacturers who were involved with the Chinese drywall. Because of the commonality of facts in the various cases, this litigation was designated as a multidistrict litigation. Pursuant to a Transfer Order from the United States Judicial Panel on Multidistrict Litigation ("JPML") on June 15, 2009, all federal cases involving Chinese drywall were consolidated for pretrial proceedings in MDL 09-2047 before this Court. On June 16, 2009, this Court entered PTO 1 regarding preservation of evidence, amongst other things. On October 9, 2009, this Court entered PTO 1(B) regarding preservation of evidence. On January 24, 2012, this Court entered PTO 1(I) regarding preservation of evidence.

Since the inception of MDL 2047 in June of 2009, numerous cases have been consolidated, containing thousands of claims; over 20,000 records docs have been entered into the record, millions of documents exchanged in discovery, dozens of depositions, and over 30 Pretrial Orders have been issued; the Court has appointed steering committees and liaison counsel for plaintiffs,

homebuilders, insurers, installers, and manufacturers; it has presided over monthly status conferences, hearings, and several bellwether trials.[1]

### B.     *The Bennett Complaint and the Armstrongs*

The original Bennett Complaint was filed on November 13, 2014 in the Northern District of Alabama and was subsequently transferred and consolidated into MDL 2047. The Complaint was amended multiple times to amend the parties and claims. The Armstrongs were named in the Second Amended Complaint that was filed on January 31, 2016. The Fifth Amended Complaint is the operative complaint in this matter.

The Armstrongs are plaintiffs in the operative Fifth Amended Complaint and have made claims against Knauf Gips KG and KPT regarding the alleged presence defective Chinese drywall installed in their property located at 418 Sandstone Creek Lane, Dickinson, Texas 77539 (the "Property").  In conducting discovery in this MDL and in Bennett, this Court approved a Plaintiff Profile Form, Supplemental Plaintiff Profile Form, and Plaintiff Fact Sheet to be completed by Plaintiffs and set forth full and complete answers regarding the claims and damage amounts sought by all Bennett Plaintiffs.  The Armstrongs completed and submitted a PPF, SPPF, and PFS. The documents were completed under penalty of perjury. *See* Exhibits A (PPF), B (SPPF), and C (PFS).

The Armstrongs bought the Property on May 1, 2006, *see* Exhibit C, PFS, at 1, which was approximately four months after the Armstrongs believed Chinese Drywall was installed in the Property, *see* Exhibit B, SPPF, at 2. Long before they filed their claims in this action in 2016, the Armstrongs were contacted by, and involved in a class action against, the builders of the Property concerning the presence of Chinese Drywall in their home. *See, e.g.*, Exhibit D, Deposition of Toshonia Jackson Armstrong [hereinafter Armstrong Depo.] at 17:13-21, 18:7-21; 29:20-30:1.

---

[1] *See* Order, R. Doc. No. 16570, pp. 3-4.

Although Mrs. Armstrong originally testified that she was contacted in late 2013 or early 2014, *see id.* at 30:2-4, she subsequently testified that she recognized a letter dated June 19, 2012 from the Property's homebuilder raising the issue of Chinese Drywall and making express reference to an offer in August 2011 to remove the Chinese Drywall from the Property. *See id.* at 71:19-72:24; *see also* Exhibit 5 to Exhibit D, Armstrong Depo. Mrs. Armstrong further testified that she and her husband received the letter and that her husband rejected the offer contained in the letter. *See* Exhibit D, Armstrong Depo., at 74:5-19. Consequently, notwithstanding Mrs. Armstrong's previous confusion concerning whether she was contacted in late 2013 or early 2014,[2] the 2012 letter from the Armstrongs' homebuilder expressly reflects that the Armstrongs knew of the presence of Chinese Drywall as of August 2011—and that they did not file their claims against the Knauf Defendants until more than four years later, in January 2016.

As to their damages claims, Mrs. Armstrong testified that she and her husband prepared the itemized list together, with Mrs. Armstrong "go[ing] through each room in the home and just read[ing] off to him as he typed the information into a spreadsheet." *See id.* at 44:17-45:5. Certain items on the list admittedly had not been incurred, but were instead "expectations" of amounts that would be incurred in the event the home was remediated. *See id.* at 54:1-55:13. Those items of speculative damages that admittedly were never incurred are:[3]

---

[2] Even more, the itemized list that the Armstrongs submitted in the earlier case was uploaded in August of 2013, meaning the initial contact simply could not have been in 2014 as Mrs. Armstrong speculated. *See, e.g.*, *id.* at 54:21-55:6.

