**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION** | **MDL NO. 2047**<br><br>**SECTION: L** |
| **THIS DOCUMENT RELATES TO:**<br><br>***Elizabeth Bennett, et al. v. Knauf Gips, KG, et al.***<br>**2:14-cv-02722-EEF-JCW** | **JUDGE ELDON FALLON**<br><br>**MAG. JUDGE WILKINSON** |

**PLAINTIFF FACT SHEET**

Name of Plaintiff: ___Toshonia Jackson Armstrong___

Affected Property Address: ___418 Sandstone Creek Lane, Dickinson, TX  77539___

## I.  Purchase, Sale and/or Transfer of Ownership of Property

1.  On what date did you purchase the Property?

**Response**:  Plaintiff objects to this question as duplicative.  In addition, Plaintiff objects to this question on the ground that it seeks information in the possession of, known to, or otherwise equally available to the defendants.  Plaintiff has previously provided this information to defendants in the Bennett Supplemental Plaintiff Profile Form ("SPPF").  Plaintiff directs the defendants to Section II of the SPPF.  Without waiving said objection, Plaintiff adopts the SPPF response again here and intends to provide the exact same date as provided in the verified SPPF as follows: Plaintiff purchased the property:

(Month/Day/Year)        ___05___ / ___01___ / ___2006___

2.  When you took ownership of the Property, what was the name of the seller?

Richmond American Homes of Texas, LP



EXHIBIT
3

EXHIBIT
C

3. Name and address of the realtor?

Crystal Gage, Richmond American Homes of Texas, 2949 Silver Landing Lane, League City, TX  77573

4. Name and address of the closing agent?

Jenny Romanek, 7595 Technology Way, Bldg. 4, Denver, CO  80237

5. What was the price of the home when you purchased it?  $ 203,228.00

6. Was it an "as-is" sale?

**Response**: Plaintiff objects to the use of "as-is" in this question as vague, ambiguous, uncertain, and unintelligible; consequently, Plaintiff cannot determine the exact nature of the information being sought.  This term is not defined and is not commonly understood with one accepted meaning; multiple inpretations are possible.  Without waiving said objection, plaintiff responds as follows:

☐ Yes   ☑ No   ☐ I'm not sure.

7. If you sold or transferred ownership of the Property, what was the name of the purchaser?

N/A

8. If you sold or transferred ownership of the Property, what was the name and address of the realtor?

N/A

9. If you sold or transferred ownership of the Property, what was the name and address of closing agent?

N/A

10. If you sold or transferred ownership of the Property, what was the price paid for home?
$ N/A

## II.  Appraisal of the Home

11. Date of each appraisal:

a. __03__ / __02__ /20 __06__

b. __06__ / _____ /20 __13__

**PFS REQUEST FOR DOCUMENT PRODUCTION #1**: Please produce copies of any and all appraisals performed on the house both prior and subsequent to the occurrence of any of the events allenged in the petition.

> **Response**: All documents in Plaintiff's possession responsive to this request are attached as "Exhibit 1."

## III.  Discovery of Drywall

**12.**  Date that the property was constructed and/or renovated that installed the allegedly defective Chinese Drywall.

**Response**:  Plaintiff objects to this question as duplicative.  In addition, Plaintiff objects to this question on the ground that it seeks information in the possession of, known to, or otherwise equally available to the defendants.  Plaintiff has previously provided this information to defendants in the Bennett Supplemental Plaintiff Profile Form ("SPPF").  Plaintiff directs the defendants to  Section II of the SPPF. Without waiving said objection, Plaintiff adopts the SPPF response again here and intends to provide the exact same date as provided in the verified SPPF as follows: The property construction and/or renovation that installed the allegedly defective drywall occurred on or about the following date (to the best of my knowledge):

> (Month/Day/Year)          ____/____/20_06___

**PFS REQUEST FOR DOCUMENT PRODUCTION #2**: Please produce all documents, reports, photographs, videotapes, samples and any other materials which evidence and/or identify that there is defective Chinese Drywall in the Property.

> **Response**: All documents in Plaintiff's possession responsive to this request are attached as "Exhibit 2."

## IV.  Manufacturer/Seller of Drywall

**13.**  Who sold or distributed the drywall in the house?

**Response**:  Plaintiff objects to this question as duplicative.  In addition, Plaintiff objects to this question on the ground that it seeks information in the possession of, known to, or otherwise equally available to the defendants.  Plaintiff has previously provided this information to defendants in the Plaintiff Profile Form ("PPF"). Plaintiff directs the defendants to  Section X of the PPF.  Without waiving said objection, Plaintiff adopts the PPF response again here and intends to provide the exact same information as provided in the verified PPF as follows:   The drywall Supplier's name (to the best of my knowledge) is:

I don't know.

**PFS REQUEST FOR DOCUMENT PRODUCTION #3**: Please produce all documents, reports, photographs, videotapes, samples and any other materials which evidence and/or identify the manufacturer of drywall installed in the house. The submission must be in the form of PTO 1(B).

> **Response**: All documents in Plaintiff's possession responsive to this request are attached as "Exhibit 3."

## V. Damages

14. Identify any harm, financial or otherwise, that you contend was caused by defective Chinese Drywall installed in the Property.

**Response**: Plaintiff directs the defendants to review the complaint filed with the court in this case for a full listing of the claims being asserted and the damages being sought. The defective Knauf Chinese Drywall emitted gasses that cause damage to Plaintiff's home and the personal property contained therein. It also significantly diminished the use and enjoyment of the home; therefore, Plaintiff seeks the following: all compensatory, statutory, and/or punitive damages; all pre-judgment and post-judgment interest as allowed by law; any appropriate injunctive relief; an award of attorney's fees as allowed by law; an award of taxable costs; and, any and all such further relief as a jury or judge presiding over my trial deems just and proper. Other damages include, but are not limited to:

Gasses from defective drywall made us very uncomfortable. We also had no prospect of
selling the home if we wished.

15. If you contend that you entered personal bankruptcy as a result of damage to your property from defective Chinese Drywall, please describe the facts and circumstances that relate to your claim.

N/A

16. If you contend that you entered short sale and/or foreclosure as a result of damage to your property from defective Chinese Drywall, please describe the facts and circumstances that relate to your claim.

N/A

**PFS REQUEST FOR DOCUMENT PRODUCTION #4**: If you claim loss of income, please produce any copies of any and all documentation upon which you intend to rely upon to prove this claim.

> **Response**: All documents in Plaintiff's possession responsive to this request are attached as "Exhibit 4."

17. If you claim diminution of the property as a result of Chinese Drywall, state with particularity each fact which supports your claim.

N/A
_____
_____
_____
_____

18. Identify the appliances, fixtures and/or other electronics, if any, that you claim were damaged by Chinese Drywall in the property.

> **Response**: An list of damaged items is attached as "Exhibit 14."

19. If you vacated the property because of the alleged presence of Chinese Drywall, please provide: Address of each location you stayed thereafter.

> a. N/A_____
> b. _____
> c. _____

20. If you vacated the property because of the alleged presence of Chinese Drywall, please provide: Time periods in which you resided at each property.

> a. N/A /_____/20_____ to _____/_____/20_____
> b. _____/_____/20_____ to _____/_____/20_____
> c. _____/_____/20_____ to _____/_____/20_____

21. If you vacated the property because of the alleged presence of Chinese Drywall, please provide: Moving costs and/or alternative living expenses you claim to have incurred as a result of the alleged presence of Chinese Drywall.

> a. $ N/A_____
> b. $_____
> c. $_____

**PFS REQUEST FOR DOCUMENT PRODUCTION #5**:  If you vacated the property because of the alleged presence of Chinese Drywall, please provide any documentation to support your claims.

> **Response**:  All documents in Plaintiff's possession responsive to this request are attached as "Exhibit 5."

22.  Are you claiming damages for personal injury? ☐ Yes (explain below) ☑ No

_____

_____

23.  If you suffered personal injuries as a result of the alleged presence of Chinese Drywall:  Date you allege that you first sustained personal injuries as a result of your exposure to allegedly defective Chinese Drywall.

> **Response**:   ☑ N/A

24.  If you suffered personal injuries as a result of the alleged presence of Chinese Drywall:  What specific injuries have you suffered?

> **Response**:   ☑ N/A

25.  If you suffered personal injuries as a result of the alleged presence of Chinese Drywall:  Name and address of any doctor, physician, surgeon, chiropractor, or osteopath who examined and/or treated your alleged injuries.

> **Response**:   ☑ N/A

## VI.  Potential Witnesses/Evidence

26.  Has any written or recorded statement been taken from any witness or person who has knowledge of relevant facts, including the nature, character, and extent of the injuries referred to in the petition, and for each statement identified?

☐ Yes   ☑ No   ☐ I don't know

27.  If the answer to 26 is "yes," please state:  The name, address, and telephone number of the person from whom the statement was taken.

N/A _____

_____

28. If the answer to 26 is "yes," please state: The name, address, and telephone number of the person who took the statement.

N/A

29. If the answer to 26 is "yes," please state: The name address, and telephone number of the party having custody of such statement.

N/A

30. If the answer to 26 is "yes," please state: The date the statement was taken.

N/A

## VII.  Already Remediated Properties

31. If you already remediated the Property, who conducted the remediation?

    **Response:**   [✓] N/A

32. When did the remediation commencement date occur?

    **Response:**   [✓] N/A

33. When did the remediation end date occur?

    **Response:**   [✓] N/A

34. What was the scope of the remediation and the scope of the work carried out?

    **Response:**   [✓] N/A

35. What costs or expenses, if any, did you incur related to the remediation of the Property?

    **Response:**   [✓] N/A

36. Were any samples from the remediation retained?

    **Response:**  ☑ N/A

37. If the response to 36 is "yes," were the samples compliant with PTO 1(B)?

    **Response:**  ☑ N/A

38. Were any photographs taken of the allegedly defective Chinese Drywall?

    **Response:**  ☑ N/A

39. If the response to 38 is "yes," were the photographs compliant with PTO 1(B)?

    **Response:**  ☑ N/A

**PFS REQUEST FOR DOCUMENT PRODUCTION #6:** Please produce the following documentation concerning the remediation of the Property: Any evidence of KPT Chinese Drywall and Non-KPT Chinese Drywall, if any, in the Property prior to remediation.

