UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In Re: **CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION** | **MDL 2047** |
| | **SECTION "L"** |
| **This document relates to:** *Elizabeth Bennett, et al v. Gebr. Knauf Verwaltungsgesellschaft, KG, et al* **Case No. 14-cv-2722** | **JUDGE ELDON FALLON** **MAGISTRATE JOSEPH WILKINSON, JR.** |

## STATEMENT OF UNCONTESTED MATERIAL FACTS

**NOW INTO COURT**, through undersigned counsel, come defendants, Knauf Gips KG and Knauf Plasterboard (Tianjin) Co., Ltd. (the "Knauf Defendants"), who submits this Statement of Uncontested Material Facts in support of its Motion for Summary Judgment on the claims asserted by Toshonia Jackson Armstrong and Martin Armstrong:

1. On June 16, 2009, this Court entered PTO 1 regarding preservation of evidence, amongst other things.

2. On October 9, 2009, this Court entered PTO 1(B) regarding preservation of evidence.

3. On January 24, 2012, this Court entered PTO 1(I) regarding preservation of evidence.

4. The original Bennett Complaint was filed on November 13, 2014 in the Northern District of Alabama and was subsequently transferred and consolidated into MDL 2047.

5. The Complaint was amended multiple times to amend the parties and claims.

6. The Fifth Amended Complaint was filed on May 14, 2018.

7. Following the Fifth Amended Complaint, certain plaintiffs intervened.

8. The Fifth Amended Complaint is the operative complaint in this matter.

9. Plaintiffs Toshonia Jackson Armstrong and Martin Armstrong (the "Armstrongs") are plaintiffs in the operative Fifth Amended Complaint and have made claims against Knauf Gips KG and KPT regarding the alleged presence defective Chinese drywall installed in the property located at 418 Sandstone Creek Lane, Dickinson, Texas 77539 (the "Property").

10. In conducting discovery in this MDL and in Bennett, this Court approved a Plaintiff Profile Form, Supplemental Plaintiff Profile Form, and Plaintiff Fact Sheet to be completed by Plaintiffs and set forth full and complete answers regarding the claims and damage amounts sought by all Bennett Plaintiffs.

11. The Armstrongs completed and submitted a PPF, SPPF, and PFS.

12. The documents were completed under penalty of perjury. See Exhibits A (PPF), B (SPPF), and C (PFS).

13. The Armstrongs bought the Property on May 1, 2006, *see* Exhibit C, PFS, at 1, which was approximately four months after the Armstrongs believed Chinese Drywall was installed in the Property, *see* Exhibit B, SPPF, at 2.

14. Long before the Armstrongs filed their claims in this action in 2016, the Armstrongs were contacted by, and involved in a class action against, the builders of the Property concerning the presence of Chinese Drywall in their home. *See, e.g.*,

Exhibit D, Deposition of Toshonia Jackson Armstrong [hereinafter Armstrong Depo.] at 17:13-21, 18:7-21; 29:20-30:1.

15. Although Mrs. Armstrong originally testified that she was contacted in late 2013 or early 2014, *see id.* at 30:2-4, she subsequently testified that she recognized a letter dated June 19, 2012 from the Property's homebuilder raising the issue of Chinese Drywall and making express reference to an offer in August 2011 to remove the Chinese Drywall from the Property. *See id.* at 71:19-72:24; *see also* Exhibit 5 to Exhibit D, Armstrong Depo.

16. Mrs. Armstrong further testified that she and her husband received the letter and that her husband rejected the offer contained in the letter. *See* Exhibit D, Armstrong Depo., at 74:5-19.

17. Notwithstanding Mrs. Armstrong's previous confusion concerning whether she was contacted in late 2013 or early 2014,[1] the 2012 letter from the Armstrongs' homebuilder expressly reflects that the Armstrongs knew of the presence of Chinese Drywall as of August 2011—and that they did not file their claims against the Knauf Defendants until more than four years later, in January 2016.

