UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In Re:  CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL 2047 <br><br> SECTION "L" |
| **This document relates to:** <br><br> *Elizabeth Bennett, et al v. Gebr. Knauf Verwaltungsgesellschaft, KG, et al* <br><br> Case No. 14:cv-2722 | JUDGE ELDON FALLON <br><br> MAGISTRATE JOSEPH WILKINSON, JR. |

**MEMORANDUM IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT ON CLAIMS ASSERTED
BY RONALD PENDLETON AND BERNICE PENDLETON**

**MAY IT PLEASE THE COURT:**

Defendants, Knauf Gips KG and Gebr. Knauf (Tianjin) Co., Ltd. (the "Knauf Defendants"), through undersigned counsel, respectfully submit this Memorandum in Support of their Motion for Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure as to the claims asserted by Plaintiffs, Ronald Pendleton and Bernice Pendleton ("the Pendletons"), against them in Plaintiffs' Fifth Amended Class Action Complaint (the "Fifth Amended Complaint").

**I.       Factual and Procedural Background**

   **A.       MDL 2047 and the Bennett Complaint**

From 2004 through 2006, a housing boom in parts of the United States and rebuilding efforts necessitated by Hurricanes Rita and Katrina in the Gulf South led to a shortage of construction materials, including drywall. As a result, drywall manufactured in China was brought

into the United States and used to construct and refurbish homes in coastal areas of the country, notably the Gulf and East Coasts. Sometime after the Chinese drywall was installed, homeowners began to complain of foul-smelling odors, the corrosion and blackening of metal wiring, surfaces, and objects, and the breaking down of appliances and electrical devices in their homes.[1] Many of these homeowners also began to complain of various physical afflictions believed to have been caused by the Chinese drywall.

These homeowners then began to file lawsuits in various state and federal courts against homebuilders, developers, installers, realtors, brokers, suppliers, importers, exporters, distributors, and manufacturers who were involved with the Chinese drywall. Because of the commonality of facts in the various cases, this litigation was designated as a multidistrict litigation. Pursuant to a Transfer Order from the United States Judicial Panel on Multidistrict Litigation ("JPML") on June 15, 2009, all federal cases involving Chinese drywall were consolidated for pretrial proceedings in MDL 09-2047 before this Court. On June 16, 2009, this Court entered PTO 1 regarding preservation of evidence, amongst other things. On October 9, 2009, this Court entered PTO 1(B) regarding preservation of evidence. On January 24, 2012, this Court entered PTO 1(I) regarding preservation of evidence.

Since the inception of MDL 2047 in June of 2009, numerous cases have been consolidated, containing thousands of claims; over 20,000 documents have been entered into the record, millions of documents have been exchanged in discovery, dozens of depositions have been taken, and over 30 Pretrial Orders have been issued; the Court has appointed steering committees and liaison

---

[1] *See In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, 894 F. Supp. 2d 819, 829–30 (E.D. La. 2012), aff'd, 742 F.3d 576 (5th Cir. 2014).

counsel for plaintiffs, homebuilders, insurers, installers, and manufacturers; it has presided over monthly status conferences, hearings, and several bellwether trials.[2]

### B.     The Bennett Complaint and the Pendletons

The original *Bennett* Complaint was filed on November 13, 2014 in the Northern District of Alabama and was subsequently transferred and consolidated into MDL 2047. The Complaint was amended multiple times to amend the parties and claims. The Fifth Amended Complaint was filed on May 14, 2018. Following the Fifth Amended Complaint, certain plaintiffs intervened. The Fifth Amended Complaint is the operative complaint in this matter.

The Pendletons appeared as plaintiffs in the original *Bennett* Complaint filed on November 13, 2014 and are now plaintiffs in the operative Fifth Amended Complaint; they have made claims against the Knauf Defendants regarding the alleged presence of defective Chinese drywall installed in their property located at 5524 Pasteur Boulevard, New Orleans, Louisiana 70122 (the "Property"). In conducting discovery in this MDL and in the *Bennett* matter, this Court approved a Plaintiff Profile Form ("PPF"), a Supplemental Plaintiff Profile Form ("SPPF"), an Owner Disclosure Affidavit ("ODA"), and a Plaintiff Fact Sheet ("PFS") to be completed by Plaintiffs and set forth full and complete answers regarding the claims and damage amounts sought by all Bennett Plaintiffs. The Pendletons completed and submitted a PPF on December 13, 2013,[3] a SPPF on March 23, 2018,[4] and a PFS on January 8, 2019.[5] The documents were completed under penalty of perjury. The Pendletons were deposed on June 12, 2019 and had twenty-one (21) days thereafter to supplement documents in support of their claims.

