```
              UNITED STATES DISTRICT COURT
              EASTERN DISTRICT OF LOUISIANA


                        MDL 2047
                      SECTION "L"
                   JUDGE ELDON FALLON
              MAGISTRATE JOSEPH WILKINSON, JR.



    IN RE: CHINESE MANUFACTURED
    DRYWALL PRODUCTS LIABILITY
    LITIGATION

    This document relates to:
    Elizabeth Bennett, et al v. Gebr, Knauf
    Verwaltungsgesellschaft, KG, et al

    Case No. 14-cv-2722


                        *******


                      DEPOSITION
                          OF
                  MICHAEL CHRISTOVICH

             taken at Brooks Court Reporting,
                    1520 29th Avenue,
                   Gulfport, Mississippi
             on Tuesday, December 17, 2019,
            beginning at approximately 1:53 p.m.


        ****************************************


                 Angela Dawn Dillard, CCR
                Certified Court Reporter, #1763
```

**Worldwide Court Reporters, Inc.**
**(800) 745-1101**

1    Anti-Indemnity act?

2        A.   Yes.

3        Q.   Okay.  All right.  Any other areas where

4    you have testified as an expert?

5        A.   I can't think of any.

6        Q.   Okay.  We're here today for a claim that

7    you have filed in relation to property located at

8    829 East Scenic Drive in Pass Christian,

9    Mississippi, true?

10       A.   Yes.

11       Q.   Okay.  And before we get into that I'm

12   going to hand you what I've marked as deposition

13   Exhibit 1, which is the Notice of Deposition.

14           (Exhibit 1 identified for the record.)

15       A.   Uh-huh (affirmative).

16       Q.   And did you receive that document?

17       A.   I got it yesterday afternoon, it was

18   faxed or e-mailed to me.

19       Q.   Okay.  Did you have an opportunity to

20   look through the requests that were attached to

21   the Notice of Deposition?

22       A.   I did.  I don't have most of these, if

23   any of these really.  Again, I bought the house

24   after most of what you're requesting already

25   existed from the prior owner.

```
 1    page.  I don't really know the loss of enjoyment,
 2    I didn't know where that figure came from.
 3        Q.   And I'll get into that.  But since you
 4    brought it up, the $325,000 that was included for
 5    the loss of use, was that a number that you had
 6    inserted or is that something that was inserted
 7    by counsel?
 8        A.   I don't know where the figure -- I
 9    just -- as I understood it from talking to
10    counsel, and I don't know how much I divulge in
11    my discussions with counsel.
12        Q.   And, again, I'm not asking you to do
13    that.
14        A.   Well, I can't answer the question.
15        Q.   Okay.  Did that $325,000 for the loss of
16    use --
17        A.   I think that's based on the amount of
18    time the house had Chinese drywall times a
19    component that's been set by Judge Fallon and
20    some criteria.  I don't know, but I think that's
21    where it came from.
22        Q.   Okay.  Do you have any knowledge or
23    evidence of an independent basis for the
24    $325,000?
25        A.   I don't.  I know I've been delayed over
```

```
 1    a year.
 2        Q.   Okay.  And when you say you've been
 3    delayed over a year, and we'll have to get into
 4    the timeline, which I'm just going through the
 5    documents first.  But when you purchased the
 6    property, prior to closing, you were aware that
 7    it contained Chinese drywall?
 8        A.   Well, when I signed a purchase agreement
 9    in July or August, I think it was July, no, I was
10    not aware.
11             Then we had an inspection, and during
12    the inspection process we became aware.  Then to
13    the dismay of the owner, and we made him aware
14    that it had Chinese drywall, at that point we
15    retained experts to come in and tell us what we
16    had to do.  And it took six months for me to
17    ultimately get to a point where I could buy the
18    house.
19        Q.   And so, again, my question was that at
20    the time you closed in January of 2019 you were
21    aware that --
22        A.   Oh, yeah.
23        Q.   -- the property had Chinese drywall?
24        A.   Yes.
25        Q.   Okay.  And, again, we'll get to the
```

```
 1    produced in this case?
 2        A.   I have no idea.
 3        Q.   Has it been provided to your attorneys?
 4        A.   Have I provided it?
 5        Q.   Yes, sir.
 6        A.   I don't think I provided it.  I think
 7    probably that was provided by Woody Bailey.
 8        Q.   Okay.  Is that a document that you have
 9    within your custody and control?
10        A.   I think I do have it.  Yeah, I think do
11    have it.  I don't have it with me but I think I
12    do have it.
13        Q.   All right.
14             MR. DYSART:  And we would ask for the
15      production of the side agreement between
16      Mr. Christovich and Carlisle Place, LLC, in
17      connection with any money received by Chinese
18      drywall.
19    BY MR. DYSART:
20        Q.   Other than that particular agreement are
21    there any other agreements between Carlisle Place
22    and yourself in regards to the Chinese drywall?
23        A.   No.
24        Q.   I want to get into the timeline a little
25    bit in terms of how you identify this particular
```

