**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| IN RE:  CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL NO. 2047<br><br>SECTION: L |
| THIS DOCUMENT RELATES TO:<br><br>ALL ACTIONS (except *The Mitchell Co., Inc. v. Knauf Gips KG, et al.*, Civil Action No. 09-4115 (E.D. La.)) | JUDGE FALLON<br><br>MAG. JUDGE WILKINSON |

<u>**FEE ALLOCATION COMMITTEE'S ANALYSIS OF FEE APPLICANTS AND RECOMMENDED ALLOCATIONS OF COMMON BENEFIT FEES AND COST REIMBURSEMENTS**</u>

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

A.   ANALYSIS OF FIRMS ENTITLED TO AN ALLOCATION OF COMMON
BENEFIT FEES ................................................................................................................. 4

1) Levin, Sedran & Berman .............................................................................................. 4

2) Herman Herman & Katz ............................................................................................. 10

3) Colson Hicks Eidson, PA ........................................................................................... 12

4) Richard J. Serpe, P.C. & Breit Cantor Grana Buckner ............................................. 15

5) Barrios, Kingsdorf & Casteix ..................................................................................... 18

6) Irpino Law Firm .......................................................................................................... 20

7) Gainsburgh, Benjamin, *et al.* ...................................................................................... 21

8) Seeger Weiss, LLP ...................................................................................................... 23

9) Morgan & Morgan ....................................................................................................... 24

10) Hausfeld, LLP ............................................................................................................ 25

11) The Lambert Firm ...................................................................................................... 26

12) Allison Grant, PA ...................................................................................................... 27

13) The Steckler Law Firm .............................................................................................. 28

14) Becnel Law Firm, LLC .............................................................................................. 29

15) Baron & Budd ............................................................................................................ 30

16) Lieff Cabraser & Cunningham Bounds ..................................................................... 30

17) Martzell, Bickford & Centola .................................................................................... 31

18) Thornhill Group ......................................................................................................... 31

19) Torres Law ................................................................................................................. 32

B.   FIRMS ENTITLED ONLY TO EXPENSE AND/OR ASSESSMENT
REIMBURSEMENTS ...................................................................................................... 32

i

20) Lemmon Law Firm ...................................................................................................... 32

21) Pendley Baudin & Coffin ........................................................................................... 33

22) Reeves & Mestayer ................................................................................................... 33

## INTRODUCTION

On January 10, 2020, the Court entered its Order and Reasons (a) granting final approval of the Class Settlement with Taishan Gypsum Company Ltd. f/k/a Shandong Taihe Dongxin Co., Ltd. and Taian Taishan Plasterboard Co. Ltd. (collectively, "Taishan") and (b) ruling on Class Counsel's motion for an award of attorneys' fees and costs ("Order and Reasons") [Rec. Doc. 22460]. The Court awarded attorneys (both Common Benefit Counsel and individually retained attorneys) 19% of the $248,000,000 Taishan Settlement Fund – totaling $47,120,000. Order and Reasons, at 69 & 71. The Court further ordered that "a fair division of fees is 40% to contract counsel and 60% to common benefit counsel." *Id*. at 67. Accordingly, Common Benefit Counsel are entitled to 60% of the fees – totaling approximately $28,272,000. *Id*.[1] In addition, the Court awarded Common Benefit Counsel reimbursement of $1,166,418.88 in held costs and $1,669,824.00 as cash assessments, for a total of $2,836,242.88, for costs incurred between January 1, 2015 and August 31, 2019. *Id*. at 69 & 71. On January 13, 2020, the Court entered a final order and judgment pursuant to Federal Rule of Civil Procedure 54(b) [Rec. Doc. 22466], from which no appeal was taken.

On January 16, 2020, the Court appointed a Fee Allocation Committee ("FAC") and ordered that "anyone interested in receiving a common benefit fee in this litigation must, within fifteen (15) days, file with the Court an application indicating the time spent and nature of the work performed." Rec. Doc. 22481 at 1. In response to the Court's Order, 19 fee applications were filed.[2]

---

[1] The remaining fees – $18,848,000 – will be distributed to individually retained attorneys.

[2] Two additional applications were filed (by Mrachek and Whitfield, Bryson, and Mason), but then withdrawn.

The FAC has evaluated those applications, interviewed the firms that requested to meet with the committee, and reviewed the hours submitted by these firms as evidence of their common benefit services (*see* Chart of Fee Applicant Hours, Held Costs, and Assessments attached hereto as Exhibit "A").

In addition to the attorneys' fees awarded from the Taishan Settlement, the Court previously awarded $633,129.09 in fees from the Allen Settlement on March 6, 2019, which are in the Court Registry [Rec. Doc. 22122]. Using the Court's analysis and ruling on fees from the Taishan Settlement, Common Benefit Counsel are entitled to 60% of the Allen fees – totaling $379,877.45.[3]

The FAC has deliberated and reached a consensus on the appropriate and fair allocation of the common benefit fees awarded by the Court from the Taishan Settlement and the Allen Settlement – totaling $28,651,877.45 (*see* Chart of Recommended Fee Allocations attached hereto as Exhibit "B"). **Significantly, all fee applicants have agreed to their recommended allocation of common benefit fees**. Given the long and protracted history of this litigation, the FAC requests that the Court enter the proposed Order filed herewith, awarding common benefit fee applicants the allocation of common benefit fees to which they have agreed.

In addition to the recommended fee allocations, the FAC recommends that fee applicants be reimbursed for the held costs they incurred and the cash assessments they paid from January 1, 2015 through the end of 2019 (as opposed to the cut-off date of August 31, 2019 in the Court's Order and Reasons) – totaling $2,930,542.47. Since the Court awarded only $2,836,242.88 in cost

---

[3] The remaining 40% of the Allen attorneys' fees – $253,251.64 – would be added to the funds awarded by the Court from the Taishan Settlement to pay individually retained attorneys.

reimbursements (Order and Reasons, at 71), this would require the reimbursement of an additional $94,299.59 in held costs and assessments, which could be accomplished by accessing two funds of common benefit attorneys' fees from Virginia state court settlements with installers of Taishan drywall – Jay Sprays, Inc. and K&M Drywall.[4] The amount of these common benefit fee funds are as follows: Jay Sprays CDW QSF - $102,576.33 and K&M CDW QSF- $136,765.09. Judge Hall previously ordered that these funds be set aside to compensate the PSC which had expended significant resources pursuing these installer Defendants in Virginia state court. These funds remain in escrow controlled by PSC member and Settlement Class Counsel Richard Serpe and are available for distribution to the fee applicants here. Class Counsel respectfully submits that these funds, which have not been earmarked for any particular purpose, provide a unique resource and opportunity to reimburse the additional $94,299.59 in held costs and assessments incurred by fee applicants through the end of 2019.

Further, the FAC requests reimbursement for the costs they incurred in performing FAC duties, including the costs of transcripts of the fee interviews. These costs total <u>$40,163.52</u>, and can be reimbursed from the Jay Sprays and K&M QSFs derived from the settlements in Virginia. After reimbursing the held costs and assessments from August 31, 2019 until December 31, 2019, and the FAC expenses, there will remain $104,878.31 available in common benefit funds from these Virginia settlements to potentially reimburse ongoing costs incurred to implement the Taishan Settlement and wind down this litigation in 2020.

---

[4] All monies from those settlements have been distributed to Virginia Taishan claimants and to individually retained counsel for those claimants, leaving common benefit fees available for distribution here.

A.  **ANALYSIS OF FIRMS ENTITLED TO AN ALLOCATION OF COMMON BENEFIT FEES**

## 1) Levin, Sedran & Berman

Levin, Sedran & Berman ("LSB") performed 49,245.50 common benefit hours during the Relevant Period (January 1, 2014 through December 31, 2019), and incurred $759,837.15 in held costs from January 1, 2015 through December 31, 2019, which were accepted by the Court-appointed CPA, Philip A. Garrett, pursuant to PTO 9. Mr. Garrett removed 9,839.00 hours that were coded "L190" for work related to the Knauf fees and/or the prior fee dispute. Then, the FAC subtracted an additional 766.75 common benefit hours for the firm, based on the FAC's assessment of the firm's time. LSB's net common benefit hours are 38,639.75, and the firm's net held costs are $759,837.15. The firm's lodestar total is $41,998,933.75, using the firm's 2014 hourly rates, which is a relevant consideration given the time-value of money over the span of the past six years of litigation against Taishan without compensation. LSB contributed $608,133.01 in assessments to the litigation during the Relevant Period, which have not been reimbursed. The firm filed a fee application on January 31, 2020 [Rec. Doc. 22539] and made a presentation before the FAC on February 20, 2020.

Arnold Levin has served as Plaintiffs' Lead Counsel, Class Counsel for the Knauf, Global, Banner, InEx, L&W, Allen, and Taishan Settlements, and Chair of the Knauf Fee Committee. Sandra Duggan has served as Class Counsel for the Taishan Settlement and Chair of the Taishan FAC. For the entirety of this litigation, and particularly during the Relevant Period, LSB was responsible for the overall management of the case in the MDL and in the remand courts (from 2018 forward) and did whatever it took to get the job done, which resulted in the achievement of a global resolution with Taishan and the Additional Released Parties. At a time when the proceedings were at an impasse due to the recalcitrance of the Defendants, the MDL exercised its "last resort" option of remanding the *Amorin* and *Brooke* cases to Florida and Virginia. Therefore, obtaining the Trial Plan Order from Judge Cooke, which adopted all of the MDL rulings, was a game-changer that served as a trajectory towards reaching a class settlement with Defendants. This activity in Florida, combined with Judge Davis' Trial Plan Order in Virginia, and the MDL Court's Trial Plan Order for Louisiana cases provided the catalyst that was needed. LSB did not act alone, and with the assistance of numerous dedicated common benefit counsel who offered their expertise and hard work whenever needed, Common Benefit Counsel were able to deliver significant cash benefits to Eligible Taishan Class Members.

LSB worked tirelessly to pursue the Taishan Defendants. Of the collective common benefit effort devoted to the pursuit of remediation damages and other losses from Taishan and its parent entities since 2014, LSB contributed more than 34% of the time, more than 53% of the lodestar, more than 61% of the held costs, and approximately 36% of the cash assessments, and the firm continues to implement the Taishan Settlement and incur costs in 2020.

LSB devoted several senior partners, virtually full-time, and numerous junior partners, associates and paralegals to this effort. The firm is committed to work on *Chinese Drywall* until

the Class Settlement with Taishan has been fully administered and all eligible Class Members receive the payments to which they are entitled, and the work of the FAC has been completed.

LSB participated in and contributed to every status conference, hearing, and oral argument in the MDL and the Fifth Circuit, and then, after the remands of *Amorin* and *Brooke* cases, the firm did the same in Florida and Virginia. LSB developed an overall strategy designed to minimize duplication of effort while achieving maximum results and efficiency by bringing all Plaintiffs into the MDL through innovative Omnibus complaints filed against many non-diverse Defendants, and by moving the case forward in the MDL and remand jurisdictions.

LSB oversaw and managed all aspects of the case on behalf of more than 4,000 Plaintiffs from 13 States. On a daily basis, the firm coordinated proceedings occurring simultaneously in multiple jurisdictions, and supervised multiple teams to ensure consistent positions were taken, deadlines were met, resources were allocated responsibly, duplication of effort was avoided, and maximum results were achieved. This necessitated regular communications and coordination with common benefit counsel and hundreds of individually retained attorneys and *pro se* Plaintiffs. The firm also interfaced often with the MDL Clerk of Court and its staff as well as the remand courts.

