UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In Re:  CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL 2047<br><br>SECTION "L" |
| This document relates to:<br><br>Elizabeth Bennett, et al versus Gebr. Knauf, et al<br><br>Case No. 14-cv-2722 | JUDGE ELDON FALLON<br><br>MAGISTRATE: JOSEPH WILKINSON, JR. |

Deposition of G. Robbert Green, 450 Julia Street, Apartment 3-D, New Orleans, Louisiana, 70130, taken in the offices of FISHMAN HAYGOOD, LLP, 201 St. Charles Avenue, 46th Floor, New Orleans, Louisiana, 70170, on Wednesday, November 20, 2019, 2019.

REPORTED BY:

    EVE S. KAZIK
    REGISTERED MERIT REPORTER
    CERTIFIED COURT REPORTER
    CERTIFIED REPORTING INSTRUCTOR

Page 34

1    that true?

2        MR. DOYLE:

3                Can we take a break?

4        MR. DYSART:

5                I think it's a pending question.

6        MR. DOYLE:

7                Yes, but you committed to and

8            finished that form.

9        MR. DYSART:

10                Well, I think it relates to what he

11            just said in terms of the two entities and

12            his wife and him being separate and

13            distinct.

14       MR. DOYLE:

15                I would like to take a break.

16       MR. DYSART:

17                I think I have a pending question.

18            I think I need the answer first.

19       MR. DOYLE:

20                Answer the question.

21       THE WITNESS:

22                Restate the question.

23   BY MR. DYSART:

24       Q.   Did you assign and release your claims from

25   Arrowhead Investments, LLC, the owner of the

 1    property to another individual?
 2        A.   Not trying to dodge the question, but as I
 3    understand it, I released it to Arrowhead Lodge.  Is
 4    that another individual?
 5        Q.   You released all claims by Arrowhead
 6    Investments, LLC for Chinese drywall in 19 Money
 7    Hill Lane.  Strike that.  Excuse me.  Let me ask a
 8    question.  You assigned all of your claims in
 9    connection with Chinese drywall for the property
10    located at 19 Money Hill Lane to a third party?
11        MR. DOYLE:
12                 Objection, form of the question.
13        THE WITNESS:
14                 Can I see the document that you're
15             looking at?
16    MR. DYSART:
17                 Do you want to take your break now
18             or show him the document?
19        MR. DOYLE:
20                 Finish your line of questioning.
21        THE WITNESS:
22                 I'm not trying to dodge.
23    BY MR. DYSART:
24        Q.   Do you recognize that document, sir?
25        A.   Yes.

1      Q.   And is this, in fact, an assignment of
2  claims agreement between Arrowhead Investments, LLC
3  and a Christopher Payton?
4      A.   Yes.
5      Q.   And you executed this document on behalf of
6  Arrowhead Investments, LLC on the 21st day of
7  September 2018.  Is that true?
8      A.   Yes.
9      Q.   And as a member of Arrowhead Investments,
10 LLC, you are authorized to enter into this agreement
11 for that particular company; is that true?
12     A.   Yes.
13     Q.   It was the intent of this document from
14 Arrowhead Investments, LLC to A) sell the property
15 at 19 Money Hill Lane and along with that assign all
16 of the claims related to Chinese drywall to the
17 buyer; is that true?
18     A.   Yes.
19     Q.   So my question was, did you release and
20 assign your claims for Chinese drywall at 19 Money
21 Hill Lane?  When I say "you," I mean Arrowhead
22 Investments, LLC to a third party.
23     A.   As I understand it, yes.
24     Q.   So my question is:  What is the basis for
25 your current claims in this litigation?

1     A.    I don't know how to answer that question.

2     Q.    I'm sorry.  Were you finished or are you

3  thinking?

4     A.    I'm trying to answer you truthfully

5  without -- to support the claim is why I'm here.

