# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL NO. 2047<br><br>SECTION: L |
| THIS DOCUMENT RELATES TO:<br><br>*Elizabeth Bennett, et al. v. Knauf Gips, KG, et al.*<br>**2:14-cv-02722-EEF-JCW** | JUDGE ELDON FALLON<br><br>MAG. JUDGE WILKINSON |

## PLAINTIFF FACT SHEET

Name of Plaintiff:  Mercedes Gaspard

Affected Property Address: 1402 SE O'Donnell Lane, Port St. Lucie, FL 34983

## I.  Purchase, Sale and/or Transfer of Ownership of Property

1.  On what date did you purchase the Property?

**Response**:  Plaintiff objects to this question as duplicative.  In addition, Plaintiff objects to this question on the ground that it seeks information in the possession of, known to, or otherwise equally available to the defendants.  Plaintiff has previously provided this information to defendants in the Bennett Supplemental Plaintiff Profile Form ("SPPF").  Plaintiff directs the defendants to Section II of the SPPF. Without waiving said objection, Plaintiff adopts the SPPF response again here and intends to provide the exact same date as provided in the verified SPPF as follows: Plaintiff purchased the property:

(Month/Day/Year)        02 / 06 / 2007

2.  When you took ownership of the Property, what was the name of the seller?

Majestic Land Holdings, Inc.

**Exhibit**

Exhibit No: 4

Name:

Date: 7/9/19

ESQUIRE

1

3. Name and address of the realtor?

I don't recall - someone in Port St. Lucie, FL.

4. Name and address of the closing agent?

 Majestic Land Holdings, Inc.

5. What was the price of the home when you purchased it?  $ 207,600.00

6. Was it an "as-is" sale?

**Response**: Plaintiff objects to the use of "as-is" in this question as vague, ambiguous, uncertain, and unintelligible; consequently, Plaintiff cannot determine the exact nature of the information being sought. This term is not defined and is not commonly understood with one accepted meaning; multiple inpretations are possible. Without waiving said objection, plaintiff responds as follows:

☐ Yes    ☑ No    ☐ I'm not sure.

7. If you sold or transferred ownership of the Property, what was the name of the purchaser?

N/A

8. If you sold or transferred ownership of the Property, what was the name and address of the realtor?

N/A

9. If you sold or transferred ownership of the Property, what was the name and address of closing agent?

N/A

10. If you sold or transferred ownership of the Property, what was the price paid for home?

$ N/A

## II.  Appraisal of the Home

11. Date of each appraisal:

a. _____/_____/20_____
b. _____/_____/20_____

**PFS REQUEST FOR DOCUMENT PRODUCTION #1**: Please produce copies of any and all appraisals performed on the house both prior and subsequent to the occurrence of any of the events allenged in the petition.

> **Response**: All documents in Plaintiff's possession responsive to this request are attached as "Exhibit 1."

## III.  Discovery of Drywall

12.  Date that the property was constructed and/or renovated that installed the allegedly defective Chinese Drywall.

**Response**:  Plaintiff objects to this question as duplicative.  In addition, Plaintiff objects to this question on the ground that it seeks information in the possession of, known to, or otherwise equally available to the defendants.  Plaintiff has previously provided this information to defendants in the Bennett Supplemental Plaintiff Profile Form ("SPPF").  Plaintiff directs the defendants to  Section II of the SPPF.  Without waiving said objection, Plaintiff adopts the SPPF response again here and intends to provide the exact same date as provided in the verified SPPF as follows:  The property construction and/or renovation that installed the allegedly defective drywall occurred on or about the following date (to the best of my knowledge):

> (Month/Day/Year)          ____/____/20__06__

**PFS REQUEST FOR DOCUMENT PRODUCTION #2**: Please produce all documents, reports, photographs, videotapes, samples and any other materials which evidence and/or identify that there is defective Chinese Drywall in the Property.

> **Response**:  All documents in Plaintiff's possession responsive to this request are attached as "Exhibit 2."

## IV.  Manufacturer/Seller of Drywall

13.  Who sold or distributed the drywall in the house?

**Response**:  Plaintiff objects to this question as duplicative.  In addition, Plaintiff objects to this question on the ground that it seeks information in the possession of, known to, or otherwise equally available to the defendants.  Plaintiff has previously provided this information to defendants in the Plaintiff Profile Form ("PPF").  Plaintiff directs the defendants to  Section X of the PPF.  Without waiving said objection, Plaintiff adopts the PPF response again here and intends to provide the exact same information as provided in the verified PPF as follows:   The drywall Supplier's name (to the best of my knowledge) is:

I don't know. Majestic Land Holdings, Inc. would have this information.

**PFS REQUEST FOR DOCUMENT PRODUCTION #3**: Please produce all documents, reports, photographs, videotapes, samples and any other materials which evidence and/or identify the manufacturer of drywall installed in the house. The submission must be in the form of PTO 1(B).

> **Response**: All documents in Plaintiff's possession responsive to this request are attached as "Exhibit 3."

## V.  Damages

14.  Identify any harm, financial or otherwise, that you contend was caused by defective Chinese Drywall installed in the Property.

