Plaintiff Profile Form - Residential Properties

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| IN RE: CHINESE MANUFACTURED DRYWALL | MDL NO. 2047 |
| PRODUCTS LIABILITY LITIGATION | SECTION: L |
| THIS DOCUMENT RELATES TO: ALL CASES | JUDGE FALLON |
| | MAG. JUDGE WILKINSON |

For Internal Use Only

File Number

Date Received

This Plaintiff Profile Form must be completed and signed by every person making a claim in this litigation using one form per affected address. In completing this Profile Form, you are under oath and must provide information that is true and correct to the best of your knowledge. If you cannot recall all of the details requested, please provide as much information as you can and expressly indicate "unknown" in the space provided when not known. You must supplement your responses if you learn they are incomplete or incorrect in any material respect. You may and should consult with your attorney if you have any questions regarding completion of this form. If you are completing the form for someone who has died or who cannot complete the Profile Form, please answer as completely as you can for that person.

The questions and requests for production contained within this Profile Form are non-objectionable and shall be answered without objection. By answering this Profile Form, you are not waiving the attorney work product and/or attorney client privileges. Similarly, by disclosing the identity of consultants, such consultants may remain non-testifying experts and are subject to all protections afforded by law.

To the extent that the form does not provide enough space to complete your responses, you may attach as many sheets of paper as necessary. All photographs produced in response to this form shall be in color and attached to or printed on 8 1/2" x 11" white paper.

**Section I. Property Information**

Name Property Owner: Johnny Tyler

Address of Affected Property: 8675 130th Avenue
Fellsmere, FL 32948

Is this Property:* (Residential)   Commercial   Governmental

Name of Person Completing this Form: Johnny Tyler

Is above your primary residence? (Yes)  No

Mailing Address (if different):

Phone: ( 954 )  261 - 1933

* If your response is commercial or governmental you should not fill out the remaining questions, you will receive a follow up form at a later date.

Circle one: (Owner-Occupant)   Owner Only   Renter-Occupant

Represented By: James V. Doyle, Jr.

Address: DOYLE LAW FIRM, PC
2100 Southbridge Pkwy, Suite 650
Birmingham, AL  35209

Phone: ( 205 )  533 - 9500

Case No. /Docket Info: Bennett v. Knauf, 14-cv-2722

**Section II. Insurance Information**

Homeowner/ Renter Insurer:

Policy #:

Agent:

Address:

Phone: (        )        -

+ Attach Copy of Insurance Declaration Page

**Section III. Claimant Information**

| Name of Claimant | Dates Occupied | | Gender | Date of Birth | Are you claiming personal injuries?* Circle One | Identify Claimant Status as an Owner-Occupant, an Owner Only, or an Occupant or Renter Only |
|---|---|---|---|---|---|---|
| | Move-in | Leave | | | | |
| Johnny Tyler | 12 / 1 / 2006 | / / | (M)/ F | 7 /11/49 | Yes (No) | Owner - Occupant |
| | / / | / / | M / F | / / | Yes  No | |
| | / / | / / | M / F | / / | Yes  No | |
| | / / | / / | M / F | / / | Yes  No | |
| | / / | / / | M / F | / / | Yes  No | |
| | / / | / / | M / F | / / | Yes  No | |
| | / / | / / | M / F | / / | Yes  No | |
| | / / | / / | M / F | / / | Yes  No | |
| | / / | / / | M / F | / / | Yes  No | |

* Personal injuries include claims for mental anguish and medical monitoring.

| Exhibit | |
|---|---|
| Exhibit No.: | 1 |
| Name: | |
| Date: | |
| ESQUIRE | |

Plaintiff Profile Form - Residential Properties

## Section IV. Inspection Information

1.0. Have you, or has anyone on your behalf, conducted an inspection into whether Chinese-manufactured drywall is present in your home?   (Yes)   No

   1.1. If "Yes" to Question 1.0 Section IV. Who conducted the inspection?   Chinese Drywall Screening, LLC

     1.2. When did the inspection take place?   11 / 06 / 17

2.0. Has a determination been made that Chinese-manufactured drywall is present in your home?   (Yes)   No

   2.1. If "Yes" to Question 2.0. Section IV. Who made this determination?   Chinese Drywall Screening, LLC

     2.2. When was this determination made?   11 / 06 / 17

## Section V. Drywall Information

| Drywall Manufacturer | Markings on Drywall | Location in Home |
|---|---|---|
| Knauf Plasterboard Tianjin | Knauf Tianjin China ASTM C36 | Walls |
| | | |
| | | |
| | | |

## Section VI. Home Information

| Approx. Sq. Ft. of House: | 2,434 | | | Yes | No |
|---|---|---|---|---|---|
| Estimated Sq. Ft. of Drywall | ----------- | Occupied | | X | |
| Height of Interior Walls | 9' | Year-round | | X | |
| Number of Bedrooms: | 4 | Summer | | X | |
| Number of Bathrooms: | 3 | Winter | | X | |

### Plumbing System

| | Blackening or Corrosion? | | |
|---|---|---|---|
| | Yes | No | N/A |
| PVC/ CPVC/ Plastic Piping | | X | |
| Copper Piping | X | | |
| Copper Fixtures | X | | |
| Other Fixtures | X | | |
| Were repairs made to the plumbing system? | | X | |
| Dates: | | | |

### Electrical System

| | Blackening or Corrosion? | | |
|---|---|---|---|
| | Yes | No | N/A |
| Receptacles | X | | |
| Switches | X | | |
| Main Panel | X | | |
| 2nd Panel | | | X |
| Exposed Copper Wires | X | | |
| Were repairs made to the electrical system? | | X | |
| Dates: | | | |

+ Attach Copy of Floor Plan on 8 1/2" X 11" paper

## Section VII. Construction/Renovation Information

Date Range for New Home Construction: (Month/Day/Year)

| Start Date: | 04 / 04 / 05 | Completion Date | 12 / 06 / 06 |
|---|---|---|---|
| Move In Date: | 12 / 06 / 06 | Date Acquired Home | / / |

Date Range for Renovations: (Month/Day/Year)

| Start Date: | / / | Completion Date | / / |
|---|---|---|---|
| Move In Date: | / / | | |

| Renovation(s) | Yes | No | N/A |
|---|---|---|---|
| First Floor: 1/2 Wall of drywall replaced | | | X |
| First Floor: Full Wall of drywall replaced | | | X |
| Second Floor: Any drywall replaced | | | X |

## Section VIII. Homebuilder/ General Contractor/ Developer Information

Homebuilder/ General Contractor/ Developer's Name:

Address: _____

Phone: ( ) _____

+ Attach Copy of Construction/Renovation Contract
+ Attach Copy of New Home Warranty Declaration

## Section IX. Drywall Installer

Drywall Installer's Name:

Address:

Phone: ( ) -

## Section X. Drywall Supplier

Drywall Supplier's Name:   Banner Building Supply Company

Address:   Miami, FL

Phone: ( ) -

Plaintiff Profile Form - Residential Properties

**Section XI. Verification of Plaintiff Profile Form**

I declare under penalty of perjury under the laws of the United States of America and pursuant to 28 U.S.C. § 1746 that all information provided in this Plaintiff Profile Form is true and correct to the best of my knowledge, and that I have supplied all of the documents requested in this declaration to the extent that such documents are in my possession, custody or control.

| Claimant's Signature | Date Signed | Claimant's Signature | Date Signed |
|---|---|---|---|
| _____ 11/6/17 | | | |
| Claimant's Signature | Date Signed | Claimant's Signature | Date Signed |
| Claimant's Signature | Date Signed | Claimant's Signature | Date Signed |

**FEDERATED NATIONAL INSURANCE COMPANY**
14050 NW 14th Street, Suite 180
Sunrise, FL 33323
Claims: 1-800-293-2532
Service: Contact Your Agent Listed Below

**RENEWAL DECLARATION EFFECTIVE**
5/11/2017

**FEDERATED ⋆⋆ NATIONAL**

| Policy Number | Policy Period   12:01 AM Standard Time | Agent Code |
|---|---|---|
| FE-0000435546-05 | FROM 5/11/2017   TO 5/11/2018 | 04848 |

| Named Insured and Mailing Address: | Location of Residence Premises: | Agent: |
|---|---|---|
| JOHNNY TYLER<br>8675 130th Ave<br>Fellsmere, FL. 32948 | 8675 130TH AVE<br>FELLSMERE, FL. 32948 | INDIAN RIVER AGENCY GROUP INC (2)<br>P.O. BOX 100<br>FELLSMERE, FL. 32948<br><br>Phone: (772) 571-1555 |

Coverage is only provided where a premium and a limit of liability is shown.

# HURRICANE DEDUCTIBLE: [ 2% of coverage A / $5,400 ]

**ALL OTHER PERILS DEDUCTIBLE:**  $1,000

**SINKHOLE LOSS DEDUCTIBLE :**  [ 10% of coverage A / $27,000 ]

| SECTION I –PROPERTY COVERAGES | LIMIT OF LIABILITY | ANNUAL PREMIUM |
|---|---|---|
| A - Dwelling | $270,000 | $4917.00 |
| B - Other Structures | $5,400 | INCL |
| C - Personal Property | $135,000 | INCL |
| D - Loss of Use | $54,000 | INCL |

| SECTION II – LIABILITY COVERAGES | | |
|---|---|---|
| E – Personal Liability | $300,000 | $ 30.00 |
| F – Medical Payments | $1,000 | INCL |

| OPTIONAL COVERAGES | | |
|---|---|---|
| Ordinance or Law Coverage | 25% of coverage A | INCL |
| Protective Device Credit | | $- 23.31 |
| Personal Property Replacement Cost | | $ 734.05 |
| Dwelling Age Credit/Surcharge | | $- 78.01 |
| Claim Free Discount | | $- 39.44 |
| Senior Discount | | $- 74.93 |
| Building Code Compliance Grading | | $- 276.14 |
| Windstorm Protective Devices | | $-3632.74 |
| Loss Assessment | $1,000 | INCL |
| Limited Fungi, Wet or Dry Rot, or Bacteria (Property) | $10,000 | INCL |
| Limited Fungi, Wet or Dry Rot, or Bacteria (Liability) | $50,000 | INCL |
| Sinkhole Coverage | | INCL |

FNIC HO 9 (04 16)

1

Supplemental Plaintiff Profile Form – Residential and Commercial Properties

For Internal Use Only
File No. _____

**Date Received:**
_____

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

In re:  Chinese Manufactured Drywall
Products Liability Litigation

This Document Relates to:

MDL NO. 2047
SECTION: L
JUDGE FALLON
MAG. JUDGE WILKINSON

*Elizabeth Bennett v. Gebrueder Knauf Verwaltungsgesellschaft, KG, et al.,*  Civil Action No.: 14-cv-2722-EEF-JCW (E.D.La)

This Supplemental Plaintiff Profile Form must be completed and signed by every person making a claim in this litigation against the manufacturer of Chinese Drywall,  Knauf Plasterboard Tianjin     , using one form per Property. In completing this Supplemental Profile Form, you are under oath and must provide all information within your knowledge, custody and control that is true and correct to the best of your knowledge.  If you have already submitted a Plaintiff Profile Form, this Supplemental Plaintiff Profile Form will be in addition to and supplement the prior Profile Form submitted.  You have an affirmative obligation to search for all documents, electronically stored information, and tangible things responsive to this questionnaire.  You may and should consult with your attorney if you have any questions regarding completion of this form. If you are completing the form for someone who has died or who cannot complete the Profile Form, please answer as completely as you can for that person.

The responses contained within this Supplemental Plaintiff Profile Form are made without waiving any rights or objections as to relevance or privilege and are made without any abrogation of legal defenses, including those of the Collateral Source Doctrine.

The questions and requests for production contained within this Supplemental Profile Form are non-objectionable and shall be answered without objection. By answering this Supplemental Profile Form, you are not waiving the attorney work product and/or attorney client privileges. Similarly, by disclosing the identity of consultants, such consultants may remain non-testifying experts if provided for by applicable law, and are subject to all protections afforded by law.  Failure to fully complete this Supplemental Profile Form and provide the appropriate documents may result in a motion filed against you pursuant to Rule 37 of the Federal Rules of Civil Procedure, which could include a request for dismissal of the action in whole or in part.

All photographs produced in response to this form shall be in color.

## Section I. Claimant and Property Information

Name of Claimant: Johnny          C     Tyler

| First Name | M.I. | Last Name | Suffix |

| Co-Claimant First Name (if applicable) | M.I. | Last Name | Suffix |

Business/Entity Name (if applicable)

1

Exhibit
Exhibit No.:  2
Name:
Date:
ⓔESQUIRE

Supplemental Plaintiff Profile Form – Residential and Commercial Properties

Address of Property in this Lawsuit ("Property"):

8675 130th Avenue
Address 1      Address 2

Fellsmere      FL      32948
City      State      Zip Code

Is the Property residential or commercial? Residential

Name of Person
Completing this Form:    Johnny     C    Tyler
     First Name     M.I.    Last Name      Suffix

Mailing Address (if different):

Address 1      Address 2

City      State      Zip Code

Phone Number of Person Completing This Form: ( 954 ) 261 - 1933

### Section II. Purchase, Sale and/or Transfer of Ownership of a Property and Assignments of Claims

When did you acquire the Property? Month/Day/Year: 3 / 21 / 2005

When was Chinese drywall installed in the Property (to the best of your knowledge)?
Month/Day/Year: 7 / ?? / 2006

When you acquired the Property, were you aware that it contained Chinese drywall? ☐ Yes ☑ No

If you were not aware, at the time you acquired the Property, that the Property contained Chinese drywall, when did you first become aware that the Property contained Chinese drywall?
Month/Year: 10 / 2017

If you believe Chinese drywall was installed after you acquired the Property, when and how did you first become aware that the Property contained Chinese drywall?

I learned that the home potentially had defective Chinese drywall when I attempted to sell the home in 2017, so I had a Chinese drywall inspection done.

If you acquired the Property knowing that the Property contained Chinese drywall, have you expressly acquired an assignment or other personal right of action that allows you to pursue a claim for damages?
☐ Yes ☐ No

If Yes, attach a copy of the document assigning any right or claim to you.

If Yes, did you acquire the assignment with the purchase of the Property or at some later time?

Have you sold or transferred ownership of the Property since you acquired it? ☐ Yes ☑ No

If No, go to Section III.

If Yes, on what date did you sell or transfer ownership of the Property?

Month/Day/Year: _____ / _____ / _____

2

Supplemental Plaintiff Profile Form – Residential and Commercial Properties

If you have sold or transferred ownership of the Property, did you at the time of sale assign to anyone any right of action for damages relating to the Property? ☐ Yes ☐ No

If you have sold or transferred ownership of the Property, did you expressly retain a personal right of action to allow you to pursue damages? ☐ Yes ☐ No

If you answered Yes to either of the two prior questions, attach a copy of any documents relating to your sale or transfer of ownership of the Property and to the assignment of a right of action for damages.

---

**Section III. Product Identification and Evidence Retention**

Did you provide evidence of Chinese drywall in the Property to the Plaintiffs' Steering Committee to be placed in the PSC FileCloud Database? ☑ Yes ☐ No

If Yes, do you have any additional evidence of Chinese drywall in the Property that you have not provided to the Plaintiffs' Steering Committee? ☐ Yes ☑ No

If No, go to Section IV. If Yes, **attach** all additional evidence of Chinese drywall in the Property that you have not already provided to the Plaintiffs' Steering Committee.

---

**Section IV. Bankruptcy, Foreclosure or Short Sale**

Do you contend that you entered personal bankruptcy as a result of damage to your Property from defective Chinese Drywall? ☐ Yes ☑ No

If Yes, answer the following questions:

If you entered personal bankruptcy, identify the case number and docket information of the filing.

Court filed in: _____

Date of filing: _____/_____/_____
             Month   Day    Year

Docket No.: _____

Present Status: _____

Attach your bankruptcy petition and documents filed therewith, including (1) the schedule of assets and liabilities; (2) the schedule of income and expenditures; (3) the statement of financial affairs; (4) the schedule of executory contracts and unexpired leases; (5) the list of creditors and amount and nature of claims; (6) the source, amount, and frequency of the debtor's income; (7) the list of all the debtor's property; and (8) the detailed list of the debtor's monthly living expenses.

Do you contend that a foreclosure or short sale occurred as a result of damage to your Property from defective Chinese Drywall? ☐ Yes ☑ No

If Yes, answer the following questions:

If the Property was the subject of a foreclosure or short sale, identify the following:

Foreclosure or Short Sale? _____

Supplemental Plaintiff Profile Form - Residential and Commercial Properties

Lender's name: _____

Loan Number: _____

Original Loan/Mortgage Amount: $_____

Date of Original Loan/Mortgage: _____/_____/_____
                                 Month  Day   Year

At the Date of Foreclosure or Short Sale,
the amount owed on the Loan/Mortgage: $_____

Date of Foreclosure or Short Sale: _____/_____/_____
                                   Month  Day   Year

Short Sale Price (if applicable): $_____

Attach all loan/mortgage documentation and documentation pertaining to the acquisition of the property.

Attach all documents relating to any foreclosure or short sale, including but not limited to any financial statements provided to the lender, a seller's hardship letter, tax returns, W-2 forms, payroll stubs, and bank statements provided to the lender, and comparative market analyses of comparable sales provided to the lender.

### Section V. Already Remediated Property

Has the Property been partially or completely remediated? No _____

If completely or partially remediated, answer the following questions. If No, go to Section VI.

Please identify the dates during which the remediation took place:

_____

Please identify who performed the work to remediate the property (for example: self, name of contractor, name of remediation service): _____

If the Property has been partially remediated, identify the rooms of the Property that were remediated, the current condition and status of the remediation and the amount of work remaining to be remediated:

Attach any documents supporting any work that you or others performed for remediation of the Property.

If the Property has been partially or completely remediated, what was the total cost to date for the remediation of the Property?

$_____

Attach all invoices and documents to support the total cost of remediation to date.

4

Supplemental Plaintiff Profile Form – Residential and Commercial Properties

Attach all invoices, purchase receipts and documents supporting the total cost or value of any appliances, fixtures or other electronics that you claim were damaged by Chinese drywall.

Attach all invoices, purchase receipts and documents supporting the total cost or value of any other movables (property or possessions, not including land or buildings) that you claim were damaged by Chinese drywall.

If the Property has been completely remediated, what was the date the remediation was completed?

Month/Year: _____/_____

Have you preserved at least two samples (of ten inches by ten inches (10" x 10") in size if possible) of every different drywall brand or marking removed from the Property? ☐ Yes ☐ No

If you have preserved samples, where are the samples located?

_____

Have you preserved at least one sample of each type of drywall endtape, if any, that was found during inspection, repair or removal of drywall in or from the Property? ☐ Yes ☐ No

If you have preserved samples, where are the samples located?

_____

Have you photographed the backside of each Chinese-manufactured drywall board removed from the Property immediately after it was removed, and have you documented on a floor plan or other similar diagram the location of each full or partial Chinese-manufactured drywall board and its photograph?
☐ Yes ☐ No

If you have photographed and documented each Chinese-manufactured board, please attach the photograph(s) and floor plan.

Have you photographed the HVAC coil, at least one (1) plumbing component and three (3) electrical components that you allege were damaged by Chinese drywall? ☐ Yes ☐ No

If you have photographed these materials, please attach the photographs.

Have you photographed any other building materials, components, or other personal property for which you intend to seek recovery? ☐ Yes ☐ No

If you have photographed these materials, please attach the photographs.

**Section VI.  Prior Payments**

Have you received any payments, including but not limited to settlement payments, payments from homebuilders, and insurance payments, related to damages you claim to have suffered caused by defective Chinese drywall in the Property or related to any other harm caused by defective Chinese drywall? ☐ Yes ☑ No

If Yes, identify the source(s) and state the amount of payment(s) you received?

Source: _____

Amount of payments received: $ _____

Supplemental Plaintiff Profile Form – Residential and Commercial Properties

Source: _____

Amount of payments received: $ _____

Source: _____

Amount of payments received: $ _____

If you received payments from the Knauf settlement, state the percentage of the Chinese Drywall that was identified as "KPT Chinese Drywall" as described in section 1.27 of the Knauf Settlement Agreement: _____%

Attach documents reflecting the total amount you received from the source(s).

**Section VII. Other Damages**

If you incurred alternative living expenses as a result of Chinese Drywall, identify the total moving cost and/or alternative living expense you incurred.

$_____

Attach all receipts and documents supporting the total moving cost and/or alternative living expense you incurred.

If you experienced any loss of use and/or loss of enjoyment of the Property as a result of Chinese Drywall, identify the total amount of such loss.

$ 369,200.42 _____

Attach all documentation to support the total amount claimed for the loss.

If you claim a diminution in value of the Property as a result of Chinese Drywall, identify the total amount of such diminution of value being claimed.

$ 235,012.00 _____

Attach all documentation to support the total amount claimed for diminution of value, including documents showing that the Property's previous value.

**Section VIII. "Under Air" Square Footage**

Has the under air square footage of the Property changed at any time since installation of the Chinese drywall? ☐ Yes  ☑ No

If the square footage has changed, please identify the date(s) and change(s) to under air square footage, and attach all documentation that relates to each change:

Date: _____

Change: _____

Date: _____

Change: _____

6

Supplemental Plaintiff Profile Form – Residential and Commercial Properties

Date: _____

Change: _____

**Section IX. Verification of Supplemental Plaintiff Profile Form**

I declare under penalty of perjury under the laws of the United States of America and pursuant to 28 U.S.C. § 1746 that I am the claimant identified in this Supplemental Plaintiff Profile Form and that all information provided in this Supplemental Plaintiff Profile Form is true and correct to the best of my knowledge, and that I have supplied all of the documents requested in this declaration to the extent that such documents are in my possession, custody or control.

I further declare under penalty of perjury under the laws of the United States of America and pursuant to 28 U.S.C. § 1746 that all information previously provided by me in my original Plaintiff Profile Form continues to be true and correct and has been updated to the best of my knowledge.

_Johnny C. Tyler_                                  3/20/18
Claimant's signature                              Date signed

Name:   _Johnny C. Tyler_

Address: _8675 130th Ave_
Address 1                          Address 2

_Fellsmere, FL        32948_
City              State      Zip Code

Phone No.: _(954) 261- 1933_

Email: _ONEONONE17@MSN.COM_

7

# EXHIBIT

## [See Section VII of SPPF]

Related to:
Alternative Living Expenses,
Loss of Use/Loss of Enjoyment,
or Diminution of Value

Section VII.  Loss of Use / Loss of Enjoyment

$369,200.42 in loss of use / loss of enjoyment damages is appropriate and consistent with past verdicts in the Chinese drywall litigation, based on the number of years I and my family have owned and/or lived in the home containing defective Chinese-manufactured sheetrock produced by the Knauf Defendants.  It also includes the value of discrete items that have damaged by the Knauf product.

Section VII.  Diminution of Value

Attached are documents that support a claim for diminution of this property's value. Based on these records, our home's value has decreased by $235,012.00 due to the adverse effects of the defective Chinese sheetrock produced by the Knauf defendants.

for_sale/8675-130th-Ave.-Fellsmere.-FL-32948_rb/?fromHomePage=true&shouldFireSellPageImplicitClaimGA=false&fromHomePageTab=buy

ell Conne:   | Sign in to your Micr:   | Mail - john Tyler - C   | Personal Capital - Lo   | NOLA   SunTrust   | PNC   | Fidelity   | AE   | Etrade   | HDCVI - Loc

PROJECT HOME FACTS    ♡ SAVE    ⬛ SHARE    ⊘ HIDE    MORE ▾                    ⧉ EXPAND    ✕ CLOSE

**Public View**        Owner View



## 8675 130th Ave, Fellsmere, FL 32948

**4 beds · 3 baths · 2,434 sqft**

*Note: This property is not currently for sale or for rent. The description below may be from a previous listing.*

Welcome To Nature At Its Finest! Private Estate On 1.77 Acres. Paved Road. This Beautiful Home Boasts 14 Foot Ceilings In The Main Living Area, With Crown Molding, Arched Doorways, Tray Ceilings, Stainless Steel Appliances, Large Granite Kitchen. Dining Area Has A Handy Wet Bar For All your Entertaining Needs. Sit Out In Your Private Screened Lanai And Enjoy Peace And Quiet With Nature.

⊘ OFF MARKET

Zestimate®:
**$329,749**
Rent Zestimate®: $2,505 /mo

EST. REFI PAYMENT
**$1,304/mo** 🏷 ▾
See current rates

### Home Shoppers are Waiting

Ask an agent about market conditions in your neighborhood.

I own this home and would like to ask an agent about selling

| Contact Agent |

Or call 772-210-3864 for more info

3/20/2018                         Indian River County, Florida Property Appraiser - Property Data

# Data For Parcel 31370000011203800003.0

## History Data

| | |
|---|---|
| **Parcel:** | 31370000011203800003.0 |
| **Owner:** | TYLER JOHNNY (TR)(TOK) |
| **Site Address:** | 8675 130TH AV FELLSMERE, FL 32948 |



[+] Map this property.

## Exemptions

| Exemption Type | Description |
|---|---|
| HEX | Exemption of Homestead |

## History

| Year | History Value By | Property Use | Land Just Value | Land Class Value | Misc Value | Bldg Value | CAMA Value | Taxes |
|---|---|---|---|---|---|---|---|---|
| 2017 | | 0100 | $18,743 | $0 | $0 | $94,988 | $113,731 | $1,320.52 |
| 2016 | C | 0100 | $17,140 | $0 | $1,630 | $182,860 | $201,630 | $2,394.99 |
| 2015 | C | 0100 | $16,070 | $0 | $1,630 | $182,860 | $200,560 | $2,479.33 |
| 2014 | C | 0100 | $9,070 | $0 | $1,370 | $168,150 | $178,590 | $2,407.41 |
| 2013 | C | 0100 | $8,620 | $0 | $1,370 | $168,150 | $178,140 | $2,400.98 |
| 2012 | C | 0100 | $9,580 | $0 | $1,380 | $169,910 | $180,870 | $2,413.10 |
| 2011 | C | 0100 | $9,580 | $0 | $1,380 | $169,910 | $180,870 | $2,409.73 |
| 2010 | C | 0100 | $9,580 | $0 | $1,400 | $171,650 | $182,630 | $2,442.54 |
| 2009 | C | 0100 | $16,760 | $0 | $1,400 | $171,650 | $189,810 | $2,446.88 |
| 2008 | C | 0100 | $32,560 | $0 | $1,410 | $173,410 | $207,380 | $2,589.54 |
| 2007 | C | 0100 | $32,990 | $0 | $1,420 | $175,320 | $209,730 | $2,878.43 |
| 2006 | C | 0000 | $53,550 | $0 | $0 | $0 | $53,550 | $834.85 |
| 2005 | C | 0000 | $64,770 | $0 | $0 | $0 | $64,770 | $1,114.91 |
| 2004 | C | 0000 | $23,840 | $0 | $0 | $0 | $23,840 | $449.96 |

Report Discrepancy

*GIS parcel shapefile last updated 3/16/2018 9:09:48 PM.*
*The CAMA data presented on this website is current as of 5/12/2017 10:12:47 AM.*

*I had a contract to sell the house for $330,000 in October 2017. The real Estate says the house is valued at 0 dollars. Using the county's value (94,988), the loss in value is $235,012 (330,000 — 94,988).*

DigiSign Verified: E9D87E96-1B84-434B-AD3B-C534773A8E34



## "AS IS" Residential Contract For Sale And Purchase
THIS FORM HAS BEEN APPROVED BY THE FLORIDA REALTORS AND THE FLORIDA BAR

| | | |
|---|---|---|
| 1* | **PARTIES:** _____ Tyler Johnny _____ | ("Seller"), |
| 2* | and _____ Autumn Michelle Lindsey _____ | ("Buyer"), |

3  agree that Seller shall sell and Buyer shall buy the following described Real Property and Personal Property
4  (collectively "Property") pursuant to the terms and conditions of this AS IS Residential Contract For Sale And Purchase
5  and any riders and addenda ("Contract"):
6  **1. PROPERTY DESCRIPTION:**
7*      (a) Street address, city, zip: _____ 8675 130th AVE, Fellsmere FL 32948 _____
8*      (b) Located in: _____ Indian River _____ County, Florida. Property Tax ID #: _____ 31370000011203800003.0 _____
9*      (c) Real Property: The legal description is HOMEWOOD ADDITION - TRACT 2038 LOT 3 PBS 2-15
10
11
12          together with all existing improvements and fixtures, including built-in appliances, built-in furnishings and
13          attached wall-to-wall carpeting and flooring ("Real Property") unless specifically excluded in Paragraph 1(e) or
14          by other terms of this Contract.
15      (d) Personal Property: Unless excluded in Paragraph 1(e) or by other terms of this Contract, the following items
16          which are owned by Seller and existing on the Property as of the date of the initial offer are included in the
17          purchase: range(s)/oven(s), refrigerator(s), dishwasher(s), disposal, ceiling fan(s), intercom, light fixture(s),
18          drapery rods and draperies, blinds, window treatments, smoke detector(s), garage door opener(s), security gate
19          and other access devices, and storm shutters/panels ("Personal Property").
20*          Other Personal Property items included in this purchase are: Dishwasher, Disposal, Dryer, Microwave, Range,
21          Refrigerator, Wall Oven(s), Washer
22          Personal Property is included in the Purchase Price, has no contributory value, and shall be left for the Buyer.
23*      (e) The following items are excluded from the purchase: _____
24

25                               **PURCHASE PRICE AND CLOSING**

26*  **2. PURCHASE PRICE** (U.S. currency): ..............................................................$ _____ 330,000
27*      (a) Initial deposit to be held in escrow in the amount of (checks subject to COLLECTION) ......$ _____ 5,000
28          The initial deposit made payable and delivered to "Escrow Agent" named below
29*          (CHECK ONE): (i) ☐ accompanies offer or (ii) ☒ is to be made within __3__ (if left
30          blank, then 3) days after Effective Date. IF NEITHER BOX IS CHECKED, THEN
31          OPTION (ii) SHALL BE DEEMED SELECTED.
32*          Escrow Agent Information: Name: _____ Professional Title of Sebastian _____
33*          Address: _____ 1546 US-1, Sebastian, FL 32958 _____
34*          Phone: _____ (772) 589-3231 _____ E-mail: _____ Fax: _____
35*      (b) Additional deposit to be delivered to Escrow Agent within _____ (if left blank, then 10)
36*          days after Effective Date ....................................................................$ _____ 0
37          (All deposits paid or agreed to be paid, are collectively referred to as the "Deposit")
38*      (c) Financing: Express as a dollar amount or percentage ("Loan Amount") see Paragraph 8 ........ _____ 314,000
39*      (d) Other: _____ ................$ _____ 0
40      (e) Balance to close (not including Buyer's closing costs, prepaids and prorations) by wire
41*          transfer or other COLLECTED funds ......................................................$ _____ 11,000
42          NOTE: For the definition of "COLLECTION" or "COLLECTED" see STANDARD S.
43  **3. TIME FOR ACCEPTANCE OF OFFER AND COUNTER-OFFERS; EFFECTIVE DATE:**
44      (a) If not signed by Buyer and Seller, and an executed copy delivered to all parties on or before
45*           _____ 10/24/2017 _____ , this offer shall be deemed withdrawn and the Deposit, if any, shall be returned to
46          Buyer. Unless otherwise stated, time for acceptance of any counter-offers shall be within 2 days after the day
47          the counter-offer is delivered.
48      (b) The effective date of this Contract shall be the date when the last one of the Buyer and Seller has signed or
49          initialed and delivered this offer or final counter-offer ("Effective Date").
50  **4. CLOSING DATE:** Unless modified by other provisions of this Contract, the closing of this transaction shall occur
51      and the closing documents required to be furnished by each party pursuant to this Contract shall be delivered
52*      ("Closing") on _____ or before 11/30/2017 _____ ("Closing Date"), at the time established by the Closing Agent.

DigiSign Verified: E9D87E96-1B84-434B-AD3B-C534773A8E34

53  **5.  EXTENSION OF CLOSING DATE:**
54  (a)  If Paragraph 8(b) is checked and Closing funds from Buyer's lender(s) are not available on Closing Date due
55  to Consumer Financial Protection Bureau Closing Disclosure delivery requirements ("CFPB Requirements"),
56  then Closing Date shall be extended for such period necessary to satisfy CFPB Requirements, provided such
57  period shall not exceed 10 days.
58  (b)  If an event constituting "Force Majeure" causes services essential for Closing to be unavailable, including the
59  unavailability of utilities or issuance of hazard, wind, flood or homeowners' insurance, Closing Date shall be
60  extended as provided in STANDARD G.
61  **6.  OCCUPANCY AND POSSESSION:**
62  (a)  Unless the box in Paragraph 6(b) is checked, Seller shall, at Closing, deliver occupancy and possession of the
63  Property to Buyer free of tenants, occupants and future tenancies. Also, at Closing, Seller shall have removed
64  all personal items and trash from the Property and shall deliver all keys, garage door openers, access devices
65  and codes, as applicable, to Buyer. If occupancy is to be delivered before Closing, Buyer assumes all risks of
66  loss to the Property from date of occupancy, shall be responsible and liable for maintenance from that date,
67  and shall be deemed to have accepted the Property in its existing condition as of time of taking occupancy.
68*  (b)  ☐ CHECK IF PROPERTY IS SUBJECT TO LEASE(S) OR OCCUPANCY AFTER CLOSING. If Property is
69  subject to a lease(s) after Closing or is intended to be rented or occupied by third parties beyond Closing, the
70  facts and terms thereof shall be disclosed in writing by Seller to Buyer and copies of the written lease(s) shall
71  be delivered to Buyer, all within 5 days after Effective Date. If Buyer determines, in Buyer's sole discretion, that
72  the lease(s) or terms of occupancy are not acceptable to Buyer, Buyer may terminate this Contract by delivery
73  of written notice of such election to Seller within 5 days after receipt of the above items from Seller, and Buyer
74  shall be refunded the Deposit thereby releasing Buyer and Seller from all further obligations under this Contract.
75  Estoppel Letter(s) and Seller's affidavit shall be provided pursuant to STANDARD D. If Property is intended to
76  be occupied by Seller after Closing, see Rider U. POST-CLOSING OCCUPANCY BY SELLER.
77*  **7.  ASSIGNABILITY: (CHECK ONE):** Buyer ☐ may assign and thereby be released from any further liability under
78*  this Contract; ☒ may assign but not be released from liability under this Contract; or ☐ may not assign this
79  Contract.

