Plaintiff Profile Form - Residential Properties

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| IN RE: CHINESE MANUFACTURED DRYWALL | MDL NO. 2047 |
| PRODUCTS LIABILITY LITIGATION | SECTION: L |
| THIS DOCUMENT RELATES TO: ALL CASES | JUDGE FALLON |
| | MAG. JUDGE WILKINSON |

**For Internal Use Only**

File Number

Date Received

This Plaintiff Profile Form must be completed and signed by every person making a claim in this litigation using one form per affected address. In completing this Profile Form, you are under oath and must provide information that is true and correct to the best of your knowledge. If you cannot recall all of the details requested, please provide as much information as you can and expressly indicate "unknown" in the space provided when not known. You must supplement your responses if you learn they are incomplete or incorrect in any material respect. You may and should consult with your attorney if you have any questions regarding completion of this form. If you are completing the form for someone who has died or who cannot complete the Profile Form, please answer as completely as you can for that person.

The questions and requests for production contained within this Profile Form are non-objectionable and shall be answered without objection. By answering this Profile Form, you are not waiving the attorney work product and/or attorney client privileges. Similarly, by disclosing the identity of consultants, such consultants may remain non-testifying experts and are subject to all protections afforded by law.

To the extent that the form does not provide enough space to complete your responses, you may attach as many sheets of paper as necessary. All photographs produced in response to this form shall be in color and attached to or printed on 8 1/2" x 11" white paper.

### Section I. Property Information

| | |
|---|---|
| Name Property Owner | Carl & Ellen Moore |
| Address of Affected Property | 5427 Kedgewick Lane |
| | North Port, FL 34288 |
| Is this Property:* (Residential) Commercial Governmental | |
| Name of Person Completing this Form | Carl & Ellen Moore |
| Is above your primary residence? | Yes (No) |
| Mailing Address (if different) | 3391 16 Mile Road |
| | Cedar Springs, MI 49319 |
| Phone: | ( 616 ) 893 - 6126 |

your response is commercial or governmental you should not fill out the ning questions, you will receive a follow up form at a later date.

e one: (Owner-Occupant) Owner Only Renter-Occupant

| | |
|---|---|
| Represented By: | James V. Doyle, Jr. |
| Address: | DOYLE LAW FIRM, PC |
| | 2100 Southbridge Pkwy, Suite 650 |
| | Birmingham, AL 35209 |
| Phone: | ( 205 ) 533 - 9500 |
| Case No. /Docket Info: | Bennett v. Knauf |

### Section II. Insurance Information

Homeowner/ Renter Insurer:

ASI Assurance Corp.

Policy #: ESA 189807

Agent: ACG SOUTH INSURANCE AGENCY LLC,

Address: 1 ASI WAY
ST PETERSBURG FL 33702

Phone: (727) 374 - 2502

+ Attach Copy of Insurance Declaration Page

### Section III. Claimant Information

| Name of Claimant | Dates Occupied | | Gender | Date of Birth | Are you claiming personal injuries?* | Identify Claimant Status as an Owner-Occupant, an Owner Only, or an Occupant or Renter Only |
|---|---|---|---|---|---|---|
| | Move-in | Leave | | | Circle One | |
| Carl G. Moore | 05/01/09 | / / | (M)/ F | / / | Yes (No) | Owner - Occupant |
| Ellen L. Moore | 05/01/09 | / / | M /(F) | / / | Yes (No) | Owner - Occupant |
| | / / | / / | M / F | / / | Yes No | |
| | / / | / / | M / F | / / | Yes No | |
| | / / | / / | M / F | / / | Yes No | |
| | / / | / / | M / F | / / | Yes No | |
| | / / | / / | M / F | / / | Yes No | |
| | / / | / / | M / F | / / | Yes No | |
| | / / | / / | M / F | / / | Yes No | |

* Personal injuries include claims for mental anguish and medical monitoring.



EXHIBIT

### Section IV. Inspection Information

**1.0. Have you, or has anyone on your behalf, conducted an inspection into whether Chinese-manufactured drywall is present in your home?** (Yes) No

1.1. If "Yes" to Question 1.0 Section IV. Who conducted the inspection?  Chinese Drywall Screening, LLC

1.2. When did the inspection take place?  01/24/17

_.0. Has a determination been made that Chinese-manufactured drywall is present in your home? (Yes) No

2.1. If "Yes" to Question 2.0. Section IV. Who made this determination?  Chinese Drywall Screening, LLC

2.2. When was this determination made?  01/24/17

### Section V. Drywall Information

| Drywall Manufacturer | Markings on Drywall | Location in Home |
|---|---|---|
| Knauf Plasterboard Tianjin | Knauf Tianjin China ASTM C36 | Walls |
| | | |
| | | |
| | | |

### Section VI. Home Information

| | | | | Yes | No |
|---|---|---|---|---|---|
| Approx. Sq. Ft. of House: | 2,800 | | | | |
| Estimated Sq. Ft. of Drywall | ------------- | Occupied | | X | |
| Height of Interior Walls | 9' | Year-round | | X | |
| Number of Bedrooms: | 3 | Summer | | X | |
| Number of Bathrooms: | 2 | Winter | | X | |

**Plumbing System**

| | | Blackening or Corrosion? | | |
|---|---|---|---|---|
| | | Yes | No | N/A |
| PVC/ CPVC/ Plastic Piping | | | X | |
| Copper Piping | | X | | |
| Copper Fixtures | | X | | |
| Other Fixtures | | X | | |
| ~e repairs made to the plumbing system? | | | X | |
| Dates: | | | | |

**Electrical System**

| | | Blackening or Corrosion? | | |
|---|---|---|---|---|
| | | Yes | No | N/A |
| Receptacles | | X | | |
| Switches | | X | | |
| Main Panel | | X | | |
| 2nd Panel | | | | X |
| Exposed Copper Wires | | X | | |
| Were repairs made to the electrical system? | | | X | |
| Dates: | | | | |

**+ Attach Copy of Floor Plan on 8 1/2" X 11" paper**

### Section VII. Construction/Renovation Information

**Date Range for New Home Construction: (Month/Day/Year)**

| | | | | |
|---|---|---|---|---|
| Start Date: | /  / | Completion Date | /  / |
| Move In Date: | /  / | Date Acquired Home | /  / |

**Date Range for Renovations: (Month/Year)**

| | | | | |
|---|---|---|---|---|
| Start Date: | /  / | Completion Date | /  / |
| Move In Date: | /  / | | |

| Renovation(s) | Yes | No | N/A |
|---|---|---|---|
| First Floor: 1/2 Wall of drywall replaced | | | X |
| First Floor: Full Wall of drywall replaced | | | X |
| Second Floor: Any drywall replaced | | | X |

### Section VIII. Homebuilder/ General Contractor/ Developer Information

Homebuilder/ General Contractor/ Developer's Name:

Address:

Phone: (    )    -

**+ Attach Copy of Construction/Renovation Contract**

**+ Attach Copy of New Home Warranty Declaration**

### Section IX. Drywall Installer

Drywall Installer's Name:

Address:

Phone: (    )    -

### Section X. Drywall Supplier

Drywall Supplier's Name:  Banner Building Supply Company

Address:  Miami, FL

Phone: (    )    -

Plaintiff Profile Form - Residential Properties

**Section XI. Verification of Plaintiff Profile Form**

I declare under penalty of perjury under the laws of the United States of America and pursuant to 28 U.S.C. § 1746 that all information provided in this Plaintiff Profile Form is true and correct to the best of my knowledge, and that I have supplied all of the documents requested in this declaration to the extent that such documents n my possession, custody or control.

| | | | |
|---|---|---|---|
| _Carl S Mron_ | 02/27/2017 | _____ | _____ |
| Claimant's Signature | Date Signed | Claimant's Signature | Date Signed |
| _Ellen A. Moore_ | 02/27/2017 | _____ | _____ |
| Claimant's Signature | Date Signed | Claimant's Signature | Date Signed |
| _____ | _____ | _____ | _____ |
| Claimant's Signature | Date Signed | Claimant's Signature | Date Signed |



ASI Assurance Corp
1 ASI Way
St. Petersburg, FL 33702
For General Inquiries:   (727) 374-2502



## Dwelling Declarations Page

| | |
|---|---|
| **Total Policy Premium:** | $932 |
| **Policy Number:** | FSA18980 |

**Named Insured:**
CARL  MOORE AND ELLEN  MOORE
3391 16 MILE RD NE
CEDAR SPRINGS, MI 49319

**Agent:**
ACG South Insurance Agency LLC
P. O. Box 31087
Tampa, FL 33631-3087

**Agent Code:**           411697
For Policy Service, Call:       (800)891-4222
E-Mail Address:    correspondence@aaasouth.com

**Effective Date of This Transaction:**       5/1/2016

**Activity of This Transaction:**       Renewal

**Residence Premises:**
5427 KEDGEWICK LN
NORTH PORT, FL 34288

**Policy Period:**      From:  05/01/2016  To:  05/01/2017
(At 12:01 AM Standard Time at the residence premises)

**Plan Type:**     DP3

---

Coverage at the residence premises is provided only where a limit of liability is shown or a premium is stated.

