# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL NO. 2047<br>SECTION: L<br>JUDGE FALLON<br>MAG. JUDGE WILKINSON |
| THIS DOCUMENT RELATES TO:<br><br>Nos. 17-8288; 17-8284; 17-8286 | |

## SUGGESTION OF REMAND, OPINION AND ORDER

### I. BACKGROUND

From 2004 through 2006, the housing boom in Florida and rebuilding efforts necessitated by Hurricanes Rita and Katrina led to a shortage of construction materials, including drywall. As a result, drywall manufactured in China was brought into the United States and used to construct and refurbish homes in coastal areas of the country, notably the Gulf Coast and East Coast. Sometime after the installation of the Chinese drywall, homeowners began to complain of emissions of foul-smelling gas, the corrosion and blackening of metal wiring, surfaces, and objects, and the breaking down of appliances and electrical devices in their homes. *See In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, 894 F. Supp. 2d 819, 829–30 (E.D. La. 2012), *aff'd*, 742 F.3d 576 (5th Cir. 2014).

In an attempt to recoup their damages, these homeowners began to file suit in various state and federal courts against homebuilders, developers, installers, realtors, brokers, suppliers, importers, exporters, distributors, and manufacturers who were involved with the Chinese drywall. Because of the commonality of facts in the various cases, this litigation was designated

as a multidistrict litigation in accordance with 28 U.S.C § 1407. Pursuant to a Transfer Order from the United States Judicial Panel on Multidistrict Litigation on June 15, 2009, all federal cases involving Chinese drywall were transferred and consolidated for pretrial proceedings in MDL 09-2047 before this Court.

The Chinese drywall at issue was largely manufactured by two groups of defendants: (1) the Knauf Entities and (2) the Taishan Entities. The litigation has focused upon these two entities and their downstream associates and has proceeded on strikingly different tracks for the claims against each group.

## II. PROCEDURAL HISTORY

### A. *The Knauf Defendants*

The Knauf Entities are German-based, international manufacturers of building products, including drywall, whose Chinese subsidiary, Knauf Plasterboard (Tianjin) Co., Ltd. ("KPT"), advertised and sold its Chinese drywall in the United States. The Knauf Entities are named defendants in numerous cases consolidated with the MDL litigation and litigation in state courts.

The Knauf Entities first entered their appearance in the MDL litigation on July 2, 2009 and discovery quickly ensued. Thereafter, the Court presided over a bellwether trial in *Hernandez v. Knauf Gips KG*, Case No. 09-6050, involving a homeowner's claims against KPT for defective drywall. The Court found in favor of the plaintiff family in *Hernandez*, issued a detailed Findings of Fact and Conclusions of Law, and entered a Judgment in the amount of $164,049.64, including remediation damages in the amount of $136,940.46—which represented a remediation cost of $81.13 per square foot based on the footprint square footage of the house.

Subsequently, the Knauf Entities agreed to institute a pilot remediation program utilizing the remediation protocol formulated by the Court from the evidence in *Hernandez*. The pilot

program included about fifty homes. At the Court's urging, the parties began working together to monetize this program and make it available to a broader class of plaintiffs.

On December 20, 2011, the Knauf Entities and the PSC entered into a global, class Settlement Agreement ("Knauf Settlement Agreement"), which was designed to resolve all Knauf-related, Chinese drywall claims. Under the terms of the Knauf Settlement, homeowners had the choice of a sum certain or having the house totally remediated in addition to receiving reasonable costs and attorney fees. Furthermore, after a jury trial in a bellwether case, numerous defendants in the chain-of-commerce with the Knauf Entities entered into class settlement agreements, the effect of which settles almost all of the Knauf Entities' chain-of-commerce litigation. The total amount of the Knauf Settlement is estimated at $1.1 billion.

Although the Court occasionally has to deal with settlement administration and enforcement issues, the Knauf portion of this litigation is now resolved.

### B. *The Chinese Defendants*

The litigation against the Chinese entities has taken a different course. The Chinese Defendants in the litigation include the principal Chinese-based Defendant, Taishan, namely, Taishan Gypsum Co. Ltd. ("TG") and its wholly-owned subsidiary, Taian Taishan Plasterboard Co., Ltd. ("TTP") (collectively "Taishan" or "Taishan Entities"). Other Chinese-based Defendants include the CNBM and BNBM Entities.

