**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| In Re:   **CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION** | **MDL 2047** |
| | **SECTION "L"** |
| **This document relates to:** | |
| *Elizabeth Bennett, et al v. Gebr. Knauf Verwaltungsgesellschaft, KG, et al* | **JUDGE ELDON FALLON** |
| | **MAGISTRATE JOSEPH WILKINSON, JR.** |
| **Case No. 14:cv-2722** | |

**MEMORANDUM IN SUPPORT OF**
**MOTION FOR SUMMARY JUDGMENT ON CLAIMS**
**ASSERTED BY RONALD RAY BOGARD AND LESLIE SUSAN BOGARD**

**MAY IT PLEASE THE COURT:**

Defendants, Knauf Gips KG and Gebr. Knauf (Tianjin) Co., Ltd. (the "Knauf Defendants"), through undersigned counsel, respectfully submit this Memorandum in Support of their Motion for Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure as to the claims asserted by Plaintiffs, Ronald "Ronnie" Ray Bogard and Leslie Susan Bogard ("Plaintiffs" or the "Bogards"), against them in Plaintiffs' Fifth Amended Class Action Complaint (the "Fifth Amended Complaint").

I.      **Factual and Procedural Background**

A.      **MDL 2047 and the Bennett Complaint**

From 2004 through 2006, a housing boom in parts of the United States and rebuilding efforts necessitated by Hurricanes Rita and Katrina in the Gulf South led to a shortage of construction materials, including drywall. As a result, drywall manufactured in China was brought into the United States and used to construct and refurbish homes in coastal areas of the country, notably the Gulf and East Coasts. Sometime after the Chinese drywall was installed, homeowners

began to complain of foul-smelling odors, the corrosion and blackening of metal wiring, surfaces, and objects, and the breaking down of appliances and electrical devices in their homes.[1] Many of these homeowners also began to complain of various physical afflictions believed to have been caused by the Chinese drywall.

These homeowners then began to file lawsuits in various state and federal courts against homebuilders, developers, installers, realtors, brokers, suppliers, importers, exporters, distributors, and manufacturers who were involved with the Chinese drywall. Because of the commonality of facts in the various cases, this litigation was designated as a multidistrict litigation. Pursuant to a Transfer Order from the United States Judicial Panel on Multidistrict Litigation ("JPML") on June 15, 2009, all federal cases involving Chinese drywall were consolidated for pretrial proceedings in MDL 09-2047 before this Court. On June 16, 2009, this Court entered PTO 1 regarding preservation of evidence, amongst other things. On October 9, 2009, this Court entered PTO 1(B) regarding preservation of evidence. On January 24, 2012, this Court entered PTO 1(I) regarding preservation of evidence.

Since the inception of MDL 2047 in June of 2009, numerous cases have been consolidated, containing thousands of claims; over 20,000 documents have been entered into the record, millions of documents have been exchanged in discovery, dozens of depositions have been taken, and over 30 Pretrial Orders have been issued; the Court has appointed steering committees and liaison counsel for plaintiffs, homebuilders, insurers, installers, and manufacturers; it has presided over monthly status conferences, hearings, and several bellwether trials.[2]

---

[1] *See In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, 894 F. Supp. 2d 819, 829–30 (E.D. La. 2012), *aff'd*, 742 F.3d 576 (5th Cir. 2014).

[2] *See* Order, Rec. Doc. No. 16570 at 3-4.

### B.     The Bennett Complaint and the Bogards

The original *Bennett* Complaint was filed on November 13, 2014 in the Northern District of Alabama and was subsequently transferred and consolidated into MDL 2047. The Complaint was amended multiple times to amend the parties and claims. The Fifth Amended Complaint was filed on May 14, 2018. Following the Fifth Amended Complaint, certain plaintiffs intervened. The Fifth Amended Complaint is the operative complaint in this matter.

