Plaintiff Profile Form - Residential Properties

## UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF LOUISIANA

| | | For Internal Use Only |
|---|---|---|
| IN RE: CHINESE MANUFACTURED DRYWALL | MDL NO. 2047 | File Number |
| PRODUCTS LIABILITY LITIGATION | SECTION: L | |
| THIS DOCUMENT RELATES TO: ALL CASES | JUDGE FALLON | |
| | MAG. JUDGE WILKINSON | Date Received |

This Plaintiff Profile Form must be completed and signed by every person making a claim in this litigation using one form per affected address. In completing this Profile Form, you are under oath and must provide information that is true and correct to the best of your knowledge. If you cannot recall all of the details requested, please provide as much information as you can and must expressly indicate "unknown" in the space provided when not known. You must supplement your responses if you learn they are incomplete or incorrect in any material respect. You may and should consult with your attorney if you have any questions regarding completion of this form. If you are completing the form for someone who has died or who cannot complete the Profile Form, please answer as completely as you can for that person.

The questions and requests for production contained within this Profile Form are non-objectionable and shall be answered without objection. By answering this Profile Form, you are not waiving the attorney work product and/or attorney client privileges. Similarly, by disclosing the identity of consultants, such consultants may remain non-testifying experts and are subject to all protections afforded by law.

To the extent that the form does not provide enough space to complete your responses, you may attach as many sheets of paper as necessary. All photographs produced in response to this form shall be in color and attached to or printed on 8 1/2" x 11" white paper.

### Section I. Property Information

| | |
|---|---|
| Name Property Owner | Edward J. Laremore |
| Address of Affected Property | 7018 Pilgrim Court |
| | Labelle, FL 33935 |
| Is this Property:* | (Residential)   Commercial   Governmental |
| Name of Person Completing this Form | Edward Laremore |
| Is above your primary residence? | Yes  (No) |
| Mailing Address (if different) | |
| Phone: | ( 302 )  430 - 6868 |

* If your response is commercial or governmental you should not fill out the remaining questions, you will receive a follow up form at a later date.

| | |
|---|---|
| Circle one: | (Owner-Occupant)   Owner Only   Renter-Occupant |
| Represented By: | Jimmy Doyle |
| Address: | DOYLE LAW FIRM, PC |
| | 2100 Southbridge Pkwy, #650 |
| | Birmingham, AL 35209 |
| Phone: | ( 205 )  533 - 9500 |
| Case No. /Docket Info: | Bennett v. Knauf, 14-cv-2722 |

### Section II. Insurance Information

| | |
|---|---|
| Homeowner/ Renter Insurer: | |
| | ASI Assurance Corporation |
| Policy #: | FSA111740 |
| Agent: | Ryan Niccoletto, ACG South Insurance Agency, LLC |
| Address: | P.O. Box 31087 |
| | Tampa, FL 33631 |
| Phone: | ( 800 )  891 - 4222 |

+ Attach Copy of Insurance Declaration Page

### Section III. Claimant Information

| Name of Claimant | Dates Occupied Move-in | Dates Occupied Leave | Gender | Date of Birth | Are you claiming personal injuries?* Circle One | Identify Claimant Status as an Owner-Occupant, an Owner Only, or an Occupant or Renter Only |
|---|---|---|---|---|---|---|
| Edward Laremore | 01/03/07 | / / | (M) / F | 03/16/56 | Yes (No) | Owner - Occupant |
| | / / | / / | M / F | / / | Yes  No | |
| | / / | / / | M / F | / / | Yes  No | |
| | / / | / / | M / F | / / | Yes  No | |
| | / / | / / | M / F | / / | Yes  No | |
| | / / | / / | M / F | / / | Yes  No | |
| | / / | / / | M / F | / / | Yes  No | |
| | / / | / / | M / F | / / | Yes  No | |
| | / / | / / | M / F | / / | Yes  No | |

* Personal injuries include claims for mental anguish and medical monitoring.

Exhibit

Exhibit No.: 1
Name: Laremore
Date: 6-18-19
ESQUIRE

Plaintiff Profile Form - Residential Properties

**Section IV. Inspection Information**

1.0. Have you, or has anyone on your behalf, conducted an inspection into whether Chinese-manufactured drywall is present in your home?   (Yes)   No

   1.1. If "Yes" to Question 1.0 Section IV. Who conducted the inspection?   Property Inspection Services

     1.2. When did the inspection take place?   07/19/17

2.0. Has a determination been made that Chinese-manufactured drywall is present in your home?   (Yes)   No

   2.1. If "Yes" to Question 2.0. Section IV. Who made this determination?   Property Inspection Services

     2.2. When was this determination made?   07/19/17

**Section V. Drywall Information**

| Drywall Manufacturer | Markings on Drywall | Location in Home |
|---|---|---|
| Knauf Plasterboard Tianjin | KNAUF TIANJIN CHINA | ceiling and walls |
| | ASTM C 36 | |
| | | |
| | | |

**Section VI. Home Information**

| | | | Yes | No |
|---|---|---|---|---|
| Approx. Sq. Ft. of House: | 1,556 | | | |
| Estimated Sq. Ft. of Drywall | ---------- | Occupied | X | |
| Height of Interior Walls | 9' | Year-round | X | |
| Number of Bedrooms: | 3 | Summer | | |
| Number of Bathrooms: | 2 | Winter | | |

**Plumbing System**

| | Blackening or Corrosion? | | |
|---|---|---|---|
| | Yes | No | N/A |
| PVC/ CPVC/ Plastic Piping | | X | |
| Copper Piping | X | | |
| Copper Fixtures | X | | |
| Other Fixtures | X | | |
| Were repairs made to the plumbing system? | | X | |
| Dates: | | | |

**Electrical System**

| | Blackening or Corrosion? | | |
|---|---|---|---|
| | Yes | No | N/A |
| Receptacles | X | | |
| Switches | X | | |
| Main Panel | X | | |
| 2nd Panel | | | X |
| Exposed Copper Wires | X | | |
| Were repairs made to the electrical system? | | X | |
| Dates: | | | |

+ Attach Copy of Floor Plan on 8 1/2" X 11" paper

**Section VII. Construction/Renovation Information**

Date Range for New Home Construction: (Month/Day/Year)

| Start Date: | 03/03/06 | Completion Date | 11/03/06 |
|---|---|---|---|
| Move In Date: | 01/03/07 | Date Acquired Home | 03/03/06 |

Date Range for Renovations: (Month/Day/Year)

| Start Date: | / / | Completion Date | / / |
|---|---|---|---|
| Move In Date: | / / | | |

| Renovation(s) | Yes | No | N/A |
|---|---|---|---|
| First Floor: 1/2 Wall of drywall replaced | | | |
| First Floor: Full Wall of drywall replaced | | | |
| Second Floor: Any drywall replaced | | | |

**Section VIII. Homebuilder/ General Contractor/ Developer Information**

Homebuilder/ General Contractor/ Developer's Name:

   Kenwood Homes

Address:   825 E. Cowboy Way, Suite 108

   Labelle, FL  33935

Phone:   ( 863 )  612 - 0700

+ Attach Copy of Construction/Renovation Contract

+ Attach Copy of New Home Warranty Declaration

**Section IX. Drywall Installer**

Drywall Installer's Name:

Address:

Phone:   (      )      -

**Section X. Drywall Supplier**

Drywall Supplier's Name:

   Banner Building Supply Company

Address:

Phone:   (      )      -

Plaintiff Profile Form - Residential Properties

**Section XI. Verification of Plaintiff Profile Form**

I declare under penalty of perjury under the laws of the United States of America and pursuant to 28 U.S.C. § 1746 that all information provided in this Plaintiff Profile Form is true and correct to the best of my knowledge, and that I have supplied all of the documents requested in this declaration to the extent that such documents are in my possession, custody or control.

| | | | |
|---|---|---|---|
| _Edward J. Fennore_ | 8\1\2017 | | |
| Claimant's Signature | Date Signed | Claimant's Signature | Date Signed |
| | | | |
| Claimant's Signature | Date Signed | Claimant's Signature | Date Signed |
| | | | |
| Claimant's Signature | Date Signed | Claimant's Signature | Date Signed |

Hendly County — Appraiser

41000-38645

**PROPERTY APPRAISAL INFORMATION 2016**

PROPERTY 41000   R   RES   10/25/2015   OWNER ID: 38645

**Legal Description**
PORT LABELLE UNIT 7 BLK 2224 LOT 11

LAREMORE EDWARD
6250 BOHEMIAN HWY
OCCIDENTIAL, CA 95465-9105

TAX AREA: 19

*41000*

ACRES: 0.3100

4 29 43 10 070 2224-011.0   Map ID: 2-13
SITUS 7018 PILGRIM CT PORT LABELLE, FL 33935

DBA:

APPR VAL METHOD: Cost

| | | |
|---|---|---|
| IMPROVEMENT VALUE | + | 86,750 |
| LAND MARKET | + | 3,500 |
| TOTAL MARKET VALUE | = | 90,250 |
| AG VALUE | = | 0.00 |
| PRODUCTIVITY LOSS | - | 0 |
| ASSESSED VALUE | = | 87,250 |
| EXEMPTION VALUE | - | |
| TAXABLE VALUE | = | 87,250 |

**GENERAL**

| | |
|---|---|
| UTILITIES | LAST APPR. |
| TOPOGRAPHY | LAST APPR. YR |
| ROAD ACCESS | LAST INSP. DATE |
| ZONING RG3 | NEXT INSP. DATE |
| PRIMARY USE 0100 | # OF IMPRV |
| NEXT REASON | |
| REMARKS | |

JW
2016
05/19/2016
1

**EXEMPTIONS**

**PICTURE**



08-14-2016

**SKETCH FOR IMPROVEMENT #1**

FSP [Area 148 ft²]
BAS [Area 1556 ft²]
FOP [Area 120 ft²]
FGR [Area 441 ft²]
Living Area: 1,556

**BUILDING PERMITS**

| ISSUE DT | PERMIT TYPE | PERMIT AREA | ST | PERMIT VAL |
|---|---|---|---|---|
| 04/29/2011 | RP | | I | 0 |
| 01/19/2006 | SF | | I | 192,295 |

**SALES INFORMATION**

| SALE DT | PRICE | GRANTOR | DEED INFO |
|---|---|---|---|
| 10/11/2012 | 100 | COCHRAN RALPH | CR / 0854 / 1481 |
| 04/17/2008 | 100 | COCHRAN RALPH J IV IC / 0852 / 0380 |
| 10/07/2005 | 50,000 | ROBERT CHARLES LLWD / 0718 / 1554 |

**IMPROVEMENT VALUATION**

| TYPE | DESCRIPTION | MTHD | CLASS/SUB | Quality | AREA | LF | UNIT PRICE | UNITS | BUILT | EFF YR | COND | VALUE |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 BAS | BAS Segment | R | "*" | 04 | 1,556.0 | 100 | 52.28 | 1 | 2006 | 2006 | | 81,350 |
| 2 FSP | Screen Porch, Finished | R | "*" | 04 | 148.0 | 100 | 18.30 | 1 | 2006 | 2006 | | 2,710 |
| 3 FOP | Open Porch, Finished | R | "*" | 04 | 120.0 | 100 | 15.68 | 1 | 2006 | 2006 | | 1,880 |
| 4 FGR | Garage, Finished | R | "*" | 04 | 441.0 | 100 | 28.75 | 1 | 2006 | 2006 | | 12,680 |
| 5 PAV C | Paving Concrete | MISC | "*" | 04 | 480.0 | 100 | 3.50 | 1 | 2006 | 2006 | | 1,680 |
| 1 | Single Family Residential | | | | 2,745.0 | | | | | | | 100,300 |

(E2006) Homestite: (100)

| APPR DPTH % | BLDG | DPTH | ECON | FUNC | COMP | S/W | SLIDE | ADJ | ADJ VALUE |
|---|---|---|---|---|---|---|---|---|---|
| 91% | | 0% | 0% | 0% | | 0.91 | 74,270 | | |
| 91% | | 0% | 0% | 0% | | 0.91 | 2,470 | | |
| 91% | | 0% | 0% | 0% | | 0.91 | 1,720 | | |
| 91% | | 0% | 0% | 0% | | 0.91 | 11,580 | | |
| 76% | | 0% | 0% | 0% | | 0.76 | 1,280 | | |
| | | | | | | | 91,320 | | |

**IMPROVEMENT FEATURES**

| UNITS | CODE | DESCRIPTION |
|---|---|---|
| 100 | Asph./Comp. Shingles | RoofCov |
| 100 | Drywall | IntWall |
| 20 | Sheet Vinyl | FloorCov |
| 80 | Carpet | FloorCov |
| 0 | Electric | HeatFuel |
| 100 | Forced Air Ducted | HeatType |
| 0 | Central Air | AirCond |
| 2 | #Bathrooms | Bathrooms |
| 3 | Bedrooms | Bedrooms |
| 100 | CBS,Slump or Fluted Block | Ex |

**LAND VALUATION**

| DESCRIPTION | METH | DIMENSIONS | UNIT PRICE | GROSS VAL | ADJ LAND ADJ | SRC | MKT VAL | AG TABLE | AG USE | AG TABLE | AG UNIT PRC | AG VALUE | VALUE |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| SINGLE FAMILY | LTM1 | 0.3100 AC | 3,500.00 | 3,500 | 1.00 1.00 | A | 3,500 | N | | | 0.00 | 0 |
| | | 0.3100 | | | | | 3,500 | | | | | |
| Land Total : | 3,500 | | | | | | | | | | | |

by ITASupport

Effective Date of Appraisal: January    Date Printed: 11/01/2016    3:00:32AM    WebID-41000

4

Supplemental Plaintiff Profile Form – Residential and Commercial Properties

> **For Internal Use Only**
> File No. _____
>
> **Date Received:**
> _____

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

In re:  Chinese Manufactured Drywall
Products Liability Litigation

This Document Relates to:

MDL NO. 2047
SECTION:  L
JUDGE FALLON
MAG. JUDGE WILKINSON

*Elizabeth Bennett v. Gebrueder Knauf Verwaltungsgesellschaft, KG, et al.,*  Civil Action No.: 14-cv-2722-EEF-JCW (E.D.La)

This Supplemental Plaintiff Profile Form must be completed and signed by every person making a claim in this litigation against the manufacturer of Chinese Drywall, Knauf Plasterboard Tianjin      , using one form per Property. In completing this Supplemental Profile Form, you are under oath and must provide all information within your knowledge, custody and control that is true and correct to the best of your knowledge.  If you have already submitted a Plaintiff Profile Form, this Supplemental Plaintiff Profile Form will be in addition to and supplement the prior Profile Form submitted.  You have an affirmative obligation to search for all documents, electronically stored information, and tangible things responsive to this questionnaire.  You may and should consult with your attorney if you have any questions regarding completion of this form. If you are completing the form for someone who has died or who cannot complete the Profile Form, please answer as completely as you can for that person.

The responses contained within this Supplemental Plaintiff Profile Form are made without waiving any rights or objections as to relevance or privilege and are made without any abrogation of legal defenses, including those of the Collateral Source Doctrine.

The questions and requests for production contained within this Supplemental Profile Form are non-objectionable and shall be answered without objection. By answering this Supplemental Profile Form, you are not waiving the attorney work product and/or attorney client privileges. Similarly, by disclosing the identity of consultants, such consultants may remain non-testifying experts if provided for by applicable law, and are subject to all protections afforded by law.  Failure to fully complete this Supplemental Profile Form and provide the appropriate documents may result in a motion filed against you pursuant to Rule 37 of the Federal Rules of Civil Procedure, which could include a request for dismissal of the action in whole or in part.

All photographs produced in response to this form shall be in color.

### Section I. Claimant and Property Information

| Name of Claimant: | Edward | J | Laremore | |
|---|---|---|---|---|
| | First Name | M.I. | Last Name | Suffix |
| | Co-Claimant First Name (if applicable) | M.I. | Last Name | Suffix |
| | Business/Entity Name (if applicable) | | | |

1

Exhibit

Exhibit No.:  2
Name: Laremore
Date: 6 – 18 – 19
ESQUIRE

Supplemental Plaintiff Profile Form – Residential and Commercial Properties

Address of Property in this Lawsuit ("Property"):

| 7018 Pilgrim Court | | | |
|---|---|---|---|
| Address 1 | | | Address 2 |
| Labelle | | FL | 33935 |
| City | | State | Zip Code |

Is the Property residential or commercial?  Residential

Name of Person
Completing this Form:

| Edward | J | Laremore | |
|---|---|---|---|
| First Name | M.I. | Last Name | Suffix |

Mailing Address (if different):

| 6250 Bohemian Highway | | | |
|---|---|---|---|
| Address 1 | | | Address 2 |
| Occidental | | CA | 95465 |
| City | | State | Zip Code |

Phone Number of Person Completing This Form: ( 302 ) 430 - 6868

---

## Section II. Purchase, Sale and/or Transfer of Ownership of a Property and Assignments of Claims

When did you acquire the Property? Month/Day/Year: 9 / 26 / 2005

When was Chinese drywall installed in the Property (to the best of your knowledge)?

Month/Day/Year: _____/_____/ 2006

When you acquired the Property, were you aware that it contained Chinese drywall?  ☐ Yes  ☑ No

If you were not aware, at the time you acquired the Property, that the Property contained Chinese drywall, when did you first become aware that the Property contained Chinese drywall?

Month/Year: 7 / 2017

If you believe Chinese drywall was installed after you acquired the Property, when and how did you first become aware that the Property contained Chinese drywall?

Chinese drywall inspection report.

If you acquired the Property knowing that the Property contained Chinese drywall, have you expressly acquired an assignment or other personal right of action that allows you to pursue a claim for damages?  ☐ Yes  ☐ No

If Yes, attach a copy of the document assigning any right or claim to you.

If Yes, did you acquire the assignment with the purchase of the Property or at some later time?

---

Have you sold or transferred ownership of the Property since you acquired it?  ☐ Yes  ☑ No

If No, go to Section III.

If Yes, on what date did you sell or transfer ownership of the Property?

Month/Day/Year: _____/_____/_____

2

Supplemental Plaintiff Profile Form – Residential and Commercial Properties

If you have sold or transferred ownership of the Property, did you at the time of sale assign to anyone any right of action for damages relating to the Property?  ☐ Yes   ☐ No

If you have sold or transferred ownership of the Property, did you expressly retain a personal right of action to allow you to pursue damages?  ☐ Yes   ☐ No

If you answered Yes to either of the two prior questions, attach a copy of any documents relating to your sale or transfer of ownership of the Property and to the assignment of a right of action for damages.

**Section III.  Product Identification and Evidence Retention**

Did you provide evidence of Chinese drywall in the Property to the Plaintiffs' Steering Committee to be placed in the PSC FileCloud Database?  ☑ Yes   ☐ No

If Yes, do you have any additional evidence of Chinese drywall in the Property that you have not provided to the Plaintiffs' Steering Committee?  ☐ Yes   ☑ No

If No, go to Section IV.  If Yes, **attach** all additional evidence of Chinese drywall in the Property that you have not already provided to the Plaintiffs' Steering Committee.

**Section IV. Bankruptcy, Foreclosure or Short Sale**

Do you contend that you entered personal bankruptcy as a result of damage to your Property from defective Chinese Drywall?  ☐ Yes   ☑ No

If Yes, answer the following questions:

If you entered personal bankruptcy, identify the case number and docket information of the filing.

Court filed in:  _____

Date of filing:  _____ / _____ / _____
                  Month      Day        Year

Docket No.:  _____

Present Status: _____

Attach your bankruptcy petition and documents filed therewith, including (1) the schedule of assets and liabilities; (2) the schedule of income and expenditures; (3) the statement of financial affairs; (4) the schedule of executory contracts and unexpired leases; (5) the list of creditors and amount and nature of claims; (6) the source, amount, and frequency of the debtor's income; (7) the list of all the debtor's property; and (8) the detailed list of the debtor's monthly living expenses.

Do you contend that a foreclosure or short sale occurred as a result of damage to your Property from defective Chinese Drywall?  ☐ Yes   ☑ No

If Yes, answer the following questions:

If the Property was the subject of a foreclosure or short sale, identify the following:

Foreclosure or Short Sale?             _____

Supplemental Plaintiff Profile Form – Residential and Commercial Properties

Lender's name: _____

Loan Number: _____

Original Loan/Mortgage Amount: $ _____

Date of Original Loan/Mortgage: ___/___/___
                                Month   Day   Year

At the Date of Foreclosure or Short Sale,
the amount owed on the Loan/Mortgage: $ _____

Date of Foreclosure or Short Sale: ___/___/___
                                Month   Day   Year

Short Sale Price (if applicable): $ _____

Attach all loan/mortgage documentation and documentation pertaining to the acquisition of the property.

Attach all documents relating to any foreclosure or short sale, including but not limited to any financial statements provided to the lender, a seller's hardship letter, tax returns, W-2 forms, payroll stubs, and bank statements provided to the lender, and comparative market analyses of comparable sales provided to the lender.

### Section V. Already Remediated Property

Has the Property been partially or completely remediated? No _____

If completely or partially remediated, answer the following questions. If No, go to Section VI.

Please identify the dates during which the remediation took place:

_____

Please identify who performed the work to remediate the property (for example: self, name of contractor, name of remediation service): _____

If the Property has been partially remediated, identify the rooms of the Property that were remediated, the current condition and status of the remediation and the amount of work remaining to be remediated:

Attach any documents supporting any work that you or others performed for remediation of the Property.

If the Property has been partially or completely remediated, what was the total cost to date for the remediation of the Property?

$ _____

Attach all invoices and documents to support the total cost of remediation to date.

4

Supplemental Plaintiff Profile Form – Residential and Commercial Properties

Attach all invoices, purchase receipts and documents supporting the total cost or value of any appliances, fixtures or other electronics that you claim were damaged by Chinese drywall.

Attach all invoices, purchase receipts and documents supporting the total cost or value of any other movables (property or possessions, not including land or buildings) that you claim were damaged by Chinese drywall.

If the Property has been completely remediated, what was the date the remediation was completed?

Month/Year: _____ / _____

Have you preserved at least two samples (of ten inches by ten inches (10" x 10") in size if possible) of every different drywall brand or marking removed from the Property?  ☐ Yes  ☐ No

If you have preserved samples, where are the samples located?

_____

Have you preserved at least one sample of each type of drywall endtape, if any, that was found during inspection, repair or removal of drywall in or from the Property?  ☐ Yes  ☐ No

If you have preserved samples, where are the samples located?

_____

Have you photographed the backside of each Chinese-manufactured drywall board removed from the Property immediately after it was removed, and have you documented on a floor plan or other similar diagram the location of each full or partial Chinese-manufactured drywall board and its photograph?
☐ Yes  ☐ No

If you have photographed and documented each Chinese-manufactured board, please attach the photograph(s) and floor plan.

Have you photographed the HVAC coil, at least one (1) plumbing component and three (3) electrical components that you allege were damaged by Chinese drywall?  ☐ Yes  ☐ No

If you have photographed these materials, please attach the photographs.

Have you photographed any other building materials, components, or other personal property for which you intend to seek recovery?  ☐ Yes  ☐ No

If you have photographed these materials, please attach the photographs.

**Section VI. Prior Payments**

Have you received any payments, including but not limited to settlement payments, payments from homebuilders, and insurance payments, related to damages you claim to have suffered caused by defective Chinese drywall in the Property or related to any other harm caused by defective Chinese drywall?  ☐ Yes  ☑ No

If Yes, identify the source(s) and state the amount of payment(s) you received?

Source: _____

Amount of payments received: $ _____

Supplemental Plaintiff Profile Form – Residential and Commercial Properties

Source: _____

Amount of payments received: $ _____

Source: _____

Amount of payments received: $ _____

If you received payments from the Knauf settlement, state the percentage of the Chinese Drywall that was identified as "KPT Chinese Drywall" as described in section 1.27 of the Knauf Settlement Agreement: _____ %

Attach documents reflecting the total amount you received from the source(s).

---

### Section VII. Other Damages

If you incurred alternative living expenses as a result of Chinese Drywall, identify the total moving cost and/or alternative living expense you incurred.

$ _____

Attach all receipts and documents supporting the total moving cost and/or alternative living expense you incurred.

If you experienced any loss of use and/or loss of enjoyment of the Property as a result of Chinese Drywall, identify the total amount of such loss.

$ 300,000.00 _____

Attach all documentation to support the total amount claimed for the loss.

If you claim a diminution in value of the Property as a result of Chinese Drywall, identify the total amount of such diminution of value being claimed.

$ _____

Attach all documentation to support the total amount claimed for diminution of value, including documents showing that the Property's previous value.

---

### Section VIII. "Under Air" Square Footage

Has the under air square footage of the Property changed at any time since installation of the Chinese drywall? ☐ Yes ☑ No

If the square footage has changed, please identify the date(s) and change(s) to under air square footage, and attach all documentation that relates to each change:

Date: _____

Change: _____

Date: _____

Change: _____

Supplemental Plaintiff Profile Form – Residential and Commercial Properties

Date: _____

Change: _____

### Section IX. Verification of Supplemental Plaintiff Profile Form

I declare under penalty of perjury under the laws of the United States of America and pursuant to 28 U.S.C. § 1746 that I am the claimant identified in this Supplemental Plaintiff Profile Form and that all information provided in this Supplemental Plaintiff Profile Form is true and correct to the best of my knowledge, and that I have supplied all of the documents requested in this declaration to the extent that such documents are in my possession, custody or control.

I further declare under penalty of perjury under the laws of the United States of America and pursuant to 28 U.S.C. § 1746 that all information previously provided by me in my original Plaintiff Profile Form continues to be true and correct and has been updated to the best of my knowledge.

_Edward J. Laremore_                           _3\22\2018_
Claimant's signature                            Date signed

Name:      _EDWARD  J. LAREMORE_

Address:   _6250 BOHEMIAN  HWY_
           Address 1                    Address 2
           _OCCIDENTAL        CA.    95465_
           City               State      Zip Code

Phone No.: _(302) 430 - 6868_

Email:     _ed laremore @ gmail. com_

7

# EXHIBIT

## [See Section VII of SPPF]

Related to:
Alternative Living Expenses,
Loss of Use/Loss of Enjoyment,
or Diminution of Value

Section VII. Loss of Use / Loss of Enjoyment

$300,000.00 in loss of use / loss of enjoyment damages is appropriate and consistent with past verdicts in the Chinese drywall litigation, based on the number of years I and my family have owned and/or lived in the home containing defective Chinese-manufactured sheetrock produced by the Knauf Defendants.



**Property Inspection Services**
**9990 Coconut Road**
**Bonita Springs, FL  34135**
**Office:  (239) 368-1588**
**Email:  nspekt1@comcast.net**
**Web:  www.propertyinspect.net**
**Inspected by Donald Uken #HI9400**

# Home Inspection Report
# Prepared For



## 7018 Pilgrim Court
## Labelle  FL  33935
## 7/19/17

# Property Inspection Services

## Summary

### Attic

1. **Misc Items:** Drywall located in attic near master bed has China printed on the back of paper. The extent of how many boards located in home is undermined. Multiple drywall boards located near attic accesses were not defective.

  

### HVAC

2. **AH Overall Operation:** Aluminum coils in air handler, no evidence of effects from defective drywall.



### Electrical

3. **Service to Panel:** No specific signs of defective drywall noted in electrical panel. Looking for dark copper wires that are sooty.



