UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In Re:   **CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION** | **MDL 2047**<br><br>**SECTION "L"** |
| **This document relates to:**<br><br>***Elizabeth Bennett, et al v. Gebr. Knauf Verwaltungsgesellschaft, KG, et al***<br><br>**Case No. 14:cv-2722** | **JUDGE ELDON FALLON**<br><br>**MAGISTRATE JOSEPH WILKINSON, JR.** |

**MEMORANDUM IN SUPPORT OF**
**OMNIBUS MOTION FOR PARTIAL SUMMARY JUDGMENT**

**MAY IT PLEASE THE COURT:**

Defendants, Knauf Gips KG and Knauf Plasterboard (Tianjin) Co., Ltd. (the "Knauf Defendants"), through undersigned counsel, respectfully submit this Memorandum in Support of their Motion for Partial Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure as to the claims asserted against them by Jackelyn Aquirre o.b.o. Home and Land, Inc. ("Aquirre"), Hoan Bao and Hahn Tran ("Bao/Tran"), Steve Binns ("Binns"), Bholonath Dhume and Prabha Dhume (the "Dhumes"), Santiago Guzman/Skyline Glass LLC ("Guzman"), Michael A. Chedester and Becky Chedester (the "Chedesters"), Tobi Butcher and Ken Butcher (the "Butchers"), Jason Hallmark and Katie Hallmark (the "Hallmarks"), Leslie Porciuncula and Olivia Porciuncula (the "Porciunculas"), Dave Baldwin and Karen Baldwin (the "Baldwins"), Karina Martinez ("Martinez"), and Edward Ball and Margot Gravel ("Ball/Gravel") (collectively "Plaintiffs"), in Plaintiffs' Fifth Amended Class Action Complaint (the "Fifth Amended

Complaint"). Plaintiffs have all made damages claims for alternative living expenses and/or moving expenses allegedly caused by Chinese drywall; however, Plaintiffs either never lived in the respective properties or moved out before they became aware that the properties contained Chinese drywall. Therefore, Plaintiffs should be barred from receiving compensation for alternative living expenses and/or moving expenses as they were not the result of Chinese drywall.

## I.   Factual and Procedural Background

### A.   MDL 2047 and the Bennett Complaint

From 2004 through 2006, a housing boom in parts of the United States and rebuilding efforts necessitated by Hurricanes Rita and Katrina in the Gulf South led to a shortage of construction materials, including drywall. As a result, drywall manufactured in China was brought into the United States and used to construct and refurbish homes in coastal areas of the country, notably the Gulf and East Coasts. Sometime after the Chinese drywall was installed, homeowners began to complain of foul-smelling odors, the corrosion and blackening of metal wiring, surfaces, and objects, and the breaking down of appliances and electrical devices in their homes. *See In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, 894 F. Supp. 2d 819, 829–30 (E.D. La. 2012), *aff'd*, 742 F.3d 576 (5th Cir. 2014). Many of these homeowners also began to complain of various physical afflictions believed to have been caused by the Chinese drywall.

These homeowners then began to file suit in various state and federal courts against homebuilders, developers, installers, realtors, brokers, suppliers, importers, exporters, distributors, and manufacturers who were involved with the Chinese drywall. Because of the commonality of facts in the various cases, this litigation was designated as a multidistrict litigation. Pursuant to a Transfer Order from the United States Judicial Panel on Multidistrict Litigation ("JPML") on June 15, 2009, all federal cases involving Chinese drywall were consolidated for pretrial proceedings

in MDL 09-2047 before this Court. On June 16, 2009, this Court entered PTO 1 regarding preservation of evidence, amongst other things. On October 9, 2009, this Court entered PTO 1(B) regarding preservation of evidence. On January 24, 2012, this Court entered PTO 1(I) regarding preservation of evidence.

