Supplemental Plaintiff Profile Form – Residential and Commercial Properties

> **For Internal Use Only**
> File No. _____
>
> **Date Received:**
> _____

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In re: Chinese Manufactured Drywall<br>Products Liability Litigation<br><br>This Document Relates to: | MDL NO. 2047<br>SECTION: L<br>JUDGE FALLON<br>MAG. JUDGE WILKINSON |

*Elizabeth Bennett v. Gebrueder Knauf Verwaltungsgesellschaft, KG, et al.,* Civil Action No.: 14-cv-2722-EEF-JCW (E.D.La)

---

This Supplemental Plaintiff Profile Form must be completed and signed by every person making a claim in this litigation against the manufacturer of Chinese Drywall, Knauf Plasterboard Tianjin     , using one form per Property. In completing this Supplemental Profile Form, you are under oath and must provide all information within your knowledge, custody and control that is true and correct to the best of your knowledge. If you have already submitted a Plaintiff Profile Form, this Supplemental Plaintiff Profile Form will be in addition to and supplement the prior Profile Form submitted. You have an affirmative obligation to search for all documents, electronically stored information, and tangible things responsive to this questionnaire. You may and should consult with your attorney if you have any questions regarding completion of this form. If you are completing the form for someone who has died or who cannot complete the Profile Form, please answer as completely as you can for that person.

The responses contained within this Supplemental Plaintiff Profile Form are made without waiving any rights or objections as to relevance or privilege and are made without any abrogation of legal defenses, including those of the Collateral Source Doctrine.

The questions and requests for production contained within this Supplemental Profile Form are non-objectionable and shall be answered without objection. By answering this Supplemental Profile Form, you are not waiving the attorney work product and/or attorney client privileges. Similarly, by disclosing the identity of consultants, such consultants may remain non-testifying experts if provided for by applicable law, and are subject to all protections afforded by law. Failure to fully complete this Supplemental Profile Form and provide the appropriate documents may result in a motion filed against you pursuant to Rule 37 of the Federal Rules of Civil Procedure, which could include a request for dismissal of the action in whole or in part.

All photographs produced in response to this form shall be in color.

---

### *Section I. Claimant and Property Information*

> **EXHIBIT**
> **DHUME A**

Name of Claimant: 

| Bholanath | V | Dhume | |
|---|---|---|---|
| First Name | M.I. | Last Name | Suffix |
| Prabha | B | Dhume | |
| Co-Claimant First Name (if applicable) | M.I. | Last Name | Suffix |

Business/Entity Name (if applicable)

1

> **EXHIBIT**
> tabbies
> 2

Supplemental Plaintiff Profile Form – Residential and Commercial Properties

Address of Property in this Lawsuit ("Property"):

| | |
|---|---|
| 150 Spencer Avenue | |
| Address 1 | Address 2 |
| New Orleans              LA | 70124 |
| City                       State | Zip Code |

Is the Property residential or commercial?   Residential

Name of Person
Completing this Form:

| Bholanath | V | Dhume | |
|---|---|---|---|
| First Name | M.I. | Last Name | Suffix |

Mailing Address (if different):

| | |
|---|---|
| 1441 Homestead Avenue | |
| Address 1 | Address 2 |
| Metairie                 LA | 70005 |
| City                       State | Zip Code |

Phone Number of Person Completing This Form: ( 504 ) 915 - 9031

---

***Section II. Purchase, Sale and/or Transfer of Ownership of a Property and Assignments of Claims***

When did you acquire the Property? Month/Day/Year: 11 / 19 / 1993

When was Chinese drywall installed in the Property (to the best of your knowledge)?

Month/Day/Year: 7 / 1 / 2006

When you acquired the Property, were you aware that it contained Chinese drywall?   ☐ Yes   ☑ No

If you were not aware, at the time you acquired the Property, that the Property contained Chinese drywall, when did you first become aware that the Property contained Chinese drywall?

Month/Year: 6 / 2017

If you believe Chinese drywall was installed after you acquired the Property, when and how did you first become aware that the Property contained Chinese drywall?

We had an agreement to sell the property in May 2017. Prospective buyers' inspection suggested Chinese drywall and they canceled the purchase.  We then had our own inspection done.   ⊞

If you acquired the Property knowing that the Property contained Chinese drywall, have you expressly acquired an assignment or other personal right of action that allows you to pursue a claim for damages?
☐ Yes   ☐ No

If Yes, attach a copy of the document assigning any right or claim to you.

If Yes, did you acquire the assignment with the purchase of the Property or at some later time?

Have you sold or transferred ownership of the Property since you acquired it?   ☐ Yes   ☑ No

If No, go to Section III.

If Yes, on what date did you sell or transfer ownership of the Property?

Month/Day/Year: _____ / _____ / _____

2

Supplemental Plaintiff Profile Form – Residential and Commercial Properties

If you have sold or transferred ownership of the Property, did you at the time of sale assign to anyone any right of action for damages relating to the Property?   ☐ Yes   ☐ No

If you have sold or transferred ownership of the Property, did you expressly retain a personal right of action to allow you to pursue damages?   ☐ Yes   ☐ No

If you answered Yes to either of the two prior questions, attach a copy of any documents relating to your sale or transfer of ownership of the Property and to the assignment of a right of action for damages.

### Section III.  Product Identification and Evidence Retention

Did you provide evidence of Chinese drywall in the Property to the Plaintiffs' Steering Committee to be placed in the PSC FileCloud Database?   ☑ Yes   ☐ No

If Yes, do you have any additional evidence of Chinese drywall in the Property that you have not provided to the Plaintiffs' Steering Committee?   ☐ Yes   ☑ No

If No, go to Section IV.  If Yes, **attach** all additional evidence of Chinese drywall in the Property that you have not already provided to the Plaintiffs' Steering Committee.

### Section IV. Bankruptcy, Foreclosure or Short Sale

Do you contend that you entered personal bankruptcy as a result of damage to your Property from defective Chinese Drywall?   ☐ Yes   ☑ No

If Yes, answer the following questions:

If you entered personal bankruptcy, identify the case number and docket information of the filing.

Court filed in: _____

Date of filing: _____/_____/_____
                Month    Day       Year

Docket No.: _____

Present Status: _____

Attach your bankruptcy petition and documents filed therewith, including (1) the schedule of assets and liabilities; (2) the schedule of income and expenditures; (3) the statement of financial affairs; (4) the schedule of executory contracts and unexpired leases; (5) the list of creditors and amount and nature of claims; (6) the source, amount, and frequency of the debtor's income; (7) the list of all the debtor's property; and (8) the detailed list of the debtor's monthly living expenses.

Do you contend that a foreclosure or short sale occurred as a result of damage to your Property from defective Chinese Drywall?   ☐ Yes   ☑ No

If Yes, answer the following questions:

If the Property was the subject of a foreclosure or short sale, identify the following:

Foreclosure or Short Sale?                _____

Supplemental Plaintiff Profile Form – Residential and Commercial Properties

Lender's name: _____

Loan Number: _____

Original Loan/Mortgage Amount: $_____

Date of Original Loan/Mortgage: _____/_____/_____
Month      Day      Year

At the Date of Foreclosure or Short Sale,
the amount owed on the Loan/Mortgage: $_____

Date of Foreclosure or Short Sale: _____/_____/_____
Month      Day      Year

Short Sale Price (if applicable): $_____

Attach all loan/mortgage documentation and documentation pertaining to the acquisition of the property.

Attach all documents relating to any foreclosure or short sale, including but not limited to any financial statements provided to the lender, a seller's hardship letter, tax returns, W-2 forms, payroll stubs, and bank statements provided to the lender, and comparative market analyses of comparable sales provided to the lender.

**Section V. Already Remediated Property**

Has the Property been partially or completely remediated?  No _____

If completely or partially remediated, answer the following questions.  If No, go to Section VI.

Please identify the dates during which the remediation took place:

_____

Please identify who performed the work to remediate the property (for example: self, name of contractor, name of remediation service): _____

If the Property has been partially remediated, identify the rooms of the Property that were remediated, the current condition and status of the remediation and the amount of work remaining to be remediated:

Attach any documents supporting any work that you or others performed for remediation of the Property.

If the Property has been partially or completely remediated, what was the total cost to date for the remediation of the Property?

$_____

Attach all invoices and documents to support the total cost of remediation to date.

4

Supplemental Plaintiff Profile Form – Residential and Commercial Properties

Attach all invoices, purchase receipts and documents supporting the total cost or value of any appliances, fixtures or other electronics that you claim were damaged by Chinese drywall.

Attach all invoices, purchase receipts and documents supporting the total cost or value of any other movables (property or possessions, not including land or buildings) that you claim were damaged by Chinese drywall.

If the Property has been completely remediated, what was the date the remediation was completed?

Month/Year: _____/_____

Have you preserved at least two samples (of ten inches by ten inches (10" x 10") in size if possible) of every different drywall brand or marking removed from the Property?  ☐ Yes   ☐ No

If you have preserved samples, where are the samples located?

_____

Have you preserved at least one sample of each type of drywall endtape, if any, that was found during inspection, repair or removal of drywall in or from the Property?  ☐ Yes   ☐ No

If you have preserved samples, where are the samples located?

_____

Have you photographed the backside of each Chinese-manufactured drywall board removed from the Property immediately after it was removed, and have you documented on a floor plan or other similar diagram the location of each full or partial Chinese-manufactured drywall board and its photograph?
☐ Yes   ☐ No

If you have photographed and documented each Chinese-manufactured board, please attach the photograph(s) and floor plan.

Have you photographed the HVAC coil, at least one (1) plumbing component and three (3) electrical components that you allege were damaged by Chinese drywall?  ☐ Yes   ☐ No

If you have photographed these materials, please attach the photographs.

Have you photographed any other building materials, components, or other personal property for which you intend to seek recovery?  ☐ Yes   ☐ No

If you have photographed these materials, please attach the photographs.

**Section VI. Prior Payments**

Have you received any payments, including but not limited to settlement payments, payments from homebuilders, and insurance payments, related to damages you claim to have suffered caused by defective Chinese drywall in the Property or related to any other harm caused by defective Chinese drywall?  ☐ Yes   ☑ No

If Yes, identify the source(s) and state the amount of payment(s) you received?

Source: _____

Amount of payments received: $ _____

5

Supplemental Plaintiff Profile Form – Residential and Commercial Properties

Source: _____

Amount of payments received: $ _____

Source: _____

Amount of payments received: $ _____

If you received payments from the Knauf settlement, state the percentage of the Chinese Drywall that was identified as "KPT Chinese Drywall" as described in section 1.27 of the Knauf Settlement Agreement: _____%

Attach documents reflecting the total amount you received from the source(s).

### Section VII. Other Damages

If you incurred alternative living expenses as a result of Chinese Drywall, identify the total moving cost and/or alternative living expense you incurred.

$ 74, 105.00

Attach all receipts and documents supporting the total moving cost and/or alternative living expense you incurred.

If you experienced any loss of use and/or loss of enjoyment of the Property as a result of Chinese Drywall, identify the total amount of such loss.

$ 302,741.00

Attach all documentation to support the total amount claimed for the loss.

If you claim a diminution in value of the Property as a result of Chinese Drywall, identify the total amount of such diminution of value being claimed.

$ 120,000.00

Attach all documentation to support the total amount claimed for diminution of value, including documents showing that the Property's previous value.

### Section VIII. "Under Air" Square Footage

Has the under air square footage of the Property changed at any time since installation of the Chinese drywall? ☐ Yes  ☑ No

If the square footage has changed, please identify the date(s) and change(s) to under air square footage, and attach all documentation that relates to each change:

Date: _____

Change: _____

Date: _____

Change: _____

Supplemental Plaintiff Profile Form – Residential and Commercial Properties

Date: _____

Change: _____

**Section IX. Verification of Supplemental Plaintiff Profile Form**

I declare under penalty of perjury under the laws of the United States of America and pursuant to 28 U.S.C. § 1746 that I am the claimant identified in this Supplemental Plaintiff Profile Form and that all information provided in this Supplemental Plaintiff Profile Form is true and correct to the best of my knowledge, and that I have supplied all of the documents requested in this declaration to the extent that such documents are in my possession, custody or control.

I further declare under penalty of perjury under the laws of the United States of America and pursuant to 28 U.S.C. § 1746 that all information previously provided by me in my original Plaintiff Profile Form continues to be true and correct and has been updated to the best of my knowledge.

