Page 1

```
 1              UNITED STATES DISTRICT COURT
 2              EASTERN DISTRICT OF LOUISIANA
 3   IN RE:  CHINESE-MANUFACTURED
     DRYWALL PRODUCTS LIABILITY
 4   LITIGATION
 5   This document relates to:
 6   Elizabeth Bennett, et al.    CASE NO:  14-cv-2722
 7   vs.
 8   Gebr. Knauf Verwaltungsgesellschaft,
     KG, et al.
 9
10             * * * * * * * * * * * * * *
11   DEPOSITION OF:   SANTIAGO GUZMAN
12   DATE TAKEN:      NOVEMBER 18, 2019
13   TIME:            10:42 a.m. - 12:39 p.m.
14   PLACE:           6303 BLUE LAGOON DRIVE, SUITE 380
                      NORTH MIAMI BEACH, FL  33126
15
     TAKEN BY:        THE DEFENDANT
16
     REPORTED BY:     MICHELLE J. BROWNE
17                    COURT REPORTER AND
                      NOTARY PUBLIC
18
     TRANSCRIBED BY:  KRISTIN L. DWYER, RPR
19                    COURT REPORTER
20
21
22
23                                                 EXHIBIT
24                                                 GUZMAN
25                                                    B
```

EXHIBIT GUZMAN B

1    you know if the -- whoever -- well, you purchased
2    it from the bank?  Is that who you purchased it
3    from?
4        A.   The bank knew because it was hold by the
5    bank I believe, still [sic].
6        Q.   It was what?
7        A.   It was hold by the bank, where they were
8    going -- I don't know -- I don't really know how
9    it works, the process.  But there was knowledge
10   from -- there was knowledge that that house had
11   that.
12       Q.   Do you have anything that you could submit
13   that the bank had knowledge?
14       A.   No.
15       Q.   Okay.  Now the purpose of buying this
16   property was as a rental?
17       A.   Investment, yes.
18       Q.   Okay.  So you weren't intending on moving
19   in and making this your primary residence?
20            MR. DOYLE:  Object to the form of the
21       question.  You can answer.
22       A.   Doesn't really -- like, I bought a
23   property now.  If I want to move in, I move in.
24   If I can rent it, I rent it.  It depends.  Doesn't
25   really matter.

Page 47

```
 1       Q.   All right.  Now you've lived at the
 2   property located at 3168 Southwest 153rd?
 3       A.   Yes.
 4       Q.   That's your primary residence?
 5       A.   Yes.
 6       Q.   And you've lived there for three years?
 7       A.   Yes.
 8       Q.   And that's prior to when you purchased
 9   this property?
10       A.   That's prior, yes.
11       Q.   Okay.  And you still live there to this
12   day?
13       A.   Yeah.
14       Q.   Primary residence?
15       A.   Yes.
16       Q.   Okay.  What is the status of the affected
17   property at 10769 Northwest?
18       A.   It's rented.
19       Q.   It's rented.  And since when was it
20   rented?
21       A.   February 2019.
22       Q.   Okay.  So within 30 days of completion of
23   remediation?
24       A.   About.
25       Q.   Okay.  I'll take that document back from
```

```
 1    you.  The alternative living expenses paid, you've
 2    listed 32,500?
 3         A.   Yes.
 4         Q.   Okay.  What does that amount reference?
 5         A.   The storage, the moving, and the
 6    utilities.
 7         Q.   Okay.  Is that an addition of the lines
 8    above it?
 9         A.   That's the addition -- that's the whole
10    amount.
11         Q.   Okay.  So let me back up.  You have listed
12    in this ODA, owner disclosure affidavit, storage
13    expenses 19,500, right?
14         A.   Yes.
15         Q.   And moving expenses paid 4,000?
16         A.   Correct.
17         Q.   Okay.  And then utility expenses paid
18    6,000?
19         A.   Correct.
20         Q.   Okay.  And so that would equal 29,500.
21         A.   Correct.
22         Q.   And then you have alternative living
23    expenses paid 32,500.
24         A.   Yeah, I don't know.  That doesn't add up.
25         Q.   Do you know why?  I'm just asking.  Do you
```

1   want to amend that?  Should that read 29,500?
2       A.   We can amend that.
3       Q.   Okay.  So that should be 29,500?
4       A.   It seems like, yes.
5       Q.   Okay. All right.  Storage expenses paid,
6   you haven't provided any documentation regarding
7   storage expenses paid?
8       A.   No.
9       Q.   Moving expenses paid, you haven't provided
10  any documentation with respect to moving expenses
11  paid?
12      A.   No.
13      Q.   In terms of moving expenses, you never did
14  move into the property, right?
15           MR. DOYLE:  Object to the form of the
16      question.
17      A.   We couldn't move into the property.  The
18  problem is moving into the property.
19      Q.   I'm sorry?
20      A.   The problem is moving into the property
21  when we purchased the property.
22      Q.   Right.
23      A.   So that gave us a bunch of added costs
24  that I had to pay for, because I was unable to use
25  the house.  She was going to move.  She couldn't

1     move.  She had to move -- all this is her storage,
2     the stuff.  Even though she's my girlfriend,
3     whoever it is.  It's a person -- I can say, like,
4     I was going to move in.  I wasn't able to move in.
5     I had to rent a storage because of the --
6          Q.   Right, that's the storage expenses.  But
7     whether she was moving into your property or
8     somewhere else, she was going to have to pay to
9     move, right?
10         A.   Yes.
11         Q.   So the actual moving expenses that were
12    incurred and that you allege here, 4,000 was
13    unrelated to the presence of Chinese drywall in
14    10769 Northwest 81st?
15              MR. DOYLE:  Object to the form of the
16         question.  You can answer.
17         A.   Yes.
18         Q.   Utility expenses paid, what do those
19    relate to?
20         A.   The utilities that we had to pay in extra,
21    because of not able to be in there.  But I guess
22    it's the same as the moving --
23         Q.   Is it the -- right.  And again, you
24    haven't provided any documentation with respect to
25    utility expenses, true?