EXHIBIT
MARTINEZ
A



UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL NO. 2047<br><br>SECTION: L |
| THIS DOCUMENT RELATES TO:<br><br>*Elizabeth Bennett, et al. v. Knauf Gips, KG, et al.*<br>**2:14-cv-02722-EEF-JCW** | JUDGE ELDON FALLON<br><br>MAG. JUDGE WILKINSON |

## PLAINTIFF FACT SHEET

Name of Plaintiff: Karina Martinez

Affected Property Address: 23631 SW 112th Court, Homestead, FL  33032

## I.  Purchase, Sale and/or Transfer of Ownership of Property

1.  On what date did you purchase the Property?

**Response:**  Plaintiff objects to this question as duplicative.  In addition, Plaintiff objects to this question on the ground that it seeks information in the possession of, known to, or otherwise equally available to the defendants.  Plaintiff has previously provided this information to defendants in the Bennett Supplemental Plaintiff Profile Form ("SPPF").  Plaintiff directs the defendants to Section II of the SPPF. Without waiving said objection, Plaintiff adopts the SPPF response again here and intends to provide the exact same date as provided in the verified SPPF as follows: Plaintiff purchased the property:

(Month/Day/Year)        05 / 31 / 2016

2.  When you took ownership of the Property, what was the name of the seller?

Graphics and More Exports, LLC / Otto Aguilar, Manager

1

3. Name and address of the realtor?

The Keyes Company, 11570 Sunset Drive, Miami, FL 33173 (seller)

5 Diamond Management & Real Estate, Inc., 17687 NW 78 Avenue, Miami, FL 33015 (buyer)
4. Name and address of the closing agent?

Masters Title, Inc., 1806 North Flamingo Road, Suite 240, Pembroke Pines, FL 33028

5. What was the price of the home when you purchased it? $ 217,000.00

6. Was it an "as-is" sale?

**Response**: Plaintiff objects to the use of "as-is" in this question as vague, ambiguous, uncertain, and unintelligible; consequently, Plaintiff cannot determine the exact nature of the information being sought. This term is not defined and is not commonly understood with one accepted meaning; multiple inpretations are possible. Without waiving said objection, plaintiff responds as follows:

[✓]Yes   [ ]No   [ ]I'm not sure.

7. If you sold or transferred ownership of the Property, what was the name of the purchaser?

N/A

8. If you sold or transferred ownership of the Property, what was the name and address of the realtor?

N/A

9. If you sold or transferred ownership of the Property, what was the name and address of closing agent?

N/A

10. If you sold or transferred ownership of the Property, what was the price paid for home?

$ N/A

## II.  Appraisal of the Home

11. Date of each appraisal:

a. _05_ / _04_ /20_16_

b. ____/____/20_____

**PFS REQUEST FOR DOCUMENT PRODUCTION #1**: Please produce copies of any and all appraisals performed on the house both prior and subsequent to the occurrence of any of the events allenged in the petition.

> **Response**: All documents in Plaintiff's possession responsive to this request are attached as "Exhibit 1."

## III.  Discovery of Drywall

12.  Date that the property was constructed and/or renovated that installed the allegedly defective Chinese Drywall.

**Response**:  Plaintiff objects to this question as duplicative.  In addition, Plaintiff objects to this question on the ground that it seeks information in the possession of, known to, or otherwise equally available to the defendants.  Plaintiff has previously provided this information to defendants in the Bennett Supplemental Plaintiff Profile Form ("SPPF").  Plaintiff directs the defendants to  Section II of the SPPF.  Without waiving said objection, Plaintiff adopts the SPPF response again here and intends to provide the exact same date as provided in the verified SPPF as follows: The property construction and/or renovation that installed the allegedly defective drywall occurred on or about the following date (to the best of my knowledge):

(Month/Day/Year)          ____/____/20_06__

**PFS REQUEST FOR DOCUMENT PRODUCTION #2**: Please produce all documents, reports, photographs, videotapes, samples and any other materials which evidence and/or identify that there is defective Chinese Drywall in the Property.

> **Response**: All documents in Plaintiff's possession responsive to this request are attached as "Exhibit 2."

## IV.  Manufacturer/Seller of Drywall

13.  Who sold or distributed the drywall in the house?

**Response**:  Plaintiff objects to this question as duplicative.  In addition, Plaintiff objects to this question on the ground that it seeks information in the possession of, known to, or otherwise equally available to the defendants.  Plaintiff has previously provided this information to defendants in the Plaintiff Profile Form ("PPF").  Plaintiff directs the defendants to  Section X of the PPF.  Without waiving said objection, Plaintiff adopts the PPF response again here and intends to provide the exact same information as provided in the verified PPF as follows:  The drywall Supplier's name (to the best of my knowledge) is:

I don't know._____

3

**PFS REQUEST FOR DOCUMENT PRODUCTION #3**: Please produce all documents, reports, photographs, videotapes, samples and any other materials which evidence and/or identify the manufacturer of drywall installed in the house. The submission must be in the form of PTO 1(B).

> **Response**: All documents in Plaintiff's possession responsive to this request are attached as "Exhibit 3."

## V.  Damages

14.  Identify any harm, financial or otherwise, that you contend was caused by defective Chinese Drywall installed in the Property.

**Response**:  Plaintiff directs the defendants to review the complaint filed with the court in this case for a full listing of the claims being asserted and the damages being sought.  The defective Knauf Chinese Drywall emitted gasses that cause damage to Plaintiff's home and the personal property contained therein.  It also significantly diminished the use and enjoyment of the home; therefore, Plaintiff seeks the following:  all compensatory, statutory, and/or punitive damages; all pre-judgment and post-judgment interest as allowed by law; any appropriate injunctive relief; an award of attorney's fees as allowed by law; an award of taxable costs; and, any and all such further relief as a jury or judge presiding over my trial deems just and proper.  Other damages include, but are not limited to:

Loss of sale of the townhouse has caused a severe financial hardship.

15.  If you contend that you entered personal bankruptcy as a result of damage to your property from defective Chinese Drywall, please describe the facts and circumstances that relate to your claim.

N/A

16.  If you contend that you entered short sale and/or foreclosure as a result of damage to your property from defective Chinese Drywall, please describe the facts and circumstances that relate to your claim.

N/A

4

**PFS REQUEST FOR DOCUMENT PRODUCTION #4**: If you claim loss of income, please produce any copies of any and all documentation upon which you intend to rely upon to prove this claim.

> **Response**: All documents in Plaintiff's possession responsive to this request are attached as "Exhibit 4."

17. If you claim diminution of the property as a result of Chinese Drywall, state with particularity each fact which supports your claim.

I had a contract for sale of this property for $244,000 on the home; after Chinese drywall

was found in the home, the sale was canceled.  Since that time, I have not been able to sell.

Those that have looked at it, have offered substantially less than I owe and substantially

lower than the listing price.

18. Identify the appliances, fixtures and/or other electronics, if any, that you claim were damaged by Chinese Drywall in the property.

> **Response**: An list of damaged items is attached as "Exhibit 14."

19. If you vacated the property because of the alleged presence of Chinese Drywall, please provide: Address of each location you stayed thereafter.

a. 18690 SW 291st Street, Homestead, FL  33030

b. _____

c. _____

20. If you vacated the property because of the alleged presence of Chinese Drywall, please provide: Time periods in which you resided at each property.

a. _05_ / _25_ /20_18_  to  ____/____/20_ present

b. ____/____/20____  to  ____/____/20____

c. ____/____/20____  to  ____/____/20____

21. If you vacated the property because of the alleged presence of Chinese Drywall, please provide: Moving costs and/or alternative living expenses you claim to have incurred as a result of the alleged presence of Chinese Drywall.

a. $ 580.00 moving

b. $ 27,600.00 alternative living expenses incurred to date.

c. $ 3,450 /month for each additional month out of the home.

**PFS REQUEST FOR DOCUMENT PRODUCTION #5**:  If you vacated the property because of the alleged presence of Chinese Drywall, please provide any documentation to support your claims.

> **Response:**  All documents in Plaintiff's possession responsive to this request are attached as "Exhibit 5."

22.  Are you claiming damages for personal injury? ☐ Yes (explain below) ☑ No

_____

_____

23.  If you suffered personal injuries as a result of the alleged presence of Chinese Drywall: Date you allege that you first sustained personal injuries as a result of your exposure to allegedly defective Chinese Drywall.

   **Response:**   ☑ N/A

24.  If you suffered personal injuries as a result of the alleged presence of Chinese Drywall: What specific injuries have you suffered?

   **Response:**   ☑ N/A

25.  If you suffered personal injuries as a result of the alleged presence of Chinese Drywall: Name and address of any doctor, physician, surgeon, chiropractor, or osteopath who examined and/or treated your alleged injuries.

   **Response:**   ☑ N/A

## VI.  Potential Witnesses/Evidence

26.  Has any written or recorded statement been taken from any witness or person who has knowledge of relevant facts, including the nature, character, and extent of the injuries referred to in the petition, and for each statement identified?

   ☐ Yes   ☑ No   ☐ I don't know

27.  If the answer to 26 is "yes," please state:  The name, address, and telephone number of the person from whom the statement was taken.

N/A _____

_____

6

28.  If the answer to 26 is "yes," please state:  The name, address, and telephone number of the person who took the statement.

N/A

29.  If the answer to 26 is "yes," please state:  The name address, and telephone number of the party having custody of such statement.

N/A

30.  If the answer to 26 is "yes," please state:  The date the statement was taken.

N/A

## VII.  Already Remediated Properties

31.  If you already remediated the Property, who conducted the remediation?

      **Response:**   [ ✓ ] N/A

32.  When did the remediation commencement date occur?

      **Response:**   [ ✓ ] N/A

33.  When did the remediation end date occur?

      **Response:**   [ ✓ ] N/A

34.  What was the scope of the remediation and the scope of the work carried out?

      **Response:**   [ ✓ ] N/A

35.  What costs or expenses, if any, did you incur related to the remediation of the Property?

      **Response:**   [ ✓ ] N/A

36. Were any samples from the remediation retained?

   **Response:**   ☑ N/A

37. If the response to 36 is "yes," were the samples compliant with PTO 1(B)?

   **Response:**   ☑ N/A

38. Were any photographs taken of the allegedly defective Chinese Drywall?

   **Response:**   ☑ N/A

39. If the response to 38 is "yes," were the photographs compliant with PTO 1(B)?

   **Response:**   ☑ N/A

**PFS REQUEST FOR DOCUMENT PRODUCTION #6:** Please produce the following documentation concerning the remediation of the Property: Any evidence of KPT Chinese Drywall and Non-KPT Chinese Drywall, if any, in the Property prior to remediation.

   **Response:** All documents in Plaintiff's possession responsive to this request are attached as "Exhibit 6."

**PFS REQUEST FOR DOCUMENT PRODUCTION #7:** Please produce the following documentation concerning the remediation of the Property: Interior photographs of the Affected Property immediately prior to the commencement of, and following completion of, the remediation, including photographs and/or video images of the flooring and major components such as cabinets, moldings, doors, intercom systems, and fixtures for every room and bathroom and, to the extent possible, security systems, appliances and audio such as surround sound.

** The photographs do not need to be pictures taken specifically for the litigation. For example, family photographs or photographs taken for purposes of refinancing a mortgage are acceptable in the absence of other photographs.

   **Response:** All documents in Plaintiff's possession responsive to this request are attached as "Exhibit 7."

**PFS REQUEST FOR DOCUMENT PRODUCTION #8:** Please produce the following documentation concerning the remediation of the Property: The remediation contract and an itemization from the contractor who performed the remediation work of the materials used during the remediation, including, but not limited to, manufacturer, model number, and quantity.

> **Response**: All documents in Plaintiff's possession responsive to this request are attached as "Exhibit 8."

**PFS REQUEST FOR DOCUMENT PRODUCTION #9**:  Please produce the following documentation concerning the remediation of the Property:  An itemized invoice from the contractor who performed the remediation work ("Itemized Invoice") showing the scope of work carried out.

> **Response**: All documents in Plaintiff's possession responsive to this request are attached as "Exhibit 9."

**PFS REQUEST FOR DOCUMENT PRODUCTION #10**:  Please produce the following documentation concerning the remediation of the Property:  Proof of payment of the Itemized Invoice and any other expenses, such as cancelled checks, credit card statements, etc.

> **Response**: All documents in Plaintiff's possession responsive to this request are attached as "Exhibit 10."

**PFS REQUEST FOR DOCUMENT PRODUCTION #11**:  Please produce the following documentation concerning the remediation of the Property:  A floor plan of the Affected Property with dimensions.

> **Response**: All documents in Plaintiff's possession responsive to this request are attached as "Exhibit 11."

**PFS REQUEST FOR DOCUMENT PRODUCTION #12**:  Please produce the following documentation concerning the remediation of the Property:  An Environmental Certificate.

> **Response**: All documents in Plaintiff's possession responsive to this request are attached as "Exhibit 12."

**PFS REQUEST FOR DOCUMENT PRODUCTION #13**:  Please produce the following documentation concerning the remediation of the Property:  An Owner Disclosure Affidavit in the form attached as Exhibit 1, which includes a certification that the materials provided comprise all of the available documentation regarding the following:  The drywall that was in the Affected Property prior to the commencement of the remediation; and, the scope, extent, and cost of the remediation.

> **Response**: All documents in Plaintiff's possession responsive to this request are attached as "Exhibit 13."

**VERIFICATION**

I hereby verify that the responses to the Plaintiff Fact Sheet are correct to the best of my knowledge.

