UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL NO. 2047 SECTION: L |
| THIS DOCUMENT RELATES TO: *Elizabeth Bennett, et al. v. Gebrueder Knauf Verwaltungsgesellschaft, KG, et al.* 2:14-cv-02722-EEF-JCW | JUDGE ELDON FALLON MAG. JUDGE WILKINSON |

**PLAINTIFFS' OPPOSITION TO DEFENDANT KNAUF'S OMNIBUS MOTION FOR SUMMARY JUDGMENT OF CLAIMS ASSERTED BY ROBERT AMUSO AND STEPHANE AMUSO; HOAN BAO AND HANH BICH THI TRAN; ELIZABETH BENNETT; JENNIFER BRADY AND WILLIAM BRADY; DAMIAN CASON AND LESLIE MARIE CASON; BECKY CHEDESTER AND MICHAEL CHEDESTER; KATIE HALLMARK AND JASON HALLMARK; IKEIJEMERE AND NANCY IJEMERE; JOSHUA KELLEY AND ERNEST HAMILTON; BOOKER LEE AND TERRI LEE; NIC CORNELISON AND R&S PROPERTIES, LLC;DAVID REYNOLDS AND DAHNELLE REYNOLDS; CARL RUSSELL AND LYNN RUSSELL; JASON SCOTT; ANDRONALD STANFA AND PATRICIA STANFA**

# Table of Contents

**Page**

I.  STATEMENT OF MATERIAL FACTS…………………………….………… 1

    A.  MDL-2047……………………………………………………….…… 1

    B.  The *Bennett* Class Action ……………………..……………………... 4

    C.  Plaintiffs in the *Bennett* Complaint ……………………………… 4

II.  STANDARD OF REVIEW……………………………………………..… 5

III.  ARGUMENT…………………………………………………………… 5

    A.  Alabama law requires no privity of contract between plaintiff and a manufacturing defendant in a defective product action…………….. 6

    B.  The Defective nature of Knauf's Chinese-manufactured drywall allows Plaintiffs to bring defective product claims under the AEMLD and traditional tort claims due to the economic loss that result …………………………………………………….. 8

    C.  "Law of the situs" rule requires this Court to apply Alabama law to claims involving Alabama real property…………………………. 11

IV.  CONCLUSION……………………………………………………….. 12

# Table of Authorities

**Cases**                                                                                  **Page**

*Anderson v. Liberty Lobby, Inc.*,                                                              5
    477 U.S. 242 (1986)

*Atkins v. American Motors Corp.*,                                                              7
    335 So.2d 134 (Ala 1976)

*Cain v. Sherton Perimeter Park South Hotel*,                                                   8
    592 So. 2d 218 (Ala. 1991)

*Casrell v. Altec Industries, Inc.*,                                                            8
    335 So. 2d 128 (Ala. 1976)

*Celotex Corp. v. Catrett*,                                                                     5
    477 U.S. 317 (1986)

*Clark v. Coats & Clark, Inc.*,                                                                 5
    929 F.2d 604 (11th Cir. 1991)

*East River S.S. Corp. v. Transamerica Delaval, Inc.*,                                          9
    476 U.S. 858, 106 S.Ct. 2295, 90 L.Ed.2d 865 (1986)

*Fitzpatrick v. City of Atlanta*,                                                               5
    2 F.3d 1112 (11th Cir. 1993)

*First National Bank of Mobile v. Cessna Aircraft*,                                             8
    365 So.2d 966 (Ala. 1978)

*Greenman v. Yuba Power Products*,                                                              8
    377 P.2d 897 (Cal. 1963)

*Harris v. Board of Water and Sewer Commissioners of City of Mobile*,                           9
    294 Ala. 606, 320 So.2d 624 (1975)

*In re Beveridge*,                                                                              11
    416 B.R. 552 (Bankr. N.D. Tex. 2009)

*In Re Chinese Manufactured  Drywall Prod. Liab. Liti.*,                                        10
    706 F. Supp. 2d 655 (E.D. La. 2010)

*Jones v. Gulf States Steel Co.*,                                                               9
    205 Ala. 291, 88 So. 21 (1921)

*Keck v. Dryvit Systems, Inc.,*                                    6, 7
    830 So.2d 1 (Ala.2002)

*Lloyd Wood Coal Co. v. Clark Equipment Co.,*                      9
    543 So.2d 671 (Ala.1989)

*Monge v. Rojas (In re Monge),*                                    12
    No. 09-30881-hcm (Bankr. W.D. Tex. Sep. 5, 2014)

