UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL NO. 2047<br><br>SECTION: L |
| THIS DOCUMENT RELATES TO:<br><br>*Elizabeth Bennett, et al. v. Gebrueder Knauf Verwaltungsgesellschaft, KG, et al.*<br>2:14-cv-02722-EEF-JCW | JUDGE ELDON FALLON<br><br>MAG. JUDGE WILKINSON |

PLAINTIFFS' OPPOSITION TO DEFENDANT KNAUF'S OMNIBUS MOTION FOR SUMMARY JUDGMENT OF CLAIMS ASSERTED BY MARTIN KUNTZ; SHONA BLONSKY; KENNETH BUTCHER; MARFELIA CALDERON; ABIGAIL COHEN; ELVIS FERRERA; MARK FLOMAN; SANTIAGO GUZMAN; NEVILLE MARQUES; JULIO MARTINEZ; JOSEPH NIEMIEC AND SUSAN NIEMIEC; YVETTE PRICE; AMRITA ROOPCHAND AND RENNIE ROOPCHAND; RUBEN DAPENA O.B.O. BACO ANNETTA, LLC; ROSE RUSSO; JESSICA STOCKTON; ALBERT TIMMONS; SUZANNE TOLLIVER; <u>ALIESKY SANTIAGO; AND KARMA ZELENENKI</u>

**Table of Contents**

**Page**

I.   STATEMENT OF MATERIAL FACTS…………………………..………… 1

    A.   MDL-2047…………………………………………………………. 1

    B.   The *Bennett* Class Action …………………...………………………... 4

    C.   Plaintiffs in the *Bennett* Complaint …………………………………… 4

II.  STANDARD OF REVIEW…………………………………………….…… 5

III. ARGUMENT………………………………………………………………… 6

    A.   Florida does not recognize a "subsequent purchaser doctrine" and does not require a contractual relationship with a previous homeowner or a manufacturer to bring a defective product action…   6

    B.   Florida's continuing tort doctrine allows Plaintiffs to seek damages for the ongoing damage to their homes and personal property…….   9

    C.   "Law of the situs" rule requires this Court to apply Florida law to claims involving Florida real property………………………………   10

IV.  CONCLUSION……………………………………………………………… 12

# Table of Authorities

| **Cases** | **Page** |
|---|---|
| *Affiliates for Evaluation and Therapy, Inc. v. Viasyn Corp.*,<br>500 So.2d 688 (Fla.3d DCA 1987) | 7 |
| *Anderson v. Liberty Lobby, Inc.*,<br>477 U.S. 242 (1986) | 5 |
| *Arce v. Garcia*,<br>434 F.3d 1254 (11th Cir. 2006) | 10 |
| *Celotex Corp. v. Catrett*,<br>477 U.S. 317 (1986) | 5 |
| *Clark v. Coats & Clark, Inc.*,<br>929 F.2d 604 (11th Cir. 1991) | 5 |
| *Durrance v. Horner*,<br>711 So.2d 135 (Fla. Dist. Ct. App. 1998) | 8 |
| *Fitzpatrick v. City of Atlanta*,<br>2 F.3d 1112 (11th Cir. 1993) | 5 |
| *Ginsberg v. Lennar Florida Holdings, Inc.*,<br>645 So.2d 490 (Fla. 3d DCA 1994) | 8 |
| *Grupo Televisa, S.A. v. Telemundo Commc'ns Grp., Inc.*,<br>485 F.3d 1233 (11th Cir. 2007) | 11 |
| *Hipp v. Liberty Nat'l Life Ins. Co.,*<br>252 F.3d 1208 (11th Cir. 2001) | 10 |
| *In re Conagra Peanut Butter Prods. Liab. Litig.*,<br>251 F.R.D. 689 (N.D.Ga. 2008). | 11 |
| *In re Managed Care Litig.*,<br>298 F.Supp.2d 1259 (S.D. Fla. 2003) | 11 |
| *In re Takata Airbag Prods. Liab. Litig.* ,<br>193 F.Supp.3d 1324 (S.D.Fla. 2016) | 11 |
| *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prods. Liab. Litig.*,<br>785 F.Supp.2d 925 (C.D. Cal. 2011) | 11 |

