# EXHIBIT 7

## **REPAIR AND REMEDIATION AGREEMENT**

THIS REPAIR AND REMEDIATION AGREEMENT ("Agreement") is made and entered into as of the Effective Date by and between the undersigned Builder and Homeowner(s).

### **Background**

A. Homeowner is the owner of a residence sold and/or constructed by Builder located at the address set forth below Homeowner's signature ("Residence");

B. Subsequent to the original closing on the Residence, the parties discovered that the independent drywall contractors retained by Builder to install drywall in the Residence ("Drywall Contractors") installed defective drywall ("Defective Drywall") obtained from one or more suppliers, distributors, and/or manufacturers, which Defective Drywall has damaged property within the Residence other than the Defective Drywall ("Other Property"); and

C. Builder has agreed to remove the Defective Drywall, remediate the Residence and repair damage caused thereby in accordance with the terms and conditions set forth herein.

### **Terms**

IN CONSIDERATION of the mutual covenants of the parties contained herein, Builder and Homeowner agree as follows:

1. <u>Scope of Repair and Remediation</u>. Builder agrees, at its sole cost and expense, to perform the following repair work and remediation at the Residence (collectively, the "Repair(s)"); provided however, that claims other than repair and remediation shall be governed by other provisions of this Agreement:

   a) Remove and replace all drywall, including the Defective Drywall, and electrical wiring, including switches and receptacles, in the Residence.
   b) Repair or replace other building materials Builder originally installed in the Residence that are affected or damaged by the Defective Drywall, including, but not limited to, replacing HVAC systems (including all compressors, air handlers, line set pipes, ducts, thermostats and wiring), plumbing components (including all copper pipes, fittings and valves), appliances, water heater(s), insulation, security system components, ceiling fans, exhaust fans and smoke detectors. This does not include personal property otherwise addressed in this Agreement.
   c) Finish and paint all newly installed drywall in accordance with the Replacement Selections.
   d) Repair or replace, as necessary, all materials in the Residence affected or damaged by the Defective Drywall or the Repair process, which includes, but is not limited to, carpeting, flooring, wall coverings, tile, cabinets, countertops, sinks, toilets, bathtubs, shower enclosures, appliances, mirrors, lighting and plumbing fixtures, doors and wood trim and moldings, in accordance with the Replacement Selections where applicable.

e) Remove and dispose of all construction debris and clean the interior of the Residence after construction is completed.

f) Clean and remediate the Residence in accordance with the protocol established by Environ International or a similarly qualified company. This shall include, but not be limited to, at a minimum cleaning with a HEPA vacuum, wet-wiping or power washing the interior, airing out the interior for at least 15 days.

g) The remediation work shall be inspected and approved by Environ International or a similarly qualified company at intervals established by Environ International or a similarly qualified company including after completion of the Repairs and remediation. After final inspection and approval, Environ International or a similarly qualified company shall provide a report or certification to Homeowner confirming that the remediation has been properly performed in accordance with the established protocol, and that the Residence is free of Defective Drywall and safe to be reoccupied.

2. <u>Time for Repairs and Remediation</u>. Builder shall complete the Scope of Work provided in paragraph 1 within 120 days after issuance of the necessary permits for the Repair(s). Builder shall apply for the necessary permits within ten days after Homeowner has signed all permit application documents and finalized Replacement Selections.

3. <u>Removal of Drywall and Building Materials</u>. Builder shall be solely responsible for the disposal of all drywall, including the Defective Drywall, and all building materials removed from the Residence, which disposal shall be in accordance with all applicable governmental laws and regulations.

4. <u>Replacement Selections</u>. Homeowner understands that some of the original materials, fixtures and equipment installed when the Residence was first constructed, as well as some materials and fixtures installed by the Homeowner, must be replaced as part of the Repair process or may be affected by the Repair process and thus need replacement. Accordingly, prior to Builder beginning repair work, Homeowner shall meet with Builder's representative and select replacements for those items that will be replaced, as well as those items that may be affected by the Repairs process and need replacement (collectively, the "Replacement Selections"). Homeowner may select replacements that are upgrades or different than the original items but shall be required to pay Builder the difference in cost(s) at the time Homeowner makes those selections. A copy of the form of the Homeowner's Replacement Selections is attached hereto and incorporated herein by reference. If the Homeowner's Replacement Selections are discontinued or should materials be affected by the Repair process for which Homeowner has not made Replacement Selections, Builder shall give Homeowner fourteen (14) days' notice to make Replacement Selections from the comparable products and materials Builder has available that are of equal or greater quality. If Homeowner fails to make the foregoing Replacement Selections within the fourteen (14) days following Builder's delivery of notice, Builder shall have the right to make the Replacement Selections in Builder's sole discretion which shall be final and binding on Homeowner. Homeowner understands that while Builder intends to match replacement materials and equipment as closely as possible with the original items installed with the original construction, some items may be discontinued or have color variations. Replacement Selections are final and may not be changed except upon prior consent of Builder.

