UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL NO. 2047<br><br>SECTION: L |
| THIS DOCUMENT RELATES TO:<br><br>*Elizabeth Bennett, et al. v. Gebrueder Knauf Verwaltungsgesellschaft, KG, et al.*<br>2:14-cv-02722-EEF-JCW | JUDGE ELDON FALLON<br><br>MAG. JUDGE WILKINSON |

**PLAINTIFFS JAY JINJIANG WANG AND RUBY XIAOCHUN XI'S OPPOSITION
TO DEFENDANT KNAUF'S MOTION FOR SUMMARY JUDGMENT**

# Table of Contents

**Page**

I.  STATEMENT OF MATERIAL FACTS……………………………..………… 1

    A.  MDL-2047……………………………………………………….…… 1

    B.  The *Bennett* Class Action …………………………...………………………... 3

    C.  Plaintiffs Jay Jinjiang Wang and Ruby Xiaochun Xi in the *Bennett* Complaint …………………………………………………………… 4

II.  STANDARD OF REVIEW…………………………………………….…… 5

III.  ARGUMENT………………………………………………………… 6

    A.  Plaintiff's product liability claims are timely filed …………………….. 7

    B.  Product liability claims are subject to the discovery rule in Louisiana ……………………………………………………… 10

    C.  Defective Chinese-manufactured drywall is a latent defect under Louisiana law …………………………………………………… 13

    D.  Knauf had a duty to warn Plaintiff regarding defective nature of its drywall after the sale but chose to remain silent …………………….. 14

    E.  Defendant Knauf's failure to report the sale of its defective product to the CPSC and actively concealment of the nature of the defect tolls the prescriptive period for Plaintiffs ………………….……… 17

    F.  Equitable estoppel also prevents Defendants from benefitting due to their choice to intentionally conceal information regarding their defective drywall ………………….……………………………… 20

    G.  Economic Loss Rule doesn't apply …………………………………… 21

IV.  CONCLUSION………………………………………………………….. 22

Plaintiffs Jay Jinjiang Wang and Ruby Xiaochun Xi (herein "Plaintiffs" or "Plaintiff"), by and through the undersigned counsel of record, oppose the motion for summary judgment (Doc. 22664) filed by the Knauf Defendants.  As grounds, Plaintiffs offer the following:

## I.     STATEMENT OF MATERIAL FACTS

### A.  MDL-2047.

This litigation arises from alleged property damage and caused by the presence of Chinese drywall in homes and other buildings. Hurricanes Katrina and Rita devastated the Gulf Coast in 2005. These disasters, coinciding as they did with a boom in new housing construction, helped precipitate a shortage of drywall for the construction and reconstruction of homes in the United States. As a result, from approximately 2005 to 2008, Chinese drywall entered the United States market, changing hands in the chain of commerce, and ultimately finding its way into thousands of homes and buildings in the United States, primarily in Florida, Louisiana, Alabama, Mississippi, Texas, and Virginia.  Sometime after the installation of Chinese drywall in these properties, homeowners, residents, and occupants began to notice and complain of odd odors, corrosion of metal components, failure of electronics and appliances, and in some cases, physical ailments, such as nose bleeds, skin irritation, and respiratory problems. In response to these complaints, a number of governmental agencies and special interest groups, notably the federal Consumer Products Safety Commission and the Department of Housing and Urban Development, began to investigate, conduct testing, and issue remediation protocols related to Chinese drywall.

The present litigation commenced with the filing of lawsuits in 2009 in both federal and state courts by property owners and occupants damaged by the Chinese drywall installed in their residences and businesses, in addition to suits filed by some homebuilders who repaired these

properties. Defendants and declaratory judgment plaintiffs include homebuilders, developers, installers, retailers, realtors, brokers, suppliers, importers, exporters, and distributors, as well as their insurers and the insurers of homeowners, who were involved with the Chinese drywall in the affected properties. Because of the commonality of facts in the various federal lawsuits, the litigation was designated as Multi-District Litigation 2047 by the Judicial Panel on Multidistrict Litigation. On June 15, 2009, the Panel transferred all federal actions alleging damages from Chinese drywall to the U.S. District for the Eastern District of Louisiana for coordinated and consolidated proceedings.

Since the inception of MDL 2047, numerous cases were consolidated, containing thousands of claims; in addition, the Court issued numerous opinions, pretrial orders, and minute entries; the Court has facilitated mediations; and in the Court thousands of documents have been filed. Additionally, the Court has corresponded and coordinated with a number of state and federal court judges who also preside over related Chinese drywall cases.  The discovery revealed that the manufacturers of the drywall in question generally fell into two groups: the Knauf entities[1] and the Taishan entities[2]. After one of the Taishan entities was held in preliminary default, the Court conducted a bellwether evidentiary default hearing.  Shortly thereafter, the Court held its first bellwether, bench trial involving the Knauf entities. With regard to these bellwether proceedings, the Court issued detailed findings of fact and conclusions of law, concluding that the Chinese drywall at issue was in fact defective due to its release of

---

[1]  The term "Knauf entities" includes: Knauf Plasterboard (Tianjin) Co., Ltd. ("KPT"), Knauf Plasterboard (Wuhu) Co., Ltd., Guangdong Knauf New Building Material Products Co., Ltd., Knauf Gips KG, Gebr. Knauf Verwaltungsgesellschaft KG, Knauf International GmbH, Knauf Insulation GmbH ("KI"), Knauf UK GmbH, Knauf AMF GmbH & Co. KG, Knauf do Brasil Ltda. and PT Knauf Gypsum Indonesia.

