UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL NO. 2047<br><br>SECTION: L |
| THIS DOCUMENT RELATES TO:<br><br>*Elizabeth Bennett, et al. v. Gebrueder Knauf Verwaltungsgesellschaft, KG, et al.*<br>2:14-cv-02722-EEF-JCW | JUDGE ELDON FALLON<br><br>MAG. JUDGE WILKINSON |

**PLAINTIFFS CONSUELA BURGOS, JOHNNY TYLER AND
CARL & ELLEN MOORE'S OPPOSITION
<u>TO DEFENDANT KNAUF'S MOTION FOR SUMMARY JUDGMENT</u>**

# Table of Contents

Page

I.   STATEMENT OF MATERIAL FACTS…………………………….………   1

   A.   MDL-2047………………………………………………………….……….   1

   B.   The *Bennett* Class Action …………………....………………………...   3

   C.   Plaintiffs Consuela Burgos, Johnny Tyler, and Carl & Ellen Moore in the
        *Bennett* Complaint………………………………………………………...   4

II.  STANDARD OF REVIEW……………………………………………….…   6

III. ARGUMENT…………………………………………………………………   6

   A.   Plaintiffs' Claims Are Timely Filed Under Florida's Delayed
        Discovery Rule …………………………………………………………   8

   B.   Product liability claims are subject to the Delayed Discovery Rule in
        Florida …………………………………………………………………..   8

   C.   Defective Chinese-manufactured drywall is a latent defect and
        Plaintiffs had no obligation to hire a Chinese drywall inspector
        before the date of discovery …………………………………………   10

   D.   Defendant Knauf should be equitably estopped from arguing that
        notice has been given to any homeowner, because it had a post-sale
        duty to warn regarding defective nature of its drywall, yet chose to
        remain silent …………………………………………………………   11

   E.   Defendant Knauf's failure to report the sale of its defective product to
        the CPSC and actively conceal the nature of the defect tolls the
        limitations statutory period for Plaintiffs ……………………………   15

IV.  CONCLUSION………………………………………………………………..   18

Plaintiffs Consuela Burgos, Johnny Tyler, and Carl & Ellen Moore, by and through the undersigned counsel of record, opposes the motion for summary judgment (Rec. Doc. 22677) filed by the Knauf Defendants.  As grounds, Plaintiff offers the following:

## I.    STATEMENT OF MATERIAL FACTS

### A.  MDL-2047.

This litigation arises from alleged property damage and caused by the presence of Chinese drywall in homes and other buildings. Hurricanes Katrina and Rita devastated the Gulf Coast in 2005. These disasters, coinciding as they did with a boom in new housing construction, helped precipitate a shortage of drywall for the construction and reconstruction of homes in the United States. As a result, from approximately 2005 to 2008, Chinese drywall entered the United States market, changing hands in the chain of commerce, and ultimately finding its way into thousands of homes and buildings in the United States, primarily in Florida, Louisiana, Alabama, Mississippi, Texas, and Virginia.  Sometime after the installation of Chinese drywall in these properties, homeowners, residents, and occupants began to notice and complain of odd odors, corrosion of metal components, failure of electronics and appliances, and in some cases, physical ailments, such as nose bleeds, skin irritation, and respiratory problems. In response to these complaints, a number of governmental agencies and special interest groups, notably the federal Consumer Products Safety Commission and the Department of Housing and Urban Development, began to investigate, conduct testing, and issue remediation protocols related to Chinese drywall.

The present litigation commenced with the filing of lawsuits in 2009 in both federal and state courts by property owners and occupants damaged by the Chinese drywall installed in their residences and businesses, in addition to suits filed by some homebuilders who repaired these

properties. Defendants and declaratory judgment plaintiffs include homebuilders, developers, installers, retailers, realtors, brokers, suppliers, importers, exporters, and distributors, as well as their insurers and the insurers of homeowners, who were involved with the Chinese drywall in the affected properties. Because of the commonality of facts in the various federal lawsuits, the litigation was designated as Multi-District Litigation 2047 by the Judicial Panel on Multidistrict Litigation. On June 15, 2009, the Panel transferred all federal actions alleging damages from Chinese drywall to the U.S. District for the Eastern District of Louisiana for coordinated and consolidated proceedings.

