UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL NO. 2047 <br><br> SECTION: L |
| THIS DOCUMENT RELATES TO: <br><br> *Elizabeth Bennett, et al. v. Gebrueder Knauf Verwaltungsgesellschaft, KG, et al.* 2:14-cv-02722-EEF-JCW | JUDGE ELDON FALLON <br><br> MAG. JUDGE WILKINSON |

**PLAINTIFFS' OPPOSITION TO DEFENDANT KNAUF'S
MOTION FOR SUMMARY JUDGMENT AS TO CLAIMS ASSERTED BY
<u>R & S PROPERTIES, LLC</u>**

# Table of Contents

**Page**

I.  STATEMENT OF MATERIAL FACTS…………………………….………   1

    A.   MDL-2047…………………………………………………….……   1

    B.   The *Bennett* Class Action …………………...………………………...   3

    C.   Plaintiffs R&S Properties, LLC in the *Bennett* Complaint ……………..   4

II.  STANDARD OF REVIEW……………………………………………….…   5

III. ARGUMENT…………………………………………………………………   6

    A.   Plaintiffs' claim were filed in *Bennett* within the two year statutory
        period following discovery as required by Alabama law……………   8

    B.   Product liability claims are subject to the discovery rule in Alabama   8

    C.   Defective Chinese-manufactured drywall is a latent defect under
        Alabama law …………………………………………………………..   10

    D.   Knauf had a duty to warn Plaintiffs regarding defective nature of its
        drywall after the sale but chose to remain silent .............................   11

    E.   Defendant Knauf's failure to report the sale of its defective product
        to the CPSC and actively concealment of the nature of the defect
        tolls the statutory limitations period for Plaintiffs…………………..   13

    F.   Equitable estoppel prevents Defendants from benefitting due to
        their choice to intentionally not warn consumers about their
        defective drywall ................................................................................   16

IV.  CONCLUSION…………………………………………………………….…..   18

Plaintiff R&S Properties, LLC (herein "Plaintiffs" or "Plaintiff"), by and through the undersigned counsel of record, oppose the motion for summary judgment (Doc. 22644) filed by the Knauf Defendants.  As grounds, Plaintiff offer the following:

## I.   STATEMENT OF MATERIAL FACTS

### A.  MDL-2047.

This litigation arises from alleged property damage and caused by the presence of Chinese drywall in homes and other buildings. Hurricanes Katrina and Rita devastated the Gulf Coast in 2005. These disasters, coinciding as they did with a boom in new housing construction, helped precipitate a shortage of drywall for the construction and reconstruction of homes in the United States. As a result, from approximately 2005 to 2008, Chinese drywall entered the United States market, changing hands in the chain of commerce, and ultimately finding its way into thousands of homes and buildings in the United States, primarily in Florida, Louisiana, Alabama, Mississippi, Texas, and Virginia.  Sometime after the installation of Chinese drywall in these properties, homeowners, residents, and occupants began to notice and complain of odd odors, corrosion of metal components, failure of electronics and appliances, and in some cases, physical ailments, such as nose bleeds, skin irritation, and respiratory problems. In response to these complaints, a number of governmental agencies and special interest groups, notably the federal Consumer Products Safety Commission and the Department of Housing and Urban Development, began to investigate, conduct testing, and issue remediation protocols related to Chinese drywall.

The present litigation commenced with the filing of lawsuits in 2009 in both federal and state courts by property owners and occupants damaged by the Chinese drywall installed in their residences and businesses, in addition to suits filed by some homebuilders who repaired these

properties. Defendants and declaratory judgment plaintiffs include homebuilders, developers, installers, retailers, realtors, brokers, suppliers, importers, exporters, and distributors, as well as their insurers and the insurers of homeowners, who were involved with the Chinese drywall in the affected properties. Because of the commonality of facts in the various federal lawsuits, the litigation was designated as Multi-District Litigation 2047 by the Judicial Panel on Multidistrict Litigation. On June 15, 2009, the Panel transferred all federal actions alleging damages from Chinese drywall to the U.S. District for the Eastern District of Louisiana for coordinated and consolidated proceedings.

