UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL NO. 2047<br><br>SECTION: L |
| THIS DOCUMENT RELATES TO:<br><br>*Elizabeth Bennett, et al. v. Gebrueder Knauf Verwaltungsgesellschaft, KG, et al.*<br>2:14-cv-02722-EEF-JCW | JUDGE ELDON FALLON<br><br>MAG. JUDGE WILKINSON |

**PLAINTIFF DUNG NGUYEN'S OPPOSITION
<u>TO DEFENDANT KNAUF'S MOTION FOR SUMMARY JUDGMENT</u>**

# Table of Contents

**Page**

I.  STATEMENT OF MATERIAL FACTS……………………………….………  1

    A.  MDL-2047…………………………………………………………….…  1

    B.  The *Bennett* Class Action …………………..…………………………...  3

    C.  Plaintiff Dung Nguyen in the B*ennett* Complaint ……………..……..  4

II.  STANDARD OF REVIEW……………………………………………….…  5

III.  ARGUMENT……………………………………………………………  6

    A.  Plaintiff's claims are timely filed within Mississippi's statutory
filing period …………………………………………………………  8

    B.  Product liability claims are subject to the discovery rule in
Mississippi ……………………………………………………….  9

    C.  Defective Chinese-manufactured drywall is a latent defect and
Plaintiff had no obligation to hire a Chinese drywall inspector
before the date of discovery …………………………………………...  12

    D.  Defendant Knauf's failure to report the sale of its defective product
to the CPSC and actively concealment of the nature of the defect
tolls the limitations statutory period for Plaintiffs …………………..  14

    E.  Defendant Knauf has a duty to warn consumers in Mississippi and
should be equitably estopped from arguing that notice has been
given to any homeowner when Defendant Knauf chose to remain
silent rather than issue a warning and/or product recall ……………  17

IV.  CONCLUSION…………………………………………………………..  21

Plaintiff Dung Nguyen (hereinafter "Plaintiff"), by and through the undersigned counsel of record, opposes the motion for summary judgment (Rec. Doc. 22641) filed by the Knauf Defendants.  As grounds, Plaintiff offers the following:

## I.    STATEMENT OF MATERIAL FACTS

### A.  MDL-2047.

This litigation arises from alleged property damage and caused by the presence of Chinese drywall in homes and other buildings. Hurricanes Katrina and Rita devastated the Gulf Coast in 2005. These disasters, coinciding as they did with a boom in new housing construction, helped precipitate a shortage of drywall for the construction and reconstruction of homes in the United States. As a result, from approximately 2005 to 2008, Chinese drywall entered the United States market, changing hands in the chain of commerce, and ultimately finding its way into thousands of homes and buildings in the United States, primarily in Florida, Louisiana, Alabama, Mississippi, Texas, and Virginia.  Sometime after the installation of Chinese drywall in these properties, homeowners, residents, and occupants began to notice and complain of odd odors, corrosion of metal components, failure of electronics and appliances, and in some cases, physical ailments, such as nose bleeds, skin irritation, and respiratory problems. In response to these complaints, a number of governmental agencies and special interest groups, notably the federal Consumer Products Safety Commission and the Department of Housing and Urban Development, began to investigate, conduct testing, and issue remediation protocols related to Chinese drywall.

The present litigation commenced with the filing of lawsuits in 2009 in both federal and state courts by property owners and occupants damaged by the Chinese drywall installed in their residences and businesses, in addition to suits filed by some homebuilders who repaired these

properties. Defendants include homebuilders, developers, installers, retailers, realtors, brokers, suppliers, importers, exporters, and distributors, as well as their insurers and the insurers of homeowners, who were involved with the Chinese drywall in the affected properties. Because of the commonality of facts in the various federal lawsuits, the litigation was designated as Multi-District Litigation 2047 by the Judicial Panel on Multidistrict Litigation. On June 15, 2009, the Panel transferred all federal actions alleging damages from Chinese drywall to the U.S. District for the Eastern District of Louisiana for coordinated and consolidated proceedings.

Since the inception of MDL 2047, numerous cases were consolidated, containing thousands of claims; in addition, the Court issued numerous opinions, pretrial orders, and minute entries; the Court facilitated mediations; and in the Court thousands of documents were filed. Additionally, the Court coordinated with a number of state and federal court judges who also presided over related Chinese drywall cases.  The discovery revealed that the manufacturers of the drywall in question generally fell into two groups: the Knauf entities[1] and the Taishan entities[2]. After one of the Taishan entities was held in preliminary default, the Court conducted a bellwether evidentiary default hearing.  Shortly thereafter, the Court held its first bellwether, bench trial involving the Knauf entities. With regard to these bellwether proceedings, the Court issued detailed findings of fact and conclusions of law, concluding that the Chinese drywall at issue was in fact defective due to its release of corrosive gasses, requiring remediation of properties containing this drywall. The Court also issued a remediation protocol.

