UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In Re: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL 2047<br><br>SECTION "L"<br><br>JUDGE ELDON FALLON<br><br>MAGISTRATE JOSEPH WILKINSON, JR. |
| This document relates to:<br><br>*Elizabeth Bennett, et al v. Gebr. Knauf Verwaltungsgesellschaft, KG, et al*<br><br>Case No. 14:cv-2722 | |

**REPLY MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT ON CLAIMS ASSERTED BY MICHAEL GINART AND ALICE GINART**

**MAY IT PLEASE THE COURT:**

Defendant, Knauf Gips KG and Knauf Plasterboard (Tianjin) Co., Ltd. (the "Knauf Defendants"), through undersigned counsel, respectfully submit this Reply Memorandum in Support of its Motion for Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure as to the claims asserted by Michael Ginart and Alice Ginart (collectively "Plaintiffs") against it in Plaintiffs' Fifth Amended Class Action Complaint (the "Fifth Amended Complaint"). There is no genuine issue of material fact, and the claims asserted by Michael Ginart and Alice Ginart should be dismissed because the Ginarts' claims are prescribed on their face as they had actual notice of the allegedly defective Chinese drywall in the Property more than one year before filing claims in this matter.

I.  **Plaintiffs acquired knowledge of damage sufficient to commence the running of prescription.**

In the instant matter, Plaintiffs' petition alleges that the Knauf Defendants' defective drywall was installed around 2006, emitting "noxious gasses"[1]—Michael Ginart is a plaintiff listed in the Bennett Complaint, filed November 13, 2014,[2] and Alice Ginart is listed as a plaintiff in Plaintiff's Second Motion to Intervene, filed October 7, 2019.[3] "Thus, the face of the petition indicates the cause of action has prescribed, a situation requiring the plaintiff to bear the burden of demonstrating that the claim has not prescribed."[4] As shown below, the Knauf Defendants additionally offer evidence demonstrating that Plaintiffs had actual knowledge of the allegedly defective condition in 2012, such that "prescription runs from [this] date[.]"[5]

II.  **The Ginarts received an InEx settlement notice program letter in 2012.**

First, the Ginarts received an InEx settlement notice program letter in 2012. The Ginart's Property address is listed as a recipient of the notice that was sent pursuant to the InEx settlement notice program in 2012.[6] Plaintiffs do not dispute this. Although Plaintiffs contend that this fact conflicts with their deposition testimony,[7] Plaintiffs cite no deposition testimony in their Opposition to support this contention. Not only is there no conflict, the deposition testimony supports the fact that the Ginarts received an InEx settlement notice program letter in 2012 because Michael Ginart testified that the Ginarts received a letter regarding the presence of Chinese drywall in their Property sometime in the 2012-2013 timeframe.[8] Plaintiffs' Opposition speculates that this

---

[1] R. Doc. 14-02204 ¶¶ 23, 25, 27, 31.
[2] R. Doc. 14-02204.
[3] R. Doc. 22334.
[4] *Cornay v. FMC Corp.*, 98-1312 (La. App. 3 Cir. 6/2/99); 735 So. 2d 944, 947, *writ denied,* 99-2352 (La. 11/19/99); 749 So. 2d 676 (citations omitted).
[5] *Bailey*, 891 So. 2d at 1276 (quoting *Harvey,* 593 So. 2d at 354).
[6] R. Doc. 8268-4 p. 8 of 18; R. Doc. 14404-3 p. 11 of 119.
[7] R. Doc. 22704 p. 11.
[8] R. Doc. 22628-3 pp. 5-6.

letter could have been a letter from an attorney, alleging that some attorneys sent out solicitation letters that attached invoices.[9] Not only do Plaintiffs offer no support for this assertion, this assertion wholly ignores the fact that the Ginart's Property address is listed as a recipient of the notice that was sent pursuant to the InEx settlement notice program in 2012. Overall, Plaintiffs have only offered speculation in their Opposition, and there is no dispute that the Ginarts received an InEx settlement notice program letter in 2012.

