UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL NO. 2047<br><br>SECTION: L |
| THIS DOCUMENT RELATES TO:<br><br>*Elizabeth Bennett, et al. v. Gebrueder Knauf Verwaltungsgesellschaft, KG, et al.*<br>2:14-cv-02722-EEF-JCW | JUDGE ELDON FALLON<br><br>MAG. JUDGE WILKINSON |

**PLAINTIFFS' OMNIBUS OPPOSITION
TO DEFENDANT KNAUF'S OMNIBUS MOTIONS FOR SUMMARY JUDGMENT
(Docs. 22631, 22632, and 22689)**

# Table of Contents

**Page**

I. STATEMENT OF MATERIAL FACTS…………………………….………… 1

    A. MDL-2047…………………………………………………………. 1

    B. The *Bennett* Class Action …………………...……………………... 4

    C. Plaintiffs in the *Bennett* Complaint …………………………………….. 4

II. STANDARD OF REVIEW……………………………………………….…. 6

III. ARGUMENT………………………………………………………………… 7

    A. Louisiana law …………………………………………………. 11

    B. Mississippi law ………………………………………………. 13

    C. Texas law ………………………………………………………….. 13

IV. CONCLUSION…………………………………………………………….. 21

Plaintiffs Jason Arnold, Mardechria Charles, Feng Hu and Simin Liu, Mathew and Susan Issman, Karen and Kerry McCann, Nicole and Michael Norris, Mark and Kimberlie Perez, Wayne and Kristal Province, Estate of Veronica Rosenaur, Chien Van Pham and Bich Nguyen, Xiaochun Xi and Jinjiang Wang (herein "Louisiana Plaintiffs"); Plaintiffs 1329 Gum, Jackson Land Trust, Richard Calevro, Mary Sue Caranna, William Foreman, Candace Forzard And David Fozard, Wade Gauthreaux and Sheryl Gauthreaux, Jeremy Jordan, Mark Lee And Shannon Renee Lee, David Martino And Brittany Martino, Billy Mccullar, Peggy A. Mcculler and Andree Mcculler, Dung Nguyen, Peter Robinson, Rachel Schoerner, and, The Van Tran And Chin Thi Nguyen (hereinafter "Mississippi Plaintiffs"); Plaintiffs Frank Grande, Suzan Grande, CJ Properties, Karen Beth Baldwin, and David Neil Baldwin (herein "Texas Plaintiffs"); (collectively, Louisiana, Mississippi, and Texas Plaintiffs referred herein as "All Plaintiffs), by and through the undersigned counsel of record, oppose the motions for summary judgment (Docs. 22631, 22632, and 22689) filed by the Knauf Defendants.  As grounds, Plaintiffs offer the following:

I. STATEMENT OF MATERIAL FACTS

    A.  MDL-2047.

This litigation arises from alleged property damage and caused by the presence of Chinese drywall in homes and other buildings. Hurricanes Katrina and Rita devastated the Gulf Coast in 2005. These disasters, coinciding as they did with a boom in new housing construction, helped precipitate a shortage of drywall for the construction and reconstruction of homes in the United States. As a result, from approximately 2005 to 2008, Chinese drywall entered the United States market, changing hands in the chain of commerce, and ultimately finding its way into thousands of homes and buildings in the United States, primarily in Florida, Louisiana, Alabama,

Mississippi, Texas, and Virginia.  Sometime after the installation of Chinese drywall in these properties, homeowners, residents, and occupants began to notice and complain of odd odors, corrosion of metal components, failure of electronics and appliances, and in some cases, physical ailments, such as nose bleeds, skin irritation, and respiratory problems. In response to these complaints, a number of governmental agencies and special interest groups, notably the federal Consumer Products Safety Commission and the Department of Housing and Urban Development, began to investigate, conduct testing, and issue remediation protocols related to Chinese drywall.

The present litigation commenced with the filing of lawsuits in 2009 in both federal and state courts by property owners and occupants damaged by the Chinese drywall installed in their residences and businesses, in addition to suits filed by some homebuilders who repaired these properties. Defendants and declaratory judgment plaintiffs include homebuilders, developers, installers, retailers, realtors, brokers, suppliers, importers, exporters, and distributors, as well as their insurers and the insurers of homeowners, who were involved with the Chinese drywall in the affected properties. Because of the commonality of facts in the various federal lawsuits, the litigation was designated as Multi-District Litigation 2047 by the Judicial Panel on Multidistrict Litigation. On June 15, 2009, the Panel transferred all federal actions alleging damages from Chinese drywall to the U.S. District for the Eastern District of Louisiana for coordinated and consolidated proceedings.

