UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In Re:  **CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION** | **MDL 2047**<br><br>**SECTION "L"** |
| **This document relates to:**<br><br>*Elizabeth Bennett, et al v. Gebr. Knauf Verwaltungsgesellschaft, KG, et al*<br><br>**Case No. 14:cv-2722** | **JUDGE ELDON FALLON**<br><br>**MAGISTRATE JOSEPH WILKINSON, JR.** |

**REPLY MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT ON CLAIMS ASSERTED BY JAY JINJIANG WANG AND RUBY XIAOCHUN XI**

Defendants, Knauf Gips KG and Knauf Plasterboard (Tianjin) Co., Ltd. (the "Knauf Defendants"), respectfully submit this Reply Memorandum in Support of their Alternative Motion for Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure as to the claims asserted by Plaintiffs, Jay Jinjiang Wang ("Wang") and Ruby Xiaochun Xi ("Xi") against them in Plaintiffs' Fifth Amended Class Action Complaint (the "Fifth Amended Complaint"), and to respond to Plaintiffs' arguments raised in opposition thereto.[1]

**I.    Plaintiffs conflate the legal standards and corresponding burdens of proof pertaining to prescription and *contra non valentem*.**

"As a general rule, the burden of proof rests upon a defendant pleading prescription as an affirmative defense."[2] When the face of the petition reveals that the plaintiff's claim has prescribed, the burden shifts to the plaintiff to show it has not prescribed.[3] "It is well settled that a plaintiff

---

[1] Rec. Docs. 22664, 22709.
[2] *Hilman v. Succession of Merrett*, 291 So. 2d 429, 431 (La. Ct. App. 1974).
[3] *Hogg v. Chevron USA, Inc.*, 2009-2632 (La. 7/6/10); 45 So. 3d 991, 998. "This traditional allocation of the burden of proof is altered somewhat when prescription is raised through a motion for summary judgment … . In such a case, the movant is required to prove, based solely on documentary evidence and without the benefit of testimony at a hearing, that there is no genuine material factual issue in dispute regarding the date upon which the plaintiffs acquired

bears the burden of proving that the doctrine of *contra non valentem* should be applied to interrupt or suspend the running of prescription."[4]

Typically, the one-year prescription period applicable under Louisiana Civil Code article 3492 begins to run the day the injury or damage is sustained.[5] "When damages are not immediate, the action … begins to prescribe only when the tortious act actually produces damage and not on the day the act was committed."[6] The damage suffered must be "actual and appreciable in quality" but "there is no requirement that the quantum of damages be certain or that they be fully incurred, or incurred in some particular quantum, before the plaintiff has a right of action."[7]

However, Louisiana law recognizes the doctrine of *contra non valentem*, under which the prescriptive period does not begin to run at the time actual and appreciable damage is first suffered by the plaintiff. Louisiana courts have recognized four factual situations in which *contra non valentem* prevents the running of liberative prescription, including "where the cause of action is neither known nor reasonably knowable by the plaintiff even though plaintiff's ignorance is not induced by the defendant."[8] However, *contra non valentem* does not apply when plaintiff's ignorance is willful, results from his neglect, or where plaintiff should have known of his cause of action by exercising reasonable diligence.[9] "[W]hen a plaintiff suspects something is wrong, he must **'seek out those whom he believes may be responsible for the specific injury.'** … When a

---

actual or constructive knowledge of the damage sufficient to commence the running of prescription." *Id.* (citation omitted).

[4] *La Plaque Corp. v. Chevron U.S.A. Inc.*, 638 So. 2d 354, 358 (La. Ct. App.), *writ denied*, 94-2125 (La. 11/11/94); 644 So. 2d 395 (citing *Intracoastal Seafood Co. v. Scott*, 556 So. 2d 974, 976 (La. Ct. App. 1990)).

[5] *See Carter v. Matrixx Initiatives, Inc.*, 391 F. App'x 343, 344-45 (5th Cir. 2010); La. Civ. Code art. 3492; *see also* Rec. Doc. 22615 at 25.

[6] *Bailey v. Khoury*, 2004-0620 (La. 1/20/05); 891 So. 2d 1268, 1276 (quoting *Harvey v. Dixie Graphics, Inc.,* 593 So. 2d 351, 354 (La. 1992)).

