UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In Re: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL 2047<br><br>SECTION "L" |
| This document relates to:<br><br>*Elizabeth Bennett, et al v. Gebr. Knauf Verwaltungsgesellschaft, KG, et al*<br><br>Case No. 14:cv-2722 | JUDGE ELDON FALLON<br><br>MAGISTRATE JOSEPH WILKINSON, JR. |

REPLY MEMORANDUM IN SUPPORT OF
MOTIONS FOR SUMMARY JUDGMENT ON CLAIMS ASSERTED BY
LOUISIANA, MISSISSIPPI, AND TEXAS SUBSEQUENT PURCHASERS

**MAY IT PLEASE THE COURT:**

Defendants, Knauf Gips KG and Knauf Plasterboard (Tianjin) Co., Ltd. (the "Knauf Defendants"), through undersigned counsel, respectfully submit this Reply Memorandum in Support of their Motions for Summary Judgment (R. Docs. 22631, 22632, and 22689) (the "Motions"). The following claims of Louisiana Plaintiffs,[1] Mississippi Plaintiffs,[2] and Texas Plaintiffs[3] asserted in Plaintiffs' Fifth Amended Class Action Complaint (the "Fifth Amended

---

[1] Jason Arnold ("Arnold"), Mardechria Charles ("Charles"), Feng Hu and Simin Liu ("Hu/Liu"), Mathew and Susan Issman ("Issman"), Karen and Kerry McCann ("McCann"), Nicole and Michael Norris ("Norris"), Mark and Kimberlie Perez ("Perez"), Wayne and Kristal Province ("Province"), Estate of Veronica Giffith/Rosenaur ("Rosenaur"), Chien Van Pham and Bich Nguyen ("Van Pham/Nguyen"), Xiaochun Xi and Jinjiang Wang ("Xi/Wang").

[2] 1329 Gum, Jackson Land Trust ("1329 Gum"); Richard Calevro ("Calevro"); Mary Sue Caranna ("Caranna"); William Foreman ("Foreman"); Candace Forzard and David Fozard ("Fozard"); Wade Gauthreaux and Sheryl Gauthreaux ("Geauthraux"); Jeremy Jordan ("Jordan"); Mark Lee and Shannon Renee Lee ("Lee"); David Martino and Brittany Martino ("Martino"); Billy McCullar, Peggy A. McCuller, and Andree McCuller ("McCuller"); Dung Nguyen ("Nguyen"); Peter Robinson ("Robinson"); Rachel Schoerner ("Schoerner"); and The Van Tran and Chin Thi Nguyen ("Tran and Nguyen").

[3] Frank Grande, Suzan Grande, CJ Properties, Karen Beth Baldwin, and David Neil Baldwin.

Complaint") should be dismissed because each Plaintiff purchased their respective Property after they allege the defective drywall was installed, and without a timely, effective, and express assignment. The rules in Louisiana, Mississippi and Texas are clear: a cause of action arising out of injury to property is personal to the owner and a subsequent purchaser has no right to pursue action without a timely, express assignment of that cause of action. Further, the Louisiana Plaintiffs' untimely assignments are ineffective or are only effective as of the March/April 2020 and cannot "operate retroactively to cure" the Bennett Complaint to "bootstrap a timely right of action." Plaintiffs' claims should therefore be dismissed.

### A.   Plaintiffs' *res judicata* argument fails.

As a preliminary matter, Plaintiffs' *res judicata* argument are ill-founded. Plaintiffs correctly note that the four elements needed for a finding of *res judicata* are that "(1) the parties must be identical in the two actions; (2) the prior judgment have been rendered by a court of competent jurisdiction; (3) there must be a final judgment on the merits; and (4) the same cause of action must be involved in both cases." *See Eubanks v. FDIC*, 977 F.2d 166, 169 (5th Cir. 1992). But Plaintiffs have not shown that the settlement entered in the prior proceeding binds the parties to this case such that *res judicata* effect would attach. *See, e.g.*, *Matter of W. Tex. Mktg. Corp.*, 12 F.3d 497, 500 (5th Cir. 1994) (explaining that a settlement agreement in that case would "carry res judicata effects so long as the settlement satisfie[d] the four part test . . . use[d] in evaluating the applicability of res judicata"). To the contrary, Plaintiffs' factual recitation undermines any such argument, (*see* Doc. 22739, at 5-6);[4] regardless, if Plaintiffs are correct that *res judicata* attaches

