**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| In Re: **CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION** | **MDL 2047** |
| | **SECTION "L"** |
| **This document relates to:** *Elizabeth Bennett, et al v. Gebr. Knauf Verwaltungsgesellschaft, KG, et al* **Case No. 14:cv-2722** | **JUDGE ELDON FALLON** **MAGISTRATE JOSEPH WILKINSON, JR.** |

**REPLY MEMORANDUM IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT ON CLAIMS
<u>ASSERTED BY RONALD PENDLETON AND BERNICE PENDLETON</u>**

**MAY IT PLEASE THE COURT:**

Defendants, Knauf Gips KG and Knauf Plasterboard (Tianjin) Co., Ltd. (the "Knauf Defendants"), through undersigned counsel, respectfully submit this Reply Memorandum in Support of their Motion for Summary Judgment as to the claims asserted by Plaintiffs, Ronald Pendleton and Bernice Pendleton ("Plaintiffs" or the "Pendletons") against them in Plaintiffs' Fifth Amended Class Action Complaint (the "Fifth Amended Complaint"), and to respond to Plaintiffs' arguments raised in opposition thereto.[1]

**I. Plaintiffs concede that their claims are facially prescribed and have not met their burden to show why their claims have not prescribed.**

"As a general rule, the burden of proof rests upon a defendant pleading prescription as an affirmative defense."[2] However, when the face of the petition reveals that the plaintiff's claim has prescribed, the burden shifts to the plaintiff to show why the claim has not prescribed.

---

[1] Rec. Docs. 22637, 22740.
[2] *Hilman v. Succession of Merrett*, 291 So. 2d 429, 431 (La. Ct. App. 1974).

Consequently, "[i]t is well settled that a plaintiff bears the burden of proving that the doctrine of *contra non valentem* should be applied to interrupt or suspend the running of prescription."[3]

Plaintiffs state in their Opposition and Statement of Facts "that the Knauf [Defendants'] drywall was discovered and the identity of the manufacturer confirmed on October 25, 2013."[4] Plaintiffs likewise admit that their claims were first filed on November 13, 2014, in the U.S. District Court for the Northern District of Alabama.[5] Accordingly, Plaintiffs themselves have conceded that their claims are facially prescribed and bear the burden to prove that their claims are not prescribed. They have not.

"Prescription is interrupted when … the obligee commences action against the obligor, in a court of competent jurisdiction and venue. If action is commenced in an incompetent court, or in an improper venue, prescription is interrupted only as to a defendant served by process within the prescriptive period."[6] Thus, prescription is interrupted by filing an action in a court of competent jurisdiction and venue or through service of process.

Plaintiffs argue that, although they waited over a year to file their action against the Knauf Defendants after discovering the Knauf drywall on their Property, prescription on their claims should be tolled via their attempted participation in the Pilot Remediation Program (through untimely completing a class registration form). Plaintiffs reference no legal authority in support of their argument, likely because it does not exist. Plaintiffs' tolling argument is without merit.

Simply submitting a claim—regardless of its timeliness—does not toll prescription under Louisiana law,[7] though the Knauf Defendants note that Plaintiffs' class registration form was in

---

[3] *La Plaque Corp. v. Chevron U.S.A. Inc.*, 638 So. 2d 354, 358 (La. Ct. App.), *writ denied,* 94-2125 (La. 11/11/94); 644 So. 2d 395 (citing *Intracoastal Seafood Co. v. Scott*, 556 So. 2d 974, 976 (La. Ct. App. 1990)).
[4] Rec. Doc. 22740 at 6; *see also* Rec. Doc. 22740-8 at 1.
[5] Rec. Doc. 22740 at 6; Rec. Doc. 22740-8 at 1.
[6] La. Civ. Code art. 3462.
[7] *Id.*

fact untimely. Similarly, even to the extent the registration could be construed as a negotiation to be included in the program as a late claim, settlement negotiations are insufficient to toll prescription.[8] Though an "acknowledgment" may be sufficient to interrupt prescription, Plaintiffs' attempted participation in the Pilot Program did not equate to an "acknowledgement" on behalf of the Knauf Defendants. This is explicitly stated in the Release signed by Plaintiffs, which reads:

