UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN RE:  CHINESE-MANUFACTURED DRYWALL   *
PRODUCTS LIABILITY LITIGATION           *
                                        *   CIVIL ACTION
                                        *
                                        *   MDL NO. 2047
                                        *
                                        *   SECTION L (2)
                                        *
**THIS DOCUMENT RELATES TO:**           *
*Elizabeth Bennett, et al. v. Gebr. Knauf*   *
*Verwaltungsgesellschaft, KG, et al.*, No. 14-2722   *

## ORDER & REASONS

Pending before the Court is a motion to sever the claims of Plaintiffs Peggy Powell and Wicler Pierre. R. Doc. 22710. Defendants filed a reply. R. Doc. 22737. Having considered the parties' arguments and the applicable law, the Court now rules as follows.

I.   BACKGROUND

From 2004 through 2006, the housing boom in Florida and rebuilding efforts necessitated by Hurricanes Rita and Katrina led to a shortage of construction materials, including drywall. As a result, drywall manufactured in China was brought into the United States and used to construct and refurbish homes in coastal areas of the country, notably the Gulf Coast and East Coast. Sometime after the installation of the Chinese drywall, homeowners began to complain of emissions of foul-smelling gas, the corrosion and blackening of metal wiring, surfaces, and objects, and the breaking down of appliances and electrical devices in their homes.  *See In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, 894 F. Supp. 2d 819, 829–30 (E.D. La. 2012), *aff'd*, 742 F.3d 576 (5th Cir. 2014). Many of these homeowners also began to complain of various physical afflictions believed to be caused by the Chinese drywall.

These homeowners then began to file suit in various state and federal courts against homebuilders, developers, installers, realtors, brokers, suppliers, importers, exporters, distributors,

and manufacturers who were involved with the Chinese drywall. As a result, many homebuilders also filed suit seeking to recoup their damages. Because of the commonality of facts in the various cases, this litigation was designated as a multidistrict litigation. Pursuant to a Transfer Order from the United States Judicial Panel on Multidistrict Litigation on June 15, 2009, all federal cases involving Chinese drywall were consolidated for pretrial proceedings in MDL 09-2047 before this Court. Since that date, numerous cases have been consolidated, involving thousands of individual claims; over 20,000 documents have been entered into the record, millions of documents have been exchanged in discovery, depositions have been taken in the United States and in China, and over thirty Pretrial Orders have been issued; the Court has appointed steering committees and liaison counsel for plaintiffs, homebuilders, insurers, installers, and manufacturers, and it has presided over monthly status conferences, hearings, and several bellwether trials.

The Chinese drywall at issue was largely manufactured by two groups of defendants: (1) the Knauf Entities and (2) the Taishan Entities. The litigation has focused upon these two entities and their downstream associates and has proceeded on strikingly different tracks for the claims against each group.

### A. The Knauf Defendants

The Knauf Entities are German-based, international manufacturers of building products, including drywall, whose Chinese subsidiary, Knauf Plasterboard (Tianjin) Co., Ltd. ("KPT"), advertised and sold its Chinese drywall in the United States. The Knauf Entities are named defendants in numerous cases consolidated with the MDL litigation and litigation in state courts.

The Knauf Entities first entered their appearance in the MDL litigation on July 2, 2009. Thereafter, the Court presided over a bellwether trial in *Hernandez v. Knauf Gips KG*, Case No. 09-6050, involving a homeowner's claims against KPT for defective drywall. The Court found in

2

favor of the plaintiff family in *Hernandez*, issued a detailed Findings of Fact and Conclusions of Law, and entered a Judgment in the amount of $164,049.64, including remediation damages in the amount of $136,940.46—which represented a remediation cost of $81.13 per square foot based on the footprint square footage of the house.

Subsequently, the Knauf Entities agreed to institute a pilot remediation program utilizing the remediation protocol formulated by the Court from the evidence in *Hernandez*. The Knauf pilot remediation program is now completed and has remediated more than 2,200 homes containing KPT Chinese drywall using the same general protocol. At the Court's urging, the parties began working together to monetize this program and make it available to a broader class of plaintiffs.

On December 20, 2011, the Knauf Entities and the PSC entered into a global, class Settlement Agreement ("Knauf Settlement Agreement"), which was designed to resolve all Knauf-related, Chinese drywall claims. In addition to the Knauf Settlement Agreement and after a jury trial in a bellwether case, numerous defendants in the chain-of-commerce with the Knauf Entities have entered into class settlement agreements, the effect of which settles almost all of the Knauf Entities' chain-of-commerce litigation. The total amount of the Knauf Settlement is approximately $1.1 billion.

### B. The Bennett Class Action

The instant matter is a purported class action filed on November 13, 2014 by Elizabeth Bennett in the Northern District of Alabama.[1] Ms. Bennet raised claims on her own behalf and on

---

[1] On January 22, 2020, the Court granted Defendant's Motion to Deny Class Certification, finding that the predominance requirement of Rule 23(b)(3) was not satisfied. R. Docs. 22524, 22528. Specifically, the Court noted that the variety in the individual claims, which included personal injury and property damage claims, theories of liability, applicable state laws and defenses, and different damage calculations precluded the finding of predominance necessary to warrant class certification.

3

the behalf of a nationwide class of similarly situated homeowners who allegedly suffered damages due to the presence of defective Chinese drywall in their homes. The Plaintiffs raised claims against the Knauf Entities for negligence, negligence per se, strict liability, breach of express and/or implied warranty, redhibition, violations of the Louisiana Products Liability Act, private nuisance, negligent discharge of a corrosive substance, unjust enrichment, violations of consumer protection laws, and equitable and injunctive relief and medical monitoring with respect to the manufacture of allegedly defective Chinese drywall. In January 2015, the Judicial Panel on Multidistrict Litigation transferred the case to the Eastern District of Louisiana and consolidated it with the *In re Chinese Manufactured Drywall Liability Litigation*, MLD 09-2047, currently pending before this Court.

