**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **In Re: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION** | **MDL 2047**<br><br>**SECTION "L"** |
| **This document relates to:**<br><br>***Elizabeth Bennett, et al v. Gebr. Knauf Verwaltungsgesellschaft, KG, et al***<br><br>**Case No. 14:cv-2722** | **JUDGE ELDON FALLON**<br><br>**MAGISTRATE JOSEPH WILKINSON, JR.** |

**REPLY MEMORANDUM IN SUPPORT OF**
**MOTION FOR SUMMARY JUDGMENT ON CLAIMS**
**ASSERTED BY RONALD RAY BOGARD AND LESLIE SUSAN BOGARD**

Defendants, Knauf Gips KG and Knauf Plasterboard (Tianjin) Co., Ltd. (the "Knauf Defendants"), through undersigned counsel, respectfully submit this Reply Memorandum in Support of their Motion for Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure as to the claims asserted by Plaintiffs, Ronald "Ronnie" Ray Bogard and Leslie Susan Bogard ("Plaintiffs" or the "Bogards"), against them in Plaintiffs' Fifth Amended Class Action Complaint (the "Fifth Amended Complaint"),[1] and to respond to Plaintiffs' Opposition.[2]

**I. Plaintiffs misstate Mississippi's discovery rule by relying solely on antiquated law.**

Plaintiffs argue in their Opposition that their claims are not barred by the statute of limitations because it has been tolled by the discovery rule until Plaintiffs identified the Knauf Defendants' markings in their Property in 2016.[3] Plaintiffs do not reference any Mississippi law that supports this assertion or indicates that such a high level of knowledge must be obtained for a

[1] Rec. Doc. 22683.
[2] Rec. Doc. 22727.
[3] Rec. Doc. 22727 at 11 ("The defective drywall claim can only be filed after the cause of an injury, after the manufacturer's markings are located."); *id.* at 13 ("'Discovery' under Mississippi law occurs only when the manufacturer's markings are found, not at any point earlier.").

cause of action to accrue. Rather, the Mississippi Supreme Court has made clear that, under the discovery rule, "causes of action accrue 'upon discovery of the injury, *not discovery of the injury and its cause*.'"[4] "Knowledge of the cause of the injury is irrelevant to the analysis; rather, the inquiry is when the plaintiff knew or should have known of an injury."[5]

Plaintiffs' Opposition nevertheless cites a handful of cases for the proposition that Plaintiffs must know the cause of their injury for a cause of action to accrue—despite the Mississippi Supreme Court holding otherwise in 2016.[6] Each case cited by Plaintiffs in support of their statute of limitations argument pre-dates the decision in 2016.[7] In fact, the most recent decision referenced by Plaintiffs was decided fifteen years ago, in 2005.[8] Even at that time, the court noted that the knowledge required for a cause of action to accrue had been consistently diminished.[9] Even so, this Court should not rely on the antiquated law cited by Plaintiffs, but look to the more recent cases cited by the Knauf Defendants, all of which support the conclusion that Plaintiffs discovered their injury prior to February 22, 2013, and that such a discovery was sufficient for their cause of action to accrue, even absent knowledge of the cause of their injury.[10]

---

[4] *Ridgway Lane & Assocs., Inc. v. Watson*, 189 So. 3d 626, 629 (Miss. 2016) (quoting *Angle v. Koppers, Inc.*, 42 So. 3d 1, 5 (Miss. 2010)).

[5] *Am. Optical Corp. v. Estate of Rankin*, 227 So. 3d 1062, 1068 (Miss. 2017) (citing *Lincoln Elec. Co. v. McLemore*, 54 So. 3d 833, 838 (Miss. 2010)).

[6] *See Ridgway*, 189 So. 3d at 629.

[7] The cases cited by Plaintiffs, in the order they have been referenced, include: *Tabor Motor Co. v. Garrard*, 233 So. 2d 811 (Miss. 1970); *Benoist Elevator Co. v. Mitchell*, 485 So. 2d 1068 (Miss. 1986); *Boyles v. Schlumberger Tech. Corp.*, 832 So. 2d 503 (Miss. 2002); *Sarris v. Smith*, 782 So. 2d 721 (Miss. 2001); *Barnes v. Singing River Hosp. Sys.*, 733 So. 2d 199 (Miss. 1999); *Sweeney v. Preston*, 642 So. 2d 332 (Miss. 1994); *Williams v. Kilgore*, 618 So. 2d 51 (Miss. 1992); *Owens-Illinois, Inc. v. Edwards*, 573 So. 2d 704 (Miss. 1990); *PPG Architectural Finishes, Inc. v. Lowery*, 909 So. 2d 47 (Miss. 2005); *Mincy v. Crisler*, 96 So. 162 (Miss. 1923); *Wayne Gen. Hosp. v. Hayes*, 868 So. 2d 997, 1001 (Miss. 2004).

