UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALL<br>PRODUCTS LIABILITY LITIGATION | *<br>*<br>*<br>*<br>*<br>*<br>* | CIVIL ACTION<br><br>MDL NO. 2047<br><br>SECTION L (2) |
| THIS DOCUMENT RELATES TO:<br>*Elizabeth Bennett, et al. v. Gebr. Knauf*<br>*Verwaltungsgesellschaft, KG, et al.*, No. 14-2722 | *<br>*<br>* | |

## ORDER & REASONS

Pending before the Court is Defendants' Reurged Motion to Dismiss Claims Asserted by Vashti Alethia Locke-Esberry Under Rule 37. R. Doc. 22707. Plaintiff has not filed an opposition. Having considered the arguments and the applicable law, the Court now rules as follows.

I.   **BACKGROUND**

From 2004 through 2006, the housing boom in Florida and rebuilding efforts necessitated by Hurricanes Rita and Katrina led to a shortage of construction materials, including drywall. As a result, drywall manufactured in China was brought into the United States and used to construct and refurbish homes in coastal areas of the country, notably the Gulf Coast and East Coast. Sometime after the installation of the Chinese drywall, homeowners began to complain of emissions of foul-smelling gas, the corrosion and blackening of metal wiring, surfaces, and objects, and the breaking down of appliances and electrical devices in their homes. *See In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, 894 F. Supp. 2d 819, 829–30 (E.D. La. 2012), *aff'd*, 742 F.3d 576 (5th Cir. 2014). Many of these homeowners also began to complain of various physical afflictions believed to be caused by the Chinese drywall.

These homeowners then began to file suit in various state and federal courts against homebuilders, developers, installers, realtors, brokers, suppliers, importers, exporters, distributors,

and manufacturers who were involved with the Chinese drywall. As a result, many homebuilders also filed suit seeking to recoup their damages. Because of the commonality of facts in the various cases, this litigation was designated as a multidistrict litigation. Pursuant to a Transfer Order from the United States Judicial Panel on Multidistrict Litigation on June 15, 2009, all federal cases involving Chinese drywall were consolidated for pretrial proceedings in MDL 09-2047 before this Court. Since that date, numerous cases have been consolidated, involving thousands of individual claims; over 20,000 documents have been entered into the record, millions of documents have been exchanged in discovery, depositions have been taken in the United States and in China, and over thirty Pretrial Orders have been issued; the Court has appointed steering committees and liaison counsel for plaintiffs, homebuilders, insurers, installers, and manufacturers, and it has presided over monthly status conferences, hearings, and several bellwether trials.

The Chinese drywall at issue was largely manufactured by two groups of defendants: (1) the Knauf Entities and (2) the Taishan Entities. The litigation has focused upon these two entities and their downstream associates and has proceeded on strikingly different tracks for the claims against each group.

### A. The Knauf Defendants

The Knauf Entities are German-based, international manufacturers of building products, including drywall, whose Chinese subsidiary, Knauf Plasterboard (Tianjin) Co., Ltd. ("KPT"), advertised and sold its Chinese drywall in the United States. The Knauf Entities are named defendants in numerous cases consolidated with the MDL litigation and litigation in state courts.

The Knauf Entities first entered their appearance in the MDL litigation on July 2, 2009. Thereafter, the Court presided over a bellwether trial in *Hernandez v. Knauf Gips KG*, Case No. 09-6050, involving a homeowner's claims against KPT for defective drywall. The Court found in

favor of the plaintiff family in *Hernandez*, issued a detailed Findings of Fact and Conclusions of Law, and entered a Judgment in the amount of $164,049.64, including remediation damages in the amount of $136,940.46—which represented a remediation cost of $81.13 per square foot based on the footprint square footage of the house.

