# Exhibit D

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL NO. 2047 <br><br> SECTION: L |
| THIS DOCUMENT RELATES TO: <br><br> *Elizabeth Bennett, et al. v. Knauf Gips, KG, et al.* <br> **2:14-cv-02722-EEF-JCW** | JUDGE ELDON FALLON <br><br> MAG. JUDGE WILKINSON |

## PLAINTIFF FACT SHEET

Name of Plaintiff: Edward J. Laremore

Affected Property Address: 7018 Pilgrim Court, Labelle, FL  33935

## I.  Purchase, Sale and/or Transfer of Ownership of Property

1.  On what date did you purchase the Property?

**Response**:  Plaintiff objects to this question as duplicative.  In addition, Plaintiff objects to this question on the ground that it seeks information in the possession of, known to, or otherwise equally available to the defendants.  Plaintiff has previously provided this information to defendants in the Bennett Supplemental Plaintiff Profile Form ("SPPF").  Plaintiff directs the defendants to Section II of the SPPF. Without waiving said objection, Plaintiff adopts the SPPF response again here and intends to provide the exact same date as provided in the verified SPPF as follows: Plaintiff purchased the property:

(Month/Day/Year)        10  /  07  /  2005

2.  When you took ownership of the Property, what was the name of the seller?

Robert Charles, LLC

1

3.  Name and address of the realtor?

N/A

4.  Name and address of the closing agent?

Patriot Title Services, LLC, 825 E. Cowboy Way, Labelle, FL  33935

5.  What was the price of the home when you purchased it?   $ 192,295.00

6.  Was it an "as-is" sale?

**Response**:  Plaintiff objects to the use of "as-is" in this question as vague, ambiguous, uncertain, and unintelligible; consequently, Plaintiff cannot determine the exact nature of the information being sought.  This term is not defined and is not commonly understood with one accepted meaning; multiple inpretations are possible.  Without waiving said objection, plaintiff responds as follows:

☑ Yes    ☐ No    ☐ I'm not sure.

7.  If you sold or transferred ownership of the Property, what was the name of the purchaser?

N/A

8.  If you sold or transferred ownership of the Property, what was the name and address of the realtor?

N/A

9.  If you sold or transferred ownership of the Property, what was the name and address of closing agent?

N/A

10.  If you sold or transferred ownership of the Property, what was the price paid for home?
          $ N/A

## II.  Appraisal of the Home

11.  Date of each appraisal:

a. __09__ / __11__ /20__07__

b. _____/_____/20_____

2

**PFS REQUEST FOR DOCUMENT PRODUCTION #1**: Please produce copies of any and all appraisals performed on the house both prior and subsequent to the occurrence of any of the events alleneged in the petition.

>**Response**: All documents in Plaintiff's possession responsive to this request are attached as "Exhibit 1."

## III.  Discovery of Drywall

12.  Date that the property was constructed and/or renovated that installed the allegedly defective Chinese Drywall.

**Response**: Plaintiff objects to this question as duplicative. In addition, Plaintiff objects to this question on the ground that it seeks information in the possession of, known to, or otherwise equally available to the defendants. Plaintiff has previously provided this information to defendants in the Bennett Supplemental Plaintiff Profile Form ("SPPF"). Plaintiff directs the defendants to  Section II of the SPPF. Without waiving said objection, Plaintiff adopts the SPPF response again here and intends to provide the exact same date as provided in the verified SPPF as follows: The property construction and/or renovation that installed the allegedly defective drywall occurred on or about the following date (to the best of my knowledge):

>(Month/Day/Year)          ____/____/20_05-06_

**PFS REQUEST FOR DOCUMENT PRODUCTION #2**: Please produce all documents, reports, photographs, videotapes, samples and any other materials which evidence and/or identify that there is defective Chinese Drywall in the Property.

>**Response**: All documents in Plaintiff's possession responsive to this request are attached as "Exhibit 2."

## IV.  Manufacturer/Seller of Drywall

13.  Who sold or distributed the drywall in the house?

**Response**: Plaintiff objects to this question as duplicative. In addition, Plaintiff objects to this question on the ground that it seeks information in the possession of, known to, or otherwise equally available to the defendants. Plaintiff has previously provided this information to defendants in the Plaintiff Profile Form ("PPF"). Plaintiff directs the defendants to  Section X of the PPF. Without waiving said objection, Plaintiff adopts the PPF response again here and intends to provide the exact same information as provided in the verified PPF as follows:   The drywall Supplier's name (to the best of my knowledge) is:

I don't know.

**PFS REQUEST FOR DOCUMENT PRODUCTION #3**: Please produce all documents, reports, photographs, videotapes, samples and any other materials which evidence and/or identify the manufacturer of drywall installed in the house. The submission must be in the form of PTO 1(B).

> **Response**: All documents in Plaintiff's possession responsive to this request are attached as "Exhibit 3."

## V.  Damages

14.  Identify any harm, financial or otherwise, that you contend was caused by defective Chinese Drywall installed in the Property.

**Response**:  Plaintiff directs the defendants to review the complaint filed with the court in this case for a full listing of the claims being asserted and the damages being sought.  The defective Knauf Chinese Drywall emitted gasses that cause damage to Plaintiff's home and the personal property contained therein.  It also significantly diminished the use and enjoyment of the home; therefore, Plaintiff seeks the following:  all compensatory, statutory, and/or punitive damages; all pre-judgment and post-judgment interest as allowed by law; any appropriate injunctive relief; an award of attorney's fees as allowed by law; an award of taxable costs; and, any and all such further relief as a jury or judge presiding over my trial deems just and proper.  Other damages include, but are not limited to:

Unable to sell the home, unable to rent the home either.  Financial burden of paying for

two houses, but can only live in one.

15.  If you contend that you entered personal bankruptcy as a result of damage to your property from defective Chinese Drywall, please describe the facts and circumstances that relate to your claim.

N/A

16.  If you contend that you entered short sale and/or foreclosure as a result of damage to your property from defective Chinese Drywall, please describe the facts and circumstances that relate to your claim.

N/A

**PFS REQUEST FOR DOCUMENT PRODUCTION #4**: If you claim loss of income, please produce any copies of any and all documentation upon which you intend to rely upon to prove this claim.

> **Response**: All documents in Plaintiff's possession responsive to this request are attached as "Exhibit 4."

17.  If you claim diminution of the property as a result of Chinese Drywall, state with particularity each fact which supports your claim.

N/A _____

_____

_____

_____

18.  Identify the appliances, fixtures and/or other electronics, if any, that you claim were damaged by Chinese Drywall in the property.

> **Response**: An list of damaged items is attached as "Exhibit 14."

19.  If you vacated the property because of the alleged presence of Chinese Drywall, please provide:  Address of each location you stayed thereafter.

a. N/A _____

b. _____

c. _____

20.  If you vacated the property because of the alleged presence of Chinese Drywall, please provide:  Time periods in which you resided at each property.

a. N/A __/_____/20_____   to   _____/_____/20_____

b. _____/_____/20_____   to   _____/_____/20_____

c. _____/_____/20_____   to   _____/_____/20_____

21.  If you vacated the property because of the alleged presence of Chinese Drywall, please provide:  Moving costs and/or alternative living expenses you claim to have incurred as a result of the alleged presence of Chinese Drywall.

a. $ N/A _____

b. $ _____

c. $ _____

**PFS REQUEST FOR DOCUMENT PRODUCTION #5**:  If you vacated the property because of the alleged presence of Chinese Drywall, please provide any documentation to support your claims.

> **Response**:  All documents in Plaintiff's possession responsive to this request are attached as "Exhibit 5."

22.  Are you claiming damages for personal injury? ☐ Yes (explain below) ☑ No

_____

_____

23.  If you suffered personal injuries as a result of the alleged presence of Chinese Drywall:  Date you allege that you first sustained personal injuries as a result of your exposure to allegedly defective Chinese Drywall.

> **Response**:    ☑ N/A

24.  If you suffered personal injuries as a result of the alleged presence of Chinese Drywall:  What specific injuries have you suffered?

> **Response**:    ☑ N/A

25.  If you suffered personal injuries as a result of the alleged presence of Chinese Drywall:  Name and address of any doctor, physician, surgeon, chiropractor, or osteopath who examined and/or treated your alleged injuries.

> **Response**:    ☑ N/A

## VI.  Potential Witnesses/Evidence

26.  Has any written or recorded statement been taken from any witness or person who has knowledge of relevant facts, including the nature, character, and extent of the injuries referred to in the petition, and for each statement identified?

☐ Yes   ☑ No   ☐ I don't know

27.  If the answer to 26 is "yes," please state:  The name, address, and telephone number of the person from whom the statement was taken.

N/A _____

_____

6

28.  If the answer to 26 is "yes," please state:  The name, address, and telephone number of the person who took the statement.

N/A
_____

_____

29.  If the answer to 26 is "yes," please state:  The name address, and telephone number of the party having custody of such statement.

N/A
_____

_____

30.  If the answer to 26 is "yes," please state:  The date the statement was taken.

N/A
_____

_____

## VII.  Already Remediated Properties

31.  If you already remediated the Property, who conducted the remediation?

    **Response:**   [✓] N/A

32.  When did the remediation commencement date occur?

    **Response:**   [✓] N/A

33.  When did the remediation end date occur?

    **Response:**   [✓] N/A

34.  What was the scope of the remediation and the scope of the work carried out?

    **Response:**   [✓] N/A

35.  What costs or expenses, if any, did you incur related to the remediation of the Property?

    **Response:**   [✓] N/A

36.  Were any samples from the remediation retained?

   **Response:**   ☑ N/A

37.  If the response to 36 is "yes," were the samples compliant with PTO 1(B)?

   **Response:**   ☑ N/A

38.  Were any photographs taken of the allegedly defective Chinese Drywall?

   **Response:**   ☑ N/A

39.  If the response to 38 is "yes," were the photographs compliant with PTO 1(B)?

   **Response:**   ☑ N/A

**PFS REQUEST FOR DOCUMENT PRODUCTION #6**:  Please produce the following documentation concerning the remediation of the Property:  Any evidence of KPT Chinese Drywall and Non-KPT Chinese Drywall, if any, in the Property prior to remediation.

   **Response**:  All documents in Plaintiff's possession responsive to this request are attached as "Exhibit 6."

**PFS REQUEST FOR DOCUMENT PRODUCTION #7**:  Please produce the following documentation concerning the remediation of the Property:  Interior photographs of the Affected Property immediately prior to the commencement of, and following completion of, the remediation, including photographs and/or video images of the flooring and major components such as cabinets, moldings, doors, intercom systems, and fixtures for every room and bathroom and, to the extent possible, security systems, appliances and audio such as surround sound.

** The photographs do not need to be pictures taken specifically for the litigation. For example, family photographs or photographs taken for purposes of refinancing a mortgage are acceptable in the absence of other photographs.

   **Response**:  All documents in Plaintiff's possession responsive to this request are attached as "Exhibit 7."

**PFS REQUEST FOR DOCUMENT PRODUCTION #8**:  Please produce the following documentation concerning the remediation of the Property:  The remediation contract and an itemization from the contractor who performed the remediation work of the materials used during the remediation, including, but not limited to, manufacturer, model number, and quantity.

**Response**:  All documents in Plaintiff's possession responsive to this request are attached as "Exhibit 8."

**PFS REQUEST FOR DOCUMENT PRODUCTION #9**:  Please produce the following documentation concerning the remediation of the Property:  An itemized invoice from the contractor who performed the remediation work ("Itemized Invoice") showing the scope of work carried out.

**Response**:  All documents in Plaintiff's possession responsive to this request are attached as "Exhibit 9."

**PFS REQUEST FOR DOCUMENT PRODUCTION #10**:  Please produce the following documentation concerning the remediation of the Property:  Proof of payment of the Itemized Invoice and any other expenses, such as cancelled checks, credit card statements, etc.

**Response**:  All documents in Plaintiff's possession responsive to this request are attached as "Exhibit 10."

**PFS REQUEST FOR DOCUMENT PRODUCTION #11**:  Please produce the following documentation concerning the remediation of the Property:  A floor plan of the Affected Property with dimensions.

**Response**:  All documents in Plaintiff's possession responsive to this request are attached as "Exhibit 11."

**PFS REQUEST FOR DOCUMENT PRODUCTION #12**:  Please produce the following documentation concerning the remediation of the Property:  An Environmental Certificate.

**Response**:  All documents in Plaintiff's possession responsive to this request are attached as "Exhibit 12."

**PFS REQUEST FOR DOCUMENT PRODUCTION #13**:  Please produce the following documentation concerning the remediation of the Property:  An Owner Disclosure Affidavit in the form attached as Exhibit 1, which includes a certification that the materials provided comprise all of the available documentation regarding the following:  The drywall that was in the Affected Property prior to the commencement of the remediation; and, the scope, extent, and cost of the remediation.

**Response**:  All documents in Plaintiff's possession responsive to this request are attached as "Exhibit 13."

## **VERIFICATION**

I hereby verify that the responses to the Plaintiff Fact Sheet are correct to the best of my knowledge.


*Edward James Laremore*
Signature of Plaintiff

*1\21\2019*
Date


*Edward James Laremore*
Printed Name

# Exhibit 1

| Hendry County Property Appraiser | PROPERTY APPRAISAL INFORMATION 2016 | 2016-0-41000-38645 |
|---|---|---|

| PROPERTY | 41000 | R | RES | 10/25/2015 | OWNER ID: | LAREMORE EDWARD | TAX AREA: | 19 | | IMPROVEMENT VALUE | | 86,750 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|

**Legal Description**
PORT LABELLE UNIT 7 BLK 2224 LOT 11

38645 — 6250 BOHEMIAN HWY — OCCIDENTAL, CA 95465-9105

*41000*

**4 29 43 10 070 2224-011.0**   Map ID: 2-13   DBA:

**SITUS** 7018 PILGRIM CT PORT LABELLE, FL 33935

| | |
|---|---|
| LAND MARKET | + 3,500 |
| TOTAL MARKET VALUE | = 90,250 |
| AG VALUE | = |
| PRODUCTIVITY LOSS | = 0 |
| ASSESSED VALUE | = 87,250 |
| EXEMPTION VALUE | = |
| TAXABLE VALUE | = 87,250 |

ACRES: 0.3100
APPR VAL METHOD: Cost

## GENERAL

| | |
|---|---|
| UTILITIES | LAST APPR.  JW |
| TOPOGRAGPHY | LAST APPR. YR  2016 |
| ROAD ACCESS | LAST INSP. DATE  05/19/2016 |
| ZONING  RG3 | NEXT INSP. DATE |
| PRIMARY USE  0100 | # OF IMPRV  1 |
| NEXT REASON | |
| REMARKS | |

## BUILDING PERMITS

| ISSUE DT | PERMIT TYPE | PERMIT AREA | ST | PERMIT VAL |
|---|---|---|---|---|
| 04/29/2011 | RP | | I | 0 |
| 01/19/2006 | SF | | I | 192,295 |

## SALES INFORMATION

| SALE DT | PRICE | GRANTOR | DEED INFO |
|---|---|---|---|
| 10/11/2012 | 100 | COCHRAN RALPH | CR / 0854 / 1481 |
| 04/17/2008 | 100 | COCHRAN RALPH J IV IC / 0852 / 0380 | |
| 10/07/2005 | 50,000 | ROBERT CHARLES LL | QWD / 0718 / 1554 |

## SKETCH FOR IMPROVEMENT #1

FSP [Area: 148 ft²]
BAS [Area: 1556 ft²]
FOP [Area: 120 ft²]
FGR [Area: 441 ft²]

## EXEMPTIONS

## PICTURE


05 19 2016

| REGION: | | SUBD: 4294310070 (100 NBHD  400700.00 (95%)  SUBSET: | | | | IMPROVEMENT VALUATION | | LIVING AREA: 1,556 | | APPR/SQFT: 58.00 | | | SALE/SQFT: | | 0.06 B-USE: | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| L# | TYPE | DESCRIPTION | MTHD | CLASS/SUB | Quality | AREA | LF | UNIT PRICE | UNITS | BUILT | EFF YR | COND | DEPR | PHYS | ECON | FUNC | COMP | ADJ | ADJ VALUE |

| L# | TYPE | DESCRIPTION | MTHD | CLASS/SUB | Quality | AREA | LF | UNIT PRICE | UNITS | BUILT | EFF YR | COND | DEPR | PHYS | ECON | FUNC | COMP | ADJ | ADJ VALUE |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | BAS | BAS Segment | R | */* | 04 | 1,556.0 | 100 | 52.28 | 1 | 2006 | 2006 | 81,350 | 91% | 0% | 0% | 0% | 0.91 | 74,270 |
| 2 | FSP | Screen Porch, Finished | R | */* | 04 | 148.0 | 100 | 18.30 | 1 | 2006 | 2006 | 2,710 | 91% | 0% | 0% | 0% | 0.91 | 2,470 |
| 3 | FOP | Open Porch, Finished | R | */* | 04 | 120.0 | 100 | 15.68 | 1 | 2006 | 2006 | 1,880 | 91% | 0% | 0% | 0% | 0.91 | 1,720 |
| 4 | FGR | Garage, Finished | R | */* | 04 | 441.0 | 100 | 28.75 | 1 | 2006 | 2006 | 12,680 | 91% | 0% | 0% | 0% | 0.91 | 11,580 |
| 5 | PAV C | Paving Concrete | MISC | */* | 04 | 480.0 | 100 | 3.50 | 1 | 2006 | 2006 | 1,680 | 76% | 0% | 0% | 0% | 0.76 | 1,280 |
| 1 | | Single Family Residential | | | | 2,745.0 | | (E2006) Homesite: (100) | | | | 100,300 | | | | Living Area: 1,556 | | 91,320 |

| | | | | IMPROVEMENT FEATURES | | |
|---|---|---|---|---|---|---|
| DESCRIPTION | | | UNITS | CODE | | VALUE |
| RoofCovr | | | 100 | Asph./Comp. Shingles | | 0 |
| IntWall | | | 100 | Drywall | | 0 |
| FloorCov | | | 20 | Sheet Vinyl | | 0 |
| FloorCov | | | 80 | Carpet | | 0 |
| HeatFuel | | | 0 | Electric | | 0 |
| HeatType | | | 100 | Forced Air Ducted | | 0 |
| AirCond | | | 0 | Central Air | | 0 |
| Bathrooms | | | 2 | #Bathrooms | | 0 |
| Bedrooms | | | 3 | Bedrooms | | 0 |
| Ex | | | 100 | CBS,Slump or Fluted Block | | 0 |

| REGION: | | SUBD: 4294310070 (100  NBHD: 400700.00 (100%  SUBSET: | | LAND VALUATION | | IRR Wells: | Capacity: | IRR Acres: | | Oil Wells: | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| L# | DESCRIPTION | TYPE | LUSE | SOIL | CLS | TABLE | HS | METH | DIMENSIONS | UNIT PRICE | GROSS VAL | ADJ | LAND ADJ | SRC | MKT VAL |
| 1 | SINGLE FAMILY | 0109 | 0109 | | | NBHD lot | Y | LTM1 | 0.3100 AC | 3,500.00 | 3,500 | 1.00 | 1.00 | A | 3,500 |
| | Land Total : | 3,500 | | | | | | | 0.3100 | | | | | | 3,500 |

| | | PRODUCTIVITY VALUATION | | | |
|---|---|---|---|---|---|
| AG | AG USE | AG TABLE | AG UNIT PRC | | AG VALUE |
| N | | | 0.00 | | 0 |
| | | | | | 0 |

# Exhibit 2

# Exhibit 3



**Property Inspection Services**
**9990 Coconut Road**
**Bonita Springs, FL  34135**
**Office:  (239) 368-1588**
**Email:  nspekt1@comcast.net**
**Web:  www.propertyinspect.net**
**Inspected by Donald Uken #HI9400**

# Home Inspection Report
# Prepared For



# 7018 Pilgrim Court
# Labelle  FL  33935
# 7/19/17

# Property Inspection Services

7018 Pilgrim Court

## Summary

### Attic

1. Misc Items: Drywall located in attic near master bed has China printed on the back of paper.  The extent of how many boards located in home is undermined.  Multiple drywall boards located near attic accesses were not defective.

  

### HVAC

2. AH Overall Operation: Aluminum coils in air handler, no evidence of effects from defective drywall.



### Electrical

3. Service to Panel: No specific signs of defective drywall noted in electrical panel.  Looking for dark copper wires that are sooty.



4. Misc: Several interior wall outlets have been removed and one indicator was noted, black soot on copper ground wires.  Light fixture in guest bathroom was observed with excessive rust.  Another possible indicator of faulty drywall.

  

# Property Inspection Services

## Electrical (Continued)

Misc: (continued)

  

### Kitchen

5.  Under Sink Inspection: Copper fixtures/fittings become black when exposed to two things, sulfur water and faulty drywall.  Inconclusive based upon water filtration system is not being utilized.



### Interior

6.  Misc Items: House contained a distinctive smell of "burnt match" that highly suggests defective drywall was installed.

# Property Inspection Services

## Definitions

NOTE: All definitions listed below refer to the property or item listed as inspected on this report at the time of inspection

| | | |
|---|---|---|
| A | Acceptable | Functional with no obvious signs of defect. |
| NP | Not Present | Item not present or not found. |
| NI | Not Inspected | Item was unable to be inspected for safety reasons or due to lack of power, inaccessible, or disconnected at time of inspection. |
| M | Marginal | Item is not fully functional and requires repair or servicing. |
| D | Defective | Item needs immediate repair or replacement. It is unable to perform its intended function. |

## Company Information

**Inspector Name**  Jeffrey Wenzel
**Company Name**  Property Inspection Services

## Attic

A NP NI M  D

Describe Access:
Insulation Type/R-Value:
☒☐☐☐☐ Ventilation:
☒☐☐☐☐ HVAC Ducts:
☒☐☐☐☐ Roof Framing:
☒☐☐☐☐ Sheathing:
☒☐☐☐☐ Insulation:
☒☐☐☐☐ Wire/Lighting:
☒☐☐☐☐ Water Pipes:
☐☐☐☐☒ Misc Items: Drywall located in attic near master bed has China printed on the back of paper.  The extent of how many boards located in home is undermined.  Multiple drywall boards located near attic accesses were not defective.



