UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL NO. 2047 SECTION: L |
| THIS DOCUMENT RELATES TO: *Elizabeth Bennett, et al. v. Gebrueder Knauf Verwaltungsgesellschaft, KG, et al.* 2:14-cv-02722-EEF-JCW | JUDGE ELDON FALLON MAG. JUDGE WILKINSON |

**OPPOSITION TO DEFENDANT KNAUF'S
MOTION FOR SUMMARY JUDGMENT AND ALTERNATIVE MOTION FOR
ADVERSE PRESUMPTION AND TO STRIKE PLEADINGS RELATED TO CLAIMS
BY BYRON AND FERN ROBBINS (REC. DOC. 22686)**

# Table of Contents

**Page**

I.  STATEMENT OF MATERIAL FACTS…………………………….………   1

    A.  MDL-2047………………………………………………………….……   1

    B.  The *Bennett* Class Action ……………………...…………………...   3

    C.  Plaintiffs Byron & Fern Robbins in the *Bennett* Complaint ………..   4

II.  STANDARD OF REVIEW……………………………………………….…   5

III.  ARGUMENT……………………………………………………………   6

    A.  Defendant Knauf failed to establish Plaintiffs assumed the risk that the home contained defective Knauf-manufactured drywall at time of purchase …………………………………………………………   8

    B.  Defendant Knauf has a post-sale duty to warn customers in Florida and should be equitably estopped from arguing that notice has been given to any homeowner, because it chose to remain silent rather than issue a warning and/or recall …….……………………………   10

    C.  The Florida Supreme Court has adopted the Restatement of Torts provisions which impose a duty on manufacturers to warn consumers about their product defects …..…………………………   13

    D.  Defendant Knauf's failure to report the sale of its defective product to the CPSC and active concealment of the nature and extent of their product defect supports Plaintiffs' failure to warn claims…….   15

    E.  Defective Chinese-manufactured drywall is a latent defect and Plaintiff had no obligation to hire a Chinese drywall inspector before the date of discovery …………………………………………..   18

    F.  Failure to produce their lab results or pre-purchase inspection report is potentially a question of spoliation to be addressed at trial by the transferor court, not a summary judgment motion ……….   19

IV.  CONCLUSION……………………………………….……………………..   22

Plaintiffs Byron & Fern Robbins (hereinafter "Plaintiffs") by and through the undersigned counsel of record, oppose the motion for summary judgment (Rec. Doc. 22686) filed by the Knauf Defendants.  As grounds, Plaintiffs offer the following:

## I.    STATEMENT OF MATERIAL FACTS

### A.  MDL-2047.

This litigation arises from alleged property damage and caused by the presence of Chinese drywall in homes and other buildings. Hurricanes Katrina and Rita devastated the Gulf Coast in 2005. These disasters, coinciding as they did with a boom in new housing construction, helped precipitate a shortage of drywall for the construction and reconstruction of homes in the United States. As a result, from approximately 2005 to 2008, Chinese drywall entered the United States market, changing hands in the chain of commerce, and ultimately finding its way into thousands of homes and buildings in the United States, primarily in Florida, Louisiana, Alabama, Mississippi, Texas, and Virginia.  Sometime after the installation of Chinese drywall in these properties, homeowners, residents, and occupants began to notice and complain of odd odors, corrosion of metal components, failure of electronics and appliances, and in some cases, physical ailments, such as nose bleeds, skin irritation, and respiratory problems. In response to these complaints, a number of governmental agencies and special interest groups, notably the federal Consumer Products Safety Commission and the Department of Housing and Urban Development, began to investigate, conduct testing, and issue remediation protocols related to Chinese drywall.

The present litigation commenced with the filing of lawsuits in 2009 in both federal and state courts by property owners and occupants damaged by the Chinese drywall installed in their residences and businesses, in addition to suits filed by some homebuilders who repaired these

properties. Defendants and declaratory judgment plaintiffs include homebuilders, developers, installers, retailers, realtors, brokers, suppliers, importers, exporters, and distributors, as well as their insurers and the insurers of homeowners, who were involved with the Chinese drywall in the affected properties. Because of the commonality of facts in the various federal lawsuits, the litigation was designated as Multi-District Litigation 2047 by the Judicial Panel on Multidistrict Litigation. On June 15, 2009, the Panel transferred all federal actions alleging damages from Chinese drywall to the U.S. District for the Eastern District of Louisiana for coordinated and consolidated proceedings.

Since the inception of MDL 2047, numerous cases were consolidated, containing thousands of claims; in addition, the Court issued numerous opinions, pretrial orders, and minute entries; the Court has facilitated mediations; and in the Court thousands of documents have been filed. Additionally, the Court has corresponded and coordinated with a number of state and federal court judges who also preside over related Chinese drywall cases.  The discovery revealed that the manufacturers of the drywall in question generally fell into two groups: the Knauf entities[1] and the Taishan entities[2]. After one of the Taishan entities was held in preliminary default, the Court conducted a bellwether evidentiary default hearing.  Shortly thereafter, the Court held its first bellwether, bench trial involving the Knauf entities. With regard to these bellwether proceedings, the Court issued detailed findings of fact and conclusions of law, concluding that the Chinese drywall at issue was in fact defective due to its release of

---

[1]  The term "Knauf entities" includes: Knauf Plasterboard (Tianjin) Co., Ltd. ("KPT"), Knauf Plasterboard (Wuhu) Co., Ltd., Guangdong Knauf New Building Material Products Co., Ltd., Knauf Gips KG, Gebr. Knauf Verwaltungsgesellschaft KG, Knauf International GmbH, Knauf Insulation GmbH ("KI"), Knauf UK GmbH, Knauf AMF GmbH & Co. KG, Knauf do Brasil Ltda. and PT Knauf Gypsum Indonesia.

