UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL NO. 2047<br><br>SECTION: L |
| THIS DOCUMENT RELATES TO:<br><br>*Elizabeth Bennett, et al. v. Gebrueder Knauf Verwaltungsgesellschaft, KG, et al.*<br>2:14-cv-02722-EEF-JCW | JUDGE ELDON FALLON<br><br>MAG. JUDGE WILKINSON |

**PLAINTIFFS' OPPOSITION TO DEFENDANT KNAUF GIPS, KG'S MOTION FOR SUMMARY JUDGMENT (DOC. 22678)**

1

## Table of Contents

|   |   |   | Page |
|---|---|---|---|
| I. | STATEMENT OF MATERIAL FACTS………………………….………… | | 1 |
| | A. | MDL-2047…………………………………………………….……. | 1 |
| | B. | The *Bennett* Class Action …………………...………………………... | 3 |
| | C. | Plaintiffs in the *Bennett* Complaint ……………………………………... | 4 |
| II. | STANDARD OF REVIEW…………………………………………………….… | | 4 |
| III. | ARGUMENT……………………………………………………………………… | | 5 |
| IV. | CONCLUSION…………………………………………………………….….. | | 11 |

Plaintiffs, by and through the undersigned counsel of record, oppose the motion for summary judgment (Rec. Doc. 22678) filed by Defendant Knauf Gips, KG.  As grounds, Plaintiffs offer the following:

I.     STATEMENT OF MATERIAL FACTS

    A.  MDL-2047.

This litigation arises from alleged property damage and caused by the presence of Chinese drywall in homes and other buildings. Hurricanes Katrina and Rita devastated the Gulf Coast in 2005. These disasters, coinciding as they did with a boom in new housing construction, helped precipitate a shortage of drywall for the construction and reconstruction of homes in the United States. As a result, from approximately 2005 to 2008, Chinese drywall entered the United States market, changing hands in the chain of commerce, and ultimately finding its way into thousands of homes and buildings in the United States, primarily in Florida, Louisiana, Alabama, Mississippi, Texas, and Virginia.  Sometime after the installation of Chinese drywall in these properties, homeowners, residents, and occupants began to notice and complain of odd odors, corrosion of metal components, failure of electronics and appliances, and in some cases, physical ailments, such as nose bleeds, skin irritation, and respiratory problems. In response to these complaints, a number of governmental agencies and special interest groups, notably the federal Consumer Products Safety Commission and the Department of Housing and Urban Development, began to investigate, conduct testing, and issue remediation protocols related to Chinese drywall.

The present litigation commenced with the filing of lawsuits in 2009 in both federal and state courts by property owners and occupants damaged by the Chinese drywall installed in their residences and businesses, in addition to suits filed by some homebuilders who repaired these

1

properties. Defendants and declaratory judgment plaintiffs include homebuilders, developers, installers, retailers, realtors, brokers, suppliers, importers, exporters, and distributors, as well as their insurers and the insurers of homeowners, who were involved with the Chinese drywall in the affected properties. Because of the commonality of facts in the various federal lawsuits, the litigation was designated as Multi-District Litigation 2047 by the Judicial Panel on Multidistrict Litigation. On June 15, 2009, the Panel transferred all federal actions alleging damages from Chinese drywall to the U.S. District for the Eastern District of Louisiana for coordinated and consolidated proceedings.

Since the inception of MDL 2047, numerous cases were consolidated, containing thousands of claims; in addition, the Court issued numerous opinions, pretrial orders, and minute entries; the Court has facilitated mediations; and in the Court thousands of documents have been filed. Additionally, the Court has corresponded and coordinated with a number of state and federal court judges who also preside over related Chinese drywall cases.  The discovery revealed that the manufacturers of the drywall in question generally fell into two groups: the Knauf entities[1] and the Taishan entities[2]. After one of the Taishan entities was held in preliminary default, the Court conducted a bellwether evidentiary default hearing.  Shortly thereafter, the Court held its first bellwether, bench trial involving the Knauf entities. With regard to these bellwether proceedings, the Court issued detailed findings of fact and conclusions of law, concluding that the Chinese drywall at issue was in fact defective due to its release of

---

[1] The term "Knauf entities" includes: Knauf Plasterboard (Tianjin) Co., Ltd. ("KPT"), Knauf Plasterboard (Wuhu) Co., Ltd., Guangdong Knauf New Building Material Products Co., Ltd., Knauf Gips KG, Gebr. Knauf Verwaltungsgesellschaft KG, Knauf International GmbH, Knauf Insulation GmbH ("KI"), Knauf UK GmbH, Knauf AMF GmbH & Co. KG, Knauf do Brasil Ltda. and PT Knauf Gypsum Indonesia.

