# Exhibit "A"

## REMEDIATION AGREEMENT

THIS AGREEMENT is made and entered into on this $\underline{19th}$ day of $\underline{November}$ , 2010, by and between New Orleans Area Habitat for Humanity (hereinafter referred to as "NOAHH") and $\underline{Dorothy\ LaFrance}$ (hereinafter referred to as "Homeowner").

### A. Introduction

1. Homeowner is the owner of the residence located at:



   2316 Calnda Ln
   Violet LA 70092

   (the "Property");

2. NOAHH was the builder of the residence located on the Property in partnership with Homeowner pursuant to a Family Partnership Agreement ("Partnership Agreement");

3. Pursuant to the Partnership Agreement, NOAHH constructed a residence and related amenities and improvements on the Property;

4. Subsequent to the closing on the Property, NOAHH and an independent consulting firm have inspected and tested the Property and have determined that the Property manifests symptoms and resulting property damage which indicate the presence of sub-standard drywall manufactured in the People's Republic of China ("CDW");

5. As a result, NOAHH and Homeowner agree that remediation needs to be done to remove the CDW and replace the affected materials in the Property including, but not limited to, the HVAC system, plumbing components, electrical components and appliances originally supplied by NOAHH including stove/oven, refrigerator and vent-a-hood;

6. NOAHH has agreed to remediate the damage relating to the presence of CDW on the terms and conditions set forth herein.

### B. Terms

IN CONSIDERATION of the mutual covenants of the parties contained herein, NOAHH and Homeowner agree as follows:

1. Scope of Work. NOAHH agrees to perform the following work at its expense:

   a. Removing and replacing all drywall in the Property;
   b. Removing and replacing all affected HVAC systems;
   c. Removing and replacing all smoke detectors



d. Removing and replacing all hot water heaters;
e. Removing and replacing all duct work;
f. Removing and replacing all insulation inside the Property;
g. Removing and replacing all carpet;
h. Removing and replacing all electrical wiring, switches and receptacles;
i. Removing and replacing all affected plumbing components;
j. Removing and replacing all affected appliances originally supplied by NOAHH including stove/oven, refrigerator and vent-a-hood;
k. Finishing and painting all new drywall;
l. Repairing and replacing, as necessary, all materials affected by the repair process in the Property;
m. Perform an air out and clean-up following the removal of all drywall, insulation and duct work;
n. Restoring the Property to its pre-remediation condition.

NOAHH and the Homeowner will walk the Property prior to the work beginning to note any modifications made by the Homeowner. At the completion of the remediation, the Homeowner and NOAHH will walk the Property and note any "punch" items. Once the Contractor completes the punch items, NOAHH and the Homeowner will again walk the Property to confirm that the work has been completed. The Homeowner agrees to not reoccupy the Property until all "punch" items have been completed and accepted by the Homeowner. If the Homeowner reoccupies the Property prior to final acceptance, such occupancy shall be conclusively presumed to be a final acceptance of NOAHH's and Contractor's work by the Homeowner.

2. <u>Removal of Drywall and Affected Components and Preservation of Evidence</u>. NOAHH will remove all drywall and affected materials within the Property and will remove and dispose of the same. NOAHH will have the right to retain samples thereof in order to seek recovery relating to CDW from the responsible party/parties;

3. <u>Affected Personal Property</u>. Homeowner shall preserve any and all personal property items that he or she contends are affected by CDW.

4. <u>Access</u>. NOAHH and its contractors shall have sole access to the Property during the remediation and shall be in complete control of who shall be entitled to enter and work on the premises during that time. Homeowner understands that for safety and permitting purposes, he or she shall enter the premises only upon first notifying and coordinating with NOAHH.

5. <u>Testing</u>. Upon conclusion of the remediation work, NOAHH's designated consultant will provide a "Clearance Letter" to Homeowner.

6. <u>Supervision of Remediation Work</u>. NOAHH shall supervise and direct the remediation work, using its best skill and attention. NOAHH will ensure that the work is performed in a first-class, workmanlike manner. NOAHH shall be solely

2 

responsible for and have control over construction means, methods, techniques, sequences and procedures, and for coordinating all portions of the work under this Remediation Agreement.

7. <u>Permits, Fees, Licenses and Inspections</u>.  NOAHH or its contractor shall secure and pay for any and all required building renovation permits and governmental fees, licenses and inspections necessary for proper execution and completion of the work. Homeowner grants NOAHH and its contractor authority to secure any and all required permits, licenses and inspections on Homeowner's behalf.

