UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In Re:   CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL 2047 <br><br> SECTION "L" |
| **This document relates to:** <br><br> *Elizabeth Bennett, et al v. Gebr. Knauf Verwaltungsgesellschaft, KG, et al* <br><br> **Case No. 14:cv-2722** | JUDGE ELDON FALLON <br><br> MAGISTRATE JOSEPH WILKINSON, JR. |

**REPLY MEMORANDUM IN SUPPORT OF
KNAUF GIPS KG's MOTION FOR SUMMARY JUDGMENT**

**MAY IT PLEASE THE COURT:**

Defendant, Knauf Gips KG ("Gips") through undersigned counsel, respectfully submits this Reply Memorandum in Support of its Motion for Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure (R. Doc. 22678) as to the claims asserted against it in this action.

**A.   Undisputed Knauf Gips did not Manufacture, Sell or Deliver KPT Chinese Drywall.**

As set forth in Gips' Motion for Summary Judgment, and as conceded in Plaintiffs' opposition, Gips did not the manufacturer, market, sell, or distribute KPT Chinese drywall that was/is allegedly installed in the Bennett Plaintiffs' properties.[1]   In opposition, Plaintiffs' sole claim raised is that summary judgment is inappropriate because Gips is the alter ego of KPT – the actual manufacturer, marketer, seller, and distributor or KPT Chinese drywall. However, this

---

[1] R. Doc. 22797 at 5; R. Doc. 22678.

sole issue fails because Plaintiffs have not alleged alter ego theory in their operative complaint and cannot now raise new claims. In any event, the allegations are completely lacking in support to controvert the evidence submitted by Gips, and even if accepted, fail as a matter of law to establish alter ego/Single-Business-Enterprise.

**B.      Plaintiffs Cannot Raise New Claims at Summary Judgment Stage.**

For the first time in opposing summary judgment, Plaintiff's make the conclusory allegation that Gips is the "alter ego" of KPT. In opposition, Plaintiffs asks this Court to consider certain factors to establish Single-Business-Enterprise (SBE) and alter ego claims. However, nowhere in the operative complaint have Plaintiffs properly alleged SBE or alter ego claims.[2] In the operative complaint, Plaintiffs do not allege Gips is the alter ego of KPT or that KPT and Gips operated under a SBE. Plaintiffs cannot circumvent the federal rules and its operative complaint by setting forth a new claim not previously and properly alleged. Like Plaintiffs' untimely claims as to post-sale duty to warn and continuing tort, Plaintiffs' operative complaint is completely devoid of any allegations or claims of single business enterprise/alter ego, much less are the current untimely allegations adequate under the federal rules and the Fifth Circuit's exacting standards.[3] It is axiomatic that Plaintiffs cannot use their Opposition to raise new claims; thus, the new "single business enterprise/alter ego" arguments should be rejected and ignored. *See, e.g., DeKort v. Integrated Coast Guard Sys.*, 475 F. App'x 521, 522 (5th Cir. 2012) ("We also conclude that the district court did not err in denying DeKort's motion for partial summary judgment because he attempted to raise a new claim, not asserted in his fifth amended complaint."); *see also Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1314 (11th Cir. 2004) ("[T]he Supreme Court has mandated a liberal pleading standard for civil complaints

---

[2] R. Doc. 21334.
[3] The same is true for any veiled fraudulent concealment claim. The operative complaint is completely devoid of such allegations and there has been no evidence whatsoever in support of any untimely, veiled claim.

under Federal Rule of Civil Procedure 8(a). This standard however does not afford plaintiffs with an opportunity to raise new claims at the summary judgment stage.").

The only allegations to Gips' and KPT's relationship are that Gips "supervised, operated, trained and otherwise exercised control and/or had the right to control the operations" of KPT, provided "sales and technical support" to Knauf International's businesses including KPT, and that Gips and the other Knauf entities "act without corporate formalities."[4] Even if construed as allegations as to SBE/alter ego, the Fifth Circuit has further explained that, "[t]ypically, the veil piercing theory is implemented to disregard the concept of corporate separateness when a juridical person is used to defeat public convenience, justify wrong, protect fraud, or defend crime." *In re Ark-La-Tex Timber Co.*, 482 F.3d at 335. The single business enterprise doctrine permits a court to "disregard the concept of corporate separateness and extend liability to each of the affiliated corporations for the purpose of preventing fraud or achieving equity." *Id*. And, as acknowledged by Plaintiffs, when deciding whether two entities are a single business enterprise under Louisiana law, courts employ a multi-factor test. *In re Chinese Manufactured Drywall Prods. Liab. Litig.*, 894 F. Supp. 2d 819, 894 (E.D. La. 2012).[5]

