# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| PEGGY POWELL, individually, ) | MDL-2047  IN RE: CHINESE-<br>MANUFACTURED DRYWALL<br>PRODUCTS LIABILITY LITIGATION |
| Plaintiff, ) | |
| v. ) | |
| KNAUF GIPS KG; and ) | **Civil Action No.: _____** |
| KNAUF PLASTERBOARD TIANJIN CO., LTD, ) | |
| Defendants. ) | JURY TRIAL DEMAND |

## AMENDED COMPLAINT

Plaintiff Peggy Powell brings this action related to her real property containing defective Chinese manufactured drywall that was designed, manufactured, imported, exported, distributed, delivered, supplied, inspected, marketed, sold and/or installed by the Defendants.  Plaintiff is pursuing this action against Knauf Gips, KG and Knauf Pasterboard Tianjin, Co., Ltd. (collectively hereinafter "Knauf" or "Defendants), who are the manufacturers of the drywall located in Plaintiff's home.  Each defendant in this action is liable for damages incurred by Plaintiff due to their role in the design, manufacture, importing, distributing, delivery, supply, marketing inspecting, installing, or sale of the defective drywall at issue in the litigation.

## JURISDICTION, PARTIES, AND VENUE

1.      This action is within the original jurisdiction of this Court by virtue of 28 U.S.C. §1332(a).  Plaintiffs and Defendants are residents of different states and the amount in controversy of this class action exceeds seventy-five thousand dollars ($75,000.00), exclusive of interest and costs.

2.     Venue is proper in the United States District Court for the Southern District of Mississippi based on the requirements of 28 U.S.C. § 1391(b)(2) and (c) because Plaintiffs resides in that jurisdiction and a substantial amount of the events and occurrences giving rise to these claims occurred in that district, or a substantial part of the property that is the subject of this action is situated in this district.

3.     This case is properly within this jurisdiction now as a tag-along action to the coordinated and consolidated proceedings in MDL-2047.

4.     Plaintiff Peggy Powell is a citizen of the state of Mississippi.

5.     Plaintiff Peggy Powell owns a property in the State of Mississippi that contains drywall manufactured by the Knauf Defendants that is alleged to be defective that has a street address of: 110 Laurel Lane, Pass Christian, MS 39571 ("Affected Property").

6.     Plaintiff Peggy Powell is bringing claims against all Defendants.

7.     Both Defendants are foreign entities organized in foreign countries and with principal places of business in foreign countries.

8.     Defendant Knauf GIPS, KG ("Knauf GIPS") is a German corporation doing business in several states including but not limited to Alabama, Florida, Georgia, Louisiana, Mississippi, North Carolina, South Carolina, Texas, and Virginia.   Knauf GIPS is a leading manufacturer of building materials and systems.   Knauf GIPS together with Knauf Plasterboard Tianjin Co., Ltd, ("Knauf Tianjin") provides building materials and systems to customers in over 50 countries, including the United States.   Upon information and belief, at all times material hereto, Knauf GIPS supervised, operated, trained and otherwise exercised control and/or had the right to control the operations of Knauf Tianjin and its agents, apparent agents, and employees.

9.      Upon information and belief, Knauf GIPS, together with its affiliates and/or actual or apparent agents, including Knauf Tianjin, manufactured, sold, distributed, marketed and placed within the stream of commerce gypsum drywall with the expectation that the drywall would be purchased by thousands of consumers within various states, including but not limited to Alabama, Florida, Georgia, Louisiana, Mississippi, North Carolina, South Carolina, Texas, and Virginia.

10.      Upon information and belief, Knauf GIPS and/or Knauf Tianjin have continuously and systematically distributed and sold drywall to numerous purchasers in the United States and their drywall is installed in numerous structures in the United States.  Knauf GIPS and/or Knauf Tianjin manufactured and sold, directly and indirectly, to certain suppliers in the United States. Knauf GIPS directly controlled through its global family of businesses the importation of defective drywall at all times and provided oversight of internal investigations of sales of defective drywall.

