UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN RE:  CHINESE-MANUFACTURED DRYWALL       *
PRODUCTS LIABILITY LITIGATION               *
                                            *   CIVIL ACTION
                                            *
                                            *   MDL NO. 2047
                                            *
                                            *   SECTION L (2)
**THIS DOCUMENT RELATES TO:**                *
*Elizabeth Bennett, et al. v. Gebr. Knauf*   *
*Verwaltungsgesellschaft, KG, et al.*, No. 14-2722  *

## ORDER & REASONS

Pending before the Court is Defendants' Motion to Strike Plaintiffs' Motion for Leave to File Additional Exhibits in Support of Opposition to Summary Judgement. R. Doc. 22824. Plaintiffs failed to timely oppose the motion. Having considered the parties' arguments and the applicable law, the Court now rules as follows.

### I.      BACKGROUND

From 2004 through 2006, the housing boom in Florida and rebuilding efforts necessitated by Hurricanes Rita and Katrina led to a shortage of construction materials, including drywall. As a result, drywall manufactured in China was brought into the United States and used to construct and refurbish homes in coastal areas of the country, notably the Gulf Coast and East Coast. Sometime after the installation of the Chinese drywall, homeowners began to complain of emissions of foul-smelling gas, the corrosion and blackening of metal wiring, surfaces, and objects, and the breaking down of appliances and electrical devices in their homes. *See In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, 894 F. Supp. 2d 819, 829–30 (E.D. La. 2012), *aff'd*, 742 F.3d 576 (5th Cir. 2014). Many of these homeowners also began to complain of various physical afflictions believed to be caused by the Chinese drywall.

These homeowners then began to file suit in various state and federal courts against homebuilders, developers, installers, realtors, brokers, suppliers, importers, exporters, distributors, and manufacturers who were involved with the Chinese drywall. As a result, many homebuilders also filed suit seeking to recoup their damages. Because of the commonality of facts in the various cases, this litigation was designated as a multidistrict litigation. Pursuant to a Transfer Order from the United States Judicial Panel on Multidistrict Litigation on June 15, 2009, all federal cases involving Chinese drywall were consolidated for pretrial proceedings in MDL 09-2047 before this Court. Since that date, numerous cases have been consolidated, involving thousands of individual claims; over 20,000 documents have been entered into the record, millions of documents have been exchanged in discovery, depositions have been taken in the United States and in China, and over thirty Pretrial Orders have been issued; the Court has appointed steering committees and liaison counsel for plaintiffs, homebuilders, insurers, installers, and manufacturers, and it has presided over monthly status conferences, hearings, and several bellwether trials.

The Chinese drywall at issue was largely manufactured by two groups of defendants: (1) the Knauf Entities and (2) the Taishan Entities. The litigation has focused upon these two entities and their downstream associates and has proceeded on strikingly different tracks for the claims against each group.

A. The Knauf Defendants

The Knauf Entities are German-based, international manufacturers of building products, including drywall, whose Chinese subsidiary, Knauf Plasterboard (Tianjin) Co., Ltd. ("KPT"), advertised and sold its Chinese drywall in the United States. The Knauf Entities are named defendants in numerous cases consolidated with the MDL litigation and litigation in state courts.

2

The Knauf Entities first entered their appearance in the MDL litigation on July 2, 2009. Thereafter, the Court presided over a bellwether trial in *Hernandez v. Knauf Gips KG*, Case No. 09-6050, involving a homeowner's claims against KPT for defective drywall. The Court found in favor of the plaintiff family in *Hernandez*, issued a detailed Findings of Fact and Conclusions of Law, and entered a Judgment in the amount of $164,049.64, including remediation damages in the amount of $136,940.46—which represented a remediation cost of $81.13 per square foot based on the footprint square footage of the house.

Subsequently, the Knauf Entities agreed to institute a pilot remediation program utilizing the remediation protocol formulated by the Court from the evidence in *Hernandez*. The Knauf pilot remediation program is now completed and has remediated more than 2,200 homes containing KPT Chinese drywall using the same general protocol. At the Court's urging, the parties began working together to monetize this program and make it available to a broader class of plaintiffs.

On December 20, 2011, the Knauf Entities and the PSC entered into a global, class Settlement Agreement ("Knauf Settlement Agreement"), which was designed to resolve all Knauf-related, Chinese drywall claims. In addition to the Knauf Settlement Agreement and after a jury trial in a bellwether case, numerous defendants in the chain-of-commerce with the Knauf Entities have entered into class settlement agreements, the effect of which settles almost all of the Knauf Entities' chain-of-commerce litigation. The total amount of the Knauf Settlement is approximately $1.1 billion.

B. The Bennett Class Action

3

The instant matter is a purported class action filed on November 13, 2014 by Elizabeth Bennett in the Northern District of Alabama. [1] Ms. Bennet raised claims on her own behalf and on the behalf of a nationwide class of similarly situated homeowners who allegedly suffered damages due to the presence of defective Chinese drywall in their homes. The Plaintiffs raised claims against the Knauf Entities for negligence, negligence per se, strict liability, breach of express and/or implied warranty, redhibition, violations of the Louisiana Products Liability Act, private nuisance, negligent discharge of a corrosive substance, unjust enrichment, violations of consumer protection laws, and equitable and injunctive relief and medical monitoring with respect to the manufacture of allegedly defective Chinese drywall. In January 2015, the Judicial Panel on Multidistrict Litigation transferred the case to the Eastern District of Louisiana and consolidated it with the *In re Chinese Manufactured Drywall Liability Litigation*, MLD 09-2047, currently pending before this Court.

