# EXHIBIT "A"

-----Original Message-----
From: Steve Herman <SHERMAN@hhklawfirm.com>
Sent: Monday, September 09, 2019 12:10 PM
To: Jake Woody <jswoody@browngreer.com>
Cc: Russ Herman <RHERMAN@hhklawfirm.com>; Lenny Davis
<LDAVIS@hhklawfirm.com>; Kerry Miller (kmiller@fpkc.com)
<kmiller@fishmanhaygood.com>; ddysart@fishmanhaygood.com;
Ashley D. Hipps <ahipps@browngreer.com>
Subject: CDW - Knauf Settlement - Guilford Dieuvil

Thanks. Appreciate it.  Apologize, but I wasn't involved in processing
individual Knauf Settlement Claims and am not familiar with the
process.  Is this what would have / could have / should have been
submitted in terms of "Other Losses" in terms of the pre-remediation
Alternative Living Expense / Storage type costs?  Or is that something
separate?  And, if separate, what did, or could have / should have Doyle
/ Dieuvil submitted in that regard?

Thanks.

Exhibit "A"

-----Original Message-----
From: Steve Herman <SHERMAN@hhklawfirm.com>
Sent: Saturday, September 07, 2019 4:58 PM
To: Jake Woody <jswoody@browngreer.com>
Cc: Russ Herman <RHERMAN@hhklawfirm.com>; Lenny Davis
<LDAVIS@hhklawfirm.com>; Kerry Miller (kmiller@fpkc.com)
<kmiller@fishmanhaygood.com>; ddysart@fishmanhaygood.com
Subject: CDW - Knauf Settlement - Guilford Dieuvil

Hey. Hope things are well.  When you get the chance, could you please
send us the claim that Mr. Dieuvil submitted for Other Losses, the
determination, and the payment.

Thanks.

Have a good rest of the weekend.

Exhibit "A-9"

# EXHIBIT "B"

-----Original Message-----
From: Steve Herman <SHERMAN@hhklawfirm.com>
Sent: Wednesday, September 11, 2019 7:01 AM
To: Jake Woody <jswoody@browngreer.com>
Cc: Russ Herman <RHERMAN@hhklawfirm.com>; Lenny Davis
<LDAVIS@hhklawfirm.com>; Kerry Miller (kmiller@fpkc.com)
<kmiller@fishmanhaygood.com>; ddysart@fishmanhaygood.com;
Ashley D. Hipps <ahipps@browngreer.com>
Subject: CDW - Knauf Settlement - Guilford Dieuvil

Thanks.  When you get the chance, could you please send what was
submitted and the denial?  Thanks.

-----Original Message-----
From: Jake Woody <jswoody@browngreer.com>
Sent: Wednesday, September 11, 2019 8:05 AM
To: Steve Herman <SHERMAN@hhklawfirm.com>
Cc: Russ Herman <RHERMAN@hhklawfirm.com>; Lenny Davis
<LDAVIS@hhklawfirm.com>; Kerry Miller (kmiller@fpkc.com)
<kmiller@fishmanhaygood.com>; ddysart@fishmanhaygood.com;
Ashley D. Hipps <ahipps@browngreer.com>
Subject: RE: CDW - Knauf Settlement - Guilford Dieuvil

Yes, I've attached his claim form and our denial.

Exhibit "B"

# EXHIBIT "C"

# CHINESE DRYWALL SETTLEMENT PROGRAM
## MDL 2047

## NOTICE OF APPEAL

### I. CLAIMANT AND CLAIM INFORMATION

| Claimant Name | Last<br>Dieuvil | First<br>Guilford | Middle |
|---|---|---|---|
| Representative Claimant Name | Last | First | Middle |
| Claimant ID | 113019 | **Claim ID** | 21992 |
| Claim Type | Pre-Remediation Alternative Living Expenses | **Affected Property ID** | 16534 |
| Affected Property Address | Street<br>8757 Baystone Cove | | Unit |
| | City<br>Boynton Beach | State<br>FL | Zip code<br>33473 |
| Law Firm | Doyle Law Firm, PC | | |

### II. BASIS OF APPEAL

Use the space below to provide information regarding the basis of your Appeal. If necessary, this information will be transmitted to the Special Master, along with all documents related to your claim. The Special Master will review your Appeal and will notify you once a determination has been made. You must attach all documents that support your Appeal if you have not already submitted them. You may attach additional sheets as necessary.

Exhibit "C"

## III. HOW TO CONTACT US WITH QUESTIONS OR FOR HELP

We are available to help you if you have questions or need assistance. If you have any questions about this Notice or the status of your claim(s) or need help, contact the Settlement Administrator's Office at (866) 866-1729 or send an email to **CDWQuestions@browngreer.com.**

## IV. HOW TO SUBMIT THIS NOTICE

| | |
|---|---|
| **By Online Portal**<br>(Submitted no later than 12:00 midnight local time on your submission deadline) | Visit **https://www3.browngreer.com/drywall** to upload required documents. |
| **By Mail**<br>(Postmarked no later than your submission deadline) | Chinese Drywall Settlement Administrator<br>P.O. Box 25401<br>Richmond, Virginia 23260 |
| **By Overnight, Certified or Registered Mail**<br>(Postmarked no later than your submission deadline) | BrownGreer, PLC c/o Chinese Drywall Settlement Administrator<br>250 Rocketts Way<br>Richmond, Virginia 23231 |
| **By Facsimile**<br>(Sent no later than 12:00 midnight local time on your submission deadline) | (804) 521-7299 |
| **By Email**<br>(Sent no later than 12:00 midnight local time on your submission deadline) | **CDWQuestions@browngreer.com** |

# EXHIBIT "D"

# CHINESE DRYWALL SETTLEMENT PROGRAM

## MDL 2047

### Chinese Drywall Settlement Program
### Pre-Remediation Alternative Living Expenses Affidavit

Pursuant to the Court Approved Settlement Agreement regarding Other Loss Fund Benefits, a Residential Owner filing for alternative living expenses incurred prior to remediation arising from the need to vacate the Affected Property as a result of property damage caused by Chinese Drywall, must submit an affidavit in support of the claim. The Settlement Administrator may consider this Affidavit in making a determination of eligibility, but the submission of this Affidavit does not constitute conclusive proof of the facts stated herein. This Affidavit will not be considered unless it is personally signed by the claimant. To submit this Affidavit, upload it directly to the Chinese Drywall Settlement Portal at https://www3.browngreer.com/drywall. If you intend to use this Affidavit to provide information about multiple properties, attach a list of properties as a separate sheet and upload it directly to the Chinese Drywall Settlement Portal for each Affected Property to which the Affidavit applies. You may also attach additional sheets if you wish to provide additional information about your Affected Property. If you cannot upload this Affidavit to the Chinese Drywall Settlement Portal, email it to CDWQuestions@browngreer.com, or send by U.S. Mail to:

**Chinese Drywall Settlement Administrator**
**P.O. Box 25401**
**Richmond, Virginia 23260**

### A. Claimant Information

| | | | |
|---|---|---|---|
| **1. Name:** | Last Name: Dieuvil | First Name: Guilfort | Middle Initial: |
| **2. Chinese Drywall Settlement Program Claimant ID Number:** | | 1 1 3 0 1 9 | |
| **3. Social Security Number or Individual Taxpayer Identification Number:** | | SSN or ITIN | |
| **4. Affected Property Identification Number (if you know it):** | | 00-42-45-32-03-000-0790 | |
| **5. Affected Property Address:** | Street: 8757 Baystone Cove | State: Florida | Zip Code: 33473 |
| | City: Boynton Beach | | |
| **6. I moved out of the home due to damage caused by Chinese Drywall on:** | | 09 / 20 / 2010 (Month/Day/Year) | |
| **7. All documents submitted in support of my claim for Alternative Living Expenses are true, accurate, and complete.** | ☒ Yes ☐ No | | |

### B. Certification

I certify and declare under penalty of perjury pursuant to 28 U.S.C. Section 1746 that I have read and reviewed the Chinese Drywall Settlement Program Pre-Remediation Alternative Living Expenses Claim Form, and evidence submitted in support of this claim and certify under penalty of perjury that all information contained therein is true, accurate, and complete to the best of my knowledge. I understand that false statements or claims made in connection with this Affidavit and my claim may result in fines, imprisonment, and/or any other remedy available by law. I certify that I have made a good faith effort to obtain documentary evidence in support of my claim, and that if I obtain documentary evidence after I submit this Affidavit I will provide this evidence to the Settlement Administrator as soon as practicable, but no later than any other relevant deadlines set by the Settlement Administrator.

### C. Signature

| | | |
|---|---|---|
| **Claimant Signature:** | *[signature]* | **Date:** 05 / 15 / 2014 (Month/Day/Year) |
| **Name:** | Last Name: Dieuvil | First Name: Guilfort   Middle Initial: |

CDW PRALE-AFF

SEE Exhibit "D"

# CHINESE DRYWALL SETTLEMENT PROGRAM
## MDL 2047

### CHINESE DRYWALL SETTLEMENT PROGRAM
### VERIFICATION OF CLAIMS

All claimants must submit this Verification of Claims in support of Chinese Drywall Claims. You need only submit this Affidavit once and the Settlement Administrator will review it in conjunction with submitted claims. To submit this Affidavit, upload it directly to the Chinese Drywall Settlement Portal at https://www3.browngreer.com/drywall. If you cannot upload this Affidavit to the Chinese Drywall Settlement Portal, email it to CDWQuestions@browngreer.com, or send by U.S. Mail to:

**Chinese Drywall Settlement Administrator**
**P.O. Box 25401**
**Richmond, Virginia 23260**

### A. CLAIMANT INFORMATION

| | | Last Name/Business Name | First | M.I. |
|---|---|---|---|---|
| 1. | **Claimant Name:** | Dieuvil | Guilfort | |
| 2. | **Claimant Identification Number (if you know it):** | 113019 | | |
| 3. | **SSN or TIN (if you do not know the Affected Property Identification Number):** | 100 42 46 32 03 000 107190 | | |

### B. VERIFICATION OF CLAIMS

I certify and declare under penalty of perjury pursuant to 28 U.S.C. Section 1746 that I have read and reviewed all Chinese Drywall Settlement Program Claim Form(s) and evidence submitted in support of all claims and certify under penalty of perjury that all information contained therein is true, accurate, and complete to the best of my knowledge. I understand that false statements or claims made in connection with this Affidavit and my claim may result in fines, imprisonment, and/or any other remedy available by law.

| Claimant's Signature: | | Date: | 05/15/14 |
|---|---|---|---|
| | | | (Month/Day/Year) |

| Title (if a business): | |
|---|---|

| | First | Last | M.I. |
|---|---|---|---|
| **Printed Name:** | Guilfort | Dieuvil | |

CDW AFF-2

1

Form **W-9**
(Rev. December 2011)
Department of the Treasury
Internal Revenue Service

**Request for Taxpayer**
**Identification Number and Certification**

Give Form to the
requester. Do not
send to the IRS.

