UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| In Re: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL 2047 |
|---|---|
| | SECTION "L" |
| This document relates to:<br><br>*Elizabeth Bennett, et al v. Gebr. Knauf Verwaltungsgesellschaft, KG, et al*<br><br>Case No. 14:cv-2722 | JUDGE ELDON E. FALLON<br><br>MAGISTRATE MICHAEL B. NORTH |

**SUPPLEMENTAL MEMORANDUM IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT ON CLAIMS ASSERTED
BY BYRON AND FERN ROBBINS**

**MAY IT PLEASE THE COURT:**

Defendants, Knauf Gips KG and Knauf Plasterboard (Tianjin) Co., Ltd. (the "Knauf Defendants"), through undersigned counsel, respectfully submit this Supplemental Memorandum in Support of their Motion for Summary Judgment on Claims Asserted by Byron and Fern Robbins in the Bennett Plaintiffs' Amended Class Action Complaint (the "Fifth Amended Complaint").

**I.   Background**

The Knauf Defendants moved for summary judgment on the Robbinses' claims on April 1, 2020. The Knauf Defendants also moved for an adverse presumption and to strike pleadings based on the Robbinses' nonproduction of two documents identified during their deposition as related to their knowledge regarding the presence of Chinese drywall in their property located at

421 Chelsea Place Avenue, Ormond Beach, FL 32174 (the "Property")—a pre-purchase home inspection report and a pre-purchase lab testing report.

The day before the Knauf Defendants' motion was set for submission, the Robbinses provided those documents for the first time, in a supplemental filing with this Court. Doc. 22820. The Knauf Defendants moved to strike those documents, and this Court ordered that the Knauf Defendants could re-depose the Robbinses with respect to the newly-produced documents. Doc. 22856. The Robbinses were re-deposed on June 11, 2020.

**II.    The newly-produced documents**

The Robbinses produced four documents on the eve of the submission of the Knauf Defendants' motion. Chronologically, the first is a Comprehensive Rider to the Residential Contract for Sale and Purchase of the Property, signed by the Robbinses on April 4, 2017 and the seller on January 2, 2016.[1] The next is a pre-purchase Property Inspection Report dated April 7, 2017.[2] The third document is an e-mail dated April 17, 2017 with highlighting by Byron Robbins.[3] Finally, the fourth document is a lab analysis from Lakeland Laboratories dated April 18, 2017.[4]

The Comprehensive Rider is not a complete document, but it appears to contain a checkbox list of disclosures associated with the Property. Under a heading titled "Environmental," a checkbox for "No" is marked in response to the question "Does anything exist on the Property that may be considered an environmental hazard, including . . . defective drywall?"[5]

Four days after the Robbinses signed the Comprehensive Rider, however, Korr & Company, LLC ("Korr") inspected the Property. Korr observed "severe corrosion" to the exterior

---

[1] Attached as Exhibit 1.
[2] Attached as Exhibit 2.
[3] Attached as Exhibit 3.
[4] Attached as Exhibit 4.
[5] Ex. 1 at p. 3.

air conditioning units and recommended evaluation by a licensed air conditioning technician.[6] Korr also observed blackened copper throughout the home, which it noted was "very premature for a home of this age."[7] Korr listed a range of possible causes for the premature corrosion, including "corrosive drywall (aka Chinese Drywall) and recommended further observation and testing by a qualified Indoor Air Consultant and/or lab to determine the cause of the corrosion.[8] The Korr Inspection Report contains two full pages of photographs of discolored copper in the Property.[9] Byron Robbins could not identify the location at the Property for every photograph, but each photograph he could identify was taken either in the Property's garage or in the one room on the second floor of the Property.[10]

After they received the Korr Inspection Report, the Robbinses real estate agent arranged for Lakeland Laboratories to perform an analysis of a drywall sample from the Property.[11] While they waited for the results of that reported, the Robbinses corresponded with their real estate agent, who told them "According to the seller, the builder is very confident that Chinese drywall was never used in any of their homes."[12] Byron Robbins admits, however, that he did not decide whether to purchase the Property based on this statement from his realtor.[13]

Instead, the Robbinses both testified that they decided to purchase the Property after they received the report from Lakeland Laboratories.[14] That report is dated April 18, 2017. It provides

---

[6] Ex. 2 at p. 12 of 25.
[7] Ex. 2 at p. 20 of 25.
[8] *Id.*
[9] Ex. 2 at pp. 21-22 of 25.
[10] Ex. 5, Second Depo. Tr. of Byron Robbins, at 33:1-15; 34:10-35:4.
[11] Ex. 6, Second Depo Tr. of Fern Robbins, at 11:2-10.
[12] Ex. 3.
[13] Ex. 5, Second Depo Tr. of Byron Robbins, at 23:3-13.
[14] Ex. 5, Second Depo Tr. of Byron Robbins, at 23:14-19; Ex. 6, Second Depo. Tr. of Fern Robbins, 6:21-7:5.

test results from one sample that was taken from the Property, apparently from the Kitchen.[15] The report's conclusion about that one sample is, in full:

