```
                UNITED STATES DISTRICT COURT
                EASTERN DISTRICT OF LOUISIANA


In Re:  CHINESE-MANUFACTURED         |   MDL 2047
DRYWALL PRODUCTS LIABILITY           |
LITIGATION                           |   Section "L"
                                     |
_____      |   Judge Eldon Fallon
This document relates to:            |
                                     |
Elizabeth Bennett, et al v. Gebr. Knauf | MAGISTRATE JOSEPH WILKINSON, JR.
Verwaltungsgesellschaft, KG, et al   |
                                     |
Case No. 14-cv-2722                  |
_____    |


            * * * * * * * * * * * * * * * * * * *
                     ORAL DEPOSITION OF
                       FERN L. ROBBINS
                       JUNE 11, 2020
            * * * * * * * * * * * * * * * * * * *
```

    ORAL DEPOSITION OF FERN L. ROBBINS, produced as a witness at the instance of the Defendant and duly sworn, was taken in the above-styled and numbered cause on the 11th day of June, 2020, from 9:44 a.m. to 9:53 a.m., via ZOOM videoconference, by Mary Abbott Burkes, Certified Shorthand Reporter, in and for the State of Texas and Louisiana, taken by machine shorthand, witness located at 421 Chelsea Place Avenue, Ormand Beach, Florida, pursuant to Federal Rules of Civil Procedure and the provisions stated on the record or attached hereto.

**EXHIBIT 6**

1           **MS. VEITH:**  Thank you, Mary.  Sorry for
2    interrupting you.
3           **THE REPORTER:**  That's okay.
4                      EXAMINATION
5    BY MS. VEITH:
6       Q.  Good morning, Ms. Robbins.
7       A.  Good morning.
8       Q.  Thank you again for being here for this
9    second deposition.  And thank you both for providing
10   these documents, because they are very -- they're
11   necessary to resolve the issues in this case.
12          Okay.  So, Ms. Robbins, do you remember
13   when you and I did a deposition back in August in
14   Tampa?
15      A.  Yes.
16      Q.  Okay.  And one of the things we talked about
17   at your deposition was that some -- part of your --
18   the forms that you had submitted where you talked
19   about your damages included a claim for damages
20   related to sleepless nights about Chinese drywall in
21   the house?
22      A.  Correct.
23      Q.  Okay.  And what you told me is that the
24   sleepless nights began after the home inspection and
25   you did not know whether to buy the house or not,

```
 1   right?
 2        A.   Correct.
 3             MR. DOYLE:  Object to the form of the
 4   question.
 5             You can answer.
 6        A.   Yes.
 7        Q.   (BY MS. VEITH)  Okay.  And so am I correct
 8   that the home inspection you're referring to is the
 9   one by Korr & Company that I just went through with
10   your husband and marked as Exhibit 7 to the
11   deposition?
12        A.   Yes.
13        Q.   Okay.  And so tell me why you did not know
14   whether to buy the house or not after that home
15   inspection.
16        A.   Because we did not know if the house had
17   Chinese drywall.
18        Q.   Because the home inspection said it
19   potentially could have Chinese drywall?
20        A.   Yes.
21        Q.   Okay.  And then I asked you why you
22   ultimately bought the house, and you said, "Because
23   we got a lab report stating that there was no
24   Chinese drywall in the house."
25        A.   Right.
```

```
 1        Q.   Okay.  And am I correct that the lab report
 2   is the one I went through with your husband from
 3   Lakeland Labs and marked as Exhibit 9 to his
 4   deposition?
 5        A.   Yes.
 6        Q.   Okay.  So let's look at that lab report
 7   again.  And this is from Lakeland Labs, dated April
 8   18th, 2017.  Do you see the same -- the lab report
 9   on your screen?
10        A.   No.
11        Q.   Okay.  What do you see?
12        A.   A picture of the garage door.
13        Q.   Okay.  Hold on, hold on.
14        A.   The --
15        Q.   I see what's going on here.  Let me share.
16             Again, do you see the lab report now?
17        A.   Yes, yes.
18        Q.   Okay.  All right.  So I'm on the second page
19   of the lab report that I went through with your
20   husband.
21        A.   Uh-huh.
22        Q.   And I know you heard me going through it,
23   and so I'm sorry that for creating a clean record,
24   we're going to have to go through it again.
25             But I'm going to read that paragraph
```

```
 1  drywall.  That's -- I don't know what else to say.
 2      Q.  Okay.  And I have one more question.  Your
 3  husband mentioned, when I was asking about the chain
 4  of custody, that he had nothing to do with the
 5  sample being taken.  So do you know who did take the
 6  sample?
 7      A.  As far as I know, it was Bill Butcher.
 8      Q.  So it was something that would have been
 9  done by your real estate agent, not the two of you?
10      A.  Correct.
11      Q.  So y'all did not select a sample of drywall
12  in your home to give to this lab testing company?
13      A.  No.  We were in New Jersey.
14          MS. VEITH:  Okay.  So, Mary, I would
15  like to mark the same exhibits for Ms. Robbins'
16  deposition as I did for her husband.  So that's
17  Exhibits 7 through 10, and they'll be the exact
18  same.
19              (Exhibit Nos. 7 through 10 marked.)
20              And that is all I have for you.
21          MR. DOYLE:  Thank you,
22  Mr. and Mrs. Robbins.  You're done today.  Take
23  care.
24              THE WITNESS:  Thank you.
25              THE REPORTER:  Okay.  We're off the
```