UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | *<br>*<br>*   CIVIL ACTION<br>*<br>*   MDL NO. 2047<br>*<br>*   SECTION L (5) |
| THIS DOCUMENT RELATES TO:<br>*Elizabeth Bennett, et al. v. Gebr. Knauf Verwaltungsgesellschaft, KG, et al.*, No. 14-2722 | *<br>*<br>* |

**ORDER & REASONS**

Pending before the Court is Defendants' Motion for Summary Judgment on Claims Asserted by Robert Amuso, Jr., R. Doc. 22681. Plaintiff has not filed an opposition. Defendants have filed a reply, R. Doc. 22810. Having considered the applicable law and the parties' arguments, the Court now rules as follows.

**I.   BACKGROUND**

From 2004 through 2006, the housing boom in Florida and rebuilding efforts necessitated by Hurricanes Rita and Katrina led to a shortage of construction materials, including drywall. As a result, drywall manufactured in China was brought into the United States and used to construct and refurbish homes in coastal areas of the country, notably the Gulf Coast and East Coast. Sometime after the installation of the Chinese drywall, homeowners began to complain of emissions of foul-smelling gas, the corrosion and blackening of metal wiring, surfaces, and objects, and the breaking down of appliances and electrical devices in their homes. *See In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, 894 F. Supp. 2d 819, 829–30 (E.D. La. 2012), *aff'd*, 742 F.3d 576 (5th Cir. 2014). Many of these homeowners also began to complain of various physical afflictions believed to be caused by the Chinese drywall.

These homeowners then began to file suit in various state and federal courts against homebuilders, developers, installers, realtors, brokers, suppliers, importers, exporters, distributors, and manufacturers who were involved with the Chinese drywall. As a result, many homebuilders also filed suit seeking to recoup their damages. Because of the commonality of facts in the various cases, this litigation was designated as a multidistrict litigation. Pursuant to a Transfer Order from the United States Judicial Panel on Multidistrict Litigation on June 15, 2009, all federal cases involving Chinese drywall were consolidated for pretrial proceedings in MDL 09-2047 before this Court. Since that date, numerous cases have been consolidated, involving thousands of individual claims; over 20,000 documents have been entered into the record, millions of documents have been exchanged in discovery, depositions have been taken in the United States and in China, and over thirty Pretrial Orders have been issued; the Court has appointed steering committees and liaison counsel for plaintiffs, homebuilders, insurers, installers, and manufacturers, and it has presided over monthly status conferences, hearings, and several bellwether trials.

The Chinese drywall at issue was largely manufactured by two groups of defendants: (1) the Knauf Entities and (2) the Taishan Entities. The litigation has focused upon these two entities and their downstream associates and has proceeded on strikingly different tracks for the claims against each group.

### A. The Knauf Defendants

The Knauf Entities are German-based, international manufacturers of building products, including drywall, whose Chinese subsidiary, Knauf Plasterboard (Tianjin) Co., Ltd. ("KPT"), advertised and sold its Chinese drywall in the United States. The Knauf Entities are named defendants in numerous cases consolidated with the MDL litigation and litigation in state courts.

The Knauf Entities first entered their appearance in the MDL litigation on July 2, 2009. Thereafter, the Court presided over a bellwether trial in *Hernandez v. Knauf Gips KG*, Case No. 09-6050, involving a homeowner's claims against KPT for defective drywall. The Court found in favor of the plaintiff family in *Hernandez*, issued a detailed Findings of Fact and Conclusions of Law, and entered a Judgment in the amount of $164,049.64, including remediation damages in the amount of $136,940.46—which represented a remediation cost of $81.13 per square foot based on the footprint square footage of the house.

Subsequently, the Knauf Entities agreed to institute a pilot remediation program utilizing the remediation protocol formulated by the Court from the evidence in *Hernandez*. The Knauf pilot remediation program is now completed and has remediated more than 2,200 homes containing KPT Chinese drywall using the same general protocol. At the Court's urging, the parties began working together to monetize this program and make it available to a broader class of plaintiffs.

On December 20, 2011, the Knauf Entities and the PSC entered into a global, class Settlement Agreement ("Knauf Settlement Agreement"), which was designed to resolve all Knauf-related, Chinese drywall claims. In addition to the Knauf Settlement Agreement and after a jury trial in a bellwether case, numerous defendants in the chain-of-commerce with the Knauf Entities have entered into class settlement agreements, the effect of which settles almost all of the Knauf Entities' chain-of-commerce litigation. The total amount of the Knauf Settlement is approximately $1.1 billion. Thereafter, additional claims were filed against Knauf and others.

### B. The Bennett Class Action

The instant matter is a purported class action filed on November 13, 2014 by Elizabeth Bennett in the Northern District of Alabama.[1] Ms. Bennet raised claims on her own behalf and on the behalf of a nationwide class of similarly situated homeowners who allegedly suffered damages due to the presence of defective Chinese drywall in their homes. The Plaintiffs raised claims against the Knauf Entities for negligence, negligence per se, strict liability, breach of express and/or implied warranty, redhibition, violations of the Louisiana Products Liability Act, private nuisance, negligent discharge of a corrosive substance, unjust enrichment, violations of consumer protection laws, and equitable and injunctive relief and medical monitoring with respect to the manufacture of allegedly defective Chinese drywall. In January 2015, the Judicial Panel on Multidistrict Litigation transferred the case to the Eastern District of Louisiana and consolidated it with the *In re Chinese Manufactured Drywall Liability Litigation*, MLD 09-2047, currently pending before this Court.

On October 31, 2019, the Court granted leave for Plaintiffs to add several new Plaintiffs to the action. R. Doc. 22357. The case now involves 130 affected properties. On that date, the Court also extended many of the Case Management Order's deadlines. R. Doc. 22357. With discovery well underway, the Knauf Defendants have begun to file dispositive motions targeting the claims of several individual plaintiffs.

