UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | *<br>*<br>* CIVIL ACTION<br>*<br>* MDL NO. 2047<br>*<br>* SECTION L (5)<br>THIS DOCUMENT RELATES TO: *<br>*Elizabeth Bennett, et al. v. Gebr. Knauf* *<br>*Verwaltungsgesellschaft, KG, et al.*, No. 14-2722 * |

## ORDER & REASONS

Pending before the Court is Defendants' Motion for Summary Judgment on Claims Asserted by CDO Investments and MCF Enterprises, Inc., R. Doc. 22630. Plaintiffs have filed an opposition, R. Doc. 22869, and Defendants have filed a reply, R. Doc. 22842. Having considered the applicable law and the parties' arguments, the Court now rules as follows.

### I. BACKGROUND

From 2004 through 2006, the housing boom in Florida and rebuilding efforts necessitated by Hurricanes Rita and Katrina led to a shortage of construction materials, including drywall. As a result, drywall manufactured in China was brought into the United States and used to construct and refurbish homes in coastal areas of the country, notably the Gulf Coast and East Coast. Sometime after the installation of the Chinese drywall, homeowners began to complain of emissions of foul-smelling gas, the corrosion and blackening of metal wiring, surfaces, and objects, and the breaking down of appliances and electrical devices in their homes. *See In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, 894 F. Supp. 2d 819, 829–30 (E.D. La. 2012), *aff'd*, 742 F.3d 576 (5th Cir. 2014). Many of these homeowners also began to complain of various physical afflictions believed to be caused by the Chinese drywall.

These homeowners then began to file suit in various state and federal courts against homebuilders, developers, installers, realtors, brokers, suppliers, importers, exporters, distributors, and manufacturers who were involved with the Chinese drywall. As a result, many homebuilders also filed suit seeking to recoup their damages. Because of the commonality of facts in the various cases, this litigation was designated as a multidistrict litigation. Pursuant to a Transfer Order from the United States Judicial Panel on Multidistrict Litigation on June 15, 2009, all federal cases involving Chinese drywall were consolidated for pretrial proceedings in MDL 09-2047 before this Court. Since that date, numerous cases have been consolidated, involving thousands of individual claims; over 20,000 documents have been entered into the record, millions of documents have been exchanged in discovery, depositions have been taken in the United States and in China, and over thirty Pretrial Orders have been issued; the Court has appointed steering committees and liaison counsel for plaintiffs, homebuilders, insurers, installers, and manufacturers, and it has presided over monthly status conferences, hearings, and several bellwether trials.

The Chinese drywall at issue was largely manufactured by two groups of defendants: (1) the Knauf Entities and (2) the Taishan Entities. The litigation has focused upon these two entities and their downstream associates and has proceeded on strikingly different tracks for the claims against each group.

A. The Knauf Defendants

The Knauf Entities are German-based, international manufacturers of building products, including drywall, whose Chinese subsidiary, Knauf Plasterboard (Tianjin) Co., Ltd. ("KPT"), advertised and sold its Chinese drywall in the United States. The Knauf Entities are named defendants in numerous cases consolidated with the MDL litigation and litigation in state courts.

The Knauf Entities first entered their appearance in the MDL litigation on July 2, 2009. Thereafter, the Court presided over a bellwether trial in *Hernandez v. Knauf Gips KG*, Case No. 09-6050, involving a homeowner's claims against KPT for defective drywall. The Court found in favor of the plaintiff family in *Hernandez*, issued a detailed Findings of Fact and Conclusions of Law, and entered a Judgment in the amount of $164,049.64, including remediation damages in the amount of $136,940.46—which represented a remediation cost of $81.13 per square foot based on the footprint square footage of the house.

Subsequently, the Knauf Entities agreed to institute a pilot remediation program utilizing the remediation protocol formulated by the Court from the evidence in *Hernandez*. The Knauf pilot remediation program is now completed and has remediated more than 2,200 homes containing KPT Chinese drywall using the same general protocol. At the Court's urging, the parties began working together to monetize this program and make it available to a broader class of plaintiffs.

