UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALL  PRODUCTS LIABILITY LITIGATION | *  *  *       CIVIL ACTION  *  *       MDL NO. 2047  *  *       SECTION L (5) |
| THIS DOCUMENT RELATES TO:  *Elizabeth Bennett, et al. v. Gebr. Knauf  Verwaltungsgesellschaft, KG, et al.*, No. 14-2722 | *  *  * |

**ORDER & REASONS**

Pending before the Court is Defendants' Omnibus Motion for Summary Judgment, R. Doc. 22659. Plaintiffs have filed an opposition, R. Doc. 22790, and Defendants have filed a reply, R. Doc. 22839. Having considered the applicable law and the parties' arguments, the Court now rules as follows.

I.   BACKGROUND

From 2004 through 2006, the housing boom in Florida and rebuilding efforts necessitated by Hurricanes Rita and Katrina led to a shortage of construction materials, including drywall. As a result, drywall manufactured in China was brought into the United States and used to construct and refurbish homes in coastal areas of the country, notably the Gulf Coast and East Coast. Sometime after the installation of the Chinese drywall, homeowners began to complain of emissions of foul-smelling gas, the corrosion and blackening of metal wiring, surfaces, and objects, and the breaking down of appliances and electrical devices in their homes. *See In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, 894 F. Supp. 2d 819, 829–30 (E.D. La. 2012), *aff'd*, 742 F.3d 576 (5th Cir. 2014). Many of these homeowners also began to complain of various physical afflictions believed to be caused by the Chinese drywall.

These homeowners then began to file suit in various state and federal courts against homebuilders, developers, installers, realtors, brokers, suppliers, importers, exporters, distributors, and manufacturers who were involved with the Chinese drywall. As a result, many homebuilders also filed suit seeking to recoup their damages. Because of the commonality of facts in the various cases, this litigation was designated as a multidistrict litigation. Pursuant to a Transfer Order from the United States Judicial Panel on Multidistrict Litigation on June 15, 2009, all federal cases involving Chinese drywall were consolidated for pretrial proceedings in MDL 09-2047 before this Court. Since that date, numerous cases have been consolidated, involving thousands of individual claims; over 20,000 documents have been entered into the record, millions of documents have been exchanged in discovery, depositions have been taken in the United States and in China, and over thirty Pretrial Orders have been issued; the Court has appointed steering committees and liaison counsel for plaintiffs, homebuilders, insurers, installers, and manufacturers, and it has presided over monthly status conferences, hearings, and several bellwether trials.

The Chinese drywall at issue was largely manufactured by two groups of defendants: (1) the Knauf Entities and (2) the Taishan Entities. The litigation has focused upon these two entities and their downstream associates and has proceeded on strikingly different tracks for the claims against each group.

A. The Knauf Defendants

The Knauf Entities are German-based, international manufacturers of building products, including drywall, whose Chinese subsidiary, Knauf Plasterboard (Tianjin) Co., Ltd. ("KPT"), advertised and sold its Chinese drywall in the United States. The Knauf Entities are named defendants in numerous cases consolidated with the MDL litigation and litigation in state courts.

The Knauf Entities first entered their appearance in the MDL litigation on July 2, 2009. Thereafter, the Court presided over a bellwether trial in *Hernandez v. Knauf Gips KG*, Case No. 09-6050, involving a homeowner's claims against KPT for defective drywall. The Court found in favor of the plaintiff family in *Hernandez*, issued a detailed Findings of Fact and Conclusions of Law, and entered a Judgment in the amount of $164,049.64, including remediation damages in the amount of $136,940.46—which represented a remediation cost of $81.13 per square foot based on the footprint square footage of the house.

Subsequently, the Knauf Entities agreed to institute a pilot remediation program utilizing the remediation protocol formulated by the Court from the evidence in *Hernandez*. The Knauf pilot remediation program is now completed and has remediated more than 2,200 homes containing KPT Chinese drywall using the same general protocol. At the Court's urging, the parties began working together to monetize this program and make it available to a broader class of plaintiffs.

