UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | * * * * * * * | CIVIL ACTION<br><br>MDL NO. 2047<br><br>SECTION L (5) |
| **THIS DOCUMENT RELATES TO:**<br>*Elizabeth Bennett, et al. v. Gebr. Knauf Verwaltungsgesellschaft, KG, et al.*, No. 14-2722 | * * * | |

## ORDER & REASONS

Pending before the Court is Defendants' Motion for Partial Summary Judgment on Claims Asserted by Edward Laremore, R. Doc. 22684. Plaintiff has filed an opposition, R. Doc. 22794, and Defendants have filed a reply, R. Doc. 22837. Having considered the applicable law and the parties' arguments, the Court now rules as follows.

I.  BACKGROUND

From 2004 through 2006, the housing boom in Florida and rebuilding efforts necessitated by Hurricanes Rita and Katrina led to a shortage of construction materials, including drywall. As a result, drywall manufactured in China was brought into the United States and used to construct and refurbish homes in coastal areas of the country, notably the Gulf Coast and East Coast. Sometime after the installation of the Chinese drywall, homeowners began to complain of emissions of foul-smelling gas, the corrosion and blackening of metal wiring, surfaces, and objects, and the breaking down of appliances and electrical devices in their homes. *See In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, 894 F. Supp. 2d 819, 829–30 (E.D. La. 2012), *aff'd*, 742 F.3d 576 (5th Cir. 2014). Many of these homeowners also began to complain of various physical afflictions believed to be caused by the Chinese drywall.

These homeowners then began to file suit in various state and federal courts against homebuilders, developers, installers, realtors, brokers, suppliers, importers, exporters, distributors, and manufacturers who were involved with the Chinese drywall. As a result, many homebuilders also filed suit seeking to recoup their damages. Because of the commonality of facts in the various cases, this litigation was designated as a multidistrict litigation. Pursuant to a Transfer Order from the United States Judicial Panel on Multidistrict Litigation on June 15, 2009, all federal cases involving Chinese drywall were consolidated for pretrial proceedings in MDL 09-2047 before this Court. Since that date, numerous cases have been consolidated, involving thousands of individual claims; over 20,000 documents have been entered into the record, millions of documents have been exchanged in discovery, depositions have been taken in the United States and in China, and over thirty Pretrial Orders have been issued; the Court has appointed steering committees and liaison counsel for plaintiffs, homebuilders, insurers, installers, and manufacturers, and it has presided over monthly status conferences, hearings, and several bellwether trials.

The Chinese drywall at issue was largely manufactured by two groups of defendants: (1) the Knauf Entities and (2) the Taishan Entities. The litigation has focused upon these two entities and their downstream associates and has proceeded on strikingly different tracks for the claims against each group.

### A. The Knauf Defendants

The Knauf Entities are German-based, international manufacturers of building products, including drywall, whose Chinese subsidiary, Knauf Plasterboard (Tianjin) Co., Ltd. ("KPT"), advertised and sold its Chinese drywall in the United States. The Knauf Entities are named defendants in numerous cases consolidated with the MDL litigation and litigation in state courts.

The Knauf Entities first entered their appearance in the MDL litigation on July 2, 2009. Thereafter, the Court presided over a bellwether trial in *Hernandez v. Knauf Gips KG*, Case No. 09-6050, involving a homeowner's claims against KPT for defective drywall. The Court found in favor of the plaintiff family in *Hernandez*, issued a detailed Findings of Fact and Conclusions of Law, and entered a Judgment in the amount of $164,049.64, including remediation damages in the amount of $136,940.46—which represented a remediation cost of $81.13 per square foot based on the footprint square footage of the house.

Subsequently, the Knauf Entities agreed to institute a pilot remediation program utilizing the remediation protocol formulated by the Court from the evidence in *Hernandez*. The Knauf pilot remediation program is now completed and has remediated more than 2,200 homes containing KPT Chinese drywall using the same general protocol. At the Court's urging, the parties began working together to monetize this program and make it available to a broader class of plaintiffs.

