UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | * <br> * <br> *    CIVIL ACTION <br> * <br> *    MDL NO. 2047 <br> * <br> *    SECTION L (5) <br> * |
| THIS DOCUMENT RELATES TO: <br> *Elizabeth Bennett, et al. v. Gebr. Knauf Verwaltungsgesellschaft, KG, et al.*, No. 14-2722 | * <br> * <br> * |

**ORDER & REASONS**

Pending before the Court is Defendants' Motion for Summary Judgment on Claims Asserted by Byron and Fern Robbins and Alternative Motion for Adverse Presumption and to Strike Pleadings, R. Doc. 22686. Plaintiffs oppose the motion, R. Doc. 22795, and Defendants have filed a reply, R. Doc. 22844. Sur-replies have been filed by both parties. R. Docs. 22889; 22895. Having considered the applicable law and the parties' arguments, the Court now rules as follows.

    I.      **BACKGROUND**

From 2004 through 2006, the housing boom in Florida and rebuilding efforts necessitated by Hurricanes Rita and Katrina led to a shortage of construction materials, including drywall. As a result, drywall manufactured in China was brought into the United States and used to construct and refurbish homes in coastal areas of the country, notably the Gulf Coast and East Coast. Sometime after the installation of the Chinese drywall, homeowners began to complain of emissions of foul-smelling gas, the corrosion and blackening of metal wiring, surfaces, and objects, and the breaking down of appliances and electrical devices in their homes. *See In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, 894 F. Supp. 2d 819, 829–30 (E.D. La. 2012), *aff'd*,

742 F.3d 576 (5th Cir. 2014). Many of these homeowners also began to complain of various physical afflictions believed to be caused by the Chinese drywall.

These homeowners then began to file suit in various state and federal courts against homebuilders, developers, installers, realtors, brokers, suppliers, importers, exporters, distributors, and manufacturers who were involved with the Chinese drywall. As a result, many homebuilders also filed suit seeking to recoup their damages. Because of the commonality of facts in the various cases, this litigation was designated as a multidistrict litigation. Pursuant to a Transfer Order from the United States Judicial Panel on Multidistrict Litigation on June 15, 2009, all federal cases involving Chinese drywall were consolidated for pretrial proceedings in MDL 09-2047 before this Court. Since that date, numerous cases have been consolidated, involving thousands of individual claims; over 20,000 documents have been entered into the record, millions of documents have been exchanged in discovery, depositions have been taken in the United States and in China, and over thirty Pretrial Orders have been issued; the Court has appointed steering committees and liaison counsel for plaintiffs, homebuilders, insurers, installers, and manufacturers, and it has presided over monthly status conferences, hearings, and several bellwether trials.

The Chinese drywall at issue was largely manufactured by two groups of defendants: (1) the Knauf Entities and (2) the Taishan Entities. The litigation has focused upon these two entities and their downstream associates and has proceeded on strikingly different tracks for the claims against each group.

### A. The Knauf Defendants

The Knauf Entities are German-based, international manufacturers of building products, including drywall, whose Chinese subsidiary, Knauf Plasterboard (Tianjin) Co., Ltd. ("KPT"),

2

advertised and sold its Chinese drywall in the United States. The Knauf Entities are named defendants in numerous cases consolidated with the MDL litigation and litigation in state courts.

The Knauf Entities first entered their appearance in the MDL litigation on July 2, 2009. Thereafter, the Court presided over a bellwether trial in *Hernandez v. Knauf Gips KG*, Case No. 09-6050, involving a homeowner's claims against KPT for defective drywall. The Court found in favor of the plaintiff family in *Hernandez*, issued a detailed Findings of Fact and Conclusions of Law, and entered a Judgment in the amount of $164,049.64, including remediation damages in the amount of $136,940.46—which represented a remediation cost of $81.13 per square foot based on the footprint square footage of the house.

