UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE:  CHINESE-MANUFACTURED DRYWALL | * | |
| PRODUCTS LIABILITY LITIGATION | * | |
| | * | CIVIL ACTION |
| | * | |
| | * | MDL NO. 2047 |
| | * | |
| | * | SECTION L (5) |
| THIS DOCUMENT RELATES TO: | * | |
| *Elizabeth Bennett, et al. v. Gebr. Knauf* | * | |
| *Verwaltungsgesellschaft, KG, et al.*, No. 14-2722 | * | |

## ORDER & REASONS

Pending before the Court are Defendants' Motions for Summary Judgment on Claims Asserted by Kurt and Suzanne Tolliver, R. Doc. 22447, and Joshua Kelley and Terry Hamilton, R. Doc. 22523. Plaintiffs oppose both motions, R. Doc. 22484; 22577 and Defendants have filed replies, R. Doc. 22520; 22647. As the motions present similar issues, the Court will address them collectively. Having considered the applicable law and the parties' arguments, the Court now rules as follows.

## I.      BACKGROUND

From 2004 through 2006, the housing boom in Florida and rebuilding efforts necessitated by Hurricanes Rita and Katrina led to a shortage of construction materials, including drywall. As a result, drywall manufactured in China was brought into the United States and used to construct and refurbish homes in coastal areas of the country, notably the Gulf Coast and East Coast. Sometime after the installation of the Chinese drywall, homeowners began to complain of emissions of foul-smelling gas, the corrosion and blackening of metal wiring, surfaces, and objects, and the breaking down of appliances and electrical devices in their homes. *See In re Chinese-*

*Manufactured Drywall Prods. Liab. Litig.*, 894 F. Supp. 2d 819, 829–30 (E.D. La. 2012), *aff'd*, 742 F.3d 576 (5th Cir. 2014). Many of these homeowners also began to complain of various physical afflictions believed to be caused by the Chinese drywall.

These homeowners then began to file suit in various state and federal courts against homebuilders, developers, installers, realtors, brokers, suppliers, importers, exporters, distributors, and manufacturers who were involved with the Chinese drywall. As a result, many homebuilders also filed suit seeking to recoup their damages. Because of the commonality of facts in the various cases, this litigation was designated as a multidistrict litigation. Pursuant to a Transfer Order from the United States Judicial Panel on Multidistrict Litigation on June 15, 2009, all federal cases involving Chinese drywall were consolidated for pretrial proceedings in MDL 09-2047 before this Court. Since that date, numerous cases have been consolidated, involving thousands of individual claims; over 20,000 documents have been entered into the record, millions of documents have been exchanged in discovery, depositions have been taken in the United States and in China, and over thirty Pretrial Orders have been issued; the Court has appointed steering committees and liaison counsel for plaintiffs, homebuilders, insurers, installers, and manufacturers, and it has presided over monthly status conferences, hearings, and several bellwether trials.

The Chinese drywall at issue was largely manufactured by two groups of defendants: (1) the Knauf Entities and (2) the Taishan Entities. The litigation has focused upon these two entities and their downstream associates and has proceeded on strikingly different tracks for the claims against each group.

## A. The Knauf Defendants

The Knauf Entities are German-based, international manufacturers of building products, including drywall, whose Chinese subsidiary, Knauf Plasterboard (Tianjin) Co., Ltd. ("KPT"),

advertised and sold its Chinese drywall in the United States.  The Knauf Entities are named defendants in numerous cases consolidated with the MDL litigation and litigation in state courts.

The Knauf Entities first entered their appearance in the MDL litigation on July 2, 2009. Thereafter, the Court presided over a bellwether trial in *Hernandez v. Knauf Gips KG*, Case No. 09-6050, involving a homeowner's claims against KPT for defective drywall.  The Court found in favor of the plaintiff family in *Hernandez*, issued a detailed Findings of Fact and Conclusions of Law, and entered a Judgment in the amount of $164,049.64, including remediation damages in the amount of $136,940.46—which represented a remediation cost of $81.13 per square foot based on the footprint square footage of the house.

