**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| IN RE:  CHINESE-MANUFACTURED DRYWALL | * | |
| PRODUCTS LIABILITY LITIGATION | * | |
| | * | **CIVIL ACTION** |
| | * | |
| | * | **MDL NO. 2047** |
| | * | |
| | * | **SECTION L (5)** |
| THIS DOCUMENT RELATES TO: | * | |
| *Elizabeth Bennett, et al. v. Gebr. Knauf* | * | |
| *Verwaltungsgesellschaft, KG, et al.*, No. 14-2722 | * | |

**ORDER & REASONS**

Pending before the Court is Defendants' Motion for Partial Summary Judgment on Claims Asserted by Jackelyn Aquirre o.b.o. Home and Land, Inc., Hoan Bao and Hahn Tran, Steve Binns, Bholonath Dhume and Prabha Dhume, Santiago Guzman/Skyline Glass LLC, Michael A. Chedester and Becky Chedester, Tobi Butcher and Ken Butcher, Jason Hallmark and Katie Hallmark, Leslie Porciuncula and Olivia Porciuncula, Dave Baldwin and Karen Baldwin, Karina Martinez, and Edward Ball and Margot Gravel, R. Doc. 22690. Plaintiff has filed an opposition, R. Doc. 22796, and Defendants have filed a reply, R. Doc. 22829. Having considered the applicable law and the parties' arguments, the Court now rules as follows.

**I.    BACKGROUND**

From 2004 through 2006, the housing boom in Florida and rebuilding efforts necessitated by Hurricanes Rita and Katrina led to a shortage of construction materials, including drywall.  As a result, drywall manufactured in China was brought into the United States and used to construct and refurbish homes in coastal areas of the country, notably the Gulf Coast and East Coast. Sometime after the installation of the Chinese drywall, homeowners began to complain of emissions of foul-smelling gas, the corrosion and blackening of metal wiring, surfaces, and objects,

and the breaking down of appliances and electrical devices in their homes. *See In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, 894 F. Supp. 2d 819, 829–30 (E.D. La. 2012), *aff'd*, 742 F.3d 576 (5th Cir. 2014). Many of these homeowners also began to complain of various physical afflictions believed to be caused by the Chinese drywall.

These homeowners then began to file suit in various state and federal courts against homebuilders, developers, installers, realtors, brokers, suppliers, importers, exporters, distributors, and manufacturers who were involved with the Chinese drywall. As a result, many homebuilders also filed suit seeking to recoup their damages. Because of the commonality of facts in the various cases, this litigation was designated as a multidistrict litigation. Pursuant to a Transfer Order from the United States Judicial Panel on Multidistrict Litigation on June 15, 2009, all federal cases involving Chinese drywall were consolidated for pretrial proceedings in MDL 09-2047 before this Court. Since that date, numerous cases have been consolidated, involving thousands of individual claims; over 20,000 documents have been entered into the record, millions of documents have been exchanged in discovery, depositions have been taken in the United States and in China, and over thirty Pretrial Orders have been issued; the Court has appointed steering committees and liaison counsel for plaintiffs, homebuilders, insurers, installers, and manufacturers, and it has presided over monthly status conferences, hearings, and several bellwether trials.

The Chinese drywall at issue was largely manufactured by two groups of defendants: (1) the Knauf Entities and (2) the Taishan Entities. The litigation has focused upon these two entities and their downstream associates and has proceeded on strikingly different tracks for the claims against each group.

**A. The Knauf Defendants**

The Knauf Entities are German-based, international manufacturers of building products, including drywall, whose Chinese subsidiary, Knauf Plasterboard (Tianjin) Co., Ltd. ("KPT"), advertised and sold its Chinese drywall in the United States. The Knauf Entities are named defendants in numerous cases consolidated with the MDL litigation and litigation in state courts.

The Knauf Entities first entered their appearance in the MDL litigation on July 2, 2009. Thereafter, the Court presided over a bellwether trial in *Hernandez v. Knauf Gips KG*, Case No. 09-6050, involving a homeowner's claims against KPT for defective drywall. The Court found in favor of the plaintiff family in *Hernandez*, issued a detailed Findings of Fact and Conclusions of Law, and entered a Judgment in the amount of $164,049.64, including remediation damages in the amount of $136,940.46—which represented a remediation cost of $81.13 per square foot based on the footprint square footage of the house.

