UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL NO. 2047<br>SECTION: L |
| THIS DOCUMENT RELATES TO THE FOLLOWING ACTION ORIGINALLY STYLED:<br><br>*Stephen and Diane Brooke, individually, et al. v. The State-Owned Assets Supervision and Administration Commission of the State Council, et al.,*<br>2:15-cv-004127-EEF-MBN | JUDGE ELDON FALLON<br><br>MAG. JUDGE NORTH |

THROUGH THIS AMENDED COMPLAINT, THE FOLLOWING PARTIES REMAIN IN THIS ACTION:

Barbara Ann Alfonso; Bessie Barnett; Kerry Barre; Gwendolyn Kerr Bierria; Joseph Bourlet; Gregory Cross; Stephanie Fortenberry; Greater NOLA Homes, LLC; Howard Jones; and, Terrence Ross and Rhonda Ross,

          Plaintiffs,

v.

Beijing New Building Materials Group, Co., Ltd.; Beijing New Building Materials Public Limited Co.; China National Building Material Co., Ltd.; Taishan Gypsum Co., Ltd. f/k/a Shandong Taihe Dongxin Co., Ltd.; Tai'an Taishan Plasterboard Co., Ltd.; and, The State-Owned Assets Supervision and administration Commission of the State Council,

          Defendants.

## **[PROPOSED] AMENDED COMPLAINT**

Plaintiffs allege that the Defendants' defective drywall products have been found in their Louisiana homes.  Each Plaintiff individually named herein properly executed an exclusion form,

opting-out of a nationwide class action settlement with the Defendants named herein and have chosen to pursue their individual claims.  Pursuant to Fed.R.Civ.P.20, Plaintiffs have permissively joined as parties in this action against these Defendants because their claims arise from a common series of actions or occurrences.  The Defendants in this action are liable for damages incurred by Plaintiffs due to their role in the design, manufacture, importing, distributing, delivery, supply, marketing inspecting, installing, or sale of the defective drywall at issue in the litigation.

## JURISDICTION, VENUE, AND PARTIES

1.	This action is within the original jurisdiction of this Court by virtue of 28 U.S.C. §1332(a)(2) as the amount in controversy for each Plaintiff exceeds $75,000.00, exclusive of interest and costs.  Plaintiffs are owners of real property in Louisiana and all Defendants are foreign business entities; thus, complete diversity exists.

2.	This Court has supplemental jurisdiction over this matter under 28 U.S.C. §1367 as all Defendants are subject to the Louisiana Long-Arm Statute, LA R.S. 13:3201, for the tortious conduct described herein.

3.	Venue in this district satisfies the requirements of 28 U.S.C. § 1391(b) and (c) because all Plaintiffs reside in United States, most currently reside in the State of Louisiana within this jurisdiction and a substantial amount of the events and occurrences giving rise to the claim occurred in this district, or a substantial part of the property that is the subject of this action is situated in this district, while all Defendants are foreign business entities with no principal place of business or corporate headquarters located within Louisiana.

4. Plaintiff, Barbara Ann Alfonso, is a citizen of Louisiana and owns real property located at 2412 Edgar Drive, Violet, Louisiana 70092. Plaintiff is bringing claims against all defendants as set forth in the following paragraphs of this Complaint.

5. Plaintiff, Bessie Barnett, is a citizen of Louisiana and owns real property located at 11419 Morrison Road, New Orleans, Louisiana 70128. Plaintiff is bringing claims against all defendants as set forth in the following paragraphs of this Complaint.

6. Plaintiff, Kerry Barre, is a citizen of Louisiana and owns real property located at 11150 South Idlewood Court, New Orleans, Louisiana 70128. Plaintiff is bringing claims against all defendants as set forth in the following paragraphs of this Complaint.

7. Plaintiff, Gwendolyn Kerr Bierria, is a citizen of Louisiana and owns real property located at 5286 Warrington Drive, New Orleans, Louisiana 70122. Plaintiff is bringing claims against all defendants as set forth in the following paragraphs of this Complaint.

8. Plaintiff, Joseph Bourlet, is a citizen of Louisiana and owns real property located at 4501 Fairfield Street, Metairie, Louisiana 70006. Plaintiff is bringing claims against all defendants as set forth in the following paragraphs of this Complaint.

