E-SERVICE
65635428
May 13 2020
04:21PM
File & ServeXpress

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | * * * * * * * | **CIVIL ACTION** |
| | | **MDL NO. 2047** |
| | | **SECTION L (2)** |
| **THIS DOCUMENT RELATES TO:** | * | |
| *Elizabeth Bennett, et al. v. Gebr. Knauf* | * | |
| *Verwaltungsgesellschaft, KG, et al.*, No. 14-2722 | * | |

## ORDER & REASONS

Pending before the Court are Defendants' Motions for Summary Judgment on Claims Asserted by Carl and Lynn Russell and Ronald and Patricia Stanfa, R. Doc. 22613, Michael and Alice Ginart, R. Doc. 22628, Toshonia and Martin Armstrong, R. Doc. 22633, Ronald and Bernice Pendleton, R. Doc. 22637, William Foreman, R. Doc. 22640, Dung Nguyen, R. Doc. 22641, R & S Properties, LLC, R. Doc. 22644, Michael Christovich and Carlisle Place, LLC, R. Doc. 22645, Consuelo Burgos, Johnny Tyler, Carl and Ellen Moore, R. Doc. 22677, Gerald Levin, R. Doc. 22679, Jay Wang and Ruby Xi, R. Doc. 22664, Ronald and Leslie Bogard, R. Doc. 22683, and Rachel Schoerner, R. Doc. 22685. Plaintiffs oppose the majority of the motions,[1] R. Docs. 22714, 22704, 22703, 22740, 22647, 22728, 22726, 22719, 22729, 22717, 22709, R. Doc. 22727, and Defendants have filed replies, R. Doc. 22754, 22735, 22759, 22756, 22755, 22736, 22749, 22751, 22748, 22743. Because the motions all concern prescription and statutes of limitations issues, the Court will consider them collectively. Having considered the applicable law and the parties' arguments, the Court now rules as follows.

---

[1] Plaintiffs have not filed oppositions to the motions for summary judgment on the claims of Gerald Levin, R. Doc. 22679, Toshonia and Martin Armstrong, R. Doc. 22633, and Rachel Renee Schoerner, R. Doc. 22685.

## I.      BACKGROUND

From 2004 through 2006, the housing boom in Florida and rebuilding efforts necessitated by Hurricanes Rita and Katrina led to a shortage of construction materials, including drywall. As a result, drywall manufactured in China was brought into the United States and used to construct and refurbish homes in coastal areas of the country, notably the Gulf Coast and East Coast. Sometime after the installation of the Chinese drywall, homeowners began to complain of emissions of foul-smelling gas, the corrosion and blackening of metal wiring, surfaces, and objects, and the breaking down of appliances and electrical devices in their homes. *See In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, 894 F. Supp. 2d 819, 829–30 (E.D. La. 2012), *aff'd*, 742 F.3d 576 (5th Cir. 2014). Many of these homeowners also began to complain of various physical afflictions believed to be caused by the Chinese drywall.

These homeowners then began to file suit in various state and federal courts against homebuilders, developers, installers, realtors, brokers, suppliers, importers, exporters, distributors, and manufacturers who were involved with the Chinese drywall. As a result, many homebuilders also filed suit seeking to recoup their damages. Because of the commonality of facts in the various cases, this litigation was designated as a multidistrict litigation. Pursuant to a Transfer Order from the United States Judicial Panel on Multidistrict Litigation on June 15, 2009, all federal cases involving Chinese drywall were consolidated for pretrial proceedings in MDL 09-2047 before this Court. Since that date, numerous cases have been consolidated, involving thousands of individual claims; over 20,000 documents have been entered into the record, millions of documents have been exchanged in discovery, depositions have been taken in the United States and in China, and over thirty Pretrial Orders have been issued; the Court has appointed steering committees and

liaison counsel for plaintiffs, homebuilders, insurers, installers, and manufacturers, and it has presided over monthly status conferences, hearings, and several bellwether trials.

The Chinese drywall at issue was largely manufactured by two groups of defendants: (1) the Knauf Entities and (2) the Taishan Entities. The litigation has focused upon these two entities and their downstream associates and has proceeded on strikingly different tracks for the claims against each group.

### A. The Knauf Defendants

The Knauf Entities are German-based, international manufacturers of building products, including drywall, whose Chinese subsidiary, Knauf Plasterboard (Tianjin) Co., Ltd. ("KPT"), advertised and sold its Chinese drywall in the United States. The Knauf Entities are named defendants in numerous cases consolidated with the MDL litigation and litigation in state courts.

The Knauf Entities first entered their appearance in the MDL litigation on July 2, 2009. Thereafter, the Court presided over a bellwether trial in *Hernandez v. Knauf Gips KG*, Case No. 09-6050, involving a homeowner's claims against KPT for defective drywall. The Court found in favor of the plaintiff family in *Hernandez*, issued a detailed Findings of Fact and Conclusions of Law, and entered a Judgment in the amount of $164,049.64, including remediation damages in the amount of $136,940.46—which represented a remediation cost of $81.13 per square foot based on the footprint square footage of the house.

Subsequently, the Knauf Entities agreed to institute a pilot remediation program utilizing the remediation protocol formulated by the Court from the evidence in *Hernandez*. The Knauf pilot remediation program is now completed and has remediated more than 2,200 homes containing KPT Chinese drywall using the same general protocol. At the Court's urging, the

parties began working together to monetize this program and make it available to a broader class of plaintiffs.

On December 20, 2011, the Knauf Entities and the PSC entered into a global, class Settlement Agreement ("Knauf Settlement Agreement"), which was designed to resolve all Knauf-related, Chinese drywall claims. In addition to the Knauf Settlement Agreement and after a jury trial in a bellwether case, numerous defendants in the chain-of-commerce with the Knauf Entities have entered into class settlement agreements, the effect of which settles almost all of the Knauf Entities' chain-of-commerce litigation. The total amount of the Knauf Settlement is approximately $1.1 billion.

## B. The *Bennett* Class Action

The instant matter is a purported class action filed on November 13, 2014 by Elizabeth Bennett in the Northern District of Alabama. [2] Ms. Bennet raised claims on her own behalf and on the behalf of a nationwide class of similarly situated homeowners who allegedly suffered damages due to the presence of defective Chinese drywall in their homes. The Plaintiffs raised claims against the Knauf Entities for negligence, negligence per se, strict liability, breach of express and/or implied warranty, redhibition, violations of the Louisiana Products Liability Act, private nuisance, negligent discharge of a corrosive substance, unjust enrichment, violations of consumer protection laws, and equitable and injunctive relief and medical monitoring with respect to the manufacture of allegedly defective Chinese drywall. In January 2015, the Judicial Panel on Multidistrict Litigation transferred the case to the Eastern District of Louisiana and consolidated

---

[2] On January 22, 2020, the Court granted Defendants' Motion to Deny Class Certification, finding that the predominance requirement of Rule 23(b)(3) was not satisfied. R. Docs. 22524, 22528. Specifically, the Court noted that the variety in the individual claims, which included personal injury and property damage claims, theories of liability, applicable state laws and defenses, and different damage calculations precluded the finding of predominance necessary to warrant class certification.

it with the *In re Chinese Manufactured Drywall Liability Litigation*, MLD 09-2047, currently pending before this Court.

On October 31, 2019, the Court granted leave for Plaintiffs to add several new Plaintiffs to the action. R. Doc. 22357. The case now involves 130 affected properties. On that date, the Court also extended many of the Case Management Order's deadlines. R. Doc. 22357. With discovery well underway, the Knauf Defendants have begun to file dispositive motions targeting the claims of individual plaintiffs.

