

E-SERVICE
65886314
Aug 28 2020
04:25PM
File & ServeXpress

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

IN RE:  CHINESE-MANUFACTURED DRYWALL     *
PRODUCTS LIABILITY LITIGATION     *
                                           *          **CIVIL ACTION**
                                           *
                                           *          **MDL NO. 2047**
                                           *
                                           *          **SECTION L (5)**
THIS DOCUMENT RELATES TO:             *
*Elizabeth Bennett, et al. v. Gebr. Knauf*       *
*Verwaltungsgesellschaft, KG, et al.*, No. 14-2722    *

**ORDER & REASONS**

Pending before the Court are Defendants' Motions for Summary Judgment on Claims Asserted by 1329 Gum, Jackson Land Trust, R. Doc. 22646, and Jeremy Jordan, R. Doc. 22665. Plaintiffs have not opposed the motions, and Defendants have filed a reply, R. Doc. 22810. Having considered the applicable law and the parties' arguments, the Court now rules as follows.

**I.      BACKGROUND**

From 2004 through 2006, the housing boom in Florida and rebuilding efforts necessitated by Hurricanes Rita and Katrina led to a shortage of construction materials, including drywall. As a result, drywall manufactured in China was brought into the United States and used to construct and refurbish homes in coastal areas of the country, notably the Gulf Coast and East Coast. Sometime after the installation of the Chinese drywall, homeowners began to complain of emissions of foul-smelling gas, the corrosion and blackening of metal wiring, surfaces, and objects, and the breaking down of appliances and electrical devices in their homes. *See In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, 894 F. Supp. 2d 819, 829–30 (E.D. La. 2012), *aff'd*, 742 F.3d 576 (5th Cir. 2014). Many of these homeowners also began to complain of various physical afflictions believed to be caused by the Chinese drywall.

Case 2:09-md-02047-EEF-MBN Document 22947 Filed 03/28/20 Page 2 of 8

These homeowners then began to file suit in various state and federal courts against homebuilders, developers, installers, realtors, brokers, suppliers, importers, exporters, distributors, and manufacturers who were involved with the Chinese drywall. As a result, many homebuilders also filed suit seeking to recoup their damages. Because of the commonality of facts in the various cases, this litigation was designated as a multidistrict litigation. Pursuant to a Transfer Order from the United States Judicial Panel on Multidistrict Litigation on June 15, 2009, all federal cases involving Chinese drywall were consolidated for pretrial proceedings in MDL 09-2047 before this Court. Since that date, numerous cases have been consolidated, involving thousands of individual claims; over 20,000 documents have been entered into the record, millions of documents have been exchanged in discovery, depositions have been taken in the United States and in China, and over thirty Pretrial Orders have been issued; the Court has appointed steering committees and liaison counsel for plaintiffs, homebuilders, insurers, installers, and manufacturers, and it has presided over monthly status conferences, hearings, and several bellwether trials.

The Chinese drywall at issue was largely manufactured by two groups of defendants: (1) the Knauf Entities and (2) the Taishan Entities. The litigation has focused upon these two entities and their downstream associates and has proceeded on strikingly different tracks for the claims against each group.

## A. The Knauf Defendants

The Knauf Entities are German-based, international manufacturers of building products, including drywall, whose Chinese subsidiary, Knauf Plasterboard (Tianjin) Co., Ltd. ("KPT"), advertised and sold its Chinese drywall in the United States. The Knauf Entities are named defendants in numerous cases consolidated with the MDL litigation and litigation in state courts.

The Knauf Entities first entered their appearance in the MDL litigation on July 2, 2009. Thereafter, the Court presided over a bellwether trial in *Hernandez v. Knauf Gips KG*, Case No. 09-6050, involving a homeowner's claims against KPT for defective drywall. The Court found in favor of the plaintiff family in *Hernandez*, issued a detailed Findings of Fact and Conclusions of Law, and entered a Judgment in the amount of $164,049.64, including remediation damages in the amount of $136,940.46—which represented a remediation cost of $81.13 per square foot based on the footprint square footage of the house.

