UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | * <br> * <br> *     **CIVIL ACTION** <br> * <br> *     **MDL NO. 2047** <br> * <br> *     **SECTION L (5)** <br> * |
| **THIS DOCUMENT RELATES TO:** <br> *Elizabeth Bennett, et al. v. Gebr. Knauf Verwaltungsgesellschaft, KG, et al.*, No. 14-2722 | * <br> * <br> * |

## ORDER & REASONS

Pending before the Court is Defendant's Omnibus Motion for Summary Judgment as to the claims asserted by Jason Arnold, Mardechria Charles, Feng Hu and Simin Liu, Mathew and Susan Issman, Karen and Kerry McCann, Nicole and Michael Norris, Mark and Kimberlie Perez, Wayne and Kristal Province, Estate of Veronica Rosenaur, Chien Van Pham and Bich Nguyen, and Xiaochun Xi and Jinjian Wang. R. Doc. 22631. Plaintiffs oppose the motion, R. Doc. 22739, and Defendants have filed a reply, R. Doc. 22773. Having considered the applicable law and the parties' arguments, the Court now rules as follows.

I.  **BACKGROUND**

From 2004 through 2006, the housing boom in Florida and rebuilding efforts necessitated by Hurricanes Rita and Katrina led to a shortage of construction materials, including drywall. As a result, drywall manufactured in China was brought into the United States and used to construct and refurbish homes in coastal areas of the country, notably the Gulf Coast and East Coast. Sometime after the installation of the Chinese drywall, homeowners began to complain of emissions of foul-smelling gas, the corrosion and blackening of metal wiring, surfaces, and objects, and the breaking down of appliances and electrical devices in their homes. *See In re Chinese-*

*Manufactured Drywall Prods. Liab. Litig.*, 894 F. Supp. 2d 819, 829–30 (E.D. La. 2012), *aff'd*, 742 F.3d 576 (5th Cir. 2014). Many of these homeowners also began to complain of various physical afflictions believed to be caused by the Chinese drywall.

These homeowners then began to file suit in various state and federal courts against homebuilders, developers, installers, realtors, brokers, suppliers, importers, exporters, distributors, and manufacturers who were involved with the Chinese drywall. As a result, many homebuilders also filed suit seeking to recoup their damages. Because of the commonality of facts in the various cases, this litigation was designated as a multidistrict litigation. Pursuant to a Transfer Order from the United States Judicial Panel on Multidistrict Litigation on June 15, 2009, all federal cases involving Chinese drywall were consolidated for pretrial proceedings in MDL 09-2047 before this Court. Since that date, numerous cases have been consolidated, involving thousands of individual claims; over 20,000 documents have been entered into the record, millions of documents have been exchanged in discovery, depositions have been taken in the United States and in China, and over thirty Pretrial Orders have been issued; the Court has appointed steering committees and liaison counsel for plaintiffs, homebuilders, insurers, installers, and manufacturers, and it has presided over monthly status conferences, hearings, and several bellwether trials.

The Chinese drywall at issue was largely manufactured by two groups of defendants: (1) the Knauf Entities and (2) the Taishan Entities. The litigation has focused upon these two entities and their downstream associates and has proceeded on strikingly different tracks for the claims against each group.

### A. The Knauf Defendants

The Knauf Entities are German-based, international manufacturers of building products, including drywall, whose Chinese subsidiary, Knauf Plasterboard (Tianjin) Co., Ltd. ("KPT"),

2

advertised and sold its Chinese drywall in the United States. The Knauf Entities are named defendants in numerous cases consolidated with the MDL litigation and litigation in state courts.

The Knauf Entities first entered their appearance in the MDL litigation on July 2, 2009. Thereafter, the Court presided over a bellwether trial in *Hernandez v. Knauf Gips KG*, Case No. 09-6050, involving a homeowner's claims against KPT for defective drywall. The Court found in favor of the plaintiff family in *Hernandez*, issued a detailed Findings of Fact and Conclusions of Law, and entered a Judgment in the amount of $164,049.64, including remediation damages in the amount of $136,940.46—which represented a remediation cost of $81.13 per square foot based on the footprint square footage of the house.

