# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL NO. 2047 |
| | SECTION: L |
| THIS DOCUMENT RELATES TO THE FOLLOWING ACTION ORIGINALLY STYLED: | |
| *Stephen and Diane Brooke, individually, et al. v. The State-Owned Assets Supervision and Administration Commission of the State Council, et al.*, 2:15-cv-004127-EEF | JUDGE ELDON FALLON |
| | MAG. JUDGE NORTH |
| THROUGH THE AMENDED COMPLAINT, THE FOLLOWING PARTIES REMAIN IN THIS ACTION: | |
| Barbara Ann Alfonso; Bessie Barnett; Kerry Barre; Gwendolyn Kerr Bierria; Joseph Bourlet; Gregory Cross; Stephanie Fortenberry; Greater NOLA Homes, LLC; Howard Jones; and, Terrance Ross and Rhonda Ross, | |
| Plaintiffs, | |
| v. | |
| Beijing New Building Materials Group, Co., Ltd.; Beijing New Building Materials Public Limited Co.; China National Building Materials Co., Ltd.; Taishan Gypsum Co., Ltd. f/k/a Shandong Taihe Dongxin Co., Ltd.; Tai'an Taishan Plasterboard Co., Ltd.; and, The State-Owned Assets Supervision and administration Commission of the State Council, | |
| Defendants | |

**DEFENDANTS CHINA NATIONAL BUILDING MATERIALS COMPANY LTD., BEIJING NEW BUILDING MATERIALS GROUP COMPANY LIMITED, AND BEIJING NEW BUILDING MATERIALS PUBLIC LIMITED COMPANY'S MEMORANDUM IN SUPPORT OF <u>JOINDER AND MOTION FOR SUMMARY JUDGMENT</u>**

1

Defendants China National Building Materials Company, Limited ("CNBM"), Beijing New Building Materials (Group) Company, Limited ("BNBM Group"), and Beijing New Building Materials Public Limited Company ("BNMB PLC") (collectively "B&C Companies") submit this memorandum in support of their Joinder and Motion for Summary Judgment.

## I. INTRODUCTION

At issue in this proceeding are the claims of ten Plaintiffs who opted out of the MDL settlement. For the reasons set out in Taishan Gypsum Co., Ltd.'s ("Taishan") Motion for Summary Judgment (MDL Dkt. No. 23070), which the B&C Companies hereby join and incorporate by reference, certain claims are ripe for adjudication based on the undisputed material facts.

Those claims are also subject to resolution at this stage for unique and independent reasons with regard to the B&C Companies. The claims here implicate the B&C Companies purely on a derivative basis, as each Plaintiff alleges the presence of drywall manufactured by Taishan. Though this Court previously imputed Taishan's contacts to the B&C Companies for purposes of personal jurisdiction, it did not apply the governing law that controls here. When so applied and accounting for new facts evincing Taishan's corporate independence—namely, its unilateral funding of the sizeable class settlement, which the Court did not have the benefit of considering in connection with its prior jurisdictional rulings—there can be no finding that the B&C Companies are derivatively liable.

## II. BACKGROUND

The ten Plaintiffs in this action bring claims arising out of allegedly defective drywall installed in Louisiana properties. No Plaintiff alleges drywall manufactured by BNBM PLC, CNBM Company, or BNBM Group.[1] The B&C Companies previously moved to dismiss these

---

[1] *See* B&C Companies' Statement of Undisputed Material Facts ("SUMF") ¶¶ 1-10 & Exs. A-J, filed herewith.

2

claims, arguing no minimum contacts and no basis for imputing Taishan's jurisdictional contacts. MDL Dkt. Nos. 19527, 19646, 19663, 19664.  The Court found Taishan and the B&C Companies constitute a single business enterprise "for the purposes of imputing personal jurisdiction under Louisiana law."  MDL Dkt. No. 20739 at 79.  It also found that BNBM (but not CNBM Co. or BNBM Group) is an alter ego of Taishan.  Dkt. No. 20739 at 75.  The decision was affirmed.  *In re Chinese-Manufactured Drywall Prod. Liab. Litig.*, 811 F. App'x 910 (5th Cir. 2020).

### III.     LEGAL STANDARD

Summary judgment is required if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.").  When seeking summary judgment, the movant bears the initial responsibility of demonstrating the absence of an issue of material fact with respect to those issues on which the movant bears the burden of proof at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).  However, where the non-movant bears the burden of proof at trial, the movant may merely point to an absence of evidence, thus shifting to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial.  *Id*. at 322; *see also Moody v. Jefferson Parish School Board*, 2 F.3d 604, 606 (5th Cir. 1993).

