UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN RE: CHINESE-MANUFACTURED          *      Docket No. 2047
DRYWALL PRODUCTS LIABILITY           *
LITIGATION                           *
                                     *
                                     *
This Document Relates to:            *      March 31, 2021
                                     *
                                     *
                                     *
EDUARDO AND CARMEN AMORIN,           *
ET AL                                *
                                     *      Section L
                                     *

*************************************************************************

**REPORTER'S OFFICIAL TRANSCRIPT OF THE STATUS CONFERENCE**
**BEFORE THE HONORABLE MICHAEL NORTH,**
**UNITED STATES MAGISTRATE JUDGE.**

*************************************************************************

**APPEARANCES**:

For the Plaintiffs:                  Doyle Law Firm
                                     BY: JAMES V. DOYLE
                                     2100 Southbridge Pkway, Ste. 650
                                     Birmingham, AL  35209


For the Defendants:                  Alston & Byrd
                                     BY: CHRISTINA HULL EIKHOFF
                                     1201 W. Peachtree St., Ste. 4900
                                     Atlanta, GA  30309-3424



**REPORTED BY:**          Mary V. Thompson, RMR, FCRR
                          500 Poydras Street, Room 275
                          New Orleans, Louisiana  70130
                          (504)589-7783

**OFFICIAL TRANSCRIPT**

**P R O C E E D I N G S**

THE COURT:  Good morning, everyone.

MR. DOYLE:  Morning, Judge.

MS. EIKHOFF:  Good morning.

MR. ROSENBERG:  Morning.

THE COURT:  Well, obviously y'all saw my minute entry. We're not going to go forward today with an evidentiary hearing because I don't think we're ready to do that.

The defendants asked for an evidentiary hearing, and I granted one, and then I got objections to basically all the evidence that the plaintiffs want to put in the record, so that's what I've been trying to deal with leading up to today.  I have some things I want to talk to y'all about on these objections, recoverable damages and whatnot, and then we're going to figure out where we go from here.

So I want to talk about the measure of damages for damages to real property under Alabama law.

MR. DOYLE:  Which one first, Your Honor?

THE COURT:  Well, I'll tell you in a minute.

The cases that I've reviewed -- and most of them have been cited by both parties.  My view of the law, based on my review of those cases, is that the only measure of damages available for damage to real property under Alabama law is diminution of value, but that evidence regarding cost of repairs

00:00:04
00:00:18
00:00:37
00:00:57
00:01:20

**OFFICIAL TRANSCRIPT**

1    or remediation can be admissible in some cases to establish

2    diminution of value.  That is my reading of the cases.

3            Do you-all agree or disagree with that?

4            I'll ask plaintiffs' counsel first.

5            MR. DOYLE:  Your Honor, I disagree.

*00:01:41*

6            The case that we cited yesterday that followed

7    *Poffenbarger*, the *Birmingham Coal* case, I believe specifically

8    addressed that, under Alabama law, you don't necessarily have to

9    make a -- you know, offer any opinion on diminution of value, but

10   you can't exceed the value of the property if there's property

*00:02:06*

11   damage.

12           Alabama follows -- the private nuisance law follows

13   trespass, a line of cases in trespass.  And when you have a

14   trespass and there's actual damage to the property, you can

15   recover it.  And it can be up to the value of the property.  So

*00:02:21*

16   diminution is something that the Court -- the Alabama Supreme

17   Court addressed in *Poffenbarger* where the damages claim exceeded

18   the value of the property.

19           Here we know what the value of the property is.  They

20   bought the property, had a home built, and then Chinese drywall

*00:02:36*

21   is in it.  We know actually what the value of the property is.

22   The cost of fixing it is -- you know, in each case can be

23   evaluated for that.  I mean, it's that simple.

24           So the diminution in value --

25           THE COURT:  At the end of the day, what I'm trying to

*00:02:54*

**OFFICIAL TRANSCRIPT**

1  determine is the diminution of value of the property.  That's the

2  measure of damages.

3          MR. DOYLE:  That's right.

4          THE COURT:  Well, that's what I said.

5          MR. DOYLE:  But it's the terminology that the

6  defendants are relying upon, the actual diminution of value.  You

7  know, there's a line in the supplemental plaintiff profile form

8  they're using as their basis for trying to exclude everything.

9          You know, did the -- are the plaintiffs claiming actual

10 diminution of value?  No, they just want the property fixed.

11 They don't care about the value of the property being diminished;

12 they want it fixed.  And that's what they thought they were going

13 to get.  So that's where we are.

14         THE COURT:  Under what claim do I order them to fix the

15 property?

16         MR. DOYLE:  Private nuisance.

17         If you look at private nuisance and you look at

18 *Birmingham Coal*, it says you don't have to make any particular

19 opinion.  You don't have to offer expert testimony.  You don't

20 have to do anything.  As long as the damages don't exceed the

21 value of the property, you can recover under the trespass line of

22 cases in Alabama.  You don't necessarily have to have an opinion

23 on diminution of value.  You don't have to use the term

24 "diminution of value."  You just have to use the evaluation, the

25 value of the property versus what, you know, needs to be done to

00:03:04
00:03:21
00:03:34
00:03:48
00:04:04

**OFFICIAL TRANSCRIPT**

1   fix it.

