**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION, | MDL Docket No. 2047 |
| THIS DOCUMENT RELATES TO: | SECTION L<br>JUDGE FALLON<br>MAG. JUDGE NORTH |
| Barbara Ann Alfonso; Kerry Barre; Joseph Bourlet; Gregory Cross; Greater NOLA Homes, LLC; Howard Jones; and, Terrence Ross and Rhonda Ross,<br>          Plaintiffs,<br>v.<br><br>Beijing New Building Materials Group, Co., Ltd.; Beijing New Building Materials Public Limited Co.; China National Building Material Co., Ltd.; Taishan Gypsum Co., Ltd. f/k/a Shandong Taihe Dongxin Co., Ltd.; Tai'an Taishan Plasterboard Co., Ltd.; and, The State-Owned Assets Supervision and administration Commission of the State Council,<br>          Defendants. | Case No. 2:15-CV-04127-EEF-JCW |

**ORDER AND REASONS**

Before the Court are two motions: Taishan's Motion for Summary Judgment, R. Doc. 23070, and CNBM Group's Motion for Joinder and Motion for Summary Judgment, R. Doc. 23071. The Court held oral argument on these motions on May 12, 2021. After considering the arguments, the applicable law, and the extensive briefing, the Court now rules as follows:

**I.   BACKGROUND**

From 2004 through 2006, the housing boom in Florida and rebuilding efforts necessitated by Hurricanes Rita and Katrina led to a shortage of construction materials, including drywall. As a result, drywall manufactured in China was brought into the United States and used to construct and refurbish homes in coastal areas of the country, notably the Gulf Coast and East Coast. Sometime after the installation of the Chinese drywall, homeowners began to complain of

1

emissions of foul-smelling gas, the corrosion and blackening of metal wiring, surfaces, and objects, and the breaking down of appliances and electrical devices in their homes. *See In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, 894 F. Supp. 2d 819, 829–30 (E.D. La. 2012), *aff'd*, 742 F.3d 576 (5th Cir. 2014). Many of these homeowners also began to complain of various physical afflictions believed to be caused by the Chinese drywall.

These homeowners then began to file suit in various state and federal courts against homebuilders, developers, installers, realtors, brokers, suppliers, importers, exporters, distributors, and manufacturers who were involved with the Chinese drywall. As a result, many homebuilders also filed suit seeking to recoup their damages. Because of the commonality of facts in the various cases, this litigation was designated as a multidistrict litigation. Pursuant to a Transfer Order from the United States Judicial Panel on Multidistrict Litigation on June 15, 2009, all federal cases involving Chinese drywall were consolidated for pretrial proceedings in MDL 09-2047 before this Court. The Chinese drywall at issue was largely manufactured by two groups of defendants: (1) the Knauf Entities and (2) the Taishan Entities. The litigation has focused upon these two entities and their downstream associates and has proceeded on strikingly different tracks for the claims against each group.

Relevant to the instant motions are the Chinese defendants. These defendants include the principal Chinese-based Defendant, Taishan, namely, Taishan Gypsum Co. Ltd. ("TG") and its wholly-owned subsidiary, Tai'an Taishan Plasterboard Co., Ltd. ("TTP") (collectively "**Taishan**" or "**Taishan Entities**"). Other Chinese-based defendants include China New Building Materials Group ("CNBM Group"), China New Building Materials Co. ("CNBM"), CNBMIT Co. Ltd. ("CNBMIT"), CNBM USA Corp. ("CNBM USA"), and United Suntech Craft, Inc. ("United

2

Suntech"), as well as the Beijing New Building Materials Public Limited Company ("BNBM") and Beijing New Building Material Group ("BNBMG").

