UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

```
****************************************************************
```

IN RE:  CHINESE-MANUFACTURED
DRYWALL PRODUCTS
LIABILITY LITIGATION

```
                          CIVIL DOCKET NO. 09-MD-2047 "L"
                          NEW ORLEANS, LOUISIANA
                          WEDNESDAY, AUGUST 4, 2021, 10:00 A.M.
```

THIS DOCUMENT RELATES TO
ALL CASES

```
****************************************************************
```

TRANSCRIPT OF STATUS CONFERENCE VIA ZOOM VIDEO TELECONFERENCE
HEARD BEFORE THE HONORABLE ELDON E. FALLON
UNITED STATES DISTRICT JUDGE

APPEARANCES:

FOR THE PLAINTIFFS'
LIAISON COUNSEL:            HERMAN HERMAN KATZ
                            BY:  LEONARD A. DAVIS, ESQUIRE
                            820 O'KEEFE AVENUE
                            NEW ORLEANS, LA 70113


                            LEVIN, FISHBEIN, SEDRAN & BERMAN
                            BY:  ARNOLD LEVIN, ESQUIRE
                                 SANDRA L. DUGGAN, ESQUIRE
                            510 WALNUT STREET, SUITE 500
                            PHILADELPHIA, PA 19106

***OFFICIAL TRANSCRIPT***

```
 1    APPEARANCES CONTINUED:

 2


 3    FOR THE PLAINTIFFS:         DOYLE LAW FIRM
                                  BY:  JAMES V. DOYLE, JR., ESQUIRE
 4                                2100 SOUTHBRIDGE PARKWAY, SUITE 650
                                  BIRMINGHAM, AL 35209
 5

 6
      FOR TAISHAN GYPSUM CO.,
 7    LTD, AND TAI'AN TAISHAN
      PLASTERBOARD CO., LTD.:     ALSTON & BIRD
 8                                BY:  CHRISTINA H. EIKHOFF, ESQUIRE
                                       MATTHEW D. LAWSON, ESQUIRE
 9                                ONE ATLANTIC CENTER
                                  1201 WEST PEACHTREE STREET
10                                SUITE 4900
                                  ATLANTA, GA 30309
11

12
      FOR THE TAISHAN, BNMB
13    ENTITIES AND CNBM ENTITIES
      LIAISON COUNSEL:            PHELPS DUNBAR
14                                BY:  HARRY ROSENBERG, ESQUIRE
                                  365 CANAL STREET, SUITE 2000
15                                NEW ORLEANS, LA 70130

16

17    CHINA NATIONAL BUILDING
      MATERIALS GROUP CORPORATION
18    AND CHINA NATIONAL BUILDING
      MATERIALS COMPANY LIMITED
19    (COLLECTIVELY, "CNBM"):     ORRICK HERRINGTON & SUTCLIFFE
                                  BY:  JAMES L. STENGEL, ESQUIRE
20                                     MARC R. SHAPIRO, ESQUIRE
                                  51 WEST 52ND STREET
21                                NEW YORK, NY 10019

22

23                                ORRICK HERRINGTON & SUTCLIFFE
                                  BY:  L. CHRISTOPHER VEJNOSKA, ESQ.
24                                THE ORRICK BUILDING
                                  405 HOWARD STREET
25                                SAN FRANCISCO, CA 94105
```

