# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| EDUARDO AND CARMEN AMORIN, *et al.*, individually, and on behalf of all others similarly situated,<br><br>  Plaintiffs,<br><br>  v.<br><br>TAISHAN GYPSUM CO., LTD. f/k/a SHANDONG TAIHE DONGXIN CO., LTD.; TAIAN TAISHAN PLASTERBOARD CO., LTD., *et al.*,<br><br>  Defendants. | Case No. 1:11-CV-22408-MGC |

### INDIVIDUAL COUNSEL'S OPPOSITION TO CLASS COUNSEL'S MOTION TO ENFORCE JUDGMENT AWARDING COMMON BENEFIT COUNSEL 45% OF THE TOTAL FEES FROM THE FLORIDA INDIVIDUAL SETTLEMENT (ECF NO. 453)

Class Counsel[1] are requesting an order directing Individual Counsel[2] to transfer funds held in attorney trust accounts into the registry of the Eastern District of Louisiana as part of a staged process allegedly coordinated by this Court and Judge Fallon to satisfy a money judgment rendered by this Court and affirmed by the Eleventh Circuit. *See* ECF No. 452. This extraordinary request is styled as a "Motion to Enforce Judgment" (ECF No. 453), but does not mention the rules governing enforcement of judgments (FRCP Rules 69 and 70), or any authority.

---

[1] "Class Counsel" has been used throughout this proceeding to describe the firms claiming an interest in the fee award made by the Court from the individual settlements.

[2] "Individual Counsel" or "Settling Attorneys" include the law firms of (i) Parker Waichman LLP; (ii) Milstein Jackson Fairchild & Wade LLP; (iii) Whitfield Bryson & Mason LLP; (iv) Mrachek Fitzgerald Rose Konopka Thomas & Weiss PA; (v) Roberts and Durkee PA; and (vi) Levin Papantonio Thomas Mitchell Rafferty Proctor PA. Jimmy R. Faircloth, Jr. represents Individual Counsel and is not a party to these proceedings, as wrongly suggested by Class Counsel.

1

Class Counsel's motion should be denied. Put simply, it is unnecessary and wrongly urges the Court to exceed its authority.

**A.     The Funds Remain in Escrow**

The escrow was created at the outset of this litigation in accordance with Rule 5-1.1(f) of the Rules Regulating the Florida Bar.[3] Because the amount of the claim was undetermined at that time, the Parties agreed that 16% of the *gross claimant recovery* under the FIS was adequate. *See* ECF No. 329. To accomplish the escrow, Individual Counsel withheld a portion of their fees from each of the 497 individual settlements, as disbursements were made over time under the terms of the FIS. Ultimately, the escrowed funds total $5,926,503.66.[4] By comparison, the value of the judgment is $5,832,950.95.

By agreement, the escrow was continued for the appeal. *See* Exhibit A, email string between Faircloth and Montoya (extending until "completion of appeal").[5]

---

[3] "When in the course of representation a lawyer is in possession of property in which 2 or more persons (1 of whom may be the lawyer) claim interests, the property must be treated by the lawyer as trust property, but the portion belonging to the lawyer or law firm must be withdrawn within a reasonable time after it becomes due unless the right of the lawyer or law firm to receive it is disputed, in which event the portion in dispute must be kept separate by the lawyer until the dispute is resolved. The lawyer must promptly distribute all portions of the property as to which the interests are not in dispute." R. Regulating Fla. Bar 5-1.1(f).

[4] Originally, it was agreed that all funds would be held in the trust account of Parker Waichman. After the first tranche payments, however, Class Counsel agreed to allow the share attributable to Milstein et al. and Roberts and Durkee to be transferred to the Milstein firm for escrow. Thus, at present, Parker Waichman holds the sum of $5,287,572.02 for itself and the firms of Whitfield et al., Mrachek et al., and Levin Papantonio et al.; while the Milstein firm holds the balance, $638,931.64, for itself and Roberts and Durkee.

