UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL NO. 2047<br><br>SECTION: L<br><br>JUDGE ELDON FALLON<br><br>MAG. JUDGE MICHAEL NORTH |
| THIS DOCUMENT RELATES TO:<br><br>*Elizabeth Bennett, et al. v. Gebrueder Knauf Verwaltungsgesellschaft, KG, et al.* 2:14-cv-02722-EEF<br><br>And<br><br>The following severed and individually-filed civil actions: [2:20-cv-3199, 3200, 3203, 3204, 3205, 3206, 3208, 3209, 3210, 3212, 3213, 3214, 3215, 3216, 3217, 3218, 3219, 3220, 3221, 3222, 3223, 3224, 3256, 3259, 3269, 3261, 3263, 3264, 3265, 3267, 3268] | |

**PLAINTIFFS' MOTION TO APPROVE ALTERNATIVE
METHOD OF SERVICE OF PROCESS IN SEVERED ACTIONS**

Plaintiffs have respectfully moved this Court for an order allowing service of Defendants by an alternative method provided by the Federal Rules of Civil Procedure. Particularly, Plaintiffs request an order allowing service of process directly on counsel for Defendants by electronic means, including via email. Plaintiffs seek the requested order allowing service on the Knauf Defendants' North American counsel, at least one of whom has been active in this litigation since 2010 and now serves as the Knauf Defendants' Liaison Counsel for MDL-2047.

I. <u>RELEVANT FACTS</u>

The facts of this case clearly warrant that the Court approve alternative service pursuant

1

to Rule 4(f)(3) and allow Plaintiffs to serve the severed complaints on Defendants Knauf Gips KG and Knauf Plasterboard Tianjin Co., Ltd. through their United States lawyers. Defendants have been actively engaged in this litigation and have taken full advantage of the American legal system. Plaintiffs severed thirty-one (31) complaints from the *Bennett v. Knauf* action, cited above, before the non-Louisiana-related claims were remanded to the United States District Court for the Northern District of Alabama. This Court ordered severance of these claims and the filing of an amended complaint to establish individual civil action numbers for the new cases to proceed towards resolution in this Court or appeal to the Fifth Circuit, separate from the original *Bennett* action. Counsel for both defendants (Knauf Gips KG and Knauf Plasterboard Tianjin Co., Ltd.) at Fishman Haygood, LLP have refused to accept service of the newly created, severed complaints and seem intent on delaying these proceedings by insisting that Plaintiffs serve each of their complaints consistent with the Hague Convention.

Defendants refusal to accept service in these cases would take considerable time to accomplish.[1] Requiring service in either Germany or China would cause unnecessary delay to claims that have already been pending in this Court for many years. In addition, with respect to each claim, the parties have completed discovery, expert disclosures, and a period of dispositive motion practice through the *Bennett* case. Given the slow pace to perfect service via the Hague Convention, it is clear that Defendants are taking advantage of this process to further delay justice for the impacted homeowners.

Under the Hague Convention, signatory nations are not required to provide status updates on progress of service on a foreign individual or company and there is no mechanism under the Hague Convention to compel a signatory nation to act. If the same pace of service in China

---

[1] Service on Defendant Knauf Plasterboard Tianjin Co., Ltd. took approximately 2.5 years to complete through the Hague Convention in the original *Bennett v. Knauf* action.

through the Chinese Central Authority remains the same, Plaintiffs in these severed complaints could experience in excess of five (5) years of delay waiting on service. Since 2017, when service on the Chinese Knauf Defendants was perfected in *Bennett*, the process for service in China has increased "exponentially" and the Ministry of Justice for China has issued a statement that service of process will take up to two (2) years or more, with proofs of service being returned an average of 1 to 5 months *after* service occurs.

