## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In Re:   **CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION** | **MDL 2047** <br><br> **SECTION "L"** |
| **This document relates to:** <br><br> *Selene Y. Acosta, et al. v. Knauf Gips, KG, et al.* <br><br> **Case No. 21-cv-02033** | **JUDGE ELDON FALLON** <br><br> **MAG. JUDGE MICHAEL NORTH** |

## ANSWER TO COMPLAINT

Defendants, Knauf Gips KG and Knauf Plasterboard Tianjin Co., Ltd. (collectively, the "Knauf Defendants"), each answer the Complaint as follows:

> Plaintiffs allege that defective Chinese-manufactured drywall products have been found in their Florida homes. Based on the markings found on the defective products, Plaintiffs bring this action against Knauf Gips, KG and Knauf Plasterboard Tianjin, Co., Ltd. (collectively hereinafter "Knauf" or "Defendants), who are believed to be the manufacturers of the drywall found in Plaintiffs' homes. Pursuant to Fed.R.Civ.P.20, Plaintiffs have permissively joined as parties in this action against these Defendants because their claims arise from a common series of actions or occurrences. Each Defendant in this action is liable for damages incurred by Plaintiffs due to their role in the design, manufacture, importing, distributing, delivery, supply, marketing inspecting, installing, or sale of the defective drywall at issue in the litigation.

**ANSWER**:  The Knauf Defendants deny these allegations.

### JURISDICTION, PARTIES, AND VENUE

1.      This action is within the original jurisdiction of this Court by virtue of 28 U.S.C. §1332(a)(2) as the amount in controversy for each Plaintiff exceeds $75,000.00, exclusive of interest and costs. Plaintiffs are owners of real property in Florida and all Defendants are foreign business entities; thus, complete diversity exists.

**ANSWER**:  The Knauf Defendants admit that they are foreign business entities, and they deny

the remaining allegations of this paragraph.

2.     This Court has supplemental jurisdiction over this matter under 28 U.S.C. §1367 as all Defendants are subject to the Florida Long-Arm Statute, Fla. Stat. §48.193, for the tortious conduct described herein.

**ANSWER**:  The Knauf Defendants deny these allegations.

3.     Venue in this district satisfies the requirements of 28 U.S.C. § 1391(b) and (c) because all Plaintiffs reside in United States, most currently reside in the State of Florida within this jurisdiction and a substantial amount of the events and occurrences giving rise to the claim occurred in this district, or a substantial part of the property that is the subject of this action is situated in this district, while all Defendants are foreign business entities with no principle place of business or corporate headquarters located within Florida.

**ANSWER**:  The Knauf Defendants admit that they are foreign business entities with no principal

place of business or corporate headquarters located within Florida, and they deny the remaining

allegations of this paragraph.

## **PLAINTIFFS**

4.     Plaintiff, Selene Y. Acosta, is a citizen of Florida and owns real property located at 11617 Hammocks Glade Drive, Riverview, FL 33569. Plaintiff brings claims against Defendants as set forth in the following paragraphs of this Complaint.

**ANSWER**:  The Knauf Defendants lack knowledge or information sufficient to form a belief

about the truth of these allegations.  Out of an abundance of caution, the Knauf Defendants deny

these allegations.

5.     Plaintiffs, Amarilys Diaz and Martin Garcia, are citizens of Florida and own real property located at 928 SE 5th Court, Cape Coral, FL 33990. Plaintiffs are bringing claims against Defendants as set forth in the following paragraphs of this Complaint.

**ANSWER**:  The Knauf Defendants lack knowledge or information sufficient to form a belief

about the truth of these allegations.  Out of an abundance of caution, the Knauf Defendants deny

these allegations.

6.      Plaintiffs, Dennis P. Gardner and Sandra K. Gardner, are citizens of Minnesota and own real property located at 3720 River Point Drive, Ft. Myers, FL 33905. Plaintiffs are bringing claims against Defendants as set forth in the following paragraphs of this Complaint.

**ANSWER**:  The Knauf Defendants lack knowledge or information sufficient to form a belief about the truth of these allegations.  Out of an abundance of caution, the Knauf Defendants deny these allegations.

7.      Plaintiffs, Karl Juergen Harttmann and Karl Juergen Harttmann on behalf of Hartmann Trust, own real property located at 1811 SW 13th Lane, Cape Coral, FL 33991. Plaintiffs are bringing claims against Defendants as set forth in the following paragraphs of this Complaint.

**ANSWER**:  The Knauf Defendants lack knowledge or information sufficient to form a belief about the truth of these allegations.  Out of an abundance of caution, the Knauf Defendants deny these allegations.

8.      Plaintiff, Walter Montgomery, is a citizen of Florida and owns real property located at 1204 Bayou Pass Drive, Ruskin, FL 33570. Plaintiff is bringing claims against Defendants as set forth in the following paragraphs of this Complaint.

**ANSWER**:  The Knauf Defendants lack knowledge or information sufficient to form a belief about the truth of these allegations.  Out of an abundance of caution, the Knauf Defendants deny these allegations.

9.      Plaintiff, Joe Hansen on behalf of SAV Holdings, LLC, is a citizen of New Jersey. Joe Hansen is a member of the limited liability company. SAV Holdings, LLC owns real property located at 2001 Pergola Bend Drive, Tampa, FL 33647. Plaintiff is bringing claims against Defendants as set forth in the following paragraphs of this Complaint.

**ANSWER**:  The Knauf Defendants lack knowledge or information sufficient to form a belief about the truth of these allegations.  Out of an abundance of caution, the Knauf Defendants deny these allegations.

10.     Plaintiffs, Erik V. Stewart and Kristina L. Stewart, are citizens of Florida and own real property located at 2635 Creekfront Drive, Green Cove Springs, FL 32043. Plaintiffs bring claims against Defendants as set forth in the following paragraphs of this Complaint.

**ANSWER**:  The Knauf Defendants lack knowledge or information sufficient to form a belief about the truth of these allegations.  Out of an abundance of caution, the Knauf Defendants deny these allegations.

## DEFENDANTS

11.     Both Defendants are foreign entities organized in foreign countries and with principal places of business in foreign countries.

**ANSWER**:  The Knauf Defendants admit these allegations.

12.     Defendant Knauf GIPS, KG ("Knauf GIPS") is a German corporation doing business in several states including but not limited to Alabama, Florida, Georgia, Louisiana, Mississippi, North Carolina, South Carolina, Texas, and Virginia. Knauf GIPS is a leading manufacturer of building materials and systems. Knauf GIPS together with Knauf Plasterboard Tianjin Co., Ltd, ("Knauf Tianjin") provides building materials and systems to customers in over 50 countries, including the United States.  Upon information and belief, at all times material hereto, Knauf GIPS supervised, operated, trained and otherwise exercised control and/or had the right to control the operations of Knauf Tianjin and its agents, apparent agents, and employees.

**ANSWER**:  The Knauf Defendants deny these allegations.

13.     Upon information and belief, Knauf GIPS, together with its affiliates and/or actual or apparent agents, including Knauf Tianjin, manufactured, sold, distributed, marketed and placed within the stream of commerce gypsum drywall with the expectation that the drywall would be purchased by thousands of consumers within various states, including but not limited to Alabama, Florida, Georgia, Louisiana, Mississippi, North Carolina, South Carolina, Texas, and Virginia.

