# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

October 27, 2021

Lyle W. Cayce
Clerk

No. 20-30596

In re: Chinese-Manufactured Drywall Products
Litigation

_____

Valentine Frego; Kimberly Frego; Fred Nolte,

*Plaintiffs—Appellants*,

*versus*

Settlement Class Counsel,

*Appellee*.

---

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:09-MD-2047

---

Before Elrod, Southwick, and Costa, *Circuit Judges*.

Gregg Costa, *Circuit Judge*:

After ten years of litigation, a class of homeowners settled their claims against a Chinese company for manufacturing and selling toxic drywall. The agreement divided the settlement class into three groups based on when a plaintiff joined the litigation. Each plaintiff then received an award under a

formula that considered, among other factors, the group to which they belonged.

Three of those plaintiffs, unhappy with their award, appeal to this court. Their complaint is that the lawyers for the settlement class placed them in the wrong plaintiff group and the district court did not fix the error. Had they been correctly classified, their recovery would have been much greater. But the class settlement waived a plaintiff's right to appeal an award determination beyond the district court, so we must dismiss.

**I.**

Between 2004 and 2006, the rebuilding efforts following Hurricanes Katrina and Rita combined with the Florida housing boom to create a severe shortage of domestic drywall. In response to the shortage, builders along the Gulf and Atlantic Coasts resorted to importing drywall from China. But that drywall soon damaged the homes where it was installed. It gave off foul odors, corroded internal electrical wiring, and damaged home appliances.

Litigation ensued, with affected homeowners suing up and down the drywall supply chain in state and federal courts. The federal cases were consolidated for pretrial matters into a multidistrict proceeding in the Eastern District of Louisiana. The district court appointed a Steering Committee to, among other roles, conduct classwide discovery, pursue settlement options, and communicate with plaintiffs and their counsel.

Most complaints focused on two defendants—Taishan and Knauf— both of whom manufactured drywall in China and sold it in the United States. To simplify the litigation, the Steering Committee grouped individual complaints into a series of consolidated complaints based on the type of drywall involved and when the homeowner entered the litigation. Three of those complaints are relevant: the *Amorin* and *Brooke* complaints against Taishan, and the *Beane* complaint against Knauf.

Valentine Frego, Kim Frego and Fred Nolte owned homes in Alabama that used Taishan drywall. They hired a lawyer in Alabama who filed paperwork with the Steering Committee to trigger a claim against Taishan. But the Steering Committee inadvertently filed appellants in the *Beane* complaint—a complaint against Knauf, not Taishan.

This initial misstep set in motion years of miscommunication between the Steering Committee and appellants' counsel. Appellants repeatedly asked the Steering Committee to confirm their status as Taishan plaintiffs. But the Steering Committee never gave a firm answer. For example, in 2015, appellants' counsel contacted the Steering Committee to "confirm that there is nothing further to do" to include appellants in the *Amorin* complaint. The Steering Committee responded: "If all your Taishan clients are on [a named complaint] and you have done [Plaintiff Fact Sheets] for them, you have nothing more to do." A few years later, the Steering Committee circulated to all plaintiffs a spreadsheet listing every outstanding claim against Taishan. After noticing that appellants were absent from the spreadsheet, their counsel again contacted the Steering Committee. This time, the Steering Committee responded that appellants were not on a Taishan complaint. But rather than correct the mistake, appellants' counsel added to it by responding that he "got [his] wires crossed somewhere" and that appellants were indeed "Knauf Plaintiffs, not Taishan."

In 2019, after a decade of litigation, Taishan agreed to a $248 million class settlement. The agreement devised a formula called the "Allocation Model" to distribute the settlement funds among the class. One input in the formula was the group a plaintiff belonged to—*Amorin*, *Brooke*, or "absent class members," defined as "all other property owners" with damages attributable to Taishan drywall. When the case settled, each group was at a different stage of litigation. In *Amorin*, the district court had already entered judgment in favor of the plaintiffs. The *Brooke* litigation had not yet entered

discovery. And absent class members were furthest away from a recovery. So under the formula, an *Amorin* plaintiff would receive 100% of the damages calculated using the rest of the inputs, a *Brooke* plaintiff would receive 20%, and an absent class member would receive only 5%.

The agreement appointed a claims administrator to calculate each award and allowed plaintiffs to appeal their awards to the district court. But it prohibited further appeal to "any other court including the U.S. Court of Appeals for the Fifth Circuit," specifying that "such right of appeal [had] been knowingly and intentionally waived by each Settlement Class Member."

A few months after the district court preliminarily approved the settlement with Taishan, appellants' counsel finally realized his mistake. Because appellants had been erroneously listed on a Knauf complaint, they were going to leave the Taishan class settlement empty-handed. The only route for appellants to collect under the settlement was to file an absent class member claim. Although a missed deadline seemed to prevent appellants from filing as absent class members at this late juncture, the district court allowed them to do so.

