**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| In Re:   **CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION** | **MDL 2047** |
| | **SECTION L** |
| **This document relates to:** | **JUDGE ELDON FALLON** |
| *Selene Acosta, et al. v. Knauf Gips, KG, et al.* | **MAG. JUDGE MICHAEL NORTH** |
| **Case No. 2:21-cv-02033-EEF-MBN** | |

<u>**OPPOSITION TO MOTION TO AMEND COMPLAINT**</u>

NOW INTO COURT, through undersigned counsel, come Knauf Gips KG ("Knauf Gips") and Knauf Plasterboard Tianjin Co., Ltd. ("Knauf Tianjin" or "KPT") (collectively, "the Knauf Defendants") who respectfully submit this Opposition to Plaintiffs' Motion to Amend.  The Acosta Plaintiffs have filed a motion for leave to amend their complaint (R. Doc. 23236, "Motion to Amend") to add six defendants—Knauf International GmbH ("Knauf International"), Gebrueder Knauf Verwaltungsgesellschaft KG ("GKV"), Knauf AMF GmbH & Co. KG ("Knauf AMF"), Knauf UK GmbH ("Knauf UK"), Knauf Insulation GmbH ("Knauf  Insulation"), and Guangdong Knauf New Building Material Products Co., Ltd. ("Guangdong Knauf"). The Knauf Defendants oppose this Motion to Amend. Knauf International, GKV, Knauf AMF, and Knauf UK have each already been dismissed with prejudice from this MDL proceeding for lack of personal jurisdiction. *See* R. Doc. 21794. Knauf Insulation was dismissed with prejudice from this MDL on summary judgment, for a lack of genuine dispute of the material fact that it had no liability for sales of defective drywall in the United States. *See* R. Doc. 21740. Similarly,

1

Guangdong Knauf has been defined in this MDL as responsible only for manufacturing "non-reactive drywall." *See* R. Doc. 12061-10, at 38. Finally, Plaintiff has failed to state a cause of action as to any of the proposed new defendants, making only vague and conclusory allegations as to those entities with no sufficient allegations that any of the Knauf entities sought to be added in this action manufactured or had any involvement with the manufacture, sale and installation of the defective drywall at issue in this litigation. Accordingly, any amendment to add these six Knauf entities would be futile, and the Motion to Amend should be denied.

I.    **Background**

   A.    **The Acosta Plaintiffs' Claims**

On May 6, 2021, the Acosta Plaintiffs filed their original complaint in this particular matter in the Middle District of Florida,[1] which was subsequently transferred to this long-litigated MDL by a conditional transfer order. *See Acosta, et al. v. Knauf Gips KG, et al.*, No. 8:21-cv-1099 (M.D. Fla.). Although, in their Motion to Amend, Plaintiffs' counsel characterizes this litigation as "at its infancy" (R. Doc. 23236-1, at 2), while the particular Acosta claims have been filed within the past seven months they are substantively similar to claims that have been proceeding in this MDL against the Knauf Defendants and various other entities for more than twelve years, since 2009. Indeed, the Acosta Plaintiffs' counsel has been representing clients with similar claims in this MDL for many years at that point. *See, e.g.,* R. Docs. 20544; 20545.

The Acosta Plaintiffs' initial Complaint only named Knauf Gips and KPT as defendants. In their proposed Amended Complaint (R. Doc. 23236-2), they seek to add Knauf International, GKV, Knauf AMF, Knauf UK, Knauf Insulation, and Guangdong Knauf based on conclusory assertions as to a relationship between each of them and Knauf Gips, Knauf Tianjin, or one of the

---

[1] Not the Southern District of Florida as represented by Plaintiffs in the Motion to Amend pleadings. R. Doc. 23236-1, at 1.

other Knauf entities, as to some alleging generally a status of agency, and as to others leaving agency out of the allegation:

- As to Knauf International, the Acosta Plaintiffs allege, "Knauf International acted as an agent for Knauf GIPS and KPT by lending assistance and participating in the promotion, distribution, marketing, and sale of the drywall at issue in the case being imported, distributed, delivered, supplied, inspected, marketed and/or sold." R. Doc. 23236-2, at ¶ 14. The Acosta Plaintiffs also allege that "Knauf International is believed to be a holding company for GKV and other Knauf entities," *id.*, but does not identify those "other" entities or make any allegations that GKV or the other Knauf entities' corporate veils should be pierced. The Acosta Plaintiffs further allege that "Knauf International is closely related to Knauf GIPS," *id.*, but, again, does not make further allegations about the nature of this "close" relationship or make any allegations to pierce Knauf GIPS' corporate veil.

