UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION, <br><br> THIS DOCUMENT RELATES TO: <br><br> Bessie Barnett; Gwendolyn Kerr Bierria; Stephanie Fortenberry, <br><br>  Plaintiffs, <br><br> v. <br><br> Beijing New Building Materials Group, Co., Ltd.; Beijing New Building Materials Public Limited Co.; China National Building Material Co., Ltd.; Taishan Gypsum Co., Ltd. f/k/a Shandong Taihe Dongxin Co., Ltd.; Tai'an Taishan Plasterboard Co., Ltd.; and, The State-Owned Assets Supervision and administration Commission of the State Council, <br><br>  Defendants. | MDL Docket No. 2047 <br><br> SECTION L <br> JUDGE FALLON <br> MAG. JUDGE NORTH <br><br><br> Case No. 2:15-CV-04127 |

## TAISHAN'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

Defendants Taishan Gypsum Co., Ltd. and Tai'an Taishan Plasterboard Co., Ltd. (collectively, "Taishan") submit this Motion for Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure as to the claims asserted against them by Plaintiffs Bessie Barnett, Gwendolyn Bierria, and Stephanie Fortenberry (collectively, "Plaintiffs").

The remaining three Plaintiffs filed their claims in the *Brooke* complaint – an "omnibus" complaint which aggregated late-filed homeowner claims from 2015 through 2019. Plaintiffs then chose to opt-out of the Taishan Class Settlement, which the Court approved in January 2020. In its order granting final approval to the Taishan Class Settlement, the Court warned of "the inherent difficulties and uncertainties" that opt-outs would face. Rec. Doc. 22460 at 47. Specifically, in

1

explaining why the *Amorin* case, where Defendants were in default, was different than Plaintiffs' *Brooke* claims, the Court stated:

> **…[T]he *Brooke* claims are in the nascent stages of litigation**. Several complaints have been filed, but the Defendants have not answered, no discovery has occurred nor has a class been certified. **Developing these claims in a manner that resembles the *Amorin* litigation would entail significant time and expense**. Furthermore, many of these claims are jeopardized by applicable statute of limitations defenses potentially available to Defendants. Accordingly, **the *Brooke* claims are inherently riskier and less valuable than the *Amorin* claims**. The *Amorin* and *Brooke* groups have very different chances of success on the merits, and it is equitable to treat claimants with more fully developed cases as better situated than those facing more substantial obstacles to recovery.

*Id.* at 48 (emphasis added).

In the two years that have followed that order, Plaintiffs have failed to request any discovery from Taishan and failed to develop any expert testimony to prove their claims. Additionally, Plaintiffs have failed to develop a record to overcome the statutes of limitations issues that this Court warned of for the late-filed *Brooke* claims and, in the case of Plaintiff Fortenberry, have even failed to develop evidence that Taishan manufactured the drywall in her home. Plaintiffs' total failure to support their claims with evidence requires summary disposition of all of Plaintiffs' claims as a matter of law. As opt-outs, Plaintiffs chose a difficult and uncertain path and have failed to progress their claims beyond the pleading stage. Accordingly, Taishan respectfully requests that the Court grant its motion for summary judgment as to all claims from Plaintiffs Barnett, Bierria, and Fortenberry.

## I.    Factual and Procedural Background

### A.  The Beginning of Chinese Drywall Litigation

From 2004 through 2006, the housing boom in Florida and rebuilding efforts necessitated by Hurricanes Rita and Katrina led to a shortage of construction materials, including drywall. Rec. Doc. 20741 at 1. From 2006 to 2007, Taishan manufactured and sold drywall, which was

2

subsequently exported to the United States in 2006 and 2007. Rec. Docs. 14215-3, 14215-4. In 2009, property owners who discovered indicia of Chinese drywall in their properties began filing complaints against Knauf, Taishan, and other drywall manufacturers. *See, e.g., Wiltz* and *Germano* complaints (Case No. 09-3488, Rec. Doc. 1, and Case No. 09-6687, Rec. Docs. 1-1, 1-2). On June 15, 2009, the Judicial Panel on Multidistrict Litigation created the Chinese-Manufactured Drywall MDL. Rec. Doc. 1. On May 25, 2010, the United States Consumer Product Safety Commission ("CPSC") issued a public release identifying manufacturers of allegedly defective drywall. *See* Rec. Doc. 20741 at 13 (referencing CPSC report). Thousands of property owners discovered that they had claims and filed suit during those early years of this MDL.

