UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN RE: CHINESE-MANUFACTURED DRYWALL                 MDL NO. 2047
PRODUCTS LIABILITY LITIGATION                        SECTION: L

_____

THIS DOCUMENT RELATES TO THE FOLLOWING
ACTION ORIGINALLY STYLED:

                                                     JUDGE ELDON FALLON

*Stephen and Diane Brooke, individually, et al. v. The*
*State-Owned Assets Supervision and Administration*      MAG. JUDGE NORTH
*Commission of the State Council, et al.,*
2:15-cv-004127-EEF-MBN

_____

**PLAINTIFFS OPPOSITION TO DEFENDANTS'**
**MOTIONS FOR SUMMARY JUDGMENT (DOCS. 23252 & 23253)**

# Table of Contents

**Page**

I.    FACTUAL AND PROCEDURAL BACKGROUND ………………….………    1

    A.    Establishment of MDL-2047 …………………………………….…….    1

    B.    The *Brooke Complaint and Plaintiffs* ………...……………………...    2

II.   STANDARD OF REVIEW………………………………………………..…    3

III.  ARGUMENT………………………………………………………………    3

    A. PRESCRIPTION ………………………………………………………    4

       1.   Defendant Taishan's failure to report the sale of its defective product to the CPSC and actively concealment of the nature of the defect tolls the prescriptive period for Plaintiffs …………………………………    5

       2.   Equitable estoppel also prevents Defendants from benefitting due to their choice to intentionally conceal information regarding their defective drywall …………………………………………………...    7

       3.   Plaintiff's product liability claims are timely filed …………………..    9

       4.   Product liability claims are subject to the discovery rule in Louisiana …………………………………………………………...    11

       5.   It is settled Louisiana law that defective Chinese-manufactured drywall is a latent defect …………………………………………….    15

       6.   Knauf had a duty to warn Plaintiff regarding defective nature of its drywall after the sale but chose to remain silent …………………….    16

IV.   CONCLUSION…………………………………………………………..    17

Table of Authorities

**Cases**            **Page**

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986)      3

*Bell v. Uniroyal Inc.*,
    696 So.2d 268 (La. Ct. App. 4th Cir.1997)      17

*Borderlon v. Peck,*
    661 S.W.2d 907 (Tex. 1983)      7

*Camsoft Data Systems Inc. v. Southern Electronics Supply Inc.*,
    (La. Ct. App. 2019)      6

*Carter v. Haygood*,
    892 So.2d 1261 (La. 2005)      10

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986)      3

*Chastant v. SBS-Harolyn Park Venture*,
    510 So. 2d 1341 (La. Ct. App. 1987)      12

*Clark v. Coats & Clark, Inc.*,
    929 F.2d 604 (11th Cir. 1991)      3

*Crow v. Laurie,*
    729 S.2d 703 (La.App. 1st Cir. 1999)      13

*Dixon v. Houck*,
    466 So.2d 57 (La.App. 2d Cir.1985)      9

*Fitzpatrick v. City of Atlanta*,
    2 F.3d 1112 (11th Cir. 1993)      3

*Griffin v. Kinberger*,
    507 So.2d 821 (La.1987)      9

*Harlan v. Roberts*,
    565 So.2d 482 (La.App.2d Cir.1990)      10

*Hogg v. Chevron USA Inc.*,
    45 So.3d 991 (La. 2010)      12

*Hyman v. Hibernia Bank & Trust Co.*,                                  7
    71 So. 598, 139 La. 411 (La. 1916)

In re Chinese-Manufactured Drywall Prods. Liab. Litig.                 1
    894 F. Supp. 2d 819, (E.D. La. 2012), aff'd,
    742 F.3d 576 (5th Cir. 2014)

*Jensen v. Snellings*,                                                 6
    841 F.2d 600 (5th Cir. 1988)

*Johnson v. CHL Enterprises*,                                          14
    115 F. Supp. 2d 723 (W.D. La. 2000)

*Jordan v. Employee Transfer Corp.*,                                   10
    509 So.2d 420 (La.1987)

*Klein v. O'Neal, Inc.*, Civil Action No.                              7
    7:03-CV-102-D (N.D. Tex. May 22, 2008)

*La Plaque Corp. v. Chevron United States A. Inc.*,                    10
    638 So.2d 354 (La. Ct. App. 1994)

*Lucas v. Commercial Union Insurance Company*,                         9
    198 So.2d 560 (La.App. 1st Cir.1967)

*Nida v. State Farm Fire & Casualty Company*,                          15
    454 So.2d 328 (La.App. 3 Cir.1984)

*Pursell v. Kelly,*                                                    13
    244 La. 323, 152 So.2d 36 (1963)

*Reed v. General Motors Corp.*,                                        9
    400 So.2d 919 (La.App. 1st Cir.1981)

*Richards v. Choice Hotels Int'l Inc.*                                 9, 11
    142 So.3d 249 (La.App. 5th Cir. 2014)

