# Exhibit A

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL NO. 2047 SECTION: L |
| THIS DOCUMENT RELATES TO: | JUDGE ELDON FALLON MAG. JUDGE NORTH |
| *Eduardo and Carmen Amorin, et al. v. Taishan Gypsum Co., Ltd. f/k/a Shandong Taihe Dongxin Co., Ltd., et al.,* 2:11-cv-1395-EEF-MBN | |

**PLAINTIFFS' FORMAL OBJECTION TO DAMAGES LIMITED TO DIMINUTION IN VALUE AND MEMORANDUM OF ALABAMA LAW APPLICALBE TO SECOND PHASE RULE 55(b) DAMAGES HEARING FOR <u>PLAINTIFF JOHN ANDREW CARTER AND PLAINTIFFS GENE & DARLA GIBBS</u>**

On November 4, 2021, during a telephonic status conference, the Court requested a briefing from Plaintiffs' counsel on Alabama law applicable to the Chinese drywall claims. In particular, the court was interested in whether the Chinese-manufactured drywall is considered a "product" after installation. Also, on November 4, 2021, this Court entered a minute entry (Doc. 23225) directing any party objecting to damages being limited to diminution in value to file a written objection and memorandum of law. Plaintiffs hereby formally object to the limitation on damages described in Rec.Doc. 23225. The following memorandum is intended to provide this court with the current applicable law in Alabama that allows Plaintiffs to pursue damages beyond diminution in property value.

**I.      INTRODUCTION**

There is no debate that drywall is a product when it is created by the manufacturing process; however, the law varies from state-to-state once the drywall is installed (i.e., "hung") in

1

a house.  In Alabama, the courts have found that "property" damages are limited to diminution in value and those damages cannot exceed the market value of home.  So, the central issue is whether Alabama considers drywall to be a product or property once installed.

The "upshot" of the drywall being a "product" rather than "property" after installation is that defective product claims have no limitation on compensatory damages.  A Plaintiff is free to pursue all available damages without regard to the value of the defective item, apart from the limitation on punitive damages.

If the drywall retains its classification as a "product" after installation, Plaintiffs may pursue all damages allowable under Alabama law utilizing legal claims of strict liability, nuisance, and breach of warranty, among others.  And, the available damages related to defective product, nuisance, and warranty claims are all compensatory, consequential, and even punitive damages.

## II.    ARGUMENT

### A. Under Alabama Law, A Product Incorporated Into a Home During Construction Only Becomes "Property" if Removal will Affect the "Structural Integrity" of the Home; Otherwise, it Retains its Classification as a Product.

In 2002, the Alabama Supreme Court addressed "[t]he question whether an item attached to realty may be considered a product for purposes of the AEMLD [Alabama Extended Manufacturer Liability Doctrine]" and ruled that the answer "must be based on the underlying policies of product-product liability law in Alabama, not on the law of fixtures." *Keck v. Dryvit Systems, Inc.*, 830 So. 2d 1, 6 (Ala. 2002) ("When considering whether an item attached to realty constitutes a "product" for purposes of the AEMLD, we must consider the overall function and life span of the item.") The court then went on to explain:

2

> The owner of a house or of any building should reasonably expect that many components will have the same useful life as the house or building itself and will not need to be replaced over the life of the building. Such components include, by way of example, an exterior brick wall, a staircase, or a fireplace. There are also certain components of a house or a building the purchaser reasonably expects to wear out and to require replacement in the course of normal and ordinary usage, such as roof shingles, a dishwasher, a furnace, or a hot-water heater. Whether an item that is incorporated into real property may be considered a "product" for purposes of the AEMLD is determined by whether the item is a part of ***the structural integrity*** of the house or building that is reasonably expected to last for the useful life of the house or building. If it is, then the item cannot be considered a "product" for purposes of the AEMLD. However, if the item is attached or incorporated into real property and, yet its very function and nature clearly makes it an item that one would reasonably expect to repair or to replace during the useful life of the realty, the item may be considered a "product" for purposes of the AEMLD.

*Keck v. Dryvit Systems, Inc.*, 830 So. 2d 1, 6 (Ala. 2002) (emphasis added).

