**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL NO. 2047 SECTION: L JUDGE FALLON MAG. JUDGE NORTH |
| THIS DOCUMENT RELATES TO: *Amorin, et al. v. Taishan Gypsum Co., Ltd., et al.*, Case No. 11-cv-1395 | |

**TAISHAN'S PRE-EVIDENTIARY HEARING BRIEF FOR THE ADJUDICATION OF DAMAGE CLAIMS BY DARLA AND GENE GIBBS AND JOHN CARTER**

# TABLE OF CONTENTS

Page

I.      INTRODUCTION ................................................................................................. 4

II.     PROCEDURAL AND FACTUAL BACKGROUND ........................................... 4
        A.      Procedural Background ............................................................................. 4
                1.      Chinese Drywall MDL and Global Class Settlement ................. 4
                2.      These Opt-Out Proceedings ....................................................... 6
        B.      Factual Background ................................................................................... 7

III.    LEGAL STANDARDS AND CHOICE OF LAW ............................................... 8
        A.      Adjudication of Damages Under Rule 55 ................................................ 8
        B.      Alabama Law Governs Plaintiffs' Damages Claims. ............................... 9

IV.     ARGUMENT ....................................................................................................... 9
        A.      Plaintiffs Must Prove Their Damages Using the Alabama Framework for
                Calculating Diminution in Value ............................................................. 9
        B.      Plaintiffs' Speculative Valuations are Not Sufficient to Satisfy Their
                Burden ..................................................................................................... 11
        C.      Any Damages Award Must Be Offset ................................................... 14

V.      CONCLUSION .................................................................................................. 14

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

C<small>ASES</small>

*Adams v. Lazy Dog Properties*,
   No. 12-cv-198, 2014 Colo. Dist. LEXIS 2231 (D. Colo. November 12, 2014) .....................12

*Aetna Life Insurance Co. v. Lavoie*,
   470 So. 2d 1060 (Ala. 1984) ..................................................................................................13

*Baldwin v. McClendon*,
   292 Ala. 43, 288 So.2d 761 (Ala. 1974) ...............................................................................12

*Crump v. Geer Bros., Inc.*,
   336 So.2d 1091 (Ala. 1976) ...................................................................................................10

*Dietz v. Consolidated Oil & Gas, Inc.*,
   643 F.2d 1088 (5th Cir. 1981) ...............................................................................................12

*Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*,
   973 F.2d 155 (2d Cir. 1992) ....................................................................................................8

*IMAC Energy, Inc. v. Tittle*,
   590 So.2d 163 (Ala. 1991) .....................................................................................................10

*James v. Frame*,
   6 F.3d 307 (5th Cir. 1993) .......................................................................................................8

*Jim Walter Corp. v. Knodel*,
   281 Ala. 173, 200 So.2d 473 (Ala. 1967) ..............................................................................12

*M C Bank & Trust Co. v. Suard Barge Serv.*,
   No. 16-14311, 2017 WL 3991076 (E.D. La. Sept. 11, 2017)...................................................9

*Mobil Expl. & Producing U.S., Inc. v. Cajun Const. Servs., Inc.*,
   45 F.3d 96 (5th Cir. 1995) .......................................................................................................8

*Poffenbarger. Dialysis Clinic, Inc. v. City of Dothan*,
   No. 1:10-CV-1051, 2012 U.S. Dist. LEXIS 156351
   (M.D. Ala. Nov. 1, 2012).........................................................................................................9

*Rooney v. Southern Dependacare, Inc.*,
   672 So. 2d 1 (Ala. 1995) ..........................................................................................................9

*Servicios-Expoarma, C.A. v Indus. Mar. Carriers, Inc.*, 135 F.3d 984 (5th Cir. 1998) .................8

*Seward v. Hamilton*,
   No. 09-cv-4125, 2010 U.S. Dist. LEXIS 8685 (E.D. La. January 20, 2010) .........................13

*United States v. Shipco Gen., Inc.*,
  814 F.2d 1011 (5th Cir. 1987) .............................................................................................8

**OTHER AUTHORITIES**

Alabama Pattern Jury Instructions - Civil (2nd ed.), § 11.26 ........................................................10

J. Marsh and C. Gamble, Alabama Law of Damages (5th ed. 2004), at § 33:1 ...........................10

I.      INTRODUCTION

In January 2020, thousands of claimants resolved their drywall claims against Taishan in a global class settlement approved by Judge Fallon. Plaintiffs Darla and Gene Gibbs and Plaintiff John Carter were among the small handful of claimants who opted out. Of the thousands of members in the *Amorin* class, these Plaintiffs are now the only two *Amorin* claims left in any court. Opting out of the settlement was Plaintiffs' right under Rule 23(e)(4). But Judge Fallon warned in his order granting final approval to the Taishan Class Settlement that opt-outs would face "inherent difficulties and uncertainties." Rec. Doc. 22460 at 47. Those risks included losing the advantages of a class proceeding and bearing the burden of proving each element of their damages in a contested Rule 55 proceeding. Despite those risks, Plaintiffs rejected the settlement and chose to litigate their claims.

