UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br><br>*Amorin, et al. v. Taishan Gypsum Co., Ltd., et al.*, Case No. 11-cv-1395 | MDL NO. 2047<br>SECTION: L<br>JUDGE FALLON<br>MAG. JUDGE NORTH |

**TAISHAN'S POST-EVIDENTIARY HEARING BRIEF FOR THE ADJUDICATION OF DAMAGE CLAIMS BY DARLA AND GENE GIBBS AND JOHN CARTER**

In the more than two years since Plaintiffs opted out of the global class settlement, this Court has afforded them fact and expert discovery, considered multiple rounds of briefing on Alabama damages law, extended additional opportunities for evidentiary development, and held an evidentiary hearing. Yet with all that time and opportunity, Plaintiffs have failed to meet their burden to support the only damages available for their claims under Alabama law: diminution in the fair market value of their property.

Refusing to recognize that law and the rulings of this Court, Plaintiffs (through their Alabama-based lawyer) have relentlessly filed briefs and made arguments seeking to enlarge their potential payout—often by mischaracterizing or misapplying case law and prior proceedings in the MDL. In the time spent chasing unavailing legal theories, Plaintiffs could have developed evidence on the one category of damages that this Court held to be recoverable under Alabama law. But they didn't. Even when the Court, post-discovery, instructed them to get an appraisal of the properties that would take into account the presence of the Chinese drywall, they insisted on

1

getting full-value appraisals without telling the appraiser about the drywall.[1]  Those intentionally uninformed appraisals show that the properties have increased, not decreased, in value since the time of purchase.

There is simply no competent evidence of any diminution in value before this Court.  That puts Plaintiffs in the same position as the plaintiffs in *Bella Investments, Inc. v. Multi Family Services, Inc.*, a case from the Court of Civil Appeals of Alabama.  148 So. 3d 716 (Ala Civ. App. 2013).  That closely analogous case sets the precedent for judgment in favor of a defendant where a plaintiff fails to develop and present evidence of diminution of property value—and specifically where the plaintiff seeks to substitute cost of repair evidence with the hopes of "allow[ing] the jury to infer the market value of the [property] both before and after the damage." *Id.* at 721.  In that case, just as in this one, the plaintiffs missed opportunities to develop appropriate and sufficient expert valuation evidence that would establish the before and after values of the property at issue.  The *Bella* Plaintiffs also pointed to some of the same cases that Plaintiffs here continue to tout.  And, just as in this case, Plaintiffs continued to maintain that their remediation evidence was enough to support their damages claim. *Id.*

But the Alabama appellate court affirmed the trial court's entry of judgment as a matter of law in favor of the defendant—not because plaintiffs had failed to prove liability, but because they

---

[1] Plaintiffs' counsel's closing argument at the evidentiary hearing suggests that the nonconformance was strategic.  Plaintiffs misconstrue Alabama law to award remediation damages as a proxy for diminution if the "*appraised value of their property without Chinese drywall* exceeds the cost of the remediation."  March 23, 2022 Evidentiary Hearing Transcript ("Transcript" or "Tr.") at 121 (emphasis added).  But that's not the law at all; Alabama law is clear that remediation damages are disallowed where they exceed the *diminution in value*—not the full property value.  Thus, Plaintiffs' apparent gambit to obtain the highest possible property valuation should be a losing bid.

had *failed to prove their recoverable damages*. The appellate court called the plaintiff's reliance on repair damages "misguided," and held:

> [A]lthough repair costs is a factor to consider in determining the after-damage fair market value of real property, we cannot conclude that the evidence presented was sufficient to provide the jury with a reasonable basis upon which it could determine the before and after values of the [property] so as to assess the appropriate amount of damages under Alabama law.

*Id.* at 724 (internal citation omitted). That is exactly so here. Plaintiffs have not provided sufficient evidence to form a reasonable basis on which this Court can award diminution in value damages. Just as the *Bella* court did, we will go through what Plaintiffs submitted at the evidentiary hearing and show how it fails to meet the standards required by Alabama law and this Court.

