UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA


*****************************************************************

IN RE:  CHINESE-MANUFACTURED
DRYWALL PRODUCTS
LIABILITY LITIGATION

                              CIVIL DOCKET NO. 09-MD-2047 "L"
                              NEW ORLEANS, LOUISIANA
                              WEDNESDAY, MAY 12, 2021, AT 9:00 A.M.


THIS DOCUMENT RELATES TO:
15-4127, BARBARA ANN ALFONSO,
ET AL VERSUS BEIJING NEW
BUILDING MATERIALS GROUP,
CO., LTD, ET AL

*****************************************************************


            TRANSCRIPT OF MOTION HEARING PROCEEDINGS
       HEARD BEFORE THE HONORABLE ELDON E. FALLON
              UNITED STATES DISTRICT JUDGE


APPEARANCES:



FOR THE PLAINTIFFS'
LIAISON COUNSEL:            HERMAN HERMAN KATZ
                           BY:  LEONARD A. DAVIS, ESQUIRE
                           820 O'KEEFE AVENUE
                           NEW ORLEANS, LA  70113


FOR THE PLAINTIFFS:        DOYLE LAW FIRM
                           BY:  JAMES V. DOYLE, JR., ESQUIRE
                           2100 SOUTHBRIDGE PARKWAY, SUITE 650
                           BIRMINGHAM, AL  35209




*OFFICIAL TRANSCRIPT*

1    APPEARANCES CONTINUED:

2

3                              O'BRYON & SCHNABEL
                              BY:  KEVIN C. O'BRYON, ESQUIRE
4                              935 GRAVIER STREET, SUITE 900
                              NEW ORLEANS, LA  70112
5

6
     FOR TAISHAN GYPSUM CO.,
7    LTD, AND TAI'AN TAISHAN
     PLASTERBOARD CO., LTD.:    ALSTON & BIRD
8                              BY:  CHRISTINA H. EIKHOFF, ESQUIRE
                                    MATTHEW D. LAWSON, ESQUIRE
9                              ONE ATLANTIC CENTER
                              1201 WEST PEACHTREE ST., SUITE 4900
10                             ATLANTA, GA  30309

11

12   FOR THE TAISHAN, BNMB
     ENTITIES AND CNBM ENTITIES
13   LIAISON COUNSEL:           PHELPS DUNBAR
                              BY:  HARRY ROSENBERG, ESQUIRE
14                             365 CANAL STREET, SUITE 2000
                              NEW ORLEANS, LA  70130
15

16
     CHINA NATIONAL BUILDING
17   MATERIALS GROUP CORPORATION
     AND CHINA NATIONAL BUILDING
18   MATERIALS COMPANY LIMITED
     (COLLECTIVELY, "CNBM"):    ORRICK HERRINGTON & SUTCLIFFE
19                             BY:  ANDREW K. DAVIDSON, ESQUIRE
                              THE ORRICK BUILDING
20                             405 HOWARD STREET
                              SAN FRANCISCO, CA  94105
21

22
     OFFICIAL COURT REPORTER:   CATHY PEPPER, CRR, RMR, CCR
23                             NEW ORLEANS, LOUISIANA
                              (504) 589-7779
24                             Cathy_Pepper@laed.uscourts.gov
     PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY.  TRANSCRIPT
25   PRODUCED BY COMPUTER.

                         *OFFICIAL TRANSCRIPT*

1                          **I N D E X**

2

3        SPEAKERS                                           PAGE

4

5    THE COURT........................................    6

6    MS. EIKHOFF......................................    6

7    MR. LAWSON.......................................   11

8    MS. EIKHOFF......................................   14

9    THE COURT........................................   14

10   MR. DOYLE........................................   15

11   THE COURT........................................   19

12   MR. DOYLE........................................   19

13   THE COURT........................................   21

14   MR. DOYLE........................................   21

15   THE COURT........................................   23

16   MS. EIKHOFF......................................   23

17   MR. O'BRYON......................................   24

18   THE COURT........................................   25

19   MR. O'BRYON......................................   25

20   THE COURT........................................   28

21   MR. LAWSON.......................................   29

22   THE COURT........................................   31

23   MR. DAVIDSON.....................................   31

24   THE COURT........................................   36

25   MR. DAVIDSON.....................................   36

                      *OFFICIAL TRANSCRIPT*

1   THE COURT.......................................... 36

2   MR. DOYLE.......................................... 36

3   THE COURT.......................................... 36

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                **P-R-O-C-E-E-D-I-N-G-S**

2              WEDNESDAY, MAY 12, 2021

3             M O R N I N G    S E S S I O N

4              (VIA ZOOM VIDEOCONFERENCE)

5

6

09:06:29  7        THE COURT:  Good morning, everybody.  This is

09:06:33  8   Judge Fallon.  Let's call the case.

09:06:35  9        THE DEPUTY CLERK:  MDL 2047, In re Chinese Drywall

09:06:42 10   Products Liability Litigation.  Would Counsel make their

09:06:45 11   appearance for the record, please.

09:06:46 12        MR. DAVIS:  Good morning, Your Honor.  Leonard Davis,

09:06:51 13   representing plaintiffs' liaison.  Good to see you.

09:06:55 14        THE COURT:  Good to see you.

09:06:56 15        MR. ROSENBERG:  Good morning, Judge Fallon.

09:06:58 16   Harry Rosenberg as liaison counsel for Taishan and BNBM.

09:07:03 17        THE COURT:  Hey, Harry.

09:07:04 18        MS. EIKHOFF:  Good morning, Your Honor.  This is

09:07:06 19   Christy Eikhoff on behalf of the movants, Defendant Taishan.

09:07:09 20        THE COURT:  Good to see you, Christy.

09:07:14 21        MR. DAVIDSON:  Good morning, Your Honor.

09:07:15 22   Andrew Davidson from Orrick Herrington on behalf of the

09:07:18 23   B&C Companies.

09:07:19 24        THE COURT:  All right.  How about the plaintiffs?

09:07:20 25        MR. DOYLE:  Good morning, Your Honor.  Jimmy Doyle on

*OFFICIAL TRANSCRIPT*

09:07:25  1   behalf of all but one plaintiff.

09:07:28  2          MR. O'BRYON:  Kevin O'Bryon on behalf of plaintiffs,

09:07:30  3   Terrence and Rhonda Ross.

09:07:33  4          THE COURT:  Okay.  We're here today to deal with the

09:07:35  5   motions regarding summary judgments on various opt-out

09:07:40  6   plaintiffs in the Taishan matter.  Taishan has moved for

09:07:44  7   summary judgment in about six or seven of these cases.  They

09:07:48  8   really base their arguments on two areas:  One, they indicate

09:07:52  9   that the subsequent purchaser doctrine bars recovery either

09:07:58 10   because there is no assignment or the assignment, if it did

09:08:02 11   occur, occurred after the seller was dismissed in at least one

09:08:09 12   of the cases; also, the second theory is this is clearly time

09:08:13 13   barred.  There is no question that it was over a year.  The

09:08:16 14   question is whether or not the time has been tolled for various

09:08:22 15   reasons.

09:08:22 16          Christy, it's your motion.  Let me hear from you.

09:08:25 17          MS. EIKHOFF:  Yes, Your Honor.  If we may, we would

09:08:28 18   request to share our screen so we can provide our

09:08:37 19   demonstratives.  Your Honor, can you see us -- our screen?

