UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL NO. 2047 SECTION: L JUDGE FALLON MAG. JUDGE NORTH |
| THIS DOCUMENT RELATES TO: | |
| *Amorin, et al. v. Taishan Gypsum Co., Ltd., et al.*, Case No. 11-cv-1395 | |

**TAISHAN'S PRE-EVIDENTIARY HEARING BRIEF FOR THE ADJUDICATION OF DAMAGE CLAIMS BY DARLA AND GENE GIBBS AND JOHN CARTER**

# **TABLE OF CONTENTS**

I.  PROCEDURAL BACKGROUND...................................................................... 1

II. THE GIBBS AND CARTER DAMAGE CLAIMS............................................ 3
    A.  The Gibbses' Claims ............................................................................ 3
    B.  Mr. Carter's Claims ............................................................................. 3

III. LEGAL STANDARDS AND CHOICE OF LAW ............................................ 5
    A.  Adjudication of Damages under Rule 55................................................ 5
    B.  Alabama Law Governs Plaintiffs' Damages Claims. .............................. 6

IV. PLAINTIFFS CANNOT ESTABLISH THEIR DAMAGES UNDER
    ALABAMA LAW .............................................................................................. 6
    A.  Plaintiffs Cannot Establish Real Property Damages Under Alabama Law ........... 6
    B.  Plaintiffs Cannot Establish "Loss of Use and Enjoyment" Damages Under
        Alabama Law ..................................................................................... 10
    C.  Plaintiffs Cannot Establish Alternative Living Expense Damages Under
        Alabama Law ..................................................................................... 13
    D.  Plaintiffs Cannot Establish Personal Property and Prior Repair Damages
        Under Alabama Law ........................................................................... 14
    E.  An Award for Attorneys' Fees Is Not Warranted Under Alabama Law .............. 15
    F.  Set Off for Prior Payments.................................................................. 18

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*AALAR, Ltd. v. Francis,*
   716 So. 2d 1141 (Ala. 1998) .......................................................................................10

*Arthur Rutenberg Homes, Inc. v. Norris,*
   804 So. 2d 180 (Ala. 2001) ...........................................................................................8

*Birmingham Coal & Coke Co. v. Johnson,*
   10 So. 3d 993 (Ala. 2008) ....................................................................................10, 11

*Bonilla v. Trebol Motors Corp.,*
   150 F.3d 77 (1st Cir. 1998) .........................................................................................16

*Carson v. Emp'rs Cas. Co.,*
   282 So. 2d 913 (Ala. Civ. App. 1973) .........................................................................15

*Ex parte Goldsen,*
   783 So. 2d 53 (Ala. 2000) .............................................................................................6

*Ex parte Grand Manor, Inc.,*
   778 So. 2d 173 (Ala. 2000) .........................................................................................11

*Fields v. Primerica Ins. Co.,*
   2002 WL 31059371 (M.D. Ala. Jul. 30, 2002) ...........................................................15

*Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.,*
   973 F.2d 155 (2d Cir.1992) ...........................................................................................5

*Hovey v. Elliott,*
   167 U.S. 409 (1897) ....................................................................................................16

*In re Chinese Manufactured Drywall Prod. Liab. Litig.,*
   706 F. Supp. 2d 655 (E.D. La. 2010) ...........................................................................9

*In re Chinese-Manufactured Drywall Prod. Liab. Litig.,*
   No. MDL 2047, 2010 WL 1710434 (E.D. La. Apr. 27, 2010) ....................................9

*James v. Frame,*
   6 F.3d 307 (5th Cir. 1993) .............................................................................................5

*Jerkins v. Lincoln Elec. Co.,*
   103 So. 3d 1 (Ala. 2011) ...............................................................................................8

*Lary v. Gardener,*
   908 So. 2d 955 (Ala. Civ. App. 2005) ..................................................................14, 15

*Leftwich v. Brewster*,
    306 So. 3d 26 (Ala. 2020) ........................................................................................7

*Lott v. Taishan Gypsum Co.*,
    No. 1:17cv217-LG-RPM, 2020 WL 7388431 (S.D. Miss. Dec. 16, 2020) ............................17

*M C Bank & Trust Co. v. Suard Barge Serv.*,
    Case No. 16-14311, 2017 WL 3991076 (E.D. La. Sept. 11, 2017) ...........................................5

*Mobil Expl. & Producing U.S., Inc. v. Cajun Const. Servs., Inc.*,
    45 F.3d 96 (5th Cir. 1995) .........................................................................................5

*Pac. Enters. Oil Co. v. Howell Petroleum Corp.*,
    614 So. 2d 409 (Ala. 1993) ......................................................................................16

*Poffenbarger. Dialysis Clinic, Inc. v. City of Dothan*,
    No. 1:10-CV-1051-WKW [WO], 2012 U.S. Dist. LEXIS 156351 (M.D. Ala. Nov. 1,
    2012) .........................................................................................................................7

*Poffenbarger v. Merit Energy Co.*,
    972 So. 2d 792 (Ala. 2007) ...................................................................................6, 7

*Rawlings v. Dovenmuehle Mortg., Inc.*,
    64 F. Supp. 2d 1156 (M.D. Ala. 1999) ..................................................................10

