UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN RE: CHINESE-MANUFACTURED          MDL NO. 2047
DRYWALL PRODUCTS LIABILITY           SECTION: L
LITIGATION

THIS DOCUMENT RELATES TO:            JUDGE ELDON FALLON
                                     MAG. JUDGE NORTH

*Eduardo and Carmen Amorin, et al. v. Taishan Gypsum Co., Ltd. f/k/a Shandong Taihe Dongxin Co., Ltd., et al.*, 2:11-cv-1395-EEF-MBN

## **PLAINTIFFS' RESPONSE TO DEFENDANTS' OBJECTIONS TO EXHIBITS**

The Court has instructed the undersigned counsel to respond to Defendants' objections to Plaintiffs' exhibit list prior to a hearing scheduled for March 31, 2021 at 9:00 am CST. As instructed, Plaintiffs offer the following memorandum.

As a preliminary matter, it must be noted that Defendants are in default on all claims contained in the Complaint, not just defective product claims as they would have the court believe. The relevant counts (for non-Louisiana claims) contained in the *Amorin* complaint are as follows:

| | |
|---|---|
| Count I: | Negligence |
| Count II: | Negligence Per Se |
| Count III: | Strict Liability |
| Count IV: | Breach of Express and/or Implied Warranties |
| Count VII: | Private Nuisance |
| Count VIII: | Unjust Enrichment |
| Count IX: | Violation of Alabama Deceptive Trade Practices Act |
| Count X: | Equitable and Injunctive Relief |

Exhibit A to this response is a copy of the *Amorin v. Taishan* complaint, filed in the United States District Court for the Eastern District of Louisiana. As the court will note, *not* all of the claims are defective product claims subsumed by the AEMLD as Defendants suggest. In particular, Counts VII – X provide plaintiffs with a means to recovery outside of the AEMLD. Defendants have implicitly acknowledged as much by citing Alabama law that addresses recovery by plaintiffs asserting a claim for private nuisance.

## **PRIVATE NUISANCE – ALABAMA LAW**

Defendants cited a 2007 case decided by the Alabama Supreme Court, *Poffenbarger v. Merit Energy Co.*, 972 So.2d 792 (Ala. 2007), to urge this court to adopt a narrow view of Plaintiffs' potential recovery outside any AEMLD claims; however, Defense counsel failed to provide this court with the subsequent case law that is adverse to their position and favorable to Plaintiffs.

In 2008, one year after *Poffenbarger*, the Alabama Supreme Court revisited a private nuisance matter and issued a clarifying opinion in *Birmingham Coal Coke Co., Inc. v. Johnson*, 10 So.3d 993 (Ala. 2008), finding that plaintiffs can recover for damage to property where no opinion as to diminution. In particular, the Alabama Supreme Court ruled as follows:

> "The Court in *Poffenbarger* did not answer the question whether repair costs could be considered in cases where damage to real property occurred. Instead, it addressed only those situations in which the cost to repair the real property exceeds the diminution in the value of the property. Birmingham Coal does not point to any evidence indicating that the trial court awarded the plaintiffs property damages in excess of the diminution in value of the property or that the evidence of repair costs presented by the plaintiffs who did not express an opinion as to diminution did not present a reasonable inference of damage."

*Birmingham Coal Coke Co., Inc. v. Johnson*, 10 So. 3d 993, 998 (Ala. 2008)

The court in *Birmingham Coal* affirmed the trial court's award for property damages. *Birmingham Coal* is applicable to the instant matter because it is precisely what occurred. Plaintiffs John Carter and Gene & Darla Gibbs provided no opinion regarding the diminution in their property value. And, Plaintiffs can testify regarding the fair market value of the property immediately preceding the onset of the private nuisance in their home as each are the first homeowners after construction. Therefore, the purchase price of the property and/or the purchase price of the property coupled with the cost of home construction reflects the fair market value of the property.

