UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br><br>*Amorin, et al. v. Taishan Gypsum Co., Ltd., et al.*, Case No. 11-cv-1395 | MDL NO. 2047<br>SECTION: L<br>JUDGE FALLON<br>MAG. JUDGE NORTH |

**TAISHAN'S BRIEF PURSUANT TO
COURT'S MINUTE ENTRY DATED APRIL 27, 2021 (REC. DOC. NO. 23083)**

The Court directed the parties to submit briefs addressing the following question: "whether the omission of information that the subject home contained Chinese Drywall will have a material effect on the probative value of the recent appraisal or whether the appraisal should be redone." (Rec. Doc. 23083). The recent appraisals, performed "blindly" at the insistence of Plaintiffs' counsel, show no diminution in value of the properties—which is the sole compensable damages category for their property claims under Alabama law. As such, the answer to the first part of the Court's question (*i.e.*, whether the omission of Chinese Drywall from the appraisals makes them unhelpful to the Court's intended purpose) is yes.

The answer to the second part of the Court's question is harder for Defendant to answer. The appraisals are the most recent manifestation of the Plaintiffs' failure to meet their burden to prove their damages under Alabama law and the rules of this Court. Other evidence proffered by Plaintiffs has been properly excluded by this Court as irrelevant and untimely. The Court gave a lifeline to Plaintiffs by delaying the evidentiary hearing to allow for the development of evidence of diminution in value through new appraisals, but that was not accomplished. Under these circumstances, it is hard for Defendant to muster enthusiasm for another post-discovery chance for

1

Plaintiffs to adduce evidence to try to support their claims. If the Court decides to take that approach, Taishan acknowledges that a new appraisal, factoring in the presence of Chinese Drywall, would likely be probative in assisting the Court to determine the recoverable diminution in value.

### A. What Happened With the Appraisals

The Court may be interested in how it came to pass that the appraisals of the subject properties that it ordered at the March 31, 2021 objections hearing did not reflect the presence of Chinese Drywall. Backing up, the entire course of dealing with Plaintiffs regarding appraisals of the properties has been odd. In the course of discovery, neither Plaintiff produced any appraisals of their respective properties with their SPPF (Supplemental Plaintiff Profile Form) or at any point. As he stated at the March 31 hearing, Mr. Doyle took the position that appraisals were "not part of what the discovery process is" and "not what was required for production" under the PPF or SPPF. Tr. at 21. The Court (and Defendants) took a different view, observing that the SPPF "asked about diminution of value and requires all documentation to support a claim for diminution of value to be produced, and that did not happen." Tr. at 6. At that time, Plaintiffs' counsel represented to the Court that prior appraisals existed that would reflect a market value without knowledge of the presence of Chinese Drywall in the houses. *See* Tr. at 25 (Court: "[Y]ou're telling me that your clients had their properties appraised at some point in the past before Chinese drywall was put into their homes; is that correct?" Mr. Doyle: "That's right.").

So, following the March 31 hearing, Taishan's counsel repeated their request for any appraisals that had already been done on the properties. *See* April 12, 2021 email from C. Eikhoff to J. Doyle, attached here to as Exhibit A. In response, Mr. Doyle produced a 2007 appraisal of the Gibbs property assigning a value of $168,000. *See* Exhibit B. As to the Carter property, Mr.

Doyle reported that "Carter has not been able to get a copy." *See* April 12, 2021 email from J. Doyle to C. Eikhoff, Ex. A. To this day, Defendants have not received any prior appraisals for the Carter property, notwithstanding the representation to the Court, repeated at the April 27, 2021 status conference, that prior appraisals existed for both properties.

