UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL NO. 2047<br>SECTION: L |
| THIS DOCUMENT RELATES TO: | JUDGE ELDON FALLON<br>MAG. JUDGE NORTH |
| *Eduardo and Carmen Amorin, et al. v. Taishan Gypsum Co., Ltd. f/k/a Shandong Taihe Dongxin Co., Ltd., et al.,* 2:11-cv-1395-EEF-MBN | |

## PLAINTIFFS' POSITION REGARDING PROBATIVE VALUE OF 2021 APPRAISALS

The Court has instructed the parties to present their positions regarding the probative value of the 2021 appraisal conducted by Molly McLeod Wilson. As instructed, Plaintiffs offer the following memorandum.

As a preliminary matter, it must be noted again that Defendants are in default on all claims contained in the Complaint. The relevant counts (for non-Louisiana claims) contained in the *Amorin* complaint are as follows:

    Count I:      Negligence
    Count II:     Negligence Per Se
    Count III:    Strict Liability
    Count IV:    Breach of Express and/or Implied Warranties
    Count VII:   Private Nuisance
    Count VIII:  Unjust Enrichment
    Count IX:    Violation of Alabama Deceptive Trade Practices Act
    Count X:     Equitable and Injunctive Relief

Plaintiffs previously provided this Court with a copy of the *Amorin v. Taishan* complaint. As the court will note, all claims due to be considered when assessing damages through this Rule 55

proceeding. Because Defendants are in default, all claims are relevant to this Court's assessment of damages through this Rule 55 Damages Hearing and ultimately in its recommendation to the district court.

The reason the entry of default is important is because private nuisance is one count under Alabama law that provides a mechanism for recovering abatement / remediation damages by Plaintiffs. Plaintiffs may also recover other damages through other counts under Alabama law, but that is not the issue to be addressed at this time. The Court wants the parties to address the usefulness or probative value of the 2021 appraisals of the current market value without considering the presence of Chinese drywall.

The 2021 appraisals generated by Mrs. Wilson simply define the current market value of a property. "*See* Jenelle Mims Marsh, *Alabama Law of Damages* § 33:1 (6th ed. 2012) ("'Market value' is defined as the price at which a willing seller would sell and a willing buyer would buy, neither being compelled to sell or to buy.")" *Bella Invs., Inc. v. Multi Family Servs., Inc.*, 148 So. 3d 716, 724 (Ala. Civ. App. 2013). Plaintiffs have not previously provided an opinion regarding diminution, but Defendants have argued that the cost of abatement / remediation cannot exceed the diminution in value, based on the *Poffenbarger* case. This issue has not been decided by Alabama court since the 2007 *Poffenbarger* opinion was published. The Alabama Supreme Court has ruled in 2008 as follows:

> "The Court in *Poffenbarger* did not answer the question whether repair costs could be considered in cases where damage to real property occurred. Instead, it addressed only those situations in which the cost to repair the real property exceeds the diminution in the value of the property. Birmingham Coal does not point to any evidence indicating that the trial court awarded the plaintiffs property damages in excess of the diminution in value of the property or that the evidence of repair costs presented by the plaintiffs who did not express an opinion as to diminution did not present a reasonable inference of damage."

*Birmingham Coal Coke Co., Inc. v. Johnson*, 10 So. 3d 993, 998 (Ala. 2008).

The Wilson appraisals are probative because they define the current market value of each property – which is, again, arguably the limit of total recoverable amount for Plaintiffs' private nuisance claims if this court infers that diminution in value is the limit of recovery for private nuisance. Plaintiffs oppose this limitation on damages as it is not based on Alabama law.

The issue this court must now grapple with is how it can assess the remediation damages given its ruling excluding the testimony and reports by Shawn Macomber, the contractor employed by Plaintiffs who utilized the Xactimate computer program and applied Judge Fallon's ruling and specific guidance in Doc. 20741 to arrive at an estimated remediation cost for each property in 2021. It is particularly noteworthy that Judge Fallon has ruled that all plaintiffs who have Chinese drywall in their homes are entitled to recovery remediation damages. See Doc. 20741. The scope and limitations of each estimate by Mr. Macomber were defined by Judge Fallon's ruling this same document.

