UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL NO. 2047<br>SECTION: L |
| THIS DOCUMENT RELATES TO: | JUDGE ELDON FALLON<br>MAG. JUDGE NORTH |
| *Eduardo and Carmen Amorin, et al. v. Taishan Gypsum Co., Ltd. f/k/a Shandong Taihe Dongxin Co., Ltd., et al.,* 2:11-cv-1395-EEF-MBN | |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION
TO TAKE JUDICIAL NOTICE AND ADHERE TO THE LAW OF THE CASE
REGARDING REMEDIATION DAMAGES OF
<u>PLAINTIFF JOHN ANDREW CARTER AND PLAINTIFFS GENE & DARLA GIBBS</u>**

Plaintiffs have moved this court to take judicial notice of the law of the case that has been created during the consolidated proceedings in MDL-2047 that directly provide the calculation of remediation damages for Plaintiffs now engaged in the Rule 55(b) damages process underway in this Magistrate Court. In support, Plaintiffs offer the following:

**I.   RELEVANT FACTS**

The Rule 55(b) proceeding in this Court is the second phase of the process. The district court held a Rule 55(b) damages hearing on June 9, 2015, for the primary purpose of determining the cost of remediation for each property containing Taishan drywall. The district court was clear that subsequent "second phase" hearings would be necessary to determine other consequential damages such as loss of use/enjoyment, loss of rental income, personal property damages, etc.

1

The parties in this second phase Rule 55(b) process have previously provided their position statements to this Court. Plaintiffs asserted that the assessment of individual damages could be accomplished by written submission with supporting evidence to be evaluated by the Court; however, this Court has decided to move forward with a hearing during which live testimony will be offered.

Additionally, following Defendants' motion, this Court has excluded Plaintiffs' remediation calculations generated by a contractor who utilized Xactimate software to arrive at the 2021 cost of remediation consistent with the district court's instructions regarding the items in a home to be replaced during the remediation process. Following the exclusion of the Xactimate calculations, this Court instructed the parties to engage an appraiser to determine the market value of Plaintiffs' homes. Appraisals of the current market value were completed, but the selected appraiser had insufficient experience evaluating homes containing Chinese drywall and declined to offer an appraised value taking into consideration the defective drywall. In addition, the selected appraiser could not provide the name of anyone working in the Lee County, Alabama area with experience evaluating the market value of a property containing Chinese drywall.

This court is grappling with the appropriate cost of remediation damages in light of the exclusion of Plaintiffs' witness who was expected to provide this Court with the projected 2021 remediation cost calculations for both properties. Plaintiffs have previously referenced the district court's Findings of Fact and Conclusions of Law in their submissions. Those orders are the law of this case and are instructive in this current second phase Rule 55(b) process. One FOFCOL in particular addresses the cost of remediation and provides an adopted formula. See Rec. Doc. 20741, discussed *infra*. Utilization of this formula will allow this court to make a

recommendation to the district court with the appropriate, updated cost of remediation for each Plaintiff's affected property. And, as a consequence of the utilization of the formula and prior submissions to the district court, apart from determining the updated RS Means National Cost of Construction, further testimony or evidence is unnecessary during this second phase of the Rule 55(b) process.

## II. ARGUMENT

Counsel for the Defendants argued to this Court that the previous rulings issued by the district court during the consolidated MDL-2047 proceedings can be disregarded because Plaintiffs opted-out of the class action settlement. This assertion does not comport with the law – opting out of a settlement has no effect on the application of previous rulings issued by an MDL court. They remain the law of the case.

