UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br><br>*Amorin, et al. v. Taishan Gypsum Co., Ltd., et al.*, Case No. 11-cv-1395 | MDL NO. 2047<br>SECTION: L<br>JUDGE FALLON<br>MAG. JUDGE NORTH |

### TAISHAN'S RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION TO RECOVER PROHIBITED DAMAGES ON BEHALF OF JOHN CARTER AND DARLA AND GENE GIBBS

After months of silence, Plaintiffs filed a surprise motion in the dead of night seeking to change the course that these proceedings have been on for nearly a year. The motion seeks an award of "remediation damages" that this Court has ruled are not available under applicable law. It also asks the Court to "take judicial notice" of an MDL ruling that this Court has stated does not apply here. (Pls.' Mot. at 1). The motion then goes even further out of bounds by soliciting the Court's assistance in this improper and untimely effort by using Federal Rule of Evidence 706 to appoint an expert to help Plaintiffs establish a basis for their impermissible recovery. Plaintiffs seek to recover unavailable damages through a novel (and erroneous) "law of the case" theory that ignores the explicit rulings of the District Court and your Honor and seeks to circumvent them. The Motion should be denied.

**I.      This Court Has Already Rejected Plaintiffs' Attempts to Recover Remediation Damages Under Judge Fallon's Formula for Aggregate Class Damages.**

Plaintiffs' attempt to reach back to a 2017 order from a 2015 class damages hearing

1

recycles an argument that this Court directly rejected earlier this year.[1] Since opting out of the 2020 global class settlement, these Plaintiffs' claims have been governed by the Case Management Order for Opt-Out Plaintiffs ("Opt-Out CMO") in which Judge Fallon referred the claims to "U.S. Magistrate Judge North to hold an evidentiary hearing and determine damages, *if any*, pursuant to Federal Rule of Civil Procedure 55(b)(2)." Rec. Doc. No. 22976 at 2 (emphasis added). The Opt-Out CMO specified that your Honor should "assess **all damages** sought, including property and non-property damages claims." *Id.* (emphasis added). The Opt-Out CMO gave no suggestion that any category of damages was guaranteed or controlled by earlier MDL rulings.

Plaintiffs undertook to attempt to prove their alleged damages, and their March 19, 2021 Pre-Hearing Position on Assessment of Damages declared that they would "offer the remediation estimate by Shawn Macomber of Healthy Home Solutions, LLC which reflects a remediation cost" of $145,159.34 for Plaintiff Carter and $176,123.41 for the Gibbs Plaintiffs. (Ex. B at ¶¶ A.1. and B.1.). Although Plaintiffs cited to Judge Fallon's Class Damages FOFCOL on class damages for the purpose of establishing the scope of "remediation required for a home containing defective drywall," they did not mention Judge Fallon's aggregate class damages formula. (*Id.* at 5).[2]

But Plaintiffs' evidentiary failure blocked the proposed individualized remediation estimates: Macomber created his reports weeks after the close of discovery under the Opt-Out CMO and months after Rule 26(a)(2)(D)'s deadline for expert disclosures.[3] The Court held a hearing on Taishan's objections to that and other evidence proffered by Plaintiffs and sustained

---

[1] On April 21, 2017, Judge Fallon issued his findings of fact and conclusions of law related to the June 9, 2015 class damages hearing (the "Class Damages FOFCOL", Rec. Doc. 20741, attached as Ex. A).

[2] Plaintiffs' Pre-Hearing Position on Assessment of Damages does not have page numbers. The referenced page number is counted from the beginning.

[3] As discussed in § II below, the remediation damages claim was also blocked by Alabama law.

Taishan's untimeliness objection to the Macomber reports and Xactimate estimates, noting that "these documents arguably should have been produced when Plaintiffs completed their Supplemental Plaintiff Profile Forms." (Ex. C, Minute Entry, at 1).

At the hearing, Plaintiffs' counsel tried to pivot from his individualized remediation estimates to Judge Fallon's 2017 aggregate class damages formula, arguing that it provided

> another methodology that Judge Fallon devised and adopted in Document 20741 . . . . So we've already got that. The Court has adopted the formula and it's been in place. The only reason that we did anything here [with the Macomber reports] was so that the Court could have true up-to-date numbers.

(Ex. D, Transcript, at 7). But the Court flatly rejected that fallback to an aggregate damages formula designed for a huge nationwide class, holding from the bench:

> A formula created by a district judge in a gigantic MDL to calculate damages for thousands and thousands of claims is highly unlikely to be probative when we are having an evidentiary hearing that is specific to two claims where you've actually given me – albeit late-created, but you've given me actual estimates. There is no need to apply Judge Fallon's formula that was intended to address these thousands of claims when we are only talking about two homes.

(*Id.* at 15).

That is precisely right. Judge Fallon's class damages formula was not meant for individual actions but was adopted to develop an aggregate class damages amount specifically because of the impracticability, if not impossibility, of obtaining individualized remediation estimates for a class made up of thousands of members:

- "District courts are encouraged to 'devise imaginative solutions to problems created by the presence in a class action of individual damages issues.'" (FOFCOL at ¶ 86 (quoting *Pella Corp. v. Saltzman*, 606 F.3d 391, 391 (7th Cir. 2014)).

