UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL NO. 2047 SECTION: L |
| THIS DOCUMENT RELATES TO: *Eduardo and Carmen Amorin, et al. v. Taishan Gypsum Co., Ltd. f/k/a Shandong Taihe Dongxin Co., Ltd., et al.*, 2:11-cv-1395-EEF-MBN | JUDGE ELDON FALLON MAG. JUDGE NORTH |

**PLAINTIFFS' PRE-HEARING POSITION ON ASSESSMENT OF DAMAGES PURSUANT TO FRCP 55(b) FOR PLAINTIFF JOHN ANDREW CARTER AND PLAINTIFFS GENE & DARLA GIBBS**

This Court instructed the parties to provide their respective positions on damages related to the claims of Plaintiff John Andrew Carter and Plaintiffs Gene and Darla Gibbs in the above-styled action prior to the hearing scheduled for March 31, 2021, at 9:00 am CST. Plaintiffs offer their respective positions as follows:

## BACKGROUND

The Plaintiffs in this proceeding, John Andrew Carter and Gene & Darla Gibbs, opted out of the class action settlement that was certified by the district court on January 10, 2020. These Plaintiffs both filed their claims in an "*Amorin*" civil action in 2012. The posture of the *Amorin* actions prior to the class certification was the entry of default against the Taishan defendants. The default entered by Judge Fallon in the Taishan "Amorin" group of cases applied to those actions filed between 2009 and 2012. The reason for the default was due to Defendants' actions

in the pending litigation. Defendants terminated their counsel and refused to participate in the active litigation for approximately eighteen months. The current counsel for the Taishan Defendants were engaged subsequent to the entry of default and have been representing their clients' interests since that time.

The class action settlement reached in 2019 and certified in January 2020 does not lift the entry of default by the district court against the Defendants. The entry of default is still applicable; thus, the assessment of damages through this Rule 55(b) hearing must now be undertaken to give Plaintiffs their long-awaited finality in this litigation.

This Court has chosen to undertake an evidentiary hearing on damages which will include both the submission of written evidence and live witness testimony. This Court has the benefit of several orders previously issued by Judge Fallon following trials in MDL-2047 on individual damages, including two lengthy orders specifically applicable to the Taishan Defendants. Plaintiffs overarching position with regard to this hearing and assessment of Plaintiffs' damages is that this Court should follow the previous Findings of Fact & Conclusions of Law, because they are directly on point.

## ARGUMENT

This court has been directed to provide recommendations to the district court regarding Plaintiffs' damages. FRCP Rule 55(b)(2) grants this Court broad discretion in its process to ultimately assess all damages for individual claims following the entry of default. At this point in the litigation, following an entry of default, this Court can accept the allegations in the complaint as true. And, nothing in the record suggests that the allegations in the complaint are anything other than well plead. "A default judgment is unassailable on the merits but only so far as it is supported by well-pleaded allegations, assumed to be true." *Wooten v. McDonald Transit*

*Assocs., Inc.*, 788 F.3d 490, 496 (5th Cir. 2015); citing *Nishimatsu*, 515 F.2d at 1206 (citing *Thomson v. Wooster*, 114 U.S. 104, 113, 5 S.Ct. 788, 29 L.Ed. 105 (1885)). Put another way, "[t]he defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law." *Id.* Thus, this court is now asked to review the complaint, confirm product identification, consider the evidence and calculate the appropriate damages.

Plaintiffs will offer an inspection report by an experienced Chinese drywall inspector that will confirm the presence of Defendants' product in the living space of the two homes. The identification of the markings and attribution to Defendants is not in dispute with regard to either home. The Chinese drywall inspections performed by Shawn Macomber of Healthy Home Solutions, LLC confirms the presence of Defendants' product in the living space of each home. (See Exhibits 1 & 2). The markings on the drywall are clear and attribution has been acknowledged by Defendants multiple times during the pendency of this litigation. Plaintiffs will offer Defendants' Product ID and Attribution document (Exhibit 3) that establishes Defendants as the manufacturer of the drywall at issue here. With the drywall Product ID and attribution established, this Court can shift to the calculation of damages caused by the defective product in Plaintiff's homes.

The district court has ruled that the defective nature of Defendants' products is "undisputed." See Doc. 20741 at 13. And, because Plaintiffs have established the presence of Defendants' defective product in the living space of their homes, remediation and other damages are appropriate under the applicable law. In this instance, both Plaintiff Carter's and Plaintiffs Gibbs' homes are situation in the State of Alabama; thus, the applicable law in this instance is the law of Alabama. In *Casrell v. Altec Indistries*, the Alabama Supreme Court found as follows:

> Under the "extended manufacturer's liability doctrine," we opine that a manufacturer, or supplier, or seller, who markets a product not reasonably safe when applied to its intended use in the usual and customary manner, constitutes negligence as a *matter of law*. As Dean Wade suggests, we hold scienter is supplied as a matter of law, and there is no need to prove its existence as a matter of fact. In other words, the fault or negligence of the defendant is that he has conducted himself in a negligent manner by placing a product on the market causing personal injury or property damage, when used to its intended purpose. As long as there is a causal relationship between the defendant's conduct and the defective product, he is held liable because he has created an unreasonable risk of harm.

