**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL DOCKET NO. 09-md-2047 |
| | SECTION: "L" (5) |

THIS DOCUMENT RELATES TO:

EDUARDO AND CARMEN AMORIN, <u>ET AL</u>.
individually and on behalf of other similarly
situated v. TAISHAN GYPSUM CO., LTD. F/K/A
SHANDONG TAIHE DONGXIN CO., LTD.;
TAIAN TAISHAN PLASTERBOARD CO.,
LTD., <u>ET AL</u>., 2:11-cv-01395-EEF-JCW

## <u>REPORT AND RECOMMENDATION</u>

By an Order of reference dated November 2020, this matter came before the undersigned for a determination of damages under Rule 55 of the Federal Rules of Civil Procedure. (Rec. doc. 22976). This matter concerns the claims of two sets of plaintiffs, John and Jill Carter (the "Carters") and Gene and Darla Gibbs (the "Gibbs") against Taishan Gypsum Company and related entities ("Taishan" or "Defendant"). Taishan is one of many manufacturers of Chinese Drywall that were included as defendants in a years-long multidistrict litigation ("MDL") in this District. What sets Taishan apart from the other defendants is that it was defaulted by the District Judge long before this matter came before the undersigned. Accordingly, the only issue to be decided by this Court is the quantum of damages, if any, due these two sets of plaintiffs as a result of the Chinese Drywall installed in their respective homes.

As noted, the District Judge referred these cases to the undersigned "to hold an evidentiary hearing and determine damages, <u>if any</u>, pursuant to Federal Rule of Civil

Procedure 55(b)(2)." (*Id.*) (emphasis added). Leading up to that evidentiary hearing, which took place a full year later than contemplated by the District Judge, the parties engaged in substantial briefing and argument, primarily occasioned by Plaintiffs' and their counsel's ongoing refusal to accept rulings of this Court and Plaintiff's counsel's occasional non-appearance at scheduled hearings and status conferences. Because the Court has, throughout these proceedings, been sensitive to the fact that these homeowners are seeking to recover against a defaulted defendant who is clearly responsible for the defective Chinese Drywall in their homes, it has repeatedly given Plaintiffs and their counsel the opportunity to marshal their best evidence and put on their best case. This approach has been, at times, to the detriment of, if not prejudicial to, Taishan.

Having thoroughly reviewed all of the pleadings and arguments, the evidence and testimony presented at the evidentiary hearing, and the law, the Court is now prepared to make its Report and Recommendation to the District Judge.

## I.      APPLICABLE LAW

Normally, in an Order and Reasons or Report and Recommendation such as this one, the Court would address the procedural history of the case before discussing the law applicable to Plaintiffs' claims. However, the Court finds that a straightforward threshold discussion of the applicable law is essential here to understand the convoluted procedural history of these two cases, as so much of that history involved Plaintiffs (and their counsel) seeking to convince the Court to apply some law other than that which is applicable to their claims.

To begin, the parties expressly agree that the Carter and Gibbs cases are governed by Alabama law.  (Rec. docs. 23329, 23330).[1]  This, as it turns out, is quite important.

These are essentially tort actions for damages to Plaintiffs' real property.[2]  Under Alabama law, when the cost to remediate real property exceeds the diminution in value of that property, the proper measure for alleged damage is the diminution in value of that property.  *See Poffenbarger v. Merit Energy Co.*, 972 So. 2d 792 (Ala. 2007).; *see also Dialysis Clinic, Inc. v. City of Dothan*, No. 1:10-CV-1051-WKW [WO], 2012 U.S. Dist. LEXIS 156351, at *7-11 (M.D. Ala. Nov. 1, 2012).[3]

In *Poffenbarger*, the plaintiff property owners brought suit against an energy company asserting claims of trespass, nuisance, wantonness, and negligence arising from an oil leak that damaged their property, which required remediation estimated to cost more than $2.6 million.  972 So. 2d at 793.  By contrast, expert appraisals showed the current land value of that property to be $32,628, which was a diminution of a mere $6,000 from the original purchase price.  *Id.*  Despite the gross disparity in these numbers, the Alabama Supreme Court held that "the appropriate measure of direct, compensatory damages to real property generally is the diminution in the value of that property, even when the cost to remediate the property exceeds the diminution in the value thereof."  *Id.* at 801.

---

[1] "[T]he purpose of compensatory damages in Alabama is to 'make the [injured party] whole by reimbursing him or her for the loss or harm suffered.'" *Ex Parte S & M, L.L.C.*, 120 So. 3d 509, 516 (Ala. 2012) (quoting *Ex Parte Goldsen*, 783 So. 2d 53, 56 (Ala. 2000)).  Alabama law requires these Plaintiffs to prove damages by a preponderance of the evidence.  *See, e.g., Rooney v. S. Dependacare, Inc.*, 672 So. 2d 1, 13-15 (Ala. 1995).

[2] Plaintiffs have made non-tort claims – also defaulted – but the only matter before the Court here is quantum.

[3] While there appears to be authority in Alabama that repair costs *may* be a proper measure of damages only when they do not exceed the diminution in value to the property, *Birmingham Coal & Coke Co. v. Johnson*, 10 So. 3d 993 (Ala. 2008), no party in this case has argued or offered evidence that the estimated costs to repair Plaintiffs' homes does not exceed the diminution in value of those homes.

The *Poffenbarger* court cemented Alabama's strong – if harsh – policy supporting diminution as the proper measure:  "Awarding money damages in an amount many times over the actual value of the land at issue . . . may not serve the end of making the victim whole as much as it raises the specter of a windfall to a victim who, in many cases, will have little or no incentive to spend those moneys to repair land that, even upon full remediation, will be worth only a small fraction of the money so expended."  *Id.* at 801-02.

The *Poffenbarger* decision has been uniformly followed by the Alabama state and federal courts.  As recently as 2020, in *Leftwich v. Brewster*, the plaintiff alleged that the defendant's negligence had caused his house to collapse and become uninhabitable.  306 So. 3d 26, 28, 36-38 (Ala. 2020).  The Alabama Supreme Court affirmed the trial court's exclusion of evidence of repair costs because diminution in value of the plaintiff's home was the only appropriate measure of damages.  *Id.*

One Alabama federal court examining Alabama law observed that the notion that diminution in value was the exclusive remedy for damage to real property was "a matter of hornbook law," "quite well settled," and "a principle [] so uncontroversial that the Alabama Supreme Court did not have occasion to expressly affirm it until" *Poffenbarger* in 2007.  *Dialysis Clinic*, 2012 U.S. Dist. LEXIS 156351, at *7-11.  That court rejected a property owner's efforts to recover costs to rebuild a structure destroyed by flooding caused by the defendant's negligence, and instead strictly limited damages to diminution in property value, despite the "financial and practical realities of the case" otherwise favoring repair and relocation.  *Id.* at *10-11.  That court recognized the harshness of the rule, but noted that, even when "the Poffenbargers, whose property lost only $6,000 of its market value, faced estimated remediation costs of over $2,000,000," the Alabama Supreme Court in

*Poffenbarger* "unflinchingly applied the diminution-in-value rule." *Id.* at *11. The *Dialysis Clinic* court applied the diminution in value rule, concluding that "the equities of this case cannot change the rule this court is duty-bound to apply." *Id.*

There is no doubt that this rule is harsh but, just as in *Dialysis Clinic*, this Court, applying Alabama law, is duty-bound to follow it. Particularly germane to these two cases is one additional federal decision interpreting Alabama law on these issues.

Evaluating the <u>admissibility</u> of repair costs in a property-damage case, the District Court for the Southern District of Alabama found that, while "the appropriate measure of direct, compensatory damages to real property generally is the diminution in the value of that property, even when the cost to remediate the property exceeds the diminution in the value thereof," it is also true that "evidence of repair costs remains admissible to show diminution in value for injury to real estate, but diminution in value remains the measure of damages even when remediation costs exceed that diminution in value." *Kerns v. Pro-Foam of South Ala., Inc.*, 572, F. Supp. 2d 1303, 1307 (S.D. Ala. 2007) (citing *Poffenbarger* 972 So. 2d at 800-01).

