UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In Re:   CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL 2047 |
| | SECTION "L" |
| This document relates to: | JUDGE ELDON FALLON |
| Case No. 20-cv-3264 | MAGISTRATE MICHAEL NORTH |

**MEMORANDUM IN OPPOSITION TO
PLAINTIFFS' MOTION FOR LEAVE TO ADD EXPERT DISCLOSURES**

**MAY IT PLEASE THE COURT:**

**NOW INTO COURT,** through undersigned counsel, come defendants, Knauf Gips KG and Knauf New Building System (Tianjin) Co. Ltd. ("KPT") (collectively, the "Knauf Defendants"), who file this Memorandum in Opposition to Plaintiffs' Under Seal Motion to Add Expert Disclosures (R. Doc. 23349), and request this Court to deny Plaintiffs' Motion for Leave to add a new, untimely and prejudicial expert witness and disclosures.  Almost three years after this Court's deadline in the Amended Case Management Order (R. Doc. 22359), almost two years since severance of these claims to set for further proceedings and trial (R. Doc. 22980), and over a year since new counsel has substituted and enrolled (R. Doc. 23226),  Plaintiffs now seek a "do-over" of this case to change its expert, add new damage items, and increase Plaintiffs' expert opinions on damages by 500%, above and beyond the value of Plaintiffs' properties.

Plaintiffs' motion is rife with inaccuracies and misunderstandings of the Gharib's present claim, the prior proceedings, the Knauf Defendants' reasons for opposition, and the consequences

Page **1** of 19

of the relief they seek not only in this case, but in the dozens of remaining *Bennett* cases pending in this Court and others.  Plaintiffs are not "victims" of the Knauf Defendants that "opted-out" of a formula adopted by this Court in a separate default proceeding involving Taishan. Plaintiffs are not opt outs of any action or settlement.  Plaintiffs are claimants that filed untimely claims on January 31, 2016 (R. Doc. 20020), over two years after the October 25, 2013 deadline to participate in the Knauf Class Settlement Agreement, seven years after the creation of this MDL, six years after the Knauf pilot program and five years after the Knauf supply chain of interlocking class settlements.  Plaintiffs were not part of any Taishan proceedings, including the Taishan default proceedings in *Amorin*. Plaintiffs simply represent a small part of the last vestige of a decades' worth of litigation before this Court involving the Knauf Defendants.

Under Rule 16 of the Federal Rules of Civil Procedure, the Court should exclude the new, untimely disclosures, opinions, and report.  **First**, there is no good cause or justification for the more than two-year delay in waiting to change their expert, their damages theory and add new categories of damages. The evidence has been in Plaintiffs control at all times and for almost three years since the deadline expired.  Furthermore, Plaintiffs' current counsel has been enrolled for over a year and has failed, until now, to raise this issue with the Court.  **Second**, the new expert and report from David Herring lacks importance because Plaintiffs have already submitted timely expert disclosures for Shawn Macomber, who has sought to offer damage opinions. Furthermore, the new report and opinions are irrelevant because they seek to inflate Plaintiffs' damages by changing their expert methodology and seek to add new damages never previously raised, including in areas of the properties without any alleged impact from Chinese drywall.  **Third**, the new expert and disclosure is extremely prejudicial in this case and in the remaining *Bennett* cases pending with this Court and other district courts in Alabama, Florida, and Mississippi.  In this

matter, it would allow untimely new opinions from a new expert, based on a different methodology, with new alleged damages never previously disclosed that exponentially increase Plaintiffs' damages model almost three years after the expert deadlines imposed on the Knauf Defendants and just before the scheduled trial. Furthermore, it would prejudice the Knauf Defendants because it would open the door to similar requests by the remaining *Bennett* plaintiffs in pending cases in this and other districts that were subject to the CMO.

***Fourth***, a continuance would not alleviate the prejudice. The Court has already denied Plaintiffs' attempts to further delay these proceedings (R. Docs. 21991, 22427), and doing so now would impose unwarranted costs and delays and would resulting a complete waste of time and expense of the last three years of litigating these cases under the CMO.  Furthermore, a continuance would not remove the unwarranted punishment to the Knauf Defendants in the remaining *Bennett* cases in this and other district courts and would encourage similar requests by other plaintiffs. This MDL has incurred over a decades-worth of litigation, and several years specifically on Plaintiffs' claims pursuant to the CMO. The parties and Court have litigated this case and others pursuant to the CMO and now is not the time to restart the case.  Therefore, the Knauf Defendants request the Court issue an order excluding all evidence, testimony, and argument regarding Plaintiffs' new expert and disclosures.

