UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In Re:   CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL 2047 |
| | SECTION "L" |
| This document relates to: | JUDGE ELDON FALLON |
| Case No. 20-cv-3264 | MAGISTRATE NORTH |

**MEMORANDUM IN SUPPORT OF MOTION *IN LIMINE*
TO EXCLUDE CERTAIN EVIDENCE**

**MAY IT PLEASE THE COURT:**

Defendants, Knauf Gips KG and Knauf New Building System (Tianjin) Co. Ltd. ("KPT") (collectively, the "Knauf Defendants"), submit the following memorandum in support of their motion *in limine* to exclude certain evidence at the trial of Jawad and Fatme Gharib's claims.

**RELEVANT FACTUAL BACKGROUND**

The Gharibs' suit against the Knauf Defendants is part of MDL No. 2047, formed in 2009 to consolidate what were ultimately hundreds of lawsuits involving thousands of plaintiffs who alleged damages associated with Chinese-manufactured drywall. *See In re Chinese Manufactured Prods. Liab. Litig.*, 894 F. Supp. 2d 819, 830 (E.D. La. 2012). In their complaint, the Gharibs allege that their "homes, structures, personal property, and bodies" were exposed to and damaged by drywall that they allege is defective and was manufactured by the Knauf Defendants. *See* R. Doc. 21334 at ¶ 27 (MDL No. 2047); R. Doc. 1 at p. 1 (Case No. 20-cv-3264). The specific "structures" the Gharibs allege were damaged are their home at 4 Beresford Drive in Metairie,

Louisiana and three apartments located in a building they own at 8807 South Claiborne Avenue in New Orleans. R. Doc. 21334 at Ex. A, p. 2 (MDL No. 2047); R. Doc. 1 at ¶ 5 (Case No. 20-cv-3264).

Based on these allegations, the Gharibs assert claims against the Knauf Defendants under the Louisiana Products Liability Act, La. Rev. Stat. § 9:2800.52, *et seq.* (the "LPLA") and under Louisiana's redhibition laws. *See* R. Doc. 21334 at ¶¶ 86-108 (MDL No. 2047); R. Doc. 22925 (MDL No. 2047) (limiting Louisiana plaintiffs' claims to redhibition and LPLA claims); R. Doc. 1 at ¶¶ 31-53 (Case No. 20-cv-3264). For these claims, the Gharibs assert they are entitled to damages in the form of "cost of inspection; cost and expenses necessary to remedy, replace and remove the defective, problematic, and unfit drywall and other property that has been impacted; lost value or devaluation of their homes and property; loss of use and enjoyment of their home and property, and/or damages associated with personal injuries." R. Doc. 21334 at ¶ 32 (MDL No. 2047); R. Doc. 1 at ¶ 29 (Case No. 20-cv-3264).

## LAW & ARGUMENT

**I.    The Gharibs should be barred from presenting evidence not produced in discovery.**

Discovery closed in the putative class action suit in which the Gharibs were named Plaintiffs in February of 2020. Plaintiffs in that suit, including the Gharibs, were ordered to provide depositions by December 31, 2019, and to produce "all information identified during a Plaintiff's deposition that is within the possession, custody, or control of Plaintiff or is information that Plaintiff intends to use in support of their claims and was not previously produced in accordance with the PPF, SPPF, or PFS." R. Doc. 22359 (MDL No. 2047).  The Gharibs, who were deposed on June 11, 2019, never produced any documents beyond what was submitted with their PPF, SPPF, and PFS for each property.

As a result, the Gharibs assert multiple claims and categories of damages that they did not, during discovery, produce any evidence to support. Parties generally are not allowed to use at trial evidence that was not provided to opposing parties as required by Federal Rules of Civil Procedure 26(a) or (e). FED. R. CIV. PROC. 37(c)(1) ("If a party fails to provide information . . . as required by Rule 26(a) or (e), the party is not allowed to use that information . . . to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."); *see also Spotted Cat, LLC v. Bass*, No. 13-6100, 2014 WL 5209943, at *4 (E.D. La. Oct. 14, 2014) (granting motion *in limine* to exclude certain evidence "because it was not produced in discovery").

