UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In Re: **CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION** | MDL 2047 |
| | SECTION "L" |
| **This document relates to:** | JUDGE ELDON FALLON |
| Case No. 20-cv-3264 | MAGISTRATE NORTH |

**MEMORANDUM IN SUPPORT OF DEFENDANTS'
MOTION FOR PARTIAL SUMMARY JUDGMENT**

**MAY IT PLEASE THE COURT:**

In this matter, Plaintiffs Jawal and Fatme Gharib seek to recover damages allegedly arising from Chinese-manufactured drywall installed in two of their properties. The first of these properties is Plaintiffs' two-story residence bearing municipal address 4 Beresford Drive, Metairie, Louisiana 70118 (hereinafter the "Beresford Property"). The second property is a three-story mixed commercial and residential building bearing municipal address 8807 South Claiborne Avenue, New Orleans, Louisiana (hereinafter the "Claiborne Property"). In their operative Amended Complaint, Plaintiffs bring claims against Defendants, Knauf Gips KG and Knauf New Building System (Tianjin) Co. Ltd. ("KPT") (collectively, the "Knauf Defendants") in redhibition and under the Louisiana Products Liability Act ("LPLA"), La. Rev. Stat. § 9:2800.52, *et seq.*, for damages allegedly caused by defective drywall manufactured by the Knauf Defendants (hereinafter, "KPT Drywall") at the two properties. (*See* Amended Complaint, Case 2:20-cv-3264, Doc. 1).

In the instant Motion for Partial Summary Judgment, the Knauf Defendants now ask that the Court dismiss with prejudice (1) Plaintiffs' redhibition claim with respect to the Beresford Property and (2) Plaintiffs' claims for damages to areas of the Beresford and Claiborne Properties not impacted by any alleged KPT Drywall. As further explained herein, Plaintiffs' redhibition claim for damages to the Beresford Property is prescribed pursuant to the 10-year period provided in Louisiana Civil Code article 2534 because the KPT Drywall at the residential property was installed on January 7, 2006, (*see* Exhibit 1, Beresford Property Supplemental Plaintiff Profile Form, at 2), and Plaintiffs did not bring their claims against the Knauf Defendants until January 31, 2016, (*see* Doc. 20020-2). Additionally, because Plaintiffs have asserted that they are entitled to damages to areas of both properties where there is no evidence of KPT Drywall, and because Plaintiffs cannot present competent evidence supporting their claim to damages in these non-affected areas, Defendants ask that the Court dismiss with prejudice any claim Plaintiffs may have for damages beyond the areas where KPT Drywall has been identified—i.e., the first floor of the Beresford Property and Apartments A, B, and C, on the second floor of the Claiborne Property. Accordingly, for these reasons and those more fully explained herein, the Knauf Defendants respectfully request that the Court grant partial summary judgment in their favor and dismiss with prejudice Plaintiffs' redhibition claim with respect to the Beresford Property and any and all claims Plaintiffs may have for damages to non-affected areas of both the Claiborne and Beresford Properties. The Knauf Defendants further ask for any and all relief the Court deems just.

### RELEVANT FACTUAL BACKGROUND

The Gharibs' suit against the Knauf Defendants is part of MDL No. 2047, formed in 2009 to consolidate what were ultimately hundreds of lawsuits involving thousands of plaintiffs who alleged damages associated with Chinese-manufactured drywall. *See In re Chinese Manufactured*

*Prods. Liab. Litig.*, 894 F. Supp. 2d 819, 830 (E.D. La. 2012). Since that consolidation, the Knauf Defendants have participated in extensive discovery—including thousands of depositions and the exchange of millions of documents—and a largescale settlement program (the "Knauf Class Settlement Agreement") that resulted in mediation of over 2,000 homes. The deadline to file claims to the Knauf Class Settlement Agreement was October 25, 2013.

In November 2014, over a year after the October 25, 2013 deadline to participate in the Knauf Class Settlement Agreement and several years after the creation of this MDL, after the Knauf pilot program and after the Knauf supply chain of interlocking class settlements, Elizabeth Bennett and several other individual property owners filed suit against the Knauf Defendants in the Northern District of Alabama (the "*Bennett* Action"). The claims were transferred and consolidated in MDL 2047. Additional claimants, like Plaintiffs in this action, were later added to the *Bennett* Action in MDL 2047.

