UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA


CASE NO.: 14-CV-2722

IN RE:  CHINESE-MANUFACTURED DRYWALL PRODUCTS

LIABILITY LITIGATION

_____

Relating to:

ELIZABETH BENNETT, et al.

v.

KNAUF VERWALTUNGSGESELLSCHAFT, KG, et al.

_____

DEPOSITION OF HOWARD EHRSAM


February 10, 2020

9:54 a.m. to 2:20 p.m.

EXHIBIT 9

```
 1                        I N D E X
 2
 3   WITNESS:
 4   HOWARD EHRSAM
 5                  DIRECT   CROSS   REDIRECT   RECROSS
 6   BY: MR. DYSART    4                166
 7       MR. DOYLE              167
 8                       E X H I B I T S
 9   EXHIBIT NO.         DESCRIPTION              PAGE NO.
10   Exhibit 1           Notice of depo              4
11   Exhibit 2           Witness's report            7
12   Exhibit 3           Remediation guidance        7
13   Exhibit 4           Drywall indicia guide      13
14   Exhibit 5           CDS info                   66
15   Exhibit 6           AIHA document              95
16
17              S T I P U L A T I O N S
18      It is hereby stipulated and agreed by and between
19   counsel present for the respective parties, and the
20   deponent, that the reading and signing of the
21   deposition are hereby waived.
22
23
24
25
```

```
 1   APPEARANCES
 2   APPEARING ON BEHALF OF THE PLAINTIFF:
 3   JAMES V. DOYLE, ESQUIRE
     THE DOYLE LAW FIRM
 4   2100 Southbridge Parkway, Suite 650
     Birmingham, AL  35209
 5   jim.doyle@doylefirm.com
 6
 7   APPEARING ON BEHALF OF THE DEFENDANTS:
 8   DANIEL J. DYSART, ESQUIRE
     FISHMAN HAYGOOD, LLP
 9   201 St. Charles Avenue, 46th Floor
     New Orleans, LA  70170
10   ddysart@fishmanhaygood.com
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

```
 1
 2                P R O C E E D I N G S
 3                      ********
 4          THE COURT REPORTER:  Do you solemnly swear
 5     or affirm your testimony will be the truth, the
 6     whole truth, and nothing but the truth?
 7          THE WITNESS:  I do.
 8                     HOWARD EHRSAM,
 9     having been first duly sworn, was examined and
10                   testified as follows:
11   DIRECT EXAMINATION BY MR. DYSART:
12        Q.   Good morning, Mr. Ehrsam.  We just met a
13   moment ago.  My name is Danny Dysart and I represent
14   Knauf Gips and KPT in this case.
15             You're here for your expert deposition; is
16   that right, sir?
17        A.   Yes.
18        Q.   All right.  I'll hand you what I marked as
19   Exhibit Number 1 to the deposition.
20     (Whereupon, Exhibit 1 is marked for Identification.)
21        Q.   Please let me know if you recognize that
22   document.
23        A.   Yes.
24        Q.   Is that the notice of deposition for your
25   deposition here today?
```

```
 1   have it in front of you.
 2        A.   Okay.
 3        Q.   So we talked about, in terms of one of your
 4   scopes for retention, "Whether defective Knauf drywall
 5   produces gasses and what gasses are emitted."
 6        A.   Yes.
 7        Q.   "Whether Knauf drywall off-gassing causes
 8   corrosion in the home and the extent of that
 9   corrosion," you see that?
10        A.   Yes.
11        Q.   And when you say, "Whether defective Knauf
12   drywall off-gassing causes corrosion" again, we're
13   talking about KPT drywall, uppercase, right?
14        A.   Yes.
15        Q.   When you say it causes corrosion, is it that
16   it possibly could cause corrosion depending on the
17   various factors we discussed?
18        A.   Clarify the question.
19        Q.   Yeah, you say, "Whether defective Knauf
20   drywall off-gassing causes corrosion in the home and
21   the extent of that corrosion."  And based on all the
22   factors we just discussed is that that it's possible
23   to cause corrosion in the home dependent on those
24   factors?
25        A.   I'm opining that -- making these statements
```

```
 1   that it causes corrosion, the KPT causes corrosion.
 2        Q.   Okay.  And the extent of that corrosion?
 3        A.   You could say that, yes.
 4        Q.   Okay.  How is it that you can determine the
 5   extent of corrosion in a property based on these
 6   factors without having investigating and inspecting
 7   those individual items?
 8        A.   This is generically speaking.
 9        Q.   Okay.
10        A.   So --
11        Q.   So I guess my question is, I'm trying to
12   clarify what the scope is, in terms of the extent of
13   the corrosion, you're talking about in general what
14   the extent can be?
15        A.   Yes.
16        Q.   Okay.  But you can't offer any opinions as
17   to what the extent of the corrosion is with respect to
18   the individual property owners in the Bennett case, is
19   that true?
20        A.   True.
21        Q.   Okay.  The same would be the concern for
22   number 3 in your retention scope in terms of whether
23   there's been damage to components in a home, is that
24   true -- let me rephrase the question.
25             In terms of you indicate that "Whether
```

