UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In Re: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL 2047 |
| | SECTION "L" |
| This document relates to: | JUDGE ELDON FALLON |
| Case No. 20-cv-3264 | MAGISTRATE NORTH |

STATEMENT OF MATERIAL FACTS
IN SUPPORT OF THE KNAUF DEFENDANTS'
MOTION FOR PARTIAL SUMMARY JUDGMENT

**MAY IT PLEASE THE COURT:**

Defendants, Knauf Gips KG and Knauf New Building System (Tianjin) Co. Ltd. ("KPT") (collectively, the "Knauf Defendants"), through undersigned counsel and in accordance with Local Rule 56.1, respectfully submit the following statement of material facts which present no genuine issue:

1. The Gharibs' suit against the Knauf Defendants is part of MDL No. 2047, formed in 2009 to consolidate what were ultimately hundreds of lawsuits involving thousands of plaintiffs who alleged damages associated with Chinese-manufactured drywall. *See In re Chinese Manufactured Prods. Liab. Litig.*, 894 F. Supp. 2d 819, 830 (E.D. La. 2012).

2. Since that consolidation, the Knauf Defendants have participated in extensive discovery—including thousands of depositions and the exchange of millions of documents—and a largescale settlement program (the "Knauf Class Settlement Agreement") that resulted in mediation of over 2,000 homes.

1

3. The deadline to file claims to the Knauf Class Settlement Agreement was October 25, 2013.

4. In November 2014, over a year after the October 25, 2013 deadline to participate in the Knauf Class Settlement Agreement and several years after the creation of this MDL, after the Knauf pilot program and after the Knauf supply chain of interlocking class settlements, Elizabeth Bennett and several other individual property owners filed suit against the Knauf Defendants in the Northern District of Alabama (the "*Bennett* Action").

5. The claims were transferred and consolidated in MDL 2047. Additional claimants, like Plaintiffs in this action, were later added to the *Bennett* Action in MDL 2047.

6. Plaintiffs Jawal and Fatme Gharib first asserted claims against the Knauf Defendants on January 31, 2016 as part of the *Bennett* Plaintiffs' Second Amended Class Action Complaint. (*See* Docs. 20020, 20020-2).

7. Following substantial pre-trial litigation in the MDL Court, on November 23, 2020, this Court severed Plaintiffs' claims, alongside those of nine other plaintiffs, from the larger *Bennett* Action so that they could file separate amended complaints and proceed independently in their final preparations for trial. (*See* MDL Doc. 22980).

8. Plaintiffs accordingly filed their separate Amended Complaint on December 1, 2020, in the Eastern District of Louisiana. (*See* Case 2:20-cv-3264, Doc. 1).

9. Because Plaintiffs' Amended Complaint added claims not previously asserted in the *Bennett* Action, however, this Court granted Defendants' Motion to Strike the supplemental claims on January 12, 2021 to the extent they did not comply with the Court's prior orders. (*See* Doc. 23055).

10. Accordingly, Plaintiffs' operative Amended Complaint asserts claims against the Knauf Defendants only for redhibition and under the LPLA. (*See* Case 2:20-cv-3264, Doc. 1; *See* Doc. 21334 at ¶¶ 86-108; Doc. 22925 (limiting Louisiana plaintiffs' claims to redhibition and LPLA claims)).

11. Most recently, this Court denied Plaintiffs' Motion for Leave to Add Expert Disclosures, wherein Plaintiffs sought to substitute their previous expert, Mr. Macomber, for a new damages expert, David Herring. (*See generally*, Doc. 23349 (Motion to Add Expert Disclosures); Doc. 23358 (Order and Reasons)).

12. Plaintiffs also previously retained a second expert, Howard Ehrsam, whose report opines only as to the effects of KPT Drywall, generally. (*See* Exhibit 9, Deposition of Howard Ehrsam, at 41:3-42:20 (explaining that his opinions are generally referring to what the extent of corrosion can be, but admitting that he "can[not] offer any opinions as to what the extent of corrosion is with respect to the individual property owners in the Bennett case").

