UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In Re:   CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL 2047<br><br>SECTION "L" |
| This document relates to:<br><br>Case No. 20-cv-3264 | JUDGE ELDON FALLON<br><br>MAGISTRATE NORTH |

**STATEMENT OF UNCONTESTED MATERIAL FACTS IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT REGARDING APPLICATION OF THE COURT'S "GENERAL FINDINGS" IN ITS APRIL 21, 2017 FINDINGS OF FACT & CONCLUSIONS OF LAW (Rec. Doc. 20741) <u>FILED BY PLAINTIFFS, JAWAD & FATME GHARIB</u>**

**MAY IT PLEASE THE COURT:**

Plaintiffs, Jawad and Fatme Gharib, (the "Gharibs") file this Statement of Uncontested Material Facts in support of their Motion for Partial Summary Judgment, and with respect represent that:

On April 21, 2017, this Court issued its *Findings of Fact & Conclusions of Law Related to the June 9, 2015 Damages Hearing* (Rec. Doc. 20741) ("April 21, 2017 FOFCOL"). Section III. of the April 21, 2017 FOFCOL, entitled "GENERAL FINDINGS ON CHINESE DRYWALL", contains the findings listed below. Thus, the Gharibs seek judgment as a matter of law finding that the following apply to their individual proceeding, *Gharib et al v. Knauf Gips KG et al*, No. 2:20-cv-03264:

1. As established by the U.S. Consumer Product Safety Commission ("CPSC"), the Florida Dept. of Health, other scientific entities, and this Court in the *Germano* FOFCOL, the defective nature of this Chinese drywall is undisputed.

2. The Chinese drywall in question has a significantly higher average concentration of strontium and significantly more detectable levels of elemental sulfur. It releases three main gases: (i) hydrogen sulfide (H2S), (ii) carbonyl sulfide (COS), and (iii) carbon disulfide (CS2). Germano FOFCOL at 12. The Plaintiffs' experts detected sulfur gas emissions by conducting laboratory tests on samples of this Chinese drywall. The CPSC, Florida Dept. of Health and other investigatory agencies and firms also reported that Chinese drywall emits sulfur gases. Id. at 12-13.

3. The sulfur gases released by Chinese drywall are irritating to the human body during exposure. Exposed individuals reported irritation of the eyes, respiratory system, and skin, among other things. Id. at 13.

4. The sulfur gases released by this Chinese drywall cause offending odors in homes, making them hard if not impossible to live in, and are corrosive to metals, particularly copper and silver, which are uniquely vulnerable to corrosion from sulfur gases. Id. The sulfur gases emitted from Chinese drywall create an environment classified among the most severe industrial corrosive environments in the Battelle Classification scheme and the standards established by the International Standards Association. Id. at 19-20.

5. Forensic examination by scientific and technical experts, including testing of building materials in the damaged homes of the Germano Plaintiffs, further confirmed the wide-spread impact of the corrosive environment, which included corrosion of copper wiring, copper pipes and silver-based components in electronics, including

HVAC circuitry and brazing on pipes, causing premature failure of electrical and mechanical devices. Id. at 14, 23.

6. The Court adopts and incorporates herein the Germano FOFCOL, which accurately explains the scope of remediation required for class plaintiffs' properties. Germano FOFCOL at 29-31; In re Chinese Manufactured Drywall Prod. Liab. Litig., 706 F. Supp. 2d 655 (E.D. La. 2010).

7. After considered analysis of the impracticality and risks of the selective remediation approach, the Court found in Germano and re-affirms herein that remediating a Chinese drywall property requires complete remediation and cleaning; thus, the Court again rejects any remediation approach that favors selective remediation such as the one originally proposed by the Knauf experts in Germano. Id. The remediation protocol fashioned in Germano is evidence based and has been confirmed via its application in the actual remediation of several thousand homes.

8. The scientific and practical constructability evidence presented before this Court, which relies on long-term observation, sampling and testing of properties with Chinese drywall, scientific investigation of Chinese drywall and the science of corrosion, practical construction experience (particularly the experience of the national builders), and electric and building codes, demonstrates that proper remediation of the danger posed by Chinese drywall must include the removal of all drywall, all electrical wiring, the entire HVAC system, and many other items such

as appliances, carpet, cabinetry, trim work and flooring. Germano FOFCOL at 27-55; Hernandez FOFCOL at 20-34; Transcript at pp. 106:8-110:3.

