**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| In Re:   **CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION** | **MDL 2047** |
| | **SECTION "L"** |
| **This document relates to:** | **JUDGE ELDON FALLON** |
| **Case No. 20-cv-3264** | **MAGISTRATE NORTH** |

**MEMORANDUM IN OPPOSITION TO MOTION FOR PARTIAL SUMMARY JUDGMENT REGARDING APPLICATION OF THE COURT'S "GENERAL FINDINGS" IN ITS APRIL 21, 2017 FINDINGS OF FACT & CONCLUSIONS OF LAW (Rec. Doc. 20741) FILED BY PLAINTIFFS, JAWAD & FATME GHARIB**

**MAY IT PLEASE THE COURT:**

Defendants, Knauf Gips KG and Knauf New Building System (Tianjin) Co. Ltd. ("KPT") (collectively, the "Knauf Defendants"), submit the following Memorandum in Opposition to Plaintiffs Jawad and Fatme Gharib's Motion for Partial Summary Judgment Regarding Application of the Court's "General Findings" in its April 21, 2017 Findings of Fact & Conclusions of Law (Doc. 20741). In their Motion, Plaintiffs ask the Court to declare the referenced findings, which were issued following a ***bench, bellwether*** trial relating to a ***default judgment*** against the Taishan Defendants and were explicitly applicable only to the *Germano* class action, be declared the law of *this* case. Plaintiffs also reference the MDL Court's earlier rulings in *Hernandez* and *Germano* as additional support for their request. Plaintiffs' requested relief is without legal support, and the Motion should be denied.

1

As further explained herein, this Court's earlier rulings are not the law of this case for the simple and fundamental reason that *they were not issued in this case*. Indeed, the *Germano* and *Hernandez*[1] matters were two, early, wholly-separate class actions, in which neither Plaintiffs nor at least one of the Knauf Defendants were parties. Further, in the only case cited by Plaintiffs addressing the law-of-the-case doctrine, *McKay v. Novartis Pharm. Corp.*, 751, F.3d 694, 705 (5th Cir. 2014), the court addresses the binding effect that a case-specific MDL ruling has upon *that same case* on remand. In this matter, the Gharibs' individual claims were previously consolidated in the *Bennett* Action, and only this Court's rulings in the *Bennett* Action—not the unrelated *Hernandez* or *Germano* actions—are dispositive of any matters in the Gharibs' individual suit on remand. Moreover, because the *Germano* and *Hernandez* actions were the product of default judgments, a multitude of stipulations on the issues of causation, liability, and damages, and because either one or both of the Knauf Defendants were not a party to those trials, the *Germano* and *Hernandez* findings cannot be extrapolated to determine any outstanding questions of law or fact at the jury trial in this matter.

At the upcoming jury trial on their claims, the Gharibs bear the burden of proving causation, liability, and damages, including the appropriate scope of remediation. Plaintiffs should not be permitted to abbreviate their burden, subvert the role of the jury, and side-step the rulings of this Court denying their untimely motion to add expert testimony, by imputing rulings and expert testimony from wholly unrelated cases. Plaintiffs have not, and cannot, provide any legal support for their request that this Court's prior findings be dispositive of any issue in this case. For

---

[1] It should be noted that Plaintiffs' Motion for Partial Summary Judgment only asks that the April 21, 2017 Findings of Fact and Conclusions of Law ("FOFCOL"), which were issued in the *Germano* matter, be applied as law of the case. However, because Plaintiffs reference the *Hernandez* FOFCOL heavily in their Motion and suggest that it likewise has probative value, the Knauf Defendants, out of an abundance of caution, also address the inapplicability of the *Hernandez* opinion.

2

these reasons, and those more fully explained herein, the Knauf Defendants ask that the Court deny

Plaintiff's Motion for Partial Summary Judgment.[2] The Knauf Defendants further request any and

all relief the Court deems just.

**RELEVANT BACKGROUND**

Currently before the Court is Plaintiffs' Motion for Partial Summary Judgment wherein, in

conjunction with their contemporaneously-filed Motion *in Limine,* Plaintiffs ask the Court to find

that its "General Findings" in its April 21, 2017 Findings of Fact & Conclusions of Law (Doc.

20741) related to the *Germano* matter are the "law of the case" and displace the testimony of

Plaintiffs' expert, Phil Adams. In their Motion, Plaintiffs also look to the *Hernandez* rulings as

providing support for their requests. For the convenience of the Court, only the factual background

relevant to Plaintiffs' Motion for Partial Summary Judgment, including the *Germano* and

*Hernandez* rulings, is provided herein. Additional background information pertaining to Plaintiffs'

and Defendants' experts, however, to the extent the Court finds it relevant to the instant Motion,

is also provided in the Knauf Defendants' Opposition to Plaintiffs' Motion *in Limine* and

incorporated by reference herein.

A.      **The *Bennett* Complaint and the Gharibs' Claims**

The Gharibs' suit against the Knauf Defendants is one of few remaining individual cases

in MDL No. 2047, which was formed in 2009 to consolidate what were ultimately hundreds of

lawsuits involving thousands of plaintiffs who alleged damages associated with Chinese-

manufactured drywall.[3] Since that consolidation, the Knauf Defendants have participated in

extensive discovery—including thousands of depositions and the exchange of millions of

---

[2] For these same reasons, the Knauf Defendants likewise request that the Court deny Plaintiffs' contemporaneously-filed Motion *in Limine* to Exclude Phil Adams' Testimony (Doc. 23363).
[3] *See In re Chinese Manufactured Prods. Liab. Litig.*, 894 F. Supp. 2d 819, 830 (E.D. La. 2012).

documents—and a largescale settlement program (the "Knauf Class Settlement Agreement") that resulted in mediation of over 2,000 homes. The deadline to file claims to the Knauf Class Settlement Agreement was October 25, 2013.

