# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In Re:   CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL 2047 <br><br> SECTION "L" |
| **This document relates to:** <br><br> Case No. 20-cv-3264 | JUDGE ELDON FALLON <br><br> MAGISTRATE NORTH |

## THE KNAUF DEFENDANTS' STATEMENT OF FACTS IN SUPPORT OF THEIR OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

**MAY IT PLEASE THE COURT:**

Defendants, Knauf Gips KG and Knauf New Building System (Tianjin) Co. Ltd. ("KPT") (collectively, the "Knauf Defendants") hereby submit the following Statement of Facts in Support of Their Opposition to Plaintiffs' Motion for Partial Summary Judgment (Doc. 23361).

**I.   The Knauf Defendants' Responses to Plaintiffs' Statement of Facts**

Plaintiffs' Statement of Facts merely recounts several findings made in the Court's April 21, 2017 Findings of Fact and Conclusions of Law Related to the June 9, 2015 Damages Hearing in the *Germano, et. al v. Taishan Gypsum Co. Ltd., et al.*, case no. 09-6687 (hereinafter the "*Germano* Damages FOFCOL"). Thus, as an initial matter, the Knauf Defendants do not dispute the fact that these statements were included in the *Germano* Damages FOFCOL but dispute the

1

statements on the basis that the Court's *Germano* Damages FOFCOL are immaterial to this matter and unsupported by evidence in this matter. For these and the reasons more fully provided below, the Knauf Defendants dispute Plaintiffs' Statement of Material Facts.

1. **Plaintiff's Statement of Fact:** As established by the U.S. Consumer Product Safety Commission ("CPSC"), the Florida Dept. of Health, other scientific entities, and this Court in the *Germano* FOFCOL, the defective nature of this Chinese drywall is undisputed.

    **Defendants' Response: Disputed**. The defective nature of Chinese-manufactured drywall has not been stipulated to or otherwise presented as undisputed in this matter. The Court's findings in *Germano* are unrelated to Plaintiffs' claims against the Knauf Defendants and are thus immaterial to this matter. The Knauf Defendants are willing to discuss this issue with Plaintiffs to narrow issues for the trial but as of this filing, the parties have not agreed to any stipulations.

2. **Plaintiffs' Statement of Fact:** The Chinese drywall in question has a significantly higher average concentration of strontium and significantly more detectable levels of elemental sulfur. It releases three main gases: (i) hydrogen sulfide ($H_2S$), (ii) carbonyl sulfide (COS), and (iii) carbon disulfide ($CS_2$). Germano FOFCOL at 12. The Plaintiffs' experts detected sulfur gas emissions by conducting laboratory tests on samples of this Chinese drywall. The CPSC, Florida Dept. of Health and other investigatory agencies and firms also reported that Chinese drywall emits sulfur gases. Id. at 12-13.

    **Defendants' Response: Disputed.** The Knauf Defendants dispute the statement as unsupported by evidence presented by Plaintiffs or their experts. Moreover, "the Chinese drywall in question" addressed at the *Germano* FOFCOL related to that manufactured by the Taishan Defendants—not the Knauf Defendants. The Court's findings in *Germano* are unrelated to Plaintiffs' claims or the Knauf Defendants and are thus immaterial to this matter.

3. **Plaintiffs' Statement of Fact:** The sulfur gases released by Chinese drywall are irritating to the human body during exposure. Exposed individuals reported irritation of the eyes, respiratory system, and skin, among other things. Id. at 13.

**Defendants' Response: Disputed.** Plaintiffs have not presented any evidence to support this contention. The Court's findings in *Germano* are unrelated to Plaintiffs' claims against the Knauf Defendants and are thus immaterial to this matter. Plaintiffs do not have any personal injury claims and their claims are limited to alleged property damages.

4. **Plaintiffs' Statement of Fact:** The sulfur gases released by this Chinese drywall cause offending odors in homes, making them hard if not impossible to live in, and are corrosive to metals, particularly copper and silver, which are uniquely vulnerable to corrosion from sulfur gases. Id. The sulfur gases emitted from Chinese drywall create an environment classified among the most severe industrial corrosive environments in the Battelle Classification scheme and the standards established by the International Standards Association. Id. at 19-20.

**Defendants' Response: Disputed.** Plaintiffs have not presented any evidence to support this contention. The Court's findings in *Germano* are unrelated to Plaintiffs' claims against the Knauf Defendants and are thus immaterial to this matter.

