UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In Re:   CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL 09-2047<br><br>SECTION "L" |
| This document relates to:<br><br>Case No. 20-cv-3264 | JUDGE ELDON FALLON<br><br>MAGISTRATE NORTH |

**REPLY MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT REGARDING APPLICATION OF THE COURT'S "GENERAL FINDINGS" IN ITS APRIL 21, 2017 FINDINGS OF FACT & CONCLUSIONS OF LAW (Rec. Doc. 20741) FILED BY PLAINTIFFS, JAWAD & FATME GHARIB**

**MAY IT PLEASE THE COURT:**

Plaintiffs herein, Jawad and Fatme Gharib (collectively referenced as the "Gharibs"), file the Reply Memorandum in support of their *Motion for Partial Summary Judgment regarding Application of the Court's "General Findings" in Its April 21, 2017 Findings Of Fact & Conclusions Of Law (Rec. Doc. 20741) Filed By Plaintiffs, Jawad & Fatme Gharib* (Rec. Doc. 23361). With the Court's recent denial of the Gharibs' request to add their new expert's disclosures, along with the discovery that their damages expert, Mr. Shawn Macomber, is not willing to testify, the Gharibs are very concerned that their ability to present their claims at trial will be severely limited. They fear that their properties, in which they have invested so much of their time, effort and personal savings, will be left in the same damaged condition it is in today; that the various components and personal property therein will continue to fail prematurely; and that they will not be able to sell their properties for anything close to what they are worth, absent the defective drywall. After reviewing the Xactimate estimates of Knauf's experts, Mr. Gharib was shocked to see that Mr. Adams did not even call for the replacement of the blackened, copper

piping and wiring that Mr. Adams, himself, documented as being damaged. The Gharibs' are also concerned that, after the dust settles from litigating their case and they are remediating their home, their contractor will find what the Gharibs have already documented -- that all the HVAC, plumbing, water, electrical components in their second-floor bedrooms and baths are corroded and must be replaced, and they will have to borrow hundreds of thousands of dollars to have all the second-floor walls and insulation removed and replaced. They have similar concerns with respect to the first and third floors of their commercial property.

The Gharibs' concerns about Mr. Adams' selective remediation approach are well founded. This Court has detailed a litany of problems associated with this selective remediation approach, as reported by field experts, in a series of Findings of Facts and Conclusions of Law in the MDL cases, including: (1) *Germano, et al. v. Taishan Gypsum Co. Ltd., et al.*, case no. 09-6687; (2) *Hernandez v. Knauf Gips KG*, Case No. 09-6050; and then (3) a *Findings of Fact & Conclusions of Law Related to the June 9, 2015 Damages Hearing*, which the Court applied to "ALL CASES" (Rec. Doc. 20741, p. 1) ("April 21, 2017 FOFCOL"). The visible damage to the Gharibs' properties are virtually identical to those described in *Germano*, *Hernandez* and the April 21, 2017 FOFCOL (see *e.g.*: Exhibit 3 to Gharibs' Motion *in Limine*, Adams' Phase 1 Inspection Letter for the Gharibs' home, Rec. Doc. 23363-3, p. 1, photos of damaged copper piping and wiring, and providing: "Moss and Associates detected a slight CDW type odor upon entering the home. All of the examined outlet ground wires were observed to be either black or dull. The Bathroom fixtures were pitted. The HVAC Refrigerant linesets were black."). But, the readily visible damage is only part of the story—the Court has voiced grave concerns about selectively replacing only the visibly damaged items or only cleaning those items.[1]  (See: April 21, 2017 FOFCOL, Rec. Doc. 20741, p.

---

[1] *See e.g.*; *Hernandez* FOFCOL, Rec. Doc. 2713, p. 25-26, finding, "[a]lthough scrubbing the wires with a Scotch Brite pad, as the Defendant urges, may remove visible signs of black corrosion film, **copper sulfide corrosion**

2

16-17, "Although in theory, a thorough cleaning or selective replacement of contaminated drywall may be an option, in practice, the evidence does not support the feasibility of such an option.").

