UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | CIVIL ACTION<br><br>MDL NO. 2047<br><br>SECTION L (5) |
| *This Document Relates to:* | |
| *David Farnsworth, et al v. Gebr. Knauf Verwaltungsgesellschaft KG, et al.* NO. 2:21-CV-2046 | |

**ORDER & REASONS**

Before the Court are Defendants' partial motions to dismiss Plaintiffs' suit for failure to state a claim. R. Docs. 23445, 23446. The motions are brought by different Defendants but make identical arguments for dismissal. *See* R. Doc 23445 (on behalf of Knauf New Building System (Tianjin) Co. Ltd); R. Doc. 23446 (on behalf of Knauf Gips KG). Thus, the Court will address both motions in the instant Order. Plaintiff has not filed any opposition to the motions. Considering the record, the briefing, and the applicable law, the Court now rules as follows.

**I.    BACKGROUND**

From 2004 through 2006, the housing boom in Florida and rebuilding efforts necessitated by Hurricanes Rita and Katrina led to a shortage of construction materials, including drywall. As a result, drywall manufactured in China was brought into the United States and used to construct and refurbish homes in coastal areas of the country. Sometime after the installation of the Chinese drywall, homeowners began to complain of emissions of foul-smelling gas, the corrosion and blackening of metal wiring, surfaces, and objects, and the breaking down of appliances and electrical devices in their homes. *See In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, 894 F. Supp. 2d 819, 829-30 (E.D. La. 2012), *aff'd*, 742 F.3d 576 (5th Cir. 2014).

1

These homeowners then began to file suit in various state and federal courts against homebuilders, developers, installers, realtors, brokers, suppliers, importers, exporters, distributors, and manufacturers who were involved with the Chinese drywall. Because of the commonality of facts in the various cases, this litigation was designated as a multidistrict litigation and consolidated for pretrial proceedings in MDL 09-2047 before this Court. Since that date, numerous cases have been consolidated, involving thousands of individual claims; over 20,000 documents have been entered into the record, millions of documents have been exchanged in discovery, depositions have been taken in the United States and in China; the Court has appointed steering committees and liaison counsel for plaintiffs, homebuilders, insurers, installers, and manufacturers, and it has presided over monthly status conferences, hearings, and several bellwether trials.

The Chinese drywall at issue was largely manufactured by two groups of defendants: (1) the Knauf Entities and (2) the Taishan Entities. The Knauf Entities are German-based, international manufacturers of building products, including drywall, whose Chinese subsidiary, Knauf Plasterboard (Tianjin) Co., Ltd. ("KPT"), advertised and sold its Chinese drywall in the United States. The Knauf Entities first entered their appearance in the MDL litigation on July 2, 2009. Thereafter, the Court presided over a bellwether trial in *Hernandez v. Knauf Gips KG*, Case No. 09-6050, involving a homeowner's claims against KPT for defective drywall. The Court found in favor of the plaintiffs in *Hernandez*, issued a detailed Findings of Fact and Conclusions of Law, and entered a Judgment in the amount of $164,049.64. Subsequently, the Knauf Entities agreed to institute a pilot remediation program utilizing the remediation protocol formulated by the Court from the evidence in *Hernandez*. The Knauf pilot remediation program is now completed and has remediated more than 2,200 homes using the same general protocol.

On December 20, 2011, the Knauf Entities and the Plaintiffs' Steering Committee entered into a global, class Settlement Agreement ("Knauf Settlement Agreement"), which was designed to

resolve all Knauf-related Chinese drywall claims. In addition to the Knauf Settlement Agreement and after a jury trial in a bellwether case, numerous defendants in the chain-of-commerce with the Knauf Entities have entered into class settlement agreements, the effect of which settles almost all of the Knauf Entities' chain-of-commerce litigation. The total amount of the Knauf Settlement is approximately $1.1 billion.