[3] The Knauf Defendants note preemptively that they object to any attempt to offer testimony, whether by declaration or otherwise, by Martin Armstrong. The Knauf Defendants were informed on the scheduled date of Mr. Armstrong's deposition that he would not be able to appear because of "medical issues that [were] keeping him from being [t]here" and were further informed that those medical issues—"neuropathic issues that [we]re actually causing him to have short-term memory issues"—would likely prevent him from ever appearing at a deposition. *See id.* at 4:7-25.

| Item No. from Itemization | Description from Itemization | Cost from Itemization |
|---|---|---|
| 28 | Moving | $4,809 |
| 29 | Rent/Deposit | $21,600 |
| 30 | Door Locks Changed | $600 |
| 32 | Utilities Transfer/Re-Transfer Fees | $1,500 |
| 33 | Loss of Use | $96,000 |
| 34 | Mortgage/Insurance | $24,000 |
| 35 | Lawn Maitenance [sic] | $1,300.00 |
| 36 | Pet Boarding | $5,400 |
| 39 | Time off Work to Meet Repair Techs | $5,000 |
| 41 | Renters Insurance | $1,800 |
| 42 | Storage | $1,920 |
| 56 | Demolision [sic] | $45,000 |
| 57 | Restoration | $50,000 |
| 59 | Dumpster Rental | $1,440 |
| 60 | Demo/Building Permits | $5,000 |
| 61 | HVAC | $12,000 |
| Total | | $277,369 |

*Compare id.* at 54:1-55:13 *with* Exhibit 14 to Exhibit C, PFS (Itemization); *see also* Exhibit D, Armstrong Depo., at 47:19-23 ("On this, as far as the moving and the rent and deposit, that's not – that's like, things for remediation, which we haven't – we haven't done any of that, but when we put this together, that's what we were looking at."); *id.* at 52:5-17 ("And, like I stated earlier, and I'll repeat, a lot of this was based on – like, you'll see, like I was stating, like, loss of use, lawn

maintenance, pet boarding, the things I did not include, when you said you could not use, those are the things that I'm stating he put together as if we were to have the home remediated. So some of these things you can look at and kind of see, okay, this is for remediation purposes, like the utility transfers, things of that nature. Of course, we're not saying that's damage as of today. That's if we had gone through a remediation process, these are the things we were listing that would be a part of that to consider."). And notably, the amounts will never be incurred: the Property was transferred from the Armstrongs in January 2020. *See* Exhibit E (Deed).

## II.     Legal Standards

### A.     *Rule 56 Summary Judgment Standard*

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment is required if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[4]  "A genuine dispute of material fact exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[5]

When seeking summary judgment, the movant bears the initial responsibility of demonstrating the absence of an issue of material fact with respect to those issues on which the movant bears the burden of proof at trial.[6]  However, where the non-movant bears the burden of proof at trial, the movant may merely point to an absence of evidence, thus shifting to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial.[7]

On a motion for summary judgment, "[a]lthough 'the evidence of the non-movant is to be

---

[4] FED. R. CIV. P. 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.").
[5] *Bennett v. Hartford Ins. Co. of Midwest*, 890 F.3d 597, 604 (5th Cir. 2018) (quoting *Johnson v. World All. Fin. Corp.*, 830 F.3d 192, 195 (5th Cir. 2016) (internal quotation marks omitted)).
[6] *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 2558, 91 L.Ed.2d 265 (1986).
[7] *Id.* at 322; *see also Moody v. Jefferson Parish School Board*, 2 F.3d 604, 606 (5th Cir. 1993).

believed, and all justifiable inferences are to be drawn in his favor,' summary judgment remains appropriate if the non-movant's evidence is 'merely colorable' or 'not significantly probative.'"[8] "Only when 'there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party' is a full trial on the merits warranted."[9] Furthermore, "[d]iscovery is not a prerequisite to the disposition of a motion for summary judgment."[10] "If it appears that further discovery will not provide evidence creating a genuine issue of material fact, the district court may grant summary judgment."[11]

## III.  Argument

The Armstrongs' case is due to be dismissed as time-barred. Alternatively, the items listed above—Items 28 through 30, 32 through 36, 39, 41, 42, 56, 57, and 59 through 61—are due to be dismissed because they are admittedly amounts that the Armstrongs never incurred.