    **Response:** All documents in Plaintiff's possession responsive to this request are attached as "Exhibit 6."

**PFS REQUEST FOR DOCUMENT PRODUCTION #7:** Please produce the following documentation concerning the remediation of the Property: Interior photographs of the Affected Property immediately prior to the commencement of, and following completion of, the remediation, including photographs and/or video images of the flooring and major components such as cabinets, moldings, doors, intercom systems, and fixtures for every room and bathroom and, to the extent possible, security systems, appliances and audio such as surround sound.

\*\* The photographs do not need to be pictures taken specifically for the litigation. For example, family photographs or photographs taken for purposes of refinancing a mortgage are acceptable in the absence of other photographs.

    **Response:** All documents in Plaintiff's possession responsive to this request are attached as "Exhibit 7."

**PFS REQUEST FOR DOCUMENT PRODUCTION #8:** Please produce the following documentation concerning the remediation of the Property: The remediation contract and an itemization from the contractor who performed the remediation work of the materials used during the remediation, including, but not limited to, manufacturer, model number, and quantity.

>     **Response**: All documents in Plaintiff's possession responsive to this request
>     are attached as "Exhibit 8."

**PFS REQUEST FOR DOCUMENT PRODUCTION #9**:  Please produce the following
documentation concerning the remediation of the Property:  An itemized invoice
from the contractor who performed the remediation work ("Itemized Invoice")
showing the scope of work carried out.

>     **Response**: All documents in Plaintiff's possession responsive to this request
>     are attached as "Exhibit 9."

**PFS REQUEST FOR DOCUMENT PRODUCTION #10**:  Please produce the following
documentation concerning the remediation of the Property:  Proof of payment of the
Itemized Invoice and any other expenses, such as cancelled checks, credit card
statements, etc.

>     **Response**: All documents in Plaintiff's possession responsive to this request
>     are attached as "Exhibit 10."

**PFS REQUEST FOR DOCUMENT PRODUCTION #11**:  Please produce the following
documentation concerning the remediation of the Property:  A floor plan of the
Affected Property with dimensions.

>     **Response**: All documents in Plaintiff's possession responsive to this request
>     are attached as "Exhibit 11."

**PFS REQUEST FOR DOCUMENT PRODUCTION #12**:  Please produce the following
documentation concerning the remediation of the Property:  An Environmental
Certificate.

>     **Response**: All documents in Plaintiff's possession responsive to this request
>     are attached as "Exhibit 12."

**PFS REQUEST FOR DOCUMENT PRODUCTION #13**:  Please produce the following
documentation concerning the remediation of the Property:  An Owner Disclosure
Affidavit in the form attached as Exhibit 1, which includes a certification that the
materials provided comprise all of the available documentation regarding the
following:  The drywall that was in the Affected Property prior to the
commencement of the remediation; and, the scope, extent, and cost of the
remediation.

>     **Response**: All documents in Plaintiff's possession responsive to this request
>     are attached as "Exhibit 13."

## VERIFICATION

I hereby verify that the responses to the Plaintiff Fact Sheet are correct to the best of my knowledge.


_____                    $1-23-19$
Signature of Plaintiff                                     Date

Toshonia Jackson (Armstrong)
Printed Name

# Exhibit 1

DYER AND ASSOCIATES
REAL ESTATE APPRAISERS

File No. 2964A

APPRAISAL OF

A Single Family Residence

LOCATED AT:

418 Sandstone Creek Lane
League City, TX  77539-3909

FOR:

Home American Mortgage Corp.
7595 Technology Way, Bldg. 4
Denver, CO 80237

BORROWER:

Toshonia Jackson

AS OF:

March 2, 2006

BY:

Larry Dyer
TX-1323103-R

10422 RED SLATE LANE, HOUSTON, TEXAS 77095   PHONE -(281) 304-7300/ FAX -(281) 304-7303

FLOORPLAN

| Borrower: Toshonia Jackson | | File No.: 2964A | |
| Property Address: 418 Sandstone Creek Lane | | Case No.: | |
| City: League City | | State: TX | Zip: 77539-3909 |
| Lender: Home American Mortgage Corp | | | |



| SKETCH CALCULATIONS | Perimeter | Area |
|---|---|---|
| **Living Area** | | |
| First Floor | | |
| A1 : 40.1 x 43.9 = | | 1760.4 |
| A2 : 18.6 x 7.5 = | | 139.5 |
| A3 : 13.5 x 1.5 = | | 20.3 |
| | | 1920.2 |
| Second Floor | | |
| A4 : 13.7 x 6.0 = | | 82.2 |
| A5 : 17.7 x 1.4 = | | 24.8 |
| A6 : 14.0 x 8.3 = | | 116.2 |
| A7 : 14.0 x 17.5 = | | 245.0 |
| A8 : 40.4 x 4.0 = | | 161.6 |
| A9 : 21.4 x 10.6 = | | 226.8 |
| | | 856.6 |
| | Total Living Area | 2776.8 |
| **Garage Area** | | |
| Attached Garage | | |
| A10 : 21.5 x 20.7 = | | 445.0 |
| | | 445.0 |
| | Total Garage Area | 445.0 |



FLOORPLAN

| Borrower: Toshonia Jackson | File No.: 2964A |
| Property Address: 418 Sandstone Creek Lane | Case No.: |
| City: League City | State: TX | Zip: 77539-3909 |
| Lender: Home American Mortgage Corp. | |

40.1'

FP

Breakfast

Master Bedroom

Family Room

Kitchen

Master Bath

43.9'

52.9'

Utility

Dining Area

1/2 Bath

Study

Entry

Living Room

21.5'

7.5'

5.1'

13.5'

1.5'

2 Car Garage

20.7'

13.2'

21.5'

# DOYLE LAW FIRM

*A Professional Corporation*

James V. Doyle, Jr.
Shareholder

Email: *jimmy@DoyleFirm.com*

Toll Free: (888) 635-5204
Facsimile: (205) 332-1362
Website: www.DoyleFirm.com

<u>Alabama</u>
2100 Southbridge Pkwy., Suite 650
Birmingham, AL 35209
Office: (205) 533-9500

<u>Georgia</u>
3340 Peachtree Road, Suite 1800
Atlanta, GA 30326
Office: (678) 799-7676

March 3, 2015

<u>Via U.S. Mail</u>

Toshonia & Martin Armstrong
418 Sandstone Creek Lane
Dickinson, TX 77539

      **RE:   Chinese Drywall Paperwork**

Dear Mr. & Mrs. Armstrong:

Enclosed you'll find a copy of the paperwork necessary to move forward with a Chinese drywall claim. Please complete the forms and return them to my Birmingham office at the address noted above. If you have any questions, don't hesitate to call or email.

Sincerely,

Jimmy Doyle

DYER AND ASSOCIATES

## Uniform Residential Appraisal Report

File No. 2964A

21. The lender/client may disclose or distribute this appraisal report to: the borrower; another lender at the request of the borrower; the mortgagee or its successors and assigns; mortgage insurers; government sponsored enterprises; other secondary market participants; data collection or reporting services; professional appraisal organizations; any department, agency, or instrumentality of the United States; and any state, the District of Columbia, or other jurisdictions; without having to obtain the appraiser's or supervisory appraiser's (if applicable) consent.  Such consent must be obtained before this appraisal report may be disclosed or distributed to any other party (including, but not limited to, the public through advertising, public relations, news, sales, or other media).

22. I am aware that any disclosure or distribution of this appraisal report by me or the lender/client may be subject to certain laws and regulations.  Further, I am also subject to the provisions of the Uniform Standards of Professional Appraisal Practice that pertain to disclosure or distribution by me.

23. The borrower, another lender at the request of the borrower, the mortgagee or its successors and assigns, mortgage insurers, government sponsored enterprises, and other secondary market participants may rely on this appraisal report as part of any mortgage finance transaction that involves any one or more of these parties.

24. If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

25. Any intentional or negligent misrepresentation(s) contained in this appraisal report may result in civil liability and/or criminal penalties including, but not limited to, fine or imprisonment or both under the provisions of Title 18, United States Code, Section 1001, et seq., or similar state laws.

**SUPERVISORY APPRAISER'S CERTIFICATION:** The Supervisory Appraiser certifies and agrees that:

1. I directly supervised the appraiser for this appraisal assignment, have read the appraisal report, and agree with the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

2. I accept full responsibility for the contents of this appraisal report including, but not limited to, the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

3. The appraiser identified in this appraisal report is either a sub-contractor or an employee of the supervisory appraiser (or the appraisal firm), is qualified to perform this appraisal, and is acceptable to perform this appraisal under the applicable state law.

4. This appraisal report complies with the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

5. If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

| APPRAISER | SUPERVISORY APPRAISER (ONLY IF REQUIRED) |
|---|---|
| Signature | Signature |
| Name Larry Dyer | Name |
| Company Name Dyer and Associates | Company Name |
| Company Address 10422 Red Slate Lane, Houston TX 77095 | Company Address |
| Telephone Number 281-304-7300 | Telephone Number |
| Email Address larry@dyerappraisal.com | Email Address |
| Date of Signature and Report 03/02/2006 | Date of Signature |
| Effective Date of Appraisal 03/02/2006 | State Certification # See Attached Addendum to Item 19 |
| State Certification # TX-1323103-R | or State License # of Appraiser's Certification |
| or State License # | State |
| or Other (describe) State # TX | Expiration Date of Certification or License |
| State TX | |
| Expiration Date of Certification or License 05/31/2006 | |
| ADDRESS OF PROPERTY APPRAISED | SUBJECT PROPERTY |
| 418 Sandstone Creek Lane | ☐ Did not inspect subject property |
| League City, TX  77539-3909 | ☐ Did inspect exterior of subject property from street |
| | Date of Inspection |
| APPRAISED VALUE OF SUBJECT PROPERTY $ 204,000 | ☐ Did inspect interior and exterior of subject property |
| | Date of Inspection |
| LENDER/CLIENT | |
| Name Jenny Romanek | COMPARABLE SALES |
| Company Name Home American Mortgage Corp. | ☐ Did not inspect exterior of comparable sales from street |
| Company Address 7595 Technology Way, Bldg 4 | ☐ Did inspect exterior of comparable sales from street |
| Denver, CO 80237 | Date of Inspection |
| Email Address | |