18. As to their damages claims, Mrs. Armstrong testified that she and her husband prepared the itemized list together, with Mrs. Armstrong "go[ing] through each room in the home and just read[ing] off to him as he typed the information into a spreadsheet." *See id.* at 44:17-45:5.

---

[1] The itemized list that the Armstrongs submitted in the earlier case was uploaded in August of 2013, meaning the initial contact simply could not have been in 2014 as Mrs. Armstrong speculated. *See, e.g., id.* at 54:21-55:6.

3

19. Certain items on the list admittedly had not been incurred, but were instead "expectations" of amounts that would be incurred in the event the home was remediated. *See id.* at 54:1-55:13.

20. Those items of speculative damages that admittedly were never incurred are:

| Item No. from Itemization | Description from Itemization | Cost from Itemization |
|---|---|---|
| 28 | Moving | $4,809 |
| 29 | Rent/Deposit | $21,600 |
| 30 | Door Locks Changed | $600 |
| 32 | Utilities Transfer/Re-Transfer Fees | $1,500 |
| 33 | Loss of Use | $96,000 |
| 34 | Mortgage/Insurance | $24,000 |
| 35 | Lawn Maitenance [sic] | $1,300.00 |
| 36 | Pet Boarding | $5,400 |
| 39 | Time off Work to Meet Repair Techs | $5,000 |
| 41 | Renters Insurance | $1,800 |
| 42 | Storage | $1,920 |
| 56 | Demolision [sic] | $45,000 |
| 57 | Restoration | $50,000 |
| 59 | Dumpster Rental | $1,440 |
| 60 | Demo/Building Permits | $5,000 |
| 61 | HVAC | $12,000 |
| Total | | $277,369 |

*Compare id.* at 54:1-55:13 *with* Exhibit 14 to Exhibit C, PFS (Itemization); *see also* Exhibit D, Armstrong Depo., at 47:19-23 ("On this, as far as the moving and the rent and deposit, that's not – that's like, things for remediation, which we haven't – we haven't done any of that, but when we put this together, that's what we were looking at."); *id.* at 52:5-17 ("And, like I stated earlier, and I'll repeat, a lot of this was based on – like, you'll see, like I was stating, like, loss of use, lawn maintenance, pet boarding, the things I did not include, when you said you could not use, those are the things that I'm stating he put together as if we were to have the home remediated. So some of these things you can look at and kind of see, okay, this is for remediation purposes, like the utility transfers, things of that nature. Of course, we're not saying that's damage as of today. That's if we had gone through a remediation process, these are the things we were listing that would be a part of that to consider.").

21. Notably, the speculative amounts for remediation will never be incurred: the Property was transferred from the Armstrongs in January 2020. *See* Exhibit E (Deed).

Respectfully submitted,

**FISHMAN HAYGOOD, LLP**

*/s/ Kerry J. Miller*
**KERRY J. MILLER (#24562), T.A.**
**PAUL C. THIBODEAUX (#29446)**
**DANIEL J. DYSART (#33812)**
201 St. Charles Avenue, Suite 4600
New Orleans, LA 70170
Telephone:	504.556.5549
Facsimile:	504.310.0279
Email:		kmiller@fishmanhaygood.com

***Counsel for Defendants,***
***Knauf Gips KG and***
***Knauf Plasterboard (Tianjin) Co., Ltd.***

## CERTIFICATE OF SERVICE

    I hereby certify that the above and foregoing pleading has been served upon Russ Herman, Plaintiffs' Liaison Counsel, by email, to all parties by electronically uploading the same to LexisNexis File & Serve in accordance with Pre-Trial Order No. 6, individually to pro se claimants by U.S. Mail, and that the foregoing was filed with the Clerk of Court of the United States Court for the Eastern District of Louisiana, on this 13th day of March, 2020.

*/s/ Kerry J. Miller*
**KERRY J. MILLER**