---

[2] *See* Order, R. Doc. No. 16570 at 3-4.
[3] *See* Deposition of Bernice Pendleton ("B. Pendleton Depo.") at 10:19-25, 11:1-17; *see also* Exhibit 1 to B. Pendleton Depo. (attached as Exhibit A). Bernice Pendleton did not sign the PPF.
[4] Exhibit 2 to B. Pendleton Depo. (attached as Exhibit B). Bernice Pendleton did not sign the SPPF.
[5] Exhibit 3 to B. Pendleton Depo. (attached as Exhibit C).

The Pendletons purchased the Property on March 21, 1995.[6] They resided on the Property until 2005, when the Property was damaged by Hurricane Katrina and required renovations thereafter.[7] The Pendletons believe that it was during the renovations that occurred post-Hurricane Katrina when contaminated Chinese drywall was installed in their Property.[8] The Pendletons estimated that, after Hurricane Katrina, they were out of the Property for approximately two (2) years prior to returning to it post-renovation.[9] Other than those two years, the Pendletons have resided on the Property from 1995 until present.

The Pendletons discovered that the Property contained Chinese drywall based on a letter received from Lowe's, where the drywall was purchased.[10] Mrs. Pendleton stated that the letter from Lowe's was sent to everyone who purchased or whose contractors purchased potentially contaminated drywall from Lowe's for their homes.[11] Mrs. Pendleton estimated that she received the letter from Lowe's within a year of returning to the Property after the renovations post-Hurricane Katrina, at a date no later than in 2009.[12] Mrs. Pendleton stated that, shortly after she received the letter from Lowe's, she was contacted by an attorney from New Orleans and was informed "that there was something wrong with [the] house" and that it "had potentially been renovated using Chinese drywall because [the Pendletons' names] appeared on the list."[13]

Mrs. Pendleton testified that she had other problems with the Property within the two years following the completion of renovations post-Hurricane Katrina—including an odor/egg smell in

---

[6] B. Pendleton Depo. at 20:2-9; Deposition of Ronald Pendleton ("R. Pendleton Depo.") at 11:1-8; Exhibit 4 to B. Pendleton Depo. (attached as Exhibit D).
[7] B. Pendleton Depo. at 24:14-16.
[8] *Id.* at 24:17-19; R. Pendleton Depo. at 12:23-25, 13:1-14.
[9] B. Pendleton Depo. at 41:8-10; R. Pendleton Depo. at 14:3-16.
[10] B. Pendleton Depo. at 28:19-25, 29:1; R. Pendleton Depo. at 17:1-17.
[11] B. Pendleton at 28:22-25, 29:1.
[12] *Id.* at 29:7-13, 21-23, 31:19-23.
[13] *Id.* at 29:1-13, 31:24-25, 32:1-10; R. Pendleton Depo. at 17:7-13 (Mr. Pendleton believed the attorney was actually from a neighboring Parish in Louisiana).

the Property and personal medical complications.[14] Mrs. Pendleton testified that she also started noticing blackening and corrosion of the plumbing system within nine months of returning to the Property after the renovation post-Hurricane Katrina.[15] Although Mrs. Pendleton stated that she knew the Property contained Chinese drywall prior to the completion of an inspection, she testified that the presence of Chinese drywall was confirmed to her on October 24, 2013.[16]

The Pendletons testified that they had never seen the two photos of drywall submitted in support of their claims, therefore they could not provide any information as to those photos.[17] Mrs. Pendleton testified that she did not possess any additional photos of Chinese drywall, nor does she have any photos of blackening and/or corrosion of the plumbing system and/or electrical system.[18]

The Pendletons filed a Chapter 7 Voluntary Petition for Bankruptcy in August of 2014.[19] The Pendletons' bankruptcy was discharged on December 4, 2014.[20] At the time of filing for bankruptcy (August 2014), and at the time of discharge (December 2014), the Pendletons had already completed the PPF (December 2013), and believed the Property contained Chinese drywall.[21] The instant action was filed during the pendency of the bankruptcy, but the Pendletons never disclosed the lawsuit in their bankruptcy proceedings as personal property in the category of contingent and unliquidated claims, or otherwise.[22] The Pendletons' bankruptcy schedules, which failed to disclose any possible recovery from the instant lawsuit as future assets of the bankruptcy