1  said he would take a $700,000 discount off the

2  purchase price of $2,000,000.  And I said, okay,

3  if you're willing to do that then I will take --

4  hope to recover some money in excess of that if

5  it works.

6      Q.   Okay.  **And so when you say you hoped to**

7  **recover some money, is it your understanding that**

8  **you essentially are stepping into the shoes of**

9  **Mr. Bailey or Carlisle Place in terms of your**

10  **Chinese drywall claim?**

11      A.   Above the $700,000.

12      Q.   **I'm sorry?**

13      A.   Above the $700,000 I'm contractually

14  bound that he's getting.  If the case collects

15  $699,000 then I don't get a penny.

16      Q.   Okay.  **So the side agreement, which we**

17  **don't have with us here today, between you and**

18  **Mr. Bailey, contractually obligates you to**

19  **provide him with the first $700,000 that's**

20  **recovered --**

21      A.   Yes.

22      Q.   **-- in regards to this claim?**

23      A.   Yes.

24      Q.   Okay.  **And anything on top of that you**

25  **would keep for yourself?**

1   Mr. Macomber, I do not have anything in regards

2   to a remediation.

3        A.   Well --

4        Q.   Has Mr. Macomber subsequently issued a

5   remediation report in connection with the

6   remediation of this property?

7        A.   He's issued a report.  I can't say.  You

8   say you have something but you don't know what it

9   is.  His is a very detailed, it's thick, it's got

10  hundreds of photographs, it's got descriptions.

11  He bagged a heck of a lot of samples of Knauf

12  Chinese drywall.  Where they are, I think is

13  really best posed to Mr. Macomber.

14       Q.   In terms of this case, were you made

15  aware that there is a Plaintiff Fact Sheet that

16  had to be completed?

17       A.   On the 10th.

18       Q.   Okay.  And are you aware that that

19  Plaintiff Fact Sheet required certain documents

20  be produced in terms of any remediation that was

21  completed?

22       A.   No.

23       Q.   Okay.  I'm going to show you, sir, which

24  is the Plaintiff Fact Sheet of page 8.

25       A.   Okay.

 1       Q.    Okay.  Do you understand that the
 2   Supplemental Plaintiff Profile Form requires the
 3   plaintiff to produce that information in
 4   connection with this case?
 5       A.    No, I didn't understand that.
 6       Q.    Is that something you are able to
 7   produce in connection with this case?
 8       A.    I don't have the photographs and the
 9   bags of the Knauf contaminated Chinese drywall
10   but I think Mr. Macomber does.
11       Q.    Okay.  Has anyone else told you that
12   these documents would have to be produced in
13   connection with this case?
14       A.    No.
15           MR. DYSART:  And, Jim, in the past in
16     these we've asked for these and they've been
17     produced.  I'm not sure if that's something
18     that y'all are going to do within 21 days or
19     not, but I'm not sure it's going to be
20     productive to continue with Mr. Christovich
21     without that information.
22           MR. DOYLE:  It's up to you.
23           MR. DYSART:  So is that information
24     within y'all's possession, custody, and
25     control?