LSB made common benefit work assignments to key individuals tasked with: (a) alter ego, contempt, and jurisdictional discovery of Defendants and third parties; (b) enforcement of the Contempt Order and Injunction; (c) development and discovery of experts (on class remediation damages and Plaintiffs' other losses in Florida); (d) assessment and quantification of class damages; (e) development of detailed spreadsheets setting forth the bases and support for Plaintiffs' damages; (f) development of a comprehensive Product ID catalog of all markings of Chinese Drywall alleged to be attributable to Taishan and/or BNBM; (g) vetting Florida *Amorin* Plaintiffs to select 20 Priority Plaintiffs for trial and undertaking discovery related to the claims of these Plaintiffs; (h) vetting Louisiana *Amorin* Plaintiffs to find 20 Select Cases for trial and undertaking discovery for these Plaintiffs, as well as the 19 Select Cases chosen by Defendants; (i) seeking sanctions for discovery violations by Taishan; (j) declassifying documents filed under seal; (k) seeking access to allegedly privileged documents; (l) reaching settlements with Defendants in the Taishan supply chain; and (m) negotiating the Taishan Settlement.

LSB took the lead on coordinating research and briefing for all major motions in the MDL and remand courts, which involved complex issues of: (a) personal jurisdiction over foreign corporations as well as Chinese State-Owned Enterprises and unique defenses under the Foreign Sovereign Immunities Act ("FSIA"); (b) the impact, if any, of the Supreme Court's ruling in *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco County*, 137 S. Ct. 1773 (2017) ("*BMS*"); (c) class certification in *Amorin* and Defendants' efforts to decertify the *Amorin* class; (d) the ability to employ formulaic class damages in *Amorin*; (e) enforcement of the Court's Contempt Order and Injunction against Taishan and its affiliates; (f) the preclusive effect of the MDL Court's orders on key issues upon remand; (g) cross-jurisdictional tolling of statutes of limitations; (h) the enforcement of defaults against BNBM; and (i) the attribution of Chinese Drywall markings and products at issue in the litigation to Taishan and/or BNBM.

LSB oversaw the completion of all projects in all jurisdictions where Plaintiffs' claims were adjudicated (Louisiana, Florida, Virginia, and elsewhere) and held regular meetings to

effectuate planned strategies. LSB interfaced with multiple defense teams so that agreement could be reached on scheduling and location of many dozens of fact and expert depositions, document productions, home inspections, and court hearings. LSB developed creative measures to resolve key obstacles regarding-: (a) an efficient means to take discovery of thousands of *Amorin* Plaintiffs through Supplemental Plaintiff Profile Forms ("SPPFs") and spreadsheets setting forth objective criteria to assess Plaintiffs' remediation damages; (b) the authenticity of Plaintiffs' evidence of damages and hearsay objections in Florida and Louisiana; (c) the respective positions of the parties regarding Product ID; (d) an organized and cost-effective method for challenging 1,700 *Amorin* Plaintiffs' remediation damages in Florida; (e) a Joint Plan for resolution of *Amorin* Plaintiffs' claims in Florida; (f) a schedule for discovery of 39 *Amorin* Select Plaintiffs in Louisiana and a schedule for the submission of proposals to resolve the remaining claims in Louisiana; and (g) a schedule to present proposals to the court for resolving 175 *Amorin* Plaintiffs' claims in Virginia.

LSB carefully orchestrated and managed the following common benefit efforts:

a.  Upholding the jurisdictional rulings against Taishan on appeal in the Fifth Circuit in early 2014.

b.  Enforcing the *Germano* judgment and obtaining a Contempt Order and Injunction against Taishan and its affiliates after Taishan failed to appear for a judgment debtor examination.

c.  Certifying the *Amorin* class and securing a hearing to assess classwide remediation damages. LSB oversaw fact and expert discovery and motion practice related to class damages. Arnold Levin attended the hearing and supervised the presentation of Plaintiffs' witnesses (Jacob Woody of BrownGreer and George J. Inglis of Berman & Wright), and the cross-examination of Defendants' expert witnesses (David Pogorolich and Dr. M. Laurentis Marais). LSB oversaw the preparation of comprehensive findings of fact and conclusions of law, resulting in the Court's Class Damages ruling, and the firm repeatedly defended that decision against multiple efforts to reconsider.

d.  Filing innovative Omnibus *Brooke* Complaints on behalf of 1,200 Plaintiffs in Louisiana, Florida, Virginia, and elsewhere in 2015. LSB assumed the administrative effort of compiling these complaints, which enabled individual counsel to engage their clients in the litigation with minimal effort and virtually no expense (since the cost and effort of filing and service of a single-Plaintiff complaint would have been cost prohibitive). LSB obtained an order allowing Plaintiffs to serve Defendants' counsel in the United States, sparing them the difficulty and expense of serving the foreign companies overseas.

e.  Engaging in efforts to serve SASAC through the Hague Convention.

f.  Conducting extensive alter ego and contempt discovery of Taishan and its parent entities, including serving written interrogatories and requests for expedited production of documents on Defendants and third parties, overseeing the translation of millions of pages of documents produced in Chinese,

6

preparing detailed corporate organizational charts showing Taishan's relationships with parent entities and affiliates, and taking depositions of numerous officers and directors of Defendants in New Orleans, New York, and Hong Kong. Arnold Levin and Sandra Duggan were responsible for preparing and/or taking (as 1st or 2nd chair) numerous Defendant depositions: Taishan (CHE Gang); BNBM (CHEN Yu); BNBM Group (ZHAO Yanming); CNBM (CHANG Zhangli); CNBM Group (Zhou Guoping); SONG Zhiping; CAO Jianglin; WANG Bing; JIA Tongchun; and PENG Wenlong. Fred Longer was responsible for the deposition of Plaintiffs' expert on Chinese corporate governance, Curtis J. Milhaupt.

g.   Conducting discovery of alleged Taishan affiliates and third parties throughout the U.S. and in Hong Kong to uncover violations of the Contempt Order. Fred Longer and Matthew Gaughan prepared and/or took (either as 1st or 2nd chair) depositions of: New Jersey Institute of Technology; Sunpin Solar Development, LLC; Walmart Stores, Inc.; CTIEC-TECO American Technology, Inc.; Hull Forest Products, Inc.; WH International, Inc.; Western Wood Lumber Co.; Morgan Stanley; International Business Machines, Corp.; BNK International, Inc., LLC; Triorient Trading, Inc.; PABCO Building Products, LLC (d/b/a Pabco Gypsum); and Stepan Company. Thereafter, LSB prepared hundreds of pages of briefs and exhibits documenting alleged contempt violations.

h.   Pursuing motions to compel responses to discovery and production of documents withheld as privileged against Defendants and third parties. LSB monitored the efforts of counsel assigned to these tasks.

i.   Preparing a detailed memorandum of law, with hundreds of exhibits, in opposition to CNBM Group's motion to dismiss under the FSIA.

j.   Preparing detailed responses, with hundreds of exhibits, in opposition to the CNBM/BNBM jurisdictional motions to dismiss, resulting in an Order finding an agency relationship between Taishan and BNBM under Florida and Virginia law and a single business enterprise among Taishan, BNBM, BNBM Group, and CNBM under Louisiana law. LSB assisted in Appellants' brief in the Fifth Circuit defending the Court's Jurisdiction Order over CNBM/BNBM.

k.   Obtaining a sanctions order against Taishan for discovery abuses for failure to timely produce relevant documents and hiding a key witness PENG Wenlong.

l.   Engaging in settlement negotiations with Taishan and BNBM/CNBM over many months in 2016, with the assistance of Special Master John Perry.

m.   Conducting intensive discovery regarding Taishan Product ID indicia in Plaintiffs' properties in Louisiana, Florida, Virginia, and elsewhere, with the assistance of Cal Mayo.

n.   Responding to numerous motions for interlocutory appeal on jurisdiction, class certification, and class damages, and motions to dismiss based on *BMS*, and motions to vacate defaults against BNBM/CNBM.

o. Filing protective actions in *Amorin* and *Brooke* in each jurisdiction where Plaintiffs' properties were located after *BMS* - Omni XXI – Omni XXXV.

p. Overseeing preparation of motions to stay cases on the Florida and Virginia *Amorin* complaints where the Affected Properties were located outside the State where remands occurred, and filing motions in the MDL to stay cases remanded to Florida and Virginia.

q. Opposing Defendants' motion to dismiss non-Florida claims remanded to Judge Cooke and non-Louisiana claims remaining in the MDL.

r. Organizing and leading the effort required in Florida to fight Defendants' repeated attempts to deny relief to 1,700 *Amorin* Plaintiffs. The enormity of this endeavor cannot be overstated, as it called for unwavering dedication of multiple teams working seven days a week to meet the demanding deadlines imposed by Judge Cooke, while at the same time advancing the cases of the Virginia and Louisiana *Amorin* Plaintiffs and undertaking to litigate the *Brooke* cases in the MDL and other jurisdictions. LSB worked directly with individual counsel for the Florida Priority Plaintiffs and supervised the time-consuming task of interfacing with all counsel for *Amorin* Plaintiffs in Florida as well as *pro se* litigants regarding evidentiary support for their remediation damages. LSB orchestrated a comprehensive strategy designed to resolve the litigation, which involved the following key components in Florida:

  i. Opposing Taishan's motion to reject application of the MDL Court's remediation damages formula;

  ii. Opposing Defendants' motion to enforce discovery rights in Florida, which sought to reopen issues of liability and causation;

  iii. Coordinating the response to Defendants' motions to dismiss for failure to complete an SPPF;

  iv. Securing a Trial Plan Order to (A) monetize remediation damages for 1,700 *Amorin* Plaintiffs through a Special Master process that verified square footage, ownership, and Product ID for each Affected Property; and (B) resolve 20 Priority Plaintiffs' claims for other losses;

  v. Vetting Florida *Amorin* Plaintiffs to select the best 20 cases to proceed to trial on other losses;

  vi. Producing documents, identifying fact witnesses and scheduling, preparing and attending depositions of Priority Plaintiffs and related witnesses. Keith Verrier attended virtually all of the Priority Plaintiff depositions and assisted individual counsel to make sure consistent legal positions were taken. He also prepared summaries of the Plaintiff depositions offering insight and guidance for future depositions;

8

      vii.   Analyzing and approving the protocol for inspection of Plaintiffs' homes and coordinating and monitoring home inspections;

    viii.   Developing experts on other losses and engaging in expert discovery. Fred Longer was responsible for preparing and/or taking (as 1st or 2nd chair) Defendants' experts Marcie D. Bour (forensic accountant), Henry H. Fishkind (economist), and Richard J. Roddewig (real estate damages), and he defended Plaintiffs' expert Randall Bell (real estate damages) and Michael P. Elkin (forensic accountant);

      ix.   Conducting Product ID discovery of Taishan and BNBM and briefing and arguing disputed Product ID issues to the Special Master;

       x.   Engaging in discovery related to contests asserted by Defendants opposing Plaintiffs' claims for remediation damages, and preparing multiple briefs and arguing these issues before the Special Master;

      xi.   Preparing an omnibus response to Defendants' motions for summary judgment with respect to the Priority Plaintiffs selected for trial; and

     xii.   Preparing motions *in limine* and individual Priority Plaintiffs for trial.

s.   Updating remediation damages calculations for all *Amorin* Plaintiffs in conformity with 2019 national R.S. Means data.