6     Q.    Okay.  So, in your personal capacity, in

7  your capacity for Arrowhead Investments, LLC you're

8  here today to support claims that you believe you

9  are asserting on your own behalf?

10    A.    Let me back up.  As I understood it, in

11 order for the sale of the property to go through,

12 the law required that the current owner make the

13 claim.  The current owner was Chris Payton or

14 Arrowhead Lodge, whichever it is.  And they are

15 party to this claim I guess is the right word.

16    Q.    In terms of this agreement your

17 understanding of it is that this Assignment of

18 Claims Agreement, Exhibit 3 to the deposition, is an

19 assignment by Arrowhead Investments, LLC for all

20 Chinese drywall claims related to 19 Money Hill Lane

21 to a Mr. Christopher Payton.  True?

22    MR. DOYLE:

23              Objection to the form of the

24          question.  Answer the question.

25    THE WITNESS:

```
 1                   As I understand it, yes.
 2     BY MR. DYSART:
 3         Q.   And that was the intent of the agreement
 4     between Arrowhead Investments, LLC and
 5     Mr. Christopher Payton?
 6         A.   Yes.
 7         Q.   And it was done knowingly and
 8     intelligently?
 9         A.   Yes.
10         Q.   And are there other agreements with
11     Mr. Payton, whether written or not, in terms of this
12     Chinese drywall claim?
13         A.   I don't know how to answer that question.
14         Q.   Do you and Mr. Payton have an agreement in
15     terms of if there is a recovery in this case how
16     that recovery will be distributed?
17         A.   Yes.
18         Q.   What is that agreement?
19         A.   It depends on the recovery.
20         Q.   And where is that agreement?
21         A.   It's a hand shake.
22         Q.   And what is the hand-shake agreement
23     between you and Mr. Payton in terms of the recovery
24     for 19 Money Hill Lane in connection with Chinese
25     drywall?
```

```
 1      A.   That I would recover all of my out-of-
 2   pocket expenses.  Basically, that's it.
 3      Q.   So, when you said that you thought that
 4   this particular agreement was to put the proper
 5   owner for the claim.  What did you mean by that?  Is
 6   this agreement a farce?
 7      A.   No.
 8      MR. DOYLE:
 9               Objection, form of the question.
10   BY MR. DYSART:
11      Q.   Is this agreement merely to put Mr. Payton
12   in your shoes so that he can process the claim and
13   distribute to you any funding --
14      MR. DOYLE:
15               Objection to the form of the
16          question.
17      MR. DYSART:
18               Let me finish the question,
19          Mr. Doyle.  Thank you.
20      THE WITNESS:
21               I'll cite on Page 3, Paragraph 2.  I
22          will cite Paragraph 1 and 2.
23   BY MR. DYSART:
24      Q.   What was your --
25      A.   "The parties have agreed to both the sale
```

1  of this property and assignment of seller's legal
2  claims related to the Chinese-manufactured drywall
3  as a material term of the sale.  Whereas, the
4  parties understand that Mississippi law and/or
5  federal law require the assignment of the legal
6  claims to occur at closing of this agreement, is to
7  be executed with the same date of execution as the
8  warranty deed in order to comply with the
9  formalities required by law."
10      Q.   And what was your understanding of the
11  Mississippi law and/or federal law requiring this
12  assignment?
13      A.   Exactly what it says.
14      Q.   So what is the basis of that information?
15  Did you look at the law yourself?  Did it come from
16  counsel?
17      A.   It came from counsel.
18      Q.   So, this agreement, again, the intent of it
19  was to, in fact, release and assign the claims of
20  Arrowhead Investments, LLC for Chinese drywall at 19
21  Money Hill Lane to Mr. Christopher Payton?
22      A.   Yes.
23      MR. DYSART:
24           I think I'm done with that document
25           now if you would like to take a break,

## ASSIGNMENT OF CLAIMS AGREEMENT

This Assignment of Claims Agreement ("Agreement") is executed on this 21st day of September, 2018 ("Effective Date"), by and between **Arrowhead Investments, LLC** (the "Individual Claimant" and "Seller") and **Christopher Payton** (the "Buyer"). All parties to this agreement will be collectively referred to herein as the "Parties."