**Response:**  Plaintiff directs the defendants to review the complaint filed with the court in this case for a full listing of the claims being asserted and the damages being sought.  The defective Knauf Chinese Drywall emitted gasses that cause damage to Plaintiff's home and the personal property contained therein.  It also significantly diminished the use and enjoyment of the home; therefore, Plaintiff seeks the following:  all compensatory, statutory, and/or punitive damages; all pre-judgment and post-judgment interest as allowed by law; any appropriate injunctive relief; an award of attorney's fees as allowed by law; an award of taxable costs; and, any and all such further relief as a jury or judge presiding over my trial deems just and proper.  Other damages include, but are not limited to:

Loss of use of money for replacing a/c system multiple times, as well as appliances, fixtures, and other personal items that were damaged due to the defective Knauf drywall.

15.  If you contend that you entered personal bankruptcy as a result of damage to your property from defective Chinese Drywall, please describe the facts and circumstances that relate to your claim.

N/A

16.  If you contend that you entered short sale and/or foreclosure as a result of damage to your property from defective Chinese Drywall, please describe the facts and circumstances that relate to your claim.

N/A

**PFS REQUEST FOR DOCUMENT PRODUCTION #4**: If you claim loss of income, please produce any copies of any and all documentation upon which you intend to rely upon to prove this claim.

    **Response**: All documents in Plaintiff's possession responsive to this request are attached as "Exhibit 4."

17. If you claim diminution of the property as a result of Chinese Drywall, state with particularity each fact which supports your claim.

I am unable to sell my property and make a profit because of the Chinese drywall and the
destruction of the plumbing, electrical and appliances.

18. Identify the appliances, fixtures and/or other electronics, if any, that you claim were damaged by Chinese Drywall in the property.

    **Response**: An list of damaged items is attached as "Exhibit 14."

19. If you vacated the property because of the alleged presence of Chinese Drywall, please provide: Address of each location you stayed thereafter.

    a. 11015 Glenwood Drive, Coral Springs, FL  33065

    b. 297 NW 104 Ave., Coral Springs, FL  33071

    c. _____

20. If you vacated the property because of the alleged presence of Chinese Drywall, please provide: Time periods in which you resided at each property.

    a. _04_ / _15_ /20_17_ to ____/____/20_present_

    b. ____/____/20____ to ____/____/20____

    c. ____/____/20____ to ____/____/20____

21. If you vacated the property because of the alleged presence of Chinese Drywall, please provide: Moving costs and/or alternative living expenses you claim to have incurred as a result of the alleged presence of Chinese Drywall.

    a. $ _living with family_

    b. $_____

    c. $_____

**PFS REQUEST FOR DOCUMENT PRODUCTION #5**: If you vacated the property because of the alleged presence of Chinese Drywall, please provide any documentation to support your claims.

> **Response**: All documents in Plaintiff's possession responsive to this request are attached as "Exhibit 5."

22. Are you claiming damages for personal injury? ☐ Yes (explain below) ☑ No

_____

_____

23. If you suffered personal injuries as a result of the alleged presence of Chinese Drywall: Date you allege that you first sustained personal injuries as a result of your exposure to allegedly defective Chinese Drywall.

**Response**: ☑ N/A

24. If you suffered personal injuries as a result of the alleged presence of Chinese Drywall: What specific injuries have you suffered?

**Response**: ☑ N/A

25. If you suffered personal injuries as a result of the alleged presence of Chinese Drywall: Name and address of any doctor, physician, surgeon, chiropractor, or osteopath who examined and/or treated your alleged injuries.

**Response**: ☑ N/A

## VI. Potential Witnesses/Evidence

26. Has any written or recorded statement been taken from any witness or person who has knowledge of relevant facts, including the nature, character, and extent of the injuries referred to in the petition, and for each statement identified?

☐ Yes ☐ No ☑ I don't know

27. If the answer to 26 is "yes," please state: The name, address, and telephone number of the person from whom the statement was taken.

N/A _____

_____

6

28.  If the answer to 26 is "yes," please state:  The name, address, and telephone number of the person who took the statement.

N/A _____

_____

29.  If the answer to 26 is "yes," please state:  The name address, and telephone number of the party having custody of such statement.

N/A _____

_____

30.  If the answer to 26 is "yes," please state:  The date the statement was taken.

N/A _____

_____


## VII.  Already Remediated Properties

31.  If you already remediated the Property, who conducted the remediation?

   **Response:**   ☑ N/A

32.  When did the remediation commencement date occur?

   **Response:**   ☑ N/A

33.  When did the remediation end date occur?

   **Response:**   ☑ N/A

34.  What was the scope of the remediation and the scope of the work carried out?

   **Response:**   ☑ N/A

35.  What costs or expenses, if any, did you incur related to the remediation of the Property?

   **Response:**   ☑ N/A

7

36. Were any samples from the remediation retained?

> **Response:** ☑ N/A

37. If the response to 36 is "yes," were the samples compliant with PTO 1(B)?

> **Response:** ☐ N/A

38. Were any photographs taken of the allegedly defective Chinese Drywall?

> **Response:** ☑ N/A

39. If the response to 38 is "yes," were the photographs compliant with PTO 1(B)?

> **Response:** ☑ N/A

**PFS REQUEST FOR DOCUMENT PRODUCTION #6:** Please produce the following documentation concerning the remediation of the Property: Any evidence of KPT Chinese Drywall and Non-KPT Chinese Drywall, if any, in the Property prior to remediation.