80  **FINANCING**

81  **8.  FINANCING:**
82*  ☐ (a) Buyer will pay cash for the purchase of the Property at Closing. There is no financing contingency to Buyer's
83  obligation to close. If Buyer obtains a loan for any part of the Purchase Price of the Property, Buyer acknowledges
84  that any terms and conditions imposed by Buyer's lender(s) or by CFPB Requirements shall not affect or extend
85  the Buyer's obligation to close or otherwise affect any terms or conditions of this Contract.
86*  ☒ (b) This Contract is contingent upon Buyer obtaining approval of a ☒ conventional ☐ FHA ☐ VA or ☐ other
87*  _____ (describe) loan within ___30___ (if left blank, then 30) days after Effective Date ("Loan Approval
88*  Period") for (CHECK ONE): ☒ fixed, ☐ adjustable, ☐ fixed or adjustable rate in the Loan Amount (See Paragraph
89*  2(c)), at an initial interest rate not to exceed _____ % (if left blank, then prevailing rate based upon Buyer's
90*  creditworthiness), and for a term of _____(if left blank, then 30) years ("Financing").
91*  (i) Buyer shall make mortgage loan application for the Financing within _____ (if left blank, then 5) days
92  after Effective Date and use good faith and diligent effort to obtain approval of a loan meeting the Financing terms
93  ("Loan Approval") and thereafter to close this Contract. Loan Approval which requires a condition related to the sale
94  by Buyer of other property shall not be deemed Loan Approval for purposes of this subparagraph.

95  Buyer's failure to use diligent effort to obtain Loan Approval during the Loan Approval Period shall be considered a
96  default under the terms of this Contract.  For purposes of this provision, "diligent effort" includes, but is not limited
97  to, timely furnishing all documents and information and paying all fees and charges requested by Buyer's
98  mortgage broker and lender in connection with Buyer's mortgage loan application.

99  (ii) Buyer shall keep Seller and Broker fully informed about the status of Buyer's mortgage loan application,
100  Loan Approval, and loan processing and authorizes Buyer's mortgage broker, lender, and Closing Agent to disclose
101  such status and progress, and release preliminary and finally executed closing disclosures and settlement
102  statements, to Seller and Broker.
103  (iii) Upon Buyer obtaining Loan Approval, Buyer shall promptly deliver written notice of such approval to Seller.
104  (iv) If Buyer is unable to obtain Loan Approval after the exercise of diligent effort, then at any time prior to
105  expiration of the Loan Approval Period, Buyer may provide written notice to Seller stating that Buyer has been
106  unable to obtain Loan Approval and has elected to either:
107  (1) waive Loan Approval, in which event this Contract will continue as if Loan Approval had been obtained; or
108  (2) terminate this Contract.

Buyer's Initials  _A/_____          Page 2 of 12          Seller's Initials  _JT____  _____
FloridaRealtors/FloridaBar-ASIS-5  Rev.4/17 © 2017 Florida Realtors® and The Florida Bar. All rights reserved.

DigiSign Verified: E9D87E96-1B84-434B-AD3B-C534773A8E34



109  (v) If Buyer fails to timely deliver either notice provided in Paragraph 8(b)(iii) or (iv), above, to Seller prior to
110  expiration of the Loan Approval Period, then Loan Approval shall be deemed waived, in which event this Contract
111  will continue as if Loan Approval had been obtained, provided however, Seller may elect to terminate this Contract
112  by delivering written notice to Buyer within 3 days after expiration of the Loan Approval Period.
113  (vi) If this Contract is timely terminated as provided by Paragraph 8(b)(iv)(2) or (v), above, and Buyer is not in
114  default under the terms of this Contract, Buyer shall be refunded the Deposit thereby releasing Buyer and Seller
115  from all further obligations under this Contract.
116  (vii) If Loan Approval has been obtained, or deemed to have been obtained, as provided above, and Buyer
117  fails to close this Contract, then the Deposit shall be paid to Seller unless failure to close is due to: (1) Seller's
118  default or inability to satisfy other contingencies of this Contract; (2) Property related conditions of the Loan Approval
119  have not been met (except when such conditions are waived by other provisions of this Contract); or (3) appraisal
120  of the Property obtained by Buyer's lender is insufficient to meet terms of the Loan Approval, in which event(s) the
121  Buyer shall be refunded the Deposit, thereby releasing Buyer and Seller from all further obligations under this
122  Contract.
123*  ☐ (c) Assumption of existing mortgage (see rider for terms).
124*  ☐ (d) Purchase money note and mortgage to Seller (see riders; addenda; or special clauses for terms).
125  **CLOSING COSTS, FEES AND CHARGES**
126  **9. CLOSING COSTS; TITLE INSURANCE; SURVEY; HOME WARRANTY; SPECIAL ASSESSMENTS:**
127  (a) **COSTS TO BE PAID BY SELLER:**
128  • Documentary stamp taxes and surtax on deed, if any ・ HOA/Condominium Association estoppel fees
129  • Owner's Policy and Charges (if Paragraph 9(c)(i) is checked) ・ Recording and other fees needed to cure title
130  • Title search charges (if Paragraph 9(c)(iii) is checked) ・ Seller's attorneys' fees
131*  • Municipal lien search (if Paragraph 9(c)(i) or (iii) is checked) ・ Other:_____
132  If, prior to Closing, Seller is unable to meet the AS IS Maintenance Requirement as required by Paragraph 11
133  a sum equal to 125% of estimated costs to meet the AS IS Maintenance Requirement shall be escrowed at
134  Closing. If actual costs to meet the AS IS Maintenance Requirement exceed escrowed amount, Seller shall pay
135  such actual costs. Any unused portion of escrowed amount(s) shall be returned to Seller.
136  (b) **COSTS TO BE PAID BY BUYER:**
137  • Taxes and recording fees on notes and mortgages ・ Loan expenses
138  • Recording fees for deed and financing statements ・ Appraisal fees
139  • Owner's Policy and Charges (if Paragraph 9(c)(ii) is checked) ・ Buyer's Inspections
140  • Survey (and elevation certification, if required) ・ Buyer's attorneys' fees
141  • Lender's title policy and endorsements ・ All property related insurance
142  • HOA/Condominium Association application/transfer fees ・ Owner's Policy Premium (if Paragraph
143  • Municipal lien search (if Paragraph 9(c)(ii) is checked) 9 (c)(iii) is checked.)
144*  • Other:_____
145*  (c) **TITLE EVIDENCE AND INSURANCE:** At least _____ (if left blank, then 15, or if Paragraph 8(a) is checked,
146  then 5) days prior to Closing Date ("Title Evidence Deadline"), a title insurance commitment issued by a Florida
147  licensed title insurer, with legible copies of instruments listed as exceptions attached thereto ("Title
148  Commitment") and, after Closing, an owner's policy of title insurance (see STANDARD A for terms) shall be
149  obtained and delivered to Buyer. If Seller has an owner's policy of title insurance covering the Real Property, a
150  copy shall be furnished to Buyer and Closing Agent within 5 days after Effective Date. The owner's title policy
151  premium, title search and closing services (collectively, "Owner's Policy and Charges") shall be paid, as set
152  forth below. The title insurance premium for the owner's policy and any lender's policy will be calculated
153  and allocated in accordance with Florida law, but may be reported differently on certain federally mandated
154  closing disclosures and other closing documents. For purposes of this Contract "municipal lien search" means a
155  search of records necessary for the owner's policy of title insurance to be issued without exception for unrecorded
156  liens imposed pursuant to Chapters 159 or 170, F.S., in favor of any governmental body, authority or agency.
157  (CHECK ONE):
158*  ☒ (i) Seller shall designate Closing Agent and pay for Owner's Policy and Charges, and Buyer shall pay the
159  premium for Buyer's lender's policy and charges for closing services related to the lender's policy,
160  endorsements and loan closing, which amounts shall be paid by Buyer to Closing Agent or such other
161  provider(s) as Buyer may select; or
162*  ☐ (ii) Buyer shall designate Closing Agent and pay for Owner's Policy and Charges and charges for closing
163  services related to Buyer's lender's policy, endorsements and loan closing; or

Buyer's Initials __A/__          Page 3 of 12          Seller's Initials __JT__

FloridaRealtors/FloridaBar-ASIS-5   Rev.4/17 © 2017 Florida Realtors® and The Florida Bar. All rights reserved.

DigiSign Verified: E9D87E96-1B84-434B-AD3B-C534773A8E34

☐ (iii) [MIAMI-DADE/BROWARD REGIONAL PROVISION]: Seller shall furnish a copy of a prior owner's policy of title insurance or other evidence of title and pay fees for: (A) a continuation or update of such title evidence, which is acceptable to Buyer's title insurance underwriter for reissue of coverage; (B) tax search; and (C) municipal lien search. Buyer shall obtain and pay for post-Closing continuation and premium for Buyer's owner's policy, and if applicable, Buyer's lender's policy. Seller shall not be obligated to pay more than $_____ (if left blank, then $200.00) for abstract continuation or title search ordered or performed by Closing Agent.

(d) **SURVEY:** On or before Title Evidence Deadline, Buyer may, at Buyer's expense, have the Real Property surveyed and certified by a registered Florida surveyor ("Survey"). If Seller has a survey covering the Real Property, a copy shall be furnished to Buyer and Closing Agent within 5 days after Effective Date.

(e) **HOME WARRANTY:** At Closing, ☐ Buyer ☐ Seller ☒ N/A shall pay for a home warranty plan issued by _____ . _____ at a cost not to exceed $_____ . A home warranty plan provides for repair or replacement of many of a home's mechanical systems and major built-in appliances in the event of breakdown due to normal wear and tear during the agreement's warranty period.

(f) **SPECIAL ASSESSMENTS:** At Closing, Seller shall pay: (i) the full amount of liens imposed by a public body ("public body" does not include a Condominium or Homeowner's Association) that are certified, confirmed and ratified before Closing; and (ii) the amount of the public body's most recent estimate or assessment for an improvement which is substantially complete as of Effective Date, but that has not resulted in a lien being imposed on the Property before Closing. Buyer shall pay all other assessments. If special assessments may be paid in installments (CHECK ONE):

☐ (a) Seller shall pay installments due prior to Closing and Buyer shall pay installments due after Closing. Installments prepaid or due for the year of Closing shall be prorated.

☒ (b) Seller shall pay the assessment(s) in full prior to or at the time of Closing.

IF NEITHER BOX IS CHECKED, THEN OPTION (a) SHALL BE DEEMED SELECTED.

This Paragraph 9(f) shall not apply to a special benefit tax lien imposed by a community development district (CDD) pursuant to Chapter 190, F.S., which lien shall be prorated pursuant to STANDARD K.

## DISCLOSURES

**10. DISCLOSURES:**

(a) **RADON GAS:** Radon is a naturally occurring radioactive gas that, when it is accumulated in a building in sufficient quantities, may present health risks to persons who are exposed to it over time. Levels of radon that exceed federal and state guidelines have been found in buildings in Florida. Additional information regarding radon and radon testing may be obtained from your county health department.

(b) **PERMITS DISCLOSURE:** Except as may have been disclosed by Seller to Buyer in a written disclosure, Seller does not know of any improvements made to the Property which were made without required permits or made pursuant to permits which have not been properly closed. If Seller identifies permits which have not been properly closed or improvements which were not permitted, then Seller shall promptly deliver to Buyer all plans, written documentation or other information in Seller's possession, knowledge, or control relating to improvements to the Property which are the subject of such open permits or unpermitted improvements.

(c) **MOLD:** Mold is naturally occurring and may cause health risks or damage to property. If Buyer is concerned or desires additional information regarding mold, Buyer should contact an appropriate professional.

(d) **FLOOD ZONE; ELEVATION CERTIFICATION:** Buyer is advised to verify by elevation certificate which flood zone the Property is in, whether flood insurance is required by Buyer's lender, and what restrictions apply to improving the Property and rebuilding in the event of casualty. If Property is in a "Special Flood Hazard Area" or "Coastal Barrier Resources Act" designated area or otherwise protected area identified by the U.S. Fish and Wildlife Service under the Coastal Barrier Resources Act and the lowest floor elevation for the building(s) and/or flood insurance rating purposes is below minimum flood elevation or is ineligible for flood insurance coverage through the National Flood Insurance Program or private flood insurance as defined in 42 U.S.C. §4012a, Buyer may terminate this Contract by delivering written notice to Seller within _____ (if left blank, then 20) days after Effective Date, and Buyer shall be refunded the Deposit thereby releasing Buyer and Seller from all further obligations under this Contract, failing which Buyer accepts existing elevation of buildings and flood zone designation of Property. The National Flood Insurance Program may assess additional fees or adjust premiums for pre-Flood Insurance Rate Map (pre-FIRM) non-primary structures (residential structures in which the insured or spouse does not reside for at least 50% of the year) and an elevation certificate may be required for actuarial rating.

(e) **ENERGY BROCHURE:** Buyer acknowledges receipt of Florida Energy-Efficiency Rating Information Brochure required by Section 553.996, F.S.

Buyer's Initials: _____ AL _____     Page 4 of 12     Seller's Initials: JT ____ _____

FloridaRealtors/FloridaBar-ASIS-5   Rev.4/17 © 2017 Florida Realtors® and The Florida Bar. All rights reserved.

DigiSign Verified: E9D87E96-1B84-434B-AD3B-C534773A8E34

(f) **LEAD-BASED PAINT:** If Property includes pre-1978 residential housing, a lead-based paint disclosure is mandatory.

(g) **HOMEOWNERS' ASSOCIATION/COMMUNITY DISCLOSURE:** BUYER SHOULD NOT EXECUTE THIS CONTRACT UNTIL BUYER HAS RECEIVED AND READ THE HOMEOWNERS' ASSOCIATION/COMMUNITY DISCLOSURE, IF APPLICABLE.

(h) **PROPERTY TAX DISCLOSURE SUMMARY:** BUYER SHOULD NOT RELY ON THE SELLER'S CURRENT PROPERTY TAXES AS THE AMOUNT OF PROPERTY TAXES THAT THE BUYER MAY BE OBLIGATED TO PAY IN THE YEAR SUBSEQUENT TO PURCHASE. A CHANGE OF OWNERSHIP OR PROPERTY IMPROVEMENTS TRIGGERS REASSESSMENTS OF THE PROPERTY THAT COULD RESULT IN HIGHER PROPERTY TAXES. IF YOU HAVE ANY QUESTIONS CONCERNING VALUATION, CONTACT THE COUNTY PROPERTY APPRAISER'S OFFICE FOR INFORMATION.

(i) **FOREIGN INVESTMENT IN REAL PROPERTY TAX ACT ("FIRPTA"):** Seller shall inform Buyer in writing if Seller is a "foreign person" as defined by the Foreign Investment in Real Property Tax Act ("FIRPTA"). Buyer and Seller shall comply with FIRPTA, which may require Seller to provide additional cash at Closing. If Seller is not a "foreign person", Seller can provide Buyer, at or prior to Closing, a certification of non-foreign status, under penalties of perjury, to inform Buyer and Closing Agent that no withholding is required. See STANDARD V for further information pertaining to FIRPTA. Buyer and Seller are advised to seek legal counsel and tax advice regarding their respective rights, obligations, reporting and withholding requirements pursuant to FIRPTA.

(j) **SELLER DISCLOSURE:** Seller knows of no facts materially affecting the value of the Real Property which are not readily observable and which have not been disclosed to Buyer. Except as provided for in the preceding sentence, Seller extends and intends no warranty and makes no representation of any type, either express or implied, as to the physical condition or history of the Property. Except as otherwise disclosed in writing Seller has received no written or verbal notice from any governmental entity or agency as to a currently uncorrected building, environmental or safety code violation.

### PROPERTY MAINTENANCE, CONDITION, INSPECTIONS AND EXAMINATIONS

**11. PROPERTY MAINTENANCE:** Except for ordinary wear and tear and Casualty Loss, Seller shall maintain the Property, including, but not limited to, lawn, shrubbery, and pool, in the condition existing as of Effective Date ("AS IS Maintenance Requirement").

**12. PROPERTY INSPECTION; RIGHT TO CANCEL:**

(a) *PROPERTY INSPECTIONS AND RIGHT TO CANCEL: Buyer shall have __15__ (if left blank, then 15) days after Effective Date ("Inspection Period") within which to have such inspections of the Property performed as Buyer shall desire during the Inspection Period. If Buyer determines, in Buyer's sole discretion, that the Property is not acceptable to Buyer, Buyer may terminate this Contract by delivering written notice of such election to Seller prior to expiration of Inspection Period. If Buyer timely terminates this Contract, the Deposit paid shall be returned to Buyer, thereupon, Buyer and Seller shall be released of all further obligations under this Contract; however, Buyer shall be responsible for prompt payment for such inspections, for repair of damage to, and restoration of, the Property resulting from such inspections, and shall provide Seller with paid receipts for all work done on the Property (the preceding provision shall survive termination of this Contract). Unless Buyer exercises the right to terminate granted herein, Buyer accepts the physical condition of the Property and any violation of governmental, building, environmental, and safety codes, restrictions, or requirements, but subject to Seller's continuing AS IS Maintenance Requirement, and Buyer shall be responsible for any and all repairs and improvements required by Buyer's lender.*

(b) **WALK-THROUGH INSPECTION/RE-INSPECTION:** On the day prior to Closing Date, or on Closing Date prior to time of Closing, as specified by Buyer, Buyer or Buyer's representative may perform a walk-through (and follow-up walk-through, if necessary) inspection of the Property solely to confirm that all Items of Personal Property are on the Property and to verify that Seller has maintained the Property as required by the AS IS Maintenance Requirement and has met all other contractual obligations.

(c) **SELLER ASSISTANCE AND COOPERATION IN CLOSE-OUT OF BUILDING PERMITS:** If Buyer's inspection of the Property identifies open or needed building permits, then Seller shall promptly deliver to Buyer all plans, written documentation or other information in Seller's possession, knowledge, or control relating to improvements to the Property which are the subject of such open or needed Permits, and shall promptly cooperate in good faith with Buyer's efforts to obtain estimates of repairs or other work necessary to resolve such Permit issues. Seller's obligation to cooperate shall include Seller's execution of necessary authorizations,

DigiSign Verified: E9D87E96-1B84-434B-AD3B-C534773A8E34

274 consents, or other documents necessary for Buyer to conduct inspections and have estimates of such repairs
275 or work prepared, but in fulfilling such obligation, Seller shall not be required to expend, or become obligated to
276 expend, any money.
277 (d) **ASSIGNMENT OF REPAIR AND TREATMENT CONTRACTS AND WARRANTIES:** At Buyer's option and
278 cost, Seller will, at Closing, assign all assignable repair, treatment and maintenance contracts and warranties
279 to Buyer.

280 **ESCROW AGENT AND BROKER**

281 **13. ESCROW AGENT:** Any Closing Agent or Escrow Agent (collectively "Agent") receiving the Deposit, other funds
282 and other items is authorized, and agrees by acceptance of them, to deposit them promptly, hold same in escrow
283 within the State of Florida and, subject to COLLECTION, disburse them in accordance with terms and conditions
284 of this Contract. Failure of funds to become COLLECTED shall not excuse Buyer's performance. When conflicting
285 demands for the Deposit are received, or Agent has a good faith doubt as to entitlement to the Deposit, Agent may
286 take such actions permitted by this Paragraph 13, as Agent deems advisable. If in doubt as to Agent's duties or
287 liabilities under this Contract, Agent may, at Agent's option, continue to hold the subject matter of the escrow until
288 the parties agree to its disbursement or until a final judgment of a court of competent jurisdiction shall determine
289 the rights of the parties, or Agent may deposit same with the clerk of the circuit court having jurisdiction of the
290 dispute. An attorney who represents a party and also acts as Agent may represent such party in such action. Upon
291 notifying all parties concerned of such action, all liability on the part of Agent shall fully terminate, except to the
292 extent of accounting for any items previously delivered out of escrow. If a licensed real estate broker, Agent will
293 comply with provisions of Chapter 475, F.S., as amended and FREC rules to timely resolve escrow disputes through
294 mediation, arbitration, interpleader or an escrow disbursement order.
295 In any proceeding between Buyer and Seller wherein Agent is made a party because of acting as Agent hereunder,
296 or in any proceeding where Agent interpleads the subject matter of the escrow, Agent shall recover reasonable
297 attorney's fees and costs incurred, to be paid pursuant to court order out of the escrowed funds or equivalent. Agent
298 shall not be liable to any party or person for mis-delivery of any escrowed items, unless such mis-delivery is due to
299 Agent's willful breach of this Contract or Agent's gross negligence. This Paragraph 13 shall survive Closing or
300 termination of this Contract.

301 **14. PROFESSIONAL ADVICE; BROKER LIABILITY:** Broker advises Buyer and Seller to verify Property condition,
302 square footage, and all other facts and representations made pursuant to this Contract and to consult appropriate
303 professionals for legal, tax, environmental, and other specialized advice concerning matters affecting the Property
304 and the transaction contemplated by this Contract. Broker represents to Buyer that Broker does not reside on the
305 Property and that all representations (oral, written or otherwise) by Broker are based on Seller representations or
306 public records. **BUYER AGREES TO RELY SOLELY ON SELLER, PROFESSIONAL INSPECTORS AND**
307 **GOVERNMENTAL AGENCIES FOR VERIFICATION OF PROPERTY CONDITION, SQUARE FOOTAGE AND**
308 **FACTS THAT MATERIALLY AFFECT PROPERTY VALUE AND NOT ON THE REPRESENTATIONS (ORAL,**
309 **WRITTEN OR OTHERWISE) OF BROKER.** Buyer and Seller (individually, the "Indemnifying Party") each
310 individually indemnifies, holds harmless, and releases Broker and Broker's officers, directors, agents and
311 employees from all liability for loss or damage, including all costs and expenses, and reasonable attorney's fees at
312 all levels, suffered or incurred by Broker and Broker's officers, directors, agents and employees in connection with
313 or arising from claims, demands or causes of action instituted by Buyer or Seller based on: (i) inaccuracy of
314 information provided by the Indemnifying Party or from public records; (ii) Indemnifying Party's misstatement(s) or
315 failure to perform contractual obligations; (iii) Broker's performance, at Indemnifying Party's request, of any task
316 beyond the scope of services regulated by Chapter 475, F.S., as amended, including Broker's referral,
317 recommendation or retention of any vendor for, or on behalf of, Indemnifying Party; (iv) products or services
318 provided by any such vendor for, or on behalf of, Indemnifying Party; and (v) expenses incurred by any such vendor.
319 Buyer and Seller each assumes full responsibility for selecting and compensating their respective vendors and
320 paying their other costs under this Contract whether or not this transaction closes. This Paragraph 14 will not relieve
321 Broker of statutory obligations under Chapter 475, F.S., as amended. For purposes of this Paragraph 14, Broker
322 will be treated as a party to this Contract. This Paragraph 14 shall survive Closing or termination of this Contract.

323 **DEFAULT AND DISPUTE RESOLUTION**

324 **15. DEFAULT:**
325 (a) **BUYER DEFAULT:** If Buyer fails, neglects or refuses to perform Buyer's obligations under this Contract,
326 including payment of the Deposit, within the time(s) specified, Seller may elect to recover and retain the Deposit
327 for the account of Seller as agreed upon liquidated damages, consideration for execution of this Contract, and
328 in full settlement of any claims, whereupon Buyer and Seller shall be relieved from all further obligations under

DigiSign Verified: E9D87E96-1B84-434B-AD3B-C534773A8E34

329 this Contract, or Seller, at Seller's option, may, pursuant to Paragraph 16, proceed in equity to enforce Seller's
330 rights under this Contract. The portion of the Deposit, if any, paid to Listing Broker upon default by Buyer, shall
331 be split equally between Listing Broker and Cooperating Broker; provided however, Cooperating Broker's share
332 shall not be greater than the commission amount Listing Broker had agreed to pay to Cooperating Broker.

333 (b) **SELLER DEFAULT:** If for any reason other than failure of Seller to make Seller's title marketable after
334 reasonable diligent effort, Seller fails, neglects or refuses to perform Seller's obligations under this Contract,
335 Buyer may elect to receive return of Buyer's Deposit without thereby waiving any action for damages resulting
336 from Seller's breach, and, pursuant to Paragraph 16, may seek to recover such damages or seek specific
337 performance.

338 This Paragraph 15 shall survive Closing or termination of this Contract.

339 **16. DISPUTE RESOLUTION:** Unresolved controversies, claims and other matters in question between Buyer and
340 Seller arising out of, or relating to, this Contract or its breach, enforcement or interpretation ("Dispute") will be settled
341 as follows:

342 (a) Buyer and Seller will have 10 days after the date conflicting demands for the Deposit are made to attempt to
343 resolve such Dispute, failing which, Buyer and Seller shall submit such Dispute to mediation under Paragraph
344 16(b).

345 (b) Buyer and Seller shall attempt to settle Disputes in an amicable manner through mediation pursuant to Florida
346 Rules for Certified and Court-Appointed Mediators and Chapter 44, F.S., as amended (the "Mediation Rules").
347 The mediator must be certified or must have experience in the real estate industry. Injunctive relief may be
348 sought without first complying with this Paragraph 16(b). Disputes not settled pursuant to this Paragraph 16
349 may be resolved by instituting action in the appropriate court having jurisdiction of the matter. This Paragraph
350 16 shall survive Closing or termination of this Contract.

351 **17. ATTORNEY'S FEES; COSTS:** The parties will split equally any mediation fee incurred in any mediation permitted
352 by this Contract, and each party will pay their own costs, expenses and fees, including attorney's fees, incurred in
353 conducting the mediation. In any litigation permitted by this Contract, the prevailing party shall be entitled to recover
354 from the non-prevailing party costs and fees, including reasonable attorney's fees, incurred in conducting the
355 litigation. This Paragraph 17 shall survive Closing or termination of this Contract.

356 **STANDARDS FOR REAL ESTATE TRANSACTIONS ("STANDARDS")**

357 **18. STANDARDS:**
358 **A. TITLE:**
359 **(i) TITLE EVIDENCE; RESTRICTIONS; EASEMENTS; LIMITATIONS:** Within the time period provided in
360 Paragraph 9(c), the Title Commitment, with legible copies of instruments listed as exceptions attached thereto, shall
361 be issued and delivered to Buyer. The Title Commitment shall set forth those matters to be discharged by Seller at
362 or before Closing and shall provide that, upon recording of the deed to Buyer, an owner's policy of title insurance
363 in the amount of the Purchase Price, shall be issued to Buyer insuring Buyer's marketable title to the Real Property,
364 subject only to the following matters: (a) comprehensive land use plans, zoning, and other land use restrictions,
365 prohibitions and requirements imposed by governmental authority; (b) restrictions and matters appearing on the
366 Plat or otherwise common to the subdivision; (c) outstanding oil, gas and mineral rights of record without right of
367 entry; (d) unplatted public utility easements of record (located contiguous to real property lines and not more than
368 10 feet in width as to rear or front lines and 7 1/2 feet in width as to side lines); (e) taxes for year of Closing and
369 subsequent years; and (f) assumed mortgages and purchase money mortgages, if any (if additional items, attach
370 addendum); provided, that, none prevent use of Property for RESIDENTIAL PURPOSES. If there exists at Closing
371 any violation of items identified in (b) – (f) above, then the same shall be deemed a title defect. Marketable title shall
372 be determined according to applicable Title Standards adopted by authority of The Florida Bar and in accordance
373 with law.

374 **(ii) TITLE EXAMINATION:** Buyer shall have 5 days after receipt of Title Commitment to examine it and notify Seller
375 in writing specifying defect(s), if any, that render title unmarketable. If Seller provides Title Commitment and it is
376 delivered to Buyer less than 5 days prior to Closing Date, Buyer may extend Closing for up to 5 days after date of
377 receipt to examine same in accordance with this STANDARD A. Seller shall have 30 days ("Cure Period") after
378 receipt of Buyer's notice to take reasonable diligent efforts to remove defects. If Buyer fails to so notify Seller, Buyer
379 shall be deemed to have accepted title as it then is. If Seller cures defects within Cure Period, Seller will deliver
380 written notice to Buyer (with proof of cure acceptable to Buyer and Buyer's attorney) and the parties will close this
381 Contract on Closing Date (or if Closing Date has passed, within 10 days after Buyer's receipt of Seller's notice). If
382 Seller is unable to cure defects within Cure Period, then Buyer may, within 5 days after expiration of Cure Period,

DigiSign Verified: FE503C38-1BC5-4201-8218-376432CFD8B7

## STANDARDS FOR REAL ESTATE TRANSACTIONS ("STANDARDS") CONTINUED

383 deliver written notice to Seller: (a) extending Cure Period for a specified period not to exceed 120 days within which
384 Seller shall continue to use reasonable diligent effort to remove or cure the defects ("Extended Cure Period"); or
385 (b) electing to accept title with existing defects and close this Contract on Closing Date (or if Closing Date has
386 passed, within the earlier of 10 days after end of Extended Cure Period or Buyer's receipt of Seller's notice), or (c)
387 electing to terminate this Contract and receive a refund of the Deposit, thereby releasing Buyer and Seller from all
388 further obligations under this Contract. If after reasonable diligent effort, Seller is unable to timely cure defects, and
389 Buyer does not waive the defects, this Contract shall terminate, and Buyer shall receive a refund of the Deposit,
390 thereby releasing Buyer and Seller from all further obligations under this Contract.
391 **B. SURVEY:** If Survey discloses encroachments on the Real Property or that improvements located thereon
392 encroach on setback lines, easements, or lands of others, or violate any restrictions, covenants, or applicable
393 governmental regulations described in STANDARD A (i)(a), (b) or (d) above, Buyer shall deliver written notice of
394 such matters, together with a copy of Survey, to Seller within 5 days after Buyer's receipt of Survey, but no later
395 than Closing. If Buyer timely delivers such notice and Survey to Seller, such matters identified in the notice and
396 Survey shall constitute a title defect, subject to cure obligations of STANDARD A above. If Seller has delivered a
397 prior survey, Seller shall, at Buyer's request, execute an affidavit of "no change" to the Real Property since the
398 preparation of such prior survey, to the extent the affirmations therein are true and correct.
399 **C. INGRESS AND EGRESS:** Seller represents that there is ingress and egress to the Real Property and title to
400 the Real Property is insurable in accordance with STANDARD A without exception for lack of legal right of access.
401 **D. LEASE INFORMATION:** Seller shall, at least 10 days prior to Closing, furnish to Buyer estoppel letters from
402 tenant(s)/occupant(s) specifying nature and duration of occupancy, rental rates, advanced rent and security
403 deposits paid by tenant(s) or occupant(s)("Estoppel Letter(s)"). If Seller is unable to obtain such Estoppel Letter(s)
404 the same information shall be furnished by Seller to Buyer within that time period in the form of a Seller's affidavit
405 and Buyer may thereafter contact tenant(s) or occupant(s) to confirm such information. If Estoppel Letter(s) or
406 Seller's affidavit, if any, differ materially from Seller's representations and lease(s) provided pursuant to Paragraph
407 6, or if tenant(s)/occupant(s) fail or refuse to confirm Seller's affidavit, Buyer may deliver written notice to Seller
408 within 5 days after receipt of such information, but no later than 5 days prior to Closing Date, terminating this
409 Contract and receive a refund of the Deposit, thereby releasing Buyer and Seller from all further obligations under
410 this Contract. Seller shall, at Closing, deliver and assign all leases to Buyer who shall assume Seller's obligations
411 thereunder.
412 **E. LIENS:** Seller shall furnish to Buyer at Closing an affidavit attesting (i) to the absence of any financing
413 statement, claims of lien or potential lienors known to Seller and (ii) that there have been no improvements or
414 repairs to the Real Property for 90 days immediately preceding Closing Date. If the Real Property has been
415 improved or repaired within that time, Seller shall deliver releases or waivers of construction liens executed by all
416 general contractors, subcontractors, suppliers and materialmen in addition to Seller's lien affidavit setting forth
417 names of all such general contractors, subcontractors, suppliers and materialmen, further affirming that all charges
418 for improvements or repairs which could serve as a basis for a construction lien or a claim for damages have been
419 paid or will be paid at Closing.
420 **F. TIME:** Calendar days shall be used in computing time periods. **Time is of the essence in this Contract.** Other
421 than time for acceptance and Effective Date as set forth in Paragraph 3, any time periods provided for or dates
422 specified in this Contract, whether preprinted, handwritten, typewritten or inserted herein, which shall end or occur
423 on a Saturday, Sunday, or a national legal holiday (see 5 U.S.C. 6103) shall extend to 5:00 p.m. (where the Property
424 is located) of the next business day.
425 **G. FORCE MAJEURE:** Buyer or Seller shall not be required to perform any obligation under this Contract or be
426 liable to each other for damages so long as performance or non-performance of the obligation, or the availability of
427 services, insurance or required approvals essential to Closing, is disrupted, delayed, caused or prevented by Force
428 Majeure. "Force Majeure" means: hurricanes, floods, extreme weather, earthquakes, fire, or other acts of God,
429 unusual transportation delays, or wars, insurrections, or acts of terrorism, which, by exercise of reasonable diligent
430 effort, the non-performing party is unable in whole or in part to prevent or overcome. All time periods, including
431 Closing Date, will be extended a reasonable time up to 7 days after the Force Majeure no longer prevents
432 performance under this Contract, provided, however, if such Force Majeure continues to prevent performance under
433 this Contract more than 30 days beyond Closing Date, then either party may terminate this Contract by delivering
434 written notice to the other and the Deposit shall be refunded to Buyer, thereby releasing Buyer and Seller from all
435 further obligations under this Contract.
436 **H. CONVEYANCE:** Seller shall convey marketable title to the Real Property by statutory warranty, trustee's,
437 personal representative's, or guardian's deed, as appropriate to the status of Seller, subject only to matters
438 described in STANDARD A and those accepted by Buyer. Personal Property shall, at request of Buyer, be

DigiSign Verified: FE503C38-1BC5-4201-8218-376432CFD8B7

## STANDARDS FOR REAL ESTATE TRANSACTIONS ("STANDARDS") CONTINUED

439 transferred by absolute bill of sale with warranty of title, subject only to such matters as may be provided for in this
440 Contract.