### Coverages and Limits of Liability

| | Limit | Premium |
|---|---|---|
| A. Dwelling Coverage | $277,000 | 2981.21 |
| B. Increase/Decrease Other Structures | $2,770 | -15.81 |
| C. Contents Coverage | $50,000 | 688.00 |
| D. Loss of Use | $27,700 | Included |
| L. Personal Liability - Each Occurrence / M. Medical Payments to Others - Each Person | $300,000/5000 | 80.00 |

### OTHER COVERAGES AND ENDORSEMENTS:
(Printed on the following page)

**Deductibles:**

| | |
|---|---|
| **HURRICANE:** | 2% - $5540 |
| ALL OTHER COVERED PERILS: | $1000 |
| SINKHOLE LOSSES: | 10% - $27,700 |

**Mortgagee:**

**1st Mortgagee:**                    **2nd Mortgagee:**

Supplemental Plaintiff Profile Form – Residential and Commercial Properties

> **For Internal Use Only**
> File No. _____
>
> **Date Received:**
> _____

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

In re: Chinese Manufactured Drywall
Products Liability Litigation

This Document Relates to:

MDL NO. 2047
SECTION: L
JUDGE FALLON
MAG. JUDGE WILKINSON

*Elizabeth Bennett v. Gebrueder Knauf Verwaltungsgesellschaft, KG, et al.,* Civil Action No.: 14-cv-2722-EEF-JCW (E.D.La)

This Supplemental Plaintiff Profile Form must be completed and signed by every person making a claim in this litigation against the manufacturer of Chinese Drywall, Knauf Plasterboard Tianjin , using one form per Property. In completing this Supplemental Profile Form, you are under oath and must provide all information within your knowledge, custody and control that is true and correct to the best of your knowledge. If you have already submitted a Plaintiff Profile Form, this Supplemental Plaintiff Profile Form will be in addition to and supplement the prior Profile Form submitted. You have an affirmative obligation to search for all documents, electronically stored information, and tangible things responsive to this questionnaire. You may and should consult with your attorney if you have any questions regarding completion of this form. If you are completing the form for someone who has died or who cannot complete the Profile Form, please answer as completely as you can for that person.

The responses contained within this Supplemental Plaintiff Profile Form are made without waiving any rights or objections as to relevance or privilege and are made without any abrogation of legal defenses, including those of the Collateral Source Doctrine.

The questions and requests for production contained within this Supplemental Profile Form are non-objectionable and shall be answered without objection. By answering this Supplemental Profile Form, you are not waiving the attorney work product and/or attorney client privileges. Similarly, by disclosing the identity of consultants, such consultants may remain non-testifying experts if provided for by applicable law, and are subject to all protections afforded by law. Failure to fully complete this Supplemental Profile Form and provide the appropriate documents may result in a motion filed against you pursuant to Rule 37 of the Federal Rules of Civil Procedure, which could include a request for dismissal of the action in whole or in part.

All photographs produced in response to this form shall be in color.

### Section I. Claimant and Property Information

Name of Claimant:

| Carl | G | Moore | |
|------|------|-----------|--------|
| First Name | M.I. | Last Name | Suffix |

| Ellen | L | Moore | |
|------|------|-----------|--------|
| Co-Claimant First Name (if applicable) | M.I. | Last Name | Suffix |

_____
Business/Entity Name (if applicable)


EXHIBIT
PENGAD 800-631-6989

Supplemental Plaintiff Profile Form – Residential and Commercial Properties

Address of Property in this Lawsuit ("Property"):

5427 Kedgewick Lane
Address 1                                                Address 2
North Port                                    AL         34288
City                                          State      Zip Code

Is the Property residential or commercial? Residential

Name of Person
Completing this Form:    Carl              G       Moore
                        First Name        M.I.    Last Name                    Suffix

Mailing Address (if different):

3391 16 Mile Road, NE
Address 1                                                Address 2
Cedar Springs                                 MI         49319
City                                          State·     Zip Code

Phone Number of Person Completing This Form: ( 616 ) 893 - 6126

***Section II. Purchase, Sale and/or Transfer of Ownership of a Property and Assignments of Claims***

When did you acquire the Property? Month/Day/Year: 5 / 1 / 2009

When was Chinese drywall installed in the Property (to the best of your knowledge)?
Month/Day/Year: _____ / _____ / 2007

When you acquired the Property, were you aware that it contained Chinese drywall?  ☐ Yes  ☑ No

If you were not aware, at the time you acquired the Property, that the Property contained Chinese drywall, when did you first become aware that the Property contained Chinese drywall?
Month/Year: 1 / 2017

If you believe Chinese drywall was installed after you acquired the Property, when and how did you first become aware that the Property contained Chinese drywall?

If you acquired the Property knowing that the Property contained Chinese drywall, have you expressly acquired an assignment or other personal right of action that allows you to pursue a claim for damages?
☐ Yes  ☐ No

If Yes, attach a copy of the document assigning any right or claim to you.

If Yes, did you acquire the assignment with the purchase of the Property or at some later time?

Have you sold or transferred ownership of the Property since you acquired it?  ☐ Yes  ☑ No

If No, go to Section III.

If Yes, on what date did you sell or transfer ownership of the Property?

Month/Day/Year: _____ / _____ / _____

2

Supplemental Plaintiff Profile Form – Residential and Commercial Properties

If you have sold or transferred ownership of the Property, did you at the time of sale assign to anyone any right of action for damages relating to the Property?  ☐ Yes   ☐ No

If you have sold or transferred ownership of the Property, did you expressly retain a personal right of action to allow you to pursue damages?  ☐ Yes   ☐ No

If you answered Yes to either of the two prior questions, attach a copy of any documents relating to your sale or transfer of ownership of the Property and to the assignment of a right of action for damages.

### Section III.  Product Identification and Evidence Retention

Did you provide evidence of Chinese drywall in the Property to the Plaintiffs' Steering Committee to be placed in the PSC FileCloud Database?  ☑ Yes   ☐ No

If Yes, do you have any additional evidence of Chinese drywall in the Property that you have not provided to the Plaintiffs' Steering Committee?  ☐ Yes   ☑ No

If No, go to Section IV.  If Yes, **attach** all additional evidence of Chinese drywall in the Property that you have not already provided to the Plaintiffs' Steering Committee.

### Section IV. Bankruptcy, Foreclosure or Short Sale

Do you contend that you entered personal bankruptcy as a result of damage to your Property from defective Chinese Drywall?  ☐ Yes   ☑ No

If Yes, answer the following questions:

If you entered personal bankruptcy, identify the case number and docket information of the filing.

Court filed in: _____

Date of filing: _____ / _____ / _____
                   Month    Day      Year

Docket No.: _____

Present Status: _____

Attach your bankruptcy petition and documents filed therewith, including (1) the schedule of assets and liabilities; (2) the schedule of income and expenditures; (3) the statement of financial affairs; (4) the schedule of executory contracts and unexpired leases; (5) the list of creditors and amount and nature of claims; (6) the source, amount, and frequency of the debtor's income; (7) the list of all the debtor's property; and (8) the detailed list of the debtor's monthly living expenses.

Do you contend that a foreclosure or short sale occurred as a result of damage to your Property from defective Chinese Drywall?  ☐ Yes   ☑ No

If Yes, answer the following questions:

If the Property was the subject of a foreclosure or short sale, identify the following:

Foreclosure or Short Sale? _____

Supplemental Plaintiff Profile Form – Residential and Commercial Properties

Lender's name: _____

Loan Number: _____

Original Loan/Mortgage Amount: $_____

Date of Original Loan/Mortgage: _____/_____/_____
Month   Day    Year

At the Date of Foreclosure or Short Sale,
the amount owed on the Loan/Mortgage: $_____

Date of Foreclosure or Short Sale: _____/_____/_____
Month   Day    Year

Short Sale Price (if applicable): $_____

Attach all loan/mortgage documentation and documentation pertaining to the acquisition of the property.

Attach all documents relating to any foreclosure or short sale, including but not limited to any financial statements provided to the lender, a seller's hardship letter, tax returns, W-2 forms, payroll stubs, and bank statements provided to the lender, and comparative market analyses of comparable sales provided to the lender.

### Section V. Already Remediated Property

Has the Property been partially or completely remediated?   No _____

If completely or partially remediated, answer the following questions.  If No, go to Section VI.

Please identify the dates during which the remediation took place:

_____

Please identify who performed the work to remediate the property (for example: self, name of contractor, name of remediation service): _____

If the Property has been partially remediated, identify the rooms of the Property that were remediated, the current condition and status of the remediation and the amount of work remaining to be remediated:

Attach any documents supporting any work that you or others performed for remediation of the Property.

If the Property has been partially or completely remediated, what was the total cost to date for the remediation of the Property?

$_____

Attach all invoices and documents to support the total cost of remediation to date.

4

Supplemental Plaintiff Profile Form – Residential and Commercial Properties

Attach all invoices, purchase receipts and documents supporting the total cost or value of any appliances, fixtures or other electronics that you claim were damaged by Chinese drywall.

Attach all invoices, purchase receipts and documents supporting the total cost or value of any other movables (property or possessions, not including land or buildings) that you claim were damaged by Chinese drywall.

If the Property has been completely remediated, what was the date the remediation was completed?

Month/Year: _____ / _____

Have you preserved at least two samples (of ten inches by ten inches (10" x 10") in size if possible) of every different drywall brand or marking removed from the Property?   ☐ Yes   ☐ No

If you have preserved samples, where are the samples located?

_____

Have you preserved at least one sample of each type of drywall endtape, if any, that was found during inspection, repair or removal of drywall in or from the Property?   ☐ Yes   ☐ No

If you have preserved samples, where are the samples located?

_____

Have you photographed the backside of each Chinese-manufactured drywall board removed from the Property immediately after it was removed, and have you documented on a floor plan or other similar diagram the location of each full or partial Chinese-manufactured drywall board and its photograph?
☐ Yes   ☐ No

If you have photographed and documented each Chinese-manufactured board, please attach the photograph(s) and floor plan.

Have you photographed the HVAC coil, at least one (1) plumbing component and three (3) electrical components that you allege were damaged by Chinese drywall?   ☐ Yes   ☐ No

If you have photographed these materials, please attach the photographs.

Have you photographed any other building materials, components, or other personal property for which you intend to seek recovery?   ☐ Yes   ☐ No

If you have photographed these materials, please attach the photographs.

### Section VI.  Prior Payments

Have you received any payments, including but not limited to settlement payments, payments from homebuilders, and insurance payments, related to damages you claim to have suffered caused by defective Chinese drywall in the Property or related to any other harm caused by defective Chinese drywall?   ☐ Yes   ☑ No

If Yes, identify the source(s) and state the amount of payment(s) you received?

Source: _____

Amount of payments received: $ _____

Supplemental Plaintiff Profile Form – Residential and Commercial Properties

Source: _____

Amount of payments received:  $ _____

Source: _____

Amount of payments received:  $ _____

If you received payments from the Knauf settlement, state the percentage of the Chinese Drywall that was identified as "KPT Chinese Drywall" as described in section 1.27 of the Knauf Settlement Agreement: _____%

Attach documents reflecting the total amount you received from the source(s).