The Court's initial inquiry regarding Taishan involved four cases in this MDL: (1) *Germano v. Taishan Gypsum Co.* (Case No. 09-6687); (2) *The Mitchell Co. v. Knauf Gips KG* (Case No. 09-4115); (3) *Gross v. Knauf Gips KG* (Case No. 09-6690); and (4) *Wiltz v. Beijing New Building Materials Public Ltd*. (Case No. 10-361).

The first issues involving Taishan arose when Taishan failed to timely answer or otherwise enter an appearance in *Mitchell* and *Germano*, despite the fact that it had been properly served in each case. Thus, after an extended period of time, the Court entered preliminary defaults against Taishan in both of these cases.

Thereafter, the Court moved forward with an evidentiary hearing in furtherance of the preliminary default in *Germano* on the Plaintiffs' claimed damages. At this hearing, the Plaintiffs presented evidence specific to seven individual properties, which served as bellwether cases. Following this hearing on February 19 and 20, 2010, the Court issued detailed Findings of Fact and Conclusions of Law. On May 10, 2010, the Court issued a Default Judgment against Taishan in *Germano* and in favor of the Plaintiffs in the amount of $2,609,129.99. R. Doc. 2380, 3013. On June 10, 2010, the last day to timely appeal, Taishan filed a Notice of Appeal of the Default Judgment in *Germano* and entered its appearance in *Germano* and *Mitchell*. Taishan challenged this Court's jurisdiction over the Defendants. As a result, because this was the first instance where Defendants raised jurisdictional issues, the Fifth Circuit remanded the case to this Court to determine whether the Court indeed has jurisdiction over Taishan.

After Taishan entered its appearance in the MDL, it quickly sought to have the Default Judgment in *Germano* and the Preliminary Default in *Mitchell* vacated for lack of personal jurisdiction. In the fall of 2010, the Court directed the parties to commence the personal jurisdiction discovery necessary to resolve Taishan's motions to vacate. Sometime after the initial discovery, the parties agreed to expand the discovery beyond the *Germano* and *Mitchell* cases to other cases in which Taishan had been served, including *Gross* and *Wiltz*.

Formal personal jurisdiction discovery of Taishan began in October 2010. Discovery included the production of both written and electronic documents, as well as depositions of

Taishan's corporate representatives, with each type of discovery proceeding in a parallel fashion. This discovery has often been contentious, requiring close supervision by the Court. The Court has presided over regularly-scheduled status conferences to keep the parties on track and conducted hearings and issued rulings to resolve numerous discovery-related disputes.

The first Taishan depositions were held in Hong Kong on April 4-8, 2011. Thirteen attorneys traveled to Hong Kong and deposed several Taishan witnesses. However, upon return to the United States, several motions were filed seeking to schedule a second round of Taishan depositions as a result of problems during the depositions and seeking discovery sanctions against Taishan. The Court, after reviewing the transcripts from the depositions, concluded that the depositions were ineffective because of disagreement among interpreters, counsel and witnesses, translation difficulties, speaking objections, colloquy among counsel and interpreters, and in general, ensuing chaos.

In view of the foregoing, the Court scheduled the second round of Taishan depositions for the week of January 9, 2012 in Hong Kong. Due to the problems experienced during the first depositions, the Court appointed a Federal Rule of Evidence 706 expert to operate as the sole interpreter at the depositions, and the Court decided to travel to Hong Kong to preside over the depositions. Counsel for the interested parties and the Court traveled to Hong Kong for these depositions. Because the Court was present at the depositions, objections were ruled upon immediately and the majority of problems that plagued the first round of depositions were absent. Also, the Court was able to observe the comments, intonation, and body language of the deponents. Upon return from Hong Kong, the parties informed the Court that minimal further discovery was necessary before briefing could be submitted on Taishan's personal jurisdiction challenges.