Plaintiff, Ronald Bogard, first appeared in this action on June 7, 2016, when plaintiffs moved for leave to file their Third Amended Complaint, which was filed in the record pursuant to this Court's Order on June 24, 2016.[3] Plaintiff, Leslie Bogard, first appeared in the Complaint on October 31, 2019, after moving to intervene as a claimant on October 7, 2019.[4] The Bogards are now plaintiffs in the operative Fifth Amended Complaint and have made claims against the Knauf Defendants regarding the alleged presence of defective Chinese drywall installed in their property located at 451 Linda Drive, Biloxi, Mississippi 39531 (the "Property").

The Bogards were deposed on August 22, 2019.[5] In conducting discovery in this MDL and in the *Bennett* matter, this Court approved a Plaintiff Profile Form ("PPF"), a Supplemental Plaintiff Profile Form ("SPPF"), an Owner Disclosure Affidavit ("ODA"), and a Plaintiff Fact Sheet ("PFS") to be completed by Plaintiff and set forth full and complete answers regarding the claims and damage amounts sought by all Bennett Plaintiffs. The Bogards completed and signed the PPF on February 29, 2016, under penalty of perjury, and testified to the accuracy of its content.[6] The Bogards completed and Ronald Bogard signed the SPPF on March 26, 2018, under penalty of

---

[3] Rec. Docs. 20292, 20327, 20328
[4] Rec. Docs. 22334, 22357, 22358.
[5] *See* Deposition of Ronald Ray Bogard ("R. Bogard Depo.") and Deposition of Leslie Susan Bogard ("L. Bogard Depo.").
[6] Exhibit 1 to R. Bogard Depo. (attached as Exhibit A); R. Bogard Depo. at 11:23-25, 12:1-18.

perjury, and testified to the accuracy of its content.[7] The Bogards completed and signed the PFS on January 19, 2019, under penalty of perjury, and testified to the accuracy of its content.[8]

The Bogards initially purchased the Property in a damaged state post-Hurricane Katrina on February 3, 2006.[9] The Property was purchased for their daughter, who "needed a bigger house."[10] After remodeling the Property, which took a few months, the Bogards transferred ownership of the Property to their daughter on May 22, 2006.[11] The Bogards' daughter and her family lived on the Property nearly seven years until the Bogards repurchased the Property from their daughter on February 22, 2013.[12]

The Bogards testified that they repurchased the Property from their daughter because their daughter's family was continuously sick due to an environmental problem with the Property, and because their daughter could not afford to get another house if they did not repurchase the Property from her.[13] The Bogards stated that, prior to repurchasing the Property, they had a mold test completed and, once it came back negative, they decided that their daughters' children needed to move out of the Property.[14] The Bogards did not have an inspection completed prior to repurchase of the Property "as-is" and took no further steps to investigate the environmental problem in the Property after they received the mold test results, neither prior to repurchase nor in the three years

---

[7] Exhibit 2 to R. Bogard Depo. (attached as Exhibit B); R. Bogard Depo. at 12:19-25, 13:1-25, 14:1-16.

[8] Exhibit 3 to R. Bogard Depo. (attached as Exhibit C); R. Bogard Depo. at 14:17-25, 15:1-25, 16:1-25, 17:1-7.

[9] R. Bogard Depo. at 20:1-22, 23:3-11; *see also* Ex. B (Attachment 1 to SPPF, 02/03/2006 Settlement Statement).

[10] R. Bogard Depo. at 20:10.

[11] *Id.* at 23:24-25; *see also* Ex. B (Attachment 2 to SPPF, 05/22/2006 Warranty Deed).

[12] R. Bogard Depo. at 21:3-25; *see also* Ex. B (Attachment 7b to SPPF, 02/22/2013 Settlement Statement); Exhibit 4 to R. Bogard Depo. (attached as Exhibit D).

[13] R. Bogard Depo. at 21:7-12, 64:4-11, 65:14-20, 76:9-11; L. Bogard Depo. at 6:20-25, 7:1-22; Ex. B (Timeline History to SPPF).