4. **Misc:** Several interior wall outlets have been removed and one indicator was noted, black soot on copper ground wires. Light fixture in guest bathroom was observed with excessive rust. Another possible indicator of faulty drywall.

  

# Property Inspection Services

## Electrical (Continued)

**Misc: (continued)**

  

### Kitchen

5. **Under Sink Inspection:** Copper fixtures/fittings become black when exposed to two things, sulfur water and faulty drywall.  Inconclusive based upon water filtration system is not being utilized.



### Interior

6. **Misc Items:** House contained a distinctive smell of "burnt match" that highly suggests defective drywall was installed.

# Property Inspection Services

## Definitions

NOTE: All definitions listed below refer to the property or item listed as inspected on this report at the time of inspection

| | | |
|---|---|---|
| A | Acceptable | Functional with no obvious signs of defect. |
| NP | Not Present | Item not present or not found. |
| NI | Not Inspected | Item was unable to be inspected for safety reasons or due to lack of power, inaccessible, or disconnected at time of inspection. |
| M | Marginal | Item is not fully functional and requires repair or servicing. |
| D | Defective | Item needs immediate repair or replacement. It is unable to perform its intended function. |

## Company Information

**Inspector Name** Jeffrey Wenzel
**Company Name** Property Inspection Services

## Attic

A NP NI M D

**Describe Access:**
**Insulation Type/R-Value:**

☒ Ventilation:
☒ HVAC Ducts:
☒ Roof Framing:
☒ Sheathing:
☒ Insulation:
☒ Wire/Lighting:
☒ Water Pipes:
☒ **Misc Items:** Drywall located in attic near master bed has China printed on the back of paper. The extent of how many boards located in home is undermined. Multiple drywall boards located near attic accesses were not defective.



Palm-Tech Inspector, Copyright © 1998-2017, PDmB, Inc.

# Property Inspection Services

## HVAC

A NP NI M D

☒ ☐ ☐ ☐ ☐ **Thermostat(s) Operation:**
☒ ☐ ☐ ☐ ☐ **HVAC Cool Ok:**
☒ ☐ ☐ ☐ ☐ **HVAC Heat Ok:**
☒ ☐ ☐ ☐ ☐ **HVAC Temp Difference:**

**AH Brand/Type:**
**AH Location(s):**
**AH Model/Serial Label:**
**Approx Age:**
☐ ☐ ☐ ☐ ☒ **AH Overall Operation: Aluminum coils in air handler, no evidence of effects from defective drywall.**



☒ ☐ ☐ ☐ ☐ **AH Noise:**
☒ ☐ ☐ ☐ ☐ **AH Filter(s):**
☒ ☐ ☐ ☐ ☐ **AH Coil/Copper:**
☒ ☐ ☐ ☐ ☐ **AH Plenum/Stand/Return Box:**
☒ ☐ ☐ ☐ ☐ **AH Drain/Pan/Float Switch:**
☒ ☐ ☐ ☐ ☐ **AH Misc:**

**COND Brand/Type:**
**COND Location(s):**
**COND Model/Serial Label:**
**Approx Age:**
☒ ☐ ☐ ☐ ☐ **COND Overall Operation:**
☒ ☐ ☐ ☐ ☐ **COND Noise:**
☒ ☐ ☐ ☐ ☐ **COND Misc:**

## Electrical

A NP NI M D

**Service Amps:**
**Volts:**
☐ ☐ ☐ ☐ ☒ **Service to Panel: No specific signs of defective drywall noted in electrical panel.  Looking for dark copper wires that are sooty.**

# Property Inspection Services

## Electrical (Continued)

**Service to Panel: (continued)**



☒☐☐☐☐ **Panel to Structure:**

**Panel Location:**

**Panel Brand:**

☒☐☐☐☐ **Overall Condition:**
☒☐☐☐☐ **Breakers:**
☒☐☐☐☐ **GFCI:**
☒☐☐☐☐ **Panel Cover:**
☒☐☐☐☐ **Breaker Config:**
☒☐☐☐☐ **Wire-Over Current Capabilities:**
☒☐☐☐☐ **Proper Receptacle Grounding:**
☒☐☐☐☐ **Improper Wire Splices:**
☐☐☐☐☒ **Misc: Several interior wall outlets have been removed and one indicator was noted, black soot on copper ground wires.  Light fixture in guest bathroom was observed with excessive rust.  Another possible indicator of faulty drywall.**




# Property Inspection Services

7018 Pilgrim Court

## Kitchen

A NP NI M  D

☒☐☐☐☐ **Floor Covering:**
☐☐☐☐☒ **Under Sink Inspection:** Copper fixtures/fittings become black when exposed to two things, sulfur water and faulty drywall.  Inconclusive based upon water filtration system is not being utilized.



☒☐☐☐☐ **Drains Appear Clear:**
☒☐☐☐☐ **Stove Exhaust Fan:**
☒☐☐☐☐ **Stove Exhaust Filter:**
☒☐☐☐☐ **Stove / Electric:**
☒☐☐☐☐ **Stove Controls:**
☒☐☐☐☐ **Microwave Operational:**
☒☐☐☐☐ **Oven Operational:**
☐☐☐☐☐ **Counter Tops:**
☒☐☐☐☐ **Disposal:**
☒☐☐☐☐ **Drawers/Doors:**
☒☐☐☐☐ **Dishwasher:**
☒☐☐☐☐ **Refrigerator:**
☒☐☐☐☐ **Refrigerator Water:**
☒☐☐☐☐ **Refrigerator Ice Maker:**
☒☐☐☐☐ **Freezer Temp:**
☒☐☐☐☐ **Plumbing Fixture:**

## Interior

A NP NI M  D

☒☐☐☐☐ **Doors:**
☒☐☐☐☐ **Lighting/Fans:**
☒☐☐☐☐ **Walls / Ceilings:**

☐☐☐☐☒ **Misc Items:** House contained a distinctive smell of "burnt match" that highly suggests defective drywall was installed.

Case 2:09-md-02047-EEF-MBN   Document 22684-2   Filed 04/01/20   Page 22 of 113

# Property Inspection Services

7018 Pilgrim Court

## Final Comments

Our inspection only consisted of looking for evidence of defective drywall, a full home inspection was not performed.  The evidence we found only concludes that some of the drywall boards are defective.  We cannot conclusively determine how many are defective.  Recommend further evaluation by a licensed environmental company that specializes in xray equipment that can determine the full extent of defective drywall.

This Instrument Prepared By: Tara Torrone
**PATRIOT TITLE SERVICES, LLC**
825 E. Cowboy Way
Labelle, Florida 33935
File Number: **TT-0769**
Strap Number: 4-10-43-29-070-2224-011.0

# Warranty Deed

(The terms "grantor" and "grantee" herein shall be construed to include all
genders and singular or plural as the context indicates.)

Made this ___ day of _____, 2005, BETWEEN

### Robert Charles, LLC, a Florida Limited Liability Company

whose post office address is:          15500 Idalia Drive, Alva, FL 33920, **grantor**

and

### Ralph Cochran and Edward Laremore

whose post office address is: 5012 Church Road, MountLaurel, NJ 08054          , **grantee,**

WITNESSETH: That the said grantor, for and in consideration of the sum of Ten ($10.00) Dollars, and other good and valuable considerations to said grantor in hand paid by said grantee, the receipt whereof is hereby acknowledged, has granted, bargained and sold to the said grantee, and grantee's heirs, successors and assigns forever, the following described land, situate, lying and being in Hendry County, Florida towit:

**Lot 11, Block 2224, Unit 7, Port LaBelle, a Subdivision according to the plat thereof as recorded in Plat Book 3, Page 116, Public Records of Hendry County, Florida.**

Subject to easements and restrictions of record, if any, which are specifically not extended or reimposed hereby.

Said grantor hereby covenants with said grantee that the grantor is lawfully seized of said land in fee simple; the the grantor has good right and lawful authority to sell and convey said land; that the grantor hereby warrants the title to said land and will defend the same against the lawful claims of all persons whomsoever; that the land is free of all encumbrances except taxes accruing subsequent to December 31, 2005.

**IN WITNESS WHEREOF,** Grantor has hereunto set grantor's hand and seal the day and year first above written.

Signed, sealed and delivered in the presence of:

_____
Witness #1 signature

*Tara Torrone*
Witness #1 print name

_____
Witness #2 signature

*Amanda Hudgins*
Witness #2 print name

**Robert Charles, LLC, a Florida Limited Liability Company**

_____
By: Kimberly Trapp
**Title: Managing Member**

**STATE OF Florida         COUNTY OF Hendry**

    **I HEREBY CERTIFY,** that on this ___17th___ day of ___October___, 2005 before me personally appeared _Kimberly Trapp AS Managing Member_ of **Robert Charles, LLC, a Florida Limited Liability Company,** who is personally known to me or who has provided _____ as identification and who is the person described in and who executed the foregoing instrument and who after being duly sworn says that the execution hereof is free act and deed for the uses and purposed herein mentioned.

    **SWORN TO AND SUBSCRIBED** before me the undersigned Notary Public by my hand and official seal, the day and year last aforesaid.

My Commission Expires: _4/22/06_
    (seal)

_____
Notary Public

*Tara Torrone*
Notary printed

*Page 2 of 2*

BK 738 PG 1555 FILED AND RECORDED 10/17/2005 2:49:00 PM 2 of 2 BARBARA BUTLER CLERK OF CIRCUIT COURT HENDRY COUNTY FL.

| Form **W-9**<br>(Rev. August 2013)<br>Department of the Treasury<br>Internal Revenue Service | **Request for Taxpayer**<br>**Identification Number and Certification** | **Give Form to the**<br>**requester. Do not**<br>**send to the IRS.** |

**Print or type**
**See Specific Instructions on page 2.**

Name (as shown on your income tax return)
EDWARD   JAMES   LAREMORE

Business name/disregarded entity name, if different from above

Check appropriate box for federal tax classification:

☒ Individual/sole proprietor  ☐ C Corporation  ☐ S Corporation  ☐ Partnership  ☐ Trust/estate

☐ Limited liability company. Enter the tax classification (C=C corporation, S=S corporation, P=partnership) ▶

☐ Other (see instructions) ▶

Exemptions (see instructions):

Exempt payee code (if any) _____

Exemption from FATCA reporting
code (if any) _____

Address (number, street, and apt. or suite no.)
6250   BOHEMIAN   HIGHWAY

Requester's name and address (optional)

City, state, and ZIP code
OCCIDENTAL   CA   95465

List account number(s) here (optional)

---

## Part I   Taxpayer Identification Number (TIN)

Enter your TIN in the appropriate box. The TIN provided must match the name given on the "Name" line to avoid backup withholding. For individuals, this is your social security number (SSN). However, for a resident alien, sole proprietor, or disregarded entity, see the Part I instructions on page 3. For other entities, it is your employer identification number (EIN). If you do not have a number, see *How to get a TIN* on page 3.

Note. If the account is in more than one name, see the chart on page 4 for guidelines on whose number to enter.

**Social security number**

5 6 5 – 9 8 – 9 2 6 6

**Employer identification number**

_ _ – _ _ _ _ _ _ _

---

## Part II   Certification

Under penalties of perjury, I certify that:

1. The number shown on this form is my correct taxpayer identification number (or I am waiting for a number to be issued to me), and

2. I am not subject to backup withholding because: (a) I am exempt from backup withholding, or (b) I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of a failure to report all interest or dividends, or (c) the IRS has notified me that I am no longer subject to backup withholding, and

3. I am a U.S. citizen or other U.S. person (defined below), and

4. The FATCA code(s) entered on this form (if any) indicating that I am exempt from FATCA reporting is correct.

**Certification instructions.** You must cross out item 2 above if you have been notified by the IRS that you are currently subject to backup withholding because you have failed to report all interest and dividends on your tax return. For real estate transactions, item 2 does not apply. For mortgage interest paid, acquisition or abandonment of secured property, cancellation of debt, contributions to an individual retirement arrangement (IRA), and generally, payments other than interest and dividends, you are not required to sign the certification, but you must provide your correct TIN. See the instructions on page 3.

**Sign**
**Here**

Signature of
U.S. person ▶ *Edward James Laremore*      Date ▶ 3\22\2018

---

## General Instructions

Section references are to the Internal Revenue Code unless otherwise noted.

**Future developments.** The IRS has created a page on IRS.gov for information about Form W-9, at *www.irs.gov/w9*. Information about any future developments affecting Form W-9 (such as legislation enacted after we release it) will be posted on that page.

## Purpose of Form

A person who is required to file an information return with the IRS must obtain your correct taxpayer identification number (TIN) to report, for example, income paid to you, payments made to you in settlement of payment card and third party network transactions, real estate transactions, mortgage interest you paid, acquisition or abandonment of secured property, cancellation of debt, or contributions you made to an IRA.

Use Form W-9 only if you are a U.S. person (including a resident alien), to provide your correct TIN to the person requesting it (the requester) and, when applicable, to:

1. Certify that the TIN you are giving is correct (or you are waiting for a number to be issued),

2. Certify that you are not subject to backup withholding, or

3. Claim exemption from backup withholding if you are a U.S. exempt payee. If applicable, you are also certifying that as a U.S. person, your allocable share of any partnership income from a U.S. trade or business is not subject to the

withholding tax on foreign partners' share of effectively connected income, and

4. Certify that FATCA code(s) entered on this form (if any) indicating that you are exempt from the FATCA reporting, is correct.

**Note.** If you are a U.S. person and a requester gives you a form other than Form W-9 to request your TIN, you must use the requester's form if it is substantially similar to this Form W-9.

**Definition of a U.S. person.** For federal tax purposes, you are considered a U.S. person if you are:

• An individual who is a U.S. citizen or U.S. resident alien,

• A partnership, corporation, company, or association created or organized in the United States or under the laws of the United States,

• An estate (other than a foreign estate), or

• A domestic trust (as defined in Regulations section 301.7701-7).

**Special rules for partnerships.** Partnerships that conduct a trade or business in the United States are generally required to pay a withholding tax under section 1446 on any foreign partners' share of effectively connected taxable income from such business. Further, in certain cases where a Form W-9 has not been received, the rules under section 1446 require a partnership to presume that a partner is a foreign person, and pay the section 1446 withholding tax. Therefore, if you are a U.S. person that is a partner in a partnership conducting a trade or business in the United States, provide Form W-9 to the partnership to establish your U.S. status and avoid section 1446 withholding on your share of partnership income.

Cat. No. 10231X                    Form **W-9** (Rev. 8-2013)

5

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION** | **MDL NO. 2047**<br><br>**SECTION: L** |
| **THIS DOCUMENT RELATES TO:**<br><br>***Elizabeth Bennett, et al. v. Knauf Gips, KG, et al.***<br>**2:14-cv-02722-EEF-JCW** | **JUDGE ELDON FALLON**<br><br>**MAG. JUDGE WILKINSON** |

### PLAINTIFF FACT SHEET

Name of Plaintiff: Edward J. Laremore

Affected Property Address: 7018 Pilgrim Court, Labelle, FL  33935

## I.  Purchase, Sale and/or Transfer of Ownership of Property

1. On what date did you purchase the Property?

**Response**: Plaintiff objects to this question as duplicative. In addition, Plaintiff objects to this question on the ground that it seeks information in the possession of, known to, or otherwise equally available to the defendants. Plaintiff has previously provided this information to defendants in the Bennett Supplemental Plaintiff Profile Form ("SPPF"). Plaintiff directs the defendants to Section II of the SPPF. Without waiving said objection, Plaintiff adopts the SPPF response again here and intends to provide the exact same date as provided in the verified SPPF as follows: Plaintiff purchased the property:

(Month/Day/Year)          10 / 07 / 2005

2. When you took ownership of the Property, what was the name of the seller?

Robert Charles, LLC



| Exhibit | |
|---|---|
| Exhibit No.: 3 | |
| Name: Laremore | |
| Date: 6 – 18 – 19 | |
| ⊘ESQUIRE | |

1

3.  Name and address of the realtor?

N/A

4.  Name and address of the closing agent?

Patriot Title Services, LLC, 825 E. Cowboy Way, Labelle, FL  33935

5.  What was the price of the home when you purchased it?  $ 192,295.00

6.  Was it an "as-is" sale?

**Response:**  Plaintiff objects to the use of "as-is" in this question as vague, ambiguous, uncertain, and unintelligible; consequently, Plaintiff cannot determine the exact nature of the information being sought.  This term is not defined and is not commonly understood with one accepted meaning; multiple inpretations are possible.  Without waiving said objection, plaintiff responds as follows:

[✓] Yes      [ ] No       [ ] I'm not sure.

7.  If you sold or transferred ownership of the Property, what was the name of the purchaser?

N/A

8.  If you sold or transferred ownership of the Property, what was the name and address of the realtor?

N/A

9.  If you sold or transferred ownership of the Property, what was the name and address of closing agent?

N/A

10.  If you sold or transferred ownership of the Property, what was the price paid for home?

$ N/A

## II.  Appraisal of the Home

11.  Date of each appraisal:

a.    09  /  11  /20  07

b. _____ /_____ /20_____

2

**PFS REQUEST FOR DOCUMENT PRODUCTION #1**: Please produce copies of any and all appraisals performed on the house both prior and subsequent to the occurrence of any of the events allenged in the petition.

> **Response**: All documents in Plaintiff's possession responsive to this request are attached as "Exhibit 1."

## III.  Discovery of Drywall

12.  Date that the property was constructed and/or renovated that installed the allegedly defective Chinese Drywall.

**Response**:  Plaintiff objects to this question as duplicative.  In addition, Plaintiff objects to this question on the ground that it seeks information in the possession of, known to, or otherwise equally available to the defendants.  Plaintiff has previously provided this information to defendants in the Bennett Supplemental Plaintiff Profile Form ("SPPF").  Plaintiff directs the defendants to  Section II of the SPPF. Without waiving said objection, Plaintiff adopts the SPPF response again here and intends to provide the exact same date as provided in the verified SPPF as follows: The property construction and/or renovation that installed the allegedly defective drywall occurred on or about the following date (to the best of my knowledge):

> (Month/Day/Year)          ____/____/20 05-06

**PFS REQUEST FOR DOCUMENT PRODUCTION #2**: Please produce all documents, reports, photographs, videotapes, samples and any other materials which evidence and/or identify that there is defective Chinese Drywall in the Property.

> **Response**:  All documents in Plaintiff's possession responsive to this request are attached as "Exhibit 2."

## IV.  Manufacturer/Seller of Drywall

13.  Who sold or distributed the drywall in the house?

**Response**:  Plaintiff objects to this question as duplicative.  In addition, Plaintiff objects to this question on the ground that it seeks information in the possession of, known to, or otherwise equally available to the defendants.  Plaintiff has previously provided this information to defendants in the Plaintiff Profile Form ("PPF"). Plaintiff directs the defendants to  Section X of the PPF.  Without waiving said objection, Plaintiff adopts the PPF response again here and intends to provide the exact same information as provided in the verified PPF as follows:  The drywall Supplier's name (to the best of my knowledge) is:

I don't know. _____

3

**PFS REQUEST FOR DOCUMENT PRODUCTION #3**: Please produce all documents, reports, photographs, videotapes, samples and any other materials which evidence and/or identify the manufacturer of drywall installed in the house. The submission must be in the form of PTO 1(B).

> **Response**: All documents in Plaintiff's possession responsive to this request are attached as "Exhibit 3."

## V.  Damages

14.  Identify any harm, financial or otherwise, that you contend was caused by defective Chinese Drywall installed in the Property.

**Response**:  Plaintiff directs the defendants to review the complaint filed with the court in this case for a full listing of the claims being asserted and the damages being sought. The defective Knauf Chinese Drywall emitted gasses that cause damage to Plaintiff's home and the personal property contained therein.  It also significantly diminished the use and enjoyment of the home; therefore, Plaintiff seeks the following:  all compensatory, statutory, and/or punitive damages; all pre-judgment and post-judgment interest as allowed by law; any appropriate injunctive relief; an award of attorney's fees as allowed by law; an award of taxable costs; and, any and all such further relief as a jury or judge presiding over my trial deems just and proper.  Other damages include, but are not limited to:

Unable to sell the home, unable to rent the home either.  Financial burden of paying for

two houses, but can only live in one.

15.  If you contend that you entered personal bankruptcy as a result of damage to your property from defective Chinese Drywall, please describe the facts and circumstances that relate to your claim.

N/A

16.  If you contend that you entered short sale and/or foreclosure as a result of damage to your property from defective Chinese Drywall, please describe the facts and circumstances that relate to your claim.

N/A

**PFS REQUEST FOR DOCUMENT PRODUCTION #4**: If you claim loss of income, please produce any copies of any and all documentation upon which you intend to rely upon to prove this claim.

>   **Response**: All documents in Plaintiff's possession responsive to this request are attached as "Exhibit 4."

17. If you claim diminution of the property as a result of Chinese Drywall, state with particularity each fact which supports your claim.

N/A _____

_____

_____

_____

18. Identify the appliances, fixtures and/or other electronics, if any, that you claim were damaged by Chinese Drywall in the property.

>   **Response**: An list of damaged items is attached as "Exhibit 14."

19. If you vacated the property because of the alleged presence of Chinese Drywall, please provide: Address of each location you stayed thereafter.

>   a. N/A _____
>   b. _____
>   c. _____

20. If you vacated the property because of the alleged presence of Chinese Drywall, please provide: Time periods in which you resided at each property.

>   a. N/A /_____/20_____ to _____/_____/20_____
>   b. _____/_____/20_____ to _____/_____/20_____
>   c. _____/_____/20_____ to _____/_____/20_____

21. If you vacated the property because of the alleged presence of Chinese Drywall, please provide: Moving costs and/or alternative living expenses you claim to have incurred as a result of the alleged presence of Chinese Drywall.

>   a. $ N/A _____
>   b. $ _____
>   c. $ _____

**PFS REQUEST FOR DOCUMENT PRODUCTION #5**:  If you vacated the property because of the alleged presence of Chinese Drywall, please provide any documentation to support your claims.

> **Response**:  All documents in Plaintiff's possession responsive to this request are attached as "Exhibit 5."

22.  Are you claiming damages for personal injury?  ☐ Yes (explain below) ☑ No

_____

_____

23.  If you suffered personal injuries as a result of the alleged presence of Chinese Drywall: Date you allege that you first sustained personal injuries as a result of your exposure to allegedly defective Chinese Drywall.

**Response**:    ☑ N/A

24.  If you suffered personal injuries as a result of the alleged presence of Chinese Drywall: What specific injuries have you suffered?

**Response**:    ☑ N/A

25.  If you suffered personal injuries as a result of the alleged presence of Chinese Drywall:  Name and address of any doctor, physician, surgeon, chiropractor, or osteopath who examined and/or treated your alleged injuries.

**Response**:    ☑ N/A

## VI.  Potential Witnesses/Evidence

26.  Has any written or recorded statement been taken from any witness or person who has knowledge of relevant facts, including the nature, character, and extent of the injuries referred to in the petition, and for each statement identified?

☐ Yes   ☑ No   ☐ I don't know

27.  If the answer to 26 is "yes," please state: The name, address, and telephone number of the person from whom the statement was taken.

N/A _____

_____

6

28. If the answer to 26 is "yes," please state: The name, address, and telephone number of the person who took the statement.

N/A

29. If the answer to 26 is "yes," please state: The name address, and telephone number of the party having custody of such statement.

N/A

30. If the answer to 26 is "yes," please state: The date the statement was taken.

N/A

## VII.  Already Remediated Properties

31. If you already remediated the Property, who conducted the remediation?

**Response:**   ☑ N/A

32. When did the remediation commencement date occur?

**Response:**   ☑ N/A

33. When did the remediation end date occur?

**Response:**   ☑ N/A

34. What was the scope of the remediation and the scope of the work carried out?

**Response:**   ☑ N/A

35. What costs or expenses, if any, did you incur related to the remediation of the Property?

**Response:**   ☑ N/A

7

36. Were any samples from the remediation retained?

   **Response:**   ☑ N/A

37. If the response to 36 is "yes," were the samples compliant with PTO 1(B)?

   **Response:**   ☑ N/A

38. Were any photographs taken of the allegedly defective Chinese Drywall?

   **Response:**   ☑ N/A

39. If the response to 38 is "yes," were the photographs compliant with PTO 1(B)?

   **Response:**   ☑ N/A

**PFS REQUEST FOR DOCUMENT PRODUCTION #6:**  Please produce the following documentation concerning the remediation of the Property:  Any evidence of KPT Chinese Drywall and Non-KPT Chinese Drywall, if any, in the Property prior to remediation.

   **Response:**  All documents in Plaintiff's possession responsive to this request are attached as "Exhibit 6."

**PFS REQUEST FOR DOCUMENT PRODUCTION #7:**  Please produce the following documentation concerning the remediation of the Property:  Interior photographs of the Affected Property immediately prior to the commencement of, and following completion of, the remediation, including photographs and/or video images of the flooring and major components such as cabinets, moldings, doors, intercom systems, and fixtures for every room and bathroom and, to the extent possible, security systems, appliances and audio such as surround sound.

** The photographs do not need to be pictures taken specifically for the litigation. For example, family photographs or photographs taken for purposes of refinancing a mortgage are acceptable in the absence of other photographs.

   **Response:**  All documents in Plaintiff's possession responsive to this request are attached as "Exhibit 7."

**PFS REQUEST FOR DOCUMENT PRODUCTION #8:**  Please produce the following documentation concerning the remediation of the Property:  The remediation contract and an itemization from the contractor who performed the remediation work of the materials used during the remediation, including, but not limited to, manufacturer, model number, and quantity.

8

**Response**:  All documents in Plaintiff's possession responsive to this request are attached as "Exhibit 8."

**PFS REQUEST FOR DOCUMENT PRODUCTION #9**:  Please produce the following documentation concerning the remediation of the Property:  An itemized invoice from the contractor who performed the remediation work ("Itemized Invoice") showing the scope of work carried out.

**Response**:  All documents in Plaintiff's possession responsive to this request are attached as "Exhibit 9."

**PFS REQUEST FOR DOCUMENT PRODUCTION #10**:  Please produce the following documentation concerning the remediation of the Property:  Proof of payment of the Itemized Invoice and any other expenses, such as cancelled checks, credit card statements, etc.

**Response**:  All documents in Plaintiff's possession responsive to this request are attached as "Exhibit 10."

**PFS REQUEST FOR DOCUMENT PRODUCTION #11**:  Please produce the following documentation concerning the remediation of the Property:  A floor plan of the Affected Property with dimensions.

**Response**:  All documents in Plaintiff's possession responsive to this request are attached as "Exhibit 11."

**PFS REQUEST FOR DOCUMENT PRODUCTION #12**:  Please produce the following documentation concerning the remediation of the Property:  An Environmental Certificate.

**Response**:  All documents in Plaintiff's possession responsive to this request are attached as "Exhibit 12."

**PFS REQUEST FOR DOCUMENT PRODUCTION #13**:  Please produce the following documentation concerning the remediation of the Property:  An Owner Disclosure Affidavit in the form attached as Exhibit 1, which includes a certification that the materials provided comprise all of the available documentation regarding the following:  The drywall that was in the Affected Property prior to the commencement of the remediation; and, the scope, extent, and cost of the remediation.

**Response**:  All documents in Plaintiff's possession responsive to this request are attached as "Exhibit 13."

**VERIFICATION**

I hereby verify that the responses to the Plaintiff Fact Sheet are correct to the best of my knowledge.