Since the inception of MDL 2047 in June of 2009, numerous cases have been consolidated, containing thousands of claims; over 20,000 documents have been entered into the record, millions of documents exchanged in discovery, dozens of depositions, and over 30 Pretrial Orders have been issued; the Court has appointed steering committees and liaison counsel for plaintiffs, homebuilders, insurers, installers, and manufacturers; it has presided over monthly status conferences, hearings, and several bellwether trials.[1]

### B.      The Bennett Complaint and Plaintiffs

The original Bennett Complaint was filed on November 13, 2014 in the Northern District of Alabama and was subsequently transferred and consolidated into MDL 2047. The Complaint was amended multiple times to amend the parties and claims.  The Fifth Amended Complaint was filed on May 14, 2018. Following the Fifth Amended Complaint, certain plaintiffs intervened. The Fifth Amended Complaint is the operative complaint in this matter.

Plaintiffs are all listed as plaintiffs in the operative Fifth Amended Complaint and have made claims against the Knauf Defendants regarding the alleged presence of defective Chinese drywall installed in their respective properties. In conducting discovery in this MDL and in the *Bennett* action, this Court approved a Plaintiff Profile Form, Supplemental Plaintiff Profile Form, Owner Disclosure Affidavit, and Plaintiff Fact Sheet to be completed by Plaintiffs and set forth full and complete answers regarding the claims and damage amounts sought by all Bennett

---

[1] *See* Order, R. Doc. No. 16570, pp. 3-4.

Plaintiffs. Plaintiffs completed and submitted a PPF, SPPF, PFS, and, where relevant, an Owner Disclosure Affidavit. The documents were completed under penalty of perjury. Plaintiffs were likewise deposed.

Aquirre alleges that she accumulated $6,000 in damages attributed to moving expenses caused by Chinese drywall at her property at 3310 NE 3 DR, Homestead, FL 33033. (Exhibit Aquirre A: SPPF).[2] However, Aquirre was in the business of buying and selling homes and therefore never lived in the property, and when asked "[d]id you ever intend to live on this property?" she responded "[n]o." (Exhibit Aquirre B: Deposition of Jackelyn Aquirre, July 31, 2019 at 35:3-4, 53:17-19). She admitted in her deposition that the $6,000 of alleged moving expenses were actually from renovations that she performed prior to discovering the property had Chinese drywall. (*Id.* at 35:3-4, 55:2-56:12).

Bao/Tran allege that they suffered $35,300 in moving expenses/alternative living expenses due to Chinese drywall at their property at 1008 Washington Court, Moody, AL 35004. (Exhibit Bao/Tran A: PFS). Bao/Tran testified that they never lived in the property and therefore did not and could not incur any expenses for vacating the property due to Chinese drywall. (Exhibit Bao/Tran B: Deposition of Hoan Bao, September 18, 2019 at 29:4-5, 42:10-43:4).  In fact, Bao was asked "[a]nd this says that you vacated the property from December 9, 2014, to January 9, 2019; is that just because you've never moved onto the property?" in regards to the alleged moving costs and/or living expenses, to which Bao responded, "[y]es. We don't live there." (*Id.* At 42:25-43:4).

Binns alleges that he has damages totaling $10,680 for moving expenses/alternative living expenses due to Chinese drywall at his former property located at 1417 SW Devera Place, Port St.

---

[2] For simplicity, exhibits will be plaintiff-specific and lettering will begin at "Exhibit A" for each new plaintiff.

Lucie, FL 34953. (Exhibit Binns A: PFS). In his deposition, on the other hand, Binns admitted to moving out in 2017 prior to his January 31, 2018 discovery that the property contained Chinese drywall. (Exhibit Binns B: Deposition of Steven Binns, July 31, 2019 at 56:21-57:2, 70:9-70:18). When Mr. Binns was asked whether he moved out "before the actual discovery of Chinese drywall[]" he responded in the affirmative. (*Id.* at 70:15-17).