_____         3/30/2018
Claimant's signature                                              Date signed

Name: Bholanath V. Dhume

Address: 1441 Homestead Avenue
Address 1                        Address 2

Metairie        LA        70005
City                 State         Zip Code

Phone No.: (504) 915-9031

Email: dhume150@yahoo.com

7

# **Exhibit**

(See Section VII)

Documents Related to Other Damages

Bholanath Dhume

## <u>Section VII Other Damages:</u>

I had signed an agreement to sell this property for $625,000. The Act of Sale was supposed to be executed on or before July 17, 2017. However, during the home inspection, it was revealed that this property had Chinese Drywall. Consequently the agreement was canceled and the Act of Sale did not go through. I moved out of this property around June 15, 2017. The property has been unoccupied since this time.

The expenses shown below have been calculated for a period of 1 year – mainly from June 2017 to May 2018.

### Line 1

| | |
|---|---|
| Mortgage payment: $1523.22 x 12 | = $28,279 |
| Locked equity of $300,000 in this property at 10% interest | = $30,000 |
| Real Estate Taxes | = $ 4,964 |
| Fire Insurance | = $ 4,342 |
| Flood Insurance | = $   450 |
| Pool Maintenance: $140 x 12 | = $ 1,680 |
| Electric Bill | = $ 1,210 |
| Water Bill | = $ 1,080 |
| Grass Maintenance | = $   600 |
| Moving Expenses | = $ 1,500 |
| **Total** | **= $74,105** |

### Line 2

| | |
|---|---|
| Microwave | = $   450 |
| Dishwasher | = $   650 |
| A/C Coil Replaced and other A/C repairs | = $ 1,000 |
| Inspection Fee for Drywall Analysis | = $   475 |
| Termite Treatment | = $   166 |
| Loss of use and enjoyment due to Chinese Drywall x 11 years | |
| $25,000 per year x 11 years | = $ 275,000 |
| Ongoing deprivation of use and enjoyment of large house | |
| with swimming pool (12 months) | = $ 25,000 |
| **Total** | **= $ 302,741** |

### Line 3

| | |
|---|---|
| Diminution of Property Value | = $ 120,000 |
| **Total** | **= $ 120,000** |

DigiSign Verified:

**GARDNER REALTORS**

GBS Properties, LLC dba
**GARDNER, REALTORS®**
HEADQUARTERS:
3332 N. Woodlawn Ave., Metairie, LA 70006

For exclusive use of GARDNER, REALTORS® & its Affiliated Licensees. GARDNER, REALTORS® assumes no responsibility for any unauthorized use of this form.

| Gardner Realtors | | | | Selling Firm | | | |
| Listing Firm | | | | | | | |
| Sandra Green        38222 | | | ☑ | Buyer's Designated Agent Name & License Number | | | |
| Seller's Designated Agent Name & License Number | | | Dual Agent | | | | |
| GBS Properties        40232 | | | | Brokerage Firm or Broker Name & License Number | | | |
| Brokerage Firm or Broker Name & License Number | | | | | | | |
| 504-259-8107 | | | | Phone Number | Office | | Fax |
| Phone Number | Office | | Fax | | | | |
| sandragreenrealtor@gmail.com | | | | Email Address | | | |
| Email Address | | | | | | | |
| Seller | | | | May 19, 2017 | | | |
| Delivered by Designated Agent to | | | | Day | Date | Time | AM/PM |
| Comments | | | | | | | |
| Received by Designated Agent | | | | Day | Date | Time | AM/PM |

1
2       **LOUISIANA RESIDENTIAL AGREEMENT TO BUY OR SELL**
3    Date: May 19, 2017
4
5    **PROPERTY DESCRIPTION:** I/We offer and agree to Buy/Sell the property at:
6    (Municipal Address) 150 Spencer Avenue
7    City New Orleans                        ; Zip 70124            ; Parish Orleans                ; Louisiana,
8    (Legal Description) Sq 19 Lots 71-73 Spencer
9    on lands and grounds measuring approximately 60 x 120
10   or as per record title; including all buildings, structures, component parts, and all installed, built-in, permanently
11   attached improvements, together with all fences, security systems, all installed speakers or installed sound
12   systems, all landscaping, all outside TV antennas, all satellite dishes, all installed and/or built-in appliances, all
13   ceiling fans, all air conditioning or heating systems including window units, all bathroom mirrors, all window
14   coverings, blinds and associated hardware, all shutters, all flooring, all carpeting, all cabinet tops, all cabinet
15   knobs or handles, all doors, all door knobs or handles, all windows, all roofing, all electrical systems, and all
16   installed lighting fixtures, chandeliers and associated hardware, other constructions permanently attached to the
17   ground. If owned by the SELLER prior to date of this Agreement, standing timber, unharvested crops and
18   ungathered fruits of trees on the property shall be conveyed to the BUYER. The following movable items here
19   remain with the property, but are not to be considered as part of the Sale Price and have no value: _____
20   Refrigerator, pool equipment
21   _____
22
23   All items listed herein are included in the property sold no matter how they are attached or installed, provided that
24   any or all of these items are in place at the time of signing of this Agreement to Buy or Sell (the
25   "Agreement),unless otherwise stated herein. (All of the above contained in lines 5 through 22 are collectively
26   referred to herein as the "Property.") The following items are excluded from the Property sold:
27   _____
28   _____
29
30   **MINERAL RIGHTS:** If the SELLER transfers any mineral rights, they are to be transferred without warranty.
31       0    % mineral rights owned by the SELLER are to be reserved by the SELLER and the SELLER shall waive
32   any right to use the surface for any such reserved mineral activity or use.
33
34   **PRICE:** The Property will be sold and purchased subject to title and zoning restrictions, servitudes of record, and
35   law or ordinances affecting the Property for the sum of  Six Hundred Twenty Five Thousand ———————————
36   ——————————————————————Dollars ($ 625,000.00          ) (the "Sale Price").
37
38   **ACT OF SALE:** The Act of Sale is to be executed before a settlement agent or Notary Public to be chosen by the
39   BUYER, on July 14                      , 20 17   , or before if mutually agreed upon. Any change of the date
40   for execution of the Act of Sale must be mutually agreed upon in writing and signed by the SELLER and the
41   BUYER. At closing, the BUYER must provide "good funds" as required by Louisiana statute LA R.S. 22:22.512 et
42   seq.
43
44   **OCCUPANCY:** Occupancy/possession and transfer of keys is to be granted at Act of Sale unless mutually agreed
45   upon in writing.

BUYER'S Initials _aP_    _SP_          Page 1 of 7          SELLER'S Initials _BP_ _PP_

ABS Rev. 01/01/17

G-400-LA

DigiSign Verified:
0S8DDX9X32D4B4A4A0TI-BA20-8B769DE350-B1F7

| 180 Spencer Avenue | New Orleans | 70124 | May 19, 2017 |

Property address, street, city, zip                                               Date

46   **CONTINGENCY FOR SALE OF BUYER'S OTHER PROPERTY:**
47   ☐ This sale is contingent on the sale of other property by the BUYER and the attached contingency clause
48   addendum shall apply.
49   ☑ This sale is not contingent upon the sale of other property by the BUYER nor is the loan needed by the
50   BUYER to obtain the Sale Price contingent on the BUYER'S sale of any property.
51
52   ☐ **ALL CASH SALE:** The BUYER warrants the BUYER has cash readily available to close the sale of this
53   Property.
54   ☑ **FINANCED SALE:** This sale is conditioned upon the ability of BUYER to borrow with this Property as security
55   for the loan the sum of $ _____ or _80_ % of the Sale
56   Price by a mortgage loan or loans at an initial interest rate not to exceed _4.375_% per annum, interest and
57   principal, amortized over a period of not less than _30_ years, payable in monthly installments or on any other
58   terms as may be acceptable to the BUYER provided that these terms do not increase the cost, fees or expenses
59   to the SELLER. The loan shall be secured by:
60   ☑ Fixed Rate Mortgage                    ☐ FHA Insured Mortgage
61   ☐ Adjustable Rate Mortgage               ☐ Owner Financing
62   ☐ Rural Development                      ☐ Bond Financing
63   ☐ VA Guaranteed Mortgage                 ☐ Other _____
64
65   The BUYER agrees to pay discount points not to exceed _____% of the loan amount.
66   Other financing conditions: Buyer is pre approved by Donnie Picou with Movement Mortgage (225) 247-1716.
67   _____
68   _____
69
70   The BUYER acknowledges and warrants that the BUYER has available the funds which may be required to
71   complete the sale of the Property including, but not limited to, the deposit, the down payment, closing costs, pre-
72   paid items, and other expenses. If this sale is a Financed Sale, BUYER acknowledges that any terms and
73   conditions imposed by BUYER'S lender(s) or by Consumer Financial Protection Bureau Requirements shall not
74   affect or extend the BUYER'S obligation to execute the Act of Sale or otherwise affect any terms or conditions of
75   this Agreement except as otherwise set forth herein. The BUYER shall supply the SELLER written documentation
76   from a lender that a loan application has been made and the BUYER has given written authorization to lender to
77   proceed with the loan approval process within (_7_) calendar days after the date of acceptance of this offer by
78   both parties. If the BUYER fails to make loan application, and to supply SELLER with written documentation of
79   that application and BUYER'S written authorization for lender to proceed with loan process within this period, the
80   SELLER may, at the SELLER'S option, terminate this Agreement, by giving the BUYER written notice of the
81   SELLER'S termination. In the event the BUYER is not able to secure financing, the SELLER reserves the right to
82   provide all or part of mortgage loan(s) under the terms set forth above.
83
84   **PRORATIONS/OTHER COSTS:** Real estate taxes, flood insurance premium if assumed, rents, condominium
85   dues, assessments, and/or other dues owed to homeowners associations and the like for the current year are to
86   be prorated through the date of the Act of Sale. Act of Sale costs, abstracting costs, title search, title insurance
87   and other costs required to obtain financing, shall be paid by the BUYER, unless otherwise stated herein. All
88   necessary tax, mortgage, conveyance, release certificates or cancellations and the SELLER closing fees, if any,
89   shall be paid by the SELLER. The SELLER shall pay all previous years' taxes, assessments, condominium dues,
90   and/or dues owed to homeowners associations and the like.  All special assessments bearing against the
91   Property prior to Act of Sale, other than those to be assumed by written agreement, as of the date of the Act of
92   Sale, are to be paid by the SELLER.
93
94   **APPRAISAL:** ☐ This sale is NOT conditioned on appraisal. ☑ This sale IS conditioned on the appraisal of the
95   Property being not less than the Sale Price. The SELLER agrees to provide the utilities for appraisals and access.
96   If the appraised value of the Property is equal to or greater than the Sale Price, the BUYER shall pay the Sale
97   Price agreed upon prior to the appraisal. If the appraised value is less than the Sale Price, the BUYER shall
98   provide the SELLER with a copy of the appraisal within ___three___ (_3_) calendar days of receipt of same,
99   along with the BUYER'S written request for the SELLER to reduce the Sale Price. Within ___three___ (_3_)
100  calendar days after the SELLER'S receipt of such written documentation of the appraised value, the BUYER shall
101  have the option to pay the Sale Price agreed upon prior to the appraisal or to void this Agreement unless the
102  SELLER agrees in writing to reduce the Sale Price to the appraised value or all parties agree to a new Sale Price.
103
104  **DEPOSIT:** Upon acceptance of this offer, or any attached counter offer, the SELLER and the BUYER shall be
105  bound by all terms and conditions of this Agreement, and the BUYER or the BUYER'S agent shall deliver

BUYER'S Initials _aP_  _JP_                 Page 2 of 7              SELLER'S Initials _BP_  _pp_

ABS Rev. 01/01/17

G-400-LA



DigiSign Verified:

150 Spencer Avenue      New Orleans    70124        May 19, 2017
Property address, street, city, state, zip                                          Date

106   immediately, upon notice of acceptance of the offer, the BUYER'S deposit (the "Deposit") in the amount of
107   $6,000 _____ or _____ % of the Sale Price to be paid in the form of:
108   ☐ Cash $ _____      ☐ Promissory Note $_____
109   ☑ Check $ 6,000 _____
110   The Deposit shall be held by Gardner Realtors

111   Failure to deliver the Deposit shall be considered a default of this Agreement. If the Deposit is held by a Broker, it
112   must be held in accordance with the rules of the Louisiana Real Estate Commission in a federally insured banking
113   or savings and loan institution without responsibility on the part of the Broker in the case of failure or suspension
114   of such institution. In the event the parties fail to execute an Act of Sale by date specified herein, and/or a dispute
115   arises as to ownership of, or entitlement to, the Deposit or funds held in escrow, the Broker shall abide by the
116   Rules and Regulations set forth by the Louisiana Real Estate Commission.
117