_____          01/03/2019_____

Signature of Plaintiff                                                      Date

Karina Martinez _____
Printed Name

# Exhibit 1

095-3798850
File No. 04160143

## APPRAISAL OF



## LOCATED AT:

23631 SW 112th Ct
Homestead, FL 33032-7137

## FOR:

PARAMOUNT RESIDENTIAL MORTGAGE GROUP
1265 CORONA POINT CT
CORONA, CA 92879

## BORROWER:

KARINA MARTINEZ

## AS OF:

May 4, 2016

## BY:

PAVEL URBINA



095-3796850
File No. 04160143

PARAMOUNT RESIDENTIAL MORTGAGE GROUP
1265 CORONA POINT CT
CORONA, CA. 92879

File Number:   04160143

In accordance with your request, I have appraised the real property at:

23631 SW 112th Ct
Homestead, FL 33032-7137

The purpose of this appraisal is to develop an opinion of the market value of the subject property, as improved.
The property rights appraised are the fee simple interest in the site and improvements.

In my opinion, the market value of the property as of   May 4, 2016                          is:

$217,000
Two Hundred Seventeen Thousand Dollars

The attached report contains the description, analysis and supportive data for the conclusions,
final opinion of value, descriptive photographs, limiting conditions and appropriate certifications.

PAVEL URBINA

095-3798850

# Uniform Residential Appraisal Report
File No. 04160143

The purpose of this summary appraisal report is to provide the lender/client with an accurate, and adequately supported, opinion of the market value of the subject property.

| | | |
|---|---|---|
| Property Address 23631 SW 112th Ct | City Homestead | State FL   Zip Code 33032-7137 |
| Borrower KARINA MARTINEZ | Owner of Public Record GRAPHICS & MORE EXPORTS LLC | County MIAMI-DADE |

Legal Description SILVER PALM EAST SECTION TWO PB 164-87 T-21739 LOT 4 BLK 51

| | | |
|---|---|---|
| Assessor's Parcel # 30-6019-013-3150 | Tax Year 2015 | R.E. Taxes $ 4,326 |
| Neighborhood Name SILVER PALM | Map Reference 56-40-19 | Census Tract 105.0046 |

| Occupant | Owner | Tenant | [x] Vacant | Special Assessments $ 0 | | | [x] PUD | HOA $ 153 | per year [x] per month |
|---|---|---|---|---|---|---|---|---|---|

| Property Rights Appraised | [x] Fee Simple | Leasehold | Other (describe) |
|---|---|---|---|

| Assignment Type | [x] Purchase Transaction | Refinance Transaction | Other (describe) |
|---|---|---|---|

| Lender/Client PARAMOUNT RESIDENTIAL MORTGAGE GROUP | Address 1265 CORONA POINT CT, CORONA, CA 92879 |
|---|---|

Is the subject property currently offered for sale or has it been offered for sale in the twelve months prior to the effective date of this appraisal?   [x] Yes   No

Report data source(s) used, offering price(s), and date(s).  DOM 39;SEFMLS#A10052671, LISTED ON 03/21/2016 AT $217,000; REDUCED ON 03/30/2016 TO $217,000; PENDING SALE ON 04/18/2016

I [x] did [ ] did not analyze the contract for sale for the subject purchase transaction. Explain the results of the analysis of the contract for sale or why the analysis was not performed.
Arms length sale CONTRACT HAS BEEN REVIEWED AND THE PURCHASE AGREEMENT APPEARS TO BE AN ARM'S LENGTH TRANSACTION WITH THE TERMS OF THE CONTRACT DEEMED
NORMAL HAVING NO POSITIVE/NEGATIVE EFFECT.

| Contract Price $ 217,000 | Date of Contract 04/21/2016 | Is the property seller the owner of public record?   [x] Yes   No | Data Source(s) ROST/MIAMIDADE GOV |
|---|---|---|---|

Is there any financial assistance (loan charges, sale concessions, gift or downpayment assistance, etc.) to be paid by any party on behalf of the borrower?   Yes [x] No
If Yes, report the total dollar amount and describe the items to be paid.   $0; No financial assistance provided.

Note: Race and the racial composition of the neighborhood are not appraisal factors.

| Neighborhood Characteristics | | | One-Unit Housing Trends | | | One-Unit Housing | | Present Land Use % | |
|---|---|---|---|---|---|---|---|---|---|
| Location | Urban | [x] Suburban | Rural | Property Values | Increasing | [x] Stable | Declining | PRICE | AGE | One-Unit | 90 % |
| Built-Up | [x] Over 75% | 25-75% | Under 25% | Demand/Supply | Shortage | [x] In Balance | Over Supply | $(000) | (yrs) | 2-4 Unit | % |
| Growth | Rapid | [x] Stable | Slow | Marketing Time | Under 3 mths | [x] 3-6 mths | Over 6 mths | 107 Low | 1 | Multi-Family | 5 % |

Neighborhood Boundaries NORTH OF SW 248TH STREET, SOUTH OF SW 216TH STREET, EAST OF S DIXIE HWY, AND WEST OF | 239 High | 11 | Commercial | 5 %
FLORIDA'S TURNPIKE. | 190 Pred. | 5 | Other | %

Neighborhood Description THE SUBJECT PROPERTY IS LOCATED IN AN ESTABLISHED RESIDENTIAL NEIGHBORHOOD, WITHIN REASONABLE DISTANCE TO ALL AREA AMENITIES AND
WITH ADEQUATE ACCESS TO MAJOR ARTERIES OF TRANSPORTATION AND PLACES OF EMPLOYMENT.

Market Conditions (including support for the above conclusions)  FINANCING IS READILY AVAILABLE FROM A VARIETY OF SOURCES AT "LOW / FAVORABLE" RATES.  MARKET VALUES FOR
SIMILAR TYPE PROPERTIES LIKE THE SUBJECT ARE STARTING TO BECOME RELATIVELY STABLE TO INCREASING PARTICULARLY DUE TO DEMAND & SUPPLY BEGINNING TO BALANCE
OUT. PROPERTIES PROPERLY PRICED / MARKETED  TO A COMPETITIVE OFFERING PRICE ARE SELLING BETWEEN 3 TO 6 MONTHS  CASH TRANSACTIONS ARE COMMON

| Dimensions 76 X 24 | Area 1896 sf | Shape RECTANGULAR | View N Res; |
|---|---|---|---|

| Specific Zoning Classification RU-TH | Zoning Description TOWNHOUSE |
|---|---|

| Zoning Compliance | [x] Legal | Legal Nonconforming (Grandfathered Use) | No Zoning | Illegal (describe) |
|---|---|---|---|---|

Is the highest and best use of the subject property as improved (or as proposed per plans and specifications) the present use?   [x] Yes   No   If No, describe.

| Utilities | Public | Other (describe) | | Public | Other (describe) | Off-site Improvements—Type | Public | Private |
|---|---|---|---|---|---|---|---|---|
| Electricity | [x] | FPL | Water | [x] | MUNICIPAL | Street PAVED ASPHALT | [x] | |
| Gas | | NONE | Sanitary Sewer | [x] | MUNICIPAL | Alley NONE | | |

| FEMA Special Flood Hazard Area | [x] Yes | No | FEMA Flood Zone AE | FEMA Map # 12086C0611L | FEMA Map Date 09/11/2009 |
|---|---|---|---|---|---|

Are the utilities and off-site improvements typical for the market area?   [x] Yes   No   If No, describe.
Are there any adverse site conditions or external factors (easements, encroachments, environmental conditions, land uses, etc.)?   Yes [x] No   If Yes, describe  THE APPRAISER
WAS NOT PROVIDED WITH A RECENT SURVEY OF THE SUBJECT PROPERTY. INFORMATION REGARDING THE LOT SIZE WAS OBTAINED FROM THE MIAMI DADE COUNTY TAX ROLL. IT IS
ASSUMED THAT THERE WERE NO ADVERSE EASEMENTS AND/OR ENCROACHMENTS.

| GENERAL DESCRIPTION | | FOUNDATION | | EXTERIOR DESCRIPTION | materials/condition | INTERIOR | materials/condition |
|---|---|---|---|---|---|---|---|
| Units | [x] One | One with Accessory Unit | [x] Concrete Slab | Crawl Space | Foundation Walls | CBS/AVERAGE | Floors | TILE/CARPET/AVG |
| # of Stories | 2 | | Full Basement | Partial Basement | Exterior Walls | CBS/AVERAGE | Walls | DRYWALL/AVERAGE |
| Type | Det. | [x] Att. | S-Det./End Unit | Basement Area | 0 sq. ft. | Roof Surface | TILE/AVERAGE | Trim/Finish | WOOD/AVERAGE |
| [x] Existing | Proposed | Under Const. | Basement Finish | 0 % | Gutters & Downspouts YES | | Bath Floor | TILE/AVERAGE |
| Design (Style) TOWNHOUSE | | Outside Entry/Exit | Sump Pump | Window Type | SINGLE HUNG/AVERAGE | Bath Wainscot | TILE/AVERAGE |
| Year Built 2006 | | Evidence of | Infestation | Storm Sash/Insulated | ACCORDION SHUTTERS | Car Storage | None |
| Effective Age (Yrs) 04 | | Dampness | Settlement | Screens | NO | [x] Driveway | # of Cars 2 |
| Attic | None | Heating [x] FWA | HWBB | Radiant | Amenities | | WoodStove(s) #0 | Driveway Surface BRICK PAVERS |
| Drop Stair | Stairs | Other | Fuel ELECTRIC | Fireplace(s) # 0 | [x] Fence WOOD | [x] Garage | # of Cars 1 |
| Floor | [x] Scuttle | Cooling | [x] Central Air Conditioning | [x] Patio/Deck OPEN | [x] Porch COV. ENTRY | Carport | # of Cars 0 |
| Finished | Heated | Individual | Other | Pool NONE | Other NONE | Att. | Det. | [x] Built-in |

| Appliances | [x] Refrigerator | [x] Range/Oven | [x] Dishwasher | [x] Disposal | [x] Microwave | [x] Washer/Dryer | Other (describe) |
|---|---|---|---|---|---|---|---|

Finished area above grade contains:   7 Rooms   3 Bedrooms   2.1 Bath(s)   1,538 Square Feet of Gross Living Area Above Grade
Additional features (special energy efficient items, etc.).  NO SPECIAL ENERGY EFFICENT ITEMS NOTED

Describe the condition of the property (including needed repairs, deterioration, renovations, remodeling, etc.).   C3 No updates in the prior 15 years, THE SUBJECT IS IN AVERAGE CONDITION
OVERALL HAVING BEEN UPDATED AND ADEQUATELY MAINTAINED  UTILITIES-ELECTRICITY TURNED ON. WATER  OFF.

Are there any physical deficiencies or adverse conditions that affect the livability, soundness, or structural integrity of the property?   Yes [x] No   If Yes, describe.  WHILE NO
PHYSICAL DEFICIENCIES OR ADVERSE CONDITIONS THAT AFFECT LIVABILITY, SOUNDNESS OR STRUCTURAL INTEGRITY WERE NOTED, SUCH ITEMS ARE GENERALLY BEYOND THE
EXPERTISE OF THE APPRAISER  ISSUES OF SOUNDNESS AND STRUCTURAL INTEGRITY ARE OFTEN RELATED TO AREAS THAT ARE HIDDEN FROM THE APPRAISER'S VIEW.
TO VERIFY  A QUALIFIED INSPECTOR AND/OR ENGINEER WOULD NEED TO BE RETAINED

Does the property generally conform to the neighborhood (functional utility, style, condition, use, construction, etc.)?   [x] Yes   No   If No, describe.

095-3798850

# Uniform Residential Appraisal Report
File No. 04160143

| | | | |
|---|---|---|---|
| There are 1 comparable properties currently offered for sale in the subject neighborhood ranging in price from $ 220,000 to $ 220,000 | | | |
| There are 4 comparable sales in the subject neighborhood within the past twelve months ranging in sale price from $ 215,000 to $ 227,000 | | | |