*Tolan v. Cotton*,                                                 5
    134 S. Ct. 1861 (2014)

*Tuscumbia City Sch. Sys. v. Pharmacia Corp.*,                     7, 9, 10
    871 F. Supp. 2d 1241 (N.D. Ala. 2012)

**<u>Other</u>**

Fed. R. Civ. P. 56(a)                                              5

Plaintiffs Robert and Stephanie Amuso, Hoan Bao and Hanh Bich Thi Tran, Elizabeth

Bennett, Jennifer and William Brady, Damian and Leslie Cason, Becky and Michael Chedester,

Katie and Jason Hallmark, Ike and Nancy Ijemere, Joshua Kelley and Ernest Hamilton, Booker

and Terri Lee, Nic Corlison and R&S Properties, David and Dahnelle Reynolds, Carl and Lynn

Russell, Jason Scott, and Ronald and Patricia Stanfa (herein "Plaintiffs" or "Plaintiff"), by and

through the undersigned counsel of record, oppose the motion for summary judgment (Doc.

22687) filed by the Knauf Defendants.  As grounds, Plaintiffs offer the following:

## I.    STATEMENT OF MATERIAL FACTS

### A.  MDL-2047.

This litigation arises from alleged property damage and caused by the presence of

Chinese drywall in homes and other buildings. Hurricanes Katrina and Rita devastated the Gulf

Coast in 2005. These disasters, coinciding as they did with a boom in new housing construction,

helped precipitate a shortage of drywall for the construction and reconstruction of homes in the

United States. As a result, from approximately 2005 to 2008, Chinese drywall entered the United

States market, changing hands in the chain of commerce, and ultimately finding its way into

thousands of homes and buildings in the United States, primarily in Florida, Louisiana, Alabama,

Mississippi, Texas, and Virginia.  Sometime after the installation of Chinese drywall in these

properties, homeowners, residents, and occupants began to notice and complain of odd odors,

corrosion of metal components, failure of electronics and appliances, and in some cases, physical

ailments, such as nose bleeds, skin irritation, and respiratory problems. In response to these

complaints, a number of governmental agencies and special interest groups, notably the federal

Consumer Products Safety Commission and the Department of Housing and Urban

Development, began to investigate, conduct testing, and issue remediation protocols related to Chinese drywall.

The present litigation commenced with the filing of lawsuits in 2009 in both federal and state courts by property owners and occupants damaged by the Chinese drywall installed in their residences and businesses, in addition to suits filed by some homebuilders who repaired these properties. Defendants and declaratory judgment plaintiffs include homebuilders, developers, installers, retailers, realtors, brokers, suppliers, importers, exporters, and distributors, as well as their insurers and the insurers of homeowners, who were involved with the Chinese drywall in the affected properties. Because of the commonality of facts in the various federal lawsuits, the litigation was designated as Multi-District Litigation 2047 by the Judicial Panel on Multidistrict Litigation. On June 15, 2009, the Panel transferred all federal actions alleging damages from Chinese drywall to the U.S. District for the Eastern District of Louisiana for coordinated and consolidated proceedings.

Since the inception of MDL 2047, numerous cases were consolidated, containing thousands of claims; in addition, the Court issued numerous opinions, pretrial orders, and minute entries; the Court has facilitated mediations; and in the Court thousands of documents have been filed. Additionally, the Court has corresponded and coordinated with a number of state and federal court judges who also preside over related Chinese drywall cases.  The discovery revealed that the manufacturers of the drywall in question generally fell into two groups: the

Knauf entities[1] and the Taishan entities[2]. After one of the Taishan entities was held in preliminary default, the Court conducted a bellwether evidentiary default hearing.  Shortly thereafter, the Court held its first bellwether, bench trial involving the Knauf entities. With regard to these bellwether proceedings, the Court issued detailed findings of fact and conclusions of law, concluding that the Chinese drywall at issue was in fact defective due to its release of corrosive gasses, requiring remediation of properties containing this drywall. The Court also issued a remediation protocol.