*Kramer v. Piper Aircraft Corp.*,                                                      7
    520 So.2d 37, 13 Fla. L. Weekly 87 (Fla. 1988)

*Llano Fin. Grp.., LLC v. Ammons*,                                                     8
    3:16-CV-627/MCR/CJK, 2017 WL 759621
    (N.D. Fla. June 15, 2017)

*Lovett v. Ray*,                                                                       10
    327 F.3d 1181 (11th Cir. 2003)

*Mattes v. Coca Cola Bottling Co. of Miami, Fla.*,                                     9
    311 So.2d 417 (4th D.C.A.Fla.1974)

*Monge v. Rojas (In re Monge)*,                                                        11
    No. 09-30881-hcm (Bankr. W.D. Tex. Sep. 5, 2014)

*Pearson v. Ford Motor Co.,*                                                           9
    694 So. 2d 61 (Fla. Dist. Ct. App. 1997)

*Santander Bank, Nat'l Ass'n v. Sturgis*,                                              10
    2013 WL 6046012 (D. Mass. Nov. 13, 2013)

*Tolan v. Cotton*,                                                                     5
    134 S. Ct. 1861 (2014)

*Van Dusen v. Barrack*,                                                                11
    376 U.S. 612, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964)

*West v. Caterpiller Tractor Co.*,                                                     7
    336 So.2d 80 (Fla. 1976)

## **Other**

Fed. R. Civ. P. 56(a)                                                                  5
15 U.S.C. § 2064                                                                       9
28 U.S.C. § 1407                                                                       11
Fla. Stat. §768.81                                                                     8

Plaintiffs Martin Kuntz, Shona Blonsky, Kenneth Butcher, Marfelia Calderon, Abigail

Cohen, Elvis Ferrera, Mark Floman, Santiago Guzman, Neville Marques, Julio Martinez, Joseph

Niemiec and Susan Niemiec, Yvette Price, Amrita Roopchand and Rennie Roopchand, Ruben

Dapena o.b.o. Baco Annetta, LLC, Rose Russo, Jessica Stockton, Albert Timmons, Suzanne

Tolliver, Aliesky Santiago, and Karma Zelenenki (herein "Plaintiffs" or "Plaintiff"), by and

through the undersigned counsel of record, oppose the motion for summary judgment (Doc.

22688) filed by the Knauf Defendants.  As grounds, Plaintiffs offer the following:

I.    STATEMENT OF MATERIAL FACTS

    A.  MDL-2047.

    This litigation arises from alleged property damage and caused by the presence of

Chinese drywall in homes and other buildings. Hurricanes Katrina and Rita devastated the Gulf

Coast in 2005. These disasters, coinciding as they did with a boom in new housing construction,

helped precipitate a shortage of drywall for the construction and reconstruction of homes in the

United States. As a result, from approximately 2005 to 2008, Chinese drywall entered the United

States market, changing hands in the chain of commerce, and ultimately finding its way into

thousands of homes and buildings in the United States, primarily in Florida, Louisiana, Alabama,

Mississippi, Texas, and Virginia.  Sometime after the installation of Chinese drywall in these

properties, homeowners, residents, and occupants began to notice and complain of odd odors,

corrosion of metal components, failure of electronics and appliances, and in some cases, physical

ailments, such as nose bleeds, skin irritation, and respiratory problems. In response to these

complaints, a number of governmental agencies and special interest groups, notably the federal

Consumer Products Safety Commission and the Department of Housing and Urban

Development, began to investigate, conduct testing, and issue remediation protocols related to Chinese drywall.