2

5. **New Warranty for Repairs.** Builder will perform the work in a workmanlike manner. Builder warrants for a period of one year following substantial completion of the Repairs that all materials and workmanship related to the Repairs shall be free and clear of defects and deficiencies. Moreover, Builder warrants that following substantial completion of the Repairs the Residence shall no longer contain any Defective Drywall. The foregoing warranties are transferrable to any subsequent purchaser of the Residence. For purposes of this Agreement, the term "substantial completion" shall be defined as closing out of all the applicable governmental building permit(s) for the Repairs by the governmental agency that issued the building permit(s) such that the Homeowner may lawfully resume occupancy of the Residence. If a defect occurs in the Repairs, excluding defects caused by a lack of Homeowner maintenance, Builder, at its option, shall either repair, replace, or pay the reasonable cost of repairing or replacing the defective item. Notwithstanding the foregoing, appliances, fixtures and equipment installed in connection with the Repairs shall be governed solely by the manufacturer's warranty for such items which Builder hereby assigns to Homeowner. Except with respect to foregoing warranty with respect to the Repairs, all other terms and conditions of the Homeowner's original warranty in connection with the original sale of the Residence shall remain in full force and effect.

6. **Relocation Expenses and Interference.** Homeowner and Builder understand that Builder will not be responsible for the payment of Homeowner's relocation expenses and that nothing contained herein releases any claims that the Homeowner may have for relocation expenses that the Homeowner is authorized to submit for compensation from any settlement fund through the claims process established by the Court in the In Re: Chinese Manufactured Drywall Products Liability, Case No. 2:09-MD-02047, U.S. District Court for the Eastern District of Louisiana, related to the Global Settlement, any other settlement reached in that case or in any settlement, claim or suit against a manufacturer, supplier or installer of reactive Chinese drywall not manufactured by Knauf. Homeowner or its agents shall not interfere, directly or indirectly, with Builder's performance of the Repairs. Interference shall include, but not be limited to, Homeowner or its agents instructing Builder to cease the Repairs, Homeowner or its agents restricting Builder's access to the Residence, or Homeowner otherwise materially breaching this Agreement.

7. **Utilities, Taxes, and Maintenance.** Except as otherwise provided below, during the period of the Repairs Homeowner shall remain responsible for paying all ad valorem taxes, community development district assessments, special assessments, utilities, maintenance expenses, and homeowner's and/or condominium association fees in the same manner as though Homeowner occupied the Residence. Notwithstanding the foregoing, Builder shall reimburse Homeowner for all electric power, water, wastewater, and trash expenses for the Residence incurred during the Repair Period. To the extent separately contracted for by Homeowner, Builder shall also reimburse homeowner for any yard or pool maintenance expenses for the Residence incurred during the Repair Period. Builder shall reimburse Homeowner for the foregoing within thirty (30) days following Builder's receipt of evidence of Homeowner's payment of the same. To the extent not separately contracted for by Homeowner, Builder shall be responsible, at its sole cost and expense, for maintaining the yard and any pool during the Repair Period in the same condition that exists when the Repair Period commences.

3

8. <u>Moving and Storage Expense Reimbursement</u>. Homeowner and Builder understand that Builder will not be responsible for the payment of any Homeowner moving and/or storage expenses and that nothing contained herein releases any claims that the Homeowner may have for moving and/or storage expenses that the Homeowner is authorized to submit for compensation from any settlement fund through the claims process established by the Court in the In Re: Chinese Manufactured Drywall Products Liability, Case No. 2:09-MD-02047, related to the Global Settlement, any other settlement reached in that case or in any settlement, claim or suit against a manufacturer, supplier or installer of reactive Chinese drywall not manufactured by Knauf.