[2]  The term "Taishan entities" includes: Taishan Gypsum Co. Ltd. and Taian Taishan Plasterboard Co. Ltd., among others.

corrosive gasses, requiring remediation of properties containing this drywall. The Court also issued a remediation protocol.

An initial settlement was reached in the Knauf portion of the litigation in October 2010, when the PSC and the Knauf entities entered into a Court-approved pilot program for remediation of homes containing drywall manufactured by Knauf. The pilot program led to a broader settlement agreement that extended the pilot program and provided remediation benefits to plaintiffs with filed claims.  On December 11, 2012, the final Knauf-related agreement, labeled, "Third Amended Settlement Agreement Regarding Claims Against the Knauf Defendants In MDL No. 2047" was filed with the Court.  A preliminary approval of the agreement was issued at the time, but no fairness hearing was immediately held and no certification of a proposed class was approved.  Instead, the Court later held a consolidated fairness hearing for the five interrelated settlements: L&W; Banner; INEX; Global; and Knauf. Ultimately, on February 7, 2013, the Court certified a settlement class that included the Knauf entities and notice was published.  The Knauf settlement class provided benefits to participants limited to remediation.  All other claims were omitted including those claims for personal property, negligence, strict liability, consumer protection acts, nuisance, unjust enrichment, or non-pecuniary claims were settled with the Knauf entities.

### B.  The *Bennett* Class Action.

The original *Bennett* Complaint was filed on November 13, 2014, in the United States District Court for the Northern District of Alabama and was subsequently transferred and consolidated into MDL 2047 via a conditional transfer order issued by the Judicial Panel on Multidistrict Litigation. The Complaint was amended multiple times, primarily to amend the parties.  The Fifth Amended Class Action Complaint was filed on March 6, 2018, and includes

the following claims: 1) negligence; 2) negligence per se; 3) strict liability; 4) breach of express and/or implied warranty; 5) Redhibition (by Louisiana plaintiffs); 6) Louisiana Products Liability Act (by Louisiana plaintiffs); 7) private nuisance; 8) negligent discharge of a corrosive substance; 9) unjust enrichment; 10) violation of the Louisiana Deceptive and Unfair Consumer Protection Law; 11) equitable injunctive relief and medical monitoring.  In the prayer for relief, Plaintiffs seek: certification of the class action; order appointing named plaintiffs as class representatives; compensatory, statutory, and/or punitive damages; pre- and post-judgment interest as allowed by law; injunctive relief; an award of attorney's fees as allowed by law; and award of taxable costs; and, any other relief a court deems just and proper.  On January 27, 2020, this Court issued an order denying class certification and all Plaintiffs' claims will proceed individually.

### C.  Plaintiffs Jay Jinjiang Wang and Ruby Xiaochun Xi in the *Bennett* Complaint.

Plaintiffs Jay Jinjiang Wang and Ruby Xiaochun Xi own a property in the State of Louisiana that contains drywall manufactured by the Knauf Defendants that is alleged to be defective.  Plaintiffs' claim was filed in the *Bennett* complaint on January 30, 2016.  The street address of Plaintiffs' property at issue is: 4220 Vincennes Place, New Orleans, LA 70125 ("Affected Property").  Plaintiffs assert all claims in the Fifth Amendment Complaint and seeks all relief available under current Louisiana law.

Plaintiffs purchased the Affected Property on July 23, 2007 (Cash Sale is attached as Exhibit A).  Plaintiff completed a Plaintiff Profile Form that verified the date that the Knauf drywall was discovered and the identity of the manufacturer confirmed on June 25, 2015. Plaintiffs also completed a Supplemental Plaintiff Profile Form and a Plaintiff Fact Sheet.  The three discovery documents are attached to Defendants' motion as exhibits.  Plaintiff engaged

4

Healthy Home Solutions, LLC to conduct an inspection of the Affected Property.  A copy of the inspection summary letter is attached as Exhibit B.  The HHS letter confirms the date that the Affected Property was inspected in 2015 and the presence of defective Knauf-manufactured drywall in the home.

Plaintiffs  Jay Jinjiang Wang and Ruby Xiaochun Xi were deposed by counsel for Knauf in 2019 in New Orleans, Louisiana, and affirmed the responses in the three discovery forms, including the date of discovery of the defective Knauf-manufactured drywall in the Affected Property.

## II. STANDARD OF REVIEW

Summary judgment is only warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In making the determination, "all justifiable inferences are to be drawn in [the non-movant's] favor." *Tolan v. Cotton*, 134 S. Ct. 1861, 1863 (2014) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). The movant may argue that "there is an absence of evidence to support the nonmoving party's case," *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986), but "it is never enough simply to state that the non-moving party cannot meet its burden at trial," *Clark v. Coats & Clark, Inc*., 929 F.2d 604, 608 (11th Cir. 1991). If the non-moving party provides more than a mere "scintilla of evidence" demonstrating that "the jury could reasonably find for the plaintiff," it will defeat the motion. *Anderson*, 477 U.S. at 252. This can be done by pointing out where the record "contains supporting evidence . . . which was 'overlooked or ignored' by the moving party." *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1116 (11th Cir. 1993) (citing *Celotex*, 477 U.S. at 332 (Brennan, J., dissenting)).