Since the inception of MDL 2047, numerous cases were consolidated, containing thousands of claims; in addition, the Court issued numerous opinions, pretrial orders, and minute entries; the Court has facilitated mediations; and in the Court thousands of documents have been filed. Additionally, the Court has corresponded and coordinated with a number of state and federal court judges who also preside over related Chinese drywall cases.  The discovery revealed that the manufacturers of the drywall in question generally fell into two groups: the Knauf entities[1] and the Taishan entities[2]. After one of the Taishan entities was held in preliminary default, the Court conducted a bellwether evidentiary default hearing.  Shortly thereafter, the Court held its first bellwether, bench trial involving the Knauf entities. With regard to these bellwether proceedings, the Court issued detailed findings of fact and conclusions of law, concluding that the Chinese drywall at issue was in fact defective due to its release of

---

[1]  The term "Knauf entities" includes: Knauf Plasterboard (Tianjin) Co., Ltd. ("KPT"), Knauf Plasterboard (Wuhu) Co., Ltd., Guangdong Knauf New Building Material Products Co., Ltd., Knauf Gips KG, Gebr. Knauf Verwaltungsgesellschaft KG, Knauf International GmbH, Knauf Insulation GmbH ("KI"), Knauf UK GmbH, Knauf AMF GmbH & Co. KG, Knauf do Brasil Ltda. and PT Knauf Gypsum Indonesia.

[2]  The term "Taishan entities" includes: Taishan Gypsum Co. Ltd. and Taian Taishan Plasterboard Co. Ltd., among others.

corrosive gasses, requiring remediation of properties containing this drywall. The Court also issued a remediation protocol.

An initial settlement was reached in the Knauf portion of the litigation in October 2010, when the PSC and the Knauf entities entered into a Court-approved pilot program for remediation of homes containing drywall manufactured by Knauf. The pilot program led to a broader settlement agreement that extended the pilot program and provided remediation benefits to plaintiffs with filed claims. On December 11, 2012, the final Knauf-related agreement, labeled, "Third Amended Settlement Agreement Regarding Claims Against the Knauf Defendants in MDL No. 2047" was filed with the Court. A preliminary approval of the agreement was issued at the time, but no fairness hearing was immediately held, and no certification of a proposed class was approved. Instead, the Court later held a consolidated fairness hearing for the five interrelated settlements: L&W; Banner; INEX; Global; and Knauf. Ultimately, on February 7, 2013, the Court certified a settlement class that included the Knauf entities and notice was published. The Knauf settlement class provided benefits to participants limited to remediation. All other claims were omitted including those claims for personal property, negligence, strict liability, consumer protection acts, nuisance, unjust enrichment, or non-pecuniary claims were not settled with the Knauf entities.

### B. The *Bennett* Class Action.

The original *Bennett* Complaint was filed on November 13, 2014, in the United States District Court for the Northern District of Alabama and was subsequently transferred and consolidated into MDL 2047 via a conditional transfer order issued by the Judicial Panel on Multidistrict Litigation. The Complaint was amended multiple times, primarily to amend the parties. The Fifth Amended Class Action Complaint was filed on March 6, 2018, and includes

the following claims: 1) negligence; 2) negligence per se; 3) strict liability; 4) breach of express and/or implied warranty; 5) Redhibition (by Louisiana plaintiffs); 6) Louisiana Products Liability Act (by Louisiana plaintiffs); 7) private nuisance; 8) negligent discharge of a corrosive substance; 9) unjust enrichment; 10) violation of Florida Deceptive and Unfair Trade Practices Act; 11) equitable injunctive relief and medical monitoring.  In the prayer for relief, Plaintiffs seek: certification of the class action; order appointing named plaintiffs as class representatives; compensatory, statutory, and/or punitive damages; pre- and post-judgment interest as allowed by law; injunctive relief; an award of attorney's fees as allowed by law; and award of taxable costs; and, any other relief a court deems just and proper.  This Court approved the Fifth Amended Class Action Complaint on May 14, 2018.

    **C.**    **Plaintiffs Consuela Burgos, Johnny Tyler, and Carl & Ellen Moore in the *Bennett* Complaint.**

Plaintiffs Consuela Burgos, Johnny Tyler, and Carl & Ellen Moore own properties in the State of Florida that contains drywall manufactured by the Knauf Defendants that is alleged to be defective.  Plaintiffs Consuela Burgos, Johnny Tyler, and Carl & Ellen Moore filed claims in the *Bennett* complaint on March 6, 2018.  The street address of Plaintiff Consuela Burgos' property at issue is: 384 NE 24 TER, Miami, FL 33033.  The street address of Plaintiff Johnny Tyler's property at issue is: 8675 130th Avenue, Fellsmere, FL 32948.  The street address of Plaintiff Carl & Ellen Moore property at issue is: 5427 Kedgewick Lane, North Port, FL 34288.