Since the inception of MDL 2047, numerous cases were consolidated, containing thousands of claims; in addition, the Court issued numerous opinions, pretrial orders, and minute entries; the Court has facilitated mediations; and in the Court thousands of documents have been filed. Additionally, the Court has corresponded and coordinated with a number of state and federal court judges who also preside over related Chinese drywall cases. The discovery revealed that the manufacturers of the drywall in question generally fell into two groups: the Knauf entities[1] and the Taishan entities[2]. After one of the Taishan entities was held in preliminary default, the Court conducted a bellwether evidentiary default hearing. Shortly thereafter, the Court held its first bellwether, bench trial involving the Knauf entities. With regard to these bellwether proceedings, the Court issued detailed findings of fact and conclusions of law, concluding that the Chinese drywall at issue was in fact defective due to its release of

---

[1]  The term "Knauf entities" includes: Knauf Plasterboard (Tianjin) Co., Ltd. ("KPT"), Knauf Plasterboard (Wuhu) Co., Ltd., Guangdong Knauf New Building Material Products Co., Ltd., Knauf Gips KG, Gebr. Knauf Verwaltungsgesellschaft KG, Knauf International GmbH, Knauf Insulation GmbH ("KI"), Knauf UK GmbH, Knauf AMF GmbH & Co. KG, Knauf do Brasil Ltda. and PT Knauf Gypsum Indonesia.

[2]  The term "Taishan entities" includes: Taishan Gypsum Co. Ltd. and Taian Taishan Plasterboard Co. Ltd., among others.

corrosive gasses, requiring remediation of properties containing this drywall. The Court also issued a remediation protocol.

An initial settlement was reached in the Knauf portion of the litigation in October 2010, when the PSC and the Knauf entities entered into a Court-approved pilot program for remediation of homes containing drywall manufactured by Knauf. The pilot program led to a broader settlement agreement that extended the pilot program and provided remediation benefits to plaintiffs with filed claims. On December 11, 2012, the final Knauf-related agreement, labeled, "Third Amended Settlement Agreement Regarding Claims Against the Knauf Defendants In MDL No. 2047" was filed with the Court. A preliminary approval of the agreement was issued at the time, but no fairness hearing was immediately held and no certification of a proposed class was approved. Instead, the Court later held a consolidated fairness hearing for the five interrelated settlements: L&W; Banner; INEX; Global; and Knauf. Ultimately, on February 7, 2013, the Court certified a settlement class that included the Knauf entities and notice was published. The Knauf settlement class provided benefits to participants limited to remediation. All other claims were omitted including those claims for personal property, negligence, strict liability, consumer protection acts, nuisance, unjust enrichment, or non-pecuniary claims were settled with the Knauf entities.

**B. The *Bennett* Class Action.**

The original *Bennett* Complaint was filed on November 13, 2014, in the United States District Court for the Northern District of Alabama and was subsequently transferred and consolidated into MDL 2047 via a conditional transfer order issued by the Judicial Panel on Multidistrict Litigation. The Complaint was amended multiple times, primarily to amend the parties. The Fifth Amended Class Action Complaint was filed on March 6, 2018, and includes

the following claims: 1) negligence and failure to warn; 2) negligence per se; 3) strict liability and failure to warn; 4) breach of express and/or implied warranty; 5) private nuisance; 6) negligent discharge of a corrosive substance; 7) unjust enrichment; 8) violation of the Alabama Deceptive Trade Practices Act; 9) equitable injunctive relief and medical monitoring.  In the prayer for relief, Plaintiffs seek: compensatory, statutory, and/or punitive damages; pre- and post-judgment interest as allowed by law; injunctive relief; an award of attorney's fees as allowed by law; and award of taxable costs; and, any other relief a court deems just and proper. On January 27, 2020, this Court issued an order denying class certification and all claims will proceed individually while they are permissively joined pursuant to Fed. R. Civ. P. 20.

###### C.    Plaintiff R&S Properties, LLC in the *Bennett* Complaint.

Plaintiff R&S Properties, LLC own a property in the State of Alabama that contains drywall manufactured by the Knauf Defendants that is alleged to be defective.  Plaintiff's claim was filed in the *Bennett* complaint on August 31, 2018.  The street address of Plaintiffs' property at issue is: 9810 Bay Road North, Foley, AL 36535 ("Affected Property").