---

[1]  The term "Knauf entities" includes: Knauf Plasterboard (Tianjin) Co., Ltd. ("KPT"), Knauf Plasterboard (Wuhu) Co., Ltd., Guangdong Knauf New Building Material Products Co., Ltd., Knauf Gips KG, Gebr. Knauf Verwaltungsgesellschaft KG, Knauf International GmbH, Knauf Insulation GmbH ("KI"), Knauf UK GmbH, Knauf AMF GmbH & Co. KG, Knauf do Brasil Ltda. and PT Knauf Gypsum Indonesia.

[2]  The term "Taishan entities" includes: Taishan Gypsum Co. Ltd. and Taian Taishan Plasterboard Co. Ltd., among others.

An initial settlement was reached in the Knauf portion of the litigation in October 2010, when the PSC and the Knauf entities entered into a Court-approved pilot program for remediation of homes containing drywall manufactured by Knauf. The pilot program led to a broader settlement agreement that extended the pilot program and provided remediation benefits to plaintiffs with filed claims.  On December 11, 2012, the final Knauf-related agreement, labeled, "Third Amended Settlement Agreement Regarding Claims Against the Knauf Defendants in MDL No. 2047" was filed with the Court.  A preliminary approval of the agreement was issued at the time, but no fairness hearing was immediately held, and no certification of a proposed class was approved.  Instead, the Court later held a consolidated fairness hearing for the five interrelated settlements: L&W; Banner; INEX; Global; and Knauf. Ultimately, on February 7, 2013, the Court certified a settlement class that included the Knauf entities and memorialized the terms in the Third Amended Settlement Agreement.  The Knauf settlement class provided benefits to participants limited to remediation.  All claims other than remediation were omitted including those claims for personal property, negligence, strict liability, consumer protection acts, nuisance, unjust enrichment, or non-pecuniary claims were not settled with the Knauf entities.  In addition, no provision in the Knauf settlement class protected or provided benefits to absent class members.

**B.  The *Bennett* Class Action.**

The original *Bennett* Complaint was filed on November 13, 2014, in the United States District Court for the Northern District of Alabama and was subsequently transferred and consolidated into MDL 2047 via a conditional transfer order issued by the Judicial Panel on Multidistrict Litigation. The Complaint was amended multiple times, primarily to amend the parties.  The Fifth Amended Class Action Complaint was filed on March 6, 2018, and includes

the following claims: 1) negligence and failure to warn; 2) negligence per se; 3) strict liability and failure to warn; 4) breach of express and/or implied warranty; 5) private nuisance; 6) negligent discharge of a corrosive substance; 7) unjust enrichment; 8) violation of the Mississippi Consumer Protection Act; 9) equitable injunctive relief and medical monitoring.  In the prayer for relief, Plaintiffs seek: certification of the class action; order appointing named plaintiffs as class representatives; compensatory, statutory, and/or punitive damages; pre- and post-judgment interest as allowed by law; injunctive relief; an award of attorney's fees as allowed by law; and award of taxable costs; and, any other relief a court deems just and proper. On January 27, 2020, this Court issued an order denying class certification and all claims will proceed on an individual basis permissively joined as allowed by Fed. R. Civ. P. 20.

### C.  Plaintiff Dung Nguyen in the *Bennett* Complaint.

Plaintiff Dung Nguyen owns a property in the State of Mississippi that contains drywall manufactured by the Knauf Defendants that is alleged to be defective.  Plaintiff's claim was filed in the *Bennett* complaint on March 6, 2018.  The street address of Plaintiff's property at issue is: 3 Laudeac Court, Long Beach, MS 39571 ("Affected Property").

Plaintiff purchased the Affected Property on October 15, 2006. The property was sold to Jimmy Le and Hang Le, with owner financing by Plaintiff.  On February 17, 2017, Jimmy Le and Hang Le executed a Deed in Lieu of Foreclosure transferring ownership back to Plaintiff.  A copy of the deed in lieu of foreclosure is attached hereto as Exhibit A.  Plaintiff completed a Plaintiff Profile Form verifying the date that the Knauf drywall was discovered and the identity of the manufacturer confirmed on June 7, 2017.  Plaintiff learned of the defective drywall in his home through an inspection conducted by Healthy Home Solutions, LLC, a professional Chinese drywall inspection company from Slidell, Louisiana.  Plaintiff also completed a Supplemental

Plaintiff Profile Form and a Plaintiff Fact Sheet.  Plaintiffs was deposed by counsel for Knauf on

November 27, 2019, in New Orleans, Louisiana, where he affirmed the responses in his three

discovery forms, including the date of discovery of the defective Knauf-manufactured drywall in

the Affected Property.  Plaintiffs also provided testimony under oath that affirmed the responses

in the discovery documents related to damages, including loss of use and enjoyment, and

personal property damages, among other topics addressed by counsel for the defendants.


## II. STANDARD OF REVIEW

Summary judgment is only warranted "if the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

Civ. P. 56(a).  In making the determination, "all justifiable inferences are to be drawn in [the

non-movant's] favor." *Tolan v. Cotton*, 134 S. Ct. 1861, 1863 (2014) (quoting *Anderson v.

Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). The movant may argue that "there is an absence

of evidence to support the nonmoving party's case," *Celotex Corp. v. Catrett*, 477 U.S. 317, 325

(1986), but "it is never enough simply to state that the non-moving party cannot meet its burden

at trial," *Clark v. Coats & Clark, Inc*., 929 F.2d 604, 608 (11th Cir. 1991). If the non-moving

party provides more than a mere "scintilla of evidence" demonstrating that "the jury could

reasonably find for the plaintiff," it will defeat the motion. *Anderson*, 477 U.S. at 252. This can

be done by pointing out where the record "contains supporting evidence . . . which was

'overlooked or ignored' by the moving party." *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1116

(11th Cir. 1993) (citing *Celotex*, 477 U.S. at 332 (Brennan, J., dissenting)).

## III.   ARGUMENT

Defendants base their summary judgment motion on testimony by Plaintiff that is unclear regarding virtually all dates; thus, it is insufficient for summary judgment to be granted.  It is clear that Plaintiff  owner-financed the sale of Affected property in approximately 2011-12 and had no possession, custody or control of the property until a deed in lieu of foreclosure was signed in 2017.  Plaintiff testified that buyer thought the property had Chinese drywall and that was the reason for the agreement to return Affected Property to Plaintiff.  Plaintiff testified that buyer "probably"[3] mentioned it more than a year prior to ownership being transfer back to Plaintiff, but Plaintiff couldn't remember any precise date with specificity.  Deposing counsel did not elicit any further testimony to clarify the date of discussion between Plaintiff and buyers.

It is clear that within five (5) months of taking ownership back from buyers, an inspection was performed by Healthy Home Solutions, LLC and it confirmed the defective Knauf-manufactured drywall in the home.  In addition, Plaintiff's claim was filed approximately thirteen (13) months after taking ownership back from buyer.  So, taking this timing in a light most favorable to Plaintiff, the claim was filed just over two years after buyer disclosed the suspicion of Chinese drywall in the property and this is within Mississippi's three-year statute of limitations.

Nothing in Plaintiff's deposition or other evidence in the record suggests that Plaintiff was on "actual" notice.  Plaintiff has pled multiple claims that include a failure to warn by Defendants.  In this instance, Defendant Knauf is again hoping the court will overlook their fraudulent concealment regarding the nature their defective product, as well as their ongoing violation of federal law connected to their refusal to report their defective product to the CPSC,

---

[3] Dun Nguyen deposition at 31:8.

issue a recall notice, initiate a corrective action plan that might include providing inspections, and notify homeowners.  Anything short of actual notice that his home actually contains defective Knauf-brand drywall is not actual notice.

Without any warning from Defendants, actual notice would come only after the inspection by Healthy Home Solutions, LLC, that confirmed the presence of defective Knauf-manufactured drywall in 2017.  Prior to that date, it was speculation by laymen.  Defendant Knauf, the manufacturer, never warned any Plaintiffs anywhere at any time, never initiated a recall, and never engaged in a corrective action plan as required by federal law.  The federal law requiring Defendant Knauf to take action is discussed more thoroughly, *infra,* in the section briefing their reporting requirements contained in the CPSA.   Some source on the internet that might contain information about Chinese drywall is not sufficient to meet the notice standard that would support the summary judgment when viewing all inferences in a light most favorable to Plaintiff.

As the argument contained herein articulates, *infra*, Chinese drywall is a latent defect and both statutory filing period starts only after the manufacturer's markings are located and identified.  If a buyer attempting to rescind a purchase or a renter mentions the term "Chinese drywall" after air conditioning repairs, Plaintiff is not on notice.  Anything other than actual notice is a jury question.  The reasonableness of Plaintiffs' actions is a jury question.

Plaintiff offers evidence of Defendants' fraudulent concealment of their product defect.  This tolls Plaintiff's statute of limitations.   A surreptitious indemnification agreement with a distributor (rather than notifying the CPSC and all affected parties) rather than notifying consumers is an act of concealment that tolls statutory limitations periods from starting under Mississippi law.

**A.      Plaintiff's claims are timely filed within Mississippi's statutory filing period.**

Mississippi's MPLA codified strict liability law and provides in pertinent part:

> (a) The manufacturer or seller of the product shall not be liable if the claimant does not prove by the preponderance of the evidence that at the time the product left the control of the manufacturer or seller:
>
> (i) 1. The product was defective because it deviated in a material way from the manufacturer's specifications or from otherwise identical units manufactured to the same manufacturing specifications, or
>
> 2. The product was defective because it failed to contain adequate warnings or instructions, or
>
> 3. The product was designed in a defective manner, or
>
> 4. The product breached an express warranty or failed to conform to other express factual representations upon which the claimant justifiably relied in electing to us e the product; and
>
> (ii) The defective condition rendered the product unreasonably dangerous to the user or consumer; and
>
> (iii) The defective and unreasonably dangerous condition of the product proximately caused the damages for which recovery is sought.