### III. The InEx settlement notice program letter provided the Ginarts with Actual Notice.

Next, the InEx settlement notice program letter provided the Ginarts with actual notice such that their claims are prescribed.[10] This letter provided the Ginarts with actual notice such that their claims are prescribed. Typically, the one-year liberative prescription period applicable to all products liability claims under Louisiana Civil Code article 3492 begins to run the day the injury or damage is sustained.[11] "When damages are not immediate, the action in damages thus is formed and begins to prescribe only when the tortious act actually produces damage and not on the day the act was committed."[12] The damage suffered must be "actual and appreciable in quality" but "there is no requirement that the quantum of damages be certain or that they be fully incurred, or incurred in some particular quantum, before the plaintiff has a right of action."[13] "Thus, in cases in which a plaintiff has suffered some but not all of his damages, prescription runs from the date on which he first suffered actual and appreciable damage, even though he may thereafter come to

---

[9] R. Doc. 22704 p. 8.
[10] Although Plaintiffs contend that the Knauf Defendants have not produced the letter or attached it as an exhibit, a copy of the InEx settlement notice program letter is in the record at R. Doc. 15749-8.
[11] *See Carter v. Matrixx Initiatives, Inc.*, 391 F. App'x 343, 344-45 (5th Cir. 2010); La. Civ. Code art. 3492; *see also* Rec. Doc. 22615 at 25.
[12] *Bailey v. Khoury*, 2004-0620 (La. 1/20/05); 891 So. 2d 1268, 1276 (quoting *Harvey v. Dixie Graphics, Inc.,* 593 So. 2d 351, 354 (La. 1992)).
[13] *Bailey*, 891 So. 2d at 1276 (quoting *Harvey,* 593 So. 2d at 354).

a more precise realization of the damages he has already incurred or incur further damage as a result of the completed tortious act."[14]

The letter contained detailed information regarding Chinese drywall and attached invoices relating to the delivery of the drywall.[15] Courts have held that class settlement notices constitute actual notice to recipients and start the clock running for statute of limitations or prescription purposes.[16] Accordingly, this letter put the Ginarts on actual notice that their Property contained Chinese drywall. Contrary to Plaintiffs' assertions, there is no requirement that the notice originated from the Knauf Defendants. In *Hogg*, cited by Plaintiffs, the Louisiana Supreme Court held that letters from the LDEQ regarding environmental contamination were sufficient notice for prescription to commence.[17] There, the notice originated from the LDEQ, not the allegedly liable party.[18] Yet, Plaintiffs only argument attempting to distinguish this matter from *Hogg* is that the Knauf Defendants did not send the notice to the Plaintiffs. As illustrated by the very case Plaintiffs rely on, it makes no difference where the notice came from.

Further, Plaintiffs' sophistication or layperson status does not impact the prescription analysis when actual notice has been given. As demonstrated in the cases cited by Plaintiffs, questions of sophistication or layperson status apply when the issue is whether or not the defect was discoverable through a simple inspection.[19] Here, the issue is not whether the Plaintiffs should have discovered the allegedly defective drywall because they had actual notice upon receipt of the settlement letter.

---

[14] *Bailey*, 891 So. 2d at 1276 (quoting *Harvey,* 593 So. 2d at 354).
[15] R. Doc. 15749-8.
[16] *In re Briscoe*, 448 F.3d 201, 220-21 (3rd Cir. 2006); *In re Vioxx Prods. Liab. Litig.*, 522 F. Supp. 2d 799, 802 (E.D. La. 2007).
[17] *Hogg v. Chevron USA, Inc.,* 2009-2632 (La. 7/6/10); 45 So.3d 991.
[18] *Id.*
[19] See, e.g., *Crow v. Laurie*, 98-0648 (La.App. 1 Cir. 2/19/99, 6); 729 So.2d 703, 707–08 ("Whether an inspection is reasonable depends upon the facts of each case and includes such factors as the knowledge and expertise of the buyer, the opportunity for inspection, and the assurances made by the seller.")

Plaintiffs contend that the prescriptive period can only begin for any plaintiff in this case when "the manufacturer's markings are found and confirmed by an experienced inspector or some other person with expertise, not at any point earlier."[20] Plaintiffs cannot cite any legal support for this fabricated standard that would essentially render pointless the purpose of prescriptive periods. Further, not only does this belie logic, it ignores this Court's dismissal of the Martinez plaintiffs where the prescriptive period began regardless of an experienced inspector's involvement.[21]

Consequently, Plaintiffs have not provided this Court with any evidence refuting the Knauf Defendants' evidence that the Ginarts received an InEx settlement notice program letter in 2012, and the InEx settlement notice program letter provided the Ginarts with actual notice of the allegedly defective drywall in their Property such that the Ginarts' claims are prescribed.

### IV.     Plaintiffs conflate the legal standards and corresponding burdens of proof pertaining to prescription and *contra non valentem*.