Since the inception of MDL 2047, numerous cases were consolidated, containing thousands of claims; in addition, the Court issued numerous opinions, pretrial orders, and minute entries; the Court has facilitated mediations; and in the Court thousands of documents have been filed. Additionally, the Court has corresponded and coordinated with a number of state and

federal court judges who also preside over related Chinese drywall cases. The discovery revealed that the manufacturers of the drywall in question generally fell into two groups: the Knauf entities[1] and the Taishan entities[2]. After one of the Taishan entities was held in preliminary default, the Court conducted a bellwether evidentiary default hearing. Shortly thereafter, the Court held its first bellwether, bench trial involving the Knauf entities. With regard to these bellwether proceedings, the Court issued detailed findings of fact and conclusions of law, concluding that the Chinese drywall at issue was in fact defective due to its release of corrosive gasses, requiring remediation of properties containing this drywall. The Court also issued a remediation protocol.

An initial settlement was reached in the Knauf portion of the litigation in October 2010, when the PSC and the Knauf entities entered into a Court-approved pilot program for remediation of homes containing drywall manufactured by Knauf. The pilot program led to a broader settlement agreement that extended the pilot program and provided remediation benefits to plaintiffs with filed claims. On December 11, 2012, the final Knauf-related agreement, labeled, "Third Amended Settlement Agreement Regarding Claims Against the Knauf Defendants In MDL No. 2047" was filed with the Court. A preliminary approval of the agreement was issued at the time, but no fairness hearing was immediately held and no certification of a proposed class was approved. Instead, the Court later held a consolidated fairness hearing for the five interrelated settlements: L&W; Banner; INEX; Global; and Knauf.

---

[1] The term "Knauf entities" includes: Knauf Plasterboard (Tianjin) Co., Ltd. ("KPT"), Knauf Plasterboard (Wuhu) Co., Ltd., Guangdong Knauf New Building Material Products Co., Ltd., Knauf Gips KG, Gebr. Knauf Verwaltungsgesellschaft KG, Knauf International GmbH, Knauf Insulation GmbH ("KI"), Knauf UK GmbH, Knauf AMF GmbH & Co. KG, Knauf do Brasil Ltda. and PT Knauf Gypsum Indonesia.

[2] The term "Taishan entities" includes: Taishan Gypsum Co. Ltd. and Taian Taishan Plasterboard Co. Ltd., among others.

Ultimately, on February 7, 2013, the Court certified a settlement class that included the Knauf entities and notice was published. The Knauf settlement class provided benefits to participants limited to remediation. All other claims were omitted including those claims for personal property, negligence, strict liability, consumer protection acts, nuisance, unjust enrichment, or non-pecuniary claims were settled with the Knauf entities.

### B. The *Bennett* Class Action.

The original *Bennett* Complaint was filed on November 13, 2014, in the United States District Court for the Northern District of Alabama and was subsequently transferred and consolidated into MDL 2047 via a conditional transfer order issued by the Judicial Panel on Multidistrict Litigation. The Complaint was amended multiple times, primarily to amend the parties. The Fifth Amended Class Action Complaint was filed on March 6, 2018, and includes the following claims: 1) negligence; 2) negligence per se; 3) strict liability; 4) breach of express and/or implied warranty; 5) Redhibition (by Louisiana plaintiffs); 6) Louisiana Products Liability Act (by Louisiana plaintiffs); 7) private nuisance; 8) negligent discharge of a corrosive substance; 9) unjust enrichment; 10) violation of the states' consumer protection laws; 11) equitable injunctive relief and medical monitoring. In the prayer for relief, Plaintiffs seek: compensatory, statutory, and/or punitive damages; pre- and post-judgment interest as allowed by law; injunctive relief; an award of attorney's fees as allowed by law; and award of taxable costs; and, any other relief a court deems just and proper. On January 27, 2020, this Court issued an order denying class certification and All Plaintiffs' claims will proceed individually.