[7] *Id.* (quoting *Harvey*, 593 So. 2d at 354). "Thus, in cases in which a plaintiff has suffered some but not all of his damages, prescription runs from the date on which he first suffered actual and appreciable damage, even though he may thereafter come to a more precise realization of the damages he has already incurred or incur further damage as a result of the completed tortious act." *Id.* (quoting *Harvey*, 593 So. 2d at 354).

[8] *Marin v. Exxon Mobil Corp.*, 2009-2368 (La. 10/19/10); 48 So. 3d 234, 245.

[9] *Jordan v. Employee Transfer Corp.*, 509 So. 2d 420, 423 (La. 1987) (citations omitted).

plaintiff acts reasonably to discover the cause of a problem, 'the prescriptive period [does] not begin to run until [he has] a reasonable basis to pursue a claim against a specific defendant.'"[10]

Thus, prescription begins to run, not when the plaintiff has identified the particular defendant responsible for the injury,[11] but when the plaintiff has a reasonable basis to pursue a claim against a defendant. Identification of the proper party is not required for commencement of prescription—*contra non valentem* "only suspends the running of prescription during the period of time when the action was not *reasonably knowable* by the plaintiff[,]"[12] it does not suspend the running of prescription when the plaintiff does not know the specific defendant responsible for his injury, particularly when that ignorance is due to plaintiff's own lack of diligence.[13]

Finally, this Court has previously recognized in this MDL that "the Louisiana Supreme Court has cautioned [that] the doctrine of *contra non valentem* or equitable tolling is an extraordinary remedy, to be applied only in 'exceptional circumstances.'"[14] Nevertheless, Plaintiffs state in their opposition: "The application of *contra non valentum* [sic] does not require 'extraordinary circumstances,' and it is regularly applied by Louisiana courts."[15] The case cited by

---

[10] *Chevron USA, Inc. v. Aker Mar., Inc.*, 604 F.3d 888, 894 (5th Cir. 2010) (quoting *Jordan*, 509 So. 2d at 423-24) (emphasis in original).

[11] Plaintiffs argue, "'Discovery' under Louisiana law occurs when the manufacturer's markings are found and confirmed by an experienced inspector or some other person with expertise, not at any point earlier. This would be the causal connection to the possible injury." Rec Doc. 22709 at 15. Plaintiffs cannot cite any legal support for this fabricated definition of discovery that would essentially render pointless the purpose of prescriptive periods.

[12] *Bowers v. Orleans Par. Sch. Bd.*, 95-2530 (La. App. 4 Cir. 5/29/96); 694 So. 2d 967, 973 (citation omitted) (emphasis in original).

[13] Similarly, Plaintiffs appear to suggest that receipt of a letter from a defendant is necessary for a plaintiff to become aware of a cause of action, relying on *Hogg v. Chevron USA, Inc.*, 2009-2632 (La. 7/6/10); 45 So. 3d 991. *See* Rec. Doc. 22709 at 13-14. This is incorrect. First, the defendant in *Hogg* did not send the plaintiffs a letter so as to put them on notice; rather, a third party (LDEQ) did. Further, *Hogg* provides just one example of what may constitute constructive notice of a cause of action—it is by no means the *only* factual scenario capable of constituting constructive notice.

[14] *In re Chinese-Manufactured Drywall Prod. Liab. Litig.*, No. CV-MDL-2047, 2019 WL 1057003, at *12 (E.D. La. Mar. 6, 2019) (citations omitted). *See also La Plaque Corp. v. Chevron U.S.A. Inc.*, 638 So. 2d 354, 356 (La. Ct. App.), *writ denied*, 94-2125 (La. 11/11/94); 644 So. 2d 395 ("*Contra non valentem* is an exceptional remedy recognized by our jurisprudence which is in direct contradiction to the articles in the Civil Code and therefore should be strictly construed.") (citations omitted).

[15] Rec. Doc. 22709 at 11-12 (quoting *Carter v. Haygood*, 892 So. 2d 1261, 1268 (La. 2005)).