---

[4] Plaintiffs have potentially misnamed their *res judicata* argument and are instead seeking to pursue a theory of issue preclusion or collateral estoppel. Even then, though, the argument would fail: the issue in this Court's 2010 decision concerned the economic loss rule, which is not the same issue as the subsequent purchaser doctrine. *See, e.g.*, *Mag-Dolphus, Inc. v. Ohio Cas. Ins. Co.*, 40 F. Supp. 3d 817, 828 (S.D. Tex. 2014) (explaining that, "[t]o establish collateral estoppel under federal law a party must" show, among other things, "that the issue at stake [is] identical to the one involved in the prior litigation").

with respect to the earlier lawsuit, Plaintiffs' claims should all be dismissed as a result. *See Matter of W. Tex. Mktg. Corp.*, 12 F.3d at 502 ("We conclude that the original settlement signed by the parties and approved by the bankruptcy court carries res judicata effect and precludes relitigation of the merits of the claims decided in that agreement.").

**B.     The Subsequent Purchaser Doctrine Bars Plaintiffs' claims—none of which are personal injury claims.**

Texas and Mississippi law are in lockstep with Louisiana law on the subsequent-purchaser doctrine. This Court has already dismissed claims asserted by certain Louisiana Plaintiffs based on the subsequent-purchaser doctrine, because those Plaintiffs did not acquire an express assignment or subrogation of their predecessors' rights to sue. (*See* Doc. 22615 at pp. 22-23).[5] The same analysis applies here: the Plaintiffs identified in the present Motion are all subsequent purchasers who did not obtain an express assignment or subrogation, and their claims should be dismissed. *See, e.g.*, *Eagle Pipe & Supply, Inc. v. Amerada Hess Corp.*, 79 So. 3d 246 (La. 2011); *Henderson v. Copper Ridge Homes, L.L.C.*, 273 So. 3d 750 (Miss. 2019); *Brooks v. Chevron USA, Inc.*, No. 13-05-029-CV, 2006 WL 1431227 (Tex. Ct. App. May 25, 2006).

Plaintiffs' Opposition attempts to circumvent the straightforward application of the doctrine and this Court's prior ruling by conflating and confusing legal theories, personal rights, and causes of action. Preliminarily, Plaintiffs attempt to distinguish between a claim for damage to immovable property and a claim for damage to a defective product itself by citing to this Court's opinion on the Economic Loss Rule ("ELR"). (R. Doc. 22739 at p. 8) (citing *In re Chinese Manufactured Drywall Prod. Liab. Litig.*, 680 F. Supp. 2d 780 (E.D. La. 2010)). At the outset, however, Plaintiffs expressly recognize that the case on which they exclusively rely—an earlier

---

[5] R. Doc. 22615 at pp. 8-12; 22-24 (granting summary judgment as to Macksey and Natal claims based on subsequent purchaser doctrine).

decision from this Court in 2010—does not address subsequent purchasers and instead examines the ELR alone. (R. Doc. 22397 at 8-9). Application of the ELR—and thus the case on which Plaintiffs rely—is inapposite to the issue before the Court.

In any event, the cited analysis does not support Plaintiffs' position. In its prior ELR decision, the Court addressed two motions related to whether the ELR in Louisiana, Mississippi, and Alabama barred plaintiffs from bringing tort claims for economic losses because, as the argument went, damage inflicted by Chinese drywall was damage to the product itself. As explained by the Court, the ELR is a judicially created defense "which prevents a plaintiff from bringing tort claims for economic losses when the only damage alleged is to a product caused by the product itself." *In re Chinese Manufactured Drywall Prod. Liab. Litig.*, 680 F. Supp. 2d at 783. The moving defendants argued that the "product" was the completed house, because the drywall was a component of the house. The Court rejected that argument and concluded that the damage inflicted by the installation of the drywall was to the house as "other property." *Id*. at 798.