> Nothing in this Release shall constitute (i) any admission of liability or fault of any kind on the part of Knauf Defendants who expressly deny any liability to Claimant and who are entering this agreement to avoid the expense and uncertainty of litigation; (ii) an admission of or consent to jurisdiction or waiver of any jurisdictional defenses, except as provided in the New Claims Agreement, and where applicable, the Knauf Class Settlement Agreement; or (iii) consent to service by the Knauf Defendants. …[9]

For Plaintiffs' argument to prevail, Plaintiffs must demonstrate that their failure to file an action was due to some affirmative act by the Knauf Defendants that prevented Plaintiffs from pursuing their claims in court—*e.g.*, that the Knauf Defendants "made an acknowledgement of liability []or 'lulled' [Plaintiffs] into believing that the claim[s] would be paid."[10] They have not and there is no evidence that the Knauf Defendants ever acknowledged any liability or lulled Plaintiffs into believing a claim would be paid.

Moreover, "Plaintiffs have not provided any evidence that Defendant[s] undertook any action to keep them in ignorance of their [] claims. Defendants had no duty to warn Plaintiffs that prescription had not been interrupted or warn Plaintiffs of the prescription deadline[.]"[11] "Plaintiffs were aware of the facts underlying their claims and if they had followed the dictates of the

---

[8] *Mullen v. Sears, Roebuck, & Co.*, 887 F.2d 615, 618 (5th Cir. 1989) ("Louisiana courts read Article 3464 to require more than settlement negotiations [to toll prescription]. If, as here, the negotiations do not result in an agreement that the defendant is liable for the plaintiff's injuries, there is no acknowledgement sufficient to interrupt prescription.").

[9] *See* October 27, 2014 Release at 7-8 (attached as Exhibit G); November 19, 2014 Release at 7-8 (attached as Exhibit H).

[10] *Barbarin v. Wal-Mart Stores, Inc.*, 01-669 (La. App. 5 Cir. 11/27/01); 804 So. 2d 116, 120.

[11] *Billiot v. Multifamily Mgmt., Inc.*, No. CV-18-715-JWD-RLB, 2020 WL 1217415, at *6 (M.D. La. Mar. 12, 2020).

Louisiana Code of Civil Procedure in filing the suit in a court with proper venue or provided service of process within the prescriptive period, then prescription would not have been an issue."[12]

Additionally, the Knauf Defendants point out that Plaintiffs previously alleged that they were claimants in the action captioned *Beane, et al. v. Gebrueder Knauf Verwaltungsgesellschaft, KG, et al.*[13] Though the Knauf Defendants submit that Plaintiffs were not claimants in this action, nor class members to the Knauf Class Settlement Agreement, it should be noted that, to the extent Plaintiffs were claimants in *Beane* and/or class members to the settlement agreement, their claims in *Bennett* would be barred as those claims were released by all members that did not timely opt-out. Furthermore, even if Plaintiffs were listed claimants in the *Beane* complaint, their claims would still be barred.[14]

For the foregoing reasons, Plaintiffs' claims are prescribed on their face and Plaintiffs have not satisfied their burden to prove otherwise.

## II. This Court should not entertain Plaintiffs' revived "duty to warn" arguments that it has already rejected.

In their opposition, Plaintiffs rehash and reframe their previous argument that the Knauf Defendants had a duty to take some additional affirmative action to place Plaintiffs on notice of their defective product, and that their failure to do so has suspended the running of prescription. Plaintiffs present a handful of creative arguments on this point, all of which must ultimately fail.