On October 31, 2019, the Court granted leave for Plaintiffs to add several new Plaintiffs to the action. R. Doc. 22357. The case now involves 130 affected properties. On that date, the Court also extended many of the Case Management Order's deadlines. R. Doc. 22357. With discovery well underway, the Knauf Defendants have begun to file dispositive motions targeting the claims of several individual plaintiffs.

Relevant to the instant motion, the Court granted summary judgment in Defendant's favor and against Plaintiffs Wicler Pierre on February 14, 2020, R. Doc. 22586, and Peggy Powell on March 6, 2020, R. Doc. 22615, on the grounds that their claims were barred under Florida and Mississippi's applicable statute of limitations. Specifically, the Court found that Wicler Pierre had actual knowledge of the presence of Chinese drywall in his home more than four years before filing suit in 2016 because he was told by a repair person that the fuses in his home kept failing due to the presence of Chinese drywall in 2010 and because he testified that he discovered the presence of the drywall in 2011 or 2012 after his neighbors renovated their own home due to

4

drywall problems. R. Doc. 22586 at 22. Similarly, the Court found that Peggy Powell had actual knowledge of the presence of Chinese drywall more than three years before filing her claims in 2018. In so finding, the Court relied on Ms. Powell's deposition, during which she explained that in 2014, an inspection of her property revealed signs of Chinese drywall, after which she researched the issue on the internet but decided to deal with the problem later. R. Doc. 22615 at 30.

## II. PENDING MOTION

Plaintiffs Wicler Pierre and Peggy Powell seek the severance of their claims from the above-captioned matter in order to allow them to pursue an appeal from this Court's grant of summary judgment against them. R. Doc. 22710. In Plaintiffs' view, severance is necessary to allow the appeals to progress without delaying the adjudication of the claims of approximately 120 other plaintiffs named in this action. R. Doc. 22710-1 at 3.

Defendants do not object to the actual severance of these two claims but do "object to Plaintiff's motion based on the piecemeal nature of Plaintiff's request." R. Doc. 22737. Defendants note that all of the *Bennett* claims are individualized and distinct, and that they must all eventually be severed and remanded back to courts of competent jurisdiction once the purpose of their consolidation in this MDL has been served. Defendants explain that although the Court issued a Case Management Order in this matter, directing Plaintiffs to file protective actions in individual courts of competent jurisdiction and venue to which the cases would be eventually remanded, Plaintiffs have not yet filed these protective actions and accordingly, the majority of the claims will be remanded to an improper court. R. Doc. 22737 at 2. Defendants suggest that therefore, any *Bennett* claim surviving dispositive motion practice must be severed from the mail action "so that

5

they can proceed on their own 'discrete and separate' claims in courts of competent venue and jurisdiction." R. Doc. 22737 at 2.

### III.   LAW & DISCUSSION

Rule 21 of the Federal Rules of Civil Procedure allows a district court to "sever any claim against a party." Fed. R. Civ. P. 21. Notably, a "district court has the discretion to sever an action if it is misjoined or might otherwise cause delay or prejudice." *Applewhite v. Reichhold Chems., Inc.*, 67 F.3d 571, 574 (5th Cir. 1995). As the Fifth Circuit has explained,

> Severance under Rule 21 creates two separate actions or suits where previously there was but one. Where a single claim is severed out of a suit, it proceeds as a discre[te], independent action, and a court may render a final, appealable judgment in either one of the resulting two actions notwithstanding the continued existence of unresolved claims in the other.

*United States v. O'Neil*, 709 F.2d 361, 368 (5th Cir. 1983). Although for the sake of judicial economy, "joinder of claims, parties, and remedies is strongly encouraged," *Applewhite*, 67 F.3d at 574, the district court "has broad discretion to sever." *Anderson v. Red River Waterway Comm'n*, 231 F.3d 211, 214 (5th Cir. 2000).

The parties have not raised any allegations of misjoinder here, as all Plaintiffs' claims arise out the alleged presence of defective Chinese drywall in their properties and are aimed at the same Defendants. Nevertheless, Wicler Pierre and Peggy Powell seek severance of their claims because they wish the appeal the summary judgment entered against them to the United States Court of Appeals for the Fifth Circuit. The Court recognizes that this is a lengthy process that would inevitably stall the adjudication of their fellow Plaintiffs' claims, which have already been active for over six years. Accordingly, the Court concludes that these two individual claims should be severed in the interests of convenience and judicial economy, and the other claims allowed to proceed before this Court. The Court takes note of Defendant's arguments that severance of all

Bennett claims may be warranted but will only rule on the matter if and when it is properly presented to the Court. Defendants retain the right to bring this argument before the Court at a later date.

IV. **CONCLUSION**

Considering the foregoing,

**IT IS ORDERED** that Plaintiffs' Motion to Sever, R. Doc. 22710, is **GRANTED**.

**IT IS FURTHER ORDERED** that within fourteen (14) days of this Order's issuance, Plaintiffs' counsel shall file amended complaints with respect to Plaintiffs Wicler Pierre and Peggy Powell. The caption of the amended complaints shall contain only the names of the individual plaintiffs whose claims have been severed and the defendants that are the subject of that specific claim. Upon filing of the amended complaints, the Clerk of Court shall issue individual civil actions numbers for Plaintiffs Wicler Pierre and Peggy Powell to proceed apart from the above-captioned action, but the claims shall remain consolidated in MDL 09-2047.

New Orleans, Louisiana, this 27th day of April, 2020.

_____
Eldon E. Fallon
United States District Court