[8] *PPG*, 909 So. 2d 47.

[9] *Id.* at 51 ("Several recent decisions further erode the level of knowledge required to vest a cause of action.").

[10] *Am. Optical*, 227 So. 3d at 1068 (stating that causes of action accrue upon discovery of the injury, not discovery of the injury and its cause); *City of Tupelo v. O'Callaghan*, 208 So. 3d 556, 569-70 (Miss. 2017) (concluding that summary judgment should be granted on the basis that claims were time-barred because the claims had accrued at the time the plaintiffs had knowledge of the property damage, and not at the time the plaintiffs learned the cause of the injury from an engineer); *Ridgway*, 189 So. 3d at 629 (stating that causes of action accrue upon discovery of the injury, not discovery of the injury and its cause); *Milam v. Kelly*, 282 So. 3d 682, 691 (Miss. Ct. App. 2019) (affirming

## II. Plaintiffs have not shown a genuine material factual issue in dispute regarding when Plaintiffs were aware of the injury or their failure to investigate the injury.

Plaintiffs do not dispute that they became aware of an environmental problem with the Property prior to February 22, 2013. Instead, they appear to argue in their Opposition that they believed this problem was attributable to mold on the Property. The uncontroverted evidence indicates otherwise. It shows that Plaintiffs knew there was an "environmental problem" with the Property and, up until 2012, there was nothing to indicate that the problem was not mold. In 2012, Plaintiffs had a mold test completed which returned *negative* results.[11] Thereafter, Plaintiffs still knew there was an environmental problem with the Property (but that the problem was not mold) and proceeded to purchase the Property in 2013.

Plaintiffs attempt to dilute the clear factual record by presenting for the first time in their Opposition a variety of statements masquerading as facts, that are unsupported by the evidence and demonstrably false. For example, Plaintiffs state:

- "The grandchildren were treated on multiple occasions for what was thought to be a reaction to mold, but a mold test was performed with inconclusive results."[12]
- "In this instance, Plaintiffs' followed through with their grandchildren' doctors who thought Affected Property contained mold. That is exactly why a mold test was performed by Plaintiffs."[13]

Plaintiffs do not cite any evidence as support for these statements. Nothing in the record indicates that Plaintiffs—or medical professionals—believed that mold was the cause of the grandchildren's

---

chancellor's determination as to discovery date of injury and granting summary judgment based on claims having been barred by the statute of limitations).

[11] *See* Rec. Doc. 22683-6 at 18 (R. Bogard Depo. at 64) ("We knew something was wrong because we took the kids [/grandchildren] to the doctors in Jackson. And they said there was an environmental problem in that house [/the Property]. We didn't know what it was. So we had Micro-Methods out of Ocean Springs do a mold test. We thought it might be mold in the house. And it came back negative."); *see also* Rec. Doc. 22683-4 at 10 (Timeline History, additionally attached in Exhibit E) ("2-07-12 … The specialists believed they were coming into contact with something but with all the testing could not diagnosis what. So, we tested for Mold which came back negative. … Tested house for Mold – with Micro Methods (cannot find recpt) … Negative results").

[12] Rec. Doc. 22727 at 6-7.

[13] *Id.* at 14.

problems. Instead, the evidence supports the conclusion that the cause was unknown.[14] Similarly, Plaintiffs have never stated that the results of the mold test were *inconclusive*—this "fact" is not in their PPF, SPPF, or PFS, nor in their deposition testimony. Plaintiffs have repeatedly stated—both in writing and verbally—that the mold test was negative.[15] Absent proof, the inconsistent statements of fact proffered by Plaintiffs lack any weight for purposes of summary judgment.