Subsequently, the Knauf Entities agreed to institute a pilot remediation program utilizing the remediation protocol formulated by the Court from the evidence in *Hernandez*. The Knauf pilot remediation program is now completed and has remediated more than 2,200 homes containing KPT Chinese drywall using the same general protocol. At the Court's urging, the parties began working together to monetize this program and make it available to a broader class of plaintiffs.

On December 20, 2011, the Knauf Entities and the PSC entered into a global, class Settlement Agreement ("Knauf Settlement Agreement"), which was designed to resolve all Knauf-related, Chinese drywall claims. In addition to the Knauf Settlement Agreement and after a jury trial in a bellwether case, numerous defendants in the chain-of-commerce with the Knauf Entities have entered into class settlement agreements, the effect of which settles almost all of the Knauf Entities' chain-of-commerce litigation. The total amount of the Knauf Settlement is approximately $1.1 billion.

### B. The Bennett Class Action

The instant matter is a class action filed on November 13, 2014 by Elizabeth Bennett in the Northern District of Alabama. Ms. Bennet raised claim on her own behalf and on the behalf of a nationwide class of similarly situated homeowners who allegedly suffered damages due to the presence of defective Chinese drywall in their homes. The plaintiffs raised claims against the Knauf entities for negligence, negligence per se, strict liability, breach of express and/or implied

warranty, redhibition, violations of the Louisiana Products Liability Act, private nuisance, negligent discharge of a corrosive substance, unjust enrichment, violations of consumer protection laws, and equitable and injunctive relief and medical monitoring with respect to the alleged manufacture of defective Chinese drywall. In January 2015, the Judicial Panel on Multidistrict Litigation transferred the case to the Eastern District of Louisiana and consolidated it with the *In re Chinese Manufactured Drywall Liability Litigation*, MLD 09-2047, currently pending before this Court. Discovery proceed with this batch regarding the nature and basis of the individual claims.

## II. PENDING MOTION

After discovery was well underway, the Knauf Defendants began to file dispositive motions targeting the claims of several individual plaintiffs, including Ms. Locke-Esberry. Ms. Locke-Esberry's claims arise out of the alleged presence of Chinese drywall in her property located at 962 SW Haas Avenue, Port St. Lucie, Florida 34953. Despite owning property in Florida, Ms. Locke-Esberry lives in Silver Springs, Maryland.

On November 25, 2019, Defendants filed a motion to dismiss Ms. Locke-Esberry's claim under Rule 37 or, alternatively, sanctions, because Ms. Locke-Esberry had allegedly failed to facilitate the inspection of the property on two occasions and had frustrated attempts to take her deposition. R. Doc. 22375. In particular, Defendants explained that a property inspection was originally scheduled for June 19, 2019, but "at the confirmed time . . . Locke-Esberry was not present to provide access to the Property, nor was a representative on her behalf available." R. Doc. 22375-1 at 4. The inspection was rescheduled for July 24, 2019, but Plaintiff's counsel cancelled the inspection on July 23, 2019. R. Doc. 22375-1 at 4. Defendants further explained that they have been unable to successfully depose Ms. Locke-Esberry. A deposition originally

4

scheduled for August 5, 2019 was cancelled by Plaintiff's counsel before it began, and during a second deposition in Maryland on September 5, 2019, Ms. Locke-Esberry forgot her reading glasses and was unable to review any documents. R. Doc. 22375-1 at 5. The deposition was accordingly aborted. No further inspections or depositions have been scheduled and the Defendants filed a motion to dismiss the claim.

The Court heard oral argument on the motion on January 22, 2020 and took the matter under advisement. R. Doc. 22524. On March 10, 2020, the Court issued an Order and Reasons granting Defendants' motion in part over Ms. Locke-Esberry's objection. R. Doc. 22624. Specifically, the Court declined to dismiss the case entirely but ordered the parties to schedule another property inspection and deposition within one months of the Order's issuance at Plaintiff's cost. R. Doc. 22624 at 7–8.