# Property Inspection Services

7018 Pilgrim Court

## HVAC

A NP NI M  D

☒☐☐☐☐ **Thermostat(s) Operation:**
☒☐☐☐☐ **HVAC Cool Ok:**
☒☐☐☐☐ **HVAC Heat Ok:**
☒☐☐☐☐ **HVAC Temp Difference:**
**AH Brand/Type:**
**AH Location(s):**
**AH Model/Serial Label:**
**Approx Age:**
☐☐☐☐☒ **AH Overall Operation: Aluminum coils in air handler, no evidence of effects from defective drywall.**



☒☐☐☐☐ **AH Noise:**
☒☐☐☐☐ **AH Filter(s):**
☒☐☐☐☐ **AH Coil/Copper:**
☒☐☐☐☐ **AH Plenum/Stand/Return Box:**
☒☐☐☐☐ **AH Drain/Pan/Float Switch:**
☒☐☐☐☐ **AH Misc:**
**COND Brand/Type:**
**COND Location(s):**
**COND Model/Serial Label:**
**Approx Age:**
☒☐☐☐☐ **COND Overall Operation:**
☒☐☐☐☐ **COND Noise:**
☒☐☐☐☐ **COND Misc:**

## Electrical

A NP NI M  D

**Service Amps:**
**Volts:**
☐☐☐☐☒ **Service to Panel: No specific signs of defective drywall noted in electrical panel.  Looking for dark copper wires that are sooty.**

# Property Inspection Services

## Electrical (Continued)

**Service to Panel: (continued)**



☒ ☐ ☐ ☐ ☐  **Panel to Structure:**

**Panel Location:**

**Panel Brand:**

☒ ☐ ☐ ☐ ☐  **Overall Condition:**

☒ ☐ ☐ ☐ ☐  **Breakers:**

☒ ☐ ☐ ☐ ☐  **GFCI:**

☒ ☐ ☐ ☐ ☐  **Panel Cover:**

☒ ☐ ☐ ☐ ☐  **Breaker Config:**

☒ ☐ ☐ ☐ ☐  **Wire-Over Current Capabilities:**

☒ ☐ ☐ ☐ ☐  **Proper Receptacle Grounding:**

☒ ☐ ☐ ☐ ☐  **Improper Wire Splices:**

☐ ☐ ☐ ☐ ☒  **Misc:** Several interior wall outlets have been removed and one indicator was noted, black soot on copper ground wires.  Light fixture in guest bathroom was observed with excessive rust.  Another possible indicator of faulty drywall.



# Property Inspection Services

## Kitchen

A NP NI M  D

☒☐☐☐☐ **Floor Covering:**
☐☐☐☐☒ **Under Sink Inspection:** Copper fixtures/fittings become black when exposed to two things, sulfur water and faulty drywall.  Inconclusive based upon water filtration system is not being utilized.



☒☐☐☐☐ **Drains Appear Clear:**
☒☐☐☐☐ **Stove Exhaust Fan:**
☒☐☐☐☐ **Stove Exhaust Filter:**
☒☐☐☐☐ **Stove / Electric:**
☒☐☐☐☐ **Stove Controls:**
☒☐☐☐☐ **Microwave Operational:**
☒☐☐☐☐ **Oven Operational:**
☒☐☐☐☐ **Counter Tops:**
☒☐☐☐☐ **Disposal:**
☒☐☐☐☐ **Drawers/Doors:**
☒☐☐☐☐ **Dishwasher:**
☒☐☐☐☐ **Refrigerator:**
☒☐☐☐☐ **Refrigerator Water:**
☒☐☐☐☐ **Refrigerator Ice Maker:**
☒☐☐☐☐ **Freezer Temp:**
☒☐☐☐☐ **Plumbing Fixture:**

## Interior

A NP NI M  D

☒☐☐☐☐ **Doors:**
☒☐☐☐☐ **Lighting/Fans:**
☒☐☐☐☐ **Walls / Ceilings:**

☐☐☐☐☒ **Misc Items:** House contained a distinctive smell of "burnt match" that highly suggests defective drywall was installed.

# Property Inspection Services

## Final Comments

Our inspection only consisted of looking for evidence of defective drywall, a full home inspection was not performed.  The evidence we found only concludes that some of the drywall boards are defective.  We cannot conclusively determine how many are defective.  Recommend further evaluation by a licensed environmental company that specializes in xray equipment that can determine the full extent of defective drywall.

# Exhibit 14

# Plaintiff Fact Sheet

Plaintiff:  Edward Laremore

Property Address: 7018 Pilgrim Court, Labelle, FL  33935

## Question #18 Itemization (Personal Property Damage)

| # | Description of Damaged Item | Value ($) |
|---|---|---|
| 1 | Property management fee | 420 |
| 2 | Drywall inspection cost | 150 |
| 3 | Thermostat | 171 |
| 4 | Refrigerator repair | 125 |
| 5 | Microwave | 210 |
| 6 | Thermostate | 150 |
| 7 | Dishwasher | 426 |
| 8 | Thermostat | 125 |
| 9 | Garbage disposal | 85 |
| 10 | A/C repair – coil | 325 |
| 11 | Dishwasher | 267 |
| 12 | | |
| 13 | | |
| 14 | | |
| 15 | | |
| 16 | | |

| 17 | | |
|----|--|--|
| 18 | | |
| 19 | | |
| 20 | | |
| 21 | | |
| 22 | | |
| 23 | | |
| 24 | | |
| 25 | | |
| 26 | | |
| 27 | | |
| 28 | | |
| 29 | | |
| 30 | | |
| 31 | | |
| 32 | | |
| 33 | | |
| 34 | | |
| 35 | | |

Total:  $ 2,454.00

# Item #1

**FLORIDA DEPARTMENT OF REVENUE**
RETURN FOR TRANSFERS OF INTEREST IN REAL PROPERTY  PROPERTY APPRAISER  DR-219
(PLEASE READ INSTRUCTIONS BEFORE COMPLETING)  iNET  R. 07/98

FDOR10240300

Use black ink. Enter numbers as shown below.  |  If typing, enter numbers as shown below.
`0 1 2 3 4 5 6 7 8 9`  |  `0123456789`

1. Parcel Identification Number (If Parcel ID not available please call County Property Appraiser's Office) → `4 2 9 4 3 1 0 0 7 0 2 2 2 4 0 1 1 . 0`

2. Mark (x) all that apply  — Multi-parcel transaction? → □  — Transaction is a split or cutout from another parcel? → □  — Property was improved with building(s) at time of sale/transfer? → [X]

3. Grantor (Seller): COCHRAN       RALPH       J       IV
   Last / First / MI / Corporate Name (if applicable)
   213 UNION AVE       Stratton       NJ   08084   (88 )516-1848
   Mailing Address / City / State / Zip Code / Phone No.

4. Grantee (Buyer): LAREMORE       EDWARD       J.
   Last / First / MI / Corporate Name (if applicable)
   908 SHORT LN       SEAFORD       DE   19973   (302) 629-4969
   Mailing Address / City / State / Zip Code / Phone No.

5. Date of Sale/Transfer  `0 4 / 1 7 / 2 0 0 8`   Sale/Transfer Price  $ `_ _ _ _ _ _ 1 0 . 0 0`  Property Located In County **36**
   Month / Day / Year   (Round to the nearest dollar.)

6. Type of Document  □ Warranty Deed  □ Contract/Agreement for Deed  [X] Quit Claim Deed  □ Other

7. Are any mortgages on the property? If "Yes", outstanding mortgage balance:  YES [X] / □ NO
   (Round to the nearest dollar.) $ `_ _ 1 7 7 8 7 6 . 0 0`

8. To the best of your knowledge, were there unusual circumstances or conditions to the sale/transfer such as: Forced sale by court order? Foreclosure pending? Distress Sale? Title defects? Corrective Deed? Mineral rights? Sale of a partial or undivided interest? Related to seller by blood or marriage?  YES □ / [X] NO

9. Was the sale/transfer financed? YES □ / [X] NO  If "Yes", please indicate type or types of financing:
   Conventional □   Seller Provided □   Agreement or Contract for Deed □   Other □

10. Property Type: Mark (x) all that apply  Residential [X]   Commercial □   Industrial □   Agricultural □   Institutional/Miscellaneous □   Government □   Vacant □   Acreage □   Timeshare □

11. To the best of your knowledge, was personal property included in the sale/transfer? If "Yes", please state the amount attributable to the personal property. (Round to the nearest dollar.)  YES □ / [X] NO  $ `_ _ _ _ _ _ _ . 0 0`  Cents

12. Amount of Documentary Stamp Tax  $ `_ _ _ _ _ 1 2 5 5 . 0 0`

13. If no tax is due in number 12, is deed exempt from Documentary Stamp Tax under s. 201.02(6), Florida Statutes?  YES □ / □ NO

Under penalties of perjury, I declare that I have read the foregoing return and that the facts stated in it are true. If prepared by someone other than the taxpayer, his/her declaration is based on all information of which he/her has any knowledge.

Signature of Grantor or Grantee or Agent  _Edward J. Laremore_       Date  2\28\08

WARNING: FAILURE TO FILE THIS RETURN OR ALTERNATIVE FORM APPROVED BY THE DEPARTMENT OF REVENUE SHALL RESULT IN A PENALTY OF $25.00 IN ADDITION TO ANY OTHER PENALTY IMPOSED BY THE REVENUE LAW OF FLORIDA.

| To be completed by the Clerk of the Circuit Court's Office | Clerks Date Stamp |
|---|---|
| **This copy to Property Appraiser** | |

O. R. Book and Page Number and File Number  □□□□ □□□□ □□□□□□

Date Recorded  ___/___/___
Month / Day / Year

**This copy to Property Appraiser**

**QUITCLAIM DEED**

*Left over lot down*
*Previous Sen*
*Book & page*
*Book 718*
*Pg 1554*
*Goorg*

(Space above this line reserved for recording office use only)

**THIS QUITCLAIM DEED**, made on this date of April 17th 2008 , between
Ralph J Cochran IV , ("Grantors"),
of _____ County, State of _____ and
EDWARD J LAREMORE , (Grantees"),
of SUSSEX County, State of DELAWARE.

WITNESSETH, that Grantors, for and in consideration of the sum of $10.00, and other good and valuable
consideration in hand paid by Grantees, the receipt of which is acknowledged, quitclaim to Grantees and Grantees'
heirs, executors, administrators, and assigns forever all of the right, title, and interest of Grantor in the following
described land situated in HENDRY County, Florida:

Legal Description:   7018 PILGRIM COURT
LABELLE FLA. 33935
(LOT #11 - BLOCK 2224 and buildings &
improvements there on of Labelle Fla
of Hendry County) Port Labelle Unit 7

*Clerk's website*
*use humy clerk.org*
*& office.com*
*pic.*
*Clerk*
*copy from*
*Labell*

Physical Address:   7018 PILGRIM COURT LABELLE FLA. 33935

Property Appraiser's Parcel I.D. No.   4-29-43-10-070-2224-011.0

**SELLER(S):**                                    **WITNESSES:**

_Ralph C_____
Signature                                        Name: _____
Printed Name: RALPH Cochran                      Address: 201st Echelon Mall
Date: April 17th, 2008
                                                 Name: Dorothy _____
                                                 Address: Clementon N.J.

_Gary P. Grady_  4-17-08

Page 1 of 2

Inst:201228007088 Date:9/4/2012 Time:10:15 AM
Doc Stamp-Deed:0.7000
_____DC,Barbara S. Butler,Hendry County Page 2 of 2 B:852 P:381

(Space above this line reserved for recording office use only)

SELLERS(S):                              WITNESSES:

Signature
Printed Name: Ralph Cahran          Name: _____
Date: 4/17/08                       Address: 1915 Echelon Mall

                                    Name: _____
                                    Address: Clementon N.J.

                    New Jersey
STATE OF ~~FLORIDA~~
COUNTY OF Camden

The foregoing instrument was acknowledged before me on this date: April 17, 2008 by
RALPH COCHRAN , who is/are known to
me or produced the following DRIVERS LICENSE as identification.

Notary Public -- State of ~~Florida~~ New Jersey
Printed Name: Daryl P. Coppard
(Seal)

DARYL P. COPPAD~~~
NOTARY PUBLIC OF NEW JERSEY
Commission Expires 1/9/20~~

Page 2 of 2

# Item #2

Doyle Law Firm,

**Item #2:**

The list of personal property damage due to Chinese drywall found in 7018 Pilgrim Court, Labelle, FL. is on the Plaintiff Fact Sheet attached to this document. The documentation and receipts for each of these losses are not attached because they were sent with earlier documents and should be in my file. I wanted to send this information, at the risk of being redundant, to ensure you had all the information you need. The total damages incurred for Question #18 was $1884.

I also included another list of financial damages I incurred due to the Chinese drywall discovery in my home. I do not know if they were to be listed at another section or under Question #18. I included them here in case they were required. I sent this same information to you earlier along with the receipts and documentation. I reworked some of the numbers due to your clarification of Question #18. I also saw a few errors due to some expenses were not annual expenses, but one-time expenses. This sheet total is more accurate concerning the annual losses due to the Chinese drywall. Please include these numbers in the appropriate places when you total the damages incurred.

Thank you.

Ed Laremore

# Plaintiff Fact Sheet

Plaintiff: _Edward James Laremore_

Property Address: _7018 Pilgrim Court LaBelle, FL._

## Question #18 Itemization (Personal Property Damage)

*The following items are the ones listed last on the previous sheet. They were 'ONE TIME' expenses needing to be recovered.

| # | Description of Damaged Item | Value ($) |
|---|---|---|
| 1 | THERMOSTAT - replaced 4\2017 (Ex. D#2) | $171 |
| 2 | REFRIDGE REPAIR 10\2009 (Exib E #2) | $125 |
| 3 | MICROWAVE OVEN 2\2011 (Exibit F #2) | $210 |
| 4 | THERMOSTAT-REPLACED 4\2011 (Exibit F #2) | $150 |
| 5 | DISHWASHER REPLACED 1\2012 (Exhibit G#2) | $426 |
| 6 | THERMOSTAT -REPLACED 5\2010 (Exhibit G #2) | $125 |
| 7 | GARBAGE DISPOSAL 6\2010 (Exhibit G#2) | $85 |
| 8 | A.C. EVAPORATOR COIL 7\2012 (Exhibit G#2) | $325 |
| 9 | DISHWASHER REPAIR 11\2011 (Exhibit G#2) | $267 |
| 10 | ~~DRYWALL *~~ | |
| 11 | | |
| 12 | | |
| 13 | | |
| 14 | | |
| 15 | | |
| 16 | | |

TOTAL $1884

*NOTE: ALL EXHIBITS LISTED SHOULD BE IN MY FILE IN YOUR POSSESSION.

# The Loss on 7018 Pilgrim Court Due to Chinese Drywall

## Note of explanation:

My property, 7018 Pilgrim Court, Labell FL. had a renter in the property at $800 per month until May 31, 2017. The renter moved out because I was about to close on the sale of the house. The property had been up for sale only about 6-8 weeks. I had the property for sale at $150,000 and had 2 full price offers. I chose Lennox Lett's offer. ( Lennox Lett's offer, Exhibit E). The renters moved out in anticipation of the closing. Lett's financing fell through (not due to the property) two days before closing. I had a $140K cash offer the next day. I was in the middle of negotiating with the potential cash buyers when they noticed a "rotten egg" smell. They asked if I had ever had the house tested for Chinese drywall. The property had never been tested in the 11 years I had owned it. So, I had it tested in honor of their request. As the report you have on file shows, they found Chinese drywall in the home. Once Chinese drywall was found, all renting or potential selling of the property ceased. Due to the discovery of Chinese drywall : I lost a renter, a strong potential sale of my home during a great market and have had to care for the empty home since June 2017. Because of these circumstances, here are the financial claims I am requesting to be covered:

(The following is considering the property vacant for a full year, May 2017- May 2018. Extra months **can** be added if necessary.)

1) Payment of property taxes: **$2883** per year (see Exhibit C#2)
2) Mortgage payments: $993 per month X 12= **$11,916** (see Exhibit A)
3) Rental income ...if needed: $800 per month X 12= $9600 (see Exhibit B) *(EXCLUDED FROM TOTAL!)*
4) Property management fee: $35 per month X 12=**$420** (see Exhibit C)
5) Lawn care for vacant property: $180 for 2017 plus $45 per month in 2018=**$350** ( Exhibit E)
6) Lost revenue from sale:
   a. Sale of home: $150,000- $7500 realtor fee= $142,500 (see Exhibit E)
   b. Principal owed: $116,477: $142,500- $116,477= $26,023bit  (see Exhibit E) *(not in this total)*
   c. Pay down my  %5.25 line of credit (see Exhibit E)= **$1365** per year of interest
7) Home owners insurance: **$851** (see Exhibit G)
8) Drywall Inspection cost: **$150** (see Exhibit D)
9) Utilities cost: $24 per month X12= **$504**
10) The loss of rental income from the Chinese drywall led to borrowing money from our line of credit to make up the shortfall (see Question #4: section ). The borrowing from the line was $670 a month average. The interest lost on that borrowing was= **$468** per year.

Here is my annual total: Total $18,907 Per year: Starting MAY 2016 until present...

Thank you for your consideration to these matters

Ed Lancmore

pg 1

# Item #3

Doyle Law Firm,

**Item #3:**

Item #3 asked for our HUD 1 Form and mortgage information. Here are some of the facts about my property and mortgage costs:

1) I had my home built by Kenwood Homes which has since gone out of business. My home was constructed in 2005 and completed in 2006, just before the drastic change in the real estate market during the 2007-2008 years. As you can tell from my paper work enclosed, my home cost me around $198, 000. I financed $189,000. It was during the "no-doc" loan and "100% financing" era. You can see from my paperwork, the closing costs were substantial but, the red tape was minimal.  My paper work for this early loan is located under "LOAN #1".

There were a few unique items about my first loan. 1) My home was constructed for me, so some of the paperwork shows construction cost draws. My loan began in October of 1985 to pay the expenses as Kenwood Homes built my home. Some of my paperwork displays this fact.  I also, included the Construction Loan from Kenwood Homes, as requested. 2) I recall my early loan was divided between two institutions. I cannot remember all the details or understand all the paperwork.

2) When the economic crises hit the real estate market during the 2007-2008 years, my home dropped in value along with everyone else's. My home was now worth $55-$60,000. Many were deciding to give their homes back to the bank. My wife and I did not think that was right or fair to the banks. As a result, we decided to make a couple of financial moves so we could continue to make the mortgage payments. Here are the moves we made:
   a. We paid the loan down by $50K, using money we had in savings.
   b. Next, we re-casted our loan. The cost to re-cast was around a $1000, but the new loan lowered our mortgage payment substantially. (I do not have the paperwork on this action; you just see the new mortgage we had on the property was substantially less: $130K).

3) After re-casting the loan, Obama allowed HARP loans, even for investors. I re-mortgaged, as you can see under LOAN #2. The HARP cut our payments down by about $200 a month. The closing costs were $2084 dollars. You can see the paper work under LOAN #2.

Another part of my story is I rented my house. I had my property rented for $750 a month during the first 8 years I owned the property. However, this rent never covered the mortgage payment. My early mortgage payment was $1500 a month. When I re-cast my loan, I dropped my mortgage payment to about $1200 a month. During those years, as you can see, I was losing money on the property.

When I re-mortgaged my home using the HARP loan, it helped. My loan dropped to about $1000 a month. Also, my rent went up to $800 a month. As a result, I was only losing about $200 a month. This finally made the property more manageable. This was a help, but, it only lasted 2 short years. After that time, the value of the property had rebounded, and we decided to sell the property.

Then, in May of 2016, while buyers were viewing the property, we found Chinese drywall. We lost our sale. we lost our renters.  We have had to finance the property for $1005 a month ever since.

Thanks for your attention to our story.

Ed Laremore

# Loan #1

# Uniform Residential Loan Application

This application is designed to be completed by the applicant(s) with the Lender's assistance. Applicants should complete this form as "Borrower" or "Co-Borrower," as applicable. Co-Borrower information must also be provided (and the appropriate box checked) when ☐ the income or assets of a person other than the Borrower (including the Borrower's spouse) will be used as a basis for loan qualification or ☐ the income or assets of the Borrower's spouse or other person who has community property rights pursuant to state law will not be used as a basis for loan qualification, but his or her liabilities must be considered because the spouse or other person has community property rights pursuant to applicable law and Borrower resides in a community property state, the security property is located in a community property state, or the Borrower is relying on other property located in a community property state as a basis for repayment of the loan.