[2]  The term "Taishan entities" includes: Taishan Gypsum Co. Ltd. and Taian Taishan Plasterboard Co. Ltd., among others.

corrosive gasses, requiring remediation of properties containing this drywall. The Court also issued a remediation protocol.

An initial settlement was reached in the Knauf portion of the litigation in October 2010, when the PSC and the Knauf entities entered into a Court-approved pilot program for remediation of homes containing drywall manufactured by Knauf. The pilot program led to a broader settlement agreement that extended the pilot program and provided remediation benefits to plaintiffs with filed claims.  On December 11, 2012, the final Knauf-related agreement, labeled, "Third Amended Settlement Agreement Regarding Claims Against the Knauf Defendants in MDL No. 2047" was filed with the Court.  A preliminary approval of the agreement was issued at the time, but no fairness hearing was immediately held, and no certification of a proposed class was approved.  Instead, the Court later held a consolidated fairness hearing for the five interrelated settlements: L&W; Banner; INEX; Global; and Knauf. Ultimately, on February 7, 2013, the Court certified a settlement class that included the Knauf entities and notice was published.  The Knauf settlement class provided benefits to participants limited to remediation.  All other claims were omitted including those claims for personal property, negligence, strict liability, consumer protection acts, nuisance, unjust enrichment, or non-pecuniary claims were not settled with the Knauf entities.

## B.  The *Bennett* Class Action.

The original *Bennett* Complaint was filed on November 13, 2014, in the United States District Court for the Northern District of Alabama and was subsequently transferred and consolidated into MDL 2047 via a conditional transfer order issued by the Judicial Panel on Multidistrict Litigation. The Complaint was amended multiple times, primarily to amend the parties.  The Fifth Amended Class Action Complaint was filed on March 6, 2018, and includes

the following claims: 1) negligence; 2) negligence per se; 3) strict liability; 4) breach of express and/or implied warranty; 5) Redhibition (by Louisiana plaintiffs); 6) Louisiana Products Liability Act (by Louisiana plaintiffs); 7) private nuisance; 8) negligent discharge of a corrosive substance; 9) unjust enrichment; 10) violation of Florida Deceptive and Unfair Trade Practices Act; 11) equitable injunctive relief and medical monitoring.  In the prayer for relief, Plaintiffs seek: compensatory, statutory, and/or punitive damages; pre- and post-judgment interest as allowed by law; injunctive relief; an award of attorney's fees as allowed by law; and award of taxable costs; and, any other relief a court deems just and proper.  On January 27, 2020, this Court issued an order denying class certification and all claims will proceed on an individual basis permissively joined as allowed by Fed. R. Civ. P. 20.

     C.    **Plaintiffs Byron & Fern Robbins in the *Bennett* Complaint.**

Plaintiffs purchased a property in the State of Florida that contained drywall manufactured by the Knauf Defendants that is alleged to be defective.  Plaintiffs' claim was filed in the *Bennett* complaint on March 6, 2018.  The street address of Plaintiffs' property at issue is: 421 Chelsea Place Avenue, Ormond Beach, FL 32174. ("Affected Property").

Plaintiffs purchased their Affected Property on May 18, 2017 (Warranty Deed attached as Exhibit A).  Plaintiffs completed a Plaintiff Profile Form that verified the date that the Knauf drywall was discovered. (See Exhibit B).  Plaintiffs also completed a Supplemental Plaintiff Profile Form (Exhibit C) and a Plaintiff Fact Sheet (Exhibit D).  Plaintiffs learned of the defective Knauf-manufactured drywall in their homes after purchase; later, Healthy Home Solutions, LLC verified the presence of the defective Knauf-made drywall in Plaintiffs' home (Exhibit E).

Plaintiffs were deposed by counsel for Knauf in Florida and affirmed the responses in their three discovery forms, including the date of discovery of the defective Knauf-manufactured drywall in the Affected Property.  Plaintiffs also provided testimony under oath that affirmed the responses in the discovery documents related to damages, including loss of use and enjoyment, and personal property damages, among other topics addressed by counsel for the defendants. Plaintiffs assert all claims in the Fifth Amendment Complaint and seeks all relief available under current Florida law.