[2] The term "Taishan entities" includes: Taishan Gypsum Co. Ltd. and Taian Taishan Plasterboard Co. Ltd., among others.

2

corrosive gasses, requiring remediation of properties containing this drywall. The Court also issued a remediation protocol.

An initial settlement was reached in the Knauf portion of the litigation in October 2010, when the PSC and the Knauf entities entered into a Court-approved pilot program for remediation of homes containing drywall manufactured by Knauf. The pilot program led to a broader settlement agreement that extended the pilot program and provided remediation benefits to plaintiffs with filed claims. On December 11, 2012, the final Knauf-related agreement, labeled, "Third Amended Settlement Agreement Regarding Claims Against the Knauf Defendants in MDL No. 2047" was filed with the Court. A preliminary approval of the agreement was issued at the time, but no fairness hearing was immediately held, and no certification of a proposed class was approved. Instead, the Court later held a consolidated fairness hearing for the five interrelated settlements: L&W; Banner; INEX; Global; and Knauf. Ultimately, on February 7, 2013, the Court certified a settlement class that included the Knauf entities and notice was published. The Knauf settlement class provided benefits to participants limited to remediation. All other claims were omitted including those claims for personal property, negligence, strict liability, consumer protection acts, nuisance, unjust enrichment, or non-pecuniary claims were not settled with the Knauf entities.

### B.  The *Bennett* Class Action.

The original *Bennett* Complaint was filed on November 13, 2014, in the United States District Court for the Northern District of Alabama and was subsequently transferred and consolidated into MDL 2047 via a conditional transfer order issued by the Judicial Panel on Multidistrict Litigation. The Complaint was amended multiple times, primarily to amend the parties. The Fifth Amended Class Action Complaint was filed on March 6, 2018, and includes

3

the following claims: 1) negligence; 2) negligence per se; 3) strict liability; 4) breach of express and/or implied warranty; 5) Redhibition (by Louisiana plaintiffs); 6) Louisiana Products Liability Act (by Louisiana plaintiffs); 7) private nuisance; 8) negligent discharge of a corrosive substance; 9) unjust enrichment; 10) violation of Alabama, Florida, Louisiana, Mississippi, and Texas deceptive trade practices acts; 11) equitable injunctive relief and medical monitoring.  In the prayer for relief, Plaintiffs seek: compensatory, statutory, and/or punitive damages; pre- and post-judgment interest as allowed by law; injunctive relief; an award of attorney's fees as allowed by law; and award of taxable costs; and, any other relief a court deems just and proper. This Court approved the Fifth Amended Class Action Complaint on May 14, 2018.

### C.  Plaintiffs in the *Bennett* Complaint.

Plaintiffs are owners of properties that have been found to contain defective drywall manufactured by the Knauf Defendants.  Plaintiff's each filed a claim in the *Bennett* complaint at varying times since the initial complaint was filed in the United States District Court for the Northern District of Alabama and transferred to this Court for MDL proceedings.  Plaintiffs each assert all claims in the Fifth Amendment Complaint and seeks all relief available under current Alabama, Florida,  Louisiana, Mississippi, or Texas law.

Plaintiffs have alleged that Defendant Knauf Gips, KG is a proper defendant in this action due to the extensive ties that establish Knauf Plasterboard (Tianjin) Co., Ltd. as its alter ego.