8. <u>Warranty for Repaired Items</u>.  NOAHH warrants the Homeowner against defects in the remediated Property as provided by Louisiana law.

9. <u>Original Warranty for Unaffected Items</u>.  The original Warranty Agreement will remain in place relative to items that are not affected either by the CDW or the repair work being done herein.

10. <u>Prevention of Further Damage</u>.  To the extent possible, NOAHH and its contractors will use appropriate precautions to minimize further damage to the home during the remediation process.

11. <u>Contractors</u>.  NOAHH will be responsible to pay its contractor doing remediation work, and will indemnify Homeowner for any claims against Homeowner to secure payment for the work to be performed.  NOAHH will use only a Louisiana licensed general contractor.

12. <u>Insurance</u>.  Prior to commencing work, NOAHH and/or its contractor will ensure that appropriate insurance is in place cover all work being done on the Property.

13. <u>Relocation Expenses</u>.  NOAHH will pay moving and/or storage expenses of Homeowner's personal property during the remediation process as well as provide and pay for alternate living arrangements in conformance with the provisions of Exhibit "A" attached hereto and incorporated by reference.  Homeowner is responsible for moving their personal property prior to and at the conclusion of the remediation process in a timely manner.  In this context timely means prior to the scheduled date of renovation provided by NOAHH and two weeks after a certificate of occupancy has been issued at the conclusion of the remediation.

14. <u>Mortgage and Other Property Payments</u>.  During remediation, Homeowner will remain responsible to pay his or her mortgage, taxes, utilities and maintenance, (including lawn maintenance) in the same manner as though the Property was occupied.  Homeowner understands and agrees that the terms of the notes made payable to NOAHH and the mortgage documents associated with the notes are still in effect.  Homeowner agrees and understands that NOAHH has not waived its rights and remedies under the notes and mortgage documents.  If the terms of the notes and mortgages are not followed by the Homeowner, NOAHH has the option to discontinue any housing and/or moving allowances outlined under this Remediation Agreement.

3

15. <u>Limited Release</u>.  NOAHH agrees to perform the remediation work described above and to provide a new warranty for repaired items.  In exchange, Homeowner hereby releases NOAHH and its parent, employees, volunteers, agents, officers, directors and shareholders from any and all claims, demands, actions and causes of action relating to, resulting from and/or associated directly or indirectly from CDW and the affected material at the Property, except as provided in the new warranty referenced in this Remediation Agreement and except personal injury claims which are more specifically excluded in the next Paragraph herein.

16. <u>No Release of Personal Injury Claims</u>.  Notwithstanding the preceding Paragraph, Homeowner is not releasing any and all potential personal injury claims that he or she may have relative to CDW.

17. <u>Assignment of Claims</u>.  NOAHH intends to seek recovery for the expense arising from the remediation work from the responsible party/parties.  In order to facilitate such recovery, and in exchange for NOAHH performing the remediation work and providing a new warranty for repaired items, Homeowner hereby assigns to NOAHH all of his or her demands, claims, causes of action and/or law suits against any individual, entity and/or insurer, as well as any payments made by same, for any and all direct or indirect, known or unknown, property damage existing or which may later arise in Homeowner's favor arising out of CDW, excluding personal property damage for which NOAHH did not pay Homeowner.  Accordingly, NOAHH shall have the exclusive right to bring any action or claim in connection with any property damage related to CDW and affected materials.  Homeowner shall cooperate in NOAHH's recovery efforts.

18. <u>No Prior Compromise</u>.  Homeowner warrants that he or she has not settled, compromised or released from liability any individual or entity, in whole or in part, with respect to any claims or causes of action for property damage described in Paragraph 17 of this Remediation Agreement.

19. <u>Entire Agreement</u>.  Except as specifically provided herein, this Remediation Agreement represents the entire agreement between the parties and supersedes all prior agreements, understandings and representations, oral or written.

20. <u>Modification of Agreement</u>.  The terms of this Remediation Agreement may only be modified through a written agreement signed by both parties herein.

21. <u>Attorneys' Fees and Expert Fees</u>.  Each party hereby agrees to be responsible for its own attorneys' fees and expert fees.



4

**IN WITNESS WHEREOF,** the parties have executed this Remediation Agreement as of the day and year first hereinabove written.