---

[4] R. Doc. 21334 at ¶¶ 15-21.
[5] The Louisiana Supreme Court has clearly instructed that "the limited liability attendant to corporate ownership should be disregarded only in exceptional circumstances." *Riggins v. Dixie Shoring Co.,* 590 So. 2d 1164, 1168 (La. 1991). Under Mississippi law, the Court will not disregard the corporate entity unless the plaintiff presents proof on three elements: " '(a) some frustration of contractual expectations regarding the party to whom he looked for performance; (b) the flagrant disregard of corporate formalities by the defendant corporation and its principals; and (c) a demonstration of fraud or other equivalent misfeasance on the part of the corporate shareholder.'" *Powertrain, Inc. v. Ma*, 88 F. Supp. 3d 679, 697 (N.D. Miss. 2015), aff'd, 640 F. App'x 263 (5th Cir. 2016). '[A] party must present some credible evidence on each of these points' before the issue of whether to pierce the corporate veil may go to the jury." *Id*. In Florida, the corporate veil will not be penetrated either at law or in equity unless it is shown that the corporation was organized or employed to mislead creditors or to work a fraud upon them. *Dania Jai-Alai Palace, Inc. v. Sykes*, 450 So. 2d 1114, 1120 (Fla. 1984) In Texas, the Texas Supreme Court rejected single business enterprise theory and found similarly to pierce the corporate veil there must be evidence of "fraud, evasion of existing obligations, circumvention of statutes, monopolization, criminal conduct, and the like." *SSP Partners v. Gladstrong Investments (USA)* Corp., 275 S.W.3d 444, 456 (Tex. 2008). "Alabama requires alter ego to be established through overwhelming control of operation. *Hill v. Fairfield Nursing & Rehab. Ctr.,* LLC, 134 So. 3d 396, 408 (Ala. 2013).

None of the factors are alleged as to Gips and KPT in the operative complaint and Plaintiffs' veil-piercing allegations set forth in opposition, even if acceptable, fall far short of the Fifth Circuit's exacting standards as detailed below. In the complaint, Plaintiffs generally claim that a corporate form has been disregarded but Plaintiffs failed to allege or provide evidence of how, and otherwise do not contend in their complaint or in opposition that the corporate form was "used to defeat public convenience, justify wrong, protect fraud, or defend crime." *In re Ark-La-Tex Timber Co., 482 F.3d at 335*. Furthermore, Plaintiffs' conclusory allegations of training support and exercising of control are insufficient to state a plausible veil-piercing claim. These allegations amount to nothing more than "labels and conclusions" and an incomplete "formulaic recitation of the elements of" a veil-piercing claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007)). Therefore, Plaintiffs have not alleged SBE/alter ego claims in the operative complaint and the new claims raised for the first time on summary judgment should be rejected.

**C.   Plaintiffs' Opposition Fails to Raise a Genuine Issue of Fact and Summary Judgment in Favor of Gips is Appropriate.**

Even if the arguments are considered, Plaintiffs' opposition fails to preclude summary judgment in Gips' favor. Pursuant to well-established legal principles, summary judgment is appropriate where there is no genuine disputed issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Rule 56, Federal Rules of Civil Procedure. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986).

The Knauf Defendants more than met this burden in their motion by setting forth evidence: exhibits, declarations, and deposition testimony specifically pointing out that KPT was the manufacture, distributor, and seller of KPT drywall, that Gips was a separate entity that did

not manufacture, distribute or sell KPT drywall, and Gips does not own or control the operations of KPT.[6]  Furthermore, Gips does not own or exert any functional, operational, or financial control over KPT.[7] To the contrary, the evidence set forth by Gips, and in Plaintiffs' opposition, demonstrates that the Knauf entities are separate legal entities,[8] and that only KPT drywall produced, sold, and distributed the defective Chinese drywall at issue.  KPT Chinese drywall had raw materials sourced in China, it was manufactured in China by KPT,[9]  and each shipment of KPT drywall was shipped directly from China to the United States by KPT arranged by KPT Director of Sales, Mark Norris, who directly marketed, negotiated, and transacted with the United States suppliers and/or third party brokers.[10]  While Gips manufactured and sold *German* drywall, there is no evidence it had any part in the chain of supply or control over KPT, the entity producing and selling KPT Chinese drywall.[11]  Therefore, the burden shifted to Plaintiff to "specifically identify evidence indicating a genuine issue for trial." *Ratliff v. Advisors Asset Mgmt., Inc.,* 660 F.App'x 290, 291 (5th Cir. 2016).