11.      Defendant Knauf Tianjin is a foreign corporation doing business in several states, including but not limited to Alabama, Florida, Georgia, Louisiana, Mississippi, North Carolina, South Carolina, Texas, and Virginia.  Knauf Tianjin is involved in the manufacturing and sale of gypsum drywall.  Knauf Tianjin is the actual agent and/or apparent agent of Knauf GIPS.  Upon information and belief, Knauf Tianjin individually and/or together with and at the direction and control of its principal, Knauf GIPS, manufactured, sold, distributed, marketed and placed within the stream of commerce gypsum drywall with the expectation that the drywall would be purchased by thousands of consumers throughout the United States.  Knauf Tianjin and/or Knauf GIPS have continuously and systematically distributed and sold drywall to numerous purchasers in the United States and their drywall is installed in numerous structures in the United States.  Knauf Tianjin and/or Knauf GIPS manufactured and sold, directly and indirectly, to certain suppliers in the United States.  Representatives of Knauf Tianjin have intentionally directed communications to

distributors in the United States, employed American distributors as agents for the company, shipped product intending for it to be distributed in the United States and otherwise engaged in commerce and/or circumstances that the company reasonably expected that it could be hailed into the United States courts.

12.    In 1995, the Knauf GIPS introduced its advanced production techniques and technology into China.  From 1997 through 2001, Knauf GIPS established three plasterboards plants which are located in Wuhu, Tianjin, and Dongguan.  The product quality of all Knauf-related plants in China, including Knauf Tianjin, are strictly controlled according to the requirements of Knauf GIPS' headquarters in Germany.  Knauf GIPS's sales and technical support teams support Knauf's businesses throughout the world, including Knauf Tianjin in China.  Knauf Tianjin and its employees are controlled by the actual and/or apparent agents of Knauf GIPS.  And, based on information and belief all Knauf entities act without regard to corporate formalities.

## GENERAL ALLEGATIONS

13.    Upon information and belief, Defendants' drywall contains gypsum.

14.    In "defective" drywall (such as that designed, manufactured, exported, imported, distributed, delivered, supplied, inspected, marketed, sold and/or installed by Defendants herein), the gypsum and other components of the product react, break down, and release sulfur compounds and other noxious gasses from the drywall.

15.    The sulfur compounds, including Hydrogen Sulfide, Carbonyl Sulfide, and Carbon Disulfide, exit Defendants' drywall and cause rapid sulfidation and damage to personal property (such as air conditioning and refrigerator coils, faucets, utensils, electrical wiring, copper, electronic appliances and other metal surfaces and property).

4

16.     Exposure to sulfur compounds and the other noxious gasses emitted from Defendants' drywall can cause eye irritation, sore throat and cough, nausea, fatigue, shortness of breath, fluid in the lungs, and/or neurological harm to some inhabitants who possess a sensitivity.

17.     Although the drywall functions according to is intended purpose as a building component, it is unfit for this purpose due to the damaging side effects and/or because its use is so inconvenient that Plaintiffs would not have purchased their homes had the side effects been disclosed by Defendants.

18.     As a direct and proximate result of Defendants' actions and omissions, Plaintiff's home, structure, and personal property have been exposed to Defendants' defective drywall and the corrosive and harmful effects of the sulfur compounds and other gasses being released from Defendants' drywall.

19.     Defendants tortiously manufactured, exported, imported, distributed, delivered, supplied, inspected, installed, marketed, sold and/or installed defective drywall, which was unfit for its intended purpose and unreasonably dangerous in its normal use in that the drywall caused corrosion and damage to personal property in Plaintiff's home.

20.     Defendants recklessly, wantonly, and/or negligently manufactured, exported, imported, distributed, delivered, supplied, inspected, installed, marketed and/or sold the defective drywall at issue in this litigation.