On October 31, 2019, the Court granted leave for Plaintiffs to add several new Plaintiffs to the action. R. Doc. 22357. The case now involves approximately 130 affected properties. With discovery complete, the Knauf Defendants have begun to file dispositive motions targeting the claims of several individual plaintiffs.

**II.    PENDING MOTION**

On March 31, 2020, Defendants filed a Motion for Summary Judgment and Alternative Motion for Adverse Inference, targeting the claims of Byron and Fern Robbins. R. Doc. 22686. Specifically, Defendants explained that at their depositions, the Robbinses alluded to the existence

---

[1] On January 22, 2020, the Court granted Defendants' Motion to Deny Class Certification, finding that the predominance requirement of Rule 23(b)(3) was not satisfied. R. Docs. 22524, 22528. Specifically, the Court noted that the variety in the individual claims, which included personal injury and property damage claims, theories of liability, applicable state laws and defenses, and different damage calculations precluded the finding of predominance necessary to warrant class certification.

4

of a pre-purchase home inspection report and a lab report. However, despite Defendants' request, these documents were not produced before the close of discovery on December 31, 2019. Plaintiffs oppose the motion for summary judgment. R. Doc. 22795. On May 12, 2020, Plaintiffs filed an ex-parte Motion for Leave to File Additional Exhibits in support of their opposition, explaining that they had located the two outstanding documents upon which Defendants' motion was based, in addition to other exhibits "germane to the issues raised by Defendants." R. Doc. 22820 at 1.

On May 12, 2020, Defendants filed the instant motion, seeking to strike Plaintiffs' Motion to File Additional Exhibits and preclude the Court from considering the documents Plaintiffs intend to introduce. R. Doc. 22824-1. Defendants characterize the introduction of these exhibits as "trial by ambush," as Defendants "had no opportunity to depose the Robbinses regarding these documents" nor "the opportunity to address the documents in their summary judgment briefing" as Defendants' underlying motion for summary judgment was set for May 13, 2020, the day after Plaintiffs' motion was filed. R. Doc. 22824-1 at 2–3.

Plaintiffs' opposition was due on May 19, 2020. No such opposition was filed. Accordingly, the Courts considers this motion to be unopposed.

### III.   LAW & DISCUSSION

As an initial matter, the Court recognizes the procedural complexity of this case and is loath to prolong the resolution of it. Nevertheless, the Court agrees that Plaintiffs' last-minute attempt to introduce documents that have the potential to upend Defendants' legal theories, especially when these documents were requested by Defendants while discovery was still ongoing, is tantamount to "trial by ambush." R. Doc. 22824-1 at 2. Plaintiffs have asked this Court to consider evidence that was previously hidden from Defendants' view. By failing to produce these documents by the close of discovery, let alone at the time they were originally requested,

5

Defendants have been denied the opportunity to both depose Plaintiffs about their contents and address the documents in their briefings to this Court.

Despite the significant obstacles caused by Plaintiffs' behavior in this matter, the Court declines to strike the motion at this time. Instead, in the interest of justice to both parties, the Court will allow Defendants to re-depose Plaintiffs with respect to these newly-produced documents and supplement their Motion for Summary Judgment to reflect any additional facts or arguments developed in light of this deposition. Because Plaintiffs caused hardship to Defendants by claiming that the documents had been discarded and then producing them at the eleventh hour, rendering Defendants unable to examine them or make use of their contents, this deposition is to be at Plaintiffs' cost. In the event that Plaintiffs fail to abide by this Order, the Court will strike Plaintiffs' motion and prohibit Plaintiffs from filing these additional documents.

### IV.  CONCLUSION

Based on the foregoing,

**IT IS ORDERED** that Defendants' Motion to Strike Plaintiffs' Motion for Leave to File Additional Exhibits in Support of Opposition to Summary Judgement, R. Doc. 22824, is **DENIED** without prejudice to the right to refile the motion in the event Plaintiffs fail to abide by this Order.

**IT IS FURTHER ORDERED** the parties arrange a second deposition of the Robbinses to discuss the documents attached to Plaintiffs' Motion for Leave to File Additional Exhibits in Support of Opposition to Summary Judgment (Doc. 22795), R. Doc. 22824, at Plaintiffs' cost, by Wednesday, June 17, 2020.

**IT IS FURTHER ORDERED** that the submission date on Defendants' Motion for Summary Judgment and Alternative Motion for Adverse Inference, R. Doc. 22686, is

**CONTINUED** to July 8, 2020. Defendants' supplemental motion shall be filed by Tuesday, June 23, 2020, and Plaintiffs' supplemental response shall be filed by Tuesday, June 30, 2020.

**IT IS FURTHER ORDERED** that Defendants' Motion to Expedite Hearing of the Knauf Defendants' Motion to Strike Supplemental Claims in Amended Complaints, R. Doc. 22849, is **DENIED** as moot.

New Orleans, Louisiana, this 20th day of May, 2020.

_____
UNITED STATES DISTRICT JUDGE