Name (as shown on your income tax return)
**GUILFORT DIEUVIL**

Business name/disregarded entity name, if different from above

Check appropriate box for federal tax classification:

[✓] Individual/sole proprietor   [ ] C Corporation   [ ] S Corporation   [ ] Partnership   [ ] Trust/estate

[ ] Exempt payee

[ ] Limited liability company. Enter the tax classification (C=C corporation, S=S corporation, P=partnership) ▶ _____

[ ] Other (see instructions) ▶

Address (number, street, and apt. or suite no.)
**8757 BAYSTONE COVE**

Requester's name and address (optional)

City, state, and ZIP code
**BOYNTON BEACH, FL 33473**

List account number(s) here (optional)

Print or type
See Specific Instructions on page 2.

---

**Part I**   **Taxpayer Identification Number (TIN)**

Enter your TIN in the appropriate box. The TIN provided must match the name given on the "Name" line to avoid backup withholding. For individuals, this is your social security number (SSN). However, for a resident alien, sole proprietor, or disregarded entity, see the Part I instructions on page 3. For other entities, it is your employer identification number (EIN). If you do not have a number, see *How to get a TIN* on page 3.

**Note.** If the account is in more than one name, see the chart on page 4 for guidelines on whose number to enter.

Social security number
■ ■ ■ - ■ ■ - ■ ■ ■ ■

Employer identification number

---

**Part II**   **Certification**

Under penalties of perjury, I certify that:

1. The number shown on this form is my correct taxpayer identification number (or I am waiting for a number to be issued to me), and

2. I am not subject to backup withholding because: (a) I am exempt from backup withholding, or (b) I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of a failure to report all interest or dividends, or (c) the IRS has notified me that I am no longer subject to backup withholding, and

3. I am a U.S. citizen or other U.S. person (defined below).

**Certification instructions.** You must cross out item 2 above if you have been notified by the IRS that you are currently subject to backup withholding because you have failed to report all interest and dividends on your tax return. For real estate transactions, item 2 does not apply. For mortgage interest paid, acquisition or abandonment of secured property, cancellation of debt, contributions to an individual retirement arrangement (IRA), and generally, payments other than interest and dividends, you are not required to sign the certification, but you must provide your correct TIN. See the instructions on page 4.

Sign
Here

Signature of
U.S. person ▶

Date ▶ 05/15/14

## General Instructions

Section references are to the Internal Revenue Code unless otherwise noted.

## Purpose of Form

A person who is required to file an information return with the IRS must obtain your correct taxpayer identification number (TIN) to report, for example, income paid to you, real estate transactions, mortgage interest you paid, acquisition or abandonment of secured property, cancellation of debt, or contributions you made to an IRA.

Use Form W-9 only if you are a U.S. person (including a resident alien), to provide your correct TIN to the person requesting it (the requester) and, when applicable, to:

1. Certify that the TIN you are giving is correct (or you are waiting for a number to be issued),

2. Certify that you are not subject to backup withholding, or

3. Claim exemption from backup withholding if you are a U.S. exempt payee. If applicable, you are also certifying that as a U.S. person, your allocable share of any partnership income from a U.S. trade or business is not subject to the withholding tax on foreign partners' share of effectively connected income.

Note. If a requester gives you a form other than Form W-9 to request your TIN, you must use the requester's form if it is substantially similar to this Form W-9.

**Definition of a U.S. person.** For federal tax purposes, you are considered a U.S. person if you are:

• An individual who is a U.S. citizen or U.S. resident alien,

• A partnership, corporation, company, or association created or organized in the United States or under the laws of the United States,

• An estate (other than a foreign estate), or

• A domestic trust (as defined in Regulations section 301.7701-7).

**Special rules for partnerships.** Partnerships that conduct a trade or business in the United States are generally required to pay a withholding tax on any foreign partners' share of income from such business. Further, in certain cases where a Form W-9 has not been received, a partnership is required to presume that a partner is a foreign person, and pay the withholding tax. Therefore, if you are a U.S. person that is a partner in a partnership conducting a trade or business in the United States, provide Form W-9 to the partnership to establish your U.S. status and avoid withholding on your share of partnership income.

Cat. No. 10231X

Form **W-9** (Rev. 12-2011)

Page **2**

Form W-9 (Rev. 12-2011)

The person who gives Form W-9 to the partnership for purposes of establishing its U.S. status and avoiding withholding on its allocable share of net income from the partnership conducting a trade or business in the United States is in the following cases:

• The U.S. owner of a disregarded entity and not the entity,

• The U.S. grantor or other owner of a grantor trust and not the trust, and

• The U.S. trust (other than a grantor trust) and not the beneficiaries of the trust.

**Foreign person.** If you are a foreign person, do not use Form W-9. Instead, use the appropriate Form W-8 (see Publication 515, Withholding of Tax on Nonresident Aliens and Foreign Entities).

**Nonresident alien who becomes a resident alien.** Generally, only a nonresident alien individual may use the terms of a tax treaty to reduce or eliminate U.S. tax on certain types of income. However, most tax treaties contain a provision known as a "saving clause." Exceptions specified in the saving clause may permit an exemption from tax to continue for certain types of income even after the payee has otherwise become a U.S. resident alien for tax purposes.

If you are a U.S. resident alien who is relying on an exception contained in the saving clause of a tax treaty to claim an exemption from U.S. tax on certain types of income, you must attach a statement to Form W-9 that specifies the following five items:

1. The treaty country. Generally, this must be the same treaty under which you claimed exemption from tax as a nonresident alien.

2. The treaty article addressing the income.

3. The article number (or location) in the tax treaty that contains the saving clause and its exceptions.

4. The type and amount of income that qualifies for the exemption from tax.

5. Sufficient facts to justify the exemption from tax under the terms of the treaty article.

*Example.* Article 20 of the U.S.-China income tax treaty allows an exemption from tax for scholarship income received by a Chinese student temporarily present in the United States. Under U.S. law, this student will become a resident alien for tax purposes if his or her stay in the United States exceeds 5 calendar years. However, paragraph 2 of the first Protocol to the U.S.-China treaty (dated April 30, 1984) allows the provisions of Article 20 to continue to apply even after the Chinese student becomes a resident alien of the United States. A Chinese student who qualifies for this exception (under paragraph 2 of the first protocol) and is relying on this exception to claim an exemption from tax on his or her scholarship or fellowship income would attach to Form W-9 a statement that includes the information described above to support that exemption.

If you are a nonresident alien or a foreign entity not subject to backup withholding, give the requester the appropriate completed Form W-8.

**What is backup withholding?** Persons making certain payments to you must under certain conditions withhold and pay to the IRS a percentage of such payments. This is called "backup withholding." Payments that may be subject to backup withholding include interest, tax-exempt interest, dividends, broker and barter exchange transactions, rents, royalties, nonemployee pay, and certain payments from fishing boat operators. Real estate transactions are not subject to backup withholding.

You will not be subject to backup withholding on payments you receive if you give the requester your correct TIN, make the proper certifications, and report all your taxable interest and dividends on your tax return.

**Payments you receive will be subject to backup withholding if:**

1. You do not furnish your TIN to the requester,

2. You do not certify your TIN when required (see the Part II instructions on page 3 for details),

3. The IRS tells the requester that you furnished an incorrect TIN,

4. The IRS tells you that you are subject to backup withholding because you did not report all your interest and dividends on your tax return (for reportable interest and dividends only), or

5. You do not certify to the requester that you are not subject to backup withholding under 4 above (for reportable interest and dividend accounts opened after 1983 only).

Certain payees and payments are exempt from backup withholding. See the instructions below and the separate Instructions for the Requester of Form W-9.

Also see *Special rules for partnerships* on page 1.

## Updating Your Information

You must provide updated information to any person to whom you claimed to be an exempt payee if you are no longer an exempt payee and anticipate receiving reportable payments in the future from this person. For example, you may need to provide updated information if you are a C corporation that elects to be an S corporation, or if you no longer are tax exempt. In addition, you must furnish a new Form W-9 if the name or TIN changes for the account, for example, if the grantor of a grantor trust dies.

## Penalties

**Failure to furnish TIN.** If you fail to furnish your correct TIN to a requester, you are subject to a penalty of $50 for each such failure unless your failure is due to reasonable cause and not to willful neglect.

**Civil penalty for false information with respect to withholding.** If you make a false statement with no reasonable basis that results in no backup withholding, you are subject to a $500 penalty.

**Criminal penalty for falsifying information.** Willfully falsifying certifications or affirmations may subject you to criminal penalties including fines and/or imprisonment.

**Misuse of TINs.** If the requester discloses or uses TINs in violation of federal law, the requester may be subject to civil and criminal penalties.

## Specific Instructions

### Name

If you are an individual, you must generally enter the name shown on your income tax return. However, if you have changed your last name, for instance, due to marriage without informing the Social Security Administration of the name change, enter your first name, the last name shown on your social security card, and your new last name.

If the account is in joint names, list first, and then circle, the name of the person or entity whose number you entered in Part I of the form.

**Sole proprietor.** Enter your individual name as shown on your income tax return on the "Name" line. You may enter your business, trade, or "doing business as (DBA)" name on the "Business name/disregarded entity name" line.

**Partnership, C Corporation, or S Corporation.** Enter the entity's name on the "Name" line and any business, trade, or "doing business as (DBA) name" on the "Business name/disregarded entity name" line.

**Disregarded entity.** Enter the owner's name on the "Name" line. The name of the entity entered on the "Name" line should never be a disregarded entity. The name on the "Name" line must be the name shown on the income tax return on which the income will be reported. For example, if a foreign LLC that is treated as a disregarded entity for U.S. federal tax purposes has a domestic owner, the domestic owner's name is required to be provided on the "Name" line. If the direct owner of the entity is also a disregarded entity, enter the first owner that is not disregarded for federal tax purposes. Enter the disregarded entity's name on the "Business name/disregarded entity name" line. If the owner of the disregarded entity is a foreign person, you must complete an appropriate Form W-8.

**Note.** Check the appropriate box for the federal tax classification of the person whose name is entered on the "Name" line (Individual/sole proprietor, Partnership, C Corporation, S Corporation, Trust/estate).