> The United States Consumer Product Safety Commission (CPSC) cites elemental sulfur concentrations exceeding 10 ppm (10 mg/kg) as one of five pieces of corroborating evidence of problem drywall. The concentrations reported here indicate elemental sulfur was not detected at concentrations equal to or in excess of 1.00 mg/kg, one-tenth the guidance concentration established by the CPSC. One could infer that elemental sulfur concentrations in the samples submitted to us for analysis do not exceed the threshold level established by the CPSC as corroborating evidence of problem drywall. ***Data users are cautioned, however, that these results relate only to the samples submitted to us for analysis. These results must be evaluated as one small part of an overall assessment protocol. We make absolutely no representation as to the presence or absence of problem drywall in the structures from which these samples may have been collected***.[16]

The Lakeland Laboratories report (1) analyzed only one sample of drywall; (2) analyzed a sample of drywall taken from the Property's kitchen, which is not where corrosion was observed; and (3) affirmatively stated it made no representation as to the presence or absence of "problem drywall" in the Property. Although the Robbinses both testified that they read the statement in the Lakeland Laboratories report making no representation as to the presence or absence of problem drywall in the Property, they both testified that they nevertheless "understood," "assumed," and "felt" that the Property did not contain Chinese drywall based on the statements in the report.[17]

### III. The newly-produced documents confirm that the Robbinses specifically recognized the risk that the Property contained Chinese drywall and purchased it anyway.

As the Knauf Defendants pointed out in their original motion, this Court has denied motions for summary judgment on express assumption of the risk when plaintiffs did not "specifically recognize[] the risk that the homes they purchased contained Chinese drywall." Doc. 22586 at p. 24. Those plaintiffs were "aware of defective Chinese drywall both in general and

---

[15] Ex. 4 at pp. 2, 6.
[16] Ex. 4 at p. 2 (emphasis in original).
[17] Ex. 5, Second Depo. Tr. of Byron Robbins, at 27:11-22; Ex. 6, Second Depo. Tr. of Fern Robbins at 5:24-6:17.

specifically in south Florida" but "did not receive any disclosure or warning of the risk when [they] purchased the property." *Id.* at 5, 6, 12.

And as the Knauf Defendants also pointed out in their original motion, the Robbinses are different. The Robbinses did not have a general awareness of Chinese-manufactured drywall in south Florida, they had specific information that their Property could contain it. The newly-produced documents show that the Korr Inspection Report clearly warned the Robbinses that their Property might contain "corrosive drywall." The Robbinses were concerned enough to obtain a laboratory analysis of a sample of the drywall in the Property, but when they did so, they chose not to obtain an analysis of any of the drywall in the rooms where the Korr Inspection Report identified corrosion. The laboratory analysis concluded only that "one could infer" that the sample submitted to Lakeland Laboratories did not contain problem drywall, but qualified this statement by emphasizing that the report made "***absolutely no representation as to the presence or absence of problem drywall in the structures form which these samples may have been collected***." The Robbinses purchased the Property anyway.

Under these facts, even the Robbinses agree that they assumed the risk. The Robbinses original opposition memorandum argued that they did not expressly assume the risk of defective drywall in the Property because "[n]o disclosure was made regarding the risk of defective drywall" in the Property. Doc. 22795 at p. 10. As the newly-discovered documents show, the Robbinses did receive pre-purchased disclosures about the risk of problem drywall in their Property. Unlike previous plaintiffs whose circumstances this Court has considered, the Robbinses "specifically recognized the risk that the home[] they purchased contained Chinese drywall," and they chose to purchase the Property anyway. The Robbinses "actually consented to a known risk" with the "full knowledge and appreciation of the danger and risk inherent" in it. Doc. 22586 at p. 24 (quoting

*Kendrick v. Ed's Beach Serv., Inc.*, 577 So. 2d 936, 937 (Fla. 1991)),

**IV.     Conclusion**

The Robbinses claims in this MDL should be dismissed because they expressly assumed the risk that the Property contained Chinese drywall before they purchased it.

Respectfully submitted,

**FISHMAN HAYGOOD, LLP**

/s/ *Kerry J. Miller*
**KERRY J. MILLER (#24562), T.A.**
**PAUL C. THIBODEAUX (#29446)**
**DANIEL J. DYSART (#33812)**
201 St. Charles Avenue, Suite 4600
New Orleans, LA 70170
Telephone:     504.556.5549
Facsimile:      504.310.0279
Email:            kmiller@fishmanhaygood.com

*Counsel for Defendant,*
*The Knauf Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing pleading has been served upon Russ Herman, Plaintiffs' Liaison Counsel, by email, to all parties by electronically uploading the same to LexisNexis File & Serve in accordance with Pre-Trial Order No. 6, individually to pro se claimants by U.S. Mail, and that the foregoing was filed with the Clerk of Court of the United States Court for the Eastern District of Louisiana, on this 23rd day of June, 2020.

/s/ *Kerry J. Miller*
**KERRY J. MILLER**