---

[1] On January 22, 2020, the Court granted Defendant's Motion to Deny Class Certification, finding that the predominance requirement of Rule 23(b)(3) was not satisfied. R. Docs. 22524, 22528. Specifically, the Court noted that the variety in the individual claims, which included personal injury and property damage claims, theories of liability, applicable state laws and defenses, and damage calculations precluded the finding of predominance necessary to warrant class certification.

4

## II. PENDING MOTION

Defendants seek summary judgment of the claims asserted by Robert Amuso on the grounds that he does not have a legal interest in the affected property. R. Doc. 22681. Amuso's claims arise from the alleged presence of Chinese drywall in a property located at 3461 Ambrose Lane, Kimberly, Alabama. R. Doc. 22681-1. Defendants argue summary judgment is warranted because Robert Amuso has not set forth any evidence demonstrating that he owns the affected property. *Id.* at 5.

## III. LAW & ANALYSIS

### A. Legal Standard – Motion for Summary Judgment

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). When assessing whether a dispute as to any material fact exists, the Court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008).

Under Federal Rule of Civil Procedure 56(c), the moving party bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 322. When the moving party has met its Rule 56(c) burden, "[t]he non-movant cannot avoid summary judgment . . . by merely making 'conclusory allegations' or 'unsubstantiated assertions.'" *Calbillo v. Cavender Oldsmobile, Inc.*, 288 F.3d 721, 725 (5th Cir. 2002) (quoting

5

*Little*, 37 F.3d at 1075). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986). All reasonable inferences are drawn in favor of the nonmoving party, but a party cannot defeat summary judgment with conclusory allegations or unsubstantiated assertions. *Little*, 37 F.3d at 1075. A court ultimately must be satisfied that "a reasonable jury could not return a verdict for the nonmoving party." *Delta*, 530 F.3d at 399.

### B. Discussion

Defendants' motion was set for submission on May 13, 2020; accordingly, under Local Rule 7.5, Amuso' opposition was due by May 5, 2020. No opposition was filed by that date. However, the Court may not grant Defendant's motion for summary judgment "merely because it is unopposed." *Bustos v. Martini Club Inc.*, 599 F.3d 458, 468 (5th Cir. 2010). Indeed, "[t]he movant has the burden of establishing the absence of a genuine issue of material fact and, unless he has done so, the court may not grant the motion, regardless of whether any response was filed." *Hetzel v. Bethlehem Steel Corp.*, 50 F.3d 360, 362 (5th Cir. 1995). However, the Court does not, "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts," *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994), nor need it "sift through the record in search of evidence to support a party's opposition," *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994).

The Court construes Defendants argument as suggesting that Robert Amuso lacks standing to bring the instant claims. A party has standing to bring legal claims when it can "demonstrate a direct and articulable interest in the controversy, which will be affected by the outcome of the litigation." *Whitburn, LLC v. Wells Fargo Bank, N.A.*, 190 So. 3d 1087, 1091 (Fla. Dist. Ct. App.

2015) (quoting *Centerstate Bank Cent. Fla., N.A. v. Krause*, 87 So.3d 25, 28 (Fla. 5th DCA 2012)). This interest must be concrete and particularized, not conjectural or hypothetical, and must be analyzed in light of the nature of the asserted interest. *Centerstate Bank*, 87 So. 3d at 28. "'The party invoking federal jurisdiction bears the burden of establishing' standing—and, at the summary judgment stage, such a party 'can no longer rest on . . . "mere allegations," but must "set forth" by affidavit or other evidence "specific facts."'" *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 412 (2013) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992)).

Here, Robert Amuso's claims arise from the alleged presence of Chinese drywall in a property he has not demonstrated an interest in. Defendants have provided evidence suggesting that Mr. Amuso is not an owner of the affected property, and Mr. Amuso has not rebutted these allegations with evidence of his own to establish the existence of a genuine issue of material fact. Specifically, the deed for the property lists Stephanie Doss (now Stephanie Amuso), as the sole Grantee of the property. R. Doc. 22681-3. Both Stephanie Amuso and Robert Amuso were deposed in connection with this litigation, and neither could confirm that Mr. Amuso was actually a co-owner of the property. Although Ms. Amuso explained that she made her husband a co-owner of the property in 2014 while refinancing, she did not know whether he was "included as an owner of the property, or . . . simply [added to] the mortgage." R. Doc. 22681-4 at 2. When Mr. Amuso was questioned about his ownership of the property, he could not recall whether he was added to the title, deed, or any other documents, or whether he and his wife ever "[went] back to a closing agent and [did] any sort of active transfer . . . for the property." R. Doc. 22681-5 at 2. In failing to oppose the motion, Plaintiff has not introduced any evidence to suggest he was actually made a co-owner of the property.

Recognizing that an individual "cannot recover for damage to property he does not own," *Benoit v. Saint-Gobain Performance Plastics Corp.*, No. 116CV1057LEKDJS, 2017 WL 3316132, at *6 (N.D.N.Y. Aug. 2, 2017), *aff'd in part, appeal dismissed in part*, 959 F.3d 491 (2d Cir. 2020), the Court concludes that Robert Amuso has not set forth any specific facts, by affidavit or otherwise, supporting his right to prosecute the instant claims. They must accordingly be dismissed.

## IV. CONCLUSION

Based on the foregoing,

**IT IS ORDERED** that Defendants' Motion for Summary Judgment on Claims Asserted by Robert Amuso, Jr., R. Doc. 22681, is **GRANTED**.

New Orleans, Louisiana, this 31st day of July, 2020.

_____
Eldon E. Fallon
United States District Judge

8