On December 20, 2011, the Knauf Entities and the PSC entered into a global, class Settlement Agreement ("Knauf Settlement Agreement"), which was designed to resolve all Knauf-related, Chinese drywall claims. In addition to the Knauf Settlement Agreement and after a jury trial in a bellwether case, numerous defendants in the chain-of-commerce with the Knauf Entities have entered into class settlement agreements, the effect of which settles almost all of the Knauf Entities' chain-of-commerce litigation. The total amount of the Knauf Settlement is approximately $1.1 billion. Thereafter, additional claims were filed against Knauf and others.

B. **The Bennett Class Action**

The instant matter is a purported class action filed on November 13, 2014 by Elizabeth Bennett in the Northern District of Alabama. [1] Ms. Bennet raised claims on her own behalf and on the behalf of a nationwide class of similarly situated homeowners who allegedly suffered damages due to the presence of defective Chinese drywall in their homes. The Plaintiffs raised claims against the Knauf Entities for negligence, negligence per se, strict liability, breach of express and/or implied warranty, redhibition, violations of the Louisiana Products Liability Act, private nuisance, negligent discharge of a corrosive substance, unjust enrichment, violations of consumer protection laws, and equitable and injunctive relief and medical monitoring with respect to the manufacture of allegedly defective Chinese drywall. In January 2015, the Judicial Panel on Multidistrict Litigation transferred the case to the Eastern District of Louisiana and consolidated it with the *In re Chinese Manufactured Drywall Liability Litigation*, MLD 09-2047, currently pending before this Court.

On October 31, 2019, the Court granted leave for Plaintiffs to add several new Plaintiffs to the action. R. Doc. 22357. The case now involves 130 affected properties. On that date, the Court also extended many of the Case Management Order's deadlines. R. Doc. 22357. With discovery well underway, the Knauf Defendants have begun to file dispositive motions targeting the claims of several individual plaintiffs.

---

[1] On January 22, 2020, the Court granted Defendant's Motion to Deny Class Certification, finding that the predominance requirement of Rule 23(b)(3) was not satisfied. R. Docs. 22524, 22528. Specifically, the Court noted that the variety in the individual claims, which included personal injury and property damage claims, theories of liability, applicable state laws and defenses, and damage calculations precluded the finding of predominance necessary to warrant class certification.

## II. PENDING MOTION

CDO Investments LLC's ("CDO") claims arise from the alleged presence of defective Chinese drywall in a property located at 25409 Durango Court, Punta Gorda, Florida. MCF Enterprise, Inc.'s ("MCF") claims arise from the alleged presence of defective Chinese drywall in a property located at 8554 Pegasus Drive, Lehigh Acres, Florida. R. Doc. 22630-1 at 3. Defendants seek summary judgment of claims asserted by CDO and MCF on the grounds that these entities failed to comply with preservation of evidence requirements, assumed the risk of Chinese drywall when they purchased the property "as-is," and failed to submit evidence to support their claims.

CDO and MCF oppose the motion. R. Doc. 22869. Specifically, they contend Defendants have failed to demonstrate that they assumed the risk that Chinese drywall existed in the properties and that Knauf should be estopped from so arguing because it violated its post-sale duty to warn consumers about the defective drywall under Florida law.

In reply, Defendants contend Plaintiffs have failed to identify a single question of fact regarding the assumption of the risk or failure to preserve evidence and instead pointed the Court to "some metaphysical doubt as to alleged material facts" insufficient to sustain their summary judgment burden. R. Doc. 22842 at 3. Defendants also respond to Plaintiffs' duty to warn allegations, arguing that Plaintiffs cannot use the opposition to raise new claims and that even if they could, the claims should be denied on the merits. *Id.* at 6.

## III. LAW & ANALYSIS

### A. Legal Standard – Motion for Summary Judgment

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317,

322 (1986) (citing Fed. R. Civ. P. 56(c)); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). When assessing whether a dispute as to any material fact exists, the Court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008).