On December 20, 2011, the Knauf Entities and the PSC entered into a global, class Settlement Agreement ("Knauf Settlement Agreement"), which was designed to resolve all Knauf-related, Chinese drywall claims. In addition to the Knauf Settlement Agreement and after a jury trial in a bellwether case, numerous defendants in the chain-of-commerce with the Knauf Entities have entered into class settlement agreements, the effect of which settles almost all of the Knauf Entities' chain-of-commerce litigation. The total amount of the Knauf Settlement is approximately $1.1 billion. Thereafter, additional claims were filed against Knauf and others.

### B. The Bennett Matter

The instant matter is a purported class action filed on November 13, 2014 by Elizabeth Bennett in the Northern District of Alabama.[1] Ms. Bennet raised claims on her own behalf and on the behalf of a nationwide class of similarly situated homeowners who allegedly suffered damages due to the presence of defective Chinese drywall in their homes. The Plaintiffs raised claims against the Knauf Entities for negligence, negligence per se, strict liability, breach of express and/or implied warranty, redhibition, violations of the Louisiana Products Liability Act, private nuisance, negligent discharge of a corrosive substance, unjust enrichment, violations of consumer protection laws, and equitable and injunctive relief and medical monitoring with respect to the manufacture of allegedly defective Chinese drywall. In January 2015, the Judicial Panel on Multidistrict Litigation transferred the case to the Eastern District of Louisiana and consolidated it with the *In re Chinese Manufactured Drywall Liability Litigation*, MLD 09-2047, currently pending before this Court.

On October 31, 2019, the Court granted leave for Plaintiffs to add several new Plaintiffs to the action. R. Doc. 22357. The case now involves 130 affected properties. On that date, the Court also extended many of the Case Management Order's deadlines. R. Doc. 22357. With discovery well underway, the Knauf Defendants have begun to file dispositive motions targeting the claims of several individual plaintiffs.

---

[1] On January 22, 2020, the Court granted Defendant's Motion to Deny Class Certification, finding that the predominance requirement of Rule 23(b)(3) was not satisfied. R. Docs. 22524, 22528. Specifically, the Court noted that the variety in the individual claims, which included personal injury and property damage claims, theories of liability, applicable state laws and defenses, and damage calculations precluded the finding of predominance necessary to warrant class certification.

4

II. **PENDING MOTION**

Defendants seek summary judgment of all claims asserted by Louisiana and Mississippi Plaintiffs that do not involve the Louisiana Products Liability Act or the Mississippi Products Liability Act, arguing that these Acts provide the exclusive theories of liability under which a plaintiff may recover from the manufacturer of a product for harm caused by that product. R. Doc. 22659-1.

In opposition, Plaintiffs argue Defendants have not identified a single issue ripe for summary judgment, and that "this [motion] appears to be a better suited issue for a jury charge conference rather than summary judgment." R. Doc. 22790 at 7. Specifically, with respect to the MPLA-based argument, Plaintiffs contend the statute cannot be interpreted as "limit[ing] the types of damages that may be recovered," nor does it "specify [that] any 'non-MPLA' [claims] . . . have been proscribed due to its enactment." *Id.* at 8.

In reply, Defendants note re-aver that both the LPLA and the MPLA set forth exclusive theories of liability for the Louisiana and Mississippi claimants in this action, as they all "seek to recover damages caused by the alleged presence of defective Knauf-manufactured Chinese drywall in their homes." R. Doc. 22839 at 2.

III. **LAW & ANALYSIS**

A. **Legal Standard – Motion for Summary Judgment**

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). When assessing whether a dispute as to any material fact exists, the Court considers "all of

the evidence in the record but refrains from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008).