On December 20, 2011, the Knauf Entities and the PSC entered into a global, class Settlement Agreement ("Knauf Settlement Agreement"), which was designed to resolve all Knauf-related, Chinese drywall claims. In addition to the Knauf Settlement Agreement and after a jury trial in a bellwether case, numerous defendants in the chain-of-commerce with the Knauf Entities have entered into class settlement agreements, the effect of which settles almost all of the Knauf Entities' chain-of-commerce litigation. The total amount of the Knauf Settlement is approximately $1.1 billion. Thereafter, additional claims were filed against Knauf and others.

### B. The Bennett Matter

The instant matter is a purported class action filed on November 13, 2014 by Elizabeth Bennett in the Northern District of Alabama. [1] Ms. Bennet raised claims on her own behalf and on the behalf of a nationwide class of similarly situated homeowners who allegedly suffered damages due to the presence of defective Chinese drywall in their homes. The Plaintiffs raised claims against the Knauf Entities for negligence, negligence per se, strict liability, breach of express and/or implied warranty, redhibition, violations of the Louisiana Products Liability Act, private nuisance, negligent discharge of a corrosive substance, unjust enrichment, violations of consumer protection laws, and equitable and injunctive relief and medical monitoring with respect to the manufacture of allegedly defective Chinese drywall. In January 2015, the Judicial Panel on Multidistrict Litigation transferred the case to the Eastern District of Louisiana and consolidated it with the *In re Chinese Manufactured Drywall Liability Litigation*, MLD 09-2047, currently pending before this Court.

On October 31, 2019, the Court granted leave for Plaintiffs to add several new Plaintiffs to the action. R. Doc. 22357. The case now involves 130 affected properties. On that date, the Court also extended many of the Case Management Order's deadlines. R. Doc. 22357. With discovery well underway, the Knauf Defendants have begun to file dispositive motions targeting the claims of several individual plaintiffs.

---

[1] On January 22, 2020, the Court granted Defendant's Motion to Deny Class Certification, finding that the predominance requirement of Rule 23(b)(3) was not satisfied. R. Docs. 22524, 22528. Specifically, the Court noted that the variety in the individual claims, which included personal injury and property damage claims, theories of liability, applicable state laws and defenses, and damage calculations precluded the finding of predominance necessary to warrant class certification.

4

## II. PENDING MOTION

Defendants seek partial summary judgment of any loss of use/enjoyment claims asserted by Edward Laremore. R. Doc. 22684. Laremore's claims arise from the alleged presence of defective Chinese drywall in a property located at 7018 Pilgrim Court, Labelle, Florida. Defendants argue summary judgment is warranted with respect to Laremore's loss of use/enjoyment claims because he "does not occupy, and has never occupied to Property; instead he rents it out for income" and asked the tenant to move out in 2017 due to pending sale. R. Doc. 22684-1 at 6. Defendants further argue Laremore has provided no evidence to support his loss of use and loss of enjoyment claim. *Id*.

Laremore opposes the motion. R. Doc. 22794. Laremore contends summary judgment on his loss of use and loss of enjoyment claim is inappropriate because there is a genuine question of material fact with respect to what damages Laremore is entitled to, and that this question is best resolved by the trier of fact. Laremore suggest his claims are viable despite not living in the affected property, because "Florida's laws do not narrow the group of plaintiffs as Defendants suggest." *Id*. at 10. Laremore further explains that the presence of Chinese drywall in his home "severely limit[ed] his ability to sell or rent the property," and has caused "significant consternation." *Id*.

## III. LAW & ANALYSIS

### A. Legal Standard – Motion for Summary Judgment

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.

5

1994). When assessing whether a dispute as to any material fact exists, the Court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008).