Subsequently, the Knauf Entities agreed to institute a pilot remediation program utilizing the remediation protocol formulated by the Court from the evidence in *Hernandez*. The Knauf pilot remediation program is now completed and has remediated more than 2,200 homes containing KPT Chinese drywall using the same general protocol. At the Court's urging, the parties began working together to monetize this program and make it available to a broader class of plaintiffs.

On December 20, 2011, the Knauf Entities and the PSC entered into a global, class Settlement Agreement ("Knauf Settlement Agreement"), which was designed to resolve all Knauf-related, Chinese drywall claims. In addition to the Knauf Settlement Agreement and after a jury trial in a bellwether case, numerous defendants in the chain-of-commerce with the Knauf Entities have entered into class settlement agreements, the effect of which settles almost all of the Knauf Entities' chain-of-commerce litigation. The total amount of the Knauf Settlement is approximately $1.1 billion. Thereafter, additional claims were filed against Knauf and others.

### B. The Bennett Class Action

The instant matter is a purported class action filed on November 13, 2014 by Elizabeth Bennett in the Northern District of Alabama. [1] Ms. Bennet raised claims on her own behalf and on the behalf of a nationwide class of similarly situated homeowners who allegedly suffered damages due to the presence of defective Chinese drywall in their homes. The Plaintiffs raised claims against the Knauf Entities for negligence, negligence per se, strict liability, breach of express and/or implied warranty, redhibition, violations of the Louisiana Products Liability Act, private nuisance, negligent discharge of a corrosive substance, unjust enrichment, violations of consumer protection laws, and equitable and injunctive relief and medical monitoring with respect to the manufacture of allegedly defective Chinese drywall. In January 2015, the Judicial Panel on Multidistrict Litigation transferred the case to the Eastern District of Louisiana and consolidated it with the *In re Chinese Manufactured Drywall Liability Litigation*, MLD 09-2047, currently pending before this Court.

On October 31, 2019, the Court granted leave for Plaintiffs to add several new Plaintiffs to the action. R. Doc. 22357. The case now involves 130 affected properties. On that date, the Court also extended many of the Case Management Order's deadlines. R. Doc. 22357. With discovery well underway, the Knauf Defendants have begun to file dispositive motions targeting the claims of several individual plaintiffs.

---

[1] On January 22, 2020, the Court granted Defendant's Motion to Deny Class Certification, finding that the predominance requirement of Rule 23(b)(3) was not satisfied. R. Docs. 22524, 22528. Specifically, the Court noted that the variety in the individual claims, which included personal injury and property damage claims, theories of liability, applicable state laws and defenses, and damage calculations precluded the finding of predominance necessary to warrant class certification.

4

## II. PENDING MOTION

The Robbinses' claims arise from the alleged presence of Chinese drywall in a property located at 421 Chelsea Place Avenue, Ormond, Louisiana. R. Doc. 22686-1 at 3. Defendants seek summary judgment of claims asserted by Byron and Fern Robins on the grounds that they specifically assumed the risk that their home contained Chinese drywall at the time of purchase. *Id*. at 6. According to Defendants, a pre-purchase inspection of the property revealed "discolorization of copper and plumbing fittings in the house," which an inspector indicated might be due to Chinese drywall. *Id*. at 4. Defendants allegedly requested a copy of the inspection report, but it was never provided. *Id*. Mrs. Robins testified that the inspection led to "sleepless nights" caused by stress from not knowing whether to purchase the home. *Id*. Although Mrs. Robins explained that they purchased the home after receiving a "lab report stating there was no Chinese drywall in the home," a copy of this report was requested by Defendant but never produced. *Id*. Alternatively, Defendants argue they are entitled to either: (1) an adverse inference "that the pre-purchase home inspections report and lab report," which were never disclosed during discovery despites requests, "would have been unfavorable to them," or (2) "an order striking the Robbinses' claims against them." *Id*. at 7, 8.