Subsequently, the Knauf Entities agreed to institute a pilot remediation program utilizing the remediation protocol formulated by the Court from the evidence in *Hernandez*. The Knauf pilot remediation program is now completed and has remediated more than 2,200 homes containing KPT Chinese drywall using the same general protocol.  At the Court's urging, the parties began working together to monetize this program and make it available to a broader class of plaintiffs.

On December 20, 2011, the Knauf Entities and the PSC entered into a global, class Settlement Agreement ("Knauf Settlement Agreement"), which was designed to resolve all Knauf-related, Chinese drywall claims.  In addition to the Knauf Settlement Agreement and after a jury trial in a bellwether case, numerous defendants in the chain-of-commerce with the Knauf Entities have entered into class settlement agreements, the effect of which settles almost all of the Knauf Entities' chain-of-commerce litigation.  The total amount of the Knauf Settlement is approximately $1.1 billion.  Thereafter, additional claims were filed against Knauf and others.

### B.  The Bennett Matter

The instant matter is a purported class action filed on November 13, 2014 by Elizabeth Bennett in the Northern District of Alabama. [1] Ms. Bennet raised claims on her own behalf and on the behalf of a nationwide class of similarly situated homeowners who allegedly suffered damages due to the presence of defective Chinese drywall in their homes. The Plaintiffs raised claims against the Knauf Entities for negligence, negligence per se, strict liability, breach of express and/or implied warranty, redhibition, violations of the Louisiana Products Liability Act, private nuisance, negligent discharge of a corrosive substance, unjust enrichment, violations of consumer protection laws, and equitable and injunctive relief and medical monitoring with respect to the manufacture of allegedly defective Chinese drywall. In January 2015, the Judicial Panel on Multidistrict Litigation transferred the case to the Eastern District of Louisiana and consolidated it with the *In re Chinese Manufactured Drywall Liability Litigation*, MLD 09-2047, currently pending before this Court.

On October 31, 2019, the Court granted leave for Plaintiffs to add several new Plaintiffs to the action. R. Doc. 22357. The case now involves 130 affected properties. On that date, the Court also extended many of the Case Management Order's deadlines. R. Doc. 22357. With discovery well underway, the Knauf Defendants have begun to file dispositive motions targeting the claims of several individual plaintiffs.

---

[1] On January 22, 2020, the Court granted Defendant's Motion to Deny Class Certification, finding that the predominance requirement of Rule 23(b)(3) was not satisfied. R. Docs. 22524, 22528. Specifically, the Court noted that the variety in the individual claims, which included personal injury and property damage claims, theories of liability, applicable state laws and defenses, and different damage calculations precluded the finding of predominance necessary to warrant class certification.

4

## II.    PENDING MOTION

Kurt and Suzanne Tolliver's claim arise from the alleged presence of defective Chinese drywall in a property located at 4531 SW Darwin Boulevard, Port St. Lucie, Florida. Defendants argue the Tollivers' claims are barred because claims associated with their property have already been litigated, settled, and released by their predecessor-in-title, who participated in the Knauf Settlement Agreement. Further, Defendants argue the Tollivers were specifically aware of the presence of Chinese drywall in the property and accordingly assumed the risk when they purchased the property as-is. Lastly, Defendants argue the Tollivers have failed to provide any evidence to support their loss of use and personal property claims. Plaintiffs oppose the motion. R. Doc. 22484.

Joshua Kelley and Earnest Hamilton's claims arise from the alleged presence of Chinese drywall in a property located at 160 Blairs Circle, Pell City, Alabama. R. Doc. 22523 at 3. Defendants argue that Kelley and Hamilton's claims are barred because claims for the property were previously filed in the Knauf Settlement and the Inex Settlement. R. Doc. 22523-1 at 5. Further, Defendants argue the claims are barred by the statute of limitations because Kelley and Hamilton failed to file their claims within two years of discovering the defect as Alabama law requires. R. Doc. 22523-1 at 6-7. Plaintiffs oppose the motion. R. Doc. 22577.