Subsequently, the Knauf Entities agreed to institute a pilot remediation program utilizing the remediation protocol formulated by the Court from the evidence in *Hernandez*. The Knauf pilot remediation program is now completed and has remediated more than 2,200 homes containing KPT Chinese drywall using the same general protocol. At the Court's urging, the parties began working together to monetize this program and make it available to a broader class of plaintiffs.

On December 20, 2011, the Knauf Entities and the PSC entered into a global, class Settlement Agreement ("Knauf Settlement Agreement"), which was designed to resolve all Knauf-related, Chinese drywall claims. In addition to the Knauf Settlement Agreement and after a jury trial in a bellwether case, numerous defendants in the chain-of-commerce with the Knauf Entities have entered into class settlement agreements, the effect of which settles almost all of the Knauf

Entities' chain-of-commerce litigation.  The total amount of the Knauf Settlement is approximately $1.1 billion.  Thereafter, additional claims were filed against Knauf and others.

### B.  The Bennett Class Action

The instant matter is a purported class action filed on November 13, 2014 by Elizabeth Bennett in the Northern District of Alabama. [1] Ms. Bennet raised claims on her own behalf and on the behalf of a nationwide class of similarly situated homeowners who allegedly suffered damages due to the presence of defective Chinese drywall in their homes. The Plaintiffs raised claims against the Knauf Entities for negligence, negligence per se, strict liability, breach of express and/or implied warranty, redhibition, violations of the Louisiana Products Liability Act, private nuisance, negligent discharge of a corrosive substance, unjust enrichment, violations of consumer protection laws, and equitable and injunctive relief and medical monitoring with respect to the manufacture of allegedly defective Chinese drywall. In January 2015, the Judicial Panel on Multidistrict Litigation transferred the case to the Eastern District of Louisiana and consolidated it with the *In re Chinese Manufactured Drywall Liability Litigation*, MLD 09-2047, currently pending before this Court.

On October 31, 2019, the Court granted leave for Plaintiffs to add several new Plaintiffs to the action. R. Doc. 22357. The case now involves 130 affected properties. On that date, the Court also extended many of the Case Management Order's deadlines. R. Doc. 22357. With discovery well underway, the Knauf Defendants have begun to file dispositive motions targeting the claims of several individual plaintiffs.

---

[1] On January 22, 2020, the Court granted Defendant's Motion to Deny Class Certification, finding that the predominance requirement of Rule 23(b)(3) was not satisfied. R. Docs. 22524, 22528. Specifically, the Court noted that the variety in the individual claims, which included personal injury and property damage claims, theories of liability, applicable state laws and defenses, and different damage calculations precluded the finding of predominance necessary to warrant class certification.

## II.     PENDING MOTION

Defendants' Motion for Partial Summary Judgment on Claims Asserted by Jackelyn Aquirre o.b.o. Home and Land, Inc., Hoan Bao and Hahn Tran, Steve Binns, Bholonath Dhume and Prabha Dhume, Santiago Guzman/Skyline Glass LLC, Michael A. Chedester and Becky Chedester, Tobi Butcher and Ken Butcher, Jason Hallmark and Katie Hallmark, Leslie Porciuncula and Olivia Porciuncula, Dave Baldwin and Karen Baldwin, Karina Martinez, and Edward Ball and Margot Gravel, on the grounds that these Plaintiffs are not entitled to recover damages for alternative living expenses and/or moving expenses because they "either never lives in the respective properties or moved out before they became aware that the properties contained Chinese drywall." R. Doc. 22690-1 at 2.

Plaintiffs collectively oppose the motion, maintaining that they each incurred moving expenses or alternative living expenses as a result of the presence of Chinese drywall in their homes. R. Doc. 22796. Specifically, Plaintiffs argue these claims are valid because they have "incurred the expenses of living in a different property while continuing to pay the monthly note on a property that cannot be sold and in many cases cannot be rented." *Id*. at 10. Plaintiffs contend that the "financial burden of carrying the cost of a second home" is relevant to their moving expenses and alternative living expenses claim and should be considered by a jury. *Id*.