9. Plaintiff, Gregory Cross, is a citizen of Louisiana and owns real property located at 284 Vintage Drive, Covington, Louisiana 70433. Plaintiff is bringing claims against all defendants as set forth in the following paragraphs of this Complaint.

10. Plaintiff, Stephanie Fortenberry, is a citizen of Louisiana and owns real property located at 3012 Oak Drive, Violet, Louisiana 70092. Plaintiff is bringing claims against all defendants as set forth in the following paragraphs of this Complaint.

11. Plaintiff, Greater NOLA Homes, LLC, is a Louisiana limited liability company that owns real property located at 8287 Benjamin Street, Chalmette, Louisiana 70043. Plaintiff

is bringing claims against all defendants as set forth in the following paragraphs of this Complaint.

12.     Plaintiff, Howard Jones, is a citizen of Louisiana and owns real property located at 7911 Windward Court, New Orleans, Louisiana 70128.  Plaintiff is bringing claims against all defendants as set forth in the following paragraphs of this Complaint.

13.     Plaintiffs, Terrence Ross and Rhonda Ross, are citizens of Louisiana and own real property located at 316 Woodvine Avenue, Metairie, Louisiana 70005.  Plaintiffs are bringing claims against all defendants as set forth in the following paragraphs of this Complaint.

14.     Defendant, Taishan Gypsum Company, Ltd. f/k/a Shandong Taihe Dongxin Co., Ltd. is a foreign corporation doing business in several States, including but not limited to, Alabama, Florida, Georgia, Louisiana, Mississippi, North Carolina, South Carolina, Texas and Virginia.  Upon information and belief, Defendant, together with its affiliates and/or actual or apparent agents, manufactured, sold, distributed, marketed and placed within the stream of commerce gypsum drywall with the expectation that the drywall would be purchased by thousands of consumers, if not more, within various States, including the State of Louisiana. Upon information and belief, Defendant has continuously conducted business with suppliers and distributors within the United States which has resulted in defective drywall being systematically distributed and sold in the United States and installed structures throughout the United States. Based on information and belief, this defendant manufactured defective drywall and then sold, directly and indirectly, to certain suppliers within the United States.

15.     Defendant Tai'an Taishan Plasterboard Co., Ltd. f/k/a Shandong Taihe Dongxin Co., Ltd. (hereinafter "TTP") is a foreign corporation doing business in several States, including but not limited to, Alabama, Florida, Georgia, Louisiana, Mississippi, North Carolina, South

Carolina, Texas and Virginia.  Upon information and belief, Defendant, together with its affiliates and/or actual or apparent agents, manufactured, sold, distributed, marketed and placed within the stream of commerce gypsum drywall with the expectation that the drywall would be purchased by thousands of consumers, if not more, within various States, including the State of Louisiana. Upon information and belief, Defendant has continuously conducted business with suppliers and distributors within the United States which has resulted in defective drywall being systematically distributed and sold in the United States and installed structures throughout the United States.  Based on information and belief, this defendant manufactured defective drywall and then sold, directly and indirectly, to certain suppliers and distributors within the United States.

16. Defendant TTP is a wholly owned subsidiary of Defendant Taishan. Defendants TTP and Taishan are hereinafter collectively referred to as "Taishan".

17. Defendant Beijing New Building Material, Public Limited Co., ("BNBM") is a foreign corporation doing business in several States, including but not limited to, Alabama, California, Florida, Georgia, Louisiana, Mississippi, North Carolina, South Carolina, Tennessee, Texas, and Virginia. Upon information and belief, Defendant, together with its affiliates and/or actual or apparent agents, manufactured, sold, distributed, marketed and placed within the stream of commerce gypsum drywall with the expectation that the drywall would be purchased by thousands of consumers, if not more, within various States, including Louisiana.  Upon information and belief, Defendant has continuously and systematically distributed and sold drywall to numerous purchasers in the United States and their drywall is installed in numerous structures in the United States.  Defendant manufactured and sold, directly and indirectly, to certain suppliers in the United States.