## II.    PENDING MOTION

In various motions, Defendants seek summary judgment on the claims asserted Carl and Lynn Russell and Ronald and Patricia Stanfa, R. Doc. 22613, Michael and Alice Ginart, R. Doc. 22628, Toshonia and Martin Armstrong, R. Doc. 22633, Ronald and Bernice Pendleton, R. Doc. 22637, William Foreman, R. Doc. 22640, Dung Nguyen, R. Doc. 22641, R & S Properties, LLC, R. Doc. 22644, Michael Christovich and Carlisle Place, LLC, R. Doc. 22645, Consuelo Burgos, Johnny Tyler, Carl and Ellen Moore, R. Doc. 22677, Gerald Levin, R. Doc. 22679, Jay Wang and Ruby Xi, R. Doc. 22664, Ronald and Leslie Bogard, R. Doc. 22683, and Rachel Schoerner, R. Doc. 22685, on the grounds that these claims are barred by the applicable prescriptive period or statute of limitations.

Plaintiffs oppose the motions, generally arguing that the discovery of Chinese drywall in their properties did not occur at the time Defendants claim. Additionally, Plaintiffs collectively argue that the applicable statute of limitations period was tolled by Knauf's failure to report the sale of the defective drywall to the Consumer Product Safety Commission and Knauf's "active concealment" of the defect. Plaintiffs generally contend Defendants should be equitably estopped from "taking unfair advantage of homeowners who may have only received limited or inaccurate

information about the defective Knauf-manufactured drywall through some source other than the CPSC or from Defendants during a product recall." R. Doc. 22714 at 19.

## III. LAW & ANALYSIS

### A. Legal Standard – Motion for Summary Judgment

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). When assessing whether a dispute as to any material fact exists, the Court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008).

Under Federal Rule of Civil Procedure 56(c), the moving party bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 322. When the moving party has met its Rule 56(c) burden, "[t]he non-movant cannot avoid summary judgment . . . by merely making 'conclusory allegations' or 'unsubstantiated assertions.'" *Calbillo v. Cavender Oldsmobile, Inc.*, 288 F.3d 721, 725 (5th Cir. 2002) (quoting *Little*, 37 F.3d at 1075). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986). All reasonable inferences are drawn in favor of the nonmoving party, but a party cannot defeat summary judgment with conclusory allegations or unsubstantiated assertions. *Little*, 37 F.3d at 1075. A court ultimately

6

must be satisfied that "a reasonable jury could not return a verdict for the nonmoving party." *Delta*, 530 F.3d at 399.

**B. Alabama Claims**

*1. Statute of Limitations Under Alabama Law*

Under Alabama law, "[t]he statute of limitations on a claim begins to run when the cause of action accrues." *Gilmore v. M & B Realty Co.*, 895 So. 2d 200, 208 (Ala. 2004) (quoting *Chandiwala v. Pate Construction Co.*, 889 So. 2d 540, 543 (Ala. 2004)). Claims for "injury to the person or rights of another not arising from contract" are typically subject to a two-year statute of limitations. Ala. Code § 6-2-38(l). "A negligence cause of action accrues as soon as the claimant is entitled to maintain an action, regardless of whether the full amount of damages is apparent at the time of the first legal injury." *Gilmore*, 895 So. 2d at 208 (quoting *Koch v. State Farm Fire & Casualty Co.*, 565 So. 2d 226, 231 (Ala. 1990)). Alabama law does not recognize a "discovery rule" that tolls the statute of limitations until discovery of a defect with respect to negligence actions. *Henson v. Celtic Life Ins. Co.*, 621 So. 2d 1268, 1274 (Ala. 1993). Accordingly, the limitations period is triggered by discovery of the damage or injury itself, regardless of whether the plaintiff can identify the cause of the damage or whether the full scope of the injury has been recognized. *See Franklin v. Mitchell*, 87 So. 3d 573, 578-79 (Ala. Civ. App. 2011) (holding that the statute of limitations barred plaintiffs' negligent construction claim when it was brought more than two years from the time they noticed that the floors in their new home were sagging). Additionally, product liability claims involving latent defects must be filed within one year from the time at which the plaintiff discovers, or reasonably should have discovered the defect. Ala. Code § 6-5-502(b).

7

The Alabama Plaintiffs contend Defendants should be equitably estopped from arguing that the statute of limitations began to run any earlier than a formal drywall inspection because Defendants failed to comply with their post-sale duty to warn consumers of their product's defect. Under Alabama law, a manufacturer has a duty to warn consumers "of those dangers which the owner or user would not be aware of under the particular circumstances of his use of the product in question." *Gurley v. American Honda Motor Co.*, 505 So. 2d 358, 361 (Ala. 1987). This duty is premised on the Restatement (Second) of Torts, which imposes liability on a manufacturer who knows, or should know, that routine use of the product poses a danger, has no reason to believe that a user will recognize the danger, and "fails to exercise reasonable care to inform [the user] of its dangerous condition." *Ex parte Chevron Chem. Co.*, 720 So. 2d 922, 925 (Ala. 1998) (quoting Restatement (Second) of Torts § 388 (1965)).

The Court has addressed this argument in prior Orders and Reasons, R. Doc. 22615 at 27-28, and the outcome is no different here. In overseeing this MDL, the Court has become intimately familiar with the distribution process that brought Knauf-manufactured drywall into this country. Due to the size and geographic scope of the market and the complexity of the distribution network, the Court concludes that it would not have been reasonably possible for Knauf to identify all those to whom a post-sale duty to warn may have been owed under Alabama law. Further, the Court notes that Knauf did undertake an extensive notice program during the major settlement phase of this MDL to identify potential claimants and notify them of their right to participate in a settlement. Accordingly, the evidence does not support Plaintiffs' estoppel argument.

Plaintiffs additionally argue that that statute of limitations was tolled by Defendants' failure to report the defect to the Consumer Product Safety Commission ("CPSC"). Plaintiffs take the position that rather than report the defect to the CPSC as required by law, Defendants "chose to

8

conceal the problem" and "worked to actively conceal the defect by striking a secretive indemnification agreement with Banner Supply Company." R. Doc. 22714 at 17. Plaintiffs characterize this agreement as "an act of fraudulent suppression under Alabama law," which tolls the statute of limitations "until the tort was actually discovered or could have been discovered." R. Doc. 22714 at 18 (quoting *McKenzie v. Janssen Biotech, Inc.*, No. 1170787, 2019 WL 4727472, at *4 (Ala. Sept. 27, 2019)).

During this stage of the litigation, the Court has ruled conservatively, only granting summary judgment on statute of limitations grounds when plaintiff had actual knowledge of the presence of Chinese drywall in their property or when it is abundantly clear that the plaintiff should have discovered the defect through even a modicum of diligence, such as when a plaintiff is told by a air conditioning technician that the cause of his appliance failures is attributable to Chinese drywall. Even when the Court has been skeptical about the reasonableness of a plaintiff's actions, it has allowed claims to proceed to the trier of fact where there is question about whether Plaintiffs should have known about the presence of the defect. Plaintiffs' Consumer Product Safety Act arguments do not demand different treatment. The Court recognizes that the question of "when a reasonable person should have discovered a claim that is alleged to have been fraudulently concealed is generally a question to be determined by the trier of fact." *McKenzie*, 2019 WL 4727472, at *4 (Ala. Sept. 27, 2019). Accordingly, the Court will only grant summary judgment if there is clear evidence that Plaintiffs had knowledge of the defect, or absolutely should have discovered the problem, more than two years before the filing of their claims, because the statute of limitations is only tolled "until the tort [is] actually discovered or could have been discovered." *Id.*

2. *Discussion*

### A.  Carl and Lynn Russel [R. Doc. 22613]

Carl and Lynn Russell's claims arise from the alleged presence of Chinese drywall in a property located at 5427 Creekside Lane, Hoover, Alabama. The Russells filed their claims on January 31, 2016. R. Doc. 20020-2. Accordingly, under Alabama law, their claims are untimely if they discovered, or should have discovered, the presence of Chinese drywall prior to January 31, 2014.