Subsequently, the Knauf Entities agreed to institute a pilot remediation program utilizing the remediation protocol formulated by the Court from the evidence in *Hernandez*. The Knauf pilot remediation program is now completed and has remediated more than 2,200 homes containing KPT Chinese drywall using the same general protocol. At the Court's urging, the parties began working together to monetize this program and make it available to a broader class of plaintiffs.

On December 20, 2011, the Knauf Entities and the PSC entered into a global, class Settlement Agreement ("Knauf Settlement Agreement"), which was designed to resolve all Knauf-related, Chinese drywall claims. In addition to the Knauf Settlement Agreement and after a jury trial in a bellwether case, numerous defendants in the chain-of-commerce with the Knauf Entities have entered into class settlement agreements, the effect of which settles almost all of the Knauf Entities' chain-of-commerce litigation. The total amount of the Knauf Settlement is approximately $1.1 billion. Thereafter, additional claims were filed against Knauf and others.

## B. The *Bennett* Matter

The instant matter is a purported class action filed on November 13, 2014 by Elizabeth Bennett in the Northern District of Alabama. [1] Ms. Bennet raised claims on her own behalf and on the behalf of a nationwide class of similarly situated homeowners who allegedly suffered damages due to the presence of defective Chinese drywall in their homes. The Plaintiffs raised claims against the Knauf Entities for negligence, negligence per se, strict liability, breach of express and/or implied warranty, redhibition, violations of the Louisiana Products Liability Act, private nuisance, negligent discharge of a corrosive substance, unjust enrichment, violations of consumer protection laws, and equitable and injunctive relief and medical monitoring with respect to the manufacture of allegedly defective Chinese drywall. In January 2015, the Judicial Panel on Multidistrict Litigation transferred the case to the Eastern District of Louisiana and consolidated it with the *In re Chinese Manufactured Drywall Liability Litigation*, MDL 09-2047, currently pending before this Court.

On October 31, 2019, the Court granted leave for Plaintiffs to add several new Plaintiffs to the action. R. Doc. 22357. On that date, the Court also extended many of the Case Management Order's deadlines. R. Doc. 22357. With discovery well underway, the Knauf Defendants have begun to file dispositive motions targeting the claims of several individual plaintiffs.

---

[1] On January 22, 2020, the Court granted Defendant's Motion to Deny Class Certification, finding that the predominance requirement of Rule 23(b)(3) was not satisfied. R. Docs. 22524, 22528. Specifically, the Court noted that the variety in the individual claims, which included personal injury and property damage claims, theories of liability, applicable state laws and defenses, and different damage calculations precluded the finding of predominance necessary to warrant class certification.

## II.     PENDING MOTION

### A. Defendant's Motion for Summary Judgment on Claims Asserted by 1329 Gum, Jackson Land Trust [R. Doc. 22646]

Defendants seek summary judgment of the claims asserted by 1329 Gum, Jackson Land Trust ("1329 Gum"). R. Doc. 22646. 1329 Gum, Jackson Land Trust's claims arise from the alleged presence of Chinese drywall in a property located at 1329 Gum Street, Ocean Spring, Mississippi. Daniel Adrian Triplett is a Trustee and Beneficiary of 1329 Gum. R. Doc. 22646-1 at 3. 1329 Gum lost ownership of the property through foreclosure in 2019. R. Doc. 22646-1 at 4. Defendants argue that because foreclosure divests the prior owner of any ownership interest in the property, summary judgment is warranted. R. Doc. 22646-1 at 6.

### B. Defendant's Motion for Summary Judgment on Claims Asserted by Jeremy Jordan [R. Doc. 22665]

Defendants seek summary judgment of the claims asserted by Jeremy Jordan. R. Doc. 22665. Jeremy Jordan's claims arise from the alleged presence of Chinese drywall in a property located at 11592 Azalea Trace, Gulfport, Mississippi. R. Doc. 22665-1 at 3. Defendants argue Jordan's claims are barred because his interest in the property was extinguished when the property was sold in foreclosure. R. Doc. 22665-1 at 5.