Subsequently, the Knauf Entities agreed to institute a pilot remediation program utilizing the remediation protocol formulated by the Court from the evidence in *Hernandez*. The Knauf pilot remediation program is now completed and has remediated more than 2,200 homes containing KPT Chinese drywall using the same general protocol. At the Court's urging, the parties began working together to monetize this program and make it available to a broader class of plaintiffs.

On December 20, 2011, the Knauf Entities and the PSC entered into a global, class Settlement Agreement ("Knauf Settlement Agreement"), which was designed to resolve all Knauf-related, Chinese drywall claims. In addition to the Knauf Settlement Agreement and after a jury trial in a bellwether case, numerous defendants in the chain-of-commerce with the Knauf Entities have entered into class settlement agreements, the effect of which settles almost all of the Knauf Entities' chain-of-commerce litigation. The total amount of the Knauf Settlement is approximately $1.1 billion. Thereafter, additional claims were filed against Knauf and others.

3

### B. The Bennett Matter

The instant matter is a purported class action filed on November 13, 2014 by Elizabeth Bennett in the Northern District of Alabama.[1] Ms. Bennet raised claims on her own behalf and on the behalf of a nationwide class of similarly situated homeowners who allegedly suffered damages due to the presence of defective Chinese drywall in their homes. The Plaintiffs raised claims against the Knauf Entities for negligence, negligence per se, strict liability, breach of express and/or implied warranty, redhibition, violations of the Louisiana Products Liability Act, private nuisance, negligent discharge of a corrosive substance, unjust enrichment, violations of consumer protection laws, and equitable and injunctive relief and medical monitoring with respect to the manufacture of allegedly defective Chinese drywall. In January 2015, the Judicial Panel on Multidistrict Litigation transferred the case to the Eastern District of Louisiana and consolidated it with the *In re Chinese Manufactured Drywall Liability Litigation*, MLD 09-2047, currently pending before this Court.

On October 31, 2019, the Court granted leave for Plaintiffs to add several new Plaintiffs to the action. R. Doc. 22357. The case now involves over one hundred affected properties. On that date, the Court also extended many of the Case Management Order's deadlines. R. Doc. 22357. With discovery well underway, the Knauf Defendants have begun to file dispositive motions targeting the claims of several individual plaintiffs.

---

[1] On January 22, 2020, the Court granted Defendant's Motion to Deny Class Certification, finding that the predominance requirement of Rule 23(b)(3) was not satisfied. R. Docs. 22524, 22528. Specifically, the Court noted that the variety in the individual claims, which included personal injury and property damage claims, theories of liability, applicable state laws and defenses, and different damage calculations precluded the finding of predominance necessary to warrant class certification.

4

## II. PENDING MOTION

Defendants seek summary judgment of the claims asserted by Jason Arnold, Mardechria Charles, Feng Hu and Simin Liu, Mathew and Susan Issman, Karen and Kerry McCann, Nicole and Michael Norris, Mark and Kimberlie Perez, Wayne and Kristal Province, Estate of Veronica Rosenaur, Chien Van Pham and Bich Nguyen, and Xiaochun Xi and Jinjian Wang. R. Doc. 22631. Defendants argue that these claims are all barred under the subsequent purchaser doctrine because these plaintiffs purchased the affected properties after the installation of Chinese drywall without receiving an assignment of the personal right to sue for damages from the seller.

Plaintiffs oppose the motion. R. Doc. 22739. Plaintiffs argue that their claims are valid despite the application of the subsequent purchaser doctrine because Chinese drywall "is to be treated in a fashion similar to asbestos claims, which are not damage to real property and therefore don't require an assignment or subrogation of rights like mineral leases, leasing rights, of defective title issues." *Id*. at 12. Further, Plaintiffs explain that several Louisiana Plaintiffs have recently secured an assignment of rights allowing them to maintain the instant action. *Id*. at 15.