Summary judgment is appropriate to determine the content of foreign law.  *Access Telecom, Inc. v. MCI Telecom. Corp.*, 197 F.3d 694, 713 (5th Cir. 1999).  "The court, in determining foreign law, may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under Rule 43."  Fed. R. Civ. P. 44.1.  Under this rule, expert testimony accompanied by extracts from foreign legal material is the basic method by which foreign law is determined.  *Access Telecom, Inc.,* 197 F.3d at 713 (citing

3

*Republic of Turkey v. OKS Partners*, 146 F.R.D. 24, 27 (D.Mass.1993)).

## IV. ARGUMENT

### A. Chinese Law Does Not Allow for Veil-Piercing Here

Plaintiffs' theory of liability is that Taishan's conduct may be imputed to the B&C Companies. Because veil-piercing doctrines differ among jurisdictions, a court must first apply the forum state's choice of law rules to determine which substantive veil-piercing law to apply. *Patin v. Thoroughbred Power Boats*, 294 F.3d 640, 646 (5th Cir. 2002); MDL Dkt. No. 20739 at 40-41. In Louisiana, a veil-piercing analysis applies the law of the place of incorporation. *Energy Coal v. CITGO Petroleum*, 836 F.3d 457, 462-63 (5th Cir. 2016); MDL Dkt. No. 20739 at 41. As the Court previously found, the B&C Companies are each incorporated in China, and Chinese law governs whether Taishan's contacts may be imputed. MDL Dkt. No. 20739 at 41; SUMF ¶ 11.

Under Chinese law, veil piercing is limited. A company's shareholder is liable for corporate debts when it "abuses the independent status of the company as a legal person or the limited liability of shareholders, evades debts and thus seriously damages the interests of the creditors of the company." MDL Dkt. No. 19179-9 ¶ 21 (June 15, 2015 Declaration of Donald C. Clarke) (quoting Article 20(3) of Chinese Company Law). Chinese courts will assess whether companies commingle assets, fail to maintain separate books, disregard corporate formalities, and are undercapitalized. *Id.* ¶¶ 10, 24-39. But Chinese courts will not pierce the veil merely because the companies share officers, managers, or directors, or because a parent can exert some control. *China Great Wall Asset Mgmt. v. New N.E. Elec. (Shenyang) High Pressure Insulated Switch* (Sup. People's Ct.), *translated in* MDL Dkt. No. 19646-53.

No evidence has been adduced, in the MDL or in this proceeding, that Taishan's corporate form was abused, let alone intentionally or maliciously. To the contrary, the Court specifically found that Taishan was *not* incorporated or maintained for any improper purpose. MDL Dkt. No.

20739 at 64; SUMF ¶ 23.  Indeed, the Court made multiple findings confirming the corporate form wasn't abused.  Far from a shell company, Taishan was a pre-existing, profitable company when BNBM invested in it, and it remains successful and autonomous.  MDL Dkt. No. 20739 at 25; SUMF ¶ 16.  There is no evidence of continuing commingling of business operations, business behavior, transactional methods, or price setting between the companies.  *China Great Wall Asset Mgmt.*, MDL Dkt. No. 19646-53; SUMF ¶ 20.

The Court also found that Taishan complies with corporate governance requirements.  Taishan is well capitalized and has always repaid debts.  Indeed, Taishan funded the entirety of the $248 million MDL settlement.  *E.g.,* MDL Dkt. No. 22460; SUMF ¶ 24.  While BNBM guarantees loans that Taishan receives, this practice is routine and BNBM has never had to perform on these guarantees.  MDL Dkt. No. 20739 at 26 & n.16; SUMF ¶ 22.  And the Court rejected Plaintiff's arguments about financial commingling.  MDL Dkt. No. 20739 at 26 & n.16.  Simply put, the Court did not find that BNBM abused the corporate form to evade debts.  While the Court noted that BNBM and Taishan had some common directors and officers, this limited overlap (as compared to entirely identical directors, officers, and operations) is insufficient to pierce the corporate veil under Chinese law.  MDL Dkt. No. 20043-5 ¶ 19 (Feb. 11, 2016 Declaration of Donald C. Clarke).