2         THE COURT:  I'm not sure I agree that that's what

3   *Birmingham Coal* says.

4         MR. DOYLE:  Well, in the end, also, Your Honor, the --

00:04:24   5   they did not explicitly waive.  They just offered no opinion in

6   their supplemental plaintiff profile form.  There was never any

7   pleading.  There was never any motion to clarify.  Nothing filed

8   with the Court that acknowledges that they dismissed that

9   particular claim.

00:04:41   10         What they said in their deposition was we've got

11   Chinese drywall and we want to get it fixed.  We can't do

12   anything until we do that.

13         So if under Alabama law you want to call that

14   diminution of value, fine, but they're not qualified to make that

00:04:55   15   type of evaluation.  They're just simply homeowners.  So if there

16   needs to be expert testimony, Alabama law needs to say that, and

17   it doesn't.  What it says is you just do this evaluation.  What's

18   the value of the property versus what the damages are and the

19   cost to fix the damages to the property under the trespass line

00:05:13   20   of cases.  So if we want to call that diminution of value, fine.

21         THE COURT:  Well, that's what Alabama law calls it.

22   That's what it's called in the cases that I'm reading.

23         MR. DOYLE:  Right.  But we didn't -- just because the

24   plaintiffs put down that they had zero diminution of value, they

00:05:29   25   don't know what the diminution of value was.  And it doesn't

**OFFICIAL TRANSCRIPT**

1   necessarily say that's the remediation costs.

2         THE COURT:  Let's get to another problem that the

3   defendants raise, since we're on this subject.

4         MR. DOYLE:  Okay.

*00:05:40*   5         THE COURT:  The evidence that you-all want the Court to

6   consider to establish the -- what the cost of repair is to get to

7   a number that is less than the value of the house -- right?

8         MR. DOYLE:  Right.

9         THE COURT:  -- wasn't created until March of this year.

*00:06:02*   10   That's a problem.  That's an evidentiary problem.

11         And that's why it's important for me, and for all of

12   us, to understand really what is the answer to the first question

13   I asked.  Because there's an untimeliness objection on those

14   documents, on the Xactimate and the pictures that are attached to

*00:06:24*   15   it.  I understand that objection because the -- those materials

16   weren't created until a few weeks ago.

17         MR. DOYLE:  Right.

18         THE COURT:  The supplemental form asks about diminution

19   of value and requires all documentation to support a claim for

*00:06:40*   20   diminution of value to be produced, and that did not happen.  And

21   if in fact where we are ultimately headed is proving a diminution

22   of value claim by virtue of these Xactimates, they're untimely.

23         I think that's a problem.

24         MR. DOYLE:  Your Honor, may I respond?

*00:07:01*   25         THE COURT:  Yes.

**OFFICIAL TRANSCRIPT**

1          MR. DOYLE:  There was another -- there was another

2     methodology that Judge Fallon devised and adopted in

3     Document 20741, if I'm not mistaken, that says use the RSMeans

4     value times the location factor times the under air square

5     footage, and we're going to use that in evaluating the cost of

6     remediation across the board.  That was adopted.  That was

7     utilized throughout the course of the MDL proceedings.  The

8     latest value on it was $119.74 times the location factor times

9     the under air square footage.  That was in place, but that's 2019

10    numbers.

11          The only reason that this was created was so that we

12    could get a quantification of the true cost of remediation right

13    now in today's dollars.

14          So we've already got that.  The Court has adopted the

15    formula and it's been in place.  The only reason that we did

16    anything here was so that the Court could have true up-to-date

17    numbers.

18          Xactimate is a -- I don't know how familiar you are

19    with it.  It's a program --

20          THE COURT:  I know all about Xactimate.  You don't have

21    to worry about that.

22          MR. DOYLE:  Okay.

23          But that's the alternative.  You know, the Court can

24    look back at it.  Look at the document that established what the

25    remediation damages should be.  What should be included, what

**OFFICIAL TRANSCRIPT**

1  should be excluded, and how you go about calculating remediation

2  damages that Judge Fallon said everybody who has Chinese drywall

3  in their home should recover -- should be able to recover.  It's

4  the true cost of remediation.  It's in there.

*00:08:37*

5       This exercise here is just a way for the Court to

6  understand what the quantification of those damages are.

7       THE COURT:  All right.  I want to address defense

8  counsel on something.

9       So if I go down the line on all of these objections

*00:08:54*

10  that you-all have made, I've got a defaulted defendant who is

11  basically telling me they owe zero dollars to two people who have

12  undisputed damage due to Chinese drywall in their homes, and that

13  to me is not an equitable outcome.

14       Is that in fact what you-all are suggesting should

*00:09:14*

15  happen?

16       MS. EIKHOFF:  No, Your Honor, not at all.  And we did

17  not object to all of the exhibits that were produced by the

18  plaintiffs.  In fact, we submitted our own exhibit that included

19  the build cost of the property and the fair market value of the

*00:09:29*

20  property according to the tax assessment.  Right now those are

21  the only documents in the record, and they came in without the

22  objection of the plaintiffs as to the actual value of the

23  property.

24       The problem with the remediation damages -- setting

*00:09:49*

25  aside the untimeliness issue, which I can address separately, but

**OFFICIAL TRANSCRIPT**

1   the problem with leaving in these outside remediation estimates

2   that are higher than the build cost, higher than the fair market

3   value, is that, under Alabama law, that violates the principle of

4   exceeding the diminution in property value.