The Court's initial inquiry regarding Taishan involved four cases in this MDL: (1) *Germano v. Taishan Gypsum Co.* (Case No. 09-6687); (2) *Mitchell Co. v. Knauf Gips KG* (Case No. 09-4115); (3) *Gross v. Knauf Gips KG* (Case No. 09-6690); and (4) *Wiltz v. Beijing New Building Materials Public Ltd.* (Case No. 10-361). The first issues involving Taishan arose when Taishan failed to timely answer or otherwise enter an appearance in *Mitchell* and *Germano*, despite the fact that it had been properly served in each case. Thus, after an extended period of time, the Court entered preliminary defaults against Taishan in both of these cases. In February 2015, after many difficulties and delays, Taishan finally appeared before this Court.

On March 17, 2015, the Court ordered Taishan and the BNBM and CNBM Entities to participate in expedited discovery related to the relationship between Taishan and BNBM/CNBM, including whether affiliate and/or alter ego status exists. In March 2016, the Court granted CNBM Group's motion to dismiss, finding it was an "agent or instrumentality of a foreign state" within the meaning of the Foreign Sovereign Immunities Act ("FSIA"), and therefore outside the jurisdiction of this Court under 28 U.S.C. § 1603(b). R. Doc. 20150. The Court determined the tortious activity exception did not apply because the alleged tortious conduct did not occur within the United States under 28 U.S.C. § 1605(a)(5). Further, the Court found the commercial activity exception did not apply, as CNBM Group did not directly manufacture, inspect, sell, or market drywall in the United States. Because the PSC failed to present evidence sufficient to overcome the presumption that CNBM Group was entitled to independent status for purposes of the FSIA, the Court granted the motion and dismissed CNBM Group from the present litigation.

After concluding it lacked personal jurisdiction over CNBM Group, on April 21, 2017, the Court issued a 100-page opinion related to jurisdictional challenges being raised with respect to CNBM, BNBM Group, and BNBM. The Court found Taishan was an agent of BNBM under Florida and Virginia law, such that Taishan's contacts in Florida and Virginia are imputed to BNBM. R. Doc. 20739. This Court further found that CNBM, BNBM Group, and BNBM were part of a single business enterprise with Taishan under Louisiana law, such that Taishan's contacts in Louisiana may be imputed to them, and that the Court has jurisdiction over CNBM, BNBM Group, and BNBM in relation to Plaintiffs' claims based on Louisiana law. *Id.* This opinion was later affirmed by the Fifth Circuit. *In re Chinese-Manufactured Drywall Products Liab. Litig.*, 811 Fed. App'x 910 (5th Cir. 2020).

The motions presently before the Court involve seven plaintiffs from the *Brooke* omnibus complaint, which was filed by the PSC on September 4, 2015. No. 15-4127, R. Doc. 1. On November 23, 2015, the PSC filed nearly identical *Brooke* omnibus complaints in the Southern District of Florida and the Eastern District of Virginia. Nos. 15-24348; 15-506. On January 15, 2016, the BNBM Defendants moved to dismiss the *Brooke* complaint. R. Doc. 19984. On March 6, 2019, the Court granted in part and denied in part this motion, holding, in relevant part that: 1) the motion to dismiss with respect to the timeliness of certain plaintiffs was premature but these Plaintiffs would "be required to prove that neither knew or should have known of their causes of action sufficient to satisfy their respective jurisdictions' discovery law, a highly fact based inquiry not appropriate for a motion to dismiss"; 2) the Louisiana-based claims for negligence, negligence *per se*, strict liability, private nuisance, breach of the warranty of fitness, and unjust enrichment were dismissed with prejudice but the Louisiana-based claims regarding alleged breach of the

warranty against redhibitory defections and violations of the Louisiana Products Liability Act survived. R. Doc. 22124.

In March 2019, the Court remanded the Florida and Virginia *Brooke* complaints, retaining the Louisiana *Brooke* action. R. Docs. 22138; 22139. In January 2020, the Court approved the Taishan Class Settlement, which resolved many of the claims in the Louisiana *Brooke* action, and certified the *Brooke* class. R. Docs. 22460; 22466. However, ten of the Louisiana *Brooke* plaintiffs chose to opt out and litigate their claims individually. *Id.* The instant motions involve seven of these opt-outs: Barbara Alfonso, Kelly Barre, Joseph Bourlet, Gregory Cross, Greater Nola Homes, LLC, Howard Jones, and Terrence and Rhonda Ross.