*OFFICIAL TRANSCRIPT*

```
 1   APPEARANCES CONTINUED:

 2

 3                                  GORDON, ARATA, MCCOLLAM,
                                    DUPLANTIS & EAGAN
 4                                  BY:  EWELL E. EAGAN, JR., ESQUIRE
                                         ALEX B. ROTHENBERG, ESQUIRE
 5                                  201 ST. CHARLES AVENUE, 40TH FLOOR
                                    NEW ORLEANS, LA 70170
 6

 7
     ALSO PRESENT:                  JACOB WOODY, BROWN GREER
 8

 9


10
     OFFICIAL COURT REPORTER:       CATHY PEPPER, CRR, RMR, CCR
11                                  CERTIFIED REALTIME REPORTER
                                    CERTIFIED MERIT REPORTER
12                                  500 POYDRAS STREET, ROOM B-275
                                    NEW ORLEANS, LA 70130
13                                  (504) 589-7779
                                    Cathy_Pepper@laed.uscourts.gov
14

15   PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY.  TRANSCRIPT
     PRODUCED BY COMPUTER.
16

17

18

19

20

21

22

23

24

25

                            OFFICIAL TRANSCRIPT
```

```
 1                    P-R-O-C-E-E-D-I-N-G-S
 2                 WEDNESDAY, AUGUST 4, 2021
 3                 M O R N I N G   S E S S I O N
 4                (VIA ZOOM VIDEO TELECONFERENCE)
 5
 6
 7           THE COURT:  Good morning, everyone.  This is
 8   Judge Fallon.
 9           VOICES:  Good morning, Your Honor.
10           THE COURT:  Let's call the roll.  From the plaintiffs,
11   who is on for the plaintiffs?
12           MS. DUGGAN:  Good morning, Your Honor.  Sandra Duggan.
13   There is no visual for me.  And there is Arnold Levin,
14   unfortunately, with no audio.
15           MR. DAVIS:  Good morning, Your Honor.  You also have
16   Leonard Davis.
17           THE COURT:  Hi, Lenny.
18           MR. DOYLE:  Good morning, Judge.  Jimmy Doyle.
19           THE COURT:  Hi, Jimmy.
20               Anyone else for the plaintiffs?
21               Okay.  For the defendants, Taishan.  Christy, are
22   you there?
23           MS. EIKHOFF:  Yes, Your Honor.  For Taishan it's
24   myself, Christy Eikhoff, and my colleague, Matt Lawson, on the
25   line.
```

*OFFICIAL TRANSCRIPT*

```
10:04:41   1              THE COURT:  And CNBM?
10:04:49   2              MR. STENGEL:  Good morning, Your Honor.  It's
10:04:52   3   Jim Stengel.  You've got Marc Shapiro and Christopher Vejnoska
10:04:54   4   from Orrick, and you've got Harry Rosenberg, liaison counsel,
10:04:56   5   on as well.
10:04:57   6              THE COURT:  Okay.  I've got Harry.
10:05:00   7              All right.  Anyone else?
10:05:01   8              MR. ROSENBERG:  Good morning, Judge.
10:05:02   9              THE COURT:  Good morning.
10:05:03  10              Anyone else?
10:05:06  11              MR. WOODY:  Good morning, Judge.  It's Jake Woody from
10:05:09  12   BrownGreer.
10:05:11  13              THE COURT:  Okay, Jake.
10:05:11  14              We're here today to discuss a status conference
10:05:13  15   in the Chinese Drywall case to talk about the remaining issues
10:05:19  16   in the matter.
10:05:21  17              Christy, do you want to lead off?
10:05:23  18              MS. EIKHOFF:  Yes, Your Honor.  I had reached out to
10:05:30  19   the Court to request a status conference, and the three issues
10:05:33  20   that I had raised for the agenda were, Number 1, the status of
10:05:39  21   calculation and distribution of the final class settlement
10:05:43  22   proceeds to class members because that's not completely
10:05:45  23   finished yet and thought it would be helpful for us to address
10:05:49  24   where we are; secondly, the status of the remanded cases which
10:05:54  25   the Court has requested previously to be kept informed about;
```

*OFFICIAL TRANSCRIPT*

10:05:58  1    and then thirdly, just as an opportunity to touch on where we
10:06:02  2    are for the remaining cases in the Eastern District of
10:06:05  3    Louisiana, specifically, for Amorin and Brooke claims that
10:06:10  4    remain before this court.
10:06:13  5              THE COURT:  Okay.  Let's go with the first one.  Jake,
10:06:17  6    do you want to respond to that one, the state of distribution
10:06:20  7    status.
10:06:21  8              MR. WOODY:  Yes, Your Honor.  We have two buckets of
10:06:25  9    money left over.  One is uncashed checks, checks that we sent
10:06:33 10    out and that hadn't been cashed yet.  There is 26 of those and
10:06:35 11    we have been in contact with those lawyers over the past few
10:06:37 12    months.
10:06:38 13              Most of those are estates or administrative
10:06:42 14    issues where we they are trying to work out the issues to
10:06:44 15    receive that money.  We've going to keep in contact with them
10:06:47 16    and see if they can't work that out.
10:06:49 17              If we get towards the end of the year, we may put
10:06:52 18    those that we -- pay that money into the registry and let them
10:06:55 19    work out their issues and come to the court when they are
10:06:57 20    ready.
10:06:57 21              THE COURT:  Okay.
10:06:58 22              MR. WOODY:  The other bucket of money we have to put
10:07:00 23    in, money that we held back for contingencies for things that
10:07:06 24    we didn't expect.  Most of that money can be put back into the
10:07:09 25    pot and redistributed.