[5] On June 1, 2020, Mr. Faircloth sent an email to Mr. Montoya, stating:

> Patrick – we intend to appeal Judge Cooke's ruling on the fee motion. In lieu of a motion to stay during the appeal, can we simply extend the stipulation requiring the escrow until completion of the appeal? The total escrow ($5,926,503.66) is greater than the total award ($5,832,950.95). It's not a perfectly square fit, because the

2

Following denial of rehearing by the Eleventh Circuit, Individual Counsel notified Class Counsel of their intent to seek review by the United States Supreme Court. Individual Counsel did not seek stay of the mandate because neither the ruling by this Court nor the mandate address the escrowed funds or any provision directing the transfer of assets.

**B.     An Order to Transfer Funds is Improper**

Class Counsel's argument assumes that the escrow is impliedly a part of the judgment and that Individual Counsel somehow agreed to this novel enforcement process because Judge Fallon retained authority over a subsequent allocation proceeding *among Class Counsel*—not involving Individual Counsel. Both assumptions are wrong as a matter of fact and law.

First, the escrow was a private agreement among the parties based on a percentage of the gross claimant recovery. By comparison, the judgment awards a percentage of the total attorney's fees and does not mention the escrow. Further, the judgment does not quantify the total amount of the award or the portions attributable to the individual defendant firms. The judgment is directed to different firms with different clients, different contracts, and different fee recoveries. Parker Waichman has merely acted as the clearing house for the administrative convenience of all concerned. As Mr. Montoya was informed before the appeal, the escrow is "not a perfectly square

---

contracts varied (although the majority were 33%) and there were special adjustments for individual client circumstances and firms. The rationale for the escrow (Rule [5-1.1(f) of Rules of Professional Responsibility) continues to apply. If not, will you agree to a motion to stay pending appeal?  Jimmy

On June 3, Mr. Montoya responded: "We have no objection to your proposal provided that all the other firms in the FIS agree the money shall remain in the escrow. You can confirm or their behalf, or you can have them write to us individually. Thank you." The following day, Mr. Faircloth "Confirmed for everyone." *See* Exhibit A.

3

fit, because the contracts varied (although the majority were 33%) and there were special adjustments for individual client circumstances and firms." *See* Exhibit A.[6]

There is simply no good reason to conflate (further) the jurisdictional lines between this Court and the MDL Court over this issue. If SCOTUS denies the writ or affirms the judgment, in whole or part, the escrowed funds will be available. But what happens if the funds are transferred to the MDL registry and disbursed to seventeen law firms as requested by Class Counsel,[7] and *then* the Court reverses? How will these funds be clawed-back? Class Counsel's motion gives no regard for this.

Second, Class Counsel are attempting to avoid the nature of the judgment—an *in personam* money judgment rendered—and the limitations on this Court's use of equitable authority in a diversity proceeding by arguing that this is merely the first of two steps toward an anticipated money judgment by Judge Fallon in favor of multiple common benefits attorneys. In other words, that the fee proceeding in this Court is part and parcel of the fee proceedings in the MDL. This argument defies jurisdictional boundaries. The fact that there are two-steps *for Class Counsel* before individual allocation awards are made in the MDL does not change the nature of the judgment *as between the parties* to this proceeding nor the scope of this Court's authority. The judgment is plainly a money judgment and its enforcement is governed by Rules 69 and 70.[8] As explained by the *Practice Commentary* to Rule 69:

---

[6] At a minimum, an important step remains in this Court—a motion to quantify—before execution of the judgment (by any process) is even possible.

[7] *See* Motion to Allocate Common Benefit Fees Awarded from the Florida Individual Settlement and to Determine Amount of Interest Owed (ECF No. 453-2).

[8] Federal Rules of Civil Procedure 69 and 70 govern the enforcement of judgments in federal court. Rule 69(a) states that "[a] money judgment is enforced by a writ of execution, unless the court directs otherwise. The procedure on execution—and in proceedings supplementary to and in aid

4

…Rule 69 controls the process for getting the judgment enforced in those cases where the defendant fails to pay a money judgment against it. It establishes three general principles: (1) that the usual recourse is a writ of execution; (2) that the writ will be enforced using the local state practices for executing judgments; and (3) that the plaintiff may use either federal or state discovery tools to locate the judgment debtor's assets....

... the writ of execution as the presumptively proper mechanism for enforcing a federal-court money judgment. The writ of execution.... is what authorizes the U.S. marshal, state sheriff, or other proper person to seize the judgment debtor's property and sell it or turn it over to the judgment creditor....