## II. ARGUMENT

Because the Hague Service Convention does not impose an obligatory time frame, the turnaround time for service remains frustratingly long, with no recourse or ability to seek relief through the Chinse Central Authority. This means that there is a wait window of two years with no interim information provided. (See Affidavit of Celeste Ingalls attached as exhibit A, filed in *Victaulic Company v. Allied Rubber & Gasket Co., Inc., et al.*, pending in the U.S. District Court for the Southern District of California, Case No. 3:17-cv-01006). Through an email reply to Ms. Ingalls, it appears that the Chinese Central Authority halted activity in early 2020 as a result of the COVID pandemic and there is no indication that their operations are functional yet. *Id*. Additionally, a recent online report suggests that parties should expect to wait between one and two years for service in China. ("Suing a Chinese entity in the United States? Expect a two year wait to serve process") available at https://www.iam-media.com/ frandseps/ suing-chinese-entity-united-states-expect-two-yer-wait-serve-process (last accessed October 3, 2021). There is even a concern that among the international law community that the Chinese Central Authority has recently "stopped executing US requests altogether." *Id*. If service may take that long to complete, then that would constitute good cause for this Court to consider alternative service methods allowed by the Rules of Civil Procedure that comport with due process.

A. **Alternative Service of Process is Permissible Pursuant to Rule 4(f)(3).**

The subsections of Rule 4 of the Federal Rules of Civil Procedure provide for a number of alternative methods for service of process. Federal Rule of Civil Procedure 4(h)(2) provides for service of corporations in a foreign country "in any manner prescribed by Rule 4(f) for serving an individual, except personal delivery under (f)(2)(C)(i)." Alternative service of process is permissible pursuant to Federal Rule of Civil Procedure 4(f)(3). Rule 4(f) provides for service on an individual "at a place not within any judicial district of the United States" by the following means:

> (1) by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents;
>
> (2) if there is no internationally agreed means, or if an international agreement allows but does not specify other means, by a method that is reasonably calculated to give notice:
>
>> (A) as prescribed by the foreign country's law for service in that country in an action in its courts of general jurisdiction;
>>
>> (B) as the foreign authority directs in response to a letter rogatory or letter of request; or
>>
>> (C) unless prohibited by the foreign country's law, by:
>>
>>> (i) delivering a copy of the summons and of the complaint to the individual personally; or
>>>
>>> (ii) using any form of mail that the clerk addresses and sends to the individual and that requires a signed receipt; or
>
> (3) by other means not prohibited by international agreement, as the court orders.

It is clear that service on Defendants, as foreign corporations, is governed by Rule 4(f). In general, "[t]he decision whether to allow alternative methods of serving process under rule 4(f)(3) is committed to the sound discretion of the district court." *In re GLG Life Tech Corp. Sec. Litig.*, 287 F.R.D. 262m 265 (S.D.N.Y.2012)(quoting *Madu, Edozie & Madu, P.C. v.*

*Socketworks Ltd. Nigeria*, 265 F.R.D. 106, 115 (S.D.N.Y.2010)) (internal quotation marks omitted).

Courts have long held that there is "no hierarchy among the subsections in Rule 4(f)," *Advanced Aerofoil Techs., AG v. Todaro*, 2012 WL 299959, at *1 (S.D.N.Y. Jan. 31, 2012), and that Rule 4(f)(3) "stands independently, on equal footing" with Rule 4(f)(1), *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1014-15 (9th Cir.2002). As the Ninth Circuit reasoned in *Rio Properties*:

> As obvious from its plain language, service under Rule 4(f)(3) must be (1) directed by the court; and (2) not prohibited by international agreement. No other limitations are evident from the text ....
>
> By all indications, court-directed service under Rule 4(f)(3) is as favored as service available under Rule 4(f)(1) or Rule 4(f)(2).... Rule 4(f)(3) is not subsumed within or in any way dominated by Rule 4(f)' s other subsections; it stands independently, on equal footing. Moreover, no language in Rules 4(f)(1) or 4(f) (2) indicates their primacy, and certainly Rule 4(f)(3) includes no qualifiers or limitations which indicate its availability only after attempting service of process by other means.