**ANSWER**:  The Knauf Defendants deny these allegations.

14.     Upon information and belief, Knauf GIPS and/or Knauf Tianjin have continuously and systematically distributed and sold drywall to numerous purchasers in the United States and their drywall is installed in numerous structures in the United States. Knauf GIPS and/or Knauf Tianjin manufactured and sold, directly and indirectly, to certain suppliers in the United States. Knauf GIPS

directly controlled through its global family of businesses the importation of defective drywall at all times and provided oversight of internal investigations of sales of defective drywall.

**ANSWER**:  The Knauf Defendants deny these allegations.

15.     Defendant Knauf Tianjin is a foreign corporation doing business in several states, including but not limited to Alabama, Florida, Georgia, Louisiana, Mississippi, North Carolina, South Carolina, Texas, and Virginia. Knauf Tianjin is involved in the manufacturing and sale of gypsum drywall. Knauf Tianjin is the actual agent and/or apparent agent of Knauf GIPS. Upon information and belief, Knauf Tianjin individually and/or together with and at the direction and control of its principal, Knauf GIPS, manufactured, sold, distributed, marketed and placed within the stream of commerce gypsum drywall with the expectation that the drywall would be purchased by thousands of consumers throughout the United States. Knauf Tianjin and/or Knauf GIPS have continuously and systematically distributed and sold drywall to numerous purchasers in the United States and their drywall is installed in numerous structures in the United States. Knauf Tianjin and/or Knauf GIPS manufactured and sold, directly and indirectly, to certain suppliers in the United States. Representatives of Knauf Tianjin have intentionally directed communications to distributors in the United States, employed American distributors as agents for the company, shipped product intending for it to be distributed in the United States and otherwise engaged in commerce and/or circumstances that the company reasonably expected that it could be hailed into the United States courts.

**ANSWER**:  The Knauf Defendants deny these allegations.

16.     In 1995, the Knauf GIPS introduced its advanced production techniques  and technology into China. From 1997 through 2001, Knauf GIPS established three plasterboards plants which are located in Wuhu, Tianjin, and Dongguan. The product quality of all Knauf- related plants in China, including Knauf Tianjin, are strictly controlled according to the requirements of Knauf GIPS' headquarters in Germany.  Knauf GIPS's sales and technical support teams support Knauf's businesses throughout the world, including Knauf Tianjin in China. Knauf Tianjin and its employees are controlled by the actual and/or apparent agents of Knauf GIPS.  And, based on information and belief all Knauf entities act without regard to corporate formalities.

**ANSWER**:  The Knauf Defendants deny these allegations.

## **GENERAL ALLEGATIONS**

17.     Defendants' drywall is predominately composed of gypsum.

**ANSWER**:   The Knauf Defendants admit that drywall contains gypsum. Out of an

abundance of caution, the Knauf Defendants deny any remaining allegations..

18.     Within Defendants' defective drywall that was designed, manufactured, exported, imported, distributed, delivered, supplied, inspected, installed, marketed, and/or sold by Defendants as described herein, sulfur compounds exit the drywall.

**ANSWER**:  The Knauf Defendants deny these allegations.

19.     The sulfur compounds, including Hydrogen Sulfide, Carbonyl Sulfide, and Carbon Disulfide, exit Defendants' drywall and cause rapid sulfidation and damage to personal property (such as air conditioning and refrigerator coils, faucets, utensils, electrical wiring, copper, electronic appliances and other metal surfaces and property).

**ANSWER**:  The Knauf Defendants deny these allegations.

20.     Although the drywall functions according to its intended purpose as a building component, it is unfit for this purpose due to the damaging side effects and/or because its use is so inconvenient that Plaintiffs would not have purchased their homes had the side effects been disclosed by Defendants.

**ANSWER**:  The Knauf Defendants deny these allegations.

21.     As a direct and proximate result of Defendants' actions and omissions, each Plaintiff's structures and personal property have been exposed to Defendants' defective drywall containing the latent defect and the harmful effects of the sulfur compounds that exit from Defendants' defective drywall.

**ANSWER**:  The Knauf Defendants deny these allegations.

22.     Defendants tortiously manufactured, exported, imported, distributed, delivered, supplied, inspected, installed, marketed and/or sold the defective drywall, which was unfit for its intended purpose in that the drywall caused rapid sulfidation and damage to personal property in each Plaintiff's home, residence or structure.

**ANSWER**:  The Knauf Defendants deny these allegations.

23.     Defendants recklessly, wantonly, and/or negligently manufactured, exported, imported, distributed, delivered, supplied, inspected, installed, marketed and/or sold the defective drywall at issue in this litigation.

**ANSWER**:  The Knauf Defendants deny these allegations.

24.     Defendants recklessly, wantonly and/or negligently implemented

faulty procedures for purposes of formulating, preparing, testing, and otherwise ensuring the quality and/or character of the defective drywall at issue in this litigation.

**ANSWER**:  The Knauf Defendants deny these allegations.

     25.    As a direct and proximate result of Defendants' defective drywall and the harmful effects of the sulfur compounds that exist as a latent defect which exit these products, Plaintiffs have suffered, and continue to suffer, economic harm.

**ANSWER**:  The Knauf Defendants deny these allegations.

     26.    As a direct and proximate result of Defendants' defective drywall and the harmful effects of the sulfur compounds that exit these products, each Plaintiff has suffered, and continues to suffer damages. These damages include, but are not limited to, costs of inspection; costs and expenses necessary to remedy, replace and remove the defective drywall and other property that has been impacted; lost value or devaluation of their homes, residences or structures and property as a direct result of damage caused to the property and indirect damage resulting from perceived defects to the property, including stigma damages and loss of use and enjoyment of their home and property.

**ANSWER**:  The Knauf Defendants deny these allegations.

     27.    After learning that their products being sold in the United States were defective, Defendants took no action required under federal law (see Consumer Product Safety Act, 15 U.S.C. § 2051, *et seq*.) to notify their importers, distributors, agents, or consumers of the harmful effects caused by their drywall.

**ANSWER**:  The Knauf Defendants deny these allegations.

     28.    After learning that their products being sold in the United States were defective, Defendants took no action and initiate a corrective action plan.

**ANSWER**:  The Knauf Defendants deny these allegations.

     29.    By failing to take action to notify potential victims or attempt to implement a corrective action plan for the damage their defective drywall products caused, Defendants directly violated the federal CPSA that specifically requires that when a manufacturer has reason to know its product does not meet safety standards, contains a defect, or creates and unreasonable risk of death or injury, it must inform the CPSC. (See 15 U.S.C. 2064(b)).

**ANSWER**:  The Knauf Defendants deny these allegations.

     30.    After learning that their products being sold in the United States

were defective, Defendants breached their post-sale duty to warn consumers in Florida, including Plaintiffs, as required by the laws of the State of Florida.