While being treated as absent class members was better than nothing, it was not much. By recovering only 5% of their losses, appellants missed out on tens of thousands of dollars they would have received as *Amorin* or *Brooke* plaintiffs.[1]

To try and recover the larger amounts, appellants filed a motion under Rules 59(e) and 60(b) for relief from the district court's order allowing them

---

[1] Settlement Class Counsel contend that appellants filed too late to be in the highest-paying *Amorin* group even if their claims had been properly classified from the beginning as ones brought against Taishan.

to be absent class members.  The motion asked to reclassify them as *Amorin* or *Brooke* plaintiffs.  Settlement Class Counsel—the lawyers for the class that settled with Taishan and defendants on appeal—opposed the motion, emphasizing that appellants' counsel had several opportunities to correct the omission but failed to do so until it was too late.

The district court rejected the motion.  As an initial matter, the court noted that although the appellants' motion was styled as a motion for relief from judgment under Rules 59(e) and 60(b), neither rule applied because the district court had not entered an adverse judgment.  The court instead treated the motion as an "appeal of the Claims Administrator's allocation amount determination."  Although the court expressed sympathy for the appellants' plight, it could not overlook that their counsel missed several opportunities to realize and correct his mistake.  This appeal followed.[2]

---

[2] This case comes to the court with an odd caption.  Although the underlying litigation is between the class plaintiffs and Taishan, Settlement Class Counsel is listed as the appellee.  We do not see similar appeals from settlement fund distributions in which class counsel is a party.  Appeals like this one—those in which claimants appeal district court decisions reviewing settlement awards—arose during the *Deepwater Horizon* litigation.  In those appeals, the claimants appealed against the party from whom they were seeking money, not counsel for the settlement class.  *See, e.g.*, *Claimant ID 100250022 v. BP Expl. & Prod., Inc.*, 847 F.3d 167 (5th Cir. 2017); *Claimant ID 100001528 v. BP Expl. & Prod., Inc.*, 688 F. App'x 272 (5th Cir. 2017).  It is understandable, then, that Settlement Class Counsel considered its brief to be "in the nature of an *amicus* submission."

There is a distinction, however, between this case and the *Deepwater Horizon* ones.  The latter cases involved "open funds," with each successful claim resulting in additional money paid by BP.  Samuel Issacharoff & D. Theodore Rave, *The BP Oil Spill Settlement and the Paradox of Public Litigation*, 74 La. L. Rev. 397, 398 (2014) (noting the open-ended nature of the BP settlement fund).  That gave BP an active stake in appeals from amount allocation determinations.  In contrast, the Taishan settlement involves "closed funds," which is a fixed amount of money that the defendant has already paid to the class. *See* Francis E. McGovern, *Second-Generation Dispute System Design Issues in Managing*

## II.

We need not decide whether the district court erred when it refused to reclassify appellants as *Amorin* or *Brooke* plaintiffs. That is because the settlement agreement—to which appellants are parties—waives a plaintiff's right to challenge award determinations beyond the district court.

When a case settles, the parties give up their constitutional right to a jury trial. *See* U.S. Const. amend. VII. It follows that they may also give up their statutory right to appeal. 15A Charles Alan Wright et al., Fed Prac. & Proc. § 3901 (2d ed. 2021) (recognizing that parties can waive the right to appeal "just as the parties by settlement can waive the right to decision of their disputes by any court and can stipulate to entry of a consent judgment").

Although appeal waivers eliminate an avenue for error correction, they also offer advantages. Among other things, appeal waivers promote finality and timely resolution. By agreeing to abide by the decision of a trial court, parties can "trade the risk of protracted appellate review for a one-shot opportunity before the district court." *MACTEC, Inc. v. Gorelick*, 427 F.3d 821, 830 (10th Cir. 2005). Appeal waivers can also serve as a bargaining chip to facilitate negotiation. *See United States v. Teeter*, 257 F.3d 14, 22 (1st Cir. 2001). And if the time and expense appeal waivers save can make them

---

*Settlements*, 24 Ohio St. J. on Disp. Resol. 53, 66 (2008) (distinguishing between the two types of funds).

Although the open/closed fund distinction might explain why Taishan has no active stake in the case, it does not explain why Settlement Class Counsel does. Perhaps the claims administrator is the proper appellee. In any event, we need not decide this question because we conclude that appellants waived their right to appeal.

attractive in ordinary litigation,[3] these benefits are exponentially greater in the mass torts context.