- As to GKV, the Acosta Plaintiffs allege that "GKV acted as an agent for Knauf GIPS and Knauf Tianjin by lending assistance and participating in the promotion, distribution, marketing, and sale of the drywall at issue in this litigation to American suppliers." *Id.* at ¶ 15. The Acosta Plaintiffs also allege that "GKV is the parent company of Knauf International," but make no allegations as to why Knauf International's corporate veil should be pierced.

- As to Knauf AMF, the Acosta Plaintiffs make *no* allegation that Knauf AMF was an agent of any of the other defendants, though they make similar conclusory fact allegations: "Knauf AMF has participated in the activities and sales of the Knauf Entities' drywall manufactured in China and sold in the United States. Knauf AMF provided assistance and participated in the promotion, distribution, marketing, and sale of the KPT drywall

at issue in this litigation to American suppliers." *Id.* at ¶ 16. They further allege that Knauf AMF's "business operations are closely associated with GKV, Knauf GIPS, Knauf International, and other Knauf Entities," *id.*, but do not allege what that association may be or that those other entities' corporate veils should be pierced.

- As to Knauf UK, the Acosta Plaintiffs again make no allegation that Knauf UK is an agent of any other defendants, but make similar conclusory factual allegations that "Knauf UK has participated in the activities and sales of the Knauf Entities' drywall manufactures in China and sold in the United States. Knauf UK provided assistance and participated in the promotion, distribution, marketing, and sale of the KPT drywall at issue in this litigation to American suppliers." *Id.* at ¶ 17. While alleging that "Knauf UK is associated with GKV, Knauf GIPS and other Knauf Entities," *id.*, the Acosta Plaintiffs do not allege the nature of that association or that the other Knauf entities' corporate veils should be pierced.

- As to Knauf Insulation, the Acosta Plaintiffs allege that "Knauf Insulation acted as an agent for Knauf GIPS, Knauf International, KPT, Knauf AMF, and GKV by lending assistance and participating in the promotion, distribution, marketing, and sale of the drywall at issue in this litigation to U.S. Suppliers." *Id.* at ¶ 18. The Acosta Plaintiffs also allege that "Knauf Insulation is a subsidiary of GKV," but make no allegations that Knauf Insulation's or GKV's corporate personhood should be disregarded based on this alleged relationship.

- As to Guangdong Knauf, the Acosta Plaintiffs allege, "Guangdong Knauf is the actual agent and/or apparent agent of GKV, Knauf GIPS, KPT, and Knauf International." *Id.* at

¶ 19. Beyond that, the Acosta Plaintiffs make no allegations of corporate relationship

between Guangdong Knauf and the other defendants.

Notably, in the proposed Amended Complaint, each of these allegations appear only in the allegations identifying the defendants, with no further allegations as to any of the proposed new defendants' conduct or agency status in any of the other factual allegations or causes of action in the proposed Amended Complaint. And, as noted above, the agency allegations consist entirely of vague and conclusory allegations of each entity "lending assistance and participating in" various broad categories of activities, but do not contain any particularized or specific allegations of (1) what that assistance was, (2) what that participation consisted of, or (3) how that "assistance" and "participation" equated to actual or apparent agency.

**B.    Prior Dismissals of Knauf International, GKV, Knauf AMF, Knauf UK, Knauf Insulation, and Guangdong Knauf**

Each of the entities that the Acosta Plaintiffs seek to add to this case have already been dismissed from this MDL in orders in the *Bennett* putative class that had been transferred into this MDL proceeding. Counsel for the Acosta Plaintiffs is also plaintiffs' counsel for the *Bennett* plaintiffs.

Like the Acosta Plaintiffs' case, the *Bennett* case was one of numerous cases consolidated into this MDL, which is comprised of thousands of claims, more than 23,000 record documents entered into the record, seeing millions of documents exchanged in years of discovery, and dozens of depositions taken in the United States, Germany, Hong Kong, and other locations. More than thirty Pretrial Orders have been issued by this Court, and the Court has appointed steering committees and liaison counsel for plaintiffs, homebuilders, insurers, installers, and manufacturers; and the Court has presided over monthly status conference, hearings, and several bellwether trials. As noted above, the Acosta Plaintiffs' counsel is well aware of the extensive

nature of these proceedings and the voluminous discovery and development of claims, as he has long been counsel of record for many clients bringing claims on their own behalf and on behalf of classes of other potential claimants.

The discovery throughout this proceeding "revealed that the manufacturers of the drywall in question generally fell into two groups: Knauf and Taishan." R. Doc. 16570, at 3-4. The Knauf entity, KPT, is a Chinese company that manufactured, advertised, sold, and distributed its Chinese drywall in the United States. Among the proceedings here, this Court presided over a bellwether trial in *Hernandez v. Knauf Gips KG*, Case No. 09-6050, involving a homeowner's claims against KPT for defective drywall. *See* Findings of Fact and Conclusions of Law, R. Doc. 2713. The Court dismissed all defendants other than KPT from the *Hernandez* case without prejudice. *Id.* at 4.