### B. The Late Entry of Brooke Claims into this MDL

But those are *not* the property owners who filed suit in the *Brooke* action. The *Brooke* complaint, filed in 2015, is one of the ***last*** in a line of "omnibus" complaints (Omnibus XX) filed by the Plaintiffs' Steering Committee ("PSC") in this MDL. Unlike its predecessors, the *Brooke* complaint was not a procedural effort by the PSC to consolidate claims filed in other prior complaints, but instead was an attempt to file ***new*** claims years after the vast majority of other property owner claims in the MDL had been filed.

The *Brooke* Louisiana complaint was filed on September 4, 2015 – more than six years after this MDL was formed – and introduced nearly 700 new claims. EDLA Case No. 15-4127, ECF No. 1. But even those late claims were not the end of the line. In 2017 and 2018, the PSC would go on to add hundreds of additional new claims to the *Brooke* complaint through multiple "Motions to Intervene" – which were the procedural vehicles used to add two of the opt-out Plaintiffs remaining in this case. *See* Rec Docs. 20811; 21056; 21105; 21163; 21342; 21599; 21882; 21932.

3

### C. The Court's Rulings on Late *Brooke* Claims

On March 6, 2019, the Court issued its order granting in part and denying in part the Motion to Dismiss the *Brooke* complaint filed by the BNBM Defendants. Rec. Doc. 22124. In relevant part, that Order held that Louisiana law does not allow for cross-jurisdictional tolling of claims. *Id.* at 14; 17 (citing *Quinn v. La. Citizens Prop. Ins. Corp.*, 118 So. 3d 1011, 1022–23 (La. 2012)). Additionally, the Court rejected the argument that *Brooke* plaintiffs' claims were tolled under the doctrine of *contra non valentem* or equitable tolling under Louisiana law. Rec. Doc. 22124 at 23. But the Court stopped short of dismissing all of the *Brooke* claims as facially time-barred, instead holding that Plaintiffs "will be required to prove they neither knew or should have known of their causes of action sufficient to satisfy their respective jurisdictions' discovery law" and calling the inquiry "highly fact based." *Id.* at 26-27.

### D. Remands and Class Settlement

In March 2019, this Court remanded two duplicate *Brooke* complaints to Florida and Virginia, effectively carving out the Florida-based claims and Virginia-based claims from the MDL and from the *Brooke* Louisiana complaint. Rec. Docs. 22138 and 22139. Shortly thereafter, the parties agreed to terms on the Taishan Class Settlement which resolved virtually all of the remaining property owner claims in the MDL and was approved by this Court in January 2020. *See* Rec. Docs. 22460 & 22466.[1] The Class Settlement resolved 218 of the claims in the Louisiana *Brooke* action but ten Louisiana plaintiffs opted out of the Class Settlement and chose to litigate their claims individually. Rec. Doc. 23012.

---

[1] After approval of the Taishan Class Settlement, the Court remanded all remaining claimants in the *Brooke* Louisiana complaint with properties in Alabama, Georgia and Mississippi to federal district courts in their home states – leaving only Louisiana property claims in the *Louisiana Brooke* action. Rec Doc. 22786.

4

### E. This Opt-Out Litigation

On December 4, 2020, the Court issued Case Management Order No.1 ("CMO") for the *Brooke* Louisiana opt-out claims. That scheduling order was negotiated and agreed to by Plaintiffs and Defendants prior to its submission to the Court for approval. Rec. Doc. 23012. A few days later, Plaintiffs filed their Amended Complaint. Rec. Doc. 23021. On December 10, 2020, Taishan filed its Answer. Rec. Doc. 23025. Under the CMO, beginning December 11, 2021, Plaintiffs were permitted to "initiate written discovery requests on Defendants on the topic of Product ID." *Id.* at 3. ***But Plaintiffs never served any discovery requests on Defendants in this case.*** Plaintiffs also were permitted to "initiate subpoenas on third parties on the topic of Product Identification." ***There is no record that Plaintiffs ever served any such subpoenas in this case***.

Defendants took the depositions of all ten opt-out Plaintiffs from December 28, 2020 to February 26, 2021. Rec. Doc. 23012 at 3. Defendants also complied with the CMO by providing statements with their "position on Product ID and attribution" which were served on December 21, 2020. Statement at ¶ 20.