*Ross v. C. Adams Const. & Design, L.L.C.*,                            15
    70 So.3d 949 (La. Ct. App. 2011)

*Shah v. Moss,*                                                        7
    67 S.W.3d 836 (Tex. 2001)

*Shirey v. Campbell*,                                                  8
    151 So.2d 557 (La. Ct. App. 1963)

*Smith v. H.J. Landreneau Building Contractor, Inc.,*     12
      426 So.2d 1360 (La.App. 3 Cir. 1983)

*Stapleton v. Kawasaki Heavy Industries, Ltd.,*     17
      608 F.2d 571 (5th Cir.1979)

*Templeman Bros. Lumber Co., Inc., v. Fairbanks, Morse Co.,*     15
      129 La. 983, 57 So. 309 (La.1911)

*Tolan v. Cotton,*     3
      134 S. Ct. 1861 (2014)

*Trahan v. BP Am. Prod. Co.,*     16
      209 So. 3d 166 (La. Ct. App. 2016)

*Trustees of Nw. Laundry Dry Cleaners Health Welfare Trust Fund v.*     6
*Burzynski,*
      27 F.3d 153, 157 (5th Cir. 1994)

*Tuminello v. Mawby,*     15
      57 So. 2d 666 (La. 1952)

*Watters v. Dep't of Soc. Servs.,*     10
      102 So.3d 118 (La. 2012)

*Wilkerson v. Dunham,*     10
      218 So.3d 743 (La. Ct. App. 2017)

*Winterrowd v. Travelers Indemnity Co.,*     16
      462 So.2d 639 (La.1985)

*Zumo v. R.T. Vanderbilt Co. Inc.,*     9
      527 So.2d 1074 (La. Ct. App. 1988)

**Louisiana Code**

La.C.C. Art. 2534     11
La.C.C. Art. 2545     11
La.C.C. Art. 2546     11
La.C.C. Art. 3492     9

**United States Code**

15 U.S.C. § 2051     5

15 U.S.C. § 2052(a)(5)                                              5
15 U.S.C. § 2064(b)                                                6

**<u>Other</u>**

Fed. R. Civ. P. 56(a)                                              3

Plaintiffs Bessie Barnett, Gwendolyn Bierria and Stephanie Fortenberry (herein "Plaintiffs" or "Plaintiff"), by and through the undersigned counsel of record, oppose the motion for summary judgment filed by the Taishan Defendants (Rec. Doc. 23252) and adopted by BNBM Defendants (Rec. Doc. 23253). As grounds, Plaintiffs offer the following:

## I.   FACTUAL AND PROCEDURAL BACKGROUND

### A. Establishment of MDL 2047.

From 2004 through 2006, a housing boom in parts of the United States and rebuilding efforts necessitated by Hurricanes Rita and Katrina in the Gulf South led to a shortage of construction materials, including drywall. As a result, drywall manufactured in China was brought into the United States and used to construct and refurbish homes in coastal areas of the country, notably the Gulf and East Coasts. Sometime after the Chinese-manufactured drywall was installed, homeowners began to complain of foul-smelling odors, the corrosion and blackening of metal wiring, surfaces, and objects, and the breaking down of appliances and electrical devices in their homes. *See* In re Chinese-Manufactured Drywall Prods. Liab. Litig., 894 F. Supp. 2d 819, 829–30 (E.D. La. 2012), aff'd, 742 F.3d 576 (5th Cir. 2014). Many of these homeowners also began to complain of various physical afflictions believed to have been caused by the Chinese-manufactured drywall.

These homeowners then began to file suit in various state and federal courts against homebuilders, developers, installers, realtors, brokers, suppliers, importers, exporters, distributors, and manufacturers who were involved with the Chinese-manufactured drywall. Because of the commonality of facts in the various cases, this litigation was designated as a multidistrict litigation.

Pursuant to a Transfer Order from the United States Judicial Panel on Multidistrict Litigation ("JPML") on June 15, 2009, all federal cases involving Chinese-manufactured drywall were consolidated for pretrial proceedings in MDL 09-2047 before this Court.

Since the inception of MDL-2047 in June of 2009, numerous cases have been consolidated, containing thousands of claims; over 20,000 records docs have been entered into the record, millions of documents exchanged in discovery, dozens of depositions, and over 30 Pretrial Orders have been issued; the Court has appointed steering committees and liaison counsel for plaintiffs, homebuilders, insurers, installers, and manufacturers; it has presided over monthly status conferences, hearings, and several bellwether trials.

### B. The Brooke Complaint and Plaintiffs.

This action was originally filed in in 2015 as a class action complaint with the style *Stephen and Diane Brooke, et al. v. The State-Owned Assets Supervision and Administration Commission of the State Council, et al*. on behalf of plaintiffs and other similarly situated owners and residents of real property in Louisiana containing defective Chinese manufactured drywall that was designed, manufactured, imported, exported, distributed, delivered, supplied, inspected, marketed, sold and/or installed by multiple manufacturing defendants.