Structural integrity deals with the ability of a structure to support a designed structural load (weight, force, etc.) without breaking. If a component supports the ability to hold the structure together under a load, including its own weight, without breaking or deforming excessively, then it is a structural component.

Drywall is routinely one of the last components of a home to be installed and drywall has no load-bearing capacity. Alabama courts have issued 29 rulings regarding items that are structural components and items which affect the "structural integrity" (roof, foundation, windows, siding, load bearing walls, stair case, framing) and drywall has not been mentioned once as a structural component. *See, e.g., Keck*, 830 So.2d at 6; See also, e.g., *Hutchenson v. Daniel*, 53 So. 3d 909, 913 (Ala. Civ. App. 2010) ("the construction of a retaining wall, patio, walkway, or sidewalk and the installation of flagstone or split face blocks thereon do not affect the structural integrity."). In addition, none of those cases have ever suggested that non-load bearing components in the interior of a structure lose their classification under Alabama law as products; therefore, it uncontroverted that drywall is installed in the interior of a structure and is

3

not a structural component.  Drywall plays no role in affecting the structural integrity of a home or building; consequently, drywall retains its classification as a product under Alabama law.

### B. The AEMLD Applies to Product Liability Cases in Alabama.

Product liability actions in Alabama are governed by the AEMLD.  The AEMLD is predicated on the strict liability doctrine promulgated by Section 402A of the Restatement (Second) of Torts ("Section 402A"), but the AEMLD has important differences.  The Alabama Supreme Court first articulated the AEMLD in *Casrell v. Altec Industries, Inc.*, 335 So.2d 128 (Ala. 1976) and *Atkins v. American Motors Corp.*, 335 So.2d 134 (Ala. 1976).  *See also* Ala. Code §605-500 *et seq*. (1993) (defining "product liability action").  In both cases, plaintiffs alleged that a defect in the product proximately caused the decedent's death.

The Alabama Supreme Court used *Casrell* and *Atkins* to announce the AEMLD, which includes the following principles: the manufacturer, the supplier, and the seller shall be subject to liability; and, a defendant who markets a product which is not reasonably safe when applied to its intended use in the usual and customary manner is negligent as a matter of law. *See Casrell*, 335 So.2d 132, 134; *Atkins*, 335 So.2d at 143.

After considering the no-fault liability concept from Section 402A, the court decided to retain the concept of fault.  In *Atkins*, the court explained the nature of fault under the AEMLD as follows:

> The gravamen of the action is not that the defendant failed to exercise due care in the manufacture, design, sale or placing in the commercial stream a defective product; rather, the gravamen of the action is that the defendant manufactured or designed or sold a defective product which, because of its unreasonably unsafe condition, injured the plaintiff or damaged his property when such product, substantially unaltered, was put to its intended use.

*Atkins v. American Motors Corp.*, 335 So. 2d 134, 139 (Ala. 1976)

A manufacturer, supplier or seller is subject to liability once the defective product is put "into the stream of commerce." *See First Nat. Bank of Mobile v. Cessna Aircraft*, 365 So.2d 966, 968 (Ala. 1978). In *Cessna*, the court also held that, "whether an actual sale had taken place or not, the manufacturer or supplier owed a special duty and responsibility to protect prospective customers. Not only does decisional authority emphasize the 'stream of commerce' in fixing liability, but it is also the more reasonable view. When a product is placed in the 'stream of commerce,' the marketing cycle as it were, whether by demonstration, lease, free sample or sale, the doctrine should attach." *First Nat. Bank of Mobile v. Cessna Aircraft*, 365 So. 2d 966, 968 (Ala. 1978)

In order to bring an AEMLD claim, a plaintiff must have suffered either bodily injury or damage to property, because one cannot recover in tort under the AEMLD for damage to the product itself. *See Lloyd Wood Coal Co. v. Clark Equipment Co.*, 543 So.2d 671, 672-73 (Ala. 1979).