Over the last year, this Court has given Plaintiffs multiple opportunities to develop (and rehabilitate) their damages proof, but they have failed to do so. Now, Plaintiffs come to this delayed evidentiary hearing without sufficient evidence to meet their burden to prove the only measure of damages available to them under Alabama law: diminution in property value. Plaintiffs chose an inherently difficult and uncertain path, and they have not overcome the challenge. The Court should deny Plaintiffs' damages claims under Alabama law.

II.     PROCEDURAL AND FACTUAL BACKGROUND

A.      *Procedural Background*

1.      **Chinese Drywall MDL and Global Class Settlement**

On June 13, 2011, the Plaintiffs Steering Committee ("PSC") filed the *Amorin* complaint in the Eastern District of Louisiana. That complaint sought a nationwide class of homeowners of real property located in the United States "containing problematic drywall manufactured, sold, distributed, and/or supplied by the Defendants." Louisiana *Amorin* Complaint, 2:11-cv-1395

at ¶ 119. In 2012, the PSC changed course and amended the *Amorin* Complaint to name thousands of specific claimants (instead of using a broad class definition) as the putative class members in an "Omnibus Class Action Complaint in Intervention." Rec Doc. 16225 (Omnibus Complaints XV, the "Intervention Complaint"). The Intervention Complaint attached a list of 4,072 alleged "class members" to the *Amorin* class-action complaint.

In 2014, the Court held Taishan in default in the *Amorin* Complaint. Rec. Docs. 17814 and 17815. Three months later, the Court certified a class consisting of only the identified *Amorin* plaintiffs, explicitly excluding "absent class member[s]." Rec. Doc. 18028 at 34-35. In 2015, Judge Fallon ordered a detailed process for adjudication of class damages for the *Amorin* class under Rule 55 and held a full evidentiary hearing. Rec. Docs. 18921, 19118, 20802. In 2017, the Court issued Findings of Fact and Conclusions of Law ("FOFCOL") regarding *Amorin* class damages. Rec. Doc. 20741.

In 2019, Judge Fallon issued "the *Amorin* trial plan" for Rule 55 adjudication of default damages for all *Amorin* claims in the MDL, including the Gibbs and Carter claims. Rec. Doc. 22251 at 1. Shortly after Judge Fallon issued his *Amorin* trial plan, the parties agreed to a class settlement to resolve all drywall claims in all cases against Taishan. In issuing final approval to the Taishan Class Settlement, Judge Fallon warned of the "inherent difficulties and uncertainties associated with pursuing" litigating a claim as an individual opt-out. Rec. Doc. 22460 at 47.

But Gene and Darla Gibbs opted out in October 2019, as did John Carter a few weeks later. The Gibbs and Carter claims were the only two *Amorin* claims in the MDL to opt-out. For these last remaining claims, Judge Fallon issued an *Amorin* Case Management Order on November 20, 2020, outlining "a litigation plan to determine Rule 55 damages for the two remaining claims." Rec. Doc. 22976 at 1. Judge Fallon ordered that an evidentiary hearing must "assess all damages

sought, including property and non-property damages claims." *Id.* Judge Fallon also ordered that the evidentiary hearing would follow the Federal Rules of Evidence and Local Rules of this Court." *Id.* at 2-3.  Judge Fallon referred the matter to Magistrate Judge North. Rec. Doc. 22976.

### 2.    These Opt-Out Proceedings

The parties have completed discovery, which is now closed. On March 1, 2021, the Court ordered the parties to submit their "respective proposed procedures for briefing, a potential evidentiary hearing, and post-hearing briefing." Rec. Doc. 23064. The evidentiary hearing for the Gibbs and Carter claims was set for March 31, 2021. Rec. Doc. 23067. But on March 29, 2021, after receiving the parties' exhibit lists and objections, the Court converted the March 31, 2021 evidentiary hearing to a hearing on Taishan's objections to Plaintiffs' exhibits instead.