## I. The Legal Standard

As the MDL Court has repeatedly held, Plaintiffs bear the burden of proving damages, even in a default setting. *See, e.g.* Rec. Doc. 22976 at 2; Rec. Doc. 20741 at 32. Under Alabama law, "[t]he proper measure of compensatory damages in a tort action based on damage to real property is the difference between the fair market value of the property immediately before the damage and the fair market value immediately after the damage." *IMAC Energy, Inc. v. Tittle*, 590 So.2d 163, 168 (Ala. 1991). As such, Alabama Pattern Jury Instructions explain the calculation of diminution in value as follows:

> The measure of damage for (injury)(damage) to real property is the difference in the reasonable market value of the land immediately before its (injury)(damage) and the reasonable market value immediately after the (injury)(damage).

Alabama Pattern Jury Instructions - Civil (2nd ed.), § 11.26.

Thus, the Court's inquiry at the evidentiary hearing must focus on two data points: the reasonable market value of the Gibbs and Carter homes ***BEFORE*** the damage from Chinese Drywall (**Value B**) and the reasonable market value of those homes immediately ***AFTER*** the

damage (**Value A**). Diminution in value is determined by subtracting **Value A** (the reasonable market value *after* the damage) from **Value B** (the reasonable market value *before* the damage). Formatted as a formula, it is:

> **Value B** (reasonable market value **B**efore) – **Value A** (reasonable market value **A**fter)
>
> =
>
> **Value D (Diminution/Damages)**

Importantly, the values for B and A under Alabama law must be *reasonable—*an *objective* measure. In Alabama, "'[m]arket value' is defined as the price at which a willing seller would sell and a willing buyer would buy, neither being compelled to sell or to buy." J. Marsh and C. Gamble, Alabama Law of Damages (5th ed. 2004), at § 33:1; *see also Crump v. Geer Bros., Inc.*, 336 So.2d 1091, 1096-97 (Ala. 1976). Thus, to complete the Value B minus Value A equation to get to damages (Value D), the Plaintiffs' evidence must show objective market values for these two homes at those two distinct points in time (before and after the damage).

## II.     The Evidence

At the March 23, 2022 hearing, the Court accepted the following testimony[2]:

- John Andrew ("Andy") Carter – Tr. pp. 21-46; 55-61; 66-70.

- Darla Gibbs – Tr. pp. 70 – 84; 94-100

- Shawn Macomber – Tr. pp. 104 – 117.

---

[2] The following testimony was also proffered: John Andrew ("Andy") Carter – Tr. pp. 46-54, 61-66; Darla Gibbs – Tr. pp. 84-93; 100-103. Additionally, the five exhibits listed at Rec. Doc. 23304-1 were proffered by Plaintiffs.

The following exhibits were admitted into evidence:

| | | | | | EXHIBIT LIST |
|---|---|---|---|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | | | | | Case Number: 09-md-2047 L(5) |

| PRESIDING JUDGE | | | | | PLAINTIFF'S ATTORNEY | DEFENDANT'S ATTORNEY |
|---|---|---|---|---|---|---|
| Magistrate Judge Michael B. North | | | | | James Doyle | Christina Eikhoff, Matt Lawson, and Harry Rosenberg |
| EVIDENTIARY HEARING DATE 3/23/2022 | | | | | COURT REPORTER Jodi Simcox | COURTROOM DEPUTY Jennifer Schouest |

| PLF. NO. | DEF. NO. | DATE OFFERED | MARKED | ADMITTED | DESCRIPTION OF EXHIBITS |
|---|---|---|---|---|---|
| 1 | | 3/23/2022 | X | X | Warranty Deed Dated 12/2/2006 and Recorded on 1/2/2007 for John & Jill Carter |
| 2 | | 3/23/2022 | X | X | Plaintiff Profile Form for John Carter |
| 3 | | 3/23/2022 | X | X | Taishan's Statement on Product ID and Attribution with photograph |
| 4 | | 3/23/2022 | X | X | Appraisal on Carter Home dated 4/11/2021 |
| 6 | | 3/23/2022 | X | X | Warranty Deed dated 6/1/2007 for Gene and Darla Gibbs |
| 7 | | 3/23/2022 | X | X | Plaintiff Profile Form for Gene & Darla Gibbs |
| 8 | | 3/23/2022 | X | X | Appraisal on Gibbs Property as of 4/11/2021 |
| | 1 | 3/23/2022 | X | X | Supplemental Plaintiff Profile Form for John Carter |
| | 2 | 3/23/2022 | X | X | HUD Settlement Statement dated 12/12/2007 for John Carter |
| | 3 | 3/23/2022 | X | X | Supplemental Plaintiff Profile Form for Darla and Gene Gibbs |
| | 4 | 3/23/2022 | X | X | Appraisal of Gibbs Property as of 5/18/2007 |

Finally, the parties stipulated that the Gibbs and Carter Plaintiffs own their respective homes. Tr. at 5:23 - 6:7.