09:08:41 20          THE COURT:  Yes, I can.

09:08:42 21          MS. EIKHOFF:  Okay.  Your Honor, what we would propose

09:08:47 22   is that we go through each of the seven plaintiffs.  We have

09:08:55 23   moved for summary judgment.  As you can see on the

09:08:57 24   screen (inaudible) order, we have them grouped logically.  All

09:09:05 25   of these plaintiffs are represented by Mr. Doyle with one

*OFFICIAL TRANSCRIPT*

09:09:10  1    exception, the exception being the Rosses, who are represented

09:09:13  2    by Mr. O'Bryon, so we have put that one on the end, and

09:09:18  3    actually my colleague, Mr. Lawson, will be arguing on that

09:09:21  4    particular claim.

09:09:21  5        THE COURT:  Okay.

09:09:25  6        MS. EIKHOFF:  As the Court noted, we have moved for

09:09:27  7    summary judgment on seven of the ten opt-out claims in the

09:09:32  8    Brooke action in Louisiana.  There are three that are not

09:09:35  9    subject to a motion for summary judgment at this time; however,

09:09:39  10   we do intend to defend those claims into the next stages of the

09:09:43  11   litigation.

09:09:43  12       THE COURT:  Sure.

09:09:46  13       MS. EIKHOFF:  So, getting started, with just the

09:09:52  14   well-established facts involved in this case, there are no

09:09:56  15   facts in dispute on these motions for summary judgment.  We

09:10:00  16   submitted a statement of undisputed material facts in support

09:10:04  17   of our motion for summary judgment.  The plaintiffs did not

09:10:07  18   dispute any of them or file their own statements of facts; so,

09:10:12  19   by rule, all facts that we submitted to the Court are conceded.

09:10:18  20       So, the claims that are prescribed, Your Honor,

09:10:20  21   we will show that there has been no tolling of Louisiana's

09:10:25  22   one-year prescription, and for the plaintiffs who are

09:10:28  23   subsequent purchasers, we will show that there are no valid

09:10:28  24   assignments that will escape dismissal under the subsequent

09:10:38  25   purchasers.

**_OFFICIAL TRANSCRIPT_**

09:10:39  1          So, Your Honor, the first two that we wanted to
09:10:41  2   talk about are plaintiffs Kerry Barre and Barbara Alfonso.
09:10:47  3   Both of those motions for summary judgment were unopposed by
09:10:51  4   plaintiffs.
09:10:51  5          As we showed the Court, Kerry Barre conceded that
09:10:58  6   he needed a subsequent purchaser.  It is also conceded that
09:11:03  7   Barre does not have an assignment, and explicitly in the
09:11:07  8   response to the plaintiffs said that they do not oppose summary
09:11:11  9   judgment for Mr. Barre, so that one is easy.
09:11:14 10          The next one is Barbara Alfonso.  It is conceded
09:11:19 11   that -- would you like me to pause, Your Honor?
09:11:25 12          THE COURT:  Wait just a moment.  We're trying to do --
09:11:30 13          THE DEPUTY CLERK:  It's probably hidden under here,
09:11:33 14   Judge.  Do you want it there or do you want --
09:11:35 15          THE COURT:  I would like everybody, but that's okay.
09:11:41 16          THE DEPUTY CLERK:  When share screen stops, then you'll
09:11:43 17   get back to the gallery, but the share screen overrides.
09:11:43 18          THE COURT:  Go ahead, Christy.  I'm sorry.  I'm with
09:11:48 19   you now.  It's Barbara Alfonso.
09:11:49 20          MS. EIKHOFF:  Okay.  Please go back on the slide.  Just
09:11:54 21   in case Your Honor didn't see, the first one that we noted was
09:11:57 22   Kerry Barre, and the plaintiff explicitly stated they would not
09:12:01 23   oppose summary judgment.
09:12:02 24          THE COURT:  Yeah, I saw that.  Right.
09:12:03 25          MS. EIKHOFF:  The next one is Barbara Alfonso.  Her

*OFFICIAL TRANSCRIPT*

09:12:08  1   claim is prescribed.  It's a conceded fact that she discovered

09:12:11  2   her claim years before she filed into this case.  Plaintiffs

09:12:15  3   did not offer any opposition to what we presented to the Court,

09:12:19  4   and so, Mr. Barre and Ms. Alphonso are unopposed, and summary

09:12:26  5   judgment should be granted on those claims.

09:12:28  6           The next group, Your Honor, that we wanted to

09:12:32  7   address was the group that have prescribed claims.  It is a

09:12:39  8   conceded fact for all three of these claims, Bourlet, Cross,

09:12:43  9   and Jones, that they knew that they had a claim against Taishan

09:12:47 10   in 2013.

09:12:48 11           We knew that they knew they had a claim against

09:12:51 12   Taishan in 2013 because they filed a lawsuit against Taishan

09:12:57 13   for Chinese drywall in the Northern District of Alabama in

09:13:00 14   2013.  They filed a Brooke action here in September of 2015,

09:13:06 15   more than a year later, and there is no tolling available from

09:13:09 16   the prior claim.

09:13:12 17           It is the law of this case from a ruling that

09:13:16 18   this court made in Brooke that Louisiana does not allow for

09:13:22 19   cross jurisdictional tolling.  That is a quote from this

09:13:27 20   court's ruling in this case.  So, they are judicially estopped

09:13:32 21   from arguing that there is cross jurisdictional tolling.

09:13:37 22           Additionally, the other case that they filed was

09:13:39 23   abandoned by them, and so, that cannot serve their purposes,

09:13:44 24   and they did not contest our presentation that they abandoned

09:13:48 25   that case.

**OFFICIAL TRANSCRIPT**

09:13:49 1          So, for those reasons, the claims of Bourlet,

09:13:54 2   Cross, and Jones are due to be -- for summary judgment in favor

09:14:00 3   of the defendants.

09:14:01 4          Going to the subsequent purchasers, Mr. Cross is

09:14:07 5   one that we just talked about in the last group that his claim

09:14:11 6   is not only prescribed but is also filed under the subsequent

09:14:14 7   purchaser rule.  It's a conceded fact that Mr. Cross is a

09:14:21 8   subsequent purchaser, and he has no valid assignment to escape

09:14:25 9   the results of that rule.

09:14:27 10          He did make a last-ditch attempt to obtain an

09:14:31 11   assignment in December.  For me, Your Honor, that was just

09:14:36 12   before the depositions in this case were noticed.  The problem,

09:14:42 13   though, is that setting aside that this was years into the

09:14:48 14   litigation by the time that he got this assignment, it's also

09:14:52 15   there was no claim to assign.  Because in December of 2020, the

09:14:58 16   prior owner did not have a claim because the claim would have

09:15:03 17   been extinguished by this court's dismissal of all claims

09:15:06 18   pursuant to the global class settlement, and this court's

09:15:11 19   dismissal order was entered on May 26, 2020, so by the time it

09:15:16 20   was December 2020, there was no claim for an owner of property

09:15:21 21   who had not opted out of the class settlement.  There was no

09:15:25 22   claim to assign; therefore, there was no valid claim

09:15:30 23   assignments, and Mr. Cross' claim must be dismissed for two

09:15:36 24   reasons:  It's prescribed and because he's a subsequent

09:15:39 25   purchaser without a valid opt-out.