*Rooney v. Southern Dependacare, Inc.*,
    672 So. 2d 1 (Ala. 1995) ............................................................................................6

*Servicios-Expoarma, C.A. v Indus. Mar.Carriers, Inc.*,
    135 F.3d 984 (5th Cir. 1998) ....................................................................................5

*United States v. Shipco Gen., Inc.*,
    814 F.2d 1011 (5th Cir. 1987) ..................................................................................5

*Wal-Mart Stores, Inc. v. Bowers*,
    752, So.2d 1201, 1204 (Ala. 1999) ........................................................................11

*White Consol. Indus., Inc. v. Wilkerson*,
    737 So. 2d 447 (Ala. 1999) ...............................................................................10, 11

**RULES**

FED. R. CIV. PRO. 26(b)(2) ..........................................................................................9

Rule 8(c) .......................................................................................................................16

Rule 11 .........................................................................................................................16

Rule 23(e)(4) ..................................................................................................................1

Rule 55 ......................................................................................................................1, 2, 5

**STATUTES**

Ala. Code § 12-19-271 ..........................................................................................................16

Ala. Code § 12-19-272(a) .....................................................................................................15

Ala. Code § 34-11-1(13)(d) ...................................................................................................8

In January 2020, thousands of claimants resolved their drywall claims against Taishan in a global class settlement approved by Judge Fallon. Plaintiffs Darla and Gene Gibbs and John Carter were among the small handful of claimants who opted out. They now have the only two claims left in the *Amorin* case in this MDL. Opting out of the settlement was their right under Rule 23(e)(4). But Judge Fallon pointed out in his fairness ruling that settling these complicated claims was a prudent choice because the settling claimants faced risks by proceeding with litigation. Those risks included losing the advantages of a class proceeding and bearing the burden of proving each element of their damages in a contested Rule 55 proceeding. These few remaining claimants, having chosen to litigate their damages claims, must now do so as individual plaintiffs under governing Alabama law.

But Alabama law precludes Plaintiffs from recovering several of their requested damages categories. And even if theoretically allowable, the claims fail factually because Plaintiffs did not develop sufficient evidence in discovery to support their damages. Instead, Plaintiffs seek to use evidentiary shortcuts that violate governing law and established precedent of the MDL as determined by Judge Fallon. The Court should deny or at least significantly limit Plaintiffs' damages claims.

## I.   PROCEDURAL BACKGROUND

On June 13, 2011, the Plaintiffs Steering Committee ("PSC") filed the *Amorin* complaint in the Eastern District of Louisiana. That complaint sought a nationwide class of homeowners of real property located in the United States "containing problematic drywall manufactured, sold, distributed, and/or supplied by the Defendants." Louisiana *Amorin* Complaint, 2:11-cv-1395 at ¶ 119. In 2012, the PSC changed course and amended the *Amorin* Complaint to name thousands of specific claimants (instead of using a broad class definition) as the putative class members in an "Omnibus Class Action Complaint in Intervention" Rec Doc. 16225 (Omnibus Complaints XV,

the "Intervention Complaint"). The Intervention Complaint attached a list of 4,072 alleged "class members" to the *Amorin* class-action complaint.

In 2014, the Court held Taishan in default in the *Amorin* Complaint. Rec. Docs. 17814 and 17815. Three months later, the Court certified a class consisting of only the identified *Amorin* plaintiffs, explicitly excluding "absent class member[s]." Rec. Doc. 18028 at 34-35. In 2015, Judge Fallon ordered a detailed process for adjudication of class damages for the *Amorin* class under Rule 55 and held a full evidentiary hearing. Rec. Docs. 18921, 19118, 20802. In 2017, the Court issued Findings of Fact and Conclusions of Law ("FOFCOL") regarding *Amorin* class damages. Rec. Doc. 20741.

In 2019, Judge Fallon issued "the *Amorin* trial plan" for Rule 55 adjudication of default damages for all *Amorin* claims in the MDL, including the Gibbs and Carter claims. Rec. Doc. 22251 at 1. Shortly after Judge Fallon issued his *Amorin* trial plan, the parties agreed to a class settlement to resolve all drywall claims against Taishan. In issuing final approval to the Taishan Class Settlement, Judge Fallon warned of the "inherent difficulties and uncertainties associated with pursuing" litigating a claim as an individual opt-out. Rec. Doc. 22460 at 47. But Gene and Darla Gibbs opted out in October 2019, as did John Carter a few weeks later. The Gibbs and Carter claims were the only two *Amorin* claims in the MDL to opt-out. So, on November 20, 2020, Judge Fallon issued an *Amorin* Case Management Order outlining "a litigation plan to determine Rule 55 damages for the two remaining claims." Rec. Doc. 22976 at 1. Judge Fallon ordered that an evidentiary hearing must "assess all damages sought, including property and non-property damages claims." *Id.* Judge Fallon also ordered that the evidentiary hearing would follow the Federal Rules of Evidence and Local Rules of this Court." *Id.* at 2-3.