In Birmingham Coal Alabama Supreme Court also addressed awards of mental anguish and emotional distress (i.e., damages similar to loss of use/enjoyment). *Birmingham Coal Coke Co., Inc. v. Johnson*, 10 So. 3d 993, 999 (Ala. 2008) ("'"In negligence actions, Alabama follows the "zone-of-danger" test, which limits recovery of mental anguish damages to "those plaintiffs who sustain a physical injury as a result of a defendant's negligent conduct, <u>or who are placed in immediate risk of physical harm by that conduct</u>."'" *Ex parte Grand Manor, Inc.*, 778 So.2d 173, 179 (Ala. 2000) (quoting *Wal-Mart Stores, Inc. v. Bowers*, 752 So.2d 1201, 1203 (Ala. 1999), quoting in turn *AALAR, Ltd. v. Francis*, 716 So.2d at 1147, and citing *White Consol. Indus., Inc. v. Wilkerson*, 737 So.2d 447, 449 (Ala. 1999))."). Plaintiffs assert that a home containing a defective product that unrelentingly emits harmful gasses into the living space certainly qualifies as the "zone of danger." Consequently, Plaintiff should be able to recover loss of use and enjoyment damages in a manner consistent with the previous awards in MDL-2047 cited in Plaintiffs' position statement previously submitted to this Court.

For these reasons, Defendants position that remediation damages are prohibited under Alabama law is clearly erroneous.

## ALABAMA DECEPTIVE TRADE PRACTICES ACT

Defendants are in default on all claims, including the Alabama Deceptive Trade Practices Act, and this Court can consider damages for violation of this Act. Under the ADTPA, damages are appropriate. The Alabama Court of Civil Appeals has previously ruled that "[t]he ADTPA, § 8-19-1 et seq., Ala. Code 1975, is a consumer protection statute designed to punish persons that engage in deceptive trade practices." *Sam v. Beaird*, 685 So. 2d 742, 744 (Ala. Civ. App. 1996). "The Act, among other things, defines words and phrases, § 8-19-3; authorizes the attorney general and district attorneys to enforce the act, § 8-19-4; lists specific unlawful trade practices, § 8-19-5; lists exemptions, § 8-19-7; establishes a private right of action, § 8-19-10; provides penalties for violations of the Act, § 8-19-11." *Id.*

## EQUITABLE AND INJUNCTIVE RELIEF

Plaintiffs specifically plead for equitable and injunctive relief in the complaint. As Defendants are in default on all counts, this Court may consider this when making its recommendation to the district court. No in Alabama statute or relevant case law prohibits the equitable relief sought by Plaintiffs in Count X of the Complaint.

## RESPONSE TO SPECIFIC OBJECTIONS BY DEFENDANTS

A. **Relevance** (Exhibits 1, 2, 4, 5, 6, 8, 10, 11, 12, 14-17): Defendants assert their objection to these exhibits based on their contention that "remediation damages are categorically disallowed under Alabama law." As the preceding paragraphs regarding Alabama law demonstrate, Defendants' position regarding remediation damages is clearly erroneous. Remediation damages, whether this Court utilizes private nuisance or equitable relief, Plaintiffs may recover the damages presented in their Position Statement previously provided to this Court. Thus, all exhibits offered by Plaintiffs are relevant to the damages suffered by Plaintiffs and the relief they seek through this Court.

B. **Foundation** (Exhibits 1, 2, 4, 5, 6, 8, 11, 12): Defendants contend that these exhibits are prohibited because they are an "inadmissible expert report." With regard to the exhibits generated by Shawn Macomber, none are being offered as expert reports. Mr. Macomber

is not being offered as an expert, only a fact witness; consequently, Mr. Macomber will not be asked to offer any expert opinions in this matter. Mr. Macomber is a contractor and experienced Chinese drywall inspector. Plaintiffs utilized him to generate inspection reports that documents the location of the Taishan product markings and corrosion throughout the home caused by the defective drywall. Plaintiffs also utilized Mr. Macomber to generate an Xactimate estimate for the cost of remediation. As the court will learn through Mr. Macomber's testimony, Xactimate is an accepted estimating software utilized by the construction industry for estimating. The software provides frequent updates to material and labor costs through its database on frequent basis and the costs projected in Mr. Macomber's estimation will be relevant to the current cost of remediation. For these reasons, Defendants' contention that these exhibits are noncompliant with FRCP 26(a)(2)(B) and 26(a)(2)(D) is simply wrong.