To select an independent appraiser pursuant to the Court's March 31 order, Taishan's counsel reached out to Mr. Doyle on the very evening of March 31 to facilitate that process. *See* March 31, 2021 email from C. Eikhoff to J. Doyle, attached hereto as Exhibit C. That proposal cautioned against unilateral communications to the appraiser by counsel or the parties that could sway the appraiser's independent judgment. But it specifically contemplated that the appraiser should be told about the presence of Chinese Drywall:

> To the extent the appraiser needs certain baseline information (such as the presence of Chinese drywall in the homes), that information can be relayed in a joint, mutually agreed written communication, to the exclusion of other sources or influences.

*Id.* Mr. Doyle, however, insisted that *no* communication should be made to the appraiser, such that the appraisal would be completely "blind." Charged with reaching consensus on an appraisal process, with the burden of evidence being on the Plaintiffs, and under the impression from Plaintiffs' testimony that the Chinese Drywall conditions in the properties were obvious and would be recognized by the appraiser, Defendant acceded to proceed as Plaintiffs proposed.

The new appraisals were returned on April 19 and 20 and reflected property values of $185,000 for the Gibbs property (*see* Exhibit D) and $160,000 for the abandoned Carter property (*see* Exhibit E). The face of the appraisals made clear that the appraiser did not factor in the presence of Chinese Drywall: the words "Chinese drywall" did not appear in the appraisals and the values were higher than any previous values reported for the property. Defense counsel immediately suspected that the appraisals would not meet the Court's expectations. Counsel

3

attempted to call Plaintiffs' counsel to discuss the apparent problem, then followed up with an email requesting a return call.  *See* April 20, 2021 email from C. Eikhoff to J. Doyle, attached hereto as Exhibit F.  Without getting an answer from Mr. Doyle, defense counsel sent a second email to Mr. Doyle, again requesting a call, and proposing a draft message to the Court to request a Status Conference "to discuss issues related to the appraisals and next steps in the proceedings." *See* April 20, 2021 email from C. Eikhoff to J. Doyle, attached hereto as Exhibit G.  Mr. Doyle never called back but responded with an email authorizing the sending of the proposed draft to the Court.  *See id.*

As the Court heard at the April 27 status conference, Plaintiffs do not acknowledge any issue with the new appraisals and have asked for the immediate scheduling of an evidentiary hearing.  They appear to believe that the appraisals somehow enable them to pursue repair damages that are impermissible under Alabama law and have been already excluded by this Court.  As explained below, that view is erroneous and must be rejected.

  B. *Plaintiffs' Burden Under Alabama Law Governing Property Claims*

As Taishan set forth in its Pre-Hearing Brief, "[i]t is a basic concept of damages that they must be proved by the party seeking them." *Servicios-Expoarma, C.A. v Indus. Mar.* Carriers*, Inc.*, 135 F.3d 984, 995 (5th Cir. 1998).  This is true even in default.  *See United States v. Shipco Gen., Inc.*, 814 F.2d 1011, 1014 (5th Cir. 1987) ("After a default judgment, the plaintiff's well-pleaded factual allegations are taken as true, except regarding damages."); *see also Mobil Expl. & Producing U.S., Inc. v. Cajun Const. Servs., Inc.*, 45 F.3d 96, 101-02 (5th Cir. 1995) (holding that default damages must be proved by a preponderance of the evidence).

And it is undisputed that Alabama law governs these claims.  *See* Pls.' Pre-Hearing Position on Assessment of Damages Pursuant to FRCP 55(b) for Pl. John Andrew Carter and Pls. Gene &