At the Rule 55 hearing, it is expected that Plaintiffs will testify that they expect their remediation costs to be consistent with the Macomber estimates, both of which are less than the 2021 appraised market value of the respective properties. Plaintiffs believe their testimony will be sufficient for the court to find in their favor under controlling law. Under Alabama law, mathematical certainty is not required regarding private nuisance damages. In the context of a jury trial, the Alabama Supreme Court has previously found that a jury cannot be left to speculate as to the amount of damages, but '"[t]his does not mean that a plaintiff must prove damages to a mathematical certainty or measure them by a money standard. Rather, *he must produce evidence tending to show the extent of damages as a matter of just and reasonable inference.* " C. Gamble, *Alabama Law of Damages* § 7–1 (2d ed. 1988).' *Industrial Chemical &*

*Fiberglass Corp. v. Chandler,* 547 So.2d 812, 820 (Ala.1988) (emphasis added)." But, we are not in the context of a jury trial – we are now engaged in a Rule 55 damages hearing after the Defendants were found in default on all counts; thus, given the exclusion of the Macomber estimates, this court can look now to other sources of remediation / abatement valuation, particularly remediation costs calculated and submitted to the District Court in 2019.

First, the Court can look to the district court's Findings of Fact and Conclusions of Law for the Court's position on utilization of RS Means construction data, where it found the source to be "a generally accepted method of calculating building costs." Doc. 20741 at 23, ¶ 35. The court also found the utilization of RS Means data to be "instrumental in determining the scope and costs of remediating the Chinese drywall properties in *Germano*." *Id*. Thus, acceptance by the district court of this methodology in this litigation is without dispute.

The 2019 national square footage price for remediation of a Chinese drywall home was found to be $117.94. See Doc. 22235-1. The District Court defined a formula for calculating Chinese drywall remediation costs/damages utilizing the RS Means data. The Court ruled that remediation damages should be calculated based on the existing data regarding scope of work and square footage of class members homes as follows: "'*i.e.*, price per square foot remediate X number of square feet in class members' homes = damages.'" Doc. 20741 at 23, ¶ 44. Lastly, the Court noted that this calculation should be "reduced by the local building costs factors in nearly every state in which class properties exist. (R. Doc. 19197 at 37)."

Second, the Court can look to previous documents submitted to the district court. The 2019 remediation costs for both properties were previously calculated and can be found in the District Court's records at Document 22235-1. The Gibbs remediation cost was calculated to be $119,630.00. See Doc. 22235-1 at Page 46. The Carter remediation cost was calculated to be

$114,408.00. See Doc. 22235-1 at Page 24.  Obviously, these costs are undervalued when compared to the 2021 estimates by Mr. Macomber, but the Court can utilize both calculated values along with Plaintiffs' testimony when considering its recommendation to the district court.

Per the Court's request, all appraisals available are attached hereto as exhibits.  Plaintiffs Gibbs have provided a 2007 appraisal in addition to the 2021 appraisal created by Mrs. Wilson.  Plaintiff Carter was not able to locate an earlier appraisal; thus, only the 2021 appraisal generated by Mrs. Wilson is attached.

At this point in the process, it appears that this Court has several options available: 1) issue a revised scheduling order granting Defendants additional time to retain a remediation cost expert, depose Mr. Macomber regarding his Xactimate estimates, allow Plaintiffs to depose Defendants' expert(s), and allow a revised witness list for the Rule 55 hearing that will allow Mr. Macomber to testify; 2) order Plaintiffs to engage a new appraiser with experience appraising property requiring remediation due to the presence of Chinese drywall to provide a current market valuation with full consideration of the Chinese drywall remediation costs involved; or, 3) proceed to a Rule 55 hearing and take judicial notice of the 2019 remediation cost calculations contained in Doc. 22235-1 in addition to Plaintiffs' testimony regarding 2021 remediation costs expected.

Plaintiffs take the position that option 1 is the best option for this Court to determine the true cost of remediation of Plaintiffs' homes.  Given Judge Fallon's rulings that Plaintiffs are entitled to recovery of the full cost of remediation in addition to other compensatory damages available under controlling law, this would be the optimal choice.

Respectfully submitted:

/s/ *James V. Doyle, Jr.*

James V. Doyle, Jr.
DOYLE LAW FIRM, PC
2100 Southbridge Pkwy., Suite 650
Birmingham, AL 35209
Tele: 205-533-9500
Fax: 844-638-5812
jimmy@doylefirm.com

*Attorney for Plaintiffs*

## **CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing Plaintiffs' Position Regarding Probative Value of 2021 Appraisals for the Defendants via email on this 5th day of May, 2021.

/s/ *James V. Doyle, Jr.*

James V. Doyle, Jr.
DOYLE LAW FIRM, PC