### A. The Law of the Case Doctrine Applies to These Second Phase Rule 55(b) Proceedings.

MDL-2047 rulings are considered the "law of the case" if those orders are to be applied to all cases. It is well-established that "[o]rders issued by a federal transferee court remain binding if the case is sent back to the transferor court." *In re Zyprexa Prods. Liab, Litig.,* 467 F.Supp.2d 256, 273 (E.D.N.Y.2006) (citing Manual for Complex Litigation § 20.133 (4th ed.2004)). As the Supreme Court has stated, the law of the case doctrine "posits that when a [MDL transferee] court decides a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Parkinson v. Novartis Pharm. Corp.*, 5 F. Supp. 3d 1265, 1271 (D. Or. 2014)*; citing Arizona v. California,* 460 U.S. 605, 618, 103 S.Ct. 1382, 75 L.Ed.2d 318 (1983); *see also Aramony v. United Way of Am.,* 254 F.3d 403, 410 (2d Cir.2001). Because several issues raised during this continuation of the Rule 55(b) proceeding that were

already decided by the MDL-2047 court (and those rulings are binding on this court), it will help this Court to reach the appropriate conclusions.

Judge Fallon has issued numerous Findings of Fact and Conclusions of Law. And, where those orders are issued and designated to apply to "all cases," they are binding on all transferor courts. This Court, sitting in place of the Middle District of Alabama, has been tasked with overseeing an individualized second phase Rule 55(b) damages hearing, because this case was not remanded; however, rulings that are binding on a transferor court must be followed by this Court in the same manner as if it were a transferor court. The parties have previously agreed that Alabama law is to be applied to the facts of the case as this Court considers the individualized claims when making its recommendation to the district court at the conclusion of the current proceedings.

### B. This Proceeding is a Continuation of the District Court's 2015 Rule 55(b) Damages Hearing.

The District Court issued Rec. Doc. 20741 which is attached as Exhibit A. It is labeled "Findings of Fact & Conclusions of Law Related to the June 9, 2015 Damages Hearing." The current proceedings flow directly from the Rule 55(b) damages hearing following default by Defendants. On Page 55 of Rec. Doc. 20741, Judge Fallon is clear that the "Damages Hearing" he conducted was pursuant to Federal Rules of Civil Procedure 55(b).

Judge Fallon is also clear that "[t]he June 9, 2015, Damages Hearing was the first hearing of what will be multiple hearings that the Court will hold in order to assess the full amount of damages owed to class members. On June 9, 2015, the Court considered only remediation damages for current owners. Other such damages, such as alternative living expenses, bodily injury, foreclosure, and/or lost rent, may be considered at other proceedings in this Court or other Courts where appropriate." See Rec. Doc. 20741 at Page 30. He also discussed in detail his

4

calculation of remediation damages in this "first stage of the damages proceedings," and stated that "it is in the best interest of all parties to consider remediation damages together in the first stage of the damages proceedings." *Id*. at Page 30-31.

The District Court found that where a class member could adequately prove that the property they own contains Taishan/TTP dywall, Plaintiffs "are entitled to ***total remediation*** of their homes." *Id*. at Page 37, Paragraph 72 and Footnote 4 (emphasis added). Furthermore, the court found that a plaintiff's property damages in the Chinese drywall class do not require individualized trials to determine either liability or the existence or nature of damages. *Id*. at Page 40, Paragraph 76. And, the district court was clear that "[w]ith regards to the Taishan drywall in this case… there is no issue of either liability or causation." *Id*. at Page 32, Paragraph 64.

The district court adopted a formula to calculate remediation damages. *Id*. at Page 43, Paragraph 80. The court also made clear that the formula devised by Plaintiffs' expert, "devised a reasonable and reliable solution to calculate remediation damages on a class-wide basis and accommodate individual class damage issues by shifting the individual damage components to subsequent adjudicative phases." *Id*. at Page 47, Paragraph 86. The court also stated that "a formulaic approach is superior to the thousands of individual proceedings that would result if Defendants' proposal for property-by-property inspection and estimation were accepted. The costly and wasteful individualized mini-trials that would result from Defendants' proposal would further burden the Taishan property owners and further delay the benefits they hope to receive from this litigation." *Id*. at page 47, Paragraph 87. And, finally, to be clear, the court stated that while "many properties will have varying remediation costs based on factors such as ceiling height, number of partitions, and quality of interior finishes. However, the variations among

damages in this case are sol relatively minor that the damages are susceptible to being calculated by a formula." *Id*. at Page 48, Paragraph 88.