- "[A] formulaic approach is superior to the thousands of individual proceedings that would result if Defendants' proposal for property by property inspection and estimation were accepted. The costly and wasteful individualized mini-trials that would result . . . would further burden the Taishan property owners and further delay the benefits they can hope to receive from this litigation." (*Id.* at ¶ 87).

3

- "It is therefore unnecessary and unjust to hold individual mini-trials to determine remediation damages in this case." (*Id.* at ¶ 90).

- "The Court adopts Mr. Inglis' damages *methodology* to quantify the **aggregate** damages." (*Id.* at ¶ 92 (bolded emphasis added)).

That aggregate damages methodology was never implemented because the case settled as a global class before any damages were determined. When Plaintiffs opted out of that settlement, they took the considered risk of the "inherent difficulties and uncertainties associated with pursuing" individualized damages claims—in other words, there were no guaranteed formulaic damages for those who chose to pursue their cases on their own. (Rec. Doc. 22240, Final Approval of Class Settlement, at 47).

As recently as May 2021, after Plaintiffs' gambit of insisting on a "blind" appraisal failed to give the Court meaningful evidence from which to assess diminution in value, Plaintiffs *still* advocated for obtaining *individualized* remediation damages estimate for the two properties, arguing that the "best option for this Court to determine the true cost of remediation of Plaintiffs' homes" would be to allow "Defendants additional time to retain a remediation cost expert, depose Mr. Macomber regarding his Xactimate estimates, allow Plaintiffs to depose Defendants' expert(s), and allow a revised witness list for the Rule 55 hearing that will allow Mr. Macomber to testify." (Ex. E, Plaintiffs' Position Regarding Probative Value of 2021 Appraisals, at 5). But that door is clearly closed to Plaintiffs because of the Court's prior evidentiary ruling, as Plaintiffs' repeatedly acknowledge in their pending Motion (without acknowledging any fault for that result).

Plaintiffs cannot resurrect the rejected argument that Judge Fallon's 2017 aggregate damages formula should be used to calculate damages here. The Court should reject that revisionist effort just as a district court in this circuit did in *Wachob Leasing Co. v. Gulport Aviation Ptnrs.*, 2017 U.S. Dist. LEXIS 228697 (S.D. Miss. Mar. 10, 2017). That court rejected a Plaintiffs' attempt to switch to a repair-damages theory after the Court issued a partial summary

4

judgment ruling that hampered Plaintiffs' recovery potential under their original replacement-damages theory pursuit. *See id.* (holding that the plaintiff was estopped from changing damages theories and deeming the change to be "in effect an effort to make a list-minute end run around the Court's Order granting Partial Summary Judgment on the measure of damages"). The lesson of that case is that when the Court makes a ruling that adversely impacts a party's case, a litigant cannot simply pretend that it did not happen and try again with a new approach (which in this case the Court has already rejected).

## II. Alabama Law Does Not Allow Recovery of Remediation Damages.

Plaintiffs' latest effort to recover formulaic remediation damages fails for an entirely independent reason that this Court has also already adjudicated: remediation damages are not recoverable under Alabama law, which undisputedly governs these claims. *See* Rec. Doc 2380 at 64 (ruling that the state law applicable to drywall claims is the state in which the claimant's real property is situated); Pls.' Mot. at 4 ("The parties have previously agreed that Alabama law is to be applied to the facts of this case."). Defendants have cited to an unbroken line of Alabama cases holding squarely that diminution in property value is the only measure of damages for real property claims and disallowing remediation awards.[4] The Court followed that binding law in its Minute

---

[4] Here are just some of those cases: *See Poffenbarger v. Merit Energy Co.*, 972 So. 2d 792, 801 (Ala. 2007) (reversing award of $2.6 million in remediation damages where diminution of property value was only $6,000); *Birmingham Coal & Coke Co. v. Johnson*, 10 So. 3d 993 (Ala. 2008) (upholding award equating to repair costs only where there was no evidence indicating that the property damages were "in excess of the *diminution in value* of the property") (emphasis added); *Kerns v. Pro-Foam of S. Ala., Inc.*, 572 F. Supp. 2d 1303, 1308 (S.D. Ala. 2007) (reinforcing that diminution in value is proper measure of damages, and allowing consideration of repair costs only "subject to a *Poffenbarger* instruction that repair costs are not recoverable to the extent they exceed *diminution in value* to the house") (emphasis added); *Leftwich v. Brewster*, 306 So.3d 26 (Ala. 2020) (affirming exclusion of evidence of repair costs because damages limited to diminution in value and repair costs exceeded the value of the property); *Dialysis Clinic, Inc. v. City of Dothan,* No. 1:10-CV-1051, 2012 U.S. Dist. LEXIS 156351, at *10 (M.D. Ala. Nov. 1, 2012) (holding that