*Casrell v. Altec Industries, Inc.*, 335 So. 2d 128, 132 (Ala. 1976)

Alabama law allows for the recovery of direct property damages and consequential damages that stem from the use of the defective product. The categories of damages allowable under Alabama law that this court will be asked to consider are: 1) cost of remediation; 2) personal property damage; 3) recurring alternative living expenses; 4) non-recuring alternative living expenses; 5) pretrial repair costs; 6) post-trial repair costs; 7) lost rental income; 8) loss of use/ loss of enjoyment; 9) attorney's fees and expenses. All categories have been directly addressed by the district court in past Chinese drywall verdicts. For instance, in a Findings of Fact and Conclusions of Law ruling following the *Hernandez v. Knauf Gips KG* verdict in 2010 (Doc. 2713), Judge Fallon evaluated and assessed the appropriate damages for the plaintiffs in that Chinese drywall action. In the conclusion of that ruling, six classes of damages were calculated. Also, a finding was made that attorney's fees are appropriate under La. Civ. Code art. 2545 (Doc. 2713 at Pg. 47).

The district court also ruled on similar categories of damages in *Germano, et al. v. Taishan Gypsum Co., Ltd., et al.* Following the *Germano* decision, a Findings of Fact & Conclusions of Law ruling was issued by Judge Fallon (Doc. 2380). There, all categories of

damages, including loss of use/ loss of enjoyment were calculated and assessed against the Taishan Defendants. (See Doc. 2380 at Pgs. 106-108).

Judge Fallon also issued a Findings of Fact & Conclusions of Law order related to a 2015 class damages hearing (Doc. 20741). There, on Page 13, Judge Fallon declared the court's position regarding several aspects of damages in a section entitled: "General Findings on Chinese Drywall." There, Judge Fallon provided the parties with detailed rulings regarding the full extent of remediation required for a home containing defective drywall. At Page 30, Judge Fallon again contemplated the additional damages beyond remediation, finding that other damages include, "alternative living expenses, bodily injury, foreclosure, and/or lost rent, may be considered at other proceedings in this Court or other Courts where appropriate." So, the evidence to be offered by Plaintiffs will demonstrate to this court that damages are appropriate in each category as follows:

A. **Plaintiff John Andrew Carter Damages**

1. **Remediation Damages** – Plaintiff Carter will offer the remediation estimate by Shawn Macomber of Healthy Home Solutions, LLC which reflects a remediation cost of $145,159.34. (See Exhibit 4). This estimate captures the full remediation cost as described by Judge Fallon in Doc. 20741.

2. Personal Property Damage – Plaintiff will offer evidence and testimony in support of $8,714.00 in personal property damages directly attributable to the defective Chinese drywall in his home.

3. Recurring Alternative Living Expenses - $0.00

4. Non-recurring Alternative Living Expenses – Plaintiff will offer an exhibit documenting an insurance premium for $131.04 and moving expenses to and from the home

totaling $896.00. Therefore, the total non-recurring alternative living expenses attributable to the remediation process for the home is an amount of $1,027.04.

5. Pre-remediation repair costs – Plaintiff's exhibit for pre-remediation home repair costs demonstrates a total of $5,337.00 incurred to date.

6. Post-remediation repair costs – see remediation damages in item #1. No other repair costs have been identified.

7. Lost Rental Income – $1,200.00 per month since January 2012, following the discovery of defective drywall in the home. Plaintiff have not been able to rent the home, sell the home or use the home since the date of discovery on November 12, 2011. Plaintiff had been renting the home to his elderly mother, but she was moved from the property soon after the discovery of defective drywall. The monthly rental amount claimed herein is consistent with other properties in the area, including another property of similar size owned by Plaintiff. The total lost rental income as of the date of this evidentiary hearing is $133,000.00.

8. Loss of Use / Loss of Enjoyment – Plaintiff cannot live in this home, cannot sell the home, and cannot rent the home due to the presence of defective Chinese drywall. Plaintiff filed his claim in 2012 and since that time the monthly mortgage was paid, insurance paid, and upkeep on the home was performed routinely. It has been a financial burden to pay these expenses without any use of the property. Judge Fallon has previously ruled in multiple Findings of Fact & Conclusions of Law in post-trial Chinese drywall cases that $25,000 per year is fair and appropriate amount for loss of use and enjoyment of a property containing defective Chinese drywall. *See Hernandez, Germano, Gross & Wiltz FOFCOLs*. Plaintiffs request the adoption of the same amount for the period of ownership by Plaintiff. The total for this category of damages is $337,500 as of the date of this evidentiary hearing.