As will be detailed below, Plaintiffs and their counsel spent the better part of a year trying to convince this Court to apply some other – in fact, any other – rule so that they could ultimately recover in this case something close to their estimated repair/remediation costs. The Court gave them multiple opportunities to (1) make the case that their measure of damages was something other than diminution in the value of their homes, and (2) failing that endeavor, marshal the evidence necessary to demonstrate the value of such diminution. The Court will detail this chaotic procedural history below and return thereafter to an analysis of Plaintiffs' damages claims under Alabama law.

## II.     PROCEDURAL HISTORY

### A.  The MDL Proceedings, Default of Taishan, Settlement of the Class Action, and Opt-out by Plaintiffs

The procedural history of this MDL is long and more than well-described in multiple pleadings and orders in this record, which comprises over 23,000 entries (to date).  The following brief description will suffice for purposes of these matters.

On June 13, 2011, the Plaintiffs' Steering Committee ("PSC") filed the *Amorin* Complaint in the Eastern District of Louisiana.  That complaint sought certification of a nationwide class of homeowners of real property located in the United States "containing problematic drywall manufactured, sold, distributed, and/or supplied by the Defendants." *Amorin v. Taishan Gypsum Co. Ltd.*, Civ. A. No. 2:11-cv-1395, E.D. La., (Rec. doc. 1 at ¶ 119).  In 2012, the PSC amended the *Amorin* Complaint to name thousands of specific claimants as putative class members in an "Omnibus Class Action Complaint in Intervention."  Rec. Doc. 16225 (Omnibus Complaints XV, the "Intervention Complaint").  The amended complaint attached a list of 4,072 alleged "class members" to the *Amorin* class-action complaint.  The Carters and Gibbs were among those listed.

On July 21, 2014, the Court held Taishan in default on the *Amorin* Complaint.  (Rec. docs. 17814, 17815).  Three months later, the Court certified a class consisting of only the identified *Amorin* plaintiffs, explicitly excluding "absent class member[s]."  (Rec. doc. 18028 at 34-35).  In 2015, the District Judge ordered a detailed process for adjudication of class damages for the *Amorin* class under Rule 55.  (Rec. doc. 18921).  After an evidentiary hearing held on June 9, 2015, the District Judge issued Findings of Fact and Conclusions of Law ("FOFCOL") regarding *Amorin* class damages.  (Rec. doc. 20741).

The Court ruled that the class was properly certified, that the damages for remediation of class members' properties could be applied in a formulaic manner, and that the proposed remediation damage formula was appropriate. (*Id.*). Although the FOFCOL adopted a formula for remediation damages, the District Judge reserved adjudication of all other categories of damages for "later phases." (*Id.* at 51).

On May 20, 2019, the District Judge issued "the *Amorin* trial plan" for Rule 55 adjudication of default damages for all *Amorin* claims in the MDL – including the claims of the Gibbs and the Carters. (Rec. doc. 22251 at 1). That trial plan ordered that remediation damages for all *Amorin* claims would be determined through a special master process, in which Defendants would have the opportunity to contest awards under the class remediation damage formula on "the issues of product identification, ownership verification, square footage, and requests for set-offs." (*Id.* at 1). The Court ordered that all other categories of damages be adjudicated through trials "before the District Judge with a jury." (*Id.* at 5). In advance of those trials to adjudicate non-remediation damages, the *Amorin* trial plan established a schedule for expert discovery, production of expert reports, service of trial witness lists and exhibit lists months before the scheduled trial date, pretrial motions, a pre-trial conference, and in-person trials with two days allotted for each priority claimant. (*Id.* at 2-5).

Shortly after the District Judge issued his *Amorin* trial plan, the parties agreed to a class settlement to resolve all drywall claims against Taishan. The Gibbs opted out of the class settlement in October 2019; the Carters opted out shortly thereafter. The District Judge subsequently approved the class settlement, resolving 1,069 claims in the case. (Rec. docs. 22460, 22976).

B.   Post Opt-out Proceedings before this Court

On November 20, 2020, the District Judge issued an *Amorin* Case Management Order for these two claims,[4] outlining "a litigation plan to determine Rule 55 damages for the two remaining claims," *i.e.*, the Gibbs' and the Carters' claims.  (Rec. doc. 22976 at 1).  Noting that prior to the class settlement, Plaintiffs had submitted Supplemental Plaintiff Profile Forms ("SPPFs"), "including all documents supporting their claim for damages," the agreed-to litigation plan allowed for case-specific discovery.  (*Id.* at 2) (emphasis added).

Notably, the plan set January 15, 2021 as the deadline for Defendant to produce its inspection and/or expert report and February 5, 2021 as the deadline for Plaintiffs to do the same.  (*Id.*).  February 5, 2021 was set as the deadline to complete all discovery.  (*Id.*).

Following this discovery deadline, the matter was referred to the undersigned "to hold an evidentiary hearing and determine damages, if any, pursuant to Federal Rule of Civil Procedure 55(b)(2)."  (*Id.*)

Upon referral, the undersigned held a status conference with counsel for the parties to discuss the framework for the evidentiary hearing ordered by the District Judge.  At that conference, it was evident to the Court that the parties could not agree on the scope or framework of the hearing, or even the proper measure of damages available to Plaintiffs.  Accordingly, the Court issued an order stating:

> The parties disagree as to how the Court should proceed with such a hearing.  No later than Friday, March 5, 2021, the parties shall file their respective proposed procedures for briefing, a potential evidentiary hearing, and post-hearing briefing.  The Court will thereafter set a schedule and convene another status conference to discuss its chosen procedure with counsel for the parties.

---

[4]  Defendants represent that the Order was jointly negotiated and agreed to by counsel for Plaintiffs, Jimmy Doyle ("Doyle"), and themselves.  (Rec. doc. 23331).  Plaintiffs' counsel has never disputed this contention.

(Rec. doc. 23064).

The parties filed their respective briefs concerning the conduct of the hearing on March 5, 2021. (Rec. docs. 23331, 23332). It was evident from those briefs that Plaintiffs and their counsel had a fundamentally different (and, ultimately, wrong) view of recoverable damages than did Taishan. For instance, Plaintiffs stated that

> [t]he categories of damages that this court will be asked to consider are: 1) cost of remediation; 2) personal property damage; 3) recurring alternative living expenses; 4) nonrecurring alternative living expenses; 5) pretrial repair costs; 6) post-trial repair costs; 7) lost rental income; 8) loss of use/ loss of enjoyment; 9) attorney's fees and expenses.

(Rec. doc. 23332 at 3). Taishan, on the other hand, argued that, under Alabama law, the sole measure of recoverable damages to real property is diminution in the fair market value of that property. (Rec. doc. 23319 at 11).

The Court held a telephonic status conference during which it directed the parties to file additional briefs setting forth their respective positions on recoverable damages and submit to the Court their respective proposed witness and exhibit lists, along with copies of the exhibits they intended to use at the hearing. (Rec. doc. 23067). Plaintiffs filed their brief and identified certain "Property Screening Reports" and associated "Xactimate" estimates for the Carters' and the Gibbs' homes prepared by a person named Shawn Macomber, both in support of their position on the assessment of damages and as exhibits for the evidentiary hearing. (Rec. doc. 23335). Defendant filed objections to those documents and to the testimony of Macomber, complaining that they were both irrelevant and untimely. (Rec. doc. 23336).

Taishan claimed the evidence and testimony was irrelevant because it concerned only the cost to repair or remediate Plaintiffs' homes, which was not the proper measure of damages under Alabama law. The evidence and testimony was said by Taishan to be untimely because Macomber was clearly being proffered as an expert of some sort, and his "Screening Reports" and Xactimate documents were not even created, much less disclosed, until after the February 5, 2021 discovery deadline imposed by the District Judge. (Rec. doc. 23336).

Plaintiffs responded to Taishan's objections by claiming they were entitled to recover various forms of damages (emotional distress, remediation, attorneys' fees, etc.) not only under the Alabama Extended Manufacturer Liability Doctrine ("AEMLD"), but also by virtue of their (defaulted) claims for private nuisance and the Alabama Deceptive Trade Practices Act. (Rec. doc. 23320). Plaintiffs also suggested that Macomber was not being proffered as an expert witness but as a fact witness and that his Xactimate reports were therefore not "expert" reports. (*Id.*).