## BACKGROUND

A.     *MDL 2047* **and the** *Bennett* **Complaint**

From 2004 through 2006, as a result of the housing boom in Florida and rebuilding efforts necessitated by Hurricanes Rita and Katrina, drywall manufactured in China was brought into the United States.  In 2008 and 2009, following extensive media coverage, property owners began to file suit in various courts against those defendants involved with the Chinese drywall. Because of

the commonality of facts in the various cases, this litigation was designated as a multidistrict litigation ("MDL 2047"). Since June 2009, numerous cases have been consolidated, involving thousands of individual claims. Over 20,000 documents have been filed into the record, millions of documents have been exchanged in discovery, depositions have been taken in the United States and in China, over thirty Pretrial Orders have been issued, and the MDL Court has presided over discovery, hearings, and bellwether trials.

The Chinese drywall at issue was largely manufactured by two defendants: (1) KPT and (2) the Taishan Entities. KPT is a Knauf entity and a Chinese-based manufacturer of building products, including the alleged drywall at issue in this litigation. Gips is Knauf German company that manufactures building material products in Germany. The Taishan entities have not been named in this litigation.

On December 20, 2011, the Knauf Entities and the Plaintiff Steering Committee in MDL 2047 entered into a global, class Settlement Agreement ("Knauf Class Settlement Agreement"), which was approved by the MDL Court and designed to resolve all Knauf related, Chinese drywall claims. The deadline to file claims to the Knauf Class Settlement Agreement was October 25, 2013.

      **B.**      **The *Bennett* Action, Plaintiffs' Claims and Proceedings pursuant to the CMO.**

In November 2014, over a year after the October 25, 2013 deadline to participate in the Knauf Class Settlement Agreement, and several years after the creation of this MDL, after the Knauf pilot program and after the Knauf supply chain of interlocking class settlements, Elizabeth Bennett and several other individual property owners filed suit against the Knauf Defendants in the Northern District of Alabama (the "*Bennett* Action"). The claims were transferred and consolidated in MDL 2047. Additional claimants, like Plaintiffs in this action, were later added

to the *Bennett* Action in MDL 2047. Plaintiffs' claims against the Knauf Defendants were first filed on January 31, 2016 (R. Doc. 20020).

In 2018, Plaintiffs attempted to amend and supplement their claims in the *Bennett* Action. The MDL Court denied Plaintiffs' leave to file further amendments as untimely and prejudicial (R. Doc. 21991). Thereafter, the MDL Court issued a Case Management Order ("CMO") with deadlines for the parties to conduct discovery, including fact and expert discovery for Plaintiffs' claims (R. Doc. 21992). The Case Management Order was extended twice because of Plaintiff delays in submitting to and completing fact discovery (R. Docs. 22291, 22359). The applicable Amended CMO (R. Doc. 22359) required expert disclosures and reports by December 31, 2019, and expert depositions to be completed within forty-five (45) days of the disclosure of their reports.

The parties completed fact discovery and depositions, expert discovery, and other pretrial deadlines through the CMO's completion. In light of the previous years of consolidated MDL 2047 discovery into all defendants and the prior extensions of the CMO, the Court denied Plaintiffs' request to extend CMO deadlines to complete additional third-party discovery (R. Doc. 22427). Plaintiffs never sought to extend deadlines for expert disclosures and discovery until the present motion.

The parties exchanged expert disclosures and reports in accordance with the applicable CMO. Plaintiffs provided an expert report from Shawn Macomber, who offered opinions regarding inspection and damages in accordance with the RS Means methodology. Mr. Macomber did not submit any other reports or opinions for Plaintiffs' properties, Plaintiffs never moved to extend the deadlines for expert reports, Mr. Macomber was deposed regarding his RS Means opinions, and never sought to change or supplement his opinions.

### C. Severance of Plaintiffs' Claims and Severance and Transfer of *Bennett* Claims following Conclusion of MDL 2047 Pretrial Deadlines.

The purpose of the MDL and the CMO was to make these cases ready for trial on claims and defenses, except for certain specific pretrial motions (R. Doc. 22359). Following the conclusion of the CMO, the Court severed and retained the Louisiana claims, including Plaintiffs' claims (R. Doc. 22980) and severed and transferred the remaining claims in the *Bennett* Action back to the Northern District of Alabama (R. Doc. 23049). Except for one claim transferred to the Middle District of Louisiana, the nine other Louisiana claims severed from the *Bennett* Action remain pending in this Court.[1] The Court severed and transferred the remaining *Bennett* claims to the Northern District of Alabama, where the *Bennett* Action was originally filed, for further proceedings. Those claims were severed and transferred to where the properties were located in Alabama, Florida, Mississippi, and Texas. The Knauf Defendants have continued to litigate and resolve former *Bennett* Action claims, whittling down what once was over 120 claims to 42 claims now pending in Alabama, Florida, Louisiana, and Mississippi.[2]