    **a.    The Gharibs have no evidence to show "lost value or devaluation" of their properties.**

To show that either of their properties suffered "lost value or devaluation" damages, the Gharibs are required to come forward with evidence to show "the amount by which [their] property allegedly depreciated after" the alleged damages occurred. *Turner v. Murphy Oil USA Inc.*, 759 F. Supp. 2d 854, 857 (E.D. La. 2011). This is "generally a subject that requires testimony by an expert witness," although in the absence of an expert, the plaintiff may testify as to the value of their property. *Id.*

The Gharibs have not adduced either form of evidence in discovery. They have not designated an expert witness who can testify as to the alleged devaluation either of their home or the apartments on S. Claiborne, nor have they offered their own reports regarding the lost value. In fact, they have admitted that they have no knowledge as to any diminution in value. In their Plaintiff Fact Sheets, in response to the question "If you claim diminution of the property as a result of Chinese Drywall, state with particularity each fact which supports your claim," the

Gharibs answered "N/A" both for their home and for the apartments.[1] And at his deposition, Jawad Gharib agreed that he does not "know how much [he] think[s] the home has diminished in value" from a prior appraisal "as a result of the alleged Chinese drywall."[2] "There is, in other words, 'a complete absence of proof' regarding the alleged diminution in value, even though 'ample time has been allowed for discovery.'" *Turner*, 759 F. Supp. 2d at 858.

Because the Gharibs did not provide in discovery any competent evidence on "lost value or devaluation," they should be prohibited from presenting testimony or other evidence on this item of their alleged damages.[3]

b.     **The Gharibs have no competent evidence to show loss of use damages.**

The Gharibs submitted Supplemental Plaintiff Profile Forms in which they were asked to identify the total amount of damages they are claiming for any loss of use or loss of enjoyment of their property and to supply documentation of those damages. For the home at 4 Beresford Drive, the Gharibs claim $300,000, and in support, submitted an "exhibit" that provides, in its entirety:

> $300,000 in loss of use / loss of enjoyment damages is appropriate and consistent with past verdicts in the Chinese drywall litigation, based on the number of years I and my family have owned and / or lived in the home containing defective Chinese-manufactured sheetrock produced by the Knauf Defendants.[4]

When questioned about this loss of use claim at his deposition, Mr. Gharib said that "[l]oss of use, this is the damages that I – this is the personal damages that we have, we claim that we have, and

---

[1] Ex. 1, Plaintiff Fact Sheet (4 Beresford Dr.), at p. 5; Ex. 2, Plaintiff Fact Sheet (8807 S. Claiborne), at p. 5.

[2] Ex. 3, Excerpts from Depo. of Jawad Gharib ("Jawad Gharib Depo."), at 183:10-17.

[3] It is also far too late for the Gharibs to designate any expert on lost value or devaluation. This Court has already recently denied the Gharibs' motion for leave to "file additional expert disclosures almost three years beyond the expert deadline." *See* R. Doc. 22358 at p. 2 (MDL No. 20470).

[4] Ex. 4, Supplemental Plaintiff Profile Form (4 Beresford Drive), at pp. 6, 9.

then I wanted the house to be repaired, the damages that was in the house."[5]

For each of the three apartments on S. Claiborne, the Gharibs claim $200,000 in loss of use damages, and submitted an exhibit nearly identical to the one submitted with the Supplemental Plaintiff Profile Form for 4 Beresford Drive, with the addition of the statement "This amount includes the appliances, fixtures, mechanical, electrical, and plumbing items that have been damaged and/or replaced during the time we have owned the building since the defective drywall was installed."[6] As to the loss of use of these apartments, Mr. Gharib admits that each of the three apartments have been rented "since [he] had the building constructed."[7]

The Gharibs should be barred from presenting this loss of use "evidence" to the jury for multiple reasons. First, and as set forth below, prior verdicts against the Knauf Defendants are not admissible to show any liability to the Gharibs. More to the point, the appropriate measure of damages for loss of use of the property at 4 Beresford Drive is the lease or rental value of the property at issue. *See Nunez v. St. Bernard Parish. Fire Dep't*, 519 So. 2d 857, 862 (La. App. 4 Cir. 1988) (quoting *Chiss v. Manchester Ins. & Indemnity Co.*, 308 So. 2d 803 (La. App. 4 Cir. 1975)) ("The normal measure of damages for loss of use is the rental value of similar property and perhaps necessary incidental expenses."). The Gharibs have never come forward with any such evidence in discovery, in fact, they admit that what they consider "loss of use" damages are actuallytheir alleged property damages.