Plaintiffs Jawal and Fatme Gharib first asserted claims against the Knauf Defendants on January 31, 2016 as part of the *Bennett* Plaintiffs' Second Amended Class Action Complaint. (*See* Docs. 20020, 20020-2). Following substantial pre-trial litigation in the MDL Court, on November 23, 2020, this Court severed Plaintiffs' claims, alongside those of nine other plaintiffs, from the larger *Bennett* Action so that they could file separate amended complaints and proceed independently in their final preparations for trial. (*See* MDL Doc. 22980). Plaintiffs accordingly filed their separate Amended Complaint on December 1, 2020, in the Eastern District of Louisiana. (*See* Case 2:20-cv-3264, Doc. 1). Because Plaintiffs' Amended Complaint added claims not previously asserted in the *Bennett* Action, however, this Court granted Defendants' Motion to Strike the supplemental claims on January 12, 2021 to the extent they did not comply with the Court's prior orders. (*See* Doc. 23055). Accordingly, Plaintiffs' operative Amended Complaint

asserts claims against the Knauf Defendants only for redhibition and under the LPLA. (*See* Case 2:20-cv-3264, Doc. 1; *See* Doc. 21334 at ¶¶ 86-108; Doc. 22925 (limiting Louisiana plaintiffs' claims to redhibition and LPLA claims)).

Most recently, this Court denied Plaintiffs' Motion for Leave to Add Expert Disclosures, wherein Plaintiffs sought to substitute their previous expert, Mr. Macomber, for a new damages expert, David Herring.[1] (*See generally*, Doc. 23349 (Motion to Add Expert Disclosures); Doc. 23358 (Order and Reasons)). Relevant here, Plaintiffs' proposed expert testimony sought to inflate Plaintiffs' damages, in part, by opining on categories of damages not before raised by Plaintiffs' previous expert, such as damages to the second floor of Beresford Property and the first-floor commercial spaces, stairwells, and third floor of the Claiborne Property. (*See generally, id.*; Doc. 23349-11 (David Herring Report)). On February 6, 2023, this Court denied Plaintiffs' Motion, finding the proposed disclosure untimely and unduly prejudicial to the Knauf Defendants. (*See* Doc. 23358). In light of this Court's ruling and because Plaintiffs likely still intend to claim damages exceeding those for which they do not have competent evidence, the Knauf Defendants now move the Court for partial summary judgment on Plaintiffs' claims for damages to areas not shown in their original expert's report to contain KPT.

---

[1] Plaintiffs also previously retained a second expert, Howard Ehrsam, whose report opines only as to the effects of KPT Drywall, *generally*. (*See* Exhibit 9, Deposition of Howard Ehrsam, at 41:3-42:20 (explaining that his opinions are generally referring to what the extent of corrosion can be, but admitting that he "can[not] offer any opinions as to what the extent of corrosion is with respect to the individual property owners in the Bennett case"). Because Mr. Ehrsam was not asked to, and did not, perform an individualized inspection or analysis, however, Mr. Ehrsam cannot offer any opinions as to Plaintiffs' damages or the alleged cause of those damages. *See also id.*, at 44:3-16 ("If I don't know how much and what is in the property, then I wouldn't be able to opine on the effects."); 48:6-22 (explaining that he is not providing an individual causation opinion); 101:1–102:16 (explaining that his opinions would not be indicative of case-specific findings) ("Q. In fact, everything, in terms about your scientific opinions, you can't even say whether it's more likely than not, true? A. True."); 111:10-15 (admitting that he cannot determine whether an item is impacted by Chinese drywall without inspecting it).

I.   **The Gharibs' Claims**

Plaintiffs' operative Amended Complaint alleges that Plaintiffs' only properties containing KPT Drywall are the Beresford Property and Apartments A, B, and C at the Claiborne Property. (*See* Case 2:20-cv-3264, Doc. 1). The relevant facts as to both the Beresford Property and the Claiborne Property are provided below.

   a.   *The Beresford Property.*

The Beresford Property is a two-story home in the Metairie Club Estates subdivision. (*See generally*, Exhibit 1 Beresford Property Plaintiff Profile Form, at 4; Exhibit 3, Excerpts from Deposition of Jawad Gharib (hereinafter "Jawad Gharib Depo."), at 140:3–5). Plaintiffs purchased a vacant lot at the Beresford address in 2003 and subsequently built the Beresford Property, with Mr. Jawad Gharib acting as the contractor for that project. (*See* Exhibit 3, Jawad Gharib Depo., at 126:4-10; 127:13-15). According to Mr. Jawad Gharib, the construction of the Beresford Property was almost complete when Hurricane Katrina struck in 2005, which caused four feet of water to flood the first floor. (*See id.* at 126:11-25; 127:1).