```
 1   plaintiffs in this case?
 2        A.   The ones I have not inspected, correct.
 3        Q.   Thank you, sir.  And, again, that's
 4   consisted with the next line in which you state is
 5   "typical components."  So what you can say in terms of
 6   what typically may occur in certain types of
 7   properties and things they may see, you can't say with
 8   any degree of scientific certainty, as an expert,
 9   whether or the extent that any of these items have
10   been affected, true?
11        A.   If I don't know how much and what's in the
12   property, then I wouldn't be able to opine on the
13   effects.
14        Q.   Right.  And you have not done that in this
15   case, true?
16        A.   Not for the ones I haven't inspected.
17        Q.   The next one, number 4, "Whether defective
18   Knauf drywall causes damage to personal property in
19   the home and which items or contents are affected."
20   Going back to your answer just a second ago, from ones
21   that you physically inspected, if you looked at those
22   individual items, you may be able to provide some
23   colors in terms of whether those items have been
24   affected by Chinese drywall, true?
25        A.   Yes.
```

```
 1   your report.  Again, you are not providing any expert
 2   opinions with respect to whether an individual's
 3   property sustained damage because of Chinese drywall,
 4   true -- excuse me, because of KPT Chinese drywall?
 5        A.   I don't understand the question.
 6        Q.   But for the homes that you inspected
 7   personally, are you providing any expert opinion as to
 8   whether any particular individual sustained property
 9   damage due to KPT Chinese drywall?
10        A.   I'm opining to the generic effects of KPT
11   drywall on property in general, not any particular
12   property.
13        Q.   Okay.  So the answer to that is you are not
14   providing any individual causation opinions with
15   respect to individual properties that may have KPT
16   drywall in it?
17        A.   Correct.
18        Q.   Thank you, sir.
19             You are not offering any opinions as to any
20   individual damages that were allegedly sustained due
21   to the presence of uppercase KPT drywall, true?
22        A.   True.
23        Q.   Are you offering any opinions as to whether
24   any individual plaintiff sustained health effects due
25   to the presence of KPT Chinese drywall?
```

```
 1      Q.   In terms of the corrosive effects of drywall
 2  in various components and systems, that all depends on
 3  a case-by-case basis, true?
 4      A.   Yes.
 5      Q.   And that is not something that you have done
 6  in this case, true?
 7      A.   True.
 8      Q.   And so when you say, "It includes the
 9  various components that are affected," what you mean
10  based on that prior testimony is what could
11  potentially be affected due to the presence of upper
12  KPT -- upper KPT drywall, true?
13      A.   True.
14      Q.   And in terms of the "Secondary impacts
15  developed from the presence of corroded components,"
16  if there are corroded components, those secondary
17  impacts are based on historically what you've seen
18  from certain homeowners but would not be indicative on
19  a case-by-case basis in this case, true?
20      A.   Say that again.
21      Q.   Okay.  I'll ask a different way.
22           The secondary impacts developed from the
23  alleged presence of corroded components, your opinions
24  are based on what you've seen in the past with respect
25  to certain other properties?
```

```
 1        A.    Correct.
 2        Q.    And those would not be indicative of the
 3   individual plaintiffs in this case, true?
 4        A.    Not necessarily.
 5        Q.    Can you -- you cannot state with any degree
 6   of certainty that those secondary impacts that you've
 7   seen in the past also apply with respect to the
 8   individual plaintiffs in this case, true?
 9        A.    I guess.
10        Q.    My point is that it can potentially apply,
11   but you can't --
12        A.    But I can't state with certainty, true.
13        Q.    In fact, everything, in terms about your
14   scientific opinions, you can't even say whether it's
15   more likely than not, true?
16        A.    True.
17        Q.    On page 6 of your report, sir, under the
18   section entitled section 5, Summary of KPT Defects and
19   Off-gassing.  The first one states, "The sources of
20   the off-gassing that are present in KPT drywall are
21   not present in domestic drywall."  You see that, sir?
22        A.    I know what you're talking about.  I don't
23   see it right now.
24        Q.    It's the top one on the page.
25        A.    Got it.
```

```
 1        A.    These photographs came from properties with
 2   Chinese drywall that we determined to be the effect of
 3   the drywall.
 4        Q.    Okay.  But we just discussed, in terms of
 5   the faucet head and the fixture, that you said you
 6   were unable to determine the cause of that corrosion.
 7        A.    Because there's a mix.  There's black
 8   pitting and then there's the green corrosion, so this
 9   is a combination of the two.
10        Q.    Okay.  Again, my question is in terms of
11   these items, or any item, you can't determine whether
12   an item is impacted by corrosive Chinese drywall
13   without having physically inspected that item or
14   viewing it; is that accurate?
15        A.    True.
16        Q.    Page 6 of your report, sir, second to last
17   paragraph, midway down.  You have a statement in
18   there, based on your history "KPT drywall samples used
19   as comparison have been on the more extreme end of
20   corrosiveness when compared to other types."
21        A.    Um-hum.
22        Q.    What other types are you talking about, are
23   you talking about domestic types that may have
24   corrosion?
25        A.    No.
```

```
 1                  CERTIFICATE OF REPORTER
 2
 3   STATE OF FLORIDA
 4   COUNTY OF PALM BEACH
 5
 6            I, JULIE ANDOLPHO, FPR, Court Reporter and
 7   Notary Public, State of Florida, CERTIFY I was
 8   authorized to and did stenographically report the
 9   deposition of HOWARD EHRSAM; that a review of the
10   transcript WAS NOT requested; and the foregoing
11   transcript, page 1 through page 173, is a true and
12   accurate record of my stenographic notes.
13            I further certify that I am not a relative,
14   employee, attorney, or counsel of any of the parties,
15   nor am I a relative or employee of any of the parties'
16   attorney or counsel connected with the action, nor am
17   I financially interested in the action.
18            Dated this 21st day of February, 2020.
19
20
21
22   _____
23   JULIE ANDOLPHO, FPR
     STENOGRAPHIC COURT REPORTER
24
25
```