13. Because Mr. Ehrsam was not asked to, and did not, perform an individualized inspection or analysis, however, Mr. Ehrsam cannot offer any opinions as to Plaintiffs' damages or the alleged cause of those damages. *See also id.*, at 44:3-16 ("If I don't know how much and what is in the property, then I wouldn't be able to opine on the effects."); 48:6-22 (explaining that he is not providing an individual causation opinion); 101:1–102:16 (explaining that his opinions would not be indicative of case-specific findings) ("Q. In fact, everything, in terms about your scientific opinions, you can't even say whether it's more likely than not, true? A. True."); 111:10-15 (admitting that he cannot determine whether an item is impacted by Chinese drywall without inspecting it).

14. Mr. Ehrsam performed no individual analysis or inspection and was not asked to review individual tests or reports in forming his generalized opinion. (*See* Exhibit 9, Deposition of Howard Ehrsam, at 41:3-42:20 (admitting that he "can[not] offer any opinions as to what the extent of corrosion is with respect to the individual property owners in the Bennett case."); *see also id.*, at 48:6-22 ("[F]or the homes that you inspected personally, are you providing any expert opinion as to whether any particular individual sustained property damage due to KPT Chinese drywall? A. I'm opinion to the generic effects of KPT drywall on property in general, not at any particular property. Q. Okay, So the answer to that is you are not providing any individual causation opinions with respect to individual properties that may have KPT drywall in it? A. Correct. Q. Thank you, sir. You are not offering any opinions as to any individual damages that were allegedly sustained due to the presence of uppercase KPT drywall, true? A. True.").

15. Relevant here, Plaintiffs' proposed expert testimony sought to inflate Plaintiffs' damages, in part, by opining on categories of damages not before raised by Plaintiffs' previous expert, such as damages to the second floor of Beresford Property and the first-floor commercial spaces, stairwells, and third floor of the Claiborne Property. (*See generally, id.*; Doc. 23349-11 (David Herring Report)).

16. On February 6, 2023, this Court denied Plaintiffs' Motion, finding the proposed disclosure untimely and unduly prejudicial to the Knauf Defendants. (*See* Doc. 23358).

17. Plaintiffs' operative Amended Complaint alleges that Plaintiffs' only properties containing KPT Drywall are the Beresford Property and Apartments A, B, and C at the Claiborne Property. (*See* Case 2:20-cv-3264, Doc. 1).

4

18. The Beresford Property is a two-story home in the Metairie Club Estates subdivision. (*See generally*, Exhibit 2 Beresford Property Plaintiff Profile Form, at 4; Exhibit 3, Excerpts from Deposition of Jawad Gharib (hereinafter "Jawad Gharib Depo."), at 140:3–5).

19. Plaintiffs purchased a vacant lot at the Beresford address in 2003 and subsequently built the Beresford Property, with Mr. Jawad Gharib acting as the contractor for that project. (*See* Exhibit 3, Jawad Gharib Depo., at 126:4-10; 127:13-15).

20. According to Mr. Jawad Gharib, the construction of the Beresford Property was almost complete when Hurricane Katrina struck in 2005, which caused four feet of water to flood the first floor. (*See id.* at 126:11-25; 127:1).

21. According to Plaintiffs, the Chinese-manufactured drywall was installed on the first floor at the Beresford Property on January 7, 2006 during remediation of the Property after Hurricane Katrina. (Exhibit 1, Beresford Property Supplemental Plaintiff Profile Form, at 2; *see generally,* Exhibit 3, Jawad Gharib Depo., at 126:21-25; 127:6-9).

22. To date, the only place where KPT Drywall has been identified at the Beresford Property, by Plaintiffs or their expert, is in the walls of the first floor of the Property. (*See* Exhibit 3, Jawad Gharib Depo., at 149:16-25 (explaining that he only looked for Chinese-manufactured drywall on the first floor); Exhibit 4, Excerpts from Exhibit C to Macomber Report, at 2 (identifying KPT Drywall in the Kitchen Wall); Exhibit 5, Macomber Report *in globo*, at 279.

23. Accordingly, because it was alleged that the KPT Drywall was installed after Hurricane Katrina, and only the first-floor drywall was replaced during that time, the Knauf Defendants' expert likewise only examined the first floor of the Beresford Property for KPT Drywall. (*See* Exhibit 6, Excerpt from Phil Adams-Moss Report, at 1 (noting that because "only

5

the ground floor was renovated/repaired [after Hurricane Katrina,] . . . [t]his Xactimate Estimate Report does not include any work for remediation of the 2nd floor of the home.")).