9. This scope of remediation is necessary even in homes with "mixed" drywall, where Chinese and non-reactive drywall may be found, because the sulfur gases disburse and circulate creating a generally corrosive environment and, moreover, there is no reliable or practicable method for selective identification and removal of Chinese drywall in mixed homes. Germano FOFCOL at 27-40. Large Florida homebuilders with extensive experience in Chinese drywall remediation have determined that removal of all drywall in affected homes is efficient and cost-effective, and that attempted selective identification and removal of CDW is neither efficient nor cost-effective. Id. at 31.

10. It is both economical and practical to remove all the wiring while the drywall is removed, rather than removing only some of the wiring at the time of remediation and then risk later having to tear down the drywall again in the event that additional wiring exposed to the sulfur gases is harmed or fails. Additionally, the low-voltage wiring supporting life and safety devices such as fire alarms and smoke detectors should be removed and replaced because of the low cost of replacement when compared with the high risk of injury or death if these devices are not functioning properly. Id. at 39.

11. Copper pipes and HVAC units must be replaced. It is more cost-effective and less time consuming to remove and replace all copper pipes and the HVAC units in Chinese drywall properties as opposed to attempting to "clean" the corrosion off copper components and HVAC ductwork. Id. at 39-46.

12. The evidence shows that carpeting must be replaced because attempting to remove and store the carpet during the remediation is not cost-effective. Similarly, hardwood or vinyl flooring must be replaced because dust generated during the remediation process will intrude into the cracks and crevices of the flooring. However, tile flooring

may be properly protected during the remediation process, and if this can be done, the Court finds that it does not need to be removed and replaced. Id. at 49-50.

13. Similarly, it is more cost-effective to replace cabinets, countertops, trim, crown molding, baseboards, bathroom fixtures, and insulation than attempt exacting removal, storage and subsequent re-installation. Id. at 51-53.

14. In order to eliminate the tremendous amount of dust produced from removal of the drywall, and to eliminate the offensive odor of the Chinese drywall, properties need to be cleaned and aired-out after remediation is complete. A HEPA vacuum should be used to remove the fine drywall dust and other particles. Additionally, properties should be wet-wiped or power washed to eradicate any remaining particles. Id. at 53.

15. Following the deconstructing phase of the remediation process, the properties will need to be inspected by an independent and qualified engineering company. This is important for insurance, resale potential, and peace of mind for the present occupants. The independent and qualified engineering company should provide a letter or report indicating that the remediation has been correctly performed. Id. at 53-54.

16. The necessary remediation proposed by the PSC is essentially the same in all material respects as the scope of remediation being utilized by national builders Beazer Homes and Lennar Homes. National builders Beazer and Lennar have also independently assessed the need for complete remediation through scientific evidence, practical cost considerations, and hands-on experience with the problem. Although in theory, a thorough cleaning or selective replacement of contaminated drywall may be an option, in practice, the evidence does not support the feasibility of such an option. The alternative remedies to a complete remediation that have been tried or suggested,

such as selective identification and removal of Chinese drywall, "cleaning" corroded wires, switches, and contact points, leaving corroded wires and switches in place, clipping the exposed ends of the corroded wires and splicing wires, or making new junction boxes, will not make the plaintiff whole, will not be adequate from a scientific or practical standpoint, and will not provide safety and marketability to the property owner. Id. at 54.

17. Thus, in sum, the appropriate scope of remediation includes: removal and disposal of all damaged and affected building components in the properties, replacement of all drywall, replacement of entire HVAC assembly, replacement of entire electrical system (including receptacles and switches), replacement of all copper and silver plumbing and electrical switches, replacement of all items that are likely to be damaged during demolition (i.e., cabinets, trim and baseboards), replacement of items that are ultimately more efficient to replace than restore, such as carpet and flooring, a complete cleaning of the premises, and confirmation from an independent and qualified engineering company to confirm the quality and completeness of the cleanup and provide the necessary assurances for insurance, resale potential and peace of mind for the affected property owners. As mentioned, the scope of remediation is supported by the testimony of the experts and confirmed by the remediation of over 2,200 homes carried out in the Knauf Settlement Program.

Respectfully submitted,
CRULL, CASTAING & LILLY

BY: /s/ *Peter E. Castaing* .
Peter E. Castaing, #35019
Edward J. Castaing, Jr. #4022
Pan American Life Center
601 Poydras Street, Suite 2323
New Orleans, LA 70130
Telephone: (504) 581-7700
Facsimile: (504) 581-5523
pcastaing@cclhlaw.com
ecastaing@cclhlaw.com

**Counsel for Jawad Gharib and Fatme Gharib**

## CERTIFICATE OF SERVICE

I hereby certify that on February 28, 2023, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all known counsel of record.

/s/ *Peter E. Castaing*
Attorney