In November 2014, over a year after the October 25, 2013 deadline to participate in the Knauf Class Settlement Agreement and several years after the creation of this MDL, after the Knauf pilot program and after the Knauf supply chain of interlocking class settlements, Elizabeth Bennett and several other individual property owners filed suit against the Knauf Defendants in the Northern District of Alabama (the "*Bennett* Action"). The claims were transferred and consolidated in MDL 2047. Additional claimants, like Plaintiffs in this action, were later added to the *Bennett* Action in MDL 2047. Following substantial pre-trial discovery and litigation in the MDL Court, on November 23, 2020, this Court severed Plaintiffs' claims, alongside those of nine other plaintiffs, from the larger *Bennett* Action so that they could file separate amended complaints and proceed independently in their final preparations for trial.[4]

In Plaintiffs' operative Amended Complaint, Plaintiffs assert claims against the Knauf Defendants for redhibition and under the Louisiana Products Liability Act ("LPLA"), alleging damages to two of their properties caused by drywall manufactured by the Knauf Defendants (hereinafter "KPT Drywall").[5]  The two allegedly damaged properties include Plaintiffs' two-story residence bearing municipal address 4 Beresford Drive, Metairie, Louisiana 70118 (hereinafter the "Beresford Property"), and a three-story mixed commercial and residential building bearing municipal address 8807 South Claiborne Avenue, New Orleans, Louisiana (hereinafter the "Claiborne Property").

---

[4] *See* Doc. 22980.
[5] *See* Case 2:20-cv-3264, Doc. 1; *see also* Doc. 21334 at ¶¶ 86-108; Doc. 22925 (limiting Louisiana plaintiffs' claims to redhibition and LPLA claims).

Before Plaintiffs' claims were severed from the *Bennett* Action, the Court issued a Case Management Order setting forth deadlines for discovery, including the disclosure of expert witnesses and opinions. Plaintiffs designated and disclosed reports and disclosures for a general causation expert, Howard Ersham, and a damages expert, Shawn Macomber. However, on December 16, 2022, Plaintiffs filed a Motion to Add Expert Disclosures, wherein Plaintiffs sought to substitute Mr. Macomber's opinion for that of a new damages expert, David Herring.[6] Notably, Mr. Herring relied upon the Xactimate method—the same method utilized by Defendants' expert, Phil Adams—to reach his conclusion,[7] but he opined that there were additional damages to Plaintiffs' properties not raised by Plaintiffs' previous expert, including damages to the second floor of Beresford Property and the first-floor commercial spaces, stairwells, and third floor of the Claiborne Property.[8] On February 6, 2023, this Court denied Plaintiffs' Motion, finding the proposed untimely disclosure would "significantly prejudice Defendants in this matter and potentially in other pending Chinese Drywall cases."[9]

In both Plaintiffs' Motion for Partial Summary Judgment and Plaintiffs' Motion *in Limine,* Plaintiffs seek to sidestep this Court's Order denying their motion to add expert testimony by implicitly asking that the Court adopt the expert testimony presented by the class plaintiffs in the *Hernandez* and *Germano* cases, which the Court subsequently adopted in its Findings of Fact and Conclusions of Law ("FOFCOL").[10] Here, in this individual suit for damages, Plaintiffs bear the

---

[6] *See generally*, Doc. 23349 (Motion to Add Expert Disclosures); Doc. 23358 (Order and Reasons).
[7] *See* Doc. 23349-11 (David Herring Report).
[8] *See generally,* Doc. 23349 (Motion to Add Expert Disclosures); Doc. 23349-11 (David Herring Report).
[9] *See* Doc. 23358, at 5.
[10] Notably, just recently on March 5, 2023, Plaintiffs filed a Motion for Reconsideration of this Court's February 6, 2023 Order and Reasons, wherein now, in addition to their request that they be allowed to present Mr. Herring's testimony, Plaintiffs also ask that the Court allow Howard Ersham to perform an inspection of Plaintiffs' property and render an individualized causation analysis. It is no coincidence that Plaintiffs' Motion to revise and supplement Mr. Ehrsam's report was filed after the Knauf Defendants filed their Motion for Partial Summary Judgment, which highlight several deficiencies in the Ehrsam report. *See generally*, Doc. 23360.

burden to prove liability, causation, and damages. Plaintiffs should not be allowed to abbreviate this burden and usurp the role of the jury the adoption of findings from a wholly unrelated case.

### B.   The *Hernandez* and *Germano* Actions

#### 1.   *MDL Rulings Relating to the Taishan Defendants*

The Chinese Drywall MDL primarily concerns drywall manufactured by two groups of defendants: (1) the Knauf Defendants, the named Defendants in the matter currently before the Court, and (2) several Chinese-based manufacturers, including Taishan Gypsum Co. Ltd. ("TG") and Taian Taishan Plasterboard Co., Ltd., which are often referred to as the "Taishan Defendants."[11] Because Plaintiffs' Motion directs the Court to a few of the Court's rulings pertaining to the Taishan Defendants—namely the Findings of Fact and Conclusions of Law ("FOFCOL") in *Germano, et. al v. Taishan Gypsum Co. Ltd., et al.*, case no. 09-6687 ("*Germano* Default FOFCOL") and a later FOFCOL "Related to the June 9, 2015 Damages Hearing" in the same matter and issued on April 21, 2017 (hereinafter the "*Germano* Damages FOFCOL"), a brief background of each of the referenced findings is provided.

> a.   *Germano, et al. v. Taishan Gypsum Co., Ltd., f/k/a Shandong Taihe Dongxin Co. Ltd., et al.,* Case No. 09–6687 (E.D. La.)

The case of *Germano, et al. v. Taishan Gypsum Co., Ltd., f/k/a Shandong Taihe Dongxin Co. Ltd., et al.*, Case No. 09–6687 (E.D. La.), was one of four cases initially levied against the Taishan Defendants and which served as the "main vehicle" for the MDL litigation involving the Taishan Defendants.[12] After one of the Taishan Defendants, TG, failed to make an appearance in *Germano* and one of the other matters, the Court entered a preliminary default against TG.[13] In

---

[11] The Taishan Defendants are not in any way affiliated with the Knauf Defendants; rather the Taishan Defendants and Defendant KPT are competing manufacturers.
[12] *See Germano* Damages FOFCOL, Doc. 20741, at 5.
[13] *See id.* at 7.

furtherance of the preliminary default, the Court held an evidentiary hearing, without a jury, in *Germano* to address the scope and cost of remediation, and with respect to which the Court allowed several plaintiffs to intervene and present evidence, and subsequently entered the *Germano* Default FOFCOL and a Final Default Judgment against TG.[14] Relevant here, and as heavily emphasized in Plaintiffs' Motion *in Limine*, the Court found in the *Germano* Default FOFCOL that the *evidence at the default hearing* showed, "*at least with regard to the representative cases*" which were "representative of a cross-section of contaminated homes," selective remediation of the damaged areas was not feasible in "homes in which there is a *substantial mixture*" of non-Chinese and Chinese-manufactured drywall.[15]