5. **Plaintiffs' Statement of Fact:** Forensic examination by scientific and technical experts, including testing of building materials in the damaged homes of the *Germano* Plaintiffs, further confirmed the wide-spread impact of the corrosive environment, which included corrosion of copper wiring, copper pipes and silver-based components in electronics, including HVAC circuitry and brazing on pipes, causing premature failure of electrical and mechanical devices. *Id*. at 14, 23.

**Defendants' Response: Disputed.** Plaintiffs have not presented any evidence to support this contention. The Court's findings in the *Germano* Damages FOFCOL are unrelated to

3

Plaintiffs' claims against the Knauf Defendants and are thus immaterial to this matter. The Knauf Defendants are willing to discuss this issue with Plaintiffs to narrow issues for the trial but as of this filing, the parties have not agreed to any stipulations.

6. **Plaintiffs' Statement of Fact:** The Court adopts and incorporates herein the Germano FOFCOL, which accurately explains the scope of remediation required for class plaintiffs' properties. Germano FOFCOL at 29-31; In re Chinese Manufactured Drywall Prod. Liab. Litig., 706 F. Supp 2d 655 (E.D. La. 2010).

**Defendants' Response: Disputed.** Plaintiffs have not presented any evidence to support this contention. The Court's findings in the *Germano* Damages FOFCOL, or the *Germano* Default FOFCOL, are unrelated to Plaintiffs' claims or the Knauf Defendants and are thus immaterial to this matter. The appropriate scope of remediation pertinent to Plaintiffs' properties is set forth in The Knauf Defendants' expert's report. *See* Doc. 23363-2, Phil Adams Report.

**Plaintiffs' Statement of Fact:** After considered analysis of the impracticality and risks of selective mediation approach, the Court found in Germano and re-affirms herein that remediating a Chinese drywall property requires complete remediation and cleaning; thus, the Court again rejects any remediation approach that favors selective remediation such as the one originally proposed by the Knauf experts in Germano. Id. The remediation protocol fashioned in Germano is evidence based and has been confirmed via its application in the actual remediation of several thousand homes.

**Defendants' Response: Disputed.** Plaintiffs have not presented any evidence to support this contention. The Court's findings in the *Germano* Damages FOFCOL are unrelated to Plaintiffs' claims against the Knauf Defendants and are thus immaterial to this matter. The appropriate scope of remediation pertinent to Plaintiffs' properties is set forth in The Knauf

Defendants' expert's report. *See* Doc. 23363-2, Phil Adams Report.

7. **Plaintiffs' Statement of Fact:** The scientific and practical constructability evidence presented before this Court, which relies on long-term observation, sampling and testing of properties with Chinese drywall, scientific investigation of Chinese drywall and the science of corrosion, practical construction experience (particularly the experience of the national builders), and electric and building codes, demonstrates that proper remediation of the danger posed by Chinese drywall must include the removal of all drywall, all electrical wiring, the entire HVAC system, and many other items such as appliances, carpet, cabinetry, trim work and flooring. Germano FOFCOL at 27-55; Hernandez FOFCOL at 20-34; Transcript at pp. 106:8-110:3.

**Defendants' Response: Disputed.** Plaintiffs have not presented any evidence to support this contention. The Court's findings in the *Germano* Damages FOFCOL are unrelated to Plaintiffs' claims against the Knauf Defendants and are thus immaterial to this matter. The appropriate scope of remediation pertinent to Plaintiffs' properties is set forth in The Knauf Defendants' expert's report. *See* Doc. Phil Adams Report, 23363-2.

8. **Plaintiffs' Statement of Fact:** This scope of remediation is necessary even in homes with "mixed" drywall, where Chinese and non-reactive drywall may be found, because the sulfur gases disburse and circulate creating a generally corrosive environment and, moreover, there is no reliable or practicable method for selective identification and removal of Chinese drywall in mixed homes. Germano FOFCOL at 27-40. Large Florida homebuilders with extensive experience in Chinese drywall remediation have determined that removal of all drywall in affected homes is efficient and cost-effective, and that attempted selective identification and removal of CDW is neither efficient nor cost-effective. Id. at 31.

**Defendants' Response: Disputed.** Plaintiffs have not presented any evidence to support

this contention. The Court's findings in the *Germano* Damages FOFCOL are unrelated to Plaintiffs' claims against the Knauf Defendants and are thus immaterial to this matter. The appropriate scope of remediation pertinent to Plaintiffs' properties is set forth in The Knauf Defendants' expert's report. *See* Doc. 23363-2, Phil Adams Report.