These failures of the selective remediation approach do not change when applied to a different property or different case number. Nor do they improve when Knauf drywall is substituted for Taishan drywall. In fact, Knauf stipulated early in the MDL that its drywall is similar to Taishan's: "Knauf Plasterboard Tianjin (hereinafter "Knauf" or "KPT") and Plaintiffs Steering Committee (hereinafter "PSC") experts agree that **all of the problematic Chinese drywall products share similar chemical and physical properties**." (*Germano* FOFCOL, Rec. Doc. 2380, p. 17). As Mr. Gharib explained in his deposition, the defective drywall might be limited to certain areas of his properties, but the impacts manifest throughout the whole building:

> Q. ….Did you not intend to list the commercial space because the commercial space is not affected by the presence of Chinese drywall in the commercial space?
> A. The commercial space is affected. It is affected by the Chinese Sheetrock. It does not have Chinese Sheetrock, but the gases travel up and down the walls in this property because you can see that this is the same property, we're not moving next door. It is the same walls, the same space everywhere. The attic, for example, that attic, even though that it does not – the walls of it does not have Chinese Sheetrock, but the bottom, which is the ceiling of the apartment downstairs is Chinese Sheetrock, *and that gases travel everywhere in this -- in this whole building*.[2]

Mr. Gharibs' testimony is supported by evidence that defense expert provided, that the Gharibs and their experts have provided and, more importantly, the "general findings" of this Court:

> 5. Forensic examination by scientific and technical experts, including testing of building materials in the damaged homes of the Germano Plaintiffs, *further confirmed <u>the wide-spread impact of the corrosive environment</u>,* which included corrosion of copper wiring, copper pipes and silver-based components in electronics, including HVAC circuitry and

---

***remains***."; and p. 30, "[h]owever, *given the evidence demonstrating that there is corrosion on the plumbing systems and this corrosion may continue, that the corrosion may effect the functionality and longevity of the plumbing system,* and that the plumbing components are easily removed while all the drywall is out of the home, the Court finds that the entire plumbing system should be removed and all copper and silver components replaced."
[2] Ex. 2 to the Gharibs' Opposition to Defs' Motion for Partial Summary Judgment, Rec. Doc. at 123-124.

>brazing on pipes, causing premature failure of electrical and mechanical devices. Id. at 14, 23. (April 21, 2017 FOFCOL, Rec. 20741, p. 14) (emphasis added).

Defendants often-repeated mantra in their Statement of Contested facts is that the Gharibs have not presented evidence that *Germano*, *Hernandez* or the April 21, 2017 FOFCOL findings should be applied. As further explained below, this motion does not request application of all these decisions--the Gharibs' request is confined to application of the Court's findings in its Section III. of the April 21, 2017 FOFCOL (Rec. Doc. 20741), entitled "GENERAL FINDINGS ON CHINESE DRYWALL." Further, the Gharibs did, in fact, present evidence that these findings should be applied to their case. They specifically incorporated the Background section of their Memorandum in Support of Motion *in Limine* (Rec. Doc. 23363-1), which included evidence showing that Knauf drywall has been confirmed to exist in both of their properties (Exs. 2 and 3 thereto); that Mr. Adams also documented damaged and corroded items *in the attics* of both properties (*i.e.*, top floors thereof), demonstrating the reactivity of the defective drywall and its resulting "widespread impact of the corrosive environment"[3] (see Exs. 2 and 3, photos attached to Adams' Phase 1 Inspection letters); and they presented additional evidence of damaged components in other areas, where Defense expert refused to inspect (*i.e.* second floor of the Gharibs' home and first floor of their commercial property) (see: the Gharibs' Opposition to Defs' Motion for Partial Summary Judgment (Rec. Doc. 23375 and exhibits, which are incorporated herein).  They also presented evidence showing that their home is an open floor plan in which the first floor is open to second floor, suggesting the air circulates freely between those floors. (See: photos showing second story open to and shares same air with first story, Phase 1 Letter for

---

[3] April 21, 2017 FOFCOL, Rec. 20741, p. 14

Gharibs' Home, Ex. 2, p. 26, 90).  Defendants have offered no evidence to dispute any of the Gharibs' evidence or to distinguish the Court's previous rulings.