After the settlement agreements, new lawsuits were brought against the Knauf Entities. The instant suit is one such later-filed lawsuit. Originally, this suit involved ten Plaintiffs and five affected properties. R. Doc. 7, Case No. 21-2046. All claims were brought in a single Complaint filed in the Southern District of Mississippi on November 3, 2021. *Id.* This Complaint asserts causes of action for (1) Negligence, (2) Negligence Per Se, (3) Strict Liability, (4) Breach of Express and/or Implied Warranty, (5) Private Nuisance, (6) Negligent Discharge of a Corrosive Substance, (7) Unjust Enrichment, (8) Violation of the Mississippi Consumer Protection Act, (9) Fraudulent Misrepresentation, (10) Negligent Misrepresentation, (11) Fraudulent Concealment, (12) Fraud, (13) Mississippi Products Liability Act, and (14) Equitable and Injunctive Relief. *Id.* Plaintiffs also assert a claim for punitive damages. *Id.*

The case was then transferred to this Court for discovery. R. Doc. 23228. Thereafter, six of the ten Plaintiffs settled their claims. *See* R. Doc. 23461 (dismissing claims of the Farnsworth, Peden, and Weems Plaintiffs). R. Doc. 23461. Accordingly, only two sets of Plaintiffs remain in this consolidated action: (1) Douglas & Iudok Premoe and (2) Jeremy & Renee Skinner. The only remaining Defendants are Knauf New Building System (Tianjin) Co. Ltd. and Knauf Gips KG (collectively, "Defendants"). R. Doc. 23460. The parties agree that after discovery, this matter will be returned to the United States District Court for the Southern District of Mississippi for dispositive motion practice and trial. R. Doc. 23463.

## II.  PRESENT MOTIONS

Defendants move for partial dismissal of Plaintiffs' suit. R. Docs. 23445, 23446. They concede that Plaintiffs have a cause of action under the Mississippi Products Liability Act ("MPLA"). However, they request dismissal of: (1) all Plaintiffs' non-Mississippi Products Liability Act ("MPLA") claims as subsumed by that statute and (2) Plaintiffs' fraud, Mississippi Consumer Protection Act ("MCPA"), and punitive damage claims as inadequately plead. *Id.* First, as to the MPLA, Defendants argue that courts have confirmed that "the MPLA provides the exclusive remedy for products liability claims," abrogating causes of action for negligence or strict liability in the products context. R. Docs. 23445-1 and 23446-1 at 6. Defendants argue that all of Plaintiffs' claims arise from the presence of an allegedly defective product—drywall—in their homes, thus placing their claims squarely within the MPLA's ambit. *Id.* at 7.

Second, Defendants contend that several of Plaintiffs' other claims fail to meet the applicable pleading requirements. *Id.* Defendants argue that Plaintiffs do not meet the heightened pleading standard for fraud because they fail to point to any specific misrepresentations made by Defendants. *Id.* at 8. Moreover, Defendants argue that Plaintiffs' vague allegations all regard Defendants alleged post-sale failure to warn consumers of the product defects. *Id.* at 9. However, Defendant avers that Mississippi law does not impose a post-sale duty to warn purchasers of product defects. *Id.* Next, as to Plaintiffs' fraudulent concealment claims, Defendants aver that Plaintiffs fail to allege a confidential or fiduciary relationship as is required to maintain such a claim. *Id.* at 11. Finally, Defendants argue that Plaintiffs' request for punitive damages must also be dismissed because Plaintiffs fail to allege facts supporting a finding of gross misconduct. *Id.* at 12-13.

Plaintiffs have not filed an opposition brief.

### III. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) provides that an action may be dismissed "for failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2008)). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 556. A claim is plausible on its face when the plaintiff has pled facts that allow the court to "draw a reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 570. Although a court must liberally construe the complaint in light most favorable to the plaintiff, accept the plaintiff's allegations as true, and draw all reasonable inferences in favor of the plaintiff, *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996), courts "do not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions." *Arias-Benn v. State Farm Fire & Cas. Co.*, 495 F.3d 228, 230 (5th Cir. 2007) (quoting *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005)).

### IV. DISCUSSION

Defendants raise two issues: (1) the exclusivity of Plaintiffs' MPLA remedy and (2) Plaintiff's failure to plead sufficient fact to sustain claims for fraud and punitive damages. The court takes each in turn.