### A.  The Armstrongs' claims are time-barred.

The Armstrongs' tort-based claims—including those under Texas's Deceptive Trade Practices—Consumer Protect Act ("DTPA") are time-barred under the applicable two-year limitations period, and the Armstrong's warranty-based claims are time-barred under the applicable four-year limitations period. All of the Armstrongs' claims are therefore due to be dismissed.

---

[8] *Certain Underwriters at Lloyd's of London v. Lowen Valley View, L.L.C.,* 892 F.3d 167, 170 (5th Cir. 2018) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 255, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986)).
[9] *Lindsey v. Sears Roebuck & Co.*, 16 F.3d 616, 618 (5th Cir. 1994) (quoting *Anderson*, 477 U.S. at 249).
[10] *Carder v. Cont'l Airlines, Inc.*, 595 F. App'x 293, 299 (5th Cir. 2014) (quoting *Skiba v. Jacobs Entm't Inc.*, 587 Fed. Appx. 136, 138 (5th Cir. 2014) (per curiam)).
[11] *Raby v. Livingston*, 600 F.3d 552, 561 (5th Cir. 2010) (citing *Access Telecom, Inc. v. MCI Telecomm. Corp.*, 197 F.3d 694, 720 (5th Cir.1999); *see also Washington v. Allstate Ins. Co.*, 901 F.2d 1281, 1285 (5th Cir.1990) ("This court has long recognized that a plaintiff's entitlement to discovery prior to a ruling on a motion for summary judgment is not unlimited, and may be cut off when the record shows that the requested discovery is not likely to produce the facts needed by the plaintiff to withstand a motion for summary judgment.").

"A cause of action generally accrues when the wrongful act effects an injury, regardless of when the plaintiff learned of such injury." *Pecan Valley Nut Co. v. E. I. du Pont de Nemours & Co.*, 15 S.W.3d 244, 246 (Tex. Ct. App. 2000). "The statute of limitations for negligence is two years," *see Haney v. Purcell Co.*, 796 S.W.2d 782, 785 (Tex. Ct. App. 1990), as is the statute of limitations for actions alleging damage to property and personal injury, *see, e.g., Hues v. Warren Petrol. Co.*, 814 S.W.2d 526, 530 (Tex. Ct. App. 1991); *Heckel v. Allen Samuels Chevrolet*, No. 14-07-00254-CV, 2008 WL 4308406, at *4 (Tex. Ct. App. Aug. 28, 2008) (Memo. Op.) (applying the two-year limitations period to a products-liability claim), and for claims under the DTPA, *see* TEX. BUS. & COM. CODE ANN. § 17.565 ("All actions brought under this subchapter must be commenced within two years after the date on which the false, misleading, or deceptive act or practice occurred or within two years after the consumer discovered or in the exercise of reasonable diligence should have discovered the occurrence of the false, misleading, or deceptive act or practice."). Claims for breach of an implied warranty under Texas law are governed by a four-year limitations period that runs from the date the product is first delivered and that is not subject to tolling.[12] *See, e.g.,* TEX. BUS. & COM. CODE ANN. § 2.725 ("An action for breach of any contract for sale must be commenced within four years after the cause of action has accrued. . . . A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered."); *see also Pecan Valley Nut Co.*, 15 S.W.3d at 249 (affirming that the plaintiffs' warranty claims were time-barred and quoting a Texas Supreme Court rationale that "[a]doption

---

[12] The Knauf Defendants are not conceding that any such warranty exists in this case; rather, the Knauf Defendants merely assert that such a claim would be time-barred.

of a uniform date of accrual and rejection of the discovery rule in warranty cases is a permissible means adopted by the state legislatures to protect commercial transactions" (internal quotations omitted)).

Here, the Armstrongs undeniably knew of the presence of and alleged injuries caused by Chinese Drywall as of August 2011. *See* Exhibit D, Armstrong Depo., at 71:19-72:24; *see also* Exhibit 5 to Exhibit D, Armstrong Depo. Indeed, as of August 2011, the Armstrongs had already been discussing Chinese Drywall with the Property's homebuilder, and the homebuilder had extended an offer to remediate the property. *See id.* Yet the Armstrongs waited more than four years—until January 2016—to assert their claims against the Knauf Defendants. Under the applicable two-year statute of limitations for negligence, DTPA, property-damage, and (to the extent applicable) personal-injury claims, the Armstrongs' claims are time-barred. *See, e.g.*, *Haney*, 796 S.W.2d at 785; *Hues*, 814 S.W.2d at 530; *Heckel*, 2008 WL 4308406, at *4; TEX. BUS. & COM. CODE ANN. § 17.565.