Dyer and Associates

DYER AND ASSOCIATES

## Uniform Residential Appraisal Report

File No. 2964A

| FEATURE | SUBJECT | COMPARABLE SALE NO. 4 | | COMPARABLE SALE NO. 5 | | COMPARABLE SALE NO. 6 | |
|---|---|---|---|---|---|---|---|
| Address | 418 Sandstone Creek Lane<br>League City | 2918 Standing Springs Lane | | | | | |
| Proximity to Subject | | 0.11 miles W | | | | | |
| Sale Price | $ 203,228 | $ 180,628 | | $ | | $ | |
| Sale Price/Gross Liv. Area | $ 73.18 sq. ft. | $ 71.42 sq. ft. | | sq. ft. | | $ 0.00 sq. ft. | |
| Data Source(s) | Inspection | Builder/Lender | | | | | |
| Verification Source(s) | Builder/Lender | Builder/Lender | | | | | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment |
| Sale or Financing | Unknown | Conv. Loan | | | | | |
| Concessions | | No Points | | | | | |
| Date of Sale/Time | 03/2006 | Pending Sale | | | | | |
| Location | Average | Average | | | | | |
| Leasehold/Fee Simple | Fee Simple | Fee Simple | | | | | |
| Site | 6173 SF | 6191 SF | | | | | |
| View | Average | Average | | | | | |
| Design (Style) | 2 Sty Avg | 2 Sty Avg | | | | | |
| Quality of Construction | Average | Average | | | | | |
| Actual Age | New | New | | | | | |
| Condition | Good | Good | | | | | |
| Above Grade | Total / Bdrms / Baths | Total / Bdrms / Baths | | Total / Bdrms / Baths | | Total / Bdrms / Baths | |
| Room Count | 8 / 4 / 2.5 | 8 / 4 / 2.5 | | | | | |
| Gross Living Area | 35   2,777 sq. ft. | 2,529 sq. ft. | 8,700 | sq. ft. | | sq. ft. | |
| Basement & Finished | Builder: | Builder: | | | | | |
| Rooms Below Grade | Richmond Amer. | Richmond Amer. | | | | | |
| Functional Utility | Average | Average | | | | | |
| Heating/Cooling | CH/CAC | CH/CAC | | | | | |
| Energy Efficient Items | Standard | Standard | | | | | |
| Garage/Carport | 2 Car Garage | 2 Car Garage | | | | | |
| Porch/Patio/Deck | Porch,Patio | Porch,Patio | | | | | |
| Upgrades | Upgrades | $15,538 | 18,920 | | | | |
| Net Adjustment (Total) | | [X] + [ ] - | $ 27,620 | [X] + [ ] - | $ 0 | [X] + [ ] - | $ 0 |
| Adjusted Sale Price | | Net Adj. 15% % | | Net Adj. 0.0% % | | Net Adj. 0.0% % | |
| of Comparables | | Gross Adj. 15% % | $ 208,248 | Gross Adj. 0.0% % | $ 0 | Gross Adj. 0.0% % | $ 0 |

| ITEM | SUBJECT | COMPARABLE SALE NO. 4 | COMPARABLE SALE NO. 5 | COMPARABLE SALE NO. 6 |
|---|---|---|---|---|
| Date of Prior Sale/Transfer | New Construction | New Construction | | |
| Price of Prior Sale/Transfer | N/A | N/A | | |
| Data Source(s) | MLS/Tax Records | MLS/Tax Records | | |
| Effective Date of Data Source(s) | 03/2006 | 03/2006 | | |

Summary of Sales Comparison Approach

| Property ID and ... Description | Owner Information | Last Inspected | Market Value | Card Printed | Card # | Map |
|---|---|---|---|---|---|---|
| R420445          Tax Year: 2013 | JACKSON, TOSHONIA (O577477) | 02/20/2013 (KL) | $168,530 | 03/26/2014 | 1 | 188-D |
| 1387-0001-0012-000 | | Next Inspection/Reason | Assessed Value | Comments | | |
| ABST 19 PERRY & AUSTIN SUR LOT 12 BLK 1 BAY COLONY POINTE SEC 6 (2004) | 418 SANDSTONE CREEK LN DICKINSON,TX 77539 | 01/01/2014 (R-MOD) | $168,530 | FR13-N/C, FR12- N/C, FR07-REMOVE PC, FR06-ADD IMPS 20 PC | | |

**Property Situs Address**
418 SANDSTONE CREEK LN, LEAGUE CITY, TX 77539

**Linked Property**

| Neighborhood | Exemptions/Spec. Vals |
|---|---|
| 1382 | HS |

**Taxing Unit Information**
C40;GGA;J05;M14;RFL;S11




| Topography | Utilities | Access | Other |
|---|---|---|---|
| ABOVE | AP | CONC | SS |

| | Const Style | Foundation | Ext. Finish | Int. Finish | Roof Style | Flooring |
|---|---|---|---|---|---|---|
| **Attributes** | SFC | CS | BV | SR | CS | CP-TI |
| | Heat/AC | Plumbing | Fireplace | Rooms | Bedrooms | |
| | CH-CA | 2.5 | FP | | | |

| | Date | Price | Seller | Book / Instrument | Page |
|---|---|---|---|---|---|
| **Sales History** | | | RAH OF TEXAS LP | 2006034529 | |
| | | | BAY COLONY POINTE SEC 6 | 2004055401 | |

**Improvements**

| Type | Description | St Cd, HS, Type | Class | Area | Area Factor | Adjusted Area | Perimeter | Unit Price | Yr. Blt / Act-Eff | Cond | % Gd | Ph % | Eco % | Fnc % | % Cmp | Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| MA | Main Area | A1 Y R1 | B13 | 1,929 | | 1,929 | 186 | 42.75 | 2005-2005 | 1 | 100 | 100 | 100 | 100 | | 96,900 |
| MA2 | Main Area 2nd Floor | A1 Y R1 | B13 | 868 | | 868 | 178 | 40.61 | 2005-2005 | 1 | 100 | 100 | 100 | 100 | | 40,540 |
| OP | Open Porch | A1 Y R1 | B13 | 15 | | 15 | 16 | 8.55 | 2005-2005 | 1 | 100 | 100 | 100 | 100 | | 150 |
| GA | Garage | A1 Y R1 | B13 | 462 | | 462 | 86 | 17.10 | 2005-2005 | 1 | 100 | 100 | 100 | 100 | | 9,090 |

NBH% 115     ImpMod  93.00000000                                                                                   TOTAL   136,410

**Land Information**

| Type | Description | Table | ST Cd | HS | Meth | Area | Unit Price | Func % | Econ % | Adj % | Market Value | Ag Tbl | Meth | Ag Unit Pr | Ag Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| RL | Residential Lot | L-S1387 | A1 | Y | L | 6,173.0000 | 32,117.22 | 100 | 100 | | 32,120 | | | 0.00 | 0 |

NBH% 100               EFF. ACRES  0.1420     TOTAL  6,173.0000          TOTAL   32,120          TOTAL   0

DYER AND ASSOCIATES

## Uniform Residential Appraisal Report

File No. 2964A

The purpose of this summary appraisal report is to provide the lender/client with an accurate, and adequately supported, opinion of the market value of the subject property.

| | | |
|---|---|---|
| Property Address 418 Sandstone Creek Lane | City League City | State TX   Zip Code 77539-3908 |
| Borrower Toshonia Jackson | Owner of Public Record Richmond American Homes | County Galveston |

Legal Description Lot 12, Block 1, Bay Colony Pointe, Section 6

| | | | |
|---|---|---|---|
| Assessor's Parcel # New construction | | Tax Year 2005 | R.E. Taxes $  N/A |
| Neighborhood Name Bay Colony | | Map Reference 698H | Census Tract 7206.00 |
| Occupant ☐ Owner ☐ Tenant ☒ Vacant | Special Assessments $ None | ☒ PUD   HOA $ 37.50 ☐ per year ☒ per month | |
| Property Rights Appraised ☒ Fee Simple ☐ Leasehold ☐ Other (describe) | | | |
| Assignment Type ☒ Purchase Transaction ☐ Refinance Transaction ☐ Other (describe) | | | |

Lender/Client Home American Mortgage Corp.   Address 7595 Technology Way, Bldg. 4, Denver, CO 80237

Is the subject property currently offered for sale or has it been offered for sale in the twelve months prior to the effective date of this appraisal? ☐ Yes ☒ No

Report data source(s) used, offering price(s), and date(s). N/A

I ☒ did ☐ did not analyze the contract for sale for the subject purchase transaction. Explain the results of the analysis of the contract for sale or why the analysis was not performed
The property is new construction built by Richmond American Homes. A copy of the contract was reviewed. The sales price is
$203,228

| | | | |
|---|---|---|---|
| Contract Price $ 203,228 | Date of Contract 03/2006 | Is the property seller the owner of public record? ☒ Yes ☐ No | Data Source(s) Tax Records |

Is there any financial assistance (loan charges, sale concessions, gift or downpayment assistance, etc.) to be paid by any party on behalf of the borrower? ☒ Yes ☐ No
If Yes, report the total dollar amount and describe the items to be paid. $ Unknown   Seller will pay for owners title policy. The builder also gave
the borrower a $5,220 discount off of the base price of the house. The dollar amount above is shown as unknown because the
appraiser does not have the cost figure for the title policy.

Note: Race and the racial composition of the neighborhood are not appraisal factors.

| Neighborhood Characteristics | | | One-Unit Housing Trends | | | One-Unit Housing | | Present Land Use % | |
|---|---|---|---|---|---|---|---|---|---|
| Location ☐ Urban ☒ Suburban ☐ Rural | Property Values ☐ Increasing ☒ Stable ☐ Declining | | | | | PRICE $(000) | AGE (yrs) | One-Unit | 100 % |
| Built-Up ☒ Over 75% ☐ 25-75% ☐ Under 25% | Demand/Supply ☐ Shortage ☒ In Balance ☐ Over Supply | | | | | 5(000) Low | New | 2-4 Unit | % |
| Growth ☐ Rapid ☒ Stable ☐ Slow | Marketing Time ☐ Under 3 mths ☒ 3-6 mths ☐ Over 6 mths | | | | | 106 Low   220 High | New   11 | Multi-Family   Commercial | % % |
| Neighborhood Boundaries The boundaries are considered to be the residential subdivision known | | | | | | 137 Pred. | 5 | Other | % |

as Bay Colony. The area is principally comprised of single family residences.

Neighborhood Description See Attached Addendum.