---

[14] B. Pendleton Depo. at 31:2-18.
[15] *Id.* at 36:5-25, 37:1-5.
[16] *Id.* at 39:12-15; Exhibit 5 to B. Pendleton Depo. (attached as Exhibit E).
[17] B. Pendleton Depo. at 48:16-25, 49:1-11; R. Pendleton Depo. at 24:15-22.
[18] B. Pendleton Depo. at 49:12-24.
[19] *See In re Pendletons*, No. 14-12285 (Bankr. E.D. La. filed Aug. 27, 2014); Exhibit 9 to B. Pendleton Depo. (attached as Exhibit F); B. Pendleton Depo. at 95:22-24; R. Pendleton Depo. at 36:20-25, 37-1-23.
[20] Ex. B (Attachment to SPPF); B. Pendleton Depo. at 95:7-10; R. Pendleton Depo. at 36:20-25, 37-1-23.
[21] Ex. A; B. Pendleton Depo. at 95:22-25, 96:1-3; R. Pendleton Depo. at 36:20-25, 37-1-23.
[22] Ex. F; B. Pendleton Depo. at 99:14-21; R. Pendleton Depo. at 36:20-25, 37-1-23.

estate, were submitted under penalty of perjury with an acknowledgement that concealment of assets could result in a fine, imprisonment, or both.[23]

## II. Legal Standard for Rule 56 Summary Judgment

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment is required if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[24] "A genuine dispute of material fact exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[25]

When seeking summary judgment, the movant bears the initial responsibility of demonstrating the absence of an issue of material fact with respect to those issues on which the movant bears the burden of proof at trial.[26] However, where the non-movant bears the burden of proof at trial, the movant may merely point to an absence of evidence, thus shifting to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial.[27]

On a motion for summary judgment, "[a]lthough 'the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor,' summary judgment remains appropriate if the non-movant's evidence is 'merely colorable' or 'not significantly probative.'"[28] "Only when 'there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party' is a full trial on the merits warranted."[29] Furthermore, "[d]iscovery is not a

---

[23] Ex. F; B. Pendleton Depo. at 99:22-25, 100:1-13, 101:21-25, 102:1-18; R. Pendleton Depo. at 36:20-25, 37-1-23.
[24] Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.").
[25] *Bennett v. Hartford Ins. Co. of Midwest*, 890 F.3d 597, 604 (5th Cir. 2018) (quoting *Johnson v. World All. Fin. Corp.*, 830 F.3d 192, 195 (5th Cir. 2016) (internal quotation marks omitted)).
[26] *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).
[27] *Id.* at 322; *see also Moody v. Jefferson Parish School Board*, 2 F.3d 604, 606 (5th Cir. 1993).
[28] *Certain Underwriters at Lloyd's of London v. Lowen Valley View, L.L.C.*, 892 F.3d 167, 170 (5th Cir. 2018) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 255 (1986)).
[29] *Lindsey v. Sears Roebuck & Co.*, 16 F.3d 616, 618 (5th Cir. 1994) (quoting *Anderson*, 477 U.S. at 249).

prerequisite to the disposition of a motion for summary judgment."[30] "If it appears that further discovery will not provide evidence creating a genuine issue of material fact, the district court may grant summary judgment."[31]

III.     Argument

    A.     **Plaintiffs' claims are prescribed or otherwise are barred by the LPLA.**

The Pendletons' claims are prescribed on their face because the Pendletons received actual notice of Chinese drywall in their Property on October 24, 2013, at the latest, over a year prior to initiating this lawsuit on November 13, 2014. As to redhibition, under the discovery rule, prescription does not commence against an alleged manufacturer until the date the injured party discovers or should have discovered the facts upon which his cause of action is based.[32] "The principle does not apply if plaintiff's ignorance is attributable to his own willfulness or neglect."[33] "In determining when the plaintiff should have known of the basis for his claim, the focus is on the reasonableness of the plaintiff's action or inaction."[34] "A plaintiff will be deemed to know that which he could have learned through reasonable diligence."[35] In sum, if an opportunity is afforded to a party to know and to learn about a certain matter bearing on his interest and he fails or refuses

---

[30] *Carder v. Cont'l Airlines, Inc.*, 595 F. App'x 293, 299 (5th Cir. 2014) (quoting *Skiba v. Jacobs Entm't Inc.*, 587 Fed. Appx. 136, 138 (5th Cir. 2014) (per curiam)).