t.   Leading the effort in 2018-2019 to secure a Trial Plan Order in Virginia intended to monetize as expeditiously as possible remediation damages for 175 *Amorin* Plaintiffs following remand to Judge Davis in Virginia, giving preclusive effect to this Court's pre-remand orders approving remediation formula damages and establishing liability through defaults.

u.   Leading the effort to obtain Orders from the MDL Court intended to resolve the claims of *Amorin* Plaintiffs in Louisiana, including a discovery order for 39 Select Plaintiffs, a Trial Plan order for the resolution of the Select Plaintiffs' cases, and an order regarding the claims of former owners. LSB prepared the briefs setting forth the Trial Plan schedules and suggesting the use of a Special Master (Cal Mayo) to verify square footage, ownership, and Product ID so that formula remediation damages could be calculated. LSB Partner Keith Verrier and Associate Nicola Serianni attended many of the Select Plaintiff depositions, and they prepared summaries afterwards. When needed, Mr. Verrier prepared the witnesses for their depositions beforehand.

v. Providing the Court with lists of *Brooke* Plaintiffs in each jurisdiction subject to remand and leading the effort to litigate the *Brooke* Plaintiffs' claims in Florida and Virginia following remand in 2019.

w. Assisting in the briefing on the applicability of statutes of limitations and cross-jurisdictional tolling as requested by the Court following BNBM's motion to dismiss *Brooke* and *Abner*.

x. Leading the global Taishan settlement negotiations resulting in an agreement to $248 million in cash for Taishan claimants, preparing the Class Settlement Agreement and exhibits; preparing preliminary approval papers, Class Notices, and estimate letters for all known Class Members on the Master Spreadsheet; providing the Allocation Neutral with relevant Court documents related to Product ID, class damages, class certification, and Defendants' contests to remediation damages; overseeing preparation of the Master Spreadsheet; overseeing preparation of press releases; overseeing development of the Settlement Website; responding to Class Member inquiries; preparing final approval papers and responding to objections; and presenting the Settlement to the Court for final approval. LSB continues to field calls from Class Members and will provide these services until the Settlement is fully administered.

y. Funding the costs of pursuing recalcitrant Defendants determined to drag out the proceedings and revisit and/or appeal or vacate virtually every decision made by the MDL Court, the remand courts, and the Special Master in Florida.

The FAC recommends an attorneys' fee allocation for Levin, Sedran & Berman of $9,800,000.00 (34.20% of the total), reimbursement of $759,837.15 in held costs, and reimbursement of $608,133.01 in outstanding assessments. In addition, the FAC recommends that the firm be reimbursed for expenses incurred in connection with FAC duties (fee interview transcripts, travel), totaling $13,018.45.

## 2) Herman Herman & Katz

Herman Herman & Katz ("HHK") performed 27,182.50 common benefit hours during the Relevant Period (January 1, 2014 through December 31, 2019), and incurred $25,625.58 in held costs from January 1, 2015 through December 31, 2019, which were accepted by the Court-appointed CPA, Philip A. Garrett, pursuant to PTO 9. Mr. Garrett removed 1,497.00 hours that were coded "L190" for work related to the Knauf fees and/or the prior fee dispute. Then, the FAC subtracted an additional 1,716.23 common benefit hours for the firm, based on the FAC's assessment of the firm's time. HHK's net common benefit hours are 23,969.27, and the firm's net held costs are $25,625.58. The firm's lodestar total is $13,549,223.75, using the firm's 2014 hourly rates, which is a relevant consideration given the time-value of money over the span of the past six years of litigation against Taishan without compensation. HHK contributed $608,133.00 in assessments to the litigation during the Relevant Period, which have not been reimbursed. The

firm filed a fee application on January 31, 2020 [Rec. Doc. 22542] and made a presentation before the FAC on March 3, 2020.

Russ Herman has served as Plaintiffs' Liaison Counsel, Class Counsel for the Knauf, Global, Banner, InEx, L&W, and Allen Settlements, and Co-Chair of the Knauf Fee Committee. Stephen Herman was appointed as Class Counsel for the Taishan Settlement. Lenny Davis served as Secretary of the Knauf Fee Committee and he is a member of the Taishan FAC. He has also assisted Russ Herman with Liaison Counsel duties.

HHK has been a dedicated leader in this litigation since its inception and throughout the Relevant Period. The firm prepared all joint Status Conference reports and agendas, attended every Status Conference, and managed the finances of the case, which required oversight of Shared Expenses. Further, the firm assisted Plaintiffs with preservation issues, and continued to implement the Knauf and related class settlements. HHK assembled listings and vetted qualified inspectors for property inspections and inspection protocols and provided recommendations to attorneys and claimants in the Gulf South states for inspections of their properties. Mr. Herman also oversaw and organized the preparation of the comprehensive Taishan Trial Package.

Russ Herman argued the Taishan jurisdictional appeal in the Fifth Circuit in 2014. Then, after Taishan's parents entered the litigation and Taishan returned to the jurisdiction in 2015, Russ Herman was principally responsible for overseeing the alter ego/contempt discovery and deposition strategy. HHK read and summarized all corporate public reports published by Defendants on two Chinese stock exchanges. For many months, Russ Herman managed teams of document reviewers and translators in their analysis and evaluation of 1.8 million pages produced by Defendants, and he led the effort to challenge Defendants' confidentiality designations. HHK retained Yan Gao, a Chinese attorney with an LLM in American Business Law from Tulane Law School, a Juris Master (JD equivalent) from China University of Political Science and Law (Beijing, China), and a Graduate from Jishou University Foreign Language Department (Hunan, China) to assist with legal issues, research and translation, and six Chinese lawyers at Tulane Law School to assist in translation were interviewed and selected. HHK also vetted, interviewed and retained an investigator, who conducted investigations for the Plaintiffs' Steering Committee ("PSC") in Hong Kong and mainland China resulting in the discovery of the locations of a key witness PENG Wenlong and his missing computer containing more than 300,000 Taishan documents. HHK prepared numerous requests for admission, motions to compel, and participated in hearings and arguments as to machine translations, privilege, failure to produce documents, and failure to produce a witness.

Russ Herman, along with Arnold Levin, took numerous key depositions of Defendants' officers and directors in New Orleans, Hong Kong, and New York, including Taishan (CHE Gang); BNBM (CHEN Yu); BNBM Group (ZHAO Yanming); CNBM (CHANG Zhangli); CNBM Group (ZHOU Guoping); SONG Zhiping; CAO Jianglin; WANG Bing; JIA Tongchun; and PENG Wenlong. He also argued numerous motions on key issues of FSIA and jurisdiction. Further, HHK was involved with the motion to impose sanctions on Taishan for discovery abuses regarding PENG Wenlong.

In 2016, Russ Herman engaged in settlement negotiations with Taishan and BNBM/CNBM over many months in 2016, with the assistance of Special Master John Perry. Then, Lenny Davis, along with Sandra Duggan and others, worked for months with Cal Mayo to identify Product ID issues in dispute with Taishan. Together, they developed the Taishan Product ID "bible" and the various Product ID buckets that served as indicia in the Taishan Settlement. Mr. Davis also helped negotiate the SPPFs adopted by the MDL Court for *Amorin* Plaintiffs.

HHK led the effort to establish a trial plan strategy in Louisiana for *Amorin* Plaintiffs. The firm assumed a leadership role in the preparation of Louisiana *Amorin* Select Plaintiffs for trial. They prepared several Select Plaintiffs' cases, which required the production of witness lists, documents, and depositions of the homeowners.

In addition, Steve Herman assisted with and attended the Product ID deposition of Taishan in Atlanta in January 2019. He also helped with trial plan strategy and briefing, as well as Product ID briefing to, and appeal from, rulings of the Special Master in Florida. Steve Herman was a member of the team organizing and preparing for the trials of Florida Priority Plaintiffs' other losses. He contributed to the decisions regarding experts. Further, Steve Herman prepared key briefing on statutes of limitations in *Brooke* and he was relied upon for strategy decisions.

When the individual Florida *Amorin* Settlement was announced, Steve Herman played an integral role in protecting the *Amorin* class, negotiating with Jimmy Faircloth, and seeking acceptable court-authorized communications to the class.

Steve Herman, Bob Peck, and Charlie King took the lead on preparing the appellate brief on the CNBM/BNBM jurisdiction appeal.

Steve Herman was a key member of the Taishan negotiating team. He participated in the mediation in Austin, Texas in May 2019. He helped draft the Settlement Agreement and Class Notices, as well as the preliminary and final approval papers. Steve Herman worked with the Allocation Neutral to provide information regarding a fair allocation model to distribute the Taishan Settlement Funds among Eligible Class Members. He also was involved in the Final Fairness Hearing and implementation of the Settlement. This has required numerous communications with Class Members and their counsel.

HHK continues to field requests from *pro se* claimants and respond to Court inquiries regarding individual Taishan claims.

The FAC recommends an attorneys' fee allocation for Herman Herman & Katz of $4,850,000.00 (16.93% of the total), reimbursement of $25,625.58 in held costs, and reimbursement of $608,133.00 in outstanding assessments. In addition, the FAC recommends that the firm be reimbursed for expenses incurred in connection with FAC duties, totaling $1,947.51.

### 3) <u>Colson Hicks Eidson, PA</u>

Colson Hicks Eidson, PA ("Colson") performed 2,826.20 common benefit hours during the Relevant Period (January 1, 2014 through December 31, 2019), and incurred $82,141.87 in

held costs from January 1, 2015 through December 31, 2019, which were accepted by the Court-appointed CPA, Philip A. Garrett, pursuant to PTO 9. The FAC added an additional 3,329.90 common benefit hours and $1,085.65 in held costs for the firm, based on the FAC's assessment of the firm's time and expenses. Colson's net common benefit hours are 6,156.10, and the firm's net held costs are $83,227.52. The firm's lodestar total is $2,919,383.75, using the firm's 2014 hourly rates, which is a relevant consideration given the time-value of money over the span of the past six years of litigation against Taishan without compensation. Colson contributed $80,000.00 in assessments to the litigation during the Relevant Period, which have not been reimbursed. The firm filed a fee application on January 31, 2020 [Rec. Doc. 22549] and made a presentation before the FAC on March 3, 2020.

Ervin Gonzalez served as a member of the PSC, and following his death, Patrick Montoya was appointed to the PSC. Mr. Montoya has also served as Class Counsel for the Taishan Settlement and he is a member of the Taishan FAC.

Colson was intimately involved in establishing Taishan's jurisdiction in Florida. Mr. Montoya took multiple depositions in Hong Kong of Taishan employees. He also took the lead in establishing specific Florida contacts by Taishan through multiple depositions in Florida, including Ivan Gonima. Mr. Montoya uncovered the Exclusive Distributorship Agreement between Taishan and Gonima's company, a linchpin to the jurisdictional argument. Moreover, the firm took the lead in arguing Florida jurisdiction, successfully, both in the MDL and in Florida state court.

Accordingly, upon remand of *Amorin* and *Brooke* cases in Florida in 2018, the firm dedicated two lawyers full-time to the remand litigation, Mr. Montoya and Ms. Natalie Rico. At the first hearing before Judge Cooke, Mr. Montoya was appointed as lead counsel for 1,700 *Amorin* Plaintiffs. He has extensive experience in the Southern District of Florida, having served on the Southern District of Florida Local Rules Committee.

The importance of the Florida cases, and the firm's role in steering them and keeping them on track with the pressure of trials scheduled for July 2019, was critical. There were more Chinese Drywall victims in Florida than any other state. Their cases had the most aggressive trial schedule, and they would be tried first among all states.