## RECITALS

WHEREAS, Seller is the owner of real property situated in Pearl River County, State of Mississippi, purchased on or about April 28, 2005;

WHEREAS, Seller's real property has a structure situated on it and that structure has a street address of 19 Money Hill Lane, Poplarville, MS 39470;

WHEREAS, the real property containing Seller's structure has a legal description of: Commence at the Southeast corner of the Northeast 1/4 of Section 32, Township 3 South, Range 14 West, Pearl River County, Mississippi; thence East 668.62 feet; thence South 3,539.32 feet to the Point of Beginning (POB); thence North 68 degrees 11 minutes 24 seconds East 1,447.88 feet; thence North 64 degrees 45 minutes 35 seconds East 2,252.55 feet; thence South 3,327.34 feet to a point on the centerline of Gravel Road #3 (a non-public road); thence South 89 degrees 30 minutes 07 seconds West and along said centerline 70.54 feet; thence continue along said centerline South 56 degrees 43 minutes 57 seconds Vvest 163.01 feet; thence continue along said centerline South 44 degrees 59 minutes 51 seconds West 357.09 feet; thence continue along said centerline South 72 degrees 09 minutes 29 seconds West 154.72 feet; thence continue along said centerline North 83 degrees 26 minutes 08 seconds West 348.20 feet; thence continue along said centerline South 75 degrees 20 minutes 48 seconds West 240.67 feet; thence continue along said centerline South 82 degrees 35 minutes 13 seconds West 128.98 feet; thence continue along said centerline North 85 degrees 10 minutes 16 seconds West 281.36 feet; thence continue along said centerline South 86 degrees 55 minutes 28 seconds West 325.08 feet; thence continue along said centerline South 79 degrees 49 minutes 38 seconds West 439.95 feet to a point on the East right-of-way line of Restertown Road (a public road); thence North 32 degrees 31 minutes 22 seconds West and along said east right-of-way line 121.30 feet; thence continue along said East right-or-way line North 39 degrees 07 minutes 00 seconds West 346.39 feet; thence continue long said East right-of-way line North 55 degrees 09 minutes 25 seconds West 249.15; thence continue along said East right-of-way line North 67 degrees 48 minutes 40 seconds West 434.86 feet; thence continue along said East right-of-way line North 60 degrees 13 minutes 51 seconds West 216.18 feet; thence continue along said East right-of-way North 51 degrees 25 minutes 18 seconds West 216.28 feet; thence continue along said East right-of-way

1


EXHIBIT 3

line North 43 degrees 24 minutes 26 seconds West 334.05 feet; thence continue along said East right-of-way line North 31 degrees 45 minutes 57 seconds West 288.45 feet; thence continue along said East right-of-way North 24 degrees 45 minutes 24 seconds West 155.29 feet; thence East 663.59 feet; thence North 00 degrees 00 minutes 04 seconds West 779.26 feet to the Point of Beginning (POB); said parcel of land is located in the Northwest 1/4 of the Northeast 1/4 and the North½ of the Southeast 1/4 and the North ½ of the Southwest 1/4, all in Section 4, Township 4 South, also in the South ½ of the Southeast 1/4 of Section 33, Township 3 South, Range 14 West, Pearl River County, Mississippi and contains 225.00 acres more or less.;

WHEREAS, Seller's structure described herein was inspected on or about August 17, 2018, by G. Robbert Green and the structure was found to contain defective Chinese-manufactured drywall;