> **Response:** All documents in Plaintiff's possession responsive to this request are attached as "Exhibit 6."

**PFS REQUEST FOR DOCUMENT PRODUCTION #7:** Please produce the following documentation concerning the remediation of the Property: Interior photographs of the Affected Property immediately prior to the commencement of, and following completion of, the remediation, including photographs and/or video images of the flooring and major components such as cabinets, moldings, doors, intercom systems, and fixtures for every room and bathroom and, to the extent possible, security systems, appliances and audio such as surround sound.

\*\* The photographs do not need to be pictures taken specifically for the litigation. For example, family photographs or photographs taken for purposes of refinancing a mortgage are acceptable in the absence of other photographs.

> **Response:** All documents in Plaintiff's possession responsive to this request are attached as "Exhibit 7."

**PFS REQUEST FOR DOCUMENT PRODUCTION #8:** Please produce the following documentation concerning the remediation of the Property: The remediation contract and an itemization from the contractor who performed the remediation work of the materials used during the remediation, including, but not limited to, manufacturer, model number, and quantity.

**Response**: All documents in Plaintiff's possession responsive to this request are attached as "Exhibit 8."

**PFS REQUEST FOR DOCUMENT PRODUCTION #9**: Please produce the following documentation concerning the remediation of the Property: An itemized invoice from the contractor who performed the remediation work ("Itemized Invoice") showing the scope of work carried out.

**Response**: All documents in Plaintiff's possession responsive to this request are attached as "Exhibit 9."

**PFS REQUEST FOR DOCUMENT PRODUCTION #10**: Please produce the following documentation concerning the remediation of the Property: Proof of payment of the Itemized Invoice and any other expenses, such as cancelled checks, credit card statements, etc.

**Response**: All documents in Plaintiff's possession responsive to this request are attached as "Exhibit 10."

**PFS REQUEST FOR DOCUMENT PRODUCTION #11**: Please produce the following documentation concerning the remediation of the Property: A floor plan of the Affected Property with dimensions.

**Response**: All documents in Plaintiff's possession responsive to this request are attached as "Exhibit 11."

**PFS REQUEST FOR DOCUMENT PRODUCTION #12**: Please produce the following documentation concerning the remediation of the Property: An Environmental Certificate.

**Response**: All documents in Plaintiff's possession responsive to this request are attached as "Exhibit 12."

**PFS REQUEST FOR DOCUMENT PRODUCTION #13**: Please produce the following documentation concerning the remediation of the Property: An Owner Disclosure Affidavit in the form attached as Exhibit 1, which includes a certification that the materials provided comprise all of the available documentation regarding the following: The drywall that was in the Affected Property prior to the commencement of the remediation; and, the scope, extent, and cost of the remediation.

**Response**: All documents in Plaintiff's possession responsive to this request are attached as "Exhibit 13."

## **VERIFICATION**

I hereby verify that the responses to the Plaintiff Fact Sheet are correct to the best of my knowledge.

_Mercedes Gaspard_
Signature of Plaintiff

_01\09\2019_
Date

_Mercedes Gaspard_
Printed Name

# Property Screening Report

## 1402 O'Donnell Lane SE, Port St. Lucie, FL 34983

Screening Date:
4-14-17

Prepared for:
Mercedes Gaspard

Report Number:
FL09-0535

CDS Inspector:
Julie Sommerville



**CHINESE DRYWALL | SCREENING** LLC

Inspections and documentation from leading experts



**CHINESE DRYWALL SCREENING** LLC

Inspections and documentation from leading experts

April 17, 2017

Mercedes Gaspard
1402 O'Donnell Lane SE
Port St. Lucie, FL 34983

RE: Chinese Drywall Screening Report Number FL09-0535

Ms. Gaspard,

At your request, an inspection of the above referenced property (1402 O'Donnell Lane SE) was performed on April 14, 2017.  Chinese Drywall Screening, LLC is submitting the enclosed report which is a professional opinion based on a visual inspection of the accessible materials and x-ray fluorescence testing of the drywall throughout the property.

Based on our visual observations of blackened electrical wires, plumbing and A/C coils as well as XRF testing, coupled with known affects from reactive drywall, CDS is of the opinion that reactive drywall **is** present in the above referenced property.  The distinctive odor associated with corrosive drywall was noticed upon entry and throughout the inspection.  Drywall markings discovered are:

| No. | Drywall Mfg | Markings on Drywall | Location in home |
|-----|-------------|---------------------|------------------|
| 9 | Knauf-Tianjin (KPT) | KNAUF-TIANJIN China ASTM C-36 | Throughout walls of the property |

Another type of drywall that is domestic and not known to be corrosive is United States Gypsum (USG). This type was observed on the interior and garage ceilings.