441 **I.   CLOSING LOCATION; DOCUMENTS; AND PROCEDURE:**
442 (i)   **LOCATION:** Closing will be conducted by the attorney or other closing agent ("Closing Agent") designated by
443 the party paying for the owner's policy of title insurance and will take place in the county where the Real Property
444 is located at the office of the Closing Agent, or at such other location agreed to by the parties. If there is no title
445 insurance, Seller will designate Closing Agent. Closing may be conducted by mail, overnight courier, or electronic
446 means.
447 (ii)   **CLOSING DOCUMENTS:** Seller shall at or prior to Closing, execute and deliver, as applicable, deed, bill of
448 sale, certificate(s) of title or other documents necessary to transfer title to the Property, construction lien affidavit(s),
449 owner's possession and no lien affidavit(s), and assignment(s) of leases. Seller shall provide Buyer with paid
450 receipts for all work done on the Property pursuant to this Contract. Buyer shall furnish and pay for, as applicable,
451 the survey, flood elevation certification, and documents required by Buyer's lender.
452 (iii)   **FinCEN GTO NOTICE.   If Closing Agent is required to comply with the U.S. Treasury Department's**
453 **Financial Crimes Enforcement Network ("FinCEN") Geographic Targeting Orders ("GTOs"), then Buyer**
454 **shall provide Closing Agent with the information related to Buyer and the transaction contemplated by this**
455 **Contract that is required to complete IRS Form 8300, and Buyer consents to Closing Agent's collection and**
456 **report of said information to IRS.**
457 (iv)   **PROCEDURE:** The deed shall be recorded upon **COLLECTION** of all closing funds. If the Title Commitment
458 provides insurance against adverse matters pursuant to Section 627.7841, F.S., as amended, the escrow closing
459 procedure required by STANDARD J shall be waived, and Closing Agent shall, **subject to COLLECTION of all**
460 **closing funds**, disburse at Closing the brokerage fees to Broker and the net sale proceeds to Seller.
461 **J.   ESCROW CLOSING PROCEDURE:** If Title Commitment issued pursuant to Paragraph 9(c) does not provide
462 for insurance against adverse matters as permitted under Section 627.7841, F.S., as amended, the following
463 escrow and closing procedures shall apply: (1) all Closing proceeds shall be held in escrow by the Closing Agent
464 for a period of not more than 10 days after Closing; (2) if Seller's title is rendered unmarketable, through no fault of
465 Buyer, Buyer shall, within the 10 day period, notify Seller in writing of the defect and Seller shall have 30 days from
466 date of receipt of such notification to cure the defect; (3) if Seller fails to timely cure the defect, the Deposit and all
467 Closing funds paid by Buyer shall, within 5 days after written demand by Buyer, be refunded to Buyer and,
468 simultaneously with such repayment, Buyer shall return the Personal Property, vacate the Real Property and re-
469 convey the Property to Seller by special warranty deed and bill of sale; and (4) if Buyer fails to make timely demand
470 for refund of the Deposit, Buyer shall take title as is, waiving all rights against Seller as to any intervening defect
471 except as may be available to Buyer by virtue of warranties contained in the deed or bill of sale.
472 **K.   PRORATIONS; CREDITS:** The following recurring items will be made current (if applicable) and prorated as of
473 the day prior to Closing Date, or date of occupancy if occupancy occurs before Closing Date: real estate taxes
474 (including special benefit tax assessments imposed by a CDD), interest, bonds, association fees, insurance, rents
475 and other expenses of Property. Buyer shall have option of taking over existing policies of insurance, if assumable,
476 in which event premiums shall be prorated. Cash at Closing shall be increased or decreased as may be required
477 by prorations to be made through day prior to Closing. Advance rent and security deposits, if any, will be credited
478 to Buyer. Escrow deposits held by Seller's mortgagee will be paid to Seller. Taxes shall be prorated based on
479 current year's tax. If Closing occurs on a date when current year's millage is not fixed but current year's assessment
480 is available, taxes will be prorated based upon such assessment and prior year's millage. If current year's
481 assessment is not available, then taxes will be prorated on prior year's tax. If there are completed improvements
482 on the Real Property by January 1st of year of Closing, which improvements were not in existence on January 1st
483 of prior year, then taxes shall be prorated based upon prior year's millage and at an equitable assessment to be
484 agreed upon between the parties, failing which, request shall be made to the County Property Appraiser for an
485 informal assessment taking into account available exemptions. In all cases, due allowance shall be made for the
486 maximum allowable discounts and applicable homestead and other exemptions.   A tax proration based on an
487 estimate shall, at either party's request, be readjusted upon receipt of current year's tax bill. This STANDARD K
488 shall survive Closing.
489 **L.   ACCESS TO PROPERTY TO CONDUCT APPRAISALS, INSPECTIONS, AND WALK-THROUGH:** Seller
490 shall, upon reasonable notice, provide utilities service and access to Property for appraisals and inspections,
491 including a walk-through (or follow-up walk-through if necessary) prior to Closing.
492 **M.   RISK OF LOSS:** If, after Effective Date, but before Closing, Property is damaged by fire or other casualty
493 ("Casualty Loss") and cost of restoration (which shall include cost of pruning or removing damaged trees) does not
494 exceed 1.5% of Purchase Price, cost of restoration shall be an obligation of Seller and Closing shall proceed
495 pursuant to terms of this Contract. If restoration is not completed as of Closing, a sum equal to 125% of estimated

DigiSign Verified: E9D87E96-1B84-434B-AD3B-C534773A8E34

## STANDARDS FOR REAL ESTATE TRANSACTIONS ("STANDARDS") CONTINUED

496  cost to complete restoration (not to exceed 1.5% of Purchase Price) will be escrowed at Closing. If actual cost of
497  restoration exceeds escrowed amount, Seller shall pay such actual costs (but, not in excess of 1.5% of Purchase
498  Price). Any unused portion of escrowed amount shall be returned to Seller. If cost of restoration exceeds 1.5% of
499  Purchase Price, Buyer shall elect to either take Property "as is" together with the 1.5%, or receive a refund of the
500  Deposit thereby releasing Buyer and Seller from all further obligations under this Contract. Seller's sole obligation
501  with respect to tree damage by casualty or other natural occurrence shall be cost of pruning or removal.
502  **N. 1031 EXCHANGE:** If either Seller or Buyer wish to enter into a like-kind exchange (either simultaneously with
503  Closing or deferred) under Section 1031 of the Internal Revenue Code ("Exchange"), the other party shall cooperate
504  in all reasonable respects to effectuate the Exchange, including execution of documents; provided, however,
505  cooperating party shall incur no liability or expense related to the Exchange, and Closing shall not be contingent
506  upon, nor extended or delayed by, such Exchange.
507  **O. CONTRACT NOT RECORDABLE; PERSONS BOUND; NOTICE; DELIVERY; COPIES; CONTRACT**
508  **EXECUTION:** Neither this Contract nor any notice of it shall be recorded in any public records. This Contract shall
509  be binding on, and inure to the benefit of, the parties and their respective heirs or successors in interest. Whenever
510  the context permits, singular shall include plural and one gender shall include all. Notice and delivery given by or to
511  the attorney or broker (including such broker's real estate licensee) representing any party shall be as effective as
512  if given by or to that party. All notices must be in writing and may be made by mail, personal delivery or electronic
513  (including "pdf") media. A facsimile or electronic (including "pdf") copy of this Contract and any signatures hereon
514  shall be considered for all purposes as an original. This Contract may be executed by use of electronic signatures,
515  as determined by Florida's Electronic Signature Act and other applicable laws.
516  **P. INTEGRATION; MODIFICATION:** This Contract contains the full and complete understanding and agreement
517  of Buyer and Seller with respect to the transaction contemplated by this Contract and no prior agreements or
518  representations shall be binding upon Buyer or Seller unless included in this Contract. No modification to or change
519  in this Contract shall be valid or binding upon Buyer or Seller unless in writing and executed by the parties intended
520  to be bound by it.
521  **Q. WAIVER:** Failure of Buyer or Seller to insist on compliance with, or strict performance of, any provision of this
522  Contract, or to take advantage of any right under this Contract, shall not constitute a waiver of other provisions or
523  rights.
524  **R. RIDERS; ADDENDA; TYPEWRITTEN OR HANDWRITTEN PROVISIONS:** Riders, addenda, and typewritten
525  or handwritten provisions shall control all printed provisions of this Contract in conflict with them.
526  **S. COLLECTION or COLLECTED: "COLLECTION" or "COLLECTED" means any checks tendered or**
527  **received, including Deposits, have become actually and finally collected and deposited in the account of**
528  **Escrow Agent or Closing Agent. Closing and disbursement of funds and delivery of closing documents**
529  **may be delayed by Closing Agent until such amounts have been COLLECTED in Closing Agent's accounts.**
530  **T. RESERVED.**
531  **U. APPLICABLE LAW AND VENUE:** This Contract shall be construed in accordance with the laws of the State
532  of Florida and venue for resolution of all disputes, whether by mediation, arbitration or litigation, shall lie in the
533  county where the Real Property is located.
534  **V. FIRPTA TAX WITHHOLDING:** If a seller of U.S. real property is a "foreign person" as defined by FIRPTA,
535  Section 1445 of the Internal Revenue Code ("Code") requires the buyer of the real property to withhold up to 15%
536  of the amount realized by the seller on the transfer and remit the withheld amount to the Internal Revenue Service
537  (IRS) unless an exemption to the required withholding applies or the seller has obtained a Withholding Certificate
538  from the IRS authorizing a reduced amount of withholding.
539  (i)  No withholding is required under Section 1445 of the Code if the Seller is not a "foreign person". Seller can
540  provide proof of non-foreign status to Buyer by delivery of written certification signed under penalties of perjury,
541  stating that Seller is not a foreign person and containing Seller's name, U.S. taxpayer identification number and
542  home address (or office address, in the case of an entity), as provided for in 26 CFR 1.1445-2(b). Otherwise, Buyer
543  shall withhold the applicable percentage of the amount realized by Seller on the transfer and timely remit said funds
544  to the IRS.
545  (ii)  If Seller is a foreign person and has received a Withholding Certificate from the IRS which provides for reduced
546  or eliminated withholding in this transaction and provides same to Buyer by Closing, then Buyer shall withhold the
547  reduced sum required, if any, and timely remit said funds to the IRS.
548  (iii)  If prior to Closing Seller has submitted a completed application to the IRS for a Withholding Certificate and has
549  provided to Buyer the notice required by 26 CFR 1.1445-1(c) (2)(i)(B) but no Withholding Certificate has been
550  received as of Closing, Buyer shall, at Closing, withhold the applicable percentage of the amount realized by Seller
551  on the transfer and, at Buyer's option, either (a) timely remit the withheld funds to the IRS or (b) place the funds in
552  escrow, at Seller's expense, with an escrow agent selected by Buyer and pursuant to terms negotiated by the

DigiSign Verified: E9D87E96-1B84-434B-AD3B-C534773A8E34

## STANDARDS FOR REAL ESTATE TRANSACTIONS ("STANDARDS") CONTINUED

553 parties, to be subsequently disbursed in accordance with the Withholding Certificate issued by the IRS or remitted
554 directly to the IRS if the Seller's application is rejected or upon terms set forth in the escrow agreement.
555 (iv) In the event the net proceeds due Seller are not sufficient to meet the withholding requirement(s) in this
556 transaction, Seller shall deliver to Buyer, at Closing, the additional COLLECTED funds necessary to satisfy the
557 applicable requirement and thereafter Buyer shall timely remit said funds to the IRS or escrow the funds for
558 disbursement in accordance with the final determination of the IRS, as applicable.
559 (v) Upon remitting funds to the IRS pursuant to this STANDARD, Buyer shall provide Seller copies of IRS Forms
560 8288 and 8288-A, as filed.
561 **W. RESERVED**
562 **X.  BUYER WAIVER OF CLAIMS:** *To the extent permitted by law, Buyer waives any claims against Seller*
563 *and against any real estate licensee involved in the negotiation of this Contract for any damage or defects*
564 *pertaining to the physical condition of the Property that may exist at Closing of this Contract and be*
565 *subsequently discovered by the Buyer or anyone claiming by, through, under or against the Buyer. This*
566 *provision does not relieve Seller's obligation to comply with Paragraph 10(j). This Standard X shall survive*
567 *Closing.*

568 ### ADDENDA AND ADDITIONAL TERMS

569 * **19. ADDENDA:** The following additional terms are included in the attached addenda or riders and incorporated into this
570 Contract (Check if applicable):

| | | |
|---|---|---|
| ☐ A.  Condominium Rider | ☐ K.  RESERVED | ☐ T.  Pre-Closing Occupancy |
| ☐ B.  Homeowners' Assn. | ☐ L.  RESERVED | ☐ U.  Post-Closing Occupancy |
| ☐ C.  Seller Financing | ☐ M.  Defective Drywall | ☐ V.  Sale of Buyer's Property |
| ☐ D.  Mortgage Assumption | ☐ N.  Coastal Construction Control | ☐ W.  Back-up Contract |
| ☐ E.  FHA/VA Financing |     Line | ☐ X.  Kick-out Clause |
| ☒ F.  Appraisal Contingency | ☐ O.  Insulation Disclosure | ☐ Y.  Seller's Attorney Approval |
| ☐ G.  Short Sale | ☐ P.  Lead Paint Disclosure (Pre-1978) | ☐ Z.  Buyer's Attorney Approval |
| ☐ H.  Homeowners/Flood Ins. | ☐ Q.  Housing for Older Persons | ☐ AA.  Licensee Property Interest |
| ☐ I.  RESERVED | ☐ R.  Rezoning | ☐ BB.  Binding Arbitration |
| ☐ J.  Interest-Bearing Acct. | ☐ S.  Lease Purchase/ Lease Option | ☐ Other:_____ |
| | | _____ |
| | | _____ |

571 * **20. ADDITIONAL TERMS:** Sea Turtle Real Estate, LLC agents do not provide instructions for wire transfers. All parties to the
572 contract should verify wire transfer instructions with the issuing entity. Sea Turtle Real Estate, LLC will not provide
573 instructions in writing, verbally, by e-mail or any other medium for wire transfers._____
574 _____
575 _____
576 _____
577 _____
578 _____
579 _____
580 _____
581 _____
582 _____
583 _____
584 _____
585 _____
586 _____
587 _____

588 ### COUNTER-OFFER/REJECTION

589 * ☐ Seller counters Buyer's offer (to accept the counter-offer, Buyer must sign or initial the counter-offered terms and
590 deliver a copy of the acceptance to Seller).
591 * ☐ Seller rejects Buyer's offer.

Buyer's Initials __A/__                     Page 11 of 12                     Seller's Initials __JT__
FloridaRealtors/FloridaBar-ASIS-5   Rev.4/17 © 2017 Florida Realtors® and The Florida Bar. All rights reserved.

DigiSign Verified: E9D87E96-1B84-434B-AD3B-C534773A8E34

592  **THIS IS INTENDED TO BE A LEGALLY BINDING CONTRACT. IF NOT FULLY UNDERSTOOD, SEEK THE**
593  **ADVICE OF AN ATTORNEY PRIOR TO SIGNING.**

594  **THIS FORM HAS BEEN APPROVED BY THE FLORIDA REALTORS AND THE FLORIDA BAR.**

595  *Approval of this form by the Florida Realtors and The Florida Bar does not constitute an opinion that any of the*
596  *terms and conditions in this Contract should be accepted by the parties in a particular transaction. Terms and*
597  *conditions should be negotiated based upon the respective interests, objectives and bargaining positions of all*
598  *interested persons.*

599  AN ASTERISK (*) FOLLOWING A LINE NUMBER IN THE MARGIN INDICATES THE LINE CONTAINS A BLANK
600  TO BE COMPLETED.

601*  Buyer: _____*Autumn M Lindsey*_____   Date: ___Oct 23, 2017___

602*  Buyer: _____   Date: _____

603*  Seller: _____*Johnny Tyler*_____   Date: _____10-24-2017_____

604*  Seller: _____   Date: _____

605   Buyer's address for purposes of notice          Seller's address for purposes of notice
606*  _____          _____
607*  _____          _____
608*  _____          _____

609  **BROKER:** Listing and Cooperating Brokers, if any, named below (collectively, "Broker"), are the only Brokers
610  entitled to compensation in connection with this Contract. Instruction to Closing Agent: Seller and Buyer direct
611  Closing Agent to disburse at Closing the full amount of the brokerage fees as specified in separate brokerage
612  agreements with the parties and cooperative agreements between the Brokers, except to the extent Broker has
613  retained such fees from the escrowed funds. This Contract shall not modify any MLS or other offer of compensation
614  made by Seller or Listing Broker to Cooperating Brokers.

615*  _____Denver Reynolds_____          _____Robin Raiff_____
616   **Cooperating Sales Associate, if any**          **Listing Sales Associate**

617*  _____Sea Turtle Real Estate_____          _____EXP Realty, LLC_____
618   **Cooperating Broker, if any**          **Listing Broker**

DigiSign Verified: E9D87E96-1B84-434B-AD3B-C534773A8E34



**Blank Addendum**
FLORIDA ASSOCIATION OF REALTORS®

Addendum concerning the Property described as: _____ **8675 130th AVE, Fellsmere FL 32948** _____

Lots 1 and 4 are also included the this purchase.
Legal description
HOMEWOOD ADDITION - TRACT 2038 LOT 1 PBS 2-15
tax ID: 31370000011203800001.0
and
HOMEWOOD ADDITION - TRACT 2038 LOT 4 PBS 2-15
tax ID: 31370000011203800004.0.

| _Johnny Tyler_ | 10-24-2017 | _Autumn M Lindsey_ | Oct 23, 2017 |
|---|---|---|---|
| Seller | Date | Buyer | Date |
| | | | |
| Seller | Date | Buyer | Date |

DigiSign Verified: E9D87E96-1B84-434B-AD3B-C534773A8E34

## Comprehensive Rider to the
## Residential Contract For Sale And Purchase
**THIS FORM HAS BEEN APPROVED BY THE FLORIDA REALTORS AND THE FLORIDA BAR**


*Sea Turtle*
REAL ESTATE
WHERE COASTAL LIFE BEGINS

**If initialed by all parties,** the clauses below will be incorporated into the Florida Realtors®/Florida Bar Residential Contract For Sale And Purchase between _____ **Tyler Johnny** _____ (SELLER) and_____ **Autumn Michelle Lindsey** _____ (BUYER) concerning the Property described as_____ **8675 130th AVE, Fellsmere Fl 32948** _____

**Buyer's Initials**   _AL____   _____          **Seller's Initials**   _JT____   _____

### F. APPRAISAL CONTINGENCY

This Contract is contingent upon Buyer obtaining, at Buyer's expense, a written appraisal from a licensed Florida appraiser, on or before _____ **11/22/2017** _____ (if left blank, then at least ten (10) days prior to Closing), stating that the appraised value of the Property is at least $_____ **330,000** (if left blank, the Purchase Price). If the appraisal states that the appraised value of the Property is less than the above value, Buyer shall deliver a copy of such appraisal to Seller within 3 days after the above date and deliver written notice to Seller, either: a) terminating this Contract in which event the Deposit paid shall be refunded to Buyer, thereby releasing Buyer and Seller from all further obligations under this Contract; or b) waiving and removing this contingency and continuing with this Contract without regard to the appraised value of the Property, except as provided in Paragraph 8(b) if it is checked.

If Buyer fails to timely obtain an appraisal, or having timely obtained such appraisal fails to timely deliver notice of Buyer's exercise of the right to terminate granted above, this contingency shall be waived and removed, and Buyer shall continue with this Contract, without waiving any of Buyer's rights in Paragraph 8(b) if it is checked.

Listed are only items that i have the original receipts of the purchase. I would estimate about $10,000 in clothing and gifts that i do not have documentation, including a Gucci watch and 2 suits, totaling about $2500,

| Date | Description | Vendor | Amount |
|------|-------------|--------|--------|
| 7/16/2016 | Air conditioner | Pelican island air conditioning | $4,693.00 |
| 6/24/2015 | Refrirerator | Jetson vero beach | $2,404.76 |
| 11/30/2006 | Furniture | Carls | $4,293.87 |
| 10/21/2006 | Furniture | Baers | $418.37 |
| 10/21/2006 | Furniture | Baers | $482.30 |
| 11/15/2006 | Furniture | Baers | $3,591.99 |
| 3/17/2008 | Furniture | Crate&Barrel | $401.74 |
| 10/7/2006 | Appliances | Home Depot | $2,219.94 |
| 8/25/2006 | Furniture | Carls | $4,357.76 |
| 10/24/2006 | Accessories | The Shade Shop | $3,940.81 |
| 1/20/2007 | Furniture | Furniture Company, Inc. | $5,815.45 |
| 11/24/2006 | Furniture | Carls | $2,219.23 |
| 11/7/2006 | Furniture | Paradise Home Patio | $3,508.53 |
| 2/25/2008 | Electronic | Amazon.com | $799.98 |
| 2/27/2011 | Electronic | Amazon.com | $2,489.88 |
| 2/27/2014 | Electronic | Amazon.com | $2,298 |
| 10/31/2014 | Furniture | Baers | $2,526.54 |
| 6/4/2016 | Accessories | The Frugal Framer | $335.69 |
| 1/5/2007 | Accessories | Lighten UP | $381.27 |
| 11/10/2006 | Hardware | Frame/Screen | $990.00 |
| 8/18/2006 | Accessories | Lighten UP | $1,200.00 |
| 12/19/2011 | Electronic | Amazon.com | $141.33 |
| 12/18/2012 | Appliances | Amazon.com | $279.95 |
| 12/28/2012 | Clothing | Amazon.com | $171.29 |
| 11/16/2014 | Accessories | Amazon.com | $116.25 |
| 2/14/2016 | Luggage | Amazon.com | $813.20 |
| 3/1/2016 | Accessories | Amazon.com | $134.77 |
| 2/29/2016 | Accessories | Amazon.com | $812.61 |
| 7/8/2016 | Clothing/Appliances | Amazon.com | $288.80 |

| 12/5/2016 | Electronic | Amazon.com | $149.79 |
| 12/21/2017 | Clothing | Amazon.com | $204.89 |
| 2/14/2016 | computer | Dell (Ser Tag C74YW72) | $1,340.00 |
| 11/26/2017 | iPad | Apple (purchased at BJ's) | $909.49 |
| | | **Totals** | **$54,731.47** |

**The following Cost was incurred for service trying to maintained electronic (air conditioners, Televisions, washer/dryer, etc.):**

| 10/28/2011 | Service Order | HVAC | $75.00 |
| 4/29/2010 | Service Order | HVAC | $230.00 |
| 6/20/2013 | Service Order | HVAC | $269.00 |
| 9/4/2013 | Service Order | Miller Air Conditioning & Heating | $150.00 |
| 6/9/2014 | Service Order | ROTH ELECTRONICS LLC | $226.00 |
| 5/9/2014 | Service Order | ROTH ELECTRONICS LLC | $95 |
| 6/21/2016 | Service Order | ARNOLD Air Conditioning | $228 |
| 9/1/2009 | Service Order | ARNOLD Air Conditioning | $389.00 |
| 10/1/2014 | Service Order | ARNOLD Air Conditioning | $1,475.00 |
| 1/25/2013 | Service Order | Blosser Electric | $212.00 |
| 9/13/2013 | Service Order | Custom Air System | $752.89 |
| 7/8/2012 | Service Order | Custom Air System | $261.22 |
| 8/24/2010 | Service Order | Grimes Heating & Air Conditioning | $105.84 |
| | | **Totals** | **$4,468.95** |



DOC'S AIR CONDITIONING, INC. d/b/a

# PELICAN ISLAND AIR CONDITIONING

111 Indian Avenue, Sebastian, FL 32958
Phone: 772-581-1785 | Fax: 772-581-1785
LIC. #CAC-1818404

**INVOICE**

**TO:**
Mr. Johnny Tyler
8675 130th Avenue
Fellsmere, FL 32948

July 16, 2016

| Sales Rep. | P.O. Number | Ship Date | Ship Via | FOB | Terms |
|---|---|---|---|---|---|
| | | | | | Due upon receipt |

| Quantity | Description | Unit Price | Total |
|---|---|---|---|
| 1 | INSTALLATION OF CHAMPION 5.0 TON 14.25 SEER HEAT PUMP SPLIT AIR CONDITIONING SYSTEM WITH 10 kW HEAT.<br><br>CONDENSING UNIT TH4B6021S<br>S/N: W1E6649176<br><br>AIR HANDLER AE60DX21<br>S/N: W1E6583634<br><br>INCLUDES: INSTALLATION OF CUSTOMER-PROVIDED TSTAT, NEW PLYWOOD TOP, BOX IMPROVEMENTS (DUCT BOARD, SEALING), WATER SAFETY SWITCH, HURRICANE ANCHORS, DEALER REGISTRATION OF WARRANTY ONLINE, AND REMOVAL / DISPOSAL OF OLD EQUIPMENT.<br><br>WARRANTIES:<br><br>CONDENSING UNIT/AIR HANDLER:<br>PARTS AND COMPRESSOR (REGISTRATION REQUIRED) ………………………… (10) YEARS.<br><br>LABOR:<br>LABOR ON INSTALLATION…ONE (1) YEAR. **<br><br>** LABOR WARRANTY WORK DONE MONDAY – FRIDAY, 8 AM TO 5 PM. ANY LABOR PERFORMED AFTER 5 PM, WEEKENDS OR HOLIDAYS WILL RESULT IN OVERTIME CHARGES. | $4,693.00 | $4,693.00 |
| | | | $4,693.00 |



**APPLIANCE & ELECTRONICS EXPERTS**

## INVOICE

VERO RETAIL
1231 STATE RD 60
41-8011987179-0
VERO BEACH, FL  32960
Phone (772) 567-3200

| | |
|---|---|
| Invoice | VJ2844 |
| Date | 06-24-15 |
| Store | VERO |
| Type | Delivery |
| Printed | 062415  18:22 |
| Customer ID | 9542611933 |

| Bill to | Ship to |
|---|---|
| JOHNNY TYLER<br>8675 130TH AVE<br>FELLSMERE, FL 32948 | JOHNNY TYLER<br>8675 130TH AVE<br>FELLSMERE, FL 32948 |

| Warehouse | P/O Number | Delivery Date | Terms | Sold At | Bill to Phones | Ship to Phones |
|---|---|---|---|---|---|---|
| FP | | 06-25-15 | | VERO | Home (954) 261-1933 | (954) 261-1933 |
| Salesperson | | | Salesperson | | Work | |
| 549 MARTIN HOCKING | | | | | Cell | |
| | | US1 N TO FELLSMERE      MAKE LAST DELIVERY OF THE DAY!!!!!!!!!!! | | | | |
| | | WILL NOT BE HOME UNTIL 3PM | | | | |

| Item Number | Description | Brand | U/M | Order | Ship | Each Price | Extended |
|---|---|---|---|---|---|---|---|
| RH29H9000SR | 29CF SHOWCASE SXS SS INNER DOR | SMN | EA | 1 | 0 | 2198.00 | 2198.00 |
| DELCHG | NORMAL GROUND FLOOR DELIVERY | ZZZ | EA | 1 | 0 | 59.99 | 59.99 |
| | **Non Sales lines** | | | | | | |
| | NOT DISPATCH TRACK | | | 1 | 0 | | |

I AGREE TO PAY 2404.76 DOLLARS ACCORDING TO CARD ISSUER AGREEMENT
[CUST SIGNATURE]
X_____1009
AUTH#517789

THANKS FOR USING YOUR CREDIT CARD

| AX 1009 Auth=517789 Credit Card | 2404.76 | Sales Amount | 2257.99 |
|---|---|---|---|
| | | Sales Tax | 146.77 |
| | | Total | 2404.76 |
| | | Balance Due | .00 |

1

**\*CREDIT CARDS CANNOT BE TAKEN FOR COD PAYMENTS IN THE FIELD\***
**\*WARRANTY CLAIMS AND RETURNED GOODS MUST BE ACCOMPANIED BY THIS RECEIPT\***

## ADDITIONAL CONTRACT TERMS

1. All sales must be paid in full prior to delivery.
2. Electrical and plumbing hookups are the sole responsibility of the customer but may be available through Jetson Installation Dept. for an additional fee.
3. All credit card sales must have original credit card presented for refund. If paid by check, refund will be mailed to customer after 15 days for processing.
4. A minimum restocking charge of 25% will apply to any special order or returned merchandise that is cancelled at the customers' request. (Additional charges will apply for non-returned owners manuals, remotes or original packaging.)
5. An authorized adult representative must be present to inspect and sign for all delivered items.
6. All deliveries are normal, ground floor deliveries and any exceptions must be noted at the time of the sale. All deliveries are initiated from our Ft. Pierce facility and delivery times cannot be guaranteed. Saturday deliveries are available on request.
7. Buyer acknowledges that this is a retained title contract. Title remains with the seller until paid in full. Buyer consents to permit repossession and/or replevin if the buyer fails to make payment stated herein. The buyer agrees to pay collection agency fees, legal fees, court costs and interest at a rate of 18% per annum on all unpaid balances, whenever incurred while trying to collect amount due on this contract. The buyer further acknowledges that this contract is entered into and governed by the laws of the State of Florida and that venue for any litigation between parties shall be in St. Lucie County, Florida unless Jetson elects otherwise.

We want happy customers! If you have a problem my managers don't resolve, I want to know.
Call me,
J.T. Jetson

*Carls*

| INV. DATE | | WHSE INV. NO. |
|---|---|---|
| DELIVERY DATE | | CUST. SALES SLIP NO. |
| STORE PHONE # | | CUST. PHONE NO. |

| COD | AMT. PREV. PAID | TOT. WRITTEN AMT. | TOTAL DEL. AMT. | TOTAL B/O AMT. |
|---|---|---|---|---|
| | | | | |

| QTY. | STOCK NUMBER | DESCRIPTION | LOCATION | B/O | NOTE ANY DAMAGE BY ITEM |
|---|---|---|---|---|---|
| | 1 SET# | 1 PCS 78-08266 | 0103 | FACT | |
| | BOS #780556AAD #007875AVBORAIL 31325200C | | 21 | 0 | |
| | 376-056 SIDCR SIDE RAIL | | | | |
| | 1 SET# | 136 PCS 21-A1860 | 0316 | FACT | |
| | 1 SET# | 11 ACS 21-62A11 | 0216 | FACT | |
| | 1 PCS# | 1 PCS 78-08266 | 0413A | FACT | |
| 1 | BOS #780556AAD #007875A7VBOFTBD 31325200C | | 21 | 0 | |
| | 376-536 FOOTBOARD | | | | |

I, Purchaser, have paid $ _____ by, (circle one) Cash / Check / Credit Card

Bank, Check No. or Credit Card Number _____ on Date_____ /_____ /_____

_____         _____
*Deliverer*                           *Purchaser*

**TERMS:** This transaction is under a finance or credit card agreement. Purchaser gives Carl's Furniture Inc. a transferable security interest on any goods purchased on this transaction.