### Section VII. Other Damages

If you incurred alternative living expenses as a result of Chinese Drywall, identify the total moving cost and/or alternative living expense you incurred.

$_____

Attach all receipts and documents supporting the total moving cost and/or alternative living expense you incurred.

If you experienced any loss of use and/or loss of enjoyment of the Property as a result of Chinese Drywall, identify the total amount of such loss.

$ 129,019.96 _____

Attach all documentation to support the total amount claimed for the loss.

If you claim a diminution in value of the Property as a result of Chinese Drywall, identify the total amount of such diminution of value being claimed.

$_____

Attach all documentation to support the total amount claimed for diminution of value, including documents showing that the Property's previous value.

### Section VIII. "Under Air" Square Footage

Has the under air square footage of the Property changed at any time since installation of the Chinese drywall?  ☐ Yes  ☑ No

If the square footage has changed, please identify the date(s) and change(s) to under air square footage, and attach all documentation that relates to each change:

Date: _____

Change: _____

Date: _____

Change: _____

Date: _____

Change: _____

### Section IX. Verification of Supplemental Plaintiff Profile Form

I declare under penalty of perjury under the laws of the United States of America and pursuant to 28 U.S.C. § 1746 that I am the claimant identified in this Supplemental Plaintiff Profile Form and that all information provided in this Supplemental Plaintiff Profile Form is true and correct to the best of my knowledge, and that I have supplied all of the documents requested in this declaration to the extent that such documents are in my possession, custody or control.

I further declare under penalty of perjury under the laws of the United States of America and pursuant to 28 U.S.C. § 1746 that all information previously provided by me in my original Plaintiff Profile Form continues to be true and correct and has been updated to the best of my knowledge.

_Carl M Moore_
Claimant's signature

_03 - 30 - 2018_
Date signed

Name: _CARL  G  MOORE_

Address: _3391  16 MILE  RD  NE_
Address 1                Address 2

_CEDAR SPRINGS  MI  49319_
City                State        Zip Code

Phone No.: _(616 ) 893 - 6126_

Email: _PINEBORDERFARM @ GMAIL. COM_

# EXHIBIT

## [See Section VII of SPPF]

Related to:
Alternative Living Expenses,
Loss of Use/Loss of Enjoyment,
or Diminution of Value

## Section VII.  Loss of Use / Loss of Enjoyment

This is our Winter home and we spend at least half of the year there.  $129,019.96 in loss of use / loss of enjoyment damages is appropriate and consistent with past verdicts in the Chinese drywall litigation, based on the number of years I and my family have owned and/or lived in the home containing defective Chinese-manufactured sheetrock produced by the Knauf Defendants.

# HVAC SERVICE INVOICE

Lic# CAC#1816678



**1181 S. Sumter Blvd. #303 • North Port, FL 34287**
**(941) 876-1062 • www.prestoair.com**

| Date | Invoice # |
|------|-----------|
| 1-18-14 | No:3741 1 |

Referred by _____

| | |
|---|---|
| MAILING NAME | |
| ADDRESS | |
| CITY, STATE, ZIP | |
| PHONE | |
| EMAIL | |

| SERVICE NAME | |
|---|---|
| Morrison | |
| ADDRESS | 6417 Bent Grass Ln |
| CITY, STATE, ZIP | |
| PHONE | |

| QTY. | FLAT RATE REPAIR | | UNIT PRICE | AMOUNT | DESCRIPTION OF WORK PERFORMED |
|------|------------------|---|-----------|--------|-------------------------------|
| | REFRIGERANT R- | LBS. | | | Install |
| 1 | | | | | |
| | | | | 4019.00 | Removed & Replaced 2.5 ton 15 seer |
| | | | | | Heat Pump With 10kW |
| | | | | | Warranty 1 year labor 10 year parts |
| | | | | | 10 year compressor |
| | **TOTAL FLAT RATE REPAIR** | | | | |

| INDOOR UNIT | OUTDOOR UNIT | |
|-------------|--------------|---|
| MAKE: | MAKE: | |
| MODEL: | MODEL: | |
| SN: | SN: | |

## RECOMMENDATIONS

| | TOTAL SUMMARY | |
|---|---|---|
| | FLAT RATE REPAIR | 4019.00 |
| | SERVICE DISCOUNT | |
| | TOTAL  $ | |
| | DIAGNOSTIC CHARGE | |
| | SUBTOTAL  $ | |
| | STOP MISSED SAVINGS! | |
| | BALANCE COLLECTED  $ | 4019.00 |
| | BALANCE DUE UPON COMPLETION | |

**TERMS: DUE UPON COMPLETION**

I have authority to order the work outlined above which has been satisfactorily completed. I agree that Seller retains title to equipment and/or material furnished until final payment is made. If payment is ~ade as agreed, Seller can remove said equipment/materials ~eowner's expense. Any damage resulting from said removal ~ot be the responsibility of Seller.

LIMITED WARRANTY: All materials, parts and equipment are warranted by the manufacturers' or suppliers' written warranty only. All labor performed by *Presto Air* is warranted for 30 days or as otherwise indicated in writing. Presto Air makes no other warranties, express or implied, and its agents or technicians are not authorized to make such warranties on behalf of *Presto Air*.

X _____  X 1-18-14   X _____   X _____
**CUSTOMER SIGNATURE          DATE**        **TECHNICIAN SIGNATURE        DATE**

| CREDIT CARD # | Paid C.C. | EXP. DATE | CSC CODE |
|---|---|---|---|

☐ CASH   ☐ CHECK#

☐ VISA   ☐ MASTER CARD   ☐ DISCOVER      ZIP CODE _____

# Property Screening Report

## 5427 Kedgewick Lane, North Port, FL 34288

Screening Date:

1-24-17

Prepared for:

Carl Moore

Report Number:

FL09-0508

CDS Inspector:

Julie Sommerville



Inspections and documentation from leading experts



Inspections and documentation from leading experts

January 29, 2017

Carl Moore
5427 Kedgewick Lane
North Port, FL 34288

RE: Chinese Drywall Screening Report Number FL09-0508

Mr. Moore,

At your request, an inspection of the above referenced property (5427 Kedgewick Ln.) was performed on January 24, 2017. Chinese Drywall Screening, LLC is pleased to submit the enclosed report which is a professional opinion based on a visual inspection of the accessible materials and x-ray fluorescence testing of the drywall throughout the property.

Based on our visual observations coupled with known affects from reactive drywall, CDS is of the opinion that reactive drywall is present in the above referenced property. Corrosive drywall markings listed in MDL 2047 that were discovered are:

| No. | Drywall Mfg | Markings on Drywall | Location in home |
|-----|-------------|---------------------|------------------|
| 9 | Knauf-Tianjin | "…TIANJIN…" | Garage ceiling |
| 9 | Knauf-Tianjin | "…NA-ASTM…" | possibly laundry room |

Another type of drywall that is domestic and not known to be corrosive is National Gypsum/GridMarx. This type was also observed, along with KPT, on the garage ceilings and on the interior ceilings.

Based on the **2,574 sf** (including garage) size of the home with **10' average ceiling height,** we estimate that there is **11,000 sf of drywall** in the home.

We trust that this report meets or exceeds your expectations. Please feel free to contact us should you have any questions regarding our report or if we may be of further assistance to you.

Sincerely,

Howard Ehrsam, P.E., LEED AP
CGC 1509717
on behalf of Chinese Drywall Screening, LLC

Enclosures: Report with Photo Exhibit



# Overview

## Overview of Subject Property



**Client**: Carl Moore

**Address:** 5427 Kedgewick Lane
North Port, FL 34288

**Size:** Total 2,574 sf (including garage)

**Exterior wall types:** CBS - Concrete Block exterior

**Completion date:** 2007-08



# Summary Narrative

## Observations and Conclusions

### Observations

- Blackening or "black deposits" defined to be copper sulfide by Unified Engineering File No. 4050 associated with reactive drywall were not observed on the A/C evaporator coils and the external refrigerant lines.  The unit was replaced in 2014.
- Blackening was not observed on the exposed wiring of inspected receptacles and switches throughout the majority of the property
- Blackening was observed on the exposed wiring of the receptacle in the laundry room where Chinese drywall was determined to be present.
- Blackening was not observed on the water heater located in the garage.
- Blackening was not observed on the copper plumbing water lines under the kitchen and bathrooms sinks.
- Faucets and other plumbing trim in the master bathroom had no corrosive spotting.
- Desilvering was not observed on the mirrors.
- Walls and ceilings were tested utilizing a Thermo Fisher X-ray fluorescence (XRF) analyzer throughout the property.
    - Portions of the ceiling in the garage had corrosive drywall markings matching **MDL 2047 Drywall Index No. 9 – Knauf-Tianjin** .
    - Laundry room had drywall with XRF readings similar to Knauf-Tianjin (KPT) with strontium levels around 2,700 ppm
- Markings for National Gypsum/GridMarx were observed on the interior and garage ceilings.
- There was no odor associated with corrosive drywall.


### Conclusions

Based on our visual observations, testing, experience and current state of knowledge in the industry, Chinese Drywall Screening, LLC is of the professional opinion that reactive Chinese drywall **is** present in several areas of the subject property, specifically **MDL 2047 Drywall Index No. 9 – Knauf-Tianjin.**  Inspection and testing was done for general information only. Additional testing involving cutting and scraping of walls would be needed to verify actual extents of the various types of drywall.

It is the intent of CDS to inform and empower the Client with enough knowledge to make the best, well informed decision that is in the best interests of the Client.  Towards that end, we recommend that you contact an attorney to discuss your legal rights, including potential claims against your builder, along with the installer, supplier and manufacturer of the drywall. Additional claims against parties of the real estate transaction may also be explored.