In April 2012, Taishan filed various motions, including its motions to dismiss for lack of personal jurisdiction. On June 29, 2012, over three years since the creation of this MDL, and after a year-and-a-half of personal jurisdiction discovery on Taishan, the Court presided over a hearing on Taishan's motions. The Court coordinated its hearing with the Honorable Joseph Farina of the Florida state court, who had a similar motion involving Taishan's challenge to personal jurisdiction.

On September 4, 2012, this Court issued a 142-page Order regarding Taishan's motions in *Germano*, *Mitchell*, *Gross*, and *Wiltz*, in which the Court denied the motions to dismiss and held that it maintained personal jurisdiction over Taishan. *In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, 894 F. Supp. 2d 819 (E.D. La. 2012). The Court also ruled that Taishan was operating as the alter ego of TG and TPP. The Court certified an interlocutory appeal, and the Fifth Circuit granted permission to appeal.

In January and May of 2014, two different panels of the Fifth Circuit affirmed this Court's ruling and held that this Court maintained personal jurisdiction over Taishan, TG and TPP. *In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, 753 F.3d 521 (5th Cir. 2014); *In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, 742 F.3d 576 (5th Cir. 2014). The time for writ of certiorari passed, and the issue of personal jurisdiction over Taishan became firmly and finally settled. Nevertheless, Taishan refused to pay the Germano judgment or voluntarily participate in this litigation.

On June 20, 2014, the Court ordered Taishan to appear in open court on July 17, 2014 to be examined as a judgment debtor. Taishan failed to appear for the July 17, 2014 Judgment Debtor Examination, and the Court held Taishan in contempt and ordered that Taishan pay $15,000.00 in attorney's fees to Plaintiffs' counsel; that Taishan pay $40,000.00 as a penalty for

contempt; that Taishan and any of its affiliates or subsidiaries be enjoined from conducting any business in the United States until or unless it participated in this judicial process; and that if Taishan violated the injunction, it would be obligated to pay a further penalty of 25-percent of the profits earned by the Company or its affiliate who violate the Order for the year of the violation.

On July 23, 2014, Plaintiffs filed their Omnibus Motion for Class Certification pursuant to Rule 23(b)(3). Taishan did not appear and, on September 26, 2014, this Court certified a class of all owners of real properties in the United States, who are named Plaintiffs on the complaints in *Amorin*, *Germano*, *Gross*, and/or *Wiltz* (i.e., not an absent class member), asserting claims for remediated damages arising from, or otherwise related to Chinese Drywall manufactured, sold, distributed, supplied, marketed, inspected, imported or delivered by the Taishan Defendants.

Taishan finally entered an appearance with the Court in February 2015, and, to satisfy the contempt, Taishan paid the judgment and both the sum of $15,000.00 in attorney's fees to Plaintiffs' counsel and the contempt penalty of $40,000.00 in March 2015. On March 17, 2015, the Court ordered Taishan and the BNBM and CNBM Entities to participate in expedited discovery related to "the relationship between Taishan and BNBM/CNBM, including whether affiliate and/or alter ego status exists."

In March 2016, this Court granted CNBM Group's motion to dismiss, finding it was an "agent or instrumentality of a foreign state" within the meaning of the Foreign Sovereign Immunities Act ("FSIA"), and therefore outside the jurisdiction of this Court under 28 U.S.C. § 1603(b). The Court determined that the tortious activity exception did not apply because the alleged tortious conduct did not occur within the United States under 28 U.S.C. § 1605(a)(5). Further, the Court found that the commercial activity exception did not apply in this case, as

CNBM Group did not directly manufacture, inspect, sell, or market drywall in the United States. Because Plaintiffs failed to present evidence sufficient to overcome the presumption that CNBM Group was entitled to independent status for purposes of the FSIA, the Court granted the motion and dismissed CNBM Group from the present litigation.

On April 21, 2017, the Court issued a 100-page opinion related to jurisdictional challenges being raised in four separate motions filed by Defendants. The Court found that Taishan was an agent of BNBM under Florida and Virginia law, such that Taishan's contacts in Florida and Virginia are imputed to BNBM. This Court further found that CNBM, BNBM Group, and BNBM were part of a single business enterprise with Taishan under Louisiana law, such that Taishan's contacts in Louisiana may be imputed to Defendants, and the Court has jurisdiction over Defendants in relation to Plaintiffs' claims based on Louisiana law.