[14] R. Bogard Depo. at 64:7-11.

following repurchase.[15] However, Ronald Bogard was aware of Chinese drywall as of 2013.[16] The Bogards have never resided on the Property.[17]

## II.     Legal Standard for Rule 56 Summary Judgment

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment is required if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[18] "A genuine dispute of material fact exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[19]

When seeking summary judgment, the movant bears the initial responsibility of demonstrating the absence of an issue of material fact with respect to those issues on which the movant bears the burden of proof at trial.[20] However, where the non-movant bears the burden of proof at trial, the movant may merely point to an absence of evidence, thus shifting to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial.[21]

On a motion for summary judgment, "[a]lthough 'the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor,' summary judgment remains appropriate if the non-movant's evidence is 'merely colorable' or 'not significantly probative.'"[22] "Only when 'there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party' is a full trial on the merits warranted."[23] Furthermore, "[d]iscovery is not a

---

[15] *Id.* at 22:1-9; Ex. A at 2.

[16] R. Bogard Depo. at 17:8-19.

[17] *Id.* at 29:8-9.

[18] Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.").

[19] *Bennett v. Hartford Ins. Co. of Midwest*, 890 F.3d 597, 604 (5th Cir. 2018) (quoting *Johnson v. World All. Fin. Corp.*, 830 F.3d 192, 195 (5th Cir. 2016) (internal quotation marks omitted)).

[20] *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).

[21] *Id.* at 322; *see also Moody v. Jefferson Parish School Board*, 2 F.3d 604, 606 (5th Cir. 1993).

[22] *Certain Underwriters at Lloyd's of London v. Lowen Valley View, L.L.C.*, 892 F.3d 167, 170 (5th Cir. 2018) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 255 (1986)).

[23] *Lindsey v. Sears Roebuck & Co.*, 16 F.3d 616, 618 (5th Cir. 1994) (quoting *Anderson*, 477 U.S. at 249).

prerequisite to the disposition of a motion for summary judgment."[24] "If it appears that further discovery will not provide evidence creating a genuine issue of material fact, the district court may grant summary judgment."[25]

### III.   Argument

#### A.  The Bogards' claims are barred by the statute of limitations.

The Bogards' claims are barred under the statute of limitations because their cause of action accrued over three years prior to initiating this action. Under Mississippi law, claims for damage to real property are subject to a three-year statute of limitations.[26] When the damage involves a latent defect, the statute of limitations is tolled "until the plaintiff has discovered, or by reasonable diligence should have discovered, *the injury*."[27] A latent injury exists when the plaintiff is "precluded from discovering harm or injury because of the secretive or inherently undiscoverable nature of the wrongdoing in question … [or] when it is unrealistic to expect a layman to perceive the injury at the time of the wrongful act."[28]

The Mississippi Supreme Court has clarified that "causes of action accrue 'upon discovery of the injury, *not discovery of the injury and its cause*.'"[29] "Knowledge of the cause of the injury is irrelevant to the analysis; rather, the inquiry is when the plaintiff knew or should have known of

---

[24] *Carder v. Cont'l Airlines, Inc*., 595 F. App'x 293, 299 (5th Cir. 2014) (quoting *Skiba v. Jacobs Entm't Inc.*, 587 Fed. Appx. 136, 138 (5th Cir. 2014) (per curiam)).

[25] *Raby v. Livingston*, 600 F.3d 552, 561 (5th Cir. 2010) (citing *Access Telecom, Inc. v. MCI Telecomm. Corp.*, 197 F.3d 694, 720 (5th Cir. 1999)); *see also Washington v. Allstate Ins. Co.*, 901 F.2d 1281, 1285 (5th Cir. 1990) ("This court has long recognized that a plaintiff's entitlement to discovery prior to a ruling on a motion for summary judgment is not unlimited, and may be cut off when the record shows that the requested discovery is not likely to produce the facts needed by the plaintiff to withstand a motion for summary judgment.").

[26] Miss. Code. Ann. § 15-1-49.

[27] *Id.* § 15-1-49(2) (emphasis added).

[28] *PPG Architectural Finishes, Inc. v. Lowery*, 909 So. 2d 47, 50 (Miss. 2005) (citing *Donald v. Amoco Prod. Co.*, 735 So. 2d 161, 168 (Miss. 1999)).