Edward James Laremore
Signature of Plaintiff

1\21\2019
Date


Edward James Laremore
Printed Name

# Exhibit 1

Hendry County | Appraiser

PROPERTY APPRAISAL INFORMATION 2016

41000-38645

**PROPERTY** 41000
**Legal Description**
PORT LABELLE UNIT 7 BLK 2224 LOT 11

R RES 10/25/2015 **OWNER ID:** 38645

LAREMORE EDWARD
6250 BOHEMIAN HWY
OCCIDENTIAL, CA 95465-9105

**TAX AREA:** 19

*41000*

**4 29 43 10 070 2224-011.0**    Map ID: 2-13
**SITUS** 7018 PILGRIM CT PORT LABELLE, FL 33935

DBA:

**ACRES:** 0.3100
**APPR VAL METHOD:** Cost

| IMPROVEMENT VALUE | + | 86,750 |
| LAND MARKET | | 3,500 |
| TOTAL MARKET VALUE | = | 90,250 |
| AG VALUE | = | 0.00 |
| PRODUCTIVITY LOSS | = | 0 |
| ASSESSED VALUE | = | 87,250 |
| EXEMPTION VALUE | = | |
| TAXABLE VALUE | = | 87,250 |

**EXEMPTIONS**

## GENERAL

| | |
| --- | --- |
| UTILITIES | LAST APPR. | JW |
| TOPOGRAPHY | LAST APPR. YR | 2016 |
| ROAD ACCESS | LAST INSP. DATE | 05/19/2016 |
| ZONING RG3 | NEXT INSP. DATE | |
| PRIMARY USE 0100 | # OF IMPRV | 1 |
| NEXT REASON | | |
| REMARKS | | |

**PICTURE**



06 19 2016

### SKETCH FOR IMPROVEMENT #1



## BUILDING PERMITS

| ISSUE DT | PERMIT TYPE | PERMIT AREA | ST | PERMIT VAL. |
| --- | --- | --- | --- | --- |
| 04/29/2011 | RP | | I | 0 |
| 01/19/2006 | SF | | I | 192,295 |

## SALES INFORMATION

| SALE DT | PRICE | GRANTOR | DEED INFO |
| --- | --- | --- | --- |
| 10/11/2012 | 100 | COCHRAN RALPH | CR / 0854 / 1481 |
| 04/17/2008 | 100 | COCHRAN RALPH J JV IC / 0852 / 0380 |
| 10/07/2005 | 50,000 | ROBERT CHARLES LL WD / 0718 / 1554 |

**IMPROVEMENT VALUATION**

| # | TYPE | DESCRIPTION | MTHD | CLASS/SUB | Quality | EFF. | AREA | LF | UNIT PRICE | HS |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| 1 | BAS | BAS Segment | R | *-* | 04 | | 1,556.0 | 100 | 52.28 | Y |
| 2 | FSP | Screen Porch, Finished | R | *-* | 04 | | 148.0 | 100 | 18.30 | |
| 3 | FOP | Open Porch, Finished | R | *-* | 04 | | 120.0 | 100 | 15.88 | |
| 4 | FGR | Garage, Finished | R | *-* | 04 | | 441.0 | 100 | 28.75 | |
| 5 | PAV C | Paving Concrete | MISC | *-* | 04 | | 480.0 | 100 | 3.50 | |
| 1 | | Single Family Residential | | | | | 2,745.0 | | | |

(E2006) Homesite: (100)

**LIVING AREA** | **L SIZE** | **APPROX FT** | **BB.BB** | **SALES/EFFECT:** | **JOB SLIDE:** |

| LIVING AREA. | L SIZE | COND | DEPR | PHYS | ECON | FUNC | COMP | ADJ | ADJ VALUE |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| 81,350 | 2006 | 91% | 0% | 0% | 0% | 0% | | 0.91 | 74,270 |
| 2,710 | 2006 | 91% | 0% | 0% | 0% | 0% | | 0.91 | 2,470 |
| 1,880 | 2006 | 91% | 0% | 0% | 0% | 0% | | 0.91 | 1,720 |
| 12,880 | 2006 | 91% | 0% | 0% | 0% | 0% | | 0.91 | 11,580 |
| 1,680 | 2006 | 76% | 0% | 0% | 0% | 0% | | 0.76 | 1,280 |
| 100,300 | | | | | | | **Living Area: 1,556** | | 91,320 |

**LAND VALUATION**

| | METH | DIMENSIONS | UNITS | UNIT PRICE | INFL Value: | Capacity: | GROSS VAL | INFL Adj | IRR Acres | SRC | OB Units | MKT VAL |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| | LTM1 | 0.3100 AC | | 3,500.00 | | 3,500 | 3,500.00 | 1.00 | | A | 1.00 | 3,500 |
| | | 0.3100 | | | | | | | | | | |

**PRODUCTIVITY VALUATION**

| LI | DESCRIPTION | TYPE | LUSE | SOL | CLS | TABLE | SUBSET: | AG | AG USE | AG TABLE | AG UNIT PRC | AG VALUE |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| 1 | SINGLE FAMILY | 0109 | 0109 | | | NBHD lot | | N | | | 0.00 | 0 |
| | Land Total : | 3,500 | | | | | | | | | | 0 |

**IMPROVEMENT FEATURES**

| UNITS | CODE | DESCRIPTION |
| --- | --- | --- |
| 100 | Asph./Comp. Shingles | RoofCov |
| 100 | Drywall | IntWall |
| 20 | Sheet Vinyl | FloorCov |
| 80 | Carpet | FloorCov |
| 0 | Electric | HeatFuel |
| 100 | Forced Air Ducted | HeatType |
| 0 | Central Air | AirCond |
| 2 | #Bathrooms | Bathrooms |
| 3 | Bedrooms | Bedrooms |
| 100 | CBS,Stump or Fluted Block | Ex |

Effective Date of Appraisal: January    Date Printed: 11/01/2016   3:00:32AM    by ITASupport

Page 1 of 1

WebID-41000

# Exhibit 2

# Exhibit 3



Property Inspection Services
9990 Coconut Road
Bonita Springs, FL 34135
Office: (239) 368-1588
Email: nspekt1@comcast.net
Web: www.propertyinspect.net
Inspected by Donald Uken #HI9400

# Home Inspection Report
# Prepared For



# 7018 Pilgrim Court
# Labelle  FL  33935
# 7/19/17

# Property Inspection Services

## Summary

### Attic

1. **Misc Items:** Drywall located in attic near master bed has China printed on the back of paper.  The extent of how many boards located in home is undermined.  Multiple drywall boards located near attic accesses were not defective.

  

### HVAC

2. **AH Overall Operation:** Aluminum coils in air handler, no evidence of effects from defective drywall.



### Electrical

3. **Service to Panel:** No specific signs of defective drywall noted in electrical panel.  Looking for dark copper wires that are sooty.

 

4. **Misc:** Several interior wall outlets have been removed and one indicator was noted, black soot on copper ground wires.  Light fixture in guest bathroom was observed with excessive rust.  Another possible indicator of faulty drywall.

  

# Property Inspection Services

## Electrical (Continued)

**Misc: (continued)**

  

**Kitchen**

5. **Under Sink Inspection:** Copper fixtures/fittings become black when exposed to two things, sulfur water and faulty drywall.  Inconclusive based upon water filtration system is not being utilized.



**Interior**

6. **Misc Items:** House contained a distinctive smell of "burnt match" that highly suggests defective drywall was installed.

# Property Inspection Services

7018 Pilgrim Court

## Definitions

NOTE: All definitions listed below refer to the property or item listed as inspected on this report at the time of inspection

| | | |
|---|---|---|
| A | Acceptable | Functional with no obvious signs of defect. |
| NP | Not Present | Item not present or not found. |
| NI | Not Inspected | Item was unable to be inspected for safety reasons or due to lack of power, inaccessible, or disconnected at time of inspection. |
| M | Marginal | Item is not fully functional and requires repair or servicing. |
| D | Defective | Item needs immediate repair or replacement. It is unable to perform its intended function. |

## Company Information

**Inspector Name**  Jeffrey Wenzel
**Company Name**  Property Inspection Services

## Attic

A NP NI M D

**Describe Access:**
**Insulation Type/R-Value:**

| | Item |
|---|---|
| ☒☐☐☐☐ | Ventilation: |
| ☒☐☐☐☐ | HVAC Ducts: |
| ☒☐☐☐☐ | Roof Framing: |
| ☒☐☐☐☐ | Sheathing: |
| ☒☐☐☐☐ | Insulation: |
| ☒☐☐☐☐ | Wire/Lighting: |
| ☒☐☐☐☐ | Water Pipes: |
| ☐☐☐☐☒ | Misc Items: Drywall located in attic near master bed has China printed on the back of paper.  The extent of how many boards located in home is undermined.  Multiple drywall boards located near attic accesses were not defective. |



# Property Inspection Services

## HVAC

A NP NI M  D

☒☐☐☐☐ Thermostat(s) Operation:
☒☐☐☐☐ HVAC Cool Ok:
☒☐☐☐☐ HVAC Heat Ok:
☒☐☐☐☐ HVAC Temp Difference:
AH Brand/Type:
AH Location(s):
AH Model/Serial Label:
Approx Age:
☐☐☐☐☒ AH Overall Operation: Aluminum coils in air handler, no evidence of effects from defective drywall.



☒☐☐☐☐ AH Noise:
☐☐☐☐☐ AH Filter(s):
☒☐☐☐☐ AH Coil/Copper:
☒☐☐☐☐ AH Plenum/Stand/Return Box:
☒☐☐☐☐ AH Drain/Pan/Float Switch:
☒☐☐☐☐ AH Misc:
COND Brand/Type:
COND Location(s):
COND Model/Serial Label:
Approx Age:
☒☐☐☐☐ COND Overall Operation:
☒☐☐☐☐ COND Noise:
☒☐☐☐☐ COND Misc:

## Electrical

A NP NI M  D

Service Amps:
Volts:
☐☐☐☐☒ Service to Panel: No specific signs of defective drywall noted in electrical panel.  Looking for dark copper wires that are sooty.

# Property Inspection Services

## Electrical (Continued)

**Service to Panel: (continued)**



☒☐☐☐☐ Panel to Structure:

**Panel Location:**

**Panel Brand:**

☒☐☐☐☐ Overall Condition:

☒☐☐☐☐ Breakers:

☒☐☐☐☐ GFCI:

☒☐☐☐☐ Panel Cover:

☒☐☐☐☐ Breaker Config:

☒☐☐☐☐ Wire-Over Current Capabilities:

☒☐☐☐☐ Proper Receptacle Grounding:

☒☐☐☐☐ Improper Wire Splices:

☐☐☐☐☒ Misc: Several interior wall outlets have been removed and one indicator was noted, black soot on copper ground wires.  Light fixture in guest bathroom was observed with excessive rust.  Another possible indicator of faulty drywall.



# Property Inspection Services

## Kitchen

A NP NI M D

☒☐☐☐☐ **Floor Covering:**
☐☐☐☐☒ **Under Sink Inspection:** Copper fixtures/fittings become black when exposed to two things, sulfur water and faulty drywall.  Inconclusive based upon water filtration system is not being utilized.



☒☐☐☐☐ **Drains Appear Clear:**
☒☐☐☐☐ **Stove Exhaust Fan:**
☒☐☐☐☐ **Stove Exhaust Filter:**
☒☐☐☐☐ **Stove / Electric:**
☒☐☐☐☐ **Stove Controls:**
☒☐☐☐☐ **Microwave Operational:**
☒☐☐☐☐ **Oven Operational:**
☒☐☐☐☐ **Counter Tops:**
☒☐☐☐☐ **Disposal:**
☒☐☐☐☐ **Drawers/Doors:**
☒☐☐☐☐ **Dishwasher:**
☒☐☐☐☐ **Refrigerator:**
☒☐☐☐☐ **Refrigerator Water:**
☒☐☐☐☐ **Refrigerator Ice Maker:**
☒☐☐☐☐ **Freezer Temp:**
☒☐☐☐☐ **Plumbing Fixture:**

## Interior

A NP NI M D

☒☐☐☐☐ **Doors:**
☒☐☐☐☐ **Lighting/Fans:**
☒☐☐☐☐ **Walls / Ceilings:**

☐☐☐☐☒ **Misc Items:** House contained a distinctive smell of "burnt match" that highly suggests defective drywall was installed.

Case 2:09-md-02047-EEF-MBN   Document 22684-2   Filed 04/01/20   Page 48 of 113

# Property Inspection Services

## Final Comments

Our inspection only consisted of looking for evidence of defective drywall, a full home inspection was not performed.  The evidence we found only concludes that some of the drywall boards are defective.  We cannot conclusively determine how many are defective.  Recommend further evaluation by a licensed environmental company that specializes in xray equipment that can determine the full extent of defective drywall.

# Exhibit 4

# Exhibit 5

# Exhibit 6

# Exhibit 7

# Exhibit 8

# Exhibit 9

# Exhibit 10

# Exhibit 11

# Exhibit 12

# Exhibit 13

# Exhibit 14

# Plaintiff Fact Sheet

Plaintiff:  Edward Laremore

Property Address: 7018 Pilgrim Court, Labelle, FL  33935

## Question #18 Itemization (Personal Property Damage)

| # | Description of Damaged Item | Value ($) |
|---|---|---|
| 1 | Property management fee | 420 |
| 2 | Drywall inspection cost | 150 |
| 3 | Thermostat | 171 |
| 4 | Refrigerator repair | 125 |
| 5 | Microwave | 210 |
| 6 | Thermostate | 150 |
| 7 | Dishwasher | 426 |
| 8 | Thermostat | 125 |
| 9 | Garbage disposal | 85 |
| 10 | A/C repair – coil | 325 |
| 11 | Dishwasher | 267 |
| 12 | | |
| 13 | | |
| 14 | | |
| 15 | | |
| 16 | | |

| | | |
|---|---|---|
| 17 | | |
| 18 | | |
| 19 | | |
| 20 | | |
| 21 | | |
| 22 | | |
| 23 | | |
| 24 | | |
| 25 | | |
| 26 | | |
| 27 | | |
| 28 | | |
| 29 | | |
| 30 | | |
| 31 | | |
| 32 | | |
| 33 | | |
| 34 | | |
| 35 | | |

Total: $ 2,454.00

Supp and Amended Docs.
Amended PFS Ex. 14

Item #1

**FLORIDA DEPARTMENT OF REVENUE**
RETURN FOR TRANSFERS OF INTEREST IN REAL PROPERTY
(PLEASE READ INSTRUCTIONS BEFORE COMPLETING)

FDOR10240300
PROPERTY APPRAISER DR-219
INET
R. 07/98

Use black ink. Enter numbers as shown below.
`0 1 2 3 4 5 6 7 8 9`

If typing, enter numbers as shown below.
`0 1 2 3 4 5 6 7 8 9`

1. Parcel Identification Number
(If Parcel ID not available
please call County Property
Appraiser's Office) →
`4 2 9 4 3 1 0 0 7 0 2 2 3 4 0 1 1 . 0`

2. Mark (x) as
that apply    Multi-parcel
transaction? →

Transaction is a split
or cutout from
another parcel? →

Property was improved
with building(s) at time
of sale/transfer? →  [X]

3. Grantor (Seller): COCHRAN    RALPH    J    IV
Last          First          MI    Corporate Name (if applicable)
213 UNION AVE          Stratford    NJ    08084  (88) 516-1843
Mailing Address          City          State  Zip Code  Phone No.

4. Grantee (Buyer): LAREMORE    EDWARD    J.
Last          First          MI    Corporate Name (if applicable)
908 SHORT LN          SEAFORD    DE    19973  (302) 629-4969
Mailing Address          City          State  Zip Code  Phone No.

5. Date of Sale/Transfer      Sale/Transfer Price
`0 4 / 1 7 / 2 0 0 8`  $ `1 0 . 0 0`  Property
Month  Day    Year    (Round to the nearest dollar.)  Located In  County  36

6. Type of Document  [ ] Contract/Agreement  [ ] Other
[ ] Warranty     for Deed
Deed        [X] Quit Claim
Deed

7. Are any mortgages on the property? If "Yes",
outstanding mortgage balance:  YES [X] / NO
$ `1 7 2 8 7 6 . 0 0`
(Round to the nearest dollar.)

8. To the best of your knowledge, were there unusual circumstances or conditions to the sale/transfer
such as: Forced sale by court order? Foreclosure pending? Distress Sale? Title defects? Corrective Deed? Mineral rights?
Sale of a partial or undivided interest? Related to seller by blood or marriage.  YES [ ] / [X] NO

9. Was the sale/transfer financed? YES [ ] / [X] NO  If "Yes", please indicate type or types of financing:
[ ] Conventional  [ ] Seller Provided  Agreement or
[ ] Contract for Deed  [ ] Other

10. Property Type:
Mark (x) all
that apply
[X] Residential  [ ] Commercial  [ ] Industrial  [ ] Agricultural  Institutional/  [ ] Miscellaneous  [ ] Government  [ ] Vacant  [ ] Acreage  [ ] Timeshare

11. To the best of your knowledge, was personal property  YES [ ] / [X] NO  $ `0 0`  Cents
included in the sale/transfer? If "Yes", please state the
amount attributable to the personal property. (Round to the nearest dollar.)

12. Amount of Documentary Stamp Tax  $ `1 5 5 . 0 0`

13. If no tax is due in number 12, is deed exempt from Documentary Stamp Tax under s. 201.02(6), Florida Statutes?  YES [ ] / NO [ ]

Under penalties of perjury, I declare that I have read the foregoing return and that the facts stated in it are true. If prepared by someone other
than the taxpayer, his/her declaration is based on all information of which he/her has any knowledge.
Signature of Grantor or Grantee or Agent  Edward J. Laremore  Date  2\28\08
WARNING: FAILURE TO FILE THIS RETURN OR ALTERNATIVE FORM APPROVED BY THE DEPARTMENT OF REVENUE SHALL RESULT IN A PENALTY OF $25.00 IN ADDITION TO ANY
OTHER PENALTY IMPOSED BY THE REVENUE LAW OF FLORIDA.

| To be completed by the Clerk of the Circuit Court's Office | Clerks Date Stamp |
|---|---|
| **This copy to Property Appraiser** | |

O. R. Book
and
Page Number
and
File Number

Date Recorded
Month    Day    Year

**This copy to Property Appraiser**

**QUITCLAIM DEED**

*[handwritten notes: Left Corner put Down Previous Deed, Book & Page, Book 796, Ps. 1857, Comm.]*

(Space above this line reserved for recording office use only)

THIS **QUITCLAIM DEED**, made on this date of *April 17ᵗʰ 2008*, between
*Ralph J Cochran IV*, ("Grantors"),
of _____ County, State of _____ and
*EDWARD J. LAREMORE*, (Grantees"),
of *SUSSEX* County, State of *DELAWARE*.

WITNESSETH, that Grantors, for and in consideration of the sum of $10.00, and other good and valuable consideration in hand paid by Grantees, the receipt of which is acknowledged, quitclaim to Grantees and Grantees' heirs, executors, administrators, and assigns forever all of the right, title, and interest of Grantor in the following described land situated in *HENDRY* County, Florida:

Legal Description: *7018 PILGRIM COURT*
*LABELLE FLA. 33935*
*(LOT #11 - Block 2224 and buildings &*
*improvements there on of Labelle Fla*
*at Hendry County) Port Labelle Unit #7*

*[handwritten in left margin: Clerks will not allow Clerk, Hendy Clerk office, Copy for legal]*

Physical Address: *7018 PILGRIM COURT LABELLE FLA. 33935*

Property Appraiser's Parcel I.D. No. *4-29-43-10-020-2224-0110*

**SELLER(S):**

*[signature]*
Signature
Printed Name: *Ralph Cochran*

Date: *April 17ᵗʰ, 2008*

**WITNESSES:**

Name: *[signature]*
Address: *201st Echelon Mall*

Name: *[signature]*
Address: *Clementon n.g.*

*[signature] 4-17-08*

*[illegible stamp]*

Page 1 of 2

Inst:201226007088 Date:9/4/2012 Time:10:15 AM
Doc Stamp-Deed:0.7000
DC,Barbara S. Butler,Hendry County Page 2 of 2 B:852 P:381

(Space above this line reserved for recording office use only)

SELLERS(S):

Signature
Printed Name: RAlph Cahran

Date: 4/17/08

WITNESSES:

Name:
Address: 9916  Echelon Mal/

Name:
Address: Clementon  n.j.

New Jersey
STATE OF FLORIDA
COUNTY OF Camden

The foregoing instrument was acknowledged before me on this date: __April 17, 2008__ by
RALPH COCHRAN , who is/are known to
me or produced the following DRIVERS LICENSE as identification.

Notary Public -- State of Florida New Jersey
Printed Name: Daryl P. Coppock
(Seal)

DARYL P. COPPOCK
NOTARY PUBLIC OF NEW JERSEY
Commission Expires...

Page 2 of 2

# Item #2

Doyle Law Firm,

**Item #2:**

The list of personal property damage due to Chinese drywall found in 7018 Pilgrim Court, Labelle, FL. is on the Plaintiff Fact Sheet attached to this document. The documentation and receipts for each of these losses are not attached because they were sent with earlier documents and should be in my file. I wanted to send this information, at the risk of being redundant, to ensure you had all the information you need. The total damages incurred for Question #18 was $1884.

I also included another list of financial damages I incurred due to the Chinese drywall discovery in my home. I do not know if they were to be listed at another section or under Question #18. I included them here in case they were required. I sent this same information to you earlier along with the receipts and documentation. I reworked some of the numbers due to your clarification of Question #18. I also saw a few errors due to some expenses were not annual expenses, but one-time expenses. This sheet total is more accurate concerning the annual losses due to the Chinese drywall. Please include these numbers in the appropriate places when you total the damages incurred.

Thank you.

Ed Laremore

# Plaintiff Fact Sheet

Plaintiff: _Edward James Larimore_

Property Address: _7018 PILGRIM COURT LABELLE FL._

## Question #18 Itemization (Personal Property Damage)

*The following items are the ones listed last on the previous sheet. They were 'ONE TIME' expenses needing to be recovered.

| # | Description of Damaged Item | Value ($) |
|---|------------------------------|-----------|
| 1 | THERMOSTAT - replaced 4\2017 (Ex. D#2) | $171 |
| 2 | REFRIDGE REPAIR 10\2009 (EXIB E#2) | $125 |
| 3 | MICROWAVE OVEN 2\2011 (Exibit F#2) | $210 |
| 4 | THERMOSTAT-REPLACED 4\2011 (EXIBIT F#2) | $150 |
| 5 | DISHWASHER REPLACED 1\2012 (EXHIBIT G#2) | $426 |
| 6 | THERMOSTAT -REPLACED 5\2010 (EXHIBIT G#2) | $125 |
| 7 | GARBAGE DISPOSAL 6\2010 (EXHIBIT G#2) | $85 |
| 8 | A.C. EVAPORATOR COIL 7\2012 (EXHIBIT G#2) | $325 |
| 9 | DISHWASHER REPAIR 11\2011 (EXHIBIT G#2) | $267 |
| 10 | ~~DRYWALL~~ | |
| 11 | | |
| 12 | | |
| 13 | | |
| 14 | | |
| 15 | | |
| 16 | | |

TOTAL $1884

*NOTE: ALL EXHIBITS LISTED SHOULD BE IN MY FILE IN YOUR POSSESSION.

## The Loss on 7018 Pilgrim Court Due to Chinese Drywall

### Note of explanation:

My property,  7018 Pilgrim Court, Labell FL. had a renter in the property at $800 per month until May 31, 2017. The renter moved out because I was about to close on the sale of the house. The property had been up for sale only about 6-8 weeks. I had the property for sale at $150,000 and had 2 full price offers. I chose Lennox Lett's offer. ( Lennox Lett's offer, Exhibit E). The renters moved out in anticipation of the closing. Lett's financing fell through (not due to the property) two days before closing.  I had a $140K cash offer the next day. I was in the middle of negotiating with the potential cash buyers when they noticed a "rotten egg" smell. They asked if I had ever had the house tested for Chinese drywall. The property had never been tested in the 11 years I had owned it. So, I had it tested in honor of their request. As the report you have on file shows, they found Chinese drywall in the home. Once Chinese drywall was found, all renting or potential selling of the property ceased.  Due to the discovery of Chinese drywall : I lost a renter, a strong potential sale of my home during a great market and have had to care for the empty home since June 2017. Because of these circumstances, here are the financial claims I am requesting to be covered:

(The following is considering the property vacant for a full year, May 2017- May 2018. Extra months **can** be added if necessary.)

1) Payment of property taxes: **$2883** per year (see Exhibit C#2)
2) Mortgage payments: $993 per month X 12= **$11,916** (see Exhibit A)
3) Rental income ...if needed: $800 per month X 12= $9600 (see Exhibit B) *(EXCLUDED FROM TOTAL!)*
4) Property management fee: $35 per month X 12=**$420** (see Exhibit C)
5) Lawn care for vacant property: $180 for 2017 plus $45 per month in 2018=**$350** ( Exhibit E)
6) Lost revenue from sale:
   a.   Sale of home: $150,000- $7500 realtor fee= $142,500 (see Exhibit E)
   b.   Principal owed: $116,477: $142,500- $116,477= $26,023bit  (see Exhibit E) *( not in this total)*
   c.   Pay down my  %5.25 line of credit (see Exhibit E)= **$1365** per year of interest
7) Home owners insurance: **$851** (see Exhibit G)
8) Drywall Inspection cost: **$150** (see Exhibit D)
9) Utilities cost: $24 per month X12= **$504**
10) The loss of rental income from the Chinese drywall led to borrowing money from our line of credit to make up the shortfall (see Question #4: section ). The borrowing from the line was $670 a month average. The interest lost on that borrowing was= **$468** per year.

Here is my annual total: *Total #18907*  Per year: Starting MAY 2016 until present ...

Thank you for your consideration to these matters.     pg 1
                    Ed Larremore

# Item #3

Doyle Law Firm,

**Item #3:**

Item #3 asked for our HUD 1 Form and mortgage information. Here are some of the facts about my property and mortgage costs:

1) I had my home built by Kenwood Homes which has since gone out of business. My home was constructed in 2005 and completed in 2006, just before the drastic change in the real estate market during the 2007-2008 years. As you can tell from my paper work enclosed, my home cost me around $198, 000. I financed $189,000. It was during the "no-doc" loan and "100% financing" era. You can see from my paperwork, the closing costs were substantial but, the red tape was minimal.  My paper work for this early loan is located under "LOAN #1".

There were a few unique items about my first loan. 1) My home was constructed for me, so some of the paperwork shows construction cost draws. My loan began in October of 1985 to pay the expenses as Kenwood Homes built my home. Some of my paperwork displays this fact.  I also, included the Construction Loan from Kenwood Homes, as requested. 2) I recall my early loan was divided between two institutions. I cannot remember all the details or understand all the paperwork.

2) When the economic crises hit the real estate market during the 2007-2008 years, my home dropped in value along with everyone else's. My home was now worth $55-$60,000. Many were deciding to give their homes back to the bank. My wife and I did not think that was right or fair to the banks. As a result, we decided to make a couple of financial moves so we could continue to make the mortgage payments. Here are the moves we made:
   a. We paid the loan down by $50K, using money we had in savings.
   b. Next, we re-casted our loan. The cost to re-cast was around a $1000, but the new loan lowered our mortgage payment substantially. (I do not have the paperwork on this action; you just see the new mortgage we had on the property was substantially less: $130K).