The Dhumes allege that they have $74,105 in moving expenses/alternative living expenses due to Chinese drywall at their property at 150 Spencer Avenue, New Orleans, LA 70124. (Exhibit Dhume A: SPPF). However, in his deposition Mr. Dhume explained that they were "going to move anyway" because the property was too big for him and his wife. (Exhibit Dhume B: Deposition of Bholanath Dhume, May 17, 2019 at 28:6-25, 87:14-88:4). Further, they listed the property for sale in May of 2017 and did not learn of the Chinese drywall until June 2017. (Ex. Dhume A; Ex. Dhume B at 28:6-9).

Guzman alleges that he suffered $29,500 in alternative living expenses due to Chinese drywall at his property at 10769 NW 81 LN, Doral, FL 33178. (Exhibit Guzman A: PFS; Exhibit Guzman B: Deposition of Santiago Guzman, November 18, 2019 at 77:1-78:3). However, Guzman testified that he never lived in the property since he purchased it as an investment property. (Ex. Guzman B at 46:15-17, 78:1-79:79:17). Guzman has used it as an investment property since he purchased it and has lived at a separate residence the entire time he has owned the property. (*Id.* at 46:15-47:15). Specifically, he was asked "[i]n terms of moving expenses, you never did move into the property, right?" to which he responded "[w]e couldn't move into the property. The problem is moving into the property."  (*Id.* at 78:13-14, 78:17-18). Although he may have encountered trouble moving into the property, his testimony made clear that he did not suffer any damage from having to vacate the premises due to Chinese drywall.

The Chedesters allege $18,276 in alternative living expenses due to Chinese drywall at 10955 West Brighton Drive, Chunchula, AL 36521. (Exhibit Chedester A: PFS). However, Ms. Chedester testified that they moved out of the property in 2011 to rent it, and did not discover that the property had Chinese drywall until January 22, 2016. (Exhibit Chedester B: Deposition of Becky Chedester, November 25, 2019 at 27:25-28:10, 34:1-10). Ms. Chedester stated in her deposition that the property was continuously rented from the time they moved out in 2011 to the time they discovered the Chinese drywall on January 22, 2016.  (*Id.* at 28:8-9, 28:16-24). As the Chedesters had been out of the property for approximately five years prior to the discovery of Chinese drywall, no moving costs and/or alternative living expenses could have been incurred due to its presence.

The Butchers allege they incurred $70,249 in alternative living expenses due to Chinese drywall at their property located at 4020 Island Lakes Dr., Winter Haven, FL 33881. (Exhibit Butcher A: SPPF). However, Mrs. Butcher testified in her deposition that they had moved out of the property in March 2015 (Exhibit Butcher B: Deposition of Tobi Butcher, August 2, 2019 at 47:12-15). However, she also testified "[they] had found out [they] had Chinese drywall in February of 2016." (*Id.* at 49:11-12). Given that the Butchers had vacated the property almost one year before they discovered that the property contained Chinese drywall, its presence could not have caused them any moving costs and/or alternative living expenses.

The Hallmarks allege $27,500 in alternative living expenses due to Chinese drywall at 775 Ridgefield Way, Odenville, AL 35120. (Exhibit Hallmark A: PFS). However, the Hallmarks moved in July of 2014 and did not discover the presence of Chinese drywall until February of 2015.  (Exhibit Hallmark B: Deposition of Katie Hallmark, December 4, 2019 at 19:9-16, 24:4-8). Mrs. Hallmark testified in her deposition that the alternative living expenses they allege are for

rent payments to their relatives. (*Id.* at 43:19-44:4). However, given that they did not discover the Chinese drywall until six months after they had vacated the property, the expenses incurred are could not have been due to the presence of Chinese drywall.