118   **RETURN OF DEPOSIT:** The Deposit shall be returned to the BUYER and this Agreement declared null and void
119   without demand in consequence of the following events:
120
121   1) If this Agreement is declared null and void by the BUYER during the inspection and due diligence period as set
122   forth in lines 162 through 195 of this Agreement;
123
124   2) If this Agreement is subject to the BUYER'S ability to obtain a loan and the loan cannot be obtained, except as
125   stated in lines 70 through 82 of this Agreement, but only if the BUYER has made timely application for the loan
126   and made good faith efforts to obtain the loan;
127
128   3) If the BUYER conditions the Sale Price on an appraisal and the appraisal is less than the Sale Price and the
129   SELLER will not reduce the Sale Price as set forth in lines 94 through 102 of this Agreement;
130
131   4) If the BUYER timely terminates the Agreement after having received the leases or assessments, as set forth in
132   lines 143 through 148 of this Agreement;
133
134   5) If the SELLER is unable to timely deliver to the BUYER an approved sewerage and/or water inspection report
135   as set forth in lines 197 through 207.
136
137   6.) If the SELLER chooses not to repair or replace the sewer system(s) as per the SEPTIC/WATER WELL
138   ADDENDUM, and the BUYER terminates the agreement as a result thereof.
139
140   7.) If the SELLER chooses not to repair or replace the private water well system(s) as per the SEPTIC/WATER
141   WELL ADDENDUM, and the BUYER terminates the agreement as a result thereof.
142

143   **LEASES/SPECIAL ASSESSMENTS:** The sale is conditioned upon the BUYER'S receipt of a copy of all written
144   leases, excluding mineral leases, and unpaid special assessments from the SELLER within five (5) calendar days
145   of acceptance of the Agreement. Special assessments shall mean an assessment levied on Property to pay the
146   cost of local improvements imposed by local governmental/governing authority. The BUYER will have five (5)
147   calendar days after receipt of the aforementioned documents to notify the SELLER whether they are acceptable
148   to the BUYER. Security deposits, keys and leases are to be transferred to the BUYER at Act of Sale.
149

150   **NEW HOME CONSTRUCTION:** If the property to be sold is completed new construction, under construction, or to
151   be constructed, check one:
152   ☐ A new home construction addendum, with additional terms and conditions, is attached.
153   ☐ There is no new home construction addendum.
154

155   **INSPECTION AND DUE DILIGENCE PERIOD:** The BUYER ACKNOWLEDGES THAT THE SALE PRICE OF
156   THE PROPERTY WAS NEGOTIATED BASED UPON THE PROPERTY'S APPARENT CURRENT CONDITION;
157   ACCORDINGLY, the SELLER IS NOT OBLIGATED TO MAKE REPAIRS TO THE PROPERTY, INCLUDING
158   REPAIRS REQUIRED BY THE LENDER UNLESS OTHERWISE STATED HEREIN. THE SELLER IS
159   RESPONSIBLE FOR MAINTAINING THE PROPERTY IN SUBSTANTIALLY THE SAME OR BETTER
160   CONDITION AS IT WAS WHEN THE AGREEMENT WAS FULLY EXECUTED.
161

162   The BUYER shall have an inspection and due diligence period of ( 14 ) calendar days, commencing the first
163   day after acceptance of this Agreement wherein, the BUYER may, at the BUYER'S expense, have any
164   inspections made by experts or others of his choosing. Such physical inspections may include, but are not limited
165   to, inspections for termites and other wood destroying insects, and/or damage from same, molds, and fungi
166   hazards, and analysis of synthetic stucco, drywall, appliances, structures, foundations, roof, heating, cooling,
167   electrical, plumbing systems, utility and sewer availability and condition, out-buildings, and square footage. Other
168   due diligence by the BUYER may include, but is not limited to investigation into the property's school district,
169   insurability, flood zone classifications, current zoning and/or subdivision restrictive covenants and any items
170   addressed in the SELLER'S Property Disclosure Document. All testing shall be nondestructive testing. The

BUYER'S Initials _ap_ _sp_          Page 3 of 7          SELLER'S Initials  

ABS Rev. 01/01/17

G-400-LA

DigiSign Verified:

150 Spencer Avenue _____ New Orleans  70124 _____ May 19, 2017
Property address, street, city, state, zip                                                             Date

171   SELLER agrees to provide the utilities for inspections and immediate access. Inspection period will be extended
172   by the same number of days that the BUYER is not granted immediate access to the property or all utilities are
173   not provided by the SELLER. If the BUYER is not satisfied with the condition of the Property or the results of the
174   BUYER'S due diligence investigation, the BUYER may choose one of the following options within the inspection
175   and due diligence period:

176

177   **Option 1:** The BUYER may elect, in writing, to terminate the Agreement and declare the Agreement null and void;
178   or

179   **Option 2:** The BUYER may indicate in writing the deficiencies and desired remedies and the SELLER will within
180   seventy two (72) hours respond in writing as to the SELLER'S willingness to remedy those deficiencies
181   ("SELLER'S Response").

182

183   Should the SELLER in the SELLER'S Response refuse to remedy any or all of the deficiencies listed by the
184   BUYER, then the BUYER shall have seventy-two (72) hours from the date of the SELLER'S Response or
185   seventy-two (72) hours from the date that the SELLER'S Response was due, whichever is earlier, to: (a) accept
186   the SELLER'S Response to the BUYER'S written requests or (b) accept the Property in its current condition, or (c)
187   to elect to terminate this Agreement. The BUYER'S response shall be in writing. Upon the BUYER'S failure to
188   respond to the SELLER'S Response by the time specified or the BUYER'S electing, in writing, to terminate this
189   Agreement, the Agreement shall be automatically, with no further action required by either party, ipso facto null
190   and void except for return of Deposit to the BUYER.

191

192   FAILURE TO GIVE WRITTEN NOTICE OF EITHER TERMINATION OR DEFICIENCIES AND DESIRED
193   REMEDIES TO THE SELLER (OR THE SELLER'S DESIGNATED AGENT) AS SET FORTH IN LINES 155
194   THROUGH 181 WITHIN THE INSPECTION AND DUE DILIGENCE PERIOD SHALL BE DEEMED AS
195   ACCEPTANCE BY THE BUYER OF THE PROPERTY'S CURRENT CONDITION.

196

197   **PRIVATE WATER/SEWERAGE:**

198

199   [ ] There is/are _____ (____) private water system(s) servicing only the primary residence, and the attached
200   private Septic/Water Addendum inspections shall include only the system(s) supplying service to the primary
201   residence.

202

203   [ ] There is/are _____ (____) private septic/treatment system(s) servicing only the primary residence and
204   the attached private Septic/Water Addendum inspections shall include only those systems supplying service to
205   the primary residence.

206

207   [✓] There is NO private septic/treatment system(s) servicing only the primary residence.

208

209   **HOME SERVICE/WARRANTY:** A home service/warranty plan [✓] will / [ ] will not be purchased at the closing of
210   sale at a cost not to exceed $ 1005.00 _____ to be paid by [ ] the BUYER / [✓] the SELLER. Home Service
211   Warranty will be ordered by  Gardner Realtors _____

212

213   It is understood that the Agent/Broker may receive compensation from the home warranty company for actual
214   services performed. The home service warranty plan does not warrant pre-existing defects and options, and does
215   not supersede or replace any other inspection clause or responsibilities. If neither the BUYER nor the SELLER
216   accepts the home service warranty plan, they declare that they have been made aware of the existence of such a
217   plan, and further declare that they hold the Broker and Agents harmless from any responsibility or liability due to
218   their rejection of such a plan.

219

220   **WARRANTY OR AS IS CLAUSE WITH WAIVER OF RIGHT OF REDHIBITION:** (CHECK ONE ONLY)

221   [ ] A. SALE WITH WARRANTIES: The SELLER and the BUYER acknowledge that this sale shall be with full
222   SELLER warranties as to any claims or causes of action including but not limited to redhibition pursuant to
223   Louisiana Civil Code Article 2520, et seq. and Article 2541, et seq.

224

225   [✓] B. SALE "AS IS" WITHOUT WARRANTIES: The SELLER and the BUYER hereby acknowledge and recognize
226   that the Property being sold and purchased is to be transferred in "as is" condition and further the BUYER does
227   hereby waive, relieve and release the SELLER from any claims or causes of action for redhibition pursuant to
228   Louisiana Civil Code Article 2520, et seq. and Article 2541, et seq. or for reduction of Sale Price pursuant to
229   Louisiana Civil Code Article 2541, et seq. Additionally, the BUYER acknowledges that this sale is made without
230   warranty of fitness for ordinary or particular use pursuant to Louisiana Civil Code Article 2524. The SELLER and
231   the BUYER agree that this clause shall be made a part of the Act of Sale.

BUYER'S Initials  _a__  _SP__                    Page 4 of 7                    SELLER'S Initials  _BP_ _pb_

ABS Rev. 01/01/17

G-400-LA

DigiSign Verified:
OSPIDNRC525D9E844A076FFB02D-8375DBEC3SG4B7     New Orleans     70124     May 19, 2017

Property address, street, city, state, zip _____     Date _____

232 ☐ C. NEW HOME WARRANTIES. Notwithstanding lines 220 through 231 and irrespective of whether A or B
233 above is checked, if the Property is a new construction, the parties agree that neither A or B will apply but instead
234 the provisions of the New Home Warranty Act (LA R.S. 9:3141 et seq.) shall apply. The warranty of condition of
235 this Property is governed by the New Home Warranty Act if a home on the Property is a "home" as defined in the
236 New Home Warranty Act.
237

238 **MERCHANTABLE TITLE/CURATIVE WORK:** The SELLER shall deliver to the BUYER a merchantable title at
239 the SELLER'S costs (see lines 242 through 244). In the event curative work in connection with the title to the
240 Property is required or is a requirement for obtaining the loan(s) upon which this Agreement is conditioned, the
241 parties agree to and do extend the date for passing the Act of Sale to a date not more than
242 _____ Forty Five _____ ( 45 ) calendar days from the date of the Act of Sale stated herein. The
243 SELLER'S title shall be merchantable and free of all liens and encumbrances except those that can be satisfied at
244 Act of Sale. All costs and fees required to make title merchantable shall be paid by the SELLER. The SELLER
245 shall make good faith efforts to deliver merchantable title. The SELLER'S inability to deliver merchantable title
246 within the time stipulated herein shall render this Agreement null and void, reserving unto the BUYER the right to
247 demand the return of the Deposit and to recover from the SELLER actual costs incurred in processing of sale as
248 well as legal fees incurred by the BUYER.
249

250 **FINAL WALK THROUGH:** The BUYER shall have the right to re-inspect the Property within five (5) calendar
251 days prior to the Act of Sale, or occupancy, whichever will occur first in order to determine if the Property is in the
252 same or better condition as it was at the initial inspection(s) and to insure all agreed upon repairs have been
253 completed. The SELLER agrees to provide utilities for the final walk through and immediate access to the
254 Property.
255

256 **DEFAULT OF AGREEMENT BY THE SELLER:** In the event of any default of this Agreement by the SELLER,
257 the BUYER shall at the BUYER'S option have the right to declare this Agreement null and void with no further
258 demand, or to demand and/or sue for any of the following:
259

260 1) Termination of this Agreement; 2) Specific performance; 3) Termination of this Agreement and an amount
261 equal to 10% of the Sale Price as stipulated damages.
262

263 Further, the BUYER shall be entitled to the return of the Deposit. The prevailing party to any litigation brought to
264 enforce any provision of this Agreement shall be awarded their attorney fees and costs. The SELLER may also be
265 liable for Broker fees.
266

267 **DEFAULT OF AGREEMENT BY BUYER:** In the event of any default of this Agreement by the BUYER, the
268 SELLER shall have at the SELLER'S option the right to declare this Agreement null and void with no further
269 demand, or to demand and sue for any of the following: 1) Termination of this Agreement; 2) Specific
270 performance; 3) Termination of this Agreement and an amount equal to 10% of the Sale Price as stipulated
271 damages.
272

273 Further, the SELLER shall be entitled to retain the Deposit. The prevailing party to any litigation brought to
274 enforce any provision of this Agreement shall be awarded their attorney fees and costs. The BUYER may also be
275 liable for Broker fees.
276

277 **MOLD RELATED HAZARDS NOTICE:** An informational pamphlet regarding common mold related hazards that
278 can affect real property is available at the EPA website **http://www.epa.gov/iaq/molds/index.html**. By initialing
279 this page of the Agreement, the BUYER acknowledges that the real estate agent has provided the BUYER with
280 the EPA website enabling the BUYER to obtain information regarding common mold related hazards.
281

282 **OFFENDER NOTIFICATION:** The Louisiana State Police maintains the State Sex Offender and Child Predator
283 Registry through the Louisiana Bureau of Criminal Identification and Information. It is a public access database of
284 the locations of individuals who are required to register pursuant to LA R.S. 15:540, et seq. The website for the
285 database is **http://www.lsp.org/socpr/default.html**. Sheriff and police departments serving jurisdictions of
286 450,000 also maintain such information. Inquiries can be made by phone at 1-800-858-0551 or 1-225-925-6100.
287 Send written inquiries to Post Office Box 66614, Box A-6, Baton Rouge, Louisiana 70896.
288

289 **CHOICE OF LAW:** This Agreement shall be governed by and shall be interpreted in accordance with the laws of
290 the State of Louisiana.
291

292 **DEADLINES:** TIME IS OF THE ESSENCE and all deadlines are final, except where modifications, changes, or
293 extensions are made in writing and signed by all parties to this Agreement. All "calendar days" as used in this
294 Agreement shall end at 11:59 p.m. in Louisiana.