| FEATURE | SUBJECT | COMPARABLE SALE NO. 1 | COMPARABLE SALE NO. 2 | COMPARABLE SALE NO. 3 |
|---|---|---|---|---|
| Address | 23631 SW 112th Ct<br>Homestead, FL 33032-7137 | 23400 SW 113th Ave<br>Homestead, FL 33032-7148 | 11321 SW 236th Ln<br>Homestead, FL 33032-6249 | 23945 SW 113th Pass<br>Homestead, FL 33032-3152 |
| Proximity to Subject | | 0.28 miles NW | 0.14 miles SW | 0.28 miles SW |
| Sale Price | $ 217,000 | $ 215,000 | $ 227,000 | $ 215,000 |
| Sale Price/Gross Liv. Area | $ 132.64 Sq. ft. | $ 129.83 Sq. ft. | $ 116.65 Sq. ft. | $ 129.67 Sq. ft. |
| Data Source(s) | | SEFMLS #A10047949;DOM 70 | SEFMLS #A2211797,DOM 137 | SEFMLS #A10041061;DOM 47 |
| Verification Source(s) | | MIAMIDADE.GOV/WARRANTY DEED | MIAMIDADE.GOV/WARRANTY DEED | MIAMIDADE.GOV/WARRANTY DEED |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION +(-) $ Adjustment | DESCRIPTION +(-) $ Adjustment | DESCRIPTION +(-) $ Adjustment |
| Sale or Financing | | ArmLth | ArmLth | ArmLth |
| Concessions | | FHA,0 | FHA,0 | Cash;0 |
| Date of Sale/Time | | s04/16,c03/16 | s04/16,c03/16 | s04/16,c03/16 |
| Location | N.Res; | N;Res; | N.Res; | N.Res. |
| Leasehold/Fee Simple | FEE SIMPLE | FEE SIMPLE | FEE SIMPLE | FEE SIMPLE |
| Site | 1896 sf | 1916 sf | 0 | 2571 sf | 0 | 2543 sf | 0 |
| View | N.Res; | N;Res; | N.Res; | N;Res; |
| Design (Style) | AT2,TOWNHOUSE | AT2;TOWNHOUSE | AT2;TOWNHOUSE | AT2;TOWNHOUSE |
| Quality of Construction | Q4 | Q4 | Q4 | Q4 |
| Actual Age | 10 | 5 | 0 | 10 | 6 | 0 |
| Condition | C3 | C3 | C3 | C3 |
| Above Grade | Total 3 Bdrms. Baths 2 1 | Total 7 Bdrms 3 Baths 2 0 | 2,500 | Total 8 Bdrms 4 Baths 3 0 | -2,500 | Total 7 Bdrms 3 Baths 2 1 | 0 |
| Room Count | 7 3 2.1 | 7 3 2.0 | | 8 4 3.0 | | 7 3 2.1 | |
| Gross Living Area | 1,636 Sq. ft. | 1,656 Sq. ft. | 0 | 1,946 Sq. ft. | -9,000 | 1,658 Sq. ft. | 0 |
| Basement & Finished | 0sf | 0sf | 0sf | 0sf |
| Rooms Below Grade | | | | |
| Functional Utility | AVERAGE/TYPICAL | AVERAGE/TYPICAL | AVERAGE/TYPICAL | AVERAGE/TYPICAL |
| Heating/Cooling | FWA/CENTRAL | FWA/CENTRAL | FWA/CENTRAL | FWA/CENTRAL |
| Energy Efficient Items | NONE | NONE | NONE | NONE |
| Garage/Carport | 1gb2dw | 1gb2dw | 1gb2dw | 1gb2dw |
| Porch/Patio/Deck | PORCH/PATIO | PORCH/PATIO | PORCH/PATIO | PORCH/PATIO |
| | | | | |
| | | | | |
| Net Adjustment (Total) | | [x] + [ ] - $ 2,500 | [ ] + [x] - $ 11,500 | [x] + [ ] - $ 0 |
| Adjusted Sale Price | | Net Adj. 1.2% | Net Adj. -5.1% | Net Adj. 0.0% |
| of Comparables | | Gross Adj. 1.2% $ 217,500 | Gross Adj. 5.1% $ 215,500 | Gross Adj. 0.0% $ 215,000 |

I [x] did [ ] did not research the sale or transfer history of the subject property and comparable sales. If not, explain

My research [x] did [ ] did not reveal any prior sales or transfers of the subject property for the three years prior to the effective date of this appraisal.

Data source(s) REALQUEST/MIAMIDADE.GOV/SEFMLS

My research [ ] did [x] did not reveal any prior sales or transfers of the comparable sales for the year prior to the date of sale of the comparable sale.

Data source(s) REALQUEST/MIAMIDADE.GOV/SEFMLS

Report the results of the research and analysis of the prior sale or transfer history of the subject property and comparable sales (report additional prior sales on page 3).

| ITEM | SUBJECT | COMPARABLE SALE NO. 1 | COMPARABLE SALE NO. 2 | COMPARABLE SALE NO. 3 |
|---|---|---|---|---|
| Date of Prior Sale/Transfer | 12/28/2015 | | | |
| Price of Prior Sale/Transfer | $149,000 | | | |
| Data Source(s) | RLQST/MIAMIDADE.GOV/SEFMLS#6 | RLQST/MIAMIDADE.GOV/SEFMLS#6 | RLQST/MIAMIDADE.GOV/SEFMLS#6 | RLQST/MIAMIDADE.GOV/SEFMLS#6 |
| Effective Date of Data Source(s) | 05/04/2016 | 05/04/2016 | 05/04/2016 | 05/04/2016 |

Analysis of prior sale or transfer history of the subject property and comparable sales   THE SUBJECT'S MARKET PLACE/AREA HAS BECOME RELATIVELY STABLE TO INCREASING

PARTICULARLY DUE TO DEMAND & SUPPLY BEGINNING TO BALANCE  OUT. SUBJECT PRIOR SALE IS AN REO SEFMLS#A2199213. COMPARABLE #5 PRIOR SALE IS NOT LISTED APPEARS

THAT SALE IS A NEW CONSTRUCTION PURCHASE. COMPARABLE #6 PRIOR TRANSFER IS A QCD

Summary of Sales Comparison Approach.   THE COMPARABLES PRESENTED ARE LOCATED IN THE SUBJECT'S MARKET PLACE/AREA AND ARE CONSIDERED GOOD INDICATORS OF

MARKET VALUE REFLECTING THE ACTIONS OF BUYERS AND SELLERS. THE "COMPARABLES" ADJUSTED MARKET VALUE RANGE BRACKETS BETWEEN $215,000 AND $218,000 STRONGLY

SUPPORTING THE SUBJECT'S FINAL OPINION OF MARKET VALUE. WEIGHT IS BEING PLACED TOWARDS THE MID-RANGE OF THE ADJUSTED VALUES EVERY EFFORT HAS BEEN MADE TO

USE COMPARABLES WITH DATES OF SALE NO MORE THAN THREE MONTHS OLD IN ORDER TO PROVIDE THE MOST UPDATED INFORMATION. AT TIMES WE MAY BE LED TO DEVIATE FROM

THE ABOVE GUIDELINE AND SUBMIT COMPARABLE SALES WHICH, IN THE OPINION OF THE APPRAISER, ARE GOOD INDICATORS OF PROBABLE MARKET VALUE AND AS SUCH RENDER

ADDITIONAL SUPPORT TO THE VALUE DETERMINATION MADE ON THE APPRAISAL REPORT. ONE ADDITIONAL COMPARABLE, ONE PENDING SALE AND ONE ACTIVE LISTING ARE

PRESENTED TO SUPPORT THE SUBJECT'S OPINION OF MARKET VALUE. SEE ADDITIONAL COMMENTS, NOTES TO READER.

Indicated Value by Sales Comparison Approach $ 217,000

Indicated Value by: Sales Comparison Approach $217,000     Cost Approach (if developed) $ 217,100     Income Approach (if developed) $ 0

ALTHOUGH ALL THREE APPROACHES TO VALUE HAVE BEEN CONSIDERED, MOST RELIANCE IS PLACED ON SALES COMPARISON APPROACH - WHICH BEST ILLUSTRATES CURRENT

MARKET TRENDS AND THE INTENTIONS OF BUYERS/SELLERS  THE COST APPROACH IS CONSIDERED UNRELIABLE AND NOT ADEQUATE IN DETERMINING MARKET VALUE DUE TO

LIMITED LAND SALES, SUBJECTIVE DEPRECIATION CALCULATIONS, AND/OR REPLACEMENTS COSTS FAR EXCEEDING COMPARABLE SALES. THE INCOME APPROACH DOES NOT APPLY.

This appraisal is made [ ] "as is", [ ] subject to completion per plans and specifications on the basis of a hypothetical condition that the improvements have been completed,

[x] subject to the following repairs or alterations on the basis of a hypothetical condition that the repairs or alterations have been completed, or [ ] subject to the following required

inspection based on the extraordinary assumption that the condition or deficiency does not require alteration or repair:   WATER TO BE TURNED ON

Based on a complete visual inspection of the interior and exterior areas of the subject property, defined scope of work, statement of assumptions and limiting

conditions, and appraiser's certification, my (our) opinion of the market value, as defined, of the real property that is the subject of this report is $ 217,000

as of  05/04/2016 , which is the date of inspection and the effective date of this appraisal.

| | | | |
|---|---|---|---|
| Freddie Mac Form 70 March 2005 | UAD Version 9/2011 | Produced using ACI software, 800 234 8727 www.aciweb.com<br>Page 2 of 6 | Fannie Mae Form 1004 March 2005<br>1004_05UAD 12182015 |

Florida Appraisal Services, Inc

095-3798850

# Uniform Residential Appraisal Report

File No. 04160143

ALTHOUGH, THE OVERALL MARKET TREND WITHIN THE MUNICIPALITY EXPERIENCED A DECLINE IN PROPERTY VALUES, SEVERAL ANALYSIS INDICATE THAT RESIDENCES "LIKE THE
SUBJECT" IN THE IMMEDIATE MARKET PLACE / AREA HAVE BEGUN TO EXPERIENCE RELATIVELY STABLE PROPERTY VALUES. THIS INFORMATION IS BASED ON THE APPRAISER'S OWN
KNOWLEDGE OF THE AREA, AND EXTENSIVE RESEARCH OF ALL AVAILABLE MARKET DATA (SALES, LISTINGS, PENDING SALES, ETC.), CURRENT MEDIA OUTLETS (NEWSPAPER, RADIO,
TV, ETC) PROMINENT REALTORS WITHIN THE AREA HAVE ALSO CONFIRMED THAT VALUES HAVE NOT ONLY BEEN RELATIVELY STABLE, BUT, INCREASING. THIS IS A DIRECT RESULT OF
SUPPLY AND DEMAND BEGINNING TO BALANCE OUT, AS WELL AS THE SUBJECT'S MARKET AREA BEING KNOWN FOR ITS GOOD HOUSING DEMAND.

THE INTENDED USER OF THIS APPRAISAL REPORT IS THE LENDER/CLIENT. THE INTENDED USE IS TO EVALUATE THE PROPERTY THAT IS THE SUBJECT OF THIS APPRAISAL FOR A
MORTGAGE FINANCE TRANSACTION, SUBJECT TO THE STATED SCOPE OF WORK, PURPOSE OF THE APPRAISAL, REPORTING REQUIREMENTS OF THIS APPRAISAL REPORT FORM, AND
DEFINITION OF MARKET VALUE. NO ADDITIONAL INTENDED USERS ARE IDENTIFIED BY THE APPRAISER.

THE SUBJECT, AS IMPROVED, HAS A LEGALLY PERMISSIBLE USE BASED ON ITS CURRENT ZONING. ALSO, THE LOT SIZE, SHAPE, PHYSICAL CONDITION, AND LAND TO BUILDING RATIO
ALLOW THE CURRENT STRUCTURE AND INDICATE GOOD UTILIZATION OF THE IMPROVEMENTS. BASED ON CURRENT MARKET CONDITIONS, THE PRESENT USE AND STRUCTURE AS A
SINGLE FAMILY RESIDENCE IS ITS FINANCIALLY FEASIBLE AND MAXIMALLY PRODUCTIVE USE.

THE SUBJECT'S MARKET AREA CONSISTS OF A WIDE RANGE OF PROPERTY TYPES, VARYING IN DESIGN, SIZE, QUALITY, CONDITION AND PRICE. THE RANGE OF PROPERTY VALUES IS
TYPICAL OF THE AREA AND MARKETABILITY ON ALL THE VALUE RANGES IS AVERAGE. THEREFORE ANY DEVIATION FROM THE PREDOMINANT VALUE SHOULD HAVE NO EFFECT ON
MARKETABILITY AND/OR MARKET VALUE

THE FACT THAT THE LAND TO VALUE RATIO EXCEEDS THE TYPICAL ONE THIRD FNMA GUIDELINE DOES NOT AFFECT THE MARKETABILITY AND/OR MARKET VALUE OF THE SUBJECT
PROPERTY. THIS IS DUE TO THE DESIRABILITY OF THE NEIGHBORHOOD AND ITS LOCATION. TYPICALLY, AS IMPROVEMENTS TO VALUE RATIOS DECREASE, THE LAND TO VALUE RATIO
INCREASES, MAINLY DUE TO DEMAND AND THE THE SCARCITY OF AVAILABLE VACANT LAND. THE LAND TO VALUE RATIO IS TYPICAL TO THE SUBJECT'S MARKET.

A PARCEL'S HIGHEST VALUE IS THE AREA WHERE THE IMPROVEMENT IS BUILT IN ADDITION TO ANY SETBACKS. ANY LAND BEYOND THOSE BOUNDARIES IS CONSIDERED TO BE EXCESS
LAND UNLESS THE ZONING REGULATIONS PERMIT ITS USE WITH THE IMPROVEMENTS THAT WOULD RENDER SOME TYPE OF ECONOMIC RETURN. THEREFORE, IN COMPUTING LAND
VALUES, EXCESS LAND IS PLACED AT THE LOWER END OF THE VALUE RANGE THEREBY MAKING ANY ADJUSTMENT OF VALUE DETERMINATION MORE SUBJECTED TO THE LAND'S
CONTRIBUTORY VALUE THAN TO THE ACTUAL DOLLAR AMOUNT BASED ON SIZE. WITH THAT IN MIND, THERE MAY BE INSTANCES WHERE A LAND ADJUSTMENT BECOMES IRRELEVANT
SIMPLY BECAUSE ALL THE INDICATORS ON THE MARKET DATA AVAILABLE WOULD NOT SUPPORT SUCH AN ADJUSTMENT.

THE SUBJECT PROPERTY WILL MEET FHA GUIDELINES REQUIREMENTS ONCE WATER IS TURNED ON

## COST APPROACH TO VALUE (not required by Fannie Mae)

Provide adequate information for the lender/client to replicate the below cost figures and calculations.