An initial settlement was reached in the Knauf portion of the litigation in October 2010, when the PSC and the Knauf entities entered into a Court-approved pilot program for remediation of homes containing drywall manufactured by Knauf. The pilot program led to a broader settlement agreement that extended the pilot program and provided remediation benefits to plaintiffs with filed claims.  On December 11, 2012, the final Knauf-related agreement, labeled, "Third Amended Settlement Agreement Regarding Claims Against the Knauf Defendants In MDL No. 2047" was filed with the Court.  A preliminary approval of the agreement was issued at the time, but no fairness hearing was immediately held and no certification of a proposed class was approved.  Instead, the Court later held a consolidated fairness hearing for the five interrelated settlements: L&W; Banner; INEX; Global; and Knauf. Ultimately, on February 7, 2013, the Court certified a settlement class that included the Knauf entities and notice was published.  The Knauf settlement class provided benefits to participants

---

[1]  The term "Knauf entities" includes: Knauf Plasterboard (Tianjin) Co., Ltd. ("KPT"), Knauf Plasterboard (Wuhu) Co., Ltd., Guangdong Knauf New Building Material Products Co., Ltd., Knauf Gips KG, Gebr. Knauf Verwaltungsgesellschaft KG, Knauf International GmbH, Knauf Insulation GmbH ("KI"), Knauf UK GmbH, Knauf AMF GmbH & Co. KG, Knauf do Brasil Ltda. and PT Knauf Gypsum Indonesia.

[2]  The term "Taishan entities" includes: Taishan Gypsum Co. Ltd. and Taian Taishan Plasterboard Co. Ltd., among others.

limited to remediation.  All other claims were omitted including those claims for personal property, negligence, strict liability, consumer protection acts, nuisance, unjust enrichment, or non-pecuniary claims were settled with the Knauf entities.

### B.  The *Bennett* Class Action.

The original *Bennett* Complaint was filed on November 13, 2014, in the United States District Court for the Northern District of Alabama and was subsequently transferred and consolidated into MDL 2047 via a conditional transfer order issued by the Judicial Panel on Multidistrict Litigation. The Complaint was amended multiple times, primarily to amend the parties.  The Fifth Amended Class Action Complaint was filed on March 6, 2018, and includes the following claims relevant to Alabama plaintiffs: 1) negligence and failure to warn; 2) negligence per se; 3) strict liability; 4) breach of express and/or implied warranty; 5) private nuisance; 6) negligent discharge of a corrosive substance; 7) unjust enrichment; 8) violation of the Alabama Deceptive Trade Practices Act; 9) equitable injunctive relief and medical monitoring.  In the prayer for relief, Plaintiffs seek: compensatory, statutory, and/or punitive damages; pre- and post-judgment interest as allowed by law; injunctive relief; an award of attorney's fees as allowed by law; and award of taxable costs; and, any other relief a court deems just and proper.  On January 27, 2020, this Court issued an order denying class certification and the claims now permissively joined that are asserted by Plaintiffs will proceed individually.

### C.  Plaintiffs  in the *Bennett* Complaint.

Each Plaintiffs named in Defendants' motion owns a property in the State Alabama that contains drywall manufactured by the Knauf Defendants that is alleged to be defective. Plaintiffs' claims were filed in the *Bennett* complaint and all remain in the Fifth Amended Complaint, the last version of the complaint approved by this Court.  Plaintiffs assert all claims

in the Fifth Amendment Complaint based on Alabama law and seek all relief available under current Alabama law.

Plaintiffs each completed a Plaintiff Profile Form that verified the date that the Knauf drywall was discovered and the identity of the manufacturer. Plaintiffs also each completed a Supplemental Plaintiff Profile Form and a Plaintiff Fact Sheet. Defendants have provided the discovery documents submitted by Plaintiffs and Plaintiffs take no issue with the exhibits they provided for the purpose of this motion and its opposition.

## II. STANDARD OF REVIEW

Summary judgment is only warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In making the determination, "all justifiable inferences are to be drawn in [the non-movant's] favor." *Tolan v. Cotton*, 134 S. Ct. 1861, 1863 (2014) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). The movant may argue that "there is an absence of evidence to support the nonmoving party's case," *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986), but "it is never enough simply to state that the non-moving party cannot meet its burden at trial," *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). If the non-moving party provides more than a mere "scintilla of evidence" demonstrating that "the jury could reasonably find for the plaintiff," it will defeat the motion. *Anderson*, 477 U.S. at 252. This can be done by pointing out where the record "contains supporting evidence . . . which was 'overlooked or ignored' by the moving party." *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1116 (11th Cir. 1993) (citing *Celotex*, 477 U.S. at 332 (Brennan, J., dissenting)).