The present litigation commenced with the filing of lawsuits in 2009 in both federal and state courts by property owners and occupants damaged by the Chinese drywall installed in their residences and businesses, in addition to suits filed by some homebuilders who repaired these properties. Defendants and declaratory judgment plaintiffs include homebuilders, developers, installers, retailers, realtors, brokers, suppliers, importers, exporters, and distributors, as well as their insurers and the insurers of homeowners, who were involved with the Chinese drywall in the affected properties. Because of the commonality of facts in the various federal lawsuits, the litigation was designated as Multi-District Litigation 2047 by the Judicial Panel on Multidistrict Litigation. On June 15, 2009, the Panel transferred all federal actions alleging damages from Chinese drywall to the U.S. District for the Eastern District of Louisiana for coordinated and consolidated proceedings.

Since the inception of MDL 2047, numerous cases were consolidated, containing thousands of claims; in addition, the Court issued numerous opinions, pretrial orders, and minute entries; the Court has facilitated mediations; and in the Court thousands of documents have been filed. Additionally, the Court has corresponded and coordinated with a number of state and federal court judges who also preside over related Chinese drywall cases.  The discovery revealed that the manufacturers of the drywall in question generally fell into two groups: the

Knauf entities[1] and the Taishan entities[2]. After one of the Taishan entities was held in

preliminary default, the Court conducted a bellwether evidentiary default hearing.  Shortly

thereafter, the Court held its first bellwether, bench trial involving the Knauf entities. With

regard to these bellwether proceedings, the Court issued detailed findings of fact and conclusions

of law, concluding that the Chinese drywall at issue was in fact defective due to its release of

corrosive gasses, requiring remediation of properties containing this drywall. The Court also

issued a remediation protocol.

An initial settlement was reached in the Knauf portion of the litigation in October 2010,

when the PSC and the Knauf entities entered into a Court-approved pilot program for

remediation of homes containing drywall manufactured by Knauf. The pilot program led to a

broader settlement agreement that extended the pilot program and provided remediation benefits

to plaintiffs with filed claims.  On December 11, 2012, the final Knauf-related agreement,

labeled, "Third Amended Settlement Agreement Regarding Claims Against the Knauf

Defendants In MDL No. 2047" was filed with the Court.  A preliminary approval of the

agreement was issued at the time, but no fairness hearing was immediately held and no

certification of a proposed class was approved.  Instead, the Court later held a consolidated

fairness hearing for the five interrelated settlements: L&W; Banner; INEX; Global; and Knauf.

Ultimately, on February 7, 2013, the Court certified a settlement class that included the Knauf

entities and notice was published.  The Knauf settlement class provided benefits to participants

---

[1]  The term "Knauf entities" includes: Knauf Plasterboard (Tianjin) Co., Ltd. ("KPT"), Knauf
Plasterboard (Wuhu) Co., Ltd., Guangdong Knauf New Building Material Products Co., Ltd., Knauf Gips
KG, Gebr. Knauf Verwaltungsgesellschaft KG, Knauf International GmbH, Knauf Insulation GmbH
("KI"), Knauf UK GmbH, Knauf AMF GmbH & Co. KG, Knauf do Brasil Ltda. and PT Knauf Gypsum
Indonesia.

[2]  The term "Taishan entities" includes: Taishan Gypsum Co. Ltd. and Taian Taishan Plasterboard
Co. Ltd., among others.

limited to remediation.  All other claims were omitted including those claims for personal property, negligence, strict liability, consumer protection acts, nuisance, unjust enrichment, or non-pecuniary claims were settled with the Knauf entities.