9. <u>Personal Property Repair/Replacement Contribution</u>. Homeowner and Builder understand that Builder will not be responsible for the payment of any Homeowner personal property repair/replacement expenses and that nothing contained herein releases any claims that the Homeowner may have for property repair/replacement expenses that the Homeowner may have and is authorized to submit for compensation from any settlement fund through the claims process established by the Court in the In Re: Chinese Manufactured Drywall Products Liability, Case No. 2:09-MD-02047, related to the Global Settlement, any other settlement reached in that case or in any settlement, claim or suit against a manufacturer, supplier or installer of reactive Chinese drywall not manufactured by Knauf.

10. <u>Pre-Drywall and Final Homeowner Orientations</u>. Prior to installing the replacement drywall, Builder shall provide Homeowner the opportunity to conduct a pre-drywall orientation of the Residence, which orientation shall be a reasonable length of time. Builder shall give the Homeowner no less than 14 days' prior written notice of the pre-drywall orientation. If Homeowner fails to conduct the pre-drywall orientation within the specified time period and other arrangements have not been made between Builder and Homeowner, which Builder is not obligated to do; Builder may proceed with completing the Repairs. When the Repairs are substantially complete, Builder shall also give the Homeowner a final orientation of the Residence during normal business hours, at which time Builder and Homeowner shall jointly create a list of items to be addressed by Builder within a reasonable amount of time. The final orientation shall be a reasonable length of time to allow the Homeowner to view the Residence and the Repairs thereto. Homeowner may have an agent attend, or conduct on their behalf, the pre-drywall and/or final orientations; provided that Homeowner hereby acknowledges that any decisions or determinations made or failed to be made by any agent conducting the orientation(s) on Homeowner's behalf shall be binding on Homeowner.

11. <u>Access</u>. Until the Repairs are complete, Builder shall have sole and exclusive access to the Residence in order to perform the Repairs and shall be in complete control of who shall be entitled to enter and work on the Residence during that time, provided that Builder shall give Homeowner and/or its duly appointed agent reasonable access to the Residence so long as such access does not interfere with Builder' completion of the Repairs. Homeowner further understands that for safety, insurance and permitting purposes, Homeowner and/or its agents may only enter the Residence upon at least 24 hour prior notification to Builder and only when accompanied by a Builder representative.

12. <u>Supervision of Repairs</u>. Builder shall supervise and direct the Repairs. Builder shall be solely responsible for and have control over construction means, methods, techniques, sequences and procedures, and for coordinating all portions of the Repairs. Builder shall be responsible for the acts and omissions of its employees, subcontractors and their agents' employees in the performance of the Repairs and shall indemnify and hold Homeowner harmless from any personal injury or property damage claims (including attorneys' fees and costs) that any person, including but not limited to a subcontractor, laborer or supplier, may bring against Homeowner arising out of or related to the Repairs so long as such injury is not the result of Homeowner's negligent act or omission.

13. <u>Permits, Fees, Licenses and Inspections</u>. Builder shall secure and pay for any and all required building permits and governmental fees, licenses and inspections necessary for proper execution and completion of the Repairs. Homeowner shall sign all documents required by the governmental authorities for the issuance of the applicable building permits for the Repairs, including notices of commencement.

14. <u>Prevention of Further Damage</u>. To the extent reasonably possible, Builder and its subcontractors will use appropriate precautions to minimize further damage to the Residence during the performance of the Repairs. Builder will indemnify Homeowner against, and reimburse Homeowner for, any such damages (including attorneys' fees and costs) that are caused during the performance of the Repairs.

15. <u>Subcontractors</u>. Builder shall satisfy all requirements of Chapter 713, Florida Statutes with respect to mechanic's liens, including the posting of a notice of commencement. Builder will be responsible to pay any and all subcontractors, materialmen, suppliers and laborers involved in or performing the Repairs, and will indemnify Homeowner from and shall cause any liens filed against the Residence in connection with the Repairs to be satisfied, removed or bonded off within 30 days of filing. Builder will use only licensed subcontractors for any and all trades that require licensed subcontractors to be used.