## III.   ARGUMENT

This summary judgment motion is one of two filed by counsel for the Defendants against Plaintiffs.  Defendants' argument in this instance is legally insufficient for this Court to grant summary judgment.  Defendants suggest that Plaintiffs were on notice that their home, a structure flooded and subsequently self-renovated by a realtor, had defective Knauf-manufactured Chinese drywall in it, because there was a smell in it.  They attempted to repackage the same argument regarding constructive knowledge, again suggesting that it is actual notice when it is not, prior to the date of discovery.  In this instance, Plaintiff unequivocally testified that he had not heard of Chinese drywall when he moved out of the home.  Defense counsel's imprecise questioning of Plaintiffs did nothing to clear up Plaintiffs' testimony.  Plaintiffs testimony could certainly be interpreted as the conclusions they reached in retrospect regarding the smell in the home, following the inspection for Chinese drywall in 2015 that identified Defendant Knauf's defective product.

Defendants also mention the economic loss rule as a basis for summary judgment for the first time as a basis for precluding damages; however, the economic loss rule is clearly not applicable based on the array of damages beyond the cost of the gypsum board pled in the Complaint.  In addition, this court has previously addressed the economic loss rule and rejected the argument in its earlier rulings in the Knauf portion of MDL-2047.

As the argument contained herein, *infra*, Chinese drywall is a latent defect and both the date of discovery and the associated prescription period start only after the manufacturer's markings are located and identified.  And, the reasonableness of Plaintiffs' actions taken after receipt of either an attorney solicitation letter or notice of a settlement are a jury question. Because the Knauf entities never notified the Consumer Product Safety Commission about the

sale of their defective product in the United States of America, never initiated a product recall, never warned distributors, never notified contractors, never notified homeowners, and actively concealed the nature of the product defect and the extent of the distribution of their defective product, Knauf violated federal law and remain in violation of federal law to this day.  Active concealment of the nature of the defect by Defendants with a distributor through a secretive indemnification agreement (rather than notifying the CPSC and all affected parties) is the act of concealment that tolls statutory limitations periods from beginning under Louisiana law.

A.    **Plaintiff's product liability claims are timely filed.**

Louisiana law establishes a one-year prescription period for filing claims related to defective Chinese drywall from the date of discovery.  In 1988, the Louisiana Court of Appeals issued an opinion clarifying the law applicable to defective product applicable in this case:

> "The prescriptive period applicable to product liability cases is one year from the date damages are sustained. La.Civ.Code art. 3492. Prescription does not commence until the plaintiff has actual or constructive notice of the tortious act, the resulting damage and the causal connection between the two. *Reed v. General Motors Corp.*, 400 So.2d 919 (La.App. 1st Cir.1981), writ denied, 406 So.2d 625 (1981). If it appears on the face of the pleadings that more than one year has elapsed between the occurrence of the tort and the filing of suit, the plaintiff has the burden of establishing an interruption or suspension of prescription. *See, Lucas v. Commercial Union Insurance Company*, 198 So.2d 560, 565 (La.App. 1st Cir.1967); Dixon v. Houck, 466 So.2d 57, 60 (La.App. 2d Cir.1985). However, in Louisiana prescriptive statutes are subject to the discovery rule embodied in the doctrine of *contra non valentem*, to the effect that prescription does not run during a period in which the cause of action was not known or reasonably knowable to the plaintiff. *Griffin v. Kinberger*, 507 So.2d 821 (La.1987)."

*Zumo v. R.T. Vanderbilt Co. Inc.*, 527 So.2d 1074, 1077 (La. Ct. App. 1988).

The concept of *contra non valentum* is short for "*contra non valentum agree nulla currit praescriptio,*" which is Latin for: a prescription does not run against one who is unable to act. *Contra non valentum* is a legal principle recognized in Louisiana that means the statute of limitations is not applicable, or a prescriptive period does not begin to run, against a plaintiff

where: (1) some legal cause prevented a court or its officer from acting on a plaintiff's action; (2) some condition associated with the litigation process prevented the plaintiff from acting; (3) the defendant prevented the plaintiff from acting; or (4) the plaintiff is ignorant of the injury caused by the defendant, and his or her ignorance is not due to negligence, unreasonableness, or a willful act.  *See, e.g., Richards v. Choice Hotels Int'l Inc*. 142 So.3d 249, 252 (La.App. 5th Cir. 2014). The rule of prescription is subject to the discovery rule of *contra non valentum* and suspends the running of prescription during the period in which the cause of action was not known by or reasonably knowable by the plaintiff. *Harlan v. Roberts*, 565 So.2d 482 (La.App.2d Cir.1990), writ denied, 567 So.2d 1126 (La.1990).  The doctrine of *contra non valentum* was created as an exception to the general rules of prescription. *Watters v. Dep't of Soc. Servs*., 102 So.3d 118, 131 (La. 2012).