Plaintiff Consuela Burgos purchased her Affected Property on September 30, 2011. Plaintiff Johnny Tyler purchased his Affected Property on March 21, 2005. Plaintiffs Carl & Ellen Moore purchased her Affected Property May 1, 2009. A copy of the deeds is attached hereto as Exhibit A.

Plaintiff Consuela Burgos discovered and confirmed the identity of the Knauf Defendants as manufacturer through a Chinese drywall inspection conducted on September 19, 2017. Plaintiff Johnny Tyler discovered and confirmed the identity of the Knauf Defendants as manufacturer through a Chinese drywall inspection conducted on November 6, 2017.  Plaintiffs Carl & Ellen Moore discovered and confirmed the identity of the Knauf Defendants as manufacturer through a Chinese drywall inspection conducted on January 24, 2017.

All Plaintiffs completed Plaintiff Profile Forms that verified the date of discovery of Knauf-manufactured drywall in their homes.  Plaintiff Consuela Burgos learned of the defective drywall in her home through a self-inspection.  Plaintiffs Johnny Tyler and Plaintiffs Carl & Ellen Moore learned of the defective drywall in their homes through an inspection conducted by Chinese Drywall Screening, LLC, an experienced Florida drywall inspection company.  Healthy Home Solutions, LLC later confirmed the presence of defective Knauf-manufactured drywall in each property. (HHS Summary Letters attached as Exhibit B). Plaintiffs each also completed Supplemental Plaintiff Profile Forms and a Plaintiff Fact Sheets.

Plaintiffs were all deposed by counsel for Knauf Florida and affirmed the responses in their three discovery forms, including the date of discovery of the defective Knauf-manufactured drywall in the Affected Property.  Plaintiff also provided testimony under oath that affirmed the responses in the discovery documents related to damages, including loss of use and enjoyment, and personal property damages, among other topics addressed by counsel for the defendants. Plaintiff attended the deposition voluntarily and answered all questions posed by counsel for the Knauf Defendants. Plaintiffs assert all claims in the Fifth Amendment Complaint and seek all relief available under current Florida law.

## II. STANDARD OF REVIEW

Summary judgment is only warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In making the determination, "all justifiable inferences are to be drawn in [the non-movant's] favor." *Tolan v. Cotton*, 134 S. Ct. 1861, 1863 (2014) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). The movant may argue that "there is an absence of evidence to support the nonmoving party's case," *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986), but "it is never enough simply to state that the non-moving party cannot meet its burden at trial," *Clark v. Coats & Clark, Inc*., 929 F.2d 604, 608 (11th Cir. 1991). If the non-moving party provides more than a mere "scintilla of evidence" demonstrating that "the jury could reasonably find for the plaintiff," it will defeat the motion. *Anderson*, 477 U.S. at 252. This can be done by pointing out where the record "contains supporting evidence . . . which was 'overlooked or ignored' by the moving party." *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1116 (11th Cir. 1993) (citing *Celotex*, 477 U.S. at 332 (Brennan, J., dissenting)).

## III.   ARGUMENT

This is yet another attempt to convince this Court that Plaintiffs had actual knowledge that their home before the date of discovery based on air conditioning repairs.  Again, this is not actual notice sufficient to meet the standard required by Florida law. There are multiple reasons to deny Defendants' summary judgment motion for these Plaintiffs.

Manufacturers have a post-sale duty under Florida law to notify all consumers of a defect once it is learned.  They also have a duty under federal law, specified in the CPSA, to notify the CPSC of a defective product that was placed into the stream of commerce in the United States of America.  Although the defect in their KPT drywall product was discussed at length internally in

2006 by Defendant Knauf's management, not a single homeowner to date has received adequate notice about the product as of this filing in 2020. By failing to properly warn all current, past, or potential homeowners about their defective product, Defendant Knauf is equitably estopped from arguing that any plaintiff received adequate notice.  Suggesting that Plaintiffs are on "actual notice" based a general awareness of Chinese drywall is insufficient to meet their burden; consequently, this Court must view the lack of post-sale warning in a light most favorable to Plaintiff when considering all assertions in Defendant Knauf's motion for summary judgment.