Plaintiffs purchased their Affected Property on August 24, 2009. (Plaintiffs' warranty deed is attached as Exhibit A).  Plaintiffs completed a Plaintiff Profile Form that verified the date that the defective Knauf drywall was discovered and the identity of the manufacturer confirmed on July 26, 2018.  Discovery of the defective drywall for these Plaintiffs occurred through an inspection by HomeSouth Inspections, Inc., a professional Chinese drywall inspection company operating in the Orange Beach, Alabama area.

Plaintiffs also completed supplemental plaintiff profile forms and a plaintiff fact sheets (each attached to Defendants' motion as exhibits).  Plaintiff later engaged Healthy Home Solutions, LLC to conduct an inspection of the Affected Property.  A copy of the inspection

summary letters are attached (Exhibit B).  The HHS letter confirms the date that the Affected Property was inspected in 2019 and the presence of defective Knauf-manufactured drywall was confirmed.

Plaintiff  was deposed by counsel for Knauf in December of 2019, in Birmingham, Alabama, and affirmed the responses in the three discovery forms, including the date of discovery of the defective Knauf-manufactured drywall in the Affected Property.  Plaintiffs assert all claims in the Fifth Amendment Complaint and seeks all relief available under current Alabama law.

## II. STANDARD OF REVIEW

Summary judgment is only warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In making the determination, "all justifiable inferences are to be drawn in [the non-movant's] favor." *Tolan v. Cotton*, 134 S. Ct. 1861, 1863 (2014) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). The movant may argue that "there is an absence of evidence to support the nonmoving party's case," *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986), but "it is never enough simply to state that the non-moving party cannot meet its burden at trial," *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). If the non-moving party provides more than a mere "scintilla of evidence" demonstrating that "the jury could reasonably find for the plaintiff," it will defeat the motion. *Anderson*, 477 U.S. at 252. This can be done by pointing out where the record "contains supporting evidence . . . which was 'overlooked or ignored' by the moving party." *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1116 (11th Cir. 1993) (citing *Celotex*, 477 U.S. at 332 (Brennan, J., dissenting)).

## III.    ARGUMENT

The owners of R&S Properties, LLC are contractors that operate primarily in Tennessee. The Affected Property located in Foley, Alabama, is a secondary property purchased for its location in proximity to Alabama beaches.  Defendants suggest that because the Plaintiffs operate as contractors, they are not laymen with regard to Chinese drywall.  Counsel for Defendants did not develop any testimony that could clarify their experience with Chinese drywall in Tennessee.  It's unlikely that they possess anything other than general knowledge about Chinese drywall similar to any other layman, since Tennessee had no defective Chinese drywall cases filed into MDL-2047.  Mr. Royce Corlison, deposed on behalf of the LLC, testified that their construction business engages in commercial construction projects and operates in Tennessee, Georgia, North Carolina, South Carolina, Virginia, West Virginia, Florida, Arkansas, Louisiana and Mississippi[3]. No testimony was taken regarding Mr. Corlison's experience with Chinese drywall in any way.

Defendants also hope to paint the testimony to indicate that they had knowledge many years before filing a claim that indicates actual knowledge of the Chinese drywall in the property, but Mr. Corlison testified that a technician mentioned Chinese drywall in approximately 2012, but he "figured it was just him talking."[4]   A mere mention of the term "Chinese drywall" is insufficient under Alabama and federal law.  This is the basis of Defendants' claim that Plaintiffs were on "actual" notice.  It is not.  In this instance, Defendant Knauf is hoping the court will overlook their fraudulent concealment regarding the nature their defective product, as well as their ongoing violation of federal law connected to their refusal to report their defective product to the CPSC, issue a recall notice, initiate a corrective action plan

---

[3] Royce Corlison deposition at 17:15-19.
[4] Royce Corlison deposition at 18: 9-16.

that might include providing inspections, and notify homeowners like Plaintiffs who testified to having little knowledge about Chinese drywall.  Anything short of actual notice that their home actually contains defective Knauf-brand drywall is not actual notice.  It is a compete absence of notice, contrary to Defendants continuing assertions otherwise.

Without any warning from Defendants, actual notice would come only after the inspection by HomeSouth Inspections, Inc. confirmed the presence of defective Knauf-manufactured drywall in Plaintiff's walls.  Defendant Knauf, the manufacturer, never warned any Plaintiffs anywhere at any time, never initiated a recall, and never engaged in a corrective action plan as required by federal law.  The federal law requiring Defendant Knauf to take action is discussed more thoroughly, *infra,* in the section briefing their reporting requirements contained in the CPSA.   Some unspecified website, blog, or chat room on the internet that might contain information about Chinese drywall is not sufficient to meet the notice standard necessary to meet the summary judgment standard when viewing all inferences in a light most favorable to Plaintiffs.