Miss. Code Ann. § 11-1-63 (2013).

According to the MPLA statute, strict liability applies in this case. Sections (a)(ii) and (a)(iii) are precisely what Plaintiff has pled and Defendant Knauf has accepted by stipulating to liability in this case. The MPLA, Mississippi's product liability statute, contains provisions applicable to the prosecution of defective product claims, but it does not specify the applicable statute of limitations.

The limitations period for defective product claims can be found in Miss. Code § 15-1-49 that provides, "all actions for which no other period of limitation is prescribed shall be commenced within three years."  This is a defective product claim.  This Court has previously ruled that drywall is a product after analyzing the laws of Alabama, Florida, Louisiana, and

Mississippi.  *In re Chinese Mfr. Drywall Prod. Liability Litig*, 680 F. Supp. 2d 780, 797-98 (E.D. La. 2010).  This Court's finding should have *res judicata* effect in this situation and any contention that a "subsequent purchaser doctrine" applies in any of these states was settled by this court in 2010.  No privity is necessary in order for Plaintiff to bring this claim under Mississippi law.

Plaintiff discovered the Knauf drywall markings in his Affected Property via an inspection by Healthy Home Solutions, LLC on June 7, 2017.  (See PPF, Section IV, Page 2).  Plaintiff filed his claim in the *Bennett* complaint on March 6, 2018.  Plaintiff filed his claim in *Bennett* within three years of the date of discovery of the markings being found by a professional Chinese drywall inspection company; thus, Plaintiff's claim is not barred by the Mississippi statute of limitations for product liability actions.

**B. Product liability claims are subject to the discovery rule in Mississippi.**

Plaintiff's limitations period did not begin to run when he purchased the property in 2006.  The three-year clock on the statutory filing period typically begins when a plaintiff is injured, but Mississippi law provides a delayed start to the limitations filing period in certain instances when defective products are involved, particularly where there is a latency period or a latent defect.  In this instance, the limitations filing period doesn't start on the date the incident caused the injury because it is latent; instead, the clock starts running when Plaintiff discovered the injury in 2017. And, as presented in Section III(C) of this Opposition, *infra*, "Chinese drywall" is a very specific type of defective product.  The defective drywall claim can only be filed after the cause of an injury, after the manufacturer's markings are located.  Here, Plaintiff's claim was filed just more than one year after discovering the presence of Knauf's defective drywall in the Affected Property.

Defendants have urged the Court to grant summary judgment in this instance because, they allege, Plaintiff learned that the Affected Property contained Knauf's defective product much earlier than Plaintiff acknowledges, but that is clearly in conflict with Plaintiff's deposition and verified discovery forms. Plaintiff affirmed during his deposition that discovery of the Knauf-manufactured drywall occurred through an inspection.

Under Mississippi law, a cause of action accrues or begins to run for purposes of the statute of limitations upon the occurrence of the last element of the cause of action. A discovery rule exists in conjunction with Miss. Code. Ann. §15-1-49 (2010) in the case of a products liability cause of action involving latent injury. The Mississippi Supreme Court has found and continues to hold that, in the case of a latent injury, "the [three]-year limitation statute does not begin to run until by reasonable care and diligence it is discoverable and apparent that a compensable injury has been sustained." *Tabor Motor Co. v. Garrard,* 233 So.2d 811, 814 (Miss.1970); see also *Benoist Elevator Co. v. Mitchell,* 485 So.2d 1068, 1069 (Miss.1986). The "discovery rule" operates to toll the statute of limitations until "a plaintiff 'should have reasonably known of some negligent conduct, even if the plaintiff does not know with absolute certainty that the conduct was legally negligent.'" *Boyles v. Schlumberger Tech. Corp*., 832 So.2d 503, 506(¶ 6) (Miss.2002) (quoting *Sarris v. Smith*, 782 So.2d 721, 725(¶ 13) (Miss.2001)). The statute of limitations begins to run "when the [plaintiff] can reasonably be held to have knowledge of the injury itself, the cause of the injury, and the causative relationship between the injury and the conduct of the [defendant]." *Sarris*, 782 So.2d at 723 (quoting *Smith v. Sanders*, 485 So.2d 1051, 1052 (Miss.1986)). In applying the discovery rule to cases such as this, the Mississippi Supreme Court has stated:

> The discovery rule's application has been greatly expanded over time. *See Barnes v. Singing River Hosp. Sys*., 733 So.2d 199 (Miss.1999) (Mississippi

Tort Claims Act) … At issue in all cases however, is when the plaintiff discovers their [sic] injury or disease. *Sweeney v. Preston*, 642 So.2d 332, 334 (Miss.1994) (quoting *Williams v. Kilgore*, 618 So.2d 51, 55 (Miss.1992)). In *Sweeney* this Court noted that, "knowledge that there exists a causal relationship between the negligent act and the injury or disease complained of is ***essential*** because 'it is well-established that prescription does not run against one who has neither actual nor constructive notice of the facts that would entitle him to bring an action.'" *Id*. (emphasis added). Whether the plaintiff knew about the injury ***has typically been reserved as a jury question***. *Barnes*, 733 So.2d at 205; *[Owens-Illinois, Inc. v.] Edwards*, 573 So.2d [704,] 709 [Miss. 1990].