"As a general rule, the burden of proof rests upon a defendant pleading prescription as an affirmative defense."[22] However, when the face of the petition reveals that the plaintiff's claim has prescribed, the burden shifts to the plaintiff to show why the claim has not prescribed.[23] Consequently, "[i]t is well settled that a plaintiff bears the burden of proving that the doctrine of *contra non valentem* should be applied to interrupt or suspend the running of prescription."[24]

Louisiana law recognizes the doctrine of *contra non valentem*, under which the prescriptive period does not begin to run at the time actual and appreciable damage is first suffered by the plaintiff. Louisiana courts have recognized four factual situations in which *contra non valentem* prevents the running of liberative prescription, including "where the cause of action is neither

---

[20] R. Doc. 22704 p. 15.
[21] R. Doc. 22615 at p. 28-29.
[22] *Hilman v. Succession of Merrett*, 291 So. 2d 429, 431 (La. Ct. App. 1974).
[23] *Hogg v. Chevron USA, Inc.*, 2009-2632 (La. 7/6/10); 45 So. 3d 991, 998.
[24] *La Plaque Corp. v. Chevron U.S.A. Inc.*, 638 So. 2d 354, 358 (La. Ct. App.), *writ denied,* 94-2125 (La. 11/11/94); 644 So. 2d 395 (citing *Intracoastal Seafood Co. v. Scott*, 556 So. 2d 974, 976 (La. Ct. App. 1990)).

known nor reasonably knowable by the plaintiff even though plaintiff's ignorance is not induced by the defendant."[25] However, the doctrine of *contra non valentem* does not apply when plaintiff's ignorance is willful, results from his neglect, or where plaintiff should have known of his cause of action by exercising reasonable diligence.[26] Thus, contrary to Plaintiffs' arguments, prescription commences when the plaintiff has a reasonable basis to pursue a claim against a defendant.[27] Identification of the proper defendant is not required for commencement of the period.[28]

Finally, although Plaintiffs state in their opposition: "The application of *contra non valentum* [sic] does not require 'extraordinary circumstances,' and it is regularly applied by Louisiana courts,"[29] this Court has previously recognized in this MDL that "the Louisiana Supreme Court has cautioned [that] the doctrine of *contra non valentem* or equitable tolling is an extraordinary remedy, to be applied only in 'exceptional circumstances.'"[30]

**V.   This Court should not entertain Plaintiffs' revived "duty to warn" arguments that it has already rejected.**

In their opposition, Plaintiffs rehash and reframe their previous argument that the Knauf Defendants had a duty to take some additional affirmative action to place Plaintiffs on notice of

---

[25] *Marin v. Exxon Mobil Corp.*, 2009-2368 (La. 10/19/10); 48 So. 3d 234, 245.

[26] *Jordan v. Employee Transfer Corp.*, 509 So. 2d 420, 423 (La. 1987) (citations omitted). ("[W]hen a plaintiff suspects something is wrong, he must 'seek out those whom he believes may be responsible for the specific injury.' … When a plaintiff acts reasonably to discover the cause of a problem, "the prescriptive period [does] not begin to run until [he has] a reasonable basis to pursue a claim against a specific defendant.") Chevron USA, Inc. v. Aker Mar., Inc., 604 F.3d 888, 894 (5th Cir. 2010) (quoting Jordan, 509 So. 2d at 423-24) (emphasis in original).

[27] Plaintiffs argue, "'Discovery' under Louisiana law occurs when the manufacturer's markings are found and confirmed by an experienced inspector or some other person with expertise, not at any point earlier. This would be the causal connection to the possible injury." Rec Doc. 22704 at 15. Plaintiffs cannot cite any legal support for this fabricated definition of discovery that would essentially render pointless the purpose of prescriptive periods.

[28] *Bowers v. Orleans Par. Sch. Bd.*, 95-2530 (La. App. 4 Cir. 5/29/96); 694 So. 2d 967, 973 (citation omitted).

[29] Rec. Doc. 22704 at 11-12 (quoting *Carter v. Haygood*, 892 So. 2d 1261, 1268 (La. 2005)). The case cited by Plaintiffs as the source of this quote and proposition, *Carter v. Haygood*, 892 So. 2d 1261 (La. 2005), contains no such quote nor does it stand for this position. Plaintiffs' fabricated legal standard is not rooted in existing law and is in direct conflict with the standard recognized by this Court and Louisiana law.