### C. Plaintiffs in the *Bennett* Complaint.

Louisiana Plaintiffs each own a property in the State of Louisiana that contains drywall manufactured by the Knauf Defendants that is alleged to be defective. A copy of each Louisiana

4

Plaintiff's cash sale document is attached as Exhibit A.  Each Louisiana Plaintiff had an inspection performed to confirm the presence Knauf's drywall by Healthy Home Solutions, LLC, a professional Chinese drywall inspection company operating in Slidell, Louisiana.  A copy of the summary letters for Louisiana Plaintiffs from Healthy Home Solutions for each property is attached as Exhibit B.

Mississippi Plaintiffs each own a property in the State of Mississippi that contains drywall manufactured by the Knauf Defendants that is alleged to be defective.  A copy of each Mississippi Plaintiff's warranty deed is attached as Exhibit C.  Each Mississippi Plaintiff had an inspection performed to confirm the presence Knauf's drywall by Healthy Home Solutions, LLC, a professional Chinese drywall inspection company operating in Slidell, Louisiana.  A copy of the summary letters for Mississippi Plaintiffs from Healthy Home Solutions for each property is attached as Exhibit D.

Texas Plaintiffs each own a property in the State of Texas that contains drywall manufactured by the Knauf Defendants that is alleged to be defective.  A copy of each Texas Plaintiff's warranty deed is attached as Exhibit E.  Each Texas Plaintiff had an inspection performed to confirm the presence Knauf's drywall by Healthy Home Solutions, LLC, a professional Chinese drywall inspection company operating in Slidell, Louisiana.  A copy of the summary letters for Texas Plaintiffs from Healthy Home Solutions for each property is attached as Exhibit F.

All Plaintiffs' claims were filed into the *Bennett* complaint on or after November 13, 2014.  The properties at issue with defective drywall that are owned by Plaintiffs are referred to herein as "Affected Property" or "Affected Properties."  Plaintiffs assert all claims in the Fifth

Amendment Complaint and seeks all relief available under the appropriate state law where the Affected Properties are located.

All Plaintiffs named herein completed the three discovery documents approved by this Court: 1) Plaintiff Profile Form; 2) Supplemental Plaintiff Profile Form; and, 3) Plaintiff Fact Sheet. Plaintiffs were deposed by counsel for Knauf at varying times during 2019 in New Orleans, Houston, Biloxi, or Jackson. At their respective depositions, All Plaintiffs confirmed the contents of their discovery forms and attachments, including the presence of Knauf's product in their respective Affected Properties.

## II. STANDARD OF REVIEW

Summary judgment is only warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In making the determination, "all justifiable inferences are to be drawn in [the non-movant's] favor." *Tolan v. Cotton*, 134 S. Ct. 1861, 1863 (2014) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). The movant may argue that "there is an absence of evidence to support the nonmoving party's case," *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986), but "it is never enough simply to state that the non-moving party cannot meet its burden at trial," *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). If the non-moving party provides more than a mere "scintilla of evidence" demonstrating that "the jury could reasonably find for the plaintiff," it will defeat the motion. *Anderson*, 477 U.S. at 252. This can be done by pointing out where the record "contains supporting evidence . . . which was 'overlooked or ignored' by the moving party." *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1116 (11th Cir. 1993) (citing *Celotex*, 477 U.S. at 332 (Brennan, J., dissenting)).

### III.  ARGUMENT

The three motions being opposed by this omnibus opposition are all based upon one legal theory presented by Defendants – that a subsequent purchaser doctrine bars All Plaintiffs' claims.  In each motion, Defendants have presented case law with instances of injury to real property where the courts in Louisiana, Mississippi and Texas have held that an injury to the real property before purchase by the plaintiffs required an assignment or subrogation of rights in order for the subsequent purchaser to have standing to file a claim against the responsible party.  In these three states, the law is fairly consistent with regard to injury to real property that occurs prior to purchase.

In support of the Louisiana-related summary judgment motion (Doc. 22631), Defendants offer *Eagle Pipe & Supply, Inc. v. Amerada Hess Corp.*, 79 So. 3d 246 (La. 2011), a case involving mineral rights.  Defendants cited the portion of the *Eagle Pipe* opinion that finds that a current property owner has no right to recover from a third party for [real] property damages caused prior to his purchase. *Id*. at 262, 279.  Defendants also offered *Broussard v. Dow Chem Co.*, 550 Fed. Appx. 241 (5th Cir. 2013), another case involving to mineral rights with the same general holding.