Plaintiffs as the source of this quote and proposition, *Carter v. Haygood*, 892 So. 2d 1261 (La. 2005), contains no such quote nor does it stand for this position. Plaintiffs' fabricated legal standard is in direct conflict with the standard recognized by this Court and Louisiana law.

**II.      Plaintiffs have not shown that there is a genuine material factual issue in dispute regarding when Plaintiffs acquired constructive knowledge of damage.**

In the instant matter, Plaintiffs' petition alleges that the Knauf Defendants' defective drywall was installed around 2007 and Wang first appeared in this action on January 31, 2016.[16] "Thus, the face of the petition indicates the cause of action has prescribed, a situation requiring the plaintiff to bear the burden of demonstrating that the claim has not prescribed."[17] However, the Knauf Defendants' motion is not reliant on this facial prescription.

Defendants offer evidence demonstrating that Plaintiffs "suffered actual and appreciable damage" in 2010, such that "prescription runs from [this] date[.]"[18] Wang testified that, in 2010, Plaintiffs vacated the Property due to, in part, Wang's suffering actual and appreciable damage— in the form of a sulfur allergy—based on the strong smell of sulfur from the drywall:

Q.      Why did you move to the motel in 2010?
A.      There are two reasons why. We have financial problem. We can't pay the mortgage in the house but also the strong smell and also the sulphur. I have a sulphur allergy. The drywall give off strong smell. So we moved out of there and lived in a motel in Slidell.[19]

Hence, Plaintiffs suffered actual and appreciable damage—so severe that they fled their home— in 2010. This is sufficient to establish that the prescriptive period for Plaintiffs' claims began to run in 2010, but the Knauf Defendants' motion is not solely reliant on when damage was produced.

---

[16] *See* Rec. Doc. 20020. Xi first appeared in the Complaint on October 31, 2019, after moving to intervene as a claimant on October 7, 2019. *See* Rec. Docs. 22334, 22357-58.

[17] *Cornay v. FMC Corp.*, 98-1312 (La. App. 3 Cir. 6/2/99); 735 So. 2d 944, 947, *writ denied,* 99-2352 (La. 11/19/99); 749 So. 2d 676 (citations omitted).

[18] *Bailey*, 891 So. 2d at 1276 (quoting *Harvey,* 593 So. 2d at 354).

[19] Rec. Doc.  22664-8 at 15 (Wang Depo. at 38).

Rather, the Knauf Defendants have shown that there is no genuine issue of material fact as to the following (the final two serving as the crux of their motion): (1) Wang was generally aware of Chinese drywall following Hurricane Katrina; (2) Wang knew that his Property was remediated post-Hurricane Katrina; (3) Wang suffered from a sulfur allergy so severe that Plaintiffs moved out of the Property in 2010; and (4) Wang knew that the sulfur allergy was caused by the sulfur smell emitted from the drywall, testifying that Plaintiffs "ha[d] to move out of the house *because of the drywall*."[20] Plaintiffs have not provided evidence that rebuts these material facts.

Instead, Plaintiffs take the position that the Knauf Defendants have no "demonstrate[d] that Plaintiff[s] should have known that the home contained defective drywall made by Defendant Knauf" prior to 2015.[21] As discussed, *supra*, it is not the Knauf Defendants' legal burden to demonstrate that Plaintiffs should have known that their Property contained drywall *made by the Knauf Defendants*; it is enough that the Knauf Defendants have demonstrated that Plaintiffs were aware of a causal relationship between the drywall in the Property and Wang's injury.[22]

The "material facts" Plaintiffs have provided in support of their opposition are not based on any actual evidence and therefore cannot demonstrate that there is a genuine material factual issue in dispute. The Knauf Defendants highlight for the Court's attention these inaccuracies:

(1) Plaintiffs state that "Plaintiffs' testimony is in direct conflict with Defendants' theory – Plaintiff testified that he had no knowledge regarding defective Knauf drywall."[23] Plaintiffs have not provided any such testimony in support of this legal argument nor

---

[20] Rec. Doc. 22664-8 at 14 (Wang Depo. at 37) (emphasis added).

[21] Rec. Doc. 22709 at 14.