The shortcoming in Plaintiffs' attempt to analogize the ELR to the subsequent-purchaser doctrine is that the subsequent-purchaser doctrine does not rely on any distinction between damage to the allegedly defective product versus damage to "other property." The subsequent-purchaser doctrine is premised on the fact that damage to property is inflicted on the date that an alleged defect is first introduced at the property; claims for property damage accrue at that time and are personal rights under Louisiana, Mississippi, and Texas law. *See, e.g.*, *Eagle Pipe & Supply, Inc.*, 79 So. 3d 246; *Henderson*, 273 So. 3d 750; *Brooks*, No. 13-05-029-CV, 2006 WL 1431227. Subsequent purchasers must be assigned those personal rights or else they cannot recover. *See id.* Consequently, Plaintiffs' recitation of this Court's ELR reasoning is irrelevant, because the Knauf Defendants' motion and arguments on the subsequent-purchaser doctrine do not allege or rely on

the position that Chinese drywall simply inflicts damages on the product itself. Indeed, the Knauf Defendants have asserted clearly that if any damage was inflicted, it was inflicted on Plaintiffs' "other property," and it is undisputed that any such alleged damage was inflicted—and the personal right accrued—before Plaintiffs purchased their properties. (R. Doc. 22631).

Plaintiffs' attempt to analogize the current subsequent-purchaser issues with this Court's analysis of asbestos claims in the context of the ELR similarly misses the mark. Again, in the Court's earlier decision from 2010, the Court addressed application of a different defense (the ELR), and not the Knauf Defendants' current subsequent-purchaser arguments. To that end, the analysis focused on the fact that the claims were not premised on the plaintiffs' frustrated economic interests. Rather, as with asbestos, the claims were premised on alleged damage to "other property" and the plaintiffs' personal health. Further, this is not a personal injury case and none of the Plaintiffs have provided any evidence of personal injuries allegedly sustained. Accordingly, *In re Chinese Manufactured Drywall Prod. Liab. Litig.*, is further distinguishable because that ruling was largely based on allegations that the allegedly defective drywall was causing personal injuries.[6] Indeed, the Court distinguished *Casa Clara* as merely involving property damage and analogized asbestos cases on the basis that the Chinese drywall was allegedly causing physical injury.[7] Again, there are no current claims for personal injury, Plaintiffs' claims are only for property damage, and there is again no distinction with respect to "other property" in the context of the subsequent-purchaser doctrine.  Indeed,  the Knauf Defendants' subsequent-purchaser doctrine arguments are consistent with the Plaintiffs' position that "the house is not the product." (R. Doc. 22739 at p. 11). The alleged product is KPT Chinese drywall, the alleged damage is to

---

[6] *In re Chinese Manufactured Drywall Products Liab. Litig.*, 680 F.Supp.2d 780, 792, 793, 795, 798 (E.D. La. 2010). ("Plaintiffs further allege that the Chinese drywall causes allergic reactions, coughing, sinus and throat infection, eye irritation, respiratory problems and other health concerns.") *Id.* at 791.
[7] *In re Chinese Manufactured Drywall Products Liab. Litig.*, 680 F.Supp.2d 780, 793-795 (E.D. La. 2010).

**5**

"other property," and it is undisputed that the alleged damage was inflicted—and the personal right accrued—when the Chinese drywall was installed in the house (*i.e.*, before Plaintiffs bought their respective properties). As recognized by both this Court and the Louisiana Supreme Court in the context of Louisiana law:

> ***injury to property*** must be understood as ***damage to the real rights in the property***. A ***tortfeasor who causes injury*** or damage to ***a real right in property owes an obligation to the owner of the real right***. This relationship arises as a matter of law and provides to ***the owner of the real right a personal right to sue the tortfeasor*** for damages.[8]