First, Plaintiffs argue that the Knauf Defendants had a duty to warn under Louisiana law and failed to carry out that duty, such that the prescriptive period has not yet commenced.[15] This

---

[12] *Id.*
[13] Ex. G at 1; Ex. H at 1.
[14] "*American Pipe*'s underlying concern for judicial economy is frustrated when individual plaintiffs file lawsuits despite the fact that they may be putative members of pending class actions. Several courts have relied on this fact alone to find that plaintiffs who file individual suits forfeit any tolling benefits under American Pipe." *In re Vioxx Prod. Liab. Litig.*, 522 F. Supp. 2d 799, 806 n.11 (E.D. La. 2007) (citing cases).
[15] Rec. Doc. 22740 at 16-19.

Court has previously rejected this precise argument, concluding "that it would not have been reasonably possible for Knauf to identify all those to whom a post-sale duty to warn may have been owed under Louisiana law."[16] Additionally, this Court recognized "that Knauf did undertake an extensive notice program during the major settlement phase of this MDL to identify potential claimants and notify them of their right to participate in the settlement."[17] Consequently, this Court should once more reject Plaintiffs' arguments that the prescriptive period should be suspended due to the Knauf Defendants' failure to warn them individually. Additionally, this Court previously rejected Plaintiffs' equitable estoppel arguments for the same reasons and should do so once more.[18]

Second, Plaintiffs reframe their duty to warn argument by contending that the prescriptive period should be suspended because the Knauf Defendants have not reported the sale of their drywall to the Consumer Product Safety Commission ("CPSC") nor recalled their product pursuant to the Consumer Product Safety Act, 15 U.S.C. § 2051, *et seq.* ("CPSA").[19] Plaintiffs' argument is flawed for numerous reasons—both factual and legal.

At the outset, the Knauf Defendants note that the CPSA is not a standalone regulatory text; rather, the federal statute establishes the CPSC and defines the CPSC's basic authority, including its authority to develop standards and bans, pursue recalls, and to ban products under certain circumstances. The CPSA does not establish a statutory framework regulating the Knauf Defendants' commercial business, nor does it singularly create an affirmative legal duty to which the Knauf Defendants must adhere. Most importantly, the CPSA does not establish a private right of action on behalf of Plaintiffs—its enforcement is vested in the CPSC, tasked with overseeing

---

[16] Rec. Doc. 22615 at 27-28.
[17] *Id.* at 28.
[18] *Id.*
[19] Rec. Doc. 22740 at 19-20.

compliance with its own regulations and the CPSA.[20] Thus, if the Knauf Defendants failed to comply with the CPSA, the CPSC—as opposed to Plaintiffs—would have standing to pursue the Knauf Defendants. The CPSC has not done so and Plaintiffs lack standing.

Additionally, the CPSA reporting requirements cited by Plaintiffs are circumvented if the CPSC has been adequately informed of a product defect.[21] On May 25, 2010, the CPSC issued a warning concerning the Knauf Defendants' Chinese drywall.[22] To the extent the Knauf Defendants were required to report the defective drywall under 15 U.S.C. § 2064 (they were not), and this reporting requirement suspended commencement of the prescriptive period (it does not), such a requirement was fulfilled in 2010 and does not suspend the prescriptive period on Plaintiffs' claims beyond this time.

Further, the CPSA reporting requirements cited by Plaintiffs apply solely to failures to comply with CPSC requirements,[23] product defects that create a substantial risk of injury to the public,[24] and products that create an unreasonable risk of serious injury or death.[25] The reporting requirements do not apply to *all* products that "contain[] a defect" as Plaintiffs falsely advocate,[26] only those that create a substantial risk of injury to the public. There is no evidence that the Knauf Defendants' defective drywall fits this definition, a fact that the CPSC has confirmed on its website, additionally noting that the Knauf Defendants are not required to recall their product.[27]