Regardless, Plaintiffs do not dispute that, between purchasing the Property on February 22, 2013 and inspecting it for Chinese drywall on February 25, 2016, *i.e.*, **for over three years, Plaintiffs took no affirmative action to determine the cause or source of "the environmental problem" of which they were aware.** "[T]o claim benefit of the discovery rule, a plaintiff must be reasonably diligent in investigating the circumstances surrounding the injury."[16] Plaintiffs were not reasonably diligent. They did nothing to investigate their claims for over three years.

The Knauf Defendants have established with evidence and testimony that: (1) Plaintiffs knew the Property possessed an "environmental problem" prior to February 22, 2013;[17] (2) Ronald Bogard had general knowledge of Chinese drywall in 2013;[18] (3) Plaintiffs were in the construction/house-flipping business in Mississippi in 2013 and for many years prior;[19] and (4) the Bogards took no further steps to investigate the environmental problem in the Property after they

[14] *See* Rec. Doc. 22683-6 at 18 (R. Bogard Depo. at 64) ("We knew something was wrong because we took the kids to the doctors in Jackson. And they said there was an environmental problem in that house. We didn't know what it was."); *id.* at 17 (R. Bogard Depo. at 38) ("The kids were in pretty bad shape medically, and we didn't know why."); *see also* Rec. Doc. 22683-4 at 10 (Timeline History, additionally attached in Exhibit E) ("The specialists believed they were coming into contact with something but with all the testing could not diagnosis what. So, we tested for Mold which came back negative. Specialists suggested to remove all curtains, carpet, and purchase new linens and furniture (any items that could hold the culprit).").

[15] *See* Rec. Doc. 22683-6 at 18 (R. Bogard Depo. at 64) ("So we had Micro-Methods out of Ocean Springs do a mold test. ... And it came back negative."); *see also* Rec. Doc. 22683-4 at 10 (Timeline History, additionally attached in Exhibit E) ("2-07-12 … So, we tested for Mold which came back negative. … Tested house for Mold – with Micro Methods (cannot find recpt) … Negative results").

[16] *Wayne*, 868 So. 2d at 1001.

[17] Rec. Doc. 22683-6 at 18 (R. Bogard Depo. at 64).

[18] *Id.* at 10 (R. Bogard Depo. at 17).

[19] Rec. Doc. 22683-7 at 3-4 (L. Bogard Depo. at 17-18).

received the mold test results, neither prior to repurchase nor in the three years following repurchase.[20] Plaintiffs have not offered and cannot offer any evidence or testimony controverting these facts so as to create a dispute regarding a genuine material factual issue.

The Knauf Defendants maintain that, if this Court applies the discovery rule to toll the statute of limitations on Plaintiffs' claims, Plaintiffs' cause of action accrued prior to February 22, 2013, when they became aware of an environmental problem on the Property. However, to the extent this Court concludes that the discovery rule would toll the statute of limitations until 2016, when Plaintiffs identified the Knauf Defendants' markings on their drywall, the Knauf Defendants submit that this Court should not apply the discovery rule because Plaintiffs have failed to demonstrate that they were "reasonably diligent in investigating the circumstances surrounding the injury" so as "to claim benefit of the discovery rule[.]"[21]

**III. Plaintiffs' arguments regarding the Consumer Product Safety Act and fraudulent concealment are baseless.**

In their opposition, Plaintiffs present a handful of unsupported arguments never mentioned in their Fifth Amended Complaint that they maintain toll the applicable statute of limitations period. These arguments lack merit. First, Plaintiffs reframe their duty to warn argument by contending that the prescriptive period should be suspended because the Knauf Defendants have not reported the sale of their drywall to the Consumer Product Safety Commission ("CPSC") nor recalled their product pursuant to the Consumer Product Safety Act, 15 U.S.C. § 2051, *et seq.* ("CPSA").[22] Plaintiffs' argument is flawed for numerous reasons—both factual and legal.

At the outset, the Knauf Defendants note that the CPSA is not a standalone regulatory text; rather, the federal statute establishes the CPSC and defines the CPSC's basic authority, including

---

[20] Rec. Doc. 22683-6 at 13 (R. Bogard Depo. at 22).
[21] *Wayne Gen. Hosp.*, 868 So. 2d at 1001.
[22] Rec. Doc. 22727 at 15-17.

its authority to develop standards and bans, pursue recalls, and to ban products under certain circumstances. The CPSA does not establish a statutory framework regulating the Knauf Defendants' commercial business, nor does it singularly create an affirmative legal duty to which the Knauf Defendants must adhere. Most importantly, the CPSA does not establish a private right of action on behalf of Plaintiffs—its enforcement is vested in the CPSC, tasked with overseeing compliance with its own regulations and the CPSA.[23] Thus, if the Knauf Defendants failed to comply with the CPSA, the CPSC—as opposed to Plaintiffs—would have standing to pursue the Knauf Defendants. The CPSC has not done so and Plaintiffs lack standing.