Defendants filed the instant reurged motion on April 13, 2020. R. Doc. 22707. Defendants argue that dismissal is now appropriate because a month has passed since the Court's previous Order was entered and Ms. Locke-Esberry has to date failed to organize the deposition and inspection as ordered by the Court or even respond to Defendants' emails regarding the matter. R. Doc. 22707-1 at 6. Defendants characterize Ms. Locke-Esberry's behavior as willful and argue that dismissal is "not excessive under the circumstances [as it will] ensure compliance with the rules, and will deter future violations by other plaintiffs in this action." R. Doc. 22707-1 at 7. Moreover, Defendants argue that Ms. Locke-Esberry's behavior has made it impossible for Defendants to learn the facts necessary to fairly defend themselves against her claims. R. Doc. 22702-1 at 7. As mentioned above, no response was filed by the Plaintiff.

5

III.  **LAW & DISCUSSION**

Rule 37 authorizes courts to sanction parties that fail to comply with a court order or otherwise adequately participate in the discovery process. Fed. R. Civ. P. 37. In the Fifth Circuit, courts must consider whether the sanction furthers Rule 37's important goal of punishing misbehaving parties and deterring similar conduct in the future. *Chilcutt v. United States*, 4 F.3d 1313, 1321 (5th Cir. 1993). Sanctions available to the Court include the dismissal of the action, in whole or in part. Fed. R. Civ. P. 37(b)(2)(a). Additionally, Rule 41 permits a court, upon a defendant's motion, to dismiss an action or claim "[i]f the plaintiff fails to prosecute or comply with these rules or a court order." Fed. R. Civ. P. 41(b). However, dismissal is a particularly harsh sanction "only to be applied in extreme circumstances." *Batson v. Neal Spelce Assocs., Inc.*, 765 F.2d 511, 515 (5th Cir. 1985). Accordingly, dismissal is appropriate only where the record clearly reflects delay or contumacious conduct resulting from willfulness or bad faith, but not when the neglect is attributable to the attorney, rather than the plaintiff himself, or when a less dramatic sanction would produce the desired deterrent effect. *United States v. $49,000 Currency*, 330 F.3d 371, 376 (5th Cir. 2003). In considering whether dismissal is appropriate, courts may also consider "the degree of actual prejudice to the defendant." *Rogers v. Kroger Co.*, 669 F.2d 317, 320 (5th Cir. 1982).

The Court concludes that the circumstances here warrant dismissal with prejudice. Ms. Locke-Esberry's multiple failures to allow her property to be inspected and her deposition to successfully take place have significantly frustrated Defendants' ability to learn the facts necessary to defend the case. Although the Court was willing to excuse this behavior and allow Ms. Locke-Esberry another opportunity to partake in discovery, she has subsequently ignored communications from Defendants seeking to arrange an inspection and deposition. R. Docs.

6

22707-2, 22707-3. In doing so, she has directly ignored an order from this Court instructing the parties to arrange alternative inspection and deposition dates by April 10, 2020. Further, Ms. Locke-Esberry failed to timely file an opposition to Defendants' motion seeing dismissal of her claims. Nothing about her actions suggest that a further extension of time to facilitate the necessary discovery would produce a different result, and even if the Court were to do so, it would risk delaying the resolution of the other claims remaining in this litigation, which have been active for six years and are poised to be remanded. Having already attempted to resolve the issue by imposing other sanctions, the Court now concludes that dismissal with prejudice is the only sanction reasonably likely to achieve the desired deterrent effect of Rule 37.

### V. CONCLUSION

Considering the foregoing,

**IT IS ORDERED** that Defendants' Reurged Motion for Dismiss Claims Asserted by Vashti Alethia Locke-Esberry Under Rule 37, R. Doc. 22707, is **GRANTED**, and Plaintiff's action is **DISMISSED WITH PREJUDICE**.

New Orleans, Louisiana this 29th day of April, 2020.

_____
Eldon E. Fallon
United States District Judge