If this is an application for joint credit, Borrower and Co-Borrower each agree that we intend to apply for joint credit (sign below):

*Ed Lanemore*

Borrower

Co-Borrower

## TYPE OF MORTGAGE AND TERMS OF LOAN

| Mortgage Applied for: | VA ☐   Conventional [X]   Other (explain): ☐ | | Agency Case Number | Lender Case Number |
|---|---|---|---|---|
| | FHA ☐   USDA/Rural Housing Service ☐ | | | 02505857 |

| Amount | Interest Rate | No. of Months | Amortization Type: | [X] Fixed Rate   ☐ Other (explain): |
|---|---|---|---|---|
| $ 196,000.00 | 6.250 % | 360 | | ☐ GPM   ☐ ARM (type): |

## PROPERTY INFORMATION AND PURPOSE OF LOAN

| Subject Property Address (street, city, state & ZIP) | No. of Units |
|---|---|
| 7018 Pilgrim Court, La Belle, FL  33935 | 1 |

| Legal Description of Subject Property (attach description if necessary) | Year Built |
|---|---|
| | 2007 |

| Purpose of Loan | Purchase ☐   Construction ☐   Other (explain): ☐ | Property will be: |
|---|---|---|
| | [X] Refinance   Construction-Permanent ☐ | ☐ Primary Residence   [X] Secondary Residence   ☐ Investment |

Complete this line if construction or construction-permanent loan.

| Year Lot Acquired | Original Cost | Amount Existing Liens | (a) Present Value of Lot | (b) Cost of Improvements | Total (a + b) |
|---|---|---|---|---|---|
| | $ | $ | $ | $ | $ |

Complete this line if this is a refinance loan.

| Year Acquired | Original Cost | Amount Existing Liens | Purpose of Refinance | Describe Improvements | ☐ made   ☐ to be made |
|---|---|---|---|---|---|
| 2005 | $ 0.00 | $ 189,900.00 | Ltd Cash-Out Rate/Term | | |
| | | | | Cost: $0.00 | |

| Title will be held in what Name(s)  EDWARD LAREMORE | Manner in which Title will be held | Estate will be held in: |
|---|---|---|
| | Individual | [X] Fee Simple   ☐ Leasehold (show expiration date) |

Source of Down Payment, Settlement Charges, and/or Subordinate Financing (explain)

## BORROWER INFORMATION / Co-Borrower

| Borrower's Name (include Jr. or Sr. if applicable) | Co-Borrower's Name (include Jr. or Sr. if applicable) |
|---|---|
| EDWARD  LAREMORE | |

| Social Security Number | Home Phone (incl. area code) | DOB (mm/dd/yyyy) | Yrs. School | Social Security Number | Home Phone (incl. area code) | DOB (mm/dd/yyyy) | Yrs. School |
|---|---|---|---|---|---|---|---|
| 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 | (302)629-4969 | 03/16/1956 | 18/18 | | | | |

| [X] Married   ☐ Unmarried (include single, divorced, widowed)   ☐ Separated | Dependents (not listed by Co-Borrower)  no. 0  ages | ☐ Married   ☐ Unmarried (include single, divorced, widowed)   ☐ Separated | Dependents (not listed by Borrower)  no.  ages |
|---|---|---|---|

| Present Address (street, city, state, ZIP) [X] Own  ☐ Rent  2  No. Yrs. | Present Address (street, city, state, ZIP) ☐ Own  ☐ Rent  No. Yrs. |
|---|---|
| 908 SHORT LANE  Seaford, DE 19973 | |

| Mailing Address, if different from Present Address | Mailing Address, if different from Present Address |
|---|---|

If residing at present address for less than two years, complete the following:

| Former Address (street, city, state, ZIP) ☐ Own  ☐ Rent  No. Yrs. | Former Address (street, city, state, ZIP) ☐ Own  ☐ Rent  No. Yrs. |
|---|---|

## EMPLOYMENT INFORMATION / Co-Borrower

| Name & Address of Employer  ☐ Self Employed | Yrs. on this job | Name & Address of Employer  ☐ Self Employed | Yrs. on this job |
|---|---|---|---|
| Atlanta Road CMA  Mailbox 756  Seaford, DE  19973 | 8 | | |
| | Yrs. employed in this line of work/profession  25 | | Yrs. employed in this line of work/profession |

| Position/Title/Type of Business | Business Phone (incl. area code) | Position/Title/Type of Business | Business Phone (incl. area code) |
|---|---|---|---|
| Pastor | (302)629-5600 | | |

If employed in current position for less than two years or if currently employed in more than one position, complete the following:

| Name & Address of Employer  ☐ Self Employed | Dates (from - to) | Name & Address of Employer  ☐ Self Employed | Dates (from - to) |
|---|---|---|---|
| Fellowship Alliance Chapel  199 Church Road  Medford, NJ  08055 | 01/01/1986 - 06/30/2006 | | |
| | Monthly Income  $ 5,700.00 | | Monthly Income  $ |

| Position/Title/Type of Business  Pastor | Business Phone (incl. area code)  (609)953-7333 | Position/Title/Type of Business | Business Phone (incl. area code) |
|---|---|---|---|

| Name & Address of Employer  ☐ Self Employed | Dates (from - to) | Name & Address of Employer  ☐ Self Employed | Dates (from - to) |
|---|---|---|---|
| | Monthly Income  $ | | Monthly Income  $ |

| Position/Title/Type of Business | Business Phone (incl. area code) | Position/Title/Type of Business | Business Phone (incl. area code) |
|---|---|---|---|

02505857

Freddie Mac Form 65 7/05
Fannie Mae Form 1003 7/05
Wolters Kluwer Financial Services
VMP® -21N (0907).03
Page 1 of 4                        Initials: _____



## FIRST FLORIDA
### BANK

**LETTER OF ACKNOWLEDGEMENT**

It is mutually agreed upon that the sum of $ 12,729.50 (10% - Dep), shall be disbursed to  KENWOOD HOMES the builder at closing. These funds will be used to reimburse builder for up front charges and start up costs such as but not limited to permit, impact fees, plans, survey, <u>commissions</u>,  insurance.

KENWOOD HOMES has already received a deposit in the amount of $1,500.

_<u>The first draw will be short by the total deposit received.</u>_

| | |
|---|---|
| _Edward Tenemore_ | 10\11\05 |
| Borrower | Date |
| | |
| _(signature)_ | 10/11/05 |
| Borrower | Date: |
| | |
| Contractor | Date: |

Deposit @ closing

**FIRST FLORIDA BANK**
8931 CONFERENCE DRIVE, UNIT 2
FORT MYERS, FLORIDA 33919

DATE   OCTOBER 11, 2005
PHONE:   239-466-4545
FAX:   239-466-4479

YOU ARE HERBY AUTHORIZED TO CLOSE THE MORTGAGE LOAN REFERENCED BELOW IN **STRICT COMPLIANCE** WITH THESE SPECIFIC CLOSING INSTRUCTIONS AND ALL ATTACHED ADDENDA AND OUR GENERAL LOAN CLOSING INSTRUCTIONS.

## SPECIFIC LOAN CLOSING INSTRUCTIONS

Closing Agent: **PATRIOT TITLE SERVICES**

**LABELLE, FLORIDA 33935**
Closer: **TARA TORRONE**
Closer Telephone: **863-612-0180**
Closer Fax No.: **863-612-0916**

Borrower(s): **Edward Laremore**

Property Address: **7018 Pilgrim Ct**
**LaBelle, FLORIDA 33935**
Sellers: **ROBERT CHARLES, LLC**

Loan Number: ▓▓▓▓▓
Fixed: _____ Arm: _____ Margin: _____
Caps: _____ Const. Perm _____
Type of Loan: __**CONV.**__
FHA/VA Case No.: _____
Underwriter: _____

Closing Date: __**OCTOBER 11, 2005**__
Disb. Date: __**OCTOBER 11, 2005**__
Loan Amount: $ ___**189,900.00**___
Base Loan Amount: $ _____
Contract Price: $ _____
Interest Rate: ____**9.0000**_____ %
Monthly P & I: $ _____ Term: __**12**__
First Payment: **DECEMBER 5, 2005**
Maturity Date: **OCTOBER 11, 2006**

This loan is to close in the name of FIRST FLORIDA BANK existing under the laws of the State of FLORIDA.

**EXPIRATION DATE:   OCTOBER 11, 2005**            . IF THIS LOAN DOES NOT CLOSE AND DISBURSE IN ACCORDANCE WITH THE CLOSING/EXPIRATION DATE OF THESE INSTRUCTIONS, YOU MUST CALL FFB CLOSING DEPARTMENT AT   **239-466-4545**            AND RETURN THE CLOSING PACKAGE AND DISBURSEMENT CHECK BY EXPRESS MAIL TO FFB.

MAIL-AWAY AND TO WHOM:
Mail-away package: On all loans, the HUD-1 must be reviewed prior to the mail-away. Failure to obtain FFB approval could cause a delay in issuance of audit number.

(X) THE FOLLOWING CONTINGENCIES OR CONDITIONS MUST BE MET PRIOR TO CLOSING/AT CLOSING AND CLEARED BY FFB CLOSING DEPARTMENT PERSONNEL IF SO STATED. PLEASE RETURN IN CLOSED LOAN PACKAGE:

1. BORROWER TO SIGN/DATE FINAL 1003 (IN ENCLOSED CONF ENV).
2. PLANS/SPECS/CONTRACT TO BE SIGNED BY ALL PARTIES AT CLOSING.
3. DRAW SCHEDULE TO BE SIGNED BY ALL PARTIES AT CLOSING.
4. LENDER REQUIRES TWO WITNESSES ON MORTGAGE. PROVIDE FED/STATE.
5. PHOTO ID. HUD TO BE FAXED TO LAURIE/239-449-3170 &
6. AMANDA/239-449-3176. FAX FOR FUNDING NUMBER PRIOR TO
7. DISBURSEMENT. FAX SGN HUD, NOTE, SGN PG OF MORTGAGE (PG
8. 15&16), W-9(S), SELLER S AFFIDAVIT, DRAW SCHEDULE,
9. SPECS/PLANS, BUILDERS SALES CONTRACT, COST BREAKDOWN &
10. WARRANTY DEED TO LAURIE IMMEDIATELY AFTER CLOSING. NEED ALL
11. ORIGINAL DOCUMENTS BACK INCLUDING LOT AND CONSTRUCTION HUDS.
12. _____

(X) The following riders must be attached and made a part of our mortgage/security instrument. The appropriate endorsements must also be attached to the title policy/if applicable. You are responsible to provide all endorsements necessary to meet secondary marketing/governmental requirements.

( ) PUD Endorsement and Rider if applicable, add references from Restrictive Covenants
( ) Condo Rider and Endorsement
( ) ARM Rider and Endorsement

( X) ALTA 8.1 Endorsement to Title Policy
( ) VA Transfer Rider

( ) FHA Non-occupancy Rider
(X) 1-4 Family Rider
( ) Balloon Rider and Endorsement
(X) Form 9, or other similar form per state requirements, with No Exceptions
( ) Second Home Rider
( ) Other: _____

# FEDERAL TRUTH-IN LENDING STATEMENT
## (THIS IS NEITHER A CONTRACT NOR A COMMITMENT TO LEND)

**FINAL**

Creditor: **FIRST FLORIDA BANK**
        **8931 CONFERENCE DRIVE, UNIT 2**
        **FORT MYERS, FLORIDA  33919**

        **Edward Laremore**
        **5012 Church Rd**
        **Mount Laurel, NEW JERSEY  08054**

Date: **October 11, 2005**            Loan Number: ▮▮▮▮▮▮▮

Check box if applicable:

| ANNUAL PERCENTAGE RATE | FINANCE CHARGE | Amount Financed | Total of Payments |
|---|---|---|---|
| The cost of your credit as a yearly rate | The dollar amount the credit will cost you. | The amount of credit provided to you or on your behalf. | The amount you will have paid after you have made all payments as scheduled. |
| **16.5400 % *** | $  **14,688.63 *** | $  **183,756.87** | $  **198,445.50 *** |

☐ **REQUIRED DEPOSIT:** The annual percentage rate does not take into account your required deposit.

**PAYMENTS:** Your payment schedule will be:

| Number of Payments | Amounts of Payments | When Payments Are Due | Number of Payments | Amounts of Payments | When Payments Are Due | Number of Payments | Amounts of Payments | When Payments Are Due |
|---|---|---|---|---|---|---|---|---|
| | | MONTHLY Beginning: | | | MONTHLY Beginning: | | | MONTHLY Beginning: |

**INTEREST ON THE AMOUNT OF CREDIT OUTSTANDING DURING THE CONSTRUCTION PERIOD WILL BE PAID MONTHLY, ALONG WITH ONE PAYMENT OF PRINCIPAL OF $189,900.00 DUE October 11, 2006**

☐ **DEMAND FEATURE:** This obligation has a demand feature.
☐ **VARIABLE RATE:** This loan has a Variable Rate Feature.  Variable Rate disclosures have been provided to you earlier.
11

**INSURANCE:** The following insurance is required to obtain credit:
☐ Credit Life insurance and credit disability   ☒ Property Insurance   ☐ Flood Insurance   ☐ Mortgage Insurance
You may obtain the insurance from anyone you want that is acceptable to the creditor.
☐ If you purchase   ☐ property   ☐ flood insurance from creditor you will pay $ _____ for a one year term.
**SECURITY:** You are giving a security interest in: **7018 Pilgrim Ct, LaBelle, FLORIDA  33935**
☒ The goods or property being purchased   ☐ Real property you already own
**FILING FEES:** $ **171.50**
**LATE CHARGE:** If a payment is more than   **15**   days late, you will be charged   **5.0000**   % of the principal and interest past due.

**PREPAYMENT:** If you pay off early, you
☐ may  ☒ will not      have to pay a penalty.
☐ may  ☒ will not      be entitled to a refund of part of the finance charge.
**ASSUMPTION:** Someone buying your property
☐ may  ☐ may, subject to conditions   ☒ may not      assume the remainder of your loan on the original terms.
See your contract documents for any additional information about nonpayment, default, any required repayment in full before the scheduled date and prepayment refunds and penalties.
* means an estimate   ☐ all dates and numerical disclosures except the late payment disclosures are estimates.

The undersigned acknowledge receiving and reading a completed copy of this disclosure.
Neither you nor the creditor previously has become obligated to make or accept this loan, nor is any such obligation made by the delivery or signing of this disclosure.

_Edward Laremore_                    10/11/05          _Ralph Cal_                    10/11/05
Edward Laremore                      (Date)            Ralph Cochran                   (Date)

_____              _____          _____        _____
                                     (Date)                                            (Date)

_____              _____          _____        _____
                                     (Date)                                            (Date)

_____              _____          _____        _____
                                     (Date)                                            (Date)

NOTE:  Payments shown above do not include reserve deposits for taxes, assessments, and property or flood insurance.

D3 INC  22787
(10/01/02)

Loan No. ███████

# PROMISSORY NOTE

Borrower: **Edward Laremore**

Lender: **FIRST FLORIDA BANK, A FLORIDA**
**CHARTERED COMMERCIAL BANK**
**8850 TAMIAMI TRAIL NORTH**
**NAPLES, FL  34108-2524**
**(239) 597-8989**

| Principal Amount: **$ 189,900.00** | Interest Rate: **9.0000 %** | Date of Note: **October 11, 2005** |
|---|---|---|

**PROMISE TO PAY.** I ("Borrower") jointly and severally promise to pay to FIRST FLORIDA BANK, A FLORIDA CHARTERED COMMERCIAL BANK ("Lender"), or order, in lawful money of the United States of America, the principal amount of **One   Hundred   Eighty-Nine Thousand Nine Hundred and 00/100** Dollars ($ **189,900.00** ) together with interest at the rate of **9.0000** % per annum on the unpaid principal balance from **October 11, 2005** , until paid in full.

**PAYMENT.** I will pay this loan in one principal amount of $ **189,900.00** plus interest on **October 11, 2006** . This payment due on **October 11, 2006** will be for all principal and all accrued interest not yet paid. In addition, I will pay regular monthly payments of all accrued unpaid interest due as of each payment date, beginning **December 5, 2005** with all subsequent interest payments to be due on the same day of each month after that. Unless otherwise agreed or required by applicable law, payments will be applied first to any accrued unpaid interest; then to principal; then to any unpaid collection costs; and then to any late charges. The annual interest rate for this Note is computed on a 365/360 basis; that is, by applying the ratio of the annual interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. I will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.

**PREPAYMENT.** I agree that all loan fees and other prepaid finance charges are earned fully as of the date of the loan and will not be refunded to me upon early payment (whether voluntary or as a result of default), except as otherwise required by law. Except for the foregoing, I may pay without penalty all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve me of my obligation to continue to make payments under the payment schedule. Rather, early payments will reduce the principal balance due. I agree not to send Lender payments marked "paid in full", "without recourse", or similar language. If I send such a payment, Lender may accept it without losing any of Lender's rights under this Note, and I will remain obligated to pay any further amount owed to Lender. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: First Florida Bank, Main Office, 8850 Tamiami Trail North, Naples, FL 34108-2524.

**LATE CHARGE.** If a payment is more than 15 days late, I will be charged 5.000% of the principal and interest past due.

**INTEREST AFTER DEFAULT.** Upon default, including failure to pay upon final maturity, Lender, at its option, may, if permitted under applicable law, increase the interest rate on this Note to 18.000% per annum, if and to the extent that the increase does not cause the interest rate to exceed the maximum rate permitted by applicable law.

**DEFAULT.** I will be in default under this Note if any of the following happen:

**Payment Default.** I fail to make any payment when due under this Note.

**Break Other Promises.** I break any promise made to Lender or fail to perform promptly at the time and strictly in the manner provided in this Note or in any agreement related to this Note, or in any other agreement or loan I have with Lender.

**Default In Favor of Third Parties.** I or any Grantor defaults under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of my property or my ability to repay this Note or perform my obligations under this Note or any of the related documents.

**False Statements.** Any representation or statement made or furnished to Lender by me or on my behalf, or made by Guarantor, or any other guarantor, endorser, surety, or accommodation party, under this Note or the related documents in connection with the obtaining of the loan evidenced by this Note or any security document directly or indirectly securing repayment of this Note is false or misleading in any material respect, either now or at the time made or furnished.

**Death or Insolvency.** Any Borrower dies or becomes insolvent; a receiver is appointed for any part of my property; I make an assignment for the benefit of creditors; or any proceeding is commenced either by me or against me under any bankruptcy or insolvency laws.

**Taking of the Property.** Any creditor or governmental agency tries to take any of the property or any other of my property in which Lender has a lien. This includes taking of, garnishing of or levying on my accounts with Lender. However, if I dispute in good faith whether the claim on which the taking of the property is based is valid or reasonable, and if I give Lender written notice of the claim and furnish Lender with monies or a surety bond satisfactory to Lender to satisfy the claim, then this default provision will not apply.

**Defective Collateralization.** This Note or any of the related documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Collateral Damage or Loss.** Any collateral securing this Note is lost, stolen, substantially damaged or destroyed and the loss, theft, substantial damage or destruction is not covered by insurance.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor, or any other guarantor, endorser, surety, or accommodation party of any of the indebtedness or any Guarantor, or any other guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any guaranty of the indebtedness evidenced by this Note. In the event of a death, Lender, at its option, may, but shall not be required to, permit the Guarantor's estate to assume unconditionally the obligations arising under the guaranty in a manner satisfactory to Lender, and, in doing so, cure any Event of Default.

**Insecurity.** Lender in good faith believes itself insecure.

**Cure Provisions.** If any default, other than a default in payment is curable and if I have not been given a notice of a breach of the same provision of this Note within the preceding twelve (12) months, it may be cured (and no event of default will have occurred) if I, after receiving written notice from Lender demanding cure of such default: (1) cure the default within ten (10) days; or (2) if the cure requires more than ten (10) days, immediately initiate steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continue and complete all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**LENDER'S RIGHTS.** Upon default, Lender may declare the entire unpaid principal balance on this Note and all accrued unpaid interest immediately due, and then I will pay that amount.

**D**|**1** INC   24166-01
(01/23/04)

## CONSTRUCTION/PERMANENT ADDENDUM TO
## SPECIFIC & GENERAL CLOSING INSTRUCTIONS

Closing Agent acknowledges that he will be responsible for modification of this loan to a Permanent loan upon completion of the construction contract.

1. **Notice of Commencement**
   A Notice of Commencement, provided by the either the closing agent, or First Florida Bank, must be recorded by the closing agent.  (NO funds may be disbursed until the Notice of Commencement has been recorded).

   | | |
   |---|---|
   | Closing disbursement amount: | $ __65,834.50__ |
   | Amount to be retained in LIP account: | $ __124,065.50__ |
   | Draws during construction based on: | $ __138,295.00__ |

   The original must be returned to FFB and a notice posted at the job site.

2. **Mortgage/Security Instrument**
   A copy of the Rider to the Note **MUST** be recorded with the Security Instrument documents along with any other rider(s), as required.

3. **HUD-1 Preparation**
   If there is a builder/contractor involved in the transaction, you **MUST** show them as the seller.  The Loan in Process (LIP) amount should be shown on builder/contractor side.  If the builder/contractor is not the seller of the lot you will need to provide two separate HUD Settlement Statements.
   The amount allocated towards closing costs and lot purchase, etc., as described on page 9 of 9 of the Construction Development Agreement, must be exact.  If your actual figures are less than these amounts any overage should be returned to the LIP account.  A separate check should be returned to FFB with the closed loan package.

   **FAX TO FFB FOR APPROVAL PRIOR TO CLOSING**

4. **Monthly Escrows**
   Conventional Construction Loans:  Escrows for Taxes and Insurance will be collected at the time of modification to a permanent loan.

   **NOTE:**
   Builders Risk policy for replacement coverage of the dwelling must be provided prior to the first draw.  If Flood insurance is required it must be in effect after the slab is poured.

5. **Title Policies/Update**
   **Title update Fees will be collected at Modification**.  Construction Liens/Notice of Commencement - FFB will not accept title policies which contain Schedule B exceptions for construction liens, liens for service, labor, materials, etc. or a Notice of Commencement.

6. When loan has closed and disbursed, fax a copy of the executed Note, Security Instrument, Rider to Note (if applicable) and Notice of Commencement to our Construction Department,
   Attn:  __LAURIE PAULA_____ , Fax Number: 407-691-4665.

7. **Recording Documents**
   **IMPORTANT:**  IF THERE IS A WAY YOU CAN RECORD THE CLOSING DOCUMENTS (DEED, SECURITY INSTRUMENT, ASSIGNMENT OF SECURITY INSTRUMENT, AND NOTICE OF COMMENCEMENT ON A "PRIORITY" BASIS YOU **MUST** DO SO!  COLLECT THE APPROPRIATE ADDITIONAL FEES AND REQUEST THE COUNTY RECORD PRIORITY WHEN TAKING TO THE COUNTY FOR RECORDING.

   *** NO DISBURSEMENTS WILL BE MADE BY FFB FROM THE LIP ACCOUNT UNTIL A COPY OF THE SIGNED NOTE, **RECORDED** SECURITY INSTRUMENT, AND **RECORDED** NOTICE OF COMMENCEMENT.

Rev. 03/19/01   DPS 13438

# MORTGAGE LOAN COMMITMENT

| | | |
|---|---|---|
| Applicants: | **Edward J Laremore** | Lender: **First Florida Bank**<br>**8931 Conference Drive Suite 2**<br>**Fort Myers, FL  33919** |
| Property Address: | **7018 Pilgrim Ct**<br>**Labelle, FL 33935** | |
| Application No: | **Laremore YR05** | Date Prepared: **10/06/2005** |

It is a pleasure to notify you that your application for a first mortgage loan has been approved subject to the following matters set forth below. See Good Faith Estimate of Settlement Charges for any related closing costs.

### AMOUNT, TERMS AND FEES

| | | |
|---|---|---|
| Amount of Loan: $ **189,900** | Contract Interest Rate: **9.000 %** | LTV: **98.755 %** |
| Terms/Due In: **12/12** | Commitment Expires: **11/06/2005** | CLTV: **98.755 %** |

### REPAYMENT TERMS

**CONSTRUCTION ONLY**
**12 MONTH TERM - BALLOON NOTE AT END OF TERM**
**9.00% INTEREST ONLY DURING CONSTRUCTION**
**BUILDER PAYING INTERETS DURING CONSTRUCTION**

### EVIDENCE OF TITLE

The following Evidence of Title is to be provided to the Lender and must indicate no liens, encumbrances, or any adverse covenants or conditions to title unless approved by Lender.   The Evidence of Title must be issued from a firm or source, and in a form, acceptable to Lender.   **REQUIRED**

Borrower will be charged for the cost of providing such title and the cost of recording documents, all of which will be ordered by Lender unless requested otherwise.