## II. STANDARD OF REVIEW

Summary judgment is only warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In making the determination, "all justifiable inferences are to be drawn in [the non-movant's] favor." *Tolan v. Cotton*, 134 S. Ct. 1861, 1863 (2014) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). The movant may argue that "there is an absence of evidence to support the nonmoving party's case," *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986), but "it is never enough simply to state that the non-moving party cannot meet its burden at trial," *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). If the non-moving party provides more than a mere "scintilla of evidence" demonstrating that "the jury could reasonably find for the plaintiff," it will defeat the motion. *Anderson*, 477 U.S. at 252. This can be done by pointing out where the record "contains supporting evidence . . . which was 'overlooked or ignored' by the moving party." *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1116 (11th Cir. 1993) (citing *Celotex*, 477 U.S. at 332 (Brennan, J., dissenting)).

## III.    ARGUMENT

Defendants have argued that they are entitled to summary judgment in this instance, because, they allege, Plaintiffs assumed the risk of Chinese drywall in the property, or, alternatively, Defendants should receive an order instructing the transferor court to enter an adverse presumption ruling and/or an order striking the Robbinses' claim.  In order to prevail with this summary judgment motion, Defendants must demonstrate that there are no issues of material fact to be decided by a jury in the transferor court.  This has not been done and cannot be done in this case under Florida law regarding any of the issues they've raised in the instant motion.

Although Plaintiffs purchased their property and there was no disclosure regarding Chinese drywall prior to the sale.  The home inspector employed by the Robbinses noticed tarnish on wiring in several location and suggested having the home's drywall tested – which is exactly what Plaintiffs did; however, the samples sent to a lab for testing were not found to be defective.  As a result, Plaintiffs purchased the home.  Florida law requires an appreciation of a risk for there to be a valid assumption of risk defense.  Here, there was no appreciation of an identifiable risk.  The only issue in this instance is Plaintiffs' inability to produce the lab results or report which they have been unable to obtain as they have apparently discarded their report and cannot locate the home inspector to obtain another copy.  Plaintiffs did testify regarding this process and were forthcoming with the results they received in the lab report that they believe eliminated the potential risk of defective drywall in the home.

With regard to Defendants' suggestion that this Court should enter an order on jury instructions at the transferor court that will ultimately conduct the trial in this instance, Plaintiffs

6

disagree that this is the proper time to begin rulings on jury instructions.  This is an issue that can and should be handled by the district court judge at trial in Florida.

Plaintiffs urge this Court once again to consider Defendants failure to warn end-users (i.e., home owners), as required by Florida and federal law, when ruling on this motion.  This failure to warn has caused a domino effect that led to the previous owners of this property being unaware in 2017 that defective Knauf-made drywall was used in the construction of the home.  Defendants' failure to notify the CPSC of their defective product being sold in the United States and Defendants' surreptitious indemnification agreement with Banner Supply Company, after their internal emails the previous year demonstrate and appreciation of their legal exposure, clearly demonstrate their desire to fraudulently conceal information about their product to consumers. This is another example of the consequence Defendants' created by their concealment of the defect.

It is a fact that manufacturers have a post-sale duty under Florida law and federal law to notify all consumers of a defect once it is learned.  Although the defect in their KPT drywall product was discussed at length internally in 2006 by Defendant Knauf's management, not a single homeowner to date has received adequate notice about the product as of this filing in 2020. By failing to notify the Consumer Product Safety Commission of their defective drywall that was sold in the United States, they violated federal law.  And, by failing to specifically warn homeowners or end-users of the possibility that their defective drywall is in properties that they could identify, they failed to comply with Florida law.

Due to the undeniable appreciation of the effect their defective product would have on homeowners in the years that follow, Defendants should be equitably estopped from arguing that any homeowner was on notice about their defective product at any time.  The lack of a warning

affects: 1) notice to prospective buyers about the nature of defective drywall that may be in a particular home, thereby providing them with inadequate information upon which they can rely when making a homebuying decision; 2) notice to homeowners regarding the harmful effects cause by defective drywall to both inhabitants and the components of the home that may be experiencing the effects from harmful off-gassing; and, 3) notice to homeowners regarding the harmful effects caused by defective drywall to personal property during the time they have lived in the home with defective Knauf-made drywall thereby leaving them with inadequate information and an inability to preserved potential evidence in support of claims.

Detrimental reliance by Plaintiff due to the omission of an adequate warning by Defendant Knauf affects all of their claims and damages in a significant way, including remediation damages, personal property damages, diminution in value, loss of use and enjoyment damages, loss of rental income and any other consequential damages.  This Court must view the omission of a warning by the Knauf Defendants in a light most favorable to Plaintiffs when considering both the damages being sought and the appreciation of the risk required by Florida law when evaluating an assumption of risk affirmative defense.  This detrimental reliance on the intentional omission of a warning to consumers presents a genuine issue material fact that should be considered by a trier of fact regarding all claims, damages and affirmative defenses.

Finally, with regard to Defendants' passing remark that Plaintiffs' claims should be striken from the complaint, this appears to be the equivalent of a dismissal based on the evidence they've attached to their motion which converts the motion to summary judgment.   A motion to strike is appropriate only where contents of a pleading are redundant, immaterial, impertinent, or

scandalous. *See* Fed. R. Civ. P. 12(f).  None of these reasons apply in this instance; thus, there appears to be no need to independently address this twice.

### A. Defendant Knauf failed to establish Plaintiffs assumed the risk that the home contained defective Knauf-manufactured drywall at time of purchase.