## II. STANDARD OF REVIEW

Summary judgment is only warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In making the determination, "all justifiable inferences are to be drawn in [the non-

movant's] favor." *Tolan v. Cotton*, 134 S. Ct. 1861, 1863 (2014) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). The movant may argue that "there is an absence of evidence to support the nonmoving party's case," *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986), but "it is never enough simply to state that the non-moving party cannot meet its burden at trial," *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). If the non-moving party provides more than a mere "scintilla of evidence" demonstrating that "the jury could reasonably find for the plaintiff," it will defeat the motion. *Anderson*, 477 U.S. at 252. This can be done by pointing out where the record "contains supporting evidence . . . which was 'overlooked or ignored' by the moving party." *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1116 (11th Cir. 1993) (citing *Celotex*, 477 U.S. at 332 (Brennan, J., dissenting)).

**III.   ARGUMENT**

The sole issue in this motion is whether Knauf Gips, KG has sufficient ties to Knauf Plasterboard Tianjin Co., Ltd. to establish the company as its alter ego.  Defendant Knauf Gips, KG has been a defendant in every defective lawsuit filed in this MDL court that has alleged a defective product being sold in the United States by a Knauf entity and have to this date never been dismissed as a defendant.  There have been numerous attempts by Knauf Gips, KG to avoid the jurisdiction of this and other federal courts, but to date they have been entirely unsuccessful.  There are certainly reasons why this entity hasn't made such an effort until now.  There are documents that demonstrate their close, even overlapping in certain regards, ties to the KPT entity that physically manufactured the defective drywall in this case. So, it appears that this motion is Defendants' "Hail Mary" in this case.  This court may take judicial notice of its orders

in the *Payton*[3], *Gross*[4], *Rogers*[5], *Abreu*[6], *Block*[7], *Arndt*[8], *Cassidy*[9], *and Vickers*[10] cases that repeatedly denied Knauf Gips, KG's motions to dismiss.

Defendants argue in their motion that two jury trial verdicts found that KPT as the manufacturer of the defective drywall are somehow dispositive of this issue, but they're not. It's a limited view of the litigation and it doesn't satisfy this Court's full analysis. Defendants also argue that the global class settlement agreement reached in 2011 is also dispositive because the agreement defines the manufacturer as KPT; however, the agreement settles all claims against all Knauf entities, including Knauf Gips, KG. And, based on information and belief, the Security Agreement for the 2011 global agreement was funded by Knauf Gips, KG, not KPT. This court may take judicial notice of the security agreement[11] filed under seal.

Defendants have also urged this Court to take judicial notice of the findings of fact in previous cases that don't have any relationship to the issue in the instant motion. They further claim that "GIPS was not the manufacturer, distributor, or seller of Chinese drywall, much less the KPT Chinese drywall at issue in the Plaintiffs' Fifth Amended Complaint."[12] Although it may have been the KPT entity manufacturing the product, the attachments in Exhibit A to this opposition will demonstrate Defendant Knauf Gips, KG's role in the distribution and sale of the KPT product in the United States. The claim that Knauf Gips, KG had no role in the chain of supply or control over the entities producing the KPT drywall is simply without merit. Knauf

---

[3] *Payton, et al. v. Knauf Gips KG, et al.,* Case No. 2:09-cv-07628 (E.D.La).
[4] *Gross, et al. v. Knauf Gips KG, et al*., Case No. 2:09-cv-06690 (E.D.La).
[5] *Rogers, et al. v. Knauf Gips KG, et al*., Case No. 2:09-cv-00362 (E.D.La).
[6] *Abreu, et al. v. Gebrueder Knauf Verwaltungsgesellschaft KG, et al.,* Case No. 2:11-cv-00252 (E.D. La.).
[7] *Block, et al. v. Gebrueder Knauf Verwaltungsgesellschaft KG, et al*., Case No. 2:11-cv-2349 (E.D. La.).
[8] *Arndt, et al. v. Gebrueder Knauf Verwaltungsgesellschaft KG, et al*., Case No. 2:11-cv-2349 (E.D. La.).
[9] *Cassidy, et al. v. Gebrueder Knauf Verwaltungsgesellschaft KG, et al*., Case No. 2:11-cv-3023 (E.D. La.).
[10] *Vickers, et al. v. Gebrueder Knauf Verwaltungsgesellschaft KG, et al*., Case No. 2:09-cv-04117 (E.D. La.).
[11] See Doc. 16407-3, Section 1.65 and Exhibit G to the Agreement under seal.
[12] Defendant's Memorandum in Support of MSJ, Page 8 of 12.