WITNESSES:

Print name: _Jeremy Eli Group_

Print name: _Scott Pointer_

Print name: _Sarah Baldwin_

Print name: _Jeremy Eli Group_

NOAHH

By: _____

Print name: _Elizabeth Lish_

HOMEOWNER

By: _Dorothy Falisine_

Print name: _Oreta L Falisiwas_

5

## EXHIBIT "A"

### Relocation Options and Expenses

1) Apartment size for relocation will be based on current family size and the availability at the apartment complexes. In coordination with the Homeowner, NOAHH will determine the number of people in the household and size the apt. accordingly, i.e.,1 person-1 bedroom apt., married couple only –one bedroom apt., etc.

2) NOAHH will recommend an apartment based on current location of the Homeowner's house and will discuss with the Homeowner.

3) The available apartments are as follows:
   - The Willow in New Orleans East (No pets allowed)
   - 1st Lake Apts.
     - ○ Kenner (Pets up to 60 pounds)
     - ○ River Ridge (Pets up to 60 pounds)
     - ○ Harahan (No Pets)
     - ○ Metairie (Pets up to 60 pounds)
   - Muses in Central City at the corner of Felicity and Carondelet (Pets up to 25 pounds allowed)

   St. Germaine (Westbank)

4) If the apartments under # 3 do not work for the Homeowner (i.e. pet is too large, location, etc.), the Homeowner can locate an apartment and bring the proposed lease to NOAHH. Assuming terms and conditions are acceptable to NOAHH, NOAHH will enter into the lease.

   The following conditions apply:
   a. The lease amount NOAHH agrees to pay is: up to $700.00 per month, for a one bedroom, up to $800.00 for a two bedroom and up to $950.00 for a three bedroom; the size of the allowance will also be determined by family size, i.e. single person $700.00, parents one child need 2 bedroom $800.00, etc. and **will not exceed the time to remediate the Property.**
   b. **NOAHH will not execute a lease longer than 4 months and the lease should contain provisions to extend on a month-to-month basis.**

5) The Homeowner acknowledges and agrees to abide by the lease and any requirements of the landlord. If the Homeowner damages the apartment to the extent that the security deposit is not returned to NOAHH, the Homeowner will be held responsible and will repay the deposit to NOAHH plus any additional expenses assessed by the landlord.

6) In the instances outlined above NOAHH will be signing the lease and the homeowner will enter **into a Housing Agreement** with NOAHH. The Homeowner will need to

1

return to the NOAHH office and pick up the keys, sign the Housing Agreement and obtain their apartment #.

7) NOAHH will pay the monthly rent and the apartment deposit directly. NOAHH will also pay the electric bill and the electric deposit. **The Homeowner will continue to pay the utility bills on their Property.**

8) The Homeowner will move to the temporary housing location within 2 weeks of the lease being signed.

9) The homeowner will move back into their Property within two weeks of the completion of the remediation.

10) Cable, phone bill, internet service, etc. will be the responsibility of the Homeowner.

11) If a pet deposit is required by the apartment, the Homeowner will be responsible for 50%, NOAHH will pay the other 50%. If there is monthly rent for the pet, the Homeowner will make this payment. 3 months worth of the pet rental will be prepaid to NOAHH at the time the sub-lease is signed.

12) If the Homeowner is required to leave the Temporary Housing NOAHH will no longer provide funding to the Homeowner for temporary housing or any other moving allowances.

## Moving of Furniture

1) NOAHH will provide a moving allowance up to $600.00 for each Homeowner family up to two weeks prior to the scheduled move out date to the temporary housing and an additional $600.00 to return to their Property.

2) Additionally, if requested by the Homeowner, NOAHH will pay for a POD not to exceed 16'.

   a. The Homeowner will sign the contract with the POD Company but NOAHH will pay for it, subject to 2) c. and 2)d.

   b. NOAHH will coordinate the delivery of the POD.

   c. If the Homeowner has not moved to the Temporary Housing within two weeks of the delivery of the POD the Homeowner will be responsible for the payments due to POD.

   d. If the Homeowner has not moved back into their Property within two weeks of the date of the Certificate of Occupancy NOAHH will no longer make payments on the Homeowners behalf to the POD Company.

   e. If additional PODS are needed, the additional expense will be the Homeowners and the Homeowner will be responsible for coordinating and paying for the additional POD.

   f. NOAHH will not be responsible for insuring the contents of the POD.

3) The homeowner will be responsible for packing and for the boxes, etc.

4) NOAHH is not responsible for any damage resulting from the use of the POD or the moving of furniture or personal property.

5) It is recommended that the Homeowner obtain renter's insurance and insurance if a POD is used.

3