Once the moving party carries its burden of proof under Rule 56, the opposing party must direct the Court's attention to specific evidence in the record which demonstrates that the non-

---

[6] Rec. Doc. 22678.

[7] R. Doc. 22678- 9 (Exhibit "H" (Declaration of Daniel Gabel)).

[8] *See* R. Doc. 22678-10.  Exhibit "I", Deposition of Manfred Grundke ("Grundke Depo."), at p. 225 (Knauf entities are independent legal entities); R. Doc. 22678-3 (Exhibit "B", Deposition of Martin Stuermer, at p. 712 (each Knauf entity is separate corporation) & p. 727 (each Knauf entity maintains separate bank account).

[9] R. Doc. 22678-2 (Exhibit "A", Deposition of David N. Gregory ("Gregory Depo."), at p. 682 & pp. 247–48 (KPT used raw materials from Luneng mine to make KPT drywall from 2001 to end of 2006 but stopped sourcing raw materials from Luneng mine because of a "potential connection between the source of natural gypsum and this issue of boards reportedly smelling."); R. Doc. 22678-10 (Exhibit "I", Grundke Depo., at p. 261 (KPT was ultimate authority with respect to Chinese drywall issue)); *see* CDW Indicia Guide, Exhibit C-1, R. Doc. No. 12061-10, p. 3.)

[10] R. Doc. 22678-2 (Exhibit "A", Gregory Depo., at pp. 254-55 (Norris was in charge of sales, marketing, customer services and technical services for the Knauf East Asia entities)).

[11] R. Doc. 22678-2 (*See* Exhibit "A", Gregory Depo., at p. 263-66 (Knauf East Asia had a separate quality control department); pp. 545-546 (German engineers did not control quality at facility and did not train personnel); p. 548 (KPT had professional lab to test raw materials and quality); p. 507–08 (KPT was responsible for testing incoming gypsum); and p. 176 (some German machinery is used in Knauf plants in China but standards are controlled locally); Exhibit "H" (Declaration of Daniel Gabel)).

moving party can satisfy a reasonable jury that it is entitled to a verdict in its favor. *Anderson v. Liberty Lobby, Inc.*, supra, 477 U.S. at 248. This burden is not satisfied by some metaphysical doubt as to alleged material facts, by unsworn and unsubstantiated assertions, by conclusory allegations, or by a mere scintilla of evidence. *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994). Rather, Rule 56 mandates that summary judgment be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, supra, 477 U.S. at 323. Summary judgment is appropriate in any case where the evidence is so weak or tenuous on essential facts that the evidence could not support a judgment in favor of the non-moving party. *Little v. Liquid Air Corp.*, supra, 37 F.3d at 1075. To meet this burden, a plaintiff is required "to come forward with competent evidence, such as affidavits or depositions, to buttress his claims." *Alderman v. Great Atl. & Pac. Tea Co.*, 332 F. Supp. 2d 932, 936 (E.D. La. 2004). "[U]nsubstantiated assertions are not competent summary judgment evidence," *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998), and "[g]eneralizations that are contradicted by deposition testimony will not prevent summary judgment." *K. S. v. Nw. Indep. Sch. Dist.*, 689 F. App'x 780, 786 (5th Cir. 2017). Further, a party cannot defeat summary judgment by "cit[ing] only *legal* issues that are in dispute, making legal conclusions in their [opposition] rather than identifying material issues of fact." *Shimon v. Sewerage & Water Bd. of New Orleans,* No. CIV.A. 05-1392, 2010 WL 2696970, at *5 (E.D. La. July 1, 2010) (emphasis in original). Furthermore, the litigant bears the burden at summary judgment of marshaling the evidence and presenting it to the Court in an organized fashion. *See* Fed. R. Civ. P. 56(c). Absent such organization, a party proceeds at its own peril. *See* Fed. R. Civ. P. 56(e)(2).