21.     Defendants recklessly, wantonly, and/or negligently implemented faulty procedures for purposes of formulating, preparing, testing, and otherwise ensuring the quality and/or character of the drywall at issue in this litigation.

22.     As a direct and proximate result of Defendants' defective drywall and the corrosive and harmful effects of the sulfur compounds and other noxious gasses released from these products, Plaintiff has suffered, and continues to suffer, economic harm.

23.     As a direct and proximate result of Defendants' defective drywall, Plaintiff has suffered, and continues to suffer damages.  These damages include, but are not limited to, cost of inspection; cost and expenses necessary for remediation of the home; the cost to remove and replace the other property that has been impacted; inability to sell her home; interest payments to a lender while the home is unsellable; inability to entertain family and friends in the home; lost value or devaluation of her home and property; alternative living expenses; and loss of use and enjoyment of her home and property.

24.     As a direct and proximate result of Defendants' defective drywall, Plaintiff has the need for injunctive relief in the form of repair and remediation of her home, rescission of contracts, the ordering of emergency/corrective notice, and the ordering of testing.

## COUNT I
### NEGLIGENCE

25.     Plaintiff adopts and restates the preceding paragraphs as if fully set forth herein.

26.     Defendants owed a duty to Plaintiff to exercise reasonable care in designing, manufacturing, exporting, importing, distributing, delivering, supplying, inspecting, marketing, selling, and/or installing this drywall, including a duty to adequately warn of their failure to do the same.

27.     Defendants knew or should have known that their wrongful acts or omissions would result in harm and damages in the manner set forth herein.

28.     Defendants breached their duty to exercise reasonable care in the designing, manufacturing, exporting, importing, distributing, delivering, supplying, inspecting, marketing, selling, and/or installing this drywall.

29.     Defendants likewise breached their duties to Plaintiff by failing to warn about the defective nature of the drywall.  Defendants, through the exercise of reasonable care, knew or should have known the nature of the defective drywall and the adverse effects that it could have on Plaintiff's home.

30.     Defendants breached their duty to exercise reasonable care to timely remove and/or recall from the market and/or otherwise prevent the continued contact of Plaintiff with the drywall, upon learning it had been sold in an unreasonably dangerous condition.

31.     Defendants knew or should have known that their product could, and would, cause harm, damages to Plaintiff.

32.     As a direct and proximate cause of Defendants' acts or omissions, Plaintiff was harmed and has incurred damages as described herein.

## COUNT II
## NEGLIGENCE PER SE

33.     Plaintiff adopts and restates the preceding paragraphs as if fully set forth herein.

34.     Defendants owed statutory duties to Plaintiff to exercise reasonable care in designing, manufacturing, exporting, importing, distributing, delivering, supplying, inspecting, marketing, selling, and/or installing this drywall.

35.     Defendants breached their statutory duties to the Plaintiff by failing to exercise reasonable care in the designing, manufacturing, exporting, importing, distributing, delivering, supplying, inspecting, marketing, selling, and/or installing this drywall.

7

36.     Defendants likewise breached their statutory duties, including but not limited to those imposed under the International Building Code ("IBC") and other state and local building codes, to Plaintiff by failing to warn about the defective nature of the drywall.  For instance, it is specifically alleged that Defendants furnished the drywall in violation of ASTM C 1396/C 1396M-069, and its predecessor(s).

37.     Defendants, through the exercise of reasonable care, knew or should have known the nature of the defective drywall and the adverse effects that it could have on the home of Plaintiff.

38.     Given the defect in the Defendants' drywall, Defendants knew or should have known that their product could, and would, cause harm and damages to Plaintiff.

39.     As a direct and proximate cause of Defendants' acts or omissions, Plaintiff was harmed and has incurred damages as described herein.

## COUNT III
## STRICT LIABILITY

40.     Plaintiff adopts and restates the preceding paragraphs as if fully set forth herein.

41.     At all times relevant hereto, Defendants were in the business of distributing, delivering, supplying, inspecting, marketing, and/or selling drywall for sale to the general public.