**Limited Liability Company (LLC).** If the person identified on the "Name" line is an LLC, check the "Limited liability company" box only and enter the appropriate code for the tax classification in the space provided. If you are an LLC that is treated as a partnership for federal tax purposes, enter "P" for partnership. If you are an LLC that has filed a Form 8832 or a Form 2553 to be taxed as a corporation, enter "C" for C corporation or "S" for S corporation. If you are an LLC that is disregarded as an entity separate from its owner under Regulation section 301.7701-3 (except for employment and excise tax), do not check the LLC box unless the owner of the LLC (required to be identified on the "Name" line) is another LLC that is not disregarded for federal tax purposes. If the LLC is disregarded as an entity separate from its owner, enter the appropriate tax classification of the owner identified on the "Name" line.

Other entities. Enter your business name as shown on required federal tax documents on the "Name" line. This name should match the name shown on the charter or other legal document creating the entity. You may enter any business, trade, or DBA name on the "Business name/ disregarded entity name" line.

## Exempt Payee

If you are exempt from backup withholding, enter your name as described above and check the appropriate box for your status, then check the "Exempt payee" box in the line following the "Business name/ disregarded entity name", sign and date the form.

Generally, individuals (including sole proprietors) are not exempt from backup withholding. Corporations are exempt from backup withholding for certain payments, such as interest and dividends.

**Note.** If you are exempt from backup withholding, you should still complete this form to avoid possible erroneous backup withholding.

The following payees are exempt from backup withholding:

1. An organization exempt from tax under section 501(a), any IRA, or a custodial account under section 403(b)(7) if the account satisfies the requirements of section 401(f)(2),

2. The United States or any of its agencies or instrumentalities,

3. A state, the District of Columbia, a possession of the United States, or any of their political subdivisions or instrumentalities,

4. A foreign government or any of its political subdivisions, agencies, or instrumentalities, or

5. An international organization or any of its agencies or instrumentalities.

Other payees that may be exempt from backup withholding include:

6. A corporation,

7. A foreign central bank of issue,

8. A dealer in securities or commodities required to register in the United States, the District of Columbia, or a possession of the United States,

9. A futures commission merchant registered with the Commodity Futures Trading Commission,

10. A real estate investment trust,

11. An entity registered at all times during the tax year under the Investment Company Act of 1940,

12. A common trust fund operated by a bank under section 584(a),

13. A financial institution,

14. A middleman known in the investment community as a nominee or custodian, or

15. A trust exempt from tax under section 664 or described in section 4947.

The following chart shows types of payments that may be exempt from backup withholding. The chart applies to the exempt payees listed above, 1 through 15.

| IF the payment is for ... | THEN the payment is exempt for ... |
| --- | --- |
| Interest and dividend payments | All exempt payees except for 9 |
| Broker transactions | Exempt payees 1 through 7 and 13. Also, C corporations. |
| Barter exchange transactions and patronage dividends | Exempt payees 1 through 5 |
| Payments over $600 required to be reported and direct sales over $5,000 [1] | Generally, exempt payees 1 through 7 [2] |

[1] See Form 1099-MISC, Miscellaneous Income, and its instructions.

[2] However, the following payments made to a corporation and reportable on Form 1099-MISC are not exempt from backup withholding: medical and health care payments, attorneys' fees, gross proceeds paid to an attorney, and payments for services paid by a federal executive agency.

## Part I. Taxpayer Identification Number (TIN)

Enter your TIN in the appropriate box. If you are a resident alien and you do not have and are not eligible to get an SSN, your TIN is your IRS individual taxpayer identification number (ITIN). Enter it in the social security number box. If you do not have an ITIN, see How to get a TIN below.

If you are a sole proprietor and you have an EIN, you may enter either your SSN or EIN. However, the IRS prefers that you use your SSN.

If you are a single-member LLC that is disregarded as an entity separate from its owner (see Limited Liability Company (LLC) on page 2), enter the owner's SSN (or EIN, if the owner has one). Do not enter the disregarded entity's EIN. If the LLC is classified as a corporation or partnership, enter the entity's EIN.

**Note.** See the chart on page 4 for further clarification of name and TIN combinations.

How to get a TIN. If you do not have a TIN, apply for one immediately. To apply for an SSN, get Form SS-5, Application for a Social Security Card, from your local Social Security Administration office or get this form online at www.ssa.gov. You may also get this form by calling 1-800-772-1213. Use Form W-7, Application for IRS Individual Taxpayer Identification Number, to apply for an ITIN, or Form SS-4, Application for Employer Identification Number, to apply for an EIN. You can apply for an EIN online by accessing the IRS website at www.irs.gov/businesses and clicking on Employer Identification Number (EIN) under Starting a Business. You can get Forms W-7 and SS-4 from the IRS by visiting IRS.gov or by calling 1-800-TAX-FORM (1-800-829-3676).

If you are asked to complete Form W-9 but do not have a TIN, write "Applied For" in the space for the TIN, sign and date the form, and give it to the requester. For interest and dividend payments, and certain payments made with respect to readily tradable instruments, generally you will have 60 days to get a TIN and give it to the requester before you are subject to backup withholding on payments. The 60-day rule does not apply to other types of payments. You will be subject to backup withholding on all such payments until you provide your TIN to the requester.

**Note.** Entering "Applied For" means that you have already applied for a TIN or that you intend to apply for one soon.

**Caution:** A disregarded domestic entity that has a foreign owner must use the appropriate Form W-8.

## Part II. Certification

To establish to the withholding agent that you are a U.S. person, or resident alien, sign Form W-9. You may be requested to sign by the withholding agent even if item 1, below, and items 4 and 5 on page 4 indicate otherwise.

For a joint account, only the person whose TIN is shown in Part I should sign (when required). In the case of a disregarded entity, the person identified on the "Name" line must sign. Exempt payees, see Exempt Payee on page 3.

Signature requirements. Complete the certification as indicated in items 1 through 3, below, and items 4 and 5 on page 4.

1. Interest, dividend, and barter exchange accounts opened before 1984 and broker accounts considered active during 1983. You must give your correct TIN, but you do not have to sign the certification.

2. Interest, dividend, broker, and barter exchange accounts opened after 1983 and broker accounts considered inactive during 1983. You must sign the certification or backup withholding will apply. If you are subject to backup withholding and you are merely providing your correct TIN to the requester, you must cross out item 2 in the certification before signing the form.

3. Real estate transactions. You must sign the certification. You may cross out item 2 of the certification.

**4. Other payments.** You must give your correct TIN, but you do not have to sign the certification unless you have been notified that you have previously given an incorrect TIN. "Other payments" include payments made in the course of the requester's trade or business for rents, royalties, goods (other than bills for merchandise), medical and health care services (including payments to corporations), payments to a nonemployee for services, payments to certain fishing boat crew members and fishermen, and gross proceeds paid to attorneys (including payments to corporations).

**5. Mortgage interest paid by you, acquisition or abandonment of secured property, cancellation of debt, qualified tuition program payments (under section 529), IRA, Coverdell ESA, Archer MSA or HSA contributions or distributions, and pension distributions.** You must give your correct TIN, but you do not have to sign the certification.

## What Name and Number To Give the Requester

| For this type of account: | Give name and SSN of: |
|---|---|
| 1. Individual | The individual |
| 2. Two or more individuals (joint account) | The actual owner of the account or, if combined funds, the first individual on the account [1] |
| 3. Custodian account of a minor (Uniform Gift to Minors Act) | The minor [2] |
| 4. a. The usual revocable savings trust (grantor is also trustee) | The grantor-trustee [1] |
| b. So-called trust account that is not a legal or valid trust under state law | The actual owner [1] |
| 5. Sole proprietorship or disregarded entity owned by an individual | The owner [3] |
| 6. Grantor trust filing under Optional Form 1099 Filing Method 1 (see Regulation section 1.671-4(b)(2)(i)(A)) | The grantor* |

| For this type of account: | Give name and EIN of: |
|---|---|
| 7. Disregarded entity not owned by an individual | The owner |
| 8. A valid trust, estate, or pension trust | Legal entity [4] |
| 9. Corporation or LLC electing corporate status on Form 8832 or Form 2553 | The corporation |
| 10. Association, club, religious, charitable, educational, or other tax-exempt organization | The organization |
| 11. Partnership or multi-member LLC | The partnership |
| 12. A broker or registered nominee | The broker or nominee |
| 13. Account with the Department of Agriculture in the name of a public entity (such as a state or local government, school district, or prison) that receives agricultural program payments | The public entity |
| 14. Grantor trust filing under the Form 1041 Filing Method or the Optional Form 1099 Filing Method 2 (see Regulation section 1.671-4(b)(2)(i)(B)) | The trust |

[1] List first and circle the name of the person whose number you furnish. If only one person on a joint account has an SSN, that person's number must be furnished.

[2] Circle the minor's name and furnish the minor's SSN.

[3] You must show your individual name and you may also enter your business or "DBA" name on the "Business name/disregarded entity" name line. You may use either your SSN or EIN (if you have one), but the IRS encourages you to use your SSN.

[4] List first and circle the name of the trust, estate, or pension trust. (Do not furnish the TIN of the personal representative or trustee unless the legal entity itself is not designated in the account title.) Also see *Special rules for partnerships* on page 1.

*Note. Grantor also must provide a Form W-9 to trustee of trust.

**Note.** If no name is circled when more than one name is listed, the number will be considered to be that of the first name listed.

## Secure Your Tax Records from Identity Theft

Identity theft occurs when someone uses your personal information such as your name, social security number (SSN), or other identifying information, without your permission, to commit fraud or other crimes. An identity thief may use your SSN to get a job or may file a tax return using your SSN to receive a refund.

To reduce your risk:

• Protect your SSN,

• Ensure your employer is protecting your SSN, and

• Be careful when choosing a tax preparer.

If your tax records are affected by identity theft and you receive a notice from the IRS, respond right away to the name and phone number printed on the IRS notice or letter.

If your tax records are not currently affected by identity theft but you think you are at risk due to a lost or stolen purse or wallet, questionable credit card activity or credit report, contact the IRS Identity Theft Hotline at 1-800-908-4490 or submit Form 14039.

For more information, see Publication 4535, Identity Theft Prevention and Victim Assistance.

Victims of identity theft who are experiencing economic harm or a system problem, or are seeking help in resolving tax problems that have not been resolved through normal channels, may be eligible for Taxpayer Advocate Service (TAS) assistance. You can reach TAS by calling the TAS toll-free case intake line at 1-877-777-4778 or TTY/TDD 1-800-829-4059.

**Protect yourself from suspicious emails or phishing schemes.** Phishing is the creation and use of email and websites designed to mimic legitimate business emails and websites. The most common act is sending an email to a user falsely claiming to be an established legitimate enterprise in an attempt to scam the user into surrendering private information that will be used for identity theft.

The IRS does not initiate contacts with taxpayers via emails. Also, the IRS does not request personal detailed information through email or ask taxpayers for the PIN numbers, passwords, or similar secret access information for their credit card, bank, or other financial accounts.