Under Federal Rule of Civil Procedure 56(c), the moving party bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 322. When the moving party has met its Rule 56(c) burden, "[t]he non-movant cannot avoid summary judgment . . . by merely making 'conclusory allegations' or 'unsubstantiated assertions.'" *Calbillo v. Cavender Oldsmobile, Inc.*, 288 F.3d 721, 725 (5th Cir. 2002) (quoting *Little*, 37 F.3d at 1075). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986). All reasonable inferences are drawn in favor of the nonmoving party, but a party cannot defeat summary judgment with conclusory allegations or unsubstantiated assertions. *Little*, 37 F.3d at 1075. A court ultimately must be satisfied that "a reasonable jury could not return a verdict for the nonmoving party." *Delta*, 530 F.3d at 399.

## B. Discussion

The Court has already considered and ruled on many dispositive motions involving allegations of assumption of the risk and failure to preserve evidence. R. Docs. 22586; 22165. In these rulings, the Court has been cognizant of its role as a transferee court and has striven to rule conservatively, reserving even slight factual discrepancies to be resolved by the transferor court,

either through a re-urged dispositive motion, at a pretrial conference, by Rule 50 motion, or by the jury. In keeping with the law of the case doctrine, the Court emphasizes its desire to maintain consistency with these prior rulings. The law of the case doctrine instructs courts to "show deference to decisions already made in the case they are presiding over," but does not "prevent a district court from reconsidering prior rulings." *Stoffels ex rel. SBC Tel. Concession Plan v. SBC Commc'ns, Inc.*, 677 F.3d 720, 727 (5th Cir. 2012) (quoting *Zarnow v. City of Wichita Falls, Tex.*, 614 F.3d 161, 171 (5th Cir. 2010)).

Defendants argue that summary judgment is appropriate because CDO and MCF were aware of the risk that the properties contained Chinese drywall at the time of purchase and accordingly assumed the risk, and because CDO and MCF failed to preserve evidence in accordance with PTO 1, PTO 1(B), and PTO 1(I). The Court considers each in turn.

With respect to assumption of the risk, Defendants explain that CDO and MCF are real estate investment companies who routinely flip homes in south Florida and who had each purchased multiple properties containing Chinese drywall and participated in the Knauf Settlement Agreement before filing the instant claims. *Id*. Similar claims were denied by the Special Master on the grounds that CDO and MCF failed to make a reasonable inquiry into the presence of Chinese drywall in the subject properties as required by the terms of the Settlement Agreement. R. Docs. 21838, 21839, 21871. Defendants urge the Court to adopt the same reasoning as the Special Master in denying the instant claims.

The Special Master's decision with respect to CDO and MCF's participation in the Knauf Settlement does not necessarily compel the same result here. The Special Master's decision was cabined to consideration of claims pursuant to the Knauf Settlement, which, in relevant part, expressly barred claims where a plaintiff had "failed to make a reasonable inquiry" into the

7

presence of reactive Chinese drywall at the time of purchase. R. Doc. 21383 at 3. Here, however, CDO and MCF are not attempting to participate in the Knauf Settlement, and their claims cannot be held to the same standard. Accordingly, the Court considers whether summary judgment is appropriate in light of the assumption of the risk doctrine under Florida law.

Under Florida law, the "affirmative defense of express assumption of the risk may totally bar recovery if the injured party actually consented to a known risk." *Kendrick v. Ed's Beach Serv., Inc.*, 577 So. 2d 936, 937 (Fla. 1991). The defense is viable when the plaintiff had "full knowledge and appreciation of the danger and risk inherent in that kind of activity." *Id*. Whether a plaintiff "'actually consented' to confront certain dangers" is a question for the jury. *Kuehner v. Green*, 436 So. 2d 78, 80 (Fla. 1983). In answering that question, the jury must determine "whether the plaintiff *subjectively* appreciated the risk giving rise to the injury," considering "what the plaintiff really expected" in following a particular course of conduct. *Id*. (citing *Henry v. Britt*, 220 So.2d 917 (Fla. 4th DCA)). "If it is found that the plaintiff recognized the risk and proceeded to participate in the face of such danger the defendant can properly raise the defense of express assumption of risk." *Id*. (emphasis omitted). If a plaintiff did not subjectively appreciate the instant risk, the jury must consider whether he reasonably should have done so. "If it is found that a reasonable man would *not* have anticipated this risk, the 'unsuspecting plaintiff' cannot be said to have consented to the danger and he therefore should be allowed to recover in full." *Id*. The apportionment of fault principals of comparative negligence apply when a plaintiff should have recognized a particular risk but failed to do so. *Id*. at 80.