Under Federal Rule of Civil Procedure 56(c), the moving party bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 322. When the moving party has met its Rule 56(c) burden, "[t]he non-movant cannot avoid summary judgment . . . by merely making 'conclusory allegations' or 'unsubstantiated assertions.'" *Calbillo v. Cavender Oldsmobile, Inc.*, 288 F.3d 721, 725 (5th Cir. 2002) (quoting *Little*, 37 F.3d at 1075). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986). All reasonable inferences are drawn in favor of the nonmoving party, but a party cannot defeat summary judgment with conclusory allegations or unsubstantiated assertions. *Little*, 37 F.3d at 1075. A court ultimately must be satisfied that "a reasonable jury could not return a verdict for the nonmoving party." *Delta*, 530 F.3d at 399.

### B. Discussion

The Court has already considered many dispositive motions dealing with the exclusive applicability of the Louisiana Products Liability Act. R. Docs. 22586; 22165. In these rulings, the Court has been cognizant of its role as a transferee court and has striven to rule conservatively, reserving even small factual discrepancies to be resolved by the transferor court, either through a re-urged dispositive motion, at a pretrial conference, by Rule 50 motion, or by the jury. In keeping with the law of the case doctrine, the Court emphasizes its desire to maintain consistency with

these prior rulings. The law of the case doctrine instructs courts to "show deference to decisions already made in the case they are presiding over," but does not "prevent a district court from reconsidering prior rulings." *Stoffels ex rel. SBC Tel. Concession Plan v. SBC Commc'ns, Inc.*, 677 F.3d 720, 727 (5th Cir. 2012) (quoting *Zarnow v. City of Wichita Falls, Tex.*, 614 F.3d 161, 171 (5th Cir. 2010)).

Here, Defendants argue that all Louisiana and Mississippi claimants seek to recover damages allegedly caused by the presence of Knauf-manufactured Chinese drywall in their properties, and that these claims are cognizable exclusively under the Louisiana Products Liability Act ("LPLA") and the Mississippi Products Liability Act ("MPLA").

The LPLA "establishes the exclusive theories of liability for manufacturers for damage caused by their products." La. Rev. Stat. § 9:2800.52; *see Chevron USA, Inc. v. Aker Mar., Inc.*, 604 F.3d 888, 900 (5th Cir. 2010). In other words, "[a] plaintiff may not recover from a manufacturer for damage caused by a product on the basis of any theory of liability not set forth in the LPLA." *Jefferson v. Lead Indus. Ass'n, Inc.*, 930 F. Supp. 241, 244–45 (E.D. La. 1996), *aff'd*, 106 F.3d 1245 (5th Cir. 1997).

"Damages" under the LPLA includes "damage to the product itself and economic loss . . . only to the extent" such recovery is not viable under a claim for breach of the implied warranty against redhibitory defects. La. Rev. Stat. § 9:2800.53(5). Accordingly, the LPLA precludes all theories of liability seeking damages arising from a manufacturer's defective product except for redhibition claims involving damage to the product itself or economic loss. *Hollybrook Cottonseed Processing, LLC v. Carver, Inc.*, No. CIV.A.09-0750, 2010 WL 2195685, at *4 (W.D. La. May 28, 2010) ("[T]he plain language of the LPLA precludes any claim against a manufacturer for damages caused by its products, regardless of the theory of recovery, except for redhibition

7

claims."); *see also C-Innovation, LLC v. Norddeutsche Seekabelewerke GMBH*, No. CIV.A. 10-4441, 2013 WL 990026, at *4 (E.D. La. Mar. 13, 2013) ("By virtue of the LPLA's definition of damages recoverable under the act, tort damages under article 2315 et seq. are recoverable from a product manufacturer only under the LPLA.").