Under Federal Rule of Civil Procedure 56(c), the moving party bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 322. When the moving party has met its Rule 56(c) burden, "[t]he non-movant cannot avoid summary judgment . . . by merely making 'conclusory allegations' or 'unsubstantiated assertions.'" *Calbillo v. Cavender Oldsmobile, Inc.*, 288 F.3d 721, 725 (5th Cir. 2002) (quoting *Little*, 37 F.3d at 1075). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986). All reasonable inferences are drawn in favor of the nonmoving party, but a party cannot defeat summary judgment with conclusory allegations or unsubstantiated assertions. *Little*, 37 F.3d at 1075. A court ultimately must be satisfied that "a reasonable jury could not return a verdict for the nonmoving party." *Delta*, 530 F.3d at 399.

### B. Discussion

Under Florida law, damages for loss of use are only available "when an owner suffers a complete deprivation of his property." *AT & T Corp. v. Lanzo Const. Co., Fla.*, 74 F. Supp. 2d 1223, 1225 (S.D. Fla. 1999). Although certain Florida courts have declined to allow loss of use damages where plaintiffs "continued to reside in the home" during the period in which their home was seriously damaged, *Schryburt v. Olesen*, 475 So. 2d 715, 717 (Fla. 2d DCA 1985), others have

6

indicated that a complete deprivation may occur when there is an "occurrence which renders one unsafe and insecure in the use and enjoyment of his property," *McCreary v. Fla. Residential Prop. & Cas. Joint Underwriting Ass'n*, 758 So. 2d 692, 695 (Fla. Dist. Ct. App. 1999). In general, "physical discomfort in the use of property, like insecurity and unsafety in the use of property, raises the specter of loss of use" that entitles plaintiffs to have "any ambiguity about whether the physical comfort caused by [the defect] was severe enough to cause loss of use resolved in their favor." *Mid-Continent Cas. Co. v. Adams Homes of Nw. Fla. Inc.*, 725 F. App'x 777, 781 (11th Cir. 2018).

Summary judgment on Laremore's loss of use and loss of enjoyment claims is not appropriate at this time. It is undisputed that the affected property was maintained as a rental property that Laremore rarely visited. R. Doc. 22684-3 at 5. It is also undisputed that he asked his tenant to vacate the premises due to a pending sale. *Id*. at 6. Deposition excerpts attached to Defendants' motion suggests that this sale fell through for financial reasons, and a second cash-offer fell through "when there was a rotten-egg smell." *Id*. It does not appear as though Laremore has been able to sell or rent the property since the discovery of Chinese drywall. Indeed, Laremore argues that the presence of Chinese drywall "severely limits his ability to sell or rent the property" and causes "significant consternation" regarding "potential harmful side effects that [the drywall] might cause to any inhabitant." R. Doc. 22794. Whether his inability to sell, rent, or occupy the property himself constitutes a "complete deprivation" of the property is a question best answered by the transferor court upon more discovery or by the fact finder if questions of fact persist.

The Court recognizes that the evidence provided to support these claims may be insufficient to prevail at trial, especially in light of Defendant's argument that Laremore has provided no evidence to support this claim besides the simple statement that he believes "$300,000

7

in loss of use damages is appropriate and consistent with past verdicts in the Chinese drywall litigation." R. Doc. 22837 at 2. Notably, Laremore indicated during his depositions that he has not actually attempted to rent the property since the second sale fell through. R. Doc. 22684-3 at 6. Nevertheless, Plaintiff has pointed to a genuine question of material fact sufficient to at least narrowly avoid summary judgment. In so finding, the Court is motivated by judicial efficiency and the desire to avoid piecemeal remands where possible. Accordingly, whether Laremore has a claim for loss of use and enjoyment based on his inability to rent, occupy, or otherwise use the property, and the damages stemming from that loss, if any, is a question best resolved upon remand. To the extent Defendants contend the evidence is insufficient to support this claim, they may raise this argument with the transferor court at a pretrial conference or by Rule 50 motion.

## IV.   CONCLUSION

Based on the foregoing,

**IT IS ORDERED** that Defendant's Motion for Partial Summary Judgment on Claims Asserted by Edward Laremore, R. Doc. 22684, is **DENIED**.

New Orleans, Louisiana this 3rd day of August, 2020.

_____
Eldon E. Fallon
United States District Judge