Plaintiffs oppose the motion. R. Doc. 22795. Plaintiffs argue they did not appreciate the "identifiable risk" of Chinese drywall contamination because, after a pre-purchase inspection revealed the possibility of contamination, Plaintiffs sent drywall samples to a lab for testing and the results were negative. *Id*. at 8. Accordingly, Plaintiffs contend summary judgment is not warranted with respect to assumption of the risk. Additionally, Plaintiffs admit that the lab report in question has been discarded, but argue the question of whether an adverse inference is appropriate is a question for the transferor court. *Id*. at 9. Plaintiffs also re-aver the duty to warn,

5

Consumer Product Safety Commission ("CPSC"), and estoppel arguments it has recently raised in opposition to a number of other dispositive motions.

On May 12, 2020, Plaintiffs moved for leave to file additional exhibits in support of their opposition, seeking to attach four documents: (1) the pre-purchase home inspection; (2) the lab result at issue; (3) a Comprehensive Rider to the Residential Contract for Sale and Purchase of the Property; and (4) an email from a realtor regarding the seller's representations about the property. R. Doc. 22820. The same day, Defendants moved to strike the motion, arguing that introduction of these documents would amount to "trial by ambush" and be unfairly prejudicial as Defendants had not had the opportunity to depose Plaintiffs about the documents. R. Doc. 22824. On May 22, 2020, the Court denied Defendants' motion to strike but ordered the parties to arrange a second deposition to discuss the newly-produced evidence. R. Doc. 22856.

Following the depositions, Defendants filed a supplemental memorandum in support of summary judgment. R. Doc. 22889. Defendants contend the new evidence supports their position, because the lab report upon which Plaintiffs relied, only analyzed one piece of drywall and by its own terms "ma[de] absolutely no representation as to the presence or absence of problem drywall in the structures from which these samples may have been collected." *Id.* at 4 (emphasis omitted). Defendants further note the single drywall sample was from the kitchen, which is not where corrosion was observed by the property inspector. *Id.*

Plaintiffs filed a supplemental opposition, taking the position that they did not assume the specific risk of Chinese drywall, because in purchasing the home, they relied on the seller's denial that the home contained Chinese drywall and the lab report indicating that the sample submitted was non-reactive. R. Doc. 22895 at 2. Plaintiffs suggest this decision was reasonable because the inspection report indicated that corrosion could be caused by a number of different sources. *Id.*

6

### III. LAW & ANALYSIS

#### A. Legal Standard – Motion for Summary Judgment

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). When assessing whether a dispute as to any material fact exists, the Court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008).

Under Federal Rule of Civil Procedure 56(c), the moving party bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 322. When the moving party has met its Rule 56(c) burden, "[t]he non-movant cannot avoid summary judgment . . . by merely making 'conclusory allegations' or 'unsubstantiated assertions.'" *Calbillo v. Cavender Oldsmobile, Inc.*, 288 F.3d 721, 725 (5th Cir. 2002) (quoting *Little*, 37 F.3d at 1075). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986). All reasonable inferences are drawn in favor of the nonmoving party, but a party cannot defeat summary judgment with conclusory allegations or unsubstantiated assertions. *Little*, 37 F.3d at 1075. A court ultimately must be satisfied that "a reasonable jury could not return a verdict for the nonmoving party." *Delta*, 530 F.3d at 399.

B. Discussion

As the requested documents have been produced and Plaintiffs deposed with respect to these documents, the Court will consider only whether summary judgment is warranted. In other words, the adverse inference issue is moot.

The Court has already considered and ruled on many dispositive motions involving allegations of assumption of the risk. R. Docs. 22586; 22165. In these rulings, the Court has been cognizant of its role as a transferee court and has striven to rule conservatively, reserving even small factual discrepancies to be resolved by the transferor court, either through a re-urged dispositive motion, at a pretrial conference, by Rule 50 motion, or by the jury. In keeping with the law of the case doctrine, the Court emphasizes its desire to maintain consistency with these prior rulings. The law of the case doctrine instructs courts to "show deference to decisions already made in the case they are presiding over," but does not "prevent a district court from reconsidering prior rulings." *Stoffels ex rel. SBC Tel. Concession Plan v. SBC Commc'ns, Inc.*, 677 F.3d 720, 727 (5th Cir. 2012) (quoting *Zarnow v. City of Wichita Falls, Tex.*, 614 F.3d 161, 171 (5th Cir. 2010)).