The Court heard oral argument on these motions and issued Orders and Reasons addressing them on February 14, 2020 and March 6, 2020. R. Docs. 22586; 22615. With respect to the Tollivers, the Court denied summary judgment on the basis of assumption of the risk and failure to produce evidence. R. Doc. 22586. Similarly, with respect to Kelley and Hamilton, the Court denied summary judgment on the basis of the statute of limitations. R. Doc. 22615. However, in both cases, the Court required more information to rule on Defendant's claim preclusion arguments, and accordingly ordered Defendants to provide evidence, in the form of an executed

5

release, affidavit, or other document, demonstrating that the respective affected properties had been subject to claims made in the Knauf Settlement. R. Docs. 22586 at 30; 22615 at 42.

On February 29, 2020, Defendants submitted an affidavit prepared by Jake Woody on behalf of Brown Greer, the Claims Administrator for the Knauf Settlement addressing prior claims made with respect to the Tollivers' affected property. R. Doc. 22607. On March 19, 2020, Defendants submitted a supplemental memo and a supplemental declaration from Mr. Woody addressing prior claims made with respect to Kelley and Hamilton's affected property. R. Doc. 22647. Having received the requested supplemental material, the Court now considers whether the Tollivers' and Kelley and Hamilton's claims are barred due to the operation of the Knauf Settlement's release provisions.

## III.   DISCUSSION

Defendants argue that the instant claims are barred because the affected properties owned by the Kurt and Suzanne Tolliver, and Joshua Kelley and Terry Hamilton, were subject to claims made under the Knauf Settlement, which required Participating Class Members to release all claims against the instant Defendants and various other parties.

Section 5 of the Knauf Settlement Agreement governs releases. In particular, Section 5.1 provides that a "released claim" is "any and all claims of any kind and nature whatsoever of a Class Member . . . arising out of . . . Chinese Drywall . . . including, but not limited to, any and all claims that a Class Member . . . or anyone claiming by or through [a Class Member], has, may have, or may have had." Section 5.2 further provides, "as of the Effective Date of the Settlement, each Class Member and any person or entity claiming by, through, and/or on behalf of a Class Member, hereby fully, finally, and forever releases, remises, waives, surrenders, foregoes, gives

6

up, abandons, cancels, acquits and forever discharges any and all Released Claims." R. Doc. 16407-3 at 57.

The Court approved the Settlement Agreement, including its release provisions, on February 7, 2013. R. Doc. 16750. Specifically, the Court noted that "[a]ny and all Participating Class Members in the Knauf Settlement are enjoined and forever barred from commencing and/or maintaining any action, legal or otherwise, against the Knauf Defendants and Other Releasees arising out of, or otherwise relating to, KPT Chinese Drywall." *Id*. ¶ 49. Further, the Order "bars the assertion by any entity or person against the Knauf Defendants and Other Releasees of any contribution, indemnification, subrogation, or other claims arising out of the Participating Class Members' claims concerning (i) the KPT Chinese drywall claims against the Knauf Defendant and Other Releasee or (ii) this Settlement." *Id*. ¶ 50.

Having reviewed the applicable provisions of the Knauf Settlement and the Order and Judgment Granting Final Approval to same, the Court turns to the instant motions. Dismissal of the Tollivers' claim is warranted in light of the additional evidence submitted. Mr. Woody's affidavit represents that claims were made for the Tollivers' property, located at 4531 SW Darwin Blvd, Port St. Lucie, Florida, on September 26, 2013, by Andrew Williams, the owner of the property at that time. R. Doc. 22607 ¶ 2. This claim was made to both the Knauf Settlement and the GBI Settlement. *Id*. BrownGreer "confirmed that the Claims were part of the Knauf" Settlement. *Id*. ¶ 4. Although disbursements were made pursuant to the Banner Settlement and Global Builder Settlement, BrownGreer denied the Knauf Settlement claim for failure to provide supporting documents and other required paperwork to support an Option 1, 2, or 3 Remediation Claim. *Id*. ¶ 2, 9. Accordingly, no funds from the Knauf Settlement were ever distributed. *Id*. ¶ 11.

7

Mr. Williams' submission of claims to the Knauf Settlement and BrownGreer's affirmation that his claims were eligible under the Knauf Settlement indicate that the Tollivers' claims are barred. Specifically, the Court's February 7, 2013 Order bars the assertion of claims "arising out of the Participating Class Members' claims concerning . . . the KPT Chinese drywall" by "any entity or other person." As purchasers of Mr. Williams's property, the Tollivers are accordingly barred from maintaining this lawsuit, which involves the same claims that Mr. Williams, a Participating Class Member, raised against Defendants by participating in the Knauf Settlement.