In reply, Defendant characterize Plaintiffs' opposition as "unsupported conjecture," and argue that Plaintiffs have provided no evidence to indicate the existence of a genuine question of material fact. R. Doc. 22829 at 3. Although Defendants acknowledge that Plaintiffs may have incurred expenses after discovering the presence of Chinese drywall, Defendants argue such expenses constitute general damages, not alternative living expenses or moving expenses, as

Plaintiffs either moved out prior to the discovery of Chinese drywall or never lived in the affected properties. *Id.*

## III.   LAW & ANALYSIS

### A.  Legal Standard – Motion for Summary Judgment

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). When assessing whether a dispute as to any material fact exists, the Court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008).

Under Federal Rule of Civil Procedure 56(c), the moving party bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 322. When the moving party has met its Rule 56(c) burden, "[t]he non-movant cannot avoid summary judgment . . . by merely making 'conclusory allegations' or 'unsubstantiated assertions.'" *Calbillo v. Cavender Oldsmobile, Inc.*, 288 F.3d 721, 725 (5th Cir. 2002) (quoting *Little*, 37 F.3d at 1075). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986). All reasonable inferences are drawn in favor of the nonmoving party, but a party cannot defeat summary judgment with conclusory allegations or unsubstantiated assertions. *Little*, 37 F.3d at 1075. A court ultimately

6

must be satisfied that "a reasonable jury could not return a verdict for the nonmoving party." *Delta*, 530 F.3d at 399.

## B. Discussion

At the outset, the Court stresses the lengths to which it has gone to maintain consistency in its rulings. With respect to this batch of dispositive motions, the Court has attempted to rule conservatively in the effort to promote judicial efficiency and limit the number of piecemeal claims upon remand.

In keeping with these goals, summary judgment has been granted only when the facts presented undisputedly indicate the absence of a particular claim. With respect to alternative living expenses and moving expenses, the Court has regularly denied summary judgment wherever there was a plausible connection between the cost incurred and the presence of Chinese drywall. In contrast, summary judgment has been granted only where the facts indicate that a plaintiff intended to move or did in fact move from the affected property prior to the formal discovery of Chinese drywall and prior to experiencing any symptoms thereof. For example, the Court granted summary judgment with respect to Plaintiff Nathan Junius' claims after finding that he had decided to move out of the affected property before discovering the Chinese drywall. R. Doc. 22615 at 34–35. Notably, Junius testified that "any costs associated with moving out" of the property were "unrelated to the Chinese drywall," and he explained that he "didn't even know that [he] had Chinese drywall in the home" until after he moved out and tried to sell the property. *Id*. He specifically testified that he never experienced any Chinese-drywall related problems while living in the home. The Court concluded that Junius could not recover for moving expenses because they had been incurred independently from the Chinese drywall. *Id*. at 35. Considering the foregoing, the Court considers each claimant's moving expenses/alternative living expenses claim in turn.

7

Aquirre claims $6,000 in moving expenses related to a property located at 3310 NE 3 DR, Homestead, Florida. R. Doc. 22690-1 at 4. Defendants argue summary judgment is warranted with respect to her moving expenses claim because she never lived in the affected property, testified that she never intended to live there, and admitted that the $6,000 claim was actually attributable to renovations performed prior to the discovery of Chinese drywall in the property. *Id*.

The Court agrees. Notably, Aquirre testified that she purchased the property for rental purposes without intending to ever live there. R. Doc. 22690-3 at 3. Additionally, when asked specifically about the $6,000 moving expenses claim, she explained that this cost was associated with "repair expenses. More than moving expenses." *Id*. at 5. When asked to clarify, she confirmed that the sum "refers to the renovation," including cleaning and painting. *Id*. at 5–6. The Court recognizes that these expenses may be attributable to Chinese drywall despite being incurred before the formal discovery of Chinese drywall in December 2017. Specifically, Aquirre explained, "I have to paint [the house] because it was bad and smelly. We were trying to get rid of the smell and clean, obviously." *Id*. The fact that these repairs were allegedly necessitated by the presence of Chinese drywall, however, has no bearing on Aquirre's moving expenses claim. The deposition testimony clearly reflects that Aquirre did not move from the property because of Chinese drywall; in fact, she never lived on the property and never intended to. Accordingly, summary judgment is warranted with respect to Aquirre's moving expenses claim with the understanding that the cost incurred painting and cleaning the house may be recoverable under a different measure of damages.

Bao and Tran claim $35,300 in moving expenses and alternative living expenses related to a property located at 1008 Washington Court, Moody, Alabama. R. Doc. 22690-1 at 4. Defendants argue summary judgment is warranted with respect to these claims because they never lived in the

8

property and "therefore did not and could not incur any expenses for vacating the property due to Chinese drywall." *Id*.