18. Defendant, Beijing New Building Material (Group) Co., Ltd. ("BNBM Group") is a foreign corporation doing business in several States, including but not limited to, Alabama, California, Florida, Georgia, Louisiana, Mississippi, North Carolina, South Carolina, Tennessee, Texas, and Virginia. Upon information and belief, Defendant, together with its affiliates, subsidiaries and/or actual or apparent agents, manufactured, sold, distributed, marketed and placed within the stream of commerce gypsum drywall with the expectation that the drywall would be purchased by thousands of consumers, if not more, within various States, including Louisiana. Upon information and belief, Defendant, together with its affiliates, subsidiaries and/or actual or apparent agents, have continuously and systematically distributed and sold drywall to numerous purchasers in the United States and their drywall is installed in numerous structures in the United States. Defendant, together with its affiliates, subsidiaries and/or actual or apparent agents, manufactured and sold, directly and indirectly, to certain suppliers in the United States.

19. Defendant, China National Building Material Co., Ltd. ("CNBM') is a foreign corporation doing business in several States, including but not limited to, Alabama, California, Florida, Georgia, Louisiana, Mississippi, North Carolina, South Carolina, Tennessee, Texas, and Virginia. Upon information and belief, Defendant, together with its affiliates, subsidiaries and/or actual or apparent agents, manufactured, sold, distributed, marketed and placed within the stream of commerce gypsum drywall with the expectation that the drywall would be purchased by thousands of consumers, if not more, within various States, including Louisiana. Upon information and belief, Defendant together with its affiliates, subsidiaries and/or actual or apparent agents, has continuously and systematically distributed and sold drywall to numerous purchasers in the United States and their drywall is installed in numerous structures in the

United States. Defendant, together with its affiliates, subsidiaries and/or actual or apparent agents, manufactured and sold, directly and indirectly, to certain suppliers in the United States.

20. The State-Owned Assets Supervision and Administration Commission of the state Council ("SASAC") is a foreign corporation doing business in several States, including but not limited to, Alabama, Arizona, California, Florida, Georgia, Iowa, Louisiana, Michigan, Missouri, Mississippi, North Carolina, New Jersey, Ohio, South Carolina, Tennessee, Texas, Virginia, and Wisconsin. Upon information and belief, Defendant SASAC, together with its affiliates and/or actual or apparent agents, manufactured, sold, distributed, marketed and placed within the stream of commerce gypsum drywall with the expectation that the drywall would be purchased by thousands of consumers, if not more, within various States, including but not limited to Louisiana. Upon information and belief, Defendant has continuously and systematically distributed and sold drywall to numerous purchasers in the United States and their drywall is installed in numerous structures in the United States.

21. To the extent any of the foreign defendants are deemed to be foreign sovereign entities, including but not limited to Taishan, TTP, BNBM, BNBM Group, CNBM and SASC, Plaintiffs bring their claims against these entities pursuant to 28 U.S.C. 1605(a)(2), the commercial activity exception to the Foreign Sovereign Immunities Act, or alternatively under 1605(a)(5), the tortious act exception. Plaintiffs allege that the claims against the foreign defendants are based upon commercial activities carried on in the United States. The claims also seek monetary damages against a foreign state for damage to property occurring in the United States, caused by the tortious acts or omissions of that foreign state, or of any official or employee of that foreign state while acting within the scope of his office or employment.

**FACTS REGARDING THE DEFENDANTS**

22. Defendant SASAC supervises the State-owned assets of enterprises engaged in drywall production, including Taishan. Defendant SASAC oversees 150 large central state-owned assets and enterprises.

23. BNBM owns 65% of Taishan. Because of its controlling interests, SASAC controls all of the Taishan affiliates and subsidiaries, which have been found by the district court to be alter egos of one another and a single business enterprise.

24. BMBM consistently exerted control over Taishan and its subsidiaries when these entities were exporting defective drywall to the United States. For instance, one of BNBM's board members, Tongchun Jia, is the chairman of the board of directors and general manager of Taishan. Mr. Tongchun Jia occupies similar positions with most of Taishan's subsidiaries. Through Mr. Tongchun Jia's positon with Taishan and its subsidiaries, BNBM controls the actions and operations of these entities. Even where Tongchun Jia does not formally hold a position with a Taishan subsidiary, BNBM is able to exert its control over the subsidiary through Mr. Tongchun Jia's influence. For instance, the chairman of the board of TTP, Peng Shi Liang, was also an employee of Taishan. BNBM was thus able to control TTP since the chairman of its board reported directly to Tongchun Jia. Accordingly, since BNBM had direct control over Taishan and its subsidiaries, it should be held responsible for their sale of defective drywall.