The Russells completed a Plaintiff Profile Form indicating that a Chinese drywall inspection was conducted, and the presence of Chinese drywall revealed, on November 12, 2015. R. Doc. 22613-2 at 2. However, the statute of limitations begins to run under Alabama law not when the full extent of the injury has been felt or the cause of the damage identified, but when the plaintiff first discovers, or reasonably should have discovered, the damage or defect. Mr. Russell testified to receiving a letter from the builder of his home, Gibson & Anderson, discussing Chinese drywall, four or five years prior. In response to the letter, Mr. Russell called Gibson & Anderson and was instructed to go into his attic and determine whether the drywall had Knauf markings. Mr. Russell explained that "there was very little visible or assessable to me in my attic." R. Doc. 22613-4 at 2. He also said, "I didn't know – their letter mentioned Chinese drywall. That didn't even – it didn't register – nothing registered with me. I didn't look it up to see what it was even talking about or what the symptoms or what it did." R. Doc. 22613-4 at 2. Without reviewing a copy of the letter that was purportedly sent to the Russells, the Court is unable to determine whether it imported actual notice on the Russells. Considering the evidence in the light most favorable to the Russells, the Court will deny summary judgment and allow the trier of fact to decide whether the Russells acted reasonably upon receiving a letter mentioning the possible presence of Chinese drywall in the affected property.

B.  Ronald and Patricia Stanfa [R. Doc. 22613]

Ronald and Patricia Stanfa's claims arise from the alleged presence of Chinese drywall in a property located at 180 Sheffield Lane, Birmingham, Alabama. The Stanfas filed their claims on September 10, 2018. R. Doc. 21770-2. Accordingly, under Alabama law, the Stanfas' claims are untimely if they discovered, or should have discovered, the presence of Chinese drywall prior to September 10, 2016.

Mr. Stanfa testified that during a renovation in 2014, an electrician informed them that "we might have Chinese drywall because he saw some markings that were consistent with" Chinese drywall. R. Docs. 22613-6 at 2, 22613-7 at 7. Around the same time, an employee of a construction company noted that the home had a smell that could be attributed to Chinese drywall. R. Doc. 22613-6 at 3. Mrs. Stanfa testified that the electrician "would say I really think you need to check on this Chinese drywall." R. Doc. 22613-7 at 6. She described the electrician as "persistent," and noted that he mentioned Chinese drywall on at least two occasions. R. Doc. 22613-7 at 8. The Court concludes that summary judgment is appropriate here, as the Stanfas were repeatedly told by multiple technicians that their home displayed clear signs of Chinese drywall contamination. This information, coming from at least two different professional sources familiar with Chinese drywall, should have alerted the Stanfas to the severity of the situation and prompted swift action.

C.  R & S Properties [R. Doc. 22644]

R&S Properties' claims arise from the alleged presence of Chinese drywall in a property located at 9810 Bay Road North, Foley, Alabama. R. Doc. 22644-1 at 3. R&S Properties filed its claims on September 10, 2018. R. Doc. 21770-2. Accordingly, under Alabama law, R&S Properties' claims are untimely if R&S Properties knew, or should have known about the defect before September 10, 2016.

11

Rocye Cornelison, a member of R&S Properties, was deposed in conjunction with this litigation and explained that shortly after purchasing the property as a family retreat, they experienced multiple failures of the heating and air conditioning units. R. Doc. 22644-5 at 5. He further explained that a technician informed him that the home "probably had Chinese drywall" sometime in 2011 or 2012. R. Doc. 22644-5 at 5-6. Mr. Cornelison stated that he "just figured it was him talking." R. Doc. 22644-5 at 5. The Court finds summary judgment appropriate here because this information, relayed by an industry professional, should have altered Mr. Cornelison to the severity of the situation and prompted swift action.

## C. Florida Claims

### 1. *Statute of Limitations Under Florida Law*

Under Florida law, actions involving negligent injury to real property are subject to a four-year statute of limitations. Fla. Stat. Ann. 95.11(3)(a). Although the statute of limitations is typically triggered by the completion of the final element of the cause of action, when a latent defect is involved, "the time runs from the time the defect is discovered or should have been discovered with the exercise of due diligence." *Id.* 95.11(3)(c). A latent defect is a defect "not discoverable by casual observation," *Hawkins v. Champion Int'l Corp.*, 662 So. 2d 1005, 1007 (Fla. Dist. Ct. App. 1995), or "by reasonable and customary inspection, and of which the owner has no knowledge." *Lakes of the Meadow Village Homes Condominium Nos. One, Two, Three, Four, Five, Six, Seven, Eight, and Nine Maintenance Ass'ns, Inc. v. Arvida/JMB Partners, L.P.*, 714 So. 2d 1120, 1122 (Fla. 3d DCA 1998) (quoting *Henson v. James M. Barker Co.*, 555 So.2d 901, 909 (Fla. 1st DCA 1990)).

Although the statute of limitations begins to run only upon the discovery of a latent defect, "[t]he knowledge required to commence the limitation period . . . does not rise to that of a legal

12

certainty." *Univ. of Miami v. Bogorff*, 583 So. 2d 1000, 1004 (Fla. 1991), *holding modified by Tanner v. Hartog*, 618 So. 2d 177 (Fla. 1993) (citing *Steiner v. Ciba–Geigy Corp.*, 364 So.2d 47 (Fla. 3d DCA 1978), *cert. denied*, 373 So. 2d 461 (Fla. 1979)). "Plaintiffs need only have notice, through the exercise of reasonable diligence, of the possible invasion of their legal rights." *Id.* To trigger the limitation period in a products liability case, a plaintiff "need not know the full extent of his injury," but must recognize "a distinct injury and some causal connection between the injury and exposure to plaintiff's product." *Samson v. R.J. Reynolds Tobacco Co.*, No. 96-414-CIV-T-24(B), 1997 WL 373475, at *5 (M.D. Fla. June 2, 1997) (citing *Babush v. American Home Prod. Corp.*, 589 So. 2d 1379 (Fla. 4th DCA 1991)).

Plaintiffs collectively contend that Defendants should be estopped from arguing that Plaintiffs were on notice of the defect any earlier than a formal Chinese drywall inspection because Defendants failed to comply with their post-sale duty to warn. Indeed, Florida law recognizes that in some circumstances, manufacturers have a post-sale duty to warn downstream consumers of defects in their products, even after the goods have left the manufacturer's possession or control. *See Florio v. Manitex Skycrane, LLC*, No. 6:07-CV-1700-ORL-28, 2010 WL 5137626, at *7 (M.D. Fla. Dec. 10, 2010) (citing *West v. Caterpillar Tractor Co.*, 336 So.2d 80, 86 (Fla. 1976)) ("Florida law imposes a post-sale duty to warn customers of a product's dangerous propensities on those who have control over the manufacture or distribution of the product—those who are in a position to take any safety measures."); *Moncrieffe v. Clark Equip. Co.*, No. 06-22644-CIV, 2008 WL 11333222, at *17 (S.D. Fla. July 23, 2008). This duty is premised on the Restatement (Third) of Torts, which provides that a post-sale duty to warn is triggered when "[a] reasonable person in the seller's position would provide a warning after the time of sale if . . . the seller knows or reasonable

should have known that the product poses a substantial risk of harm to persons." Restatement (Third) of Torts, § 10(b)(1).

The Court has addressed this argument before and applies the same reasoning here. Even assuming, arguendo, that a post-sale duty to warn does exist, the Restatement (Third) of Torts clarifies that a post-sale duty to warn applies only when "a warning can be effectively communicated to and acted on by those to whom a warning might be provided." Restatement (Third) of Torts § 10(b)(3). As explained above, the Court concludes that it would not have been reasonably possible for Knauf to identify all those to whom a post-sale duty to warn may have been owed and notes that Knauf did undertake an extensive notice program during the major settlement phase of this MDL to identify potential claimants and notify them of their right to participate in a settlement. Accordingly, the evidence does not support Plaintiffs' estoppel argument.