## III.    LAW & ANALYSIS

### A. Legal Standard – Motion for Summary Judgment

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). When assessing whether a dispute as to any material fact exists, the Court considers "all of

Case 2:09-md-02047-EEF-MBN Document 22947 Filed 05/28/20 Page 6 of 8

the evidence in the record but refrains from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008).

Under Federal Rule of Civil Procedure 56(c), the moving party bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 322. When the moving party has met its Rule 56(c) burden, "[t]he non-movant cannot avoid summary judgment . . . by merely making 'conclusory allegations' or 'unsubstantiated assertions.'" *Calbillo v. Cavender Oldsmobile, Inc.*, 288 F.3d 721, 725 (5th Cir. 2002) (quoting *Little*, 37 F.3d at 1075). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986). All reasonable inferences are drawn in favor of the nonmoving party, but a party cannot defeat summary judgment with conclusory allegations or unsubstantiated assertions. *Little*, 37 F.3d at 1075. A court ultimately must be satisfied that "a reasonable jury could not return a verdict for the nonmoving party." *Delta*, 530 F.3d at 399.

## B. Discussion

Defendants' motions were set for submission on May 13, 2020; accordingly, under Local Rule 7.5, Plaintiffs' oppositions were due by May 5, 2020. No oppositions were filed by that date. However, the Court may not grant Defendants' motions for summary judgment "merely because [they are] unopposed." *Bustos v. Martini Club Inc.*, 599 F.3d 458, 468 (5th Cir. 2010). Indeed, "[t]he movant has the burden of establishing the absence of a genuine issue of material fact and, unless he has done so, the court may not grant the motion, regardless of whether any response was

filed." *Hetzel v. Bethlehem Steel Corp.*, 50 F.3d 360, 362 (5th Cir. 1995). However, the Court does not, "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts*," Little v. Liquid Air Corp.*, 37 F.3d at 1075, nor need it "sift through the record in search of evidence to support a party's opposition," *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994).

Under Mississippi law, a debtor has legal interest in his property until default, at which time the mortgagee acquires title to the property and the right of possession, subject to the debtor's right to redeem the property prior to a foreclosure sale. A valid foreclosure sale, however, divests the debtor of legal and equitable interest in the foreclosed property. *Moore v. Marathon Asset Mgmt., LLC*, 973 So. 2d 1017, 1021 (Miss. Ct. App. 2008) (holding that a debtor was divested of all interest in a foreclosed property when the redemption period expired); *see also Pepper v. Homesales, Inc.*, No. CIV 1:08CV344-HSOJMR, 2009 WL 544141, at *5 (S.D. Miss. Mar. 3, 2009) (holding that a valid foreclosure sale "extinguished any rights Plaintiff had in the Property"); *Peoples Bank & Tr. Co. & Bank of Mississippi v. L & T Developers, Inc.*, 434 So. 2d 699, 708 (Miss.), *judgment corrected sub nom. Peoples Bank & Tr. Co. v. L. & T. Developers, Inc.*, 437 So. 2d 7 (Miss. 1983) (noting that a perfect foreclosure "cuts off the equity of redemption and any other rights in and to the property").

Here, it is undisputed that Jeremy Jordan and 1329 Gum's properties were sold in foreclosure in 2018 and 2019, respectively. R. Docs. 22665-2 at 10, 22646-5 at 11–12. Under Mississippi law, these Plaintiffs lost any interest in these Affected Properties at the time of foreclosure, and accordingly do not have standing to pursue the instant claims.

## IV.    CONCLUSION

Based on the foregoing,

**IT IS ORDERED** that Defendants' Motion for Summary Judgment on Claims Asserted by 1329 Gum, Jackson Land Trust, R. Doc. 22646, is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendants' Motion for Summary Judgment on Claims Asserted by Jeremy Jordan, R. Doc. 22665, is **GRANTED**.


New Orleans, Louisiana this 28th day of August 2020.


_____

Eldon E. Fallon
United States District Judge