Plaintiffs argue that the installation of defective Chinese drywall in a premise is distinguishable from injury to land and suggest that the subsequent purchaser doctrine only applies to factual scenarios involving "mineral rights, mineral leases, subsurface contamination, or deed of trust deficiencies." R. Doc. 22739 at 10. Plaintiffs argue that this Court has previously considered whether Chinese drywall constitutes an injury to land or a defective product and ruled that it was the latter. Citing *In re* Chinese Manufactured Drywall Prod. Liab. Litig., 680 F. Supp. 2d 780 (E.D. La. 2010), Plaintiffs stress that this Court considered whether the economic loss rule applied to plaintiffs who purchased the affected properties after the defective drywall was installed.

5

Case 2:09-md-02047-EEF-MBN Document 22941 Filed 08/23/20 Page 6 of 14

Ultimately, Plaintiffs argue that this Court has already decided that plaintiffs, as end users of a product, have a right to pursue tort claims against the Knauf Defendants.

In reply, Defendants argue that the opposition "attempts to circumvent the straightforward application of the [subsequent purchaser] doctrine and this Court's prior ruling by conflating and confusing legal theories, personal rights and causes of action." R. Doc. 22773 at 3. Specifically, Defendants point out that this Court's prior ruling deals with the economic loss rule, not the subsequent purchaser doctrine, and that nothing about the prior analysis precludes the subsequent purchaser rule's applicability here. *Id.* at 5–6. Additionally, Defendants contend the newly-executed assignments are ineffective under Louisiana law and in violation of the Court's CMOs. *Id.* at 7.

### III. LAW & ANALYSIS

#### A. Legal Standard – Motion for Summary Judgment

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). When assessing whether a dispute as to any material fact exists, the Court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008).

Under Federal Rule of Civil Procedure 56(c), the moving party bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*,

6

Case 2:09-md-02047-EEF-MBN Document 22941 Filed 08/23/20 Page 7 of 14

477 U.S. at 322. When the moving party has met its Rule 56(c) burden, "[t]he non-movant cannot avoid summary judgment . . . by merely making 'conclusory allegations' or 'unsubstantiated assertions.'" *Calbillo v. Cavender Oldsmobile, Inc.*, 288 F.3d 721, 725 (5th Cir. 2002) (quoting *Little*, 37 F.3d at 1075). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986). All reasonable inferences are drawn in favor of the nonmoving party, but a party cannot defeat summary judgment with conclusory allegations or unsubstantiated assertions. *Little*, 37 F.3d at 1075. A court ultimately must be satisfied that "a reasonable jury could not return a verdict for the nonmoving party." *Delta*, 530 F.3d at 399.

B. Discussion

Under Louisiana law, "an owner of property has no right or actual interest in recovering from a third party for damage which was inflicted on the property before his purchase, in the absence of an assignment or subrogation of rights belonging to the owner of the property when the damage was inflicted." *Eagle Pipe and Supply, Inc. v. Amerada Hess Corp.* 2010-2267 (La. 10/25/11), 79 So.3d 246, 256-57 (La. 2011). This concept, known as the subsequent purchaser doctrine, imagines that damage to property injures an owner's real interest in that property, creating a personal right to sue the offending tortfeasor. *Guilbeau v. Hess Corporation*, 854 F.3d 310, 312 (5th Cir. 2017). In other words, where damage was inflicted before the subsequent purchaser had any legal interest in the property, she did not sustain the injury, and therefore, has no personal right of action against the tortfeasor. *See Clark v. J.L. Warner & Co.*, 6 La. Ann. 408 (1851) ("[T]he reparation must be made to him who suffered the injury."). The property owner's personal right is not transferable without an express assignment or subrogation. *Id.*

7

The doctrine applies regardless of whether the damage is apparent or not, although the distinction has bearing on the available remedy. In the case of apparent property damage, the purchaser is presumed to have had knowledge of the condition and negotiated a reduced sale price accordingly. In contrast, when the damage is not apparent, a cause of action against the seller exists "for rescission of the sale or reduction of the sale price." *Boone v. Conoco Phillips Co.*, 2013-1196 (La. App. 3 Cir. 5/7/14), 139 So. 3d 1047, 1054.