The Court initially (and correctly) determined that Chinese law governs.  MDL Dkt. No. 20739 at 41.  But the Court erred by accepting Plaintiffs' entreaties to disregard Chinese law by invoking the false conflicts doctrine under the premise that the outcome under the relevant jurisdictions' laws were the same and would generate the same outcome.  *E.g., Phillips Petroleum v. Shutts*, 472 U.S. 797, 838 n.20 (1985) (Stevens, J., concurring in part and dissenting in part).  The Court concluded that there would be "no meaningful difference in outcome" under the various state laws (Florida, Virginia, and Louisiana).  The Court's conclusion is unsupportable by its own

5

order, as it reached different outcomes under the various laws.  For example, it concluded that Taishan is BNBM's alter ego under Louisiana law, but not under Florida law or Virginia law.  If the state laws don't produce the same results as one another, they cannot all produce the same result as Chinese law.

The Fifth Circuit highlighted this error, noting, in a concurring and dissenting opinion, that the Court "had no valid grounds to disregard Louisiana law.  For those claims, I would remand to the district court for a new choice-of-law analysis." *In re Chinese-Manufactured Drywall Prod. Liab. Litig.*, 811 F. App'x 910, 911 (5th Cir. 2020).  Judge Willett continued, finding that under Louisiana law, "the choice-of-law rules point to the place of incorporation—here, China—for determining whether veil piercing is appropriate . . . ." *Id.*  Judge Willett noted further that "it's difficult to accept the district court's conclusion that Chinese law is no different than Florida and Louisiana law when the court's jurisdictional analysis led to different outcomes under Florida and Louisiana law." *Id.* at 912.

When construing the liability of the B&C Companies for the acts of Taishan, the Court must apply Chinese law.  There is no dispute that Chinese law requires proof that the corporate form was abused to evade debts.  The evidence here shows that Taishan, a successful, well-capitalized, and solvent company, has satisfied its debts in this litigation and funded the entirety of the $248 million MDL settlement.  Under Chinese law, the Court cannot hold the B&C Companies liable for these claims.

    **B.**  **Taishan is not the Alter Ego of the B&C Companies Under Louisiana Law**

Even if the Court were to decline applying Chinese law, the same result (though not the same analysis) follows under Louisiana law.  Louisiana courts recognize the presumptive legal distinction between corporations and their shareholders, parents, and subsidiaries. *Riggins v. Dixie Shoring*, 590 So. 2d 1165, 1167 (La. 1991); *Bujol v. Entergy Servs.*, 922 So. 2d 1113, 1128 (La.

2004) (noting Louisiana's "strong policy"). They also recognize veil-piercing is "a drastic remedy" that "must . . . be construed very narrowly and exercised reluctantly and cautiously." *Huard v. Shreveport Pirates*, 147 F.3d 406, 409 (5th Cir. 1998). Indeed, in Louisiana, the burden is a heavy one: "the limited liability attendant to corporate ownership should be disregarded only in exceptional circumstances," usually "fraud or deceit . . . practiced by the shareholder acting through the corporation." *Riggins*, 590 So. 2d at 1168.

That burden is not met here, where even the Court recognized that Taishan is an "autonomous company." MDL Dkt. No. 20739 at 25; SUMF ¶ 16. There is no evidence that BNBM and Taishan have commingled funds. MDL Dkt. No. 20739 at 26, 76; SUMF ¶ 20. Taishan and the B&C Companies maintain corporate formalities  MDL Dkt. No. 20739 at 26, 76; SUMF ¶¶ 18-19. Taishan enjoyed financial success both before and after its acquisition by BNBM, and it operated independently from (and sometimes in competition with) BNBM. MDL Dkt. No. 20739 at 25; SUMF ¶ 16. Taishan is adequately capitalized and has separate bank accounts and bookkeeping records. MDL Dkt. No. 20739 at 25-26, 76; SUMF ¶¶ 17, 20. In perhaps the most incontrovertible demonstration of its capitalization and absence of fraud or efforts to evade debts, Taishan funded the entire $248 million MDL class settlement to resolve thousands of claims. *E.g.*, MDL Dkt. No. 22460; SUMF ¶ 24. As the Court found when it held Taishan was *not* BNBM's alter ego in Florida or Virginia, there is no "proof of fraud or abuse" of Taishan's corporate form. MDL Dkt. No. 20739 at 54, 64. Nor is there any evidence otherwise "that [BNBM] disregarded [Taishan's] corporate entity to the extent that it ceased to become distinguishable." *Riggins*, 490 So. 2d at 1168; *Huard*, 147 F.3d at 411 (corporation must be "indistinguishable from [its] shareholder"). In short, the Court found none of the factors the Louisiana Supreme Court has highlighted in assessing whether companies are "distinguishable." *Riggins*, 590 So. 2d at 1168 (identifying factors).