00:10:13

5            Just last year, in 2020, the Alabama Supreme Court in

6   the *Leftwich* case, which we cited in our papers, upheld the

7   exclusion of remediation damages where it was clear that it

8   exceeded any possible diminution in property value.  That's the

9   most recent Alabama Supreme Court case of all in the record, and

00:10:35

10  we think that's what the Court would follow here.

11           Your Honor, it does not mean that they necessarily walk

12  away with zero, but it does exclude evidence that would lead to

13  damages that would violate Alabama law.

14           THE COURT:  Let me ask you-all about what I call

00:10:59

15  non-pecuniary damages, loss of use and enjoyment.  Under what

16  theory -- under which of these claims is that category of damages

17  awarded?

18           MS. EIKHOFF:  Your Honor, were you directing that to

19  defense counsel or plaintiffs?

00:11:24

20           THE COURT:  Yeah, Mr. Doyle -- no, no, no, I want to

21  hear that from the plaintiffs.

22           MR. DOYLE:  Your Honor, it could be under -- I would

23  have to do the research under Alabama law.  I haven't necessarily

24  looked at it recently.

00:11:37

25           But we've got these other claims; negligence,

**OFFICIAL TRANSCRIPT**

1  negligence per se, strict liability, and then breach of a

2  warranty, along with the private and unjust enrichment.  I'll be

3  happy to brief it.

4       THE COURT:  Let me ask it a different way.  You

00:11:54

5  suggested in your -- in the paper that I got yesterday that even

6  under -- you know, even under the tort doctrines in Alabama, I

7  think -- I can't remember the terminology that extends --

8       MR. DOYLE:  Zone of danger.

9       THE COURT:  Yeah.  That if the plaintiffs are in the

00:12:16

10  zone of danger, that they're entitled to recover certain types of

11  those damages.  And you suggested that they -- because they have

12  noxious drywall in their homes, that they're in a zone of danger.

13       What evidence am I going to hear that that's actually

14  true, that they are in danger because they have remained in a

00:12:35

15  house for a decade with Chinese drywall?

16       Because I don't see any of that in this -- in your

17  submission.

18       MR. DOYLE:  Well, it may not be in the documents.

19       You're going to hear the testimony from each of the

00:12:47

20  plaintiffs that, you know, they have a house that has these gases

21  that are being emitted that are noxious.  It won't allow them to

22  sell the house, it won't allow them to live in the house, and it

23  won't let them rent the house.

24       The Carters, once they figured out -- Mr. and

00:13:02

25  Mrs. Carter, they had their elderly mother living in this house.

**OFFICIAL TRANSCRIPT**

1    They find out they've got Chinese drywall and pulled her out.

2    They're not able to -- they said in their deposition they just

3    don't feel right about renting the house to anybody else while

4    this house is emitting noxious gases.  So for ten years now

00:13:19    5    roughly -- I don't know what the exact duration is -- they

6    haven't been able to do anything with this house.  They're stuck

7    with a Chinese drywall house that's unsellable and you can't live

8    in it, you can't rent it.

9            Now, the Gibbs, on the other hand, they've had to live

00:13:33    10    in it.  They're elderly retired military, both, and they don't

11    have another option.  They have to live in the house.  And so the

12    testimony they're going to provide is, listen, they live in the

13    house.  All they can do is open the windows and doors and stay

14    outside of the house as much as possible.  That's not using and

00:13:49    15    enjoying their property.

16            So in either case we've got the inability to truly

17    fully use the house by either party.

18            MS. EIKHOFF:  Your Honor, if I may respond to that?

19            THE COURT:  Sure.

00:14:00    20            MS. EIKHOFF:  What I just heard from Mr. Doyle was that

21    they are not enjoying their property the way that they want to,

22    and I appreciate this.  I don't doubt that that is true.

23            However, Alabama law has a very high standard for

24    actually awarding mental anguish damages in this situation.  And

00:14:23    25    the *Birmingham Coal & Coke* case was a situation where it was

**OFFICIAL TRANSCRIPT**

1   undisputed that because of the vibration of the nearby blasting

2   and the noise of the nearby blasting, they were not enjoying

3   living in their house.  But the Alabama Supreme Court reversed an

4   award of mental anguish damages because there was no evidentiary

00:14:42   5   proof that they were actually in a zone of danger which is

6   defined by the Alabama courts as actual, proven danger.  You see

7   a lot of cases that are about fires, you know, that actually, you

8   know, puts someone in a zone of danger.

9           There is no evidence that there was actual physical

00:15:04   10   danger to these people who have been living in the house for ten

11   years or so.  And we asked them in their deposition if they had

12   any evidence that they had health problems that were attributable

13   to Chinese drywall, and they said they had no medical proof of

14   that.

00:15:24   15           So, Your Honor, we think that, under Alabama law, the

16   mental anguish damages are precluded in this situation.

17           THE COURT:  Let me circle back to what -- to something

18   we had discussed a moment ago on diminution of value.