## II. PENDING MOTIONS

### A. Taishan's Motion for Summary Judgment [R. Doc. 23070]

Taishan moves for summary judgment against seven *Brooke* opt-outs, arguing that 1) the subsequent purchaser rule and/or 2) the applicable Louisiana prescriptive period bars all their claims. R. Doc. 23070. Taishan argues that "damage to property—here, alleged to be the installation of Chinese Drywall—creates a ***personal*** right to sue, which unlike a real property right, does not transfer to a subsequent purchaser with the transfer of the property itself." *Id.* at 7 (citing *Eagle Pipe & Supply, Inc. v. Amerada Hess Corp.*, 2010-2267 (La. 10/25/11); 79 So. 3d 246, 275). Taishan claims that the Barre, Cross, Greater NOLA Homes, LLC, and Ross plaintiffs purchased their respective homes after the defective drywall was installed, so they are prohibited from bringing claims as subsequent purchasers. R. Doc. 23070 at 7-8. Taishan argues that none of these plaintiffs meet the narrow exception to the subsequent purchaser rule, which is when the subsequent owner possesses an express assignment or subrogation of a personal claim from the previous owner. *Id.* at 7. Taishan contends that any assignments of personal rights were ineffective

5

because the assignors were absent Taishan Class Settlement members, or because the assigned claims are prescribed. *Id.* at 9-13. Taishan cites this Court's ruling in the *Bennett* action against Knauf, where the Court applied the subsequent purchaser rule and granted summary judgment for defendant on certain Louisiana-based plaintiffs' claims. *Id.* at 8 (citing R. Doc. 22615). Taishan believes that the outcome should be the same in this case and that summary judgment should be granted.

Next, Taishan argues that all of the remaining *Brooke* claims are facially time-barred because they were filed between 2015 and 2018, and the installation of the drywall occurred many years earlier. *Id.* at 13. Taishan contends that summary judgment is now appropriate for six of the *Brooke* plaintiffs (Terrence and Rhonda Ross, Joseph Bourlet, Gregory Cross, Howard Jones, and Barbara Alfonso) because they allegedly knew about the defective drywall years before joining the *Brooke* action. *Id.* at 13. Taishan cites Louisiana Civil Code Article 3492, which provides that the applicable prescriptive period for products liability claims is one year from the day the injury or damages is sustained. *Id.* at 14. Taishan acknowledges the availability of *contra non valentem* in Louisiana but argues that it cannot apply to these six plaintiffs because they all allegedly knew of the defective drywall over a year before joining the *Brooke* action. *Id.* at 14-19. Taishan also argues that certain procedural deficiencies surrounding these claims serve as additional grounds for dismissal and summary judgment. *Id.*

The *Brooke* plaintiffs oppose this motion separately in two groups: Terrence and Rhonda Ross ("Ross Plaintiffs"), represented by Kevin O'Bryon; and Barbara Alfonso, Kelly Barre, Joseph Bourlet, Gregory Cross, Greater Nola Homes, LLC, and Howard Jones, represented by Jimmy Doyle ("Doyle Plaintiffs"). R. Docs. 23080; 23081. The Ross Plaintiffs claim that they bought their home from C. Adams Construction and Development, LLC ("C. Adams") in January 2007,

which was shortly after the company had renovated and installed the defective drywall. R. Doc. 23079 at 2. The Ross Plaintiffs argue that their state court suit against C. Adams in July 2009 "continuously interrupted prescription on their claims against the Taishan defendants." *Id.* at 8. The Ross Plaintiffs argue that as soon as they discovered that Taishan was involved, they amended their petition to name Taishan entities as defendants liable *in solido* with C. Adams, pursuant to La. Civ. Code Art. 3462. *Id.* at 2. The Ross Plaintiffs assert that the doctrine of *contra non valentem* applies to their claim because the damage was not immediate—but instead took months manifest after purchasing their home. *Id.* at 4-5. Further, the Ross Plaintiffs contend that they "obtained an explicit and valid assignment" of C. Adams' rights against Taishan in February 2014, and the assignment was effective because "the prescription period had not yet run on the original owner's contribution and indemnity claims." *Id.*