*OFFICIAL TRANSCRIPT*

10:07:11  1          We have -- I think we're going to have about
10:07:14  2  $895,000 to distribute on a pro rata basis to all the claimants
10:07:19  3  who have already been paid once.  This will be a second
10:07:22  4  distribution on a pro rata basis, and we've done the
10:07:25  5  calculations to do that.  And that included the IRC, individual
10:07:30  6  retained counsel, fees in those calculations.
10:07:32  7          The fee on that total will be about $68,000
10:07:36  8  spread out among all the attorneys.  So I don't think that the
10:07:41  9  individual checks will be that significant, but it is, you
10:07:44 10  know, almost a million dollars to distribute.
10:07:46 11          And we're waiting for the appeals to be resolved,
10:07:50 12  the Nolte and Frego appeals, which I think the theory of those
10:07:55 13  appeals is that those agreements should be at a different level
10:07:58 14  of compensation, which, if successful, would require up to
10:08:03 15  Houston to go back to pay it.
10:08:04 16          We have enough to do it if the appeals come back
10:08:07 17  completely in the plaintiffs' favor, but we're waiting on that
10:08:09 18  before we can distribute it.  I would assume we need to know
10:08:12 19  what's going to happen with that before we can pay off this
10:08:14 20  money.
10:08:14 21          So that's where we are with these distributions,
10:08:17 22  I think, unless there are any questions.
10:08:19 23          THE COURT:  Okay.
10:08:20 24          Christy --
10:08:20 25          MR. DUGGAN:  Your Honor, this is Sandra Duggan.  I want

*OFFICIAL TRANSCRIPT*

```
10:08:25   1   to add that the Frego and Nolte appeal, those are the claim
10:08:29   2   payments that Your Honor ruled on several times, it's scheduled
10:08:31   3   for oral argument before the Fifth Circuit on August 30th.
10:08:31   4            THE COURT:  Okay.
10:08:36   5            UNIDENTIFIED SPEAKER:  And, Your Honor --
10:08:38   6            UNIDENTIFIED SPEAKER:  Your Honor --
10:08:39   7            UNIDENTIFIED SPEAKER:  Go ahead.
10:08:41   8            MR. WOODY:  I was just going to say hopefully we are
10:08:44   9   ready to issue those checks.  We plan to do it the same way we
10:08:46  10   did it the first time where we mail the checks.  We cut the
10:08:49  11   checks individually to the claimant and mail them to the
10:08:53  12   attorney for distribution.
10:08:54  13            So we we're ready to do it.  We're just waiting
10:08:56  14   on this appeal to be resolved.  So hopefully, I don't know the
10:08:59  15   timeframe for that, but if we can do it this year, we certainly
10:09:02  16   will.  We'll get that money out this year, if we can.
10:09:05  17            THE COURT:  Okay.
10:09:05  18            MS. EIKHOFF:  Your Honor, I would just add that I do
10:09:07  19   think that there are two more potential claims that could
10:09:12  20   impact the distribution of the piecemeal current holdback; and
10:09:18  21   that is, we have one claim in the Southern District of Florida
10:09:23  22   in the Brooke matter and one claim in the Northern District of
10:09:27  23   Alabama Brooke matter that are individuals who are principals
10:09:35  24   of corporations that did participate in the settlement and
10:09:40  25   collected their proceeds from the settlement but are arguing
```