... Rule 69 provides for enforcement of money judgments by writ of execution "unless the court directs otherwise." ... The courts have interpreted this clause narrowly, holding that an alternative method is appropriate only when a writ of execution would be inadequate or under other exceptional circumstances.... Difficulty in enforcing the judgment through a writ of execution due to the size or location of the assets may not justify an alternative method.... As discussed below, Rule 69 incorporates state enforcement mechanisms as the means for enforcing the writ of execution. Thus, when a plaintiff asks a court to enforce a money judgment "otherwise" than through state law, it is usually because the plaintiff knows that the state does not use the desired enforcement practice. (If the state did, then the plaintiff would just seek a writ of execution and then invoke the desired enforcement practice under state law.) Courts realize that they must narrowly construe their power to "direct otherwise" lest the presumptive reference to state practices be rendered meaningless....

... while Rule 69 establishes the writ of execution as the general vehicle for enforcing a money judgment, it does not create mechanisms for enforcing the writ. Rather, Rule 69 "permits judgment creditors to use any execution method consistent with the practice and procedure of the State in which the district court sits" at the time the remedy is sought. Accordingly, federal-court judgment creditors must avail themselves of state enforcement mechanisms. If the state does not recognize the desired enforcement mechanism, then the court may not use it to enforce the writ of execution. The judgment debtor may rely on any corresponding state law limits on those enforcement mechanisms....

---

of judgment or execution-must accord with the procedure of the state where the court is located..." Fed. R. Civ. P. 69(a)(1). Rule 70 gives courts wider latitude in certain circumstances. "If a judgment requires a party to convey land, to deliver a deed or other document, or to perform any other specific act and the party fails to comply within the time specified, the court may order the act to be done—at the disobedient party's expense—by another person appointed by the court." Fed. R. Civ. P. 70(a). Rule 70 also allows courts to issue writs of attachment and to hold disobedient parties in contempt. Fed. R. Civ. P. 70(e).

> When applying state enforcement schemes, the federal judge has some small latitude to alter state procedure where necessary to adapt it for use in the federal system....

Fed. R. Civ. P. 69, Rules and Commentary (footnotes omitted).

The Eleventh Circuit agrees that the "'otherwise' clause [in Rule 69(a)] is read narrowly." *Combs v. Ryan's Coal Co., Inc.*, 785 F.2d 970, 980 (11th Cir. 1986) (recognizing that "a federal court should not … enforce a money judgment by contempt or methods [o]ther than a writ of execution, except where exceptional principles so warrant"). Moreover, "the Eleventh Circuit has made clear that it is reversable error for a court to use its contempt power to coerce payment of a money judgment." *Brown v. Omni Mgmt. Grp., LLC*., 2020 WL 7401272, at *2 (M.D. Fla. 11/12/20) (citing *U.S. Commodity Futures Trading Comm'n v. Escobio*, 946 F.3d 1242, 1255 (11th Cir. 2020)).

In *Combs*, the court addressed a district court's use of its contempt authority (threat of incarceration) as a means to enforce a consent decree making "an award of money" and establishing a "procedure to pay the money over." 785 F.2d at 980. *Combs* observed that although "[i]t is beyond question that a court may use the remedy of a citation of contempt to enforce an earlier judgment entered pursuant to a consent decree" (citing *Newman v. State of Alabama*, 683 F.2d 1312, 1318 (11th Cir. 1982) and *United States v. City of Jackson, Miss.*, 519 F.2d 1147, 1152 n. 9 (5th Cir.1975)), "[i]t is equally clear that when a party fails to satisfy a court-imposed money judgment the appropriate remedy is a writ of execution, not a finding of contempt." 785 F.2d at 980 (citing *Shuffler v. Heritage Bank*, 720 F.2d 1141, 1147–48 (9th Cir.1983)).