*Id.*; accord *GLG Life Tech Corp.*, 287 F.R.D. at 265 (following *Rio Properties*); *Advanced Aerofoil Techs.*, 2012 WL 299959, at *1 (same); *FTC v. PCCare247 Inc.*, 2013 WL 841037, at *2 (S.D.N.Y. Mar. 7, 2013) (similar). In other words, Rule 4(f)(3) is "merely one means among several which enables service of process on an international defendant" and "is neither a 'last resort' nor 'extraordinary relief.' " *Rio Props.*, 284 F.3d at 1015 (quoting *Forum Fin. Grp., LLC v. President & Fellows of Harvard Coll.*, 199 F.R.D. 22, 23 (D.Me.2001)).

Applying these principles, "numerous courts have authorized alternative service under Rule 4(f)(3) even where the Hague Convention applies." *Richmond Techs., Inc. v. Aumtech Bus. Solutions*, 2011 WL 2607158, at *12 (N.D.Cal. July 1, 2011) (citing cases). *See also In re*

5

*Chinese-Manufactured Drywall Products Liability Litigation, supra*, Rec.Doc.No. 17790; *In re Chinese-Manufactured Drywall Products Liability Litigation, supra*, Rec.Doc.No. 18228; *Lexmark Int'l, Inc.*, 291 F.R.D. at 175; *Jian Zhang v. Baidu.com Inc.*, 293 F.R.D. 508 (S.D.N.Y. 2013); *Russell Brands, LLC v. GVD Int'l Trading, SA*, 282 F.R.D. 21 (D. Mass. 2012). By its terms, Rule 4(f)(3) requires only that service be authorized by a court and "not prohibited by international agreement." So long as those conditions are met, it should not, and does not, matter whether service was attempted pursuant to Rule 4(f)(1) or (2) and, if so, whether or why such service was unsuccessful. Therefore, it is well within this Court's discretion to approve alternative service on the Knauf Entities through their United States Lawyers.

Service for a foreign defendant subject to the Hague Convention is not required in situations where documents do not have to be transmitted abroad. *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 700 (1988). Several courts have concluded that a service of domestic counsel does not require the transmission of documents abroad, and, therefore does not implicate the Convention. *See, e.g., In re Chinese-Manufactured Drywall Prod. Liab. Litig.*, Rec.Doc. 19713 (E.D. La. Nov. 9, 2015); *Phoenix Process Equip. Co. v. Capital Equip. & Trading Corp.*, 250 F. Supp. 3d 296, 308 (W.D. Ky. 2017); *FMAC Loan Receivables v. Dagra*, 228 F.R.D. 531, 534 (E.D. Va. 2005); *Richmond Techs., Inc. v. Aumtech Bus. Sols.*, No. 11-cv-02460-LHK, 2011 WL 2607158, at *13 (N.D. Cal. July 1, 2011). Indeed, courts have sanctioned service on domestic counsel as an alternative means of service under Rule 4(g)(3) without requiring specific authorization by the defendant for the recipient to accept service on its behalf. *See Bazarian Int'l Fin. Assocs., LLC v. Desarrollos Aerohotelco, C.A.*, 168 F. Supp. 3d 1, 15 (D. D.C. 2016).