**ANSWER**: The Knauf Defendants deny these allegations.

31.     Based on information and belief, Defendants executed confidential indemnification agreements with its distribution partners in the United States on or about 2006, rather than comply with its post-sale duty to warn consumers as required by federal law and the laws of the State of Florida.

**ANSWER**: The Knauf Defendants deny these allegations.

32.     Plaintiffs' damages include, but are not limited to, cost of inspection; cost and expenses necessary to fully remediate their homes of defective drywall, cost of alternative living arrangements, economic hardship resulting in lower credit ratings leading to higher interest rates on loans and credit cards, lost value or devaluation of their homes and property; and, loss of use and enjoyment of their home and property.

**ANSWER**: The Knauf Defendants deny these allegations.

33.     As a direct and proximate result of Defendants' latent defect in its drywall and the harmful effects of the sulfur compounds that exit these products, each Plaintiff has a need for injunctive relief in the form of repair and remediation of their home, rescission of contracts, and the ordering of corrective notice to the Consumer Product Safety Commission, the federal agency charged with implementing a corrective action plan for defective consumer products sold in the United States of America.

**ANSWER**: The Knauf Defendants deny these allegations.

## **ESTOPPEL**

34.     Defendants were and are under a continuous duty to disclose to Plaintiffs and other consumers in Florida the true character, quality, and nature of its gypsum drywall products. Instead, it actively concealed the true character, quality, and nature of its defective gypsum drywall products and knowingly made misrepresentations about the quality, reliability, characteristics, and performance of its gypsum drywall products.

**ANSWER**: The Knauf Defendants deny these allegations.

35.     Plaintiffs reasonably relied upon Defendants' knowing and affirmative misrepresentations and/or active concealment of these facts. Based on the foregoing, Defendants are estopped from relying on any statutes of limitation in defense of this action.

**ANSWER**:  The Knauf Defendants deny these allegations.

## **DISCOVERY RULE**

36.     The causes of action alleged herein did not accrue until Plaintiffs discovered that the defective gypsum drywall products in their respective homes had the defective characteristics that were concealed by Defendants by overt acts and intentional omissions that breached their post-sale duty to warn Plaintiffs.

**ANSWER**:  The Knauf Defendants deny these allegations.

37.     Plaintiffs had no realistic ability to discover the presence of the defective drywall products or to otherwise learn of the fraudulent concealment and/or intentional misrepresentations by Defendants, until it was discovered and confirmed by an experienced Chinese-manufactured drywall inspector.

**ANSWER**:  The Knauf Defendants deny these allegations.

38.     At no time was the defective nature of Defendants' defective gypsum drywall product revealed to the public through either notice to the Consumer Product Safety Commission, the State of Florida, or directly to consumers.

**ANSWER**:  The Knauf Defendants deny these allegations.

## **COUNT I**
## **NEGLIGENCE**

39.     Plaintiffs adopt and restate the preceding paragraphs as if fully set forth fully herein.

**ANSWER:** The Knauf Defendants incorporate each and every answer set forth in response to all

preceding paragraphs as if fully restated here.

40.     Defendants owed a duty to Plaintiffs to exercise reasonable care in designing, manufacturing, exporting, importing, distributing, delivering, supplying, inspecting, marketing, selling, and/or installing this drywall, including a duty to adequately warn of their failure to do the same.

**ANSWER**:  The Knauf Defendants deny these allegations.

41.     Defendants knew or should have known that their wrongful acts or omissions would result in harm and damages in the manner set forth herein.

**ANSWER**:  The Knauf Defendants deny these allegations.

42.    Defendants breached their duty to exercise reasonable care in the designing, manufacturing, exporting, importing, distributing, delivering, supplying, inspecting, marketing, selling, and/or installing this drywall.

**ANSWER**:  The Knauf Defendants deny these allegations.

43.    Defendants likewise breached their duties to Plaintiffs by failing to warn about the defective nature of the drywall. Defendants, through the exercise of reasonable care, knew or should have known the nature of the defective drywall and the adverse effects that it could have on the homes and belongings of Plaintiffs.

**ANSWER**:  The Knauf Defendants deny these allegations.

44.    Defendants breached their duty to exercise reasonable care to timely remove and/or recall from the market and/or otherwise prevent the continued contact of Plaintiffs with the drywall, upon learning it had been sold in an unreasonably dangerous condition.

**ANSWER**:  The Knauf Defendants deny these allegations.

45.    Given the defect in the Defendants' drywall, Defendants knew or should have known that their product could, and would, cause harm, damages and/or personal injuries to Plaintiffs.

**ANSWER**:  The Knauf Defendants deny these allegations.

46.    As a direct and proximate cause of Defendants' acts or omissions, Plaintiffs were harmed and have incurred damages as described herein.

**ANSWER**:  The Knauf Defendants deny these allegations.

## COUNT II
## NEGLIGENCE PER SE

47.    Plaintiffs adopt and restate the preceding paragraphs as if fully set forth fully herein.

**ANSWER:** The Knauf Defendants incorporate each and every answer set forth in response to all preceding paragraphs as if fully restated here.

48.    Defendants owed statutory duties to Plaintiffs to exercise reasonable care in designing, manufacturing, exporting, importing, distributing, delivering, supplying, inspecting, marketing, selling, and/or installing this drywall.

**ANSWER**:  The Knauf Defendants deny these allegations.

49.     Defendants breached their statutory duties to the Plaintiffs by failing to exercise reasonable care in the designing, manufacturing, exporting, importing, distributing, delivering, supplying, inspecting, marketing, selling, and/or installing this drywall.

**ANSWER**:  The Knauf Defendants deny these allegations.

50.     Defendants likewise breached their statutory duties, including but not limited to those imposed under the International Building Code ("IBC") and other state and local building codes, to Plaintiffs by failing to warn about the defective nature of the drywall. For instance, it is specifically alleged that Defendants furnished the drywall in violation of ASTM C 1396/C 1396M-069, and its predecessor(s).

**ANSWER**:  The Knauf Defendants deny these allegations.

51.     Defendants, through the exercise of reasonable care, knew or should have known the nature of the defective drywall and the adverse effects that it could have on the homes of Plaintiffs.

**ANSWER**:  The Knauf Defendants deny these allegations.

52.     Given the defect in the Defendants' drywall, Defendants knew or should have known that their product could, and would, cause harm and damages to Plaintiffs.

**ANSWER**:  The Knauf Defendants deny these allegations.

53.     As a direct and proximate cause of Defendants' acts or omissions, Plaintiffs were harmed and have incurred damages as described herein.

**ANSWER**:  The Knauf Defendants deny these allegations.

## COUNT III
## STRICT LIABILITY

54.     Plaintiffs adopt and restate the preceding paragraphs as if fully set forth fully herein.

**ANSWER:** The Knauf Defendants incorporate each and every answer set forth in response to all preceding paragraphs as if fully restated here.

55.     At all times relevant hereto, Defendants were in the business of distributing, delivering, supplying, inspecting, marketing, and/or selling drywall for sale to the general public.

**ANSWER**:  The Knauf Defendants deny these allegations.

56.     The drywall, including that installed in the homes of Plaintiffs was placed by Defendants into the stream of commerce.