In the *Deepwater Horizon* litigation that resulted in settlements with claims administration procedures like this one, we recognized that courts should "enforce an express waiver of the right to appeal from the district court's claim determinations." *In re Deepwater Horizon*, 934 F.3d 434, 441 (5th Cir. 2019). But such a waiver had to be explicit. We thus rejected the idea that the BP settlement contained an implicit waiver of the right to appeal to the court of appeals when it only mentioned the district court's "discretionary right" to review decisions of the claims administrator. *In re Deepwater Horizon*, 785 F.3d 986, 989, 997 (5th Cir. 2015).[4] This silence about a possible appeal to our court meant the "parties [had] preserved their right to appeal" the district court's decisions. *Id.* at 997.

The explicit waiver lacking in BP's *Deepwater Horizon* settlement exists in the Taishan settlement. The waiver states that any "decision of the [district court] with respect to appeals from Allocation Amount determinations shall be final and binding . . . and there shall be no appeal to any other court including the U.S. Court of Appeals for the Fifth Circuit, such right of appeal having been knowingly and intentionally waived." It would be hard to draft a more explicit waiver. Indeed, a similar waiver in

---

[3] Appeal waivers are common in criminal cases, in which defendants exchange them for plea bargains. We routinely enforce such waivers. *See, e.g.*, *United States v. Butler*, 7 F.4th 408, 413 (5th Cir. 2021); *United States v. Scallon*, 683 F.3d 680, 683–84 (5th Cir. 2012); *United States v. Bond*, 414 F.3d 542, 545–46 (5th Cir. 2005).

[4] Other settlement agreements in the *Deepwater Horizon* litigation, such as ones entered into by Halliburton and Transocean, had express language stating that a district court's review of a claims administrator's decision "shall be final and binding, and there shall be no appeal to any other court including the United States Court of Appeals for the Fifth Circuit." 934 F.3d at 441 (not deciding whether this waiver was enforceable because the appeal failed on the merits).

another settlement that this multidistrict litigation produced prompted us to dismiss an appeal. *In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, 794 F. App'x 387, 389 (5th Cir. 2019) ("[The district court's] decision on any objections will be final, with no further appeals permitted."); *see also Hill v. Schilling*, 495 F. App'x 480, 487 (5th Cir. 2012) (enforcing another waiver of the right to appeal to this court). Not surprisingly, then, appellants do not dispute the validity of the express waiver in the Taishan settlement.

Instead, to get around what they concede is a valid waiver, appellants argue that they are not appealing their "Allocation Amount determination." They contend that the categorization of their claims is an administrative error separate from, or preliminary to, the determination of how much they are owed. The applicability of the waiver thus turns on whether the plaintiff's group classification is part of the "Allocation Amount determination."

The classification of a plaintiff's claim is a vital input in determining how much they receive. The settlement agreement defines "Allocation Amount" as the amount a class member is entitled to under the "Allocation Model," a mathematical formula that the claims administrator uses to calculate individual awards. That formula calls for an input of several variables, including "whether the claimant is an *Amorin* Plaintiff or a *Brooke* Plaintiff, or an absent Class Member." The amount that appellants are entitled to thus depends in part—in fact, in large part—on their classification as absent class members. By objecting to one variable in the allocation formula, appellants are objecting to the determination of how much they are owed.

Consider another input that is plugged into the formula—the square footage of the affected property. According to appellants' logic, plaintiffs dissatisfied with the amount of their award could circumvent the appeal waiver by framing their objection as an "administrative error" in inputting

square footage rather than a challenge to an award determination. But figuring out square footage is a key part of determining the allocation amount. So is figuring out which group of plaintiffs a particular claimant falls within.

An appeal challenging an incorrect classification thus falls squarely within the appeal waiver. It does not matter that plaintiffs labeled their motion as one under Rules 59(e) or 60(b). The appeal waiver makes final any decision of the district court "with respect to appeals from Allocation Amount determinations." It does not limit that waiver to certain procedural devices. What matters is the substance—whether the district court considered an appeal "from Allocation Amount determinations." Because appellants were challenging the determination of their award, the district court had the last word.[5]

* * *

Enforcement of the appellate waiver will no doubt seem unjust to appellants. But foregoing the chance at error correction in this court is the tradeoff for the finality, expedience, and perhaps larger overall settlement that the appeal waiver achieved. Because appellants opted into the settlement agreement as absent class members and thus waived their right to appeal to this court, the appeal is DISMISSED.

---

[5] Appellants argue for the first time in their reply brief that Settlement Class Counsel breached a fiduciary duty. Although this argument is not barred by the appeal waiver, it is forfeited because it was raised too late. *F.D.I.C. v. Mijalis*, 15 F.3d 1314, 1327 (5th Cir. 1994) ("If an argument is not raised to such a degree that the district court has an opportunity to rule on it, we will not address it on appeal."); *Hollis v. Lynch*, 827 F.3d 436, 451 (5th Cir. 2016) ("Reply briefs cannot be used to raise new arguments."). And any such claim against lawyers based on the failure to put the appellants in the correct category would have to be asserted in a separate lawsuit.