The Court also approved a remediation protocol. R. Doc. 16570, at 4. Based on inspections, testing, and analyses of the various drywall types by party experts and governmental agencies, including the CPSC, and through the developed remediation protocol, Plaintiffs identified that the only alleged defective drywall manufactured by any of the Knauf manufacturing defendants was manufactured by KPT. *See* CDW Indicia Guide, R. Doc. 12061-10, at 3. Following implementation of this protocol by the parties, a class action settlement agreement was entered with the plaintiffs in December 2011, which received final approval from this Court on February 7, 2013. R. Doc. 16570, at 20-21. Numerous defendants in the chain-of-commerce with distribution of KPT Chinese drywall have entered into class settlement agreements, the effect of which settles almost all of the chain-of-commerce litigation. This Court noted that, "[a]lthough the Court occasionally must deal with settlement administration and enforcement issues, the Knauf portion of this litigation is largely resolved." R. Doc. 20739, at 6.

During the course of this MDL, each of the entities that the Acosta Plaintiffs seek to amend to add here have already been dismissed:

*__Knauf International.__* In the *Bennett* case, Knauf International (also, "KI") moved to dismiss the claims against it under Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction. R. Doc. 21732. The Knauf Defendants adopt and incorporate herein by reference the arguments and analysis advanced in R. Doc. 21732-1, as well as the facts as contained in the exhibits to that briefing, at R. Doc. 21732-2 through 21732-10; but also re-state here the facts relevant to personal jurisdiction.

KI is a holding company. It does not design, manufacture, market, sell, or distribute any products in any countries. R. Doc. 21732-2 (Declaration of Jörg Schanow), at ¶ 14. KI does not design, manufacture, market, sell, or distribute any gypsum-based drywall products. *Id.* at ¶ 13. KI does not conduct any operations regarding the design, manufacture, marketing, distribution, or sale of any products. *Id.* at ¶ 16. KI does not conduct any operations in the United States or China. *Id.* at ¶ 17.

KI is a German limited liability company with its principal place of business in Iphofen, Germany. *Id.* at ¶ 4. KI's ultimate members are comprised of German limited partnerships. *Id.* KI does not and has never had any partners based in Louisiana or Florida. *Id.* at ¶ 5. KI has never held any member or board of directors meetings in Louisiana or Florida. *Id.* at ¶ 6. None of KI's employees reside in Louisiana or Florida. *Id.* at ¶ 7. KI has never obtained loans or any other financing from banks, or any other source of financing, in the United States. *Id.* at ¶ 8. KI has never owned or leased any assets or property in Louisiana or Florida, and has never held a mortgage or lien on any real property within those states. *Id.* at ¶ 9. KI does not host any of its corporate documents or records in the United States. *Id.* at ¶ 10. KI has never been licensed or registered to conduct business in Louisiana or Florida, has never sued anyone in those states, and has never contracted to obtain insurance in those states. *Id.* at ¶ 11. KI has never paid taxes in Louisiana or Florida. *Id.* at ¶ 12. As has been previously determined by this Court and

7

demonstrated through years of evidence in the MDL, KI (and the other named defendants other than KPT itself) was not involved in the manufacture, marketing, sale, or distribution of KPT Chinese drywall that is the subject of this litigation.

The *Bennett* plaintiffs, represented by the same counsel that represents the Acosta Plaintiffs, did not dispute any of these facts, or oppose the motion for dismissal, and this Court dismissed Knauf International with prejudice. R. Doc. 21794.

**GKV.** In the *Bennett* case, GKV moved to dismiss the claims against it under Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction. R. Doc. 21731. The Knauf Defendants adopt and incorporate herein by reference the arguments and analysis advanced in R. Doc. 21731-1, as well as the facts as contained in the exhibits to that briefing, at R. Doc. 21731-2 through 21731-10; but also re-state here the facts relevant to personal jurisdiction.

GKV is a holding company. R. Doc. 21731-2 (Declaration of Jörg Schanow), at ¶ 13. It does not design, manufacture, sell, or distribute any products in any countries. *Id.* GKV does not design, manufacture, market, sell, or distribute any gypsum-based drywall products. *Id.* at ¶ 15. GKV does not conduct any operations regarding the design, manufacture, marketing, distribution, or sale of any products. *Id.* at ¶ 16. GKV does not conduct any operations in the United States or China. *Id.* at ¶ 17. GKV did not and does not control the chain of supply or exert operations control over KPT. *Id.* at ¶ 18.