Defendants filed Motions for Early Summary Judgment on March 29, 2021, on the claims of seven opt-out Plaintiffs. Rec Docs. 23070; 23071. The Court entered "its order on the final pending summary judgment motion" on May 27, 2021, granting them all, which triggered the CMO's Second Discovery Phase. Rec. Doc. 23089; 23012 at 3-5. Per the CMO, the Parties were permitted to serve written discovery requests on each other during the Second Discovery Phase. Defendants served requests for documents on Plaintiffs on June 30, 2021. Plaintiffs eventually produced documents in response to those requests by August 10, 2021, the final day of fact discovery under the CMO. As with the First Discovery Phase, ***Plaintiffs did not serve any discovery requests on Defendants*** in the Second Discovery Phase.

September 4, 2021 was Plaintiffs' deadline under the CMO to designate any expert witnesses and serve their expert reports. ***That deadline came and went without any expert designations from Plaintiffs.*** Two months later, Plaintiffs attempted to serve untimely expert materials on Defendants and Taishan filed an Emergency Motion to Strike those untimely expert disclosures. Rec. Doc. 23237. On December 13, 2021, the Court issued an order granting Taishan's Motion to Strike and "find[ing] that Plaintiffs' expert disclosures were untimely under the Case Management Order." Rec. Doc. 23251 at 3. Plaintiffs have also filed a Motion for Partial Summary Judgment on issues of causation and liability. Rec. Doc. 23229. The Court has ruled that Defendants' opposition to that Motion is not due until January 3, 2022. Rec. Doc. 23243.

**II.    Legal Standard**

Summary judgment is required if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A genuine dispute of material fact exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Bennett v. Hartford Ins. Co. of Midwest*, 890 F.3d 597, 604 (5th Cir. 2018) (*quoting Johnson v. World All. Fin. Corp.*, 830 F.3d 192, 195 (5th Cir. 2016) (internal quotation marks omitted)).

When seeking summary judgment, the movant bears the initial responsibility of demonstrating the absence of an issue of material fact with respect to those issues on which the movant bears the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). However, where the non-movant bears the burden of proof at trial, the movant may merely point to an absence of evidence, thus shifting to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial. *Id.* at 322; *see also Moody v. Jefferson Parish School Board*, 2 F.3d 604, 606 (5th Cir. 1993).

To withstand a properly supported motion, the nonmoving party who bears the burden of proof at trial must come forward with evidence to support the essential elements of its claim. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (citing *Celotex* 477 U.S. at 321-23). The nonmoving party must go beyond the pleadings and show by affidavits, depositions, answers to interrogatories, admissions on file or other admissible evidence that specific facts exist over which there is a genuine issue for trial. *Wallace v. Texas Tech Univ.*, 80 F.3d 1042, 1046-47 (5th Cir. 1996). This burden may not be satisfied by conclusory allegations, unsubstantiated assertions, or metaphysical doubt as to the facts, or a scintilla of evidence. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994); *Wallace*, 80 F.3d at 1047. Unless there is sufficient evidence for a jury to return a verdict in the nonmovant's favor, there is no genuine issue for trial. *Anderson, supra.* at 249-51.

As outlined below, Plaintiffs have failed to meet their burden of developing evidence for essential elements of their claims, there is no genuine issue of material fact warranting trial on Plaintiffs' claims and, thus, Taishan respectfully requests that the Court grant summary judgment as to all of Plaintiffs claims.

**III.     Plaintiffs Have Failed to Establish Any Evidentiary Basis to Support their Claims**

Despite having been afforded ample time for discovery, Plaintiffs have failed to develop the proof for essential elements of their claims. Plaintiffs failed to serve any subpoenas or discovery requests on Product ID in Phase One Discovery, failed to serve any discovery on Defendants in Phase Two Discovery, and failed to designate or develop any expert testimony. None of the testimony nor document productions elicited by Defendants is sufficient to satisfy Plaintiffs' burdens of proof.

Unlike the *Germano* and *Amorin* cases from this MDL, there is no default against Taishan or any other defendant in this case. And unlike the Knauf cases in this MDL, Taishan has not stipulated to liability or causation. Plaintiffs had an obligation to develop proof of the essential elements of their claims under Louisiana law and have completely failed to do so. Accordingly, summary judgment as to all of Plaintiffs' claims is warranted.