After a class action settlement was reached with the Taishan Defendants, a number of individual plaintiffs opted-out, including all of the Plaintiffs remaining in this action.  The three opt-out Plaintiffs included in this motion have Louisiana properties affected by Defendants' products and their claims were excluded from the class settlement process.  The Defendants have now filed an answer to the amended complaint and discovery has concluded. The remaining issue is the resolution of Plaintiffs' claims.   Plaintiffs amended their complaint to include those compensable claims allowable under Louisiana and/or federal law.

## II. STANDARD OF REVIEW

Summary judgment is only warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In making the determination, "all justifiable inferences are to be drawn in [the non-movant's] favor." *Tolan v. Cotton*, 134 S. Ct. 1861, 1863 (2014) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). The movant may argue that "there is an absence of evidence to support the nonmoving party's case," *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986), but "it is never enough simply to state that the non-moving party cannot meet its burden at trial," *Clark v. Coats & Clark, Inc*., 929 F.2d 604, 608 (11th Cir. 1991). If the non-moving party provides more than a mere "scintilla of evidence" demonstrating that "the jury could reasonably find for the plaintiff," it will defeat the motion. *Anderson*, 477 U.S. at 252. This can be done by pointing out where the record "contains supporting evidence . . . which was 'overlooked or ignored' by the moving party." *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1116 (11th Cir. 1993) (citing *Celotex*, 477 U.S. at 332 (Brennan, J., dissenting)).

## III.   ARGUMENT

Defendants have moved this court for an order granting summary judgment in their favor based solely on the issue of prescription.  In order to prevail with a summary judgment motion, Defendants must demonstrate the claims are prescribed because they were filed beyond the one-year period allowed by Louisiana law.  Defendants have provided no basis for this court to rule in their favor – the evidence simply doesn't support their legal argument; thus, this Court should deny Defendants' motion.

A. **PRESCRIPTION**

Defendants argued in their summary judgment motion that Plaintiffs' claims are prescribed because they allegedly knew that their homes had Chinese drywall or that Plaintiffs should have known based essentially on the fact that the drywall was installed prior to the verified date of discovery.  Defendants omitted from their argument that they were aware of the defective nature of their drywall product in the United States, yet provided no notice to the Consumer Product Safety Commission, no notice to any Louisiana state agency, no notice to contractors, no notice to Louisiana distributors of their defective product, and no notice to homeowners in Louisiana for the properties that might contain the defective Taishan/BNBM drywall products.   In fact, rather than issue a product recall or initiate a corrective action plan as required by the U.S. Code, Defendants no action other than defend claims in this Chinese drywall litigation.

As the argument states in Section III(a)(5), *infra*, Chinese drywall is a latent defect and both the date of discovery and the associated prescription period start only after the manufacturer's markings are located and identified.  In addition, the reasonableness of Plaintiffs' actions taken at the time of purchase (or since purchase) are jury questions.  Because the Taishan and BNBM entities never notified the Consumer Product Safety Commission about the sale of their defective product in the United States of America, never initiated a product recall, never warned distributors, never notified contractors, never notified homeowners, and actively concealed the nature of the product defect and the extent of the distribution of their defective product, Defendants violated both federal law and Louisiana law.  Indeed, because Defendants have taken not action to warn, they remain in violation of federal Louisiana law to this very day.

Under both Louisiana law and federal law, manufacturers have a post-sale duty to warn consumers regarding any defective product of theirs placed into the stream of

4

commerce in the State of Louisiana.  Failure to warn of the nature of the defect by

Defendants (rather than notifying the CPSC and all affected parties) is the act of concealment

that tolls statutory limitations periods from running under Louisiana law.

1.  **Defendant Taishan's failure to report the sale of its defective product to the CPSC and actively concealment of the nature of the defect tolls the prescriptive period for Plaintiffs.**

Under federal law, manufacturers of defective products sold in the United States fall

under the purview of the Consumer Product Safety Act. 15 U.S.C. § 2051, *et seq*.  Enacted in

1972, CPSA is a federal statute, establishing the Consumer Product Safety Commission

("CPSC").  The Act also defines CPSC's basic authority and authorizes the agency to develop

standards and bans. It also gives CPSC the authority to pursue recalls and to ban products under

certain circumstances.  The purpose of the Act was defined as:

> (1)  to protect the public against unreasonable risks of injury associated with consumer products;
> (2)  to assist consumers in evaluating the comparative safety of consumer products;
> (3)  to develop uniform safety standards for consumer products and to minimize conflicting State and local regulations; and
> (4)  to promote research and investigation into the causes and prevention of product-related deaths, illnesses, and injuries.