### C. Breach of Warranty Claims are Allowed in Product Liability Cases in Alabama.

Traditionally, a plaintiff's ability to recover under breach of warranty theories was restricted due to privity and notice requirements. However, Alabama's adoption of the Uniform Commercial Code has made breach of implied warranty a viable products liability theory because it has eliminated the privity and notice requirements that previously existed. Ala Code (1975) §7-2-314 and §7-2-315 set forth the implied warranties of merchantability and fitness for a particular purpose. These warranties can attach to any consumer product unless excluded or limited by disclaimers meeting the requirements of Ala. Code (1975) §7-2-316. The Alabama Pattern Jury Instructions list the items of proof to establish a breach of warranty of merchantability a plaintiff must prove:

5

1. That the defendant was a merchant or seller with respect to goods of the same kind as the product or article in question, in this case _____;
2. The defendant sold the product or article in question;
3. That product or article in question was used for the ordinary purposes for which such products are used;
4. That the product or article in question was defective or unmerchantable, i.e., not fit for the ordinary purposes for which such products are used; and
5. That a defect or defects in the product or article proximately caused injury to the plaintiff.

*Alabama Pattern Jury Instruction* 3202.

In other words, a product is not merchantable if it is not "fit for the ordinary purposes for which such goods are used; ..." Ala. Code (1975) §7-2-314.  In fact, in products liability cases, the Alabama Supreme Court has defined "defective" as follows:

> 'Defectiveness' under the AEMLD has been defined by [the Alabama Supreme Court] to mean that the product does not meet the reasonable expectations or an ordinary consumer as to safety, *i.e.*, that the product is not reasonably safe for its intended purpose and use.

*Ammons v. Massey-Ferguson, Inc*. 663 So. 2d 961, 965 (Ala. 1995) (citing *Townsend v. General Motors Corp*., 642 So. 2d 411 (Ala. 1994); and *Casrell v. Altec Industries, Inc*., 335 So. 2d 128 (Ala. 1976)).  With the exception of the word "safe" the AEMLD definition of "defective" is identical to the requirements of merchantability set out in Ala. Code (1975) §7-2-314.  Therefore, in a breach of warranty claim, if a product does not meet the reasonable expectations of an ordinary consumer as to its intended purpose and use, the warranty of merchantability has been breached.  Unlike a claim for AEMLD (where a defendant is not in default), to establish that a product is not merchantable, a plaintiff does not need expert testimony.  *Tucker v. General Motors Corp.*, 769 So. 2d 895, 899 (Ala.Civ.App. 1998).

To prove a claim for breach of implied warranty of fitness for a particular purpose, a plaintiff must establish essentially the same elements as with the warranty of merchantability, but must also establish:

6

(1) The seller has reason to know the buyer's particular purpose;
(2) The seller has reason to know that the buyer is relying on the seller's skill or judgment to furnish the appropriate goods; and,
(3) The buyer, in fact, relied upon the seller's skill and judgment.

*Tucker v. General Motors Corp.*, 769 So. 2d 895, 901 (Ala.Civ.App. 1998).

Since a breach of warranty claim is essentially one of contract, punitive damages are not available in either a property damage or personal injury case. In most cases, the only damages available are those which place the plaintiff in a position he/she would have been in had the warranty not been breached. However, a plaintiff would be entitled to <u>incidental and consequential damages</u> arising out of the breach of warranty. (emphasis added).

### D. Abatement (i.e., Remediation) Damages are Recoverable Under Alabama Law for Nuisance Claims.

It has long been held in Alabama that abatement is a remedy available to plaintiffs experiencing a private nuisance. "A private nuisance gives a right of action to the person injured." *Hanna v. Harman*, 230 Ala. 620 (Ala. 1935). Over 100 years ago, the Alabama Supreme Court ruled that "[a] private nuisance is one limited in its injurious effects to one or a few individuals." *City of Selma v. Jones*, 202 Ala. 82, 83 (Ala. 1918). The 1975 update to the Alabama Code included a statute affirming the cause of action for private nuisance:

> Nuisances are either public or private. A public nuisance is one which damages all persons who come within the sphere of its operation, though it may vary in its effects on individuals. A private nuisance is one limited in its injurious effects to one or a few individuals. Generally, a public nuisance gives no right of action to any individual, but must be abated by a process instituted in the name of the state. A private nuisance gives a right of action to the person injured."

Ala. Code (1975) §6-5-121.