At that hearing, the Court sustained Taishan's objection to the untimeliness of Plaintiffs' expert materials related to remediation/repair costs and held that diminution of value was "the sole measure of damages to real property under Alabama law." The Court stated that it was "loath to require Plaintiffs to attempt to prove diminution of value of their homes against a defaulted defendant with no evidence other than their testimony" and directed the parties to agree on a property appraiser who would determine the "respective fair market values today, with Chinese Drywall still in those homes" of the Gibbs and Carter properties. Although the parties were able to agree on an appraiser, Plaintiffs insisted that the appraiser not be informed that the properties contain Chinese Drywall before conducting the appraisals.

In April 2021, the appraiser returned property appraisals showing appreciation, not depreciation, of value.  On June 21, 2021, after briefing from the parties, the Court ordered Plaintiffs to obtain a new appraisal with an appraiser who would be aware of the presence of Chinese Drywall in the homes. The previous property appraiser declined to perform those revised appraisals – advising that she was not qualified to perform an appraisal on a home with Chinese

Drywall. The Court then ordered a status conference for July 8, 2021, but Plaintiffs' counsel did not attend. No activity in the case took place until October 5, 2021, when Plaintiffs filed a motion requesting that the Court take judicial notice of Judge Fallon's prior rulings on aggregate class damages and award Plaintiffs remediation damages under that class damages formula.

On November 4, 2021, the Court issued an order denying Plaintiffs' motion. The Court ruled that it "will not entertain evidence of estimated repair costs of the property at the evidentiary hearing." Rec. Doc. 23225 at 1. The Court also ruled that "[a]ny expert on estimated repair costs shall be excluded" and the Court will "accept only evidence pertaining to diminution of value of the property." *Id.* The Court permitted any party to object to that limited scope for the evidentiary hearing and submit a brief on Alabama law supporting their position. Plaintiffs filed an objection on November 12, 2021, which Taishan opposed. On February 4, 2022, the Court issued an order setting an evidentiary hearing "to determine the value of the diminution of Plaintiffs' homes" for March 15, 2022. Rec. Doc. 23280. That order had the effect of overruling Plaintiffs' objection and maintaining the previously articulated scope of the evidentiary hearing by stating that the Court "will accept only evidence pertaining to any diminution of value of the property." *Id* at 1-2.

### B.  *Factual Background*

Gene and Darla Gibbs purchased their house at 701 Waverly Place, Opelika, Alabama, in 2007. Their house was built by Plaintiff Carter's homebuilding company, which also built another house on adjacent property that is the subject of his claim. They have lived in the house continuously since 2007 and have never remediated it.

John Carter purchased undeveloped property in 2006 to build several houses. His self-owned LLC built a house at 703 Waverly Place next door to the Gibbses' house. Carter never lived in the house but signed a written lease to rent it to his mother, who paid him $600 a month from

May 2007 until she vacated the property around November 2011. The house has remained vacant since then. Carter has not remediated the property and has not attempted to find other renters.

## III.   LEGAL STANDARDS AND CHOICE OF LAW

### A.   *Adjudication of Damages Under Rule 55*

As the parties seeking damages, the Plaintiffs have the burden to show the fact and extent of an injury and to show the amount and value of the claimed damages. *Servicios-Expoarma, C.A. v Indus. Mar.* Carriers*, Inc.*, 135 F.3d 984, 995 (5th Cir. 1998) ("It is a basic concept of damages that they must be proved by the party seeking them."). After entry of default, the Plaintiffs are not entitled to have their damages allegations accepted as true. *See United States v. Shipco Gen., Inc.*, 814 F.2d 1011, 1014 (5th Cir. 1987) ("After a default judgment, the plaintiff's well-pleaded factual allegations are taken as true, except regarding damages."). And the Plaintiffs must prove damages by a preponderance of the evidence. *See Mobil Expl. & Producing U.S., Inc. v. Cajun Const. Servs., Inc.*, 45 F.3d 96, 101-02 (5th Cir. 1995). Courts have held that "a defaulting party must be permitted to contest the actual compensatory amount claimed with respect to any particular item of damages, including through proof of mitigation of damages." *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir.1992).