  A. *There is No Reliable Evidence of Before-Damage Values ("Value B") for the Carter Property.*

There is no evidence in the record from which the Court can determine the Fair Market Value of Plaintiff Carter's property before any alleged property damage was detected. Carter presented no appraisals from around the time of the original purchase and construction of the property, despite testifying that he believed an appraisal had been done to obtain a mortgage on the property. *See* Tr. at 67:12-18. The absence of any purchase-era appraisal has since been confirmed by counsel, who represented to the Court that "after a diligent search, Carter was not able to locate a copy of the 2006/07 appraisal or any subsequent appraisal prior to the 2021

appraisal generated at the direction of this court." **Exhibit A**, April 6, 2022 Email from J. Doyle to Magistrate Judge North.

When asked about the original home value, Carter testified, "I don't remember exactly what it was," but based on other homes he constructed and sold in the neighborhood, he speculated that "it was right around that [$]150,000 mark." Tr. at 66:18-21. A December 12, 2007 HUD Settlement Statement introduced by Defendants shows a transaction cost of $101,934.38, which appears to reflect the remaining amount of Carter's construction loan at the time that Carter purchased the house from his company after his mother had moved in. *See* Defendants' Ex. 2; Tr. at 67:1-8.

None of this evidence is sufficient to show the objective Fair Market Value of the property before the Chinese Drywall was discovered.

> B. *There Is Evidence to Establish Before-Damage Values ("Value B") for the Gibbs Property.*

By contrast to Carter, Plaintiff Gibbs produced an appraisal from around the time of the property purchase which provides a Fair Market Value of $168,000 as of May 18, 2007. *See* Def. Ex. 4. Gibbs also testified, "Our house, when we purchased it, I believe was – we had some extra work, but I think it was $164,000 when we had it built in 2007." Tr. at 80:7-9. That evidence and testimony is sufficient to establish a before-damage value of between $164,000 and $168,000.

> C. *There Is No Evidence to Establish After-Damage Values ("Value A") for Either the Carter or Gibbs Properties.*

There is a complete absence of evidence in the record from which to derive an after-damages Fair Market Value (Value A) for the Carter and Gibbs properties. Both Plaintiffs testified that they have never at any time attempted to market their properties for sale "as is" with Chinese drywall. *See* Tr. 58:3-7 ("Q: And you have never attempted to put the house on the market for

6

sale? A: That's correct. Q: Even as is? A: That's correct."); Tr. 99:20-25 ("Q: Mrs. Gibbs, is it correct to say that you have never tried to sell your home before? Mrs. Gibbs: No, sir. [affirming] Q: Have you ever talked to a real estate agent about how much you could sell your home for? Q: No, sir."). The most recent valuations from 2021 show that the properties have *increased* in value since purchase. And when questioned about those appraisals, both Plaintiffs testified that they thought their respective home values should be *higher*.

Before getting into the specifics of the 2021 valuations, it is relevant to note that Plaintiffs had ample time and opportunity to find out an after-damage Fair Market Value of the properties. After opting out of the global class settlement, Plaintiffs agreed to a Case Management Order giving them from November 20, 2021 to December 31, 2021 to conduct fact discovery and from November 20, 2021 to February 5, 2021 to conduct expert discovery. At any time before those deadlines, Plaintiffs could have obtained a professional appraisal to provide a FMV of the properties taking into account the presence of Chinese Drywall, but they did not. Then, this Court threw Plaintiffs a lifeline on March 31, 2021, allowing Plaintiffs to obtain (after the close of discovery) an appraisal "of the Carter and Gibbs homes to determine their respective fair market values today, with Chinese Drywall still in those homes." Court's March 31, 2021 Minute Entry Order. But instead of doing that, Plaintiffs' counsel insisted on a "blind" appraisal, which did not detect or reflect the presence of Chinese drywall.[3] After the Court expressed its dissatisfaction with that effort, the parties approached the appraiser, Ms. Molly McLeod Wilson, to see if she could reappraise the properties taking into account the Chinese drywall. **Exhibit B**, July 2021 Email and Attachments from C. Eikhoff to Magistrate Judge North. When Ms. Wilson responded

---

[3] For a more detailed account of these events, see Taishan's May 5, 2021 "Brief Pursuant to Court's Minute Entry Dated April 27, 2021 (Rec. Doc. No. 23083).