                        *OFFICIAL TRANSCRIPT*

09:15:42  1          The next subsequent purchaser that we present to
09:15:46  2   the Court is A Greater NOLA Homes, L.L.C.  It is a conceded
09:15:54  3   fact that Greater NOLA Homes is a subsequent purchaser.  Like
09:15:58  4   Mr. Cross, they made a last-ditch attempt to obtain an
09:16:04  5   assignment shortly before depositions in this case and years
09:16:09  6   into this litigation, but like Mr. Cross, there was no claim
09:16:12  7   for them to have a received by assignment because any claim the
09:16:17  8   prior owner had would have been extinguished by the global
09:16:21  9   class settlement.
09:16:23 10          Your Honor, the last case that we wanted to
09:16:27 11   address are Mr. and Mr. Ross.  To that, I think I'll turn it
09:16:35 12   over -- I'll turn over the podium to my colleague, Mr. Lawson.
09:16:43 13          MR. LAWSON:  Good morning, Your Honor.
09:16:46 14          So, like the two subsequent purchaser claims that
09:16:50 15   Ms. Eikhoff was just describing a moment ago, it's a conceded
09:16:54 16   fact that Terrence and Rhonda Ross are subsequent purchasers of
09:16:58 17   their home.
09:17:00 18          THE COURT:  Yes.  Go ahead.  If you can just make it a
09:17:05 19   little louder.
09:17:08 20          MR. LAWSON:  Absolutely.
09:17:08 21          So, Mr. and Mr. Ross purchased their home about a
09:17:12 22   year after the Chinese drywall was installed by the prior
09:17:18 23   owner.  The prior owner was C. Adams Construction and Design.
09:17:20 24   Now, like the two subsequent purchaser claims that Ms. Eikhoff
09:17:24 25   just discussed, the Rosses also claim that they had received an

**OFFICIAL TRANSCRIPT**

assignment from the prior owner of the property, here C. Adams Construction and Design, and that they received that assignment back in 2014 during the settlement with that prior owner, C. Adams.

The problem with that assigned claim is the same as it was for Mr. Cross or Greater NOLA Homes, the assigned claim had already prescribed by the time that it had was assigned to the Rosses. We know this because it's a conceded fact that the Rosses filed a state court action in Louisiana state court in 2009 where they sued C. Adams Construction for the Chinese drywall in their home.

This is exactly what Louisiana law allows for subsequent purchasers, to be able to pursue their claim against the prior owner, against the installer of the drywall rather than pursuing it for property damages against the manufacturer. That's what the Rosses did. Within five years they brought that claim to resolution against C. Adams to the settlement, and they received a bulk of -- C. Adams received a -- (inaudible) of liability and an assignment was given to the Rosses for any claim that C. Adams might have.

But because that C. Adams claim had already prescribed against Taishan many years prior, because there had been no notice since 2009, there was no valid claim to be able to assign in 2014, so when the Rosses brought their claim in this action in 2015, they did not have a valid claim of their

*OFFICIAL TRANSCRIPT*

09:18:47  1   own to bring because they were subsequent purchasers, and they

09:18:51  2   didn't have a valid claim to bring from C. Adams because it had

09:18:51  3   prescribed years before.

09:18:53  4          Now, to be able to avoid this established law,

09:18:56  5   the Rosses have brought out some new theories to be able to try

09:19:00  6   to salvage their claims, but these theories do not fall under

09:19:05  7   Louisiana law for multiple reasons.  The first one is this idea

09:19:10  8   that there was continuing damage to the property after the

09:19:13  9   Rosses took title to it.  This has been addressed by both this

09:19:16 10   court and the Newman court, which stated that if you were going

09:19:20 11   to be bringing a claim as a subsequent purchaser, you need to

09:19:23 12   have a valid assignment and that any damage you have suffered

09:19:28 13   since taking title to the property does not give you a personal

09:19:33 14   right of action for property damages under Louisiana the law.

09:19:34 15          If you were to have a personal right of action

09:19:36 16   for continuing damage, you need to be able to show a continuing

09:19:40 17   tortious act by the main defendant.  Both Your Honor, in the

09:19:44 18   *Bennett* action and also the Menin (spelled phonetically) court

09:19:46 19   found in the Chinese Drywall context that the tortious act in

09:19:50 20   question is the deinstallation of the drywall and if any damage

09:19:53 21   that occurs later on as a result of that initial tortious act

09:19:57 22   is not a further tortious act but just continuing damage, and

09:20:00 23   it does not mean that that subsequent purchaser has a personal

09:20:04 24   right of action for further property damage.

09:20:06 25          Also, the lawsuit brings a new argument that

*OFFICIAL TRANSCRIPT*

09:20:10 1    we've never seen before, whether in discovery or in the

09:20:13 2    complaint, about the idea that the claim they were assigned

09:20:15 3    from C. Adams Construction is an indemnification claim.  There

09:20:18 4    are no facts to support this in the record.  They do not

09:20:21 5    present a statement of facts to be able to present new facts

09:20:23 6    into the evidentiary record in this motion, to be able to

09:20:26 7    improve an indemnification claim, or to show any kind of

09:20:30 8    relationship, contractual or otherwise, between C. Adams and

09:20:34 9    Taishan to be able to show indemnification with the claim that

09:20:39 10   they are bringing in this court.

09:20:40 11          There is no indemnification claim listed in the

09:20:41 12   prior state court action or in this Brooke action, and note for

09:20:45 13   a fact that they do not have any other support to be able to

09:20:49 14   say that there was an indemnification claim that's before the

09:20:52 15   Court in this case.

09:20:53 16          So, for those reasons, the lawsuits, like the

09:20:56 17   prior claims that we discussed, are both prescribed, and they

09:20:59 18   are also subsequent purchasers.  For those reasons, Taishan is

09:21:02 19   entitled to summary judgment on those claims.

09:21:05 20          THE COURT:  Okay.  All right.  Thank you.

09:21:08 21          MS. EIKHOFF:  Your Honor, unless the Court has any

09:21:11 22   questions for us at this time, we can take our shared screen

09:21:15 23   down.

09:21:16 24          THE COURT:  Let me hear now from the other side.  Any

09:21:20 25   response?

**OFFICIAL TRANSCRIPT**

09:21:21 1          Jimmy, you go first.  You've got the numbers.  As

09:21:24 2   I understand, Alphonso and Barre are no longer in play.  They

09:21:33 3   have been conceded, and you agree that it's appropriate to

09:21:35 4   dismiss those on summary judgment; is that right?

09:21:40 5          MR. DOYLE:  With regard -- Yes, Your Honor.  With

09:21:42 6   regard to one of them, Kerry Barre -- Kerry Barre, we've

09:21:44 7   conceded on.  It is -- his claim is prescribed.

09:21:47 8          THE COURT:  All right.  And Alphonso, too, right?

09:21:52 9          MR. DOYLE:  Not Alphonso.  Alphonso is a different

09:21:55 10  animal than Kerry Barre.  Kerry Barre was a

09:22:01 11  subsequent purchaser and did not get the personal rights that

09:22:03 12  he was assigned, so his claim a prescribed.

09:22:07 13          But Barbara Alfonso is a homeowner that they

09:22:11 14  contend knew about the Chinese drywall in her home years, years

09:22:15 15  before she filed a claim.  There is some dispute as to what she

09:22:23 16  knew, when she knew it, and they presented a statement of

09:22:27 17  undisputed facts.