The parties have completed discovery, which is now closed. On March 1, 2021, the parties attended a hearing with Magistrate Judge North, who ordered the parties to submit their "respective proposed procedures for briefing, a potential evidentiary hearing, and post-hearing briefing." Rec. Doc. 23064. On March 12, 2021, Magistrate Judge North issued an order setting a schedule for pre-hearing procedures, including submissions of pre-hearing briefs, and set the evidentiary hearing for the Gibbs and Carter claims for March 31, 2021. Rec. Doc. 23067.

## II.   THE GIBBS AND CARTER DAMAGE CLAIMS

### A.   *The Gibbses' Claims*

Gene and Darla Gibbs purchased their house at 701 Waverly Place, Opelika, Alabama, in 2007. Their house was actually built by Plaintiff Carter, who also built another house on adjacent property that is the subject of his claim. The Gibbses provided no evidence of the purchase price, but building records show a build-cost of $119,846. *See* Exhibit C (Gibbs Home Building Permit). They have lived in the house continuously since 2007 and have never remediated it. In their Supplemental Plaintiff Profile ("SPPF") submission, the Gibbses declared that they sought $0 in alternative living expenses, $0 for diminution in value of their property, $337,500 in "loss of use and/or loss of enjoyment" damages, $8,697 in home repair damages, and $4,322 in personal property damages. Exhibit A (Gibbs SPPF). They also seek remediation damages but have not specified an amount. The Gibbs SPPF admits that they received $5,311.95 in prior damages payments in the Chinese Drywall Settlement Program established in this MDL. Ex. A at 5-6.

### B.   *Carter's Claims*

Carter purchased undeveloped property in 2006 to build several houses. His self-owned LLC built a house at 703 Waverly Place next door to the Gibbses' house. Records produced by Carter show a build-cost of $111,339. *See* Exhibit D (Carter Home Building Permit). Carter never lived in the house but signed a written lease to rent it to his mother, who paid him $600 a month

from May 2007 until she vacated the property around November 2011. The house has remained vacant since then. Carter has not remediated the property and has not attempted to find other renters. In his SPPF, Carter declared that he sought $0 in alternative living expenses, $0 for diminution in value of their property, $337,500 in "loss of use and/or loss of enjoyment" damages, $5,337 in repair damages, and $8,714 in personal property damages. He also seeks remediation damages but has not specified an amount. Exhibit B (Carter SPPF). Carter's SPPF admits that he received $5,122.35 in prior damages payments in the Chinese Drywall Settlement Program established in this MDL. Ex. B at 5-6.

In Plaintiffs' March 5, 2021 brief outlining their position on damages adjudication, the Gibbs and Carter Plaintiffs stated their intent to pursue nine categories of damages: "1) cost of remediation; 2) personal property damage; 3) recurring alternative living expenses; 4) non-recurring alternative living expenses; 5) pretrial repair costs; 6) post-trial repair costs; 7) lost rental income; 8) loss of use/ loss of enjoyment; 9) attorney's fees and expenses." The following chart summarizes the categories and amounts of damages at issue:

| Plaintiffs' Identified Category | Gibbs Claimed Amount | Carter Claimed Amount |
|---|---|---|
| Cost of Remediation | not yet specified | not yet specified |
| Diminution of Property Value | $0 | $0 |
| Pretrial Repair Costs | $8,697 | $5,337 |
| Post-Trial Repair Costs | not yet specified | not yet specified |
| Loss of Use / Loss of Enjoyment | $337,500 | $337,500 |
| Personal Property Damage | $4,322 | $8,714 |
| Lost Rental Income | N/A | not yet specified |
| Recurring Alternative Living Expenses | $0 | $0 |
| Non-Recurring Alternative Living Expenses | $0 | $0 |
| Attorneys' Fees and Expenses | not yet specified | not yet specified |

## III.   LEGAL STANDARDS AND CHOICE OF LAW

### A.      *Adjudication of Damages Under Rule 55*

As the parties seeking damages, the Plaintiffs have the burden to show the fact and extent of an injury and to show the amount and value of the claimed damages. *Servicios-Expoarma, C.A. v Indus. Mar.* Carriers, *Inc.*, 135 F.3d 984, 995 (5th Cir. 1998) ("It is a basic concept of damages that they must be proved by the party seeking them."). After entry of default, the Plaintiffs are not entitled to have their allegations regarding damages accepted as true. *See United States v. Shipco Gen., Inc.*, 814 F.2d 1011, 1014 (5th Cir. 1987) ("After a default judgment, the plaintiff's well-pleaded factual allegations are taken as true, except regarding damages."). And the Plaintiffs must prove damages by a preponderance of the evidence. *See Mobil Expl. & Producing U.S., Inc. v. Cajun Const. Servs., Inc.*, 45 F.3d 96, 101-02 (5th Cir. 1995). Courts have held that "a defaulting party must be permitted to contest the actual compensatory amount claimed with respect to any particular item of damages, including through proof of mitigation of damages." *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir.1992).