C. **Foundation** (Exhibits 10, 11). Defendants object to Plaintiffs' use of online price quote printouts. Plaintiffs personal property was damaged in their homes during the past 14-15 years that the home contains the defective drywall. Plaintiffs will offer testimony that their electronics, appliances and other personal items were affected the gas produced by the defective Taishan drywall. Any website printouts will not be utilized for the truth of the matter asserted; rather, they will be demonstrative for the witness and the benefit of the court. The court will be asked to rely on Plaintiffs' testimony regarding the cost of the specific items. It is worth noting that Judge Fallon has previously ruled that "Causation and liability have been conclusively established" with regard to the defective Taishan drywall (doc. 20741, ¶ 85).

D. **Foundation** (Exhibit 8, 16, 17): Defendants object to the quote from a moving company offered by Plaintiffs Carter and Gibbs, as well as the home rental quote offered by Plaintiffs Gibbs and Carter. These exhibits are relevant to the additional cost that Plaintiffs will incur as a direct result of the remediation that must take place in their homes. Their belongings will need to be moved and stored for the duration of the remediation. The Gibbs will also need to live in alternative housing. Plaintiffs will offer testimony regarding the expected projected costs and these quotes will be useful to the court when considering this equitable claim. Plaintiffs may also call company representatives to confirm the quotes.

E. **Untimely** (Exhibits 1, 2, 4, 5, 6, 8, 11, 12, 16, 17): Defendants object to these exhibits as "untimely" because they were generated after February 5, 2021; however, it makes no difference whether they were generated either before or after this date. None of the exhibits were subject to specific discovery request by Defendants because production of these documents were not requested in either the Plaintiff Profile Form or Supplemental Plaintiff Profile Form, the only two discovery documents utilized by Defendants. There were no other discovery requests outside of these two documents. A copy of both the PPF and SPPF for all Plaintiffs are attached hereto as Exhibits B and C. No inspection report is required. No remediation cost estimate is addressed in either form. Additionally, Defendants have not challenged the Product ID of their product contained in Plaintiffs' homes. Defendants did not conduct a property inspection of Plaintiffs' homes. And, Defendants have not offered any exhibits demonstrating the cost of

remediation of Plaintiffs' homes. For these reasons, Plaintiffs' exhibits are both timely and admissible for the purpose of this Rule 55 hearing.

F. **Hearsay** (Exhibit 8, 11): Defendants object to these exhibits as hearsay, as out of court statements offered to prove the truth of the matter asserted. Plaintiffs may call company representatives to confirm the quotes being offered through these two exhibits; thus, they would not be hearsay in that instance. Plaintiffs will also offer testimony to this Court regarding the expenses they expect to incur as a result of the remediation that will need to take place in their homes. In this respect, these two quotes are instructive to this court and relevant with regard to equitable and injunctive relief for the prospective costs that Plaintiffs will expect to incur.

G. **Foundation** (Exhibits 10, 14, 15): Defendants object to these exhibits, claiming that there's evidentiary foundation that these items were damaged by drywall in Plaintiffs' property. Plaintiffs will testify that these items were inside the living space of the home where the off-gassing by the defective Taishan drywall occurred. Plaintiffs will also testify regarding the purchase price and/or replacement cost of each item listed. Because the items were within the living space of the home and subject to the unrelenting corrosive gasses produced by the defective Taishan drywall, the foundation has been established. The district court has ruled on many occasions throughout the course of MDL-2047 proceedings that the Chinese drywall is defective as a matter of law. And, as mentioned in Paragraph C above, causation and liability have been established. Additionally, the items claimed by Plaintiffs are similar in nature to the items that the court has included in the FOFCOL following the Taishan damages hearing (See, e.g., Doc. 20741, beginning at ¶ 6). Appliances, electronics, and fixtures are exposed to the same gasses and damage would be expected to occur in the personal property of Plaintiffs in a similar fashion with a similar effect.

Respectfully submitted:

/s/ *James V. Doyle, Jr.*

James V. Doyle, Jr.
DOYLE LAW FIRM, PC
2100 Southbridge Pkwy., Suite 650
Birmingham, AL 35209
Tele: 205-533-9500
Fax: 844-638-5812
jimmy@doylefirm.com

*Attorney for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing Witness List has been served on Counsel for the Defendants via email on this 30th day of March, 2021.

/s/ *James V. Doyle, Jr.*

James V. Doyle, Jr.
DOYLE LAW FIRM, PC