4

Darla Gibbs ("Pls.' Pre-Hearing Br.") at 3[1] ("In this instance, both Plaintiff Carter's and Plaintiffs Gibbs' homes are situation [*sic*] in the State of Alabama; thus, the applicable law in this instance is the law of Alabama."). It is well-settled under Alabama law that "the appropriate measure of direct, compensatory damages to real property generally is the diminution in the value of that property, even when the cost to remediate the property exceeds the diminution in the value thereof." *Poffenbarger v. Merit Energy Co.*, 972 So. 2d 792, 801 (Ala. 2007); *Dialysis Clinic, Inc. v. City of Dothan*, No. 1:10-CV-1051-WKW [WO], 2012 U.S. Dist. LEXIS 156351, at *7-11 (M.D. Ala. Nov. 1, 2012) (holding that the diminution in value measurement of damages is "quite well-settled" and "a matter of hornbook law" in Alabama). Diminution in value is, by definition, the difference between the market value of the real property *before* the alleged impairment, and the *necessarily lower* value of the same property in its purportedly impaired state. *See Dialysis Clinic, Inc.*, 2012 U.S. Dist. LEXIS 156351 at *11 (quoting Alabama Pattern Jury Instructions to define diminution in value as "'the difference between the reasonable market value of [the property] immediate before the harm and its reasonable market value immediately after the harm'"); *see also Ala. Pool & Constr. Co. v. Rickard*, 418 So.2d 149, 152 (Ala. Civ. App. 1982) (reversing jury award to plaintiff where the evidence showed that market value of impaired property was the same or more than the plaintiff had paid for the property, thus establishing a "complete lack of evidence to support the verdict").

At the Court conference on April 27, Plaintiffs' counsel argued that the Court could still consider estimated repair costs to determine damages and pointed to the property values reported in the new appraisals as a "ceiling" on such damages. That argument fails for at least two reasons.

---

[1] Plaintiffs' Pre-Hearing Brief does not have page numbers. Page numbers cited herein refer to the pagination of the PDF viewer.

5

*First*, while some Alabama courts have, on occasion, allowed repair costs to be considered as probative of diminution of value, they nevertheless consistently reject any award based on repair costs if they *exceed the diminution of property value*. *See Poffenbarger*, 972 So. 2d at __ (reversing award of $2.6 million in remediation damages where diminution of property value was only $6,000); *Birmingham Coal & Coke Co. v. Johnson*, 10 So. 3d 993 (Ala. 2008) (upholding award equating to repair costs only where there was no evidence indicating that the property damages were "in excess of the *diminution in value* of the property") (emphasis added); *Kerns v. Pro-Foam of S. Ala., Inc.*, 572 F. Supp. 2d 1303, 1308 (S.D. Ala. 2007) (reinforcing that diminution in value is proper measure of damages, and allowing consideration of repair costs only "subject to a *Poffenbarger* instruction that repair costs are not recoverable to the extent they exceed *diminution in value* to the house") (emphasis added); *Leftwich v. Brewster*, 306 So.3d 26 (Ala. 2020) (affirming exclusion of evidence of repair costs because damages limited to diminution in value and repair costs exceeded the value of the property); *Dialysis Clinic, Inc.*, 2012 U.S. Dist. LEXIS 156351 at *10 (holding that the court was aware of no case "where an Alabama court departed from the diminution-in-value rule" to award repair costs). Here, there is no competent evidence of what the diminution in property value is, so Alabama's necessary controls cannot be implemented. And *second*, even if repair damages were theoretically admissible, Plaintiffs have no competent evidence of remediation costs because this Court has already ruled to exclude Plaintiffs' proffered Xactimate estimates as improper and untimely. So, on the current record, this Court has nothing on which to base an award for property damages consistent with Alabama law.

C. *Alternative Approaches for the Court's Consideration*

The Court has asked the parties to address "whether the [court ordered] appraisal needs to be redone." Defendants submit that there are alternative approaches that the Court could take but

recognize that the Court must exercise its own judgment to make its Report and Recommendation.

Defendants first point out that Plaintiffs have had multiple chances, and have failed multiple times, to adduce evidence to support their claims under Alabama law. Plaintiffs affirmatively chose to bear the burden of proving their individual damages under their governing state law when they opted out of the class damages settlement to prosecute their claims alone. Mr. Doyle is charged with knowledge of Alabama damages law—he is indeed an Alabama lawyer—but Plaintiffs eschewed the development or production of any evidence in discovery to show diminution in property value. As admitted by Mr. Doyle at the March 31 hearing, the Gibbs *withheld* production of a 2007 property appraisal, despite it being required as part of the SPPF and requested by Defendant. Plaintiff Carter has still not produced any evidence of property value or purchase price, despite multiple requests. Instead, Plaintiffs took an unwise gambit that they could recover remediation damages through an undisclosed, out-of-time expert opinion (under the guise of a "fact witness") or through the Court's aggregate class damage remediation formula, neither of which could be allowed under Alabama law or the rules of this Court.