C. **Calculation of Remediation Damages for Plaintiffs were Submitted to the District Court Twice, as Requested, and Updated with Current Costs through 2019.**

The district court's conclusion of Rec. Doc. 20741 adopted Mr. Inglis' damages methodology (i.e., the remediation formula) to quantify the remediation damages and instructed the PSC to submit a spreadsheet with the necessary variables (square footage, location factor) defined for each class member with Taishan drywall. The first spreadsheet with individualized remediation damages was submitted to the district court in 2017 and included the calculation of remediation damages for Plaintiffs Carter and Gibbs. See Exhibit B. The 2017 cost of remediation for Plaintiff Carter's property was calculated to be $109,155.00 and the 2017 cost of remediation for Plaintiff Gibbs was calculated to be $114,138.00.

In 2019, the cost of remediation was updated with current RS Means cost data. The result was an increase in the cost of remediation for all properties as the cost of construction had increased during the two-year period since the last submission to the court. Exhibit C contains the 2019 valuations for Plaintiffs Carter and Gibbs. The spreadsheet contained in Exhibit C reflects updated remediation costs for Plaintiff Carter in the amount of $114,408.00 and Plaintiff Gibbs in the amount of $119,630.00.

D. **This Court may Retain its Own Expert to Provide Updated RS Means National Cost of Construction Calculations.**

Due to this Court's decision to exclude the Xactimate remediation cost estimates generated by Healthy Home Solutions, LLC for Plaintiffs during this second phase Rule 55(b) Damages proceeding, this Court is left without current, updated remediation cost calculations for

2021. The Federal Rules of Evidence may provide the solution. Rule 706, entitled "Court-Appointed Expert Witnesses" provides as follows:

> **(a) Appointment Process.** On a party's motion or on its own, the court may order the parties to show cause why expert witnesses should not be appointed and may ask the parties to submit nominations. The court may appoint any expert that the parties agree on and any of its own choosing. But the court may only appoint someone who consents to act.
>
> **(b) Expert's Role.** The court must inform the expert of the expert's duties. The court may do so in writing and have a copy filed with the clerk or may do so orally at a conference in which the parties have an opportunity to participate. The expert:
>
>> **(1)** must advise the parties of any findings the expert makes;
>>
>> **(2)** may be deposed by any party;
>>
>> **(3)** may be called to testify by the court or any party; and
>>
>> **(4)** may be cross-examined by any party, including the party that called the expert.

A court-appointed expert would benefit the Court by providing the latest RS Means National Cost of Construction that could be utilized in the Inglis damages formula adopted in Rec. Doc. 20741. And, with the cost of remediation impasse resolved, this Court could then focus its attention on the other consequential damages allowed under Alabama law such as loss of use/enjoyment, loss of rental income, past home repair related to Chinese drywall, and personal property damage.

### III. CONCLUSION

For the reasons contained herein, Plaintiffs urge the Magistrate Court to take judicial notice of the law of the case created during the proceedings in the Eastern District of Louisiana during the proceedings in MDL-2047 with respect to the calculation of remediation damages and apply those findings in this second phase Rule 55(b) process now underway. Plaintiffs also

respectfully request appointment of a court-appointed expert in construction, pursuant to FRE 706, who can provide the latest RS Means National Cost of Construction figure to utilize in the remediation formula adopted by the district court in Rec. Doc. 20741.

/s/ *James V. Doyle, Jr.*

James V. Doyle, Jr.
DOYLE LAW FIRM, PC
2100 Southbridge Pkwy., Suite 650
Birmingham, AL 35209
Tele: 205-533-9500
Fax: 844-638-5812
jimmy@doylefirm.com

*Attorney for Plaintiffs*