Entry holding that "diminution of value of the Plaintiffs' homes [is] the sole measure of damages to real property under Alabama law." (Ex. C at 1). That is why the Court allowed Plaintiffs—after the close of discovery—another chance to develop diminution of value evidence by directing that an "as is" appraisal of the property be performed to compare it with the prior appraisals that Plaintiffs' counsel represented to the Court had been obtained.[5]

When the appraisals—performed without knowledge of the presence of Chinese Drywall at Plaintiffs' counsel's insistence—came back showing a higher value than the earlier appraisal and cost evidence (and thus, by definition, showing no diminution in value), Plaintiffs' counsel was undaunted, arguing that they somehow *helped* his damages case because they created an "arguabl[e] limit of total recoverable amount," and suggesting again that the Court accept the late, rejected Macomber Xactimate remediation estimates. (Ex. E. at 3, 5).

Plaintiffs' Motion feels like it is attempting a Jedi mind trick to make us believe that Alabama law and the many applicable rulings are not standing right in front of us. Plaintiffs' Motion declares that the "court is grappling with the appropriate cost of remediation damages," and that invoking the class remediation damages formula would "resolve" the "cost of remediation impasse," so that "this Court could then focus its attention on the other consequential damages allowed under Alabama law." (Pls.' Mot. at 2, 7). To state the obvious: the Court is *not* "grappling" with remediation damages because it has already ruled that remediation damages are not allowed

---

the court was aware of no case "where an Alabama court departed from the diminution-in-value rule" to award repair costs).

[5] *See* Ex. D, Transcript, at 25 (Court: "[Y]ou're telling me that your clients had their properties appraised at some point in the past before Chinese drywall was put into their homes; is that correct?" Mr. Doyle: "That's right."). At that same hearing, Plaintiffs' counsel admitted that he had withheld the appraisals because he thought they were "not part of what the discovery process is" and "not what was required for production" under the PPF or SPPF. *Id.* at 21. After the hearing, he produced one appraisal for the Gibbs Plaintiffs but revealed to the Court that "Plaintiff Carter was not able to locate an earlier appraisal." (Ex. E. at 5).

under Alabama law. Defendants have also shown that Alabama law disallows "the other consequential damages" referenced in Plaintiffs' Motion. There is one measure of real property damages here: diminution in value. Plaintiffs have failed to submit admissible evidence of those damages, even when given post-discovery opportunities to do so.

### III.     Defendants' Proposal

At the March 31, 2021 Objections Hearing, the Court challenged defense counsel to identify a way for the Court to avoid the "inequitable result" of zero recovery for Plaintiffs and to allow them to "go about proving the only measure of damages that matters in my view, which is diminution of value of their respective properties." (Ex. D, Transcript, at 18-19). Defense counsel offered a path that remains open to the Court:

> We have evidence in the record of what the build costs were for the house. We have evidence of fair market value according to the tax assessments. In Alabama law – and I'm sure Mr. Doyle knows this because he's an Alabama lawyer – a homeowner can give testimony as to the value of their own property. Obviously the Court would need to take that into account with the other objective measures, but those are . . . evidentiary testaments that the Court could use to determine how much these properties have actually diminished in value and come up with an award – recommend an award within Alabama law that would withstand Alabama legal scrutiny.

(*Id.*). The Court stated that it was inclined to use that approach, but it also gave Plaintiffs an opportunity to develop current "as is" fair market value evidence through new appraisals. Plaintiffs then produced an earlier appraisal that had been withheld, and an independent appraiser was engaged to perform new appraisals of both properties. It is undisputed that the new appraisals provide the current market value of the properties but for the presence of Chinese Drywall. (*See* Ex. E at 2-3).

Defendants propose that this Court could hold an evidentiary hearing to take into account all of the admissible evidence of property value, including Plaintiffs' testimony, to formulate a

finding of how much less than the current appraisal values the homes are worth given the presence of Chinese Drywall. That delta will provide a measure of damages that comports with Alabama law, and hopefully, bring these final two claims to conclusion at last.

Dated: October 12, 2021

Respectfully submitted,

/s Christina Hull Eikhoff
Christina Hull Eikhoff, Esq.
Georgia Bar No. 242539
David Venderbush, Esq.
New York Bar No. 2920817
ALSTON & BIRD LLP
1201 West Peachtree Street
Atlanta, Georgia 30309
Phone: (404) 881-7000
Fax: (404) 881-7777
christy.eikhoff@alston.com
*Counsel for Taishan Gypsum Co., Ltd. and Tai'an Taishan Plasterboard Co., Ltd.*

## **CERTIFICATE OF SERVICE**

      I hereby certify that the above and foregoing Response in Opposition to Plaintiffs' Motion to Recover Prohibited Damages on behalf of John Carter and Darla and Gene Gibbs via email on this 12th day of October 2021.

                                              /s Christina Hull Eikhoff
                                              Christina Hull Eikhoff, Esq.
                                              *Counsel for Taishan Gypsum Co., Ltd. and*
                                              *Tai'an Taishan Plasterboard Co., Ltd.*