9. Attorneys' Fees & Expenses – Alabama Code §12-19-272 controls the award of statutory attorney's fees in civil actions as sanctions available in a default judgment. *See, e.g., Salser v. K.I.W.I., S.A.*, 591 So.2d 454 (Ala.1991). Plaintiffs will request reasonable attorneys' fees of 33% of the compensatory damages total. In addition, Plaintiffs request payment by Defendants for the expense of the remediation estimate in the amount of $2,394.14 as reflected on the invoice provided to this Court.

### B. Plaintiffs Gene & Darla Gibbs Damages

1. **Remediation Damages** – Plaintiff Carter will offer the remediation estimate by Shawn Macomber of Healthy Home Solutions, LLC which reflects a remediation cost of $176,123.41. (See Exhibit 5). This estimate captures the full remediation cost as described by Judge Fallon in Doc. 20741.

2. **Personal Property Damages** – Plaintiffs will offer evidence of personal property damage in the amount of $4,322.00.

3. **Recurring Alternative Living Expenses** – $0.00. Plaintiffs have continued to live in this home for the entire pendency of this case; therefore, no pre-remediation alternative living expenses are requested.

4. **Non-recurring Alternative Living Expenses** – Plaintiffs have received a quote from a local mover in the amount of $11,437.65 to move their belongings and store them for the duration of the remediation of their home. In addition, Plaintiffs have been searching for an appropriate rental home in their area that will accept their pets as well. Although the exhibit provided by one rental income is for a smaller home that does not accept pets, it is at least representative of the cost of a rental home in their area. Because the rental company only will accept a 12-month lease, the amount for the rental home would amount to $12,000.00.

Therefore, Plaintiffs position is that the alternative living expenses they will incur as a result of the remediation process is a minimum of $23,437.65.

5. Pre-remediation repair costs – Plaintiffs will offer $9,006.61 in documented home repair costs that they allege are related to the defective Chinese drywall in their home.

6. Post-remediation repair costs - see remediation damages in item #1. No other repair costs have been identified.

7. Lost Rental Income – $0.00. Plaintiffs live in this home and have not used it as a rental property at any time.

8. Loss of Use / Loss of Enjoyment – Plaintiffs cannot move from this home and cannot sell the home due to the presence of defective Chinese drywall. Plaintiffs filed this claim in 2012 and since that time the monthly mortgage was paid, insurance paid, and upkeep on the home was performed routinely. Plaintiffs will offer testimony that the effects of the defective drywall, namely the off-gassing, have made living in this home difficult both in terms of the recurring repairs and the health effects experienced by Plaintiffs and their family. Judge Fallon has previously ruled in multiple Findings of Fact & Conclusions of Law in post-trial Chinese drywall cases that $25,000 per year is fair and appropriate amount for loss of use and enjoyment of a property containing defective Chinese drywall. *See Hernandez, Germano, Gross & Wiltz FOFCOLs*. Plaintiffs request the adoption of the same amount for the period of ownership. The total for this category of damages is $337,500 as of the date of this evidentiary hearing.

9. Attorneys' Fees & Expenses – Alabama Code §12-19-272 controls the award of statutory attorney's fees in civil actions as sanctions available in a default judgment. *See, e.g., Salser v. K.I.W.I., S.A.*, 591 So.2d 454 (Ala.1991). Plaintiffs will request reasonable attorneys' fees of 33% of the compensatory damages total. In addition, Plaintiffs request payment by

Defendants for the expense of the remediation estimate in the amount of $2,394.14 as reflected on the invoice provided to this Court.

## CONCLUSION

In conclusion, it is Plaintiff John Andrew Carter's position that damages in the amount of $839,908.89, inclusive of all damages plus attorneys' fees is appropriate in his case. Plaintiffs Gene & Darla Gibbs' position is that damages in the amount of $734,412.40, inclusive of all damages plus attorneys' fees is appropriate. Plaintiffs request a recommendation with an itemization of each category of damages to the district court following the evidentiary hearing.

/s/ *James V. Doyle, Jr.*

James V. Doyle, Jr.
DOYLE LAW FIRM, PC
2100 Southbridge Pkwy., Suite 650
Birmingham, AL 35209
Tele: 205-533-9500
Fax: 844-638-5812
jimmy@doylefirm.com

*Attorney for Plaintiffs*

DATED: March 19, 2021.

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing Position Statement has been served on Counsel for the Defendants via email on this 19th day of March, 2021.

/s/ *James V. Doyle, Jr.*

James V. Doyle, Jr.
DOYLE LAW FIRM, PC