The Court held a hearing on Taishan's objections to Plaintiffs' witness and exhibits and sustained those objections, noting:

> These documents were created and produced well after the discovery deadline of February 5, 2021 established by the District Judge. (Rec. doc. 22976). Moreover, because they can only be admissible at the evidentiary hearing to help establish diminution of value of the Plaintiffs' homes (the sole measure of damages to real property under Alabama law), these documents arguably should have been produced when Plaintiffs completed their Supplemental Plaintiff Profile Forms. *See Leftwich v. Brewster*, 306 So. 2d 26 (Ala. 2020), *Birmingham Coal Coke Co., Inc. v. Johnson*, 10 So. 3d 993, 998 (Ala. 2008), *Poffenbarger v. Merit Energy Co.*, 972 So. 2d 792 (Ala. 2007).

(Rec. doc. 23074).

10

It is worth noting here that at the hearing, Plaintiffs' counsel, pivoting from the individualized Macomber repair estimates, introduced a new argument for the recovery of remediation damages.  Counsel cited the District Judge's aggregate class damages formula from his 2017 FOFCOL, arguing that it provided

> another methodology that Judge Fallon devised and adopted . . . that says use the RSMeans value times the location factor times the under air square footage, and we're going to use that in evaluating the cost of remediation across the board.  That was adopted.  That was utilized throughout the course of the MDL proceedings.  The latest value on it was $119.74 times the location factor times the under air square footage.  That was in place, but that's 2019 numbers.
>
> The only reason that [Macomber's estimate] was created was so that we could get a quantification of the true cost of remediation right now in today's dollars.  So we've already got that.  The Court has adopted the formula and it's been in place.
>
> The only reason that we did anything here was so that the Court could have true up-to-date numbers.

(Rec. doc. 23078 at 7).

For reasons that should be obvious, the Court rejected the argument that the District Judge's <u>aggregate class</u> damages formula should be used to compute the individual damages of two sets of opt-out plaintiffs:

> A formula created by a district judge in a gigantic MDL to calculate damages for thousands and thousands of claims is highly unlikely to be probative when we are having an evidentiary hearing that is specific to two claims where you've actually given me – albeit late-created, but you've given me actual estimates.  There is no need to apply Judge Fallon's formula that was intended to address these thousands of claims when we are only talking about two homes.

(*Id.* at 15).[5]

---

[5] It is worth noting that the aggregate damages formula was <u>never</u> applied to a single plaintiff because a class settlement was reached and approved before it could be.  Plaintiffs' counsel was essentially arguing that he should be allowed to opt out of a settlement and then apply the never-applied class damages formula to recover

Given Plaintiffs' failure to marshal any relevant documentary evidence regarding diminution of value at that time and because the Court was "loath to require Plaintiffs to attempt to prove diminution of value of their homes against a defaulted defendant with no evidence other than their testimony," the Court directed that the parties "make every attempt to agree on an appraiser to conduct an appraisal of the Carter and Gibbs homes to determine their respective fair market values today, with Chinese Drywall still in those homes."  (Rec. doc. 23074) (emphasis added).

Notably, Plaintiffs did not appeal the Court's order regarding the limitations on their evidence and the witness, Macomber.

Once the appraisal ordered by the Court was complete, the Court convened another status conference on March 31, 2021, during which the Court heard the altogether unbelievable news that, at Doyle's insistence, the appraisal was conducted "blindly," that is, the appraiser was not informed of the presence of Chinese Drywall in either the Carter or Gibbs homes.[6]  Astonished that Doyle would insist on such a limitation in defiance of the

---

100% of his clients' damages when none of the class members who settled did so.  It goes without saying that, as a matter of public policy, such a bizarre result would be anathema to a policy favoring class settlements.

[6] The Court describes this revelation as "unbelievable" for good reason.  At the March 31 status conference, the following exchange between the Court and counsel took place:

> THE COURT:  The appraisals – you're telling me that your clients had their properties appraised at some point in the past before Chinese drywall was put into their homes; is that correct?
> MR. DOYLE: That's right.
> THE COURT: That's an appraisal – you know, years ago, albeit.  That's an appraisal of the fair market value of the home without Chinese drywall.
> MR. DOYLE: Right.
> THE COURT: The only thing that matters is what is the appraised value of the house now with Chinese drywall, because that's the condition that they exist in.
> MR. DOYLE: Yes, sir.
> THE COURT: Okay.  We need an appraisal of those homes as they exist today.
> . . . .
> THE COURT:  So we're going to take the alternate approach that I've discussed, and we're going to have the homes appraised as they are.  The appraisers are going to take into consideration whatever it is that they

Court's clear instruction to the contrary, and believing it likely rendered the appraisals useless, the Court ordered the parties to submit briefs explaining how and why the appraisals could be of any value in an evidentiary hearing to determine the diminution of value of Plaintiffs' homes <u>due to the presence of Chinese Drywall</u>.  (Rec. doc. 23083).

Plaintiffs filed their brief on May 5, 2021.  (Rec doc. 23322).  In that brief, Plaintiffs' counsel made numerous questionable arguments and statements, each of which reflected a complete lack of understanding of Alabama law and this Court's rulings.  For instance, despite not having appealed this Court's order finding that diminution of value was the sole measure of recoverable damages available to Plaintiffs, Doyle returned to the argument that the private nuisance claim presented an avenue for recovery of damages other than diminution of value.  (*Id.* at 2).  He then made the following argument:

> The issue this court must now grapple with is how it can assess the <u>remediation damages</u> given its ruling excluding the testimony and reports by Shawn Macomber, the contractor employed by Plaintiffs who utilized the Xactimate computer program and applied Judge Fallon's ruling and specific guidance in Doc. 20741 to arrive at an estimated remediation cost for each property in 2021.  It is particularly noteworthy that <u>Judge Fallon has ruled that all plaintiffs who have Chinese drywall in their homes are entitled to recovery remediation damages</u>.  See Doc. 20741.  The scope and limitations of each estimate by Mr. Macomber were defined by Judge Fallon's ruling this same document.

---

normally take into consideration in appraising a house to determine its fair market value, <u>including the fact that one of them has been unoccupied for a period of time and that they both have Chinese drywall in them</u>, and we're going to see where that gets us. And then we're going to proceed from there. Okay?
MR. DOYLE: (Nods head.)
MS. EIKHOFF: Yes, Your Honor.
(Rec. doc. 23078, at 25, 30)(emphasis added).  The Court expressly advised counsel at the conference – not once but twice – that the new appraisal should take into consideration the presence of Chinese Drywall.  That admonition was then included expressly in the order following the conference.  (Rec. doc. 23074).  Doyle not only ignored these directions, he expressly violated them by insisting on a "blind" appraisal.

(*Id.* at 3) (emphasis added).

To be clear, the Court was not (and is not) "grappling" with how to assess remediation damages, because it has already ruled in an un-appealed order that remediation damages were unrecoverable under Alabama law.   Similarly, the Court has already explained its position that Judge Fallon's aggregate class damages formula was inapplicable to these individual claims.

But that was not the end of the apparent confusion.

Plaintiffs argued that the recent appraisals were probative "because they define the current market value of each property – which is, again, arguably the limit of total recoverable amount for Plaintiffs' private nuisance claims if this court infers that diminution in value is the limit of recovery for private nuisance."   (*Id.*).   This statement reveals a fundamental misunderstanding of Alabama law – the limit of recoverable damages here is not the current <u>market</u> value of the homes – it is the <u>diminution</u> in market value owing to the presence of Chinese Drywall in those homes.

Counsel went on to suggest that "several options" were available to the Court for handling the Rule 55 hearing that the District Judge had ordered to take place no later than April 2021 (a month before Plaintiffs' brief was filed):

> 1) issue a revised scheduling order granting Defendants additional time to retain a remediation cost expert, depose Mr. Macomber regarding his Xactimate estimates, allow Plaintiffs to depose Defendants' expert(s), and allow a revised witness list for the Rule 55 hearing that will allow Mr. Macomber to testify; 2) order Plaintiffs to engage a new appraiser with experience appraising property requiring remediation due to the presence of Chinese drywall to provide a current market valuation with full consideration of the Chinese drywall remediation costs involved; or, 3) proceed to a Rule 55 hearing and take judicial notice of the 2019 remediation cost calculations contained in Doc.