Courts in the Southern District of Florida, Middle District of Louisiana, Northern District of Alabama, Southern District of Alabama, and Southern District of Texas have already denied former *Bennett* plaintiffs from restarting these cases over and have acknowledged and imposed this Court's CMO deadlines.[3]

---

[1] 20-cv-3264, 20-cv-3261, 20-cv-3269, 20-cv-3256, 20-cv-3259, 20-cv-3267, 20-cv-3269, 20-cv-3265, 20-cv-3263.
[2] E.D. La (9 including Plaintiffs), N.D. Ala (12), S.D. Ala (2), and M.D. Fla (19).
[3] *Brousseau v. Knauf Gips*, KG et. al., 21-cv-00005 (M.D. La.), R. Doc. 50; *Karpel v. Knauf Gips, KG, et al.,* 21-cv-24168 (S.D. Fla.), R. Doc. 43; *Grande, et al. v. Knauf Gips, KG, et al.,* 21-cv-3287, (S.D. Tex.) R. Doc. 69; *Chedester, et al v. Gebrueder Knauf Vertwaltungsgesellschaft KG, et al*, 21-0447, (S.D. Ala) R. Doc. 46.

### D. Plaintiffs' Issues with Former Counsel, Substitution, and Delays in Submitting Untimely New Experts and Reports.

On January 2, 2019, Plaintiffs were informed of the previous expert disclosure deadline – July 17, 2019.[4] The deadlines were subsequently extended (R. Doc. 22359). Nonetheless, Plaintiffs were made aware that Shawn Macomber was retained as their damages expert and that Plaintiffs should cooperate with him in completing his expert reports.[5] Shawn Macomber inspected Plaintiffs' properties and submitted an expert report in accordance with the CMO. His report adopted the RS Means method of calculating remediation damages. The RS Means method is a formula that multiples the area of the property by a price per square foot based on the location of the property. This was a strategic adoption by Plaintiffs, their former counsel, and current expert based on the Court's adoption of the RS Means formula in the Taishan default damages hearing in 2017 (R. Doc. 20741). Plaintiffs failed to submit any additional expert disclosures or reports in accordance with the CMO, even though such a report was possible, and the information was always within Plaintiffs' control. Mr. Macomber was deposed on February 11, 2020 regarding his December 31, 2019 opinions and report. At no time between December 31, 2019 and now did Plaintiffs seek to amend, supplement, or substitute Mr. Macomber's expert disclosures.[6]

Now, Plaintiffs seek to start the case over and substitute Mr. Macomber for a new damages expert, David Herring, who employs a different damage methodology than Macomber.[7] Herring's

---

[4] Ex. 3, Plaintiffs' sealed motion for leave (R. Doc. 23349-5).
[5] Ex. 3, Plaintiffs' sealed motion for leave (R. Doc. 23349-5).
[6] Current counsel enrolled and substituted in this matter over a year ago in November 2021 (R. Doc. 23226).
[7] Plaintiffs' counsel references a September 27, 2022 email as a basis for Plaintiffs' counsel unawareness of the Knauf Defendants would object to the substitution and addition of experts and disclosures over two years after the deadline expired. First, the correspondence from Plaintiffs' current counsel was not received until after the Knauf Defendants' counsel was alerted to its existence at the November 8, 2022 status conference. As the Knauf Defendants informed Plaintiffs' counsel at that time, Plaintiffs' counsel's emails were quarantined as spam/junk and were withheld from their inboxes. Second, current counsel has been enrolled for over a year and Plaintiffs themselves were aware of the expert deadlines in 2019. Current counsel, whether before or after retention and enrollment, understood the CMO deadlines and yet waited almost a year before raising this issue to the Knauf Defendants and this Court.

opinions also seek to expand the scope of collective damages to $4,125,377.84, multiple times the damages set forth in Mr. Macomber's opinion ($819,564.27) and the Knauf Defendants' experts' opinion ($245,202.38); include areas of property where Plaintiffs admit there is no KPT Chinese drywall (*i.e.*, upstairs of Plaintiffs' residence where drywall was not replaced following damage by Hurricane Katrina in 2005 and units within commercial property); and include damage opinions never before produced by Plaintiffs regarding alternative living expenses and loss of contents.[8] As a ruse, Plaintiffs submit the basis for the years of delay in providing this new expert and opinion is lack of communication with their former counsel, and ask to impose an unjustifiable punishment to the Knauf Defendants for Plaintiffs' own strategic decisions the past several years. However, Plaintiffs selected an expert (Macomber) and a damages model (RS Means) years ago, which was previously adopted by the Court in a separate default proceeding involving Taishan. Plainly what Plaintiffs seek in their present motion is to prejudice the Knauf Defendants in this case and in the remaining *Bennett* cases pending in this and other districts by starting this case over, unjustifiably increasing their damages 500%, adding new categories of damages, and asking this Court to confirm the previous years of litigation was a complete waste of judicial resources.