Separately, the appropriate measure for loss of use damages for the Gharibs' rental property on S. Claiborne is loss of business income. *See Burmaster v. Plaquemines Parish Gov't*, 2010-

---

[5] Ex. 3, Jawad Gharib Depo., at 159:24-160:3.

[6] Ex. 10, Supplemental Plaintiff Profile Form (8807 S. Claiborne Unit A), at pp. 6, 9; Ex. 11, Supplemental Plaintiff Profile Form (8807 S. Claiborne Unit B), at pp. 6, 9; Ex. 12, Supplemental Plaintiff Profile Form (8807 S. Claiborne Unit C), at pp. 6, 9.

[7] Ex. 3, Jawad Gharib Depo., at 30:12-19.

1543 (La. App. 4 Cir. 3/30/11), 64 So. 3d 312, 319 ("[L]oss of business income' is the measure of damages for the 'loss of use' of commercial property."). But the Gharibs admit that the apartments have consistently been rented since they were constructed, and therefore there is no evidence of any lost business income. The Gharibs have no evidence that would be competent to support loss of use for either of their properties, and they should be prohibited from submitting their speculative, unsupported, and unmerited loss of use damages figures.

      c.      **The Gharibs should be prohibited from introducing evidence to support personal property damage.**

The Plaintiff Fact Sheet submitted by the Gharibs included a request to identify any appliances, fixtures, or other electronics that Plaintiffs claim were damaged by Chinese-manufactured drywall.[8] In response, for both properties, the Gharibs submitted a chart titled "Itemization (Personal Property Damage)" with a description of each allegedly damaged item and its value.[9] In follow-up discovery sent in connection with the Gharibs' depositions, the Knauf Defendants requested production of any documentation supporting the Gharibs' claims for damages, including but not limited to receipts and invoices associated with these alleged personal property damages.[10]

But the Gharibs have never produced any supporting documentation for the list of personal property damage submitted in connection with their Plaintiff Fact Sheets. With one exception, the Gharibs provided no invoices support the amounts they paid for the allegedly damaged property, and no receipts to support any amount they may have paid to replace the property. Nor have they

---

[8] Ex. 1, Plaintiff Fact Sheet (4 Beresford Dr.), at p. 5; Ex. 2, Plaintiff Fact Sheet (8807 S. Claiborne), at p. 5.

[9] Ex. 1, Plaintiff Fact Sheet (4 Beresford Dr.), at p. 45-46; Ex. 2, Plaintiff Fact Sheet (8807 S. Claiborne), at pp. 122-23.

[10] Ex. 5, Rule 30 Notice of Deposition at Attachment A.

submitted any photographs or other evidence depicting the damage to this property, or any expert opinion analyzing the Gharibs' personal property and concluding that it is damaged or that the contamination was caused by KPT Drywall. To avoid prejudicial surprise, the Gharibs should be precluded from presenting any new evidence at trial purporting to show personal property damage.

The Gharibs did produce one piece of evidence to support their alleged personal property damage—an invoice from November 2006 for $133,875.97, representing the price paid by the Gharibs for 20 washing machines and 12 dryers, as well as related accessories and furnishings for the laundromat that is located in the bottom of the building at 8807 S. Claiborne.[11] But both the Gharibs and their expert agree that no drywall manufactured by Knauf is installed in the laundromat portion of the building, such that the equipment could not have been damaged by any impacts from Chinese-manufactured drywall.[12] This evidence should therefore be excluded as irrelevant.

### d. The Gharibs have no evidence of an express warranty from the Knauf Defendants.

In their operative complaint, the Gharibs assert against the Knauf Defendants various theories of LPLA liability, including that "Defendants' drywall is unreasonably dangerous in that it fails to conform to an express warranty about the product which induced the use of the product and caused damage to Plaintiffs to the extent that the warranty was untrue." R. Doc. 21334 at ¶ 106. But the Gharibs have never come forward with any express warranty that they allege was made by the Knauf Defendants to the Gharibs. Here again, because the Gharibs have not yet

---

[11] Ex. 2, Plaintiff Fact Sheet (8807 S. Claiborne), at pp. 124-25.