According to Plaintiffs, the Chinese-manufactured drywall was installed on the first floor at the Beresford Property on January 7, 2006 during remediation of the Property after Hurricane Katrina. (Exhibit 2, Beresford Property Supplemental Plaintiff Profile Form, at 2; *see generally,* Exhibit 3, Jawad Gharib Depo., at 126:21-25; 127:6-9). To date, the only place where KPT Drywall has been identified at the Beresford Property, by Plaintiffs or their expert, is in the walls of the first floor of the Property. (*See* Exhibit 3, Jawad Gharib Depo., at 149:16-25 (explaining that he only looked for Chinese-manufactured drywall on the first floor); Exhibit 4, Excerpts from Exhibit C to Macomber Report, at 2 (identifying KPT Drywall in the Kitchen Wall); Exhibit 5, Macomber

Report *in globo*, at 279.[2] Accordingly, because it was alleged that the KPT Drywall was installed after Hurricane Katrina, and only the first-floor drywall was replaced during that time, the Knauf Defendants' expert likewise only examined the first floor of the Beresford Property for KPT Drywall. (*See* Exhibit 6, Excerpt from Phil Adams-Moss Report, at 1 (noting that because "only the ground floor was renovated/repaired [after Hurricane Katrina,] . . . [t]his Xactimate Estimate Report does not include any work for remediation of the 2nd floor of the home.")).

The undisputed evidence shows that only the first floor of the Beresford Property is affected with KPT Drywall, and Plaintiffs do not have evidence to support a claim for damages to the second floor. Accordingly, Plaintiffs' claims for damages to the second floor of the Beresford Property should be dismissed. Moreover, because the undisputed evidence shows that Plaintiffs installed the allegedly defective drywall on January 7, 2006 and did not file suit until January 31, 2016, Plaintiffs' redhibition claim as to the Beresford Property should likewise be dismissed as untimely.

    **b.**    ***The Claiborne Property***

The Claiborne Property is a three-story building housing both commercial and residential units. The first floor of the Claiborne Property contains two commercial spaces: Plaintiffs' laundromat business and a second commercial rental space that, at the time of Plaintiffs' depositions, was being rented to Metro PCS. (*See* Doc. 23349, at 4; Jawad Gharib Depo., at 28:14-23). The second floor of the Claiborne Property contains three residential apartments from which Plaintiffs also derive rental income: Apartments A, B, and C. (*See* Jawad Gharib Depo., at 30:12-

---

[2] Shawn Macomber's expert report was produced while all claims in the *Bennett* Action were consolidated, and it accordingly addresses each of the *Bennett* plaintiffs' claims. For the convenience of the Court, the Knauf Defendants have attached hereto as Exhibit 4 the Gharib-specific pages from Exhibit C to the Macomber report. The entire report, however, is separately attached as Exhibit 5.

19; Exhibit 4, Excerpts from Exhibit C to Macomber Report, at 6-15). The third floor is a finished attic space which serves as additional living quarters. (*See generally,* Doc. 22349, at 4).

According to Plaintiff Jawad Gharib's deposition testimony, the only areas at the Claiborne Property to allegedly contain Chinese-manufactured drywall are Apartments A, B, and C. (*See* Jawad Gharib Depo., at 121:6-19). Moreover, at his deposition, Mr. Gharib was asked specifically whether there was Chinese-manufactured drywall in the commercial spaces of the Claiborne Property, to which he answered: "No, there's not." (*See id.*, at 121:6-12; *see also id.*, at 121:13-19 ("Q. Okay. So there's no Chinese drywall in the space where all of the washing machines are located; right? A. No. Q. No Chinese drywall in the space where all the dryers are located; right? A. No.")). This conclusion was subsequently confirmed by Plaintiffs' own expert who allegedly only found KPT Drywall in the kitchen ceiling of Apartment A, the bedroom wall of Apartment B, and the hallway wall of Apartment C. (*See* Exhibit 4, Excerpts from Exhibit C to Macomber Report, at 6, 8, 10; Exhibit 5, Macomber Report, at 283, 285, 287).[3] Notably, because of the lack of KPT Drywall and evidence of damage in the commercial spaces, Plaintiffs' expert even excluded the square footage for the first-floor commercial space in his RS Means calculation. (*See* Exhibit 8, Excerpts from Macomber Deposition (hereinafter "Macomber Depo."), at 110:5–25; 111:1-6). It is simply undisputed that there is no evidence of KPT Drywall in the commercial spaces on the first floor of the Claiborne Property.