24. The undisputed evidence shows that only the first floor of the Beresford Property is affected with KPT Drywall, and Plaintiffs do not have evidence to support a claim for damages to the second floor.

25. The Claiborne Property is a three-story building housing both commercial and residential units. The first floor of the Claiborne Property contains two commercial spaces: Plaintiffs' laundromat business and a second commercial rental space that, at the time of Plaintiffs' depositions, was being rented to Metro PCS. (*See* Doc. 23349, at 4; Jawad Gharib Depo., at 28:14-23).

26. The second floor of the Claiborne Property contains three residential apartments from which Plaintiffs also derive rental income: Apartments A, B, and C. (*See* Jawad Gharib Depo., at 30:12-19).

27. The third floor is a finished attic space which serves as additional living quarters. (*See generally,* Doc. 22349, at 4).

28. According to Plaintiff Jawad Gharib's deposition testimony, the only areas at the Claiborne Property to allegedly contain Chinese-manufactured drywall are Apartments A, B, and C. (*See* Jawad Gharib Depo., at 121:6-19).

29. Moreover, at his deposition, Mr. Gharib was asked specifically whether there was Chinese-manufactured drywall in the commercial spaces of the Claiborne Property, to which he answered: "No, there's not." (*See id.*, at 121:6-12; *see also id.*, at 121:13-19 ("Q. Okay. So there's no Chinese drywall in the space where all of the washing machines are located; right? A. No. Q. No Chinese drywall in the space where all the dryers are located; right? A. No.")).

30. This conclusion was subsequently confirmed by Plaintiffs' own expert who allegedly only found KPT Drywall in the kitchen ceiling of Apartment A, the bedroom wall of Apartment B, and the hallway wall of Apartment C. (*See* Exhibit 4, Excerpts from Macomber Report, at 6, 8, 10; Exhibit 5, Macomber Report, at 283, 285, 287).

31. There is likewise no evidence or allegation of Chinese-manufactured drywall in the attic walls or the living space on the third floor. *See id.*

32. Notably, because of the complete lack of KPT Drywall and evidence of damage in the commercial spaces, Plaintiffs' expert even excluded the square footage for the first-floor commercial space in his RS Means calculation. (*See* Exhibit 8, Excerpts from Macomber Deposition ("Macomber Depo."), at 110:5–25; 111:1-6).

33. The only evidence of personal property damages Plaintiffs have submitted in this case relates to property in the first-floor laundromat. Attached to the relevant Plaintiff Fact Sheet is an invoice from November 2006 for $133,875.97, representing the price paid for 20 washing machines, 12 dryers, and several laundromat-related accessories and furnishings. (*See* Exhibit 7, Claiborne Property Plaintiff Fact Sheet at pp. 124-25).

[SIGNATURES ON FOLLOWING PAGE]

Respectfully submitted,

**FISHMAN HAYGOOD, LLP**

*/s/ Daniel J. Dysart*
**KERRY J. MILLER (#24562), T.A.**
**PAUL C. THIBODEAUX (#29446)**
**DANIEL J. DYSART (#33812)**
**REBEKKA C. VEITH (#36062)**
**MICHAEL R. DODSON (#37450)**
201 St. Charles Avenue, Suite 4600
New Orleans, LA 70170
Telephone: 504.556.5549
Facsimile: 504.949.8202
Email: kmiller@fishmanhaygood.com
Email: pthibodeaux@fishmanhaygood.com
Email: ddysart@fishmanhaygood.com
Email: rveith@fishmanhaygood.com
Email: mdodson@fishmanhaygood.com

*Counsel for Defendants,*
*Knauf Gips KG and*
*Knauf New Building System (Tianjin) Co. Ltd.*
*(f/k/a Knauf Plasterboard (Tianjin) Co., Ltd.)*

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing pleading has been served upon Russ Herman, Plaintiffs' Liaison Counsel, by email, to all parties by electronically uploading the same to LexisNexis File & Serve in accordance with Pre-Trial Order No. 6, individually to pro se claimants via U.S. Mail, and that the foregoing was filed with the Clerk of Court of the United States Court for the Eastern District of Louisiana, on this 28th day of February, 2023.

*/s/ Daniel J. Dysart*
**DANIEL J. DYSART**