Following the entry of default, TG made its first appearance in the *Germano* case, appealed the default judgment, and filed several motions for lack of personal jurisdiction.[16] After years of extensive litigation, the Final Default Judgment against TG was affirmed on appeal and the Court found that it had personal jurisdiction over TG.[17] The Taishan Defendants again "withdrew" from the litigation, and the Court issued a contempt ruling against them.[18]

In the Taishan Defendants' absence, the plaintiffs filed an Omnibus Motion for Class Certification.[19] On September 26, 2014, the MDL Court issued a FOFCOL in which it granted the unopposed Motion and certified a class consisting of the property owners listed as plaintiffs "on the complaints in *Amorin, Germano, Gross, and/or Wiltz* (*i.e.,* not an absent class member), asserting claims for remediated damages arising from, or otherwise related to Chinese Drywall manufactured, sold, distributed, supplied, marketed, inspected, imported or delivered by the

---

[14] *See* "*Germano* Default FOFCOL," Doc. 2380; *Germano* Damages FOFCOL, Doc. 20741, at 5.
[15] *See Germano* Default FOFCOL, Doc. 2380, at 56, 62 (emphasis added).
[16] *See Germano* Damages FOFCOL, Doc. 20741, at 7–10.
[17] *See id.*
[18] *See id.* at 10.
[19] *See id.*

Taishan Defendants."[20] Notably, the Court found that certification was particularly appropriate in light of "the narrow scope of the factual determinations left to be made" as a result of the "default judgment on liability" that had already been issued against TG.[21] Following certification of the class but prior to the class damages hearing, the Taishan Defendants again appeared in the matter with new counsel.[22]

        *b.*      *The Findings of Fact & Conclusions of Law Related to the June 9,*
                  *2015 Damages Hearing—Pertaining to the Taishan Defendants*

        On June 9, 2015, the MDL Court finally held the class damages hearing to determine the damages the Taishan Defendants owed to the *Germano* class described above.[23] Again, neither of the Knauf Defendants were parties to the *Germano* action, the June 9, 2015 damages hearing, or the subsequent FOFCOL.[24] Following the hearing, on April 21, 2017, the Court issued Findings of Fact & Conclusions of Law Related to the June 9, 2015 Damages Hearing ("the *Germano* Damages FOFCOL").[25] Because the *Germano* Default FOFCOL and class certification findings "resolved a multitude of factual and legal issues," including liability, causation, and the right to recover damages,[26] the only issue before the MDL Court at the June 9, 2015 hearing, and subsequently decided by the Court in the *Germano* Damages FOFCOL, was "the amount of damages which should be awarded to the Class for property remediation."[27] In the *Germano* Damages FOFCOL, the Court ultimately adopted the class plaintiffs' damages formula on a class-

---

[20] *See* Doc. 180828, at 34–35 ("*Germano* Class Certification FOFCOL"); *see also Germano* Damages FOFCOL, Doc. 20741, at 10.

[21] *See Germano* Class Certification FOFCOL, at 16.

[22] *See Germano* Damages FOFCOL, Doc. 20741, at 11.

[23] *See id.* at 19.

[24] *See generally*, Doc. 20741.

[25] *See id.*

[26] *See id.* at 18.

[27] *See id.*; *see also id.* at 32 ("While the default judgment conclusively establishes liability, it is not conclusive of the class damages for remediation costs which Plaintiffs seek. Liability and damages require separate and equally 'rigorous analysis.'" (quoting *Comcast Corp. v. Behrend,* 133 S. Ct. 1426, 1433 (2013)).

wide basis, which required damages be "calculated by multiplying the under air square footage of the affected properties listed in the revised Class Plaintiffs' Spreadsheet by $105.91 as adjusted by the RS Means location factor."[28]

In reaching this conclusion, the Court spent several pages analyzing whether the formulaic approach could appropriately be applied on a class-wide basis. The Court explained, however, that the class before it was unique, in that it could be susceptible to a formulaic and universally applied damages calculation. The Court provided:

> 63. [ . . . ] In most class actions, even if liability is established, the issue of causation is often inextricably intertwined with damages and remains to be litigated. In other words, even if a court finds that a defendant was negligent and that a plaintiff suffered damages, the court must still determine whether those damages were *caused* by that negligence.

> 64. With regards to the Taishan drywall in this case, in contrast to these typical class actions, there is no issue of either liability or causation. . . . Here, Taishan has been held liable for defective Chinese drywall, and any properties containing Chinese drywall are defective, requiring the removal of the Chinese-drywall.[29]

Thus, because of the limited issues outstanding following Taishan's default, the Court concluded that the formulaic approach was "superior to the thousands of individual proceedings that would result if Defendants' proposal for property by property inspection and estimation were accepted."[30] The Court further acknowledged that "there is some variation, but conclude[d] that the time, expense, and inefficiency of inspecting every affected property would result in an inequitable solution, given the delay these property owners have already experienced in obtaining relief."[31]

In short, the Court's rulings in *Germano* cannot be extrapolated from the circumstances surrounding Taishan's default.  Liability, causation, and the scope of remediation were established

---

[28] *See id*. at 50.
[29] *See id*. at 32-33 (emphasis in original).
[30] *See id*. at 48.
[31] *See id*., at 47–48.

in Taishan's absence, and Taishan was only present for the final determination of costs, which was specifically tailored to be easily and efficiently applied across a large class.[32] Indeed, the Court has recently recognized in subsequent proceedings that "[w]hat sets Taishan apart from the other defendants is that it was defaulted by the District Judge …[and] the only issue to be decided [as to Taishan] is the quantum of damages."[33] And of course, the Knauf Defendants were not present or otherwise represented in any of the cited proceedings. The *Germano* rulings simply cannot be dispositive or influential upon the Knauf Defendants' expert's opinion, or the jury's conclusion, as to the extent of Plaintiffs' damages. Plaintiffs' arguments to the contrary should be disregarded.

2.    *Hernandez v. Knauf Gips KG, et al.,* Case No. 09-6050 (E.D. La.)