9.  **Plaintiffs' Statement of Fact:** It is both economical and practical to remove all the wiring while the drywall is removed, rather than removing only some of the wiring at the time of remediation and then risk later having to tear down the drywall again in the event that additional wiring exposed to the sulfur gases is harmed or fails. Additionally, the low-voltage wiring supporting life and safety devices such as fire alarms and smoke detectors should be removed and replaced because of the low cost of replacement when compared with the high risk of injury or death if these devices are not functioning properly. Id. at 39.

**Defendants' Response: Disputed.** Plaintiffs have not presented any evidence to support this contention. The Court's findings in the *Germano* Damages FOFCOL are unrelated to Plaintiffs' claims against the Knauf Defendants and are thus immaterial to this matter. The appropriate scope of remediation pertinent to Plaintiffs' properties is set forth in the Knauf Defendants' expert's report. *See* Doc. Phil Adams Report, 23363-2.

10. **Plaintiffs' Statement of Fact:** Copper pipes and HVAC units must be replaced. It is more cost-effective and less time consuming to remove and replace all copper pipes and the HVAC units in Chinese drywall properties as opposed to attempting to "clean" the corrosion off copper components and HVAC ductwork. Id. at 39-46.

**Defendants' Response: Disputed.** Plaintiffs have not presented any evidence to support this contention. The Court's findings in the *Germano* Damages FOFCOL are unrelated to Plaintiffs' claims against the Knauf Defendants and are thus immaterial to this matter. The

appropriate scope of remediation pertinent to Plaintiffs' properties is set forth in The Knauf Defendants' expert's report. *See* Doc. Phil Adams Report, 23363-2.

11. **Plaintiffs' Statement of Fact:** The evidence shows that carpeting must be replaced because attempting to remove and store the carpet during the remediation is not cost-effective. Similarly, hardwood or vinyl flooring must be replaced because dust generated during the remediation process will intrude into the cracks and crevices of the flooring. However, the tile flooring may be properly protected during the remediation process, and if this can be done, the Court finds that it does not need to be removed and replaced. Id. at 49-50.

**Defendants' Response: Disputed.** Plaintiffs have not presented any evidence to support this contention. The Court's findings in the *Germano* Damages FOFCOL are unrelated to Plaintiffs' claims against the Knauf Defendants and are thus immaterial to this matter. The appropriate scope of remediation pertinent to Plaintiffs' properties is set forth in The Knauf Defendants' expert's report. *See* Doc. 23363-2, Phil Adams Report.

12. **Plaintiffs' Statement of Facts:** Similarly, it is more cost-effective to replace cabinets, countertops, trim, crown molding, baseboards, bathroom fixtures, and insulation than attempt exacting removal, storage and subsequent re-installation. Id. at 51-53.

**Defendants' Response: Disputed.** Plaintiffs have not presented any evidence to support this contention. The Court's findings in *Germano* Damages FOFCOL are unrelated to Plaintiffs' claims against the Knauf Defendants and are thus immaterial to this matter. The appropriate scope of remediation pertinent to Plaintiffs' properties is set forth in The Knauf Defendants' expert's report. *See* Doc. 23363-2, Phil Adams Report.

13. **Plaintiffs' Statement of Facts:** In order to eliminate the tremendous amount of dust produced from removal of the drywall, and to eliminate the offensive odor of the Chinese drywall,

properties need to be cleaned and aired-out after remediation is complete. A HEPA vacuum should be used to remove the fine drywall dust and other particles. Additionally, properties should be wet-wiped or power washed to eradicate any remaining particles. Id. at 53.

**Defendants' Response: Disputed.** Plaintiffs have not presented any evidence to support this contention. The Court's findings in the *Germano* Damages FOFCOL are unrelated to Plaintiffs' claims against the Knauf Defendants and are thus immaterial to this matter. The appropriate scope of remediation pertinent to Plaintiffs' properties is set forth in The Knauf Defendants' expert's report. *See* Doc. 23363-2, Phil Adams Report.

14. **Plaintiffs' Statement of Facts:** Following the deconstructing phase of the remediation process, the properties will need to be inspected by an independent and qualified engineering company. This is important for insurance, resale potential, and peace of mind for the present occupants. The independent and qualified engineering company should provide a letter or report indicating that the remediation has been correctly performed. Id. at 53-54.

**Defendants' Response: Disputed.** Plaintiffs have not presented any evidence to support this contention. The Court's findings in the *Germano* Damages FOFCOL are unrelated to Plaintiffs' claims against the Knauf Defendants and are thus immaterial to this matter. The appropriate scope of remediation pertinent to Plaintiffs' properties is set forth in The Knauf Defendants' expert's report. *See* Doc. 23363-2, Phil Adams Report.