Defendants have also inaccurately inflated the scope of the Gharibs' *Motion for Partial Summary Judgment regarding Application of the Court's* ***"General Findings" in Its April 21, 2017 Findings Of Fact & Conclusions Of Law*** *(Rec. Doc. 20741) Filed By Plaintiffs, Jawad & Fatme Gharib* (Rec. Doc. 23361) (emphasis added).  Specifically, Knauf constructs a series of strawman arguments claiming the Gharibs' motion seeks to relieve them of the burden of establishing liability, causation and damages at trial and that the Gharibs' are seeking application of *all* findings of the Court's previous rulings, even the case-specific findings therein.  To be clear, the Gharibs' filed this motion seeking confirmation that only the Court's "general findings" in its April 21, 2017 *Findings of Fact and Conclusions of Law* would be applied to their case.  The Gharibs do not seek for the Court to rule on application of its previous case-specific findings in, as clearly delineated by the Court's headings therein, such as the propriety of the R.S. Means damage calculation or Xactimate or other findings that Knauf uses to distract from the pertinent issues.[4]  If the Gharibs' Motion were to prevail, they would still have to prove the existence of Knauf drywall in their home, that it is reactive and causing damages.  Some of the Court's "general findings" would assist in this burden, but would not be dispositive of those issues.  Upon establishing those facts, the Gharibs' Motion requests that the Court's "general findings" as to the proper scope of remediation and the protocols described therein would apply.  Those findings are not dispositive of the issues of remediation costs or how they should be calculated.  So, while the Gharibs' Motion seeks to narrow some of the issues at trial, based on this Court's repeated and consistent findings, there are still several property-specific issues that the Gharibs would have to establish at trial.

---

[4] Nevertheless, the Gharibs do intend to use the Court's previous case-specific findings as persuasive precedent for certain of their positions at trial, but the Gharibs do not take the position that those findings are binding in this case.

I. **The Court's "General Findings on Chinese Drywall" in its April 21, 2017 FOFOL Should Be Applied to the Instant Matter.**

In the April 21, 2017 FOFCOL, the Court recognized that this complete scope of remediation (that it applied to Taishan) was utilized in the Knauf Settlement Program. (See: Rec. Doc. 20741, p. 17, "As mentioned, *the scope of remediation is supported by the testimony of the experts and confirmed by the remediation of over 2,200 homes carried out in the Knauf Settlement Program*."). The Court also cites the *Hernandez* FOFCOL and *Germano* FOFCOL numerous times, together, throughout its April 21, 2017 FOFCOL. (See: Rec. Doc. 20741, p. 24, "[a]s this Court earlier determined and Mr. Inglis confirms, there is a well-established and defined scope of work necessary to fully remediate a Chinese drywall property. ***Germano FOFCOL*** at 27-55; ***Hernandez FOFCOL*** at 20-34; Tr. at 157:8-158:5; 159:21-160:1.") (emphasis added). **Why would the Court be citing *Hernandez* in support of its scope of remediation in Taishan proceeding, if those proceedings are so different in terms of the stipulations, properties involved, and parties, etc., that they have no precedential relationship?** The answer, of course, is that this scope of remediation and the recommendations and techniques apply in every property with Chinese drywall, regardless of whether the manufacturer is Taishan or Knauf, regardless of what stipulations Knauf may or may not have entered prior to the proceeding, and even regardless of the type of buildings and locations of the properties involved. (Rec. Doc. 20741, p. 24) ("..the scope of work is the same regardless of the type of building or the location of the property").

For instance, after some 8 years of hearing evidence on these issues and seeing the same reports from field experts, the Court clearly felt confident in April of 2017 to issue findings that, in a home with Chinese drywall, the copper piping and HVAC units must be replaced, "[c]opper pipes and HVAC units must be replaced. It is more cost-effective and less time consuming to

remove and replace all copper pipes and the HVAC units in Chinese drywall properties as opposed to attempting to "clean" the corrosion off copper components and HVAC ductwork. Id. at 39-46." Findings such as these do not change based on the property at issue. And, Knauf has failed to show that they should change based on some unique condition in the Gharibs' properties.

"It is well-established that '[o]rders issued by a federal transferee court remain binding if the case is sent back to the transferor court.' *In re Zyprexa Prods. Liab, Litig.*, 467 F.Supp.2d 256, 273 (E.D.N.Y.2006) (citing Manual for Complex Litigation § 20.133 (4th ed.2004)). This law of the case doctrine have been applied to other cases within the MDL. See: *In re Zyprexa Prod. Liab. Litig.*, 467 F. Supp. 2d 256, 273 (E.D.N.Y. 2006) ("The orders of the transferee court are binding on all cases pending before it, **and those which may be transferred to it as tag-along matters**, notwithstanding that those cases may ultimately be adjudicated in the federal and state courts in which they originated.") (emphasis added). But, even the law of the case doctrine does not apply here, which is disputed, Court's in these situations look to whatever precedent is available. See: *In re Ford Motor Co.*, 591 F.3d 406, 413 (5th Cir. 2009), which decided the issue of proper forum based on the Fifth Circuit's precedent instead of the law of the case doctrine, providing:

> District courts do not have to start from scratch each time they consider a forum's availability; **if we have found a forum to be available in earlier cases, district courts can rely on our precedent in similar cases to hold that it is still available**. Unless plaintiffs can show evidence distinguishing this case from our precedent, an order from a Mexican court dismissing *this exact case* for lack of jurisdiction, or reliable evidence of some subsequent change in Mexican law that calls our earlier determinations into serious question, plaintiffs cannot prevail in their FNC defense. Because no such evidence was presented, the transferee and transferor courts clearly erred in refusing to grant the FNC dismissal. (bold emphasis is ours; italics is the Fifth Circuit's).