#### A. The MPLA is the Exclusive Remedy for Products Liability Actions.

As to the first issue—the exclusivity of Plaintiffs' MPLA remedy—this Court and others have already confirmed that the MPLA subsumes other remedies for claims arising out of allegedly defective drywall. As this Court has explained in a previous Order in this MDL:

> [T]he MPLA applies "in any action for damages caused by a product, including, but not limited to, any action based on a theory of strict liability in tort, negligence or breach of implied warranty, except for commercial damage to the product itself." Miss. Code. Ann. §

11-1-63. The statute imposes liability on a manufacturer where a plaintiff successfully demonstrates that he or she suffered damages proximately caused by a product's defective condition that rendered the product unreasonably dangerous to the user. *Id.* The Mississippi Supreme Court has recently confirmed that "'the MPLA provides the exclusive remedy' for products-liability claims." *Elliott v. El Paso Corp.*, 181 So. 3d 263, 268 (Miss. 2015). "In other words, the MPLA has abrogated products-liability claims based on strict-liability or negligence theories, and the MPLA now provides the roadmap for such claims." *Id.*

R. Doc. 22925.

Applying this standard, the Southern District of Mississippi held in *Fozard v. Knauf Gips KG* that plaintiffs' non-MPLA claims arising from allegedly defective drywall must be dismissed as displaced. No. 21-358, 2024 WL 2158267, at *3 (S.D. Miss. May 13, 2024). The reasoning of *Fozard* is exactly applicable to the instant suit. Thus, the Court will dismiss Plaintiffs' claims for (1) Negligence, (2) Negligence Per Se, (3) Strict Liability, (4) Breach of Express and/or Implied Warranty, (5) Private Nuisance, (6) Negligent Discharge of a Corrosive Substance, (7) Unjust Enrichment, (8) and Violation of the Mississippi Consumer Protection Act.[1] *See id.* (dismissing this exact list of claims).

## B. Plaintiffs Fail to Allege Sufficient Facts to Sustain Their Fraud-Based Claims.

The Court finds that Plaintiffs' claims for fraud and "negligent misrepresentation" do not meet federal pleading standards. First, the Court finds that to the extent that Plaintiffs premise these claims on allegations of Defendants' "post-sale" failures to warn consumers of the defective nature of the drywall, such claims are not legally cognizable:

Mississippi law does not recognize a post-sale duty to warn. *See Austin v. Will-Burt Co.*, 361 F.3d 862, 870 (5th Cir. 2004). Pursuant to Mississippi law, the manufacturer of a defective

---

[1] Defendants offer additional arguments in support of dismissal of Plaintiff's MCPA claims. *See* R. Doc. 23445-1 at 11. However, the Court does not reach these arguments, as it finds that Plaintiffs' MCPA claim is among those displaced by the MPLA. *See Fozard*, 2024 WL 2158267 at *3 (dismissing MCPA claim as displaced); *Nelson v. C.R. Bard, Inc.*, 553 F. Supp. 3d 343, 349 (S.D. Miss. 2021), *aff'd*, 44 F.4th 277 (5th Cir. 2022) (holding, in a products liability action, that "the 2014 amendments to the MPLA and the decision in *Elliot* make clear that any potential MCPA claim, as well as any other common law tort claims, under the facts of this case, would be subsumed by the MPLA.").

> product may be found liable for a failure to warn about the defect only if a plaintiff demonstrates, by a preponderance of the evidence, that the manufacturer "knew or in light of reasonably available knowledge should have known about the danger that caused the damage for which recovery is sought." Miss. Code. Ann. § 11-1-63. In other words, liability attaches when a manufacturer fails to warn of risks known at the time of sale.

*In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, 836 F. App'x 259, 261 (5th Cir. 2020). Thus, to the extent that Plaintiffs' claims are based on Defendants' post-sale failures to warn, the claims are indeed unavailing. For example, Plaintiffs allege that "[a]fter learning that their products being sold in the United States were defective, Defendants breached their post-sale duty to warn consumers in Mississippi, including Plaintiffs." Case No. 21-2046, R. Doc. 7. at 10. This allegation does not state a viable claim.