Similarly, the Armstrongs' implied warranty claims are time-barred.[13] Texas law is clear that, subject to an exception that is not applicable here, a claim for breach of an implied warranty runs from the date the allegedly defective material is delivered to the buyer. *See* TEX. BUS. & COM. CODE ANN. § 2.725 ("A breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered."). The date of accrual is not subject to tolling. *See, e.g., id.* ("A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of

---

[13] No express warranty exists in this case, and thus the Armstrongs' claims can only be based on a purportedly implied warranty.

the breach."); *Pecan Valley Nut Co.*, 15 S.W.3d at 249 (acknowledging that Texas has rejected the discovery rule and other tolling arguments in the context of an implied-warranty claim).

Here, the Armstrongs have asserted that, to the best of their knowledge, Chinese Drywall was installed in the Property in February 2006. *See* Exhibit B, SPPF, at 2. Regardless, the Armstrongs drywall had clearly been delivered to the Property before August 2011 because, by that time, the Property's homebuilder had offered to remediate the Chinese Drywall at the Property. *See* Exhibit D, Armstrong Depo., at 71:19-72:24; *see also* Exhibit 5 to Exhibit D, Armstrong Depo. Consequently, more than four years passed between the date on which the drywall was tendered at the Property and the date on which the Armstrongs filed suit in January of 2016, and the warranty claims are due to be dismissed. *See, e.g.*, TEX. BUS. & COM. CODE ANN. § 2.725; *Pecan Valley Nut Co.*, 15 S.W.3d at 249.

    **B.**  **Alternatively, the listed items of damages should be dismissed.**

In discussing Items 28 through 30, 32 through 36, 39, 41, 42, 56, 57, and 59 through 61 of the itemization prepared to support the damages claim in this case, Mrs. Armstrong testified: "Of course, we're not saying that's damage as of today." *See* Exhibit D, Armstrong Depo., at 52:5-17; 54:1-55:13). Rather, each of those items consisted of estimated values for damages that might have been incurred if the Armstrongs had undergone remediation work at the Property. *See, e.g., id.* No such remediation has ever been done and, in fact, the Property was transferred in January 2020. *See id.*; *see also* Exhibit E (Deed). Consequently, the Armstrongs never incurred the expenses listed under Items 28 through 30, 32 through 36, 39, 41, 42, 56, 57, and 59 through 61, and each of those items of damages should be dismissed. *See, e.g., Delfino v. Perry Homes*, 223 S.W.3d 32, 35 (Tex. Ct. App. 2006) (affirming summary judgment in a case in which the plaintiffs' expert opined that "*if* any problems were found" with a house's foundation, a $50,000 estimate would be

a "worst-case scenario" and explaining that "[u]ncertainty as to the fact of legal damages is fatal to recovery").

## IV. Conclusion

Based on all the discovery in MDL 2047 and the case-specific discovery as to the Armstrongs, the facts do not support any claims against the Knauf Defendants. The Armstrongs' claims are time-barred, and there is no genuine issue material fact preventing summary judgment. Therefore, this Court should grant summary judgment, dismissing the claims with prejudice.

Respectfully submitted,

**FISHMAN HAYGOOD, LLP**

/s/ *Kerry J. Miller*
**KERRY J. MILLER (#24562), T.A.**
**PAUL C. THIBODEAUX (#29446)**
**DANIEL J. DYSART (#33812)**
201 St. Charles Avenue, Suite 4600
New Orleans, LA 70170
Telephone:    504.556.5549
Facsimile:    504.310.0275
Email:        kmiller@fishmanhaygood.com
*Counsel for Defendants,*
*Knauf Gips KG and*
*Knauf Plasterboard (Tianjin) Co., Ltd.*

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing pleading has been served upon Russ Herman, Plaintiffs' Liaison Counsel, by email, to all parties by electronically uploading the same to LexisNexis File & Serve in accordance with Pre-Trial Order No. 6, individually to pro se claimants via U.S. Mail, and that the foregoing was filed with the Clerk of Court of the United States Court for the Eastern District of Louisiana, on this 13th day of March, 2020.

/s/ *Kerry J. Miller*
**KERRY J. MILLER**