Market Conditions (including support for the above conclusions) See Attached Addendum.

| | | | |
|---|---|---|---|
| Dimensions No survey provided; Tax Records | Area 8173 Sq. Ft. | Shape Basically rectangular | View Average |
| Specific Zoning Classification None | | Zoning Description None | |
| Zoning Compliance ☐ Legal ☐ Legal Nonconforming (Grandfathered Use) ☒ No Zoning ☐ Illegal (describe) | | | |

Is the highest and best use of the subject property as improved (or as proposed per plans and specifications) the present use? ☒ Yes ☐ No   If No, describe.

| Utilities | Public | Other (describe) | Public | Other (describe) | Off-site Improvements—Type | Public | Private |
|---|---|---|---|---|---|---|---|
| Electricity | ☒ | | Water ☒ | | Street Concrete | ☒ | ☐ |
| Gas | ☒ | | Sanitary Sewer ☒ | | Alley None | | |

FEMA Special Flood Hazard Area ☐ Yes ☒ No   FEMA Flood Zone   FEMA Map # 481569 0005B   FEMA Map Date 03/04/1991

Are the utilities and off-site improvements typical for the market area? ☒ Yes ☐ No   If No, describe.

Are there any adverse site conditions or external factors (easements, encroachments, environmental conditions, land uses, etc.)? ☐ Yes ☒ No   If Yes, describe.

| GENERAL DESCRIPTION | | FOUNDATION | | EXTERIOR DESCRIPTION materials/condition | | INTERIOR materials/condition | |
|---|---|---|---|---|---|---|---|
| Units ☒ One ☐ One with Accessory Unit | | ☒ Concrete Slab ☐ Crawl Space | | Foundation Walls Concrete/G | | Floors Carpet, Tile/G | |
| # of Stories Two | | ☐ Full Basement ☐ Partial Basement | | Exterior Walls Brick, Hardi/G | | Walls Drywall/G | |
| Type ☒ Det. ☐ Att. ☐ S-Det./End Unit | | Basement Area sq. ft. | | Roof Surface Composition/G | | Trim/Finish Wood/G | |
| ☒ Existing ☐ Proposed ☐ Under Const. | | Basement Finish N/A % | | Gutters & Downspouts Aluminum/G | | Bath Floor Tile/G | |
| Design (Style) 2 Sty. Trad | | ☐ Outside Entry/Exit ☐ Sump Pump | | Window Type Aluminum/G | | Bath Wainscot Tile/G | |
| Year Built 2006 | | Evidence of ☐ Infestation | | Storm Sash/Insulated None | | Car Storage ☐ None | |
| Effective Age (Yrs) New | | ☐ Dampness ☐ Settlement | | Screens Screens/G | | ☒ Driveway   # of Cars 2 | |
| Attic ☐ None | | Heating ☒ FWA ☐ HWBB ☐ Radiant | | Amenities ☐ WoodStove(s) # | | Driveway Surface Concrete | |
| ☒ Drop Stair ☐ Stairs | | ☐ Other   Fuel Gas | | ☒ Fireplace(s) #   ☐ Fence Wood | | ☒ Garage   # of Cars 2 | |
| ☐ Floor ☐ Scuttle | | Cooling ☒ Central Air Conditioning | | ☒ Patio/Deck   ☒ Porch Covered | | ☐ Carport   # of Cars | |
| ☐ Finished ☐ Heated | | ☐ Individual ☐ Other | | ☐ Pool ☐ Other | | ☒ Att. ☐ Det. ☐ Built-in | |

Appliances ☐ Refrigerator ☒ Range/Oven ☒ Dishwasher ☒ Disposal ☒ Microwave ☐ Washer/Dryer ☐ Other (describe)

Finished area above grade contains: 9 Rooms   4 Bedrooms   2.5 Bath(s)   2,777 Square Feet of Gross Living Area Above Grade

Additional features (special energy efficient items, etc.). The features of the subject are similar to competing homes in the subdivision.

Describe the condition of the property (including needed repairs, deterioration, renovations, remodeling, etc.). The improvements are completed new construction.
The appraiser is not a structural, mechanical, electrical, nor a plumbing inspector. No expressed or implied warranty is made. No
functional or external inadequacies were noted that would affect marketability.

Are there any physical deficiencies or adverse conditions that affect the livability, soundness, or structural integrity of the property? ☐ Yes ☒ No   If Yes, describe.

Does the property generally conform to the neighborhood (functional utility, style, condition, use, construction, etc.)? ☒ Yes ☐ No   If No, describe.

DYER AND ASSOCIATES

## Uniform Residential Appraisal Report

File No. 2964A

There are **5** comparable properties currently offered for sale in the subject neighborhood ranging in price from $ 175,000 to $ 220,000

There are **6** comparable sales in the subject neighborhood within the past twelve months ranging in sale price from $ 175,000 to $ 220,000

| FEATURE | SUBJECT | COMPARABLE SALE NO. 1 | | COMPARABLE SALE NO. 2 | | COMPARABLE SALE NO. 3 | |
|---|---|---|---|---|---|---|---|
| Address | 418 Sandstone Creek Lane | 118 Sandstone Bend | | 2931 Standing Springs Lane | | 2930 Silver Landing Lane | |
| | League City | | | | | | |
| Proximity to Subject | | 0.22 miles NNW | | 0.07 miles WNW | | 0.07 miles NE | |
| Sale Price | $ 203,228 | $ 198,000 | | $ 200,494 | | $ 201,195 | |
| Sale Price/Gross Liv. Area | $ 73.18 sq. ft. | $ 70.49 sq. ft. | | $ 84.88 sq. ft. | | $ 76.01 sq. ft. | |
| Data Source(s) | Inspection | MLS/Tax Rec/Agent | | Builder/Lender | | Builder/Lender | |
| Verification Source(s) | Builder/Lender | ML# 3734041 | | Builder/Lender | | Builder/Lender | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-)$ Adjustment | DESCRIPTION | +(-)$ Adjustment | DESCRIPTION | +(-)$ Adjustment |
| Sale or Financing | Unknown | Conv Loan | | Conv. Loan | | Conv. Loan | |
| Concessions | | No Points | | No Points | | No Points | |
| Date of Sale/Time | 03/2006 | 11/2005 | | 08/2005 | | 07/2005 | |
| Location | Average | Average | | Average | | Average | |
| Leasehold/Fee Simple | Fee Simple | Fee Simple | | Fee Simple | | Fee Simple | |
| Site | 6173 SF | 6600 SF | | 5500 SF | | 6344 SF | |
| View | Average | Average | | Average | | Average | |
| Design (Style) | 2 Sty Avg | 2 Sty Avg | | 2 Sty Avg | | 2 Sty Avg | |
| Quality of Construction | Average | Average | | Average | | Average | |
| Actual Age | New | New | | New | | New | |
| Condition | Good | Good | | Good | | Good | |
| Above Grade | Total 9 Bdrms 4 Baths 2.5 | Total 10 Bdrms 4 Baths 2.5 | | Total 8 Bdrms 3 Baths 2.5 | | Total 9 Bdrms 4 Baths 3.5 | -4,000 |
| Room Count | | | | | | | |
| Gross Living Area | 2,777 sq. ft. | 2,823 sq. ft. | -1,600 | 2,362 sq. ft. | 14,525 | 2,647 sq. ft. | 4,550 |
| Basement & Finished | Builder: | Builder: | | Builder: | | Builder: | |
| Rooms Below Grade | Richmond Amer. | Maplewood | | Richmond Amer. | | Richmond Amer. | |
| Functional Utility | Average | Average | | Average | | Average | |
| Heating/Cooling | CH/CAC | CH/CAC | | CH/CAC | | CH/CAC | |
| Energy Efficient Items | Standard | Standard | | Standard | | Standard | |
| Garage/Carport | 2 Car Garage | 2 Car Garage | | 2 Car Garage | | 2 Car Garage | |
| Porch/Patio/Deck | Porch,Patio | Porch,Patio | | Porch,Patio | | Porch,Patio | |
| Upgrades | Upgrades | $12,000 | | $31,004 | | $34,965 | -507 |
| | | | | | | | |
| Net Adjustment (Total) | | ☒ + ☐ - $ 20,858 | | ☒ + ☐ - $ 17,979 | | ☒ + ☐ - $ 43 | |
| Adjusted Sale Price | | Net Adj. 10% % | | Net Adj. 9.0% % | | Net Adj. 0% % | |
| of Comparables | | Gross Adj. 12% % $ 219,858 | | Gross Adj. 9.0% % $ 218,473 | | Gross Adj. 5% % $ 201,238 | |

I ☒ did ☐ did not research the sale or transfer history of the subject property and comparable sales. If not, explain

My research ☐ did ☒ did not reveal any prior sales or transfers of the subject property for the three years prior to the effective date of this appraisal
Data source(s) MLS, Tax Records
My research ☐ did ☒ did not reveal any prior sales or transfers of the comparable sales for the year prior to the date of sale of the comparable sale
Data source(s) MLS, Tax Records
Report the results of the research and analysis of the prior sale or transfer history of the subject property and comparable sales (report additional prior sales on page 3).

| ITEM | SUBJECT | COMPARABLE SALE NO. 1 | COMPARABLE SALE NO. 2 | COMPARABLE SALE NO. 3 |
|---|---|---|---|---|
| Date of Prior Sale/Transfer | New Construction | New Construction | New Construction | New Construction |
| Price of Prior Sale/Transfer | N/A | N/A | N/A | N/A |
| Data Source(s) | MLS/Tax Records | MLS/Tax Records | MLS/Tax Records | MLS/Tax Records |
| Effective Date of Data Source(s) | 03/2006 | 03/2006 | 03/2006 | 03/2006 |

Analysis of prior sale or transfer history of the subject property and comparable sales   None noted

Summary of Sales Comparison Approach.   See Attached Addendum

Indicated Value by Sales Comparison Approach $ 204,000
Indicated Value by: Sales Comparison Approach $ 204,000   Cost Approach (if developed) $ Not Required   Income Approach (if developed) $ N/A
The Market Approach is considered the most reliable approach to value as it best reflects the actions of buyers and sellers in this market place. The Cost Approach is not required by Fannie Mae on this property. The Income Approach is not considered applicable since buyers typically do not purchase this type of property for its income potential
This appraisal is made ☐ "as is", ☒ subject to completion per plans and specifications on the basis of a hypothetical condition that the improvements have been completed, ☐ subject to the following repairs or alterations on the basis of a hypothetical condition that the repairs or alterations have been completed, or ☐ subject to the following required inspection based on the extraordinary assumption that the condition or deficiency does not require alteration or repair: Please see attached certifications and limiting conditions.   Value estimates subject to completion per plans and specs.
Based on a complete visual inspection of the interior and exterior areas of the subject property, defined scope of work, statement of assumptions and limiting conditions, and appraiser's certification, my (our) opinion of the market value, as defined, of the real property that is the subject of this report is $ 204,000 as of 03/02/2006, which is the date of inspection and the effective date of this appraisal.