[31] *Raby v. Livingston*, 600 F.3d 552, 561 (5th Cir. 2010) (citing *Access Telecom, Inc. v. MCI Telecomm. Corp.*, 197 F.3d 694, 720 (5th Cir. 1999)); *see also Washington v. Allstate Ins. Co.*, 901 F.2d 1281, 1285 (5th Cir. 1990) ("This court has long recognized that a plaintiff's entitlement to discovery prior to a ruling on a motion for summary judgment is not unlimited, and may be cut off when the record shows that the requested discovery is not likely to produce the facts needed by the plaintiff to withstand a motion for summary judgment.").

[32] La. Civ. Code art. 2434 (prescription for redhibition); *In re Ford Motor Co. Bronco II Prod. Liab. Litig.*, 982 F. Supp. 388, 395 (E.D. La. 1997) (citing *Corsey v. State Dept. of Corrections*, 375 So. 2d 1319, 1322 (La. 1979)).

[33] *Ford*, 982 F. Supp. at 395 (citing *Corsey*, 375 So. 2d at 1322).

[34] *Id.*

[35] *Id.* at 395-96 (citing *Corsey*, 375 So. 2d at 1322; *Hospital Dist. No 1 v. Alas*, 657 So.2d 1378, 1383 (La. App. 5 Cir. 1995); *La Plaque Corp. v. Chevron U.S.A. Inc.*, 638 So. 2d 354, 356 (La. Ct. App.), *writ denied*, 94-2125 (La. 11/11/94); 644 So. 2d 395; *Beth Israel v. Bartley, Inc.*, 579 So. 2d 1066, 1072 (La. Ct. App.), *writ denied*, 587 So. 2d 696 (La. 1991)).

it, and closes his eyes and ears to the notice before him, the law will hold him as bound by the same.[36]

The Pendletons purchased their Property on March 21, 1995 and resided there until 2005, when the Property was damaged by Hurricane Katrina and required renovations.[37] The Pendletons estimated that, after Hurricane Katrina, they were out of the Property for approximately two (2) years prior to returning to it post-renovation.

Within approximately one year of returning to the Property post-renovation, at a date no later than in 2009, the Pendletons discovered that the Property contained Chinese drywall based on the receipt of a letter that they believed was sent to them from Lowe's, where the drywall was purchased. That letter was followed by a contact from an attorney:

> Q   Okay. And you mentioned you had the inspection done after learning there was Chinese drywall. How did you discover that the property contained Chinese drywall?
> A   We received a letter from Lowe's where the drywall was purchased. And, apparently, they sent everyone on the list of people that purchased -- that their contractors had purchased the drywall, that they had drywall in their homes. And then an attorney from New Orleans -- and I don't know what their name was -- they contacted us regarding the list, and our name was on it. And that's where everything started from them.
> Q   And when did you receive this letter?
> A   [Approximately 2008-2009.]
> …
> Q   Okay. And you said an attorney from New Orleans contacted you?
> A   Yes, ma'am.
> Q   Was that after the letter from Lowe's?
> A   Yes.
> Q   What was the contact about? Was it a representation, or no?
> A   They were informing us that our house had potentially been renovated using Chinese drywall because our name appeared on the list. They apparently had gotten Frilot, and they wanted to let us know they were going to have an attorney available for us. And from there, they just took over the whole

---

[36] *Id.* at 396 (internal quotation marks and citations omitted).
[37] B. Pendleton Depo. at 20:2-9, 24:14-16; R. Pendleton Depo. at 11:1-8; Ex. D. The Pendletons believe that it was during the renovations that occurred post-Hurricane Katrina when contaminated Chinese drywall was installed in their Property. B. Pendleton Depo. at 24:17-19; R. Pendleton Depo. at 12:23-25, 13:1-14.

inspection and having everything checked and all to make sure we were the right family on that list of names.[38]