Mr. Montoya assumed the role of lead trial counsel in Florida. The firm also brought with it the experience of having successfully tried a Chinese Drywall case to a jury in the Seifart case, resulting in a $2.5 million verdict for Plaintiffs. That case, whose materials were included in the MDL trial package, served as base for the trial work done in the remands against Taishan.

The firm's leadership role in Florida included the following:

    a.  <u>Preclusive Effect</u>: Defendants argued that the MDL Court's rulings did not carry over to the Florida remands. Had Taishan prevailed, the case would essentially have had to start over, and Plaintiffs would likely have faced many more years of litigation with uncertain results. Mr. Montoya argued the motion before Judge Cooke and prevailed, which expedited the cases towards trial.

b. <u>Selection of Priority Claimants</u>: the firm coordinated the selection of Priority Claimants from the Florida lawyers' inventories, which required ranking and presenting those cases to the team. The firm also had four of its own clients that were selected as Priority Claimants.

c. <u>Experts</u>: Based upon its experience in Seifart, the firm was at the ready to vet experts for causation and damages, to wit, an accountant, real estate appraiser, real estate agent, chemist and metallurgist. After vetting experts, the firm also took the lead in coordinating: a) the materials the experts needed to review, b) managing the experts' reports and document production, c) preparing the experts for deposition, and d) coordinating supplemental expert reports.

d. <u>Florida law</u>: The firm was relied upon for its knowledge of Florida law, particularly the legal theories that would maximize damages for the Class, such as developing the unique theory that would allow recovery of both remediation and diminution-in-value/stigma damages. In addition, the firm assisted with condominium associations whose claims were prevalent under Florida law.

e. <u>Discovery & Trial Preparation</u>: Mr. Montoya, along with Richard Serpe, took the Product ID deposition of Taishan's corporate representative CHE Gang. The firm also took the lead in the depositions of Defense experts Roddewig and Cohen. The firm took the lead in preparing and defending Plaintiffs' expert witnesses: Elkin, Graziano and Greenblatt. The firm assisted in preparing and defending the depositions of Elkin, Krantz and Streit. Further, the firm analyzed and compiled the list of documents and negotiated a stipulation with Defendants regarding hearsay and authenticity at trial.

f. <u>Product ID and Contests Hearings before the Special Master</u>: Mr. Montoya helped prepare the PowerPoint and presented the opening argument at the Product ID hearings and portions of the argument on the various Product ID "buckets." Mr. Montoya also prepared for and presented at the hearings on Defendants' contests.

g. <u>Filings in the SDFL</u>: As Florida lead counsel, the firm filed in excess of 120 CM/ECF entries in *Amorin* and *Brooke* in the Southern District of Florida. Each document was reviewed by Mr. Montoya and/or Ms. Rico before it was filed. Any orders that had to be submitted to Judges Cooke and Williams were done by the firm *via* email pursuant to the SDFL Local Rules.

h. <u>Public Relations</u>: The firm took the lead in securing a letter from a bipartisan coalition of the Florida congressional delegation to Secretary Ross and Ambassadors Branstad and Lighthizer requesting that they take action within applicable rules and regulations as to the "recalcitrant Chinese companies" to resolve this matter. The letter resulted in press conference where victims were able to meet their local congressional representatives and advise the public that the Chinese Drywall problem was serious, ongoing and required resolution.

14

      i.   <u>Mediation & Settlement</u>: Mr. Montoya was charged with selecting the mediator for the Florida remand cases. He recommended Mr. John Freud based upon his experience and knowledge of Mr. Freud's history and talent, and Defendants agreed. Mr. Freud was essential to resolving this case. Mr. Montoya also participated in the mediation, assisting Lead Counsel when called upon and was appointed Florida Settlement Class Counsel. Mr. Montoya also participated in multiple meetings with Lead Counsel and Mr. Faircloth regarding the Florida Individual Settlement.

During the conduct of this litigation, the firm developed personal relationships with counsel for Taishan, including Taishan's local counsel in Miami whom the firm knew *via* other cases. These relationships assisted in moving the remanded cases expeditiously.

From the filing of one of the first cases in Florida at the inception of this litigation, counseling and serving several hundred clients who were victimized by Chinese Drywall, many of whom lost their homes to foreclosure, the firm remained committed to this case and has remained ready, willing and able to serve, as demonstrated by its work and effort in the Florida remands.

The FAC recommends an attorneys' fee allocation for Colson Hicks Edison, PA of $2,000,000.00 (6.98% of the total), reimbursement of $83,227.52 in held costs, and reimbursement of $80,000.00 in outstanding assessments. In addition, the FAC recommends that the firm be reimbursed for expenses incurred in connection with FAC duties, totaling $11,439.21.

### 4) **Richard J. Serpe, P.C. & Breit Cantor Grana Buckner**

Richard J. Serpe, P.C. ("Serpe") and Breit Cantor Grana Buckner (f/k/a Breit Drescher Imprevento) ("Breit") performed 8,495.85 common benefit hours during the Relevant Period (January 1, 2014 through December 31, 2019), and incurred $39,511.76 in held costs from January 1, 2015 through December 31, 2019, which were accepted by the Court-appointed CPA, Philip A. Garrett, pursuant to PTO 9. Mr. Garrett removed 644.00 hours that were coded "L190" for work related to the Knauf fees and/or the prior fee dispute. Then, the FAC subtracted an additional 31.25 common benefit hours and added $24,451.65 in held costs for the firms, based on the FAC's assessment of the firms' time and expenses. Serpe's and Breit's net common benefit hours are 7,820.60, and the firms' net held costs are $63,963.41. The firms' lodestar totals are $3,134,629.75, using the firms' 2014 hourly rates, which is a relevant consideration given the time-value of money over the span of the past six years of litigation against Taishan without compensation. Serpe and Breit contributed $70,236.00 in assessments to the litigation during the Relevant Period, which have not been reimbursed. Serpe and Breit filed a joint fee application on January 31, 2020 [Rec. Doc. 22545] and made a presentation before the FAC on February 20, 2020.

Richard Serpe has served as a PSC member and Class Counsel for the four Virginia Settlements, and the Allen and Taishan Settlements. He also served as a member of the Knauf Fee Committee and he is a member of the Taishan FAC. In addition, Mr. Serpe served as Lead Counsel in Virginia. The firms were also appointed by Judge Mary Jane Hall in the Norfolk Circuit Court of Virginia to serve as lead and liaison counsel in the state consolidated drywall litigation. These

appointments reflected the firms' ability to accept big picture assignments, work without oversight, and provide leadership for teams of attorneys engaged in diverse mission critical tasks.

From their first contacts from worried homeowners over eleven years ago, the firms have remained engaged on a daily basis with the members of this class, counseling and encouraging them through severe economic and personal hardships. The firms achieved great success in pursuing the downstream Defendants (builders, installers, and insurers) that utilized Taishan's Venture Supply drywall. They employed the Virginia state court consolidated drywall docket to secure multiple trial settings against builders and installers and achieve scores of settlements including with insurance carriers, requiring the appointment of a special master for distribution of settlement funds among qualified claimants. As a result, the Taishan/Venture Supply claimants amassed millions of dollars of settlement payments representing 26.38% of their overall claim value. In other words, over ¼ of the entire claim value had already been obtained from downstream Defendants. Thus, the Virginia litigation produced unprecedented recoveries for class members.

Further, the firms' ingenuity and resourcefulness in pursuing the Taishan/ Venture Supply Default Judgment assigned to Virginia claimants provided a mechanism to seek a liquidated judgment against Taishan in state court prior to actions being remanded from federal court. This was significant in light of Defendants' well-documented pattern of using delay tactics to avoid Chinese Drywall judgments. Although monumental progress was made on jurisdiction, class damages, and alter ego, Taishan was not placed in a position where they were ordered to pay money damages to any individual claimant other than the *Germano* seven. During the conduct of the Virginia state court litigation against Taishan, Serpe developed personal relationships with defense counsel, building credibility through the successful pursuit of that case and the successful negotiation of the Allen settlement, which obtained class wide approval and acceptance of the special master's allocation of all settlement funds.

The firms' management of the parallel Virginia state court litigation in an aggressive fashion resulted in the advancement of state-of-the-art drywall litigation, continuing the scientific, expert, and practical victories achieved in the 2010 timeframe throughout the following decade. For example, the firms obtained and continue to warehouse significant quantities of full Taishan drywall boards. Utilizing chain-of-custody controls, the firms conducted follow-up laboratory testing demonstrating that Taishan drywall failed critical components of ASTM standards. Further, the firms conducted legal research and drafted motions demonstrating that U.S. law not only required that this testing be conducted prior to export, but that Taishan violated multiple U.S. laws in their lax labeling practices. These issues were heavily litigated in the Virginia consolidation, and provided precedent for arguments ultimately made in the remanded actions.

Mr. Serpe, together with Patrick Montoya, took the deposition of Taishan in January 2019, conducting extensive and successful discovery of these labeling practices which significantly contributed to Product Identification ("PID") litigation and trial against Taishan in Florida. The firms also overcame multiple challenges to the *Germano* Remediation Protocol in the Virginia consolidation by Defendants not covered by the default judgment. These Defendants advanced arguments that so-called "real world" remediations could be accomplished at a fraction of the cost, and that scientific advances after 2010 warranted wholesale revision of the Court's protocol. The firms continued to develop and refine the scientific and practical arguments in favor of the full

16

protocol across dozens of trial settings in Virginia. The firms' leadership in this area provided a significant tactical advantage when Taishan raised these issues in their Florida remand expert reports and motion practice.

The firms also developed and defended claims for extensive damages for current and former owners, owners who partially remediated, and owners who lost their homes in foreclosure or bankruptcy. In addition, the firms advanced damages for stigma and diminution in value in state court. This practical experience in complex analytical challenges provided significant advantage when identical issues were raised in the actions remanded to Virginia.

As Lead Counsel in Virginia on the cases remanded to Judge Davis, the firms secured the adoption of prior MDL rulings, a trial plan and penultimate ruling on former owners with respect to all Venture Supply remanded cases. They also served as co-trial counsel for the remanded actions in Florida, attending status conferences, accepting assignments for developing and defending expert witnesses and briefing *Daubert* issues related to Brian Krantz, Lori Streit, Michael Elkin, Randall Bell and Anthony Graziano in Florida and California, and participating in resolution of product ID attribution issues before the Special Master. Until settlement was reached in May 2019, two partners of the firms were committed to attend six weeks of bellwether trials in Florida and had undertaken extensive preparation as those trials were rapidly approaching.

The firms also pursued discovery against Taishan with respect to their allegation that manufacturers other than Taishan and Knauf produced reactive CDW, and further debunked their alleged "chemical product ID" arguments presented to the Special Master in the SDFL.

The firms provided liaison to Virginia Senators and Congressmen who are engaged in potential political solutions to litigation. They also undertook monumental efforts to identify bellwether Plaintiffs proffered as part of the PSC's trial plans in both Louisiana and Virginia.

Mr. Serpe participated in all aspects of the global class settlement negotiations, attended the mediation in Austin in May of 2019, serving as class counsel and investing extensive time and expense in assisting with obtaining preliminary and final approval of the class settlement.