WHEREAS, the markings on the Chinese-manufactured drywall indicate that the drywall is a "Knauf" product and the parties responsible for manufacturing, marketing, shipping, and selling it are identified as follows: Gebrueder Knauf Verwaltungsgesellschaft, KG; Knauf International GMBH; Knauf Insulation GMBH; Knauf UK, GMBH; Knauf AMF BMBH & Co., KG; Knauf Do Brasil Ltd.; PT Knauf Gypsum Indonesia; Knauf GIPS KG; Knauf Plasterboard Tianjin, Co.; Knauf Plasterboard Wuhu, Ltd.; and, Guangdong Knauf New Building Material Products Co., Ltd.;

WHEREAS, after learning that the structure contained defective drywall, Seller engaged legal counsel at Doyle Law Firm, PC, and a claim was filed against the responsible parties on or about August 28, 2018, in a civil action styled *Bennett v. Gebrueder Knauf Verwaltungsgesellschaft, et al.*, with a civil action number of 2:14-cv-2722, pending in the United States District Court for the Eastern District of Louisiana;

WHEREAS, Seller has undertaken and initiated legal process against the responsible parties and understands that the result of this legal process is uncertain and recovery of the full amount necessary to fully and properly remediate the structure is not guaranteed;

WHEREAS, Buyer is aware of the presence of the Chinese-manufactured drywall contained in the structure on Seller's property, as well as the ongoing legal proceedings, and wishes to purchase this property prior to remediation;

WHEREAS, the Parties have agreed to the terms of a sale for the real property and the structure situated upon it;

WHEREAS, the Parties have agreed that the transfer of ownership will occur at a closing to occur on September 21, 2018, at a time and place to be arranged by the Parties;

2

WHEREAS, the Parties have agreed to both the sale of this property and assignment of Seller's legal claims related to the Chinese-manufactured drywall as a material term of the sale;

WHEREAS, the Parties understand that Mississippi law and/or federal law require the assignment of the legal claims to occur at closing and this agreement is to be executed with the same date of execution as the Warranty Deed in order to comply with the formalities required by law;

NOW, THEREFORE, in consideration of the preceding Recitals and of the mutual covenants, agreements, representations and promises contained in this Agreement, and other good and valuable consideration, the adequacy and receipt of which are hereby acknowledged, the Parties agree as follows:

1. The Seller hereby assigns and transfers to Buyer all claims that may be possessed, both filed and unfiled, related to the Chinese-manufactured drywall identified on this property which is contained within the structure;
2. In exchange for this assignment of claims, Seller will only receive a portion of the agreed upon sale price as consideration;
3. The final sale price of this real property reflects an arms-length transaction between the Parties and Buyer accepts ownership of this property with full assumption of the risk that litigation entails, including the possibility that no recovery may come from the Knauf entities at the conclusion of the *Bennett* lawsuit;
4. Buyer consents and agrees to accept the Assigned Claims and understands that it shall be his obligation to retain legal counsel following this assignment and it shall be his obligation to follow through with the prosecution of any legal claim against the responsible parties that are either named in the *Bennett* lawsuit or which remain unnamed;
5. Buyer has demanded the Assigned Claims as a material term of the sale and Seller has agreed to transfer all claims in their entirety without any reservation; and,
6. Buyer accepts and assumes all rights, title, and interest conveyed through this Assignment of Claims Agreement and assumes all obligations and duties of the Seller against any responsible party beginning on the Effective Date declared herein.

3

IN WITNESS WHEREOF, the Parties have executed this Agreement on this the 21st day of September, 2018.


_____  _____
Arrowhead Investments, LLC, Seller   Christopher Payton, Buyer

G. Robbert Green, Member

STATE OF MISSISSIPPI )
)
COUNTY OF PEARL RIVER )

I, the undersigned, a Notary Public in and for said County in said State, hereby certify that **G. ROBBERT GREEN AND CHRISTOPHER PATTON**, whose names are signed to the foregoing Assignment of Claims Agreement, and who are known to me, acknowledged before me on this day that, being informed of the contents of the Agreement, they executed the same voluntarily on the day the same bears date.

On this the 21st day of September, 2018.

_____
Notary Public

My Commission Expires:_____

(SEAL)

5