Based on the **2,327 sf** size of the home with **8' – 9'average ceiling height,** we estimate that there is approximately **9,200 sf of drywall** in the home.

We trust that this report meets or exceeds your expectations.  Please feel free to contact us should you have any questions regarding our report or if we may be of further assistance to you.

Sincerely,

Howard Ehrsam, P.E., LEED AP
CGC 1509717
on behalf of Chinese Drywall Screening, LLC

Enclosures: Report with Photo Exhibit



# Overview

## Overview of Subject Property



**Client**: Mercedes Gaspard

**Address:** 1402 O'Donnell Lane SE
Port St. Lucie, FL 34983

**Builder:** Majestic Homes

**Size:** Total 2,327 sf

**Exterior wall types:** CBS- Concrete Block exterior

**Completion date:** 2006



# Summary Narrative

## Observations and Conclusions

### Observations

- Mild blackening or "black deposits" defined to be copper sulfide by Unified Engineering File No. 4050 associated with reactive drywall were observed on the A/C coil and external refrigerant line.
- Blackening was observed on the exposed wiring of inspected receptacles and switches throughout the property.
- Blackening was observed on the copper pipe of the water heater located in the garage.
- Blackening was observed on the copper plumbing water lines under the kitchen and bathroom sinks.
- Walls and ceilings were tested utilizing a Thermo Fisher x-ray fluorescence (XRF) analyzer throughout the property.
  - Markings for **MDL 2047 Drywall Index No. 9 (KPT**) were observed in the NW bathroom.  Strontium levels for the observed KPT type drywall were around 2,000 ppm.
  - Strontium levels around 2,000 ppm were throughout the walls of the property.
- Markings and edge tape of United States Gypsum 5/8" (USG), non-corrosive domestic drywall, was observed for the interior and garage ceilings.
- There was an odor associated with corrosive drywall in the cut open areas.

### Conclusions

Based on our visual observations, testing, experience and current state of knowledge in the industry, Chinese Drywall Screening, LLC is of the professional opinion that reactive Chinese drywall **is** present throughout the subject property, specifically **MDL 2047 Index No. 9 – Knauk-Tianjin (KPT).**

Inspection and testing was done for general information only.  Additional testing involving cutting and scraping of walls would be needed to verify all ceilings as well as behind the tile areas.

It is the intent of CDS to inform and empower the Client with enough knowledge to make the best, well informed decision that is in the best interests of the Client.  Towards that end, we recommend that you contact an attorney to discuss your legal rights, including potential claims against your builder, along with the installer, supplier and manufacturer of the



Inspections and documentation from leading experts

drywall.  Additional claims against parties of the real estate transaction may also be explored.

What you can do today:  Three primary items to consider for immediate action are:  1) Mortgage forbearance if applicable, 2) Property tax reduction and 3) Legal representation regarding claims against the manufacture.

Time is of the essence and time frames for filing claims may end.  It is critical to understand the implications with these and we recommend seeking professional consultation for details.

For owners of properties with reactive drywall, it important to understand preservation of evidence when selling or remediating as well as the importance of 3rd party verification of the remediation.  More information is available on our website or toll free at 855- CDW-Help (855-239-4357).



# Exhibit A

# Certification

## Certification of the Engineer

The undersigned do hereby certify that, to the best of our knowledge and belief:

- The statements of fact contained within this report are true and correct.

- As applicable, the statements of opinions have certain limitations. It is not feasible and is impossible to confirm 100% of corrosive drywall was either removed or is not present. There are several conditions we have seen that could prevent discovery without a more exhaustive investigation. They include, but are not limited to:
  - Low Strontium, corrosive drywall that is domestic and non-homogeneous.
  - Limited amounts of corrosive drywall in inaccessible areas or installed in a way that would seclude it from available receptacles and switches.
  - Limited amounts of high strontium drywall covered with joint compound or heavy textures hindering detection by x-ray fluorescence.
  - Variable amounts of low off-gassing drywall or drywall with corrosive recycled gypsum.

- We have no present or prospective interest in the property that is the subject of this report and we have no personal interest with respect to the parties involved. We have no bias with respect to the property that is the subject of this report or to the parties involved with this agreement.

- The information in this report is based on the existing conditions of the structures materials, documents, and information (written or verbal) supplied by the contractor, the owner or their representatives, and our observations during the inspection.

- Our compensation or engagement in this assignment is not contingent upon the development or reporting of a predetermined conclusion that favors the cause of the client, the remediator, the attainment of a stipulated result, or the occurrence of a subsequent event directly related to the intended use of this report.

- Any use of this report by any other parties without our expressed or written consent is prohibited. Should another individual or entity rely on this analysis or its conclusions without our consent, that shall indemnify Chinese Drywall Screening, LLC, its employees, and service providers from all damages, losses, or expenses that may occur as a result of its use.