_____         _____ /_____ /_____
*Purchaser*                           Date

| COD | AMOUNT | CHECK NO. | CREDIT CARD NO. | EX. DATE | VER. BY | COD ADJ. | TR # | EX. DATE |
|---|---|---|---|---|---|---|---|---|

| | MDSE. RECEIVED IN GOOD CONDITION | | MDSE. RECEIVED AS NOTED | |
|---|---|---|---|---|
| TOTAL PIECES | | WARE-HOUSE | | |
| WHSE. INV. NO. | | DRIV-ER | | |
| | | CUST-OMER | | |

| SHOP | DELIVERY | TRANS |
|---|---|---|
| Inventory - Shop (X) - Lift (X) | Inventory - Prep (X) - Driver (X) | Inventory - Trans Driver (X) |
| Inventory (RTC & File) | Customer (X) | Transferee (X) |

*Carls*

S O L D  B Y

| | INV. DATE | WHSE INV. NO: |
|---|---|---|
| | DELIVERY DATE | CUST. SALES SLIP NO. |
| | STORE PHONE # | CUST. PHONE NO. |

772 000 0000

| COD | AMT. PREV. PAID | TOT. WRITTEN AMT. | TOTAL DEL. AMT. | TOTAL B/O AMT. |
|---|---|---|---|---|
| | | | | |

| QTY. | STOCK NUMBER | DESCRIPTION | LOCATION | B/O | NOTE ANY DAMAGE BY ITEM |
|---|---|---|---|---|---|
| | D SEQ# | 22 PO# 78-116667 | TRANDOTA | FACT# | |
| | I SEQ# | 69 PO# 21-601374 | 25162 | FACT# | |
| | I SEQ# | 56 PO# 21-601074 | 25015 | FACT | |
| | I SEQ# | 69 PO# 21-601343 | 26121 | ACT# | |
| | I SEQ# | 104 PO# 21-601326 | 25065 | FACT | |
| 2 | 22 LS-2449 | TABLE LAMP | 21 | 0 | |
| | I SEQ# | 83 PO# 21-156810 | 35073 | FACT# | |

I, Purchaser, have paid $ _____ by, (circle one) Cash / Check / Credit Card

Bank, Check No. or Credit Card Number _____ on Date____ /____ /____

_____   _____
*Deliverer*                 *Purchaser*

**TERMS:** This transaction is under a finance or credit card agreement. Purchaser gives Carl's Furniture Inc. a transferable security interest on any goods purchased on this transaction.

_____   _____ /_____ /_____
*Purchaser*                 Date

| COD | AMOUNT | CHECK NO. | CREDIT CARD NO. | EX. DATE | VER. BY | COD ADJ. | TR | EX. DATE |
|---|---|---|---|---|---|---|---|---|

| TOTAL PIECES | ◆ MDSE. RECEIVED IN GOOD CONDITION ◆ | ◆ MDSE. RECEIVED AS NOTED ◆ | |
|---|---|---|---|
| | | | WARE-HOUSE |
| WHSE. INV. NO. | | | DRIV-ER |
| | | | CUST-OMER |

**SHOP**
Inventory - Shop (X) - Lift (X)
Inventory (RTC & File)

**DELIVERY**
Inventory - Prep (X) - Driver (X)
Customer (X)

**TRANS**
Inventory - Trans Driver (X)
Transferee (X)

# Carls

SOLD BY

| INV. DATE | | WHSE INV. NO. |
|---|---|---|
| DELIVERY DATE | | CUST. SALES SLIP NO. |
| STORE PHONE # | | CUST. PHONE NO. |

772-000-0000

| COD | AMT. PREV. PAID | TOT. WRITTEN AMT. | TOTAL DEL. AMT. | TOTAL B/O AMT. |
|---|---|---|---|---|
| | | | | |

| QTY. | STOCK NUMBER | DESCRIPTION | LOCATION | B/O | NOTE ANY DAMAGE BY ITEM |
|---|---|---|---|---|---|
| | 1 SEQ# 324 PO# 21-814476 | | 07100 | FACT | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

I, Purchaser, have paid $ _____ by, (circle one) Cash / Check / Credit Card

Bank, Check No. or Credit Card Number _____ on Date_____ /_____ /_____

_____    _____
*Deliverer*                                        *Purchaser*

**TERMS:** This transaction is under a finance or credit card agreement. Purchaser gives Carl's Furniture Inc. a transferable security interest on any goods purchased on this transaction.

_____    _____ /_____ /_____
*Purchaser*                                        Date

| COD | AMOUNT | CHECK NO. | CREDIT CARD NO. | EX. DATE | VER. BY | COD ADJ. | TR # | EX. DATE |
|---|---|---|---|---|---|---|---|---|

TOTAL PIECES

WHSE. INV. NO.

| ◄ MDSE. RECEIVED IN GOOD CONDITION ► | | ◄ MDSE. RECEIVED AS NOTED ► |
|---|---|---|
| | WARE-HOUSE | |
| | DRIV-ER | |
| | CUST-OMER | |

| SHOP | DELIVERY | TRANS |
|---|---|---|
| Inventory - Shop (X) - Lift (X) | Inventory - Prep (X) - Driver (X) | Inventory - Trans Driver (X) |
| Inventory (RTC & File) | Customer (X) | Transferee (X) |

BAER'S FURNITURE COMPANY INC

- 1025 S. FEDERAL HWY. DANIA, FL 33004 (954) 927-0237
- 4690 S. UNIVERSITY DR. DAVIE, FL 33328 (954) 434-3337
- 9400 S. HIGHWAY #1 NORTH PALM BEACH, FL 33408 (561) 626-6100
- 2324 N. MILITARY TRAIL WEST PALM BEACH, FL 33409 (561) 684-2225
- 13800 PINES BLVD. PEMBROKE PINES, FL 33027 (954) 442-8788
- 4711 N. STATE ROAD 7 FT. LAUDERDALE, FL 33319 (954) 731-8830
- 9171 S. DIXIE HWY. MIAMI, FL 33156 (305) 661-5365
- 999 N. FEDERAL HWY. BOCA RATON, FL 33432 (561) 391-2012
- 1421 S. FEDERAL HWY. STUART, FL 34994 (772) 221-8879
- 3740 N. FEDERAL HWY. FT. LAUDERDALE, FL 33308 (954) 566-0266
- 1241 S. FEDERAL HWY. POMPANO BEACH, FL 33062 (954) 781-7751 CL. CENTER

Visit us at www.baersfurniture.com for additional information and store locations.

SALES ORDER NOT VALID UNLESS STAMPED

1022.080003

PICK UP/DELIVERY

SALESPERSON #1: MCWO
SALESPERSON #2:

LAST NAME: TYLER
FIRST NAME: Johnny

CUSTOMER CODE: 871007111
STREET ADDRESS: 18675 13094 AVE 4
CITY: FELLSMORE
STATE: FL
ZIP CODE: 32948

NEW CUSTOMER: _____ DRIVER'S LIC. NO: _____
HOME PHONE: 954 261 1933
CELL/BUS. PHONE: (772) 344 5057

SPECIAL INSTRUCTIONS:
EMAIL ADDRESS:
DEVELOPMENT/CROSS STREETS: 13094 + 874L STREET

| QTY | SKU NUMBER | LOC | VENDOR | VENDOR STOCK NO. | DESCRIPTION | FINISH SIZE | RETAIL | EXT. RETAIL |
|---|---|---|---|---|---|---|---|---|
| 1 | 800618950 | | SELS | Boubé | 94 80 Rope | 320 | | 180 |
| 2 | 814618956 | | SELS | " | 36" BT | | | |
| 3 | 113699957 | | NATZ | A870.T870-10 Ottoman | 390 | | 211 |
| 4 | | | | | | | | |
| 5 | | | | | | | | |
| 6 | | | | | | | | |
| 7 | | | | | | | | |
| 8 | | | | | | | | |
| 9 | | | | | | | | |
| 10 | | | | | | | | |
| 11 | | | | | | | | |
| 12 | | | | | | | | |
| 13 | | | | | | | | |
| 14 | | | | | | | | |

TOTAL QUANTITY _____
DRAWER _____

CS ☐   CK ☐   BC ☐
DEPOSIT AMOUNT: 180.00

AMX ☐   DIS ☐   OTHER ☐
DEPOSIT AMOUNT: _____

MC ☐ OTA   VISA ☐
BALANCE AMOUNT: $11.00

FINANCE CO.: _____
APPROVAL #: _____

C.O.D.: _____

CREDIT CARDS NOT ACCEPTED ON DELIVERY

| | MKG 1 | 2 | 3 | 4 | 5 |
|---|---|---|---|---|---|
| COMPUTER ENTRY | | | | | |
| DAY | 11 | | | | 106 |

| | |
|---|---|
| SUBTOTAL | 391 |
| DELIVERY | 1 |
| SETUP | |
| TOTAL TAXABLE | 391 |
| SALES TAX | 27 37 |
| TOTAL | 418 37 |

SPECIAL ORDERS ARE NOT CANCELLABLE AFTER PLACEMENT OF ORDER. UPHOL- STERY FABRICS ARE NOT GUARANTEED AGAINST FADING, STRETCHING, OILING, PILING OR PILE CRUSHING. NO REFUNDS ON CARPET. DRAPERIES, SPECIAL ORDERS, OR DELIVERED MERCHANDISE. NO REFUNDS OF DEPOSITS AFTER SEVEN DAYS FROM TRANSACTION DATE. THE BUYER WILL PAY ANY ATTORNEY FEES OR COURT COSTS INCURRED IN COLLECTING BALANCES. PRICES SUBJECT TO CHANGE.

FOR FINANCING BEGINS ON FIRST DELIVERY. CARPETING, RUGS, AND UPHOL- STERY FABRICS ARE NOT GUARANTEED... ALL ORDERS HELD OVER 12 MONTHS.

SALES TAX EXEMPTION, CUSTOMER MUST COMPLETE A FLORIDA SALES TAX EXEMPT CARD OR ONE MUST BE ON FILE AT THE STORE THAT THIS PURCHASE IS BEING MADE BEFORE BEING ALLOWED.

X _____

I HEREBY ACKNOWLEDGE THE RECEIPT OF THE ABOVE ARTICLE IN GOOD ORDER

# BAER'S

**FURNITURE COMPANY INC**

- ☐ 4690 S. UNIVERSITY DR. DAVIE, FL 33328 (954) 414-6920
- ☐ 910 U.S. HIGHWAY #1 NORTH PALM BEACH, FL 33408 (561) 626-6100
- ☐ 1025 S. FEDERAL HWY. DANIA, FL 33004 (954) 921-0237
- ☐ 2324 N. MILITARY TRAIL WEST PALM BEACH, FL 33409 (561) 684-0225
- ☐ 13500 PINES BLVD. PEMBROKE PINES, FL 33027 (954) 442-8788
- ☐ 4711 N. STATE ROAD 7 FT. LAUDERDALE, FL 33319 (954) 731-8830
- ☐ 9171 S. DIXIE HWY. MIAMI, FL 33156 (305) 661-5363
- ☐ 999 N. FEDERAL HWY. BOCA RATON, FL 33432 (561) 391-2017
- ☐ 1421 S. FEDERAL HWY. STUART, FL 34994 (772) 221-8879
- ☐ 3740 N. FEDERAL HWY. FT. LAUDERDALE, FL 33308 (954) 566-0266
- ☐ 1241 S. FEDERAL HWY. POMPANO BEACH, FL 33062 (954) 781-7761 CL. CENTER

Visit us at www.baersfurniture.com for additional information and store locations.

SALESPERSON #1 _____

SALESPERSON #2 Mullio  LAST NAME Tyler  FIRST NAME Johnny

CUSTOMER CODE 81 19 0711  STREET ADDRESS 8645 1309 Ave  APT# ___

NEW CUSTOMER ☐ YES ☒ NO  CITY FELLSMERE  STATE FL  ZIP CODE 32948

HOME PHONE: (   )        CELL/BUS PHONE: (   )

SPECIAL INSTRUCTIONS:
EMAIL ADDRESS:
DEVELOPMENT/CROSS STREETS: He will P/u @ STORE

| QTY | SKU NUMBER | LOC | VENDOR | VENDOR STOCK NO. | DESCRIPTION | FINISH SIZE | RETAIL | EXT RETAIL |
|-----|-----------|-----|--------|------------------|-------------|-------------|--------|------------|
| 1 | 961 708 658 | 8 | KovA | 1657 0FF Table | | 310 | | 145 — |
| 1 | 906 717 004 | 8 | KovA | Pole 0FF Floor lamp | | 620 | | 310 — |
| 3 | | | | | | | | |
| 4 | | | | | | | | |
| 5 | | | | | | | | |
| 6 | | | | | | | | |
| 7 | | | | | | | | |
| 8 | | | | | | | | |
| 9 | | | | | | | | |
| 10 | | | | | Credit cards not accepted on Delivery | | | |
| 11 | | | | | Balance due at store | | | |
| 12 | | | | | Business license required if tax | | | |
| 13 | | | | | of purchase and payment | | | |
| 14 | | | | | | | | |

TOTAL QUANTITY

CASHIER ☐  OTHER ☐

DEPOSIT AMOUNT:
CS ☐  CASH AMOUNT
CK ☐  BC ☐ 2730

AMT ☐
DIS ☐
OTHER ☐

FIN TYPE I  BALANCE AMOUNT 455.00
MOP TYPE  BALANCE AMOUNT

FINANCE CO. _____
APPROVAL # _____
C.O.D. _____
$ _____

CREDIT CARDS NOT ACCEPTED ON DELIVERY

| | |
|---|---|
| SUBTOTAL | 455 — |
| DELIVERY | — |
| SETUP | — |
| TOTAL TAXABLE | 455 — |
| SALES TAX 6 | 27 30 |
| TOTAL | 482 30 |

SALES ORDER 1022608000 4
PICK UP/DELIVERY
DAY 12  DATE 31 / 16
COMPUTER ENTRY
NOT VALID UNLESS STAMPED
MKG 1   2   3   4   5

SPECIAL ORDERS ARE NON-CANCELABLE AFTER PLACEMENT OF ORDER. TERM FINANCING BEGINS ON FIRST DELIVERY. CARPET, INC., RUGS, AND UPHOLSTERY FABRICS ARE NOT GUARANTEED AGAINST FADING, STRETCHING, SOILING, PILING OR PILE CRUSHING. NO REFUNDS ON CARPET, DRAPERIES, SPECIAL ORDERS, OR DELIVERED OR USED MERCHANDISE. 14 DAYS OF DEPOSIT AFTER SEVEN DAYS FROM DATE, THE BUYER WILL PAY ANY ATTORNEY FEES OR COURT COSTS INCURRED IN COLLECTING BALANCES. PRICES SUBJECT TO CHANGE ON ALL ORDERS HELD OVER 12 MONTHS.

X _____

NO SALES TAX EXEMPTION, CUSTOMER MUST COMPLETE A FLORIDA SALES TAX EXEMPT CARD OR ONE MUST BE ON FILE AT THE STORE THAT THIS PURCHASE IS BEING MADE BEFORE ITEM IS ALLOWED.

X _____

I HEREBY ACKNOWLEDGE THE RECEIPT OF THE ABOVE ARTICLE IN GOOD ORDER

**BAER'S FURNITURE COMPANY INC**

1025 S. FEDERAL HWY.
☐ DANIA, FL 33004
(954) 927-0237

4690 S. UNIVERSITY DR.
☐ DAVIE, FL 33328
(954) 434-6003

910 U.S. HIGHWAY #1
☐ NORTH PALM BEACH, FL 33408
(561) 626-6100

2324 N. MILITARY TRAIL
☐ WEST PALM BEACH, FL 33409
(561) 684-0925

18500 PINES BLVD.
☐ PEMBROKE PINES, FL 33027
(954) 442-8788

4711 N. STATE ROAD 7
☐ FT. LAUDERDALE, FL 33319
(954) 731-8830

9171 S. DIXIE HWY.
☐ MIAMI, FL 33156
(305) 661-5305

999 N. FEDERAL HWY.
☐ BOCA RATON, FL 33319
(561) 391-0942

☒ STUART, FL 34994
1421 S. FEDERAL HWY.
(772) 221-8879

3740 N. FEDERAL HWY.
☐ FT. LAUDERDALE, FL 33432
(954) 566-2066

1421 S. FEDERAL HWY.
☐ POMPANO BEACH, FL 33062
(954) 781-7731 CL. CENTER

Visit us at www.baersfurniture.com for additional information and store locations.

**SALES ORDER** NOT VALID UNLESS STAMPED
**0 9 2 4 6 0 8 0 0 1 1**
PICK UP/DELIVERY

| DAY | DATE |
|---|---|
| NOV | 15 2006 |

COMPUTER ENTRY

SALESPERSON #1 ____ LAST NAME: TYLER   FIRST NAME: JOHN
SALESPERSON #2 ____

CUSTOMER CODE: STREET ADDRESS: 8675 130TH AVE
STATE: FL

CITY: FLLISMERE

NEW CUSTOMER ☐ YES ☒ NO   HOME PHONE: (954) 861-1933   CELL/BUS PHONE: (772) 330-5057   ZIP CODE: 32948

SPECIAL INSTRUCTIONS:

EMAIL ADDRESS:

DEVELOPMENT/CROSS STREETS: 130TH AVE + 87TH AVE

| QTY | SKU NUMBER | LOC | VENDOR | VENDOR STOCK NO. | DESCRIPTION | FINISH SIZE | RETAIL | EXT. RETAIL |
|---|---|---|---|---|---|---|---|---|
| 1 | 600136205 | | Levi | 571.945 | Oct Tbl | | 1000 | 625 |
| 2 | 100699959 | | HATE | 4870 | Sofa | | 2460 | 1480 |
| 3 | 11169952 | | HATE | 4870 | Chr | | 1580 | 950 |
| 4 | 130118140 | | Broy | K3067.02 | End Tbl | | 370 | 222 |
| 5 | | | | | | | | |
| 6 | | | | | | | | |
| 7 | | | | | | | | |
| 8 | | | | | 12 months | | | |
| 9 | | | | | | | | |
| 10 | | | | | | | | |
| 11 | | | | | | | | |
| 12 | | | | | | | | |
| 13 | | | | | | | | |
| 14 | | | | | | | | |

SAME AS CASH WITH 1% MINIMUM

REFUSED STAIN-SAFE

| | DEPOSIT AMOUNT | | MOP TYPE | | BALANCE AMOUNT | FINANCE CO. | SUBTOTAL | 3277 |
|---|---|---|---|---|---|---|---|---|
| TOTAL QUANTITY | | AMX ☐ | | | | APPROVAL # | DELIVERY | 80 |
| CASHIER | DRAWER | DIS ☐ | | | | C.O.D. | SETUP | |
| | | OTHER ☐ | | | | | TOTAL TAXABLE | 3277 |
| CS ☐ | | | | | | CREDIT CARDS NOT ADDED ON DELIVERY | SALES TAX 7% | 234 99 |
| CK ☐ | | | | | | | TOTAL | 3591 99 |
| BC ☐ | | | | | | | | |

DEPOSIT AMOUNT

SPECIAL ORDERS ARE NON-CANCELABLE AFTER PLACEMENT OF ORDER. TERM FINANCING BEGINS ON FIRST DELIVERY. CARPETING, RUGS, AND UPHOLSTERY FABRICS ARE NOT GUARANTEED AGAINST FADING, STRETCHING, SOILING, PILING OR PILE CRUSHING. NO REFUNDS ON CARPET, DRAPERIES. SPECIAL ORDERS, OR DELIVERED MERCHANDISE. NO REFUNDS OR EXCHANGES ON FLOOR TRANSACTION. IN ANY EVENT, THE BUYER WILL PAY ANY ATTORNEY'S FEES OR COURT COSTS INCURRED IN COLLECTING BALANCES. PRICES SUBJECT TO CHANGE ON ALL ORDERS HELD OVER 12 MONTHS.

I HEREBY ACKNOWLEDGE THE RECEIPT OF THE ABOVE ARTICLE IN GOOD ORDER

X ____

THE BUYER, BY ACCEPTING... THE CUSTOMER MUST COMPLETE FLORIDA SALES TAX EXEMPT CARD OR ONE MUST BE ON FILE AT THE STORE THAT THE PURCHASE IS BEING MADE BEFORE BEING ALLOWED.

X ____

# Crate&Barrel

BOCA RATON FURNITURE
6000 GLADES ROAD
BOCA RATON, FL   33431
(561) 395-1060

ORDER#: 807-8191   SALE DATE:  3/17/08
DATE:  3/17/08   11:02 AM  F807CR1
NANCY LARA

SOLD TO:                                          SHIP TO:

JOHNNY TYLER                                      Same as sold to
8675 130TH AVE
FELLSMERE,FL 32948

(954)261-1933 CELL

NOTES:
```
         ********** GENERAL SALE NOTES **********          03/17/08
         CARE INSTRUCTIONS PRINTED BELOW AND DISCUSSED     03/17/08
         SEE BACK OF RECEIPT FOR ADDITIONAL CONDITIONS     03/17/08
ID AND RECEIPT FOR ALL PICK-UPS.                           03/17/08
         ******** CROSS DOCK PICK-UP NOTES ********        03/17/08
CROSS DOCK PICK-UPS ARE BY APPOINTMENT ONLY AND MUST BE SCHEDULED  03/17/08
PICK-UPS MUST BE RESCHEDULED IF MISSED.  1-2 DAYS PRIOR TO YOUR    03/17/08
SCHEDULED PICK-UP, YOU WILL RECIEVE A CONFIRMATION CALL.  ITEMS    03/17/08
WILL BE REMOVED FROM PACKAGING FOR INSPECTION.  YOU WILL BE ASKED  03/17/08
TO SIGN A WAIVER UPON PICK-UP.  PLEASE PLAN FOR AMPLE TIME TO      03/17/08
INSPECT YOUR ITEMS.  PLEASE BRING BLANKETS & TIE-DOWNS TO SECURE   03/17/08
YOUR ITEMS DURING TRANSPORT. CROSS DOCK DIRECTIONS HAVE BEEN       03/17/08
GIVEN. PLEASE BRING RECEIPT AND PHOTO ID FOR ALL PICK-UPS.         03/17/08
         ********** RETURN POLICIES **********             03/17/08
THERE IS A 7 DAY RETURN POLICY ON ALL FURNITURE ITEMS             03/17/08
THANK YOU, NANCY                                                  03/17/08
CUSTOMER WILL PICK UP AT X DOCK ON SAT 3/22,NANCY                 03/17/08
```

*954 - 956*
*0224*

| SKU | DESCRIPTION | QTY | RETAIL | EXTENDED PAID | | STATUS |
|-----|-------------|-----|--------|---------------|---|--------|
| 635-944 | 36"x36"glass (Parsons Square) | 1 | 129.00 | 129.00 | Y | PICK UP WAREHOUSE |
| | CARE CODE:  1 | | | | | |
| 632-988 | Parsons Square Coffee Base | 1 | 250.00 | 250.00 | Y | PICK UP WAREHOUSE |
| | CARE CODE:  2 | | | | | |

CARE AND CHARACTERISTICS:
     1/ 00040: Clean mirror or glass with glass cleaner.
     2/ 00002: Dust with soft dry cloth.

*Sample Rd West*

*Anders Ext turn left*
*all way down   Park (center / blvd*
*NO. + turn right*
*Stop sign turn right*
*on left*               CONTINUED ON THE NEXT PAGE
*3rd*
                                      CUSTOMER COPY

# Crate&Barrel

```
                    BOCA RATON FURNITURE
                    6000 GLADES ROAD
                    BOCA RATON, FL   33431
                    (561) 395-1060
                                              ORDER#: 807-8191   SALE DATE:  3/17/08
SOLD TO:                                 SHIP TO:
-----------------------------------------------------------------------------------
|       JOHNNY TYLER                      | |  Same as sold to                     |
-----------------------------------------------------------------------------------
```

```
**********************************     SUBTOTAL      $     379.00
* FURNITURE MAY BE RETURNED WITHIN *
* 7 DAYS.  ACCESSORIES MAY BE      *   TAX(6.00%)FL   $      22.74
*   RETURNED WITHIN 90 DAYS.       *
****RESTOCKING FEES MAY APPLY****  *
* DELIVERIES, MISSED DELIVERIES,   *   TOTAL         $     401.74
*RETURN PICKUPS & FABRIC PROTECTION*
*   ARE SUBJECT TO A FEE AND ARE   *   PAYMENT       $     401.74   03/17/08  VISA
*          NON-REFUNDABLE          *                                         XXXXXXXXXXXXX8025
*                                  *                                         Approval Code:020976
*   ADDITIONAL FEES MAY APPLY FOR  *
* DELIVERIES REQUIRING NON-STANDARD*
*           SERVICES               *
*     THANK-YOU FOR YOUR ORDER!!!  *
**********************************     BALANCE DUE   $        .00
```

CUSTOMER COPY

# SPECIAL SERVICES CUSTOMER INVOICE

Page 1 of 2   No. 0221   54930

**REPRINT**

Store 0221 JENSEN BEACH
3451 NW FEDERAL HWY.
JENSEN BEACH, FL 34957

Phone: (772) 692-9000
Contact Center: (800) 908-9105
Salesperson: BXL375
Reviewer:

A 15% restocking fee will be charged on returned or canceled Special Order Merchandise. Custom Orders are not refundable.

**SOLD TO**

Name: TYLER   JOHNNY

Address: 8675 130TH AVE

Work Phone: (772) 489-7092   Home Phone: (954) 261-1933

Company Name:

City: FELLSMERE   Job Description: WASHER/DRYER

State: FL   Zip: 32948   County: INDIAN RIVER

2006-11-05 13:49

## MERCHANDISE AND SERVICE SUMMARY

We reserve the right to limit the quantities of merchandise sold to customers.

### VENDOR DIRECT SHIP #1

**S/0 - MERCHANDISE TO BE SHIPPED:**

**S/0 G.E. APPLIANCESREF #S01**   ESTIMATED ARRIVAL DATE: 11/28/2006   P.O. #21512661

TO: CUSTOMER

| REF # | SKU | QTY | UM | DESCRIPTION | | TAX | PRICE EACH | EXTENSION |
|-------|-----|-----|----|-----|------|-----|-----------|-----------|
| S0101 | 205-634 | 1.00 | EA | M935-FLEX DRYER/M935-FLEX DRYER DUCT | /M935-FLEX | Y | $9.99 | $9.99 |
| | | | | DRYER DUCT | | | | |
| S0102 | 206-508 | 1.00 | EA | M934-DRYER CORD/M934-DRYER CORD | /M934-DRYER | Y | $9.99 | $9.99 |
| | | | | CORD | | | | |
| S0103 | 415-929 | 1.00 | EA | M928 RISER INST/M928 RISER INSTALL | /M928 RISER | Y | $0.01 | $0.01 |
| | | | | INSTALL | | | | |
| S0104 | 415-929 | 1.00 | EA | M928 RISER INST/M928 RISER INSTALL | /M928 RISER | Y | $0.01 | $0.01 |
| | | | | INSTALL | | | | |
| S01FR | 811-860 | 1.00 | | APPLIANCE DELIVERY | | N | $55.00 | $55.00 |

**S/0 - MERCHANDISE TO BE SHIPPED:**

**S/0 G.E. APPLIANCESREF #S02**   ESTIMATED ARRIVAL DATE: 11/28/2006   P.O. #21512662

| REF # | SKU | QTY | UM | DESCRIPTION | | TAX | PRICE EACH | EXTENSION |
|-------|-----|-----|----|-----|------|-----|-----------|-----------|
| S0201 | 143-614 | 1.00 | EA | DLE5977W | /DLE5977W | Y | $764.10 | $764.10 |
| S0202 | 141-310 | 1.00 | EA | WM2277HW | /WM2277HW | Y | $899.10 | $899.10 |
| S0203 | 503-830 | 1.00 | EA | WDP3W | /WDP3W | Y | $161.10 | $161.10 |
| S0204 | 503-830 | 1.00 | EA | WDP3W | /WDP3W | Y | $179.00 | $179.00 |

*** CONTINUED ON NEXT PAGE ***

No. 0221-254930

No. 0221   354930

SPECIAL SERVICES CUSTOMER INVOICE -(Continued)   Las. ...met TYLER     Page 2 of 2   No. 0221

## VENDOR DIRECT SHIP #1
### (Continued)

**TO: CUSTOMER**

**VENDOR WILL SHIP MDSE TO:**   JOHNNY TYLER

**ADDRESS:** 8675 130TH AVE   **CITY:** FELLSMERE

**STATE:** FL   **ZIP:** 32948   **COUNTY:** INDIAN RIVER   **SALES TAX RATE:** 7.000

**PHONE:** (954) 261-1933   **ALTERNATE PHONE:** (772) 489-7092   **PAGER:** (0) -

| MERCHANDISE TOTAL: | $2,078.30 |
|---|---|

**END OF VENDOR DIRECT SHIP**

## TOTAL CHARGES OF ALL MERCHANDISE & SERVICES

| | |
|---|---|
| **ORDER TOTAL** | $2,078.30 |
| **SALES TAX** | $141.64 |
| **TOTAL** | $2,219.94 |
| **AMOUNT PAID** | $2,219.94 |
| **BALANCE DUE** | $0.00 |

END OF ORDER No. 0221-254930

No. 0221-254930

```
ptr010a                        Page:     1
           POS Journal Report
  n date: 11/05/2006 13:47
   re  : 0221 JENSEN BEACH
   of  : 11/03/2006


***Trans 3688 Reg 0016  Cashier AR82CV
          0221  00016  36885  11/03/2006
SALE                32 AR82CV    03:46 PM

SALES POSTING DATE: : 11/03/2006

CUSTOMER AGREEMENT #        254930
205634 M935                      9.99
206508 M934                      9.99
415929 RISER INSTAL              0.01
115929 RISER INSTAL              0.01
 31860 S/O FREIGHT              55.00N
143614 DLE5977W                849.00
141310 WM2277HW                999.00
503830 LG PED WHT              179.00
503830 LG PED WHT              179.00
   2027.00  10.00% DISC       -202.70
RSN: 9    GRP DISC
                 SUBTOTAL     2078.30
                 SALES TAX     141.64
                 TOTAL       $2219.94
                 CASH         2151.38
  CEPT                              *
  35320252246721 THE HOME DE    68.56
AUTH #/INVOICE 003887/4168023      TA
DL# FLT460423502410
***End of data for report***
```



**CARLS Furniture Inc.**

## SALES CONTRACT
2090 N.W. US HWY. 1
STUART, FLORIDA 34994
PH: 772-692-1960 • FAX: 772-692-5099

78- 756930

OTHER CARL'S LOCATIONS AT:
Aventura • South Miami • Palmetto Expressway • Coconut Creek • Ft. Lauderdale • Lauderhill •
Pompano Beach • West Palm Beach • North Palm Beach • Stuart

| PURCHASER | SOLD BY | DATE |
|---|---|---|
| John Tyler | 200 | 8-25-06 |

| DELIVERY | SOCIAL SECURITY NUMBER | ACCOUNT NUMBER |
|---|---|---|
| 7513 Pine Lakes Dr | | |

DEVELOPMENT / SUBDEVELOPMENT / COMPLEX NAME / APT. #  ☐ OWN  ☐ RENT

| HOME PHONE | BUSINESS PHONE |
|---|---|

| CITY | STATE | ZIP | BILL TO OR  OFF SEASON ADDRESS *IF DIFFERENT |
|---|---|---|---|
| FPL | | 34952 | 2-954-261-1933 |

E-MAIL ADDRESS:

| | | | | | | |
|---|---|---|---|---|---|---|
| 3/10 | 1 | BUS | 376-H36 | King Sleigh H.B | | |
| 3/10 | 1 | BUS | 376-F36 | King Sleigh F.B | 315 | 1575 |
| 3/10 | 1 | BUS | 376-R36 | King Rails | | |
| | 1 | BUS | 376-230 | Bachelor Chest | 1236 | 668 95 |
| | 1 | BUS | 376-03 | Dresser | 2670 | 1335 95 |
| 3/10 | 1 | BUS | 376-125 | Rd. Pedestal Table | 400 | 454 |

**SPECIAL ORDER**
X _____
**NON-CANCELLABLE**

4021 64

ALL ORDERS ARE SUBJECT TO AUDITOR'S CORRECTIONS. CARL'S FURNITURE RETAINS AN
ASSIGNABLE SECURITY INTEREST ON ANY GOODS PURCHASED ON THIS SALES CONTRACT.

THIS AGREEMENT CARRIES PENALTIES AND FORFEITURES FOR NON-PERFORMANCE AND
CANCELLATION. PLEASE READ THE TERMS ON THE REVERSE SIDE OF THIS AGREEMENT
CAREFULLY, AS SAID TERMS ARE INCORPORATED INTO THIS SALE AND YOUR SIGNATURE
ACTS AS AN ACCEPTANCE OF THESE PROVISIONS.

I acknowledge receipt of ALL-DAY delivery instructions. NOT-AT-HOME will result in
RE-DELIVERY CHARGES.