# Overview

## Overview of Subject Property



**Client**: Carl Moore

**Address:** 5427 Kedgewick Lane
North Port, FL 34288

**Size:** Total 2,574 sf (including garage)

**Exterior wall types:** CBS - Concrete Block exterior

**Completion date:** 2007-08



# Summary Narrative

## Observations and Conclusions

## Observations

- Blackening or "black deposits" defined to be copper sulfide by Unified Engineering File No. 4050 associated with reactive drywall were not observed on the A/C evaporator coils and the external refrigerant lines.  The unit was replaced in 2014.
- Blackening was not observed on the exposed wiring of inspected receptacles and switches throughout the majority of the property
- Blackening was observed on the exposed wiring of the receptacle in the laundry room where Chinese drywall was determined to be present.
- Blackening was not observed on the water heater located in the garage.
- Blackening was not observed on the copper plumbing water lines under the kitchen and bathrooms sinks.
- Faucets and other plumbing trim in the master bathroom had no corrosive spotting.
- Desilvering was not observed on the mirrors.
- Walls and ceilings were tested utilizing a Thermo Fisher X-ray fluorescence (XRF) analyzer throughout the property.
    - Portions of the ceiling in the garage had corrosive drywall markings matching **MDL 2047 Drywall Index No. 9 – Knauf-Tianjin** .
    - Laundry room had drywall with XRF readings similar to Knauf-Tianjin (KPT) with strontium levels around 2,700 ppm
- Markings for National Gypsum/GridMarx were observed on the interior and garage ceilings.
- There was no odor associated with corrosive drywall.

### Conclusions

Based on our visual observations, testing, experience and current state of knowledge in the industry, Chinese Drywall Screening, LLC is of the professional opinion that reactive Chinese drywall **is** present in several areas of the subject property, specifically **MDL 2047 Drywall Index No. 9 – Knauf-Tianjin.**  Inspection and testing was done for general information only. Additional testing involving cutting and scraping of walls would be needed to verify actual extents of the various types of drywall.

It is the intent of CDS to inform and empower the Client with enough knowledge to make the best, well informed decision that is in the best interests of the Client.  Towards that end, we recommend that you contact an attorney to discuss your legal rights, including potential claims against your builder, along with the installer, supplier and manufacturer of the drywall. Additional claims against parties of the real estate transaction may also be explored.



Inspections and documentation from leading experts

What you can do today: Three primary items to consider for immediate action are: 1) Mortgage forbearance if applicable, 2) Property tax reduction and 3) Legal representation regarding claims against the manufacture and parties involved in the real estate transaction.

Time is of the essence and time frames for filing claims may end. It is critical to understand the implications with these and we recommend seeking professional consultation for details.

Due to the limited presence of Chinese drywall and the associated affects, the property qualifies for selective remediation to avoid the large expense of a full scale demolition of the property to the shell. Contact our office for more information regarding various pros and cons along with protocols, environmental certification, etc.

For owners of properties with reactive drywall, it important to understand preservation of evidence when selling or remediating as well as the importance of 3rd party verification of the remediation. More information is available on our website or toll free at 855- CDW-Help (855-239-4357).



# Exhibit A

# Certification

## Certification of the Engineer

The undersigned do hereby certify that, to the best of our knowledge and belief:

- The statements of fact contained within this report are true and correct.

- As applicable, the statements of opinions have certain limitations. It is not feasible and is impossible to confirm 100% of corrosive drywall was either removed or is not present. There are several conditions we have seen that could prevent discovery without a more exhaustive investigation. They include, but are not limited to:
    - Low Strontium, corrosive drywall that is domestic and non-homogeneous.
    - Limited amounts of corrosive drywall in inaccessible areas or installed in a way that would seclude it from available receptacles and switches.
    - Limited amounts of high strontium drywall covered with joint compound or heavy textures hindering detection by x-ray fluorescence.
    - Variable amounts of low off-gassing drywall or drywall with corrosive recycled gypsum.

- We have no present or prospective interest in the property that is the subject of this report and we have no personal interest with respect to the parties involved. We have no bias with respect to the property that is the subject of this report or to the parties involved with this agreement.

- The information in this report is based on the existing conditions of the structures materials, documents, and information (written or verbal) supplied by the contractor, the owner or their representatives, and our observations during the inspection.

- Our compensation or engagement in this assignment is not contingent upon the development or reporting of a predetermined conclusion that favors the cause of the client, the remediator, the attainment of a stipulated result, or the occurrence of a subsequent event directly related to the intended use of this report.

- Any use of this report by any other parties without our expressed or written consent is prohibited. Should another individual or entity rely on this analysis or its conclusions without our consent, that shall indemnify Chinese Drywall Screening, LLC, its employees, and service providers from all damages, losses, or expenses that may occur as a result of its use.

- Our report is based on information made available to us at the time of inspection. Should additional information become available, we reserve the right to determine the impact, if any, of the new information on our opinions and conclusions and to revise our opinions and conclusions if necessary and warranted by the discovery of the additional information.

- The provided services and documentation have been completed to the best of our knowledge and based on current known facts regarding reactive drywall.

Howard Ehrsam, P.E., LEED AP
CGC 1509717
on behalf of Chinese Drywall Screening, LLC



# Scope of Screening

## Scope of Screening Services Performed

Chinese Drywall Screening, LLC (CDS) conducted a detailed visual inspection of the various elements within the home that typically react to the presence of reactive drywall. Some of the known affects are pitting and blackening copper, tarnishing silver, corroding and spotting chrome and brass, and delaminating mirrors.

Based on the experience, knowledge and ability to recognize these affects, CDS completed a thorough inspection of the various elements of the home containing these materials. These elements include, but are not limited to:

- Air conditioning components
- Gas lines (if applicable)
- Water lines
- Electrical wiring
- Coaxial cabling
- Refrigerator components
- Mirrors
- Plumbing fixtures and drains

Some of the above elements were photographed during the inspection and are attached as "Photo Narrative Exhibit". Refer to the photographs for specific observations.

Items that may be affected by reactive drywall but were not inspected by CDS include, but are not limited to:

- Large appliances
- Small appliances
- Televisions
- Audio/video equipment
- Personal possessions
- Smoke detectors
- Doorbells
- Security systems
- Control wiring
- Thermostats

The following engineering report is utilized as a reference in regards to the visual effects on copper: Unified Engineering Report File 4050 dated March 17, 2009. Unified Engineering, Inc; 3056 Weber Drive, Aurora, IL 60502.



# Scope of Screening

## Scope of Services (continued)

### X-ray Fluorescence (XRF) for Strontium

XRF analyzers are handheld instruments used predominantly to evaluate the presence of metal constituents in building materials or other products.  XRF works by exposing a material to high energy x-rays and measuring those x-rays and comparing them to the known and unique pattern of x-rays produced by each element.  For help in identifying corrosive drywall, XRF is used to determine levels of strontium (Sr) present within the gypsum of the drywall throughout the property.

Strontium is a light metal that is a common, naturally occurring element found within the earth.  Certain geographical regions have higher concentrations than others that can translate to the origin of the raw materials.  Strontium levels above 1850 ppm have been associated with drywall of Chinese origin.  However, high levels of strontium do exist in drywall from other origins and testing must be used in conjunction with other means to produce proper conclusions.

The attenuating effects of joint compound and textures could inhibit the detection of small amounts of corrosive drywall.  Furthermore, corrosive drywall could also be present in inaccessible areas that include, but are not limited to, walls above drop ceilings, fire stopping, behind tile, behind cabinets, under raised floor systems, etc.  However, the potential for these conditions can be reduced or eliminated with proper property evaluation and corrosion evaluation.



Photo Exhibit
5427 Kedgewick Lane
North Port, FL 34288





## Photo Exhibit
### 5427 Kedgewick Lane
### North Port, FL 34288





**Photo Exhibit**
5427 Kedgewick Lane
North Port, FL 34288



















Photo Exhibit
5427 Kedgewick Lane
North Port, FL 34288





Photo Exhibit
5427 Kedgewick Lane
North Port, FL 34288



















Photo Exhibit
5427 Kedgewick Lane
North Port, FL 34288



















# Photo Exhibit
## 5427 Kedgewick Lane
## North Port, FL 34288





Photo Exhibit
5427 Kedgewick Lane
North Port, FL 34288



RECORDED IN OFFICIAL RECORDS
INSTRUMENT # 2009057648 2 PGS

2009 MAY 14 10:56 AM
KAREN E. RUSHING
CLERK OF THE CIRCUIT COURT
SARASOTA COUNTY,FLORIDA
DCOURSEY   Receipt#1163198
Doc Stamp-Deed:    1,225.00

Prepared by and Return to:
Realty Title Solutions, LLLP
Crystal Reyes
2326 Del Prado Boulevard South
Cape Coral, Florida  33990-6628

Parcel ID 1123-24-7602

File No.: 09-0712
Consideration Amount:  $175,000.

Deed State Tax/Stamps:  $1,225.



2009057648

# **Special Warranty Deed**

THIS INDENTURE, made this May 1, 2009, between **National Credit Union Administration as liquidating agent for Huron River Area Credit Union,** whose mailing address is: 4807 Spicewood Springs road, Austin, Texas 78759, party of the first part, and **Carl G. Moore and Ellen L. Moore, husband and wife** whose mailing address is: **3391 Sixteen Mile Road NE, Cedar Springs, MI  49319,** party/parties of the second part,

### W I T N E S S E T H:

First party, for and in consideration of the sum of TEN AND NO/100 DOLLARS ($10.00) and other valuable considerations, receipt whereof is hereby acknowledged, does hereby grant, bargain, sell, aliens, remises, releases, conveys and confirms unto second party/parties, his/her/their heirs and assigns, the following described property, towit:

Lot 2, Block 2476, 49th ADDITION TO PORT CHARLOTTE, according to the plat thereof, as recorded in Plat Book 21, page 1, of the Public Records of Sarasota County, Florida.

Subject, however, to all covenants, conditions, restrictions, reservations, limitations, easements and to all applicable zoning ordinances and/and restrictions and prohibitions imposed by governmental authorities, if any.

TOGETHER with all the tenements, hereditaments and appurtenances thereto belonging or in anywise appertaining.

TO HAVE AND TO HOLD the same in fee simple forever.

AND the party of the first part hereby covenants with said party of the second part, that it is lawfully seized of said land in fee simple; that it has good right and lawful authority to sell and convey said land; that it hereby fully warrants the title to said land and will defend the same against the lawful claims of all persons claiming by, through or under the party of the first part.