Also on April 21, 2017, the Court issued its Findings of Fact and Conclusions of Law related to the June 9, 2015 damages hearing, and adopted Plaintiffs' damage calculations methodology related to remediation of properties.

On May 22, 2017, Defendants filed a motion pursuant to 28 U.S.C. § 1292(b) to certify interlocutory appeal from this Court's jurisdiction order. Because the Court found that its Order and Reasons involved a controlling question of law as to which there is substantial ground for difference of opinion, and because the Court further found that an interlocutory appeal from that Order and Reasons could materially advance the ultimate termination of this MDL, on August 4, 2017, the Court certified an interlocutory appeal to the Fifth Circuit pursuant to 28 U.S.C. § 1292(b).

On August 1, 2017, Defendants filed a motion to dismiss for lack of personal jurisdiction following the recent U.S. Supreme Court case of B*ristol–Myers Squibb v. Superior Court of*

*California*.  Based on *Bristol–Myers Squibb*, Defendants contested this Court's findings of personal jurisdiction, class certification, and agency relationship.  On August 14, 2017, Defendants filed a petition for permission to appeal pursuant to 28 U.S.C. § 1292(b) in the Fifth Circuit, in which they argued that the *Bristol–Myers Squibb* opinion impacts questions raised on appeal.  On August 24, 2017, this Court vacated its 28 U.S.C. § 1292(b) certification order to avoid piecemeal litigations.  The Court noted its duty to address the effect of *Bristol–Myers Squibb* on the jurisdictional issue before certifying the matter to the Fifth Circuit.  Subsequently, on November 30, 2017, the Court denied Defendants' motion to dismiss, holding that *Bristol–Myers Squibb* does not change this Court's jurisdictional findings and class certification.

On January 2, 2018, the Court denied Defendants CNBM Company, BNBM Group, and BNBM PLC's motion to vacate the default judgments against them. On March 5, 2018, the Court reinstated its order to certify interlocutory appeal of its April 2017 jurisdiction opinion arising from the Chinese Defendants' agency relationship.  The Court, nevertheless, denied Defendants' request to certify the interlocutory appeal of its opinion involving Bristol–Myers Squibb's impact (or lack thereof) on the Court's personal jurisdiction analysis. The Court noted that the Supreme Court's opinion in Bristol–Myers Squibb did not address class actions and therefore was inapplicable to this MDL.  Additionally, two separate panels on the Fifth Circuit had already reaffirmed the Court's original personal jurisdiction analysis in 2014.  Any further litigation on the issue of personal jurisdiction for the Chinese Defendants would cause needless delay and waste judicial resources. BNBM and CNBM petitioned the Fifth Circuit for permission to appeal this Court's jurisdictional order, and the jurisdictional appeal is currently pending.

In 2018, the Court suggested to the Judicial Panel on Multidistrict Litigation that the Florida and Virginia *Amorin* actions be remanded to the transferor courts. R. Docs. 21242,

21695. In 2019, the Court issued a suggestion of remand with respect to the Florida and Virginia *Brooke* actions as well. R. Doc. 22138, 22139.

A significant development in the Taishan aspect of this litigation occurred in the spring of 2019. On May 22 and 23, 2019, the parties underwent mediation with the goal of resolving the entirety of the *Amorin* and *Brooke* matters pending in the Eastern District of Louisiana, the Southern District of Florida, and the Eastern District of Virginia. On May 23, 2019, the parties agreed to a Term Sheet, and negotiations continued in person and by telephone for three months. All matters in the *Amorin* and *Brooke* actions were accordingly stayed by the remand courts and this Court, pending the execution of a Settlement Agreement between the parties. The stay was extended several times and preliminary approval of the Settlement Agreement was granted by the Court on August 29, 2019. R. Doc. 22314.