[29] *Ridgway Lane & Assocs., Inc. v. Watson*, 189 So. 3d 626, 629 (Miss. 2016) (quoting *Angle v. Koppers, Inc.*, 42 So. 3d 1, 5 (Miss. 2010)).

an injury."[30] "In determining whether a plaintiff knew or reasonably should have known that he

had an injury, the Court considers the actions taken by the plaintiff."[31] "For example, 'seeking

medical attention for side effects or symptoms' may confirm that the plaintiff knew he was

injured."[32]

"Moreover, to claim benefit of the discovery rule, a plaintiff must be reasonably diligent

in investigating the circumstances surrounding the injury."[33] "Although occasionally, the question

of whether the suit is barred by the statute of limitations is a question of fact for the jury, the

question may be taken away from the jury if reasonable minds could not differ as to the conclusion,

as with other putative fact questions."[34] Mississippi courts frequently grant summary judgment

after finding that a plaintiff's claims were time-barred because they were filed over three years

after the discovery of an injury.[35]

The recent decision in *Milam v. Kelly*, 282 So. 3d 682 (Miss. Ct. App. 2019), is instructive.

In *Milam*, the plaintiff purchased a home in Jackson, Mississippi in 2008 and began experiencing

recurring flash flooding problems in 2009.[36] During the first flash flooding incident, the plaintiff

was out of town when the water entered his home, but when the second flooding incident occurred

on July 3, 2010, the plaintiff took steps to investigate the matter, including by communicating with

---

[30] *Am. Optical Corp. v. Estate of Rankin*, 227 So. 3d 1062, 1068 (Miss. 2017) (citing *Lincoln Elec. Co. v. McLemore*, 54 So. 3d 833, 838 (Miss. 2010)).

[31] *Id.* (citing *Lincoln Elec.*, 54 So. 3d at 837-38)

[32] *Id.* (quoting *PPG*, 909 So. 2d at 51).

[33] *Wayne Gen. Hosp. v. Hayes*, 868 So. 2d 997, 1001 (Miss. 2004).

[34] *Am. Optical*, 227 So. 3d at 1068-69 (citing *Peoples Bank of Biloxi v. McAdams*, 171 So. 3d 505, 509-10 (Miss. 2015)).

[35] *See, e.g.*, *Milam v. Kelly*, 282 So. 3d 682, 691 (Miss. Ct. App. 2019) (affirming chancellor's determination as to discovery date of injury and granting summary judgment based on claims having been barred by the statute of limitations); *Angle v. Koppers, Inc.*, 42 So. 3d 1, 4, 8 (Miss. 2010) (affirming trial court's order granting summary judgment based on determination that cause of action accrued when the plaintiff discovered her illnesses as opposed to when she discovered the cause of her illnesses, such that her claims were time-barred); *City of Tupelo v. O'Callaghan*, 208 So. 3d 556, 569-70 (Miss. 2017) (concluded that summary judgment should be granted on the basis that claims were time-barred because the claims had accrued at the time the plaintiffs had knowledge of the property damage, and not at the time the plaintiffs learned the cause of the injury from an engineer).

[36] 282 So. 3d at 685.

his neighbors and former neighbors.[37] Ultimately, the plaintiff filed a complaint against the City

of Jackson on October 26, 2012, alleging that it was the cause of the flooding.[38] After obtaining

additional information regarding certain actions taken by his neighbors, the plaintiff amended his

complaint on April 29, 2014, to add his neighbors as defendants.[39]

The neighbor defendants thereafter moved for summary judgment on the basis that the

plaintiff's claim was barred by the statute of limitations and that the plaintiff could not meet his

burden of proof on his claims against them.[40] The chancellor entered an order granting the

defendants' motion for summary judgment, concluding that (1) the plaintiff's "cause of action

accrued, at the latest, on July 3, 2010—the date of the second flooding incident—and pursuant to

Mississippi Code Annotated section 15-1-49, [the plaintiff] had three years from that date to file

suit" against the defendants; and (2) "because [the plaintiff] filed his suit against the [defendants]

approximately three years and ten months after the date the cause of action accrued, [the plaintiff's]

action was barred by the statute of limitations."[41] The Court of Appeals of Mississippi, relying on

the Supreme Court of Mississippi's guidance in *Angle v. Koppers, Inc.*, 42 So. 3d 1 (Miss. 2010),

and *City of Tupelo v. O'Callaghan*, 208 So. 3d 556 (Miss. 2017), affirmed the chancellor's

determination that the latest date on which the plaintiff discovered the injury was July 3, 2010.[42]

Because the plaintiff amended his suit to add the neighbor defendants on April 29, 2014, well over

three years later, the court concluded that the plaintiff's claims against the neighbor defendants

were barred by the statute of limitations.[43]

---

[37] *Id.* at 685-86.