3) After re-casting the loan, Obama allowed HARP loans, even for investors. I re-mortgaged, as you can see under LOAN #2. The HARP cut our payments down by about $200 a month. The closing costs were $2084 dollars. You can see the paper work under LOAN #2.

Another part of my story is I rented my house. I had my property rented for $750 a month during the first 8 years I owned the property. However, this rent never covered the mortgage payment. My early mortgage payment was $1500 a month. When I re-cast my loan, I dropped my mortgage payment to about $1200 a month. During those years, as you can see, I was losing money on the property.

When I re-mortgaged my home using the HARP loan, it helped. My loan dropped to about $1000 a month. Also, my rent went up to $800 a month. As a result, I was only losing about $200 a month. This finally made the property more manageable. This was a help, but, it only lasted 2 short years. After that time, the value of the property had rebounded, and we decided to sell the property.

Then, in May of 2016, while buyers were viewing the property, we found Chinese drywall. We lost our sale. we lost our renters.  We have had to finance the property for $1005 a month ever since.

Thanks for your attention to our story.

Ed Laremore

# Loan #1

# Uniform Residential Loan Application

This application is designed to be completed by the applicant(s) with the Lender's assistance. Applicants should complete this form as "Borrower" or "Co-Borrower," as applicable. Co-Borrower information must also be provided (and the appropriate box checked) when ☐ the income or assets of a person other than the Borrower (including the Borrower's spouse) will be used as a basis for loan qualification or ☐ the income or assets of the Borrower's spouse or other person who has community property rights pursuant to state law will not be used as a basis for loan qualification, but his or her liabilities must be considered because the spouse or other person has community property rights pursuant to applicable law and Borrower resides in a community property state, the security property is located in a community property state, or the Borrower is relying on other property located in a community property state as a basis for repayment of the loan.

If this is an application for joint credit, Borrower and Co-Borrower each agree that we intend to apply for joint credit (sign below):

*Ed. Lanemore*
Borrower

_____
Coborrower

## TYPE OF MORTGAGE AND TERMS OF LOAN

| Mortgage Applied for: | ☐ VA | ☒ Conventional | ☐ Other (explain): | Agency Case Number | Lender Case Number |
| | ☐ FHA | ☐ USDA/Rural Housing Service | | | 02505857 |

| Amount | Interest Rate | No. of Months | Amortization Type: | ☒ Fixed Rate | ☐ Other (explain): |
| $ 196,000.00 | 6.250 % | 360 | | ☐ GPM | ☐ ARM (type): |

## PROPERTY INFORMATION AND PURPOSE OF LOAN

| Subject Property Address (street, city, state & ZIP) | | No. of Units |
| 7018 Pilgrim Court, La Belle, FL 33935 | | 1 |

| Legal Description of Subject Property (attach description if necessary) | Year Built |
| | 2007 |

| Purpose of Loan | ☐ Purchase | ☐ Construction | ☐ Other (explain): | Property will be: |
| | ☒ Refinance | ☐ Construction-Permanent | | ☐ Primary Residence  ☒ Secondary Residence  ☐ Investment |

Complete this line if construction or construction-permanent loan.

| Year Lot Acquired | Original Cost | Amount Existing Liens | (a) Present Value of Lot | (b) Cost of Improvements | Total (a + b) |
| | $ | $ | $ | $ | $ |

Complete this line if this is a refinance loan.

| Year Acquired | Original Cost | Amount Existing Liens | Purpose of Refinance | Describe Improvements | ☐ made  ☐ to be made |
| 2005 | $ 0.00 | $ 189,900.00 | Ltd Cash-Out Rate/Term | Cost: $0.00 | |

| Title will be held in what Name(s) EDWARD LAREMORE | Manner in which Title will be held | Estate will be held in: |
| | Individual | ☒ Fee Simple  ☐ Leasehold (show expiration date) |

| Source of Down Payment, Settlement Charges, and/or Subordinate Financing (explain) |

## BORROWER INFORMATION / Co-Borrower

| Borrower's Name (include Jr. or Sr. if applicable) EDWARD LAREMORE | Co-Borrower's Name (include Jr. or Sr. if applicable) |

| Social Security Number 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 | Home Phone (incl. area code) (302)629-4969 | DOB (mm/dd/yyyy) 03/16/1956 | Yrs. School 18/18 | Social Security Number | Home Phone (incl. area code) | DOB (mm/dd/yyyy) | Yrs. School |

| ☒ Married  ☐ Unmarried (include single, divorced, widowed)  ☐ Separated | Dependents (not listed by Co-Borrower) no. 0 | ☐ Married  ☐ Unmarried (include single, divorced, widowed)  ☐ Separated | Dependents (not listed by Borrower) no. |

| Present Address (street, city, state, ZIP)  ☒ Own  ☐ Rent 2 No. Yrs. | Present Address (street, city, state, ZIP)  ☐ Own  ☐ Rent  No. Yrs. |
| 908 SHORT LANE | |
| Seaford, DE 19973 | |

| Mailing Address, if different from Present Address | Mailing Address, if different from Present Address |

If residing at present address for less than two years, complete the following:

| Former Address (street, city, state, ZIP)  ☐ Own  ☐ Rent  No. Yrs. | Former Address (street, city, state, ZIP)  ☐ Own  ☐ Rent  No. Yrs. |

## EMPLOYMENT INFORMATION / Co-Borrower

| Name & Address of Employer  ☐ Self Employed | Yrs. on this job 8 | Name & Address of Employer  ☐ Self Employed | Yrs. on this job |
| Atlanta Road CMA | Yrs. employed in this line of work/profession 25 | | Yrs. employed in this line of work/profession |
| Mailbox 756 | | | |
| Seaford, DE 19973 | | | |

| Position/Title/Type of Business Pastor | Business Phone (incl. area code) (302)629-5600 | Position/Title/Type of Business | Business Phone (incl. area code) |

If employed in current position for less than two years or if currently employed in more than one position, complete the following:

| Name & Address of Employer  ☐ Self Employed | Dates (from - to) 01/01/1986 - 06/30/2006 | Name & Address of Employer  ☐ Self Employed | Dates (from - to) |
| Fellowship Alliance Chapel | | | |
| 199 Church Road | Monthly Income $5,700.00 | | Monthly Income $ |
| Medford, NJ 08055 | | | |

| Position/Title/Type of Business Pastor | Business Phone (incl. area code) (609)953-7333 | Position/Title/Type of Business | Business Phone (incl. area code) |

| Name & Address of Employer  ☐ Self Employed | Dates (from - to) | Name & Address of Employer  ☐ Self Employed | Dates (from - to) |
| | Monthly Income $ | | Monthly Income $ |

| Position/Title/Type of Business | Business Phone (incl. area code) | Position/Title/Type of Business | Business Phone (incl. area code) |

02505857
Fannie Mae Form 65 7/05
Freddie Mac Form 1003 7/05
Wolters Kluwer Financial Services
VMP® -21N (0601).03

Page 1 of 4                    Initials: _____



## FIRST FLORIDA **BANK**

### LETTER OF ACKNOWLEDGEMENT

**It is mutually agreed upon that the sum of $ 12,729.50 (10% - Dep), shall be disbursed to  KENWOOD HOMES the builder at closing. These funds will be used to reimburse builder for up front charges and start up costs such as but not limited to permit, impact fees, plans, survey, <u>commissions,</u>  insurance.**

**KENWOOD HOMES has already received a deposit in the amount of $1,500.**

<u>*The first draw will be short by the total deposit received.*</u>

| | |
|---|---|
| *Edward Finance* | 10\1\05 |
| Borrower | Date |
| *(signature)* | 10/11/05 |
| Borrower | Date: |
| | |
| Contractor | Date: |

Deposit @ closing

**FIRST FLORIDA BANK**
8931 CONFERENCE DRIVE, UNIT 2
FORT MYERS, FLORIDA 33918

DATE  OCTOBER 11, 2005
PHONE:  239-466-4545
FAX:  239-466-4479

YOU ARE HERBY AUTHORIZED TO CLOSE THE MORTGAGE LOAN REFERENCED BELOW IN STRICT COMPLIANCE WITH THESE SPECIFIC CLOSING INSTRUCTIONS AND ALL ATTACHED ADDENDA AND OUR GENERAL LOAN CLOSING INSTRUCTIONS.

## SPECIFIC LOAN CLOSING INSTRUCTIONS

Closing Agent: **PATRIOT TITLE SERVICES**

**LABELLE, FLORIDA 33935**
Closer: **TARA TORRONE**
Closer Telephone: **863-812-0180**
Closer Fax No.: **863-812-0918**

Borrower(s): **Edward Laremore**

Property Address: **7018 Pilgrim Ct**
**LaBelle, FLORIDA 33935**
Sellers: **ROBERT CHARLES, LLC**

Loan Number: **92-15-001218**
Fixed: _____ Arm: _____ Margin: _____
Caps: _____ Const. Perm _____
Type of Loan: **CONV.**
FHA/VA Case No.: _____
Underwriter: _____

Closing Date: **OCTOBER 11, 2005**
Disb. Date: **OCTOBER 11, 2005**
Loan Amount: $ **189,900.00**
Base Loan Amount: $ _____
Contract Price: $ _____
Interest Rate: **9.0000** %
Monthly P & I: $ _____ Term: **12**
First Payment: **DECEMBER 5, 2005**
Maturity Date: **OCTOBER 11, 2006**

This loan is to close in the name of FIRST FLORIDA BANK existing under the laws of the State of FLORIDA.

**EXPIRATION DATE: OCTOBER 11, 2005** . IF THIS LOAN DOES NOT CLOSE AND DISBURSE IN ACCORDANCE WITH THE CLOSING/EXPIRATION DATE OF THESE INSTRUCTIONS, YOU MUST CALL FFB CLOSING DEPARTMENT AT **239-466-4545** AND RETURN THE CLOSING PACKAGE AND DISBURSEMENT CHECK BY EXPRESS MAIL TO FFB.

MAIL-AWAY AND TO WHOM:
Mail-away package: On all loans, the HUD-1 must be reviewed prior to the mail-away. Failure to obtain FFB approval could cause a delay in issuance of audit number.

(X) THE FOLLOWING CONTINGENCIES OR CONDITIONS MUST BE MET PRIOR TO CLOSING/AT CLOSING AND CLEARED BY FFB CLOSING DEPARTMENT PERSONNEL IF SO STATED. PLEASE RETURN IN CLOSED LOAN PACKAGE:

1. **BORROWER TO SIGN/DATE FINAL 1003 (IN ENCLOSED CONF ENV).**
2. **PLANS/SPECS/CONTRACT TO BE SIGNED BY ALL PARTIES AT CLOSING.**
3. **DRAW SCHEDULE TO BE SIGNED BY ALL PARTIES AT CLOSING.**
4. **LENDER REQUIRES TWO WITNESSES ON MORTGAGE. PROVIDE FED/STATE.**
5. **PHOTO ID. HUD TO BE FAXED TO LAURIE/239-449-3170 &**
6. **AMANDA/239-449-3178;: FAX FOR FUNDING NUMBER PRIOR TO**
7. **DISBURSEMENT. FAX SGN HUD, NOTE, SGN PG OF MORTGAGE (PG**
8. **15&16), W-9(S), SELLER S AFFIDAVIT, DRAW SCHEDULE,**
9. **SPECS/PLANS, BUILDERS SALES CONTRACT, COST BREAKDOWN &**
10. **WARRANTY DEED TO LAURIE IMMEDIATELY AFTER CLOSING. NEED ALL**
11. **ORIGINAL DOCUMENTS BACK INCLUDING LOT AND CONSTRUCTION HUDS.**
12.

(X) The following riders must be attached and made a part of our mortgage/security instrument. The appropriate endorsements must also be attached to the title policy/if applicable. You are responsible to provide all endorsements necessary to meet secondary marketing/governmental requirements.

( ) PUD Endorsement and Rider if applicable, add references from Restrictive Covenants
( ) Condo Rider and Endorsement
( ) ARM Rider and Endorsement

( X) ALTA 8.1 Endorsement to Title Policy
( ) VA Transfer Rider

( ) FHA Non-occupancy Rider
(X) I-4 Family Rider
( ) Balloon Rider and Endorsement
(X) Form 9, or other similar form per state requirements, with No Exceptions
( ) Second Home Rider
( ) Other: _____

# FEDERAL TRUTH-IN LENDING STATEMENT
### (THIS IS NEITHER A CONTRACT NOR A COMMITMENT TO LEND)

FINAL

Creditor: **FIRST FLORIDA BANK**
8931 CONFERENCE DRIVE, UNIT 2
FORT MYERS, FLORIDA  33919

Edward Laremore
5012 Church Rd
Mount Laurel, NEW JERSEY  08054

Date: **October 11, 2005**

Loan Number: **92-15-001218**

Check box if applicable:

| ANNUAL PERCENTAGE RATE<br>The cost of your credit as a yearly rate<br>**16.5400 % \*** | FINANCE CHARGE<br>The dollar amount the credit will cost you.<br>$    **14,688.63 \*** | Amount Financed<br>The amount of credit provided to you or on your behalf.<br>$   **183,756.87** | Total of Payments<br>The amount you will have paid after you have made all payments as scheduled.<br>$   **198,445.50 \*** |
|---|---|---|---|

☐ **REQUIRED DEPOSIT:** The annual percentage rate does not take into account your required deposit.
**PAYMENTS:** Your payment schedule will be:

| Number of Payments | Amounts of Payments | When Payments Are Due | Number of Payments | Amounts of Payments | When Payments Are Due | Number of Payments | Amounts of Payments | When Payments Are Due |
|---|---|---|---|---|---|---|---|---|
| | | MONTHLY Beginning: | | | MONTHLY Beginning: | | | MONTHLY Beginning: |

**INTEREST ON THE AMOUNT OF CREDIT OUTSTANDING DURING THE CONSTRUCTION PERIOD WILL BE PAID MONTHLY, ALONG WITH ONE PAYMENT OF PRINCIPAL OF $189,900.00 DUE October 11, 2006**

☐ **DEMAND FEATURE:** This obligation has a demand feature.
☐ **VARIABLE RATE:** This loan has a Variable Rate Feature. Variable Rate disclosures have been provided to you earlier.
**11**

**INSURANCE:** The following insurance is required to obtain credit:
☐ Credit Life insurance and credit disability   ☒ Property Insurance   ☐ Flood Insurance   ☐ Mortgage Insurance
You may obtain the insurance from anyone you want that is acceptable to the creditor.
☐ If you purchase   ☐ property   ☐ flood insurance from creditor you will pay $ _____ for a one year term.
**SECURITY:** You are giving a security interest in: **7018 Pilgrim Ct, LaBelle, FLORIDA 33935**
☒ The goods or property being purchased   ☐ Real property you already own
**FILING FEES: $ 171.50**
**LATE CHARGE:** If a payment is more than   **15**   days late, you will be charged   **5.0000**  % of the principal and interest past due.

**PREPAYMENT:** If you pay off early, you
☐ may   ☒ will not   have to pay a penalty.
☐ may   ☒ will not   be entitled to a refund of part of the finance charge.
**ASSUMPTION:** Someone buying your property
☐ may   ☐ may, subject to conditions   ☒ may not   assume the remainder of your loan on the original terms.
See your contract documents for any additional information about nonpayment, default, any required repayment in full before the scheduled date and prepayment refunds and penalties.
\* means an estimate   ☐   all dates and numerical disclosures except the late payment disclosures are estimates.

The undersigned acknowledge receiving and reading a completed copy of this disclosure.
Neither you nor the creditor previously has become obligated to make or accept this loan, nor is any such obligation made by the delivery or signing of this disclosure.

| *Edward Laremore* | 10/11/05 | *Ralph Cochran* | 10/11/05 |
|---|---|---|---|
| Edward Laremore | (Date) | Ralph Cochran | (Date) |
| | (Date) | | (Date) |
| | (Date) | | (Date) |
| | (Date) | | (Date) |

NOTE:  Payments shown above do not include reserve deposits for taxes, assessments, and property or flood insurance.

22787
(10/01/02)

Loan No.: 92-15-001218

# PROMISSORY NOTE

Borrower: **Edward Laremore**

Lender: **FIRST FLORIDA BANK, A FLORIDA CHARTERED COMMERCIAL BANK 8850 TAMIAMI TRAIL NORTH NAPLES, FL 34108-2524 (239) 597-8989**

---

Principal Amount: $ **189,900.00**          Interest Rate:     **9.0000** %          Date of Note: **October 11, 2005**

**PROMISE TO PAY.** I ("Borrower"), jointly and severally, promise to pay to FIRST FLORIDA BANK, A FLORIDA CHARTERED COMMERCIAL BANK ("Lender"), or order, in lawful money of the United States of America, the principal amount of **One Hundred Eighty-Nine Thousand Nine Hundred and 00/100** Dollars ($ **189,900.00** ) together with interest at the rate of     **9.0000** % per annum on the unpaid principal balance from **October 11, 2005** , until paid in full.

**PAYMENT.** I will pay this loan in one principal amount of $ **189,900.00**     plus interest on **October 11, 2006** . This payment due on **October 11, 2006**     will be for all principal and all accrued interest not yet paid. In addition, I will pay regular monthly payments of all accrued unpaid interest due as of each payment date, beginning **December 5, 2005**     with all subsequent interest payments to be due on the same day of each month after that. Unless otherwise agreed or required by applicable law, payments will be applied first to any accrued unpaid interest; then to principal; then to any unpaid collection costs; and then to any late charges. The annual interest rate for this Note is computed on a 365/360 basis; that is, by applying the ratio of the annual interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. I will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.

**PREPAYMENT.** I agree that all loan fees and other prepaid finance charges are earned fully as of the date of the loan and will not be refunded to me upon early payment (whether voluntary or as a result of default), except as otherwise required by law. Except for the foregoing, I may pay without penalty all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve me of my obligation to continue to make payments under the payment schedule. Rather, early payments will reduce the principal balance due. I agree not to send Lender payments marked "paid in full", "without recourse", or similar language. If I send such a payment, Lender may accept it without losing any of Lender's rights under this Note, and I will remain obligated to pay any further amount owed to Lender. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: First Florida Bank; Main Office, 8850 Tamiami Trail North, Naples, FL 34108-2524.

**LATE CHARGE.** If a payment is more than 15 days late, I will be charged 5.000% of the principal amount past due.

**INTEREST AFTER DEFAULT.** Upon default, including failure to pay upon final maturity, Lender, at its option, may, if permitted under applicable law, increase the interest rate on this Note to 18.000% per annum, if and to the extent that the increase does not cause the interest rate to exceed the maximum rate permitted by applicable law.

**DEFAULT.** I will be in default under this Note if any of the following happen:

**Payment Default.** I fail to make any payment when due under this Note.

**Break Other Promises.** I break any promise made to Lender or fail to perform promptly at the time and strictly in the manner provided in this Note or in any agreement related to this Note, or in any other agreement or loan I have with Lender.

**Default In Favor of Third Parties.** I or any Grantor defaults under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of my property or my ability to repay this Note or perform my obligations under this Note or any of the related documents.

**False Statements.** Any representation or statement made or furnished to Lender by me or on my behalf, or made by Guarantor, or any other guarantor, endorser, surety, or accommodation party, under this Note or the related documents in connection with the obtaining of the loan evidenced by this Note or any security document directly or indirectly securing repayment of this Note is false or misleading in any material respect, either now or at the time made or furnished.

**Death or Insolvency.** Any Borrower dies or becomes insolvent; a receiver is appointed for any part of my property; I make an assignment for the benefit of creditors; or any proceeding is commenced either by me or against me under any bankruptcy or insolvency laws.

**Taking of the Property.** Any creditor or governmental agency tries to take any of the property or any other of my property in which Lender has a lien. This includes taking of, garnishing of or levying on my accounts with Lender. However, if I dispute in good faith whether the claim on which the taking of the property is based is valid or reasonable, and if I give Lender written notice of the claim and furnish Lender with monies or a surety bond satisfactory to Lender to satisfy the claim, then this default provision will not apply.

**Defective Collateralization.** This Note or any of the related documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Collateral Damage or Loss.** Any collateral securing this Note is lost, stolen, substantially damaged or destroyed and the loss, theft, substantial damage or destruction is not covered by insurance.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor, or any other guarantor, endorser, surety, or accommodation party of any of the indebtedness or any Guarantor, or any other guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any guaranty of the indebtedness evidenced by this Note. In the event of a death, Lender, at its option, may, but shall not be required to, permit the Guarantor's estate to assume unconditionally the obligations arising under the guaranty in a manner satisfactory to Lender, and, in doing so, cure any Event of Default.

**Insecurity.** Lender in good faith believes itself insecure.

**Cure Provisions:** If any default, other than a default in payment is curable and if I have not been given a notice of a breach of the same provision of this Note within the preceding twelve (12) months, it may be cured (and no event of default will have occurred) if I, after receiving written notice from Lender demanding cure of such default: (1) cure the default within ten (10) days; or (2) if the cure requires more than ten (10) days, immediately initiate steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continue and complete all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**LENDER'S RIGHTS.** Upon default, Lender may declare the entire unpaid principal balance on this Note and all accrued unpaid interest immediately due, and then I will pay that amount.

24166-01
(01/23/04)

## CONSTRUCTION/PERMANENT ADDENDUM TO
## SPECIFIC & GENERAL CLOSING INSTRUCTIONS

Closing Agent acknowledges that he will be responsible for modification of this loan to a Permanent loan upon completion of the construction contract.

1. **Notice of Commencement**
   A Notice of Commencement, provided by the either the closing agent, or First Florida Bank, must be recorded by the closing agent. (NO funds may be disbursed until the Notice of Commencement has been recorded).

   | | |
   |---|---|
   | Closing disbursement amount: | $ __65,834.50__ |
   | Amount to be retained in LIP account: | $ __124,065.50__ |
   | Draws during construction based on: | $ __138,295.00__ |

   The original must be returned to FFB and a notice posted at the job site.

2. **Mortgage/Security Instrument**
   A copy of the Rider to the Note MUST be recorded with the Security Instrument documents along with any other rider(s), as required.

3. **HUD-1 Preparation**
   If there is a builder/contractor involved in the transaction, you MUST show them as the seller. The Loan in Process (LIP) amount should be shown on builder/contractor side. If the builder/contractor is not the seller of the lot you will need to provide two separate HUD Settlement Statements.
   The amount allocated towards closing costs and lot purchase, etc., as described on page 9 of 9 of the Construction Development Agreement, must be exact. If your actual figures are less than these amounts any overage should be returned to the LIP account. A separate check should be returned to FFB with the closed loan package.

   **FAX TO FFB FOR APPROVAL PRIOR TO CLOSING**

4. **Monthly Escrows**
   Conventional Construction Loans: Escrows for Taxes and Insurance will be collected at the time of modification to a permanent loan.

   **NOTE:**
   Builders Risk policy for replacement coverage of the dwelling must be provided prior to the first draw. If Flood insurance is required it must be in effect after the slab is poured.

5. **Title Policies/Update**
   **Title update Fees will be collected at Modification**. Construction Liens/Notice of Commencement - FFB will not accept title policies which contain Schedule B exceptions for construction liens, liens for service, labor, materials, etc. or a Notice of Commencement.

6. When loan has closed and disbursed, fax a copy of the executed Note, Security Instrument, Rider to Note (if applicable) and Notice of Commencement to our Construction Department,
   Attn: __LAURIE PAULA__ , Fax Number: 407-691-4665.

7. **Recording Documents**
   **IMPORTANT:** IF THERE IS A WAY YOU CAN RECORD THE CLOSING DOCUMENTS (DEED, SECURITY INSTRUMENT, ASSIGNMENT OF SECURITY INSTRUMENT, AND NOTICE OF COMMENCEMENT ON A "PRIORITY" BASIS YOU MUST DO SO! COLLECT THE APPROPRIATE ADDITIONAL FEES AND REQUEST THE COUNTY RECORD PRIORITY WHEN TAKING TO THE COUNTY FOR RECORDING.

   *** NO DISBURSEMENTS WILL BE MADE BY FFB FROM THE LIP ACCOUNT UNTIL A COPY OF THE SIGNED NOTE, **RECORDED** SECURITY INSTRUMENT, AND **RECORDED** NOTICE OF COMMENCEMENT.

Rev. 03/19/01  DPS 13438

# MORTGAGE LOAN COMMITMENT

| | | | |
|---|---|---|---|
| Applicants: | Edward J Laremore | Lender: | **First Florida Bank**<br>**8931 Conference Drive Suite 2**<br>**Fort Myers, FL 33919** |
| Property Address: | **7018 Pilgrim Ct**<br>**Labelle, FL 33935** | | |
| Application No: | **Laremore YR05** | Date Prepared: | **10/06/2005** |

It is a pleasure to notify you that your application for a first mortgage loan has been approved subject to the following matters set forth below. See Good Faith Estimate of Settlement Charges for any related closing costs.

**AMOUNT, TERMS AND FEES**

| | | | | | |
|---|---|---|---|---|---|
| Amount of Loan: $ | **189,900** | Contract Interest Rate: | **9.000** % | LTV: | **98.755** % |
| Terms/Due In: | **12/12** | Commitment Expires: | **11/06/2005** | CLTV: | **98.755** % |

**REPAYMENT TERMS**

CONSTRUCTION ONLY
12 MONTH TERM - BALLOON NOTE AT END OF TERM
9.00% INTEREST ONLY DURING CONSTRUCTION
BUILDER PAYING INTERETS DURING CONSTRUCTION

**EVIDENCE OF TITLE**

The following Evidence of Title is to be provided to the Lender and must indicate no liens, encumbrances, or any adverse covenants or conditions to title unless approved by Lender.   The Evidence of Title must be issued from a firm or source, and in a form, acceptable to Lender.     **REQUIRED**

Borrower will be charged for the cost of providing such title and the cost of recording documents, all of which will be ordered by Lender unless requested otherwise.

**ADDITIONAL REQUIRED ITEMS OR CONDITIONS**

ALL PARTIES TO SIGN PLANS
ALL PARTIES TO SIGN SPECS
ALL PARTIES TO SIGN 20% SRAW SCHEDULE
TWO WITNESSES REQUIRED ON MORTGAGE

---

**SEE NEXT PAGE INSTRUCTIONS**

The Continuation of Commitment Conditions is made a part of this Commitment. Please sign and return Lender's COPY of this Commitment, along with any required fee and items requested, to the lender at the:  ☐ above address   ☐ following address, within _____ days of date hereof, or at the option of Lender, this commitment shall become null and void.
I  (WE)  hereby accept the terms and Conditions of this Commitment.

**COMMITMENT ISSUED BY:**

ADDRESS:

| | |
|---|---|
| _____ | _____ |
| Authorized Signature          Date | |
| *Edward J. Laremore* 10/11/05 | |
| Applicant   Edward J Laremore        Date | Applicant                              Date |
| _____ | _____ |
| Applicant                              Date | Applicant                              Date |

Calyx Form MLC 12/93

| A. | U. S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT | B. | TYPE OF LOAN |
|---|---|---|---|

**SETTLEMENT STATEMENT**

**Patriot Title Services, LLC**
825 E. Cowboy Way
Suite 109
Labelle, Florida 33935
863-612-0180 fax: 863-612-0916

1. ☐ FHA  2. ☐ FMHA  3. ☐ CONV. UNINS.
4. ☐ VA  5. ☐ CONV. INS.

6. File Number: TT-0769  7. Loan Number:
8. Mortgage Ins. Case No.:

C. NOTE: This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown. Items marked (poc) were paid outside the closing. They are shown here for informational purposes and are not included in the totals.