The Porciunculas allege $20,653 in alternative living expenses due to Chinese drywall at 339 Wilton Avenue SW, Palm Bay, CA 32908. (Exhibit Porciuncula A: SPPF). However, Olivia Porciuncula testified in her deposition that she never actually lived in the property nor did she have to find alternate living arrangements due to the presence of Chinese drywall. (Exhibit Porciuncula B: Deposition of Olivia Porciuncula, September 19, 2019 at 57:7-58:3). When asked "[o]kay. But you have never actually lived in the home at Southwest Wilton, right?" she responded "[c]orrect." (*Id.* at 57:20-22). Lastly, when she was asked "[a]nd so you haven't had to find an alternative living arrangement due to the presence of Chinese drywall in the home, right?" she responded "I haven't, no." (*Id.* at 57:23-58:1). As Ms. Porciuncula admitted very clearly in her deposition, the Prociunculas have incurred no expenses from vacating the premises due to the presence of Chinese drywall.

The Baldwins allege $76,447.73 in alternative living expenses due to Chinese drywall at 909 High Ridge Drive, Friendswood, TX 77546. (Exhibit Baldwin A: PFS). However, Karen Baldwin testified that they had already purchased their new home before the discovery of Chinese drywall, and therefore did not incur any expenses having to vacate the property due to Chinese drywall. (Exhibit Baldwin B: Deposition of Karen Beth Baldwin, November 25, 2019 at 45:17-46:17). She answered "[c]orrect" when asked "[a]nd you had determined that you would buy that North Mission Circle house before moving out of the 909 High Ridge Drive Home?" (*Id.* at 46:4-7). Further, when asked if she "had already decided to buy the North Mission Circle house before [they] knew there was Chinese drywall in the 909 Ridge Drive property?" she answered "[w]e had

actually already purchased it." (*Id.* at 46:8-11). Since the Baldwins had already purchased their new home with no knowledge of Chinese drywall in their old home, their moving expenses are not attributable to the presence of Chinese drywall.

Karina Martinez alleges $580 in moving expenses and $27,600 in alternative living expenses due to Chinese drywall at 23631 SW 12th Court, Homestead, FL 33032. (Exhibit Martinez A: PFS). However, she testified in her deposition that she was planning on moving prior to the discovery of Chinese drywall, (Exhibit Martinez B: Deposition of Karina Martinez, July 12, 2019 at 45:9-17). When Ms. Martinez was asked, "[a]nd again, to clarify, you were planning on moving prior to the discovery of Chinese drywall; is that correct?" she responded "[y]es." (*Id.* at 45:14-17). She further clarified that she decided to sell the property "[b]ecause [she] was with [her] fiancé. [They] were going to sell it and buy a bigger house. [They] have four dogs. So [they] couldn't keep them in the townhouse." (*Id.* at 25:18-21). Ms. Martinez therefore did not incur moving costs or alternative living expenses due to Chinese drywall in her home since she moved because the property was too small and before the discovery of the Chinese drywall.

Ball/Gravel allege $50,000 in alternative living expenses due to Chinese drywall at 2464 Silver Palm Road, North Port, FL 34288. (Exhibit Ball/Gravel A: PFS). However, they had moved out of the property in 2016 and did not discover the presence of Chinese drywall until about March 2017. (Exhibit Ball/Gravel B: Deposition of Edward Ball July 9, 2019 at 21:17-22:25, 58:3-12). Additionally, Mr. Ball confirmed that he was not alleging alternative living expenses twice in his deposition. (*Id.* at 48:1-13, 56:18-57:2). When asked "[s]o you are not claiming any alternative living expense as damages?" he answered "[n]o." (*Id.* at 48:11-13). He later stated, "I guess we can strike that item" when asked "[s]o can you clarify for me whether you are or you are not [claiming moving expenses]?" (*Id.* at 56:25-57:2). As Mr. Ball has already stated in his deposition,

him and Ms. Gravel are not claiming any moving expenses and/or alternative living costs since they moved out prior to discovering the presence of Chinese drywall.