BUYER'S Initials _aP_  _SP_     Page 5 of 7     SELLER'S Initials _BD_ _RR_

ABS Rev. 01/01/17

G-400-LA      

DigiSign Verified: 04BD29C5-2DB344A0-8E2E83D0-DEC1504A7

846 Spencer Avenue          New Orleans          70124          May 19, 2017
Property address, street, city, state, zip                                      Date

295  **ADDITIONAL TERMS AND CONDITIONS:**
296  Should buyer choose to assume seller's flood insurance policy, seller agrees to cooperate with the assumption
297  of the flood policy.
298  _____
299  _____
300  _____
301  _____
302  _____

303  **ROLES OF BROKERS AND DESIGNATED AGENTS:** Broker(s) and Designated Agent(s) have acted only as
304  real estate brokers to bring the parties together and make no warranty to either party for performance or non
305  performance of any part of this Agreement or for any warranty of any nature unless specifically set forth in writing.
306
307  Broker(s) and Designated Agent(s) make no warranty or other assurances whatsoever concerning Property
308  measurements, square footage, room dimensions, lot size, Property lines or boundaries. Broker(s) and
309  Designated Agent(s) make no representations as to suitability or to a particular use of the Property, and the
310  BUYER has or will independently investigate all conditions and characteristics of the Property which are important
311  to the BUYER. The BUYER is not relying on the Broker or the Designated Agent(s) to choose a representative to
312  inspect or re-inspect the Property; the BUYER understands any representative desired by the BUYER may
313  perform this function. In the event Broker/Agent(s) provides names or sources for such advice or assistance,
314  Broker/Agent(s) does not warrant the services of such experts or their products and cannot warrant the condition
315  of Property or interest to be acquired, or guarantee that all defects are disclosed by the SELLER(S).
316  Broker/Agent(s) do not investigate the status of permits, zoning, code compliance, restrictive covenants, or
317  insurability. The Broker(s) and Designated Agent(s) specifically make no warranty whatsoever as to whether or
318  not the Property is situated in or out of the Government's hundred year flood plan or is or would be classified as
319  wetlands by the U.S. Army Corps of Engineers, or as to the presence of wood destroying insects or damage there
320  from. The BUYER(S) are to satisfy themselves concerning these issues. Designated Agent shall be an
321  independent contractor for Broker if the conditions as set forth in LA R.S. 37:1446(h) are met.
322
323  **LIST ADDENDA TO BE ATTACHED AND MADE A PART OF THIS AGREEMENT:**
324  ☐ Contingency for Sale of the BUYER'S Other Property Addendum          ☐ Private Water/Sewerage Addendum
325  ☐ Condominium Addendum                                                  ☐ _____
326  ☐ FHA Amendatory Clause                                                 ☐ _____
327  ☐ New Construction Addendum                                             ☐ _____
328
329  If any of the pre-printed portions of this Agreement vary or are in conflict with any additional or modified terms on
330  blanks provided in this form or Addendum attached to this Agreement, the additional, modified or Addendum
331  provisions control.
332
333  **SINGULAR – PLURAL USE:** Wherever the word BUYER or the word SELLER occurs in this Agreement or is
334  referred to, the same shall be construed as singular or plural, masculine or feminine or neuter, as the case may
335  be.
336
337  **ACCEPTANCE:** Acceptance of this Agreement must be in writing. This agreement may be executed by use of
338  electronic signatures, in accordance with the Louisiana Uniform Electronic Transaction Act. The original of this
339  Agreement shall be delivered to the listing Broker's firm. This Agreement and any supplement addendum or
340  modification relating hereto, including any photocopy, facsimile or electronic transmission thereof, may be
341  executed in two or more counterparts, all of which shall constitute one and the same Agreement.
342
343  **NOTICES AND OTHER COMMUNICATIONS:** All notices, requests, claims, demands, and other communications
344  related to or required by this Agreement shall be in writing. Notices permitted or required to be given (excluding
345  service of process) shall be deemed sufficient if delivered by (a) mail, (b) hand delivery; (c) overnight delivery; (d)
346  facsimile, (e) e-mail, or (f) other e-signature transmissions addressed to the respective addresses of the parties
347  as (a) written on the first page of this Agreement; (b) as designated below on lines 357 through 365; or (c) at such
348  other addresses as the respective parties may designate by written notice.
349
350  The BUYER and SELLER agree the use of electronic documents and digital signatures is acceptable and will be
351  treated as originals of the signatures and documents transmitted in the above referenced real estate transaction.
352  Specifically, the BUYER and SELLER consent to the use of electronic documents, the electronic transmission of
353  documents, and the use of electronic signatures pertaining to this Agreement, and any supplement addendum or
354  modification relating thereto, including but not limited to any notices, requests, claims, demands and other
355  communications as set forth in the Agreement.

BUYER'S Initials _aP_  _SP_          Page 6 of 7          SELLER'S Initials _BD_  _DD_

ABS Rev. 01/01/17
G-400-LA



DigiSign Verified:
05-19-2017 12:24:14 PDT E33A020-8759-DE3-5D4EF     150 Spencer Avenue                    New Orleans          70124                    May 19, 2017
                                                    Property address, street, city, state, zip                                          Date

356   ☑ The BUYER further authorizes notices and other communications to be delivered electronically to the following
357     address(es):
358
359         BUYER address(es): _____

360     With a copy to:

361         BUYER's Agent address(es): sandragreenrealtor@gmail.com _____

362   ☑ The SELLER further authorizes notices and other communications to be delivered electronically to the
363     following address(es):
364
365         SELLER address(es): _____

366     With a copy to:

367         SELLER's Agent address(es): sandragreenrealtor@gmail.com _____

368   **CONTRACT:** This is a legally binding contract when signed by both the SELLER and the BUYER. READ IT
369   CAREFULLY. If you do not understand the effect of any part of this Agreement seek legal advice before signing
370   this contract or attempting to enforce any obligation or remedy provided herein.
371
372   **ENTIRE AGREEMENT:** This Agreement constitutes the entire Agreement between the parties, and any other
373   agreements not incorporated herein in writing are void and of no force and effect.
374
375   **EXPIRATION OF OFFER:**
376   This offer is binding and irrevocable until May 19_____, 20 17__ at 6:00 __ ☐ AM ☑ PM ☐ MIDNIGHT ☐ NOON.
377   The Acceptance of this offer must be communicated to the offering party by the deadline stated on line 376 to be
378   binding and effective.
379
380   x _Akkara Paul_          05-19-2017 6:28 AM PDT      x _Smitha Paul_          05-19-2017 6:22 AM PDT
381   ☐ Buyer's / ☐ Seller's Signature   Date/Time ☐ AM ☐ PM   ☐ Buyer's / ☐ Seller's Signature   Date/Time ☐ AM ☐ PM
382   _Akkara Paul_                                        _Smitha Paul_
383   Print Buyer's/Seller's Full Name (First, Middle, Last)   Print Buyer's/Seller's Full Name (First, Middle, Last)
384   _3723 N. Hullen St._                                 _3723 N. Hullen St._
385   Street Address                                       Street Address
386   _Metairie, LA 70002_                                 _Metairie, LA 70002_
387   City, State, Zip                                     City, State, Zip
388   _(504) 939-2527_                                     _(318) 730-0945_
389   Telephone Number.Cell                                Telephone Number.Cell
390   _(504) 322-2185_
391   Telephone Number.Home   Telephone Number.Work        Telephone Number.Home   Telephone Number.Work
392   _akkarap4@gmail.com_
393   E-Mail Address                                       E-Mail Address
394
395   This offer was presented to the ☐ Seller ☐ Buyer by _____ Day/ Date/ Time ☐ AM ☐ PM ☐ MIDNIGHT ☐ NOON
396
397
398   This offer is: ☒ Accepted   ☐ Rejected (without counter) ☐ Countered (See Attached Counter) by:
399
400   x _Bholanath Dhume_      05-19-2017 7:49 AM PDT      x _Prabha Dhume_         05-19-2017 7:47 AM PDT
401   ☐ Buyer's / ☒ Seller's Signature   Date/Time ☐ AM ☐ PM   ☐ Buyer's / ☑ Seller's Signature   Date/Time ☐ AM ☐ PM
402
403   Print Buyer's/Seller's Full Name (First, Middle, Last)   Print Buyer's/Seller's Full Name (First, Middle, Last)
404   _150 Spencer Ave._                                   _150 Spencer Ave._
405   Street Address                                       Street Address
406   _New Orleans, LA 70124_                              _New Orleans, LA 70124_
407   City, State, Zip                                     City, State, Zip
408   _(504) 915-9031_
409   Telephone Number.Cell                                Telephone Number.Cell
410   _(504) 488-2808_
411   Telephone Number.Home   Telephone Number.Work        Telephone Number.Home   Telephone Number.Work
412   _dhume150@yahoo.com_                                 _dhume150@yahoo.com_
413   E-Mail Address                                       E-Mail Address
414
      This counter offer was presented to the ☐ Seller ☐ Buyer by _____ Day/ Date/ Time ☐ AM ☐ PM ☐ MIDNIGHT ☐ NOON

ABS Rev. 01/01/17                    Page 7 of 7

G-400-LA                                                      

DigiSign Verified: 5652BDB9D33E-42A7-85AD-0786E35CDE4648

**CANCELLATION OF
AGREEMENT TO BUY/SELL**
(R05/16)



**GARDNER**
EST. 1943
**REALTORS***

GBS Properties, LLC dba
**GARDNER, REALTORS®**
HOME OFFICE
3332 N. Woodlawn Ave., Metairie, LA 70006

For exclusive use of GARDNER, REALTOR® - not responsible for any unauthorized use of this form.

Property Address: 150 Spencer Avenue

New Orleans, LA 70124
City                                    State                                    Zip

    It is hereby agreed and understood that Bholanath and Prabha Dhume
as SELLER and Akkara and Smitha Paul
as BUYER do mutually cancel and nullify the "Agreement to Buy or Sell" dated _____ , 20 _____
on the above described property.

    The undersigned parties do hereby authorize Gardner Realtors
to disburse the deposit to, ☑ BUYER $ 6,000 deposit _____ Demand Note $ _____ and or/to
☐ SELLER $ _____ upon receipt of this instrument fully executed by all parties. Such disbursement shall
equal the amount of check deposit in escrow of $ 6,000 _____ check and/or $ _____ demand note.
    GARDNER, REALTORS® and n/a
hereby waive any and all commissions due them under said "AGREEMENT" provided that, if SELLER and BUYER
negotiate a sale of said property between themselves at any price within a period of twelve (12) months after the date of
this Agreement, SELLER shall pay to GARDNER, REALTORS® and
Co-Broker Name: Gardner Realtors _____ a commission **as per previously agreed upon
commission structure.**

    All parties including real estate Brokers, hereby release each other from any and all obligations and liability in
connection with said Agreement to Buy or Sell except as qualified above.