Support for the opinion of site value (summary of comparable land sales or other methods for estimating site value)     THE SUBJECT'S IMMEDIATE NEIGHBORHOOD, AS WELL AS ITS
GENERAL MARKET AREA, IS HIGHLY DEVELOPED - PRIMARILY WITH SINGLE FAMILY RESIDENCES - WITH FEW VACANT LAND SALES AVAILABLE FOR CONSIDERATION. THE OPINION OF
SITE VALUE HAS THEREFORE BEEN DERIVED THROUGH THE EXTRACTION METHOD OF SIMILAR SIZED PARCELS WITH SOME CONSIDERATION GIVEN TO ACTIVE LISTINGS OF VACANT
PARCELS, ALBEIT LARGER LOTS, CURRENTLY AVAILABLE FOR SALE ON THE LOCAL MLS.

| ESTIMATED ☐ REPRODUCTION OR ☒ REPLACEMENT COST NEW | OPINION OF SITE VALUE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . = $ | 20,000 |
|---|---|---|
| Source of cost data MARSHALL & SWIFT RESIDENTIAL COST HANDBOOK | Dwelling          1,636 Sq. Ft. @ $          120.00. . . . . . . . . . . . = $ | 196,320 |
| Quality rating from cost service  AVERAGE      Effective date of cost data  03/2015 | Sq. Ft. @ $          . . . . . . . . . . . . . = $ | |
| Comments on Cost Approach (gross living area calculations, depreciation, etc.) | | |
| Cost approach is based on Marshall & Swift Residential Cost Handbook valuation tables and other | Garage/Carport  232          Sq. Ft. @ $          50.00. . . . . . . . . . × $ | 11,600 |
| costs known to the appraiser (prior experience, local estimates from area contractors). The | Total Estimate of Cost-New      . . . . . . . . . . . . . = $ | 207,920 |
| approach is applicable to an appraisal report of new construction, but is not necessary to produce a | Less    60    Physical    Functional    External | |
| credible opinion of market value as an active market of competing properties exists. Although not | Depreciation    $13,861 | = $ (    13,861) |
| considered to be indicative of the subject's current market value, but is being developed as a | Depreciated Cost of Improvements . . . . . . . . . . . . . . . . . . . . . . . = $ | 194,059 |
| supportive measure of value. | "As-is" Value of Site Improvements . . . . . . . . . . . . . . . . . . . . . . . = $ | 3,000 |
| Estimated Remaining Economic Life (HUD and VA only)          56 Years | INDICATED VALUE BY COST APPROACH . . . . . . . . . . . . . . . . . . = $ | 217,100 |

## INCOME APPROACH TO VALUE (not required by Fannie Mae)

| Estimated Monthly Market Rent $          0  X Gross Rent Multiplier          0  = $ | 0  Indicated Value by Income Approach |
|---|---|

Summary of Income Approach (including support for market rent and GRM)  0

## PROJECT INFORMATION FOR PUDs (if applicable)

Is the developer/builder in control of the Homeowners' Association (HOA)?    ☐ Yes  ☒ No    Unit type(s)    ☐ Detached    ☒ Attached
Provide the following information for PUDs ONLY if the developer/builder is in control of the HOA and the subject property is an attached dwelling unit.
Legal name of project
Total number of phases                    Total number of units                    Total number of units sold
Total number of units rented              Total number of units for sale           Data source(s)
Was the project created by the conversion of an existing building(s) into a PUD?  ☐ Yes  ☐ No    If Yes, date of conversion.
Does the project contain any multi-dwelling units?    ☐ Yes  ☐ No    Data source(s)
Are the units, common elements, and recreation facilities complete?    ☐ Yes  ☐ No    If No, describe the status of completion.

Are the common elements leased to or by the Homeowners' Association?    ☐ Yes  ☐ No    If Yes, describe the rental terms and options.

Describe common elements and recreational facilities.

095-3796850

## Uniform Residential Appraisal Report

File No. 04160143

This report form is designed to report an appraisal of a one-unit property or a one-unit property with an accessory unit; including a unit in a planned unit development (PUD). This report form is not designed to report an appraisal of a manufactured home or a unit in a condominium or cooperative project.

This appraisal report is subject to the following scope of work, intended use, intended user, definition of market value, statement of assumptions and limiting conditions, and certifications. Modifications, additions, or deletions to the intended use, intended user, definition of market value, or assumptions and limiting conditions are not permitted. The appraiser may expand the scope of work to include any additional research or analysis necessary based on the complexity of this appraisal assignment. Modifications or deletions to the certifications are not permitted. However, additional certifications that do not constitute material alterations to this appraisal report, such as those required by law or those related to the appraiser's continuing education or membership in an appraisal organization, are permitted.

**SCOPE OF WORK:** The scope of work for this appraisal is defined by the complexity of this appraisal assignment and the reporting requirements of this appraisal report form, including the following definition of market value, statement of assumptions and limiting conditions, and certifications. The appraiser must, at a minimum: (1) perform a complete visual inspection of the interior and exterior areas of the subject property, (2) inspect the neighborhood, (3) inspect each of the comparable sales from at least the street, (4) research, verify, and analyze data from reliable public and/or private sources, and (5) report his or her analysis, opinions, and conclusions in this appraisal report.

**INTENDED USE:** The intended use of this appraisal report is for the lender/client to evaluate the property that is the subject of this appraisal for a mortgage finance transaction.

**INTENDED USER:** The intended user of this appraisal report is the lender/client.

**DEFINITION OF MARKET VALUE:** The most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller, each acting prudently, knowledgeably and assuming the price is not affected by undue stimulus. Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby: (1) buyer and seller are typically motivated; (2) both parties are well informed or well advised, and each acting in what he or she considers his or her own best interest; (3) a reasonable time is allowed for exposure in the open market; (4) payment is made in terms of cash in U. S. dollars or in terms of financial arrangements comparable thereto; and (5) the price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions* granted by anyone associated with the sale.

*Adjustments to the comparables must be made for special or creative financing or sales concessions. No adjustments are necessary for those costs which are normally paid by sellers as a result of tradition or law in a market area; these costs are readily identifiable since the seller pays these costs in virtually all sales transactions. Special or creative financing adjustments can be made to the comparable property by comparisons to financing terms offered by a third party institutional lender that is not already involved in the property or transaction. Any adjustment should not be calculated on a mechanical dollar for dollar cost of the financing or concession but the dollar amount of any adjustment should approximate the market's reaction to the financing or concessions based on the appraiser's judgment.

**STATEMENT OF ASSUMPTIONS AND LIMITING CONDITIONS:** The appraiser's certification in this report is subject to the following assumptions and limiting conditions:

1. The appraiser will not be responsible for matters of a legal nature that affect either the property being appraised or the title to it, except for information that he or she became aware of during the research involved in performing this appraisal. The appraiser assumes that the title is good and marketable and will not render any opinions about the title.

2. The appraiser has provided a sketch in this appraisal report to show the approximate dimensions of the improvements. The sketch is included only to assist the reader in visualizing the property and understanding the appraiser's determination of its size.

3. The appraiser has examined the available flood maps that are provided by the Federal Emergency Management Agency (or other data sources) and has noted in this appraisal report whether any portion of the subject site is located in an identified Special Flood Hazard Area. Because the appraiser is not a surveyor, he or she makes no guarantees, express or implied, regarding this determination.

4. The appraiser will not give testimony or appear in court because he or she made an appraisal of the property in question, unless specific arrangements to do so have been made beforehand, or as otherwise required by law.

5. The appraiser has noted in this appraisal report any adverse conditions (such as needed repairs, deterioration, the presence of hazardous wastes, toxic substances, etc.) observed during the inspection of the subject property or that he or she became aware of during the research involved in performing this appraisal. Unless otherwise stated in this appraisal report, the appraiser has no knowledge of any hidden or unapparent physical deficiencies or adverse conditions of the property (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) that would make the property less valuable, and has assumed that there are no such conditions and makes no guarantees or warranties, express or implied. The appraiser will not be responsible for any such conditions that do exist or for any engineering or testing that might be required to discover whether such conditions exist. Because the appraiser is not an expert in the field of environmental hazards, this appraisal report must not be considered as an environmental assessment of the property.

6. The appraiser has based his or her appraisal report and valuation conclusion for an appraisal that is subject to satisfactory completion, repairs, or alterations on the assumption that the completion, repairs, or alterations of the subject property will be performed in a professional manner.

095-3798850

## Uniform Residential Appraisal Report

File No. 04160143

**APPRAISER'S CERTIFICATION:** The Appraiser certifies and agrees that:

1. I have, at a minimum, developed and reported this appraisal in accordance with the scope of work requirements stated in this appraisal report.

2. I performed a complete visual inspection of the interior and exterior areas of the subject property. I reported the condition of the improvements in factual, specific terms. I identified and reported the physical deficiencies that could affect the livability, soundness, or structural integrity of the property.

3. I performed this appraisal in accordance with the requirements of the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

4. I developed my opinion of the market value of the real property that is the subject of this report based on the sales comparison approach to value. I have adequate comparable market data to develop a reliable sales comparison approach for this appraisal assignment. I further certify that I considered the cost and income approaches to value but did not develop them, unless otherwise indicated in this report.

5. I researched, verified, analyzed, and reported on any current agreement for sale for the subject property, any offering for sale of the subject property in the twelve months prior to the effective date of this appraisal, and the prior sales of the subject property for a minimum of three years prior to the effective date of this appraisal, unless otherwise indicated in this report.

6. I researched, verified, analyzed, and reported on the prior sales of the comparable sales for a minimum of one year prior to the date of sale of the comparable sale, unless otherwise indicated in this report.

7. I selected and used comparable sales that are locationally, physically, and functionally the most similar to the subject property.

8. I have not used comparable sales that were the result of combining a land sale with the contract purchase price of a home that has been built or will be built on the land.

9. I have reported adjustments to the comparable sales that reflect the market's reaction to the differences between the subject property and the comparable sales.

10. I verified, from a disinterested source, all information in this report that was provided by parties who have a financial interest in the sale or financing of the subject property.

11. I have knowledge and experience in appraising this type of property in this market area.

12. I am aware of, and have access to, the necessary and appropriate public and private data sources, such as multiple listing services, tax assessment records, public land records and other such data sources for the area in which the property is located.

13. I obtained the information, estimates, and opinions furnished by other parties and expressed in this appraisal report from reliable sources that I believe to be true and correct.

14. I have taken into consideration the factors that have an impact on value with respect to the subject neighborhood, subject property, and the proximity of the subject property to adverse influences in the development of my opinion of market value. I have noted in this appraisal report any adverse conditions (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) observed during the inspection of the subject property or that I became aware of during the research involved in performing this appraisal. I have considered these adverse conditions in my analysis of the property value, and have reported on the effect of the conditions on the value and marketability of the subject property.

15. I have not knowingly withheld any significant information from this appraisal report and, to the best of my knowledge, all statements and information in this appraisal report are true and correct.

16. I stated in this appraisal report my own personal, unbiased, and professional analysis, opinions, and conclusions, which are subject only to the assumptions and limiting conditions in this appraisal report.

17. I have no present or prospective interest in the property that is the subject of this report, and I have no present or prospective personal interest or bias with respect to the participants in the transaction. I did not base, either partially or completely, my analysis and/or opinion of market value in this appraisal report on the race, color, religion, sex, age, marital status, handicap, familial status, or national origin of either the prospective owners or occupants of the subject property or of the present owners or occupants of the properties in the vicinity of the subject property or on any other basis prohibited by law.

18. My employment and/or compensation for performing this appraisal or any future or anticipated appraisals was not conditioned on any agreement or understanding, written or otherwise, that I would report (or present analysis supporting) a predetermined specific value, a predetermined minimum value, a range or direction in value, a value that favors the cause of any party, or the attainment of a specific result or occurrence of a specific subsequent event (such as approval of a pending mortgage loan application).

19. I personally prepared all conclusions and opinions about the real estate that were set forth in this appraisal report. If I relied on significant real property appraisal assistance from any individual or individuals in the performance of this appraisal or the preparation of this appraisal report, I have named such individual(s) and disclosed the specific tasks performed in this appraisal report. I certify that any individual so named is qualified to perform the tasks. I have not authorized anyone to make a change to any item in this appraisal report; therefore, any change made to this appraisal is unauthorized and I will take no responsibility for it.

20. I identified the lender/client in this appraisal report who is the individual, organization, or agent for the organization that ordered and will receive this appraisal report.

21. The lender/client may disclose or distribute this appraisal report to: the borrower; another lender at the request of the borrower; the mortgagee or its successors and assigns; mortgage insurers; government sponsored enterprises; other secondary market participants; data collection or reporting services; professional appraisal organizations; any department, agency, or instrumentality of the United States; and any state, the District of Columbia, or other jurisdictions; without having to obtain the appraiser's or supervisory appraiser's (if applicable) consent. Such consent must be obtained before this appraisal report may be disclosed or distributed to any other party (including, but not limited to, the public through advertising, public relations, news, sales, or other media).

095-3788850

## Uniform Residential Appraisal Report

File No. 04160143

22. I am aware that any disclosure or distribution of this appraisal report by me or the lender/client may be subject to certain laws and regulations. Further, I am also subject to the provisions of the Uniform Standards of Professional Appraisal Practice that pertain to disclosure or distribution by me.

23. The borrower, another lender at the request of the borrower, the mortgagee or its successors and assigns, mortgage insurers, government sponsored enterprises, and other secondary market participants may rely on this appraisal report as part of any mortgage finance transaction that involves any one or more of these parties.

24. If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

25. Any intentional or negligent misrepresentation(s) contained in this appraisal report may result in civil liability and/or criminal penalties including, but not limited to, fine or imprisonment or both under the provisions of Title 18, United States Code, Section 1001, et seq., or similar state laws.