### III. ARGUMENT

In its motion, Defendants suggest that Alabama law requires privity between the parties or an assignment of retained legal claims from a seller who owned the property at the time Knauf's defective drywall was installed in order for Plaintiffs to be able to pursue this type of action. Their legal argument is completely flawed and inapplicable to Plaintiffs' claims in this case. In Alabama, there is no privity requirement or any requirement of an explicit assignment of legal claims from a previous owner. Alabama has no "subsequent purchaser doctrine" or anything remotely close to it and plaintiffs are not required to receive an explicit "personal right to sue" from anyone.

### A. Alabama law requires no privity of contract between plaintiff and a manufacturing defendant in a defective product action.

Defendants argument for summary judgement is flawed when it cites subsequent purchaser rules and privity of contract. In their motion for summary judgment, Defendants rely on *Keck v. Dryvit Systems, Inc.,* 830 So.2d 1 (Ala.2002), where plaintiffs brought numerous claims against a ***contractor*** based on the failure of an artificial stucco siding compound that was not impervious to water, and which allowed moisture to enter and damage their home. The trial Court granted summary judgment, which was affirmed by the Alabama Supreme Court, but that decision has no bearing on the instant case. Here, Plaintiffs have not filed claims against a contractor; they've filed claims against manufacturing defendants. Privity of contract plays no role.

Whereas Louisiana has a subsequent purchaser doctrine that appears to specifically require the assignment of certain rights to a subsequent purchaser, Alabama has no such doctrine. In Alabama, a product liability claim is brought under the Alabama Extended Manufacturing Doctrine (AEMLD). "The AEMLD is a judicially created accommodation of Alabama law to the

doctrine of strict liability for damage or injuries caused by allegedly defective products. " *Keck v. Dryvit Systems, Inc.*, 830 So. 2d 1, 5 (Ala. 2002).  To bring a successful claim under the AEMLD, plaintiff must demonstrate the following:

> (1) A plaintiff must prove he suffered injury or damages to himself or his property by one who sold a product in a defective condition unreasonably dangerous to the plaintiff as the ultimate user or consumer, if (a) the seller was engaged in the business of selling such a product, and (b) it was expected to, and did, reach the user or consumer without substantial change in the condition in which it was sold; (2) Having established the above elements, the plaintiff has proved a *prima facie* case although (a) the seller had exercised all possible care in the preparation and sale of his product, and (b) the user or consumer had not bought the product from, or entered into any contractual relation with, the seller.

*Atkins v. American Motors Corp.,* 335 So.2d 134 (Ala 1976).

Plaintiffs may rely on the AEMLD when asserting claims for both personal and economic damages. The Alabama Supreme Court has also clearly stated that AEMLD is a stand-alone tort, separate from the common-law action for negligence, rather than a manner of proving negligence. *Tuscumbia City Sch. Sys. v. Pharmacia Corp.*, 871 F. Supp. 2d 1241, 1249 (N.D. Ala. 2012).  The AEMLD does not subsume other tort claims.

Under the AEMLD a product is defined as an item that is attached or incorporated into real property that one would reasonably expect to repair or to replace during the useful life of the realty, *Keck v. Dryvit Systems, Inc.*, 830 So. 2d 1, 6 (Ala. 2002).  Clearly, sheetrock or drywall falls into the definition of "product" under Alabama law.  Moreover, the defendants have declared on the record that they will stipulate to liability for the damages cause by their defective "product."

The Alabama Supreme Court has also defined the meaning of "sale" for the purpose of evaluating an AEMLD claim.  Liability under the AEMLD is not limited to situations where a

formal sale has occurred.  *See First National Bank of Mobile v. Cessna Aircraft*, 365 So.2d 966, 968 (Ala. 1978); see also *Cain v. Sherton Perimeter Park South Hotel*, 592 So. 2d 218 (Ala. 1991) (holding that free oysters offered in hotel lounge were a "sale").  A manufacturer, supplier or seller is subject to liability once the defective products is put "into the stream of commerce." *See Cessna Aircraft Co.*, 365 So. 2d at 968.  According to the stream of commerce doctrine, AEMLD liability can arise with respect to products at any point in the chain of distribution.

**B.  The Defective nature of Knauf's Chinese-manufactured drywall allows Plaintiffs to bring defective product claims under the AEMLD and traditional tort claims due to the economic losses that result.**

The most famous case in the field of products liability, was *Greenman v. Yuba Power Products*, 377 P.2d 897 (Cal. 1963). In *Greenman*, the plaintiff filed negligence and breach of warranty claims against the manufacturer of a piece of equipment. After a jury verdict in the plaintiff's favor, Justice Traynor of the California Supreme Court noted that the defendant's culpability was not implied "by an agreement but imposed by law, and the refusal to permit the manufacturer to define the scope of its own responsibility for defective products make clear that the liability is not one governed by the law of contract warranties or negligence but by the law of strict liability in tort." *Id*. at 901.