### B.  The *Bennett* Class Action.

The original *Bennett* Complaint was filed on November 13, 2014, in the United States District Court for the Northern District of Alabama and was subsequently transferred and consolidated into MDL 2047 via a conditional transfer order issued by the Judicial Panel on Multidistrict Litigation. The Complaint was amended multiple times, primarily to amend the parties.  The Fifth Amended Class Action Complaint was filed on March 6, 2018, and includes the following claims relevant to Alabama plaintiffs: 1) negligence and failure to warn; 2) negligence per se; 3) strict liability; 4) breach of express and/or implied warranty; 5) private nuisance; 6) negligent discharge of a corrosive substance; 7) unjust enrichment; 8) violation of the Florida Deceptive and Unfair Trade Practices Act; 9) equitable injunctive relief and medical monitoring.  In the prayer for relief, Plaintiffs seek: compensatory, statutory, and/or punitive damages; pre- and post-judgment interest as allowed by law; injunctive relief; an award of attorney's fees as allowed by law; and award of taxable costs; and, any other relief a court deems just and proper.  On January 27, 2020, this Court issued an order denying class certification and the claims now permissively joined that are asserted by Plaintiffs will proceed individually.

### C.  Plaintiffs  in the *Bennett* Complaint.

Each Plaintiffs named in Defendants' motion owns a property in the State Florida that contains drywall manufactured by the Knauf Defendants that is alleged to be defective. Plaintiffs' claims were filed in the *Bennett* complaint and all remain in the Fifth Amended Complaint, the last version of the complaint approved by this Court.  Plaintiffs assert all claims

in the Fifth Amendment Complaint based on Alabama law and seek all relief available under current Alabama law.

Plaintiffs each completed a Plaintiff Profile Form that verified the date that the Knauf drywall was discovered and the identity of the manufacturer.  Plaintiffs also each completed a Supplemental Plaintiff Profile Form and a Plaintiff Fact Sheet.  Defendants have provided the discovery documents submitted by Plaintiffs and Plaintiffs take no issue with the exhibits they provided for the purpose of this motion and its opposition.

## II. STANDARD OF REVIEW

Summary judgment is only warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In making the determination, "all justifiable inferences are to be drawn in [the non-movant's] favor." *Tolan v. Cotton*, 134 S. Ct. 1861, 1863 (2014) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). The movant may argue that "there is an absence of evidence to support the nonmoving party's case," *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986), but "it is never enough simply to state that the non-moving party cannot meet its burden at trial," *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). If the non-moving party provides more than a mere "scintilla of evidence" demonstrating that "the jury could reasonably find for the plaintiff," it will defeat the motion. *Anderson*, 477 U.S. at 252. This can be done by pointing out where the record "contains supporting evidence . . . which was 'overlooked or ignored' by the moving party." *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1116 (11th Cir. 1993) (citing *Celotex*, 477 U.S. at 332 (Brennan, J., dissenting)).

### III.   ARGUMENT

In its motion, Defendants suggest that Florida law requires privity between the parties or an assignment of retained legal claims from a seller who owned the property at the time Knauf's defective drywall was installed in order for Plaintiffs to be able to pursue the claims in this action.  Their legal argument is inapplicable to Plaintiffs' claims in this case and the case law they've provided does not foreclose the claims asserted by Plaintiffs in this Complaint.  In Florida, there is no privity requirement or any requirement of an explicit assignment of legal claims from a previous owner for strict liability or property damage claims related to a product that is emitting a corrosive substance on a continuing basis.  Florida has no requirement that a purchaser receive an explicit "personal right to sue" to bring the defective product claims contained in this Complaint.

**A.     Florida does not recognize a "subsequent purchaser doctrine" and does not require a contractual relationship with a previous homeowner or a manufacturer to bring a defective product action.**

The thrust of Defendants' argument for summary judgment is that each Plaintiff named in the current motion is a Florida homeowner that purchased their home after the Chinese drywall was installed; therefore, each Plaintiff must receive an explicit assignment of a right to sue the Defendants.  This theory is simply incorrect under Florida law.

Each Plaintiff named herein purchased their respective home without knowledge that it contained defective Chinese-manufactured drywall in it.  The presence of the defective drywall is a latent defect that can only be identified by someone with expertise, as it is not apparent to the ordinary senses.  Defendants' Chinese drywall is a defective product that produces corrosive gasses that is <u>continuing</u> to this day for those who have not self-remediated.  Plaintiffs have alleged a continuing tort in their Complaint (See Complaint, Page 10, ¶ 31).