16. <u>Limited Release of Claims</u>. Except for the indemnities and warranties otherwise provided in this Agreement and subject to the Builder's performance of its obligations under this Agreement, Homeowner hereby releases Builder and its parent and subsidiary corporations, employees, agents, officers, directors and shareholders from any and all claims, demands, actions and causes of action relating to or arising from the Defective Drywall and the Repairs being done pursuant to the terms of this Agreement, including claims for damages to Other Property within the Residence, and including personal injury claims. Except as otherwise set forth herein, this release shall not release the original warranty given in connection with the original sale of the Residence, provided, however, that the foregoing shall not be deemed to reinstate any such warranties that have already expired. This release shall not release or affect any rights and claims that Homeowner may have in any settlements reached in the In Re: Chinese Manufactured Drywall Products Liability, Case No. 2:09-MD-02047, U.S. District Court for the Eastern District of Louisiana or in any settlement, claim or suit against a manufacturer, supplier or installer of reactive Chinese drywall not manufactured by Knauf.

5

17. <u>Personal Injury Claims</u>. Notwithstanding the above paragraph and the Homeowner's release of Builder from all potential personal injury claims that it may have relative to the Defective Drywall installed by the Drywall Contractors, or the Repairs, nothing contained herein releases any claims that the Homeowner may have for any alleged personal injury claims that the Homeowner is authorized to submit for compensation against any manufacturer, supplier or installer of reactive Chinese drywall not manufactured by Knauf or from any settlement fund for any alleged claims through the claims process established by the Court in the In Re: Chinese Manufactured Drywall Products Liability, Case No. 2:09-MD-02047, related to the Global Settlement or any other settlement reached in that case or in any case against any manufacturers, suppliers or installers of reactive Chinese Drywall not manufactured by Knauf.

18. <u>Limited Assignment of Claims</u>. It is understood by the parties that Builder may seek reimbursement from third parties for the costs of the Repairs and the expenses paid hereunder, including from the Drywall Contractors and the suppliers, distributors, and/or manufacturers of the Defective Drywall (collectively, the "Responsible Parties"). Homeowner agrees to provide reasonable assistance to the Builder in the recovery of the foregoing costs and expenses. Accordingly, Homeowner hereby assigns to Builder all of its present and future rights, title, interest, claims and demands against any individual or entity, including, but not limited to, The Responsible Parties, arising from, related to, or connected with property damages in any manner related to the Defective Drywall and Other Property (the "Assigned Claims"). Homeowner warrants that it has not previously assigned, settled, compromised or released the Assigned Claims and agrees upon request from Builder to provide Builder with documents, records and other information in Homeowner's possession related to the Assigned Claims and in the meantime shall not destroy or otherwise dispose of the same. Homeowner understands that Builder shall hereafter have the exclusive right to bring any action of claim for property damages related to the Defective Drywall and Other Property. If requested by Builder, Homeowner shall, at Builder's cost, assist Builder in its recovery efforts and shall execute such further documents as may be necessary to evidence the foregoing assignment, subject to approval by Homeowner's attorney. Consistent with the foregoing, Homeowner understands that Builder may retain samples of the Defective Drywall removed from the Residence, which shall thereafter be the Builder's sole property, but which Builder shall make available to Homeowner if requested by Homeowner in connection with any claims brought or made by Homeowner in the In Re: Chinese Manufactured Drywall Products Liability, Case No. 2:09-MD-02047 or in any settlement, claim or suit against a manufacturer, supplier or installer of reactive Chinese drywall not manufactured by Knauf. Homeowner acknowledges that prior to entering into this Agreement and during the Builder's Repairs, Homeowner had and shall have the right to photograph, document and remove any samples of the Defective Drywall and other affected property in the Residence that Homeowner desires, either directly or through the use of a third party, all at Homeowner's sole cost and expense. The Assigned Claims shall expressly exclude any personal injury claims, moving and storage claims, expense claims, personal property claims, attorneys' fee claims and relocation claims that Homeowner may have arising from or relating to the Defective Drywall.

19. <u>Confidential Terms</u>. Homeowner and Builder agree to keep all payment and reimbursement terms provided in this Agreement confidential and shall not discuss or disclose

6

Phone: _201-638-6018_

9

the same to any third parties, other than Homeowner's accountants and lawyer, unless otherwise required by law.

20. <u>Entire Agreement</u>. Except as specifically provided herein, this Agreement represents the entire integrated agreement between the parties and supersedes all prior agreements, understandings and representations, oral or written. Homeowner acknowledges that they have read this entire Agreement and fully understand the provisions hereof and are executing the same freely and of their own accord. According, the parties agree that this Agreement shall be construed equally against Builder and Homeowner regardless of who may have originally drafted the same. Time is of the essence of under this Agreement.