In *Jordan v. Employee Transfer Corp*., 509 So.2d 420 (La.1987), the Louisiana Supreme Court clarified its application of *contra non valentum* and held that prescription begins to run, not at the earliest possible indication that the plaintiff may have suffered some wrong, but rather **when the plaintiff has a reasonable basis to pursue a claim against a specific defendant**.  *See La Plaque Corp. v. Chevron United States A. Inc*., 638 So.2d 354, 356 (La. Ct. App. 1994) (emphasis added).  The discovery rule, which is encompassed in the fourth category of *contra non valentum*, provides that "prescription does not begin to run until plaintiff knows sufficient facts and has a reasonable basis for filing suit against a certain defendant." *Wilkerson v. Dunham*, 218 So.3d 743, 749 (La. Ct. App. 2017). "Mere apprehension that something might be wrong" does not make delay in filing an action unreasonable, *Griffin v. Kinberger*, 507 So.2d 821, 823 (La.1987), nor does knowledge that one has a disease. *Knaps v. B & B Chem. Co*., 828 F.2d 1138, 1139 (5th Cir.1987). There must be knowledge of the tortious act, the damage caused by

the tortious act, and the causal link between the act and the damage before one can be said to have "constructive notice" of one's cause of action. *Knaps*, 828 F.2d at 1139.  Applied to the Knauf Chinese drywall context, Plaintiff must gain the knowledge that Knauf has produced defective drywall, the defective drywall is in their home, and it caused certain injuries to either persons or property in the home.  None of these steps occurred prior to the date of discovery that was initiated by Plaintiffs without any notice or warning from Knauf beforehand.

Plaintiff filed a claim less than one year after discovering the presence of Knauf's defective drywall in Affected Property; therefore, the claim was timely filed.  Prescription is an affirmative defense and defendants bear the burden of its proof at trial. *Hilman v. Succession of Merrett*, 291 So.2d 429, 726 (La.1974).  Defendants have urged the Court to grant summary judgment in this instance because, they allege, Plaintiff learned that the Affected Property contained Knauf's defective product much earlier than Plaintiff acknowledges, but that is clearly in conflict with Plaintiff's discovery responses and deposition testimony.  Plaintiff affirmed at deposition that discovery of the Knauf-manufactured drywall occurred within one year of filing a claim. (See SPPF, Page 2).  Plaintiff also testified that he knew nothing about Chinese drywall when he and his family moved from the property[3].  Plaintiff also executed a verified Plaintiff Profile Form and Supplemental Plaintiff Profile Form, under penalty of perjury, affirming the very same date of discovery.

*Contra non valentum* is an "equitable doctrine of Roman origin, with roots in both civil and common law," designed to avoid the harshness of applying prescription where the plaintiff has been prevented from timely filing suit. *Carter v. Haygood*, 892 So.2d 1261, 1268 (La. 2005). The application of *contra non valentum* does not require "extraordinary circumstances," and it is

---

[3] Ex. E to Defendant's motion; Wang's Depo. at  36-37.

regularly applied by Louisiana courts. *Id.* It should be applied in this situation as well, since Plaintiff filed a claim within one year of discovery of Defendants' product in Affected Property.

**B.      Product liability claims are subject to the discovery rule in Louisiana.**

Plaintiff's prescription period did not begin to run when the property was renovated after Hurricane Katrina. Under Louisiana law, a cause of action accrues or begins to run for purposes of the prescription period if the plaintiff is ignorant of the injury caused by the defendant, and his or her ignorance is not due to negligence, unreasonableness, or a willful act. *See, e.g., Richards v. Choice Hotels Int'l Inc.* 142 So.3d 249, 252 (La.App. 5th Cir. 2014). Product liability claims are subject to an exception in which the accrual of the cause of action is delayed until the plaintiff either knows or should know that the cause of action occurred as the application of *contra non valentem* holds. *Id.*. Louisiana's discovery rule applies to defective Chinese-manufactured product liability claims, including actions in redhibition.

La.Civ.Code art. 2534 provides that a buyer's action in redhibition prescribes one year from the date of sale if the seller has no knowledge of the latent defects. La.Civ.Code arts. 2545 and 2546 are an exception to La.Civ.Code art. 2534. They provide that the buyer's action in redhibition prescribes one year from the date of discovery of the defects *if* the seller has knowledge of the latent defects but omits to declare it. Furthermore, the jurisprudence of Louisiana is well settled that the builder or the manufacturer is presumed to know the defects in the articles he constructs or manufactures. *Smith v. H.J. Landreneau Building Contractor, Inc.,* 426 So.2d 1360 (La.App. 3 Cir. 1983) and cases cited therein. Louisiana law provides for: (1) imputation of knowledge to a vendor; and (2) holding a vendor to be a manufacturer. The result insofar as a prescriptive period is concerned is the same. For example:

> [I]f knowledge of a defect is imputed to a vendor, the vendor will be considered a bad faith seller. Therefore, prescription begins to run one year from the date of the discovery of a defect. However, if the vendor is considered a manufacturer, a

conclusive presumption applies that the manufacturer knew of the vices of the thing
it made and prescription begins to run **one year from the date of the discovery of
the defect**.

*Chastant v. SBS-Harolyn Park Venture*, 510 So. 2d 1341, 1343-44 (La. Ct. App. 1987)
(emphasis added).