Equitable estoppel due to the lack of a warning affects: 1) notice to prospective buyers about the nature of defective drywall that may be in a particular home, thereby providing them with inadequate information upon which they can rely when making a homebuying decision; 2) notice to homeowners regarding the harmful effects cause by defective drywall to both inhabitants and the components of the home that may be experiencing the effects from harmful off-gassing; and, 3) notice to homeowners regarding the harmful effects caused by defective drywall to personal property during the time they have lived in the home with defective Knauf-made drywall thereby leaving them with inadequate information and an inability to preserved potential evidence in support of claims.  Equitable estoppel due to lack of a warning also affects the start of a statute of limitations under Florida law for Plaintiff who is a layman with no specialized knowledge related to defective Chinese-manufactured drywall.

Detrimental reliance by the Plaintiff due to the omission of an adequate warning by Defendant Knauf affects all of their claims and damages in a significant way, including remediation damages, personal property damages, diminution in value, loss of use and enjoyment damages, loss of rental income and any other consequential damages.  It also colors Plaintiffs conduct when evaluating the reasonableness of Plaintiffs conduct in the face of repairs

to their air conditioners.  This Court must view the omission of a warning by the Knauf Defendants in a light most favorable to Plaintiff when considering their response to hearing the term "Chinese drywall" uttered by another layman.  This detrimental reliance on the lack of adequate warning presents a genuine issue material fact that should be considered by a trier of fact regarding all claims and damages.

A.    **Plaintiffs' Claims Are Timely Filed Under Florida's Delayed Discovery Rule.**

Under Fla. Stat. § 95.11, Florida's product liability statute, Plaintiffs have four (4) years to file a claim from the date of discovery.  Here, Plaintiffs filed their claim less than one year after discovering the presence of Knauf's defective drywall in their homes; therefore, their claim was timely filed. Defendants have urged the Court to grant summary judgment in this instance because, they allege, Plaintiffs learned that the Affected Property contained Knauf's defective product much earlier than Plaintiffs acknowledge, but that is clearly in conflict with Plaintiffs' deposition testimony attached to Defendant's motion.  Plaintiffs Consuela Burgos, Johnny Tyler, and Carl & Ellen Moore affirmed during their depositions that discovery of the Knauf-manufactured drywall occurred as a result of self-inspection or an inspection of their home by Chinese Drywall Screening, LLC.  Plaintiffs also executed a verified Plaintiff Profile Form and Supplemental Plaintiff Profile Form, under penalty of perjury, affirming the very same date of discovery.

B.    **Product liability claims are subject to the Delayed Discovery Rule in Florida.**

Plaintiffs' statute of limitations did not begin to run when he purchased their homes years earlier.  Under Florida law, a cause of action accrues or begins to run for purposes of the statute of limitations upon the occurrence of the last element of the cause of action. *Davis v. Monahan*, 832 So.2d 708, 709 (Fla. 2002); see Fla. Stat. § 95.031. However, products liability claims are

subject to an exception, "in which the accrual of the cause of action is delayed until the plaintiff either knows or should know that the last element of the cause of action occurred." *Davi*s, 832 So.2d at 709; see Fla. Stat. § 95.031(2)(b). This is commonly referred to as the delayed discovery rule. *Davis*, 832 So.2d at 709.  Florida's delayed discovery rule applies to defective Chinese-manufactured product liability claims.

Knowledge of a products liability claim need not rise to the level of legal certainty; instead, the plaintiff "need only have notice, through the exercise of reasonable diligence, of the possible invasion of [her] legal rights." *Hamrac v. Dorel Juvenile Grp., Inc*., No. 3:09vd390/RV/MD, 2010 WL 1879278, at *4 (N.D. Fla. May 11, 2010) (quoting *Univ. of Miami v. Bogorff*, 583 So.2d 1000, 1004 (Fla. 1991) ).  "There must be two essential facts present for the statute to begin to run. There must be a distinct injury and some causal connection between the injury and exposure to [the offending] product." *Samson v. R.J. Reynolds Tobacco Co*., No. 96-414-CIV-T-24(B), 1997 WL 373475, at *5 (M.D. Fla. June 2, 1997) (citing *Babush v. Am. Home Products Corp*., 589 So.2d 1379 (Fla. Dist. Ct.App. 1991) ).  In other words, the limitations period on a products liability claim begins to run only when the plaintiff knows or should have known of a causal connection between a distinct injury caused by the product in question during exposure.  In this instance, Defendants cannot demonstrate that Plaintiffs, who are laymen, should have known that their homes contained defective drywall made by Defendant Knauf or that they were being exposed to off-gassing from drywall.