As the argument contained herein articulates, *infra*, Chinese drywall is a latent defect and both the date of discovery and the associated statutory filing period start only after the manufacturer's markings are located and identified.  Furthermore, the reasonableness of Plaintiffs' actions taken after conversations with technician are jury questions.

Because the Knauf entities never notified the Consumer Product Safety Commission about the sale of their defective product in the United States of America, never initiated a product recall, never warned distributors, never notified contractors, never notified homeowners, and actively concealed the nature of the product defect and the extent of the distribution of their defective product, Knauf violated federal law and remain in violation of federal law to this day.

Active concealment of the nature of the defect by Defendants with a distributor through a secretive indemnification agreement (rather than notifying the CPSC and all affected parties) is the act of concealment that tolls statutory limitations periods from starting under Alabama law.

### A.   Plaintiffs' claims were filed in *Bennett* within the two-year statutory period following discovery as required by Alabama law.

Alabama law establishes a two-year statute of limitations period for filing product liability claims. Alabama Code Section 6-2-38( 1 ) requires that "[a]ll actions for any injury to the person or rights of another, not arising from contract and not specifically enumerated in this section must be brought within two years." This Code provision establishes the two-year statutory period for filing defective product claims related to Alabama claims contained in the *Bennett* action.

Plaintiff discovered the Knauf drywall markings in their Affected Property via a letter from HomeSouth Inspctions, Inc., dated July 26, 2018. (See SPPF, Section II, Page 2).  Plaintiffs filed their claim in the *Bennett* complaint on August 31, 2018.

Plaintiff filed their claims in *Bennett* within two years of the date of discovery of the markings being found by a professional Chinese drywall inspection company; thus, Plaintiffs claims are not barred by the Alabama statute of limitations for product liability actions.

### B.   Product liability claims are subject to the discovery rule in Alabama.

Plaintiffs' limitations period did not begin to run when they purchased their properties in 2009.  Under Alabama law, a cause of action does not begins to run for purposes of the statute of limitations period if the plaintiff is ignorant of the injury caused by the defendant. The discovery rule in Alabama is statutorily prescribed for product liability actions.  The code specifically states:

> (b) Where the personal injury, including personal injury resulting in death, or property damage (i) either is latent or by its nature is not discoverable in the exercise

of reasonable diligence at the time of its occurrence, and (ii) is the result of ingestion of or exposure to some toxic or harmful or injury-producing substance, element or particle, including radiation, over a period of time as opposed to resulting from a sudden and fortuitous trauma, then, in that event, the product liability action claiming damages for such personal injury, or property damage must be commenced within one year from the date such personal injury or property damage is or in the exercise of reasonable diligence should have been discovered by the plaintiff or the plaintiff's decedent, and in such cases each of the elements of the product liability action shall be deemed to accrue at the time the personal injury is or in the exercise of reasonable diligence should have been discovered by the plaintiff or the plaintiff's decedent; and

Alabama Code § 6-5-502(b).

The Supreme Court of Alabama defined as "[a] hidden or concealed defect," "[o]ne which could not be discovered by reasonable and customary inspection." *Collier v. Duprel*, 480 So.2d 1196, 1199 (Ala. 1985) (citing Black's Law Dictionary (5th ed. 1979). Alabama's discovery rule applies to defective Chinese-manufactured product liability claims.

In this instance, Defendants cannot demonstrate that Plaintiffs, who are laymen with regard to Chinese drywall and which has not been established otherwise by Defendants, should have known that their home contained defective drywall made by Defendant Knauf or that they were being exposed to off-gassing from drywall. Defendants have not presented any tangible evidence to rebut Plaintiff's discovery responses regarding the date of discovery of the defective Knauf product, either actually or constructively at an earlier identifiable date.