*PPG Architectural Finishes, Inc. v. Lowery*, 909 So.2d 47, 50 (Miss.2005) (emphasis added).

Defendants cannot demonstrate that Plaintiff, who is a layman, should have known that the home contained defective Knauf drywall or that harmful off-gassing was flowing from the drywall. Plaintiff's cause of action accrues and the limitations period begins to run when Plaintiff can reasonably be held to have knowledge of the injury.  Here, that was not until 2017.

Smelling an odor or seeing tarnish on metal or hearing the term "Chinese drywall" does not place a homeowner on notice that the home actually contains defective Knauf-manufactured drywall.  In Mississippi, like any southern state, there could be any number of environmental sources causing a smell.  In addition, there could be environmental sources causing metal to tarnish such as well water or a water supply with a high sulfur content or smog from a nearby industrial area.

Plaintiffs has no expertise in construction, environmental contaminants, or defective Chinese drywall and Defendants have not established that to be the case in this instance. Plaintiff is a fisherman.  Given the absence of a warning by Defendant Knauf as well as their effort to conceal information about its product defect to end users, it takes confirmation by an experienced drywall inspector to establish the existence of defective Knauf-manufactured Chinese Drywall in a property for the purpose of actual notice.  "Discovery" under Mississippi

law occurs only when the manufacturer's markings are found, not at any point earlier.  Defective Chinese drywall is not manufactured by one entity as this MDL court has learned over the course of the past decade.  Defendants have not presented any tangible evidence that Plaintiff's discovery responses regarding discovery of the defective Knauf product are incorrect and the date of discovery is some earlier identifiable date.  There was no "actual" notice by Defendant Knauf at any point.  Plaintiff was on his own to figure out whether his home contained Defendants' defective product.  Plaintiff's action with regard to any alleged notice, actual or otherwise, is clearly an issue for a jury to decide.

**C.    Defective Chinese-manufactured drywall is a latent defect and Plaintiff had no obligation to hire a Chinese drywall inspector before the date of discovery.**

Defective Chinese-made drywall is not an obvious defect easily seen by a homeowner.  It is hidden inside walls or buried under insulation in attics, in some instances.  With the manufacturer's ink stamp markings concealed inside walls, the defect is considered "latent" according to Mississippi law.  Since at least 1923, Mississippi courts have defined a "latent defect" as one which could not be discovered by the exercise of ordinary diligence.  *See Mincy v. Crisler*, 96 So.162, 163 (Miss. 1923).  Ordinary diligence in examining a property would reveal patent defects (i.e., those that can be discovered by an ordinary inspection).  In 2005, the Mississippi Supreme Court provided us with a little more clarity, stating that a latent injury "is defined as one where the plaintiff will be precluded from discovering harm or injury because of the secretive or inherently undiscoverable nature of the wrongdoing in question ... [or] when it is unrealistic to expect a layman to perceive the injury at the time of the wrongful act." *PPG Architectural Finishes, Inc. v. Lowery*, 909 So.2d 47, 50 (Miss.2005).  To be latent, an injury "must be undiscoverable by reasonable methods." *Id*. at 51. Discovery of defective Chinese-

manufactured drywall is undiscoverable without employing special methods such as an inspection by an experienced defective Chinese drywall inspector.

In *Wayne Gen. Hosp. v. Hayes,* the Mississippi Supreme Court ruled that "to claim benefit of the discovery rule, a plaintiff must be reasonably diligent in investigating the circumstances surrounding the injury. The focus is on the time that the [Plaintiff] discovers or should have discovered by the exercise of reasonable diligence, that he probably has an actionable injury." *Wayne Gen. Hosp. v. Hayes*, 868 So.2d 997, 1001 (Miss.2004) (citations and internal quotations omitted).  The markings on the drywall itself, found inside the walls or buried under insulation in an attic, would certainly qualify as having a secretive or inherently undiscoverable nature; therefore, it is unrealistic to expect Plaintiff, a layman, to perceive or identify the manufacturer responsible for the latent defect.

A Chinese drywall inspection is not a customary search of the home.  It is also expensive. The customary fee for a Chinese drywall specialized inspection in Mississippi is between $500.00 and $2,000.00.   Locating defective Chinese drywall and determining the identity of the manufacturer requires specialized knowledge and experience.  It requires specialized skill to cut holes in drywall at the appropriate locations; it requires utilizing specialized tools and devices; and, in many cases, it requires sending samples to a lab for specialized testing.  Finding defective drywall is rarely done through a casual observation of the premises or by using one's ordinary senses.