[30] *In re Chinese-Manufactured Drywall Prod. Liab. Litig.*, No. CV-MDL-2047, 2019 WL 1057003, at *12 (E.D. La. Mar. 6, 2019) (citations omitted). *See also La Plaque Corp. v. Chevron U.S.A. Inc.*, 638 So. 2d 354, 356 (La. Ct. App.), *writ denied,* 94-2125 (La. 11/11/94); 644 So. 2d 395 ("*Contra non valentem* is an exceptional remedy recognized by our jurisprudence which is in direct contradiction to the articles in the Civil Code and therefore should be strictly construed.") (citations omitted).

their defective product, and that their failure to do so has suspended the running of prescription. Plaintiffs present a handful of creative arguments on this point, all of which must ultimately fail.

First, Plaintiffs argue that the Knauf Defendants had a duty to warn under Louisiana law and failed to carry out that duty, tolling the prescriptive period.[31] This Court has previously rejected this precise argument.[32] Further, even if a latent defect exists, which is denied, a latent defect would not absolve Plaintiffs because they each had actual notice sufficient to trigger the prescriptive period—as shown above. Plaintiffs do not dispute this analysis in their Opposition. Rather, Plaintiffs merely raise the latent defect issue to assert that knowledge of the alleged defect should be imputed to the Knauf Defendants.[33] Even if that were the case, such an imputation of knowledge does not erase Plaintiffs' knowledge of the alleged defect. Consequently, this Court should once more reject Plaintiffs' arguments that the prescriptive period should be suspended due alleged latent defects, failure to warn, and/or equitable estoppel. To accept Plaintiffs' arguments would lead to absurd results and undermine the purpose of La. C.C.P. art 3492. Also, in arguing that the defects in the drywall were "latent," Plaintiffs directly contradict the oft-repeated allegation in the Complaint that the drywall emits "noxious gases."[34] Plaintiffs cannot use their Opposition brief to raise new claims.[35]

---

[31] Rec. Doc. 22704 at 17-18.
[32] Rec. Doc. 22615 at 27-28. (Concluding "it would not have been reasonably possible for Knauf to identify all those to whom a post-sale duty to warn may have been owed under Louisiana law." and "Knauf did undertake an extensive notice program during the major settlement phase of this MDL to identify potential claimants and notify them of their right to participate in the settlement.")
[33] R. Doc. 22704 pp. 15-16.
[34] R. Doc. 21334 at ¶¶ 23, 25, 27, 31.
[35] *See, e.g., DeKort v. Integrated Coast Guard Sys.*, 475 F. App'x 521, 522 (5th Cir. 2012) ("We also conclude that the district court did not err in denying DeKort's motion for partial summary judgment because he attempted to raise a new claim, not asserted in his fifth amended complaint."); *see also Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1314 (11th Cir. 2004) ("[T]he Supreme Court has mandated a liberal pleading standard for civil complaints under Federal Rule of Civil Procedure 8(a). This standard however does not afford plaintiffs with an opportunity to raise new claims at the summary judgment stage.").

Second, Plaintiffs reframe their duty to warn argument by contending that the prescriptive period should be suspended because the Knauf Defendants have not reported the sale of their drywall to the Consumer Product Safety Commission ("CPSC") nor recalled their product pursuant to the Consumer Product Safety Act, 15 U.S.C. § 2051, *et seq.* ("CPSA").[36] Plaintiffs' argument is flawed for numerous reasons—both factual and legal.

At the outset, the Knauf Defendants note that the CPSA is not a standalone regulatory text; and it does not establish a statutory framework regulating the Knauf Defendants' business, nor does it singularly create an affirmative legal duty to which the Knauf Defendants must adhere. Most importantly, the CPSA does not establish a private right of action on behalf of Plaintiffs.[37] Thus, if the Knauf Defendants failed to comply with the CPSA, the Plaintiffs would lack standing.

Additionally, the CPSA reporting requirements cited by Plaintiffs are circumvented if the CPSC has been adequately informed of a product defect.[38] On May 25, 2010, the CPSC issued a warning concerning the Knauf Defendants' Chinese drywall.[39] To the extent the Knauf Defendants were required to report the defective drywall under 15 U.S.C. § 2064 (they were not), and this reporting requirement suspended prescription (it does not), such a requirement was fulfilled in 2010 and does not suspend prescription on Plaintiffs' claims beyond this time.