In support of the Mississippi-related summary judgment motion (Doc. 22689), Defendants offer *Henderson v. Copper Ridge Homes, LLC*, 273 So. 3d 750 (Miss. 2019), a case involving a deed of trust issue.  There, the court found that a promissory note or its separate contract with a party did not travel with the land and a separate assignment was required for the buyer to possess the right to sue.  Defendants argue that the Mississippi law is the same as Louisiana's subsequent purchaser doctrine.

In support of the Texas-related summary judgment motion (Doc. 22632), Defendants offer *Brooks v. Chevron USA, Inc.*, No. 13-05-029-CV, 2006 WL 1431227 (Tex. Ct. App. May 25, 2006), a case involving subdivision properties that had been contaminated by oil-production activities before plaintiffs purchased their lots. There, the court found that the injury to the soil occurred at the time the thing that causes the injury commences, years before plaintiffs purchased the property. *Id*. at *6. The Texas court also found that the personal right to sue belongs to the person who owned the property at the soil was contaminated. *Id*. Defendants again argue that Texas has the very same law as Louisiana with respect to subsequent purchasers to sue for damage to real property.

Defendants supporting case law and argument are premised on the injury to the land being the equivalent of defective Chinese drywall. If Chinese drywall is an injury to real property in the same way mineral rights, mineral leases, subsurface contamination, or deed of trust deficiencies are viewed under the laws of these states, then the subsequent purchaser doctrine argument might apply. The fundamental flaw in Defendants' argument is that defective Chinese drywall is not viewed the same. It is factually dissimilar to the defects that require an assignment or subrogation of rights in the case law they offered. Defendants have chosen to avoid addressing the one published opinion in the Fifth Circuit that directly addresses whether Defective Chinese drywall is an injury to the land or a defective product that may proceed through tort actions against a manufacturer. *See, In re Chinese Manufactured Drywall Products Liability Litigation*, 680 F.Supp.2d (E.D.La. 2010).

In 2010, this Court considered multiple motions related to the economic loss rule for homeowners who purchased their homes after the Chinese drywall was installed. The opinion did not address the claims of individual homeowners that purchased and installed the defective

8

sheetrock themselves or with their oversight. In the analysis, this Court considered whether the defective drywall should be treated like asbestos or other defective products. This analysis and the conclusions reached by this Court directly impact Defendants' subsequent purchase doctrine theory. Motions by builders, distributors, plaintiffs' counsel, and manufacturers were considered by this Court in its ruling. The participating manufacturers included Knauf Plasterboard (Tianjin) Co., Ltd and Knauf Gips, KG. *Id*. at 785. In this Court's analysis, the laws of Florida, Mississippi, Alabama, and Louisiana were evaluated.

The first step in the analysis involved determining whether to adopt the view in *Casa Clara*[3], a Florida case, that held tort claims for economic losses caused by "crumbling, cracking concrete used to construct their homes on the basis that the homes plaintiffs purchased were the 'product' and the concrete was an integral part of the product-home which only damaged itself. *Id*. at 783. Since the time it was published, *Casa Clara* had been criticized and clarified by a number of subsequent Florida rulings in sister courts. Ultimately, this Court rejected the "house is the product" view with regard to Chinese drywall because the damage caused by Chinese drywall is fundamentally different than a failing product. As the Court noted, defective Chinese drywall functions as intended within the building. But, it's the hazardous off-gassing that corrodes and causes health effects and collateral personal property damage for its owners.

The second step in the analysis germane to the instant motion involves whether Chinese drywall functions as intended and only injures itself. The first type of defect claim evaluated was a defective turbine in *East River Steamship Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 106 S.Ct. 2295, 90 L.Ed.2d 865 (1986). This Court's analysis was instructive regarding Chinese drywall:

---

[3] *Casa Clara Condo. Ass'n , Inc. v. Charley Toppino & Sons, Inc.*, 620 So.2d 1244 (Fla. 1993).