[22] Plaintiffs continuously misrepresent the Knauf Defendants' argument. *See* Rec. Doc. 22709 at 11 ("Defendants have urged the Court to grant summary judgment in this instance because, they allege, Plaintiff learned that the Affected Property contained Knauf's defective product much earlier than Plaintiff acknowledges, but that is clearly in conflict with Plaintiff's discovery responses and deposition testimony."). The Knauf Defendants have not presented the argument that Plaintiffs knew their Property contained the Knauf Defendants' drywall prior to 2015; the Knauf Defendants instead maintain that Plaintiffs sustained damage that they knew to be caused by Chinese drywall (though not the identity of the manufacturer) prior to 2015.

[23] Rec. Doc. 22709 at 14.

do they indicate where this testimony can be found in the deposition excerpts provided by the Knauf Defendants to this Court.

(2) Plaintiffs argue, "Counsel for Defendants never asked Plaintiff to clarify when he learned about Chinese drywall, so the inference that this Court must make at this point is that Plaintiffs learned about it at the time the inspection was performed in 2015."[24] Plaintiffs did not cite any evidence in support of this argument. The Knauf Defendants submit that Wang was questioned regarding when he learned about Chinese drywall.[25]

(3) Plaintiffs state: "Plaintiff also testified that he knew nothing about Chinese drywall when he and his family moved from the property[,]"citing "Ex. E to Defendant's motion" and "Wang's Depo. at 36-37."[26] Exhibit E to the Defendants' motion is a copy of the Cash Sale of the Property and does not support Plaintiffs' statement.[27] As to Wang's deposition, page 36 was not attached to the Defendants' motion and the testimony on page 37 is the opposite of what Plaintiffs have cited it as support for. Wang's testimony is not that he knew nothing about Chinese drywall when Plaintiffs moved from the Property, but that Plaintiffs "ha[d] to move out of the house *because of the drywall*."[28] To the extent Plaintiffs intended to reference page 25 of the deposition testimony (which was cited in the Defendants' motion) as support,[29] the Knauf Defendants submit that this testimony relates to Wang's familiarity with a distributor and does not support Plaintiffs' present position.[30]

Plaintiffs have not provided any evidence refuting the Knauf Defendants' evidence that Wang suffered from a sulfur allergy so severe that Plaintiffs moved out of the Property in 2010 and that Wang knew the sulfur allergy was caused by the sulfur smell emitted from the drywall.

## III.   This Court should not entertain Plaintiffs' revived "duty to warn" arguments that it has already rejected.

In their opposition, Plaintiffs rehash and reframe their previous argument that the Knauf Defendants had a duty to take some additional affirmative action to place Plaintiffs on notice of

---

[24] *Id.*

[25] Wang Depo. at 11-13.

[26] Rec. Doc. 22709 at 11; *id.* at 11 n.3.

[27] *See* Rec. Doc. 22664-6.

[28] Rec. Doc. 22664-8 at 14 (Wang Depo. at 37) (emphasis added). As previously stated, Wang also testified that he was generally aware of Chinese drywall at this time. *See* Wang Depo. at 11-13.

[29] *See* Rec. Doc. 22664-8 at 13 (Wang. Depo. at 25).

[30] Out of an abundance of caution, the Knauf Defendants have re-attached pages 25, 37, and 38 of Wang's deposition, and have additionally attached pages 26 and 36 for convenience.

their defective product, and that their failure to do so has suspended the running of prescription. Plaintiffs present a handful of creative arguments on this point, all of which must ultimately fail.

First, Plaintiffs argue that the Knauf Defendants failed to carry out their duty to warn under Louisiana law, such that the prescriptive period has not yet commenced.[31] This Court previously rejected this argument, concluding "that it would not have been reasonably possible for Knauf to identify all those to whom a post-sale duty to warn may have been owed under Louisiana law[,]" recognizing "that Knauf did undertake an extensive notice program during the major settlement phase of this MDL to identify potential claimants and notify them of their right to participate in the settlement."[32] Plaintiffs' failure to warn arguments must again be dismissed. Accepting Plaintiffs' arguments would lead to absurd results and undermine the purpose Article 3492.[33]

Second, Plaintiffs contend that the prescriptive period should be suspended because the Knauf Defendants have not reported the sale of their drywall to the Consumer Product Safety Commission ("CPSC") nor recalled their product pursuant to the Consumer Product Safety Act, 15 U.S.C. § 2051, *et seq.* ("CPSA").[34] Plaintiffs' argument is flawed both factually and legally.