Texas and Mississippi recognize the same legal principle, *see, e.g.*, *Henderson*, 273 So. 3d 750;[9] *Brooks*, No. 13-05-029-CV, 2006 WL 1431227, and thus because Plaintiffs purchased the "other property" after the alleged Chinese drywall was installed, Plaintiffs do not have the personal right to sue the Knauf Defendants without a timely, express assignment. (R. Doc. 22631). Indeed, "an ***owner of property has no right*** or actual interest in recovering from a third party ***for damage which was inflicted on the property before his purchase, in the absence of an assignment*** or subrogation of the rights belonging to the owner of the property when the damage was inflicted."[10]

As a final note on Plaintiffs' argument with respect to ELR, Plaintiffs recite Louisiana, Mississippi, and Texas statutory law on which they purportedly rely in support of their claims. Plaintiffs do not explain how their recital of statutory law support their case; regardless, they do

---

[8] *Eagle Pipe & Supply, Inc. v. Amerada Hess Corp.*, 79 So.3d 246, 279 (La. 2011) (emphasis added); *see also Guilbeau v. Hess Corp.*, 854 F.3d 310, 312–13 (5th Cir. 2017).

[9] Plaintiffs' attempt to distinguish *Henderson v. Copper Ridge Homes, LLC*, 273 So. 3d 750, 754–55 (Miss. 2019) fails, and that case only highlights the weakness of Plaintiffs' arguments. There, *Henderson* did not involve whether a promissory note or contract itself traveled with the land. Rather, the Mississippi Supreme Court found that the right of action for damage to the home did not travel to subsequent purchaser of that home absent an assignment. That analysis is directly applicable here where Plaintiffs allege damage to their respective properties from drywall that was installed before Plaintiffs purchased their respective properties. *See also*, *Diamondhead Country Club & Prop. Owners Ass'n, Inc. v. Peoples Bank*, 2018-CA-00978-SCT, 2020 WL 948324, at *3 (Miss. Feb. 27, 2020) citing *Davis v. Davis (In re Estate of Waitzman)*, 507 So. 2d 24, 26-27 (Miss. 1987); *Henderson v. Copper Ridge Homes, LLC*, 273 So. 3d 750, 754-55 (Miss. 2019) (outlining the distinction between *real* and *personal* rights.).

[10] *Id*. at 256 -67 (emphasis added); *Guilbeau*, 854 F.3d at 312–13.

6

not override the plain effect of each state's subsequent-purchaser doctrine. Again, it is undisputed that the Knauf Defendants' conduct and the alleged damage was inflicted to Plaintiffs' current property prior to Plaintiffs' respective ownership. Under Louisiana, Mississippi, and Texas law, Plaintiffs are "subsequent purchasers" who do not have the personal right to sue the Knauf Defendants and who did not receive any timely, effective assignments of claims. Therefore, the claims must be dismissed.[11]

### C. The Untimely Louisiana Assignments Do Not Retroactively Cure the Claims

In opposition, for the first time, five of the Louisiana Plaintiffs[12] attach purported assignments. (R. Doc. 22739-9). Plaintiffs' belated attempt to save their non-existent and released claims is worthless under well-established Louisiana law and are in complete violation and disregard of this Court's CMO deadlines.

All of the purported assignments are dated in March/April 2020, and it is undisputed none of Plaintiffs had express assignments to the personal right to sue the Knauf Defendants at the time the Bennett complaint was filed or any time after until purportedly now. The after-the-fact assignments in March/April 2020, have no legal effect because they do not serve to resurrect the prior owners' claims or serve to retroactively save Plaintiffs' non-existent claims when they were filed in the Bennett action. *See TCC Contractors, Inc. v. Hosp. Serv. Dist. No. 3 of Par. of*

---

[11] As one additional note, to the extent Plaintiffs seek to rely on the expansion of the LPLA beyond the bounds of privity, they overreach. The LPLA allows for an ultimate consumer to recover for lack of privity, which in turn would allow a homeowner—who lacks direct privity with a manufacturer—to sue for a defective product. That alone does not override the subsequent-purchaser doctrine. To the contrary, that homeowner's claims would be personal and would accrue at the time the defective product was installed; for the homeowner's rights to succeed to a subsequent purchaser, Louisiana (and Texas and Mississippi) requires an express assignment.