---

[20] 15 U.S.C. § 2061(a).
[21] 15 U.S.C. § 2064(b).
[22] U.S. CPSC, *CPSC Identifies Manufacturers of Problem Drywall Made in China*, CPSC.gov (May 25, 2010), https://www.cpsc.gov/Newsroom/News-Releases/2010/CPSC-Identifies-Manufacturers-of-Problem-Drywall-Made-in-China.
[23] 15 U.S.C. § 2064(b)(1)-(2).
[24] *Id.* § 2064(a)(2) & (b)(3).
[25] *Id.* § 2064(b)(4).
[26] Rec. Doc. 22740 at 20.
[27] *See* U.S. CPSC, *Other Frequently Asked Questions*, CPSC.gov, https://www.cpsc.gov/content/other-frequently-asked-questions (last visited April 17, 2020); *see also* U.S. CPSC, *CDC Review Finds No Link Between Problem Drywall and 11 Reported Deaths*, CPSC.gov (January 31, 2011), https://www.cpsc.gov/Newsroom/News-Releases/2011/CDC-Review-Finds-No-Link-Between-Problem-Drywall-and-11-Reported-Deaths/.

Rather, the CPSC has implemented specific regulations—including the Drywall Safety Act of 2012—designed to combat the issues previously encountered with defective drywall.[28] This Court must reject Plaintiffs' arguments regarding the CPSA.[29]

Third, Plaintiffs aver that the prescriptive period should be suspended because the Knauf Defendants fraudulently concealed known problems with their drywall.[30] In support of this farfetched argument, Plaintiffs cite a single Florida news article from 2010 referencing a *suspected* agreement between the Knauf Defendants and a drywall distributor in Florida. Plaintiffs have not cited *any reputable evidence* in support of their fraudulent concealment theory, demonstrating its baselessness. Instead, Plaintiffs blame the Knauf Defendants for their lack of evidentiary support, stating that "[i]t is noteworthy that the Defendants have not produced that indemnification agreement [referenced in the Florida news article] in their disclosures to Plaintiffs[.]"[31] Nearly a decade of discovery occurred in this MDL, all of which Plaintiffs received (from both the Knauf Defendants and Banner Supply Company), and none of which supports Plaintiffs' present position. If Plaintiffs believed there was additional discovery withheld by the Knauf Defendants, they should have requested it. Plaintiffs never sought leave to conduct discovery under the CMO and cannot now be excused from adequately supporting their position due to their own neglect.

---

[28] U.S. CPSC, *Drywall Business Guidance*, CPSC.gov, https://www.cpsc.gov/Business--Manufacturing/Business-Education/Business-Guidance/Drywall (last visited April 17, 2020).

[29] Lastly, in arguing that the defects in the drywall were "latent," Plaintiffs directly contradict the oft-repeated allegation in the Fifth Amended Class Action Complaint that the drywall emits "noxious gases." Plaintiffs cannot use their Opposition brief to raise new claims; thus, the new arguments regarding the CPSA, duty to warn, and latent defects should be rejected and ignored. *See, e.g.*, *DeKort v. Integrated Coast Guard Sys.*, 475 F. App'x 521, 522 (5th Cir. 2012) ("We also conclude that the district court did not err in denying DeKort's motion for partial summary judgment because he attempted to raise a new claim, not asserted in his fifth amended complaint."); *see also Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1314 (11th Cir. 2004) ("[T]he Supreme Court has mandated a liberal pleading standard for civil complaints under Federal Rule of Civil Procedure 8(a). This standard however does not afford plaintiffs with an opportunity to raise new claims at the summary judgment stage.").

[30] Rec. Doc. 22740 at 21-23.

[31] *Id.* at 21.

As a final note, even if this Court did rely on one Florida journalist's speculations and theories, the article is irrelevant to Plaintiffs' claims. Plaintiffs' Property is located in Louisiana, not Florida, and Plaintiffs have no connection to Banner Supply Company (a Florida distributor) because their drywall was purchased from Interior Exterior Building Supply (a Louisiana distributor). Also, the article, published in 2010, does not demonstrate that the prescriptive period could be suspended beyond this time.