Also, the CPSA reporting requirements cited by Plaintiffs are circumvented if the CPSC is adequately informed of a product defect.[24] On May 25, 2010, the CPSC issued a warning as to the Knauf Defendants' Chinese drywall.[25] To the extent the Knauf Defendants were required to report the defective drywall under 15 U.S.C. § 2064 (they were not), and this reporting requirement tolled the commencement of the statute of limitations period (it does not), this requirement was fulfilled in 2010 and does not toll the statute of limitations period on Plaintiffs' claims beyond this time.

Further, the CPSA reporting requirements cited by Plaintiffs apply solely to failures to comply with CPSC requirements,[26] product defects that create a substantial risk of injury to the public,[27] and products that create an unreasonable risk of serious injury or death.[28] The reporting requirements do not apply to *all* products that "contain[] a defect" as Plaintiffs falsely advocate,[29] only those that create a substantial risk of injury to the public. There is no evidence that the Knauf

---

[23] 15 U.S.C. § 2061(a).

[24] 15 U.S.C. § 2064(b).

[25] U.S. CPSC, *CPSC Identifies Manufacturers of Problem Drywall Made in China*, CPSC.gov (May 25, 2010), https://www.cpsc.gov/Newsroom/News-Releases/2010/CPSC-Identifies-Manufacturers-of-Problem-Drywall-Made-in-China.

[26] 15 U.S.C. § 2064(b)(1)-(2).

[27] *Id.* § 2064(a)(2) & (b)(3).

[28] *Id.* § 2064(b)(4).

[29] Rec. Doc. 22727 at 17.

Defendants' defective drywall fits this definition, a fact that the CPSC has confirmed on its website, additionally noting that the Knauf Defendants are not required to recall their product.[30] Rather, the CPSC has implemented specific regulations designed to combat the issues previously encountered with defective drywall.[31] Plaintiffs' CPSA arguments must be rejected.[32]

Second, Plaintiffs aver that the statute of limitations period should be tolled because the Knauf Defendants fraudulently concealed known problems with their drywall.[33] Plaintiffs have not alleged fraudulent concealment anywhere in the Fifth Amended Complaint.[34] Consequently, Plaintiffs have failed to plead fraud with specificity, as required by both Mississippi and Federal Rule of Civil Procedure 9(b).[35] Plaintiffs' argument should be dismissed on this basis alone.

Moreover, Plaintiffs cite only a single Florida news article from 2010 referencing a *suspected* agreement between the Knauf Defendants and a drywall distributor in Florida in support of their farfetched fraudulent concealment argument. Plaintiffs have not cited *any reputable evidence* in support of their fraudulent concealment theory, demonstrating its baselessness. Instead, Plaintiffs blame the Knauf Defendants for their lack of evidentiary support, stating that

---

[30] *See* U.S. CPSC, *Other Frequently Asked Questions*, CPSC.gov, https://www.cpsc.gov/content/other-frequently-asked-questions (last visited April 17, 2020); *see also* U.S. CPSC, *CDC Review Finds No Link Between Problem Drywall and 11 Reported Deaths*, CPSC.gov (January 31, 2011), https://www.cpsc.gov/Newsroom/News-Releases/2011/CDC-Review-Finds-No-Link-Between-Problem-Drywall-and-11-Reported-Deaths/.

[31] U.S. CPSC, *Drywall Business Guidance*, CPSC.gov, https://www.cpsc.gov/Business--Manufacturing/Business-Education/Business-Guidance/Drywall (last visited April 17, 2020).

[32] Lastly, in arguing that the defects in the drywall were "latent," Plaintiffs directly contradict the oft-repeated allegation in the Fifth Amended Class Action Complaint that the drywall emits "noxious gases." Plaintiffs cannot use their Opposition brief to raise new claims. The new arguments regarding the CPSA, duty to warn, and latent defects should be rejected and ignored. *See, e.g., DeKort v. Integrated Coast Guard Sys.*, 475 F. App'x 521, 522 (5th Cir. 2012) ("We also conclude that the district court did not err in denying DeKort's motion for partial summary judgment because he attempted to raise a new claim, not asserted in his fifth amended complaint."); *see also Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1314 (11th Cir. 2004) ("[T]he Supreme Court has mandated a liberal pleading standard for civil complaints under Federal Rule of Civil Procedure 8(a). This standard however does not afford plaintiffs with an opportunity to raise new claims at the summary judgment stage.").