### ADDITIONAL REQUIRED ITEMS OR CONDITIONS

**ALL PARTIES TO SIGN PLANS**
**ALL PARTIES TO SIGN SPECS**
**ALL PARTIES TO SIGN 20% SRAW SCHEDULE**
**TWO WITNESSES REQUIRED ON MORTGAGE**

---

### SEE NEXT PAGE INSTRUCTIONS

The Continuation of Commitment Conditions is made a part of this Commitment. Please sign and return Lender's COPY of this Commitment, along with any required fee and items requested, to the lender at the: ☐ above address  ☐ following address, within _____ days of date hereof, or at the option of Lender, this commitment shall become null and void.
I (WE)  hereby accept the terms and Conditions of this Commitment.

**COMMITMENT ISSUED BY:**                                         ADDRESS:

| | | |
|---|---|---|
| _____ | Date | _____ |
| Authorized Signature | | |
| _____ | Date | _____ |
| Applicant   Edward J Laremore | | Applicant                                Date |
| _____ | Date | _____ |
| Applicant | | Applicant                                Date |

Calyx Form MLC 12/93

| A. | U. S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT SETTLEMENT STATEMENT | B. | TYPE OF LOAN |
|---|---|---|---|

**Patriot Title Services, LLC**
825 E. Cowboy Way
Suite 109
Labelle, Florida 33935
863-612-0180 fax: 863-612-0916

| B. | TYPE OF LOAN |
|---|---|
| 1. ☐ FHA  2. ☐ FMHA  3. ☐ CONV. UNINS. |
| 4. ☐ VA  5. ☐ CONV. INS. |
| 6. File Number: TT-0769 | 7. Loan Number: |
| 8. Mortgage Ins. Case No.: |

C. NOTE: *This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown. Items marked (poc) were paid outside the closing. They are shown here for informational purposes and are not included in the totals.*

| D. Borrower: | Ralph Cochran and Edward Laremore 5012 Church Road MountLaurel, NJ 08054 |
|---|---|
| E. Seller: | Robert Charles, LLC, a Florida Limited Liability Company 15500 Idalia Drive Alva, FL 33920 |
| F. Lender: | |
| G. Property: | 7018 Pilgrim Court La Belle, Hendry County, Florida 33935 Lot 11, Block 2224, Port La Belle, Unit 7, Book 3, Page 116, Hendry County, Florida |
| H. Settlement Agent: | Patriot Title Services, LLC |
| Place of Settlement: | 825 E. Cowboy Way, Suite 109, Labelle, Florida 33935  Hendry County |
| I. Settlement Date: | October 11, 2005 |

| J. | Summary of Borrower's Transaction | | K. | Summary of Seller's Transaction | |
|---|---|---|---|---|---|
| **100. Gross Amount Due From Borrower:** | | | **400. Gross Amount Due To Seller:** | | |
| 101. | Contract Sales Price | 50,000.00 | 401. | Contract Sales Price | 50,000.00 |
| 102. | Personal Property | | 402. | Personal Property | |
| 103. | Settlement Charges to Borrower (line 1400) | 68.50 | 403. | | |
| **Adjustments for Items Paid by Seller in Advance:** | | | **Adjustments for Items Paid by Seller in Advance:** | | |
| 106. | City / Town Taxes | | 406. | City / Town Taxes | |
| 107. | County / Parish Taxes | | 407. | County / Parish Taxes | |
| 108. | Assessments | | 408. | Assessments | |
| **120.** | **Gross Amount Due from Borrower:** | **50,068.50** | **420.** | **Gross Amount Due to Seller:** | **50,000.00** |
| | | | | | |
| **200. Amounts Paid by or in Behalf of Borrower:** | | | **500. Reductions in Amount Due to Seller:** | | |
| 201. | Deposit / Earnest Money | | 501. | Excess Deposit (see instructions) | |
| 202. | Principal Amount of New Loan | | 502. | Settlement Charges to Seller (Line 1400) | 837.50 |
| 203. | Existing Loan(s) | | 503. | Existing Loan(s) | |
| 204. | | | 504. | Payoff of First Mortgage to | |
| 205. | | | 505. | Payoff of Second Mortgage to | |
| 206. | | | 506. | Purchase Money Mortgage to | |
| **Adjustments for Items Unpaid by Seller:** | | | **Adjustments for Items Unpaid by Seller:** | | |
| 210. | City / Town Taxes | | 510. | City / Town Taxes | |
| 211. | County / Parish Taxes Jan 1, 2005 thru Oct 10, 2005 | 69.57 | 511. | County / Parish Taxes Jan 1, 2005 thru Oct 10, 2005 | 69.57 |
| 212. | Assessments | | 512. | Assessments | |
| **220.** | **Total Paid by / for Borrower:** | **69.57** | **520.** | **Total Reductions in Amount Due Seller:** | **907.07** |
| | | | | | |
| **300. Cash at Settlement from / to Borrower:** | | | **600. Cash at Settlement to / from Seller:** | | |
| 301. | Gross Amount due from Borrower (line 120) | 50,068.50 | 601. | Gross Amount due to Seller (line 420) | 50,000.00 |
| 302. | Less Amount Paid by/for Borrower (line 220) | 69.57 | 602. | Less Reductions Amount due Seller (line 520) | 907.07 |
| | | | | | |
| **303.** | **Cash From Borrower:** | **$49,998.93** | **603.** | **Cash To Seller:** | **$49,092.93** |

I have carefully reviewed the HUD-1 Settlement Statement and to the best of my knowledge and belief, it is a true and accurate statement of all receipts and disbursements made on my account or by me in this transaction. I further certify that I have received a copy of HUD-1 Settlement Statement. Any interest accruing as a result of funds being placed in an interest bearing account will be for the benefit of the Settlement Agent.

Borrower: _(signature)_ Ralph Cochran

Seller: Robert Charles, LLC
_____
Kimberly Trapp, Managing Member

Borrower: _(signature)_ Edward Laremore

The HUD-1 Settlement Statement which I have prepared is a true and accurate account of this transaction. I have caused or will cause the funds to be disbursed in accordance with this statement.

Settlement Agent: _____
Tara Torrone

Date: October 11, 2005
File No.: TT-0769

WARNING: It is a crime to knowingly make false statements to the United States on this or any other similar form. Penalties upon conviction can include a fine or imprisonment. For details see: Title 18 U.S. Code Section 1001 and Section 1010.

HUD-1 June 2004
October 7, 2005 4:12 PM

OMB No. 2502-0265
RESPA handbook 4305.2

Settlement Date:October 11,2005

File Number: TT-0769

| **L.** | Settlement Charges | Paid from Borrower's Funds at Settlement | Paid from Seller's Funds at Settlement |
|---|---|---|---|
| **700. Total Sales / Broker's Commission:** Based on Price $50,000.00 Division of Commission as follows | | | |
| 701. | | | |
| 702. | | | |
| 703. Commission Paid at Settlement | | | |
| **800. Items Payable in Connection with Loan:** | | | |
| 801. Loan Origination Fee | | | |
| 802. Loan Discount | | | |
| 803. Appraisal Fee | | | |
| 804. Credit Report | | | |
| 805. Lender's Inspection Fee | | | |
| 806. Mortgage Insurance Application Fee | | | |
| 807. Assumption Fee | | | |
| **900. Items Required by Lender to be Paid in Advance:** | | | |
| 901. Interest from Oct 11, 2005 @ 0.0000 / day | | | |
| 902. Mortgage Insurance Premium | | | |
| 903. Hazard Insurance Premium | | | |
| 904. Flood Insurance Premium | | | |
| **1000. Reserves Deposited with Lender:** | | | |
| 1001. Hazard Insurance | | | |
| 1002. Mortgage Insurance | | | |
| 1003. City Property Taxes | | | |
| 1004. County Property Taxes | | | |
| 1005. Annual Assessments | | | |
| **1100. Title Charges:** | | | |
| 1101. Settlement or Closing Fee to Patriot Title Services, LLC | | 50.00 | 50.00 |
| 1102. Abstract or Title Search to Patriot Title Services, LLC | | | 100.00 |
| 1103. Title Examination to Patriot Title Services, LLC | | | 50.00 |
| 1104. Title Insurance Binder | | | |
| 1105. Document Preparation | | | |
| 1106. Notary Fees | | | |
| 1107. Attorney Fees (includes above item numbers: | | | |
| 1108. Title Insurance to Patriot Title Services, LLC (includes above item numbers: | | | 287.50 |
| 1109. Lender's Coverage 0.00 Risk Premium 0.00 | | | |
| 1110. Owner's Coverage 50,000.00 Risk Premium 287.50 | | | |
| 1111. Courier Fee | | | |
| 1112. | | | |
| **1200. Government Recording and Transfer Charges:** | | | |
| 1201. Recording Fees: Deed 18.50 Mortgage 0.00 Releases 0.00 | | 18.50 | |
| 1202. City/County Tax/Stamps: Deed 0.00 Mortgage 0.00 | | | |
| 1203. State Tax/Stamps: Deed 350.00 Mortgage 0.00 | | | 350.00 |
| 1204. INTANGIBLE to Clerk of the Circuit Court | | | |
| 1205. Record Notice of Termination | | | |
| **1300. Additional Settlement Charges:** | | | |
| 1301. Survey | | | |
| 1302. Pest Inspection | | | |
| **1400. Total Settlement Charges (Enter on line 103, Section J and line 502, Section K)** | | **$68.50** | **$837.50** |



Borrower Initials: _RC_ Ralph Cochran      _EL_ Edward Laremore

Seller Initials: _____ Robert Charles, LLC

| A. | U. S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT SETTLEMENT STATEMENT | B. | TYPE OF LOAN |
|---|---|---|---|

**Patriot Title Services, LLC**
825 E. Cowboy Way
Suite 109
Labelle, Florida 33935
863-612-0180 fax: 863-612-0916

| B. | TYPE OF LOAN |
|---|---|
| 1. ☐ FHA   2. ☐ FMHA   3. ☒ CONV. UNINS. | |
| 4. ☐ VA   5. ☐ CONV. INS. | |
| 6. File Number: TT-0769B   7. Loan Number: ▮▮▮▮ | |
| 8. Mortgage Ins. Case No.: | |

C. NOTE: *This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown. Items marked (poc) were paid outside the closing. They are shown here for informational purposes and are not included in the totals.*

| D. Borrower: | Ralph Cochran and Edward Laremore<br>213 Union Avenue<br>Stratford, NJ 08084 |
|---|---|
| E. Seller: | Kenwood Homes, Inc., a Florida Corporation<br>825 E. Cowboy Way, #108<br>Labelle, FL 33935 |
| F. Lender: | First Florida Bank, ISAOA<br>8931 Conference Drive #2<br>Ft. Myers, Florida 34108 |
| G. Property: | 7018 Pilgrim Court<br>La Belle, Hendry County, Florida 33935<br>Lot 11, Block 2224, Port La Belle, Unit 7, Book 3, Page 116,  Hendry County, Florida |
| H. Settlement Agent: | Patriot Title Services, LLC |
| Place of Settlement: | 825 E. Cowboy Way, Suite 109, Labelle, Florida  33935  Hendry County |
| I. Settlement Date: | October 11, 2005 |

| J. | Summary of Borrower's Transaction | | K. | Summary of Seller's Transaction | |
|---|---|---|---|---|---|
| **100. Gross Amount Due From Borrower:** | | | **400. Gross Amount Due To Seller:** | | |
| 101. | Contract Sales Price | 142,295.00 | 401. | Contract Sales Price | 142,295.00 |
| 102. | Personal Property | | 402. | Personal Property | |
| 103. | Settlement Charges to Borrower (line 1400) | 59,543.11 | 403. | | |
| **Adjustments for Items Paid by Seller in Advance:** | | | **Adjustments for Items Paid by Seller in Advance:** | | |
| 106. | City / Town Taxes | | 406. | City / Town Taxes | |
| 107. | County / Parish Taxes | | 407. | County / Parish Taxes | |
| 108. | Assessments | | 408. | Assessments | |
| **120.** | **Gross Amount Due from Borrower:** | **201,838.11** | **420.** | **Gross Amount Due to Seller:** | **142,295.00** |
| | | | | | |
| **200. Amounts Paid by or in Behalf of Borrower:** | | | **500. Reductions in Amount Due to Seller:** | | |
| 201. | Deposit / Earnest Money | 1,500.00 | 501. | Excess Deposit (see instructions) | 1,500.00 |
| 202. | Principal Amount of New Loan | 189,900.00 | 502. | Settlement Charges to Seller (Line 1400) | 0.00 |
| 203. | Existing Loan(s) | | 503. | Existing Loan(s) | |
| 204. | Builder Credit | 4,000.00 | 504. | Payoff of First Mortgage to | |
| 205. | | | 505. | Payoff of Second Mortgage to | |
| 206. | | | 506. | Purchase Money Mortgage to | |
| 207. | | | 507. | Builder Credit | 4,000.00 |
| 208. | | | 508. | Lip Ccount | 124,065.50 |
| **Adjustments for Items Unpaid by Seller:** | | | **Adjustments for Items Unpaid by Seller:** | | |
| 210. | City / Town Taxes | | 510. | City / Town Taxes | |
| 211. | County / Parish Taxes | | 511. | County / Parish Taxes | |
| 212. | Assessments | | 512. | Assessments | |
| **220.** | **Total Paid by / for Borrower:** | **195,400.00** | **520.** | **Total Reductions in Amount Due Seller:** | **129,565.50** |
| | | | | | |
| **300. Cash at Settlement from / to Borrower:** | | | **600. Cash at Settlement to / from Seller:** | | |
| 301. | Gross Amount due from Borrower (line 120) | 201,838.11 | 601. | Gross Amount due to Seller (line 420) | 142,295.00 |
| 302. | Less Amount Paid by/for Borrower (line 220) | 195,400.00 | 602. | Less Reductions Amount due Seller (line 520) | 129,565.50 |
| **303.** | **Cash From Borrower:** | **$6,438.11** | **603.** | **Cash To Seller:** | **$12,729.50** |

I have carefully reviewed the HUD-1 Settlement Statement and to the best of my knowledge and belief, it is a true and accurate statement of all receipts and disbursements made on my account or by me in this transaction. I further certify that I have received a copy of HUD-1 Settlement Statement. Any interest accruing as a result of funds being placed in an interest bearing account will be for the benefit of the Settlement Agent.

Borrower: _Ralph Cochran_ (signature)
Ralph Cochran

Borrower: ▮▮▮▮▮▮▮▮
Edward Laremore

Seller: _____
Kenwood Homes, Inc.

Kimberly Trapp, President

The HUD-1 Settlement Statement which I have prepared is a true and accurate account of this transaction. I have caused or will cause the funds to be disbursed in accordance with this statement.

Date:  October 11, 2005
File No.:  TT-0769B

Settlement Agent: _____
Tara Torrone

WARNING:  It is a crime to knowingly make false statements to the United States on this or any other similar form. Penalties upon conviction can include a fine or imprisonment.  For details see: Title 18 U.S. Code Section 1001 and Section 1010.

OMB No. 2502-0265
RESPA handbook 4305.2

Settlement Date:October 11,2005                    Loan Number: 92-15-001218                    File Number: TT-0769B

| L. | Settlement Charges | Paid from Borrower's Funds at Settlement | Paid from Seller's Funds at Settlement |
|---|---|---|---|
| **700.** | **Total Sales / Broker's Commission:** Based on Price **$192,295.00** Division of Commission as follows | | |
| 701. | | | |
| 702. | | | |
| 703. | Commission Paid at Settlement | | |
| **800.** | **Items Payable in Connection with Loan:** | | |
| 801. | Loan Origination Fee  1.000 % to First Florida Bank, ISAOA | 1,899.00 | |
| 802. | Loan Discount to First Florida Bank, ISAOA | | |
| 803. | Appraisal Fee to Coastal Engineering Cons | 350.00 | |
| 804. | Credit Report To CDS to Alan Kelly Mortgage, LLC | 26.00 | |
| 805. | Lender's Inspection Fee | | |
| 806. | Mortgage Insurance Application Fee | | |
| 807. | Assumption Fee | | |
| 808. | Broker Processing Fee to Alan Kelly Mortgage, LLC | 595.00 | |
| 809. | Construction Admin Fee to First Florida Bank, ISAOA | 712.13 | |
| 810. | Construction Inspection Fee to First Florida Bank, ISAOA | 320.00 | |
| 811. | Credit Report to First Florida Bank, ISAOA | 9.95 | |
| 812. | Flood Certification to Nationwide Total Flood Service | 18.00 | |
| 813. | Inspection Fee to First Florida Bank, ISAOA | 100.00 | |
| 814. | Mortgage Broker Compensation to Alan Kelly Mortgage, LLC | 2,399.00 | |
| **900.** | **Items Required by Lender to be Paid in Advance:** | | |
| 901. | Interest from Oct 11, 2005 @ 41.6219 / day | | |
| 902. | Mortgage Insurance Premium | | |
| 903. | Hazard Insurance Premium | | |
| 904. | Flood Insurance Premium | | |
| **1000.** | **Reserves Deposited with Lender:** | | |
| 1001. | Hazard Insurance | | |
| 1002. | Mortgage Insurance | | |
| 1003. | City Property Taxes | | |
| 1004. | County Property Taxes | | |
| 1005. | Annual Assessments | | |
| **1100.** | **Title Charges:** | | |
| 1101. | Settlement or Closing Fee to Patriot Title Services, LLC | 100.00 | |
| 1102. | Abstract or Title Search to Patriot Title Services, LLC | 100.00 | |
| 1103. | Title Examination to Patriot Title Services, LLC | 50.00 | |
| 1104. | Title Insurance Binder | | |
| 1105. | Document Preparation to First Florida Bank, ISAOA | 300.00 | |
| 1106. | Notary Fees | | |
| 1107. | Attorney Fees     (includes above item numbers: | | |
| 1108. | Title Insurance to Patriot Title Services, LLC     (includes above item numbers: | 1,061.50 | |
| 1109. | Lender's Coverage     189,900.00     Risk Premium     25.00 | | |
| 1110. | Owner's Coverage     142,295.00     Risk Premium     1,036.50 | | |
| 1111. | Courier Fee to Patriot Title Services, LLC | 100.00 | |
| 1112. | 8.1 Endorsement to Patriot Title Services, LLC | 25.00 | |
| 1113. | Florida Form 9 to Patriot Title Services, LLC | 106.15 | |
| **1200.** | **Government Recording and Transfer Charges:** | | |
| 1201. | Recording Fees:     Deed     0.00     Mortgage     205.50     Releases     0.00 | 205.50 | |
| 1202. | City/County Tax/Stamps:     Deed     0.00     Mortgage     0.00 | | |
| 1203. | State Tax/Stamps:     Deed     0.00     Mortgage     664.65 | 664.65 | |
| 1204. | INTANGIBLE to Clerk of the Circuit Court | 379.80 | |
| 1205. | Record Notice of Termination | | |
| 1206. | Recor Notice of Commencement to Clerk of the Circuit Court | 22.50 | |
| **1300.** | **Additional Settlement Charges:** | | |
| 1301. | Survey | | |
| 1302. | Pest Inspection | | |
| 1303. | Lot Payoff to Patriot Title Services, LLC | 49,998.93 | |
| | | | |
| **1400.** | **Total Settlement Charges (Enter on line 103, Section J and line 502, Section K)** | **$59,543.11** | **$0.00** |

Borrower Initials:        _RC_   Ralph Cochran              _EL_  Edward Laremore

Seller Initials:          _____   Kenwood Homes, Inc.