Defendants have urged this Court to grant summary judgment because Plaintiffs "assumed the risk" of Chinese drywall in the homes when they purchased the Affected Property. Plaintiffs have executed verified discovery documents under penalty of perjury that the date of discovery of the defective Knauf-manufactured drywall occurred on dates after ownership was transferred by seller.  Defendants' thin argument appears to be that Plaintiff was somehow on notice that the home they were purchasing contains their defective product, even though there was no disclosure whatsoever prior to the sale.  There was never a post-sale warning or recall issued by the Knauf Defendants, as required by Florida and federal law; therefore, Plaintiffs detrimentally relied upon the absence of a product defect warning for this property.  With Defendant Knauf providing no tangible evidence that a notice/warning to prospective buyers, Defendant Knauf should be equitably estopped from arguing notice to Plaintiff. (See Section B, *infra*).

In addition to the lack of a warning or recall by defendants, Plaintiff acted reasonably by sending samples of drywall to be tested. Defendants suggest that the purchase included a risk that Chinese drywall specifically manufactured by Knauf was contemplated and appreciated by Plaintiffs at the time of the sale.  This assertion is without any basis whatsoever.  Assumption of a risk requires disclosure of the potential risk and an appreciation by the buyer when the agreement was struck in order for this challenge to be successful.  Because there was no disclosure, Defendant's motion must fail in this respect.

For an express assumption of risk to be valid--whether it arises from a contract or from voluntary participation in an activity, it must be clear that the plaintiff understood that he/she was assuming the risk of the particular conduct by the defendant which caused his injuries. *See Spaulding v. City of Melbourne*, 473 So.2d 226, 227, 10 Fla. L. Weekly 1597 (1985); Restatement of Torts, Second, § 496B, comment d.  No agreement to assume risks not known to the plaintiff will be inferred unless clearly intended. Restatement of Torts, Second, § 496 D, comment a. *Id*. at 448.

The Florida Supreme Court has held that express assumption of risk requires that a plaintiff recognize the risk and then proceed in the face of such danger. Voluntary exposure is the bedrock upon which the doctrine of express assumption of risk rests. *Kuehner v. Green*, 436 So.2d 78 (Fla.1983). No disclosure was made regarding the risk of defective drywall in Affected Property prior to sale to Plaintiffs; therefore, no risk was expressly assumed by Plaintiffs. Without an express assumption of a known risk, Defendants Knauf's motion in this regard must be denied.  The Defendants have failed to meet their burden for demonstrating assumption of risk according to Florida law.

> **B.** **Defendant Knauf has a post-sale duty to warn customers in Florida and should be equitably estopped from arguing that notice has been given to any homeowner, because it chose to remain silent rather than issue a warning and/or recall.**

The Defendants argue that Plaintiffs were somehow put on notice that a defective product was in the Affected Property; however, Defendants fail to identify the prior notice Plaintiffs received.  What are the specific warnings that Plaintiff and other consumers should have received from Knauf?  What date did Knauf publish the warnings to consumers in Florida generally?  Alternatively, what date did Knauf issue a recall and notify Plaintiff directly?

Defendant Knauf has failed to specify the exact notice they issued and are now relying upon in their motion that puts Plaintiff on notice.

Defendants could easily have sent warnings to potential recipients of its drywall – they're in possession of business records that could have been used to identify all downstream purchasers and ultimately the recipients of their product.  Defendant Knauf was certainly aware of the problems their defective drywall was causing as early as November 7, 2006.  (See Exhibit G - email between Knauf corporate officers C. Wang, M. Norris, and Jawahar re "USA smelly board," the "situation in Miami is out of control," and "it will be a big problem not only in Miami but all over the USA Market, maybe cover thousand of houses.").  Rather than take steps to notify homeowners of the defective product, Defendant Knauf chose not to notify no one and neither issued a recall overseen by the Consumer Product Safety Commission nor initiated a corrective action plan to remedy the problem they created.

In Florida, under some circumstances, manufacturers have a duty to warn about certain risks even after a product is no longer in the manufacturer's possession and has been transferred or sold to the consumer or end-user. *See High v. Westinghouse Elec. Corp*., 610 So.2d 1259, 1263 (Fla. 1992) (finding the defendant "had a duty to timely notify the entity to whom it sold the electrical transformers… once it was advised of the PCB contamination"); *Sta-Rite Indus., Inc. v. Levey*, 909 So.2d 901, 905 (Fla. 3d DCA 2004) (jury question existed on failure to warn claim "in the light of similar severe accidents which occurred both before and after the sale of the pump in question").  Defendant Knauf's responsibility does not end once the product leaves its possession.  Under Florida law, a manufacturer must keep abreast of developments in the state of the art and cannot ignore incidents involving its products.

If Defendant Knauf's position is that a warning was given to Plaintiff, they should produce that warning.  Without a specific warning to Plaintiffs by Defendant Knauf, Plaintiffs are left without the ability to evaluate the terms of the purported warning for adequacy; in addition, in the absence of any post-sale warning by Knauf for its defective drywall, the Knauf Defendants should be equitably estopped from arguing that notice was provided to a homeowner in the State of Florida or any other state that imposes a post-sale duty to warn of product defects.