Gips KG's own documents prove it. To begin its analysis, this Court need look no further than its own past rulings in the Chinese drywall when evaluating alter ego/piercing the corporate veil controlling case law.

This Court previously provided the factors to be considered to determine whether one entity is an alter ego of another or whether two entities are a 'single business enterprise.' These factors include, but are not limited to:

> (1) common ownership, (2) common directors and officers, (3) common employees, (4) common offices (5) unified administrative control, (6) similar or supplementary business functions, (7) one corporation financing the other, (8) inadequate capitalization, (9) one corporation's creation of the other, (10) one corporation paying the salaries, expenses, or losses of the other corporation, (11) one corporation receiving no business other than that given to it by the affiliated corporation, (12) shared property, (13) noncompliance with corporate formalities, (14) services rendered by the employees of one corporation on behalf of another corporation, (15) centralized accounting, (16) undocumented transfer of funds between corporations, (17) unclear allocation of profits and losses between corporations, and (18) excessive fragmentation of a single enterprise into separate corporations.

*In re Chinese Manufactured Drywall Prods. Liab. Litig.*, 894 F. Supp. 2d 819, 894 (E.D. La. 2012); citing *Green v. Champion Ins. Co.,* 577 So.2d 249, 257 (La.Ct. App. 1991) ("This list is illustrative and is not intended as an exhausted list of relevant factors. No one factor is dispositive...."). This Court found alter ego in the Taishan case based in part on 100% ownership by the parent of the subsidiary, common officers and directors, common phone number and website, and common employees. *Id* at 895. A case with a similar finding was noted in this decision, *Green,* 577 So.2d at 258–59, where there was a finding of a single business enterprise where controlling shareholder, common employees, employees were compensated by both companies, employees performed services without regard to which of the corporations they worked for, the companies only did business given to it by the related businesses, financial

7

activities were not properly reflected in the books, and funds were transferred without repayment schedule. *Id*.

Generally, the courts demand proof of control by the parent over the internal business operations and affairs of the subsidiary in order to fuse the two for jurisdictional purposes. *Hargrave v. Fibreboard Corp.*, 710 F.2d 1154, 1160 (5th Cir. 1983). But, in order to pierce the corporate veil, a court must dig deeper. As this Court has previously explained, "[p]iercing the corporate veil is not necessary for imputing contacts of one affiliated corporation to another for purposes of *personal jurisdiction*, but rather is the test generally conducted for imposing *liability* as between related corporations." *In re Chinese Manufactured Drywall Prod. Liab. Litig.*, 894 F. Supp. 2d 819, 867 (E.D. La. 2012), *aff'd*, 742 F.3d 576 (5th Cir. 2014), and *aff'd sub nom. In re Chinese-Manufactured Drywall Prod. Liab. Litig.*, 753 F.3d 521 (5th Cir. 2014). Here, a determination regarding KPT's control by Knauf Gips, KG becomes necessary for making such a determination regarding alter ego/ piercing the corporate veil.

Knauf Gips, KG has had extensive overlap with its related entities overseas, particularly in China. Although they claim to be standalone business entities, Exhibit A to this Opposition compiles the areas where alter ego appears to be supported. For the Court's convenience, Exhibit A contains Section Cover Pages that mark the issue addressed in that particular section.

**1. Contacts with the U.S. Market**

Knauf Gips, KG's engagement with the U.S. marketplace in the sale of KPT drywall is documented in the 41 pages of invoices and emails here. The Tianjin plant is referenced throughout these documents. These documents directly contradict Defense counsel's assertion that there have been no business dealings in the U.S. by Knauf Gips, KG business entities or officers. These documents establish the link.

2. **Conducting business in the U.S.**

The title of the email at the page designated "KNAUFGIPS0000244" is "Shipments to the U.S. Clearly, Defense counsel's assertion that Knauf doesn't do business in the United States is disproven by their clients' own emails in this section too. Additionally, when the Miami "smelly boards" surfaced, a request was to Knauf Gips, KG corporate officers to travel to the United States to address the problem. And, as the Florida Business Journal article documents, the Knauf corporate officers indeed traveled to South Florida to strike an indemnification agreement with Banner Supply Company. (See Exhibit B). This court can take judicial notice regarding the surreptitious indemnification agreement because that Banner Supply v. Knauf case was transferred to MDL-2047.