Here, Plaintiff did not meet this burden and have not provided even a scintilla of evidence to support their non-existent alter ego/SBE claim. At the outset, Plaintiffs apparently expect this Court to refer back to hundreds of pages in an in-globo exhibit filed in connection with its opposition, as an indiscernible "document dump" with little or no specific citation or explanation as to how the documents support the requirements of a SBE/alter ego claim.[12] On this basis alone, the Court has the discretion and authority to consider the facts undisputed for purposes of the motion. *See* Fed. R. Civ. P. 56(e)(2); *Caban Hernandez v. Philip Morris USA, Inc.*, 486 F.3d 1, 7 (1st Cir. 2007) ("Given the vital purpose that such rules serve, litigants ignore them at their peril.").

Next, the specific grounds alleged are unsupported by the documents, and even if the documents were accepted and explained, do not provide even a scintilla of evidence to generate a genuine issue of fact as to SBE/alter ego between KPT and Gips. First, Plaintiffs attach documents in support of Gips' contacts with the U.S, which is irrelevant to Gips' summary judgment.[13] Plaintiffs are conflating personal jurisdiction with SBE/alter ego. Gips did not contest personal jurisdiction in its motion and Gips does not dispute that Gips has manufactured German drywall and delivered German-manufactured drywall.[14]

Second, Plaintiffs allege Gips conducts business in the United States.[15] Again, Gips did not assert a personal jurisdiction defense or that it did not have any United States business

---

[12] Plaintiffs also refer back to prior MDL matters but Gips was subsequently dismissed from the *Hernandez* case. Findings of Fact and Conclusions of Law, R. Doc. No. 2713. And, the mere fact Gips is a party/releasee in the Knauf Class Settlement Agreement and/or provided security for the Knauf Class Settlement Agreement is not indicative of SBE/alter ego. Furthermore, the fact the Court found SBE/alter ego as to Taishan entities is irrelevant to Gips and further shows the lack of allegation or evidence of SBE/alter ego as to Gips and KPT.

[13] R. Doc. 22797 at 7.

[14] The relevant issue is whether Gip manufactured, sold, distributed Chinese drywall. Plaintiffs' Exhibit attached invoices for drywall invoiced by Gips and distributed from Gips facility in Germany. R. Doc. 22797-1 at 1. As set forth in Gips motion, and as undisputed by Plaintiffs, Gips sold its own drywall manufactured in Germany and did not sell or manufacturer Chines KPT drywall.

[15] R. Doc. 22797 at 8.

dealings.[16] However, the mere allegation that Gips does business in the U.S., has agreements with suppliers, or was asked to assist other Knauf entities as a separate entity is not evidence of SBE/alter ego with KPT.

Third, Plaintiffs allege Gips maintains production oversight over KPT but the documents attached are simply corporate documents from separate and different corporations and do not controvert the undisputed evidence submitted by Gips.[17]  Indeed, nothing in the Plaintiffs' opposition or in the documents attached highlight any basis for alter ego/SBE between Gips and KPT, and in fact, establish that all of the Knauf entities, even those not in this litigation, proceed as separate distinct entities.[18]

Fourth, Plaintiffs' attachment of a conference agenda in 2005 does not raise a genuine issue of fact as to SBE/alter ego much less do Plaintiffs provide any argument or context as to how or why the internal agenda supports SBE/alter ego.

 Fifth, the same is true for Plaintiffs' reference to a sales circular that further indicates separate entities discussing their separate drywall businesses on the open market.[19]

 Sixth, Plaintiffs' attachment of documents regarding finances again provide no support for SBE/alter ego between Gips and KPT and simply reference alleged documents identifying

---

[16] Exhibit 1 (Profile Forms of Gips and L&W).  L&W do not list Gips as a supplier of Chinese drywall and Gips did not produce, market, or sell at Chinese drywall. See also other profile forms supporting same. R. Docs 22678-5, 22678-7; 22678-8.

[17] R. Doc. 22678-2 (See Exhibit "A", Gregory Depo., at p. 263-66 (Knauf East Asia had a separate quality control department); pp. 545-546 (German engineers did not control quality at facility and did not train personnel); p. 548 (KPT had professional lab to test raw materials and quality); p. 507–08 (KPT was responsible for testing incoming gypsum); and p. 176 (some German machinery is used in Knauf plants in China but standards are controlled locally); R. Doc. 22678-8 (Exhibit "H" (Declaration of Daniel Gabel)).