42.     The drywall, including that installed in Plaintiff's home was placed by Defendants into the stream of commerce.

43.     Defendants knew that the subject drywall would be used without inspection for defects by consumers.

44.     Defendants intended that the drywall reach the ultimate consumers, such as Plaintiff, and it indeed reached Plaintiff when it was installed in this home.

8

45.     When installed in Plaintiff's home, the drywall was in substantially the same condition as it was in when Defendants manufactured, sold, and/or delivered it.

46.     At all times relevant hereto the subject drywall was used in a manner consistent with the uses intended by, or known to Defendants, and in accordance with the Defendants' directions and instructions.

47.     The subject drywall was not misused or altered by any third parties.

48.     The Defendants' drywall was defectively manufactured, designed, inspected, tested, marketed, distributed, and sold.

49.     The drywall design defect occurred in designing a gypsum board that allowed high levels of sulfur and/or other chemicals to emit through off-gassing.

50.     The manufacturing defect was in improperly selecting, testing, inspecting, mining, making, assembling, and using, gypsum for drywall with levels of sulfur that were too high and emitted various sulfide gasses and/or other chemicals through an off-gassing process.

51.     The drywall was also defective because it was improperly exported, imported, distributed, delivered, supplied, inspected, marketed, and/or sold in a defective condition, as described above.

52.     The Defendants' defective manufacturing, designing, inspecting, testing, marketing, distributing, and selling of the drywall rendered it unsafe and unreasonably dangerous for its intended use by Plaintiff.

53.     The drywall is also defective and unreasonably dangerous because Defendants failed to adequately warn and instruct Plaintiff of the defective design, inspection, testing, manufacturing, marketing, and selling of the drywall.

54.     Plaintiff was neither aware of the unreasonably dangerous propensities and defective condition of the drywall, nor could Plaintiff, acting as a reasonably prudent person discover that Defendants' drywall was defective, as set forth herein, or perceive its danger.

55.     Defendants' defective drywall was much more dangerous and harmful than expected by the average consumer, including Plaintiff.

56.     The benefit, if any, of Plaintiff using Defendants' defective drywall was greatly outweighed by the risk of harm and danger.

57.     The defects in the drywall, as well as Defendants' failure to adequately warn Plaintiff of the defects rendered the drywall unreasonably dangerous, was the direct and proximate cause of damages incurred by Plaintiff.

<u>**COUNT IV**</u>
**BREACH OF EXPRESS AND/OR IMPLIED WARRANTY**

58.     Plaintiff adopts and restates the preceding paragraphs as if fully set forth herein.

59.     Defendants and/or their agents were in privity with Plaintiff and Plaintiff was a foreseeable third-party beneficiary of any warranty.

60.     At the times Defendants' drywall was installed, utilized, supplied, inspected, sold, in the Plaintiff's home, Defendants knew, or it was reasonably foreseeable, that the drywall would be installed in Plaintiff's home for use as a building material, and expressly or impliedly warranted the product to be fit for that use.

61.     Defendants placed their drywall products into the stream of commerce in a defective condition and these products were expected to, and did, reach users, handlers, and persons coming into contact with said products without substantial change in the condition in which they were sold.

10

62.     The drywall was defective because it was not fit for the uses intended by Defendants; the installation of the drywall in Plaintiff's home was not suitable for use as a building material, because it contained the defects as set forth herein.

63.     Defendants breached their warranty because their drywall was not fit and safe for the particular purposes for which the goods were required (to be installed in Plaintiff's home as a building material) due to the defects set forth herein.

64.     Defendants had reasonable and adequate notice of the Plaintiff's claims for breach of warranty and failed to cure.

65.     As a direct and proximate cause of Defendants' breach of warranties, Plaintiff has incurred harm and damages as described herein.