If you receive an unsolicited email claiming to be from the IRS, forward this message to *phishing@irs.gov*. You may also report misuse of the IRS name, logo, or other IRS property to the Treasury Inspector General for Tax Administration at 1-800-366-4484. You can forward suspicious emails to the Federal Trade Commission at: *spam@uce.gov* or contact them at *www.ftc.gov/idtheft* or 1-877-IDTHEFT (1-877-438-4338).

Visit IRS.gov to learn more about identity theft and how to reduce your risk.

## Privacy Act Notice

Section 6109 of the Internal Revenue Code requires you to provide your correct TIN to persons (including federal agencies) who are required to file information returns with the IRS to report interest, dividends, or certain other income paid to you; mortgage interest you paid; the acquisition or abandonment of secured property; the cancellation of debt; or contributions you made to an IRA, Archer MSA, or HSA. The person collecting this form uses the information on the form to file information returns with the IRS, reporting the above information. Routine uses of this information include giving it to the Department of Justice for civil and criminal litigation and to cities, states, the District of Columbia, and U.S. possessions for use in administering their laws. The information also may be disclosed to other countries under a treaty, to federal and state agencies to enforce civil and criminal laws, or to federal law enforcement and intelligence agencies to combat terrorism. You must provide your TIN whether or not you are required to file a tax return. Under section 3406, payers must generally withhold a percentage of taxable interest, dividend, and certain other payments to a payee who does not give a TIN to the payer. Certain penalties may also apply for providing false or fraudulent information.

 **Property Appraiser**
*Gary R. Nikolits, CFA*
Palm Beach County

Homestead Exemption    E-file ▶



| | |
|---|---|
| Location Address | 8757 BAYSTONE CV |
| Municipality | UNINCORPORATED |
| Parcel Control Number | 00-42-45-32-03-000-0790 |
| Subdivision | CANYON ISLES PL 2 |
| Official Records Book | 24010   Page 1180 |
| Sale Date | AUG-2010 |
| Legal Description | CANYON ISLES PL 2 LT 79 |

| Owners | Mailing address |
|---|---|
| DIEUVIL GUILFORT & | 8757 BAYSTONE CV |
| DIEUVIL MAGDADENE | BOYNTON BEACH FL 33473 4877 |

| Sales Date | Price | OR Book/Page | Sale Type | Owner |
|---|---|---|---|---|
| AUG-2010 | $10 | 24010 / 1180 | QUIT CLAIM | DIEUVIL GUILFORT & |
| JAN-2007 | $1,142,015 | 21310 / 1742 | WARRANTY DEED | DIEUVIL GUILFORT |

| Exemption Applicant/Owner | Year | Detail |
|---|---|---|
| DIEUVIL GUILFORT | 2014 | |

| | | | |
|---|---|---|---|
| Number of Units | 1 | *Total Square Feet | 6928   Acres 0.42 |
| Use Code | 0100 - SINGLE FAMILY | Zoning | AGR-PUD - Agricultural Reserve PUD ( 00-UNINCORPORATED ) |

| Tax Year | 2013 | 2012 | 2011 |
|---|---|---|---|
| Improvement Value | $427,583 | $399,825 | $422,956 |
| Land Value | $95,426 | $86,751 | $86,751 |
| Total Market Value | $523,009 | $486,576 | $509,707 |

All values are as of January 1st each year

| Tax Year | 2013 | 2012 | 2011 |
|---|---|---|---|
| Assessed Value | $494,848 | $486,576 | $509,707 |
| Exemption Amount | $50,000 | $50,000 | $50,000 |
| Taxable Value | $444,848 | $436,576 | $459,707 |

| Tax Year | 2013 | 2012 | 2011 |
|---|---|---|---|
| Ad Valorem | $8,581 | $8,554 | $9,207 |
| Non Ad Valorem | $355 | $373 | $366 |
| Total tax | $8,936 | $8,927 | $9,573 |

**EXHIBIT "A"**
**COVENANTS, RESTRICTIONS, AGREEMENTS AND LIEN RIGHTS**

The title to the property described in the Special Warranty Deed to which this Exhibit "A" is attached (the "Deed") shall be subject to and burdened by the covenants, restrictions, agreements and lien rights set forth below.

1.   Capitalized Terms and Definitions.   All initial capitalized terms used in this Exhibit "A" but not defined herein shall have the meanings given to such terms as set forth in the Deed.  The following terms as used in this Exhibit "A" shall have the meanings given to such terms as set forth below.

"Gain" shall mean and refer to the amount, if any, by which: (i) the gross selling price of the Property (less and except: (x) the actual, documented costs of any physical improvements made by Buyer after the date of the Deed to the exterior of the home on the Property such as pools, patios, screen enclosures and extensions, and (z) the actual, documented closing costs required to be paid by Buyer in connection with the sale of the Property such as documentary stamp taxes, recording fees and/or brokerage commissions), exceeds (ii) the "Total Purchase Price" paid to Seller by Buyer pursuant to and as defined in the Purchase Contract executed by Seller and Buyer.

"Hardship Event" shall mean and refer to a sale, transfer, lease or sublet of the Property, as appropriate, following a divorce of the Buyers (if married to each other), death or serious disability of one or more of the Buyers, job transfer of one or more of the Buyers to a location greater than fifty (50) miles from the Property, or other reason acceptable to Seller in Seller's sole and absolute discretion, as evidenced by a written waiver of this provision given by Seller.

"Property" shall mean and refer to the property described in the Deed together with the improvements thereon.

"Transfer Advertisement or Agreement" shall mean and refer to any or all of the following: (i) any listing or advertisement for the sale or lease of the Property or any portion thereof made with a broker, in any multiple listing service, in any classified or other advertisement, or otherwise (including, without limitation, "by owner"), (ii) any agreement (verbal or written) for transfer of title to the Property to any third party, and/or (iii) any agreement (verbal or written) for the leasing and/or subletting of the Property or any portion thereof, notwithstanding anything to the contrary in the Declaration.

2.   Sales/Transfers of the Property.   In the event that Buyer sells or transfers title to the Property (directly or indirectly): (a) at any time within one (1) year following the date of the Deed, or (b) at any time thereafter if such sale or transfer results from a Transfer Advertisement or Agreement made or entered into within one (1) year following the date of the Deed, then except only in the event of a Hardship Event released by Seller as provided in Paragraph 4 below, Buyer shall pay to Seller from the proceeds of such sale or transfer, an amount equal to one-hundred percent (100%) of the Gain realized from such sale or transfer.

3.   No Leasing of the Property.   Notwithstanding anything to the contrary in the Declaration, for a period of one (1) year following the date of the Deed, except only in the event of a Hardship Event released by Seller as provided in paragraph 4 below, Buyer shall not lease and/or sublet the Property or any portion thereof.  Any such lease and/or sublet shall be void and unenforceable.  All other leases or sublets, including those resulting from such a Hardship Event, shall be subject to the terms and conditions of the Declaration.

4.   Lien Rights; Releases.   There is and shall be a lien against the Property to secure Buyer's obligations set forth in this Exhibit "A", which lien may be foreclosed on by Seller if Buyer breaches any of its obligations hereunder.  In the event of a proposed sale, transfer, lease or sublet of the Property due to a Hardship Event, Buyer must first provide to Seller evidence of such Hardship Event acceptable to Seller in Seller's sole and absolute discretion, and if acceptable to Seller, Seller shall deliver to Buyer a written acknowledgment of the Hardship Event and waiver of Seller's rights hereunder with respect only to such sale, transfer, lease or sublet. In addition, upon written request from Buyer to Seller and payment of the Gain due to Seller in connection with any sale or transfer of the Property as provided in this Exhibit "A", then Seller shall provide to Buyer a written acknowledgment of such payment and release of Seller's lien rights with respect only to such sale or transfer provided that Buyer provides Seller with evidence satisfactory to Seller in Seller's sole and absolute discretion of the amount of the Gain due, including, without limitation closing or other settlement statements. Any release provided by Seller shall be specific only to the particular sale, transfer, lease or sublet described in the release and not to any subsequent sale, transfer, lease or sublet which shall remain subject to this Exhibit "A".

5.   Binding and Running with Title to the Property.   The covenants, restrictions, agreements and lien rights set forth in this Exhibit "A" shall burden and run with title to the Property.

6.   Remedies.   In addition to its right of foreclosure, Seller shall have all remedies at law and/or in equity for a breach by Buyer under this Exhibit "A".  In the event that Seller prevails in any action (legal or otherwise) to enforce its rights and/or Buyer's obligations, Seller shall be entitled to recover all of its costs incurred including, without limitation, reasonable attorneys' fees, through and including all appellate levels.  By acceptance of the Deed to the Property, Buyer, for itself, and its successors and assigns waives any homestead or other exemption now or hereafter existing or enacted under either Florida or federal law as same may relate to Seller's rights hereunder.

7.   Subordination.   This Exhibit "A" shall be subordinate to the right of any holder of an institutional first mortgage on the Property and shall not apply to any sales or leases by an institutional first mortgagee who acquires title to the Property by foreclosure or deed in lieu of foreclosure.

8.   Miscellaneous.   This Exhibit "A" shall be construed in accordance with the laws of the State of Florida and shall be binding on Buyer and Buyer's heirs, successors and assigns. In that regard, all references to Buyer in this Exhibit "A" shall also mean and refer to each and every of Buyer's heirs, successors and/or assigns. Should any term or provision of this Exhibit "A" be ruled to be illegal or otherwise invalid by a court of competent jurisdiction, such term or provision shall be given its nearest legal meaning or be construed as deleted as such court determines, and the same will not invalidate the remaining terms and provisions of this Exhibit "A", which terms, provisions and portions of this Contract will remain in full force and effect. This Exhibit "A" may not be amended or modified except by an instrument in writing executed by Seller.

# CHINESE DRYWALL SETTLEMENT PROGRAM
## PRE- REMEDIATION ALTERNATIVE LIVING EXPENSES CLAIM FORM

Any Residential Owner seeking compensation for Pre-Remediation Alternative Living Expenses must complete and submit this Pre-Remediation Alternative Living Expenses Claim Form to the Claims Administrator for the Chinese Drywall Settlement Program on or before October 25, 2013. Pre-Remediation Alternative Living Expenses are losses suffered by Residential Owners arising from the need to vacate an Affected property prior to remediation as a result of property damage caused by Chinese Drywall. If you are submitting this claim under the Knauf Settlement Agreement, these expenses are available only if the Residential Owner vacated the property prior to December 20, 2011. Pre-Remediation Alternative Living Expenses do not include alternate living expenses incurred during remediation or personal property damage.

When completing this Pre-Remediation Alternative Living Expenses Claim Form, refer to the Instructions and Definitions in the Appendix. These Instructions and Definitions contain step-by-step instructions for completing this Claim Form, guidance on how to submit it, and helpful definitions for words that appear in this Claim Form or in the Settlement Agreement.