In keeping with these principles, the Court has routinely denied summary judgment on the basis of assumption of the risk in the absence of clear evidence that the Plaintiff subjectively appreciated the risk that the property contained Chinese drywall. Although the evidence presented

8

in the instant motions is much closer, the same approach applies. Considering the evidence in the light most favorable to Plaintiffs, the Court concludes there remains a factual question with respect to whether, in light of the nature of the real estate business in south Florida and these entities' prior participation in the Knauf Settlement, CDO and MDC subjectively appreciated the specific risk that these properties contained Chinese drywall or acted reasonably in failing to appreciate said risk.

This is a very close case. In denying summary judgment on this basis, the Court is cognizant of its role as a transferee court and aims to limits its entanglements in even minor factual disputes. Although the evidence in support of Plaintiffs' position is slight, the Court concludes that a question of fact exists, albeit a small one, and recognizes that the parties may re-urge the issue before the transferor court, who will be in a better position to scrutinize the particular facts at issue here.

Additionally, summary judgment is not warranted on the basis of an alleged failure to preserve evidence as required by PTO 1, PTO 1(B), and PTO 1(I). In an MDL such as the present litigation, in which there are thousands of claims, parties, and attorneys, it is necessary, if not essential, that the transferee court establish some guidelines so that the discovery aspect of the case can proceed in a fair, effective, and efficient manner. To accomplish this goal, the Court issued a number of Pretrial Orders governing the preservation of physical evidence.

"A district court has broad discretion in all discovery matters, and such discretion will not be disturbed ordinarily unless there are unusual circumstances showing a clear abuse." *Moore v. CITGO Ref. & Chemicals Co.*, L.P., 735 F.3d 309, 315 (5th Cir. 2013) (quoting *Kelly v. Syria Shell Petroleum Dev. B.V.*, 213 F.3d 841, 855 (5th Cir. 2000)). Federal Rule of Civil Procedure 41(b) authorizes a district court to dismiss a claim or impose other sanctions for failure to comply with

discovery orders. However, because "dismissal with prejudice is an extreme sanction that deprives the litigant of the opportunity to pursue his claim," a dismissal under Rule 41(b) is proper only when (1) there is a clear record of delay or contumacious conduct by the plaintiff, and (2) lesser sanctions would not serve the interests of justice. *Callip v. Harris Cnty. Child Welfare Dep't*, 757 F.2d 1513, 1519 (5th Cir. 1985).

In ruling on other recently-filed dispositive motions, the Court has declined to grant summary judgment on the basis of alleged non-compliance with pretrial orders. A similar approach is warranted here. To the extent MDC and CDO's alleged failure to satisfactorily preserve physical evidence imposes a burden on Defendants, the Court does not find a clear record of delay and contumacious conduct by MDC and CDO that would allow the Court at this time to exercise its discretion under Federal Rule of Civil Procedure 41 to dismiss these claims. Moreover, Plaintiffs allege that MDC and CDO have "provided photographs of the defective drywall in place within the properties prior to self-remediation," and Defendants acknowledge receipt of these photographs. R. Doc. 22630-1 at 5; 22869 at 9. Ultimately, although the parties dispute whether evidence was satisfactorily preserved, the resolution of that question is best left to the transferor court who will rely on such evidence in trying this case.

## IV. CONCLUSION

Considering the foregoing,

**IT IS ORDERED** that Defendants' Motion for Summary Judgment on Claims Asserted by CDO Investments and MCF Enterprises, Inc., R. Doc. 22630, is **DENIED**.

New Orleans, Louisiana this 3rd day of August, 2020.

                                                      Eldon E. Fallon
                                            United States District Judge