Similarly, the MPLA applies "in any action for damages caused by a product, including, but not limited to, any action based on a theory of strict liability in tort, negligence or breach of implied warranty, except for commercial damage to the product itself." Miss. Code. Ann. § 11-1-63. The statute imposes liability on a manufacturer where a plaintiff successfully demonstrates that he or she suffered damages proximately caused by a product's defective condition that rendered the product unreasonably dangerous to the user. *Id*. The Mississippi Supreme Court has recently confirmed that "'the MPLA provides the exclusive remedy' for products-liability claims." *Elliott v. El Paso Corp.*, 181 So. 3d 263, 268 (Miss. 2015). "In other words, the MPLA has abrogated products-liability claims based on strict-liability or negligence theories, and the MPLA now provides the roadmap for such claims." *Id*. (rejecting plaintiffs' argument that victims of defective products can maintain negligence actions "separate and apart from claims under the MPLA" and analyzing plaintiffs' negligence and strict-liability based products liability claims under the MPLA accordingly).

In practice, the application of the MPLA as an exclusive vehicle for products liability claims is not a drastic limitation on the rights a plaintiff can seek to vindicate in court. The statute merely requires claims related to damages caused by a product to be analyzed under the MPLA framework, rather than as stand-alone common law claims. *Young v. Bristol-Myers Squibb Co.*, No. 416CV00108DMBJMV, 2017 WL 706320, at *3 (N.D. Miss. Feb. 22, 2017) (citing *Elliott*, 181 So. 3d at 269). However, "where a common law claim is subsumed by the MPLA and is

8

brought alongside products liability claims based on the same theory of recovery, the proper course is to dismiss the common law claim to the extent it is duplicative of the parallel products liability counts." *Id.* at \*4; *see also Finch v. Pepperidge Farms, Inc.*, No. 1:18-CV-152-GHD-DAS, 2019 WL 302506, at \*1 (N.D. Miss. Jan. 23, 2019) ("[W]hen the negligence and breach of implied warranty are duplicative of already-pleaded products liability claims, they should be dismissed.").

The Fifth Amended Complaint is the operative complaint in this matter. R. Doc. 21334. In it, Plaintiffs assert causes of action based on: negligence (Count 1); negligence per se (Count 2); strict liability (Count 3); breach of express and/or implied warranty (Count 4); private nuisance (Count 7); negligent discharge of a corrosive substance (Count 8); unjust enrichment (Count 9); violations of various consumer protection acts (Count 10); and equitable and injunctive relief and medical monitoring (Count 11). In addition, all Louisiana Plaintiffs assert causes of action for redhibition (Count 5); and violations of the LPLA (Count 6). Based on the foregoing, the operative question is whether, and to what extent, these causes of action survive in light of the exclusive nature of products liability claims under Louisiana and Mississippi law.

As explained above, both the LPLA and the MPLA provide the *exclusive* avenues through which a plaintiff may pursue a products liability claim. Although Plaintiffs here have asserted a number of causes of action with a variety of names and differing pleading requirements, the Court understands them all to be products liability-based claims. Indeed, each count is independently targeted at seeking recovery for damage caused by the alleged presence of defective Knauf-manufactured Chinese drywall in the affected properties. For example, Plaintiffs' negligence and negligence per se claims are premised on Defendant's alleged "failing to exercise reasonable care in the designing, manufacturing, exporting, importing, distributing, delivering, supplying, inspecting, marketing, selling, and/or installing this drywall," while their strict liability claims

9

identify specific design and manufacturing defects that render the product unreasonably dangerous for its intended use. R. Doc. 21334 ¶ 48, 55, 68, 69, 70. The warranty claims involve allegations that the drywall was defective because it was unfit for use as a building material, the nuisance claims arise from allegations that the defective drywall has "caused sulfide gas and/or other chemical leaching into Plaintiff's homes," the negligent discharge claims concern the "failure to warn about the corrosive and dangerous propensities of the drywall," and the unjust enrichment claims stem from the acceptance and retention of money related to the purchase of allegedly defective drywall. *Id.* at ¶ 82, 110. Even Count 10, concerning violations of the Louisiana Unfair Trade Practice Act, La R.S. 51:1401, *et seq.*, and the Mississippi Consumer Protection Act, Miss. Code Ann. § 75-24-1, *et seq.*, falls within the scope of the LPLA and the MPLA to the extent that the alleged violations involve Defendants' "acts and omissions as well as their failure to use reasonable care in this matter as alleged in this complaint." R. Doc. 21334. The Court concludes Count 10 is merely a re-packaging of Plaintiffs' product liability claims targeting the exact same injuries.[2] Accordingly, Plaintiffs claims must be cabined to, and analyzed under the frameworks set forth in the LPLA and the MPLA.