Under Florida law, the "affirmative defense of express assumption of the risk may totally bar recovery if the injured party actually consented to a known risk." *Kendrick v. Ed's Beach Serv., Inc.*, 577 So. 2d 936, 937 (Fla. 1991). The defense is viable when the plaintiff had "full knowledge and appreciation of the danger and risk inherent in that kind of activity." *Id*. Whether a plaintiff "'actually consented' to confront certain dangers" is a question for the jury. *Kuehner v. Green*, 436 So. 2d 78, 80 (Fla. 1983). In answering that question, the jury must determine "whether the plaintiff *subjectively* appreciated the risk giving rise to the injury," considering "what the plaintiff really expected" in following a particular course of conduct. *Id.* (citing *Henry v. Britt*, 220 So.2d 917 (Fla. 4th DCA), *cert. denied*, 229 So. 2d 867 (Fla. 1969)). "If it is found that the plaintiff

8

recognized the risk and proceeded to participate in the face of such danger the defendant can properly raise the defense of express assumption of risk." *Id*. If a plaintiff did not subjectively appreciate the instant risk, the jury must consider whether he reasonably should have done so. "If it is found that a reasonable man would not have anticipated this risk, the 'unsuspecting plaintiff' cannot be said to have consented to the danger and he therefore should be allowed to recover in full." *Id*. The principal of comparative negligence, rather than assumption of the risk, applies when a plaintiff should have recognized a particular risk but failed to do so. *Id*. at 80.

In keeping with these principles, the Court has routinely denied summary judgment on the basis of assumption of the risk in the absence of clear evidence that the plaintiff subjectively appreciated the specific risk that the property contained Chinese drywall. R. Docs. 226568; 22615. Defendant maintains, however, that "the Robbinses are different." R. Doc. 22889. The Court agrees with this statement. Rather than merely having general awareness of the presence of Chinese drywall in homes through out the Gulf Coast, as many Plaintiffs subject to recent dispositive motions in this matter have had, the Robbinses were told that the property may contain Chinese drywall and arranged a lab inspection of a drywall sample as a result. Although the lab results were negative for corrosive drywall, the test involved a single sample that did not originate in an area of the home were corrosion was observed.

Nevertheless, the Court is not convinced that summary judgment is warranted at this time. Although the Robbinses were warned about the potential presence of Chinese drywall in the property, they took at least some affirmative steps to investigate whether the problem actually existed. Only upon receiving a lab report that they apparently interpreted as an indication that the property was free of corrosive drywall did they purchase the property. Plaintiffs also apparently relied on the seller's representation that "the builder is very confident that Chinese drywall was

9

never used in any of their homes." R. Doc. 22820-4 at 1. Although the Court is highly skeptical of the reasonableness of Plaintiffs decision, particular in light of the fact that the lab report clearly and expressly made "absolutely no representation as to the presence of absence of problem drywall in the structures from which these samples may have been collected," the Court will maintain consistency with its prior rulings and let a jury consider the reasonableness of this decision. In denying summary judgment on this basis, the Court is cognizant of its role as a transferee court and aims to limits its entanglements in even minor factual disputes. Although the evidence in support of Plaintiffs' position is slight, the Court concludes that a question of fact might persist after more fact-specific discovery, to the extent the transferor court, who will be in a better position to scrutinize the particular facts at issue here, orders it.

## IV. CONCLUSION

Considering the foregoing,

**IT IS ORDERED** that Defendants' Motion for Summary Judgment on Claims Asserted by Byron and Fern Robbins and Alternative Motion for Adverse Presumption and to Strike Pleadings, R. Doc. 22686, is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion for Leave to File Additional Exhibits in Support of Opposition to Summary Judgment, R. Doc. 22820, is **GRANTED**.

New Orleans, Louisiana this 3rd day of August, 2020.

_____
Eldon E. Fallon
United States District Judge