Dismissal of Joshua Kelley and Earnest Hamilton's claim is also warranted in light of the additional evidence submitted. Defendants have submitted a lengthy declaration prepared by Mr. Woody explaining this history of the claim for this property with respect to the Knauf Settlement. Mr. Woody explains that Joshua Kelley submitted an online registration form to the BrownGreer portal with regards to a property located at 160 Blair Circle, Pell City, Alabama, on May 17, 2013, and timely filed a Chinese Drywall Settlement Program Miscellaneous Claim Form on September 26, 2013. R. Doc. 22671-1 ¶ 3, 7. According to BrownGreer's records, Mr. Kelley's was the only claim ever made for this property. *Id.* ¶ 4. The declaration also reveals that Mr. Kelley's claim "involved significant activity on the part of BrownGreer." *Id.* ¶ 6. On multiple occasions in 2015, Brown Greer apparently notified Mr. Kelley of deficiencies in his claim, and those deficiencies were partially cured. *Id.* ¶ 10–20. Between July 1, 2015 and November 4, 2015, Brown Greer sent Mr. Kelley five additional deficiency notices, and ultimately denied his claim on November 4, 2015 for failure to cure the outstanding issues. *Id.* The denial notice explained that the claim was denied because Mr. Kelley failed to prove settlement eligibility. *Id.* at 31.

Although the Court is hesitant to allow Mr. Kelley unlimited bites at the apple, there exists a genuine question of material fact with respect to whether Mr. Kelley's claims are barred by

8

previous participation in the Knauf Settlement. Although it is clear that Mr. Kelley filed settlement claims, his claim was denied because Mr. Kelley never demonstrated that he was eligible to recover benefits from the Knauf Settlement. *Id.* at 31. Notably, unlike the Tolliver's predecessor-in-interest's claims, which BrownGreer confirmed were part of the Knauf Settlement, R. Doc. 22607 ¶ 4, Mr. Kelley's settlement claim was denied for failure to provide any documentation proving that he had "filed a lawsuit related to Chinese Drywall on or before December 9, 2011," as required to be eligible to receive benefits under the Knauf Settlement. The Court is not aware that Mr. Kelley ever filed claims in the underlying litigation before submitting a settlement claim, and accordingly is unable to conclude that Mr. Kelley ever had a right to participate in the Knauf Settlement in a manner that would prevent him from pursuing the instant litigation.

Nevertheless, under Alabama law, claims for "injury to the person or rights of another not arising from contract" are typically subject to a two-year statute of limitations. Ala. Code § 6-2-38(l). The limitations period is triggered by discovery of the damage, regardless of whether the plaintiff can identify the cause of the damage. *See Franklin v. Mitchell*, 87 So. 3d 573, 578-79 (Ala. Civ. App. 2011). Mr. Kelley submitted an online registration form on May 17, 2013, and filed a settlement claim on September 26, 2013. Clearly, Mr. Kelley was aware of the presence of Chinese drywall in his property at the time he decided to seek settlement benefits. He filed claims in the *Bennett* matter on January 30, 2016. R. Doc. 20020-2 at 31. Accordingly, the instant claims are untimely, as they were filed more than two years after the damage was discovered. To the extent Mr. Kelley and Mr. Hamilton aver they discovered the damage only in December 2015, the Court finds it completely inconceivable that an individual does not appreciate the damage done to him at the time he seeks to participate in a Settlement to receive benefits for that same harm.

## IV.    CONCLUSION

Based on the foregoing,

**IT IS ORDERED** that Defendants' Motion for Summary Judgment on Claims Asserted by Kurt and Suzanne Tolliver, R. Doc. 22447, is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendants' Motion for Summary Judgment on Claims Asserted by Joshua Kelley and Terry Hamilton, R. Doc. 22523, is **GRANTED**.

New Orleans, Louisiana this 5th day of August, 2020.

_____

Eldon E. Fallon
United States District Judge