The Court disagrees. Unlike Aquirre, Boa and Tran purchased the property with the express intention of moving in "right away." R. Doc. 22690-11 at 3. During a deposition, Bao explained that these plans were foiled by the discovery of Chinese drywall in the property. *Id*. The Plaintiff Fact Sheet confirms this statement. R. Doc. 22690-10 at 4. When asked to identify the harm caused by Chinese drywall, Bao explained "We were unable to live in the property due to the defective Chinese sheetrock, so we self-remediated the home at our expense while we postponed our move." *Id*. The foregoing testimony indicates that Bao and Tran have conceivably sustained alternative living expenses as they have been forced to secure alternative living arrangements due to their inability to occupy the affected property as originally intended. At this juncture, the Court takes no position on the amount of recoverable damages for this claim but notes that Bao and Tran's decision to remain in their current location after self-remediating the property and "move down there" only after their son finishes high school may bear on the jury's award. *Id*. at 3.

Binns claims $10,680 in moving expenses and alternative living expenses related to a property located at 1717 SW Devera Place, Port St. Lucie, Florida. R. Doc. 22690-1 at 4–5. Defendants argue summary judgment is warranted with respect to these claims because Binns moved out of the property in 2017, prior to discovering the presence of Chinese drywall on January 31, 2018. *Id*. at 5.

The Court disagrees. Binns' Plaintiff Fact Sheet indicates that he moved out of the property in January 2017. R. Doc. 22690-8 at 5. In his deposition, he indicated that he "moved out to give [himself] a break from the smell." R. Doc. 22690-9 at 4. Although Binns admits the move occurred before he discovered the cause of the problem, the move was clearly motivated by symptoms of

9

Chinese drywall. Accordingly, considering the evidence in the light most favorable to the non-moving party, it is conceivable for a jury to determine that Binns incurred these moving expenses and alternative living expenses due to the presence of Chinese drywall, regardless of his knowledge of the specific cause.

The Dhumes claim $74,105 in moving expenses and alternative living expenses related to a property located at 150 Spencer Avenue, New Orleans, Louisiana. R. Doc. 22690-1 at 5. Defendants argue summary judgment is warranted with respect to these claims because they listed the property for sale in May 2017 and only learned of the Chinese drywall in June 2017. *Id.*

The Court agrees. During her deposition, Bholanath Dhume was asked why the Dhumes decided to list the property for sale in 2017. She responded, "We wanted to move out of the house because the house was too big for us, really. Because my kids had moved out and we only two lived in the house, and this was a much bigger house than what we needed." R. Doc. 22690-17 at 2. At the time they listed the property for sale, the Dhumes had almost completed building a smaller home in which they currently reside. *Id.* When asked specifically about claimed moving expenses, she explained that although they "were going to move anyway because [they] were going to sell the house," they "might have moved in a hurry because of that." *Id.* at 4. Plaintiffs have failed articulate what, if any, those additional costs may be. Accordingly, summary judgment is warranted.

Guzman claims $29,500 in alternative living expenses related to a property located at 10769 NW 81 Lane, Doral, Florida. Defendants argue summary judgment is warranted with respect to this claim because Guzman purchased the property for investment purposes and never lived there. R. Doc. 22690-1 at 5. Defendants argue that Guzman's claim stems from his inability to move into the property, not from "having to vacate the premises due to Chinese drywall." *Id.*

The Court disagrees. On the Plaintiff Fact Sheet Guzman explained, "Once defective drywall was found, I haven't been able to live in the house and I'm paying $2,000 monthly since the purchase." R. Doc. 22690-18 at 4. During his deposition, Guzman confirmed that the property was purchased for investment purposes. However, when asked whether he intended on moving in, he said, "If I want to move in, I move in. If I can rent it, I rent it. It depends. Doesn't really matter." R. Doc. 22690-19 at 2. He further stressed, "We couldn't move into the property. The problem is moving into the property. . . . So that gave us a bunch of added costs that I had to pay for, because I was unable to use the house." *Id.* at 5. He characterizes these costs as concerning "[t]he storage, the moving, and the utilities." R. Doc. 22690-19 at 4. Considering the light in the evidence most favorable to Plaintiffs, a jury could conceivably find that Guzman purchased the property with the intention of moving in, and that those plans were foiled by the discover of Chinese drywall, causing him to incur certain additional costs.