25. At the outset of the MDL 2047, SASC in conjunction with its controlled subsidiaries, Taishan and BNBM, discussed and then implemented a deliberate strategy whereby Defendants would not respond to the litigation and would allow default judgments to be entered against them. Defendants have also shared lawyers and law firms. When Taishan finally responded to this litigation, it did so for the limited purpose of contesting personal jurisdiction.

When Taishan was unsuccessful in obtaining dismissal on these grounds and lost its appeal to the Fifth Circuit Court of Appeals, it withdrew from the litigation with the approval of its parent entities and was subsequently held in civil and criminal contempt on July 17, 2014. Following the issuance of this contempt order, Defendants ceased depositing funds in New York banks.

26. On April 21, 2017, this Court issued an Order and Reasons on Defendants' motions to dismiss pursuant to Fed.R.Civ.P. 12(b) (hereafter "Rule 12(b) Order"). *See* Rec.Doc.No. 20739. The Rule 12(b) Order correctly determined that:

   a. BNBM is the controlling shareholder of Taishan and that Taishan is an agent and alter ego of BNBM.

   b. BNBM is controlled by China National Building Materials Group Co. ("CNBM Group").

   c. BNBM has exercised a high degree of control over Taishan's operational management and its day-to-day operations.

   d. BNBM has had voting control over Taishan's board since 2005.

   e. BNBM controls Taishan's board and management team.

   f. BNBM audits Taishan and requires that Taishan submit weekly reports.

   g. BNBM must approve certain activities by Taishan including the building of factories and all matters concerning drywall production.

   h. BNBM controls Taishan's financial and strategic business decisions.

   i. Taishan must provide BNBM with a stake in all of its subsidiaries.

   j. BNBM and Taishan share officers, directors, and executives.

   k. Taishan and BNBM also share certain property.

   l. BNBM provides Taishan with loan guarantees.

    m.    CNBM Group is the controlling shareholder of CNBM and BNBM Group.

    n.    All the Defendants operate as a single-business enterprise.

27.    On October 13, 2015, CNBM publicly announced that BNBM will acquire 100% of Taishan's shares. BNBM indeed subsequently acquired 100% of Taishan's shares on October 27, 2016.

28.    During the period when Taishan and its subsidiaries were distributing defective drywall to the United States, these entities consistently misrepresented the drywall they were exporting complied with ISO and ASTM quality standards. For instance, Taishan's website boasted that it was exporting large quantities of drywall to the United States and that its drywall complied with ISO quality standards. The employees of Taishan and its subsidiaries also sent emails to potential customers boasting about their experience exporting large quantities of drywall to the United States. These employees also provided false assurances that the drywall they were exporting complied with ASTM quality standards.

## FACTS REGARDING DEFECTIVE DRYWALL

29.    Defendants' drywall is predominately composed of gypsum.

30.    In "defective drywall" (such as that designed, manufactured, exported, imported, distributed, delivered, supplied, inspected, installed, marketed, and/or sold by Defendants herein), sulfur compounds exit the drywall.

31.    The sulfur compounds, including Hydrogen Sulfide, Carbonyl Sulfide, and Carbon Disulfide, exit Defendants' drywall and cause rapid sulfidation and damage to personal property (such as the blackening and break down of air conditioning and refrigerator coils, faucets, utensils, electrical wiring, copper, electronic appliances and other metal surfaces and

property). These compounds are not only harmful to personal property but they are also smelly and irritating to humans and pets.

32. Although the drywall functions according to its intended purpose as a building component, it is unfit for this purpose due to the damaging side effects and/or because its use is so inconvenient that Plaintiffs would not have purchased their homes had the side effects been disclosed by Defendants.

33. As a direct and proximate result of Defendants' actions and omissions, Plaintiffs' structures and personal property have been exposed to Defendants' defective drywall and the harmful effects of the sulfur compounds that exit from Defendants' defective drywall.

34. Defendants tortiously manufactured, exported, imported, distributed, delivered, supplied, inspected, installed, marketed and/or sold the defective drywall, which was unfit for its intended purpose in that the drywall caused rapid sulfidation and damage to personal property in Plaintiffs' homes, residences or structures.

35. Defendants recklessly, wantonly, and/or negligently manufactured, exported, imported, distributed, delivered, supplied, inspected, installed, marketed and/or sold the defective drywall at issue in this litigation.