The Florida Plaintiffs additionally argue the statute of limitations was tolled by Defendants' fraudulent concealment of the defect in violation of their legal duty under the CPSA. The Court has already rejected this argument with respect to the Alabama Plaintiffs and finds no reason to rule differently here.

### 2. Discussion

#### a. Consuelo Burgos [R. Doc. 22677]

Conseulo Burgos' claims arise from the alleged presence of Chinese drywall in a property located at 384 Northeast Terrace, Miami, Florida. R. Doc. 22677-1 at 3. Burgos filed his claims on May 14, 2018. R. Doc. 21334. Accordingly, his claims are untimely if he knew, or should have known of the presence of Chinese drywall in the property before May 14, 2014.

Defendants argue Burgos' claims are barred by the statute of limitations because Burgos learned of the Chinese drywall from an air conditioning technician in 2011. Mr. Burgos testified that he had work performed on his air conditioning system many times, and when asked whether those technicians ever mentioned Chinese drywall as the cause of the problem, Mr. Burgos answered, "They all do. They all say the same thing." R. Doc. 22677-5 at 4. Specifically, Mr. Burgos explained that the technicians indicated that Chinese drywall "may be the problem." R. Doc. 22677-5 at 4.

The Court will grant summary judgment with respect to Mr. Burgos' claims, as he was specifically told multiple times, by multiple technicians, that his home displayed signs of Chinese drywall. The Court concludes that with any amount of reasonable diligence, Mr. Burgos would have confirmed the presence of the defective product more than three years before filing his claims.

### b. Johnny Tyler [R. Doc. 22677]

Johnny Tyler's claims arise from the alleged presence of Chinese drywall in a property located at 8675 130th Avenue, Fellsmere, Florida. R. Doc. 22677-1 at 4. Mr. Tyler filed his claims on May 14, 2018. R. Doc. 21334. Accordingly, his claims are untimely if he knew, or should have known of the presence of Chinese drywall in the property before May 14, 2014.

Defendants argue Mr. Tyler's claims are barred by the statute of limitations because Mr. Tyler learned of the presence of Chinese drywall when he received an air conditioning unit repair invoice indicating that a leak in the evaporator coil was caused by Chinese drywall corrosion. R. Doc. 22677-1 at 8. During his deposition, Tyler admitted that an air conditioning repair man made an "offhand comment" about Chinese drywall and indicated, on an invoice, that the cause of the air conditioning problems may be related to Chinese drywall. However, Tyler explained that "I didn't pay attention to [the invoice], to be frank with you. I didn't read this." R. Doc. 22677-6 at

15

3. He further explained that he didn't investigate the issue further because "[it] had no meaning to me. I mean, I buy a lot of things from China. I didn't see it as something negative or something to be concerned about." R. Doc. 22677-6 at 3. The Court finds summary judgment appropriate here because Mr. Tyler experienced an appliance failure, was told of the likely cause, and failed to act, when even a modicum of diligence would have alerted him to the nature of the problem and prompted a response. Accordingly, summary judgment is granted.

    c.  Carl and Ellen Moore [22677]

Carl and Ellen Moore's claims arise from the alleged presence of Chinese drywall in a property located at 5427 Kedgewick Lane, North Point, Florida. R. Doc. 22677-1 at 4. The Moores filed their claims on May 14, 2018. R. Doc. 21334. Accordingly, their claims are untimely if they knew, or should have known of the presence of Chinese drywall in the property before May 14, 2014.

Defendants argue the Moores' claims are barred by the statute of limitations because they were informed by an air conditioning repairman around January 18, 2014 that their air conditioning problems were caused by Chinese drywall. R. Doc. 22677-1 at 9. During Mr. Moore's deposition, he noted that the first time he heard about Chinese drywall "as a general issue" was in 2014, when "the air-conditioning person informed [him] about the Chinese drywall" and indicated that the "issue with the air-conditioning might be related" to it. R. Doc. 22677-7 at 2. The Court finds summary judgment appropriate here because this information, relayed by an industry professional, should have alerted the Moores to the severity of the situation and prompted swift action.

**D. Louisiana Claims**

   *1. Prescription Under Louisiana Law*

Under Louisiana law, the prescriptive period for products liability claims is one year. La. Civ. Code art. 3492. Typically, the prescriptive period begins to run from the day the injury or damage is sustained. *Carter v. Matrixx Initiatives, Inc.*, 391 Fed.Appx. 343, 344 (5th Cir. 2010). However, Louisiana law recognizes the doctrine of *contra non valentem*, under which the prescriptive period does not begin to run until a plaintiff has "actual or constructive knowledge of facts indicating to a reasonable person that he or she is the victim of a tort." *Bailey v. Khoury*, 04-0620, p. 10 (La. 1/20/05); 891 So. 2d 1268, 1276. A review of the applicable cases compels the conclusion that this occurs when the plaintiff has actual or constructive knowledge of a causal relationship between the object or product and the injury. The plaintiff does not need to be aware of exactly which legal claims and theories will be used in his case in order to be put on notice. Rather, "the prescriptive period commences when there is enough notice to call for an inquiry about a claim, not when an inquiry reveals the facts or evidence that specifically outline the claim." *Luckett v. Delta Airlines, Inc.*, 171 F.3d 295, 300 (5th Cir. 1999). "[T]he doctrine ... only suspends the running of prescription during the period of time when the action was not reasonably knowable by the plaintiff." *Bowers v. Orleans Parish School Board*, 694 So. 2d 967, 973 (La. App. 4 Cir. 1996).

Additionally, Plaintiffs collectively contend that Defendants should be estopped from arguing that Plaintiffs were on notice of the defect any earlier than a formal Chinese drywall inspection because Defendants failed to comply with their duty to warn. Louisiana Revised Statute 9:2800.57 governs a manufacturer's duty to warn under the Louisiana Products Liability Act. Subsection (C) imposes liability on a manufacturer who gains knowledge of a defect after the product has left the manufacturer's control but fails to act with reasonable care in adequately warning the users of the product. La. R. S. 9:2800.57(C). The Court has already addressed and

17

rejected this argument with respect to the Alabama and Florida Plaintiffs subject to this Order and Reasons and finds no reason to rule differently here. Further, for the reasons discussed above, the Court also rejects the Louisiana Plaintiff's argument that prescription was tolled by Defendants' failure to report to the CPSC and fraudulent concealment of the defect.

### 2. Discussion

#### a.  Michael and Alice Ginart [R. Doc. 22628]

Michael and Alice Ginart's claims arise from the alleged presence of Chinese Drywall in their properly located at 2104 Olivia Street, Meraux, Louisiana. Michael Ginart filed his claims on November 13, 2014. Accordingly, their claims are untimely if they discovered, or should have discovered, the presence of Chinese drywall prior to November 13, 2013.

Mr. Ginart testified to receiving a letter that "had an invoice attached that said we had 300 sheets of possibly contaminated drywall delivered to the house." R. Doc. 22628-3 at 5. He said he received this letter in 2012 or 2013. R. Doc. 22628-3 at 6. After receiving the letter, he "called some people and they referred me to Colonial testing to have them come see whether or not I did, in fact, have drywall because the letter didn't say I did. It just said they had delivered some and it could have included – I'm paraphrasing here – it basically could have included drywall that was from China or with sulfur." R. Doc. 22628-3 at 6.