A straightforward application of the subsequent purchaser doctrine compels the conclusion that the claims targeted by the instant motion are barred, as Plaintiffs seek to recover for property damage caused by the installation of defective drywall prior to the purchase of the respective properties. Plaintiffs' attempt to circumvent the application of this rule by citing the Court's decision regarding the economic loss rule in *In re* Chinese Manufactured Drywall Prod. Liab. Litig., 680 F. Supp. 2d 780, 783 (E.D. La. 2010) is unavailing. In that opinion, the Court considered the applicability of the economic loss rule, pursuant to which a plaintiff cannot recover in tort for damages caused to a defective product itself. *In re* Chinese Manufactured Drywall Prod. Liab. Litig., 680 F. Supp. 2d at 783. In that ruling, the Court held that the economic loss rule did not bar the plaintiffs' claims because the defective drywall damaged not the drywall itself but the whole house in which it was located in addition plaintiffs' health. *Id*.

Plaintiffs' reliance on this prior MDL ruling is irrelevant, as this motion pertains to the subsequent purchaser doctrine, not the economic loss rule. In effect, the prior ruling was concerned with the types of claims that could be brought, whereas this motion involves who is entitled to bring them. Further, while the application of the economic loss rule turns on whether the property damage is sustained by the defective product itself or "other property," the subsequent purchaser doctrine makes no such distinction. The subsequent purchaser rule is clear: the right to recover for

8

damage to real property inures to the personal benefit of the property owner at the time the damage was inflicted and a subsequent purchaser may not exercise that right without an assignment. *See Eagle Pipe*, 79 So.3d at 256–57.

The fact that the Court compared Chinese drywall to asbestos in its prior ruling is also of no moment because the analogy was drawn specifically for the purpose of determining whether Chinese drywall—which, like asbestos, functioned as intended but nevertheless caused personal injuries and property damage—caused damage to itself or to "other property." The asbestos analogy served to bolster the conclusion that tort claims for economic losses were cognizable in the MDL. Further, to the extent Plaintiffs now argue the Court should continue to treat Chinese drywall "in a fashion similar to asbestos claims, which are not damage to real property and therefore don't require an assignment or subrogation of rights like mineral rights," R. Doc. 22739 at 12, Plaintiffs overlook the undisputed fact that claims *are all* premised on damage to real property.

Essentially, Plaintiffs appear to suggest that the subsequent purchaser doctrine is incompatible with product liability claims. The Court disagrees because property damage and products liability claims are not mutually exclusive. Here, a defective product allegedly caused the property damage at issue. Although the Louisiana Products Liability Act ("LPLA"), which is the exclusive theory of liability applicable to the Louisiana Plaintiffs, provides a cause of action for the ultimate consumer of a product despite the lack of privity with the product's manufacturer, the law does nothing to abrogate the effect of the subsequent purchaser doctrine. Indeed, if it did, a manufacturer could be exposed to myriad claims stemming from the same tortious act resulting in the same ensuing damage inflicted on the same property. Accordingly, limiting the doctrine when a defective product causes property damage would defeat the basic tenant of Louisiana law that

9

injury to real property creates a real right in favor of the property's owner at the time the damage is inflicted. As explained above, Louisiana law does not prevent a subsequent purchaser from exercising these rights; it merely requires that the subsequent purchaser be expressly assigned or subrogated those rights before doing so.

Having determined that the subsequent purchaser doctrine is applicable, the Court now considers whether any Plaintiffs have been expressly assigned the rights they now exercise. In *Eagle Pipe and Supply, Inc. v. Amerada Hess Corp.*, the Louisiana Supreme Court concluded that the following language, included in the act of sale, did not constitute an express assignment or subrogation:

> [the sellers] do by these presents sell, transfer and deliver, with full guarantee of title and free from all encumbrances, and with full subrogation to all their rights and action of warranty against previous owners . . .

79 So. 3d at 281. Similarly in *Prados v. South Central Bell Telephone Co.*, the court found that an act of sale containing similar language did not constitute an express subrogation because it was "directed to the rights and actions of warranty against previous owners," and did not mention the specific cause of action at issue or the right to seek damages. 329 So. 2d 744, 750 (La. 1975).