In concluding that Taishan and BNBM are alter egos, the Court did not employ the correct standard. It did not cite *Riggins* or apply the factors articulated by the Louisiana Supreme Court. Instead, it relied on *Hargrave v. Fiberboard*, 710 F.2d 1154, 1159-62 (5th Cir. 1983). *See* MDL Dkt. No. 20739 at 69-70. But *Hargrave* did not involve Louisiana law. For that reason, the Fifth Circuit has itself discouraged use of the *Hargrave* factors in Louisiana diversity cases. *Adm'rs of Tulane Educ. Fund v. Ipsen*, 450 F. App'x 326, 330 n.5 (5th Cir. 2011). The reason being, unlike Louisiana, Texas applies a "less stringent standard" to veil piercing at the jurisdictional phase than for purposes of liability. *Hargrave*, 710 F.2d at 1161. And Texas's jurisdictional veil piercing test does not require fraud or impose the heavy burden of showing the companies are not distinguishable. *Compare Riggins*, 590 So. 2d at 1168, *with Hargrave*, 710 F.2d at 1159-61. Conversely, factors that the Louisiana Supreme Court does emphasize—such as undercapitalization (*Riggins*, 590 So. 2d at 1168)—are absent from *Hargrave* (710 F.2d at 1160). And where the Texas and Louisiana jurisdictional tests overlap, it is with regard to factors that the Court found reflect corporate *separateness*—for example, observing corporate formalities, maintaining separate books, and using separate bank accounts. MDL Dkt. No. 20739 at 75.

To find alter ego, the Court relied on factors not present in *Riggins*. For example, the Court cited BNBM's stock holding in Taishan, overlapping officers and directors, and BNBM's authority over general policy decisions. MDL Dkt. No. 20739 at 69-75. But Louisiana law makes clear that these factors do not suffice. Owning a majority of stock in a corporation does not in itself make an individual liable for corporate debts. *Riggins*, 590 So. 2d at 1168. Common stockholders and officers are unremarkable. *E.g., Landry v. St. Charles Inn*, 446 So. 2d 1246, 1251 (La. Ct. App. 1984). And control must amount to total domination of the subservient corporation such that it manifests no separate corporate interests of its own. *United States v. Clinical Leasing Serv.*, 982 F.2d 900, 903 (5th Cir. 1992). Authority over general policy is entirely appropriate, as corporate

8

shareholders are expected to monitor their investments. *Baker v. Raymond Int'l*, 656, F.2d 173, 180-181 (5th Cir. 1981); *Tulane Educ. Fund*, 450 F. App'x at 330-31.

Irrespective of what test the Court applied at the jurisdictional stage, even if it were to disregard Chinese law for purposes of liability (which it should not), at a minimum, it is duty-bound to apply Louisiana law. Louisiana law precludes an alter ego determination based on the undisputed facts.

### C. Taishan and the B&C Companies Do Not Comprise a Single Business Enterprise

Again, Chinese law applies. Chinese law does not recognize anything bordering on the single business enterprise theory as a basis for imputing corporate liability from one entity to another. MDL Dkt. No. 20043-5, ¶¶ 29-33 (Feb. 11, 2016 Declaration of Donald C. Clarke). Nonetheless, the Court previously turned to Louisiana law in applying the Single Business Enterprise ("SBE") theory and concluding that the B&C Companies constitute a single business along with Taishan. That determination rested on an expansion of SBE law that departs significantly from the Louisiana Supreme Court's test. Applying the correct SBE law and accounting for Taishan's independent satisfaction of the $248 million MDL settlement, the Court should find that no single business enterprise exists.

In analyzing whether these four separate companies are all one single business enterprise, the Court thought it dispositive that Taishan and the B&C Companies were "controlled—directly and indirectly—by CNBM Group." MDL Dkt. No. 20739 at 76; *see id.* at 78-79. Again, the Court pointed to commonplace forms of shareholder control—the authority to appoint directors, approve financing, conduct audits, and specify safety regulations. *Id. at* 76-77. However, "control alone is not sufficient to warrant a piercing of the corporate veil." *Town of Haynesville v. Entergy Corp.*, 956 So. 2d 192, 197 (La. Ct. App. 2007).