19           Mr. Doyle suggested that Judge Fallon had laid out a

00:15:49   20   formula to calculate diminution of value in Record

21   Document 20741, which is not one of the prior orders that's been

22   abrogated in this case.  What's the defendants' view as to using

23   whatever -- and I -- you know, there are only 20-something

24   thousand documents in this record, so y'all will have to excuse

00:16:15   25   me if I have not looked at that one, but I would like to know

**OFFICIAL TRANSCRIPT**

1  what the defendants' view is as to using that formula or claim

2  work in this case to try and determine the diminution of value

3  without respect to the Xactimates and the other information

4  that's been provided?

5  MS. EIKHOFF:  Your Honor, we did address this in our

6  pre-hearing brief that we submitted on the 19th because we

7  expected that the plaintiffs were going to rely on the formula to

8  establish damages.

9  The problem with that is that those were aggregate

10  class damages that were designed specifically to be applied to a

11  class of thousands.  And Judge Fallon, if you review his

12  decision, puts great weight on the difficulty of giving

13  individual remediation or other types of diminution estimates for

14  thousands of individual homeowners.

15  These two claims that are left opted out.  And by

16  opting out of the class settlement, they are no longer addressed

17  in a class.  The two do not make a class.  And therefore, when

18  they accepted the obligation of pursuing their claims as

19  individuals, they accepted the burden of proving their damages

20  individually.

21  That seems to be a development of proof that occurred

22  late to the plaintiff.  As we said, it was after the close of all

23  discovery.  It was -- actually, the Xactimates came in the day

24  that we had our status conference to discuss procedure, but -- so

25  it's too late.  But they could have and should have done

**OFFICIAL TRANSCRIPT**

1   something like that earlier if that's the route they wanted to

2   pursue.

3         THE COURT:  Well, that's --

4         MS. EIKHOFF:  And I'll just add one thing to what

5   Mr. Doyle said, that, well, he just wanted to get something up to

6   date.

7         Under Rule 26, an expert testimony -- an expert report

8   needs to be submitted 90 days before the hearing.  The case

9   management order said that this hearing needed to occur by

10  April 2nd, so 90 days before that would have been January 2nd.

11  That was before the close of discovery.

12        If we had gotten these reports on January 2nd, we would

13  have had plenty of time to depose the expert, to scrutinize the

14  report, and to potentially get a rebuttal expert if we needed to,

15  but it all came in so late.  We literally heard the name of this

16  guy for the first time seven hours after we had submitted our

17  pre-hearing.

18        THE COURT:  I agree with you.  I think the timing of

19  the creation and production of these documents is a serious

20  problem.  I agree with you.

21        But it also appears to me that the end result of those

22  activities and these Xactimates -- it would appear to me that the

23  numbers on those estimates would likely put this case -- or these

24  two cases right into that category of cases where the cost to

25  remediate exceeds the diminution of value of the property.

00:18:24

00:18:42

00:19:02

00:19:18

00:19:45

**OFFICIAL TRANSCRIPT**

1        So, I mean, we're going in circles as to how the

2  plaintiffs intend to prove diminution of value under Alabama law

3  in this case.

4        MR. DOYLE:  Your Honor, may I respond?

5        THE COURT:  Yes.

6        MR. DOYLE:  The document that I referenced -- the

7  characterization by opposing counsel I don't think is completely

8  accurate.  The fact that these folks opted out of the settlement

9  doesn't mean that all of the orders that have been generated by

10  Judge Fallon during the consolidated pretrial proceedings -- and

11  this is one of them --

12        THE COURT:  Okay.  Well, hold on.  Hold on.

13        MR. DOYLE:  -- would be applicable.

14        THE COURT:  Let me interrupt you.

15        A formula created by a district judge in a gigantic MDL

16  to calculate damages for thousands and thousands of claims is

17  highly unlikely to be probative when we are having an evidentiary

18  hearing that is specific to two claims where you've actually

19  given me -- albeit late-created, but you've given me actual

20  estimates.  There is no need to apply Judge Fallon's formula that

21  was intended to address these thousands of claims when we are

22  only talking about two homes.

23        The argument that wasn't made, but that is at the heart

24  of, I think, what the defendants are saying, is your clients

25  opted out of a settlement.  The formula in that settlement may or

**OFFICIAL TRANSCRIPT**

1  may not have been to their benefit, but they are essentially

2  saying, Well, we are opting out of this settlement, but we're

3  going to use the formula that was applied to the settlement, and

4  we just want to jump in and get our extra categories of damages

5  that everybody else in the case didn't get.

6        I don't think that's how it works, but that's what I

7  see has happened.

8        MR. DOYLE:  Your Honor, if I can address that.

9        The formula wasn't used for anybody.  There was a

10  settlement and the Court -- I was the only one that appeared to

11  discuss the application of the formula and the orders and

12  everything that went into us generating documents and data to

13  apply in a settlement.  All of it was abandoned.  None of it was

14  applied.

15        It's not that everybody else that settled got the

16  damages from that formula.  They got none of it.  They got

17  essentially 20 cents on the dollar.  So they didn't get the

18  formula.  They didn't get the damages that the formula would have

19  provided.  So nobody in that settlement -- not a single party --

20  got the full remediation cost.  They got something substantially

21  less, which was inadequate and it was inequitable, and the whole

22  reason that all of the opt-outs are now proceeding individually.