The Doyle Plaintiffs argue that the equitable tolling principles outlined in *American Pipe & Construction Co. v. Utah, et al.* apply to all Louisiana plaintiffs in *Brooke*, and they adopt the subsequent purchaser arguments made by the Ross Plaintiffs. R. Doc. 23081 (citing 414 U.S. 438 (1974)). The Doyle Plaintiffs assert that in putative class actions, the statute of limitations is equitably tolled "until the district court denies class certification or when the case terminates for some other reason, whichever comes first." *Id.* at 4. The Doyle Plaintiffs further claim that "because the class actions at issue are intra-jurisdictionally [rather than cross-jurisdictionally] filed . . . the protection afforded to all Plaintiffs with claims involving real property within Louisiana is without dispute." *Id.* at 5. The Doyle Plaintiffs claim that the Bourlet, Cross, and Jones claims were thus timely filed because the omnibus *Brooke* complaint was filed within one year of the *Amorin* class certification on September 26, 2013. *Id.* at 5. Lastly, the Doyle Plaintiffs argue that Greater Nola Homes, LLC and Gregory Cross received a personal right to sue from the previous

7

owners before the one-year prescriptive period expired on January 10, 2021. *Id.* at 7. The Doyle Plaintiffs do not oppose summary judgment for Ms. Barre and concede that Kelly Barre "did not receive a personal right to sue assignment of his property." *Id.* at 8. Taishan filed a reply motion in further support of its motion for summary judgment. R. Doc. 23084.

### B. CNBM and BNBM Entities' Motion for Joinder and Motion for Summary Judgment [R. Doc. 23071]

Defendants CNBM, BNBM Group, and BNMB PLC (collectively, "B&C Companies") request to join Taishan's motion for summary judgment and move for summary judgment separately on the issue B&C Companies' derivative liability. R. Doc. 23071. The B&C Companies urge the Court to reconsider its prior jurisdictional rulings imputing Taishan's contacts to the B&C Companies in view of new information about Taishan's corporate independence. R. Doc. 23071-1 at 2. The B&C Companies argue that 1) Chinese law is applicable to this inquiry and does not allow for veil-piercing; 2) even if the Court declines to apply Chinese law, the same result should occur under Louisiana law; and 3) Taishan and the B&C Companies do not comprise a single business enterprise. *Id.* at 4-6.

First, B&C Companies argue that Chinese law—not Louisiana law—is applicable to the corporate veil-piercing inquiry, and the Court "erred by accepting Plaintiffs' entreaties to disregard Chinese law by invoking the false conflicts doctrine." *Id.* at 5. B&C Companies assert that they did not abuse the corporate form to evade debts (as required under Chinese law) and that Taishan is "a successful, well-capitalized, and solvent company, that has satisfied its debts in this litigation and funded the entirety of the $248 million MDL settlement." *Id.* at 5-6. Next, B&C Companies argue that Taishan is not the alter ego of the B&C Companies under Louisiana law, and the Court incorrectly pierced the corporate veil in previous rulings. *Id.* at 7. B&C Companies contend that the factors outlined by the Louisiana Supreme Court in *Riggins v. Dixie Shoring* show that Taishan