| | |
|---|---|
| 10:09:46 1 | that they intended to opt out and want to pursue a claim not |
| 10:09:54 2 | withstanding their participation in the settlement. |
| 10:09:56 3 | In Florida, we have a motion for judgment on the |
| 10:10:01 4 | pleadings before Judge Williams that's been pending for quite |
| 10:10:08 5 | some time.  I don't have the exact date in front of me.  And |
| 10:10:12 6 | then in Alabama there is a personal jurisdiction motion |
| 10:10:18 7 | pending, but theoretically, depending on the outcome of those |
| 10:10:21 8 | claims, it could theoretically impact the final number of |
| 10:10:26 9 | participants in the settlement. |
| 10:10:28 10 | THE COURT:  All right.  Lenny, do you have any input on |
| 10:10:33 11 | any of that from the plaintiffs' standpoint?  What's happening? |
| 10:10:40 12 | MR. DAVIS:  I do not but Sandy might. |
| 10:10:43 13 | THE COURT:  Sandy, how about you? |
| 10:10:45 14 | MS. DUGGAN:  Well, Your Honor has already ruled on the |
| 10:10:50 15 | composition of the class; and, of course, class counsel wants |
| 10:10:57 16 | to express its position on those points.  The payments were |
| 10:11:00 17 | made to those class members, and it was -- I don't know what |
| 10:11:02 18 | the amounts are that are involved, but it would certainly |
| 10:11:07 19 | impact the administrative work that would have to be |
| 10:11:09 20 | accomplished to redistribute that money in the event that |
| 10:11:12 21 | Your Honor ruled that they were not either opted out or they |
| 10:11:15 22 | did not opt out of the class. |
| 10:11:17 23 | MS. EIKHOFF:  Your Honor, I was able to find the date. |
| 10:11:21 24 | The motion for judgment on the pleadings on that Florida claim |
| 10:11:25 25 | was fully briefed on December 28, 2020.  And we supplemented |

*OFFICIAL TRANSCRIPT*

```
10:11:32  1   that record on April 26th, after we deposed the individual and
10:11:37  2   he confirmed that he had, indeed, cashed the check that he had
10:11:42  3   received for the corporation, so we are waiting for
10:11:46  4   Judge Williams to decide on that.
10:11:49  5              I will tell you, Your Honor, that in our briefing
10:11:53  6   we asked to dismiss the claim outright because we think that
10:11:57  7   that claim has been opted out, but in the alternative, if
10:12:03  8   Judge Williams was uncertain about that decision, that perhaps
10:12:06  9   that she could refer it to you as the judge who is overseeing
10:12:11 10   the class settlement, and we just haven't seen a ruling on that
10:12:15 11   yet.
10:12:16 12              But I wanted to flag that for the Court and for
10:12:19 13   Jake that those are two more claims that could theoretically
10:12:25 14   impact the final distribution, depending on how the courts rule
10:12:30 15   on them.
10:12:30 16         THE COURT:  Okay.  All right.  Any more comment on
10:12:33 17   that?  Any questions?
10:12:34 18              Jake, do you have any of Christy while she's
10:12:38 19   there?
10:12:39 20         MR. WOODY:  No, Your Honor.  We'll keep an eye on the
10:12:46 21   Nolte and Frego appeal.  Also, if those are resolved anytime
10:12:49 22   soon, we'll certainly check with Christy and Sandy and
10:12:54 23   everybody and make sure there is nothing else outstanding.
10:12:57 24         THE COURT:  Okay.  What about the status of the remand
10:12:58 25   cases, then?  Christy, anything else other than those two?
```

*OFFICIAL TRANSCRIPT*

MS. EIKHOFF: Well, Your Honor, there are dispositive motions that are pending in all of the remand cases, some of which has been pending for much longer than others.

In Alabama, Georgia, and Mississippi, the defendants filed motions to dismiss for lack of personal jurisdiction. Back in December, Judge Guirola in Mississippi granted that motion, but that is the only court that's ruled on those motions.

In the meantime, we have pending personal jurisdiction motions to dismiss in the Northern District of Alabama with Judge Bowdre that's been pending. It been fully briefed since December.

And then in the Northern District of Georgia with Judge Totenberg, that motion has been fully briefed since the middle of March. And we're really just going to wait and see on those just to see if -- when the Court wants to address those pending motions.