The plaintiff in *Combs* argued that the judgment was not a money judgment subject to Rule 69 because final execution was "forestalled" by a subsequent judgment under the consent decree (785 F.2d at 980), much like the "two steps" argument Class Counsel make here. But the Eleventh

6

Circuit disagreed, finding that "[t]he order entered in January pursuant to the consent decree is properly characterized as a money judgment. It makes extensive provision for the payment of money to appellees that the court found to be due and owing," and "[t]he only variable was whether it would be paid immediately or in installments. The consent decree provided for both, depending upon the circumstances." *Id*. Turning to the threat of incarceration as a means to compel payment, the court remanded to determine the purpose for the order. If the court was attempting to vindicate the authority of the court, the threat was permissible. "On the other hand, if the trial court was in any way attempting to secure payment of the money found to be owing under either the consent decree or the November 13 contempt finding, then the November 25 order of incarceration was improperly entered because, as we explained *supra*, a money judgment is not properly enforced except by a writ of execution." 785 F.2d at 982. This narrow interpretation of Rule 69(a) provision is applied by other circuits. *See Andrews v. Roadway Exp. Inc*., 473 F.3d 565, 568–69 (5th Cir. 2006) ("Rule 69(a)'s 'otherwise' clause is to be construed narrowly") (quoting *Shuffler v. Heritage Bank*, 720 F.2d 1141, 1147-48 (9th Cir. 1983)); *see also Aetna Cas. & Sur. Co. v. Markarian*, 114 F.3d 346, 349 (1st Cir. 1997).[9]

In *Papadopoulos v. Sidi*, 547 F. Supp. 2d 1262 (S.D. Fla. 2008), this Court held that it lacked authority under the Federal Rules of Civil Procedure to issue an injunction in aid of execution of a money judgment, citing *ITT Cmty. Dev. Corp. v. Barton*, 569 F.2d 1351 (5th Cir. 1978) (involving prejudgment activities) and *Rosen v. Cascade Int'l. Inc*., 21 F.3d 1520 (11th Cir. 1994) (same). As explained by Judge Seitz in *Papadopoulos*, Rule 69 "sets out a path upon which

---

[9] Compare *Thomas, Head & Greisen Emps. Tr. v. Buster*, 95 F.3d 1449, 1455-57 (9th Cir. 1996), where the court approved an injunction to prevent a fraudulent conveyance, expressly finding that the order "does not represent a money judgment" but instead an equitable remedy within the court's contempt authority.

7

judgment creditors must proceed to execute on judgments, and Plaintiff has cited no authority that it or this Court may stray from that path. Put differently, Plaintiff has provided no authority that this Court has the inherent power to issue injunctions to aid a judgment creditor in collection, independent of the 'practice and procedure of the state in which the district court is held.'" 547 F. Supp. 2d at 1266 (quoting Fed. R. Civ. P. 69(a)). As in this case, the relief sought in *Papadopoulos* was "akin to Florida remedies of attachment and garnishment (which are available to Plaintiff under Rule 69(a)), yet Plaintiff has apparently concluded that it can not, or prefers not to, satisfy the requirements of those Florida laws." *Id*.

Although not stated in Class Counsel's motion, it is clear they are requesting an exceedingly broad interpretation of Rule 69 contrary to clear authority. Effectively, they are requesting issuance of an injunction rather than a writ of execution, while attempting to waive-off the messy details relating to the scope of judgment, the limitations of Rule 69, and the process under Florida law. Such a heavy-handed departure from established law is not necessary in this instance. Individual Counsel have made clear that the escrow will be maintained until disposition of their writ to the Supreme Court.

The motion to enforce the judgment should be denied.

Dated:  August 30, 2021　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　/s/ *Francisco A. Albites*
　　　　　　　　　　　　　　　　　Francisco A. Albites
　　　　　　　　　　　　　　　　　FL Bar No.: 78046
　　　　　　　　　　　　　　　　　Email: falbites@yourlawyer.com
　　　　　　　　　　　　　　　　　Parker Waichman LLP
　　　　　　　　　　　　　　　　　27299 Riverview Center Boulevard, Suite 108
　　　　　　　　　　　　　　　　　Bonita Springs, Florida 34134
　　　　　　　　　　　　　　　　　Office: 239.390.1000
　　　　　　　　　　　　　　　　　Fax: 239.390.0055

8

Jimmy R. Faircloth, Jr.
La. Bar No.: 20645
Email: jfaircloth@faircothlaw.com
Faircloth Melton Sobel & Bash, LLC
105 Yorktown Drive
Alexandria, Louisiana 71303
Telephone: (318) 619-7755
Facsimile: (318) 619-7744

Mark Milstein
Email: mmilstein@mjfwlaw.com
Milstein, Jackson, Fairchild & Wade, LLP
10250 Constellation Blvd., 14th Floor
Los Angeles, CA 90067
Office: 310.396.9600
Fax: 310.396.9635

*Individual Counsel*

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served on August 30, 2021, by electronically filing the foregoing with the Clerk of Court using the CM/ECF system, which automatically served all parties authorized to receive service via CM/ECF.