B. **Alternative Service of Process on the Knauf Entities is Clearly Justified Under the Facts of this Case.**

Alternative service on the Knauf Entities' United States lawyers is clearly justified in light of the fact that it will take many years to serve the Knauf Entities with the outstanding severed complaints. The history of this litigation suggests it will take a considerable amount of time to effectuate service of the summonses and complaints once commenced. This expected delay clearly justifies approval of alternative service on the Knauf Entities' United States lawyers. *See Lexmark Int'l, Inc*., 291 F.R.D. at 175 ("Plaintiff also has shown that the circumstances of the case warrant alternative service. This case has been pending for approximately three years, and the Court is well aware of the difficulties encountered by Plaintiff attempting to locate all of the Defendants in this matter. Plaintiff has demonstrated that service on the Chinese entities could be further delayed by more than four months if formal service pursuant to the Hague Convention is required."); *Lyman Morse Boatbuilding Co., Inc. v. Lee*, 2011 WL 52509, at *3 (D.Me. Jan. 6, 2011) (granting the plaintiff's motion for alternative service pursuant to Fed.R.Civ.P. 4(f)(3), finding not only that the Convention did not prohibit such alternative service but, as well, that "any attempt at formal service through the Brazilian judicial system will be, if not fruitless, prolonged for such an extensive period of time that evidence and testimony may well be affected.").[2]

---

[2] "Courts have frequently cited delays in service under the Hague Convention as supporting an order of alternative service under Rule 4(f)(3)." *In GLG Life Tech Corp. Sec. Litig*., 287 F.R.D. at 266-67. *See, e.g., Brown v. China Integrated Energy, Inc*., 285 F.R.D. 560, 562-66 (C.D.Cal.2012) (ordering alternative service and noting that service of defendant under the Hague Convention would take four to six months); *Ackerman v. Global Vehicles U.S.A., Inc*., 2011 WL 3847427, at *3-4 (E.D.Mo. Aug. 26, 2011) (authorizing service on defendant's counsel "so as to not further delay" the lawsuit); *The Knit With v. Knitting Fever, Inc*., 2010 WL 4977944, at *4-5 (E.D.Pa. Dec. 7, 2010) (plaintiff granted leave to serve a defendant via counsel where Hague Convention service would take up to three months and plaintiff sought a waiver of service from the defendant before seeking leave to serve the defendant by alternative means); *LG*

In light of anticipated delays in serving defendants located in China it should come as no surprise that numerous courts have approved alternative service on Chinese defendants. *See In re LDK Solar Sec. Litig.*, 2008 WL 2415186, * 3-4 (N.D. Cal. June 12, 2008) (permitting service of Chinese subsidiary and individual officers by service on parent company in California because such service is not barred by the Hague Convention); *Lexmark Int'l, Inc.*, 291 F.R.D. at 175 (approving alternative service on Chinese defendant by email); *Jian Zhang*, 293 F.R.D. at 510 (approving alternative service on Chinese defendant's American lawyer); *In re Cathode Ray Tube (CRT) Antitrust Litig.*, 2014 WL 1091044, * 4 (N.D. Cal. Mar. 13, 2014) (rejecting Chinese defendant's argument that it had been improperly served after court had approved alternative service under Rule 4(f)(3) on defendant's American lawyers). As noted above, this Court has entered prior orders allowing service on the American lawyers for defendants in this MDL. *See In re Chinese-Manufactured Drywall Products Liability Litigation, supra*, Rec.Doc.No. 17790; *In re Chinese-Manufactured Drywall Products Liability Litigation, supra*, Rec.Doc.No. 18228.

The considerable delay (for the second time related to the same claims that have now been severed from *Bennett*) in achieving service through the Hague Convention suggests that alternative service is justified. The Advisory Committee Notes also indicate that Rule 4(f)(3) is appropriately used in "cases of urgency if convention methods will not permit service within the time required by the circumstances." The Note also explains that a court may "direct a special method of service not explicitly authorized by international agreement if not prohibited by the agreement" and "an earnest effort should be made to devise a method of communication that is consistent with due process and minimizes offense to foreign law."

---

*Elecs., Inc. v. ASKO Appliances, Inc.*, 2009 WL 1811098, at *4 (D.Del. June 23, 2009) (authorizing service on defendant's counsel "to prevent further delays in litigation").