**ANSWER**:  The Knauf Defendants deny these allegations.

57.     Defendants knew that the subject drywall would be used without inspection for defects by consumers.

**ANSWER**:  The Knauf Defendants deny these allegations.

58.     Defendants intended that the drywall reach the ultimate consumers, including Plaintiffs, and it indeed reached Plaintiffs when it was installed in their homes.

**ANSWER**:  The Knauf Defendants deny these allegations.

59.     When installed in Plaintiffs' homes, the drywall was in substantially the same condition as it was in when Defendants manufactured, sold, and/or delivered it.

**ANSWER**:  The Knauf Defendants deny these allegations.

60.     At all times relevant hereto the subject drywall was used in a manner consistent with the uses intended by, or known to Defendants, and in accordance with the Defendants' directions and instructions.

**ANSWER**:  The Knauf Defendants deny these allegations.

61.     The subject drywall was not misused or altered by any third parties.

**ANSWER**:  The Knauf Defendants deny these allegations.

62.     The Defendants' drywall was defectively manufactured, designed, inspected, tested, marketed, distributed, and sold.

**ANSWER**:  The Knauf Defendants deny these allegations.

63.     The design defect was in designing drywall that allowed high levels of sulfur and/or other chemicals to emit through off-gassing.

**ANSWER**:  The Knauf Defendants deny these allegations.

64.     The manufacturing defect was in improperly selecting, testing, inspecting, mining, making, assembling, and using, gypsum for drywall with levels of sulfur that were too high and emitted various sulfide gasses and/or other chemicals through off-gassing.

**ANSWER**:  The Knauf Defendants deny these allegations.

65.     The drywall was also defective because it was improperly exported, imported, distributed, delivered, supplied, inspected, marketed, and/or sold in a defective condition, as described above.

**ANSWER**:  The Knauf Defendants deny these allegations.

66.     The Defendants' defective manufacturing, designing, inspecting, testing, marketing, distributing, and selling of the drywall rendered it unsafe and unreasonably dangerous for its intended use by Plaintiffs.

**ANSWER**:  The Knauf Defendants deny these allegations.

67.     The drywall is also defective and unreasonably dangerous because Defendants failed to adequately warn and instruct Plaintiffs of the defective design, inspection, testing, manufacturing, marketing, and selling of the drywall.

**ANSWER**:  The Knauf Defendants deny these allegations.

68.     Plaintiffs were neither aware of the unreasonably dangerous propensities and defective condition of the drywall, nor could Plaintiffs, acting as reasonably prudent people discover that Defendants' drywall was defective, as set forth herein, or perceive its danger.

**ANSWER**:  The Knauf Defendants deny these allegations.

69.     Defendants' defective drywall was much more dangerous and harmful than expected by the average consumer and by Plaintiffs.

**ANSWER**:  The Knauf Defendants deny these allegations.

70.     The benefit, if any, of Plaintiffs using Defendants' defective drywall was greatly outweighed by the risk of harm and danger.

**ANSWER**:  The Knauf Defendants deny these allegations.

71.    The defects in the drywall, as well as Defendants' failure to adequately warn Plaintiffs of the defects rendered the drywall unreasonably dangerous, was the direct and proximate cause of damages incurred by Plaintiffs.

**ANSWER**:  The Knauf Defendants deny these allegations.

**COUNT IV**
**BREACH OF EXPRESS AND/OR IMPLIED WARRANTY**

72.    Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

**ANSWER:** The Knauf Defendants incorporate each and every answer set forth in response to all preceding paragraphs as if fully restated here.

73.    Defendants and/or their agents were in privity with Plaintiffs and/or Plaintiffs were foreseeable third-party beneficiaries of any warranty.

**ANSWER**:  The Knauf Defendants deny these allegations.

74.    At the times Defendants' drywall was installed, utilized, supplied, inspected, sold, in the Plaintiffs' homes, Defendants knew, or it was reasonably foreseeable, that the drywall would be installed in the Plaintiffs' homes for use as a building material, and expressly or impliedly warranted the product to be fit for that use.

**ANSWER**:  The Knauf Defendants deny these allegations.

75.    Defendants placed their drywall products into the stream of commerce in a defective condition and these products were expected to, and did, reach users, handlers, and persons coming into contact with said products without substantial change in the condition in which they were sold.

**ANSWER**:  The Knauf Defendants deny these allegations.

76.    The drywall was defective because it was not fit for the uses intended by Defendants; the installation of the drywall in Plaintiffs' homes was not suitable for use as a building material, because it contained the defects as set forth herein.

**ANSWER**:  The Knauf Defendants deny these allegations.

77.    The Defendants breached their warranty because the drywall was

not fit and safe for the particular purposes for which the goods were required (to be installed in Plaintiffs' homes as a building material) due to the defects set forth herein.

**ANSWER**:  The Knauf Defendants deny these allegations.

78.    Defendants had reasonable and adequate notice of the Plaintiffs' claims for breach of warranty and failed to cure.

**ANSWER**:  The Knauf Defendants deny these allegations.

79.    As a direct and proximate cause of Defendants' breach of warranties, Plaintiffs have incurred harm and damages as described herein.

**ANSWER**:  The Knauf Defendants deny these allegations.

## COUNT V
## PRIVATE NUISANCE

80.    Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

**ANSWER:** The Knauf Defendants incorporate each and every answer set forth in response to all

preceding paragraphs as if fully restated here.

81.    The Defendants' tortious or wrongful acts or omissions have caused sulfide gas and/or other chemical leaching into Plaintiffs' homes which has unreasonably interfered, and continues to interfere, with the Plaintiffs' use and enjoyment of their properties and caused them harm and damage as discussed herein.

**ANSWER**:  The Knauf Defendants deny these allegations.

82.    Defendants' interference has impaired the rights of Plaintiffs' health, comfort, safety, free use of their property, and/or peaceful enjoyment of their property.

**ANSWER**:  The Knauf Defendants deny these allegations.

83.    Defendants' invasions were intentional and unreasonable, and/or unintentional, but otherwise negligent or reckless.

**ANSWER**:  The Knauf Defendants deny these allegations.

84.    The interference with Plaintiffs' use of their property was caused by

Defendants and is substantial and is ongoing.

**ANSWER**:  The Knauf Defendants deny these allegations.

85.    Defendants' private nuisance was the direct, proximate, and foreseeable cause of Plaintiffs damages, injuries, harm, loss, and increased risk of harm, which they suffered and will continue to suffer.

**ANSWER**:  The Knauf Defendants deny these allegations.

86.    As a direct and proximate cause of Defendants' creation of a private nuisance, Plaintiffs have incurred harm and damages and injuries as described herein.

**ANSWER**:  The Knauf Defendants deny these allegations.

## COUNT VI
## NEGLIGENT DISCHARGE OF A CORROSIVE SUBSTANCE

87.    Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

**ANSWER:** The Knauf Defendants incorporate each and every answer set forth in response to all

preceding paragraphs as if fully restated here.

88.    Defendants had actual or constructive knowledge of the extremely corrosive and dangerous propensities of the drywall at issue in this litigation.