GKV is a German limited commercial partnership with its principal place of business in Iphofen, Germany. *Id.* at ¶ 4. GKV's partners are comprised of individual German and Belgian citizens, German trusts, German limited liability companies, and German limited partnerships. *Id.* GKV does not and has never had any partners based in Louisiana or Florida. *Id.* at ¶ 5. GKV has never held any partnership or board of directors meetings in Louisiana or Florida. *Id.* at ¶ 6. None of GKV's employees reside in Louisiana or Florida. *Id.* at 7. GKV has never obtained loans or any other financing from banks, or any

other source of financing, in the United States. *Id.* at ¶ 8. GKV has never owned or leased any assets or property in Louisiana or Florida, and has never held a mortgage or lien on any real property within those states. *Id.* at ¶ 9. GKV does not host any of its corporate documents or records in the United States. *Id.* at ¶ 10. GKV has never been licensed or registered to conduct business in Louisiana or Florida, has never sued anyone in those states, and has never contracted to obtain insurance in those states. *Id.* at ¶ 11. GKV has never paid taxes in Louisiana or Florida. *Id.* at ¶ 12. As has been previously determined by this Court and demonstrated through years of evidence in the MDL, GKV (and the other named defendants other than KPT itself) was not involved in the manufacture, marketing, sale, or distribution of KPT Chinese drywall that is the subject of this litigation.

The *Bennett* plaintiffs, represented by the same counsel that represents the Acosta Plaintiffs, did not dispute any of these facts, or oppose the motion for dismissal, and this Court dismissed GKV with prejudice. R. Doc. 21794.

**_Knauf AMF._** In the *Bennett* case, Knauf AMF (also, "AMF") moved to dismiss the claims against it under Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction. R. Doc. 21733. The Knauf Defendants adopt and incorporate herein by reference the arguments and analysis advanced in R. Doc. 21733-1, as well as the facts as contained in the exhibits to that briefing, at R. Doc. 21733-2 through 21733-10; but also re-state here the facts relevant to personal jurisdiction.

AMF does not conduct any operations or business in the United States or in China. R. Doc. 21733-2 (Declaration of Karl Wenig). AMF is a manufacturer and distributor of ceiling tiles and ceiling grids for modular ceiling solutions. *Id.* AMF conducts all manufacturing in Germany, France, Great Britain, Belgium, and Austria. *Id.* It does not manufacture any products in China. AMF does not design, manufacture, market, sell, or distribute any gypsum-based drywall

9

products. AMF does not source any gypsum from China in the manufacture of any of its products. AMF did not and does not control the chain of supply or exert operations control over KPT. *Id.*

AMF is a German limited liability company with its principal place of business in Grafenau, Germany. *Id.* AMF has a German limited liability company as its general partner. *Id.* AMF does not and has never had any U.S.-based partners or members and has never received any equity contribution from any U.S. entities or individuals. *Id.* AMF has never held any partnership, member, or board of directors meetings in Louisiana or Florida. *Id.* None of AMF's employees reside in Louisiana or Florida. *Id.* AMF has never obtained loans or any other financing from banks, or any other source of financing, in the United States. *Id.* AMF has never owned or leased any assets or property in Louisiana or Florida, and has never held a mortgage or lien on any real property within those states. *Id.* AMF does not host any of its corporate documents or records in the United States. *Id.* AMF has never been licensed or registered to conduct business in Louisiana or Florida, has never sued anyone in those states, and has never contracted to obtain insurance in those states. *Id.* AMF has never paid taxes in Louisiana or Florida. *Id.* As has been previously determined by this Court and demonstrated through years of evidence in the MDL, AMF (and the other named defendants other than KPT itself) was not involved in the manufacture, marketing, sale, or distribution of KPT Chinese drywall that is the subject of this litigation.

The *Bennett* plaintiffs, represented by the same counsel that represents the Acosta Plaintiffs, did not dispute any of these facts, or oppose the motion for dismissal, and this Court dismissed Knauf AMF with prejudice. R. Doc. 21794.

**_Knauf UK._** In the *Bennett* case, Knauf UK moved to dismiss the claims against it under Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction. R. Doc. 21734. The Knauf Defendants adopt and incorporate herein by reference the arguments and analysis advanced in R. Doc. 21734-

1, as well as the facts as contained in the exhibits to that briefing, at R. Doc. 21734-2 through 21734-10; but also re-state here the facts relevant to personal jurisdiction.