### A. All Three Plaintiffs Failed to Develop Any Evidence of Taishan's Drywall Being Defective and Have Failed to Prove Liability or Causation

Plaintiffs' operative complaint pleads two overlapping theories of liability for a defective product under Louisiana law: the Louisiana Product Liability Act (LPLA) and redhibitory defect. As this Court explained in *Stroderd v. Yamaha Motor Corp.*, No. 04-3040, 2005 WL 2037419 (E.D. La. Aug. 4 2005), the LPLA and Louisiana redhibition law are the "sole vehicles for a suit against a manufacturer arising from a defective product." *Id.* at *6-7.

To prove liability under Louisiana's redhibition law, a plaintiff must prove, by a preponderance of the evidence, that "the product contained a hidden defect at the time of sale, which was not apparent on inspection, and which rendered the thing unfit for the use intended or that its use became so inconvenient that the purchaser would never have purchased the product had he known of the defect." *C & M Contrs., Inc. v. Team Persuasion Enters., Inc.*, 779 So. 2d 1, 3 (5th Cir. 1999). Under the LPLA, plaintiffs must show:

1. that the defendant is a manufacturer of the product;
2. that the claimant's damage was proximately caused by a characteristic of the product;
3. that this characteristic made the product "unreasonably dangerous"; and
4. that the claimant's damage arose from a reasonably anticipated use of the product by the claimant or someone else.

*Stahl v. Novartis Pharmaceuticals Corp.*, 283 F.3d 254, 260-61 (5th Cir. 2002).

Under either product liability theory, Plaintiffs were required to prove that the specific drywall in their homes is defective and/or unreasonably dangerous (establishing liability) and that

8

the drywall has proximately caused Plaintiffs' alleged damages (establishing causation and damages). But Plaintiffs have failed to even ***attempt*** to develop the evidence necessary to meet their burden on liability or causation. As this Court knows from its experience in the *Germano* case, proving that drywall within a home is defective requires evidence. In that case, this Court outlined both the CPSC's standard for identifying defective drywall and the efforts made by the *Germano* plaintiffs to prove their own drywall was defective:

> The CPSC Guidance sets forth "Corroborating Evidence" for the presence of CDW in such homes. *Id*. The CPSC Guidance requires that 4 out of 6 types of corroborating evidence be met to establish a "Problem Drywall" home. *Id*. The six types of evidence are: (a) corrosive conditions demonstrated by copper sulfide on copper coupons or confirmation of sulfur in blackening of grounding wires and/or air conditioning coils; (b) confirmed markings of Chinese origin on the drywall; (c) strontium levels (excluding the exterior paper) exceeding 1200 2 2 ppm; (d) laboratory elevated sulfur readings above 10 ppm; (e) elevated levels of H S, COS, CS; and (f) corrosion of copper to form copper sulfide when copper is placed in test chambers with drywall samples from the home. *Id*. The seven Plaintiff intervenors' homes meet the corroborating evidence criteria set forth in the CPSC Guidance.

Rec. Doc. 2380 at 18. This Court went on to list the extensive expert testimony and lab reports submitted into evidence by the *Germano* plaintiffs to support their allegation that their homes contained defective Chinese drywall. *Id.* at 18-19.

In stark contrast, the record for Plaintiffs here is barren of any scientific testing or laboratory reports to prove the presence of defective Chinese drywall in their homes. As required by the Court, Plaintiffs have submitted photographs displaying the markings on the drywall in their homes. Plaintiffs also have produced photographs that they claim show corrosion on metal surfaces in their homes. But there is no admissible evidence – no inspection reports, no laboratory reports, and no expert testimony – to support the allegation that Plaintiffs' drywall is defective and/or unreasonably dangerous. And there is no admissible evidence in the record confirming that Plaintiffs' drywall is the proximate cause of any alleged damage to Plaintiffs' property. Plaintiffs were obligated to develop such evidence in discovery: both the Plaintiff Profile Forms and

9

Taishan's written discovery to Plaintiffs required production of any evidence of defective drywall in Plaintiffs' homes. Plaintiffs also had the opportunity to develop expert testimony to prove liability and causation under the LPLA and Louisiana's redhibition law but failed to do so.