15 U.S.C. § 2051(b).

The Act defines "consumer product" to mean "any article, or component part thereof,

produced or distributed (i) for sale to a consumer for use in or around a permanent or temporary

household or residence, a school, in recreation, or otherwise, or (ii) for the personal use,

consumption or enjoyment of a consumer in or around a permanent or temporary household or

residence, a school, in recreation, or otherwise." 15 U.S.C. § 2052(a)(5).  Without question,

drywall or gypsum board falls under the oversight of the CPSC; therefore, the reporting

requirements apply to the Taishan/BNBM Defendants.  The CPSC publishes a recall handbook

outlining the steps for a manufacturer to take once it learns of a product defect. (a copy of the CPSC Recall Handbook is attached hereto as Exhibit A). It is an undisputed fact that the Taishan Defendants did not report their defective product as required by federal law and they remain in violation of this law to this very day.

The CPSA provides that when a manufacturer has reason to know its product does not meet safety standards, contains a defect, or creates an unreasonable risk of death or injury, it must inform the CPSC. 15 U.S.C. § 2064(b). There is no grey area – ***they must report the defect***. Defendant Taishan was certainly aware of the problems their defective drywall as early as 2009 when they were served with the first defective drywall lawsuit in the U.S. Rather than report the defect as required by federal law, Defendants chose to conceal the problem and not notify the CPSC; instead, they took no action to address the problem they created. This is an act of concealment by violating their duty under federal law

Defendants completed failure to notify Louisiana consumers while continuing to market their product as compliant with U.S. standards is an act of fraudulent concealment. "The doctrine of fraudulent concealment contains two elements which a plaintiff must prove. First, the defendant concealed the conduct complained of; and, second, despite the exercise of due diligence, plaintiff failed to discover the facts that form the basis of his claim." *Camsoft Data Systems Inc. v. Southern Electronics Supply Inc*., (La. Ct. App. 2019); *citing Jensen v. Snellings*, 841 F.2d 600, 607 (5th Cir. 1988). It is generally recognized that the prescription period is tolled if the defendant has engaged in "affirmative acts of concealment." *Id*. The Fifth Circuit held that "[a] passive failure to disclose a fact is fraudulent "only if the defendant has a duty to disclose that fact." *Trustees of Nw. Laundry Dry Cleaners Health Welfare Trust Fund v. Burzynski,* 27 F.3d 153, 157 (5th Cir. 1994). Defendants had a duty to disclose as the CPSA plainly states.

Fraudulent concealment is an equitable doctrine based on the premise that "fraud vitiates whatever it touches." *Klein v. O'Neal, Inc.*, Civil Action No. 7:03-CV-102-D, at *10 (N.D. Tex. May 22, 2008); *citing Borderlon v. Peck,* 661 S.W.2d 907, 909 (Tex. 1983). The defense is established where a defendant knows it has committed a wrong, intends to conceal that wrong, and successfully does so. *See Shah v. Moss,* 67 S.W.3d 836, 841 (Tex. 2001).

Louisiana courts have long held that when a party against whom a cause of action exists, by fraud or actual fraudulent concealment prevents the party in whose favor it exists from obtaining knowledge of it, the prescriptive statutory period only commences to run from the time the right of action is discovered, or might, by the use of diligence, have been discovered. *Hyman v. Hibernia Bank & Trust Co*., 71 So. 598, 602, 139 La. 411 (La. 1916). Given Defendants' violation of their duty of disclosure under federal and Louisiana law that continues to this very day, the prescriptive period for Plaintiffs was tolled until actual knowledge of the cause of action occurred on the date of discovery.  Defendants have provided nothing to demonstrate that they should be afforded a prescription defense based on a thin theory of constructive knowledge.

## 2. Equitable estoppel also prevents Defendants from benefitting due to their choice to intentionally conceal information regarding their defective drywall.

The principles of equitable estoppel are applicable here to prevent the Defendants from taking unfair advantage of homeowners who may have only received limited or inaccurate information about the defective Taishan/BNBM-manufactured drywall through some source other than the CPSC or from Defendants during a product recall.  Suggesting that a homeowner with no experience or knowledge about Chinese drywall should have known to look for the latent defect when purchasing a home is absurd.  Defendants possessed the most accurate information about their defective product, yet did not report the defect to the CPSC, did not initiate a corrective action plan (i.e., recall) with CPSC oversight, and did not notify Plaintiffs or

anyone in the State of Louisiana about the potential defect; consequently, Defendants cannot shirk their post-sale duty to warn consumers or shift their burden to report the defect in their own products.