"The jurisdiction of the court to enjoin the erection or the continuance of private nuisances, compelling their abatement, at the instance of the party aggrieved, is well established." *City of Selma v. Jones*, 202 Ala. 82, 84 (Ala. 1918). Here, Defendants' defective

7

drywall product creates a private nuisance in the homes of Plaintiffs; therefore, a cause of action for nuisance may be maintained. In addition, Plaintiffs may pursue the abatement (remediation) of their homes due to the nuisance caused by Defendants.

In addition, a private nuisance means there has been a loss of the use or enjoyment of property without an actual physical invasion of that property. This Court has ruled on multiple occasions during the proceedings in MDL-2047 that loss of use and enjoyment may be recovered by Plaintiffs. The court has set $25,000.00/year as a fair and appropriate amount. See, e.g., the *Germano* Findings of Fact & Conclusions of Law Rec. Doc. 2380 at 106-108.

### E. Prejudgment interest

Under Alabama law, prejudgment interest accrues at a rate of 6%. See Ala. Code § 8-8-1. In tort actions, the accrual date is the date of injury. Where damages for the destruction or injury to property have an ascertainable money value it is proper to add to the damages interest from the date when the injury was done. *Mobile O. R. Co. v. Williams*, 219 Ala. 238, 248 (Ala. 1929); *Atlanta B. Air Line Ry. v. Brown*, 158 Ala. 607, 48 So. 73 (Ala. 1908); *Fuller v. Fair*, 202 Ala. 430, 80 So. 814 (Ala. 1919)(additional citations omitted). It is often stated that interest is not allowed on unliquidated demands. *Grand Bay Land Co. v. Simpson*, 207 Ala. 303, 92 So. 789. But this is not in all cases an accurate statement, for upon unliquidated demands interest is allowed before judgment when (a) the amount is capable of ascertainment by mere computation (17 C. J. 817; *Stoudenmeier v. Williamson*, 29 Ala. 558; *Demotte v. Whybrow* [C.C.A.] 263 P. 366; *Hart v. Am. Concrete Steel Co.* [D.C.] 278 F. 541, and the Alabama cases last above cited); and (b) "whenever it appears that the damage was complete at a particular time and is to be determined as of such time in accordance with fixed rules of evidence and known standards of value" (17 C. J. 820; *Atlanta B. Air Line Ry. v. Brown*, supra, and authorities cited above). The

rule is that for destruction or injury to property which has an ascertainable money value, it is proper to add to the damages interest from the date the injury was done. *Roe v. Brown*, 249 Ala. 425 (Ala. 1947); *Tennessee Coal, Iron R. R. Co. v. Jourdan*, 221 Ala. 106, 128 So. 132; *Mobile Ohio R. R. Co. v. Williams*, 219 Ala. 238 (21), 121 So. 722; *Alabama Power Co. v. Allen*, 218 Ala. 416, 118 So. 662; *Atlanta B. Air Line Ry. v. Brown*, 158 Ala. 607, 621, 48 So. 73.

Here, Plaintiffs suffered loss due to defective Chinese-manufactured drywall in their homes at the time the homes were purchased; consequently, prejudgment interest begins in 2006 for Plaintiffs.

## III.   CONCLUSION

For the reasons contained herein, Plaintiffs object to damages being limited to diminution in value. Because Alabama law classifies drywall as a product, all claims for strict liability, breach of implied warranties, and private nuisance are viable causes of action and the full compensatory damages associated with those claims, including prejudgment interest, should be recommended to the district court at the conclusion of the Second Phase Rule 55(b) damages hearing.

/s/ *James V. Doyle, Jr.*

James V. Doyle, Jr.
DOYLE LAW FIRM, PC
2100 Southbridge Pkwy., Suite 650
Birmingham, AL 35209
Tele: 205-533-9500
Fax: 844-638-5812
jimmy@doylefirm.com

*Attorney for Plaintiffs*

**CERTIFICATE OF SERVICE**

      The undersigned hereby certifies that on November 12, 2021, the foregoing was filed via email and electronically with the Clerk of Court to be served by operation of the Court's electronic filing system on all counsel of record.

/s/ *James V. Doyle, Jr.*
_____
James V. Doyle, Jr.
DOYLE LAW FIRM, PC