Diminution in property value is far from "liquidated" damages or damages capable of mathematical calculation. A sum capable of mathematical calculation is one that can be "computed with certainty by reference to the pleadings and supporting documents alone." *James v. Frame*, 6 F.3d 307, 311 (5th Cir. 1993) (internal citation omitted). Liquidated damages awarded under Rule 55 are usually contractual damages where the precise amount owed by the defaulted defendant is readily apparent from the pleadings and supporting contractual agreements. *See, e.g.*, *M C Bank & Trust Co. v. Suard Barge Serv.*, No. 16-14311, 2017 WL 3991076 (E.D. La. Sept. 11, 2017) (holding that damages from a loan agreement were liquidated damages capable of

8

mathematical calculation). By their very nature, property values fluctuate over years, months, and even days. Damages based on such dynamic bases are not readily calculable and cannot be "liquidated" under any definition.

      **B.**    ***Alabama Law Governs Plaintiffs' Damages Claims.***

It is undisputed that Alabama law applies to these claims. Alabama law requires these Plaintiffs to prove damages by a preponderance of the evidence. *See, e.g.*, *Rooney v. Southern Dependacare, Inc.*, 672 So. 2d 1, 13-15 (Ala. 1995).

It is black letter Alabama law that diminution in value is the only proper measure of property damages.[1] The Court has ruled that diminution in value is "the sole measure of damages to real property under Alabama law." Plaintiffs' damages are limited to a single issue: "the value of the diminution of Plaintiffs' homes." Rec. Doc. 23280 at 1.

**IV.**    **ARGUMENT**

      **A.**    ***Plaintiffs Must Prove Their Damages Using the Alabama Framework for Calculating Diminution in Value***

Under Alabama law, "[t]he proper measure of compensatory damages in a tort action based on damage to real property is the difference between the fair market value of the property immediately before the damage and the fair market value immediately after the damage." *IMAC Energy, Inc. v. Tittle*, 590 So.2d 163, 168 (Ala. 1991). As such, Alabama Pattern Jury Instructions explain the calculation of diminution in value as follows:

> The measure of damage for (injury)(damage) to real property is the difference in the reasonable market value of the land immediately

---

[1] One Alabama federal court examining Alabama law held the exclusive remedy of diminution damages in real property cases to be "a matter of hornbook law," "uncontroversial," and "quite well settled." *Dialysis Clinic, Inc. v. City of Dothan*, No. 1:10-CV-1051, 2012 U.S. Dist. LEXIS 156351, at *7-11 (M.D. Ala. Nov. 1, 2012) (citing *Poffenbarger. Dialysis Clinic, Inc. v. City of Dothan*, No. 1:10-CV-1051-WKW [WO], 2012 U.S. Dist. LEXIS 156351).

before its (injury)(damage) and the reasonable market value immediately after the (injury)(damage).

Alabama Pattern Jury Instructions - Civil (2nd ed.), § 11.26.

Thus, the Court's inquiry at the evidentiary hearing must focus on two data points: the reasonable market value of the Gibbs and Carter homes **_BEFORE_** the damage from Chinese Drywall (**Value <u>B</u>**) and the reasonable market value of those homes immediately **_<u>A</u>FTER_** the damage (**Value <u>A</u>**). Diminution in value is determined by subtracting **Value A** (the reasonable market value immediately *after* the damage) from **Value B** (the reasonable market value *before* the damage):

**Value B** (Reasonable market value **B**efore) ─ **Value A** (reasonable market value **A**fter)

=

**Value D (Diminution/Damages)**

Importantly, the values for B and A under Alabama law must be *reasonable*—an *objective* measure. In Alabama, "'[m]arket value' is defined as the price at which a willing seller would sell and a willing buyer would buy, neither being compelled to sell or to buy." J. Marsh and C. Gamble, Alabama Law of Damages (5th ed. 2004), at § 33:1; *see also Crump v. Geer Bros., Inc.*, 336 So.2d 1091, 1096-97 (Ala. 1976). Thus, to complete the Value B minus Value A equation to get to damages (Value D), the Plaintiffs' evidence must show objective market values for these two homes at those two distinct points in time (before and after the damage).

The record provides reasonable market value of the Gibbs and Carter homes for Value B: the market value *before* the damage. The evidence will show that Plaintiff Carter purchased his newly built home (at cost) for $101,934.38 in 2007. The evidence will also show that Plaintiffs Darla and Gene Gibbs purchased their newly built home for $167,807.50 in 2007 and that the home was appraised at $168,000 around the time of purchase. Those values provide sufficient

evidence of the reasonable market value of the Carter and Gibbs homes *before* the damage from Chinese Drywall.