7

that she was not qualified to perform such an appraisal, Plaintiffs made no further efforts to procure one. *Id.*

Ms. Wilson's "blind" 2021 valuations were $160,000 for the Carter property and $185,000 for the Gibbs property. *See* Plaintiffs' Exs. 4 and 8. Even crediting Carter's vague guess as to a purchase value of about $150,000 in 2006, the 2021 appraisal shows an increase in value in the last fifteen years—a remarkable development considering Carter's admission that that the property has been "abandoned and deteriorating" for at least the last ten years. Tr. at 58:8-10. And Carter testified that he believes the home is actually worth more than $160,000 today. *See* Tr. at 44:2-14, 58:11-17.

The 2021 appraisal showed a more significant increase in the value of the Gibbs property (which has been continuously occupied and maintained) – from around $168,000 in 2007 to $185,000 in 2021. *See* Def. Ex. 4 and Pl. Ex. 8. But Gibbs testified that she did not believe that the recent appraisal was a "fair an accurate appraisal value" for the home, opining that the reasonable value should be higher, citing comparable sales in the neighborhood in excess of $225,000. Tr. at 83:1-10.

Thus, there is no After-Damage Value (Value A) for either Plaintiff from which to derive Diminution in Value Damages. Not one piece of evidence nor testimony reflects a reasonable market value taking into account the presence of Chinese drywall, and all recent reasonable market valuations show *appreciation*, not diminution, in value since the time of purchase.

### D. Any Repair Cost Testimony Is Not Probative to Measure Damages.

After the close of all discovery, Plaintiffs engaged a general contractor, Shawn Macomber, to inspect the properties and prepare Xactimate reports to estimate the cost of remediating the properties based on Judge Fallon's remediation protocol set forth in the 2010 *Germano* Findings

of Fact and Conclusions of Law.  Tr. at 113:21 – 114:2 (testifying that February 23, 2021 was the date of his "first work" for this engagement); 106:19 – 107:8 (describing methodology); 107:23 – 109:11 (same).  Before the evidentiary hearing, this Court ruled that those Xactimate reports were untimely and excluded them from evidence. March 31, 2021 Minute Entry Order.  Nevertheless, Plaintiffs called Macomber to the stand under the representation that he was a "fact witness" who could provide relevant testimony.  *See* Tr. at 12:2-5 (Court: "Mr. Doyle insisted throughout the [March 31, 2021] hearing that Mr. Macomber could provide some form of fact testimony regarding repair costs of the plaintiffs' homes") and 14:3-6 (Court: "…I declined to strike Mr. Macomber from the [witness] list because I really don't know, as I sat there that day, or as I sit here today, whether he can or will provide relevant fact testimony.").

Macomber's testimony revealed no "factual" knowledge other than that gained as an expert hired by Plaintiffs' counsel to provide an expert report on estimated remediation damages.  The engagement was "arranged through Mr. Doyle." Tr. at 114:3-4.  Mr. Doyle paid Macomber at a rate of $195 per hour for his assessment of the property and preparation of reports and $295 per hour for his testimony.  Tr. at 112:17-113:11.  He was never hired to actually remediate the properties (Tr. at 112), nor could he have been because he is licensed in Louisiana, not Alabama (Tr. at 107).  He has previously been hired by Mr. Doyle in other cases to prepare expert reports and give expert testimony. Tr. at 111:20-112:2.  He is not a fact witness here.  As an expert, all of Macomber's work was untimely performed and disclosed too late.  His testimony regarding his Xactimate remediation estimates therefore should be excluded in accord with the Court's prior exclusion ruling.

Macomber's untimely expert opinions should not be admitted through a "back door" via Plaintiffs' mere recitation of his expert estimates.  Seeking to introduce the estimates into the