09:22:28 18          We didn't oppose it or file our own because of

09:22:34 19  the broader argument that we presented that it related to the

09:22:41 20  *American Pipeline* of case, the equitable tolling that should be

09:22:46 21  available to each and every one of these plaintiffs in

09:22:48 22  Louisiana started back in 2009.

09:22:51 23          I think we referenced the settlement document

09:22:55 24  that lists out all of the various cases that have been settled

09:22:58 25  in this particular case.  Starting in 2009, there are a number

**OFFICIAL TRANSCRIPT**

09:23:03  1    of class action files in Louisiana, both state court and

09:23:11  2    federal court, that were not part of the *Ameron* group of cases

09:23:16  3    that were certified.  So, they remain in place all the way

09:23:20  4    until 2020, when this court certified the settlement.

09:23:23  5           So, if there is a -- if there is a lawsuit in

09:23:27  6    place and there is a class definition in which each and every

09:23:32  7    one of these plaintiffs fit, they should be afforded the

09:23:36  8    protection of the equitable tolling provided by the

09:23:40  9    *American Pipe* and *Transport Conceal*, and all the other cases.

09:23:43  10           THE COURT:  But aren't you getting crosswise with the

09:23:46  11    fact that there is cross jurisdictional issues there whether or

09:23:53  12    not there is a --

09:23:54  13           MR. DOYLE:  No, Your Honor.

09:23:56  14           THE COURT:  You don't see it that way?

09:23:59  15           MR. DOYLE:  Not at all.  If you go back and look --

09:24:04  16    Your Honor, I don't know if I can share my screen.  Let me see

09:24:23  17    if I can share it.

09:24:23  18           THE COURT:  That's all right.  Tell me what you're

09:24:25  19    looking at.

09:24:27  20           MR. DOYLE:  I'm looking at the settlement agreement,

09:24:29  21    and it references, as an exhibit, Document 22305-02, which is a

09:24:37  22    list of federal court cases starting in 2009 with *Donaldson* and

09:24:42  23    going all the way through to, you know, the ones that were

09:24:46  24    filed -- I'm scrolling down to see when they are -- years and

09:24:50  25    years later.

                        *OFFICIAL TRANSCRIPT*

09:24:50  1          We've got 2009 cases that are in place that are

09:24:53  2     class actions, in which these plaintiffs fit as class members.

09:25:01  3     If that's the case, then until that case is resolved, either --

09:25:05  4     and I think that's where (verbatim) *American Pipe* stands for,

09:25:07  5     if the case is ultimately either denied certification or is

09:25:13  6     certified, that's when action has to be taken, not beforehand.

09:25:17  7     They can choose to file it beforehand if they would like, but

09:25:20  8     they have until, in the case of Louisiana, one year following

09:25:24  9     certification or denial of certification to take action.

09:25:31 10          The defendants have contended that Bourlet,

09:25:34 11     Cross, and Jones are prescribed because they were filed in

09:25:38 12     *Little* in 2014.  The Court is well aware the *Ameron*

09:25:44 13     certification took place in 2014, if I'm not mistaken.  Less

09:25:51 14     than one year later, the Brooke case was filed, in which, on

09:25:55 15     the very filing date, on the very first date, Bourlet, Cross,

09:26:01 16     and Jones claims were part of the initial filing in Brooke,

09:26:03 17     less than one year after certification of *Ameron*.  So, what we

09:26:07 18     have is protection with regard to the prescription issue for

09:26:11 19     those three.

09:26:12 20          Only -- if you look at only those two cases, if

09:26:17 21     you look at *Ameron* and Brooke, they are protected just based on

09:26:20 22     those two.  It's not -- and I saw the argument.  They didn't

09:26:24 23     specify the case, but I've been looking closely at the

09:26:30 24     *China Agretech* case.  I know the Court is aware of this.  We

09:26:35 25     spoke about it in the *Bennett* case, you know, about

**OFFICIAL TRANSCRIPT**

resurrecting a claim that had already expired.  That's not what we have here.

We have *Ameron* being certified less than one year after Brooke expired; therefore, if they're in the initial filing in Brooke, they are not piggybacking and resurrecting an expired claim.  It's a valid claim that still can be filed and was filed less than one year after certification of the case where they were protected explicitly, even if you don't look at these other cases, you know, starting in 2009 and were filed in federal court in Louisiana.  So, with regard to those three, I think that the defendants are off the mark on the prescription issue.  The subsequent purchaser doctrine, and the same thing applies for Bourlet, Cross, Jones.  We've already conceded on Bourlet.

Then we've got Barbara Alphonso (inaudible) who's unopposed.  It's not.  With regard to Barbara Alphonso, the strict application.  We're not asking the Court to do anything other than apply the law that's in place, and the case was decided in the '70's by the U.S. Supreme Court.  There have been cases that follow.  *American Pipe* will protect all of the claims for any Louisiana plaintiff in this particular litigation starting in 2009 and ending in -- on January 10, 2021.

If you're looking at the whole list of cases that would provide that protection, the Court can't find anything

*OFFICIAL TRANSCRIPT*

09:28:23  1   otherwise.  They are protected if they fall within one of those

09:28:26  2   cases where there is a class definition.  Until that case is

09:28:30  3   either decided, it should be certified or if certification is

09:28:37  4   denied, protection is in place, and there is not a

09:28:40  5   cross jurisdictional issue, there is not a piggybacking issue,

09:28:43  6   we don't have to resurrect anything, you just look at the cases

09:28:48  7   that are there, the protection is available for each and every

09:28:50  8   one of these claims, Your Honor.

09:28:50  9        THE COURT:  Well, is that what the *China* case said?  It

09:28:53 10   seems to me that *China* says *American Pipe* doesn't apply to

09:28:59 11   subsequent class actions.  Do you disagree with that?

09:29:02 12        MR. DOYLE:  You don't have to look at subsequent class

09:29:04 13   actions.  What you're looking at is class actions that are in

09:29:07 14   place starting in 2009 that wasn't decided.

09:29:11 15        The defendants want the advantage of the *Ameron*

09:29:14 16   settlement, but they are disregarding all of the other cases

09:29:18 17   where they took no action.  They could have easily, you know,

09:29:22 18   challenged the certification of each and every one of those

09:29:24 19   other pending class actions.  They didn't do it.

09:29:27 20        Now, after the fact -- the same thing with

09:29:30 21   *Little*.  They settled the *Little* case.  We filed the *Little*

09:29:33 22   case in the Southern District of Louisiana because it was our

09:29:36 23   understanding there weren't going to be any other cases filed

09:29:40 24   after the *Ameron* resolution.

09:29:43 25        So, we filed the case in the Southern District of

*OFFICIAL TRANSCRIPT*

09:29:47   1    Alabama.  That case dropped along -- service was for years.  It

09:29:53   2    didn't happen in *China*.  There was discovery that was provided.

09:29:55   3    The *Little* case was noted that discovery, even though they

09:29:58   4    didn't answer, and they weren't required to answer.  The *Little*

09:30:02   5    plaintiff was for Bourlet, Cross, and Jones.  They participated

09:30:06   6    in that.  The case was never challenged, and ultimately, it was

09:30:10   7    settled by the defendants in this same document, 22305-2.