Plaintiffs' requested categories of damages are not "liquidated" damages or damages capable of mathematical calculation. A sum capable of mathematical calculation is one that can be "computed with certainty by reference to the pleadings and supporting documents alone." *James v. Frame*, 6 F.3d 307, 311 (5th Cir. 1993) (internal citation omitted). Liquidated damages awarded under Rule 55 are usually contractual damages where the precise amount owed by the defaulted defendant is readily apparent from the pleadings and supporting contractual agreements. *See, e.g., M C Bank & Trust Co. v. Suard Barge Serv.*, Case No. 16-14311, 2017 WL 3991076 (E.D. La. Sept. 11, 2017) (holding that damages from a loan agreement were liquidated damages capable of mathematical calculation).

### B.    *Alabama Law Governs Plaintiffs' Damages Claims.*

Alabama law governs Plaintiffs' damages claims because their properties are in Alabama and the Court has held that the state law applicable to drywall claims is the state in which the claimant's real property is "situated" and the claimants' "losses...occurred." Rec. Doc 2380 at 64. "[T]he purpose of compensatory damages in Alabama is to 'make the [injured party] whole by reimbursing him or her for the loss or harm suffered.'" *Ex parte S & M, LLC*, 120 So. 3d 509, 516 (Ala. 2012) (quoting *Ex parte Goldsen*, 783 So. 2d 53, 56 (Ala. 2000)) (emphasis added). Alabama law requires these Plaintiffs to prove damages by a preponderance of the evidence. *See, e.g., Rooney v. Southern Dependacare, Inc.*, 672 So. 2d 1, 13-15 (Ala. 1995).

## IV.    PLAINTIFFS CANNOT ESTABLISH THEIR DAMAGES UNDER ALABAMA LAW

### A.    *Plaintiffs Cannot Establish Real Property Damages Under Alabama Law*

The Court should reject Plaintiffs' attempt to recover the "cost of remediation" for the alleged damage to their houses.[1] The proper measure for alleged property damages under Alabama law is the diminution in value of the property to the exclusion of any damages for cost of remediation. *See Poffenbarger v. Merit Energy Co.*, 972 So. 2d 792 (Ala. 2007). In that case, plaintiff property owners brought suit against an energy company asserting claims of trespass, nuisance, wantonness, and negligence arising from an oil leak that damaged plaintiffs' property requiring remediation estimated to cost more than $2.6 million. *Id* at 793. By contrast, expert appraisals showed the current land value to be $32,628, which was a diminishment of $6,000 from the original purchase price. *Id.* The Alabama Supreme Court held that "[T]he appropriate measure

---

[1] Because "cost of remediation" is intended to compensate for the amount it will take to repair and restore the property to a "but for" condition, Plaintiffs' "cost of remediation" and "post-trial repair costs" categories are duplicative. The law and analysis in this section applies equally to any additional "post-trial repair" damages sought by Plaintiffs.

of direct, compensatory damages to real property generally is the diminution in the value of that property, even when the cost to remediate the property exceeds the diminution in the value thereof." *Id.* at 801. The court expressed Alabama's strong policy supporting diminution as the proper measure:

> Awarding money damages in an amount many times over the actual value of the land at issue . . . may not serve the end of making the victim whole as much as it raises the specter of a windfall to a victim who, in many cases, will have little or no incentive to spend those moneys to repair land that, even upon full remediation, will be worth only a small fraction of the money so expended.

*Id.* at 801-02. *See also Leftwich v. Brewster*, 306 So. 3d 26, 28, 36-38 (Ala. 2020) (in case alleging that defendant's negligence had caused plaintiff's house to collapse and become uninhabitable, affirming trial court's exclusion of evidence of repair costs because diminution of property value is only appropriate measure).

One Alabama federal court examining Alabama law held the exclusive remedy of diminution damages in real property cases to be "a matter of hornbook law," "quite well settled," and "a principle [] so uncontroversial that the Alabama Supreme Court did not have occasion to expressly affirm it until" *Poffenbarger*. *Dialysis Clinic, Inc. v. City of Dothan*, No. 1:10-CV-1051-WKW [WO], 2012 U.S. Dist. LEXIS 156351, at *7-11 (M.D. Ala. Nov. 1, 2012). That court rejected a property owner's efforts to recover costs to rebuild a structure destroyed by flooding caused by defendant's negligence, and instead strictly limited damages to diminution in property value, despite the "financial and practical realities of the case" otherwise favoring repair and relocation. *Id.* at *10-11. The court noted that the Alabama Supreme Court in *Poffenbarger* had "unflinchingly applied the diminution-in-value rule" despite a vast disparity between repair cost and value diminution, and thus held, "the equities of this case cannot change the rule this court is duty-bound to apply." *Id.* at *11. Likewise, this Court must follow Alabama law and enforce diminution in value as the only correct measure of damages here.

7

Here, Plaintiffs have affirmatively disclaimed that they intend to seek any damages for diminution in property value. *See* Exhibits A and B at 6. Consistent with their rejection of the proper measure of damages, Plaintiffs have offered no evidence of the purchase price for either house, the fair market value of either house at the time the drywall was installed, or the current fair market value of either house. The only potentially relevant evidence produced by Plaintiffs shows that the Gibbs house cost $119,846 to build and the Carter house cost $111,339. *See* Exhibit C (Gibbs Home Building Permit); Exhibit D (Carter Home Building Permit). Lee County public property records show the following assessed building values as of tax year 2019: Gibbs house $125,470; and Carter house (which was abandoned years ago) $5,920. *See* Exhibit E (Gibbs Property Appraisal Record) and Exhibit F (Carter Property Appraisal Record).