When given a lifeline by the Court to generate—after the close of discovery—new evidence to support their allowable damages, Mr. Doyle insisted on a path that would get an appraisal that was ignorant of the presence of Chinese Drywall, apparently seeing a higher appraisal value as a "back door" way to revive his aborted and Court-proscribed remediation damages pursuit. On these facts, Defendants are loath to affirmatively endorse a plan that would prolong the proceedings and allow Plaintiffs another bite at the apple to meet a burden they have steadfastly refused to acknowledge and meet. But Taishan is respectful of the Court's authority to make that decision as it sees fit.

Another approach that would perhaps expedite proceedings would be to hold an evidentiary

hearing on the current record, relying on live witness testimony. As Defendant noted at the March 31, 2021 hearing, Alabama law allows a property owner to express an opinion as to their property value (although the credibility of that testimony should be weighed against other objective markers). Defendant (not Plaintiffs) proffered evidence of tax assessment values and build costs, and old and new appraisals have now been added to the record. The Court could hear Plaintiffs' testimony on diminution using those documents as objective markers to determine an appropriate diminution amount.

As the Court has suggested, asking Ms. Wilson to perform new appraisals with knowledge of Chinese Drywall could establish the difference between her expert opinion of the market value without the impairment, on the one hand, and market value with that impaired state on the other. Therefore, such a report, along with the recent "full value" reports, would be probative as to diminution of value—the only compensable measure of Plaintiffs' damages under Alabama law. Taishan will follow any Court order in that respect, including to help formulate a joint, mutually agreed written communication to Ms. Wilson for such an engagement, as originally proposed to Mr. Doyle on March 31.

Dated: May 5, 2021

Respectfully submitted,

/s Christina Hull Eikhoff
Christina Hull Eikhoff, Esq.
Georgia Bar No. 242539
David Venderbush, Esq.
New York Bar No. 2920817
ALSTON & BIRD LLP
1201 West Peachtree Street
Atlanta, Georgia 30309
Phone: (404) 881-7000
Fax: (404) 881-7777
christy.eikhoff@alston.com
*Counsel for Taishan Gypsum Co., Ltd. And Tai'an Taishan Plasterboard Co., Ltd.*

8

Alan Dean Weinberger
LA Bar No. 13331
HANGARTNER, RYDBERG & TERRELL, LLC
One Shell Square
701 Poydras St., Suite 310
New Orleans, Louisiana 70179
Phone: (504) 434-6815
Fax: (504) 522-5689
aweinberger@hanrylaw.com
*Local Counsel for Taishan Gypsum Co., Ltd. And Tai'an Taishan Plasterboard Co., Ltd.*

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing Memorandum have been served on Plaintiffs' Liaison Counsel, Russ Herman, and Defendants' Liaison Counsel, Harry Rosenberg, by U.S. mail and e-mail <u>or</u> by hand delivery and e-mail <u>and</u> upon all parties by electronically uploading the same to LexisNexis File & Serve in accordance with Pre-Trial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047, on this 5th day of May, 2021.

<u>/s Christina Hull Eikhoff</u>
Christina Hull Eikhoff, Esq.
Georgia Bar No. 242539
ALSTON & BIRD LLP
1201 West Peachtree Street NW
Atlanta, Georgia 30309
Phone: (404) 881-7000
Fax: (404) 881-7777
christy.eikhoff@alston.com

*Counsel for Taishan Gypsum Co., Ltd. and Tai'an Taishan Plasterboard Co., Ltd.*