> 22235-1 in addition to Plaintiffs' testimony regarding 2021
> remediation costs expected.

(*Id.* at 5).

Because it was the only acceptable option available at the time, the Court ordered the parties to either (1) re-engage the appraiser to appraise the properties with the understanding that they contained Chinese Drywall or (2) find another appraiser who could do so.[7]

The Court then waited – and waited – for the result of the parties' efforts.  Hearing nothing, the Court scheduled two separate status conferences at which Doyle failed to appear, leading the Court to issue a Rule to Show Cause why he should not be held in contempt for ignoring the Court's orders.  (Rec. doc. 23099).  For reasons not germane to this Report and Recommendation, the Court ultimately declined to sanction Doyle.

Eventually, the parties reported that they were unable to engage an appraiser in Plaintiffs' locale who was willing or able to perform the type of appraisal contemplated by the Court.  Before the Court could act further, Doyle filed an altogether unusual and unexpected "Motion to Take Judicial Notice and Adhere to the Law of the Case Regarding Remediation Damages."  (Rec. doc. 23329).  This motion went all-in on the idea that the sole reference for this Court in determining the scope of damages to Plaintiffs' homes was not Alabama law (as Plaintiffs had previously agreed), but the District Judge's never-used aggregate class damages formula set forth in the FOFCOL in 2017, or what counsel referred to as the "law of the case."  (*Id.*).

---

[7]  The first and third of counsel's suggestions were non-starters because they both involved allowing Plaintiffs to establish the remediation costs of their homes, which the Court had found was not available under Alabama law.

Besides being a procedurally improper attempt to appeal a months-old ruling of this Court that limited the evidence, testimony, and nature of recoverable damages, Plaintiffs' motion was incorrectly premised on the idea that "this proceeding is a continuation of the District Court's 2015 Rule 55(b) damages hearing." (*Id.*). This is simply not the case, which may explain why counsel failed to cite anything in the lengthy record of this case to support that idea.

Taishan filed its opposition memorandum, lamenting the fact that it was being repeatedly required to re-litigate already-decided and un-appealed issues in advance of the evidentiary hearing. (Rec. doc. 23330).

The Court held yet another status conference/hearing regarding Plaintiffs' "Motion" and the status of scheduling the evidentiary hearing. (Rec. doc. 23225). It directed the parties, for the second time, to submit witness and exhibit lists and expressly stated:

> This Court will not entertain evidence of estimated repair costs of the property at the evidentiary hearing. Any expert on estimated repair costs shall be excluded. The Court will accept only evidence pertaining to any diminution of value of the property. The Court will consider the appraisals already submitted, but said appraisals must be submitted to the Court as exhibits at the evidentiary hearing. The Court will also accept the testimony of Plaintiffs themselves.

(*Id.*).

Notably, and to the chagrin of Taishan, the Court gave the parties the opportunity to object to these limitations by submitting a brief on Alabama law that supported their position. The Court took this step to give Plaintiffs a final opportunity to salvage whatever opportunity they may have had to prove their recoverable damages under Alabama law, given that they and their counsel had stubbornly refused to take heed of the Court's prior rulings and direction regarding the conduct of a new appraisal and were careening toward

16

an evidentiary hearing with precious little admissible evidence to support their claims. Predictably, Plaintiffs objected to the Court's limitations on evidence and testimony, abandoning their "law of the case" argument and rehashing their previous mistaken argument about the scope of recoverable damages under Alabama law.  (Rec. doc. 23232-1).

Plaintiffs' argument boiled down to this: "Under Alabama law, a product incorporated into a home during construction only becomes "property" if removal will affect the "structural integrity" of the home; otherwise, it retains its classification as a product," meaning that the AEMLD applied to Plaintiffs' claims – an argument that had been previously made and rejected by this Court.  (*Id.* at 2).  For this proposition, Plaintiffs cited the decision of the Alabama Supreme Court in *Keck v. Dryvit Systems, Inc.*, 830 So. 2d 1, 6 (Ala. 2002).

In response, Taishan correctly pointed out that the *Keck* decision, far from supporting Plaintiffs' argument, actually undermined it.  (Rec. doc. 23324).[8]  The Court will discuss this decision below.

The Court directed the parties to prepare to move forward with an evidentiary hearing on March 15, 2022, subject to the limitations it had previously ordered.  (Rec. doc. 23280).  This order was never appealed, making it the second such un-appealed order.

The Court thereafter ordered that the parties submit their respective witness and exhibit lists, objections to their opponents' lists, and pre-hearing briefs.  (Rec. doc. 23289). The parties complied with this order, each submitting witness and exhibit lists and pre-hearing briefs.  (Rec. docs. 23299, 23300).  After reviewing the parties' witness and exhibit lists, their respective pre-hearing briefs, and the Alabama law applicable to Plaintiffs' claims,

---

[8]  This argument was, of course, in addition to Taishan's argument that Plaintiffs should be estopped from continuing to make the same rejected arguments on the one hand and changing their arguments to address adverse rulings on the other.  (*Id.*).

the Court held a telephone status conference, during which it explained that two of Plaintiff's "repair estimate" documents could be used at the upcoming hearing pursuant to Alabama law on proof of diminution in value of real property. (Rec. doc. 23294). Additionally, because Plaintiffs themselves were going to testify, and it was evident from Plaintiffs' filings that they had at some point received repair estimates from Macomber, the Court ruled, pursuant to Alabama precedent, that Macomber could testify as a fact witness about his alleged work for and communications with Plaintiffs about the costs to repair their homes.

A minute entry to this effect was issued the same day. (Rec. doc. 23295). That minute entry set forth the basis for the Court's decision to allow the two repair documents and Macomber's fact testimony:

> [W]hile "the appropriate measure of direct, compensatory damages to real property generally is the diminution in the value of that property, even when the cost to remediate the property exceeds the diminution in the value thereof," *Poffenbarger v. Merit Energy Co.*, 972 So. 2d 792, 800-01 (Ala. 2007), it is also true that "evidence of repair costs remains <u>admissible</u> to show diminution in value for injury to real estate, but diminution in value remains the measure of damages even when remediation costs exceed that diminution in value." *Kerns v. Pro-Foam of South Ala., Inc.*, 572, F. Supp. 2d 1303, 1307 (S.D. Ala. 2007).

(*Id.*).

Two days before the March 23, 2022 evidentiary hearing was to begin, Plaintiffs filed yet another unexpected pleading entitled "Motion to Clarify Damages Recoverable By Plaintiffs Under Alabama Law." (Rec. doc. 23296). This eleventh-hour "motion" was, upon review, yet another effort to attack the prior un-appealed rulings of this Court regarding the scope of Plaintiffs' recoverable damages under Alabama law, to wit:

> Plaintiffs have maintained since the outset of this process that Alabama law allows for the recovery of all incidental and

18

consequential damages caused by Defendants' defective product because Alabama views defective drywall as a product under the Alabama Extended Manufacturer Liability Doctrine (AEMLD) which controls in actions involving defective products, rather than the law of property fixtures.

(Rec. doc. 23296-1).

This motion, Plaintiffs' fourth or fifth bite at the same apple, was referred to the undersigned by the District Judge the day before the evidentiary hearing. (Rec. doc. 23297). It remains pending here and will be addressed below.

The evidentiary hearing went forward on March 23, 2022.