## LAW AND ARGUMENT

### A. Plaintiffs' New Expert Disclosure, Opinions, and Report are Untimely under the Case Management Order.

The Federal Rules of Civil Procedure grant district courts the power to "control and expedite the discovery process through a scheduling order." *Barrett v. Atlantic Richfield Co.*, 95 F.3d 375, 380 (5th Cir. 1996); *see* Fed. R. Civ. P. 16. "Rule 16 also allows a court to exclude [] testimony or strike pleadings if a party fails to comply with deadlines imposed by a scheduling

---

[8] *See* Ex. 9, Plaintiffs' sealed motion for leave at pp. 109, 215 (R. Doc. 23349-11); *see also* Exhibit 1 (Excerpt of Macomber's RS Means opinion); *see also* Exhibit 2 (Excerpts of Knauf Defendants' Expert (Moss/Phil Adams) opinion).

order." *Perez v. City of New Orleans*, 173 F.Supp.3d 337 (E.D. La. 3/24/2016); Fed. R. Civ. P. 16(f)(1)(C); *see also* Fed. R. Civ. P. 37(b)(2)(A).  Under Federal Rule of Civil Procedure 26(a)(2), a party must disclose to the other parties the identity of any witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705.  Fed. R. Civ. P. 26(a)(2)(A). These disclosures must be made in the time and sequence ordered by the Court. Fed. R. Civ. P. 26(a)(2)(D). . . .  If a party fails to provide information or identify a witness as required by Federal Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless. Fed. R. Civ. P. 37(c)(1).

Rule 16 of the Federal Rules of Civil Procedure provides that "[a] [case] schedul[ing] [order] may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). Rule 16's good cause standard requires that "the party seeking relief [] show that the deadlines cannot reasonably be met despite the diligence of the party needing the extension." *Smith v. Transocean Offshore USA, Inc.*, 2021 WL 1534503, at *7 (E.D. La. April 19, 2021) (citing *S&W Enterprises, L.L.C. v. SouthTrust Bank of Alabama*, 315 F.3d 533, 535 (5th Cir. 2003)).

This Court issued a Case Management Order ("CMO") that set a deadline for the expert disclosures and discovery (R. Doc. 21992).  The deadlines were extended (R. Doc. 22291) and Plaintiffs were made aware of the expert deadlines.[9]  The CMO was amended again and allowed additional time for Plaintiff expert disclosures  (R. Doc. 22359). The applicable CMO required Plaintiffs' expert disclosures and reports "no later than December 31, 2019."  Further, the CMO required that all expert discovery be completed within forty-five (45) days of the issuance of the expert's report.  Although Plaintiffs moved to continue CMO deadlines (R. Doc. 22385) to allow

---

[9] Ex. 3, Plaintiffs' sealed motion for leave (R. Doc. 23349-5).

more time for third-party discovery, which the Court denied (R. Doc. 22427), Plaintiffs never sought to extend the expert deadlines in the amended CMO prior to the deadline or anytime thereafter. Therefore, in seeking to submit these new disclosures, it is undisputed that Plaintiffs did not comply with the CMO.

> **B.  Plaintiffs' New Expert Disclosure, Opinions, and Report Should be Excluded under this Court's Prior Orders, Proceedings, and Established Fifth Circuit Law.**

There is no good cause for the untimely expert disclosures under Rule 16 and Fifth Circuit precedent. "In determining whether the movant has met its burden of proving 'good cause' under Rule 16(b)(4), [the] [c]ourt must consider four factors: (1) the movant's explanation for failing to meet the deadline; (2) the importance of the requested relief; (3) the potential prejudice in granting the relief sought; and (4) the availability of a continuance to cure such prejudice." *Smith v. Transocean Offshore USA, Inc.*, 2021 WL 1534503, at *7 (E.D. La. April 19, 2021). Additionally, "[i]n determining whether to exclude witnesses and exhibits as a sanction for violating a Rule 16 scheduling order, the Fifth Circuit considers the same four factors" – "(1) the explanation for the failure to identify the witness; (2) the importance of the testimony; (3) potential prejudice in allowing the testimony; and (4) the availability of a continuance to cure such prejudice." *Id.*; *Williams v. American Strategic Ins. Corp.*, 2014 WL 1246846, at *1 (E.D. La. Mar. 25, 2014); *Geiserman v. MacDonald*, 893 F.2d 787, 791 (5th Cir. 1990); *Hamburger v. State Farm Mut. Auto. Ins. Co.*, 361 F.3d 875, 883 (5th Cir. 2004). "District courts are given broad discretion in determining whether to exclude expert testimony when a party has failed to designate such witnesses in accordance with pretrial orders." *1488, Inc. v. Philsec Inv. Corp.*, 939 F.2d 1281, 1288 (5th Cir. 1991); *Geiserman*, 893 F.2d at 790; *Sw. Bell Tel. Co. v. City of El Paso*, 346 F.3d 541, 546 (5th Cir. 2003).