[12] Ex. 3, Depo. of Jawad Gharib at 119:8-21 (admitting that the commercial portion of the property at S. Claiborne was constructed with a different type of drywall and that Chinese-manufactured drywall is "not in my commercial property"; Ex. 6, Macomber Report, at 14 (excluding the first-floor square footage from RS Means calculation); Ex. 7, Excerpts from Depo. of Shawn Macomber, at 110:7–25; 111:1-6.

provided in discovery any purported express warranty, they should be prohibited from attempting to do so at trial.

      e.      **The Gharibs should be prohibited from presenting evidence of damages to property in areas where they have not produced evidence of KPT Drywall.**

To date, the Gharibs have only presented alleged evidence of KPT Drywall in (1) Apartments A, B, and C on the second floor of the property at 8807 S. Claiborne,[13] and (2) the first floor of the property at 4 Beresford Drive.[14] Additionally, with respect to the property at 8807 S. Claiborne, Mr. Gharib specifically testified at his deposition that there was no Chinese-manufactured drywall in the first-floor commercial spaces of the property,[15] and his expert likewise excluded the first-floor square footage from his RS Means calculation for lack of evidence of KPT Drywall.[16] With respect to the Beresford property, Mr. Gharib further testified that he has only found Chinese-manufactured drywall on the first floor of his home following post-Katrina remediations,[17] and Defendants' expert's report accordingly only addresses the first floor of the property.[18] Plaintiffs simply cannot present any evidence of KPT Drywall to support a claim for damages to areas beyond the second-floor apartments at 8807 S. Claiborne or the first floor of 4 Beresford Drive.

---

[13] *See* Ex. 6, Macomber Report, at 283-292 (allegedly noting the presence of KPT Drywall only in the kitchen ceiling of Apartment A, the bedroom wall of Apartment B, and the hallway wall of Apartment C).
[14] *See id.*, at 279-280 (allegedly identifying KPT Drywall only in the Kitchen Wall).
[15] *See* Ex. 3, Jawad Gharib Depo., at 121:6-12; *see also id.*, at 121:13-19 ("Q. Okay. So there's no Chinese drywall in the space where all of the washing machines are located; right? A. No. Q. No Chinese drywall in the space where all the dryers are located; right? A. No.")).
[16] *See* Ex. 7, Macomber Depo., at 110:5–25; 111:1-6 (explaining that he specifically excluded the commercial spaces from his damages calculation for lack of evidence of KPT Drywall).
[17] *See* Ex. 3, Jawad Gharib Depo., at 126:21-25; 127:1 (explaining that the property experienced four feet of flooding during Hurricane Katrina); 149:16-25 (explaining that he only looked for Chinese-manufactured drywall on the first floor).
[18] *See* Ex. 8, Excerpt from Phil Adams-Moss Report, at 1 (noting that because "only the ground floor was renovated/repaired [after Hurricane Katrina,] . . . [t]his Xactimate Estimate Report does not include any work for remediation of the 2nd floor of the home.")).

Moreover, to argue that KPT Drywall on one floor somehow caused damage to Plaintiffs' property on a separate floor, Plaintiffs would need specific expert testimony on that issue that they simply do not have.[19] Nevertheless, as already referenced above, Plaintiffs have submitted alleged remediation damages to areas not allegedly affected by KPT Drywall and without any inspection or expert testimony that KPT Drywall caused damages in those areas of the Property.[20] Defendants accordingly ask that the Court exclude any such evidence of damages to property in areas beyond the beyond the second-floor apartments at 8807 S. Claiborne or the first floor of 4 Beresford Drive, including evidence of damages to the first floor, stairway, and third floor of the Claiborne property and the second floor of the Beresford Property.

**II.     Evidence regarding prior liability judgments should be excluded.**

Since 2009, this Court has presided over thousands of claims in this MDL, including some claims that were tried to a liability verdict against the Knauf Defendants. The Knauf Defendants expect that the Gharibs may seek to introduce to the jury prior liability verdicts awarding damages against the Knauf Defendants in lawsuits arising out of Chinese-manufactured drywall.