Nevertheless, despite the complete lack of evidence of KPT Drywall in the commercial spaces, the only evidence of personal property damages Plaintiffs have submitted in this case relates to property in the first-floor laundromat. Indeed, attached to the relevant Plaintiff Fact Sheet is an invoice from November 2006 for $133,875.97, representing the price paid for 20 washing

---

[3] There is likewise no evidence or allegation of Chinese-manufactured drywall in the attic walls or the living space on the third floor. *See id.*

Page 7 of 14

machines, 12 dryers, and several laundromat-related accessories and furnishings. (*See* Exhibit 7, Claiborne Property Plaintiff Fact Sheet at pp. 124-25). As already explained, Plaintiffs do not have any evidence to support this or any other claim for damages to property on the first floor of the Claiborne Property. Thus, to the extent Plaintiffs claim damages related to the first floor of the Claiborne Property, such claims should be dismissed with prejudice.

## LEGAL STANDARD

Summary judgment is required if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "A genuine dispute of material fact exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Bennett v. Hartford Ins. Co. of Midwest*, 890 F.3d 597, 604 (5th Cir. 2018) (internal quotation marks and citations omitted). When seeking summary judgment, the movant bears the initial responsibility of demonstrating the absence of an issue of material fact with respect to those issues on which the movant bears the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). However, where the non-movant bears the burden of proof at trial, the movant may merely point to an absence of evidence, thus shifting to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial. *Id.* at 322; *see also Moody v. Jefferson Parish Sch. Bd.*, 2 F.3d 604, 606 (5th Cir. 1993).

On a motion for summary judgment, "[a]lthough 'the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor,' summary judgment remains appropriate if the non-movant's evidence is 'merely colorable' or 'not significantly probative.'" *Certain Underwriters of Lloyd's of London v. Lowen Valley View, L.L.C.*, 892 F.3d 167, 170 (5th Cir. 2018) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). "Only when 'there

is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party' is a full trial on the merits warranted." *Lindsey v. Sears Roebuck & Co.*, 16 F.3d 616, 618 (5th Cir. 1994) (quoting *Anderson*, 477 U.S. at 249).

## LAW & ARGUMENT

In their Motion for Partial Summary Judgment, the Knauf Defendants ask that the Court dismiss Plaintiffs' Beresford Property-related redhibition claim and Plaintiffs' claims for damages to areas of the Beresford and Claiborne Properties where they cannot present competent evidence of KPT Drywall. Pursuant to Louisiana Civil Code article 2334, Plaintiffs' redhibition claim against the Knauf Defendants had to have been brought within ten years from their purchase of the KPT Drywall. *See* LA. CIV. CODE art. 2534(B). Because Plaintiffs' Beresford Property-related redhibition claim was not filed until January 31, 2016, (*see* Doc. 20020-2)—over ten years after the date the KPT Drywall was allegedly installed at the property, (*see* Exhibit 1, Beresford Property Supplemental Plaintiff Profile Form, at 2 (providing an installation date of January 7, 2006)), Plaintiffs' claim for damages in redhibition at the Beresford Property is prescribed. Additionally, because Plaintiffs have claimed damages to areas of their properties for which they have no evidence of KPT Drywall, the Knauf Defendants ask that these unsupported claims be dismissed with prejudice. For these reasons and those more fully explained herein, the Knauf Defendants ask that their Motion be granted.

**I.     Plaintiffs' claim for damages in redhibition at the Beresford Property is prescribed.**

Louisiana Civil Code article 2534 provides for a maximum ten-year limit on the time to bring a redhibition claim against sellers "who knew, or [are] presumed to have known, of the existence of the defect in the thing sold," such as manufacturers. *See* LA CIV. CODE arts. 2534(B), 2545. Indeed, following the 1993 Revision to Article 2534, "an action in redhibition prescribes ten