The trial in *Hernandez v. Knauf Gips KG* was the first and only bellwether trial conducted in the MDL against any of the Knauf Defendants, and the only claims tried were those against Defendant KPT.[34] The *Hernandez* plaintiffs voluntarily dismissed their claims against all other defendants, including Knauf Gips, prior to trial.[35] Contrary to Plaintiffs' assertion, Knauf Gips is not the manufacturer of KPT drywall and did not supply any KPT drywall to the United States.[36]

In preparation for the *Hernandez* bench trial, the *Hernandez* plaintiffs and KPT entered into two joint stipulations, which significantly narrowed the issues to be decided by the MDL Court at trial: a February 2010 Joint Stipulation and a March 2010 Joint Stipulation.[37] Notably, in the February 2010 Joint Stipulation, the parties stipulated to the following:

---

[32] *See generally, Germano* Damages FOFCOL, Doc. 20741.

[33] *See In re Chinese-Manufactured Drywall Prod. Liab. Litig.*, No. 09-MD-2047, 2022 WL 17684805, at *1 (E.D. La. Nov. 28, 2022), *report and recommendation adopted,* No. 09-MD-2047, 2022 WL 17672496 (E.D. La. Dec. 14, 2022).

[34] *See generally, Hernandez* FOFCOL, Doc. 2713, at 4.

[35] *See id.*

[36] *See* Exhibit 1, Knauf Gips Profile Form.

[37] *See* Exhibit 2, February 2010 Joint Stipulation; Exhibit 3, March 2010 Joint Stipulation. Undersigned counsel was counsel to Defendant KPT at the *Hernandez* trial and submits to the Court that the primary purpose of the *Hernandez* bellwether trial was to facilitate settlement discussions between the parties. The stipulations were intended to narrow the issues before the MDL Court in accordance with this purpose.

(3) This stipulation shall only apply to the redhibition and fitness for ordinary use claims and associated defenses asserted by Plaintiffs in *Hernandez v. Knauf, et al.* (Case No. 09-6050). This stipulation shall not apply to any other claims or defenses which have been asserted or which may be asserted in the future by Plaintiffs, KPT, or any other party in any other matter. KPT expressly reserves, and does not waive, any of its defenses. KPT, nevertheless, stipulates in the *Hernandez* case, and only the *Hernandez* case, that it will not assert certain defenses, including comparative fault, contribution and/or reduction in KPT's legal responsibility to Plaintiffs as a result of any alleged conduct or fault of any other party, person or entity, in the *Hernandez* case, (and only in the *Hernandez* case). KPT expressly reserves and does not waive any other defenses in this or any other case. ***KPT and Plaintiffs do not intend that this stipulation, or any of its terms, <u>or any adjudication of any matter in this case</u>, be used for purposes of collateral estoppel or issue preclusion or as an evidentiary admission in any other case.***[38]

Also in the February 2010 Joint Stipulation, the parties agreed, among other things, that: plaintiffs would only pursue claims in redhibition and fitness for ordinary use, plaintiffs' claimed damages were not precluded under the LPLA, plaintiffs' claims had not prescribed, plaintiffs bought certain KPT drywall, KPT manufactured and sold the drywall in the plaintiffs' house, and that the drywall in plaintiffs' home emits certain reduced sulfur gases and odor.[39]

In March of 2010, the *Hernandez* plaintiffs and KPT agreed to several more pre-trial stipulations. Most relevant here, the parties agreed that:

3. ***With respect to the appropriate scope of remediation for the Hernandez home, the parties agree that (except with respect to the possibility of maintaining certain "green board" in the bathrooms), all drywall in the home, both Chinese-manufactured and domestic, will be removed and replaced, as well as all insulation, all flexible duckwork, all switches, all receptacles, all molding, and the countertops.*** Beyond these agreed-upon elements of the scope of remediation, the parties are in disagreement and will present opposing evidence and testimony at trial on the scope of remediation. Likewise, as to the cost of any and all remediation activity, the parties remain in disagreement and will present opposing evidence and testimony at trial.[40]

---

[38] *See* Exhibit 2 February 2010 Joint Stipulation, at 2–3 (emphasis added). The MDL Court also summarized several of the stipulations in its FOFCOL. *See* Doc. 2713 at 5–7.
[39] *See id.*
[40] *See* Exhibit 3, March 2010 Joint Stipulation, at 2 (emphasis added).

The parties further agreed that certain evidence regarding "XRF and/or wire corrosion visual inspections as a techniques or combination of techniques to identify and/or remove Chinese drywall" would not be introduced, although KPT reserved its right to propose such a technique in further proceedings.[41] Accordingly, unlike the matter currently at issue, there was no dispute in *Hernandez* as to whether the entire property was affected with KPT Drywall.

In light of the parties' stipulations, the *Hernandez* bellwether trial, which was held before this Court from March 15, 2010 to March 19, 2010, effectively focused entirely on the issue of damages, but only to the extent that damages had not already been stipulated.[42] Accordingly, the Court did not address several issues still outstanding with respect to the Gharibs' claims, including whether KPT was liable to the plaintiffs under their asserted legal theories, and whether the KPT drywall was the cause of the damage.[43] Rather, the MDL Court's principal findings in its FOFCOL addressed the only issue to which the parties could not reach an agreement: the "proper remediation for the electrical, plumbing, and HVAC systems, and other items which are involved in the removal of drywall or contain silver and copper components" and the cost of such remediation.[44] After weighing considerable evidence, expert testimony, and the damages available to plaintiffs under their asserted causes of action (redhibition and fitness for ordinary use), this Court rendered specific findings with respect to the appropriate scope of remediation and damages owed to plaintiffs.[45]

---

[41] *See id.*, at 2.

[42] *See generally*, *Hernandez* FOFCOL, Doc. 2713, at 15 ("The parties agree that remediation is necessary. They also agree on various aspects of this remediation. But they disagree on the full scope of the remediation and the appropriate costs thereof. The only issue in this case, therefore, are the nature and scope of the remediation necessary to properly restore the Plaintiffs' home and the resulting damages if any.").

[43] S*ee generally, id.*; *see also id*., at 17 ("The evidence is conclusive that the corrosion in the Hernandez home was proximately caused by exposure to Chinese drywall manufactured and sold by Defendant." (citing expert testimony)).

[44] *See id.* at 10–24.

[45] *See generally*, *Hernandez* FOFCOL, Doc. 2713.

Following the *Hernandez* bellwether trial, on December 20, 2011, the Knauf Defendants entered into a global, class Settlement Agreement with the Plaintiffs' Steering Committee, which ultimately resulted in successful remediation of over 2,000 homes. The Gharibs did not timely file claims to the Knauf Class Settlement Agreement and years later have asserted these current claims.