15. **Plaintiffs' Statement of Facts:** The necessary remediation proposed by the PSC is essentially the same in all material respects as the scope of remediation being utilized by national builders Beazer Homes and Lennar Homes. National builders Beazer and Lennar have also independently assessed the need for complete remediation through scientific evidence, practical cost considerations, and hands-on experience with the problem. Although in theory, a thorough

cleaning or selective replacement of contaminated drywall may be an option, in practice, the evidence does not support the feasibility of such an option. The alternative remedies to a complete remediation that have been tried or suggested, such as selective identification and removal of Chinese drywall, "cleaning" corroded wires, switches, and contact points, leaving corroded wires and switches in place, clipping the exposed ends of the corroded wires and splicing wires, or making new junction boxes, will not make the plaintiff whole, will not be adequate from a scientific or practical standpoint, and will not provide safety and marketability to the property owner. Id. at 54.

**Defendants' Response: Disputed.** Plaintiffs have not presented any evidence to support this contention. The Court's findings in the *Germano* Damages FOFCOL are unrelated to Plaintiffs' claims against the Knauf Defendants and are thus immaterial to this matter. The appropriate scope of remediation pertinent to Plaintiffs' properties is set forth in The Knauf Defendants' expert's report. *See* Doc. 23363-2, Phil Adams Report.

16. **Plaintiffs' Statement of Fact:** Thus, in sum, the appropriate scope of remediation includes: removal and disposal of all damaged and affected building components in the properties, replacement of all drywall, replacement of entire HVAC assembly, replacement of entire electrical system (including receptacles and switches), replacement of all copper and silver plumbing and electrical switches, replacement of all items that are likely to be damaged during demolition (i.e., cabinets, trim and baseboards), replacement of items that are ultimately more efficient to replace than restore, such as carpet and flooring, a complete cleaning of the premises, and confirmation from an independent and qualified engineering company to confirm the quality and completeness of the cleanup and provide the necessary assurances for insurance, resale potential and peace of mind for the affected property owners. As mentioned, the scope of remediation is supported by the

testimony of the experts and confirmed by the remediation of over 2,200 homes carried out in the Knauf Settlement Program.

**Defendants' Response: Disputed.** Plaintiffs have not presented any evidence to support this contention. The Court's findings in the *Germano* Damages FOFCOL or the *Hernandez* Damages FOFCOL are unrelated to Plaintiffs' claims against the Knauf Defendants and are thus immaterial to this matter. The appropriate scope of remediation pertinent to Plaintiffs' properties is set forth in The Knauf Defendants' expert's report. *See* Doc. 23363-2, Phil Adams Report.

**II.     The Knauf Defendants' Opposing Statement of Material Facts:**

1. The Gharibs' suit against the Knauf Defendants is one of few remaining individual cases in MDL No. 2047, which was formed in 2009 to consolidate what were ultimately hundreds of lawsuits involving thousands of plaintiffs who alleged damages associated with Chinese-manufactured drywall.[1]

2. Since that consolidation, the Knauf Defendants have participated in extensive discovery—including thousands of depositions and the exchange of millions of documents—and a largescale settlement program (the "Knauf Class Settlement Agreement") that resulted in mediation of over 2,000 homes.

3. The deadline to file claims to the Knauf Class Settlement Agreement was October 25, 2013.

4. In November 2014, over a year after the October 25, 2013 deadline to participate in the Knauf Class Settlement Agreement and several years after the creation of this MDL, after the Knauf pilot program and after the Knauf supply chain of interlocking class settlements,

---

[1] *See In re Chinese Manufactured Prods. Liab. Litig.*, 894 F. Supp. 2d 819, 830 (E.D. La. 2012).

Elizabeth Bennett and several other individual property owners filed suit against the Knauf Defendants in the Northern District of Alabama (the "*Bennett* Action").

5. The claims were transferred and consolidated in MDL 2047. Additional claimants, like Plaintiffs in this action, were later added to the *Bennett* Action in MDL 2047.

6. Following substantial pre-trial discovery and litigation in the MDL Court, on November 23, 2020, this Court severed Plaintiffs' claims, alongside those of nine other plaintiffs, from the larger *Bennett* Action so that they could file separate amended complaints and proceed independently in their final preparations for trial.[2]

7. In Plaintiffs' operative Amended Complaint, Plaintiffs assert claims against the Knauf Defendants for redhibition and under the Louisiana Products Liability Act ("LPLA"), alleging damages to two of their properties caused by drywall manufactured by the Knauf Defendants (hereinafter "KPT Drywall").[3]

8. The two allegedly damaged properties include Plaintiffs' two-story residence bearing municipal address 4 Beresford Drive, Metairie, Louisiana 70118 (hereinafter the "Beresford Property"), and a three-story mixed commercial and residential building bearing municipal address 8807 South Claiborne Avenue, New Orleans, Louisiana (hereinafter the "Claiborne Property").