Certainly, this Court's previous rulings have strong precedential value, particularly, based on the familiarity and knowledge this Court has with these issues.

7

## II. The Court's Previous Rulings of *Germano* and *Hernandez* Provide Precedent in this Instant Matter.

Knauf attempts, but struggles greatly, to distance itself from the previous rulings of *Germano* and *Hernandez* issued by this Court. While the Gharibs' do not argue that these rulings constitute the law of the case, they do provide important precedent that Knauf cannot avoid. In each of these rulings, a Knauf entity has either been directly named or its positions specifically addressed.

On November 25, 2009, this Court issued a scheduling order "setting an evidentiary hearing to address the scope and extent of appropriate remediation, and the cost of remediation" for the *Germano* case (Rec. Doc. 2380, p. 5). Knauf Plasterboard Tianjin Co. Ltd. ("KPT") moved for and were granted intervention. (*Id*.). Leading up to that hearing, "[v]igorous discovery was conducted by the Intervenors. Depositions were taken and expert reports were exchanged. A *Daubert* hearing was held on January 29, 2010. Subsequently, the Intervenors filed numerous motions *in limine*. <u>On the eve of the evidentiary hearing</u>, both Knauf and The Mitchell Co. voluntarily withdrew from the proceeding, leaving only the Plaintiff-intervenors to put on evidence." (*Id*.) (emphasis added). Knauf omits any mention of its participation throughout discovery as well as its subsequent exit from the proceeding on the eve of this hearing. Certainly, their departure from the proceeding should not operate as a pass for them on this ruling. Further, the Court specifically considered their evidence and addressed their expert's positions, finding that Knauf's screening methods were unreliable, including its observation of corrosion method, which the Court noted, in pertinent part: "…the observation of corrosion on electrical and mechanical systems in homes informs the determination of whether the home, ***as a whole***, suffers from corrosive attack associated with CDW…" and "…it is an incorrect assumption that effects of corrosive CDW are only very localized-***these gases actually disburse throughout the house***; and

8

"…it is impractical to determine where one drywall board stops and next one starts"; and "there is no guarantee that all CDW contamination can be removed or certify the same to code officials." (*Id*. at 30) (emphasis added). The Court ultimately concluded that "regulatory and scientific record demonstrates that removing all drywall *from a mixed drywall home* is the only method that ensures this goal is obtained." (*Id*. at 31) (emphasis added).

Of particular importance, Knauf fails to mention that some of the properties in *Germano* are very similar to the Gharibs' property, in that they were believed to contain Chinese drywall only in certain areas of their properties. For instance, the Baldwins' home

> In another Intervenor family's home (Baldwin), the stacking records indicated 77 sheets ***were placed only on the first floor of the home***. ***The second floor air conditioning zone of the Baldwin home, which is fed by air wholly from this floor, has suffered copper sulfide corrosion from gases released by CDW.*** Trial Transcript at 2/22 Vol. II p.20 (6-15) (21-24) - p.21 (3)(Rutila Testimony). ***The second floor of the house also has light switches which have suffered silver sulfide corrosion from gases released by CDW***. P1.2049-0008 to -0011 (SGH analysis of Baldwin light switches showing silver sulfide corrosion) P3.0636-0001 (Schematic of second floor, with sample locations), Trial Transcript at 2/22 Vol. II p.20(6-15), p.22(3-15)(Rutila Testimony). (Germano FOFCOL, Rec. Doc. 2380, p. 29).