Second, to the extent that Plaintiffs premise their fraud-based claims on allegations that Defendant knew of the defective nature of the product *prior to sale* but failed to disclose these defects, the Court finds that such claims fail to meet the applicable pleading standards. As to Plaintiff's claims of "fraud," and "fraudulent misrepresentation,"[2] Mississippi law requires the Plaintiff to allege the following: 1) a representation; 2) its falsity; 3) its materiality; 4) the speaker's knowledge of its falsity or ignorance of its truth; 5) his intent that it should be acted upon by the person and in the manner reasonably contemplated; 6) the hearer's ignorance of its falsity; 7) his reliance on its truth; 8) his right to rely thereon; and 9) his consequent and proximate injury. *Levens v. Campbell*, 733 So. 2d 753, 761-62 (Miss. 1999). As to Plaintiff's claims for negligent misrepresentation, "[t]he elements of negligent misrepresentation are: (1) a misrepresentation or omission of a fact; (2) that the representation or omission is material or significant; (3) that the person/entity charged with the negligence failed to exercise that degree of diligence and expertise the public is entitled to expect of such persons/entities; (4) that the plaintiff reasonably relied upon the

---

[2] Although Plaintiff alleges "fraud" and "fraudulent misrepresentation" separately, these claims have the same elements here. *See Levens v. Campbell*, 733 So. 2d 753, 762 (Miss. 1999) ("In order to establish fraudulent misrepresentation, the elements of fraud must be proven.").

misrepresentation or omission; and (5) that the plaintiff suffered damages as a direct and proximate result of such reasonable reliance." *Tubwell v. Specialized Loan Serv. LLC*, No. 17-15, 2017 WL 4228760, at *5 (N.D. Miss. Sept. 22, 2017).

The Federal Rules of Civil Procedure impose heightened pleading standards on these claims. Rule 9(b) requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." "Pleading fraud with particularity in [the Fifth] circuit requires time, place and contents of the false representations, as well as the identity of the person making the misrepresentation and what that person obtained thereby." *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 177 (5th Cir. 1997). "Directly put, the who, what, when, and where must be laid out before access to the discovery process is granted." *Levens v. Campbell*, 733 So. 2d 753, 761–62 (Miss. 1999). These heightened standards apply not only to fraud claims, but also to negligent misrepresentation claims where all claims arise from the same facts. *See Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 723 (5th Cir.) ("Although Rule 9(b) by its terms does not apply to negligent misrepresentation claims, this court has applied the heightened pleading requirements when the parties have not urged a separate focus on the negligent misrepresentation claims.").

Here, the Court finds that Plaintiff fails to describe the alleged misrepresentations with sufficient specificity to establish viable claims for fraud, fraudulent misrepresentation or negligent misrepresentation. Plaintiffs only alleges that after receiving complaints about the drywall, "Defendants"—in general—"chose to take no corrective action and instead continued to sell the product to its distributors without any limitation or disclosure regarding the defective nature of their product." Plaintiffs further allege that Defendants "provided marketing material" and "information" that "did not adequately disclose the risk" posed by the drywall. However, Plaintiffs do not identify who, in particular, produced this "marketing material" and "information." They do not explain when the material was prepared by Defendants or when it was received by Plaintiffs or other customers.

They do not quote or summarize the specific language used or statements made in the alleged "material." Such vague allegations are simply insufficient to meet federal pleading standards. *See Pace v. Cirrus Design Corp.*, 93 F.4th 879, 892 (5th Cir. 2024) (dismissing fraud claims where "neither by allegation nor supportive exhibit does the complaint show with specificity how [Defendants] misrepresented anything."); *Young v. Bristol-Myers Squibb Co.*, 2017 WL 706320, at *16 (N.D. Miss. Feb. 22, 2017) (dismissing fraud claims for lack of pleading with particularity because "the complaint wholly fails to plead when these documents were published or how [the plaintiff] herself relied on them," and because the plaintiff made "no effort to identify specific documents or to link specific misrepresentations (or omissions) to such documents.").