Freddie Mac Form 70 March 2005          Page 2 of 6          Fannie Mae Form 1004 March 2005

Dyer and Associates

DYER AND ASSOCIATES

## Uniform Residential Appraisal Report

File No. 2964A

---

**COST APPROACH TO VALUE (not required by Fannie Mae)**

Provide adequate information for the lender/client to replicate the below cost figures and calculations.

Support for the opinion of site value (summary of comparable land sales or other methods for estimating site value)   Not required by Fannie Mae on this property.

| | | | | |
|---|---|---|---|---|
| ESTIMATED ☐ REPRODUCTION OR ☐ REPLACEMENT COST NEW | OPINION OF SITE VALUE | | = $ | |
| Source of cost data | Dwelling | 2,777 Sq. Ft. @ $ | = $ | 0 |
| Quality rating from cost service          Effective date of cost data | | Sq. Ft. @ $ | = $ | |
| Comments on Cost Approach (gross living area calculations, depreciation, etc.) | Garage/Carport 445 | Sq. Ft. @ $ | = $ | 0 |
| The cost approach is not required by Fannie Mae on this property. | Total Estimate of Cost-New | | = $ | 0 |
| | Less   60   Physical | Functional | External | |
| | Depreciation | 0% | 0% | = $ ( | 0) |
| | Depreciated Cost of Improvements | | = $ | 0 |
| | "As-is" Value of Site Improvements | | = $ | 0 |
| Estimated Remaining Economic Life (HUD and VA only)          60 Years | INDICATED VALUE BY COST APPROACH | | = $ Not Required | |

**INCOME APPROACH TO VALUE (not required by Fannie Mae)**

| | | | | | |
|---|---|---|---|---|---|
| Estimated Monthly Market Rent $       N/A   X Gross Rent Multiplier   N/A   = $ | | | N/A | Indicated Value by Income Approach | |

Summary of Income Approach (including support for market rent and GRM)

**PROJECT INFORMATION FOR PUDs (if applicable)**

Is the developer/builder in control of the Homeowners' Association (HOA)?   ☐ Yes ☒ No   Unit type(s)   ☒ Detached ☐ Attached

Provide the following information for PUDs ONLY if the developer/builder is in control of the HOA and the subject property is an attached dwelling unit.

Legal name of project

| | | | |
|---|---|---|---|
| Total number of phases   N/A | Total number of units | Total number of units sold | |
| Total number of units rented | Total number of units for sale | Data source(s) | |
| Was the project created by the conversion of an existing building(s) into a PUD?   ☐ Yes ☐ No   If Yes, date of conversion. | | | |
| Does the project contain any multi-dwelling units?   ☐ Yes ☐ No   Data source(s) | | | |
| Are the units, common elements, and recreation facilities complete?   ☐ Yes ☐ No   If No, describe the status of completion | | | |

Are the common elements leased to or by the Homeowners' Association?   ☐ Yes ☐ No   If Yes, describe the rental terms and options

Describe common elements and recreational facilities.

DYER AND ASSOCIATES

## Uniform Residential Appraisal Report

File No. 2964A

This report form is designed to report an appraisal of a one-unit property or a one-unit property with an accessory unit; including a unit in a planned unit development (PUD). This report form is not designed to report an appraisal of a manufactured home or a unit in a condominium or cooperative project.

This appraisal report is subject to the following scope of work, intended use, intended user, definition of market value, statement of assumptions and limiting conditions, and certifications. Modifications, additions, or deletions to the intended use, intended user, definition of market value, or assumptions and limiting conditions are not permitted. The appraiser may expand the scope of work to include any additional research or analysis necessary based on the complexity of this appraisal assignment. Modifications or deletions to the certifications are also not permitted. However, additional certifications that do not constitute material alterations to this appraisal report, such as those required by law or those related to the appraiser's continuing education or membership in an appraisal organization, are permitted.

SCOPE OF WORK: The scope of work for this appraisal is defined by the complexity of this appraisal assignment and the reporting requirements of this appraisal report form, including the following definition of market value, statement of assumptions and limiting conditions, and certifications. The appraiser must, at a minimum: (1) perform a complete visual inspection of the interior and exterior areas of the subject property, (2) inspect the neighborhood, (3) inspect each of the comparable sales from at least the street, (4) research, verify, and analyze data from reliable public and/or private sources, and (5) report his or her analysis, opinions, and conclusions in this appraisal report.

INTENDED USE: The intended use of this appraisal report is for the lender/client to evaluate the property that is the subject of this appraisal for a mortgage finance transaction.

INTENDED USER: The intended user of this appraisal report is the lender/client.

DEFINITION OF MARKET VALUE: The most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller, each acting prudently, knowledgeably and assuming the price is not affected by undue stimulus. Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby: (1) buyer and seller are typically motivated; (2) both parties are well informed or well advised, and each acting in what he or she considers his or her own best interest; (3) a reasonable time is allowed for exposure in the open market; (4) payment is made in terms of cash in U. S. dollars or in terms of financial arrangements comparable thereto; and (5) the price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions* granted by anyone associated with the sale.

*Adjustments to the comparables must be made for special or creative financing or sales concessions. No adjustments are necessary for those costs which are normally paid by sellers as a result of tradition or law in a market area; these costs are readily identifiable since the seller pays these costs in virtually all sales transactions. Special or creative financing adjustments can be made to the comparable property by comparisons to financing terms offered by a third party institutional lender that is not already involved in the property or transaction. Any adjustment should not be calculated on a mechanical dollar for dollar cost of the financing or concession but the dollar amount of any adjustment should approximate the market's reaction to the financing or concessions based on the appraiser's judgment.

STATEMENT OF ASSUMPTIONS AND LIMITING CONDITIONS: The appraiser's certification in this report is subject to the following assumptions and limiting conditions:

1. The appraiser will not be responsible for matters of a legal nature that affect either the property being appraised or the title to it, except for information that he or she became aware of during the research involved in performing this appraisal. The appraiser assumes that the title is good and marketable and will not render any opinions about the title.

2. The appraiser has provided a sketch in this appraisal report to show the approximate dimensions of the improvements. The sketch is included only to assist the reader in visualizing the property and understanding the appraiser's determination of its size.

3. The appraiser has examined the available flood maps that are provided by the Federal Emergency Management Agency (or other data sources) and has noted in this appraisal report whether any portion of the subject site is located in an identified Special Flood Hazard Area. Because the appraiser is not a surveyor, he or she makes no guarantees, express or implied, regarding this determination.

4. The appraiser will not give testimony or appear in court because he or she made an appraisal of the property in question, unless specific arrangements to do so have been made beforehand, or as otherwise required by law.

5. The appraiser has noted in this appraisal report any adverse conditions (such as needed repairs, deterioration, the presence of hazardous wastes, toxic substances, etc.) observed during the inspection of the subject property or that he or she became aware of during the research involved in performing this appraisal. Unless otherwise stated in this appraisal report, the appraiser has no knowledge of any hidden or unapparent physical deficiencies or adverse conditions of the property (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) that would make the property less valuable, and has assumed that there are no such conditions and makes no guarantees or warranties, express or implied. The appraiser will not be responsible for any such conditions that do exist or for any engineering or testing that might be required to discover whether such conditions exist. Because the appraiser is not an expert in the field of environmental hazards, this appraisal report must not be considered as an environmental assessment of the property.

6. The appraiser has based his or her appraisal report and valuation conclusion for an appraisal that is subject to satisfactory completion, repairs, or alterations on the assumption that the completion, repairs, or alterations of the subject property will be performed in a professional manner.

DYER AND ASSOCIATES

## Uniform Residential Appraisal Report

File No. 2964A

**APPRAISER'S CERTIFICATION:** The Appraiser certifies and agrees that:

1. I have, at a minimum, developed and reported this appraisal in accordance with the scope of work requirements stated in this appraisal report.

2. I performed a complete visual inspection of the interior and exterior areas of the subject property. I reported the condition of the improvements in factual, specific terms. I identified and reported the physical deficiencies that could affect the livability, soundness, or structural integrity of the property.

3. I performed this appraisal in accordance with the requirements of the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

4. I developed my opinion of the market value of the real property that is the subject of this report based on the sales comparison approach to value. I have adequate comparable market data to develop a reliable sales comparison approach for this appraisal assignment. I further certify that I considered the cost and income approaches to value but did not develop them, unless otherwise indicated in this report.

5. I researched, verified, analyzed, and reported on any current agreement for sale for the subject property, any offering for sale of the subject property in the twelve months prior to the effective date of this appraisal, and the prior sales of the subject property for a minimum of three years prior to the effective date of this appraisal, unless otherwise indicated in this report.

6. I researched, verified, analyzed, and reported on the prior sales of the comparable sales for a minimum of one year prior to the date of sale of the comparable sale, unless otherwise indicated in this report.

7. I selected and used comparable sales that are locationally, physically, and functionally the most similar to the subject property.

8. I have not used comparable sales that were the result of combining a land sale with the contract purchase price of a home that has been built or will be built on the land.

9. I have reported adjustments to the comparable sales that reflect the market's reaction to the differences between the subject property and the comparable sales.

10. I verified, from a disinterested source, all information in this report that was provided by parties who have a financial interest in the sale or financing of the subject property.

11. I have knowledge and experience in appraising this type of property in this market area.

12. I am aware of, and have access to, the necessary and appropriate public and private data sources, such as multiple listing services, tax assessment records, public land records and other such data sources for the area in which the property is located.

13. I obtained the information, estimates, and opinions furnished by other parties and expressed in this appraisal report from reliable sources that I believe to be true and correct.