Defendants note that, as to the 2008-2009 notice date inserted, the Pendletons testified that they returned to their Property about two years after Hurricane Katrina (2005), which Defendants have estimated to be around 2007-2008. Mrs. Pendleton additionally testified that the letter from Lowe's was received within approximately one year after they returned to the Property, which Defendants have estimated to be around 2008-2009. This is consistent with information regarding the Lowe's settlement, which required claim forms to be submitted no later than July 15, 2011.[39]

Mrs. Pendleton testified that she had other problems with the Property within the two years following the completion of renovations post-Hurricane Katrina in 2007—including an odor/egg smell in the Property and personal medical complications.[40] Mrs. Pendleton testified that she also started noticing blackening and corrosion of the plumbing system within nine months of returning to the Property after the renovation post-Hurricane Katrina.[41]

Although Mrs. Pendleton stated that she knew the Property contained Chinese drywall prior to the completion of an inspection, she testified that the presence of Chinese drywall was confirmed to her on October 24, 2013:

> Q   And, according to this document [Exhibit 5], Item 6, you became aware of Chinese drywall on October 24th, 2013; is that correct?
> A   Yes. That's correct.[42]

Accordingly, the Pendletons were alerted to the fact that their Property contained Chinese drywall no later than in 2009 yet waited approximately five years—until November 13, 2014—to

---

[38] B. Pendleton Depo. at 28:17-25, 29:1-13, 31:24-25, 32:1-16.
[39] *See* Sarah Mirando, *Lowe's Defective Drywall Class Action Lawsuit Settlement*, Top Class Actions (April 16, 2011), https://topclassactions.com/lawsuit-settlements/closed-settlements/1121-lowes-defective-drywall-class-action-lawsuit-settlement.
[40] *Id.* at 31:2-18.
[41] *Id.* at 36:5-25, 37:1-5.
[42] *Id.* at 39:12-15; *see also* Ex. E.

file this action. Their redhibition claims are prescribed on their face. However, assuming *arguendo* that the Court believes Plaintiffs were ignorant of Chinese drywall on their Property even after they were notified no later than in 2009, the Pendletons' claims are still prescribed because the Pendletons confirmed that they were aware of Chinese drywall on the Property on October 24, 2013. Therefore, at the absolute latest, the Pendletons were aware of Chinese drywall by October of 2013, over one year prior to their filing the instant action in November of 2014. The Pendletons' redhibition claims are prescribed.

The Pendletons' circumstances are similar to that of the Martinezes and Powell, whose claims this Court previously dismissed on the same basis.[43] Like the Martinezes and Powell, the Pendletons had actual knowledge of the presence of Chinese drywall in their home more than one year before filing their claims. This Court should dismiss the Pendletons' redhibition claims.

As to the remaining claims, under Louisiana law, prescriptive periods are not determined by the label of the cause of action, but are instead determined by the nature of the transaction and the underlying basis of the claim.[44] Therefore, actions that are tort-based claims, including all claims under Louisiana law in the Fifth Amended Complaint, are subject to a one-year liberative prescription period under La. Civ. Code art. 3492.[45] Like the claims in redhibition, the other

---

[43] *See* R. Doc. 22615 at 28-30.

[44] *Stewart v. Ruston Louisiana Hosp. Co., LLC*, No. 14-0083, 2016 WL 1715192, at *5 (W.D. La. Apr. 27, 2016) ("In determining the prescriptive period for a cause of action, 'Louisiana courts look to the nature of the duty that has been breached.'") (citations omitted); *see also Duer & Taylor v. Blanchard, Walker, O'Quin & Roberts*, 354 So.2d 192, 194 (La. 1978) ("Louisiana jurisprudence is well settled that the character of an action given by a plaintiff in his pleadings determines the prescription applicable to it.").

[45] *Manion v. Pollingue*, 524 So. 2d 25 (La. App. 3 Cir. 1988), *writ denied*, 530 So. 2d 572 (La. 1988) (finding tort claim against administrator for breach of fiduciary duty was "delictual action" and one-year prescriptive period under La. Civ. Code art. 3492 applied); *Gad v. Granberry*, 2007-117 (La. App. 3 Cir. 5/30/07); 958 So. 2d 125, *writ denied*, 2007-1336 (La. 9/28/07); 964 So. 2d 364, and *writ denied*, 2007-1361 (La. 9/28/07); 964 So. 2d 365 (finding purchaser's claims against vendor and real estate company for fraud and misrepresentation were delictual actions and subject to one-year prescriptive period); *Cerullo v. Heisser*, 16-558 (La. App. 5 Cir. 2/8/17); 213 So. 3d 1232, 1237 (fraud and misrepresentation claims were delictual actions and one-year liberative prescription applied); *Williams v. Nexstar Broad., Inc.*, 11-887 (La. App. 5 Cir. 4/10/12); 96 So. 3d 1195, 1201 (finding claims for defamation are subject to liberative prescription of one year running from the day injury or damage is sustained);