As class counsel for the six class settlements for Taishan/Venture class members, the firms remained fully engaged with this class for the entire pendency of the litigation. From this perspective, the firms served as liaison to Court-appointed settlement administrators (Garretson Group and BrownGreer) as fair and equitable allocations of those settlements were distributed. The settlement administrators faced novel questions with respect to real property and other losses for every member of the national class. Appeals of the Special Master's allocation resulted in hearings before Judge Fallon providing further guidance in resolving settlement allocation equitably. As class counsel, the resolution of these issues provided important insight when similar issues were faced in the administration of the global settlement with Taishan.

These efforts required unceasing communications in person, town hall style meetings, phone conferences and correspondence. The firms prepared submissions on behalf of *pro se* class members in order to comply with Court ordered deadlines for supporting documentation including square footage declarations. The firms also communicated the challenges faced by continued

litigation and updated the class on progress and setbacks for the entire decade. Given this extraordinary level of engagement, the firms, serving as class counsel were able to obtain 100% acceptance of the Taishan/Venture claimants, with no opt outs or objections.

The FAC recommends an attorneys' fee allocation for Richard J. Serpe, P.C. & Breit Cantor Grana Buckner of $2,000,000.00 (6.98% of the total), reimbursement of $63,963.41 in held costs, and reimbursement of $70,236.00 in outstanding assessments. In addition, the FAC recommends that the firm be reimbursed for expenses incurred in connection with FAC duties, totaling $6,934.64.

### 5) Barrios, Kingsdorf & Casteix

Barrios, Kingsdorf & Casteix ("BKC") performed 10,396.60 common benefit hours during the Relevant Period (January 1, 2014 through December 31, 2019), and incurred $22,850.55 in held costs from January 1, 2015 through December 31, 2019, which were accepted by the Court-appointed CPA, Philip A. Garrett, pursuant to PTO 9. Mr. Garrett removed 682.60 hours that were coded "L190" for work related to the Knauf fees and/or the prior fee dispute. Then, the FAC subtracted an additional 61.15 common benefit hours for the firm, based on the FAC's assessment of the firm's time. BKC's net common benefit hours are 9,652.85, and the firm's net held costs are $22,850.55. The firm's lodestar total is $4,252,650.00, using the firm's 2014 hourly rates, which is a relevant consideration given the time-value of money over the span of the past six years of litigation against Taishan without compensation. BKC contributed $54,718.00 in assessments to the litigation during the Relevant Period, which have not been reimbursed. The firm filed a fee application on January 31, 2020 [Rec. Doc. 22546] and made a presentation before the FAC on March 4, 2020.

Dawn Barrios was appointed to the PSC and she served as a member of the Knauf Fee Committee. Throughout the litigation, BKC was dedicated to the successful prosecution of Plaintiffs' claims. Ms. Barrios helped with the administration of the Virginia class settlements and Zachary Wool assisted with voluminous document review related to alter ego and contempt. Lead Counsel relied heavily upon this firm, and Emma Schwab in particular, for numerous common benefit contributions throughout the Relevant Period, including:

      a.  creating the universal repository for all property claimed to have Taishan drywall, the Master Spreadsheet, which was the only site for all information about each property with a Taishan claim;

      b.  identifying the various PID markings which have come to be known as "buckets" and amassing evidence to tie these markings to Taishan;

      c.  vetting all claims for critical criteria from product identification to under air square footage to ownership status to whether assignments for remediation and/or at the time of sale were made to a third party, to whether there was any partial or complete remediation;

d.  vetting all claims for inclusion on Omni XX, the *Brooke* complaint, and all subsequent *Brooke* interventions;

e.  revising and confirming the information on the principal exhibit in connection with the June 9, 2015 class damages hearing (Ex.10/79);

f.  coordinating all state court cases with the MDL and particularly working with Richard Serpe on Virginia discovery and trials;

g.  working with Lead and Liaison counsel to create SPPFs and work with BrownGreer to perfect the submission process;

h.  obtaining from counsel the information needed on the SPPFs for each of their clients and directing counsel how to obtain the information if missing;

i.  interfacing with individual counsel and *pro se* claimants regarding all aspects of the Taishan claims;

j.  opposing dismissal of individual claims sought by Taishan for failure to complete SPPFs, and communicating with each counsel to defeat the dismissal;

k.  preparing discovery requests to Defendants regarding Product ID and creating the outline for the 30(b)(6) deposition of Taishan;

l.  negotiation with opposing counsel regarding Defendants' contests and claims for setoffs on all 1,700 Florida *Amorin* Plaintiffs and assisting with the defenses particular to each property;

m.  preparing the global response to Defendants' contests and setoffs, which impacted all Florida *Amorin* Plaintiffs;

n.  vetting more than 100 and selecting 20 Priority Plaintiffs for trials in Florida and 20 Select Class Claimants in Louisiana;

o.  working with Priority Plaintiffs' and Select Class Claimants' individual counsel to meet all Court imposed deadlines and collect all evidence necessary to support the Plaintiffs' claims;

p.  preparing the trial Plaintiffs and attending their depositions; and

q.  assisting with writing and editing, and oftentimes preparing the first drafts, of briefs filed in Florida, Louisiana and Virginia post-remand as well as submissions and oral presentations to the Special Master appointed in Florida.

Ms. Schwab was a key member of the Taishan negotiating team. She helped prepare global damages calculations, participated in the mediation in Austin, Texas in May 2019, and she assisted in the preparation of the Settlement Agreement, Class Notices, preliminary and final approval papers and the Final Fairness Hearing presentation.

The FAC recommends an attorneys' fee allocation for Barrios, Kingsdorf & Casteix of $1,925,000.00 (6.72% of the total), reimbursement of $22,850.55 in held costs, and reimbursement of $54,718.00 in outstanding assessments.

### 6) Irpino Law Firm

Irpino Law Firm ("Irpino") performed 8,321.76 common benefit hours during the Relevant Period (January 1, 2014 through December 31, 2019), and incurred $54,109.21 in held costs from January 1, 2015 through December 31, 2019, which were accepted by the Court-appointed CPA, Philip A. Garrett, pursuant to PTO 9. Mr. Garrett removed 202.00 hours that were coded "L190" for work allegedly related to the Knauf fees and/or the prior fee dispute. Then, the FAC added 515.80 common benefit hours and $1,000.32 in held costs for the firm, based on the FAC's assessment of the firm's time and expenses. Irpino's net common benefit hours are 8,635.56, and the firm's net held costs are $55,109.53. The firm's lodestar total is $3,221,005.50, using the firm's 2014 hourly rates, which is a relevant consideration given the time-value of money over the span of the past six years of litigation against Taishan without compensation. Irpino contributed $72,039.00 in assessments to the litigation during the Relevant Period, which have not been reimbursed. The firm filed a fee application on January 31, 2020 [Rec. Doc. 22540] and made a presentation before the FAC on February 20, 2020.

Anthony Irpino was appointed to the PSC. He and Pearl Robertson regularly worked on nearly all aspects of the Taishan case. They were heavily involved in alter ego and contempt discovery and briefing, as well as other matters. Some examples of their extensive leadership work include:

    a.  written discovery (*e.g.*, research regarding identification of facts to discover, meetings with select team to strategize over written discovery, drafting interrogatories and/or requests for production of documents, drafting notices of 30(b)(6) depositions, analyzing Taishan discovery responses and drafting motions to compel);

    b.  document review (*e.g.*, leading document review efforts, creating a system for electronic review of materials, working with translation teams for identification of "hot docs" for deposition, analyzing and learning machine translation and creating a dictionary of machine translated words, supervising document reviewers);

    c.  depositions (*e.g.*, preparing for and taking many depositions of key witnesses, finalizing exhibit selection, negotiating translation disputes with Defendants);

d. <u>briefing</u> (*e.g.*, drafting various aspects of many critical briefs on FSIA, jurisdiction, and contempt);

e. <u>privilege</u> (*e.g.*, overseeing all aspects of privilege-related work, analyzing and challenging privilege logs of Defendants, and challenging Defendants' claw-back claims and privilege redactions);

f. <u>confidentiality</u> (*e.g.*, overseeing confidentiality-related work, challenging Defendants' confidentiality claims, negotiating with Defendants to de-designate documents marked as confidential, coordinating with the Court to lift the seal on materials and refile documents as public);

g. <u>Product ID</u> (*e.g.*, analyzing and reviewing thousands of pages of Product ID documents, preparing deposition exhibits for Taishan's corporate witness, participating in Product ID briefing and oral argument, and preparing and submitting deposition interrogatories to BNBM's corporate witness);

h. <u>Remand</u> (*e.g.*, working closely with lead counsel in Virginia, Louisiana, Florida and for the PSC to address remanded cases, participating in hearings, briefings, product identification disputes, analyzing expert reports, attending corporate depositions);

i. <u>Settlement</u> (*e.g.*, working closely with Settlement Class Counsel on the Taishan settlement agreement, Findings of Fact Conclusions of Law, approval papers and the Final Fairness Hearing presentation).

The FAC recommends an attorneys' fee allocation for Irpino Law Firm of <u>$1,925,000.00</u> (6.72% of the total), reimbursement of <u>$55,109.53</u> in held costs, and reimbursement of <u>$72,039.00</u> in outstanding assessments.

## 7) <u>Gainsburgh, Benjamin, *et al.*</u>

Gainsburgh, Benjamin, David, Meunier & Warshauer, LLC ("Gainsburgh") performed 5,108.25 common benefit hours during the Relevant Period (January 1, 2014 through December 31, 2019), and incurred $24,281.77 in held costs from January 1, 2015 through December 31, 2019, which were accepted by the Court-appointed CPA, Philip A. Garrett, pursuant to PTO 9. Mr. Garrett removed 1,021.70 hours that were coded "L190" for work related to the Knauf fees and/or the prior fee dispute. Then, the FAC subtracted an additional 52.70 common benefit hours for the firm, based on the FAC's assessment of the firm's time. Gainsburgh's net common benefit hours are 4,033.85, and the firm's net held costs are $24,281.77. The firm's lodestar total is $1,447,431.25, using the firm's 2014 hourly rates, which is a relevant consideration given the time-value of money over the span of the past six years of litigation against Taishan without compensation. Gainsburgh contributed $54,340.00 in assessments to the litigation during the Relevant Period, which have not been reimbursed. The firm filed a fee application on January 31, 2020 [Rec. Doc. 22547] and made a presentation before the FAC on March 3, 2020.

Jerry Meunier was appointed to the PSC and he served as Class Counsel for several settlements. In addition, Mr. Meunier was a member of the Knauf Fee Committee. At critical junctures, Lead Counsel relied on Mr. Meunier for contributions to overall strategy decision-making and for key input on briefing and oral argument to the Court, including with regard to a trial plan for resolution of the Louisiana cases.

In 2014, Mr. Meunier pursued a judgment debtor examination against Taishan following the establishment of jurisdiction over Taishan, which led to the entry of the Contempt Order and Judgment when Taishan refused to appear on open court.

Beginning in the summer of 2015, Mr. Meunier was a principal participant in the PSC's formulation of the legal basis for building on this analysis to support the exercise of personal jurisdiction over Taishan's parent entities. This entailed a review and analysis of voluminous discovery materials reflecting the "alter ego" relationships between and among Taishan and its parent entities, as well as active involvement in the preparation of intra-PSC memoranda and pleadings addressed to Defendants' jurisdictional challenges. Mr. Meunier investigated Defendants' relationship and contacts with Alibaba. Rachel Sternlieb was heavily involved in alter ego and contempt discovery, preparation for depositions, and briefing. Her work was heavily relied upon by Lead and Liaison Counsel. In the latter part of 2015, the firm consulted with an expert on Chinese business activities and culture, Rosemary Coates. The firm also reviewed privilege logs and was involved in the spoliation hearing related to PENG Wenlong's missing computer.