- Our report is based on information made available to us at the time of inspection. Should additional information become available, we reserve the right to determine the impact, if any, of the new information on our opinions and conclusions and to revise our opinions and conclusions if necessary and warranted by the discovery of the additional information.

- The provided services and documentation have been completed to the best of our knowledge and based on current known facts regarding reactive drywall.

Howard Ehrsam, P.E., LEED AP
CGC 1509717
on behalf of Chinese Drywall Screening, LLC



# Scope of Screening

## Scope of Screening Services Performed

Chinese Drywall Screening, LLC (CDS) conducted a detailed visual inspection of the various elements within the home that typically react to the presence of reactive drywall. Some of the known affects are pitting and blackening copper, tarnishing silver, corroding and spotting chrome and brass, and delaminating mirrors.

Based on the experience, knowledge and ability to recognize these affects, CDS completed a thorough inspection of the various elements of the home containing these materials. These elements include, but are not limited to:

- Air conditioning components
- Gas lines (if applicable)
- Water lines
- Electrical wiring
- Coaxial cabling
- Refrigerator components
- Mirrors
- Plumbing fixtures and drains

Some of the above elements were photographed during the inspection and are attached as "Photo Narrative Exhibit". Refer to the photographs for specific observations.

Items that may be affected by reactive drywall but were not inspected by CDS include, but are not limited to:

- Large appliances
- Small appliances
- Televisions
- Audio/video equipment
- Personal possessions
- Smoke detectors
- Doorbells
- Security systems
- Control wiring
- Thermostats

The following engineering report is utilized as a reference in regards to the visual effects on copper: Unified Engineering Report File 4050 dated March 17, 2009. Unified Engineering, Inc; 3056 Weber Drive, Aurora, IL 60502.



# Scope of Screening

## Scope of Services (continued)

### X-ray Fluorescence (XRF) for Strontium

XRF analyzers are handheld instruments used predominantly to evaluate the presence of metal constituents in building materials or other products. XRF works by exposing a material to high energy x-rays and measuring those x-rays and comparing them to the known and unique pattern of x-rays produced by each element. For help in identifying corrosive drywall, XRF is used to determine levels of strontium (Sr) present within the gypsum of the drywall throughout the property.

Strontium is a light metal that is a common, naturally occurring element found within the earth. Certain geographical regions have higher concentrations than others that can translate to the origin of the raw materials. Strontium levels above 1850 ppm have been associated with drywall of Chinese origin. However, high levels of strontium do exist in drywall from other origins and testing must be used in conjunction with other means to produce proper conclusions.

The attenuating effects of joint compound and textures could inhibit the detection of small amounts of corrosive drywall. Furthermore, corrosive drywall could also be present in inaccessible areas that include, but are not limited to, walls above drop ceilings, fire stopping, behind tile, behind cabinets, under raised floor systems, etc. However, the potential for these conditions can be reduced or eliminated with proper property evaluation and corrosion evaluation.



# Photo Exhibit
## 1402 O'Donnell Lane SE
## Port St. Lucie, FL 34983





## Photo Exhibit
## 1402 O'Donnell Lane SE
## Port St. Lucie, FL 34983





Photo Exhibit
1402 O'Donnell Lane SE
Port St. Lucie, FL 34983





**Photo Exhibit**
1402 O'Donnell Lane SE
Port St. Lucie, FL 34983







**Photo Exhibit**
**1402 O'Donnell Lane SE**
**Port St. Lucie, FL 34983**

  

  

  

  



**Photo Exhibit**
1402 O'Donnell Lane SE
Port St. Lucie, FL 34983



Chinese Drywall Screening, LLC
PH: 772-224-8660 / FX: 772-905-0676
www.chinesedrywallscreening.com

# Plaintiff Fact Sheet

Plaintiff: *Mercedes Gaspard*

Property Address: *1402 SE O'donnell Ln, Port St. Lucie, FL 34983*

## Question #18 Itemization (Personal Property Damage)

| # | Description of Damaged Item | Value ($) |
|---|---|---|
| 1 | 2011 - Replaced AC Unit | 5000- |
| 2 | 2016 - Replaced AC Unit | 5,000- |
| 3 | 2018 - AC Unit Broken 3rd Time | 5000 |
| 4 | Replaced Pool Pump | 330- |
| 5 | Replaced Pool Pump | 330- |
| 6 | Replaced Sprinkler pump | 210- |
| 7 | Need to replace Sprinkler pump | 210- |
| 8 | 2 washing Machines | 1200- |
| 9 | Microwave | 420- |
| 10 | Electric Range | 1200- |
| 11 | Refridgerator | 2,000 |
| 12 | Ceiling Fans (4) | 800- |
| 13 | Bathroom Fixtures | 800- |
| 14 | 65" Television | 1500- |
| 15 | 46" Television | 700- |
| 16 | 32" Television | 300- |

| # | Item | Value |
|---|------|-------|
| 17 | Water Heater | 600 – |
| 18 | Silver Jewelry | 500 – |
| 19 | Dell Computer | 1200 – |
| 20 | Iphone 8 | 800 – |
| 21 | Kitchen Faucet | 250 – |
| 22 | Kitchen Sink | 350 – |
| 23 | Garbage disposal | 300 – |
| 24 | Dishwasher | 600 – |
| 25 | Dryers | 1200 – |
| 26 | Kitchen Cookware | 300 – |
| 27 | Silverware | 80 – |
| 28 | | |
| 29 | | |
| 30 | | |
| 31 | | |
| 32 | | |
| 33 | | |
| 34 | | |
| 35 | | |