**Credit Cards Not Accepted On Delivery**

AGREEMENT & TERMS ACCEPTED BY PURCHASER

MERCHANDISE MARKED T/W IN LOCATION
HAS BEEN ACCEPTED BY PURCHASER

54 14
4011 74
24 77
425 76
75 76
2600

**Stainsafe**
Protection

☐ Yes  ☐ No

CUSTOMER COPY

**879 17th Street**
**Vero Beach, Florida 32960**
**(772) 562-1429 • Fax 562-0453**

Invoice #
DATE  10/24/06
SHIP/BILL TO

S O L D / D T O:
Johnny Tyler
8675 130 Ave
Fellsmere FL. 32966
954-261-1933

- Vertical Blinds
- Custom Draperies
- Bedspreads
- Custom Window Shades
- Plantation Shutters
- Onsite Drapery Cleaning
- Cellular Shades
- Upholstery
- Wood Blinds
- Mini Blinds

The Shade Shop — Since 1980

| ROOM | L-N-E | QTY | IB or OB | WIDTH | LENGTH | CON-TROLS | COLOR | TRIM | DESCRIPTION | AMOUNT |
|---|---|---|---|---|---|---|---|---|---|---|
| Side Bed #1 | 1 | 1 | IB | 37 7/8 | 61 1/8 | Std | Pearl | | 2" Trends Fauxwood Blind | $ 112.00 |
| #2+#3 | 2 | 2 | IB | 34 7/8 | 61 1/4 | STd | #200 | | @112.00 | 224.00 |
| F/R | 3 | 2 | IB | 17 1/4 | 61 1/4 | C/L | Desert | | @206.ea. B+W Shades of Elegance -Roman Shade | 412.00 |
| | 4 | 1 | IB | 37 | 70 | C/L | DeserI | / | Basket weave | 277.00 |
| M. Bed. | 5 | 1 | IB | 51 1/2 | 61 | C/L | light walnut | | B+W - Horizon - Roman Shade Throeus | 527.00 |
| | 6 | 1 | IB | 16 7/8 | 61 | C/L | Ivory | — | with Privacy Lineage | 258.00 |
| | 7 | 1 | IB | 16 5/8 | 61 | C/L | Light walnut | | | 258.00 |
| M. Bed | 8 | 1 | OB | 85 | 96 | owl | Bronze | Val. | Metallic Rio RO-1017 Vertical SunTera | 340.00 |
| | 9 | | | | | | | | | |
| F/R | 10 | 1 | OB | 90 | 96 | owR | Camel | Val. | HD. Simplic Cell.T. MaKenna Verticals | 540.00 |
| | 11 | 1 | OB | 130 | 96 | owR | " | Vol. | "  MaKenna | 735.00 |
| | 12 | | | | | | 9704/07 | | | |

Customer is responsible for removal of existing window coverings

Line 1+2  ABI
Line 3+4  B+W
Line 5-6+7  B+W
Rm 8  South FL.
2nd Int 11  Hunter Douglas

X _____

Thank you for your order
The Shade Shop
Vision

| | |
|---|---|
| Cash Price | $3683.00 |
| Tax | 257.81 |
| Total | 3,940.81 |
| Deposit 10/24/06 | 2,000.00 |
| COD Balance | $1,940.81 |

FURNITURE COMPANY INC.

```
                                    UMENT NUMI
R    FOR FURNITURE REPAIR
E    CONTACT SERVICE DEPT
A      954-946-8007
B      800-543-2092
```

| | | | |
|---|---|---|---|
| 1) DANIA | 2) .ST | 3) BOCA | 11) PINES |
| 954-927-0237 | 954-731-8830 | 561-391-2012 | 954-442-8788 |
| 4) EAST | 5) DAVIE | 6) WEST PALM | 21) NAPLES |
| 954-566-0266 | 954-434-6363 | 561-684-3225 | 239-596-6667 |
| 7) MIAMI | 8) STUART | 10) NORTH PALM | 22) FT MYERS |
| 305-661-5365 | 772-221-8677 | 561-626-6100 | 239-278-4401 |

0924608001

ORDER TYPE 5

DELIVERY DAT

12/05/06

SALES MICHELLE LAMBERT
PERSON LYNNE GORALL

TYLER
8675 130TH AVE
FELLSMERE        FL 32948

JOHNNY

9) CLEARANCE
   954-781-7751

TRUCK CFD
STOP   1
SEQ:   5500

CUSTOMER CODE 8TYJO711                  NO4

ORIGINAL DOC#            CAUSE CODE .00   HOME 954-261-1933  BUS 772-344-5051

TIME IN:        TIME OUT:

SPECIAL       130TH AVE AND 87TH AVE
INSTRUCTIONS  REFUSED STAIN SAFE        DELIVERY COMPLETE _____ PARTIAL DELIVERY ____
              cust wants del 11-21-06   OTHER COMMENTS _____
LOADED BY:    PRICE CHANGE APP BY VCF
              RES PER CUSTOMER REASON NA \ CBM

******************************************

| QTY | SKU | LOCATION | VEND | STOCK NUMBER | DESCRIPTION | RELOCATE | RETAIL | EXT. RETAIL |
|---|---|---|---|---|---|---|---|---|
| 1 | 600136205 | DELSTG | LEXI | 571-945 | COCKTAIL TABLE | | 625.00 | 625.00 |
| 1 | 100699959 | 170119 | NATZ | A870(F870)-009-1571-09 BROWN | SOFA | | 1480.00 | 1480.00 |
| 1 | 111699952 | 168427 | NATZ | A870(F870)-003-1571-09 BROWN | CHAIR | | 950.00 | 950.00 |
| 1 | 100699959 | 009202 | NATZ | A870(F870)-009-1571-09 BROWN | SOFA | | 1400.00 | 1400.00 |
| 1 | 111699952 | 167426 | NATZ | A870(F870)-003-1571-09 BROWN | CHAIR | | 900.00 | 900.00 |

95 - sab   Rt   west
1st light  (willow nk loff   1.5  m Rt
1st house  After 87th St

| | | | | | |
|---|---|---|---|---|---|
| THANK YOU FOR | BALANCE DUE | 5589.68 | CREDIT CARDS | SUB | 5355.00 |
| CHOOSING | APR#/ | | NOT ACCEPTED | DEL | 80.00 |
| BAER'S | C.O.D. ; F1 | | ON DELIVERY | TOTAL | 5815.45 |

PLEASE ACKNOWLEDGE RECEIPT OF THE ABOVE
ARTICLES IN GOOD ORDER.
PLEASE COMMENT ON ANY DISCREPANCIES.

X

FURNITURE COMPANY INC.

FOR FURNITURE REPAIR
CONTACT SERVICE DEPT
954-946-8007
800-543-2092

| 1) DANIA | 2) | 3) BOCA | 11) PINES | NT MUMBER |
| 954-927-0237 | 731-8830 | 561-391-2012 | 954-442-8788 | DO |
| 4) EAST | 5) DAVIE | 6) WEST PALM | 21) NAPLES | 0#246050011A |
| 954-566-0286 | 954-434-6363 | 561-684-3225 | 239-596-6567 | ORDER TYPE SAL |
| 7) MIAMI | 8) STUART | 10) NORTH PALM | 22) FT MYERS | DELIVERY DATE |
| 305-661-5365 | 772-221-8679 | 561-626-6100 | 239-278-4107 | 01/20/07 |

SALES MICHELLE LAMBERT
PERSON LYNNE GORALL                    TYLER          JOHNNY          9) CLEARANCE          TRUCK P
                                       8675 130TH AVE                 954-781-7751          STOP
CUSTOMER CODE BTYJ0711                 FELLSMERE    FL 32948          N04                    SEQ:

ORIGINAL DOC#              CAUSE CODE .00    HOME 954-261-1933  BUS 772-344-5051

                                                              TIME IN: 235    TIME OUT:

SPECIAL              130TH AVE AND 87TH AVE
INSTRUCTIONS         REFUSED BTAIN SAFE                DELIVERY COMPLETE _____  PARTIAL DELIVERY _____ *
                     cust wants del 11-21-06           OTHER COMMENTS _____ *
LOADED BY:           PRICE CHANGE APP'BY VCF                                                          *
                     RES PER CUSTOMER REASON NA \ CBM  *
                     s                                 ***************************************************

| QTY | SKU | LOCATION VEND | STOCK NUMBER | DESCRIPTION | RELOCATE | RETAIL | EXT. RETAIL |
|-----|-----|---------------|--------------|-------------|----------|--------|-------------|
| 1 | 630118140 | 019406 BROY | 3067-02 | END TABLE | --------- | 222.00 | 222.00 |

PLEASE ACKNOWLEDGE RECEIPT OF THE ABOVE    THANK YOU FOR    BALANCE DUE    CREDIT CARDS    SUB    222.00
ARTICLES IN GOOD ORDER.                                     228.32                        DEL    .00
PLEASE COMMENT ON ANY DISCREPANCIES.       CHOOSING         APR#/ :         NOT ACCEPTED
                                                            C.O.D.: FI
X _____                 BAER'S                         ON DELIVERY    TOTAL    237.54

FURNITURE COMPANY INC.

| | | | | NT NUMBER |
|---|---|---|---|---|
| 1) DANIA | 2) | 3) BOCA | 11) PINES | D |
| 954-927-0237 | -731-8830 | 561-391-2012 | 954-442-8788 | 12056080008 |
| 4) EAST | 5) DAVIE | 6) WEST PALM | 21) NAPLES | ORDER TYPE CRM |
| 954-566-0266 | 954-434-6363 | 561-684-3225 | 239-596-6567 | |
| 7) MIAMI | 8) STUART | 10) NORTH PALM | 22) FT MYERS | DELIVERY DATE |
| 305-661-5365 | 772-221-8679 | 561-626-6100 | 239-278-4401 | 01/20/07 |

FOR FURNITURE REPAIR
CONTACT SERVICE DEPT
954-946-8007
800-543-2092

SALES MICHELLE LAMBERT
PERSON LYNNE GORALL          TYLER          JOHNNY          9) CLEARANCE
                             8675 130TH AVE                    954-781-7753
CUSTOMER CODE 8TYJO711        FELLSMERE     FL 32948     NO4

ORIGINAL DOC# 09246080011    CAUSE CODE .00    HOME 772-344-5057  BUS 772-344-5051

TRUCK P
STOP :
SEQ:

TIME IN: :    TIME OUT: :

SPECIAL          DEL 1 EXTRA SOFA AND CHAIR.  RTS           DELIVERY COMPLETE _____ PARTIAL DELIVERY _____
INSTRUCTIONS     OFFICE KEYED WRONG                          OTHER COMMENTS _____
                 PLEASE DEL W/09246080011A
LOADED BY:       ref                                         _____
                 res
                 NO COD

**********************************************************

| QTY | SKU | LOCATION | VEND | STOCK NUMBER | DESCRIPTION | | RELOCATE | RETAIL | EXT. RETAIL |
|---|---|---|---|---|---|---|---|---|---|
| 1 | 100699959 | | NATZ | A870(F870)-009-1571-09 | BROWN | SOFA | ----- | 1480.00- | 1480.00- |
| 1 | 111699952 | | NATZ | A870(F870)-003-1571-09 | BROWN | CHAIR | ----- | 950.00- | 950.00- |

PLEASE ACKNOWLEDGE RECEIPT OF THE ABOVE
ARTICLES IN GOOD ORDER.
PLEASE COMMENT ON ANY DISCREPANCIES.

X _____

| THANK YOU FOR | BALANCE DUE | CREDIT CARDS | SUB | 2430.00- |
|---|---|---|---|---|
| CHOOSING | 2600.10- | | DEL | .00 |
| | APR#: | NOT ACCEPTED | | |
| BAER'S | C.O.D.: NONE | ON DELIVERY | TOTAL | 2600.10- |



**CARLS Furniture Inc.**

# SALES CONTRACT
### 2090 N.W. US HWY. 1
### STUART, FLORIDA 34994
**PH: 772-692-1960 • FAX: 772-692-5099**

78- 759812

**OTHER CARL'S LOCATIONS AT:**
Aventura • South Miami • Palmetto Expressway • Coconut Creek • Ft. Lauderdale • Lauderhill •
Pompano Beach • West Palm Beach • North Palm Beach • Stuart

| PURCHASER | SOLD BY | DATE |
|---|---|---|
| *Tyler* | 200 | 11-24-06 |

| DELIVERY | | SOCIAL SECURITY NUMBER | ACCOUNT NUMBER |
|---|---|---|---|
| *8675 130TH AV* | ☐ OWN ☐ RENT | | |

| DEVELOPMENT / SUBDEVELOPMENT / COMPLEX NAME / APT. # | HOME PHONE | BUSINESS PHONE |
|---|---|---|
| | *244-5057* | |

| CITY | STATE | ZIP | BILL TO OR OFF SEASON ADDRESS *IF DIFFERENT |
|---|---|---|---|
| *FELLSMERE* | | | *954-261-1933-0* |

| E-MAIL ADDRESS: | |
|---|---|
| *FL 12* | *12/1 FRI* |

| | | | | | |
|---|---|---|---|---|---|
| 1 | H26 | FAR EAST | BERGERE CHAIR | 144 | 759.45 |
| 1 | 558 | 462196-5 | QUEEN MATTRESS PLAZA IL | | |
| 1 | 553 | 462196-6 | QUEEN BX SPNG | 144 | 444.45 |
| 1 | 553 | 462198-7 | KING MATTRESS KM | | |
| 2 | 553 | 462187-8 | KING BX SPNG LO PROFILE | 1844 | 1744.95 |
| | | | | | |
| 2 | L22 | LS-244 | LAMPS @ 119.95 | 184 | 339.90 |
| | | | | | |
| | | | *12 MONTHS - NO INTEREST* | | |
| | | | *NO PAYMENT* | | |

**ALL ORDERS ARE SUBJECT TO AUDITOR'S CORRECTIONS. CARL'S FURNITURE RETAINS AN ASSIGNABLE SECURITY INTEREST ON ANY GOODS PURCHASED ON THIS SALES CONTRACT.**

THIS AGREEMENT CARRIES PENALTIES AND FORFEITURES FOR NON-PERFORMANCE AND CANCELLATION. PLEASE READ THE TERMS ON THE REVERSE SIDE OF THIS AGREEMENT CAREFULLY, AS SAID TERMS ARE INCORPORATED INTO THIS SALE AND YOUR SIGNATURE ACTS AS AN ACCEPTANCE OF THESE PROVISIONS.

I acknowledge receipt of ALL-DAY delivery instructions. NOT-AT-HOME will result in RE-DELIVERY CHARGES.

**Credit Cards Not Accepted On Delivery**

____ AGREEMENT & TERMS ACCEPTED BY PURCHASER

MERCHANDISE MARKED T/W IN LOCATION
HAS BEEN ACCEPTED BY PURCHASER

*3844.75*
*2214.25*

**Stainsafe**
Protection

☐ Yes ☐ No

CUSTOMER COPY

# SALES ORDER

**PARADISE HOME & PATIO**

**PURVEYORS OF CASUAL FURNITURE & ACCESSORIES**

☐ Stuart (772) 692-9226
☐ Port St. Lucie (772) 335-4688
☒ Vero Beach (772) 567-7796
☐ Melbourne (321) 837-0300

www.paradisehomeandpatio.com

**DATE** 10/7/06

ACCOUNT NUMBER

| ORDER STATUS | | | | |
|---|---|---|---|---|
| SO = SPECIAL ORDER | | | | |
| CS = CURRENT STOCK | | | | |

| VENDOR | STOCK NUMBER | EXIST | DESCRIPTION | SALESPERSON | FINISH / FABRIC | QTY | PRICE EACH | AMOUNT |
|---|---|---|---|---|---|---|---|---|
| 1 | CS B.T. | Lanai Blvd | | 5 pc Dining St. | | | | |
| 2 | | | | 54" Table | | | | |
| 3 | | | 1 | | | | | |
| 4 | | | 2 | Chairs | | | | |
| 5 | | | 2 | Dining | | | | |
| 6 | | | | | | | 3200.00 |
| 7 | | | | | | | |
| 8 | | | | | | | |
| 9 | | | | | | | |
| 10 | | | | | | | |

CONDITIONS OF SALE: ALL SALES FINAL. NO REFUNDS, NO RETURNS, NO CANCELLATIONS. ALL MERCHANDISE SOLD AS IS.

SPECIAL INSTRUCTIONS

**ALL SPECIAL ORDERS HAVE AN ESTIMATED DELIVERY TIME OF 3 TO 12 WEEKS**

| | | |
|---|---|---|
| SUB TOTAL | 3200.00 |
| DELIVERY CHARGE | 79.00 |
| TOTAL | 3279.00 |
| SALES TAX | 229.53 |
| GRAN TOTAL | 3508.53 |
| DEPOSIT AMOUNT | 3508.53 |
| BALANCE DUE COD | $ |

**DELIVER ON** 11/1/06

**BUYER PICK-UP ON**

**DELAY DELIVERY TO**

**NOTE:** Credit Card Payments by Phone, Fax or Internet are subject to a 3% Fee.

**DEPOSIT PAID BY:** V-267

**BALANCE PAID BY:**

**COD = CASH OR CERTIFIED CHECK ONLY**

**CREDIT CARDS NOT ACCEPTED AT TIME OF DELIVERY**

**BUYER'S ACCEPTANCE** X

TERMS & PROVISIONS: BUYER HEREBY ACKNOWLEDGES THE PURCHASE OF THE ABOVE DESCRIBED MERCHANDISE AT THE PRICE STATED AND SUBJECT TO ALL CONDITIONS, TERMS AND PROVISIONS PRINTED ON THIS SALES ORDER FRONT AND BACK. PARADISE HOME & PATIO WILL RETAIN A 50% DEPOSIT ON ALL PURCHASES UNTIL DELIVERY OR PAYMENT IN FULL IS RECEIVED. IN THE EVENT OF DELIVERY, IF THERE IS AN UNPAID BALANCE DUE COD, BUYER MUST MAKE PAYMENT IN FULL IN THE FORM OF CASH, CASHIERS CHECK OR MONEY ORDER. PERSONAL OR BUSINESS CHECKS AND CREDIT CARDS WILL NOT BE ACCEPTED AT THIS TIME. THIS ORDER IS SUBJECT TO PARADISE HOME & PATIOS AUDIT FOR ERRORS AND OMISSIONS.
I HAVE READ THIS SALES ORDER FRONT AND BACK AND BY SIGNING BELOW I ACCEPT AND I AGREE TO ALL OF ITS CONDITIONS, TERMS AND PROVISIONS. I HAVE ALSO RECEIVED A COPY OF THIS SALES ORDER THIS DAY.

**DATE RECEIVED** / / X

I HEREBY ACKNOWLEDGE THE RECEIPT OF THE ABOVE MERCHANDISE IN GOOD ORDER AND AGREE TO THE CONDITIONS, TERMS AND PROVISIONS ON THIS SALES ORDER (FRONT & BACK).

WHITE - MAIN OFFICE     CANARY - FILE     PINK - STORE     GOLDENROD - CUSTOMER

**amazon.com**

## Final Details for Order #105-0320321-9042675

Print this page for your records.

**Order Placed:** February 23, 2008
**Amazon.com order number:** 105-0320321-9042675
**Order Total:** $799.98

## Shipped on February 25, 2008

**Items Ordered**                                                              **Price**
1 of: *Samsung LNT3253H 32" LCD HDTV*                                           $799.98
Sold by: Amazon.com Services, Inc.

**Shipping Address:**                                 Item(s) Subtotal: $799.98
johnny tyler                                       Shipping & Handling:   $29.18
8675 130TH AVE                                       Shipping Savings:  -$29.18
FELLSMERE, FL 32948-6238                                                  -----
United States                                       Total before tax: $799.98
                                                           Sales Tax:    $0.00
**Shipping Speed:**                                                       -----
Standard Shipping                          **Total for This Shipment: $799.98**
                                                                         -----

## Payment information

**Payment Method:**                                   Item(s) Subtotal: $799.98
Visa | Last digits: 8025                           Shipping & Handling:   $29.18
                                                     Shipping Savings:  -$29.18
**Billing address**                                                       -----
johnny tyler                                        Total before tax: $799.98
8675 130TH AVE                             Estimated tax to be collected:   $0.00
FELLSMERE, FL 32948-6238                                                  -----
United States                                       **Grand Total: $799.98**

**Credit Card transactions**           Visa ending in 8025: February 25, 2008: $799.98

To view the status of your order, return to Order Summary.

Conditions of Use | Privacy Notice © 1996-2018, Amazon.com, Inc. or its affiliates

Amazon.com - Order 104-8234158-4762635

## Shipped on February 27, 2011

| Items Ordered | Price |
|---|---|
| 1 of: *Panasonic VIERA TC-P54VT25 54-inch 1080p 3D Plasma HDTV, Black* | $2,182.26 |
| Sold by: Amazon.com Services, Inc. | |

Condition: New

**Shipping Address:**
johnny tyler
8675 130TH AVE
FELLSMERE, FL 32948-6238
United States

**Shipping Speed:**
FREE Shipping

Item(s) Subtotal: $2,182.26
Shipping & Handling: $58.33
Super Saver Discount: -$58.33
-----
Total before tax: $2,182.26
Sales Tax: $0.00
-----
**Total for This Shipment: $2,182.26**
-----

## Payment information

**Payment Method:**
American Express | Last digits: 1009

**Billing address**
johnny tyler
8675 130TH AVE
FELLSMERE, FL 32948-6238
United States

Item(s) Subtotal: $2,489.88
Shipping & Handling: $69.05
Super Saver Discount: -$69.05
-----
Total before tax: $2,489.88
Estimated tax to be collected: $0.00
-----
**Grand Total: $2,489.88**

**Credit Card transactions**
AmericanExpress ending in 1009: February 27, 2011: $2,182.26
AmericanExpress ending in 1009: March 1, 2011: $256.15
AmericanExpress ending in 1009: February 26, 2011: $51.47

To view the status of your order, return to Order Summary.

Conditions of Use | Privacy Notice © 1996-2018, Amazon.com, Inc. or its affiliates

**amazon**.com

## Final Details for Order #105-3608240-4685040
Print this page for your records.

**Order Placed:** November 23, 2014
**Amazon.com order number:** 105-3608240-4685040
**Order Total:** $2,297.99

## Shipped on November 25, 2014

| **Items Ordered** | **Price** |
|---|---|
| 1 of: *Samsung UN65HU8550 65-Inch 4K Ultra HD 120Hz 3D Smart LED TV*<br>Sold by: Video & Audio Center (seller profile) | $2,297.99 |

Condition: New
Samsung Authorized Online Dealer. NO SALES TAX IN ANY STATE! FOR CA - WE WILL PAY YOUR SALES TAX!
FREE 2 YEAR WARRANTY! 99% order ships out same day or next business day GUARANTEED! Customer
Satisfaction GUARANTEED!

**Shipping Address:**
johnny tyler
8675 130TH AVE
FELLSMERE, FL 32948-6238
United States

| | |
|---|---|
| Item(s) Subtotal: | $2,297.99 |
| Shipping & Handling: | $0.00 |
| | ----- |
| Total before tax: | $2,297.99 |
| Sales Tax: | $0.00 |
| | ----- |
| **Total for This Shipment:** | **$2,297.99** |
| | ----- |

**Shipping Speed:**
Standard

## Payment information

**Payment Method:**
American Express | Last digits: 1009

**Billing address**
johnny tyler
8675 130TH AVE
FELLSMERE, FL 32948-6238
United States

| | |
|---|---|
| Item(s) Subtotal: | $2,297.99 |
| Shipping & Handling: | $0.00 |
| | ----- |
| Total before tax: | $2,297.99 |
| Estimated tax to be collected: | $0.00 |
| | ----- |
| **Grand Total:** | **$2,297.99** |

**Credit Card transactions**    AmericanExpress ending in 1009: November 25, 2014: $2,297.99

To view the status of your order, return to Order Summary.

Conditions of Use | Privacy Notice © 1996-2018, Amazon.com, Inc. or its affiliates

# BOB'S

**FT. LAUD. WEST** - 4711 North State Rd. 7
Tamarac, FL 33319 Phone: 954-731-8830

**BOCA RATON** - 999 North Federal Highway
Boca Raton, FL 33432 Phone: 561-391-2012

**FT. LAUD. EAST** - 3740 North Federal Highway
Ft. Lauderdale, FL 33308  Phone: 954-566-0266

**WEST PALM BEACH** - 2324 North Military Trail
West Palm Beach, FL 33409 Phone: 561-684-3225

**STUART** - 1421 South Federal Highway
Stuart, FL 34994 Phone: 772-221-8679

**NORTH PALM BEACH** - 910 North U.S. Highway #1
North Palm Beach, FL 33408 Phone: 561-626-6100

**PEMBROKE PINES** - 13630 Pines Boulevard
Pembroke Pines, FL 33027 Phone: 954-442-8788

**PINECREST** - 7501 S.W. 100th Street
Pinecrest, FL 33156 Phone: 305-668-8400

**MELBOURNE** - 4260 W New Haven Ave.
Melbourne, FL 32904 Phone: 321-872-2377

Visit WWW.BAERS.COM for more info, store locations, current promotions & to register for Baer's email list.

SALESPERSON #1

SALESPERSON #2

CUSTOMER CODE

NEW CUSTOMER ☐ YES ☐ NO   HOME PHONE: (   )

LAST NAME

FIRST NAME

STREET ADDRESS

CITY   STATE   ZIP CODE

CELL/BUS PHONE: (   )

SPECIAL INSTRUCTIONS:
DEVELOPMENT/CROSS STREETS:
APT # / BUILDING #:

SIGN UP FOR OUR E-MAIL LIST: ☐ YES ☐ NO
E-MAIL ADDRESS:

WORKSHEET ☐ YES ☐ NO

| QTY | SKU NUMBER | LOC | VENDOR | VENDOR STOCK NO. | DESCRIPTION | RETAIL | EXT. RETAIL |
|---|---|---|---|---|---|---|---|
| 1 | | | | | | | |
| 2 | | | | | | | |
| 3 | | | | | | | |
| 4 | | | | | | | |
| 5 | | | | | | | |
| 6 | | | | | | | |
| 7 | | | | | | | |
| 8 | | | | | | | |
| 9 | | | | | | | |
| 10 | | | | | | | |
| 11 | | | | | | | |
| 12 | | | | | | | |
| 13 | | | | | | | |
| 14 | | | | | | | |

| | SUB TOTAL | |
|---|---|---|
| | DELIVERY | |
| | TOTAL TAXABLE | |
| | SALES TAX | |
| | TOTAL | |

| CASHIER | DRAWER | | DEPOSIT AMOUNT | AMX ☐ | DEPOSIT AMOUNT | MOP TYPE | BALANCE AMOUNT | FINANCE CO. |
|---|---|---|---|---|---|---|---|---|
| | | CS ☐ | | DIS ☐ | | MOP TYPE | BALANCE AMOUNT | APPROVAL # |
| | | CK ☐ | | OTHER ☐ | | | | |
| | | BC ☐ | | | | | | |

**ALL ORDERS MUST BE PAID IN FULL PRIOR TO DELIVERY.**
**VALID DRIVERS LICENSE REQUIRED AT TIME OF PURCHASE**   X

By signing this agreement, customer acknowledges that they have read and
understand same, including the reverse side of this page and agree it is reasonable.

Customer Relations Department
1-800-542-2902

PICK-UP/DELIVERY
SALES ORDER NOT VALID UNLESS STAMPED

COMPUTER ENTRY

DAY

# The Frugal Framer
502 21st. STREET
Vero Beach, Fl 32960
772-770-2744

**CUSTOMER COPY**  13:19:53 Ver. 8.2

**Order #**  **1 - 130119**
Quantity:  1  **06/04/2016**

Johnny Tyler  (954) 261-1933

| | |
|---|---|
| Taken By: | **KM** |
| Date Ordered: | **06/04/2016** |
| Estimated Date: | **06/09/2016** |
| | **Thursday** |
| Bin In: | |
| Bin Out: | |

8675 130 Ave

Fellsmere  FL  32948

## Image
**Size:** 21 X 18

Horces
Wrinkles

**Width x Height**
**27-1/2 X 24-1/2**
Total Size

## Mats

| | Color | Number | Expos | Top | Left | Right | Bottom |
|---|---|---|---|---|---|---|---|
| TopMat | DAIRY | a4700 | 3 | 3 | 3 | 3 | 3 |
| 2ndMat | ONYX | a4968 | 1/4 | 3-1/4 | 3-1/4 | 3-1/4 | 3-1/4 |

## Frames

| Style | | Width | Height | Vend | UI | FT | Location |
|---|---|---|---|---|---|---|---|
| Custom | 80216 2"FINISHED CHARCOAL | 27-1/2 | 24-1/2 | R13 | 53.00 | 10.9 | V481 |

## Supplies

| | | |
|---|---|---|
| GLASS | PremiumClear | ( 32x40 ) |
| MOUNT | Hinge | |
| FINISH | Frugal Frame | |

## Comments
Can be ironed low temp

| | |
|---|---|
| Subtotal: | 313.73 |
| Quantity: | 1 |
| Tax: | 21.96 |
| Total: | 335.69 |

MATS CUT _____, MOUNTED _____, GLASSED _____, FRAME CUT _____, FIT _____, SHRINK WRAP _____
    I have carefully selected the above materials and colors and I will be responsible for these materials once they are cut for my order.
The Frugal Framer is not responsible for frames and/ or artwork left over 30 days from completion.
    I acknowledge that I have been advised that vacuum mounting is not a conservation mount and it is not reversible.
I also acknowledge that I have been informed about the importance of conservation framing.

CUSTOMER'S SIGNATURE _____

inv

# The Frugal Framer
502 21st. STREET
Vero Beach, Fl 32960
772-770-2744

**CUSTOMER COPY**                      13:22:14 Ver. 8.2

**Order #**        **1 - 130121**
Quantity:      1        06/04/2016

ohnny Tyler                    (954) 261-1933

| | |
|---|---|
| Taken By: | **KM** |
| Date Ordered: | **06/04/2016** |
| Estimated Date: | **06/09/2016** |
| | **Thursday** |

8675 130 Ave

Fellsmere        FL   32948

Bin In:
Bin Out:

# Image
**Size: 21 X 18**

Elephants
Wrinkles

**Width x Height**
**27-1/2 X 24-1/2**
Total Size

# Mats

| | Color | Number | Expos | Top | Left | Right | Bottom |
|---|---|---|---|---|---|---|---|
| TopMat | DAIRY | a4700 | 3 | 3 | 3 | 3 | 3 |
| 2ndMat | SORRELL | B8512 | 1/4 | 3-1/4 | 3-1/4 | 3-1/4 | 3-1/4 |

# Frames

| | Style | | Width | Height | Vend | UI | FT | Location |
|---|---|---|---|---|---|---|---|---|
| Custom | 80216 | 2"FINISHED CHARCOAL | 27-1/2 | 24-1/2 | R13 | 53.00 | 10.9 | V481 |

# Supplies

| | | |
|---|---|---|
| GLASS | PremiumClear | ( 32x40 ) |
| MOUNT | Hinge | |
| FINISH | Frugal Frame | |

# Comments
Can be ironed low temp

| | |
|---|---|
| Subtotal: | 313.73 |
| Quantity: | 1 |
| Tax: | 21.96 |
| **Total:** | **335.69** |

MATS CUT _____, MOUNTED _____, GLASSED _____, FRAME CUT _____, FIT _____, SHRINK WRAP _____
    I have carefully selected the above materials and colors and I will be responsible for these materials once they are cut for my order.
The Frugal Framer is not responsible for frames and/ or artwork left over 30 days from completion.
    I acknowledge that I have been advised that vacuum mounting is not a conservation mount and it is not reversible.
I also acknowledge that I have been informed about the importance of conservation framing.

*inv*                              CUSTOMER'S SIGNATURE _____

**Lighten Up**
Chandeliers • Lamps • Fans

1973 SW Savage Blvd.
Port St. Lucie, FL 34953

Office: (772) 879-1000
Fax: (772) 879-1500

Job # _____   Invoice # _____   Date 1/5/07

Mark-Boxes _____
Delivery _____

| Qnty. | Order | Rec. | Pull | Del. | Item Description | Room | Bulbs | Cost/Item | Total Cost |
|---|---|---|---|---|---|---|---|---|---|
| 2 | | | | | MF-VS11003 6BZ | Master Vanity | 6/75 mini Can | 179 | 358 |
| | | | | | Paul to install @ no charge | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |

Customer Name: TYLER

Address: _____

Phone: 954-261-1933

Builder: feberly

358.00
23.27
381.27

Customer Approval of order as written _____

Delivery Signature (Merchandise inspected, received in good condition) _____

Page # _____ of _____ Page # _____

# PROPOSAL

473 - *whin*
5994

Page No. _____ of _____ Pages

### DESCRIPTION OF JOB

| ARCHITECT | | DATE OF PLANS | |
|-----------|--|---------------|--|
| JOB | | | |
| ADDRESS | | | |
| CITY | | STATE | ZIP |
| PHONE | | DATE | |

*Jeff Ward*
*360-7715*

**PROPOSAL SUBMITTED TO:**

M. Tyler
[illegible]
Baltimore, FL [illegible]

**WE HEREBY SUBMIT SPECIFICATIONS AND ESTIMATES FOR:**

*Frame + Screen under existing Roof to Res.*
*Conc. 13/14 Screen, (2) Screen Door, 16" Kickplate around*
*bottom, per owner.*

We hereby propose to furnish material and labor, complete in accordance with above specifications, for the

sum of _____ dollars ($ _1320_ )

with payment to be made as follows: _____

Pd ck# 0967 ＄990.00 12/8/06

All material is guaranteed to be as specified. All work is to be completed in a workmanlike manner according to standard practices. Any alteration or deviation from specifications involving extra costs will be executed upon written orders, and will become an extra charge over and above the estimate. All agreements contingent upon strikes, accidents or delays beyond our control. Owner to carry fire, tornado and other necessary insurance. Our workers are fully covered by Worker's Compensation Insurance.

Authorized
Signature _____

Note: This proposal may be withdrawn by us if not accepted
within _____ days.

**Acceptance of Proposal** - The above prices, specifications and conditions are satisfactory and are hereby accepted. You are authorized to do the work as specified. Payment will be made as outlined above.

Date of Acceptance: _____

Signature _____

Signature _____



JOHNNY C. TYLER
3323 N.W. 69th Ave.
Margate, FL 33063

0939

63-643/670
BRANCH 00540

DATE 8/18/06

PAY TO THE
ORDER OF Fishing Up.                    $ 1,200.00

Twelve hundred & 00/100                           DOLLARS

FIRST
UNION·  First Union National Bank
        R/T 067006432

FOR

Johnny Tyler

⑆067006432⑆ 2⑆ ⑈ 15400356501⑈ 0939

3/20/2018                                          Amazon.com - Order 002-7008537-9279410

# amazon.com

## Final Details for Order #002-7008537-9279410
### Print this page for your records.

**Order Placed:** December 16, 2011
**Amazon.com order number:** 002-7008537-9279410
**Order Total:** $89.34

## Shipped on December 19, 2011

| Items Ordered | Price |
|---|---|
| 1 of: *Altec Lansing M650 Speaker System*<br>Sold by: Amazon.com Services, Inc. | $141.33 |

Condition: New

**Shipping Address:**
johnny tyler
8675 130TH AVE
FELLSMERE, FL 32948-6238
United States

**Shipping Speed:**
FREE Shipping

Item(s) Subtotal: $141.33
Shipping & Handling: $9.12
Super Saver Discount: -$9.12
-----
Total before tax: $141.33
Sales Tax: $0.00
Rewards Points: -$51.99
-----
**Total for This Shipment: $89.34**
**Total paid by Rewards Points: -$51.99**
-----

## Payment information

**Payment Method:**
American Express | Last digits: 1009
Rewards Points

**Billing address**
johnny tyler
8675 130TH AVE
FELLSMERE, FL 32948-6238
United States

Item(s) Subtotal: $141.33
Shipping & Handling: $9.12
Super Saver Discount: -$9.12
-----
Total before tax: $141.33
Estimated tax to be collected: $0.00
Rewards Points: -$51.99
-----
**Grand Total: $89.34**

**Credit Card transactions**    AmericanExpress ending in 1009: December 19, 2011: $89.34

To view the status of your order, return to Order Summary.