EXCEPT FOR ANY WARRANTIES OR TITLE CONTAINED IN THIS DEED, SAID FIRST PARTY HEREBY DISCLAIMS, AND SAID SECOND PARTIES HEREBY WAIVE, ANY AND ALL WARRANTIES OF ANY NATURE REGARDING THE PROPERTY.  SAID FIRST PARTY HAS NOT MADE AND DOES NOT MAKE ANY REPRESENTATIONS, WARRANTIES OR COVENANTS OF ANY KIND OR CHARACTER WHATSOEVER, WHETHER EXPRESS OR IMPLIED, WITH RESPECT TO THE SQUARE FOOTAGE OF THE PROPERTY; THE QUALITY OR THE CONDITION OF THE PROPERTY CONVEYED TO SAID SECOND PARTIES; THE SUITABILITY OR SAFETY OF THE PROPERTY FOR ANY AND ALL ACTIVITIES AND USES WHICH SAID SECOND PARTIES MAY CONDUCT THEREON; COMPLIANCE BY SAID FIRST PARTY AND/OR THE PROPERTY WITH

ANY LAWS, RULES, ORDINANCES, OR REGULATIONS OF ANY APPLICABLE GOVERNMENTAL
AUTHORITY; OR THE HABITABILITY, MERCHANTABILITY, OR FITNESS OF THE PROPERTY
FOR A PARTICULAR PURPOSE.  SAID FIRST PARTY HAS NOT, DOES NOT AND WILL NOT
MAKE ANY REPRESENTATIONS OR WARRANTIES  WITH REGARD TO COMPLIANCE WITH ANY
ENVIRONMENTAL PROTECTION, POLLUTION OR LAND USE LAWS, RULES, REGULATIONS,
ORDERS OR REQUIREMENTS INCLUDING, BUT NOT LIMITED TO, THOSE PERTAINING TO
THE USE, HANDLING, GENERATING, TREATING, STORING OR DISPOSING OF ANY
HAZARDOUS WASTE, HAZARDOUS SUBSTANCES, PETROLEUM PRODUCT STORAGE TANKS OR
ASBESTOS.  THE PROVISIONS CONTAINED IN THIS PARAGRAPH SHALL SURVIVE
DELIVERY OF THE DEED.  SAID SECOND PARTIES ACCEPT THE PROPERTY "AS IS",
"WHERE IS", AND WITH ALL FAULTS.  SAID SECOND PARTIES HAVE MADE THEIR OWN
INDEPENDENT INSPECTION OF ALL ASPECTS OF THE PROPERTY AND SHALL HAVE NO
RECOURSE WHATSOEVER AGAINST SAID FIRST PARTY IN THE EVENT OF DISCOVERY OF
ANY DEFECTS OF ANY KIND, LATENT OR PATENT.  THIS WARRANTY DISCLAIMER SHALL
NOT DIMINISH ANY WARRANTIES OF TITLE MADE BY SAID FIRST PARTY IN THIS DEED.

IN WITNESS WHEREOF, first party has signed and sealed these present the date set forth on May 1, 2009.

Signed, sealed and delivered
in the presence of:

National Credit Union Administration as liquidating agent
for Huron River Area Credit Union

Witness signature

Print witness name
Diane Laube

Witness signature

Print witness name
Krista M. Schizas

By: _____
Print Name: Justin Burleson
Agent for the Liquidating Agent

(Corporate Seal)


STATE OF TEXAS
COUNTY OF TRAVIS


In the City of Austin, on this ___30___ day of ___April___  2009  in said County, before me personally appeared
Justin Burleson as Agent for the National Credit Union Administration as liquidating agent for Huron River Area Credit
Union  to me known and known by me to be the party executing the foregoing instrument, and he acknowledged
said instrument, by him executed, to be his free act and deed, in his said capacity, and the free act and deed of
the said National Credit Union Administration as liquidating agent for Huron River Area Credit Union.

_____
Notary Public

{seal}

KRISTA M. SCHIZAS
NOTARY PUBLIC STATE OF TEXAS
COMMISSION EXPIRES:
03-26-2012

Printed Name: Krista M. Schizas
Commission Expires: 3/26/12

Form **W-9**
(Rev. August 2013)
Department of the Treasury
Internal Revenue Service

## Request for Taxpayer
## Identification Number and Certification

Give Form to the
requester. Do not
send to the IRS.

Name (as shown on your income tax return)
CARL G. MOORE

Business name/disregarded entity name, if different from above

Check appropriate box for federal tax classification:

[X] Individual/sole proprietor  [ ] C Corporation  [ ] S Corporation  [ ] Partnership  [ ] Trust/estate

[ ] Limited liability company. Enter the tax classification (C=C corporation, S=S corporation, P=partnership) ▶ _____

[ ] Other (see instructions) ▶

Exemptions (see instructions):

Exempt payee code (if any) _____

Exemption from FATCA reporting
code (if any) _____

Address (number, street, and apt. or suite no.)
3391 16 MILE RD. NE

Requester's name and address (optional)

City, state, and ZIP code
CEDAR SPRINGS MI 49319

List account number(s) here (optional)

*Print or type*
*See Specific Instructions on page 2.*

### Part I   Taxpayer Identification Number (TIN)

Enter your TIN in the appropriate box. The TIN provided must match the name given on the "Name" line to avoid backup withholding. For individuals, this is your social security number (SSN). However, for a resident alien, sole proprietor, or disregarded entity, see the Part I instructions on page 3. For other entities, it is your employer identification number (EIN). If you do not have a number, see *How to get a TIN* on page 3.

**Note.** If the account is in more than one name, see the chart on page 4 for guidelines on whose number to enter.

Social security number
3 6 2 - 5 4 - 3 5 7 5

Employer identification number

### Part II   Certification

Under penalties of perjury, I certify that:

1. The number shown on this form is my correct taxpayer identification number (or I am waiting for a number to be issued to me), and

2. I am not subject to backup withholding because: (a) I am exempt from backup withholding, or (b) I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of a failure to report all interest or dividends, or (c) the IRS has notified me that I am no longer subject to backup withholding, and

3. I am a U.S. citizen or other U.S. person (defined below), and

4. The FATCA code(s) entered on this form (if any) indicating that I am exempt from FATCA reporting is correct.

**Certification instructions.** You must cross out item 2 above if you have been notified by the IRS that you are currently subject to backup withholding because you have failed to report all interest and dividends on your tax return. For real estate transactions, item 2 does not apply. For mortgage interest paid, acquisition or abandonment of secured property, cancellation of debt, contributions to an individual retirement arrangement (IRA), and generally, payments other than interest and dividends, you are not required to sign the certification, but you must provide your correct TIN. See the instructions on page 3.

Sign
Here

Signature of
U.S. person ▶ *Carl M Moore*

Date ▶ 03 - 30 - 2018

## General Instructions

Section references are to the Internal Revenue Code unless otherwise noted.

**Future developments.** The IRS has created a page on IRS.gov for information about Form W-9, at *www.irs.gov/w9*. Information about any future developments affecting Form W-9 (such as legislation enacted after we release it) will be posted on that page.

## Purpose of Form

A person who is required to file an information return with the IRS must obtain your correct taxpayer identification number (TIN) to report, for example, income paid to you, payments made to you in settlement of payment card and third party network transactions, real estate transactions, mortgage interest you paid, acquisition or abandonment of secured property, cancellation of debt, or contributions you made to an IRA.

Use Form W-9 only if you are a U.S. person (including a resident alien), to provide your correct TIN to the person requesting it (the requester) and, when applicable, to:

1. Certify that the TIN you are giving is correct (or you are waiting for a number to be issued),

2. Certify that you are not subject to backup withholding, or

3. Claim exemption from backup withholding if you are a U.S. exempt payee. If applicable, you are also certifying that as a U.S. person, your allocable share of any partnership income from a U.S. trade or business is not subject to the

withholding tax on foreign partners' share of effectively connected income, and

4. Certify that FATCA code(s) entered on this form (if any) indicating that you are exempt from the FATCA reporting, is correct.

**Note.** If you are a U.S. person and a requester gives you a form other than Form W-9 to request your TIN, you must use the requester's form if it is substantially similar to this Form W-9.

**Definition of a U.S. person.** For federal tax purposes, you are considered a U.S. person if you are:

• An individual who is a U.S. citizen or U.S. resident alien,

• A partnership, corporation, company, or association created or organized in the United States or under the laws of the United States,

• An estate (other than a foreign estate), or

• A domestic trust (as defined in Regulations section 301.7701-7).

**Special rules for partnerships.** Partnerships that conduct a trade or business in the United States are generally required to pay a withholding tax under section 1446 on any foreign partners' share of effectively connected taxable income from such business. Further, in certain cases where a Form W-9 has not been received, the rules under section 1446 require a partnership to presume that a partner is a foreign person, and pay the section 1446 withholding tax. Therefore, if you are a U.S. person that is a partner in a partnership conducting a trade or business in the United States, provide Form W-9 to the partnership to establish your U.S. status and avoid section 1446 withholding on your share of partnership income.

Cat. No. 10231X

Form **W-9** (Rev. 8-2013)

From: **Ellen Moore** sayheym@gmail.com
Subject: w9 form
Date: Today at 8:24 PM
To: Pine Border Farm pineborderfarm@gmail.com

| Form **W-9**
(Rev. November 2017)
Department of the Treasury
Internal Revenue Service | **Request for Taxpayer
Identification Number and Certification**

▶ Go to *www.irs.gov/FormW9* for instructions and the latest information. | **Give Form to the
requester. Do not
send to the IRS.** |

**1** Name (as shown on your income tax return). Name is required on this line; do not leave this line blank.

Ellen L Moore

**2** Business name/disregarded entity name, if different from above

**3** Check appropriate box for federal tax classification of the person whose name is entered on line 1. Check only **one** of the following seven boxes.