The Taishan Settlement Agreement was granted final approval on January 10, 2020. R. Doc. 22460. Under the terms of the Settlement Agreement, the Taishan Defendants agreed to pay $248,000,000 to fully resolve all claims of the *Amorin* class, the plaintiffs named in the *Brooke* complaints, and any other property owners with Chinese drywall attributable to Taishan ("Absent Class Members"). The Settlement specifically excludes 498 Florida *Amorin* Plaintiffs who received a separate settlement from Taishan (the "Parker Waichman Settlement"), the plaintiffs involved in the *Mitchell* action,[1] and plaintiffs whose claims were previously voluntarily dismissed or dismissed for failure to complete a Supplemental Plaintiff Profile Form. R. Doc. 22305-2 at 5. All class members were provided with notice of the Settlement and

---

[1] On July 8, 2019, the Court denied Mitchell's motion seeking certification of a homebuilder class. R. Doc. 22287. On August 22, 2019, the Court suggested that the *Mitchell* matter be remanded to state court in Florida. The Court noted that remand was appropriate because the purpose behind consolidating these related actions in this Court had been served. The Court had addressed numerous discovery disputes, dispositive motions, and other pretrial issues involving facts and legal questions common to the various cases in this MDL proceeding. No further pretrial motions raising common questions were pending in these cases, and remand to the transferor court appeared to be in the interest of judicial efficiency and fairness to the parties.

informed of their right to opt-out from its terms and proceed independently against Taishan. The opt-out and objection period closed on November 27, 2019. The objections were collected by Settlement Class Counsel and submitted to the Court for consideration at the Final Fairness Hearing on December 11, 2019. Settlement Class Counsel received ninety-two opt-out requests, although not all were compliant with the Settlement Agreement's opt-out procedure. Of the compliant requests, seventy-eight were from known Class Members, [2] and twelve were from Absent Class Members.

### III. SUGGESTIONS OF REMAND

The instant suggestions of remand involve claims asserted by plaintiffs who opted-out from the Taishan Settlement. After managing this MDL for over ten years, the Court concludes that the purposes behind consolidating these related actions in this Court have now been served. The Court had addressed numerous discovery disputes, dispositive motions, and other pretrial issues involving facts and legal questions common to the various cases in this MDL proceeding. Notably, the Court has also overseen multiple historic settlements within this MDL.

Given the extensive motions practice, bellwether trials, and settlements that have occurred in this MDL, the Court finds it appropriate to transfer the cases back to the transferor courts. This Court recognizes that parties may still need to conduct some discovery before trial. Nevertheless, this discover is case-specific; thus, it can, and perhaps should, be supervised by the transferor court. This Court has worked diligently for over a decade, and transferor courts and parties are now equipped with abundant resources to steer these cases to a fair and just conclusion. At this point in the litigation, centralizing these claims has minimal benefit to the

---

[2] This represents about 2% of known Class Members.

parties; local courts are well-suited to evaluate the remaining issues, including liability, property damages, and other losses incurred by plaintiffs.

The instant suggestion of remand relates to *Lela and Melinda Allen, et al. v. Taishan Gypsum Co., Ltd., et al.*, *Randy Bayne, et al. v. Taishan Gypsum Co., Ltd., et al.*, and *Kelly Bentz, et al. v. Taishan Gypsum Co., Ltd., et al.*

The *Allen* action was filed in the Southern District of Mississippi on August 1, 2017 and was docketed there as No. 17-00217. On August 31, 2017, the Judicial Panel on Multidistrict Litigation transferred *Allen* to the MDL, and it was docketed here as No. 17-8288.

*Allen* is an action that this Court stayed before final approval of the Class Settlement with Taishan on January 10, 2020. Five (5) claimants in the *Allen* action elected to opt out of the Class Settlement with Taishan. *See* Rec. Doc. 22397-3 ("List of Opt-Out Plaintiffs"); incorporated by Judgment Pursuant to Fed. R. Civ. P. 54(b) Granting Final Approval to the Class Settlement with Taishan, MDL Rec. Doc. 22466 at 3.

Thus, the remaining plaintiffs pursuing claims in *Allen* are:

1. Lott, Dolly
2. Merrell, Brandi
3. Patel, Sanjay and Sharoj
4. Pruitt, Troyce and Rhonda
5. Punch, Dwayne and Dolly

The *Bayne* action was filed in the Northern District of Alabama on August 1, 2017 and was docketed there as No. 17-01286. On August 31, 2017, the Judicial Panel on Multidistrict Litigation transferred *Bayne* to the MDL, and it was docketed here as No. 17-8284.