[38] *Id.* at 686.

[39] *Id.* ("On April 29, 2014, Milam amended his complaint to add the Kellys as defendants, asserting that they interrupted and altered downstream storm-water flow by replacing a chain link fence with a wooden fence, by changing the landscaping in their back yard, and by filling in an open drainage ditch.").

[40] *Id.*

[41] *Id.* at 686-87.

[42] *Id.* at 691.

[43] *Id.*

*Angle* and *City of Tupelo* are likewise instructive. In *Angle*, the trial court granted summary judgment in favor of the defendants on the basis that the plaintiff's claims were time-barred, concluding that the statute of limitations began to run when the plaintiff discovered or was diagnosed with her various illnesses, not when she discovered that her medical problems were the result of exposure to toxic chemicals.[44] The Supreme Court of Mississippi affirmed that ruling, stating:

> We find that [the plaintiff's] cause of action accrued at the latest in 2001, the date she was last diagnosed with an injury or disease. No provision of Section 15-1-49 provides that a plaintiff must have knowledge of the cause of the injury before the cause of action accrues, initiating the running of the statute of limitations. Therefore, we find that [the plaintiff's] claims are time-barred under Mississippi Code Section 15-1-49(2), as she filed her complaint in 2006, approximately five years after her discovery of the last injury.[45]

The Supreme Court of Mississippi in *City of Tupelo*, relying on the decision in *Angle*, likewise concluded that summary judgment should be granted on the basis that claims were time-barred because the claims had accrued at the time the plaintiffs had knowledge of the property damage, and not at the time the plaintiffs learned the cause of the injury from an engineer.[46]

The Bogards' situation is like that of the plaintiffs in *Milam*, *Angle*, and *City of Tupelo*. The Bogards purchased the Property in a damaged state post-Hurricane Katrina on February 3, 2006, renovated it, and thereafter transferred ownership of the Property to their daughter who "needed a bigger house" on May 22, 2006.[47] The Bogards testified that their daughter's family began experiencing health issues while residing on the Property from 2006 to 2013, that they believed to be caused by an environmental problem with the Property. The Bogards stated that

---

[44] 42 So. 3d at 4.
[45] *Id.* at 8.
[46] 208 So. 3d at 569-70.
[47] R. Bogard Depo. at 20:1-22, 23:3-11, 24-25; *see also* Ex. B (Attachment 1 to SPPF, 02/03/2006 Settlement Statement & Attachment 2 to SPPF, 05/22/2006 Warranty Deed).

they had a mold test completed around February of 2012 and,[48] once it came back negative, they

decided that their daughters' children needed to move out of the Property:

> Q.      We knew something was wrong because we took the kids [/grandchildren]
> to the doctors in Jackson. **And they said there was an environmental
> problem in that house [/the Property]**. We didn't know what it was. So
> we had Micro-Methods out of Ocean Springs do a mold test. We thought it
> might be mold in the house. And it came back negative. That's when we
> decided the kids needed to move.[49]

Due to the Bogards' concern for their daughter's family's health and their daughter's own

inability to afford a new house without selling the Property, the Bogards repurchased the Property

"as-is" on February 22, 2013 without inspection or further investigation of the environmental

problem.[50] Specifically, Ronald Bogard testified:

> Q.      I guess I am asking why you repurchased it from her to sell it as opposed to
> her [you daughter] just selling it.
>
> A.      Because we had to get her out of the house pretty quickly. The kids were in
> pretty bad shape medically, and we didn't know why. So we just bought her
> out so she could go get another house and the get the kids well. We took
> over the house [February 22, 2013] and tried to sell it. She needed the
> money. She needed to get out very quick.[51]