**D. Borrower:** Ralph Cochran and Edward Laremore
5012 Church Road
MountLaurel, NJ 08054

**E. Seller:** Robert Charles, LLC, a Florida Limited Liability Company
15500 Idalia Drive
Alva, FL 33920

**F. Lender:**

**G. Property:** 7018 Pilgrim Court
La Belle, Hendry County, Florida 33935
Lot 11, Block 2224; Port La Belle, Unit 7, Book 3, Page 116; Hendry County, Florida

**H. Settlement Agent:** Patriot Title Services, LLC
**Place of Settlement:** 825 E. Cowboy Way, Suite 109, Labelle, Florida 33935  Hendry County
**I. Settlement Date:** October 11, 2005

| J. | Summary of Borrower's Transaction | | K. | Summary of Seller's Transaction | |
|---|---|---|---|---|---|
| **100. Gross Amount Due From Borrower:** | | | **400. Gross Amount Due To Seller:** | | |
| 101. | Contract Sales Price | 50,000.00 | 401. | Contract Sales Price | 50,000.00 |
| 102. | Personal Property | | 402. | Personal Property | |
| 103. | Settlement Charges to Borrower (line 1400) | 68.50 | 403. | | |
| | **Adjustments for Items Paid by Seller in Advance:** | | | **Adjustments for Items Paid by Seller in Advance:** | |
| 106. | City / Town Taxes | | 406. | City / Town Taxes | |
| 107. | County / Parish Taxes | | 407. | County / Parish Taxes | |
| 108. | Assessments | | 408. | Assessments | |
| **120.** | **Gross Amount Due from Borrower:** | 50,068.50 | **420.** | **Gross Amount Due to Seller:** | 50,000.00 |
| **200. Amounts Paid by or in Behalf of Borrower:** | | | **500. Reductions in Amount Due to Seller:** | | |
| 201. | Deposit / Earnest Money | | 501. | Excess Deposit (see instructions) | |
| 202. | Principal Amount of New Loan | | 502. | Settlement Charges to Seller (Line 1400) | 837.50 |
| 203. | Existing Loan(s) | | 503. | Existing Loan(s) | |
| 204. | | | 504. | Payoff of First Mortgage to | |
| 205. | | | 505. | Payoff of Second Mortgage to | |
| 206. | | | 506. | Purchase Money Mortgage to | |
| | **Adjustments for Items Unpaid by Seller:** | | | **Adjustments for Items Unpaid by Seller:** | |
| 210. | City / Town Taxes | | 510. | City / Town Taxes | |
| 211. | County / Parish Taxes Jan 1, 2005 thru Oct 10, 2005 | 69.57 | 511. | County / Parish Taxes Jan 1, 2005 thru Oct 10, 2005 | 69.57 |
| 212. | Assessments | | 512. | Assessments | |
| **220.** | **Total Paid by / for Borrower:** | 69.57 | **520.** | **Total Reductions in Amount Due Seller:** | 907.07 |
| **300. Cash at Settlement from / to Borrower:** | | | **600. Cash at Settlement to / from Seller:** | | |
| 301. | Gross Amount due from Borrower (line 120) | 50,068.50 | 601. | Gross Amount due to Seller (line 420) | 50,000.00 |
| 302. | Less Amount Paid by/for Borrower (line 220) | 69.57 | 602. | Less Reductions Amount due Seller (line 520) | 907.07 |
| **303.** | **Cash From Borrower:** | **$49,998.93** | **603.** | **Cash To Seller:** | **$49,092.93** |

I have carefully reviewed the HUD-1 Settlement Statement and to the best of my knowledge and belief, it is a true and accurate statement of all receipts and disbursements made on my account or by me in this transaction. I further certify that I have received a copy of HUD-1 Settlement Statement. Any interest accruing as a result of funds being placed in an interest bearing account will be for the benefit of the Settlement Agent.

Borrower: _____
Ralph Cochran

Borrower: _____
Edward Laremore

Seller: Robert Charles, LLC
_____
Kimberly Trapp, Managing Member

The HUD-1 Settlement Statement which I have prepared is a true and accurate account of this transaction. I have caused or will cause the funds to be disbursed in accordance with this statement.

Settlement Agent: _____
Tara Torrone

Date: October 11, 2005
File No.: TT-0769

WARNING: It is a crime to knowingly make false statements to the United States on this or any other similar form. Penalties upon conviction can include a fine or imprisonment. For details see: Title 18 U.S. Code Section 1001 and Section 1010.

OMB No. 2502-0265
RESPA handbook 4305.2

Settlement Date: October 11, 2005

File Number: TT-0769

| L.      Settlement Charges | Paid from Borrower's Funds at Settlement | Paid from Seller's Funds at Settlement |
|---|---|---|
| 700. Total Sales / Broker's Commission: Based on Price $50,000.00 Division of Commission as follows: | | |
| 701. | | |
| 702. | | |
| 703. Commission Paid at Settlement | | |
| 800. Items Payable in Connection with Loan: | | |
| 801. Loan Origination Fee | | |
| 802. Loan Discount | | |
| 803. Appraisal Fee | | |
| 804. Credit Report | | |
| 805. Lender's Inspection Fee | | |
| 806. Mortgage Insurance Application Fee | | |
| 807. Assumption Fee | | |
| 900. Items Required by Lender to be Paid in Advance: | | |
| 901. Interest from Oct 11, 2005 @ 0.0000 / day | | |
| 902. Mortgage Insurance Premium | | |
| 903. Hazard Insurance Premium | | |
| 904. Flood Insurance Premium | | |
| 1000. Reserves Deposited with Lender: | | |
| 1001. Hazard Insurance | | |
| 1002. Mortgage Insurance | | |
| 1003. City Property Taxes | | |
| 1004. County Property Taxes | | |
| 1005. Annual Assessments | | |
| 1100. Title Charges: | | |
| 1101. Settlement or Closing Fee to Patriot Title Services, LLC | 50.00 | 50.00 |
| 1102. Abstract or Title Search to Patriot Title Services, LLC | | 100.00 |
| 1103. Title Examination to Patriot Title Services, LLC | | 50.00 |
| 1104. Title Insurance Binder | | |
| 1105. Document Preparation | | |
| 1106. Notary Fees | | |
| 1107. Attorney Fees (includes above item numbers: | | |
| 1108. Title Insurance to Patriot Title Services, LLC (includes above item numbers: | | 287.50 |
| 1109. Lender's Coverage       0.00      Risk Premium      0.00 | | |
| 1110. Owner's Coverage    50,000.00   Risk Premium   287.50 | | |
| 1111. Courier Fee | | |
| 1112. | | |
| 1200. Government Recording and Transfer Charges: | | |
| 1201. Recording Fees:   Deed   18.50   Mortgage   0.00   Releases   0.00 | 18.50 | |
| 1202. City/County Tax/Stamps:   Deed   0.00   Mortgage   0.00 | | |
| 1203. State Tax/Stamps:   Deed   350.00   Mortgage   0.00 | | 350.00 |
| 1204. INTANGIBLE to Clerk of the Circuit Court | | |
| 1205. Record Notice of Termination | | |
| 1300. Additional Settlement Charges: | | |
| 1301. Survey | | |
| 1302. Pest Inspection | | |
| 1400. Total Settlement Charges (Enter on line 103, Section J and line 502, Section K) | $68.50 | $837.50 |

Borrower Initials:  _RC_  Ralph Cochran        _EL_ Edward Laremore

Seller Initials:  ____  Robert Charles, LLC

| A. | U. S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT SETTLEMENT STATEMENT | B. | TYPE OF LOAN |
|---|---|---|---|

**Patriot Title Services, LLC**
825 E. Cowboy Way
·Suite 109
Labelle, Florida 33935
863-612-0180 fax: 863-612-0916

1. ☐ FHA   2. ☐ FMHA   3. ☒ CONV. UNINS.
4. ☐ VA   5. ☐ CONV. INS.

| 6. File Number: TT-0769B | 7. Loan Number: 92-15-001218 |
|---|---|
| 8. Mortgage Ins. Case No.: | |

C. *NOTE: This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown. Items marked (poc) were paid outside the closing. They are shown here for informational purposes and are not included in the totals.*

| D. Borrower: | Ralph Cochran and Edward Laremore<br>213 Union Avenue<br>Stratford, NJ 08084 |
|---|---|
| E. Seller: | Kenwood Homes, Inc., a Florida Corporation<br>825 E. Cowboy Way, #108<br>Labelle, FL 33935 |
| F. Lender: | First Florida Bank, ISAOA<br>8931 Conference Drive #2<br>Ft. Myers, Florida 34108. |
| G. Property: | 7018 Pilgrim Court<br>La Belle, Hendry County, Florida 33935<br>Lot 11, Block 2224, Port La Belle, Unit 7, Book 3, Page 116, Hendry County, Florida |
| H. Settlement Agent: | Patriot Title Services, LLC |
| Place of Settlement: | 825 E. Cowboy Way, Suite 109, Labelle, Florida 33935  Hendry County |
| I. Settlement Date: | October 11, 2005 |

| J. | Summary of Borrower's Transaction | | K. | Summary of Seller's Transaction | |
|---|---|---|---|---|---|
| **100. Gross Amount Due From Borrower:** | | | **400. Gross Amount Due To Seller:** | | |
| 101. | Contract Sales Price | 142,295.00 | 401. | Contract Sales Price | 142,295.00 |
| 102. | Personal Property | | 402. | Personal Property | |
| 103. | Settlement Charges to Borrower (line 1400) | 59,543.11 | 403. | | |
| **Adjustments for Items Paid by Seller in Advance:** | | | **Adjustments for Items Paid by Seller in Advance:** | | |
| 106. | City / Town Taxes | | 406. | City / Town Taxes | |
| 107. | County / Parish Taxes | | 407. | County / Parish Taxes | |
| 108. | Assessments | | 408. | Assessments | |
| **120.** | **Gross Amount Due from Borrower:** | **201,838.11** | **420.** | **Gross Amount Due to Seller:** | **142,295.00** |
| **200. Amounts Paid by or in Behalf of Borrower:** | | | **500. Reductions in Amount Due to Seller:** | | |
| 201. | Deposit / Earnest Money | 1,500.00 | 501. | Excess Deposit (see instructions) | 1,500.00 |
| 202. | Principal Amount of New Loan | 189,900.00 | 502. | Settlement Charges to Seller (Line 1400) | 0.00 |
| 203. | Existing Loan(s) | | 503. | Existing Loan(s) | |
| 204. | Builder Credit | 4,000.00 | 504. | Payoff of First Mortgage to | |
| 205. | | | 505. | Payoff of Second Mortgage to | |
| 206. | | | 506. | Purchase Money Mortgage to | |
| 207. | | | 507. | Builder Credit | 4,000.00 |
| 208. | | | 508. | Lip Count | 124,065.50 |
| **Adjustments for Items Unpaid by Seller:** | | | **Adjustments for Items Unpaid by Seller:** | | |
| 210. | City / Town Taxes | | 510. | City / Town Taxes | |
| 211. | County / Parish Taxes | | 511. | County / Parish Taxes | |
| 212. | Assessments | | 512. | Assessments | |
| **220.** | **Total Paid by / for Borrower:** | **195,400.00** | **520.** | **Total Reductions in Amount Due Seller:** | **129,565.50** |
| **300. Cash at Settlement from / to Borrower:** | | | **600. Cash at Settlement to / from Seller:** | | |
| 301. | Gross Amount due from Borrower (line 120) | 201,838.11 | 601. | Gross Amount due to Seller (line 420) | 142,295.00 |
| 302. | Less Amount Paid by/for Borrower (line 220) | 195,400.00 | 602. | Less Reductions Amount due Seller (line 520) | 129,565.50 |
| **303.** | **Cash From Borrower:** | **$6,438.11** | **603.** | **Cash To Seller:** | **$12,729.50** |

I have carefully reviewed the HUD-1 Settlement Statement and to the best of my knowledge and belief, it is a true and accurate statement of all receipts and disbursements made on my account or by me in this transaction. I further certify that I have received a copy of HUD-1 Settlement Statement. Any interest accruing as a result of funds being placed in an interest bearing account will be for the benefit of the Settlement Agent.

Borrower: _Ralph C_____
Ralph Cochran

Borrower: _Edward Laremore_____
Edward Laremore

Seller: Kenwood Homes, Inc.
_____
Kimberly Trapp, President

The HUD-1 Settlement Statement which I have prepared is a true and accurate account of this transaction. I have caused or will cause the funds to be disbursed in accordance with this statement.

Settlement Agent: _____
Tara Torrone

Date: October 11, 2005
File No.: TT-0769B

WARNING: It is a crime to knowingly make false statements to the United States on this or any other similar form. Penalties upon conviction can include a fine or imprisonment. For details see: Title 18 U.S. Code Section 1001 and Section 1010.

HUD-1 June 2004
October 7, 2005 4:12 PM

OMB No. 2502-0265
RESPA handbook 4305.2

Settlement Date: October 11, 2005          Loan Number: 92-15-001218          File Number: TT-0769B

| L. | Settlement Charges | Paid from Borrower's Funds at Settlement | Paid from Seller's Funds at Settlement |
|---|---|---|---|
| 700. | **Total Sales / Broker's Commission:** | | |
| | Based on Price $192,295.00 | | |
| | Division of Commission as follows | | |
| 701. | | | |
| 702. | | | |
| 703. | Commission Paid at Settlement | | |
| **800.** | **Items Payable in Connection with Loan:** | | |
| 801. | Loan Origination Fee 1.000 % to First Florida Bank, ISAOA | 1,899.00 | |
| 802. | Loan Discount to First Florida Bank, ISAOA | | |
| 803. | Appraisal Fee to Coastal Engineering Cons | 350.00 | |
| 804. | Credit Report To CDS to Alan Kelly Mortgage, LLC | 26.00 | |
| 805. | Lender's Inspection Fee | | |
| 806. | Mortgage Insurance Application Fee | | |
| 807. | Assumption Fee | | |
| 808. | Broker Processing Fee to Alan Kelly Mortgage, LLC | 595.00 | |
| 809. | Construction Admin Fee to First Florida Bank, ISAOA | 712.13 | |
| 810. | Construction Inspection Fee to First Florida Bank, ISAOA | 320.00 | |
| 811. | Credit Report to First Florida Bank, ISAOA | 9.95 | |
| 812. | Flood Certification to Nationwide Total Flood Service | 18.00 | |
| 813. | Inspection Fee to First Florida Bank, ISAOA | 100.00 | |
| 814. | Mortgage Broker Compensation to Alan Kelly Mortgage, LLC | 2,399.00 | |
| **900.** | **Items Required by Lender to be Paid in Advance:** | | |
| 901. | Interest from Oct 11, 2005 @ 41.6219 / day | | |
| 902. | Mortgage Insurance Premium | | |
| 903. | Hazard Insurance Premium | | |
| 904. | Flood Insurance Premium | | |
| **1000.** | **Reserves Deposited with Lender:** | | |
| 1001. | Hazard Insurance | | |
| 1002. | Mortgage Insurance | | |
| 1003. | City Property Taxes | | |
| 1004. | County Property Taxes | | |
| 1005. | Annual Assessments | | |
| **1100.** | **Title Charges:** | | |
| 1101. | Settlement or Closing Fee to Patriot Title Services, LLC | 100.00 | |
| 1102. | Abstract or Title Search to Patriot Title Services, LLC | 100.00 | |
| 1103. | Title Examination to Patriot Title Services, LLC | 50.00 | |
| 1104. | Title Insurance Binder | | |
| 1105. | Document Preparation to First Florida Bank, ISAOA | 300.00 | |
| 1106. | Notary Fees | | |
| 1107. | Attorney Fees | | |
| | (includes above item numbers: | | |
| 1108. | Title Insurance to Patriot Title Services, LLC | 1,061.50 | |
| | (includes above item numbers: | | |
| 1109. | Lender's Coverage   189,900.00   Risk Premium   25.00 | | |
| 1110. | Owner's Coverage   142,295.00   Risk Premium   1,036.50 | | |
| 1111. | Courier Fee to Patriot Title Services, LLC | 100.00 | |
| 1112. | 8.1 Endorsement to Patriot Title Services, LLC | 25.00 | |
| 1113. | Florida Form 9 to Patriot Title Services, LLC | 106.15 | |
| **1200.** | **Government Recording and Transfer Charges:** | | |
| 1201. | Recording Fees:   Deed   0.00   Mortgage   205.50   Releases   0.00 | 205.50 | |
| 1202. | City/County Tax/Stamps:   Deed   0.00   Mortgage   0.00 | | |
| 1203. | State Tax/Stamps:   Deed   0.00   Mortgage   664.65 | 664.65 | |
| 1204. | INTANGIBLE to Clerk of the Circuit Court | 379.80 | |
| 1205. | Record Notice of Termination | | |
| 1206. | Recor Notice of Commencement to Clerk of the Circuit Court | 22.50 | |
| **1300.** | **Additional Settlement Charges:** | | |
| 1301. | Survey | | |
| 1302. | Pest Inspection | | |
| 1303. | Lot Payoff to Patriot Title Services, LLC | 49,998.93 | |
| **1400.** | **Total Settlement Charges (Enter on line 103, Section J and line 502, Section K)** | **$59,543.11** | **$0.00** |

Borrower Initials:  _RC_  Ralph Cochran          _EL_ Edward Laremore

Seller Initials:  _____  Kenwood Homes, Inc.

OMB No. 2502-0265
RESPA handbook 4305.2

HUD-1 (Rev. 12/92)                                                                OMB No. 2502-0265

**L.**                          **SETTLEMENT CHARGES**

| 700. TOTAL SALES/BROKER'S COMMISSION: BASED ON PRICE $ 182,295.00 @ % = | | | | PAID FROM BORROWER'S FUNDS AT SETTLEMENT | PAID FROM SELLER'S FUNDS AT SETTLEMENT |
|---|---|---|---|---|---|
| DIVISION OF COMMISSION (LINE 700) AS FOLLOWS: | | | | | |
| 701. $ | to | | | | |
| 702. $ | to | | | | |
| 703. Commission paid at settlement | | | | | |
| 704. | | | | | |

**800. ITEMS PAYABLE IN CONNECTION WITH LOAN:**   B=buyer  S=seller  L=lender  A=assign  R=broker

| Fees | Paid To | Paid By | Total as % | Total as $ | POC as $ | APR | |
|---|---|---|---|---|---|---|---|
| 801. Loan Origination fee | | | | | | | |
| 802. Loan Discount | FIRST FLORIDA BANK | B | | 1,889.00 | | 1,889.00 | x |
| 803. Appraisal fee | COASTAL ENGINEERING CONS | B | | 350.00 | | 350.00 | x |
| 804. Credit report | | | | | | | |
| 805. Lender's Inspection fee | | | | | | | |
| 808. | | | | | | | |
| 809. BROKER CREDIT REPORT | CDS | B | | 26.00 | | 26.00 | x |
| 810. Broker Processing Fee | ALAN KELLY MTG | B | | 595.00 | | 595.00 | x |
| 811. Construction Admin Fee ( | FIRST FLORIDA BANK | B | | 712.13 | | 712.13 | x |
| 812. Construction Inspections | FIRST FLORIDA BANK | B | | 320.00 | | 320.00 | x |
| 813. CREDIT REPORT -MAF | FIRST FLORIDA BANK | B | | 9.95 | | 9.95 | x |
| 814. Flood Certification | NATIONWIDE TOTAL FLOOD SERVICE | B | | 18.00 | | 18.00 | x |
| 815. INSPECTION FEE | FIRST FLORIDA BANK | B | | 100.00 | | 100.00 | x |
| 816. MORTGAGE BROKER COMPENSA | ALAN KELLY MTG | B | | 2,389.00 | | 2,389.00 | x |
| 817. | | | | | | | |

**900. ITEMS REQUIRED BY LENDER TO BE PAID IN ADVANCE:**

| 901. Interest from | to | @ $ | /day | | | | |
|---|---|---|---|---|---|---|---|
| 902. MI Premium for months | | | | | | | |
| 903. Hazard Ins. Prem for mos | | | | | | | |
| 904. Flood Ins. Prem for yrs | | | | | | | |
| 905. VA Funding Fee | | | | | | | |

**1000. RESERVES DEPOSITED WITH LENDER:**

| 1001. Hazard Insurance | months @ | per month | | 0.00 | |
|---|---|---|---|---|---|
| 1002. Mortgage Insurance | months @ | per month | | | |
| 1003. City property taxes | months @ | per month | | 0.00 | |
| 1004. County property taxes | months @ | per month | | 0.00 | |
| 1005. Annual Assessments | months @ | per month | | 0.00 | |
| 1006. Flood Insurance | months @ | per month | | 0.00 | |
| 1007. | months @ | per month | | 0.00 | |
| 1008. | | | | | |

**1100. TITLE CHARGES:**

| 1101. Settlement or closing fee | PATRIOT TITLE SERVICES | B | | 100.00 | | 100.00 | x |
|---|---|---|---|---|---|---|---|
| 1102. Abstract or title search | | | | | | | |
| 1103. Title examination | | | | | | | |
| 1104. Title Insurance binder | | | | | | | |
| 1105. Document preparation | FIRST FLORIDA BANK | B | | 300.00 | | 300.00 | |
| 1106. Notary fees | | | | | | | |
| 1107. Attorney's fees | | | | | | | |
| (includes above items Numbers: | | | | | ) | | |
| 1108. Title Insurance | | | | | | | |
| (includes above items Numbers: | | | | | ) | | |
| 1109. Lender's coverage | $ 189,900.00 | | | | | | |
| 1110. Owner's coverage | $ 182,295.00 | | | | | | |
| 1111. RECORDING FEE | PATRIOT TITLE SERVICES | B | | 171.50 | | 171.50 | |
| 1112. | | | | | | | |

**1200. GOVERNMENT RECORDING AND TRANSFER CHARGES:**

| 1201. Recording fees: | Deed $ | ; Mortgage $ | ; Releases $ | | |
|---|---|---|---|---|---|
| 1202. City/county tax/stamps: | Deed $ | ; Mortgage $ | | | |
| 1203. State tax/stamps: | Deed $ | ; Mortgage $ | | | |
| 1204. Recording assignment | | | | | |
| 1205. | | | | | |

**1300. ADDITIONAL SETTLEMENT CHARGES:**

| 1301. Survey | | | | | |
|---|---|---|---|---|---|
| 1302. Pest Inspection | | | | | |
| 1303. | | | | | |
| 1304. | | | | | |
| 1305. | | | | | |
| 1306. | | | | | |
| 1307. | | | | | |
| 1308. | | | | | |
| 1309. | | | | | |
| 1310. | | | | | |
| 1311. | | | | | |
| 1400. TOTAL SETTLEMENT CHARGES (Enter on line 103, Section J and line 502, Section K) | | | | 7,000.58 | 0.00 |

I have carefully reviewed the HUD-1 Settlement Statement and to the best of my knowledge and belief, it is a true and accurate statement of all receipts and disbursements made on my account or by me in this transaction. I further certify that I have received a copy of the HUD-1 Settlement Statement.

Borrower: _Edward Laremore_   Date: _10/11/05_     Seller: _____   Date: _____
Edward Laremore                                              ROBERT CHARLES, LLC

Borrower: _____ Date: _____     Seller: _____   Date: _____

The HUD-1 Settlement Statement which I have prepared is a true and accurate account of this transaction. I have caused or will cause the funds to be disbursed in accordance with this statement.

_____ Date: _____   Settlement Agent: _____   Date: _____

WARNING: It is a crime to knowingly make false statements to the United States on this or any other similar form. Penalties upon conviction can include a fine and imprisonment. For details see: Title 18 U.S. Code Section 1001 and Section 1010.

(12/16/03)   DPS 15327

## GOOD FAITH ESTIMATE

| | |
|---|---|
| Applicants: **Edward J Laremore** | Application No: **LAREMORE** |
| Property Addr: **7018 PILGRIM COURT, Labollo, FL 33935** | Date Prepared: **09/26/2005** |
| Prepared By: **Alan Kelly Mortgage   Ph. 863-674-0091** | Loan Program: |
| **825 E Cowboy Way, Labelle,, FL  33935** | |

The information provided below reflects estimates of the charges which you are likely to incur at the settlement of your loan. The fees listed are estimates-actual charges may be more or less. Your transaction may not involve a fee for every item listed. The numbers listed beside the estimates generally correspond to the numbered lines contained in the HUD-1 settlement statement which you will be receiving at settlement. The HUD-1 settlement statement will show you the actual cost for items paid at settlement.

Total Loan Amount: $ **189,900** .   Interest Rate:   **9.000** %   Term:   **360 / 360** mths

| 800 | ITEMS PAYABLE IN CONNECTION WITH LOAN: | | | | |
|---|---|---|---|---|---|
| 801 | Loan Origination Fee | + $ | 500.00 | $ | 500.00 |
| 802 | Loan Discount | | | | |
| 803 | Appraisal Fee | | | | 350.00 |
| 804 | Credit Report | | | | 28.00 |
| 805 | Lender's Inspection Fee | | | | |
| 808 | Mortgage Broker Fee | 1.000% | | | 1,899.00 |
| 809 | Tax Related Service Fee | | | | |
| 810 | Processing Fee | | | | 595.00 |
| 811 | Underwriting Fee | | | | |
| 812 | Wire Transfer Fee | | | | |
| | **First Florida** | | | | 1,899.00 |
| | Doc Prep First Florida | | | | 300.00 |
| | 70.00 per construction draw | | | | 320.00 |
| | Final Inspection | | | | 100.00 |
| | Construction Admin Fee (.375) | | | | 712.12 |
| | Flood Cert | | | | 18.00 |
| | Credit Report Fee FF | | | | 9.95 |
| | | | | | |
| 1100 | TITLE CHARGES: | | | | |
| 1101 | Closing or Escrow Fee: | | | $ | 100.00 |
| 1105 | Document Preparation Fee | | | | 50.00 |
| 1106 | Notary Fees | | | | |
| 1107 | Attorney Fees | | | | |
| 1108 | Title Insurance: | | | | 1,051.50 |
| | Title Search | | | | 100.00 |
| | Endorsement | | | | 25.00 |
| | Florida Form 9 | | | | 106.15 |
| | | | | | |
| 1200 | GOVERNMENT RECORDING & TRANSFER CHARGES: | | | | |
| 1201 | Recording Fees: | | | $ | 205.50 |
| 1202 | City/County Tax/Stamps: | | | | |
| 1203 | State Tax/Stamps: | | | | 664.65 |
| | Intangible Tax | | | | 379.80 |
| | Clerk of Court | | | | 22.50 |
| | | | | | |
| 1300 | ADDITIONAL SETTLEMENT CHARGES: | | | | |
| 1302 | Pest Inspection | | | $ | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | **Estimated Closing Costs** | | 9,446.17 |

| 900 | ITEMS REQUIRED BY LENDER TO BE PAID IN ADVANCE: | | | | |
|---|---|---|---|---|---|
| 901 | Interest for | days @ $ | 47.4750 | per day | $ |
| 902 | Mortgage Insurance Premium | | | | |
| 903 | Hazard Insurance Premium | | | | |
| 904 | | | | | |
| 905 | VA Funding Fee | | | | |
| | | | | | |
| 1000 | RESERVES DEPOSITED WITH LENDER: | | | | |
| 1001 | Hazard Insurance Premiums | months @ $ | | per month | $ |
| 1002 | Mortgage Ins. Premium Reserves | months @ $ | | per month | |
| 1003 | School Tax | months @ $ | | per month | |
| 1004 | Taxes and Assessment Reserves | months @ $ | | per month | |
| 1005 | Flood Insurance Reserves | months @ $ | | per month | |
| | | months @ $ | | per month | |
| | | months @ $ | | per month | |
| | | | | **Estimated Prepaid Items/Reserves** | |

| **TOTAL ESTIMATED SETTLEMENT CHARGES** | 9,446.17 |
|---|---|

| TOTAL ESTIMATED FUNDS NEEDED TO CLOSE: | | | | TOTAL ESTIMATED MONTHLY PAYMENT: | |
|---|---|---|---|---|---|
| Purchase Price/Payoff (+) | 192,295.00 | New First Mortgage(-) | | Principal & Interest | 1,527.98 |
| Loan Amount (-) | 189,900.00 | Sub Financing(-) | | Other Financing (P & I) | |
| Est. Closing Costs (+) | 9,446.17 | New 2nd Mtg Closing Costs(+) | | Hazard Insurance | |
| Est. Prepaid Items/Reserves (+) | 0.00 | | | Real Estate Taxes | |
| Amount Paid by Seller (-) | 4,000.00 | | | Mortgage Insurance | |
| Cash Deposit (-) | (1,500.00) | | | Homeowner Assn. Dues | |
| | | | | Other | |
| | | | | | |
| | | | | | |
| **Total Est. Funds needed to close** | | | 6,341.17 | **Total Monthly Payment** | 1,527.98 |

These estimates are provided pursuant to the Real Estate Settlement Procedures Act of 1974, as amended (RESPA). Additional information can be found in the HUD Special Information Booklet, which is to be provided to you by your mortgage broker or lender, if your application is to purchase residential real property and the lender will take a first lien on the property.   The undersigned acknowledges receipt of the booklet "Settlement Costs," and if applicable the Consumer Handbook on ARM Mortgages.