## II.     Legal Standard for Rule 56 Summary Judgment

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment is required if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[3] "A genuine dispute of material fact exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[4]

When seeking summary judgment, the movant bears the initial responsibility of demonstrating the absence of an issue of material fact with respect to those issues on which the movant bears the burden of proof at trial.[5] However, where the non-movant bears the burden of proof at trial, the movant may merely point to an absence of evidence, thus shifting to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial.[6]

On a motion for summary judgment, "[a]lthough 'the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor,' summary judgment remains appropriate if the non-movant's evidence is 'merely colorable' or 'not significantly probative.'"[7] "Only when 'there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party' is a full trial on the merits warranted."[8]

---

[3] FED. R. CIV. P. 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.").

[4] *Bennett v. Hartford Ins. Co. of Midwest*, 890 F.3d 597, 604 (5th Cir. 2018) (quoting *Johnson v. World All. Fin. Corp.*, 830 F.3d 192, 195 (5th Cir. 2016) (internal quotation marks omitted)).

[5] *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S. Ct. 2548, 2558 (1986).

[6] *Id.* at 322; *see also Moody v. Jefferson Parish School Board*, 2 F.3d 604, 606 (5th Cir. 1993).

[7] *Certain Underwriters at Lloyd's of London v. Lowen Valley View, L.L.C.*, 892 F.3d 167, 170 (5th Cir. 2018) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 255 (1986)).

[8] *Lindsey v. Sears Roebuck & Co.*, 16 F.3d 616, 618 (5th Cir. 1994) (quoting *Anderson*, 477 U.S. at 249).

### III.     Plaintiffs Provide No Evidence Supporting Moving Costs/Alternative Living Expenses Claims

Plaintiffs have all claimed damages for moving costs and/or alternative living expenses, but have either moved out of their respective property prior to discovering Chinese drywall or have never lived in the allegedly contaminated property at all, such that any moving costs and/or alternative living expenses are unrelated to the presence of Chinese drywall. This Court previously granted summary judgment dismissing claims for identical moving costs/alternative living expenses of plaintiff Nathan Junius, where he had moved out of the affected property prior to his discovery that it contained Chinese drywall. (R. Doc. 22615 at 34-35). Plaintiffs in this motion—Aquirre, Bao/Tran, Binns, the Dhumes, Guzman, the Chedesters, the Butchers, the Hallmarks, the Porciunculas, the Baldwins, Martinez, and Ball/Gravel—are all similarly situated to Junius. Binss, the Dhumes, the Chedesters, the Butchers, the Hallmarks, the Baldwins, Martinez, and Ball/Gravel, like Junius, moved out of the relevant property prior to discovering that it contained Chinese drywall. In a scenario even more compelling than that of Junius, Aquirre, Bao/Tran, Guzman, and Porciuncula never lived in the affected property at all, making it impossible for them to incur moving costs/alternative living expenses due to Chinese drywall.

### IV.     Conclusion

For the foregoing reasons, this Court should grant partial summary judgment, dismissing the claims for alternative living expenses and/or moving expenses of Aquirre, Bao/Tran, Binns, the Dhumes, Guzman, the Chedesters, the Butchers, the Hallmarks, the Porciunculas, the Baldwins, Martinez, and Ball/Gravel with prejudice.

Respectfully submitted,

**FISHMAN HAYGOOD, LLP**

/s/ *Kerry J. Miller*
_____
**KERRY J. MILLER (#24562), T.A.**
**PAUL C. THIBODEAUX (#29446)**
**DANIEL J. DYSART (#33812)**
201 St. Charles Avenue, Suite 4600
New Orleans, LA  70170
Telephone:      504.556.5549
Facsimile:      504.310.0275
Email:          kmiller@fishmanhaygood.com

*Counsel for The Knauf Defendants*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that the above and foregoing pleading has been served upon Russ Herman, Plaintiffs' Liaison Counsel, by email, and to all parties by electronically uploading the same to LexisNexis File & Serve in accordance with Pre-Trial Order No. 6, and that the foregoing was filed with the Clerk of Court of the United States Court for the Eastern District of Louisiana, on this 1st day of April 2020.

*/s/ Kerry J. Miller*
_____
**KERRY J. MILLER**