*Akkara Paul*                         06-20-2017
Buyer's Signature                     Date

*Smitha Paul*                         06-20-2017
Buyer's Signature                     Date

_____           6/20/17
Realtor's Signature              Date

_____           6/20/17
Seller's Signature               Date

_____           6/20/17
Seller's Signature               Date

_____           6/20/17
Realtor's Signature              Date

SEND BUYER'S CHECK TO: n/a
SEND SELLER'S CHECK TO: n/a

**GARDNER, REALTORS®**                         **CO-BROKER**

_____                    _____
Sales Manager            Date         Sales Manager            Date



**Home Grown • Locally Owned • Internationally Known®**



Bryant Appraisal Services

## Limited Appraisal Analysis – Summary Appraisal Report

68057
File No.   68057

| | | | |
|---|---|---|---|
| Borrower   N/A | | Census Tract   0076.06 | Map Reference   MLS 61 |
| Property Address   150 Spencer Ave | | Check one:  ☒ SF   ☐ PUD   ☐ Condo   ☐ 2-4 Units | |
| City   New Orleans | County   Orleans | State   LA   Zip Code   70124 | |
| Phone No. Res.   N/A | Loan Amount Requested $   N/A | Mos.   Owner's Est. of Value $   N/A | |

| No. of Rooms | No. of Bedrooms | No. of Baths | Family room or den | Gross Living Area | Garage/Carport (specify type & no.) | Porch, Patio or Pool (specify) | Central Air |
|---|---|---|---|---|---|---|---|
| 11 | 5 | 3.5 | ☒ Yes   ☐ No | 3,565 Sq. Ft. | Garage | Patio/Pool | ☒ Yes   ☐ No |

### NEIGHBORHOOD

| | | | | | NEIGHBORHOOD RATING | Good | Avg. | Fair | Poor |
|---|---|---|---|---|---|---|---|---|---|
| Location | ☐ Urban | ☒ Suburban | ☐ Rural | | Property Compatibility | ☒ | | | |
| Built Up | ☒ Over 75% | ☐ 25% to 75% | ☐ Under 25% | | General Appearance of Properties | ☒ | | | |
| Growth Rate | ☐ Fully Dev. | ☐ Rapid | ☒ Steady | ☐ Slow | Appeal to Market | ☒ | | | |
| Property Values | | ☐ Increasing | ☒ Stable | ☐ Declining | | | | | |
| Demand/Supply | | ☐ Shortage | ☒ In Balance | ☐ Over Supply | | | | | |
| Marketing Time | | ☐ Under 3 Mos. | ☒ 4-6 Mos. | ☐ Over 6 Mos. | | | | | |

Present Land Use   80 % 1 Family   2 % 2-4 Family   3 % Apts.   % Condo   5 % Commercial   % Industrial   % Vacant   5 % Other

| Change in Present Land Use | ☒ Not Likely | ☐ Likely | ☐ Taking Place | From | To |
|---|---|---|---|---|---|
| Predominant Occupancy | ☒ Owner | ☐ Tenant | <5 % Vacant | | |

Similar Housing Price Range $ 200,000 to $ 779,000   Predominant Value $ 430,000

Similar Housing Age   1 yrs. to   66 yrs.   Predominant Age   15 yrs.

Neighborhood information obtained from GSREIN MLS and appraisal files.

**Note:** Race and the racial composition of the neighborhood are not considered in the appraisal factors.

Comments including those factors affecting marketability (e.g. public parks, schools, view, noise)   See attached addenda.

### SUBJECT PROPERTY

| Approximate Year Built   ~1993 | No. of Units   1 | No. of Stories   2 | | PROPERTY RATING | Good | Avg. | Fair | Poor |
|---|---|---|---|---|---|---|---|---|
| Type (detached, duplex, semi-detached, etc.)   Detached | | | | Condition of Exterior | ☒ | | | |
| Design (rambler, split, etc.)   Traditional | | | | Compatibility to Neighborhood | ☒ | | | |
| Exterior Walls Material   Brick   Roof Material   Comp Shingle | | | | Appeal and Marketability | ☒ | | | |
| Is the property located in a FEMA Special Flood Hazard Area?  ☐ No  ☒ Yes | | | | | | | | |
| Special Energy Efficient Items   Typical | | | | | | | | |

Comments (favorable or unfavorable including any deferred maintenance)   Home is well maintained with minimum deferred maintenance.

| ITEM | SUBJECT | COMPARABLE NO. 1 | | COMPARABLE NO. 2 | | COMPARABLE NO. 3 | |
|---|---|---|---|---|---|---|---|
| Address | 150 Spencer Ave   New Orleans, LA 70124 | 229 26th St   New Orleans, LA 70124 | | 139 28th St   New Orleans, LA 70124 | | 328 22nd St   New Orleans, LA 70124 | |
| Proximity to Subject | | 1.03 miles S | | 0.68 miles S | | 0.62 miles S | |
| Days on Market | NA | 43 | | 92 | | 45 | |
| Sales Price | $   N/A | $ | 586,000 | $ | 600,000 | $ | 550,000 |
| Sales Price/Sq.Ft. | $   N/A /Sq. Ft. | $ 188.24 /Sq. Ft. | | $ 196.40 /Sq. Ft. | | $ 183.33 /Sq. Ft. | |
| Data/Verif. Source(s) | Int/Ext Viewing | GSREIN MLS # 2046008 | | GSREIN MLS # 2082446 | | GSREIN MLS # 2078447 | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(−)$ Adjust. | DESCRIPTION | +(−)$ Adjust. | DESCRIPTION | +(−)$ Adjust. |
| Date of Sale/Time | N/A | 05/16/16 | | 03/03/17 | | 12/30/16 | |
| Location | Suburban | Suburban | | Suburban | | Suburban | |
| Site Size | 60 x 120 | 52 x 120 | | 60 x 120 | | 50 x 120 | |
| Site View | Residential | Residential | | Residential | | Residential | |
| Age | ~24 | ~9 | −30,000 | ~4 | −30,000 | ~1 | −30,000 |
| Condition | Good | Good | | Good | | Good | |
| Above Grade | Total  Bdrms  Baths | Total  Bdrms  Baths | | Total  Bdrms  Baths | | Total  Bdrms  Baths | |
| Room Count | 11   5   3.5 | 9   4   3.5 | | 11   5   4 | −2,500 | 10   4   3 | +2,500 |
| Gross Living Area | 3,565 Sq. Ft. | 3,113 Sq. Ft. | +45,200 | 3,055 Sq. Ft. | +51,000 | 3,000 Sq. Ft. | +56,500 |
| Heating/Cooling | Central | Central | | Central | | Central | |
| Garage/Carport | Garage | Garage | | Garage | | Driveway | +5,000 |
| Porches, Patio, | Patio | Patio | | Patio | | Patio | |
| Pools, etc. | Pool | | +20,000 | | +20,000 | | +20,000 |
| Special Energy Efficient Items | Typical | Typical | | Typical | | Typical | |
| Net Adj. (total) | | ☒ +  ☐ − $ | 35,200 | ☒ +  ☐ − $ | 38,500 | ☒ +  ☐ − $ | 54,000 |
| Indicated Value of Subject | | Net:   6.0%   Gross:   16.2% $ | 621,200 | Net:   6.4%   Gross:   17.3% $ | 638,500 | Net:   9.8%   Gross:   20.7% $ | 604,000 |

General Comments   **See additional comparables page**

| Property Rights Appraised | ☒ Fee Simple | ☐ Leased Fee | ☐ Leasehold | ☐ Other (describe) | |
|---|---|---|---|---|---|

Opinion of Market Value $   625,000   as of   04/27/17

| | |
|---|---|
| Signature | Date of Report/Signature   05/03/2017 |
| Completed By   Steven Arthur | Title or Designation   Appraiser Trainee |
| License or Certification #   T4161 | License or Certification State   LA   Expires   12/28/2018 |
| Inspection of Subject:  ☐ None  ☒ Interior & Exterior  ☐ Exterior Only | Date of Inspection:   04/27/17 |

Form 704B - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE

## Additional Comparable Sales

File No. 68057
68057

| ITEM | SUBJECT | COMPARABLE NO. 4 | | COMPARABLE NO. 5 | | COMPARABLE NO. 6 | |
|---|---|---|---|---|---|---|---|
| Address | 150 Spencer Ave<br>New Orleans, LA 70124 | 321 14th St<br>New Orleans, LA 70124 | | 6674 Avenue A<br>New Orleans, LA 70124 | | | |
| Proximity to Subject | | 0.17 miles S | | 0.83 miles S | | | |
| Days on Market | NA | 41 | | 115 | | | |
| Sales Price | $          N/A | | $    685,000 | | $    550,000 | | $ |
| Sales Price/Sq. Ft. | $    N/A /Sq. Ft. | $    174.08 /Sq. Ft. | | $    168.97 /Sq. Ft. | | $    /Sq. Ft. | |
| Data/Verif. Source(s) | Int/Ext Viewing | GSREIN MLS # 2091959 | | GSREIN MLS # 2086531 | | | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +( −)$ Adjust. | DESCRIPTION | +( −)$ Adjust. | DESCRIPTION | +( −)$ Adjust. |
| Date of Sale/Time | N/A | Active | −20,500 | Pending | −16,500 | | |
| Location | Suburban | Suburban | | Damaged Street | +35,000 | | |
| Site Size | 61 x 123 | 50 x 120 | | 50 x 120 | | | |
| Site View | Residential | Residential | | Residential | | | |
| Age | −24 | −50 | | −18 | | | |
| Condition | Good | Good | | Good | | | |
| Above Grade | Total | Bdrms | Baths | Total | Bdrms | Baths | Total | Bdrms | Baths | Total | Bdrms | Baths |
| Room Count | 11 | 5 | 3.5 | 9 | 4 | 4 | −2,500 | 9 | 5 | 3.5 | | | |
| Gross Living Area | 3,565 Sq. Ft. | 3,935 Sq. Ft. | −37,000 | 3,255 Sq. Ft. | +31,000 | Sq. Ft. | |
| Heating/Cooling | Central | Central | | Central | | | |
| Garage/Carport | Garage | Garage | | Garage | | | |
| Porches, Patio, | Patio | Patio | | Patio | | | |
| Pools, etc. | Pool | Pool | | | +20,000 | | |
| Special Energy | Typical | Typical | | Typical | | | |
| Efficient Items | | | | | | | |
| Net Adj. (total) | | ☐ + ☒ − $ | −60,000 | ☒ + ☐ − $ | 69,500 | ☐ + ☐ − $ | |
| Indicated Value | | Net: 8.8 % | | Net: 12.6 % | | Net: % | |
| of Subject | | Gross: 8.8 % Gross: | 625,000 | Gross: 18.6 % Gross: | 619,500 | Gross: % $ | |

Comments   The comparables selected are the most recent sales of similar properties and are good indicators of value.  All comparable sales are similar to the subject in size, location, and basic amenities; therefore supporting the sales comparison approach. Adjustments are made to the comparables for sales concessions and for their differences from the subject in bathrooms, square footage, car storage, and amenities as reflected by market activity. Site adjustments are not made because underlying site values are similar.I did not view the interior of the comparables. My quality and condition ratings are based on photographs and comments in the MLS. Comparables 1,2 and 3 are adjusted for actual age as all were built after Katrina and did not flood. Comparable listing 4 and 5 are not adjusted for actual age or condition because they flooded in Hurricane Katrina and renovated so their effective ages are the same. Comparable 4 is an active listing and Comparable 5 is a pending sale in the market area and used to demonstrate the principle of substitution. The principle of substitution states that a buyer will not pay more for a property than an equally desirable property. Active and pending Comparables are adjusted based on average listing price to sales price ratio.  Comparable 5 is selected due to it similarity to the Subject. Based on a conversation with the listing agent regarding Comparable 5, an adjustment was made for the condition of the street and its effect on marketability.

FURTHER EXPLANATION OF ADJUSTMENTS

Not all adjustments in the Sales Comparison Approach can be directly extracted or supported by the available market data with a high degree of accuracy. Some adjustments have an element of subjectivity and professional judgment which the appraiser has applied based on prior observations of the reactions of typical/knowledgeable buyers' and sellers' in the marketplace. Adjustments for amenities such as bathrooms, fireplaces, porches and patios are often difficult to derive from the market and are adjusted based on peer practices. This method is a standard and well accepted practice within the appraisal industry. All interested parties are encouraged to have an understanding of basic valuation practices when appraising atypical or complex properties;or where there is an extreme absence of like elements of comparison; or in instances where the market data is inconsistent with which to draw better supported adjustments and overall value conclusions. Individual adjustments can not be relied on independantly.