**SUPERVISORY APPRAISER'S CERTIFICATION:** The Supervisory Appraiser certifies and agrees that:

1. I directly supervised the appraiser for this appraisal assignment, have read the appraisal report, and agree with the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

2. I accept full responsibility for the contents of this appraisal report including, but not limited to, the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

3. The appraiser identified in this appraisal report is either a sub-contractor or an employee of the supervisory appraiser (or the appraisal firm), is qualified to perform this appraisal, and is acceptable to perform this appraisal under the applicable state law.

4. This appraisal report complies with the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

5. If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

| APPRAISER | SUPERVISORY APPRAISER (ONLY IF REQUIRED) |
|---|---|
| Signature | Signature |
| Name PAVEL URENA | Name |
| Company Name FLORIDA APPRAISAL SERVICES, INC | Company Name |
| Company Address 8925 COLLINS AVENUE, 10-D | Company Address |
| SURFSIDE, FL 33154 | |
| Telephone Number 305-642-3288 | Telephone Number |
| Email Address FLAPP@BELLSOUTH.NET | Email Address |
| Date of Signature and Report 05/04/2016 | Date of Signature |
| Effective Date of Appraisal 05/04/2016 | State Certification # |
| State Certification # CERT.RES.RD5102 | or State License # |
| or State License # | State |
| or Other (describe) _____ State # _____ | Expiration Date of Certification or License |
| State FL | |
| Expiration Date of Certification or License 11/30/2016 | |

ADDRESS OF PROPERTY APPRAISED

23531 SW 112th Ct

Homestead, FL 33032-7137

APPRAISED VALUE OF SUBJECT PROPERTY $ 217,000

LENDER/CLIENT

Name PRMG-LENDER EXECUTED APPRAISAL MGMT SOFTWARE/NO AMC

Company Name PARAMOUNT RESIDENTIAL MORTGAGE GROUP

Company Address 1265 CORONA POINT CT

CORONA, CA 92879

Email Address

SUBJECT PROPERTY
☐ Did not inspect subject property
☐ Did inspect exterior of subject property from street
Date of Inspection
☐ Did inspect interior and exterior of subject property
Date of Inspection

COMPARABLE SALES
☐ Did not inspect exterior of comparable sales from street
☐ Did inspect exterior of comparable sales from street
Date of Inspection

Freddie Mac Form 70 March 2005    UAD Version 9/2011    Produced using ACI software, 800.234.8727 www.aciweb.com    Page 6 of 6    Fannie Mae Form 1004 March 2005    1004_05UAD 12182015

Florida Appraisal Services, Inc.

## Uniform Residential Appraisal Report

095-3798850
File No. 04160143

| FEATURE | SUBJECT | | COMPARABLE SALE NO. 4 | | COMPARABLE SALE NO. 5 | | COMPARABLE SALE NO. 6 | |
|---|---|---|---|---|---|---|---|---|
| | | | 23579 SW 113th Pass | | 23539 SW 113th Page | | 23460 SW 112th Ct | |
| Address Homestead, FL 33032-7137 | 23631 SW 112th Ct | | Homestead, FL 33032-7151 | | Homestead, FL 33032-8001 | | Homestead, FL 33032-7146 | |
| Proximity to Subject | | | 0.23 miles NW | | 0.25 miles NW | | 0.11 miles NW | |
| Sale Price | $ | 217,000 | | $ 215,000 | | $ 219,999 | | $ 220,000 |
| Sale Price/Gross Liv. Area | $ 132.64 sq. ft. | | $ 140.07 sq. ft. | | $ 132.85 sq. ft. | | $ 132.85 sq. ft. | |
| Data Source(s) | | | SEFMLS #A2163543;DOM 169 | | SEFMLS #A10057091 DOM 15 | | SEFMLS #A10038057;DOM 72 | |
| Verification Source(s) | | | MIAMIDADE.GOV/WARRANTY DEED | | MIAMIDADE.GOV/WARRANTY DEED | | MIAMIDADE.GOV/WARRANTY DEED | |
| VALUE ADJUSTMENTS | DESCRIPTION | | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment |
| Sale or Financing | | | ArmLth | | Listing | | Listing | |
| Concessions | | | Cash,0 | | ,0 | | ,0 | |
| Date of Sale/Time | | | s03/16,c12/15 | | c04/16 | | Active | |
| Location | N.Res. | | N.Res. | | N.Res. | | N.Res; | |
| Leasehold/Fee Simple | FEE SIMPLE | | FEE SIMPLE | | FEE SIMPLE | | FEE SIMPLE | |
| Site | 1896 sf | | 1896 sf | | 1896 sf | | 1922 sf | 0 |
| View | N.Res. | | N.Res. | | N.Res; | | N.Res; | |
| Design (Style) | AT2;TOWNHOUSE | | AT2;TOWNHOUSE | | AT2;TOWNHOUSE | | AT2;TOWNHOUSE | |
| Quality of Construction | Q4 | | Q4 | | Q4 | | Q4 | |
| Actual Age | 10 | | 3 | 0 | 3 | 0 | 10 | |
| Condition | C3 | | C3 | | C3 | | C3 | |
| Above Grade | Total | Bdrms. | Baths | Total | Bdrms. | Baths | | Total | Bdrms. | Baths | | Total | Bdrms. | Baths | |
| Room Count | 7 | 3 | 2.1 | 7 | 3 | 2.1 | | 7 | 3 | 2.1 | | 7 | 3 | 2.1 | |
| Gross Living Area | 1,636 sq. ft. | | 1,535 sq. ft. | 3,000 | 1,656 sq. ft. | 0 | 1,656 sq. ft. | 0 |
| Basement & Finished | 0sf | | 0sf | | 0sf | | 0sf | |
| Rooms Below Grade | | | | | | | | |
| Functional Utility | AVERAGE/TYPICAL | | AVERAGE/TYPICAL | | AVERAGE/TYPICAL | | AVERAGE/TYPICAL | |
| Heating/Cooling | FWA/CENTRAL | | FWA/CENTRAL | | FWA/CENTRAL | | FWA/CENTRAL | |
| Energy Efficient Items | NONE | | NONE | | NONE | | NONE | |
| Garage/Carport | 1gb/2dw | | 1gb/2dw | | 1gb/2dw | | 1gb/2dw | |
| Porch/Patio/Deck | PORCH/PATIO | | PORCH/PATIO | | PORCH/PATIO | | PORCH/PATIO | |
| | | | | | | | | |
| Net Adjustment (Total) | | | ☒ + ☐ - | $ 3,000 | ☒ + ☐ - | $ 0 | ☒ + ☐ - | $ 0 |
| Adjusted Sale Price | | | Net Adj. 1.4% | | Net Adj. 0.0% | | Net Adj. 0.0% | |
| of Comparables | | | Gross Adj. 1.4% | $ 218,000 | Gross Adj. 0.0% | $ 219,999 | Gross Adj. 0.0% | $ 220,000 |

| ITEM | SUBJECT | COMPARABLE SALE NO. 4 | COMPARABLE SALE NO. 5 | COMPARABLE SALE NO. 6 |
|---|---|---|---|---|
| Date of Prior Sale/Transfer | 12/28/2015 | | 05/23/2013 | 12/01/2014 |
| Price of Prior Sale/Transfer | $149,000 | | $182,000 | $0 |
| Data Source(s) | RLQST/MIAMIDADE.GOV/SEFMLS#0 | RLQST/MIAMIDADE.GOV/SEFMLS#0 | RLQST/MIAMIDADE.GOV/SEFMLS#0 | RLQST/MIAMIDADE.GOV/SEFMLS#0 |
| Effective Date of Data Source(s) | 05/04/2016 | 05/04/2016 | 05/04/2016 | 05/04/2016 |

Summary of Sales Comparison Approach   ONE ADDITIONAL COMPARABLE SALE #4 IS PRESENTED TO SUPPORT THE SUBJECT'S CURRENT OPINION OF MARKET VALUE. FURTHERMORE,

ONE PENDING SALE #5 AND ONE ACTIVE LISTING #6 ARE BEING PRESENTED TO ILLUSTRATE CURRENT ASKING PRICES FOR SIMILAR TYPE RESIDENCES LIKE THE SUBJECT.

* THE ACTIVE LISTINGS PRESENTED REQUIRED A CORRESPONDING "LIST TO SALE PRICE RATIO ADJUSTMENT" *

EXPOSURE TIME IS A "RETROSPECTIVE" OPINION, LOOKING BACK (FROM THE EFFECTIVE DATE) TO THE BEGINNING OF THE "HYPOTHETICAL" PROCESS OF SELLING THE ASSET, SO THAT

THE SALE WOULD HAVE BEEN CONSUMMATED ON THE "EFFFECTIVE DATE" OF THE APPRAISAL.

ALTHOUGH, THE OVERALL MARKET TREND WITHIN THE MUNICIPALITY EXPERIENCED A DECLINE IN PROPERTY VALUES, SEVERAL ANALYSIS INDICATE THAT RESIDENCES "LIKE THE

SUBJECT" IN THE IMMEDIATE MARKET PLACE / AREA HAVE BEGUN TO EXPERIENCE RELATIVELY STABLE PROPERTY VALUES. THIS INFORMATION IS BASED ON THE APPRAISER'S OWN

KNOWLEDGE OF THE AREA, AND EXTENSIVE RESEARCH OF ALL AVAILABLE MARKET DATA (SALES, LISTINGS, PENDING SALES, ETC.), CURRENT MEDIA OUTLETS (NEWSPAPER, RADIO,

TV, ETC) PROMINENT REALTORS WITHIN THE AREA HAVE ALSO CONFIRMED THAT VALUES HAVE NOT ONLY BEEN RELATIVELY STABLE, BUT, INCREASING. THIS IS A DIRECT RESULT OF

SUPPLY AND DEMAND BEGINNING TO BALANCE OUT, AS WELL AS THE SUBJECT'S MARKET AREA BEING KNOWN FOR ITS GOOD HOUSING DEMAND.

NOTWITHSTANDING ANYTHING TO THE CONTRARY, THIS APPRAISAL REPORT IS NOT INTENDED TO SUBSTITUTE FOR A HOME INSPECTION. TO THAT END, NEITHER THE APPRAISER, NOR,

THIS REPORT, WARRANTS ANYTHING HAVING TO DO WITH THE PRESENCE (OR LACK THEREOF) OF CHINESE DRYWALL, MOLD, AND/OR FUNGUS. A REPORT GENERATED BY STATE

LICENSED PROFESSIONAL IS RECOMMENDED. NEITHER THE APPRAISER, NOR THE CONTENTS OF THIS REPORT, IS TO BE RELIED UPON FOR ANYTHING OTHER THAN TO PROVIDE AN

OPINION OF VALUE FOR RESIDENTIAL REAL ESTATE, AS OF THE DATE OF THE REPORT. FURTHER, THE PUBLIC RECORDS HAVE BEEN SEARCHED FOR INFORMATION HAVING TO DO

WITH THE GENERAL INFORMATION AND SALES ACTIVITY, AND AS SUCH- THIS REPORT IS NOT INTENDED TO BE RELIED UPON AS A TITLE SEARCH OR EXAMINATION.

## Condition Ratings and Definitions

C1      The improvements have been very recently constructed and have not previously been occupied. The entire structure and all components are new and the dwelling features no physical depreciation."

*Note: Newly constructed improvements that feature recycled materials and/or components can be considered new dwellings provided that the dwelling is placed on a 100% new foundation and the recycled materials and the recycled components have been rehabilitated/re-manufactured into like-new condition. Recently constructed improvements that have not been previously occupied are not considered "new" if they have any significant physical depreciation (i.e., newly constructed dwellings that have been vacant for an extended period of time without adequate maintenance or upkeep).*

C2      The improvements feature no deferred maintenance, little or no physical depreciation, and require no repairs. Virtually all building components are new or have been recently repaired, refinished, or rehabilitated. All outdated components and finishes have been updated and/or replaced with components that meet current standards. Dwellings in this category either are almost new or have been recently completely renovated and are similar in condition to new construction.

*Note: The improvements represent a relatively new property that is well maintained with no deferred maintenance and little or no physical depreciation, or an older property that has been recently completely renovated.*

C3      The improvements are well maintained and feature limited physical depreciation due to normal wear and tear. Some components, but not every major building component, may be updated or recently rehabilitated. The structure has been well maintained.

*Note: The improvement is in its first-cycle of replacing short-lived building components (appliances, floor coverings, HVAC, etc.) and is being well maintained. Its estimated effective age is less than its actual age. It also may reflect a property in which the majority of short-lived building components have been replaced but not to the level of a complete renovation.*

C4      The improvements feature some minor deferred maintenance and physical deterioration due to normal wear and tear. The dwelling has been adequately maintained and requires only minimal repairs to building components/mechanical systems and cosmetic repairs. All major building components have been adequately maintained and are functionally adequate.

*Note: The estimated effective age may be close to or equal to its actual age. It reflects a property in which some of the short-lived building components have been replaced, and some short-lived building components are at or near the end of their physical life expectancy; however, they still function adequately. Most minor repairs have been addressed on an ongoing basis resulting in an adequately maintained property.*

C5      The improvements feature obvious deferred maintenance and are in need of some significant repairs. Some building components need repairs, rehabilitation, or updating. The functional utility and overall livability is somewhat diminished due to condition, but the dwelling remains useable and functional as a residence.

*Note: Some significant repairs are needed to the improvements due to the lack of adequate maintenance. It reflects a property in which many of its short-lived building components are at the end of or have exceeded their physical life expectancy but remain functional.*

C6      The improvements have substantial damage or deferred maintenance with deficiencies or defects that are severe enough to affect the safety, soundness, or structural integrity of the improvements. The improvements are in need of substantial repairs and rehabilitation, including many or most major components.