Following *Greenman*, the Alabama Supreme Court opted to adapt the existing negligence-based concepts of liability found in the "manufacturer's liability doctrine" into a separate legal theory that eventually came to be known as the Alabama Extended Manufacturer's Liability Doctrine (AEMLD). First articulated in *Casrell* as the "extended manufacturer's liability doctrine," this theory was actually a hybrid version of strict liability. *Casrell v. Altec Industries, Inc*., 335 So. 2d 128, 132 (Ala. 1976).  The newly created extended manufacturer's liability doctrine applies to suppliers and sellers that were in any way associated with the injury producing product. *Id*.

As Early as 1921 the Alabama Supreme Court acknowledged an exception to the traditional requirement for showing privity of contract between a defendant and a plaintiff "where the thing causing the injury is of an obnoxious or dangerous character." *Jones v. Gulf States Steel Co.,* 205 Ala. 291, 88 So. 21, 22 (1921). In *Tuscumbia City Sch. Sys. v. Pharmacia Corp.*, 871 F. Supp. 2d 1241, 1251 (N.D. Ala. 2012), the court cited a prior ruling by the Alabama Supreme Court which addressed the treatment of claims involving hazardous material, indicating that the injured party can pursue claims against the manufacturer. ("If the product in question, although not inherently or imminently dangerous in itself, becomes so when applied to its intended use in the usual and customary manner, and an injury is sustained as the natural and proximate result of the use of that article, then the manufacturer is liable to the user. *Defore v. Bourjois, Inc.,* 268 Ala. 228, 105 So.2d 846 (1958).  In *Harris v. Board of Water and Sewer Commissioners of City of Mobile,*294 Ala. 606, 320 So.2d 624 (1975), the Alabama Supreme Court held that a plaintiff may recover in negligence for property damages caused by an inherently dangerous product. This was further clarified in *Tuscumbia City Sch. Sys. v. Pharmacia Corp.*, in a discussion of the Economic Loss Rule (ELR), which Alabama adopted in 1989:

> In Alabama, a products-liability plaintiff cannot recover for the damage to, or destruction of, the defective product itself under the so-called "economic loss rule." *See Lloyd Wood Coal Co. v. Clark Equipment Co.,*543 So.2d 671, 672 (Ala.1989) (citing *East River S.S. Corp. v. Transamerica Delaval, Inc.,*476 U.S. 858, 106 S.Ct. 2295, 90 L.Ed.2d 865 (1986)). The purpose of the economic loss rule is to prevent contract law from being swallowed by tort remedies. Contract remedies and warranty claims are the proper means to resolve the problems arising from products that fail to perform, either at all or as warranted. *See id.* at 673–74 (quoting *East River* at length). The justification for the economic loss rule fades when the product must be replaced or repaired, not because the product failed to perform, but because it is dangerous.

*Tuscumbia City Sch. Sys. v. Pharmacia Corp.*, 871 F. Supp. 2d 1241, 1252 (N.D. Ala. 2012).

In earlier rulings by this Court, the drywall manufactured by Defendants has been found to be a hazardous material, inflicting extensive property damage to the structures that it was installed in, as well as extensive economic loss to the property owners. Courts have also ruled that the defendant's product posed a latent defect that is not obvious to anyone but a trained inspector. In *Tuscumbia City Sch. Sys. The trial* Court reviewed the ELR in the context of MDL 2047:

> A recent decision of the United States District Court for the Eastern District of Louisiana discussed the applicability of the Alabama economic loss rule to a set of facts similar to those alleged by the plaintiff in this case, and by the Huntsville Board of Education in the state-court case attached as Exhibit "A." *In re Chinese Manufactured Drywall Products Liability Litigation,* 680 F.Supp.2d 780 (E.D.La.2010). That case arose in the aftermath of Hurricanes Katrina and Rita. *Id.* at 782. The massive rebuilding efforts in the Gulf region put a strain on the nation's supply of construction materials, and some contractors turned to Chinese drywall suppliers. *Id.* The owners of homes containing drywall manufactured in China began to complain of emission of odors and corrosion of household appliances. *Id.* Others experienced "headaches, nosebleeds, difficulty breathing and other physical afflictions believed to be caused by the Chinese drywall." *Id.* The homeowners brought suit against the builders who installed the Chinese drywall, the manufacturers thereof, and a host of others involved in the process of exposing them to the drywall. *Id.* The court denied a motion to dismiss, brought under the economic loss rule, and provided a helpful explanation of that rule.