Defendants have produced the deeds and Supplemental Plaintiff Profile Forms (SPPF) for each Plaintiff named as an exhibit to their motion.  Within Section II of the SPPF, the Court will be able to identify both the date of purchase and the date that each discovered the defective Knauf drywall in their respective homes.  In each instance, Plaintiff discovered the defective drywall after purchase.  This fact is not in dispute.  It is also not in dispute that the defective drywall remains in their home and continues to emit corrosive gasses. Plaintiffs have pled a number of different legal claims in the Complaint as the basis for recovery of damages related to the injuries they've sustained.  Strict product liability is one of the claims.

Strict liability in a defective product case was established in 1976 by the Florida Supreme Court.  *See West v. Caterpiller Tractor Co*., 336 So.2d 80 (Fla. 1976).  In 1988, the Florida Supreme Court clarified the adoption of the strict liability doctrine, stating "that this Court in *West* abolished the no-privity, breach of implied warranty cause of action for personal injury upon its adoption of the doctrine of strict liability in tort."  *Kramer v. Piper Aircraft Corp*., 520 So.2d 37, 39, 13 Fla. L. Weekly 87 (Fla. 1988).  The *Kramer* court also affirmed the interpretation and clarification of *West* as follows:

> The *West* court fundamentally altered products liability law in Florida by creating a new products liability tort action--strict liability in tort--out of the prior breach of implied warranty cases which had done away with privity of contract. In so doing, *West* necessarily swept away such no-privity, breach of implied warranty cases in favor of the new action of strict liability in tort. Stated differently, the doctrine of strict liability in tort supplants all no-privity, breach of implied warranty cases, because it was, in effect, created out of these cases. This ground-breaking holding, however, did not result in the demise of the contract action of breach of implied warranty, as that action remains, said the *West* court, where privity of contract is shown.

*Kramer v. Piper Aircraft Corp*., 520 So.2d 37, 39, 13 Fla. L. Weekly 87 (Fla. 1988); *citing Affiliates for Evaluation and Therapy, Inc. v. Viasyn Corp*., 500 So.2d 688, 692 (Fla.3d DCA 1987).

Florida has codified that a "product liability action" is, "a civil action based upon a theory of strict liability, negligence, breach of warranty, nuisance, or similar theories for damages caused by the ***manufacture***, construction, design, formulation, installation, preparation, or assembly of a product. See Fla. Stat. §768.81 (emphasis added).  The substance of an action, not the conclusory terms used by a party, determines whether an action is a products liability action. *Id*.  Florida's strict liability law does not require assignment of any rights; where a product causes an injury after it is placed into the stream of commerce, the responsible party (i.e., the manufacturing defendants in this instance) may be sued under a theory of strict liability.

Defendants rely on the *Ammons*[3] and *Ginsberg*[4] cases to suggest that Florida recognizes a "Subsequent Purchaser Doctrine" that is similar to Louisiana law.  The quote from *Ginsberg* that they rely upon states, "[i]n order to pursue a cause of action the subsequent purchaser of the property must allege that they became owner of the property ***after the damage was done*** and 'that by assignment, he became possessed of all rights and causes of action which the original owners possessed.'" *Ginsberg*, 645 So.2d at 496 (emphasis added).  "[A]fter the damage was done" is the critical flaw in their argument.  Plaintiffs do not seek any damages for injury that was suffered by a previous owner.  Nothing in the Complaint suggests that Plaintiffs are seeking to recover any damages that might be due to a prior owner.  They're not seeking to enforce a mortgage assignment like *Ginsberg* and they're certainly not making a claim for dirt piled on a fence like *Durrance*[5].  Plaintiffs seek damages for the injuries they've suffered due to the defective product found in their home that continues to off-gas a corrosive substance.