21. <u>Force majeure</u>. Neither the Homeowner nor Builder shall be held responsible for delay or default caused by fire, riot, acts of God, terrorist acts, or other acts of political sabotage, or war, where such cause was beyond, respectively, the Homeowner's or Builder's reasonable control.

22. <u>Owner</u>. Homeowner represents and warrants that Homeowner is the sole owner of the Residence and has the authority to enter into this Agreement.

23. <u>Notices.</u> Any notices or communications to the Builder by Homeowner required or permitted by the terms of this Agreement shall be delivered by certified mail, return receipt requested to Taylor Morrison, Attention: Vice President of Construction, 551 N. Cattlemen Road, Suite 200, Sarasota, FL 34232, with a copy to Taylor Morrison, Attention: General Counsel, Taylor Morrison, Inc., 1211 N. Westshore Blvd., Suite 512, Tampa, FL 33607. Notices to the Homeowner by Builder required or permitted hereunder may be given by either orally in person, hand delivery, email, phone or regular U.S. Mail to the addresses and/or numbers set forth below Homeowner's signature, with a copy to Homeowner's attorney, David S. Maglich, P.O. Box 3018, Sarasota FL 34230, and shall be deemed delivered when deposited in the U.S. Mail in the case of mailing, when an email is actually sent, when orally given, or when hand delivered. Any payments required by Builder hereunder shall be either mailed by regular U.S. Mail to the address below the Homeowner's signature or hand delivered to the Homeowner.

24. <u>Modification of Agreement</u>. The terms of this Agreement may only be modified through a written agreement signed by both parties herein.

25. <u>Governing Law</u>. This Agreement shall be governed by and construed in accordance with the laws of the State of Florida without application of conflicts of laws principles. All parties hereby irrevocably consent to the jurisdiction of the MDL Court in New Orleans Louisiana to enforce or interpret this Agreement. All parties waive any defense of improper venue or forum non conveniens.

26. <u>Default</u>. Except as otherwise provided in this Agreement, if either party defaults under this Agreement, the non-defaulting party shall provide written notice of the default to the defaulting party and the defaulting party shall have ten (10) days from delivery of the notice to cure a monetary default and thirty (30) days to cure a non-monetary default, or if the non-monetary default cannot reasonably be cured within such thirty (30) day time period, the

defaulting party shall exercise good faith and due diligence in curing the default as expeditiously as possible. If the defaulting party fails to cure the default within the foregoing time periods, the non-defaulting party shall have all rights and remedies at law or in equity.

27. <u>Attorneys' Fees and Expert Fees</u>. Each party hereby agrees to be responsible for its own attorneys' fees and expert fees incurred through the Effective Date. Nothing herein shall affect, release or waive Homeowner's right to attorneys' fees in the In Re: Chinese Manufactured Drywall Products Liability, Case No. 2:09-MD-02047, U.S. District Court for the Eastern District of Louisiana, pursuant to any settlement reached or process established in that case, or in any settlement, claim or suit against a manufacturer, supplier or installer of reactive Chinese drywall not manufactured by Knauf,

28. <u>Effective Date</u>. For purposes of this Agreement, "Effective Date" shall mean the date that this Agreement is last executed by the Builder or Homeowner as indicated by the date below their respective signatures.

SIGNATURES APPEAR ON THE FOLLOWING PAGE

8

**IN WITNESS WHEREOF,** the parties have executed this Agreement as of the Effective Date.

**BUILDER**

TAYLOR MORRISON OF FLORIDA, INC.

By:_____
Print name:_____
Title:_____
Date:_____

**HOMEOWNER**

By: *[signature]*
Print name: Raymond P. Farley
Title:_____
Date: 9-19-14

Residence Address:
3756 Summerwind Circle
Bradenton, FL 34209

Notice Address:
11 A Legion Pl
North Arlington, NJ 07031

Email: RPFARLEY@COMCAST.NET
Phone: 201-638-6818

**ADDITIONAL HOMEOWNER, IF ANY**

By: *[signature]*
Print name: Amelia J. Farley
Title:_____
Date: 9-19-14

Notice Address:
_____
_____

Email:_____
Phone: 201-638-6818

9