Two cases decided by the Louisiana Supreme Court in 2010 provide us with guidance in

determining when a plaintiff should be deemed to have actual or constructive knowledge

sufficient to commence prescription in a property damage case. In *Hogg v. Chevron USA Inc.*,

the Louisiana Supreme Court reversed a trial court's denial of the defendants' motion for

summary judgment based on prescription in a case brought by five plaintiffs who alleged that

their immovable property had been contaminated from three formerly leaking underground

gasoline storage tanks at a Chevron service station operating on neighboring property.  *Hogg v.*

*Chevron USA Inc.*, 45 So.3d 991 (La. 2010). After the tanks were replaced in 1997, the plaintiffs

received two letters from the Louisiana Department of Environmental Quality (LDEQ)

informing them that environmental contamination had been detected near the Chevron station

and that they may later be asked for permission for access to their property for testing purposes.

In a second letter dated April 26, 2002, the LDEQ informed the plaintiffs that due to the results

of air sampling at a stream near Burt's Chevron, some of which sampling was taken on

their property, they should limit the time spent in that area. *Id*.  *The* Louisiana Supreme Court

ultimately held that the letters should have provided a reasonable person knowledge and held

sufficient for summary judgement. On the merits, the Louisiana Supreme Court concluded that

the information contained in the LDEQ letters "was sufficient to excite attention and put a

reasonable person on guard to call for inquiry, which is the essence of constructive knowledge,"

and that "plaintiffs' inaction in light of such action was unreasonable." *Id.* at 1001. Ultimately,

the *Hogg* court found that "[w]ith the receipt of the second letter from LDEQ in 2002, the

plaintiffs acquired constructive knowledge of the damage to their immovable property sufficient to commence the running of prescription." *Id.*  In the instant case, Plaintiff received no letters from Defendants confirming the presence of the defective product in their home and had neither actual nor constructive knowledge of defective Chinese drywall in Affected Property.  It is a fact that Defendant Knauf chose to take no action: they did not notify the CPSC of the sale of their defective product in the United States as required by 15 U.S.C. § 2064; they did not initiate a product recall; they did not provide testing to homeowners potentially in receipt of their defective product; and they didn't send a single warning letter to a homeowner of a potentially-affected property owner in Louisiana.

The prescription period on a products liability claim begins to run only when the plaintiff knows or should have known of a causal connection between a distinct injury caused by the product in question during exposure.  In this instance, Defendants cannot demonstrate that Plaintiff, who is a layman, should have known that the home contained defective drywall made by Defendant Knauf. And, Plaintiffs' testimony is in direct conflict with Defendants' theory – Plaintiff testified that he had no knowledge regarding defective Knauf drywall.  Counsel for Defendants never asked Plaintiff to clarify when he learned about Chinese drywall, so the inference that this Court must make at this point is that Plaintiffs learned about it at the time the inspection was performed in 2015.  This would be in a light most favorable to Plaintiffs, the nonmovants.

Louisiana courts have devised a reasonableness standard to determine whether a defect is apparent upon simple inspection, inquiring whether a reasonably prudent buyer acting under similar circumstances would have discovered the presence of the defect. *See Pursell v. Kelly,* 244 La. 323, 152.So.2d 36, 41 (1963); *Crow v. Laurie,* 729 S.2d 703, 707-08 (La.App. 1st Cir. 1999).

"Whether an inspection is reasonable depends upon the facts of each case and includes such factors as the knowledge and expertise of the buyer, the opportunity for inspection, and the assurances made by the seller." *Johnson v. CHL Enterprises*, 115 F. Supp. 2d 723, 728 (W.D. La. 2000).  Defendants have not presented any tangible evidence to rebut Plaintiff's discovery responses regarding the date of discovery of the defective Knauf product, either actually or constructively at an earlier identifiable date.

It is an undisputed fact that Plaintiff has no expertise in construction, environmental contaminants, or defective Chinese drywall.  It takes an inspection by an experienced drywall inspector to confirm the existence of defective Chinese-manufactured in a property.  In addition, not every homeowner is prepared to pay a fee between $500.00 and $2,000.00 for a thorough inspection of their home for the presence of defective drywall manufactured by Knauf. "Discovery" under Louisiana law occurs when the manufacturer's markings are found and confirmed by an experienced inspector or some other person with expertise, not at any point earlier. This would be the causal connection to the possible injury.  Reliance on an argument that Plaintiff acted unreasonably to discover the drywall at an earlier date is a genuine difference regarding a material fact in which a trier of fact could find that Plaintiff acted reasonably. It is certainly possible for a trier of fact to find that Plaintiff's actions prior to discovery were reasonable; therefore, summary judgment must be denied.

### C.      Defective Chinese-manufactured drywall is a latent defect under Louisiana law.

A latent defect is considered a defect that is hidden or concealed from knowledge, as well as from sight, and which a reasonable customary inspection would not reveal. *Nida v. State Farm Fire & Casualty Company*, 454 So.2d 328, 335 (La.App. 3 Cir.1984), writ denied, 458 So.2d 486

(La.1984).  The Louisiana Court of Appeals, Fifth Circuit, has declared that defective Chinese-manufactured drywall is a latent defect, specifically finding:

> "We agree with [defendants] and find that the Chinese drywall that caused the damages sustained by the [plaintiffs] is a latent defect, which was hidden and unknown for [] years."