Defendants have not presented any tangible evidence that Plaintiffs' discovery responses regarding discovery of the defective Knauf product are incorrect and the date of discovery is some earlier identifiable date.  Reliance on an argument that Plaintiffs acted unreasonably in their effort to discover the drywall at an earlier date is a genuine difference regarding a material

fact in which a trier of fact should properly decide.  It is an unreasonable position that some unidentified smell or corrosion places a homeowner on notice that her home contains defective drywall.

Plaintiffs have no expertise in defective Chinese drywall.  It takes an inspection by an experienced drywall inspector to confirm the existence of defective Chinese-manufactured in a property.  In addition, not every homeowner is prepared to pay a fee between $500.00 and $2,000.00 for a thorough inspection of their home for the presence of defective drywall manufactured by Knauf.   "Discovery" under Florida law occurs when the manufacturer's markings are found, not at any point earlier. This would be the causal connection to the possible injury.  It is certainly possible for a trier of fact to find that Plaintiffs' actions were reasonable.

## C. Defective Chinese-manufactured drywall is a latent defect and Plaintiffs had no obligation to hire a Chinese drywall inspector before the date of discovery.

Defective Chinese-made drywall is not an obvious defect easily seen by a homeowner. It is hidden inside walls or buried under insulation in attics in some instances.  With the manufacturer's ink stamp markings concealed inside walls, the defect is considered "latent" according to Florida law. Florida courts have defined a latent defect broadly, as one which is "not apparent by use of one's ordinary senses from a casual observation of the premises." *Hawkins v. Champion Int'l. Corp.*, 662 So.2d 1005, 1007 (Fla. 1st DCA 1995).  Florida courts have also found that there is no duty to discover "latent defects which… could not be discovered by a reasonable and customary search." *Masker v. Smith*, 405 So.2d 432, 433-34 (Fla. 5th DCA 1981).  Whether a reasonable person would discover the defective drywall through a casual, customary inspection is an issue of fact.

Locating defective Chinese drywall and determining the identity of the manufacturer requires specialized knowledge and experience.  It requires cutting holes in walls; it requires

crawling into tight spaces in attics; it requires specialized tools and devices; and, in many cases, it requires sending samples to a lab for testing. Finding defective drywall is rarely done through a casual observation of the premises or by using one's ordinary senses. This standard under Florida law is contrary to Defendant's argument that air conditioning repairs or someone with no expertise mentioning the term "Chinese drywall" places a duty on the homeowner to hire a Chinese drywall inspector immediately; consequently, this Court should deny Defendants' motion.

### D. Defendant Knauf should be equitably estopped from arguing that notice has been given to any homeowner, because it had a post-sale duty to warn regarding defective nature of its drywall, yet chose to remain silent.

The Defendants argue that because an unidentified smell was periodically noticed or tarnish was noticed on wiring or air conditioner repairs were paid by Plaintiffs, they are on notice that the home contains defective Knauf-manufactured drywall. Defendant Knauf failed to produce any specific notice in its motion that Plaintiffs might have received from the manufacturer, as required by state and federal law.

Defendants could easily have sent warnings to potential recipients of its drywall – they're in possession of business records that could have been used to identify all downstream purchasers and ultimately the recipients of their product. Defendant Knauf chose to take no action to remedy the problem they created. In Florida, under some circumstances, manufacturers have a duty to warn about certain risks even after a product is no longer in the manufacturer's possession and has been transferred or sold to the consumer or end-user. *See High v. Westinghouse Elec. Corp.*, 610 So.2d 1259, 1263 (Fla. 1992) (finding the defendant "had a duty to timely notify the entity to whom it sold the electrical transformers… once it was advised of the PCB contamination"); *Sta-Rite Indus., Inc. v. Levey*, 909 So.2d 901, 905 (Fla. 3d DCA 2004)

(jury question existed on failure to warn claim "in the light of similar severe accidents which occurred both before and after the sale of the pump in question").  Defendant Knauf's responsibility does not end once the product leaves its possession.  Under Florida law, a manufacturer must keep abreast of developments in the state of the art and cannot ignore incidents involving its products.