It is an unreasonable position that some unidentified smell or corrosion places a homeowner on notice that their home contains defective drywall, particularly when Defendant Knauf has issued no product recall or warning to Alabama homeowners regarding their defective drywall product. In Alabama, like any southern state, there could be any number of environmental sources causing a smell. In addition, there could be environmental sources causing corrosion such as well water or a water supply with a high sulfur content. It is not an

unreasonable explanation for a "smell" to be present in and around a Alabama home caused by an environmental source outside the home. Defendants have failed to provide undisputed proof that a smell noted by Plaintiff intermittently during ownership was indeed generated by Knauf's defective drywall in the Affected Property.

It is an undisputed fact that Plaintiffs have no expertise in environmental contaminants or defective Chinese drywall.  It takes an inspection by an experienced drywall inspector to confirm the existence of defective Chinese-manufactured in a property.  In addition, not every homeowner is prepared to pay a fee between $500.00 and $2,000.00 for a thorough inspection of their home for the presence of defective drywall manufactured by Knauf.   "Discovery" under Alabama law occurs when the manufacturer's markings are found and confirmed by an experienced inspector or some other person with expertise, not at any point earlier. This would be the causal connection to the possible injury.  Reliance on an argument that Plaintiff acted unreasonably to discover the drywall at an earlier date is a genuine difference regarding a material fact in which a trier of fact could find that Plaintiff acted reasonably. Ordinarily, the conduct of the plaintiff is a factual issue for the jury. See, e.g., *Atkins v. American Motors Corporation*, Ala., 335 So.2d 134 (1976).  It is certainly possible for a trier of fact to find that Plaintiff's actions prior to discovery were reasonable; therefore, summary judgment must be denied.

**C.    Defective Chinese-manufactured drywall is a latent defect under Alabama law.**

Under Alabama law, a latent defect is defined as ' [a] hidden or concealed defect,' ' [o]ne which could not be discovered by reasonable and customary inspection.' *Collier v. Duprel*, 480 So.2d 1196, 1199 (Ala. 1985) (citing Black's Law Dictionary (5th ed.1979)).  *Bella Investments Inc. v. Multi Family Services Inc.*, 97 So.3d 787, 795 (Ala. Civ. App. 2012).  Other states have

specifically ruled that Chinese drywall is a latent defect.  For instance, the Louisiana Court of

Appeals, Fifth Circuit, has declared that defective Chinese-manufactured drywall is a latent

defect, specifically finding:

> "We agree with [defendants] and find that the Chinese drywall that caused the
> damages sustained by the [plaintiffs] is a latent defect, which was hidden and
> unknown for [] years."

*Ross v. C. Adams Const. & Design, L.L.C.*, 70 So.3d 949, 954 (La. Ct. App. 2011).

Given that Chinese drywall is a latent defect, knowledge regarding the defect is imputed

to the Knauf Defendants, and the Knauf Defendants only took no action to conceal the problem

from the recipients of their product.  Defendants sent no letters to homeowners or issued a

product recall to warn Alabama homeowners about their defective drywall products;

consequently, Plaintiff detrimentally relied on the absence of warnings after the property was

renovated in 2006-07.  Defendants should be equitably estopped (See Section III(E), *infra*) from

making any argument regarding constructive knowledge of defect or inadequacy of records in

support of Plaintiff's damages claims.  All inferences must be taken in a light most favorable to

Plaintiffs and Defendants' motion is due to be denied.

### D.   Knauf had a duty to warn Plaintiff regarding defective nature of its drywall after the sale but chose to remain silent.

Alabama law recognizes a manufacturer's post-sale duty to warn consumers of defective

products. In a 1998 cased, *Lawley and Bryant Hicks v. Commercial Union Insurance Co*., 652

So.2d 211 (Ala.1994), the Alabama Supreme Court found that a duty to warn is triggered when

the supplier has "no reason to believe" that the user will realize the "dangerous condition" of the

product. Id.; *See also, Gurley v. American Honda Motor Co.*, 505 So.2d 358, 361 (Ala.1987)

(stating that "[t]here is a duty to warn of those dangers which the owner or user would not be

aware of under the particular circumstances of his use of the product in question"); *Ford Motor*

*Co. v. Rodgers*, 337 So.2d 736, 739 (Ala.1976) ("The objective of placing a duty to warn on the

manufacturer or supplier is to inform a user of the danger [of] which he is not aware[;] therefore,

there is no duty to warn when the danger is obvious."). Thus, the manufacturer is not required to

provide a redundant warning, but is required to provide a warning of those dangers that are not

obvious to the consumer.  In 1987, the Alabama Supreme Court found that the duty to warn is a

jury question:

> "Alabama law imposes a duty to warn of inherent and imminent dangers in a
> product when used in its usual manner. *Rivers v. Stihl, Inc*., 434 So.2d 766, 773
> (Ala.1983). Whether there is a duty to warn, and if so, the adequacy of the warning
> are **usually questions for the jury**. *Lowe v. General Motors*, 624 F.2d 1373, 1381-
> 82 (5th Cir.1980). The issue may be withdrawn from the jury only if the risk is so
> remote that reasonable persons could not agree on the existence of a duty to warn.
> *See Grau v. Procter & Gamble Co*., 324 F.2d 309 (5th Cir.1963); *Griggs v. Combe,*
> *Inc*., 456 So.2d 790 (Ala.1984). After a careful review of the evidence, we find that
> reasonable persons could find a duty to warn of the risk of a tire explosion under
> these conditions. As such, the jury was entitled to decide whether there existed such
> a duty."

*State Farm Fire and Cas. Co. v. J.B. Plastics Inc*., 505 So.2d 1223, 1227 (Ala. 1987) (emphasis
added)

The Defendants argue that Plaintiffs were allegedly on notice of the presence of the

defective product produced by Knauf; however, Defendants fail to specify precisely what notice

Plaintiffs received other than a mention of "Chinese drywall" by a technician.  Defendant Knauf

has failed to present anything specific that Plaintiff might have received.  In the case of the

Russell Plaintiffs, Defendants can't produce a notice from Knauf.  And the letter from Plaintiffs'

builder did not place them on actual notice and was not accompanied by an inspection provided

by anyone, including the Knauf Defendants.  Defendants could easily have sent warnings to

potential recipients of its drywall – they're in possession of business records that could have

been used to identify all downstream purchasers and ultimately the recipients of their product.

Defendant Knauf chose to take no such action to remedy the problem they created.  In Alabama,

defective Chinese drywall manufacturers have a duty to warn about certain risks even after a product is no longer in the manufacturer's possession and has been transferred or sold to the consumer or end-user.

If Defendant Knauf's position is that a warning was given to these Plaintiffs, they should produce that warning. This Court must view the omission of a warning or notice by Defendants in a light most favorable to Plaintiffs and find a material fact exists to be decided by a trier of fact regarding notice.

### E. Defendant Knauf's failure to report the sale of its defective product to the CPSC and actively concealment of the nature of the defect tolls the limitations statutory period for Plaintiffs.

Under federal law, manufacturers of defective products sold in the United States fall under the purview of the Consumer Product Safety Act. 15 U.S.C. § 2051, *et seq*. Enacted in 1972, CPSA is a federal statute, establishing the Consumer Product Safety Commission ("CPSC"). The Act also defines CPSC's basic authority and authorizes the agency to develop standards and bans. It also gives CPSC the authority to pursue recalls and to ban products under certain circumstances. The purpose of the Act was defined as:

> (1)   to protect the public against unreasonable risks of injury associated with consumer products;
> (2)   to assist consumers in evaluating the comparative safety of consumer products;
> (3)   to develop uniform safety standards for consumer products and to minimize conflicting State and local regulations; and
> (4)   to promote research and investigation into the causes and prevention of product-related deaths, illnesses, and injuries.

15 U.S.C. § 2051(b).

The Act defines "consumer product" to mean "any article, or component part thereof, produced or distributed (i) for sale to a consumer for use in or around a permanent or temporary household or residence, a school, in recreation, or otherwise, or (ii) for the personal use,

consumption or enjoyment of a consumer in or around a permanent or temporary household or

residence, a school, in recreation, or otherwise." 15 U.S.C. § 2052(a)(5).

This Court has previously ruled that drywall is a product after analyzing the laws of

Alabama, Florida, Louisiana, and Mississippi.  *In re Chinese Mfr. Drywall Prod. Liability Litig*,

680 F. Supp. 2d 780, 797-98 (E.D. La. 2010).  This Court's finding should have *res judicata*

effect in this situation.  Without question, drywall or gypsum board falls under the oversight of

the CPSC; therefore, the reporting requirements apply to the Knauf Defendants.  The CPSC

publishes a recall handbook outlining the steps for a manufacturer to take once it learns of a

product defect.  (a copy is attached hereto as Exhibit C). It is an undisputed fact that the Knauf

Defendants did not report their defective product as required by federal law and they remain in

violation of this law to this very day.