This latent defect standard under Mississippi law is contrary to Defendant's argument that a smell in a home or noticing tarnish on metal or having a renter suggest that an air conditioning problem places a duty on the homeowner to hire a Chinese drywall inspector

immediately; consequently, this Court should deny Defendants' motion for summary judgment

and allow a trier of fact to determine whether Plaintiff's actions were reasonable.

**D.    Defendant Knauf's failure to report the sale of its defective product to the CPSC and actively concealment of the nature of the defect tolls the limitations statutory period for Plaintiffs.**

Under federal law, manufacturers of defective products sold in the United States fall

under the purview of the Consumer Product Safety Act. 15 U.S.C. § 2051, *et seq*.  Enacted in

1972, CPSA is a federal statute, establishing the Consumer Product Safety Commission

("CPSC").  The Act also defines CPSC's basic authority and authorizes the agency to develop

standards and bans. It also gives CPSC the authority to pursue recalls and to ban products under

certain circumstances.  The purpose of the Act was defined as:

> (1)    to protect the public against unreasonable risks of injury associated with consumer products;
> (2)    to assist consumers in evaluating the comparative safety of consumer products;
> (3)    to develop uniform safety standards for consumer products and to minimize conflicting State and local regulations; and
> (4)     to promote research and investigation into the causes and prevention of product-related deaths, illnesses, and injuries.

15 U.S.C. § 2051(b).

The Act defines "consumer product" to mean "any article, or component part thereof,

produced or distributed (i) for sale to a consumer for use in or around a permanent or temporary

household or residence, a school, in recreation, or otherwise, or (ii) for the personal use,

consumption or enjoyment of a consumer in or around a permanent or temporary household or

residence, a school, in recreation, or otherwise." 15 U.S.C. § 2052(a)(5).

This Court has previously ruled that drywall is a product after analyzing the laws of

Alabama, Florida, Louisiana, and Mississippi.  *In re Chinese Mfr. Drywall Prod. Liability Litig*,

680 F. Supp. 2d 780, 797-98 (E.D. La. 2010).  This Court's finding should have *res judicata*

effect in this situation.  Without question, drywall or gypsum board falls under the oversight of

the CPSC; therefore, the reporting requirements apply to the Knauf Defendants.  The CPSC

publishes a recall handbook outlining the steps for a manufacturer to take once it learns of a

product defect.  (a copy is attached hereto as Exhibit C). It is an undisputed fact that the Knauf

Defendants did not report their defective product as required by federal law and they remain in

violation of this law to this very day.

   The CPSA provides that when a manufacturer has reason to know its product does not

meet safety standards, contains a defect, or creates an unreasonable risk of death or injury, it

must inform the CPSC. 15 U.S.C. § 2064(b).  There is no grey area – ***they must report the***

***defect***.  Defendant Knauf was certainly aware of the problems their defective drywall was

causing as early as November 7, 2006.  See Exhibit D (Email between Knauf corporate officers

C. Wang, M. Norris, and Jawahar re "USA smelly board," the "situation in Miami is out of

control," and "it will be a big problem not only in Miami but all over the USA Market, maybe

cover thousand of houses.").  Rather than report the defect as required by federal law, Defendant

Knauf chose to conceal the problem.  After one of Defendant Knauf's large distributors

complained of defects in 2007, Defendant Knauf again chose not to notify the CPSC; instead,

they worked to actively conceal the defect by striking a secretive indemnification agreement with

Banner Supply Company.  This is an affirmative act of concealment.  The surreptitious

agreement came to light years after the fact and was reported in a South Florida press.  (See

South Florida Business Journal Article, attached hereto as Exhibit E).  The nature of the

agreement is telling:

> In 2007, the company signed a confidential agreement with the
> China-based manufacturer, Knauf Plasterboard Tianjin, which is
> owned by German conglomerate Knauf.  Knauf agreed to take all

> remaining Chinese drywall from Banner and exchange it with
> domestic supply, <u>if Banner agreed to stay quiet about the problem</u>.

*South Florida Business Journal,* Paul Brinkmann, June 2, 2010.

It is noteworthy that the Defendants have not produced that indemnification agreement in their disclosures to Plaintiffs; thus, when taken this continuing concealment in a light most favorable to Plaintiffs, the nonmovants, it should be considered an act of fraudulent concealment under Mississippi law.  "Along this line, *Robinson v. Cobb*, 763 So.2d 883 (Miss.2000), provides that, in order to toll the limitations period, Plaintiffs must prove: '[Defendant] engaged in *affirmative acts of concealment'*; and "though [Plaintiffs] acted with due diligence in attempting to discover [the claim], they were unable to do so" *Ross v. Citifinancial Inc*., 344 F.3d 458, 463 (5th Cir. 2003) (emphasis added).  Mississippi has codified its fraudulent concealment tolling standard.

> If a person liable to any personal action shall fraudulently conceal
> the cause of action from the knowledge of the person entitled
> thereto, the cause of action shall be deemed to have first accrued at,
> and not before, the time at which such fraud shall be, or with
> reasonable diligence might have been, first known or discovered.