Further, the CPSA reporting requirements cited by Plaintiffs apply solely to failures to comply with CPSC requirements,[40] product defects that create a substantial risk of injury to the public,[41] and products that create an unreasonable risk of serious injury or death.[42] The reporting

---

[36] Rec. Doc. 22704 at 18-21.
[37] 15 U.S.C. § 2061(a).
[38] 15 U.S.C. § 2064(b).
[39] U.S. CPSC, *CPSC Identifies Manufacturers of Problem Drywall Made in China*, CPSC.gov (May 25, 2010), https://www.cpsc.gov/Newsroom/News-Releases/2010/CPSC-Identifies-Manufacturers-of-Problem-Drywall-Made-in-China.
[40] 15 U.S.C. § 2064(b)(1)-(2).
[41] *Id.* § 2064(a)(2) & (b)(3).
[42] *Id.* § 2064(b)(4).

requirements do not apply to *all* products that "contain[] a defect" as Plaintiffs falsely advocate,[43] only those that create a substantial risk of injury to the public, both of which must "create[] a substantial risk of injury to the public" to invoke the reporting requirements. There is no evidence that the Knauf Defendants' defective drywall fits this definition, a fact that the CPSC has confirmed on its website, additionally noting that the Knauf Defendants are not required to recall their product.[44] Rather, the CPSC has implemented specific regulations—including the Drywall Safety Act of 2012—designed to combat the issues previously encountered with defective drywall.[45] This Court must reject Plaintiffs' arguments regarding the CPSA.

Third, Plaintiffs aver that the prescription should be suspended because the Knauf Defendants fraudulently concealed known problems with their drywall.[46] In support of this farfetched argument, Plaintiffs cite a Florida news article from 2010 referencing a *suspected* agreement between the Knauf Defendants and a drywall distributor in Florida. Plaintiffs have not cited *any reputable evidence* in support of their fraudulent concealment theory, demonstrating its baselessness. Instead, Plaintiffs blame the Knauf Defendants for their lack of evidentiary support, stating that "[i]t is noteworthy that the Defendants have not produced that indemnification agreement [referenced in the Florida news article] in their disclosures to Plaintiffs[.]"[47] Nearly a decade of discovery occurred in this MDL, all of which Plaintiffs received (from both the Knauf Defendants and Banner Supply Company), and none of which supports Plaintiffs' present position.

---

[43] Rec. Doc. 22704 at 19.
[44] *See* U.S. CPSC, *Other Frequently Asked Questions*, CPSC.gov, https://www.cpsc.gov/content/other-frequently-asked-questions (last visited April 17, 2020); *see also* U.S. CPSC, *CDC Review Finds No Link Between Problem Drywall and 11 Reported Deaths*, CPSC.gov (January 31, 2011), https://www.cpsc.gov/Newsroom/News-Releases/2011/CDC-Review-Finds-No-Link-Between-Problem-Drywall-and-11-Reported-Deaths/.
[45] U.S. CPSC, *Drywall Business Guidance*, CPSC.gov, https://www.cpsc.gov/Business--Manufacturing/Business-Education/Business-Guidance/Drywall (last visited April 17, 2020).
[46] Rec. Doc. 22704 at 19-21.
[47] Rec. Doc. 22704 at 20.

Plaintiffs never sought leave to conduct discovery under the CMO and cannot now be excused from adequately supporting their position due to their own neglect.

As a final note, even if this Court did rely on one Florida journalist's speculations and theories, the article is irrelevant to Plaintiffs' claims. Plaintiffs' Property is located in Louisiana, not Florida, and Plaintiffs have no connection to Banner Supply Company (a Florida distributor) because their drywall was purchased from Interior Exterior Building Supply (a Louisiana distributor). Also, the article, published in 2010, does not demonstrate that the prescriptive period could be suspended beyond this time.

Respectfully submitted,

**FISHMAN HAYGOOD, LLP**

/s/ *Kerry J. Miller*
**KERRY J. MILLER (#24562), T.A.**
**PAUL C. THIBODEAUX (#29446)**
201 St. Charles Avenue, Suite 4600
New Orleans, LA 70170
Telephone:     504.556.5549
Facsimile:      504.310.0275
Email:            kmiller@fishmanhaygood.com
***Counsel for Defendants,***
***Knauf Gips KG and***
***Knauf Plasterboard (Tianjin) Co., Ltd.***

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing pleading has been served upon Russ Herman, Plaintiffs' Liaison Counsel, by email, to all parties by electronically uploading the same to LexisNexis File & Serve in accordance with Pre-Trial Order No. 6, individually to pro se claimants via U.S. Mail, and that the foregoing was filed with the Clerk of Court of the United States Court for the Eastern District of Louisiana, on this 20th day of April, 2020.

/s/ *Kerry J. Miller*
**KERRY J. MILLER**