> [T]he Chinese drywall in the instant matter is operating as intended- as an interior wall and/or ceiling, a room divider, a shell for insulation and wiring, and a base for hanging various items, such as lighting fixtures and decorative items. It is not crumbling, deteriorating or failing to serve its intended purpose. The allegations involving the Chinese drywall are that it is contaminating the home by giving off noxious fumes which are corroding certain metal elements located within the property where the drywall is installed, and is causing health problems to the inhabitants of this property. Factually, this contrasts with defective turbines which ceased to run.
>
> …
>
> [I]n the instant matter, the drywall is functioning as intended, so the structural expectations of the Plaintiffs with regard to the drywall are not disappointed. Additionally, the Plaintiffs are not in privity with the Manufacturer and Distributor Defendants, so they, unlike the plaintiff in *East River*, are not left with breach of contract and breach of warranty actions against these defendants (**except in Louisiana where by statute the purchaser or ultimate consumer does have breach of warranty claims against the manufacturer under the LPLA**).

*Id*. at 792 (emphasis added).

Ultimately, this Court decided that Chinese drywall claims are analogous to asbestos claims, stating:

> The facts of the instant matter are analogous to the facts in these, and the many other asbestos cases. The Chinese drywall has been installed in numerous homes and in each instance is functioning as drywall. This is similar to the asbestos fireproofing which was installed in numerous building and functions as fire-proofing. Additionally, the Chinese drywall is releasing contaminates, causing damage to the building and those occupying the buildings, just as the asbestos. Accordingly, there exist the same bases for allowing tort claims for economic losses in the instant matter, as there are in the in the asbestos cases.

*Id*. at 798.

The finding that Chinese drywall functions as intended and meets the structural expectations of the homeowners is a crucial finding in the subsequent purchaser analysis for the

instant motion. The drywall product doesn't fail; the latent defect that causes injury is hazardous off-gassing of noxious and corrosive fumes by the product for an extended duration, causing damage to the building, those occupying the building, and the corporeal movable property contained within the building; consequently, as this Court held, the house is not the product and the damage caused by the off-gassing can be pursued as a tort claim by the end-users, the Plaintiffs in this action, utilizing the various states' tort statutes. This Court's finding regarding Chinese drywall is *res judicata*. The doctrine of res judicata is a four-pronged test. The Fifth Circuit has said that for *res judicata* to apply:

> "(1) the parties must be identical in the two actions; (2) the prior judgment must have been rendered by a court of competent jurisdiction; (3) there must be a final judgment on the merits; and, (4) the same cause of action must be involved in both cases."

*Eubanks v. Federal Deposit Deposit Insurance Corp.*, 977 F.2d 166, 169 (5th Cir. 1992). Here, all four-prongs are met. The Defendants participated in both actions, the prior judgment was rendered in this Court, the final judgment was on the merits, and the same cause of action is involved in both cases.

**A.  Louisiana law.**

Plaintiffs have alleged in their complaint that the defective Chinese drywall manufactured by Defendants has damaged property other than the product itself. Louisiana allows tort claims under the LPLA for "damages to the product itself and economic loss arising from a deficiency in or loss of use of the product to the extent that such recovery for damage or economic loss is not provided for under the law of Redhibition." La.Rev.Stat. Ann. § 9:2800.53(5). Redhibition imposes on a "good faith" seller the responsibility to repair, remedy or correct the defect, La. Civ. Code Ann. art. 2531, and imposes upon a manufacturer or "bad faith" seller liability for "the return of the price with interest from the time it was paid, for the reimbursement

11

of the reasonable expenses occasioned by the sale and those incurred for preservation of the thing, and also for damages and reasonable attorneys fees." La. Civ. Code Ann. art. 2545. In addition, there is no requirement that the claimant be in contractual privity with the manufacturer in order to recover. La.Rev.Stat. Ann. § 9:2800.53(4).

In this instance, Plaintiffs have alleged and intend to present evidence at trial that Defendants are "bad faith" sellers that knew the product they were selling was defective no later than 2006, yet took no action to notify any importers, distributors, builders, subcontractors, or end-users (homeowners). An internal Knauf email demonstrates Defendants knowledge that their defective product would likely lead to thousands of lawsuits. (attached hereto as Exhibit G). In addition, after Defendants received complaints regarding their product defect through Banner Supply Company, a large Florida distributor, Defendants struck a secretive indemnification agreement rather than comply with notice and reporting requirements under Florida and federal law. (South Florida Business Journal article attached hereto as Exhibit H).