The CPSA is not a standalone regulatory text; rather, the federal statute establishes the CPSC and defines the CPSC's basic authority, including its authority to develop standards and bans, pursue recalls, and to ban products under certain circumstances. The CPSA does not establish a statutory framework regulating the Knauf Defendants' commercial business, nor does it singularly create an affirmative legal duty to which the Knauf Defendants must adhere. The CPSA does not establish a private right of action on behalf of Plaintiffs—its enforcement is vested in the

---

[31] Rec. Doc. 22709 at 17-18.
[32] Rec. Doc. 22615 at 27-28.
[33] This Court should reject Plaintiffs' equitable estoppel arguments for the same reasons.
[34] Rec. Doc. 22709 at 18-21.

CPSC, tasked with overseeing compliance with its own regulations and the CPSA.[35] If the Knauf Defendants failed to comply with the CPSA, the CPSC—as opposed to Plaintiffs—would have standing to pursue the Knauf Defendants. The CPSC has not done so and Plaintiffs lack standing.

Additionally, the CPSA reporting requirements cited by Plaintiffs are circumvented if the CPSC has been adequately informed of a product defect.[36] On May 25, 2010, the CPSC issued a warning concerning the Knauf Defendants' drywall.[37] To the extent the Knauf Defendants were required to report the defective drywall under 15 U.S.C. § 2064 (they were not), and this reporting requirement suspended commencement of the prescriptive period (it does not), such a requirement was fulfilled in 2010 and cannot suspend the prescriptive period on Plaintiffs' claims beyond 2010.

Further, the CPSA reporting requirements cited by Plaintiffs apply solely to failures to comply with CPSC requirements, product defects that create a substantial risk of injury to the public, and products that create an unreasonable risk of serious injury or death.[38] The reporting requirements do not apply to *all* products that "contain[] a defect" as Plaintiffs falsely advocate,[39] only those that create a substantial risk of injury to the public. There is no evidence that the Knauf Defendants' defective drywall fits this definition, a fact that the CPSC has confirmed on its website, additionally noting that the Defendants are not required to recall their product.[40] Rather,

---

[35] 15 U.S.C. § 2061(a).

[36] 15 U.S.C. § 2064(b).

[37] U.S. CPSC, *CPSC Identifies Manufacturers of Problem Drywall Made in China*, CPSC.gov (May 25, 2010), https://www.cpsc.gov/Newsroom/News-Releases/2010/CPSC-Identifies-Manufacturers-of-Problem-Drywall-Made-in-China.

[38] 15 U.S.C. § 2064(a)(2) & (b).

[39] Rec. Doc. 22709 at 19.

[40] *See* U.S. CPSC, *Other Frequently Asked Questions*, CPSC.gov, https://www.cpsc.gov/content/other-frequently-asked-questions (last visited April 17, 2020); *see also* U.S. CPSC, *CDC Review Finds No Link Between Problem Drywall and 11 Reported Deaths*, CPSC.gov (January 31, 2011), https://www.cpsc.gov/Newsroom/News-Releases/2011/CDC-Review-Finds-No-Link-Between-Problem-Drywall-and-11-Reported-Deaths/.

the CPSC has implemented regulations designed to combat the issues previously encountered with defective drywall.[41] The Plaintiffs' arguments regarding the CPSA must be rejected.[42]

Third, Plaintiffs aver that the prescriptive period should be suspended because the Knauf Defendants fraudulently concealed known problems with their drywall. Plaintiffs cite a 2010 Florida news article discussing a *suspected* agreement between the Knauf Defendants and a drywall distributor in Florida, but do not cite *any reputable evidence* in support of their fraudulent concealment theory, demonstrating its baselessness. Plaintiffs blame the Defendants for their lack of evidentiary support, stating that "[i]t is noteworthy that the Defendants have not produced that indemnification agreement [referenced in the Florida news article] in their disclosures to Plaintiffs[.]"[43] Nearly a decade of discovery occurred in this MDL, all of which Plaintiffs received (from both the Knauf Defendants and Banner Supply Company), and none of which supports Plaintiffs' present position. If Plaintiffs believed that the Knauf Defendants' withheld discovery, they could have requested it. Plaintiffs never sought leave to conduct discovery under the CMO and cannot be excused from adequately supporting their position due to their own neglect.