[12] In opposition to summary judgment, Rosenaur/Estate of Rayborn attached a purported assignment of rights dated April 19, 2020. Pham/Nguyen attached a purported assignment dated April 4, 2020. Perez attached a purported assignment dated April 2, 2020. Province attached a purported assignment dated March 31, 2020. Wang/Xiaochun attached a purported assignment dated April 1, 2020. McCann attached documents that were undated and unexecuted, and therefore has not provided any purported assignment at all. (R. Doc. 22739-9).

*Lafourche*, 2010-0685 (La. App. 1 Cir. 12/8/10), 52 So. 3d 1103, 1105; *Boone v. Conoco Phillips Co.*, 2013-1196 (La. App. 3 Cir. 5/7/14), 139 So. 3d 1047.

In *TCC Contractors*, a hospital contracted with a builder to construct a hospital complex. The hospital obtained insurance for the project and was the named insured. During the completion of the project, the windows installed in the complex were subject to water intrusion during Hurricane Katrina. *Id.* at 1106. The builder later suit against the insurer under the policy for "substantial remediation costs and delay damages in addition to liquidated damages assessed pursuant to the terms of the construction contract." *See id.* (internal quotations and brackets omitted). The insurer filed exceptions on the basis the builder did not have the personal right to sue and did not obtain an assignment from the hospital. *Id.* at 1107. Almost two years later, the hospital assigned the builder its claims, and the builder attempted to amend its claims to allege that it was asserting the assigned claims. *Id.* The trial court granted the insurer's exceptions and dismissed the builder's claims. *Id.* On appeal, the Louisiana First Circuit affirmed concluding that assigned claims did not become exigible prior to the date of the assignment. *Id.* at 1117.

> Because of the 'strictly personal' character of the right to file suit, the plaintiffs' right to do so can be given legal effect only from the effective date of the assignment, and the assignment could not retroactively cure the initial absence of a right of action by the plaintiffs. *Id.*

The same is true for the Bennett Plaintiffs' claims and their ill-fated attempt to circumvent Louisiana law via untimely assignment. As set forth previously, and pursuant to the subsequent-purchaser doctrine, damage to real rights in property conveys an obligation on the obligor and a personal right to sue upon the owner/obligee when the damage was sustained. *Eagle Pipe & Supply, Inc. v. Amerada Hess Corp.*, 79 So.3d 246, 279 (La. 2011) (emphasis added); *see also Guilbeau v. Hess Corp.*, 854 F.3d 310, 312–13 (5th Cir. 2017); *Boone v. Conoco Phillips Co.,* 2013-1196 (La. App. 3 Cir. 5/7/14), 139 So. 3d 1047, 1061 (finding claims were barred by

**8**

subsequent purchaser doctrine and rejecting after-the-fact assignment's attempt to revive original claims). At the time the Bennett Plaintiffs purchased their properties, filed the Bennett Complaint, and throughout their status in this MDL, Plaintiffs have never had any personal right to pursue any action against the Knauf Defendants, and the March/April 2020 "assignments," which are only given legal effect from the date of the assignment, cannot "retroactively cure" the initial and continued absence of the personal right.[13]  Furthermore, unlike TCC's attempt, the Bennett plaintiffs have never alleged *any* assigned claims in *any* complaint.

Moreover, the assignments do not confer any existing rights because an assignee acquires no greater rights than his assignor. *DaimlerChrysler Services of N. Am., L.L.C. v. Sec'y, Dep't of Revenue*, 07–0010, p. 8 (La. App. 1 Cir. 9/14/07), 970 So. 2d 616, 621.  An assignee is governed by the same prescriptive rules applicable to his assignor, and, liberative prescription is only "interrupted when the obligee commences action against the obligor in a court of competent jurisdiction and venue." *Westenberger v. State ex rel. Dep't of Educ.*, 333 So.2d 264, 270 (La. App. 1 Cir.1976); LA. CIV. CODE art. 3462. The previous owners (the actual holders of the personal right) never instituted legal action against the Knauf Defendants, and thus "no action by the [previous owners] ever served to interrupt prescription." Similarly, "there is no evidence that the [previous owners] ever made a claim against [the Knauf Defendants] . . ., that the [previous owners] ever put [the Knauf Defendants] on notice of such a claim, or that [the Knauf Defendants] ever acknowledged the [previous owner's] rights regarding such a claim. *See TCC Contractors, Inc.*, 52 So. 3d at 1109. In turn, the after-acquired assignments in March/April 2020 "could not operate retroactively to cure" the Bennett Plaintiffs' action to "bootstrap a timely right of action."