### III. Plaintiffs fail to address that they sought relief other than what was available in the Pilot Program during the pendency of their bankruptcy.

In response to the Knauf Defendants' argument that Plaintiffs are judicially estopped from pursuing their claims that were not disclosed in their bankruptcy, Plaintiffs argue that they should not be estopped from recovery because they stood to receive no windfall in their bankruptcy by not disclosing their Chinese drywall claims, as those claims would not benefit their estate.[32] The Knauf Defendants do not address the soundness of Plaintiffs' proffered legal theory because, even if accepted, it is inapplicable herein due to Plaintiffs' misstatement of the underlying facts.

Specifically, Plaintiffs argue that they would not receive a windfall in their bankruptcy by non-disclosure of their Chinese drywall claims because, in the Pilot Program, they only sought living expenses and remediation costs would be handled by the settlement administrator, such that the claims would not benefit their estate.[33] Plaintiffs' argument is wholly contingent on Plaintiffs' assertion that, during the pendency of their bankruptcy, they only sought the relief available in the Pilot Program. Plaintiffs' own statements in their Opposition demonstrate that this is not the case—Plaintiffs admit that their bankruptcy proceedings took place between August 2014 and December

---

[32] Rec. Doc. 22740 at 24-25.
[33] *Id.*

2014,[34] and that they filed this action on November 13, 2014,[35] during the pendency of their bankruptcy proceedings. Plaintiffs do not seek solely remediation costs and living expenses in this action—rather, Plaintiffs seek, *inter alia*, "[c]ompensatory, statutory, and/or punitive damages; [p]re and post-judgment interest as allowed by law; [i]njunctive relief; [a]n award of attorney's fees as allowed by law; [a]n award of taxable costs; and [a]ny and all such further relief as this Court deems just and proper."[36] Thus, Plaintiffs not only failed to disclose their participation in the Pilot Program during the pendency of their bankruptcy, they failed to disclose this lawsuit, which undoubtedly sought relief that would result in a windfall to Plaintiffs. Plaintiffs' arguments must fail.

## IV.  Conclusion

For the foregoing reasons and those stated in the Knauf Defendants' memorandum in support of their motion, this Court should grant the Knauf Defendants' motion for summary judgment and dismiss the claims asserted by the Pendletons against them in the Fifth Amended Complaint.

---

[34] *Id.* at 24.
[35] *Id.* at 6; Rec. Doc. 22740-8 at 1.
[36] Class Action Complaint at 29, *Bennett, et al. v. Gebrueder Knauf Verwaltungsgesellschaft, KG, et al.*, No. 14-CV-2722 (N.D. Ala. filed Nov. 13, 2014), ECF No. 1.

Respectfully submitted,

**FISHMAN HAYGOOD, LLP**

/s/ *Kerry J. Miller*

**KERRY J. MILLER (#24562), T.A.**
**PAUL C. THIBODEAUX (#29446)**
**DANIEL J. DYSART (#33812)**
201 St. Charles Avenue, Suite 4600
New Orleans, LA 70170
Telephone:	504.556.5549
Facsimile:	504.310.0275
Email:	kmiller@fishmanhaygood.com

*Counsel for Defendants,*
*Knauf Gips KG and*
*Knauf Plasterboard (Tianjin) Co., Ltd.*

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing pleading has been served upon Russ Herman, Plaintiffs' Liaison Counsel, by email, to all parties by electronically uploading the same to LexisNexis File & Serve in accordance with Pre-Trial Order No. 6, individually to pro se claimants by U.S. Mail, and that the foregoing was filed with the Clerk of Court of the United States Court for the Eastern District of Louisiana, on this 27th day of April, 2020.

*/s/ Kerry J. Miller*
**KERRY J. MILLER**