[33] Rec. Doc. 22727 at 17-19.

[34] Rec. Doc. 21334 (the Fifth Amended Complaint does not use the words "fraud" or "conceal" at all, nor does it use any synonymous terms).

[35] *Smith v. Gen. Motors, LLC*, No. 17-CV-471-TSL-RHW, 2017 WL 4582330, at *3 (S.D. Miss. Oct. 13, 2017).

"[i]t is noteworthy that the Defendants have not produced that indemnification agreement [referenced in the Florida news article] in their disclosures to Plaintiffs[.]"[36] Nearly a decade of discovery occurred in this MDL, all of which Plaintiffs received (from both the Knauf Defendants and Banner Supply Company), and none of which supports Plaintiffs' present position. If Plaintiffs believed there was additional discovery withheld by the Knauf Defendants, they should have requested it. Plaintiffs never sought leave to conduct discovery under the CMO and cannot now be excused from adequately supporting their position due to their own neglect.

As a final note, even if this Court did rely on one Florida journalist's speculations and theories, the article is irrelevant to Plaintiffs' claims. Plaintiffs' Property is located in Mississippi, not Florida, and Plaintiffs have no connection to Banner Supply Company (a Florida distributor) because their drywall was purchased from Interior Exterior Building Supply (a Louisiana distributor).[37] Also, the article, published in 2010, does not demonstrate that the statute of limitations period could be suspended beyond this time.

---

[36] Rec. Doc. 22727 at 17.

[37] *See* Rec. Doc. 22683-2 at 2; Rec. Doc. 22683-4 at 3. *See also* Exhibit E (Attachment #4: Interior Exterior Building Supply Invoice).

Exhibit E includes additional documents that were inadvertently cut off or incorrectly referenced in the Knauf Defendants' original filing due to a clerical error (Rec. Doc. 22683). The Knauf Defendants clarify those inadvertencies herein but will supplement the record if the Court desires:

1. "Ex. B (Attachment 1 to SPPF, 02/03/2006 Settlement Statement)," referenced in footnotes 9 and 47 of the Knauf Defendants' memorandum (Rec. Doc. 22683-1 at 4, 9) and paragraph 17 of the Knauf Defendants' Statement of Facts (Rec. Doc. 22683-8 at 3) was inadvertently filed as part of Exhibit C (Rec. Doc. 22683-4 at 11-12) and is additionally attached in Exhibit E.
2. "Ex. B (Attachment 2 to SPPF, 05/22/2006 Warranty Deed)," referenced in footnotes 11 and 47 of the Knauf Defendants' memorandum (Rec. Doc. 22683-1 at 4, 9) and paragraph 19 of the Knauf Defendants' Statement of Facts (Rec. Doc. Rec. Doc. 22683-8 at 3) was inadvertently filed as part of Exhibit D (Rec. Doc. 22683-5 at 1-2) and is additionally attached in Exhibit E.
3. "Exhibit D (Exhibit 4 to R. Bogard Depo.)," referenced in footnotes 12 and 50 of the Knauf Defendants' memorandum (Rec. Doc. 22683-1 at 4, 10) and paragraph 20 of the Knauf Defendants' Statement of Facts (Rec. Doc. Rec. Doc. 22683-8 at 3) should cite to the 02/22/2013 Warranty Deed. The correct document was inadvertently filed as part of Exhibit B (Rec. Doc. 22683-3 at 17-18) but was additionally included as Plaintiffs' Exhibit A (Rec. Doc. 22727-1).
4. "Ex. B (Attachment 7b to SPPF, 02/22/2013 Settlement Statement)," referenced in footnotes 12 and 50 of the Knauf Defendants' memorandum (Rec. Doc. 22683-1 at 4, 10) and paragraph 20 of the Knauf Defendants' Statement of Facts (Rec. Doc. Rec. Doc. 22683-8 at 3) was inadvertently cut off in the filing and attached in Exhibit E.