OMB No. 2502-0265
RESPA handbook 4305.2

HUD-1 (Rev. 12/92)                                                                          OMB No. 2502-0265

| L. | | | SETTLEMENT CHARGES | | | | |
|---|---|---|---|---|---|---|---|

| 700. | TOTAL SALES/BROKER'S COMMISSION: | | | | | PAID FROM BORROWER'S FUNDS AT SETTLEMENT | PAID FROM SELLER'S FUNDS AT SETTLEMENT |
|---|---|---|---|---|---|---|---|
| | BASED ON PRICE | $ | 192,295.00 | @ | % = | | |
| **DIVISION OF COMMISSION (LINE 700) AS FOLLOWS:** | | | | | | | |
| 701. | $ | | to | | | | |
| 702. | $ | | to | | | | |
| 703. | Commission paid at settlement | | | | | | |
| 704. | | | | | | | |

| 800. | ITEMS PAYABLE IN CONNECTION WITH LOAN: | | B*buyer S*seller L*lender A*assign R*broker | | | | |
|---|---|---|---|---|---|---|---|
| | Fees | Paid To | Paid By | Total as % | Total as $ | POC as $ | APR |
| 801. | Loan Origination fee | | | | | | |
| 802. | Loan Discount | FIRST FLORIDA BANK | B | | 1,899.00 | 1,899.00 | x |
| 803. | Appraisal fee | COASTAL ENGINEERING CONS | B | | 350.00 | 350.00 | |
| 804. | Credit report | | | | | | |
| 805. | Lender's inspection fee | | | | | | |
| 808. | | | | | | | |
| 809. | BROKER CREDIT REPORT | CDS | B | | 26.00 | 26.00 | |
| 810. | Broker Processing Fee | ALAN KELLY MTG | B | | 595.00 | 595.00 | x |
| 811. | Construction Admin Fee ( | FIRST FLORIDA BANK | B | | 712.13 | 712.13 | x |
| 812. | Construction Inspections | FIRST FLORIDA BANK | B | | 320.00 | 320.00 | x |
| 813. | CREDIT REPORT -MAF | FIRST FLORIDA BANK | B | | 9.95 | 9.95 | |
| 814. | Flood Certification | NATIONWIDE TOTAL FLOOD SERVICE | B | | 18.00 | 18.00 | x |
| 815. | INSPECTION FEE | FIRST FLORIDA BANK | B | | 100.00 | 100.00 | x |
| 816. | MORTGAGE BROKER COMPENSA | ALAN KELLY MTG | B | | 2,399.00 | 2,399.00 | x |
| 817. | | | | | | | |

| 900. | ITEMS REQUIRED BY LENDER TO BE PAID IN ADVANCE: | | | | | | |
|---|---|---|---|---|---|---|---|
| 901. | Interest from | to | @ $ | /day | | | |
| 902. | MI Premium for     months | | | | | | |
| 903. | Hazard Ins. Prem for     mos | | | | | | |
| 904. | Flood Ins. Prem for     yrs | | | | | | |
| 905. | VA Funding Fee | | | | | | |

| 1000. | RESERVES DEPOSITED WITH LENDER: | | | | | | |
|---|---|---|---|---|---|---|---|
| 1001. | Hazard Insurance | months @ | per month | | 0.00 | | |
| 1002. | Mortgage Insurance | months @ | per month | | | | |
| 1003. | City property taxes | months @ | per month | | 0.00 | | |
| 1004. | County property taxes | months @ | per month | | 0.00 | | |
| 1005. | Annual Assessments | months @ | per month | | 0.00 | | |
| 1006. | Flood Insurance | months @ | per month | | 0.00 | | |
| 1007. | | months @ | per month | | 0.00 | | |
| 1008. | | | | | | | |

| 1100. | TITLE CHARGES: | | | | | | |
|---|---|---|---|---|---|---|---|
| 1101. | Settlement or closing fee | PATRIOT TITLE SERVICES | B | | 100.00 | 100.00 | x |
| 1102. | Abstract or title search | | | | | | |
| 1103. | Title examination | | | | | | |
| 1104. | Title Insurance binder | | | | | | |
| 1105. | Document preparation | FIRST FLORIDA BANK | B | | 300.00 | 300.00 | |
| 1106. | Notary fees | | | | | | |
| 1107. | Attorney's fees | | | | | | |
| | (includes above items Numbers: | | | | ) | | |
| 1108. | Title Insurance | | | | | | |
| | (includes above items Numbers: | | | | ) | | |
| 1109. | Lender's coverage | $ | 189,900.00 | | | | |
| 1110. | Owner's coverage | $ | 192,295.00 | | | | |
| 1111. | RECORDING FEE | PATRIOT TITLE SERVICES | B | | 171.50 | 171.50 | |
| 1112. | | | | | | | |

| 1200. | GOVERNMENT RECORDING AND TRANSFER CHARGES: | | | | | | |
|---|---|---|---|---|---|---|---|
| 1201. | Recording fees: | Deed $ | ; Mortgage $ | ; Releases $ | | | |
| 1202. | City/county tax/stamps: | Deed $ | ; Mortgage $ | | | | |
| 1203. | State tax/stamps: | Deed $ | ; Mortgage $ | | | | |
| 1204. | Recording assignment | | | | | | |
| 1205. | | | | | | | |

| 1300. | ADDITIONAL SETTLEMENT CHARGES: | | | | | | |
|---|---|---|---|---|---|---|---|
| 1301. | Survey | | | | | | |
| 1302. | Pest Inspection | | | | | | |
| 1303. | | | | | | | |
| 1304. | | | | | | | |
| 1305. | | | | | | | |
| 1306. | | | | | | | |
| 1307. | | | | | | | |
| 1308. | | | | | | | |
| 1309. | | | | | | | |
| 1310. | | | | | | | |
| 1311. | | | | | | | |
| 1400. | TOTAL SETTLEMENT CHARGES (Enter on line 103, Section J-and line 502, Section K) | | | | | 7,000.58 | 0.00 |

I have carefully reviewed the HUD-1 Settlement Statement and to the best of my knowledge and belief, it is a true and accurate statement of all receipts and disbursements made on my account or by me in this transaction. I further certify that I have received a copy of the HUD-1 Settlement Statement.

Borrower: _____ Edward Laremore _____    Seller: ROBERT CHARLES, LLC _____ Date: _____

Borrower: _____ Date: _____    Seller: _____ Date: _____

The HUD-1 Settlement Statement which I have prepared is a true and accurate account of this transaction. I have caused or will cause the funds to be disbursed in accordance with this statement.

_____ Date: _____   Settlement Agent: _____ Date: _____

**WARNING:** It is a crime to knowingly make false statements to the United States on this or any other similar form. Penalties upon conviction can include a fine and imprisonment. For details see: Title 18 U.S. Code Section 1001 and Section 1010.

(12/16/03)   DPS 15327

# GOOD FAITH ESTIMATE

| Applicants: | Edward J Laremore | | Application No: | LAREMORE |
|---|---|---|---|---|
| Property Addr: | 7018 PILGRIM COURT, Labelle, FL 33935 | | Date Prepared: | 09/26/2005 |
| Prepared By: | Alan Kelly Mortgage   Ph. 863-674-0091 | | Loan Program: | |
| | 825 E Cowboy Way, Labelle,, FL  33935 | | | |

The information provided below reflects estimates of the charges which you are likely to incur at the settlement of your loan. The fees listed are estimates-actual charges may be more or less. Your transaction may not involve a fee for every item listed.  The numbers listed beside the estimates generally correspond to the numbered lines contained in the HUD-1 settlement statement which you will be receiving at settlement. The HUD-1 settlement statement will show you the actual cost for items paid at settlement.

Total Loan Amount $ **189,900**   Interest Rate:  **9.000** %   Term:  **360 / 360**  mths

| 800 | ITEMS PAYABLE IN CONNECTION WITH LOAN: | | | |
|---|---|---|---|---|
| 801 | Loan Origination Fee | + $ | 500.00 | $ | 500.00 |
| 802 | Loan Discount | | | |
| 803 | Appraisal Fee | | | 350.00 |
| 804 | Credit Report | | | 28.00 |
| 805 | Lender's Inspection Fee | | | |
| 808 | Mortgage Broker Fee | 1.000% | | 1,899.00 |
| 809 | Tax Related Service Fee | | | |
| 810 | Processing Fee | | | 595.00 |
| 811 | Underwriting Fee | | | |
| 812 | Wire Transfer Fee | | | |
| | First Florida | | | 1,899.00 |
| | Doc Prep First Florida | | | 300.00 |
| | 70.00 per construction draw | | | 320.00 |
| | Final Inspection | | | 100.00 |
| | Construction Admin Fee (.375) | | | 712.12 |
| | Flood Cert | | | 18.00 |
| | Credit Report Fee FF | | | 9.95 |

| 1100 | TITLE CHARGES: | | | |
|---|---|---|---|---|
| 1101 | Closing or Escrow Fee: | | $ | 100.00 |
| 1105 | Document Preparation Fee | | | 50.00 |
| 1106 | Notary Fees | | | |
| 1107 | Attorney Fees | | | |
| 1108 | Title Insurance: | | | 1,061.50 |
| | Title Search | | | 100.00 |
| | Endorsement | | | 25.00 |
| | Florida Form 9 | | | 106.15 |

| 1200 | GOVERNMENT RECORDING & TRANSFER CHARGES: | | | |
|---|---|---|---|---|
| 1201 | Recording Fees: | | $ | 205.50 |
| 1202 | City/County Tax/Stamps: | | | |
| 1203 | State Tax/Stamps: | | | 664.65 |
| | Intangible Tax | | | 379.80 |
| | Clerk of Court | | | 22.50 |

| 1300 | ADDITIONAL SETTLEMENT CHARGES: | | | |
|---|---|---|---|---|
| 1302 | Pest Inspection | | $ | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | Estimated Closing Costs | | 9,446.17 |

| 900 | ITEMS REQUIRED BY LENDER TO BE PAID IN ADVANCE: | | | |
|---|---|---|---|---|
| 901 | Interest for | days @ $ | 47.4750 | per day | $ |
| 902 | Mortgage Insurance Premium | | | |
| 903 | Hazard Insurance Premium | | | |
| 904 | | | | |
| 905 | VA Funding Fee | | | |

| 1000 | RESERVES DEPOSITED WITH LENDER: | | | |
|---|---|---|---|---|
| 1001 | Hazard Insurance Premiums | months @ $ | | per month | $ |
| 1002 | Mortgage Ins. Premium Reserves | months @ $ | | per month | |
| 1003 | School Tax | months @ $ | | per month | |
| 1004 | Taxes and Assessment Reserves | months @ $ | | per month | |
| 1005 | Flood Insurance Reserves | months @ $ | | per month | |
| | | months @ $ | | per month | |
| | | months @ $ | | per month | |
| | | Estimated Prepaid Items/Reserves | | |

| TOTAL ESTIMATED SETTLEMENT CHARGES | | | | 9,446.17 |
|---|---|---|---|---|

| TOTAL ESTIMATED FUNDS NEEDED TO CLOSE: | | | TOTAL ESTIMATED MONTHLY PAYMENT: | |
|---|---|---|---|---|
| Purchase Price/Payoff (+) | 192,295.00 | New First Mortgage(-) | Principal & Interest | 1,527.98 |
| Loan Amount (-) | 189,900.00 | Sub Financing(-) | Other Financing (P & I) | |
| Est. Closing Costs (+) | 9,446.17 | New 2nd Mtg Closing Costs(+) | Hazard Insurance | |
| Est. Prepaid Items/Reserves (+) | 0.00 | | Real Estate Taxes | |
| Amount Paid by Seller (-) | 4,000.00 | | Mortgage Insurance | |
| Cash Deposit | (1,500.00) | | Homeowner Assn. Dues | |
| | | | Other | |
| | | | | |
| Total Est. Funds needed to close | 6,341.17 | Total Monthly Payment | | 1,527.98 |

These estimates are provided pursuant to the Real Estate Settlement Procedures Act of 1974, as amended (RESPA). Additional information can be found in the HUD Special Information Booklet, which is to be provided to you by your mortgage broker or lender, if your application is to purchase residential real property and the lender will take a first lien on the property.   The undersigned acknowledges receipt of the booklet "Settlement Costs," and if applicable the Consumer Handbook on ARM Mortgages.



| Applicant | 10/1/105 | Applicant | |
|---|---|---|---|
| | Date | | Date |

# TRUTH-IN-LENDING DISCLOSURE STATEMENT
## (THIS IS NEITHER A CONTRACT NOR A COMMITMENT TO LEND)

| | |
|---|---|
| Applicants: **Edward J Laremore** | Prepared By: **Alan Kelly Mortgage** |
| | **825 E Cowboy Way** |
| Property Address: **7018 PILGRIM COURT** | **Labelle, , FL 33935** |
| **Labelle, FL 33935** | **863-674-0091** |
| Application No: **LAREMORE** | Date Prepared: **09/26/2005** |

| ANNUAL PERCENTAGE RATE | FINANCE CHARGE | AMOUNT FINANCED | TOTAL OF PAYMENTS |
|---|---|---|---|
| The cost of your credit as a yearly rate | The dollar amount the credit will cost you | The amount of credit provided to you or on your behalf | The amount you will have paid after making all payments as scheduled |
| 9.000 % | $ 256,365.00 | $ 189,900.00 | $ 446,265.00 |

☐ **REQUIRED DEPOSIT:** The annual percentage rate does not take into account your required deposit
**PAYMENTS:** Your payment schedule will be:

| Number of Payments | Amount of Payments ** | When Payments Are Due Monthly Beginning: | Number of Payments | Amount of Payments ** | When Payments Are Due Monthly Beginning: | Number of Payments | Amount of Payments ** | When Payments Are Due Monthly Beginning: |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | |

**Repayment: One payment of principal of $ 189,900.00 on .**
**Interest on the amount of credit outstanding will be paid monthly.**

☐ **DEMAND FEATURE:** This obligation has a demand feature.
☐ **VARIABLE RATE FEATURE:** This loan contains a variable rate feature. A variable rate disclosure has been provided earlier.

**CREDIT LIFE/CREDIT DISABILITY:** Credit life insurance and credit disability insurance are not required to obtain credit, and will not be provided unless you sign and agree to pay the additional cost.

| Type | Premium | Signature |
|---|---|---|
| Credit Life | | I want credit life insurance. Signature: |
| Credit Disability | | I want credit disability insurance. Signature: |
| Credit Life and Disability | | I want credit life and disability insurance. Signature: |

**INSURANCE:** The following insurance is required to obtain credit:
☐ Credit life insurance  ☐ Credit disability  ☐ Property insurance  ☐ Flood insurance
You may obtain the insurance from anyone you want that is acceptable to creditor
☐ If you purchase  ☐ property  ☐ flood insurance from creditor you will pay $ _____ for a one year term.
**SECURITY:** You are giving a security interest in:
☐ The goods or property being purchased  ☐ Real property you already own.
**FILING FEES:** $ _____
**LATE CHARGE:** If a payment is more than _____ days late, you will be charged _____ % of the payment
**PREPAYMENT:** If you pay off early, you
☐ may  ☐ will not  have to pay a penalty.
☐ may  ☐ will not  be entitled to a refund of part of the finance charge.
**ASSUMPTION:** Someone buying your property
☐ may  ☐ may, subject to conditions  ☐ may not  assume the remainder of your loan on the original terms.
See your contract documents for any additional information about nonpayment, default, any required repayment in full before the scheduled date and prepayment refunds and penalties.
☐ * means an estimate  ☐ all dates and numerical disclosures except the late payment disclosures are estimates.

** * NOTE: The Payments shown above include reserve deposits for Mortgage Insurance (if applicable), but exclude Property Taxes and Insurance.

THE UNDERSIGNED ACKNOWLEDGES RECEIVING A COMPLETED COPY OF THIS DISCLOSURE.

| | | |
|---|---|---|
| Edward J Laremore  10/1/05 | | |
| (Applicant)  (Date) | | (Applicant)  (Date) |
| | | |
| (Applicant)  (Date) | | (Applicant)  (Date) |
| | | |
| (Lender)  (Date) | | |

# Uniform Residential Loan Application

This application is designed to be completed by the applicant(s) with the Lender's assistance. Applicants should complete this form as "Borrower" or "Co-Borrower", as applicable. Co-Borrower information must also be provided (and the appropriate box checked) when ☐ the income or assets of a person other than the "Borrower" (including the Borrower's spouse) will be used as a basis for loan qualification or ☐ the income or assets of the Borrower's spouse will not be used as a basis for loan qualification, but his or her liabilities must be considered because the Borrower resides in a community property state, the security property is located in a community property state, or the Borrower is relying on other property located in a community property state as a basis for repayment of the loan.

## I. TYPE OF MORTGAGE AND TERMS OF LOAN

| Mortgage Applied for: | ☐ VA   ☑ Conventional   ☐ Other (explain): | Agency Case Number | Lender Case Number |
|---|---|---|---|
| | ☐ FHA   ☐ USDA/Rural Housing Service | | |

| Amount $ 189,900 | Interest Rate 9.000 % | No. of Months 12/12 | Amortization Type: | ☐ Fixed Rate   ☑ Other (explain): interest only<br>☐ GPM   ☐ ARM (type): |
|---|---|---|---|---|

## II. PROPERTY INFORMATION AND PURPOSE OF LOAN

| Subject Property Address (street, city, state, ZIP)<br>7018 Pilgrim Ct,   Labelle, FL 33935   County: Hendry | | No. of Units<br>1 |
|---|---|---|
| Legal Description of Subject Property (attach description if necessary)<br>See Title Policy | | Year Built<br>2006 |

| Purpose of Loan | ☐ Purchase   ☑ Construction   ☐ Other (explain): | Property will be: |
|---|---|---|
| | ☐ Refinance   ☐ Construction-Permanent | ☐ Primary Residence ☐ Secondary Residence ☑ Investment |

*Complete this line if construction or construction-permanent loan.*

| Year Lot Acquired 2005 | Original Cost<br>$ 50,000 | Amount Existing Liens<br>$ 50,000 | (a) Present Value of Lot<br>$ 50,000 | (b) Cost of Improvements<br>$ 142,295 | Total (a+b)<br>$ 192,295 |
|---|---|---|---|---|---|

*Complete this line if this is a refinance loan.*

| Year Acquired | Original Cost<br>$ | Amount Existing Liens<br>$ | Purpose of Refinance | Describe Improvements ☐ made ☐ to be made<br>Cost: $ |
|---|---|---|---|---|

| Title will be held in what Name(s)   Edward J Laremore<br>Ralph Cochran | Manner in which Title will be held<br>Joint tenants | Estate will be held in:<br>☑ Fee Simple<br>☐ Leasehold (show expiration date) |
|---|---|---|

| Source of Down Payment, Settlement Charges and/or Subordinate Financing (explain)<br>Checking/Savings |
|---|

## III. BORROWER INFORMATION

| Borrower | Co-Borrower |
|---|---|
| Borrower's Name (include Jr. or Sr. if applicable)<br>Edward J Laremore | Co-Borrower's Name (include Jr. or Sr. if applicable) |

| Social Security Number | Home Phone (incl. area code) | DOB (MM/DD/YYYY)<br>03/16/1956 | Yrs. School<br>16 | Social Security Number | Home Phone (incl. area code) | DOB (MM/DD/YYYY) | Yrs. School |
|---|---|---|---|---|---|---|---|

| ☑ Married   ☐ Unmarried (include single, divorced, widowed)<br>☐ Separated | Dependents (not listed by Co-Borrower)<br>no.   ages | ☐ Married   ☐ Unmarried (include single, divorced, widowed)<br>☐ Separated | Dependents (not listed by Borrower)<br>no.   ages |
|---|---|---|---|

| Present Address (street, city, state, ZIP)   ☑ Own ☐ Rent 13 No. Yrs.<br>5012 Church Rd<br>Mount Laurel, NJ 08054 | Present Address (street, city, state, ZIP)   ☐ Own ☐ Rent ___ No. Yrs. |
|---|---|

| Mailing Address, if different from Present Address | Mailing Address, if different from Present Address |
|---|---|

*If residing at present address for less than two years, complete the following:*

| Former Address (street, city, state, ZIP)   ☐ Own ☐ Rent ___ No. Yrs. | Former Address (street, city, state, ZIP)   ☐ Own ☐ Rent ___ No. Yrs. |
|---|---|

## IV. EMPLOYMENT INFORMATION

| Borrower | Co-Borrower |
|---|---|
| Name & Address of Employer   ☑ Self Employed<br>Fellowship Alliance Chapel<br>199 Church<br>Medford, NJ 08055 | Yrs. on this job<br>20 yr(s)<br>Yrs. employed in this line of work/profession<br>20 | Name & Address of Employer   ☐ Self Employed | Yrs. on this job<br>Yrs. employed in this line of work/profession |

| Position/Title/Type of Business<br>Associate Pastor | Business Phone (incl. area code)<br>609-953-7333 | Position/Title/Type of Business | Business Phone (incl. area code) |
|---|---|---|---|

*If employed in current position for less than two years or if currently employed in more than one position, complete the following:*

| Name & Address of Employer   ☐ Self Employed | Dates (from-to)<br>Monthly Income<br>$ | Name & Address of Employer   ☐ Self Employed | Dates (from-to)<br>Monthly Income<br>$ |
|---|---|---|---|
| Position/Title/Type of Business | Business Phone (incl. area code) | Position/Title/Type of Business | Business Phone (incl. area code) |

| Name & Address of Employer   ☐ Self Employed | Dates (from-to)<br>Monthly Income<br>$ | Name & Address of Employer   ☐ Self Employed | Dates (from-to)<br>Monthly Income<br>$ |
|---|---|---|---|
| Position/Title/Type of Business | Business Phone (incl. area code) | Position/Title/Type of Business | Business Phone (incl. area code) |

## V. MONTHLY INCOME AND COMBINED HOUSING EXPENSE INFORMATION

| Gross Monthly Income | Borrower | Co-Borrower | Total | Combined Monthly Housing Expense | Present | Proposed |
|---|---|---|---|---|---|---|
| Base Empl. Income* | $ | $ | $ | Rent | | |
| Overtime | | | | First Mortgage (P&I) | | $ 1,424.25 |
| Bonuses | | | | Other Financing (P&I) | | |
| Commissions | | | | Hazard Insurance | 44.25 | 100.00 |
| Dividends/Interest | | | | Real Estate Taxes | 400.00 | 200.00 |
| Net Rental Income | | | | Mortgage Insurance | | |
| Other (before completing, see the notice in "describe other income," below) | | | | Homeowner Assn. Dues | | |
| | | | | Other: | | |
| Total | $ 5,750.00 | $ | $ 5,750.00 | Total | $ 444.25 | $ 1,724.25 |

* Self Employed Borrower(s) may be required to provide additional documentation such as tax returns and financial statements.

**Describe Other Income** *Notice:* Alimony, child support, or separate maintenance income need not be revealed if the Borrower (B) or Co-Borrower (C) does not choose to have it considered for repaying this loan.

| B/C | | Monthly Amount |
|---|---|---|
| B | Stated Income | $ 5,750.00 |

## VI. ASSETS AND LIABILITIES

This Statement and any applicable supporting schedules may be completed jointly by both married and unmarried Co-borrowers if their assets and liabilities are sufficiently joined so that the Statement can be meaningfully and fairly presented on a combined basis; otherwise, separate Statements and Schedules are required. If the Co-Borrower section was completed about a spouse, this Statement and supporting schedules must be completed about that spouse also.