The principles of equitable estoppel are applicable here to prevent the Knauf Defendants from taking unfair advantage of homeowners who may have only received limited or inaccurate information about the defective Knauf-manufactured drywall through some other source. Defendant Knauf possessed the most accurate information about their defective product and cannot rely on some other entity to meet their burden to consumers.  "The elements of equitable estoppel are (1) a representation as to a material fact that is contrary to a later-asserted position, (2) reliance on that representation, and (3) a change in position detrimental to the party claiming estoppel, caused by the representation and reliance thereon." *State v. Harris*, 881 So.2d 1079, 1084 (Fla. 2004).  "The 'representation' upon which an estoppel may be predicated may consist of words, conduct, or, if there is a duty to speak, silence."  *Lloyds Underwriters at London v. Keystone Equipment Finance Corp.*, 25 So.3d 89, 93 (Fla. 4th DCA 2009) (citations omitted). "The conduct ... such as to create an estoppel ... necessary to a waiver consists of willful or negligent words and admissions, or conduct, acts and acquiescence causing another to believe in a certain state of things by which such other person is or may be induced to act to his prejudice. The acts or conduct need not be positive, but can consist of failure to act or, more particularly, failure to speak when under some duty to speak." *Richards v. Dodge*, 150 So.2d 477, 481 (Fla.

2d DCA 1963) (internal citations omitted).  Failure to speak when under some duty to speak is precisely what occurred here after Defendant Knauf learned that its drywall was defective.

Given Knauf's failure to provide post-sale warnings to consumers and affected homeowners, this Court must view the omission in a light most favorable to Plaintiff and find a material fact exists to be decided by a trier of fact regarding the omission of notice.  This equitable estoppel principle is applicable to all damages being claimed by Plaintiffs.

### C. The Florida Supreme Court has adopted the Restatement of Torts provisions which impose a duty on manufacturers to warn consumers about their product defects.

The Restatement of Torts (Third) supports Plaintiff's position that Defendant Knauf had a duty to warn homeowners about the potential risks its defective product posed.  Subsection 2(c) of the Third Restatement provides that a product:

> is defective because of inadequate instructions or warnings when the foreseeable risks of harm posed by the product could have been reduced or avoided by the provision of reasonable instructions or warnings by the seller or other distributor, or a predecessor in the commercial chain of distribution, and the omission of the instructions or warnings renders the product not reasonably safe.

Restatement (Third) of Torts: Products Liability § 2.

As is clear from the plain language of subsection (c), the warning defect standard focuses on the notion of "reasonableness" for judging the adequacy of warnings, a malleable notion that is intertwined with the facts and circumstances of each case.  "Whether the warning actually given was reasonable in the circumstances is to be decided by the trier of fact." Restatement (Third) of Torts: Products Liability § 2 comment i.

Comment i of Section 2 also assists the trier of fact by providing a non-exhaustive list of factors to guide the determination as to whether a warning was adequate in any given situation:

> No easy guideline exists for courts to adopt in assessing the adequacy of product warnings and instructions. In making their assessments, courts must focus on various factors, such as content and comprehensibility, intensity of expression, and the characteristics of expected user groups.

Additionally, comment i lists a number of factors for the trier of fact to consider when determining whether a manufacturer such as Defendant Knauf may rely on an intermediary to warn end-users, and thereby discharge its duty to warn, or conversely, is required to warn end-users directly:

> There is no general rule as to whether one supplying a product for the use of others through an intermediary has a duty to warn the ultimate product user directly or may rely on the intermediary to relay warnings. The standard is one of reasonableness in the circumstances. Among the factors to be considered are the gravity of the risks posed by the product, the likelihood that the intermediary will convey the information to the ultimate user, and the feasibility and effectiveness of giving a warning directly to the user. Thus, when the purchaser of machinery is the owner of a workplace who provides the machinery to employees for their use, and there is reason to doubt that the employer will pass warnings on to employees, the seller is required to reach the employees directly with necessary instructions and warnings if doing so is reasonably feasible.
> ....
> Whether the warning actually given was reasonable in the circumstances ***is to be decided by the trier of fact***.

*Id*. (emphasis added).

Thus, under the Third Restatement, the determination as to whether a manufacturer like Defendant Knauf discharged its duty to warn end-users by adequately warning an intermediary is clearly a question reserved for the trier of fact. This is consistent with longstanding Florida law, which provides that "[t]he sufficiency and reasonableness of a manufacturer's warnings ***are fact questions appropriate for the jury*** to decide unless such warnings are 'accurate, clear, and

unambiguous.'" *Brito v. County of Palm Beach*, 753 So.2d 109, 112 (Fla. 4th DCA 1998)

(quoting *Felix v. Hoffmann-LaRoche, Inc*., 540 So.2d 102, 104 (Fla.1989)) (emphasis added).

"Among the factors to be considered" by the trier of fact in determining whether a

manufacturer has a duty to warn end-users directly are: (1) "the gravity of the risks posed by the

product"; (2) "the likelihood that the intermediary will convey the information to the ultimate

user"; and (3) "the feasibility and effectiveness of giving a warning directly to the user."