3. **Nature of Relationship between Knauf Gips, KG and other entities.**

This section of Exhibit A demonstrates the production oversight by Knauf Gips, KG in 2006. Corporate officer emails, production summaries, product testing summaries, cost tracking, and minutes for "wallboard plants" meetings highlight the overlap among the entities, especially between the Tianjin plant and the parent company, Knauf Gips, KG.

4. **Knauf Education.**

These documents in Exhibit A highlight the overlap among the wallboard plant managers and the Knauf Gips, KG corporate officers present for the Plant Manager Conference in 2005. These individuals represent Knauf plants around the globe, including KPT.

5. **Employees of Knauf Gips & Other Entities.**

A sales organization circular at bates stamps KNAUFGIPS0000726 – 739 documents the overlap between the German Knauf Gips, KG company and Chinese Knauf Tianjin plant. This

sales brochure clearly and unequivocally demonstrates the singular entity structure being portrayed by Knuaf Gips, KG.

**6. Loans, Sharing of Funds and Cost Sharing Agreements.**

The email at page KNAUFGIPS00000363 demonstrates the financial oversight by the corporate officers. The finances of KPT, Wuhu, Hongkong and Europe are all discussed in this email. Although they've argued that KPT stands on its own, clearly the singular corporate structure implemented by Knauf Gips, KG includes financial oversight in addition to business development.

**7. Direct Shipments of Building Materials to the U.S. Market.**

This portion of Exhibit A documents Knauf Gips, KG's shipments of materials to U.S. entities from its Chinese plants, including KPT.

**8. Indirect Shipment of Building Materials to U.S.**

Although some pages are redacted, the thrust of the business dealings can be understood. Knauf Gips, KG officers and employees were engaged in business dealings with U.S. companies and individuals. German officers of the corporation were coordinating the sale of Chinese-made drywall into the U.S.

**9. Sharing of Services Between Entities**

This portion of Exhibit A contains documents proving that services between Knuaf Gips, KG and KPT occurred with regularity. Corporate officers from both entities are sending and receiving emails addressing the "exports to the United States" as one is aptly titled. These documents also contain the interaction among the entities when the "smelly board" surfaced in Miami. A standalone entity would not reach out to a completely separate company, Knauf Gips, KG, when the defective drywall issue arose in 2006 if it was operating independently. The Gips

officers that were engaged when the KPT problem arose speaks volumes in this analysis. KPT was not an independent entity and these documents prove it.

**10. Travel by Knauf Gips Employees**

This final section of Exhibit A is the same 2006 email circulated between KPT and Knuaf Gips, KG. It was the Knauf Gips, KG officers that traveled to the U.S., not the KPT corporate officers.

**IV.    CONCLUSION**

In Exhibit A to this Opposition, Plaintiffs have offered this Court documentation of Knauf Gips, KG's control over the KPT entity sufficient to establish the alter ego relationship. Knauf Gips, KG operates all of its businesses around the world as a single business enterprise. Knauf Gips, KG's oversight and control in the ten areas presented prove the KPT entity was not operating as a standalone entity as Defense counsel has argued. For these foregoing reasons, Defendants' Motion for Summary Judgment should be denied and Plaintiffs should be permitted to present evidence at trial of Knauf Gips, KG's role in the events that led to defective drywall being installed in their homes.

/s/ *James V. Doyle, Jr.*
James V. Doyle, Jr.
DOYLE LAW FIRM, PC
2100 Southbridge Pkwy., Suite 650
Birmingham, AL 35209
Tele: 205-533-9500
Fax: 844-638-5812
jimmy@doylefirm.com

*Attorney for Plaintiff*

**CERTIFICATE OF SERVICE**

    I hereby certify that the above and foregoing Plaintiffs Opposition to Defendant Knauf Gips, KG's Motion for Summary Judgment has been served on Plaintiffs' Liaison Counsel, Russ Herman, and Defendants' Liaison Counsel, Kerry Miller, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047, on this 5th day of May, 2020.

/s/ *James V. Doyle, Jr.*

James V. Doyle, Jr.
DOYLE LAW FIRM, PC