[18] See R. Doc. 22678-10.  Exhibit "I", Deposition of Manfred Grundke ("Grundke Depo."), at p. 225 (Knauf entities are independent legal entities); R. Doc. 22678-3 (Exhibit "B", Deposition of Martin Stuermer, at p. 712 (each Knauf entity is separate corporation) & p. 727 (each Knauf entity maintains separate bank account).

[19] R. Doc. 22797-1 at 147.

loans and cost sharing agreements between entities *not part of this litigation* and establish the maintaining of corporate formalities.[20]

Seventh, Plaintiffs completely misrepresent the attached Gips' sales invoice. The documents clearly establish Gips' sale and distribution of Gips' German-manufactured drywall.[21] It is fact that Gips manufactured drywall in Germany and distributed Gips' German-made drywall from Germany – *not* KPT drywall manufactured in China and distributed from China.[22]

Eighth, the same is true for Plaintiffs misrepresenting Gips being involved in the sale of KPT drywall. The attached documents in opposition are related to and reference *Knauf Insulation*. Like several other Knauf entities in this litigation, this Court has already granted summary judgment as to Knauf Insulation and dismissed them from this action. *See* R. Doc. 21795. Nothing relates or supports any SBE/alter ego theory between Gips and KPT.[23]

Finally, after the drywall was installed in the United States, the alleged fact that KPT requested assistance from another company or that Gips' employees travel to the United States, even if true, do raise a genuine issue of material fact to an untimely and otherwise unsupported SBE/alter ego claim.

**D.   Conclusion**

This case is solely regarding the alleged damages sustained from the alleged installation of KPT Chinese drywall manufactured, sold and distributed from China. Gips is not the parent, owner, or supervisor of KPT, does not control the operations of KPT, does not manufacture or distribute Chinese drywall, and was not involved in the manufacture, sale, or distribution of KPT

---

[20] R. Doc. 22678-3 (Exhibit "B", Deposition of Martin Stuermer, at p. 712 (each Knauf entity is separate corporation) & p. 727 (each Knauf entity maintains separate bank account).
[21] R. Doc. 22797 at 10.
[22] R. Doc. 22797 at 165; Exhibit 1 (Profile Forms of Gips and L&W).
[23] R. Doc. 22678-10(Exhibit "I", Grundke Depo., at p. 261 (KPT was ultimate authority with respect to Chinese drywall issue)); see CDW Indicia Guide, Exhibit C-1, R. Doc. No. 12061-10, p. 3; R. Doc. 22678-2 (Exhibit "A", Gregory Depo., at pp. 254-55 (Norris was in charge of sales, marketing, customer services and technical services for the Knauf East Asia entities)).

Chinese drywall in the United States. Gips is a separate, distinct legal entity from Germany that manufactured and distributed German-manufactured drywall from Germany. After ten years' worth of MDL discovery, none of the facts support a claim by the Bennett Plaintiffs against Gips. The Bennett Plaintiffs cannot substantiate any of the actual alleged facts forming the basis of the claims in the operative complaint, and there is no genuine issue material fact preventing summary judgment. Like the other Knauf entities that have been previously dismissed from this action, it is now appropriate for this Court to dismiss Gips. Therefore, for these reasons, and for the reasons set forth in Gips' Motion for Summary Judgment, the Bennett Plaintiffs' claims against Gips must be dismissed.

Respectfully submitted,

**FISHMAY HAYGOOD, LLP**

/s/ *Kerry J. Miller*_____
**KERRY J. MILLER (#24562), T.A.**
**PAUL C. THIBODEAUX (#29446)**
**DANIEL J. DYSART (#33812)**
201 St. Charles Avenue, Suite 4600
New Orleans, LA 70170
Telephone:    504.556.5549
Facsimile:     504.310.0275
Email:           kmiller@fishmanhaygood.com

*Counsel for Defendant,*
*Knauf Gips KG*

## **CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that the above and foregoing pleading has been served upon Russ Herman, Plaintiffs' Liaison Counsel, by email, and to all parties by electronically uploading the same to LexisNexis File & Serve in accordance with Pre-Trial Order No. 6, and that the foregoing was filed with the Clerk of Court of the United States Court for the Eastern District of Louisiana, on this 11th day of May, 2020.

>　　　　　　　　　　　　　　　*/s/ Kerry J. Miller*　　　　　　　　　
>　　　　　　　　　　　　　　　**KERRY J. MILLER**