<u>**COUNT V**</u>
**PRIVATE NUISANCE**

66.     Plaintiff adopts and restates the preceding paragraphs as if fully set forth herein.

67.     Defendants' tortious or wrongful acts or omissions have caused sulfide gas and/or other chemical leaching into Plaintiff's home which has unreasonably interfered, and continues to interfere, with the Plaintiff's use and enjoyment of her property and has caused her harm and damages as described herein.

68.     Defendants' interference has impaired the rights of Plaintiff's health, comfort, safety, free use of their property, and/or peaceful enjoyment of her property.

69.     Defendants' invasions were intentional and unreasonable, and/or unintentional, but otherwise negligent or reckless.

70.     The interference with Plaintiff's use of her property was caused by Defendants and is substantial and is ongoing.

11

71.     Defendants' private nuisance was the direct, proximate, and foreseeable cause of Plaintiff's damages, injuries, harm, loss, and increased risk of harm, which he suffered and will continue to suffer.

72.     As a direct and proximate cause of Defendants' creation of a private nuisance, Plaintiff has incurred harm and damages as described herein.

## COUNT VI
## NEGLIGENT DISCHARGE OF A CORROSIVE SUBSTANCE

73.     Plaintiff adopts and restates the preceding paragraphs as if fully set forth herein.

74.     Defendants had actual or constructive knowledge of the extremely corrosive and dangerous propensities of the drywall at issue in this litigation.

75.     Notwithstanding their actual or constructive knowledge of the corrosive and dangerous propensities of the drywall, Defendants nevertheless designed, manufactured, imported, distributed, delivered, supplied, marketed, inspected, installed, or sold the drywall for use in the home or other structure owned by Plaintiff.

76.     By causing the sale, distribution, delivery, and/or supply of the drywall under these circumstances, Defendants breached their duty to exercise reasonable care and created a foreseeable zone of risk of injury to Plaintiff.

77.     Defendants likewise breached their duties to Plaintiff by failing to warn about the corrosive and dangerous propensities of the drywall.  Defendants, through the exercise of reasonable care, knew or should have known the nature of the defective drywall and the adverse effects that it could have on the property of Plaintiff.

78.     Plaintiff has incurred damages by virtue of exposure of her property to the defective drywall at issue in this litigation.  Given the defect in the Defendants' drywall, Defendants knew or should have known that their product would cause injury to Plaintiff.

79.     As a direct and proximate result of Defendants' acts and omissions, Plaintiff was harmed and has incurred damages as described herein.  The injuries sustained by Plaintiff was within the foreseeable zone of risk created by Defendants.

## COUNT VII
## UNJUST ENRICHMENT

80.     Plaintiff adopts and restates the preceding paragraphs as if fully set forth herein.

81.     Defendants received money as a result of Plaintiff's purchase of Defendants' defective drywall, or purchase of homes containing this drywall, either directly or through an agent, and Defendants wrongfully accepted and retained these benefits to the detriment of Plaintiff.

82.     Defendants' acceptance and retention of these benefits under the circumstances make it inequitable and unjust for Defendants to retain the benefit without payment of the value to the Plaintiff.

83.     Defendants, by the deliberate and tortious conduct complained of herein, have been unjustly enriched in a manner which warrants restitution.

## COUNT VIII
## VIOLATION OF CONSUMER PROTECTIONAL ACT

84.     Plaintiff adopts and restates the preceding paragraphs as if fully set forth herein.

85.     Plaintiff seeks relief under the Mississippi Consumer Protection Act, Miss. Code Ann. § 75-24-1, *et seq*., based on the location where affected property is situated.

86.     Defendants' acts and omissions as well as their failure to use reasonable care in this matter as alleged in this complaint, including but  not limited to, the knowing misrepresentation or failure to disclose the source, affiliation, origin, characteristics, ingredients, standards and quality of defective drywall constitute violation of the Mississippi Consumer Protection Act.

87.     Plaintiff has suffered actual damages as a result of Defendants' violation of this consumer protection act and is entitled to relief.