If you have access to a computer with an internet connection and previously registered your claim with the Claims Administrator, submit your Pre-Remediation Alternative Living Expenses Claim Form online. Online submission will be easier to complete than a hard-copy Claim Form, because the online version will guide you through the specific questions you need to answer, based on the answers you enter as you go along. Go to https://www3.browngreer.com/drywall to submit your Pre-Remediation Alternative Living Expenses Claim Form online.

If you are unable to complete the Pre-Remediation Alternative Living Expenses Claim Form online, you may submit this form by email by sending it to CDWQuestions@browngreer.com, or by Registered U.S. Mail to:

**Chinese Drywall Settlement Administrator**
**P.O. Box 25401**
**Richmond, Virginia 23260**

## A. CLAIM INFORMATION

| 1. **Claimant Name:** | Last Name<br>Dieuvil | | First Name<br>Guilford | M.I. |
|---|---|---|---|---|
| | Co-Owner Last Name/Business Name | | Co-Owner First | M.I. |
| | DBA or Fictitious Name (if applicable) | | | |

| 2. **Individual Claimant's Social Security Number (SSN):** | 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 |
|---|---|

| 3. **Are you pursuing this claim on behalf of a minor, deceased, or incompetent claimant?** | ☐ Yes<br><br>☒ No |
|---|---|

## CHINESE DRYWALL SETTLEMENT PROGRAM
## PRE- REMEDIATION ALTERNATIVE LIVING EXPENSES CLAIM FORM

<table>
<tr>
<td>4.</td>
<td>Provide your name and SSN if you are pursuing this claim on behalf of a minor, deceased, or incompetent claimant.</td>
<td colspan="3">Name:<br><br>SSN:</td>
</tr>
<tr>
<td rowspan="6">5.</td>
<td rowspan="6">Attorney Information:</td>
<td colspan="3">☐ Check here if you are not represented by an attorney and skip to Question 4. If you are represented by an attorney, complete this section.</td>
</tr>
<tr>
<td colspan="3">Firm Name<br>Doyle Law Firm, PC</td>
</tr>
<tr>
<td colspan="2">Attorney Last Name<br>Doyle</td>
<td>Attorney First Name<br>Jimmy</td>
</tr>
<tr>
<td colspan="3">Street<br>2100 Southbridge Parkway, Suite 650</td>
</tr>
<tr>
<td>City<br>Birmingham</td>
<td>State<br>AL</td>
<td>Zip<br>35209</td>
</tr>
<tr>
<td colspan="2">Email<br>jimmy@doylefirm.com</td>
<td>Phone Number<br>(205) 533-9500</td>
</tr>
<tr>
<td>6.</td>
<td>Affected Property Address:</td>
<td colspan="3">Street<br>8757 Baystone Cove</td>
</tr>
<tr>
<td></td>
<td></td>
<td>City<br>Boynton Beach</td>
<td>State<br>FL</td>
<td>Zip 33473    County/Parish Palm Beach</td>
</tr>
<tr>
<td>7.</td>
<td>Settlement Agreement under which you are submitting this claim (check all that apply):</td>
<td colspan="3">
☐ Knauf.<br>
☒ Banner.<br>
☐ InEx.<br>
☒ Global.<br>
Participating Supplier Name: <u>Banner</u><br>
Participating Builder Name: <u>G.L. Building Corporation, G.L. Homes of Florida Corporation, G.L. Homes Limited Corporation, G.L. Homes of Boynton Beach Associates IX, Ltd, Boyton Beach Associates XVI, LLLP, Boynton Beach XVI Corporation, Miramar Associates IV, LLLP, Miramar IV Corporation, G.L. Homes of Davie Associates II, Ltd., G.L. Homes of Davie Associates III, Ltd., G.L. Homes of Davie Associates IV, Ltd., G.L. Homes of Davie IV Corporation</u><br>
Participating Installer Name: <u>G.L. Building Corporation, G.L. Homes of Florida Corporation, G.L. Homes Limited Corporation, G.L. Homes of Boynton Beach Associates IX, Ltd, Boyton Beach Associates XVI, LLLP, Boynton Beach XVI Corporation, Miramar Associates IV, LLLP, Miramar IV Corporation, G.L. Homes of Davie Associates II, Ltd., G.L. Homes of Davie Associates III, Ltd., G.L. Homes of Davie Associates IV, Ltd., G.L. Homes of Davie IV Corporation</u><br><br>
☐ L&W.<br>
☐ Unknown.
</td>
</tr>
</table>

Additional Comments (attached additional pages if necessary):

# CHINESE DRYWALL SETTLEMENT PROGRAM
## PRE- REMEDIATION ALTERNATIVE LIVING EXPENSES CLAIM FORM

| | | |
|---|---|---|
| **8. Lawsuit:** | Jurisdiction:   <u>USDC for the Eastern District of Louisiana</u><br>Case/Docket Number:  <u>2:13-cv-609</u><br>Date Filed: <u>07/ 08/ 2013</u><br>      (Month/Day/Year) | |
| **9. Drywall Manufacturer:** | ☒ Knauf<br> ☐ I am a member of the Knauf Settlement Class<br> ☒ I have Knauf Drywall but I am not a member of the Knauf Settlement Class<br>☐ Mixed (Knauf and other)<br>☐ Non-Knauf<br>☐ Unknown | |
| **10. Select the option that best describes your relationship to the Affected Property:** | ☒ Residential Owner<br>☐ Commercial/Rental Property Owner<br>☐ Tenant<br>☐ Previous Commercial/Rental Property Owner<br>☐ Previous Residential Owner<br>☐ Repairing Builder/Installer/Assignee<br>☐ Non-Tenant Occupant (e.g. family member)<br>☐ Condominium Association<br>☐ Mortgagee (Bank)<br>☐ Other:____ | |
| **11. Select the option that best describes how you used the Affected Property:** | ☒ Primary Residence<br>☐ Rental/Commercial Property<br>☐ Secondary Residence<br>☐ Vacant<br>☐ Other____ | |
| **12. Did you own and reside in the Affected Property?** | ☐ Yes. List the date you acquired the Affected Property:    <u>01/ 09/ 2007</u><br>                    (Month/Day/Year)<br>      List the date you moved into the Affected Property: <u>01/ 09/ 2007</u><br>                    (Month/Day/Year)<br>☐ No | |

Dieuvil, Guilford

4

113019

# CHINESE DRYWALL SETTLEMENT PROGRAM
## PRE- REMEDIATION ALTERNATIVE LIVING EXPENSES CLAIM FORM

| | | |
|---|---|---|
| **13. Did you incur Pre-Remediation Alternative Living Expenses prior to December 20, 2011?** | ☐ Yes. List the dates you incurred Alternative Living Expenses:<br><br>From : <u>03/ 01/ 2010</u>  (Month/Day/Year)      To : <u>/ /</u>  (Month/Day/Year)  ☒ Present<br><br>☐ No | |

| | | | |
|---|---|---|---|
| **14. Provide the address of the residence you moved to:** | Street<br>1870 Spotted Owl Dr SW | | |
| | City<br>Vero Beach | State<br>FL | Zip<br>32962 |

| | |
|---|---|
| **15. Provide the nature of your Alternative Living arrangement:** | ☒ Rental<br>☐ Family Owned<br>☐ Purchase<br>☐ Other(Explain): |

| | |
|---|---|
| **16. Comments and additional information about your claim:** | |

## CHINESE DRYWALL SETTLEMENT PROGRAM
## PRE- REMEDIATION ALTERNATIVE LIVING EXPENSES CLAIM FORM

### B. REQUIRED DOCUMENTS

Claimants seeking compensation for Pre-Remediation Alternative Living Expenses caused by Chinese Drywall must submit all documents listed below.  Your claim cannot be considered for compensation until you provide all required documentation.You may attach pages with any additional comments regarding your claim.

1. Photographs or Inspection Reports demonstrating evidence of corrosive, reactive Chinese Drywall in the Affected Property;

2. Documents demonstrating residence in the Affected Property, such as a deed, utility bills, or mortgage statement;

3. Documents demonstrating Alternative Living Expenses, such as a lease, rental agreement, or mortgage;

4. Documents demonstrating payment for Alternative Living Expenses, such as cancelled checks; and

5. A Signed Affidavit from the Resident Owner supporting the claim for Alternative Living Expenses;

6. The Chinese Drywall Settlement Program Verification of Claims form;

7. Any other document you believe supports your claim.

Note:  The Special Master may also require a report from an expert under Federal Rule of Civil Procedure 26(a)(2) providing that the Alternative Living Expenses were substantially caused by the need to vacate the Affected Property prior to Remediation as a result of the damage caused by Chinese Drywall.

### C. SIGNATURE

I certify and declare under penalty of perjury pursuant to 28 U.S.C. Section 1746 that the information provided in this Claim Form is true and accurate to the best of my knowledge, and that supporting documents attached to or submitted in connection with this form and the information contained therein are true, accurate, and complete to the best of my knowledge, and I understand that false statements or claims made in connection with this Claim Form may result in fines, imprisonment, and/or any other remedy available by law to the Federal Government, and that suspicious claims will be forwarded to federal, state, and local law enforcement agencies for possible investigation and prosecution.