---

[2] In so finding, the Court is persuaded by the reasoning of other federal district courts in Louisiana and Mississippi who have held that allegations of violations of the Louisiana Unfair Trade Practices Act ("LUTPA") and the Mississippi Consumer Protection Act are precluded by the LPLA and the MPLA, respectively. *See Bladen v. C.B. Fleet Holding Co.*, 487 F. Supp. 2d 759, 766 (W.D. La. 2007) (making an *Erie* guess and holding that the LPLA prevents a plaintiff from maintaining an action under LUTPA because the legislature, in passing the LPLA sixteen years after LUTPA, "unquestionably enacted the ... statutory declaration of exclusive liability in the LPLA and made no exception for the LUTPA," even though the LPLA made express exemptions and references to other areas of Louisiana law, such as redhibition); *Pitre v. Yamaha Motor Co.*, 51 F. Supp. 3d 644, 662 (E.D. La. 2014) (adopting the *Bladen* court's reasoning and dismissing LUTPA claims that "restate[d] their redhibition and negligence allegations" made elsewhere in the complaint); *Hall v. Smith & Nephew, Inc.*, No. 5:19-CV-13-DCB-MTP, 2020 WL 3452621, at *1 (S.D. Miss. May 29, 2020) (granting summary judgment on plaintiff's Mississippi Consumer Protection Act claims because the MPLA "provides the exclusive remedy for product liability claims").

The Louisiana Plaintiffs have pleaded a separate cause of action for violations of the LPLA and redhibition. As the LPLA provides the exclusive theory of liability in this situation, summary judgment is warranted with respect to the Louisiana Plaintiff's non-LPLA claims, although any redhibition claims remain viable to the extent Plaintiffs seek to recover for damage to the defective drywall itself or economic loss.

Similarly, the Mississippi Plaintiffs' claims are all based on damages purportedly caused by alleged defects in the Knauf-manufactured drywall; accordingly, the Court assumes that all of these claims shall be governed by the MPLA.[3] However, unlike the Louisiana Plaintiffs, the Mississippi Plaintiffs have not specifically pleaded a cause of action under the MPLA. Therefore, the Court will not require Plaintiffs to file an amended complaint setting forth a specific MPLA claim at this time, but will accordingly deny this motion without prejudice and give the transferor court the opportunity to determine whether an amended complaint is necessary.

## IV. CONCLUSION

Considering the foregoing.

**IT IS ORDERED** that the Defendants' Omnibus Motion for Summary Judgment, R. Doc. 22659, is **GRANTED IN PART** and **DENIED IN PART**. It is **GRANTED** to the extent it seeks summary judgment of all Louisiana Plaintiffs' non-LPLA or redhibition claims. It is **DENIED** to the extent it seeks summary judgement of all Mississippi Plaintiffs' non-MPLA claims, with the understanding that the motion may be re-urged before the transferor court.

---

[3] Of course, such claims would not be subsumed under the MPLA if they related to damage caused not by the allegedly defective product. *See Elliott*, 181 So. 3d at 269 ("If the plaintiffs in this case had alleged negligence claims against the manufacturer and seller that were unrelated to the odorant's alleged defects... then the MPLA would not have applied and common-law principles would have controlled."). No such allegations have been made here, however, as Plaintiffs' claims all involve damages stemming from the allegedly defective drywall.

11

New Orleans, Louisiana this 3rd day of August, 2020.

                                                                        _____
                                                                           Eldon E. Fallon
                                                             United States District Judge