The Chedesters claim $18,276 in alternative living expenses related to a property located at 10955 West Brighton Drive, Chunchula, Alabama. R. Doc. 22690-1 at 6. Defendants argue summary judgment is warranted with respect to this claim because the Chedesters moved out of the property in 2011 and learned of the Chinese drywall on January 22, 2016. *Id.*

The Court agrees. The Chedesters moved out of the property in 2011, almost five years before discovering that the property contained defective drywall, and the property was thereafter continuously rented until Chinese drywall was discovered on January 22, 2016. R. Doc. 22690-15 at 3. Notably, the Chedesters only seek alternative living expenses from January 22, 2016 onward, indicating that their move was not precipitated by the defective drywall. R. Doc. 22690-14 at 5. Further, there is no suggestion that the Chedesters intend to move back to the affected property

and were unable to do so. Although the Chedesters conceivably lost rental income as a result of the discovery, such a claim is independent from alternative living expenses.

The Butchers claim $70,249 in alternative living expenses related to a property located at 4020 Island Lakes Drive, Winter Haven, Florida. R. Doc. 22690-1 at 6. Defendants argue summary judgment is warranted with respect to this claim because the Butchers moved out of the property in March 2015 and discovered the presence of Chinese drywall in February 2016. *Id.*

The Court agrees. The deposition excerpts attached to Defendants' motion suggest that the Butchers moved out of the property in March 2015, but shed no light on the reasons for the move. R. Doc. 22690-13 at 2. The deposition excerpts provided focus almost exclusively on the Butchers' disposal of clothing and a mattress after the discovery of Chinese drywall in the property. The Court questions whether such damages are properly categorized as alternative living expenses or personal property damages. Ultimately, the deposition excerpts do not provide any indication of why the Butchers moved, and Plaintiffs have not sustained their summary judgment burden of pointing to any evidence that supports their position or otherwise reveals a genuine question of material fact.

The Hallmarks claim $27,500 in alternative living expenses related to a property located at 775 Ridgefield Way, Odenville, Alabama. R. Doc. 22690-1 at 6. Defendants argue summary judgment of this claim is warranted because the Hallmarks moved in July of 2014 and discovered the presence of Chinese drywall in February 2015. *Id.*

The Court disagrees. Although the Hallmarks claim they were "forced to leave the home and seek shelter with relatives" due to the discovery of Chinese drywall, R. Doc. 22690-20 at 4, Mrs. Hallmark testified during her deposition that the move was prompted by her husband's back injury, not the presence of Chinese drywall. R. Doc. 22690-21 at 4. Clearly, a genuine question of

material fact exists with respect to the reasons for the Hallmarks' move and the expenses allegedly incurred as a result.

The Porciunculas claim $20,653 in alternative living expenses related to a property located at 339 Wilton Avenue SW, Palm Bay, California. R. Doc. 22690-1 at 7. Defendants argue summary judgment with respect to this claim is warranted because Olivia Porciuncula testified that she never lived in the home and accordingly never had to find an alternative living arrangement due to the presence of Chinese drywall. *Id.*

The Court agrees. During her deposition, Olivia Porciuncula testified that she had never lived on the property and that she accordingly had not "had to find an alternative living arrangement due to the presence of Chinese drywall in the home." R. Doc. 22690-25 at 3–4. Further, unlike other Plaintiffs subject to this motion, such as Bao, who intended to move into the affected property immediately, there is no evidence that the Porciunculas ever intended to move in. Moreover, Olivia Porciunculas testified that she believed the $20,653 in claimed alternative living expenses was actually attributable to lost rents. *Id.* at 2. Accordingly, summary judgment on the alternative living expenses claim is warranted with the understanding that the Porciunculas may be able to recover lost rents under a different measure of damages.

The Baldwins claim $76,447.73 in alternative living expenses related to a property located at 909 High Ridge Drive, Friendswood, Texas. R. Doc. 22690-1 at 7. Defendants argue summary judgment of this claim is warranted because the Baldwins had already purchased a new home before discovering the presence of Chinese drywall in the property. *Id.* In Defendant's view, "[s]ince the Baldwins had already purchased their new home with no knowledge of Chinese drywall in their old home, their moving expenses are not attributable to the presence of Chinese drywall." *Id.* at 8.