36. Defendants recklessly, wantonly and/or negligently implemented faulty procedures for purposes of formulating, preparing, testing, and otherwise ensuring the quality and/or character of the defective drywall at issue in this litigation.

37. As a direct and proximate result of Defendants' defective and unfit drywall and the harmful effects of the sulfur compounds that exit these products, Plaintiffs have suffered, and continue to suffer economic harm.

38. As a direct and proximate result of Defendants' defective drywall and the harmful effects of the sulfur compounds that exit these products, Plaintiffs have a need for injunctive relief in the form of repair and remediation of their home, rescission of contracts, and the ordering of emergency/corrective notice.

39. Defendants recklessly, wantonly, and/or negligently failed to implement procedures for safely formulating, preparing, testing, and otherwise ensuring that the drywall at issue in this litigation was safe for consumers.

40. After learning that their products being sold in the United States were defective, Defendants took no action required under federal law (see Consumer Product Safety Act, 15 U.S.C. § 2051, *et seq.*) to notify their importers, distributors, agents, or consumers of the harmful effects caused by their drywall.

41. After learning that their products being sold in the United States were defective, Defendants took no action to initiate a corrective action plan.

42. By failing to take action to notify potential victims or attempt to implement a corrective action plan for the damage their defective drywall products caused, Defendants directly violated the federal CPSA that specifically requires that when a manufacturer has reason to know its product does not meet safety standards, contains a defect, or creates and unreasonable risk of death or injury, it must inform the CPSC. (See 15 U.S.C. 2064(b)).

43. Plaintiffs' damages include, but are not limited to, cost of inspection; cost and expenses necessary to fully remediate their homes of defective drywall, cost of alternative living arrangements, economic hardship resulting in lower credit ratings leading to higher interest rates on loans and credit cards, lost value or devaluation of their homes and property; loss of use and enjoyment of their home and property, and/or damages associated with personal injuries.

44. As a direct and proximate result of Defendants' defective and unfit drywall and the harmful effects of the sulfur compounds that exit these products, the Plaintiffs have suffered, and continue to suffer damages. These damages include, but are not limited to, costs of inspection; costs and expenses necessary to remedy, replace and remove the defective drywall and other property that has been impacted; lost value or devaluation of their homes, residences or structures and property as a direct result of damage caused to the property and indirect damage resulting from perceived defects to the property, including stigma damages and loss of use and enjoyment of their home and property.

## COUNT I
## REDHIBITION

45. Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

46. The drywall manufactured, distributed and/or sold by Defendants was not reasonably fit for its ordinary and intended purpose.

47. Defendants are therefore liable to Louisiana Plaintiffs for all reasonable damages in accordance with La. Civ. Code art. 2524.

48. In addition, or in the alternative, the drywall manufactured, distributed and/or sold by Defendants contained redhibitory defects, because, at the time of delivery, the propensity to emit or off-gas sulfur compounds and/or other potentially harmful, irritating and/or corrosive substances renders the drywall so useless and/or inconvenient that it must be presumed that Plaintiffs would not have purchased the drywall had they known of the defect or defects.

49. In the alternative, the defects are redhibitory because, while not rendering the drywall totally useless, it did diminish the drywall's use and/or diminish the drywall's value to such an extent that it must be presumed that the buyer would have bought it, but for a lesser price.

50. Defendants are presumed to possess knowledge of the defects in the drywall manufactured by them.

51. In addition, it is believed and alleged that all Defendants knew of the defects in the drywall at the time the drywall was delivered and/or sold.

52. Defendants have had numerous opportunities to repair and/or replace the drywall and associated fixtures and/or building components and have failed to do so; in addition and/or in the alternative, such requests have been and/or would be futile; moreover, Defendants are deemed to be placed on notice when notice is provided to its agents or business partners; and, in addition or alternatively, Defendants had actual knowledge of the problems in the drywall and the need for replacement, remediation and/or repair as early as 2006.

53. Defendants are therefore liable to all Louisiana Plaintiffs for a return of the purchase price (with interest from the time it was paid), reimbursement of the reasonable expenses occasioned by the sale and those incurred for the preservation of the drywall and associated items, for all other damages, and for reasonable attorneys' fees, in accordance with La. Civ. Code art. 2545.