In overseeing this MDL, the Court authorized the distribution of a settlement notice program involving Inex, a supplier of Chinese drywall. R. Doc. 15749-8. The notice was distributed to all potential class members and alerted them of their right to receive a monetary payment if they were indeed a part of the settlement class. The notice described the history of the litigation, described the proposed class, and summarized the proposed settlement. Defendants contend and have set forth evidence that a copy of this notice was received by the Ginarts sometime

18

in 2012, as Mr. Ginart specifically testified that he received a letter with an attached invoice reflecting the purchase of 300 sheets of drywall. Further, Defendants have demonstrated that the Ginart's property appears on a list of recipients of the Inex settlement notice program letter. R. Doc. 22628-1 at 7. Accordingly, the operative question is whether the notice letter constitutes notice. In considering other motions for summary judgment in this phase of the litigation, the Court has concluded that attorney solicitations and other communications involving the possibility of Chinese drywall are insufficient to constitute actual knowledge. [3] In those circumstances, the Court has concluded that whether these letters impart constructive notice is a question for the trier of fact. A settlement notice program, however, is implemented with Court approval. There is a complex method of tracking how and to whom the letters are sent. The receipt of a formal letter alerting the recipient to the possibility of monetary compensation through a formal settlement program certainly should be met with prompt action. Additionally, other courts have concluded that an effective media campaign preceding approval of a settlement agreement may constitute actual notice of a potential claim, thereby triggering the prescriptive period. *See, e.g., In re Briscoe*, 448 F.3d 201, 221 (3d Cir. 2006) (affirming the district court's determination that notice was provided, at the latest, "when the class-member notification campaign concluded"); *see also In re Vioxx Prod. Liab. Litig.*, 522 F. Supp. 2d 799, 808 (E.D. La. 2007) (holding that national and local news coverage of the withdrawal of Vioxx from the market constituted notice sufficient to trigger the statute of limitations). For these reasons, summary judgment is granted.

---

[3] Earlier in this litigation, the Court denied summary judgment with respect to the Cordiers, plaintiffs who had also received a letter alerting them to the possibility of Chinese drywall in this home. R. Doc. 22615 at 31 n. 9. The Court concluded that without reviewing the contents of the letter, it was unable to determine whether the letter imparted actual notice. Specifically, even the parties could not determine whether the letter was sent by Inexor from a law firm. In contrast here, Defendants have offered proof that the Ginarts received a settlement notice letter from the Inex Settlement.

b.  The Pendletons [R. Doc. 22637]

The Pendletons' claims arise from the alleged presence of Chinese drywall in their property located at 5524 Pasteur Boulevard, New Orleans, Louisiana. R. Doc. 22637-1 at 3. The Pendletons filed their claims on November 13, 2014. Accordingly, their claims are untimely if they discovered, or should have discovered, the presence of Chinese drywall prior to November 13, 2013.

In Plaintiffs' Statement of Uncontested Facts, they state "Plaintiffs discovered Knauf-manufactured drywall in their home on October 25, 2013 through a self-inspection." R. Doc. 22740-8 at 1. They additionally state, "Plaintiffs filed his claim against the Knauf Defendants in this action November 13, 2014." R. Doc. 22740-8 at 1. There is no question that under Louisiana law, Plaintiffs' claims prescribed one year from the date of discovery, which Plaintiffs themselves admit occurred on October 25, 2013. Accordingly, it appears as though these claims are untimely, warranting summary judgment in Defendants favor. However, Plaintiffs argue that the prescriptive period should be tolled because they only filed in *Bennett* as a protective action. Plaintiffs explain that they "filed their claim and engaged in activities with an expectation that they would have their home remediated through the settlement of Omni XVIII." R. Doc. 22740 at 9. Plaintiffs represent that these activities lasted through the end of 2014 and accordingly, the two-week delay in filing their claims in *Bennett* should be excused.

It is undisputed that the Pendletons' claims are subject to a one-year prescriptive period. However, prescription may be interrupted by the filing of a lawsuit in a court of competent jurisdiction and venue, La. Civ. Code art. 3462, or by defendant's acknowledgement of responsibility and of plaintiffs' rights, La. Civ. Code art. 3464. "Interruption by acknowledgment may be oral, in writing, formal, informal, express or tacit." *Morris v. Westside Transit Line*, 02-

1029 (La. App. 5 Cir. 2/25/03), 841 So. 2d 920, 926. Tacit acknowledgment occurs "when a certain debtor performs acts of reparation or indemnity, makes an unconditional offer of payment, or lulls the creditor into believing he will not contest liability." *Lima v. Schmidt*, 595 So. 2d 624 (La. 1992), *superseded by statute on other grounds*. "Conversely, mere settlement offers or conditional payments, humanitarian or charitable gestures, and recognition of disputed claims will not constitute acknowledgments . . . ." *Mallett v. McNeal*, 2005-2289 (La. 10/17/06), 939 So. 2d 1254, 1259. When prescription is apparent on the face of the pleadings, a plaintiff taking the position that prescription has been interrupted bears the burden of proof on that issue. *Morris*, 841 So. 2d at 924; *First Nat. Bank of Commerce v. Band*, 727 So. 2d 1171 (La. Ct. App. 4th Cir. 1998) (citing *Lima*, 595 So. 2d at 628).

In the present case, the Pendletons' have the burden of proving the interruption of prescription, as it is apparent from the face of the complaint that their claims were filed more than a year after the discovery of Chinese drywall in their property. The Pendletons contend the prescriptive period should be tolled by their attempted participation in the Pilot Remediation Program. However, simply submitting a settlement claim is not tantamount to filing a lawsuit in a court of competent jurisdiction and venue, nor does it serve as evidence that Defendants acknowledged, even tacitly, the Pendletons' rights or admitted liability with respect to their claim. Notably, the Pendletons signed and submitted a Release in conjunction with their settlement claim, which specifically stated:

> Nothing in this Release shall constitute (i) any admission of liability or fault of any kind on the part of Knauf Defendants who expressly deny any liability to Claimant and who are entering this agreement to avoid the expense and uncertainty of litigation; (ii) an admission of or consent to jurisdiction or waiver of any jurisdictional defenses, except as provided in the New Claims Agreement, and where applicable, the Knauf Class Settlement Agreement; or (iii) consent to service by the Knauf Defendants.

21

R. Docs. 22781-1 at 7–8, 22781-2 at 7–8. Clearly, Defendants' decision to offer the Pilot Remediation Program is not to be construed as an admission of liability or a specific acknowledgement of a claimant's legal rights. Even if participation were construed as a settlement negotiation, settlement offers and other conditional payments do not constitute acknowledgements under Louisiana law. Finding that no action was filed in a court of competent jurisdiction and venue and no acknowledgment of liability and rights made by Defendants, the Court concludes that the Pendletons' claims prescribed before they joined the *Bennet* action.

    c.   Gerald Levin [R. Doc. 22679]

Gerald Levin is the Executor of the Estate of Adelaide Levin, whose claims arise from the alleged presence of Chinese drywall in a property located at 2201-03 Neyrey Place, Metairie, Louisiana. R. Doc. 22679-1 at 3. Defendants were informed of Adelaide Levin's death on December 9, 2019 and filed a suggestion of death the same day. R. Doc. 22679-1 at 3–4. Plaintiffs filed a Motion to Substitute Gerald Levin, Executor of Adelaide Levin's Estate, as Plaintiff on March 9, 2020. R. Doc. 22697-1 at 4. Adelaide Levin's claims were filed on January 31, 2016. R. Doc. 20020-2. Accordingly, under Louisiana law, these claims are untimely if she knew, or should have known about the presence of Chinese drywall in the property prior to January 31, 2015.

Adelaide Levin completed a Plaintiff Profile Form, under penalty of perjury, on which she indicated that Chinese drywall was discovered in her home after an inspection conducted on January 13, 2014. Plaintiffs has not opposed the motion or provided any indication that the information in the Plaintiff Profile Form is incorrect. Accordingly, Mr. Levin's claims as the executor of Adelaide Levin's estate are prescribed on their face.

    d.   Wang and Xi [R. Doc. 22664]

Wang and Xi's claims arise from the alleged presence of Chinese drywall in a property located at 4220 Vincennes Place, New Orleans, Louisiana. Wang filed his claims on January 31, 2016. R. Doc. 20020-2. Accordingly, under Louisiana law, these claims are untimely if they knew, or should have known about the presence of Chinese drywall in the property before January 31, 2015.