The Court has reviewed the relevant provisions of the acts of sale and concludes that these plaintiffs were not expressly assigned or subrogated these rights. For example, the Cash Sale conveying the property to Plaintiffs Feng Hu and Simin Liu contained the following provisions:

> Vendor does, by these presents grant, bargain, sell, convey, transfer, set over, assign, abandon and deliver, with all legal warranties and with full substitution and subrogation in and to all rights and actions of warranty which Vendor has or may have against all preceding owners and vendors [unto the Buyer] . . . .

R. Doc. 22631-7.

The sale documents of all other Plaintiffs targeted in this motion contain similar, if not identical, provisions.[2] This language is strikingly similar to that in *Eagle Pipe* and *Prados*, quoted above. Because these acts of sale focus on the buyer's rights against former owners and proprietors, specifically with respect to rights of warranty, rather than on third parties, these do not constitute express assignments or subrogation of the personal right to sue for damages. In sum, these agreements are collectively void of any reference to the right these plaintiffs attempt to exercise in this litigation.

---

[2] Jason Arnold's Act of Sale does not mention assignments or subrogation. R. Doc. 22631-3.

Mardechria Charles's Act of Sale provides that "Seller hereby sells and delivers with full warranty of title and subrogation of all rights and actions of warranty seller may have," to the buyer. R. Doc. 22631-5.

Mathew and Susan Issman's Cash Sale document provides that "Vendor does by these presents, grant, bargain, sell, convey, transfer, assign, setover, abandon and deliver with full warranty of title and all legal warranties and with full substitution and subrogation in and to all the rights and actions of warranty which Vendor has or may have against all preceding owners and vendors" to buyer. R. Doc. 22631-9 at 1.

Karen and Kerry McCann's Cash Sale document provides that the Sellers "do by these presents, grant, bargain, sell, convey, transfer, assign, setover, abandon and deliver, with all legal warranties and with full substitution and subrogation in and to all the rights and actions of warranty which they have or may have against all preceding owners and vendors, unto" the buyer. R. Doc. 22631-11 at 1.

Nicole and Michael Norris' Cash Sale document provides that the Seller "does by these presents grant, bargain, sell, convey, transfer, assign, set over, abandon and deliver, with all legal warranties and with full substitution and subrogation in and to all the rights and actions of warranty which [seller] has or may have against all preceding owners and vendors unto" the buyers. R. Doc. 22631-13 at 1.

Mark and Kimberlie Perez's Cash Sale document provides that the Seller "does by these presents, grant, bargain, sell, assign, cnvey, transfer, set-over, abandon and deliver, with all legal warranties and with full substitution and subrogation in and to all rights and actions of warranty which seller has or may have against all preceding owners and vendors unto" the buyer. R. Doc. 22631-15 at 1.

Wayne and Kristal Province's Cash Sale document provides that "Seller does hereby sell and deliver, with full warranty of title and subrogation to all rights and actions of warranty Seller may have unto buyers." R. Doc. 22631-17 at 1.

The Estate of Veronica Rosenaur's Cash Sale document provides that "Seller(s) hereby sell and deliver with full warranty of title and subrogation to all rights and actions of warranty Seller(s) may have, unto" buyer. R. Doc. 22631-21 at 2.

Chien Van Pham and Bich Nguyen's Cash Sale document provides that "Seller does hereby sell and deliver, with full warranty of title and subrogation to all rights and actions of warranty Seller may have unto Buyers." R. Doc. 22631-17 at 1.

Xiaochun Xi and Jinjian Wang's Cash Sale document provides that Vendors "do by these presents grant, bargain, sell, convey, transfer, assign, setover, abandon and deliver with all legal warranties and with full substitution and subrogation in and to all the rights and actions of warranty which they have or may have against all preceding owners and vendors, unto" buyers. R. Doc. 22631-23

11

In a last-ditch attempt to avoid the subsequent purchaser's doctrines effects, Plaintiffs Karen and Kerry McCann, Mark and Kimberlie Perez, Wayne and Kristal Province, Estate of Veronica Rosenaur, Chien Van Pham and Bich Nguyen, and Xiaochun Xi and Jinjian Wang attach to their opposition assignments recently executed by the prior owners of the Affected Properties, transferring to Plaintiffs their right to sue in this matter. R. Doc. 22739-9.