Rather, single-business-enterprise doctrine is best understood as another way to assess alter ego—which is about fraud, not control. That is why the seminal case made clear it was articulating a test to "determin[e] whether a corporation is an alter ego." *Green v. Champion Ins.*, 577 So. 2d 249, 257 (La. Ct. App. 1991); *see Energy Coal*, 836 F.3d at 460 n.3 (*Green* "[f]ram[ed] the doctrine as a way to determine whether a corporation was an alter ego or instrumentality of a corporation"); *Jackson v. Tanfoglio Giuseppe*, 615 F.3d 579, 587 (5th Cir. 2010).

Thus, as with alter ego, this Court evaluates SBE with an eye toward an absence of corporate formalities and the presence of financial commingling. *Id.* at 587-88. But the Fifth Circuit and Louisiana courts have been unwilling to pierce the corporate veil—under any rubric—unless the traditional, fraud-based purposes of veil-piercing are satisfied. *E.g., In re Ark-La-Tex Timber*, 482 F.3d 319, 335-36 (5th Cir. 2007) ("Absent any allegation of wrongdoing, we decline to implement such an extraordinary disregard of the separate legal personalities of corporate and juridical entities in this case."); *Haynesville*, 956 So. 2d at 198 ("There has been no evidence or allegation that Entergy or any of its corporate subsidiaries were formed or structured to commit fraud or deceit on the Town of Haynesville."). As the leading treatise explains, there is only one case "that imposes SBE liability without any kind of wrongdoing or inequity. Every other reported SBE case either denies SBE treatment or imposes it where the wrongdoing or inequity is both apparent and consistent with ordinary veil-piercing law." 8 Morris & Holmes, Louisiana Civil Law Treatise, Business Organizations § 32.16 (2018 update).

The Court's expansive approach would permit courts to "disregard the corporate entity every time [they find] a type of relationship exemplified by the classic parent-subsidiary arrangement." James Dunne, Note, Taking the *Entergy* Out of Louisiana's Single Business Enterprise Theory, 69 La. L. Rev. 691, 691 (2009). But that runs contrary to the Louisiana Supreme Court's clear direction that "the separate legal identities of parent and subsidiary

10

corporations" should be respected, *Energy Coal*, 836 F.3d at 460—which, again, is why veil-piercing rules must be "construed very narrowly" and "exercised reluctantly and cautiously." *Huard*, 147 F.3d at 409; *Haynesville*, 956 So. 2d at 198 (SBE is a "radical remedy only employed in exceptional circumstances").[2]

Not surprisingly, therefore, Louisiana courts have "retreated" from this "once expansive view." *Energy Coal*, 836 F.3d at 461. Instead, they "characterize[]" SBE "as requiring a showing similar to what piercing the corporate veil requires." *Id.* (Louisiana's Second, Fourth, and Fifth Circuits have tethered SBE to traditional veil-piercing); see *Haynesville*, 956 So. 2d at 197-98. And in the 17 years since *Green*, "[t]he Supreme Court of Louisiana has never adopted the single business enterprise theory" despite having opportunities to do so. *Energy Coal*, 836 F.3d at 460. (discussing *Brown v. ANA Ins.*, 994 So. 2d 1265, 1272 n.13 (La. 2008), which "declin[ed] to address [the] validity of the ... doctrine"); see *Bujol*, 922 So. 2d at 1128 (reaffirming that limited liability applies equally to shareholder-corporation and parent-subsidiary relationships, and that plaintiffs must "allege shareholder fraud" or otherwise meet the "heavy burden" described in *Riggins*).

Under an appropriate understanding of *Green*, the factors identified by the Court are legally insufficient to show that Taishan and the B&C Companies are a "single business enterprise." Most fundamentally, the Court did not find fraud or abuse of the corporate form, as *Riggins* and *Green* require—for instance, that Taishan is a sham or a shell indistinguishable from B&C Companies, or that it otherwise exists to achieve wrongdoing. The court specifically found no fraud or wrongdoing. MDL Dkt. No. 20739 at 54, 64-65; SUMF ¶ 23. And none of the critical indicators of fraud is present. Taishan observes corporate formalities. SUMF ¶ 18. There is no evidence

---

[2] SBE is an area of "unsettled" law in federal jurisprudence and the district court should turn to state court analysis on the subject. *See Aker Solutions, Incorporated v. Shamrock Energy Solutions, L.L.C.*, 820 F. App'x. 243, 246 n.2 (5th Cir. 2020).