23        It doesn't mean that -- you know, had we used that

24  formula, they may have participated.  But that formula was

25  substantially more than they were offered in a settlement that

*00:21:43*

*00:21:56*

*00:22:15*

*00:22:33*

*00:22:51*

**OFFICIAL TRANSCRIPT**

1  the Court, and the lawyers that presented it to the Court, said

2  had nothing to do with the cost of remediation.  That's what they

3  said.  That's in the record.  They abandoned all of it, and it

4  came down to a lump-sum settlement that they were going to

5  distribute among 3,000 plaintiffs.

6       So it's not that they were walking away from that.

7  They were never offered that.  It's a formula that the judge

8  said, Hey, it's going to overshoot in some cases and it's going

9  to undershoot on others.

10       But they were willing to take that to be able to get

11  their home fixed and get their life back in order.  They weren't

12  offered that.

13       So, Judge, I just want you to take a look into that if

14  you would.

15            THE COURT:  Okay.

16            MR. DOYLE:  It's in there, and it says -- Judge Fallon

17  said, Hey, it's something that we can use that's useful.  And

18  there was a contractor that came in and provided testimony during

19  the damages hearing.  He said, This is useful.  Is it going to

20  overshoot some, yes, and undershoot others, yes, but it's a fair

21  estimation of remediation damages for everybody.

22            MS. EIKHOFF:  Your Honor, if I may just respond to

23  that.  I do have to correct the record.

24       It is not true that the settlement gave people 20 cents

25  on the dollar across the board.  The Court has -- Judge Fallon

**OFFICIAL TRANSCRIPT**

00:23:06
00:23:22
00:23:32
00:23:44
00:23:59

1   approved the settlement as fair, and approved it for all people.

2   And I can tell you it is no secret that these plaintiffs would

3   have gotten significantly more than 20 cents on the dollar had

4   they not opted out of the settlement.

5   THE COURT:  Well, that's going to depend on how many

6   dollars we're talking about, right?

7   I mean, if the plaintiffs want $800,000, then maybe it

8   is 20 cents on the dollar, but if they --

9   MS. EIKHOFF:  That is true.

10   THE COURT:  -- are looking at $300,000, it's a little

11   bit more.

12   MS. EIKHOFF:  That's true.

13   THE COURT:  That's all in the eye of the beholder.

14   MS. EIKHOFF:  Understood, Your Honor.

15   And to be clear, we're not saying that every order that

16   Judge Fallon has ever issued has been thrown out now that they

17   are opted out.  We're saying that a formula that was designed for

18   an aggregate class damages calculation does no longer apply when

19   you have two homeowners that can and should have gotten their own

20   remediation estimate within the discovery period and in

21   accordance with the rules.

22   THE COURT:  All right.  So here's the question I'm

23   going to put -- I'll put to you as defense counsel:  If my view

24   is that I think that it would be an inequitable result to prevent

25   the plaintiffs from proving diminution of value against your

00:24:22
00:24:33
00:24:42
00:25:04
00:25:27

**OFFICIAL TRANSCRIPT**

1  defaulted client, how do you suggest I go about -- or we go

2  about -- or plaintiffs go about proving the only measure of

3  damages that matters in my view, which is diminution of value of

4  their respective properties?  How do we do that?

00:25:50

5          MS. EIKHOFF:  Your Honor, I do think that there is a

6  way to do that.

7          We have evidence in the record of what the build costs

8  were for the house.  We have evidence of fair market value

9  according to the tax assessments.  In Alabama law -- and I'm sure

00:26:06
10  Mr. Doyle knows this because he's an Alabama lawyer -- a

11  homeowner can give testimony as to the value of their own

12  property.  Obviously the Court would need to take that into

13  account with the other objective measures, but those are -- those

14  are evidentiary testaments that the Court could use to determine

00:26:28
15  how much these properties have actually diminished in value and

16  come up with an award -- recommend an award within Alabama law

17  that would withstand Alabama legal scrutiny.

18          THE COURT:  Well, that's what I'm inclined to do.

19          And I don't know, Mr. Doyle, if you think that you have

00:26:47
20  marshaled the appropriate evidence, exhibit s, or whatnot to be

21  able to make that showing.  And I don't know what your view is as

22  to the numbers that the defendants gave me in their brief.

23          MR. DOYLE:  I would have to go back and review.  I

24  don't know off the top of my head, Your Honor.  I know it's

00:27:08
25  significantly less than what the cost of remediation is.  We now

**OFFICIAL TRANSCRIPT**

1    know what the cost of remediation is.

2            THE COURT:  Is it not more than the diminution of value

3    of the --

4            MR. DOYLE:  I don't believe so.  I don't believe so.

5    The fair market value --

6            THE COURT:  What was the fair market value of these two

7    homes when the sheetrock was installed?

8            MR. DOYLE:  I believe it was slightly more than -- if

9    my recollection is correct -- I don't remember the numbers

10   exactly, but my recollection is -- you know, these are

11   three-bedroom, two-bath houses in Opelika, Alabama.  They are not

12   half-million-dollar houses, but they're in the $200,000 range,

13   something like that.

14           MS. EIKHOFF:  Your Honor, we have --

15           THE COURT:  Hold on.

16           MS. EIKHOFF:  Oh, I'm sorry.  Excuse me.

17           MR. DOYLE:  Opposing counsel brought up an interesting

18   point.  They've got the tax records that show what the government

19   valuated the property value to be at certain times based on

20   whatever mechanisms they utilize, which isn't necessarily the

21   fair market value.