8

and B&C Companies are in fact distinguishable, and the Court applied the incorrect standard by relying on *Hargrave v. Fiberboard*. *Id.* at 6 (citing 710 F.2d 1154, 1159 (5th Cir. 1983); 590 So.2d 1165, 1167 (La. 1991)). Third, B&C Companies argue that Chinese law applies and does not recognize the single business enterprise theory as a basis for imputing liability from one entity to another. *Id.* at 9. B&C Companies reiterate that the Court's determination that Taishan and B&C Companies are a single business enterprise "rested on an expansion of SBE law that departs significantly from the Louisiana Supreme Court's test." *Id.*

The Ross Plaintiffs filed an opposition to this motion, and the Doyle Plaintiffs opposed this motion within their opposition to Taishan's motion for summary judgment. R. Docs. 23079; 23081. The Ross Plaintiffs argue that the "motion amounts to a collateral attack upon, or at least a request for reconsideration of, the court's previous ruling" and point out that the Fifth Circuit affirmed the Court's jurisdictional ruling regarding B&C Companies last year. R. Doc. 23079 at 1 (citing *In re Chinese-Manufactured Drywall Products Liab. Litig.*, 811 Fed. App'x 910 (5th Cir. 2020)). Further, the Ross Plaintiffs point out that "the exercise of personal jurisdiction was premised in large part of the determination that the B&C entities acted as a single business enterprise with the Taishan entities." *Id.* at 3. Similarly, the Doyle Plaintiffs argue that granting this motion amounts to the Court abandoning its previous ruling that the "Taishan, BNBM, BNBM Group, and CNBM were members of a single business enterprise," and they "see no reason to release the B&C Defendants at this time." R. Doc. 23081 at 7. The B&C Companies filed a reply in further support of their motion. R. Doc. 23085.

### III. APPLICABLE LAW

#### a. *Rule 56 Motion for Summary Judgment*

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to

9

any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)). When ruling on a motion for summary judgment, a court may not resolve credibility issues or weigh evidence. *See Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008); *Int'l Shortstop, Inc. v. Rally's Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991). Under Federal Rule of Civil Procedure 56(c), the moving party bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 322.

"Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial." *Id.* The court must find "[a] factual dispute [to be] 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party [and a] fact [to be] 'material' if it might affect the outcome of the suit under the governing substantive law." *Beck v. Somerset Techs., Inc.*, 882 F.2d 993, 996 (5th Cir. 1989) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Moreover, the court must assess the evidence and "review the facts drawing all inferences most favorable to the party opposing the motion." *Reid v. State Farm Mut. Auto. Ins. Co.*, 784 F.2d 577, 578 (5th Cir. 1986). But "unsubstantiated assertions," "conclusory allegations," and merely colorable factual bases are insufficient to defeat a motion for summary judgment. *See Hopper v. Frank*, 16 F.3d 92, 97 (5th Cir. 1994); *Anderson*, 477 U.S. at 249–50.

### b. The Subsequent Purchaser Rule

In *Eagle Pipe & Supply, Inc. v. Amerada Hess Corp.*, the Louisiana Supreme Court held that a subsequent owner of real property has no right to sue a tortfeasor for damage previously

inflicted absent an assignment or subrogation of the prior owner's personal right to sue for that damage. 2010-2267 (La. 10/25/11), 79 So. 3d 246, 275. This concept, known as the subsequent purchaser doctrine, imagines that damage to property injures an owner's real interest in that property, creating a personal right to sue the offending tortfeasor. *Guilbeau v. Hess Corporation*, 854 F.3d 310, 312 (5th Cir. 2017). In other words, where damage was inflicted before the subsequent purchaser had any legal interest in the property, she did not sustain the injury, and therefore, has no personal right of action against the tortfeasor. *See Clark v. J.L. Warner & Co.*, 6 La. Ann. 408 (1851) ("[T]he reparation must be made to him who suffered the injury."). The doctrine applies regardless of whether the damage is apparent or not, although the distinction has bearing on the available remedy. In the case of apparent property damage, the purchaser is presumed to have had knowledge of the condition and negotiated a reduced sale price accordingly. In contrast, when the damage is not apparent, a cause of action against the seller exists "for rescission of the sale or reduction of the sale price." *Boone v. Conoco Phillips Co.*, 2013-1196 (La. App. 3 Cir. 5/7/14), 139 So. 3d 1047, 1054.