Meanwhile, in Florida, there are only three claims left before Judge Cooke in Amorin. They are all subject to pending motions for summary judgment, and those were fully briefed in the beginning of January, so we're also waiting for a ruling on those motions for summary judgment, which would dispose of Amorin in the Southern District of Florida.

Then, I already mentioned that before Judge Williams we have one motion for judgment on the pleadings

*OFFICIAL TRANSCRIPT*

10:14:38  1  about the opt-out question.

10:14:40  2           We very recently, Your Honor, filed a number of
10:14:44  3  motions for summary judgment in the Brooke claim there on most
10:14:49  4  of the -- most of the claims there, but that has only just been
10:14:53  5  fully briefed, you know, as of a couple of weeks ago.

10:14:58  6           THE COURT: Any response on that, Sandy? Any
10:15:00  7  information from the plaintiffs?

10:15:03  8           MS. DUGGAN: Your Honor, from class counsel's
10:15:06  9  perspective, we have not been involved in the opt-out
10:15:10 10  litigation.

10:15:13 11           THE COURT: Okay. All right. What do we do with
10:15:19 12  those, Christy? Do you have any suggestions as to how we can
10:15:23 13  move those?

10:15:24 14           MS. EIKHOFF: Your Honor, I mean, you as a judge know
10:15:29 15  it's always a sensitive issue for counsel to appear to prod a
10:15:38 16  judge at all. We certainly don't want to be in a position of
10:15:41 17  being obsequious or just annoying to a judge, so we've just
10:15:48 18  taken a wait-and-see approach, Your Honor.

10:15:50 19           THE COURT: All right. I'll look into it a little bit.

10:15:52 20           Okay. What about the status of future claims?
10:15:55 21  That involves you, I suspect, Jim?

10:16:01 22           How many of those, Christy, from the standpoint
10:16:03 23  of Louisiana?

10:16:06 24           MS. EIKHOFF: Your Honor, there are only three claims
10:16:09 25  left in Brooke, Louisiana, after this Court's ruling on the

*OFFICIAL TRANSCRIPT*

1  summary judgment motions that we filed.  And the close of
2  discovery on those is August 10th, so next week and then we'll
3  be ready to proceed.
4          There are also two Amorin claims that are still
5  pending before Judge North, and so, you know, he has been -- we
6  have been in constant -- well, not constant, but in frequent
7  communication with Judge North on the disposition of those
8  claims.
9          THE COURT:  All right.  Jimmy, are you involved in
10 those claims before Judge North?
11         MR. DOYLE:  I am, Your Honor.
12         THE COURT:  What's happening from your standpoint?
13         MR. DOYLE:  Trying to work through an issue on the
14 proper cost of remediation.  That's what has bogged this thing
15 down.  We had a contractor doing Xactimate.  The defendants
16 objected to it.  Judge North ruled that it was an additive,
17 that they had to be declared as an expert.  We had not declared
18 him as an expert at that time; so, defense counsel has been
19 attempting to, you know, find some other methodology for
20 determining the diminution in value.
21         We're going to file a motion in the near future
22 to try to clear this up and get it moving forward because,
23 really, the only thing to do is the remaining issues.  We going
24 to address the remaining issues in the Rule 55 proceeding that
25 was referred to Judge North.

*OFFICIAL TRANSCRIPT*

10:17:52  1          THE COURT:  Christy, anything on that one?
10:17:55  2          MS. EIKHOFF:  No, Your Honor.  I don't know the motion
10:17:58  3  that Jimmy is referring to.  Judge North actually, we're not
10:18:02  4  the ones who are trying to find a way to quantify the damages.
10:18:08  5  Judge North has been the one leading the way in trying to
10:18:10  6  quantify the damages, so we are just following Judge North's
10:18:14  7  direction.
10:18:14  8          He specifically ordered the parties to obtain
10:18:20  9  appraisal of the properties at issue to determine diminution in
10:18:24 10  value.  There was an issue with the first appraisals that came
10:18:27 11  back that Judge North noted, and he has -- he has asked us to
10:18:38 12  follow up on an additional appraisal, and we have been in
10:18:42 13  communication with Judge North about that.
10:18:44 14          So, that just that seems to be -- it has
10:18:48 15  certainly gotten bogged down, as Jimmy has said, with the
10:18:51 16  question of how to quantify the damages, but I think that
10:18:56 17  Judge North seems to understand the issues and is tending to
10:19:01 18  them.
10:19:02 19          THE COURT:  All right.  Who has got the ball at this
10:19:05 20  point?  Where is it?  In Judge North's court or yours or
10:19:10 21  Jimmy's or where?
10:19:12 22          MS. EIKHOFF:  Judge North, Your Honor.
10:19:13 23          THE COURT:  Okay.  So, I'm sure he'll rule soon then.
10:19:18 24  I'll check and see what the situation is with him.
10:19:20 25          Okay.  I have some before me, right, that were