/s/ *Francisco A. Albites*
OF COUNSEL

9

**Subject:** FW: CDW - Fee Ruling

**From:** Jimmy Faircloth
**Sent:** Thursday, June 4, 2020 2:42 PM
**To:** Montoya, Patrick <patrick@colson.com>
**Subject:** Re: CDW - Fee Ruling

Confirmed for everyone.  Thanks, Jimmy

Sent from my iPhone

> On Jun 3, 2020, at 1:58 PM, Montoya, Patrick <patrick@colson.com> wrote:
>
> Jimmy,
> We have no objection to your proposal provided that all of the other firms in the FIS agree the money shall remain in escrow. You can confirm on their behalf, or you can have them write to us individually. Thank you.
>
> Regards,
>
> Patrick S. Montoya
> Partner
> Colson Hicks Eidson
> 255 Alhambra Circle, Penthouse
> Coral Gables, FL 33134
> Office:  305.476.7400
> Fax:     305.476.7444
> email: Patrick@colson.com
>
> **From:** Montoya, Patrick
> **Sent:** Monday, June 1, 2020 3:05 PM
> **To:** 'Jimmy Faircloth' <jfaircloth@fairclothlaw.com>
> **Subject:** RE: CDW - Fee Ruling
>
> Got it. I'll get back to you on it.
>
> **From:** Jimmy Faircloth [mailto:jfaircloth@fairclothlaw.com]
> **Sent:** Monday, June 1, 2020 2:53 PM
> **To:** Montoya, Patrick <patrick@colson.com>
> **Subject:** RE: CDW - Fee Ruling
>
> All firms.

1

**EXHIBIT A**

**From:** Montoya, Patrick <patrick@colson.com>
**Sent:** Monday, June 1, 2020 1:40 PM
**To:** Jimmy Faircloth <jfaircloth@faircothlaw.com>
**Subject:** RE: CDW - Fee Ruling

Jimmy,
Is the appeal just on Mr. Parker's behalf or all the firms?

**From:** Jimmy Faircloth <jfaircloth@faircothlaw.com>
**Sent:** Monday, June 1, 2020 12:58 PM
**To:** Montoya, Patrick <patrick@colson.com>
**Subject:** CDW - Fee Ruling

Patrick – we intend to appeal Judge Cooke's ruling on the fee motion. In lieu of a motion to stay during the appeal, can we simply extend the stipulation requiring the escrow until completion of the appeal? The total escrow ($5,926,503.66) is greater than the total award ($5,832,950.95). It's not a perfectly square fit, because the contracts varied (although the majority were 33%) and there were special adjustments for individual client circumstances and firms. The rationale for the escrow (Rule 1.15 of Rules of Professional Responsibility) continues to apply. If not, will you agree to a motion to stay pending appeal? Jimmy

Jimmy R. Faircloth, Jr.
FAIRCLOTH MELTON SOBEL & BASH, LLC
105 Yorktown Drive
Alexandria, LA 71303
Phone 318-619-7755
Fax 318-619-7744

CONFIDENTIALITY STATEMENT

This electronic message contains information from Faircloth Melton Sobel & Bash, LLC and is confidential and privileged. The information is intended to be for the use of the individual or entity named above. If you are not the intended recipient, be aware that any disclosure, copying, distribution or use of the contents of this message is prohibited. If you have received this electronic message in error, please notify us immediately by telephone at (318) 619-7755.

**[WARNING:** This email is from an external source. Do not click links or attachments unless you recognize the sender and know the content is safe.]

**[WARNING:** This email is from an external source. Do not click links or attachments unless you recognize the sender and know the content is safe.]