Plaintiffs have previously experienced considerable delay and expense in serving the Knauf Entities with its complaints in the *Bennett* case. This delay and expense will continue in the absence of relief from this Court. In order to eliminate the expected backlog of complaints that need to be served on the Knauf Entities and to accomplish justice for injured homeowners, it is respectfully submitted that the Court should approve alternative service of process pursuant to Rule 4(f)(3) and allow the service of process directly on Defendants North American Lawyers who are active in this Court and have been so for a decade.

### C. Service on the Knauf Entities' United States Lawyers is Permissible and Comports with Due Process.

Since ordering alternative service pursuant to Rule 4(f)(3) is within the Court's discretion and is appropriate under the facts of this case, the only remaining question is whether service on the Knauf Entities' United States lawyers is a permissible procedure. A method of alternate service is acceptable if it "(1) is not prohibited by international agreement; and (2) comports with constitutional notions of due process." *S.E.C. v. Anticevic*, 2009 WL 361739, * 3 (S.D.N.Y. Feb. 13, 2009) (citation omitted). For a method of service to satisfy due process requires "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)).

Service on a party's lawyers "is a common form of service ordered under Rule 4(f)(3)." *Richmond Techs.*, 2011 WL 2607158, at * 13. *See also Knit With*, 2010 WL 4977944, at *4 ("Repeatedly, courts around the country have found that service upon a foreign defendant through counsel is appropriate to prevent further delays in litigation."); *Brown*, 285 F.R.D. at 565-66 (same); *GLG Life Tech Corp.*, 287 F.R.D. at 267 (citing cases).  Further, "[n]othing in the Hague Convention prohibits such service." *Richmond Techs.*, 2011 WL 2607158, at *13

9

(emphasis added). Indeed, because service on counsel occurs domestically, and does not involve transmission of documents abroad, it does not even "implicat[e]" the Hague Convention. *Volkswagenwerk*, 486 U.S. at 707 ("Where service on a domestic agent is valid and complete under both state law and the Due Process Clause, our inquiry ends and the Convention has no further implications."); *accord GLG Life Tech Corp.*, 287 F.R.D. at 267; *RSM Prod. Corp.*, 2007 WL 2295907, at * 3. See also, fn. 2, supra.

In any event, service on the Knauf Entities' domestic counsel will clearly satisfy the requirements of Due Process. It is undisputed that Defendants are aware of this litigation, as counsel at the Fishman Haygood firm have been involved in this matter throughout the litigation. They have also been involved in the process leading to severance of the affected claims from the *Bennett* action, both through briefing and during hearings in this Court. At least one of the Knauf Entities' United States lawyers has been continuously representing these defendants since 2010. And, it is noteworthy that the very same North American Lawyers still active in this litigation on behalf of the Knauf Entities as evidenced by their participation in the 2011 Knauf Settlement Agreement, subsequent hearings, their attendance at dozens of depositions, and their briefing and argument on a host of motions that have been considered by the Court in the *Bennett* action. The facts of this case suggest there is "adequate communication" between the Knauf Entitites and their counsel and there is no information to suggest otherwise. *GLG Life Tech Corp.*, 287 F.R.D. at 267 (quoting *Volkswagenwerk*, 486 U.S. at 705); *see also Richmond Techs.*, 2011 WL 2607158, at *13.

Accordingly, it is respectfully submitted that service on the Knauf Entities' United States lawyers will comport with Due Process as it is reasonably calculated to apprise the Knauf

Entities of the pendency of the actions against them and will afford them an opportunity to present any objections.

### III. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that its motion for approval of an alternative service method be granted, allowing service of process by alternative means (electronic means - email) on counsel of Defendants who have been active in this litigation in this Court for over a decade.

Dated: October 4, 2021.

/s/ *James V. Doyle, Jr.*

James V. Doyle, Jr.
DOYLE LAW FIRM, PC
2100 Southbridge Pkwy., Suite 650
Birmingham, AL 35209
Tele: 205-533-9500
Fax: 844-638-5812
jimmy@doylefirm.com

*Attorney for Plaintiffs*