**ANSWER**:  The Knauf Defendants deny these allegations.

89.    Notwithstanding their actual or constructive knowledge of the corrosive and dangerous propensities of the drywall, Defendants nevertheless designed, manufactured, imported, distributed, delivered, supplied, marketed, inspected, installed, or sold the drywall for use in the homes or other structures owned by Plaintiffs.

**ANSWER**:  The Knauf Defendants deny these allegations.

90.    By causing the sale, distribution, delivery, and/or supply of the drywall under these circumstances, Defendants breached their duty to exercise reasonable care and created a foreseeable zone of risk of injury to Plaintiffs.

**ANSWER**:  The Knauf Defendants deny these allegations.

91.    Defendants likewise breached their duties to Plaintiffs by failing to

warn about the corrosive and dangerous propensities of the drywall.

**ANSWER**:  The Knauf Defendants deny these allegations.

92.     Defendants, through the exercise of reasonable care, knew or should have known the nature of the defective drywall and the adverse effects that it could have on the property and bodies of Plaintiffs.

**ANSWER**:  The Knauf Defendants deny these allegations.

93.     Plaintiffs have incurred damages by virtue of exposure of their property to the defective drywall at issue in this litigation. Given the defect in the Defendants' drywall, Defendants knew or should have known that their product would cause injury to Plaintiffs.

**ANSWER**:  The Knauf Defendants deny these allegations.

94.     As a direct and proximate result of Defendants' acts and omissions, Plaintiffs were harmed and have incurred damages as described herein. The injuries sustained by Plaintiffs are within the foreseeable zone of risk created by Defendants.

**ANSWER**:  The Knauf Defendants deny these allegations.

<u>**COUNT VII**</u>
**UNJUST ENRICHMENT**

95.     Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

**ANSWER:** The Knauf Defendants incorporate each and every answer set forth in response to all

preceding paragraphs as if fully restated here.

96.     Defendants received money as a result of Plaintiffs' purchase of Defendants' defective drywall, or purchase of homes containing this drywall, either directly or through an agent, and Defendants wrongfully accepted and retained these benefits to the detriment of Plaintiffs.

**ANSWER**:  The Knauf Defendants deny these allegations.

97.     Defendants' acceptance and retention of these benefits under the circumstances make it inequitable and unjust for Defendants to retain the benefit without payment of the value to the Plaintiffs.

**ANSWER**:  The Knauf Defendants deny these allegations.

98.    Defendants, by the deliberate and tortious conduct complained of herein, have been unjustly enriched in a manner which warrants restitution.

**ANSWER**:  The Knauf Defendants deny these allegations.

## COUNT VIII
## VIOLATION OF CONSUMER PROTECTIONAL ACTS

99.    Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

**ANSWER:** The Knauf Defendants incorporate each and every answer set forth in response to all preceding paragraphs as if fully restated here.

100.    This is an action for relief under F.S. § 501.201, *et seq*. (Florida Deceptive and Unfair Trade Practices Act).

**ANSWER**:  The Knauf Defendants deny these allegations.

101.    The Defendants' acts and omissions as well as their failure to use reasonable care in this matter as alleged in this complaint, including but not limited to, the knowing misrepresentation or failure to disclose the source, affiliation, origin, characteristics, ingredients, standards and quality of defective drywall constitute violation of the provisions of the Florida Deceptive and Unfair Trade Practices Act.

**ANSWER**:  The Knauf Defendants deny these allegations.

102.    Plaintiffs have suffered actual damages as a result of Defendants' violation of this Deceptive and Unfair Trade Practices Act and are entitled to relief.

**ANSWER**:  The Knauf Defendants deny these allegations.

103.    As a direct and proximate cause of Defendants' violation of the Deceptive and Unfair Trade Practices Act, Plaintiffs have incurred harm and damages as described herein.

**ANSWER**:  The Knauf Defendants deny these allegations.

## COUNT IX
## FRAUDULENT MISREPRESENTATION

104.    Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

**ANSWER:** The Knauf Defendants incorporate each and every answer set forth in response to all

preceding paragraphs as if fully restated here.

      105.    Beginning in 2006, Defendants intentionally and fraudulently misrepresented the fitness of their drywall product to its buyers and distributors through its marketing activities.

**ANSWER**:  The Knauf Defendants deny these allegations.

      106.    In Particular, Defendants intentionally and fraudulently:

a. Failed to adequately warn about the level of sulfur off-gassing;
b. Failed to provide full and complete information about corrosive nature of the gasses its product emits;
c. Provided marketing material that did not adequately disclose the risks that Defendants knew of;
d. Provided importers, distributors, or consumers information about their product that did not adequately disclose the risks that Defendants knew of; and,
e. Overstated the quality of their drywall product.

**ANSWER**:  The Knauf Defendants deny the allegations of this paragraph, including all of its

subparts.

      107.    The representations were made by the Defendants with the intent that importers, exporters, distributors and consumers, including Plaintiffs, rely upon them, in willful, wanton, and reckless disregard for the lack of truthfulness of the representations and with the intent to defraud and deceive Plaintiffs.

**ANSWER**:  The Knauf Defendants deny these allegations.

      108.    Plaintiffs reasonably relied on the fraudulent misrepresentations directly or as third- party beneficiaries when purchasing their homes.

**ANSWER**:  The Knauf Defendants deny these allegations.

<u>**COUNT X**</u>
**NEGLIGENT MISREPRESENTATION**

      109.    Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

**ANSWER:** The Knauf Defendants incorporate each and every answer set forth in response to all preceding paragraphs as if fully restated here.

110.    From the time Defendants first tested, studied, researched, evaluated, endorsed, manufactured, marketed and distributed, and up to the present, Defendants made misrepresentations to Plaintiffs and the general public, including but not limited to the misrepresentation that Defendants' drywall was safe, fit, and effective for use in the homes of Plaintiffs.

**ANSWER**:  The Knauf Defendants deny these allegations.

111.    Defendants owed a duty to Plaintiffs to exercise reasonable care to ensure they did not misrepresent the safety or fitness for use, and failed to exercise that reasonable care and therefore breached their duty.

**ANSWER**:  The Knauf Defendants deny these allegations.

112.    The Defendants made misrepresentations without any reasonable grounds for believing them to be true, and were in fact, reckless.

**ANSWER**:  The Knauf Defendants deny these allegations.

113.    The Defendants had a duty to correct these material misstatements because they knew or should have known that they were inaccurate and that others would reasonably rely on them and suffer damages.

**ANSWER**:  The Knauf Defendants deny these allegations.

114.    These misrepresentations were made directly by Defendants, by sales representatives and other authorized agents of Defendants, and in publications and other written materials directed to their customers including builders, distributors and importers, with the intention of inducing reliance, purchase, and use of their product.

**ANSWER**:  The Knauf Defendants deny these allegations.

115.    The representations by the Defendants were in fact false, in that their product is not safe, fit, and effective for use in the homes and structures owned by Plaintiffs because their drywall has a propensity to emit corrosive gasses.

**ANSWER**:  The Knauf Defendants deny these allegations.

116.    The representations by Defendants were made with the expectation and intention of inducing reliance upon them and increasing their sale of drywall products.