Knauf UK does not conduct any operations in the United States or China. R. Doc. 21734-2 (Declaration of Ian Dean). Knauf UK is a manufacturer and distributor of gypsum-based construction materials, including drywall, among other things. *Id.* Knauf UK performs all manufacturing at its principal place of business in Sittingbourne, United Kingdom. *Id.* It does not conduct any operations or business or manufacture any products in China. Knauf UK does not source any gypsum from China in the manufacture of its gypsum-based products. *Id.* Knauf UK did not design, manufacture, sell, or distribute any gypsum-based drywall products to the United States between 2005 and 2007. *Id.* Knauf UK did not manufacture, market, sell, or distribute any gypsum-based drywall between 2005 and 2007 with the expectation that it would be purchased by consumers in the United States. *Id.* Knauf UK did not and does not control the chain of supply or exert operations control over KPT. *Id.*

Knauf UK is a German limited commercial partnership with its principal place of business in Sittingbourne, United Kingdom. *Id.* Knauf UK's sole member is a German limited liability company and its ultimate owners are comprised of individual German and Belgian citizens, German trusts, German limited liability companies, and German limited partnerships. *Id.* Knauf UK does not and has never had any U.S.-based members and has never received any equity contribution from U.S. entities or individuals. *Id.* Knauf UK has never held any member or board of directors meetings in Louisiana or Florida. *Id.* None of Knauf UK's employees reside in Louisiana or Florida. *Id.* Knauf UK has never obtained loans or any other financing from banks, or any other source of financing, in the United States. *Id.* Knauf UK has never owned or leased any assets or property in Louisiana or Florida, and has never held a mortgage or lien on any real property within those states. *Id.* Knauf UK does not host any of its corporate documents or records

in the United States. *Id.* Knauf UK has never been licensed or registered to conduct business in Louisiana or Florida, has never sued anyone in those states, and has never contracted to obtain insurance in those states. *Id.* Knauf UK has never paid taxes in Louisiana or Florida. *Id.* As has been previously determined by this Court and demonstrated through years of evidence in the MDL, Knauf UK (and the other named defendants other than KPT itself) was not involved in the manufacture, marketing, sale, or distribution of KPT Chinese drywall that is the subject of this litigation.

The *Bennett* plaintiffs, represented by the same counsel that represents the Acosta Plaintiffs, did not dispute any of these facts, or oppose the motion for dismissal, and this Court dismissed Knauf UK with prejudice. R. Doc. 21794.

**_Knauf Insulation._** In the *Bennett* case, Knauf Insulation moved for summary judgment on the basis that "Knauf Insulation was not the manufacturer, distributor, or seller of the Chinese drywall at issue in the Bennett Plaintiffs' Fifth Amended Complaint. Nor did any other Knauf entity act as an agent or apparent agent of Knauf Insulation, such that Knauf Insulation might somehow be responsible for their actions." R. Doc. 21740-1, at 8. The Knauf Defendants adopt and incorporate herein by reference the arguments and analysis advanced in R. Doc. 21740-1, as well as the facts as contained in the exhibits to that briefing, at R. Doc. 21740-2 through 21740-10; but also re-state here the facts relevant to personal jurisdiction.

After more than a decade of litigation and discovery in this MDL on the same Chinese drywall at issue here, no evidence of Knauf Insulation's connection to the manufacture, marketing, sale, or distribution of the Chinese drywall at issue here has ever been discovered or been placed at issue. To the contrary, the evidence demonstrates that the various Knauf entities are separate

legal entities,[2] and that only KPT drywall produced the defective Chinese drywall at issue. The evidence produced demonstrated that the problem with the defective drywall stemmed from the raw material (*i.e.,* gypsum) used to manufacture the drywall boards that was collected from the Luneng Mine in China, the same mine that produced the Taishan drywall.[3] And it was the Knauf entity KPT that used this gypsum to manufacture the drywall boards.[4] Each shipment of KPT drywall was shipped directly from China to the United States by KPT arranged by their director of sales, Mark Norris, who directly marketed, negotiated, and transacted with the United States suppliers and/or third party brokers.[5] KPT had only three customers in the United States that received KPT drywall shipments: L&W Supply Company ("L&W"), Rothchilt International Limited (which was sold to Banner Supply Company in Florida), and Interior Exterior Building Supply, L.P. ("INEX").[6]

The chain of supply continued as follows: (1) Rothchilt International Limited, a broker, purchased the KPT drywall from KPT[7] and sold the KPT drywall to La Suprema Enterprise, Inc.[8] La Suprema Trading, Inc. then invoiced Banner Supply Company ("Banner") for the product and delivered it to Banner's warehouses.[9] Banner sold and distributed the drywall to consumers in the

---

[2] *See* R. Doc. 21740-10 (Deposition of Manfred Grundke ("Grundke Depo."), at 225) (Knauf entities are independent legal entities); R. Doc. 21740-3 (Deposition of Martin Stuerner, at 712 (each Knauf entity is separate corporation) and 727 (each Knauf entity maintains separate bank account).