A possible explanation for this failure on Plaintiffs' part is revealed in Plaintiffs' recently filed Motion for Partial Summary Judgment, which contends, incorrectly, that this Court has previously held that Plaintiffs' drywall is defective – pointing to the Court's damages rulings in the *Germano* and *Amorin* cases. Rec. Doc. 23229-1 at 4-5. As will be fully detailed in Taishan's opposition to Plaintiffs' motion, neither the Court's rulings in *Germano* nor *Amorin* held that all drywall alleged to have been manufactured by Taishan is defective. Rather, in both of those cases, ***default*** judgments were entered against Taishan, which made proof of product defect or causation unnecessary. While the *Germano* plaintiffs *did* submit significant scientific testing and expert testimony to prove the defect of their specific drywall and its effect on their homes, those proofs were submitted to determine the proper measure of Rule 55 damages, including the scope of remediation. Rec. Doc. 2380 at 18-19. And there is no evidence in the record to make a connection that Plaintiffs here have the same drywall that the *Germano* plaintiffs had.

Plaintiffs do not (and cannot) point to any prior ruling by this Court that the particular drywall in ***Plaintiffs'*** homes is defective or of any ruling on causation related to ***Plaintiffs'*** homes. In fact, Plaintiffs' Motion is confirmation that Plaintiffs have no actual evidence to prove either of these necessary elements and, instead, are attempting to ride the coattails of prior default judgments in other cases. But as the Court warned at the outset of this opt-out litigation, the *Brooke* cases were procedurally distinct from the defaulted and class-certified *Amorin* claims and that it would take "significant time and expense" to develop proof of liability, causation and damages. Rec. Doc. 22460 at 48. These *Brooke* opt-out Plaintiffs were required to develop their own case-

specific proof of the elements of their claims – they cannot shortcut those burdens in this litigation with ill-placed reliance on older, different cases.

Plaintiffs' total failure to develop evidence of product defect and causation is fatal to their claims and requires summary disposition of all claims in this case. *See, e.g., Lacoste v. Pilgrim Int'l,* No. 07-2904, 2009 U.S. Dist. LEXIS 46752, *18-20 (E.D. La., June 3, 2009) (granting motion for summary judgment against plaintiff's product liability claims under Louisiana law where plaintiff failed to provide expert testimony on causation and "the record [did] not contain any evidence to suggest that the product defect was the most probable cause of the injury") (internal quotations omitted); *Romo v. Ford Motor Co.*, No. B-10-66, 2011 U.S. Dist. LEXIS 165843 at *19-20 (S.D. Tex., May 26, 2011) (granting motion for summary judgment as too all claims because plaintiff failed to designate any expert witnesses or provide any evidence of product defect or causation to support their product liability claims); *Brown v. Miska*, No. V-94-067, 1995 U.S. Dist. LEXIS 17197 at *12-13 (S.D. Tex., July 19, 1995), *aff'd, Brown v. Miska*, 96 F.3d 1445 (5th Cir. 1996) (excluding plaintiffs' expert testimony on alleged product defect in defendants' automobiles and granting defendants' motion for summary judgment because plaintiff could not raise a genuine issue of material fact concerning product defect without expert testimony).

### B. All Three Plaintiffs Failed to Develop the Necessary Expert Testimony to Prove their Alleged Remediation Damages

Even if Plaintiffs had developed sufficient proof of liability and causation (which they have not), they have still failed to prove any alleged property damages. In all prior evidentiary proceedings on individual damages in this MDL, the Court has required claimants to present expert proof on cost and specific scope of remediation for particular properties. *See* Rec. Doc. 2380 at 57-60 (citing to the expert testimony provided by a professional engineer to support the calculation of remediation damages for the *Germano* intervenors); Rec. Doc. 2713 (outlining testimony in

*Hernandez* about the estimated cost of remediation from experts who used Xactimate estimates and/or quotes from local contractors to reach an expert conclusion on the cost of remediation). But Plaintiffs here have designated no expert testimony, and the time has passed for them to do so. *See* Rec. Doc. 23251 (holding that Plaintiffs' expert disclosures were untimely under the Court's Case Management Order).