In Louisiana, "equitable estoppel is the effect of the voluntary conduct of a person whereby he is barred and precluded, both at law and in equity, from asserting rights against another person relying on such conduct; and it arises where a person, by his acts, representations or admissions, or even by his silence when it is his duty to speak, intentionally or through culpable negligence, induces another to believe that certain facts exist and the other person rightfully relies and acts upon such belief and will be prejudiced if the former is permitted to deny the existence or the truth of such facts." *Shirey v. Campbell*, 151 So.2d 557, 559-60 (La. Ct. App. 1963).  Failure to speak when under some duty to speak is precisely what occurred here after Defendant learned that its drywall was defective, yet concealed the defect from everyone. Intent is an essential element of equitable estoppel. *Id*.  Thus, it is essential to equitable estoppel that the matters claimed to create it were intended to lead the other party to act thereon or that there were reasonable grounds to anticipate that he would so act. *Id*.  Defendants' intention to minimize its legal exposure and seek pecuniary gain by choosing to conceal their defective product rather than issue a product recall or specific warning to potentially-affected homeowners is evident.

Equitable estoppel colors all legal defenses and all assertions regarding Plaintiffs damages or documentation offered by Plaintiffs in support of damages being sought.  It also causes Plaintiffs' prescriptive period to toll.  Defendants are equitably estopped from arguing Plaintiff's supporting evidence or date of discovery is deficient in any way, because Defendants

have failed to provide proof that a warning was issued at any time to any consumer; thus, a trier

of fact must ultimately decide the impact of Defendants' concealment of their product's defect.

### 3. Plaintiff's product liability claims are timely filed.

Louisiana law establishes a one-year prescription period for filing claims related to

defective Chinese drywall from the date of discovery.  In 1988, the Louisiana Court of Appeals

issued an opinion clarifying the law applicable to defective product applicable in this case:

> "The prescriptive period applicable to product liability cases is one year from the
> date damages are sustained. La.Civ.Code art. 3492. Prescription does not
> commence until the plaintiff has actual or constructive notice of the tortious act, the
> resulting damage and the causal connection between the two. *Reed v. General
> Motors Corp.*, 400 So.2d 919 (La.App. 1st Cir.1981), writ denied, 406 So.2d 625
> (1981). If it appears on the face of the pleadings that more than one year has elapsed
> between the occurrence of the tort and the filing of suit, the plaintiff has the burden
> of establishing an interruption or suspension of prescription. *See, Lucas v.
> Commercial Union Insurance Company*, 198 So.2d 560, 565 (La.App. 1st
> Cir.1967); *Dixon v. Houck*, 466 So.2d 57, 60 (La.App. 2d Cir.1985). However, in
> Louisiana prescription statutes are subject to the discovery rule embodied in the
> doctrine of *contra non valentem*, to the effect that prescription does not run during
> a period in which the cause of action was not known or reasonably knowable to the
> plaintiff. *Griffin v. Kinberger*, 507 So.2d 821 (La.1987)."

*Zumo v. R.T. Vanderbilt Co. Inc.*, 527 So.2d 1074, 1077 (La. Ct. App. 1988).

The concept of *contra non valentum* is short for "*contra non valentum agree nulla currit

praescriptio,*" which is Latin for: a prescription does not run against one who is unable to act.

*Contra non valentum* is a legal principle recognized in Louisiana that means the statute of

limitations is not applicable, or a prescriptive period does not begin to run, against a plaintiff

where: (1) some legal cause prevented a court or its officer from acting on a plaintiff's action; (2)

some condition associated with the litigation process prevented the plaintiff from acting; (3) the

defendant prevented the plaintiff from acting; or (4) the plaintiff is ignorant of the injury caused

by the defendant, and his or her ignorance is not due to negligence, unreasonableness, or a

willful act.  *See, e.g., Richards v. Choice Hotels Int'l Inc*. 142 So.3d 249, 252 (La.App. 5th Cir.

2014). The rule of prescription is subject to the discovery rule of *contra non valentum* and suspends the running of prescription during the period in which the cause of action was not known by or reasonably knowable by the plaintiff. *Harlan v. Roberts*, 565 So.2d 482 (La.App.2d Cir.1990), writ denied, 567 So.2d 1126 (La.1990).  The doctrine of *contra non valentum* was created as an exception to the general rules of prescription. *Watters v. Dep't of Soc. Servs*., 102 So.3d 118, 131 (La. 2012).

In *Jordan v. Employee Transfer Corp*., 509 So.2d 420 (La.1987), the Louisiana Supreme Court clarified its application of *contra non valentum* and held that prescription begins to run, not at the earliest possible indication that the plaintiff may have suffered some wrong, but rather **when the plaintiff has a reasonable basis to pursue a claim against a specific defendant**.  *See La Plaque Corp. v. Chevron United States A. Inc*., 638 So.2d 354, 356 (La. Ct. App. 1994) (emphasis added).  The discovery rule, which is encompassed in the fourth category of *contra non valentum*, provides that "prescription does not begin to run until plaintiff knows sufficient facts and has a reasonable basis for filing suit against a certain defendant." *Wilkerson v. Dunham*, 218 So.3d 743, 749 (La. Ct. App. 2017).