But Plaintiffs have failed to develop *any* evidence to support a finding on Value A. The record contains no evidence to show any objective valuation of the homes' value *with* alleged damage from Chinese Drywall. Under Alabama law, Plaintiffs would need to tender evidence showing the reasonable market value of their homes after the damage occurred. Plaintiffs could have developed that evidence through a property appraisal that accounted for the presence of Chinese Drywall in the homes. Even after the close of discovery, both the Court and Taishan urged Plaintiffs to get an informed appraisal of their properties. But Plaintiffs declined. Instead, they insisted on a "blind" appraisal where the appraiser was told nothing about the presence of Chinese Drywall in the homes, while continuing to argue for remediation damages supported by an untimely expert report. The evidence will show that the recent blind appraisals reflect ***increased*** fair market value since their purchase in 2007.[2] Without reliable evidence of Value A (the reasonable market value *after* damage), Plaintiffs cannot meet their evidentiary burden to prove diminution in value damages.

### B.    *Plaintiffs' Speculative Valuations are Not Sufficient to Satisfy Their Burden*

The Court signaled that its extension of multiple opportunities to develop appraisal evidence arose from its hesitation to have all damages rely on Plaintiffs' subjective valuations. March 31, 2021 Minute Entry at 2 ("[the Court] is loath to require Plaintiffs to attempt to prove diminution in value of their homes against a defaulted defendant with no evidence other than their testimony"). To be sure, Alabama courts accept non-expert opinions on the value of real property

---

[2] The 2021 appraisals show a fair market value of $160,000 for the Carter home and $185,000 for the Gibbs home.

if the witness "has given special attention to land values and has had an uncommon occasion to know them." *Baldwin v. McClendon*, 292 Ala. 43, 288 So.2d 761, 768 (Ala. 1974); *see also Jim Walter Corp. v. Knodel*, 281 Ala. 173, 200 So.2d 473, 480 (Ala. 1967) ("[O]ne need not be an expert to testify as to value of real estate if he has had an opportunity for forming a correct opinion.").

But while it is undisputed that Plaintiffs' testimony about the value of their homes is *admissible*, the weight that should be given to that testimony, if any, depends on "the owner's knowledge of circumstances which affect value." *Dietz v. Consolidated Oil & Gas, Inc.*, 643 F.2d 1088, 1094 (5th Cir. 1981). Courts have found that a homeowner's own testimony can lack sufficient credibility and reliability to support a calculation of diminution of value where it is speculative and "not based on any appraisals or expert testimony." *See Adams v. Lazy Dog Properties,* No. 12-cv-198, 2014 Colo. Dist. LEXIS 2231 at *81 (D. Colo. November 12, 2014) (declining to award diminution in value damages where homeowners' testimony of home value lacked "substance and credibility"). Judge Mary Ann Vial Lemmon of this Court followed those principles when she dismissed a claim for diminution in value where the only proffered evidence was the plaintiffs' unsupported allegation that their property value had diminished by 20 percent. *Seward v. Hamilton*, No. 09-cv-4125, 2010 U.S. Dist. LEXIS 8685 at *6-7 (E.D. La. January 20, 2010).

The record shows that Plaintiffs do not have evidence or experience to substantiate any opinion that they may give at the hearing that their homes have lost value as a result of Chinese Drywall. Plaintiffs have never attempted to sell their homes since they purchased them in 2007. Deposition of Darla Gibbs (12/9/2020) at 76:17-24; Deposition of John Carter (12/11/2020) at 76:25 – 77:2. Without any sales, offers, appraisals or professional listing valuations by real

estate professionals since 2007, Plaintiffs have no basis for doing anything other than speculate what an arms-length buyer would be willing to pay for their homes with knowledge of the presence of Chinese Drywall.[3]

Plaintiffs' opinions as to the post-damage value of their homes are unreliable to determine diminution in value for additional reasons. Mr. Carter's property has been abandoned for over a decade with personal property left inside of the home. Carter Deposition (12/11/20) at 70:9-25. As a result, the home has fallen into disrepair, and any opinion on diminution in value of the property must account for its abandoned condition. Some diminution in value associated with the abandonment of the property is suggested by the 2021 appraisal of the Carter home, which was appraised at $160,000 compared to the nearly identical but occupied Gibbs home, which appraised at $185,000. By abandoning the property, Mr. Carter failed to mitigate his damages, which is required Alabama law. *Aetna Life Insurance Co. v. Lavoie*, 470 So. 2d 1060 (Ala. 1984) ("[T]he law imposes upon all parties who seek recompense from another a duty to mitigate their losses or damages."). If Mr. Carter testifies that the home is valueless to him, that subjective valuation would ignore that the property likely has value to a reasonable buyer – and value to a reasonable buyer is the measure required by Alabama law. Because Mr. Carter has not explored the possibility of selling or even renting his home and has not mitigated his own damages, his opinion as to the value of his home is not reliable to determine diminution in value.