9

record, Plaintiffs' counsel asked his client Carter on direct, "[D]id you have an estimate done by Mr. Macomber or anybody that calculated an amount at any time since this 2019 calculation . . . ?" Tr. at 37:12-14.  In response, Carter testified, "Yes.  It better reflects what the current situation is, which is about $145,000 to fix it." Tr. at 37:15-16.  Similarly, Mr. Doyle examined his client Gibbs, asking "[D]o you recall a gentleman named Mr. Macomber visiting your house?" Tr. at 81:5-6.  And he elicited her testimony that the Macomber quote was "just a little bit over $176,000." Tr. at 81:13-14.  Although Macomber could not recall whether he provided the estimates to the Plaintiffs directly (as opposed to just to their counsel) (*see* Tr. at 115:6-116:17), Plaintiffs' counsel has since confirmed to the Court that Macomber reported the estimates only to counsel, who then relayed them to his clients (*see* Exhibit A "the Xactimate estimates for 2021, as well as the repricing estimates for 2022, were provided to my office and subsequently transmitted electronically by my office to each Plaintiff.").[4]

As discussed further in the Legal Analysis section below, however, even if the Macomber Xactimate estimate values were admissible through Plaintiffs' testimony, they are not probative of the diminution in property value under Alabama law.

### III.     Legal Analysis

The lack of before and after values for diminution in property value, coupled with Plaintiffs' insistence on seeking to use remediation estimates as a substitute for diminution evidence, puts this case on all-fours with *Bella Investments*.  In that case, the plaintiff sought damages from its general contractor for property damage to a hotel, including cracking in flooring

---

[4] Though Mr. Doyle's April 6 email is silent about the content of telephone communications between Macomber and Plaintiffs ("He communicated via telephone with Plaintiffs"), Macomber's testimony was that "I don't believe I would have communicated [the final number for repair estimates] over the phone," and "as far as communicating the actual price estimate, it would have been done by e-mail." Tr. at 115:20-21; 116:14-15.

tiles, due to the contractor's alleged negligence. *Bella Invs.*, 148 So. 3d at 717.  At trial, defendants moved for and were granted judgment as a matter of law on the grounds that plaintiff's evidence of estimated *repair costs* was insufficient to support an award for *diminution in property value* damages, the proper measure of damages under Alabama law. *Id.* at 721. The *Bella* Plaintiff, like the Gibbs and Carter Plaintiffs, engaged an appraiser, but the appraisal did not reflect the actual value of the property because it did not take certain key factors into account. *Id.* at 723. ("Without evidence of the expected occupancy rates, the cleanliness of the hotel, and a myriad of other factors, the jury lacked evidence from which to extrapolate the fair market value of the hotel at the time it was completed, had it been properly constructed."). Additionally, the owner of the *Bella* property, like the Plaintiffs in this case, did not testify to the Fair Market Value of their property, despite that testimony being admissible under Alabama law. *Id.* at 724. Instead, the *Bella* plaintiff was fixated on recovering repair costs – the functional equivalent of the approach taken by the Gibbs and Carter Plaintiffs at this hearing. *Id.* at 724.

On that equivalent evidentiary record, the *Bella* Court upheld the trial court's grant of judgment as a matter of law to the defendant, holding that the Bella Plaintiff had failed to present adequate evidence of diminution in value of their property. *Id. at* 725. Specifically, the *Bella* Court held that the repair cost evidence could not "support an inference of the fair market values of the hotel before and after the damage" and cited to Alabama law requiring that a plaintiff "must produce evidence tending to show the extent of damages as a matter of just and reasonable inference." *Id.* Plaintiffs now ask this Court to make the same impermissible inference on an equivalent deficient evidentiary record. Such a speculative award is not permissible under Alabama law and should be rejected here.

11

Plaintiffs will likely argue that other Alabama courts have, on rare occasion, permitted estimated repair costs to inform diminution of value assessment. But the *Bella* Court distinguished those exceptional cases by holding that, in those other cases, a fair market valuation had been unavailable and thus the lack of one was excusable. *Bella Invs.,* 148 So. 3d at 722-723 (distinguishing the Alabama Supreme Court's ruling in *IMAC Energy, Inc. v. Tittle*, 590 So. 2d 163 (Ala. 1991) by noting that repair costs were sufficient to support a property damages award where the plaintiffs testified that they were *unable* to procure an appraisal of Fair Market Value). By contrast, the *Bella* Plaintiff "failed to prove that it was unable to ascertain information regarding the before or after values of the hotel or that it could not secure a valuation of the fair market value of the hotel after the damage occurred." *Id.*

Similarly, Plaintiffs have failed to prove that they were unable to ascertain the reasonable Fair Market Values after the alleged damage occurred to their homes. In fact, the record shows clearly that they neglected to obtain any such evidence during the course of discovery, and then intentionally insisted on procuring the highest valuation possible when the Court gave them one last chance—putting all of their chips in a pursuit of remediation damages. The *Bella* court rejected such an attempt to circumvent Alabama property damage law, and this Court should do the same.