09:30:16   8            So, to come back now after the settlement of the

09:30:18   9    case and try to characterize it in a different way, I think, is

09:30:24  10    barred under this court's rules and under the Federal Rules of

09:30:32  11    Civil Procedure -- that case has already been settled and

09:30:35  12    decided, and the protection these three plaintiffs should be

09:30:38  13    afforded is, I think it's without dispute.  They are in the

09:30:42  14    case that was ultimately settled in 2020.

09:30:46  15            So, that was just one last issue, Your Honor,

09:30:49  16    that we believe is easily resolved as well, and that's the

09:30:57  17    subsequent purchaser doctrine issue with regard to Greater NOLA

09:31:09  18    Homes and Gregory Cross, because of the *American Pipe* protected

09:31:11  19    the equitable tolling that all cases in Louisiana should be

09:31:14  20    afforded based on 22305, the list of pending class actions, all

09:31:20  21    of them should be afforded protection all the way through to

09:31:24  22    January 10, 2021.

09:31:26  23            During that time, prior to 2021, January 10th,

09:31:35  24    2021, Mr. Cross and Greater NOLA Homes acquired a personal

09:31:39  25    right too.  Now, because they were not required to take action,

*OFFICIAL TRANSCRIPT*

09:31:43  1   that claim is still pending and still alive.  It's not barred

09:31:47  2   by any prescription period, and the settlement terms really

09:31:50  3   have no affect under the *American Pipeline* case.  A term in the

09:31:54  4   settlement doesn't bar the subsequent purchaser rule -- the

09:32:02  5   assignment of the -- to the subsequent purchaser.

09:32:06  6           THE COURT:  That's not what the defendants are saying.

09:32:09  7   The defendants are saying they had no claim to assign.  They

09:32:13  8   had given up their claim or their claim was dismissed by the

09:32:16  9   time they assigned it.  There was nothing to assign.  That's

09:32:18 10   their position, as I understand it.

09:32:22 11           MR. DOYLE:  Your Honor, if we look at the

09:32:25 12   *American Pipeline* case, what it says is, you have -- the

09:32:29 13   plaintiff has, and I guess any plaintiff, would have until the

09:32:34 14   statute of limitation period, the prescription period expired

09:32:38 15   following the resolution of the case, whether it's certified or

09:32:41 16   not.  Once that action is taken by the Court, then that

09:32:45 17   plaintiff has until the -- in this case, one year later to take

09:32:49 18   action.  That case -- that claim is alive.

09:32:53 19                Even though this court, as a term of the

09:32:55 20   settlement, made an order that said, hey, you need to opt out

09:32:58 21   by November 27, 2019, that's kind of immaterial in the view --

09:33:05 22   in the view of the *American Pipe* case.  We had -- the case

09:33:11 23   strictly said you have until the expiration of the statutory

09:33:15 24   period following either the certification or the denial of the

09:33:22 25   products case.

*OFFICIAL TRANSCRIPT*

09:33:23  1          So, in this case -- in this instance, we have

09:33:25  2    Greater NOLA Homes and Gregory Cross, they have until

09:33:30  3    January 10, 2021, to resolve the assignment issue with regard

09:33:36  4    to the subsequent purchaser doctrine and they did.  Both of

09:33:40  5    them got the assignment within that statutory period, which

09:33:44  6    allowed them to file their individual claim and have the

09:33:47  7    subsequent purchaser doctrine become a nonissue, and that's why

09:33:50  8    they survive in this instance.

09:33:53  9          The term of the settlement is kind of beside the

09:33:55 10    point.  I understand the Court had to work through that issue

09:33:59 11    and get the case resolved and close the books on it, but it

09:34:03 12    doesn't -- in that process, that doesn't necessarily -- you

09:34:08 13    view this in the circumstance in light of the *American Pipe*

09:34:12 14    case.

09:34:13 15          It doesn't say, even if the Court, you know, took

09:34:16 16    action to, you know, shut down the opt-out period prior to the

09:34:21 17    resolution of the class issue, there are no caveats.  What it

09:34:28 18    says is you have to go one year after the resolution of the

09:34:31 19    class issue.

09:34:32 20          Both Gregory Cross and Greater NOLA Homes got

09:34:38 21    their assignment of the personal right to sue, which is

09:34:41 22    required under Louisiana law within the necessary period;

09:34:45 23    therefore, their claim should be able to proceed.

09:34:53 24          With regard to Kerry Barre, we concede that his

09:34:55 25    claim is now prescribed.

                              ***OFFICIAL  TRANSCRIPT***

09:34:55  1        I think that takes care of all of the claims.

09:34:58  2        THE COURT:  Let me hear from the plaintiffs in

09:35:01  3   response, I'm sorry, the defendants in response.

09:35:04  4        Basically, what he's saying, there is no question

09:35:05  5   that the time limit has passed, but he's saying that because of

09:35:14  6   *American Pipe*, that it's been tolled, so the time hasn't gone

09:35:18  7   on him.  What do you say, Christy?

09:35:20  8        MS. EIKHOFF:  Well, Your Honor, there are a couple

09:35:22  9   major problems with that argument.  The first major problem

09:35:26 10   with that argument is that *American Pipe* is federal common law

09:35:31 11   that rules federal claims only.  This case is governed by

09:35:37 12   Louisiana law, and still, *American Pipe* is not binding on this

09:35:42 13   court, which is applying Louisiana law.

09:35:45 14        This court, in this case, has already been called

09:35:49 15   upon to address this very argument by the same plaintiffs who

09:35:56 16   were at the time represented by the PSC.  In response to the

09:36:02 17   defendant's motion to dismiss, the PSC made the same argument

09:36:06 18   that Mr. Doyle is making now.

09:36:10 19        This court ruled that *American Pipe* does not

09:36:14 20   apply in Louisiana and that Louisiana law does not recognize

09:36:20 21   cross jurisdictional tolling.  So, Mr. Doyle is judicially

09:36:25 22   estopped from presenting that argument to the Court now on the

09:36:28 23   same claims and in the same case.  It runs contrary to the law

09:36:35 24   of this case.  So, that's my response on that point.

09:36:38 25        Your Honor, if I may just respond to a couple of

*OFFICIAL TRANSCRIPT*

09:36:41  1  more points.  He said with respect to Ms. Alphonso, that there

09:36:47  2  is a dispute about what she knew and when she knew it.  There

09:36:51  3  is not a dispute about what she knew and when she knew it.  We

09:36:55  4  submitted her own testimony in our statement of facts.  They

09:36:59  5  did not dispute it and nor could they because it was her own

09:37:04  6  testimony, but they have not presented to the Court any dispute

09:37:08  7  of material facts that we presented; therefore, it's conceded

09:37:13  8  by operation of law.

09:37:15  9         He also said, well, the reason we didn't get into

09:37:24 10  that in our brief and mention that we dispute anything is

09:37:27 11  because we're relying on this *American Pipe* argument, which

09:37:30 12  we've already shown is not valid.

09:37:32 13         Subsequent purchaser, I'm not sure how

09:37:37 14  *American Pipe* is quite fitting into the subsequent purchaser

09:37:41 15  argument, but what I was hearing was an argument that seemed to

09:37:45 16  be saying that the global class settlement didn't really settle

09:37:49 17  all of the claims and that any of these former owners after the

09:37:54 18  Court issued its dismissal orders couldn't prosecute a claim

09:37:59 19  against Taishan, and, therefore, they could also hand that

09:38:02 20  claim off to a subsequent purchaser.  That's not how the

09:38:07 21  settlement works.  That's not how the class settlement works,

09:38:11 22  and it's just not so, that they had a claim to assign after

09:38:16 23  this court's dismissal order in May of 2020.