Instead of the proper measure of damages, Plaintiffs have latched onto remediation cost, which the Alabama Supreme Court explicitly rejected in *Paffenburger*. But Plaintiffs are not prepared to prove even that improper damages measure. Alabama law requires that "the party claiming damages has the burden of establishing the existence of and amount of those damages by competent evidence" and that "[t]he award of damages cannot be made upon speculation, and the plaintiff has the burden of offering evidence tending to show to the required degree, the amount of damages allegedly suffered." *Jerkins v. Lincoln Elec. Co.*, 103 So. 3d 1, 10 (Ala. 2011). Expert testimony is required to prove remediation damages because home building and construction are technical subjects. *See e.g. Arthur Rutenberg Homes, Inc. v. Norris*, 804 So. 2d 180, 183 (Ala. 2001) (noting plaintiff's expert testimony in the field of residential construction and testimony regarding the scope of work required to repair the home); *see also* Code of Ala. § 34-11-1(13)(d) (stating legal requirements for an expert to qualify to give "expert opinion in any legal proceeding

8

in Alabama regarding work legally required to be performed under an Alabama engineer's license number or seal").

In all prior evidentiary proceedings on individual damages in this MDL, Judge Fallon has required claimants who could permissibly recover remediation damages to present expert proof. *See* Rec. Doc. 2380 at 57-60 (citing to the expert testimony provided by a professional engineer to support the calculation of remediation damages for the *Germano* intervenors); Rec. Doc. 2713 (outlining testimony in *Hernandez* about the estimated cost of remediation from experts who used Xactimate estimates and/or quotes from local contractors to reach an expert conclusion on the cost of remediation).[2] But Plaintiffs here have designated no expert testimony, and the time has passed for them to do so. *See* FED. R. CIV. PRO. 26(b)(2)..

Plaintiffs cannot escape their Alabama law burden to prove damages by misappropriating Judge Fallon's 2015 class damages formula. Judge Fallon extinguished the formula when he approved the class settlement and dismissed the class members' claims in 2020. Even if the formula still existed, the Gibbses and the Carters lost the benefit of it when they *opted out* of the class. Nor would the formula be appropriate to find individual damages in these individual proceedings; Judge Fallon authorized the use of the formula for aggregated class damages because that novel formulaic method was more efficient than individualized trials for each class member. Rec. Doc. 20741 at 51. Having opted out, the Gibbses and Carter now proceed outside of the class context and must satisfy individual proof burdens, as did the *Hernandez* and *Germano* plaintiffs when they went before Judge Fallon in their own individual evidentiary hearings.

---

[2] The *Germano* and *Hernandez* orders are also available at *In re Chinese Manufactured Drywall Prod. Liab. Litig.*, 706 F. Supp. 2d 655 (E.D. La. 2010) and *In re Chinese-Manufactured Drywall Prod. Liab. Litig.*, No. MDL 2047, 2010 WL 1710434 (E.D. La. Apr. 27, 2010), respectively.

Plaintiffs have not and cannot prove their claim for real property damage under Alabama law and are barred from seeking class damages under this Court's orders.

### B.   Plaintiffs Cannot Establish "Loss of Use and Enjoyment" Damages Under Alabama Law

Plaintiffs also cannot recover their single largest claim, which they denominated as "loss of use / loss of enjoyment" (hereinafter "LOUE") because Alabama law (unlike some other states involved in this MDL) does not recognize that category of property claims. The closest category in Alabama law appears to be "mental anguish," but Alabama has a strong policy against awarding emotional suffering in property damage cases based on negligence. In that setting, the "Alabama Supreme Court has definitively stated that one can recover for emotional injury . . . only under two circumstances:" (1) where a plaintiff sustained actual physical injury, and (2) where a plaintiff can prove she was in immediate risk of physical harm, otherwise known as the "zone of danger." *Rawlings v. Dovenmuehle Mortg., Inc.*, 64 F. Supp. 2d 1156, 1167-68 (M.D. Ala. 1999) ((citing *White Consol. Indus., Inc. v. Wilkerson*, 737 So. 2d 447 (Ala. 1999), and *AALAR, Ltd. v. Francis*, 716 So. 2d 1141 (Ala. 1998)). Those limited exceptions apply equally in product liability cases under the Alabama Extended Manufacturer's Liability Doctrine. *See White Consol. Indus., Inc.*, 737 So. 2d at 449.

Thus, these Plaintiffs cannot recover for emotional distress (or "loss of enjoyment") unless they can prove that they were physically injured or were actually in danger in the property. In the leading case of *Birmingham Coal & Coke Co. v. Johnson*, 10 So. 3d 993 (Ala. 2008), the Alabama Supreme Court reversed an award of mental-anguish damages to plaintiffs who lived near a mine blasting site and "testified that they could hear and feel the blasting in their houses and that they noted damage to their houses." *Id.* at 995. Even though they certainly lost enjoyment of their homes under those aggravating conditions, Plaintiffs could not sustain an award for mental anguish and

emotional distress. *See id.* at 999 (rejecting argument that special consideration should be given because plaintiffs suffered in their homes). Similarly, the Alabama Supreme Court reversed a mental anguish award for a couple whose faulty air conditioning unit caused a fire that burned down their house with all of their possessions. *See White Consol. Indus., Inc.*, 737 So. 2d at 448.