C.   The Evidentiary Hearing

At the evidentiary hearing, Plaintiff, John Andrew Carter, testified for the Carters; Plaintiff, Darla Gibbs, testified for the Gibbs; and Shawn Macomber testified (on a very limited basis) as a fact witness.[9]

The following summaries of these witness's testimony are reproduced verbatim from Plaintiffs' post-hearing brief (rec. doc. 23309):

**1. John Andrew Carter**

Plaintiff John Andrew Carter testified: 1) that he owns the property located [at] 703 Waverly Place, Opelika, Alabama 36804; 2) that the property has contained the Taishan drywall in it since he took possession of the property on or about July 1, 2007; 3) that the Taishan drywall has emitted noxious and corrosive gasses; 4) that he discovered the identifying markings

---

[9]  At the hearing, Taishan stipulated that the product found in both the Carter and Gibbs properties was indeed a Taishan product.

on the defective Taishan drywall on November 12, 2011; 5) that
the property has remained vacant since shortly after discovery
in 2011 through to the date of this hearing; 6) that the damages
itemized on his Supplemental Plaintiff Profile Form "Itemization
of Damages or Repair to  Home" and "Itemization of Damaged
Personal Property" are accurate and that the cost of the items
was confirmed by utilizing the pricing found on the internet
utilizing the Lowe's and other company websites; 7) that the air
conditioning receipt is an accurate reflection of the cost of repair
to the HVAC system; 8) that a comparable rental home in the
Auburn/Opelika area now rents for $2,400.00 per month; 9)
that he is aware that Molly McLeod Wilson appraised the home
value to be $160,000.00 on April 20, 2021; 10) that in his
opinion the value of the property has appreciated since the date
of appraisal in 2021; 11) that the cost of remediation projected
by Ronald E. Wright, P.E., in the amount of $114,408.00, which
was previously submitted to Judge Fallon in Record Document
22235-1 (at Page 24 of 142) is insufficient to fully repair the
home in 2022; 10) that Shawn Macomber projected the cost of
remediation to be approximately  $145,000.00 on February 23,
2021.

(*Id.*).

### 2.    Darla Gibbs

Plaintiff Darla Gibbs testified: 1) that she owns the property located [at] 701 Waverly Place, Opelika, Alabama 36804; 2) that the property has contained the Taishan drywall in it since she and her husband took possession of the property on or about June 1, 2007; 3) that the Taishan drywall has emitted noxious and corrosive gasses; 4) that she and her husband discovered the identifying markings on the defective Taishan drywall on November 17, 2011; 5) that she and her family have remained in the property since the discovery in 2011 despite the presence of the off-gassing because they cannot afford to live elsewhere and pay two monthly mortgage notes; 6) that the damages itemized on her Supplemental Plaintiff Profile Form "Itemization of Damages or Repair to Home" and "Itemization of Damaged Personal Property" are accurate and that the cost of the items was confirmed by utilizing cancelled checks, receipts from Energy Savers of Georgia, a Sears monthly account statement, as well as the pricing found on the internet utilizing the Lowe's and other company websites; 7) that the air conditioning receipt is an accurate reflection of the cost of repair to the HVAC system; 8) that her search of local rental homes demonstrated a comparable rental home in the Auburn/Opelika area now rents

for $1,700.00 per month; 9) that she is aware that Molly McLeod Wilson appraised the home value to be $185,000.00 on April 19, 2021; 10) that in her opinion the value of the property has appreciated since the date of appraisal in 2021; 11) that the cost of remediation projected by Ronald E. Wright, P.E., in the amount of $119,630.00, which was previously submitted to Judge Fallon in Record Document 22235-1 (at Page 24 of 142) is insufficient to fully repair the home in 2022; and 12) that Shawn Macomber projected the cost of remediation to be approximately $176,000.00 on February 23, 2021.

(*Id.*).

### 3. Shawn Macomber

Mr. Macomber testified to the following: 1) that he personally visited the affected homes owned by [] John Andrew Carter and [] Gene and Darla Gibbs; 2) that he utilized the Xactimate computer program to project the cost of remediation for both homes; 3) that he utilized Record Document 20741 issued by Judge Fallon to identify the proper remediation protocol adopted by the district court; 4) that he did not deviate from the remediation protocol contained in Record Document 20741 when projecting the cost of remediation for Plaintiffs; 5) that the cost of remediation of the Carter property on February

23, 2021, was $145,159.34; and 6) that the cost of remediation

of the Gibbs property on February 23, 2021, was $176,123.41.

(*Id.*).

In addition to the testimony summarized above, Mr. Carter testified that he believed

he was in possession of at least one prior appraisal and perhaps even two of them – a 2006-

07 appraisal and another appraisal done when he refinanced the home.  (Rec. doc. 23318 at

66-68).  Additionally, Macomber testified (on questioning from the Court) that he may have

emailed his final estimates directly to the Carters and the Gibbs but that he could not

remember.  (*Id.* at 114-16).

Taishan did not call any witnesses.

The following exhibits were accepted into evidence:

IN RE: CHINESE-MANUFACTURED
DRYWALL PRODUCTS LIABILITY
LITIGATION

**EXHIBIT LIST**

Case Number:  09-md-2047 L(5)

| PRESIDING JUDGE | | | PLAINTIFF'S ATTORNEY | DEFENDANT'S ATTORNEY | |
|---|---|---|---|---|---|
| Magistrate Judge Michael B. North | | | James Doyle | Christina Eikhoff, Matt Lawson, and Harry Rosenberg | |
| EVIDENTIARY HEARING DATE | | | COURT REPORTER | COURTROOM DEPUTY | |
| 3/23/2022 | | | Jodi Simcox | Jennifer Schouest | |
| PLF. NO. | DEF. NO. | DATE OFFERED | MARKED | ADMITTED | DESCRIPTION OF EXHIBITS |
| 1 | | 3/23/2022 | X | X | Warranty Deed Dated 12/2/2006 and Recorded on 1/2/2007 for John & Jill Carter |
| 2 | | 3/23/2022 | X | X | Plaintiff Profile Form for John Carter |
| 3 | | 3/23/2022 | X | X | Taishan's Statement on Product ID and Attribution with photograph |
| 4 | | 3/23/2022 | X | X | Appraisal on Carter Home dated 4/11/2021 |
| 6 | | 3/23/2022 | X | X | Warranty Deed dated 6/1/2007 for Gene and Darla Gibbs |
| 7 | | 3/23/2022 | X | X | Plaintiff Profile Form for Gene & Darla Gibbs |
| 8 | | 3/23/2022 | X | X | Appraisal on Gibbs Property as of 4/11/2021 |
| | 1 | 3/23/2022 | X | X | Supplemental Plaintiff Profile Form for John Carter |
| | 2 | 3/23/2022 | X | X | HUD Settlement Statement dated 12/12/2007 for John Carter |
| | 3 | 3/23/2022 | X | X | Supplemental Plaintiff Profile Form for Darla and Gene Gibbs |
| | 4 | 3/23/2022 | X | X | Appraisal of Gibbs Property as of 5/18/2007 |

D.   Post-hearing Briefing

At the conclusion of the hearing, the Court issued a minute entry reflecting its orders for additional briefing and the production of additional documents, if they existed. (Rec. doc. 23302). The Court ordered post-trial briefs to be filed by the parties and, concerning the potential production of documents, directed as follows:

> IT IS ORDERED that Plaintiff Andy Carter produce to the Court and to Defendants no later than fourteen (14) days from the date of this Minute Entry a copy of the original 2006/2007 appraisal of the residence at issue and the appraisal when he refinanced the residence should he locate them. Counsel for Plaintiffs shall email the appraisals to Defendants and also to the Court at eFile-North@laed.uscourts.gov or shall notify Defendants and the Court should Carter be unable to locate the appraisals.
> IT IS FURTHER ORDERED that Shawn Macomber produce to the Court and to Defendants no later than fourteen (14) days from the date of this Minute Entry any evidence of direct communications with Plaintiffs regarding the estimated repair costs to their homes due to the presence of Chinese drywall. Counsel for Plaintiffs shall email the communications to Defendants and also to the Court at eFile-North@laed.uscourts.gov or shall notify Defendants and the Court should Macomber be unable to locate any communications.

(*Id.*).

The parties timely filed their post-trial briefs, and Doyle informed the Court that (1) Mr. Carter was unable to locate any additional appraisals of his home and (2) Macomber was unable to locate any record of his sending his estimates directly to the Carters and Gibbs. (Rec. doc. 23310-1).

Plaintiffs' post-hearing brief was short, comprised mostly of the summarized testimony block-quoted above. Beside that, the brief consisted entirely of these two

arguments:  First, after incorrectly referring to the hearing as "the Second Phase Rule 55(b)

Hearing," Plaintiffs, citing no authority,

> re-assert[ed] their objection to [the] proceeding to the extent
> that it limits damages recoverable by Plaintiffs to diminution in
> value of the property under Alabama law.  Plaintiffs maintain
> that all incidental and consequential damages are recoverable,
> including loss of use/enjoyment, personal property damage,
> home repair damage, prejudgment interest, and attorneys' fees
> and expenses as defective Chinese drywall would be considered
> a product and this assessment of damages should be governed
> by the AEMLD, breach of warranty, Alabama nuisance law, not
> limited to diminution in value.