Here, Plaintiffs seek to substitute and provide new, untimely expert disclosures *almost three years after* the deadline in the Court's CMO. The Fifth Circuit and its lower courts have excluded untimely expert reports that were provided a *few weeks after* the scheduling order deadline,[10] *less than a month after* the deadline,[11] *four months after* the scheduling order,[12] and *eight months after* the deadline.[13]

For example, in *Matter of Honey Island Adventure, L.L.C.,* 2017 WL 6559871, at *2 (E.D. La. Dec. 22, 2017), Plaintiffs sought to add a new treating physician less than a month after the scheduling order deadline passed based on new medical treatment of the plaintiffs that was not obtained or identified at the time of the deadlines. As to the first factor, the plaintiffs argued the late filing was due to the fact that this new treatment was not recommended or obtained until after the deadlines. *Id*. at *3. The Court found plaintiff's argument unpersuasive. *Id*. As to the second factor, the Court only acknowledged that the new evidence could "potentially" help plaintiffs' recover additional damages. *Id*. Third, the plaintiffs acknowledged that the supplemental witness would "greatly prejudice" the defendant's case but "offer[ed] to cooperate with defendants" to cure any prejudice. *Id.* However, as to the final factor, the court stated that a continuance had already been granted in the case and "[d]espite th[at] additional time provided, Plaintiffs [still] failed to timely prepare their case." *Id.* The Court therefore declined to grant an additional continuance and excluded untimely treating expert. *Id*. at *4.

---

[10] *Geiserman v. MacDonald*, 893 F. 2d 787 (5th Cir. 1990) (finding that a delay of a couple weeks in designating the expert witness caused prejudice to defendant because "[s]uch delay…would have disrupted the court's discovery schedule and the opponent's preparation."); *Garza v. Allstate Texas Lloyd's Co*., 284 Fed. Appx. 110 (5th Cir. 2008) (finding no error by lower court in excluding expert report disclosed 19 days after the deadlines in the scheduling order).

[11] *Matter of Honey Island Adventure*, L.L.C., 2017 WL 6559871, at *1 (E.D. La. Dec. 22, 2017) (excluding supplemental expert witnesses disclosed less than a month after the scheduling order deadline).

[12] *Newberry v. Discount Waste, Inc*., 2020 WL 363775 (E.D. Tex. Jan. 22, 2020) (excluding expert disclosed four months after the scheduling order deadlines).

[13] *Smith v. Transocean Offshore USA, Inc*., 2021 WL 1534503, at *10 (E.D. La. Apr. 19, 2021) (excluding new expert and opinions disclosed eight months after the scheduling order deadline).

In *Smith v. Transocean Offshore USA, Inc.*, 2021 WL 1534503 at *2 (E.D. La. Apr. 19, 2021), the plaintiff sought to add a new expert and medical opinions regarding neck injuries not previously disclosed and eight months after the Court's scheduling deadline. Plaintiff's excuse for the delay was that the neck injury was unknown and undetermined until after the deadline expired, and therefore could not have been presented within the Court's deadlines. *Id*. at 4. Furthermore, the plaintiff argued that the importance of the information was significant because the opinions established that in addition to shoulder injuries, plaintiff was subjected to a debilitating neck injury. *Id*. Plaintiff submitted that there was no prejudice to the defendants and that a continuance would alleviate any prejudice. *Id*. The District Court rejected plaintiff's arguments and excluded the new expert and disclosures. *Id*. at *10. First, the Court reasoned that plaintiff was well aware of the deadlines in the scheduling order and never moved to extend the deadline or continue them when the neck injury first became known. *Id*. at *8-9. Next, although the Court determined that the evidence may be important to increase the plaintiff's damages, it was speculative to assert that such damages would be awarded and "the importance of the evidence cannot 'singularly override the enforcement of local rules and scheduling orders.'" *Id*. at *9 (quoting *Perez v. City of New Orleans*, 173 F. Supp. 3d 337, 347 (E.D. La. 2016) (Barbier, J.); *Barrett v. Atlantic Richfield Co*., 95 F.3d 375, 381 (5th Cir. 1996)). Third, the Court found that there would be significant prejudice to the defendants because all of the expert disclosures and discovery up until that point for the Plaintiff involved opinions regarding his shoulder. *Id*. Finally, the Court found a continuance would not alleviate the prejudice because although one could be granted, the trial date was approaching and had already been delayed from COVID and other reasons, and because the defendants would be forced to incur significant costs in conducting additional expert discovery and rebuttal reports. *Id*. at *10.