---

[19] *See generally*, Ex. 6, Macomber Report, at 279-292; Ex. 9, Deposition of Howard Ehrsam, at 41:3-42:20 (admitting that he "can[not] offer any opinions as to what the extent of corrosion is with respect to the individual property owners in the Bennett case."); 48:6-22 ("[F]or the homes that you inspected personally, are you providing any expert opinion as to whether any particular individual sustained property damage due to KPT Chinese drywall? A. I'm opinion to the generic effects of KPT drywall on property in general, not at any particular property. Q. Okay, So the answer to that is you are not providing any individual causation opinions with respect to individual properties that may have KPT drywall in it? A. Correct. Q. Thank you, sir. You are not offering any opinions as to any individual damages that were allegedly sustained due to the presence of uppercase KPT drywall, true? A. True."); 101:1–102:16 (explaining that his opinions would not be indicative of case-specific findings) ("Q. In fact, everything, in terms about your scientific opinions, you can't even say whether it's more likely than not, true? A. True."); 111:10-15 (admitting that he cannot determine whether an item is impacted by Chinese drywall without inspecting it); *see also id.*, at *see also* FED. R. EVID. 701(c) (governing admissibility of opinion by a lay witness); FED. R. CIV. PROC. 26(A)(2)(B)(i) (requiring that the expert report include "a complete statement of all opinions the witness will express and the basis and reasons for them")).

[20] Ex. 2, Plaintiff Fact Sheet (8807 S. Claiborne), at pp. 124-25.

Courts frequently exclude evidence of prior lawsuits involving one party to a suit as "substantially more prejudicial than probative" and therefore inadmissible under Federal Rule of Evidence 403. *See McDuffie v. Hillstone Restaurant Grp.*, No. 2017 WL 11540064, at *3 (E.D. La. July 7, 2017). Past verdicts against the Knauf Defendants "are not relevant to whether Defendants breached their duty in this case" and "would have the potential to mislead or confuse the jury." *Id.* So to the extent the Gharibs seek to introduce verdicts in those earlier lawsuits, the Knauf Defendants move to exclude that evidence because it is more prejudicial than probative.

## CONCLUSION

For the foregoing reasons, the Knauf Defendants seek an order preventing the Gharibs from introducing at trial:

(a) Evidence showing "lost value or devaluation" of their properties that was not produced in discovery;

(b) Prejudicial evidence purporting to support "loss of use" damages and any other evidence supporting "loss of use" damages that has not been produced in discovery;

(c) Evidence showing personal property damage that was not produced in discovery or is irrelevant;

(d) Evidence supporting the Gharibs' claim under the LPLA for breach of express warranty;

(e) Evidence of damages to property in areas where they have no evidence of KPT Drywall; and

(f) Evidence of prior liability verdicts against the Knauf Defendants.

[SIGNATURES ON FOLLOWING PAGE]

Respectfully submitted,

**FISHMAN HAYGOOD, LLP**

*/s/ Daniel J. Dysart*
**KERRY J. MILLER (#24562), T.A.**
**PAUL C. THIBODEAUX (#29446)**
**DANIEL J. DYSART (#33812)**
**REBEKKA C. VEITH (#36062)**
**MICHAEL R. DODSON (#37450)**
201 St. Charles Avenue, Suite 4600
New Orleans, LA 70170
Telephone:    504.556.5549
Facsimile:    504.949.8202
Email:        kmiller@fishmanhaygood.com
Email:        pthibodeaux@fishmanhaygood.com
Email:        ddysart@fishmanhaygood.com
Email:        rveith@fishmanhaygood.com
Email:        mdodson@fishmanhaygood.com

*Counsel for Defendants,*
*Knauf Gips KG and*
*Knauf New Building System (Tianjin) Co. Ltd.*
*(f/k/a Knauf Plasterboard (Tianjin) Co., Ltd.)*

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing pleading has been served upon Russ Herman, Plaintiffs' Liaison Counsel, by email, to all parties by electronically uploading the same to LexisNexis File & Serve in accordance with Pre-Trial Order No. 6, individually to pro se claimants via U.S. Mail, and that the foregoing was filed with the Clerk of Court of the United States Court for the Eastern District of Louisiana, on this 28th day of February, 2023.

*/s/ Daniel J. Dysart*
**DANIEL J. DYSART**