years from the time of perfection of the contract *regardless of whether the seller was in good or bad faith."* (*See id.*, at. cmt. (b) (citing LA. CIV. CODE art. 3499) (emphasis added)). Accordingly, Comment (b) to the Article made clear that, although Article 2534(B) provided for a period of one year from the discovery of the defect to bring a claim in redhibition, the time to discover the defect was not unlimited, and the action remained subject to the ten-year time limit provided for in Louisiana Civil Code Article 3499. *See Grenier v. Med. Eng'g Corp.,* 243 F.3d 200, 206 (5th Cir. 2001) (Jolly, J.) (finding that Revision Comment (b) to Louisiana Civil Code article 2534 created a ten-year prescriptive period on all redhibitions claims and addressing whether "this new, ten-year prescription period applie[d] retroactively to contracts formed before the [1995] effective date of the amendment"); *Leo v. Jeld-Wen, Inc.,* No. CV 16-00605-BAJ-EWD, 2018 WL 2187408, at *3 n.2 (M.D. La. May 11, 2018) (Jackson, J.) ("*Beth Israel* relied on [the pre-1995 version of] Louisiana Civil Code article 2546, which allowed for an unlimited amount of time to discover the defect. . . . *Article 2534, in conjunction with article 3499, now imposes an absolute ten-year limit on bringing a suit in redhibition."* (emphasis added) (citing *Beth Israel v. Bartley, Inc.*, 579 So. 2d 1066, 1074 (La. App. 4 Cir. 1991); *Tiger Bend, L.L.C. v. Temple-Inland, Inc.,* 56 F. Supp. 2d 686, 689 (M.D. La. 1999 (Polozola, J).)); *see also Tiger Bend*, 56 F. Supp. at 690-92.

In 2021, in order to clarify that the one-year discovery rule in a redhibition action against a manufacturer is indeed subject to an outer ten-year time limit, the Louisiana Legislature amended Louisiana Civil Code article 2534(B) to explicitly provide that an action for redhibition against a manufacturer "prescribes in one year from the day the defect was discovered by the buyer *or ten years from the perfection of the contract of sale, whichever occurs first.*" (*See* LA. CIV. CODE art. 2534(B) (emphasis added)); *see also id.* at cmt. (c) (2021).[4] Following the amendment, there can

---

[4] As evidenced from Comment (c) to the 2021 Revision—as well as the several pre-revision cases cited herein recognizing the ten-year limit on actions in redhibition—the 2021 amendment was enacted merely to clarify the correct

simply be no question that redhibition claims not brought within ten years of the contract of sale are subject to dismissal.[5] Here, Plaintiffs' claim for damages in redhibition at the Beresford Property was filed on January 31, 2016, (*see* Doc. 20020-2), which is over ten years after the KPT Drywall was allegedly installed at the property, (*see* Exhibit 1, Beresford Property Supplemental Plaintiff Profile Form, at 2). Plaintiffs' claim is unambiguously prescribed, and Defendants' Motion for Partial Summary Judgment should be granted.

II. **Plaintiffs' claims for damages to areas of the Beresford and Claiborne Properties for which there is no evidence of KPT Drywall should be dismissed with prejudice.**

There is no genuine issue of material fact as to which areas of Plaintiffs' two properties contain evidence of KPT Drywall. With respect to the Beresford Property, it is only the first floor. (*See* Exhibit 3, Jawad Gharib Depo., at 149:16-25 (explaining that he only found Chinese-manufactured drywall on the first floor); Exhibit 4, Excerpts from Exhibit C to Macomber Report, at 2 (allegedly identifying KPT Drywall only in the Kitchen Wall); Exhibit 6, Excerpt from Phil Adams-Moss Report, at 1 (noting that because "only the ground floor was renovated/repaired [after Hurricane Katrina,] . . . [t]his Xactimate Estimate Report does not include any work for remediation of the 2nd floor of the home.")). With respect to the Claiborne Property, the only evidence of KPT Drywall is in Apartments A, B, and C on the second floor. (*See* Jawad Gharib Depo., at 121:6-19 (stating that there is no drywall in the commercial spaces of the Claiborne Property); Exhibit 4, Excerpts from Exhibit C to Macomber Report, at 6, 8, 10) (allegedly noting the presence of KPT Drywall only in the kitchen ceiling of Apartment A, the bedroom wall of Apartment B, and the hallway wall of Apartment C); Exhibit 8, Macomber Depo., at 110:5–25;

---

interpretation of the existing law. *See id.* at cmt. (c) (2021) ("This revision also *provides clarity* regarding the prescriptive period for bad faith sellers." (emphasis added)).

[5] The 2021 amendment likewise clarified that the ten-year period was not subject to tolling under the doctrine of *contra non valentum*. *See also Tiger Bend*, 56 F. Supp. at 691 (reasoning that application of *contra non valentum* would render Comment (b) "simply superfluous and unnecessary").