## LEGAL STANDARD

Summary judgment is required if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[46]. "A genuine dispute of material fact exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[47] When seeking summary judgment, the movant bears the initial responsibility of demonstrating the absence of an issue of material fact with respect to those issues on which the movant bears the burden of proof at trial.[48]

## LAW AND ARGUMENT

Neither the *Germano* nor *Hernandez* rulings are dispositive of any outstanding issue in the Gharibs' case. Indeed, because the *Germano* and *Hernandez* matters are, in every possible respect, different *cases*, the law-of-the-case doctrine has no applicability here. Moreover, because the Knauf Defendants were not parties to the *Germano* action and Gips was not a party to the *Hernandez* action, the findings in both cases were the product of default judgment and significant stipulations as to causation, liability, and damages, and the rulings in both matters were based on facts and expert testimony relevant only to the class "representative cases" and were tailored to class-wide application, Plaintiffs cannot otherwise argue that either the *Germano* or *Hernandez* rulings have any preclusive effect on the outstanding issues in this case. In this matter, the Knauf

---

[46] *See* FED. R. CIV. P. 56(a).
[47] *Bennett v. Hartford Ins. Co. of Midwest*, 890 F.3d 597, 604 (5th Cir. 2018) (internal quotation marks and citations omitted).
[48] *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).

Defendants have not yet entered into any stipulations with Plaintiffs that would abbreviate their burden of proof. Accordingly, to the extent Plaintiffs' claim entitlement to the scope of remediation found applicable in *Germano*, they have the burden to present such evidence through expert testimony at trial, and it remains within the purview of the jury to determine the weight of that evidence. Plaintiffs have presented no legal support for their alleged entitlement to pick and choose favorable rulings from past cases, and this Court has already held in this MDL that the aggregate class damages formula set forth in the *Germano* Damages FOFCOL is not probative to the computation of damages for individual, non-class plaintiffs. Plaintiffs' Motion should be denied.

## I.   Neither the *Germano* nor *Hernandez* FOFCOL constitute Law of the Case.

Under the law-of-the-case doctrine, when "a court of competent jurisdiction decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages *of the same case.*"[49] Although the law-of-the-case doctrine applies to MDL cases,[50] the doctrine still requires that *the cases be the same.*[51] Plaintiffs ask that the Court apply the doctrine to decisions rendered in a wholly independent and separate case—that of *Germano*—rather than either the *Bennett* or *Gharib* matters. Decisions in separate cases cannot establish the law of *this* case, and Plaintiffs' Motion must be denied.[52]

First, Plaintiffs' cited cases in favor of application of the doctrine address circumstances not at issue here. In *McKay v. Novartis Pharm. Corp.*, 751, F.3d 694, 705 (5th Cir. 2014), the Fifth Circuit addressed, in relevant part, whether the district court, on remand, correctly applied the law-of-the-case doctrine to the MDL Court's findings *specific to the McKays' case.* Indeed, the Fifth

---

[49] *Copeland v. Merrill Lynch & Co.,* 47 F.3d 1415, 1423 (5th Cir. 1995) (citing *Christianson v. Colt Indus. Operating Corp.,* 486 U.S. 800, 816 (1988)).
[50] *See In re Ford Motor Co.*, 591 F.3d 406, 411 (5th Cir. 2009).
[51] *See Copeland*, 47 F.3d at 1423.
[52] *See id.*

Circuit found that the MDL Court's ruling that Tex. Civ. Pac. & Rem. Code § 82.007 "foreclosed *the McKays'* failure to warn claims" was the law of the case with respect to the applicability of the statute.[53] Thus, the *McKay* court did not address the issue currently before the Court—*i.e.,* whether a decision rendered by the MDL Court in a *separate* matter constituted law of the case in the McKays' suit. The Fifth Circuit's decision in *McKay v. Novartis* accordingly does not apply to support Plaintiffs' proposed application of the law-of-the-case doctrine.

Plaintiffs' other cited cases are even less applicable to these circumstances. *See Lincoln Gen. Ins. Co. v. De LaLuz Garcia,* 501 F.3d 436, 442 (5th Cir. 2007) (reviewing a district court's denial of a motion for reconsideration for abuse of discretion and noting that new arguments should not be made in a motion for reconsideration); *Hightower v. Aramark Educ. Servs., L.L.C.,* 537 Fed. App'x. 489, 490 (5th Cir. 2013) (unpublished) (noting that plaintiff's argument as to why summary judgment should not be granted was made for the first time in a motion for reconsideration and is generally considered waived); *RLI Ins. Co., v. Maxxon Sw. Inc.,* 108 Fed. App'x. 194, 200-01 (5th Cir. 2004) (unpublished) (affirming district court's decision not to consider argument first raised in motion for reconsideration). In short, Plaintiffs have not provided this Court with any legal support for the relief they seek, and their Motion should be denied.

Second, Plaintiffs' emphasis of the MDL Court's reference to "ALL CASES" in the *Germano* Class Damages FOFCOL demonstrates Plaintiffs' misunderstanding of the circumstances surrounding the *Germano* decision.[54] The *Germano* Class Damages FOFCOL represents the MDL Court's findings from a Rule 55 damages hearing following the entry of a

---

[53] *See McKay,* at 751, F.3d at 697, 703 (emphasis added)).
[54] *See* Doc. 23363-1, at 12.

default judgment against the Taishan Defendants.[55] Indeed, in the FOFCOL, the MDL Court

describes the nature of the issue before the Court as follows:

> This Court has (1) already found the Taishan Defendants in default
> pursuant to Fed. R. Civ. P. 55(a) and (2) already determined in
> its *Class Certification* FOFCOL that the Defendants' liability has
> been conceded by their default. *See Class Certification* FOFCOL at
> 31. As a result of Defendants' default, the defectiveness and the
> corrosive effect of Chinese drywall were resolved in favor of Class
> Members. Even the Defendants' experts agree that the drywall is
> defective and needs to be removed. Thus, the only issue before the
> Court is the amount of damages which should be awarded to the
> Class for property remediation.[56]

As referenced in the excerpt above, following the entry of the default against the Taishan

Defendants and prior to the damages hearing, the MDL Court certified a class "asserting claims

for remediated damages arising from, or otherwise related to Chinese Drywall manufactured . . .

by the Taishan Defendants."[57] Accordingly, the MDL Court's reference to "ALL CASES" in the

caption on the first page of the FOFCOL is unambiguously a reference to all cases *in the Germano

class*.[58] Indeed, Plaintiffs' interpretation of this reference—that it was the intention of the MDL

Court to apply the FOFCOL to all cases in the MDL—leads to absurd results: requiring that all

individual claimants and defendants in the MDL, whether or not parties to the *Germano* class

action or the June 9, 2015 damages hearing to which the FOFCOL explicitly relate, be bound by

the MDL Court's findings of causation, liability, and damage—all of which were a product of the

Taishan Defendants' default.[59] Moreover, as discussed further *infra*, this Court has, for many of

---

[55] *Germano* Damages FOFCOL, Doc. 20741, at 31.