9. Before Plaintiffs' claims were severed from the *Bennett* Action, the Court issued a Case Management Order setting forth deadlines for discovery, including the disclosure of expert witnesses and opinions. Plaintiffs designated and disclosed reports and disclosures for a general causation expert, Howard Ersham, and a damages expert, Shawn Macomber.

---

[2] *See* Doc. 22980.
[3] *See* Case 2:20-cv-3264, Doc. 1; *see also* Doc. 21334 at ¶¶ 86-108; Doc. 22925 (limiting Louisiana plaintiffs' claims to redhibition and LPLA claims).

11

10. However, on December 16, 2022, Plaintiffs filed a Motion to Add Expert Disclosures, wherein Plaintiffs sought to substitute Mr. Macomber's opinion for that of a new damages expert, David Herring.[4]

11. Mr. Herring relied upon the Xactimate method—the same method utilized by Defendants' expert, Phil Adams—to reach his conclusion,[5] but he opined that there were additional damages to Plaintiffs' properties not raised by Plaintiffs' previous expert, including damages to the second floor of Beresford Property and the first-floor commercial spaces, stairwells, and third floor of the Claiborne Property.[6]

12. On February 6, 2023, this Court denied Plaintiffs' Motion, finding the proposed untimely disclosure would "significantly prejudice Defendants in this matter and potentially in other pending Chinese Drywall cases."[7]

13. The case of *Germano, et al. v. Taishan Gypsum Co., Ltd., f/k/a Shandong Taihe Dongxin Co. Ltd., et al.*, Case No. 09–6687 (E.D. La.), was one of four cases initially levied against the Taishan Defendants and which served as the "main vehicle" for the MDL litigation involving the Taishan Defendants.[8]

14. After one of the Taishan Defendants, TG, failed to make an appearance in *Germano* and one of the other matters, the Court entered a preliminary default against TG.[9]

15. In furtherance of the preliminary default, the Court held an evidentiary hearing, without a jury, in *Germano* to address the scope and cost of remediation, and with respect to which

---

[4] *See generally*, Doc. 23349 (Motion to Add Expert Disclosures); Doc. 23358 (Order and Reasons).
[5] *See* Doc. 23349-11 (David Herring Report).
[6] *See generally,* Doc. 23349 (Motion to Add Expert Disclosures); Doc. 23349-11 (David Herring Report).
[7] *See* Doc. 23358, at 5.
[8] *See Germano* Damages FOFCOL, Doc. 20741, at 5.
[9] *See id.* at 7.

12

the Court allowed several plaintiffs to intervene and present evidence, and subsequently entered the *Germano* Default FOFCOL and a Final Default Judgment against TG.[10]

16. Relevant here, and as heavily emphasized in Plaintiffs' Motion *in Limine*, the Court found in the *Germano* Default FOFCOL that the *evidence at the default hearing* showed, "*at least with regard to the representative cases*" which were "representative of a cross-section of contaminated homes," selective remediation of the damaged areas was not feasible in "homes in which there is a *substantial mixture*" of non-Chinese and Chinese-manufactured drywall.[11]

17. Following the entry of default, TG made its first appearance in the *Germano* case, appealed the default judgment, and filed several motions for lack of personal jurisdiction.[12] After years of extensive litigation, the Final Default Judgment against TG was affirmed on appeal and the Court found that it had personal jurisdiction over TG.[13]

18. The Taishan Defendants again "withdrew" from the litigation, and the Court issued a contempt ruling against them.[14]

19. In the Taishan Defendants' absence, the plaintiffs filed an Omnibus Motion for Class Certification.[15]

20. On September 26, 2014, the MDL Court issued a FOFCOL in which it granted the unopposed Motion and certified a class consisting of the property owners listed as plaintiffs "on the complaints in *Amorin, Germano, Gross, and/or Wiltz* (*i.e.,* not an absent class member), asserting claims for remediated damages arising from, or otherwise related to Chinese Drywall

---

[10] *See* "*Germano* Default FOFCOL," Doc. 2380; *Germano* Damages FOFCOL, Doc. 20741, at 5.
[11] *See Germano* Default FOFCOL, Doc. 2380, at 56, 62 (emphasis added).
[12] *See Germano* Damages FOFCOL*,* Doc. 20741, at 7–10.
[13] *See id*.
[14] *See id*. at 10.
[15] *See id.*