See also *Germano* FOFCOL, p. 85-89: the Court's findings as to the Orlandos' property, noting: "They essentially abandoned their second story as the majority of the Chinese Drywall is believed to be there." The Court made no exceptions to its ruling requiring complete remediation (of all drywall and other components) for the Baldwin home or the Orlando home, despite the belief that those homes contained Chinese drywall *only in a particular floor of the property*. The Court noted that certain drywall boards believed to domestic were actually Chinese drywall, prompting the Court to find: "The intervenor homes have suffered corrosive attack and, in order to make the plaintiff whole, any system that lacks the ability to definitely identify the offensive drywall is unacceptable and rejected by this Court. The regulatory and scientific record demonstrates that

9

removing ***all drywall from a mixed drywall home*** is **<u>the only method</u>** that ensures this goal is obtained". (*Id.* at p. 31)  So, Knauf's attempt to distinguish the

Knauf emphasizes the Court finding in *Germano* that: "[t]he evidence reviewed by this Court indicates that the better and more realistic approach dictates the removal of all drywall in those homes in which there is a *substantial mixture*." (Rec. Doc. 2380, p. 56).  While Knauf hangs on this one phrase from the *Germano* ruling to imply that selective remediation might acceptable in a home without "substantial mixture" of Chinese and domestic drywall, Knauf fails to provide the remainder of that paragraph, where the Court continues: "This is necessary in order to remove and replace wires, pipes, and insulation, and to adequately clean the home. *Furthermore, the evidence indicates that it is virtually impossible to detect with reasonable accuracy which is and which is not Chinese drywall.*" (*Id.*).  Finally, Knauf also fails to mention that the Court did not continue to include this specification about the "substantial mixture" in any of its subsequent rulings. It ended with *Germano*.

Following the issuance of the *Germano* FOFCOL, Knauf filed a *Motion in Limine to Restrict the Evidentiary Hearing and the Court's Findings of Fact and Conclusions of Law to the Scope and Extent of Appropriate Remediation for the Seven Homes at Issue* (Rec. Doc. 1109) in an attempt to limit application of the Court's FOFCOL.  But, the Court denied Knauf's Motion outright, finding that the motion raises a non-issue and describing the hearing as playing an "important role." (Order and Reasons, filed 2/17/10, Rec. Doc. 1140, p. 4).

In *Hernandez*, KPT was actually a named defendant, so the precedential value of this ruling is undeniable.  In that ruling, the Court made the same findings about the lack of scientific and practical evidence supporting the selective remediation approach proposed by Knauf's experts.  Knauf makes a point of trying to distinguish Hernandez based on stipulations that Knauf entered

10

prior to that trial. That Knauf admitted certain facts prior to that proceeding, by itself, does not distinguish that case from the instant one; nor does it weigh in Knauf's favor. For instance, Knauf stipulated as follows:

> With respect to the appropriate scope of remediation for the Hernandez home, the parties agree that (except with respect to the possibility of maintaining certain "green board" in the bathrooms), ***all drywall in the home***, ***both Chinese manufactured and domestic, will be removed and replaced***, as well as ***all insulation***, ***all flexible duckwork*** [sic], ***all switches***, ***all receptacles, all molding, and the countertops***. stipulations relate to matters that Knauf. (Rec. Doc. 2380, p. 7). (Emphasis added.)

Knauf's admission that these components must be replaced is yet another example of its knowledge that proper remediation requires complete remediation. Further, it underscores the absurdity of Knauf's expert's failure to recommend replacement of these components in Gharibs' properties where they are found in areas that are known to contain KPT drywall. For instance, Mr. Adams fails to call for removal and replacement of any insulation whatsoever in either of the Gharibs' properties, even in the areas where he confirmed the existence of KPT drywall. While those knowledgeable regarding the effects of Chinese drywall would immediately recognize the impropriety of Mr. Adams' omission, the jury might not. And, with the Gharibs' damages expert unwilling to testify, it is important that the Court allow them to present evidence of the Court's previous findings in cases such *Hernandez*.

## CONCLUSION

Based on the foregoing reasons, Defendants have failed to raise a material issue of law or fact. Thus, the Gharibs' motion for partial summary judgment should be granted and the Court's findings in Section III, entitled "General Findings on Chinese Drywall", of its April 21, 2017 *Findings Of Fact & Conclusions Of Law Related to the June 9, 2015 Damages Hearing* (Rec. Doc. 20741) .

Respectfully submitted,

CRULL, CASTAING & LILLY

BY: */s/ Peter E. Castaing* .
    Edward J. Castaing, Jr. #4022
    Peter E. Castaing, #35019
    Pan American Life Center
    601 Poydras Street, Suite 2323
    New Orleans, LA 70130
    Telephone: (504) 581-7700
    Facsimile: (504) 581-5523
    pcastaing@cclhlaw.com

***Counsel for Jawad Gharib and Fatme Gharib***

## CERTIFICATE OF SERVICE

    I hereby certify that on March 15, 2023, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all known counsel of record.

                              /s/ *Peter E. Castaing*
                                  Attorney