Plaintiffs also bring claims for "fraudulent concealment." However, "[i]n Mississippi, a claim of fraud by omission arises only where the defendant had a duty to disclose material facts purportedly omitted . . . . This duty generally arises only where there is a fiduciary relationship between the parties." *Taylor v. S. Farm Bureau Cas. Co.*, 954 So. 2d 1045, 1050 (Miss. Ct. App. 2007) (dismissing the plaintiff's fraudulent omission claim because "[t]he purchase of insurance is deemed to be an arm's length transaction, and accordingly no fiduciary duty arises."). Here, Plaintiffs do not allege that Defendants had a fiduciary duty to Plaintiffs, nor any other special duty. Thus, the Court finds that Plaintiff has not stated a claim for fraudulent concealment or omission. Moreover, the same lack of specificity which requires dismissal of Plaintiffs' other fraud claims—that is, their failure to identify specific material promulgated by Defendants which incorrectly represented the quality of their drywall—also requires dismissal of the instant fraudulent omission claim.

### C. The Court Will Not Dismiss Plaintiffs' Claim for Punitive Damages at This Stage.

Next, Defendants request dismissal of Plaintiffs' claim for punitive damages. To state a claim for punitive damages under Mississippi law, a plaintiff must allege that the defendant "acted with actual malice, gross negligence which evidences a willful, wanton or reckless disregard for the safety

of others, or committed actual fraud." Miss. Code Ann. § 11-1-65(a). Defendants aver that Plaintiffs cannot make this showing because the conduct they allege—in general, failing to disclose the defective nature of the drywall to consumers—is not sufficiently egregious to meet this standard. R. Docs. 23445-1 and 23446-1 at 13. Moreover, they note that in three other Chinese Drywall cases, courts dismissed Plaintiffs' punitive damages claims. *Id*. at 14, n.57.

The Court will not dismiss Plaintiff's punitive damages claim at this stage. Although the Court has already determined that Plaintiff's allegations cannot sustain a fraud claim, punitive damages can alternatively be awarded where the plaintiff makes a lesser showing of "gross negligence" or "reckless disregard." Here, Plaintiffs sufficiently allege that Defendants engaged in conduct which could rise to the level of gross negligence, such as failing to disclose known defects in the drywall prior to sale. At this stage, the Court must take Plaintiffs' allegations as true. Crucially, other courts have consistently dismissed Chinese Drywall plaintiffs' claims for punitive damages at the summary judgment stage, rather than the motion-to-dismiss stage. Indeed, all of the decisions Defendant cites in its briefing are summary judgment decisions. *See Baldwin v. Knauf Gips KG*, 2022 WL 16823060, at *4 (S.D. Tex. Nov. 8, 2022) (dismissing punitive damages claim on summary judgment); *Chedester v. Gebrueder Knauf Verwaltungsgesellschaft KG*, 2023 WL 5806212, at *10 (S.D. Ala. Sept. 7, 2023) (same); *Fozard*, 2024 WL 2158267, at *6 (same). Thus, the Court finds that dismissal of Plaintiffs' punitive damage claims at this early juncture would be premature. Defendants my re-urge their request at the summary judgment stage.

## V. CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that Defendants' motions to dismiss, R. Docs. 23445 and 23446, are **GRANTED IN PART** and **DENIED IN PART**. The motions are **GRANTED** in that Plaintiffs' claims for negligence, negligence per se, strict liability, breach of warranty, private nuisance,

negligent discharge of a corrosive substance, unjust enrichment, violation of the MCPA, fraudulent misrepresentation, negligent misrepresentation, fraudulent concealment, and fraud are hereby **DISMISSED.** The motions are **DENIED** in that Plaintiffs' request for punitive damages in connection with their surviving MPLA claim will not be dismissed at this stage.

New Orleans, Louisiana on this 20th day of March, 2025.

Eldon E. Fallon
U.S. District Court Judge