14. I have taken into consideration the factors that have an impact on value with respect to the subject neighborhood, subject property, and the proximity of the subject property to adverse influences in the development of my opinion of market value. I have noted in this appraisal report any adverse conditions (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) observed during the inspection of the subject property or that I became aware of during the research involved in performing this appraisal. I have considered these adverse conditions in my analysis of the property value, and have reported on the effect of the conditions on the value and marketability of the subject property.

15. I have not knowingly withheld any significant information from this appraisal report and, to the best of my knowledge, all statements and information in this appraisal report are true and correct.

16. I stated in this appraisal report my own personal, unbiased, and professional analysis, opinions, and conclusions, which are subject only to the assumptions and limiting conditions in this appraisal report.

17. I have no present or prospective interest in the property that is the subject of this report, and I have no present or prospective personal interest or bias with respect to the participants in the transaction. I did not base, either partially or completely, my analysis and/or opinion of market value in this appraisal report on the race, color, religion, sex, age, marital status, handicap, familial status, or national origin of either the prospective owners or occupants of the subject property or of the present owners or occupants of the properties in the vicinity of the subject property or on any other basis prohibited by law.

18. My employment and/or compensation for performing this appraisal or any future or anticipated appraisals was not conditioned on any agreement or understanding, written or otherwise, that I would report (or present analysis supporting) a predetermined specific value, a predetermined minimum value, a range or direction in value, a value that favors the cause of any party, or the attainment of a specific result or occurrence of a specific subsequent event (such as approval of a pending mortgage loan application).

19. I personally prepared all conclusions and opinions about the real estate that were set forth in this appraisal report. If I relied on significant real property appraisal assistance from any individual or individuals in the performance of this appraisal or the preparation of this appraisal report, I have named such individual(s) and disclosed the specific tasks performed in this appraisal report. I certify that any individual so named is qualified to perform the tasks. I have not authorized anyone to make a change to any item in this appraisal report; therefore, any change made to this appraisal is unauthorized and I will take no responsibility for it.

20. I identified the lender/client in this appraisal report who is the individual, organization, or agent for the organization that ordered and will receive this appraisal report.



1306 SO. HWY. 3
LEAGUE CITY, TX 77573
281-332-9555  1-800-443-3992
(FAX) 281-332-9558

ALPHABETICAL
SERVICE
**WEEKS**
Since COMPANY 1972
TACL A8976C

1502

INVOICE #126080

TO: Arm Strong
4116 Sand Stone Croek Ln
Dickinson Tx

DELIVERED:

BRAND LAIKes   COND Ⓒ Ⓖ Ⓕ Ⓟ Ⓘ   TYPE ⬭   /PRESSURES ⬭
MODEL GJJP HP 30T/A1AA BA V   SERIAL NO. 4007X26607
COMPLAINT A/ AC upstairs
SERVICE ENGINEER'S REPORT
1) Inspected Twin System out of area. Not Performed, Leak Search
on Condenser unit and Evaporator Coil. Twin Evaporator Coil leaking Freon

RECOMMENDATIONS
Sold

| CK # | | QUAN. | | | | DESCRIPTION OF MATERIAL | | EACH | TOTAL |
|---|---|---|---|---|---|---|---|---|---|
| CASH | 1 | NEW FREON | 12 | 22 | 502 | OTHER | | | |
| CHARGE | 2 | RECLAIMED FREON | 12 | 22 | 502 | | | | |
| CREDIT MEMO | 3 | | | | | | | | |
| VISA/MC | 5 | | | | | | | | |
| AMEX | 6 | | | | | | | | |
| DISCOVER | 7 | | | | | | | | |
| SALE | 1 | | | | | | | | |
| PARTS | 4 | | | | | | | | |
| SERVICE | 5 | | | | | | | | |
| NO BILL | 4 | | | | | | | | |
| WARRANTY | 6 | | | | | | | | |
| DID ESA | 4 | | | | | | | | |
| COMMERCIAL | 1 | | | | | | | | |
| RESIDENTIAL | 2 | | | | | | | | |
| UNIT | | | | | R. Carrier coil installed 5/15/2008 | | | | |
| CAUSE | | | | | | | | | |
| DEPT/FIX | | | | | | | | | |

| | RECLAIM EQPT. | |
|---|---|---|
| ☐ NEED PARTS   ☒ COMPLETE | WELDING SUPPLIES | |
| ☐ EQPT. NEEDS TO BE REPLACED   ☐ INCOMPLETE | VACUUM PUMP & OIL | |
| ☐ NEEDS QUOTATION | ENVIRONMENTAL FEE | 3.60 |
| ☐ FOLLOW-UP PRIORITY | MATERIAL SUB TOTAL | |
| ☐ ASAP-UNIT NOT RUNNING   ☐ 2-3 DAY UNIT RUNNING | ESA DISCOUNT | — |

ARRIVED
DATE 5.05   HOUR 5:05

DEPARTED
DATE 5.35   HOUR 5:35

SERVICE CHARGE @ $ _____ PER CALL _____
LABOR _____ HOURS @ $ _____ PER HOUR _____
HELPER _____ HOURS @ $ _____ PER HOUR _____
TOTAL LABOR   $ _____
ESA DISCOUNT   $ _____
NET LABOR   $ _____
OTHER   $ _____

| | |
|---|---|
| MATERIAL | |
| OTHER | |
| LABOR | |
| SUB TOTAL | |
| TEXAS TAX | |
| CITY TAX | |
| MTA TAX | |
| **TOTAL** | |

TERMS: CASH WHEN WORK IS COMPLETED. THE MATERIAL DELIVERED UNDER THIS ORDER SHALL NOT BE DEEMED A FIXTURE, BUT SHALL REMAIN THE PROPERTY OF AND SUBJECT TO
REMOVAL BY WEEKS SERVICE COMPANY UNTIL FULLY PAID FOR. LIMITED WARRANTY AND OTHER INFORMATION ON BACK OF THIS SHEET.

X: _____   DATE 3/10/   X: _____
SERVICE ENGINEER                        CUSTOMER



1306 SO. HWY. 3
LEAGUE CITY, TX 77573
281-332-9555  1-800-443-3992
(FAX) 281-332-9558

ALPHABETICAL
SERVICE
**WEEKS**
*Since 1872*
COMPANY
TACL A9976C

INVOICE # 099829

TO: Armstrong
    418 Sandstone Creek
    Dickinson

DELIVERED: _____

| BRAND | | COND Ⓔ Ⓖ Ⓕ Ⓟ Ⓤ | TYPE | /PRESSURES |
| MODEL | | | SERIAL NO. | |
| COMPLAINT | | | | |

SERVICE ENGINEER'S REPORT: Install new evaporator coil with new filter Drier.

**RECOMMENDATIONS**

PAID APR 11 2008

| CK # | | QUAN. | DESCRIPTION OF MATERIAL | | | | | EACH | TOTAL |
|------|--|-------|-------------------------|--|--|--|--|------|-------|
| CASH | 1 | 2 | NEW FREON 12  22  502  OTHER  4/0A | | | | | 037279 8Fe410.4 | |
| CHARGE | 2 | | RECLAIMED FREON 12  22  502 | | | | | | |
| CREDIT MEMO | 3 | | | | | | | | |
| VISA/MC | 5 | 1 | CNPHP422IATA / CNPHP472.IATAABAA | | | | | | |
| AMEX | 6 | | | | | | | | |
| DISCOVER | 7 | 1 | 03137 9310L C0835 | | | | | | |
| SALE | 1 | | | | | | | AMB 88 | |
| PARTS | 4 | | SN-4307X 23760 | | | | | SH 10 | |
| SERVICE | 5 | | | | | | | SC 9 | |
| NO BILL | 4 | | | | | | | | |
| WARRANTY | 1 | | Ao# 025592 | | | | | | |
| DID ESA | 4 | | | | | | | | |
| COMMERCIAL | 1 | | | | | | | | |
| RESIDENTIAL | 2 | | | | | | | | |
| UNIT OK | | | | | | | | | |
| CAUSE | | | | | | | | | |
| DEPT/FIX | | | | | | | | | |

☐ NEED PARTS
☐ EQPT. NEEDS TO BE REPLACED
☐ NEEDS QUOTATION
☐ FOLLOW-UP PRIORITY
☐ ASAP-UNIT NOT RUNNING

☐ COMPLETE
☐ INCOMPLETE
☐ 2-3 DAY UNIT RUNNING

| ARRIVED | |
|---------|--|
| DATE | HOUR |

| DEPARTED | |
|----------|--|
| DATE | HOUR |

| RECLAIM EQPT. | |
|---------------|--|
| WELDING SUPPLIES | |
| VACUUM PUMP & OIL | |
| ENVIRONMENTAL FEE | 3.50 |
| MATERIAL SUB TOTAL | |
| ESA DISCOUNT | — |

SERVICE CHARGE @ $ _____ PER CALL _____
LABOR _____ HOURS @ $ _____ PER HOUR _____
HELPER _____ HOURS @ $ _____ PER HOUR _____
TOTAL LABOR        $ _____
ESA DISCOUNT       $ _____
NET LABOR          $ _____
OTHER              $ _____

| MATERIAL | |
|----------|--|
| OTHER | |
| LABOR | |
| SUB TOTAL | |
| TEXAS TAX | |
| CITY TAX | |
| MTA TAX | |
| TOTAL | 440.00 |

TERMS: CASH WHEN WORK IS COMPLETED. THE MATERIAL DELIVERED UNDER THIS ORDER SHALL NOT BE DEEMED A FIXTURE, BUT SHALL REMAIN THE PROPERTY OF AND SUBJECT TO REMOVAL BY WEEKS SERVICE COMPANY UNTIL FULLY PAID FOR. LIMITED WARRANTY AND OTHER INFORMATION ON BACK OF THIS SHEET.