Louisiana claims relevant to the Pendletons are prescribed on their face and should be dismissed, with prejudice. This Court previously dismissed the claims of the Martinezes and Powell, and should likewise dismiss the claims of the Pendletons.[46]

To the extent the claims are not prescribed, they are otherwise barred by the exclusive remedies contained in the LPLA, except as damages in redhibition to the extent damages are provided for the drywall itself or economic losses. The LPLA, which "establishes the exclusive theories of liability for manufacturers for damage caused by their products" and explicitly provides that "[a]ttorney's fees are not recoverable under th[e LPLA.]"[47] "Damage" under the LPLA, however, is a defined term, and it usually does not include "damage to the product itself [or] economic loss."[48] Accordingly, the LPLA precludes Plaintiffs' redhibition claim—and, consequently, their entitlement to attorney fees—unless the jury awarded damages to compensate for "damage to [the bolts themselves or] economic loss," which are recoverable in redhibition.[49]

### B. Plaintiffs are judicially estopped from pursuing their claims that were not disclosed in their bankruptcy.

Alternatively, to the extent Plaintiffs' claims are not prescribed, they should be judicially estopped. "Judicial estoppel is 'a common law doctrine by which a party who has assumed one position in his pleadings may be estopped from assuming an inconsistent position'."[50] "The purpose of the doctrine is to protect the integrity of the judicial process, by prevent[ing] parties from playing fast and loose with the courts to suit the exigencies of self interest."[51] "Because the

---

*AGEM Mgmt. Servs., LLC v. First Tennessee Bank Nat. Ass'n*, 942 F. Supp. 2d 611, 622 (E.D. La. 2013) (breach of contract based on misrepresentation governed by one-year prescriptive period).
[46] *See* R. Doc. 22615 at 28-30.
[47] La. Rev. Stat. §§ 9:2800.52, 2800.53(5).
[48] *Id*. § 2800.53(5).
[49] *Chevron USA, Inc. v. Aker Mar., Inc.*, 604 F.3d 888, 900 (5th Cir. 2010); La. Rev. Stat. § 9:2800.53(5).
[50] *In re Coastal Plains, Inc.*, 179 F.3d 197, 205 (5th Cir. 1999) (quoting *Brandon v. Interfirst Corp.*, 858 F.2d 266, 268 (5th Cir. 1988)).
[51] *Id.* (internal quotation marks and citations omitted).

doctrine is intended to protect the judicial system, rather than the litigants, detrimental reliance by the opponent of the party against whom the doctrine is applied is not necessary."[52]

Judicial estoppel may be invoked to prevent a party who failed to disclose a claim in bankruptcy proceedings from asserting that claim after emerging from bankruptcy. "[T]he Bankruptcy Code and Rules impose upon bankruptcy debtors an express, affirmative duty to disclose all assets, *including contingent and unliquidated claims*."[53] "The duty of disclosure in a bankruptcy proceeding is a continuing one, and a debtor is required to disclose all potential causes of action. … The debtor need not know all the facts or even the legal basis for the cause of action; rather, if the debtor has enough information ... prior to confirmation to suggest that it may have a possible cause of action, then that is a "known" cause of action such that it must be disclosed."[54] Claims must be disclosed even if they are contingent, dependent, or conditional.[55]

It follows that failure to disclose a possible claim in bankruptcy judicially estops a party from later asserting that claim:

> The rationale for ... decisions [invoking judicial estoppel to prevent a party who failed to disclose a claim in bankruptcy proceedings from asserting that claim after emerging from bankruptcy] is that the integrity of the bankruptcy system depends on full and honest disclosure by debtors of all of their assets. The courts will not permit a debtor to obtain relief from the bankruptcy court by representing that no claims exist and then subsequently to assert those claims for his own benefit in a separate proceeding. The interests of both the creditors, who plan their actions in the bankruptcy proceeding on the basis of information supplied in the disclosure statements, and the bankruptcy court, which must decide whether to approve the plan of reorganization on the same basis, are impaired when the disclosure provided by the debtor is incomplete.[56]

---

[52] *Id.* (citations omitted).
[53] *Id.* at 207-08 (citation omitted) (emphasis in original).
[54] *Id.* at 208 (internal quotation marks and citations omitted).
[55] *Id.*
[56] *Id.* (quoting *Rosenshein v. Kleban*, 918 F. Supp. 98, 104 (S.D.N.Y.1996)) (additional citations omitted).