Mr. Meunier served as co-lead trial counsel with Chris Seeger in the Taishan class damages trial of June 9, 2015. He traveled to Atlanta for depositions of Taishan's experts, and he deposed Taishan's expert in statistics, Laurentius Marais. He also cross-examined this expert at trial and questioned Plaintiffs' witnesses on remediation issues and the square footage formula to be utilized in calculating class-wide remediation damages. Mr. Meunier participated in the preparation of the proposed Findings of Fact and Conclusions of Law following this trial and drafted and edited the PSC's post-trial briefing on the core issue of how to calculate class-wide remediation damages. These class damages efforts were intense for all members of the trial team, but they made important contributions to the PSC's, and hopefully, the Court's understanding of the need to resolve the remaining issues of Product ID, remediation cost, and property ownership, before any global or class settlement could be negotiated.

In 2019, Gainsburgh assisted with vetting *Amorin* cases in Louisiana to participate in the discovery pool. The firm represented Select Plaintiffs Lana Alonzo and Brian and Barbara Lewis, prepared witness lists for them, produced documents, and prepared for and participated in their depositions.

Mr. Meunier briefed and argued the question whether the Court's Class Damages Order should be extended to former owners. The resulting decision by the Court allowed former owners to prove a diminution of value based on the square footage remediation costs of repair, and it proved to be a key leverage leading to the global Taishan Settlement. The firm also contributed to the preclusive effect briefing in Florida before Judge Cooke.

The FAC recommends an attorneys' fee allocation for Gainsburgh, Benjamin, David, Meunier & Warshauer, LLC of $1,200,000.00 (4.19% of the total), reimbursement of $24,281.77 in held costs, and reimbursement of $54,340.00 in outstanding assessments.

## 8) Seeger Weiss, LLP

Seeger Weiss, LLP ("Seeger") performed 4,255.00 common benefit hours during the Relevant Period (January 1, 2014 through December 31, 2019), and incurred $78,009.43 in held costs from January 1, 2015 through December 31, 2019, which were accepted by the Court-appointed CPA, Philip A. Garrett, pursuant to PTO 9. Mr. Garrett removed 310.25 hours that were coded "L190" for work related to the Knauf fees and/or the prior fee dispute. Then, the FAC subtracted an additional 175.00 common benefit hours for the firm, based on the FAC's assessment of the firm's time. Seeger's net common benefit hours are 3,769.75, and the firm's net held costs are $78,009.43. The firm's lodestar total is $1,771,066.25, using the firm's 2014 hourly rates, which is a relevant consideration given the time-value of money over the span of the past six years of litigation against Taishan without compensation. Seeger contributed $44,482.00 in assessments to the litigation during the Relevant Period, which have not been reimbursed. The firm filed a fee application on January 31, 2020 [Rec. Doc. 22537] and made a presentation before the FAC on February 20, 2020.

Chris Seeger was appointed to the PSC and served as a member of the Knauf Fee Committee. Lead Counsel heavily relied on the firm during certain key periods in the litigation. Seeger, along with Jerry Meunier, led the hearing on class damages in 2015 in order to successfully establish a model for class-wide formulaic remediation damages. In addition, the firm was involved in proving violations of the contempt order against Taishan and its affiliates, and supporting the efforts to secure and maintain jurisdiction over the Taishan Defendants. Seeger also led the hearing for Sanctions against Taishan for discovery abuses.

Scott George was heavily involved in document review related to alter ego and contempt. Given his leadership skills, Mr. George was tasked by Lead Counsel to oversee teams of document reviewers working under tight deadlines.

Mr. George also headed up efforts to determine the nature, scope and extent of business undertaken in the United States by Taishan and its affiliates, and the profits realized. This involved discovery and depositions of the many U.S. entities doing business with Taishan affiliated companies, including the depositions of Toledo Engineering Co., which was engaged in joint ventures with China Triumph International Engineering Co., a direct subsidiary of CNBM, the New Jersey Institute of Technology, which was host to the CNBM New Energy Materials Research Center (and which received some of the Center funding through a laundering-like arrangement between CTIEC and TECO), and Sunpin Solar Developments LLC, which undertook installation of photovoltaic solar projects across the nation, including projects with CTIEC.

Similarly, Mr. George undertook discovery and depositions related to the on-going purchases of lumber by various CNBM and BNBM entities from several United States lumber producers in direct violation of the Contempt Order, including Baillie Lumber Co. and Great Western Building Materials. Additionally, there were depositions of Taishan-affiliates which were

based in the United States, and which Mr. George laid the foundations for and oversaw, including United Suntech, CNBM Trading, and CNBM USA, and the deposition of leaders of many of these U.S.-based ventures, including Peng Shou (a director of CNBM and Chairman and President of CTIEC).

Following this discovery, Mr. George contributed to the contempt briefing, and later, the briefing on FSIA and jurisdiction. The firm assisted with the PID discovery of Taishan after remands and also with experts in the remand courts.

The FAC recommends an attorneys' fee allocation for Seeger Weiss, LLP of $1,000,000.00 (3.49% of the total), reimbursement of $78,009.43 in held costs, and reimbursement of $44,482.00 in outstanding assessments.

### 9) <u>Morgan & Morgan</u>

Morgan & Morgan ("Morgan") performed 3,825.10 common benefit hours during the Relevant Period (January 1, 2014 through December 31, 2019), and incurred $35,679.76 in held costs from January 1, 2015 through December 31, 2019, which were accepted by the Court-appointed CPA, Philip A. Garrett, pursuant to PTO 9. Mr. Garrett removed 5.50 hours that were coded "L190" for work related to the Knauf fees and/or the prior fee dispute. Then, the FAC added $1,371.38 in held costs for the firm, based on the FAC's assessment of the firm's expenses. Morgan's net common benefit hours are 3,819.60, and the firm's net held costs are $37,051.14. The firm's lodestar total is $1,828,461.25, using the firm's 2014 hourly rates, which is a relevant consideration given the time-value of money over the span of the past six years of litigation against Taishan without compensation. Morgan contributed $18,477.00 in assessments to the litigation during the Relevant Period, which have not been reimbursed. The firm filed a fee application on January 31, 2020 [Rec. Doc. 22550] and made a presentation before the FAC on February 12, 2020.

Scott Weinstein was appointed to the PSC, and when he resigned, Morgan Partner Pete Albanis replaced him. Morgan was fully committed to this litigation, devoting significant resources while also representing individual *Amorin* and *Brooke* Plaintiffs for approximately 400 unique addresses. During the spring and summer of 2015, immediately after the Taishan Defendants re-appeared in this litigation, Mr. Albanis and Rene Rocha engaged in document review related to alter ego and contempt. They discovered many of the most important documents in the case and assisted with the preparation for the Rule 30(b)(6) depositions of many of the Taishan Defendants and relevant third parties.

In 2016 and 2017, Mr. Albanis participated in a meet and confer with the Taishan Defendants, performed several Product ID assignments, and participated in strategy meetings at HHK. He was responsible for the research and briefing of issues related to ProWall alleged to be manufactured by Taishan.

More significantly, Morgan was part of the Florida trial team in the Florida *Amorin* case, representing nine of the 20 Priority Claimants before Judge Cooke. They prepared for and defended the Priority Claimant clients' depositions, reviewed and produced thousands of

24

documents during discovery, met with expert witnesses, deposed Defendants' expert witnesses, worked extensively on the Product ID briefing, responded to Defendants' Motion for Summary Judgment and Defendants' Contests and Setoffs, and were part of the Plaintiffs' leadership team during the settlement negotiations in 2019.

Mr. Albanis was a member of Taishan Settlement Negotiating Team. He appeared with Class Counsel to assist in the mediation that took place in Austin, Texas in May 2019. He also assisted with the drafting of the Taishan Class Settlement Agreement, Class Notice, and the preliminary and final approval papers.

The FAC recommends an attorneys' fee allocation for Morgan & Morgan of $900,000.00 (3.14% of the total), reimbursement of $37,051.14 in held costs, and reimbursement of $18,477.00 in outstanding assessments.

## 10) Hausfeld, LLP

Hausfeld, LLP ("Hausfeld") performed 3,182.00 common benefit hours during the Relevant Period (January 1, 2014 through December 31, 2019), and incurred $37,449.02 in held costs from January 1, 2015 through December 31, 2019, which were accepted by the Court-appointed CPA, Philip A. Garrett, pursuant to PTO 9. Mr. Garrett removed 232.00 hours that were coded "L190" for work allegedly related to the Knauf fees and/or the prior fee dispute. Then, the FAC added 110.50 common benefit hours for the firm, based on the FAC's assessment of the firm's time. Hausfeld's net common benefit hours are 3,060.50, and the firm's net held costs are $37,449.02. The firm's lodestar total is $1,738,057.95, using the firm's 2014 hourly rates, which is a relevant consideration given the time-value of money over the span of the past six years of litigation against Taishan without compensation. Hausfeld contributed $33,104.00 in assessments to the litigation during the Relevant Period, which have not been reimbursed. The firm filed a fee application on January 30, 2020 [Rec. Doc. 22533] and made a presentation before the FAC on March 3, 2020.

Richard Lewis was appointed Of-Counsel to the PSC at the request of Lead Counsel. He did significant work on experts and briefing during the Relevant Period, including the Class Damages Rule 55(b)(2)(B) hearing in 2015, and the pretrial work for the Virginia and Florida remanded trial settings in 2018 and 2019. Mr. Lewis devoted significant time and resources to common benefit work, including (1) preparation of experts and damage protocols for the June 9, 2015 Rule 55 (b)(2)(B) damages hearing and the Damages FOFCOL (2014-2017); (2) extensive *Daubert* briefing on the reliability of both the opinions of Plaintiffs' damages expert (George Inglis) and defense experts Laurentius Marais, David Pogorilich (2015-2017); (3) trial plan, class certification and decertification briefing (2014-2017); (4) development of expert damages opinions from Ronald Wright submitted in the Florida, Virginia and Louisiana remand cases trial settings, and discovery and associated *Daubert* briefing related to the reliability of both Plaintiffs' damages expert Ronald Wright and Defendants' damages experts (Ben Nolan and Brian Flinn) (2017-2019); (5) mediation related to the Taishan settlement (2017-2018), and (6) assisting the Claims Administrator (Garretson Resolution Group) on claims processing under the four Virginia Class Settlements (2014-2015).

Specifically, on formulaic remediation damages, Mr. Lewis developed multiple expert opinions, reports, and testimony of Plaintiffs' damages expert George Inglis. The reports included a remediation damages calculation for each and every class member based on a uniform, well-defined scope of work, square footage data, product identification data, and local building and demolition costs factors organized by zip code and published by RS Means. These opinions were the subject of extensive discovery and *Daubert* briefing both before and after the June 9, 2015 hearing leading all the way up to this Court's 2017 Damages FOFCOL. Following the damages hearing, Mr. Lewis took the lead on drafting the proposed FOFCOL sections that pertained to damages, and wrote several memoranda in response to multiple efforts by Defendants to attack Mr. Inglis's data, methodology, and conclusions. These motions were denied, and the Court ultimately upheld and relied on Mr. Inglis's data, methodology, and conclusions in its 2017 Damages FOFCOL, which was a pillar supporting Plaintiffs' position in subsequent remanded trial settings in Florida, Virginia and Louisiana, as well in as in the mediation and settlement negotiations with Taishan.