Total: $ __31,180.00__

## A. Settlement Statement

U.S. Department of Housing
and Urban Development

OMB No. 2502-0265

| B. Type of Loan | | |
|---|---|---|
| 1.☐ FHA    2.☐ RHS    3.☒ Conv. Unins. | 6. File Number 06-40178 | 7. Loan Number 3012426310 | 8. Mortgage Insurance Case Number |
| 4.☐ VA    5.☐ Conv. Ins. | | | |

C. Note: This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown. Items marked "(p.o.c.)" were paid outside the closing; they are shown here for information purposes and are not included in the totals.

| D. Name and Address of Borrower | E. Name and Address of Seller | F. Name and Address of Lender |
|---|---|---|
| MERCEDES GASPARD | MAJESTIC LAND HOLDINGS | WASHINGTON MUTUAL BANK, FA |
| 1402 SE ODONNELL LANE | 4081 ROYAL PALM BEACH BLVD | PO BOX 100564 |
| PORT SAINT LUCIE, FL | ROYAL PALM BEACH, FL 33411 | FLORENCE, SC 29501-0564 |

| G. Property Location | H. Settlement Agent | | |
|---|---|---|---|
| 1402 SE ODONNELL LANE | SUN TITLE & ABSTRACT CO. | | |
| PORT SAINT LUCIE, FL | | | |
| LOT 6, BLOCK 416 | Place of Settlement | | I. Settlement Date |
| PORT ST LUCIE SECTION 3 | 1402  ROYAL PALM BEACH BLVD. | | 01/31/07 |
| | SUITE 300-D | | DD:  01/31/07 |
| | ROYAL PALM BEACH, FL 33411 | | |

| J. SUMMARY OF BORROWER'S TRANSACTION: | | K. SUMMARY OF SELLER'S TRANSACTION: | |
|---|---|---|---|
| 100. GROSS AMOUNT DUE FROM BORROWER | | 400. GROSS AMOUNT DUE TO SELLER | |
| 101. Contract sales price | 207,550.00 | 401. Contract sales price | 207,550.0 |
| 102. Personal property | | 402. Personal property | |
| 103. Settlement charges to borrower (line 1400) | 11,449.86 | 403. | |
| 104. REIM BLDR FOR ADMIN/SURVEY/CONCURRANCY | 715.00 | 404. REIM BLDR FOR ADMIN/SURVEY/CONCURRANCY | 715.0 |
| 105. REIM BLDR FOR BANK DOCS | 125.00 | 405. REIM BLDR FOR BANK DOCS | 125.0 |
| Adjustments for items paid by seller in advance | | Adjustments for items paid by seller in advance | |
| 106. City/town taxes            to | | 406. City/town taxes            to | |
| 107. County taxes            to | | 407. County taxes            to | |
| 108. Assessments            to | | 408. Assessments            to | |
| 109. | | 409. | |
| 110. | | 410. | |
| 111. | | 411. | |
| 112. | | 412. | |
| 120. GROSS AMOUNT DUE FROM BORROWER | 219,839.86 | 420. GROSS AMOUNT DUE TO SELLER | 208,390.0 |
| 200. AMOUNTS PAID BY OR IN BEHALF OF BORROWER | | 500. REDUCTIONS IN AMOUNT TO SELLER | |
| 201. Deposit or earnest money | 130,500.00 | 501. Excess Deposit (see instructions) | 130,500.0 |
| 202. Principal amount of new loan(s) | 87,000.00 | 502. Settlement charges to seller (line 1400) | |
| 203. Existing loan(s) taken subject to | | 503. Existing loan(s) taken subject to | |
| 204. | | 504. Payoff of first mortgage loan | |
| 205. | | 505. Payoff of second mortgage loan | |
| 206. | | 506. | |
| 207. | | 507. | |
| 208. | | 508. | |
| 209. | | 509. | |
| Adjustments for items unpaid by seller | | Adjustments for items unpaid by seller | |
| 210. City/town taxes            to | | 510. City/town taxes            to | |
| 211. County taxes            to | | 511. County taxes            to | |
| 212. Assessments            to | | 512. Assessments            to | |
| 213. | | 513. | |
| 214. | | 514. | |
| 215. | | 515. | |
| 216. | | 516. | |
| 217. | | 517. | |
| 218. | | 518. | |
| 219. | | 519. | |
| 220. TOTAL PAID BY / FOR BORROWER | 217,500.00 | 520. TOTAL REDUCTION AMOUNT DUE SELLER | 130,500.00 |
| 300. CASH AT SETTLEMENT FROM OR TO BORROWER | | 600. CASH AT SETTLEMENT TO OR FROM SELLER | |
| 301. Gross amount due from borrower (line 120) | 219,839.86 | 601. Gross amount due to seller (line 420) | 208,390.00 |
| 302. Less amounts paid by/for borrower (line 220) | 217,500.00 | 602. Less reduction amount due to seller (line 520) | 130,500.00 |
| 303. CASH          FROM        BORROWER | 2,339.66 | 603. CASH          TO        SELLER | 77,890.00 |