Conditions of Use | Privacy Notice © 1996-2018, Amazon.com, Inc. or its affiliates

3/20/2018    Amazon.com - Order 105-6608505-4878660

**amazon**.com

## Final Details for Order #105-6608505-4878660
Print this page for your records.

**Order Placed:** December 17, 2012
**Amazon.com order number:** 105-6608505-4878660
**Order Total:** $279.95

## Shipped on December 18, 2012

| Items Ordered | Price |
|---|---|
| 1 of: *Breville BGR820XL Smart Grill*<br>Sold by: Amazon.com Services, Inc.<br><br>Condition: New | $279.95 |

**Shipping Address:**
johnny tyler
8675 130TH AVE
FELLSMERE, FL 32948-6238
United States

**Shipping Speed:**
Two-Day Shipping

| | |
|---|---|
| Item(s) Subtotal: | $279.95 |
| Shipping & Handling: | $0.00 |
| | ----- |
| Total before tax: | $279.95 |
| Sales Tax: | $0.00 |
| | ----- |
| **Total for This Shipment:** | **$279.95** |
| | ----- |

## Payment information

**Payment Method:**
American Express | Last digits: 1009

**Billing address**
johnny tyler
8675 130TH AVE
FELLSMERE, FL 32948-6238
United States

| | |
|---|---|
| Item(s) Subtotal: | $279.95 |
| Shipping & Handling: | $0.00 |
| | ----- |
| Total before tax: | $279.95 |
| Estimated tax to be collected: | $0.00 |
| | ----- |
| **Grand Total:** | **$279.95** |

**Credit Card transactions**     AmericanExpress ending in 1009: December 18, 2012: $279.95

To view the status of your order, return to Order Summary.

Conditions of Use | Privacy Notice © 1996-2018, Amazon.com, Inc. or its affiliates

3/20/2018

# amazon.com

## Final Details for Order #105-5763565-7277012

Print this page for your records.

**Order Placed:** December 28, 2012
**Amazon.com order number:** 105-5763565-7277012
**Order Total: $171.29**

## Shipped on December 28, 2012

| Items Ordered | Price |
|---|---|
| 1 of: *Nautica Men's Yd Woven Mediterranean Dot Pant, Peacoat, Medium*<br>Sold by: Amazon.com Services, Inc. | $21.99 |
| Condition: New<br>1 of: *Nautica Men's Captains Herringbone Woven Camp Shirt, Anthracite, Medium*<br>Sold by: Amazon.com Services, Inc. | $23.40 |
| Condition: New<br>2 of: *Nautica Men's Woven Mediterranean Dot Short, Peacoat, Medium*<br>Sold by: Amazon.com Services, Inc. | $17.99 |
| Condition: New<br>1 of: *Nautica Men's Woven Mediterranean Dot Campshirt, Peacoat, Medium*<br>Sold by: Amazon.com Services, Inc. | $21.99 |

Condition: New

**Shipping Address:**
johnny tyler
8675 130TH AVE
FELLSMERE, FL 32948-6238
United States

**Shipping Speed:**
Two-Day Shipping

| | |
|---|---|
| Item(s) Subtotal: | $103.36 |
| Shipping & Handling: | $0.00 |
| | ----- |
| Total before tax: | $103.36 |
| Sales Tax: | $0.00 |
| | ----- |
| **Total for This Shipment:** | **$103.36** |
| | ----- |

## Shipped on December 28, 2012

| Items Ordered | Price |
|---|---|
| 1 of: *Nautica Men's Captains Herringbone Woven Jam, Anthracite, Medium*<br>Sold by: Amazon.com Services, Inc. | $17.99 |

Condition: New

**Shipping Address:**
johnny tyler
8675 130TH AVE
FELLSMERE, FL 32948-6238
United States

**Shipping Speed:**
Two-Day Shipping

| | |
|---|---|
| Item(s) Subtotal: | $17.99 |
| Shipping & Handling: | $0.00 |
| | ----- |
| Total before tax: | $17.99 |
| Sales Tax: | $0.00 |
| | ----- |
| **Total for This Shipment:** | **$17.99** |
| | ----- |

## Shipped on January 17, 2013

| **Items Ordered** | **Price** |
|---|---|
| 1 of: *Nautica Men's Woven Mediterranean Dot Robe, Peacoat, Small/Medium* | $31.95 |

Sold by: Amazon.com Services, Inc.

Condition: New

**Shipping Address:**
johnny tyler
8675 130TH AVE
FELLSMERE, FL 32948-6238
United States

**Shipping Speed:**
Two-Day Shipping

Item(s) Subtotal: $31.95
Shipping & Handling: $0.00
-----
Total before tax: $31.95
Sales Tax: $0.00
-----
**Total for This Shipment: $31.95**
-----

## Shipped on December 28, 2012

| **Items Ordered** | **Price** |
|---|---|
| 1 of: *Geoffrey Beene Men's Scuff Slipper, Black, Large (11-12)* | $17.99 |

Sold by: Amazon.com Services, Inc.

Condition: New

**Shipping Address:**
johnny tyler
8675 130TH AVE
FELLSMERE, FL 32948-6238
United States

**Shipping Speed:**
Two-Day Shipping

Item(s) Subtotal: $17.99
Shipping & Handling: $0.00
-----
Total before tax: $17.99
Sales Tax: $0.00
-----
**Total for This Shipment: $17.99**
-----

## Payment information

**Payment Method:**
American Express | Last digits: 1009

**Billing address**
johnny tyler
8675 130TH AVE
FELLSMERE, FL 32948-6238
United States

Item(s) Subtotal: $171.29
*Shipping & Handling:* $0.00
-----
Total before tax: $171.29
Estimated tax to be collected: $0.00
-----
**Grand Total: $171.29**

**Credit Card transactions**

AmericanExpress ending in 1009: January 17, 2013: $31.95
AmericanExpress ending in 1009: December 28, 2012: $103.36
AmericanExpress ending in 1009: December 28, 2012: $17.99
AmericanExpress ending in 1009: December 28, 2012: $17.99

To view the status of your order, return to Order Summary.

Conditions of Use | Privacy Notice © 1996-2018, Amazon.com, Inc. or its affiliates

3/20/2018                                          Amazon.com - Order 114-7915804-6720232

**amazon.com**

## Final Details for Order #114-7915804-6720232
Print this page for your records.

**Order Placed:** November 16, 2014
**Amazon.com order number:** 114-7915804-6720232
**Order Total:** $116.25

## Shipped on November 16, 2014

| Items Ordered | Price |
|---|---|
| 1 of: *Lite Source LS-21652 Table Lamp, Chrome with White Fabric Shade*<br>Sold by: Amazon.com Services, Inc. | $113.17 |

Condition: New

**Shipping Address:**
johnny tyler
8675 130TH AVE
FELLSMERE, FL 32948-6238
United States

**Shipping Speed:**
Two-Day Shipping

| | |
|---|---|
| Item(s) Subtotal: | $113.17 |
| Shipping & Handling: | $0.00 |
| | ----- |
| Total before tax: | $113.17 |
| Sales Tax: | $7.92 |
| Rewards Points: | -$4.84 |
| | ----- |
| **Total for This Shipment:** | **$116.25** |
| **Total paid by Rewards Points:** | **-$4.84** |
| | ----- |

## Payment information

**Payment Method:**
American Express | Last digits: 1009
Rewards Points

**Billing address**
johnny tyler
8675 130TH AVE
FELLSMERE, FL 32948-6238
United States

| | |
|---|---|
| Item(s) Subtotal: | $113.17 |
| Shipping & Handling: | $0.00 |
| | ----- |
| Total before tax: | $113.17 |
| Estimated tax to be collected: | $7.92 |
| Rewards Points: | -$4.84 |
| | ----- |
| **Grand Total:** | **$116.25** |

**Credit Card transactions**       AmericanExpress ending in 1009: November 16, 2014: $116.25

To view the status of your order, return to Order Summary.

Conditions of Use | Privacy Notice © 1996-2018, Amazon.com, Inc. or its affiliates

3/20/2018                                    Amazon.com - Order 111-2528694-1238631

# amazon.com

## Final Details for Order #111-2528694-1238631
Print this page for your records.

**Order Placed:** February 14, 2016
**Amazon.com order number:** 111-2528694-1238631
**Order Total:** $813.20

## Shipped on February 14, 2016

| Items Ordered | Price |
|---|---|
| 1 of: *Tumi Alpha 2 Large Soft Travel Satchel, Black, One Size*<br>Sold by: Amazon.com Services, Inc.<br><br>Condition: New | $395.00 |
| 1 of: *Tumi Alpha Bravo Knox Backpack, Anthracite, One Size*<br>Sold by: Amazon.com Services, Inc.<br><br>Condition: New | $365.00 |

**Shipping Address:**
johnny tyler
8675 130TH AVE
FELLSMERE, FL 32948-6238
United States

**Shipping Speed:**
Two-Day Shipping

|  |  |
|---|---|
| Item(s) Subtotal: | $760.00 |
| Shipping & Handling: | $0.00 |
|  | ----- |
| Total before tax: | $760.00 |
| Sales Tax: | $53.20 |
|  | ----- |
| **Total for This Shipment:** | **$813.20** |
|  | ----- |

## Payment information

**Payment Method:**
American Express | Last digits: 1009

**Billing address**
johnny tyler
8675 130TH AVE
FELLSMERE, FL 32948-6238
United States

|  |  |
|---|---|
| Item(s) Subtotal: | $760.00 |
| Shipping & Handling: | $0.00 |
|  | ----- |
| Total before tax: | $760.00 |
| Estimated tax to be collected: | $53.20 |
|  | ----- |
| **Grand Total:** | **$813.20** |

**Credit Card transactions**      AmericanExpress ending in 1009: February 14, 2016: $813.20

To view the status of your order, return to Order Summary.

Conditions of Use | Privacy Notice © 1996-2018, Amazon.com, Inc. or its affiliates

3/20/2018                                    Amazon.com - Order 108-4605956-6217014

# amazon.com

## Final Details for Order #108-4605956-6217014
### Print this page for your records.

**Order Placed:** February 28, 2016
**Amazon.com order number:** 108-4605956-6217014
**Order Total:** $812.61

## Shipped on March 1, 2016

| Items Ordered | Price |
|---|---|
| 1 of: *RAB Lighting STL360HBW Super Stealth 360 Sensor with HB101 Bullet Floods*<br>Sold by: Lightening USA Inc (seller profile)<br><br>Condition: New | $95.21 |
| 2 of: *Philips 435016 15-watt Indoor/Outdoor PAR38 Dimmable LED Light Bulb, Daylight*<br>Sold by: Amazon.com Services, Inc.<br><br>Condition: New | $18.49 |

**Shipping Address:**
johnny tyler
8675 130TH AVE
FELLSMERE, FL 32948-6238
United States

**Shipping Speed:**
Two-Day Shipping

Item(s) Subtotal: $132.19
Shipping & Handling: $0.00
-----
Total before tax: $132.19
Sales Tax: $2.58
-----
**Total for This Shipment: $134.77**
-----

## Shipped on February 29, 2016

| Items Ordered | Price |
|---|---|
| 1 of: *RAB Lighting STL360HBW Super Stealth 360 Sensor with HB101 Bullet Floods (2 Pack)*<br>Sold by: Lightening USA Inc (seller profile)<br><br>Condition: New | $180.25 |
| 1 of: *Amcrest 1080P Tribrid HDCVI 4CH 2TB DVR Security Camera System w/ 4 x 2.1MP Bullet Cameras (White)*<br>Sold by: Shelfspace Security (seller profile)<br><br>Condition: New | $449.99 |

**Shipping Address:**
johnny tyler
8675 130TH AVE
FELLSMERE, FL 32948-6238
United States

**Shipping Speed:**
Two-Day Shipping

Item(s) Subtotal: $630.24
Shipping & Handling: $0.00
-----
Total before tax: $630.24
Sales Tax: $0.00
-----
**Total for This Shipment: $630.24**
-----

## Shipped on February 29, 2016

**Items Ordered**                                                              **Price**

1 of: *Hyperikon PAR38 LED Bulb, 14W (100W equivalent), 4000K, CRI90+, 40 Beam*   $47.60
*Angle, Medium Base (E26) Dimmable Flood Light Bulb, Daylight White, 4-Pack*
Sold by: Hyperikon (seller profile) | Product question? Ask Seller

Condition: New

**Shipping Address:**                          Item(s) Subtotal: $47.60
johnny tyler                                Shipping & Handling:  $0.00
8675 130TH AVE                                                  -----
FELLSMERE, FL 32948-6238                       Total before tax: $47.60
United States                                        Sales Tax:  $0.00
                                                                -----
**Shipping Speed:**                       **Total for This Shipment:$47.60**
Two-Day Shipping                                                 -----

## Payment information

**Payment Method:**                            Item(s) Subtotal: $810.03
American Express | Last digits: 1009        Shipping & Handling:   $0.00
                                                                -----
**Billing address**                            Total before tax: $810.03
johnny tyler                          Estimated tax to be collected:  $2.58
8675 130TH AVE                                                  -----
FELLSMERE, FL 32948-6238                       **Grand Total:$812.61**
United States

**Credit Card transactions**      AmericanExpress ending in 1009: March 1, 2016: $134.77
                                  AmericanExpress ending in 1009: February 29, 2016: $630.24
                                  AmericanExpress ending in 1009: February 29, 2016:  $47.60

To view the status of your order, return to Order Summary.

Conditions of Use | Privacy Notice © 1996-2018, Amazon.com, Inc. or its affiliates

**amazon**.com

## Final Details for Order #002-5662457-7601017
Print this page for your records.

**Order Placed:** July 7, 2016
**Amazon.com order number:** 002-5662457-7601017
**Order Total: $288.80**

## Shipped on July 8, 2016

| Items Ordered | Price |
|---|---|
| 1 of: *ECCO Men's Hayes Tie Shoe, Mocha, 46 EU/12-12.5 M US* | $149.95 |

Sold by: GCShop (seller profile) | Product question? Ask Seller

Condition: New

**Shipping Address:**
johnny tyler
8675 130TH AVE
FELLSMERE, FL 32948-6238
United States

| | |
|---|---|
| Item(s) Subtotal: | $149.95 |
| Shipping & Handling: | $0.00 |
| | ----- |
| Total before tax: | $149.95 |
| Sales Tax: | $10.50 |
| | ----- |
| **Total for This Shipment:** | **$160.45** |
| | ----- |

**Shipping Speed:**
Two-Day Shipping

## Shipped on July 8, 2016

| Items Ordered | Price |
|---|---|
| 1 of: *Instant Pot IP-DUO60 7-in-1 Multi-Functional Pressure Cooker, 6Qt/1000W* | $119.95 |

Sold by: Amazon.com Services, Inc.

Condition: New

**Shipping Address:**
johnny tyler
8675 130TH AVE
FELLSMERE, FL 32948-6238
United States

| | |
|---|---|
| Item(s) Subtotal: | $119.95 |
| Shipping & Handling: | $0.00 |
| | ----- |
| Total before tax: | $119.95 |
| Sales Tax: | $8.40 |
| | ----- |
| **Total for This Shipment:** | **$128.35** |
| | ----- |

**Shipping Speed:**
Two-Day Shipping

## Payment information

**Payment Method:**
American Express | Last digits: 1009

**Billing address**
johnny tyler
8675 130TH AVE
FELLSMERE, FL 32948-6238
United States

| | |
|---|---|
| Item(s) Subtotal: | $269.90 |
| Shipping & Handling: | $0.00 |
| | ----- |
| Total before tax: | $269.90 |
| Estimated tax to be collected: | $18.90 |
| | ----- |
| **Grand Total:** | **$288.80** |

**Credit Card transactions**      AmericanExpress ending in 1009: July 8, 2016: $160.45

3/20/2018

Amazon.com - Order 113-0277212-5631451

**amazon**.com

## Final Details for Order #113-0277212-5631451
Print this page for your records.

**Order Placed:** November 28, 2016
**Amazon.com order number:** 113-0277212-5631451
**Order Total:** $149.79

## Shipped on December 5, 2016

**Items Ordered**      **Price**
1 of: *Amazon Echo - Black*      $139.99
Sold by: Amazon Digital Services, Inc.

Condition: New

**Shipping Address:**
johnny tyler
8675 130TH AVE
FELLSMERE, FL 32948-6238
United States

**Shipping Speed:**
Two-Day Shipping

| | |
|---|---|
| Item(s) Subtotal: | $139.99 |
| Shipping & Handling: | $0.00 |
| | ----- |
| Total before tax: | $139.99 |
| Sales Tax: | $9.80 |
| | ----- |
| **Total for This Shipment:** | **$149.79** |
| | ----- |

## Payment information

**Payment Method:**
American Express | Last digits: 1001

**Billing address**
johnny tyler
8675 130TH AVE
FELLSMERE, FL 32948-6238
United States

| | |
|---|---|
| Item(s) Subtotal: | $139.99 |
| Shipping & Handling: | $0.00 |
| | ----- |
| Total before tax: | $139.99 |
| Estimated tax to be collected: | $9.80 |
| | ----- |
| **Grand Total:** | **$149.79** |

**Credit Card transactions**      AmericanExpress ending in 1001: December 5, 2016: $149.79

To view the status of your order, return to Order Summary.

Conditions of Use | Privacy Notice © 1996-2018, Amazon, Inc. or its affiliates

3/20/2018                                      Amazon.com - Order 114-5842940-3750607

## amazon.com

### Final Details for Order #114-5842940-3750607
Print this page for your records.

**Order Placed:** December 20, 2017
**Amazon.com order number:** 114-5842940-3750607
**Order Total:** $204.89

## Shipped on December 21, 2017

| Items Ordered | Price |
|---|---|
| 1 of: *Burberry Brit Men's Check Placket Polo Shirt (X-Large, Dark Royal Purple)* | $99.89 |
| Sold by: TheCaspian (seller profile) | |
| | |
| Condition: New | |
| 1 of: *BURBERRY - Men's Polo OXFORD - Blue (Dark Navy), XL* | $105.00 |
| Sold by: TheCaspian (seller profile) | |
| | |
| Condition: New | |

**Shipping Address:**
johnny tyler
8675 130TH AVE
FELLSMERE, FL 32948-6238
United States

**Shipping Speed:**
Standard Shipping

| | |
|---|---|
| Item(s) Subtotal: | $204.89 |
| Shipping & Handling: | $0.00 |
| | ----- |
| Total before tax: | $204.89 |
| Sales Tax: | $0.00 |
| | ----- |
| **Total for This Shipment:** | **$204.89** |
| | ----- |

## Payment information

**Payment Method:**
American Express | Last digits: 1007

**Billing address**
Johnny tyler
8675 130TH AVE
FELLSMERE, FL 32948-6238
United States

| | |
|---|---|
| Item(s) Subtotal: | $204.89 |
| Shipping & Handling: | $0.00 |
| | ----- |
| Total before tax: | $204.89 |
| Estimated tax to be collected: | $0.00 |
| | ----- |
| **Grand Total:** | **$204.89** |

**Credit Card transactions**     AmericanExpress ending in 1007: December 21, 2017: $204.89

To view the status of your order, return to Order Summary.

Conditions of Use | Privacy Notice © 1996-2018, Amazon.com, Inc. or its affiliates

 **Dell Help & Support**



**XPS 8900**

Service Tag **C74YW72** ⓘ

Express Service Code **26552997758** ⓘ



| | |
|---|---|
| 📋 **Warranty** | |

🔧 **SupportAssist**

📗 **Manuals**

Your device was registered on
2/14/2016

# Warranty Status

Onsite Service After Remote Diagnosis
(Consumer Customer)/ Next Business Day
Onsite After Remote Diagnosis (Commercial
Customer)
*Warranty is expired*

⬤    📑 Feedback

AMERICAN EXPRESS

Help   Log Out

Current Statement     Year-to-Date     2017 Year-End Summary

| | | | | | |
|---|---|---|---|---|---|
| > | NOV 26 2017 | BJ'S FUEL - MELBOURNE, FL | | Transportation | $21.44 |
| > | NOV 26 2017 | BJS WHOLESALE #0126 000000126 - MELBOURNE, FL | | Merchandise & Supplies | $7.62 |
| v | NOV 26 2017 | BJS WHOLESALE #0126 000000126 - MELBOURNE, FL | | Merchandise & Supplies | $909.49 |

Doing business as:
**BJ'S WHOLESALE CLUB**
View Details on Merchant Website
1155 PALM BAY RD
.
MELBOURNE
FL
32905
UNITED STATES
800.257.2582

Additional Information: 12643063324800257258 2
8002572582
WHOLESALE CLUBS
Reference: 32017331079718220 8
Category: Merchandise & Supplies - Wholesale Stores

Membership Rewards® Points
909

*Neiman Marcus*

Hello Johnny   Your Account   Change Country   SHOPPING BAG

| DESIGNERS | WOMEN'S CLOTHING | CUSP | SHOES | HANDBAGS | JEWELRY & ACCESSORIES | BEAUTY | MEN | KIDS | HOME | GIFTS | SALE |

Hello Johnny

## Order History

**MyNM Homepage**

Recent orders may take a few moments to appear, please check back to see your updated order history.
**Please Note:** It may take 1-3 days for international orders to appear in your order history.

**My Favorites** ♥

View Full History

**Favorite Items**
**Favorite Designers**
**Favorite Store**
**Favorite Sizes**

| | 2017-12-23 | WN10827796087 | RETURN AN ITEM ▶ | $87.75 |

D2Z76 FLORAL CAMO DAGGER SCARF

**My Account**

| | 2017-12-18 | WN10791575256 | RETURN AN ITEM ▶ | $145.00 |

**Account Overview**
**Order History**

Y3YT2 POWER GEMSTONE LAGUNA BRACEL

**Address Book**
**Payment Information**

| | 2017-12-18 | WN10791451864 | RETURN AN ITEM ▶ | $270.00 |

**NM Credit Card**

D30WM SHAHMARAN 90X90 SILK FOULARD

| | 2017-12-18 | WN10791208322 | RETURN AN ITEM ▶ | $202.50 |

N4USL SODALITE DISC ROUND BRACELET

| | 2017-12-18 | WN10791060498 | RETURN AN ITEM ▶ | $101.65 |

N4YBK SOCKS WINTER JAZ

| | 2017-12-18 | WN10790399165 | RETURN AN ITEM ▶ | $420.00 |

D32C5 GG MARMONT FLAP CARD CASE

**ARNOLD AIR CONDITIONING, INC.**
181 SEBASTIAN BLVD.
SEBASTIAN, FLORIDA 32958

(772) 589-1063
LIC. #CAC039738

# HVAC SERVICE ORDER INVOICE

DUE UPON RECEIPT

**96980**

CONCIERGE

THIS WORK IS TO BE
☐ C.O.D.   ☐ CHARGE   ☐ NO CHARGE

MAKE _Trane_
MODEL _2TEC3F60B_
SERIAL NUMBER _645155P2V_

MAKE
MODEL
SERIAL NUMBER

NAME _Tyler_
STREET _8675 130th ave_   DATE _6/10/13_
CITY _Fellsmere_   PROMISED
PHONE _954 261 1933_   CALL BEFORE ☐ A.M. ☐ P.M.
TECHNICIAN _Mark_   AUTHORIZED BY
WORK TO BE PREPARED _No cooling_
P.O. #

**ENVIRONMENTAL CHECK LIST**

| WORK PERFORMED | QTY. | TYPE/DISPOSITION |
|---|---|---|
| ☐ RECOVERED | | |
| ☐ RECYCLED | | |
| ☐ RECLAIMED | | |
| ☐ RETURNED | | |
| ☐ DISPOSAL | | |
| ☐ DISMANTLED | | |
| ☐ CHANGED OUT/REPLACED | | |
| **TOTAL $** | | |

**RECOMMENDATIONS**

leak search 139.00
160.00 to Repair
if possible.

| QTY | MATERIALS & SERVICES | UNIT PRICE | AMOUNT |
|---|---|---|---|
| | REFRIGERANT R-___   LBS. | | |
| 3 | R-22 | 60 00 | 180 00 |
| | | | |
| | FILTERS     X     X | | |
| | FILTERS     X     X | | |
| | BELTS | | |
| | **TOTAL MATERIALS** | | |

**DESCRIPTION OF WORK PERFORMED**

Found system low on Refgeant
Costoner just wanted to Charge
System, Unit out of warranty

He will shop around and give
us a call if He likes prices

Paid ck

| HRS | LABOR | RATE | AMOUNT |
|---|---|---|---|
| | Service Diagnes | | 89 00 |
| | **TOTAL LABOR** | | 89 00 |

Thank you
Mark

**TERMS**
ACCOUNTS SUBJECTED TO A FINANCE CHARGE FOR A LATE PAYMENT COMPUTED AT A RATE OF 1.5% PER MONTH (APR 18%) ON UNPAID BALANCE 30 DAYS OR MORE PAST DUE.

...ave authority to order the work outlined above which has been satisfactorily completed. I agree that 'er retains title to equipment/materials furnished until final payment is made. If payment is not made agreed, Seller can remove said equipment/materials at Seller's expense. Any damage resulting from ...id removal shall not be the responsibility of Seller.

CUSTOMER SIGNATURE _Johny Tyler_   DATE

**LIMITED WARRANTY:** All materials, parts and equipment are warranted by the manufacturers' or suppliers' written warranty only. All labor performed by the above named company is warranted for 30 days or as otherwise indicated in writing. The above named company makes no other warranties, express or implied, and its agents or technicians are not authorized to make any such warranties on behalf of above named company.

☐ REGULAR   ☐ WARRANTY
☐ SERVICE CONTRACT

Thank You

**TOTAL SUMMARY**

| | | |
|---|---|---|
| TOTAL MATERIALS | 180 | 00 |
| TOTAL LABOR | 89 | 00 |
| TAX | | |
| **TOTAL** | 269 | 00 |

**S & S AIR CONDITIONING & REFRIGERATION**
4322 SW Paley Rd.
PT. ST. LUCIE, FL 34953

# HVAC SERVICE ORDER INVOICE

**(772) 336-9846**

1656

BILL TO

| THIS WORK IS TO BE | | |
|---|---|---|
| ☐ C.O.D. | ☐ CHARGE | ☐ NO CHARGE |

| MAKE | MAKE |
|---|---|
| Trane | Trane |
| MODEL | MODEL |
| 2TWR 3060A4000AA | 2TEC3F |
| SERIAL NUMBER | SERIAL NUMBER |
| 6451KGX2F | 6451SSP2V |

| NAME |
|---|
| Tyler |
| STREET 8675 130th Ave |
| CITY Fellsmere |
| PHONE 954-261-1933 |
| TECHNICIAN |
| WORK TO BE PERFORMED |
| P.O. # |

DATE 4-29-10
PROMISED
CALL BEFORE ☐ A.M. ☐ P.M.
AUTHORIZED BY

**ENVIRONMENTAL CHECK LIST**

| WORK PERFORMED | QTY. | TYPE/DISPOSITION |
|---|---|---|
| ☐ RECOVERED | | |
| ☐ RECYCLED | | |
| ☐ RECLAIMED | | |
| ☐ RETURNED | | |
| ☐ DISPOSAL | | |
| ☐ DISMANTLED | **TOTAL $** | |
| ☐ CHANGED OUT/REPLACED | | |

RECOMMENDATIONS

| QTY. | MATERIALS & SERVICES | UNIT PRICE | AMOUNT | DESCRIPTION OF WORK PERFORMED |
|---|---|---|---|---|
| 7 | REFRIGERANT R-22   LBS. | 20 - | 140 - | A/C NOT COOLING FOUND CONTROL FUSE BAD REPLACED |
| | | | | ALSO SYSTEM LOW ON FREON CHWGD UP FOUND INDOOR COIL HAS SLOW LEAK |
| | FILTERS      X      X | | | |
| | FILTERS      X      X | | | |
| | BELTS | | | |
| | **TOTAL MATERIALS** | | | |

| HRS. | LABOR | RATE | AMOUNT |
|---|---|---|---|
| 1½ | | | 90 - |
| | **TOTAL LABOR** | | |

TERMS

e authority to order the work outlined above which has been satisfactorily completed. I agree that retains title to equipment/materials furnished until final payment is made. If payment is not made ed, Seller can remove said equipment/materials at Seller's expense. Any damage resulting from removal shall not be the responsibility of Seller.

**LIMITED WARRANTY:** All materials, parts and equipment are warranted by the manufacturers' or suppliers' written warranty only. All labor performed by the above named company is warranted for 30 days or as otherwise indicated in writing. The above named company makes no other warranties, express or implied, and its agents or technicians are not authorized to make any such warranties on behalf of above named company.

| | | TOTAL SUMMARY | |
|---|---|---|---|
| ☐ REGULAR | ☐ WARRANTY | TOTAL MATERIALS | |
| ☐ SERVICE CONTRACT | | TOTAL LABOR | |
| | | TAX | |
| *Thank You* | | TOTAL | 230 - |

CUSTOMER SIGNATURE                DATE

**S & S AIR CONDITIONING & REFRIGERATION**
4322 SW Paley Rd.
PT. ST. LUCIE. FL 34953

**(772) 336-9846**

# HVAC SERVICE ORDER INVOICE

## 1924

BILL TO

| THIS WORK IS TO BE | | | |
|---|---|---|---|
| | ☐ C.O.D. | ☐ CHARGE | ☐ NO CHARGE |
| MAKE | | MAKE | |
| MODEL | | MODEL | |
| SERIAL NUMBER | | SERIAL NUMBER | |

NAME  _Tyler_
STREET  _8675 NE 130th Ave_   DATE _10-28-11_
CITY  _Fellsmere_   PROMISED
PHONE  _954-261-1933_   CALL BEFORE ☐ A.M. ☐ P.M.
TECHNICIAN   AUTHORIZED BY
WORK TO BE PREPARED
P.O.#

### ENVIRONMENTAL CHECK LIST / RECOMMENDATIONS

| WORK PERFORMED | QTY. | TYPE/DISPOSITION | |
|---|---|---|---|
| ☐ RECOVERED | | | |
| ☐ RECYCLED | | | |
| ☐ RECLAIMED | | | |
| ☐ RETURNED | | | |
| ☐ DISPOSAL | | | |
| ☐ DISMANTLED ☐ CHANGED OUT/REPLACED | | TOTAL $ | |

### MATERIAL / DESCRIPTION OF WORK PERFORMED

| REFRIGERANT R- | LBS. | | | |
|---|---|---|---|---|
| _Nitrogen_ | | | | _Preventative Maintenance_ |
| | | | | _- Blew out Drain Line_ |
| | | | | _- Cked Motors_ |
| | | | | _- Cked Capacitors_ |
| | | | | _- Changed Filter._ |
| | | | | _- Cked Refrigerant Charge_ |
| | | | | _- Cked Contactor._ |

| FILTERS | X | X | |
| FILTERS | X | X | |
| BELTS | | | |
| **TOTAL MATERIALS** | | | |

| \ | | _75_ | |

| **TOTAL LABOR** | | | |

**LIMITED WARRANTY:** All materials, parts and equipment are warranted by the manufacturers' or suppliers' written warranty only. All labor performed by the above named company is warranted for 30 days or as otherwise indicated in writing. The above named company makes no other warranties, express or implied, and its agents or technicians are not authorized to make any such warranties on behalf of above named company.