- ☑ Individual/sole proprietor or single-member LLC
- ☐ C Corporation
- ☐ S Corporation
- ☐ Partnership
- ☐ Trust/estate

- ☐ Limited liability company. Enter the tax classification (C=C corporation, S=S corporation, P=Partnership) ▶

Note: Check the appropriate box in the line above for the tax classification of the single-member owner. Do not check LLC if the LLC is classified as a single-member LLC that is disregarded from the owner unless the owner of the LLC is another LLC that is not disregarded from the owner for U.S. federal tax purposes. Otherwise, a single-member LLC that is disregarded from the owner should check the appropriate box for the tax classification of its owner.

- ☐ Other (see instructions) ▶

**4** Exemptions (codes apply only to certain entities, not individuals; see instructions on page 3):

Exempt payee code (if any)

Exemption from FATCA reporting code (if any)

*(Applies to accounts maintained outside the U.S.)*

**5** Address (number, street, and apt. or suite no.) See instructions.

3391 16 Mile Rd NE

**6** City, state, and ZIP code

Cedar Springs MI 49319-8407

Requester's name and address (optional)

**7** List account number(s) here (optional)

### Part I    Taxpayer Identification Number (TIN)

Enter your TIN in the appropriate box. The TIN provided must match the name given on line 1 to avoid backup withholding. For individuals, this is generally your social security number (SSN). However, for a resident alien, sole proprietor, or disregarded entity, see the instructions for Part I, later. For other entities, it is your employer identification number (EIN). If you do not have a number, see *How to get a TIN*, later.

Note: If the account is in more than one name, see the instructions for line 1. Also see *What Name and Number To Give the Requester* for guidelines on whose number to enter.

Social security number

3 8 4 – 5 2 – 0 4 9 6

or

Employer identification number

### Part II    Certification

Under penalties of perjury, I certify that:

1. The number shown on this form is my correct taxpayer identification number (or I am waiting for a number to be issued to me); and
2. I am not subject to backup withholding because: (a) I am exempt from backup withholding, or (b) I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of a failure to report all interest or dividends, or (c) the IRS has notified me that I am no longer subject to backup withholding; and
3. I am a U.S. citizen or other U.S. person (defined below); and
4. The FATCA code(s) entered on this form (if any) indicating that I am exempt from FATCA reporting is correct.

**Certification instructions.** You must cross out item 2 above if you have been notified by the IRS that you are currently subject to backup withholding because you have failed to report all interest and dividends on your tax return. For real estate transactions, item 2 does not apply. For mortgage interest paid, acquisition or abandonment of secured property, cancellation of debt, contributions to an individual retirement arrangement (IRA), and generally, payments other than interest and dividends, you are not required to sign the certification, but you must provide your correct TIN. See the instructions for Part II, later.

**Sign
Here** | Signature of U.S. person ▶ *Ellen L. Moore* | Date ▶ 03/30/2018

## General Instructions

Section references are to the Internal Revenue Code unless otherwise noted.

**Future developments.** For the latest information about developments related to Form W-9 and its instructions, such as legislation enacted after they were published, go to *www.irs.gov/FormW9*.

## Purpose of Form

An individual or entity (Form W-9 requester) who is required to file an information return with the IRS must obtain your correct taxpayer identification number (TIN) which may be your social security number (SSN), individual taxpayer identification number (ITIN), adoption taxpayer identification number (ATIN), or employer identification number (EIN), to report on an information return the amount paid to you, or other amount reportable on an information return. Examples of information returns include, but are not limited to, the following.

- Form 1099-INT (interest earned or paid)

- Form 1099-DIV (dividends, including those from stocks or mutual funds)
- Form 1099-MISC (various types of income, prizes, awards, or gross proceeds)
- Form 1099-B (stock or mutual fund sales and certain other transactions by brokers)
- Form 1099-S (proceeds from real estate transactions)
- Form 1099-K (merchant card and third party network transactions)
- Form 1098 (home mortgage interest), 1098-E (student loan interest), 1098-T (tuition)
- Form 1099-C (canceled debt)
- Form 1099-A (acquisition or abandonment of secured property)

Use Form W-9 only if you are a U.S. person (including a resident alien), to provide your correct TIN.

*If you do not return Form W-9 to the requester with a TIN, you might be subject to backup withholding. See What is backup withholding, later.*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL NO. 2047<br><br>SECTION: L |
| THIS DOCUMENT RELATES TO:<br><br>*Elizabeth Bennett, et al. v. Knauf Gips, KG, et al.*<br>2:14-cv-02722-EEF-JCW | JUDGE ELDON FALLON<br><br>MAG. JUDGE WILKINSON |

## PLAINTIFF FACT SHEET

Name of Plaintiff: _Carl Moore & Ellen Moore_

Affected Property Address: _5427 Kedgewick Lane, North Port, FL  34288_

## I. Purchase, Sale and/or Transfer of Ownership of Property

1. On what date did you purchase the Property?

**Response**: Plaintiff objects to this question as duplicative. In addition, Plaintiff objects to this question on the ground that it seeks information in the possession of, known to, or otherwise equally available to the defendants. Plaintiff has previously provided this information to defendants in the Bennett Supplemental Plaintiff Profile Form ("SPPF"). Plaintiff directs the defendants to Section II of the SPPF. Without waiving said objection, Plaintiff adopts the SPPF response again here and intends to provide the exact same date as provided in the verified SPPF as follows: Plaintiff purchased the property:

(Month/Day/Year)        _05_ / _01_ / _2009_

2. When you took ownership of the Property, what was the name of the seller?

_National Credit Union Administration as liquidating agent for Huron River Area Credit Union_



1

3. Name and address of the realtor?

Paul Lucarimi, Allison James Estates & Homes, Port Charlotte, Fl.

4. Name and address of the closing agent?

Crystal Reyes, Realty Title Solutions, LLLP, 2326 Del Prado Blvd. South, Cape Coral, FL 33990

5. What was the price of the home when you purchased it? $ 175,000.00

6. Was it an "as-is" sale?

**Response**: Plaintiff objects to the use of "as-is" in this question as vague, ambiguous, uncertain, and unintelligible; consequently, Plaintiff cannot determine the exact nature of the information being sought. This term is not defined and is not commonly understood with one accepted meaning; multiple inpretations are possible. Without waiving said objection, plaintiff responds as follows:

☑ Yes ☐ No ☐ I'm not sure.

7. If you sold or transferred ownership of the Property, what was the name of the purchaser?

N/A

8. If you sold or transferred ownership of the Property, what was the name and address of the realtor?

N/A

9. If you sold or transferred ownership of the Property, what was the name and address of closing agent?

N/A

10. If you sold or transferred ownership of the Property, what was the price paid for home?
$ N/A

## II.  Appraisal of the Home

11. Date of each appraisal:

a. _____/_____/20_____
b. _____/_____/20_____

2

**PFS REQUEST FOR DOCUMENT PRODUCTION #1**: Please produce copies of any and all appraisals performed on the house both prior and subsequent to the occurrence of any of the events allenged in the petition.

> **Response:** All documents in Plaintiff's possession responsive to this request are attached as "Exhibit 1."

## III.  Discovery of Drywall

12.  Date that the property was constructed and/or renovated that installed the allegedly defective Chinese Drywall.

**Response:**  Plaintiff objects to this question as duplicative.  In addition, Plaintiff objects to this question on the ground that it seeks information in the possession of, known to, or otherwise equally available to the defendants.  Plaintiff has previously provided this information to defendants in the Bennett Supplemental Plaintiff Profile Form ("SPPF").  Plaintiff directs the defendants to  Section II of the SPPF. Without waiving said objection, Plaintiff adopts the SPPF response again here and intends to provide the exact same date as provided in the verified SPPF as follows: The property construction and/or renovation that installed the allegedly defective drywall occurred on or about the following date (to the best of my knowledge):

> (Month/Day/Year)  \_\_\_\_/\_\_\_\_/20_07\_\_\_

**PFS REQUEST FOR DOCUMENT PRODUCTION #2**: Please produce all documents, reports, photographs, videotapes, samples and any other materials which evidence and/or identify that there is defective Chinese Drywall in the Property.

> **Response:** All documents in Plaintiff's possession responsive to this request are attached as "Exhibit 2."

## IV.  Manufacturer/Seller of Drywall

13.  Who sold or distributed the drywall in the house?

**Response:**  Plaintiff objects to this question as duplicative.  In addition, Plaintiff objects to this question on the ground that it seeks information in the possession of, known to, or otherwise equally available to the defendants.  Plaintiff has previously provided this information to defendants in the Plaintiff Profile Form ("PPF"). Plaintiff directs the defendants to  Section X of the PPF.  Without waiving said objection, Plaintiff adopts the PPF response again here and intends to provide the exact same information as provided in the verified PPF as follows:   The drywall Supplier's name (to the best of my knowledge) is:

I don't know.

**PFS REQUEST FOR DOCUMENT PRODUCTION #3**: Please produce all documents, reports, photographs, videotapes, samples and any other materials which evidence and/or identify the manufacturer of drywall installed in the house. The submission must be in the form of PTO 1(B).

> **Response:** All documents in Plaintiff's possession responsive to this request are attached as "Exhibit 3."

## V.  Damages

14.  Identify any harm, financial or otherwise, that you contend was caused by defective Chinese Drywall installed in the Property.

**Response:** Plaintiff directs the defendants to review the complaint filed with the court in this case for a full listing of the claims being asserted and the damages being sought. The defective Knauf Chinese Drywall emitted gasses that cause damage to Plaintiff's home and the personal property contained therein. It also significantly diminished the use and enjoyment of the home; therefore, Plaintiff seeks the following:  all compensatory, statutory, and/or punitive damages; all pre-judgment and post-judgment interest as allowed by law; any appropriate injunctive relief; an award of attorney's fees as allowed by law; an award of taxable costs; and, any and all such further relief as a jury or judge presiding over my trial deems just and proper.  Other damages include, but are not limited to:

Financial - failing appliances, electrical system, air conditioning system.  We did not plan

for these unusual expenses when we purchased the home.

15.  If you contend that you entered personal bankruptcy as a result of damage to your property from defective Chinese Drywall, please describe the facts and circumstances that relate to your claim.

N/A

16.  If you contend that you entered short sale and/or foreclosure as a result of damage to your property from defective Chinese Drywall, please describe the facts and circumstances that relate to your claim.