*Bayne* is an action that this Court stayed before final approval of the Class Settlement with Taishan on January 10, 2020. Ten (10) claimants in the *Bayne* action elected to opt out of the Class Settlement with Taishan. See Rec. Doc. 22397-3 ("List of Opt-Out Plaintiffs"), incorporated

by Judgment Pursuant to Fed. R. Civ. P. 54(b) Granting Final Approval to the Class Settlement with Taishan, MDL Rec. Doc. 22466 at 3.

Thus, the remaining plaintiffs pursuing claims in *Bayne* are:
1. 1st Franklin Financial Corp.
2. Anderson, John
3. Banks, Thomas S. and Anne S.
4. Bayne, Randy
5. Duncan, Calvin Anthony and Debra
6. Ellison, Bryon
7. Eves, Royce
8. Hosey, Terry
9. Kennedy, John
10. Spain, Megan L. and Gregory C.

The *Bentz* action was filed in the Northern District of Georgia on August 1, 2017 and was docketed there as No. 17-02892. On August 31, 2017, the Judicial Panel on Multidistrict Litigation transferred *Bentz* to MDL 2047, and it was docketed here as No. 17-8286.

*Bentz* is an action that this Court stayed before final approval of the Class Settlement with Taishan on January 10, 2020. Six (6) claimants in the *Bentz* action elected to opt out of the Class Settlement with Taishan. See Rec. Doc. 22397-3 ("List of Opt-Out Plaintiffs"), incorporated by Judgment Pursuant to Fed. R. Civ. P. 54(b) Granting Final Approval to the Class Settlement with Taishan, MDL Rec. Doc. 22466 at 3.

Thus, the remaining plaintiffs pursuing claims in *Bentz* are:
1. Bentz, Kelly
2. Cameron, James Andrew and Leslie Glenn
3. Cecchi, Clifford B. and Knight, Carl D.
4. James, Alishia
5. McKoy, Tony
6. Mitchell, Rhonda

## IV. CONCLUSION

Pursuant to JPML Rule 10.1(b)(i), the Court **SUGGESTS** that the *Allen* case be remanded to the transferor court in Mississippi for further proceedings. The remaining plaintiffs and defendants agree to the remand. Appendix A is the *Allen* complaint, which was originally filed in the Southern District of Mississippi. Appendix B is a copy of the Panel's conditional transfer order, which transferred said *Allen* case to this Court on August 31, 2017. Appendix C is a copy of the Complaints in Intervention which intervened three of the *Allen* claims into the *Allen* complaint.

The Court further **SUGGESTS** that the *Bayne* case be remanded to the transferor court in Alabama for further proceedings. The remaining plaintiffs and defendants agree to the remand. Appendix D is the *Bayne* complaint, which was originally filed in the Northern District of Alabama. Appendix E is a copy of the Panel's conditional transfer order, which transferred said *Bayne* case to this Court on August 31, 2017. Appendix F is a copy of the Complaints in Intervention which intervened seven of the *Bayne* claims into the *Bayne* complaint.

The Court further **SUGGESTS** that the *Bentz* case be remanded to the transferor court in Georgia for further proceedings. The remaining plaintiffs and defendants agree to the remand. Appendix G is the *Bentz* complaint, which was originally filed in the Northern District of Georgia. Appendix H is a copy of the Panel's conditional transfer order, which transferred said *Bentz* case to this Court on August 31, 2017. Appendix J is a copy of the Complaints in Intervention which intervened two of the *Bentz* claims into the *Bentz* complaint.

For the foregoing reasons, the Court finds that the purposes of the MDL have been accomplished in the *Allen, Bayne,* and *Bentz* actions and **SUGGESTS** that the remaining claims be remanded to the transferor courts in Mississippi, Alabama, and Georgia, respectively.

**IT IS SO ORDERED.**

New Orleans, Louisiana, this 31st day of March, 2020.

_____
Eldon E. Fallon
United States District Judge