Similarly, Leslie Bogard testified:

> My grandchildren were so sick that we were in Children's Baptist Hospital
> in Jackson when they told us to get out of the house. That we needed to take
> everything out of the house: Curtains, drapes, anything that might be
> causing some type of illness for the children, which we did.
>
> So after the child got home from some serious -- some of the stuff that was
> happening to him, we took them out of the house, basically.
>
> And at that point we decided that we had to buy the house from her because
> she couldn't afford to get another house without it. She and her husband had
> divorced.[52]

---

[48] Ex. B (Timeline History to SPPF).

[49] R. Bogard Depo. at 64:4-11 (emphasis added).

[50] R. Bogard Depo. at 21:3-25, 64:4-11, 65:14-20, 76:9-11; L. Bogard Depo. at 6:20-25, 7:1-22; *see also* Ex.
B (Timeline History to SPPF & Attachment 7b to SPPF, 02/22/2013 Settlement Statement); Exhibit 4 to R. Bogard
Depo. (attached as Exhibit D).

[51] R. Bogard Depo. at 38:4-13.

[52] L. Bogard Depo. at 7:1-16.

Accordingly, the Bogards were undoubtedly aware of an "injury" in the form of an "environmental problem in [the] house" that they believed to be causing their daughter's family's health issues at the time they had the mold test completed around February of 2012 and certainly before they repurchased the Property on February 22, 2013.[53] Their claims therefore accrued on February 22, 2013, at the latest. Though the Bogards allege that they did not know the problems were caused by Chinese drywall at this time, "Section 15-1-49(2) provides a discovery rule that delays the accrual of the cause of action until the plaintiff discovers or with reasonable diligence should have discovered a latent injury …. No provision of Section 15-1-49 provides that a plaintiff must have knowledge of the cause of the injury before the cause of action accrues, initiating the running of the statute of limitations."[54] Ronald Bogard appeared in this action on June 7, 2016, and Leslie Bogard appeared in the Complaint on October 31, 2019, well over three years after the latest possible accrual date for the cause of action on February 22, 2013.

Finally, despite the Bogards' realization that the Property possessed an "environmental problem" prior to February 22, 2013,[55] Ronald Bogard's general awareness of Chinese drywall this same year,[56] and the Bogards' construction/house-flipping business in Mississippi during all relevant time periods,[57] the Bogards took no further steps to investigate the environmental problem in the Property after they received the mold test results, neither prior to repurchase nor in the three

---

[53] At the latest, the Bogards were aware of the "injury" shortly after repurchase of the Property, as they stated that their daughter's family ceased to have problems after moving out of the Property and the Bogards attributed all health problems to the Property. *See* L. Bogard Depo. at 8:1-3 ("And now, they are all beautiful. They have not been in the hospital since. I mean, everything has been so much better."); R. Bogard Depo. at 38:20-22 ("Q. Do the kids still have issues? A. Not near. It cleared up really, really good.").

[54] *Angle*, 42 So. 3d at 7.

[55] R. Bogard Depo. at 64:6.

[56] *Id.* at 17:8-12 ("Q. When did you first hear about Chinese drywall, just generally? A. Generally, probably, let's see, maybe somewhere around 2013, I guess. Somewhere in that area.").

[57] L. Bogard Depo. at 17:3-25, 18:1-9.

years following repurchase.[58] Consequently, the Bogards have not demonstrated that they were

"reasonably diligent in investigating the circumstances surrounding the injury" so as "to claim

benefit of the discovery rule[.]"[59] This Court should not hesitate to grant summary judgment and

dismiss the Bogards' claims as time-barred.[60]

> **B.      The Bogards cannot recover because they assumed the risk of Chinese drywall when purchasing the Property.**

Alternatively, the Bogards should be precluded from recovering because they assumed the

risk of Chinese drywall when they purchased the Property. Under Mississippi law, a plaintiff who

assumes the risk of his injuries is precluded from recovering from an otherwise liable manufacturer

or seller. Assumption of the risk precludes liability where the plaintiff "freely and voluntarily chose

to encounter a dangerous condition."[61] The question of whether a plaintiff assumed a risk is often

a question for the jury, but "in certain circumstances the facts may show as a matter of law that the

plaintiff understood and appreciated the danger."[62] This occurs when the evidence demonstrates

---

[58] In fact, the Bogards purchased the Property "as-is" without an inspection. R. Bogard Depo. at 22:1-9; Ex. A at 2.