X _Edward J Laremore_   10/1/05
Applicant   Edward J Laremore    Date

Applicant                              Date

# TRUTH-IN-LENDING DISCLOSURE STATEMENT
### (THIS IS NEITHER A CONTRACT NOR A COMMITMENT TO LEND)

| | |
|---|---|
| Applicants: **Edward J Laremore** | Prepared By: **Alan Kelly Mortgage**<br>825 E Cowboy Way<br>Labelle, , FL  33935<br>863-674-0091 |
| Property Address: **7018 PILGRIM COURT**<br>**Labelle, FL 33935** | |
| Application No: **LAREMORE** | Date Prepared: 09/26/2006 |

| ANNUAL PERCENTAGE RATE | FINANCE CHARGE | AMOUNT FINANCED | TOTAL OF PAYMENTS |
|---|---|---|---|
| The cost of your credit as a yearly rate | The dollar amount the credit will cost you | The amount of credit provided to you or on your behalf | The amount you will have paid after making all payments as scheduled |
| **9.000 %** | $ **256,365.00** | $ **189,900.00** | $ **446,265.00** |

☐ **REQUIRED DEPOSIT:** The annual percentage rate does not take into account your required deposit

**PAYMENTS:** Your payment schedule will be:

| Number of Payments | Amount of Payments ** | When Payments Are Due. Monthly Beginning: | Number of Payments | Amount of Payments ** | When Payments Are Due | Number of Payments | Amount of Payments ** | When Payments Are Due Monthly Beginning: |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | |

**Repayment: One payment of principal of $ 189,900.00 on .**
**Interest on the amount of credit outstanding will be paid monthly.**

☐ **DEMAND FEATURE:** This obligation has a demand feature.
☐ **VARIABLE RATE FEATURE:** This loan contains a variable rate feature. A variable rate disclosure has been provided earlier.

**CREDIT LIFE/CREDIT DISABILITY:** Credit life insurance and credit disability insurance are not required to obtain credit, and will not be provided unless you sign and agree to pay the additional cost.

| Type | Premium | | Signature |
|---|---|---|---|
| Credit Life | | I want credit life insurance. | Signature: |
| Credit Disability | | I want credit disability insurance. | Signature: |
| Credit Life and Disability | | I want credit life and disability insurance. | Signature: |

**INSURANCE:** The following insurance is required to obtain credit:
☐ Credit life insurance ☐ Credit disability ☐ Property insurance ☐ Flood insurance
You may obtain the insurance from anyone you want that is acceptable to creditor
☐ If you purchase ☐ property ☐ flood insurance from creditor you will pay $ _____ for a one year term.
**SECURITY:** You are giving a security interest in:
☐ The goods or property being purchased ☐ Real property you already own.
**FILING FEES:** $
**LATE CHARGE:** If a payment is more than _____ days late, you will be charged _____ % of the payment
**PREPAYMENT:** If you pay off early, you
☐ may ☐ will not have to pay a penalty.
☐ may ☐ will not be entitled to a refund of part of the finance charge.
**ASSUMPTION:** Someone buying your property
☐ may ☐ may not assume the remainder of your loan on the original terms.
See your contract documents for any additional information about nonpayment, default, any required repayment in full before the scheduled date and prepayment refunds and penalties.
☐ * means an estimate ☐ all dates and numerical disclosures except the late payment disclosures are estimates.

* * NOTE: The Payments shown above include reserve deposits for Mortgage Insurance (if applicable), but exclude Property Taxes and Insurance.

THE UNDERSIGNED ACKNOWLEDGES RECEIVING A COMPLETED COPY OF THIS DISCLOSURE.

| | | |
|---|---|---|
| *Edward J Laremore*  10/11/05 | | |
| Edward J Laremore    (Applicant)    (Date) | | (Applicant)    (Date) |
| (Applicant)    (Date) | | (Applicant)    (Date) |
| (Lender)    (Date) | | |

# Uniform Residential Loan Application

This application is designed to be completed by the applicant(s) with the Lender's assistance. Applicants should complete this form as "Borrower" or "Co-Borrower", as applicable. Co-Borrower information must also be provided (and the appropriate box checked) when □ the income or assets of a person other than the "Borrower" (including the Borrower's spouse) will be used as a basis for loan qualification or □ the income or assets of the Borrower's spouse will not be used as a basis for loan qualification, but his or her liabilities must be considered because the Borrower resides in a community property state, the security property is located in a community property state, or the Borrower is relying on other property located in a community property state as a basis for repayment of the loan.

## I. TYPE OF MORTGAGE AND TERMS OF LOAN

| Mortgage Applied for: | □ VA  ☑ Conventional  □ Other (explain): | Agency Case Number | Lender Case Number |
|---|---|---|---|
| | □ FHA  □ USDA/Rural Housing Service | | |

| Amount | Interest Rate | No. of Months | Amortization Type: | □ Fixed Rate  ☑ Other (explain): Interest only |
|---|---|---|---|---|
| $ 189,900 | 9.000 % | 12/12 | | □ GPM  □ ARM (type): |

## II. PROPERTY INFORMATION AND PURPOSE OF LOAN

| Subject Property Address (street, city, state, ZIP) 7018 Pilgrim Ct,  Labelle, FL 33935   County: Hendry | No. of Units 1 |
|---|---|

| Legal Description of Subject Property (attach description if necessary) See Title Policy | Year Built 2006 |
|---|---|

| Purpose of Loan | □ Purchase  ☑ Construction  □ Other (explain): | Property will be: |
|---|---|---|
| | □ Refinance  □ Construction-Permanent | □ Primary Residence  □ Secondary Residence  ☑ Investment |

*Complete this line if construction or construction-permanent loan.*

| Year Lot Acquired | Original Cost | Amount Existing Liens | (a) Present Value of Lot | (b) Cost of Improvements | Total (a+b) |
|---|---|---|---|---|---|
| 2005 | $ 50,000 | $ 50,000 | $ 50,000 | $ 142,295 | $ 192,295 |

*Complete this line if this is a refinance loan.*

| Year Acquired | Original Cost | Amount Existing Liens | Purpose of Refinance | Describe Improvements  □ made  □ to be made |
|---|---|---|---|---|
| | $ | $ | | Cost: $ |

| Title will be held in what Name(s)  Edward J Laremore  Ralph Cochran | Manner in which Title will be held  Joint tenants | Estate will be held in: ☑ Fee Simple  □ Leasehold (show expiration date) |
|---|---|---|

| Source of Down Payment, Settlement Charges and/or Subordinate Financing (explain)  Checking/Savings |
|---|

## III. BORROWER INFORMATION

| | Borrower | | Co-Borrower |
|---|---|---|---|
| Borrower's Name (include Jr. or Sr. if applicable)  Edward J Laremore | | Co-Borrower's Name (include Jr. or Sr. if applicable) | |

| Social Security Number 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 | Home Phone (incl. area code) 856-727-9692 | DOB (MM/DD/YYYY) 03/16/1956 | Yrs. School 16 | Social Security Number | Home Phone (incl. area code) | DOB (MM/DD/YYYY) | Yrs. School |
|---|---|---|---|---|---|---|---|

| ☑ Married  □ Unmarried (include single, divorced, widowed) | Dependents (not listed by Co-Borrower)  no.____  ages____ | □ Married  □ Unmarried (include single, divorced, widowed) | Dependents (not listed by Borrower)  no.____  ages____ |
| □ Separated | | □ Separated | |

| Present Address (street, city, state, ZIP)  ☑ Own  □ Rent  13  No. Yrs.  5012 Church Rd  Mount Laurel, NJ 08054 | Present Address (street, city, state, ZIP)  □ Own  □ Rent  ____ No. Yrs. |
|---|---|

| Mailing Address, if different from Present Address | Mailing Address, if different from Present Address |
|---|---|

*If residing at present address for less than two years, complete the following:*

| Former Address (street, city, state, ZIP)  □ Own  □ Rent  ____ No. Yrs. | Former Address (street, city, state, ZIP)  □ Own  □ Rent  ____ No. Yrs. |
|---|---|

## IV. EMPLOYMENT INFORMATION

| | Borrower | | Co-Borrower |
|---|---|---|---|

| Name & Address of Employer  Fellowship Alliance Chapel  199 Church  Medford, NJ 08055 | ☑ Self Employed | Yrs. on this job 20 yr(s) | Name & Address of Employer | □ Self Employed | Yrs. on this job |
|---|---|---|---|---|---|
| | | Yrs. employed in this line of work/profession 20 | | | Yrs. employed in this line of work/profession |

| Position/Title/Type of Business  Associate Pastor | Business Phone (incl. area code) 609-953-7333 | Position/Title/Type of Business | Business Phone (incl. area code) |
|---|---|---|---|

*If employed in current position for less than two years or if currently employed in more than one position, complete the following:*

| Name & Address of Employer | □ Self Employed | Dates (from-to) | Name & Address of Employer | □ Self Employed | Dates (from-to) |
|---|---|---|---|---|---|
| | | Monthly Income  $ | | | Monthly Income  $ |
| Position/Title/Type of Business | | Business Phone (incl. area code) | Position/Title/Type of Business | | Business Phone (incl. area code) |

| Name & Address of Employer | □ Self Employed | Dates (from-to) | Name & Address of Employer | □ Self Employed | Dates (from-to) |
|---|---|---|---|---|---|
| | | Monthly Income  $ | | | Monthly Income  $ |
| Position/Title/Type of Business | | Business Phone (incl. area code) | Position/Title/Type of Business | | Business Phone (incl. area code) |

Freddie Mac Form 65   01/04
Calyx Form 1003 Loanapp1.frm 01/04

Page 1 of 4

Borrower  *EL*
Co-Borrower  *RC*

Fannie Mae Form 1003   01/04

## V. MONTHLY INCOME AND COMBINED HOUSING EXPENSE INFORMATION

| Gross Monthly Income | Borrower | Co-Borrower | Total | Combined Monthly Housing Expense | Present | Proposed |
|---|---|---|---|---|---|---|
| Base Empl. Income* | $ | $ | $ | Rent | $ | |
| Overtime | | | | First Mortgage (P&I) | | $ 1,424.25 |
| Bonuses | | | | Other Financing (P&I) | | |
| Commissions | | | | Hazard Insurance | 44.25 | 100.00 |
| Dividends/Interest | | | | Real Estate Taxes | 400.00 | 200.00 |
| Net Rental Income | | | | Mortgage Insurance | | |
| Other (before completing, see the notice in "describe other income," below) | 5,750.00 | | 5,750.00 | Homeowner Assn. Dues | | |
| | | | | Other: | | |
| Total | $ 5,750.00 | $ | $ 5,750.00 | Total | $ 444.25 | $ 1,724.25 |

* Self Employed Borrower(s) may be required to provide additional documentation such as tax returns and financial statements.

Describe Other Income   *Notice:* Alimony, child support, or separate maintenance income need not be revealed if the Borrower (B) or Co-Borrower (C) does not choose to have it considered for repaying this loan.

| B/C | | | Monthly Amount |
|---|---|---|---|
| B | Stated Income | | $ 5,750.00 |
| | | | |

## VI. ASSETS AND LIABILITIES

This Statement and any applicable supporting schedules may be completed jointly by both married and unmarried Co-borrowers if their assets and liabilities are sufficiently joined so that the Statement can be meaningfully and fairly presented on a combined basis; otherwise, separate Statements and Schedules are required. If the Co-Borrower section was completed about a spouse, this Statement and supporting schedules must be completed about that spouse also.

Completed ☐ Jointly   ☑ Not Jointly

| ASSETS Description | Cash or Market Value | Liabilities and Pledged Assets. List the creditor's name, address and account number for all outstanding debts, including automobile loans, revolving charge accounts, real estate loans, alimony, child support, stock pledges, etc. Use continuation sheet, if necessary. Indicate by (*) those liabilities which will be satisfied upon sale of real estate owned or upon refinancing of the subject property. | | |
|---|---|---|---|---|
| Cash deposit toward purchase held by: | $ | | | |
| | | **LIABILITIES** | Monthly Payment & Months Left to Pay | Unpaid Balance |
| List checking and savings accounts below | | Name and address of Company | $ Payment/Months | $ |
| Name and address of Bank, S&L, or Credit Union Morgan Stanley | | DISCOVER FIN POB 15316 WILMINGTON, DE 19850 | | |
| | | Acct. no.   601130006485 | 55 | 3,449 |
| Acct. no.   680019714010 | $ 139,895 | Name and address of Company | $ Payment/Months | $ |
| Name and address of Bank, S&L, or Credit Union Vanguard | | HUDSON UN BK P O BOX 829 UNION CITY, NJ 07087 | | |
| | | Acct. no.   15000655610 | 15 | 260 |
| Acct. no.   9864896480 | $ 84,270 | Name and address of Company | $ Payment/Months | $ |
| Name and address of Bank, S&L, or Credit Union Hudson Bank | | MBNA AMERICA PO BOX 17054 WILMINGTON, DE 19884 | | |
| | | Acct. no.   3880 | 15 | 1,335 |
| Acct. no. | $ 1,657 | Name and address of Company | $ Payment/Months | $ |
| Name and address of Bank, S&L, or Credit Union | | | | |
| | | Acct. no. | | |
| Acct. no. | $ | Name and address of Company | $ Payment/Months | $ |
| Stocks & Bonds (Company name/ number & description) Lord Abbett Retirement | $ 50,732 | | | |
| | | Acct. no. | | |
| | | Name and address of Company | $ Payment/Months | $ |
| Life insurance net cash value | $ | | | |
| Face amount: $ | | | | |
| Subtotal Liquid Assets | $ 276,555 | Acct. no. | | |
| Real estate owned (enter market value from schedule of real estate owned) | $ 375,000 | Name and address of Company | $ Payment/Months | $ |
| Vested interest in retirement fund | $ | | | |
| Net worth of business(es) owned (attach financial statement) | $ | | | |
| Automobiles owned (make and year) | $ | Acct. no. | | |
| | | Alimony/Child Support/Separate Maintenance Payments Owed to: | $ | |
| Other Assets (itemize) | $ | | | |
| | | Job Related Expense (child care, union dues, etc.) | $ | |
| | | Total Monthly Payments | $ 85 | |
| Total Assets a. | $ 651,555 | Net Worth (a minus b) => | $ 646,511 | Total Liabilities b. | $ 5,044 |

Freddie Mac Form 65   01/04
Calyx Form 1003 Loanapp2.frm 01/04

Page 2 of 4

Borrower _____
Co-Borrower _____

Fannie Mae Form 1003   01/04

## VI. ASSETS AND LIABILITIES (cont.)

**Schedule of Real Estate Owned** (if additional properties are owned, use continuation sheet)

| Property Address (enter S if sold, PS if pending sale or R if rental being held for income) | Type of Property | Present Market Value | Amount of Mortgages & Liens | Gross Rental Income | Mortgage Payments | Insurance, Maintenance, Taxes & Misc. | Net Rental Income |
|---|---|---|---|---|---|---|---|
| 5012 Church Rd Mt Laurel NJ | SFR | $ 375,000 | $ 0 | $ 0 | $ 0 | $ 444 | $ |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| Totals | $ | 375,000 | $ | $ | $ | $ 444 | $ |

List any additional names under which credit has previously been received and indicate appropriate creditor name(s) and account number(s):

| Alternate Name | Creditor Name | Account Number |
|---|---|---|
| | | |

## VII. DETAILS OF TRANSACTION

| | |
|---|---|
| a. Purchase price | $ 192,295.00 |
| b. Alterations, improvements, repairs | |
| c. Land (if acquired separately) | |
| d. Refinance (incl. debts to be paid off) | |
| e. Estimated prepaid items | |
| f. Estimated closing costs | 7,048.53 |
| g. PMI, MIP, Funding Fee | |
| h. Discount (if Borrower will pay) | 1,899.00 |
| i. Total costs (add items a through h) | 201,242.53 |
| j. Subordinate financing | |
| k. Borrower's closing costs paid by Seller | 4,000.00 |
| l. Other Credits (explain) Cash Deposit on sales contract | |
| m. Loan amount (exclude PMI, MIP, Funding Fee financed) | 189,900.00 |
| n. PMI, MIP, Funding Fee financed | |
| o. Loan amount (add m & n) | 189,900.00 |
| p. Cash from/to Borrower (subtract j, k, l & o from i) | 7,342.53 |

## VIII. DECLARATIONS

If you answer "yes" to any questions a through i, please use continuation sheet for explanation.

| | Borrower | | Co-Borrower | |
|---|---|---|---|---|
| | Yes | No | Yes | No |
| a. Are there any outstanding judgments against you? | ☐ | ☑ | ☐ | ☐ |
| b. Have you been declared bankrupt within the past 7 years? | ☐ | ☑ | ☐ | ☐ |
| c. Have you had property foreclosed upon or given title or deed in lieu thereof in the last 7 years? | ☐ | ☑ | ☐ | ☐ |
| d. Are you a party to a lawsuit? | ☐ | ☑ | ☐ | ☐ |
| e. Have you directly or indirectly been obligated on any loan which resulted in foreclosure, transfer of title in lieu of foreclosure, or judgment? (This would include such loans as home mortgage loans, SBA loans, home improvement loans, educational loans, manufactured (mobile) home loans, any mortgage, financial obligation, bond, or loan guarantee. If "Yes," provide details, including date, name and address of Lender, FHA or VA case number, if any, and reasons for the action.) | ☐ | ☑ | ☐ | ☐ |
| f. Are you presently delinquent or in default on any Federal debt or any other loan, mortgage, financial obligation, bond, or loan guarantee? If "Yes," give details as described in the preceding question. | ☐ | ☑ | ☐ | ☐ |
| g. Are you obligated to pay alimony, child support, or separate maintenance? | ☐ | ☑ | ☐ | ☐ |
| h. Is any part of the down payment borrowed? | ☐ | ☑ | ☐ | ☐ |
| i. Are you a co-maker or endorser on a note? | ☐ | ☑ | ☐ | ☐ |
| j. Are you a U. S. citizen? | ☑ | ☐ | ☐ | ☐ |
| k. Are you a permanent resident alien? | ☐ | ☑ | ☐ | ☐ |
| l. Do you intend to occupy the property as your primary residence? If "Yes," complete question m below. | ☐ | ☑ | ☐ | ☐ |
| m. Have you had an ownership interest in a property in the last three years? | ☑ | ☐ | ☐ | ☐ |
| (1) What type of property did you own-principal residence (PR), second home (SH), or investment property (IP)? | PR | | | |
| (2) How did you hold title to the home-solely by yourself (S), jointly with your spouse (SP), or jointly with another person (O)? | SP | | | |

## IX. ACKNOWLEDGEMENT AND AGREEMENT

Each of the undersigned specifically represents to Lender and to Lender's actual or potential agents, brokers, processors, attorneys, insurers, servicers, successors and assigns and agrees and acknowledges that: (1) the information provided in this application is true and correct as of the date set forth opposite my signature and that any intentional or negligent misrepresentation of this information contained in this application may result in civil liability, including monetary damages, to any person who may suffer any loss due to reliance upon any misrepresentation that I have made on this application, and/or in criminal penalties including, but not limited to, fine or imprisonment or both under the provisions of Title 18, United States Code, Sec. 1001, et seq.; (2) the loan requested pursuant to this application (the "Loan") will be secured by a mortgage or deed of trust on the property described herein; (3) the property will not be used for any illegal or prohibited purpose or use; (4) all statements made in this application are made for the purpose of obtaining a residential mortgage loan; (5) the property will be occupied as indicated herein; (6) any owner or servicer of the Loan may verify or reverify any information contained in the application from any source named in this application, and Lender, its successors or assigns may retain the original and/or an electronic record of this application, even if the Loan is not approved; (7) the Lender and its agents, brokers, insurers, servicers, successors and assigns may continuously rely on the information contained in the application, and I am obligated to amend and/or supplement the information provided in this application if any of the material facts that I have represented herein should change prior to closing of the Loan; (8) in the event that my payments on the Loan become delinquent, the owner or servicer of the Loan may, in addition to any other rights and remedies that it may have relating to such delinquency, report my name and account information to one or more consumer credit reporting agencies; (9) ownership of the Loan and/or administration of the Loan account may be transferred with such notice as may be required by law; (10) neither Lender nor its agents, brokers, insurers, servicers, successors or assigns has made any representation or warranty, express or implied, to me regarding the property or the condition or value of the property; and (11) my transmission of this application as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or my facsimile transmission of this application containing a facsimile of my signature, shall be as effective, enforceable and valid as if a paper version of this application were delivered containing my original written signature.

| Borrower's Signature | Date | Co-Borrower's Signature | Date |
|---|---|---|---|
| X Edward J. Laurman | 10/11/05 | X | 16/11/05 |

## X. INFORMATION FOR GOVERNMENT MONITORING PURPOSES

The following information is requested by the Federal Government for certain types of loans related to a dwelling in order to monitor the lender's compliance with equal credit opportunity, fair housing and home mortgage disclosure laws. You are not required to furnish this information, but are encouraged to do so. The law provides that a Lender may discriminate neither on the basis of this information, nor on whether you choose to furnish it. If you furnish the information, please provide both ethnicity and race. For race, you may check more than one designation. If you do not furnish ethnicity, race, or sex, under Federal regulations, this lender is required to note the information on the basis of visual observation or surname. If you do not wish to furnish the information, please check the box below. (Lender must review the above material to assure that the disclosures satisfy all requirements to which the lender is subject under applicable state law for the particular type of loan applied for.)

| BORROWER | ☐ I do not wish to furnish this information | CO-BORROWER | ☐ I do not wish to furnish this information |
|---|---|---|---|
| **Ethnicity:** | ☐ Hispanic or Latino   ☐ Not Hispanic or Latino | **Ethnicity:** | ☐ Hispanic or Latino   ☐ Not Hispanic or Latino |
| **Race:** | ☐ American Indian or Alaska Native   ☐ Asian   ☐ Black or African American   ☐ Native Hawaiian or Other Pacific Islander   ☐ White | **Race:** | ☐ American Indian or Alaska Native   ☐ Asian   ☐ Black or African American   ☐ Native Hawaiian or Other Pacific Islander   ☐ White |
| **Sex:** | ☐ Female   ☐ Male | **Sex:** | ☐ Female   ☐ Male |

| To be Completed by Interviewer | Interviewer's Name (print or type) | Name and Address of Interviewer's Employer |
|---|---|---|
| This application was taken by: ☐ Face-to-face interview ☐ Mail ☑ Telephone ☐ Internet | Ziggie R Bays | First Florida Bank 8931 Conference Dr Suite 2 Ft Myers, FL 33919 (P) 239-466-4545 (F) 239-466-4479 |
| | Interviewer's Signature ___ Date 9/29/05 | |
| | Interviewer's Phone Number (incl. area code) 239-466-4545 | |

# TRUTH-IN-LENDING DISCLOSURE STATEMENT
(THIS IS NEITHER A CONTRACT NOR A COMMITMENT TO LEND)

| | |
|---|---|
| Applicants: **EDWARD J LAREMORE** | Prepared By: **FIRST NATIONAL MORTGAGE SOURCES** |
| *Σ ΣΣ* | **1820 W. 6TH STREET STE. 100** |
| Property Address: **7014 PILGRAM COURT** | **LAWRENCE , KS 66044** |
| **Labelle, FL 33936** | **666-261-8601** |
| Application No: **LAREMORE_PILGRAM** | Date Prepared: **12/12/2006** |

| ANNUAL PERCENTAGE RATE | FINANCE CHARGE | AMOUNT FINANCED | TOTAL OF PAYMENTS |
|---|---|---|---|
| The cost of your credit as a yearly rate | The dollar amount the credit will cost you | The amount of credit provided to you or on your behalf | The amount you will have paid after making all payments as scheduled |
| *   7.308  % | $  *   433,095.83 | $   *   184,973.67 | $  *   618,069.50 |

☐ REQUIRED DEPOSIT:  The annual percentage rate does not take into account your required deposit
PAYMENTS:  Your payment schedule will be:

| Number of Payments | Amount of Payments ** | When Payments Are Due | Number of Payments | Amount of Payments | When Payments Are Due | Number of Payments | Amount of Payments ** | When Payments Are Due |
|---|---|---|---|---|---|---|---|---|
| | | Monthly Beginning: | | | Monthly Beginning: | | | Monthly Beginning: |
| 60 | 421.96 | 02/01/2007 | | | | | | |
| 299 | 1,672.18 | 02/01/2012 | | | | | | |
| 1 | 122,669.06 | 01/01/2037 | | | | | | |

☐ DEMAND FEATURE:  This obligation has a demand feature.
☑ VARIABLE RATE FEATURE:  This loan contains a variable rate feature.  A variable rate disclosure has been provided earlier.

CREDIT LIFE/CREDIT DISABILITY:  Credit life insurance and credit disability insurance are not required to obtain credit, and will not be provided unless you sign and agree to pay the additional cost.

| Type | Premium | Signature | |
|---|---|---|---|
| Credit Life | | I want credit life insurance. | Signature: |
| Credit Disability | | I want credit disability insurance. | Signature: |
| Credit Life and Disability | | I want credit life and disability insurance. | Signature: |

INSURANCE:  The following insurance is required to obtain credit:
☐ Credit life insurance  ☐ Credit disability  ☑ Property insurance  ☐ Flood insurance
You may obtain the insurance from anyone you want that is acceptable to creditor
☐ If you purchase  ☑ property  ☐ flood insurance from creditor you will pay $          for a one year term.
SECURITY:  You are giving a security interest in:
☐ The goods or property being purchased  ☑ Real property you already own.
FILING FEES: $
LATE CHARGE:  If a payment is more than  **15** days late, you will be charged   **5.000** % of the payment
PREPAYMENT:  If you pay off early, you
☑ may  ☐ will not  have to pay a penalty.
☐ may  ☑ will not  be entitled to a refund of part of the finance charge.
ASSUMPTION:  Someone buying your property
☐ may  ☐ may, subject to conditions  ☑ may not  assume the remainder of your loan on the original terms.
See your contract documents for any additional information about nonpayment, default, any required repayment in full before the scheduled date and prepayment refunds and penalties.
☑ * means an estimate  ☐ all dates and numerical disclosures except the late payment disclosures are estimates.