Appraising Residential Properties, 4th Edition, Appraisal Institute, Page 342, "Limitations of Paired Data Analysis" states: "...This brief discussion of paired data analysis may seem to suggest that identifying the effects of property differences from market data is a straightforward procedure that can produce accurate, complete mathematical results in all appraisals. Such an impression would be misleading. Appraisers develop an opinion of market value by applying their judgment to the analysis and interpretation of data. Paired data analysis is a tool that an appraiser can apply to market data in some circumstances. When used in conjunction with other analytical tools, this type of analysis supports and guides the appraiser's judgment, but it does not take its place. Perfect sets of comparables that vary in a single, identifiable respect are rarely found. Because properties that are sufficiently similar to the subject are usually limited in number, the decision to apply paired data analysis in a given situation is a matter of judgment. Often the sampling size may not be large enough to provide a solid statistical foundation for the appraiser's conclusions..."

All comparables are considered in my final reconciliation of value. My opinion of value includes many market variables and my value conclusion is  $625,000. Typically market value conclusions may include a slight range. A range typical for the subject property when weighted against the subject comparables would be $604,000 to $638,000. Not all factors of the comparable properties employed can be assessed from public information. It is my opinion that if marketed within this range, the subject will likely sell within 45-90 days.

68057
File No. 68057

**DEFINITION OF MARKET VALUE:** The most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller, each acting prudently, knowledgeably and assuming the price is not affected by undue stimulus. Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby: (1) buyer and seller are typically motivated; (2) both parties are well informed or well advised, and each acting in what he considers his own best interest; (3) a reasonable time is allowed for exposure in the open market; (4) payment is made in terms of cash in U.S. dollars or in terms of financial arrangements comparable thereto; and (5) the price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions* granted by anyone associated with the sale. (Source: FDIC Interagency Appraisal and Evaluation Guidelines, October 27, 1994.)

    \* Adjustments to the comparables must be made for special or creative financing or sales concessions. No adjustments are necessary for those costs which are normally paid by sellers as a result of tradition or law in a market area; these costs are readily identifiable since the seller pays these costs in virtually all sales transactions. Special or creative financing adjustments can be made to the comparable property by comparisons to financing terms offered by a third party institutional lender that is not already involved in the property or transaction. Any adjustment should not be calculated on a mechanical dollar for dollar cost of the financing or concession but the dollar amount of any adjustment should approximate the market's reaction to the financing or concessions based on the appraiser's judgment.

## STATEMENT OF LIMITING CONDITIONS AND CERTIFICATION

**CONTINGENT AND LIMITING CONDITIONS:** The appraiser's certification that appears in the appraisal report is subject to the following conditions:

1. The appraiser will not be responsible for matters of a legal nature that affect either the property being appraised or the title to it. The appraiser assumes that the title is good and marketable and, therefore, will not render any opinions about the title. The property is valued on the basis of it being under responsible ownership.

2. Any sketch provided in the appraisal report may show approximate dimensions of the improvements and is included only to assist the reader of the report in visualizing the property. The appraiser has made no survey of the property.

3. The appraiser will not give testimony or appear in court because he or she made an appraisal of the property in question, unless specific arrangements to do so have been made beforehand, or as otherwise required by law.

4. Any distribution of valuation between land and improvements in the report applies only under the existing program of utilization. These separate valuations of the land and improvements must not be used in conjunction with any other appraisal and are invalid if they are so used.

5. The appraiser has no knowledge of any hidden or unapparent conditions of the property or adverse environmental conditions (including the presence of hazardous waste, toxic substances, etc.) that would make the property more or less valuable, and has assumed that there are no such conditions and makes no guarantees or warranties, express or implied, regarding the condition of the property. The appraiser will not be responsible for any such conditions that do exist or for any engineering or testing that might be required to discover whether such conditions exist. This appraisal report must not be considered an environmental assessment of the subject property.

6. The appraiser obtained the information, estimates, and opinions that were expressed in the appraisal report from sources that he or she considers to be reliable and believes them to be true and correct. The appraiser does not assume responsibility for the accuracy of such items that were furnished by other parties.

7. The appraiser will not disclose the contents of the appraisal report except as provided for in the Uniform Standards of Professional Appraisal Practice, and any applicable federal, state or local laws.

8. The appraiser has based his or her appraisal report and valuation conclusion for an appraisal that is subject to satisfactory completion, repairs, or alterations on the assumption that completion of the improvements will be performed in a workmanlike manner.

9. The appraiser must provide his or her prior written consent before the lender/client specified in the appraisal report can distribute the appraisal report (including conclusions about the property value, the appraiser's identity and professional designations, and references to any professional appraisal organizations or the firm with which the appraiser is associated) to anyone other than the borrower; the mortgagee or its successors and assigns; the mortgage insurer; consultants; professional appraisal organizations; any state or federally approved financial institution; or any department, agency, or instrumentality of the United States or any state or the District of Columbia; except that the lender/client may distribute the property description section of the report only to data collection or reporting service(s) without having to obtain the appraiser's prior written consent. The appraiser's written consent and approval must also be obtained before the appraisal can be conveyed by anyone to the public through advertising, public relations, news, sales, or other media.

10. The appraiser is not an employee of the company or individual(s) ordering this report and compensation is not contingent upon the reporting of a predetermined value or direction of value or upon an action or event resulting from the analysis, opinions, conclusions, or the use of this report. This assignment is not based on a required minimum, specific valuation, or the approval of a loan.

Form ACR2 DEFD - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE

68057
File No. 68057

**CERTIFICATION:** The appraiser certifies and agrees that:

1. The statements of fact contained in this report are true and correct.

2. The reported analyses, opinions, and conclusions are limited only by the reported assumptions and limiting conditions and are my personal, impartial, and unbiased professional analyses, opinions, and conclusions.

3. Unless otherwise indicated, I have no present or prospective interest in the property that is the subject of this report and no personal interest with respect to the parties involved.

4. Unless otherwise indicated, I have performed no services, as an appraiser or in any other capacity, regarding the property that is the subject of this report within the three-year period immediately preceding acceptance of this assignment.

5. I have no bias with respect to the property that is the subject of this report or the parties involved with this assignment.

6. My engagement in this assignment was not contingent upon developing or reporting predetermined results.

7. My compensation for completing this assignment is not contingent upon the development or reporting of a predetermined value or direction in value that favors the cause of the client, the amount of the value opinion, the attainment of a stipulated result, or the occurrence of a subsequent event directly related to the intended use of this appraisal.

8. My analyses, opinions, and conclusions were developed, and this report has been prepared, in conformity with the Uniform Standards of Professional Appraisal Practice that were in effect at the time this report was prepared.

9. Unless otherwise indicated, I have made a personal inspection of the interior and exterior areas of the property that is the subject of this report.

10. Unless otherwise indicated, no one provided significant real property appraisal assistance to the person(s) signing this certification (if there are exceptions, the name of each individual providing significant real property appraisal assistance is stated elsewhere in this report).

**ADDRESS OF PROPERTY ANALYZED:**   150 Spencer Ave, New Orleans, LA 70124

| **APPRAISER:** | **SUPERVISORY or CO-APPRAISER (if applicable):** |
|---|---|
| Signature: | Signature: |
| Name:   Steven Arthur | Name:   Rosalyn Bryant |
| Title: | Designation: |
| State Certification #: | State Certification #:   R1179 |
| or State License #:   T4161 | or State License #: |
| State:  LA   Expiration Date of Certification or License:   12/28/2018 | State:  LA   Expiration Date of Certification or License:   12/31/2018 |
| Date Signed:   05/02/2017 | Date Signed:   05/02/2017 |
| | ☐ Did  ☒ Did Not   Inspect Property |

Form ACR2 DEFD - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE

| Borrower | N/A | | | | | File No. 68057 |
|---|---|---|---|---|---|---|
| Property Address | 150 Spencer Ave | | | | | |
| City | New Orleans | | County | Orleans | State LA | Zip Code 70124 |
| Client | Bhola Dume | | | | | |

## APPRAISAL AND REPORT IDENTIFICATION

This Report is one of the following types:

[X] Appraisal Report    (A written report prepared under Standards Rule   2-2(a)  . pursuant to the Scope of Work, as disclosed elsewhere in this report.)

[ ] Restricted Appraisal Report    (A written report prepared under Standards Rule   2-2(b)  . pursuant to the Scope of Work, as disclosed elsewhere in this report, restricted to the stated intended use by the specified client or intended user.)

### Comments on Standards Rule 2-3

I certify that, to the best of my knowledge and belief:
- The statements of fact contained in this report are true and correct.
- The reported analyses, opinions, and conclusions are limited only by the reported assumptions and limiting conditions and are my personal, impartial, and unbiased professional analyses, opinions, and conclusions.
- Unless otherwise indicated, I have no present or prospective interest in the property that is the subject of this report and no personal interest with respect to the parties involved.
- Unless otherwise indicated, I have performed no services, as an appraiser or in any other capacity, regarding the property that is the subject of this report within the three-year period immediately preceding acceptance of this assignment.
- I have no bias with respect to the property that is the subject of this report or the parties involved with this assignment.
- My engagement in this assignment was not contingent upon developing or reporting predetermined results.
- My compensation for completing this assignment is not contingent upon the development or reporting of a predetermined value or direction in value that favors the cause of the client, the amount of the value opinion, the attainment of a stipulated result, or the occurrence of a subsequent event directly related to the intended use of this appraisal.
- My analyses, opinions, and conclusions were developed, and this report has been prepared, in conformity with the Uniform Standards of Professional Appraisal Practice that were in effect at the time this report was prepared.
- Unless otherwise indicated, I have made a personal inspection of the property that is the subject of this report.
- Unless otherwise indicated, no one provided significant real property appraisal assistance to the person(s) signing this certification (if there are exceptions, the name of each individual providing significant real property appraisal assistance is stated elsewhere in this report).

### Reasonable Exposure Time    (USPAP defines Exposure Time as the estimated length of time that the property interest being appraised would have been offered on the market prior to the hypothetical consummation of a sale at market value on the effective date of the appraisal.)

My Opinion of Reasonable Exposure Time for the subject property at the market value stated in this report is:

A reasonable exposure time for the property is 3-6 months. This estimate is based on market sales contained in the report, discussions with local real estate agents, and current listings of similar properties in the area.

### Comments on Appraisal and Report Identification

Note any USPAP-related issues requiring disclosure and any state mandated requirements:

Rosalyn Bryant is the Supervisor Appraiser on this report and did not view the interior/exterior of the subject property. Steven Arthur the appraiser trainee did view the interior/exterior of the subject property.

| APPRAISER: | SUPERVISORY or CO-APPRAISER (if applicable): |
|---|---|
| Signature: | Signature: |
| Name: Steven Arthur | Name: Rosalyn Bryant |
| State Certification #: | State Certification #: R1179 |
| or State License #: T4161 | or State License #: |
| State: LA   Expiration Date of Certification or License: 12/28/2018 | State: LA   Expiration Date of Certification or License: 12/31/2018 |
| Date of Signature and Report: 05/02/2017 | Date of Signature: 05/02/2017 |
| Effective Date of Appraisal: 04/27/17 | |
| Inspection of Subject: [ ] None [X] Interior and Exterior [ ] Exterior-Only | Inspection of Subject: [X] None [ ] Interior and Exterior [ ] Exterior-Only |
| Date of Inspection (if applicable): 04/27/17 | Date of Inspection (if applicable): |

**Insured**

Loan #:   189126

BHOLANATH DHUME
PRABHA DHUME

1441 HOMESTEAD AVE
METAIRIE            LA 70005

**Mail To:   Insured**

BHOLANATH DHUME
PRABHA DHUME                    B000353-0-000

1441 HOMESTEAD AVE
METAIRIE            LA  70005

Coverage is provided under this policy for
the residence located at:

150 SPENCER AVE
NEW ORLEANS            LA 70124-2129

**Producer Name & Address**   560175
**Phone: 800-299-4161**

STONE INSURANCE INC

111 VETERANS BLVD STE 1420
METAIRIE            LA 70005

# GeoVera Specialty Insurance Company
## Residential Coverage
## AMENDED DECLARATIONS

THIS AMENDED DECLARATION IS ATTACHED TO AND FORMS A PART OF HOMEOWNERS POLICY NUMBER  GH70029339

AMENDED DECLARATIONS EFFECTIVE DATE: 11/29/17

| Policy Number | Policy Term | Effective Date | Expiration Date |
|---|---|---|---|
| GH70029339 | 12 Month(s) | 11/29/17 | 11/29/18     12:01 AM Standard Time at the Insured Premises. |