*Note: Substantial repairs are needed to the improvements due to the lack of adequate maintenance or property damage. It reflects a property with conditions severe enough to affect the safety, soundness, or structural integrity of the improvements.*

## Quality Ratings and Definitions

Q1      Dwellings with this quality rating are usually unique structures that are individually designed by an architect for a specified user. Such residences typically are constructed from detailed architectural plans and specifications and feature an exceptionally high level of workmanship and exceptionally high-grade materials throughout the interior and exterior of the structure. The design features exceptionally high-quality exterior refinements and ornamentation, and exceptionally high-quality interior refinements. The workmanship, materials, and finishes throughout the dwelling are of exceptionally high quality.

Q2      Dwellings with this quality rating are often custom designed for construction on an individual property owner's site. However, dwellings in this quality grade are also found in high-quality tract developments featuring residences constructed from individual plans or from highly modified or upgraded plans. The design features detailed, high-quality exterior ornamentation, high-quality interior refinements, and detail. The workmanship, materials, and finishes throughout the dwelling are generally of high or very high quality.

Q3      Dwellings with this quality rating are residences of higher quality built from individual or readily available designer plans in above-standard residential tract developments or on an individual property owner's site. The design includes significant exterior ornamentation and interiors that are well finished. The workmanship exceeds acceptable standards and many materials and finishes throughout the dwelling have been upgraded from "stock" standards.

Q4      Dwellings with this quality rating meet or exceed the requirements of applicable building codes. Standard or modified standard building plans are utilized and the design includes adequate fenestration and some exterior ornamentation and interior refinements. Materials, workmanship, finish, and equipment are of stock or builder grade and may feature some upgrades.

Q5      Dwellings with this quality rating feature economy of construction and basic functionality as main considerations. Such dwellings feature a plain design using readily available or basic floor plans featuring minimal fenestration and basic finishes with minimal exterior ornamentation and limited interior detail. These dwellings meet minimum building codes and are constructed with inexpensive, stock materials with limited refinements and upgrades.

Q6      Dwellings with this quality rating are of basic quality and lower cost; some may not be suitable for year-round occupancy. Such dwellings are often built with simple plans or without plans, often utilizing the lowest quality building materials. Such dwellings are often built or expanded by persons who are professionally unskilled or possess only minimal construction skills. Electrical, plumbing, and other mechanical systems and equipment may be minimal or non-existent. Older dwellings may feature one or more substandard or non-conforming additions to the original structure.

## Definitions of Not Updated, Updated, and Remodeled

### Not Updated

Little or no updating or modernization. This description includes, but is not limited to, new homes.

Residential properties of fifteen years of age or less often reflect an original condition with no updating, if no major components have been replaced or updated. Those over fifteen years of age are also considered not updated if the appliances, fixtures, and finishes are predominantly dated. An area that is 'Not Updated' may still be well maintained and fully functional, and this rating does not necessarily imply deferred maintenance or physical/functional deterioration.

### Updated

The area of the home has been modified to meet current market expectations. These modifications are limited in terms of both scope and cost.

An updated area of the home should have an improved look and feel, or functional utility. Changes that constitute updates include refurbishment and/or replacing components to meet existing market expectations. Updates do not include significant alterations to the existing structure.

### Remodeled

Significant finish and/or structural changes have been made that increase utility and appeal through complete replacement and/or expansion.

A remodeled area reflects fundamental changes that include multiple alterations. These alterations may include some or all of the following: replacement of a major component (cabinet(s), bathtub, or bathroom tile), relocation of plumbing/gas fixtures/appliances, significant structural alterations (relocating walls, and/or the addition of square footage). This would include a complete gutting and rebuild.

## Explanation of Bathroom Count

The number of full and half baths is reported by separating the two values by a period. The full bath is represented to the left of the period. The half bath count is represented to the right of the period. Three-quarter baths are to be counted as a full bath in all cases. Quarter baths (baths that feature only toilet) are not to be included in the bathroom count.

# Uniform Appraisal Dataset Definitions

095-3798850
File No. 04180143

## Abbreviations Used in Data Standardization Text

| Abbrev. | Full Name | Appropriate Fields | Abbrev. | Full Name | Appropriate Fields |
|---|---|---|---|---|---|
| ac | Acres | Area, Site | in | Interior Only Stairs | Basement & Finished Rooms Below Grade |
| AdjPrk | Adjacent to Park | Location | Lndfl | Landfill | Location |
| AdjPwr | Adjacent to Power Lines | Location | LtdSght | Limited Sight | View |
| A | Adverse | Location & View | Listing | Listing | Sale or Financing Concessions |
| ArmLth | Arms Length Sale | Sale or Financing Concessions | MR | Mid-Rise Structure | Design(Style) |
| AT | Attached Structure | Design(Style) | Mtn | Mountain View | View |
| ba | Bathroom(s) | Basement & Finished Rooms Below Grade | N | Neutral | Location & View |
| br | Bedroom | Basement & Finished Rooms Below Grade | NonArm | Non-Arms Length Sale | Sale or Financing Concessions |
| B | Beneficial | Location & View | op | Open | Garage/Carport |
| BsyRd | Busy Road | Location | o | Other | Basement & Finished Rooms Below Grade |
| cp | Carport | Garage/Carport | O | Other | Design(Style) |
| Cash | Cash | Sale or Financing Concessions | Prk | Park View | View |
| CtySky | City View Skyline View | View | Pstrl | Pastoral View | View |
| CtyStr | City Street View | View | PwrLn | Power Lines | View |
| Comm | Commercial Influence | Location | PubTrn | Public Transportation | Location |
| c | Contracted Date | Date of Sale/Time | rr | Recreational (Rec) Room | Basement & Finished Rooms Below Grade |
| Conv | Conventional | Sale or Financing Concessions | Relo | Relocation Sale | Sale or Financing Concessions |
| cv | Covered | Garage/Carport | REO | REO Sale | Sale or Financing Concessions |
| CrtOrd | Court Ordered Sale | Sale or Financing Concessions | Res | Residential | Design(Style) |
| DOM | Days On Market | Data Sources | RT | Row or Townhouse | Design(Style) |
| DT | Detached Structure | Design(Style) | RH | Rural Housing - USDA | Sale or Financing Concessions |
| dw | Driveway | Garage/Carport | SD | Semi-detached Structure | Design(Style) |
| Estate | Estate Sale | Sale or Financing Concessions | s | Settlement Date | Date of Sale/Time |
| e | Expiration Date | Date of Sale/Time | Short | Short Sale | Sale or Financing Concessions |
| FHA | Federal Housing Authority | Sale or Financing Concessions | sf | Square Feet | Area, Site, Basement |
| g | Garage | Garage/Carport | sqm | Square Meters | Area, Site, Basement |
| ga | Garage - Attached | Garage/Carport | Unk | Unknown | Date of Sale/Time |
| gbi | Garage - Built-in | Garage/Carport | VA | Veterans Administration | Sale or Financing Concessions |
| gd | Garage - Detached | Garage/Carport | wo | Walk Out Basement | Basement & Finished Rooms Below Grade |
| GR | Garden Structure | Design(Style) | wu | Walk Up Basement | Basement & Finished Rooms Below Grade |
| GlfCse | Golf Course | Location | WtrFr | Water Frontage | Location |
| Glfvw | Golf Course View | View | Wtr | Water View | View |
| HR | High Rise Structure | Design(Style) | w | Withdrawn Date | Date of Sale/Time |
| Ind | Industrial | Location & View | Woods | Woods View | View |

## Other Appraiser-Defined Abbreviations

| Abbrev. | Full Name | Appropriate Fields | Abbrev. | Full Name | Appropriate Fields |
|---|---|---|---|---|---|
|  |  |  |  |  |  |

095-3798850

**Market Conditions Addendum to the Appraisal Report**   File No. 04160143

The purpose of this addendum is to provide the lender/client with a clear and accurate understanding of the market trends and conditions prevalent in the subject neighborhood. This is a required addendum for all appraisal reports with an effective date on or after April 1, 2009.

| Property Address 23631 SW 112th Ct | | | City Homestead | | State FL | Zip Code 33032-7137 |

Borrower KARINA MARTINEZ

**Instructions:** The appraiser must use the information required on this form as the basis for his/her conclusions, and must provide support for those conclusions, regarding housing trends and overall market conditions as reported in the Neighborhood section of the appraisal report form. The appraiser must fill in all the information to the extent it is available and reliable and must provide analysis as indicated below. If any required data is unavailable or is considered unreliable, the appraiser must provide an explanation. It is recognized that not all data sources will be able to provide data for the shaded areas below; if it is available, however, the appraiser must include the data in the analysis. If data sources provide the required information as an average instead of the median, the appraiser should report the available figure and identify it as an average. Sales and listings must be properties that compete with the subject property, determined by applying the criteria that would be used by a prospective buyer of the subject property. The appraiser must explain any anomalies in the data, such as seasonal markets, new construction, foreclosures, etc.

| Inventory Analysis | Prior 7-12 Months | Prior 4-6 Months | Current - 3 Months | | Overall Trend | | |
|---|---|---|---|---|---|---|---|
| Total # of Comparable Sales (Settled) | 0 | 0 | 4 | Increasing | x Stable | | Declining |
| Absorption Rate (Total Sales/Months) | 0.00 | 0.00 | 1.33 | Increasing | x Stable | | Declining |
| Total # of Comparable Active Listings | 0 | 0 | 1 | Declining | x Stable | | Increasing |
| Months of Housing Supply (Total Listings/Ab.Rate) | 0.00 | 0.00 | 0.75 | Declining | x Stable | | Increasing |
| Median Sale & List Price, DOM, Sale/List % | Prior 7-12 Months | Prior 4-6 Months | Current - 3 Months | | Overall Trend | | |
| Median Comparable Sale Price | 0 | 0 | 215,000 | Increasing | x Stable | | Declining |
| Median Comparable Sales Days on Market | 0 | 0 | 59 | Declining | x Stable | | Increasing |
| Median Comparable List Price | 0 | 0 | 220,000 | Increasing | x Stable | | Declining |
| Median Comparable Listings Days on Market | 0 | 0 | 72 | Declining | x Stable | | Increasing |
| Median Sale Price as % of List Price | 0.00% | 0.00% | 98.00% | Increasing | x Stable | | Declining |
| Seller-(developer, builder, etc.)paid financial assistance prevalent? | Yes | x No | | | Declining | x Stable | Increasing |

Explain in detail the seller concessions trends for the past 12 months (e.g., seller contributions increased from 3% to 5%, increasing use of buydowns, closing costs, options, etc.). SELLER CONCESSIONS / CONTRIBUTIONS IN THE PAST 12 MONTHS WITHIN THE SUBJECT'S MARKET AREA HAVE REMAINED RELATIVELY CONSTANT WITH NO SIGNIFICANT CHANGE IN FREQUENCY OR PERCENTAGE AMOUNT.  CONCESSIONS / CONTRIBUTIONS TYPICALLY RANGE BETWEEN 2% AND 5% AND ARE USUALLY APPLIED TOWARDS CLOSING AND/OR PREPAID SSOURCES USED TO COMPLETE THE DATA PRESENTED ABOVE INCLUDE PUBLIC RECORDS, COUNTY'S OFFICIAL WEBSITE, AND THE LOCAL MLS. TOTAL # OF COMPARABLE ACTIVE LISTINGS AND MONTHS OF UNIT SUPPLY FOR TIME PERIODS 7-12 MONTHS AND 4-6 MONTHS ONLY. FURTHERMORE, THE LACK OF REPORTED INFORMATION ON THE TOTAL # OF COMPARABLE ACTIVE LISTINGS AND THE MONTHS OF UNIT SUPPLY "RATE" COULD NOT BE DETERMINED (CONSIDERED UNRELIABLE).

Are foreclosure sales (REO sales) a factor in the market? ☐ Yes  ☒ No    If yes, explain (including the trends in listings and sales of foreclosed properties).

Cite data sources for above information.  LOCAL MULITPLE LISTING SERVICE / OFFICIAL PROPERTY APPRAISER'S (COUNTY) WEBSITE / REALQUEST

Summarize the above information as support for your conclusions in the Neighborhood section of the appraisal report form. If you used any additional information, such as an analysis of pending sales and/or expired and withdrawn listings, to formulate your conclusions, provide both an explanation and support for your conclusions.
BASED ON THE DATA OBTAINED FROM THE MLS. VALUES FOR SIMILAR TYPE PROPERTIES AS THE SUBJECT HAVE BEEN FLUCTUATING THEREFORE IS CONSIDERED TO BE RELATIVELY STABLE WITH AN INCREASE IN DEMAND AND A DECLINE IN INVENTORY OVER THE PAST 12 MONTHS. IF THIS TREND CONTINUES IT IS TYPICAL FOR VALUES TO INCREASE

THE INFORMATION CONTAINED IN THE GRID ABOVE WAS TAKEN DIRECTLY FROM THE MLS AND IS BELIEVED TO BE RELATIVELY ACCURATE AS IT PERTAINS TO SIMILAR TYPE PROPERTIES WITH REGARD TO THE SUBJECT'S CHARACTERISTICS. THIS INFORMATION MAY VARY SOMEWHAT FROM THE INFORMATION PROVIDED AND STATED ON THE FIRST PAGE OF THE APPRAISAL REPORT UNDER THE NEIGHBORHOOD SECTION AS THAT INFORMATION TAKES INTO CONSIDERATION TRENDS FOR THE ENTIRE MARKET AREA AND NOT JUST THOSE PROPERTIES CONSIDERED TO BE SIMILAR TO THE SUBJECT.

| If the subject is a unit in a condominium or cooperative project, complete the following: | | | | | Project Name: | | |
|---|---|---|---|---|---|---|---|
| Subject Project Data | Prior 7-12 Months | Prior 4-6 Months | Current - 3 Months | | Overall Trend | | |
| Total # of Comparable Sales (Settled) | | | | Increasing | | Stable | Declining |
| Absorption Rate (Total Sales/Months) | | | | Increasing | | Stable | Declining |
| Total # of Active Comparable Listings | | | | Declining | | Stable | Increasing |
| Months of Unit Supply (Total Listings/Ab. Rate) | | | | Declining | | Stable | Increasing |

Are foreclosure sales (REO sales) a factor in the project? ☐ Yes  ☐ No    If yes, indicate the number of REO listings and explain the trends in listings and sales of foreclosed properties.