*Tuscumbia City Sch. Sys. v. Pharmacia Corp.*, 871 F. Supp. 2d 1241, 1252-53 (N.D. Ala. 2012).

The economic loss damages claimed by Plaintiffs in this case are not only a consequence of a "defect" in the product that renders it unusable, but rather because of the *inherently hazardous nature* of the dry wall product necessitates the removal from its properties. Plaintiffs' claims, like those of the plaintiffs in the *Chinese Manufactured Drywall* are based in the

contamination of buildings constructed with materials containing a hazardous substance. Thus, they are not subject to the limitations contained in the economic loss rule.

The hazardous nature of Defendants' drywall product easily distinguishes the facts here from those in *Keck,* the case relied on by Defendants, which involved only ineffective home construction with claims against the contractor of the home, not the manufacturer. Here, although Plaintiffs' damages can be categorized as "economic losses," the damages are not just to the products themselves. The inspection, replacement, Loss of use and enjoyment, temporary living expenses, and remediation costs plaintiff seeks to recover stem from the hazardous nature of the products, not their inability to perform as advertised. Therefore, as negligence claims, no privity or foreseeability is required for plaintiff to recover against defendant under Alabama law.

### C. "Law of the situs" rule requires this Court to apply Alabama law to claims involving Alabama real property.

Defendants have suggested that this Court should apply Louisiana law to properties located in Alabama. They've provided no support for this "choice of law" theory they're now promoting. "Generally accepted choice of law principles hold that issues regarding real property are governed by the state in which the property is located." *(citations omitted)* *In re Beveridge*, 416 B.R. 552, 571 (Bankr. N.D. Tex. 2009) (citattions omitted).

Defendants' call for the application of Louisiana law when deciding issues regarding real property whose situs is in a jurisdiction other than Louisiana is due to be wholly rejected by this Court. With respect to real property, the "law of the situs" rule is settled and widely accepted by the federal circuits and Defendants have failed to provide this Court with any authority in support of their suggestion that this Court should apply non-situs law when dealing with real

property, even when choice of law provisions are included in a contract. A Texas case decided in 2014 provided us with the following:

> Indeed, with respect to real property, the "law of the situs rule is so ingrained in the common law" that there are very few reported decisions dealing with a contract that calls for the application of a foreign (non-situs) law. *Santander Bank, Nat'l Ass'n v. Sturgis*, 2013 WL 6046012, at *6 (D. Mass. Nov. 13, 2013).

*Monge v. Rojas (In re Monge)*, No. 09-30881-hcm, at *112 (Bankr. W.D. Tex. Sep. 5, 2014).

Defendants have provided no authority whatsoever to persuade this Court to deviate from the application of Alabama law to real property located in that state. The controlling case law is clear – Alabama law applies to Alabama property.

## IV.   CONCLUSION

In order for Defendants to prevail in this summary judgment challenge, they must be able to establish that no genuine issue of material fact exists after this court views all evidence and arguments in a light most favorable to the non-moving party, in this case Plaintiffs.  The legal argument offered by Defendants does not foreclose or even suggest that Alabama has the same requirements as Louisiana for Plaintiffs to bring this action.  Plaintiffs are not required to be in privity of contract with manufacturing defendants; Plaintiffs are not required to receive an assignment of a legal claim from anyone, including a previous home owner; and, Alabama law provides for strict liability claims under the AEMLD, as well as traditional state tort law claims for defective products for anyone injured when a product is placed into the stream of commerce that causes injury.  For these reasons, Defendants' Motion for Summary Judgment should be denied.

/s/ *James V. Doyle, Jr.*

James V. Doyle, Jr.
DOYLE LAW FIRM, PC
2100 Southbridge Pkwy., Suite 650
Birmingham, AL 35209
Tele: 205-533-9500
Fax: 844-638-5812
jimmy@doylefirm.com

*Attorney for Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the above and foregoing Plaintiffs ' Opposition to Defendant Knauf's Omnibus Motion for Summary Judgment has been served on Plaintiffs' Liaison Counsel, Russ Herman, and Defendants' Liaison Counsel, Kerry Miller, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047, on this 9th day of April, 2020.

/s/ *James V. Doyle, Jr.*

James V. Doyle, Jr.
DOYLE LAW FIRM, PC