---

[3] *Llano Fin. Grp.., LLC v. Ammons*, 3:16-CV-627/MCR/CJK, 2017 WL 759621, at *2 (N.D. Fla. June 15, 2017).
[4] *Ginsberg v. Lennar Florida Holdings, Inc*., 645 So.2d 490, 496 (Fla. 3d DCA 1994).
[5] *Durrance v. Horner*, 711 So.2d 135 (Fla. Dist. Ct. App. 1998).

Defendants have provided no authority that would require Plaintiffs to be in privity for a

strict liability claim in tort, because Florida law specifically rejects such a proposition.  "In a

products liability case, an injured plaintiff ought to be permitted recovery against the

manufacturer for defective products on the theory of strict liability in tort regardless of whether

the plaintiff is a consumer, user or bystander. . . . The requirement of privity and the fiction of

implied warranty ought to be laid to rest unceremoniously and supplanted by the concept of strict

liability in tort."  *Mattes v. Coca Cola Bottling Co. of Miami, Fla*., 311 So.2d 417 (4th

D.C.A.Fla.1974).

**B.      Florida's continuing tort doctrine allows Plaintiffs to seek damages for the ongoing damage to their homes and personal property.**

Plaintiffs have alleged a continuing tort in the Fifth Amended Complaint that is now the

operative pleading in this action.  Plaintiffs have also defended previous summary judgment

motions involving some of these same plaintiffs, providing this Court with the Florida authority

establishing Defendant Knauf's duty to warn both at the time of sale, as well as their post-sale

duty to warn all homeowners that may have received their defective gypsum board (aka,

"drywall").  There is also a requirement of federal law that companies operating in the United

States of America report product defects to the Consumer Product Safety Commission. 15 U.S.C.

§ 2064.  Because the Knauf Defendants have never notified the Consumer Product Safety

Commission regarding their defective product, issued a product recall, or have notified any

homeowner regarding the potential for their home having defective drywall, and because the

Knauf Defendants have taken action to intentionally conceal the defective nature of their product

from consumers, the effect of their tortious conduct continues to this very day.

Florida recognizes the continuing torts doctrine. *Pearson v. Ford Motor Co.,* 694 So. 2d

61, 68 (Fla. Dist. Ct. App. 1997). Under this doctrine, the limitations period runs to the date the

tortious conduct ceases. *Id.* If the plaintiff has alleged some continuing conduct on the part of the defendants, ***a jury must decide whether a continuing tort has occurred***. *Id.* (emphasis added).

Despite Florida's four-year statute of limitations, the continuing violation doctrine allows a plaintiff to bring an otherwise time-barred claim when additional violations of law occur within the statutory period. *See Hipp v. Liberty Nat'l Life Ins. Co.,* 252 F.3d 1208, 1221 (11th Cir. 2001). "The critical distinction in the continuing violation analysis is whether the plaintiff complains of the present consequence of a one-time violation, which does not extend the limitations period, or the continuation of that violation into the present, which does." *Lovett v. Ray*, 327 F.3d 1181, 1183 (11th Cir. 2003) (quotation and alteration omitted). The doctrine of equitable tolling also extends the statute of limitations if "extraordinary circumstances" prevent the plaintiff from filing within the statutory window. *Arce v. Garcia*, 434 F.3d 1254, 1261(11th Cir. 2006). Equitable tolling is sparingly applied and is only appropriate if the "extraordinary circumstances" are beyond the plaintiff's control and unavoidable even with diligence. *Id*. Although not directly on point for this particular opposition to prevail over Defendant Knauf's summary judgment motion, it is worth noting that due to Defendant Knauf's ongoing, continuing tortious conduct and intentional concealment of the defective nature of their product, every homeowner in Florida remains within the statutory period for filing a claim if the defective Knauf product is found in their home.  But, for the purpose of opposing this summary judgment motion, Plaintiffs' complaint sufficiently alleges a continuing tort that Florida law makes clear is a jury issue.