*Ross v. C. Adams Const. & Design, L.L.C.*, 70 So.3d 949, 954 (La. Ct. App. 2011).

Louisiana courts also have allowed plaintiffs to recover against manufacturers where a plaintiff learns of a latent defect years later.  For instance, in *Templeman Bros. Lumber Co., Inc., v. Fairbanks, Morse Co.*, 129 La. 983, 57 So. 309, 315 (La.1911), the Louisiana Supreme Court overruled a plea of prescription of one year under Article 2534, and permitted a plaintiff, the purchaser of an engine, to recover monetary damages and specifically had this to say with reference to knowledge of the defect in the vendor:

> "The [product] in the present case consisted in the inadequacy of the [specific defective item], and in the defective installation of the machine. Of both of these defects the defendant must be held to have had full knowledge. The manufacturer of a machine is held to the knowledge of even latent defects and the inadequacy of the [specific defective item] must be held to have been patent to the defendant, though not to the plaintiff, since plaintiff was not supposed to have, and, in fact, had, no special knowledge of machinery. ***And the defendant must also be held to have known that the engine had been defectively installed. It was its duty to know it, and it had full opportunity to know it. It must, therefore, be presumed to have known it***."

*Tuminello v. Mawby*, 57 So. 2d 666, 668 (La. 1952) (emphasis added).

Given that Chinese drywall is a latent defect, knowledge regarding the defect is imputed to the Knauf Defendants, and the Knauf Defendants took no action.  Defendants sent no letters to Louisiana homeowners, reported the defective product to the CPSC, and did not initiate a product recall that might warn Louisiana homeowners about their defective drywall products and provide relevant information about the product and its dangers; consequently, Plaintiff detrimentally relied on the absence of warnings after the property was renovated in 2006-07.

Defendants should be equitably estopped (See Section III(E), *infra*) from making any argument regarding constructive knowledge of defect or inadequacy of records in support of Plaintiff's damages claims.  All inferences must be taken in a light most favorable to Plaintiffs and Defendants' motion is due to be denied.

**D.     Knauf had a duty to warn Plaintiff regarding defective nature of its drywall after the sale but chose to remain silent.**

Louisiana recognizes a manufacturer's post-sale duty to warn consumers of defective products. In 1985, the Louisiana Supreme Court decided a case that involved an injury occurring sixty-nine years after a defective product was manufactured and found in favor of a plaintiff where "a causal connection between the plaintiff's injuries and the manufacturer's failure to warn of a danger which it knew about since the time it built the [defective product]." *Winterrowd v. Travelers Indemnity Co.*, 462 So.2d 639, 641 (La.1985).  The Louisiana Supreme Court found that the manufacturer of the defective product violated its duty to warn "of any danger inherent in the normal use of its product which is not within the knowledge of an ordinary user." *Id.* at 642. *Winterrowd* stands for the proposition that "[l]ong delays between the actions of a defendant and the litigation of claims based on such actions are commonplace." *Trahan v. BP Am. Prod. Co.*, 209 So. 3d 166, 174 (La. Ct. App. 2016).

We know that Plaintiffs did not receive any notice from Defendants at any time prior to the date of discovery.  We also know that no product recall was initiated.  And, based on information and belief, Knauf did not self-report the sale of their defective product to the CPSC. Defendants could easily have sent warnings to potential recipients of its drywall – they're in possession of business records that could have been used to identify all downstream purchasers and ultimately the recipients of their product.  Defendant Knauf chose to take no such action to remedy the problem they created.  In Louisiana, defective Chinese drywall manufacturers have a

duty to warn about certain risks even after a product is no longer in the manufacturer's possession and has been transferred or sold to the consumer or end-user.

If Defendant Knauf's position is that a "actual notice" was given to Plaintiff, they should produce that warning. It would be the first notice provided to a homeowner by Knauf since this litigation began. If they're relying on a specific letter or a specific warning, they must produce it. They have not done so. Without the specific warning that provided "actual notice" to Plaintiffs by Knauf Defendants, we are left without the ability to evaluate the terms of a purported warning for adequacy; therefore, this Court must view the omission in a light most favorable to Plaintiff and find a material fact exists to be decided by a trier of fact regarding notice. This is consistent with longstanding Louisiana law, which provides that "[t]he adequacy of a particular warning is a question for the trier of fact, and should usually not be determined at summary judgment." *See Stapleton v. Kawasaki Heavy Industries, Ltd*., 608 F.2d 571, 573 (5th Cir.1979); *Bell v. Uniroyal Inc*., 696 So.2d 268, 270 (La. Ct. App. 4th Cir.1997). Without any specific warning by Defendants, this Court must view the omission of a warning to consumers in a light most favorable to Plaintiff.

> **E.**    **Defendant Knauf's failure to report the sale of its defective product to the CPSC and actively concealment of the nature of the defect tolls the prescriptive period for Plaintiffs.**

Under federal law, manufacturers of defective products sold in the United States fall under the purview of the Consumer Product Safety Act. 15 U.S.C. § 2051, *et seq*. Enacted in 1972, CPSA is a federal statute, establishing the Consumer Product Safety Commission ("CPSC"). The Act also defines CPSC's basic authority and authorizes the agency to develop standards and bans. It also gives CPSC the authority to pursue recalls and to ban products under certain circumstances. The purpose of the Act was defined as:

(1)     to protect the public against unreasonable risks of injury associated with consumer products;

(2)     to assist consumers in evaluating the comparative safety of consumer products;

(3)     to develop uniform safety standards for consumer products and to minimize conflicting State and local regulations; and

(4)     to promote research and investigation into the causes and prevention of product-related deaths, illnesses, and injuries.