If Defendant Knauf's position is that a warning was given to Plaintiffs that satisfies their legal requirement, they should produce that warning.  Without a specific warning by Defendant Knauf, Plaintiffs are left without the ability to evaluate the terms of the purported warning for adequacy; in addition, in the absence of any post-sale warning by Knauf for its defective drywall, the Knauf Defendants should be equitably estopped from arguing that notice was provided to a homeowner in the State of Florida.  They failed to meet their legal burden regarding warnings to Plaintiffs and should not benefit from it.

The principles of equitable estoppel are applicable here to prevent the Knauf Defendants from taking unfair advantage of homeowners who may have only received limited or inaccurate information about the defective Knauf-manufactured drywall. "The elements of equitable estoppel are (1) a representation as to a material fact that is contrary to a later-asserted position, (2) reliance on that representation, and (3) a change in position detrimental to the party claiming estoppel, caused by the representation and reliance thereon." *State v. Harris*, 881 So.2d 1079, 1084 (Fla. 2004).  "The 'representation' upon which an estoppel may be predicated may consist of words, conduct, or, if there is a duty to speak, silence." *Lloyds Underwriters at London v. Keystone Equipment Finance Corp.*, 25 So.3d 89, 93 (Fla. 4th DCA 2009) (citations omitted).  Given Knauf's failure to provide post-sale warnings to consumers and homeowners, coupled with their fraudulent concealment, discussed *infra*, this Court must view the omission in a light

most favorable to Plaintiffs and find a material fact exists to be decided by a trier of fact regarding notice.

The Restatement of Torts (Third) supports Plaintiff's position that Defendant Knauf had a duty to warn homeowners about the potential risks its defective product posed.  Subsection 2(c) of the Third Restatement provides that a product:

> is defective because of inadequate instructions or warnings when the foreseeable risks of harm posed by the product could have been reduced or avoided by the provision of reasonable instructions or warnings by the seller or other distributor, or a predecessor in the commercial chain of distribution, and the omission of the instructions or warnings renders the product not reasonably safe.

Restatement (Third) of Torts: Products Liability § 2.

As is clear from the plain language of subsection (c), the warning defect standard focuses on the notion of "reasonableness" for judging the adequacy of warnings, a malleable notion that is intertwined with the facts and circumstances of each case.  "Whether the warning actually given was reasonable in the circumstances is to be decided by the trier of fact." Restatement (Third) of Torts: Products Liability § 2 comment i.

Comment i of Section 2 also assists the trier of fact by providing a non-exhaustive list of factors to guide the determination as to whether a warning was adequate in any given situation:

> No easy guideline exists for courts to adopt in assessing the adequacy of product warnings and instructions. In making their assessments, courts must focus on various factors, such as content and comprehensibility, intensity of expression, and the characteristics of expected user groups.

Additionally, comment i lists a number of factors for the trier of fact to consider when determining whether a manufacturer such as Defendant Knauf may rely on an intermediary to warn end-users, and thereby discharge its duty to warn, or conversely, is required to warn end-users directly:

There is no general rule as to whether one supplying a product for the use of others through an intermediary has a duty to warn the ultimate product user directly or may rely on the intermediary to relay warnings. The standard is one of reasonableness in the circumstances. Among the factors to be considered are the gravity of the risks posed by the product, the likelihood that the intermediary will convey the information to the ultimate user, and the feasibility and effectiveness of giving a warning directly to the user. Thus, when the purchaser of machinery is the owner of a workplace who provides the machinery to employees for their use, and there is reason to doubt that the employer will pass warnings on to employees, the seller is required to reach the employees directly with necessary instructions and warnings if doing so is reasonably feasible.

....

Whether the warning actually given was reasonable in the circumstances **_is to be decided by the trier of fact_**.

*Id*. (emphasis added).

Thus, under the Third Restatement (that has been adopted by the Florida Supreme Court), the determination as to whether a manufacturer like Defendant Knauf discharged its duty to warn end-users by adequately warning an intermediary is <u>clearly a question reserved for the trier of fact</u>. This is consistent with longstanding Florida law, which provides that "[t]he sufficiency and reasonableness of a manufacturer's warnings are fact questions appropriate for the jury to decide unless such warnings are 'accurate, clear, and unambiguous.'" *Brito v. County of Palm Beach*, 753 So.2d 109, 112 (Fla. 4th DCA 1998) (quoting *Felix v. Hoffmann-LaRoche, Inc.*, 540 So.2d 102, 104 (Fla.1989)). With no warning whatsoever, coupled with the requirement that this Court view all justifiable inferences in a light most favorable to Plaintiffs, this Court should find that the reasonableness of Plaintiffs actions are questions for a jury.