The CPSA provides that when a manufacturer has reason to know its product does not

meet safety standards, contains a defect, or creates an unreasonable risk of death or injury, it

must inform the CPSC. 15 U.S.C. § 2064(b).  There is no grey area – ***they must report the***

***defect***.  Defendant Knauf was certainly aware of the problems their defective drywall was

causing as early as November 7, 2006.  See Exhibit D (Email between Knauf corporate officers

C. Wang, M. Norris, and Jawahar re "USA smelly board," the "situation in Miami is out of

control," and "it will be a big problem not only in Miami but all over the USA Market, maybe

cover thousand of houses.").  Rather than report the defect as required by federal law, Defendant

Knauf chose to conceal the problem.  After one of Defendant Knauf's large distributors

complained of defects in 2007, Defendant Knauf again chose not to notify the CPSC; instead,

they worked to actively conceal the defect by striking a secretive indemnification agreement with

Banner Supply Company.  This is an affirmative act of concealment.  The surreptitious

agreement came to light years after the fact and was reported in a South Florida press.  (See

South Florida Business Journal Article, attached hereto as Exhibit E).  The nature of the

agreement is telling:

> In 2007, the company signed a confidential agreement with the China-based manufacturer, Knauf Plasterboard Tianjin, which is owned by German conglomerate Knauf.  Knauf agreed to take all remaining Chinese drywall from Banner and exchange it with domestic supply, <u>if Banner agreed to stay quiet about the problem</u>.

*South Florida Business Journal,* Paul Brinkmann, June 2, 2010.

It is noteworthy that the Defendants have not produced that indemnification agreement in

their disclosures to Plaintiffs; thus, when taken this continuing concealment in a light most

favorable to Plaintiffs, the nonmovants, it should be considered an act of fraudulent suppression

under Alabama law.  "To state a claim of fraudulent suppression, the plaintiff must allege facts

showing '(1) that the defendant had a duty to disclose material facts; (2) that the defendant

concealed or failed to disclose those facts; (3) that the concealment or failure to disclose induced

the plaintiff to act; and (4) that the defendant's action resulted in harm to the plaintiff.'" *Booker

v. United American Ins. Co*., 700 So.2d 1333, 1339 n. 10 (Ala.1997).  "A defendant's fraudulent

concealment of a cause of action tolls the running of the statute of limitations until the tort was

***actually discovered*** or could have been discovered." *McKenzie v. Janssen Biotech Inc*.,  No.

1170787 (Ala. 2019) (emphasis added); *citing Ladd v. Stockham*, 209 So.3d 457, 468 (Ala.

2016).  A secretive indemnification agreement in return for silence certainly appears to meet the

standard for fraudulent concealment.

The Fifth Circuit held that "[a] passive failure to disclose a fact is fraudulent "only if the

defendant has a duty to disclose that fact." *Trustees of Nw. Laundry Dry Cleaners Health

Welfare Trust Fund v. Burzynski,* 27 F.3d 153, 157 (5th Cir. 1994).  Knauf had a duty to disclose

as the CPSA plainly states.  Fraudulent concealment is an equitable doctrine based on the

premise that "fraud vitiates whatever it touches." *Klein v. O'Neal, Inc.*, Civil Action No. 7:03-

CV-102-D, at *10 (N.D. Tex. May 22, 2008); *citing Borderlon v. Peck,* 661 S.W.2d 907, 909

(Tex. 1983). The defense is established where a defendant knows it has committed a wrong,

intends to conceal that wrong, and successfully does so. *See Shah v. Moss,* 67 S.W.3d 836,

841 (Tex. 2001).

Alabama courts have long held that when a party against whom a cause of action exists,

by fraud or actual fraudulent concealment prevents the party in whose favor it exists from

obtaining knowledge of it, the statutory limitations period only commences to run from the time

the right of action is discovered, or might, by the use of diligence, have been discovered.

*Rumford v. Valley Pest Control, Inc.,* 629 So.2d 623, 627 (Ala. 1993). Given Defendants'

violation of their duty of disclosure under federal and Alabama law that continues to this very

day, the statutory limitations period for Plaintiffs was tolled until actual knowledge of the cause

of action occurred on the date of discovery.  Defendants have provided nothing to demonstrate

that they should be afforded a statute of limitations defense based on a thin theory of constructive

knowledge.