MISS.CODE. ANN. § 15-1-67.

A secretive indemnification agreement in return for silence certainly appears to meet the standard for fraudulent concealment. The Fifth Circuit held that "[a] passive failure to disclose a fact is fraudulent "only if the defendant has a duty to disclose that fact." *Trustees of Nw. Laundry Dry Cleaners Health Welfare Trust Fund v. Burzynski,* 27 F.3d 153, 157 (5th Cir. 1994).  Knauf had a duty to disclose as the CPSA plainly states.  Fraudulent concealment is an equitable doctrine based on the premise that "fraud vitiates whatever it touches." *Klein v. O'Neal, Inc.*, Civil Action No. 7:03-CV-102-D, at *10 (N.D. Tex. May 22, 2008); *citing Borderlon v. Peck,* 661 S.W.2d 907, 909 (Tex. 1983). The defense is established where a defendant knows it has

committed a wrong, intends to conceal that wrong, and successfully does so. *See Shah v. Moss,* 67 S.W.3d 836, 841 (Tex. 2001).

Mississippi courts have long held that when a party against whom a cause of action exists, by fraud or actual fraudulent concealment prevents the party in whose favor it exists from obtaining knowledge of it, the statutory limitations period only commences to run from the time the right of action is discovered, or might, by the use of diligence, have been discovered. Given Defendants' violation of their duty of disclosure under federal and Mississippi law that continues to this very day, the statutory limitations period for Plaintiffs was tolled until actual knowledge of the cause of action occurred on the date of discovery. Defendants have provided nothing to demonstrate that they should be afforded a statute of limitations defense based on a thin theory of constructive knowledge.

**E.   Defendant Knauf has a duty to warn consumers in Mississippi and should be equitably estopped from arguing that notice has been given to any homeowner when Defendant Knauf chose to remain silent rather than issue a warning and/or product recall.**

The Defendants argue that Plaintiff was put on notice by either a renter who mentioned "Chinese drywall" at the time of air conditioning repairs in approximately 2010 or by a buyer negotiating a deed in lieu of foreclosure with Plaintiff who financed the sale. In neither instance had Plaintiff received a warning from Defendants and in neither instance had anyone engaged a professional Chinese drywall inspector. Plaintiff did so after rescinding his sale and taking the home back through the deed in lieu of foreclosure. It is noteworthy in this analysis that failure to warn is specifically alleged in the complaint as a basis of several claims.

Defendant Knauf's defective product was in the Affected Property he purchased in 2006; however, Plaintiff possesses no specialized skill or knowledge regarding defective products and Defendants have not established this in any way. Plaintiff did not identify the Knauf markings

on the drywall until 2017.  Defective "Chinese drywall" is a very specific latent defect in a home.  It is not easily found by laymen homeowners.  It typically requires an experienced Chinese drywall inspector to find the defective drywall and identify the manufacturer.  In order to confirm that defective Chinese-manufactured drywall produced by Knauf is present in a home, all of the following elements must be confirmed: 1) drywall was used in a property; 2) the drywall in the property produces corrosive gasses; 3) the level of corrosive gasses exceeds the ASTM standard; 4) the drywall board was manufactured in China; and 5) the drywall board was produced by a Knauf entity operating in China.  Until all five elements are confirmed, "Chinese drywall" is not confirmed in property.  To argue otherwise is illogical, particularly since the Knauf Defendants issued no warning, notice or product recall to consumers.

If the Defendants are relying on some notice or warning to commence the start of a limitations period or to impute knowledge of a specific latent defect to Plaintiffs at the time of purchase or at a later date, they must provide that specific notice or warning.  In order for Plaintiff or a trier of fact to evaluate the purported warning or notice, it must be specifically produced.  And, following the production of a warning or notice upon which the Defendants rely, this Court must evaluate that specific warning for adequacy when considering this motion.  Several questions must be answered for this Court by Defendants.  What are the specific warnings that Plaintiff and other consumers should have received from Knauf?  What date did Knauf publish the warnings to consumers in Mississippi generally?  Alternatively, what date did Knauf issue a recall and notify Plaintiff directly?

Defendants could easily have sent warnings to potential recipients of its drywall – they're in possession of business records that could have been used to identify all downstream purchasers and ultimately the recipients of their product.  Defendant Knauf was certainly aware

of the problems their defective drywall was causing as early as November 7, 2006.  (See Exhibit D).  Instead, Defendant Knauf chose not to take any action other than to conceal the problem. This Court cannot speculate about the particulars of a notice and must view Knauf's failure to warn in a light most favorable to Plaintiff, the nonmoving party.