This Court's finding in 2010 is consistent with Louisiana's definition of "product." According to La.Rev.Stat. Ann. § 9:2800.53(3), a "product" is a "corporeal movable that is manufactured for placement into trade or commerce." The term also includes "a product that forms a component part of or that is subsequently incorporated into another product. Or an immovable." *Id*. Thus, the drywall sold as a product and incorporated into an immovable, such as a building, may be treated as a "product" and tort claims under the LPLA without the need for privity with the manufacturer.

This Court's finding that Chinese drywall is to be treated in a fashion similar to asbestos claims, which are not damage to real property and therefore don't require an assignment or subrogation of rights like mineral rights, leasing rights, or defective title issues. The assignment

requirement is precisely what Defendants claim is necessary to satisfy their subsequent purchaser doctrine theory; however, this Court specifically ruled that Chinese drywall claims may be pursued against the manufacturer utilizing the LPLA. In this respect, this Court's ruling should be given *res judicata* treatment.

Out of an abundance of caution, several of the Louisiana Plaintiffs have secured an assignment of personal rights to sue Defendants on the issue of Chinese drywall. Attached hereto as Exhibit I are assignments executed by prior owners of Affected Properties transferring their rights to Karen & Kerry McCann, Mark & Kimberlie Perez, Wayne & Kristal Province, Veronica Rosenaur, Chien Van Pham & Bich Nguyen, and Jay Jinjiang Wang and Xiaochun Xi.

**B.  Mississippi law.**

This Court evaluated the law for each affected state in its 2010 ruling. With regard to Mississippi, it was held that there is no bar under Mississippi law to prevent tort claims for Chinese drywall from going forward. Two cases from the Southern District of Mississippi were considered, one involving a defective water heater and the other a leaky oil seal that caused an engine to fail. *Id*., 680 F.Supp. at 795. Neither case was factually similar to Chinese drywall, because the Chinese drywall continues to function as intended. It is the effect of the drywall on the surrounding caused by the off-gassing; thus, the analysis described *supra* holds when applied to Mississippi law.

Defendants have argued in their Mississippi-related omnibus summary judgment motion (Doc. 22689) based on an alleged subsequent purchaser doctrine, Mississippi's law is similar to Louisiana. Defendants urge this court to maintain consistency with its prior rulings. Plaintiffs urge the same, particularly with regard to the analysis of Chinese drywall claims in the 2010 ruling. If the house is not the product and the damages sustained by Plaintiffs was caused by a

product that resembles asbestos rather than failing heaters or oil seals, the cause of action is not a prior owner's to potentially withhold from Plaintiffs in this action. If the damage is not inflicted to the real property at a time prior to Mississippi Plaintiffs' ownership, then there is nothing that must be assigned or subrogated; consequently, the alleged subsequent purchaser doctrine theory must fail. This Court held that, in Mississippi, the product claims in Chinese drywall may proceed as allowed by Mississippi law.

The Mississippi Product Liability Act ("MPLA") governs, "any action for damages caused by a product…" Miss. Code Ann. § 11-1-63. According to the MPLA statute, strict liability applies to defective products. Sections (a)(ii) and (a)(iii) are precisely what Plaintiff has pled and Defendant Knauf has accepted by stipulating to liability in this case for their defective product. *Res judicata* is a doctrine of claim preclusion. *McIntosh v. Johnson*, 649 So.2d 190, 193 (Miss.1995). It precludes parties from litigating in a second action claims within the scope of the judgment of the first action. This includes claims which "were made or should have been made, in the prior suit." *Anderson v. LaVere*, 895 So.2d 828, 832 (Miss. 2004). Mississippi Plaintiffs urge this Court to adopt the analysis contained in its 2010 ruling as *res judicata* in this instance. If adopted, there is no subsequent purchaser doctrine defense available to Defendants and their motion for summary judgment must be denied.

C. **Texas law.**

Texas law was not considered in the 2010 ruling; however, Defendants presented a case in support of their motion involving subsurface soil contamination to demonstrate the subsequent purchaser doctrine application under Texas law. That case is factually dissimilar to Chinese drywall, in the same fashion as the cases considered in Alabama, Florida, Louisiana, and Mississippi. Given the Defendants consistent refrain, again asserted in the Texas omnibus

14

summary judgment motion, that Texas law is similar to Louisiana law, Plaintiffs urge this Court to apply the same analysis regarding Chinese drywall as it did for the other four states (Alabama, Florida, Louisiana, and Mississippi).