Even if this Court did rely on one Florida journalist's speculations, the article is irrelevant to Plaintiffs' claims. Plaintiffs' Property is in Louisiana, not Florida, and Plaintiffs have no connection to Banner Supply (a Florida distributor) because their drywall was purchased from

---

[41] U.S. CPSC, *Drywall Business Guidance*, CPSC.gov, https://www.cpsc.gov/Business--Manufacturing/Business-Education/Business-Guidance/Drywall (last visited April 17, 2020).

[42] In arguing that the defects in the drywall were "latent," Plaintiffs directly contradict the oft-repeated allegation in the Fifth Amended Complaint that the drywall emits "noxious gases." Plaintiffs cannot use their Opposition brief to raise new claims; thus, the new arguments regarding the CPSA, duty to warn, and latent defects should be rejected and ignored. *See, e.g.*, *DeKort v. Integrated Coast Guard Sys.*, 475 F. App'x 521, 522 (5th Cir. 2012) ("[T]he district court did not err in denying DeKort's motion for partial summary judgment because he attempted to raise a new claim, not asserted in his fifth amended complaint."); *see also Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1314 (11th Cir. 2004) ("Federal Rule of Civil Procedure 8(a) … does not afford plaintiffs with an opportunity to raise new claims at the summary judgment stage.").

[43] Rec. Doc. 22709 at 20.

Interior Exterior Building Supply (a Louisiana distributor). Also, the article, published in 2010, does not demonstrate that the prescriptive period could be suspended beyond this time.

## IV.     Plaintiffs' argument regarding the economic loss rule is inapplicable.

Plaintiffs' arguments regarding the economic loss rule are misplaced.[44] The Knauf Defendants have made no representation regarding the economic loss rule. Instead, the Knauf Defendants have argued that Plaintiffs are limited to the exclusive remedies under the LPLA. Accordingly, this Court should disregard Plaintiffs' arguments regarding the economic loss rule.

## V.      Plaintiffs do not dispute that they have waived their redhibition claims by knowingly and voluntarily purchasing the Property "as-is" with a waiver of warranty.

Finally, the Knauf Defendants note that Plaintiffs have not addressed their waiver of redhibition argument. "[F]ailure to address [the redhibition] claims results in abandonment of these claims."[45] There is no genuine dispute as to any material fact regarding Plaintiffs' waiver of redhibition and this Court should dismiss Plaintiffs' redhibition claims.

## VI.     Conclusion

For the foregoing reasons and those previously stated, this Court should dismiss the claims asserted by Wang and Xi against them in the Fifth Amended Complaint.

Respectfully submitted,

/s/ *Kerry J. Miller*
**KERRY J. MILLER (#24562), T.A.**
**DANIEL J. DYSART (#33812)**
**FISHMAN HAYGOOD, LLP**
201 St. Charles Avenue, Suite 4600
New Orleans, LA 70170
Telephone:     504.556.5549
Facsimile:      504.310.0279
Email:           kmiller@fishmanhaygood.com
***Counsel for The Knauf Defendants***

---

[44] Rec. Doc. 22709 at 23.
[45] *Robertson v. Gautreaux*, No. CV-16-341-JJB-RLB, 2017 WL 690542, at *6 (M.D. La. Feb. 21, 2017), *aff'd in part,* 731 F. App'x 337 (5th Cir. 2018).

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that the above and foregoing pleading has been served upon Russ Herman, Plaintiffs' Liaison Counsel, by email, to all parties by electronically uploading the same to LexisNexis File & Serve in accordance with Pre-Trial Order No. 6, individually to pro se claimants by U.S. Mail, and that the foregoing was filed with the Clerk of Court of the United States Court for the Eastern District of Louisiana, on this 20th day of April, 2020.

*/s/ Kerry J. Miller*
**KERRY J. MILLER**