---

[13] *TCC Contractors, Inc.*, 52 So. 3d at 1117. This is consistent with Louisiana law, because an assignment of a right is effective against the debtor only from the time the debtor has actual knowledge, or has been given notice, of the assignment. *See id.* (citing LA. CIV. CODE art. 2643); *see also Boone,* 139 So. 3d at 1061 (finding subsequent purchaser doctrine barred claims and after-the-fact assignment was ineffective).

**9**

*See id*. Moreover, builder claims against the Knauf Defendants previously released in the builder MDL settlements cannot now be assigned to Plaintiffs.[14] Therefore, the assignments are ineffective in retroactively reviving or establishing any claims.

Finally, based on this Court's prior CMO, the untimely assignments should be stricken from the record. Plaintiffs provide no explanation for the untimely submissions, which seek to prejudice the Knauf Defendants. Pursuant to Rule 37(b)(2)(A), if a party fails to obey an order to provide or permit discovery the court may issue orders, including striking the pleadings in whole or in part or dismissing the action or proceeding in whole or in part. *See Terrance v. Pointe Coupee Parish Police Jury*, 177 Fed. App'x 457, 459 (5th Cir. 2006) (excluding evidence because the plaintiffs failed to provide a reason for the late disclosure and failed to identify the importance of the testimony); *Heidtman v. Cnty. of El Paso*, 171 F.3d 1038, 1040 (5th Cir. 1999) Furthermore, Rule 37 provides that a party cannot use documents "on a motion, at a hearing, or at a trial" if requested documents have not been previously disclosed. *Tex. A & M Res. Found. v. Magna Transp., Inc.*, 338 F.3d 394, 401-02 (5th Cir. 2003). This court "has broad discretion in all discovery matters, and such discretion will not be disturbed ordinarily unless there are unusual circumstances showing a clear abuse." *Moore v. CITGO Ref. & Chemicals Co., L.P.*, 735 F.3d 309, 315 (5th Cir. 2013). Therefore, the untimely assignments should be disregarded and stricken from the record.

---

[14] The Perez claimants attach a purported assignment from Sunrise Construction and Development LLC. This Court recognized Sunrise as a participating defendant (R. Doc. 16570-1 at p. 18) and Sunrise previously released claims against the Knauf Defendants (R. Doc. 15695-2 at § 5.3.2). Therefore, Sunrise had no claim to assign in April 2020.

Respectfully submitted,

**FISHMAN HAYGOOD, LLP**

/s/ *Kerry J. Miller*

**KERRY J. MILLER (#24562), T.A.**
**PAUL C. THIBODEAUX (#29446)**
**DANIEL J. DYSART (#33812)**
201 St. Charles Avenue, Suite 4600
New Orleans, LA 70170
Telephone:     504.556.5549
Facsimile:      504.310.0275
Email:            kmiller@fishmanhaygood.com
*Counsel for Defendants,*
*Knauf Gips KG and*
*Knauf Plasterboard (Tianjin) Co., Ltd.*

**CERTIFICATE OF SERVICE**

     I hereby certify that the above and foregoing pleading has been served upon Russ Herman, Plaintiffs' Liaison Counsel, by email, to all parties by electronically uploading the same to LexisNexis File & Serve in accordance with Pre-Trial Order No. 6, individually to pro se claimants via U.S. Mail, and that the foregoing was filed with the Clerk of Court of the United States Court for the Eastern District of Louisiana, on this 24th day of April, 2020.

/s/ *Kerry J. Miller*
**KERRY J. MILLER**

**11**