## IV. Plaintiffs' duty to warn arguments have already been rejected by this Court.

Plaintiffs argue that the Knauf Defendants had a duty to warn under Mississippi law and failed to carry out that duty, such that the statute of limitations period has not yet commenced.[38] This Court has previously rejected this argument, concluding that there is no post-sale duty to warn under Mississippi law.[39] Additionally, Plaintiffs have not demonstrated by a preponderance of the evidence that the Knauf Defendants failed to warn of known risks at the time of the sale.[40] The Court concluded that "the evidence does not support Plaintiffs' estoppel argument."[41] This Court should once more reject Plaintiffs' arguments that the statute of limitations period should be suspended due to the Knauf Defendants' failure to warn them individually.

## V. Plaintiffs misrepresent that there is no evidence to support the Knauf Defendants' assumption of risk defense.

Plaintiffs state in their Opposition that "Defendants presented no evidence in support of an assumption of risk defense."[42] Plaintiffs are incorrect—the Knauf Defendants have established with evidence and testimony that: (1) Plaintiffs knew the Property possessed an "environmental problem" prior to purchasing it on February 22, 2013;[43] (2) Ronald Bogard had general knowledge of Chinese drywall in 2013;[44] (3) Plaintiffs were in the construction/house-flipping business in

5. "Ex. B (Timeline History to SPPF)," referenced in footnotes 13, 48, and 50 of the Knauf Defendants' memorandum (Rec. Doc. 22683-1 at 4, 10) and paragraph 21 of the Knauf Defendants' Statement of Facts (Rec. Doc. Rec. Doc. 22683-8 at 3) was inadvertently filed as part of Exhibit C (Rec. Doc. 22683-4 at 10) and is additionally attached in Exhibit E.
6. "Ex. A at 2," referenced in footnotes 15 and 58 of the Knauf Defendants' memorandum (Rec. Doc. 22683-1 at 5, 12) and paragraph 24 of the Knauf Defendants' Statement of Facts (Rec. Doc. Rec. Doc. 22683-8 at 4) as support for the fact that Plaintiffs purchased the Property "as-is" should cite to the PFS (Exhibit C) at 2 (Rec. Doc. 22683-4).

[38] Rec. Doc. 22727 at 19-22.

[39] Rec. Doc. 22615 at 27-28.

[40] *Id.*

[41] *Id.* at 28.

[42] Rec. Doc. 22727 at 23.

[43] Rec. Doc. 22683-6 at 18 (R. Bogard Depo. at 64).

[44] *Id.* at 10 (R. Bogard Depo. at 17).

Mississippi in 2013 and for many years prior;[45] (4) Plaintiffs took no further steps to investigate the environmental problem in the Property prior to repurchase on February 22, 2013 after they received the mold test results in 2012.[46] Plaintiffs, on the other hand, have not offered and cannot offer any evidence or testimony controverting these facts so as to create a dispute regarding a genuine material factual issue. Plaintiffs assumed the risk of Chinese drywall.

## VI. Conclusion

For the foregoing reasons and those stated in the Knauf Defendants' memorandum in support of their motion, this Court should grant the Knauf Defendants' motion for summary judgment and dismiss the Bogards' claims against them in the Fifth Amended Complaint.

Respectfully submitted,

**FISHMAN HAYGOOD, LLP**

/s/ *Kerry J. Miller*

**KERRY J. MILLER (#24562), T.A.**
**DANIEL J. DYSART (#33812)**
201 St. Charles Avenue, Suite 4600
New Orleans, LA 70170
Telephone: 504.556.5549
Facsimile: 504.310.0275
Email: kmiller@fishmanhaygood.com

***Counsel for Defendants,***
***Knauf Gips KG and***
***Knauf Plasterboard (Tianjin) Co., Ltd.***

[45] Rec. Doc. 22683-7 at 3-4 (L. Bogard Depo. at 17-18).
[46] Rec. Doc. 22683-6 at 13 (R. Bogard Depo. at 22).

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing pleading has been served upon Russ Herman, Plaintiffs' Liaison Counsel, by email, to all parties by electronically uploading the same to LexisNexis File & Serve in accordance with Pre-Trial Order No. 6, individually to pro se claimants by U.S. Mail, and that the foregoing was filed with the Clerk of Court of the United States Court for the Eastern District of Louisiana, on this 27th day of April, 2020.

*/s/ Kerry J. Miller*
**KERRY J. MILLER**