Completed ☐ Jointly ☑ Not Jointly

| ASSETS Description | Cash or Market Value | Liabilities and Pledged Assets. List the creditor's name, address and account number for all outstanding debts, including automobile loans, revolving charge accounts, real estate loans, alimony, child support, stock pledges, etc. Use continuation sheet, if necessary. Indicate by (*) those liabilities which will be satisfied upon sale of real estate owned or upon refinancing of the subject property. | | |
|---|---|---|---|---|
| Cash deposit toward purchase held by | $ | **LIABILITIES** | Monthly Payment & Months Left to Pay | Unpaid Balance |
| *List checking and savings accounts below* | | Name and address of Company | $ Payment/Months | $ |
| Name and address of Bank, S&L, or Credit Union **Morgan Stanley** | | DISCOVER FIN POB 15316 WILMINGTON, DE 19850 | | |
| | | Acct. no. ▓ | 55 | 3,449 |
| Acct. no. 680019714010 | $ 139,895 | Name and address of Company **HUDSON UN BK P O BOX 829 UNION CITY, NJ 07087** | $ Payment/Months | $ |
| Name and address of Bank, S&L, or Credit Union **Vanguard** | | | | |
| | | Acct. no. ▓ | 15 | 260 |
| Acct. no. 9864896480 | $ 84,270 | Name and address of Company **MBNA AMERICA PO BOX 17054 WILMINGTON, DE 19884** | $ Payment/Months | $ |
| Name and address of Bank, S&L, or Credit Union **Hudson Bank** | | | | |
| | | Acct. no. ▓ | 15 | 1,335 |
| Acct. no. | $ 1,657 | Name and address of Company | $ Payment/Months | $ |
| Name and address of Bank, S&L, or Credit Union | | | | |
| Acct. no. | $ | Acct. no. | | |
| Stocks & Bonds (Company name/ number & description) **Lord Abbett Retirement** | $ 50,732 | Name and address of Company | $ Payment/Months | $ |
| | | Acct. no. | | |
| Life insurance net cash value | $ | Name and address of Company | $ Payment/Months | $ |
| Face amount: $ | | | | |
| Subtotal Liquid Assets | $ 276,555 | | | |
| Real estate owned (enter market value from schedule of real estate owned) | $ 375,000 | Acct. no. | | |
| Vested interest in retirement fund | $ | Name and address of Company | $ Payment/Months | $ |
| Net worth of business(es) owned (attach financial statement) | $ | | | |
| Automobiles owned (make and year) | $ | Acct. no. | | |
| | | Alimony/Child Support/Separate Maintenance Payments Owed to: | $ | |
| Other Assets (itemize) | $ | | | |
| | | Job Related Expense (child care, union dues, etc.) | $ | |
| | | Total Monthly Payments | $ 85 | |
| Total Assets a. | $ 651,555 | Net Worth (a minus b) => $ 646,511 | Total Liabilities b. | $ 5,044 |

Freddie Mac Form 65   01/04
Calyx Form 1003 Loanapp2.frm 01/04

Page 2 of 4

Borrower *EZ*
Co-Borrower *RL*

Fannie Mae Form 1003   01/04

## VI. ASSETS AND LIABILITIES (cont.)

Schedule of Real Estate Owned (if additional properties are owned, use continuation sheet)

| Property Address (enter S if sold, PS if pending sale or R if rental being held for income) | Type of Property | Present Market Value | Amount of Mortgages & Liens | Gross Rental Income | Mortgage Payments | Insurance, Maintenance, Taxes & Misc. | Net Rental Income |
|---|---|---|---|---|---|---|---|
| 5012 Church Rd Mt Laurel NJ | SFR | $ 375,000 | $ 0 | $ 0 | $ 0 | $ 444 | $ |
| | | | | | | | |
| | | | | | | | |
| | Totals | $ 375,000 | $ | $ | $ | $ 444 | $ |

List any additional names under which credit has previously been received and indicate appropriate creditor name(s) and account number(s):

| Alternate Name | Creditor Name | Account Number |
|---|---|---|
| | | |

## VII. DETAILS OF TRANSACTION

| | |
|---|---|
| a. Purchase price | $ 192,295.00 |
| b. Alterations, improvements, repairs | |
| c. Land (if acquired separately) | |
| d. Refinance (incl. debts to be paid off) | |
| e. Estimated prepaid items | |
| f. Estimated closing costs | 7,048.53 |
| g. PMI, MIP, Funding Fee | |
| h. Discount (if Borrower will pay) | 1,899.00 |
| i. Total costs (add items a through h) | 201,242.53 |
| j. Subordinate financing | |
| k. Borrower's closing costs paid by Seller | 4,000.00 |
| l. Other Credits (explain) **Cash Deposit on sales contract** | |
| m. Loan amount (exclude PMI, MIP, Funding Fee financed) | 189,900.00 |
| n. PMI, MIP, Funding Fee financed | |
| o. Loan amount (add m & n) | 189,900.00 |
| p. Cash from/to Borrower (subtract j, k, l & o from i) | 7,342.53 |

## VIII. DECLARATIONS

If you answer "yes" to any questions a through i, please use continuation sheet for explanation.

| | Borrower | | Co-Borrower | |
|---|---|---|---|---|
| | Yes | No | Yes | No |
| a. Are there any outstanding judgments against you? | ☐ | ☑ | ☐ | ☐ |
| b. Have you been declared bankrupt within the past 7 years? | ☐ | ☑ | ☐ | ☐ |
| c. Have you had property foreclosed upon or given title or deed in lieu thereof in the last 7 years? | ☐ | ☑ | ☐ | ☐ |
| d. Are you a party to a lawsuit? | ☐ | ☑ | ☐ | ☐ |
| e. Have you directly or indirectly been obligated on any loan which resulted in foreclosure, transfer of title in lieu of foreclosure, or judgment? (This would include such loans as home mortgage loans, SBA loans, home improvement loans, educational loans, manufactured (mobile) home loans, any mortgage, financial obligation, bond, or loan guarantee. If "Yes," provide details, including date, name and address of Lender, FHA or VA case number, if any, and reasons for the action.) | ☐ | ☑ | ☐ | ☐ |
| f. Are you presently delinquent or in default on any Federal debt or any other loan, mortgage, financial obligation, bond, or loan guarantee? If "Yes," give details as described in the preceding question. | ☐ | ☑ | ☐ | ☐ |
| g. Are you obligated to pay alimony, child support, or separate maintenance? | ☐ | ☑ | ☐ | ☐ |
| h. Is any part of the down payment borrowed? | ☐ | ☑ | ☐ | ☐ |
| i. Are you a co-maker or endorser on a note? | ☐ | ☑ | ☐ | ☐ |
| j. Are you a U. S. citizen? | ☑ | ☐ | ☐ | ☐ |
| k. Are you a permanent resident alien? | ☐ | ☑ | ☐ | ☐ |
| l. Do you intend to occupy the property as your primary residence? If "Yes," complete question m below. | ☐ | ☑ | ☐ | ☐ |
| m. Have you had an ownership interest in a property in the last three years? | ☑ | ☐ | ☐ | ☐ |
| (1) What type of property did you own—principal residence (PR), second home (SH), or investment property (IP)? | | PR | | |
| (2) How did you hold title to the home—solely by yourself (S), jointly with your spouse (SP), or jointly with another person (O)? | | SP | | |

## IX. ACKNOWLEDGEMENT AND AGREEMENT

Each of the undersigned specifically represents to Lender and to Lender's actual or potential agents, brokers, processors, attorneys, insurers, servicers, successors and assigns and agrees and acknowledges that: (1) the information provided in this application is true and correct as of the date set forth opposite my signature and that any intentional or negligent misrepresentation of this information contained in this application may result in civil liability, including monetary damages, to any person who may suffer any loss due to reliance upon any misrepresentation that I have made on this application, or in criminal penalties including, but not limited to, fine or imprisonment or both under the provisions of Title 18, United States Code, Sec. 1001, et seq.; (2) the loan requested pursuant to this application (the "Loan") will be secured by a mortgage or deed of trust on the property described herein; (3) the property will not be used for any illegal or prohibited purpose or use; (4) all statements made in this application are made for the purpose of obtaining a residential mortgage loan; (5) the property will be occupied as indicated herein; (6) any owner or servicer of the Loan may verify or reverify any information contained in the application from any source named in this application, and Lender, its successors or assigns may retain the original and/or an electronic record of this application, even if the Loan is not approved; (7) the Lender and its agents, brokers, insurers, servicers, successors and assigns may continuously rely on the information contained in the application, and I am obligated to amend and/or supplement the information provided in this application if any of the material facts that I have represented herein should change prior to closing of the Loan; (8) in the event that my payments on the Loan become delinquent, the owner or servicer of the Loan may, in addition to any other rights and remedies that it may have relating to such delinquency, report my name and account information to one or more consumer credit reporting agencies; (9) ownership of the Loan and/or administration of the Loan account may be transferred with such notice as may be required by law; (10) neither Lender nor its agents, brokers, insurers, servicers, successors or assigns has made any representation or warranty, express or implied, to me regarding the property or the condition or value of the property; and (11) my transmission of this application as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or my facsimile transmission of this application containing a facsimile of my signature, shall be as effective, enforceable and valid as if a paper version of this application were delivered containing my original written signature.

| Borrower's Signature | Date | Co-Borrower's Signature | Date |
|---|---|---|---|
| X ██████████ | 10/11/05 | X ██████████ | 10/11/05 |

## X. INFORMATION FOR GOVERNMENT MONITORING PURPOSES

The following information is requested by the Federal Government for certain types of loans related to a dwelling in order to monitor the lender's compliance with equal credit opportunity, fair housing and home mortgage disclosure laws. You are not required to furnish this information, but are encouraged to do so. The law provides that a Lender may not discriminate neither on the basis of this information, nor on whether you choose to furnish it. If you furnish the information, please provide both ethnicity and race. For race, you may check more than one designation. If you do not furnish ethnicity, race, or sex, under Federal regulations, this lender is required to note the information on the basis of visual observation or surname. If you do not wish to furnish the information, please check the box below. (Lender must review the above material to assure that the disclosures satisfy all requirements to which the lender is subject under applicable state law for the particular type of loan applied for.)

| BORROWER ☐ I do not wish to furnish this information | CO-BORROWER ☐ I do not wish to furnish this information |
|---|---|
| **Ethnicity:** ☐ Hispanic or Latino ☐ Not Hispanic or Latino | **Ethnicity:** ☐ Hispanic or Latino ☐ Not Hispanic or Latino |
| **Race:** ☐ American Indian or Alaska Native ☐ Asian ☐ Black or African American ☐ Native Hawaiian or Other Pacific Islander ☐ White | **Race:** ☐ American Indian or Alaska Native ☐ Asian ☐ Black or African American ☐ Native Hawaiian or Other Pacific Islander ☐ White |
| **Sex:** ☐ Female ☐ Male | **Sex:** ☐ Female ☐ Male |

| To be Completed by Interviewer This application was taken by: ☐ Face-to-face interview ☐ Mail ☑ Telephone ☐ Internet | Interviewer's Name (print or type) Ziggie R Bays Interviewer's Signature Date 9/29/05 Interviewer's Phone Number (incl. area code) 239-466-4545 | Name and Address of Interviewer's Employer First Florida Bank 8931 Conference Dr Suite 2 Ft Myers, FL 33919 (P) 239-466-4545 (F) 239-466-4479 |

# TRUTH-IN-LENDING DISCLOSURE STATEMENT
(THIS IS NEITHER A CONTRACT NOR A COMMITMENT TO LEND)

| | |
|---|---|
| Applicants: **EDWARD J LAREMORE** | Prepared By: **FIRST NATIONAL MORTGAGE SOURCES** |
| Property Address: **7014 PILGRAM COURT**  **Labelle, FL 33935** | **1820 W. 6TH STREET STE. 100**  **LAWRENCE , KS  66044**  **866-261-8601** |
| Application No: | Date Prepared: **12/12/2006** |

| ANNUAL PERCENTAGE RATE | FINANCE CHARGE | AMOUNT FINANCED | TOTAL OF PAYMENTS |
|---|---|---|---|
| The cost of your credit as a yearly rate | The dollar amount the credit will cost you | The amount of credit provided to you or on your behalf | The amount you will have paid after making all payments as scheduled |
| * 7.305 % | $  * 433,085.83 | $  * 184,973.67 | $  * 618,069.50 |

☐ REQUIRED DEPOSIT: The annual percentage rate does not take into account your required deposit
PAYMENTS: Your payment schedule will be:

| Number of Payments | Amount of Payments ** | When Payments Are Due | Number of Payments | Amount of Payments ** | When Payments Are Due | Number of Payments | Amount of Payments ** | When Payments Are Due |
|---|---|---|---|---|---|---|---|---|
| | | Monthly Beginning: | | | Monthly Beginning: | | | Monthly Beginning: |
| 60 | 421.96 | 02/01/2007 | | | | | | |
| 299 | 1,572.15 | 02/01/2012 | | | | | | |
| 1 | 122,669.05 | 01/01/2037 | | | | | | |

☐ DEMAND FEATURE: This obligation has a demand feature.
☑ VARIABLE RATE FEATURE: This loan contains a variable rate feature. A variable rate disclosure has been provided earlier.

CREDIT LIFE/CREDIT DISABILITY: Credit life insurance and credit disability insurance are not required to obtain credit, and will not be provided unless you sign and agree to pay the additional cost.

| Type | Premium | Signature | |
|---|---|---|---|
| Credit Life | | I want credit life insurance. | Signature: |
| Credit Disability | | I want credit disability insurance. | Signature: |
| Credit Life and Disability | | I want credit life and disability insurance. | Signature: |

INSURANCE: The following insurance is required to obtain credit:
☐ Credit life insurance ☐ Credit disability ☑ Property insurance ☐ Flood insurance
You may obtain the insurance from anyone you want that is acceptable to creditor
☐ If you purchase ☑ property ☐ flood insurance from creditor you will pay $ _____ for a one year term.
SECURITY: You are giving a security interest in:
☐ The goods or property being purchased ☑ Real property you already own.
FILING FEES: $
LATE CHARGE: If a payment is more than  15 days late, you will be charged  5.000 % of the payment
PREPAYMENT: If you pay off early, you
☑ may ☐ will not   have to pay a penalty.
☐ may ☑ will not   be entitled to a refund of part of the finance charge.
ASSUMPTION: Someone buying your property
☐ may ☐ may, subject to conditions ☑ may not   assume the remainder of your loan on the original terms.
See your contract documents for any additional information about nonpayment, default, any required repayment in full before the scheduled date and prepayment refunds and penalties
☑ * means an estimate ☐ all dates and numerical disclosures except the late payment disclosures are estimates.
* * NOTE: The Payments shown above include reserve deposits for Mortgage Insurance (if applicable), but exclude Property Taxes and Insurance.

THE UNDERSIGNED ACKNOWLEDGES RECEIVING A COMPLETED COPY OF THIS DISCLOSURE.

| | | |
|---|---|---|
| **EDWARD J LAREMORE** _____ 12\22\06 | _____ | |
| (Applicant)    (Date) | (Applicant)    (Date) | |
| _____ | _____ | |
| (Applicant)    (Date) | (Applicant)    (Date) | |
| _____ | | |
| (Lender)    (Date) | | |

Calyx Form - til.hp (02/95)

# GOOD FAITH ESTIMATE

| Applicants: | EDWARD J LAREMORE | | | Application No: | LAREMORE_PILGRAM |
|---|---|---|---|---|---|
| Property Addr: | 7014 PILGRAM COURT, Labelle, FL 33935 | | | Date Prepared: | 12/12/2006 |
| Prepared By: | FIRST NATIONAL MORTGAGE SOURCES   Ph. 866-261-8601 | | | Loan Program: | |
| | 1820 W. 6TH  STREET STE. 100, LAWRENCE, KS  66044 | | | | |

The information provided below reflects estimates of the charges which you are likely to incur at the settlement of your loan. The fees listed are estimates-actual charges may be more or less. Your transaction may not involve a fee for every item listed. The numbers listed beside the estimates generally correspond to the numbered lines contained in the HUD-1 settlement statement which you will be receiving at settlement. The HUD-1 settlement statement will show you the actual cost for items paid at settlement.

| Total Loan Amount $ | 190,000 | Interest Rate: | 2.665 % | Term: | 480 / 360 mths | | | |
|---|---|---|---|---|---|---|---|---|
| **800** | **ITEMS PAYABLE IN CONNECTION WITH LOAN:** | | | | | **PFC** | **S** | **F** | **POC** |
| 801 | Loan Origination Fee | | | | $ | | ✓ | |
| 802 | Loan Discount | 1.000% | | | | 1,900.00 | ✓ | |
| 803 | Appraisal Fee | | | | | (350.00) | | ✓ |
| 804 | Credit Report | | | | | 18.75 | | |
| 805 | Lender's Inspection Fee | | | | | | ✓ | |
| 808 | Mortgage Broker Fee | + $ | 850.00 | | | 850.00 | ✓ | |
| 809 | Tax Related Service Fee | | | | | 101.00 | ✓ | |
| 810 | Processing Fee | | | | | 525.00 | ✓ | |
| 811 | Underwriting Fee | | | | | 375.00 | ✓ | |
| 812 | Wire Transfer Fee | | | | | | ✓ | |
| | Application Fee | | | | | 350.00 | ✓ | |
| | Flood Certification | | | | | 25.00 | ✓ | |
| | Courier Fees | | | | | 25.00 | ✓ | |
| | MERS | | | | | 5.00 | ✓ | |
| | Commitment Fee | | | | | | ✓ | |
| | Lock Fee | | | | | | ✓ | |
| | Wire Transfer Fees | | | | | | ✓ | |
| **1100** | **TITLE CHARGES:** | | | | | **PFC** | **S** | **F** | **POC** |
| 1101 | Closing  or  Escrow  Fee: | | | | $ | 300.00 | ✓ | |
| 1105 | Document Preparation Fee | | | | | | | |
| 1106 | Notary Fees | | | | | 25.00 | | |
| 1107 | Attorney Fees | | | | | 500.00 | ✓ | |
| 1108 | Title Insurance: | | | | | 1,200.00 | | |
| | Survey, CPL, Tax Cert. | | | | | 150.00 | | |
| **1200** | **GOVERNMENT RECORDING  &  TRANSFER  CHARGES:** | | | | | **PFC** | **S** | **F** | **POC** |
| 1201 | Recording Fees: | | | | $ | 150.00 | | |
| 1202 | City/County Tax/Stamps: | | | | | | | |
| 1203 | State Tax/Stamps: | | | | | | | |
| **1300** | **ADDITIONAL SETTLEMENT CHARGES:** | | | | | **PFC** | **S** | **F** | **POC** |
| 1302 | Pest Inspection | | | | $ | | | |
| | | | | **Estimated Closing Costs** | | 6,499.75 | | |
| **900** | **ITEMS REQUIRED  BY LENDER  TO  BE PAID IN ADVANCE:** | | | | | **PFC** | **S** | **F** | **POC** |
| 901 | Interest for | 5 | days @ $ | 14.0653 | per day | $ | 70.33 | ✓ | |
| 902 | Mortgage Insurance Premium | | | | | | ✓ | |
| 903 | Hazard Insurance Premium | | | | | | | |
| 904 | | | | | | | | |
| 905 | VA Funding Fee | | | | | | | |
| **1000** | **RESERVES  DEPOSITED  WITH  LENDER:** | | | | | **PFC** | **S** | **F** | **POC** |
| 1001 | Hazard Insurance Premium | | 2 months @ $ | 37.00 | per month | $ | 74.00 | | |
| 1002 | Mortgage Ins. Premium Reserves | | months @ $ | | per month | | | ✓ | |
| 1003 | School Tax | | months @ $ | | per month | | | | |
| 1004 | Taxes and Assessment Reserves | | 2 months @ $ | 188.00 | per month | | 376.00 | | |
| 1005 | Flood Insurance Reserves | | months @ $ | | per month | | | | |
| | | | months @ $ | | per month | | | | |
| | | | months @ $ | | per month | | | | |
| | | | | **Estimated Prepaid Items/Reserves** | | 520.33 | | |
| | **TOTAL  ESTIMATED  SETTLEMENT  CHARGES** | | | | | 7,020.08 | | |
| | **COMPENSATION TO BROKER**   (Not  Paid  Out  of  Loan  Proceeds): | | | | $ | | | |
| | Broker may receive 0-3% yield spread premium at | | | | | | | |
| | settlement from lender | | | | | | | |

| **TOTAL ESTIMATED FUNDS NEEDED TO CLOSE:** | | | | **TOTAL ESTIMATED MONTHLY PAYMENT:** | |
|---|---|---|---|---|---|
| Purchase Price/Payoff (+) | 181,248.00 | New First Mortgage(-) | | Principal & Interest | 421.96 |
| Loan Amount (-) | 190,000.00 | Sub Financing(-) | | Other Financing (P & I) | |
| Est. Closing Costs (+) | 6,499.75 | New 2nd Mtg Closing Costs(+) | | Hazard Insurance | 37.00 |
| Est. Prepaid Items/Reserves (+) | 520.33 | | | Real Estate Taxes | 188.00 |
| Amount Paid by Seller (-) | | | | Mortgage Insurance | |
| | | | | Homeowner Assn. Dues | |
| | | | | Other | |
| **Total Est. Funds to you** | | | 1,731.92 | **Total Monthly Payment** | 646.96 |

☑ This Good Faith Estimate is being provided by   **FIRST NATIONAL MORTGAGE SOURCES**                        , a mortgage broker, and no lender has been obtained.   These estimates are provided pursuant to the Real Estate Settlement Procedures Act of 1974, as amended (RESPA). Additional information can be found in the HUD Special Information Booklet, which is to be provided to you by your mortgage broker or lender, if your application is to purchase residential real property and the lender will take a first lien on the property. The undersigned acknowledges receipt of the booklet "Settlement Costs,"  and if applicable the Consumer Handbook on ARM Mortgages.

Applicant   **EDWARD J LAREMORE** _____   12/22/06 _____   Applicant _____   Date _____

Calyx Form gfe.frm 11/01

# The Construction Contract



THE ANGWOO

*Renderings are artist concepts, sizes and sq. footage approximate.*
*Refer to building plans and specifications for exact details!*

**ON YOUR LOT!!!!!**

# Overall Specifications

❖ Land preparation included**
❖ All building permits, engineering, fill,
   lot clearing, driveway and walkways**
❖ Bahia sod and standard landscape package
❖ Builders Risk Insurance

# Architectural Features

❖ Steel reinforced concrete block construction
❖ Steel reinforced concrete slab and footing
❖ Hurricane straps and new code compliance
❖ Engineered roof trusses
❖ Protective soil treatment

# Electrical Features

❖ Prewire for (2) TV and (2) telephone outlets
❖ 200 amp electrical service
❖ Braced and switched fan outlets as per plans
❖ Decorative rocker switches
❖ Smoke detectors as per code requirements
❖ Quick recovery 40 gallon water heater
❖ High efficiency heat and air conditioning with
   insulated duct system determined through
   engineered energy calculations
❖ Builders lighting package as per plans

# Exterior Features

❖ 25 year fungus resistant dimensional shingles
❖ Maintenance free vinyl soffit and aluminum fascia
❖ Antique brass door lever with dead bolt at
   front entry
❖ Metal garage door with opener and 2 remotes
❖ Two (2) exterior hose bibs - see plan for location
❖ Insulated metal front entry door
❖ Front door chime
❖ Volume ceilings (where indicated on plan)
❖ White aluminum windows with weather sealed
   glass including screens
❖ 800 sq. ft. concrete driveway and walkway
❖ Front elevations fully guttered and as required
   per code

# Custom Interior Features

❖ All walk-in closets are air-conditioned
❖ Interior studs 16" on center
❖ Colonial 6-panel interior doors
❖ Sliding glass doors with tempered safety glass
❖ Ventilated shelving in all closets
❖ Tile flooring as indicated on individual plans
❖ Plush carpeting in other main living areas
❖ Ceramic tile tub and shower surrounds
❖ Finished garage interior
❖ Decorative finished window sills
❖ Textured interior walls, smooth in kitchen and baths

**Kenwood Homes**

825 E. Cowboy Way, Unit 101, LaBelle, FL 33935 • Phone 863-612-0070 • Fax 863-612-0080



* _____
  BORROWER

* _____
  BUILDER



Angwood

## A CUSTOM RESIDENCE FOR:

### BY: KENWOOD HOMES, INC.







A CUSTOM RESIDENCE FOR:

SHEET 4

BY: KENWOOD HOMES, INC.