Restatement (Third) of Torts: Products Liability § 2 comment i. The use of the word "among"

demonstrates that this list of factors is intended to be inclusive rather than exhaustive. At bottom,

the "standard is one of reasonableness." *Id*. Thus, depending on the facts and circumstances

presented in each case, other pertinent factors may be considered when deciding whether a

manufacturer has a duty to warn end-users.  But, without any specific warning from or by

Defendant, this Court must view the omission in a light most favorable to Plaintiff, the

nonmovant, and find that a genuine issue of material fact exists regarding the lack of notice to

the prior homeowners and Plaintiffs.

**D.     Defendant Knauf's failure to report the sale of its defective product to the CPSC
         and active concealment of the nature and extent of their product defect supports
         Plaintiffs' failure to warn claims.**

Under federal law, manufacturers of defective products sold in the United States fall

under the purview of the Consumer Product Safety Act. 15 U.S.C. § 2051, *et seq*.  Enacted in

1972, CPSA is a federal statute, establishing the Consumer Product Safety Commission

("CPSC").  The Act also defines CPSC's basic authority and authorizes the agency to develop

standards and bans. It also gives CPSC the authority to pursue recalls and to ban products under

certain circumstances.  The purpose of the Act was defined as:

> (1)     to protect the public against unreasonable risks of injury
>         associated with consumer products;

(2)     to assist consumers in evaluating the comparative safety of consumer products;

(3)     to develop uniform safety standards for consumer products and to minimize conflicting State and local regulations; and

(4)     to promote research and investigation into the causes and prevention of product-related deaths, illnesses, and injuries.

15 U.S.C. § 2051(b).

The Act defines "consumer product" to mean "any article, or component part thereof, produced or distributed (i) for sale to a consumer for use in or around a permanent or temporary household or residence, a school, in recreation, or otherwise, or (ii) for the personal use, consumption or enjoyment of a consumer in or around a permanent or temporary household or residence, a school, in recreation, or otherwise." 15 U.S.C. § 2052(a)(5). Without question, drywall or gypsum board falls under the oversight of the CPSC; therefore, the reporting requirements apply to the Knauf Defendants. The CPSC publishes a recall handbook outlining the steps for a manufacturer to take once it learns of a product defect. (a copy is attached hereto as Exhibit F). It is an undisputed fact that the Knauf Defendants did not report their defective product as required by federal law and they remain in violation of this law to this very day.

The CPSA provides that when a manufacturer has reason to know its product does not meet safety standards, contains a defect, or creates an unreasonable risk of death or injury, it must inform the CPSC. 15 U.S.C. § 2064(b). There is no grey area – ***they must report the defect***. Defendant Knauf was certainly aware of the problems their defective drywall was causing as early as November 7, 2006. (See Exhibit G). Rather than report the defect as required by federal law, Defendant Knauf chose to conceal the problem. After one of Defendant Knauf's large distributors complained of defects in 2007, Defendant Knauf again chose not to notify the CPSC; instead, they worked to actively conceal the defect by striking a secretive indemnification agreement with Banner Supply Company. This is an affirmative act of

concealment.  The surreptitious agreement came to light years after the fact and was reported in a South Florida press.  (See South Florida Business Journal Article, attached hereto as Exhibit H). The nature of the agreement is telling:

> In 2007, the company signed a confidential agreement with the China-based manufacturer, Knauf Plasterboard Tianjin, which is owned by German conglomerate Knauf.  Knauf agreed to take all remaining Chinese drywall from Banner and exchange it with domestic supply, <u>if Banner agreed to stay quiet about the problem</u>.

*South Florida Business Journal,* Paul Brinkmann, June 2, 2010.

It is noteworthy that the Defendants have not produced that indemnification agreement in their disclosures to Plaintiffs; thus, when taken this continuing concealment in a light most favorable to Plaintiffs, the nonmovants, it should be considered an act of fraudulent concealment. "The doctrine of fraudulent concealment contains two elements which a plaintiff must prove. First, the defendant concealed the conduct complained of; and, second, despite the exercise of due diligence, plaintiff failed to discover the facts that form the basis of his claim." *Camsoft Data Systems Inc. v. Southern Electronics Supply Inc.*, (La. Ct. App. 2019); *citing Jensen v. Snellings*, 841 F.2d 600, 607 (5th Cir. 1988).  It is generally recognized that the prescription period is tolled if the defendant has engaged in "affirmative acts of concealment." *Id*.  A secretive indemnification agreement in return for silence certainly appears to meet the standard for fraudulent concealment.

The Fifth Circuit held that "[a] passive failure to disclose a fact is fraudulent "only if the defendant has a duty to disclose that fact." *Trustees of Nw. Laundry Dry Cleaners Health Welfare Trust Fund v. Burzynski,* 27 F.3d 153, 157 (5th Cir. 1994).  Knauf had a duty to disclose as the CPSA plainly states.  Fraudulent concealment is an equitable doctrine based on the premise that "fraud vitiates whatever it touches." *Klein v. O'Neal, Inc.*, Civil Action No. 7:03-

CV-102-D, at *10 (N.D. Tex. May 22, 2008); *citing Borderlon v. Peck,* 661 S.W.2d 907, 909 (Tex. 1983). The defense is established where a defendant knows it has committed a wrong, intends to conceal that wrong, and successfully does so. *See Shah v. Moss,*67 S.W.3d 836, 841 (Tex. 2001).