88.     As a direct and proximate result of Defendants' violations of the Mississippi Consumer Protection Act, Plaintiff has incurred the harm and damages described herein.

## <u>COUNT IX</u>
## FRAUDULENT MISREPRESENTATION

89.     Plaintiffs adopts and restates the preceding paragraphs as if fully set forth herein.

90.     Beginning in 2006, Defendants intentionally and fraudulently misrepresented the fitness of their drywall product to its buyers and distributors through its marketing activities.

91.     In Particular, Defendants intentionally and fraudulently:

    a.   Failed to adequately warn about the level of sulfur off-gassing;

    b.   Failed to provide full and complete information about corrosive nature of the gasses its product emits;

    c.   Provided marketing material that did not adequately disclose the risks that Defendants knew of;

    d.   Provided importers, distributors, or consumers information about their product that did not adequately disclose the risks that Defendants knew of; and,

    e.   Overstated the quality of their drywall product.

92.     The representations were made by Defendants with the intent that importers, exporters, distributors and consumers, including Plaintiff, rely upon them, in willful, wanton, and reckless disregard for the lack of truthfulness of the representations and with the intent to defraud and deceive Plaintiff.

93.     Plaintiff reasonably relied upon the fraudulent misrepresentations directly or as a third-party beneficiary when purchasing her home.

### COUNT X
### NEGLIGENT MISREPRESENTATION

94.     Plaintiff adopts and restates the preceding paragraphs as if fully set forth herein.

95.     From the time Defendants first tested, studied, researched, evaluated, endorsed, manufactured, marketed and distributed, and up to the present, Defendants made misrepresentations to Plaintiff and the general public, including but not limited to the misrepresentation that Defendants' drywall was safe, fit, and effective for use in homes.

96.     Defendants owed a duty to exercise reasonable care to ensure they did not misrepresent the safety or fitness for use and failed to exercise that reasonable care and therefore breached their duty to Plaintiff.

97.     Defendants made misrepresentations without any reasonable grounds for believing them to be true, and were in fact, reckless.

98.     Defendants had a duty to correct these material misstatements because they knew or should have known that they were inaccurate and that Plaintiff would reasonably rely on them and suffer damages.

99.     These misrepresentations were made directly by Defendants, by sales representatives and other authorized agents of Defendants, and in publications and other written materials directed to their customers including builders, distributors and importers, with the intention of inducing reliance, purchase, and use of their product.

100.     The representations by the Defendants were in fact false and Defendants knew their product was not safe, fit, and effective for use in the homes and structures because their drywall has a propensity to emit corrosive gasses.

101.    Defendants representations were made with the expectation and intention of inducing reliance upon them for monetary gain.

102.    Plaintiff reasonably relied on the misrepresentations made by the Defendants to her detriment.

103.    In reliance of the misrepresentations by the Defendants, Plaintiff was induced to purchase and use Defendants' drywall.

104.    If Plaintiff had known of the nature and characteristics of the defective drywall concealed by the Defendants, Plaintiff would not have used Defendants' product.

105.    Reliance by Plaintiff on Defendants' misrepresentations was justified because such misrepresentations were made and conducted by individuals and entities that were in a position to know the true nature and characteristics of the defective drywall.

106.    As a direct, proximate, and foreseeable result of Defendants' negligent misrepresentations, Plaintiff suffered injuries and damages as alleged herein.

**COUNT XI**
**FRAUDULENT CONCEALMENT**

107.    Plaintiff adopts and restates the preceding paragraphs as if fully set forth herein.

108.    At all relevant times, Defendants knew that their drywall was defective, unsafe, and that its risks were understated while its benefits were overstated.

109.    Defendants willfully, intentionally and fraudulently concealed their knowledge from Plaintiff, Plaintiff's builders, distributors, importers, and the public, and instead knowingly provided false information.

110.    Defendants withheld information that they had a duty to disclose through advertising, marketing materials, salespersons, and publications that their drywall products were not fit for their intended use.