By submitting this Claim Form, I consent to the use and disclosure by the Claims Administrator and those assisting the Claims Administrator of any information about me that they believe necessary and/or helpful to process my Claim Form.

| Signature of Claimant/Attorney: | Jimmy Doyle | Date: | 01/ 15/ 2014 (Month/Day/Year) |
|---|---|---|---|
| Printed Name: | First | Last | M.I. |

# CHINESE DRYWALL SETTLEMENT PROGRAM

## MDL 2047

## NOTICE OF APPEAL

### I. CLAIMANT AND CLAIM INFORMATION

| Claimant Name | Last<br>Dieuvil | First<br>Guilford | Middle |
|---|---|---|---|
| Representative Claimant Name | Last | First | Middle |
| Claimant ID | 113019 | **Claim ID** | 21992 |
| Claim Type | Pre-Remediation Alternative Living Expenses | **Affected Property ID** | 16534 |
| Affected Property Address | Street<br>8757 Baystone Cove | | Unit |
| | City<br>Boynton Beach | State<br>FL | Zip code<br>33473 |
| Law Firm | Doyle Law Firm, PC | | |

### II. BASIS OF APPEAL

Use the space below to provide information regarding the basis of your Appeal. If necessary, this information will be transmitted to the Special Master, along with all documents related to your claim. The Special Master will review your appeal and will notify you once a determination has been made. You must attach all documents that support your appeal if you have not already submitted them. You may attach additional sheets as necessary.

re are available to help you if you have questions or need assistance. If you have any questions about this Notice or th
atus of your claim(s) or need help, contact the Settlement Administrator's Office at (866) 866-1729 or send an email to
**DWQuestions@browngreer.com.**

## IV. HOW TO SUBMIT THIS NOTICE

| | |
|---|---|
| **y Online Portal**<br>ubmitted no later than 12:00 midnight local time on your submission adline) | Visit **https://www3.browngreer.com/drywall** to upload required documents. |
| **y Mail**<br>ostmarked no later than your submission deadline) | Chinese Drywall Settlement Administrator<br>P.O. Box 25401<br>Richmond, Virginia 23260 |
| **y Overnight, Certified or Registered Mail**<br>ostmarked no later than your submission deadline) | BrownGreer, PLC c/o Chinese Drywall Settlement Administrator<br>250 Rocketts Way<br>Richmond, Virginia 23231 |
| **y Facsimile**<br>ent no later than 12:00 midnight local time on your submission deadline) | (804) 521-7299 |
| **y Email**<br>ent no later than 12:00 midnight local time on your submission deadline) | **CDWQuestions@browngreer.com** |

# EXHIBIT "E"

## RE: Chinese Drywall Settlement Program

Ashley Hipps <ahipps@browngreer.com>
Fri 3/10/2017 6:02 PM
**To:** 'guilf dieuvil' <guilf5@hotmail.com>
**Cc:** CDWQuestions <CDWQuestions@browngreer.com>

Mr. Dieuvil,

You have one outstanding unpaid claim in the Chinese Drywall Settlement Program. I have included the details of your claim in the table below. A competing GBI claim has been filed by another claimant (Knauf) which has created a double payment hold on both claims. We cannot issue payment to either claimant until one of the claims is withdrawn or until a resolution is reached. We expect to see an order within the coming weeks which will address the Knauf Defendants' competing GBI claims and allow us to issue your payment. Once the order comes through, we will contact you and provide you with the pertinent information.

| Claim ID | Claim Type | Claim Status | Potential Total Payment Amount |
|----------|------------|--------------|-------------------------------|
| 6250 | Global, Banner, InEx Repair and Relocation Expenses ("GBI") | Review Accepted | $33,290.25 |

Please contact me if you have any further questions.

Thank you,
Ashley

**Ashley Dwyre Hipps**
Analyst
**BROWNGREER PLC**
250 Rocketts Way
Richmond, Virginia 23231
Telephone: (804) 421-9274
Facsimile: (804) 521-7299
www.browngreer.com

*This electronic mail is intended to be received and read only by certain individuals. It may contain information that is privileged or protected from disclosure by law. If it has been misdirected, or if you suspect you received it in error, please notify me by replying and then delete this message and your reply. These restrictions apply to any attachment to this email.*

**From:** CDWQuestions

SEE Exhibit "E"

# CHINESE DRYWALL SETTLEMENT PROGRAM
## MDL 2047

## GLOBAL, BANNER, INEX REPAIR AND RELOCATION EXPENSES CLAIM ELIGIBILITY NOTICE
### DATE OF NOTICE: 2/6/14
### DEADLINE TO APPEAL: 3/8/14

### I. CLAIMANT AND CLAIM INFORMATION

| Claimant Name | Last<br>Dieuvil | | First<br>Guilford | | Middle | |
|---|---|---|---|---|---|---|
| Representative Claimant Name | Last | | First | | Middle | |
| Claimant ID | 113019 | | **Claim ID** | 6250 | | |
| Law Firm | Doyle Law Firm, PC | | **Affected Property ID** | 16534 | | |
| **Affected Property Address** | Street<br>8757 Baystone Cove | | | | Unit | |
| | City<br>Boynton Beach | | State<br>FL | | Zip code<br>33473 | |

### II. ELIGIBILITY DETERMINATION

This is an official Notice from the Settlement Administrator for the Chinese Drywall Settlement Program and relates to the claim identified in Section I. We reviewed your claim and determined that you are eligible for compensation for the Global, Banner, InEx Repair and Relocation Expenses Claim you submitted. The table below shows both the information you provided and the information that we confirmed.

Settlement Funds will be distributed on a pro-rata basis. To determine Compensation Amounts, we will divide the total square footage of all eligible claims by the total applicable Settlement Amounts to determine a per square foot Compensation Amount. For example, if the Settlement Amount is $10,000,000, and the total square footage of all eligible properties is 2,000,000 square feet, the amount available for each property is $5.00 per square foot ($10,000,000 divided by 2,000,000 square feet). We will then multiply the per square foot amount by the confirmed Under Air Square Footage listed in Row 1 to calculate your Compensation Amount. We cannot perform these calculations until all claims have been reviewed and we know the total square footage of all eligible properties. The square footage multiplier will be announced as soon as it is available.

| | CATEGORY | CLAIM FORM INFORMATION (WHAT YOU TOLD US) | CONFIRMED ELIGIBILITY INFORMATION (WHAT WE DETERMINED) |
|---|---|---|---|
| 1. | Under Air Square Footage | 5595 | 5595 |

| | | | |
|---|---|---|---|
| 2. | Builder | G.L. Building Corporation, G.L.Homes of Florida Corporation, G.L. Homes Limited Corporation, G.L. Homes of Boynton Beach Associates IX, Ltd. Boyton Beach Associates XVI, LLLP, Boynton Beach XVI Corporation, Miramar Associates IV, LLLP, Miramar IV Corporation, G.L. Homes of Davie Associates II, Ltd., G.L. Homes of Davie Associates III, Ltd., G.L. Homes of Davie Associates IV, Ltd., G.L. Homes of Davie IV Corporation | G.L. Building Corporation, G.L.Home Florida Corporation, G.L. Homes Lim Corporation, G.L. Homes of Boynton B Associates IX, Ltd. Boynton Beach Associates XVI, LLLP, Boynton Beach Corporation, Miramar Associates IV, Miramar IV Corporation, G.L. Homes Davie Associates II, Ltd., G.L. Homes Davie Associates III, Ltd., G.L. Home Davie Associates IV, Ltd., G.L. Home Davie IV Corporation |
| 3. | Supplier | Banner | Banner |
| 4. | Installer | G.L. Building Corporation, G.L.Homes of Florida Corporation, G.L. Homes Limited Corporation, G.L. Homes of Boynton Beach Associates IX, Ltd. Boyton Beach Associates XVI, LLLP, Boynton Beach XVI Corporation, Miramar Associates IV, LLLP, Miramar IV Corporation, G.L. Homes of Davie Associates II, Ltd., G.L. Homes of Davie Associates III, Ltd., G.L. Homes of Davie Associates IV, Ltd., G.L. Homes of Davie IV Corporation | Beta Drywall, LLC and Beta Construc LLC |

## III. YOUR OPTIONS AFTER THIS NOTICE

If you agree with the information we confirmed, log in to the Chinese Drywall portal to accept our determinations. If you disagree with our determination, you may file an Appeal. The Appeal deadline is 30 days after the date of this Notice. If you wish to file an Appeal, you must complete the Notice of Appeal by using the Chinese Drywall Settlement Program Online Po at **https://www3.browngreer.com/drywall**. If you do not have online access, you may submit the Notice of Appeal attached to this Notice. Follow the instructions on the Portal or on the form to submit the Notice of Appeal.

## IV. HOW TO CONTACT US WITH QUESTIONS OR FOR HELP

We are available to help you if you have questions or need assistance. If you have any questions about this Notice, the sta your claim(s), or just need help, contact us by phone at (866) 866-1729 or by email to **CDWQuestions@browngreer.co**

## V. HOW TO RESPOND TO THIS NOTICE

| | |
|---|---|
| **By using our Online Portal** | Visit **https://www3.browngreer.com/drywall** to file a Appeal and upload documents. |
| **By Mail**<br>(Postmarked no later than your submission deadline) | Chinese Drywall Settlement Administrator<br>P.O. Box 25401<br>Richmond, Virginia 23260 |
| **By Overnight, Certified or Registered Mail**<br>(Postmarked no later than your submission deadline) | BrownGreer, PLC<br>Chinese Drywall Settlement Administrator<br>250 Rocketts Way<br>Richmond, Virginia 23231 |

s of
ited
Beach

XVI
LLP,
s of
s of
es of
es of

tion,

Claimant ID: 113019

Claim ID: 6250

| **By Facsimile**<br>(Sent no later than 12:00 midnight local time on your submission deadline) | (804) 521-7299 |
|---|---|
| **By Email**<br>(Sent no later than 12:00 midnight local time on your submission deadline) | **CDWQuestions@browngreer.com** |

| CHINESE DRYWALL SETTLEMENT PROGRAM CLAIMS ADMINISTRATION PROCEDURE |||||
|---|---|---|---|---|
| CAP No. | 2014-9 | **Effective Date** || September 11, 2014 |
| **Subject** || **Distribution of Funds from the Global, Banner, and InEx Repair and Relocation Qualified Settlement Funds** |||

**1.     *Purpose of this Procedure.***  This CAP sets forth the procedure by which the Settlement Administrator shall make distributions from the Global, Banner, and InEx Repair and Relocation Qualified Settlement Funds.

**2.     *Definitions and Section References.***  Any capitalized terms used in this CAP and not expressly defined in this CAP shall have the meanings given to them in the Knauf Settlement Agreement.  The deadlines set forth in this section are to be calculated using the same method for the calculation of deadlines set forth in Fed.R.Civ.P.6.

**3.     *Distribution of Funds.***  The Settlement Administrator is authorized to distribute funds to claimants who have eligible claims in the Global, Banner, and InEx Settlements ("the Settlements") from the Global, Banner, and InEx Settlement Funds and who have waived their right to appeal either by accepting the Settlement Administrator's claim determination or by not filing an appeal within the deadline to do so.

**4.     *Calculation of Initial Distribution.***  The Settlement Administrator shall calculate the Initial Distribution amounts by following the procedure set out below:

    **a.     *Pro-Rata Calculation.***  For each Settlement Agreement, the Settlement Administrator will divide the amounts available for distribution by the approved total square footage on all eligible and open[1] claims to determine the pro-rata share available to each claimant (the "Per Square Foot Payment Amount.")  The Settlement Administrator will determine the compensation amount for individual properties by multiplying the Per Square Foot Payment Amount by the total Under Air Square Footage of each property.

    **b.     *Reduction of First Distribution Payment.***  To ensure that sufficient funds remain to meet the payment obligations set forth in the Global, Banner, and InEx Allocation Agreements, the Settlement Administrator will pay an Initial Distribution of 97% of the amount payable under Paragraph 4(a), to eligible claimants who have accepted an Eligibility Notice issued by the Settlement Administrator, have not filed an appeal of an eligible claim within the deadline to do so, and otherwise meet the requirements for payments set forth in this CAP.