The Court agrees. The deposition excerpts attached the Defendants' motion indicates that the Baldwins had decided to move out of their home before discovering the defective drywall. Like the Butchers, the Baldwins have not pointed to any evidence that supports their position or otherwise creates a genuine issue of material fact with respect to the reasons for their move. Accordingly, summary judgment is warranted on these claims.

Martinez claims $580 in moving expenses and $27,600 in alternative living expenses related to a property located at 23631 SW 12th Court, Homestead, Florida. R. Doc. 22690-1 at 7. Defendants argue summary judgment of this claim is warranted because Martinez testified that she was planning to move before the discovery of Chinese drywall in order to buy a bigger house with her fiancé and four dogs. *Id.*

The Court agrees. Martinez testified that she tried to sell the property in 2018 to buy a bigger home with her fiancé. R. Doc. 22690-23 at 2. She further indicates that she currently rents the property at below fair-market value. *Id.* Like the Dhumes, who moved because they wanted a smaller home, Martinez's reason for moving was apparently unrelated to Chinese drywall. Therefore these costs would have been incurred regardless of whether or not the defective drywall was found in the property. Accordingly, summary judgment is warranted on these claims with the understanding that Martinez may be able to recover for the diminished value of her home, loss of rental value, or other measures of damages related to her inability to sell or use the property as intended.

Ball and Gravel claim $5,000[2] in alternative living expenses related to a property located at 2464 Silver Palm Road, North Port, Florida. R. Doc. 22690-1 at 7. Defendants argue summary

---

[2] Defendants contend Ball and Gravel seek $50,000 in alternative living expenses. The Court's review of the Plaintiff Fact Sheet, however, indicates that they seek only $5,000. R. Doc. 22690-6 at 5.

judgment of this claim is warranted because Ball and Gravel moved out of the property in 2016 and discovered the presence of Chinese drywall in March 2017. *Id*. Further, Mr. Ball testified that they were not seeking alternative living expenses or moving expenses. *Id*.

The Court agrees. As an initial matter, the Plaintiff Fact Sheet reveals that Ball and Gravel vacated the property on September 30, 2016, but the deposition excerpts attached to Defendant's motion do not reveal why Ball and Gravel attempted to sell their home in 2017. R. Doc. 22690-7 at 3. Additionally, Ball was questioned about whether he claimed any alternative living expenses during his deposition, and he responded "no." *Id*. a 4. When questioned about why he claimed $5,000 in moving expenses on the Plaintiff Fact Sheet and asked to clarify whether he sought moving expenses, he said "I guess we can strike that item." *Id*. This statement is directly contradictory to the allegations made on the Plaintiff Fact Sheet. In light of Mr. Ball's deposition testimony specifically disclaiming any moving expenses or alternative living expenses, the Court is unwilling to construe the ambiguity as possible evidence that the move was somehow precipitated by Chinese drywall. Accordingly, Plaintiffs have failed to sustain their summary judgment burden of pointing to any evidence that supports their claim or otherwise creates a genuine question of material fact.

## IV.   CONCLUSION

Based on the foregoing,

**IT IS ORDERED** that Defendants' Motion for Partial Summary Judgment on Claims Asserted by Jackelyn Aquirre o.b.o. Home and Land, Inc., Hoan Bao and Hahn Tran, Steve Binns, Bholonath Dhume and Prabha Dhume, Santiago Guzman/Skyline Glass LLC, Michael A. Chedester and Becky Chedester, Tobi Butcher and Ken Butcher, Jason Hallmark and Katie Hallmark, Leslie Porciuncula and Olivia Porciuncula, Dave Baldwin and Karen Baldwin, Karina

15

Martinez, and Edward Ball and Margot Gravel, R. Doc. 22690, is **GRANTED IN PART** and **DENIED IN PART**. Specifically, it is **GRANTED** with respect to alternative living expenses and moving expenses claims submitted by Aquirre, the Dhumes, the Chedesters, the Butchers, the Porciunculas, the Baldwins, Martinez, and Ball and Gravel. It is **DENIED** with respect to alternative living expenses and moving expenses claims submitted by Boa and Tran, Binns, Guzman, and the Hallmarks.

New Orleans, Louisiana this 5th day of August, 2020.

Eldon E. Fallon
United States District Judge