## COUNT II
## LOUISIANA PRODUCTS LIABILITY ACT

54. Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

55. In addition to any and all damages, attorneys' fees and other remedies made available to Louisiana Plaintiffs under the warranty of fitness and/or warranty against redhibitory defects, the Manufacturing Defendants are liable to Louisiana Plaintiffs under the Louisiana Products Liability Act, ("LPLA"), La. R.S. 9:2800.51 *et seq*.

56. The Manufacturing Defendants, upon information and belief, expressly warranted that "the gypsum boards manufactured and sold… are guaranteed to be free from defects in materials and workmanship."

57. The Manufacturing Defendants expressly warranted that "the gypsum boards were manufactured in accordance with ASTM C 1396 04 Standard."

58. Plaintiffs assert that the drywall marked "Crescent City Gypsum," "DUN," "Made In China Meet or Exceeds ASTM," "Made In China Meet or Exceed ASTM," "Made In China Meets or Exceed ASTM," or "Made In China Meets or Exceeds ASTM" imported beginning in 2005, did not comply with the ASTM C 1396 standard.

59. The drywall at issue is, in all cases, unreasonably dangerous by virtue of the unreasonable off-gassing and/or emission of sulfur compounds and/or other corrosives, toxins and/or irritants, which do not in any way contribute to or enhance the utility of the drywall, yet pose a risk to the wiring, plumbing, appliances, personal property, overall economic value of the property and financial security of the owner, and/or the health of the residents of the property.

60. At all times pertinent and material hereto, Defendants knew that their drywall was unreasonably dangerous and/or defective as set forth herein.

61. Defendants' drywall is unreasonably dangerous in composition or construction in that, at the time it left Defendants' control, it deviated in a material way from Defendant's own specification or performance standards.

62. In addition, and in the alternative, defendants' drywall is unreasonably dangerous in design, in that, at the time the drywall left Defendant's control, there existed an alternative design for the product that was capable of preventing Plaintiffs' damage, and the likelihood of causing the plaintiffs' damage and the gravity of that harm outweighed the burden (if any) on the

Defendant in adopting such alternative design and the adverse effect (if any) on the utility of the drywall.

63. In addition, or in the alternative, Defendants' drywall is unreasonably dangerous in that it fails to conform to an express warranty about the product which induced the use of the product and caused damage to Plaintiffs to the extent that the warranty was untrue.

64. In addition, or in the alternative, Defendants' drywall is unreasonably dangerous due to an inadequate warning, because at the time the drywall left Defendant's control, the drywall possessed a characteristic that might cause damage and yet Defendant failed to use reasonable care to provide an adequate warning of such characteristics and/or dangers to users and/or handlers of the drywall.

65. Defendants are therefore liable to Louisiana Plaintiffs for all damages reasonable in the premises.

## **DEMAND FOR JURY TRIAL**

Plaintiffs hereby demand a trial by jury as to all issues so triable as a matter of right.

## **PRAYER FOR RELIEF**

**WHEREFORE, PREMISES CONSIDERED,** Plaintiffs demand upon Defendants jointly and severally for:

a. Compensatory, statutory, and/or punitive damages as allowed by law;

b. Pre and post-judgment interest as allowed by law;

c. An award of attorney's fees as allowed by law;

d. An award of taxable costs; and

e. Any and all such further relief as this Court deems just and proper.

Dated: November 25, 2020.

Respectfully submitted:

/s/ *James V. Doyle, Jr.*

James V. Doyle, Jr.
DOYLE LAW FIRM, PC
2100 Southbridge Pkwy., Suite 650
Birmingham, AL 35209
Tele: 205-533-9500
Fax: 844-638-5812
jimmy@doylefirm.com

*Attorney for Plaintiffs Barbara Alfonso, Bessie Barnett, Kerry Barre, Gwendolyn Bierria, Joseph Bourlet, Gregory Cross, Stephanie Fortenberry, Greater NOLA Homes, LLC, and Howard Jones*

/s/ Kevin O'Bryon
Kevin O'Bryon (LSBA#10151)
O'BRYON & SCHNABEL, PLC
935 Gravier Street, Suite 900
New Orleans, LA 70112
Tele: (504) 799-4200
Fax: (504) 799-4211
kob@obryonlaw.com

*Attorney for Plaintiffs Terrence Ross and Rhonda Ross*