Defendants argue that Wang and Xi has actual knowledge of the presence of Chinese drywall in their property in 2010 because in that year, they moved out of the property "because of the drywall." R. Doc. 22664-8 at 14. However, later in the deposition, Mr. Wang clarified that they moved for financial reasons and because the home had a strong smell that triggered his allergies. R. Doc. 22664-8 at 15. The Court is not prepared to find that experiencing a strange smell is tantamount to having knowledge of the presence of the defective product, although it may bear on the reasonableness of their actions in declining to investigate the problem further.

Defendants further argue that to the extent Wang and Xi's claims are not prescribed, their claims are nevertheless barred by the exclusive remedies provision of the Louisiana Products Liability Act ("LPLA"). As the Court has previously discussed, the LPLA "establishes the exclusive theories of liability for manufacturers for damage caused by their products." La. Rev. Stat. § 9:2800.52; *see Chevron USA, Inc. v. Aker Mar., Inc.*, 604 F.3d 888, 900 (5th Cir. 2010). In other words, "[a] plaintiff may not recover from a manufacturer for damage caused by a product on the basis of any theory of liability not set forth in the LPLA." *Jefferson v. Lead Indus. Ass'n, Inc.*, 930 F. Supp. 241, 244–45 (E.D. La. 1996), *aff'd*, 106 F.3d 1245 (5th Cir. 1997).

"Damages" under the LPLA includes "damage to the product itself and economic loss . . . only to the extent" such recovery is not viable under a claim for breach of the implied warranty against redhibitory defects. La. Rev. Stat. § 9:2800.53(5). Accordingly, the LPLA precludes all

23

theories of liability seeking damages arising from a manufacturer's defective product except for redhibition claims involving damage to the product itself or economic loss. *Hollybrook Cottonseed Processing, LLC v. Carver, Inc.*, No. CIV.A.09-0750, 2010 WL 2195685, at *4 (W.D. La. May 28, 2010) ("[T]he plain language of the LPLA precludes any claim against a manufacturer for damages caused by its products, regardless of the theory of recovery, except for redhibition claims."); *see also C-Innovation, LLC v. Norddeutsche Seekabelewerke GMBH*, No. CIV.A. 10-4441, 2013 WL 990026, at *4 (E.D. La. Mar. 13, 2013) ("By virtue of the LPLA's definition of damages recoverable under the act, tort damages under article 2315 *et seq.* are recoverable from a product manufacturer only under the LPLA.").

As the Court has previously noted with respect to other Louisiana plaintiffs, Wang and Xi seek to recover for damages caused by the alleged presence of defective Knauf-manufactured Chinese drywall in their home. Accordingly, their claims fall directly within the scope of the LPLA, which governs the liability of manufacturers with respect to damage caused by their products. Because the LPLA is the *exclusive* remedy for plaintiffs in this situation, the Court will grant summary judgment with respect to Wang and Xi's non-LPLA claims and redhibition claims. However, the Court notes that the redhibition claims will only be viable to the extent Wang and Xi seek recovery for damage to the defective drywall itself or economic loss.

### E. Mississippi Claims

#### 1. Statute of Limitations under Mississippi Law

Under Mississippi law, claims for damage to real property are subject to a three-year statute of limitations. Miss. Code. Ann. § 15-1-49. When the damage involves a latent defect, the statute of limitations is tolled "until the plaintiff has discovered, or by reasonable diligence should have discovered, the injury." *Id.* § 15-1-49(2). A latent injury exists when the plaintiff is "precluded

from discovering harm or injury because of the secretive or inherently undiscoverable nature of the wrongdoing in question . . . [or] when it is unrealistic to expect a layman to perceive the injury at the time of the wrongful act." *PPG Architectural Finishes, Inc. v. Lowery*, 909 So. 2d 47, 50 (Miss. 2005) (citing *Donald v. Amoco Prod. Co.*, 735 So. 2d 161, 168 (Miss. 1999)). The Mississippi Supreme Court has clarified that "causes of action accrue 'upon discovery of the injury, *not discovery of the injury and its cause.*'" *Ridgway Lane & Assocs., Inc. v. Watson*, 189 So. 3d 626, 629 (Miss. 2016) (quoting *Angle v. Koppers, Inc.*, 42 So.3d 1, 5 (Miss. 2010)); *see also Wayne Gen. Hosp. v. Hayes*, 868 So. 2d 997, 1001 (Miss. 2004) ("Moreover, to claim benefit of the discovery rule, a plaintiff must be reasonably diligent in investigating the circumstances surrounding the injury."). "Discovery of an injury 'is an issue of fact to be decided by a jury when there is a genuine dispute.'" *Phillips 66 Co. v. Lofton*, 94 So.3d 1051, 1059 (Miss. 2012) (quoting *Weathers v. Metro. Life Ins. Co.*, 14 So. 3d 688, 692 (Miss. 2009)).

Plaintiffs collectively contend that Defendants should be estopped from arguing that Plaintiffs were on notice of the defect any earlier than a formal Chinese drywall inspection because Defendants failed to comply with their duty to warn. However, Mississippi law does not recognize a post-sale duty to warn. *See Stevenson v. Cont'l Eagle Corp.*, 169 F. App'x 408, 409 (5th Cir. 2006); *Williams v. Ford Motor Co.*, No. 3:11CV110-NBB-SAA, 2012 WL 2990165, at *3 (N.D. Miss. July 20, 2012). Under Mississippi law, the manufacturer of a defective product may be found liable for failure to warn only if a plaintiff demonstrates, by the preponderance of the evidence, that the manufacturer "knew or in light of reasonably available knowledge should have known about the danger that caused the damage for which recovery is sought." Miss. Code. Ann. § 11-1-63. In other words, liability attaches when a manufacturer fails to warn of risks known at the time of sale. *See Murray v. Gen. Motors*, No. 3:10-CV-188-DPJ-FKB, 2011 WL 52559, at *2 (S.D.

Miss. Jan. 7, 2011), *aff'd sub nom. Murray v. Gen. Motors, L.L.C.*, 478 F. App'x 175 (5th Cir. 2012) (holding that a manufacturer did not breach its duty by not recalling a defective vehicle because "Mississippi imposes no post-sale duty to warn"). Accordingly, the Court rejects this argument. Further, for the reasons discussed above, the Court also rejects the Mississippi Plaintiffs' argument that prescription was tolled by Defendants' fraudulent concealment of the defect.

### 2. Discussion

#### a. William Foreman [R. Doc. 22640]

William Foreman's claims arise from the alleged presence of Chinese drywall in his property located at 7514 Pinehurst Court, Diamondhead, Mississippi. R. Doc. 22640-1 at 3. Foreman filed his claims on January 31, 2016. R. Doc. 20020-2. Accordingly, under Mississippi law, Foreman's claims are untimely if he knew, or should have known about the presence of Chinese drywall in his property before January 31, 2013.

Foreman does not dispute that his claims were filed more than three years after the discovery of Chinese drywall in his property. Instead, he argues that the statute of limitations in his case was tolled because he discovered the presence of defective drywall in his home while *Payton v. Knauf Gips, KG*, a class action within this MDL, was pending. R. Doc. 22728 at 5. Plaintiff argues his claims are timely under *American Pipe & Construction Co. v. Utah,* 414 U.S. 538 (1974), and *Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345 (1983), because they were filed within three years of class certification being granted in *Payton,* a class in which he was a putative member. The Court has already considered and rejected this argument. Specifically, in prior Orders and Reasons, the Court noted that under *American Pipe*, a timely filed class action "tolls the running of the statute for all purported members of the class who make timely motions to

intervene after the court has found the suit inappropriate for class action status." R. Docs. 22586 at 20, 22615 at 28 (quoting *American Pipe*, 414 U.S. at 553). However, the United States Supreme Court recently announced that this rule applies only to individual claims and not to successive class actions. *China Agritech, Inc. v. Resh*, 138 S. Ct. 1800, 1801 (2018) ("We hold that *American Pipe* does not permit a plaintiff who waits out the statute of limitations to piggyback on an earlier, timely filed class action."). Accordingly, the pendency of *Payton* did not toll the claims of those involved in the *Bennett* putative class action.