Even if the Court were inclined to overlook Plaintiff's non-compliance with the CMO, these untimely assignments are ineffective under Louisiana law. As an initial matter, the personal right to sue may be assigned after the act of sale is executed. *See Cotton Exch. Inv. v. Xcel Air Conditioning*, No. CV 16-17543, 2019 WL 2142075, at *5 (E.D. La. May 16, 2019). Nevertheless, an assignment is effective "against the debtor only from the time the debtor has actual knowledge, or has been given notice of the assignment" and the "assignee acquires no greater rights than his assignor." *TCC Contractors, Inc. v. Hosp. Serv. Dist. No. 3 of Par. of Lafourche*, 2010-0685 (La. App. 1 Cir. 12/8/10), 52 So. 3d 1103, 1112.

It is undisputed that the time of filing, Plaintiffs had not been assigned the personal right to sue Defendants for damages related to Chinese drywall. The eleventh-hour assignments, which the Court will assume are legally valid for the purposes of this motion, do not retroactively cure this serious deficiency. *TCC Contractors, Inc. v. Hosp. Serv. Dist. No. 3 of Par. of Lafourche*, 2010-0685 (La. App. 1 Cir. 12/8/10), 52 So. 3d 1103, 1113. Notably here, Plaintiffs have not sought leave to file an amended or supplemental complaint setting forth the cause of action they are now entitled to pursue; rather, they have merely identified a new fact in opposition to a motion for summary judgment.

Further, even if Plaintiffs had sought leave to properly file their claims in light of the recent assignments, the causes of action they seek to pursue have prescribed. The Louisiana Plaintiffs'

claims are subject to a one-year prescriptive period commencing at the time the damage was discovered. La. Civ. Code art. 3492; *Bailey v. Khoury*, 04-0620, p. 10 (La. 1/20/05); 891 So. 2d 1268, 1276. These assignments were executed in March and April of 2020, and attached to Plaintiffs' opposition brief filed on April 21, 2020. This lawsuit was filed on November 14, 2020 and the operative complaint filed on May 14, 2018. R. Doc. 21334. Even assuming that the instant Plaintiffs were named for the first time in the operative complaint, the Court finds that the prescriptive period has run because more than a year has passed since these Plaintiffs initially attempted to exercise legal rights related to the discovery of Chinese drywall, albeit rights they did not at the time possess.

Of course, under Louisiana Civil Code article 3462, "[p]rescription is interrupted . . . when the obligee commences action against the obligor, in a court of competent jurisdiction and venue." La. Civ. Code art 3462. However, because Plaintiffs did not have a right of action when they originally filed suit, the initial filing cannot constitute an "action" for the purposes of interrupting prescription under article 3462. *See TCC Contractors, Inc.*, 52 So. 3d at 1116 ("Because a civil action by definition can be brought only by a person having a right of action, it stands to reason that an action instituted by a person determined to have no right of action cannot serve as an "action" sufficient to interrupt prescription."). Further, even though article 1153 provides that amended petitions arising out of the same "conduct, transaction, or occurrence" as the original pleadings "relate[] back to the date of filing the original pleading," La. Civ. Code art. 1153, an amended complaint filed to reflect the newly-executed assignments would not relate back to the initial filing because "[t]he relation back theory . . . assumes that there is a legally viable claim to which the pleading can relate back." *TCC Contractors, Inc.*, 52 So. 3d at 1116. As explained above, these Plaintiffs had no legally viable claims at the time they initially filed; accordingly, an attempt

13

to exercise these new rights cannot relate back to the previously but invalidly filed original complaint.

## IV. CONCLUSION

Based on the foregoing,

**IT IS ORDERED** that Defendants Omnibus Motion for Summary Judgment as to the claims asserted by Jason Arnold, Mardechria Charles, Feng Hu and Simin Liu, Mathew and Susan Issman, Karen and Kerry McCann, Nicole and Michael Norris, Mark and Kimberlie Perez, Wayne and Kristal Province, Estate of Veronica Rosenaur, Chien Van Pham and Bich Nguyen, and Xiaochun Xi and Jinjian Wang, R. Doc. 22631, is **GRANTED**.

New Orleans, Louisiana this 21st day of August, 2020.

_____
Eldon E. Fallon
United States District Judge