Taishan is undercapitalized or that Taishan and any of the B&C Companies (much less all of them) intermingle their finances or make undocumented transfers of funds. SUMF ¶¶ 16-17, 20-22. The B&C Companies don't pay Taishan's employees, and Taishan holds regular board and shareholder meetings. MDL Dkt. No. 20739 at 78; SUMF ¶ 18. And, even under the most lenient interpretation of SBE, recent events undermine any contention that these entities constitute a single business. There can, of course, be no surer sign of a company's independent corporate existence than Taishan's payment of the entire $248 million MDL class settlement. SUMF ¶ 24. Whatever the contours of the SBE doctrine, it assuredly was designed to ensure plaintiffs are able to collect on any judgment—a concern that is clearly not at play here.

This is utterly unlike SBE cases finding that corporate formalities were disregarded and finances commingled. *Green*, 577 So. 2d at 258-59 (inadequate capitalization; extensively intermingled finances; one company paid another's employees; undocumented transfers; corporate formalities not observed). Veil-piercing under an SBE theory is therefore inappropriate. *Haynesville*, 956 So. 2d at 198 (overturning an SBE finding because "[t]here has been no evidence or allegation that Entergy or any of its corporate subsidiaries were formed or structured to commit fraud or deceit").

## V.   CONCLUSION

The claims against the B&C Companies should be denied for the reasons set forth in Taishan's Motion for Summary Judgment (MDL Dkt. No. 23070), which the B&C Companies join. Separate and apart from those grounds for summary judgment, the B&C Companies should not be held derivatively liable. Application of the governing law and recent events, namely Taishan's independent funding of the MDL settlement, preclude any grounds for imputing Taishan's conduct to the B&C Companies. The Court should grant the B&C Companies' Motion for Summary Judgment.

Respectfully submitted,

| | |
|---|---|
| */s/ L. Christopher Vejnoska* | */s/ Alex Rothenberg* |

L. Christopher Vejnoska (CA Bar No. 96082)
Andrew K. Davidson (CA Bar No. 266506)
Daniel S. Guerra (CA Bar No. 267559)
ORRICK, HERRINGTON & SUTCLIFFE LLP
405 Howard Street
San Francisco, CA  94105
T:  415-773-5700
Email:  cvejnoska@orrick.com
            adavidson@orrick.com
            dguerra@orrick.com

Diana Szego Fassbender (D.C. Bar No. 996625)
ORRICK, HERRINGTON & SUTCLIFFE LLP
Columbia Center
1152 15th Street NW
Washington, D.C. 20005
T:  202-339-8400
Email:  dszego@orrick.com

James L. Stengel (NY Bar No. 1800556)
Marc R. Shapiro (NY Bar No. 4403606)
ORRICK, HERRINGTON & SUTCLIFFE LLP
51 West 52nd Street
New York, NY, 10019
T:  212-506-5000
Email:  jstengel@orrick.com
            mrshapiro@orrick.com

*Attorneys for the CNBM and BNBM Entities*

Ewell E. Eagan, Jr. (LA Bar No. 5239)
Alex B. Rothenberg (LA Bar No. 34740)
GORDON, ARATA, MONTGOMERY, BARNETT, MCCOLLAM, DUPLANTIS & EAGAN, LLC
201 St. Charles Avenue, 40th Floor
New Orleans, LA 70170-4000
T:  (504) 582-1111
Email:  eeagan@gamb.com
            arothenberg@gamb.com

*Attorneys for CNBM Company, Ltd.*

Harry Rosenberg (LA Bar No. 11465)
PHELPS DUNBAR LLP
365 Canal Street, Suite 2000
New Orleans, LA 70130-6534
T:  (504) 584-9219
Email:  harry.rosenberg@phelps.com

*Attorneys for BNBM (Group) Co. Ltd. and BNBM PLC*

13

**CERTIFICATE OF SERVICE**

     I hereby certify that the above and foregoing has been served on Plaintiffs' Liaison Counsel, Russ Herman, by e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve in accordance with Pre-Trial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047, on March 29, 2021.

                                                                                 /s/ *Alex Rothenberg*
                                                                                 Alex Rothenberg