22           THE COURT:  It sure isn't in New Orleans.

23           MR. DOYLE:  Right.

24           THE COURT:  I don't know about Alabama, but...

25           MR. DOYLE:  That's right.

**OFFICIAL TRANSCRIPT**

1       So I don't know how to go about doing that.  If it
2  would require, you know, plaintiffs to get an appraisal done --
3  they haven't had one.  I think the parties had an appraisal done
4  when they purchased the properties, but I'm not sure that either
5  one of them have had one since then.
6       You know, that's something the defendants asked for
7  during the deposition.  It's not part of what the discovery
8  process is.  It's not what was required for production under
9  either of those two forms, but --
10       THE COURT:  Well --
11       MR. DOYLE:  It's not even available.
12       THE COURT:  -- here's the problem.  Here's the problem.
13  I'm very troubled by the fact that you-all are relying on a
14  couple of estimates that were just created.  And in my
15  experience, you know, when an Xactimate becomes a relevant piece
16  of evidence in a trial or an evidentiary hearing, the person
17  who's testifying about it is qualified as an expert of some sort
18  to do so.  I've got a serious problem with you-all relying solely
19  on these documents to prove diminution of value.
20       Now, maybe that was a gambit on your part.  I don't
21  know what the thinking was, but I do want to give your clients an
22  opportunity to prove the extent to which their properties have
23  diminished in value.  One way to do that is to have an appraisal
24  done of each property now.  And, you know, we'll look at the
25  appraisal now, we'll look at the appraisal then, we'll have them

**OFFICIAL TRANSCRIPT**

1   testify as to certain circumstances -- they've tried to sell it,
2   they can't.  They asked -- they asked $50,000 to sell the house
3   and never got an offer.  Whatever testimony that they have to
4   gloss that information will all be helpful and relevant.  And I
5   know you've got other elements of damages that have been listed
6   in the forms, and we add all of that up and that's where we are.

7          But in my view, given the problem that I have with
8   these estimates, and the sort of -- I mean, honestly, while I
9   think I understand Alabama law as to where -- when these
10  estimates would be appropriate and testimony would be
11  appropriate, notwithstanding that they're untimely in this case,
12  I'm not exactly sure how a Court is supposed to do the math to
13  determine how much -- to what extent a property is diminished in
14  value.

15         I can't see that the guidance says, Well, if it's worth
16  $200- and it's $150,000 to remediate, that's the value of the
17  diminution; those two things are equal.  If that was the case,
18  the cases would say that.  They don't say that.

19              MR. DOYLE:  Right.

20         THE COURT:  They say that the cost of remediation is
21  relevant to a determination of diminution of value.  They do not
22  say it's the same thing, so I'm not even sure how I'm supposed to
23  do that now.

24         And because, as I sit here today, my view is that I
25  don't have estimates that we can use in this hearing, my thought

00:30:05
00:30:27
00:30:44
00:30:59
00:31:19

**OFFICIAL TRANSCRIPT**

1  is that the parties agree on an appraiser and we get the two

2  properties appraised, present those to me along with the

3  testimony of the plaintiffs, and we have our hearing.

4          MR. DOYLE:  Okay.

*00:31:36*

5          MS. EIKHOFF:  Your Honor, I just might add that it is

6  also a matter of public record that the Gibbs' home was sold to

7  them for $164,000 when they bought it, and also Mr. Carter, he

8  built the home himself.

9          THE COURT:  Right.

*00:31:56*

10          MS. EIKHOFF:  So he bought a lot for about $30,000 or

11  $35,000, and then we have a build cost of about $110,000.  So we

12  do have some records of those --

13          THE COURT:  The cost for him to buy a lot and build a

14  house does not necessarily equate to what the fair market value

*00:32:13*

15  of the house is.  That's why he does those things.

16          MS. EIKHOFF:  Right.

17          THE COURT:  He's not necessarily building that house to

18  live in it.  He bought, what, six lots, I think -- or he bought a

19  number of lots and built -- I mean, he's expecting one day to

*00:32:27*

20  sell that house at a -- for more than what he put into it.

21          So I -- these are all relevant to my determination of

22  what I think the diminution of the value of the properties are.

23  Everything that you've just suggested is relevant.  I think the

24  appraisals before and now are relevant.  Now is the time that

*00:32:48*

25  counts because now is when I'm making the recommendation as to

**OFFICIAL TRANSCRIPT**

1  what the diminution is.

2      So let's get an appraisal of those two properties.

3  Present it to the Court along with all of the other evidence that

4  you-all have just discussed, and the testimony of the individual

5  plaintiffs, and we go from there.  That's how I think -- I think

6  that's the appropriate course to take.

7      MR. DOYLE:  Your Honor, can I just get a clarification

8  on the appraisal?

9      THE COURT:  Yeah.

10      MR. DOYLE:  Because we've had appraisals done -- or

11  offered to us -- provided to us by our clients, who opted out in

12  this case and others, where they had an appraisal done for the

13  fair market value without Chinese drywall and the fair market

14  value with Chinese drywall.  What are you looking for?