Under the subsequent purchaser rule, the property owner's personal right is not transferable without an *express* assignment or subrogation. *Id.* An assignment is effective "against the debtor only from the time the debtor has actual knowledge, or has been given notice of the assignment" and the "assignee acquires no greater rights than his assignor." *TCC Contractors, Inc. v. Hosp. Serv. Dist. No. 3 of Par. of Lafourche*, 2010-0685 (La. App. 1 Cir. 12/8/10), 52 So. 3d 1103, 1112. In *Eagle Pipe*, the Louisiana Supreme Court concluded that the following language, included in the act of sale, did not constitute an express assignment or subrogation: "[the sellers] do by these presents sell, transfer and deliver, with full guarantee of title and free from all encumbrances, and with full subrogation to all their rights and action of warranty against previous owners . . ." 79 So.

11

3d at 281. Similarly in *Prados v. South Central Bell Telephone Co.*, the court found that an act of sale containing similar language did not constitute an express subrogation because it was "directed to the rights and actions of warranty against previous owners," and did not mention the specific cause of action at issue or the right to seek damages. 329 So. 2d 744, 750 (La. 1975). The personal right to sue may be assigned after the act of sale is executed. *See Cotton Exch. Inv. v. Xcel Air Conditioning*, No. CV 16-17543, 2019 WL 2142075, at *5 (E.D. La. May 16, 2019).

    **c.**  ***Prescription and Equitable Tolling***

La. Civ. Code. Art. 3492 states that "[d]elictual actions are subject to a liberative prescription of one year. This prescription commences to run from the day injury or damage is sustained." La. Civ. Code. Art. 3492 (2020); *see also Bailey v. Khoury*, 04-0620, p. 10 (La. 1/20/05); 891 So. 2d 1268, 1276. However, in Louisiana the doctrine of *contra non valentem* tolls prescription in four instances, including: "(1) where there was some legal cause which prevented the courts or their officers from taking cognizance of or acting on the plaintiff's action; (2) where there was some condition coupled with the contract or connected with the proceedings which prevented the creditor from suing or acting; (3) where the debtor himself has done some act effectually to prevent the creditor from availing himself of his cause of action; and (4) where the cause of action is not known or reasonably knowable by the plaintiff, even though this ignorance is not induced by the defendant." *Wells v. Zadeck*, 89 So. 3d 1145, 1150 (La. 2012). The Louisiana Supreme Court has cautioned that *contra non valentem* or equitable tolling is an extraordinary remedy, to be applied only in "exceptional circumstances." *Marin v. Exxon Mobil Corp.*, 48 So. 3d 234, 245 (citing *Renfroe v. State ex rel. Dept. of Transp. & Dev.*, 809 So. 2d 947 (La. 2002)).

Additionally, these motions deal with prescription in view of assignments of the right to sue Defendants. Under Louisiana Civ. Code Art. 3462, "[p]rescription is interrupted . . . when the

obligee commences action against the obligor, in a court of competent jurisdiction and venue." La. Civ. Code Art. 3462. The obligee must have a right of action when it originally filed suit, since the initial filing cannot constitute an "action" for the purposes of interrupting prescription under article 3462. *See TCC Contractors, Inc.*, 52 So. 3d at 1116 ("Because a civil action by definition can be brought only by a person having a right of action, it stands to reason that an action instituted by a person determined to have no right of action cannot serve as an "action" sufficient to interrupt prescription."). La. Civ. Code Art. 1153 provides that amended petitions arising out of the same "conduct, transaction, or occurrence" as the original pleadings "relate[] back to the date of filing the original pleading." La. Civ. Code. Art. 1153. However, an amended complaint filed to reflect newly-executed assignments of rights would not relate back to the initial filing because "[t]he relation back theory . . . assumes that there is a legally viable claim to which the pleading can relate back." *TCC Contractors, Inc.*, 52 So. 3d at 1116; La. Civ. Code art. 1153.