*OFFICIAL TRANSCRIPT*

| | | |
|---|---|---|
| 10:19:27 | 1 | scheduled for trial?  What's the status of those, Christy? |
| 10:19:31 | 2 | MS. EIKHOFF:  Yeah.  Those are the three remaining |
| 10:19:35 | 3 | Brooke claims that I mentioned.  The close of discovery on |
| 10:19:38 | 4 | those is next week, August 10th, and we intend to file a motion |
| 10:19:45 | 5 | for summary judgment on those, and then we will see how that |
| 10:19:49 | 6 | resolves and, you know, whether they get scheduled for trial. |
| 10:19:53 | 7 | THE COURT:  Okay. All right.  Anything else from |
| 10:19:58 | 8 | anyone's standpoint? |
| 10:20:02 | 9 | Okay.  Anything from the plaintiffs? |
| 10:20:08 | 10 | MS. DUGGAN:  No, Your Honor. |
| 10:20:10 | 11 | MR. DOYLE:  No, Your Honor. |
| 10:20:11 | 12 | THE COURT:  Okay.  Well, I really would like to keep in |
| 10:20:15 | 13 | touch with you all.  I think it's helpful to kind of go over |
| 10:20:17 | 14 | the status of the case to see where we are, so we'll set |
| 10:20:21 | 15 | another status conference, in, what, 60 days? |
| 10:20:24 | 16 | Give me some input, Christy. |
| 10:20:27 | 17 | MS. EIKHOFF:  Sure, Your Honor.  Sixty days would be |
| 10:20:31 | 18 | fine. |
| 10:20:31 | 19 | THE COURT:  All right.  Okay.  Where are we, Dean? |
| 10:20:36 | 20 | THE DEPUTY CLERK:  Early October, Judge.  Tuesday, the |
| 10:20:39 | 21 | 5th or Wednesday, the 6th. |
| 10:20:41 | 22 | THE COURT:  Tuesday, the 5th of October.  What time? |
| 10:20:45 | 23 | THE DEPUTY CLERK:  Ten o'clock. |
| 10:20:46 | 24 | THE COURT:  Ten o'clock.  Is everybody okay?  I'll put |
| 10:20:49 | 25 | that in a minute entry. |

*OFFICIAL TRANSCRIPT*

10:20:52  1                Okay.  Folks.  All right.  Thank you very much.
10:20:55  2                Arnie, good to see you.
10:20:59  3       MR. LEVIN:  Thank you, Your Honor.
10:21:02  4       THE COURT:  Good-bye.
10:21:02  5       VOICES:  Good-bye.
          6       (WHEREUPON, at 10:31 a.m., the proceedings were
          7  concluded.)
          8                          *   *   *
          9
         10                     REPORTER'S CERTIFICATE
         11
         12       I, Cathy Pepper, Certified Realtime Reporter, Registered
         13  Merit Reporter, Certified Court Reporter in and for the State
         14  of Louisiana, Official Court Reporter for the United States
         15  District Court, Eastern District of Louisiana, do hereby
         16  certify that the foregoing is a true and correct transcript to
         17  the best of my ability and understanding from the record of the
         18  proceedings in the above-entitled and numbered matter.
         19
         20                          *s/Cathy Pepper*
         21                          Cathy Pepper, CRR, RMR, CCR
                                     Certified Realtime Reporter
         22                          Registered Merit Reporter
                                     Official Court Reporter
         23                          United States District Court
                                     Cathy_Pepper@laed.uscourts.gov
         24
         25

**OFFICIAL TRANSCRIPT**