**ANSWER**:  The Knauf Defendants deny these allegations.

117.    Plaintiffs reasonably relied on the misrepresentations made by the Defendants to their detriment.

**ANSWER**:  The Knauf Defendants deny these allegations.

118.    In reliance of the misrepresentations by the Defendants, Plaintiffs were induced to purchase and use Defendants' drywall.

**ANSWER**:  The Knauf Defendants deny these allegations.

119.    If Plaintiffs had known of the true facts and the facts concealed by the Defendants, Plaintiff would not have used Defendants' product.

**ANSWER**:  The Knauf Defendants deny these allegations.

120.    The reliance of Plaintiffs upon Defendants' misrepresentations was justified because such misrepresentations were made and conducted by individuals and entities that were in a position to know the true facts.

**ANSWER**:  The Knauf Defendants deny these allegations.

121.    As a direct, proximate, and foreseeable result of Defendants' negligent misrepresentations, Plaintiff suffered injuries and damages as alleged herein.

**ANSWER**:  The Knauf Defendants deny these allegations.

## COUNT XI
## FRAUDULENT CONCEALMENT

122.    Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

**ANSWER:** The Knauf Defendants incorporate each and every answer set forth in response to all

preceding paragraphs as if fully restated here.

123.    At all relevant times, Defendants knew that their drywall was defective, unreasonably unsafe, and that its risks were understated and its benefits were overstated.

**ANSWER**:  The Knauf Defendants deny these allegations.

124.    Defendants willfully, intentionally and fraudulently concealed their knowledge from Plaintiffs, Plaintiff's builders, distributors, importers, and the public, and instead knowingly provided false information.

**ANSWER**:  The Knauf Defendants deny these allegations.

125.    Defendants withheld information that they had a duty to disclose through advertising, marketing materials, sales personnel, publications, that their product was fit for its intended use.

**ANSWER**:  The Knauf Defendants deny these allegations.

126.    Defendants withheld information about the severity of the risks of using their product and their knowledge of the harmful effects.

**ANSWER**:  The Knauf Defendants deny these allegations.

127.    Defendants withheld information that their product failed to comply with the IBC, and other state and local building codes like other gypsum products available on the market.

**ANSWER**:  The Knauf Defendants deny these allegations.

128.    The above facts were material and would have been considered important to a reasonable person.

**ANSWER**:  The Knauf Defendants deny these allegations.

129.    Had the above facts been disclosed, they would have changed Plaintiffs' decision to purchase their affected property or Defendants' product.

**ANSWER**:  The Knauf Defendants deny these allegations.

130.    Defendants had a duty to disclose the information to Plaintiffs and other consumers.

**ANSWER**:  The Knauf Defendants deny these allegations.

131.    Defendants had sole access to material facts concerning, and unique and special knowledge and expertise regarding, the dangers and unreasonable risks associated with their gypsum products.

**ANSWER**:  The Knauf Defendants deny these allegations.

132.    Defendants knew or should have known and expected or should have expected and intended that Plaintiffs and others would rely on the inaccurate

information they provided.

**ANSWER**:  The Knauf Defendants deny these allegations.

133.     As a foreseeable, direct, and proximate result of Defendants' actions and fraudulent concealment, Plaintiff suffered injury.

**ANSWER**:  The Knauf Defendants deny these allegations.

## COUNT XII
### FRAUD

134.     Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

**ANSWER:** The Knauf Defendants incorporate each and every answer set forth in response to all

preceding paragraphs as if fully restated here.

135.     Defendants' intentional misrepresentations and concealments constitute fraud under state law and were made with the intent to defraud its distributors and all downstream purchasers, including consumers such as Plaintiffs.

**ANSWER**:  The Knauf Defendants deny these allegations.

136.     Specifically, Defendants intentionally and fraudulently did the following:

a.  In 2006, Defendants received written and verbal complaints from U.S. customers about their defective drywall;

b.  Specifically, Banner Supply Company passed complaints it received from builders and installers to Mike Norris, Defendant Knauf Tianjin's general manager;

c.  Based on information and belief, Mr. Norris contacted the Knauf headquarters in Germany about the complaints received;

d.  Executive level employees of Defendants, including Isabel Knauf who was serving as manager of Knauf's operations in Asia, discussed the complaints and chose to send at least one corporate representative to the United States to meet with one of their larger distributors in Florida, Banner Supply Company;

e.  After confirming that their drywall product was indeed defective and being widely sold primarily in the Southeastern United States, Defendants chose to take no corrective action and instead continued to sell the product to its distributors without any limitation or disclosure regarding the defective nature of their product;

f.  After confirming that their drywall product was defective and being sold in the United States, Defendants struck an indemnification agreement with Banner Supply Company, one of its distributors, in order to avoid litigation and to encourage continuing sales of the defective product without any limitation or disclosure regarding the defective nature of their product;

g.   Based on information and belief, the terms of the indemnification agreement between Defendants and Banner Supply required both parties to conceal the existence of the deal from government, media, and the public;

h.   After confirming that their drywall product was defective and being sold in the United States, Defendants chose to notify no other distributors or buyers that their drywall was indeed defective; instead, Defendants chose to conceal the defective nature of its product while continuing its marketing and sale of the remaining defective product, estimated to be 55 million pounds, that had been imported from its Tianjin plant in China;

i.   On information and belief each and every advertisement and marketing channel fraudulently omits information about the risks of defective Knauf-manufactured drywall and overstates the benefits;

j.   Defendants failed to disclose that their product was not as safe and effective as other gypsum products sold by other manufacturers;

k.   Defendants failed to disclose that the risk of harm associated with their gypsum products was greater than the risk of harm associated with other gypsum products sold by other manufacturers;

l.   Defendants failed to disclose that their drywall was not adequately tested;

m.   Defendants failed to disclose that testing had revealed unreasonably high risk of damage to homes and personal property;

n.   On information and belief, Defendants failed to disclose that Defendants intentionally withheld internal quality tests; and

o.   Defendants affirmatively asserted that their drywall was safe and fit for its intended use.

**ANSWER**:  The Knauf Defendants deny the allegations of this paragraph, including all of its subparts.

137.   Plaintiffs and other consumers were misled by Defendants' affirmative statements or material omissions that provided the fraudulently inaccurate information described above.

**ANSWER**:  The Knauf Defendants deny these allegations.

138.   Defendants had access to these facts, while Plaintiffs did not and were unaware of them and could not reasonably learn of them from an alternative source prior to purchase.

**ANSWER**:  The Knauf Defendants deny these allegations.

139.   The above facts were material to Plaintiffs' decision to either purchase the gypsum product from Defendants' distributors or to purchase the affected property, and they reasonably relied on Defendants' representations either directly or indirectly.

**ANSWER**:  The Knauf Defendants deny these allegations.

140.    As a direct, proximate, and foreseeable result of Defendants' fraud they caused Plaintiff injuries.

**ANSWER**:  The Knauf Defendants deny these allegations.

## PUNITIVE DAMAGES ALLEGATIONS

141.    Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

**ANSWER:** The Knauf Defendants incorporate each and every answer set forth in response to all preceding paragraphs as if fully restated here.