[3] *See* R. Doc. 21740-2 (Deposition of David N. Gregory ("Gregory Depo."), at 682 and at 247-48 (KPT used raw materials from Luneng mine to make KPT drywall from 2001 to end of 2006 but stopped sourcing raw materials from Luneng mine because of a 'potential connection between the source of natural gypsum and this issue of board reportedly smelling.").

[4] *See* R. Doc. 21740-10 (Grundke Depo.), at 261 (KPT was ultimate authority with respect to Chinese drywall issue); *see* CDW Indicia Guide, Exhibit C-1, R. Doc. 12061-10, at 3.

[5] *See* R. Doc. 21740-2 (Gregory Depo.), at 254-55 (Norris was in charge of sales, marketing, customer services, and technical services for the Knauf East Asia entities).

[6] *See* R. Doc. 21740-4 (Deposition of Mark P. Norris, Vol. III ("Norris Depo. Vol. III"), at 876; R. Doc. 21740-5, KPT Defense Profile Form, at ¶ 4.

[7] R. Doc. 21740-6 (Deposition of Mark P. Norris, Vol. I ("Norris Depo. Vol. I"), at 98, 103-04.

[8] R. Doc. 21740-7 (La Suprema Enterprise, Inc. Profile Form (Salomon Abadi), at 2-3; R. Doc. 21740-8 (Banner Profile Form (Port St. Lucie), at 1.

[9] R. Doc. 21740-8, at 1.

United States.[10] (2) INEX purchased KPT drywall directly from KPT and distributed the drywall to customers in the United States.[11] (3) L&W purchased the KPT drywall through a broker in Florida that purchased drywall directly from KPT.[12]

Knauf Insulation, however, had no part in the chain of supply or control over the entities producing the KPT drywall. Knauf Insulation does not sell KPT drywall nor does Knauf Insulation supervise or impose standards on the manufacture of the drywall by KPT or otherwise.[13]

Knauf Insulation is a limited liability company with its principal place of business in Iphofen, Germany. R. Doc. 21740-9 (Declaration of Robert Claxton). It is a manufacturer and distributor of insulation products, among other things. *Id.* It conducted all manufacturing operations between 2005 and 2008 in the United States, and it did not conduct any operations or manufacture any products in China. *Id.* It also did not source any gypsum from China in the manufacture of any of its products, nor did it design, manufacture, market, sell, or distribute any gypsum-based drywall products, including Chinese drywall. *Id.* But, more importantly to this case, Knauf Insulation did not manufacture, market, sell, or distribute any gypsum-based products to the United States between 2005 and 2008. *Id.* In the *Hernandez* bellwether trial in this MDL, it was stipulated by the parties to this Court that, among the various Knauf entities (including Knauf Insulation), KPT was the manufacturer of the defective Chinese drywall, which in this MDL is limited to drywall manufactured in China. R. Doc. 2713, at 44.

---

[10] *Id.*
[11] R. Doc. 21740-6 (Norris Depo. Vo. I), at 119-20.
[12] *Id.* at 163-64.
[13] R. Doc. 21740-2 (Gregory Depo.), at 263-66 ("Knauf East Asia had a separate quality control department), at 545-46 (German engineers did not control quality at facility and did not train personnel), at 548 (KPT had professional lab to test raw materials and quality), at 507-08 (KPT was responsible for testing incoming gypsum), and at 176 (some German machinery is used in Knauf plants but standards are controlled locally).

The *Bennett* plaintiffs, represented by the same counsel as the Acosta Plaintiffs, did not dispute any of these facts, or oppose the summary judgment motion on behalf of Knauf Insulation, and this Court dismissed Knauf Insulation with prejudice. R. Doc. 21795.

**_Guangdong Knauf._** In the CDW Indicia Guide, made part of this Court's final approval of the prior class settlement, it was found and stipulated that Guangdong Knauf's drywall was "nonreactive drywall"—*i.e.*, not drywall that has the same alleged defect as the KPT drywall. R. Doc. 12061-10, at 38. Three months after the dismissals with prejudice of Knauf International, GKV, Knauf AMF, Knauf UK, and Knauf Insulation, the *Bennett* plaintiffs (represented by the same counsel as the Acosta Plaintiffs), voluntarily dismissed their claims against Guangdong Knauf. R. Doc. 21902. Plaintiff has not alleged that any drywall manufactured by Guangdong was installed in their properties or was reactive/defective in nature.

## II.    Argument

### A.    Futility Standard

"It is within the district court's discretion to deny a motion to amend if it is futile." *Stripling v. Jordan Production Co.*, 234 F.3d 863, 872-73 (5th Cir. 2000); *see also In re Enron Corp. Securities*, 535 F.3d 325, 333 n.6 (5th Cir. 2008). "[A]n amended complaint is futile if it fails to state a claim upon which relief may be granted." *Marucci Sports, L.L.C. v. Nat'l Collegiate Athletic Ass'n*, 751 F.3d 368, 379 (5th Cir. 2014). Futility for failure to state a claim on which relief may be granted is reviewed under "the same standard of legal sufficiency as applies under Rule 12(b)(6)." *Stripling*, 234 F.3d at 873 (internal quotation marks and citation omitted).