As this Court has previously stated, it is well-settled that the measure of property damage under Louisiana law is the cost of restoring the property to its former condition. Rec. Doc. 2713 at 46. Generally, Louisiana courts consider the cost of restoration to be the proper measure of damage where the thing damaged can be adequately repaired. *Id.* Accordingly, Louisiana courts look to expert testimony as the basis to prove property damages and the cost of restoration. *See, e.g., Corbello v. Iowa Prod.*, 850 So. 2d 686, 696 (La. 2003) (analyzing the expert testimony of plaintiff and defendant's expert witnesses on the issue of the costs of property restoration and affirming a $33 million award based on the strength of plaintiff's expert testimony). But to prove the cost of repairing Plaintiffs' homes, Plaintiffs would need a qualified expert witness to analyze and assess the scope and cost of restoration. Without such expert testimony, Plaintiffs cannot prove the proper measure of their alleged property damages under Louisiana law. Accordingly, Taishan moves for summary judgment as to Plaintiffs' property damage claims in these cases.

## IV. Plaintiff Fortenberry Failed to Meet Her Burden to Prove Her Drywall is a Taishan Product

The fundamental evidentiary deficiencies set forth in § III above require summary disposition of the claims of all three Plaintiffs. But certain Plaintiffs have additional deficiencies specific to their claims which are addressed in this and the following section.

Plaintiff Fortenberry has failed to develop or offer any proof that Taishan manufactured the drywall in her property. To bring a product liability claim against a manufacturer under

12

Louisiana law, a plaintiff must prove that the defendant manufacturer actually manufactured the product. *Stahl v. Novartis Pharmaceuticals Corp.*, 283 F.3d 254, 260-61 (5th Cir. 2002). For this reason, the Court required (i) plaintiffs in this MDL to identify the product markings on the drywall at issue, and (ii) defendants to identify which products were manufactured or distributed by them. The CMO for this opt-out litigation required Taishan to submit its position on which Product ID markings are or are not attributable to Taishan.[2] Rec. Doc. Rec. Doc. 23012 at 3. Taishan submitted that statement to Plaintiffs on December 21, 2020. Statement at ¶ 20.

Plaintiff Fortenberry presented photographic evidence of drywall with Product ID marking #27 – bearing the marking "Made in China Crescent City Gypsum Incorporated Manufactured in P.R.C." Statement at ¶ 19. But Taishan denied manufacturing that marking in its Product ID Statement served on Plaintiffs. Statement at ¶ 20. Given Taishan's denial, Fortenberry bears the burden of proving that Taishan made the drywall (with marking #27) in her property. Simply alleging that Taishan made the drywall, without any documentary or other proof to support that, falls short of Fortenberry's evidentiary burden. The Court's CMO specifically permitted Plaintiffs to pursue discovery from Defendants or third parties on the issue of Product ID – provisions that Plaintiffs advocated to be included in the CMO – but Plaintiffs never pursued any such discovery. Rec. Doc. 23012 at 3. Without any evidence that Taishan manufactured drywall with marking #27, there is no genuine dispute of material fact and Taishan respectfully requests that the Court grant

---

[2] Product markings have been coded by reference to a "Product ID Catalog" and "Product Buckets" that had been established in the MDL and are an understood and common reference point for all parties. Statement at ¶ 20; citing Fortenberry Exhibit C. Each claim had a PID "Category" identified by an alphabetical letter and a "Marking Number" identified by a numeral.

13

summary judgment over Fortenberry's claims for failure to prove that Taishan manufactured the drywall in her home.[3]

### V.     Plaintiffs Bierria and Barnett's Claims are Prescribed under Louisiana Law

The claims of two of the three remaining Plaintiffs are time-barred. This Court's March 6, 2019 order on the BNBM Defendants' Motion to Dismiss the *Brooke* complaint, held that *Brooke* Plaintiffs "will be required to prove they neither knew or should have known of their causes of action sufficient to satisfy their respective jurisdictions' discovery law" and called that inquiry "highly fact based." Rec. Doc. 22124 at 26-27. This Court has already granted summary judgment as to multiple opt-out plaintiffs in this case under Louisiana's prescription law, which has a one-year prescription period for Plaintiffs' claims. *See* Rec. Doc. 23089.