Here, Plaintiffs filed claims less than one year after discovering the presence of Taishan's defective drywall in their affected property; therefore, their claims were timely filed. Defendants have urged the Court to grant summary judgment in this instance because, they allege, Plaintiffs learned that the affected Properties contained Taishan's defective product much earlier than Plaintiffs acknowledge, but that is clearly in conflict with Plaintiff's discovery responses and deposition testimony.  Plaintiffs affirmed at deposition that discovery of the Taishan-manufactured drywall occurred within one year of filing a claim. Plaintiffs also executed a

verified Plaintiff Profile Form and Supplemental Plaintiff Profile Form, under penalty of perjury, affirming the very same date of discovery.

*Contra non valentum* is an "equitable doctrine of Roman origin, with roots in both civil and common law," designed to avoid the harshness of applying prescription where the plaintiff has been prevented from timely filing suit. *Carter v. Haygood*, 892 So.2d 1261, 1268 (La. 2005). The application of *contra non valentum* does not require "extraordinary circumstances," and it is regularly applied by Louisiana courts. *Id*.  It should be applied in this situation as well, since Plaintiffs filed their claims within one year of discovery of Defendants' product in their home. None of the thin evidence presented by Defendants establishes any knowledge regarding Chinese drywall prior to the date that Plaintiffs have stated in their verified discovery responses.

**4.   Product liability claims are subject to the discovery rule in Louisiana.**

Plaintiffs' prescription period did not begin to run when the property was purchased. Under Louisiana law, a cause of action accrues or begins to run for purposes of the prescription period if the plaintiff is ignorant of the injury caused by the defendant, and his or her ignorance is not due to negligence, unreasonableness, or a willful act.  *See, e.g., Richards v. Choice Hotels Int'l Inc*. 142 So.3d 249, 252 (La.App. 5th Cir. 2014).  Product liability claims are subject to an exception in which the accrual of the cause of action is delayed until the plaintiff either knows or should know that the cause of action occurred as the application of *contra non valentem* holds. *Id.*.  Louisiana's discovery rule applies to defective Chinese-manufactured product liability claims, including actions in redhibition.

La.Civ.Code art. 2534 provides that a buyer's action in redhibition prescribes one year from the date of sale if the seller has no knowledge of the latent defects. La.Civ.Code arts. 2545 and 2546 are an exception to La.Civ.Code art. 2534. They provide that the buyer's action in redhibition prescribes one year from the date of discovery of the defects *if* the seller has

knowledge of the latent defects but omits to declare it. Furthermore, the jurisprudence of

Louisiana is well settled that the builder or the manufacturer is presumed to know the defects in

the articles he constructs or manufactures. *Smith v. H.J. Landreneau Building Contractor,*

*Inc.,*426 So.2d 1360 (La.App. 3 Cir. 1983) and cases cited therein. Louisiana law provides for:

(1) imputation of knowledge to a vendor; and (2) holding a vendor to be a manufacturer. The

result insofar as a prescriptive period is concerned is the same. For example:

> [I]f knowledge of a defect is imputed to a vendor, the vendor will be considered a
> bad faith seller. Therefore, prescription begins to run one year from the date of
> the discovery of a defect. However, if the vendor is considered a manufacturer, a
> conclusive presumption applies that the manufacturer knew of the vices of the thing
> it made and prescription begins to run **one year from the date of the discovery of
> the defect**.

*Chastant v. SBS-Harolyn Park Venture*, 510 So. 2d 1341, 1343-44 (La. Ct. App. 1987)
(emphasis added).

Two cases decided by the Louisiana Supreme Court in 2010 provide us with guidance in

determining when a plaintiff should be deemed to have actual or constructive knowledge

sufficient to commence prescription in a property damage case. In *Hogg v. Chevron USA Inc.*,

the Louisiana Supreme Court reversed a trial court's denial of the defendants' motion for

summary judgment based on prescription in a case brought by five plaintiffs who alleged that

their immovable property had been contaminated from three formerly leaking underground

gasoline storage tanks at a Chevron service station operating on neighboring property.  *Hogg v.*

*Chevron USA Inc.*, 45 So.3d 991 (La. 2010). After the tanks were replaced in 1997, the plaintiffs

received two letters from the Louisiana Department of Environmental Quality (LDEQ)

informing them that environmental contamination had been detected near the Chevron station

and that they may later be asked for permission for access to their property for testing purposes.

In a second letter dated April 26, 2002, the LDEQ informed the plaintiffs that due to the results

of air sampling at a stream near Burt's Chevron, some of which sampling was taken on

their property, they should limit the time spent in that area. *Id. The* Louisiana Supreme Court

ultimately held that the letters should have provided a reasonable person knowledge and held

sufficient for summary judgement. On the merits, the Louisiana Supreme Court concluded that

the information contained in the LDEQ letters "was sufficient to excite attention and put a

reasonable person on guard to call for inquiry, which is the essence of constructive knowledge,"

and that "plaintiffs' inaction in light of such action was unreasonable." *Id.* at 1001. Ultimately,

the *Hogg* court found that "[w]ith the receipt of the second letter from LDEQ in 2002, the

plaintiffs acquired constructive knowledge of the damage to their immovable property sufficient

to commence the running of prescription." *Id.* In the instant case, Plaintiffs received no letters

from Defendants and had neither actual nor constructive knowledge of defective Chinese drywall

in their respective affected Properties.  It is a fact that Defendants issued no product recall and

sent no warning letters to potentially-affected property owners in Louisiana.