Darla and Gene Gibbs have lived in and maintained their home for 15 years. Darla Gibbs Deposition (12/9/2020) at 86:2-4. The 2021 appraisal of their home shows an *increase* in value of

---

[3] The Court has held that Plaintiffs are not permitted to introduce evidence of "estimated repair costs of the property at the evidentiary hearing." Rec. Doc. 23280. To the extent that Plaintiffs attempt to introduce that evidence through their own testimony through reference to prior repair estimates, the Court should strike that hearsay testimony and decline to consider it in evaluating Plaintiffs' damage claims.

approximately $17,000 or 10% since they purchase the home in 2007. That appraisal, of course, does not account for the presence of Chinese Drywall in the home, but Mr. and Mrs. Gibbs have not attempted to sell their home, nor have they attempted to assess the fair market value of the home in any way. As with Mr. Carter, any subjective opinions they may offer as to value do not comport with the legal standard of objective reasonableness required by Alabama law. Accordingly, there is also no objective evidence of the reasonable market value of the Gibbs home in the record.

### C.   *Any Damages Award Must Be Offset*

In the event that the Court grants any damages to Plaintiffs, those damages must be offset by prior monies received.  It is undisputed that Plaintiffs received prior payments in this case from other parties in settlement of claims arising from the same facts and allegations at issue here. The Gibbses received $5,311.95 and Carter received $5,122.35. Those amounts serve as setoffs on damages awarded by the Court, if any are proved under Alabama law. *See* Rec. Doc. 22976 at 1 (including "requests for set-offs" among the charge designated to the Magistrate Judge in association with the evidentiary hearing to determine damages for these claims).

## V.   CONCLUSION

Among thousands of settling claimants, Plaintiffs were the only two *Amorin* opt-out claims in this MDL. Over two years ago, Judge Fallon warned all opt-outs about the inherent difficulties and uncertainties they would face. With that knowledge—and with extended time and opportunities—Plaintiffs still failed to develop any evidence of the reasonable market value of their homes after damage or any timely expert testimony.

While it may be a harsh result to find that Plaintiffs have failed to prove their damages and are not entitled to any award, it is the result that Alabama law requires. Last month, Judge Fallon granted Taishan summary judgment against the last three opt-out claims in the related *Brooke* case

in the MDL—represented by the same Plaintiffs' counsel as here—for failure to develop any evidence to support their claims, including a failure to submit timely expert reports. Rec. Doc. 23279. Judge Fallon called that failure "inexplicable given that this MDL has been proceeding for over twelve years." Plaintiffs' failure to develop their damages proofs here is similarly inexplicable given the passage of time, and especially given clear Alabama law as to the recoverable damages and the post-discovery deadline opportunities that the Court granted to Plaintiffs over the last year. Taishan respectfully requests that the Court deny Plaintiffs' damages claims.

Dated: March 4, 2022

Respectfully submitted,

/s Christina Hull Eikhoff
Christina Hull Eikhoff, Esq.
Georgia Bar No. 242539
David Venderbush, Esq.
New York Bar No. 2920817
ALSTON & BIRD LLP
1201 West Peachtree Street
Atlanta, Georgia 30309
Phone: (404) 881-7000
Fax: (404) 881-7777
christy.eikhoff@alston.com
*Counsel for Taishan Gypsum Co., Ltd. And Tai'an Taishan Plasterboard Co., Ltd.*

Alan Dean Weinberger
LA Bar No. 13331
HANGARTNER, RYDBERG & TERRELL, LLC
One Shell Square
701 Poydras St., Suite 310
New Orleans, Louisiana 70179
Phone: (504) 434-6815
Fax: (504) 522-5689
aweinberger@hanrylaw.com
*Local Counsel for Taishan Gypsum Co., Ltd. And Tai'an Taishan Plasterboard Co., Ltd.*

## <u>CERTIFICATE OF SERVICE</u>

       I hereby certify that the above and foregoing Pre-Hearing Brief via email on this 4th day of March 2022.

<u>/s Christina Hull Eikhoff</u>
Christina Hull Eikhoff, Esq.
*Counsel for Taishan Gypsum Co., Ltd. and*
*Tai'an Taishan Plasterboard Co., Ltd.*

16