It is true that the present case involves a default. But, as the MDL Court has held, that does not relieve a Plaintiff of their burden to prove damages, and Judge Fallon warned opt-out plaintiffs that going it alone would exact a high standard. Rec. Doc. 22460 at 47. And, perhaps exceptionally, Alabama's property damages law is limiting and yields harsh results. These Alabama plaintiffs with Alabama counsel were charged with knowing what Alabama law would require of them. The defendant in *Bella Investments* was granted judgment as a matter of law

12

based not on failure of proof of liability, but on failure of proof *on damages*. *Bella* at 721.  And a federal judge applying Alabama law remarked that the Alabama Supreme Court has "unflinchingly applied the diminution-in-value rule" despite vast disparities between repair costs and diminution in value. *Dialysis Clinic. Inc. v. City of Dothan*, No. 1:10-CV-1051-WKW [WO], 2012 U.S. Dist. LEXIS 156351, at *7-11 (M.D. Ala Nov. 1, 2012).  Bound by that precedent, the *Dialysis Clinic* court strictly curtailed damages despite the "financial and practical realities of the case"—holding that "the equities of this case cannot change the rule this court is duty-bound to apply." *Id.* at *10-11.  So too here.

Despite years of opportunity, Plaintiffs have failed to meet their burden under the governing law.  As such, no damages have been proved nor can be awarded.[5]

Dated: April 11, 2022

Respectfully submitted,

/s *Christina Hull Eikhoff*
Christina Hull Eikhoff, Esq.
Georgia Bar No. 242539
David Venderbush, Esq.
New York Bar No. 2920817
ALSTON & BIRD LLP

---

[5] Ignoring Alabama law and this Court's rulings and procedures, Mr. Doyle referred in his closing remarks at the evidentiary hearing to numerous other categories of damages and said, "we'll take that up at a later date." Tr. at 122.  There is no "later date" for evidence on any other damages for these claims. For the legal authority establishing that all other categories of damages claimed by Plaintiffs are disallowed under Alabama law, Defendants incorporate by reference their March 19, 2021 Pre-Evidentiary Hearing Brief for the Adjudication of Damage Claims by Darla and Gene Gibbs and John Carter at pages 10-17 (arguing that Plaintiffs cannot establish "Loss of Use and Enjoyment," Alternative Living Expenses, Personal Property and Prior Repair Damages, or Attorneys' Fees under Alabama law) and their November 26, 2021 Response to Plaintiffs' "Formal Objection" to Court's Prior Rulings on Alabama Law at pages 9-10 (arguing that Plaintiffs are not entitled to Prejudgment Interest under Alabama law).  Taishan's March 19, 2021 Pre-Evidentiary Hearing Brief at page 18 also submits that to the extent any damages are awarded, they must be set off by the amounts of prior payments they have already received, as set forth in their verified Plaintiff Profile Forms.  Rec. Doc. 23300 at 14 ("The Gibbses received $5,311.95 and Carter received $5,122.35. Those amounts serve as setoffs on damages awarded by the Court, if any are proved under Alabama law."); Def. Exs. 1 and 3.

13

1201 West Peachtree Street
Atlanta, Georgia 30309
Phone: (404) 881-7000
Fax: (404) 881-7777
christy.eikhoff@alston.com
*Counsel for Taishan Gypsum Co., Ltd. And Tai'an Taishan Plasterboard Co., Ltd.*

Alan Dean Weinberger
LA Bar No. 13331
HANGARTNER, RYDBERG & TERRELL, LLC
One Shell Square
701 Poydras St., Suite 310
New Orleans, Louisiana 70179
Phone: (504) 434-6815
Fax: (504) 522-5689
aweinberger@hanrylaw.com
*Local Counsel for Taishan Gypsum Co., Ltd. And Tai'an Taishan Plasterboard Co., Ltd.*

## **CERTIFICATE OF SERVICE**

      I hereby certify that the above and foregoing Post-Evidentiary Hearing Brief via email on this 11th day of April 2022.

                                      <u>/s Christina Hull Eikhoff</u>
                                      Christina Hull Eikhoff, Esq.
                                      *Counsel for Taishan Gypsum Co., Ltd. and*
                                      *Tai'an Taishan Plasterboard Co., Ltd.*