09:38:24 24        THE COURT:  Okay.  Let's deal with the Ross case.

09:38:36 25        MR. O'BRYON:  Surprise.  The first time I heard -- I

*OFFICIAL TRANSCRIPT*

09:38:36  1    haven't started talking and found myself on mute, so I'm doing

09:38:36  2    better already.

09:38:38  3                As far as the Rosses go, Judge, we have the same

09:38:40  4    equitable tolling argument as Mr. Doyle has just eloquently

09:38:46  5    expressed, other than to say I don't see anything

09:38:48  6    cross jurisdictional with respect in the cases.  They are all

09:38:50  7    dismissed in Louisiana.  I'll move on to my Ross-specific

09:38:54  8    arguments, all of which are based on basic principles in

09:38:58  9    Louisiana law.

09:39:00  10               Certainly, the fact that we filed a suit against

09:39:03  11   the solidary obligor in 2009 almost immediately upon discovery

09:39:07  12   of the cause of action interrupts prescription.  That's black

09:39:09  13   letter law.  That interruption continues to today.  That suit

09:39:13  14   is still pending and active in Jefferson Parish.

09:39:17  15          THE COURT:  Well, they take the position, though, that

09:39:21  16   no determination of a joint tortfeasor was made, that the

09:39:29  17   defendant was dismissed before.  There was a joint tortfeasor

09:39:38  18   situation, so they contest and say there was no joint

09:39:43  19   tortfeasor.  What's your response to that?

09:39:47  20          MR. O'BRYON:  That's another thing that's very well

09:39:51  21   established in the law.  The Louisiana Supreme Court had said

09:39:52  22   in the *Younger* case, and I appreciate they apparently have a

09:39:53  23   different reading of the *Younger* case, so the Court will have

09:39:56  24   to read it for itself.

09:39:58  25               My appreciation of the *Younger* case and the

**OFFICIAL TRANSCRIPT**

09:40:01  1   well-established law is that the mere allegation of solidarity

09:40:06  2   gets you all the way to trial on the merits, and if, after

09:40:10  3   trial on the merits, if you haven't proved that the timely sued

09:40:13  4   defendant was, in fact, a solidary obligor, then at that point

09:40:16  5   the exception of prescription becomes ripe.

09:40:19  6          Here, there has never been a trial on the merits,

09:40:22  7   so the mere allegation of solidarity as to C. Adams, which is a

09:40:28  8   dead-cinch case, as they are the manufacturer of the defective

09:40:32  9   home, is enough to defeat prescription.

09:40:34  10         There needs to be a judicial determination that

09:40:36  11  that timely sued obligor was not a solidary obligor rather than

09:40:42  12  vice versa.  You are not required to prove your entire case

09:40:45  13  again a timely sued person to survive the prescription defense

09:40:48  14  before trial.  It's the other way around.

09:40:50  15         That said, then I'm happy to talk about that

09:40:59  16  further if you're interested, but looking to move on to

09:41:03  17  subsequent purchaser, during the course of our case in

09:41:07  18  Jefferson where we say Taishan might be a defendant, we settled

09:41:10  19  with C. Adams, our manufacturer and seller of our home, in

09:41:16  20  2014, and at the same time that settlement was confected, took

09:41:22  21  the assignment from C. Adams for whatever rights they had

09:41:25  22  against Taishan and the Taishan defendants and toward a

09:41:27  23  contract of any kind were assigned to the Rosses.  At that

09:41:30  24  time, we filed -- amended our petition, which is in our motion

09:41:35  25  papers, to assert our claims and C. Adams' claims against

*OFFICIAL TRANSCRIPT*

09:41:39 1   Taishan, 2014.

09:41:42 2          What is black letter law is that C. Adams' claims

09:41:47 3   against Taishan, which are essentially for contribution or

09:41:49 4   indemnification amongst joint tortfeasors, come into existence

09:41:55 5   for purposes of prescription or prescription begins to accrue

09:41:58 6   at the time C. Adams was either cast in judgment or makes

09:42:02 7   payment.  They were never cast in judgment.  They did make

09:42:05 8   payment in 2014 contemporaneous with the assignment.

09:42:08 9          So, basically our -- the C. Adams claims were

09:42:12 10  asserted against Taishan through this assignment on day one of

09:42:17 11  prescription.  So, there is -- there is nothing that's

09:42:22 12  prescribed about the Rosses claims against Taishan presuming

09:42:27 13  that, in fact, they are simply taking the subsequent purchaser,

09:42:30 14  the assigned claims from C. Adams.

09:42:32 15         I got into a little bit of the weeds, and I don't

09:42:36 16  think it's necessary for the Court's disposition, but there is

09:42:42 17  a bit of an issue in terms of who has got the claim for the

09:42:47 18  ongoing diminution of property.  Clearly, it's not a continuing

09:42:51 19  tort.  There is no allegation made there, but, for example,

09:42:55 20  this defective Chinese drywall that causes damage to the home

09:43:01 21  when it's put in there that causes damage to the contents.

09:43:05 22  Here the Rosses are a subsequent purchaser.  They bought the

09:43:06 23  house less than four months after the drywall was installed as

09:43:06 24  a newly renovated home.

09:43:11 25         Now, they put their silver service in there.  It

**OFFICIAL TRANSCRIPT**

09:43:13  1   corrodes.  It's damaged.  Who can possibly be the possessor in

09:43:17  2   the claim to the damage to the Rosses' personal property other

09:43:20  3   than the Rosses?  It really gets into a little bit of an

09:43:23  4   awkward situation, and I don't think it's necessary for

09:43:25  5   purposes of this motion to go back and upset all of that

09:43:28  6   because I think the law is very clear that the Rosses have a

09:43:31  7   timely assignment of this.

09:43:32  8          But the whole application of subsequent purchaser

09:43:38  9   doctrine here in the Chinese Drywall long-term continuing

09:43:43 10   damage from one wrongful act gets a little bit awkward in terms

09:43:47 11   of exactly what is damaged.  You go back to the *Eagle Pipe* and

09:43:51 12   the court decision, and it talks about the cause of action

09:43:55 13   going to the owner of the property during the time that the

09:43:57 14   damage is incurred, which I think gets you here.  So, I don't

09:44:00 15   think that necessarily needs to be addressed today in the

09:44:04 16   context of this motion because it's a timely assigned claim,

09:44:10 17   but you can get into a thorny thicket trying to sort out what,

09:44:16 18   you know, what got damaged when and who it belongs to.

09:44:18 19          THE COURT:  But there is a difference between

09:44:21 20   continuous tort and continuous damage.  Continuous tort keeps

09:44:25 21   interrupting prescription because it's a new tort each time.

09:44:27 22   But the damage situation, it's not like a continuous tort which

09:44:36 23   constantly interrupts prescription.  There is a distinction

09:44:38 24   there.

09:44:40 25          Okay.  All right.  Let me hear a response then

**OFFICIAL TRANSCRIPT**

09:44:41  1    from the defendants on this issue.