Neither claim here can meet the Alabama test for mental anguish. The Gibbs have affirmatively disclaimed that they are pursuing personal injury claims, have offered no proof of personal injuries, and have presented no scientific proof that the drywall at issue was a "danger" to humans. Exhibit G (Gibbs Deposition Transcript) at 54:7-9. Carter never lived in the subject property and thus cannot meet either prong of the test. *See Wal-Mart Stores, Inc. v. Bowers*, 752, So.2d 1201, 1204 (Ala. 1999) (reversing mental anguish damages in property damage case because "[i]t is undisputed that he was away from home when the fire started.").[3]

Even if Plaintiffs could recover in the mental-anguish category, they could not recover the amounts they seek. *First,* their LOUE claims lack credibility because they seek the identical amount ($337,500) despite the very different facts that the Gibbses lived in their house and Carter never did. *Second,* those identical amounts are grossly disproportionate to the build-cost and apparent property values of the houses at issue. *Third,* Plaintiffs' outsized demand for $337,500 each for LOUE damages for defective drywall is unprecedented in this MDL. Judge Fallon awarded no LOUE or other emotional damages in *Hernandez. See* Rec. Doc. No. 2713 at 44-47. In *Germano,* Judge Fallon surveyed exemplar cases from several states and ultimately awarded $100,000 in LOUE damages to six of the plaintiffs.[4] *See* Rec. Doc. No. 2380 at 106-08, 80. Those

---

[3] Carter may not recover for any "mental anguish" by his mother. *See Ex parte Grand Manor, Inc.,* 778 So. 2d 173, 179 (Ala. 2000) (disallowing mental anguish damages for a property owner over injuries allegedly suffered in the home by her son, who was not a party to the case).

[4] The Court awarded $30,000 to the remaining plaintiff, whose Chinese drywall was installed only in the wine room of their basement. *See id.*

flat amounts applied regardless of the length of time the plaintiffs had lived in the properties at issue, which ranged from less than one year to more than three and a half years. *See id.* at 5 (establishing evidentiary hearing dates of Feb. 19-22, 2010) and 70, 75, 79, 85, 90, 95, 101 (identifying purchase dates of subject properties).

The $100,000 *Germano* LOUE awards were half or less of the amounts that the Court allocated to remediate the properties, as shown on the following chart:

| *Germano* Plaintiff | Case Citation (pinpoint page number) | Estimated Remediation Cost (*see id.* at 106-08) | LOUE to Remediation Ratio |
|---|---|---|---|
| Deborah and William Morgan | 73 | $232,491 | 43.0% |
| Jerry and Inez Baldwin | 78 | $257,730 | 38.8% |
| Robert and Lisa Orlando | 88 | $249,140 | 40.1% |
| Fred and Vanessa Michaux | 93 | $198,142 | 50.4% |
| Preston and Rachel McKellar | 99 | $194,720 | 51.3% |
| Steven and Elizabeth Heischober | 104 | $312,755 | 31.9% |

Based on county-assessed property values from 2009 (the year before the evidentiary hearing) presented into evidence by the Plaintiffs' expert at the *Germano* hearing the $100,000 LOUE awards were far less than half of the assessed value of the subject properties.

| *Germano* Plaintiff | 2009 Assessed Value | LOUE to Assessed Value Ratio |
|---|---|---|
| Deborah and William Morgan | $419,200 | 23.8% |
| Jerry and Inez Baldwin | $364,300 | 27.4% |
| Robert and Lisa Orlando | $364,900 | 27.4% |

| Fred and Vanessa Michaux | $264,300 | 37.8% |
|---|---|---|
| Preston and Rachel McKellar | $224,000 | 44.6% |
| Steven and Elizabeth Heischober | $540,800 | 18.4% |

Plaintiffs' incredible and outsized identical demands for LOUE stand in stark contrast to Judge Fallon's precedent. Although Plaintiffs have presented no evidence of cost to remediate or the Fair Market Values of their properties, the highest FMV, based on public property records, is the Gibbses house at $160,470, making the $337,500 LOUE demand more than twice the value of the property. Giving Plaintiffs such an inflated emotional damages award would be unprecedented in this MDL and would violate Alabama law in any event.

Carter's LOUE claim fails for an additional reason: he never lived in the house (and never intended to). His *use* of the property was rental, and he is seeking an additional category of rental income damages for that "loss of use." According to Carter, his mother vacated the property around November 2011. Exhibit H (Carter Deposition Transcript) at 64:12-23.  Based on their $600 monthly rental agreement, that amounts to approximately $60,000 in lost rental payments—a far cry from the $337,500 demand that is unsupported in Alabama law and the precedent of this MDL. Plaintiffs should recover no inchoate LOUE damages in this proceeding.