(Rec. doc. 23309 at 1-2).  Then, after summarizing the testimony presented at the hearing,

Plaintiff made the following argument under a heading entitled, "<u>Diminution in Value – Cost

of Repair Less than Appraised Value – Alabama</u>":

> It is true that where the cost of repair to damaged property
> exceeds the <u>appraised value</u>, a plaintiff cannot recover repair
> costs in excess of the <u>appraised value</u> of the property; however,
> where the cost of repair is less than the <u>appraised value</u> of the
> property, a plaintiff can recover the cost of repair under
> Alabama law.
> . . . .
>      Therefore, based on this *Birmingham Coal* case, which
> continues to control without any negative history to date, that a
> plaintiff may recover repair damages to his/her home so long as
> the cost of repair does not exceed the <u>appraised value</u> of the
> property.  In this instance, the cost of repair projected by Mr.
> Macomber for both properties does not exceed the 2021
> appraised value of the property memorialized by Mrs. Molly
> McLeod Wilson in her two appraisals now in the record of this
> court.

(*Id.* at 5-6).  Based on this (extremely wrong) legal argument, Plaintiffs go on to posit that the

Carters should recover the "full repair damages projected by Mr. Macomber" in the amount

of $145,159.34 and the Gibbs should recover the "full repair cost projected by Mr.

Macomber" in the amount of $176,123.41.  (*Id.* at 6).

That is the sum and substance of Plaintiffs' post-trial brief.

### 4.  Analysis

Before discussing the evidence and testimony presented at the hearing, it is necessary to revisit the applicable Alabama law on recoverable damages to real property, as well as Plaintiffs' various arguments as to why that law is inapplicable to their claims.

As early as March 31, 2021, this Court made clear its finding that the sole measure of damages in these cases under Alabama law was the diminution of value of Plaintiffs' homes. (Rec. doc. 23074).  This finding was made after briefing by the parties and was based on the holdings of the Alabama Supreme Court in the *Poffenbarger, Birmingham Coal,* and *Leftwich* cases cited above.  (*Id.*).  It was also not appealed.

In the year following this order (and beyond), Plaintiffs have attempted through various means to convince the Court that numerous other categories of damages were recoverable, either by operation of law or by application of the "law of the case" doctrine. The Court will address these arguments here separately.

### A.  The "AEMLD" Argument

In an early pre-hearing brief aimed at discussing the law applicable to this case, Plaintiffs, through counsel, made a passing reference to the AEMLD, arguing that, because the damage to Plaintiffs' homes was caused by a defective product, *i.e.*, Chinese Drywall, the AEMLD provided for recovery of nine different categories of damages.  (Rec. doc. 23335). Beyond this conclusory argument, the applicability of the AEMLD to drywall generally or to Plaintiffs' claims specifically was not addressed, nor were the notable decisions of the Alabama Supreme Court in *Poffenbarger, Birmingham Coal* and *Leftwich.*  (*Id.*).

However, at the March 31, 2021 hearing Plaintiffs' counsel Doyle argued primarily that the defaulted private nuisance/trespass claim opened the door for other categories of damages.  (Rec. doc. 23078).  Notably, the AEMLD was not mentioned once by Doyle.  (*Id.*).

In the brief that he filed on behalf of Plaintiffs addressing the probative value of the "blind" appraisals he had insisted upon, Doyle again failed to mention the AEMLD at all at that time.  (Rec. doc. 23322).

It wasn't until more than six months later that Doyle resurrected the AEMLD argument, in his "Objection to Damages Limited to Diminution in Value and Memorandum of Alabama Law Applicable to Second Phase Rule 55(b) Damages Hearing."  (Rec. doc. 23323).[10] In that brief, Doyle cited the Alabama Supreme Court's 2002 decision in *Keck v. Dryvit Systems, Inc.*, 830 So. 2d 1 (Ala. 2002), as support for his argument that, because drywall is not a <u>structural</u> component of a house, it may be considered a "product" for purposes of the AEMLD, which would allow Plaintiffs to recover many otherwise prohibited categories of damages.  (rec. doc. 23323).  However, as correctly observed by Taishan in its Response to Plaintiffs' Objection, the *Keck* decision very clearly undermines Plaintiffs' argument in this regard; in fact, the *Keck* decision is actually fatal to that argument.

The *Keck* court was called upon to determine whether an exterior insulation finishing system ("EIFS") installed on the outside of a home should be considered a "product" under the AEMLD.  *Id.* at 6.  The EIFS was a <u>Styrofoam insulation</u> board glued to the exterior wooden substrate – a kind of glued-on stucco material.  *Id.*  The key language was block-quoted by Plaintiffs (and Taishan in response) and is worthy of examination here:

---

[10]  Aside from the misguided interpretation of the AEMLD and Alabama law in this brief, which is discussed below, the Court points out here that Doyle's "Objection" was premised on an argument that he never advanced in his original briefing.

The owner of a house or of any building should reasonably expect that many components will have the same useful life as the house or building itself and will not need to be replaced over the life of the building.  Such components include, by way of example, an exterior brick wall, a staircase, or a fireplace.  There are also certain components of a house or a building the purchaser reasonably expects to wear out and to require replacement in the course of normal and ordinary usage, such as roof shingles, a dishwasher, a furnace, or a hot-water heater.  Whether an item that is incorporated into real property may be considered a "product" for purposes of the AEMLD is determined by whether the item is a part of the structural integrity of the house or building that is reasonably expected to last for the useful life of the house or building.  If it is, then the item cannot be considered a "product" for purposes of the AEMLD.  However, if the item is attached or incorporated into real property and, yet its very function and nature clearly makes it an item that one would reasonably expect to repair or to replace during the useful life of the realty, the item may be considered a "product" for purposes of the AEMLD.

*Id.*  Plaintiffs' counsel placed all his emphasis on the verbiage "part of the structural integrity of the house or building" to argue that, because sheetrock is not a "load-bearing" component, it must be a "product" covered by the AEMLD.  But this conclusion ignores both the remaining language of the case, including the above-quoted language, and, more importantly, the actual result in the *Keck* case.

The central feature of the *Keck* court's analysis was not whether the product in question was "load bearing," but whether it would be "reasonably expected to last for the useful life of the house or building."  *Id.*  Indeed, the last sentence quoted by Plaintiffs makes this abundantly clear:  "if the item is attached or incorporated into real property and, yet its very function and nature clearly makes it an item that <u>one would reasonably expect to repair or to replace during the useful life of the realty</u>, the item may be considered a 'product' for purposes of the AEMLD."  *Id.*

The Court's conclusion is reinforced by the result in the case, the *Keck* court found

that the EIFS could not be considered a "product" under the AEMLD, reasoning that

> [t]he EIFS is a multilayered exterior wall system that actually
> composes the exterior walls of a building. Once applied, the
> EIFS becomes a part of the structural integrity of the building
> and actually is the exterior wall of the building. By virtue of the
> very function of the EIFS as an exterior wall system, the EIFS
> could not be a structural component of a building that one might
> expect to replace after normal wear and tear. A stucco exterior
> wall is the equivalent of a brick wall; it is a part of the structural
> integrity of a house – a homeowner expects it to be weather
> resistant and to endure for the entire useful life of the house.
> Therefore, the EIFS cannot be considered a product for
> purposes of the AEMLD.

*Id.* at 7.   In other words, the Styrofoam insulation at issue was, in fact, a "structural

component" outside the reach of the AEMLD because (1) it was incorporated into the

exterior wall and (2) it was expected to endure for the entire useful life of the house. *Id.* This

is what the Court meant when it used the term "structural integrity." It did not mean "load-

bearing," as counsel for Plaintiffs insists.

And so it must be with sheetrock or drywall, which is attached to the interior walls of

a home, thereby becoming incorporated into those walls. And it cannot be seriously argued

by anyone that sheetrock or drywall is a product that a homeowner would "expect to repair

or replace during the useful life of the realty." *Id.* at 6.