Several district courts within the Fifth Circuit have ruled similarly when untimely disclosures are presented.[14] The result should be the same here. Here, unlike *Smith* and *Honey Island* where there was actually "new evidence," brought within a short period of time after the deadlines, Plaintiffs do not submit any new evidence as a reason for failing to submit the new expert and opinions almost three years after the deadline in the CMO. The only basis for bringing this motion almost three years after the deadline is the differences in strategy and opinion between Plaintiffs, counsel, and former counsel regarding Mr. Macomber's opinions. However, the sole fact that the late disclosure of the proposed new expert and opinion three years after the deadline was a result of differences between client, current counsel, and former counsel is an insufficient basis to allow the untimely opinions, particularly when the opinions are from a completely new expert, with a new methodology, with new opinions of new categories of damages that seek to increase Plaintiffs' alleged damages exponentially and in excess of the value of the properties themselves. It is not surprising that in submitting this sole reason, Plaintiffs have completely failed to set forth any caselaw that finds this factor in their favor when the information has always been available to Plaintiffs, counsel, and their expert, and Plaintiffs have simply failed to timely disclose for almost three years.

Indeed, the information and opinions were within the Plaintiffs' knowledge and control for years but only now have been submitted in derogation of the Court's CMO. Plaintiffs were aware of the CMO deadlines in January 2019, Plaintiffs' former counsel submitted reports in accordance

---

[14] *See Tucker v. United States*, No. CV 18-4056-WBV-MBN, 2019 WL 4187745, at *1 (E.D. La. Sept. 4, 2019) (excluding untimely, supplemental expert disclosures); *Banks v. Louisiana Marine Operators*, LLC, CV 16-15645, 2018 WL 1788159, at *3–4 (E.D. La. Apr. 5, 2018) (excluding untimely medical bills supplemented after the deadlines established by the Court); *Rahmani v. Wal-Mart Stores Texas, LLC*, No. EP-13-CV-311-KC-MAT, 2014 WL 12591735, at *3 (W.D. Tex. June 5, 2014) (excluding untimely expert disclosures despite Plaintiff's argument that treatment was ongoing, incomplete and these new medical records of treatment were extremely important to presentation of damages) objections overruled, No. EP-13-CV-311-KC, 2014 WL 12589588 (W.D. Tex. July 8, 2014); *Alldread v Grenada*, 988 F.2d. 1425, 25 (5th Cir. Miss. 1993) (finding that district court properly excluded expert testimony first supplied nine months after close of discovery).

with the CMO, and current Plaintiffs' counsel have been enrolled for almost a year but have only now come forward with this expert and opinion in an effort to ambush the Knauf Defendants and unjustifiably increase Plaintiffs' damages. Plaintiffs, former counsel, and new counsel had the information, were aware of the deadlines, but instead waited to spring these issues on the Knauf Defendants and the Court until now. There is no justification for these tactics.

Second, the evidence is not important. Plaintiffs are not left without expert reports or opinions to proffer subject to *Daubert*. Plaintiffs made a strategic decision in 2019 to retain Mr. Macomber and set forth an RS Means calculation for remediation damages, which this Court adopted in the separate default proceeding involving Taishan. Therefore, exclusion of the new expert and opinions submitted by Plaintiffs does not leave Plaintiffs without any expert opinion to proffer at trial such that its importance is overwhelming in this case. Like *Smith* and *Honey Island*, additional evidence regarding damages is not an independently sufficient basis to warrant leave to amend outside the scheduling order, even in those cases where it was unknown at the time of the deadline, which is not the case for Plaintiffs in this matter. The information to provide the new remediation opinion has always been available to Plaintiffs. Furthermore, the new opinions are not simply a change in methodology but include completely new types of damages, which serves as an independent basis for exclusion. For example, Plaintiffs' new expert report and disclosure provides new opinions regarding contents and alternative living expenses never before disclosed by Plaintiffs even though always within their knowledge and control[15] Even if the Court concludes

---

[15] For example, for 4 Beresford Drive Metairie, LA 70001, Plaintiffs' new expert for the first time assigns contents loss in the amount of $43,231.05 and alternative living expenses in the amount of $30,000.00 (Ex. 9 to Plaintiffs' sealed motion for leave at p. 21) (R. Doc. 23349-11). For the commercial property located at 8807 S. Claiborne Ave. New Orleans, LA 70118, Plaintiffs' new expert for the first time provides opinions regarding loss of use ($317,894.40) and alternative living expenses ($16,200.00) (Ex. 9 to Plaintiffs' sealed motion for leave at p. 109) (R. Doc. 23359-11).