111:1-6). Plaintiffs simply cannot present any evidence of KPT Drywall in the second floor of the Beresford Property or the commercial spaces, stairwell, or third floor of the Claiborne Property that would support a related claim for damages.

Additionally, Plaintiffs do not have any evidence to support a claim that KPT Drywall on one floor of the Gharibs' property caused any alleged property damage on separate floors. Indeed, such an opinion is one based on "scientific, technical, or other specialized knowledge," and must therefore be presented through an expert witness. *See* FED. R. EVID. 701(c) (governing admissibility of opinion by a lay witness). Plaintiffs' expert, Mr. Macomber, however, has presented no such opinion in his report regarding the claimed damages at the Gharibs' properties and thus cannot be expected to testify on such matters at trial.[6] (*See* Exhibit 8, Macomber Depo., at 110:5–25; 111:1-6) (explaining that he specifically excluded the commercial spaces from his damages calculation for lack of evidence of KPT Drywall); *see also* FED. R. CIV. PROC. 26(A)(2)(B)(i) (requiring that the expert report include "a complete statement of all opinions the witness will express and the basis and reasons for them")). To the extent Plaintiffs assert claims for damages to areas not shown to contain KPT Drywall,[7] such claims should be dismissed with prejudice.

---

[6] As noted previously, Plaintiffs' second expert, Mr. Ehrsam, likewise cannot speak to the cause of Plaintiffs' damages as he performed no individual analysis or inspection and was not asked to review individual tests or reports in forming his generalized opinion. (*See* Exhibit 9, Deposition of Howard Ehrsam, at 41:3-42:20 (admitting that he "can[not] offer any opinions as to what the extent of corrosion is with respect to the individual property owners in the *Bennett* case."); *see also id.*, at 48:6-22 ("[F]or the homes that you inspected personally, are you providing any expert opinion as to whether any particular individual sustained property damage due to KPT Chinese drywall? A. I'm opinion to the generic effects of KPT drywall on property in general, not at any particular property. Q. Okay, So the answer to that is you are not providing any individual causation opinions with respect to individual properties that may have KPT drywall in it? A. Correct. Q. Thank you, sir. You are not offering any opinions as to any individual damages that were allegedly sustained due to the presence of uppercase KPT drywall, true? A. True."). Mr. Ehrsam accordingly cannot offer any opinions as to Plaintiffs' damages or the alleged cause of those damages.

[7] Again, the areas for which Plaintiffs have asserted entitlement to damages and for which there is no evidence of KPT Drywall include: the first floor, stairwell, and the third floor of the Claiborne Property, and the second floor of Beresford Property.

## Conclusion

For the foregoing reasons, the Knauf Defendants ask that the Court grant their Motion for Partial Summary Judgment and dismiss with prejudice (1) Plaintiffs' redhibition claim with respect to the Beresford Property and (2) Plaintiffs' claims for damages to areas of the Beresford and Claiborne Properties for which there is no evidence of KPT Drywall. The Knauf Defendants further request any and all other relief the Court deems just.

Respectfully submitted,

**FISHMAN HAYGOOD, LLP**

*/s/ Daniel J. Dysart*
**KERRY J. MILLER (#24562), T.A.**
**PAUL C. THIBODEAUX (#29446)**
**DANIEL J. DYSART (#33812)**
**REBEKKA C. VEITH (#36062)**
**MICHAEL R. DODSON (#37450)**
201 St. Charles Avenue, Suite 4600
New Orleans, LA 70170
Telephone: 504.556.5549
Facsimile: 504.949.8202
Email: kmiller@fishmanhaygood.com
Email: pthibodeaux@fishmanhaygood.com
Email: ddysart@fishmanhaygood.com
Email: rveith@fishmanhaygood.com
Email: mdodson@fishmanhaygood.com

*Counsel for Defendants,*
*Knauf Gips KG and*
*Knauf New Building System (Tianjin) Co. Ltd.*
*(f/k/a Knauf Plasterboard (Tianjin) Co., Ltd.)*

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing pleading has been served upon Russ Herman, Plaintiffs' Liaison Counsel, by email, to all parties by electronically uploading the same to LexisNexis File & Serve in accordance with Pre-Trial Order No. 6, individually to pro se claimants via U.S. Mail, and that the foregoing was filed with the Clerk of Court of the United States Court for the Eastern District of Louisiana, on this 28th day of February, 2023.

/s/ Daniel J. Dysart
**DANIEL J. DYSART**