[56] *See id.* at 30.

[57] *See id.* at 10.

[58] This conclusion is further bolstered by the fact that this Court spends several pages in the *Germano* Class Damages FOFCOL discussing the appropriateness of implementing a class-wide damage formula, as opposed to assessing damages on an individual basis, (*see id*. at 44–52), and the fact that the Court noted in the FOFCOL that "the Knauf portion of this litigation is largely resolved," (*see id*. at 3).

[59] Defendants also note that the *Germano* Class Damages FOFCOL relate to a hearing held on June 9, 2015—over six months before Plaintiffs filed their Complaint in the MDL.

the same reasons cited herein, found that application of the *Germano* Damages FOFCOL to non-class member claims would be "contrary to law, . . . contrary to common sense, and [contrary to] public policy."[60] The *Germano* FOFCOL are not applicable to Plaintiffs' claims.

Finally, although the law-of-the-case doctrine plainly does not apply to these circumstances, it is worth noting that the doctrine, where it does apply, is not absolute. Under the law of the case, a court should "not revisit the determinations of an earlier court unless '(i) the evidence on a subsequent trial was substantially different, (ii) controlling authority has since made a contrary decision of the law applicable to such issues, or (iii) the decision was clearly erroneous and would work . . . manifest injustice.'"[61] Here, the evidence currently before the Court is significantly different than that presented in *Hernandez* and *Germano*.

In *Germano*, the Court's findings were the product of Taishan's default, and accordingly the evidence before the Court was limited and heavily tailored to the default proceedings before it.[62] Moreover, the Knauf Defendants were not parties to *Germano* proceedings and did not have the opportunity to present their own evidence with respect to causation, damages, and the scope of remediation.

Likewise, the evidence available to the Court in reaching its *Hernandez* FOFCOL is vastly different than that now before the Court as only Defendant KPT, not Knauf Gips, participated in the *Hernandez* bellwether trial, and the trial itself was the product of significant stipulations, including those with respect to liability, causation, and the scope of remediation.[63] Further, both

_____

[60] *See Chinese-Manufactured Drywall Prod. Liab. Litig.*, No. 09-MD-2047, 2022 WL 17684805, at *20.

[61] *See In re Ford Motor Co.*, 591 F.3d at 411–12 (quoting *Propes v. Quarterman*, 573 F.3d 225, 228 (5th Cir. 2009)).

[62]  *See Germano* Damages FOFCOL, Doc. 20741, at 32-33 (explaining that ordinarily, even if liability is established, "the court must still determine whether those damages were *caused* by that negligence. With regards to the Taishan drywall in this case, in contrast to these typical class actions, there is no issue of either liability or causation" (emphasis added)).

[63] *See, e.g.*, Exhibit 3, March 2010 Stipulation (stipulating that "the parties agree that (except with respect to the possibility of maintaining certain "green board" in the bathrooms), all drywall in the home, both Chinese-

*Germano* and *Hernandez* were bench trials, whereas here the finder of fact is the jury. The vastly different circumstances giving rise to the *Hernandez* and *Germano* FOFCOL preclude any application of those findings to the instant matter.

Additionally, the Chinese-manufactured drywall at-issue in the MDL was installed in most homes not long after Hurricanes Rita and Katrina, from 2005 to 2007.[64]  Unlike the *Hernandez* or *Germano* plaintiffs, who filed their suits in 2009 and began trying their cases in 2010, the Gharibs did not file suit until 2016.[65]  Accordingly, in addition to the unique facts pertaining to the Gharibs' properties that make this case distinguishable from *Hernandez* and *Germano*, (including the fact that it undisputed that the Gharibs only have KPT Drywall on certain, segregated areas of their properties),[66] the mere passage of time has altered the nature of the evidence and the defenses now available to Defendants. Even more, binding the Knauf Defendants to FOFCOL from a hearing in which it was not a participant would work a manifest injustice. Accordingly, even if the doctrine did apply, this Court would be free to revisit the early MDL opinions in light of the "substantially different" evidence now before the Court.

## II.   This Court has previously found that the *Germano* Damages FOFCOL is not dispositive of the issue of damages for individual cases.

Recently, this Court had the opportunity to address an argument similar to the one currently asserted by Plaintiffs in relation to two cases asserted against the Taishan Defendants.[67]  In the November 28, 2022, Report and Recommendations issued by Magistrate Judge North and

---

manufactured and domestic, will be removed and replaced, as well as all insulation, all flexible duckwork, all switches, all receptacles, all molding, and the countertops.").

[64] *See Germano* Default FOFCOL, Doc. 2380, at 12.

[65] *See generally, id.* at 4.

[66] Indeed, the Gharibs have emphasized the purported "uniqueness" of their properties on several occasions. *See, e.g.,* Doc. 23363-1, at 14 ("The Gharib Home is a unique and custom home that took years to build and is not one of the "mass-produced" houses churned out following Hurricane Katrina. Likewise, the Gharib Commercial Property also contains components that typical, residential structures do not have.").