13

manufactured, sold, distributed, supplied, marketed, inspected, imported or delivered by the Taishan Defendants."[16]

21. The Court found that certification was particularly appropriate in light of "the narrow scope of the factual determinations left to be made" as a result of the "default judgment on liability" that had already been issued against TG.[17]

22. Following certification of the class but prior to the class damages hearing, the Taishan Defendants again appeared in the matter with new counsel.[18]

23. On June 9, 2015, the MDL Court finally held the class damages hearing to determine the damages the Taishan Defendants owed to the *Germano* class described above.[19] Again, neither of the Knauf Defendants were parties to the *Germano* action, the June 9, 2015 damages hearing, or the subsequent FOFCOL.[20]

24. Following the hearing, on April 21, 2017, the Court issued Findings of Fact & Conclusions of Law Related to the June 9, 2015 Damages Hearing ("the *Germano* Damages FOFCOL").[21]

25. Because the *Germano* Default FOFCOL and class certification findings "resolved a multitude of factual and legal issues," including liability, causation, and the right to recover damages,[22] the only issue before the MDL Court at the June 9, 2015 hearing, and subsequently

---

[16] *See* Doc. 180828, at 34–35 ("*Germano* Class Certification FOFCOL"); *see also Germano* Damages FOFCOL, Doc. 20741, at 10.
[17] *See Germano* Class Certification FOFCOL, at 16.
[18] *See Germano* Damages FOFCOL, Doc. 20741, at 11.
[19] *See id.* at 19.
[20] *See generally*, Doc. 20741.
[21] *See id.*
[22] *See id.* at 18.

decided by the Court in the *Germano* Damages FOFCOL, was "the amount of damages which should be awarded to the Class for property remediation."[23]

26. In the *Germano* Damages FOFCOL, the Court ultimately adopted the class plaintiffs' damages formula on a class-wide basis, which required damages be "calculated by multiplying the under air square footage of the affected properties listed in the revised Class Plaintiffs' Spreadsheet by $105.91 as adjusted by the RS Means location factor."[24]

27. In reaching this conclusion, the Court spent several pages analyzing whether the formulaic approach could appropriately be applied on a class-wide basis. The Court explained, however, that the class before it was unique, in that it could be susceptible to a formulaic and universally applied damages calculation. The Court provided:

> 63. [ . . . ] In most class actions, even if liability is established, the issue of causation is often inextricably intertwined with damages and remains to be litigated. In other words, even if a court finds that a defendant was negligent and that a plaintiff suffered damages, the court must still determine whether those damages were *caused* by that negligence.
>
> 64. With regards to the Taishan drywall in this case, in contrast to these typical class actions, there is no issue of either liability or causation. . . . Here, Taishan has been held liable for defective Chinese drywall, and any properties containing Chinese drywall are defective, requiring the removal of the Chinese-drywall.[25]

28. Thus, because of the limited issues outstanding following Taishan's default, the Court concluded that the formulaic approach was "superior to the thousands of individual proceedings that would result if Defendants' proposal for property by property inspection and estimation were accepted."[26]

---

[23] *See id.*; *see also id.* at 32 ("While the default judgment conclusively establishes liability, it is not conclusive of the class damages for remediation costs which Plaintiffs seek. Liability and damages require separate and equally 'rigorous analysis.'" (quoting *Comcast Corp. v. Behrend,* 133 S. Ct. 1426, 1433 (2013)).
[24] *See id*. at 50.
[25] *See id*. at 32-33 (emphasis in original).
[26] *See id*. at 48.

29. The Court further acknowledged that "there is some variation, but conclude[d] that the time, expense, and inefficiency of inspecting every affected property would result in an inequitable solution, given the delay these property owners have already experienced in obtaining relief."[27]

30. In the *Germano* proceedings, liability, causation, and the scope of remediation were established in Taishan's absence, and Taishan was only present for the final determination of costs, which was specifically tailored to be easily and efficiently applied across a large class.[28]

31. This Court has recently recognized in subsequent proceedings that "[w]hat sets Taishan apart from the other defendants is that it was defaulted by the District Judge …[and] the only issue to be decided [as to Taishan] is the quantum of damages."[29]

32. The Knauf Defendants were not present or otherwise represented in any of the proceedings leading to the FOFCOL. The *Germano* rulings simply cannot be dispositive or influential upon the Knauf Defendants' expert's opinion, or the jury's conclusion, as to the extent of Plaintiffs' damages. Plaintiffs' arguments to the contrary should be disregarded.