X: _____  SERVICE ENGINEER     4/4/08 DATE     X: _____  CUSTOMER



1306 SO. HWY. 3
LEAGUE CITY, TX 77573
281-332-9555  1-800-443-3992
(FAX) 281-332-9558

ALPHABETICAL
SERVICE
**WEEKS**
COMPANY *Since 1972*
TACL A9976C

**INVOICE #133324**

TO: _Armstrong_
_118 Parkstone Creek Dr_

DELIVERED: _____

BRAND _Carrier_  COND Ⓔ Ⓒ Ⓕ Ⓟ Ⓣ  TYPE _Cond/sys_  /PRESSURES _190/310_
MODEL _50TFQ12A300_  SERIAL NO. _1306213157_
COMPLAINT _Check Charge on unit_
SERVICE ENGINEER'S REPORT _Checked Refrigerant Charge on system found_
_Amps to Carrier pressures, Super 9 + Sub R_
_Eight 35k of idea Freon_

**RECOMMENDATIONS**

| CK # | QUAN. | DESCRIPTION OF MATERIAL | | | | | EACH | TOTAL |
|---|---|---|---|---|---|---|---|---|
| CASH | 1 | NEW FREON | 12 | 22 | 502 | OTHER | | |
| CHARGE | 2 | RECLAIMED FREON | 12 | 22 | 502 | | | |
| CREDIT MEMO | 3 | | | | | | | |
| VISA/MC | 5 | | | | | | | |
| MEX | 6 | | | | | | | |
| DISCOVER | 7 | | | | | | | |
| SALE | 1 | | | | | | | |
| PARTS | 4 | | | | | | | |
| SERVICE | 5 | | | | | | | |
| NO BILL | 4 | | | | | | | |
| WARRANTY | 1 | | | | | | | |
| DID ESA | 4 | | | | | | | |
| COMMERCIAL | 1 | | | | | | | |
| RESIDENTIAL | 2 | | | | | | | |
| UNIT | | | | | | | | |
| CAUSE | | | | | | | | |
| DEPT/FIX | | | | | | | | |

☐ NEED PARTS   ☒ COMPLETE
☐ EQPT. NEEDS TO BE REPLACED   ☐ INCOMPLETE
☐ NEEDS QUOTATION
☐ FOLLOW-UP PRIORITY
☐ ASAP-UNIT NOT RUNNING   ☐ 2-3 DAY UNIT RUNNING

**ARRIVED** DATE _5/29_ HOUR _1:18_
**DEPARTED** DATE _5/29_ HOUR _1:53_

| RECLAIM EQPT. | |
| WELDING SUPPLIES | |
| VACUUM PUMP & OIL | |
| ENVIRONMENTAL FEE | 3.50 |
| MATERIAL SUB TOTAL | |
| ESA DISCOUNT | — |

SERVICE CHARGE @ $ _____ PER CALL _____
LABOR _____ HOURS @ $ _____ PER HOUR _____
HELPER _____ HOURS @ $ _____ PER HOUR _____
TOTAL LABOR  $ _____
ESA DISCOUNT  $ — _____
NET LABOR  $ _____
OTHER  $ _____

| MATERIAL | |
| OTHER | |
| LABOR | |
| SUB TOTAL | |
| TEXAS TAX | |
| CITY TAX | |
| MTA TAX | |
| TOTAL | |

TERMS: CASH WHEN WORK IS COMPLETED. THE MATERIAL DELIVERED UNDER THIS ORDER SHALL NOT BE DEEMED A FIXTURE, BUT SHALL REMAIN THE PROPERTY OF AND SUBJECT TO REMOVAL BY WEEKS SERVICE COMPANY UNTIL FULLY PAID FOR. LIMITED WARRANTY AND OTHER INFORMATION ON BACK OF THIS SHEET.

X: _Matthew Vallion_  _5/29/09_   X: _____
SERVICE ENGINEER   DATE   CUSTOMER



**WEEKS SERVICE COMPANY**
1306 SO. HWY. 3
LEAGUE CITY, TX 77573
281-332-9555  1-800-443-3992
(FAX) 281-332-9558
TACL A9976C

**INVOICE # 102214**

TO: Armstrong

DELIVERED: _____

BRAND _____  COND [E][C][F][P][J]  TYPE _____  /PRESSURES 125 / 215
MODEL _____  SERIAL NO. _____
COMPLAINT _____

SERVICE ENGINEER'S REPORT _____

RECOMMENDATIONS: Sold

| CK # 1033 | QUAN. | DESCRIPTION OF MATERIAL | | | | | EACH | TOTAL |
|---|---|---|---|---|---|---|---|---|
| CASH | 1 | NEW FREON | 12 | 22 | 502 | OTHER | | |
| CHARGE | 2 | RECLAIMED FREON | 12 | 22 | 502 | | | |
| CREDIT MEMO | 3 | | | | | | | |
| VISA/MC | 5 | 4 | 0325367 (R-410A) | | | | 38.00 | 152.00 |
| AMEX | 6 | | | | | | | |
| DISCOVER | 7 | | | | | | | |
| SALE | 1 | | | | | | | |
| PARTS | 4 | | | | | | | |
| SERVICE | 5 | | | | | | | |
| NO BILL | 4 | | | | | | | |
| WARRANTY | 1 | | | | | | | |
| DID ESA | 4 | | | | | | | |
| COMMERCIAL | 1 | | | | | | | |
| RESIDENTIAL | 2 | | | | | | | |
| UNIT | | | | | | | | |
| CAUSE | | | | | | | | |
| DEPT.FIX | | | | | | | | |

[ ] NEED PARTS   [X] COMPLETE
[ ] EQPT. NEEDS TO BE REPLACED   [ ] INCOMPLETE
[ ] NEEDS QUOTATION
[ ] FOLLOW-UP PRIORITY
[ ] ASAP-UNIT NOT RUNNING   [ ] 2-3 DAY UNIT RUNNING

ARRIVED DATE ____ HOUR 5:15
DEPARTED DATE ____ HOUR 5:45

RECLAIM EQPT.
WELDING SUPPLIES
VACUUM PUMP & OIL
ENVIRONMENTAL FEE   3.50
MATERIAL SUB TOTAL   152.00
ESA DISCOUNT   —

MATERIAL   152.00
OTHER
LABOR   67.50
SUB TOTAL
TEXAS TAX
CITY TAX
MTA TAX
TOTAL   248.28

SERVICE CHARGE @ $ ____ PER CALL
LABOR ____ HOURS @ $ ____ PER HOUR
HELPER ____ HOURS @ $ ____ PER HOUR
TOTAL LABOR   $ ____
ESA DISCOUNT   $ —
NET LABOR   $ ____
OTHER   $ ____

TERMS: CASH WHEN WORK IS COMPLETED. THE MATERIAL DELIVERED UNDER THIS ORDER SHALL NOT BE DEEMED A FIXTURE, BUT SHALL REMAIN THE PROPERTY OF AND SUBJECT TO REMOVAL BY WEEKS SERVICE COMPANY UNTIL FULLY PAID FOR. LIMITED WARRANTY AND OTHER INFORMATION ON BACK OF THIS SHEET.

X: ____ SERVICE ENGINEER   DATE 5/31/11   X: ____ CUSTOMER



**WEEKS COMPANY**
Since 1972
TACL A9976C

1306 SO. HWY. 3
LEAGUE CITY, TX 77573
281-332-9555  1-800-443-3992
(FAX) 281-332-9558

ALPHABETICAL SERVICE

INVOICE #085321

TO: _Armstrong_
_118 Whitstone Creek Ln_
_Dickinson_ _TX_

DELIVERED: _Signatures Pools_
_Del'd St 4.5' 78_
_511 219 5678_

BRAND _Rheem_   COND E G F P U   TYPE _TD_   /PRESSURES _75/365_
MODEL _RR1BA-042JAZ300_   SERIAL NO. _7306S 1305_

COMPLAINT _No A/C Upstairs_

SERVICE ENGINEER'S REPORT _Dirty coil low freon Recharge system_
_checks for freon leaks no leaks found. Checked compressor amps, crankcase_
_fan motor amps, capacitors, contactor_

**RECOMMENDATIONS**

| CK # 1026 | QUAN. | DESCRIPTION OF MATERIAL | | | | | | EACH | TOTAL |
|---|---|---|---|---|---|---|---|---|---|
| CASH | 1 | 5 | NEW FREON | 12 | 22 | 502 | OTHER 410A  005724BFR410A | 38.00 | 150.00 |
| CHARGE | 2 | | RECLAIMED FREON | 12 | 22 | 502 | | | |
| CREDIT MEMO | 3 | | | | | | | | |
| VISA/MC | 5 | | | | | | | | |
| AMEX | 6 | | | | | | | | |
| DISCOVER | 7 | | | | | | | | |
| SALE | 1 | | | | | | | | |
| PARTS | 4 | | | | | | | | |
| SERVICE | 5 | | | | | | | | |
| NO BILL | 4 | | | | | | | | |
| WARRANTY | 1 | | | | | | | | |
| DID ESA | 4 | | | | | | | | |
| COMMERCIAL | 1 | | | | | | | | |
| RESIDENTIAL | 2 | | | | | | | | |
| UNIT | | | | | | | | | |
| CAUSE | | | | | | | | | |
| DEPT/FIX | | | | | | | | | |

| | | |
|---|---|---|
| ☐ NEED PARTS | ☑ COMPLETE | |
| ☐ EQPT. NEEDS TO BE REPLACED | ☐ INCOMPLETE | |
| ☐ NEEDS QUOTATION | | |
| ☐ FOLLOW-UP PRIORITY | | |
| ☐ ASAP-UNIT NOT RUNNING | ☐ 2-3 DAY UNIT RUNNING | |

ARRIVED  DATE _____ HOUR _8:10_
DEPARTED  DATE _____ HOUR _3:55_

| RECLAIM EQPT. | |
|---|---|
| WELDING SUPPLIES | |
| VACUUM PUMP & OIL | |
| ENVIRONMENTAL FEE | 3.50 |
| MATERIAL SUB TOTAL | 193.80 |
| ESA DISCOUNT | — |

SERVICE CHARGE @ $ _____ PER CALL _89.50_
LABOR _1.5_ HOURS @ $ _80.00_ PER HOUR _81.50_
HELPER _____ HOURS @ $ _____ PER HOUR
TOTAL LABOR $ _106.00_
ESA DISCOUNT $ —
NET LABOR $ _106.00_
OTHER $ _____

| MATERIAL | 193.50 |
|---|---|
| OTHER | |
| LABOR | 106.00 |
| SUB TOTAL | |
| TEXAS TAX | 14.99 |
| CITY TAX | 3.50 |
| MTA TAX | |
| **TOTAL** | **314.49** |

TERMS: CASH WHEN WORK IS COMPLETED. THE MATERIAL DELIVERED UNDER THIS ORDER SHALL NOT BE DEEMED A FIXTURE, BUT SHALL REMAIN THE PROPERTY OF AND SUBJECT TO REMOVAL BY WEEKS SERVICE COMPANY UNTIL FULLY PAID FOR. LIMITED WARRANTY AND OTHER INFORMATION ON BACK OF THIS SHEET.