This Court should invoke judicial estoppel to prevent the Pendletons from pursuing their claims. As previously discussed, the Pendletons filed a Chapter 7 Voluntary Petition for Bankruptcy in August of 2014.[57] The Pendletons' bankruptcy was thereafter discharged on December 4, 2014.[58] At the time of filing for bankruptcy in August of 2014, and at the time of discharge in December of 2014, the Pendletons were aware of Chinese drywall in their Property and had additionally completed the PPF in December of 2013 evidencing that knowledge and intent to file suit.[59] Moreover, the instant action was filed *during the pendency of the bankruptcy* on November 13, 2014, but the Pendletons never disclosed the lawsuit in their bankruptcy proceedings as personal property in the category of contingent and unliquidated claims, or otherwise.[60] The Pendletons' bankruptcy schedules, which failed to disclose the Pendletons' claims or any possible recovery in the instant lawsuit, was submitted under penalty of perjury with an acknowledgement that concealment of assets could result in a fine, imprisonment, or both.[61]

Given the foregoing, this Court should invoke judicial estoppel to prevent the Pendletons, who failed to disclose these claims in their bankruptcy proceedings, from asserting these claims post-bankruptcy.

**IV.   Conclusion**

Based on all the discovery in MDL 2047 and the case-specific discovery as to the Pendletons, the facts do not support any claims against the Knauf Defendants. The Pendletons cannot substantiate any of the facts forming the basis of the claims against the Knauf Defendants,

---

[57] *See In re Pendletons*, No. 14-12285 (Bankr. E.D. La. filed Aug. 27, 2014); Exhibit 9 to B. Pendleton Depo. (attached as Exhibit F); B. Pendleton Depo. at 95:22-24; R. Pendleton Depo. at 36:20-25, 37-1-23.
[58] Ex. B (Attachment to SPPF); B. Pendleton Depo. at 95:7-10; R. Pendleton Depo. at 36:20-25, 37-1-23.
[59] Ex. A; B. Pendleton Depo. at 95:22-25, 96:1-3; R. Pendleton Depo. at 36:20-25, 37-1-23.
[60] Ex. F; B. Pendleton Depo. at 99:14-21; R. Pendleton Depo. at 36:20-25, 37-1-23.
[61] Ex. F; B. Pendleton Depo. at 99:22-25, 100:1-13, 101:21-25, 102:1-18; R. Pendleton Depo. at 36:20-25, 37-1-23.

and there is no genuine issue of material fact preventing summary judgment. Therefore, this Court should grant summary judgment, dismissing their claims with prejudice.

        Respectfully submitted,

**FISHMAN HAYGOOD, LLP**

*/s/ Kerry J. Miller*
**KERRY J. MILLER (#24562), T.A.**
**PAUL C. THIBODEAUX (#29446)**
**DANIEL J. DYSART (#33812)**
201 St. Charles Avenue, Suite 4600
New Orleans, LA 70170
Telephone:   504.556.5549
Facsimile:    504.310.0279
Email:        kmiller@fishmanhaygood.com

*Counsel for Defendants,*
*Knauf Gips KG and*
*Knauf Plasterboard (Tianjin) Co., Ltd.*

## CERTIFICATE OF SERVICE

    I hereby certify that the above and foregoing pleading has been served upon Russ Herman, Plaintiffs' Liaison Counsel, by email, to all parties by electronically uploading the same to LexisNexis File & Serve in accordance with Pre-Trial Order No. 6, individually to pro se claimants by U.S. Mail, and that the foregoing was filed with the Clerk of Court of the United States Court for the Eastern District of Louisiana, on this 16th day of March, 2020.

*/s/ Kerry J. Miller*
**KERRY J. MILLER**