In addition, Lead Counsel relied on Mr. Lewis for briefing various procedural issues including trial plans for class damages under Rule 55(b)(2)(B), and opposition to class decertification motions filed by Defendants. Defendants launched numerous procedural and substantive attacks on the amenability of remediations damages to class treatment both in their briefs on the Rule 55(b)(2)(B) trial plan and their repeated efforts to decertify the class. Mr. Lewis assisted in briefing the law on formulaic damages under Rule 23 and applying that law to the expert opinions on damages. Ultimately the Court fashioned procedures for the Rule 55(b)(2)(B) damages trial which allowed Plaintiffs to present their formulaic damages methodology seeking hundreds of millions of dollars in remediation damages for the class, and the Court denied the decertification motions. These rulings greatly strengthened the Plaintiffs' position in the litigation against Taishan.

Lead Counsel relied on Mr. Lewis to help out on a moment's notice, including briefing on the proposed trial plan in Virginia after remands occurred.

The FAC recommends an attorneys' fee allocation for Hausfeld, LLP of $800,000.00 (2.79% of the total), reimbursement of $37,449.02 in held costs, and reimbursement of $33,104.00 in outstanding assessments.

### 11) <u>The Lambert Firm</u>

The Lambert Firm ("Lambert") performed 1,187.02 common benefit hours during the Relevant Period (January 1, 2014 through December 31, 2019), and incurred $7,341.85 in held costs from January 1, 2015 through December 31, 2019, which were accepted by the Court-appointed CPA, Philip A. Garrett, pursuant to PTO 9. Mr. Garrett removed 3.80 hours that were coded "L190" for work allegedly related to the Knauf fees and/or the prior fee dispute. Then, the FAC added an additional 7.50 common benefit hours for the firm, based on the FAC's assessment of the firm's time. Lambert's net common benefit hours are 1,190.72, and the firm's net held costs are $7,341.85. The firm's lodestar total is $446,376.25, using the firm's 2014 hourly rates, which is a relevant consideration given the time-value of money over the span of the past six years of litigation against Taishan without compensation. Lambert contributed $7,753.00 in assessments to

the litigation during the Relevant Period, which have not been reimbursed. The firm filed a fee application on January 31, 2020 [Rec. Doc. 22538] and made a presentation before the FAC on March 4, 2020.

Skip Lambert was appointed to the PSC and he is a member of the Taishan FAC. For certain periods, usually in preparation for depositions of the Taishan entities, the firm was wholly dedicated to the Taishan litigation, given the importance of those depositions and the requirement that attorneys familiar with the litigation be involved in their preparation. In 2015, the firm spent entire weeks drafting discovery, sifting through thousands of pages of machine translated documents produced by the BNBM/CNBM entities, deciphering which documents were integral to the case, outlining plans for depositions soon to be taken and quickly summarizing the depositions that had just been taken in order for the team to effectively prepare. Toward the end of 2015 and beginning of 2016, the firm was called upon to quickly summarize the host of depositions being taken to prepare the rest of the team for upcoming depositions and, even more importantly, the critical motion practice that helped bring the litigation to a close. These tasks were given to Lambert because of the firm's consistent contribution to this litigation from its inception, starting with *Germano* in the very beginning over a decade ago. The firm completed every task assigned to it with diligence and efficiency, often under extremely difficult time constraints that required the contribution of the entire firm.

When remands began to occur, Lambert helped to vet Select Cases and was responsible for individual discovery of the following Louisiana *Amorin* Select Plaintiffs: Charles & Mary Back, Connie & Nicola Fineschi, Johnny & Rachelle Blue, Rosanne Wilfer, and Holly Braselman Yeich. The firm prepared witness lists, produced documents, and prepared for and attended these Plaintiffs' depositions and home inspections when requested.

The FAC recommends an attorneys' fee allocation for The Lambert Firm of $689,000.00 (2.40% of the total), reimbursement of $7,341.85 in held costs, and reimbursement of $7,753.00 in outstanding assessments. In addition, the FAC recommends that the firm be reimbursed for expenses incurred in connection with FAC duties, totaling $3,480.77.

## 12) Allison Grant, PA

Allison Grant, PA ("Grant") performed 1,833.90 common benefit hours during the Relevant Period (January 1, 2014 through December 31, 2019), and incurred $6,672.87 in held costs from January 1, 2015 through December 31, 2019, which were accepted by the Court-appointed CPA, Philip A. Garrett, pursuant to PTO 9. Mr. Garrett removed 55.60 hours that were coded "L190" for work allegedly related to the Knauf fees and/or the prior fee dispute. Then, the FAC subtracted an additional 12.15 common benefit hours for the firm, based on the FAC's assessment of the firm's time. Grant's net common benefit hours are 1,766.15, and the firm's net held costs are $6,672.87. The firm's lodestar total is $794,767.50, using the firm's 2014 hourly rates, which is a relevant consideration given the time-value of money over the span of the past six years of litigation against Taishan without compensation. Grant did not contribute any assessments to the litigation during the Relevant Period. The firm filed a fee application on January 30, 2020 [Rec. Doc. 22536] and made a presentation before the FAC on February 12, 2020.

Allison Grant was appointed as a member of the Taishan FAC. During the litigation, she was asked by Lead Counsel to do common benefit work in Florida when it became clear the cases would be remanded. Grant represents numerous Florida Plaintiffs and has vast experience with Product ID and Taishan supply chains. She is also extremely knowledgeable about the claims of condominiums and their standing to sue Defendants.

Given her large Chinese drywall client base, Grant often served as a point person on many topics and was able to share her knowledge and experiences (including with lenders in an effort to stave off foreclosures) in connection with representing her own clients, and the fruits of her labor (particularly with markings) so that other claimants could benefit as well, and she did not submit any time for this work.

Grant was relied upon by Lead Counsel during certain key periods with regard to vetting Priority Plaintiffs in Florida. She vetted and submitted 5 Priority Plaintiffs in Florida, produced documents for these Plaintiffs, prepared witness lists and damages charts, prepared for and attended their depositions, and helped with *in limine* motions. Grant also helped with experts in Florida.

Further, she assisted with the analysis of Plaintiffs' damages in general, she contributed to joint stipulations and key briefing, she performed PID research and discovery, she prepared responses to Defendants' contests challenging Plaintiffs' claims for remediation damages, and she assisted with briefing on PID and remediation damages and the presentations to the Special Master in Florida. Grant also helped prepare for the 30(b)(6) deposition of Taishan in Atlanta in January 2019, which required reviewing thousands of PID documents and drywall markings under very tight time constraints. She regularly attended all hearings in Florida and was available on a moment's notice to help where needed during an extremely intensive period of litigation (2018-2019).

Grant was a member of Taishan Settlement Negotiating Team. She appeared with Class Counsel to assist in the mediation that took place in Austin, Texas in May 2019. She also assisted with the drafting of the Taishan Class Settlement Agreement, Class Notice, and the preliminary and final approval papers.

The FAC recommends an attorneys' fee allocation for Allison Grant, PA of $675,000.00 (2.36% of the total) and reimbursement of $6,672.87 in held costs. In addition, the FAC recommends that the firm be reimbursed for expenses incurred in connection with FAC duties, totaling $3,342.94.

### 13) The Steckler Law Firm

The Steckler Law Firm ("Steckler") performed 951.75 common benefit hours during the Relevant Period (January 1, 2014 through December 31, 2019), and incurred $41,036.91 in held costs from January 1, 2015 through December 31, 2019, which were accepted by the Court-appointed CPA, Philip A. Garrett, pursuant to PTO 9. Mr. Garrett removed 15.75 hours that were coded "L190" for work allegedly related to the Knauf fees and/or the prior fee dispute. Steckler's net common benefit hours are 936.00, and the firm's net held costs are $41,036.91. The firm's

lodestar total is $675,318.75, using the firm's 2014 hourly rates, which is a relevant consideration given the time-value of money over the span of the past six years of litigation against Taishan without compensation. Steckler contributed $15,768.00 in assessments to the litigation during the Relevant Period, which have not been reimbursed. The firm filed a fee application on January 30, 2020 [Rec. Doc. 22535] and made a presentation before the FAC on March 3, 2020.

Bruce Steckler is a member of the PSC. The firm was relied upon by Lead Counsel during certain key periods. Steckler assisted Lead and Liaison counsel with the alter ego and contempt document review and third-party contempt depositions in 2015. He also assisted with research and briefing on contempt, alter ego, and control in the MDL, and he helped with alter ego expert discovery. In particular, Steckler investigated the affiliates of Taishan, JP Morgan and Morgan Stanley. The firm also handled several motions to compel with regard to third parties.

The FAC recommends an attorneys' fee allocation for The Steckler Law Firm of $675,000.00 (2.36% of the total), reimbursement of $41,036.91 in held costs, and reimbursement of $15,768.00 in outstanding assessments.

### 14) Becnel Law Firm, LLC

Becnel Law Firm, LLC ("Becnel") performed 548.25 common benefit hours during the Relevant Period (January 1, 2014 through December 31, 2019), and did not incur any held costs from January 1, 2015 through December 31, 2019, which were accepted by the Court-appointed CPA, Philip A. Garrett, pursuant to PTO 9. Mr. Garrett removed 14.75 hours that were coded "L190" for work allegedly related to the Knauf fees and/or the prior fee dispute. Then, the FAC added $1,038.36 in held costs for the firm, based on the FAC's assessment of the firm's expenses. Becnel's net common benefit hours are 533.50, and the firm's net held costs are $1,038.36. The firm's lodestar total is $252,747.50, using the firm's 2014 hourly rates, which is a relevant consideration given the time-value of money over the span of the past six years of litigation against Taishan without compensation. Becnel did not contribute any assessments to the litigation during the Relevant Period. The firm filed a fee application on January 30, 2020 [Rec. Doc. 22534] and did not request an interview with the FAC.

Danny Becnel was appointed to the PSC, and after he became ill, Sal Christina replaced Mr. Becnel on the committee. The firm regularly attended MDL status conferences. At the request of Liaison Counsel, Becnel assisted with the review of voluminous documents produced by Taishan's parent entities in 2015 regarding Plaintiffs' alter ego and contempt claims.

Then, in 2019, Becnel helped to vet Select Plaintiffs in Louisiana and assisted with the discovery efforts of the firm's clients that were chosen for individual depositions and document productions.

The FAC recommends an attorneys' fee allocation for Becnel Law Firm, LLC of $125,000.00 (0.44% of the total).

## 15) Baron & Budd

Baron & Budd ("Baron") did not submit any common benefit hours or held costs during the Relevant Period (January 1, 2014 through December 31, 2019) to the Court-appointed CPA, Philip A. Garrett, pursuant to PTO 9. The FAC added 273.50 common benefit hours for the firm, based on the FAC's assessment of the firm's time. Baron's net common benefit hours are 273.50, and the firm's net held costs are $0.00. The firm's lodestar total is $95,725.00, using the firm's 2014 hourly rates, which is a relevant consideration given the time-value of money over the span of the past six years of litigation against Taishan without compensation. Baron did not contribute any assessments to the litigation during the Relevant Period. The firm filed a fee application on January 31, 2020 [Rec. Doc. 22544] and did not request an interview with the FAC.

Barron's common benefit efforts consisted of vetting and prosecuting the claims of five *Amorin* Priority Plaintiffs in Florida under an aggressive schedule imposed by Judge Cooke. In addition, Holly Werkema of the firm was part of the negotiating team that met in Austin, Texas in May 2019 to reach the Taishan Settlement Agreement.