RESPA, HB 4305.2 - REV. HUD1(3/86)

U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT — SETTLEMENT STATEMENT

L. SETTLEMENT CHARGES

File Number: 06-40176

| | | | PAID FROM BORROWER'S FUNDS AT SETTLEMENT | PAID FROM SELLER'S FUNDS AT SETTLEMENT |
|---|---|---|---|---|
| 700. | TOTAL SALES/BROKER'S COMMISSION based on price $ @ % | | | |
| | Division of Commission (line 700) as follows: | | | |
| 701. | $ to | | | |
| 702. | $ to | | | |
| 703. | Commission paid at Settlement | | | |
| 704. | TRANSACTION FEE | | | |
| 800. | ITEMS PAYABLE IN CONNECTION WITH LOAN | P.O.C. | | |
| 801. | Loan Origination Fee 1 % WASHINGTON MUTUAL BANK, FA | | 870.00 | |
| 802. | Loan Discount % | | | |
| 803. | Appraisal Fee to WASHINGTON MUTUAL BANK, FA | | 380.00 | |
| 804. | Credit Report to | | | |
| 805. | Lender's Inspection Fee to | | | |
| 806. | Mtg. Ins. Application Fee to | | | |
| 807. | Assumption Fee to | | | |
| 808. | FUNDING AND REVIEW FEE WASHINGTON MUTUAL BANK, FA | | 430.00 | |
| 809. | PAYMENT PROCESSING FEE WASHINGTON MUTUAL BANK, FA | | 200.00 | |
| 810. | TAX SERVICE FEE WASHINGTON MUTUAL BANK, FA | | 81.00 | |
| 811. | WIRE TRANSFER FEE WASHINGTON MUTUAL BANK, FA | | 35.00 | |
| 812. | FLOOD DETERMINATION FEE LANDAMERICA TAX & FLOOD SERVICE | | 8.00 | |
| 813. | | | | |
| 814. | | | | |
| 815. | | | | |
| 900. | ITEMS REQUIRED BY LENDER TO BE PAID IN ADVANCE | | | |
| 901. | Interest from 01/31/07 to 02/01/07 @$ 14.6 /day day(s) | | 14.60 | |
| 902. | Mortgage Insurance Premium to | | | |
| 903. | Hazard Insurance Premium 1 yrs. to EDISON INSURANCE 1826B | | | |
| 904. | | | | |
| 905. | | | | |
| 1000. | RESERVES DEPOSITED WITH LENDER FOR | | | |
| 1001. | Hazard Insurance 3 mo. @$ 160.42 / mo. | | 481.26 | |
| 1002. | Mortgage Insurance mo. @$ / mo. | | | |
| 1003. | City property taxes mo. @$ / mo. | | | |
| 1004. | County property taxes 6 mo. @$ 154.62 / mo. | | 927.72 | |
| 1005. | Annual Assessments mo. @$ / mo. | | | |
| 1006. | mo. @$ / mo. | | | |
| 1007. | mo. @$ / mo. | | | |
| 1008. | Aggregate Credit for Hazard/Flood Ins, City/County Prop Taxes, Mortgage Ins & Annual Assessments | | -148.82 | |
| 1100. | TITLE CHARGES | | | |
| 1101. | Settlement or closing fee to SUN TITLE & ABSTRACT CO. | | 200.00 | |
| 1102. | Abstract or title search to SUN TITLE/THE RELENTLESS | | 200.00 | |
| 1103. | Title examination to SUN TITLE/THE RELENTLESS | | 170.00 | |
| 1104. | Title insurance binder to | | | |
| 1105. | Document preparation to | | | |
| 1106. | Notary fees to | | | |
| 1107. | Attorney's fees to | | | |
| | (includes above item No: ) | | | |
| 1108. | Title insurance to SUN TITLE & ABSTRACT CO. | | 1,452.50 | |
| | (includes above item No: ) | | | |
| 1109. | Lender's coverage 87,000.00 --- 375.00 incl 25 Risk Prem | | | |
| 1110. | Owner's coverage 207,550.00 --- 1,077.50 and 1077.50 Risk Prem | | | |
| | ENDORSEMENTS ALTA 8.1 & 6.0 ENDORSEMENTS | | 50.00 | |
| | FEDEX PACKAGE-PAYOFF(S) FEDERAL EXPRESS | | 50.00 | |
| | FLORIDA FORM 9 FL 9 ENDORSEMENT | | 145.25 | |
| 1200. | GOVERNMENT RECORDING AND TRANSFER CHARGES | | | |
| 1201. | Recording fees Deed $ 10.00 ; Mortgage $ 171.50 ; Releases $ | | 181.50 | |
| 1202. | City/county/stamps Deed $ ; Mortgage $ | | | |
| 1203. | State tax/stamps Deed $ 1,453.20 ; Mortgage $ 304.50 | | 1,757.70 | |
| 1204. | Intangible Tax Deed $ ; Mortgage $ 174.00 | | 174.00 | |
| 1300. | ADDITIONAL SETTLEMENT CHARGES | | | |
| 1301. | Survey to | | | |
| 1302. | Pest inspection to | | | |
| | SATISFACTION/HANDLING FEE | | 45.00 | |
| | DIGITIAL ARCHIVING IMAGING PROS | | 125.00 | |
| | WIRE/E-MAIL/FAX WASHINGTON MUTUAL BANK, FA | | | |
| | 2005 TAX BILL ST. LUCIE COUNTY TAX COLLECTOR | | 1,783.06 | |
| | 2006 TAX BILL ST. LUCIE COUNTY TAX COLLECTOR | | 1,836.89 | |
| 1400. | TOTAL SETTLEMENT CHARGES (enter on lines 103 and 502, Sections J and K) | | 11,449.86 | |