Terms

I have authority to order the work outline above which has been satisfactorily completed. I agree that Seller retains title to equipment/materials furnished until final payment is made. If payment is not made as agreed, Seller can remove said equipment/materials at Seller's expense. Any damage resulting from said removal shall not be the responsibility of Seller.

| | TOTAL MATERIALS | |
| | TOTAL LABOR | |

☐ REGULAR   ☐ WARRANTY
☐ SERVICE CONTRACT

| TAX | |
| **TOTAL** | _75_ |

CUSTOMER SIGNATURE         DATE

_Thank You_



# MILLER ❄

**AIR CONDITIONING & HEATING**

P.O. Box 782059 • Sebastian, FL 32978
772-202-7109 • millercooling.com

## SERVICE INVOICE   1514
PLEASE PAY FROM THIS INVOICE

License # CAC1816822        DATE 9-4-13

| LOCATION | CUSTOMER Johnny Tyler | | HM PHONE # 954-261-1933 | WK PHONE # |
| ADDRESS | STREET 8675 130th Ave | CITY Fellsmere | STATE FL | ZIP 329 |
| MAILING | CUSTOMER | | HM PHONE # | WK PHONE # |
| ADDRESS | STREET | CITY | STATE | ZIP |

| CUSTOMER # | WORK ORDER # | BILL TO # | P.O. # | ☐ COMMERCIAL  ☒ RESIDENTIAL |
| SERVICE REQUESTED  Check Unit | | | START-UP DATE | |

| # | BRAND | MODEL | SERIAL NUMBER | UNIT LOC. | VOLTAGE | PHASE | AMPAGE |
|---|---|---|---|---|---|---|---|
| 1. | Trane | 2TEC3F60B1000AA / 64515SP2V | | I/S | 240 | 1 | 06 |
| 2. | | 2TWR3060A1000AA / 6451RGY2F | | | | | |
| 3. | | | | | | | |
| 4. | | | | | | | |

**TYPE**  ☐ S/C  ☒ H/P  ☐ W/A  ☐ A/A  ☒ SPLIT  ☐ PACKAGE     T'STAT SETTING C° ___ H° ___

### SERVICE PERFORMED
Checked unit found low on freon, performed leak
check, found leaking evaporator coil, looks to be
chinese drywall corrosion, recharged 3lbs R-22, left
cooling at this time

( 3lbs R-22  $150.00 )

|  | ACCEPT | DECLINE |
|---|---|---|

### TUNE UP PROCEDURES:

| | | |
|---|---|---|
| ☐ CLEANED EVAPORATOR COILS | ☐ CABINETS | ☐ CHECKED TEMPERATURE DIFFERENTIAL |
| ☐ CLEANED DRAIN LINE | ☐ HEAT EXCHANGER | ☐ AMP DRAW ON ALL MOTORS |
| ☐ CLEANED DRAIN PAN | ☐ CLEAN OR CHANGE FILTER | ☐ |
| ☐ CLEANED BLOWER ASSEMBLY | ☐ CONDENSER COILS | ☐ |

TECH NAME _____  ADDTL TECH NAME _____     WORK COMPLETE: ___ Y ___ N

DATE ___ START TIME ___ COMP TIME ___ DATE ___ START TIME ___ COMP TIME ___ DATE ___ START TIME ___ COMP TIME ___

| ENVIRONMENTAL CHECKLIST RECOVERED | | TERMS: PAYMENT DUE WHEN SERVICE RENDERED | DIAGNOSTIC FEE | 65 |
| RECL. MODEL # ___ | | AMEX ☐  VISA ☐  MC ☐  DIS ☐  CHECK ☐ | REPAIRS | 150. |
| LBS. ___ OZ. ___  R ___ | SERIAL # ___ | CARD NO. ___ | CASH ☐ | |
| | | EXP. DATE ___ CHECK NO. 1023 | TOTAL AMOUNT DUE | 150.00 |
| | | NAME ON CARD ___ | AMOUNT PAID | 150.00 |

We wish to provide the highest level of professionalism and quality service along with the best customer assurance policy in the industry. Our service repair warranty policy is:
1. All parts replaced by us will be warranted to be free of defects for a period of (1) one year. Many service companies provide 30, 60 or 90 day warranties. We feel that the parts we install have been carefully selected and meet or exceed manufacturer specifications. For this reason we feel comfortable offering this excellent warranty. The labor to install the warranted part (s) is discussed in item #2 below.
2. Our repair labor is warranted for a period of (1) one year. This is the labor to repair or replace the part we install in the initial repair, and not to correct other problems that may have arisen in the interim.
3. In the case of refrigerant (freon) leak repairs, our parts and labor warranty is as stated above with the following clarifications:
   a. You are strongly urged to let the technician show you the location of the leak prior to and after the repair. If this is not possible due to attic or other inconvenient location, be sure the technician accurately describes the leak location on this service ticket. Our warranty is for the specific leak repaired.
   b. Unfortunately, many times there can be more than one leak in a system. We may only have located one and cannot provide an effective repair only to be called out again later and find another one. Our warranty on the precious leak repair would not cover the new one. However, if within 90 days of the first leak location, we will provide at no charge diagnostic and leak search. You will then only pay for the repair of the leak, just as you would have done if we had located it on the first trip.

TERMS: NET DUE ON COMPLETION: I have authority to order the above described work. In the event the invoice is placed for collection, I agree to pay all cost of collection, including attorney's fees and interest as allowed under Florida Statute. ABOVE ORDERED WORK HAS BEEN COMPLETED AND ACKNOWLEDGE RECEIPT OF MY COPY.

X _____     DATE 9-4-13

**INVOICE**

**31314**

| | | |
|---|---|---|
| Call Back: ☐ | Invoice Type: | C.O.D. |
| Carry In: ☐ | Receive Code: | |
| | Dept. Code: | HOME |

**ROTH ELECTRONICS LLC**
2620 AURORA ROAD, STE A
MELBOURNE FL 32935

Phone: (321) 757-9980
Fax: (321) 757-9915
Email: grothtv@bellsouth.net

### Owner Of Unit
SAME

| Customer Information | Accessories |
|---|---|

TYLER, JOHNNY

8675 130TH AVE

FELLSMERE FL 32948

Home Phone: (954) 261-1933   Cell Phone: ( )   -

Work Phone: (772) 489-7092   Ext:

Email:

| Invoice Dates | | Unit Information | |
|---|---|---|---|
| Service Date: | 06/09/2014 | Product: | PLASMA |
| Schedule Date: | 06/13/2014 | Brand: | PANASONIC |
| Complete Date: | / / | Model: | TCP55VT50-2 |
| Return Date: | / / | Serial: | MJ23330268 |
| Paid Date: | / / | Chassis: | |
| | | D.O.P.: | 02/21/2013 |

| Comments | Other Information | |
|---|---|---|
| 6/9 PREV REPAIR 31050 | Technician: EM9 | Dealer: |
| | Location: | Store W.O. #: |
| | M/W: | Contract #: |
| | Billing Code: | Special Auth #: |
| | | Coverage:   Parts: WAR   Labor: COD |
| | Call Back: | Ticket #: |

### Service Requested

13 BLINKS

### Service Performed

INSTALLED MAIN BOARD AND CHECK TV OPERATION
(GOOD). INSTALLED SC YMAIN BOARD AND CHECKED
OUT SET ALSO SANDED GROUND PLANE BETWEEN
YMAIN AND POWER BOARD FOR A GOOD ELECTRICAL

### Labor Breakdown

CONNECTION (UNRELATE TO PROBLEMS OF TV. PREVENTIVE
MEASURE).

| Qty | Part Number | Reference | Description | Unit Price | Disc./Markup | Amount |
|---|---|---|---|---|---|---|
| 1 | TZRNP01RAUU | RECEIVED | SC BOARD | | | |
| 1 | TXN/A1QWUUS | RECEIVED | A PCB | | | |

PAIRED BLUE TOOTH AND SET UP MENU.

ALL COD REPAIRS CARRY A 90 DAYS PART AND 30 DAYS LABOR WARRANTY
UNLESS OTHERWISE SPECIFIED. REPLACEMENT TV LAMPS ARE NOT RETURNABLE.

Customer's Signature;   Date: 6/13/14   Technician's Signature;

**Payment:** Cash [ ]   Check [ ] # 1030   C.C. [ ] #_____
Auth. #_____

| | |
|---|---|
| Travel: | |
| Shipping: | |
| Diag./Trip: | |
| Mileage: | |
| Other: | |

| | |
|---|---|
| Total Parts: | Warranty |
| Total Labor: | 226.00 |
| Total Other: | |
| Sales Tax: | |
| Total: | 226.00 |
| Discounts: | |
| Payments: | |
| **Balance:** | **226.00** |

**INVOICE**

**31050**

| Call Back: | Invoice Type: | C.O.D. |
| Carry In:: | Receive Code: | |
| | Dept. Code: | HOME |

**ROTH ELECTRONICS LLC**
2620 AURORA ROAD, STE A
MELBOURNE FL 32935

Phone: (321) 757-9980
Fax: (321) 757-9915
Email: grothtv@bellsouth.net

**Owner Of Unit**

SAME

### Customer Information

TYLER, JOHNNY

8675 130TH AVE

FELLSMERE FL 32948

Home Phone: (954) 261-1933   Cell Phone: ( )   -

Work Phone: (772) 489-7092   Ext:

Email:

### Accessories

### Invoice Dates    Unit Information

| Service Date: 05/09/2014 | Product: PLASMA |
| Schedule Date 05/16/2014 | Brand: PANASONIC |
| Complete Date: / / | Model: TCP55VT50-2 |
| Return Date: / / | Serial: MJ23330268 |
| Paid Date: / / | Chassis: |
| | D.O.P: 02/21/2013 |

### Comments

5/9 HC PREV 21616 REPLACED SET

R-Y A-STAND

### Other Information

| Technician: EM8 | Dealer: |
| Location: | Store W.O. #: |
| M/W: | Contract #: |
| Billing Code: | Special Auth #: |
| | Coverage: Parts: COD Labor: COD |
| Call Back: | Ticket #: |

### Service Requested

13 BLINKS

### Service Performed

5+ STAND TYCH, F15V OK   NO 15Vs   NO 15Vc

SERVICE CALL   95.00
$40 PICK UP AND $40 DELIVERY   80.00

### Labor Breakdown    300.00   PARTS/LABOR

ESTIMATE
$165 DEPOSIT   # 475   STOP POINT
CF REPAIR
PLUS TAX

| Qty | Part Number | Reference | Description | Unit Price | Disc./Markup | Amount |
|-----|-------------|-----------|-------------|------------|--------------|--------|

CUSTOMER DECLINED REPAIR
$95.00 SERVICE CALL

ALL COD REPAIRS CARRY A 90 DAYS PART AND 30 DAYS LABOR WARRANTY
UNLESS OTHERWISE SPECIFIED, REPLACEMENT TV LAMPS ARE NOT RETURNABLE.

Customer's Signature:   Date: 5/16/14   Technician's Signature: Watin Noing

Payment: Cash [ ] Check [ ] # 1029   C.C. [ ] # _____
Auth. # _____

| Total Parts: | |
| Total Labor: | |
| Total Other: | |
| Travel: | Sales Tax: |
| Shipping: | Total: |
| Diag./Trip: | |
| Mileage: | Discounts: |
| Other: | Payments: |
| | Balance: |



# ARNOLD
## AIR CONDITIONING

181 Sebastian Blvd.
SEBASTIAN, FLORIDA 32958
**Indian River (772) 589-1063**
**Brevard (321) 952-5511**
LIC. #CAC1816097

# INVOICE

113105

DATE  6/21/16

NAME  Johnny Tyler
STREET  8675  130 TN Ave
CITY  Fellsmere, FL   ZIP CODE 32948
PHONE  (954) - 1933   ARRIVE 4:45   DEPART.
TECHNICIAN  Keith
REASON FOR CALL  Water Leak
E-MAIL

### RATE MY SERVICE AT ARNOLDAIR.COM

| COND MAKE | Trone | A/H MAKE | Trone |
|---|---|---|---|
| MODEL | 2TWR3060A1000AA | MODEL | 2TEC3F60B1000AA |
| SERIAL NUMBER | 6451KGx2F | SERIAL NUMBER | 64513S P2V |

**SYSTEM PERFORMANCE**

Filter Sizes _____  _____  _____

## CHECKLIST
____Check Thermostat Operation
____Check Thermostat Battery
____Inspect the evaporator coil
____Rinse and inspect the condenser coil
____Check and if needed adjust the blower components
____Inspect the blower bearings
____Check safety controls where applicable
____Check all equipment electrical connections
____Check starting components
____Vacuum and treat condensate drain
____Check and or replace filters: clean ✓  dirty ____
____Lubricate moving parts where applicable
____Check operating pressure from proper refrigerant
____Check voltage to equipment
____Check amp draw of motors and compressor
____Check amp draw of heater elements

Refrigerant Pressure Suction 70  Head 194   7.3 ST
Equipment Voltage 247

| Amp Draw | Rated | Actual |
|---|---|---|
| Capacitor | _____ | _____ |
| Compressor | _____ | _____ |
| Blower | _____ | _____ |
| Condenser | _____ | _____ |
| Strip Heat KW | _____ | _____ |
| Temps Outdoor | _____ | Indoor _____ |

I have authority to order the work outlined above which has been satisfactorily completed. I agree that Seller retains title to equipment/materials furnished until final payment is made. If payment is not made as agreed, Seller can remove said equipment/materials at Seller's expense. Any damage resulting from said removal shall not be the responsibility of the Seller. I ACKNOWLEDGE THE REPAIRS HAVE BEEN PERFORMED IN A SATISFACTORY MANNER. I HAVE READ AND ACCEPT THE CONDITIONS SET TH ON THE BACK OF THIS INVOICE.

CUSTOMER SIGNATURE   DATE 6/21/16

### WE RECOMMEND THE FOLLOWING REPAIRS AND IMPROVEMENTS
☐ PREVENTATIVE MAINTENANCE AGREEMENT
  ACCEPT _____  DECLINE _____
☒ Need Price to Replace out of warranty
☐ Evap Coil
☐ Estimate on Replacement Fridge
  Call to Schedule Give Both Prices Same Time

**DESCRIPTION OF WORK PERFORMED**

Completed Diagnostic
of Trone System. Found
Backed up Drain. Found Low on Freon.
Evap Coil Leaking. Vacuumed out Drains
And Pan. Restored. Recharged 1lb
R-22. Still Low on Freon. Ran out of Freon.
Customer wants Price to Replace Evap Coil
And System Replacement Cost.

Thank You,
Keith

| QTY. | REPAIR OR PART DESCRIPTION | PRICE |
|---|---|---|
| 1 | Diagnostic | 89.00 |
| 1 | Clean Drain | 49.00 |
| 1lb | R22 Per 1lb | 90.00 |

☐ NON RECOMMENDED REPAIR   SUB TOTAL
☐ DRAIN LINE IS A NON WARRANTIED COMPONENT   **15% OFF**
☐ PART(S) NEEDED   COUPON OR DISCOUNTS
WORK AUTHORIZED BY  Auth # 225127
PAID BY  ☐ CASH  ☐ CHECK #_____  ☒ CC   AMOUNT DUE  228.00

TECHNICIAN SIGNATURE:

# ARNOLD
## AIR CONDITIONING

ICIERGE

181 Sebastian Blvd
SEBASTIAN, FLORIDA 32958

**(772) 589-1063**
**LIC. #CAC1816097**

# SERVICE ORDER

## 103354

| THIS WORK IS TO BE | | |
|---|---|---|
| MAKE *Trane* | MAKE *Trane* | |
| MODEL 2TWR3060A1000AA | MODEL 2TEC3F60B | |
| SERIAL NUMBER 6451KGX2F | SERIAL NUMBER 6451SSP2V | 1000A4 |

**NAME** Tyler Johny
**STREET** 8675 130th Ave
**DATE** 09/09
**CITY** Fellsmere
**PHONE** 954 261 1931
**ARRIVE** 1500 **DEPART** 1615
**TECHNICIAN** Arteaga
**AUTHORIZED BY** Owner
**REASON FOR CALL** Poor Cooling
**E-MAIL**

### WE RECOMMEND THE FOLLOWING REPAIRS AND IMPROVEMENTS

☐ PREVENTATIVE MAINTENANCE AGREEMENT INCLUDES
2 PRECISION TUNE-UPS DISCOUNTS AND MORE DECLINE

X Evaporator Coil 1520

☐
☐

147

### SYSTEM PERFORMANCE

**CONDENSER**
- FAN MOTOR .8 AMPS
- CAPACITOR ACTUAL
- REFRIGERANT TYPE R-22 75 225
- COMPRESSOR 8.9 AMPS

**AIR HANDLER**
- INDOOR TEMP 81 °F TEMP SPLIT 19 °F
- SYSTEM OUTPUT 62 °F
- BLOWER 2.2 AMPS
- CAPACITOR NONE ACUTAL
- HEATER KW AMPS
- FILTER(S) X X
  X X

### DESCRIPTION OF WORK PERFORMED

Unit poor cooling and frozen
reversed cycle defrosted coil
cycled low on charge balance
by subcooling cycled cooling
very well, leak search unit
found leaking evaporator coil
need new coil coil was
black possible sulfer in ground

| QTY | REPAIR OR PART DESCRIPTION | PRICE |
|---|---|---|
| 1 | R-22 @ 75 x 4 | 300 |
| 1 | Service Call | 89 |

### TERMS DUE UPON COMPLETION

☐ NON-RECOMMENDED REPAIR

X CONDENSATION DRAINLINE NON-WARRANTEED COMPONENT

☐ DECLINE REFRIGERANT LEAK SEARCH

I have authority to order the work outlined above which has been satisfactorily completed. I agree that Seller retains title to equipment/materials furnished until final payment is made. If payment is not made as agreed, Seller can remove said equipment/materials at Seller's expense. Any damage resulting from i removal shall not be the responsibility of Seller. I ACKNOWLEDGE THE REPAIRS HAVE BEEN 'FORMED IN A SATISFACTORY MANNER. I HAVE READ AND ACCEPT THE CONDITIONS SET TH ON THE BACK OF THIS INVOICE.

**CUSTOMER SIGNATURE** **DATE**

### REFRIGERANT RECLAIM/USED

☐ COMPLETE
☐ RESCHEDULE
☐ PART(S) NEEDED
WARRANTY #

| | |
|---|---|
| SUB TOTAL | 389 00 |
| COUPON OR DISCOUNTS | |
| AMOUNT DUE | 389 00 |

**PAID BY** ☐ CASH X CHECK 1052 ☐ CC

**TECHNICIAN SIGNATURE**

# ARNOLD
## AIR CONDITIONING

181 Sebastian Blvd.
SEBASTIAN, FLORIDA 32958

(772) 589-1063
LIC. #CAC1816097

# SERVICE ORDER

## 103965

NCIERGE

**THIS WORK IS TO BE**

| MAKE | MAKE |
|------|------|
| Trane | Trane |
| MODEL 2TEC3F60B1000AA | MODEL 2TWR30GA1000AA |
| SERIAL NUMBER 645155PVZ | SERIAL NUMBER 6451KGX2F |

NAME Johnny Tyler
STREET 8675 130th Ave
CITY Fellsmere Fl 32948
954·261·1933
TECHNICIAN Arteaga
REASON FOR CALL Install evap coil
E-MAIL

DATE 10/24
PROMISED
ARRIVE 1130
DEPART.
AUTHORIZED BY

### WE RECOMMEND THE FOLLOWING REPAIRS AND IMPROVEMENTS

☐ PREVENTATIVE MAINTENANCE AGREEMENT INCLUDES
2 PRECISION TUNE-UPS DISCOUNTS AND MORE DECLINE

☒ Maintenance Agreement
☐ Coil only 1475
☐ Coil Maintenance Plan 10% off 1462

### SYSTEM PERFORMANCE

**CONDENSER**
- FAN MOTOR 1.0 AMPS
- CAPACITOR _____ ACTUAL _____
- REFRIGERANT TYPE R-22 _____ /
- COMPRESSOR _____ AMPS

**AIR HANDLER**
- INDOOR TEMP 81 °F TEMP SPLIT 21 °F
- SYSTEM OUTPUT 60 °F
- BLOWER 2.6 AMPS
- CAPACITOR 10 ACTUAL 10
- HEATER ____ KW ____ AMPS
- FILTER(S) ____ X ____ X ____
  ____ X ____ X ____

### DESCRIPTION OF WORK PERFORMED

Installed Warranty evaporator
Coil and TXV. Cycled System
Working ok.

| QTY | REPAIR OR PART DESCRIPTION | PRICE |
|-----|---------------------------|-------|
| 1 | Non Warranty Coil | 1475 |

### TERMS DUE UPON COMPLETION

☐ NON-RECOMMENDED REPAIR

☐ CONDENSATION DRAINLINE NON-WARRANTEED COMPONENT

☐ DECLINE REFRIGERANT LEAK SEARCH

I have authority to order the work outlined above which has been satisfactorily completed. I agree that Seller retains title to equipment/materials furnished until final payment is made. If payment is not made as agreed, Seller can remove said equipment/materials at Seller's expense. Any damage resulting from said removal shall not be the responsibility of Seller. I ACKNOWLEDGE THE REPAIRS HAVE BEEN PERFORMED IN A SATISFACTORY MANNER. I HAVE READ AND ACCEPT THE CONDITIONS SET FORTH ON THE BACK OF THIS INVOICE.

CUSTOMER SIGNATURE _____ DATE

### REFRIGERANT RECLAIM/USED

☒ COMPLETE

☐ RESCHEDULE

☐ PART(S) NEEDED

WARRANTY #

| | |
|---|---|
| SUB TOTAL | |
| COUPON OR DISCOUNTS | |
| AMOUNT DUE | Pre Paid |

PAID BY
☐ CASH ☐ CHECK # _____ ☐ CC

TECHNICIAN SIGNATURE _____

**CUSTOM AIR SYSTEMS INC**
**12198 COUNTY ROAD 512**
**FELLSMERE FL 32948**
**(772) 571-1080**

===============================================================

```
ACCT#: 8675130THA        TICKET #:    129204      DATE OF ORDER: 09/13/2013
    TYLER                            ADCD      AGENT:CE MAP: 32948
    8675 130TH AVE                            PROMISED: FRI  09/13/2013
    FELLSMERE, FL  32948                      TIME " UNSCHED    :00
                                              PURCHASE DT:
HOME#: 954-261-1933  WORK#:            EXT:        P.O. #

MAKE           PRODUCT         MODEL         MFG #        SERIAL


        TECH:                         LOCATION:
TROUBLE REPORTED:
 20 MIN CALL TO MEET, PER CUSTOMER NEEDS
X13 BLOWER MOTOR
                                    SERVICE CALL        C.O.D.
```

===============================================================

| QTY | MAKE | PART NO. | DESCRIPTION | PRICE | EXTENSION |
|-----|------|----------|-------------|-------|-----------|
|     |      |          |             |       |           |

===============================================================

```
SERVICE PERFORMED:                      TOTAL MATERIALS    540 00

Found Bad X13 1hp Blower Motor, Replace  SERVICE CALL

Declined Surge protector, Set speed on   LABOR    $ 175 00

High Per Mr Tyler                                 $ 37.50

                                          TAX     752.59
ST DT SVC:                    2ND DT SVC:
- TIME IN:    A  OUT:    A TOTAL:    . HRS
- TIME IN:    A OUT:    A TOTAL:    . HRS  TOTAL
                                        ================
IGNATURE
Signature above constitutes acceptance of service performed as being
 isfactory and that the equipment has been left in good condition.
```

Paid Cash

**CUSTOM AIR SYSTEMS INC**
**12198 COUNTY ROAD 512**
**FELLSMERE FL 32948**
**(772) 571-1080**

===============================================================

ACCT#: 8675130THA          TICKET #:      131023        DATE OF ORDER: 07/18/201
     TYLER                                    ADCD      AGENT:MS MAP: 32948
     8675 130TH AVE                                     PROMISED: FRI  07/18/201
     FELLSMERE. FL  32948                               TIME " UNSCHED    :00
                                                        PURCHASE DT:
HOME#: 954-261-1933  WORK#:              EXT:           P.O. #

MAKE           PRODUCT        MODEL           MFG #        SERIAL


          TECH: CURTIS                    LOCATION: 00
TROUBLE REPORTED:
NO A/C.

                                    SERVICE CALL        C.O.D.
===============================================================
QTY    MAKE  PART NO.          DESCRIPTION           PRICE      EXTENSIO
===============================================================

2      LBS R-22                                       48        96

1      CPT 80-440/70   MFD CAPAcitor                            50


===============================================================
SERVICE PERFORMED:                      TOTAL MATERIALS    146

Found & Replaced Bad Capacitor          SERVICE CALL       20
- Topped off Refrigerant - Leak         LABOR              35
in Evap. Coil - Estimate to Replace Coil $1550
Cleared Drain Line;

1ST DT SVC:                    2ND DT SVC:
1- TIME IN:    A  OUT:    A TOTAL:   .  HRS      TAX        10.27
2- TIME IN:    A  OUT:    A TOTAL:   .  HRS
                                                TOTAL      261.22
SIGNATURE _____
*Signature above constitutes acceptance of service performed as being
 'isfactory and that the equipment has been left in good condition.

PAID Cash

# HEATING & AIR CONDITIONING

RESIDENTIAL • COMMERCIAL • INDUSTRIAL
3054 North U.S. #1
FORT PIERCE, FLORIDA 34946
(772) 461-8711

| | |
|---|---|
| DATE | |
| DATE ORDERED | |
| DATE SCHEDULED | |
| MAKE | |
| MODEL | |
| SERIAL NUMBER | |
| PHONE | |
| WK. PHONE | |

NAME: John Tyler
ADDRESS: 1375 1375 th Ave
CITY: Fellsmere  STATE: FL  ZIP: 32948
JOB LOCATION:

## CHECK LIST

**AIR FILTERS**
○ CLEANED ○ REPLACED

**COMPRESSOR**
○ SUCTION _____ PSI
○ HEAD _____ PSI
○ ELECTRICAL CONNECTIONS
○ CONTACTS TIGHT & CLEAN
○ CONDITION

**CONDENSATION AREAS**
○ INSPECT & CLEAN DRAIN
○ CONDENSER COIL
○ CLEAN COIL & CHECK FIN COND.

**ELECTRICAL COMP'TS.**
○ CLEANED ○ CONTACTORS
○ RELAYS ○ CONTACTORS
○ OVERLOAD ○ PRESS SWITCH
○ START CAPACITOR ○ RUN CAPACITOR

**FAN AND MOTOR**
○ VOLTS _____ AMPS
○ ELECTRICAL CONNECTIONS
○ CONTACTS TIGHT & CLEAN
○ FAN PULLEYS (ADJUST BELT)
○ CHECK MOTOR

**HEATING ASSEMBLY**
○ BURNER & HEAT EXCHANGER
○ FUEL SUPPLY & PRESSURE

○ PILOT ASSEMBLY
○ FLAME ADJUSTMENT
○ PRIMARY RELAY & FLUE
○ FAN & LIMIT SWITCH OPER.
○ BLOWER ASSEMBLY
○ RV VALVE
○ STRIP HEAT
○ DEFROST CYCLE

**REFRIGERANT**
○ LEAK ○ CHARGE

**THERMOSTAT**
○ O.K. ○ REPLACE

| QUANTITY | ITEM OR PART DESCRIPTION | PRICE | AMOUNT | DESCRIPTION OF SERVICE WORK | AMOUNT |
|---|---|---|---|---|---|
| | | | | | 99.38 |
| 2½ | 3 ton Mfk A/C to 3¼ ton | 329.40 | | (1) Qs 30x22x1 Start Pt Filters | |
| | 30 UN 7x9 A/C Tyler WHL P/W Filters At | | | (1) Qs 30x22x1 Start Pt Filters At | |
| | Littletime | | | | |

| | | |
|---|---|---|
| **TOTAL PARTS** | | |

| | DESCRIPTION | AMOUNT |
|---|---|---|
| O T H E R | | |
| C H A R G E S | | |
| F R O M | | |
| B E L O W | | |

| | |
|---|---|
| **TOTAL OTHER CHARGES $** | |

**RECOMMENDED REPAIRS**

### WARRANTY
☐ CONTRACT
☐ SERVICE CONTRACT
☐ NORMAL
☐ RES. ☐ COMM.

**LABOR GUARANTY**
The labor charge as recorded here relative to the equipment being serviced as noted, is guaranteed for a period of 30 days.

**PARTS WARRANTY**
All parts as recorded are warranted as per manufacturer specifications.
We do not, of course, guaranty other parts than those we install. If repairs later become necessary due to other defective parts, they will be charged separately.

**MILEAGE**
ENDING _____  QTY. _____
START - _____ x _____ /HR. = _____
MILES _____ x _____ /MI. = _____
TOTAL _____  TRIP CHARGE $ _____

### INSPECTION CHECKLIST

| REFRIGERANT | | SYSTEM |
|---|---|---|
| TYPE | | |
| REFRIG. | | QTY. |
| RECOVERED? | YES NO | QTY. |
| RECYCLED? | YES NO | QTY. |
| RECLAIMED? | YES NO | QTY. |
| RETURNED TO THIS SYSTEM? | YES NO | QTY. |

**TRAVEL TIME**

| | |
|---|---|
| TIME ARRIVED | |
| TIME DEPARTED | |
| TRAVEL TIME | |

| NON USEABLE | YES NO |
|---|---|
| QTY. | |
| DISPOSAL | |

| LABOR CHARGES | HRS. @ _____ /HR. = _____ |
|---|---|
| TECHNICIAN SIGNATURE | |

I HEREBY AUTHORIZE THE ABOVE WORK TO BE DONE AS SO ORDERED AND OUTLINED ABOVE. IT IS AGREED THAT THE SELLER WILL RETAIN TITLE TO ANY EQUIPMENT OR MATERIAL FURNISHED UNTIL COMPLETE PAYMENT HAS BEEN MADE. IF SETTLEMENT IS NOT MADE AS AGREED, THE SELLER HAS THE RIGHT TO REMOVE EQUIPMENT AND MATERIAL WITHOUT BEING HELD RESPONSIBLE FOR ANY DAMAGES RESULTING FROM THE REMOVAL OF EQUIPMENT.

_____ CERTIFICATE NO. _____

AUTHORIZED SIGNATURE

ABOVE ORDERED WORK HAS BEEN COMPLETED AND I ACKNOWLEDGE RECEIPT OF MY COPY.

X _____  DATE _____

**EQUIPMENT**

| | |
|---|---|
| CHANGED OUT (OR REPLACED)? | YES NO |
| DISMANTLED? | YES NO |
| REFRIGERANT DISPOSAL | |

| OWNER'S INITIALS | |
|---|---|
| ACCEPTED | DECLINED |

| | AMOUNT |
|---|---|
| TOTAL OTHER CHARGES | |
| SUB-TOTAL | |
| INSP CHARGES | |
| TRIP CHARGE | |
| TAX | |
| TOTAL DUE | |

# BLOSSER  ELECTRIC

PO Box 7305
PORT SAINT LUCIE, FL 34985
(772) 337-0055

## Work Order

| Date | Invoice # |
|------|-----------|
| 1/26/2003 | |

**Bill To**

John Tyler

**Job Address**

8675 Northwest
Federal

| Quantity | Description | Price | Extension |
|----------|-------------|-------|-----------|
| | — TROUBLESHOOT GARAGE GFI RECPT, KIT. GFI RECPT, REAR PATIO GFI RECPT, FOUND ALL (3) GFI RECPTS TO BE "NO GOOD", REMOVE/REPLACE GFI RECPS ALL WORK | | |
| | — TROUBLESHOOT GFI RECPT NEXT TO A/C, FOUND GFI RECP "NO GOOD" SO I REPLACE GFI WITH A SINGLE RECPT TO PLUG IN WATER SOFTENER ONLY | | |
| | — REMOVE & REPLACE KIT GFI RECPT THAT WAS WORKING, AT HOME OWNERS REQUEST. | | |
| | — MAKE SURE ALL CONNECTION IN PANEL PLUGGOOD, ALL WIRES THAT WHERE ARE EXTERMLY CORRODIO POSSIBLE CHINESE DRYWALL | | |
| 4 | GFI RECPTS | 148.00 | |
| 1 | SINGLE RECPT | 3.00 | |
| | ERIC 9:30-10:30 | 212.00 | |
| | | TOTAL 63.00 | |

X _(signature)_ Johnny Tyler

By signing this work order, you agree that all listed materials and labor listed above have been installed to your satisfaction and you acknowledge that this invoice is due immediately upon receipt. Thank You For Your Business

# Property Screening Report

### 8675 130th Ave. Fellsmere, FL 32948

Screening Date:
11-6-17

Prepared for:
Johnny Tyler

Report Number:
FL09-0620

CDS Inspector:
Julie Sommerville



CHINESE DRYWALL CDS SCREENING LLC

Inspections and documentation from leading experts



Inspections and documentation from leading experts

November 10, 2017

Johnny Tyler
8675 130th Avenue
Fellsmere, FL 32948

RE: Chinese Drywall Screening Report Number FL09-0620

Mr. Tyler,

At your request, an inspection of the above referenced property (8675 130th Ave) was performed on November 6, 2017.  Chinese Drywall Screening, LLC is submitting the enclosed report which is a professional opinion based on a visual inspection of the accessible materials and x-ray fluorescence testing of the drywall throughout the property.

Based on our visual observations of blackened electrical wires coupled with known affects from reactive drywall, CDS is of the opinion that reactive drywall is present in the above referenced property.  The distinctive odor associated with corrosive drywall was noticed upon entry and throughout the inspection.  Drywall markings discovered that are part of Multi-District Litigation case # 2047 (MDL 2047) are:

| No. | Drywall Mfg | Markings on Drywall | Location in home |
|-----|-------------|---------------------|------------------|
| 9 | Knauf-Tianjin (KPT) | KNAUF-TIANJIN China ASTM C-36 | Interior and garage ceilings and through-out the property |

Another type of drywall that is domestic and not known to be corrosive is Pro-Rock.  This type was also observed on the interior and garage ceilings.

Based on the **2,917 sf** size of the home with **9'-10' average ceiling height,** we estimate that there is **12,000 sf of drywall** in the home.

We trust that the thoroughness and quality of this report meets or exceeds your expectations.  Please feel free to contact us should you have any questions regarding our report or if we may be of further assistance to you.