N/A

**PFS REQUEST FOR DOCUMENT PRODUCTION #4**: If you claim loss of income, please produce any copies of any and all documentation upon which you intend to rely upon to prove this claim.

>    **Response**: All documents in Plaintiff's possession responsive to this request are attached as "Exhibit 4."

17.  If you claim diminution of the property as a result of Chinese Drywall, state with particularity each fact which supports your claim.

N/A _____

_____

_____

_____

18.  Identify the appliances, fixtures and/or other electronics, if any, that you claim were damaged by Chinese Drywall in the property.

>    **Response**: An list of damaged items is attached as "Exhibit 14."

19.  If you vacated the property because of the alleged presence of Chinese Drywall, please provide: Address of each location you stayed thereafter.

>    a. N/A _____
>
>    b. _____
>
>    c. _____

20.  If you vacated the property because of the alleged presence of Chinese Drywall, please provide: Time periods in which you resided at each property.

>    a. _____/_____/20_____   to   _____/_____/20_____
>
>    b. _____/_____/20_____   to   _____/_____/20_____
>
>    c. _____/_____/20_____   to   _____/_____/20_____

21.  If you vacated the property because of the alleged presence of Chinese Drywall, please provide: Moving costs and/or alternative living expenses you claim to have incurred as a result of the alleged presence of Chinese Drywall.

>    a. $ N/A _____
>
>    b. $_____
>
>    c. $_____

**PFS REQUEST FOR DOCUMENT PRODUCTION #5:**  If you vacated the property because of the alleged presence of Chinese Drywall, please provide any documentation to support your claims.

> **Response:**  All documents in Plaintiff's possession responsive to this request are attached as "Exhibit 5."

22.  Are you claiming damages for personal injury?  ☐ Yes (explain below) ☑ No

_____

_____

23.  If you suffered personal injuries as a result of the alleged presence of Chinese Drywall:  Date you allege that you first sustained personal injuries as a result of your exposure to allegedly defective Chinese Drywall.

> **Response:**   ☑ N/A

24.  If you suffered personal injuries as a result of the alleged presence of Chinese Drywall:  What specific injuries have you suffered?

> **Response:**   ☑ N/A

25.  If you suffered personal injuries as a result of the alleged presence of Chinese Drywall:  Name and address of any doctor, physician, surgeon, chiropractor, or osteopath who examined and/or treated your alleged injuries.

> **Response:**   ☑ N/A

## VI.  Potential Witnesses/Evidence

26.  Has any written or recorded statement been taken from any witness or person who has knowledge of relevant facts, including the nature, character, and extent of the injuries referred to in the petition, and for each statement identified?

   ☐ Yes  ☑ No  ☐ I don't know

27.  If the answer to 26 is "yes," please state:  The name, address, and telephone number of the person from whom the statement was taken.

N/A _____

_____

6

28. If the answer to 26 is "yes," please state:  The name, address, and telephone number of the person who took the statement.

N/A _____

_____

29. If the answer to 26 is "yes," please state:  The name address, and telephone number of the party having custody of such statement.

N/A _____

_____

30. If the answer to 26 is "yes," please state:  The date the statement was taken.

N/A _____

_____

## VII.  Already Remediated Properties

31. If you already remediated the Property, who conducted the remediation?

   **Response:**   ☑ N/A

32. When did the remediation commencement date occur?

   **Response:**   ☑ N/A

33. When did the remediation end date occur?

   **Response:**   ☑ N/A

34. What was the scope of the remediation and the scope of the work carried out?

   **Response:**   ☑ N/A

35. What costs or expenses, if any, did you incur related to the remediation of the Property?

   **Response:**   ☑ N/A

36. Were any samples from the remediation retained?

    **Response:**   ☑ N/A

37. If the response to 36 is "yes," were the samples compliant with PTO 1(B)?

    **Response:**   ☑ N/A

38. Were any photographs taken of the allegedly defective Chinese Drywall?

    **Response:**   ☑ N/A

39. If the response to 38 is "yes," were the photographs compliant with PTO 1(B)?

    **Response:**   ☑ N/A

**PFS REQUEST FOR DOCUMENT PRODUCTION #6:** Please produce the following documentation concerning the remediation of the Property: Any evidence of KPT Chinese Drywall and Non-KPT Chinese Drywall, if any, in the Property prior to remediation.

    **Response:** All documents in Plaintiff's possession responsive to this request are attached as "Exhibit 6."

**PFS REQUEST FOR DOCUMENT PRODUCTION #7:** Please produce the following documentation concerning the remediation of the Property: Interior photographs of the Affected Property immediately prior to the commencement of, and following completion of, the remediation, including photographs and/or video images of the flooring and major components such as cabinets, moldings, doors, intercom systems, and fixtures for every room and bathroom and, to the extent possible, security systems, appliances and audio such as surround sound.

** The photographs do not need to be pictures taken specifically for the litigation. For example, family photographs or photographs taken for purposes of refinancing a mortgage are acceptable in the absence of other photographs.

    **Response:** All documents in Plaintiff's possession responsive to this request are attached as "Exhibit 7."

**PFS REQUEST FOR DOCUMENT PRODUCTION #8:** Please produce the following documentation concerning the remediation of the Property: The remediation contract and an itemization from the contractor who performed the remediation work of the materials used during the remediation, including, but not limited to, manufacturer, model number, and quantity.

8

**Response**: All documents in Plaintiff's possession responsive to this request are attached as "Exhibit 8."

**PFS REQUEST FOR DOCUMENT PRODUCTION #9**:   Please produce the following documentation concerning the remediation of the Property:  An itemized invoice from the contractor who performed the remediation work ("Itemized Invoice") showing the scope of work carried out.

**Response**: All documents in Plaintiff's possession responsive to this request are attached as "Exhibit 9."

**PFS REQUEST FOR DOCUMENT PRODUCTION #10**:   Please produce the following documentation concerning the remediation of the Property:  Proof of payment of the Itemized Invoice and any other expenses, such as cancelled checks, credit card statements, etc.

**Response**: All documents in Plaintiff's possession responsive to this request are attached as "Exhibit 10."

**PFS REQUEST FOR DOCUMENT PRODUCTION #11**:   Please produce the following documentation concerning the remediation of the Property:  A floor plan of the Affected Property with dimensions.

**Response**: All documents in Plaintiff's possession responsive to this request are attached as "Exhibit 11."

**PFS REQUEST FOR DOCUMENT PRODUCTION #12**:   Please produce the following documentation concerning the remediation of the Property:  An Environmental Certificate.

**Response**: All documents in Plaintiff's possession responsive to this request are attached as "Exhibit 12."

**PFS REQUEST FOR DOCUMENT PRODUCTION #13**:   Please produce the following documentation concerning the remediation of the Property:  An Owner Disclosure Affidavit in the form attached as Exhibit 1, which includes a certification that the materials provided comprise all of the available documentation regarding the following:  The drywall that was in the Affected Property prior to the commencement of the remediation; and, the scope, extent, and cost of the remediation.

**Response**: All documents in Plaintiff's possession responsive to this request are attached as "Exhibit 13."

9

**VERIFICATION**

I hereby verify that the responses to the Plaintiff Fact Sheet are correct to the best of my knowledge.


_____          01 - 14 - 2019
Signature of Plaintiff                                    Date


CARL  G  MOORE
Printed Name

# Exhibit 1

# Exhibit 2

# Exhibit 3

# Property Screening Report

## 5427 Kedgewick Lane, North Port, FL 34288

Screening Date:
1-24-17

Prepared for:
Carl Moore

Report Number:
FL09-0508

CDS Inspector:
Julie Sommerville



Inspections and documentation from leading experts



Inspections and documentation from leading experts

January 29, 2017

Carl Moore
5427 Kedgewick Lane
North Port, FL 34288

RE: Chinese Drywall Screening Report Number FL09-0508

Mr. Moore,

At your request, an inspection of the above referenced property (5427 Kedgewick Ln.) was performed on January 24, 2017. Chinese Drywall Screening, LLC is pleased to submit the enclosed report which is a professional opinion based on a visual inspection of the accessible materials and x-ray fluorescence testing of the drywall throughout the property.

Based on our visual observations coupled with known affects from reactive drywall, CDS is of the opinion that reactive drywall is present in the above referenced property. Corrosive drywall markings listed in MDL 2047 that were discovered are:

| No. | Drywall Mfg | Markings on Drywall | Location in home |
|-----|-------------|---------------------|------------------|
| 9 | Knauf-Tianjin | "…TIANJIN…" | Garage ceiling |
| 9 | Knauf-Tianjin | "…NA-ASTM…" | possibly laundry room |

Another type of drywall that is domestic and not known to be corrosive is National Gypsum/GridMarx. This type was also observed, along with KPT, on the garage ceilings and on the interior ceilings.

Based on the **2,574 sf** (including garage) size of the home with **10' average ceiling height,** we estimate that there is **11,000 sf of drywall** in the home.

We trust that this report meets or exceeds your expectations. Please feel free to contact us should you have any questions regarding our report or if we may be of further assistance to you.

Sincerely,

Howard Ehrsam, P.E., LEED AP
CGC 1509717
on behalf of Chinese Drywall Screening, LLC

Enclosures: Report with Photo Exhibit



# Overview

## Overview of Subject Property



**Client**: Carl Moore

**Address:** 5427 Kedgewick Lane
North Port, FL 34288

**Size:** Total 2,574 sf (including garage)

**Exterior wall types:** CBS - Concrete Block exterior

**Completion date:** 2007-08



# Summary Narrative

## Observations and Conclusions

### Observations

- Blackening or "black deposits" defined to be copper sulfide by Unified Engineering File No. 4050 associated with reactive drywall were not observed on the A/C evaporator coils and the external refrigerant lines.  The unit was replaced in 2014.
- Blackening was not observed on the exposed wiring of inspected receptacles and switches throughout the majority of the property
- Blackening was observed on the exposed wiring of the receptacle in the laundry room where Chinese drywall was determined to be present.
- Blackening was not observed on the water heater located in the garage.
- Blackening was not observed on the copper plumbing water lines under the kitchen and bathrooms sinks.
- Faucets and other plumbing trim in the master bathroom had no corrosive spotting.
- Desilvering was not observed on the mirrors.
- Walls and ceilings were tested utilizing a Thermo Fisher X-ray fluorescence (XRF) analyzer throughout the property.
    - Portions of the ceiling in the garage had corrosive drywall markings matching **MDL 2047 Drywall Index No. 9 – Knauf-Tianjin** .
    - Laundry room had drywall with XRF readings similar to Knauf-Tianjin (KPT) with strontium levels around 2,700 ppm
- Markings for National Gypsum/GridMarx were observed on the interior and garage ceilings.
- There was no odor associated with corrosive drywall.