[59] *Wayne Gen. Hosp.*, 868 So. 2d at 1001.

[60] It should be noted that Mississippi law does not recognize a post-sale duty to warn. *See Stevenson v. Cont'l Eagle Corp.*, 169 F. App'x 408, 409 (5th Cir. 2006); *Williams v. Ford Motor Co.*, No. 11-CV-110-NBB-SAA, 2012 WL 2990165, at *3 (N.D. Miss. July 20, 2012). Under Mississippi law, the manufacturer of a defective product may be found liable for failure to warn only if a plaintiff demonstrates, by the preponderance of the evidence, that the manufacturer "knew or in light of reasonably available knowledge should have known about the danger that caused the damage for which recovery is sought." Miss. Code. Ann. § 11-1-63. In other words, liability attaches when a manufacturer fails to warn of risks known at the time of sale. *See Murray v. Gen. Motors*, No. 10-CV-188-DPJ-FKB, 2011 WL 52559, at *2 (S.D. Miss. Jan. 7, 2011), *aff'd sub nom. Murray v. Gen. Motors, L.L.C.*, 478 F. App'x 175 (5th Cir. 2012) (holding that a manufacturer did not breach its duty by not recalling a defective vehicle because "Mississippi imposes no post-sale duty to warn").

[61] *Green v. Allendale Planting Co.*, 954 So. 2d 1032, 1041 (Miss. 2007).

[62] *Herod v. Grant*, 262 So.2d 781, 783 (Miss. 1972).

that the plaintiff appreciated the particular danger or "that the danger was so obvious that he must be taken to have known it."[63]

As demonstrated, *supra*, the Bogards were aware that the Property had an "environmental problem" prior to repurchasing it and likewise believed that the Property was directly causing their daughter's family to suffer from health issues and illness. The Bogards repurchased the Property for this very reason—to alleviate the health concerns and financial constraints burdening their daughter. Therefore, the Bogards specifically assumed the risk of the Property containing an environmental problem that could cause health issues upon repurchase. In the event this Court does not conclude that the Bogards' claims are time-barred, it should conclude that they must be dismissed because the Bogards assumed the risk of Chinese drywall when they purchased the Property.

## IV.    Conclusion

Based on all the discovery in MDL 2047 and the case-specific discovery as to the Bogards, the facts do not support any claims against the Knauf Defendants. The Bogards cannot substantiate any of the facts forming the basis of the claims against the Knauf Defendants, and there is no genuine issue of material fact preventing summary judgment. Therefore, this Court should grant summary judgment, dismissing their claims with prejudice.

---

[63] *Id.*

Respectfully submitted,

**FISHMAN HAYGOOD, LLP**

/s/ *Kerry J. Miller*_____
**KERRY J. MILLER (#24562), T.A.**
**PAUL C. THIBODEAUX (#29446)**
**DANIEL J. DYSART (#33812)**
201 St. Charles Avenue, Suite 4600
New Orleans, LA 70170
Telephone:     504.556.5549
Facsimile:     504.310.0279
Email:          kmiller@fishmanhaygood.com

***Counsel for The Knauf Defendants***


## CERTIFICATE OF SERVICE

       I hereby certify that the above and foregoing pleading has been served upon Russ Herman, Plaintiffs' Liaison Counsel, by email, to all parties by electronically uploading the same to LexisNexis File & Serve in accordance with Pre-Trial Order No. 6, individually to pro se claimants by U.S. Mail, and that the foregoing was filed with the Clerk of Court of the United States Court for the Eastern District of Louisiana, on this 1st day of April, 2020.


            */s/ Kerry J. Miller*
            **KERRY J. MILLER**