* * NOTE: The Payments shown above include reserve deposits for Mortgage Insurance (if applicable), but exclude Property Taxes and Insurance.

THE UNDERSIGNED ACKNOWLEDGES RECEIVING A COMPLETED COPY OF THIS DISCLOSURE.

| | | |
|---|---|---|
| *Edward J Laremore*  12/22/06 | | |
| **EDWARD J LAREMORE**    (Applicant)    (Date) | | (Applicant)   (Date) |
| | (Applicant)   (Date) | (Applicant)   (Date) |
| | (Lender)   (Date) | |

Calyx Form - tl.hp (02/95)

**GOOD FAITH ESTIMATE**

| Applicants: | EDWARD J LAREMORE | | Application No: | LAREMORE_PILGRAM |
|---|---|---|---|---|
| Property Addr: | 7014 PILGRAM COURT, Labelle, FL 33935 | | Date Prepared: | 12/12/2006 |
| Prepared By: | FIRST NATIONAL MORTGAGE SOURCES  Ph. 866-261-8601 | | Loan Program: | |
| | 1820 W. 6TH STREET STE. 100, LAWRENCE, KS  66044 | | | |

The information provided below reflects estimates of the charges which you are likely to incur at the settlement of your loan. The fees listed are estimates-actual charges may be more or less. Your transaction may not involve a fee for every item listed. The numbers listed beside the estimates generally correspond to the numbered lines contained in the HUD-1 settlement statement which you will be receiving at settlement. The HUD-1 settlement statement will show you the actual cost for items paid at settlement.

Total Loan Amount $   190,000   Interest Rate:   2.655 %   Term:   480 / 360 mths

| | ITEMS PAYABLE IN CONNECTION WITH LOAN: | | | PFC | S | F | POC |
|---|---|---|---|---|---|---|---|
| 800 | | | $ | | | | |
| 801 | Loan Origination Fee | | | | | ✓ | |
| 802 | Loan Discount | 1.0000% | 1,900.00 | | | ✓ | |
| 803 | Appraisal Fee | | (350.00) | | | | ✓ |
| 804 | Credit Report | | 18.76 | | | | ✓ |
| 805 | Lender's Inspection Fee | | | | | ✓ | |
| 808 | Mortgage Broker Fee | + $ | -850.00 | 850.00 | | | ✓ | |
| 809 | Tax Related Service Fee | | 101.00 | | | ✓ | |
| 810 | Processing Fee | | 525.00 | | | ✓ | |
| 811 | Underwriting Fee | | 375.00 | | | ✓ | |
| 812 | Wire Transfer Fee | | | | | ✓ | |
| | Application Fee | | 350.00 | | | ✓ | |
| | | | | | | | |
| | Flood Certification | | 25.00 | | | ✓ | |
| | Courier Fees | | 25.00 | | | ✓ | |
| | MERS | | 5.00 | | | ✓ | |
| | Commitment Fee | | | | | ✓ | |
| | Lock Fee | | | | | ✓ | |
| | Wire Transfer Fees | | | | | ✓ | |
| 1100 | TITLE CHARGES: | | | PFC | S | F | POC |
| 1101 | Closing or Escrow Fee: | | $ 300.00 | | | | |
| 1105 | Document Preparation Fee | | | | | | |
| 1106 | Notary Fees | | 25.00 | | | | |
| 1107 | Attorney Fees | | 500.00 | | | ✓ | |
| 1108 | Title Insurance: | | 1,200.00 | | | | |
| | Survey, CPL, Tax Cert. | | 150.00 | | | | |
| | | | | | | | |
| | | | | | | | |
| 1200 | GOVERNMENT RECORDING & TRANSFER CHARGES: | | | PFC | S | F | POC |
| 1201 | Recording Fees: | | $ 150.00 | | | | |
| 1202 | City/County Tax/Stamps: | | | | | | |
| 1203 | State Tax/Stamps: | | | | | | |
| | | | | | | | |
| | | | | | | | |
| 1300 | ADDITIONAL SETTLEMENT CHARGES: | | | PFC | S | F | POC |
| 1302 | Pest Inspection | | $ | | | | |
| | | | | | | | |
| | | | | | | | |
| | | Estimated Closing Costs | 6,499.75 | | | | |

| | ITEMS REQUIRED BY LENDER TO BE PAID IN ADVANCE: | | | | PFC | S | F | POC |
|---|---|---|---|---|---|---|---|---|
| 900 | | | | | | | | |
| 901 | Interest for | 5 days @ $ | 14.0653 per day | $ 70.33 | | | ✓ | |
| 902 | Mortgage Insurance Premium | | | | | | | ✓ |
| 903 | Hazard Insurance Premium | | | | | | | |
| 904 | | | | | | | | |
| 905 | VA Funding Fee | | | | | | | |

| | RESERVES DEPOSITED WITH LENDER: | | | | | PFC | S | F | POC |
|---|---|---|---|---|---|---|---|---|---|
| 1000 | | | | | | | | | |
| 1001 | Hazard Insurance Premium | 2 months @ $ | 37.00 per month | $ 74.00 | | | | | |
| 1002 | Mortgage Ins. Premium Reserves | months @ $ | per month | | | | | | |
| 1003 | School Tax | months @ $ | per month | | | | | | |
| 1004 | Taxes and Assessment Reserves | 2 months @ $ | 188.00 per month | 376.00 | | | | | |
| 1005 | Flood Insurance Reserves | months @ $ | per month | | | | | | |
| | | months @ $ | per month | | | | | | |
| | | months @ $ | per month | | | | | | |
| | | | Estimated Prepaid Items/Reserves | 520.33 | | | | | |
| | TOTAL ESTIMATED SETTLEMENT CHARGES | | | 7,020.08 | | | | | |

COMPENSATION TO BROKER (Not Paid Out of Loan Proceeds):
  Broker may receive 0-3% yield spread premium or   $
  settlement from lender

| TOTAL ESTIMATED FUNDS NEEDED TO CLOSE: | | | TOTAL ESTIMATED MONTHLY PAYMENT: | |
|---|---|---|---|---|
| Purchase Price/Payoff (+) | 181,248.00 | New First Mortgage(-) | Principal & Interest | 421.96 |
| Loan Amount (-) | 190,000.00 | Sub Financing(-) | Other Financing (P & I) | |
| Est. Closing Costs (+) | 6,499.75 | New 2nd Mtg Closing Costs(+) | Hazard Insurance | 37.00 |
| Est. Prepaid Items/Reserves (+) | 520.33 | | Real Estate Taxes | 188.00 |
| Amount Paid by Seller (-) | | | Mortgage Insurance | |
| | | | Homeowner Assn. Dues | |
| | | | Other | |
| Total Est. Funds to you | | 1,731.92 | Total Monthly Payment | 646.96 |

☑ This Good Faith Estimate is being provided by   **FIRST NATIONAL MORTGAGE SOURCES**  , a mortgage broker, and no lender has been obtained. These estimates are provided pursuant to the Real Estate Settlement Procedures Act of 1974, as amended (RESPA). Additional information can be found in the HUD Special Information Booklet, which is to be provided to you by your mortgage broker or lender, if your application is to purchase residential real property and the lender will take a first lien on the property. The undersigned acknowledges receipt of the booklet "Settlement Costs," and if applicable the Consumer Handbook on ARM Mortgages.

_(signature)_ Edward J Laremore    12/27/06

| EDWARD J LAREMORE | | Date | Applicant | | Date |
|---|---|---|---|---|---|
| Applicant | | | | | |

Calyx Form gfe.frm 11/01

# The Construction Contract

# THE ANGWOOD



*Renderings are artist concepts, sizes and sq. footage approximate.*
*Refer to building plans and specifications for exact details!*

**ON YOUR LOT!!!!!!**

## Overall Specifications

❖ Land preparation included**
❖ All building permits, engineering, fill, lot clearing, driveway and walkways**
❖ Bahia sod and standard landscape package
❖ Builders Risk Insurance

## Architectural Features

❖ Steel reinforced concrete block construction
❖ Steel reinforced concrete slab and footing
❖ Hurricane straps and new code compliance
❖ Engineered roof trusses
❖ Protective soil treatment

## Electrical Features

❖ Prewire for (2) TV and (2) telephone outlets
❖ 200 amp electrical service
❖ Braced and switched fan outlets as per plans
❖ Decorative rocker switches
❖ Smoke detectors as per code requirements
❖ Quick recovery 40 gallon water heater
❖ High efficiency heat and air conditioning with insulated duct system determined through engineered energy calculations
❖ Builders lighting package as per plans

## Exterior Features

❖ 25 year fungus resistant dimensional shingles
❖ Maintenance free vinyl soffit and aluminum fascia
❖ Antique brass door lever with dead bolt at front entry
❖ Metal garage door with opener and 2 remotes
❖ Two (2) exterior hose bibs - see plan for location
❖ Insulated metal front entry door
❖ Front door chime
❖ Volume ceilings (where indicated on plan)
❖ White aluminum windows with weather sealed glass including screens
❖ 800 sq. ft. concrete driveway and walkway
❖ Front elevations fully guttered and as required per code

## Custom Interior Features

❖ All walk-in closets are air-conditioned
❖ Interior studs 16" on center
❖ Colonial 6-panel interior doors
❖ Sliding glass doors with tempered safety glass
❖ Ventilated shelving in all closets
❖ Tile flooring as indicated on individual plans
❖ Plush carpeting in other main living areas
❖ Ceramic tile tub and shower surrounds
❖ Finished garage interior
❖ Decorative finished window sills
❖ Textured interior walls, smooth in kitchen and baths

**Kenwood Homes**

825 E. Cowboy Way, Unit 101, LaBelle, FL 33935 • Phone 863-612-0070 • Fax 863-612-0080



*Agwood*

A CUSTOM RESIDENCE FOR:
BY: KENWOOD HOMES, INC.

SHEET 3

Edward Laurmon
BORROWER

BUILDER





A CUSTOM RESIDENCE FOR:

BY: KENWOOD HOMES, INC.

Angwood

## Description of Materials

U.S. Department of Housing
and Urban Development
Department of Veterans Affairs
Farmers Home Administration

HUD's OMB Approval No. 2502-0192 (exp. 04/30/2004)
and 2502-0313 (exp. 01/31/2005)

Public reporting burden for this collection of information is estimated to average 30 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. This agency may not collect this information, and you are not required to complete this form, unless it displays a currently valid OMB control number.
The National Housing Act (12 USC 1703) authorizes insuring financial institutions against default losses on single family mortgages. HUD must evaluate the acceptability and value of properties to be insured. The information collected here will be used to determine if proposed construction meets regulatory requirements and if the property is suitable for mortgage insurance. Response to this information collection is mandatory. No assurance of confidentiality is provided.

[x] Proposed Construction   [ ] Under Construction     No. _____ (To be inserted by HUD, VA or FmHA)

Property address (include City and State)

| Name and address of Mortgagor or Sponsor | Name and address of Contractor or Builder |
|---|---|
| | K.A. WALLACE dba KENWOOD HOMES<br>5810 DIVISION DRIVE<br>FORT MYERS, FL 33905    239-693-5040 |

### Instructions

1. For additional information on how this form is to be submitted, number of copies, etc., see the instructions applicable to the HUD Application for Mortgage Insurance, VA Request for Determination of Reasonable Value, or FmHA Property Information and Appraisal Report, as the case may be.
2. Describe all materials and equipment to be used, whether or not shown on the drawings, by marking an X in each appropriate check-box and entering the information called for each space. If space is inadequate, enter "See misc." and describe under item 27 or on an attached sheet. The use of paint containing more than the percentage of lead by weight permitted by law is prohibited.
3. Work not specifically described or shown will not be considered unless required, then the minimum acceptable will be assumed. Work exceeding minimum requirements cannot be considered unless specifically described.
4. Include no alternates, "or equal" phrases, or contradictory items. (Consideration of a request for acceptance of substitute materials or equipment is not thereby precluded.)
5. Include signatures required at the end of this form.
6. The construction shall be completed in compliance with the related drawings and specifications, as amended during processing. The specifications include this Description of Materials and the applicable Minimum Property Standards.

1. **Excavation**
   Bearing soil, type   clean and compacted fill, soil - compacted to minimum 95% density

2. **Foundations**
   Footings concrete mix  Ready mix _____   strength psi  2500 ____   Reinforcing  2 - #5 rebar steel
   Foundation wall material  8" x 16" CMU _____   Reinforcing  1 - #5 rebar steel
   Interior foundation wall material  n/a _____   Party foundation wall  na/
   Columns material and sizes  n/a _____   Piers material and reinforcing  n/a
   Girders material and sizes  n/a _____   Sills material  concrete
   Basement entrance areaway  n/a _____   Window areaways  n/a
   Waterproofing  Visqueen 6 mill _____   Footing drains  n/a
   Termite protection  Soil treatment using 5% Chlorpyrifos
   Basementless space ground cover  n/a ____   insulation  n/a ____   foundation vents  n/a
   Special foundations  n/a
   Additional information

3. **Chimneys**
   Material  n/a _____   Prefabricated (make and size)  n/a
   Flue lining material  n/a ____   Heater flue size  n/a ____   Fireplace flue size  n/a
   Vents (material and size) gas or oil heater  n/a _____   water heater  n/a
   Additional information

4. **Fireplaces**
   Type [ ] solid fuel  [ ] gas-burning  [ ] circulator (make and size)  n/a _____   Ash dump and clean-out  n/a
   Fireplace facing  n/a ____   lining  n/a ____   hearth  n/a ____   mantel  n/a
   Additional information

ref. HUD Handbook 4145.1 & 4950.1  form HUD-92005 (10/84)
VA Form 26-1852 and form FmHA 424-2

X _Edward Turner_   _Ralph C_____
       BORROWER

X _____
       BUILDER

5. **Exterior Walls**

Wood frame wood grade, and species _n/a_ ☐ Corner bracing Building paper or felt _n/a_

    Sheathing _n/a_   thickness _____ width _____ ☐ solid ☐ spaced _____ o.c. ☐ diagonal _____

    Siding _n/a_   grade _____ type _____ size _____ exposure _____ fastening _____

    Shingles _n/a_   grade _____ type _____ size _____ exposure _____ fastening _____

    Stucco _n/a_   thickness _____ Lath _____ weight _____ lb.

    Masonry veneer _5/8" thick_   Sills _____ Lintels _continuous_   Base flashing _____

Masonry ☐ solid ☐ faced ☒ stuccoed total wall thickness _8 1/2"_   facing thickness _5/8"_   facing material _masonry_

Backup material _____ thickness _____ bonding _____

Door sills _concrete_   Window sills _concrete_   Lintels _concrete_   Base flashing _____

Interior surfaces dampproofing, _____ coats of _____ furring _1x2 pressure treated_

Additional Information _____

Exterior painting material _exterior latex paint_   number of coats _2_

Gable wall construction ☐ same as main walls ☒ other construction _wood frame_

6. **Floor Framing**

Joists wood, grade, and species _____ other _____ bridging _____ anchors _____

Concrete slab ☐ basement floor ☐ first floor ☐ ground supported ☒ self-supporting mix _ready mix 2500 psi_ thickness _4"_

    reinforcing _fiber mesh_   Insulation _____ membrane _____

Fill under slab material _clean compacted fill_   thickness _varies_

Additional Information _compacted to local code 95%_

7. **Subflooring**  (Describe underflooring for special floors under item 21)

Material grade and species _none_   size _____ type _____

Laid ☐ first floor ☐ second floor ☐ attic _____ sq. ft. ☐ diagonal ☐ right angles

Additional information _____

8. **Finish Flooring** (Wood only. Describe other finish flooring under item 21)

| Location | Rooms | Grade | Species | Thickness | Width | Bldg. Paper | Finish |
|---|---|---|---|---|---|---|---|
| First floor | n/a | | | | | | |
| Second floor | n/a | | | | | | |
| Attic floor | n/a | sq. ft. | | | | | |

Additional Information _____

9. **Partition Framing**

Studs wood, grade, and species _3 1/2" Wood_   size and spacing _16" on center_   Other _____

Additional Information _____

10. **Ceiling Framing**

Joists wood, grade, and species _Southern yellow pine_   Other _____ Bridging _____

Additional information _All trusses per engineering - bottom cord will be ceiling_

11. **Roof Framing**

Rafters wood, grade, and species _____ Roof trusses (see detail) grade and species _____

Additional Information _____

12. **Roofing**

Sheathing wood, grade, and species _15/32" oriented strand board_   ☒ solid ☐ spaced _____ o.c.

Roofing _fiberglass shingles_   grade _25 year_   size _____ type _dimensional - self sealing_

Underlay _asphalt felt_   weight or thickness _15#_ size _____ fastening _simplex_

Built-up roofing _n/a_   number of plies _____ surfacing material _____

Flashing material _aluminum_   gage or weight _____ ☐ gravel stops. ☐ snow guards.

Additional information _Optional metal roofs - 26 gauge - 30# felt - fastening screws_

ref. HUD Handbook 4145.1 & 4850.1  form HUD-92005 (10/84)
VA Form 26-1852 and form FmHA 424-2

_____ - years

_Edward Tarun_   _NM C_
    * ———————
    BORROWER

    * ———————
    BUILDER

13. **Gutters and Downspouts**

Gutters material _aluminum_ gage or weight _.024_ size _5"_ shape _roll form house gutter_

Downspouts material _aluminum_ gage or weight _0.24_ size _2x3_ shape _____ number _____

Downspouts connected to ☐ Storm sewer ☐ sanitary sewer ☐ dry-well ☐ Splash blocks material and size _____

Additional information _____

14. **Lath and Plaster**

Lath ☐ walls ☐ ceilings material _____ weight or thickness _____ Plaster coats _____ finish _____

Dry-wall ☒ walls ☒ ceilings material _gypsum_ thickness _1/2"_ finish _skip trowel_

Joint treatment _drywall tap and joint compound - smooth walls in kitchen, bath and laundry_

15. **Decorating (Paint, wallpaper, etc.)**

| Rooms | Wall Finish Material and Application | Ceiling Finish Material and Application |
|---|---|---|
| Kitchen | interior latex paint | interior latex paint |
| Bath | interior latex paint | interior latex paint |
| Other | interior latex paint | interior latex paint |

Additional information _____

16. **Interior Doors and Trim**

Doors type _hollow core colonist doors_ material _masonita hardboard_ thickness _1 3/8"_

Door trim type _colonial_ material _spruce FJ_ Base type _colonial_ material _spruce FJ_ size _3 1/4"_

Finish doors _latex semi-gloss paint_ trim _____

Other trim (item, type and location) _____

Additional information _____

17. **Windows**

Windows type _single hung_ make _ESP_ material _aluminum_ sash thickness _____

Glass grade _tinted_ ☐ sash weights ☐ balances, type _____ head flashing _____

Trim type _____ material _____ Paint _____ number coats _____

Weatherstripping type _bulb_ material _rubber_ Storm sash, number _____

Screens ☐ full ☒ half type _aluminum frame_ number _1 per_ screen cloth material _fiberglass_

Basement windows type _n/a_ material _n/a_ screens, number _____ Storm sash, number _____

Special windows _safety glass where required by code_

Additional information _____

18. **Entrances and Exterior Detail**

Main entrance door material _steel_ width _36"_ thickness _1 3/8"_ Frame material _pine_ thickness _____

Other entrance doors material _steel_ width _32"_ thickness _1 3/8"_ Frame material _pine_ thickness _____

Head flashing _____ Weatherstripping type _vinyl - bulb_ saddles _____

Screen doors thickness _____ number _____ screen cloth material _____ Storm doors thickness _____ number _____

Combination storm and screen doors thickness _____ number _____ screen cloth material _____

Shutters ☐ hinged ☒ fixed Railings _aluminum_ Attic louvers _____

Exterior millwork grade and species _____ Paint _____ number coats _____

Additional information _sliding glass doors as per plan_

19. **Cabinets and Interior Detail**

Kitchen cabinets, wall units material _laminated mica over 5/8" particle board_ lineal feet of shelves _____ shelf width _per plan_

Base units material _same_ counter top _same_ edging _mica_

Back and end splash _same_ Finish of cabinets _mica_ number coats _____

Medicine cabinets make _2 bevel mirrored_ model _____

Other cabinets and built-in furniture _____

Additional information _____

Page _____

ref. HUD _____ Form HUD-2005 (10/84)

_____ form HUD-2005 (10/84)



Edward Zaron

BUILDER

✗ _____

BUILDER

*Kisswood + Chiswood*
*Kingswood*

**20. Stairs**

| Stair | Treads | | Risers | | Strings | | Handrail | | Balusters | |
|---|---|---|---|---|---|---|---|---|---|---|
| | Material | Thickness | Material | Thickness | Material | Size | Material | Size | Material | Size |
| Basement | n/a | | | | | | | | | |
| Main | n/a | | | | | | | | | |
| Attic | | | | | | | | | | |

Disappearing make and model number _____

Additional information _____

**21. Special Floors and Wainscot (Describe Carpet as listed in Certified Products Directory)**

| | Location | Material, Color, Border, Sizes, Gage, Etc. | Threshold Material | Wall Base Material | Underfloor Material |
|---|---|---|---|---|---|
| Floors | Kitchen | tile | n/a | wood | fabric |
| | Bath | tile | n/a | wood | fabric |
| | | | | | |

| | Location | Material, Color, Border, Cap, Sizes, Gage, Etc. | Height | Height Over Tub | Height in Showers (From Floor) |
|---|---|---|---|---|---|
| Wainscot | Bath | fiberglass tub/shower w/ tile walls or tile shower - per plans | | | |

Additional information _____

**22. Plumbing**

| Fixture | Number | Location | Make | MFR's Fixture Identification No. | Size | Color |
|---|---|---|---|---|---|---|
| Sink | 1 | kitchen | moen | camelot 22217 - stainless steel | 33x22 | stainless |
| Lavatory | 3 | baths | Thermocast | W1919-R | 18" round | white |
| Water closet | 2 | baths | American Standard | 2399.012 | standard | white |
| Bathtub | 1 | master bath | Lasco | 6042-H | 60x42 | white |
| Shower over tub | 1 | guest bath | Lasco | 2600-30 | 60x30 | white |
| Stall shower | 1 | master bath | Tile | standard wall tile | 4x4 | white |
| Laundry trays | | | | | | |
| water closet seat | 2 | bath | Bemis 1200 slow | 1200 SLOW | | |

Bathroom accessories ☐ Recessed material _____ number _____ ☐ Attached material _____ number _____

Additional information _____

☐ Curtain rod  ☐ Door  ☐ Shower pan material _recessed slab_     * (Show and describe individual system in complete detail in separate
Water supply ☐ public  ☐ community system  ☐ individual (private) system*     drawings and specifications according to requirements.)
Sewage disposal ☐ public  ☐ community system  ☐ individual (private) system*
House drain (inside) ☐ cast iron  ☐ tile  ☒ other _PVC_     House sewer (outside) ☐ cast iron  ☐ tile  ☒ other _PVC_
Water piping ☐ galvanized steel  ☐ copper tubing  ☒ other _polybutaline and copper_     Sill cocks, number _2_
Domestic water heater type _electric_     make and model _SE Tall_     heating capacity _____ gph. 100° rise.
Storage tank material _____     capacity _40_ gallons
Gas service ☐ utility company  ☐ liq. pet. gas  ☐ other _____  ☐ Gas piping ☐ cooking ☐ house heating
Footing drains connected to ☐ storm sewer  ☐ sanitary sewer  ☐ dry well  ☐ Sump pump make and model _____
capacity _____     discharges into _____

Additional information _____

_____     HUD form HUD-92005 (10/84)
Retain this for your records.          Page 1 of          1882 and form FmHA 424-2

_____     _____
✗ _Edward Fauman_     _____ C
   BORROWER

✗ _____
   BUILDER

23. Heating
- [ ] Hot water  [ ] Steam  [ ] Vapor  [ ] One-pipe system  [ ] Two-pipe system
- [ ] Radiators  [ ] Convectors  [ ] Baseboard radiation  Make and model _____
- [ ] Radiant panel  [ ] floor  [ ] wall  [ ] ceiling  Panel coil material _____
- [ ] Circulator  [ ] Return pump Make and model _____  capacity _____ gpm.

Boiler make and model _____  Output _____ Btuh. net rating _____ Btuh.
Additional information _____

Warm air [ ] Gravity  [x] Forced  Type of system _____
Duct material supply _flex duct_  return _ridged/flex_  Insulation _fiberglass_  thickness _____  [ ] Outside air intake
Furnace: make and model _Rheem_  Input _____ Btuh. output _____ Btuh.
Additional information _____

- [ ] Space heater  [ ] floor furnace  [ ] wall heater Input _____ Btuh. output _____ Btuh. number units _____
Make, model _____
Additional information _____

Controls make and types _white mercury thermostat_
Additional information _____

Fuel: [ ] Coal  [ ] oil  [ ] gas  [ ] liq. pet. gas  [x] electric  [ ] other _____  storage capacity _____
Additional information _____

Firing equipment furnished separately  [ ] Gas burner, conversion type  [ ] Stoker hopper feed  [ ] bin feed
Oil burner [ ] pressure atomizing [ ] vaporizing_____
Make and model _____

Control_____
Additional information _____

Electric heating system type _heatstrip_  Input _____ watts @ _220_ volts output _____ Btuh.
Additional information _____

Ventilating equipment  [ ] attic fan, make and model _n/a_  capacity _____ cfm.
[ ] kitchen exhaust fan, make and model _____
Other heating, ventilating, or cooling equipment _____
Additional information _____

24. Electric Wiring
Service [x] overhead  [ ] underground  Panel  [ ] fuse box  [x] circuit-breaker  make _Square D_  AMP's _200_  No. circuits ____
Wiring  [ ] conduit  [ ] armored cable  [ ] nonmetallic cable  [ ] knob and tube  [x] other _Romex_
Special outlets  [x] range  [ ] water heater  [x] other _heating and a/c sub panels_
[x] Doorbell  [x] Chimes  [ ] Push-button locations _____
Additional information _____

25. Lighting Fixtures
Total number of fixtures _per plan_  Total allowance for fixtures, typical installation, $ _per builder package_
Nontypical installation _____
Additional information _____

ref. HUD Handbook 4145.1    HUD-92005 (10/84)
nd form FmHA 424-1

NO. 8961/ P. 9

Edward Farmer
BORROWER

BUILDER

*Well.*

26. Insulation

| Location | Thickness | Material, Type, and Method of Installation | Vapor Barrier |
|----------|-----------|---------------------------------------------|---------------|
| Roof | | | |
| Ceiling | R-30 | Fiberglass batts R-30 | |
| Wall | | R-5 on 1x2 furring strips | |
| Floor | | | |
| Framed | 3 1/2" | Fiberglass R-11  garage to living | |

27. Miscellaneous: (Describe any main dwelling materials, equipment, or construction items not shown elsewhere, or use to provide additional information where the space provided was inadequate. Always reference by item number to correspond to numbering used on this form.)