## Insurance is provided only with respect to those specific limits of liability applicable thereto.

| POLICY COVERAGE(S) | LIMITS |
|---|---|
| **Section I** | |
| A - Dwelling | $418,000 |
| B - Other Structures | $20,900 |
| C - Personal Property | $20,900 |
| D - Loss of Use | $41,800 |
| **Section II** | |
| E - Personal Liability | $300,000 |
| F - Medical Payments to Others | $2,000 |

| AMOUNT | NEW ANNUAL | ADD/RETURN |
|---|---|---|
| Premium | $3,934.00 | $.00 |
| Policy Fee** | $75.00 | $.00 |
| Company Underwriting Fee** | $125.00 | $.00 |
| Tax | $200.50 | $.00 |
| | | |
| Total Policy Amount | $4,334.50 | $.00 |

**Fees are fully earned and nonrefundable.

| Section I Deductible | Windstorm/Hail Deductible | Amount Due Now |
|---|---|---|
| $1,000.00 | $20,900.00 | $2,360.40 |

**Forms and endorsements made part of this policy
at time of issuance of amended declarations:**

| | | | | | |
|---|---|---|---|---|---|
| CLIL | 01-12 | HO-P-004 | 05-11 | HO-00-03 | 05-11 |
| HO-04-77 | 10-00 | US-03-55 | 05-15 | US-04-35 | 03-15 |
| US-04-90 | 03-15 | US-04-98 | 09-16 | US-05-03 | 09-07 |
| US-05-05 | 03-15 | US-05-11 | 04-17 | US-05-27 | 07-17 |
| USPRIV | 05-16 | | | | |

### NOTICE

**This insurance policy is delivered as surplus lines coverage under the Louisiana Insurance Code.**

**In the event of insolvency of the company issuing this contract, the policyholder or claimant is not covered by the Louisiana Insurance Guaranty Association which guarantees only specific policies issued by an insurance company authorized to do business in Louisiana.**

**This surplus lines policy has been procured by the following licensed Louisiana surplus lines broker:**

Authorized Agent:
Timothy R. Ramsey
National Risk Solutions
PO Box 20869
St. Petersburg, FL 33742-0869
Surplus Lines Agent, #457569

Timothy R. Ramsey

THIS DECLARATION PAGE, WITH POLICY PROVISIONS AND ENDORSEMENTS, IF ANY, ISSUED TO FORM A PART THEREOF, COMPLETES THE ABOVE NUMBERED HOMEOWNERS POLICY.

**FOR POLICY QUESTIONS OR CUSTOMER SERVICE, CALL YOUR PRODUCER AT 1- 800-299-4161**

 **FEMA**

Stone Insurance Inc
111 VETRANS BLVD STE 1420
METAIRIE, LA 70005-3055

**Agency Phone:** (504) 832-4161



| | |
|---|---|
| **NFIP Policy Number:** | 4000738975 |
| **Company Policy Number:** | 4000738975 |
| **Agent:** | STNNSR7555 |

| | |
|---|---|
| **Policy Term:** | 06/25/2017 12:01 AM **through** 06/25/2018 12:01 AM |
| **Renewal Billing Payor:** | INSURED |
| **To report a claim visit or call us at:** | https://my.nfipdirect.fema.gov (800) 767-4341 |

## REVISED FLOOD INSURANCE POLICY DECLARATIONS
PREFERRED RISK POLICY - DWELLING FORM

**DELIVERY ADDRESS**

BHOLANATH V & PRABHA RAIKER DHUME
150 SPENCER AVE
NEW ORLEANS, LA 70124-2129

**INSURED NAME(S) AND MAILING ADDRESS**

BHOLANATH V & PRABHA RAIKER DHUME
150 SPENCER AVE
NEW ORLEANS, LA 70124-2129

**COMPANY MAILING ADDRESS**

NFIP Direct Servicing Agent
PO BOX 913111
DENVER, CO 80291-3111

**PROPERTY LOCATION**

150 SPENCER AVE
NEW ORLEANS, LA 70124-2129

**DESCRIPTION:** N/A

**RATING INFORMATION**

| | | | | |
|---|---|---|---|---|
| ORIGINAL NEW BUSINESS DATE: | 06/25/2016 | | DATE OF CONSTRUCTION: | 01/01/1993 |
| REINSTATEMENT DATE: | N/A | | COMMUNITY NUMBER: | 225203 0113 F   REGULAR PROGRAM |
| BUILDING OCCUPANCY: | SINGLE FAMILY | | COMMUNITY NAME: | NEW ORLEANS/ORLEANS PARISH |
| CONDOMINIUM INDICATOR: | NOT A CONDO | | CURRENT FLOOD ZONE: | X |
| NUMBER OF UNITS: | N/A | | GRANDFATHERED: | NO |
| PRIMARY RESIDENCE: | YES | | FLOOD RISK/RATED ZONE: | X |
| ADDITIONS/EXTENSIONS: | SELECT | | ELEVATION DIFFERENCE: | N/A |
| BUILDING TYPE: | TWO FLOORS | | ELEVATED BUILDING TYPE: | NON-ELEVATED |
| BASEMENT/ENCLOSURE/CRAWLSPACE TYPE: NO BASEMENT | | | | |

**MORTGAGEE / ADDITIONAL INTEREST INFORMATION**

| | | | |
|---|---|---|---|
| **FIRST MORTGAGEE:** | STANDARD MORTGAGE CORPORATION ISAOA ATIMA PO BOX 792107 SAN ANTONIO, TX 78279 | **LOAN NUMBER:** | N/A |
| **SECOND MORTGAGEE:** | | **LOAN NUMBER:** | N/A |
| **ADDITIONAL INTEREST:** | | **LOAN NUMBER:** | N/A |
| **DISASTER AGENCY:** | | **CASE FILE NUMBER:** | N/A |
| | | **DISASTER AGENCY:** | |

### PREMIUM CALCULATION —

**Preferred Risk Policy**

| | COVERAGE | DEDUCTIBLE |
|---|---|---|
| BUILDING | $250,000 | $1,250 |
| CONTENTS | $100,000 | $1,250 |

Coverage limitations may apply. See your policy form for details.

Endorsement Effective Date: 03/07/2018
**ENDORSEMENT PREMIUM:** $0.00

| | |
|---|---|
| PRP BASE PREMIUM: | $344.00 |
| PRP MULTIPLIER: | 1.000 |
| *ANNUAL SUBTOTAL:* | *$344.00* |
| INCREASED COST OF COMPLIANCE: | $4.00 |
| COMMUNITY RATING DISCOUNT:   0% | $0.00 |
| RESERVE FUND ASSESSMENT:  15.0% | $52.00 |
| PROBATION SURCHARGE: | $0.00 |
| *ANNUAL PREMIUM:* | *$400.00* |
| HFIAA SURCHARGE: | $25.00 |
| FEDERAL POLICY SERVICE FEE: | $25.00 |
| TOTAL: | $450.00 |
| PRORATA PREMIUM ADJUSTMENT: | $0.00 |
| ADJUSTED ANNUAL PREMIUM: | $450.00 |

### Zero Balance Due
### This Is Not A Bill

This declarations page along with the Standard Flood Insurance Policy Form constitutes your flood insurance policy.

**Policy issued by NFIP Direct Servicing Agent**

**Company NAIC:** 99999

NFIP Direct Servicing Agent

# This page is intentionally left blank.



### CITY OF NEW ORLEANS • 2017 Real Estate Tax Bill



**BUREAU OF THE TREASURY**
1300 Perdido Street, Room 1W40
New Orleans, LA 70112

**2017 Ad Valorem Tax**
4,596.56
**Delinquency Date**
2/1/2017
**Property Location**
150 SPENCER AV
**Legal Description**
SQ 19 LOTS 71-73 SPENCER 60 X 120

**Tax Bill No.**
7 16 5 236 35

Mortgage lenders have direct access to pay real estate taxes that they have escrowed. If you are unsure of your lender's intent, please contact them directly to ensure a timely, single tax payment.

**********AUTO**5-DIGIT 70116                    T181 P1,67162
DHUME BHOLANATH V
150 SPENCER AV
NEW ORLEANS, LA 70124-2129

**Need to Correct your Mailing Address?**

Please provide your authorization for a change of address DIRECTLY to your assessor. Any note written upon your bill stub, or separately, when sending your payment is NOT effective for that purpose. Use the form available at the assessor's website (www.nolaassessor.com) or call the assessor's office at **504-658-1300** for directions.

**ONLY payments** are processed at P O Box 60047 as shown on our payment stub.
Legal Process and other correspondence must be sent to 1300 Perdido St, Rm 1W40, New Orleans, LA 70112.

Delinquency interest accrues at 1% per month on all delinquent taxes and special district fees. In compliance with city ordinance all funds tendered will first be applied to satisfy any outstanding liens shown. Funds will next be applied to pay any residual tax sale costs related to prior years' tax sales. Then special district fees, if any, and ad valorem taxes will be satisfied to the extent possible starting from the latest delinquency going backwards with the current tax last.

Tax Bill No.  7 16 5 236 35

**Property Values**
2017 Land Assessment                11,520
2017 Improvement Assessment         26,690
2017 Homestead Exemption             7,500

| | |
|---|---:|
| Real Estate Tax, If Paid Before February 1, 2017 | 4,731.56 |
| Tax, Int, Fees, If Paid During the Month of February 2017 | 4,778.88 |
| Tax, Int, Fees, If Paid During the Month of March 2017 | 4,826.19 |
| Tax, Int, Fees, If Paid During the Month of April 2017 | 4,873.51 |
| Tax, Int, Fees, If Paid During the Month of May 2017 | 4,920.82 |

### DETAIL OF BILL
This bill reflects payments through 12/16/2016

| Period | Type | Ref No. | Delinquency Date | Tax/Lien | Interest | City Fee | Collection Fee | Total |
|--------|------|---------|------------------|----------|----------|----------|----------------|-------|
| 2017 | REAL ESTATE | | 2/1/2017 | 4,596.56 | | | | 4,596.56 |
| 2017 | LAKEVIEW | | 2/1/2017 | 135.00 | | | | 135.00 |

*Paid 12/20/16*

*4,731.56*
*232.50*
*$4964.06*

*Total tax bill*                    *$ 4,731-56*

### ATTENTION TAXPAYERS

Properties with delinquent 2017 taxes or fees after May 31, 2017 will become eligible for initial tax sale processing and their cost. If you qualify for a homestead exemption that is not shown above, contact your assessor's office at 658-1300. However delinquent taxes under review for adjustment by the assessor remain subject to tax sale processing and costs. Full payment when billed is the only means to avoid tax sale processing and costs. Tax refunds are available if a lower tax liability is later authorized.

The assessor's staff can answer questions on the assessed valuation, owner's name, mailing address and legal description. For payment questions call 1-888-387-8027. Treasury's office in City Hall, Room 1W40, is open Monday through Friday from 8:00 AM through 4:55 PM.

Tax Sales to Individuals shown on our records for the Tax Years: NONE

### Please make all checks payable to the City of New Orleans.
See reverse for how your tax dollars are spent.

## CITY OF NEW ORLEANS • 2017 Secondary Real Estate Tax Bill



**BUREAU OF THE TREASURY**
1300 Perdido Street, Room 1W40
New Orleans, LA 70112



| | |
|---|---|
| **Delinquent Date** | **Tax Bill No.** |
| 6/1/2017 | 7 16 5 236 35 |
| **Property Location** | |
| 150 SPENCER AV | |
| **Legal Description** | |
| SQ 19 LOTS 71-73 SPENCER 60 X 120 | |

Mortgage lenders have direct access to pay real estate taxes that they have escrowed. If you are unsure of your lender's intent, please contact them directly to ensure a timely, single tax payment.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*AUTO\*\*5-DIGIT 70116          T84 P1,26700

DHUME BHOLANATH V
150 SPENCER AVE
NEW ORLEANS, LA 70124-2129

**Need to Correct your Mailing Address?**

Please provide your authorization for a change of address DIRECTLY to your assessor. Any note written upon your bill stub, or separately, when sending your payment is NOT effective for that purpose. Use the form available at the assessor's website (**www.nolaassessor.com**) or call the assessor's office at **504-658-1300** for directions.

**ONLY** payments are processed at P O Box 60047 as shown on our payment stub.
Legal Process and other correspondence must be sent to 1300 Perdido St, Rm 1W40, New Orleans, LA 70112.