Summarize the above trends and address the impact on the subject unit and project.

| **APPRAISER** | | **SUPERVISORY APPRAISER (ONLY IF REQUIRED)** |
|---|---|---|
| Signature | | Signature |
| Name PAVEL URBINA | | Name |
| Company Name FLORIDA APPRAISAL SERVICES, INC | | Company Name |
| Company Address 8925 COLLINS AVENUE, 10-D | | Company Address |
| SURFSIDE, FL 33154 | | |
| State License/Certification # CERT RES RD6102   State FL | | State License/Certification #   State |
| Email Address FLAPP@BELLSOUTH.NET | | Email Address |

09S-3799850
File No. 04160143

## USPAP ADDENDUM

Borrower: KARINA MARTINEZ
Property Address: 23631 SW 112th Ct
City: Homestead          County: MIAMI-DADE          State: FL          Zip Code: 33032-7137
Lender: PARAMOUNT RESIDENTIAL MORTGAGE GROUP

### Reasonable Exposure Time

My opinion of a reasonable exposure time for the subject property at the market value stated in this report is: 3 TO 6 MONTHS.

EXPOSURED TIME: UNDER CURRENT MARKET CONDITIONS, THE REASONABLE EXPOSURE TIME FOR THE SUBJECT PROPERTY IS APPROXIMATELY (3 TO 6 MONTHS) THIS IS BASED ON THE ANALYSES OF CURRENT MARKET TRENDS IN THE GENERAL AREA AND TAKES INTO ACCOUNT THE SIZE, CONDITION AND PRICE RANGE OF THE SUBJECT PROPERTY AND SURROUNDING AREA IT PRESUPPOSES THAT THE LISTED PRICE WOULD BE AT OR NEAR THE APPRAISED VALUE. IT ALSO SSUMES AGGRESIVE PROFESSIONAL MARKETING BY REPUTABLE LOCAL REAL ESTATE OFFICES

### Additional Certifications

[x] I have performed NO services, as an appraiser or in any other capacity, regarding the property that is the subject of this report within the three-year period immediately preceding acceptance of this assignment.

[ ] I HAVE performed services, as an appraiser or in another capacity, regarding the property that is the subject of this report within the three-year period immediately preceding acceptance of this assignment. Those services are described in the comments below.

### Additional Comments

APPRAISER:

Signature:
Name: PAVEL URBINA
Date Signed: 05/04/2016
State Certification #: CERT RES RD6102
or State License #:
or Other (describe): _____ State #: _____
State: FL
Expiration Date of Certification or License: 11/30/2016
Effective Date of Appraisal: 05/04/2016

SUPERVISORY APPRAISER (only if required):

Signature:
Name:
Date Signed:
State Certification #:
or State License #:
State:
Expiration Date of Certification or License:
Supervisory Appraiser inspection of Subject Property:
[ ] Did Not    [ ] Exterior-only from street    [ ] Interior and Exterior

**FLOORPLAN SKETCH**

| | |
|---|---|
| Borrower: KARINA MARTINEZ | File No.: 04160143 |
| Property Address: 23631 SW 112th Ct | Case No.: 095-3798850 |
| City: Homestead | State: FL     Zip: 33032-7137 |
| Lender: PARAMOUNT RESIDENTIAL MORTGAGE GROUP | |



Comments:

| AREA CALCULATIONS SUMMARY | | | |
|---|---|---|---|
| Code | Description | Net Size | Net Totals |
| GLA1 | First Floor | 702.0 | |
| | Second Floor | 934.0 | 1636.0 |
| P/P | Porch | 50.0 | 50.0 |
| GAR | Garage | 232.0 | 232.0 |
| | Net LIVABLE Area | (Rounded) | 1636 |

| LIVING AREA BREAKDOWN | | | |
|---|---|---|---|
| | Breakdown | | Subtotals |
| First Floor | | | |
| | 19.5 | x   22.0 | 429.0 |
| | 12.5 | x   15.0 | 187.5 |
| | 4.5 | x   19.0 | 85.5 |
| Second Floor | | | |
| | 24.0 | x   37.0 | 888.0 |
| | 4.0 | x   11.5 | 46.0 |
| 5 Items | | (Rounded) | 1636 |

**LOCATION MAP**



| Borrower: KARINA MARTINEZ | | File No.: 04160143 | |
|---|---|---|---|
| Property Address: 23631 SW 112th Ct | | Case No.: 095-3798850 | |
| City: Homestead | State: FL | | Zip: 33032-7137 |
| Lender: PARAMOUNT RESIDENTIAL MORTGAGE GROUP | | | |

SUBJECT PROPERTY PHOTO ADDENDUM

| | | |
|---|---|---|
| Borrower: KARINA MARTINEZ | | File No.: 04160143 |
| Property Address: 23631 SW 112th Ct | | Case No.: 095-3798850 |
| City: Homestead | State: FL | Zip: 33032-7137 |
| Lender: PARAMOUNT RESIDENTIAL MORTGAGE GROUP | | |



**FRONT VIEW OF
SUBJECT PROPERTY**

Appraised Date: May 4, 2016
Appraised Value: $ 217,000



**REAR VIEW OF
SUBJECT PROPERTY**



**STREET SCENE**

| Borrower: KARINA MARTINEZ | | File No.: 04160143 | |
|---|---|---|---|
| Property Address: 23631 SW 112th Ct | | Case No.: 095-3798850 | |
| City: Homestead | State: FL | | Zip: 33032-7137 |
| Lender: PARAMOUNT RESIDENTIAL MORTGAGE GROUP | | | |



SUBJECT'S STREET



SUBJECT'S SIDE



SUBJECT'S SIDE

| Borrower: KARINA MARTINEZ | | File No.: 04160143 | |
| Property Address: 23631 SW 112th Ct | | Case No.: 095-3798850 | |
| City: Homestead | State: FL | Zip: 33032-7137 | |
| Lender: PARAMOUNT RESIDENTIAL MORTGAGE GROUP | | | |



SUBJECT'S LIVING



SUBJECT'S FAMILY



SUBJECT'S DINING

| Borrower: KARINA MARTINEZ | | File No.: 04160143 |
|---|---|---|
| Property Address: 23631 SW 112th Ct | | Case No.: 095-3798850 |
| City: Homestead | State: FL | Zip: 33032-7137 |
| Lender: PARAMOUNT RESIDENTIAL MORTGAGE GROUP | | |



SUBJECT'S KITCHEN



SUBJECT'S BEDROOM



SUBJECT'S BEDROOM

| Borrower: KARINA MARTINEZ | | File No.: 04160143 |
|---|---|---|
| Property Address: 23631 SW 112th Ct | | Case No.: 095-3798850 |
| City: Homestead | State: FL | Zip: 33032-7137 |
| Lender: PARAMOUNT RESIDENTIAL MORTGAGE GROUP | | |



SUBJECT'S BEDROOM



SUBJECT'S BATHROOM



SUBJECT'S BATHROOM

| Borrower: KARINA MARTINEZ | | File No.: 04160143 | |
|---|---|---|---|
| Property Address: 23631 SW 112th Ct | | Case No.: 095-3798850 | |
| City: Homestead | State: FL | Zip: 33032-7137 | |
| Lender: PARAMOUNT RESIDENTIAL MORTGAGE GROUP | | | |



SUBJECT'S HALF BATHROOM



SUBJECT'S ELECTRICITY



SUBJECT'S WATER OFF

| Borrower: KARINA MARTINEZ | | File No.: 04160143 |
|---|---|---|
| Property Address: 23631 SW 112th Ct | | Case No.: 095-3798850 |
| City: Homestead | State: FL | Zip: 33032-7137 |
| Lender: PARAMOUNT RESIDENTIAL MORTGAGE GROUP | | |



SUBJECT'S ATTIC



SUBJECT'S GARAGE



**COMPARABLE PROPERTY PHOTO ADDENDUM**

| | | |
|---|---|---|
| Borrower: KARINA MARTINEZ | File No.: 04160143 | |
| Property Address: 23631 SW 112th Ct | Case No.: 095-3798850 | |
| City: Homestead | State: FL | Zip: 33032-7137 |
| Lender: PARAMOUNT RESIDENTIAL MORTGAGE GROUP | | |



**COMPARABLE SALE #1**

23400 SW 113th Ave
Homestead, FL 33032-7148
Sale Date: s04/16;c03/16
Sale Price: $ 215,000



**COMPARABLE SALE #2**

11321 SW 236th Ln
Homestead, FL 33032-6249
Sale Date: s04/16;c03/16
Sale Price: $ 227,000



**COMPARABLE SALE #3**

23945 SW 113th Pass
Homestead, FL 33032-3152
Sale Date: s04/16;c03/16
Sale Price: $ 215,000

COMPARABLE PROPERTY PHOTO ADDENDUM

| | |
|---|---|
| Borrower: KARINA MARTINEZ | File No.: 04160143 |
| Property Address: 23631 SW 112th Ct | Case No.: 095-3798850 |
| City: Homestead | State: FL | Zip: 33032-7137 |
| Lender: PARAMOUNT RESIDENTIAL MORTGAGE GROUP | |



**COMPARABLE SALE #4**

23579 SW 113th Pass
Homestead, FL 33032-7151
Sale Date: s03/16;c12/15
Sale Price: $ 215,000



**COMPARABLE SALE #5**

23539 SW 113th Psge
Homestead, FL 33032-6001
Sale Date: c04/16
Sale Price: $ 219,999



**COMPARABLE SALE #6**

23460 SW 112th Ct
Homestead, FL 33032-7146
Sale Date: Active
Sale Price: $ 220,000

| Borrower: KARINA MARTINEZ | | File No.: 04160143 | |
|---|---|---|---|
| Property Address: 23631 SW 112th Ct | | Case No.: 095-3796850 | |
| City: Homestead | State: FL | Zip: 33032-7137 | |
| Lender: PARAMOUNT RESIDENTIAL MORTGAGE GROUP | | | |



**General Star National Insurance Company**
P O Box 10360 (Attn: GSN)
Stamford, Connecticut 06904

## REAL ESTATE APPRAISERS ERRORS & OMISSIONS INSURANCE POLICY

### DECLARATIONS PAGE

This is a claims made and reported policy. Please read this policy and all endorsements and attachments carefully.

Policy Number: NJA306605A                    Renewal of Number: NJA306605

1. **NAMED INSURED:** Pavel E. Urbina
   **STREET ADDRESS:**
   Apartment 805
   2740 Southwest 28 Terrace
   Miami, FL 33133

2. **POLICY PERIOD:** Inception Date: 07/24/2015          Expiration Date: 07/24/2016
   Effective 12:01 a.m. Standard Time at the address of the Named Insured.

3. **LIMITS OF LIABILITY:**
   Each Claim:  $1,000,000
   Aggregate:  $1,000,000
   **Claim Expenses** have a separate Limit of Liability:
   Each Claim:  $1,000,000
   Aggregate:  $1,000,000

4. **DEDUCTIBLE:**      Each Claim: $0_____   Aggregate: $0_____

5. **RETROACTIVE DATE:** 07/24/2014
   If a date is indicated, this policy will not provide coverage for any **Claim** arising out of any act, error,
   omission or personal injury which occurred before such date.

6. **ANNUAL PREMIUM:**                $680.00

   TOTAL Premium and Taxes/Surcharge :      $680.00
7. **ENDORSEMENTS:**
   This policy is made and accepted subject to the printed policy form together with the following form(s) or
   endorsement(s).
   AP 90 0001FL (06/11), AP 04 0001 (06/11), AP 04 0003 (07/14), AP 04 0004 (07/14), AP 20 0001 (06/11),
   AP 95 0008FL (06/11),
   AP 08 0010FL (06/11).