**C.     "Law of the situs" rule requires this Court to apply Florida law to claims involving Florida real property.**

Defendants have suggested that this Court should apply Louisiana law to properties located in Florida.  Defendants claim that Florida law is "virtually identical" to Louisiana.  With

respect to real property, the "law of the situs" rule is settled and widely accepted by the federal

circuits and Defendants have failed to provide this Court with any authority in support of their

suggestion that this Court should apply non-situs law when dealing with real property. A Texas

case decided in 2014 provided us with the following:

> Indeed, with respect to real property, the "law of the situs rule is so ingrained in the common law" that there are very few reported decisions dealing with a contract that calls for the application of a foreign (non-situs) law. *Santander Bank, Nat'l Ass'n v. Sturgis*, 2013 WL 6046012, at *6 (D. Mass. Nov. 13, 2013).

*Monge v. Rojas (In re Monge)*, No. 09-30881-hcm, at *112 (Bankr. W.D. Tex. Sep. 5, 2014).

MDL courts must follow the law of situs rule too. This very issue was decided in the

Southern District of Florida recently:

> Generally, a federal court hearing state law claims applies the choice of law rules of the forum state. *Grupo Televisa, S.A. v. Telemundo Commc'ns Grp., Inc.*, 485 F.3d 1233, 1240 (11th Cir. 2007). However, "[i]n cases transferred pursuant to 28 U.S.C. § 1407, the transferee district court must apply the state law, including its choice of law rules, that would have been applied had there been no change of venue." *In re Managed Care Litig.*, 298 F.Supp.2d 1259, 1296 (S.D. Fla. 2003); *Van Dusen v. Barrack*, 376 U.S. 612, 639, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964); *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prods. Liab. Litig.*, 785 F.Supp.2d 925, 931 (C.D. Cal. 2011). Accordingly, "all states in which the transferor court of an individual action sits are considered forum states, and an independent choice of law determination is necessary for the states of all transferor courts." *In re Conagra Peanut Butter Prods. Liab. Litig.*, 251 F.R.D. 689, 693 (N.D.Ga. 2008).

*In re Takata Airbag Prods. Liab. Litig.* , 193 F.Supp.3d 1324, 1332 (S.D.Fla. 2016).

Defendants have provided no authority to cause this Court to deviate from the application

of Florida law to real property located in that state. The controlling case law is clear – Florida

law applies to Florida property.

## IV.   CONCLUSION

In order for Defendants to be granted summary judgment, they must be able to establish that no genuine issue of material fact exists after this court views all evidence and arguments in a light most favorable to the non-moving party, in this case Plaintiffs.  Defendants' argument does not foreclose or even suggest that Florida has the same requirements as Louisiana for Plaintiffs to bring this action.  Plaintiffs are not required to be in privity of contract with prior home owners or manufacturing defendants for claims and damages available to them under Florida law; Plaintiffs are not required to receive an assignment of a legal claim from anyone, including a previous home owner where a continuing tort exists; and, Florida law provides for strict liability claims to be filed for defective product claims, as well as traditional state tort law claims for defective products for anyone injured when a product is placed into the stream of commerce that causes injury.  For these reasons, Defendants' Motion for Summary Judgment should be denied.

/s/ *James V. Doyle, Jr.*

James V. Doyle, Jr.
DOYLE LAW FIRM, PC
2100 Southbridge Pkwy., Suite 650
Birmingham, AL 35209
Tele: 205-533-9500
Fax: 844-638-5812
jimmy@doylefirm.com

*Attorney for Plaintiff*

12

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing Plaintiffs ' Opposition to Defendant Knauf's Omnibus Motion for Summary Judgment has been served on Plaintiffs' Liaison Counsel, Russ Herman, and Defendants' Liaison Counsel, Kerry Miller, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047, on this 13th day of April, 2020.

/s/ *James V. Doyle, Jr.*

James V. Doyle, Jr.
DOYLE LAW FIRM, PC

13