15 U.S.C. § 2051(b).

The Act defines "consumer product" to mean "any article, or component part thereof, produced or distributed (i) for sale to a consumer for use in or around a permanent or temporary household or residence, a school, in recreation, or otherwise, or (ii) for the personal use, consumption or enjoyment of a consumer in or around a permanent or temporary household or residence, a school, in recreation, or otherwise." 15 U.S.C. § 2052(a)(5).  Without question, drywall or gypsum board falls under the oversight of the CPSC; therefore, the reporting requirements apply to the Knauf Defendants.  The CPSC publishes a recall handbook outlining the steps for a manufacturer to take once it learns of a product defect.  (a copy is attached hereto as Exhibit C). It is an undisputed fact that the Knauf Defendants did not report their defective product as required by federal law and they remain in violation of this law to this very day.

The CPSA provides that when a manufacturer has reason to know its product does not meet safety standards, contains a defect, or creates an unreasonable risk of death or injury, it must inform the CPSC. 15 U.S.C. § 2064(b).  There is no grey area – ***they must report the defect***.  Defendant Knauf was certainly aware of the problems their defective drywall was causing as early as November 7, 2006.  See Exhibit D (Email between Knauf corporate officers C. Wang, M. Norris, and Jawahar re "USA smelly board," the "situation in Miami is out of control," and "it will be a big problem not only in Miami but all over the USA Market, maybe cover thousand of houses.").  Rather than report the defect as required by federal law, Defendant

Knauf chose to conceal the problem.  After one of Defendant Knauf's large distributors

complained of defects in 2007, Defendant Knauf again chose not to notify the CPSC; instead,

they worked to actively conceal the defect by striking a secretive indemnification agreement with

Banner Supply Company.  This is an affirmative act of concealment.  The clandestine agreement

came to light years after the fact and was reported in a South Florida press.  (See South Florida

Business Journal Article, attached hereto as Exhibit E).  The nature of the agreement is telling:

> In 2007, the company signed a confidential agreement with the
> China-based manufacturer, Knauf Plasterboard Tianjin, which is
> owned by German conglomerate Knauf.  Knauf agreed to take all
> remaining Chinese drywall from Banner and exchange it with
> domestic supply, if Banner agreed to stay quiet about the problem.

*South Florida Business Journal,* Paul Brinkmann, June 2, 2010.

It is noteworthy that the Defendants have not produced that indemnification agreement in

their disclosures to Plaintiffs; thus, when taken this continuing concealment in a light most

favorable to Plaintiffs, the nonmovants, it should be considered an act of fraudulent concealment.

"The doctrine of fraudulent concealment contains two elements which a plaintiff must prove.

First, the defendant concealed the conduct complained of; and, second, despite the exercise of

due diligence, plaintiff failed to discover the facts that form the basis of his claim."  *Camsoft*

*Data Systems Inc. v. Southern Electronics Supply Inc*., (La. Ct. App. 2019); *citing Jensen v.*

*Snellings*, 841 F.2d 600, 607 (5th Cir. 1988).  It is generally recognized that the prescription

period is tolled if the defendant has engaged in "affirmative acts of concealment." *Id*.  A

secretive indemnification agreement in return for silence certainly appears to meet the standard

for fraudulent concealment.

The Fifth Circuit held that "[a] passive failure to disclose a fact is fraudulent "only if the

defendant has a duty to disclose that fact." *Trustees of Nw. Laundry Dry Cleaners Health*

*Welfare Trust Fund v. Burzynski,* 27 F.3d 153, 157 (5th Cir. 1994).  Knauf had a duty to disclose as the CPSA plainly states.  Fraudulent concealment is an equitable doctrine based on the premise that "fraud vitiates whatever it touches." *Klein v. O'Neal, Inc.*, Civil Action No. 7:03-CV-102-D, at *10 (N.D. Tex. May 22, 2008); *citing Borderlon v. Peck,* 661 S.W.2d 907, 909 (Tex. 1983). The defense is established where a defendant knows it has committed a wrong, intends to conceal that wrong, and successfully does so. *See Shah v. Moss,*67 S.W.3d 836, 841 (Tex. 2001).

Louisiana courts have long held that when a party against whom a cause of action exists, by fraud or actual fraudulent concealment prevents the party in whose favor it exists from obtaining knowledge of it, the prescriptive statutory period only commences to run from the time the right of action is discovered, or might, by the use of diligence, have been discovered. *Hyman v. Hibernia Bank & Trust Co*., 71 So. 598, 602, 139 La. 411 (La. 1916). Given Defendants' violation of their duty of disclosure under federal and Louisiana law that continues to this very day, the prescriptive period for Plaintiffs was tolled until actual knowledge of the cause of action occurred on the date of discovery.  Defendants have provided nothing to demonstrate that they should be afforded a prescription defense based on a thin theory of constructive knowledge.