"Among the factors to be considered" by the trier of fact in determining whether a manufacturer has a duty to warn end-users directly are: (1) "the gravity of the risks posed by the product"; (2) "the likelihood that the intermediary will convey the information to the ultimate

user"; and (3) "the feasibility and effectiveness of giving a warning directly to the user."

Restatement (Third) of Torts: Products Liability § 2 comment i. The use of the word "among"

demonstrates that this list of factors is intended to be inclusive rather than exhaustive. At bottom,

the "standard is one of reasonableness." *Id*. Thus, depending on the facts and circumstances

presented in each case, other pertinent factors may be considered when deciding whether a

manufacturer has a duty to warn end-users.  But, without any specific warning from or by the

Knauf Defendants, this Court must view the omission in a light most favorable to Plaintiffs, the

nonmovant, and find that a genuine issue of material fact exists regarding the notice that might

have started the running of the Florida four-year statute of limitations for defective products.

### E.  Defendant Knauf's failure to report the sale of its defective product to the CPSC and actively conceal the nature of the defect tolls the limitations statutory period for Plaintiffs.

Under federal law, manufacturers of defective products sold in the United States fall

under the purview of the Consumer Product Safety Act. 15 U.S.C. § 2051, *et seq*.  Enacted in

1972, CPSA is a federal statute, establishing the Consumer Product Safety Commission

("CPSC").  The Act also defines CPSC's basic authority and authorizes the agency to develop

standards and bans. It also gives CPSC the authority to pursue recalls and to ban products under

certain circumstances.  The purpose of the Act was defined as:

> (1)  to protect the public against unreasonable risks of injury associated with consumer products;
> (2)  to assist consumers in evaluating the comparative safety of consumer products;
> (3)  to develop uniform safety standards for consumer products and to minimize conflicting State and local regulations; and
> (4)  to promote research and investigation into the causes and prevention of product-related deaths, illnesses, and injuries.

15 U.S.C. § 2051(b).

The Act defines "consumer product" to mean "any article, or component part thereof, produced or distributed (i) for sale to a consumer for use in or around a permanent or temporary household or residence, a school, in recreation, or otherwise, or (ii) for the personal use, consumption or enjoyment of a consumer in or around a permanent or temporary household or residence, a school, in recreation, or otherwise." 15 U.S.C. § 2052(a)(5).

This Court has previously ruled that drywall is a product after analyzing the laws of Alabama, Florida, Louisiana, and Mississippi.  *In re Chinese Mfr. Drywall Prod. Liability Litig*, 680 F. Supp. 2d 780, 797-98 (E.D. La. 2010).  This issue should be given *res judicata* effect. Without question, drywall or gypsum board falls under the oversight of the CPSC; therefore, the reporting requirements apply to the Knauf Defendants.  The CPSC publishes a recall handbook outlining the steps for a manufacturer to take once it learns of a product defect. (a copy is attached hereto as Exhibit C). It is an undisputed fact that the Knauf Defendants did not report their defective product as required by federal law and their violation of this law continues to this very day.

The CPSA provides that when a manufacturer has reason to know its product does not meet safety standards, contains a defect, or creates an unreasonable risk of death or injury, it must inform the CPSC. 15 U.S.C. § 2064(b).  There is no grey area – ***they must report the defect***.  Defendant Knauf was certainly aware of the problems their defective drywall was causing as early as November 7, 2006.  See Exhibit D (Email between Knauf corporate officers C. Wang, M. Norris, and Jawahar re "USA smelly board," the "situation in Miami is out of control," and "it will be a big problem not only in Miami but all over the USA Market, maybe cover thousand of houses.").  Rather than report the defect as required by federal law, Defendant Knauf chose to conceal the problem.  After one of Defendant Knauf's large distributors

complained of defects in 2007, Defendant Knauf again chose not to notify the CPSC; instead, Defendant Knauf worked to actively conceal the defect by striking a secretive indemnification agreement with Banner Supply Company. This is an affirmative act of concealment. The surreptitious agreement came to light years after the fact and was reported in a South Florida press. (See South Florida Business Journal Article, attached hereto as Exhibit E) The nature of the agreement is telling:

> In 2007, the company signed a confidential agreement with the China-based manufacturer, Knauf Plasterboard Tianjin, which is owned by German conglomerate Knauf. Knauf agreed to take all remaining Chinese drywall from Banner and exchange it with domestic supply, <u>if Banner agreed to stay quiet about the problem</u>.