**F.      Equitable estoppel also prevents Defendants from benefitting due to their choice
to intentionally conceal information regarding their defective drywall.**

The principles of equitable estoppel are applicable here to prevent the Knauf Defendants

from taking unfair advantage of homeowners who may have only received limited or inaccurate

information about the defective Knauf-manufactured drywall through some source other than the

CPSC or directly from Defendants during a product recall.  Suggesting that an attorney

solicitation letter, a commercial, a blog, a website, an online chat room or some other unnamed,

non-specific source places Plaintiffs on notice regarding the defective nature of the drywall is not

supported by any authority provided by Defendants in their motion.  Defendant Knauf possessed the most accurate information about their defective product, did not report the defect to the CPSC, did not initiate a corrective action plan (i.e., recall) with CPSC oversight, and did not notify Plaintiffs about the potential defect and took active steps to conceal the problem; consequently, Defendants cannot rely on some other entity to meet their burden to report the defect or notify homeowners that are potentially affected.

In Alabama, equitable estoppel is "[a] promise which the promisor should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise." *Mazer v. Jackson Ins. Agency*, 340 So.2d 770, 772-73 (Ala. 1976); *quoting Bush v. Bush*, 278 Ala. 244, 245, 177 So.2d 568, 578 (Ala. 1964).  Failure to speak when under some duty to speak is precisely what occurred here after Defendant Knauf learned that its drywall was defective in 2006, yet worked to actively conceal the defect from everyone.  Intent is an essential element of equitable estoppel. *Id*.  Thus, it is essential to equitable estoppel that the matters claimed to create it were intended to lead the other party to act thereon or that there were reasonable grounds to anticipate that he would so act. *Id*.  Defendant Knauf's intention to minimize its legal exposure and seek pecuniary gain by choosing to conceal their defective product rather than issue a product recall or specific warning to potentially-affected homeowners is evident.

Equitable estoppel colors all legal defenses and all assertions regarding Plaintiffs damages or documentation offered by Plaintiffs in support of damages being sought.  It also causes Plaintiffs' statutory filing period to toll.  Defendants are equitably estopped from arguing Plaintiff's supporting evidence or date of discovery is deficient in any way, because Plaintiffs

detrimentally relied on the lack of warning while Defendant Knauf knew that their defective drywall might lead to "thousands" of claims for its drywall and remained silent. (See Exhibit D – an email between Knauf corporate officers C. Wang, M. Norris, and Jawahar re "USA smelly board," the "situation in Miami is out of control," and "it will be a big problem not only in Miami but all over the USA Market, maybe cover thousand[s] of houses."). Defendant Knauf has failed to provide proof that a warning was issued at any time to any consumer; thus, a trier of fact must ultimately decide the impact of Defendant Knauf's concealment of their product's defect.

## IV.   CONCLUSION

This lawsuit was filed because Defendant Knauf manufactured defective drywall found in Plaintiff's property. The Knauf Defendants have stipulated that their drywall product is indeed defective. Although counsel for Defendant Knauf has crafted an argument for summary judgment, the facts and law in this instance simply do not support their legal theories or their motion. Plaintiff's claim was timely filed following the date of discovery. Defendants' violation of their duty to warn homeowners under Alabama law and their duty to report their defective product to the CPSC and issue a recall under federal law, coupled with the active concealment of the defect through a secretive, surreptitious indemnification agreement with distributors, causes equitable tolling to occur for Plaintiffs until the date of discovery. For the foregoing reasons provided herein, Defendants' Motion for Summary Judgment should be denied.

/s/ *James V. Doyle, Jr.*

James V. Doyle, Jr.
DOYLE LAW FIRM, PC
2100 Southbridge Pkwy., Suite 650
Birmingham, AL 35209
Tele: 205-533-9500
Fax: 844-638-5812
jimmy@doylefirm.com

*Attorney for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing Plaintiffs R&S Properties, LLC's Opposition to Defendant Knauf's Motion for Summary Judgment has been served on Plaintiffs' Liaison Counsel, Russ Herman, and Defendants' Liaison Counsel, Kerry Miller, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047, on this 16th day of April, 2020.

/s/ *James V. Doyle, Jr.*

James V. Doyle, Jr.
DOYLE LAW FIRM, PC