In Mississippi, manufacturers have a duty to warn consumers about certain risks at the time of sale and a duty to issue a recall once the defective product is no longer in the manufacturer's possession.  The Mississippi Product Liability Act ("MPLA") governs, "any action for damages caused by a product…" Miss. Code Ann. § 11-1-63. The MPLA specifically describes the adequacy of a warnings as:

> (ii) An adequate product warning or instruction is one that a reasonably prudent person in the same or similar circumstances would have provided with respect to the danger and that communicates sufficient information on the dangers and safe use of the product, taking into account the characteristics of, and the ordinary knowledge common to an ordinary consumer who purchases the product; or in the case of a prescription drug, medical device or other product that is intended to be used only under the supervision of a physician or other licensed professional person, taking into account the characteristics of, and the ordinary knowledge common to, a physician or other licensed professional who prescribes the drug, device or other product.

Miss. Code Ann. § 11-1-63(c)(2).

Given the omission of any product warning at the time of sale, Defendants cannot argue that an adequate warning was provided to Plaintiffs.  Defendants clearly knew that their product was defective in 2006, possibly earlier, yet intentionally concealed this fact from consumers in the United States, including Plaintiffs.

The principles of equitable estoppel are applicable here to prevent the Knauf Defendants from taking unfair advantage of homeowners who may have only received limited or inaccurate information about the defective Knauf-manufactured drywall through some other source such as

a website, blog, or chat room.  Defendant Knauf possessed the most accurate information about their defective product and cannot rely on some other entity to meet their burden.  In Mississippi, the elements of equitable estoppel are: "conduct and acts, language or silence, amounting to a misrepresentation or concealment of material facts with knowledge or imputed knowledge of such facts, with the intent that the representation be relied upon, with the other party's ignorance of the true facts, and reliance to his damage upon the representation or silence." *Chapman v. Chapman*, 473 So.2d 467, 469-70 (Miss.1985).  Failure to speak when under some duty to speak is precisely what occurred here after Defendant Knauf learned that its drywall was defective in 2006.  This equitable estoppel principle is applicable to all claims by Plaintiff.

Mississippi law is clear - adequacy of Defendant Knauf's warning is clearly a question reserved for the trier of fact. "The issue of a warning's adequacy is factual and usually will be resolved by the trier of fact." *Wyeth Laboratories, Inc. v. Fortenberry*, 530 So.2d 688, 692 (Miss.1988).  The substance of the allegedly inadequate warning itself is vital to making this determination. *Palmer v. Volkswagen of America, Inc*., 905 So.2d 564, 575 (Miss. Ct. App. 2003).  Defendant Knauf has failed to provide proof that a warning was issued at any time to any consumer; thus, a trier of fact will decide the impact of Defendant Knauf's concealment of their product's defect when evaluating all damages sought at trial.

The Restatement of Torts (Third) also directly addresses the failure to warn issue. "Among the factors to be considered" by the trier of fact in determining whether a manufacturer has a duty to warn end-users directly are: (1) "the gravity of the risks posed by the product"; (2) "the likelihood that the intermediary will convey the information to the ultimate user"; and (3) "the feasibility and effectiveness of giving a warning directly to the user." Restatement (Third) of Torts: Products Liability § 2 comment i. The use of the word "among" demonstrates that this

list of factors is intended to be inclusive rather than exhaustive. At bottom, the "standard is one of reasonableness." *Id*. Thus, depending on the facts and circumstances presented in each case, other pertinent factors may be considered when deciding whether a manufacturer has a duty to warn end-users. But, without any specific warning from or by Defendant, this court must view the omission in a light most favorable to Plaintiff, the nonmovant, and find that a genuine issue of material fact exists regarding the notice that might have commenced the Mississippi three-year statute of limitations for defective products. Under Mississippi law, this is clearly a question for a trier of fact.

## IV.   CONCLUSION

This lawsuit was filed because Defendant Knauf manufactured defective drywall found in Plaintiff's property. The Knauf Defendants have stipulated that their drywall product is indeed defective. Although counsel for Defendant Knauf has crafted an argument for summary judgment, the facts and law in this instance simply do not support their legal theories or their motion. Plaintiff's claim was timely filed following the date of discovery. Defendants' violation of their duty to warn homeowners under Mississippi law and their duty to report their defective product to the CPSC and issue a recall under federal law, coupled with the active concealment of the defect through a secretive, surreptitious indemnification agreement with distributors, causes equitable tolling to occur for Plaintiffs until the date of discovery. For the foregoing reasons provided herein, Defendants' Motion for Summary Judgment should be denied.

Respectfully submitted by:

/s/ *James V. Doyle, Jr.*

James V. Doyle, Jr.
DOYLE LAW FIRM, PC
2100 Southbridge Pkwy., Suite 650
Birmingham, AL 35209
Tele: 205-533-9500
Fax: 844-638-5812
jimmy@doylefirm.com
*Attorney for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the above and foregoing Plaintiff Dung Nguyen's Opposition to Defendant Knauf's Motion for Summary Judgment has been served on Plaintiffs' Liaison Counsel, Russ Herman, and Defendants' Liaison Counsel, Kerry Miller, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047, on this 18th day of April, 2020.


/s/ *James V. Doyle, Jr.*

James V. Doyle, Jr.
DOYLE LAW FIRM, PC