If the analysis rejecting *Casa Clara's* finding that the "home is the product" is again adopted here, coupled with the finding that Chinese drywall is functioning as intended and the damage comes from the off-gassing that affects the inhabitants and other personal property in an ongoing basis, then there is no personal right possessed by previous owners that must be assigned or subrogated to Plaintiffs prior to filing this defective product claim. Consequently, Defendants' motion for summary judgment regarding the Texas Plaintiffs must be denied.

Although Texas law was not specifically considered, *res judicata* should still apply to the analysis regarding Chinese drywall claims proceeding under state tort laws. *Res judicata* bars the re-litigation of claims that have been finally adjudicated, or that could have been litigated, in a prior action. *See TC & C Real Estate Holdings Inc. v. Sherrod*, (Tex. Ct. App. 2014); *Barr v. Resolution Trust Corp.*, 837 S.W.2d 627, 628 (Tex. 1992). For *res judicata* to apply in Texas, the following elements must be present: (1) a prior final judgment on the merits by a court of competent jurisdiction; (2) the same parties or those in privity with them; and (3) a second action based on the same claims as were raised or could have been raised in the first action. *Igal v. Brightstar Info. Tech. Group, Inc.*, 250 S.W.3d 78, 86 (Tex. 2008); *Citizens Ins. Co. v. Daccach*, 217 S.W.3d 430, 449 (Tex. 2007). Thus, a party may not pursue a claim determined by the final judgment of a court of competent jurisdiction in a prior suit as a ground of recovery in a later suit against the same parties. *Igal*, 250 S.W.3d at 86; *Tex. Water Rights Comm'n v. Crow Iron Works*, 582 S.W.2d 768, 771-72 (Tex. 1979).

Product liability in Texas is a strict liability offense. If there is a defect in the product and the product led to harm, the defendant is liable. "Products liability action" means any action against a manufacturer or seller for recovery of damages arising out of personal injury, death, or property damage allegedly caused by a defective product whether the action is based in strict tort liability, strict products liability, negligence, misrepresentation, breach of express or implied warranty, or any other theory or combination of theories. Tex. Civ. Prac. & Rem. Code Ann. § 82.001(2).  "Manufacturer" means a person who is a designer, formulator, constructor, rebuilder, fabricator, producer, compounder, processor, or assembler of any product or any component part thereof and who places the product or any component part thereof in the stream of commerce. Tex. Civ. Prac. & Rem. Code Ann. § 82.001(4).

Plaintiff urge this Court to adopt the analysis of Chinese drywall claims contained in its 2010 ruling as *res judicata* in this instance with regard to the analysis that can and should be applied to Texas law.  If adopted, there is no subsequent purchaser doctrine defense available to Defendants and their motion for summary judgment must be denied.

## IV. CONCLUSION

Chinese drywall claims are factually dissimilar to the mineral rights and subsurface contamination cases offered by Defendants in support of their summary judgment motion.  This Court analyzed the case law of four states and found that Chinese drywall claims are most similar to asbestos cases due to the hazardous effect that continues for years after installation.  And, asbestos cases are not damage to real property; rather, they're a hazardous substance that functions as intended, yet causes damage to individuals for years following installation.  In asbestos cases, no supporting case law has found a requirement that a claimant must acquire a personal right to sue for their injury.  This court's finding in 2010 allows for homeowners to

16

proceed in tort actions without the need for an assignment or subrogation of a personal right to sue, because the Chinese drywall is not an injury to real property. Therefore, no subsequent purchaser doctrine defense can prevail. For the foregoing reasons provided herein, Defendants' Omnibus Motions for Summary Judgment (Docs. 22631, 22632, and 22689) should be denied.

/s/ *James V. Doyle, Jr.*

James V. Doyle, Jr.
DOYLE LAW FIRM, PC
2100 Southbridge Pkwy., Suite 650
Birmingham, AL 35209
Tele: 205-533-9500
Fax: 844-638-5812
jimmy@doylefirm.com

*Attorney for Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing Plaintiffs Omnibus Opposition to Defendant Knauf's Omnibus Motions for Summary Judgment has been served on Plaintiffs' Liaison Counsel, Russ Herman, and Defendants' Liaison Counsel, Kerry Miller, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047, on this 21st day of April, 2020.

/s/ *James V. Doyle, Jr.*

James V. Doyle, Jr.
DOYLE LAW FIRM, PC