* BORRALES

* BENDER

*Angwood*

# Description of Materials

U.S. Department of Housing
and Urban Development
Department of Veterans Affairs
Farmers Home Administration

HUD's OMB Approval No. 2502-0192 (exp. 04/30/2004)
and 2502-0313 (exp. 01/31/2006)

Public reporting burden for this collection of information is estimated to average 30 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. This agency may not collect this information, and you are not required to complete this form, unless it displays a currently valid OMB control number.
The National Housing Act (12 USC 1703) authorizes insuring financial institutions against default losses on single family mortgages. HUD must evaluate the acceptability and value of properties to be insured. The information collected here will be used to determine if proposed construction meets regulatory requirements and if the property is suitable for mortgage insurance. Response to this information collection is mandatory. No assurance of confidentiality is provided.

[X] Proposed Construction   [ ] Under Construction     No. _____ (To be inserted by HUD, VA or FmHA)
Property address (include City and State)

| Name and address of Mortgagor or Sponsor | Name and address of Contractor or Builder |
|---|---|
| | K.A. WALLACE dba KENWOOD HOMES<br>5810 DIVISION DRIVE<br>FORT MYERS, FL 33905     239-693-6040 |

### Instructions

1. For additional information on how this form is to be submitted, number of copies, etc., see the instructions applicable to the HUD Application for Mortgage Insurance, VA Request for Determination of Reasonable Value, or FmHA Property Information and Appraisal Report, as the case may be.
2. Describe all materials and equipment to be used, whether or not shown on the drawings, by marking an X in each appropriate check-box and entering the information called for each space. If space is inadequate, enter "See misc." and describe under item 27 or on an attached sheet. The use of paint containing more than the percentage of lead by weight permitted by law is prohibited.
3. Work not specifically described or shown will not be considered unless required, then the minimum acceptable will be assumed. Work exceeding minimum requirements cannot be considered unless specifically described.
4. Include no alternates, "or equal" phrases, or contradictory items. (Consideration of a request for acceptance of substitute materials or equipment is not thereby precluded.)
5. Include signatures required at the end of this form.
6. The construction shall be completed in compliance with the related drawings and specifications, as amended during processing. The specifications include this Description of Materials and the applicable Minimum Property Standards.

1. **Excavation**
   Bearing soil, type   clean and compacted fill, soil - compacted to minimum 95% density

2. **Foundations**
   Footings concrete mix  Ready mix                         strength psi  2500        Reinforcing  2 - #5 rebar steel
                                                                                       Reinforcing  1 - #5 rebar steel
   Foundation wall material  8" x 16" CMU
   Interior foundation wall material  n/a                   Party foundation wall  na/
   Columns material and sizes  n/a                          Piers material and reinforcing  n/a
   Girders material and sizes  n/a                          Sills material  concrete
   Basement entrance areaway  n/a                           Window areaways  n/a
   Waterproofing  Visqueen 6 mill                           Footing drains  n/a
   Termite protection  Soil treatment uing 5% Chlorpyrilos
   Basementless space ground cover  n/a          insulation  n/a          foundation vents  n/a
   Special foundations  n/a
   Additional information

3. **Chimneys**
   Material  n/a                          Prefabricated (make and size)  n/a
   Flue lining material  n/a              Heater flue size  n/a              Fireplace flue size  n/a
   Vents (material and size) gas or oil heater  n/a                         water heater  n/a
   Additional information

4. **Fireplaces**
   Type [ ] solid fuel  [ ] gas-burning  [ ] circulator (make and size)  n/a          Ash dump and clean-out  n/a
   Fireplace facing  n/a          lining  n/a          hearth  n/a          mantel  n/a
   Additional information

_____ d for three

ref. HUD Handbook 4145.1 & 4950.1  form HUD-92005 (10/84)
VA Form 26-1852 and form FmHA 424-2

X ▬▬▬▬▬▬▬  BORROWER

X _____  BUILDER

5. **Exterior Walls**
Wood frame wood grade, and species n/a
   Sheathing n/a   thickness _____ width _____ ☐ solid ☐ spaced _____ o.c. ☐ diagonal _____   ☐ Corner bracing Building paper or felt n/a
   Siding n/a   grade _____ type _____ size _____ exposure _____ fastening _____
   Shingles n/a   grade _____ type _____ size _____ exposure _____ fastening _____
   Stucco n/a   thickness _____ Lath _____ weight _____ lb.
   Masonry veneer 5/8" thick   Sills _____ Lintels continuous _____ Base flashing _____
Masonry ☐ solid ☐ faced ☒ stuccoed total wall thickness 8 1/2"   facing thickness 5/8"   facing material masonry
Backup material _____ thickness _____ bonding _____
Door sills concrete   Window sills concrete   Lintels concrete   Base flashing _____
Interior surfaces dampproofing, _____ coats of _____ furring 1x2 pressure treated
Additional Information _____
Exterior painting material exterior latex paint   number of coats 2
Gable wall construction ☐ same as main walls ☒ other construction wood frame

6. **Floor Framing**
Joists wood, grade, and species _____ other _____ bridging _____ anchors _____
Concrete slab ☐ basement floor ☐ first floor ☐ ground supported ☒ self-supporting mix ready mix 2500 psi   thickness 4"
   reinforcing fiber mesh   insulation _____ membrane _____
Fill under slab material clean compacted fill   thickness varies
Additional Information compacted to local code 95%

7. **Subflooring** (Describe underflooring for special floors under item 21)
Material grade and species none
Laid ☐ first floor ☐ second floor ☐ attic _____ sq. ft. ☐ diagonal ☐ right angles _____ size _____ type _____
Additional information

8. **Finish Flooring** (Wood only. Describe other finish flooring under item 21)

| Location | Rooms | Grade | Species | Thickness | Width | Bldg. Paper | Finish |
|---|---|---|---|---|---|---|---|
| First floor | n/a | | | | | | |
| Second floor | n/a | | | | | | |
| Attic floor | n/a | sq. ft. | | | | | |

Additional Information

9. **Partition Framing**
Studs wood, grade, and species 3 1/2" Wood   size and spacing 16" on center   Other _____
Additional information

10. **Ceiling Framing**
Joists wood, grade, and species Southern yellow pine   Other _____ Bridging _____
Additional information All trusses per engineering - bottom cord will be ceiling

11. **Roof Framing**
Rafters wood, grade, and species _____ Roof trusses (see detail) grade and species _____
Additional information

12. **Roofing**
Sheathing wood, grade, and species 15/32" oriented strand board   ☒ solid ☐ spaced _____ o.c.
Roofing fiberglass shingles   grade 25 year   size _____ type dimensional - self sealing
Underlay asphalt felt   weight or thickness 15#   size _____ fastening simplex
Built-up roofing n/a   number of plies _____ surfacing material _____
Flashing material aluminum   gage or weight _____ ☐ gravel stops. ☐ snow guards
Additional Information Optional metal roofs - 26 gauge - 30# felt - fastening screws

☓ _____ BORROWER

☓ _____ BUILDER

**13. Gutters and Downspouts**

Gutters material __aluminum__ gage or weight __.024__ size __5"__ shape __roll form house gutter__

Downspouts material __aluminum__ gage or weight __0.24__ size __2x3__ shape ____ number ____

Downspouts connected to ☐ Storm sewer ☐ sanitary sewer ☐ dry-well ☐ Splash blocks material and size ____

Additional information ____

**14. Lath and Plaster**

Lath ☐ walls ☐ ceilings material ____ weight or thickness ____ Plaster coats ____ finish ____

Dry-wall ☒ walls ☒ ceilings material __gypsum__ thickness __1/2"__ finish __skip trowel__

Joint treatment __drywall tap and joint compound - smooth walls in kitchen, bath and laundry__

**15. Decorating (Paint, wallpaper, etc.)**

| Rooms | Wall Finish Material and Application | Ceiling Finish Material and Application |
|---|---|---|
| Kitchen | interior latex paint | interior latex paint |
| Bath | interior latex paint | interior latex paint |
| Other | interior latex paint | interior latex paint |

Additional information ____

**16. Interior Doors and Trim**

Doors type __hollow core colonist doors__ material __masonita hardboard__ thickness __1 3/8"__

Door trim type __colonial__ material __spruce FJ__ Base type __colonial__ material __spruce FJ__ size __3 1/4"__

Finish doors __latex semi-gloss paint__ trim ____

Other trim (item, type and location) ____

Additional information ____

**17. Windows**

Windows type __single hung__ make __ESP__ material __aluminum__ sash thickness ____

Glass grade __tinted__ ☐ sash weights ☐ balances, type ____ head flashing ____

Trim type ____ material ____ Paint ____ number coats ____

Weatherstripping type __bulb__ material __rubber__ Storm sash, number ____

Screens ☐ full ☒ half type __aluminum frame__ number __1 per__ screen cloth material __fiberglass__

Basement window type __n/a__ material __n/a__ screens, number ____ Storm sash, number ____

Special windows __safety glass where required by code__

Additional information ____

**18. Entrances and Exterior Detail**

Main entrance door material __steel__ width __36"__ thickness __1 3/8"__ Frame material __pine__ thickness ____

Other entrance doors material __steel__ width __32"__ thickness __1 3/8"__ Frame material __pine__ thickness ____

Head flashing ____ Weatherstripping type __vinyl - bulf__ saddles ____

Screen doors thickness ____ number ____ screen cloth material ____ Storm doors thickness ____ number ____

Combination storm and screen doors thickness ____ number ____ screen cloth material ____

Shutters ☐ hinged ☒ fixed Railings __aluminum__ Attic louvers ____

Exterior millwork grade and species ____ Paint ____ number coats ____

Additional information __sliding glass doors as per plan__

**19. Cabinets and Interior Detail**

Kitchen cabinets, wall units material __laminated mica over 5/8" particle board__ lineal feet of shelves ____ shelf width __per plan__

Base units material __same__ counter top __same__ edging __mica__

Back and end splash __same__ Finish of cabinets __mica__ number coats ____

Medicine cabinets make __2 bevel mirrored__ model ____

Other cabinets and built-in furniture ____

Additional information ____

_ref. HUD ... ... ... ... ... ... ... form HUD- 2005 (10/84)_

Page ____

✱ ____ BORROWER

✱ ____ BUILDER

20. Stairs

*Jesswood + Chriswood*
*Kingswood*

| Stair | Treads | | Risers | | Strings | | Handrail | | Balusters | |
|---|---|---|---|---|---|---|---|---|---|---|
| | Material | Thickness | Material | Thickness | Material | Size | Material | Size | Material | Size |
| Basement | n/a | | | | | | | | | |
| Main | n/a | | | | | | | | | |
| Attic | | | | | | | | | | |

Disappearing make and model number _____
Additional information _____

21. Special Floors and Wainscot (Describe Carpet as listed in Certified Products Directory)

| | Location | Material, Color, Border, Sizes, Gage, Etc. | Threshold Material | Wall Base Material | Underfloor Material |
|---|---|---|---|---|---|
| Floors | Kitchen | tile | n/a | wood | fabric |
| | Bath | tile | n/a | wood | fabric |

| | Location | Material, Color, Border, Cap, Sizes, Gage, Etc. | Height | Height Over Tub | Height in Shower (From Floor) |
|---|---|---|---|---|---|
| Wainscot | Bath | fiberglass tub/shower w/ tile walls or tile shower - per plans | | | |

Additional information _____

22. Plumbing

| Fixture | Number | Location | Make | MFR's Fixture Identification No. | Size | Color |
|---|---|---|---|---|---|---|
| Sink | 1 | kitchen | moen | camelot 22217 - stainless steel | 33x22 | stainless |
| Lavatory | 3 | baths | Thermocast | W1919-R | 19" round | white |
| Water closet | 2 | baths | American Standard | 2399.012 | | white |
| Bathtub | 1 | master bath | Lasco | 6042-H | standard | white |
| Shower over tub | 1 | guest bath | Lasco | 6042-H | 60x42 | white |
| Stall shower | 1 | master bath | Lasco | 2600-30 | 60x30 | white |
| Laundry trays | | | Tile | standard wall tile | 4x4 | white |
| water closet seat | 2 | bath | Bemis 1200 slow | 1200 SLOW | | |

Bathroom accessories    ☐ Recessed material _____    number _____    ☐ Attached material _____    number _____
Additional information _____

☐ Curtain rod    ☐ Door    ☐ Shower pan material  recessed slab    * (Show and describe individual system in complete detail in separate
Water supply  ☐ public   ☐ community system   ☐ individual (private) system*    drawings and specifications according to requirements.)
Sewage disposal  ☐ public   ☐ community system   ☐ individual (private) system*
House drain (inside)  ☐ cast iron   ☐ tile   ☒ other PVC    House sewer (outside)  ☐ cast iron   ☐ tile   ☒ other pvc
Water piping  ☐ galvanized steel   ☐ copper tubing   ☒ other polybutaline and copper    Sill cocks, number  2
Domestic water heater type  electric    make and model SE Tall    heating capacity _____ gph. 100° rise.
Storage tank material _____    capacity  40  gallons
Gas service  ☐ utility company   ☐ liq. pet. gas   ☐ other _____    Gas piping  ☐ cooking   ☐ house heating
Footing drains connected to  ☐ storm sewer   ☐ sanitary sewer   ☐ dry well   ☐ Sump pump make and model _____
capacity _____    discharges into _____
Additional information _____

BUILDER

23. **Heating**

[ ] Hot water  [ ] Steam  [ ] Vapor  [ ] One-pipe system  [ ] Two-pipe system
[ ] Radiators  [ ] Convectors  [ ] Baseboard radiation   Make and model _____
[ ] Radiant panel  [ ] floor  [ ] wall  [ ] ceiling   Panel coil material _____
[ ] Circulator  [ ] Return pump Make and model _____   capacity _____ gpm.
Boiler make and model _____   Output _____ Btuh. net rating _____ Btuh.
Additional information _____

Warm air  [ ] Gravity  [x] Forced   Type of system _____
Duct material supply flex duct _____   return ridged/flex _____   Insulation fiberglass ___ thickness ___ [ ] Outside air intake
Furnace; make and model Rheem _____   Input _____ Btuh. output _____ Btuh.
Additional information _____

[ ] Space heater  [ ] floor furnace  [ ] wall heater Input _____ Btuh. output _____ Btuh. number units _____
Make, model _____
Additional information _____

Controls make and types white mercury thermostat _____
Additional information _____

Fuel:  [ ] Coal  [ ] oil  [ ] gas  [ ] liq. pet. gas  [x] electric  [ ] other _____   storage capacity _____
Additional information _____

Firing equipment furnished separately [ ] Gas burner, conversion type [ ] Stoker hopper feed [ ] bin feed
Oil burner [ ] pressure atomizing [ ] vaporizing _____
Make and model _____

Control _____
Additional information _____

Electric heating system type heatstrip _____   Input _____ watts @ 220 volts output _____ Btuh.
Additional information _____

Ventilating equipment [ ] attic fan, make and model n/a _____   capacity _____ cfm.
                      [ ] kitchen exhaust fan, make and model _____
Other heating, ventilating, or cooling equipment _____
Additional information _____

24. **Electric Wiring**

Service  [x] overhead  [ ] underground  Panel  [ ] fuse box  [x] circuit-breaker  make Square D   AMP's 200   No. circuits ___
Wiring  [ ] conduit  [ ] armored cable  [ ] nonmetallic cable  [ ] knob and tube  [x] other Romex
Special outlets  [x] range  [ ] water heater  [x] other heating and a/c sub panels
[x] Doorbell  [x] Chimes  [ ] Push-button locations _____
Additional information _____

25. **Lighting Fixtures**

Total number of fixtures per plan _____   Total allowance for fixtures, typical installation, $ per builder package
Nontypical installation _____
Additional information _____

ref. HUD Handbook ____   HUD-92005 (10/84)
nd form FmHA ____

X [BORROWER - redacted]

X _____
  BUILDER

*Well.*

**26. Insulation**

| Location | Thickness | Material, Type, and Method of Installation | Vapor Barrier |
|---|---|---|---|
| Roof | | | |
| Ceiling | R-30 | Fiberglass batts R-30 | |
| Wall | | R-5 on 1x2 furring strips | |
| Floor | | | |
| Framed | 3 1/2" | Fiberglass R-11  garage to living | |

**27. Miscellaneous:** (Describe any main dwelling materials, equipment, or construction items not shown elsewhere; or use to provide additional information where the space provided was inadequate. Always reference by item number to correspond to numbering used on this form.)

Well Equipment: Pump - 1 HP submersible Well Mate WM-6, 2 pressure tanks, 200 gallon water aerator, pump 1/2 HP submersible, Filter/softener 24,000 grain filter

**Hardware** (make, material, and finish.)

Lido, Antique Brass, Levers

**Special Equipment** (State material or make, model and quantity. Include only equipment and appliances which are acceptable by local law, custom and applicable FHA standards. Do not include items which, by established custom, are supplied by occupant and removed when he vacates premises or chattles prohibited by law from becoming realty.)

**Porches**

Front porch as per plans

**Terraces**

n/a

**Garages**

as per plans

**Walks and Driveways**

Driveway width 16'   base material clean compacted  thickness _____   surfacing material concrete  thickness 3 1/2"

Front walk width 3' - if req'  material concrete  thickness 3 1/2"  Service walk width _____  material _____  thickness _____

Steps material _____  treads _____  risers _____  Cheek walls _____  thickness _____

**Other Onsite Improvements**

(Specify all exterior onsite improvements not described elsewhere, including items such as unusual grading, drainage structures, retaining walls, fence, railings, and accessory structures.)

**Landscaping, Planting, and Finish Grading**

Topsoil _____ thick  ☐ front yard  ☐ side yards  ☐ rear yard to _____

Lawns (seeded, sodded, or sprigged)  ☒ front yard  sod  ☒ side yards  sod  ☒ rear yard  8000 sq ft total  feet behind main building

Planting  ☐ as specified and shown on drawings  ☒ as follows:

| | | | |
|---|---|---|---|
| 2  Shade trees deciduous  3  caliper | | | |
| _____ Low flowering trees deciduous | _____ to _____ | Evergreen trees _____ to _____ | B & B |
| _____ High-growing shrubs deciduous | _____ to _____ | Evergreen shrubs _____ to _____ | B & B |
| _____ Medium-growing shrubs deciduous | _____ to _____ | Vines, 2-year _____ | |
| 12  Low-growing shrubs deciduous | 1/2  to  1 | Other _____ | |

**Identification**—This exhibit shall be identified by the signature of the builder, or sponsor, and/or the proposed mortgagor if the latter is known at the time of application.

Date (mm/dd/yyyy)  10/11/05   Signature →  ▮▮▮▮▮▮▮

Signature →  Builder

ref. HUD Handbook ‥    form HUD-92005 (10/84)
.52 and form FmHA 424-2

*No Well*

26. **Insulation**

| Location | Thickness | Material, Type, and Method of Installation | | Vapor Barrier |
|---|---|---|---|---|
| Roof | | | | |
| Ceiling | R-30 | Fiberglass batts R-30 | | |
| Wall | | R-5 on 1x2 furring strips | | |
| Floor | | | | |
| Framed | 3 1/2" | Fiberglass R-11 garage to living | | |

27. **Miscellaneous:** (Describe any main dwelling materials, equipment, or construction items not shown elsewhere; or use to provide additional information where the space provided was inadequate. Always reference by item number to correspond to numbering used on this form.)

Hardware (make, material, and finish.)

Lido, Antique Brass, Levers

**Special Equipment** (State material or make, model and quantity. Include only equipment and appliances which are acceptable by local law, custom and applicable FHA standards. Do not include items which, by established custom, are supplied by occupant and removed when he vacates premises or chattles prohibited by law from becoming realty.)

**Porches**

Front porch as per plans

**Terraces**

n/a

**Garages**

as per plans

**Walks and Driveways**

Driveway width 16'    base material clean compacted  thickness _____  surfacing material concrete _____  thickness 3 1/2"
Front walk width 3' - if req'  material concrete    thickness 3 1/2"  Service walk width _____  material _____  thickness _____
Steps material _____    treads _____  risers _____  Cheek walls _____

**Other Onsite Improvements**
(Specify all exterior onsite improvements not described elsewhere, including items such as unusual grading, drainage structures, retaining walls, fence, railings, and accessory structures.)

**Landscaping, Planting, and Finish Grading**

Topsoil _____ thick  [ ] front yard  [ ] side yards  [ ] rear yard to _____  feet behind main building
Lawns (seeded, sodded, or sprigged)  [x] front yard  sod  [x] side yards  sod  [x] rear yard  8000 sq ft total
Planting  [ ] as specified and shown on drawings  [x] as follows:

| | | | | | |
|---|---|---|---|---|---|
| 2 Shade trees deciduous | 3 caliper | | Evergreen trees | to | B & B |
| ___ Low flowering trees deciduous | ___ to ___ | | Evergreen shrubs | to | B & B |
| ___ High-growing shrubs deciduous | ___ to ___ | | Vines, 2-year | | |
| ___ Medium-growing shrubs deciduous | ___ to ___ | Other | | | |
| 12 Low-growing shrubs deciduous | 1/2 to 1 | | | | |

**Identification**—This exhibit shall be identified by the signature of the builder, or sponsor, and/or the proposed mortgagor if the latter is known at the time of application.