Like Louisiana courts, Florida courts have long held that when a party against whom a cause of action exists, by fraud or actual fraudulent concealment prevents the party in whose favor it exists from obtaining knowledge of it, the prescriptive statutory period only commences to run from the time the right of action is discovered, or might, by the use of diligence, have been discovered. *Hyman v. Hibernia Bank & Trust Co*., 71 So. 598, 602, 139 La. 411 (La. 1916). In Florida, "a plaintiff alleging fraudulent concealment need only prove that he or she detrimentally relied upon the defendant … corporation's misinformation. *See Philip Morris USA, Inc. v. Hess*, 95 So.3d 254, 260-61 (Fla. 4th DCA 2012) (establishing the conduct elements of a fraudulent concealment cause of action). Given Defendants' violation of their duty of disclosure under federal and Florida law that continues to this very day, the fraudulent concealment colors virtually every aspect of this case, including the claims based on Defendants' failure to warn Plaintiffs. Defendants have provided nothing to demonstrate that they should be afforded any affirmative defenses that warrant summary judgment.

### E. Defective Chinese-manufactured drywall is a latent defect and Plaintiff had no obligation to hire a Chinese drywall inspector before the date of discovery.

Defective Chinese-made drywall is not an obvious defect easily seen by a homeowner. It is hidden inside walls or buried under insulation in attics, in some instances. With the manufacturer's ink stamp markings concealed inside walls, the defect is considered "latent" according to Florida law. Florida courts have defined a latent defect broadly, as one which is "not apparent by use of one's ordinary senses from a casual observation of the premises."

*Hawkins v. Champion Int'l. Corp.*, 662 So.2d 1005, 1007 (Fla. 1st DCA 1995).  Florida courts have also found that there is no duty to discover "latent defects which… could not be discovered by a reasonable and customary search." *Masker v. Smith*, 405 So.2d 432, 433-34 (Fla. 5th DCA 1981).  Whether a reasonable person would discover the defective drywall through a casual, customary inspection is an issue of fact.

A Chinese drywall inspection is not a customary search of the home.  It is also expensive. The customary fee for a Chinese drywall specialized inspection in Florida is between $500.00 and $2,000.00.   Locating defective Chinese drywall and determining the identity of the manufacturer requires specialized knowledge and experience.  It requires specialized skill to cut holes in drywall; it requires utilizing specialized tools and devices; and, in many cases, it requires sending samples to a lab for specialized testing.  Finding defective drywall is rarely done through a casual observation of the premises or by using one's ordinary senses.

This latent defect standard under Florida law is contrary to Defendant's argument that Plaintiffs were somehow on notice that the foreclosed property contained Defendants' defective product within it; consequently, this Court should deny Defendants' motion for summary judgment and allow a trier of fact to determine whether Plaintiff's actions were reasonable.

F.      **Failure to produce their lab results or pre-purchase inspection report is potentially a question of spoliation to be addressed at trial by the transferor court, not a summary judgment motion.**

Defendants have urged this Court to grant summary judgment because Plaintiff failed to produce the lab results and pre-purchase inspection report.  In this instance, Plaintiff testified that the lab results for the samples of drywall taken prior to purchase were found not to be defective Chinese-manufactured.  As a consequence of the test results, they proceeded to purchase the

home.  The reports were both apparently discarded after purchase and a duplicate cannot be produced now as the Plaintiffs would certainly desire.

Proof of the lab results would certainly bolster Plaintiffs' testimony that they did not intend to purchase a home with defective drywall; a home they moved from after discovery.  As discussed herein (Section III(B), *supra*) Plaintiff has never received notice from Defendant Knauf regarding the presence of drywall in the home and no disclosure was made by the seller.  It is a fact that no product recall was ever issued and no warning was sent to either Plaintiffs or the previous homeowners directly.

The solution in this instance is not through a summary judgement.  Plaintiff has demonstrated the *prima facie* case establishing the link between the latent defect and Defendants.  Defendants have not proven that Plaintiffs' insufficient documentation rises to the level requiring a limiting instruction requiring an adverse presumption or a sanction for spoliation.  The issue for the transferor court to consider at trial is only related to spoliation.

Spoliation is the "*intentional* destruction, mutilation, alteration, or concealment of evidence." *Calixto v. Watson Bowman Acme Corp.*, No. 07-60077-CIV, 2009 WL 3823390, at *13 (S.D. Fla. Nov. 16, 2009) (emphasis added) (citing *Black's Law Dictionary* 1437 (8th ed. 1999)); *see Southeastern Mech. Servs., Inc. v. Brody*, No. 8:08-CV-1151-T-30EAJ, 2009 WL 2242395, at *2 (M.D. Fla. July 24, 2009) (spoliation is "the intentional destruction or concealment of evidence"); *cf. Green Leaf Nursery v. E.I. DuPont de Nemours & Co.*, 341 F.3d 1292, 1308 (11th Cir. 2003) (spoliation defined as the destruction of evidence or the significant and meaningful alteration of a document or instrument, without reference to intentionality).  Courts in the Eleventh Circuit have been inconsistent as to whether spoliation includes intent.