111.    Defendants withheld information about the severity of the risks of using their product and their knowledge of the harmful effects.

112.    Defendants withheld information that their product failed to comply with the IBC, and other state and local building codes like other gypsum products available on the market.

113.    The above facts were material and would have been considered important to a reasonable person.

114.    Had the above facts been disclosed, Plaintiff would not have decided to purchase her affected property containing Defendants' defective product.

115.    Defendants had a duty to disclose the information to Plaintiff and other consumers.

116.    Defendants had sole access to material facts concerning, and unique and special knowledge and expertise regarding, the dangers and unreasonable risks associated with their gypsum products.

117.    Defendants knew or should have known and expected or should have expected and intended that Plaintiff and others would rely on the inaccurate information they provided.

118.    As a foreseeable, direct, and proximate result of Defendants' actions and fraudulent concealment, Plaintiff suffered injury and damages as described herein.

## COUNT XII
### FRAUD

119.    Plaintiff adopts and restates the preceding paragraphs as if fully set forth herein.

120.    Defendants' intentional misrepresentations and concealments constitute fraud under Mississippi law and were made with the intent to defraud its distributors and all downstream purchasers, including consumers such as Plaintiff.

121.    Specifically, Defendants intentionally and fraudulently did the following:

a.  In 2006, Defendants received written and verbal complaints from U.S. customers about their defective drywall;

b.  Specifically, Banner Supply Company passed complaints it received from builders and installers to Mike Norris, Defendant Knauf Tianjin's general manager;

c.  Based on information and belief, Mr. Norris contacted the Knauf headquarters in Germany about the complaints received;

d.  Executive level employees of Defendants, including Isabel Knauf who was serving as manager of Knauf's operations in Asia, discussed the complaints and chose to send at least one corporate representative to the United States to meet with one of their larger distributors in Florida, Banner Supply Company;

e.  After confirming that their drywall product was indeed defective and being widely sold primarily in the Southeastern United States, Defendants chose to take no corrective action and instead continued to sell the product to its distributors without any limitation or disclosure regarding the defective nature of their product;

f.  After confirming that their drywall product was defective and being sold in the United States, Defendants struck an indemnification agreement with Banner Supply Company, one of its distributors, in order to avoid litigation and to encourage

continuing sales of the defective product without any limitation or disclosure regarding the defective nature of their product;

g.   Based on information and belief, the terms of the indemnification agreement between Defendants and Banner Supply required both parties to conceal the existence of the deal from government, media, and the public;

h.   After confirming that their drywall product was defective and being sold in the United States, Defendants chose to notify no other distributors or buyers that their drywall was indeed defective; instead, Defendants chose to conceal the defective nature of its product while continuing its marketing and sale of the remaining defective product, estimated to be 55 million pounds, that had been imported from its Tianjin plant in China;

i.   On information and belief each and every advertisement and marketing channel fraudulently omits information about the risks of defective Knauf-manufactured drywall and overstates the benefits;

j.   Defendants failed to disclose that their product was not as safe and effective as other gypsum products sold by other manufacturers;

k.   Defendants failed to disclose that the risk of harm associated with their gypsum products was greater than the risk of harm associated with other gypsum products sold by other manufacturers;

l.  Defendants failed to disclose that their drywall was not adequately tested;

m.  Defendants failed to disclose that testing had revealed unreasonably high risk of damage to homes and personal property;

n.  On information and belief, Defendants failed to disclose that Defendants intentionally withheld internal quality tests; and

o.  Defendants affirmatively asserted that their drywall was safe and fit for its intended use.

122.  Plaintiff and other consumers were misled by Defendants' affirmative statements or material omissions that provided the fraudulently inaccurate information described above.

123.  Defendants had access to these facts, while Plaintiff did not and were unaware of them and could not reasonably learn of them from an alternative source prior to purchase.