---

[1] An open claim is defined as a claim where the Settlement Administrator has issued a Notice of claim determination and the claimant is still within the deadline to respond.  The pro-rata calculation in Paragraph 4(c) includes square footage from 43 open claims.

      *c.*    ***Pro-Rata Amounts.***   The pro-rata amounts listed below were calculated by dividing the Amount Available for Distribution for each Settlement by the Total Under Air Square Footage and include the 3% holdback referenced in Paragraph 4(b).

| CHINESE DRYWALL SETTLEMENT PROGRAM GLOBAL, BANNER, INEX PRO-RATA CALCULATION | | | |
|---|---|---|---|
| **Row** | **Settlement** | **Amount Available for Distribution** | **Total Under Air Square Footage** | **Per Square Foot Payment Amount** |
| 1. | **Banner** | $32,407,975.79 | 10,588,086 | $2.97 |
| 2. | **InEx** | $2,068,286.11 | 5,575,028 | $0.36 |
| 3. | **Global Builder** | $18,779,229.25 | 8,974,310 | $2.03 |
| 4. | **Global Supplier** | $13,980,092.89 | 4,041,779 | $3.36 |
| 5. | **Global Installer** | $8,972,298.42 | 9,170,409 | $0.95 |

For example, the Settlement Administrator would award $4,973 for a property with 1,000 Under Air Square Feet that is eligible for compensation from the Banner Settlement Fund and the Global Builder Settlement Fund by performing the following calculations:

1) Banner Compensation Amount:   1,000 x $2.97 = $2,970
2) Global Builder Compensation Amount:  1,000 x $2.03 = $2,003
3) Total Compensation Amount:  $2,970 + $2,003 = $4,973

      **5.**    ***Subsequent Distributions.***  The Settlement Administrator shall make subsequent distribution(s) as necessary to distribute any remaining funds to eligible claimants under the terms of the Settlements.  The Settlement Administrator will issue all subsequent payments to the same payee, and in the same manner, as the first distribution unless ordered otherwise.

      **6.**    ***Method of Payment.***  The Settlement Administrator will distribute funds to eligible claimants by issuing a check made out to each claimant and mailed to the claimant's attorney.  The Settlement Administrator will issue separate checks from each Qualified Settlement Fund for each eligible claimant.

      **7.**    ***Hold Back of Payment on Certain Eligible Claims.***  The Settlement Administrator will hold back payment on certain claims as follows:

      *a.*    ***Multiple Claims filed against a single property.***  To prevent duplicative payments, the Settlement Administrator will hold back payments related to claims for properties for which more than one claimant has filed a competing claim for repair and relocation expenses.  The Settlement

Administrator will release payment to claimants otherwise eligible to receive a payment once the duplicative claims are reconciled.

    **b.**    ***Claims for properties pending remediation through the Knauf Settlement Agreement.***  The Settlement Administrator will hold back initial distribution payment on claims related to a property that will undergo remediation through the Knauf Settlement Agreement or is an Already Remediated Property, as that term is defined in the Knauf Settlement Agreement, that is yet to enter a final settlement.  If a claimant assigns a Global, Banner, InEx Repair and Relocation claim to Knauf during the course of the remediation through the Knauf Settlement Program, the Settlement Administrator will issue payment to Knauf, subject to the limitations listed in Paragraph 8 of this CAP.  If a claimant receives payment for a Global, Banner, InEx Repair and Relocation claim and then later assigns this claim to Knauf as part of remediation through the Knauf Settlement Agreement, the Settlement Administrator will reduce the amount paid by Knauf for the remediation of the property by the amount received for the Global, Banner, InEx Repair and Relocation claim.

    **c.**    ***Other claims.***  The Settlement Administrator will hold back any initial distribution payment if the Settlement Administrator determines that payment is not appropriate or would otherwise prejudice another claimant.  The Settlement Administrator will make every effort to issue initial payment to all claimants who are eligible to receive the initial distribution.

    **8.**    ***Limitation of Payments to Knauf.***  The Settlement Administrator is authorized to make initial distribution payments for eligible claims submitted by Knauf subject to the following limitations:

    **a.**    ***Prior Payment Obligations of Knauf.***  The Settlement Administrator will retain the first $913,500.00 owed to Knauf by withholding this amount from payments made to Knauf from the Global Settlement Fund.  The Settlement Administrator will redistribute these amounts to all other non-Knauf claimants eligible for compensation from the Global Settlement Fund on a pro-rata basis.

    **b.**    ***Limitation of Amounts Received from the Banner Settlement Fund.***  Knauf shall not receive more than 60% of the funds available to claimants from the Banner Settlement Agreement.  This limitation applies to the total aggregate amount payable to Knauf.  If the amount owed to Knauf exceeds this limitation, the Settlement Administrator will redistribute the excess to claimants eligible to receive compensation from the Banner Settlement Fund on a pro-rata basis.

    **c.**    ***Limitation of Amounts Received from the Global Settlement Fund.***  Knauf shall not receive more than 35% of the funds available to claimants from the Global Settlement Agreement.  This limitation applies to the total

aggregate amount payable to Knauf. If the amount owed to Knauf exceeds this limitation, the Settlement Administrator will redistribute the excess to claimants eligible to receive compensation from the Global Settlement Fund(s) on a pro-rata basis.

   9.   ***Submission of Required Documents***. Claimants must submit certain fully executed and unaltered documents prior to the issuance of an initial distribution payment. The Settlement Administrator will review these documents to determine their completeness. Claimants are not eligible to receive an initial distribution payment until the Settlement Administrator determines that the claimant has submitted all required documents. If the Settlement Administrator determines that a claimant has not submitted all required documents, the Settlement Administrator will issue a written notice detailing the deficiency and avenues to cure the deficiency. The documents required for payment are:

      ***a.   Verification of Claims Form***. Claimants must submit a fully executed and complete Verification of Claims Form, attached to this CAP as Exhibit 1. Claimants only need to submit the Verification of Claims Form once and do not need to submit a Verification of Claims Form for each claim filed by the claimant.

      ***b.   IRS Form W-9***. Claimants must submit a fully executed and complete IRS Form W-9 in order to receive payment. A W-9 form is attached to this CAP as Exhibit 2.

**APPROVED:**

By:   /s/ Leonard Davis                              Date:  September 11, 2014
      Plaintiffs' Steering Committee
      Settlement Agreement Liaison

By:   /s/ Kerry Miller                               Date:  September 11, 2014
      Knauf Defendants
      Settlement Agreement Liaison

By:   /s/ Hilarie Bass                               Date:  September 11, 2014
      Builder Class
      Settlement Agreement Liaison

By:   /s/ Lynn Greer                                 Date:  September 11, 2014
      Settlement Administrator

4

# EXHIBIT "F"

**From:** Mike Toll
**Sent:** Saturday, December 11, 2010 6:54 AM
**To:** Heather Keith
**Cc:** Jamie Knott
**Subject:** CI79, Dieuvil; Metal Studs

Heather,  Please see Dieuvil's email.  He had previously indicated to me that he was okay with us proceeding.

Mike Toll


Director of Construction

Exhibit "F."

**From:** guilf dieuvil [mailto: ███████████]
**Sent:** Friday, January 25, 2013 1:50 PM
**To:** Diane Cadorette; Jamie Knott; Mike Toll; Elsa Nunes; Heather Keith
**Subject:** FW: Canyon Isles Lot 79 - Revised Scope of Work Agreement

Re: Lot 79 Canyon Isles
I just recently receive a bill from the storage company which GIhomes should have been Solely liable for it. I kept asking you to fix my property and bring it to living standard and free from Chinese Drywall . You have failed to do so. If you are confident that the method that you are using to fix the house is appropriate and will bring the property free of hazard. You can certainly proceed to fix my property under the same terms and conditions previously agreed and executed. There is not even any need for further discussion regarding starting repair or fixing that house, just fix it. I need the confidence that you will not continue to expose my family in a chemical dangerous environment. As long as long as you are so confident that you will make my house completely hazard free / Chinese Drywall, you can use this email as my final approval to fix my property without any delay, and just let me know when it will be ready.

Guilfort Dieuvil

Exhibit "F-1"

# EXHIBIT "G"

## PURCHASE CONTRACT – CANYON ISLES

This Purchase Contract (the "Contract") is made between Seller, whose name is set forth below and whose address is 1401 University Drive, Suite 200, Coral Springs, Florida 33071-6039, and Purchaser, whose name and U S address are set forth below, for the purchase of the Lot as set forth below

**NAME AND ADDRESS OF PURCHASER:**

Purchaser: _Audhort + Magdadene Dieuvil_

Social Security No. ~~xxxx~~                Social Security No _____

☐ Permanent Address _1425 NW 192nd Terr._          ☐ Local Address _____

(check address to be used for the mailing of notices)

City: _Miami_                City: _____

State: _Florida_  Zip _33169-3444_  State _____ Zip _____

Telephone (Home) _(305) 654-6099_ (Bus.) _____  Telephone (Home) _(561)733-7686_ (Bus.) _786.344 549_

Fax Number _____                Fax Number _____

Purchaser hereby agrees to purchase, and Seller hereby agrees to sell and convey to Purchaser, real property comprising a residential lot and a detached house, as more particularly described below

**LOT.** The real property being purchased is Model _Julian 85_ on Lot _79_ in the community known as Canyon Isles (hereinafter defined as the "Home") in Boynton Beach, Florida

Plat Information (the "Plat")  Name: _Canyon Isles_

Plat Book _TBD_ , Page _TBD_ , Public Records of Palm Beach County, Florida

**PURCHASE PRICE.** The following items comprise the Purchase Price

|  | Price |
|---|---|
| House . . . . . . . . . . . . . . . . | $ _928,900_ |
| Lot Premium . . . . . . . . . . . . . . . . | $ _95,000_ |
| Option Items  Addendum Numbers: _Crystal .1626._  Total Option Items | $ _—0—_ |
| Other. _____ | $ _—0—_ |
| **TOTAL PURCHASE PRICE** . . . | $ _1,023,90C_ |

**METHOD OF PAYMENT.** Purchaser agrees to pay the TOTAL PURCHASE PRICE in U S currency to Seller as follows

a) Reservation Deposit (if any) paid prior to the date of execution of this Contract . . . $ _5,000_

b) Deposit of five percent (5%) of Total Purchase Price, less Reservation Deposit, if any, paid upon execution of this Contract by Purchaser, receipt of which is acknowledged, subject to collection $ _46,195_

c) Additional deposit of five percent (5%) of Total Purchase Price due thirty (30) days from the date of the execution of this Contract by Purchaser (i e , _4/24_ , 200_5_ ) $ _51,195_

d) Mortgage Proceeds, subject to the conditions contained in Section A of the Standard Provisions $ _921,500_

e) Balance of Total Purchase Price due in cash at closing $ _-10_

**TOTAL PURCHASE PRICE** . $ _1,023,90C_

**CLOSING.** The estimated closing date of this transaction is _June / July_ , 200_6_ This date is for estimating purposes only  The actual closing date will be determined by (but not limited to) the conditions contained in Paragraphs E 3, E 4 and E 5 of the Standard Provisions