> b. Dung Nguyen [R. Doc. 22641]

Nguyen's claims arise from the alleged presence of Chinese drywall in his property located at 3 Laudeac Court, Long Beach, Mississippi. R. Doc. 22641-1 at 3. Nguyen filed his claims on January 31, 2016. R. Doc. 20020-2. Accordingly, under Mississippi law, Nguyen's claims are untimely if he knew, or should have known, about the presence of Chinese drywall in his property before January 31, 2013.

Defendants argue Mr. Nguyen's claims are untimely because he was informed by a tenant in 2011 that the air conditioner was faulty and that the house "might have Chinese Sheetrock." R. Doc. 22641-5 at 3–5. Mr. Nguyen said he did not believe his tenant. R. Doc. 22641-5 at 5. He then sold the property to Jimmy and Hang Le, who discovered that the home contained Chinese Drywall. R. Doc. 22641-5 at 6. Jimmy and Hang Le deeded the property back to Nguyen upon this discovery. At his deposition, Nguyen could not recall exactly when this occurred. He testified that he sold the home to Jimmy and Hang Le "somewhere around" 2011 or 2012, and they lived in the home "a year or a little bit more than a year" before they informed him that the home contained Chinese drywall. R. Doc. 22641-5 at 6.

The Court concludes that Mr. Nguyen should have discovered the defect by at least 2012. Although the Court could overlook the fact that a tenant told Mr. Nguyen she believed the property might have Chinese drywall, it is inconceivable to conclude that the defect was not discovered at least by the time the Nguyens sold the home and were informed by the buyers that the property contained Chinese drywall. Further, Mr. Nguyen testified that after being told by the buyers that the home contained Chinese drywall, he ordered an inspection and became "a hundred percent sure." R. Doc. 22641-5 at 7. Therefore, summary judgment is granted.

c. Michael Christovich & Carlisle Place [R. Doc. 22645]

Michael Christovich and Carlisle Place, LLC's claims arise from the alleged presence of Chinese drywall in a property located at 9829 East Scenic Drive, Pass Christian, Mississippi. R. Doc. 22645-1 at 3. Carlisle Place, LLC filed its claims on September 10, 2018. R. Doc. 21770. Michael Christovich filed his claims on October 7, 2019. R. Doc. 22334.

Defendants explain that Mr. Christovich purchased the property from Carlisle Place, LLC in 2019 and was assigned Carlisle Place's rights regarding Chinese drywall in the property. R. Doc. 22465-1 at 3–4. Pursuant to the agreement between Mr. Christovich and Carlisle Place, Carlisle Place would receive up to $700,000.00 of any amount Mr. Christovich recovered with regard to the Chinese drywall. R. Doc. 22465-1 at 4. Defendants argue that summary judgment is warranted because Michael Christovich was unprepared to discuss the requests attached to his notice of deposition and because Carlisle Place failed to appear for its deposition. R. Doc. 22465-1 at 4. Additionally, Defendants argue that these claims are barred by the applicable statute of limitations because the assignor, Carlisle Place, had actual knowledge of Chinese drywall more than three years before claims were filed because its manager, Sherwood R. Bailey was also the president of Bailey Lumber & Supply Co., a company that was "heavily involved in prior litigation

28

in this MDL." R. Doc. 22645-1 at 7. Additionally, Defendants argue that summary judgment is appropriate because Mr. Christovich failed to preserve evidence in compliance with the pretrial orders and failed to provide any evidence to support his loss of use or remediation claims. R. Doc. 22645-1 at 8–11.

First, Plaintiff admits that Carlisle Place, LLC "has no further legal interest in this action and is due to be dismissed." R. Doc. 22729 at 7. The Court will accordingly dismiss Carlisle Place, LLC. Thus, the question remains whether Mr. Christovich's claims are barred by the statute of limitations. "It is familiar law that an assignee obtains no greater right in the thing assigned than was possessed by the assignor, but simply stands in the shoes of the latter and assignee's right can rise no higher than assignor's." *Indiana Lumbermen's Mut. Ins. Co. v. Curtis Mathes Mfg. Co.*, 456 So. 2d 750, 754 (Miss. 1984). Accordingly, the statute of limitations began running on Mr. Christovich's claims on the date that Carlisle Place, LLC, knew, or should have known about the presence of Chinese drywall in the affected property. Defendants stress that Carlisle Place, LLC knew about the presence of the defect by 2011 at the latest, because the manager of the LLC, Sherwood R. Bailey, Jr., also held an executive position at Bailey Lumber & Supply Co., a company "that was involved as a settlement distributor in class settlements as late as April 2011." R. Doc. 22761 at 2. Significantly, Defendants explain that Mr. Bailey was personally served with pleadings in this matter. R. Doc. 22761 at 2. Defendants also note that although Mr. Christovich referred Defendants to Mr. Bailey for information about when the litigants became aware of the presence of Chinese drywall in the affected property, Mr. Bailey failed to attend two depositions. Accordingly, Defendants argue that Plaintiff has been unable to "rebut the clear indication that [Bailey] knew of the Chinese drywall." R. Doc. 22761 at 3.

Summary judgment is inappropriate at this time. Although Defendants have successfully demonstrated that Mr. Bailey knew about Chinese drywall throughout the existence of this MDL, they have not shown that Mr. Bailey knew of the presence of Chinese drywall in the affected property any earlier than claimed. Accordingly, there exists a genuine issue of material fact relevant to the disposition of this case. The resolution of this question is dependent on the testimony of the former owner, now a third-party to this case, which has not yet been obtained. Accordingly, the Court will deny the motion but notes that the issue may be better resolved by the transferor court by summary judgment if additional information is discovered.

> d.   The Bogards [R. Doc. 22683]

The Bogards' claims arise from the alleged presence of Chinese drywall in a property located at 451 Linda Drive, Biloxi, Mississippi. Ronald Bogard filed his claims on June 7, 2016. Accordingly, these claims are untimely if the Bogards knew, or should have known about the presence of Chinese drywall in the property before June 7, 2013.

Defendants argue that the Bogards discovered their injury when their grandchildren, who were living in the property, fell ill sometime in, or before, 2012. In Mississippi, the statute of limitation begins when a plaintiff discovers their injury, regardless of whether or not he specifically understands the cause of the injury. *Ridgway Lane & Assocs., Inc. v. Watson*, 189 So. 3d 626, 629 (Miss. 2016) ("This Court has held that causes of action accrue "upon discovery of the injury, not discovery of the injury and its cause." (quoting *Angle v. Koppers, Inc.*, 42 So. 3d 1, 5 (Miss. 2010) (emphasis in original)). Where a plaintiffs' injury manifests solely as a peculiar smell or a few appliance failures, the Court has denied summary judgment on the grounds that the trier of fact is in the best position to determine whether the plaintiff reasonably should have known he was injured. R. Doc. 22615 at 30–31. In contrast here, the Bogards knew that some environmental

30

problem was wreaking havoc on their grandchildren's health and underwent an ultimately unsuccessful professional home inspection to determine the cause of the problem. The Court concludes that the Bogards clearly had knowledge of an injurious environmental problem sufficient to put them on notice of their injury and trigger the running of the statue of limitations.

Furthermore, Defendants argue the Bogards' claims are also barred by the doctrine of assumption of the risk. Under Mississippi law, a plaintiff who assumes the risk of his injuries is precluded from recovering from an otherwise liable manufacturer or seller. Assumption of the risk precludes liability where the plaintiff "freely and voluntarily chose to encounter a dangerous condition." *Green v. Allendale Planting Co.*, 954 So. 2d 1032, 1041 (Miss. 2007). The question of whether a plaintiff assumed a particular risk is typically a question for the jury, but "in certain circumstances the facts may show as a matter of law that the plaintiff understood and appreciated the danger." *Herod v. Grant*, 262 So. 2d 781, 783 (Miss. 1972). This occurs when the evidence demonstrates that the plaintiff appreciated the particular danger or "that the danger was so obvious that he must be taken to have known it." *Id.* A defendant relying on the defense of assumption of the risk generally must demonstrate the following:

> (1)[k]nowledge on the part of the injured party of a condition inconsistent with his safety; (2) appreciation by the injured party of the danger in the condition; and (3) a deliberate and voluntary choice on the part of the injured party to expose his person to that danger in such a manner as to register assent on the continuance of the dangerous condition.