15      If we are going to exclude the Xactimate by

16  Mr. Macomber, then I need to know how the Court wants to --

17  because ultimately under Alabama law we have to figure out what

18  the top number is that this can't exceed.  That's fair market

19  value.  And then the remediation cost would be something less

20  than that.  That's what Alabama law will allow.  If it exceeds

21  it, then we have this whole *Poffenbarger* situation where it

22  exceeds the fair market value.

23      So I'm trying to get an understanding of what it is

24  you're looking for that will be useful to you when you're making

25  the recommendation.

00:33:07

00:33:20

00:33:38

00:33:56

00:34:10

**OFFICIAL TRANSCRIPT**

1    THE COURT:  The cost of remediation I don't know how
2 you prove.  You've given me untimely Xactimates.
3    The appraisals -- you're telling me that your clients
4 had their properties appraised at some point in the past before
*00:34:27*
5 Chinese drywall was put into their homes; is that correct?
6    MR. DOYLE:  That's right.
7    THE COURT:  That's an appraisal -- you know, years ago,
8 albeit.  That's an appraisal of the fair market value of the home
9 without Chinese drywall.
*00:34:40*
10    MR. DOYLE:  Right.
11    THE COURT:  The only thing that matters is what is the
12 appraised value of the house now with Chinese drywall, because
13 that's the condition that they exist in.
14    MR. DOYLE:  Yes, sir.
*00:34:53*
15    THE COURT:  Okay.  We need an appraisal of those homes
16 as they exist today.
17    Now, how do we select an appraiser?  Do I make you-all
18 agree on someone?  Can we do that?
19    MR. DOYLE:  I don't know.
*00:35:11*
20    MS. EIKHOFF:  We're certainly willing to try.
21    THE COURT:  Why don't y'all agree on an appraiser.
22    MS. EIKHOFF:  I'm certainly willing to.
23    MR. DOYLE:  We'll try, Your Honor.
24    THE COURT:  Look, if the appraiser who did the previous
*00:35:23*
25 appraisals is still available, I don't know why you wouldn't

**OFFICIAL TRANSCRIPT**

1  agree to use that entity.

2       MS. EIKHOFF:  We're not aware of any prior appraisals

3  of these properties.  We did ask the plaintiffs if they had any

4  and we were told there were none.  We also didn't get any

5  produced to us, so I'm not sure what the prior appraisals are.

6  We will certainly consider -- if there was an appraiser that

7  we've never heard of, we'll certainly consider it.  I don't know

8  who this prior appraiser is.

9       THE COURT:  Okay.  So here's what we're going to do.

10 I'm going to issue a minute entry that lays this out with some

11 timelines to have this accomplished.  Then we can have our -- we

12 will have a brief status conference so you-all can let me know

13 when to expect the written appraisals.

14      I'm going to set a deadline for the appraisal to be

15 conducted.  And then as soon as that happens, I'm going to get

16 you-all on the phone so you-all can advise me when we can expect

17 the actual document to be produced.  And then we'll -- as I said,

18 we'll go from there.

19      Obviously the cost of the appraisal is going to be an

20 element of damages that I'm almost certain to include in any

21 recovery by the plaintiffs.

22      And I think -- I'll go back and look at my notes.  If

23 there are any other questions I want you-all to answer, I'll

24 include that in the minute entry.  Okay?

25      MR. DOYLE:  Yes.

00:35:37
00:35:53
00:36:14
00:36:35
00:36:55

**OFFICIAL TRANSCRIPT**

1       Your Honor, may I offer one other alternative?  We

2  don't have a problem -- throughout this effort at the end to

3  quantify what the cost of remediation is, we employed

4  Mr. Macomber to do these Xactimates.  We don't intend to offer

5  him as an expert.  All he is doing is plugging information into a

6  program.  He's not going to be offering any opinions.  He's going

7  to be offering what the result is of the process utilizing some

8  software.  That's it.  That's all he is going to do.

9       Why don't we just make him available for deposition?

10  That way they can scrutinize whether or not it's an accurate and

11  useful methodology or amount or product that he has produced.

12       THE COURT:  Well, let me hear from defense.

13       MS. EIKHOFF:  Yes, Your Honor.  If I may respond to the

14  idea that Mr. Macomber is not being offered as an expert but just

15  a fact witness, there are so many reasons why we think that that

16  is not an appropriate way to view him.

17       First of all, coming up with remediation plans and

18  construction cost estimates and highly skilled technical work --

19  using Xactimate is highly skilled technical work.  An average

20  person can't come up with a 465-line remediation cost estimate.

21  As Your Honor said, it needs to be explained to the jury and to

22  the Court.

23       And Mr. Doyle knows that Mr. Macomber is an expert

24  because he's used him as an expert in Chinese drywall cases for

25  the last several years.  And I'm holding in front of me -- we

**OFFICIAL TRANSCRIPT**

1 were able to just obtain this yesterday via a report that was

2 written by Mr. Macomber submitted on December 31, 2019, that's

3 entitled "Defective Knauf Drywall Expert Report For Plaintiffs

4 Represented By Doyle Law Firm" signed by Shawn Macomber, so he's

00:38:55  5 already testified as an expert.

6       THE COURT:  Ms. Eikhoff, let me interrupt you.

7       Look, I understand what you're saying about that

8 report.  That doesn't mean that everybody that testifies as an

9 expert necessarily is going to testify as an expert the next

00:39:13  10 time.