In the context of federal class actions, the United States Supreme Court has held that "the commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action." *American Pipe & Construction Co. v. Utah*, 414 U.S. 538, 554 (1974). In other words, the statute of limitations for putative class members is tolled until the class is certified or denied under Rule 23 of the Federal Rules of Civil Procedure. *Id.* at 354. However, when federal common law and state law are both at issue, this introduces another level of complexity. In *Quinn v. Louisiana Citizens Prop. Ins. Corp.*, the Louisiana Supreme Court decided whether prescription is suspended in Louisiana when a putative, federal class action is pending in another jurisdiction. 2012-0152, p. 18 (La. 11/2/12); 118 So.3d 1011, 1022. The court held that the liberative prescription period was not suspended by the federal class action because "permitting another

13

jurisdiction's laws and the efficiency (or inefficiency) of its operations to control the commencement of a statute of limitations" would be unfair to the defendants. *Id.* Further, the Court held that "Louisiana class action procedure and federal class action procedure reinforce our conviction that the legislature, in linking the suspension of La. C.C.P. art. 596 to unique provisions of Louisiana law, did not intend to adopt 'cross jurisdictional tolling.'" *Id.*

### IV. THE *BROOKE* OPT-OUTS

Each of the seven *Brooke* opt-outs at issue are categorized and discussed below.

#### a. *Subsequent Purchasers- Barre, Greater Nola Homes, Cross, and the Rosses*

Here, four of the seven *Brooke* opt-outs at issue are subsequent purchasers under Louisiana law. Plaintiff Kelly Barre bought her home from a previous owner in August 2015, which is many years after the defective drywall was installed. Plaintiffs conceded this point in their briefing and at the May 12, 2021 oral argument. Since Ms. Barre never received an assignment of a personal right to sue for damages, her claims must be dismissed.

Greater Nola Homes and Gregory Cross are subsequent purchasers under Louisiana law, and they received assignments of the right to sue from previous homeowners. Greater Nola Homes received an assignment from Robin Marie Jarvis in November 2020, while Gregory Cross received an assignment from Royal Homes, LLC ("Royal") in December 2020. Earlier that year, the Court entered a Rule 54(b) Judgment which granted final settlement approval and certified the settlement class. R. Doc. 22466. On May 26, 2020, the Court issued a Dismissal Order which effectuated the Taishan Class Settlement and dismissed all Plaintiffs who did not opt out of the settlement. R. Doc. 22859. Mr. Jarvis and Royal are considered "absent" members of the Taishan Class Settlement because they never filed a claim in or opted out of the class settlement. Therefore, any personal rights that Mr. Jarvis and Royal had to sue Taishan were extinguished as of May 26, 2020. Since

the assignment of rights came months after the dismissal, Greater Nola Homes and Mr. Cross do not possess a personal right to sue in this case, and their claims must be dismissed.

Terrence and Rhonda Ross are subsequent purchasers, and they received an assignment of a right to sue from the previous homeowner, C.A. Adams. Four months after discovering the defective drywall in their new home, the Rosses filed a lawsuit in the Jefferson Parish District Court against C.A. Adams in July 2009. The Ross Plaintiffs argue that as soon as they discovered Taishan was involved, they amended their petition to name the Taishan entities as defendants liable *in solido* with C. Adams. On January 22, 2014, the Rosses settled with C.A. Adams and received an assignment of C.A. Adams' right to sue Taishan. The Rosses argue that this assignment was valid and their state court lawsuit has continuously interrupted the one-year liberative prescription period under Louisiana law. However, the tort at issue in their case is not a continuous tortious act which would allow for the recurring interruption of prescription. By the time C.A. Adams assigned its right to sue in 2014, over five years had passed since the initial discovery of defective drywall. At that point, there was no claim to assign because the claim had prescribed. Finally, the Rosses presented no facts to show that there was an indemnification arrangement between C. Adams and Tasihan. Accordingly, the Rosses' claims must be dismissed.