142.    The acts, conduct and omissions of Defendants, as alleged throughout the Complaint were willful and malicious. Defendants committed these acts with a conscious disregard for the rights and safety of Plaintiffs and other consumers and for the primary purpose of increasing Defendants' profits from the sale and distribution of its product. Defendants' outrageous and unconscionable conduct warrants an award of exemplary and punitive damages against Defendants in an amount appropriate to punish and make an example of Defendants.

**ANSWER**:  The Knauf Defendants deny these allegations.

143.    Prior to the manufacturing, sale, and distribution of its product, Defendants knew that said drywall or sheetrock was in a defective condition as previously described herein and knew that those consumers or homeowners would experience and did experience damages due to the corrosive off-gassing.  Further, Defendants, through their officers, directors, managers, and agents, knew that the drywall or sheetrock presented a substantial and unreasonable risk of harm to Plaintiffs or other consumers and Defendants unreasonably subjected all consumers of said drywall or sheetrock to risk of injury or damages.

**ANSWER**:  The Knauf Defendants deny these allegations.

144.    Despite their knowledge, Defendants, acting through their officers, directors and managing agents, for the purpose of enhancing Defendants' profits, knowingly and deliberately failed to remedy the known defects in their drywall and failed to warn the public, including Plaintiffs of the extreme risk of injury occasioned by said defects inherent in the defective drywall or sheetrock. Defendants and their agents, officers, and directors intentionally proceeded with the manufacturing, sale, distribution, and marketing of drywall or sheetrock knowing these actions would expose persons to damages in order to advance Defendants' pecuniary interest and monetary profits.

**ANSWER**:  The Knauf Defendants deny these allegations.

145.    Defendants' conduct was so contemptible that it would be looked down upon and despised by ordinary decent people, and was carried on by Defendants with willful and conscious disregard for the safety of Plaintiffs and other consumers, entitling Plaintiffs to exemplary damages.

**ANSWER**:  The Knauf Defendants deny these allegations.

## EQUITABLE AND INJUNCTIVE RELIEF

146.    Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

**ANSWER:** The Knauf Defendants incorporate each and every answer set forth in response to all preceding paragraphs as if fully restated here.

147.    Plaintiffs are without adequate remedy at law, rendering injunctive and other equitable relief appropriate.

**ANSWER**:  The Knauf Defendants deny these allegations.

148.    Plaintiffs will suffer irreparable harm if the Court does not render the injunctive relief as set forth herein, and if Defendants are not ordered to recall, rescind, and/or repair the homes and structures owned by Plaintiffs.

**ANSWER**:  The Knauf Defendants deny these allegations.

149.    Plaintiffs demand injunctive and equitable relief and further, that Defendants be ordered to: (1) remediate, repair and/or replace the drywall in the homes and structures upon proof by the Defendants of the feasibility of such remedy or repair; (2) cease and desist from misrepresenting to the general public that there is no defect in, or danger associated with the drywall; and, (3) institute, at their own cost, a public awareness campaign to alert the general public of the defect and dangers associated with their defective drywall.

**ANSWER**:  The Knauf Defendants deny these allegations.

150.    Until Defendants' defective drywall has been removed and Plaintiffs' homes are properly remediated, Defendants should provide continued environmental and air monitoring in the homes and structures.

**ANSWER**:  The Knauf Defendants deny these allegations.

## PRAYER FOR RELIEF

**WHEREFORE** Plaintiffs, on behalf of themselves and all others similarly situated demand upon Defendants jointly and severally for:

a.  Compensatory damages;
b.  Statutory damages;
c.  Punitive damages;
d.  Pre and post-judgment interest as allowed by law;
e.  Injunctive relief;
f.  An award of attorney's fees as allowed by law;
g.  An award of taxable costs; and
h.  Any and all such further relief as this Court deems just and proper.

**ANSWER**:  The Knauf Defendants deny the allegations of this paragraph, including all of its subparts.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury as to all issues so triable as a matter of right.

**ANSWER**:  No response to this paragraph is necessary. To the extent that a response is required, the Knauf Defendants deny these allegations.

## GENERAL DENIAL

The Knauf Defendants deny each and every allegation of fact, conclusion of law, or other matter contained in Plaintiffs' Complaint that has not been expressly admitted above. The Knauf Defendants further deny any liability and deny that Plaintiffs are entitled to the relief requested in the Complaint.

## AFFIRMATIVE DEFENSES

The Knauf Defendants set forth their affirmative defenses which apply to all claims unless otherwise noted. By setting forth these affirmative defenses, the Knauf Defendants do not assume the burden of proving any fact, issue, or element of a cause of action where such burden properly belongs to the Plaintiffs.

27

1.      The Court lacks personal jurisdiction over the Knauf Defendants.

2.      Venue is improper.

3.      Process was insufficient.

4.      Service of process was insufficient.

5.      The Complaint fails to state a claim upon which relief can be granted.

6.      The Plaintiff has failed to plead much less satisfy conditions precedent to recovery.

7.      Plaintiff has failed to plead fraud with particularity as required by Fed. R. Civ. P 9(b).

8.      The Plaintiffs lack standing because they have not alleged nor can they prove an actual or threatened injury caused by the Knauf Defendants' conduct and redressable by this Court.

9.      Plaintiffs have been misjoined.

10.     Plaintiffs' claims are barred, in whole or in part, by the applicable statutes of limitation or repose.

11.     Plaintiffs' claims are barred, in whole or in part, by the doctrine of laches.

12.     Plaintiffs' claims are barred, in whole or in part, by the doctrines of merger, bar, collateral estoppel, res judicata, discharge, and accord and satisfaction.

13.     The Knauf Defendants neither made any express or implied warranties to Plaintiffs nor breached any express or implied warranties.

14.     Plaintiffs cannot recover on their claims for breach of warranty to the extent that they failed to follow warranty procedures and satisfy conditions precedent, including the failure to provide notice of any alleged breach to the Knauf Defendants.

15.     To the extent Plaintiffs allege claims based upon oral warranties or representations, Plaintiffs' claims are barred, in whole or in part, by the applicable statute of frauds.

16.     Plaintiffs cannot recover on their claims for breach of warranty because Plaintiffs lack privity with the Knauf Defendants.

17.     Plaintiffs cannot recover on their claims under any Consumer Protection Statute based on transactions that occurred outside of the state of such statute on the grounds that, under applicable choice-of-law rules, the law of the state in which the transaction occurred applies.

18.     The Knauf Defendants did not engage in any intentional or negligent misconduct. However, to the extent that Plaintiffs assert claims for negligence, Plaintiffs cannot recover on their claims under the Consumer Protection Statutes of Florida, Fla. Stat. Ann. § 501.207(4), which provides that if the alleged conduct was the result of bona fide error, liability under the statutes is precluded completely or damages limited.

19.     Plaintiffs cannot recover on their claims because the methods, standards and techniques used by the Knauf Defendants in designing and formulating drywall and in issuing warnings and instructions about its use conformed to the generally recognized, reasonably available, and reliable state of knowledge in the field at the time that the drywall was manufactured.

20.     Plaintiffs cannot recover on their claims because the benefits of the design of the Knauf Defendants' drywall outweigh the risk of danger, if any, inherent in the design, in light of all relevant factors.