In addition, futility will prevent amendment where a "[p]laintiff fail[s] to establish a prima facie case of personal jurisdiction over" the defendants sought to be added "through nonconclusory allegations supported by admissible evidence." *Lemann v. Midwest Recovery Fund LLC*, 2016 WL 3033622, *3 (E.D. La. 5/27/2016). "In evaluating whether the plaintiff has

presented a prima facie case of personal jurisdiction, a court 'will not credit conclusory allegations, even if uncontroverted.'" *Id.* (quoting *Sealed Appellant 1 v. Sealed Appellee 1*, 625 Fed. Appx. 628, 631 (5ᵗʰ Cir. 2015)); *see also Shippitsa Ltd. V. Slack*, 2019 WL 277613, *6 (N.D. Tex. 1/22/2019) ("Shippitsa has failed to explain what, if anything, amending the complaint would accomplish; it has already had an opportunity to present evidence in support of personal jurisdiction and has failed to make the required prima facie showing.") (citing *Seitz v. Envirotech Sys. Worldwide Inc.*, 513 F. Supp. 2d 855, 866 (S.D. Tex. 2007)).

### B. Amendment Is Futile Because of Lack of Personal Jurisdiction Over the New Entities

The Acosta Plaintiffs make only conclusory allegations regarding personal jurisdiction as to the entities they seek to add by the proposed amendment. As to each proposed new defendant except Knauf Insulation, the Acosta Plaintiffs allege merely that each is "doing business in several states, including but not limited to Alabama, Florida, Georgia, Louisiana, Mississippi, North Carolina, South Carolina, Texas, and Virginia." R. Doc. 23236-2, at ¶¶ 14, 15, 16, 17, 19. The Acosta Plaintiffs do not make any specific allegations regarding what each new entity's business in those states consisted of, other than to add one more catch-all—but still conclusory and unsupported—allegation that

> Knauf GIPS, together with its affiliates and/or actual or apparent agents, including Knauf International, GKV, Knauf Insulation, Knauf UK, KPT, and Guangdong Knauf, manufactured, sold, distributed, marketed and placed within the stream of commerce gypsum drywall with the expectation that the drywall would be purchased by thousands of consumers within various states, including but not limited to Alabama, Florida, Georgia, Louisiana, Mississippi, North Carolina, South Carolina, Texas, and Virginia.

R. Doc. 23236-2, at ¶ 20. But the Acosta Plaintiffs make no specific allegation as to each proposed new defendant to show their actual or apparent agency, to show why their independent legal entity status should be disregarded or pierced, or to show their specific actions to place defective drywall

into the chain of commerce with the expectation that they would be purchased by consumers in Louisiana or Florida. They fail to even make the allegations that, if supported by evidence, would comprise a prima facie case of personal jurisdiction as to any of the proposed new entities.

Indeed, as to Knauf International, GKV, Knauf AMF, and Knauf UK, this Court has already dismissed those entities with prejudice from this MDL, in the *Bennett* litigation. R. Doc. 21794. As detailed above, the Knauf Defendants presented evidence as to why this Court did not have personal jurisdiction over any of these entities. *See* R. Docs. 21731, 21732, 21733, 21734, and their accompanying exhibits. The *Bennett* plaintiffs, represented by the same counsel as the Acosta Plaintiffs, did not oppose the motions to dismiss and presented no countervailing evidence. That result should be repeated here. The Acosta Plaintiffs' proposed Amended Complaint does not allege any new facts—beyond the vague and conclusory allegations outlined above—that would support a different result or a finding of personal jurisdiction. Moreover, they make those same vague and conclusory allegations as to Knauf Insulation and Guangdong Knauf, indicating the same failure to support personal jurisdiction over those two entities. Accordingly, amendment to add any of the six new entities should be found to be futile because of a failure to allege and show personal jurisdiction.