When claims are facially time-barred like Plaintiffs' claims, Plaintiffs bear the burden of establishing that their claims are not in fact time-barred or at the very least that an issue of fact exists as to that question. *Payton v. Dyncorp Int'l*, No. 10-1014, 2011 U.S. Dist. LEXIS 73161 at *10-12 (E.D. La. July 7, 2011). Under Louisiana law, prescription is generally an affirmative defense to be proven by the defendant at trial. *Hilman v. Succession of Merrett*, 291 So. 2d 429, 431 (La. 1974). But Louisiana law makes an exception for a claim that "on its face" has prescribed, flipping the burden onto the plaintiff to "allege and prove facts sufficient to show a suspension or interruption of prescription to bring the action within the prescriptive period." *Id.* Importantly, a plaintiff's proof that her claim has not prescribed must be "***clear, specific, and positive***." *Id.* (emphasis added). Accordingly, because this Court has already recognized that the remaining

---

[3] Taishan has admitted to manufacturing drywall with the product marking that appears to be shown in Plaintiff Bierria and Plaintiff Barnett's Product ID photograph submissions. Therefore, without waiving those Plaintiffs' obligation to submit sufficient proof of Product ID at trial, Taishan does not move for summary judgment for Plaintiffs Bierria or Barnett on the grounds of Product ID.

14

claims were facially filed too late, rather than making Defendants carry the burden of proving prescription at trial, Louisiana law dictates that the burden has shifted to Plaintiffs at this summary judgment stage to clearly, specifically, and positively prove their claims are not prescribed.

As described below, Plaintiffs Barnett and Bierria's claims are prescribed under Louisiana law because they failed to offer clear, specific and positive proof that they discovered their claims within one year of filing. Because these facially time-barred claims have failed to meet this evidentiary burden, their claims should be dismissed.

### A. Plaintiff Barnett's Claims are Prescribed under Louisiana Law

Plaintiff Bessie Barnett filed her claim in the original *Brooke* complaint filed on September 4, 2015 in the Eastern District of Louisiana. Statement at ¶ 3. Barnett admits that the drywall in her home was installed in 2006 but claims to have not discovered that her drywall was allegedly defective until ***nine years*** later in July 2015. Statement at ¶¶ 5, 7. Barnett's SPPF states that she first became aware of the alleged drywall issue in her home after she "started investigating the air conditioning problems [she] was experiencing and learned about the Chinese drywall issues" which led to her "inspection of the drywall markings." Statement at ¶ 4.

At her deposition, Barnett claimed that she discovered Chinese drywall markings in her home during a July 21, 2015 air conditioning repair appointment after the repairperson told her she may have Chinese-manufactured drywall. Statement at ¶ 8. Despite having invoices for numerous other air conditioning repair services from 2007 through 2011 that she attributes to damages from defective drywall, Barnett has no documentary evidence of the air conditioning repair that she claims revealed that she had Chinese Drywall on that specific date in July 2015. Statement at ¶¶ 6, 9. Barnett conceded in her deposition that she had no true knowledge or recollection of the undocumented date of the alleged air conditioning repair appointment.

15

Statement at ¶ 8. Barnett admitted that the date of the inspection – which would be critical to surviving summary judgment – was simply a "guess" and she could not recall the details of anything about the AC repair appointment upon examination. *Id*. That is the opposite of the "clear, specific and positive" standard required by Louisiana law.

Because of the late filing date of her *Brooke* claim (many years into this MDL), Plaintiff Barnett's claims are facially time-barred, and to overcome that fatal deficiency, this Court charged Barnett with producing evidence to prove that her claim was not prescribed under Louisiana law. Instead, she has produced an unsupported, equivocal and self-serving statement that she discovered her claim during an air conditioning service appointment that she has no recollection of – an appointment that conveniently occurred only two months before Barnett's claim was filed. These kinds of self-serving statements are insufficient to overcome the presumption that a facially time-barred claim is prescribed. *See e.g. Sandoz v. Cingular Wireless, LLC*, No. 07-1308, 2014 U.S. Dist. LEXIS 91246 at *21-22 (W.D. La. Mar. 31 2014) (holding that plaintiffs' conclusory statements in self-serving affidavits failed to meet their burden to show that facially time-barred claims were timely); *Payton v. Dyncorp Int'l*, 2011 U.S. Dist. LEXIS 73161 at *10-12 (holding that plaintiff had failed to provide any competent summary judgment evidence to suggest that her claim was not time-barred and finding plaintiffs' assertion of the date of her discovery of the claim to be insufficient by itself to create an issue of fact). Accordingly, Taishan moves for summary judgment as to all of Plaintiff Barnett's claims.