The prescription period on a products liability claim begins to run only when the plaintiff

knows or should have known of a causal connection between a distinct injury caused by the

product in question during exposure.  In this instance, Defendants cannot demonstrate that

Plaintiff, who are laymen, should have known that the home contained defective drywall made

by Defendants or that they were being exposed to off-gassing from drywall.

Louisiana courts have devised a reasonableness standard to determine whether a defect is

apparent upon simple inspection, inquiring whether a reasonably prudent buyer acting under

similar circumstances would have discovered the presence of the defect. *See Pursell v. Kelly,* 244

La. 323, 152 So.2d 36, 41 (1963); *Crow v. Laurie,* 729 S.2d 703, 707-08 (La.App. 1st Cir. 1999).

"Whether an inspection is reasonable depends upon the facts of each case and includes such

factors as the knowledge and expertise of the buyer, the opportunity for inspection, and the assurances made by the seller." *Johnson v. CHL Enterprises*, 115 F. Supp. 2d 723, 728 (W.D. La. 2000). Defendants have not presented any tangible evidence to rebut Plaintiff's discovery responses regarding the date of discovery of the defective Taishan/BNBM product, either actually or constructively at an earlier identifiable date.

It is an unreasonable position that some unidentified smell or corrosion places a homeowner on notice that her home contains defective drywall. In Louisiana, like any southern state, there could be any number of environmental sources causing a smell. In addition, there could be environmental sources causing corrosion such as well water or a water supply with a high sulfur content. It is not an unreasonable explanation for a "smell" to be present in and around a Louisiana home caused by an environmental source outside the home.

It is an undisputed fact that Plaintiffs have no expertise in construction, environmental contaminants, or defective Chinese drywall. It takes an inspection by an experienced drywall inspector to confirm the existence of defective Chinese-manufactured in a property. In addition, not every homeowner is prepared to pay a fee between $500.00 and $2,000.00 for a thorough inspection of their home for the presence of defective drywall manufactured by Taishan/BNBM. "Discovery" under Louisiana law occurs when the manufacturer's markings are found and confirmed by an experienced inspector or some other person with expertise, not at any point earlier. This would be the causal connection to the possible injury. Reliance on an argument that Plaintiff acted unreasonably to discover the drywall at an earlier date is a genuine difference regarding a material fact in which a trier of fact could find that Plaintiff acted reasonably. It is certainly possible for a trier of fact to find that Plaintiffs' actions prior to discovery were reasonable; therefore, summary judgment must be denied.

**5. It is settled Louisiana law that defective Chinese-manufactured drywall is a latent defect.**

A latent defect is considered a defect that is hidden or concealed from knowledge, as well as from sight, and which a reasonable customary inspection would not reveal. *Nida v. State Farm Fire & Casualty Company*, 454 So.2d 328, 335 (La.App. 3 Cir.1984), writ denied, 458 So.2d 486 (La.1984). The Louisiana Court of Appeals, Fifth Circuit, has declared that defective Chinese-manufactured drywall is a latent defect, specifically finding:

> "We agree with [defendants] and find that the Chinese drywall that caused the damages sustained by the [plaintiffs] is a latent defect, which was hidden and unknown for [] years."

*Ross v. C. Adams Const. & Design, L.L.C.*, 70 So.3d 949, 954 (La. Ct. App. 2011).

Louisiana courts also have allowed plaintiffs to recover against manufacturers where a plaintiff learns of a latent defect years later. For instance, in *Templeman Bros. Lumber Co., Inc., v. Fairbanks, Morse Co.*, 129 La. 983, 57 So. 309, 315 (La.1911), the Louisiana Supreme Court overruled a plea of prescription of one year under Article 2534, and permitted a plaintiff, the purchaser of an engine, to recover monetary damages and specifically had this to say with reference to knowledge of the defect in the vendor:

> "The [product] in the present case consisted in the inadequacy of the [specific defective item], and in the defective installation of the machine. Of both of these defects the defendant must be held to have had full knowledge. The manufacturer of a machine is held to the knowledge of even latent defects and the inadequacy of the [specific defective item] must be held to have been patent to the defendant, though not to the plaintiff, since plaintiff was not supposed to have, and, in fact, had, no special knowledge of machinery. ***And the defendant must also be held to have known that the engine had been defectively installed. It was its duty to know it, and it had full opportunity to know it. It must, therefore, be presumed to have known it***."