09:44:46  2         MR. LAWSON:  Your Honor, thank you.  Both Mr. Doyle and

09:44:52  3    Mr. O'Bryon have brought up the concept that

09:44:54  4    cross jurisdictional tolling does not apply here because

09:44:57  5    somehow all of these cases are filed in the Eastern District of

09:45:00  6    Louisiana.  That's not correct and doesn't under

09:45:04  7    cross jurisdictional tolling.

09:45:05  8              The issue is that the cases at issue here are

09:45:08  9    filed in federal court.  While that federal court sat in

09:45:11  10   Louisiana, it's cross jurisdictional because the other

09:45:14  11   jurisdiction would be the Louisiana state court.  The Louisiana

09:45:17  12   law would not recognize those claims that were filed in another

09:45:20  13   jurisdiction to be able to interrupt prescription, and that is

09:45:23  14   what this court's ruling was on the motion to dismiss

09:45:27  15   previously in this very case.

09:45:33  16             Regarding Mr. O'Bryon's arguments on the Rosses'

09:45:33  17   claims, the idea of the C. Adams defendant being a solidary

09:45:38  18   obligor with Taishan is a red herring here.  Because the Rosses

09:45:41  19   are subsequent purchasers, they do not have a direct claim for

09:45:44  20   property damages.  So, it does not matter if there was

09:45:47  21   interruption of prescription because C. Adams was a solidary

09:45:52  22   obligor with Taishan at the time the Rosses filed against

09:45:55  23   C. Adams in 2009 because the Rosses didn't have a valid claim

09:45:58  24   for property damages against Taishan at that time.  They cannot

09:46:01  25   bring a claim for property damages in this action for their own

*OFFICIAL TRANSCRIPT*

09:46:04  1   property damages.  The only claim that they could bring was for

09:46:08  2   damages that were incurred by C. Adams.

09:46:11  3            Here, we disagree with Mr. O'Bryon on the point

09:46:15  4   it does matter who owned the clam at the time that the damage

09:46:18  5   occurred.  That was C. Adams.  C. Adams owned the property at

09:46:22  6   the time that the Chinese drywall was installed.  As a result

09:46:23  7   of that, we need to look at whether C. Adams had a claim when

09:46:27  8   they assigned it in 2014.  They did not.  They were put on

09:46:31  9   notice that they didn't -- that they had a claim against

09:46:32 10   Taishan for damages in 2009 when the Rosses filed their own

09:46:36 11   lawsuit against C. Adams.  It took five years for that claim to

09:46:41 12   come to settlement, and when the assignment was made at that

09:46:43 13   time in 2014, there was no claim left for C. Adams to be able

09:46:48 14   to assign to the Rosses for property damages.  It was gone.

09:46:51 15            To the extent that they argue that, well,

09:46:55 16   C. Adams really just had an indemnification claim against

09:46:57 17   Taishan.  First of all, they needed to be able to present facts

09:47:00 18   to able to support some kind of relationship of indemnity

09:47:04 19   between Taishan and C. Adams, a contractual relationship or

09:47:07 20   otherwise, to be able to support it.  They need to be able to

09:47:10 21   pull up a record to able to show that that claim had ever

09:47:13 22   actually been filed before, but there is nothing in the record

09:47:15 23   to support, Your Honor.  For that reason, there is no

09:47:17 24   indemnification claim that they can point to to be able to

09:47:20 25   salvage their claim from prescription under Louisiana law.

*OFFICIAL TRANSCRIPT*

09:47:23  1          Even if you look further to what Louisiana law

09:47:26  2   says, if there is an indemnification claim, they still do not

09:47:31  3   have support under Louisiana law, as we pointed out in our

09:47:35  4   reply brief.  So, for those reasons Your Honor, we would move

09:47:38  5   for summary judgment on the Rosses claims.

09:47:40  6          THE COURT:  Okay.  Thank you very much.

09:47:42  7          Anybody else?  Any comments?

09:47:47  8          Okay.  All right.  Folks, thank you very much.  I

09:47:50  9   understand the positions of each of you.  I appreciate your

09:47:54 10   briefs.  You stated them well, both in briefs and in oral

09:47:58 11   argument.  I will be coming out with my opinion very shortly.

09:48:01 12   Thank you very much.  Court will stand in recess.

09:48:06 13          Yes?

09:48:07 14          MR. DAVIDSON:  Your Honor, one moment, if I may here.

09:48:08 15   There are two motions for summary judgment before the Court.

09:48:11 16   Again, this is Andrew Davidson from Orrick Herrington on behalf

09:48:15 17   of the B&C Companies.  We are ready to offer our argument on

09:48:22 18   the motion today if the Court would like to hear it.

09:48:22 19          THE COURT:  Well, you know, I know you all are

09:48:25 20   piggybacked on the other ones, but you do have a separate

09:48:29 21   motion.  Do you want me to reconsider what I stated in, what, a

09:48:37 22   hundred pages?  If you want to argue that, I'll listen to you.

09:48:42 23          MR. DAVIDSON:  Yes.  Thank you, Your Honor.  Again,

09:48:44 24   Andrew Davidson from Orrick Herrington on behalf of BNBM PLC,

09:48:53 25   CNBM Companies, and BNBM Group.

**OFFICIAL TRANSCRIPT**

09:48:54  1          Now, here we're seeking summary judgment on all

09:48:55  2   claims because of their Chinese law and Louisiana law.  Even

09:48:59  3   though the outcome is the same, the standards are different.

09:49:02  4   The B&C Companies cannot be derivatively liable for any claims

09:49:05  5   that are assessed against Taishan.

09:49:06  6          Now, the ten claimants here in the Brooke action,

09:49:08  7   each one alleges that Taishan is the manufacturer of the

09:49:12  8   drywall on their property; thus, any claim against the

09:49:15  9   B&C Companies would be purely derivative and based on the

09:49:18 10   indication of contacts -- indication of acts by Taishan.

09:49:22 11          Now, as Your Honor just mentioned, the Court has

09:49:24 12   previously addressed imputations in the context of personal

09:49:28 13   jurisdiction, and there the Court did initially conclude that

09:49:33 14   Chinese law would apply to any veil-piercing inquiry.  The

09:49:38 15   Court subsequently applied forum state law based on a perceived

09:49:38 16   confession by the B&C Companies that because the outcome was

09:49:42 17   the same, that they could apply forum state law.  Now, we

09:49:45 18   maintain that conclusion is flawed based -- because even just

09:49:50 19   the application of those forum state laws led to different

09:49:53 20   outcomes.

09:49:53 21          In Louisiana, for example, the Court found that

09:49:55 22   Taishan and BNBM were alter egos and that all of the

09:50:00 23   B&C Companies were part of a single business enterprise with

09:50:04 24   Taishan, but in Florida and Virginia, the Court found that BNBM

09:50:06 25   and PLC was liable on an agency theory, and CNBM Company and

**OFFICIAL TRANSCRIPT**

09:50:12  1   BNBM Group were not derivatively liable.

09:50:14  2        Now, here we're making no confession that Chinese

09:50:18  3   law and Louisiana law are the same.  They differ.  The

09:50:22  4   standards are different, and under Louisiana's choice of law

09:50:28  5   provisions, the Court has to apply Chinese corporate law.