### C.    *Plaintiffs Cannot Establish Alternative Living Expense Damages Under Alabama Law*

Plaintiffs' SPPFs stated that they are not seeking damages for alternative living expenses, presumably because neither has remediated, and so neither has sought alternative living arrangements for that purpose. But Plaintiffs recent briefing suggests that they may now seek two forms of alternative living expense damages: recurring and non-recurring. Although Plaintiffs have not yet precisely articulated those categories, recurring alternative living expenses apparently refers to the estimated alternative living expenses (e.g., short term rental costs) during some *future*

remediation. Non-recurring alternative living expenses apparently refers to the *future* one-time costs associated with Plaintiffs' moving out of their houses (e.g., moving vans) during remediation. Both of those related damages categories are an extension of remediation damages, which are disallowed under Alabama law. *See* § IV(A) *supra*.

Even if Alabama allowed remediation damages, Plaintiffs have not developed any evidentiary basis for alternative living expenses. Basic evidentiary principles require *evidence* of past or future losses, as established in the precedents of this MDL. In the *Hernandez* case, the plaintiffs submitted expert testimony to support estimates for both recurring and non-recurring alternative living expenses specific to their location and living situation, which the Court considered and awarded $9,507.24. and $9,562.00, respectively. Rec Doc. 2713 at 41-43. Similarly, in *Germano*, the plaintiffs offered expert testimony to prove both recurring and non-recurring alterative living expenses. Rec. Doc. 2380 at 74; 78; 88-89; 94; 99-100; 104. Plaintiffs have offered *no* evidence to support claims for recurring or non-recurring alternative living expenses and have designated no experts for any purpose. The Court will have no evidentiary basis to award alternative living expenses.

### D.   *Plaintiffs Cannot Establish Personal Property and Prior Repair Damages Under Alabama Law*

Plaintiffs' lack sufficient proof for their claimed past repairs and losses of personal property. The discovery record shows that the Gibbs and Carter Plaintiffs cannot show (1) that any personal property were actually damaged, (2) that Chinese drywall caused the alleged damage, and (3) what is the cost for replacing the property.

Beyond those evidentiary failures, Plaintiffs are also limited by Alabama property damage law. All personal property damages are determined "by calculating the difference between the reasonable market value of the property immediately before it was damaged and the reasonable

market value immediately after it was damaged." *Lary v. Gardener*, 908 So. 2d 955, 959 (Ala. Civ. App. 2005). Alabama courts have reiterated that "such a rule does not relieve the plaintiff of offering evidence showing that he has been damaged and the extent or amount of his loss, since an award cannot be based on speculation." *Carson v. Emp'rs Cas. Co.*, 282 So. 2d 913, 919 (Ala. Civ. App. 1973); *see also Lary*, 908 So. 2d at 959 (noting that consideration of "value to the plaintiff" does not "relieve the plaintiff of his burden of offering evidence showing that he has been damaged and the extent or amount of his loss, since the court will not base an award upon mere speculation.").

The evidentiary record presented by Plaintiffs on personal property damages is speculative and insufficient to support a damages award under Alabama law.

### E.     An Award for Attorneys' Fees Is Not Warranted Under Alabama Law

Plaintiffs cannot recover attorneys' fees. The only possible basis for recovering fees would be the Alabama Litigation Accountability Act ("ALAA"), Ala. Code § 12-19-272(a).[5] *See Fields v. Primerica Ins. Co.*, 2002 WL 31059371, at *1 (M.D. Ala. Jul. 30, 2002) ("As laws governing the award of attorney's fees are considered substantive in nature, the *Erie* doctrine requires a court sitting in diversity to make such determinations in reference to the applicable law."). Plaintiffs cannot meet the high test of the ALAA, which permits an assessment of attorneys' fees and/or costs only against an attorney or party "who has brought a civil action, or asserted a claim therein, or *interposed a defense*, that a court determines to be without substantial justification." Ala. Code § 12-19-272(a) (emphasis added). "Without substantial justification" is statutorily defined as

---

[5] Plaintiffs cannot seek attorneys' fees under Louisiana's redhibition law, which cannot apply to these Alabama plaintiffs. Plaintiffs own complaint states that the redhibition claim applies only to "Louisiana Plaintiffs." Case No. 2:11-cv-01395-EEF-JCW, ECF No. 1 at 42.

"frivolous, groundless in fact or in law, or vexatious, or interposed for any improper purpose, including without limitation, to cause unnecessary delay or needless increase in the cost of litigation, as determined by the court." Ala. Code § 12-19-271. That is a standard similar to Rule 11. *See Pac. Enters. Oil Co. v. Howell Petroleum Corp.,* 614 So. 2d 409, 415-19 (Ala. 1993) (holding that the ALAA was intentionally drafted to mirror the standards of Rule 11 of the Federal Rules of Civil Procedure and looking to federal case law construing Rule 11 as persuasive).