For these reasons, Plaintiffs' argument that the AEMLD governs these claims

involving defective drywall fails.

### B.   The "Law of the Case" Argument

Plaintiffs' additional argument that the District Judge's FOFCOL, rather than Alabama

law, governs the scope and computation of damages in these opt-out cases is similarly

misguided. As he has alternated between various arguments, Plaintiffs' counsel has at times

argued on behalf of his clients that the aggregate class formula approved by the District Judge while this case was still an active class action should control the scope and computation of damages in these two individual opt-out cases.  This Court finds that argument unavailing for the following reasons.

The District Judge presided over a lengthy and exhaustive litigation concerning the class damages associated with the many claims on which Taishan had defaulted.   A comprehensive history of those proceedings is set forth in the District Judge's FOFCOL dated April 21, 2017.  (Rec. doc. 20741).

Here are some notable findings from the FOFCOL:

- This Court has (1) already found the Taishan Defendants in default pursuant to Fed. R. Civ. P. 55(a) and (2) already determined in its Class Certification FOFCOL that the Defendants' liability has been conceded by their default. . . . Thus, the only issue before the Court is the amount of damages which should be awarded to the Class for property remediation.

- While the default judgment conclusively establishes liability, it is not conclusive of the <u>class</u> damages for remediation costs which Plaintiffs seek.  Liability and damages require separate and equally "rigorous analysis." *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1433 (2013).   The June 9, 2015, damages hearing provided the opportunity for the Court to engage in such rigorous analysis and determine that, given the uniqueness of the instant action, the Plaintiffs have presented a reasonable and <u>reliable method</u> of

calculating remediation damages <u>on a class-wide basis</u> and have accommodated individual class damage issues by shifting the individual damage components to subsequent adjudicative phases.

(*Id. at* 30, 32) (emphasis added).

The purpose of the FOFCOL was to declare whether the Plaintiff class's <u>aggregate</u> damages proposal was appropriate in this unique case.  The District Judge found that it was. (*Id.*).  But that proposal – and the Court's adoption of the formula – was very clearly intended to solve a <u>class-wide</u> problem, as is evident by these statements in the FOFCOL:

- Aggregate Damages are Superior to an Individualized Alternative.

- The Fifth Circuit has explained that a formula-based calculation of class damages is appropriate in circumstances where individual trials are not required, particularly when the damages portion of the suit can be severed from the liability inquiry.

- Under the circumstances of this case and given the *sui generis* nature of Chinese Drywall, the Plaintiffs' proposal to calculate remediation damages is not "clearly inadequate," and a formulaic approach is <u>superior to the thousands of individual proceedings</u> that would result if Defendants' proposal for property by property inspection and estimation were accepted.  The costly and wasteful <u>individualized mini-trials</u> that would result from Defendants' proposal would further burden the Taishan property owners and further delay the benefits they can hope to receive from this litigation.  (*Id.* at 43, 44, 47) (emphasis added).

Following the issuance of the FOFCOL, a class-wide settlement was reached and submitted to the District Judge for approval. (Rec. doc. 22397). The District Judge approved the settlement on January 10, 2020, recognizing the fairness of the proposed settlement, observing, in part:

> What Class Members are missing in terms of dollars they make up for by guaranteed recovery and an end to a decade of litigation. The fact that Class Members wish Taishan was willing to pay more to settle these claims does not warrant unraveling the entire Agreement. The objectors who are unhappy with the amount of their estimated allocation <u>had the right to opt-out of the Settlement and pursue their claims against Taishan in court. In not opting out, these objectors apparently recognize the inherent difficulties and uncertainties associated with pursuing this option</u>, and their actions suggest that final approval of the Settlement is warranted.

(Rec. doc. 22460 at 47) (emphasis added). Plaintiffs have (occasionally) taken the position that this Court's determination of Plaintiffs' damages is controlled, not by Alabama law, but by the formula set forth in the FOFCOL. There are many reasons the undersigned cannot agree with this proposition.

First, there is the simple conclusion that the District Judge referred these two cases to the undersigned for an <u>evidentiary</u> hearing. If the District Judge was of a mind that a simple input of the present Plaintiffs' data into the FOFCOL formula was all that was required to assess these opt-out Plaintiffs' damages, a reference to this Court would not have been necessary.

Second, the language quoted above from the District Judge's FOFCOL makes it clear that the "formula" he approved was intended to solve a class-wide problem – in a case with well over 1,000 claimants.

Third (and related to the first and second reasons), the parties have agreed that Alabama law applies to both the Carters' and the Gibbs' claims.  We cannot simultaneously apply Alabama law and the District Judge's formula, which addresses claims on a nationwide basis, – it just does not work.

Simply put, Plaintiffs' argument that this Court's determination of damages – after an evidentiary hearing was ordered by the District Judge – could or should be governed by a mere formula is unconvincing in the extreme.  The Court has no choice but to reject that argument.

It is clear to the undersigned that the District Judge's aggregate formula cannot be substituted for an evidence-based determination of these two Plaintiffs' damages.  Consider the impact of allowing that option to prevail – two plaintiffs in an MDL involving thousands of homes could opt out of a class-wide settlement in which every plaintiff received less than they would have if that formula had been applied to their cases, only to demand in their individual cases that the formula be applied to their claims.  Such a result, aside from being contrary to law, is contrary to common sense and public policy.

It is for these reasons that this Court rejected these arguments and made it clear – and continues to make it clear – that the Court's original determination concerning the proper measure of damages stands.

C.   Application of the Law to the Evidence

The evidence and testimony adduced at the hearing (and summarized above) was simply too sparse to establish Plaintiffs' damages under Alabama law.  Given that diminution in the value of Plaintiffs' homes due to the presence of Chinese Drywall is the sole measure of damages allowable, to recover at all, Plaintiffs bore the burden of establishing through

competent evidence and/or testimony (1) the fair market value of their homes before Chinese Drywall was known to be present and (2) the fair market value of those homes after Chinese Drywall was known to be present.  Without both numbers, it is impossible for the Court to determine the diminution in fair market value of the two homes.

This notion is confirmed by the Alabama Pattern Jury instruction on damages to real property:

> The measure of damage for (injury)(damage) to real property is the difference in the reasonable market value of the land immediately before its (injury)(damage) and the reasonable market value immediately after the (injury)(damage).

Alabama Pattern Jury Instructions - Civil (2nd ed.), § 11.26.  In its post-hearing brief, Taishan summarized this burden with the following chart:

---

**Value B** (reasonable market value **B**efore) **—** **Value A** (reasonable market value **A**fter)

=

**Value D (Diminution/Damages)**

---

Notably, the values for **B** and **A** under Alabama law must be <u>reasonable</u> – an objective standard.  In Alabama, "'[m]arket value' is defined as the price at which a willing seller would sell and a willing buyer would buy, neither being compelled to sell or to buy."  J. Marsh and C. Gamble, *Alabama Law of Damages* (5th ed. 2004), at § 33:1; *see also Crump v. Geer Bros., Inc.*, 336 So.2d 1091, 1096-97 (Ala. 1976).  Accordingly, to compute the Value B minus Value A equation to get to damages (Value D), the Plaintiffs must demonstrate through evidence and/or testimony the objective market values for their two homes at those two distinct points in time (before and after the damage).

34

This they failed to do, despite this Court giving them numerous opportunities to do so.

Notably, even were the Court to fully credit Plaintiffs' testimony concerning the value of their respective homes when they were built versus now, that testimony, along with the 2021 appraisals of those homes, would establish an increase in value, not a diminution.

When asked about the original home value, Carter (who built the home himself) testified, "I don't remember exactly what it was," but based on other homes he constructed and sold in the neighborhood, he speculated that "it was right around that [$]150,000 mark." (Rec. doc. 23318 at 66).  A December 12, 2007 HUD Settlement Statement introduced by Defendants shows a transaction cost of $101,934.38, which appears to reflect the remaining amount of Carter's construction loan at the time that Carter purchased the house from his company.  (Rec. doc. 23300-11).  And the 2021 appraisal – the only evidence available to even suggest a present fair market value of Plaintiffs' homes – valued the Carter home at $160,000, which is an increase in value over time, whether the $150,000 or $101,934.38 "before-damages" figure is used.  (Rec. doc. 23300-10).[11]

In contrast to the Carters, the Gibbs were actually able to produce a "before-damages" appraisal from 2007, valuing the home at $168,000 in May of that year.  The 2021 appraisal – again the only evidence presented of present value – placed the value of the Gibbs home at $185,000, a substantial increase in value from 2007.  (Rec. doc. 23300-9).