that the evidence could potentially assist Plaintiffs' damages, "the importance of proposed testimony cannot 'singularly override the enforcement of local rules and scheduling orders.'"[16]

Additionally, the new report and opinions are not relevant or assistive to the trier of fact because they include opinions regarding areas of Plaintiffs' properties where Plaintiffs and their expert admit there is no Chinese drywall. For example, for Plaintiffs' commercial property located at 8807 S. Claiborne Ave. New Orleans, LA 70118, the property is a mixed-use property with commercial space on the 1st floor and the 2nd floor consisting of 3 apartment units (A, B & C), each 2 bedroom / 1 bathroom. The 3rd floor is also a single apartment unit (2 bedroom / 1 bathroom). Knauf's expert was given access in 2019 to inspect the 3 apartment units on the 2nd floor where the alleged Chinese drywall was located.[17] Now, aside from a change in methodology, Plaintiffs' new expert provides a remediation opinion that includes a total remediation of the entire building, including the 1st floor commercial spaces, 3rd floor apartment, stairwells, and attic despite the Plaintiffs' new expert noting that the main level and 3rd Level do not contain Chinese drywall.[18] Likewise, for Plaintiffs' residential property at 4 Beresford Drive, Metairie, LA 70001, the Knauf Defendants' expert inspected the first floor in 2019 where Chinese drywall was allegedly installed following damage in 2005/2006 from Hurricane Katrina. Plaintiffs' new expert provides a remediation scope for all three levels of the Property despite it not having any alleged Chinese drywall.[19]

Third, Plaintiff's new expert and report would greatly prejudice the Knauf Defendants in this matter, and in dozens of other *Bennett* cases still pending with this Court and other district

---

[16] *Hamburger v. State Farm Mut. Auto Ins*. Co., 361 F.3d 875, 883 (5th Cir. 2004) (quoting *Geiserman v. MacDonald*, 893 F.2d 787, 791 (5th Cir. 1990)).
[17] Exhibit 2 (Excerpts of Report from Phil Adams/Moss).
[18] Ex. 9 to Plaintiffs' sealed motion for leave at pp. 6, 84 (R. Doc. 23349-11).
[19] Ex. 9, Plaintiffs' sealed motion for leave at pp. 109, 215 (R. Doc. 23349-11).

courts in Mississippi, Alabama, Florida. It is undisputed that the expert witness is entirely new, that he proposes a new opinion of damages not previously disclosed to the Knauf Defendants, and that the new expert and disclosure provides new categories damages that significantly inflate Plaintiffs' damages 500% over what the previous opinion provided. Plaintiffs' proposed disclosure is nearly three years after the close of discovery, after Defendants' expert disclosures have been completed for over two years, after the deadline for exchange of expert reports, and after Defendants have deposed Plaintiffs' current experts and completed all discovery and pretrial deadlines under the CMO. The Knauf Defendants would be required to incur additional costs, conduct additional discovery, and obtain rebuttal expert opinions to address Plaintiffs' new expert's opinions. Therefore, the prejudice in this matter alone serves as a basis to deny leave.

Furthermore, it would greatly prejudice the Knauf Defendants in the remaining *Bennett* cases pending in this Court and other districts. Following the conclusion of the CMO, the MDL Court severed Plaintiffs' claim in this matter, along with other claims formerly part of the Bennett Action. Nine Louisiana claims of the *Bennett* claims severed remain pending in this Court. And in total, forty-two (42) *Bennett* claims subject to the Court's CMO remain pending in Alabama, Florida, Louisiana, and Mississippi. Courts in the Southern District of Florida, Middle District of Louisiana, Northern District of Alabama, Southern District of Alabama, and Southern District of Texas have already denied former *Bennett* plaintiffs attempts to restart their cases and have acknowledged this Court's MDL and CMO deadlines in setting matters for trial.[20] Allowing Plaintiffs to offer new experts and disclosures would not only effectively start this case over, but also open the door to the remaining *Bennett* plaintiffs to seek the same relief in this Court and

---

[20] *Brousseau v. Knauf Gips*, KG et. al., 21-cv-00005 (M.D. La.), R. Doc. 50; *Karpel v. Knauf Gips, KG, et al.,* 21-cv-24168 (S.D. Fla.), R. Doc. 43; *Grande, et al. v. Knauf Gips, KG, et al.,* 21-cv-3287, (S.D. Tex.) R. Doc. 69; *Chedester, et al v. Gebrueder Knauf Vertwaltungsgesellschaft KG, et al*, 21-0447, (S.D. Ala) R. Doc. 46.

others.  This would subject the Knauf Defendants to the prejudice of having to relitigate all of these cases again, making the prior CMO and pretrial litigation before this Court worthless, and at a complete waste of judicial and party resources.  As the Fifth Circuit has recognized:

> Regardless of [Plaintiff's] intentions, or inattention, which led to the flouting of discovery deadlines, such delays are a particularly abhorrent feature of today's trial practice. They increase the cost of litigation, to the detriment of the parties enmeshed in it; they are one factor causing disrespect for lawyers and the judicial process; and they fuel the increasing resort to means of non-judicial dispute resolution. Adherence to reasonable deadlines is critical to restoring integrity in court proceedings.