[67] *See In re Chinese-Manufactured Drywall Prod. Liab. Litig.*, No. 09-MD-2047, 2022 WL 17684805; Doc. 23341 (Report and Recommendations); Doc. 23346 (Order Adopting Report and Recommendations).

subsequently adopted by Judge Fallon, Judge North considered what default damages were available to the Carters and the Gibbs under Federal Rule of Civil Procedure 55.[68] In the opinion, the Court explains that the two groups of plaintiffs before it, the Carters and the Gibbs, were former members of the *Amorin* class action against the Taishan Defendants, which class was one of the four classes of plaintiffs to which the *Germano* Damages FOFCOL applied.[69] Following the issuance of the *Germano* Damages FOFCOL, however, the Carters and Gibbs opted out of the class settlement to proceed with their claims individually.[70]

Relevant here, over the course of several proceedings to determine the Carters' and Gibbs' damages, the plaintiffs argued that they should receive the benefit of the aggregate damages formula utilized in the *Germano* Damages FOFCOL.[71] Judge North recounted this Court's disposition of the plaintiffs' argument as follows:

> For reasons that should be obvious, the Court rejected the argument that the District Judge's aggregate class damages formula should be used to compute the individual damages of two sets of opt-out plaintiffs:
>
> A formula created by a district judge in a gigantic MDL to calculate damages for thousands and thousands of claims is highly unlikely to be probative when we are having an evidentiary hearing that is specific to two claims where you've actually given me – albeit late-created, but you've given me actual estimates. There is no need to apply Judge Fallon's formula that was intended to address these thousands of claims when we are only talking about two homes.[72]

The Court went on to note that the Carters and Gibbs later filed a "Motion to Take Judicial Notice and Adhere to the Law of the Case Regarding Remediation Damages," wherein the plaintiffs again asserted that the *Germano* Damages FOFCOL constituted the law of the case.[73] The Court found

---

[68] *See id.*, at *1.
[69] *See id.*
[70] *See id.*, at *4.
[71] *See id.,* at *6.
[72] *See id.*
[73] *See id.,* at *9.

that the "motion was incorrectly premised on the idea that "this proceeding is a continuation of the District Court's 2015 Rule 55(b) damages hearing," [which] . . . is simply not the case."[74]

In the opinion, Judge North also goes on to address the Carters' and Gibbs' "law of the case" argument directly, providing the reasons as to why the *Germano* Damages FOFCOL should not apply to the individual plaintiffs' determination of damages.[75] First, the Court found that:

> The purpose of the FOFCOL was to declare whether the Plaintiff class's aggregate damages proposal was appropriate in this unique case. The district Judge found that it was. (*Id*.). But that proposal—and the Court's adoption of the formula—was very clearly intended to solve a class-wide problem, as is evident by [several] statements in the FOFCOL[.][76]

As further evidence that the aggregate formula should not apply, Judge North highlighted the fact that the plaintiffs' cases were referred to Judge North for an individualized, evidentiary hearing, and that the language from the FOFCOL makes clear that the "'formula' [Judge Fallon] approved was intended to solve a class-wide problem—in a case with well over 1,000 claimants."[77] Judge North concluded:

> It is clear to the undersigned that the District Judge's aggregate formula cannot be substituted for an evidence-based determination of these two Plaintiffs' damages. Consider the impact of allowing that option to prevail – two plaintiffs in an MDL involving thousands of homes could opt out of a class-wide settlement in which every plaintiff received less than they would have if that formula had been applied to their cases, only to demand in their individual cases that the formula be applied to their claims.[78] Such a result, aside from being contrary to law, is contrary to common sense and public policy.[79]

---

[74] *See id.*

[75] *See id.*, at \*15.

[76] *See id*.

[77] *See id.* at \*16.

[78] In a footnote, Judge North explains that "the aggregate damages formula [in the *Germano* Damages FOFCOL] was never applied to a single plaintiff because a class settlement was reached and approved before it could be. Plaintiffs' counsel was essentially arguing that he should be allowed to opt out of a settlement and then apply the never-applied class damages formula to recover 100% of his clients' damages when none of the class members who settled did so. It goes without saying that, as a matter of public policy, such a bizarre result would be anathema to a policy favoring class settlements." *See id.*, at \*6 n. 5.

[79] *See id.*

The Court ultimately found that the plaintiffs failed to meet their burden to prove their damages, and the Court found in favor of Defendant Taishan Gypsum.[80]

Judge North's reasoning in declining to find the *Germano* Damages FOFCOL dispositive of the Carters' and Gibbs' damages applies here with even greater force. The Carters' and the Gibbs' claims were plaintiffs in the same default proceeding against the Taishan Defendants who, unlike the Knauf Defendants, were at least named defendants in the *Germano* Damages FOFCOL.[81] Moreover, the Carters and the Gibbs were still able to reap the benefits of the Taishan Defendants' default, and accordingly, the only issue before the Judge North in the referenced opinion was "the quantum of damages."[82] Despite these similarities between the Carters' and Gibbs' claims and those addressed by the Court in the *Germano* Damages FOFCOL, the Court nevertheless found the "aggregate class damages formula" inapplicable.

Here, the Knauf Defendants were not parties to the *Germano* bellwether trial and, because the FOFCOL were a product of the Taishan Defendants' default, there can be no legitimate argument that the Knauf Defendants' interests were at all represented during those proceedings.[83] Moreover, as explained by Judge North, allowing Plaintiffs to reap the benefits of the *Germano* Damages FOFCOL defeats the purpose of these individual trials and would prejudice the class members who did timely opt into the class proceedings.[84] Plaintiffs have the burden to prove all elements of their claim in these circumstances and, as explained by Judge North, allowing Plaintiffs to reap the benefits of findings of fact made in a class action against defaulting

---

[80] *See id.*, at *20.
[81] *See id.* at *1.
[82] *See id.*
[83] Plaintiffs' Motion addresses only the doctrine of the law of the case, but it should be noted that a claim for collateral estoppel would fail for these same reasons. *See Sw. Airlines Co. v. Tex. Int'l Airlines*, 546 F.2d 84, 95 (5th Cir. 1977) (explaining the limited circumstances in which collateral estoppel can apply to a non-party).
[84] *See generally, id.*, at 16.

defendants, to which case neither Plaintiffs nor Defendants were present, is "contrary to law, . . contrary to common sense and public policy."[85]

### III.   The Fifth Circuit in *In re Chevron* Instructed Courts to Avoid Extrapolating Bellwether Rulings in the Absence of a Comprehensive Finding of "Representativeness"

In *In re Chevron*, the Fifth Circuit, while recognizing the policy goals underlying the utilization of bellwether trials, also cautioned that the extrapolation of bellwether rulings to individual cases beyond the case tried can run afoul of the "elements of basic fairness contained in our historical understanding of both procedural and substantive due process."[86] Accordingly, the Fifth Circuit held that:

> [B]efore a trial court may utilize results from a bellwether trial for a purpose that extends beyond the individual cases tried, it must, prior to any extrapolation, find that the cases tried are representative of the larger group of cases or claims from which they are selected. Typically, such a finding must be based on competent, scientific, statistical evidence that identifies the variables involved and that provides a sample of sufficient size so as to permit a finding that there is a sufficient level of confidence that the results obtained reflect results that would be obtained from trials of the whole. *See Hilao,* 103 F.3d at 786; Michael J. Saks & Peter David Blanck, *Justice Improved: The Unrecognized Benefits of Aggregation and Sampling in Mass Torts*, 44 STAN. L. REV. 815 (1992). It is such findings that provide the foundation for any inferences that may be drawn from the trial of sample cases. Without a sufficient level of confidence in the sample results, no inferences may be drawn from such results that would form the basis for applying such results to cases or claims that have not been actually tried.