33. The trial in *Hernandez v. Knauf Gips KG* was the first and only bellwether trial conducted in the MDL against any of the Knauf Defendants, and the only claims tried were those against Defendant KPT.[30]

34. The *Hernandez* plaintiffs voluntarily dismissed their claims against all other defendants, including Knauf Gips, prior to trial.[31]

---

[27] *See id.*, at 47–48.
[28] *See generally, Germano* Damages FOFCOL, Doc. 20741.
[29] *See In re Chinese-Manufactured Drywall Prod. Liab. Litig.*, No. 09-MD-2047, 2022 WL 17684805, at *1 (E.D. La. Nov. 28, 2022), *report and recommendation adopted,* No. 09-MD-2047, 2022 WL 17672496 (E.D. La. Dec. 14, 2022).
[30] *See generally, Hernandez* FOFCOL, Doc. 2713, at 4.
[31] *See id.*

16

35. Contrary to Plaintiffs' assertion, Knauf Gips is not the manufacturer of KPT drywall and did not supply any KPT drywall to the United States.[32]

36. In preparation for the *Hernandez* bench trial, the *Hernandez* plaintiffs and KPT entered into two joint stipulations, which significantly narrowed the issues to be decided by the MDL Court at trial: a February 2010 Joint Stipulation and a March 2010 Joint Stipulation.[33]

37. Notably, in the February 2010 Joint Stipulation, the parties stipulated to the following:

> (3) This stipulation shall only apply to the redhibition and fitness for ordinary use claims and associated defenses asserted by Plaintiffs in *Hernandez v. Knauf, et al.* (Case No. 09-6050). This stipulation shall not apply to any other claims or defenses which have been asserted or which may be asserted in the future by Plaintiffs, KPT, or any other party in any other matter. KPT expressly reserves, and does not waive, any of its defenses. KPT, nevertheless, stipulates in the *Hernandez* case, and only the *Hernandez* case, that it will not assert certain defenses, including comparative fault, contribution and/or reduction in KPT's legal responsibility to Plaintiffs as a result of any alleged conduct or fault of any other party, person or entity, in the *Hernandez* case, (and only in the *Hernandez* case). KPT expressly reserves and does not waive any other defenses in this or any other case. ***KPT and Plaintiffs do not intend that this stipulation, or any of its terms, <u>or any adjudication of any matter in this case</u>, be used for purposes of collateral estoppel or issue preclusion or as an evidentiary admission in any other case.***[34]

38. Also in the February 2010 Joint Stipulation, the parties agreed, among other things, that: plaintiffs would only pursue claims in redhibition and fitness for ordinary use, plaintiffs' claimed damages were not precluded under the LPLA, plaintiffs' claims had not prescribed, plaintiffs bought certain KPT drywall, KPT manufactured and sold the drywall in the plaintiffs' house, and that the drywall in plaintiffs' home emits certain reduced sulfur gases and odor.[35]

---

[32] *See* Exhibit 1, Knauf Gips Profile Form.
[33] *See* Exhibit 2, February 2010 Joint Stipulation; Exhibit 3, March 2010 Joint Stipulation. Undersigned counsel was counsel to Defendant KPT at the *Hernandez* trial and submits to the Court that the primary purpose of the *Hernandez* bellwether trial was to facilitate settlement discussions between the parties. The stipulations were intended to narrow the issues before the MDL Court in accordance with this purpose.
[34] *See* Exhibit 2 February 2010 Joint Stipulation, at 2–3 (emphasis added). The MDL Court also summarized several of the stipulations in its FOFCOL. *See* Doc. 2713 at 5–7.
[35] *See id.*

39. In March of 2010, the *Hernandez* plaintiffs and KPT agreed to several more pre-trial stipulations. Most relevant here, the parties agreed that:

> 3. ***With respect to the appropriate scope of remediation for the Hernandez home, the parties agree that (except with respect to the possibility of maintaining certain "green board" in the bathrooms), all drywall in the home, both Chinese-manufactured and domestic, will be removed and replaced, as well as all insulation, all flexible duckwork, all switches, all receptacles, all molding, and the countertops.*** Beyond these agreed-upon elements of the scope of remediation, the parties are in disagreement and will present opposing evidence and testimony at trial on the scope of remediation. Likewise, as to the cost of any and all remediation activity, the parties remain in disagreement and will present opposing evidence and testimony at trial.[36]