X: _Travis Oberholtzer_   SERVICE ENGINEER   DATE _8-18-07_
X: _Michael Armstrong_   CUSTOMER

1306 SO. HWY. 3
LEAGUE CITY, TX 77573
281-332-9555 1-800-443-3992
(FAX) 281-332-9558



ALPHABETICAL
SERVICE
WEEKS
Since COMPANY 1972
TACL A9976C

INVOICE #087815

TO: _ARMSTRONG_
_918 SANDSTONE CREEK_                  DELIVERED: _____

BRAND _CARRIER_            COND Ⓔ Ⓒ Ⓕ Ⓟ Ⓘ      TYPE _EVAPORATER_ /PRESSURES
MODEL _CK3BXA03007 AAAA_              SERIAL NO. _3605850063_
COMPLAINT _NOT COOLING_
SERVICE ENGINEER'S REPORT _EVAPORATER LEAKING R410A, BOTTOM ROW 15.1cft_
_of coil, needs WARRANTY coil_

RECOMMENDATIONS _No proposal_

| CK # | | QUAN. | DESCRIPTION OF MATERIAL | | | | | EACH | TOTAL |
|---|---|---|---|---|---|---|---|---|---|
| CASH | 1 | | NEW FREON | 12 | 22 | 502 | OTHER | | |
| CHARGE | 2 | | RECLAIMED FREON | 12 | 22 | 502 | | | |
| CREDIT MEMO | 3 | | | | | | | | |
| VISA/MC | 5 | | | | | | | | |
| AMEX | 6 | | | | | | | | |
| DISCOVER | 7 | | | | | | | | |
| SALE | 1 | | | | | | | | |
| PARTS | 4 | | | | | | | | |
| SERVICE | 5 | | | | | | | | |
| NO BILL | 4 | | | | | | | | |
| WARRANTY | 1 | | | | | | | | |
| DID ESA | 4 | | | | | | | | |
| COMMERCIAL | 1 | | | | | | | | |
| RESIDENTIAL | 2 | | | | | | | | |
| UNIT | | | | | | | | | |
| CAUSE | | | R NEO add Freon 8/13/07 | | | | | | |
| DEPT/FIX | | | | | | | | | |

☐ NEED PARTS               ☒ COMPLETE
☒ EQPT. NEEDS TO BE REPLACED   ☐ INCOMPLETE
☐ NEEDS QUOTATION
☐ FOLLOW-UP PRIORITY
☐ ASAP-UNIT NOT RUNNING      ☐ 2-3 DAY UNIT RUNNING

ARRIVED
DATE | HOUR
600

DEPARTED
DATE | HOUR
715

| RECLAIM EQPT. | | |
|---|---|---|
| WELDING SUPPLIES | | |
| VACUUM PUMP & OIL | | |
| ENVIRONMENTAL FEE | | 3.50 |
| MATERIAL SUB TOTAL | | |
| ESA DISCOUNT | | — |

SERVICE CHARGE @ $ _____ PER CALL _____
LABOR _____ HOURS @ $ _____ PER HOUR _____
HELPER _____ HOURS @ $ _____ PER HOUR _____
TOTAL LABOR        $ _____
ESA DISCOUNT       $ — _____
NET LABOR          $ _____
OTHER              $ _____

| MATERIAL | |
|---|---|
| OTHER | |
| LABOR | |
| SUB TOTAL | |
| TEXAS TAX | |
| CITY TAX | |
| MTA TAX | |
| TOTAL | |

TERMS: CASH WHEN WORK IS COMPLETED. THE MATERIAL DELIVERED UNDER THIS ORDER SHALL NOT BE DEEMED A FIXTURE, BUT SHALL REMAIN THE PROPERTY OF AND SUBJECT TO REMOVAL BY WEEKS SERVICE COMPANY UNTIL FULLY PAID FOR. LIMITED WARRANTY AND OTHER INFORMATION ON BACK OF THIS SHEET.

X: _DAVID WILSON 449_    _8-11-07_    X: _____
   SERVICE ENGINEER          DATE          CUSTOMER

# Exhibit 2

# Exhibit 3











# Exhibit 4

# Exhibit 5

# Exhibit 6

# Exhibit 7

# Exhibit 8

# Exhibit 9

# Exhibit 10

# Exhibit 11

# Exhibit 12

# Exhibit 13

# Exhibit 14

# Plaintiff Fact Sheet

Plaintiff: _Toshonia Jackson (Armstrong)_

Property Address: _418 Sandstone Creek Lane_
_Dickinson, TX 77539_

## Question #18 Itemization (Personal Property Damage)

| # | Description of Damaged Item | Value ($) |
|---|---|---|
| 1 | See misc. expenses attachment | |
| 2 | | |
| 3 | | |
| 4 | | |
| 5 | | |
| 6 | | |
| 7 | | |
| 8 | | |
| 9 | | |
| 10 | | |
| 11 | | |
| 12 | | |
| 13 | | |
| 14 | | |
| 15 | | |
| 16 | | |

| Item No. | Item Description | Cost |
|---|---|---|
| 1 | VIZIO FLATSCREEN 42" X2 | $1,750.00 |
| 2 | WESTINGHOUSE FLAT SCREEN (GARAGE) X2 | $1,100.00 |
| 3 | KENMORE DEEP FREEZER | $600.00 |
| 4 | CISCO ROUTER (WRT310N) | $150.00 |
| 5 | LINKSYS BROADBAND ROUTER (WRT54G) | $110.00 |
| 6 | DELL XPS LAPTOP | $1,700.00 |
| 7 | BROTHERS PRINTER/FAX/SCANNER MFC-240C | $250.00 |
| 8 | STAR FURNITURE BLU CLOTH CHAIR/OTTOMAN | $1,200.00 |
| 9 | ZGALLERIE LIGHT BLUE DBL PANEL 96 IN DRAPES-6 | $1,200.00 |
| 10 | MOTOROLA RAZOR | $199.00 |
| 11 | BLACKBERRY Pearl | $199.00 |
| 12 | BLACKBERRY STORM | $799.98 |
| 13 | BLACKBERRY CURVE | $499.99 |
| 14 | BLACKBERRY STORM 2 | $399.99 |
| 15 | SENSEO COFFEE MAKER | $129.98 |
| 16 | JC PENNEY 96 IN DBL PANEL DRAPES-6 | $419.94 |
| 17 | SONY CAMCORDER HANDYCAM | $550.00 |
| 18 | SONY CAMCORDER | $500.00 |
| 19 | SONY STERO SYSTEM | $1,300.00 |
| 20 | ADT WIRELESS HOME ALARM SYSTEM REPLACEMENT AND RE-INSTALL | $2,300.00 |
| 21 | DIGITAL CAMERAS | $600.00 |
| 22 | GE CORDLESS PHONE SET | $125.00 |
| 23 | BISSELL STEAMER | $286.00 |
| 24 | BISSEL VACUUM CLEANER | $150.00 |
| 25 | BISSELL FEATHERLITE VACUUM CLEANER | $80.00 |
| 26 | CARRIER AIR UNIT REPAIRS | $7,040.00 |
| 27 | GE REFRIGERATOR REPAIRS | $250.00 |
| 28 | MOVING | $4,809.00 |
| 29 | RENT/DEPOSIT | $21,600.00 |
| 30 | DOOR LOCKS CHANGED | $600.00 |
| 31 | SHELVING REPLACEMENT | $700.00 |
| 32 | UTILITIES TRANSFER/RE-TRANSFER FEES | $1,500.00 |
| 33 | LOSS OF USE | $96,000.00 |
| 34 | MORTGAGE/INSURANCE | $24,000.00 |
| 35 | LAWN MAITENANCE | $1,300.00 |
| 36 | PET BOARDING | $5,400.00 |
| 37 | DRY CLEANING (DRAPES,SOFA,OTTOMAN) | $3,500.00 |
| 38 | GROCERIES | $14,400.00 |
| 39 | TIME OFF WORK TO MEET REPAIR TECHS | $5,000.00 |
| 40 | GARAGE DOOR REPAIRS X3 | $643.00 |
| 41 | RENTERS INSURANCE | $1,800.00 |
| 42 | STORAGE | $1,920.00 |
| 43 | ALARM SYSTEM WTH SRVC | $850.00 |
| 44 | CHRISTMAS DECORATIONS | $750.00 |
| 45 | MASTERBDRM RESTONIC MATTRESS | $450.00 |
| 46 | CHILD SEALY MATTRESS | $1,200.00 |

| | | | | |
|---|---|---|---:|---|
| 47 | DRYCLEANING OF ADULTS CLOTHING/CHILDREN'S | | $1,500.00 | |
| 48 | JC PENNEY 96 IN DBL PANEL DRAPES BONUS RM X4 | | $250.00 | |
| 49 | KIDS RM DRAPES 96 IN-4 | | $375.00 | |
| 50 | BED BATH&BEYOND MSTRBDRM RUGS,TOWELS DÉCOR | | $300.00 | |
| 51 | BED BATH&BEYOND UPSTRS BTHRM RUGS,TOWEL DÉCOR | | $300.00 | |
| 52 | BED BATH &BEYOND 1/2 BTH DÉCOR TOWELS/RUG | | $300.00 | |
| 53 | PETSMART FISH TANK/PUMP | | $120.00 | |
| 54 | VIZIO FLATSCREENS X3 55" | | $4,950.00 | 1650 |
| 55 | Window A/C Units | | $4,100.00 | replaceme |
| 56 | Demolision | | $45,000.00 | |
| 57 | Restoration | | $90,000.00 | |
| 58 | Appliances ( | | $50,000.00 | |
| 59 | Dumpster Rental | | $1,440.00 | |
| 60 | Demo/Building Permits | | $5,000.00 | |
| 61 | HVAC | | $12,000.00 | |
| 62 | Samsung washer/dryer | | $2,900.00 | replaceme |
| 63 | Frigidaire stainless steel refrigerator | | $1,700.00 | replaceme |
| 64 | Weeks A/C Heating 2009 Repairs | $ | 1,502.00 | |
| 65 | Angel's A/C Repair 2018 | $ | 2,200.00 | |
| 66 | | | | |
| 67 | | | | |
| 68 | | | | |

## Total                             $434,247.88

nt

nt
nt

165.9335