The FAC recommends an attorneys' fee allocation for Baron & Budd of $50,000.00 (0.17% of the total).

## 16) Lieff Cabraser & Cunningham Bounds

Lieff Cabraser Heimann & Bernstein, LLP ("LCHB") and Cunningham Bounds, LLC ("CB") filed a joint fee application on January 31, 2020 [Rec. Doc. 22541]. LCHB performed 133.90 common benefit hours in 2012 and 2013, and did not incur any held costs from January 1, 2015 through December 31, 2019, which were accepted by the Court-appointed CPA, Philip A. Garrett, pursuant to PTO 9. Mr. Garrett removed 3.50 hours for LCHB that were coded "L190" for work allegedly related to the Knauf fees and/or the prior fee dispute. CB did not submit any hours or held costs to Mr. Garrett, pursuant to PTO 9. The FAC added 194.75 common benefit hours for these firms, based on the FAC's assessment of the firms' time. LCHB & CB's net common benefit hours are 325.15, and the firms' net held costs are $0.00. The firms' lodestar totals are $182,103.00, using the firms' 2014 hourly rates, which is a relevant consideration given the time-value of money over the span of the past six years of litigation against Taishan without compensation. Neither LCHB nor CB contributed any assessments to the litigation during the Relevant Period or at any other time. LCHB & CB and made a presentation before the FAC *via* telephone on March 3, 2020.

LCHB and CB are counsel in the *Mitchell* purported class action on behalf of commercial builders, who are expressly excluded from the Taishan Settlement Class. Back in 2012, the PSC joined forces with these firms to work on the response to Taishan's motion to dismiss *Mitchell* on personal jurisdiction grounds. That limited effort was important for the Florida Plaintiff homeowners, who make up a majority of the Taishan Class. Then, in 2013 and early 2104, the PSC worked with these firms on the *Mitchell* appeal in the Fifth Circuit.

Because these firms represented the *Mitchell* homebuilders against Taishan, they did not file a fee application previously with regard to the Knauf settlement. Therefore, their hours are the

exception for the Relevant Period, as their common benefit efforts in 2012-2013 were not previously considered.

The FAC recommends an attorneys' fee allocation for Lieff Cabraser Heimann & Bernstein, LLP and Cunningham Bounds, LLC of <u>$25,250.00</u> (0.09% of the total).

### 17) <u>Martzell, Bickford & Centola</u>

Martzell, Bickford & Centola ("MBC") performed 137.00 common benefit hours during the Relevant Period (January 1, 2014 through December 31, 2019), and did not incur any held costs from January 1, 2015 through December 31, 2019, which were accepted by the Court-appointed CPA, Philip A. Garrett, pursuant to PTO 9. Mr. Garrett removed 12.00 hours that were coded "L190" for work related to the Knauf fees and/or the prior fee dispute. Then, the FAC subtracted an additional 76.60 common benefit hours for the firm, based on the FAC's assessment of the firm's time. MBC's net common benefit hours are 48.40, and the firm's net held costs are $0.00. The firm's lodestar total is $5,898.75, using the firm's 2014 hourly rates, which is a relevant consideration given the time-value of money over the span of the past six years of litigation against Taishan without compensation. MBC did not contribute any assessments to the litigation during the Relevant Period. The firm filed a fee application on January 30, 2020 [Rec. Doc. 22531] and did not request an interview with the FAC.

MBC's common benefit services relate to the selection of three *Amorin* cases for individual discovery as Select Plaintiffs in Louisiana: Colin and Dayna Berthaut; Angeles Blalock; and Peter and Frankie Maggiore. These Plaintiffs were in the discovery pool established by the Court and they were subject to depositions. MBC assisted these clients with the additional discovery.

The FAC recommends an attorneys' fee allocation for Martzell, Bickford & Centola of <u>$7,627.45</u> (0.03% of the total).

### 18) <u>Thornhill Group</u>

Thornhill Law Firm, APLC, Fayard and Honeycutt, APLC and N. Frank Elliot III, LLC (collectively, "the Thornhill Group") performed 16.50 common benefit hours during the Relevant Period (January 1, 2014 through December 31, 2019), and did not incur any held costs from January 1, 2015 through December 31, 2019, which were accepted by the Court-appointed CPA, Philip A. Garrett, pursuant to PTO 9. The FAC added an additional 28.00 common benefit hours and $907.87 in held costs for the firm, based on the FAC's assessment of the firm's time and expenses. Thornhill Group's net common benefit hours are 44.50, and the firm's net held costs are $907.87. The firm's lodestar total is $17,800.00, using the firm's 2014 hourly rates, which is a relevant consideration given the time-value of money over the span of the past six years of litigation against Taishan without compensation. Thornhill Group did not contribute any assessments to the litigation during the Relevant Period. The firm filed a fee application on January 31, 2020 [Rec. Doc. 22543] and made a presentation before the FAC on March 3, 2020.

The firm's common benefit efforts relate to the vetting and ultimate selection by the PSC selection of an *Amorin* Select Plaintiff in Louisiana: Dawn and Ronald LaPierre (2 Affected

Properties). The firm updated document submissions for these claims pursuant to the Court's Discovery Plan [Rec. Doc. 28197-1]; assisted in the preparation of witness lists; assisted in their deposition preparation; and, attended and defended their depositions.

The FAC recommends an attorneys' fee allocation for Thornhill Group of $2,500.00 (0.01% of the total) and reimbursement of $907.87 in held costs.

### 19) Torres Law

Law Offices of Sidney D. Torres, III, A.P.L.C. ("Torres") performed 71.25 common benefit hours during the Relevant Period (January 1, 2014 through December 31, 2019), and did not incur any held costs from January 1, 2015 through December 31, 2019, which were accepted by the Court-appointed CPA, Philip A. Garrett, pursuant to PTO 9. Torres's net common benefit hours are 71.25, and the firm's net held costs are $0.00. The firm's lodestar total is $15,581.25, using the firm's 2014 hourly rates, which is a relevant consideration given the time-value of money over the span of the past six years of litigation against Taishan without compensation. Torres did not contribute any assessments to the litigation during the Relevant Period. The firm filed a fee application on January 30, 2020 [Rec. Doc. 22532] and did not request an interview with the FAC.

The firm's common benefit efforts relate to the vetting and ultimate selection by the PSC of two *Amorin* Select Plaintiffs in Louisiana: Kasie and Patrick Couture, and Virginia Randazzo [Rec. Doc. 21847 at 8]. The firm arranged and participated in the screening of the Select Plaintiffs together with representatives of the PSC; updated document submissions for these Plaintiffs pursuant to the Court's Discovery Plan [Rec. Doc. 28197-1]; assisted in the preparation of witness lists; assisted in their deposition preparation; and, attended and defended their depositions.

The FAC recommends an attorneys' fee allocation for Law Offices of Sidney D. Torres, III, A.P.L.C. of $2,500.00 (0.01% of the total).

## B.   FIRMS ENTITLED ONLY TO EXPENSE AND/OR ASSESSMENT REIMBURSEMENTS

### 20) Lemmon Law Firm

Lemmon Law Firm ("Lemmon") did not file a fee application with the Court and did not submit any common benefit hours during the Relevant Period (January 1, 2014 through December 31, 2019) to the Court-appointed CPA, Philip A. Garrett, pursuant to PTO 9. Likewise, Lemmon did not contribute any assessments to the litigation during the Relevant Period. However, the firm incurred $65.43 in held costs from January 1, 2015 through December 31, 2019, which were accepted by Mr. Garrett.

The FAC recommends reimbursement of $65.43 in held costs for Lemmon Law Firm.

## 21) **Pendley Baudin & Coffin**

Pendley Baudin & Coffin ("Pendley") did not file a fee application with the Court and did not submit any common benefit hours during the Relevant Period (January 1, 2014 through December 31, 2019) to the Court-appointed CPA, Philip A. Garrett, pursuant to PTO 9. Likewise, Pendley did not contribute any assessments to the litigation during the Relevant Period. However, the firm incurred $ 229.95 in held costs from January 1, 2015 through December 31, 2019, which were accepted by Mr. Garrett.

The FAC recommends reimbursement of $229.95 in held costs for Pendley Baudin & Coffin.

## 22) **Reeves & Mestayer**

Reeves & Mestayer ("Reeves") did not file a fee application with the Court and did not submit any common benefit hours during the Relevant Period (January 1, 2014 through December 31, 2019) to the Court-appointed CPA, Philip A. Garrett, pursuant to PTO 9. However, the firm incurred $6,020.12 in held costs from January 1, 2015 through December 31, 2019, which were accepted by Mr. Garrett. In addition, Reeves contributed $12,641.00 in assessments to the litigation during the Relevant Period, which have not been reimbursed.

The FAC recommends reimbursement of $6,020.12 in held costs and reimbursement of $12,641.00 in outstanding assessments for Reeves & Mestayer.

Respectfully submitted,

Dated:  March 20, 2019

By: */s/ Leonard A. Davis*
Leonard A. Davis (Bar No. 14190)
Herman, Herman & Katz, LLC
820 O'Keefe Avenue
New Orleans, LA 70113
Phone: (504) 581-4892
Fax: (504) 561-6024
LDavis@hhklawfim.com
*Fee Allocation Committee*

Sandra L. Duggan
Levin Sedran & Berman LLP
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Phone: (215) 592-1500
Fax: (215) 592-4663
sduggan@lfsblaw.com
*Chair of Fee Allocation Committee and Settlement Class Counsel*

33

Patrick Shanan Montoya (Fla. Bar No. 0524441)
Colson Hicks Eidson
255 Alhambra Circle, PH
Coral Gables, FL  33134-2351
Phone:  (305) 476-7400
Fax:  (305) 476-7444
Patrick@colson.com
*Fee Allocation Committee, Plaintiffs' Steering Committee,*
*and Settlement Class Counsel*

Richard J. Serpe, Esq.
LAW OFFICES OF RICHARD J. SERPE, PC
580 E. Main Street, Suite 310
Norfolk, Virginia 23510
Phone: 757-233-0009
Rserpe@serpefirm.com
*Fee Allocation Committee, Plaintiffs' Steering Committee,*
*and Settlement Class Counsel*

Hugh P. Lambert (LA Bar #7933)
The Lambert Law Firm
701 Magazine Street
New Orleans, LA 70130
Phone: (504) 581-1750
Fax: (504) 529-2931
hlambert@thelambertfirm.com
*Fee Allocation Committee, Plaintiffs' Steering Committee*

Allison Grant, Esquire (Fla. Bar 858330)
Allison Grant, P.A.
14 S.E. 4th Street
Boca Raton, Florida 33434
Phone: (561) 994-9646
Fax: (561) 431-4627
agrant@allisongrantpa.com
*Fee Allocation Committee*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the above and foregoing has been served on Defendants' Liaison Counsel, Kerry Miller, by U.S. Mail and e-mail <u>or</u> by hand delivery and e-mail <u>and</u> upon all parties by electronically uploading the same to LexisNexis File & Serve in accordance with Pre-Trial Order No. 6, which will serve a notice of the uploading in accordance with the procedures established in MDL 2047, on this 20th day of March, 2020.

/s/ Leonard A. Davis
Leonard A. Davis
HERMAN, HERMAN & KATZ, LLC
820 O'Keefe Avenue
New Orleans, Louisiana 70113
Phone: (504) 581-4892
Fax: (504) 561-6024
ldavis@hhklawfirm.com