I have carefully reviewed the HUD-1 Settlement Statement and to the best of my knowledge and belief, it is a true and accurate statement of all receipts and disbursements made on my account or by me in this transaction. I further certify that I have received a copy of the HUD-1 Settlement Statement.

BORROWERS                                   MAJESTIC LAND HOLDINGS

JOHN P. GEORGE, PRESIDENT

The HUD-1 Settlement Statement which I have prepared is a true and accurate account of this transaction. I have caused or will cause the funds to be disbursed in accordance with this statement.

SUN TITLE & ABSTRACT CO.                    Date



Google Maps    1402 S E O'Donnell Ln



Imagery ©2019 Google, Map data ©2019      200 ft



# 1402 S E O'Donnell Ln

Port St. Lucie, FL 34983

    

Directions    Save    Nearby    Send to your phone    Share

## Photos



(Space above this line ePortal/E-recording uses only)

Prepared by and when Recorded return to:
City of Port St. Lucie Utility Systems Department
121 SW Port St. Lucie Boulevard
Port St. Lucie, Florida 34984-5099

## NOTICE OF WATER AND SEWER LIEN

THIS NOTICE is given by the City of Port St. Lucie Utility Systems Department, which Department was created by the City Council of the City of Port St. Lucie by the authority granted under the City of Port St. Lucie Charter at Section 10.01, and which Department was established under the City of Port St. Lucie Code of Ordinances at Title VI, Chapter 60, Section 60.01. This document, recorded in the Public Records of St. Lucie County, Florida hereby provides notice that the delinquent and exclusive charges on the account specified herein has caused a Utility Service Lien to be placed upon the real property owned by MERCEDES GASPARD, customer number: 854196, account number: 276888 and located within the boundaries of the City of Port St. Lucie utility service area, more particularly described as 1402 SE ODONNELL LANE, Port St Lucie, St. Lucie County, Florida 34983-3986.

|  |  |
|---|---|
| Legal description: | LOT 6, BLOCK 416, Port St. Lucie SECTION 3. |
| Parcel ID: | 3420-510-0806-000-5 |

THIS UTILITY SERVICE LIEN arises from the issuance of revenue bonds pursuant to Sections 159.08 and 159.17, Florida Statutes, and is being imposed as part of the City of Port St. Lucie's enforcement of collections obligation under Article V, Section 5.01(J) of City Ordinance 94-29, as amended and supplemented, requiring the City to repay the revenue bonds from the net revenues derived from the operation of the Project Utility System.

NOTICE IS HEREBY GIVEN that the following section of the City of Port St. Lucie Code of Ordinances has been codified and made a part of the Utility Systems Department policies and procedures governing water and sewer rates, fees, charges and operating policy:

Section 61.04 (m) *Withholding service.* The city may withhold or discontinue water, wastewater and/or reclaimed water service rendered under application made by any member or agent of a household, organization, or business unless all prior indebtedness to the city of such household, organization, or business for water, wastewater, and reclaimed water service has been settled in full in accordance with city policy. Service may also be discontinued for any violation of any rule or regulation governing the city's utility systems.

ANY PERSON ACQUIRING LEGAL TITLE TO THE REAL PROPERTY IDENTIFIED ABOVE IS CAUTIONED TO VERIFY THE STATUS OF THE UTILITY SERVICE ACCOUNT PRIOR TO CONCLUDING SUCH ACQUISITION TO AVOID ASSUMING ANY AND ALL OUTSTANDING OBLIGATIONS AND/OR LIABILITIES FOR ANY DELINQUENCY.

This lien does not relieve the responsibility of all parties to verify any and all charges, recorded or unrecorded, on this property or any property serviced by the City of Port St. Lucie. Utility account inquiries may be addressed to the City of Port St. Lucie Utility Systems Department, 121 SW Port St. Lucie Boulevard, Port St. Lucie, Florida 34984-5099.

Dated this 23rd day of October , 2017.

Donna M Rhoden, Deputy Director
Utility Systems Department