Sincerely,

Howard Ehrsam, P.E., LEED AP
CGC 1509717
on behalf of Chinese Drywall Screening, LLC

Enclosures: Report with Photo Exhibit



# Overview

## Overview of Subject Property



**Client**:  Johnny Tyler

**Address:**  8675 130th Ave.
    Fellsmere, FL 32948

**Size:** Total 2,917 sf  (including garage)

**Exterior wall types:**  CBS - Concrete Block exterior

**Completion date:**  2006



# Summary Narrative

## Observations and Conclusions

### Observations

- Blackening or "black deposits" defined to be copper sulfide by Unified Engineering File No. 4050 associated with reactive drywall was observed on the A/C Coils and external refrigerator line.
- Blackening/soot residue was observed on the exposed wiring of inspected receptacles and switches throughout the property.
- Blackening was observed on the water heater located in the garage.
- Blackening was observed on the control wires of the garage door opener.
- Blackening was observed on the copper plumbing water lines under the bathroom sink.
- Fixtures in the bathrooms had corrosive spotting.
- Walls and ceilings were tested utilizing a Thermo Fisher x-ray fluorescence (XRF) analyzer throughout the property.
  - There is corrosive drywall throughout the property (including the ceilings and garage) with XRF readings similar to Knauf-Tianjin (KPT) with strontium levels around 2,900 ppm. **MDL 2047 Drywall Index No. 9 – KPT** labels were observed in the interior and garage ceilings.
- Pro-Rock was also observed on the interior and garage ceilings.
- There was an odor associated with corrosive drywall throughout the property.

### Conclusions

Based on our visual observations, testing, experience and current state of knowledge in the industry, Chinese Drywall Screening, LLC is of the professional opinion that reactive Chinese drywall **is** present throughout the subject property, specifically **MDL 2047 Index No. 9 – KPT.** There was no indication that other types of Chinese drywall was present.

Inspection and testing was done for general information only. Additional testing involving cutting and scraping of walls would be needed to verify ceilings and garage along with actual extents of the various types of drywall discovered.

Reactive Chinese drywall manufactured by KPT is prevalent throughout the property including the garage with very clear and obvious indications. The visual indications are well known throughout the industry and are easily identified. Blackened pipe on the copper A/C coils and the ground wires of the electrical outlets and switches are examples of the corrosion.



Inspections and documentation from leading experts

It is the intent of CDS to inform and empower the Client with enough knowledge to make the best, well informed decision that is in the best interests of the Client. Towards that end, we recommend that you contact an attorney to discuss your legal rights, including potential claims against your builder, along with the installer, supplier and manufacturer of the drywall. Additional claims against parties of the real estate transaction may also be explored.

What you can do today: Three primary items to consider for immediate action are: 1) Mortgage forbearance if applicable, 2) Property tax reduction and 3) Legal representation regarding claims against the manufacture.

Time is of the essence and time frames for filing claims may end. It is critical to understand the implications with these and we recommend seeking professional consultation for details.

For owners of properties with reactive drywall, it important to understand preservation of evidence and/or transferring of claim rights when remediating or selling as well as the importance of 3rd party verification of the remediation. More information is available on our website or toll free at 855- CDW-Help (855-239-4357).



**Exhibit A**

# Certification

## Certification of the Engineer

The undersigned do hereby certify that, to the best of our knowledge and belief:

- The statements of fact contained within this report are true and correct.

- As applicable, the statements of opinions have certain limitations. It is not feasible and is impossible to confirm 100% of corrosive drywall was either removed or is not present. There are several conditions we have seen that could prevent discovery without a more exhaustive investigation.  They include, but are not limited to:
    - Low Strontium, corrosive drywall that is domestic and non-homogeneous.
    - Limited amounts of corrosive drywall in inaccessible areas or installed in a way that would seclude it from available receptacles and switches.
    - Limited amounts of high strontium drywall covered with joint compound or heavy textures hindering detection by x-ray fluorescence.
    - Variable amounts of low off-gassing drywall or drywall with corrosive recycled gypsum.

- We have no present or prospective interest in the property that is the subject of this report and we have no personal interest with respect to the parties involved. We have no bias with respect to the property that is the subject of this report or to the parties involved with this agreement.

- The information in this report is based on the existing conditions of the structures materials, documents, and information (written or verbal) supplied by the contractor, the owner or their representatives, and our observations during the inspection.

- Our compensation or engagement in this assignment is not contingent upon the development or reporting of a predetermined conclusion that favors the cause of the client, the remediator, the attainment of a stipulated result, or the occurrence of a subsequent event directly related to the intended use of this report.

- Any use of this report by any other parties without our expressed or written consent is prohibited.  Should another individual or entity rely on this analysis or its conclusions without our consent, that shall indemnify Chinese Drywall Screening, LLC, its employees, and service providers from all damages, losses, or expenses that may occur as a result of its use.

- Our report is based on information made available to us at the time of inspection.  Should additional information become available, we reserve the right to determine the impact, if any, of the new information on our opinions and conclusions and to revise our opinions and conclusions if necessary and warranted by the discovery of the additional information.

- The provided services and documentation have been completed to the best of our knowledge and based on current known facts regarding reactive drywall.

*Howard Ehrsam*

Howard Ehrsam, P.E., LEED AP
CGC 1509717
on behalf of Chinese Drywall Screening, LLC

Chinese Drywall Screening, LLC
PH: 772-224-8660
www.chinesedrywallscreening.com



# Scope of Screening

## Scope of Screening Services Performed

Chinese Drywall Screening, LLC (CDS) conducted a visual investigation of the various elements within the property for the presence of reactive drywall.

Investigative services typically include, but are not limited to:
- Verification of a sulfur attack on various components of the property
- Visual inspection of the drywall markings in respective areas of the sulfur attack
- Documentation of findings
- Samples of reactive drywall prepared for future laboratory analysis (if requested)

CDS provided the above investigation in multiple areas throughout the home. However, we cannot guarantee all types of reactive drywall within the subject property were identified.

The corroded elements along with any discovered drywall markings were documented during the inspection.  Corroded elements include, but are not limited to, electrical wiring, mechanical and plumbing lines and equipment and other items subject to the affects of reactive drywall.  Observations were recorded and photographed.   For each unique variety of drywall discovered, at least one set of markings were clearly photographed.  Refer to the narratives and photographs for details.

The inspection required removal of various sections of drywall to be utilized as visual access points.  These access points were sealed upon completion.

The following engineering report is utilized as a reference in regards to the sulfur attack on copper: Unified Engineering Report File 4050 dated March 17, 2009. Unified Engineering, Inc; 3056 Weber Drive, Aurora, IL 60502.

Photo Exhibit
8675 130th Ave.
Fellsmere, FL 32948



Photo Exhibit
8675 130th Ave.
Fellsmere, FL 32948



Photo Exhibit
8675 130th Ave.
Fellsmere, FL 32948



Photo Exhibit
8675 130th Ave.
Fellsmere, FL 32948



# Photo Exhibit
## 8675 130th Ave.
## Fellsmere, FL 32948



# Photo Exhibit
## 8675 130th Ave.
## Fellsmere, FL 32948



Photo Exhibit
8675 130th Ave.
Fellsmere, FL 32948



Photo Exhibit
8675 130th Ave.
Fellsmere, FL 32948



# Photo Exhibit
## 8675 130th Ave.
## Fellsmere, FL 32948



Return to:  
Name: Michelle McClure  
Alliance Title of the East Coast  
Address: 705-E Sebastian Blvd.  
Sebastian, Florida 32958

This Instrument Prepared:  
Michelle McClure  
Alliance Title of the East Coast  
705-E Sebastian Blvd.  
Sebastian, Florida 32958  
as a necessary incident to the fulfillment of conditions  
contained in a title insurance commitment issued by it.

1634359  
THIS DOCUMENT HAS BEEN RECORDED  
IN THE PUBLIC RECORDS OF  
INDIAN RIVER COUNTY FL  
BK: 1856 PG:1058, Page1 of 1  
04/06/2006 at 04:06 PM,  
D DOCTAX PD $665.00  
JEFFREY K BARTON, CLERK OF  
COURT

Property Appraisers Parcel I.D. (Folio) Number(s):  
31-37-00-00011-2038-00003/0  
Grantee(s) S.S.#(s):  
File No:**5030006**

## WARRANTY DEED

**This Warranty Deed** Made the 21st day of March, 2005, by **Terry Whaley and David Rosendahl and Thomas A. Hunter Jr as Tennants in common,** hereinafter called the grantor, whose post office address is: **4271 NW 53 Court, Coconut Creek, Florida 33073**

to **Johnny C. Tyler**, whose post office address is: **3323 NW 69th Avenue, Margate, Florida 33063**, hereinafter called the grantee,

WITNESSETH: That said grantor, for and in consideration of the sum of $10.00 Dollars and other valuable considerations, receipt whereof is hereby acknowledged, hereby grants, bargains, sells, aliens, remises, releases, conveys and confirms unto the grantee, all that certain land situate in **Indian River County, Florida, viz:**

Lots 3 and 4, Tract 2038, HOMEWOOD ADDITION, according to map or plat thereof as recorded in Plat Book 2, Page 15, of the Public Records of St. Lucie County, Florida; said land now lying and being in Indian River County, Florida.

The property is not the homestead of the Grantor(s).  
**TOGETHER** with all the tenements, hereditaments and appurtenances thereto belonging or in anywise appertaining.  
**To Have and to Hold,** the same in fee simple forever.  
**And** the grantor hereby covenants with said grantee that the grantor is lawfully seized of said land in fee simple; that the grantor has good right and lawful authority to sell and convey said land; that the grantor hereby fully warrants the title to said land and will defend the same against the lawful claims of all persons whomsoever; and that said land is free of all encumbrances, except taxes accruing subsequent to 2040, reservations, restrictions and easements of record, if any.  
*(The terms "grantor" and "grantee" herein shall be construed to include all genders and singular or plural as the context indicates.)*  
   **In Witness Whereof,** Grantor has hereunto set grantor's hand and seal the day and year first above written.

Signed, sealed and delivered in our presence:

Witness Signature: _Veronica Simeon_  
Printed Name: _Veronica Simeon_

Terry Whaley

Witness Signature: _L. Eddy Evans_  
Printed Name: _L. Eddy Evans_

David Rosendahl

Witness Signature: _Terry Hahn_  
Printed Name: _TERRY HAHN_

Thomas A. Hunter Jr

Witness Signature: _Terri Ally_  
Printed Name: _Terri Ally_

STATE OF _Florida_  
COUNTY OF _Broward_

The foregoing instrument was acknowledged before me this _23_ day of _March_, _2005_, by Terry Whaley and David Rosendahl and Thomas A. Hunter Jr as Tennants in common, who is/are personally known to me or who has/have produced driver license(s) as identification.

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION** | **MDL NO. 2047**<br><br>**SECTION: L** |
| **THIS DOCUMENT RELATES TO:**<br><br>***Elizabeth Bennett, et al. v. Knauf Gips, KG, et al.***<br>**2:14-cv-02722-EEF-JCW** | **JUDGE ELDON FALLON**<br><br>**MAG. JUDGE WILKINSON** |

## PLAINTIFF FACT SHEET

Name of Plaintiff: _Johnny C. Tyler_

Affected Property Address: _8675 130th Avenue, Fellsmere, FL  32948_

## I.  Purchase, Sale and/or Transfer of Ownership of Property

1.  On what date did you purchase the Property?

**Response:**  Plaintiff objects to this question as duplicative.  In addition, Plaintiff objects to this question on the ground that it seeks information in the possession of, known to, or otherwise equally available to the defendants.  Plaintiff has previously provided this information to defendants in the Bennett Supplemental Plaintiff Profile Form ("SPPF").  Plaintiff directs the defendants to Section II of the SPPF. Without waiving said objection, Plaintiff adopts the SPPF response again here and intends to provide the exact same date as provided in the verified SPPF as follows: Plaintiff purchased the property:

(Month/Day/Year) _03_ / _21_ / _2005_

2.  When you took ownership of the Property, what was the name of the seller?

Terry Whaley & David Rosendahl & Thomas A. Hunter, Jr.



Exhibit
Exhibit No.: 3
Name:
Date:
ESQUIRE

1

3. Name and address of the realtor?

N/A

4. Name and address of the closing agent?

Susan D. Meitner, 5481 NE St. James Drive, Port St. Lucie, FL  34983

5. What was the price of the home when you purchased it?  $  324,000.00

6. Was it an "as-is" sale?

**Response**:  Plaintiff objects to the use of "as-is" in this question as vague, ambiguous, uncertain, and unintelligible; consequently, Plaintiff cannot determine the exact nature of the information being sought.  This term is not defined and is not commonly understood with one accepted meaning; multiple inpretations are possible.  Without waiving said objection, plaintiff responds as follows:

☐ Yes    ☑ No    ☐ I'm not sure.

7. If you sold or transferred ownership of the Property, what was the name of the purchaser?

N/A

8. If you sold or transferred ownership of the Property, what was the name and address of the realtor?

N/A

9. If you sold or transferred ownership of the Property, what was the name and address of closing agent?

N/A

10. If you sold or transferred ownership of the Property, what was the price paid for home?

$ N/A

## II.  Appraisal of the Home

11. Date of each appraisal:

a. _____/_____/20_____
b. _____/_____/20_____

2

**PFS REQUEST FOR DOCUMENT PRODUCTION #1**: Please produce copies of any and all appraisals performed on the house both prior and subsequent to the occurrence of any of the events alleged in the petition.

> **Response**: All documents in Plaintiff's possession responsive to this request are attached as "Exhibit 1."

## III.   Discovery of Drywall

12.   Date that the property was constructed and/or renovated that installed the allegedly defective Chinese Drywall.

**Response**: Plaintiff objects to this question as duplicative. In addition, Plaintiff objects to this question on the ground that it seeks information in the possession of, known to, or otherwise equally available to the defendants. Plaintiff has previously provided this information to defendants in the Bennett Supplemental Plaintiff Profile Form ("SPPF"). Plaintiff directs the defendants to Section II of the SPPF. Without waiving said objection, Plaintiff adopts the SPPF response again here and intends to provide the exact same date as provided in the verified SPPF as follows: The property construction and/or renovation that installed the allegedly defective drywall occurred on or about the following date (to the best of my knowledge):

> (Month/Day/Year)          ____/____/20_06__

**PFS REQUEST FOR DOCUMENT PRODUCTION #2**: Please produce all documents, reports, photographs, videotapes, samples and any other materials which evidence and/or identify that there is defective Chinese Drywall in the Property.

> **Response**: All documents in Plaintiff's possession responsive to this request are attached as "Exhibit 2."

## IV.   Manufacturer/Seller of Drywall

13.   Who sold or distributed the drywall in the house?

**Response**: Plaintiff objects to this question as duplicative. In addition, Plaintiff objects to this question on the ground that it seeks information in the possession of, known to, or otherwise equally available to the defendants. Plaintiff has previously provided this information to defendants in the Plaintiff Profile Form ("PPF"). Plaintiff directs the defendants to Section X of the PPF. Without waiving said objection, Plaintiff adopts the PPF response again here and intends to provide the exact same information as provided in the verified PPF as follows:   The drywall Supplier's name (to the best of my knowledge) is:

Liberty Home Builders

3

**PFS REQUEST FOR DOCUMENT PRODUCTION #3:** Please produce all documents, reports, photographs, videotapes, samples and any other materials which evidence and/or identify the manufacturer of drywall installed in the house. The submission must be in the form of PTO 1(B).

> **Response:** All documents in Plaintiff's possession responsive to this request are attached as "Exhibit 3."

## V. Damages

**14.** Identify any harm, financial or otherwise, that you contend was caused by defective Chinese Drywall installed in the Property.

**Response:** Plaintiff directs the defendants to review the complaint filed with the court in this case for a full listing of the claims being asserted and the damages being sought. The defective Knauf Chinese Drywall emitted gasses that cause damage to Plaintiff's home and the personal property contained therein. It also significantly diminished the use and enjoyment of the home; therefore, Plaintiff seeks the following: all compensatory, statutory, and/or punitive damages; all pre-judgment and post-judgment interest as allowed by law; any appropriate injunctive relief; an award of attorney's fees as allowed by law; an award of taxable costs; and, any and all such further relief as a jury or judge presiding over my trial deems just and proper. Other damages include, but are not limited to:

Contract for sale of home withdrawn once Chinese drywall was found. House now has no

monetary value as a result of the findings. I remain in the home without ability to remediate.

**15.** If you contend that you entered personal bankruptcy as a result of damage to your property from defective Chinese Drywall, please describe the facts and circumstances that relate to your claim.

N/A

**16.** If you contend that you entered short sale and/or foreclosure as a result of damage to your property from defective Chinese Drywall, please describe the facts and circumstances that relate to your claim.

N/A

4

**PFS REQUEST FOR DOCUMENT PRODUCTION #4**: If you claim loss of income, please produce any copies of any and all documentation upon which you intend to rely upon to prove this claim.

>  **Response**: All documents in Plaintiff's possession responsive to this request are attached as "Exhibit 4."

17.  If you claim diminution of the property as a result of Chinese Drywall, state with particularity each fact which supports your claim.

N/A _____

_____

_____

_____

18.  Identify the appliances, fixtures and/or other electronics, if any, that you claim were damaged by Chinese Drywall in the property.

>  **Response**: An list of damaged items is attached as "Exhibit 14."

19.  If you vacated the property because of the alleged presence of Chinese Drywall, please provide:  Address of each location you stayed thereafter.

>  a. N/A _____
>  b. _____
>  c. _____

20.  If you vacated the property because of the alleged presence of Chinese Drywall, please provide:  Time periods in which you resided at each property.

>  a. N/A /_____/20_____    to    _____/_____/20_____
>  b. _____/_____/20_____    to    _____/_____/20_____
>  c. _____/_____/20_____    to    _____/_____/20_____

21.  If you vacated the property because of the alleged presence of Chinese Drywall, please provide:  Moving costs and/or alternative living expenses you claim to have incurred as a result of the alleged presence of Chinese Drywall.

>  a. $ N/A _____
>  b. $ _____
>  c. $ _____

**PFS REQUEST FOR DOCUMENT PRODUCTION #5**:  If you vacated the property because of the alleged presence of Chinese Drywall, please provide any documentation to support your claims.

> **Response:**  All documents in Plaintiff's possession responsive to this request are attached as "Exhibit 5."

22.  Are you claiming damages for personal injury?  ☐ Yes (explain below) ☑ No

_____

_____

23.  If you suffered personal injuries as a result of the alleged presence of Chinese Drywall: Date you allege that you first sustained personal injuries as a result of your exposure to allegedly defective Chinese Drywall.

>     **Response:**   ☑ N/A

24.  If you suffered personal injuries as a result of the alleged presence of Chinese Drywall:  What specific injuries have you suffered?

>     **Response:**   ☑ N/A

25.  If you suffered personal injuries as a result of the alleged presence of Chinese Drywall:  Name and address of any doctor, physician, surgeon, chiropractor, or osteopath who examined and/or treated your alleged injuries.

>     **Response:**   ☑ N/A

## VI.  Potential Witnesses/Evidence

26.  Has any written or recorded statement been taken from any witness or person who has knowledge of relevant facts, including the nature, character, and extent of the injuries referred to in the petition, and for each statement identified?

☐ Yes   ☑ No   ☐ I don't know

27.  If the answer to 26 is "yes," please state:  The name, address, and telephone number of the person from whom the statement was taken.

N/A_____

_____

6

28. If the answer to 26 is "yes," please state: The name, address, and telephone number of the person who took the statement.

N/A

29. If the answer to 26 is "yes," please state: The name address, and telephone number of the party having custody of such statement.

N/A

30. If the answer to 26 is "yes," please state: The date the statement was taken.

N/A

## VII.  Already Remediated Properties

31. If you already remediated the Property, who conducted the remediation?

   **Response:**   ☑ N/A

32. When did the remediation commencement date occur?

   **Response:**   ☑ N/A

33. When did the remediation end date occur?

   **Response:**   ☑ N/A

34. What was the scope of the remediation and the scope of the work carried out?

   **Response:**   ☑ N/A

35. What costs or expenses, if any, did you incur related to the remediation of the Property?

   **Response:**   ☑ N/A

36. Were any samples from the remediation retained?

Response:   ☑ N/A

37. If the response to 36 is "yes," were the samples compliant with PTO 1(B)?

Response:   ☑ N/A

38. Were any photographs taken of the allegedly defective Chinese Drywall?

Response:   ☑ N/A

39. If the response to 38 is "yes," were the photographs compliant with PTO 1(B)?

Response:   ☑ N/A

**PFS REQUEST FOR DOCUMENT PRODUCTION #6:**  Please produce the following documentation concerning the remediation of the Property:  Any evidence of KPT Chinese Drywall and Non-KPT Chinese Drywall, if any, in the Property prior to remediation.

> **Response:** All documents in Plaintiff's possession responsive to this request are attached as "Exhibit 6."

**PFS REQUEST FOR DOCUMENT PRODUCTION #7:**  Please produce the following documentation concerning the remediation of the Property:  Interior photographs of the Affected Property immediately prior to the commencement of, and following completion of, the remediation, including photographs and/or video images of the flooring and major components such as cabinets, moldings, doors, intercom systems, and fixtures for every room and bathroom and, to the extent possible, security systems, appliances and audio such as surround sound.

** The photographs do not need to be pictures taken specifically for the litigation. For example, family photographs or photographs taken for purposes of refinancing a mortgage are acceptable in the absence of other photographs.

> **Response:** All documents in Plaintiff's possession responsive to this request are attached as "Exhibit 7."

**PFS REQUEST FOR DOCUMENT PRODUCTION #8:**  Please produce the following documentation concerning the remediation of the Property:  The remediation contract and an itemization from the contractor who performed the remediation work of the materials used during the remediation, including, but not limited to, manufacturer, model number, and quantity.

> **Response**:  All documents in Plaintiff's possession responsive to this request are attached as "Exhibit 8."

**PFS REQUEST FOR DOCUMENT PRODUCTION #9**:  Please produce the following documentation concerning the remediation of the Property:  An itemized invoice from the contractor who performed the remediation work ("Itemized Invoice") showing the scope of work carried out.

> **Response**:  All documents in Plaintiff's possession responsive to this request are attached as "Exhibit 9."

**PFS REQUEST FOR DOCUMENT PRODUCTION #10**:  Please produce the following documentation concerning the remediation of the Property:  Proof of payment of the Itemized Invoice and any other expenses, such as cancelled checks, credit card statements, etc.

> **Response**:  All documents in Plaintiff's possession responsive to this request are attached as "Exhibit 10."

**PFS REQUEST FOR DOCUMENT PRODUCTION #11**:  Please produce the following documentation concerning the remediation of the Property:  A floor plan of the Affected Property with dimensions.

> **Response**:  All documents in Plaintiff's possession responsive to this request are attached as "Exhibit 11."

**PFS REQUEST FOR DOCUMENT PRODUCTION #12**:  Please produce the following documentation concerning the remediation of the Property:  An Environmental Certificate.

> **Response**:  All documents in Plaintiff's possession responsive to this request are attached as "Exhibit 12."

**PFS REQUEST FOR DOCUMENT PRODUCTION #13**:  Please produce the following documentation concerning the remediation of the Property:  An Owner Disclosure Affidavit in the form attached as Exhibit 1, which includes a certification that the materials provided comprise all of the available documentation regarding the following:  The drywall that was in the Affected Property prior to the commencement of the remediation; and, the scope, extent, and cost of the remediation.

> **Response**:  All documents in Plaintiff's possession responsive to this request are attached as "Exhibit 13."

9

## **VERIFICATION**

I hereby verify that the responses to the Plaintiff Fact Sheet are correct to the best of my knowledge.

Signature of Plaintiff

01/04/2019

Date

Johnny C. Tyler _Johnny C. Tyler_
Printed Name

# Exhibit 1

# Exhibit 2

# Exhibit 3

# Property Screening Report

### 8675 130th Ave. Fellsmere, FL 32948

Screening Date:

11-6-17

Prepared for:

Johnny Tyler

Report Number:

FL09-0620

CDS Inspector:

Julie Sommerville



CHINESE DRYWALL CDS SCREENING LLC

Inspections and documentation from leading experts



Inspections and documentation from leading experts

November 10, 2017

Johnny Tyler
8675 130th Avenue
Fellsmere, FL 32948

RE: Chinese Drywall Screening Report Number FL09-0620

Mr. Tyler,

At your request, an inspection of the above referenced property (8675 130th Ave) was performed on November 6, 2017. Chinese Drywall Screening, LLC is submitting the enclosed report which is a professional opinion based on a visual inspection of the accessible materials and x-ray fluorescence testing of the drywall throughout the property.

Based on our visual observations of blackened electrical wires coupled with known affects from reactive drywall, CDS is of the opinion that reactive drywall is present in the above referenced property. The distinctive odor associated with corrosive drywall was noticed upon entry and throughout the inspection. Drywall markings discovered that are part of Multi-District Litigation case # 2047 (MDL 2047) are:

| No. | Drywall Mfg | Markings on Drywall | Location in home |
|-----|-------------|---------------------|------------------|
| 9 | Knauf-Tianjin (KPT) | KNAUF-TIANJIN China ASTM C-36 | Interior and garage ceilings and through-out the property |

Another type of drywall that is domestic and not known to be corrosive is Pro-Rock. This type was also observed on the interior and garage ceilings.

Based on the **2,917 sf** size of the home with **9'-10' average ceiling height,** we estimate that there is **12,000 sf of drywall** in the home.

We trust that the thoroughness and quality of this report meets or exceeds your expectations. Please feel free to contact us should you have any questions regarding our report or if we may be of further assistance to you.

Sincerely,

Howard Ehrsam, P.E., LEED AP
CGC 1509717
on behalf of Chinese Drywall Screening, LLC

Enclosures: Report with Photo Exhibit



# Overview

## Overview of Subject Property



**Client**: Johnny Tyler

**Address:** 8675 130th Ave.
　　　　　Fellsmere, FL 32948

**Size:** Total 2,917 sf  (including garage)

**Exterior wall types:**  CBS - Concrete Block exterior

**Completion date:**  2006



# Summary Narrative

## Observations and Conclusions

## Observations

- Blackening or "black deposits" defined to be copper sulfide by Unified Engineering File No. 4050 associated with reactive drywall was observed on the A/C Coils and external refrigerator line.
- Blackening/soot residue was observed on the exposed wiring of inspected receptacles and switches throughout the property.
- Blackening was observed on the water heater located in the garage.
- Blackening was observed on the control wires of the garage door opener.
- Blackening was observed on the copper plumbing water lines under the bathroom sink.
- Fixtures in the bathrooms had corrosive spotting.
- Walls and ceilings were tested utilizing a Thermo Fisher x-ray fluorescence (XRF) analyzer throughout the property.
  - There is corrosive drywall throughout the property (including the ceilings and garage) with XRF readings similar to Knauf-Tianjin (KPT) with strontium levels around 2,900 ppm. **MDL 2047 Drywall Index No. 9 – KPT** labels were observed in the interior and garage ceilings.
- Pro-Rock was also observed on the interior and garage ceilings.
- There was an odor associated with corrosive drywall throughout the property.

## Conclusions

Based on our visual observations, testing, experience and current state of knowledge in the industry, Chinese Drywall Screening, LLC is of the professional opinion that reactive Chinese drywall **is** present throughout the subject property, specifically **MDL 2047 Index No. 9 – KPT.** There was no indication that other types of Chinese drywall was present.

Inspection and testing was done for general information only. Additional testing involving cutting and scraping of walls would be needed to verify ceilings and garage along with actual extents of the various types of drywall discovered.

Reactive Chinese drywall manufactured by KPT is prevalent throughout the property including the garage with very clear and obvious indications. The visual indications are well known throughout the industry and are easily identified. Blackened pipe on the copper A/C coils and the ground wires of the electrical outlets and switches are examples of the corrosion.



Inspections and documentation from leading experts

It is the intent of CDS to inform and empower the Client with enough knowledge to make the best, well informed decision that is in the best interests of the Client. Towards that end, we recommend that you contact an attorney to discuss your legal rights, including potential claims against your builder, along with the installer, supplier and manufacturer of the drywall. Additional claims against parties of the real estate transaction may also be explored.

What you can do today:  Three primary items to consider for immediate action are:  1) Mortgage forbearance if applicable, 2) Property tax reduction and 3) Legal representation regarding claims against the manufacture.

Time is of the essence and time frames for filing claims may end.  It is critical to understand the implications with these and we recommend seeking professional consultation for details.

For owners of properties with reactive drywall, it important to understand preservation of evidence and/or transferring of claim rights when remediating or selling as well as the importance of 3rd party verification of the remediation.  More information is available on our website or toll free at 855- CDW-Help (855-239-4357).



# Exhibit A

# Certification

## Certification of the Engineer

The undersigned do hereby certify that, to the best of our knowledge and belief:

- The statements of fact contained within this report are true and correct.

- As applicable, the statements of opinions have certain limitations. It is not feasible and is impossible to confirm 100% of corrosive drywall was either removed or is not present. There are several conditions we have seen that could prevent discovery without a more exhaustive investigation. They include, but are not limited to:
    - Low Strontium, corrosive drywall that is domestic and non-homogeneous.
    - Limited amounts of corrosive drywall in inaccessible areas or installed in a way that would seclude it from available receptacles and switches.
    - Limited amounts of high strontium drywall covered with joint compound or heavy textures hindering detection by x-ray fluorescence.
    - Variable amounts of low off-gassing drywall or drywall with corrosive recycled gypsum.

- We have no present or prospective interest in the property that is the subject of this report and we have no personal interest with respect to the parties involved. We have no bias with respect to the property that is the subject of this report or to the parties involved with this agreement.

- The information in this report is based on the existing conditions of the structures materials, documents, and information (written or verbal) supplied by the contractor, the owner or their representatives, and our observations during the inspection.

- Our compensation or engagement in this assignment is not contingent upon the development or reporting of a predetermined conclusion that favors the cause of the client, the remediator, the attainment of a stipulated result, or the occurrence of a subsequent event directly related to the intended use of this report.

- Any use of this report by any other parties without our expressed or written consent is prohibited. Should another individual or entity rely on this analysis or its conclusions without our consent, that shall indemnify Chinese Drywall Screening, LLC, its employees, and service providers from all damages, losses, or expenses that may occur as a result of its use.

- Our report is based on information made available to us at the time of inspection. Should additional information become available, we reserve the right to determine the impact, if any, of the new information on our opinions and conclusions and to revise our opinions and conclusions if necessary and warranted by the discovery of the additional information.

- The provided services and documentation have been completed to the best of our knowledge and based on current known facts regarding reactive drywall.

Howard Ehrsam, P.E., LEED AP
CGC 1509717
on behalf of Chinese Drywall Screening, LLC



# Scope of Screening

## Scope of Screening Services Performed

Chinese Drywall Screening, LLC (CDS) conducted a visual investigation of the various elements within the property for the presence of reactive drywall.

Investigative services typically include, but are not limited to:
- Verification of a sulfur attack on various components of the property
- Visual inspection of the drywall markings in respective areas of the sulfur attack
- Documentation of findings
- Samples of reactive drywall prepared for future laboratory analysis (if requested)

CDS provided the above investigation in multiple areas throughout the home. However, we cannot guarantee all types of reactive drywall within the subject property were identified.

The corroded elements along with any discovered drywall markings were documented during the inspection. Corroded elements include, but are not limited to, electrical wiring, mechanical and plumbing lines and equipment and other items subject to the affects of reactive drywall. Observations were recorded and photographed. For each unique variety of drywall discovered, at least one set of markings were clearly photographed. Refer to the narratives and photographs for details.

The inspection required removal of various sections of drywall to be utilized as visual access points. These access points were sealed upon completion.

The following engineering report is utilized as a reference in regards to the sulfur attack on copper: Unified Engineering Report File 4050 dated March 17, 2009. Unified Engineering, Inc; 3056 Weber Drive, Aurora, IL 60502.

## Photo Exhibit
## 8675 130th Ave.
## Fellsmere, FL 32948



Photo Exhibit
8675 130th Ave.
Fellsmere, FL 32948



## Photo Exhibit
## 8675 130th Ave.
## Fellsmere, FL 32948



Photo Exhibit
8675 130th Ave.
Fellsmere, FL 32948



Photo Exhibit
8675 130th Ave.
Fellsmere, FL 32948



Photo Exhibit
8675 130th Ave.
Fellsmere, FL 32948



Photo Exhibit
8675 130th Ave.
Fellsmere, FL 32948



# Photo Exhibit
## 8675 130th Ave.
## Fellsmere, FL 32948



Photo Exhibit
8675 130th Ave.
Fellsmere, FL 32948



# Exhibit 4

# Exhibit 5

# Exhibit 6

# Exhibit 7

# Exhibit 8

# Exhibit 9

# Exhibit 10

# Exhibit 11

# Exhibit 12

# Exhibit 13

# Exhibit 14

# Plaintiff Fact Sheet

Plaintiff:  Johnny C. Tyler

Property Address: 8675 130th  Ave, Fellsmere, Fl 32948

## Question #18 Itemization (Personal Property Damage)

| # | Description of Damaged Item | Value ($) |
|---|---|---|
| 1 | Trane Air Conditioner had coil problems and had to be replaced several times. Finally, after numerous repairs a nice device was purchased. | $8,671 |
| 2 | Whirlpool Refrigerator copper wire issues. Several service calls to repair company. Finally purchased a new refrigerator. | $2730 |
| 3 | 4 Dell/HP desktop computers failed. CPU, Hard drive, etc. failure (I had many computers cause of my work as a computer analyst. | $6200 |
| 4 | 3 Laptop computer various hardware failures | $4200 |
| 5 | Samsung Pro Tablet power tended to fair. No specific cause was determined. | $1200 |
| 6 | Panasonic Plasma TV. Panasonic replace the Tv at home service. The new replacement TV lasted for less than 6 months. Many services call. The TV is at my house and does not work. | $3200 $!200 (my cost for replacement) |
| 7 | Samsung TV. Replaced the tv several times due to hardware failure. | $6500 |
| 8 | Light fixtures. Replaced many fixtures and some continue not to work | $4980 |
| 9 |  |  |
| 10 |  |  |
| 11 |  |  |
| 12 |  |  |
| 13 |  |  |
| 14 |  |  |

Total: $38,881.00