### Conclusions

Based on our visual observations, testing, experience and current state of knowledge in the industry, Chinese Drywall Screening, LLC is of the professional opinion that reactive Chinese drywall **is** present in several areas of the subject property, specifically **MDL 2047 Drywall Index No. 9 – Knauf-Tianjin.**  Inspection and testing was done for general information only. Additional testing involving cutting and scraping of walls would be needed to verify actual extents of the various types of drywall.

It is the intent of CDS to inform and empower the Client with enough knowledge to make the best, well informed decision that is in the best interests of the Client.  Towards that end, we recommend that you contact an attorney to discuss your legal rights, including potential claims against your builder, along with the installer, supplier and manufacturer of the drywall. Additional claims against parties of the real estate transaction may also be explored.



Inspections and documentation from leading experts

# Overview

## Overview of Subject Property



**Client**: Carl Moore

**Address:** 5427 Kedgewick Lane
North Port, FL 34288

**Size:** Total 2,574 sf (including garage)

**Exterior wall types:** CBS - Concrete Block exterior

**Completion date:** 2007-08



# Summary Narrative

## Observations and Conclusions

### Observations

- Blackening or "black deposits" defined to be copper sulfide by Unified Engineering File No. 4050 associated with reactive drywall were not observed on the A/C evaporator coils and the external refrigerant lines.  The unit was replaced in 2014.
- Blackening was not observed on the exposed wiring of inspected receptacles and switches throughout the majority of the property
- Blackening was observed on the exposed wiring of the receptacle in the laundry room where Chinese drywall was determined to be present.
- Blackening was not observed on the water heater located in the garage.
- Blackening was not observed on the copper plumbing water lines under the kitchen and bathrooms sinks.
- Faucets and other plumbing trim in the master bathroom had no corrosive spotting.
- Desilvering was not observed on the mirrors.
- Walls and ceilings were tested utilizing a Thermo Fisher X-ray fluorescence (XRF) analyzer throughout the property.
    - Portions of the ceiling in the garage had corrosive drywall markings matching **MDL 2047 Drywall Index** **No. 9 – Knauf-Tianjin** .
    - Laundry room had drywall with XRF readings similar to Knauf-Tianjin (KPT) with strontium levels around 2,700 ppm
- Markings for National Gypsum/GridMarx were observed on the interior and garage ceilings.
- There was no odor associated with corrosive drywall.


### Conclusions

Based on our visual observations, testing, experience and current state of knowledge in the industry, Chinese Drywall Screening, LLC is of the professional opinion that reactive Chinese drywall **is** present in several areas of the subject property, specifically **MDL 2047 Drywall Index No. 9 – Knauf-Tianjin.**  Inspection and testing was done for general information only. Additional testing involving cutting and scraping of walls would be needed to verify actual extents of the various types of drywall.

It is the intent of CDS to inform and empower the Client with enough knowledge to make the best, well informed decision that is in the best interests of the Client.  Towards that end, we recommend that you contact an attorney to discuss your legal rights, including potential claims against your builder, along with the installer, supplier and manufacturer of the drywall. Additional claims against parties of the real estate transaction may also be explored.



Inspections and documentation from leading experts

What you can do today: Three primary items to consider for immediate action are: 1) Mortgage forbearance if applicable, 2) Property tax reduction and 3) Legal representation regarding claims against the manufacture and parties involved in the real estate transaction.

Time is of the essence and time frames for filing claims may end. It is critical to understand the implications with these and we recommend seeking professional consultation for details.

Due to the limited presence of Chinese drywall and the associated affects, the property qualifies for selective remediation to avoid the large expense of a full scale demolition of the property to the shell. Contact our office for more information regarding various pros and cons along with protocols, environmental certification, etc.

For owners of properties with reactive drywall, it important to understand preservation of evidence when selling or remediating as well as the importance of 3rd party verification of the remediation. More information is available on our website or toll free at 855- CDW-Help (855-239-4357).



# Exhibit A

# Certification

## Certification of the Engineer

The undersigned do hereby certify that, to the best of our knowledge and belief:

- The statements of fact contained within this report are true and correct.

- As applicable, the statements of opinions have certain limitations. It is not feasible and is impossible to confirm 100% of corrosive drywall was either removed or is not present. There are several conditions we have seen that could prevent discovery without a more exhaustive investigation. They include, but are not limited to:
    - Low Strontium, corrosive drywall that is domestic and non-homogeneous.
    - Limited amounts of corrosive drywall in inaccessible areas or installed in a way that would seclude it from available receptacles and switches.
    - Limited amounts of high strontium drywall covered with joint compound or heavy textures hindering detection by x-ray fluorescence.
    - Variable amounts of low off-gassing drywall or drywall with corrosive recycled gypsum.

- We have no present or prospective interest in the property that is the subject of this report and we have no personal interest with respect to the parties involved. We have no bias with respect to the property that is the subject of this report or to the parties involved with this agreement.

- The information in this report is based on the existing conditions of the structures materials, documents, and information (written or verbal) supplied by the contractor, the owner or their representatives, and our observations during the inspection.

- Our compensation or engagement in this assignment is not contingent upon the development or reporting of a predetermined conclusion that favors the cause of the client, the remediator, the attainment of a stipulated result, or the occurrence of a subsequent event directly related to the intended use of this report.

- Any use of this report by any other parties without our expressed or written consent is prohibited. Should another individual or entity rely on this analysis or its conclusions without our consent, that shall indemnify Chinese Drywall Screening, LLC, its employees, and service providers from all damages, losses, or expenses that may occur as a result of its use.

- Our report is based on information made available to us at the time of inspection. Should additional information become available, we reserve the right to determine the impact, if any, of the new information on our opinions and conclusions and to revise our opinions and conclusions if necessary and warranted by the discovery of the additional information.

- The provided services and documentation have been completed to the best of our knowledge and based on current known facts regarding reactive drywall.

Howard Ehrsam, P.E., LEED AP
CGC 1509717
on behalf of Chinese Drywall Screening, LLC



# Scope of Screening

## Scope of Screening Services Performed

Chinese Drywall Screening, LLC (CDS) conducted a detailed visual inspection of the various elements within the home that typically react to the presence of reactive drywall. Some of the known affects are pitting and blackening copper, tarnishing silver, corroding and spotting chrome and brass, and delaminating mirrors.

Based on the experience, knowledge and ability to recognize these affects, CDS completed a thorough inspection of the various elements of the home containing these materials. These elements include, but are not limited to:

- Air conditioning components
- Gas lines (if applicable)
- Water lines
- Electrical wiring
- Coaxial cabling
- Refrigerator components
- Mirrors
- Plumbing fixtures and drains

Some of the above elements were photographed during the inspection and are attached as "Photo Narrative Exhibit". Refer to the photographs for specific observations.

Items that may be affected by reactive drywall but were not inspected by CDS include, but are not limited to:

- Large appliances
- Small appliances
- Televisions
- Audio/video equipment
- Personal possessions
- Smoke detectors
- Doorbells
- Security systems
- Control wiring
- Thermostats

The following engineering report is utilized as a reference in regards to the visual effects on copper: Unified Engineering Report File 4050 dated March 17, 2009. Unified Engineering, Inc; 3056 Weber Drive, Aurora, IL 60502.



# Scope of Screening

## Scope of Services (continued)

### X-ray Fluorescence (XRF) for Strontium

XRF analyzers are handheld instruments used predominantly to evaluate the presence of metal constituents in building materials or other products.  XRF works by exposing a material to high energy x-rays and measuring those x-rays and comparing them to the known and unique pattern of x-rays produced by each element.  For help in identifying corrosive drywall, XRF is used to determine levels of strontium (Sr) present within the gypsum of the drywall throughout the property.

Strontium is a light metal that is a common, naturally occurring element found within the earth.  Certain geographical regions have higher concentrations than others that can translate to the origin of the raw materials.  Strontium levels above 1850 ppm have been associated with drywall of Chinese origin.  However, high levels of strontium do exist in drywall from other origins and testing must be used in conjunction with other means to produce proper conclusions.

The attenuating effects of joint compound and textures could inhibit the detection of small amounts of corrosive drywall.  Furthermore, corrosive drywall could also be present in inaccessible areas that include, but are not limited to, walls above drop ceilings, fire stopping, behind tile, behind cabinets, under raised floor systems, etc.  However, the potential for these conditions can be reduced or eliminated with proper property evaluation and corrosion evaluation.



Photo Exhibit
5427 Kedgewick Lane
North Port, FL 34288





# Photo Exhibit
## 5427 Kedgewick Lane
## North Port, FL 34288



KPT Markings

A   N   J   I   N

Bottom portion of "TIANJIN"



**Photo Exhibit**
**5427 Kedgewick Lane**
**North Port, FL 34288**







**Photo Exhibit**
**5427 Kedgewick Lane**
**North Port, FL 34288**

  

  

  

  



# Photo Exhibit
## 5427 Kedgewick Lane
## North Port, FL 34288

  

  

  

  



**Photo Exhibit**
**5427 Kedgewick Lane**
**North Port, FL 34288**

  

  

  

  



Photo Exhibit
5427 Kedgewick Lane
North Port, FL 34288





# Photo Exhibit
## 5427 Kedgewick Lane
## North Port, FL 34288



# Exhibit 4

# Exhibit 5

# Exhibit 6

# Exhibit 7

# Exhibit 8

# Exhibit 9

# Exhibit 10

# Exhibit 11

# Exhibit 12

# Exhibit 13

# Exhibit 14