Well Equipment: Pump - 1 HP submersible Well Mate WM-6, 2 pressure tanks, 200 gallon water aerator, pump 1/2 HP submersible, Filter/softener 24,000 grain filter

Hardware (make, material, and finish.)

Lido, Antique Brass, Levers

Special Equipment (State material or make, model and quantity. Include only equipment and appliances which are acceptable by local law, custom and applicable FHA standards. Do not include items which, by established custom, are supplied by occupant and removed when he vacates premises or chattels prohibited by law from becoming realty.)

Porches
Front porch as per plans

Terraces
n/a

Garages
as per plans

Walks and Driveways
Driveway width 16'  base material clean compacted  thickness ____  surfacing material concrete ____  thickness 3 1/2"
Front walk width 3' - if req'  material concrete   thickness 3 1/2"  Service walk width ____  material ____  thickness ____
Steps material ____  treads ____  risers ____  Cheek walls ____

Other Onsite Improvements
(Specify all exterior onsite improvements not described elsewhere, including items such as unusual grading, drainage structures, retaining walls, fence, railings, and accessory structures.)

Landscaping, Planting, and Finish Grading
Topsoil [ ] thick  [ ] front yard  [ ] side yards  [ ] rear yard to ____  feet behind main building
Lawns (seeded, sodded, or sprigged) [x] front yard  sod  [x] side yards  sod  [x] rear yard  8000 sq. ft total
Planting [ ] as specified and shown on drawings  [x] as follows:
  2  Shade trees deciduous  3  caliper  ____  Evergreen trees ____ to ____ B & B
  ____  Low flowering trees deciduous ____ to ____  ____  Evergreen shrubs ____ to ____ B & B
  ____  High-growing shrubs deciduous ____ to ____  ____  Vines, 2-year ____
  ____  Medium-growing shrubs deciduous ____ to ____  Other ____
  12  Low-growing shrubs deciduous  1/2  to  1

Identification—This exhibit shall be identified by the signature of the builder, or sponsor, and/or the proposed mortgagor if the latter is known at the time of application.
Date (mm/dd/yyyy)  10/11/05   Signature x _Edward Jareau_
  _Estate_
  Signature x
  _Builder_

ref. HUD Handbook  ____    form HUD-92005 (10/84)
  .52 and form FmHA 424-2

*No Weld*

26. Insulation

| Location | Thickness | Material, Type, and Method of Installation | Vapor Barrier |
|---|---|---|---|
| Roof | | | |
| Ceiling | R-30 | Fiberglass batts R-30 | |
| Wall | | R-5 on 1x2 furring strips | |
| Floor | | | |
| Framed | 3 1/2" | Fiberglass R-11  garage to living | |

27. **Miscellaneous:** (Describe any main dwelling materials, equipment, or construction items not shown elsewhere; or use to provide additional information where the space provided was inadequate. Always reference by item number to correspond to numbering used on this form.)

Hardware  (make, material, and finish.)

    Lido, Antique Brass, Levers

Special Equipment  (State material or make, model and quantity. Include only equipment and appliances which are acceptable by local law, custom and applicable FHA standards. Do not include items which, by established custom, are supplied by occupant and removed when he vacates premises or chattels prohibited by law from becoming realty.)

Porches

    Front porch as per plans

Terraces

    n/a

Garages

    as per plans

Walks and Driveways
Driveway width  16'  base material  clean compacted  thickness _____ surfacing material  concrete  thickness  3 1/2"
Front walk width  3' - if req'  material  concrete  thickness  3 1/2"  Service walk width _____ material _____ thickness _____
Steps material _____ treads _____ risers _____ Cheek walls _____

Other Onsite Improvements
(Specify all exterior onsite improvements not described elsewhere, including items such as unusual grading, drainage structures, retaining walls, fence, railings, and accessory structures.)

Landscaping, Planting, and Finish Grading
Topsoil ____ thick [ ] front yard  [ ] side yards  [ ] rear yard to _____ feet behind main building
Lawns (seeded, sodded, or sprigged)  [x] front yard  sod  [x] side yards  sod  [x] rear yard  8000 sq ft total
Planting [ ] as specified and shown on drawings  [x] as follows:
  2  Shade trees deciduous  3  caliper _____ Evergreen trees _____ to _____ B & B
_____ Low flowering trees deciduous _____ to _____ Evergreen shrubs _____ to _____ B & B
_____ High-growing shrubs deciduous _____ to _____ Vines, 2-year _____
_____ Medium-growing shrubs deciduous _____ to _____ Other _____
  12  Low-growing shrubs deciduous  1/2  to  1

Identification—This exhibit shall be identified by the signature of the builder, or sponsor, and/or the proposed mortgagor if the latter is known at the time of application.
Date (mm/dd/yyyy)  10/1/05  Signature x  Edward Jeremy   RNC
                                                       Developer
                 Signature x _____
                             Builder

Replaces _____  U 950.1 ___ HUD-92005 (10/84)
                                  ___ form FmHA 424-2

STANDARD PERCENTAGE DRAW SCHEDULE

OWNERS:
ADDRESS:
LENDER:  FIRST FLORIDA BANK
HERITAGE INSPECTION SERVICES

| | ITEMS COMPLETED | PERCE | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | Permits | 6 | | | | | | | | | | | |
| 2 | Clearing/Grading/Fill/Site Prep | 3 | | | | | | | | | | | |
| 3 | Footings, Underground Plumbing | 5 | | | | | | | | | | | |
| 4 | Foundation/Slab poured | 6 | | | | | | | | | | | |
| 5 | Exterior Walls/Tie Beam | 6 | | | | | | | | | | | |
| 6 | Roof Trusses | 6 | | | | | | | | | | | |
| 7 | Roof Sheathing/Felt | 4 | | | | | | | | | | | |
| 8 | Interior Framing complete | 5 | | | | | | | | | | | |
| 9 | Windows/Exterior Door Frames set | 4 | | | | | | | | | | | |
| 10 | 2nd Plumbing/Tub Set | 2 | | | | | | | | | | | |
| 11 | Electric Rough-In | 4 | | | | | | | | | | | |
| 12 | HVAC-Ducts installed | 2 | | | | | | | | | | | |
| 13 | Roof Shingles/Tiles installed | 4 | | | | | | | | | | | |
| 14 | Insulation (wall & ceiling) | 2 | | | | | | | | | | | |
| 15 | Exterior Trim-Sofits | 3 | | | | | | | | | | | |
| 16 | Drywall Hung | 4 | | | | | | | | | | | |
| 17 | Drywall Finish | 3 | | | | | | | | | | | |
| 18 | Interior Trim/Interior Doors installed | 4 | | | | | | | | | | | |
| 19 | Interior Paint | 3 | | | | | | | | | | | |
| 20 | Siding/Stucco | 4 | | | | | | | | | | | |
| 21 | Exterior Paint complete | 3 | | | | | | | | | | | |
| 22 | Exterior doors & garage door installe | 2 | | | | | | | | | | | |
| 23 | Cabinets/countertops installed | 3 | | | | | | | | | | | |
| 24 | Plumbing finished | 1 | | | | | | | | | | | |
| 25 | Electric Finished | 1 | | | | | | | | | | | |
| 26 | Finish Flooring - Carpet/Vinyl/Tile | 2 | | | | | | | | | | | |
| 27 | Appliances Installed | 2 | | | | | | | | | | | |
| 28 | HVAC-Compressor/Air Handler insta | 3 | | | | | | | | | | | |
| 29 | Driveway/Walks installed | 1 | | | | | | | | | | | |
| 30 | Landscaping/Irrigation | 2 | | | | | | | | | | | |
| | | 100 | | | | | | | | | | | |
| | Total Approved Per Draw | | | | | | | | | | | | |
| | Total to Date | | | | | | | | | | | | |
| | Date of Inspection | | | | | | | | | | | | |
| | Inspector's Initials | | | | | | | | | | | | |
| | Inspection Fee | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | **With Pool Amount** | PERCE | 1 | 2 | 3 | | | | | | | | |
| 1 | Gunite | 33 | | | | | | | | | | | |
| 2 | Tile/Deck | 33 | | | | | | | | | | | |
| 3 | Enclosure/Finish | 34 | | | | | | | | | | | |
| | **Total** | | | | | | | | | | | | |

This is a progress inspection and does not encompss:  local codes, workmanship, quality or installation of materials,
design, layout, specifications or engineering.  The Lender is responsible for accuracy of assigned percentages above

BORROWER  X  Edward Farum          Ralph C

BORROWER  X

BUILDER       X

| $ 189,900.00 | 10/11/05 | 10/11/06 | 92-15-001218 |
|---|---|---|---|

References in the shaded area are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing ****** has been omitted due to text length limitations.

**BORROWER:** Edward Laremore

    5012 Church Rd
    Mount Laurel, NEW JERSEY 08054

**LENDER: FIRST FLORIDA BANK**

    8931 CONFERENCE DRIVE, UNIT 2
    FORT MYERS, FLORIDA 33919
    239-466-4545

**THIS CONSTRUCTION LOAN AGREEMENT** dated October 11, 2005       is made and executed between
Edward Laremore

("Borrower") and **FIRST FLORIDA BANK** ("Lender") on the following terms and conditions. Borrower has applied to Lender for one or more loans for purposes of constructing the Improvements on the Real Property described below. Lender is willing to lend the loan amount to Borrower solely under the terms and conditions specified in this Agreement and in the Related Documents, to each of which Borrower agrees. Borrower understands and agrees that: (A) in granting, renewing, or extending any Loan, Lender is relying upon Borrower's representations, warranties, and agreements as set forth in this Agreement, and (B) all such Loans shall be and remain subject to the terms and conditions of this Agreement.

## RIDER TO CONTRUCTION LOAN AGREEMENT

This Rider to Construction Loan Agreement is made and entered into this **11th** day of **October, 2005** , and is incorporated into and shall be deemed to amend and supplement the Construction Loan Agreement, of even date herewith (hereafter referred to as the "Loan Agreement"), executed by the undersigned (hereafter referred to as "Borrower"), and First Florida Bank, a Florida chartered commercial bank (hereafter referred to as "Lender").

In addition to the Loan Agreement, Borrower executed and delivered to Lender a certain Promissory Note, of even date herewith (hereafter referred to as the "Promissory Note"), which Promissory Note evidences an indebtedness in the original principal amount of U.S. $ **189,900.00** (hereafter referred to as the "Principal Amount"), and a certain Mortgage, of even date herewith (hereafter referred to as the "Mortgage"), encumbering certain property, real, personal, and mixed, as is more fully described in the Mortgage (hereafter referred to as the "Property").

Borrower acknowledges and agrees that, notwithstanding anything to the contrary contained in the Promissory Note, and in the Mortgage, and in the Loan Agreement, at no time during the term of the Loan Agreement shall Lender be obligated and/or required to disburse to, or for the account of, Borrower more than eighty-five percent (85%) of the Principal Amount. Borrower, by its execution of this Rider, understands, acknowledges, and agrees, that Borrower shall be obligated to pay to its general contractor the difference between the amount funded by Lender in accordance with the provisions of this Rider and the amount of the "Project Costs" (as such term is defined in the Loan Agreement).

Borrower further acknowledges, represents, and warrants that, except as specifically modified hereby, all of the original terms, provisions, and conditions of the Loan Agreement are to and shall remain in full force and effect and are hereby ratified, confirmed and approved in each and every respect.

BORROWER ACKNOWLEDGES HAVING READ EACH OF THE PROVISIONS OF THIS RIDER TO CONSTRUCTION LOAN AGREEMENT AND BORROWER AGREES TO THE TERMS HEREIN STATED.

BORROWER:

_Edward Laremore_ (SEAL)          _____ (SEAL)
Edward Laremore

_____ (SEAL)          _____ (SEAL)

_____ (SEAL)          _____ (SEAL)

_____ (SEAL)          _____ (SEAL)

92-15-001218

25552
(04/08/05)

**Project Documents.** The words "Project Documents" mean the Plans and Specifications, all studies, data and drawings relating to the Project, whether prepared by or for Borrower, the Construction Contract, the Architecture Contract, and all other contracts and agreements relating to the Project or the construction of the Improvements.

**Property.** The word "Property" means the property as described in the "Project Description" section of this Agreement.

**Real Property.** The words "Real Property" mean the real property, interests and rights, as further described in the "Project Description" section of this Agreement.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Loan.

**Security Agreement.** The words "Security Agreement" mean and include without limitation any agreements, promises, covenants, arrangements, understandings or other agreements, whether created by law, contract, or otherwise, evidencing, governing, representing, or creating a Security Interest.

**Security Interest.** The words "Security Interest" mean, without limitation, any and all types of collateral security, present and future, whether in the form of a lien, charge, encumbrance, mortgage, deed of trust, security deed, assignment, pledge, crop pledge, chattel mortgage, collateral chattel mortgage, chattel trust, factor's lien, equipment trust, conditional sale, trust receipt, lien or title retention contract, lease or consignment intended as a security device, or any other security or lien interest whatsoever whether created by law, contract, or otherwise.

**BORROWER ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS CONSTRUCTION LOAN AGREEMENT AND BORROWER AGREES TO ITS TERMS. THIS CONSTRUCTION LOAN AGREEMENT IS DATED**

**BORROWER:**

_____
Edward Laremore

_____          _____

**LENDER: FIRST FLORIDA BANK**

_____          _____
**Authorized Signer**                        **Authorized Signer**


20755-09
Rev. 06/13/02

# ASSIGNMENT OF CONSTRUCTION CONTRACTS

| Principal | Loan Date | Maturity | Loan No. | Call | Collateral | Account | Officer | Initials |
|-----------|-----------|----------|----------|------|------------|---------|---------|----------|
| $ 189,900.00 | 10/11/05 | 10/11/06 | 92-15-001218 | | | | | |

References in the shaded area are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "******" has been omitted due to text length limitations.

**BORROWER:** Edward Laremore

     5012 Church Rd
     Mount Laurel, NEW JERSEY 08054

**LENDER:** FIRST FLORIDA BANK

     8931 CONFERENCE DRIVE, UNIT 2
     FORT MYERS, FLORIDA 33919
     239-466-4545

**CONTRACTOR:** KENWOOD HOMES
     825 E. COWBOY WAY, UNIT 101
     LABELLE, FL 33935

THIS ASSIGNMENT OF CONSTRUCTION CONTRACTS dated October 11, 2005 , is made and executed between Edward Laremore , 5012 Church Rd, Mount Laurel, NEW JERSEY 08054 (referred to as either "Borrower" or "Assignor"); and FIRST FLORIDA BANK , 8931 CONFERENCE DRIVE, UNIT 2, FORT MYERS, FLORIDA 33919 ("Lender").

**THE LOAN.**
Edward Laremore has requested Lender to provide a Loan for the construction of a Project, which may be further described in any exhibit attached to this Assignment.

**ASSIGNMENT OF CONTRACTS.** Assignor hereby grants, transfers, and assigns to lender all of Assignor's present and future rights, title, and interest in and to the Construction Contract, including without limitation, all subcontracts, rights and amendments relating thereto, and all related substitute or replacement contracts.

**CONSENT TO TRANSFER.** Assignor agrees and understands that Lender, whether now or later, may sell or transfer the Loan or sell one or more participation interests in the Loan to one or more purchasers, whether related or unrelated to lender. Assignor agrees that the purchaser(s) of the Loan or any interests in the Loan will be considered as the absolute owners of such Loan or interests, and will have all the rights granted under this Assignment.

**LENDER'S RIGHTS.** Assignor represents and warrants with respect to the Construction Contract, including all subcontracts, that: (a) there has been no prior assignment of the Construction Contract; (b) the Construction Contract is a valid, enforceable agreement; (c) neither party is in default to the other under the Construction Contract; and (d) all covenants, conditions, and agreements have been performed as required in the Construction Contract, except those not due to be performed until after the date of this Assignment. Assignor shall not alter or amend the Construction Contract without the prior written consent of Lender. Unless and until a default shall occur under the Loan or under any of the Loan documents, Lender shall not exercise any of Assignor's rights under the Construction Contract; provided however that from and after the time of any such default, Lender immediately shall become entitled, but shall not be obligated, to exercise any rights of Assignor under the Construction Contract and at Lender's option, to perform Assignor's obligations under the Construction Contract, if any. Lender shall not be liable for any defaults by Assignor in the performance of Assignor's duties under the Construction Contract, and Assignor hereby agrees to indemnify, save harmless, and defend Lender against any and all claims, damages, liabilities, reasonable attorneys' fees and losses arising out of any such default.

**POWER OF ATTORNEY.** Assignor irrevocably appoints Lender as Assignor's attorney-in-fact, with full power of substitution, at Lender's option, but with no obligation to do so, to enforce Assignor's rights and to perform Assignor's obligations under the Contract, either in Assignor's name or in Lender's own name.

**MISCELLANEOUS PROVISION.** The following miscellaneous provisions are a part of this Assignment.

    **Amendments.** What is written in this Assignment and in the Related Documents is Assignor's entire agreement with Lender concerning the matters covered by this Assignment. To be effective, any change or amendment to this Assignment must be in writing and must be signed by whoever will be bound or obligated by the change or amendment.

    **Attorneys' Fees; Expenses.** Assignor agrees to pay all of Lender's costs and expenses, including Lender's reasonable attorneys' fees and Lender's legal expenses, incurred in connection with the enforcement of this Assignment. Lender may hire or pay someone else to help enforce this Assignment or to collect the Loan, and Assignor shall pay the costs and expense of such enforcement. Costs and expenses include Lender's reasonable attorneys' fees and legal expenses whether or not there is a lawsuit, including reasonable attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. Assignor also shall pay all court costs, in addition to all other sums provided by law. This Assignment also secures all of these amounts.

20767-01
Rev. 06/13/02

**Governing Law.** This Assignment will be governed by and interpreted in accordance with federal law and the laws of the State of Florida. This Assignment has been accepted by Lender in the State of Florida.

**Choice of Venue.** If there is a lawsuit, Assignor agrees upon Lender's request to submit to the jurisdiction of the courts of the State of Florida, in the county in which Assignor's following address is located:
5012 Church Rd, Mount Laurel, NEW JERSEY 08054

**Notices.** Any notice required to be given under this Assignment shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Assignment. Any person may change his or her address for notices under this Assignment by giving written notice to the other person or persons, specifying that the purpose of the notice is to change the person's address. For notice purposes, Assignor agrees to keep Lender informed at all times of Assignor's current address. Unless otherwise provided or required by law, if there is more than one Borrower, any notice given by Lender to any Borrower is deemed to be notice give to all Borrowers. It will be Assignor's responsibility to tell the others of the notice from Lender.

**No Waiver by Lender.** Assignor understands Lender will not give up any of Lender's rights under this Assignment unless Lender does so in writing. The fact that Lender delays or omits to exercise any right will not mean that Lender has given up that right. If Lender does agree in writing to give up one of Lender's rights, that does not mean Assignor will not have to comply with the other provisions of this Assignment. Assignor also understands that if Lender does consent to a request, that does not mean that Assignor will not have to get Lender's consent again if the situation happens again. Assignor further understands that just because Lender consents to one or more of Assignor's requests, that does not mean Lender will be required to consent to any of Assignor's future requests. Assignor waives presentment, demand for payment, protest, and notice of dishonor.

**Successors and Assigns.** This Assignment shall be understood to be for the benefit of Lender and for such other person or persons as may from time to time become or be the holder or owner of the Loan or any interest therein, and this Assignment shall be transferable to the same extent and with the same force and effect as any such loan may be transferable.

**ASSIGNOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS ASSIGNMENT OF CONSTRUCTION CONTRACTS AND ASSIGNOR AGREES TO ITS TERMS. THIS ASSIGNMENT OF CONSTRUCTION CONTRACTS IS DATED** October 11, 2005

**ASSIGNOR:**

_Edward Laremore_
Edward Laremore

_____     _____

_____     _____


## ACKNOWLEDGEMENT OF ASSIGNMENT

("Contractor"), being a party to the above described Construction Contract, including the primary construction contract, hereby acknowledges the above assignment of the Construction Contract and warrants that there has been no prior assignment of the Construction Contract of which Contractor has notice. Contractor hereby warrants that the Construction Contract, and all subcontracts are valid, enforceable agreements and that, to the best of Contractor's knowledge, Assignor is not in default thereunder. Contractor agrees that (a) Lender may enforce the obligations of the Construction Contract pursuant to the above assignment with the same force and effect as if enforced by Assignor, and (b) Lender may, but shall not be required to, perform the obligations of Assignor, and Contractor will accept such performance in lieu of performance by Assignor in satisfaction of Assignor's obligations under the Construction Contract. Contractor acknowledges that it is familiar with the disbursement provisions of the loan documents between Assignor and Lender and agrees that such disbursement provisions are satisfactory to Contractor. Contractor further agrees that any alteration or amendment of the Construction Contract will not be effective unless and until approved in writing by Lender.

THIS ACKNOWLEDGMENT IS EXECUTED ON: October 11, 2005

**CONTRACTOR:**
KENWOOD HOMES

By:_____     By:_____
    Authorized Signer                          Authorized Signer

20767-02
Rev. 08/13/02

The affiant does hereby jointly and severally agree to indemnify and hold harmless PATRIOT TITLE SERVICES, LLC of and from all loss, cost, damage and expense of every kind, including attorney's fees, which PATRIOT TITLE SERVICES, LLC shall sustain or become liable for under its policy now to be issued on account of reliance on the statements made herein.

_____            _____
Ralph Cochran

_____            _____
Edward Laremore

      Sworn to and subscribed before me this ___11___ day of ___October___, 2005 .

My Commission Expires:                       _____
                                                    Notary Public
                        (seal)
                                             SHARON D. TIMKEN
File Number: TT-0769B                        Notary Public of New Jersey
                                             MY COMMISSION EXPIRES MAY 15, 2008

# Loan #2

# Truth-in-Lending Disclosure Statement

**You are not required to complete this agreement merely because you have received these disclosures or signed a loan application.**

## Final

| Lender | Borrower/Owner | Date |
|---|---|---|
| JPMorgan Chase Bank, N.A. | EDWARD J LAREMORE | September 25, 2012 |
| 1111 Polaris Parkway | 4973 NEALS SCHOOL RD | **Loan Number** |
| Floor 4J | SEAFORD, DE 19973 | 1118396245 |
| Columbus, OH 43240 | | |

Property Address: 7018 PILGRIM CT, LABELLE, FL 33935

| ANNUAL PERCENTAGE RATE | FINANCE CHARGE | Amount Financed | Total of Payments |
|---|---|---|---|
| The cost of your credit as a yearly rate. | The dollar amount the credit will cost you. | The amount of credit provided to you or on your behalf. | The amount you will have paid after you have made all payments as scheduled. |
| **4.559%** | **$108,926.34** | $130,025.65 | $238,951.99 |

**Interest Rate and Payment Summary**

| | Rate & Monthly Payment |
|---|---|
| Interest Rate | 4.500% |
| Principal + Interest Payment | $663.76 |
| Estimated Taxes + Insurance (Escrow) | $208.48 |
| **Total Estimated Monthly Payment** | **$872.24** |

**Demand Feature.** This loan does not have a Demand Feature.

**No Guarantee to Refinance.** There is no guarantee that you will be able to refinance to lower your rate and payments.

**Security.** You are giving a security interest in the property located at: 7018 PILGRIM CT, LABELLE, FL 33935

**Assumption.** Someone buying this property cannot assume the remainder of the mortgage on the original terms.

**Property Insurance.** You may obtain hazard and flood insurance from any company you choose that is acceptable to the lender.

**Late Charges.** If your payment is more than 15 days late, a charge of 5% of the overdue payment will be assessed.

**Prepayment.** If you pay off your loan early, you will not have to pay a penalty.

If you pay off your loan early, you will not be entitled to a refund of part of the finance charge.

See your contract documents for any additional information regarding non-payment, default, any required repayment in full before scheduled date, and prepayment refunds and penalties.

Truth in Lending Disclosure
VMP®
Wolters Kluwer Financial Services © 2004, 2010

201209204.0.0.0.4002-J20110525Y

1118396245

01/11
Page 1 of 2

**Comparison of Good Faith Estimate (GFE) and HUD-1 Charges**

| Charges That Cannot Increase | HUD-1 Line Number | Good Faith Estimate | HUD-1 |
|---|---|---|---|
| Loan origination charge to JPMorgan Chase Bank, NA | # 801 | $1,035.00 | $1,035.00 |
| Your credit or charge (points) for the specific interest rate chosen | # 802 | ($491.25) | ($491.25) |
| Your adjusted origination charges | # 803 | $543.75 | $543.75 |
| Transfer taxes | # 1203 | $720.50 | $720.50 |

| Charges That in Total Cannot Increase More Than 10% | | Good Faith Estimate | HUD-1 |
|---|---|---|---|
| Government recording charges | # 1201 | $185.00 | $214.00 |
| Credit Report | # 805 | $10.00 | $10.00 |
| Flood Certification | # 807 | $11.00 | $11.00 |
| Title services and lender's title insurance | # 1101 | $2,066.50 | $891.00 |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| **Total** | | **$2,272.50** | **$1,126.00** |
| Increase between GFE and HUD-1 Charges | | ($1,146.50) | -50.5% |

| Charges That Can Increase | | Good Faith Estimate | HUD-1 |
|---|---|---|---|
| Initial deposit for your escrow account | # 1001 | $743.00 | $2,084.71 |
| Daily interest charges from | # 901  $16.15/day | $226.10 | $64.60 |
| Homeowner's insurance | # 903 | $0.00 | $0.00 |
| | | | |
| | | | |
| | | | |
| | | | |

**Loan Terms**

| | |
|---|---|
| Your initial loan amount is | $131,000.00 |
| Your loan term is | 30 years |
| Your initial interest rate is | 4.50000 % |
| Your initial monthly amount owed for principal, interest, and any mortgage insurance is | $663.76 includes   ☒ Principal  ☒ Interest   ☐ Mortgage Insurance |
| Can your interest rate rise? | ☒ No. ☐ Yes, it can rise to a maximum of 0%. The first change will be on and can change again every 0 after . Every change date, your interest rate can increase or decrease by 0%. Over the life of the loan, your interest rate is guaranteed to never be lower than 0% or higher than 0%. |
| Even if you make payments on time, can your loan balance rise? | ☒ No. ☐ Yes, it can rise to a maximum of $0.00. |
| Even if you make payments on time, can your monthly amount owed for principal, interest, and mortgage insurance rise? | ☒ No. ☐ Yes, the first increase can be on and the monthly amount owed can rise to $0.00. The maximum it can ever rise to is $0.00. |
| Does your loan have a prepayment penalty? | ☒ No. ☐ Yes, your maximum prepayment penalty is $0.00. |
| Does your loan have a balloon payment? | ☒ No. ☐ Yes, you have a balloon payment of $0.00 due in 0 years on . |
| Total monthly amount owed including escrow account payments | ☐ You do not have a monthly escrow payment for items, such as property taxes and homeowner's insurance. You must pay these items directly yourself. <br> ☒ You have an additional monthly escrow payment of $208.48 that results in a total initial monthly amount owed of $872.24. This includes principal, interest, any mortgage insurance and any items checked below: <br> ☒ Property Taxes          ☒ Homeowner's Insurance <br> ☐ Flood Insurance          ☐ <br> ☐                              ☐ |

Note: If you have any questions about the Settlement Charges and Loan Terms listed on this form, please contact your lender.