Delinquency interest accrues at 1% per month on all delinquent taxes and special district fees. In compliance with city ordinance all funds tendered will first be applied to satisfy any outstanding liens shown. Funds will next be applied to pay any residual tax sale costs related to prior years' tax sales. Then special district fees, if any, and ad valorem taxes will be satisfied to the extent possible starting from the latest delinquency going backwards with the current tax last.

| | | | |
|---|---|---|---|
| Tax Bill No.  7 16 5 236 35 | | Tax, Int, Fees, if Paid During the Month of May 2017 | 232.50 |
| **Property Values** | | Tax, Int, Fees, if Paid During the Month of June 2017 | 234.83 |
| 2017 Land Assessment | 11,520 | Tax, Int, Fees, if Paid During the Month of July 2017 | 237.15 |
| 2017 Improvement Assessment | 26,690 | Tax, Int, Fees, if Paid During the Month of August 2017 | 239.48 |
| 2017 Homestead Exemption | 7,500 | Tax, Int, Fees, if Paid During the Month of September 2017 | 241.80 |
| | | New tax sale cost, if applicable, will be added to the above projections. | |

### DETAIL OF BILL
This bill reflects payments through 4/20/2017

| Period | Type | Ref No. | Delinquency Date | Tax/Lien | Interest | City Fee | Collection Fee | Total |
|---|---|---|---|---|---|---|---|---|
| 2017 | ADDTL MILLAGE | | 6/1/2017 | 232.50 | | | | 232.50 |

*Paid on line*

### ATTENTION TAXPAYERS

Properties with delinquent original 2017 taxes or fees after May 31, 2017 will become eligible for initial tax sale processing and their cost. If you qualify for a homestead exemption that is not shown above, contact your assessor's office at 658-1300. However delinquent taxes under review for adjustment by the assessor remain subject to tax sale processing and costs. Full payment when billed is the only means to avoid tax sale processing and costs. Tax refunds are available if a lower tax liability is later authorized.

The assessor's staff can answer questions on the assessed valuation, owner's name, mailing address and legal description. For payment questions call 1-888-387-8027. Treasury's office in City Hall, Room 1W40, is open Monday through Friday from 8:00 AM through 4:55 PM.

**Tax Sales to Individuals shown on our records for the Tax Years: NONE**

### Please make all checks payable to the City of New Orleans.
See reverse for an explanation of this Second tax billing.

**Attention: Real Estate and Business Owners**

RE: City of New Orleans NEW Fire Millage

and

Sewerage & Water Board RENEWAL Drainage Millage

This SECOND 2017 property tax bill is the initial 2017 billing for the two 2017 millages adopted by city voters and levied by the City Council after our standard December billing cycle for property taxes in New Orleans had started.

These newly billed taxes for 2017 are for the new 2.5 mill tax voters approved on December 10, 2016 for Fire protection without benefit of any homestead exemption and the 4.46 mill tax renewal, at that same election, for the Sewerage & Water Board to operate and maintain the City's drainage system.

That total additional 2017 tax will become delinquent if not paid in full before June 1, 2017 in accordance with the calculation schedule shown on this bill. **Please do not forget or ignore that additional tax obligation due on your property.**

If other taxes are delinquent on this property they are also listed with their appropriate interest and penalties.

Administratively we do not spend funds to print and mail any secondary bill which is lower than $1.00. We will show such very low amounts on the City's website, should such information be needed. We will not assess interest on such balances until 30 days after they are ultimately billed as an item on our 2018 original tax bills.

**CHASE** ⬡

February 14, 2018 through March 13, 2018
Primary Account: **000001591818412**

## DEPOSITS AND ADDITIONS | (continued)

| DATE | DESCRIPTION | | AMOUNT |
|------|-------------|---|--------|
| 03/01 | Chase 007785C02 Pension | PPD ID: 1133795042 | 2,370.90 |
| 03/02 | Meyervactionrent Credits | PPD ID: 630832702 | 2,768.49 |
| 03/06 | Remote Online Deposit | 1 | 1,265.47 |
| **Total Deposits and Additions** | | | **$21,827.56** |

## CHECKS PAID

| CHECK NO. | DESCRIPTION | DATE PAID | AMOUNT |
|-----------|-------------|-----------|--------|
| ˅564 ^ | 03.10 | 03/12 | $100.00 |
| **Total Checks Paid** | | | **$100.00** |

If you see a description in the Checks Paid section, it means that we received only electronic information about the check, not the original or an image of the check. As a result, we're not able to return the check to you or show you an image.
^ An image of this check may be available for you to view on Chase.com.

## ELECTRONIC WITHDRAWALS

| DATE | DESCRIPTION | | AMOUNT | |
|------|-------------|---|--------|---|
| 02/14 | Jp Water Oper    Water Drft | PPD ID: 2726013920 | $101.90 | |
| 02/21 | Entergy Louisian Bank Draft | PPD ID: 1720245590 | 118.82 | |
| 02/22 | 02/22 Online Payment 6848434182 To Shoalwater | | 500.00 | |
| 02/22 | 02/22 Online Payment 6848433502 To Legacy Condonium Owners Assoc. | | 424.96 |  Mortgage |
| 02/28 | 02/28 Online Payment 6863073311 To Standard Mortgage Corp | | 1,523.22 | Pool |
| 03/02 | 03/02 Online Payment 6947376595 To David Farrell | | 140.00 | |
| 03/05 | American Contine Ins Pymt | PPD ID: 1202901054 | 146.31 | |
| 03/05 | American Contine Ins Pymt | PPD ID: 1202901054 | 112.37 | |
| 03/06 | 03/06 Online Payment 6960129705 To Macy's Retail | | 23.71 | |
| 03/08 | 03/08 Online Payment 6943550143 To Chase Cardmember Services | | 5,287.95 | |
| 03/08 | 03/08 Payment To Chase Card Ending IN 7766 | | 7,030.32 | Electric |
| 03/09 | Entergy New Orle Bank Draft | PPD ID: 1720273040 | ˉ62.52 |  bill |
| **Total Electronic Withdrawals** | | | **$15,472.08** | |

A monthly Service Fee was **not** charged to your Chase Total Checking account. Here are the three ways you can avoid this fee during any statement period.

- **Have direct deposits totaling $500.00 or more**
  (Your total direct deposits this period were $11,862.09. Note: some deposits may be listed on your previous statement)

- **OR, keep a minimum daily balance in this checking account of $1,500.00 or more**
  (Your minimum daily balance was $9,512.98)

- **OR, keep an average daily balance of qualifying linked deposits and investments of $5,000.00 or more**
  (Your average daily balance of qualifying linked deposits and investments was $17,695.54)

**CHASE ◆**

December 14, 2017 through January 12, 2018
Primary Account: **000001591818412**

## ELECTRONIC WITHDRAWALS

| DATE | DESCRIPTION | | AMOUNT |
|------|-------------|--|--------|
| 12/18 | 12/16 Online Payment 6752121749 To JC Penney | | $10.95 |
| 12/18 | 12/17 Online Payment 6752924081 To Citibank Choice Mastercard | | 59.71 |
| 12/20 | Entergy Louisian Bank Draft | PPD ID: 1720245590 | 54.81 |
| 12/21 | 12/21 Online Payment 6691100667 To Shoalwater | | 500.00 |
| 12/21 | 12/21 Online Payment 6691100075 To Legacy Condomium Owners Assoc. | | 424.96 |
| 12/27 | 12/27 Online Payment 6776137154 To Lowe's | | 74.30 |
| 12/28 | 12/28 Online Payment 6705136625 To Standard Mortgage Corp | | 1,523.22 |
| 12/29 | 12/29 Payment To Chase Card Ending IN 7766 | | 542.46 |
| 01/02 | 01/02 Online Payment 6793109075 To David Farrell | | 140.00 |
| 01/03 | 01/03 Online Payment 6795038841 To Chase Cardmember Services | | 32.54 |
| 01/03 | American Contine Ins Pymt | PPD ID: 1202901054 | 146.31 |
| 01/03 | American Contine Ins Pymt | PPD ID: 1202901054 | 112.37 |
| 01/04 | 01/04 Online Payment 6797818476 To City Cards | | 8,197.67 |
| 01/05 | Entergy New Orle Bank Draft | PPD ID: 1720273040 | 44.15 |
| **Total Electronic Withdrawals** | | | **$11,863.45** |



Mortgage

Pool

Electric bill

A monthly Service Fee was **not** charged to your Chase Total Checking account. Here are the three ways you can avoid
this fee during any statement period.

- Have direct deposits totaling **$500.00 or more**
  (Your total direct deposits this period were $10,230.60. Note: some deposits may be listed on your previous statement)

- **OR**, keep a minimum daily balance in this checking account of **$1,500.00 or more**
  (Your minimum daily balance was $8,617.14)

- **OR**, keep an average daily balance of qualifying linked deposits and investments of **$5,000.00 or more**
  (Your average daily balance of qualifying linked deposits and investments was $18,885.30)

BHOLANATH V DHUME                                    Account Number: 000002930419359

PRABHA R DHUME

## SAVINGS SUMMARY

| | AMOUNT |
|--|--------|
| Beginning Balance | **$1,306.82** |
| Deposits and Additions | 0.01 |
| Ending Balance | **$1,306.83** |
| | |
| Annual Percentage Yield Earned This Period | 0.01% |
| Interest Paid This Period | $0.01 |
| Interest Paid Year-to-Date | $0.01 |

Interest paid in 2017 for account 000002930419359 was $0.12.

**ERROLL G. WILLIAMS**
Assessor – Orleans Parish
P.O. BOX 53406
NEW ORLEANS, LA 70153-3406

Phone#: 504-658-1300
Website: www.nolaassessor.com

February 12, 2018

DHUME BHOLANATH V
150 SPENCER AV
NEW ORLEANS LA 70124

RE: 150-SPENCERAV
TAX BILL# : 716523635

Dear Property Owner:

Recently you requested one of the following: ● a supplemental homestead exemption, ● a change in the assessed value of your real property, or ● one of the exemptions granted under Article 7, Section 21 of our state's Constitution. Assessment changes made by an assessor after the tax rolls have closed must be approved by the Louisiana Tax Commission (LTC) in Baton Rouge.

Listed below, please find the details of the affidavit submitted by this office and subsequently approved/rejected by the LTC.

| Tax Year : 2018 | Batch No: 6 | | Batch Item No: 5 | | Date Submitted: 01/31/2018 |
|---|---|---|---|---|---|
| Reason:  Improvement - Decrease value, error in square feet and/or classification calculation. DAMAGED CAUSED | | | | | |
| Status:  APPROVED | | Date approved/rejected:  02/07/2018 | | | |
| | **Old Real Property Assessment Values** | | | **New Real Property Assessment Values** | |
| Description | Tot Assessed | HE Credit | Taxpayer Share | Total Assessed | HE Credit | Taxpayer Share |
| LAND | 11,520 | 0 | 11,520 | 11,520 | 0 | 11,520 |
| IMPROVEMENT | 26,690 | 7,500 | 19,190 | 19,370 | 7,500 | 11,870 |
| TOTAL | 38,210 | 7,500 | 30,710 | 30,890 | 7,500 | 23,390 |

The Assessor's Office has completed all of the steps necessary to effect the appropriate change in assessment as of the date approved by the LTC.

The approved LTC affidavit confirms to this office and the city tax collector's office (Finance Dept.) that the tax collector is authorized to issue you a revised tax bill, if applicable.  It takes the city approximately 1 to 2 months to update its account receivable billing system.  When you receive a revised tax bill, if there is still a balance due, you will be given a fifteen day grace period to pay your property taxes without penalty or interest charges.  However, if your revised bill indicates that you overpaid, the tax collector's office  will provide you with the necessary procedure and application to apply for a refund.

Please note that you will need the **batch** and **item** numbers listed above on the affidavit when making an inquiry to the tax collector regarding a new tax bill, tax refund or exempt status.

Your courtesy and understanding are appreciated.

Sincerely,

*Eroll G. Williams*

Erroll G. Williams – Assessor, Orleans Parish

# TERMINIX®

www.terminixno.com
THE NATIONWIDE PEST CONTROL EXPERTS

**Customer Copy**

**ANNUAL TERMITE CONTROL AGREEMENT INSPECTION**

Date: _____

Time: _____ Time Out: _____

AMT: 166.00 TYPE: 185   MMYY: 10-16 915/9031      RT#: 033
CUST# 2243760

030280-10*HSE&REAR POOL HSE
CB4G 488-2808 OR 915-9031

**INSPECTORS FINDING**

Premises Reinspected        150 SPENCER ST      0922
                            701240000

____ No active termites found

____ Termite activity found – Chemical treatment made

NNNNNN            BHOLA DHUME
                  150 SPENCER ST
                  NEW ORLEANS LA 70124

____ Termite activity found – Treatment to be scheduled

See condition report dated:_____

Inspector Registration Number:_____

Remarks:_____

Inspector:_____

Owner/Occupant

004180289868 JUN 21 #0000001527 $475.00

008870582811 JUN 22 #0000001528 $1,500.00