8. **PRODUCER NAME:**   Mercer Consumer
   **STREET ADDRESS:**   P. O. Box 8146
   Des Moines, IA 50306-8146

_____
**Authorized Representative**

Producer Code: 26460
Date:   07/17/2015                    Class Code: 73128
AP 10 0001 06 11      ® Copyright 2011, General Star Management Company, Stamford, CT      Page 1 of 1

| Borrower: KARINA MARTINEZ | | File No.: 04160143 |
|---|---|---|
| Property Address: 23631 SW 112th Ct | | Case No.: 095-3798850 |
| City: Homestead | State: FL | Zip: 33032-7137 |
| Lender: PARAMOUNT RESIDENTIAL MORTGAGE GROUP | | |



RICK SCOTT, GOVERNOR

KEN LAWSON, SECRETARY

**STATE OF FLORIDA**
**DEPARTMENT OF BUSINESS AND PROFESSIONAL REGULATION**
**FLORIDA REAL ESTATE APPRAISAL BD**

LICENSE NUMBER
RD6102

The CERTIFIED RESIDENTIAL APPRAISER
Named below IS CERTIFIED
Under the provisions of Chapter 475 FS.
Expiration date:  NOV 30, 2016

URBINA, PAVEL ERNESTO PA
7713 N KENDALL DR A-810
MIAMI            FL 33158

ISSUED:  02/24/2015        DISPLAY AS REQUIRED BY LAW        SEQ # L1502240000820

# Exhibit 2



**Professional's Choice**
**for Environmental Testing™**
1675 N. Commerce Parkway, Weston, FL    33326
Tel: (954) 384-4446    Fax: (954) 384-4838

ADVANCED HOME INSPECTION
1700 NW 12TH AVE
HOMESTEAD, FL 33030

**Report Number:    1117548-2,3**

# Certificate of Drywall Analysis

| | |
|---|---|
| Prepared for: | ADVANCED HOME INSPECTION |
| Phone Number: | 786-412-1800 |
| Email Address: | matthewwcollier@hotmail.com |
| Test Address: | KARINA MARTINEZ<br>23631 SW 112 COURT<br>HOMESTEAD, FL 33032 |
| Collection Location: | KITCHEN; BATHROOM |

Date Collected:      MARCH 15, 2018
Receive Date:        MARCH 16, 2018
Report Date:         MARCH 27, 2018

Erika Piechowski, Technical Manager

Carlos Ochoa, Quality Control Manager

---

Analytical results and reports are generated by PRO-LAB/SSPTM, Inc. for and at the request of its client(s) named on this report, and for their exclusive use. PRO-LAB/SSPTM, Inc. does not release original, copies or verbal results to any third party without prior written approval from the named client(s). This report applies only to the sample(s) tested. This report may not be reproduced, except in full, without approval from PRO-LAB/SSPTM, Inc. The client(s) is solely responsible for the use and interpretation of this report. PRO-LAB/SSPTM, Inc. makes no express or implied warranties as to health of a property from only the samples sent to their laboratory for analysis. The Client is hereby notified that all samples of gypsum board are sent to Columbia Analytical Services. After the testing, samples and are retained for a 7 day period, after which they are discarded in a manner consistent with local and federal guidelines.

All tests are subject to false positives and false negatives and the analyses and interpretation(s) made herein may not be regarded as a basis for taking any action regarding health or remediation of the tested materials.

**For more information please contact PRO-LAB at 954-384-4446**

---



Client:   ADVANCED HOME INSPECTION
Sample Submitted: KITCHEN;BATHROOM

**Report Number:** **1117548-2,3**
Analysis Date:      03/26/2018
Report Date:        03/27/2018

## Case Narrative

Approximately 1 gram of gypsum board was prepared and analyzed using a GC ECD (Gas Chromatograph Electron Capture Detector) method. This analysis technique is used to determine the amount of Elemental Sulfur (orthorhombic sulfur, cyclooctasulfur, S8) in your sample. The Consumer Product Safety Commission (CPSC) has determined that Elemental Sulfur analysis of suspected contaminated drywall is the most accurate way to test (SUMMARY OF REVISION 1 TO THE INTERIM GUIDANCE – IDENTIFICATION OF HOMES WITH CORROSION FROM PROBLEM DRYWALL, AUGUST 27, 2010). Gypsum in drywall samples from homes containing greater than 10 mg/kg is believed to contribute to sulfur gasses emitted from corrosive drywall.
(http://www.doh.state.fl.us/environment/community/indoor-air/casedefinition.html)

## Results

Elemental Sulfur was **NOT DETECTED** above a level (<5 kg/mg) the CPSC has determined as being a marker for problem drywall gypsum product (http://www.cpsc.gov/info/drywall/guidance0827.pdf).

## Conclusion (NEGATIVE FOR CONTAMINATED DRYWALL)

The testing shows this sample is not consistent with problem drywall product known to cause corrosive conditions demonstrated by the formation of copper sulfide (blackening) on any or all of the electronic components, copper grounding wires, copper air conditioning coils, and corrosive for copper pipes; specifically air conditioning condensor coils. The negative results of the GC ECD testing indicate the presence of low levels of Elemental Sulfur that the CPSC uses to distinguish between problematic and non-problematic drywall product.

**This is only an analytical report. The interpretation and application of results are left to the user.**

| **Drywall Analysis Results** | **Elemental Sulfur\*** | **<5 mg/kg (ppm)** |
|---|---|---|
| | **Elemental Sulfur\*** | **<5 mg/kg (ppm)** |

*(LOQ = 5 mg/kg, See attached Laboratory data)

Copper wiring and AC condensor coils, copper wiring, and other electronic components are not likely to show blackening due to gasses produced from your sample of drywall. The State of Florida has an excellent self-assessment guide for evaluating homes affected by drywall from China. (http://www.doh.state.fl.us/environment/community/indoor-air/inspections.html).

## END OF REPORT

# ALS ENVIRONMENTAL

RESULTS OF ANALYSIS
Page 1 of 1

**Client:**    **PRO-LAB, Inc.**
**Client Project ID:**    **Drywall Investigation**

ALS Project ID: P1801341

## Orthorhombic Cyclooctasulfur

Test Code:    ASTM C471M-14
Instrument ID:    HP6890+/GC23/ECD               Date Received: 3/19/18
Analyst:    Evelyn Alvarez                     Date Extracted: 3/23/18
Sample Type:    Wallboard                     Date Analyzed: 3/25/18
Test Notes:

| Client Sample ID | ALS Sample ID | Sample Amount Gram(s) | Extract Volume ml(s) | Dilution Factor | Result mg/Kg | LOQ mg/Kg | Data Qualifier |
|---|---|---|---|---|---|---|---|
| **1/1/3436** | P1801341-001 | 1.00 | 5.0 | 1.00 | **240** | 5.0 | |
| 2/1/3436 | P1801341-002 | 0.99 | 5.0 | 1.00 | ND | 5.1 | |
| 3/1/3436 | P1801341-003 | 1.00 | 5.0 | 1.00 | ND | 5.0 | |
| Negative Control Sample | P180323-NCS | 1.00 | 5.0 | 1.00 | ND | 5.0 | |

\ND = Compound was analyzed for, but not detected above the limit of quantitation.
 .OQ = Limit of Quantitation.
According to the Florida Department of Health (http://www.doh.state.fl.us/environment/community/indoor-air/casedefinition.html, 1/5/2010),
a positive result above 10 mg/kg is indicative of corrosive drywall.
A positive result between 5-10 mg/kg is inconclusive; further testing may be warranted.

### LABORATORY CONTROL SAMPLE / DUPLICATE LABORATORY CONTROL SAMPLE SUMMARY

| Client Sample ID | ALS Sample ID | Spike Amount LCS / DLCS mg/Kg | Result LCS mg/Kg | DLCS mg/Kg | % Recovery LCS | DLCS | ALS Acceptance Limits | RPD | RPD Limit | Data Qualifier |
|---|---|---|---|---|---|---|---|---|---|---|
| Dup Lab Control Sample | P180323-DLCS | 129 | 142 | 143 | 110 | 111 | 75-117 | 1 | 11 | |



**PRO-LAB®**

The
**Professional's Choice**
for **Environmental Testing**™

1675 N. Commerce Parkway, Weston, FL    33326
Tel: (954) 384-4446    Fax: (954) 384-4838

ADVANCED HOME INSPECTION                    **Report Number:    1117548-1**
1700 NW 12TH AVE
HOMESTEAD, FL 33030

# Certificate of Drywall Analysis

| | |
|---|---|
| Prepared for: | ADVANCED HOME INSPECTION |
| Phone Number: | 786-412-1800 |
| Email Address: | miquel@advancedhomeinspection.net |
| Test Address: | KARINA MARTINEZ |
| | 23631 SW 112 COURT |
| | HOMESTEAD, FL 33032 |
| Collection Location | MASTER BEDROOM |
| Date Collected: | MARCH 15, 2018 |
| Receive Date: | MARCH 16, 2018 |
| Report Date: | MARCH 26, 2018 |

*Erika Piechowski*

Erika Piechowski, Technical Manager

*Carlos Ochoa*

Carlos Ochoa, Quality Control Manager

Analytical results and reports are generated by PRO-LAB/SSPTM, Inc. for and at the request of its client(s) named on this report, and for their exclusive use. PRO-LAB/SSPTM, Inc. does not release original, copies or verbal results to any third party without prior written approval from the named client(s). This report applies only to the sample(s) tested. This report may not be reproduced, except in full, without approval from PRO-LAB/SSPTM, Inc. The client(s) is solely responsible for the use and interpretation of this report. PRO-LAB/SSPTM, Inc. makes no express or implied warranties as to health of a property from only the samples sent to their laboratory for analysis. The Client is hereby notified that all samples of gypsum board are sent to Columbia Analytical Services. After the testing, samples and are retained for a 7 day period, after which they are discarded in a manner consistent with local and federal guidelines.

All tests are subject to false positives and false negatives and the analyses and interpretation(s) made herein may not be regarded as a basis for taking any action regarding health or remediation of the tested materials.

**For more information please contact PRO-LAB at 954-384-4446**



**PRO-LAB®**

The
**Professional's Choice**
for **Environmental Testing**™

| | |
|---|---|
| Client:   ADVANCED HOME INSPECTION. | **Report Number:   1117548-1** |
| Sample Submitted:  M BEDROOM | |

| | |
|---|---|
| Analysis Date: | 03/26/2018 |
| Report Date: | 03/27/2018 |

## Case Narrative

Approximately 1 gram of gypsum board was prepared and analyzed using a GC ECD (Gas Chromatograph Electron Capture Detector) method. This analysis technique is used to determine the amount of Elemental Sulfur (orthorhombic sulfur, cyclooctasulfur, S8) in your sample. The Consumer Product Safety Commission (CPSC) has determined that Elemental Sulfur analysis of suspected contaminated drywall is the most accurate way to test (SUMMARY OF REVISION 1 TO THE INTERIM GUIDANCE – IDENTIFICATION OF HOMES WITH CORROSION FROM PROBLEM DRYWALL, AUGUST 27, 2010). Gypsum in drywall samples from homes containing greater than 10 mg/kg is believed to contribute to sulfur gasses emitted from corrosive drywall.
(http://www.doh.state.fl.us/environment/community/indoor-air/casedefinition.html)

## Results

Elemental Sulfur was **DETECTED** above a level (>10 kg/mg) the CPSC has determined as being a marker for problem drywall gypsum product (http://www.cpsc.gov/info/drywall/guidance0827.pdf).

## Conclusion (**POSITIVE FOR CONTAMINATED DRYWALL**)

The testing shows this sample is consistent with problem drywall product known to cause corrosive conditions demonstrated by the formation of copper sulfide (blackening) on any or all of the electronic components, copper grounding wires, copper air conditioning coils, and corrosive for copper pipes; specifically air conditioning condensor coils. The positive results of the GC ECD testing indicate the presence of high levels of Elemental Sulfur that the CPSC uses to distinguish between problematic and non-problematic drywall product.

**This is only an analytical report. The interpretation and application of results are left to the user.**

| | | |
|---|---|---|
| **Drywall Analysis Results** | **Elemental Sulfur\*** | **240 mg/kg** |

\*(LOQ = 5 mg/kg, See attached Laboratory data)

Copper wiring and AC condensor coils, copper wiring, and other electronic components are likely to show blackening due to gasses produced from your sample of drywall. The State of Florida has an excellent self-assessment guide for evaluating homes affected by drywall from China. (http://www.doh.state.fl.us/environment/community/indoor-air/inspections.html).

## END OF REPORT

# ALS ENVIRONMENTAL

RESULTS OF ANALYSIS
Page 1 of 1

**Client:** **PRO-LAB, Inc.**
**Client Project ID:** **Drywall Investigation**

ALS Project ID: P1801341

## Orthorhombic Cyclooctasulfur

Test Code:       ASTM C471M-14
Instrument ID:    HP6890+/GC23/ECD
Analyst:          Evelyn Alvarez
Sample Type:      Wallboard
Test Notes:

Date Received: 3/19/18
Date Extracted: 3/23/18
Date Analyzed: 3/25/18

| Client Sample ID | ALS Sample ID | Sample Amount Gram(s) | Extract Volume ml(s) | Dilution Factor | Result mg/Kg | LOQ mg/Kg | Data Qualifier |
|---|---|---|---|---|---|---|---|
| 1/1/3436 | P1801341-001 | 1.00 | 5.0 | 1.00 | 240 | 5.0 | |
| 2/1/3436 | P1801341-002 | 0.99 | 5.0 | 1.00 | ND | 5.1 | |
| 3/1/3436 | P1801341-003 | 1.00 | 5.0 | 1.00 | ND | 5.0 | |
| Negative Control Sample | P180323-NCS | 1.00 | 5.0 | 1.00 | ND | 5.0 | |

ND = Compound was analyzed for, but not detected above the limit of quantitation.
LOQ = Limit of Quantitation.
According to the Florida Department of Health (http://www.doh.state.fl.us/environment/community/indoor-air/casedefinition.html, 1/5/2010),
a positive result above 10 mg/kg is indicative of corrosive drywall.
A positive result between 5-10 mg/kg is inconclusive; further testing may be warranted.

### LABORATORY CONTROL SAMPLE / DUPLICATE LABORATORY CONTROL SAMPLE SUMMARY

| Client Sample ID | ALS Sample ID | Spike Amount LCS / DLCS mg/Kg | Result LCS mg/Kg | Result DLCS mg/Kg | % Recovery LCS | % Recovery DLCS | ALS Acceptance Limits | RPD | RPD Limit | Data Qualifier |
|---|---|---|---|---|---|---|---|---|---|---|
| Dup Lab Control Sample | P180323-DLCS | 129 | 142 | 143 | 110 | 111 | 75-117 | 1 | 11 | |

# Exhibit 3





# Exhibit 4