**F.      Equitable estoppel also prevents Defendants from benefitting due to their choice to intentionally conceal information regarding their defective drywall.**

The principles of equitable estoppel are applicable here to prevent the Knauf Defendants from taking unfair advantage of homeowners who may have only received limited or inaccurate information about the defective Knauf-manufactured drywall through some source other than the CPSC or from Defendants during a product recall.  Suggesting that an attorney solicitation letter, a commercial, a blog, or some other unnamed source places Plaintiffs on notice regarding the defective nature of the drywall is not supported by any authority provided by Defendants in their

motion.  Defendant Knauf possessed the most accurate information about their defective product, did not report the defect to the CPSC, did not initiate a corrective action plan (i.e., recall) with CPSC oversight, and did not notify Plaintiffs about the potential defect; consequently, Defendants cannot rely on some other entity to meet their burden to report the defect or notify homeowners that are potentially affected.

In Louisiana, "equitable estoppel is the effect of the voluntary conduct of a person whereby he is barred and precluded, both at law and in equity, from asserting rights against another person relying on such conduct; and it arises where a person, by his acts, representations or admissions, or even by his silence when it is his duty to speak, intentionally or through culpable negligence, induces another to believe that certain facts exist and the other person rightfully relies and acts upon such belief and will be prejudiced if the former is permitted to deny the existence or the truth of such facts." *Shirey v. Campbell*, 151 So.2d 557, 559-60 (La. Ct. App. 1963).  Failure to speak when under some duty to speak is precisely what occurred here after Defendant Knauf learned that its drywall was defective in 2006, yet worked to actively conceal the defect from everyone.  Intent is an essential element of equitable estoppel. *Id*.  Thus, it is essential to equitable estoppel that the matters claimed to create it were intended to lead the other party to act thereon or that there were reasonable grounds to anticipate that he would so act. *Id*.  Defendant Knauf's intention to minimize its legal exposure and seek pecuniary gain by choosing to conceal their defective product rather than issue a product recall or specific warning to potentially-affected homeowners is evident.

Equitable estoppel colors all legal defenses and all assertions regarding Plaintiffs damages or documentation offered by Plaintiffs in support of damages being sought.  It also causes Plaintiffs' prescriptive period to toll.  Defendants are equitably estopped from arguing

Plaintiff's supporting evidence or date of discovery is deficient in any way, because Plaintiffs detrimentally relied on the lack of warning while Defendant Knauf knew that their defective drywall might lead to "thousands" of claims for its drywall and remained silent. (See Exhibit D – an email between Knauf corporate officers C. Wang, M. Norris, and Jawahar re "USA smelly board," the "situation in Miami is out of control," and "it will be a big problem not only in Miami but all over the USA Market, maybe cover thousand[s] of houses."). Defendant Knauf has failed to provide proof that a warning was issued at any time to any consumer; thus, a trier of fact must ultimately decide the impact of Defendant Knauf's concealment of their product's defect.

> **G.**    **Economic Loss Rule doesn't apply.**

Defendants have asserted that Plaintiffs' damages are prohibited due to the Economic Loss Rule. "The economic loss rule, in the most general sense, prohibits plaintiffs from recovering in negligence and strict liability actions for strictly economic losses, as opposed to personal injuries or injuries to property." *See In re Educational Testing Service Praxis Principles of Learning and Teaching*, 517 F.Supp.2d 832, 840 (E.D. La. 2007). Plaintiffs have plainly pled that the defective Knauf-manufactured drywall has been causing damage to the home and personal property. In the prayer for relief of the Complaint, Plaintiffs have pled damages beyond the cost of the drywall. In addition, the Supplemental Plaintiff Profile Form and Plaintiff Fact Sheet document several classes of damages Plaintiffs are seeking. The economic loss rule is inapplicable in this action for these Plaintiffs.

## IV.    CONCLUSION

This lawsuit was filed because Defendant Knauf manufactured defective drywall found in Plaintiff's property. The Knauf Defendants have stipulated that their drywall product is indeed

defective.  Although counsel for Defendant Knauf has crafted an argument for summary judgment, the facts and law in this instance simply do not support their legal theories or their motion.  Plaintiffs' claims were timely filed following the date of discovery.  Defendants' violation of their duty to warn homeowners under Louisiana law and their duty to report their defective product to the CPSC and issue a recall under federal law, coupled with the active concealment of the defect through a secretive indemnification agreement with distributors, causes equitable tolling to occur for Plaintiffs until the date of discovery.  For the foregoing reasons provided herein, Defendants' Motion for Summary Judgment should be denied.

/s/ *James V. Doyle, Jr.*

James V. Doyle, Jr.
DOYLE LAW FIRM, PC
2100 Southbridge Pkwy., Suite 650
Birmingham, AL 35209
Tele: 205-533-9500
Fax: 844-638-5812
jimmy@doylefirm.com

*Attorney for Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing Plaintiffs  Jay Jinjiang Wang and Ruby Xiaochun Xi's Opposition to Defendant Knauf's Motion for Summary Judgment has been served on Plaintiffs' Liaison Counsel, Russ Herman, and Defendants' Liaison Counsel, Kerry Miller, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047, on this 14th day of February, 2020.

/s/ *James V. Doyle, Jr.*

James V. Doyle, Jr.
DOYLE LAW FIRM, PC