*South Florida Business Journal,* Paul Brinkmann, June 2, 2010.

It is noteworthy that the Defendants have not produced that indemnification agreement in their disclosures to Plaintiffs; thus, when taken this continuing concealment in a light most favorable to Plaintiffs, the nonmovants, it should be considered an act of fraudulent concealment under Florida law. "Generally, two elements are required before the equitable principle of fraudulent concealment will be utilized to toll the statute of limitations, to-wit: plaintiff must show both successful concealment of the cause of action and fraudulent means to achieve that concealment." *Nardone v. Reynolds*, 333 So.2d 25, 37 (Fla. 1976); citing *Prather v. Neva Paperbacks*, Inc., 446 F.2d 338 (5th Cir., 1971), *Crummer Company, et al. v. DuPont*, 255 F.2d 425 (5th Cir., 1958) (additional citations omitted). A secretive indemnification agreement in return for silence certainly appears to meet the standard for fraudulent concealment.

The Fifth Circuit held that "[a] passive failure to disclose a fact is fraudulent "only if the defendant has a duty to disclose that fact. *Trustees of Nw. Laundry Dry Cleaners Health Welfare Trust Fund v. Burzynski,* 27 F.3d 153, 157 (5th Cir. 1994). Knauf had a duty to disclose

as the CPSA plainly states.  Fraudulent concealment is an equitable doctrine based on the

premise that "fraud vitiates whatever it touches." *Klein v. O'Neal, Inc.*, Civil Action No. 7:03-

CV-102-D, at *10 (N.D. Tex. May 22, 2008); *citing Borderlon v. Peck,* 661 S.W.2d 907, 909

(Tex. 1983). The defense is established where a defendant knows it has committed a wrong,

intends to conceal that wrong, and successfully does so. *See Shah v. Moss,*67 S.W.3d 836,

841 (Tex. 2001).

Florida courts have also held that when a party against whom a cause of action exists, by

fraud or actual fraudulent concealment prevents the party in whose favor it exists from obtaining

knowledge of it, the statutory limitations period only commences to run from the time the right

of action is discovered, or might, by the use of diligence, have been discovered. *See, e.g.,*

*Nardone v. Reynolds*, 333 So.2d 25, 37 (Fla. 1976).  Given Defendants' violation of their duty of

disclosure under federal and Florida law that continues to this very day, the statutory limitations

period for Plaintiffs was tolled until actual knowledge of the cause of action occurred on the date

of discovery.  Defendants have provided nothing to demonstrate that they should be afforded a

statute of limitations defense based on a thin theory of constructive knowledge based on a

general knowledge that Chinese drywall exists.  This is legally insufficient under Florida law.

## IV.   CONCLUSION

This lawsuit was filed because Defendant Knauf manufactured defective drywall found in

Plaintiff's property.  The Knauf Defendants have stipulated that their drywall product is indeed

defective.  Although counsel for Defendant Knauf has crafted an argument for summary

judgment, the facts and law in this instance simply do not support their legal theories or their

motion.  Plaintiffs' claims were timely filed following the date of discovery.  Defendants'

violation of their duty to warn homeowners under Florida law and their duty to report their

defective product to the CPSC and issue a recall under federal law, coupled with the active, surreptitious concealment of the defect through a secretive indemnification agreement with distributors, causes equitable tolling to occur for Plaintiffs until the date of discovery.  For the foregoing reasons provided herein, Defendants' Motion for Summary Judgment should be denied.

/s/ *James V. Doyle, Jr.*

James V. Doyle, Jr.
DOYLE LAW FIRM, PC
2100 Southbridge Pkwy., Suite 650
Birmingham, AL 35209
Tele: 205-533-9500
Fax: 844-638-5812
jimmy@doylefirm.com

*Attorney for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing Plaintiffs Consuela Burgos, Johnny Tyler, and Carl & Ellen Moore's Opposition to Defendant Knauf's Motion for Summary Judgment has been served on Plaintiffs' Liaison Counsel, Russ Herman, and Defendants' Liaison Counsel, Kerry Miller, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047, on this 16th day of April, 2020.

/s/ *James V. Doyle, Jr.*

James V. Doyle, Jr.
DOYLE LAW FIRM, PC