Date (mm/dd/yyyy)  (03/11/05)    Signature X ▮▮▮▮▮▮▮▮▮▮  *[signature]*
                                                BORROWER

Signature X _____
                                BUILDER

STANDARD PERCENTAGE DRAW SCHEDULE

|  | | |
|---|---|---|
| OWNERS: | |
| ADDRESS: | |
| LENDER: FIRST FLORIDA BANK | |
| HERITAGE INSPECTION SERVICES | |

| | ITEMS COMPLETED | PERCE | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | Permits | 6 | | | | | | | | | | | |
| 2 | Clearing/Grading/Fill/Site Prep | 3 | | | | | | | | | | | |
| 3 | Footings, Underground Plumbing | 5 | | | | | | | | | | | |
| 4 | Foundation/Slab poured | 6 | | | | | | | | | | | |
| 5 | Exterior Walls/Tie Beam | 6 | | | | | | | | | | | |
| 6 | Roof Trusses | 6 | | | | | | | | | | | |
| 7 | Roof Sheathing/Felt | 4 | | | | | | | | | | | |
| 8 | Interior Framing complete | 5 | | | | | | | | | | | |
| 9 | Windows/Exterior Door Frames set | 4 | | | | | | | | | | | |
| 10 | 2nd Plumbing/Tub Set | 2 | | | | | | | | | | | |
| 11 | Electric Rough-In | 4 | | | | | | | | | | | |
| 12 | HVAC-Ducts installed | 2 | | | | | | | | | | | |
| 13 | Roof Shingles/Tiles installed | 4 | | | | | | | | | | | |
| 14 | Insulation (wall & ceiling) | 2 | | | | | | | | | | | |
| 15 | Exterior Trim-Sofits | 3 | | | | | | | | | | | |
| 16 | Drywall Hung | 4 | | | | | | | | | | | |
| 17 | Drywall Finish | 3 | | | | | | | | | | | |
| 18 | Interior Trim/Interior Doors installed | 4 | | | | | | | | | | | |
| 19 | Interior Paint | 3 | | | | | | | | | | | |
| 20 | Siding/Stucco | 4 | | | | | | | | | | | |
| 21 | Exterior Paint complete | 3 | | | | | | | | | | | |
| 22 | Exterior doors & garage door installe | 2 | | | | | | | | | | | |
| 23 | Cabinets/countertops installed | 3 | | | | | | | | | | | |
| 24 | Plumbing finished | 1 | | | | | | | | | | | |
| 25 | Electric Finished | 1 | | | | | | | | | | | |
| 26 | Finish Flooring - Carpet/Vinyl/Tile | 2 | | | | | | | | | | | |
| 27 | Appliances Installed | 2 | | | | | | | | | | | |
| 28 | HVAC-Compressor/Air Handler insta | 3 | | | | | | | | | | | |
| 29 | Driveway/Walks installed | 1 | | | | | | | | | | | |
| 30 | Landscaping/Irrigation | 2 | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | 100 | | | | | | | | | | | |
| | Total Approved Per Draw | | | | | | | | | | | | |
| | Total to Date | | | | | | | | | | | | |
| | Date of Inspection | | | | | | | | | | | | |
| | Inspector's Initials | | | | | | | | | | | | |
| | Inspection Fee | | | | | | | | | | | | |

| | With Pool Amount | PERCE | 1 | 2 | 3 | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | Gunite | 33 | | | | | | | | | | | |
| 2 | Tile/Deck | 33 | | | | | | | | | | | |
| 3 | Enclosure/Finish | 34 | | | | | | | | | | | |
| | Total | | | | | | | | | | | | |

This is a progress inspection and does not encompss: local codes, workmanship, quality or installation of materials, design, layout, specifications or engineering. The Lender is responsible for accuracy of assigned percentages above

BORROWER  X _Edward Farmer_

BORROWER  X _____

BUILDER      X _____

| Principal | Loan Date | Maturity | Loan No | Call | Collateral | Account | Officer | Initials |
|-----------|-----------|----------|---------|------|-----------|---------|---------|----------|
| $ 189,900.00 | 10/11/05 | 10/11/06 | | | | | | |

References in the shaded area are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing ****** has been omitted due to text length limitations.

**BORROWER:** Edward Laremore

5012 Church Rd
Mount Laurel, NEW JERSEY 08054

**LENDER: FIRST FLORIDA BANK**

8931 CONFERENCE DRIVE, UNIT 2
FORT MYERS, FLORIDA 33919
239-466-4545

**THIS CONSTRUCTION LOAN AGREEMENT** dated **October 11, 2005**
Edward Laremore

is made and executed between

("Borrower") and **FIRST FLORIDA BANK** ("Lender") on the following terms and conditions. Borrower has applied to Lender for one or more loans for purposes of constructing the Improvements on the Real Property described below. Lender is willing to lend the loan amount to Borrower solely under the terms and conditions specified in this Agreement and in the Related Documents, to each of which Borrower agrees. Borrower understands and agrees that: (A) in granting, renewing, or extending any Loan, Lender is relying upon Borrower's representations, warranties, and agreements as set forth in this Agreement, and (B) all such Loans shall be and remain subject to the terms and conditions of this Agreement.

## RIDER TO CONTRUCTION LOAN AGREEMENT

This Rider to Construction Loan Agreement is made and entered into this **11th** day of **October, 2005** , and is incorporated into and shall be deemed to amend and supplement the Construction Loan Agreement, of even date herewith, to which this Rider is attached (hereafter referred to as the "Loan Agreement"), executed by the undersigned (hereafter referred to as "Borrower"), and First Florida Bank, a Florida chartered commercial bank (hereafter referred to as "Lender").

In addition to the Loan Agreement, Borrower executed and delivered to Lender a certain Promissory Note, of even date herewith (hereafter referred to as the "Promissory Note"), which Promissory Note evidences an indebtedness in the original principal amount of U.S. $ **189,900.00** (hereafter referred to as the "Principal Amount), and a certain Mortgage, of even date herewith (hereafter referred to as the "Mortgage"), encumbering certain property, real, personal, and mixed, as is more fully described in the Mortgage (hereafter referred to as the "Property").

Borrower acknowledges and agrees that, notwithstanding anything to the contrary contained in the Promissory Note, and in the Mortgage, and in the Loan Agreement, at no time during the term of the Loan Agreement shall Lender be obligated and/or required to disburse to, or for the account of, Borrower more than eighty-five percent (85%) of the Principal Amount. Borrower, by its execution of this Rider, understands, acknowledges, and agrees, that Borrower shall be obligated to pay to its general contractor the difference between the amount funded by Lender in accordance with the provisions of this Rider and the amount of the "Project Costs" (as such term is defined in the Loan Agreement).

Borrower further acknowledges, represents, and warrants that, except as specifically modified hereby, all of the original terms, provisions, and conditions of the Loan Agreement are to and shall remain in full force and effect and are hereby ratified, confirmed and approved in each and every respect.

BORROWER ACKNOWLEDGES HAVING READ EACH OF THE PROVISIONS OF THIS RIDER TO CONSTRUCTION LOAN AGREEMENT AND BORROWER AGREES TO THE TERMS HEREIN STATED.

BORROWER:

_____ (SEAL)
Edward Laremore

_____ (SEAL)

_____ (SEAL)

_____ (SEAL)

_____ (SEAL)

_____ (SEAL)

_____ (SEAL)

_____ (SEAL)

92-15-001218

**25552**
(04/08/05)

**Project Documents.** The words "Project Documents" mean the Plans and Specifications, all studies, data and drawings relating to the Project, whether prepared by or for Borrower, the Construction Contract, the Architecture Contract, and all other contracts and agreements relating to the Project or the construction of the Improvements.

**Property.** The word "Property" means the property as described in the "Project Description" section of this Agreement.

**Real Property.** The words "Real Property" mean the real property, interests and rights, as further described in the "Project Description" section of this Agreement.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Loan.

**Security Agreement.** The words "Security Agreement" mean and include without limitation any agreements, promises, covenants, arrangements, understandings or other agreements, whether created by law, contract, or otherwise, evidencing, governing, representing, or creating a Security Interest.

**Security Interest.** The words "Security Interest" mean, without limitation, any and all types of collateral security, present and future, whether in the form of a lien, charge, encumbrance, mortgage, deed of trust, security deed, assignment, pledge, crop pledge, chattel mortgage, collateral chattel mortgage, chattel trust, factor's lien, equipment trust, conditional sale, trust receipt, lien or title retention contract, lease or consignment intended as a security device, or any other security or lien interest whatsoever whether created by law, contract, or otherwise.

**BORROWER ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS CONSTRUCTION LOAN AGREEMENT AND BORROWER AGREES TO ITS TERMS. THIS CONSTRUCTION LOAN AGREEMENT IS DATED**

**BORROWER:**

Edward Laremore

**LENDER: FIRST FLORIDA BANK**

**Authorized Signer**                           **Authorized Signer**

20755-09
Rev. 06/13/02

# ASSIGNMENT OF CONSTRUCTION CONTRACTS

| Principal | Loan Date | Maturity | Loan No. | Call | Collateral | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|---|
| $ 189,900.00 | 10/11/05 | 10/11/06 | ▓▓▓▓▓ | | | | | |

References in the shaded area are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing ****** has been omitted due to text length limitations.

**BORROWER:** Edward Laremore     **LENDER:** FIRST FLORIDA BANK

    5012 Church Rd                8931 CONFERENCE DRIVE, UNIT 2
    Mount Laurel, NEW JERSEY 08054    FORT MYERS, FLORIDA  33919
                                      239-466-4545

**CONTRACTOR:** KENWOOD HOMES
            825 E. COWBOY WAY, UNIT 101
            LABELLE,  FL 33935

**THIS ASSIGNMENT OF CONSTRUCTION CONTRACTS** dated October 11, 2005 , is made and executed between Edward Laremore , 5012 Church Rd, Mount Laurel, NEW JERSEY 08054 (referred to as either "Borrower" or "Assignor"); and FIRST FLORIDA BANK , 8931 CONFERENCE DRIVE, UNIT 2, FORT MYERS, FLORIDA  33919 ("Lender").

**THE LOAN.**
Edward Laremore has requested Lender to provide a Loan for the construction of a Project, which may be further described in any exhibit attached to this Assignment.

**ASSIGNMENT OF CONTRACTS.** Assignor hereby grants, transfers, and assigns to lender all of Assignor's present and future rights, title, and interest in and to the Construction Contract, including without limitation, all subcontracts, rights and amendments relating thereto, and all related substitute or replacement contracts.

**CONSENT TO TRANSFER.** Assignor agrees and understands that Lender, whether now or later, may sell or transfer the Loan or sell one or more participation interests in the Loan to one or more purchasers, whether related or unrelated to lender. Assignor agrees that the purchaser(s) of the Loan or any interests in the Loan will be considered as the absolute owners of such Loan or interests, and will have all the rights granted under this Assignment.

**LENDER'S RIGHTS.** Assignor represents and warrants with respect to the Construction Contract, including all subcontracts, that: (a) there has been no prior assignment of the Construction Contract; (b) the Construction Contract is a valid, enforceable agreement; (c) neither party is in default to the other under the Construction Contract; and (d) all covenants, conditions, and agreements have been performed as required in the Construction Contract, except those not due to be performed until after the date of this Assignment. Assignor shall not alter or amend the Construction Contract without the prior written consent of Lender. Unless and until a default shall occur under the Loan or under any of the Loan documents, Lender shall not exercise any of Assignor's rights under the Construction Contract; provided however that from and after the time of any such default, Lender immediately shall become entitled, but shall not be obligated, to exercise any rights of Assignor under the Construction Contract and at Lender's option, to perform Assignor's obligations under the Construction Contract, if any. Lender shall not be liable for any defaults by Assignor in the performance of Assignor's duties under the Construction Contract, and Assignor hereby agrees to indemnify, save harmless, and defend Lender against any and all claims, damages, liabilities, reasonable attorneys' fees and losses arising out of any such default.

**POWER OF ATTORNEY.** Assignor irrevocably appoints Lender as Assignor's attorney-in-fact, with full power of substitution, at Lender's option, but with no obligation to do so, to enforce Assignor's rights and to perform Assignor's obligations under the Contract, either in Assignor's name or in Lender's own name.

**MISCELLANEOUS PROVISION.** The following miscellaneous provisions are a part of this Assignment.

    **Amendments**. What is written in this Assignment and in the Related Documents is Assignor's entire agreement with Lender concerning the matters covered by this Assignment. To be effective, any change or amendment to this Assignment must be in writing and must be signed by whoever will be bound or obligated by the change or amendment.

    **Attorneys' Fees; Expenses.** Assignor agrees to pay all of Lender's costs and expenses, including Lender's reasonable attorneys' fees and Lender's legal expenses, incurred in connection with the enforcement of this Assignment. Lender may hire or pay someone else to help enforce this Assignment or to collect the Loan, and Assignor shall pay the costs and expense of such enforcement. Costs and expenses include Lender's reasonable attorneys' fees and legal expenses whether or not there is a lawsuit, including reasonable attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. Assignor also shall pay all court costs, in addition to all other sums provided by law. This Assignment also secures all of these amounts.

20767-01
Rev. 08/13/02

**Governing Law**. This Assignment will be governed by and interpreted in accordance with federal law and the laws of the State of Florida. This Assignment has been accepted by Lender in the State of Florida.

**Choice of Venue**. If there is a lawsuit, Assignor agrees upon Lender's request to submit to the jurisdiction of the courts of the State of Florida, in the county in which Assignor's following address is located:
5012 Church Rd, Mount Laurel, NEW JERSEY 08054

**Notices**. Any notice required to be given under this Assignment shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Assignment. Any person may change his or her address for notices under this Assignment by giving written notice to the other person or persons, specifying that the purpose of the notice is to change the person's address. For notice purposes, Assignor agrees to keep Lender informed at all times of Assignor's current address. Unless otherwise provided or required by law, if there is more than one Borrower, any notice given by Lender to any Borrower is deemed to be notice give to all Borrowers. It will be Assignor's responsibility to tell the others of the notice from Lender.

**No Waiver by Lender**. Assignor understands Lender will not give up any of Lender's rights under this Assignment unless Lender does so in writing. The fact that Lender delays or omits to exercise any right will not mean that Lender has given up that right. If Lender does agree in writing to give up one of Lender's rights, that does not mean Assignor will not have to comply with the other provisions of this Assignment. Assignor also understands that if Lender does consent to a request, that does not mean that Assignor will not have to get Lender's consent again if the situation happens again. Assignor further understands that just because Lender consents to one or more of Assignor's requests, that does not mean Lender will be required to consent to any of Assignor's future requests. Assignor waives presentment, demand for payment, protest, and notice of dishonor.

**Successors and Assigns**. This Assignment shall be understood to be for the benefit of Lender and for such other person or persons as may from time to time become or be the holder or owner of the Loan or any interest therein, and this Assignment shall be transferable to the same extent and with the same force and effect as any such loan may be transferable.

**ASSIGNOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS ASSIGNMENT OF CONSTRUCTION CONTRACTS AND ASSIGNOR AGREES TO ITS TERMS. THIS ASSIGNMENT OF CONSTRUCTION CONTRACTS IS DATED** October 11, 2005

**ASSIGNOR:**

Edward Laremore

---

**ACKNOWLEDGEMENT OF ASSIGNMENT**

("Contractor"), being a party to the above described Construction Contract, including the primary construction contract, hereby acknowledges the above assignment of the Construction Contract and warrants that there has been no prior assignment of the Construction Contract of which Contractor has notice. Contractor hereby warrants that the Construction Contract, and all subcontracts are valid, enforceable agreements and that, to the best of Contractor's knowledge, Assignor is not in default thereunder. Contractor agrees that (a) Lender may enforce the obligations of the Construction Contract pursuant to the above assignment with the same force and effect as if enforced by Assignor, and (b) Lender may, but shall not be required to, perform the obligations of Assignor, and Contractor will accept such performance in lieu of performance by Assignor in satisfaction of Assignor's obligations under the Construction Contract. Contractor acknowledges that it is familiar with the disbursement provisions of the loan documents between Assignor and Lender and agrees that such disbursement provisions are satisfactory to Contractor. Contractor further agrees that any alteration or amendment of the Construction Contract will not be effective unless and until approved in writing by Lender.

THIS ACKNOWLEDGMENT IS EXECUTED ON: October 11, 2005

**CONTRACTOR:**
KENWOOD HOMES

By:_____
    Authorized Signer

By:_____
    Authorized Signer

20767-02
Rev. 06/13/02

The affiant does hereby jointly and severally agree to indemnify and hold harmless  PATRIOT TITLE
SERVICES, LLC of and from all loss, cost, damage and expense of every kind, including attorney's fees,
which PATRIOT TITLE SERVICES, LLC shall sustain or become liable for under its policy now to be
issued on account of reliance on the statements made herein.

_____          _____
Ralph Cochran

_____          _____
Edward Laremore

Sworn to and subscribed before me this __11__ day of __October__ , 2005 .

My Commission Expires:                              _____
                                                    Notary Public
                            (seal)
                                                    **SHARON D. TIMKEN**
File Number: TT-0769B                               *Notary Public of New Jersey*
                                                    MY COMMISSION EXPIRES MAY 15, 2008

# Loan #2

# Truth-in-Lending Disclosure Statement

**You are not required to complete this agreement merely because you have received these disclosures or signed a loan application.**

## Final

**Lender**
JPMorgan Chase Bank, N.A.
1111 Polaris Parkway
Floor 4J
Columbus, OH 43240

**Borrower/Owner**
EDWARD J LAREMORE
4973 NEALS SCHOOL RD
SEAFORD, DE 19973

**Date**
September 25, 2012

**Loan Number**
██████████

**Property Address:** 7018 PILGRIM CT, LABELLE, FL 33935

| ANNUAL PERCENTAGE RATE | FINANCE CHARGE | Amount Financed | Total of Payments |
|---|---|---|---|
| The cost of your credit as a yearly rate. | The dollar amount the credit will cost you. | The amount of credit provided to you or on your behalf. | The amount you will have paid after you have made all payments as scheduled. |
| **4.559%** | **$108,926.34** | $130,025.65 | $238,951.99 |

**Interest Rate and Payment Summary**

| | Rate & Monthly Payment |
|---|---|
| Interest Rate | 4.500% |
| Principal + Interest Payment | $663.76 |
| Estimated Taxes + Insurance (Escrow) | $208.48 |
| **Total Estimated Monthly Payment** | $872.24 |

**Demand Feature.** This loan does not have a Demand Feature.

**No Guarantee to Refinance.** There is no guarantee that you will be able to refinance to lower your rate and payments.

**Security.** You are giving a security interest in the property located at: 7018 PILGRIM CT, LABELLE, FL 33935

**Assumption.** Someone buying this property cannot assume the remainder of the mortgage on the original terms.

**Property Insurance.** You may obtain hazard and flood insurance from any company you choose that is acceptable to the lender.

**Late Charges.** If your payment is more than 15 days late, a charge of 5% of the overdue payment will be assessed.

**Prepayment.** If you pay off your loan early, you will not have to pay a penalty.

If you pay off your loan early, you will not be entitled to a refund of part of the finance charge.

See your contract documents for any additional information regarding non-payment, default, any required repayment in full before scheduled date, and prepayment refunds and penalties.

Truth in Lending Disclosure
VMP®
Wolters Kluwer Financial Services © 2004, 2010

1118396245

201209204.0.0.0.4002-J20110628Y

01/11
Page 1 of 2



*HLD1118396245I122*

## Comparison of Good Faith Estimate (GFE) and HUD-1 Charges

| Charges That Cannot Increase | HUD-1 Line Number | Good Faith Estimate | HUD-1 |
|---|---|---|---|
| Loan origination charge to JPMorgan Chase Bank, NA | # 801 | $1,035.00 | $1,035.00 |
| Your credit or charge (points) for the specific interest rate chosen | # 802 | ($491.25) | ($491.25) |
| Your adjusted origination charges | # 803 | $543.75 | $543.75 |
| Transfer taxes | # 1203 | $720.50 | $720.50 |

| Charges That in Total Cannot Increase More Than 10% | | Good Faith Estimate | HUD-1 |
|---|---|---|---|
| Government recording charges | # 1201 | $185.00 | $214.00 |
| Credit Report | # 805 | $10.00 | $10.00 |
| Flood Certification | # 807 | $11.00 | $11.00 |
| Title services and lender's title insurance | # 1101 | $2,066.50 | $891.00 |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| **Total** | | $2,272.50 | $1,126.00 |
| **Increase between GFE and HUD-1 Charges** | | ($1,146.50) | -50.5% |

| Charges That Can Increase | | Good Faith Estimate | HUD-1 |
|---|---|---|---|
| Initial deposit for your escrow account | # 1001 | $743.00 | $2,084.71 |
| Daily interest charges from | # 901   $16.15/day | $226.10 | $64.60 |
| Homeowner's insurance | # 903 | $0.00 | $0.00 |

## Loan Terms

| | |
|---|---|
| Your initial loan amount is | $131,000.00 |
| Your loan term is | 30 years |
| Your initial interest rate is | 4.50000 % |
| Your initial monthly amount owed for principal, interest, and any mortgage insurance is | $663.76 includes  ☒ Principal   ☒ Interest   ☐ Mortgage Insurance |
| Can your interest rate rise? | ☒ No. ☐ Yes, it can rise to a maximum of 0%. The first change will be on  and can change again every 0  after . Every change date, your interest rate can increase or decrease by 0%. Over the life of the loan, your interest rate is guaranteed to never be lower than 0% or higher than 0%. |
| Even if you make payments on time, can your loan balance rise? | ☒ No. ☐ Yes, it can rise to a maximum of $0.00. |
| Even if you make payments on time, can your monthly amount owed for principal, interest, and mortgage insurance rise? | ☒ No. ☐ Yes, the first increase can be on  and the monthly amount owed can rise to $0.00. The maximum it can ever rise to is $0.00. |
| Does your loan have a prepayment penalty? | ☒ No. ☐ Yes, your maximum prepayment penalty is $0.00. |
| Does your loan have a balloon payment? | ☒ No. ☐ Yes, you have a balloon payment of $0.00 due in 0 years on . |
| Total monthly amount owed including escrow account payments | ☐ You do not have a monthly escrow payment for items, such as property taxes and homeowner's insurance. You must pay these items directly yourself. <br> ☒ You have an additional monthly escrow payment of $208.48 that results in a total initial monthly amount owed of $872.24. This includes principal, interest, any mortgage insurance and any items checked below: <br> ☒ Property Taxes   ☒ Homeowner's Insurance <br> ☐ Flood Insurance <br> ☐             ☐ |

**Note:** If you have any questions about the Settlement Charges and Loan Terms listed on this form, please contact your lender.

T10056864653 0000 00 0000    HUD-1