In meeting the requirement to demonstrate that the spoliated evidence was crucial to the movant's ability to prove its *prima facie* case or defense, it is not enough for the movant to show only that the spoliated evidence would have been *relevant* to a claim or defense. *See Managed Care Solutions*, 736 F.Supp.2d at 1327-28 (S.D. Fla. 2010) (finding that the allegedly spoliated evidence was not crucial to the plaintiff's claims because it could still prove its case through other evidence already obtained elsewhere); *Floeter v. City of Orlando*, No. 6:05-cv-400-Orl-22KRS, 2007 WL 486633, at *6 (M.D. Fla. Feb. 9, 2007) (missing emails were not critical to plaintiff's case). The "intentional" component is included in the spoliation definitions in *Optowave Co., Ltd. v Nikitin*, No. 6:05-CV-1083-Orl-22DAB, 2006 WL 3231422 (M.D. Fla. Nov. 7, 2006), *Southeastern Mech. Servs.*, 2009 WL 2242395, and *Calixto*, 2009 WL 3823390. The "intentional" factor is not included in *Graff v. Baja Marine Corp.*, 310 Fed.Appx. 298 (11th Cir. 2009), *Corp. Fin., Inc. v. Principal Life Ins. Co.*, No. 05-20595-CIV, 2006 WL 3365606 (S.D. Fla. Nov. 20, 2006). With the absence of proof that Plaintiff intentionally destroyed their pre-purchase home inspection report or lab results, this Court must view this in the light most favorable to Plaintiff during this proceeding.

A court has broad discretion to impose sanctions for litigation misconduct based on its inherent power to manage its own affairs. In order to impose sanctions based on the Court's inherent power, however, a finding of bad faith is required. *In re Mroz*, 65 F.3d 1567, 1575 (11th Cir. 1995) (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 49, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991)). There are different types of adverse inferences, ranging in ever-increasing levels of harshness. The harshest type results in a jury being instructed that certain facts are deemed admitted and must be accepted as true. A second type results in the imposition of a mandatory, albeit rebuttable, presumption. The least-harsh type of adverse inference permits a jury to

presume that the lost evidence is relevant and favorable to the innocent party. With this third type of adverse inference, the jury also considers the spoliating party's rebuttal evidence and then decides *whether* to draw an adverse inference. *See Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec.*, 685 F.Supp.2d 456, 470 (S.D.N.Y. 2010) *abrogated on other grounds by Chin v. Port Auth. of New York & New Jersey*, 685 F.3d 135 (2d Cir. 2012). It is Plaintiff's position that no limiting instruction would be appropriate in this instance because Plaintiffs had no intent to avoid production when the documents were discarded – Plaintiffs had no intention to become Plaintiffs in a Chinese drywall lawsuit. They hoped they were purchasing a home without any issues and their reasonable conduct aligns with their deposition testimony.

Defendants have not shown any bad faith on the part of Plaintiffs. The district court has broad discretion to control discovery, including the ability to impose sanctions on uncooperative litigants. *Phipps v. Blakeney*, 8 F.3d 788, 790 (11th Cir. 1993). This case-specific issue of potential "spoliation" is one for the transferor court to decide at a pretrial conference or through a motion *in limine*. Whether the documentation related to the partial remediation necessitates an instruction at trial is an issue for the transferor court to consider. It is not appropriately decided through a summary judgment motion.

## IV.   CONCLUSION

This lawsuit was filed because Defendant Knauf-manufactured defective drywall was found in Plaintiffs' property. The Knauf Defendants must ultimately stipulate that their drywall product is indeed defective, based on past jury verdicts. Although counsel for Defendant Knauf has crafted an argument for summary judgment, the facts and law in this instance simply do not support their legal position or their motion.

Plaintiffs did not assume the risk of Chinese drywall in the home at the time of purchase according to Florida law.  Plaintiffs also did not act in bad faith when they discarded their pre-purchase inspection report and lab results that found no Chinese drywall in the home.  Consequently, no limiting jury instruction regarding a shift in a presumption or spoliation of evidence would be appropriate for the transferor court to enter after a ruling here.  Plaintiffs acted reasonably in their process evaluating Affected Property prior to purchase.  Defendants may argue otherwise to a jury, but it is ultimately the trier of fact that will decide this issue, as Florida law specifically provides.

For the foregoing reasons, Defendants' Motion for Summary Judgment should be denied.  Multiple issues of material fact exist and are due to be decided by a trier of fact.

/s/ *James V. Doyle, Jr.*

James V. Doyle, Jr.
DOYLE LAW FIRM, PC
2100 Southbridge Pkwy., Suite 650
Birmingham, AL 35209
Tele: 205-533-9500
Fax: 844-638-5812
jimmy@doylefirm.com

*Attorney for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing Plaintiffs' Opposition to Defendant Knauf's Motion for Summary Judgment has been served on Plaintiffs' Liaison Counsel, Russ Herman, and Defendants' Liaison Counsel, Kerry Miller, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047, on this 5th day of May, 2020.


/s/ *James V. Doyle, Jr.*

James V. Doyle, Jr.
DOYLE LAW FIRM, PC