124.  The above facts were material to Plaintiff's decision to either purchase the gypsum product from Defendants' distributors or to purchase the affected property, and they reasonably relied on Defendants' representations either directly or indirectly.

125.  As a direct, proximate, and foreseeable result of Defendants' fraud they caused Plaintiff injuries.

## PUNITIVE DAMAGES ALLEGATIONS

126.  Plaintiff adopts and restates the preceding paragraphs as if fully set forth herein.

127.  The acts, conduct and omissions of Defendants, as alleged throughout the Complaint were willful and malicious. Defendants committed these acts with a conscious disregard for the rights and safety of Plaintiff and other consumers and for the primary purpose

of increasing Defendants' profits from the sale and distribution of its product. Defendants' outrageous and unconscionable conduct warrants an award of exemplary and punitive damages against Defendants in an amount appropriate to punish and make an example of Defendants.

128.    Prior to the manufacturing, sale, and distribution of its product, Defendants knew that said drywall or sheetrock was in a defective condition as previously described herein and knew that those consumers or homeowners would experience and did experience damages due to the corrosive off-gassing.  Further, Defendants, through their officers, directors, managers, and agents, knew that the drywall or sheetrock presented a substantial and unreasonable risk of harm to Plaintiffs or other consumers and Defendants unreasonably subjected all consumers of said drywall or sheetrock to risk of injury or damages.

129.    Despite their knowledge, Defendants, acting through their officers, directors and managing agents, for the purpose of enhancing Defendants' profits, knowingly and deliberately failed to remedy the known defects in their drywall and failed to warn the public, including Plaintiff, of the extreme risk of injury occasioned by said defects inherent in the defective drywall or sheetrock. Defendants and their agents, officers, and directors intentionally proceeded with the manufacturing, sale, distribution, and marketing of drywall or sheetrock knowing these actions would expose persons to damages in order to advance Defendants' pecuniary interest and monetary profits.

130.    Defendants' conduct was so contemptible that it would be looked down upon and despised by ordinary decent people, and was carried on by Defendants with willful and conscious disregard for the safety of Plaintiff and other consumers, entitling Plaintiff to exemplary damages.

## **EQUITABLE AND INJUNCTIVE RELIEF**

131.    Plaintiff adopts and restates the preceding paragraphs as if fully set forth herein.

132.     Plaintiff is without adequate remedy at law, rendering injunctive and other equitable relief appropriate.

133.     Plaintiff will suffer irreparable harm if the Court does not render the injunctive relief as set forth herein, and if Defendants are not ordered to recall, rescind, and/or repair the homes and structures owned by Plaintiff.

134.     Plaintiff demands injunctive and equitable relief and further, that Defendants be ordered to: (1) remediate, repair and/or replace the drywall in the homes and structures upon proof by the Defendants of the feasibility of such remedy or repair; (2) cease and desist from misrepresenting to the general public that there is no defect in, or danger associated with the drywall; and, (3) institute, at their own cost, a public awareness campaign to alert the general public of the defect and dangers associated with their defective drywall.

135.     Until Defendants' defective drywall has been removed and Plaintiff's home is properly remediated, Defendants should provide continuing environmental and air monitoring in the home.

## **PRAYER FOR RELIEF**

**WHEREFORE** Plaintiff, demands upon Defendants jointly and severally for:

a.   Compensatory damages;

b.   Statutory damages;

c.   Punitive damages;

d.   Pre and post-judgment interest as allowed by law;

e.   Injunctive relief;

f.   An award of attorney's fees as allowed by law;

g.   An award of taxable costs; and

h.   Any and all such further relief as this Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury of twelve (12) as to all issues so triable as a matter of right.

/s/ *James V. Doyle, Jr.*

James V. Doyle, Jr.
DOYLE LAW FIRM, PC
2100 Southbridge Pkwy., Suite 650
Birmingham, AL 35209
Tele: 205-533-9500
Fax: 844-638-5812
jimmy@doylefirm.com

*Attorney for Plaintiff*