**DEPOSIT FUNDS - NOTICE TO PURCHASER.** THE BUYER OF A ONE-FAMILY OR TWO-FAMILY RESIDENTIAL DWELLING UNIT HAS THE RIGHT TO HAVE ALL DEPOSIT FUNDS (UP TO 10 PERCENT OF THE PURCHASE PRICE) DEPOSITED IN AN ESCROW ACCOUNT. THIS RIGHT MAY BE WAIVED, IN WRITING, BY THE BUYER  PURCHASER UNDERSTANDS THAT IF THE ABOVE RIGHT IS NOT WAIVED BY PURCHASER, ALL FUNDS (UP TO 10% OF THE PURCHASE PRICE) SHALL BE PLACED IN AN INTEREST BEARING ESCROW ACCOUNT ("ESCROW ACCOUNT") WITH NOVA TITLE COMPANY ("ESCROW AGENT")  In that regard, Purchaser hereby agrees as follows:

(Initial One)  (Check One)

_MD_  _GD_ . ☐ A  Purchaser hereby waives the right to have the deposit funds placed in an interest-bearing escrow account and agrees that all deposits may be used by Seller solely for construction purposes, OR

_____  _____ ☐ B.  Purchaser does not waive the right to have all of the deposit funds (up to 10% of the Purchase Price) placed in an interest-bearing escrow account, subject to the terms and conditions imposed by Paragraph G 1 of the Standard Provisions, which include, among others, that Seller can charge Purchaser interest on the money that Seller will have to borrow for construction purposes, or if Seller obtains a master surety bond, that Purchaser shall pay to Seller an amount equal to the premium for the applicable portion of said surety bond securing Purchaser's deposit funds  See Paragraph G 1 of the Standard Provisions.

**STANDARD PROVISIONS.** The Standard Provisions set forth on the following pages are incorporated herein and are an integral part of this Contract  Purchaser acknowledges having read same and agrees thereto

**THIS CONTRACT SHALL NOT BE BINDING ON SELLER UNTIL FULLY EXECUTED BY SELLER.**

PURCHASER (1) _[signature]_

PURCHASER (2) _[signature]_

DATE _3/24/05_

Last Revision Date 07/19/04

BOYNTON BEACH ASSOCIATES XVI, LLLP, a Florida limited liability limited partnership ("Seller")

By:  Boynton Beach XVI Corporation, a Florida corporation, its general partner

By. _[signature]_

Authorized Signatory

DATE _3/28/05_

_Exhibit "G"_

# STANDARD CONSTRUCTION AGREEMENT

### Project: CANYON ISLES

This Standard Construction Agreement ("Agreement") is made the ___16___ day of _____March_____, 20_06_ by and among BOYNTON BEACH ASSOCIATES XVI, LLLP ("Owner"), G.L. Homes Building Corporation ("Construction Manager"), and BETA DRYWALL, LLC ("Subcontractor"). By this Agreement: (a) Owner engages, authorizes, and designates Construction Manager to manage the construction of certain building improvements at CANYON ISLES ("Project") and to obtain building permits for such improvements, (b) Construction Manager accepts the duty and responsibility of managing the construction of certain improvements at the Project and of obtaining building permits for such improvements, and (c) Owner, Construction Manager and Subcontractor set forth the terms and conditions pursuant to which Subcontractor is to perform the "Work" (as hereinafter defined) required to be completed under this Agreement.

Witnesseth that Owner, Construction Manager and Subcontractor (collectively, "Parties") for the consideration named in the "Contract Documents" (as hereinafter defined), and other valuable consideration, agree as follows:

### ARTICLE I.  SCOPE OF WORK

Subcontractor will furnish all materials, personnel, supervision, labor, services, plant, facilities, appurtenances, tools, supplies, transportation, equipment (by way of example, but not limitation, cranes, generators, hoists, scaffolds, and pumps), and machinery, as well as, any and all other items necessary to perform and complete all of the work relating to Subcontractor's trade as set forth in Exhibit "A" ("Work"). Subcontractor acknowledges that the "Specifications" (as hereinafter defined) may not set forth certain details and may omit certain items relating to the Work; notwithstanding the omission of such details and items however, if the work in connection with said omitted details and items would normally be considered as part of or within the scope of the Work, then said work shall be deemed to be, and is to be performed and completed by Subcontractor as, part of the Work. It is the intent of the Parties that Subcontractor will fully perform and complete the Work in accordance with the Contract Documents at no additional cost, charge, or expense to Owner in excess of the stated "Contract Sum" and/or the "Option Sum" (as those terms are hereinafter defined) as specified in Article IV below.

The Work will be performed and completed by Subcontractor: (a) in strict accordance with (i) the drawings, plans, and specifications provided by Owner ("Specifications"), (ii) all applicable building and zoning laws, codes, ordinances, rules, and regulations, (iii) the Contract Documents, (iv) the requirements of the Project, and (v) the directions of Owner and Construction Manager; (b) in a first class workmanlike manner free from all defects and deficiencies; and, (c) to the satisfaction of Owner and Construction Manager.

### ARTICLE II.  TIME OF COMPLETION

The Work to be performed and completed under this Agreement by Subcontractor shall be performed and completed by Subcontractor according to the production schedule as determined (and as may be determined from time to time) by Owner and/or Construction Manager ("Schedule"). TIME IS OF THE ESSENCE IN THE PERFORMANCE OF THE CONTRACT DOCUMENTS (INCLUDING, BUT NOT LIMITED TO, THIS AGREEMENT) and Subcontractor agrees to perform and complete the Work in strict accordance with the Contract Documents and the Schedule. If in the opinion of Owner or Construction Manager Subcontractor fails to strictly adhere to the Schedule, then Owner and/or Construction Manager shall have the right to (a) hire other persons and/or entities to do any and all work necessary to bring the Work into compliance with the Schedule, and (b) charge Subcontractor (including the deduction of payment from any monies due or that may come due Subcontractor) for all costs and expenses incurred by Owner and/or Construction Manager in connection with bringing the Work into compliance with the Schedule.

The Parties agree that Owner and Construction Manager will each share the exclusive right: (a) to determine the timing, order, and priority of all work to be performed at the Project, including, but not limited to, the Work to be performed and completed by Subcontractor under this Agreement, and (b) to temporarily suspend the performance of any work at the Project, including, but not limited to, the Work to be performed by Subcontractor under this Agreement. In the event of a temporary suspension of the Work, Subcontractor shall have no claim, and Subcontractor hereby waives any and all claims, against Owner or Construction Manager for damages of any kind or nature, whatsoever, in connection with any such temporary suspension.

### ARTICLE III.  TERM

This Agreement is for a period of eighteen (18) months commencing on the date on which this Agreement is fully executed by the Parties ("Term"). The Term may be extended only by the written consent of Owner and Construction Manager and only for such period of time as may be determined in writing by Owner and Construction Manager. In the event the Term is extended ("Extended Term"), then all of the terms and conditions of the Contract Documents shall continue to remain in full force and effect during the Extended Term. If entry into any subsequent agreement by Owner, Construction Manager, and Subcontractor (or any combination thereof) covering different lots in the Project, or a different project entirely, will have absolutely no effect on the Term (or Extended Term, if applicable). Notwithstanding anything contained in the Contract Documents to the contrary, Subcontractor acknowledges and agrees that nothing in the Contract Documents constitutes any guaranteed amount of Work (specifically) or work (generally).

### ARTICLE IV.  CONTRACT SUM AND OPTION SUM

Subcontractor acknowledges and agrees that Owner, and not Construction Manager, will be solely responsible for any and all payments of Contract Sums and Option Sums due and owing to Subcontractor. Owner will pay Subcontractor (a) the amount as set forth in the Contract Sum Addendum ("Contract Sum") attached hereto as Exhibit "B" for the performance and completion of the Work, and (b) the amounts as set forth in the Option Addendum ("Option Sum") attached hereto as Exhibit "B-1" for the performance and completion of options, if any. The Contract Sum and the Option Sum are both, separately and independently, subject to a ten percent (10%) holdback at the discretion of Owner.

Final payment on all holdbacks will be made by Owner to Subcontractor within ninety (90) days following the completion of the Work by Subcontractor and the proper submission of a Payment Voucher by Subcontractor to Owner as specified in Article V below. Completion of the Work will be verified by Owner and Construction Manager. No Work will be deemed completed unless and until all "Owner Punchlist Items," if any, have also been completed by Subcontractor. The Contract Sum and the Option Sum will remain firm and continue in full force and effect for the Term (and the Extended Term, if applicable), and subject to reduction in amount in accordance with the Contract Documents.

### ARTICLE V.  PROGRESS PAYMENTS

Owner will make progress payments at the stages and in the amounts as set forth in the Contract Sum Addendum and in the Option Addendum. Owner will make progress payments on the 1st and 15th of the month provided the following submissions are properly and timely made by Subcontractor and received by Owner: (a) All Payment Vouchers received by Owner at Owner's "Corporate Office" (located at the address set forth below the signature line for Owner) by 5:00 p.m. on the 1st day of a month will be paid on the 1st day of the following month, and (b) Payment Vouchers received by Owner at Owner's Corporate Office by 5:00 p.m. on the 15th day of the month will be paid on the 15th day of the following month. It is the responsibility of Subcontractor to (i) deliver Payment Vouchers to Owner's Corporate Office on a timely basis, (ii) document the date Subcontractor delivered the Payment Voucher to Owner's Corporate Office, and (iii) document the date on which Owner received the Payment Voucher at Owner's Corporate Office.

Subcontractor shall not submit a Payment Voucher for payment on any Work performed unless said Work has been fully completed; it being the intention of the Parties that Subcontractor is not and shall not be entitled to any payment for any partially completed Work except as may otherwise be expressly provided for in the Contract Documents. ANY PAYMENT VOUCHERS SUBMITTED BY SUBCONTRACTOR, WHETHER FOR WORK (INCLUDING ANY WORK PERFORMED BY SUBCONTRACTOR IN CONJUNCTION WITH OR IN ADDITION TO THE SCOPE OF WORK UNDER THIS AGREEMENT ) OR FOR OPTIONS, MORE THAN SIXTY (60) DAYS AFTER COMPLETION OF SAID WORK, ADDITIONAL WORK, AND/OR OPTIONS WILL NOT BE PAID BY OWNER. Notwithstanding anything contained in the Contract Documents to the contrary, Owner has the absolute right to withhold any and all payments due Subcontractor when Subcontractor has failed to strictly comply with the terms and conditions of the Contract Documents.