*Green v. Allendale Planting Co.*, 954 So. 2d 1032, 1041–42 (Miss. 2007) (quoting *Herod*, 262 So. 2d at 782) (alteration in original)).

The Court concludes that these claims are also barred by assumption of the risk. Specifically, the Bogards purchased the property from their daughter in 2013 despite their knowledge that the home contained an "environmental problem" that caused their grandchildren

to suffer adverse physical reactions. Accordingly, it is clear that they had knowledge that a "condition inconsistent with [their] safety" existed on the premises and that the condition posed a danger. *See Herod*, 262 So. 2d at 782. Further, their decision to purchase the home despite this knowledge constitutes "a deliberate and voluntary choice" to expose themselves to the hazardous condition. *Id.*

      e.   Rachel Schoerner [R. Doc. 22685]

Rachel Schoerner's claims arise from the alleged presence of Chinese drywall in a property located at 451 Linda Drive, Biloxi, Mississippi. She filed her claims on October 7, 2019. R. Docs. 22334, 22357, 22358. Accordingly, her claims are untimely if she knew, of should have known, about the presence of Chinese drywall in the property before October 7, 2016.

Defendants argue Schoerner's claims are barred because she had actual knowledge of the presence of Chinese drywall in her property more than three years before filing her claims and because she "assign[ed] her entire interest in all compensable claims in the existing Bennett case . . . both pecuniary and non-pecuniary in nature, for all damages that may have accrued since the sale of this property in 2013." R. Doc. 22685-5. Specifically, the Assignment provides, "Buyers . . . possess a one hundred percent (100%) interest in all remediation-related compensatory claims possessed by Seller at the time of sale in 2013." R. Doc. 22685-5. Plaintiff has not opposed the motion or otherwise contested this fact. Based on the clear and unambiguous language of the Assignment, the Court concludes that summary judgment is appropriate because Plaintiff has assigned the claims she attempts to pursue in this action.

**F.  Texas Claims**

*1.  Statute of Limitations under Texas Law*

Under Texas law, claims for negligence are governed by a two-year of statute of limitations. *Haney v. Purcell Co.*, 796 S.W. 2d 782, 785 (Tex. App. 1990). With respect to property damage, Texas courts apply a "discovery rule" under which the statute of limitations begins to run when the plaintiff discovers, or should have discovered the injury, regardless of whether the full extent of the injury is ascertainable. *See id.*; *Hues v. Warren Petroleum Co.*, 814 S.W. 2d 526, 529 (Tex. App. 1991). Product liability claims, as well as claims arising under the Texas Deceptive Trade Practices-Consumer Protection Act ("DTPA"), are also subject to a two-year statute of limitations. *See Vine v. PLS Fin. Servs., Inc.*, No. EP-16-CV-31-PRM, 2018 WL 456031, at *5 (W.D. Tex. Jan. 16, 2018); *Heckel v. Allen Samuels Chevrolet*, No. 14-07-00254-CV, 2008 WL 4308406, at *4 (Tex. App. Aug. 28, 2008). In contrast, warranty-based claims are subject to a four-year statute of limitations that begins to run when the breach occurs. *See Pecan Valley Nut Co. v. E.I. du Pont de Nemours & Co.*, 15 S.W. 3d 244, 249 (Tex. App. 2000).

2. *Discussion*

a. The Armstrongs [R. Doc. 22633]

The Armstrongs' claims arise from the alleged presence of Chinese drywall in their property located at 418 Sandstone Creek, Dickinson, Texas. R. Doc. 22633-1 at 3. The Armstrongs filed their claims on January 31, 2016. Accordingly, under Texas law, the Armstrongs' claims are untimely if they knew of, or should have known, of the presence of Chinese drywall in their property prior to January 2014 (for their negligence, property damage, personal injury, and DTPA claims) or January 2012 (for their breach of warranty claims).

In Ms. Armstrong's deposition, she conceded that she had received a letter in 2012 from Richmond American Homes, discussing the company's identification of Chinese drywall in the property in 2011. The letter, which Defendants have also attached to their brief, indicates that in

August 2011, Richmond American Homes inspected the home, "uncovered evidence indicating certain independent subcontractors installed defective Chinese-manufactured drywall" in the home, and "offered to repair [the] home provided [the Armstrongs] with a home repair agreement." R. Doc. 22633-5 at 14. The letter, dated June 19, 2012, specifically mentions the Chinese drywall multi-district litigation. R. Doc. 22633-5 at 16. Ms. Armstrong explained that her husband rejected the remediation offer. R. Doc. 22633-5 at 15. Based upon the contents of Richmond American Homes' letter and the Armstrongs' receipt of it, as well as the fact that a Chinese drywall inspection was conducted on the premises, the Court concludes that the Armstrongs' had actual notice of the presence of Chinese drywall in their home by August 2011. Moreover, Plaintiffs have not opposed the motion or otherwise challenged the information contained therein. Accordingly, summary judgment is granted.

## IV.    CONCLUSION

Considering the foregoing,

**IT IS ORDERED** that Defendants' Motion for Summary Judgment on Claims Asserted by Carl and Lynn Russell and Ronald and Patricia Stanfa, R. Doc. 22613, is **DENIED** in part and **GRANTED** in part. It is **GRANTED** with respect to Ronald and Patricia Stanfa's claims. It is **DENIED** with respect to Carl and Lynn Russell's claims.

**IT IS FURTHER ORDERED** that Defendants' Motion for Summary Judgment on Claims Asserted by R & S Properties, LLC, R. Doc. 22644, is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendants' Motion for Summary Judgment on Claims Asserted by Consuelo Burgos, Johnny Tyler, and Carl and Ellen Moore, R. Doc. 22677, is **GRANTED**.

34

**IT IS FURTHER ORDERED** that Defendants' Motion for Summary Judgment on Claims Asserted by Michael and Alice Ginart, R. Doc. 22628, is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendants' Motion for Summary Judgment on Claims Asserted by Ronald and Bernice Pendleton, R. Doc. 22637, is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendants' Motion for Summary Judgment on Claims Asserted by Gerald Levin, R. Doc. 22679, is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendants' Motion for Summary Judgment on Claims Asserted by Jay Wang and Ruby Xi, R. Doc. 22664 is **GRANTED** in part and **DENIED** in part. It is **GRANTED** with respect to Wang and Xi's non-LPLA and redhibition claims. It is **DENIED** in all other respects.

**IT IS FURTHER ORDERED** that Defendants' Motion for Summary Judgment on Claims Asserted by William Foreman, R. Doc. 22640, is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendants' Motion for Summary Judgment on Claims Asserted by Dung Nguyen, R. Doc. 22641, is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendants' Motion for Summary Judgment on Claims Asserted by Michael Christovich and Carlisle Place, LLC, R. Doc. 22645, is **GRANTED** in part and **DENIED** in part. It is **GRANTED** with respect to Carlisle Place, LLC. It is **DENIED** with respect to Michael Christovich.

**IT IS FURTHER ORDERED** that Defendants' Motion for Summary Judgment on Claims Asserted by Ronald and Leslie Bogard, R. Doc. 22683, is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendants' Motion for Summary Judgment on Claims Asserted by Rachel Schoerner, R. Doc. 22685, is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendants' Motion for Summary Judgment on Claims Asserted by Toshonia and Martin Armstrong, R. Doc. 22633, is **GRANTED**.

New Orleans, Louisiana this 11th day of May, 2020.

Eldon E. Fallon
United States District Judge

36