11       Having said that, this is expert testimony.  In my

12 view, it's expert testimony.  I have never been involved in a

13 case where someone testified about an Xactimate estimate where

14 that person was not first qualified as an expert to do so because

00:39:27  15 the information that is so-called plugged into the program is not

16 necessarily factual information.  Those are his decisions about

17 what needs to be done based on his expertise, and then he plugs

18 them into the program that is a cost-estimating program.

19       But what has to go -- it's not what the cost estimate

00:39:53  20 ultimately is that is spit out of the Xactimate that necessarily

21 matters, it's what goes into it.  He's the one determining what

22 goes into it, and that's not based on his status as a fact

23 witness.  Your clients couldn't have gone and done that

24 themselves because they don't have the expertise.

00:40:08  25       MR. DOYLE:  Your Honor, may I respond?

**OFFICIAL TRANSCRIPT**

1    THE COURT:  Yes.

2    MR. DOYLE:  In this case there wasn't any judgment

3  call.  And what we asked Mr. Macomber to do was simply follow

4  what Judge Fallon laid out precisely in 20741 starting at, I

5  think, No. 6 -- or No. 8.  I can't remember what it is.

6    But there is a -- after the damages hearings that

7  Ms. Eikhoff attended back in 2015, Judge Fallon issued this

8  damages order that has the formula in it as well.

9    But what he said was, this is what needs to be

10  remediated.  And if you go through and you look and what -- you

11  tick off each item that needs to be included.  You know, all

12  drywall removed, all plumbing replaced, all wiring replaced,

13  et cetera, et cetera, all the way down.  You take the house all

14  the way down to the studs.  There's not any real difference of

15  opinion about this.  Judge Fallon lays it out.

16    And what we asked him to do was apply that strictly

17  based on what Judge Fallon has instructed you to do.  Nothing

18  else.  And so that's why he's going to -- that's why we intended

19  to call him as a fact witness.  We don't want him to make any

20  judgment calls.  We want him to go to the house, count outlets,

21  look at the fixtures, identify what they are, and plug them in.

22  But there is not any judgment call --

23    THE COURT:  I cannot get past the fact that -- first of

24  all, I disagree that this guy can testify purely as a fact

25  witness.  And I -- I cannot get past the fact that these

00:40:22

00:40:40

00:40:58

00:41:12

00:41:29

**OFFICIAL TRANSCRIPT**

1   documents were created a couple of weeks ago.  And, I mean, the

2   objective here is to determine the diminution of value of the

3   property of the plaintiffs, and that's what these documents are

4   being used to accomplish.  And, I mean, they were produced too

5   late.  They were created and produced too late.

6           So we're going to take the alternate approach that I've

7   discussed, and we're going to have the homes appraised as they

8   are.  The appraisers are going to take into consideration

9   whatever it is that they normally take into consideration in

10  appraising a house to determine its fair market value, including

11  the fact that one of them has been unoccupied for a period of

12  time and that they both have Chinese drywall in them, and we're

13  going to see where that gets us.  And then we're going to proceed

14  from there.  Okay?

15          MR. DOYLE:  (Nods head.)

16          MS. EIKHOFF:  Yes, Your Honor.

17          THE COURT:  I'll issue a minute entry that sets

18  everything out in detail with a timeline.  And as we move

19  forward -- I would like to try to get -- I think Judge Fallon

20  wants to get this wrapped up as quickly as possible.  That's why

21  he gave us the date that he did.  But I'm going to tell him

22  what's going on and we're still going to get this done as quickly

23  as possible.

24          So I'll give you-all some deadlines.  I would like

25  you-all to start talking about selecting an appraiser so there

**OFFICIAL TRANSCRIPT**

1  are no arguments over at least who does this work.

2          MS. EIKHOFF:  Yes, Your Honor.

3          And I just want to -- as kind of a housekeeping matter

4  for the record, we do have some other objections.  We do not need

5  to address them today, but, Your Honor, I just wanted to make

6  sure that our other objections that weren't addressed today still

7  stand as objections.

8          THE COURT:  Yeah, I'll address them.  To the extent

9  that I think you have any objections that survive this process,

10  we'll address them before the evidentiary hearing starts.

11          I mean, my -- I think that for the most part, the

12  relevance objections and the timeliness objection are what I was

13  looking at.  And I mean, if -- I think if we go this route, I

14  don't know what objections will still survive, but you can bring

15  those to my attention when we get closer to the hearing and I'll

16  deal with them.

17          MS. EIKHOFF:  Thank you.

18          MR. DOYLE:  Thank you.

19          THE COURT:  Thank you all.  I'll be talking to you-all

20  soon, I'm sure.

21          MS. EIKHOFF:  Thank you.

22          MR. DOYLE:  Thank you, Your Honor.  Have a good day.

23                              (Proceedings adjourned.)

24

25

**OFFICIAL TRANSCRIPT**

00:43:07

00:43:20

00:43:40

00:43:47

1                          * * * * *

2                         CERTIFICATE

3

4        I hereby certify this 6th day of April, 2021, that the

5   foregoing is, to the best of my ability and understanding, a true

6   and correct transcript of the proceedings in the above-entitled

7   matter.

8

9                                    /s/ Mary V. Thompson

10                          _____
                                 Official Court Reporter

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**OFFICIAL TRANSCRIPT**