  a. ***Barbara Alfonso and the* Little *Plaintiffs***

Barbara Alfonso is not a subsequent purchaser, and she intervened in the *Brooke* complaint in October 2018. Ms. Alfonso testified that she personally discovered Chinese drywall in her home around 2012 but confirmed this in 2018 through a formal home inspection. Plaintiffs did not address Ms. Alfonso in their briefing but orally argued that Ms. Alfonso's claims are tolled by the principles of *American Pipe*. However, the Court has previously dealt with this type of scenario in the *Bennett* class action. R. Doc. 22823 at 17-18. In its opinion, the Court rejected Plaintiffs'

15

arguments that the applicable prescriptive periods were equitably tolled until proper home inspections were made. *Id.* The outcome is no different here. Ms. Alfonso waited nearly six years before intervening in this case, which is well beyond the one-year liberative prescription period in Louisiana. Moreover, *American Pipe*'s equitable tolling principles do not apply to Louisiana cases, which was confirmed by the Louisiana Supreme Court in *Quinn*. 2012-0152, p. 18; 118 So.3d at 1022. Accordingly, Ms. Alfonso's claims must be dismissed.

Joseph Bourlet, Howard Jones, and Gregory Cross are associated with the *Little* class action, which was filed against Taishan in the Southern District of Alabama in 2013. *See Little, et al. v. Taishan Gypsum Co., Ltd, et al.*, No 1:13-cv-0612. In September 2015, the *Little* Plaintiffs filed suit against Taishan a second time via the original *Brooke* complaint, which was filed in the Eastern District of Louisiana. These Plaintiffs argue that their claims were equitably tolled by the existence and pendency of the *Little* class action in Alabama. As explained above, however, *American Pipe* does not allow for cross-jurisdictional tolling as a means to interrupt prescription. Additionally, the *Little* Plaintiffs never served Taishan in the Alabama action, and their Louisiana-based claims were filed in the wrong jurisdiction. Accordingly, the one-year prescription period was not interrupted under Louisiana Civil Code Art. 3463, and their claims must be dismissed.

V. **B&C'S MOTION FOR JOINDER AND SUMMARY JUDGMENT**

The Court sees no issue with granting B&C Companies' request to join Taishan's motion for summary judgment. However, B&C Companies' separate motion for summary judgment amounts to a motion for reconsideration of the Court's previous jurisdictional rulings. In an April 2017 opinion, the Court held that B&C Companies are part of a single business enterprise with Taishan under Louisiana law, such that Taishan's contacts in Louisiana may be imputed to them. R. Doc. 20739. The Fifth Circuit later affirmed this opinion in July 2020. *See In re Chinese-*

16

*Manufactured Drywall Products Liab. Litig.*, 811 Fed. App'x 910 (5th Cir. 2020). It is inappropriate to ask this Court to reconsider the 2017 opinion when it was recently affirmed by the Fifth Circuit. Therefore, the Court will not consider B&C Companies' additional arguments at this time and deny their separate motion for summary judgment.

## VI. CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Taishan's Motion for Summary Judgment, R. Doc. 23070, be **GRANTED.**

**IT IS FURTHER ORDERED** that B&C Companies' Motion for Joinder and Motion for Summary Judgment, R. Doc. 23071, be **GRANTED IN PART AND DENIED IN PART.** The Motion is **GRANTED** with respect to B&C Companies' request for joinder in Taishan's Motion. The Motion is **DENIED** with respect to B&C Companies' separate motion for summary judgment.

New Orleans, Louisiana, this 27th day of May 2021.

_____
United States District Judge