21.     Plaintiffs cannot recover on their claims because Plaintiffs' alleged damages, if any, were the result of intervening or superseding conduct of Plaintiffs and/or third parties over whom the Knauf Defendants had no control.

22.     Plaintiffs' claims are barred, in whole or in part, under the principle of assumption of the risk.

23.     Plaintiffs' claims are barred by the subsequent purchaser doctrine, or similar rule, because Plaintiffs' purchased the alleged property after the installation of alleged defective drywall and did not obtain an express assignment from the previous owner.

24.     Plaintiffs failed to mitigate their damages, if any.

25.     Plaintiffs cannot recover to the extent their damages are covered or reasonably likely to be covered by insurance or other collateral source, or in the alternative their damages should be offset or reduced by insurance or collateral source payments and benefits.

26.     If Plaintiffs have settled their claims for their alleged injuries with other parties, the Knauf Defendants are entitled to a credit and set-off in the amount of such settlements.

27.     The Knauf Defendants breached no duty or obligation to Plaintiffs, whether arising by law, contract, or otherwise, on the premises of Plaintiffs' pleadings.

28.     The Knauf Defendants deny, to the extent the actions alleged may have occurred, that any entity or individual engaging in the activities alleged was acting as the agent or servant of the Knauf Defendants, or at the instruction or subject to the control of the Knauf Defendants, and therefore the Knauf Defendants are not liable for any acts or omissions of such third parties as a matter of law.

29.     The Knauf Defendants did not participate in, authorize, ratify, or benefit from any alleged wrongful acts that are asserted in the Complaint.

30.     Plaintiffs' claims against the Knauf Defendants are barred to the extent that the Knauf Defendants did not manufacture or market the drywall installed in their properties.

31.     Plaintiffs' claims are barred to the extent that Plaintiffs rely on evidence obtained contrary to the Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters.

32. Plaintiffs' claims are barred because class actions are not recognized under the laws of the Knauf Defendants' home jurisdiction and are contrary to the public policy of the Knauf Defendants' home jurisdiction.

33. The Knauf Defendants' liability, if any, for damages is several rather than joint, and should be prorated.

34. Plaintiffs cannot recover non-economic damages because non-economic damages are not recognized under the laws and are contrary to the public policy of the Knauf Defendants' home jurisdiction.

35. Plaintiffs' claims for punitive damages fail to state a claim for relief.

36. Plaintiffs cannot recover punitive damages because punitive damages are not recognized under the laws of and are contrary to the public policy of the Knauf Defendants' home jurisdiction.

37. Plaintiffs cannot recover punitive damages because such damages would violate the due process clauses of the Fifth and Fourteenth Amendments to the United States Constitution and similar provisions of the Constitutions, laws, public policies and statutes of each State under whose laws Plaintiffs seek relief.

38. Punitive damages are barred under Fla. Stat. Ann. § 768.73(2)(a).

39. Plaintiffs are not entitled to recover any costs of this proceeding, nor are they entitled to any compensatory damages, pre- or post-judgment interests, injunctive relief, statutory penalties, or attorneys' fees.

40. The Knauf Defendants engaged in no conduct and committed no act or omission, either directly or indirectly, that was or could have been the direct, legal, and/or proximate cause of any loss, damage, or injury to Plaintiffs or any of them.

41.     The Knauf Defendants fully, properly, and faithfully performed any and all such duties or obligations in good faith and in a manner otherwise consistent with the law; with any and all pertinent agreements, undertakings, and/or releases relevant to the transactions, circumstances, and/or occurrences at issue; and otherwise acted in accordance with all applicable custom and practice.

42.     Plaintiffs' claims are barred by their own neglect and/or fault.

43.     Plaintiffs' alleged damages are the proximate and legal result of pre-existing health problems, conditions, and/or impairments and are not attributable to any intervening or supervening act, omission, or other conduct on the part of the Knauf Defendants or any other person or entity for which the Knauf Defendants are responsible.

44.     The claims and allegations of the Plaintiffs are barred, in whole or in part, to the extent that the damages alleged were caused by the contributing and/or comparative fault, negligence, strict liability, or other fault of the Plaintiffs or third parties for which the Knauf Defendants are not liable.

45.     Plaintiffs' alleged damages, if any, are speculative, uncertain, contingent, and/or premature.

46.     Plaintiffs' claims are limited by the state laws of Florida which prohibit Plaintiffs from bringing their claims as alleged.

47.     The Knauf Defendants deny that Plaintiffs were injured by their conduct and/or any product manufactured, distributed, or supplied by them, and they call for strict proof thereof.

48.     The Knauf Defendants affirmatively allege and aver that there was no causal connection between the Knauf Defendants and any product allegedly manufactured or sold by it to any alleged injuries sustained by Plaintiffs, such causal connection being remote, indefinite, and

speculative, and as a result thereof, the Complaint should be dismissed.

49.     Plaintiffs' claims may be barred, in whole or in part, due to the spoliation of evidence.

50.     The Knauf Defendants affirmatively allege and aver that they are not the agent or apparent agent of any other Knauf entity.

51.     The Knauf Defendants give notice that they intend to rely upon such other defenses as may become available or apparent during the course of discovery and reserve the right to amend and supplement this Answer to assert such defenses.

52.     Plaintiffs' claims should be dismissed and are barred for failure to fully comply with the Hague Convention on Service Abroad of Judicial and Extra-Judicial documents in Civil and Commercial Matters. Fed. R. Civ. P. 4; Fed. R. Civ. P. 12(b)(4)-(5).

53.     Plaintiffs' claims for damages are barred in whole or in part based on the economic loss rule and/or because the damages claimed are unrecoverable consequential or special damages.

54.     The Knauf Defendants pray for trial by jury on all issues herein.

**WHEREFORE**, the Knauf Defendants deny that Plaintiffs are entitled to any of the relief requested in the Complaint. Accordingly, the Knauf Defendants request that the Complaint be dismissed with prejudice, and that the Knauf Defendants be awarded costs and fees incurred in this action. The Knauf Defendants further request a trial by jury on all issues herein.

Respectfully submitted,

**FISHMAN HAYGOOD, LLP**

/s/ *Kerry J. Miller*

**KERRY J. MILLER (#24562), T.A.**
**PAUL C. THIBODEAUX (#29446)**
**DANIEL J. DYSART (#33812)**
**REBEKKA C. VEITH (#62062)**
**MICHAEL R. DODSON (#37450)**
201 St. Charles Avenue, Suite 4600
New Orleans, LA  70170
Telephone:     504.556.5549
Facsimile:      504.949.8202
Email:          kmiller@fishmanhaygood.com

***Counsel for the Knauf Defendants***
***The Knauf Defendants***


## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing pleading has been served upon Russ Herman, Plaintiffs' Liaison Counsel, by email, to all parties by electronically uploading the same to LexisNexis File & Serve in accordance with Pre-Trial Order No. 6, individually to pro se claimants via U.S. Mail, and that the foregoing was filed with the Clerk of Court of the United States Court for the Eastern District of Louisiana, on this 12th day of November, 2021.


/s/ *Kerry J. Miller*
**KERRY J. MILLER**