**C.  This Court Has Already Dismissed Knauf Insulation on the Merits of the *Bennett* Plaintiffs' Similar Claims on Summary Judgment; the Result Should Be the Same as to Knauf Insulation and Guangdong Knauf**

Not only should this Court follow the same result as in the *Bennett* litigation as to personal jurisdiction—and apply that result to all six proposed new defendants—but it should also follow the same result as to the lack of any claim against Knauf Insulation, and apply that result also to Guangdong Knauf. As noted above, this Court has already dismissed with prejudice the claims against Knauf Insulation in the *Bennett* cases in this MDL. R. Doc. 21795. The *Bennett* plaintiffs, represented by the same counsel as the Acosta Plaintiffs here, were unable to produce any evidence

to show a genuine issue of material fact as to the lack of any liability by Knauf Insulation for the defective Chinese drywall, while the Knauf Defendants provided ample evidence to justify summary judgment dismissal on that issue. *See* R. Doc. 21740 and its accompanying exhibits. In addition, Guangdong Knauf has already been included in this litigation on a listing of "nonreactive drywall," showing that it, too, has no liability for the allegedly defective Chinese drywall at issue in this MDL. R. Doc. 12061-10, at 38. The *Bennett* plaintiffs ultimately voluntarily dismissed their claims against Guangdong Knauf. R. Doc. 21902.

Indeed, in the *Hernandez* bellwether trial in this MDL, it was stipulated by the parties to this Court that, among the various Knauf entities, only KPT was the manufacturer of the defective Chinese drywall, which in this MDL is limited to drywall manufactured in China. R. Doc. 2713, at 44. Against this backdrop, the Acosta Plaintiffs' proposed amendment to add claims against all six of the proposed new defendants should be denied as futile. Whether the proposed amendment states a claim on which relief can be granted is a question reviewed under the Rule 12(b)(6) standard, and under that standard, "[i]n addition to facts alleged in the pleadings …, the district court 'may also consider matters of which it may take judicial notice.'" *Hall v. Hodgkins*, 305 Fed. Appx. 224, 227 (5th Cir. 2008) (quoting *Lovelace v. Software Spectrum Inc.*, 78 F.3d 1015, 1017-18 (5th Cir. 1996)). Those matters include "matters of public record," including this court's publicly available records of pleadings and orders. *Id.* Those records discussed here show that there is no genuine dispute that Knauf Insulation is not responsible for the defective drywall from which the claims arise in this MDL, and that Guangdong Knauf is only a manufacturer of nonreactive drywall, not the defective drywall at issue. R. Docs. 21740, 21795, and 12061-10.

The allegations in the proposed amended complaint—as to all of the proposed new defendants—do not rise above mere conclusory and vague allegations of unspecified "participation" in and "assistance" to Knauf Gips and/or KPT, and conclusory assertions that

various of the proposed new defendants were actual or apparent agents of Knauf Gips and/or KPT. Without more, such conclusory and vague allegations fail to state a claim—particularly in light of the countervailing evidence and orders of this Court in the publicly available pleadings in this MDL. While the court should accept all well-pleaded facts as true, "[t]he court does not, however, 'presume true a number of categories of statements, including legal conclusions; mere labels; threadbare recitals of the elements of a cause of action; conclusory statements; and naked assertions devoid of further factual enhancement.'" *Harmon v. City of Arlington*, 16 F.4th 1159, 1162-63 (5th Cir. 2021) (quoting *Morgan v. Swanson*, 659 F.3d 359, 370 (5th Cir. 2011) (*en banc*); in turn quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The Acosta Plaintiffs' allegations as to each of the proposed new defendants do not rise above any of these categories of statements to which the Court is to attach no deference. Therefore, the amendment would be futile and should be disallowed.

## III    Conclusion

For these reasons—that the Acosta Plaintiffs fail to raise claims against new defendants over which this Court has personal jurisdiction and that they fail to make allegations that sufficiently state a claim against any of the proposed new defendants—reasons that this Court has already relied on in dismissing five of the six proposed new defendants with prejudice earlier in this MDL and that apply equally to all six proposed new defendants, the Knauf Defendants request that this Court deny the Acosta Plaintiffs' Motion to Amend.

Respectfully submitted,

**FISHMAN HAYGOOD, LLP**

/s/ *Kerry J. Miller*
_____
**KERRY J. MILLER (#24562), T.A.**
**PAUL C. THIBODEAUX (#29446)**
**DANIEL J. DYSART (#33812)**

**REBEKKA C. VEITH (#62062)**
**MICHAEL R. DODSON (#37450)**
201 St. Charles Avenue, Suite
4600 New Orleans, LA 70170
Telephone:      504.556.5549
Facsimile:      504.949.8202
Email:           kmiller@fishmanhaygood.com

*Counsel for the Knauf Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing pleading has been served upon Russ Herman, Plaintiffs' Liaison Counsel, by email, to all parties by electronically uploading the same to LexisNexis File & Serve in accordance with Pre-Trial Order No. 6, individually to pro se claimants via U.S. Mail, and that the foregoing was filed with the Clerk of Court of the United States Court for the Eastern District of Louisiana, on this 7th day of December, 2021.

/s/ *Kerry J. Miller*
_____
**KERRY J. MILLER**