### B. Plaintiff Bierria's Claims are Prescribed under Louisiana Law

Plaintiff Gwendolyn Bierria's claim is also facially time-barred, and she has not offered sufficient evidence to overcome it. Bierria brought her claim in a motion to intervene in the *Brooke* complaint filed on November 1, 2017 in the Eastern District of Louisiana. Statement at ¶ 3. Bierria

had chronic air conditioning problems in her home that she has attributed to defective drywall since at least 2010. Statement at ¶ 12. Plaintiff Bierria admits that the drywall in her home was installed in 2007 but claims to have not discovered that her drywall was allegedly defective until *ten years* later on July 21, 2017.[4] Statement at ¶¶ 11-13. Plaintiff Bierria claims to have discovered her Chinese-manufactured drywall after a July 2017 air conditioning repair appointment where, according to Bierria, the repairperson told her she may have defective drywall. Statement at ¶¶ 12-13. But Bierria does not have an evidence to support that this July 2017 air conditioning repair actually occurred, the other scant evidence that exists shows that the July 21, 2017 date cannot be true, and Bierria conceded at deposition that "[a]t this time, I'm not ready to say it was the date." Statement at ¶¶ 14, 15.

In response to written discovery from Defendants, Plaintiff Bierria produced a letter she had submitted to this Court dated April 7, 2017, which claims that she discovered her drywall two weeks prior (in March 2017). Statement at ¶ 17. And metadata from drywall marking photographs that she produced show the photos were taken in March 2017. Statement at ¶ 16. Similar to Barnett, Plaintiff Bierria has not produced any invoice for the service call where the alleged discovery of Chinese-manufactured drywall was made in July 2017. Statement at ¶ 15.

Instead of supplying clear, specific and positive proof, Plaintiff Bierria has produced a contradictory, unsupported and self-serving account of when she discovered her drywall claims. Plaintiff Bierria's contradictory positions are insufficient to overcome the presumption that a facially time-barred claim is prescribed under Louisiana law. *See Payton v. Dyncorp Int'l*, 2011

---

[4] Plaintiff Bierria's alleged July 21, 2017 discovery date is bizarrely two years *to the day* after Plaintiff Barnett's July 21, 2015 alleged discovery date – both of which were allegedly prompted by *undocumented* air conditioning service appointments following a series of much earlier *documented* service appointments.

17

U.S. Dist. LEXIS 73161 at *10-12) (holding that a plaintiff with facially time-barred claims bears the burden to present competent summary judgment evidence to prove her claim is not time barred beyond her own statements); *Velez v. Carbonett*, 779 So. 2d 12, 14 (La. App. 1st Cir. 2000) (holding that plaintiff failed to meet his burden to present "clear, specific, and positive proof" that his facially prescribed claim was not actually prescribed and declining to accept plaintiff's self-serving claims in his complaint and brief). Accordingly, Taishan moves for summary judgment as to all of Plaintiff Bierria's claims.

## VI. Conclusion

Plaintiffs have wholly failed to support their claims with evidence of liability, causation or property damages. Additionally, Plaintiffs claims suffer from fatal defects for failure to prove product identification and failure to file their claims within Louisiana's one-year prescription period. These defects require summary disposition. Taishan respectfully requests that the Court grant its motion for summary judgment on all claims by Plaintiffs Bessie Barnett, Gwendolyn Bierria, and Stephanie Fortenberry.

Dated: December 13, 2021

Respectfully submitted,

/s Christina Hull Eikhoff
Christina Hull Eikhoff, Esq.
Georgia Bar No. 242539
David Venderbush, Esq.
New York Bar No. 2920817
ALSTON & BIRD LLP
1201 West Peachtree Street
Atlanta, Georgia 30309
Phone: (404) 881-7000
Fax: (404) 881-7777
christy.eikhoff@alston.com
*Counsel for Taishan Gypsum Co., Ltd. and Tai'an Taishan Plasterboard Co., Ltd.*

Alan Dean Weinberger
LA Bar No. 13331
HANGARTNER, RYDBERG & TERRELL, LLC
One Shell Square
701 Poydras St., Suite 310
New Orleans, Louisiana 70179
Phone: (504) 434-6815
Fax: (504) 522-5689
aweinberger@hanrylaw.com
*Local Counsel for Taishan Gypsum Co., Ltd. And Tai'an Taishan Plasterboard Co., Ltd.*