*Tuminello v. Mawby*, 57 So. 2d 666, 668 (La. 1952) (emphasis added).

Given that Chinese drywall is a latent defect, knowledge regarding the defect is imputed to the Knauf Defendants, and the Knauf Defendants took no action.  Defendants sent no letters to homeowners or issued a product recall to warn Louisiana homeowners about their defective drywall products; consequently, Plaintiff detrimentally relied on the absence of warnings and purchased the property.  Defendants should be equitably estopped (See Section III(a)(2), *supra*) from making any argument regarding constructive knowledge of defect or inadequacy of records in support of Plaintiffs' damages claims.  All inferences must be taken in a light most favorable to Plaintiffs and Defendants' motion is due to be denied.

**6.  Defendants had a duty to warn Plaintiffs regarding defective nature of its drywall after the sale but chose to remain silent.**

Louisiana recognizes a manufacturer's post-sale duty to warn consumers of defective products. In 1985, the Louisiana Supreme Court decided a case that involved an injury occurring sixty-nine years after a defective product was manufactured and found in favor of a plaintiff where "a causal connection between the plaintiff's injuries and the manufacturer's failure to warn of a danger which it knew about since the time it built the [defective product]." *Winterrowd v. Travelers Indemnity Co.*, 462 So.2d 639, 641 (La.1985).  The Louisiana Supreme Court found that the manufacturer of the defective product violated its duty to warn "of any danger inherent in the normal use of its product which is not within the knowledge of an ordinary user." *Id.* at 642. *Winterrowd* stands for the proposition that "[l]ong delays between the actions of a defendant and the litigation of claims based on such actions are commonplace." *Trahan v. BP Am. Prod. Co.*, 209 So. 3d 166, 174 (La. Ct. App. 2016).

The Defendants argue that Plaintiff was allegedly on notice of the presence of the defective product produced by Knauf; however, Defendants fail to specify what notice Plaintiffs received.  What are the exact warnings that Plaintiff should have received from Defendants?

And, what date did Taishan/BNBM publish the warnings to consumers?  Defendant

Taishan/BNBM has failed to present anything specific that Plaintiff might have received.

Defendants could easily have sent warnings to potential recipients of its drywall – they're in

possession of business records that could have been used to identify all downstream purchasers

and ultimately the recipients of their product.  Defendants chose to take no such action to remedy

the problem they created.  In Louisiana, defective Chinese drywall manufacturers have a duty to

warn about certain risks even after a product is no longer in the manufacturer's possession and

has been transferred or sold to the consumer or end-user.

If Defendants' position is that a warning was given to Plaintiffs, they should produce that

warning.  Without a specific warning to Plaintiffs by Defendants or some downstream distributor

or agent, we are left without the ability to evaluate the terms of the warning for adequacy;

therefore, this Court must view the omission in a light most favorable to Plaintiffs and find a

material fact exists to be decided by a trier of fact regarding notice.

This is consistent with longstanding Louisiana law, which provides that "[t]he adequacy

of a particular warning is a question for the trier of fact, and should usually not be determined at

summary judgment." *See Stapleton v. Kawasaki Heavy Industries, Ltd*., 608 F.2d 571, 573 (5th

Cir.1979); *Bell v. Uniroyal Inc*., 696 So.2d 268, 270 (La. Ct. App. 4th Cir.1997).   Without any

specific warning by Defendants, this court must view the omission of a warning to consumers in

a light most favorable to Plaintiffs.

## IV.   CONCLUSION

This lawsuit was filed because Defendants manufactured defective drywall found in

Plaintiffs' property.  Louisiana appellate courts have found Chinese drywall to be a latent defect.

In addition, Defendants concealed the defective nature of their product which tolls the

prescriptive period for filing defective product claims in Louisiana.  After learning of the presence of defective drywall, Plaintiffs took swift action and filed their legal claims in the *Brooke* case, each within one year of discovery.  Thus, Plaintiffs timely filed and their claims are not prescribed.

For these reasons, Plaintiffs respectfully request an order denying Defendants' motions for summary judgment.  Plaintiffs timely filed their claims and they should be able to pursue a recovery as Louisiana law allows.

Respectfully submitted:

/s/ *James V. Doyle, Jr.*

James V. Doyle, Jr.
DOYLE LAW FIRM, PC
2100 Southbridge Pkwy., Suite 650
Birmingham, AL 35209
Tele: 205-533-9500
Fax: 844-638-5812
jimmy@doylefirm.com

*Attorney for Plaintiffs*

## **CERTIFICATE OF SERVICE**

I hereby certify that the foregoing Opposition has been electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana, by using the CM/ECF System, which will send a notice of electronic filing to all registered counsel of record on this 18th day of January, 2022.


/s/ *James V. Doyle, Jr.*

James V. Doyle, Jr.
DOYLE LAW FIRM, PC

19