09:50:30  6        As we've argued before and as we argue again

09:50:32  7   today, under Chinese law, there is no ability to pierce the

09:50:35  8   corporate veil here.  It's limited to cases where the

09:50:37  9   shareholder abuses the independent status of the company,

09:50:41 10   evades debt, and seriously damages the interest of creditors in

09:50:43 11   the company.

09:50:44 12        This isn't the relationship between Taishan and

09:50:46 13   the B&C Companies, and it's not the record before the Court.

09:50:49 14   There is no evidence that the B&C Companies knew Taishan to

09:50:53 15   avoid debt or damage creditors, and indeed, Taishan paid the

09:50:57 16   $248 million MDL class settlement all on its own.

09:51:00 17        Now, plaintiffs present no evidence and argument

09:51:03 18   or opposition showing that creditors have been damaged or debts

09:51:06 19   have been avoided, and record evidence supports the conclusion

09:51:09 20   that there has been no abuse of Taishan's corporate forum.

09:51:13 21        Taishan is and continues to be a profitable

09:51:15 22   company.  Taishan and the B&C Companies comply with corporate

09:51:19 23   governance requirements.  Taishan is well capitalized and has

09:51:23 24   always repaid its debts, and the Court did previously find that

09:51:27 25   Taishan was not incorporated or maintained for an improper

*OFFICIAL TRANSCRIPT*

09:51:30 1   purpose.

09:51:32 2           Now, we maintain that Chinese law does apply, and

09:51:39 3   to avoid any uncertainty here today, that Chinese law differs

09:51:41 4   from Louisiana law, but even if the Court were to look at

09:51:44 5   Louisiana law, B&C Companies still are not derivatively liable.

09:51:49 6           The key inquiry in Louisiana alter ego law is

09:51:51 7   whether there is evidence of fraud or deceit practiced by the

09:51:54 8   shareholder acting through the subsidiary, but again, the Court

09:51:58 9   found that Taishan was an autonomous company and that there was

09:52:00 10  no evidence of fraud.

09:52:02 11          In the jurisdictional order looking at alter ego

09:52:05 12  issues, the Court didn't apply Louisiana law.  They looked at

09:52:08 13  *Hargrave v. Fiberboard*, which applied Texas law.  Importantly

09:52:13 14  here, Texas law does not require a finding of fraud or imposed

09:52:17 15  a heavy burden of showing that the companies are not

09:52:19 16  distinguishable.

09:52:20 17          Now, as Your Honor mentioned, we argued this and

09:52:23 18  we have in it our papers so I won't belabor the point, but in

09:52:26 19  light of the fact that the plaintiffs did not file any

09:52:28 20  opposition to the operation or operation of Chinese law or to

09:52:30 21  the operation of Louisiana alter ego law, that there is no

09:52:34 22  derivative liability under either one of those.

09:52:36 23          Now, the one issue that the plaintiffs do raise

09:52:40 24  is that the Court can, Your Honor, rely on its ruling in a

09:52:44 25  jurisdictional context, and that ruling was that Taishan and

*OFFICIAL TRANSCRIPT*

09:52:48 1    the B&C Companies are a part of a single business enterprise,

09:52:53 2    but that order cannot apply to the determination of liability.

09:52:58 3          Now, first the Court said so itself stating in

09:52:59 4    that order that any determination as to the single business

09:53:03 5    enterprise in the liability phase would be reserved for if and

09:53:07 6    when such a determination becomes necessary.  The Court can't

09:53:10 7    just apply that same analysis here today and say, well,

09:53:13 8    everything is the same for the purposes of liability.

09:53:16 9          The standard for finding single business

09:53:19 10    enterprise liability is higher and required proof by clear and

09:53:23 11    convincing evidence, not the preponderance of the evidence

09:53:28 12    standard that the Court used in the jurisdictional phase.

09:53:28 13          Plaintiff's arguing here that the determination

09:53:31 14    and the jurisdictional phase is conclusive as to all subsequent

09:53:35 15    phases cannot hold.  That argument, taken to its conclusion,

09:53:39 16    would mean that any defendant who unsuccessfully challenges

09:53:42 17    derivative liability would be conclusively determined to be

09:53:47 18    liable thereafter, and that just can't hold.

09:53:48 19          Now, if the Court does get to a single business

09:53:53 20    enterprise analysis, and again, we make no concession here that

09:53:56 21    Louisiana law applies, the B&C Companies are still not liable

09:54:00 22    under a single business enterprise theory.  As with the

09:54:02 23    alter ego analysis, the single business enterprise finding

09:54:05 24    requires evidence of fraud or other wrongdoings before piercing

09:54:09 25    the corporate veil, and there is just no evidence of that here.

*OFFICIAL TRANSCRIPT*

09:54:13  1           At the end of the day, the single business

09:54:16  2   enterprise doctrine is a mechanism to ensure that a plaintiff

09:54:19  3   will not be frustrated in trying to collect on the judgment

09:54:22  4   based on the corporate forum.  Taishan's continued good faith

09:54:27  5   efforts to resolve this litigation demonstrates that that

09:54:27  6   concern is not at play here.

09:54:29  7           Thank you very much, Your Honor, for taking the

09:54:33  8   argument at this time.  We turn it over to the plaintiffs.

09:54:34  9           THE COURT:  All right.  Didn't I decide that?  I mean,

09:54:38 10   you want me to reconsider, but the Fifth Circuit has already

09:54:41 11   affirmed me.  Do you want them to reconsider, too?

09:54:46 12           MR. DAVIDSON:  Well, Your Honor, I would say that the

09:54:48 13   Fifth Circuit has decided this and has issued that ruling.

09:54:52 14   That was, again, still in the jurisdictional context, not in

09:54:55 15   the liability context.  As we mentioned, the standards are

09:54:59 16   different.

09:54:59 17           THE COURT:  Okay.  Anything from the plaintiffs on

09:55:02 18   this?

09:55:05 19           MR. DOYLE:  Your Honor, I don't have anything.  We

09:55:07 20   stand with the opposition to we filed.  This issue has already

09:55:11 21   been decided by the Court, the district court, and the

09:55:14 22   Fifth Circuit.  We don't have anything to add.  We believe it's

09:55:17 23   pretty straightforward.

09:55:18 24           THE COURT:  Okay.  All right.  Thank you very much.

09:55:21 25   Anything else from anyone?

*OFFICIAL TRANSCRIPT*

09:55:22  1          All right, folks.  Thank you.  Court will stand

09:55:24  2  in recess.  I appreciate it.

3          (WHEREUPON, at 9:55 a.m., the proceedings were

4  concluded.)

5                          *    *    *

6

7                  REPORTER'S CERTIFICATE

8

9          I, Cathy Pepper, Certified Realtime Reporter, Registered

10  Merit Reporter, Certified Court Reporter in and for the State

11  of Louisiana, Official Court Reporter for the United States

12  District Court, Eastern District of Louisiana, do hereby

13  certify that the foregoing is a true and correct transcript to

14  the best of my ability and understanding from the record of the

15  proceedings in the above-entitled and numbered matter.

16

17                          *s/Cathy Pepper*

18                          Cathy Pepper, CRR, RMR, CCR
                            Certified Realtime Reporter
19                          Registered Merit Reporter
                            Official Court Reporter
20                          United States District Court
                            Cathy_Pepper@laed.uscourts.gov
21

22

23

24

25

                    ***OFFICIAL  TRANSCRIPT***