Plaintiffs have not shown, and cannot show, that any of Taishan's defenses in this action meet that extraordinary standard. *First*, the notion of "interposing a defense" without substantial justification is incongruous in this case, where Taishan *defaulted* on liability—having interposed no defense at all. *Second*, the ALAA specifically defines "defense" as "[a]ny affirmative defense under Rule 8(c), Alabama Rules of Civil Procedure, filed in any action at law or equity." Ala. Code § 12-19-271(4). But, having defaulted in this case, Taishan did not assert any "affirmative defense"; Taishan never filed an answer. The defectiveness of Taishan's product at issue was established as an uncontested fact, therefore significantly reducing the scope of Plaintiffs' burden and precluding the application of the ALAA.

Taishan has, however, exercised its statutory and due process right to contest the amount of damages resulting from that default. *See Hovey v. Elliott*, 167 U.S. 409, 415 (1897) (holding that a defaulted defendant in contempt must be permitted to defend against damages in a civil action); *see also Bonilla v. Trebol Motors Corp.*, 150 F.3d 77, 82 (1st Cir. 1998) (holding that "a defaulting defendant is entitled to contest damages and to participate in a hearing on damages, should one be held."). Even if the ALAA somehow applied to something other than "affirmative defenses" in a responsive pleading, Plaintiffs can point to no damages defense interposed by Taishan or its counsel "without substantial justification" under the ALAA.

If Plaintiffs try, the Court should reject any attempt to expand the ALAA to recover fees based on the lengthy course of this complex, multi-party, multi-case litigation, including Taishan's personal jurisdiction challenge that lasted several years at the outset of this MDL. These Plaintiffs were not parties to the prior actions (filed in 2009 – two years *before* the Plaintiffs claim to have discovered the drywall in their houses and two years before this case was filed) in which Taishan asserted its personal jurisdiction defense. *See* Rec. Doc. 15755. And although Taishan did not ultimately prevail on that issue, no court ever held that the defense—by a foreign company with no operations or assets in the U.S.—was frivolous. Indeed, Taishan recently won dismissal on personal jurisdiction grounds in the U.S. District Court for the Southern District of Mississippi in a case remanded from the MDL involving homeowner clients represented by Plaintiffs' counsel. *See Lott v. Taishan Gypsum Co.*, No. 1:17cv217-LG-RPM, 2020 WL 7388431, at *2 (S.D. Miss. Dec. 16, 2020).

The Court should also reject any attempt to point to Judge Fallon's entry of contempt against Taishan in July 2014. Rec Doc. 17869. Taishan paid the contempt penalty, including attorneys' fees specified in the contempt order. Rec. Doc. 18448. Following the global class settlement, Judge Fallon "PURGED" the contempt in an order acknowledging Taishan's payment of the contempt fine and attorneys' fees:

> Having complied with the Contempt Order, and through its continued participation in this litigation, Taishan is hereby PURGED of criminal and civil contempt. Neither Taishan nor any of its "affiliates or subsidiaries" shall face any further prosecution or penalty under the Contempt Order.

Rec. Doc. 22589. Any call for a punitive assessment of attorneys' fees based on that past conduct would improperly revive and expand the Court's prior contempt ruling, for which Taishan has already made amends and payments, including attorneys' fees.

17

### F.   Set Off for Prior Payments

Finally, it is undisputed that Plaintiffs have received prior payments in this case from other parties in settlement of claims arising from the same facts and allegations at issue here. The Gibbses received $5,311.95 and Carter has received $5,122.35. Those amounts serve as setoffs on damages awarded by the Court, if any are proved under Alabama law. *See* Rec. Doc. 22976 at 1 (including "requests for set-offs" among the charge designated to the Magistrate Judge in association with the evidentiary hearing to determine damages for these claims).

Respectfully submitted,

Dated: March 19, 2021

<u>/s Christina Hull Eikhoff</u>
Christina Hull Eikhoff, Esq.
Georgia Bar No. 242539
David Venderbush, Esq.
New York Bar No. 2920817
ALSTON & BIRD LLP
1201 West Peachtree Street
Atlanta, Georgia 30309
Phone: (404) 881-7000
Fax: (404) 881-7777
christy.eikhoff@alston.com
*Counsel for Taishan Gypsum Co., Ltd. And Tai'an Taishan Plasterboard Co., Ltd.*

Alan Dean Weinberger
LA Bar No. 13331
HANGARTNER, RYDBERG & TERRELL, LLC
One Shell Square
701 Poydras St., Suite 310
New Orleans, Louisiana 70179
Phone: (504) 434-6815
Fax: (504) 522-5689
aweinberger@hanrylaw.com
*Local Counsel for Taishan Gypsum Co., Ltd. And Tai'an Taishan Plasterboard Co., Ltd.*

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing Memorandum have been served on Plaintiffs' Liaison Counsel, Russ Herman, and Defendants' Liaison Counsel, Harry Rosenberg, by U.S. mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve in accordance with Pre-Trial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047, on this 19th day of March, 2021.

/s Christina Hull Eikhoff
Christina Hull Eikhoff, Esq.
Georgia Bar No. 242539
ALSTON & BIRD LLP
1201 West Peachtree Street NW
Atlanta, Georgia 30309
Phone: (404) 881-7000
Fax: (404) 881-7777
christy.eikhoff@alston.com

*Counsel for Taishan Gypsum Co., Ltd. and Tai'an Taishan Plasterboard Co., Ltd.*