In short, the evidence and testimony presented at the evidentiary hearing establishes no diminution in the value of either home.

---

[11] Mr. Carter actually testified that he believed the $150,000 figure should be 10 percent higher.  (Rec. doc. 23318 at 37).

It was Plaintiffs' burden to present competent evidence of the diminution in value in their homes at the evidentiary hearing, and they failed to carry that burden. The resulting finding by this Court that they have established no recoverable damages seems both counter-intuitive and unjust. But the Alabama law the Court is duty-bound to apply here is a harsh taskmaster, requiring the marshaling and presentation of a type of evidence that Plaintiffs simply refused to marshal or present.

Plaintiffs and their homes are located in Alabama and their lawyer is an Alabama lawyer. They are charged with knowledge of their own home state's law. Since making the decision to opt out of the class settlement, they have had more than ample time and opportunity to determine an "after-damage" fair market value of their homes – they simply failed to take advantage of those opportunities, even those provided by this Court long after the deadlines for expert disclosures and discovery had lapsed.

After opting out of the global class settlement and agreeing to a Case Management Order, Plaintiffs had months to obtain a professional appraisal to provide a fair market value of their properties taking into account the presence of Chinese Drywall, but they did not do so. Then, when this Court gave Plaintiffs a second, post-discovery opportunity to obtain an appraisal of the Carters' and Gibbs' homes to determine their respective fair market values today, with Chinese Drywall still in those homes, (rec. doc. 23093), they not only refused to take advantage of that opportunity, their counsel actually defied the Court's direction, insisting on a "blind" appraisal ignoring the presence of Chinese Drywall in the homes.[12]

---

[12]  The Court also notes that, prior to the class settlement, both the Carters and Gibbs issued Supplemental Plaintiff Profile Forms indicating that they were claiming <u>no damages</u> for diminution in value to their properties. (Rec. docs. 23300-3 and 23300-4). At no point during these proceedings did Plaintiffs or their counsel make any effort to address this anomaly.

These circumstances and Plaintiffs' failure to present competent evidence at the hearing places them in the very same position as the plaintiffs in *Bella Investments, Inc. v. Multi Family Services, Inc.*, 148 So. 3d 716 (Ala. Civ. App. 2013).  That closely analogous case establishes a precedent for entering judgment against a plaintiff when that plaintiff fails to develop and present evidence of diminution of property value – and specifically when the plaintiff seeks to substitute cost of repair evidence with the hopes of "allow[ing] the jury to infer the market value of the [property] both before and after the damage."  *Id.* at 721.

In *Bella Investments*, just as in this case, the plaintiffs ignored opportunities to develop appropriate and sufficient expert valuation evidence that would establish the before and after values of the property at issue.  *Id.*  The *Bella* plaintiffs also pointed to some of the same cases that Plaintiffs here consistently relied upon.  And, just as in this case, the *Bella* plaintiffs continued to maintain that their remediation evidence was enough to support their damages claim.  *Id.*  In the end, the Alabama appellate court in *Bella* affirmed the trial court's entry of judgment as a matter of law in favor of the defendant – not because the plaintiffs had failed to prove liability, but because they had failed to prove their recoverable damages.  *Id.* at 724. The appellate court called the plaintiffs' reliance on repair damages "misguided," and held:

> [A]lthough repair costs is a factor to consider in determining the after-damage fair market value of real property, we cannot conclude that the evidence presented was sufficient to provide the jury with a reasonable basis upon which it could determine the before and after values of the [property] so as to assess the appropriate amount of damages under Alabama law.

*Id.* (internal citation omitted).  This is exactly where the Court finds itself here.  Plaintiffs have not provided sufficient evidence for the Court to form a reasonable basis on which an award for diminution in value can be computed.

Unfortunately, the Carters and the Gibbs find themselves in the same predicament as the *Bella* plaintiffs, but it a predicament of their and their counsel's own creation. Aside from their stubborn refusal throughout these proceedings to heed the Court's rulings and fashion their evidence to the appropriate Alabama law, counsel repeatedly misstated that law in seeking to convince this Court to apply a non-existent standard to his clients' claims.

In his closing argument during the evidentiary hearing, for instance, Doyle misstated the applicable law on recoverable damages for injury to real property:

> In the case of Gibbs, the appraised value was $180,000, if I'm not mistaken. The cost of remediation that Mr. Macomber provided was less than that. The same thing with regard to the Carters. <u>The appraised value of their property without Chinese drywall exceeds the cost of the remediation</u>. So, therefore, the diminution in value based on those calculations can be entered in their favor with respect to that.

(Rec. doc. 23318 at 121)(emphasis added). What counsel did here was substitute "fair market value" for "<u>diminution</u> in fair market value" as the limit on recoverable damages so that he could argue, in essence, "if the cost to repair does not exceed the fair market value (as opposed to the diminution in that value) then my clients can recover the full cost to repair." That is simply not the law in Alabama.

Then, in his post-hearing brief, counsel doubled down on this misstatement of the law, arguing

- "where the cost of repair is less than the <u>appraised value</u> of the property, a plaintiff can recover the cost of repair under Alabama law" and

- "based on this *Birmingham Coal* case. . . a plaintiff may recover repair damages to his/her home so long as the cost of repair does not exceed the <u>appraised value</u> of the property."

38

(Rec. doc. 23309 at 5-6).  These are gross misstatements of Alabama law.  Whether made intentionally or through a failure to grasp the law, the arguments are wholly unconvincing, unavailing, and simply wrong.

One final note.  Early in the proceedings, Plaintiffs had suggested they may be able to recover damages for mental anguish or emotional distress.  In cases such as this involving damages to real property, such damages may, in fact, be recoverable, but the burden of proof is steep indeed.  The Alabama Supreme Court in *Birmingham Coal* held that "damages for mental anguish and emotional distress are proper only in tort cases in which the plaintiff is in the 'zone of danger' or has suffered a physical injury or the defendant's action constitutes wantonness or trespass under circumstances of insult or contumely. . . ."  10 So. 3d at 999.

In this case, Plaintiffs presented no evidence to support mental anguish claims.  This may be either (1) because there was none or (2) counsel was laboring under the seriously mistaken impression that the Court would "take that issue up" at a second proceeding "in the near future."  (Rec. doc. 23318 at 121).[13]  Because there was no evidence presented, and because this Court has no intention of taking up <u>any</u> additional issues in this case, it cannot recommend any award for mental anguish.

D.  <u>The Motion to Clarify</u>

Plaintiffs' eleventh-hour "Motion to Clarify Damages Recoverable By Plaintiffs Under Alabama Law" was referred by the District Judge to the undersigned.  That motion, filed two days before the evidentiary hearing, is no more than a disguised out-of-time appeal of this Court's previous rulings finding that Plaintiffs' recoverable damages were limited under Alabama law to the diminution in the fair market value of their homes.

---

[13]  This is what counsel suggested to the Court in his closing argument.

For all the reasons discussed in detail above concerning the Court's application of Alabama law in this case, that motion is hereby denied.

III.    **Conclusion**

For the foregoing reasons,

**IT IS ORDERED** that the Motion to Clarify Damages Recoverable by Plaintiffs Under Alabama Law (Rec. doc. 23296) is **DENIED**.

**FURTHER, IT IS RECOMMENDED** that, having failed to meet their burden to prove their damages under Alabama law at the evidentiary hearing, Plaintiffs be awarded no damages and that the Court finds in favor of Defendant, Taishan Gypsum, on the issue of Plaintiffs' damages recoverable under Alabama law.

New Orleans, Louisiana, this  28th  day of _____November_____, 2022.

_____
**MICHAEL B. NORTH**
**UNITED STATES MAGISTRATE JUDGE**