*Geiserman v. MacDonald*, 893 F. 2d 787, 791 (5th Cir. 1990)

Finally, the possibility of continuance and reopening of the discovery deadlines will not cure the prejudice.  The Court has already recognized the prejudice to the Knauf Defendants in further delaying these proceedings by denying leave to add additional claims several years ago and in previously denying Plaintiffs' request to extend the third-party discovery deadlines in this case. A further continuance on this matter will necessitate the parties to re-open fact and expert discovery that has been closed for over two years, and essentially, will start a completely new case. As set forth above, the Knauf Defendants have litigated and will continue to be set for trials in dozens of other *Bennett* matters between now and through 2023, and to continue this case, and start over, would open the door to reopening all of the *Bennett* cases still in this Court and in the other district courts where the Bennett cases remain pending.  This would effectively render the Court's CMO, the dozens of depositions, discovery, and pretrial work completed over the past several years with this Court null and void.  It would create and encourage a complete waste of judicial resources and necessitate the Knauf Defendants to be required to effectively relitigate all of the *Bennett* claims again.  This case has been prepared to set for trial, the parties have their current experts and but for certain pretrial deadlines submitted in the scheduling order, the case is

ready to proceed in a trial posture based on the discovery and litigation this Court directed under the CMO.  Therefore, a continuance would not alleviate the prejudice to the Knauf Defendants in this matter, or in the other *Bennett* cases still pending, and otherwise would not be appropriate in light of the Court's prior rulings and CMOs.

## CONCLUSION

It is facially apparent that Plaintiff's new expert and disclosures are untimely and have been submitted years after the CMO's deadlines solely to ambush and inflate their damages.  The information has always been in Plaintiffs' control such that there is no sufficient reason to excuse the lack of timely disclosure. Furthermore, the untimely new expert and disclosures are not important because Plaintiffs already have a damages expert that provided expert disclosures, was deposed under the CMO, and is available to testify subject to *Daubert* standards.  Even if the new damages are important, the Fifth Circuit has been clear that the importance alone does not serve as a basis to override the Court's prior CMO.  Most importantly, the new expert and disclosures would greatly prejudice the Knauf Defendants and a continuance would raise additional delays, questions, and prejudice in terms of re-litigation of this matter and all of the remaining *Bennett* claims. Finally, a continuance would not alleviate the prejudice because it would delay these proceedings further, increase the Knauf Defendants' costs in re-starting these cases over, subjecting the Knauf Defendants to additional unwarranted requests from the remaining *Bennett* claims, and would result in a complete waste of the Court's and parties' resources the last several years in completing consolidated proceedings under the CMO.  For these reasons, Defendants respectfully request the Court issue an order excluding all evidence, testimony, and argument regarding Plaintiffs' new expert first raised in this matter over two years after the completion of the Court's CMO.

Respectfully submitted,

**FISHMAN HAYGOOD, LLP**

/s/ *Daniel J. Dysart*
**KERRY J. MILLER (#24562), T.A.**
**PAUL C. THIBODEAUX (#29446)**
**DANIEL J. DYSART (#33812)**
**REBEKKA C. VEITH (#36062)**
**MICHAEL R. DODSON (#37450)**
201 St. Charles Avenue, Suite 4600
New Orleans, LA 70170
Telephone:    504.556.5549
Facsimile:     504.949.8202
Email:           kmiller@fishmanhaygood.com
Email:           pthibodeaux@fishmanhaygood.com
Email:           ddysart@fishmanhaygood.com
Email:           rveith@fishmanhaygood.com
Email:           mdodson@fishmanhaygood.com

*Counsel for Defendants,*
*Knauf Gips KG and*
*Knauf New Building System (Tianjin) Co. Ltd.*
*(f/k/a Knauf Plasterboard (Tianjin) Co., Ltd.)*

### CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that the above and foregoing pleading has been served upon Russ Herman, Plaintiffs' Liaison Counsel, by email, to all parties by electronically uploading the same to LexisNexis File & Serve in accordance with Pre-Trial Order No. 6, individually to pro se claimants via U.S. Mail, and that the foregoing was filed with the Clerk of Court of the United States Court for the Eastern District of Louisiana, on this 27th day of December, 2022.

/s/ *Daniel J. Dysart*
**DANIEL J. DYSART**