*Id*. at 1020. Since this rule was introduced in *In re Chevron*, courts have often considered its application in deciding whether to apply the findings from a bellwether trial to other individuals cases that are members of the *same certified class* as the bellwether case to be tried.[87]

---

[85] *See id.*

[86] 109 F.3d 1016, 1021 (5th Cir. 1997).

[87] *See, e.g., Cimino v. Raymark Indus., Inc.,* 151 F.3d 297, 319 (5th Cir. 1998) (finding that the trial court's proposed "trial plan," as applied to the class action, violated the defendant's Seventh Amendment rights); *MP Vista, Inc. v. Motiva Enters., LLC*, 286 F.R.D. 299, 313 (E.D. La. 2012) ("[T]he Court also agrees with Defendants that Plaintiffs' trial plan raises Seventh Amendment concerns in that a second phase jury would be unable to determine damages without revisiting an earlier jury's determination of causation or in that a special master would calculate damages based upon facts not determined by a jury.").

Here, Plaintiffs request that the Court extrapolate the findings of prior, unrelated bench, bellwether trials, for which no finding of "representativeness" to Plaintiffs' individual case has been made, and impute those findings to dispose of outstanding issues in their individual jury trial. Again, the *Germano* Damages FOFCOL were a product of the Taishan Defendants' fault and proceedings to which the Knauf Defendants were not parties, and the *Hernandez* FOFCOL were the product of several stipulations, including a stipulation specific to the scope of remediation and a stipulation that no adjudication in that matter will carry preclusive effect.[88] Moreover, as Plaintiffs themselves have emphasized in each pleading thus far, their properties are "unique,"[89] and the Chinese-manufactured drywall at each property is contained to certain floors.[90] These facts alone clearly evidence that the *Chevron* requirements of "representativeness" are not met and that the findings from that case should not be extrapolated.

Finally, unlike in most applications of *Chevron*, Plaintiffs here do not ask that the results of a bellwether trial be applied to all other members of that same class, but that the results of a bellwether trial be extended to a wholly unrelated case merely because it was consolidated in the MDL years later. To this point, it bears emphasizing that the Court denied class certification of the consolidated *Bennett* action—the larger action with which Plaintiffs' case was consolidated in the MDL—because the individual issues of fact and law did not "predominate" under Federal Rule of Civil Procedure 23(b)(3).[91] In a recent order, the Court further clarified that the individual cases "[in the *Bennett* action] were consolidated 'merely for reasons of convenience and judicial

---

[88] *See* Exhibits 2, February Joint Stipulation; March Joint Stipulation.

[89] *See* Doc. 23363-1, at 14 ("The Gharib Home is a unique and custom home that took years to build and is not one of the 'mass-produced' houses churned out following Hurricane Katrina.").

[90] *See* Doc. 23360-7, Excerpt from Phil Adams-Moss Report, at 1 (noting that only the first floor of the Beresford Property was remediated after Katrina); Doc. 23360-9, Excerpts from Macomber Depo. (explaining that he excluded the first floor of the Claiborne Property from his RS Means calculation for lack of damage).

[91] *See* Docs. 22524, 22528.

economy' and did not 'merge[] so as to become a single action.'"[92] Accordingly, in addition to the reasons already set forth herein, Plaintiffs' proposed application of the *Hernandez* and *Germano* rulings is contrary to Fifth Circuit precedent as it works to deprive the Knauf Defendants of their constitutional rights to fully and fairly litigate the claims against them.

## **CONCLUSION**

Plaintiffs have failed to provide this Court with any legal support for their contention that this Court's rulings in unrelated cases should apply as the law of the case in this matter, and the Knauf Defendants have presented this Court with a plethora of reasons as to why such application would be contrary to law and incredibly prejudicial to the Knauf Defendants. For the foregoing reasons, the Knauf Defendants ask that the Court deny Plaintiffs' Motion for Partial Summary Judgment. The Knauf Defendants further request any and all additional relief the Court deems just.

---

[92] *See* Doc. 2325,7 at 8. The Court made this statement in an Order affirming the finality of his previous Orders granting summary judgment in favor of the Knauf Defendants and against several *Bennett* plaintiffs, finding that Rule 54(b) certification was not required for the Orders to be final in accordance with *In re Katrina Canal Breaches*, 345 F. App'x 1, 3 (5th Cir. 2009). *See* MDL Doc. 23257.

Respectfully submitted,

**FISHMAN HAYGOOD, LLP**

*/s/ Daniel J. Dysart*

**KERRY J. MILLER (#24562), T.A.**
**PAUL C. THIBODEAUX (#29446)**
**DANIEL J. DYSART (#33812)**
**REBEKKA C. VEITH (#36062)**
**MICHAEL R. DODSON (#37450)**
201 St. Charles Avenue, Suite 4600
New Orleans, LA 70170
Telephone:      504.556.5549
Facsimile:       504.949.8202
Email:            kmiller@fishmanhaygood.com
Email:            pthibodeaux@fishmanhaygood.com
Email:            ddysart@fishmanhaygood.com
Email:            rveith@fishmanhaygood.com
Email:            mdodson@fishmanhaygood.com

*Counsel for Defendants,*
*Knauf Gips KG and*
*Knauf New Building System (Tianjin) Co. Ltd.*
*(f/k/a Knauf Plasterboard (Tianjin) Co., Ltd.*

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing pleading has been served upon Russ Herman, Plaintiffs' Liaison Counsel, by email, to all parties by electronically uploading the same to LexisNexis File & Serve in accordance with Pre-Trial Order No. 6, individually to pro se claimants via U.S. Mail, and that the foregoing was filed with the Clerk of Court of the United States Court for the Eastern District of Louisiana, on this 7th day of March, 2023.

*/s/ Daniel J. Dysart*

**DANIEL J. DYSART**