40. The parties further agreed that certain evidence regarding "XRF and/or wire corrosion visual inspections as a techniques or combination of techniques to identify and/or remove Chinese drywall" would not be introduced, although KPT reserved its right to propose such a technique in further proceedings.[37]

41. In light of the parties' stipulations, the *Hernandez* bellwether trial, which was held before this Court from March 15, 2010 to March 19, 2010, effectively focused entirely on the issue of damages, but only to the extent that damages had not already been stipulated.[38]

42. Accordingly, the Court did not address several issues still outstanding with respect to the Gharibs' claims, including whether KPT was liable to the plaintiffs under their asserted legal theories, and whether the KPT drywall was the cause of the damage.[39]

43. Rather, the MDL Court's principal findings in its FOFCOL addressed the only issue to which the parties could not reach an agreement: the "proper remediation for the electrical,

---

[36] *See* Exhibit 3, March 2010 Joint Stipulation, at 2 (emphasis added).
[37] *See id.*, at 2.
[38] *See generally*, *Hernandez* FOFCOL, Doc. 2713, at 15 ("The parties agree that remediation is necessary. They also agree on various aspects of this remediation. But they disagree on the full scope of the remediation and the appropriate costs thereof. The only issue in this case, therefore, are the nature and scope of the remediation necessary to properly restore the Plaintiffs' home and the resulting damages if any.").
[39] S*ee generally, id*.; *see also id*., at 17 ("The evidence is conclusive that the corrosion in the Hernandez home was proximately caused by exposure to Chinese drywall manufactured and sold by Defendant." (citing expert testimony)).

plumbing, and HVAC systems, and other items which are involved in the removal of drywall or contain silver and copper components" and the cost of such remediation.[40]

44. After weighing considerable evidence, expert testimony, and the damages available to plaintiffs under their asserted causes of action (redhibition and fitness for ordinary use), this Court rendered specific findings with respect to the appropriate scope of remediation and damages owed to plaintiffs.[41]

45. Following the *Hernandez* bellwether trial, on December 20, 2011, the Knauf Defendants entered into a global, class Settlement Agreement with the Plaintiffs' Steering Committee, which ultimately resulted in successful remediation of over 2,000 homes.

46. The Gharibs did not timely file claims to the Knauf Class Settlement Agreement and years later have asserted these current claims.

47. The Gharibs have emphasized the purported "uniqueness" of their properties on several occasions. *See, e.g.,* Doc. 23363-1, at 14 ("The Gharib Home is a unique and custom home that took years to build and is not one of the "mass-produced" houses churned out following Hurricane Katrina. Likewise, the Gharib Commercial Property also contains components that typical, residential structures do not have.").

48. Certain floors of Plaintiffs' properties do not contain KPT Drywall.[42]

---

[40] *See id.* at 10–24.
[41] *See generally*, *Hernandez* FOFCOL, Doc. 2713.
[42] *See* Doc. 23360-7, Excerpt from Phil Adams-Moss Report, at 1 (noting that only the first floor of the Beresford Property was remediated after Katrina); Doc. 23360-9, Excerpts from Macomber Depo. (explaining that he excluded the first floor of the Claiborne Property from his RS Means calculation for lack of damage).

19

Respectfully Submitted,

**FISHMAN HAYGOOD, LLP**

*/s/ Daniel J. Dysart*
_____
**KERRY J. MILLER (#24562), T.A.**
**PAUL C. THIBODEAUX (#29446)**
**DANIEL J. DYSART (#33812)**
**REBEKKA C. VEITH (#36062)**
**MICHAEL R. DODSON (#37450)**
201 St. Charles Avenue, Suite 4600
New Orleans, LA 70170
Telephone:     504.556.5549
Facsimile:      504.949.8202
Email:            kmiller@fishmanhaygood.com
Email:            pthibodeaux@fishmanhaygood.com
Email:            ddysart@fishmanhaygood.com
Email:            rveith@fishmanhaygood.com
Email:            mdodson@fishmanhaygood.com

*Counsel for Defendants,*
*Knauf Gips KG and*
*Knauf New Building System (Tianjin) Co. Ltd.*
*(f/k/a Knauf Plasterboard (Tianjin) Co., Ltd.*

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing pleading has been served upon Russ Herman, Plaintiffs' Liaison Counsel, by email, to all parties by electronically uploading the same to LexisNexis File & Serve in accordance with Pre-Trial Order No. 6, individually to pro se claimants via U.S. Mail, and that the foregoing was filed with the Clerk of Court of the United States Court for the Eastern District of Louisiana, on this 7th day of March, 2023

 */s/ Daniel J. Dysart*
_____
**DANIEL J. DYSART**